| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4979 | Envtl. Control Sys. v. Pollution Control Bd., 258 Ill. App. 3d 435 | 149E+673 | We believe that in order to avoid the clear language of Rule 335, ECS and other parties seeking review of PCB decisions must show a similar good faith effort to comply with the rules or face dismissal of their cases. The rules are clear. In order to obtain judicial review, a petition for review must be filed within 35 days of the PCB decision about which the petitioner complains. (Ill.Rev.Stat.1991, ch. 111 ", par. 1041 (now 415 ILCS 5/41 (West 1992)).) "The petition for review * * * shall specify the parties seeking review * * *. The agency and all other parties of record shall be named respondents." (Emphasis added.) 134 Ill.2d R. 335(a) | In order to avoid clear language of Supreme Court rule requiring filing of petition for review, party seeking review of Pollution Control Board (PCB) decision must show good-faith effort to comply with rules. Ill.Rev.Stat.1991, ch. 1111/212, P 1041. | Do parties seeking review of Pollution Control Board (PCB) decisions require a good faith effort to comply with the rules of their case? | Environmental Law - Memo 39 - AKA.doc | LEGALEASE-00002139-LEGALEASE-00002140 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 4980 | Kennerly v. Aro, 447 F. Supp. 1083 | 170A+2441 | The Court is mindful that it is contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of mere technicalities, and that the Rules are designed to facilitate a proper decision on the merits of a lawsuit. Foman v. Davis (1962), 371 U.S. 178, 181-182, 83 S.Ct. 227, 229-230, 9 L.Ed.2d 222, 225-226 (headnotes 3, 4). To that end, this Court has construed Rule 55(c), Federal Rules of Civil Procedure, liberally to provide relief from the onerous consequences of the entry of a default. See ergo., Johnson v. Harper, D.C.Tenn. (1975), 66 F.R.D. 103, 104(1). | It is contrary to spirit of rules for decisions on merits to be avoided on basis of mere technicalities and, hence, rules must be liberally construed to provide relief from onerous consequences of entry of a default. Fed.Rules Civ.Proc. rule 55(c), 28 U.S.C.A. | Is it entirely contrary to the spirit of the rules of civil procedure for decisions on the merits to be avoided on the basis of mere pleading technicalities? | 004450.docx | LEGALEASE-00116567-LEGALEASE-00116569 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 4981 | Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532 | 15A+1282 | We agree with the Commission that the rules were promulgated for the purpose of providing the "necessary information" for the Commission "to reach an informed and equitable decision" on temporary authority applications. ICC Policy Release of January 23, 1968. The Commission stated that requests for temporary authority would be turned down "if the applications do not adequately comply with (the) rules." Ibid. (Emphasis added.). The rules were not intended primarily to confer important procedural benefits upon indivduals in the face of otherwise unfettered discretion as in Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; nor is this a case in which an agency required by rule to exercise independent discretion has failed to do so. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681; Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778. Thus there is no reason to exempt this case from the general principle that "(i)t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." NLRB v. Monsanto Chemical Co., 8 Cir., 205 F.2d 763, 764. And see NLRB v. Grace Co., 8 Cir., 184 F.2d 126, 129; Sun Oil Co. v. FPC, 5 Cir. 256 F.2d 233; McKenna v. Seaton, 104 U.S.App.D.C. 50, 259 F.2d 780. | It is always within discretion of court or administrative agency to relax or modify its procedural rules adopted for orderly transaction of business before it, when, in given case, the ends of justice require it, and such action is not reviewable except on showing of substantial prejudice to the complaining party. | Can an agency relax or modify its procedural rules in order to meet the ends of justice? | Environmental Law - Memo 32 - JS.docx | ROSS-003312450-ROSS-003312452 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 4982 | Simmons Foods v. H. Mahmood J. Al-Bunnia & Sons Co., 634 F.3d 466 | 25T+112 | Under the Federal Arbitration Act, 9 U.S.C. "" 1"16, "A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." Lyster, 239 F.3d at 945 (citations omitted). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. However, a party who has not agreed to arbitrate a dispute cannot be forced to do so." Id. (citations and quotation marks omitted). | Order to arbitrate grievance should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible of interpretation that covers asserted dispute; however, party who has not agreed to arbitrate dispute cannot be forced to do so. 9 U.S.C.A. SS 1-16. | Can a court deny an order to arbitrate a grievance if the asserted dispute is not covered? | 005223.docx | LEGALEASE-00116884-LEGALEASE-00116885 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 4983 | New Jersey Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 449 | 414+1006 | We add only the following observations. The MLUL is a carefully constructed and comprehensive framework governing the powers of municipalities relating to land use and development. As we have previously held, municipalities must exercise their powers relating to zoning and land use in a manner that will strictly conform with that statute's provisions. Toll Bros., Inc. v. Bd. of Chosen Freeholders, County of Burlington, 194 N.J. 223, 243, 944 A.2d 1 (2008); see Avalon Home & Land Owners Ass'n v. Borough of Avalon, 111 N.J. 205, 212, 543 A.2d 950 (1988) (invalidating ordinance that exceeded authority to permit restoration of destroyed non-conforming uses); N.J. Builders Ass'n v. Bernards Twp., 108 N.J. 223, 237"38, 528 A.2d 555 (1987) (invalidating ordinance requiring contribution to off-tract improvements). | Municipalities must exercise their powers relating to zoning and land use in a manner that will strictly conform with provisions of Municipal Land Use Law (MLUL). N.J.S.A. 40:55D-42. | Should municipalities exercise their powers relating to zoning and land use in a manner that will strictly conform with provisions of Municipal Land Use Law (MLUL)? | Zoning and Planning - Memo 28 - JS.docx | ROSS-003285667-ROSS-003285668 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 4984 | People v. Poindexter, 138 Mich. App. 322 | 164T+8 | The elements of extortion are:"1) a communication, 2) threatening accusation of any crime or offense or any injury to the person or property or mother, father, husband, wife, or child of another, 3) with intent thereby to extort money or pecuniary advantage as to compel the person so threatened to do or refrain from doing an act against his will." People v. Krist, 97 Mich.App. 669, 675, 296 N.W.2d 139 (1980), lv. den. 409 Mich. 936 (1980). | Elements of extortion are: (1) a communication, (2) threatening accusation of any crime or offense or any injury to the person or property or mother, father, husband, wife, or child of another, (3) with intent thereby to extort money or pecuniary advantage as to compel the person so threatened to do or refrain from doing an act against his will. M.C.L.A. S 750.213. | What are the elements of extortion? | 005072.docx | LEGALEASE-00117191-LEGALEASE-00117192 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4985 | Pierce v. Warner Bros Entm't, 237 F. Supp. 3d 1375 | 237+1 | Plaintiff fails to state a claim for defamation. Under Georgia law, defamation requires: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant at least amounting to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." Bollea v. World Championship Wrestling, Inc., 271 Ga.App. 555, 557, 610 S.E.2d 92 (2005).At issue in this case is whether DeGeneres made a false and defamatory statement about Plaintiff when she pronounced Plaintiff's name as "t?-t?," instead of "t?-t?." Plaintiff's claims fail because, even when a statement is demonstrably false, the First Amendment "provides protection for statements that cannot reasonably be interpreted as stating actual facts about an individual." Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); Jaillett v. Georgia Television Co., 238 Ga.App. 885, 890, 520 S.E.2d 721 (1999) (noting that the first amendment protects statements of "rhetorical hyperbole"). "This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the discourse of our Nation." Milkovich, 497 U.S. at 20, 110 S.Ct. 2695. | Under Georgia law, defamation requires: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant at least amounting to negligence; and (4) special harm or the actionability of the statement irrespective of special harm. | Is unprivileged communication required in a defamation claim? | 000544.docx | LEGALEASE-00117289-LEGALEASE-00117290 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 4986 | Mitchell v. Baltimore Sun Co., 164 Md. App. 497 | 386+1 | We first consider Congressman Mitchell's contention that the circuit court erred in granting appellees' summary judgment on his trespass claim. A trespass is a tort involving "an intentional or negligent intrusion upon or to the possessory interest in property of another." Ford v. Baltimore City Sheriff's Office, 149 Md.App. 107, 129, 814 A.2d 127 (2002). In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent. Ford, 149 Md.App. at 129, 814 A.2d 127. (citing Richard J. Gilbert & Paul T. Gilbert, Maryland Tort Law Handbook " 8.2 (3d ed.2000)). Because appellees do not argue otherwise, we will assume for purposes of this appeal that Congressman Mitchell had a sufficient possessory interest in the nursing home room to maintain a trespass claim for its intrusion. | In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; and (3) which was executed without his consent. | What must the plaintiff establish to prevail on a cause of action for trespass? | 000717.docx | LEGALEASE-00117543-LEGALEASE-00117544 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 4987 | Bord v. Hillman, 335 Ga. App. 18 | 272+1675 | To recover under a nuisance claim, "[t]he plaintiff must show the existence of the nuisance complained of, that he or she has suffered injury, and that the injury complained of was caused by the alleged nuisance." (Citation and punctuation omitted.) Rice v. Six Flags Over Georgia, LLC, 257 Ga.App. 864, 868, 572 S.E.2d 322 (2002). Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. | To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury; the plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. | Is there a need to establish proximate cause in nuisance and trespass claims? | Trespass - Memo 26 - RK.docx | LEGALEASE-00004147-LEGALEASE-00004148 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 4988 | Phillips v. Sun Oil Co., 307 N.Y. 328 | 386+2 | We hold, as did the courts below, that plaintiff did not make out a case in trespass. Trespass is an intentional harm at least to this extent: while the trespasser, to be liable, need not intend or expect the damaging consequence of his intrusion, he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness. Tonawanda R. Co. v. Munger, 5 Denio 255; Rightmire v. Shepard, 59 Hun 620, 12 N.Y.S. 800; Guille v. Swan, 19 Johns. 381; Mairs v. Manhattan Real Estate Assn, 89 N.Y. 498; New York Steam Co. v. Foundation Co., 195 N.Y. 43, 52, 87 N.E. 765, 767, 21 L.R.A., N.S., 470; Restatement, Torts, Vol. 1, ss 158, 166. To constitute such a trespass, the act done must be such as "will to a substantial certainty result in the entry of the foreign matter". Restatement, Torts, supra, s 158, comment h | Trespass is an intentional harm, and while trespasser, to be liable, need not intend or expect damaging consequence of his intrusion, he must intend act which amounts to or produces unlawful invasion, and intrusion must at least be immediate or inevitable consequence of what he willfully does, or does so negligently as to amount to willfulness. | Does trespass require the intent to produce the damaging consequences? | 000750.docx | LEGALEASE-00117474-LEGALEASE-00117475 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4989 | Douglas v. Judge, 174 Mont. 32 | 92+2407 | When the Legislature confers authority upon an administrative agency, it must lay down the policy or reasons behind the statute and also prescribe standards and guides for the grant of power which has been made to the administrative agency. Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056. The following general rule found in 73 C.J.S. Public Administrative Bodies and Procedure, s 29, pp. 324, 325, has been often cited by this Court:"The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad, its attempt to delegate is a nullity. " * * * On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation." (Emphasis supplied.)Bacus, supra; City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539; Huber, supra. | When the legislature confers authority upon an administrative agency, it must lay down the policy or reasons behind the statute and also prescribe standards and guides for the grant of power which has been made to the agency. | What must the legislature do to lawfully confer authority upon an administrative agency? | Administrative Law - Memo 42 - RK.docx | LEGALEASE-00004499-LEGALEASE-00004501 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 4990 | State v. John F.M., 285 Conn. 52 | 207+2 | The state next claims that the Appellate Court improperly concluded that the defendant's conviction under " 53a"72a(a)(2) violates the equal protection clause of the federal constitution. Specifically, the state claims that because the statute plainly applies to all individuals, regardless of sex or sexual orientation, the Appellate Court improperly determined that " 53a"72a(a)(2) prohibits sexual intercourse only between opposite sex individuals who are related within certain degrees of kindred. In support of the Appellate Court's determination, the defendant responds that " 53a"72a(a)(2) plainly prohibits sexual intercourse between opposite sex individuals only because it incorporates by reference the specific male-female unions enumerated in " 46b"21. Moreover, the defendant points out that General Statutes " 46b"38cc, which prohibits civil unions between same sex individuals related within certain degrees of kindred, is not incorporated by reference into " 53a"72a (a)(2) and, furthermore, does not include stepparents and stepchildren within its ambit. Lastly, the defendant claims that the exclusion of same sex sexual intercourse from the purview of " 53a"72a(a)(2) rationally is not related to a legitimate government interest and, therefore, violates the equal protection clause of the federal constitution. We conclude that " 53a"72a(a)(2) does not violate the equal protection clause of the federal constitution because it applies equally to both opposite sex and same sex sexual intercourse when individuals are related within certain degrees of kindred. | Statute that prohibited sexual contact between persons related within certain degrees of kindred did not violate equal protection; statute applied equally to both opposite sex and same sex sexual contact when individuals were related within certain degrees of kindred. U.S.C.A. Const.Amend. 14; C.G.S.A. SS 53a-65(2), 53a-72a(a)(2). | Do statutes on incest which prohibit sexual intercourse between individuals who are related within certain degrees of kindred prohibit same sex relationships among related persons? | 000466.docx | LEGALEASE-00117863-LEGALEASE-00117864 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 4991 | Benton v. State, 265 Ga. 648 | 92+3781 | Because the class of individuals subject to punishment is not arbitrarily drawn, the statute does not violate the equal protection clauses of the United States and Georgia Constitutions. Where no fundamental right or suspect class is involved, statutory classifications are permitted if reasonably related to the state's legitimate interest in protecting the public. Thus, the statute stands if it is not arbitrary in light of the governmental interest. Classification on the basis of step-parent and step-child bears a rational relationship to the governmental interest in protecting children and family unity. This rationale applies for prohibiting sexual intercourse between a parent and step-child related by marriage, as for those persons related by blood. | Incest statute which prohibits intercourse between stepfather and child under age of consent does not arbitrarily draw class of individuals subject to punishment and is rationally related to legitimate government interest of protection of children and family unity; thus, statute does not violate state or federal equal protection clauses. U.S.C.A. Const.Amend. 14; Const. Art. 1, S 1, Pars. 1, 2; O.C.G.A. S 16-6-22. | Do incest statutes violate equal protection rights of persons? | 000792.docx | LEGALEASE-00117859-LEGALEASE-00117860 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4992 | Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042 | 170B+3053 | In determining whether parties have agreed to arbitrate a dispute, we apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir.1996); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts."). The presumption in favor of arbitration, however, does not apply "if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." In re Tobacco Cases I, JCCP 4041, 124 Cal.App.4th 1095, 21 Cal.Rptr.3d 875, 887 (Ct.App.2004); see also AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (" "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." " (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))); Victoria v. Superior Court, 40 Cal.3d 734, 222 Cal.Rptr. 1, 710 P.2d 833, 834 (1985) (en banc) (stating that " "the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate" " (quoting Wheeler v. St. Joseph Hosp., 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (1976))); Crowley Mar. Corp. v. Boston Old Colony Ins. Co., 158 Cal.App.4th 1061, 70 Cal.Rptr.3d 605, 611 (2008) ("The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate."). "In addition, "[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." " Victoria, 222 Cal.Rptr. 1, 710 P.2d | In determining whether parties have agreed to arbitrate dispute, federal court applies general state-law principles of contract interpretation, while giving due regard to federal policy in favor of arbitration by resolving ambiguities as to scope of arbitration in favor of arbitration. 9 U.S.C.A. S 1 et seq. | What laws do courts apply to contract disputes in arbitration proceedings? | 000989.docx | LEGALEASE-00117987-LEGALEASE-00117989 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 4993 | Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809 | 25T+113 | The Federal Arbitration Act, 9 U.S.C. "" 1"14 (1982) (the "Act") sets forth the general federal law relating to arbitration. The Act, of course, "does not mandate arbitration of all claims, but merely the enforcement ... of privately negotiated arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). The Act is a statement of Congressional intent in upholding private parties' arrangements for dispute resolution. Thus, the policies of the Act should be effectuated whenever possible, and federal courts should "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). Thus,questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability....Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi, 473 U.S. at 626, 105 S.Ct. at 3353. With this strong federal policy favoring arbitration in mind, we turn to the issue at hand. | Federal Arbitration Act is a statement of congressional intent to uphold private parties' arrangements for dispute resolution; thus, policies of the Act should be effectuated whenever possible and federal courts should rigorously enforce agreements to arbitrate. 9 U.S.C.A. SS 1-14. | What is the Congressional intent in enacting Federal Arbitration Act? | 000992.docx | LEGALEASE-00117990-LEGALEASE-00117992 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 4994 | People v. Hubbard, 64 Cal. App. 27 | 203+708 | The instruction should have been given. The refusal to give it was not only error but was highly prejudicial to defendant's rights. The mere fact that the shooting was accidental would not necessarily exculpate defendant. It might have been done in the commission of an unlawful act, in which case it could be manslaughter or even murder in the second degree. Defendant could be guilty of manslaughter, notwithstanding the shooting was accidental, if the shot was fired in the commission of an unlawful act not amounting to a felony, or even though it was fired in the commission of a lawful act, if at the time defendant was using the weapon without due caution and circumspection. Pen. Code, " 192, subd. 2. He could be guilty even of murder in the second degree, notwithstanding the shooting was accidental, if it was done in the commission of a felony. As was said in People v. Doyell, 48 Cal. 94:"Whenever one, in doing an act with the design of committing a felony, takes the life of another, even accidentally, this is murder."See, also, People v. Olsen, 80 Cal. 122, 22 Pac. 125; Holmes v. State, 88 Ala. 26, 7 South. 193, 16 Am. St. Rep. 17; note to People v. Sullivan, 63 L. R. A. 353. | A defendant could be guilty of manslaughter though the shooting was accidental if the shot was fired in the commission of an unlawful act not amounting to a felony, or if the shot was fired in the commission of a lawful act if the defendant was using the weapon without due caution and circumspection, under Pen.Code, S 192, subd. 2. | Can a crime be committed by an otherwise lawful act performed without due caution? | Homicide - Memo 33 - RK.docx | LEGALEASE-00004950-LEGALEASE-00004951 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4995 | JMS Newberry v. Kaman Aerospace Corp., 149 Conn. App. 630 | 1.49E+22 | "Section 22a"16 is apart of [the Connecticut Environmental Protection Act of 1971 (act), General Statutes " 22a"14 et seq.,] and was passed by the legislature to enable persons to seek redress in the court when someone is [polluting] our environment." (Internal quotation marks omitted.) Shukis v. Board of Education, 122 Conn.App. 555, 567, 1 A.3d 137 (2010). "General Statutes " 22a"17, which describes the burden of proof for claimants under " 22a"16, requires the plaintiff to prove causation, which is essential to such a claim, by establishing that the conduct of the defendant, acting alone, or in combination with others, has, or is reasonably likely unreasonably to pollute, impair or destroy the public trust in the air, water or other natural resources of the state.... To establish a prima facie case under [the act], the plaintiff must prove that the defendant's conduct was causing something more than a de minimis impairment of the environment." (Citation omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) Fort Trumbull Conservancy, LLC v. Alves, 140 Conn.App. 155, 163"64, 57 A.3d 898, cert. denied, 308 Conn. 929, 64 A.3d 120 (2013). A review of the trial court opinion reveals that the court clearly gave two alternative bases for its holding that "[w]ithout an evidentiary basis [the plaintiff's] claim under [the act] fails." The trial court determined that the plaintiff "ha[d] not identified "the alteration" it claims." The trial court additionally stated that the plaintiff had not identified "what "repair" is necessary to fix it." | To prove causation in an action under the Connecticut Environmental Protection Act, plaintiff must show that the conduct of the defendant, acting alone, or in combination with others, has, or is reasonably likely unreasonably to pollute, impair or destroy the public trust in the air, water or other natural resources of the state. C.G.S.A. S 22a-16, 22a-17. | What must the plaintiff prove to establish a prima facie case under 22a16 of the General Statutes? | 000930.docx | LEGALEASE-00118247-LEGALEASE-00118248 | Condensed, Order, SA, Sub | 0.77 | 1 | 1 | 1 | 1 | 1 |
| 4996 | People v. Drolet, 30 Cal. App. 3d 207 | 360+21(2) | In the exercise of its police power, each state has the right to enact laws to promote public health, safety, morals and welfare. (Lochner v. New York (1905) 198 U.S. 45, 53, 25 S.Ct. 539, 49 L.Ed. 937; In re Weisberg (1932) 215 Cal. 624, 627"628, 12 P.2d 446.) Penal statutes proscribing illicit sexual contacts constitute a legitimate and proper exercise of that power. (See concurring opinions of Mr. Justice Goldberg and Mr. Justice White in Griswold v. Connecticut, Supra, 381 U.S. 479, 498"499, 505, 85 S.Ct. 1678.)The exercise of this power is a legitimate legislative function, and the courts do not sit as a superlegislative body to determine the desirability or propriety of statutes enacted by the Legislature. (Griswold, Supra, at p. 482, 85 S.Ct. 1678.) | Exercise of police power to enact laws to promote public health, safety, morals and welfare is a legitimate legislative function and courts do not sit as super-legislative bodies to determine desirability or propriety of statutes enacted by legislature. | Do penal statutes that proscribe illicit sexual contacts constitute proper exercise of the states police power? | 000945.docx | LEGALEASE-00118245-LEGALEASE-00118246 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 4997 | CompuCredit Corp. v. Greenwood, 565 U.S. 95 | 25T+121 | This provision establishes "a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See also, e.g., Concepcion, supra, at """, 131 S.Ct., at 1745; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). It requires courts to enforce agreements to arbitrate according to their terms. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." Shearson/ American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). See also Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Respondents contend that the CROA contains such a command. | Federal Arbitration Act (FAA) requires courts to enforce agreements to arbitrate according to their terms even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command. 9 U.S.C.A. S 2. | Can arbitration agreements be enforced when the claims at issue are federal statutory claims? | 001696.docx | LEGALEASE-00118740-LEGALEASE-00118742 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 4998 | Johnson Controls v. City of Cedar Rapids, Iowa, 713 F.2d 370 | 25T+134(1) | The City's final contract argument is also based on public policy, specifically Iowa public policy. The City claims that at the time this contract was entered into, Iowa law rendered executory arbitration agreements generally unenforceable. Joseph L. Wilmotte & Co. v. Rosenman Bros., 258 N.W.2d 317, 325 (Iowa 1977). Iowa law also provides that municipalities are without power to make contracts that are inconsistent with state law. See Incorporated City of Humboldt v. Knight, 255 Iowa 22, 120 N.W.2d 457, 460"61 (1963). Thus, the City asserts that if the contract is construed as providing for mandatory arbitration, the contract would be ultra vires and void under Iowa law. The City argues that the contract should therefore be construed as providing for voluntary arbitration in order to avoid any possible violation of Iowa law. The City's argument is misplaced. The Arbitration Act was specifically enacted to reverse antiquated state rules of law that make arbitration agreements revocable at will anytime prior to the issuance of the arbitration award. Collins Radio Co. v. Ex-Cell-O Corp., 467 F.2d 995, 997"98 (8th Cir.1972). See H.R.Rep. No. 96, 68th Cong., 1st Sess. 1"2 (1924); S.Rep. No. 536, 68th Cong., 1st Sess. 2"3 (1924). Because federal substantive law pre-empts state law governing the enforceability of arbitration agreements in interstate contracts, the present contract is not unenforceable under applicable federal law. Hence, construing the contract as providing for mandatory arbitration would not be against controlling federal public policy. To the contrary, federal policy favors arbitration in interstate contracts. | Federal Arbitration Act was specifically enacted to reverse antiquated state rules of law that made arbitration agreements revocable at will any time prior to issuance of arbitration award, and thus, mandatory arbitration provision in contract governed by Arbitration Act was enforceable, regardless of whether state, at time contract was entered into, had public policy rendering executory arbitration agreements generally unenforceable. 9 U.S.C.A. S 4. | Does the enactment of Federal Arbitration Act (FAA) help to reverse antiquated state rules of law which made arbitration agreements revocable at will? | 001717.docx | LEGALEASE-00118762-LEGALEASE-00118764 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 4999 | Harris v. Forklift Sys., 510 U.S. 17 | 78+1185 | Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. " 2000e"2(a)(1). As we made clear in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), this language "is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. Id., at 64, 106 S.Ct., at 2404, quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978) (some internal quotation marks omitted). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, 106 S.Ct., at 2405, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," id., at 67, 106 S.Ct., at 2405 (internal brackets and quotation marks omitted), Title VII is violated | Title VII's prohibition against discrimination with respect to "terms, conditions, or privileges of employment" based on race, color, religion, sex, or national origin is not limited to economic or tangible discrimination, but extends to entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in discriminatorily hostile or abusive environment. Civil Rights Act of 1964, SS 701 et seq., 703(a)(1), as amended, 42 U.S.C.A. SS 2000e et seq., 2000e-2(a)(1). | Does Title VII of the Civil Rights Act of 1964 makes it is unlawful for an employer to discriminate against any of his employees? | 001428.docx | LEGALEASE-00118949-LEGALEASE-00118950 | Condensed, Order, SA, Sub | 0.62 | 1 | 1 | 1 | 1 | 1 |
| 5000 | Shawnee Tribe v. United States, 311 F. Supp. 2d 1181 | 209+159 | "[E]nlarged rules of construction are adopted in reference to Indian treaties." Kansas Indians, 72 U.S. at 760, 72 U.S. 737. The court should construe ambiguous provisions to the benefit of the Indians. County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 247, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985). " "The language used in treaties with the Indians should never be construed to their prejudice. If words be made use of which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense." " Absentee Shawnee Tribe, 862 F.2d at 1418 (quoting Worcester v. Georgia, 31 U.S. 515, 582, 6 Pet. 515, 8 L.Ed. 483 (1832)) (additional citations omitted). | In interpreting Indian treaties to determine if an Indian reservation has been terminated by ratification of a treaty between the United States and a tribe, the language used in treaties should never be construed to their prejudice; if words be made use of which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense. | How should a treaty between the United States and an Indian tribe be interpreted? | 001775.docx | LEGALEASE-00118839-LEGALEASE-00118840 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 5001 | Groat v. Town Bd. of Town of Glenville, 73 A.D.2d 426 | 249+1 | In our opinion, administrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution. | Administrative proceedings which require hearing and trial of issues on evidence and testimony under oath, with right of cross-examination, had sufficient attributes of judicial proceedings to be considered such for purposes of cause of action for malicious prosecution. Civil Service Law S 75; Town Law S 155. | Can administrative proceedings form the basis of a cause of action for malicious prosecution? | 001796.docx | LEGALEASE-00118871-LEGALEASE-00118872 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 5002 | Zurich Am. Ins. Co. v. Superior Court for State of California, 326 F.3d 816 | 25T+114 | Furthermore, Zurich's argument is based on an assumption that the state court cannot competently protect the parties' federal rights. This assumption, however, strikes at the heart of the Anti"Injunction Act, which "evidences confidence in state courts." See Commonwealth Edison Co., 541 F.2d at 1274; see also Chick Kam Choo, 486 U.S. at 149"50, 108 S.Ct. 1684 (state courts "are presumed competent to resolve federal issues"). Zurich's argument is also undermined by the structure of the FAA, which provides concurrent jurisdiction to states to enforce arbitration agreements, with a federal forum available only when diversity or federal question jurisdiction is otherwise established. See 9 U.S.C. " 4; Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Although the FAA represents "federal policy to be vindicated by the federal courts where otherwise appropriate," Moses H. Cone, 460 U.S. at 25 n. 32, 103 S.Ct. 927, it does not suggest that state courts are less competent to give effect to its provisions. Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1180 (11th Cir.1981) (noting that Congress "viewed state courts as fully capable of effectuating those policies"); CIGNA HealthCare of St. Louis, Inc. v. Kaiser, 294 F.3d 849, 854 (7th Cir.2002) (The FAA "requires both federal and state courts to apply a federal common law of arbitrability to the arbitration of disputes arising under contracts in commerce, a common law applicable equally in federal and state courts.") (citing Allied"Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Southland Corp. v. Keating, 465 U.S. 1, 14"15, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). | Although Federal Arbitration Act (FAA) represents federal policy to be vindicated by federal courts where otherwise appropriate, FAA does not suggest that state courts are less competent to give effect to its provisions. 9 U.S.C.A. S 1 et seq. | Are state courts competent to give effect to provisions of the Federal Arbitration Act (FAA)? | 002129.docx | LEGALEASE-00119089-LEGALEASE-00119091 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5003 | Murphy v. Canadian Imperial Bank of Commerce, 709 F. Supp. 2d 242 | 25T+114 | The decision of whether the Court must compel arbitration is governed by the FAA. See 9 U.S.C. " 2 ("A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, "according to their terms." " Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir.1999) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements," Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), and applies to agreements to arbitrate disputes arising out of employment in the securities industry, see, e.g., Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 85 N.Y.2d 173, 623 N.Y.S.2d 790, 647 N.E.2d 1298 (1995); Flanagan v. Prudential"Bache Sec., Inc., 67 N.Y.2d 500, 504 N.Y.S.2d 82, 495 N.E.2d 345 (1986). | Federal Arbitration Act (FAA) compels judicial enforcement of a wide range of written arbitration agreements, and applies to agreements to arbitrate disputes arising out of employment in the securities industry. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) apply to agreements to arbitrate disputes arising out of employment in the securities industry? | 002139.docx | LEGALEASE-00119099-LEGALEASE-00119100 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5004 | Cloverleaf Car Co. v. Phillips Petroleum Co., 213 Mich. App. 186 | 386+2 | A trespass is an unauthorized invasion upon the private property of another. Gelman Sciences, supra at 253, 508 N.W.2d 142. However, the actor must intend to intrude on the property of another without authorization to do so. If the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper. Prosser & Keeton, Torts (5th ed), " 13, pp. 73-74. Although plaintiffs allege that Phillips caused the gasoline to spill into the ground water, they did not claim that Phillips intended this intrusion. The trial court's grant of summary disposition of the trespass claim was proper under MCR 2.116(C)(8). | Trespass is an unauthorized invasion upon private property of another; however, actor must intend to intrude at a place without authorization to do so and if intrusion was due to accident caused by negligence or abnormally dangerous condition, action for trespass is not proper. | Should intrusion be intentional to constitute trespass? | 002316.docx | LEGALEASE-00119170-LEGALEASE-00119171 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 5005 | Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co, 803 So.2d 86 | 386+2 | Although no Louisiana court has previously adopted the rules set forth above, a review of Louisiana cases involving civil torts, though sparse, reveals that the above rules do apply in Louisiana because intent and/or negligence must be proven before a defendant may be held liable for trespass. Concerning intent, civil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff. See the following cases that specifically characterize trespass as an "intentional tort": Robertson v. State ex rel. Department of Planning & Control, 32,309, p. 14 (La.App. 2 Cir. 12/10/99), 747 So.2d 1276, 1284; Weber v. Bon Marche Pharmacy, Inc., 378 So.2d 520, 523 (La.App. 4 Cir.1979); McGee v. Seco Timber Co., 350 So.2d 1265, 1267 (La.App. 3 Cir.1977). Trespass is also listed as an intentional tort in F. Maraist and T. Galligan, Louisiana Tort Law (1996), " 2-6(g) and W. Crawford, Louisiana Civil Law Treatise: Tort Law, vol. 12 " 12.11 (2000). Nevertheless, some Louisiana courts have awarded damages for illegal trespass on one's property, even when committed in good faith. Wendorf v. Corley, 394 So.2d 1252, 1254 (La.App. 3 Cir.1980) and cases cited therein. | Civil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff. | Does the tort of civil trespass require the proof that the defendant took some intentional action that resulted in harm to the plaintiff to be qualified as an intentional tort? | 002326.docx | LEGALEASE-00119199-LEGALEASE-00119200 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 5006 | Detrex Chem. Indus. v. Employers Ins. of Wausau, 681 F. Supp. 438 | 15A+1058 | An administrative board acts in a judicial capacity when it hears evidence and witnesses, the parties are given an opportunity to brief and argue their versions of the facts and present arguments, and the parties are given an opportunity to seek court review of any adverse findings. University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). | Administrative board acts in judicial capacity when it hears evidence and witnesses, parties are given opportunity to brief and argue their versions of facts and present arguments, and parties are given opportunity to seek court review of any adverse findings. | When is an administrative agency said to have acted in judicial capacity? | Administrative Law - Memo 166 - RK.docx | ROSS-003310750-ROSS-003310751 | Condensed, SA | 0.3 | 0 | 1 | 0 | 1 | |
| 5007 | State v. Rooks, 130 Wash. App. 787 | 110+413.81(13) | In a homicide case, the corpus delicti rule requires the State to present evidence independent of the defendant's confession to prove (1) the fact of death and (2) a causal connection between the death and a criminal act. Aten, 130 Wash.2d at 655, 927 P.2d 210. The State's independent evidence may be either direct or circumstantial. The evidence need not establish the necessary elements of the corpus delicti beyond a reasonable doubt or even by a preponderance of the evidence; it is sufficient if the evidence prima facie establishes the corpus delicti. Aten, 130 Wash.2d at 656, 927 P.2d 210. "Prima facie" in this context of the corpus delicti rule means " "evidence of sufficient circumstances which would support a logical and reasonable inference" of the facts sought to be proved." Aten, 130 Wash.2d at 656, 927 P.2d 210 (quoting State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995)). | In a homicide case, the corpus delicti rule, under which defendant's confession or admission is not admissible unless corroborating evidence establishes corpus delicti of offense, requires the State to present evidence independent of the defendant's confession to prove (1) the fact of death and (2) a causal connection between the death and a criminal act. | Does a causal connection between the death and a criminal act considered as an element of corpus delicti? | 001925.docx | LEGALEASE-00119611-LEGALEASE-00119612 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 5008 | Vill. of Monsanto v. Touchette, 63 Ill. App. 2d 390 | 317A+101 | Due to the nature and purpose of the Public Utilities Act it is difficult for this Court to comprehend how its amendment by adding Section 28a, could impliedly amend the series of laws having to do with roads and bridges or taxation for road and bridge purposes, or distribution of taxes levied for such purpose. The Public Utilities Act is in derogation of common law, and nothing should be read into it by intendment. Consumers Sanitary Coffee & Butter Stores v. Illinois Commerce Commission, 348 Ill. 615, 181 N.E. 411. It is complete in itself, Illinois Central Railroad Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545, and is subject to repeal or amendment of the Legislature at any time that the Legislature sees fit in the public interest to so do. It has historically dealt with the regulation of public utilities in connection with rates and service to the public and has never been the legislative vehicle by which taxes were imposed, levied or distributed. Its purpose has been a maintain a general control over the operation of utilities in the State to the extent of preventing them from exacting from their patrons unjust, unreasonable, and discriminatory rates, and the theory of regulation of public utilities is protection of the public and the assurance of adequate service on the one hand, and, on the other, a fair opportunity to the tuility to, by business economy, secure a reasonable return from such service. Ill. Central Railroad v. Ill. Commerce Commission, supra. Being in derogation of common law it is to be strictly construed, People v. Norman Acceptance Co., 17 Ill.App.2d 215, 149 N.E.2d 653, Chicago Pump Co. v. Lakeside Engineering Corporation, 296 Ill.App. 126, 15 N.E.2d 929. | Purpose of Public Utilities Act is to maintain general control over operation of utilities to extent of preventing them from exacting unjust, unreasonable and discriminatory, rates, and to assure adequate service and fair opportunity to secure reasonable return. | What is the purpose of the Public Utilities Act (Act)? | 001959.docx | LEGALEASE-00119558-LEGALEASE-00119559 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5009 | Campbell v. Louisiana Intrastate Gas Corp., 528 So. 2d 626 | 317A+101 | Defendant contends that its right to use and maintain the pipeline after the foreclosure, and particularly in 1985, arises from the St. Julien Doctrine. This doctrine, now statutorily recognized, provides a method of acquiring utility servitudes without formal expropriation proceedings when a utility company has used private property in the public interest in good faith and with the landowner's consent or acquiescence for a period of time. LRS 19:14; St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (1883). | "St. Julien Doctrine" provides method of acquiring utility servitudes without formal expropriation proceedings when utility has used private property in public interest in good faith and with landowner's consent or acquiescence for period of time. LSA-R.S. 19:14. | What is the St. Julien Doctrine concerning utility services? | 001975.docx | LEGALEASE-00119666-LEGALEASE-00119667 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5010 | Dickson v. Wojcik, 22 F. Supp. 3d 830 | 393+1411 | Federal employees are immune from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. " 2679(b)(1). Any private remedy against a federal employee for a tort committed during the scope of his or her federal employment must be sought against the United States under the FTCA. Rector v. United States, 243 Fed.Appx. 976, 978 (6th Cir.2007). A private tort action can be brought against the employee only when the employee acts outside the scope of employment. Id. "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125, 1143 (6th Cir.1996). Under Michigan law, a person is acting within the scope of his or her employment if he or she acts "while engaged in the service of his master, or while about his master's business." Rector, 243 Fed.Appx. at 979 (quoting Barnes v. Mitchell, 341 Mich. 7, 67 N.W.2d 208, 210 (1954)). Employment encompasses acts taken to further the employer's purpose. Id. (citing Backus v. Kauffman, 238 Mich.App. 402, 605 N.W.2d 690, 693"94 (1999)). This holds true even if the actions amount to intentional torts or disobedience of the employer's express or implied orders. Id. | Any private remedy against a federal employee for a tort committed during the scope of his or her federal employment must be sought against the United States under the Federal Tort Claims Act (FTCA). 28 U.S.C.A. S 2679(b)(1). | "Is there any private remedy for a tort committed by a federal employee, while acting within the scope of his employment, against the United States under the Federal Tort Claims Act?" | 003264.docx | LEGALEASE-00119554-LEGALEASE-00119555 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5011 | In re Bevan, 327 F.3d 994 | 366+1 | We have described the doctrine this way:Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.Mort v. United States, 86 F.3d 890, 894 (9th Cir.1996). Based on that, we have held that a person who pays off a prior lien may be equitably subrogated to the position of the prior lienholder as against a later lienholder. See id. There is equity in that; there is none here. | Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. | When is equitable subrogation appropriate? | 002536.docx | LEGALEASE-00119883-LEGALEASE-00119884 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 5012 | Mort v. United States, 86 F.3d 890 | 366+31(4) | The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. Id. (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Id. (quoting Caito v. United Cal. Bank, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)). | Equitable subrogation is generally appropriate where subrogee made payment to protect his or her own interest, subrogee did not act as volunteer, subrogee was not primarily liable for debt paid, subrogee paid off entire encumbrance, and subrogation would not work any injustice to rights of junior lienholder. | When is equitable subrogation appropriate? | Subrogation - Memo 16 - VP.docx | ROSS-003285635-ROSS-003285636 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5013 | S. Cotton Oil Co. v. Napoleon Hill Cotton Co., 108 Ark. 555 | 366+1 | The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. Cyc. also says: "And generally where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt, should be substituted for or in the place of the creditor, such person will be so substituted." 37 Cyc. 371. | The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice. | Does the doctrine of subrogation have its basis in the doing of complete and perfect justice between the parties without regard to form? | Subrogation - Memo 32 - VP.docx | ROSS-003283661-ROSS-003283663 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 5014 | In re Monaco, 514 B.R. 477 | 366+2 | SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff...." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Texas courts interpret the doctrine of equitable subrogation liberally and apply it in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by thelatter. | Do courts liberally apply the doctrine of equitable subrogation? | 14779.docx | LEGALEASE-00081975-LEGALEASE-00081976 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5015 | State Comp. Ins. Fund v. Riley, 9 Cal. 2d 126 | 15A+1051 | It thus appears that the fund has its own regularly appointed counsel, and assistants, whose duty it is to represent the fund. Those attorneys devote their entire time to cases involving various phases of compensation insurance written by the fund. There is no express prohibition in any statute forbidding the employment of additional or special counsel, nor is there any statutory provision making it the duty of the regular attorneys for the fund to represent the fund in an emergency such as is here presented. Under such circumstances, and without now considering the effect of article 24 of the Constitution dealing with civil service, it seems clear that the fund has the power to employ special counsel to protect its rights in pending litigation. The law is well settled that a public agency may employ special counsel to protect its rights, unless specifically prohibited from so doing by statutory or charter provision, and that it possesses this power whether or not such public agency has a regularly appointed attorney, if such regularly appointed attorney is not specifically charged with the particular duty involved. This problem has been frequently presented in reference to the employment by municipal corporations of special counsel to assist the regularly appointed or elected city attorney in special litigation. This subject is discussed at length in an annotation appearing in 83 A.L.R. 135. At page 137 of that annotation the following statement, supported by authorities from many states, appears: "In the absence of statutory or charter restriction, a city may employ special counsel to assist the city attorney when the gravity or extent of the litigation reasonably requires the service of such additional counsel." That statement of the law is amply borne out by the decisions of this court. In the early case of Hornblower v. Duden, 35 Cal. 664, it was held that the board of supervisors without specific statutory authority could employ special counsel to assist the district attorney, not only in | A public agency may employ special counsel to protect its rights, unless specifically prohibited by statute or charter, though it has regularly appointed attorney, if latter is not specifically charged with particular duty involved. | Can a public agency employ a special counsel to protect its rights? | Administrative Law - Memo 179 - RK.docx | ROSS-003282270-ROSS-003282272 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 5016 | Agric. Labor Relations Bd. v. Superior Court, 16 Cal. 3d 392 | 15A+1101 | More importantly, in the absence of an express statutory directive to the contrary the board could also reasonably presume that the Legislature intended to abide by the well-settled principle of administrative law that in discharging its delegated responsibilities the choice between proceeding by general rule or by ad hoc adjudication "lies primarily in the informed discretion of the administrative agency." (Securities Comm'n v. Chenery Corp. (1947) 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002; accord, PBW Stock Exchange Inc. v. Securities and Exch. Com'n (3d Cir. 1973) 485 F.2d 718, 732; GTE Service Corporation v. F.C.C. (2d Cir. 1973) 474 F.2d 724, 731; Alabama-Tennessee Natural Gas Co. v. Federal Power Com'n (5th Cir. 1966) 359 F.2d 318, 343 (Wisdom, J.); see generally Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy (1965) 78 Harv.L.Rev. 921; Baker, Policy by Rule or Ad Hoc Approach"Which Should it Be? (1957) 22 Law & Contemp. Prob. 658.) The real parties in interest fail to show that the ALRB abused its discretionary powers as a duly constituted administrative agency when it determined to proceed on this issue by way of a general rule rather than ad hoc adjudication. | In discharging its delegated responsibilities, the choice between proceeding by general rule or by ad hoc adjudication lies primarily in the informed discretion of the administrative agency. | "While discharging delegated responsibilities, does an administrative agency have discretion to choose between proceeding by general rule or by ad hoc adjudication?" | Administrative Law - Memo 180 - RK.docx | ROSS-003285193-ROSS-003285195 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5017 | Agric. Labor Relations Bd. v. California Coastal Farms, 31 Cal. 3d 469 | 15A+1181 | As this court noted in ALRB v. Superior Court, supra, 16 Cal.3d 392, 413, 128 Cal.Rptr. 183, 546 P.2d 687, it is a well settled principle of administrative law that "in discharging its delegated responsibilities the choice between proceeding by general rule or by ad hoc adjudication "lies primarily in the informed discretion of the administrative agency." (Securities Comm'n v. Chenery Corp. (1947) 332 U.S. 194, 203 [67 S.Ct. 1575, 1580, 91 L.Ed. 1995]; [Additional citations omitted].)" This rule applies equally to the NLRB (see, e.g., NLRB v. Bell Aerospace Co. (1974) 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134) which, despite the fact that it is empowered to make rules in much the same way as the ALRB, has consistently opted to develop substantive policies through adjudication. (NLRB v. Wyman-Gordon Co. (1969) 394 U.S. 759, 765, fn. 3, 89 S.Ct. 1426, 1429, fn. 3, 22 L.Ed.2d 709.) | In discharging its delegated responsibilities choice between proceeding by general rule or by ad hoc adjudication lies primarily in informed discretion of administrative agency. | "While discharging delegated responsibilities, does an administrative agency have discretion to choose between proceeding by general rule or by ad hoc adjudication?" | 002633.docx | LEGALEASE-00120163-LEGALEASE-00120165 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5018 | Morvant v. P.F. Chang's China Bistro, 870 F. Supp. 2d 831 | 360+18.15 | While the Court in Concepcion may not have taken into account the potential for retaliation when there is an ongoing employment relationship between the parties, it did consider other important public policy concerns regarding fraud and willful injury to consumers. The failure to address employment retaliation alone does not permit a departure from Concepcion's broad statement that the FAA prohibits state-law created barriers to arbitration. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." Id. at 1747 (citing Preston v. Ferrer, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008)). | When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: the conflicting rule is displaced by the Federal Arbitration Act (FAA). 9 U.S.C.A. S 1 et seq. | "When state law prohibits outright the arbitration of a particular type of claim, does the FAA displace the conflicting rule?" | 002688.docx | LEGALEASE-00120141-LEGALEASE-00120142 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5019 | Pub. Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACORP Inc., 379 F.3d 641 | 317A+119.1 | Closely related to these preemption issues is the "filed rate doctrine."11 This doctrine, applied in a variety of contexts, is grounded in an agency's exclusive rate-setting authority. TANC, 295 F.3d at 929"30. "At its most basic, the filed rate doctrine provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question." Id. at 929; see also Ark. La. Gas Co., 453 U.S. at 577, 101 S.Ct. 2925 (under the filed rate doctrine, "[n]o court may substitute its own judgment on reasonableness for the judgment of the Commission."). "[T]he filed rate doctrine has prohibited not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, but also from assuming *651 a hypothetical rate different from that actually set by FERC." TANC, 295 F.3d at 930. | "Filed rate doctrine," applied in a variety of contexts, is grounded in an agency's exclusive rate-setting authority and, at its most basic, provides that state law, and some federal law, such as antitrust law, may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question. | Can courts use state and federal law to invalidate a filed rate under the filed rate doctrine? | 002708.docx | LEGALEASE-00120189-LEGALEASE-00120190 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5020 | Cincinnati, I. & W. Ry. Co. v. City of Connersville, 170 Ind. 316 | 148+2.1 | The rule is well settled that neither a natural person or corporation can claim damages on account of being compelled to comply with a police regulation, designed to secure the public health, safety, or welfare. Lewis, Eminent Domain, " 6; Railroad Company v. Shelley, 163 Ind. 36, 71 N. E. 151; Elliott, Railroads, " 1103; Railway Company v. Chicago, 140 Ill. 309, 29 N. E. 1109. It is equally well settled that an uncompensated obedience to a regulation ordained to secure the public health and safety is not a taking of private property, within the inhibitions of the state or federal Constitution. Lewis, Eminent Domain, " 6; Mugler v. Kansas, 123 U. S. 623, 668, 8 Sup. Ct. 273, 31 L. Ed. 205; Railway Company v. Shelley, 163 Ind. 36, 46, 71 N. E. 151, and cases cited | Neither a natural person nor a corporation can claim damages on account of being compelled to comply with a police regulation designed to secure the public health, safety, or welfare. | Can a natural person or a corporation claim damages on account of being compelled to render obedience to a police regulation? | 002718.docx | LEGALEASE-00120205-LEGALEASE-00120207 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5021 | Smith v. Campbell, 782 F.3d 93 | 249+34 | It is true that, in New York, "[m]alicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused.... [and] the tort cannot stand unless the underlying criminal cases finally end in failure."Poventud v. City of New York, 750 F.3d 121, 130"31 (2d Cir.2014) (en banc) (majority opinion) (citations and internal marks omitted). As a result, "several United States Courts of Appeals have cited Heck v. Humphrey as authority for the proposition that " 1983 claims for malicious prosecution do not accrue until their respective criminal prosecutions end in acquittal." Id. at 131 (citation and internal marks omitted). Thus, it may be that had Smith's claim been one for malicious prosecution in violation of her Fourth Amendment rights, that claim would not have accrued until after the trial and appeal related to her tickets. That, however, is not the cause of action which plaintiffs have pressed in this case. | Under New York law, malicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused, and the tort cannot stand unless the underlying criminal cases finally end in failure. | Is it necessary for the Plaintiff to show termination of the underlying suit in their favor to prevail on a claim for malicious prosecution? | 003366.docx | LEGALEASE-00120244-LEGALEASE-00120245 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5022 | Tr. Co. of Chicago v. City of Chicago, 408 Ill. 91 | 92+3902 | Every owner has the right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. Village of La Grange v. Leitch, 377 Ill. 99, 35 N.E.2d 346. This privilege was not created by the constitution but existed before its adoption and is guaranteed by it. 2700 Irving Park Building Corp. v. City of Chicago, 395 Ill. 138, 69 N.E.2d 827; State Bank & Trust Co. v. Village of Wilmette, 358 Ill. 311, 193 N.E. 131, 96 A.L.R. 1327. This privilege of a citizen to use his property according to his own will is both a liberty and a property right, Village of La Grange v. Leitch, 377 Ill. 99, 35 N.E.2d 346; People ex rel. Schimpff v. Norvell, 368 Ill. 325, 13 N.E.2d 960, subject always, however, to the police power of the State, under which new burdens may be imposed upon property and new restrictions placed upon its use when public welfare demands. 2700 Irving Park Building Corp. v. City of Chicago, 395 Ill. 138, 69 N.E.2d 827; Bjork v. Safford, 333 Ill. 355, 164 N.E. 699, 61 A.L.R. 561. The constitutional declaration that private property shall not be taken for public use without just compensation or without due process of law is subordinated always to the interests of the public welfare as expressed through the exercise of the police power of the State. Ehrlich v. Village of Wilmette, 361 Ill. 213, 197 N.E. 567, Forbes v. Hubbard, 348 Ill. 166, 180 N.E. 767. | The constitutional declaration that private property shall not be taken for public use without just compensation or without due process of law is subordinated to interests of public welfare as expressed through exercise of state's police power. | Are the rights of private property subordinate to the higher demands of the public welfare? | Eminent Domain - Memo 106 - RK.docx | ROSS-003284293-ROSS-003284295 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5023 | Braun v. Flynt, 726 F.2d 245 | 360+4.1(2) | In determining the standard to be applied here, we start with the premise that Gertz leaves to the states the task of defining a standard of liability for the defamation of a private individual. The states are not free, however, to impose liability without fault, nor are they free to award compensation greater than the actual injury suffered by a plaintiff. 418 U.S. at 348-49, 94 S.Ct. at 3011-12. | It is task of state to define standard of liability for defamation of private individual; states are not free, however, to impose liability without fault, nor are they free to award compensation greater than actual injury suffered by plaintiff. | Can the states impose liability without fault under the law of defamation? | Libel and Slander - Memo 145 - RK.docx | ROSS-003325510-ROSS-003325511 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 5024 | Mort v. United States, 86 F.3d 890 | 366+2 | The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. Id. (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Id. (quoting Caito v. United Cal. Bank, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)). | Equitable subrogation is broad equitable remedy, and therefore it applies whenever one person, not acting as mere volunteer or intruder, pays debt for which another is primarily liable, and which in equity and good conscience should have been discharged by latter. | Is equitable subrogation applied broadly? | Subrogation - Memo 143 - VP C.docx | ROSS-003322497-ROSS-003322498 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5025 | In re Monaco, 514 B.R. 477 | 366+2 | Like Tag, SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff...." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Texas courts interpret the doctrine of equitable subrogation liberally and apply it in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by thelatter. | Do courts interpret the doctrine of equitable subrogation liberally? | Subrogation - Memo 144 - VP C.docx | ROSS-003289477-ROSS-003289478 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5026 | State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099 | 366+1 | State Farm contends that its complaint states a claim for equitable subrogation. We agree. A cause of action for equitable subrogation arises where:(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.Dade County Sch. Bd., 731 So.2d at 646. In tort cases, the party seeking subrogation must have obtained a release for the other party responsible for the debt. Id. at 647; Welch v. Complete Care Corp., 818 So.2d 645, 648 (Fla. 2d DCA 2002). | A cause of action for equitable subrogation arises where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. | When does legal or equitable subrogation arise? | Subrogation - Memo 56 - RM C.docx | ROSS-003284378-ROSS-003284380 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 5027 | S. Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17 | 366+1 | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. Welch, supra; Courtney v. Birdsong, 246 Ark. 162, 437 S.W.2d 238 (1969). A right of subrogation may also arise from statute. See, e.g., Ark.Code Ann. " 23"89"101(Repl.2004). | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | Can subrogation rights arise by contract or by operation of law? | Subrogation - Memo 86 - RM C.docx | ROSS-003283895-ROSS-003283896 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 5028 | Ashlaw v. Racquette River Paper Co., 1 A.D.2d 69 | 249+49 | On this appeal defendant challenges the sufficiency of the complaint for malicious prosecution. The gravamen of the cause is set forth in paragraphs 15 and 16 thereof, in allegations that are couched in general and conclusory terms, substantially to the effect that the prosecution and arrest of the plaintiff was malicious and without proper cause; that the defendant knew there was no legal ground therefore and the prosecution was designed solely to compel plaintiff to pay a debt. Under firmly established authority such general allegations are insufficient to state a cause of action for malicious prosecution where the fact of an indictment appears in the complaint itself and thus presents a presumption of probable cause. Under such circumstances general allegations are not enough, and a complaint must also allege specific facts to overcome the effect of the indictment. Berger v. American National Fire Insurance Co., 279 App.Div. 335, 109 N.Y.S.2d 696; Chernow v. Feldman, 251 App.Div. 329, 296 N.Y.S. 149; Green v. General Cigar Co., Inc., 238 App.Div. 638, 265 N.Y.S. 209; Graham v. Buffalo General Laundries Corp., 261 N.Y. 165, 184 N.E. 746 | Where the fact of an indictment appears in the complaint itself in an action for malicious prosecution, and thus presents a presumption of probable cause, general allegations as to malice and lack of proper cause with respect to arrest and prosecution are not enough, and complaint must also allege specific facts to overcome the effect of the indictment. | Are general allegations sufficient to state a cause of action for malicious prosecution? | 003391.docx | LEGALEASE-00120762-LEGALEASE-00120763 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5029 | Friedman v. Dozorc, 412 Mich. 1 | 249+52 | We agree with defendants that under Michigan law special injury remains an essential element of the tort cause of action for malicious prosecution of civil proceedings. Although the circuit judge did not rest decision on the plaintiff's failure to plead special injury, summary judgment under GCR 1963, 117.2(1) for failure to state a claim could be appropriately entered on that basis; the factual disputes asserted by plaintiff are immaterial. | Summary judgment in malicious prosecution action could be appropriately entered for failure to state claim on basis that plaintiff did not plead special injury. GCR 1963, 117.2(1). | Is summary judgment appropriate for failure to plead special injury for malicious prosecution action? | 003398.docx | LEGALEASE-00120771-LEGALEASE-00120772 | Order, SA | 0.6 | 1 | 0 | 0 | 1 | |
| 5030 | Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 | 92+3874(3) | Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.T hus, the welfare recipients in Goldberg v. Kelly, supra, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. | Property interests are not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. U.S.C.A.Const. Amend. 14. | How are the property interests created and their dimensions defined under the takings law? | 017400.docx | LEGALEASE-00121272-LEGALEASE-00121273 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5031 | Anderson v. Moreno's Air Conditioning, 140 So. 3d 841 | 307A+2 | In regulating pretrial discovery, "Trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery. Such discretion will not be disturbed on appeal absent a clear showing of abuse." Trahan v. State ex rel Dep't of Health and Hosp., 04"743, p. 2 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245, 1248"49 (citing Moak v. Ill. Cent. R.R. Co., 93"783 (La.1/14/94), 631 So.2d 401) (other citations omitted). Finding no abuse of the trial court's broad discretion, we affirm the denial of attorney fees as sanctions sought in connection with the Estates' claim of discovery abuse by the appellees. | In regulating pretrial discovery, trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery, and such discretion will not be disturbed on appeal absent a clear showing of abuse. | "In regulating pretrial discovery, do trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation?" | Pretrial Procedure - Memo # 1 - RM C.docx | ROSS-003311162-ROSS-003311163 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5032 | In re Olson, 355 B.R. 649 | 366+1 | Pursuant to this standard, the court accepts as true all allegations in the Plaintiffs' proposed Amended Complaint. Nevertheless, the Plaintiffs have not stated any facts to support a finding by the court that they may step into the shoes of the Debtor's former spouse through equitable subrogation in order to properly maintain an action under " 523(a)(15). Tennessee courts define subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Bankers Trust Co. v. Collins, 124 S.W.3d 576, 579 (Tenn.Ct.App.2003) (quoting Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn.1999)). "A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of statute ("statutory subrogation")." Blankenship, 5 S.W.3d at 650. "Equitable [or legal] subrogation is a "legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." " Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 415 F.3d 487, 494 (6th Cir.2005) (quoting Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735, 747 (6th Cir.2005)); see also Amos v. Cent. Coal Co., 38 Tenn.App. 626, 277 S.W.2d 457, 462 (Ct.App.1954). | Under Tennessee law, equitable or legal subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. | Is equitable or legal subrogation a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other? | Subrogation - Memo # 425 - C - SA.docx | ROSS-003284671-ROSS-003284672 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5033 | In re Olson, 355 B.R. 649 | 366+1 | Equitable subrogation "is founded on principles of justice and equity, and its operation is governed by principles of equity." Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968); see also Wimberly v. Am. Cas. Co., 584 S.W.2d 200, 203 (Tenn.1979). When deciding whether to employ subrogation as a remedy, the court should balance the equities involved, and the case must be "strong and clear." Lawyers Title Ins. Corp. v. United Am. Bank, 21 F.Supp.2d 785, 792 (W.D.Tenn.1998). The negligence of a party seeking subrogation is a factor to be considered, along with any harm to be suffered by third parties if subrogation is allowed. Dixon v. Morgan, 154 Tenn. 389, 285 S.W. 558, 561"62 (1926). If "no one is injured by the mistake other than the party himself, relief may be granted, even though a high degree of care has not been exercised." Dixon, 285 S.W. at 562. | Under Tennessee law, when deciding whether to employ subrogation as a remedy, the court should balance the equities involved, and the case must be "strong and clear." | "When deciding whether to employ subrogation as a remedy, should the court balance the equities involved, and must the case be ""strong and clear""?" | Subrogation - Memo # 468 - C - SA.docx | LEGALEASE-00011235-LEGALEASE-00011236 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5034 | Twin City Fire Ins. Co. v. Jones, 918 So. 2d 403 | 366+1 | In Lincoln National, the defendants reached a settlement with the insured only after the insurer had instituted suit against the defendants. Id. at 160. The settlement provided for both release and indemnification. Nevertheless, our court reversed the grant of summary judgment for the defendants, reasoning that "[a] tortfeasor cannot expect to rely on a release from the victim if he knows that equity has transferred the victim's claim of recovery into the hands of a third party who has paid .. what the tortfeasor by rights should pay." 666 So.2d at 163. See also Ortega v. Motors Ins. Corp., 552 So.2d 1127, 1128 (Fla. 3d DCA 1989) (adopting the principle that, where the tortfeasor obtains a release from the insured with knowledge that the insured has already been indemnified by the insurer, such release does not bar the right of subrogation of the insurer). This rule serves the purpose of equitable subrogation, which is to prevent unjust enrichment by assuring that the person responsible for the debt ultimately answers for its discharge. Lincoln Nat'l Health & Cas. v. Mitsubishi Motor Sales, 778 So.2d 392, 394 n. 2 (Fla. 5th DCA 2001). | The purpose of equitable subrogation is to prevent unjust enrichment by assuring that the person responsible for the debt ultimately answers for its discharge. | Is the purpose of equitable subrogation to prevent unjust enrichment by assuring that the person responsible for the debt ultimately answers for its discharge? | Subrogation - Memo # 498 - C - NO.docx | ROSS-003284012-ROSS-003284013 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5035 | DePuy v. Farmer, 847 N.E.2d 160 | 366+1 | The result reached in Tippmann is produced by the common law even in the absence of the statutory right conferred by section 13. In the absence of a specific statutory provision, this subrogation right comes from the common law. Subrogation operates "in favor of persons who are legally obligated to pay for a loss caused by another's tort." Steury v. N. Ind. Pub. Serv. Co., Inc., 510 N.E.2d 213, 214 (Ind.Ct.App.1987) (citing 73 Am.Jur.2d Subrogation " 38 (1974); 83 C.J.S. Subrogation " 16 (1953)). Common law subrogation is "a doctrine of equity jurisprudence" that "arises by operation of law, that is to say it is created by the legal consequences of the acts and relationships of the parties, and thus is a legal fiction." 83 C.J.S. Subrogation "" 2, 4 at 499"500, 504 (2000) (citations omitted); accord 73 Am.Jur.2d Subrogation " 1 at 541 (West 2001). It is "designed to promote and to accomplish justice, and .. compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." 83 C.J.S. Subrogation " 3 at 502"03. The main goals of common law subrogation is to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor. Bank of New York v. Nally, 820 N.E.2d 644, 653 (Ind.2005); Erie Ins. Co. v. George, 681 N.E.2d 183, 186 (Ind.1997); 73 Am.Jur.2d Subrogation " 2 at 543. The Board's decision to allow Farmer to continue his worker's compensation claim contingent upon his remitting the settlement sum to DePuy achieved these goals, and was a proper application of these common law principles. | The main goals of common law subrogation are to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor. | "Are the main goals of common law subrogation to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor?" | Subrogation - Memo # 500 - C - NO.docx | ROSS-003312130-ROSS-003312132 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 5036 | In re Wiley, 438 B.R. 331 | 366+1 | In Dairyland Ins. Co. v. Herman, 1998"NMSC"005, 23, 124 N.M. 624, 631, 954 P.2d 56, 63 (1997), the New Mexico Supreme Court discussed the concept of subrogation.Subrogation is an equitable remedy of civil law origin whereby through a supposed succession to the legal rights of another, a loss is put ultimately on that one who in equity and good conscience should pay it. It is a remedy for the benefit of one secondarily liable, who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor. | Under New Mexico law, "subrogation" is equitable remedy of civil law origin, whereby, through a supposed succession to legal rights of another, a loss is put ultimately on the one who in equity and good conscience should pay it. | Is subrogation an equitable remedy of civil law origin? | Subrogation - Memo # 509 - C - SU.docx | ROSS-003287181-ROSS-003287182 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5037 | In re Patterson, 330 B.R. 631 | 366+2 | The Defendant has also asserted that given the opportunity, it can assert the defense of equitable subrogation. Tennessee courts define subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Bankers Trust Co. v. Collins, 124 S.W.3d 576, 579 (Tenn.Ct.App.2003) (quoting Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn.1999)). "A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of statute ("statutory subrogation")." Blankenship, 5 S.W.3d at 650. "Equitable subrogation is a "legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." " Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 415 F.3d 487, 494 (6th Cir.2005) (quoting Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735, 747 (6th Cir.2005)). | Under Tennessee law, "equitable subrogation" is legal fiction through which person who pays debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. | Is equitable subrogation a legal fiction through which person who pays debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other? | Subrogation - Memo # 574 - C - TJ.docx | ROSS-003311929-ROSS-003311930 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 5038 | Schwartz v. Hasty, 175 S.W.3d 621 | 366+1 | Another issue often raised with the collateral source rule involves subrogation. Especially with automobile insurance coverage, insurers have an equitable, contractual, or statutory right of subrogation in the benefits paid to the insured. See, e.g., Wine v. Globe Am. Cas. Co., 917 S.W.2d 558 (Ky.1996). Subrogation is designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves. Id. at 561. In the context of automobile insurance, the doctrine of subrogation serves dual purposes to prevent double recovery by the insured and to prevent a windfall to the tortfeasor. Id. at 562. While the legislature deleted a provision in KRS 304.39"320 explicitly providing for statutory subrogation for UIM benefits, the Kentucky Supreme Court has recognized insurers' equitable and contractual right to subrogation. See Coots v. Allstate Ins. Co., 853 S.W.2d 895, 901 (Ky.1993). | Subrogation is designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves. | Is subrogation designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves? | 043938.docx | LEGALEASE-00121280-LEGALEASE-00121281 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5039 | In re Elizalde's Estate, 182 Cal. 427 | 366+8 | By the common law a surety, upon satisfying his principal's obligation, is entitled to be subrogated, not only to the rights and remedies of the creditor against the principal connected with the debt, but is also entitled to be subrogated to the similar rights and remedies of the principal against the creditor. In Sheldon on Subrogation, at section 1, it is said: "Subrogation is a doctrine of equity jurisprudence although its principles are often applied in courts of common law; especially in those states in which equitable remedies are administered through the forms of law. It is a substitution ordinarily of another person in the place of a creditor. More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. In this country its principles have been more widely developed and its doctrine more generally applied than in England. It is so administered [here] as to secure real and essential justice without regard to form." | By the common law the surety upon satisfying his principal's obligation is subrogated, not only to the rights and remedies of the creditor against the principal connected with the debt, but also to the similar rights and remedies of the principal against the creditor. | "Upon satisfying the principal's obligation, is a surety subrogated to the rights and remedies of a creditor against the principal connected with debt?" | Subrogation - Memo # 646 - C - SA.docx | ROSS-003324210-ROSS-003324211 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5040 | Hunsberger v. Perkiomen Nat. Bank, 108 Pa. Super. 443 | 366+4 | 12 In considering this question, plaintiff must be assumed to have been an accommodation indorser upon each note. The general rule, that an accommodation indorser is to be treated as a surety for the maker and, as such, is, within the limits of the doctrine of subrogation, ordinarily entitled to the protection which collateral security deposited by the maker with the indorsee affords him, is well established. It is also settled that a voluntary relinquishment by the indorsee of the collateral security is a breach of the duty owed by the indorsee, as trustee for the surety. First Nat. Bank of Bloomsburg v. Tustin, 57 Pa. Super. Ct. 37; Gunnis, Barrett & Co. v. Wigley, 114 Pa. 191, 6 A. 465. The difficulty, here arising, is whether that general rule is applicable to the facts in this case. | General rule is that accommodation indorser of note is to be treated as surety for maker and, as such, within limits of doctrine of subrogation, entitled to protection of collateral security deposited by maker with indorsee. | Is an accommodation indorser treated as a surety for the maker within the limits of doctrine of subrogation? | Subrogation - Memo # 696 - C - SA.docx | ROSS-003309278-ROSS-003309279 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5041 | In re Deuel, 361 B.R. 509 | 366+1 | Subrogation is a derivative right whereby one party is substituted in the place of another with reference to a lawful claim, demand, or right. In re Hamada, 291 F.3d 645, 649 (9th Cir.2002). Equitable subrogation is a legal fiction and because it is a creature of equity it "is enforced solely for the purpose of accomplishing the ends of substantial justice." Hamada, 291 F.3d at 649 (citation omitted). The doctrine is governed by state law and one of the requirements of California law is that its application must "not work an injustice to the rights of others." Golden Eagle Ins. Co. v. First Nationwide Fin. Corp., 26 Cal.App.4th 160, 31 Cal.Rptr.2d 815, 821 (1994); Hamada, 291 F.3d at 651 (same); M. Lilly, Subrogation of Mortgages in California: a Comparison with the Restatement and Proposals for Change, 48 UCLA L.Rev. 1633, 1660"61 at n. 120 and accompanying text (2001). | "Subrogation" is derivative right whereby one party is substituted in place of another with reference to lawful claim, demand, or right. | "Is subrogation a derivative right whereby one party is substituted in place of another with reference to a lawful claim, demand, or right?" | Subrogation - Memo # 714 - C - SA.docx | ROSS-003298011-ROSS-003298012 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5042 | In re Pihl, 529 B.R. 414 | 366+7(1) | Equitable subrogation is a "broad equitable remedy" and "may apply even where one or more of these factors is absent." Additionally, courts have held that that sureties with equitable subrogation rights are not entitled to progress payments made to a contractor, that is, funds earned by a contractor prior to its default and paid to the contractor pre-petition. Nevertheless, equitable subrogation does entitle sureties to contract retainages and progress payments that were earned but not yet paid to the contractor. Moreover, if a party with notice of the surety's rights receives funds from a contract owner, equity requires that the party holds the funds for the surety's benefit. | If party with notice of surety's equitable subrogation rights receives funds from contract owner, equity requires that the party hold the funds for surety's benefit. | "If a party with notice of a surety's equitable subrogation rights receives funds from contract owner, does equity require that the party hold the funds for the surety's benefit?" | Subrogation - Memo # 716 - C - NO.docx | ROSS-003312524-ROSS-003312525 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5043 | Nat'l Am. Ins. Co. v. United States, 498 F.3d 1301 | 366+1 | On appeal, the United States asserts that NAICO can only stand in the shoes of the subcontractor whom it paid, and since the subcontractor has no privity with the United States, there can be no Tucker Act waiver of sovereign immunity. If we disagree, the United States does not contest its liability to NAICO on the facts of this case. Thus, this case involves only the subrogation rights of a payment bond surety. Generally, "[a] surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government)." Ins. Co. of the W. v. United States, 243 F.3d 1367, 1370 (Fed.Cir.2001) ("ICW") (citing Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed.Cir.1985)). If a surety is unable to rely on privity of contract as the jurisdictional basis for a claim against the government, the surety may be able to invoke the doctrine of equitable subrogation to step into the shoes of the contractor for the purpose of satisfying the jurisdictional requirements of the Tucker Act, 28 U.S.C. " 1491(a). See ICW, 243 F.3d at 1373 (stating that the Tucker Act is not limited to claims asserted by the original claimant). Equitable subrogation " "is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; .. is independent of any contractual relations between the parties," " Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136 n. 12, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) (quoting Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 301"02, 7 S.Ct. 482, 30 L.Ed. 595 (1887)), and has a long history in settled case law. | Equitable subrogation, which is enforced solely for the purpose of accomplishing the ends of substantial justice, is independent of any contractual relations between the parties. | "Is equitable subrogation, which is enforced solely for the purpose of accomplishing the ends of substantial justice, independent of any contractual relations between the parties?" | 044118.docx | LEGALEASE-00121733-LEGALEASE-00121735 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5044 | In re Comcraft, 206 B.R. 551 | 366+7(1) | The instant case differs from Pacific Marine in one respect: the fund in question was not retained by the project owner, but paid to the contractor. This does not change the result. A surety which is forced to pay a bond claim is subrogated to the subcontractor or materialman's claim against the contractor in existence immediately prior to the payment. New Amsterdam Casualty Co. v. City of Astoria et al. 256 F. 560 (D.Or.1919); Mayer v. First National Bank of Oregon, 260 Or. 119, 130, 489 P.2d 385, 391 (1971). The purpose of the equitable lien is to protect that right. Since the lien exists to protect the surety's subrogation right, it remains in effect as long as the right does. The right subrogated to is the subcontractor's claim against the contractor; payment of the funds by the owner to the contractor does not diminish that right. It follows that the lien follows the funds into the hands of the contractor. This result is supported by the strong public policy in Oregon supporting the surety's claims. United Pacific Ins. v. First National Bank of Oregon, 222 F.Supp. 243, 250 (D.Or.1963), In re Pacific Marine Dredging and Construction, 79 B.R. 924, 928 (Bankr.D.Or.1987). | Under Oregon law, surety which is forced to pay bond claim is subrogated to subcontractor or materialman's claim against contractor in existence immediately prior to payment. | Is a surety that is forced to pay a bond claim subrogated to the subcontractor or materialman's claim against the contractor in existence immediately prior to payment? | Subrogation - Memo # 730 - C - SU.docx | ROSS-003311291-ROSS-003311292 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5045 | Washington Mut. Bank v. Chiappetta, 584 F. Supp. 2d 961 | 366+1 | WaMu's fallback argument is that Infinity and ODOT will be unjustly enriched. However, state law does not appear to make a distinction between unjust enrichment and equitable subrogation. Unjust enrichment under state law is part of the doctrine of equitable subrogation, not a separate doctrine. Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Williams v. Erie Ins. Group (1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770, 772"773. The right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Jones, supra, 61 Ohio St.2d at 102, 15 O.O.3d at 133"134, 399 N.E.2d at 1217"1218. | Under Ohio law, the right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. | "Does the right to equitable subrogation depend upon the facts and circumstances of each case, and the basis for the claim must be readily apparent?" | Subrogation - Memorandum - 585 - SK.docx | ROSS-003298525-ROSS-003298526 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5046 | Bailey v. Ameriquest Mortg. Co., 346 F.3d 821 | 25T+121 | First, while a party does not forgo substantive statutory rights by agreeing to arbitrate statutory claims, see Gilmer, 500 U.S. at 26, 111 S.Ct. 1647, the Court has evidenced its confidence that arbitrators are perfectly capable of protecting statutory rights when the parties have conferred the authority to decide statutory claims. In PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 123 S.Ct. 1531, 1536, 155 L.Ed.2d 578 (2003), for example, where plaintiffs alleged that the limited remedies in the agreement to arbitrate were inconsistent with their federal statutory rights, the Court held that it was proper to compel arbitration because "we do not know how the arbitrator will construe the remedial limitations." Similarly, the Court has held that procedural questions "which grow out of the dispute and bear on its final disposition" are presumptively for the arbitrator, not a judge, to decide. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002) (quotation omitted). Accord Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 2407-08, 156 L.Ed.2d 414 (2003). When an agreement to arbitrate encompasses statutory claims, the arbitrator has the authority to enforce substantive statutory rights, even if those rights are in conflict with contractual limitations in the agreement that would otherwise apply. Based upon these principles and Supreme Court precedent, we held in Larry's United Super, 253 F.3d at 1086, and again in Arkcom, 289 F.3d at 539, that the extent of an arbitrator's procedural and remedial authority are issues for the arbitrator to resolve in the first instance. Accord Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 681-82 (8th Cir.2001). | When agreement to arbitrate encompasses statutory claims, arbitrator has authority to enforce substantive statutory rights, even if those rights are in conflict with contractual limitations in agreement that would otherwise apply. | Does an arbitrator have the authority to enforce substantive statutory rights if those rights are in conflict with contractual limitations in the agreement? | Alternative Dispute Resolution - Memo 370 - RK.docx | ROSS-003297245-ROSS-003297247 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5047 | Bayou Fleet v. Bollinger Shipyards, 197 So. 3d 797 | 307A+3 | The trial court is granted broad discretion in its ruling on evidentiary issues, such as motions in limine regarding spoliation of evidence, which will not be disturbed on appeal absent a clear abuse of that discretion. Everhardt v. La. Dept. of Transp. & Dev., 07"0981, p. 10 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1045. Bayou Fleet has pointed to no evidence in the record that supports a finding that Bollinger intentionally deprived Bayou Fleet of a purported copy of "Exhibit 1" for the purpose of depriving Bayou Fleet of its use, for example, in opposing Bollinger's exception of prescription. See Tomlinson v. Landmark Am. Ins. Co., 15"0276, p. 10 (La.App. 4 Cir. 3/23/16), 192 So.3d 153, 160. Accordingly, we find no abuse of discretion. | Trial court is granted broad discretion in its ruling on evidentiary issues, such as motions in limine regarding spoliation of evidence, which will not be disturbed on appeal absent a clear abuse of that discretion. | Is a trial court granted broad discretion in its ruling on evidentiary issues? | 024023.docx | LEGALEASE-00121926-LEGALEASE-00121927 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5048 | Robinette v. Lafon Nursing Facility of the Holy Family, 223 So.3d 68 | 228+183 | We must also point out that the proper procedural vehicle for excluding evidence of non-party fault is not by a motion in limine, but by a motion for summary judgment under La. Code Civ. P. art. 966(G), which in October 2012 (when the Robinettes filed their Motion in Limine) provided as follows:When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or non-party is not negligent, is not at fault, or did not cause, whether in whole or in part, the injury or harm alleged, that party or non-party shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or non-party nor shall the issue be submitted to the jury nor included on the jury verdict form. This Paragraph shall not apply when a summary judgment is granted solely on the basis of the successful assertion of an affirmative defense in accordance with Article 1005, except for negligence or fault. See 2012 La. Acts, No. 257, " 1, effective August 1, 2012. | The proper procedural vehicle for excluding evidence of non-party fault is not by a motion in limine, but by a motion for summary judgment. La. Code Civ. Proc. Ann. art. 966(G). | Is the proper procedural vehicle for excluding evidence of non-party fault a motion in limine or a motion for summary judgment? | Pretrial Procedure - Memo # 411 - C - SB.docx | ROSS-003314045-ROSS-003314046 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5049 | In re Marriage of Bhati & Singh, 397 Ill. App. 3d 53 | 30+3209 | When the court denied the motion, it stated, "[s]he certainly can testify. A 604(b), (sic) she is a psychologist. She is a professional. It's a professional opinion. That is what I'm accepting it as. That is what 604(b) refers to." The court further noted that Dr. Star's report would provide some insight into Ajay and Sonia's relationship, which was unique to the two of them. The court also denied Meeta's counsel's statement that Dr. Star would be "cloaked in an aura of almost irrefutable authority," and further stated that it would not forfeit its responsibility as the trier of fact and would not blindly accept Dr. Star's report. A trial court has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001). | A trial court has discretion in granting a motion in limine, and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Will a trial courts decision to grant a motion in limine be reversed by the reviewing court unless that discretion was clearly abused? | 024400.docx | LEGALEASE-00122031-LEGALEASE-00122032 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5050 | Hawkes v. Casino Queen, 336 Ill. App. 3d 994 | 307A+3 | "The purpose of the motion [in limine] is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection." Konieczny v. Kamin Builders, Inc., 304 Ill.App.3d 131, 136, 237 Ill.Dec. 440, 709 N.E.2d 695, 699 (1999). The circuit court is vested with broad discretion to grant a motion in limine "as part of its inherent power to admit or exclude evidence." City of Quincy v. Diamond Construction Co., 327 Ill.App.3d 338, 342"43, 261 Ill.Dec. 141, 762 N.E.2d 710, 714 (2002). Courts of review will not reverse a circuit court's decision to grant a motion in limine absent a clear abuse of discretion. Ficken v. Alton & Southern Ry. Co., 291 Ill.App.3d 635, 642, 226 Ill.Dec. 187, 685 N.E.2d 1, 7 (1996). Further, this court may affirm the circuit court upon any grounds appearing in the record, without regard to whether such grounds were relied upon by the circuit court or whether its reasoning was correct. Ficken, 291 Ill.App.3d at 642, 226 Ill.Dec. 187, 685 N.E.2d at 7. | The purpose of the motion in limine is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection. | Is the purpose of a motion in limine to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection? | Pretrial Procedure - Memo # 252 - C - PB.docx | ROSS-003285376-ROSS-003285377 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5051 | State v. Winston, 71 Ohio App. 3d 154 | 110+632(4) | A motion in limine is a request that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper. If the court denies the motion, no reviewable error results unless the proponent of the evidence later offers it at trial, the opponent then objects, and the court erroneously overrules that objection, or the mere asking of the question creates unfair prejudice. Caserta v. Allstate Ins. Co. (1983), 14 Ohio App.3d 167, 14 OBR 185, 470 N.E.2d 430. | "Motion in limine" is request that court limit or exclude use of evidence which movant believes to be improper, and is made in advance of actual presentation of evidence to trier of fact, usually before trial. | Is a motion in limine essentially a request to limit or exclude evidence or testimony at trial? | 030035.docx | LEGALEASE-00122206-LEGALEASE-00122207 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5052 | Cundiff v. Patel, 2012 IL App (4th) 120031 | 30+70(4) | At trial, plaintiff did not attempt to introduce this evidence or request the trialcourt to revisit the motion in limine decision excluding Waldron's testimony and the activity log by making an offer of proof. Generally, a trial court's ruling on a motion in limine is interlocutory and remains subject to reconsideration by the court throughout the trial (Guski v. Raja, 409 Ill.App.3d 686, 695, 350 Ill.Dec. 903, 949 N.E.2d 695, 704 (2011)), and the proponent's failure to make an offer of proof at trial forfeits review of the trial court's granting a motion in limine (In re Estate of Nicholls, 2011 IL App (4th) 100871, 36, 355 Ill.Dec. 635, 960 N.E.2d 78). See 3 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual "" 20:13 to 20:16 (4th ed. 2006) (discussing timeliness of motion in limine and preservation of issue for appeal). A formal offer of proof is made whereby counsel "offers the proposed evidence or testimony by placing a witness on the stand, outside the jury's presence, and asking him questions to elicit with particularity what the witness would testify to if permitted to do so." People v. Pelo, 404 Ill.App.3d 839, 875, 347 Ill.Dec. 260, 942 N.E.2d 463, 494 (2010). Counsel can make an "adequate offer of proof if he informs the trialcourt, with particularity, of the substance of the witness' anticipated answer." Snelson v. Kamm, 204 Ill.2d 1, 23, 272 Ill.Dec. 610, 787 N.E.2d 796, 808 (2003). "[A]n offer of proof serves dual purposes: (1) it discloses to the court and opposing counsel the nature of the offered evidence, thus enabling the court to take appropriate action, and (2) it provides the reviewing court with an adequate record to determine whether the trialcourt's action was erroneous." Pelo, 404 Ill.App.3d at 875, 347 Ill.Dec. 260, 942 N.E.2d at 494. See 3 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual "" 20:17 to 20:19 (4th ed. 2006) (discussing offers of proof). | Generally, a trial court's ruling on a motion in limine is interlocutory and remains subject to reconsideration by the court throughout the trial, and the proponent's failure to make an offer of proof at trial forfeits review of the trial court's granting a motion in limine. | Are motions in limine interlocutory orders which are subject to reconsideration by the district court during the trial? | 030732.docx | LEGALEASE-00122212-LEGALEASE-00122214 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5053 | Chapman v. Hubbard Woods Motors, 351 Ill. App. 3d 99 | 307A+3 | Assuming, arguendo, that we were to address the merits of this issue, we recognize that a trial court has broad discretion to grant or deny a motion in limine, and as such, we will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. City of Quincy v. Diamond Construction Co., 327 Ill.App.3d 338, 342"43, 261 Ill.Dec. 141, 762 N.E.2d 710, 714 (2002). In addition, a trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is also reviewed under the abuse of discretion standard. Prairie v. Snow Valley Health Resources, Inc., 324 Ill.App.3d 568, 576, 258 Ill.Dec. 202, 755 N.E.2d 1021, 1029 (2001). | Trial court has broad discretion to grant or deny a motion in limine, and as such, the reviewing court will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. | Does the reviewing court reverse the trial court's decision to grant or deny such a motion in limine absent a clear abuse of discretion? | Pretrial Proceedure - Memo # 46 - C - TJ.docx | ROSS-003298130-ROSS-003298131 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5054 | Kryder v. State, 214 Ind. 419 | 317A+102 | The validity of legislation regulating public utilities rests, in many instances, upon the single limitation that rates and charges fixed by administrative boards and commissions shall be reasonable. Legislation of this character is sustained upon the theory that it is proper for the legislature to delegate to such boards and officers the function to determine what is or what is not reasonable under the particular facts. Village of Saratoga Springs v. Saratoga Gas, etc., Co., 1908, 191 N.Y. 123, 83 N.E. 693, 18 L.R.A.,N.S., 713, 14 Ann.Cas. 606; Idaho Power & Light Co. v. Blomquist, 1914, 26 Idaho 222, 141 P. 1083, Ann.Cas.1916E, 282; Minneapolis, etc., R. Co. v. Railroad Commission, 1908, 136 Wis. 146, 116 N.W. 905, 17 L.R.A.,N.S., 821. The restriction imposed by the act before us that the holders purchased by the commissioner for distribution to the public shall possess quality, appearance and usability, is none the less definite and specific | The validity of legislation regulating public utilities rests, in many instances, on the single limitation that rates and charges fixed by administrative boards and commissions shall be reasonable. Const. art. 3, S 1. | Can the legislature delegate to the administrative boards or commission regulating public utilities to determine what are or what are not reasonable rates under particular facts? | 042197.docx | LEGALEASE-00122037-LEGALEASE-00122039 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5055 | Roy v. Illinois Commerce Comm'n, 322 Ill. 452 | 317A+123 | It needs no argument to show that the Commerce Commission should not grant a certificate of convenience and necessity unless it is made to appear that the corporation to which it is granted is shown to have the ability to serve the public interest in connection with such utility. The law contemplates an actual, thorough supervision, in the manner authorized by the Public Utilities Act, of every corporation engaged in conducting a public utility in this state, to the end that continuous, adequate, uniform, and satisfactory service shall be rendered to the public at reasonable rates and without discrimination by corporations of whose condition, financial and business standing, and relations the Commerce Commission is constantly advised in the manner provided by law. Therefore every corporation applying for a certificate of convenience and necessity must show both its intention and ability, financial and otherwise, to render the service which it asks for authority to undertake. The ability of the corporation to furnish adequate and satisfactory service is a question essential to be determined upon every application for a certificate of convenience and necessity. Chicago Motor Bus Co. v. Chicago Stage Co., 287 Ill. 320, 122 N. E. 477; Superior Motor Bus Co. v. Community Moter Bus Co., 320 Ill. 175, 150 N. E. 668. No evidence was introduced of the financial ability of the North Shore Connecting Railroad, and there was, therefore, no basis in the evidence for the order of the commission. | Public Utilities Act contemplates actual thorough supervision of every public utility corporation, so that continuous, adequate, uniform, and satisfactory service shall be rendered public at reasonable rates without discrimination. | Why does the Public Utilities Act contemplate supervision of every public utility? | 042208.docx | LEGALEASE-00122161-LEGALEASE-00122163 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5056 | Am. Contractors Indem. Co. v. Saladino, 115 Cal. App. 4th 1262 | 366+28 | "The prerequisites to the assertion of a right of subrogation are these: " "(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others." " (Caito v. United California Bank (1978) 20 Cal.3d 694, 704 [144 Cal.Rptr. 751, 576 P.2d 466]; see also, Grant v. de Otte (1954) 122 Cal.App.2d 724, 728 [265 P.2d 952]; 11 Witkin, Summary of Cal. Law, supra, " 169, at p. 849.)" | The prerequisites to the assertion of a right of subrogation are: (1) payment must have been made by the subrogee to protect his or her own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others. | What certain prerequisites must be satisfied by one who claims to be equitably subrogated to the rights of a secured creditor? | 043835.docx | LEGALEASE-00121819-LEGALEASE-00121820 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5057 | Cole v. Celotex Corp., 599 So. 2d 1058 | 361+1559 | Generally, the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues. Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested. Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878, 879 (La.1985); Lott v. Haley, 370 So.2d 521, 524 (La.1979); Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381, 1387 (La.1978); Marcel v. Louisiana State Department of Public Health, 492 So.2d 103, 109"10 (La.App. 1st Cir.), writ denied, 494 So.2d 334 (La.1986). Stated differently, "statutes enacted after the acquisition of such a vested property right .. cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties." Faucheaux, 470 So.2d at 87 | Generally, determinative point in time separating prospective from retroactive application of enactment is date that cause of action accrues; once party's cause of action accrues, it becomes vested property right that may not constitutionally be divested. LSA-C.C. art. 6. | Does the party owning the action has a vested interest when a cause of action has accrued? | 005503.docx | LEGALEASE-00123805-LEGALEASE-00123806 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 5058 | Fetzer v. Wood, 211 Ill. App. 3d 70 | 13+61 | Defendants then argue that where the time of injury is not readily ascertainable, the only other basis for determining when a cause of action accrues is when it may be "discovered." In medical malpractice actions in which the so-called discovery rule is applied, the cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that it was wrongfully caused. (Moore v. Jackson Park Hospital (1983), 95 Ill.2d 223, 232, 69 Ill.Dec. 191, 447 N.E.2d 408; Witherell v. Weimer (1981), 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 421 N.E.2d 869.) Defendants also cite Moore for the proposition that "a plaintiff cannot bring an action until he knows or reasonably should know of injury, and that it was caused by the wrongful acts of another." In doing so, defendants completely misrepresent the point the court was trying to make. In Moore, the issue was whether an amendment to the statute of limitations could be applied retroactively to the plaintiff's cause of action. In answer to defendants' assertion that the cause of action had not accrued prior to the enactment of the amendment, and that therefore the cause of action was nonexistent, the court stated: | In medical malpractice action in which the discovery rules apply, cause of action accrues when plaintiff knows or reasonably should have known of an injury and also knows or should have known that it was wrongfully caused. | Does cause of action accrue when plaintiff knows or reasonably should have known of an injury in medical practice action in which discovery rules apply? | Action - Memo # 145 - C CS.docx | ROSS-003323962-ROSS-003323964 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5059 | Moore v. Jackson Park Hosp., 95 Ill. 2d 223 | 241+95(12) | In medical malpractice cases in which the discovery rule is applied the cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that it was wrongfully caused. (Witherell v. Weimer (1981), 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 421 N.E.2d 869; see also Nolan v. Johns-Manville Asbestos (1981), 85 Ill.2d 161, 169, 52 Ill.Dec. 1, 421 N.E.2d 864; Lipsey v. Michael Reese Hospital (1970), 46 Ill.2d 32, 40, 262 N.E.2d 450.) The defendants in the Moore case cite West American Insurance Co. v. Sal E. Lobianco & Son Co. (1977), 69 Ill.2d 126, 131, 12 Ill.Dec. 893, 370 N.E.2d 804, for the proposition that, "without accrual there can be no cause of action." The defendants interpret this statement to mean that without accrual no cause of action "exists."Therefore, the defendants argue, the rule regarding statutes which shorten the time in which a "pre-existing" cause of action can be brought, did not apply to plaintiff Woodward's claim in Anderson and does not apply to plaintiff Moore's claim. Defendants assert that in neither case had the cause of action "accrued" prior to the enactment of the amendment to the statute of limitations, and thus their causes of action were nonexistent for purposes of the statute. We do not agree that a cause of action is nonexistent prior to the time of accrual. Logic dictates that a plaintiff cannot bring a cause of action until he knows or reasonably should know of his injury, and also knows or reasonably should know that the injury was caused by the wrongful acts of another. However, that does not mean that the plaintiff does not have an existing cause of action of which he is unaware. | In medical malpractice cases in which discovery rule is applied, cause of action accrues when plaintiff knows or reasonably should know of injury and also knows or reasonably should know that it was wrongfully caused. S.H.A. ch. 83, P 22.1. | Does cause of action accrue when plaintiff knows or reasonably should have known of an injury in medical practice action in which discovery rules apply? | 005550.docx | LEGALEASE-00123877-LEGALEASE-00123879 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 5060 | United States v. Sum of $70,990,605, 234 F. Supp. 3d 212 | 221+342 | Under the act of state doctrine, federal and state courts in the United States must "presume the validity of an "official act of a foreign sovereign performed within its own territory." " Republic of Austria v. Altmann, 541 U.S. 677, 713, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (quoting W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp. 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). The doctrine applies when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." Kirkpatrick, 493 U.S. at 405, 110 S.Ct. 701. Neither a statute nor the "text of the Constitution [requires] the act of state doctrine." Banco National de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Rather, "its continuing vitality depends on its capacity to reflect the proper distribution of the functions between the judicial and political branches of the Government on matters bearing upon foreign affairs." Id. at 427"28, 84 S.Ct. 923. "As such, it operates as a rule of judicial restraint in decision making, not [as] a jurisdictional limitation like the political question doctrine," Hourani v. Mirtchev, 796 F.3d 1, 12 (D.C. Cir. 2015), or as "some vague doctrine of abstention," Kirkpatrick, 493 U.S. at 406, 110 S.Ct. 701. | The act of state doctrine, under which federal and state courts in the United States must presume the validity of an official act of a foreign sovereign performed within its own territory, applies only when a court must decide, that is, when the outcome of the case turns upon, the effect of official action by a foreign sovereign. | Does the act of state doctrine presume the validity of the official acts a recognized foreign sovereign power performs within its own territory? | International Law - Memo # 39 - C - LK.docx | LEGALEASE-00012889-LEGALEASE-00012890 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5061 | Spectrum Stores v. Citgo Petroleum Corp., 632 F.3d 938 | 221+431 | In contrast to political question claims, and "[u]nlike a claim of sovereign immunity, which merely raises a jurisdictional defense," the Supreme Court has stated that "the act of state doctrine provides foreign states with a substantive defense on the merits." Republic of Austria v. Altmann, 541 U.S. 677, 700, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). See also Samantar v. Yousuf, 560 U.S. 305, 130 S.Ct. 2278, 2290, 176 L.Ed.2d 1047 (2010). Because the parties' political question arguments go to the predicate issue of jurisdiction, we address these arguments first. We agree with the district court that adjudication of the case is barred by application of the political question doctrine. | In contrast to political question claims, and unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act of state doctrine provides foreign states with a substantive defense on the merits. | Is the act of state doctrine distinct from immunity and does it provide foreign states with a substantive defense on the merits? | 019757.docx | LEGALEASE-00123377-LEGALEASE-00123378 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5062 | United States v. One Etched Ivory Tusk of African Elephant, 871 F. Supp. 2d 128 | 221+342 | Despite being raised only obliquely by Claimant, the elephant in the room with regard to the United States' first claim for relief, which alleges that Defendant Tusk did not have a valid export permit from Zimbabwe (see Compl. X), is the Act of State doctrine. The traditional idea of the Act of State doctrine is that "the courts of one country will not sit in judgment on the acts of the government of another done within its territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). The basic rationale for the Act of State doctrine is based on separation of powers""the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of a state may hinder rather than further this country's pursuit of goals." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). The court raised the possible applicability of the doctrine at oral argument and received supplemental briefing from the United States on the same issue. (Gov't Supplemental Ltr. (Docket Entry # 40) at 2"9.) In that briefing, the United States conceded that its first claim"that Defendant Tusk had been exported without a valid CITES permit from Zimbabwe"implicitly called on the court to determine that Zimbabwe's grant of a permit was invalid. (Id. at 2.) Thus, the court must consider whether the Act of State doctrine bars granting judgment in favor of the United States on its first claim. | Under the Act of State doctrine, the courts of one country will not sit in judgment on the acts of the government of another done within its territory. | "Under the Act of State doctrine, will the courts of one country sit in judgment on the acts of the government of another done within its territory?" | International Law - Memo # 88 - C - LK.docx | ROSS-003326066-ROSS-003326067 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5063 | Republic of Ecuador v. Dassum, 146 So. 3d 58 | 221+342 | The act of state doctrine is a judicially-created principle of international comity; the courts of Florida and the United States will presumptively defer to governmental acts (whether we might characterize them as executive, legislative, or judicial) taken within the territory of another sovereign nation. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Nat'l Inst. of Agrarian Reform v. Kane, 153 So.2d 40, 42 (Fla. 3d DCA 1963). The doctrine gives effect to the primacy of the executive branch of our own federal government in the conduct of international relations with other countries. | The act of state doctrine gives effect to the primacy of the executive branch of the federal government in the conduct of international relations with other countries. | Does the act of state doctrine give effect to the primacy of the executive branch of the federal government in the conduct of international relations with other countries? | International Law - Memo # 119 - C - CAR.docx | ROSS-003287335-ROSS-003287336 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5064 | In re Refined Petroleum Prod. Antitrust Litig., 649 F. Supp. 2d 572 | 221+342 | As articulated by the United States Supreme Court in Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), and most recently reaffirmed in W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990), the act of state doctrine provides that "the act within its own boundaries of one sovereign State .. becomes .. a rule of decision for the courts of this country." Id. at 705 (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 940"41, 11 L.Ed.2d 804 (1964)) | "Act of state doctrine" provides that the act within its own boundaries of one sovereign state becomes a rule of decision for United States courts. | Does the act of state doctrine provide that the act within its own boundaries of one sovereign state becomes a rule of decision for United States courts? | 019920.docx | LEGALEASE-00123552-LEGALEASE-00123553 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5065 | Jovic v. L-3 Servs., 69 F. Supp. 3d 750 | 221+342 | Similarly, the act of state doctrine is an affirmative defense, on which the defendant carries the burden of proof. See In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978, 491 F.Supp. 161 (N.D.Ill.1979). "The act of state doctrine is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws." Nocula v. UGS Corp., 520 F.3d 719, 727"28 (7th Cir.2008) (internal citations omitted). Courts typically consider three factors in determining whether the doctrine applies: (1) the degree of international consensus regarding the acts of the foreign government challenged by the suit; (2) the implications of the suit for United States foreign relations; and (3) whether the government accused of perpetrating the alleged wrongful acts remains in existence. See Abiola v. Abubakar, No. 02 C 6093, 2005 WL 3050607, at (N.D.Ill. Nov. 8, 2005) (internal citations omitted). See generally Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("It should be apparent that the greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it, since the courts can then focus on the application of an agreed principle to circumstances of fact rather than on the sensitive task of establishing a principle not inconsistent with the national interest or with international justice."). | The "act of state doctrine" is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws. | "Is the ""act of state doctrine"" a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws?" | International Law - Memo # 134 - C - SA.docx | ROSS-003322499-ROSS-003322500 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5066 | Norwood v. Raytheon Co., 455 F. Supp. 2d 597 | 221+342 | The essential principle of the act of state doctrine is that "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897)."[T]he act of state doctrine applies only when the dispute implicates the legitimacy of public acts undertaken by a sovereign nation." Af-Cap Inc. v. Republic of Congo, 383 F.3d 361, 372 n. 14 (5th Cir.2004) (citing Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Callejo, 764 F.2d at 1112-24). Defendants argue that the German Plaintiffs' claims4 would necessarily require the Court to "scrutinize and second-guess the official decisions and acts of the German military and government relating to its radiation safety program for military radar systems between 1958 and 1994" and that such actions by the Court are prohibited by the act of state doctrine. Defs.' Mot. to Dismiss 13. | Under the "act of state doctrine", the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. | "Is the act of state doctrine that the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory?" | 020029.docx | LEGALEASE-00123575-LEGALEASE-00123577 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5067 | United States v. Giffen, 326 F. Supp. 2d 497 | 221+342 | "[T]he act of state doctrine ... "precludes the courts of this country from inquiring into the validity of the Public acts a recognized foreign sovereign power committed within its own territory."" Alfred Dunhill of London v. Republic of Cuba, 425 U.S. 682, 706, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)); accord W.S. Kirkpatrick, 493 U.S. at 405, 110 S.Ct. 701. "Act of state issues only arise when a court must decide"that is, when the outcome of the case turns upon"the effect of official action by a foreign sovereign." W.S. Kirkpatrick, 493 U.S. at 406, 110 S.Ct. 701 (emphasis in original). While a United States court may question the wisdom of a foreign sovereign act, it may not rule on its legality or validity. W.S. Kirkpatrick, 493 U.S. at 406"07, 110 S.Ct. 701. As such, the act of state doctrine requires a court to deem the "acts of foreign sovereigns taken within their own jurisdictions" as lawful and valid. W.S. Kirkpatrick, 493 U.S. at 409, 110 S.Ct. 701. | Under "act of state" doctrine, court is required to deem the acts of foreign sovereigns taken within their own jurisdictions as lawful and valid. | "Under ""act of state"" doctrine, is a court required to deem the acts of foreign sovereigns taken within their own jurisdictions as lawful and valid?" | International Law - Memo # 224 - C - MLS.docx | ROSS-003283806-ROSS-003283807 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5068 | In re Rosacometta, S.r.l, 336 B.R. 557 | 221+140 | The interest of the United States in granting comity is to ensure that "the assets of a debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion." Cunard, 773 F.2d at 458. United States courts, therefore, have "consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." Id. at 458. Moreover, "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes." Id. (quoting Canada Southern Ry. v. Gebhard, 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883)). Thus, U.S. "creditors of a bankrupt foreign corporation may be required to assert their claims against" the foreign debtor before a foreign court. Cunard, 773 F.2d at 458"59. | Every person who deals with foreign corporation impliedly subjects himself to such laws of the foreign government, affecting powers and obligations of corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. | What laws of a foreign government does a person who deals with a foreign corporation impliedly subject himself to? | International Law - Memo # 264 - C - ANC.docx | ROSS-003284444-ROSS-003284446 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5069 | Triad Assocs. v. Robinson, 10 F.3d 492 | 92+2580 | Robinson's argument is a similar attempt to gloss over a what is a fundamental distinction in our jurisprudence, the distinction between right and remedy.7 There are rules of law, many of them clearly established, whose violations in particular cases are simply not suited for vindication. Even if the illegal nature of certain conduct is clear, other institutional concerns will sometimes operate to preclude particular individuals from obtaining relief. For example, courts will not resolve cases requiring the resolution of political questions, see Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), nor cases that necessitate the determination of the validity of an act of a foreign state, see Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). To an aggrieved party a right without a remedy is doubtlessly not much better than no right at all. And in that practical sense, the right/remedy distinction can grow abstract. But its validity and usefulness become manifest precisely in a case like this one. Qualified immunity works to cut off what often would otherwise be legitimate calls for redress. We embrace this doctrine because, by providing some breathing room, it serves the essential function of facilitating public officials in the performance of their lawful duties. Through the doctrine, our jurisprudence seeks to encourage lawful official conduct in a manner short of complete abdication to governmental prerogative. Because qualified immunity represents an attempt at systemic maximization of legitimate official conduct, the availability of a remedy to a particular plaintiff should not be of critical moment in an immunity analysis. We want officials to act lawfully whether or not the circumstances of a given case work to reduce accountability. Kurowski makes clear that a distinction exists in the law, and should exist in the heads of reasonable public officials, between the legality of conduct and the ability of a | Courts will not resolve cases requiring resolution of political questions, nor cases that necessitate determination of validity of act of foreign state. | Will courts resolve cases requiring resolution of political questions or cases that necessitate determination of validity of an act of foreign state? | 020384.docx | LEGALEASE-00123746-LEGALEASE-00123747 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 5070 | Republic of Iraq v. ABB AG, 768 F.3d 145 | 221+342 | Of course, not every action that happens to be taken by officials of a foreign state is properly attributable to that state. For instance, in considering the applicability of the act-of-state doctrine"the affirmative defense that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory," Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("Sabbatino")"courts distinguish "between public and private acts of a foreign official," Republic of the Philippines v. Marcos, 806 F.2d 344, 359 (2d Cir.1986) ( "Marcos"), cert. denied, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); see, e.g., Jimenez v. Aristeguieta, 311 F.2d 547, 557"58 (5th Cir.1962), cert. denied, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963). | In considering the applicability of the act-of-state doctrine, that is, the affirmative defense that precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory, courts distinguish between public and private acts of a foreign official. | Does the act of state doctrine apply to affirmative defenses? | International Law - Memo 328 - RK.docx | ROSS-003285061-ROSS-003285063 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5071 | Walter Fuller Aircraft Sales v. Republic of Philippines, 965 F.2d 1375 | 221+342 | The defendants also argue that the act of state doctrine bars this lawsuit. This doctrine limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts. See W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 404, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990); Callejo, 764 F.2d at 1113. As the invocation of an act of state defense does not call into question federal jurisdiction, the district court's ruling on the issue is not a part of the immediately appealable order denying sovereign immunity. In the exercise of our discretion and in the interest of judicial economy, however, we may consider claims under our pendent appellate jurisdiction that are closely related to the order properly before us. Metlin v. Palastra, 729 F.2d 353, 355 (5th Cir.1984); see also Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1509 (11th Cir.1990); Charles A. Wright, et al., 16 Federal Practice and Procedure " 3937, at 269 (1977 & Supp.1992). Cf. Myers v. Gilman Paper Co., 544 F.2d 837, 847 (5th Cir.1977) (related issues may be decided on appeal from order granting, denying, dissolving or modifying injunction). We exercise this power with caution, Metlin, 729 F.2d at 355, but here it is appropriate because the act of state issue is closely related to the issue of sovereign immunity. | Act of state doctrine limits, for prudential rather than jurisdictional reasons, adjudication in American courts of validity of foreign sovereign's public acts. | Does the act of state doctrine limit adjudication in American courts of the validity of a foreign sovereign's public acts? | 020824.docx | LEGALEASE-00124088-LEGALEASE-00124090 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5072 | Hawkes v. Casino Queen, 336 Ill. App. 3d 994 | 307A+3 | "The purpose of the motion [in limine] is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection." Konieczny v. Kamin Builders, Inc., 304 Ill.App.3d 131, 136, 237 Ill.Dec. 440, 709 N.E.2d 695, 699 (1999). The circuit court is vested with broad discretion to grant a motion in limine "as part of its inherent power to admit or exclude evidence." City of Quincy v. Diamond Construction Co., 327 Ill.App.3d 338, 342"43, 261 Ill.Dec. 141, 762 N.E.2d 710, 714 (2002). Courts of review will not reverse a circuit court's decision to grant a motion in limine absent a clear abuse of discretion. Ficken v. Alton & Southern Ry. Co., 291 Ill.App.3d 635, 642, 226 Ill.Dec. 187, 685 N.E.2d 1, 7 (1996). Further, this court may affirm the circuit court upon any grounds appearing in the record, without regard to whether such grounds were relied upon by the circuit court or whether its reasoning was correct. Ficken, 291 Ill.App.3d at 642, 226 Ill.Dec. 187, 685 N.E.2d at | The purpose of the motion in limine is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection. | Is the purpose of the motion in limine to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection? | Pretrial Procedure - Memo # 201 - C - CRB.docx | ROSS-003330248-ROSS-003330249 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5073 | Butler ex rel. Estate of Butler v. Kokomo Rehab. Hosp., 744 N.E.2d 1041 | 307A+3 | The grant or denial of a pretrial motion on evidentiary issues is within the sound discretion of the trial court. Hopper v. Carey, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), trans. denied. The granting of such a motion is an adjunct of the trial court's inherent power to admit and exclude evidence. The standard of review for admissibility of evidence issues is abuse of discretion. "An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court." Medical and Professional Collection Services, Inc. v. Bush, 734 N.E.2d 626, 631 (Ind.Ct.App.2000). Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice. Hopper, 716 N.E.2d at 570. | Granting of pretrial motion on evidentiary issues is an adjunct of trial court's inherent power to admit and exclude evidence. | Is granting of pretrial motion on evidentiary issues an adjunct of trial court's inherent power to admit and exclude evidence? | Pretrial Procedure - Memo # 299 - C - CRB.docx | ROSS-003297710-ROSS-003297711 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5074 | Gollihue v. Consol. Rail Corp., 120 Ohio App. 3d 378 | 307A+3 | As we previously stated, a motion in limine is an interlocutory ruling, the granting of which operates as a tentative order which can be later modified depending on the circumstances at trial. The court properly modified its prior ruling on the motion in limine because the defendant permitted the introduction of testimony regarding the crossing without making an objection. In doing so, Conrail opened the door for the admission of evidence regarding the PUCO's decision to upgrade the Converse Road crossing. Accordingly, we overrule appellant's first assignment of error. | Motion in limine is an interlocutory ruling, granting of which operates as a tentative order which can be later modified, depending on circumstances at trial. | "Is a motion in limine an interlocutory ruling, the granting of which operates as a tentative order which can be later modified, depending on circumstances at trial?" | Pretrial Procedure - Memo # 329 - C - ANC.docx | ROSS-003326784-ROSS-003326785 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5075 | Jones v. Rallos, 384 Ill. App. 3d 73 | 307A+3 | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. Schuler v. Mid"Central Cardiology, 313 Ill.App.3d 326, 333"34, 246 Ill.Dec. 163, 729 N.E.2d 536 (2000). Thus, to preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court. Sinclair v. Berlin, 325 Ill.App.3d 458, 471, 259 Ill.Dec. 319, 758 N.E.2d 442 (2001). Failure to make such offer of proof results in waiver of the issue on appeal. Sinclair, 325 Ill.App.3d at 471, 259 Ill.Dec. 319, 758 N.E.2d 442. | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. | Is a ruling on a motion in limine a determination addressing an admissibility of evidence issue likely to arise at trial and subject to reconsideration? | Pretrial Procedure - Memo # 332 - C - ANC.docx | ROSS-003298847-ROSS-003298848 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5076 | Hercules v. AIU Ins. Co., 784 A.2d 481 | 307A+3 | It will quickly be seen that this is not a motion in limine. A motion in limine typically concerns the admissibility of evidence and is a preliminary motion directed at establishing the "ground rules applicable at trial." In contrast, a "summary judgment motion is a determination by the court concerning a case or aspect of a case made prior to trial that obviates the need for trial of the matter." In that sense it is not preliminary; it is dispositive of a substantive legal issue. With this in mind, the trial court was correct that Hercules' motion was in reality a motion for summary judgment or partial summary adjudication. There was no dispute about whether the exclusion was filed. The parties agreed that it was not. Therefore the question was an entirely legal one concerning the effect, if any, of the failure to file NMA 1685. Contrary to the language in the motion, there was no issue for the jury to decide and therefore no evidentiary issue. | A "motion in limine" typically concerns the admissibility of evidence and is a preliminary motion directed at establishing the ground rules applicable at trial. | Does a motion in limine typically concern the admissibility of evidence and is a preliminary motion directed at establishing the ground rules applicable at trial? | Pretrial Procedure - Memo # 538 - C - CRB.docx | ROSS-003296787-ROSS-003296788 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5077 | Napoli v. Hinsdale Hosp., 213 Ill. App. 3d 382 | 272+1695 | Thus, in order to invoke the doctrine of res ipsa loquitur, a plaintiff must demonstrate that she was injured, in an occurrence that would not have taken place in the absence of negligence, by an instrumentality or agency under the control of the defendant. (Dyback v. Weber (1986), 114 Ill.2d 232, 102 Ill.Dec. 386, 500 N.E.2d 8; Metz, 32 Ill.2d at 449, 207 N.E.2d 305.) In addition, it must be shown that the injury was not due to any voluntary act or negligence on the part of the plaintiff. (Lynch v. Precision Machine Shop, Ltd. (1982), 93 Ill.2d 266, 66 Ill.Dec. 643, 443 N.E.2d 569; Politakis v. Inland Steel Co. (1983), 118 Ill.App.3d 249, 73 Ill.Dec. 714, 454 N.E.2d 811.) Whether the doctrine is applicable is a question of law which must be decided by the trial court. (Metz, 32 Ill.2d at 449, 207 N.E.2d 305; Woodward v. Mettille (1980), 81 Ill.App.3d 168, 36 Ill.Dec. 354, 400 N.E.2d 934.) This determination may be made at the pre-trial motion stage. Walker v. Rumer (1978), 72 Ill.2d 495, 21 Ill.Dec. 362, 381 N.E.2d 689; Greenberg v. Michael Reese Hospital (1979), 78 Ill.App.3d 17, 33 Ill.Dec. 364, 396 N.E.2d 1088; aff'd in part, rev'd in part 83 Ill.2d 282, 47 Ill.Dec. 385, 415 N.E.2d 390. | Whether doctrine of res ipsa loquitur is applicable is question of law which must be decided by trial court; this determination may be made at pre-trial motion stage. | Can the question whether doctrine of res ipsa loquitur is applicable be determined at pre-trial motion stage? | 041119.docx | LEGALEASE-00123959-LEGALEASE-00123960 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 5078 | Pac. Employers Ins. Co. v. State of California, 3 Cal. 3d 573 | 366+7(1) | If after the giving of stop notices by laborers or materialmen on a public works contract, the surety on a labor and material bond satisfies their claims, the surety is held to be subrogated to the stop notice rights of the claimants against the public agency. (United States Fid. & Guar. Co. v. Oak Grove Union School Dist., Supra, 205 Cal.App.2d 226, 230"234, 22 Cal.Rptr. 907.)In the present case, as stated, no stop notices had been given under Code of Civil Procedure section 1190.1, subdivision (a), and no verified claims filed pursuant to section 1192.1, subdivision (a). Unless and until such notices were given or claims filed, defendant owed no duty to the laborers and materialmen to withhold payment to the contractor (see subd. (e) of Code of Civ.Proc., s 1192.1); accordingly, at the time the progress payments were made they had no rights against the funds to be paid to the contractor under the terms of the construction agreement, to which plaintiff surety is entitled to be subrogated. (See Adamson v. Paonessa (1919) 180 Cal. 157, 160"161(1), 179 P. 880; Los Angeles, etc. Co. v. Coast Const. Co. (1921) 185 Cal. 586, 589, 197 P. 941.) | If, after the giving of stop notices by laborers or materialmen on a public works contract, the surety on a labor and material bond satisfies their claims, the surety is entitled to subrogation to the stop notice rights of the claimants against the public agency. West's Ann.Code Civ.Proc. SS 1190.1(a), 1192.1(a, e). | When is a surety entitled to subrogation of the stop notice rights of the claimant against a public agency? | 044218.docx | LEGALEASE-00122923-LEGALEASE-00122924 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5079 | In re Schubert, 437 B.R. 787 | 366+7(1) | The doctrine of equitable subrogation is an established principle in Maryland jurisprudence and applicable in a bankruptcy case. "That doctrine was declared by this court [in earlier caselaw] to be a peculiar feature of equity not founded on contract but having its origin in a sense of natural justice." Wallace v. Jones, 110 Md. 143, 72 A. 769, 769"70 (1909). " "So soon as a surety pays the debt of a principal debtor, equity subrogates him to the place of the creditor and gives him every right, lien, and security to which the creditor could have resorted for the payment of his debt." " Id. at 770 (citing Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286 (1879)) | Under Maryland law, as soon as surety pays the debt of principal debtor, equity subrogates him to place of creditor that is paid and gives him every right, lien and, security to which creditor could have resorted for payment of debt. | Does a surety who pays the debt for a principal obligor become subrogated to the rights of the creditor including rights in the security? | 044239.docx | LEGALEASE-00123019-LEGALEASE-00123020 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5080 | Health Republic Ins. Co. v. United States, 129 Fed. Cl. 115 | 27+1 | Plaintiff's arguments are persuasive. As previously noted by the United States Court of Claims, "there can be no dispute that, unless otherwise provided by law, the Attorney General is charged by statute with exclusive and plenary power to supervise and conduct all litigation to which the U.S. is a party." Hughes Aircraft Co. v. United States, 534 F.2d 889, 901 (Ct. Cl. 1976) (citing 28 U.S.C. " 516"520 (1970)); accord 28 U.S.C. " 516 (2012) ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); id. " 518(a) ("Except when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue ... suits in the United States Court of Federal Claims ...."); id. " 519 ("Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party ...."); Favell v. United States, 27 Fed.Cl. 724, 750 (1992) ("Courts have consistently upheld the basic principle that the Attorney General is given power over, and general supervision of, all litigation to which the United States or an agency thereof is a party."). In exercise of this authority, the DOJ moved to dismiss plaintiff's claims for lack of jurisdiction pursuant to RCFC 12(b)(1), and not for failure to state a claim upon which relief could be granted pursuant to RCFC 12(b)(6). The DOJ has "exclusive and plenary" control over the United States' defense of this litigation, foreclosing the ability of another government entity from acting on the United States' behalf. Thus, the House cannot separately assert a ground for dismissing plaintiff's complaint that was not raised by the DOJ, especially under the auspices of an amicus curiae brief. Cf. Amoco Oil Co. v. United States, 234 F.3d | United States House of Representatives would not be permitted to file, with Court of Federal Claims, proposed amicus curiae brief supporting Department of Justice's (DOJ) motion to dismiss for lack of subject matter jurisdiction over class action complaint by health insurers, seeking to recover unpaid risk corridor payments owed to insurers, under Patient Protection and Affordable Care Act and implementing regulations, since sole purpose of House's proposed amicus brief was to urge ground for dismissing complaint that was not raised by DOJ's motion, thereby improperly intruding on DOJ's exclusive and plenary authority to litigate case on behalf of United States. 28 U.S.C.A. S 516 et seq.; Pub. L. No. 111-148, 124 Stat. 119; RCFC, Rule 12(b)(1). | Is the United States House of Representatives permitted to file amicus briefs in the Federal Courts? | 008132.docx | LEGALEASE-00124810-LEGALEASE-00124811 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 5081 | United States v. Alfisi, 308 F.3d 144 | 63+1(1) | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be "a specific intent to give ... something of value in exchange for an official act." Sun-Diamond Growers, 526 U.S. at 404-05, 119 S.Ct. 1402 (emphasis in original). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. See United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The element of a quid pro quo or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment be a reward for a past official act or made in the hope of obtaining general good will in the payee's performance of official acts off in the future. See Sun-Diamond Growers, 526 U.S. at 405, 119 S.Ct. 1402; Biaggi, 909 F.2d at 684-85; Myers, 692 F.2d at 841. | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be a specific intent to give something of value in exchange for an official act. 18 U.S.C.A. S 201(b)(1)(A). | Is the corrupt intent required by the bribery statute a specific intent to enter into an unlawful quid pro quo? | 011035.docx | LEGALEASE-00124255-LEGALEASE-00124257 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5082 | United States v. Ciavarella, 716 F.3d 705 | 63+1(1) | A payment constitutes a bribe "as long as the essential intent"a specific intent to give or receive something of value in exchange for an official act"exists." United States v. Kemp, 500 F.3d 257, 282 (3d Cir.2007).The Government is not required to prove that the payments were intended "to prompt a specific official act... [Rather,] payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." Id. (internal quotation marks and citations omitted). | A payment constitutes a "bribe" as long as the essential intent, a specific intent to give or receive something of value in exchange for an official act, exists. | "Does a payment constitute a bribe when a specific intent to give or receive something of value in exchange for an official act, exists?" | 011083.docx | LEGALEASE-00124240-LEGALEASE-00124241 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 5083 | Bass Enterprises Prod. Co. v. United States, 45 Fed. Cl. 120 | 148+2.1 | The Supreme Court set out two categories of regulatory action that are compensable "without case-specific inquiry into the public interest advanced in support of the restraint." Lucas, 505 U.S. at 1015, 112 S.Ct. 2886. The first is regulations that cause a property owner to suffer a physical invasion of his property. Id. The second is regulations that deny a landowner all economically beneficial or productive use of his land. Id.; See also Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). "[T]he Fifth Amendment is violated when land-use regulation "does not substantially advance legitimate state interests or denies an owner economically viable use of his land." " Lucas, 505 U.S. at 1016, 112 S.Ct. 2886 (emphasis added) (quoting Agins, 447 U.S. at 260, 100 S.Ct. 2138). | Two categories of regulatory action are compensable as takings without case-specific inquiry into the public interest advanced in support of the restraint: the first is regulations that cause a property owner to suffer a physical invasion of his property; the second is regulations that deny a landowner all economically beneficial or productive use of his land. | Is the Fifth Amendment violated when land-use regulation does not substantially advance legitimate state interests or denies an owner economically viable use of his land? | Eminent Domain - Memo 242 - GP.docx | ROSS-003295208-ROSS-003295209 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 5084 | Yuba Nat. Res. v. United States, 904 F.2d 1577 | 148+143 | Normally, the proper measure of just compensation for the government's permanent taking of private property is "the fair market value of [the] property at the time of the taking." See, e.g., Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 474, 473"74, 93 S.Ct. 791, 794, 794"95, 35 L.Ed.2d 1 (1973). In the case of a temporary taking, however, since the property is returned to the owner when the taking ends, the just compensation to which the owner is entitled is the value of the use of the property during the temporary taking, i.e., the amount which the owner lost as a result of the taking. First English Evangelical Lutheran Church v. Los Angeles, 482 U.S. 304, 319, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) ("Where this burden results from governmental action that amounted to a [temporary] taking, the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period."). The usual measure of just compensation for a temporary taking, therefore, is the fair rental value of the property for the period of the taking. See, e.g., Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765 (1949) ("[T]he proper measure of compensation [in a temporary takings case] is the rental that probably could have been obtained...."). See also United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) | In the case of a temporary taking, because the property is returned to the owner when the taking ends, just compensation to which the owner is entitled is the value of the use of the property during the temporary taking, i.e., the amount which the owner lost as result of the taking. | "Since the property is returned to the owner when the taking ends, what amounts to be the just compensation to which the owner is entitled is the value of the use of the property during the temporary taking?" | 017540.docx | LEGALEASE-00125333-LEGALEASE-00125334 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5085 | San Diego Metro. Transit Dev. Bd. v. Handlery Hotel, 73 Cal. App. 4th 517 | 148+307(2) | Recovery under this theory requires some "direct" and "special" interference with the landowner's use of the property. " "In order to state a cause of action for inverse condemnation, there must be an invasion or an appropriation of some valuable property right which the landowner possesses and the invasion or appropriation must directly and specially affect the landowner to his injury. [Citation.]" " (Barthelemy v. Orange County Flood Control Dist., supra, 65 Cal.App.4th at p. 564, 76 Cal.Rptr.2d 575, quoting Selby Realty Co. v. City of San Buenaventura (1973) 10 Cal.3d 110, 119"120, 109 Cal.Rptr. 799, 514 P.2d 111; Taper v. City of Long Beach (1982) 129 Cal.App.3d 590, 615, 181 Cal.Rptr. 169.) "Absent a formal resolution of condemnation, the public entity's conduct must have "significantly invaded or appropriated the use or enjoyment of" the property." (Barthelemy v. Orange County Flood Control Dist., supra, 65 Cal.App.4th at p. 565, 76 Cal.Rptr.2d 575, quoting Contra Costa Water Dist. v. Vaquero Farms, Inc., supra, 58 Cal.App.4th at p. 899, 68 Cal.Rptr.2d 272.) In other words, the affirmative conduct of the public entity must have significantly negatively affected the use or enjoyment of the property, lowering its value, physically burdening it, and/or decreasing the income it produced. (Contra Costa Water Dist. v. Vaquero Farms, Inc., supra, 58 Cal.App.4th at pp. 899, 901, 68 Cal.Rptr.2d 272.) Moreover, a showing the public entity's conduct went beyond mere general planning might not be itself adequate to state a claim, as proof that obstacles were placed in plaintiff's path in the use of his or her land is necessary. (Barthelemy v. Orange County Flood Control Dist., supra, 65 Cal.App.4th at p. 565, 76 Cal.Rptr.2d 575; Jones v. City of Los Angeles (1979) 88 Cal.App.3d 965, 972, 152 Cal.Rptr. 256.) Whether there has been unreasonable conduct by the condemner and what constitutes a direct and substantial impairment of property rights for purposes of | Whether there has been unreasonable precondemnation conduct by public entity, and what constitutes a direct and substantial impairment of property rights for purposes of compensation, constitute questions of fact. West's Ann.Cal. Const. Art. 1, S 19. | Does the question whether there has been unreasonable conduct by the condemner and what constitutes a direct and substantial impairment of property rights for purposes of compensation constitute questions of fact? | 017548.docx | LEGALEASE-00125594-LEGALEASE-00125595 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5086 | Allied Bank Int'l v. Banco Credito Agricola de Cartago, 566 F. Supp. 1440 | 221+342 | Even where the defense of sovereign immunity does not apply, nevertheless the act of state doctrine may prevent recovery. Empresa Cubana Exportadora, Inc. v. Lamborn & Co., 652 F.2d 231, 238"9 n. 11 (2d Cir.1981). The act of state doctrine is designed to avoid judicial action which would impinge upon the foreign relations of the United States. IAM v. OPEC, 649 F.2d 1354, 1359 (9th Cir.1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The doctrine ultimately derives from the separation of powers provided in the Constitution. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). | Even where defense of sovereign immunity does not apply to bar suit against a foreign party, act of state doctrine may prevent recovery. | "Even if a defense of sovereign immunity does not apply to bar suit against a foreign party, may an act of state doctrine prevent recovery?" | International Law - Memo 585 - TH.docx | ROSS-003297389-ROSS-003297390 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5087 | Kiker v. City of Philadelphia, 346 Pa. 624 | 221+139 | It follows, therefore, that the Commonwealth of Pennsylvania, when it consented to the purchase of League Island by the National government and ceded jurisdiction over it, could have reserved to itself the right to tax in such area, even though the territory was acquired for use as a dock-yard, just a number of States have done under similar circumstances with respect to land within their respective geographical limits. There can be no logical objection on constitutional grounds if the same result is accomplished by a recession to the State of the right to tax, should Congress see fit by this means to promote local efficiency, as it appears to us to have done in passing Public Act No. 819. Similar retrocessions to the State of the Union are not unusual. While any cession, or recession, of jurisdiction by one sovereignty to another requires an acceptance in order to render it effective (Yellowstone Park Transp. Co. v. Gallatin County, 9 Cir., 31 F.2d 644), such acceptance will be presumed in the absence of a contrary intent. Silas Mason Co. v. Tax Comm., supra. No such contrary intent appears anywhere in the record in the instant case. "The States of the Union and the National Government may make mutually satisfactory arrangements as to jurisdiction of territory within their borders and thus in a most effective way, cooperatively adjust problems flowing from our dual system of government." Collins v. Yosemite Park Co., 304 U.S. 518, 528, 58 S.Ct. 1009, 1013, 82 L.Ed. 1052. | While any cession or recession of jurisdiction by one sovereignty to another requires an acceptance in order to render it effective, such acceptance will be presumed in absence of contrary intent. U.S.C.A.Const. art. 1, § 8, cl. 17. | Does any cession or recession of jurisdiction by one sovereignty to another require an acceptance in order to render it effective? | International Law - Memo # 28 - C- LK.docx | ROSS-003284210-ROSS-003284211 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5088 | United States v. States of La., Tex., Miss., Ala. & Fla., 363 U.S. 1 | 221+138 | The power to admit new States resides in Congress. The President, on the other hand, is the constitutional representative of the United States in its dealings with foreign nations. From the former springs the power to establish state boundaries; from the latter comes the power to determine how far this country will claim territorial rights in the marginal sea as against other nations. Any such determination is, of course, binding on the States. The exercise of Congress' power to admit new States, while it may have international consequences, also entails consequences as between Nation and State. We need not decide whether action by Congress fixing a State's territorial boundary more than three miles beyond its coast constitutes an overriding determination that the State, and therefore this country, are to claim that much territory against foreign nations. It is sufficient for present purposes to note that there is no question of Congress' power to fix state land and water boundaries as a domestic matter. Such a boundary, fully effective as between Nation and State, undoubtedly circumscribes the extent of navigable inland waters and underlying lands owned by the State under the Pollard rule. Were that rule applicable also to the marginal sea"the premise on which Congress proceeded in enacting the Submerged Lands Act"it is clear that such a boundary would be similarly effective to circumscribe the extent of submerged lands beyond low-water mark, and within the limits of the Continental Shelf, owned by the State. For, as the Government readily concedes, the right to exercise jurisdiction and control over the seabed and subsoil of the Continental Shelf is not internationally restricted by the limit of territorial waters. | The right to exercise jurisdiction and control over seabed and subsoil of Continental Shelf is not internationally restricted by limit of territorial waters. | Is the right to exercise jurisdiction and control over seabed and subsoil of the continental shelf internationally restricted by limit of territorial waters? | 020196.docx | LEGALEASE-00124613-LEGALEASE-00124614 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 5089 | Hourani v. Mirtchev, 796 F.3d 1 | 221+342 | Finally, it bears noting that the Houranis' claim arises under District of Columbia law. Congress did not pass the statute at issue, nor did the President sign it into law. The Political Branches thus have not made the sensitive decision to apply defamation law to foreign sovereigns' official communications about events internal to their own territory. Cf. American Insurance Ass'n v. Garamendi, 539 U.S. 396, 425"426, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003) (noting the relative "weakness" of local government's interest in policing official foreign government disclosures). Quite the contrary, the Political Branches have expressly determined that foreign sovereigns should enjoy immunity for claims of "libel, slander, [and] misrepresentation" involving non-commercial matters. 28 U.S.C. " 1605(a)(5)(A). The function of the Act of State doctrine is to promote "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." Kirkpatrick, 493 U.S. at 408, 110 S.Ct. 701. Those same considerations strongly reinforce the appropriateness of our decision not to tread in an area where the Political Branches have waved the courts off. | The function of the act of state doctrine is to promote international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the executive branch in its conduct of foreign relations. | Is the purpose of the Act of State Doctrine to avoid adjudication of actions that foreign states take on their own soil that might embarrass the Executive Branch or interfere with foreign policy? | 020347.docx | LEGALEASE-00125230-LEGALEASE-00125231 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5090 | Garcia v. Chase Manhattan Bank, N.A., 735 F.2d 645 | 221+342 | With regard to its second argument, Chase is correct that under the act of state doctrine United States courts will not question the validity of the actions of foreign governments carried out within their own borders. The classic definition of the doctrine was stated in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897): Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves. See also Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964). | Under act of state doctrine, United States courts will not question the validity of action of foreign government carried out within their own borders. | "Under the act of state doctrine, will United States courts question the validity of the actions of foreign governments carried out within their own borders?" | 020372.docx | LEGALEASE-00124424-LEGALEASE-00124425 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5091 | United States v. Vetco Inc., 691 F.2d 1281 | 221+361 | In assessing the vital national interests of each of the states, a court ought to consider the degree of difference in law or policy, and the nationality of the parties affected. Timberlane Lumber Co., 549 F.2d at 614 & nn.32-33.9 There is a strong American interest in collecting taxes from and prosecuting tax fraud by its own nationals operating through foreign subsidiaries. Switzerland has a similar interest. See Convention on Double Taxation of Income, 2 U.S.T. at 1760. Yet Switzerland also has an interest in preserving the secrecy of business records. Its interest is diminished in this case, where the parties are subsidiaries of American corporations. See Timberlane Lumber Co., supra. The Swiss Attorney General has distinguished between cases where there is a public interest in keeping information secret, and cases where only private interests are involved. In the latter type of case, Article 273 prohibits disclosure only if the party whose business secret is being divulged does not consent. Gerber, Einige Probleme Des Wirtschaftlichen Nachrichtendienstes, Zeitschrift Fur Schweiz 257 (1977). A representative of the Swiss Federal Attorney stated that the instant case "apparently does not concern a totally Swiss interest in confidentiality." Record, vol. 1, at 106. Thus, Switzerland's only interest is in protecting the privacy of its non-consenting domiciliaries. This interest is further diminished where the party seeking the records is the IRS, which is required by law to keep the information confidential. I.R.C. " 6103(a). | In assessing vital national interests of each state, as bearing upon whether enforcement of summons is precluded by illegality, of compliance, under foreign law, court ought to consider degree of difference in law or policy, and nationality of parties affected, and interest of Switzerland was diminished where parties were subsidiaries of American corporations, and further diminished where party seeking records was Internal Revenue Service, required by law to keep information confidential. 26 U.S.C.A. S 7852(d). | In assessing vital national interests of each state ought a court to consider the degree of difference in law or policy? | 020423.docx | LEGALEASE-00124790-LEGALEASE-00124791 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 5092 | Pollard v. Hagan, 44 U.S. 212 | 393+202 | If it were true that the United States acquired the whole of Alabama from Spain, no such consequences would result as those contended for. It cannot be admitted that the King of Spain could, by treaty or otherwise, impart to the United States any of his royal prerogatives; and much less can it be admitted that they have capacity to receive or power to exercise them. Every nation acquiring territory, by treaty or otherwise, must hold it subject to the constitution and laws of its own government, and not according to those of the government ceding it. Vat. Law of Nations, b. 1, c. 19, s. 210, 244, 245, and b. 2, c. 7, s. 80. | Every nation acquiring territory by treaty or otherwise must hold it subject to the constitution and laws of its own government and not according to those of the government ceding it. | Must every nation acquiring territory by treaty or otherwise hold it subject to the constitution and laws of its own government? | 020455.docx | LEGALEASE-00125185-LEGALEASE-00125186 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5093 | Doe I v. State of Israel, 400 F. Supp. 2d 8 | 221+342 | A close cousin of the political question doctrine, the act of state doctrine prevents a court from deciding a case "when the outcome turns upon the legality or illegality .. of official action by a foreign sovereign performed within its own territory." Owens v. Republic of Sudan, 374 F.Supp.2d 1, 26 (D.D.C.2005) (quoting Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS, 163 F.3d 1363, 1367 (D.C.Cir.1999)). While the political question doctrine is based on constitutional separation of powers concerns, see Doe Mem. Op. at 9, the act of state doctrine is based on prudential separation of powers concerns, see Siderman de Blake, 965 F.2d 699, 707 (9th Cir.1992), as well as notions of sovereign respect and intergovernmental comity, see Rong, 362 F.Supp.2d at 99 n. 12. It reflects the judiciary's reluctance to complicate foreign affairs by validating or invalidating the actions of foreign sovereigns. Owens, 374 F.Supp.2d at 26 (quoting W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). The doctrine is implicated "when the outcome of a case turns upon [ ] the effect of official action by a foreign sovereign." Abu Ali v. Ashcroft, 350 F.Supp.2d 28, 57"58 (D.D.C.2004) (citing W.S. Kirkpatrick, 493 U.S. at 407"10, 110 S.Ct. 701). When it applies, the act of state doctrine is a rule of law that requires courts to presume that actions taken within a foreign sovereign's own territory are valid. World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1165 (D.C.Cir.2002). | The act of state doctrine reflects the judiciary's reluctance to complicate foreign affairs by validating or invalidating the actions of foreign sovereigns. | Does the act of state doctrine reflect the judiciary's reluctance to complicate foreign affairs by validating or invalidating the actions of foreign sovereigns? | 020485.docx | LEGALEASE-00125268-LEGALEASE-00125270 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5094 | Hernandez v. United States, 757 F.3d 249 | 221+391 | Specifically, three "objective factors and practical concerns" are relevant to our extraterritoriality determination: (1) the citizenship and status of the claimant, (2) the nature of the location where the constitutional violation occurred, and (3) the practical obstacles inherent in enforcing the claimed right. Cf. id. at 766"71, 128 S.Ct. 2229. The relevant practical obstacles include the consequences for U.S. actions abroad, the substantive rules that would govern the claim, and the likelihood that a favorable ruling would lead to friction with another country's government. See id.; Verdugo"Urquidez, 494 U.S. at 273"74, 110 S.Ct. 1056; id. at 278, 110 S.Ct. 1056 (Kennedy, J., concurring). These factors are not exhaustive, as the relevant considerations may change with the facts of an individual case, but they do provide a baseline for addressing questions of extraterritoriality. | Three objective factors and practical concerns are relevant to Court of Appeals' extraterritoriality determination: (1) the citizenship and status of the claimant, (2) the nature of the location where the constitutional violation occurred, and (3) the practical obstacles inherent in enforcing the claimed right. | Which objective factors and principles are relevant to the extraterritoriality determination? | 020617.docx | LEGALEASE-00125043-LEGALEASE-00125046 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5095 | Beanal v. Freeport-McMoran, 197 F.3d 161 | 24+763 | Nevertheless, "[i]t is only where the nations of the world have demonstrated that the wrong is of mutual and not merely several, concern, by means of express international accords, that a wrong generally recognized becomes an international law violation in the meaning of the [ATS]." Filartiga, 630 F.2d at 888. Thus, the ATS "applies only to shockingly egregious violations of universally recognized principles of international law." See Zapata v. Quinn, 707 F.2d 691, 692 (2d Cir.1983)(per curiam). Beanal fails to show that these treaties and agreements enjoy universal acceptance in the international community. The sources of international law cited by Beanal and the amici merely refer to a general sense of environmental responsibility and state abstract rights and liberties devoid of articulable or discernable standards and regulations to identify practices that constitute international environmental abuses or torts. Although the United States has articulable standards embodied in federal statutory law to address environmental violations domestically, see The National Environmental Policy Act (42 U.S.C. " 4321 et seq.) and The Endangered Species Act (16 U.S.C. " 1532), nonetheless, federal courts should exercise extreme caution when adjudicating environmental claims under international law to insure that environmental policies of the United States do not displace environmental policies of other governments. Furthermore, the argument to abstain from interfering in a sovereign's environmental practices carries persuasive force especially when the alleged environmental torts and abuses occur within the sovereign's borders and do not affect neighboring countries. Therefore, the district court did not err when it concluded that Beanal failed to show in his pleadings that Freeport's mining activities constitute environmental torts or abuses under international law. | It is only when nations of world have demonstrated that the wrong is of mutual and not merely several concern, by means of express international accords, that a wrong generally recognized becomes international law violation within meaning of Alien Tort Statute (ATS). 28 U.S.C.A. S 1350. | When does a wrong become an international violation within meaning of the Alien Tort Claims Act? | 020841.docx | LEGALEASE-00124930-LEGALEASE-00124931 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5096 | Doe I v. State of Israel, 400 F. Supp. 2d 8 | 221+342 | A close cousin of the political question doctrine, the act of state doctrine prevents a court from deciding a case "when the outcome turns upon the legality or illegality .. of official action by a foreign sovereign performed within its own territory." Owens v. Republic of Sudan, 374 F.Supp.2d 1, 26 (D.D.C.2005) (quoting Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS, 163 F.3d 1363, 1367 (D.C.Cir.1999)). While the political question doctrine is based on constitutional separation of powers concerns, see Doe Mem. Op. at 9, the act of state doctrine is based on prudential separation of powers concerns, see Siderman de Blake, 965 F.2d 699, 707 (9th Cir.1992), as well as notions of sovereign respect and intergovernmental comity, see Rong, 362 F.Supp.2d at 99 n. 12. It reflects the judiciary's reluctance to complicate foreign affairs by validating or invalidating the actions of foreign sovereigns. Owens, 374 F.Supp.2d at 26 (quoting W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). The doctrine is implicated "when the outcome of a case turns upon [ ] the effect of official action by a foreign sovereign." Abu Ali v. Ashcroft, 350 F.Supp.2d 28, 57"58 (D.D.C.2004) (citing W.S. Kirkpatrick, 493 U.S. at 407"10, 110 S.Ct. 701).When it applies, the act of state doctrine is a rule of law that requires courts to presume that actions taken within a foreign sovereign's own territory are valid. World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1165 (D.C.Cir.2002). | The act of state doctrine is implicated when the outcome of a case turns upon the effect of official action by a foreign sovereign. | Is the act of state doctrine implicated when the outcome of a case turns upon the effect of official action by a foreign sovereign? | 020848.docx | LEGALEASE-00125291-LEGALEASE-00125293 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 5097 | In re Vitamin C Antitrust Litig., 584 F. Supp. 2d 546 | 221+342 | The act of state doctrine derives from both separation of powers and respect for the sovereignty of other nations. It holds that the courts of one nation may not sit in judgment of the public acts of another sovereign within its own borders. See Republic of Austria v. Altmann, 541 U.S. 677, 700, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). The reasons for the doctrine were outlined by the Supreme Court over a century ago:Every sovereign state is bound to respect the independence of every other sovereign state and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). Thus, any censure of another country's acts within its own territory is reserved to diplomatic channels and does not come within the purview of the courts. See Oetjen v. Central Leather Co., 246 U.S. 297, 304, 38 S.Ct. 309, 62 L.Ed. 726 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." (internal quotation marks omitted)). The Supreme Court has built upon the foundations of the act of state doctrine to note that, in the context of adjudicating the legality of expropriations by a foreign state, "[p]iecemeal dispositions of this sort involving the probability of affront to another state could seriously interfere with negotiations being carried on by the Executive Branch and might prevent or render less favorable the terms of an agreement that could otherwise be reached." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 432, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Thus, the act of state doctrine is aimed at reserving for the executive branch | The act of state doctrine is aimed at reserving for the executive branch decisions that may significantly affect international relations. | Is the act of state doctrine aimed at reserving for the executive branch decisions that may significantly affect international relations? | International Law - Memo 587 - TH.docx | ROSS-003316606-ROSS-003316607 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5098 | Nocula v. UGS Corp., 520 F.3d 719 | 221+342 | The act-of-state doctrine is a judicial rule that "generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws." F. & H.R. Farman"Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co., 882 F.2d 281, 283 (7th Cir.1989); First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 769, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) ("The act of state doctrine .. is a judicially accepted limitation on the normal adjudicative processes of the courts, springing from the thoroughly sound principle that on occasion individual litigants may have to forgo decision on the merits of their claims because the involvement of the courts in such a decision might frustrate the conduct of the Nation's foreign policy."); Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897); see also Sarei v. Rio Tinto, PLC, 456 F.3d 1069, 1084"85 (9th Cir.2006); Gross v. German Found. Indus. Initiative, 456 F.3d 363, 391"92 (3d Cir.2006). Kin to the doctrine of sovereign immunity, the act-of-state doctrine arises from the presumption of validity accorded to the official public acts of a foreign country, see Underhill, 168 U.S. at 252, 18 S.Ct. 83; Farman"Farmaian, 882 F.2d at 283, and the concern that "application of customary principles of law to judge the acts of a foreign sovereign might frustrate the conduct of foreign relations by the political branches of the government," First Nat'l City Bank, 406 U.S. at 767"68, 92 S.Ct. 1808. | The act-of-state doctrine is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws. | Is the act-of-state doctrine a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws? | International Law - Memo 590 - TH.docx | ROSS-003309297-ROSS-003309299 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5099 | United States v. Noriega, 746 F. Supp. 1506 | 221+342 | Noriega next argues that the act of state doctrine prohibits the Court from adjudicating the legality of his official actions in Panama. Unlike head of state immunity, the act of state doctrine presents no jurisdictional question but instead addresses the Court's permissible scope of inquiry into certain governmental acts. It is more properly understood as an issue preclusion device rather than an immunity prohibiting prosecution. Restatement (Third) " 443, Reporters' Note 11. See also National American Corp. v. Federal Republic of Nigeria, 448 F.Supp. 622, 640 n. 30 (S.D.N.Y.1978) (contrasting sovereign immunity with the act of state doctrine), aff'd, 597 F.2d 314 (2d Cir.1979). The classic expression of the doctrine is stated in Underhill v. Hernandez: "Every sovereign is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgement on the acts of the government of another done within its own territory." 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). More than 60 years later, the Supreme Court reaffirmed the doctrine in Banco Nacional de Cuba v. Sabbatino, in which case the Court refused to examine the Cuban government's taking of property in Cuba owned by a Cuban corporation without compensation. 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). See also Frolova v. Union of Soviet Socialist Republics, 558 F.Supp. 358, 364 (N.D.Ill.1983) (act of state doctrine barred court from examining the Soviet Union's refusal to allow plaintiff's husband to emigrate to the United States), aff'd, 761 F.2d 370 (7th Cir.1985); Banco De Espana v. Federal Reserve Bank, 114 F.2d at 443 (court may not determine whether Spanish Finance Minister's alleged diversion of silver was illegal under Spanish law); Hatch v. Baez, 7 Hun. 596 (N.Y.Sup.Ct.1876) (doctrine prevented court from reviewing acts of former president of the Dominican Republic in his official capacity). | According to act of state doctrine, every sovereign is bound to respect independence of every other sovereign state, and courts of one country will not sit in judgment on acts of government of another done within its own territory. | "According to act of state doctrine, is every sovereign bound to respect independence of every other sovereign state?" | 020967.docx | LEGALEASE-00124549-LEGALEASE-00124551 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5100 | Gross v. German Found. Indus. Initiative, 456 F.3d 363 | 221+162 | International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895); see Remington Rand v. Bus. Sys. Inc., 830 F.2d 1260, 1266 (3d Cir.1987). Generally, United States courts will not review acts of foreign governments and will defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. See, e.g., Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440"44 (3d Cir.1971); Pravin Banker Assocs. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir.1997). But a court may deny comity to a foreign legislative, executive, or judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest" of the United States. Somportex, 453 F.2d at 440. | A court may deny comity to a foreign legislative, executive, or judicial act if it finds that the extension of comity would be contrary or prejudicial to the interest of the United States. | Can United States courts extend comity to foreign proceedings and when doing so would it be contrary to policies or prejudicial to interests of the United States? | 020972.docx | LEGALEASE-00124581-LEGALEASE-00124583 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5101 | Chicago Exhibitors Corp. v. Jeepers! of Illinois, 376 Ill. App. 3d 599 | 307A+3 | "A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence," and, generally, this "court will not disturb the trial court's ruling on a motion in limine absent a clear abuse of discretion." Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001), citing People v. Williams, 188 Ill.2d 365, 369, 242 Ill.Dec. 260, 721 N.E.2d 539 (1999). "However, a trial court must exercise its discretion within the bounds of the law." Beehn, 321 Ill.App.3d at 680, 254 Ill.Dec. 598, 747 N.E.2d 1010. Where a trial court's exercise of discretion relies on an erroneous conclusion of law, as the Swentos claim, our review is de novo. Beehn, 321 Ill.App.3d at 680"81, 254 Ill.Dec. 598, 747 N.E.2d 1010. | A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence, and, generally, the Appellate Court will not disturb the trial court's ruling on a motion in limine absent a clear abuse of discretion. | Is a motion in limine addressed to the trial court's inherent power to exclude evidence? | Pretrial Procedure - Memo # 592 - C - SSB.docx | ROSS-003310833-ROSS-003310834 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5102 | Montz v. Hill-Mont Land Co., 329 N.W.2d 657 | 307A+2 | An application for separate adjudication of law points is properly considered only when the questions of law arise from uncontroverted pleadings. The application is inappropriate when material facts are disputed. M & W Farm Service Co. v. Callison, 285 N.W.2d 271, 274 (Iowa 1979). If the pleadings reveal fact issues with respect to the law points, disposition under rule 105 is inappropriate unless the parties stipulate the facts. Andersen Construction Co. of Council Bluffs v. National Bank of Des Moines, 262 N.W.2d 563, 564-65 (Iowa 1978). | An application for separate adjudication of law points is properly considered only when questions of law arise from uncontroverted pleadings, and is inappropriate when material facts are disputed. Rules Civ.Proc., Rule 105. | Does the application for separate adjudication of law points have to arise from uncontroverted facts in the pleadings to be properly considered? | Pretrial Procedure - Memo # 618 - C - SSB.docx | ROSS-003324124-ROSS-003324125 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5103 | Martin v. Sally, 341 Ill. App. 3d 308 | 388+43 | At issue are several evidentiary rulings rendered by the trial court in its consideration of the motions in limine brought by the parties to this appeal. Motions in limine are designed to produce a trial without the introduction of prejudicial material. Konieczny v. Kamin Builders, Inc., 304 Ill.App.3d 131, 136, 237 Ill.Dec. 440, 709 N.E.2d 695 (1999). On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. Green v. Union Pacific R.R. Co., 269 Ill.App.3d 1075, 1082, 207 Ill.Dec. 599, 647 N.E.2d 1092 (1995). A trial court's decision on a motion in limine will not be disturbed absent an abuse of discretion. Hallowell v. University of Chicago Hospital, 334 Ill.App.3d 206, 210, 267 Ill.Dec. 632, 777 N.E.2d 435 (2002). In case of trial court error, a reversal is called for only if the evidence improperly admitted was sufficiently prejudicial to change the outcome of the trial. Cairns v. Hansen, 170 Ill.App.3d 505, 511, 120 Ill.Dec. 757, 524 N.E.2d 939 (1988) | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | "On review, dDoes a trial court judge maintain broad discretion in the admission of evidence and in ruling upon a motion in limine?" | Pretrial Procedure - Memo # 240 - C - ANC.docx | LEGALEASE-00015053-LEGALEASE-00015054 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5104 | Mardirossian & Assocs. v. Ersoff, 153 Cal. App. 4th 257 | 307A+3 | The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party." " (Kelly v. New West Federal Savings (1996) 49 Cal.App.4th 659, 669, 56 Cal.Rptr.2d 803 (Kelly ).) Although in limine motions are typically brought at the beginning of trial, they may also be brought during trial when evidentiary issues are anticipated by the parties. (Ibid.) As rulings on the admissibility of evidence, they are subject to review on appeal for abuse of discretion. (People v. Alvarez (1996) 14 Cal.4th 155, 203, 58 Cal.Rptr.2d 385, 926 P.2d 365 ["appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion"]; KB Home v. Superior Court (2003) 112 Cal.App.4th 1076, 1083, 5 Cal.Rptr.3d 587.). | Although in limine motions are typically brought at the beginning of trial, they may also be brought during trial when evidentiary issues are anticipated by the parties. | "Although in limine motions are typically brought at the beginning of trial, may they also be brought during trial when evidentiary issues are anticipated by the parties?" | Pretrial Procedure - Memo # 427 - C - HAM.docx | ROSS-003298830-ROSS-003298831 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5105 | Linstrom v. Normile, 2017 ND, 899 N.W.2d 287 | 307A+3 | "We have long held that an effective appeal of any issue must be appropriately raised in the trial court in order for us to intelligently rule on it." State v. Steen, 2015 ND 66, 860 N.W.2d 470 (citation omitted). "In general, a party must object at the time the alleged irregularity occurs; failure to object acts as a waiver of the claim of error." Andrews v. O'Hearn, 387 N.W.2d 716, 730 (N.D. 1986) (citations omitted). The party must object at the time the error occurs during trial so "the trial court may take appropriate action if possible to remedy any prejudice that may have resulted." Piatz v. Austin Mutual Ins. Co., 2002 ND 115, 646 N.W.2d 681. "A motion in limine seeking an evidentiary ruling must be decided without the benefit of evaluating the evidence in the context of trial." Steen, at (citation omitted). "A renewed objection at the time the evidence is offered focuses the court on the objection in the trial context at which time both the relevance and the potential for prejudice will be more discernable." Id. (citation omitted). | A motion in limine seeking an evidentiary ruling must be decided without the benefit of evaluating the evidence in the context of trial. | Must a motion in limine seeking an evidentiary ruling be decided without the benefit of evaluating the evidence in the context of trial? | 030782.docx | LEGALEASE-00124824-LEGALEASE-00124825 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 5106 | Montz v. Hill-Mont Land Co., 329 N.W.2d 657 | 307A+2 | Defendants Hill-Mont Land Co. and Central Iowa Railway and Development Co., aggrieved by an interlocutory ruling on plaintiffs' application to adjudicate law points, Iowa R.Civ.P. 105, sought and were granted this appeal in advance of final judgment. Iowa R.App.P. The appeal turns on the propriety of the trial court's ruling that, as a matter of law, plaintiffs' predecessors in title conveyed to defendants' predecessors an interest in land for a railroad right of way which was an easement rather than a determinable fee. We conclude that it was inappropriate under this record for the court to construe this conveyance instrument by a ruling on an application for adjudication of law points. Accordingly, we reverse the trial court's ruling and remand for further proceedings. | It was inappropriate for the trial court to construe instrument conveying an interest in land for a railroad right-of-way by a ruling on an application for adjudication of law points, where material facts concerning the deed were in dispute and were not stipulated. Rules Civ.Proc., Rule 105. | Is it inappropriate for a trial court to construe an instrument conveying an interest in land for a railroad right-of-way by a ruling on an application for adjudication of law points? | 031757.docx | LEGALEASE-00125349-LEGALEASE-00125350 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5107 | Hand v. Pettitt, 258 Ga. App. 170 | 307A+3 | (Citations, punctuation and footnote omitted; emphasis in original.) State v. Johnston, 249 Ga. 413, 415(3), 291 S.E.2d 543 (1982); see also Andrews v. Wilbanks, supra at 556, 458 S.E.2d 817. Where the evidence may be relevant and material if certain foundational facts are proven, the trial court does not abuse its discretion excluding such evidence until the proper foundation has been laid before the court to make such evidence relevant and create an issue of proof. Id.; Jakobsen v. Colonial Pipeline Co., 237 Ga.App. 441, 446(3), 514 S.E.2d 851 (1999) (trial court can modify a grant of a motion in limine); Dept. of Transp. v. Wallace Enterprises, 234 Ga.App. 1, 4(6), 505 S.E.2d 549 (1998) (denied motion in limine). However, when admission of certain evidence is a matter of law instead of a mixed question of law and fact, the trial court does not abuse its discretion in granting a motion in limine where there are no circumstances under which disputed evidence is admissible. Andrews v. Wilbanks, supra at 556, 458 S.E.2d 817. | When admission of certain evidence is a matter of law instead of a mixed question of law and fact, a trial court does not abuse its discretion in granting a motion in limine, where there are no circumstances under which disputed evidence is admissible. | Does a trial court abuse its discretion in denying a motion in limine and admitting disputed evidence? | 036847.docx | LEGALEASE-00125093-LEGALEASE-00125094 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5108 | Honaker v. Mahon, 210 W. Va. 53 | 307A+3 | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. Jurisdictions are generally in agreement that a deliberate and intentional violation of a trial court's ruling on a motion in limine, and thereby the intentional introduction of prejudicial evidence, is a ground for reversing a jury's verdict. However, "[i]n order for a violation of an in limine motion to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear." Kjerstad v. Ravellette Publications, Inc., 517 N.W.2d 419, 426 (S.D.1994). | The purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. | Is the purpose of a motion in limine to prevent an opposing party from asking prejudicial questions? | Pretrial Procedure - Memo # 841 - C - VA.docx | ROSS-003285253-ROSS-003285254 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5109 | Castaneda v. Texas Dep't of Protective & Regulatory Servs., 148 S.W.3d 509 | 307A+3 | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963); Trevino v. Texas Department of Protective and Regulatory Services, 893 S.W.2d 243, 249 (Tex.App.-Austin 1995, no writ). The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. Trevino, 893 S.W.2d at 249. Thus, the error, if any, relates to the discussion of this evidence during voir dire. | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. | Is a motion in limine designed solely to require a court to inquire into the admissibility of the evidence at issue before introducing that evidence to the jury? | Pretrial Procedure - Memo # 916 - C - TJ.docx | ROSS-003329052-ROSS-003329053 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 5110 | Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746 | 307A+3 | We begin by addressing Lone Star Gas's disregard for the motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Id. The trial court's ruling on a motion in limine is not a ruling that excludes or admits evidence; it is merely a tentative ruling that prohibits a party from asking a certain question or offering certain evidence in front of the jury without first approaching the bench for a ruling. See Chavis v. Director, 924 S.W.2d 439, 446 (Tex.App."Beaumont 1996, no writ). When a trial court's order on a motion in limine is violated, we review the violation to see if it is curable by instructions to the jury to disregard it. See Dove v. Director, State Employees Workers' Compensation Div., 857 S.W.2d 577, 580 (Tex.App."Houston [1st Dist.] 1993, writ denied). | The trial court's ruling on a motion in limine is not a ruling that excludes or admits evidence, but is merely a tentative ruling that prohibits a party from asking a certain question or offering certain evidence in front of the jury without first approaching the bench for a ruling. | Is the granting of a motion in limine a final ruling on the evidence? | Pretrial Procedure - Memo # 921 - C - TJ.docx | ROSS-003326860-ROSS-003326861 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5111 | ADP Marshall v. Noresco, 710 F. Supp. 2d 197 | 366+1 | Subrogation is intended to reimburse a party compelled to discharge a debt owed by another party. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136"37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). Although subrogation may originate from a contractual agreement, " "[i]t is a creature of equity; it is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." " Pearlman v. Reliance Ins. Co., 371 U.S. at 137 n. 12, 83 S.Ct. 232. "Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement .. there are few doctrines better established that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Id. at 137, 83 S.Ct. at 235. See U.S. Fidelity & Guar. Co. v. Rhode Island, 53 R.I. 397, 167 A. 143, 146 (1933) ("A surety which has to pay out money as surety on a building contractor's bond is entitled to be subrogated to the rights of the contractor in any balance due him."). Conversely, claims by owners/obligees under a payment bond are not favored by caselaw. See, e.g., Fed. Ins. Co. v. Maine Yankee Atomic Power Co., 183 F.Supp.2d 76, (D.Me.2001) (collecting cases); Am. Mfrs. Mut. Ins. Co. v. Sherborn Meadows, 2008 WL 5396479 (D.Mass. Dec. 22, 2008) (unpublished decision). | Although subrogation may originate from a contractual agreement, it is a creature of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is subrogation enforced solely for the purpose of accomplishing the ends of substantial justice? | Subrogation - Memo 359 - NS.docx | ROSS-003324097-ROSS-003324099 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5112 | In re Monaco, 514 B.R. 477 | 366+2 | Like Tag, SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff...." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Texas courts interpret the doctrine of equitable subrogation liberally and apply it in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by thelatter. | Do courts liberally interpret the doctrine of equitable subrogation? | 044410.docx | LEGALEASE-00125156-LEGALEASE-00125157 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5113 | Dryden v. Cincinnati Bell Tel. Co., 135 Ohio App. 3d 394 | 386+6 | Moreover, the interference has to amount to more than intermeddling.According to Section 218 of the Restatement 2d, Torts, a trespasser to chattel is liable "if, but only if," one of the following occurs:"(a) he dispossesses the other of the chattel, or"(b) the chattel is impaired as to its condition, quality, or value, or"(c) the possessor is deprived of the use of the chattel for a substantial time, or"(d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." | Trespasser to chattel is liable if, but only if: (1) he dispossesses the other of the chattel; or (2) the chattel is impaired as to its condition, quality, or value; or (3) the possessor is deprived of the use of the chattel for a substantial time; or (4) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. Restatement (Second) of Torts S 218. | Does the interference required to make a claim for trespass to chattels need to be more than intermeddling? | 047161.docx | LEGALEASE-00125752-LEGALEASE-00125753 | SA, Sub | 0.22 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5114 | Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG, 624 F. Supp. 2d 582 | 386+7 | TIPA has also brought a state law claim against Hoerbiger for trespass to chattels. A trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. Armstrong v. Benavides, 180 S.W.3d 359, 363 (Tex.App.-Dallas 2005, no pet. h.); Omnibus Int'l, Inc. v. AT & T, Inc., 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. granted, judgm't vacated w.r.m). For reasons similar to its conversion claim, this claim also fails. TIPA has produced no evidence on summary judgment of actual damage to the domain name, or that it is currently the owner of the name. The court will also dismiss this claim. | Under Texas law, a trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. | Can damage to the property or depriving the owner of its use for a substantial period of time constitute a trespass to chattel? | 047173.docx | LEGALEASE-00125774-LEGALEASE-00125775 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5115 | Dingley v. Oler, 117 U.S. 490 | 13+61 | We do not find any such refusal to have been given or acted upon in the present case, and the facts are not stronger than those in Avery v. Bowden, 5 El. & Bl. 714, and 6 El. & Bl. 953, which were held not to constitute a breach or renunciation of the contract. The most recent English case on the subject is that of Johnstone v. Milling, in the court of appeal, 16 Q. B. Div. 460, decided in January of the present year, which holds that the words or conduct relied on as a breach of the contract by anticipation must amount to a total refusal to perform it, and that that does not, by itself, amount to a breach of the contract unless so acted upon and adopted by the other party. | The words or conduct relied on as a breach of the contract by anticipation must amount to a total refusal to perform it, and that does not, by itself, amount to a breach of the contract, unless so acted upon and adopted by the other party. | Should the words or conduct relied on as a breach of the contract by anticipation amount to a total refusal to perform it? | Action - Memo # 129 - C - SB.docx | ROSS-003286228-ROSS-003286229 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5116 | Culbertson v. Cabeen & Jarman, 29 Tex. 247 | 13+61 | As to notes not due when the attachment was sued out, the right of the party to sue and of the court to entertain the suit depends upon the attachment, for it is by the attachment alone that a debt not due can be sued; and the suit must abide the fate of the attachment. Pas. Dig. art. 154, note 265; 6 Tex. 196. | Where notes are not due when an attachment is sued out, the right of a party to sue and of the court to entertain the suit depends upon the attachment, for it is by attachment alone that a debt not due can be sued, and the suit must abide the fate of the attachment. | Does the right of a party to sue and of the court to entertain the suit depend upon the attachment? | 005453.docx | LEGALEASE-00126155-LEGALEASE-00126156 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |
| 5117 | Pedrina v. Chun, 906 F. Supp. 1377 | 63+1(1) | Defendants Masanori Kobayashi and Yoshinori Hayashida contend that the illegal contributions were merely "good will" expenditures, intended to promote a favorable business climate generally, and not payments specifically intended to influence Fasi and others to act favorably towards the donors. "Not every gift, favor or contribution to a government or political official constitutes bribery." United States v. Arthur, 544 F.2d 730, 734 (4th Cir.1976). Rather, the intent that the official's actions be influenced by the gift, favor or contribution is crucial to a violation of the state bribery statute. Id.; H.R.S. " 710- 1040(1)(b). Although vague expectations of some future benefit is not sufficient to make a campaign contribution a bribe, in the case at bar, Plaintiffs allege that Defendants sought specific benefit in the form of the CUP and non-enforcement of its provisions in exchange for the contributions. It is undisputed that Defendants illegally contributed the funds while YYVC was in the process of developing a golf course which it had recently obtained a special use permit to build. There is also evidence that at least some of the contributions, subsequently returned as improper, were then resubmitted in cash form. The Court further notes that all of the Defendants refused to answer questions regarding the contributions in their depositions. Therefore, the Court finds Plaintiffs have raised a genuine issue of fact as to whether Defendants made the illegal contributions with the intent to influence the decisions of Fasi or other government officials. Case 4: United States v. Wright, 665 F.3d 560. | Under Hawai"i law, not every gift, favor, or contribution to government or political official constitutes bribery; rather, intent that official's actions be influenced by gift, favor, or contribution is crucial to violation of state bribery statute. HRS S 710-1040(1)(b). | "Does every gift, favor or contribution to a government or political official constitute bribery?" | Bribery - Memo # 41 - C-NA.docx | ROSS-003298504-ROSS-003298505 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5118 | Calprop Corp. v. City of San Diego, 77 Cal. App. 4th 582 | 148+2.10(1) | Takings jurisprudence not only requires a final determination as to the permissible level of development for a particular parcel, but also largely relieves regulatory agencies of liability for delays which may occur while such a determination is being reached. (See Landgate, Inc. v. California Coastal Com. (1998) 17 Cal.4th 1006, 1030, 73 Cal.Rptr.2d 841, 953 P.2d 1188 (Landgate ); Kawaoka v. City of Arroyo Grande (1994) 17 F.3d 1227, 1233; Guinnane v. City and County of San Francisco (1987) 197 Cal.App.3d 862, 865, 869"870, 241 Cal.Rptr. 787.) Liability for delay in processing a development proposal may only be imposed when it goes "beyond that to be expected as part of the normal permit process." (Hensler, supra, 8 Cal.4th at p. 15, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) The normal permit process includes the period in which a property owner must litigate with an agency "over other threshold questions that must be resolved before it can be determined whether a development should be permitted to proceed." (Landgate, supra, 17 Cal.4th at p. 1030, 73 Cal.Rptr.2d 841, 953 P.2d 1188.) Our Supreme Court has recognized that resolution of such threshold questions "often turns on the construction and application of complex statutory schemes and results in significant delays in the development process." (Ibid.) Notwithstanding the lengthy interval which may pass while such issues are resolved by way of litigation, the interval is not compensable because ""the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking" [Citation.]" (Id. at p. 1027, 73 Cal.Rptr.2d 841, 953 P.2d 1188.) Rather, "a judicial determination of the validity of certain preconditions to development is a normal part of the development process, and the fact that a developer must resort to such a determination does not constitute a per se temporary taking." (Id. at p. 1030, 73 Cal.Rptr.2d 841, 953 P.2d 1188.) | Resolution of threshold questions that must be resolved before it can be determined whether proposed development of land may proceed often turns on the construction and application of complex statutory schemes and results in significant delays in the development process, and notwithstanding the lengthy interval which may pass while such issues are resolved by way of litigation, the interval is not compensable in regulatory takings action, because the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. U.S.C.A. Const.Amend. 5. | Does the mere assertion of regulatory jurisdiction by a governmental body constitute a regulatory taking? | 017592.docx | LEGALEASE-00126138-LEGALEASE-00126140 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5119 | Gulf Power Co. v. United States, 998 F. Supp. 1386 | 148+2.2 | However, Duquesne, 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646, is of no consequence to this Court's ruling today, as the Duquesne Court did not address the Takings Clause in the context of a permanent occupation of property, the type of action at issue in both Loretto, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868, and here. Rather, Duquesne focused on more traditional Fifth Amendment standards"whether the rates fixed by the state were so unreasonable and confiscatory that they amounted to an unconstitutional taking of property. 488 U.S. 299, 307"08, 109 S.Ct. 609, 615"16 (holding that state scheme of utility regulation disallowing recovery of capital investments is not a taking of property). That Fifth Amendment regulatory analysis is separate from this Court's inquiry into whether the Act amounts to a taking under the per se rule set forth in Loretto. See Florida Power, 480 U.S. at 253, 107 S.Ct. at 1112. Moreover, "the facts that an industry is heavily regulated, and that a property owner acquired the property knowing that it is heavily regulated, do not diminish a physical taking to something less than a taking." GTE Northwest, Inc. v. Public Util. Comm'n, 321 Or. 458, 900 P.2d 495, 504 (1995), quoted in, J. Gregory Sidak & Daniel F. Spulber, Deregulatory Takings and Breach of the Regulatory Contract, 71 N.Y.U.L.Rev. 851, 951"52 (1996) [hereinafter Sidak & Spulber, Deregulatory Takings ]. | Facts that an industry is heavily regulated, and that a property owner acquired the property knowing that it is heavily regulated, do not diminish a physical taking to something less than a taking. U.S.C.A. Const.Amend. 5. | "Does the facts that an industry is heavily regulated, and that a property owner acquired the property knowing that it is heavily regulated, diminish a physical taking to something less than a taking?" | 017601.docx | LEGALEASE-00126194-LEGALEASE-00126195 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5120 | United States v. Hill, 279 F.3d 731 | 221+391 | Under the territorial jurisdiction theory, jurisdiction is appropriate if the acts performed outside the United States produce detrimental effects within the United States. Charlie's alleged evasion of child support payments has obvious detrimental effects within the United States because his children are United States citizens. Moreover, Hill's harboring conduct has prevented Charlie's apprehension. Thus, under the territorial theory, both parties' conduct supports jurisdiction. | Under the "territorial jurisdiction theory," extraterritorial jurisdiction is appropriate if the acts performed outside the United States produce detrimental effects within the United States. | "Under the territorial jurisdiction theory, is jurisdiction appropriate if the acts performed outside the United States produce detrimental effects within the United States?" | International Law - Memo # 789 - C - ES.docx | ROSS-003327264-ROSS-003327265 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 5121 | United States v. Cardales, 168 F.3d 548 | 221+330 | To satisfy due process, our application of the MDLEA must not be arbitrary or fundamentally unfair. See Davis, 905 F.2d at 248-49; see also Martinez-Hidalgo, 993 F.2d at 1056. In determining whether due process is satisfied, we are guided by principles of international law. See Davis, 905 F.2d at 249 n. 2. Under the "territorial principle" ofinternational law, a "state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state." United States v. Robinson, 843 F.2d 1, 4 (1st Cir.1988). In Robinson, we decided that the United States had jurisdiction over a Panamanian vessel stopped over 500 miles off shore because the Panamanian government authorized the United States to apply U.S. law to the persons on board the vessel. See id. (recognizing informal authorization as valid agreement for purposes of territorial principle, and affirming conviction under 21 U.S.C. " 955a, statutory precursor to MDLEA). In this case, the Venezuelan government authorized the United States to apply United States law to the persons on board the CORSICA. Therefore, jurisdiction in thiscase is consistent with the territorial principle of international law. | Under the "territorial principle" of international law, a state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state. | "Under the ""territorial principle"" of international law, does a state have jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state?" | International Law - Memo # 790 - C - ES.docx | ROSS-003300065-ROSS-003300066 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5122 | United States v. Rezaq, 134 F.3d 1121 | 110+97(0.5) | Rezaq also argues that applying the "death results" provision to this case would violate the normal jurisdictional rules of international law. International law imposes limits on a state's "jurisdiction to prescribe," that is, its ability to render its law applicable to persons or activities outside its borders; states may only exercise jurisdiction to prescribe under a limited number of theories. See Restatement (Third) of Foreign Relations Law " 401 (1987). This case, however, clearly falls within at least one such theory, the so-called "passive personality principle." That principle "asserts that a state may apply law-particularly criminal law-to an act committed outside its territory by a person not its national where the victim of the act was its national." Restatement (Third) of Foreign Relations Law " 402 cmt. g (1987). "The principle has not been generally accepted for ordinary torts or crimes, but it is increasingly accepted as applied to terrorist and other organized attacks on a state's nationals by reason of their nationality..." Id. Scarlett Rogenkamp was a United States citizen, and there was abundant evidence that she was chosen as a victim because of her nationality. This suffices to support jurisdiction on the passive personality theory. | Under "passive personality principle," state may apply law, particularly criminal law, to act committed outside its territory by person not its national when victim of act was its national. Restatement (Third) of Foreign Relations Law S 402 comment. | "Under the ""passive personality principle,"" may a state apply law to acts committed outside its territory by a person not its national when victim of act was its national?" | International Law - Memo # 793 - C - ES.docx | ROSS-003313726-ROSS-003313727 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5123 | Hernandez v. United States, 757 F.3d 249 | 221+391 | Specifically, three "objective factors and practical concerns" are relevant to our extraterritoriality determination: (1) the citizenship and status of the claimant, (2) the nature of the location where the constitutional violation occurred, and (3) the practical obstacles inherent in enforcing the claimed right. Cf. id. at 766"71, 128 S.Ct. 2229. The relevant practical obstacles include the consequences for U.S. actions abroad, the substantive rules that would govern the claim, and the likelihood that a favorable ruling would lead to friction with another country's government. See id.; Verdugo"Urquidez, 494 U.S. at 273"74, 110 S.Ct. 1056; id. at 278, 110 S.Ct. 1056 (Kennedy, J., concurring). These factors are not exhaustive, as the relevant considerations may change with the facts of an individual case, but they do provide a baseline for addressing questions of extraterritoriality. | Three objective factors and practical concerns are relevant to Court of Appeals' extraterritoriality determination: (1) the citizenship and status of the claimant, (2) the nature of the location where the constitutional violation occurred, and (3) the practical obstacles inherent in enforcing the claimed right. | What factors are relevant to determine the extraterritorial application of a Constitution? | 020582.docx | LEGALEASE-00126001-LEGALEASE-00126003 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5124 | United States v. Gecas, 120 F.3d 1419 | 221+364 | By necessary implication, the United States Constitution places no restraints at all on a foreign government's treatment of its own citizens who have allegedly committed foreign crimes abroad. See Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897); see, e.g., United States ex rel. Steinvorth v. Watkins, 159 F.2d 50, 51 (2nd Cir.1947) (holding that a United States court will not review the Costa Rican government's cancellation of appellant's Costa Rican citizenship). As Justice Kennedy wrote in United States v. Verdugo"Urquidez, "[t]he Constitution does not create ... any juridical relation between our country and some undefined, limitless class of noncitizens who are beyond our territory." Verdugo"Urquidez, 494 U.S. at 275, 110 S.Ct. at 1066 (Kennedy, J., concurring). Therefore, a foreign court cannot violate the Fifth Amendment to the United States Constitution when it inflicts criminal penalties on a foreign national based on compelled, testimonial self-incrimination. | Foreign court cannot violate Fifth Amendment when it inflicts criminal penalties on foreign national based on compelled, testimonial self-incrimination. (Per Tjoflat, Circuit Judge, with four Circuit Judges concurring, and one Circuit Judge concurring specially.) U.S.C.A. Const.Amend. 5. | "Can a foreign court violate the Fifth Amendment when it inflicts criminal penalties on foreign national based on compelled, testimonial self-incrimination?" | International Law - Memo # 834 - C - SN.docx | ROSS-003290201-ROSS-003290202 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5125 | Litecubes v. N. Light Prod., 523 F.3d 1353 | 221+392 | The principles and case law discussed above, which led us to conclude that the Patent Act's territorial requirement is an element of the claim that must be established to prove infringement, but not a requirement for subject matter jurisdiction, apply equally to the Copyright Act's limitation on the extraterritorial reach of the statute. As discussed, whether the territorial limitation is explicit in the statute, as in the Patent Act, or implied based on the presumption that Congress does not intend its acts to have extraterritorial effect, as in the Copyright Act, the limit on the extraterritorial reach of a statute is a question of statutory interpretation"what did Congress intend the scope of its exercise of prescriptive jurisdiction to be"not an independent limitation on the federal court's authority. And Arbaugh's bright-line rule applies. That is, whether an accused action is within the extraterritorial limitation should be treated as an element of the claim, not a predicate for subject matter jurisdiction, unless Congress has clearly provided that the limitation is jurisdictional. See Arbaugh, 546 U.S. at 516, 126 S.Ct. 1235 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."); Lauritzen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (holding that the Jones Act, which on its face had no territorial limitations, did not reach purely extraterritorial activities, but that this requirement was not a limitation of the jurisdiction of the federal courts); see also supra Part II. | Whether an accused action is within the extraterritorial limitation should be treated as an element of the claim, not a predicate for subject matter jurisdiction, unless Congress has clearly provided that the limitation is jurisdictional. | Should the question of whether an accused action is within the extraterritorial limitation be treated as an element of the claim? | 020934.docx | LEGALEASE-00125923-LEGALEASE-00125925 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5126 | Alibalogun v. First Coast Sec. Sols., 67 F. Supp. 3d 211 | 231H+858 | Even so, Alibalogun's breach of contract claim falters. In order to state a claim for breach of contract based on termination of at-will employment, a plaintiff "bears the burden of alleging facts sufficient to show that "the parties intended that termination be subject to specific preconditions." " Id. at 70 (quoting Wilson v. Prudential Fin., 332 F.Supp.2d 83, 91 n. 4 (D.D.C.2004)); accord Strass, 744 A.2d at 1011. "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams v. George W.Cochran & Co., 597 A.2d 28, 30 (D.C.1991). Thus, where a plaintiff fails to "plead facts that would show that both parties intended to alter the presumption of at-will employment, he has no remedy in contract law for his termination." Daisley, 372 F.Supp.2d at 70. | In order to state a claim under District of Columbia law for breach of contract based on termination of at-will employment, the plaintiff bears the burden of alleging facts sufficient to show that the parties intended that termination be subject to specific preconditions. | Should facts be alleged to state a claim for breach of contract? | 023018.docx | LEGALEASE-00126208-LEGALEASE-00126209 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5127 | Pullum v. Robinette, 174 S.W.3d 124 | 307A+3 | State courts may make pre-introduction rulings on evidence that are conditional or provisional in nature, and, where such conditions do not occur at trial, may change an earlier ruling regarding the admissibility of the evidence. See, e.g., State v. Bray, 669 S.W.2d 684, 687 (Tenn.Crim. App. We know of no authority suggestingatrial court could not change an in limine ruling for other reasons in the exercise of sound discretion. | Courts may make pre-introduction rulings on evidence that are conditional or provisional in nature, and, where such conditions do not occur at trial, may change an earlier ruling regarding the admissibility of the evidence. | Can courts make rulings on evidence that are conditional or provisional in nature and change an earlier ruling regarding the admissibility of the evidence? | Pretrial Procedure - Memo # 867 - C - TJ.docx | ROSS-003300117-ROSS-003300118 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 5128 | Chapman v. Hubbard Woods Motors, 351 Ill. App. 3d 99 | 307A+3 | Assuming, arguendo, that we were to address the merits of this issue, we recognize that a trial court has broad discretion to grant or deny a motion in limine, and as such, we will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. City of Quincy v. Diamond Construction Co., 327 Ill. App.3d 338, 342-43, 261IllDec. 141, 762 N.E.2d 710, 714 (2002). In addition, a trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is also reviewed under the abuse of discretion standard. Prairie v. Snow Valley Health Resources, Inc., 324 Il].App.3d 568, 576, 258 Ill.Dec. 202, 755 N.E.2d 1021, 1029 (2001). | Trial court has broad discretion to grant or deny a motion in limine, and as such, the reviewing court will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. | "Does the trial court have broad discretion to grant or deny a motion in limine, and as such, the reviewing court will only reverse the trial court's decision to grant or deny such a motion with a clear abuse of discretion?" | Pretrial Procedure - Memo # 868 - C - TJ.docx | ROSS-003312128-ROSS-003312129 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5129 | Miller-Stauch Const. Co. v. Williams-Bungart Elec., 959 S.W.2d 490 | 366+7(1) | However, while it is true that the rights and liabilities of a surety are measured by those of the principal, it is also true that a performance bond surety confers a benefit upon the obligee and thus becomes subrogated not only to the rights of the principal but also to the rights of the obligee, and has a right to retained funds free from set-off by the obligee. U.S. Fid. & Guar., 783 S.W.2d at 520. Miller-Stauch's suggestion that we look to existing precedent to broaden the express terms of the subcontract to include a right of set-off against the surety is not persuasive. | While rights and liabilities of a surety are measured by those of principal, performance bond surety confers a benefit upon obligee and thus becomes subrogated not only to rights of principal but also to rights of the obligee, and has a right to retained funds free from set-off by obligee. | Does a performance bond surety confer a benefit upon an obligee? | Subrogation - Memo # 647 - C - SA.docx | ROSS-003290405-ROSS-003290406 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5130 | Leimer v. State Mut. Life Assur. Co. of Worcester, Mass., 108 F.2d 302 | 13+63 | So far as laches is concerned, it has been repeatedly held that mere lapse of time does not constitute laches."It is to be determined by consideration of justice, and that is dependent upon the circumstances of each particular case. " Des Moines Terminal Co. v. Des Moines Union Ry. Co., 8 Cir., 52 F.2d 616, 630; Johnson v. Umsted, 8 Cir., 64 F.2d 316, 323; Missouri Public Service Corporation v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, 4. In order to determine whether the plaintiff's claim was barred by laches, we would have to know more than is disclosed by her amended complaint. | Mere lapse of time does not constitute "laches" which is to be determined by consideration of justice which is dependent upon the circumstances of each particular case. | Does a mere lapse of time constitute laches which is to be determined by consideration of justice which is dependent upon the circumstances of each particular case? | 005408.docx | LEGALEASE-00126732-LEGALEASE-00126734 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5131 | United-Bilt Homes v. Sampson, 315 Ark. 156 | 13+61 | Initially, we observe that issues are joined when a fact or conclusion of law is asserted in one party's pleading and is admitted or denied in the responding party's pleading. Ark.Code Ann. " 16"64"102 (1987); Harrison v. Glass, 264 Ark. 428, 572 S.W.2d 143 (1978). We also observe that a cause of action on an entire debt owed under an installment sales contract with an optional acceleration clause does not arise until the option is exercised. Hodges v. Dilatush, 199 Ark. 967, 136 S.W.2d 1018 (1940). The issues in Sampson I were joined on December 5, 1990, when United"Bilt filed its answer to Sampson's third-party complaint. As of that point in time, the record reveals that Sampson was at most two payments behind, but that United"Bilt had not exercised its option to accelerate the debt. Thus, we are inclined to agree with United"Bilt's second argument. However, because we conclude the trial court erred in determining the two cases arose out of the same transaction or occurrence, we need not analyze the merits of United"Bilt's second argument. | Cause of action on entire debt owed under installment sales contract with optional acceleration clause does not arise until option is exercised. | Does cause of action on entire debt owed under installment sales contract with optional acceleration clause arise until option is exercised? | 005676.docx | LEGALEASE-00126644-LEGALEASE-00126645 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5132 | Borde v. Hake, 44 Wis. 2d 22 | 13+61 | In Caygill v. Ipsen (1965), 27 Wis.2d 578, 583, 135 N.W.2d 284, we reaffirmed and restated the Pomeroy proposition that a cause of action arises when there is an invasion of a primary right of a plaintiff as a consequence of closely related incidents or operative facts. In Caygill the emphasis was upon the relationship of the operative facts. Therein we stated that, even though the same primary right of a plaintiff was invaded-in that case the plaintiff's right to be free from bodily injury-separate causes of action arose when the injuries to plaintiff's back were occasioned by several rear-end collisions at widely spaced time intervals. We held in that case that, since there were separate operative facts not reasonably related in time, there were separate causes of action, even though the same primary right of the plaintiff had been invaded. In this case, the defendant's conduct at the time of the accident resulted in but one cause of action but two separate claims or rights of action. The single set of operative facts, the negligent conduct of the defendant, resulted in the invasion of plaintiff's primary right to be free of the consequences of such conduct. A single cause of action thereby arose which may be enforced by a right of action for the recovery of damages to the plaintiff's property and a separate right of action for personal injuries. | Cause of action arises when there is an invasion of a primary right of a plaintiff as a consequence of closely related incidents or operative facts. | Does cause of action arise when there is an invasion of a primary right of a plaintiff as a consequence of closely related incidents or operative facts? | 005693.docx | LEGALEASE-00126616-LEGALEASE-00126617 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5133 | Puckett v. Nat'l Annuity Ass'n, 134 Mo. App. 501 | 13+61 | We know no principle which will harmonize all the decisions germane to this inquiry, for some of the earlier ones, at least, went far toward requiring all damages, past and future, to be recovered in one action. Bendernagle v. Cocks, 19 Wend. (N. Y.) 207, 32 Am. Dec. 448; Colvin v. Corwin, 15 Wend. (N. Y.) 557. These cases have been adversely criticised in later decisions by the court which rendered them. Secor v. Sturgis, 16 N. Y. 548; Perry v. Dickerson, 85 N. Y. 345, 39 Am. Rep. 663. They are to be distinguished from cases in which the aggrieved party was merely permitted to recover both present and prospective damages in one action on contracts held to be indivisible. The diversity of opinion occurs chiefly on the question of what agreements, or what stipulations in agreements, are separable, so that partial damages may be recovered in separate actions. Courts have ruled that a person employed for a definite period, say a year, at a salary to be paid in weekly or monthly installments, may treat the contract as abandoned by the employer and recover total damages in one action, if the employer, when the work should begin, refuses to allow the employ" to enter into service and repudiates the hiring. Booge v. Railroad, 33 Mo. 212, 82 Am. Dec. 160; Lewis v. Insurance Co., 61 Mo. 534. So, if a person agrees to support another for life and breaches the contract, the other party may elect to treat the breach as absolute and recover the whole value of the contract. Parker v. Russell, 133 Mass. 74. It has been held that in an action on a single contract for the periodical delivery of goods to be paid for in installments, if the purchaser refuses to accept a delivery and declares he will be no further bound by his engagement, the seller may recover as damages, not only what is due, but the profits he would realize on future deliveries. Nichols v. Steel Co., 137 N. Y. 471, 33 N. E. 561. It will be perceived the theory of such decisions is that the acts of the defendants amounted to | A single default in the payment of an installment, due under a contract calling for periodic payments, does not constitute a repudiation of the contract so as to empower the creditor to sue for payments falling due in the future. | "Does a simple default in the payment of an installment, due under a contract calling for periodic payments, constitute a repudiation of the contract so as to empower the creditor to sue for payments falling due in the future?" | Action - Memo # 289 - C SHB.docx | ROSS-003286284-ROSS-003286286 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 5134 | Pollard v. Swenson, 403 S.W.2d 601 | 106+231(5) | This court recently held that "A "state officer" within the meaning of Article V, Section 3, of the constitution V.A.M.S. regulating the jurisdiction of this Court must exercise a portion of the sovereign power of government independently and without control of a superior power other than the law.' Shepherd v. Department of Revenue, Mo., 370 S.W.2d 381, 382. See also Mossman v. St. Joseph Lead Co., Mo.App., 254 S.W.2d 241, and compare State ex rel. Webb v. Pigg, 363 Mo. 133, 249 S.W.2d 435. | A "state officer", within meaning of article in constitution giving Supreme Court exclusive appellate jurisdiction in all civil cases where state officer as such is a party, must exercise a portion of the sovereign power of government independently and without control of a superior power other than the law. V.A.M.S.Const. art. 5, S 3; Section 216.010 RSMo 1959, V.A.M.S. | When is an individual who exercises the sovereign power of the state considered an officer of the state? | Clerks of Court - Memo 42 - RK.docx | LEGALEASE-00016498-LEGALEASE-00016499 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5135 | Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260 | 366+33(2) | However, the former Fifth Circuit noted that, "[a] different situation occurs when the surety completes the performance of a contract. The surety is not only a subrogee of the contractor, and therefore a creditor, but also a subrogee of the government and entitled to any rights the government has to the retained funds." at 320. The distinction between a surety's rights when performing under a payment bond or a performance bond is important. When a surety completes the project itself or pays the excess completion costs pursuant to the performance bond, the surety confers a benefit upon the obligee, whether the obligee is the Government or a private entity.That benefit relieves the obligee of the burden of completing the construction. In such circumstances, a mplicit agreement exists that the surety has a right toall retained funds and any remaining progress sums, and the obligee does not possess a right to set-off. at see also Aetna Cas. & Surety Co. v. United States, 435 F.2d 1082, 1083-84 (5th Cir.1970) (finding that surety's payments made under performance bond were not subject to set-off). | Under Florida law, when surety completes project itself or pays excess completion costs pursuant to performance bond, surety confers benefit upon obligee, relieving obligee of burden of completing construction, and implicit agreement exists that surety has right to all retained funds and any remaining progress sums, and obligee does not possess right to set-off. | "When a surety completes a project itself or pays excess completion costs pursuant to performance bond, does a surety confer a benefit upon the obligee?" | Subrogation - Memo # 704 - C - SA-1.docx | ROSS-003290409-ROSS-003290410 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 5136 | Intel Corp. v. Hamidi, 30 Cal. 4th 1342 | 386+6 | After reviewing the decisions analyzing unauthorized electronic contact with computer systems as potential trespasses to chattels, we conclude that under California law the tort does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself. (See Zaslow v. Kroenert (1946) 29 Cal.2d 541, 551, 176 P.2d 1; Ticketmaster Corp. v. Tickets.com, Inc. (C.D.Cal., Aug. 10, 2000, No. 99CV7654) 2000 WL 1887522, p. ; Rest.2d Torts, " 218.) The consequential economic damage Intel claims to have suffered, i.e., loss of productivity caused by employees reading and reacting to Hamidi's messages and company efforts to block the messages, is not an injury to the company's interest in its computers"which worked as intended and were unharmed by the communications"any more than the personal distress caused by reading an unpleasant letter would be an injury to the recipient's mailbox, or the loss of privacy caused by an intrusive telephone call would be an injury to the recipient's telephone equipment. | Tort of trespasses to chattels did not encompass electronic communications that neither damaged the recipient computer system nor impaired its functioning; such an electronic communication did not constitute an actionable trespass to the computer system, because it did not interfere with possessor's use or possession of, or any other legally protected interest in, the personal property itself. | Should the tort of trespass to chattels encompass an electronic communication that neither damages the recipient computer system nor impairs its functioning? | 047285.docx | LEGALEASE-00126730-LEGALEASE-00126731 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 5137 | Reynolds v. Farmers & Merchants Nat. Bank of Nocona, 135 S.W.2d 556 | 13+63 | In Vol. 27 Tex.Juri., para. 4, page 19, in discussing the defense of laches and stale demand, it is said: "It is settled, however, that the defense may not be invoked to resist the enforcement of a purely legal right, however asserted; in such cases the defendant must rely on the statute of limitations." The text is supported by such authorities as: House v. Brent, 69 Tex. 27, 7 S.W. 65, and Williams v. Conger, 49 Tex. 582.The judgment of the trial court is reversed and judgment here rendered for the plaintiffs in error. | The defense of "laches" and stale demand cannot be invoked to resist the enforcement of a purely legal right, however asserted, and in such cases defendant must rely on the statute of limitations. | Can the defense of laches be invoked to resist the enforcement of a purely legal right? | Action - Memo # 519 - C - NE.docx | ROSS-003286243-ROSS-003286244 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 5138 | Schaefer v. Berinstein, 180 Cal. App. 2d 107 | 302+277 | The appellant Schaefer asserts that the trial court should not have made an affirmative award in favor of Bender. He states: "The peculiarity of the procedure followed by the trial court was that by not insisting on any pleadings on the part of Bender for his affirmative recovery, there was no opportunity to assert a defense in the Schaefer suit to Bender's claim." Such contention is without merit. As is hereafter discussed, the Schaefer action was equitable in nature. Equity has power to do complete justice. A court of equity will make a final disposition of the litigation governed by the circumstances as shown to exist at the time judgment is rendered rather than at the inception of the litigation. A supplemental pleading is not necessary to that end. Kazanteno v. California-Western States Life Ins. Co., 137 Cal.App.2d 361, 376, 290 P.2d 332. Under the eighth cause of action, the appellant sought a declaration as to the validity of the sales in question and the "present validity" of Bender's contract with the city. In his prayer, he asked for "judgment declaring the rights of the parties under the contract," under certain resolutions and under the contracts of sale approved by such resolutions. The city was a party and appeared in the action. Pursuant to that cause of action, the court had jurisdiction of the entire matter and was not restricted to a declaration that Bender was entitled to a particular amount under the contract but could render judgment in his favor for that amount. California Bank v. Diamond, 144 Cal.App.2d 387, 390, 301 P.2d 60. | A court of equity will make final disposition of litigation governed by circumstances shown to exist at time judgment is rendered, rather than at inception of litigation, and a supplemental pleading is not necessary to that end. | Will a court of equity having jurisdiction of the parties and of the subject matter make a final disposition of the litigation governed by the circumstances as they are shown to exist at the time the decree is made? | 006248.docx | LEGALEASE-00127170-LEGALEASE-00127172 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5139 | Wood v. Strickland, 420 U.S. 308 | 141E+735 | Given the fact that there was evidence supporting the charge against respondents, the contrary judgment of the Court of Appeals is improvident. It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). But s 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and s 1983 was not intended to be a vehicle for federalcourt correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); Tinker, supra, 393 U.S. at 507, 89 S.Ct. at 736. | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. | Is it the role of the federal courts to set aside decisions of school administrators which it views as lacking in wisdom or compassion? | 016744.docx | LEGALEASE-00127114-LEGALEASE-00127115 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5140 | Rapid City Sch. Dist. 51-4 v. Vahle, 733 F. Supp. 1364 | 141E+894 | Under EHA, the standard of review is set by 20 U.S.C. " 1415(e)(2). This code section is further explained in Board of Educ. of the Hendrick Hudson Cent. School Dist. v. Rowley, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). The district court must make an independent determination of the appropriateness of the placement of the child based on a preponderance of the evidence, but is cautioned not to substitute its own notions of educational policy for those of the school authorities. "The fact that " 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." Rowley at 206, 102 S.Ct. at 3051. The Court has approached the case with this standard in mind. | Under Education of the Handicapped Act, reviewing court must make an independent determination of appropriateness of placement of child based on preponderance of the evidence, but is cautioned not to substitute its own notions of educational policy for those of school authorities. Education of the Handicapped Act, S 615(e), (e)(2), as amended, 20 U.S.C.A. S 1415(e), (e)(2). | Can the courts substitute their own notions of sound educational policy for those of the school authorities which they review? | Education - Memo # 21 - C - SU.docx | ROSS-003313626-ROSS-003313628 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 5141 | Connecticut Nat. Bank v. Douglas, 221 Conn. 530 | 366+35 | The documents that memorialize Nelson's guaranty of Jefferson Pine's indebtedness demonstrate, on their face, that Nelson expressly waived any right he might otherwise have had to complain of the impairment of his right to be subrogated to the bank's interest in the secured collateral in the possession of Jefferson Pine. Each of these documents contains an express waiver of the right to assert any claim with regard to any action the bank might take, or not take, with regard to Jefferson Pine's collateral. Nelson signed the loan and security agreement as guarantor and thereby agreed that "[t]he bank shall have no duty as to the collection or protection of the Collateral or any income thereon." As a guarantor of the term note and the demand grid note, Nelson agreed that "[u]nless and until all liabilities of the Borrower evidenced by said note have been paid in full, the undersigned hereby individually and collectively waive any and all rights of subrogation, reimbursement or indemnity which may now or hereafter accrue to the undersigned and any and all rights of recourse to or with respect to any assets or property of the Borrower or to any collateral for said liabilities." As a party to an individual guaranty to the bank, Nelson again agreed, in a boldface provision on the face of the guaranty, that his liability to the bank would "not be terminated by, and the undersigned assents to ... any modification, waiver or amendment of the terms of any agreement relating to liabilities, any substitution, exchange or release of collateral." He therein acknowledged, furthermore, that the bank had "no duty to collect or protect any collateral or any income thereon, nor to preserve any rights against any other parties, and [that the bank could] proceed under this guarantee immediately upon borrower's default without resorting to or regard to any collateral or any other guarantee or source of payment." In these three different forms of guaranty, simultaneously | In documents memorializing guaranty, guarantor expressly waived any right he might otherwise have had to complain of impairment of his right to be subrogated to lender's interest in secured collateral in possession of borrower. | "In documents memorializing guaranty, does a guarantor expressly waive any right he might otherwise have had to complain of impairment?" | 043346.docx | LEGALEASE-00127097-LEGALEASE-00127098 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5142 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+41(6) | The burden of proof in subrogation cases involves two questions. When a party requests subrogation, that party has the burden of proving its right to subrogation. That involves showing (a) that there is some basis for asserting subrogation, and, (b) that subrogation should be allowed in those circumstances. The same rule and burden of proof apply when a party seeks to impose subrogation. The party seeking to impose subrogation has the burden of showing both (a) that there would be some basis for asserting subrogation in that instance, and, (b) that subrogation must be applied in equity in those circumstances. In practice, since subrogation is an equitable doctrine favored by the courts, the burden of proof is more easily satisfied when requesting subrogation than it would be when imposing subrogation. | Party seeking to impose subrogation upon another party has burden of showing both that there would be some basis for asserting subrogation in that instance, and that subrogation must be applied in equity in those circumstances. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Should the party seeking to impose subrogation upon another party have burden of showing that there would be some basis for asserting subrogation in that instance? | 044265.docx | LEGALEASE-00127189-LEGALEASE-00127190 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 5143 | Bowker v. City of Worcester, 334 Mass. 422 | 13+65 | Another contention of the petitioners is that the acts of the planning board and the Board are invalid because they took place after the commencement of this suit. Such acts, however, were brought to the attention of the court by the plea in bar of the authority and after a hearing were found as facts by the court. A court of equity may find and consider facts existing at the time of entry of the decree whether they came into existence after the commencement of suit or not. Bell v. Treasurer of Cambridge, 310 Mass. 484, 488, 38 N.E.2d 660; Caputo v. Board of Appeals of Somerville, 330 Mass. 107, 111, 111 N.E.2d 674, and cases cited. | A court of equity may find and consider facts existing at time of entry of decree, irrespective of whether they came into existence after commencement of suit. | Will a court of equity find and consider facts existing at the time of entry of decree if they came into existence after commencement of the suit or not? | 006199.docx | LEGALEASE-00127517-LEGALEASE-00127518 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5144 | Bank of U.S. v. Tyler, 29 U.S. 366 | 13+63 | The court find no express decision of the courts of Kentucky enjoining a plaintiff who has sued the drawer of a promissory note, and intends to charge the indorser, to proceed against a jailor and his sureties, when the defendant has been suffered to escape; yet by the spirit of all the decisions, he is bound to do so. The general principle of all the cases is, that a plaintiff must pursue with legal diligence all his means and remedies, direct, immediate or collateral, to recover the amount of his debt from the drawer of the note, or of any one else who has put himself, or has by operation of law been put in his place. | A plaintiff must pursue with legal diligence all his means and remedies, direct, incidental, or collateral, to recover the amount of his debt from the defendant or any one who has put himself, or has by operation of law been put, in defendant's place. | Should a plaintiff pursue with legal diligence all his means and remedies to recover the amount of his debt? | Action - Memo # 856 - C PC.docx | ROSS-003311808-ROSS-003311809 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 5145 | Town of Kaneville v. Meredith, 361 Ill. 556 | 13+65 | Had the complainant brought an action of ejectment against the defendant on January 25, 1929, it would have been necessary for him to have shown that 7 full years had intervened between the day when the first payment of taxes was made and the day of the commencement of the action, in order to avail himself of the provisions of section 6 as a defense. Holbrook v. Debo, 99 Ill. 372; Clark v. Lyon, 45 Ill. 388. While in an action at law the rights of the parties are determined as of the time of the beginning of the action, a decree in chancery is a determination of the rights of the parties to the suit according to equity and good conscience, and where relief is granted by a decree, it is such as the nature of the case, the law and the facts demand, not at the time of the inception of the litigation, but at the time the decree is entered therein. Baker v. Salzenstein, 314 Ill. 226, 145 N.E. 355. The complainant in the present case elected to file a bill in equity for the purpose of obtaining a mandatory injunction to compel the defendant to remove a fence from two sides of the tract in question. The bill did not seek to deprive the defendant of possession nor prevent him from paying the taxes. The decree in this case was entered on March 1, 1934, and at that time the defendant had fully performed under section 6. The rights of the parties, therefore, must be determined as of March 1, 1934, and not as of January 25, 1929, the day the bill for injunction was filed. Since the defendant was entitled to have his title quieted on that day, it necessarily follows that the complainant was not entitled to the injunction sought and granted. | In law action rights of parties are determined as of time of beginning of action, but where relief is granted in chancery it is such as nature of case, the law and the facts demand, not at time of inception of litigation, but at time decree is entered therein. | "In actions at law, are the rights of the parties generally determined as of the time of beginning of the action?" | Action - Memo # 909 - C KI.docx | LEGALEASE-00017456-LEGALEASE-00017458 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5146 | Gregoire v. Rumsfeld, 463 F. Supp. 2d 1209 | 34+1 | "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." U.S. v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The Secretary argues that it is "well established that decisions regarding raising, supporting, and allocating the Nation's military forces are textually entrusted by the Constitution to the political branches." Dkt. 16"1, at 24 (citing U.S. Const. art. I, " 8, cl. 12, 13, 15, 16, and art. II). Indeed, the Constitution specifically gives Congress the power to "provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress." U.S. Const. art. I, " 8, cl. 16. In Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), the Supreme Court addressed a case where university students sought "judicial evaluation of the appropriateness of the training, weaponry and orders of the Ohio National Guard" and continuing judicial surveillance to ensure compliance with "whatever training and operations procedures may be approved by that Court." Id. at 6, 93 S.Ct. 2440. Holding that the student's claims were barred by the political question doctrine, the Court found that,It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible-as the Judicial Branch is not-to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the | The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping. | Is the constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end broad and sweeping? | 008338.docx | LEGALEASE-00128084-LEGALEASE-00128085 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 5147 | Heritage Mut. Ins. Co. v. Graser, 2002 WI App 125, 9, 254 Wis. 2d 851 | 287+20 | The collateral source rule and the principle of subrogation frequently interact in personal injury actions." By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor."] Id. At 33, 630 N.W.2d 201. In a personal injury action, the purpose of subrogation is to ensure that the loss is ultimately placed with the wrongdoer and to prevent the insured plaintiff from becoming unjustly enriched through a double recovery, i.e., a recovery from the insurer and the liable third party. Id. | By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor. | "By virtue and to the extent of payments made on behalf of the injured party, does the payor generally obtain a right of recovery in an action against the tortfeasor?" | Subrogation - Memo # 1183 - C- PC.docx | ROSS-003285385-ROSS-003285386 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 5148 | Cresvale Int'l Inc. v. Reuters Am., 257 A.D.2d 502 | 366+35 | On 61 Broadway's and Galbreath's appeal, we disagree with the IAS court's conclusion that the waiver of subrogation clause in the subject lease did not extend to claims for business interruption losses. Where a waiver of subrogation clause is limited to a specific type of loss, a subrogation action is barred only to the extent its seeks recovery for those species of losses (see, Kaf-Kaf v. Rodless Decorations, 90 N.Y.2d 654, 660, 665 N.Y.S.2d 47, 687 N.E.2d 1330 ["a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears"] ). Conversely, where a broad waiver clause extends to all losses covered by the policy, or where subrogation action is "inconsistent with the express provisions of the waiver of subrogation clause", all subrogation actions will be barred (id. at 660-661, 665 N.Y.S.2d 47, 687 N.E.2d 1330). | Where a waiver of subrogation clause is limited to a specific type of loss, a subrogation action is barred only to the extent it seeks recovery for that species of loss; conversely, where a broad waiver clause extends to all losses covered by an insurance policy, or where the subrogation action is inconsistent with the express provisions of the waiver of subrogation clause, all subrogation actions will be barred. | "Where a waiver of subrogation clause is limited to a specific type of loss, is a subrogation action barred only to the extent it seeks recovery for that species of loss?" | Subrogation - Memo # 1242 - C - PB.docx | ROSS-003286351-ROSS-003286352 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5149 | Register.com v. Verio, 356 F.3d 393 | 386+7 | "A trespass to a chattel may be committed by intentionally ... using or intermeddling with a chattel in the possession of another," Restatement (Second) of Torts " 217(b) (1965), where "the chattel is impaired as to its condition, quality, or value," id. " 218(b); see also City of Amsterdam v. Goldreyer Ltd., 882 F.Supp. 1273, 1281 (E.D.N.Y.1995) (citing the Restatement definition as New York law). | Under New York law, trespass to chattel may be committed by intentionally using or intermeddling with chattel in possession of another, where chattel is impaired as to its condition, quality, or value. Restatement (Second) of Torts, SS 217(b), 218(b). | Does intermeddling with chattel in the possession of another constitute a trespass to chattel? | 047295.docx | LEGALEASE-00128034-LEGALEASE-00128035 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 5150 | State v. Ole Olsen, Ltd., 38 A.D.2d 967 | 13+65 | Moreover, in an equity action, the court may hold the relief to be granted to the exigencies of the case as they exist at the close of the trial, with reference to the facts, the law and the equities then existing (Matter of Galewitz, 3 A.D.2d 280, 295, 160 N.Y.S.2d 564, 580, affd. 5 N.Y.2d 721, 177 N.Y.S.2d 708, 152 N.E.2d 666; Lightfoot v. Davis, 198 N.Y. 261, 273, 91 N.E. 582, 586). At bar, in our view, it is a reasonable assumption that if the trial court, at the close of the trial, shall have determined that appellants created a dangerous and unhealthy condition constituting a nuisance and that they should abate same, the other defendants (innocent purchasers of the properties and sufferers from the nuisance) will, at the court's direction, permit appellants to enter into the homes in question in order that the defective sewage disposal condition will be remedied by appellants. In any event, since the purchasers are parties defendant to this action they could be compelled to cooperate with the abatement of the nuisance. | Court may, in equity action, mold relief to be granted to exigencies of case as they exist at close of trial, with reference to facts, law and equities then existing. | "May a court, in an equity action, mold relief to be granted to exigencies of case as they exist at the close of trial?" | 005984.docx | LEGALEASE-00128269-LEGALEASE-00128270 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 5151 | Shirey v. Campbell, 151 So. 2d 557 | 150+84 | What constitutes laches is to be determined in the light of the circumstances of a particular case. The doctrine's application is controlled by equitable considerations; it cannot be invoked to defeat justice; it will be applied only where the enforcement of an asserted right would not work injustice. While delay in forcing a right is an element of laches, such delay does not of itself constitute laches.The defeating of a claim by a mere lapse of time comes within the province of prescription or limitations. Labarre v. Rateau, 210 La. 34, 26 So.2d 279, 285. | What constitutes laches is to be determined in the light of the circumstances of a particular case, and application of doctrine is controlled by equitable considerations and it cannot be invoked to defeat justice and will be applied only where enforcement of asserted right will not work injustice. | "Can the doctrine of ""laches"" be invoked to defeat justice?" | 006014.docx | LEGALEASE-00128393-LEGALEASE-00128394 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 5152 | Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704 | 241+100(7) | The discovery rule "is generally applicable to confidential or fiduciary relationships." Prudential Home Mortgage Co. v. Superior Court, 66 Cal.App.4th 1236, 78 Cal.Rptr.2d 566, 571 (1998); accord Golden Nugget, 646 P.2d at 1223. Further, as plaintiffs point out, "when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced." Sherman v. Lloyd, 181 Cal.App.3d 693, 226 Cal.Rptr. 495, 498 (1986); accord Golden Nugget, 646 P.2d at 1223"24. In such cases, a plaintiff "is entitled to rely on the statements and advice provided by the fiduciary," Sherman, 226 Cal.Rptr. at 498, and "if the delay in commencing an action is induced by the conduct of the defendant, [the defendant] cannot avail himself of the defense of the statute [of limitations]," Cross v. Bonded Adjustment Bureau, 48 Cal.App.4th 266, 55 Cal.Rptr.2d 801, 809 (1996) (second alteration in original) (internal quotation marks omitted). | Under both California and Nevada law, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery, for purposes of commencing of the running of statute of limitations, is reduced; in such cases, a plaintiff is entitled to rely on the statements and advice provided by the fiduciary, and if the delay in commencing an action is induced by the conduct of the defendant, the defendant cannot avail himself of the defense of the statute of limitations. | "Where delay in commencing an action is induced by a defendant's conduct, can the delay be availed of by a defendant as a defense?" | 006107.docx | LEGALEASE-00128175-LEGALEASE-00128176 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 5153 | NECA Ins. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 595 F. Supp. 955 | 25T+137 | This clause, however, does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by Reinsurers granted through arbitration. As the Honorable Charles L. Brieant, Jr. ruled recently when interpreting the relationship between the arbitration and service of suit clauses of a similar contract involving National Union, an arbitration award cannot be enforced without access to the courts. The service of suit clause is therefore designed to guarantee the enforcement of arbitration awards and is not designed to supercede an obligation to arbitrate disputes within the scope of the arbitration clause. See In the Matter of the Petition of J.W. Pryke, et al., For an Order staying the Proceedings in an action Pending in the Court of Common Pleas of Chester County, Pa. Entitled National Union Fire Insurance, et al., 83 Civ. 6156 (CLB) (Sept. 8, 1983) (transcript at 10). Article XX does not vitiate the terms of Article XVII making arbitration a condition of the agreement. | Service of suit clause in parties' agreement was designed to guarantee enforcement of arbitration awards and was not designed to supercede an obligation to arbitrate disputes within scope of the arbitration clause. | Is a service of suit clause designed to guarantee the enforcement of arbitration awards or designed to supersede an obligation to arbitrate disputes within the scope of an arbitration clause? | 007273.docx | LEGALEASE-00128674-LEGALEASE-00128675 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5154 | Parker v. Levy, 417 U.S. 733 | 34+1 | We have noted in Smith v. Goguen, id., at 573, 94 S.Ct., at 1247 that more precision in drafting may be required because of the vagueness doctrine in the case of regulation of expression. For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter. But each of these differentiations relates to how strict a test of vagueness shall be applied in judging a particular criminal statute. None of them suggests that one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. | For the reasons which differentiate military society from civilian society, Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the military shall be governed than it is when prescribing rules for the civilian society. 10 U.S.C.A. SS 933, 934. | Is Congress permitted to legislate military regulations with greater breadth and with greater flexibility than when prescribing rules for the civilian society? | 008299.docx | LEGALEASE-00128583-LEGALEASE-00128584 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5155 | Font v. Laird, 318 F. Supp. 891 | 34+1 | As background to the constitutional argument, it should be remembered that Congress's power to raise and maintain armies itself has a constitutional base, namely Article I, Section 8.This constitutional power is broad and sweeping, does not depend on the contemporaneous existence of a war and may be exercised in time of peace. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); United States v. Gillette, supra, 420 F.2d at page 299. | Congress' power to raise and maintain armies is based on constitutional power that is broad and sweeping and does not depend on contemporaneous existence of a war and may be exercised in time of peace. Military Selective Service Act of 1967, S 6(j), 50 U.S.C.A. App. S 456(j). | Does Congress' power to raise and maintain armies depend on the contemporaneous existence of a war? | 008303.docx | LEGALEASE-00128593-LEGALEASE-00128594 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5156 | Wells Fargo Bank, N.A. v. Fisch, 103 A.D.3d 622 | 307A+501 | "An application for leave to discontinue an action without prejudice "is addressed to the legal, not the arbitrary, discretion of the court," and thus should be granted unless there are reasons which would justify its denial" (Valladares v. Valladares, 80 A.D.2d 244, 257"258, 438 N.Y.S.2d 810, mod. on other grounds sub nom. Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050, quoting Winans v. Winans, 124 N.Y. 140, 145, 26 N.E. 293). "The general rule is that plaintiff should be permitted to discontinue the action without prejudice, unless defendant would be prejudiced thereby" (Valladares v. Valladares, 80 A.D.2d at 258, 438 N.Y.S.2d 810; see Brenhouse v. Anthony Indus., 156 A.D.2d 411, 412, 548 N.Y.S.2d 533; see also Mathias v. Daily News, 301 A.D.2d 503, 504, 752 N.Y.S.2d 896; Parraguirre v. 27th St. Holding, LLC, 37 A.D.3d 793, 793"794, 831 N.Y.S.2d 460; Great W. Bank v. Terio, 200 A.D.2d 608, 606 N.Y.S.2d 903). | General rule is that plaintiff should be permitted to discontinue action without prejudice, unless defendant would be prejudiced thereby. McKinney's CPLR 3217(b). | Is there a general rule that plaintiff should be permitted to discontinue the action without prejudice unless defendant would be prejudiced thereby? | 039233.docx | LEGALEASE-00128343-LEGALEASE-00128344 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5157 | In re New York Skyline, 432 B.R. 66 | 307A+501 | It is true that "the language 'with prejudice' is narrowly interpreted when the interests ofjustice, or the particular equities involved, warrant such an approach." Dolitsky's Dry Cleaners, Inc. v. Y L Jericho Dry Cleaners, Inc., 203 A.D.2d 322, 610 N.Y.S.2d 302, 303 (N.Y.App.Div.1994); accord Pawling Lake Property Owners Assn., Inc. v. Greiner, 72 A.D.3d 665, 897 N.Y.S.2d 729, 732 (N.Y.App.Div.2010). Nevertheless, the meaning of the "with prejudice" language is subject to the usual rules of contract interpretation through which the Court gives effect to the intention of the parties. Breeden v. Tricom Business Systems, Inc., 244 F.Supp.2d 5, 14 (N.D.N.Y.2003) (declining to afford res judicata effect to a stipulation of dismissal with prejudice where there was "little question" that the parties intended to continue to press their claims against each other); Matter of Hortons Estate, 51 A.D.2d 856, 379 N.Y.S.2d 569, 571 (N.Y.App.Div.1976) ("Where a stipulation does not represent the intent of the parties, the remedy of the aggrieved party is to move in the court wherein it was entered to vacate it."). | Under New York law, meaning of "with prejudice" language in stipulation of discontinuance is subject to the usual rules of contract interpretation through which the court gives effect to the intention of the parties. | "Is the meaning of ""with prejudice"" language subject to the usual rules of contract interpretation through which the court gives effect to the intention of the parties?" | Pretrial Procedure - Memo # 976 - C - SB.docx | ROSS-003299683-ROSS-003299684 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5158 | C/S Sols. v. Energy Maint. Servs. Grp. LLC, 274 S.W.3d 299 | 307A+503 | Based on these rules, treatises have drawn a distinction between a pure Rule 162 nonsuit, which voluntarily dismisses the entire case, and a voluntary dismissal that abandons the case as to certain parties and/or claims. See 5 Roy W. McDonald & Elaine A. Carlson, Texas Civil Practice " 27.43 (1999); 1 Tex. Jur.3d Actions "" 248, 267, 271 (2004). This distinction has no practical effect when a plaintiff files a written "nonsuit" that abandons the case as to certain claims so long as the written "nonsuit" does not run afoul of the time restrictions in Rule 63. Under our liberal pleading rules, the document is in substance an amended pleading voluntarily dismissing the claims, notwithstanding the fact that the word "nonsuit" appears. See Tex.R. Civ. P. 71 (misnomer of pleadings); State Bar v. Heard, 603 S.W.2d 829, 833 & n. 5 (Tex.1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."). Similarly, the distinction between a pure Rule 162 nonsuit and a voluntary dismissal that abandons the case as to certain parties has no practical effect unless a plaintiff "nonsuits" those parties in a situation in which another party is prejudiced under Rule 163. | The distinction between a pure Rule 162 nonsuit, which voluntarily dismisses the entire case, and a voluntary dismissal that abandons the case as to certain parties and/or claims has no practical effect when a plaintiff files a written "nonsuit" that abandons the case as to certain claims so long as the written "nonsuit" does not run afoul of the time restrictions in pleading rule that allows a plaintiff to file an amended pleading that omits a claim, as under the liberal pleading rules, the document is in substance an amended pleading voluntarily dismissing the claims, notwithstanding the fact that the word "nonsuit" appears. Vernon's Ann.Texas Rules Civ.Proc., Rules 63, 71, 162, 163. | What is the distinction between a pure Rule 162 nonsuit and a voluntary dismissal? | 039532.docx | LEGALEASE-00128483-LEGALEASE-00128484 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 5159 | Citigroup Glob. Markets Inc. v. Abbar, 761 F.3d 268 | 25T+410 | "In the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court." Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir.2011). The arbitration rules of an industry self-regulatory organization such as FINRA are interpreted like contract terms; "the organization's arbitration provision "should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." " Id. (quoting Bensadoun v. Jobe"Riat, 316 F.3d 171, 176 (2d Cir.2003)) (internal quotation marks omitted). | Arbitration rules of an industry self-regulatory organization such as the Financial Industry Regulatory Authority (FINRA) are interpreted like contract terms; the organization's arbitration provision should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision. | "Is the interpretation of the arbitration rules of an industry self-regulatory organization (or SRO), similar to contract interpretation?" | 007281.docx | LEGALEASE-00128829-LEGALEASE-00128831 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 5160 | In re Bunker Hill Urban Renewal Project 1B of Cmty. Redevelopment Agency of City of Los Angeles, 61 Cal. 2d 21 | 405+2865(4) | The non-chartered taxing agencies here involved, the flood control and school districts, derive their taxing power from the general law and, subject to constitutional restrictions, the Legislature has absolute power over the organization, dissolution, powers, and liability of such corporations. (Oakdale Irr. Dist. v. County of Calaveras (1955) 133 Cal.App.2d 127, 134(3), 283 P.2d 732; Petition East Fruitvale Sanitary Dist. (1910) 158 Cal. 453, 457, 111 P. 368.) Far from there being a constitutional limitation on the Legislature in respect to the tax allocation provisions of section 33950 et seq., the 1952 constitutional amendment (art. XIII, s 19) declares: "The Legislature may provide that any redevelopment plan may contain a provision" for the allocation of taxes such as are provided by the challenged sections. It is clear that such taxing agencies have no vested right to powers of taxation. (County of Mariposa v. Merced Irr. Dist. (1948) 32 Cal.2d 467, 474(4), 196 P.2d 920.). | Subject to constitutional restrictions, Legislature has absolute power over organization, dissolution, powers and liability of flood control districts and school districts. | "Subject to constitutional restrictions, does legislature have absolute power over organization, dissolution, powers, and liability of flood control districts and school districts?" | 016936.docx | LEGALEASE-00128795-LEGALEASE-00128796 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5161 | Chappy v. Labor & Indus. Review Comm'n, 128 Wis. 2d 318 | 413+1 | Worker's compensation statutes are economic regulations by which the legislature has balanced competing societal interests as a matter of public policy. Mulder v. Acme-Cleveland Corp., 95 Wis.2d 173, 180, 290 N.W.2d 276, 280 (1980). Worker's compensation is wholly statutory and questions regarding what should properly be the public policy should be determined by the legislature, not the courts. Larson v. DILHR, 76 Wis.2d 595, 621, 252 N.W.2d 33, 45 (1977). The overall objectives of worker's compensation statutes are to protect injured employees and those who depend on such employees for support. Id. at 615, 252 N.W.2d at 42. | Worker's compensation statutes are economic regulations by which legislature has balanced competing societal interests as a matter of public policy. | Are workers compensation statutes economic regulations by which the legislature has balanced competing societal interests as a matter of public policy? | 047750.docx | LEGALEASE-00128758-LEGALEASE-00128759 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5162 | Bd. of Ed. of City of Chicago v. Chicago Teachers Union, Local No. 1, 82 Ill. App. 3d 354 | 413+2084 | Although these sections and other provisions of the Workmen's Compensation Act provide an employee with an exclusive statutory remedy against his employer for an industrial accident (Duley v. Caterpillar Tractor Co. (1969), 44 Ill.2d 15, 253 N.E.2d 373), they do not prevent the parties from agreeing by contract to supplement the benefits conferred by the Act. | Although Workmen's Compensation Act provides an employee with exclusive statutory remedy against employer for industrial accident, Act does not prevent parties from agreeing to contract to supplement benefits conferred by Act. S.H.A. ch. 48, SS 138.1 et seq., 138.5(a), 138.11. | Can parties enter into contracts to supplement benefits conferred by the Workers Compensation Act? | 048545.docx | LEGALEASE-00128703-LEGALEASE-00128704 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 5163 | Sanders v. Doe, 831 F. Supp. 886 | 413+1 | The principal object of the workers' compensation laws is to provide a statutory limit on an employer's liability for work-related injuries, yet ensure remuneration for employees who are injured on the job, without regard to questions of negligence or assumption of risk. The American concept of workmen's compensation is founded upon recognition of the advisability, from the standpoint of society as well as of employer and employee, of discarding the common law idea of tort liability in the employer-employee relationship and of substituting therefor the principle of liability on the part of the employer, regardless of fault, to compensate the employee, in predetermined amounts based upon his wages, for loss of earnings resulting from accidental injury arising out of and in the course of the employment. Case v. Hermitage Cotton Mills, 236 S.C. 515, 530"31, 115 S.E.2d 57, 66 (S.C.1960) (emphasis added). Cf. Cook v. Mack's Transfer & Storage, 291 S.C. 84, 86"87, 352 S.E.2d 296, 298 (S.C.App.1986), cert. denied, 292 S.C. 230, 355 S.E.2d 861 (S.C.1987). Workers' compensation laws shift the risk of work-related injury from the employee to the employer but compromise the employee's right to sue at common law. The employer's protection from suit by the injured employee, however, is not so broad to encompass any conceivable form of action. Rather, workers' compensation laws are intended to shield the employer, and any other statutorily-insulated entity, from liability in tort actions. Wright v. Smallwood, 308 S.C. 471, 419 S.E.2d 219, 221 (S.C.1992). Uninsured motorist coverage sounds in contract. Thus, S.C.Code Ann. " 42"1"540 does not preclude Plaintiff's recovery of uninsured motorist benefits from Aetna. See id. | Workers' compensation laws shift risk of work-related injury from employee to employer but compromise employee's right to sue at common law. | "Do workers compensation laws shift the risk of work-related injury from the employee to the employer, but compromise the employees right to sue at common law?" | 048551.docx | LEGALEASE-00128707-LEGALEASE-00128708 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5164 | J. Schnarr & Co. v. Virginia-Carolina Chem. Corp., 118 Fla. 258 | 307A+501 | A nonsuit is of two kinds, voluntary and involuntary.It is voluntary when the plaintiff allows judgment to be entered against him for costs by absenting himself or failing to answer when called upon to hear the verdict. But even a voluntary nonsuit would not be allowed to him under our statute after the jury had retired from the bar, even though he should absent himself by failing to answer when called to hear the verdict.It is involuntary when the case is called for trial and the plaintiff neglects to appear, or when he has given no evidence on which a jury could find a verdict, and it has been held that a nonsuit is involuntary when it is prompted by an adverse ruling of the court which is preclusive of a recovery by the plaintiff. | Nonsuit is "voluntary" when plaintiff allows judgment to be entered against him for costs by absenting himself or failing to answer when called on to hear verdict (Comp.Gen.Laws 1927, S 4357). | "Is a nonsuit ""voluntary"" when a plaintiff allows judgment to be entered against him for costs by absenting himself or failing to answer when called on to hear a verdict?" | 026223.docx | LEGALEASE-00129125-LEGALEASE-00129126 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5165 | Duke v. Sun Oil Co., 320 F.2d 853 | 8.30E+23 | We may accept Lessors' contention that in the absence of express agreement, thedelivery of a check to the payee is merely a conditional payment which does not becomeabsolute until the check is actually paid by the drawee bank. A check is simply a writtenorder on a bank, executory in nature, instructing the bank to make certain payment, andso far as the payee's rights against the drawee are concerned, this order may be revoked bythe drawer at any time before the check is paid or in some manner accepted by the bank onwhich it is drawn. We are further in agreement with the Lessors' argument that the act ofmaking the check on May 13 and mailing it to Lessors on that date did not at that time have thesame legal effect that would result from the act of tendering $25 in currency to each of the twoLessors on May 13. | Check is simply a written order on a bank, executory in nature, instructing bank to make certain payment, and so far as payee's rights against drawee are concerned, order may be revoked by drawer at any time before check is paid or in some manner accepted by bank on which it is drawn. | Can a check be revoked by the drawer? | Bills and Notes - Memo 165 - RK.docx | ROSS-003300098-ROSS-003300099 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 5166 | Ammlung v. City of Chester, 224 Pa. Super. 47 | 307A+501 | Initially, it should be noted that the plaintiff has discontinued her action against two of the original eight defendants"the City of Chester and Magistrate Irvin Lawrence. They were intentionally omitted as defendants from her amended complaint and were treated as being no longer parties to the action by the lower court, without objection by the remaining defendants. Although, strictly speaking, a discontinuance of an action against one of several defendants should be effected under Pa.R.C.P. No. 229, 12 P.S. Appendix with notice to all parties (See Pa.R.C.P. No. 229(b)), and although an amendment of a complaint under Pa.R.C.P. No. 1033, as occurred here, is not a proper means for the dropping of a party (See 2B R. Anderson, Pennsylvania Civil Practice s 1033.10 (1969)), the pertinent requisites for discontinuance were not designed to afford protection to the plaintiff seeking discontinuance, but rather to the other parties to the action, who are not here objecting to the discontinuance; no substantial rights of the plaintiff would be affected by a disregarding of the defect of procedure. Consequently, we shall not consider the plaintiff's arguments as to the liability of either the City of Chester or Magistrate Irvin Lawrence. | Pertinent statutory requisites for discontinuance were not designed to afford protection to plaintiff seeking discontinuance but rather to other parties to the action. Pa.R.C.P. Nos. 126, 229, 229(b), 1033, 12 P.S. Appendix. | Are pertinent statutory requisites for discontinuance designed to afford protection to a plaintiff seeking discontinuance or to other parties to the action? | 024753.docx | LEGALEASE-00129358-LEGALEASE-00129360 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5167 | Jenkins v. Devine Foods, 3 N.J. 450 | 307A+742.1 | Our Rule 3:16 was framed upon Federal Rule of Civil Procedure 16, 28 U.S.C.A.; but our rule makes the pre-trial conference mandatory whereas the federal rule leaves it within the discretion of the court. Each rule states that one of the objectives is the simplification of the issues. The comments published with the widely-circulated tentative draft of our rules preliminary to final redraft and adoption noted that "the pre-trial order not only recites the action taken at the conference, but limits the issues', citing in support Burton v. Weyerhaeuser Timber Co., D.C., 1 F.R.D. 571, and that comment reflects our view. "The purpose of the pre-trial conference is to simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at the trial." McDonald v. Bowles, 152 F.2d 741, 742 (9 Cir., 1945). A court should give no instruction to the jury which would nullify the effect of a pre-trial order or be inconsistent with the issues as framed in such order. Cf. Bryant v. Phoenix Bridge Co., 43 F.Supp. 162 (D.C.S.D.Me.1942). The participants in a pre-trial conference should adhere to the spirit of that procedure and be held to waive questions not there presented. Frank v. Gieesy, 117 F.2d 122 (9 Cir., 1941). Modification may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection. Full effect was not given to the pre-trial order. | The purpose of pre-trial conference is to simplify the issues, amend pleadings where necessary and avoid unnecessary proof of facts at the trial. Rules 3:16, 3:79. | "Is purpose of pre-trial conference to simplify the issues, amend pleadings where necessary and avoid unnecessary proof of facts at the trial?" | 026290.docx | LEGALEASE-00129713-LEGALEASE-00129714 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 5168 | State ex rel. Weirton Med. Ctr. v. Mazzone, 214 W. Va. 146 | 307A+747.1 | Pursuant to Rule 16(b) of the West Virginia Rules of Civil Procedure, a trial court has the discretion to enter a scheduling order in any action, limiting the time that parties have, inter alia, to amend the pleadings, file motions, and complete discovery. Ordinarily, the scheduling order entered bya trial court pursuant to Rule 16 controls the course of litigation of a case unless modified by a subsequent order. State ex rel. Crafton v. Burnside, 207 W.Va. 74, 78, 528 S.E.2d 768, 772 (2000). However, in Daniel, this Court acknowledged that with respect to the identification of expert witnesses in medical malpractice cases, the provisions of W.Va.Code " 55-7B-6 take precedence over a Rule 16 scheduling order. W.Va.Code " 55-7B-6 provides, in pertinent part: (a) In each medical professional liability action against a health care provider, not less than nine nor more than twelve months following the filing of answer by all defendants, a mandatory status conference shall be held at which, in addition to any matters otherwise required, the parties shall: (2) On behalf of the plaintiff, certify to the court that either an expert witness has or will be retained to testify on behalf of the plaintiff as to the applicable standard of care or that under the alleged facts of the action, no expert witness will be required. If the court determines that expert testimony will be required, the court shall provide a reasonable period of time for obtaining an expert witness and the action shall not be scheduled for trial, unless the defendant agrees otherwise, until such period has concluded. It shall be the duty of the defendant to schedule such conference with the court upon proper notice to the plaintiff. | Ordinarily, the scheduling order entered by a trial court controls the course of litigation of a case unless modified by a subsequent order. Rules Civ.Proc., Rule 16(b). | Does the scheduling order entered by a trial court control the course of litigation of a case unless modified by a subsequent order? | Pretrial Procedure - Memo # 1355 - C - TJ.docx | ROSS-003313069-ROSS-003313070 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 5169 | Stone v. Kaufman, 88 W. Va. 588 | 307A+510 | Plaintiff was not concluded as for an election by first instituting his suit for specific performance. Though defendant had answered before dismissal, he sought no affirmative cross-relief, and the law of this jurisdiction is that a plaintiff has always the right to discontinue his suit, unless to do so would result in legal prejudice to the defendant other than the mere prospect of future litigation rendered possible by the discontinuance. Hogg's Equity Proc. " 840; Williams v. Brown, 70 W. Va. 472, 74 S. E. 409; Gibbs v. Perkinson, 4 Hen. & M. (Va.) 415; Pullman's Palace Car Co. v. Central Transportation Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; Glascock v. Brandon, 35 W. Va. 84, 12 S. E. 1102. | A plaintiff always has the right to discontinue his suit, unless to do so will result in legal prejudice to the defendant, other than the mere prospect of future litigation rendered possible by the discontinuance. | "Does a plaintiff always have the right to discontinue his suit, unless to do so will result in legal prejudice to the defendant?" | 026385.docx | LEGALEASE-00129974-LEGALEASE-00129977 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5170 | Woodward v. Heritage Const. Co., 887 N.E.2d 994 | 307A+747.1 | The purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and once entered; a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice." Hamlin v. Sourwine, 666 N.E.2d 404, 409 (Ind.Ct. App. (citing T.R. 16(J)). In considering whether to permit a modification of the pretrial order, the trial court considers both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. Daub v. Daub, 629 N.E.2d 873, 875 (Ind.Ct.App. trans. denied. The court may also consider the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or willfulness in failing to comply with the court's existing order. Id. The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been submitted in a list of witnesses and exhibits is committed to the discretion of the trial court. Id. "Although we recognize the binding effect of a pretrial order, this does not mean that it must be rigidly and pointlessly adhered to at trial." Rust-Oleum Corp. v. Fitz, 801 N.E.2d 754, 758 (Ind.Ct.App.2004) (citing Whisman v. Fawcett, 470 N.E.2d 73, 76 (Ind.1984)), trans. denied. | The purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and, once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice. Trial Procedure Rule 16(J). | Does a pre-trial order control the subsequent course of the action? | Pretrial Procedure - Memo # 1533 - C - NE.docx | ROSS-003286206-ROSS-003286207 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5171 | Feykert v. Hardy, 213 Cal. App. 2d 67 | 307A+749.1 | It is settled that, when filed, a pretrial conference order, unless modified at or before trial, supersedes the issues raised by the pleadings and controls the subsequent course of the case. (Rule 216, California Rules of Court, formerly Rule 8.8, Rules for the Superior Courts; Baird v. Hodson (1958), 161 Cal. App.2d 687, 690, 327 P.2d 215; Dell 'Orto v. Dell 'Orto (1959), 166 Cal. App.2d 825, 829-831, 334 P.2d 97; CountyofKings v. Scott (1961), 190 Cal.App.2d 218, 225, 11 Cal.Rptr. 893.) The pretrial order limits the issues to be tried (City of Los Angeles v. County of Mono (1959), 51 Cal.2d 843, 847, 337 P.2d 465) and those issues, neither raised at the pretrial conference nor designated in dispute in the pretrial conference order, are no longer issues in the case. (Dell 'Orto v. Dell Orto, supra; County of Kings v. Scott, supra.) As this court said in Fitzsimmons v. Jones (1960), 179 Cal.App.2d 5, 8, 3 Cal.Rptr. 373, '[t]he purpose of the pre-trial procedure is to place the case in focus so that the defined and precise issues may be resolved as quickly as possible.' Until presented with a request for its modification, the trial judge has a right to rely on the posture of the case defined by the pretrial conference order.\|] (Baird v. Hodson, supra; Spence v. State of California (1961), 198 Cal. App.2d 332, 337-338, 18 Cal.Rptr. 302.) | Until presented with request for its modification, trial judge has right to rely on posture of case defined by pretrial conference order. | "Until presented with request for its modification, does a trial judge have a right to rely on posture of a case defined by a pretrial conference order?" | Pretrial Procedure - Memo # 2444 - C - VA.docx | ROSS-003300086-ROSS-003300087 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 5172 | Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 | 25T+143 | For similar reasons, we also reject the proposition that an arbitration panelwill pose too great a danger of innate hostility to the constraints on business conduct thatantitrust law imposes. International arbitrators frequently are drawn from the legal as well as the business community; where the dispute has an important legal component, the parties and the arbitral body with whose assistance they have agreed to settle their dispute can be expected to select arbitrators accordingly. We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators. | Potential complexity of antitrust matters does not suffice to ward off arbitration nor does arbitration panel pose too great a danger of innate hostility to constraints on business conduct that antitrust law imposes. 9 U.S.C.A. S 1 et seq. | Will an arbitration panel pose too great a danger of innate hostility to the constraints on business conduct that antitrust law imposes? | Alternative Dispute Resolution - Memo 547 - RK.docx | ROSS-003300679-ROSS-003300680 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 5173 | Payne v. Nichols, 176 S.W.2d 961 | 307A+517.1 | The right of a plaintiff to dismiss voluntarily his suit under Art. 2182 is absolute. And it is without any prejudice to any subsequent assertion by him of the matters he asserted in such suit. 26 Tex.Jur., 100. See Scherff v. Missouri P. Ry. Co., 81 Tex. 471, 17 S.W. 39, 26 Am.St.Rep. 828. We do not mean by this that a plaintiff in an injunction suit, after obtaining a temporary injunction, can in anticipation of a damage suit for its wrongful issuance, better his position, or worsen that of his opponent by dismissing his suit. When he has obtained a temporary injunction, a plaintiff has the burden upon the trial of the case upon its merits to justify the issuance thereof, and likewise to justify its perpetuation, where he seeks such perpetuation. Therefore, when he pleads a justification as against a suit for damages for its wrongful issuance (where he has voluntarily dismissed such temporary injunction), the rule should be, and doubtless is, that he has the burden of proof on his justification. In other words, in a suit for damages in such case, by introducing proof of the dismissal of the temporary injunction, the plaintiff thereby, in the suit for damages, makes out a prima facie case of the right to recover damages, and the burden of proof passes to him who obtained the injunction to establish his justification. | Plaintiff's statutory right to dismiss his suit voluntarily is absolute, and is without prejudice to his subsequent assertion of the matters asserted therein. Rev.St.1925, art. 2182. | "Is a plaintiff's statutory right to dismiss his suit voluntarily absolute, and is it without prejudice to his subsequent assertion of the matters asserted therein?" | Pretrial Procedure - Memo # 1277 - C - PC.docx | ROSS-003301189-ROSS-003301190 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5174 | Brown v. United Ins. Co. of Am., 268 S.C. 254 | 307A+742.1 | In the present case the trial judge was furthering the purpose of the pretrial conference: to shorten and simplify the trial process; if necessary, to eliminate it. The conference is designed, at least in part, to cut down on time needlessly spent in the courtroom, at heavy expense to the judiciary and bar, the parties and the public. | Pretrial conference should be utilized to shorten and simplify the trial process and, if necessary, to eliminate it; conference is designed, at least in part, to cut down on time needlessly spent in the courtroom, at heavy expense to judiciary and the bar as well as to the parties and the public. Circuit Court Rules, rule 43. | How should a Pretrial conference be utilized and designed? | 026462.docx | LEGALEASE-00131151-LEGALEASE-00131152 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 5175 | Benware v. Means, 1999-1410 (La. 1/19/00) | 307A+749.1 | Pre-trial conferences reduce unnecessary proof of facts at trial, as well as a litigant's opportunity to create traps or surprises. When the litigants participate in good faith in pre-trial proceedings, settlements are facilitated and costs to litigants are reduced. 62 Am.Jur.2d Pretrial Conference and Procedure " 2 (1999); Walter W. Jones, Jr., Annotation, Consideration or Submission at Trial, Under Rule 16 of Federal Rules of Civil Procedure, of Issues Not Fixed for Trial in Pretrial Order, 11 A.L.R. Fed. 786 (1999). Because the pre-trial conference is an invaluable tool for promoting a fair and speedy trial and aiding in the reduction of the court's backlog of cases, pre-trial orders must be strictly adhered to by the parties. | Because the pre-trial conference is an invaluable tool for promoting a fair and speedy trial and aiding in the reduction of the court's backlog of cases, pre-trial orders must be strictly adhered to by the parties. LSA-C.C.P. art. 1551. | Should the pre-trial orders be strictly adhered to for promoting a fair and speedy trial? | 026793.docx | LEGALEASE-00130685-LEGALEASE-00130686 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5176 | Malloy v. Vanwinkle, 94-2060 (La. App. 4 Cir. 9/28/95), 662 So. 2d 96 | 307A+743 | One purpose of the pretrial order is to narrow the issues for trial to what is really in dispute and save the time and effort that otherwise would be expended proving facts as to which there is no real contest. See La.Code Civ.Proc. art. 1551 (and the Reporter's foreword thereto). The parties and their counsel are entitled to rely on the pretrial order. See generally Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). To allow State Farm to raise an issue as to UM coverage on appeal, when it was not raised in the pretrial order, would be unfair to Mr. Malloy. | One purpose of pretrial order is to narrow issues for trial to what is really in dispute and save time and effort that otherwise would be expended proving facts as to which there is no real contest. LSA-C.C.P. art. 1551. | Would narrowing the issues for trial be the only purpose of a pretrial order? | 026837.docx | LEGALEASE-00130707-LEGALEASE-00130708 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5177 | King v. Zimmerman, 266 Mont. 54 | 307A+743 | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order.Zimmerman, 854 P.2d at 342. In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | "Is the purpose of pretrial orders to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders?" | 026859.docx | LEGALEASE-00131052-LEGALEASE-00131053 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5178 | Itron v. Consert Inc., 109 A.3d 583 | 307A+749.1 | What a court can do is determine that particular facts have been admitted or are otherwise beyond legitimate dispute. A court can base such a determination on the discovery record or on statements made by counsel during the pretrial conference.The pretrial conference should not be viewed as merely an informal meeting at which those involved can act without concern for future consequences. If the conference is to be a useful tool, all participants must be fully aware of the possible effects the pretrial hearing may have on the trial. When the final conference is held after the discovery process is completed, shortly before trial, counsel presumably have identified virtually all of the evidence relating to their cases. Thus, it would not be unreasonable to hold them to the statements they make and the agreements they enter into at the conference or restrict their proof at trial to the issues set forth in the pretrial order.Id. " 1527. "Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial." Id. (citations omitted). "[A] court also may relieve counsel from any statement or stipulation made during a conference in order to prevent injustice." Id. | Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference to be binding for purposes of the trial. | "Do courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference to be binding for purposes of the trial?" | 026892.docx | LEGALEASE-00130500-LEGALEASE-00130501 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5179 | Clark v. Randalls Food, 317 S.W.3d 351 | 307A+331 | Having concluding that Randalls had a duty to preserve the video footage, we must now determine whether Randalls breached that duty. See id.; Adobe Land Corp., 236 S.W.3d at 359. While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. Id. The burden of the prejudicial effects associated with the failure to preserve evidence is placed on the culpable spoliating party rather than the innocent non-spoliating party. Id. A spoliator, however, can defend against an assertion of negligent or intentional destruction by providing other explanations to justify its failure to preserve evidence. Id. | While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. | "While parties need not take extraordinary measures to preserve evidence, do they have a duty to exercise reasonable care in preserving potentially relevant evidence?" | 026896.docx | LEGALEASE-00130520-LEGALEASE-00130521 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5180 | Letson v. State, 236 Ga. App. 340 | 110+1151 | OCGA " 17"8"25 provides, among other things, that applications for continuance based on the absence of a witness must be accompanied by a showing that the absent witness's testimony is material. "Each of the named requirements must be met before the appellate court will review the trial court's discretion in denying the motion for continuance based upon the absence of a witness. Tomlin v. State, 170 Ga.App. 123, 316 S.E.2d 570; Brown v. State, 169 Ga.App. 520, 313 S.E.2d 777. The trial court has discretion in determining whether to grant a continuance for absence of a witness, and that discretion is not abused unless all of the requisites of OCGA " 17"8"25 are shown and the trial court still denied a continuance. Watts v. State, 142 Ga.App. 857, 237 S.E.2d 231; Smith v. State, 120 Ga.App. 448, 170 S.E.2d 832; Frost v. State, 91 Ga.App. 618, 86 S.E.2d 646." Luttrell v. State, 176 Ga.App. 508(3), 336 S.E.2d 369. | Each of the named statutory requirements for a continuance based on the absence of a witness must be met before the appellate court will review the trial court's discretion in denying the motion for continuance. O.C.G.A. S 17-8-25. | "Where any one of the eight statutory requirements for granting continuance based upon the absence of a witness is not met, is there an abuse of the trial court's discretion to deny a continuance?" | 026908.docx | LEGALEASE-00130593-LEGALEASE-00130594 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5181 | Karlseng v. Cooke, 286 S.W.3d 51 | 307A+718 | The second factor considers the materiality and purpose of the discovery sought. When the basis for the requested continuance is "want of testimony," the movant must show (1) the testimony is material, (2) due diligence has been used to obtain the testimony, (3) there is an explanation given for the failure to obtain the testimony, and (4) the testimony cannot be procured from another source. Duerr v. Brown, 262 S.W.3d 63, 78 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Appellants seek the testimony of Faulkner and Johnson to determine the scope and nature of their relationship. This evidence is material to appellants assertion that the arbitration award should be vacated on the ground of "evident partiality." Although appellants did not secure either party's testimony prior to the hearing, we note that it was not unreasonable for appellants to believe the hearing would be rescheduled, particularly since the arbitration award was amended and appellants never received notice of a motion to confirm the amended award. Additionally, it was not unreasonable for appellants to believe that Johnson would be at the hearing, given his role in the arbitration. Once the continuance was denied, appellants tried, unsuccessfully, to procure the attendance of both Faulkner and Johnson. Finally, while Johnson's ex-wife briefly testified to Johnson and Faulkner's relationship some four to five years ago, only Faulkner and/or Johnson can provide information regarding the nature and extent of the relationship. The second factor also weighs in appellants' favor. | When the basis for a requested continuance is want of testimony, the movant must show (1) the testimony is material, (2) due diligence has been used to obtain the testimony, (3) there is an explanation given for the failure to obtain the testimony, and (4) the testimony cannot be procured from another source. | What should the movant show when the basis for a requested continuance is want of testimony? | 026920.docx | LEGALEASE-00130695-LEGALEASE-00130696 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5182 | Cooper v. Rosser, 232 Ga. 597 | 307A+750 | A pre-trial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues. Where the question of precluding issues is raised the matter is within the discretion of the trial judge. Where, as here, there can be no viable claim of surprise or unfairness in the court's consideration of the issue involved in the ruling, we will not conclude that the court abused its discretion under the pre-trial order in making the ruling to which Cooper objects. See 6 Wright & Miller, Federal Practice and Procedure: Civil s 1527, pp. 608-609 (1971); 3 Moore'sFederal Practice, s 16.19, p. 1132 (1974). Indeed, a pre-trial order will be deemed modified to conform to evidence admitted without objection. 1A Barron & Holtzoff, Federal Practice and Procedure, s 473, pp. 850-851 (1960). | Pretrial order should be liberally construed to allow consideration of all questions fairly within ambit of contested issues and where question of precluding issues is raised, matter is within discretion of trial judge. Code, S 81A-116. | "Is the matter within discretion of the trial judge, where a question of precluding issues is raised?" | 027001.docx | LEGALEASE-00131280-LEGALEASE-00131281 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 5183 | Cockrell v. Garton, 244 Neb. 359 | 307A+750 | In Mousel v. ten Bensel, 195 Neb. 456, 459, 238 N.W.2d 632, 634 (1976), we stated: "In relation to evidence [the pretrial conference] is designed for and primarily used to restrict evidence to the issues formulated, secure admissions or stipulations, avoid unduly cumulative evidence and the necessity of proving foundation in regard to clearly competent evidence." However, "[i]t is neither designed nor intended to arbitrarily exclude noncumulative evidence pertinent to the issues simply because it was not mentioned at the pretrial hearing. The District Court has a broad discretion in regard to the amendment of pretrial orders." Id. | In relation to evidence, pretrial conference is designed for and primarily used to restrict evidence to issues formulated, secure admissions or stipulations, and avoid unduly cumulative evidence and necessity of proving foundation for clearly competent evidence; it is neither designed for nor intended to arbitrarily exclude noncumulative evidence pertinent to issues simply because it was not mentioned at pretrial hearing. | How is a pretrial conference designed in relation to evidence? | Pretrial Procedure - Memo # 1797 - C - SPB.docx | LEGALEASE-00020857-LEGALEASE-00020858 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 5184 | Reyna Fin. Corp. v. Lewis Serv. Ctr., 229 Neb. 878 | 307A+750 | The plaintiff's principal assignment of error is that the trial court erred in sustaining the motion for judgment notwithstanding the verdict because there was no issue as to whether the lease agreement was intended as a security interest. The review in this court is complicated by the fact that although a pretrial hearing was held and, apparently, a pretrial order entered, the pretrial order does not appear in the record. The issues specified at the pretrial conference control the course of the action and, unless altered by the trial court, constitute the issues upon which the case is tried. Malerbi v. Central Reserve Life, 225 Neb. 543, 407 N.W.2d 157 (1987). | Issue specified at pretrial conference control the course of the action unless altered by the trial court, and constitute issues upon which case is to be tried. | Does an issue specified at the pretrial conference control the course of the action unless altered by the trial court? | Pretrial Procedure - Memo # 1804 - C - SN.docx | ROSS-003286364-ROSS-003286365 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5185 | Woodward v. Heritage Const. Co., 887 N.E.2d 994 | 307A+747.1 | "[T]he purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and ..., once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice." Hamlin v. Sourwine, 666 N.E.2d 404, 409 (Ind.Ct.App. (citing T.R. 16(J)). In considering whether to permit a modification of the pretrial order, the trial court considers both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. Daub v. Daub, 629 N.E.2d 873, 875 (Ind.Ct.App. trans. denied. The court may also consider the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or willfulness in failing to comply with the court's existing order. Id. | The purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and, once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice. Trial Procedure Rule 16(J). | Does a pretrial order control the subsequent course of the action and trial? | Pretrial Procedure - Memo # 1814 - C - SB.docx | ROSS-003313287-ROSS-003313288 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5186 | Klinghoffer v. Barasch, 4 Cal. App. 3d 258 | 307A+501 | We assume that a complaint in intervention, on file with the consent of the court, may constitute a request for affirmative relief which will prevent a dismissal of the action under section 581, subdivision 1 or 5. But where a complaint in intervention seeks only to resist the plaintiff's cause of action, plaintiff still retains the privilege of a voluntary dismissal, which will apply to the intervener as well. (Henry v. Vineland Irr. Dist., 140 Cal. 376, 73 P. 1061.) | Where a complaint in intervention seeks only to resist plaintiff's cause of action, plaintiff still retains privilege of voluntary dismissal, which will apply to intervenor as well. West's Ann.Code Civ.Proc. SS 387, 581, subds. 1, 5. | "Where a complaint in intervention seeks only to resist a plaintiff's cause of action, does the plaintiff still retain a privilege of voluntary dismissal?" | 027408.docx | LEGALEASE-00131233-LEGALEASE-00131234 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 5187 | Black v. Don Schmid Motor, 232 Kan. 458 | 307A+745 | This court has often held that the purpose of the pretrial order is to define and clarify the issues, and when entered pursuant to K.S.A. 60"216, has the full force and effect of other orders of the court and controls the subsequent course of trial unless modified to prevent manifest injustice. See Country Club Home, Inc. v. Harder, 228 Kan. 756, 762, 620 P.2d 1140 (1980); modified 228 Kan. 802, 623 P.2d 505; Dold v. Sherow, 220 Kan. 350, 353, 552 P.2d 945 (1976); Kleibrink v. Missouri-Kansas-Texas Railroad Co., 224 Kan. 437, 441"42, 581 P.2d 372 (1978). Large discretionary power is granted to the trial court in permitting or refusing modification and amendment of the issues outlined in a pretrial order. Frevele v. McAloon, 222 Kan. 295, 298, 564 P.2d 508 (1977); Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970); K.S.A. 60"216. | Purpose of pretrial order is to define and clarify the issues and, when entered pursuant to statute, the order has full force and effect of other orders of the court and controls the subsequent course of the trial unless modified to prevent manifest injustice. Rules Civ.Proc., K.S.A. 60-216. | Do orders at pretrial conference have full force of other orders? | 027539.docx | LEGALEASE-00130873-LEGALEASE-00130874 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5188 | People ex rel. Du Page Cty. v. Smith, 21 Ill. 2d 572 | 268+619 | Taxes are an enforced proportional contribution levied by the State by virtue of its sovereignty for support of the government. Wagner v. City of Rock Island, 146 Ill. 139, 34 N.E. 545, 21 L.R.A. 519; Rockford Savings & Loan Ass'n v. City of Rockford, 352 Ill. 348, 185 N.E. 623; Zehender & Factor, Inc. v. Murphy, 386 Ill. 258, 53 N.E.2d 944. Service charges, tolls, water rates and the like are, on the other hand, contractual in nature, either express or implied, and are compensation for the use of another's property, or of an improvement made by another, and their amount is determined by the cost of the property or improvement and the consideration of the return which such an expenditure should yield. Wagner v. City of Rock Island, 146 Ill. 139, 34 N.E. 545; People ex rel. Brockamp v. Schlitz Brewing Co., 261 Ill. 22, 103 N.E. 555; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 N.E.2d 744, 167 A.L.R. 1347. The charge is made, not by virtue of the sovereignty of the governmental unit, but in its business or proprietary capacity. Baltis v. Village of Westchester, 3 Ill.2d 388, 121 N.E.2d 495. Thus, regardless of whether or not connection is compelled, the charge arises from an implied contract and is a charge for the use of another's property rather than a contribution for the support of the government. This being so, it cannot be said that a charge for the use of plaintiff's sewer system is a tax which falls within the proscriptions of the constitution. Moreover, even if the charge could be deemed an involuntary contribution by the user of the system, such a charge, made pursuant to a law which is not a taxing statute but one enacted in the interest of public health and welfare, would not appear to come within the classification of general taxation. Cf. Zehender & Factor, Inc. v. Murphy, 386 Ill. 258, 53 N.E.2d 944. | Service charges, tolls, water rates and the like are contractual in nature, either express or implied, and are compensation for the use of another's property or of an improvement made by another, and their amount is determined by cost of property or improvement and the consideration of return which such an expenditure should yield. | What is the contrast between a tax and a service charge? | 044732.docx | LEGALEASE-00130875-LEGALEASE-00130876 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5189 | Mcleod v. Columbia Cty., 278 Ga. 242 | 371+2001 | "By far the most commonly contested legal issue surrounding stormwater utilities is whether the fee is actually a fee or whether it functions more as a tax. [Cit.]" Brisman, Considerations in Establishing a Stormwater Utility, 26 S. Ill. U. L.J. 505, 520(V)(C)(3) (2002). "Although it is often important to decide whether a particular charge is a tax ora fee, it is frequently difficult to discern whether a given enactment provides for a regulatory fee or authorizes simply a tax. [Cit.]" Hadley v. City of Atlanta, 232 Ga.App. 871, 872(1), 502 S.E.2d 784 (1998). The distinction between a tax and a fee "is not one of names but of substance." Richmond County Business Assn. v. Richmond County, 224 Ga. 854, 856(1), 165 S.E.2d 293 (1968). A legislative body's characterization of the amounts collectible "for services rendered as being fees is not controlling on the question of whether they constitute fees or taxes.... [Cits.]" Gunby v. Yates, 214 Ga. 17, 19, 102 S.E.2d 548 (1958). | A legislative body's characterization of the amounts collectible for services rendered as being fees is not controlling on the question of whether they constitute fees or taxes. | Is a legislative body's characterization of the amounts collectible for services rendered as being fees controlling on the question of whether they constitute fees or taxes? | Taxation - Memo # 189 - C - SS.docx | ROSS-003286808-ROSS-003286810 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5190 | Nixon v. Sec'y of Navy, 422 F.2d 934 | 34+2 | Nixon's first claim is that under the appropriate regulations it was mandatory that his October 25, 1965 extension agreement be cancelled, and that it was error for the district court not to so find. Before examining the merits of this claim, it should first be noted that if the Navy did fail to follow its own directives it is clear that the district court would have had the power to issue the requested writ. While the courts are reluctant to interfere in military affairs, the Navy is bound by its own validly promulgated regulations, and the district courts are free to entertain suits by servicemen requesting compliance with such rules. Smith v. Resor, 406 F.2d 141 (2 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968). Upon examination of the merits, however, we cannot agree with appellant's claim that he was entitled to mandatory cancellation of the October 25, 1965 extension agreement. | The Navy is bound by its own validly promulgated regulations, and federal district courts are free to entertain suits by servicemen requesting compliance with such rules. | Are the federal district courts free to entertain suits by servicemen requesting compliance with rules promulgated by the Navy? | 008891.docx | LEGALEASE-00132405-LEGALEASE-00132406 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5191 | State v. Flansbaum-Talabisco, 121 So. 3d 568 | 63+1(1) | Therefore, we find wisdom in the federal law requirement that an explicit quid pro quo is necessary for a conviction under corruption-related statutes when a government representative accepts a campaign contribution. As the Fifth Circuit Court of Appeals reasoned in United States v. Dozier, 672 F.2d 531, 537 (5th Cir.1982): | An explicit quid pro quo is necessary for a conviction under corruption-related statutes when a government representative accepts a campaign contribution, including bribery, unlawful compensation, and official misconduct. West's F.S.A. SS 838.015(1), 838.016(1), 838.022. | Is an explicit quid pro quo necessary for a conviction under corruption-related statutes when a government representative accepts a campaign contribution? | 011135.docx | LEGALEASE-00131526-LEGALEASE-00131527 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 5192 | Bowman v. Benouttas, 519 S.W.3d 586 | 307A+747.1 | A trial court has the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery. See Waters v. Coker, No. M2007- 01867-COA-RM-CV, 2008 WL 4072104, at (Tenn. Ct. App. Aug. 28, 2008); Tenn. R. Civ. P. 16.01. In situations where a party fails to comply with a trial court's scheduling order, Tenn. R. Civ. P. 16.06 provides: If a party or party's attorney fails to obey a scheduling or pretrial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just .... In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. | A trial court has the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery. Tenn. R. Civ. P. 16.01. | "Does a trial court have the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery?" | Pretrial Procedure - Memo # 1500 - C - NC.docx | ROSS-003286197-ROSS-003286198 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5193 | Marrow v. State Farm Ins. Co., 264 Ark. 227 | 307A+331 | It is readily apparent to us that, under the circumstances, appellant's discovery has been unduly limited. The goal of all discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. United States v. Ling-Temco-Vought, Inc., 49 F.R.D. 150 (W.D., Pa., 1970). A motion for production of documents must be considered in the light of the particular circumstances which give rise to it and the need of the movant for the information requested. Straughan v. Barge MVL No. 802, 291 F.Supp. 282 (S.D., Tex., 1968). That the information sought is not otherwise available to the party making the request, and that evidence pertaining to the issue, if there is any, would likely be in the files of State Farm, are very pertinent circumstances. Chitty v. State Farm Mutual Automobile Ins. Co., 36 F.R.D. 37 (E.D., S.C., 1964). See also, Rekeweg v. Federal Mutual Ins. Co., 27 F.R.D. 431 (N.D., Ind., 1961); Royal Exchange Assurance v. McGrath, 13 F.R.D. 150 (S.D., N.Y., 1952); Turmenne v. White Consolidated Industries, Inc., 266 F.Supp. 35 (Mass., 1967). | Motion for production of documents must be considered in light of particular circumstances which give rise to it and need of moving party for information requested. | Must a motion for production of documents be considered in light of particular circumstances which give rise to it and need of movant for information requested? | 027281.docx | LEGALEASE-00131670-LEGALEASE-00131671 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5194 | Norton v. Ewaskio, 241 S.C. 557 | 30+3239 | Prior to the trial date, defendant moved for a continuance which was denied by the trial Judge, and defendant's first exception alleges error in so doing in that said motion was based on the absence of a material witness. The witness in question was a member of the police department of the City of Columbia at the time of the accident, but at the time of trial was a member of the armed forces stationed in Germany. The motion was made informally before Judge Bates in Chambers, and there is no indication in the record that there was compliance with Rule 27 of the Circuit Court Rules. A motion for a continuance based on the ground of the absence of a material witness is addressed to the sound discretion of the trial Judge, and it is well settled that the trial Judge's ruling will not be disturbed unless it be shown that there was an abuse of discretion. See 6 S.D. Digest, Continuance, Section 21 et seq. In instant case there has been no showing that the trial Judge abused his discretion in denying the motion for a continuance, and this exception is overruled. | Motion for continuance based on absence of material witness is addressed to sound discretion of trial judge, and his ruling will not be disturbed in absence of an abuse of discretion. | "In a motion for continuance based on the absence of a material witness, will a trial judge's ruling not be disturbed in absence of an abuse of discretion?" | 027471.docx | LEGALEASE-00132307-LEGALEASE-00132308 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5195 | In re Team Rocket, 256 S.W.3d 257 | 307A+517.1 | Team Rocket argues that only one venue determination may be made in a proceeding and that Texas Rule of Civil Procedure 87 specifically prohibits changes in venue after the initial venue ruling. We agree. Once a trial court has ruled on proper venue, that decision cannot be the subject of interlocutory appeal. Id. " 15.064(a) ("No interlocutory appeal shall lie from the determination."); Tex.R. Civ. P. 87(6) ("There shall be no interlocutory appeals from such determination."). Moreover, Rule 87 states that "if an action has been transferred to a proper county in response to a motion to transfer, then no further motions to transfer shall be considered." Tex.R. Civ. P. 87(5). Although a trial court's ruling transferring venue is interlocutory for the parties, and thus not subject to immediate appeal, the order is final for the transferring court as long as it is not altered within the court's thirty-day plenary jurisdiction. See In re Sw. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex.2000) (per curiam). Once a ruling is made on the merits, as in a summary judgment, that decision becomes final as to that issue and cannot be vitiated by nonsuiting and refiling the case. See Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 855 (Tex.1995) (per curiam) ("A nonsuit sought after [a partial summary judgment] results in a dismissal with prejudice as to the issues pronounced in favor of the defendant."). This concept is rooted in the long-standing and fundamental judicial doctrines of res judicata and collateral estoppel, which "promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation" of matters that have already been decided or could have been litigated in a prior suit. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.1994); accord Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex.2007). Just as a decision on the merits cannot be circumvented by nonsuiting and refiling the case, a final determination | Once a ruling is made on the merits, as in a summary judgment, that decision becomes final as to that issue and cannot be vitiated by nonsuiting and refiling the case. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Once a ruling is made on the merits, as in a summary judgment, does that decision become final as to that issue and cannot be vitiated by nonsuiting and refiling the case?" | 027795.docx | LEGALEASE-00131602-LEGALEASE-00131604 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 5196 | Hawk v. Branjes, 97 Wash. App. 776 | 102+197 | While a voluntary dismissal under CR 41(a)(1) generally divests a court of jurisdiction to decide a case on the merits, an award of attorneys' fees pursuant to a statutory provision or contractual agreement is collateral to the underlying proceeding. As a result, the court retains jurisdiction for the limited purpose of considering a defendant's motion for fees. Any other result would permit a party to voluntarily dismiss an action to evade an award of fees under the express terms of a statute or agreement. Moreover, to hold otherwise would unnecessarily subject the courts to separate actions to recover fees readily ascertainable upon dismissal of the underlying claim. Consequently, the trial court here properly retained jurisdiction to award attorneys' fees under the terms of the lease agreement. | While a voluntary dismissal generally divests a court of jurisdiction to decide a case on the merits, an award of attorney fees pursuant to a statutory provision or contractual agreement is collateral to the underlying proceeding; as a result, the court retains jurisdiction for the limited purpose of considering a defendant's motion for fees. CR 41(a)(1). | "Once a case is voluntarily dismissed, is a trial court divested of jurisdiction to proceed in the case in any manner?" | 027821.docx | LEGALEASE-00131866-LEGALEASE-00131868 | Order, SA | 0.56 | 1 | 0 | 0 | 1 | |
| 5197 | Neal v. Hall, 28 So. 2d 131 | 307A+693.1 | The power of a court to enforce its lawful orders is inherent. But for this power, business before it would often become congested, its functions impaired, and the speedy justice guaranteed by the Constitution to litigants largely denied. Generally, the penalty visited upon a litigant for not complying with a court's order that has to do with procedure is a stay of proceedings or dismissal of his suit as of non-suit. This latter action restores matters to the status occupied before the suit was instituted and leaves the party free to again come into court with his complaint. | A dismissal of suit as of nonsuit restores matters to the status occupied before the suit was instituted and leaves the party free again to come into court with his complaint. | Does a dismissal without prejudice restore matters to the status occupied before the suit was instituted and leaves the party free to again come into court with his complaint? | 027834.docx | LEGALEASE-00131989-LEGALEASE-00131990 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5198 | In re Piper Aircraft Distribution Sys. Antitrust Litig., 551 F.2d 213 | 336H+403 | The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought. See Hill v. W. Bruns & Co., 498 F.2d 565, 567 n.2 (2d Cir. 1974), citing A. B. Dick & Co. v. Marr, 197 F.2d 498, 502 (2d Cir.), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); Bomer v. Ribicoff, 304 F.2d 427, 428 (6th Cir. 1962); Bryan v. Smith, 174 F.2d 212, 214 (7th Cir. 1949); Stout v. Mason, 17 F.R.D. 93 (E.D.Pa.1954); Annot., 11 A.L.R.2d 1407. "It carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim." 27 C.J.S. Dismissal and Nonsuit s 39 (1959). Neither res judicata nor collateral estoppel is traditionally applicable to a voluntary dismissal. See Restatement (Second) of Judgments, Tent.Draft No. 1, s 48.1(1)(b) (March 28, 1973). A class action determination is in the nature of an interlocutory order. As such, it must necessarily fall if the case itself is dismissed without a judgment amounting to an adjudication on the merits. | Although there are strong arguments that may be advanced for applying the rule of collateral estoppel to a class action determination when the plaintiff is engaging in multi-district litigation, the district court was, in the instant case, foreclosed from applying collateral estoppel as a basis for denying class action status, since, in respect to a prior Florida suit in which class action status was denied, the defendants had not filed an answer and the case was thus not in fact at issue when the class action hearing took place, since plaintiff, on the day after the order denying class action status, filed notice of voluntary dismissal without prejudice, and since the effect of that dismissal was to render the proceedings a nullity and leave the parties as if the action had never been brought. Fed.Rules Civ.Proc. rules 23, 41(a)(1), 28 U.S.C.A. | Is the effect of a voluntary dismissal without prejudice to render the proceedings a nullity and leave the parties as if the action had never been brought? | 027844.docx | LEGALEASE-00132095-LEGALEASE-00132097 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 5199 | Kelly v. Colston, 977 So. 2d 692 | 307A+517.1 | The effect of a voluntary dismissal prior to submission is immediate, final, and irreversible. It terminates the litigation and instantaneously divests the court of its jurisdiction to enter further orders. See Randle-E. Ambulance Serv., Inc. v. Vasta, 360 So.2d 68 (Fla.1978). This is equally true when the dismissal is taken in a dissolution action. See Hayden v. Hayden, 373 So.2d 436, 438 (Fla. 3d DCA 1979) (holding a dissolution action may be dismissed without leave of the court and, once taken, the court loses jurisdiction and power to exercise discretion or adjudicate the action in any way). A dismissal is effective, even though the best interests of the minor children might be affected. See Nathanson v. Nathanson, 693 So.2d 1061, 1062 (Fla. 4th DCA 1997). Consequently, if the petitioner files a voluntary dismissal before "submission" occurs, any further orders are null and void. | The effect of a voluntary dismissal prior to submission of case to the court is immediate, final, and irreversible; it terminates the litigation and instantaneously divests the court of its jurisdiction to enter further orders. West's F.S.A. RCP Rule 1.420. | "Is the effect of a voluntary dismissal prior to submission of case to the court immediate, final, and irreversible?" | Pretrial Procedure - Memo # 2405 - C - ES.docx | ROSS-003327083-ROSS-003327084 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5200 | Sch. Dist. of City of Scranton v. Dale & Dale Design & Dev., 559 Pa. 398 | 371+2150 | Having determined that the tax is not prohibited by the Local Tax Enabling Act, we must next examine the related claim of whether the tax is duplicative of the realty transfer tax. It is well-established that[i]n determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. The incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied. | In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases; the incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied. | How is double taxation determined? | 044856.docx | LEGALEASE-00131715-LEGALEASE-00131716 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 5201 | Fish v. Indus. Comm'n, 12 Ariz. App. 486 | 413+1 | The Fund is strongly critical of this relationship. As we stated in Clark v. Industrial Commission of Arizona, 10 Ariz.App. 486, 460 P.2d 22 (1969), review denied, quoting from Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966): "Industrial compensation is not based on the good moral character of the petitioner, but is founded upon whether the petitioner comes within the scope of the workmen's compensation statutes." | Industrial compensation is not based on good moral character of claimant but is founded on claim coming within scope of workmen's compensation statutes. A.R.S. SS 23-1041, 23-1046, subsec. B, 23-1064. | Is industrial compensation based on good moral character of the claimant or founded on a claim coming within the scope of the workmens compensation statutes? | 047835.docx | LEGALEASE-00131760-LEGALEASE-00131761 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 5202 | United States v. Garrido, 713 F.3d 985 | 63+1(1) | Section 666 concerns bribery in connection with state and local entities receiving federal funds. An official violates " 666 if the official "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions" of an entity (in this case, the City of South Gate), if the exchange involves at least $5,000 and the entity receives federal funds in excess of $10,000. 18 U.S.C. " 666(a)(1)(B), (b). The purpose of the statute is to "protect federal funds by preserving the integrity of the entities that receive the federal funds." United States v. Simas, 937 F.2d 459, 463 (9th Cir.1991) (citing United States v. Westmoreland, 841 F.2d 572, 578 (5th Cir.1988)). | Purpose of federal statute that concerns bribery in connection with state and local entities receiving federal funds is to protect federal funds by preserving the integrity of the entities that receive the federal funds. 18 U.S.C.A. S 666. | What is the purpose of the statute that concerns bribery in connection with state and local entities receiving federal funds? | 011188.docx | LEGALEASE-00132609-LEGALEASE-00132611 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 5203 | United States v. Gatling, 96 F.3d 1511 | 63+1(1) | Finally, there was also sufficient evidence for the jury to find that Walker conspired to accept bribes rather than gratuities. Bribery is defined as occurring when "a public official ... corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for another person ... in return for: (A) being influenced in the performance of any official act." 18 U.S.C. " 201 (1994). This court has held that "[p]ayments to a public official for acts that would have been performed in any event ... are probably illegal gratuities rather than bribes" and that bribery implies a quid pro quo. United States v. Campbell, 684 F.2d 141, 148 (D.C.Cir.1982); United States v. Brewster, 506 F.2d 62, 72 (D.C.Cir.1974). A central difference between accepting a bribe and accepting a gratuity is the degree of culpable intent on the part of the recipient; to convict a defendant for accepting a bribe a jury must find that the defendant acted "corruptly," whereas to convict for accepting a gratuity the jury need only find that the defendant acted "knowingly and willingly." Campbell, 684 F.2d at 149-50. Given the equation of bribery with a quid pro quo, "corruptly" in the context of the bribery statute would appear to mean that the defendant accepts money with the specific intent of performing an official act in return. | Central difference between accepting bribe and accepting gratuity is degree of culpable intent on part of recipient; to convict defendant for accepting bribe, jury must find that defendant acted corruptly, whereas to convict for accepting gratuity, jury need only find that defendant acted knowingly and willingly. 18 U.S.C.A. S 201. | What is the central difference between accepting a bribe and accepting a gratuity? | Bribery - Memo #261 - C - LB.docx | ROSS-003285761-ROSS-003285762 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5204 | Yorkshire Worsted Mills v. Nat'l Transit Co., 325 Pa. 427 | 307A+16 | A bill of discovery in aid of an action at law is an equitable remedy to enable a litigant to obtain, prior to trial, such information as is in exclusive possession of the adverse party and is necessary to the establishment of the complainant's case. Jurisdiction in discovery was given to the court of common pleas of Philadelphia county by the Acts of June 16, 1836, P.L. 784, and April 10, 1848, P.L. 448, and was conferred generally upon the courts of common pleas throughout the state by the Act of February 14, 1857, P.L. 39 (17 P.S. " 283). It is available in actions of trespass and may be invoked by either plaintiff or defendant. See Bains v. Goldey, 35 Pa. 51; Compton v. International Harvester Co., 297 Pa. 462, 147 A. 93; Nashville, C. & St. L. Ry. Co. v. Jenkins & Son (No. 4) 155 Tenn. 605, 296 S.W. 1, 53 A.L.R. 812; Kerr, Discovery (1870), p. 7; Pomeroy Equity Jurisprudence (4th Ed. 1918), " 191; Swarthmore College v. Springfield Consolidated Water Co., 16 Del. Co. R. 427. In the early period of the commonwealth's legal history, it provided the only means whereby such information could be obtained, because at law a party could not obtain the production of books, records, and documents which were in his opponent's custody. This function of equity has not been usurped by the reforms in law practice under the Act of February 27, 1798, 3 Smith Laws 303 (28 P.S. " 61), which permits the use of the subpoena duces tecum for the production of records and documents at trial. Lesser v. Henry, 50 Pa.Super. 440. While the law courts are now able to assist litigants to a far greater extent in this regard, the jurisdiction of equity over bills of discovery in aid of actions at law has not for that reason been lost, although its aid is less frequently invoked. Compton v. International Harvester Co., supra; Dock v. Dock, 180 Pa. 14, 36 A. 411, 57 Am.St.Rep. 617; Lesser v. Henry, supra. And see Carpenter v. Winn, 221 U.S. 533, 31 S.Ct. 683, 55 L.Ed. 842; Pomeroy, op. cit. supra, " 193. The legal remedy is | "Bill of discovery" in aid of action at law is equitable remedy to enable litigant to obtain, prior to trial, such information as is in exclusive possession of adverse party and is necessary to establishment of complainant's case. | Is a bill of discovery an equitable remedy in law? | Pretrial Procedure - Memo # 1883 - C - KS.docx | ROSS-003287289-ROSS-003287290 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5205 | Walters v. First Fed. Sav. & Loan Ass'n of Phoenix, 131 Ariz. 321 | 307A+750 | 16 A.R.S. Rules of Civil Procedure, Rule 16(a), provides that the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The purpose of the pretrial order and statement is to simplify the issues after the parties have completed discovery and to shorten trial time. Arizona State Highway Department v. Becktold, 105 Ariz. 125, 460 P.2d 179 (1969). Most importantly, the order acts to limit the issues to be tried. Because of this function, the trial court may refuse to give an instruction to the jury on an issue not embodied in the pretrial order. See 6 Wright & Miller, Federal Practice and Procedure, s 1527 (1971). Here, the trial judge acted within his discretion in refusing to give the requested instruction on constructive fraud since it was not comprised within the pretrial order. Because of the related litigation which preceded this action, plaintiffs were well aware of the factual and legal issues they were to encounter in the present lawsuit. Under these circumstances, liberal construction of the procedural rules does not require the trial court to consider a new legal theory which was not disclosed in the pretrial statement and order. | Purpose of pretrial order and statement is to simplify issues after party has completed discovery and to shorten trial time, and to limit the issues to be tried. 16 A.R.S. Rules Civ.Proc., Rule 16(a). | "Is the purpose of a pretrial order and a statement to simplify issues after party has completed discovery and to shorten trial time, and to limit the issues to be tried?" | 027157.docx | LEGALEASE-00133136-LEGALEASE-00133137 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 5206 | Kidd v. Cincinnati Transit Co., 24 Ohio App. 2d 101 | 307A+717.1 | It is the policy of the law that the parties to an action should have the benefit of the personal attendance of material witnesses to a trial whenever reasonably practicable. Ohio Jurisprudence 2d 168, Continuances, Section 12. See, also, 12 American Jurisprudence 464, Continuances, Section 23. | It is the policy of the law that parties to an action should have the benefit of personal attendance of material witnesses to a trial whenever reasonably practicable. | Is it the policy of the law that parties to an action should have the benefit of personal attendance of material witnesses to a trial whenever reasonably practicable? | 027191.docx | LEGALEASE-00132996-LEGALEASE-00132997 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 5207 | Ex parte Rowell, 248 Ala. 80 | 307A+331 | The motion numbered two is not based on an affidavit as required by section 426, supra, and therefore cannot be supported by that statute. In Ex parte Darring, 242 Ala. 621, 7 So.2d 564, this Court observed that section 426, supra, is supplementary to existing statutes, especially to section 487, which looks to production of documents at the trial. This is also true as to a subpoena duces tecum under section 489, Title 7, Code, addressed to persons not a party to the suit. | The statute empowering court, on affidavit of necessity and materiality, to require a party to suit to produce documents in his possession is supplementary to statute looking to production of documents at trail. Code 1940, Tit. 7, SS 426, 487, 489. | "Is the statute empowering court, on affidavit of necessity and materiality, requires a party to suit to produce documents in his possession supplementary to a statute looking to production of documents at trail?" | 027222.docx | LEGALEASE-00132590-LEGALEASE-00132591 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 5208 | Medina v. Osiecki, 2009-Ohio-5574, 154 Ohio Misc. 2d 7 | 307A+517.1 | "A case that has been voluntarily dismissed is treated as though it had never been filed. Zimmie v. Zimmie (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 464 N.E.2d 142. The parties are returned to the position they were in prior to commencement of the action. Nielsen v. Firelands Rural Elec. Coop. (1997), 123 Ohio App.3d 104, 109, 703 N.E.2d 807. Consequently, a dismissal pursuant to Civ.R. 41(A) does not adjudicate the merits of a claim and does not produce a prevailing party. See Champion Mall Corp. v. Bilbo Freight Lines, Inc. (1992), 81 Ohio App.3d 611, 615, 611 N.E.2d 969;" Ohio Civ. Rights Comm. v. GMS Mgt. Co., Inc. (June 28, 2000), Summit App. No. 19814, 2000 WL 840495. | A case that has been voluntarily dismissed is treated as though it had never been filed; the parties are returned to the position they were in prior to commencement of the action. | Is a case that has been voluntarily dismissed treated as though it had never been filed and do the parties return to the position they were in prior to commencement of the action? | 027703.docx | LEGALEASE-00132673-LEGALEASE-00132674 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5209 | Richter v. Prairie Farms Dairy, 2016 IL 119518 | 30+78(4) | We cannot accept this contention. The circuit court granted plaintiffs' motion for a voluntary dismissal of Richter I pursuant to section 2"1009 of the Code of Civil Procedure (735 ILCS 5/2"1009 (West 2010)). A voluntary dismissal pursuant to section 2"1009 terminates the entire action and renders immediately appealable all final orders entered therein that were not previously appealable. Hudson, 228 Ill.2d at 468, 321 Ill.Dec. 306, 889 N.E.2d 210; Dubina v. Mesirow Realty Development, Inc., 178 Ill.2d 496, 503, 227 Ill.Dec. 389, 687 N.E.2d 871 (1997). However, this court's decisions in Rein and Hudson explained that res judicata prohibits a litigant from using section 2"1009 to split claims into multiple actions or suits. Hudson, 228 Ill.2d at 471"72, 321 Ill.Dec. 306, 889 N.E.2d 210; Rein, 172 Ill.2d at 339, 216 Ill.Dec. 642, 665 N.E.2d 1199. In Rein, this court cautioned that a plaintiff's statutory right to a voluntary dismissal within the limitations period (735 ILCS 5/13"217 (West 2010)) does not "automatically immunize a plaintiff against the bar of res judicata or other legitimate defenses a defendant may assert in response to the refiling of voluntarily dismissed counts." Rein, 172 Ill.2d at 342"43, 216 Ill.Dec. 642, 665 N.E.2d 1199. In Hudson, this court explained: "Rein thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a res judicata defense." (Emphasis added.) Hudson, 228 Ill.2d at 473, 321 Ill.Dec. 306, 889 N.E.2d 210. | A voluntary dismissal terminates the entire action and renders immediately appealable all final orders entered therein that were not previously appealable. S.H.A. 735 ILCS 5/2-1009. | Does a voluntary dismissal terminate the entire action and renders immediately appealable all final orders entered therein that were not previously appealable? | 028042.docx | LEGALEASE-00133374-LEGALEASE-00133376 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 5210 | Deutsche Bank Nat. Tr. Co. v. McGurk, 206 Cal. App. 4th 201 | 307A+517.1 | Had McGurk's belief been correct"that is to say, had New Century not assigned its interest in the deed of trust to Deutsche Bank prior to its dismissal"the effect of the ultimate judgment quieting title in McGurkon New Century would be easy to determine. "A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party.[Citations.] When an action is wilfully dismissed by the plaintiff against one or more of several defendants the effect is the same as if the action had been originally brought against the remaining defendants." (Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 761, 157 P.2d 868.) "After such dismissal the defendant is a stranger to the action." (Ibid.) The quiet title statutes are clear that a quiet title judgment does not bind a nonparty whose interest was of record prior to the filing of the lis pendens (Code Civ. Proc., " 764.045, subd. (a)), nor does it bind a nonparty whose interest was actually known to the plaintiff at the time of the lis pendens (Code Civ. Proc., " 764.045, subd. (b)). As the result of its voluntary dismissal, New Century became a nonparty to the quiet title action. New Century's interest was both of record and known to McGurk prior to filing her lis pendens. Thus, under both subdivisions of Code of Civil Procedure section 764.045, the quiet title judgment could not have bound it. | A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. | Does a plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party? | 028123.docx | LEGALEASE-00132578-LEGALEASE-00132579 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 5211 | Sullwold v. Barcus, 17 Kan. App. 2d 410 | 307A+750 | The trial court did not abuse its discretion by failing to submit the claim for punitive damages to the jury. Unless modified to prevent manifest injustice, the pretrial order under K.S.A.1991 Supp. 60"216 controls the course of the action, and an issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court. Herbstreith v. de Bakker, 249 Kan. 67, Syl. 1, 815 P.2d 102 (1991). The pretrial order herein properly did not include a claim for punitive damages and was not subject to modification. | Unless modified to prevent manifest injustice, pretrial order controls course of action, and issue or claim for relief that is not contained in pretrial order should not be entertained by trial court. Rules Civ.Proc., K.S.A. 60-216. | Should an issue or claim for relief that is not contained in pretrial order be entertained by trial court? | 028137.docx | LEGALEASE-00132619-LEGALEASE-00132620 | Condensed, Order, SA | 0.58 | 1 | 1 | 0 | 1 | 1 |
| 5212 | Schein v. Am. Rest. Grp., 852 S.W.2d 496 | 307A+517.1 | Cash Express asserts that sanctions barring the introduction of certain evidence and documents for failure to timely respond to a discovery request do not survive a nonsuit. We agree. | Discovery sanctions barring introduction of certain evidence in documents for failure to timely respond to discovery request do not survive nonsuit, and thus such evidence is admissible in subsequent suit between parties on same issue. Vernon's Ann.Texas Rules Civ.Proc., Rule 215, subd. 5. | Do discovery sanctions barring introduction of certain evidence in documents for failure to timely respond to discovery request survive nonsuit? | 028171.docx | LEGALEASE-00132846-LEGALEASE-00132847 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 5213 | Velasco v. Chambless, 295 Ga. App. 376 | 307A+486 | "When requests for admission are made, the matter is deemed admitted unless denied by written answer [in a timely manner]." Under OCGA " 9-11-36(b), the trial court is vested with broad discretion to permit withdrawal of an admission made by reason of the failure to make a timely response to the request. On appellate review, "the trial court's ruling on this issue may be reversed only upon a showing of abuse of discretion." | The trial court is vested with broad discretion to permit withdrawal of an admission made by reason of the failure to make a timely response to the request. West's Ga.Code Ann. S 9-11-36(b). | Does a trial court have broad discretion to permit the withdrawal of an admission made by failing to timely respond to a request? | 028173.docx | LEGALEASE-00132864-LEGALEASE-00132865 | Order, SA | 0.56 | 1 | 0 | 0 | 1 | |
| 5214 | Spice v. Pierce Cty., 149 Wash. App. 461 | 307A+517.1 | Instead, Spice and Plexus served and filed a formal pleading that withdrew their LUPA petition from the superior court. The effect of a party's voluntary dismissal or withdrawal of an action renders the proceeding a nullity and leaves the parties in the same position as if the action had never occurred. Wachovia SBA Lending v. Kraft, 138 Wash.App. 854, 861, 158 P.3d 1271 (2007); Logan v. North"West Ins. Co., 45 Wash.App. 95, 99, 724 P.2d 1059 (1986) (where an original action is dismissed, a statute of limitations continues to run as though the action had never been brought). But unlike a party's ability to dismiss a complaint without prejudice and to refile before expiration of the applicable statute of limitations, if a party fails to file a LUPA petition within 21 days of a land use decision or, alternatively, terminates a timely filed LUPA petition (and does not refile within the required time period), the statute bars any further judicial review of the land use decision, rendering further attempts to seek judicial review frivolous. RCW 36.70C.040. Thus, when Spice and Plexus voluntarily withdrew their timely-filed LUPA petition from Pierce County Superior Court more than 21 days after the Hearing Examiner's decision, they extinguished their statutory right to judicial review of the County hearing examiner's January 12, 2006 decision. | The effect of a party's voluntary dismissal or withdrawal of an action renders the proceeding a nullity and leaves the parties in the same position as if the action had never occurred. | Does the effect of a party's voluntary dismissal or withdrawal of an action render the proceeding a nullity and leaves the parties in the same position as if the action had never occurred? | 028343.docx | LEGALEASE-00132641-LEGALEASE-00132642 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5215 | Bonds v. Byrd, 765 So. 2d 1205 | 307A+517.1 | The plaintiff may obtain judgment dismissing his action without prejudice prior to any appearance of record by the defendant and upon payment of all costs. La. C.C.P. art. 1671. After the defendant makes an appearance, voluntary dismissal is within the trial court's sound discretion. Id.; Turner v. Leslie, 96-2288 (La.12/6/96), 684 So.2d 395; Oliver v. Davis, 95 1841 (La.App. 1 Cir. 8/12/96), 679 So.2d 462, writ denied 96-2267 (La.11/15/96), 682 So.2d 773. This discretion is not unbridled; a trial court may not dismiss a suit without prejudice if substantive rights acquired by the defendant would thereby be lost or if the dismissal would deprive the defendant of a just defense. Oliver v. Davis, supra, and citations therein. All defendants had obviously made a general appearance by answering and filing motions for summary judgment. | Trial court's discretion to grant a voluntary dismissal is not unbridled; a trial court may not dismiss a suit without prejudice if substantive rights acquired by the defendant would thereby be lost or if the dismissal would deprive the defendant of a just defense. | "Is a trial court's discretion to grant a voluntary dismissal, unbridled?" | 028353.docx | LEGALEASE-00132679-LEGALEASE-00132680 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5216 | Ashpole v. Millard, 778 S.W.2d 169 | 307A+517.1 | Here, the court entered an "Agreed Dismissal Without Prejudice," according to the relators' petition. Such a dismissal is not an adjudication of the rights of the parties; it merely puts them back in the position as if suit had never been brought. Crofts v. Court of Civil Appeals for the Eighth Supreme Judicial Dist., 362 S.W.2d 101 (Tex.1962); U.S. Fidelity & Guar. Co. v. Beuhler, 597 S.W.2d 523, 525 (Tex.Civ.App."Beaumont 1980, no writ). The taking of a voluntary nonsuit does not constitute a litigating of the issues in a case, and does not prejudice the parties against seeking the same relief in a subsequent suit. See West v. Plantation Hills, Inc., 497 S.W.2d 460, 462"63 (Tex.Civ.App."Houston [1st Dist.] 1973, no writ). | Taking of voluntary nonsuit does not constitute litigating of issues in case and does not prejudice parties against seeking the same relief in subsequent suit. | Does taking of a voluntary nonsuit constitute litigation of issues in a case and does not prejudice parties against seeking the same relief in a subsequent suit? | 028370.docx | LEGALEASE-00132732-LEGALEASE-00132733 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5217 | Liberman v. Liberman, 844 S.W.2d 79 | 307A+517.1 | This court has stated that a motion for attorney's fees under " 452.355 is not an independent action like a motion to modify. Potter v. Desloge, 625 S.W.2d 927, 930[4] (Mo.App.1981). Rather, the language "from time to time" has been interpreted consistently with the language "pending the suit" under the old law, " 452.070, RSMo 1969. Id. In Brucker, this court allowed the respondent to recover attorney's fees for her appeal. Brucker, 607 S.W.2d at 445[1]. However, the court specifically pointed out that the divorce case was still pending upon disposition of the appeal. Id. at 444. In the case at hand, the suit is no longer pending. When a plaintiff voluntarily dismisses an action without prejudice before introduction of evidence at trial, the trial court loses jurisdiction as of the date of dismissal. Division of Family Services v. Coholan, 706 S.W.2d 569, 570[1] (Mo.App.1986); J.S. Samland, 675 S.W.2d at 97[5]. In this case, that date was July 8, 1991. Husband filed his motion on August 29, 1991. Therefore, the trial court was without jurisdiction to entertain Husband's motion. | When plaintiff voluntarily dismisses action without prejudice before introduction of evidence at trial, trial court loses jurisdiction as of date of dismissal. V.A.M.R. 67.01. | "When a plaintiff voluntarily dismisses an action without prejudice before introduction of evidence at trial, does the trial court lose jurisdiction as of the date of dismissal?" | Pretrial Procedure - Memo # 2681 - C - SKG.docx | ROSS-003287608-ROSS-003287609 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 5218 | In re Bennett (Tex. 1997) 960 S.W.2d 3 | 307A+517.1 | While we have recognized that generally, a trial court has no discretion to refuse to sign an order of dismissal once notice of a nonsuit has been filed, this broad principle necessarily has exceptions. Rule 162 expressly states that a dismissal under the rule "shall have no effect on any motion for sanctions, attorney's fees or other costs pending at the time of dismissal." Tex.R. Civ. P. 162. Further, a trial court is free to "impose [ ] sanctions while it retain[s] plenary jurisdiction" even when a motion for sanctions is filed after the notice of nonsuit is filed. Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596 (Tex.1996). It is only after plenary jurisdiction has expired that a trial court may not sanction counsel for pre-judgment conduct. Id. at 596 & n. 2; see also BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990) (right to nonsuit is absolute unless there is a pending claim for affirmative relief or a motion for sanctions). | Trial court is free to impose sanctions while it retains plenary jurisdiction even when motion for sanctions is filed after notice of nonsuit is filed. Vernon%22s Ann.Texas Rules Civ.Proc., Rule 162. | Is a trial court free to impose sanctions while it retains plenary jurisdiction even when motion for sanctions is filed after notice of nonsuit is filed? | 028395.docx | LEGALEASE-00132890-LEGALEASE-00132891 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 5219 | Malone v. Schapun, 965 S.W.2d 177 | 307A+517.1 | Rule 75.01 provides that the trial court retains control over judgments during the 30"day period after entry of judgment. However, a voluntary dismissal under Rule 67.01 is not a judgment of the court within the meaning of Rule 75.01.Emigh Engineering Co. v. Rickhoff, 605 S.W.2d 173, 174 (Mo.App.1980). Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo.App.1992). No action can be taken by the trial court, and any action attempted in the dismissed suit is a nullity. Further, the trial court has no power to reinstate a voluntarily dismissed case. | Voluntary dismissal is not a "judgment of the court" within meaning of rule under which trial court retains control over judgments during 30-day period after entry of judgment. V.A.M.R. 67.01, 75.01. | Is a voluntary dismissal a judgment of the court within a meaning of a rule under which a trial court retains control over judgments during thirty-day period after entry of judgment? | 028399.docx | LEGALEASE-00132899-LEGALEASE-00132900 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5220 | Wilcox v. Birtwhistle, 21 Cal. 4th 973 | 307A+486 | The statutory language provides little guidance in this case because it is equally susceptible to both interpretations. Enacted as part of the 1986 Civil Discovery Act, subdivision (m) states: "A party may withdraw or amend an admission made in response to a request for admission only on leave of court granted after notice to all parties. The court may permit withdrawal or amendment of an admission only if it determines that the admission was the result of mistake, inadvertence, or excusable neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits.The second sentence ostensibly places no restriction on the types of admissions that may be withdrawn or amended. The first sentence, however, limits the scope of subdivision (m) to "admissions made in response to a request" and appears to exclude deemed admissions because a nonresponding party, by definition, makes no response. | Statute which permits an admission to be withdrawn or amended if admission was result of mistake, inadvertence, or excusable neglect, and party who obtained admission will not be substantially prejudiced, applies to all admissions, and thus permits withdrawal not only of admissions contained in an actual response, but also admissions deemed admitted based on a failure to respond; disapproving St. Paul Fire & Marine Ins. Co. v. Superior Court, 2 Cal.App.4th 843, 3 Cal.Rptr.2d 412; Courtesy Claims Serv., Inc. v. Superior Court, 219 Cal.App.3d 52, 268 Cal.Rptr. 30; Allen-Pacific, Ltd. v. Superior Court, 57 Cal.App.4th 1546, 67 Cal.Rptr.2d 804; Demyer v. Costa Mesa Mobile Home Estates, 36 Cal.App.4th 393, 42 Cal.Rptr.2d 260; Tobin v. Oris, 3 Cal.App.4th 814, 4 Cal.Rptr.2d 736; and Brigante v. Huang, 20 Cal.App.4th 1569, 25 Cal.Rptr.2d 354. West's Ann.Cal.C.C.P. S 2033(k, m). | "Can the court permit withdrawal of an admission only if the admission was the result of mistake, inadvertence, or excusable neglect and the opposing party will not be substantially prejudiced?" | Pretrial Procedure - Memo # 2695 - C - TM.docx | ROSS-003286712-ROSS-003286713 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5221 | Lugue v. Hercules, 12 F. Supp. 2d 1351 | 386+14 | Hercules contends that Plaintiffs have failed to establish any damages resulting from Hercules' entry onto the land. Hercules further contends that the failure to prove damages prevents Plaintiffs from bringing a claim for trespass. However, such contentions are not in accord with Georgia law. Trespass is broadly defined under Georgia law: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. " 51"9"1 (1982). Any unlawful interference with property, regardless of actual injury, is considered a trespass. Dowdell v. Cherry, 209 Ga. 849, 849, 76 S.E.2d 499, 500 (1953). It is well established that no proof of actual injury to the land or a diminution in the property's value is required to maintain an action for trespass. Marshall v. Georgia Power Co., 134 Ga.App. 479, 480, 214 S.E.2d 728, 730 (1975); Batson v. Higginbothem, 7 Ga.App. 835, 838, 68 S.E. 455 (1910); Pausch v. Guerrard, 67 Ga. 319, 323 (1881). Nominal damages can be awarded when the amount of actual injury is unclear. Morgan v. Black, 86 Ga.App. 775, 777"78, 72 S.E.2d 558, 559"60; Batson, 7 Ga.App. at 838, 68 S.E. 455 (citing Swift v. Broyles, 115 Ga. 885, 42 S.E. 277 (1902)). | Under Georgia law, no proof of actual injury to the land or a diminution in the property's value is required to maintain an action for trespass, and nominal damages can be awarded when the amount of actual injury is unclear. O.C.G.A. S 51-9-1. | Can nominal damages can be awarded when the amount of actual injury is unclear in a trespass action? | Trespass - Memo 239 - RK.docx | ROSS-003287810-ROSS-003287811 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 5222 | McGarrah v. State Acc. Ins. Fund Corp., 296 Or. 145 | 413+1 | Workers' compensation laws provide a form of strict liability requiring employers, regardless of fault, to compensate employees for injuries arising out of and in the course of employment. In exchange for that relief under this no-fault recovery system, employees are limited to a fixed schedule of recovery and must abandon any common law right of action against their employers. The theory underlying workers' compensation acts is that the financial burden of losses due to injuries occurring in business should be treated as business expenses or production costs to be borne, not by the employee, but by the employer, who can transfer the burden to the consumer. Our current occupational disease law is based on the same social and economic concerns. | The theory underlying workers' compensation acts is the financial burden of losses due to injuries occurring in business should be treated as business expenses or production costs to be borne, not by the employee, but by the employer, who can transfer the burden to the consumer. ORS 656.001 et seq. | What is the theory underlying workers compensation acts? | 047777.docx | LEGALEASE-00132684-LEGALEASE-00132685 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 5223 | McGough v. McCarthy Imp. Co., 206 Minn. 1 | 413+11 | The rights and obligations created by the compensation act are contractual. the rights granted and the obligations imposed necessarily rest upon the statute and are limited as granted or imposed by it. Tierney v. Tierney & Co., 176 Minn. 464, 223 N.W. 773. Hence it follows that the employer's liability has for its foundation the existence of employer-employe relation. The question is not whether "the cause of the accident is referable to a tortious or a blameless act, or whether if tortious the employer or some third person is blameworthy, or even that the employ" is at fault if not willfully so." State ex rel. Chambers v. District Court, 139 Minn. 205, 207, 166 N.W. 185, 186, 3 A.L.R. 1347. "A basic thought underlying the compensation act is that the business or industry shall in the first instance pay for accidental injuries as a business expense or a part of the cost of production." Id., 139 Minn. page 209, 166 N.W. page 187, 3 A.L.R. 1347. It is therefore manifest that when an employe enters upon the performance of his work and is exposed to the dangers and risks of injury together with the attendant risk of malpractice in necessary medical care, he is protected under the act if injury arising out of and in the course of his employment happens to befall him. This is by virtue of his employment and the relationship obligation created by the act. Thus, when an injury is received during the course of and within the scope of his employment, medical care being needed, the risk of improper treatment is a natural incident of the employment and directly traceable to it. | A basic thought underlying the compensation act is that the business or industry shall in the first instance pay for accidental injuries to employees as a business expense or as a part of the cost of production. Mason's Minn.St.1927, S 4261 et seq. (M.S.A. S 176.02 et seq.). | Should business or industry pay for accidental injuries as a business expense or as part of the cost of production? | 047872.docx | LEGALEASE-00132945-LEGALEASE-00132947 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5224 | Am. Mut. Liab. Ins. Co. v. Reed Cleaners, 265 Minn. 503 | 413+1 | The liability of the employer or its insurer to pay compensation benefits clearly does not depend upon any cause of action the employee might have against a third party, as liability exists in any event where the injury was incurred "arising out of and in the course of" his employment, regardless of negligence of anyone. Minn.St. 176.011, subd. 16. Further, the extent of the employer's liability under the compensation act is not determined by application of a common-law measure of damages but is limited by a schedule provided therein. Minn.St. 176.101. Hence, it cannot be said that the liability of Gamble-Robinson Company or of plaintiff is "coextensive with that of" the defendants, and therefore it follows that it cannot maintain an action for indemnity. Maryland Cas. Co. v. Paton, 9 Cir., 194 F.2d 765; Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co. supra. | Liability of employer or compensation carrier to pay compensation benefits does not depend upon any cause of action employee might have against a third party, as liability exists whenever injury incurred arose out of and in the course of employment, regardless of negligence. M.S.A. s 176.011, subd. 16. | What does the employer or compensation carriers liability to pay compensation benefits not depend on? | 047883.docx | LEGALEASE-00132972-LEGALEASE-00132973 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5225 | Anderson v. Laird, 437 F.2d 912 | 34+3(1) | And, in matters properly within the area of military discretion, it is not for civil courts to judge whether the military has properly determined the balance between military needs and personal rights. See Burns, supra, 346 U.S. at 140, 73 S.Ct. 1045. | In matters properly within area of military discretion, it is not for civil courts to judge whether the military has properly determined balance between military needs and personal rights. | Is it for the civil courts to judge whether the military has properly determined balance between military needs and personal rights? | 008381.docx | LEGALEASE-00133747-LEGALEASE-00133748 | Condensed, SA | 0.25 | 0 | 1 | 0 | 1 | |
| 5226 | Thomas v. United States, 42 Fed. Cl. 449 | 34+5(3) | No one has a right to enlist or re-enlist in the armed forces unless specially granted such a right by statute or regulation. Maier v. Orr, 754 F.2d 973, 980 (Fed.Cir.1985). A serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired. Id. at 983. Consequently, plaintiff's request for reinstatement (or re-enlistment) must be denied for failure to state a claim upon which relief can be granted. | A serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired. | Is a serviceman who has been improperly discharged entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired? | Armed Services - Memo 146 - JS.docx | LEGALEASE-00023798-LEGALEASE-00023799 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5227 | United States v. Jacobs, 431 F.2d 754 | 63+1(1) | It therefore follows that Section 201(b) is violated even though the official offered a bribe is not corrupted, or the object of the bribe could not be attained, or it could make no difference if after the act were done it turned out that there had been actually no occasion to seek to influence any official conduct. See, e.g., Kemler v. United States, 133 F.2d 235, 238 (1 Cir. 1943). | Statute against corruptly giving, offering or promising anything of value to public official with intent to influence any official act or to influence official to commit any fraud or make opportunity for commission of any fraud on United States or to induce official to do or omit to do any act in violation of his lawful duty is violated even though official offered a bribe is not corrupted or object of bribe cannot be attained, and it makes no difference if after act is done it turns out that there was actually no occasion to seek to influence any official conduct. 18 U.S.C.A. S 201(b). | Is Section 201(b) of the statute concerning bribery violated even if the bribe could not be attained? | 011478.docx | LEGALEASE-00134799-LEGALEASE-00134801 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 5228 | People v. Latora, 128 A.D.2d 807 | 67+10 | To obtain a conviction of burglary in the first degree (Penal Law " 140.30[2] ), the People were required to prove that the complainant suffered a "physicalinjury", which is defined as "impairment of physical condition or substantial pain" (Penal Law " 10.00[9] ). In the case at bar, the complainant testified that his head was forcefully pushed against a wall two or three times, and that as a result he sustained "a cut on [his] left eye, upper eye" and became "dizzy". Two other witnesses testified that they observed the complainant bleeding from the wound. Immediately after the attack the complainant summoned the police by using an outdoor public telephone located some distance from the apartment in which the incident occurred. The complainant did not seek medical attention nor was there evidence that the result of this cut was visible at the time of trial (cf. People v. Rojas, 61 N.Y.2d 726, 472 N.Y.S.2d 615, 460 N.E.2d 1100). As the trial court determined, the evidence was legally insufficient to support the finding of the jury that the complainant sustained a physicalinjury (see, People v. Jimenez, 55 N.Y.2d 895, 449 N.Y.S.2d 22, 433 N.E.2d 1270; Matter of Philip A., 49 N.Y.2d 198, 424 N.Y.S.2d 418, 400 N.E.2d 358; People v. McDowell, 28 N.Y.2d 373, 321 N.Y.S.2d 894, 270 N.E.2d 716; People v. Francis, 112 A.D.2d 167, 490 N.Y.S.2d 850). However, we determine that it was an improvident exercise of discretion for the trial court to have dismissed the burglary count rather than considering whether the conviction of burglary in the first degree should be reduced to burglaryin the second degree. | To obtain conviction of burglary in first degree, State was required to prove that complainant suffered "physical injury," which is defined as "impairment of physical condition or substantial pain." McKinney's Penal Law SS 10.00, subd. 9, 140.30, subd. 2. | Does first degree burglary conviction require physical injury to the victim? | 013319.docx | LEGALEASE-00134284-LEGALEASE-00134286 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5229 | Einhaus v. O. Ames Co., 547 S.W.2d 821 | 272+1512 | In Missouri a general allegation of negligence predicated on an act of the defendant causing plaintiff's injury is sufficient as against an objection that no cause of action is stated, and it is not necessary to state specific facts showing the negligence in order to state a cause of action. A plaintiff must, however, allege facts sufficient to inform the defendant of the breach of duty with which he is charged, and, if the facts are within the plaintiff's knowledge, he should be required to state them with reasonable particularity. Negligence, however, is an ultimate fact which may be pleaded as such, and not a conclusion. Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87, 92(11) (1949). | General allegation of negligence predicated on act of defendant causing plaintiff's injury is sufficient as against an objection that no cause of action is stated, and it is not necessary to state specific facts showing the negligence in order to state a cause of action; plaintiff must, however, allege facts sufficient to inform defendant of breach of duty with which he is charged, and, if facts are within plaintiff's knowledge, he should be required to state them with reasonable particularity. | Should a plaintiff allege facts sufficient to inform the defendant of the breach of duty with which he is charged? | 023267.docx | LEGALEASE-00134204-LEGALEASE-00134205 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 5230 | City of Krum v. Rice, 508 S.W.3d 808 | 307A+486 | "Generally, a party responding to requests for admissions must serve a written response on the requesting party within [thirty] days after service." "If the response is not served timely, however, the request is deemed admitted without the necessity of a court order." "[A] trial court may allow the withdrawal of a deemed admission upon a showing of (1) good cause and (2) no undue prejudice." | A trial court may allow the withdrawal of a deemed admission upon a showing of (1) good cause and (2) no undue prejudice. Tex. R. Civ. P. 198.3. | May a trial court allow the withdrawal of a deemed admission upon a showing of (1) good cause and (2) no undue prejudice? | 028451.docx | LEGALEASE-00134440-LEGALEASE-00134441 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5231 | Dwight v. Girard Med. Ctr., 154 Pa. Cmwlth. 326 | 307A+486 | Furthermore, if the subject matter of the admissions is broad and far-reaching, a court should permit withdrawal in the absence of bad faith or substantial prejudice. Teleprompter of Erie, Inc.; Szatanek v. McDonnell Douglas Corp., 109 F.R.D. 37 (W.D.N.Y.1985). Moreover, requests for admissions must call for matters of fact rather than legal opinions and conclusions. California v. The Jules Fribourg, 19 F.R.D. 432 (N.D.Cal.1955). Since conclusions of law are not within the permissible scope of requests for admissions under Rule 4014, those statements in the requests for admissions which constitute conclusions of law are not properly before the court. Commonwealth v. Diamond Shamrock Chemical Co., 38 Pa.Commonwealth Ct. 89, 391 A.2d 1333 (1978). | If subject matter of admissions is broad and far-reaching, court should permit withdrawal of admissions in absence of bad faith or substantial prejudice. Rules Civ.Proc., Rule 4014(d), 42 Pa.C.S.A. | "If subject matter of admissions is broad and far-reaching, should a court permit a withdrawal of admissions in absence of bad faith or substantial prejudice?" | Pretrial Procedure - Memo # 2909 - C - NS.docx | ROSS-003291657-ROSS-003291658 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5232 | Lewis v. Mundy Const. Co., 781 S.W.2d 333 | 307A+486 | Rule 169 of the Texas Rules of Civil Procedure addresses requests for admissions and states that the trial court may permit withdrawal of deemed admissions upon a showing of good cause. The court must also find that the parties relying on the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be furthered thereby. To establish good cause, a party must show legal or equitable excuses for his failure to answer. Eckman v. Centennial Savings Bank, 757 S.W.2d 392, 396 (Tex.App."Dallas 1988, writ denied). The trial court has broad discretion in permitting withdrawal or amendment of the admissions, and its ruling will be set aside only on a showing of clear abuse of discretion. Crime Control, Inc. v. RMH"Oxford Joint Venture, 712 S.W.2d 550, 552 (Tex.App."Houston [14th Dist.] 1986, no writ). For there to have been an abuse of discretion, the court's action must have been arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241"42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). | To establish good cause for withdrawal of deemed admissions, party must show legal or equitable excuses for his failure to answer requests for admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "To establish good cause for withdrawal of deemed admissions, must a party show legal or equitable excuses for his failure to answer requests for admissions?" | 028741.docx | LEGALEASE-00134613-LEGALEASE-00134614 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5233 | Spiecker v. Petroff, 971 S.W.2d 536 | 307A+486 | Good cause has been adopted as the threshold standard for the withdrawal of deemed admissions. See id. A party can establish good cause by showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference. Stelly, 927 S.W.2d at 622. Even a slight excuse will suffice, especially when delay or prejudice to the opposing party will not result. Halton, 792 S.W.2d at 466. | Even a slight excuse will suffice as good cause for withdrawal of deemed admissions, especially when delay or prejudice to opposing party will not result. Vernon's Ann.Texas Rules Civ.Proc., Rule 169(2). | "Will even a slight excuse suffice as a good cause to withdraw or amend an admission, especially when delay or prejudice to the opposing party will not result?" | Pretrial Procedure - Memo # 2973- C - KG.docx | ROSS-003290339-ROSS-003290340 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5234 | Marshall v. D.C., 391 A.2d 1374 | 307A+486 | The rule does not impose a "good cause" or "excusable neglect" burden upon the moving party; rather, it focuses on the lack of prejudice to the opposing party and on the policy for furthering just and complete resolution of the merits. See Wright & Miller, Fed. Prac. & Proc., Civil ss 2257, 2264 (1970) (interpreting the identical federal rule). Accordingly, unless a party demonstrates prejudice by reliance upon previous admissions, the trial court can and should extend permission to withdraw or amend.Id. See French v. United States, 416 F.2d 1149, 1152 (9th Cir. 1969); Williams v. Krieger, 61 F.D.R. 142, 144 (S.D.N.Y.1973); Pleasant Hill Bank v. United States, 60 F.R.D. 1, 3 (D.Mo.1973). | Unless party demonstrates prejudice by reliance on previous admissions, trial court should extend permission to withdraw or amend admissions. D.C.C.E. SCR, Civil Rule 36(b). | "Unless a party demonstrates prejudice by reliance on previous admissions, should a trial court extend permission to withdraw or amend admissions?" | 028898.docx | LEGALEASE-00134155-LEGALEASE-00134156 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5235 | In re Blount, 276 B.R. 119 | 51+3040.1 | In American Automobile Association v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117 (5th Cir.1991), the Fifth Circuit had occasion to review the parameters of a court's authority to allow the withdrawal or amendment of responses to requests for admissions. Although the case focused on the ability of a party to request a withdrawal of an admission after trial, the court first examined F.R.C.P. 36(b) in general and found as follows: [W]hile the district court has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercised within the bounds of [the Rule 36(b) ] two-part test: 1) the presentation of the merits must be subserved by allowing withdrawal or amendment; and 2) the party that obtained the omissions must not be prejudiced in its presentation of the case by their withdrawal. Id. at 1119. | While court has considerable discretion in deciding whether to allow party to withdraw or amend its deemed admissions, discretion must be exercised within bounds of two-part test, which requires determination (1) that presentation of merits will be subserved by permitting withdrawal or amendment; and (2) that party who obtained admissions will not be prejudiced in presenting its case. Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | What are the two prerequisites permitting withdrawal or amendment of admissions? | Pretrial Procedure - Memo # 3138 - C - VP.docx | ROSS-003290841-ROSS-003290842 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 5236 | Cleveland Tr. Co. v. Willis, 20 Ohio St. 3d 66 | 307A+486 | Any matter admitted under Civ.R. 36 is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Civ.R. 36(B). The court may permit the withdrawal if it will aid in presenting the merits of the case and the party who obtained the admission fails to satisfy the court that withdrawal will prejudice him in maintaining his action. Balson v. Dodds (1980), 62 Ohio St.2d 287, 405 N.E.2d 293 [16 O.O.3d 329], paragraph two of the syllabus. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice. | Trial court may permit withdrawal of a matter admitted under Rule 36 regarding request for admission if withdrawal will aid in presenting merits of case and party who obtained admission fails to satisfy court that withdrawal will prejudice him in maintaining his action. Rules Civ.Proc., Rules 36, 36(B). | May a trial court permit withdrawal of a matter admitted under Rule 36? | 029101.docx | LEGALEASE-00134641-LEGALEASE-00134642 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 5237 | United States v. Gatling, 96 F.3d 1511 | 63+1(1) | The evidence of bribery is weakest in regard to the Chicago vouchers. Bufford testified that when he spoke to Walker about obtaining a section 8 subsidy for his former wife Walker did not solicit payment. He also indicated that she agreed to provide the subsidy before he offered her $1,000. The fact that Walker was offered the bribe after she agreed to provide the section 8 subsidy does not, however, in itself preclude a finding that Walker was providing the voucher in exchange for money. Timing is not determinative of whether a payment constitutes a bribe or a gratuity, since "[t]he statute proscribes offers and promises of bribes as well as the giving of bribes, and it is only logical that in certain situations the bribe will not actually be conveyed until the act is done." Campbell, 684 F.2d at 148. Nonetheless, Bufford's testimony regarding his conversation with Walker could be more suggestive of a gratuity than a bribe. There is, however, additional evidence that is more probative of bribery. To begin with, it is significant that Walker had a second conversation with Bufford and once more agreed to provide a section 8 subsidy, this time to Perkins-Henry. Although Bufford again offered payment after Walker had agreed to provide the subsidy, the jury could infer that Walker acted in the expectation that Bufford would offer $1,000 for this second subsidy as he had for the first. See Campbell, 684 F.2d at 149 (distinction between bribery and a gratuity has little significance in the context of an ongoing scheme). Bufford's testimony to the effect that Walker discussed with him where he should send the money bolsters this inference, and as the bribery statute makes clear, it is irrelevant that Walker appeared to accept payment for Gatling rather than for herself. In addition, there was substantial, uncontroverted evidence of bribery in regard to subsidies illegally issued to D.C. residents, and this evidence alone would be sufficient to sustain Walker's bribery | Timing is not determinative of whether payment constitutes bribe or gratuity for purposes of bribery statute, since statute proscribes offers and promises of bribes as well as giving of bribes, and it is only logical that in certain situations bribe will not actually be conveyed until act is done. 18 U.S.C.A. S 201. | "For purpose of bribery, do bribes have to be given before the official acts are done?" | 011521.docx | LEGALEASE-00135489-LEGALEASE-00135490 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5238 | People v. Longo, 119 Cal. App. 2d 416 | 63+1(1) | The suggestion that the officers had no probable cause for arresting Longo is answered first by the facts, the heroin was found in an apartment occupied by him and it cannot be said that probable cause for his arrest was lacking. People v. Brite, 9 Cal.2d 666, 687, 72 P.2d 122. Second, it is not essential to the crime of bribery that the officer's action is with actual authority so long as it falls within the general scope of his duties and he is purporting to act in his official capacity. People v. Anderson, 75 Cal.App. 365, 242 P. 906; People v. Anderson, 62 Cal.App. 222, 216 P. 401; People v. Lips, 59 Cal.App. 381, 211 P. 22. | It was not an essential of the crime of bribery that bribe was offered to official with actual authority as long as official's act falls within general scope of duties, and he purported to act in official capacity. Pen.Code, S 671/212. | Is it essential to the crime of bribery that an officer's action is with actual authority so long as it falls within the general scope of his duties? | Bribery - Memo #358 - C CSS.docx | ROSS-003303980-ROSS-003303981 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5239 | Careau & Co. v. Sec. Pac. Bus. Credit, 222 Cal. App. 3d 1371 | 302+11 | While those statements may be some evidence that one or more conditions were satisfied, they do not constitute the direct, specific allegation of performance which is required. A complaint must allege the ultimate facts necessary to the statement of an actionable claim. It is both improper and insufficient for a plaintiff to simply plead the evidence by which he hopes to prove such ultimate facts. (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 212, 197 Cal.Rptr. 783, 673 P.2d 660.) Here, plaintiffs rely heavily on their allegations that Torres had stated to Carrott and others that "the loan commitment had been approved by SPBC" (and other conclusionary statements as to the satisfaction of one or more conditions). These allegations do not demonstrate due performance. If at trial a jury were to find that Torres had indeed made such statements, that would not be the equivalent of a finding that any of the conditions in the August 25 letter had been satisfied, excused or waived. It would only mean that it was true that Torres had said certain things about them. | Complaint must allege ultimate facts necessary to statement of actionable claims; it is both improper and insufficient for plaintiff to simply plead evidence by which he hopes to prove such ultimate facts. | Must a complaint allege the ultimate facts necessary to the statement of an actionable claim? | Pleading - Memo 315 - RMM.docx | ROSS-003290244-ROSS-003290245 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5240 | Joachim v. Travelers Ins. Co., 279 S.W.3d 812 | 307A+517.1 | It is thus necessary to determine the jurisdictional effect of the nonsuit. In this respect, we do not write on a blank slate. A nonsuit returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction. Rexrode v. Bazar, 937 S.W.2d 614, 619 (Tex.App.-Amarillo 1997, no writ). It renders the merits of the case moot. Estate of Blackmon, 195 S.W.3d at 101 (cited in Villafani v. Trejo, 251 S.W.3d 466, 469 (Tex.2008)). A moot case lacks justiciability. Patterson v. Planned Parenthood of Houston, 971 S.W.2d 439, 442 (Tex.1998). Jurisdiction over the underlying lawsuit depends on justiciability, and for a controversy to be justiciable, there must be a real controversy between the parties that will actually be resolved by the judicial relief sought. State Bar of Texas v. Gomez, 891 S.W.2d 243, 245 (Tex.1994). In the absence of a controversy that is legally presented for determination, a trial court lacks jurisdiction to render a personal judgment. Matz v. Bennion, 961 S.W.2d 445, 449 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). If a court lacks jurisdiction over the parties and the subject matter before it, any judgment it renders is void. Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.1990); see State ex rel. Dishman v. Gary, 163 Tex. 565, 359 S.W.2d 456, 461 (1962) (orig.proceeding) (right of nonsuit is absolute, accordingly, an order of reinstatement and ancillary injunctive orders entered after nonsuit were "nugatory and void.") | A nonsuit returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction, rendering the merits of the case moot. | "Does a nonsuit return the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction, rendering the merits of the case moot?" | Pretrial Procedure - Memo # 2770 - C - DA.docx | ROSS-003289534-ROSS-003289536 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5241 | Norris v. Hearst Tr., 500 F.3d 454 | 336H+105 | It is recognized that under Texas law "[s]ubject to certain conditions, a plaintiff who takes a nonsuit is not precluded from filing a subsequent suit seeking the same relief," Aetna Casualty & Surety Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993), and "a nonsuit may have the effect of vitiating earlier interlocutory orders." Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854 (Tex.1995). However, "[o]nce a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit," and that applies to a judge's announcement of decision on a partial summary judgment motion which seeks relief on less than all of the plaintiffs pending claims. Id. at 855. | Under Texas law, subject to certain conditions, plaintiff who takes nonsuit is not precluded from filing subsequent suit seeking the same relief, and nonsuit may have effect of vitiating earlier interlocutory orders. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | May a nonsuit have the effect of vitiating earlier interlocutory orders? | Pretrial Procedure - Memo # 2786 - C - MS.docx | ROSS-003290313-ROSS-003290314 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5242 | Mireles v. Indiana Harbor Belt R.R. Corp., 154 Ill. App. 3d 547 | 307A+716 | Based on the record here, we find no abuse of discretion on the part of the trial court in denying Teichner's motion for a continuance. In so finding, we note the great inconvenience caused to plaintiff as a result of the many previous continuances that had already been granted, and, additionally, we also take note of the fact that a substantatial delay was caused in this matter in the first instance by Teichner's quarrelling with attorney Blank over the representation of plaintiff. Furthermore, at the March 12 hearing itself, as stated above, a member of Mr. Johnson's firm was present to represent Teichner and advised the court that Teichner was ready to proceed without Mr. Johnson. Where more than one attorney is involved in a case, the absence of one of the attorneys at the time of trial does not mean that the case should be continued, especially where the attorney who tries the case has had prior involvement in the case and is competent to try it. Lipke v. Celotex Corp. (1987), 153 Ill.App.3d 498, 510, 106 Ill.Dec. 422, 505 N.E.2d 1213; McMillen v. Carlinville Area Hospital (1983), 114 Ill.App.3d 732, 739, 70 Ill.Dec. 792, 450 N.E.2d 5. | Where more than one attorney is involved in case, absence of one attorney at time of trial does not mean that case should be continued, especially where attorney who tries case has had prior involvement in case and is competent to try case. | "Where more than one attorney is involved in case, does absence of one attorney at time of trial mean that case should be continued, especially where attorney who tries case has had prior involvement in case and is competent to try the case?" | 029292.docx | LEGALEASE-00135192-LEGALEASE-00135193 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5243 | Wilborn v. GE Marquette Med. Sys., 163 S.W.3d 264 | 307A+716 | The granting or denial of a motion for continuance is within the trial court's sound discretion. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.1986); State v. Crank, 666 S.W.2d 91, 94 (Tex.1984); Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1964). The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. When the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence. Villegas, 711 S.W.2d at 626; Crank, 666 S.W.2d at 94. Generally, when movants fail to comply with Tex.R. Civ. P. 251's requirement that the motion for continuance be "supported by affidavit," we presume that the trial court did not abuse its discretion in denying the motion. Villegas, 711 S.W.2d at 626; Garcia v. Tex. Emp. Ins. Ass'n, 622 S.W.2d 626, 630 (Tex.App.-Amarillo 1981, writ ref'd n.r.e.). The right to counsel is a valuable right; its unwarranted denial is reversible error. Villegas, 711 S.W.2d at 626; see Crank, 666 S.W.2d at 94; Stefanov v. Ceips, 395 S.W.2d 663, 665 (Tex.Civ.App.-Amarillo 1965, no writ). Therefore, when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. Villegas, 711 S.W.2d at 626; Lowe v. City of Arlington, 453 S.W.2d 379, 382 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.); Stefanov, 395 S.W.2d at 665; Leija v. Concha, 39 S.W.2d 948, 950 (Tex.Civ.App.-El Paso 1931, no writ). See Robinson v. Risinger, 548 S.W.2d 762 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.). Before a trial court allows an attorney to withdraw, it should see that the attorney has complied with the Code of Professional Responsibility: [A] lawyer should not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for | When the ground specified in a motion for a continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence. | "When the ground for the continuance is the withdrawal of counsel, must movants show that the failure to be represented at trial was not due to their own fault or negligence?" | 029331.docx | LEGALEASE-00135670-LEGALEASE-00135672 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 5244 | Sims v. Day, 2004 WY 124 | 307A+716 | Our settled rule states that the withdrawal of an attorney does not entitle the party to a continuance if he created the situation and an unwarranted delay of judicial proceedings would occur. Byrd, 6, 8. Looking to the time of the request for a continuance, we review all of the particular circumstances to determine if the district court abused its discretion. Id. at 7. A court abuses its discretion if an arbitrary refusal denies due process. Id. Sims has the burden to prove a violation of due process and prejudice. Id. Byrd holds that due process issues created by a violation of Rule 102(c) and presented for the first time on appeal will be considered by this Court. Id. at 10, 11. "Parents are entitled to due process in custody and visitation matters, which includes adequate notice and an opportunity to be heard." Jackson v. Jackson, 961 P.2d 393, 395 (Wyo.1998) (quoting Matter of SAJ, 942 P.2d 407, 409 (Wyo.1997)). | Withdrawal of an attorney does not entitle the party to a continuance if he created the situation and an unwarranted delay of judicial proceedings would occur. | Does withdrawal of an attorney not entitle the party to a continuance if he created the situation and an unwarranted delay of judicial proceedings would occur? | Pretrial Procedure - Memo # 3318 - C - SN.docx | ROSS-003289673-ROSS-003289674 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5245 | Lowe v. City of Arlington, 453 S.W.2d 379 | 307A+716 | "Where it is shown that defendant's attorney had withdrawn from the case, it is the duty of the court to continue the case a sufficient length of time to permit defendant to employ other counsel and to enable the new counsel to investigate the case and make defense. 13 C.J. 134, s 26; 17 C.J.S. Continuances s 23. | Where it is shown that defendant's attorney has withdrawn from the case, it is duty of court to continue case a sufficient length of time to permit defendant to employ other counsel and to enable the new counsel to investigate the case and make defense. | "When a trial court allows an attorney to voluntarily withdraw, will it give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial?" | 029371.docx | LEGALEASE-00135394-LEGALEASE-00135395 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 5246 | In re Starr Produce Co., 988 S.W.2d 808 | 307A+715 | If properly requested, a legislative continuance is mandatory. Ojeda v. State, 916 S.W.2d 609, 610 (Tex.App."San Antonio 1996, pet. ref'd). The trial court lacks any discretion in such a circumstance; instead, it serves a merely ministerial function. Id. The legislative continuance statute, section 30.003 of the Texas Civil Practice and Remedies Code, provides as follows: (b) Except as provided by Subsection (c), at any time within 30 days of a date when the legislature is to be in session, at any time during a legislative session, or when the legislature sits as a constitutional convention, the court on application shall continue a case in which a party applying for the continuance or the attorney for that party is a member of the legislature and will be or is attending a legislative session. The court shall continue the case until 30 days after the date on which the legislature adjourns. (c) If the attorney for the party to the case is a member of the legislature who was employed within 10 days before the date on which the suit is set for trial, the continuance is discretionary with the court. | The trial court lacks any discretion as to whether to grant a properly requested legislative continuance, which is available to a party or party's attorney who is a legislator; instead, the trial court serves a merely ministerial function. V.T.C.A., Civil Practice & Remedies Code S 30.003. | "Does the trial court lack any discretion as to whether to grant a properly requested legislative continuance, which is available to a party or party's attorney who is a legislator?" | 029512.docx | LEGALEASE-00135626-LEGALEASE-00135627 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 5247 | In re Estate of Herring, 970 S.W.2d 583 | 307A+473 | "The primary purpose of Rule 169 is to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove. It was never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." Stelly v. Papania, 927 S.W.2d 620, 622 (Tex.1996) (quoting Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 208 (1950)); see also Birdo v. Parker, 842 S.W.2d 699, 700 (Tex.App."Tyler 1992, writ denied). Accordingly, sweepingly broad requests for admission may not result in deemed admissions. Id. at 700; Powell v. City of McKinney, 711 S.W.2d 69, 71 (Tex.App."Dallas 1986, writ ref'd n.r.e.). For instance, it is improper to request that the opposing party admit or deny each and every allegation made in his or her petition, and such a request will not result in a deemed admission. Birdo, 842 S.W.2d at 700. Accordingly, we give no weight to the requested admissions that Herring's wife did not transfer community property without his consent or knowledge or that Herring has not been injured by Keys. Nor do these requested admissions relate directly to Keys' ground for summary judgment that Herring's claims are barred by limitations. | It is improper to request that opposing party admit or deny each and every allegation made in his or her petition, and such request will not result in deemed admission. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Is it improper to request that opposing party admit or deny each and every allegation made in his or her petition, and such request will not result in a deemed admission?" | Pretrial Procedure - Memo # 3547 - C - KA.docx | ROSS-003290834-ROSS-003290836 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5248 | Lucas v. Clark, 347 S.W.3d 800 | 307A+483 | The Appellees rely solely on Request for Admission 2, which was embedded in their petition, to prove that they suffered $10 million dollars of unliquidated damages in the form of lost profits. Request for Admission 2 stated: "As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars." Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. Oliphant Fin., LLC v. Galaviz, 299 S.W.3d 829, 838 (Tex.App.-Dallas 2009, no pet.); Sherman Acquisition II LP v. Garcia, 229 S.W.3d 802, 812 (Tex.App.-Waco 2007, no pet.). Admissions, once deemed admitted, are judicial admissions and may not be contradicted. Oliphant Fin., 299 S.W.3d at 837; Sherman Acquisition, 229 S.W.3d at 812"13. As all of Lucas's points on appeal are impacted by whether or not Request for Admission 2, standing alone, can support the trial court's $10 million default judgment, we will begin by addressing the purpose behind requests for admissions. | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | "When party receiving request for admissions fails to respond to request by any means, is the fact deemed admitted?" | Pretrial Procedure - Memo # 3623 - C - KBM.docx | ROSS-003290508-ROSS-003290509 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5249 | Ramsey v. Edgepark, 66 Ohio App. 3d 99 | 307A+483 | The evidence in the record establishing that appellants mailed literature to each appellee's home prior to the filing of the complaint is in the form of unanswered admissions which were attached to appellees' motion for summary judgment. Civ.R. 36 requires that when requests for admissions are filed by a party, the opposing party must timely respond to them by objection or answer. Failure to respond at all to the requests will result in the requests becoming admissions, and the matter admitted conclusively established for the purpose of the pending action. T & S Lumber Co. v. Alta Constr. Co. (1984), 19 Ohio App.3d 241, 19 OBR 393, 483 N.E.2d 1216. Thus, an admission arising by failure to respond to a request for admissions is a written admission satisfying the requirement of Civ.R. 56(C). T & S Lumber, supra. In addition to the admissions, affidavits filed in support of the motion for summary judgment also establish that appellees received mailings from appellants, including videotapes and literature. | Failure to respond at all to request for admissions will result in requests becoming admissions, and matter admitted conclusively established for purpose of pending action. Rules Civ.Proc., Rule 36. | "Will failure to respond at all to request for admissions result in requests becoming admissions, and a matter admitted conclusively established for purpose of pending action?" | Pretrial Procedure - Memo # 3658 - C - SN.docx | ROSS-003290869-ROSS-003290870 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5250 | Turner v. Mize, 280 Ga. App. 256 | 307A+483 | Turner also contends that the trial court erred in granting partial summary judgment to Mize. Turner has failed to support this claim of error by citation of authority and specific reference to the record, and, therefore, it is deemed abandoned. See Court of Appeals Rule 25(c)(2) and (3)(i); Dennis"Smith v. Freeman, 277 Ga.App. 822, 823(1), 627 S.E.2d 872 (2006). Nonetheless, we note that "evidence [is] not admissible to controvert matters deemed to have been admitted by failure to answer requests for admission even though the substance of the matter deemed admitted had been denied in the answer to the complaint." (Citation omitted.) Wurlitzer Co. v. Watson, 207 Ga.App. 161, 165(2), 427 S.E.2d 555 (1993). Since the admissions covered all the essential claims presented in Mize's verified complaint, the trial court did not err in granting summary judgment to Mize on the issue of liability. | Evidence is not admissible to controvert matters deemed to have been admitted by failure to answer requests for admission even if the substance of the matter deemed admitted was denied in the answer to the complaint. West's Ga.Code Ann. S 9-11-36(a)(2). | Is evidence not admissible to controvert matters deemed to have been admitted by failure to answer requests for admission even if the substance of the matter deemed admitted was denied in the answer to the complaint? | Pretrial Procedure - Memo # 3682 - C - SKG.docx | ROSS-003290878-ROSS-003290879 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5251 | Rafferty v. Scurry, 117 Ohio App. 3d 240 | 307A+483 | When a party fails to respond, without justification, to a properly served request for admissions, those matters to which the requests were addressed will be deemed admitted. Civ.R. 36; Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66, 67, 20 OBR 364, 367, 485 N.E.2d 1052, 1053"1054, certiorari denied (1986), 478 U.S. 1005, 106 S.Ct. 3295, 92 L.Ed.2d 710. "An admission arising by failure to respond to a request for admissions is a "written admission" for the purposes of Civ.R. 56(C)."1 T & S Lumber Co. v. Alta Constr. Co. (1984), 19 Ohio App.3d 241, 244, 19 OBR 393, 396"397, 483 N.E.2d 1216, 1220. | When party fails to respond, without justification, to properly served request for admissions, those matters to which requests were addressed will be deemed admitted. Rules Civ.Proc., Rule 36. | "When a party fails to respond, without justification, to properly served request for admissions, will those matters to which requests were addressed be deemed admitted?" | Pretrial Procedure - Memo # 3686 - C - SKG.docx | ROSS-003290528-ROSS-003290529 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5252 | Hudson v. Winn, 859 S.W.2d 504 | 307A+483 | Moreover, a copy of the requests for admissions, together with proof of service, must be filed with the clerk of the court. Tex.R.Civ.P. 169(1). Proof of service is required before admissions will be deemed against a party. Rent America, Inc. v. Amarillo Nat'l Bank, 785 S.W.2d 190, 194 (Tex.App."Amarillo 1990, writ denied); Tex.R.Civ.P. 169(1). Hudson's attempted service of her requests for admissions in 1988, along with her citation and petition was faulty. At that time, rule 169 of the Texas Rules of Civil Procedure provided that "[a]t any time after the defendant has made appearance in the cause, or time therefore has elapsed, a party may serve upon any other party a written requests for admissions...." See Tex.R.Civ.P. 169 comment (Vernon 1990).2 Service of requests for admissions was only authorized after the defendant had answered or the time for defendant's answer had elapsed, but not before. In this case, Hudson served her requests for admissions simultaneously with her petition and citation before Winn's and Regional's answer date. This violated rule 169 at the time of the alleged service. | Copy of requests for admissions, together with proof of service, must be filed with clerk of court, and proof of service is required before admissions will be deemed against a party. Vernon's Ann.Texas Rules Civ.Proc., Rule 169, subd. 1. | "Must a copy of requests for admissions, together with proof of service, be filed with the clerk of court, and proof of service is required before admissions will be deemed against a party?" | 030504.docx | LEGALEASE-00135753-LEGALEASE-00135754 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5253 | Bliss v. Carmona, 418 So. 2d 1017 | 302+8(1) | However, Carmona also contends that we have deprived him of the opportunity to be heard on the remaining grounds asserted in his response to the motion to vacate the judgment of specific performance, since that motion was denied by the trial court following Bliss' presentation of his case-in-chief. We have examined Carmona's response and find that, for the following reasons, no issues raised therein remain to be disposed of. First, most of the allegations in the response were pure conclusions of law. Certainty is required when pleading defenses and claims alike, Zito v. Washington Federal Savings & Loan Association of Miami Beach, 318 So.2d 175 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 23 (Fla. 1976), and pleading conclusions of law unsupported by allegations of ultimate fact is legally insufficient. Chris Craft Industries, Inc. v. Van Valkenberg, 267 So.2d 642 (Fla. 1972); Ellison v. City of Fort Lauderdale, 175 So.2d 198 (Fla. 1965); Fuller, Inc. v. Frank F. Jonsberg, Inc., 107 Fla. 330, 144 So. 653 (1932); L.B. McLeod Const. Co. v. Cooper, 101 Fla. 441, 134 So. 224 (1931); Clark v. Boeing Company, 395 So.2d 1226 (Fla. 3d DCA 1981); Trawick's Florida Practice and Procedure " 6"6 (1981). Second, the remaining arguments contained in the response are entirely subsumed within the defense of assumption and this issue has been thoroughly presented and treated. | Certainty is required when pleading defenses and claims alike and pleading conclusions of law unsupported by allegation of ultimate fact is legally insufficient. | "Is certainty required when pleading defenses, and pleading conclusions of law unsupported by allegations of ultimate fact is legally insufficient?" | Pleading - Memo 337 - RMM.docx | ROSS-003290253-ROSS-003290254 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5254 | Moss v. Malone, 880 S.W.2d 45 | 307A+716 | The court could have protected the Appellant's interests and ordered the attorney to continue to represent Appellant even though good cause may have existed for terminating the representation. He also could have ordered the Appellant, as a client, to have appeared with the attorney to determine the underlying facts of the withdrawal. See Tex.Disc. Rules of Prof.Con. 1.15. A motion of continuance, which Appellant presented in the May 7th hearing, is within the trial court's sound discretion to either grant or deny. State v. Crank, 666 S.W.2d 91, 94 (Tex.1984); Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1963). While the trial court's course of action will not be disturbed unless the record discloses a clear abuse of discretion; when the ground for the continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to their own fault or negligence. State v. Crank, 666 S.W.2d at 94. We find the record negates either fault or negligence on Appellant's part. Generally when movants fail to comply with Tex.R.Civ.P. 251, we will presume that the trial court did not abuse his discretion in denying the motion. Garcia v. Texas Employers Insurance Assn., 622 S.W.2d 626, 630 (Tex.App."Amarillo 1981, writ ref'd n.r.e.). It would be unrealistic, however, to apply this presumption to lay movants, whose attorneys were allowed to withdraw. Robinson v. Risinger, 548 S.W.2d 762, 765 (Tex.Civ.App."Tyler 1977, writ ref'd n.r.e.). This was a case of wrongful death. During both the April and May hearings it is clear that Appellant not only wished to continue her lawsuit, but that she was having problems getting another attorney to take the case because of the imminent trial setting. There is nothing in the record to suggest that Appellant was seeking delay in order to injure Appellee or that Appellant was negligent in failing to secure counsel. | When ground for continuance is withdrawal of counsel, movant must show that failure to be represented at trial was not due to her fault or negligence. | "When ground for continuance is withdrawal of counsel, must a movant show that failure to be represented at trial was not due to her fault or negligence?" | Pretrial Procedure - Memo # 3324 - C - CK.docx | LEGALEASE-00026171-LEGALEASE-00026172 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 5255 | Garrett v. Bracy, 187 Kan. 207 | 307A+716 | For nearly 100 years it has been the settled law in this jurisdiction, beginning with Educational Ass'n of Christian Churches v. Hitchcock, 4 Kan. 36, that the granting or refusing of a continuance on account of the absence of a particular attorney is a matter resting largely in the sound discretion of the trial court. Unless abuse of such discretion is made to appear, no reversible error can be predicated on the trial court's ruling on this matter. Certainly the absence of an attorney does not necessarily require that a continuance be granted when associate counsel competent to represent the party seeking the continuance is in attendance. Farmers State Bank of Ellis v. Crawford, 140 Kan. 295, 296, 37 P.2d 14. See also Markson v. Ide, 29 Kan. 700. | Absence of attorney does not necessarily require that continuance be granted when associate counsel competent to represent party seeking continuance is in attendance. | Does absence of an attorney not necessarily require that a continuance be granted when associate counsel competent to represent party seeking continuance is in attendance? | 029352.docx | LEGALEASE-00136091-LEGALEASE-00136092 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5256 | King v. Peeples, 328 Ga. App. 814 | 307A+713 | King argues that the trial court erred in declining to continue the proceedings while she attempted to secure new counsel. Whether to grant a continuance is a matter for the trial court's discretion, even in the face of the "sudden withdrawal of retained counsel." Bryan v. Fed. Express Corp., 180 Ga.App. 163(1), 348 S.E.2d 705 (1986) (citation and punctuation omitted). And, as with her argument regarding the withdrawal of counsel, King has pointed to no authority requiring the trial court to grant her a continuance due to her disability. We find no abuse of discretion. | Whether to grant a continuance is a matter for the trial court's discretion, even in the face of the sudden withdrawal of retained counsel. | "Is the question of whether to grant a continuance a matter for the trial court's discretion, even in the face of the sudden withdrawal of retained counsel?" | Pretrial Procedure - Memo # 3377 - C - MS.docx | ROSS-003290781-ROSS-003290782 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5257 | Pandozy v. Shamis, 254 S.W.3d 596 | 307A+716 | A motion for continuance shall not be granted except for "sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex.R. Civ. P. 251. Generally, when a movant fails to comply with these requirements, we presume the trial court did not abuse its discretion in denying the motion. Wilborn, 163 S.W.3d at 267. However, when the ground for continuance is the withdrawal of counsel, the movants must show that the failure to be represented at trial was not due to their own fault or negligence. Villegas, 711 S.W.2d at 626; State v. Crank, 666 S.W.2d 91, 94 (Tex.1984). The presumption that the trial court acted within its sound discretion does not apply to lay movants whose attorney withdraws without fault of the clients. See Villegas, 711 S.W.2d at 626. | When the ground for continuance is the withdrawal of counsel, the movants must show that the failure to be represented at trial was not due to their own fault or negligence. Vernon's Ann.Texas Rules Civ.Proc., Rule 251. | "When the ground for a continuance is the withdrawal of counsel, must the movant show that the failure to be represented at trial was not due to her own fault or negligence?" | 029484.docx | LEGALEASE-00136532-LEGALEASE-00136533 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5258 | First Interstate Bank of Texas, N.A. v. Burns, 951 S.W.2d 237 | 307A+716 | The legislative continuance statute allows parties represented by attorneys who are members of the state legislature to obtain continuances under certain circumstances. See Tex. Civ. Prac. & Rem.Code Ann. " 30.003. To obtain a continuance, the legislator must present an affidavit to the adjudicating tribunal stating he or she intends to participate actively in the case and has not taken the case for purposes of delay. " 30.003(d), (e). The tribunal must grant the continuance unless the party employed the legislator within ten days of trial on the merits or unless a continuance would interfere with a party's due process rights. " 30.003(b), (c). Waites v. Sondock, 561 S.W.2d 772, 776 (Tex.1977). Under those circumstances, the tribunal has the discretion to deny a continuance. " 30.003(b), (c). Waites, 561 S.W.2d at 776. | Legislative continuance statute allows parties represented by attorneys who are members of state legislature to obtain continuances under certain circumstances. V.T.C.A., Civil Practice & Remedies Code S 30.003. | Does the legislative continuance statute allow parties represented by attorneys who are members of state legislature to obtain continuances under certain circumstances? | 029491.docx | LEGALEASE-00136577-LEGALEASE-00136578 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5259 | Ruiz v. Nicolas Trevino Forwarding Agency, 888 S.W.2d 86 | 307A+483 | Rule 169 provides in pertinent part:Each matter of which an admission is requested shall be separately set forth. The matter is admitted, without necessity of a court order unless, within thirty (30) days after service of the request, or within such time as the court may allow, or as otherwise agreed by the parties, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection ...Tex.R.Civ.P. 169(1). When admissions are deemed, the matters are conclusively established against the admitting party unless the court, on motion, permits withdrawal or amendment of the admissions. The rule states:[T]he court may permit withdrawal or amendment of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and the presentation of the merits of the action will be subserved thereby.Tex.R.Civ.P. 169(2). | When admissions are deemed, matters are conclusively established against admitting party unless court on motion permits withdrawal or amendment of admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "When admissions are deemed, are matters conclusively established against an admitting party unless a court on motion permits withdrawal or amendment of admissions?" | Pretrial Procedure - Memo # 3594 - C - NA.docx | ROSS-003290973-ROSS-003290974 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 5260 | Watts v. Lane Cty., 142 Or. App. 489 | 307A+485 | In appropriate cases, a party that prevails at trial after the opposing party denied its requests for admission can recover its trial expenses, including attorney fees, under ORCP 46 C. See, e.g., Adams, 126 Or.App. at 394"97, 868 P.2d 788. The trial court may not award such expenses if"it finds that (1) the request was held objectionable pursuant to Rule 45B or C, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that such party might prevail on the matter, or (4) there was other good reason for the failure to admit." | In appropriate cases, party that prevails at trial after opposing party denied requests for admission can recover its trial expenses, including attorney fees. Rules Civ.Proc., Rule 46, subd. C. | "Can a party that prevails at trial, after opposing party denies requests for admission, recover its trial expenses including attorney fees?" | Pretrial Procedure - Memo # 3600 - C - VP.docx | ROSS-003290503 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5261 | Lucas v. Clark, 347 S.W.3d 800 | 307A+483 | The Appellees rely solely on Request for Admission 2, which was embedded in their petition, to prove that they suffered $10 million dollars of unliquidated damages in the form of lost profits. Request for Admission 2 stated: "As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars." Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted.Oliphant Fin., LLC v. Galaviz, 299 S.W.3d 829, 838 (Tex.App.-Dallas 2009, no pet.); Sherman Acquisition II LP v. Garcia, 229 S.W.3d 802, 812 (Tex.App.-Waco 2007, no pet.). Admissions, once deemed admitted, are judicial admissions and may not be contradicted. Oliphant Fin., 299 S.W.3d at 837; Sherman Acquisition, 229 S.W.3d at 812"13. As all of Lucas's points on appeal are impacted by whether or not Request for Admission 2, standing alone, can support the trial court's $10 million default judgment, we will begin by addressing the purpose behind requests for admissions | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | "Is the statute providing that requests for admission shall be deemed admitted if party fails to respond to requests prior to hearing on opponent's motion mandatory in nature, and does not permit any ""interest of justice"" exception?" | 029935.docx | LEGALEASE-00136055-LEGALEASE-00136057 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5262 | St. Louis Sw. Ry. Co. of Texas v. McDermitt, 175 S.W. 509 | 307A+723.1 | The court did not err in overruling the motion for continuance, because it does not appear from the record that appellant was injured by reason thereof. The motion was not a statutory, but an equitable, one, and it rested within the discretion of the court to grant or refuse it, as it might see proper. This discretion is not shown to have been abused. Notwithstanding the amendment, it does not appear from the record that appellant could have shown that the block in question did not belong to the appellees. This seems to have been the only question involved in its motion. Where an application to continue is based on the ground of surprise in the filing of an amended petition, it must appear, in order to justify a reversal, that appellant had a meritorious defense, and that by a postponement or continuance of the cause such defense could be made to appear. See Western Union Tel. Co. v. Robertson Bros., 133 S. W. 454. | An application for continuance based on surprise in the filing of an amended petition must show that defendant had a meritorious defense, which by continuance could be made to appear. | "When an application to continue is based on the ground of surprise in the filing of an amended petition, is it necessary to show that the applicant had a meritorious defense and by a continuance of the case such defense could be made to appear?" | 030207.docx | LEGALEASE-00136089-LEGALEASE-00136090 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5263 | Ethridge v. Perryman, 363 S.W.2d 696 | 307A+720 | We find no error in the action of the trial court. The amended petition stated a claim upon which relief can be granted. "[E]quity had jurisdiction on a proper showing made to correct the description in the original mortgage and to order another foreclosure and sale by the proper description,." 76 C.J.S. Reformation of Instruments, " 42, p. 392, fn. 28; Conyers v. Mericles, 75 Ind. 443; McCasland v. Aetna Life Ins. Co., 108 Ind. 130, 9 N.E. 119; Fisher v. Villamil, 62 Fla. 472, 56 So. 559, 39 L.R.A.,N.S., 90; Marks v. Taylor, 23 Utah 470, 65 P. 203. There was no error in overruling the motion to dismiss. We find no abuse of discretion in ordering the case to trial without further delay. An amendment of an adversary's pleading does not entitle a party to a continuance as of course, Peterson v. Metropolitan St. Ry. Co., 211 Mo. 498, 111 S.W. 37, and where it appears from the pleadings, application for continuance and testimony that the parties have prepared to meet the issues tendered by the amendment, a continuance on account of the amendment is not necessary. Mangelsdorf Bros. Co. v. Harnden Seed Co., 132 Mo.App. 507, 112 S.W. 15. No showing was made that defendants were not ready to meet the allegations of the amended petition, or that different witnesses not then available would be required, or that defendants' rights were prejudiced in any manner. Counsel for defendants conceded at the hearing in circuit court that in the amended petition plaintiffs were asking for some but not all of the relief prayed for in the original petition, and that "the evidence would be the same." | Where it appears from pleadings, application for continuance and testimony that parties have prepared to meet issues tendered by amendment, a continuance on account of the amendment is not necessary. V.A.M.R. Civil Rule 55.53; Section 509.490 RSMo 1959, V.A.M.S. | "Where it appears from pleadings that an application for continuance and testimony that parties have prepared to meet issues tendered by amendment, is a continuance on account of the amendment not necessary?" | Pretrial Procedure - Memo # 4050 - C - PB.docx | ROSS-003291731-ROSS-003291732 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5264 | In re Interest of Azia B., 10 Neb. App. 124 | 307A+723.1 | Monique argues first that the juvenile court abused its discretion by denying her motion for a continuance. At the threshold, we note that an application for a continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of the proceedings. Neb.Rev.Stat. " 25"1148 (Reissue 1998); Stewart v. Amigo's Restaurant, 240 Neb. 53, 480 N.W.2d 211 (1992). An oral request is not sufficient to comply with this requirement. Gutierrez v. Gutierrez, 5 Neb.App. 205, 557 N.W.2d 44 (1996) (denying wife's request for continuance on basis that it was merely oral and holding that application for continuance must be in writing and supported by affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of proceedings; oral request is insufficient). Failure to comply with " 25"1148 is relevant as to whether the trial court abused its discretion. State v. Perez, 235 Neb. 796, 457 N.W.2d 448 (1990). In the instant case, no written request or affidavit is found in the record regarding the motion to continue, which was denied by the court on the day of trial. As such, we cannot say that the denial of this continuance was an abuse of discretion. | An oral request for a continuance is not sufficient to comply with statutory requirements that the application be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of the proceedings. Neb.Rev.St. S 25-1148. | Can a request for continuation be made orally or should it be made in writing and supported by affidavit? | Pretrial Procedure - Memo # 4357 - C - SU.docx | ROSS-003291113-ROSS-003291114 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5265 | Soe v. Sex Offender Registry Bd., 466 Mass. 381 | 307A+725 | The person seeking a continuance or a stay of proceedings "bears the burden of establishing its need." Louis Vuitton, supra at 97, quoting Clinton v. Jones, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). The decision whether to grant the continuance or stay "ultimately requires and must rest upon "a particularized inquiry into the circumstances of, and the competing interests in, the case." " Louis Vuitton, supra at 99"100, quoting Banks v. Yokemick, 144 F.Supp.2d 272, 275 (S.D.N.Y.2001). We review the denial of a continuance or a stay for abuse of discretion. See Ott v. Board of Registration in Medicine, 276 Mass. 566, 574, 177 N.E. 542 (1931) ("Whether a continuance ought to be granted commonly rests in the discretion of the trial tribunal"). See also Arthurs v. Stern, 560 F.2d 477, 479"480 (1st Cir.1977) (noting "power of federal courts, after a balancing of interests in the particular case before them, to stay civil suits because of pending criminal charges," and affirming that "denial is reviewed simply for abuse of discretion"). Here, while we would have preferred that the board provide greater detail demonstrating its particularized balancing of these competing interests, we conclude that the board did not abuse its discretion in denying the plaintiff's motion to continue the classification hearing | The decision whether to grant a continuance or stay ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case. | "Does the decision whether to grant a continuance or stay, rest upon a particularized inquiry into the circumstances of the case?" | Pretrial Procedure - Memo # 4572 - C - ES.docx | ROSS-003304552-ROSS-003304553 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5266 | Leonard v. Home Owners Loan Corp., 39 N.Y.S.2d 127 | 307A+91 | In that same case the Appellate Division, Third Department, held that it was the purpose of the Civil Practice Act to simplify the procedure for procuring depositions and, generally, to allow depositions to be taken unless the testimony sought is not material and necessary or the interests of justice would not be subserved.The moving and supplemental affidavits submitted by the plaintiffs disclose that the infant plaintiff, Frances Leonard, is seven (7) years of age. That she lived with her father and mother at 65 South Hawk Street, Albany, N. Y. That on the 23rd day of February, 1942, while walking through an alleyway or gangway which forms a means of ingress and egress to the house where the infant, Frances Leonard, lived, she was seriously injured when a wall and other parts of a building owned by the Home Owners Loan Corporation collapsed, fell and struck her. That the infant plaintiff was removed to the Albany Hospital where she remained for many months, and that she is permanently injured and will be a cripple for life by reason of the injuries she sustained. The moving papers show that the two actions now before the Court were commenced by the service of Summonses on the 14th day of November, 1942. | Purpose of Civil Practice Act was to simplify procedure for procuring depositions and, generally, to allow depositions to be taken unless testimony sought is immaterial and unnecessary or interests of justice would not be subserved. Civil Practice Act, S 1 et seq. | Is the Purpose of the Civil Practice Act to simplify the procedure for procuring depositions? | 031523.docx | LEGALEASE-00136956-LEGALEASE-00136958 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5267 | Ward v. Stanford, 443 S.W.3d 334 | 8.30E+282 | A promissory note is a negotiable instrument if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer. A note is non-negotiable, however, if another instrument must be examined to determine the rights and obligations under the note. See TEX. BUS. & COM.CODE ANN. " 3.106(a) (West Supp.2013); FFP Mktg. Co., 169 S.W.3d at 408"09. | A promissory note is a negotiable instrument if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer; a note is non-negotiable, however, if another instrument must be examined to determine the rights and obligations under the note. | Should a negotiable instrument contain an unconditional promise to pay a certain sum of money? | Bills and Notes Memo 321- GP.docx | ROSS-003305033 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 5268 | United States v. Arthur, 544 F.2d 730 | 63+1(1) | The crucial distinction between "goodwill" expenditures and bribery is, then, the existence or nonexistence of criminal intent that the benefit be received by the official as a quid pro quo for some official act, pattern of acts, or agreement to act favorably to the donor when necessary. In instructing on bribery, the District Court in this case was obliged to set forth that distinction with sufficient clarity to enable the jury to determine the legality of appellant's expenditures, United States v. Brewster, supra, at 83. This was not accomplished by the instruction that "payment of money to Government officials for the purpose of obtaining deposits of government funds in the bank and to influence the judgment of such officials in connection with such deposits . . . constitutes . . . bribery . . . ." If "influence" is given its broadest common meaning, it is clear that "goodwill" gifts and favors to and entertainment of government officials are intended to influence the judgment of such officials. That is, such expenditures are made with the hope that the officials will be more likely to award government business to the donor if a favorable business climate is created than if such a climate is not established. But, as is apparent from the discussion above, this type of influence does not amount to bribery. | Crucial distinction between "goodwill" expenditures and bribery is the existence or nonexistence of criminal intent that the benefit be received by the public official as a quid pro quo for some official act, pattern of acts, or agreement to act favorably to the donor when necessary. Code W.Va., 61-5A-3, 61-5A-6; 18 U.S.C.A. S 656. | "What is the crucial distinction between ""goodwill"" expenditures and bribery?" | 011812.docx | LEGALEASE-00137718-LEGALEASE-00137720 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5269 | People v. Teitelbaum, 138 A.D.2d 647 | 63+1(1) | Contrary to the defendants' contentions we conclude that the evidence was legally sufficient to support their convictions of bribe receiving in the second degree. While there was no direct evidence that the defendants and the witness Wiggins entered into an agreement whereby Wiggins agreed to extend sexual favors to them in return for not arresting her for certain violations of the Vehicle and Traffic Law and drug possession charges, we conclude that such evidence is not necessary. In order to support a verdict of guilty of bribe receiving in the second degree, the People must prove that the public official solicited or accepted or agreed to accept a benefit upon the understanding or agreement that his actions would thereby be influenced (see, Penal Law former " 200.10; People v. Charles, 61 N.Y.2d 321, 473 N.Y.S.2d 941, 462 N.E.2d 118). In determining whether there was such an agreement or understanding, it is the defendant's state of mind which is controlling (see, People v. Holmes, 72 A.D.2d 1, 7, 423 N.Y.S.2d 45). The evidence establishes that the vehicle in which Wiggins and her female friend Robinson and a male friend Gregory were driving was stopped after Wiggins went through a stop sign. Wiggins was not licensed to drive and was unable to produce any documentation for the vehicle. In addition, cocaine was found on Wiggins' person by the officers during a search in which she was fondled by the defendant Teitelbaum. Rather than making an arrest, the officers told Wiggins that if she went with them "everything would be all right". They also instructed her to drop Gregory off somewhere. After dropping Gregory off, Wiggins and her friend Robinson got into the officers' car and were taken to the defendant Starroff's apartment where Wiggins claimed that the defendants asked her for sex. She testified that she orally sodomized both the defendants. This evidence sufficiently indicates that the defendants solicited sex in exchange for their failure to arrest | Public official is guilty of bribe receiving in second degree if he solicits, accepts or agrees to accept benefit on understanding or agreement that actions will be influenced thereby. McKinney's Penal Law S 200.10(1973). | When is a public official guilty of bribe receiving in the second degree? | 011840.docx | LEGALEASE-00137628-LEGALEASE-00137630 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5270 | Smith v. Circle P Ranch Co., 150 Cal. Rptr. 828 | 307A+482.1 | We conclude that section 2034, subdivision (c), conditions the imposition of sanctions upon a determination by the trial court that the basic statutory requirements for so doing are satisfied. Although section 2034, subdivision (c), does not require the trial court to make written findings disclosing its reasons, there are instances when, in the interest of availing the aggrieved party of a meaningful appellate review, express findings supporting the order imposing sanctions are desirable. (Deyo v. Kilbourne (1978) 84 Cal.App.3d 771, 797, 149 Cal.Rptr. 499; Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 384, 15 Cal.Rptr. 90, 364 P.2d 266.) This is especially true in the present case where the Circle P defendants, as another aspect of their argument, attack the dollar amount of the award on grounds of its apparently arbitrary nature. | Applicable statute conditions imposition of sanctions against a party, who wrongfully denies requests for admissions, upon a determination by trial court that basic statutory requirements for so doing are satisfied; although such statute does not require trial court to make written findings disclosing its reasons, there are instances when, in interests of availing aggrieved party of a meaningful appellate review, express findings supporting order imposing sanctions are desirable; such is especially true where aggrieved party attacks dollar amount of sanction on ground of its apparently arbitrary nature. West's Ann.Code Civ.Proc. S 2034(c). | "Are applicable statute conditions imposition of sanctions against a party, upon a determination by trial court that basic statutory requirements for so doing, satisfied?" | 030315.docx | LEGALEASE-00137474-LEGALEASE-00137475 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 5271 | Saddle Hills Cmty. Ass'n v. Cavallari, 150 Ill. App. 3d 134 | 307A+483 | However, a party wishing to rely on an admission requested, but not answered, must raise the other party's failure to respond at some point in the trial before the failure will have any effect. (People ex rel. Reynolds v. Aldridge (1982), 107 Ill.App.3d 679, 684, 63 Ill.Dec. 346, 437 N.E.2d 1268; see also Welch v. City of Evanston (1980), 87 Ill.App.3d 1017, 1023, 42 Ill.Dec. 835, 409 N.E.2d 450, appeal denied; Gilbert v. General Motors Corp. (2d. Cir.1943), 133 F.2d 997, 1002"03, cert. denied (1943), 319 U.S. 743, 63 S.Ct. 1031, 87 L.Ed. 1700, applying Rule 36 of the Federal Rules of Civil Procedure, from which Supreme Court Rule 216 was derived (Ill.Ann.Stat., ch. 110A, par. 216, Historical & Practice Notes, at 208 (Smith-Hurd 1968).) Defendant here did not raise plaintiff's failure to respond at trial and therefore the lack of response cannot act as an admission that the Architectural Review Committee was not in existence at the time of the construction of defendant's fence. | Party wishing to rely on admission requested, but not answered, must raise other party's failure to respond at some point in trial before failure will have any effect. | "Must a party wishing to rely on an admission requested, but not answered, raise the other party's failure to respond at some point in trial before failure will have any effect?" | 030488.docx | LEGALEASE-00137087-LEGALEASE-00137088 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5272 | Gregg v. Cecil, 844 S.W.2d 851 | 307A+723.1 | In ruling on a motion for a continuance the Court must look at the entire record in the case and not just the sworn allegations set forth in the motion for continuance. See Durston v. Best Western Motel, 695 S.W.2d 795, 797 (Tex.App."Waco 1985, no writ). In the case before us we note that the date of the incident giving rise to the action in the trial court occurred almost four years prior to summary judgment being granted. We note at the outset that this motion for continuance was appellant's first motion in the trial court, but there is nothing in the rules of civil procedure relating to continuances requiring granting of a first motion merely because it meets all the requirements of the statute, and it is uncontroverted by the opposing party. Id. at 797. Fritsch v. J.M. English Truck Line, 151 Tex. 168, 246 S.W.2d 856 (1952). The motion for continuance raises the question of diligence on the part of appellant when the continuance is sought because of the absence of a witness. Holland v. First Nat. Bank in Dallas, 597 S.W.2d 406, 412 (Tex.Civ.App."Dallas 1980, writ dism'd). It is axiomatic that the appellant must show that he has used due diligence and must state with particularity such diligence used and the cause of the failure to produce a witness. Ray v. Ray, 542 S.W.2d 209, 212 (Tex.Civ.App."Tyler 1976, no writ). A mere conclusion that diligence was used in an affidavit accompanying a motion for continuance is insufficient to satisfy the requirements of Tex.R.Civ.P. 252. Ray, supra, 542 S.W.2d at 212. | In ruling on motion for continuance, court must look at the entire record in the case and not just the sworn allegations set forth in the motion. | "In ruling on motion for continuance, must the court look at the entire record in the case and not just the sworn allegations set forth in the motion?" | 030519.docx | LEGALEASE-00137300-LEGALEASE-00137301 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 5273 | State ex rel. Keegan M. v. Joshua M., 20 Neb. App. 411 | 307A+723.1 | Neb. Rev. Stat " 25"1148 (Reissue 2008) governs the requirements for requesting a continuance. Section 25"1148 requires that the motion be in writing and supported by an affidavit. Although it is not determinative, an appellate court considers whether the moving party complied with " 25"1148 in determining whether the trial court abused its discretion in granting or denying a motion to continue a trial. See, State v. Perez, 235 Neb. 796, 457 N.W.2d 448 (1990); In re Interest of Azia B., 10 Neb.App. 124, 626 N.W.2d 602 (2001). The failure to comply with " 25"1148 is a procedural defect that affects the technical rights of an opposing party. See State v. Vela"Montes, 19 Neb.App. 378, 807 N.W.2d 544 (2011). It does not affect the opposing parties' substantial rights. See id. | A movant's failure to comply with rule governing requests for a trial continuance is a procedural defect that affects the technical rights of an opposing party, but it does not affect the opposing parties' substantial rights. West's Neb.Rev.St. S 25-1148. | "Is a movant's failure to comply with rule governing requests for a trial continuance a procedural defect that affects the technical rights of an opposing party, but it does not affect the opposing parties' substantial rights?" | 030541.docx | LEGALEASE-00137581-LEGALEASE-00137582 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 5274 | Carter v. Carter, 3 So. 3d 397 | 307A+31 | Whether the trial court departed in ordering that discovery is the issue presented by the instant petition. While personal financial information is fully discoverable when relevant to the subject matter of the pending action, it may cause irreparable harm to a person who is forced to disclose it when the information is not relevant, Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So.2d 189 (Fla.2003), or is overbroad, Redland Co. v. Atl. Civil, Inc., 961 So.2d 1004, 1005 (Fla. 3d DCA 2007). | While personal financial information is fully discoverable when relevant to the subject matter of the pending action, it may cause irreparable harm to a person who is forced to disclose it when the information is not relevant or is overbroad. | Can disclosure of personal financial information cause irreparable harm to a person forced to disclose it in a case in which the information is not relevant? | 031313.docx | LEGALEASE-00137456-LEGALEASE-00137457 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 5275 | Cho v. Seagate Tech. Holdings, 177 Cal. App. 4th 734 | 307A+36.1 | "It is well established ... that objectors are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process." (2 McLaughlin, McLaughlin on Class Actions: Law and Practice (5th ed.2009) " 6:10, p. 58; Hemphill v. San Diego Ass'n of Realtors, Inc. (S.D.Cal.2005) 225 F.R.D. 616, 620 ["discovery of evidence pertaining to settlement negotiations is appropriate only in rare circumstances"].) | Objecting class members are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process. | Are objecting class members not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion? | Pretrial Procedure - Memo # 5007 - C - NC.docx | ROSS-003301305-ROSS-003301307 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 5276 | Corn Exch. Bank v. Tri State Livestock Auction Co., 368 N.W.2d 596 | 307A+36.1 | But without prior disclosure the trial court never arrives at the question of whether the agreement should be revealed to the jury. It is obvious; therefore, that discovery of such agreements is imperative. Furthermore, it cannot be left to counsel for one of the agreeing parties to determine if an agreement is the kind that should be given to the jury and thus is discoverable. Any agreement between some, but not all, of the litigants should be disclosed upon the request of any party in accordance with our rules of procedure, whether or not the agreement is a "Mary Carter" agreement. Then, if requested, the trial court can determine if the agreement should be made known to the jury. | Discovery of settlement agreements between some of parties in litigation is imperative in that without prior disclosure, trial court can never arrive at question of whether agreement should be revealed to jury. | "Is discovery of settlement agreements between some of the parties in litigation imperative in that without prior disclosure, a trial court can never arrive at a question of whether an agreement should be revealed to a jury?" | 031945.docx | LEGALEASE-00138051-LEGALEASE-00138052 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5277 | Deer Consumer Prod. v. Little, 35 Misc. 3d 374 | 307A+36.1 | Moreover, "[a]though the decision to grant jurisdictional discovery is left to the discretion of the [...] court, (Royalty Network Inc. v. Dishant.com, LLC, at 425, citing Jazini v. Nissan Motor Co., 148 F.3d 181, 186 [2d Cir.1998]; Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 [2d Cir.1981] ), to be entitled to discovery, a plaintiff must make a "threshold showing that there is some basis for the assertion of jurisdiction" (Royalty, citing Daval Steel Prods. v. M.V. Juraj Dalmatinac, 718 F.Supp. 159, 162 [S.D.N.Y.1989]). Here, Deer has made no such threshold showing which would warrant further jurisdictional discovery as to Little's internet activities. | Although the decision to grant jurisdictional discovery is left to the discretion of the court, in order to be entitled to discovery, a plaintiff must make a threshold showing that there is some basis for the assertion of jurisdiction. | "In order to be entitled to discovery, must a plaintiff make a threshold showing that there is some basis for the assertion of jurisdiction?" | Pretrial Procedure - Memo # 5041 - C - NS.docx | ROSS-003290861-ROSS-003290862 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5278 | Shea v. Gamco, 81 R.I. 12 | 413+1 | In our opinion the trial justice erred in rejecting or overlooking the petitioner's contention as to an estoppel in pais. It should be noted that the instant case is brought under the workmen's compensation act, which is remedial legislation. Its terms require a liberal construction to achieve the salutary purposes thereof and though of statutory origin it follows the course of equity in certain aspects of its proceedings. We have held generally that both employer and employee are bound to cooperate and deal fairly with each other in order that both may have the benefit of the express provisions of the act. | Generally, both employer and employee are bound to cooperate and deal fairly with each other in order that they may have the benefit of the express provisions of the Workmen's Compensation Act. Gen.Laws 1938, c. 300, art. 1, S 1 et seq. | Are both the employer and employee bound to cooperate and deal fairly with each other in order for them to have the benefit of the express provisions of the workmens compensation act? | Workers Compensation - Memo #217 ANC.docx | ROSS-003291822-ROSS-003291823 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5279 | Indus. Elecs. Corp. of Wisconsin v. iPower Distribution Grp., 215 F.3d 677 | 25T+151 | Industrial Electronics contends that iPower fraudulently caused it to enter into the association agreement. Where fraud is alleged in the inducement of a contract, the parties are bound to arbitrate in accordance with the contract. See Prima Paint, 388 U.S. at 404, 87 S.Ct. 1801; Barron v. Tastee Freez Int'l, Inc., 482 F.Supp. 1213, 1216 (E.D.Wis.1980). Yet here the fraud was not in the creation of the franchise agreement, but in the creation of an entirely separate contract. A dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined. See Midwest Window Sys., Inc. v. Amcor Indus., Inc., 630 F.2d 535, 537 (7th Cir.1980). | Dispute that arises under one agreement may be litigated notwithstanding mandatory arbitration clause in second agreement, even where two agreements are closely intertwined. | Can a dispute that arises under one agreement be litigated when there is a mandatory arbitration clause in a closely intertwined second agreement? | 007603.docx | LEGALEASE-00139001-LEGALEASE-00139002 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5280 | Wells v. State, 144 Ga. App. 841 | 67+45 | Appellant contends that the trial court erred in denying his motion for a directed verdict of acquittal at the close of the state's case because there was no evidence presented to show that appellant entered the house with the intent to commit a felony therein.While mere illegal entry alone does not satisfy the elements of the crime of burglary and there must be some evidence of an intent to commit theft separate and apart from the unauthorized entry, the question of intent is for the determination of the jury under the facts and circumstances proved. Ealey v. State, 139 Ga.App. 604, 229 S.E.2d 86 (1976). Under Code Ann. s 26-605, "(a) person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." The state's evidence showing that appellant was entering through a window of the house in the early hours of the morning, struggling with the victim, and fleeing through the window by which he entered, was sufficient to withstand a motion for directed verdict of acquittal. | While mere illegal entry alone does not satisfy elements of crime of burglary and there must be some evidence of an intent to commit theft separate and apart from unauthorized entry, question of intent is for determination of jury under facts and circumstances proved. | Does mere illegal entry constitute burglary? | Burglary - Memo 181 - KNR.docx | ROSS-003315171-ROSS-003315173 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5281 | Livingston v. Stafford, 99 A.D. 108 | 64+21(1) | Section 10 of the highway law, so far as material, reads as follows: "Sec. 10. Extraordinary Repairs of Highways or Bridges. If any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town in which such highway or bridge may be, may cause the same to be immediately repaired or rebuilt if consented to by the town board." | Under Laws 1890, p. 1179, c. 568, S 10, as amended by Laws 1895, p. 408, c. 606, providing that "if any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town may cause the same to be immediately repaired or rebuilt if consented to by the town board," such commissioner has authority to rebuild a bridge on the consent of the town board only in case it is destroyed or becomes unsafe through some extraordinary means, but does not have that authority where the bridge becomes unsafe from natural wear or decay. | What does the commissioner of highway do in case of injury or damage to bridge? | 018944.docx | LEGALEASE-00138546-LEGALEASE-00138547 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 5282 | Cook v. City of Winston-Salem, 241 N.C. 422 | 200+183 | It seems to be the general rule that a blind, or otherwise handicapped person, in using the public ways, must exercise for his own safety due care, or care commensurate with the known or reasonably foreseeable dangers. Due care is such care as an ordinarily prudent person with the same disability would exercise under the same or similar circumstances. Keith v. Worcester & B. V. Street R. Co., 196 Mass. 478, 82 N.E. 680, 14 L.R.A.,N.S. 648; Jones v. Bayley, 49 Cal.App.2d 647, 122 P.2d 293; Annotation 21 L.R.A.,N.S., p. 627 et seq.; Muse v. Page, 125 Conn. 219, 4 A.2d 329; Gill v. Sable Hide & Fur Co., 223 Ky. 679, 4 S.W.2d 676; 65 C.J.S., Negligence, s 142; Annotation 62 A.L.R. p. 580 et seq.; Annotation 147 A.L.R. p. 724 et seq. | Generally, a blind, or otherwise handicapped person, in using public ways, must exercise, for his own safety, due care, or care commensurate with the known or reasonably foreseeable dangers. | Is a blind person required to exercise due care while using public ways? | Highways -Memo 131 - KC.docx | ROSS-003291611-ROSS-003291612 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5283 | ClearOne v. Revolabs, 2016 UT 16, 369 P.3d 1269 | 307A+36.1 | A court "may determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing." But the party seeking discovery has "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Further, the denial of a request to conduct discovery is reviewed for abuse of discretion, and "an appellate court will not interfere with the trial court refusal to grant discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant." Denying jurisdictional discovery "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." | A party seeking discovery regarding personal jurisdiction has the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted. | Does a party seeking discovery regarding personal jurisdiction have the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted? | 031135.docx | LEGALEASE-00138612-LEGALEASE-00138613 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5284 | Warburton/Buttner v. Superior Court, 103 Cal. App. 4th 1170 | 307A+36.1 | Moreover, none of the cases cited and reviewed that have found contractual waivers of sovereign immunity, that were ultimately approved by official tribal resolutions of some variety, also contained the type of alter ego allegations that we have here. (Smith, supra, 95 Cal.App.4th at p. 10, 115 Cal.Rptr.2d 455.) Under all the circumstances, we believe that at the very least, these allegations and the circumstances of the parties' entry into the Agreement justify discovery into the claims of estoppel, ratification by performance of the Agreement, and the relationship between the Tribe and First Nation, both of whom are named parties to the Agreement. The Agreement provides at paragraph 7.1 that California law governs its provisions, and California law follows an objective theory of contract. The parties' subjective intent in entering into the contract is not determinative; rather, there may be factual questions subject to resolution concerning the circumstances of the entry into and performance of the agreement, as shown by extrinsic evidence. (Brant v. California Dairies, supra, 4 Cal.2d 128, 133, 48 P.2d 13; Morey v. Vannucci, supra, 64 Cal.App.4th 904 at p. 913, 75 Cal.Rptr.2d 573.) Facts that are normally within the knowledge of corporate, or in this case, tribal, officers, relating to jurisdictional issues, are ordinarily subject to discovery. (The 1880 Corporation v. Superior Court, supra, 57 Cal.2d 840, 843, 22 Cal.Rptr. 209, 371 P.2d 985.) Just as in Smith, supra, 95 Cal.App.4th 1, 115 Cal.Rptr.2d 455, the language in the Agreement providing it was entered into and governed by the internal laws of the state of California, with venue for any disputes to be in San Diego, California, may be subject to the interpretation that the Tribe thereby agreed to enforcement of the Agreement in the California courts, and this may have constituted an explicit contractual waiver of its sovereign immunity from suit, if the discovery supports such a view. | Facts that are normally within the knowledge of corporate, or tribal, officers, relating to jurisdictional issues, are ordinarily subject to discovery. | "Are facts that are normally within the knowledge of corporate or tribal, officers, relating to jurisdictional issues ordinarily subject to discovery?" | Pretrial Procedure - Memo # 4825 - C - CK.docx | ROSS-003318198-ROSS-003318199 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5285 | Temby v. William Brunt Pottery Co., 229 Ill. 540 | 307A+74 | Where a commission to take depositions is directed to a competent person, he derives his authority from the commission and because he is described therein as a notary public does not render necessary the affixing of a certificate of his official character to the depositions. They were taken by virtue of a commission issued out of the superior court to George E. Davidson, who was described as a notary public and was thereby authorized to take and return them to the court. He derived his authority from the commission, and it is immaterial that he was also described as a notary public. It is not necessary that a commissioner should hold any office, and a commission may be directed to any competent and disinterested person. | Where a commission to take depositions is directed to a competent person, he derives his authority from the commission, and because he is described therein as a notary public does not render necessary the affixing of a certificate of his official character to the depositions. | "Where a commission to take depositions is directed to a competent person, does he derive his authority from the commission?" | Pretrial Procedure - Memo # 4907 - C - TM.docx | ROSS-003304313-ROSS-003304314 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5286 | Cleland v. 60-02 Woodside Corp., 221 A.D.2d 307 | 157+219.50 | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control (see, Niemann v. Luca, Jr., 214 A.D.2d 658, 625 N.Y.S.2d 267; Cacciolo v. Port Auth. of N.Y. & N.J., 186 A.D.2d 528, 588 N.Y.S.2d 350; Klatz v. Armor El. Co., 93 A.D.2d 633, 462 N.Y.S.2d 677). In their appellate brief, the defendants admit control of the subject premises. Accordingly, the information which the plaintiffs sought regarding repair work performed on the stairway and/or stoop subsequent to the accident was not material or relevant to prosecuting the action (see, CPLR 3101) and the failure on the part of the defendants to provide the plaintiffs with this information did not warrant the issuance of an order of preclusion regarding the condition of the stairway and/or stoop at the time of the accident. | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in negligence case unless there is issue of maintenance or control. | Is evidence of subsequent repairs and remedial measures not discoverable or admissible in negligence case unless there is issue of maintenance or control? | 031770.docx | LEGALEASE-00138456-LEGALEASE-00138457 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5287 | McDonnell v. United States, 136 S. Ct. 2355 | 63+1(1) | In sum, an "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy."The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)"without more"does not fit that definition of "official act." | An "official act," for purposes of the federal bribery statute, which makes it a crime for a public official to demand anything of value in return for being influenced in the performance of any official act, is a decision or action on a question, matter, cause, suit, proceeding or controversy, and the question, matter, cause, suit, proceeding or controversy must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee; it must also be something specific and focused that is pending or may by law be brought before a public official. 18 U.S.C.A. S 201(a)(3), (b)(2). | What is an official act? | 011091.docx | LEGALEASE-00139207-LEGALEASE-00139208 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 5288 | Thorn v. Blue Cross & Blue Shield of Florida, 192 F.R.D. 308 | 170A+1938.1 | Rule 16(b), Federal Rules of Civil Procedure (Rule(s)), governs motions for leave to amend filed beyond the time prescribed by a scheduling order. See Tampa Bay Storm, Inc. v. Arena Football League, Inc., No. 96"29"CIV"T"17C, 1998 WL 182418, at (M.D.Fla. Mar.19, 1998) (citing Payne v. Ryder Sys., Inc., 173 F.R.D. 537, 540 (M.D.Fla.1997)). Rule 16(b) requires a showing of good cause to deviate from the deadline set in the scheduling order. In demonstrating good cause, the moving party must establish that the "scheduling deadlines cannot be met despite a party's diligent efforts." Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F.Supp. 959, 980 (D.S.C.1997); see also Denmon v. Runyon, 151 F.R.D. 404, 407 (D.Kan.1993) (citing Pfeiffer v. Eagle Mfg. Co., 137 F.R.D. 352, 355 (D.Kan.1991)). | Rule governing motions for leave to amend filed beyond the time prescribed by a scheduling order requires a showing of good cause to deviate from the deadline set in the scheduling order; in demonstrating good cause, the moving party must establish that the scheduling deadlines cannot be met despite a party's diligent efforts. Fed.Rules Civ.Proc.Rule 16(b), 28 U.S.C.A. | What should a party show for an order to deviate from or extend the deadline set in a scheduling order? | 026363.docx | LEGALEASE-00139045-LEGALEASE-00139046 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5289 | In re Elias, 29 A.D.2d 118 | 307A+91 | The general rule is that there must appear a "basis for inquiry" on the face of the complaint as a prerequisite for permitting an examination before trial in the stockholders' derivative suit (Pearson v. Rosenberg, 22 A.D.2d 225, 254 N.Y.S.2d 690; see, Hegener v. Party Tyme Prods., 24 A.D.2d 742, 263 N.Y.S.2d 479). Upon a reading of the complaint at bar it is clear that sufficient allegations of misconduct and conspiratorial activity on the part of Elias are set forth to satisfy the "basis for inquiry" rule. Under these circumstances appellants should not have been denied the right to conduct an examination before trial or whatever other disclosure proceedings they may deem available to them under the CPLR. | Generally there must appear a basis for inquiry on face of complaint as prerequisite for permitting examination before trial in shareholders' derivative suit. | Must there appear a basis for inquiry on face of a complaint as a prerequisite for permitting examination before trial in a shareholders' derivative suit? | 030964.docx | LEGALEASE-00139159-LEGALEASE-00139160 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5290 | Broome v. Perlman, 178 Misc. 873 | 307A+91 | In Buehler v. Bush, 200 App.Div. 206, 208, 191 N.Y.S. 848, 849, the Court pointed out that: "The intent and purpose of the [civil] practice Act is to remove from proceedings of this character all procedural trammels, and to permit examinations of adverse parties with as few restrictions as possible." Pertinent to that thought is the expression of the Court in Breault v. Embossing Company, Inc., 253 App.Div. 175, 176, 177, N.Y.S.2d 595, 597: "The time has come when courts should let it be definitely understood that the practice of examining an adverse party before trial should not be hampered by technical requirements so long as the inquiry is directed to relevant issues.The trend of present day thought is to permit great liberality in such examinations." | The practice of examining an adverse party before trial should not be hampered by technical requirements so long as the inquiry is directed to relevant issues. Civil Practice Act, S 288 et seq. | Should the practice of examining an adverse party before trial not be hampered by technical requirements so long as the inquiry is directed to relevant issues? | 030966.docx | LEGALEASE-00139161-LEGALEASE-00139162 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5291 | Brand v. Butts, 242 A.D. 149 | 307A+91 | The rationale of depositions taken pursuant to statute is founded in the old chancery practice relating to a bill of discovery, entitling the party, as it has been quaintly expressed, "to sift the conscience of his adversary." 8 R. C. L. 1131. Under the Code of Civil Procedure, parties ordinarily were not subject to examination before trial, and one desiring to examine his adversary was required to prove circumstances justifying such procedure. The practice relative to the taking to testimony by deposition under the Code of Civil Procedure and the Civil Practice Act is entirely dissimilar. In this respect the latter act has wrought a radical change.The intent and purpose of the Civil Practice Act was to simplify the practice and to abolish the innumerable technical requirements of the Code of Civil Procedure and the general rules of practice. This legislation is remedial and should be liberally construed in furtherance of justice and to effectuate its provisions. | Civil Practice Act, simplifying practice of taking testimony by depositions and abolishing technical requirements of Code of Civil Procedure and general rules of practice, is remedial and should be liberally construed to further justice and effectuate its provisions. Civil Practice Act, S 288. | Is the Civil Practice Act remedial and should be liberally construed to further justice and effectuate its provisions? | 031542.docx | LEGALEASE-00139189-LEGALEASE-00139190 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5292 | Hudak v. Fox, 215 N.J. Super. 233 | 307A+36.1 | While discovery may ordinarily be had regarding any relevant matter involved in a pending action, discovery into a defendant's financial status is barred absent a claim for punitive damages and the assertion of a supporting cause of action. Defendant contends, and plaintiffs do not dispute, that "prima facie proof of the legal right to recover punitive damages is a prerequisite to the discovery of a defendant's financial condition." Stern v. Abramson, 150 N.J.Super. 571, 573, 376 A.2d 221 (Law Div.1977); Gierman v. Toman, 77 N.J.Super. 18, 25, 185 A.2d 241 (Law Div.1962). We approve that proposition. Since the right of plaintiffs herein to punitive damages hinges ultimately on proof of actual malice, prima facie proof thereof is prerequisite to pretrial discovery of defendant's financial worth. | Prima facie proof of legal right to recover punitive damages is prerequisite to discovery of defendant's financial condition. | Is the prima facie proof of a legal right to recover punitive damages a prerequisite to discovery of a defendant's financial condition? | Pretrial Procedure - Memo # 5005 - C - ES.docx | ROSS-003302682-ROSS-003302683 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5293 | Certo v. Fink, 140 Conn. App. 740 | 307A+45 | Next, the defendant claims that the court improperly prevented him from submitting evidence that could have reduced the amount of damages claimed by the plaintiffs. Specifically, the defendant claims that the court abused its discretion and violated his right under Practice Book " 17"406 by not allowing him to introduce, at the hearing in damages, certain evidence that he had failed to provide in discovery.7 We disagree.The following additional undisputed facts are relevant to this claim. On June 8, 2011, during the hearing in damages, the court stated that "any documents from New England Book or Book Drives ... are not to be admitted because [the defendant] admits those [were] not turned over [during discovery]." The court also stated: "[I]t's my opinion, based upon what I've heard, that all of the Books Across America [records] may not have been turned over...."Practice Book " 13"14 provides in relevant part: "(a) If any party has failed to ... respond to requests for production ... or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13"6 through 13"11, the judicial authority may, on motion, make such order as the ends of justice may require.Rule of evidence governing evidence to reduce damages did not permit member of charitable organization to introduce such evidence after trial court had precluded the evidence as a sanction for member's discovery violations in dispute with other members, where court's order was not an evidentiary ruling, and rule of evidence did not effectively trump sanction by the trial court. | Rule of evidence governing evidence to reduce damages did not permit member of charitable organization to introduce such evidence after trial court had precluded the evidence as a sanction for member's discovery violations in dispute with other members, where court's order was not an evidentiary ruling, and rule of evidence did not effectively trump sanction by the trial court. Practice Book 1998, S 17-40. | "Do rules governing notice of defenses, amendment of notice, and evidence to reduce damages pertain to hearings on damages?" | 031911.docx | LEGALEASE-00139285-LEGALEASE-00139286 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5294 | Greer v. SYSCO Food Servs., 475 S.W.3d 655 | 413+46 | "Workers' compensation law is entirely a creature of statute,and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible."Templemire v. W & M Welding, Inc., 433 S.W.3d 371, 381 (Mo. banc 2014) (quoting Greenlee v. Dukes Plastering Serv., 75 S.W.3d 273, 276 (Mo. banc 2002)). If a statute's language is unambiguous, this Court "must give effect to the legislature's chosen language." State ex rel. Young v. Wood, 254 S.W.3d 871, 873 (Mo. banc 2008). Only when the language is ambiguous will the Court resort to other rules of statutory construction. Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011). "There is no need to resort to statutory construction to create an ambiguity where none exists." State v. Moore, 303 S.W.3d 515, 521 (Mo. banc 2010). "Temporary total disability or temporary partial disability benefits shall be paid throughout the rehabilitative process." Section 287.149.1. Section 287.020.6 defines "total disability" as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." "Temporary" and "rehabilitative process" are not defined in chapter 287. "Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." Am. Healthcare Mgmt., Inc. v. Dir. of Revenue, 984 S.W.2d 496, 498 (Mo. banc 1999). The dictionary defines "temporary" as "lasting for a time only; existing or continuing for a limited time; impermanent...." Webster's Third New Int'l Dictionary 2353 (1993). "Rehabilitate" means "to restore to a condition of health or normal activity by a process of medical rehabilitation." Id. at 1914. "Process" is defined as "a progressive forward movement from one point to another on the way to completion." Id. at | Workers' compensation law is entirely a creature of statute, and when interpreting the law, the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. Mo. Ann. Stat. S 287.010 et seq. | Is workers compensation law entirely a creature of statute? | 048005.docx | LEGALEASE-00139333-LEGALEASE-00139334 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5295 | Evans v. United States, 129 Fed. Cl. 126 | 34+5(7) | Under established precedent in the Federal Circuit, this court will not disturb or overturn the decision of the corrections board unless it is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citation omitted). Ordinarily in military review cases the court is largely concerned with whether the decision is procedurally fair and supported by "substantial evidence" to show that it is not materially wrong. Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The corrections board decision must be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant. See Buchanan v. United States, 621 F.2d 373, 383 (Ct. Cl. 1980). | The decision of a military corrections board must be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant. | Should the decision of a military corrections board be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant? | 008522.docx | LEGALEASE-00139385-LEGALEASE-00139386 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5296 | Peoples v. United States, 87 Fed. Cl. 553 | 34+5(7) | In rendering its decision on plaintiff's application, the BCNR was "bound by its own regulations." Beckham v. United States, 183 Ct.Cl. 628, 392 F.2d 619, 622 (1968). The pertinent regulations required the BCNR to "make written findings, conclusions and recommendations." 32 C.F.R. " 723.6(a)(3). Moreover, because the BCNR denied plaintiff's application without a hearing, it was required to include in its written determination a "brief statement of the grounds for denial," id. " 723.3(e)(3), that, in turn, contained "the reasons for the determination that relief should not be granted ... together with all the essential facts upon which the denial [was] based," id. " 723.3(e)(4). Although a "presumption of regularity ... attaches" to the BCNR's decision, Richey v. United States, 322 F.3d 1317, 1326 (Fed.Cir.2003), "[a] naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing ... is inimical to a rational system of administrative determination and ultimately inadequate," Beckham, 392 F.2d at 622"23. The BCNR is not required to explain the reasons for its decision "in great detail," but must provide an applicant with "sufficient notification ... to permit him, if he may, to rebut [its] action."Craft v. United States, 210 Ct.Cl. 170, 544 F.2d 468, 474 (1976). | The Board for Correction of Naval Records (BCNR) is not required to explain the reasons for its decision in great detail, but must provide an applicant for correction of military records with sufficient notification to permit him, if he may, to rebut BCNR's action. 10 U.S.C.A. S 1552(a); 32 C.F.R. S 723.6(a)(3). | Is the Board for Correction of Naval Records required to explain the reasons for its decision in great detail? | 008527.docx | LEGALEASE-00139494-LEGALEASE-00139495 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5297 | Woodward v. United States, 871 F.2d 1068 | 34+11(1) | The statutory authority given to the Secretary of the Navy to release a reserve officer from active duty is not subject to any procedural or substantive limitation. It is contained in 10 U.S.C. " 681(a) (1982) and provides that "the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." The applicable Navy instruction preserves the discretion granted by that section and does not provide an independent source of procedural or substantive protection.3 See Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 2053 n. 8, 100 L.Ed.2d 632 (1988), aff'g Doe v. Casey, 796 F.2d 1508, 1520 (D.C.Cir.1986). Cf. Sampson v. Murray, 415 U.S. 61, 71, 94 S.Ct. 937, 944, 39 L.Ed.2d 166 (1974) (federal courts have authority to review the claim of a discharged governmental employee that the agency effectuating the discharge has not followed its administrative regulations). Secretary of the Navy Instruction 1920.6 (July 14, 1971) (SECNAVINST 1920.6), setting forth "procedures, regulations, and instructions for implementation of statutes which provide for the separation of officers from the Navy and Marine Corps, termination of appointments, revocation of commission and/or discharge, release from active duty," provides as to reserve officers:c. Reserve Officers....(3) Release from Active Duty. In the case of Reserve officers of the Navy and Marine Corps, the Chief of Naval Personnel or the Commandant of the Marine Corps, respectively, may at any time, for any reason, release a Reserve officer from active duty....SECNAVINST 1920.6, " 6(c)(3). | Secretary of Navy's statutory authority to release a reserve officer from active duty is not subject to any procedural or substantive limitation. 10 U.S.C.A. SS 681, 681(a). | Is the Secretary of Navy's statutory authority to release a reserve officer from active duty subject to any procedural or substantive limitation? | Armed Services - Memo 212 - SB.docx | ROSS-003287096-ROSS-003287097 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5298 | In re Dana Corp., 138 S.W.3d 298 | 250+32 | Mandamus relief is appropriate only if the trial court abused its discretion or violated a legal duty, and there is no adequate remedy at law, such as an appeal. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion. See, e.g., Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex.1995) (orig.proceeding). If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist. Texaco, 898 S.W.2d at 815; Walker, 827 S.W.2d at 843.A discovery order "requiring document production from an unreasonably long time period or from distant and unrelated locales" is impermissibly overbroad and may be subject to mandamus relief. In re CSX Corp., 124 S.W.3d 149, 152 (Tex.2003) (orig.proceeding). | A discovery order requiring document production from an unreasonably long time period or from distant and unrelated locales is impermissibly overbroad and may be subject to mandamus relief. | Can a discovery order requiring document production be subject to mandamus relief? | 027456.docx | LEGALEASE-00139404-LEGALEASE-00139405 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5299 | Moulder v. Steele, 118 Ga. App. 87 | 34+34.2(1) | The Soldiers and Sailors Civil Relief Act, supra, provides for stay of proceedings to which persons in military service are parties, it does not authorize a stay because witnesses are in the service. Konstantino v. Curtiss-Wright Corp., D.C., 52 F.Supp. 684; Welsh v. Mercy Hospital, 65 Cal.App.2d 473, 151 P.2d 17; Jones v. State, 205 Ark. 806, 171 S.W.2d 298; Campbell v. Mestice, 28 N.J.Super. 192, 100 A.2d 333. | The Soldiers' and Sailors' Civil Relief Act provides for stays of proceedings to which persons in military service are parties, but it does not authorize a stay because witnesses are in the service. Soldiers' and Sailors' Civil Relief Act of 1940, S 201, 50 U.S.C.A.App. S 521. | Does the Soldiers and Sailors Civil Relief Act provide for stay of proceedings to which persons in military service are parties? | Armed Services - Memo 199 - SNJ.docx | ROSS-003304248-ROSS-003304249 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 5300 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+481 | We have already seen in Kaw Valley State Bank & Trust, 567 S.W.2d 710, that the owner of a note that is not negotiable may transfer his interest therein by assignment. An earlier case, Sauter v. Leveridge, 103 Mo. 615, 15 S.W. 981 (1891), reached the same result.There, the owner-payee of two notes that were past maturity, and thus no longer negotiable, assigned the notes to another. The assignment was by separate instrument, the notes themselves being lost. Judgment for the assignee against the maker was affirmed.It is thus established in Missouri that even though a note does not possess the quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another. Any language, however informal, if it shows the intention of the owner of a chose in action to transfer it, and sufficiently identifies the subject matter, is sufficient to vest the property therein in the assignee. Greater Kansas City Baptist and Community Hospital Association, Inc. v. Businessmen's Assurance Co., 585 S.W.2d 118, 119[1] (Mo.App.1979); Halvorson v. Commerce Trust Co., 222 S.W. 897, 898 (Mo.App.1920). | Even though note does not possess quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another, and any language, however informal, if it shows intention of owner of chose in action to transfer it, and sufficiently identifies subject matter, is sufficient to vest property therein in assignee. | Does any informal language of the owner of the property to transfer it is sufficient to vest the property therein in the assignee? | 010438.docx | LEGALEASE-00140696-LEGALEASE-00140697 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5301 | Rikkers v. Ryan, 76 Wis. 2d 185 | 200+80 | In support of their contention that the language "north line of Lot 1" means the centerline of the adjacent Illinois Avenue, the Rikkers primarily rely upon the rule of law that the conveyance of property abutting on a street or highway transfers the legal title to the land to the center of the adjacent street or highway, in the absence of a clear intent to the contrary. Grunwaldt v. Milwaukee, 35 Wis.2d 530, 539, 151 N.W.2d 24, 30 (1967). | Conveyance of property abutting on a street or highway transfers legal title to the land to the center of the adjacent street or highway, in absence of a clear intent to contrary. | "Does the conveyance of property abutting on a street or highway, transfer legal title to the land to the center of the adjacent street or highway?" | 019033.docx | LEGALEASE-00140255-LEGALEASE-00140256 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 5302 | Leidholt v. Dist. Court In & For City & Cty. of Denver, 619 P.2d 768 | 307A+36.1 | Procedurally, the question is in what manner and at what stage of the proceedings should evidence of a defendant's financial worth be discoverable? We hold that prima facie proof of a triable issue on liability for punitive damages is necessary to discover information relating to the defendant's financial status. The trial judge should grant the plaintiff some leeway in establishing his prima facie case. The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof. This procedure protects the defendant from an unwarranted invasion of privacy and harassment where the plaintiff has merely asserted a claim for punitive damages. It also comports with the broad right of discovery granted by C.R.C.P. 26(b)(1), and adequately promotes the goals of deterrence and punishment that an award of punitive damages seeks to accomplish. Cobb v. Superior Court, supra; Gierman v. Toman, 77 N.J.Super. 18, 185 A.2d 241 (1962). See also, Stern v. Abramson, 150 N.J.Super. 571, 376 A.2d 221 (1977); Belinski v. Goodman, 139 N.J.Super. 351, 354 A.2d 92 (1976). | In tort action, prima facie proof of triable issue on liability for punitive damages is necessary to discover information relating to defendant's financial status. C.R.S. '73, 13-21-102; Rules of Civil Procedure, Rule 26(b)(1). | "Is evidence of a defendant's financial worth discoverable if the plaintiff demonstrates prima facie proof of a ""triable issue"" on liability for punitive damages?" | 032419.docx | LEGALEASE-00140400-LEGALEASE-00140401 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5303 | US Chem. Storage v. Berto Constr., 800 S.E.2d 716 | 307A+554 | "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." Banc of Am. Sec., LLC v. Evergreen Int'l Aviation, Inc., 169 N.C.App. 690, 693, 611 S.E.2d 179, 182 (2005). | The standard of review to be applied by a trial court in deciding a motion to dismiss for lack of personal jurisdiction depends upon the procedural context confronting the court. N. C. R. Civ. P. 12(b)(2). | Does the standard of review in deciding a motion to dismiss for lack of personal jurisdiction depend upon the procedural context confronting the court? | 032870.docx | LEGALEASE-00139997-LEGALEASE-00139998 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 5304 | Wilson v. Pershing, 801 S.E.2d 150 | 13+13 | Standing, which is properly challenged by a Rule 12(b)(1) motion to dismiss, Fuller v. Easley, 145 N.C.App. 391, 395, 553 S.E.2d 43, 46 (2001), "is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." Aubin v. Susi, 149 N.C.App. 320, 324, 560 S.E.2d 875, 878 (2002). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." Estate of Apple v. Commercial Courier Express Inc., 168 N.C.App. 175, 177, 607 S.E.2d 14, 16 (2005). | Standing, which is properly challenged by motion to dismiss, is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction. N.C. R. Civ. P. 12(b)(1). | "Is standing, which is properly challenged by motion to dismiss, a necessary prerequisite to a court's proper exercise of subject matter jurisdiction?" | Pretrial Procedure - Memo # 5667 - C - SK.docx | ROSS-003288029-ROSS-003288030 | Order, SA, Sub | 0.66 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5305 | Vermont Coll. of Fine Arts v. City of Montpelier, 165 A.3d 1065 | 307A+554 | Understanding this statutory scheme is important to this case because "[a] party's failure to exhaust administrative remedies permits a court to dismiss the action for lack of subject matter jurisdiction." Jordan v. State, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). Further, "[t]his Court has consistently held that when administrative remedies are established by statute or regulation, a party must pursue, or "exhaust," all such remedies before turning to the courts for relief." Id. This rule "serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency." Id at 512, 702 A.2d at 60. Moreover, even if the administrative body did not have the authority to settle the issue before it, doing so would aid the "development of the record according to the more informal procedures of the administrative procedure act and fact-finding." Stone v. Errecart, 165 Vt. 1, 5, 675 A.2d 1322, 1325 (1996). | A party's failure to exhaust administrative remedies permits a court to dismiss the action for lack of subject matter jurisdiction. | Does a party's failure to exhaust administrative remedies permit a court to dismiss an action for lack of subject matter jurisdiction? | Pretrial Procedure - Memo # 5684 - C - SKG.docx | ROSS-003289621-ROSS-003289622 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5306 | Pollack v. Watts, 134 Ohio App. 3d 560 | 307A+554 | Civ.R. 12(H)(3) states, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Lack of subject matter jurisdiction may be raised sua sponte by the court at any stage of the proceedings. Fox v. Eaton Corp. (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536. A trial court may dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Bowen v. Britton (1993), 84 Ohio App.3d 473, 477-478, 616 N.E.2d 1217, 1220, citing Jenkins v. Eberhart (1991), 71 Ohio App.3d 351, 355, 594 N.E.2d 29, 31. | A trial court may dismiss a complaint for lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed fact plus the court's resolution of disputed facts. Rules Civ.Proc., Rule 12(H)(3). | Can a motion to dismiss a complaint by reason of the court's lack of subject matter jurisdiction be made at any stage of a proceeding? | 033251.docx | LEGALEASE-00140654-LEGALEASE-00140655 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 5307 | City of Wenatchee v. Chelan Cty. Pub. Util. Dist. No. 1, 181 Wash. App. 326 | 371+2016 | When it comes to statutes dealing with taxation, legislative power is particularly broad and it is inherent in the exercise of the power that the State, or here, its delegee, within the scope of its delegation, be free to select the objects or subjects of taxation. Commonwealth Title Ins. Co. v. City of Tacoma, 81 Wash.2d 391, 394"95, 502 P.2d 1024 (1972). In construing RCW 35A.82.020 in particular, our Supreme Court has held that, like the taxing authority of other classes of city, the licensing and taxing power granted by the statute is "liberally construed to carry out the objectives" of the cities of the first class. Harbour Vill. Apartments v. City of Mukilteo, 139 Wash.2d 604, 618 n. 9, 989 P.2d 542 (1999) (Talmadge, J., dissenting) (citing chapter 35.22 RCW; Citizens, 99 Wash.2d at 343"44, 662 P.2d 845); RCW 35A.01.010 (stating that "[a]ll grants of municipal power to municipalities electing to be governed under the provisions of this title, whether the grant is in specific terms or in general terms, shall be liberally construed in favor of the municipality"). Nonetheless, if a tax statute is ambiguous, it must be construed most strongly against the taxing authority. Grp. Health, 106 Wash.2d at 401, 722 P.2d 787. | When it comes to statutes dealing with taxation, legislative power is particularly broad and it is inherent in the exercise of the power that the State or its delegee, within the scope of its delegation, be free to select the objects or subjects of taxation. | How broad is the legislative power when it comes to statutes dealing with taxation? | 045480.docx | LEGALEASE-00140423-LEGALEASE-00140424 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5308 | United States v. Albertini, 472 U.S. 675 | 34+28(2) | In holding that " 1382 cannot be applied during an open house, the Court of Appeals misapprehended the significance of Flower. As this Court later observed in Greer, the decision in Flower must be viewed as an application of established First Amendment doctrine concerning expressive activity that takes place in a municipality's open streets, sidewalks, and parks. 424 U.S., at 835"836, 96 S.Ct., at 1216"1217. Flower did not adopt any novel First Amendment principles relating to military bases, but instead concluded that the area in question was appropriately considered a public street. There is "no generalized constitutional right to make political speeches or distribute leaflets," id., at 838, 96 S.Ct., at 1217, on military bases, even if they are generally open to the public. Id., at 830, 838, and n. 10, 96 S.Ct., at 1213, 1217, and n. 10. Greer clarified that the significance of the per curiam opinion in Flower is limited by the unusual facts underlying the earlier decision. 424 U.S., at 837, 96 S.Ct., at 1217. | There is no generalized constitutional right to make political speeches or distribute leaflets on military bases even if they are generally open to the public. U.S.C.A. Const.Amend. 1. | "Is there a generalized constitutional right to make political speeches or distribute leaflets on military bases, even if they are generally open to the public?" | Armed Services - Memo 244 - TB.docx | ROSS-003288717-ROSS-003288718 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5309 | State v. Com. v. Beneficial Fin. Co., 360 Mass. 188 | 63+3 | Household, Barber, and Pratt urge that there was no evidence on which the jury could find that the bribe was designed to influence Hanley's conduct in his official capacity (see G.L. c. 268, s 7), since his actions before the Rate Board were not authorized by statute, regulation or established usage. However, the jury could have found that the defendants believed Hanley was a key figure at the rate hearings, and that Hanley "used the real Or supposed power of * * * (his) office to obtain money for himself * * * in violation of his public duty, and that under color of his office he exercised de facto the power needed to accomplish what he set out to do" (emphasis supplied). Commonwealth v. Avery, 301 Mass. 605, 608, 18 N.E.2d 353, 354. If, in such circumstances, the acceptance of a bribe is proscribed, as the Avery decision held, we perceive no reason why the same considerations of policy should not, under the statute, forbid the offer or promise of a bribe. | Mere fact that public official's conduct before board was not authorized by statute, regulation or established usage did not preclude conviction for offering or promising bribe to such official. M.G.L.A. c. 268 S 7. | "Does the mere fact that public official's conduct before board was not authorized by statute, regulation or established usage preclude conviction for offering or promising bribe to such official?" | Bribery - Memo #689 - C-JL.docx | LEGALEASE-00030608-LEGALEASE-00030609 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5310 | United States v. Jefferson, 562 F. Supp. 2d 687 | 63+1(1) | An indictment charging bribery must therefore allege each of the following elements: (i) that the defendant is a public official, and (ii) that defendant corruptly demanded, sought, received, accepted, or agreed to receive or accept (iii) anything of value (iv) in return for being influenced in the performance of (v) an official act. | An indictment charging bribery must allege each of the following elements: (1) that the defendant is a public official; and (2) that defendant corruptly demanded, sought, received, accepted, or agreed to receive or accept (3) anything of value (4) in return for being influenced in the performance of (5) an official act. 18 U.S.C.A. S 201(b)(2)(A). | What should an indictment charging bribery allege? | 012117.docx | LEGALEASE-00141130-LEGALEASE-00141131 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5311 | United States v. Sun-Diamond Growers of California, 941 F. Supp. 1262 | 63+6(1) | This District Court and the various federal courts of appeal that have addressed this precise issue have concluded that the gratuity statute does not require such nexus to be alleged by an indictment. Rather, it is sufficient for the indictment to allege that the provider of the gratuity has matters within the purview of the official receiving the gratuity, and that the gratuity be provided "simply because of ... [the] official['s] position, in appreciation of th[e] relationship, or in anticipation of its continuation." United States v. Secord, 726 F.Supp. 845, 847 (D.D.C.1989) (emphasis in the original). | Statute criminalizing giving of gratuities to federal officials does not require indictment to allege nexus between provision of things of value and specific official act performed or committed to be performed by official; it is sufficient for indictment to allege provider of gratuity has matters pending within purview of official receiving gratuity, and that gratuity be provided simply because of official's position, in appreciation of relationship, or on an anticipation of its continuation. 18 U.S.C.A. S 201(c)(1)(A). | Does gratuity statute require nexus to be alleged by an indictment? | Bribery - Memo #749 - C-JL.DOCX | ROSS-003302146 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 5312 | State v. Hair, 114 N.C. App. 464 | 63+1(1) | The offeror of a bribe to a public official therefore possesses a corrupt intent if his purpose in offering the bribe is to gain some advantage for himself, without regard to whether he seeks the performance or the nonperformance of an official duty. See N.C.G.S. " 14"217 (bribery for official to receive anything of value "for performing or omitting to perform any official act"). | Offeror of bribe to public official possesses requisite "corrupt intent" if his purpose in offering bribe is to gain some advantage for himself, without regard to whether he seeks performance or nonperformance of official duty. G.S. S 14-218. | "When does the offeror of a bribe to a public official possess the requisite ""corrupt intent"" for a bribery conviction?" | 012159.docx | LEGALEASE-00141981-LEGALEASE-00141982 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 5313 | Fischer v. First Nat. Bank, 55 Idaho 251 | 113+3 | Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be reasonable, uniform, general as to the place or locality, and not contrary to law. Security Comm. & Sav. Bank of San Diego v. Southern Trust & Commerce Bank, 74 Cal. App. 734, 241 P. 945; Evans Fuel Co. v. Leyda, 77 Colo. 356, 236 P. 1023; Rugh v. Soleim, 92 Or. 329, 180 P. 930; Johns v. Jaycox, 67 Wash. 403, 121 P. 854, 39 L. R. A. (N. S.) 1151, Ann. Cas. 1913D, 471; Luckehe v. First Nat. Bank, supra; Nelson v. So. Pac. Co., 15 Utah, 325, 49 P. 644; 7 C. J. " 219, page 587; Bridgeport Bank v. Dyer, 19 Conn. 136; Marrett v. Isaac Brackett, 60 Me. 524; Renner v. Bank of Columbia, 9 Wheat. 581, 6 L. Ed. 166. | Custom or usage relating to particular business in order to be available for purpose of determining rights of parties must be reasonable, uniform, general as to place or locality, and not contrary to law. | Does custom have to be uniform in order to be used for the purpose of determining the rights of parties? | 014204.docx | LEGALEASE-00141890-LEGALEASE-00141891 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5314 | Gonsales v. Seaton, 183 F. Supp. 708 | 260+5.1(4) | "Section 17 (30 U.S.C.A. 226) is mandatory in directing that a lease be issued to the person (a) who first makes application and (b) who is qualified under certain other sections of the Act to hold a lease." McKay v. Wahlenmaier, 1955, 96 U.S.App.D.C. 313, 317, 226 F.2d 35, 39. | Provision of Mineral Lands Leasing Act for leasing oil and gas lands not within any known geological structure of a producing oil or gas field is mandatory in directing that a lease be issued to the person who first makes application and who is qualified under the act to hold a lease. Mineral Lands Leasing Act, S 17, 30 U.S.C.A. S 226. | Is Section 17 (30 U.S.C.A. 226) mandatory in directing that a lease be issued to the person who first makes application and is qualified under other sections of the Act to hold a lease? | 021151.docx | LEGALEASE-00140832-LEGALEASE-00140833 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 5315 | City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351 | 302+11 | However, despite the requirement that the complaint must contain allegations of fact bringing the case within the cause of action, "the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts." Chandler v. Illinois Central R.R. Co., 207 Ill.2d 331, 348, 278 Ill.Dec. 340, 798 N.E.2d 724 (2003). Plaintiffs contend that they have set out such ultimate facts and suggest that if they are permitted to conduct discovery, additional supporting facts will come to light. Plaintiffs rely heavily on the facts underlying the trace data and the "time to crime" statistics which, they claim, point to these defendants as contributing to the problem of illegal guns to a degree that is not merely a function of their sales volume. | Despite the requirement that the complaint must contain allegations of fact bringing the case within the cause of action, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. | "Is a plaintiff required to allege only the ultimate facts to be proved, and not the evidentiary facts to prove the ultimate facts?" | Pleading - Memo 383 - RMM.docx | ROSS-003287654-ROSS-003287655 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 5316 | City of Houston v. Riner, 896 S.W.2d 317 | 307A+486 | A trial court possesses broad discretion to permit or deny the withdrawal of deemed admissions, and its ruling will be set aside on appeal only upon a clear abuse of discretion. Esparza v. Diaz, 802 S.W.2d 772, 776 (Tex.App."Houston [14th Dist.] 1990, no writ). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. Employers Ins. of Wausau v. Halton, 792 S.W.2d 462, 464 (Tex.App."Dallas 1990, writ denied). | Trial court possesses broad discretion to permit or deny withdrawal of deemed admissions, and its ruling will be set aside on appeal only upon clear abuse of discretion; "abuse of discretion" occurs when court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Does a trial court have broad discretion to permit or deny the withdrawal of deemed admissions? | Pretrial Procedure - Memo # 3249 - C - PB.docx | LEGALEASE-00031058-LEGALEASE-00031059 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 5317 | Patton v. Williams, 35 Tex. Civ. App. 129 | 307A+723.1 | This suggests an evasion of, rather than a compliance with, the positive requirement of the statute.The same statute requires the affidavit to state that the party applying for the continuance "has used due diligence to procure such testimony, stating such diligence"; and it has several times been held that an application is bad which fails to state that the party "has used due diligence," although the facts stated may seem to show diligence. Earl v. State (Tex.Civ.App.) 76 S.W. 207; Hogan v. Railway, 88 Tex. 684, 32 S.W. 1035, and cases there cited. Precisely the same form of expression is used in stating these two requirements of the statute, and there is no room for a difference of construction. The cases cited and the one before us are parallel. | An application for a continuance which fails to state that due diligence has been used is bad although the facts stated may seem to show diligence. | "Is an application for a continuance bad which fails to state that the party has used due diligence, although the facts stated may seem to show diligence?" | 030711.docx | LEGALEASE-00141455-LEGALEASE-00141456 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 5318 | Herbert v. Haytaian, 292 N.J. Super. 426 | 78+1189 | The court said in Payton that a "core inquiry" is whether the employer had an effective, properly enforced anti-harassment program. Payton, supra, 292 N.J.Super. at 46, 678 A.2d 279. The timeliness of an employer's response to an employee's complaint is an important element in determining the effectiveness of an anti-harassment program. Ibid. Further, the employer may be liable for punitive damages where the " "wrongdoer's conduct is especially egregious' " and there is "participation by upper management or willful indifference." Lehmann, supra, 132 N.J. at 624"625, 626 A.2d 445 (citation omitted). | Timeliness of employer's response to employee's sexual harassment complaint is important element in determining effectiveness of anti-harassment program, for purposes of determining whether employer should be held liable for compensatory damages in sexual harassment action under Law Against Discrimination (LAD). N.J.S.A. 10:5-1 et seq. | Is timeliness of employer's response to employee's internal complaint of sexual harassment important element in determining effectiveness of an anti-harassment program? | 032108.docx | LEGALEASE-00141247-LEGALEASE-00141248 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5319 | Matter of Brandon's Estate, 55 N.Y.2d 206 | 157+134 | Where guilty knowledge or an unlawful intent is in issue, evidence of other similar acts is admissible to negate the existence of an innocent state of mind. (People v. Molineux, supra, at pp. 297"298, 61 N.E. 286; see People v. Schwartzman, 24 N.Y.2d 241, 247"249, 299 N.Y.S.2d 817, 247 N.E.2d 642; Richardson, Evidence [10th ed.], "" 172"176.) The focus here is not on the actual doing of the act, for the act is either conceded or established by other evidence. Rather, the element in issue is the actor's state of mind, and evidence of other similar acts is admitted under this exception because no particular intent can be inferred from the nature of the act committed. (People v. Molineux, supra; People v. Katz, 209 N.Y. 311, 327"328, 103 N.E. 305; Richardson, Evidence [10th ed.], " 172.) Indeed, the intent exception has often been applied in cases where fraud is alleged because a fraudulent intent rarely can be established by direct evidence. (People v. Schwartzman, 24 N.Y.2d 241, 248, 299 N.Y.S.2d 817, 247 N.E.2d 642, supra; Beuerlien v. O'Leary, 149 N.Y. 33, 38"39, 43 N.E. 417; Richardson, Evidence [10th ed.], " 184.) Similar considerations come into play when it is claimed that a person has exerted undue influence. | Where guilty knowledge or an unlawful intent is in issue, evidence of other similar acts is admissible to negate existence of innocent state of mind. | "Where unlawful intent is an issue, will evidence of other similar acts be admissible at trial to negate the existence of an innocent state of mind?" | 032120.docx | LEGALEASE-00141288-LEGALEASE-00141289 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5320 | Webster v. Calden, 55 Me. 165 | 307A+74 | The Court will not, on motion of the plaintiff, order the defendant to produce a deposition taken by the latter and used in a former trial of the same case, unless upon evidence that the deposition has been filed by the clerk. | The court will not, at the motion of the plaintiff, order defendants to produce a deposition taken and used by them at a former trial of the case, in the absence of evidence that it had ever been filed. | "Will the court not, at the motion of the plaintiff, order defendants to produce a deposition taken and used by them at a former trial of the case?" | 032609.docx | LEGALEASE-00141312-LEGALEASE-00141313 | SA, Sub | 0.11 | 0 | 0 | 1 | 1 | |
| 5321 | Robbins v. Lincoln, 12 Wis. 1 | 307A+76.1 | The answer also averred that "the defendant had no knowledge or information sufficient to form a belief, whether the plaintiff had laid out and expended all the sums of money delivered by the defendant to the plaintiff for that *2 purpose, and, therefore, had no knowledge, &c., whether he was, or, on a final accounting, would be, indebted to the plaintiff. Held, that this denial was consistent with a full knowledge that plaintiff had paid out all the moneys alleged in the complaint to have been paid by him, and, in strictness of pleading, was not such a denial of the paying out of the moneys mentioned in the complaint, as to put the plaintiff upon the proof thereof. (See Hastings vs. Gwynn, 12 Wis. 671; Soutter vs. Madison, 15 Id. 30; Mills vs. Jefferson, 20 Id. 50.)It seems, that the deposition of a witness taken in this State is not admissible in evidence, if the certificate of the officer, before whom it was taken, state as the only reason for taking it "that the deponent is going out of the State," although the party offering the deposition testifies on the trial that the witness was still absent from the State. | It seems that the deposition of a witness taken in this state is not admissible in evidence, if the certificate of the officer before whom it was taken, states as the only reason for taking it, "that the deponent is going out of the state," although the party offering the deposition testifies on the trial that the witness was still absent from the state. | When is the deposition of a witness taken in a state not admissible in evidence? | Pretrial Procedure - Memo # 5737 - C - SHB.docx | ROSS-003289644-ROSS-003289645 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 5322 | Providence Volunteer Fire Dep't v. Town of Weddington, 800 S.E.2d 425 | 307A+554 | In this first category where neither party submits evidence, "[t]he allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged." Bruggeman v. Meditrust Acquisition Co., 138 N.C.App. 612, 615, 532 S.E.2d 215, 217 (2000) (citations omitted). If, however, the defendant submits supportive evidence"for example an affidavit"along with the motion to dismiss, the complaint's allegations "can no longer be taken as true or controlling and [the] plaintiff[ ] cannot rest on the allegations of the complaint.". at 615-16, 532 S.E.2d at 218 (citation omitted). In this instance, the court must consider "(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." Banc of Am., 169 N.C.App. at 693-94, 611 S.E.2d at 182-83. | If a defendant moving to dismiss for lack of personal jurisdiction submits supportive evidence, for example an affidavit, along with the motion to dismiss, the complaint's allegations can no longer be taken as true or controlling and the plaintiff cannot rest on the allegations of the complaint. | "If the defendant submits supportive evidence along with the motion to dismiss, can the complaints allegations be taken as true or controlling?" | Pretrial Procedure - Memo # 5741 - C - TM.docx | ROSS-003301535-ROSS-003301536 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5323 | Kelly v. Gen. Interior Const., 301 S.W.3d 653 | 307A+554 | The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. | To negate jurisdiction on a factual basis, a nonresident defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations; the plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. | "To negate jurisdiction on a factual basis, can a nonresident defendant can present evidence that it has no contacts, effectively disproving the plaintiff's allegations?" | Pretrial Procedure - Memo # 5963 - C - PC.docx | ROSS-003289518-ROSS-003289519 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 5324 | Greer v. Buss, 918 N.E.2d 607 | 307A+554 | The Defendants "moved for dismissal on jurisdictional grounds under T.R. 12(B)(1), and for failure to state a claim under T.R. 12(B)(6)." (Plaintiffs' App. 13.) A motion to dismiss for lack of subject matter jurisdiction "presents a threshold question concerning the court's power to act." Perry v. Stitzer Buick GMC, Inc., 637 N.E.2d 1282, 1286 (Ind.1994). The trial court decides whether the requisite jurisdictional facts exist based on its consideration of the complaint, the motion to dismiss, and any affidavits or other evidence submitted. Id. at 1287. Where the facts are not in dispute, we review the trial court's decision de novo. Common Council v. Matonovich, 691 N.E.2d 1326, 1328 (Ind.Ct.App.1998), trans. denied. | A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. Trial Procedure Rule 12(B)(1). | Does a motion to dismiss for lack of subject matter jurisdiction present a threshold question concerning the court's power to act? | 033342.docx | LEGALEASE-00140933-LEGALEASE-00140934 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5325 | Ex parte Chem. Waste Mgmt., 929 So. 2d 1007 | 13+13 | Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000)." Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003)(emphasis added). "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has "no alternative but to dismiss the action." 740 So.2d at 1029. | When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction and has no alternative but to dismiss the action. | "When a party without standing purports to commence an action, does the trial court acquire no subject-matter jurisdiction and has no alternative but to dismiss the action?" | Pretrial Procedure - Memo # 6013 - C - SB.docx | LEGALEASE-00031505-LEGALEASE-00031506 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5326 | Emerick v. Town of Glastonbury, 145 Conn. App. 122 | 307A+554 | A motion to dismiss for lack of standing properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. Our review of the trial court ultimate legal conclusion and resulting grant of the motion to dismiss is de novo." (Internal quotation marks omitted.) West Hartford v. Murtha Cullina, LLP, 85 Conn.App. 15, 20"21, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). | A motion to dismiss for lack of standing properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. | Does a motion to dismiss for lack of standing properly attack the jurisdiction of the court? | Pretrial Procedure - Memo # 6030 - C - NE.docx | ROSS-003301638-ROSS-003301639 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 5327 | United States v. Jacobs, 431 F.2d 754 | 63+1(1) | Appellants also claim that inasmuch as Bruh was told not to go ahead with any efforts to help Siegel out of difficulty until the amount of the bribe was determined and he had received the money, Bruh's official behavior was not influenced, nor could it have been influenced until these preliminary negotiations were settled, an agreement reached, and the money paid. This precautionary advice to Bruh, however, does not negate the guilt of the defendants. The statute makes attempted bribery a crime, and so long as a bribe is "offered or promised" with the requisite intent "to influence any official act" the crime is committed. "Criminality does not get rid of its evil quality by the precautions it takes against consequences, personal or pecuniary. * * * Guilt is incurred by the trial-success may aggravate, it is not a condition of it." United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). | Under statute against corruptly giving, offering or promising anything of value to any public official with intent to influence any official act or to influence official to commit any fraud or make opportunity for commission of any fraud on United States or to induce official to do or omit to do any act in violation of his lawful duty, attempted bribery is a crime and so long as bribe is offered or promised with requisite intent to influence any official act, the crime is committed. 18 U.S.C.A. S 201(b). | Is attempted bribery a crime so long as a bribe is offered or promised with the requisite intent to influence any office act? | 011481.docx | LEGALEASE-00142185-LEGALEASE-00142186 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 5328 | United States v. Irwin, 354 F.2d 192 | 63+1(1) | In addition, subsection (f) requires that the Government, to convict an accused, must prove that the purpose which he had in mind in making or promising to make a gift to a public official was to give additional compensation or a reward, gratuity or similar favor, by reason of some "official act performed or to be performed by such public official." It is not necessary for the Government to show that the gift caused or prompted or in any way affected the happening of the official act or had anything to do with its nature or extent or the manner or means by which it was performed. The making of the gift "for or because of any official act" limits the prohibition against the act of making a gift to a public official to those which are accompanied by and are made with this particular state of mind, design or purpose, which is the essence of intent. Whether this is regarded as a specific intent or as a limitation on the acts that are within the purview of the subsection is of no consequence. The state of mind with which the act is done is an essential element of the offense which the Government must prove. | To prove a violation of statute making it unlawful to directly or indirectly give, offer or promise anything of value to public official for or because of any official act performed or to be performed by such public official, government must prove that the accused's purpose was to give a gift by reason of some official act performed or to be performed by such official, but government need not show that gift caused or prompted or in any way affected happening of official act or had anything to do with its nature or extent or the manner or means by which it was performed. 18 U.S.C.A. S 201(f). | Is it necessary for the Government to show that a gift affected the happening of the official act? | 011499.docx | LEGALEASE-00142221-LEGALEASE-00142222 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 5329 | United States v. Miller, 340 F.2d 421 | 63+1(1) | The District Judge committed no error in refusing the tendered charge. Title 18 U.S.C. " 201 explicitly states in alternatives the intent necessary to constitute bribery.Either an intention to influence official behavior or an intention to induce a breach of duty makes the briber culpable.United States v. Labovitz, 251 F.2d 393, 394 (3rd Cir. 1958). It is immaterial whether the official action which the briber seeks to influence is right or wrong, in the sense that it is expected to result in pecuniary injury to the Government or that it calls upon the bribe recipient to do something other that what he is legally obligated to do. Daniels v. United States, 17 F.2d 339, 343 (9th Cir. 1927), cert. denied, *425 274 U.S. 744, 47 S.Ct. 591, 71 L.Ed. 1325 (1927); cf. Wilson v. United States, 230 F.2d 521 (4th Cir. 1956), cert. denied, 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956). Given the clear definition by Congress of the intent requisite for a violation of the statute here involved, we decline to engraft upon it the additional requirement that the briber act with a corrupt or fraudulent state of mind. | It is immaterial whether official action which briber seeks to influence is right or wrong, in sense that it is expected to result in pecuniary injury to government or that it calls upon bribe recipient to do something other than what he is legally obligated to do. 18 U.S.C.A. S 201. | Will an intention to influence official behavior or an intention to induce unlawful action supply the culpability required by the bribery statute? | 011541.docx | LEGALEASE-00142386-LEGALEASE-00142387 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 5330 | People v. Shapiro, 170 Cal. App. 2d 468 | 63+1(1) | The corpus delicti consists of the asking and the intent. It was said in People v. Rissman, 154 Cal.App.2d 265, at pages 275"276, 316 P.2d 60, at page 69, "When any person solicits another to offer or join in the offer of a bride, the solicitor has committed the offense described in section 653f. (Citing case.) The gist of the offense is the solicitation to offer or join in the offer of a bribe, and not the commission of bribery. (Citing cases.) The intent may be gathered from the surrounding circumstances. (Citing case.) A contemplated overt act is not an essential element of the offense denounced by section 653f. The offense "is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation."' | Under statute relating to solicitation of another to offer bribe, corpus delicti consists of asking and intent, gist of offense is solicitation to offer or join in offer of a bribe and not commission of bribery, intent may be gathered from surrounding circumstances, contemplated overt act is not essential element, and offense is complete when solicitation takes place even if object of solicitation is never consummated or if no steps are taken toward consummation. West's Ann.Pen.Code, S 653f. | "When any person solicits another to offer or join in the offer of a bribe, is the solicitation to offer or join in the offer of a bribe the gist of the offense?" | 011543.docx | LEGALEASE-00142394-LEGALEASE-00142395 | Condensed, Order, SA, Sub | 0.39 | 1 | 1 | 1 | 1 | 1 |
| 5331 | Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, Enf't, 871 F. Supp. 2d 1312 | 260+5.1(1) | Under OCSLA, as amended, Congress prescribed a sequence of "four distinct statutory stages to developing an offshore oil well: (1) formulation of a five year leasing plan by the Department of the Interior; (2) lease sales; (3) exploration by the lessees; (4) development and production." Secretary of the Interior v. California, 464 U.S. 312, 337, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984); see also Center for Biological Diversity, 563 F.3d at 473 ("OCSLA provides that Interior undertake a four-stage process in order to develop an offshore oil well."). "The stated reason for this four part division was to forestall premature litigation regarding adverse environmental effects that all agree will flow, if at all, only from the latter stages of OCS exploration and production." Sec'y of Interior, 464 U.S. at 341, 104 S.Ct. 656. Congress's decision to compartmentalize the stages of OCS exploration and drilling in this manner bears profound implications for the issues joined in this litigation | Outer Continental Shelf Lands Act (OCSLA) prescribes a sequence of four distinct statutory stages to developing an offshore oil well: (1) formulation of a five-year leasing plan by the Department of the Interior, (2) lease sales, (3) exploration by the lessees, and (4) development and production. Outer Continental Shelf Lands Act, S 2 et seq., 43 U.S.C.A. S 1331 et seq. | What are the four stages to developing an offshore oil well? | 021231.docx | LEGALEASE-00143244-LEGALEASE-00143245 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5332 | Watkins v. Certain-Teed Prod. Corp., 231 S.W.2d 981 | 260+49 | Under the chain of title presented in this case the minerals had been severed from the surface of the land since August 20, 1903. The rule is well established in Texas that an adverse entry upon the surface of land extends downward and includes title to the underlying minerals where at the time of entry there had been no severance of the mineral estate. | An adverse entry upon surface of land extends downward and includes title to underlying minerals where at time of entry there has been no severance of the mineral estate. Vernon's Ann.Civ.St. arts. 5509, 5510. | Does an adverse entry upon the surface extend downward and include the underlying minerals where at the time of entry there had been no severance of the mineral estate? | 021408.docx | LEGALEASE-00143526-LEGALEASE-00143527 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 5333 | Indiana Alcoholic Beverage Comm'n v. State ex rel. Harmon, 269 Ind. 48 | 307A+723.1 | The ABC contends that it was denied a fair trial by the court's denial of the ABC's motion for continuance. The ABC contends that its counsel in the Attorney General's office did not receive notice of the trial date for this matter until 3:30 p. m. on the day preceding trial. The ABC alleges that it did not have sufficient notice to allow its counsel to adequately prepare for trial. The granting of a motion for continuance is within the discretion of the trial court, but such motion should not be denied if the moving party can show good cause for the continuance.. | Granting of motion for continuance is within discretion of trial court, but such motion should not be denied if moving party can show good cause for continuance. | "Is the granting of a motion for continuance within discretion of a trial court, but such motion should not be denied if a moving party can show good cause for continuance?" | Pretrial Procedure - Memo # 4246 - C - KBM.docx | ROSS-003287751-ROSS-003287752 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 5334 | Loveland v. Rowland, 361 S.W.2d 685 | 307A+74 | The emphasized part of this rule clearly means that any changes shall be entered on the deposition by the officer before whom the deposition was taken and not by the witness, his lawyer or anyone else. It also means that the statement of reasons for making changes shall be given to the officer by the witness and not by anyone else. In short, the changes and reasons must be those of the witness and not a lawyer's statement of facts and argument for the view most favorable to his case. Undoubtedly, the reason for having the witness sign the deposition after the officer has entered the changes and reasons is so the witness will sign and swear to the completed deposition, with the changes entered on it, as required by Rule 57.23. Of course, changes and reasons could be on separate pages inserted in the deposition or placed in it by any reasonable method which would make them a part of the deposition signed and sworn to by the witness. As provided in Rule 57.22, signatures may be waived by agreement of the parties or the officer's certificate substituted therefor in certain circumstances stated and in such situations insertion of changes might also require agreement. Rule 57.22 is substantially the same as Federal Rule 30(e), 28 U.S.C.A. but to be sure that other parties would be protected, we made our rule more specific than the federal rule by providing "that the answers or responses as originally given, together with the changes made and reasons given therefor, shall be considered as a part of the deposition." Thus the opposing party is given the benefit of the original answers. See Capra v. Phillips Investment Co., Mo.Sup., 302 S.W.2d 924, 933. | Provision of rule respecting changes in deposition that answers or responses as originally given, together with changes, shall be considered as part of deposition gives opposing party benefit of original answers. V.A.M.R. Civil Rules 57.22, 57.23; Fed.Rules Civ.Proc. rule 30(e), 28 U.S.C.A. | Shall the provision of a rule respecting changes in a deposition that answers or responses as originally given be considered as part of deposition? | Pretrial Procedure - Memo # 5235 - C - BP.docx | LEGALEASE-00032442-LEGALEASE-00032443 | Condensed, Order, SA, Sub | 0.83 | 1 | 1 | 1 | 1 | 1 |
| 5335 | Providence Volunteer Fire Dep't v. Town of Weddington, 800 S.E.2d 425 | 307A+554 | In this first category where neither party submits evidence, "[t]he allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged." Bruggeman v. Meditrust Acquisition Co., 138 N.C.App. 612, 615, 532 S.E.2d 215, 217 (2000) (citations omitted). If, however, the defendant submits supportive evidence for example an affidavit along with the motion to dismiss, the complaint's allegations "can no longer be taken as true or controlling and [the] plaintiff cannot rest on the allegations of the complaint." Id. at 615-16, 532 S.E.2d at 218 (citation omitted). In this instance, the court must consider "(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." Banc of Am., 169 N.C.App. at 693-94, 611 S.E.2d at 182-83 (citations omitted). | If a defendant moving to dismiss for lack of personal jurisdiction submits supportive evidence, for example an affidavit, along with the motion to dismiss, the complaint's allegations can no longer be taken as true or controlling and the plaintiff cannot rest on the allegations of the complaint. | What must a court consider when a defendant submits supportive evidence on a motion to dismiss for lack of personal jurisdiction? | 032945.docx | LEGALEASE-00143508-LEGALEASE-00143509 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5336 | City of Slater v. State, 494 S.W.3d 580 | 307A+554 | If a plaintiff lacks standing to sue, this presents an issue of justiciability which implicates the circuit court's subject-matter jurisdiction. Matter of Adoption of E.N.C., 458 S.W.3d 387, 397 (Mo.App.E.D.2014). "Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case. For this reason, standing cannot be waived." CACH, LLC v. Askew, 358 S.W.3d 58, 61 (Mo. banc 2012) (citation omitted).If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. This state requires that plaintiffs have a legally protectable interest in the litigation so as to be directly and adversely affected by its outcome. A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute. | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | "If a party is without standing to bring a particular claim, shall a court dismiss the claim because the court lacks the authority to decide the merits of the claim?" | Pretrial Procedure - Memo # 5715 - C - CK.docx | ROSS-003303116-ROSS-003303117 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5337 | Dunn v. Jasper Cty., 490 S.W.3d 723 | 307A+556.1 | "A party must have standing to bring an action in a Missouri court." Lebeau v. Commissioners of Franklin County, Missouri, 422 S.W.3d 284, 288 (Mo. banc 2014); see Manzara, 343 S.W.3d at 659 ("[s]tanding is an antecedent to the right to relief")."If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim." Weber, 342 S.W.3d at 323. Simply put, standing means that the party seeking relief must have some stake in the litigation. Lebeau, 422 S.W.3d at 288; Ste. Genevieve Sch. Dist. R"II v. Bd. of Aldermen of the City Ste. Genevieve, 66 S.W.3d 6, 10 (Mo. banc 2002). In the context of a declaratory judgment action, the plaintiff must have a legally protectable interest at stake in the outcome of the litigation. Lebeau, 422 S.W.3d at 288 | If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim. | "If a party is without standing to bring a particular claim, shall a court dismiss the claim because the court lacks the authority to decide the merits of the claim?" | 032952.docx | LEGALEASE-00143460-LEGALEASE-00143461 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5338 | Elliot v. Shultz, 29 Tenn. 234 | 307A+75 | The defendant took the deposition of B. H. Shepherd, the marshal, and filed it with the papers, but on the trial, declined to read it to the jury. The plaintiffs then offered to read said deposition, to which the defendant objected, on the ground that the answers of the witness contained illegal matter; but the court overruled the objection, and the deposition was read.Where a deposition is taken by either party to a suit, and it is filed, such party may decline to read it on trial, and may impeach the credit of the witness who gave the testimony contained in it. | Where a deposition is taken by either party to a suit, and it is filed, such party may decline to read it on trial, and may impeach the credit of the witness who gave the testimony contained in it. | "Where a deposition is taken by either party to a suit, and it is filed, may such party decline to read it on trial?" | 033024.docx | LEGALEASE-00143566-LEGALEASE-00143567 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 5339 | Rubio v. Home Depot, U.S.A., 188 S.W.3d 26 | 307A+684 | A motion to dismiss for lack of subject matter jurisdiction is a proper means of raising the workers compensation law as a defense to a common law tort action. James v. Poppa, 85 S.W.3d 8, 9 (Mo. banc 2002). "A court shall dismiss the action whenever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction. Rule 55.27 (g) (3). As the term appears suggests, the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction." Id. | A court shall dismiss an action whenever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction; the quantum of proof is not high, as it must appear by the preponderance of the evidence that the court is without jurisdiction. V.A.M.R. 55.27(g)(3). | Shall a court dismiss an action whenever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction? | 033425.docx | LEGALEASE-00142670-LEGALEASE-00142671 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 5340 | Moody v. Frazeysburg, 167 Ohio App. 3d 106 | 307A+554 | Appellee filed a motion to dismiss pursuant to Civ.R. 12(B)(1). Civ.R. 12(B)(1) permits dismissal when the trial court lacks jurisdiction over the subject matter of the litigation. The standard of review for a dismissal for want of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. Prosen v. Dimora (1992), 79 Ohio App.3d 120, 606 N.E.2d 1050; State ex rel. Bush v. Spurlock (1989), 42 Ohio St.3d 77, 537 N.E.2d 641. This determination involves a question of law that we will review de novo. Shockey v. Fouty (1995), 106 Ohio App.3d 420, 666 N.E.2d 304. Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd v. Faber (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. In determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, a court is not confined to the allegations of the complaint and may consider material pertinent to the inquiry without converting it into a motion for summary judgment. Southgate Dev. Corp. v. Columbia Gas Transm. Corp. (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus. | The standard of review for a dismissal for want of subject-matter jurisdiction is whether any cause of action cognizable by the forum has been raised in the complaint; this determination involves a question of law that the Court of Appeals will review de novo. Rules Civ.Proc., Rule 12(B)(1). | Is the standard of review for a dismissal for want of subject-matter jurisdiction whether any cause of action cognizable by the forum has been raised in the complaint? | Pretrial Procedure - Memo # 6055 - C - SS.docx | ROSS-003289551-ROSS-003289552 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5341 | U.S. Bank Nat. Ass'n v. Martinez, 188 So. 3d 107 | 307A+746 | Florida Rule of Civil Procedure 1.200(c) provides that if a party fails to attend either a pretrial or case management conference, the court may "dismiss the action, strike the pleadings, limit proof or witnesses, or take any other appropriate action." However, the sanction must be commensurate with the offense. Drakeford v. Barnett Bank of Tampa, 694 So.2d 822, 824 (Fla. 2d DCA 1997). | The sanction imposed by a trial court for a party's failure to attend a pretrial or case management conference must be commensurate with the offense. West's F.S.A. RCP Rule 1.200(c). | Should the sanction imposed by a trial court for a party's failure to attend a pretrial or case management conference be commensurate with the offense? | 033517.docx | LEGALEASE-00142274-LEGALEASE-00142275 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 5342 | Dalot v. Smith, 551 A.2d 448 | 307A+560 | 1 Field, McKusick & Wroth, Maine Civil Practice, " 4.1 at 58 (2nd ed.1970). Although we have not previously decided the question, we now conclude that excessive or unreasonable delay in service may be a ground for dismissal unless shown to be the result of mistake or excusable neglect. Moreover, our review of the record reveals no error in the court's refusal to find excusable neglect. | Excessive or unreasonable delay in service of process may be ground for dismissal unless shown to be result of mistake or excusable neglect. Rules Civ.Proc., Rule 3. | Is excessive or unreasonable delay in service of process the grounds for dismissal unless shown to be a result of mistake or excusable neglect? | 033720.docx | LEGALEASE-00143099-LEGALEASE-00143100 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 5343 | Yeager v. Yeager, 228 N.C. App. 562 | 307A+554 | In deciding a motion to dismiss under Rule 12(b)(1), the trial court "may consider and weigh matters outside the pleadings." Emory v. Jackson Chapel First Missionary Baptist Church, 165 N.C.App. 489, 491, 598 S.E.2d 667, 670 (2004) (citation omitted). | In deciding a motion to dismiss for lack of subject matter jurisdiction, a trial court may consider and weigh matters outside the pleadings. Rules Civ.Proc., Rule 12(b)(1), West's N.C.G.S.A. S 1A-1. | "In deciding a motion to dismiss for lack of subject matter jurisdiction, may a trial court consider and weigh matters outside the pleadings?" | 033845.docx | LEGALEASE-00143015-LEGALEASE-00143016 | Condensed, Order, SA, Sub | 0.21 | 1 | 1 | 1 | 1 | 1 |
| 5344 | Mohr v. Mohr, 859 N.W.2d 377 | 307A+560 | This statute states that an "action is commenced on the date the complaint is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." The language of " 25"217 providing for dismissal of unserved petitions is self-executing and mandatory. Dillion v. Mabbutt, supra. The only way to ensure that an unserved action stands dismissed, as required by statute, is to hold such dismissal occurs by operation of law, without predicate action by the trial court. See Vopalka v. Abraham, 260 Neb. 737, 619 N.W.2d 594 (2000). Once an action is dismissed by operation of law, any further orders by the district court, except to formalize the dismissal, are a nullity. See id. | Under statute providing for dismissal of unserved petitions, an action is commenced on the date the complaint is filed with the court; the action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed. Neb. Rev. Stat. S 25-217. | "Under a statute providing for dismissal of un-served petitions, when shall the action stand dismissed?" | Pretrial Procedure - Memo # 6401 - C - SK.docx | ROSS-003288312-ROSS-003288313 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 5345 | Montgomery Cty. v. Waters Landing Ltd. P'ship, 99 Md. App. 1 | 371+2060 | The line that separates an excise tax from a property tax is a difficult one to draw, and courts have not fully succeeded in developing a truly useful definition of either concept." Weaver v. Prince George's County, 281 Md. 349, 356, 379 A.2d 399 (1977) (citing Blaustein v. Tax Comm'n, 176 Md. 423, 426, 4 A.2d 861 (1939)). A three-part test, however, has been developed to help distinguish between property and excise taxes, which is: (1) the designation placed on the tax by the legislature; (2) the subject matter of the tax; and (3) the incidents of the tax, i.e., the manner in which it is assessed and the measure of the tax. Id. | Factors to consider under three-part test to help distinguish between "property tax" and "excise tax" are: designation placed on tax by legislature, subject matter of tax, and incidents of tax, i.e., manner in which it is assessed and measure of tax. | "What factors are considered under the three-part test to help distinguish between ""property tax"" and ""excise tax""?" | Taxation - Memo # 687 - C - KS.docx | ROSS-003290093-ROSS-003290094 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5346 | Broward Cty. v. Eller Drive Ltd. P'ship, 939 So. 2d 130 | 371+2060 | Although the lessor is given a degree of control over the building, we see nothing in the lease which would divest Eller Drive, during the term of the lease, of the ownership interest that any entity would ordinarily possess over a building which it constructed with its own funds and possesses. "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding." Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226 (1939). In short, the lease provides Eller Drive with sufficient dominion over the building to conclude that Eller Drive owns the structure. For example, although Eller Drive is obligated to "endeavor to obtain tenants whose business shall be supportive of and contributes to the development of Port Everglades as an international business and maritime center," Eller Drive is not required to refuse other potential tenants in favor of the preferred tenants. Nor is Eller Drive required to obtain Broward County's permission before leasing "office space or other facilities in the improvements." In our view, the conclusion that Eller Drive owns the building during the term of the lease is buttressed by the provision specifically providing that at the end of the term of the lease, the improvements located on the demised land "shall be and become" the property of Broward County. | In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding. | In the field of taxation are the administrators of the laws and the courts concerned with substance and realities and that formal written documents are not rigidly binding? | 045705.docx | LEGALEASE-00142358-LEGALEASE-00142359 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5347 | Ivax Corp. v. B. Braun of Am., 286 F.3d 1309 | 25T+182(1) | Furthermore, an agreement to arbitrate, "just like any other contract ..., may be waived." See e.g., Burton-Dixie Corp. v. Timothy McCarthy Const. Co., 436 F.2d 405, 407 (5th Cir.1971). In determining whether a party has waived its right to arbitrate, we have established a two-part test. First, we decide if, "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right," and, second, we look to see whether, by doing so, that party "has in some way prejudiced the other party." S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir.1990) (citations omitted). | Court uses two-part test in determining whether a party has waived its right to arbitrate, under which it first decides if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and second, whether by doing so that party has in some way prejudiced the other party. | What test do courts use to determine whether a party has waived its right to arbitrate? | 007724.docx | LEGALEASE-00144926-LEGALEASE-00144927 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5348 | Arndt v. United States, 222 F.2d 484 | 34+20.8(1) | A different result is reached when the record is examined to ascertain whether the proceedings before the draft boards were conducted in obedience to constitutional and legal requirements, and the judgment must be reversed for failure so to do. These boards have been invested with great authority over the lives and actions of the people, and that authority must be exercised only after scrupulous observance of the protective safeguards provided by the Constitution and Statutes. | Draft boards have been invested with great authority over lives and actions of people, and that authority must be exercised only after scrupulous observance of protective safeguards provided by Constitution and statutes. | Should the authority of selective service boards be exercised only after scrupulous observance of the protective safeguards provided by the constitution and statutes? | 008684.docx | LEGALEASE-00144666-LEGALEASE-00144667 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 5349 | United States v. Whitfield, 590 F.3d 325 | 63+1(2) | Appellants contend that they should not be considered agents of the AOC under section 666, because the agency funds under their control were entirely unrelated to and separate from the federal funds received by the AOC. This court has held that "[a]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance." United States v. Moeller, 987 F.2d 1134, 1137 (5th Cir.1993). In Phillips, we observed that "the funds in question need not be purely federal, nor must the conduct in question have a direct effect on federal funds. The statute possibly can reach misuse of virtually all funds of an agency that administers the federal program in question." 219 F.3d at 411 (citing Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 473"74, 139 L.Ed.2d 352 (1997)). | Although the conduct prohibited by the statute governing federal program bribery need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance. 18 U.S.C.A. S 666. | "Under law, with regard to the prohibited conduct that affect administration of federal funds, should there be some nexus between the criminal conduct and the agency receiving federal assistance?" | 011664.docx | LEGALEASE-00144329-LEGALEASE-00144330 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5350 | People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van, 177 Ill. 2d 314 | 302+11 | Whether a particular allegation is deemed to be an ultimate fact or a conclusion is a matter to be determined by a careful consideration of the needs of administering particular litigation. Van Dekerkhov v. City of Herrin, 51 Ill.2d 374, 376, 282 N.E.2d 723 (1972). In the context of a forfeiture proceeding, we believe that a complaint alleging that currency is drug related must provide some supporting detail that would provide notice to a claimant of the nature of the drug connection. Such factual detail is acutely necessary in the context of a civil forfeiture action, because the police may summarily seize property without judicial sanction. 720 ILCS 570/505(b)(4) (West 1994). Thus, an appropriate motion challenging the factual sufficiency of the State's complaint provides the first opportunity for a claimant to challenge the seizure in order to obtain the return of property wrongfully seized. | Whether particular allegation is deemed to be ultimate fact or conclusion is matter to be determined by careful consideration of needs of administering particular litigation. | "Is the determination of whether a particular allegation is a fact or conclusion, a matter to be determined by careful consideration of needs of administering particular litigation?" | 023510.docx | LEGALEASE-00143804-LEGALEASE-00143805 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5351 | Jay Zabel & Assocs., Ltd. v. Compass Bank, 527 S.W.3d 545 | 307A+554 | If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show that the court has personal jurisdiction over the nonresident defendant. Predator Downhole Inc., 504 S.W.3d at 402. A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis. Id. | A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis. | Should a court dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis? | 032681.docx | LEGALEASE-00144255-LEGALEASE-00144256 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5352 | Manifold v. Ragaglia, 94 Conn. App. 103 | 307A+554 | Although a motion to dismiss is certainly the preferred means of challenging the court's subject matter jurisdiction, we know of no authority for the proposition that subject matter jurisdiction can never be challenged through any other procedural vehicle, most importantly by means of a motion for summary judgment. In fact, in the present case, Creutz and Backus filed a motion for summary judgment based on a claim that they were statutorily immune pursuant to General Statutes " 17a"101e (b). See Manifold v. Ragaglia, supra, 272 Conn. at 411, 862 A.2d 292. The trial court, Gordon, J., granted the motion, and our Supreme Court affirmed the judgment. Although the issue was not before that court, it is noteworthy that the Supreme Court did not indicate that a motion for summary judgment is an improper procedural vehicle through which to address a claim of statutory immunity. Moreover, we are persuaded that the circumstances of this case provide strong support for the proposition that a motion for summary judgment can and should be used to address claims for lack of subject matter jurisdiction in certain circumstances, particularly when, as here, a motion to dismiss has been denied, but additional discovery may provide the court with further evidence on which to decide the claim. | Although a motion to dismiss is the preferred means of challenging the court's subject matter jurisdiction, there is no authority for the proposition that subject matter jurisdiction can never be challenged through any other procedural vehicle, most importantly by means of a motion for summary judgment. | Can subject matter jurisdiction be challenged through any other procedural vehicle other than a motion to dismiss? | Pretrial Procedure - Memo # 5761 - C - VP.docx | ROSS-003289445-ROSS-003289446 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5353 | Wilder Chiropractic v. State Farm Fire & Cas. Co., 2014 IL App (2d) 130781 | 307A+560 | "No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions." Kole v. Brubaker, 325 Ill.App.3d 944, 949, 259 Ill.Dec. 649, 759 N.E.2d 129 (2001). "[T]he determination of whether the defendant has established a prima facie case of lack of diligence must be made on a case-by-case basis." Id. The court in Kole suggested that, in determining whether a prima facie case was made, the court should consider "any patently unusual circumstances" that would have "prevented or otherwise hindered [the] plaintiff's ability to serve [the] defendants." Id. | No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions in delaying service on defendant. Sup.Ct.Rules, Rule 103(b). | Does no absolute time frame exist that will shift the burden and require the plaintiff to offer an explanation for his or her actions in delaying service on a defendant? | Pretrial Procedure - Memo # 6147 - C - CK.docx | LEGALEASE-00034018-LEGALEASE-00034019 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | 1 |
| 5354 | Christian v. Lincoln Auto. Co., 403 Ill. App. 3d 1038 | 307A+560 | The policy factor favoring adjudication of controversies on the merits is not an appropriate factor for consideration, when objectively determining whether a plaintiff exercised reasonable diligence to obtain service on a defendant. | The policy factor favoring adjudication of controversies on the merits is not an appropriate factor for consideration, when objectively determining whether a plaintiff exercised reasonable diligence to obtain service on a defendant. Sup.Ct.Rules, Rule 103(b). | Is the policy factor favoring adjudication of controversies on the merits not an appropriate factor for consideration? | 033592.docx | LEGALEASE-00143808-LEGALEASE-00143809 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |
| 5355 | Voltz v. Dyess, 148 So. 3d 425 | 307A+560 | We hold, therefore, that a trial court is required to give plaintiffs at least 14 days' notice before dismissing an action against a defendant on whom service was not effected. See Rule 4(b), Ala. R. Civ. P.; Moffett, 909 So.2d at 826 ("[T]he trial court is required to give the plaintiff 14 days' notice before it dismisses an action against the defendants on whom service was not effected." (emphasis added)); and Moore, 60 So.3d at 933 ("[T]he text of the rule does require notice of a dismissal for a failure to timely serve a defendant."). | A trial court is required to give plaintiffs at least 14 days' notice before dismissing an action against a defendant on whom service was not effected. Rules Civ.Proc., Rule 4(b). | Is a trial court required to give plaintiffs at least 14 days' notice before dismissing an action against a defendant on whom service was not effected? | Pretrial Procedure - Memo # 6164 - C - AP.docx | ROSS-003288219-ROSS-003288220 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 5356 | Wilder Chiropractic v. State Farm Fire & Cas. Co., 2014 IL App (2d) 130781 | 307A+560 | "No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions." Kole v. Brubaker, 325 Ill.App.3d 944, 949, 259 Ill.Dec. 649, 759 N.E.2d 129 (2001). "[T]he determination of whether the defendant has established a prima facie case of lack of diligence must be made on a case-by-case basis." Id. The court in Kole suggested that, in determining whether a prima facie case was made, the court should consider "any patently unusual circumstances" that would have "prevented or otherwise hindered [the] plaintiff's ability to serve [the] defendants." Id. | The determination of whether the defendant has established a prima facie case of lack of diligence in serving defendant must be made on a case-by-case basis. Sup.Ct.Rules, Rule 103(b). | Should the determination of whether the defendant has established a prima facie case of lack of diligence in serving defendant be made on a case-by-case basis? | 033600.docx | LEGALEASE-00143832-LEGALEASE-00143833 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5357 | Young v. Estate of Sweeney, 808 N.E.2d 1217 | 307A+554 | Subject matter jurisdiction concerns a court's ability to hear and decide a case based on the class of cases to which it belongs. Warrick County v. Weber, 714 N.E.2d 685, 687 (Ind.Ct.App.1999). Whether we have subject matter jurisdiction is an issue we should raise sua sponte if the parties do not. Id. As we have previously explained, "dismissal for lack of subject matter jurisdiction takes precedence over the determination of and action upon other substantive and procedural rights of the parties." Id. (quoting Gorman v. Northeastern REMC, 594 N.E.2d 843, 845 (Ind.Ct.App.1992), decision clarified on denial of reh'g 597 N.E.2d 366 (Ind.Ct.App.1992), trans. denied). Jurisdiction is a question of law we review de novo. Id. | Dismissal for lack of subject matter jurisdiction takes precedence over the determination of and action upon other substantive and procedural rights of the parties. | Does a dismissal for lack of subject-matter jurisdiction take precedence over the determination of and action upon other substantive and procedural rights of the parties? | 033619.docx | LEGALEASE-00143878-LEGALEASE-00143879 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5358 | Meier v. Senecaut, 641 N.W.2d 532 | 307A+560 | By allowing the court to dismiss a petition after ninety days, the rule now establishes the standard for presumptive abuse. Thus, courts must now simply decide if the plaintiff has shown justification for the delay. | By allowing the court to dismiss a petition after 90 days from time petition was filed, the rule governing service of an original notice establishes the standard for presumptive abuse. Rules Civ.Proc., Rule 49 (2001). | "By allowing the court to dismiss a petition after 90 days from the time a petition was filed, does the rule governing service of an original notice establish the standard for presumptive abuse?" | 033676.docx | LEGALEASE-00144175-LEGALEASE-00144176 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 5359 | Rucker v. Taylor, 828 N.W.2d 595 | 307A+690 | Because the substantive rights of a plaintiff can be at stake through the application of a statute of limitations, it is important that the good-cause standard under rule 1.302(5) not be applied too narrowly. As observed under the analogous federal rule, [a] dismissal without prejudice under Rule 4(m) for failure to serve process is intended to leave the plaintiff in the same position as if the action never had been filed. This raises a difficult question when the statute of limitations has expired between the filing of the complaint and the dismissal of the action for noncompliance with Rule 4(m). Although technically the dismissal is without prejudice, realistically if the plaintiff's action is now barred by the running of the limitations period his or her rights have effectively been terminated. | Dismissal without prejudice under for failure to serve process is intended to leave the plaintiff in the same position as if the action never had been filed. I.C.A. Rule 1.302(5). | Is dismissal without prejudice for failure to serve process intended to leave the plaintiff as if the action was never filed? | 033879.docx | LEGALEASE-00143858-LEGALEASE-00143859 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5360 | Estate of Hough ex rel. Lemaster v. Estate of Hough ex rel. Berkeley Cty. Sheriff, 205 W. Va. 537 | 307A+560 | The first issue is whether the circuit court was correct in finding that the appellant failed to show good cause for not having effected service of the summons and complaint within 180 days. According to W.Va.R.Civ.P. 4(l ), in effect during the events at issue: If service of the summons and complaint is not made upon a defendant within 180 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. In Syllabus Point 2 of State ex rel. Charleston Med. v. Kaufman, 197 W.Va. 282, 475 S.E.2d 374 (1996), we explained: Dismissal under Rule 4(l ) of the West Virginia Rules of Civil Procedure is mandatory in a case in which good cause for the lack of service is not shown, and a plaintiff whose case is subject to dismissal for noncompliance with Rule 4(l ) has two options to avoid the consequence of the dismissal: (1) To timely show good cause for not having effected service of the summons and complaint, or (2) to refile the action before any time defenses arise and timely effect service under the new complaint. | Dismissal for failure to serve the summons and complaint within 180 days after the complaint is filed is mandatory in a case in which good cause for the lack of service is not shown. Rules Civ.Proc., Rule 4(l) (1997). | Is dismissal for failure to serve the summons and complaint within 180 days after the complaint is filed mandatory in a case in which good cause for the lack of service is not shown? | 033995.docx | LEGALEASE-00144695-LEGALEASE-00144696 | Condensed, Order, SA, Sub | 0.83 | 1 | 1 | 1 | 1 | 1 |
| 5361 | Alvarez v. Alvarez, 638 So. 2d 153 | 307A+746 | The facts of this case are very similar to the facts considered by this court in Insua v. World Wide Air, Inc., 582 So.2d 102 (Fla. 2d DCA 1991). There this court recognized that Florida Rule of Civil Procedure 1.200(c) authorizes a trial court to impose sanctions upon a party for failure to attend a pretrial conference. Such sanctions include the striking of pleadings. In Insua, this court repeated its previous statement that when a party fails to comply with a pretrial order, the sanction imposed must be commensurate with the offense. The rule followed by this court is that the imposition of the most severe sanctions contemplated by the rules should be reserved for those occasions where the violation is flagrant, persistent, willful or otherwise aggravated. | Imposition of most severe sanctions contemplated by rules should be reserved for those occasions where violation is flagrant, persistent, willful, or otherwise aggravated. | "Should imposition of the most severe sanctions contemplated by rules be reserved for those occasions where violation is flagrant, persistent, willful, or otherwise aggravated?" | Pretrial Procedure - Memo # 6587 - C - DHA.docx | ROSS-003318384-ROSS-003318385 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5362 | Hanna v. City of Chicago, 382 Ill. App. 3d 672 | 307A+552 | The granting of a motion to dismiss pursuant to section 2"619(a)(9) of the Code of Civil Procedure is reviewed de novo. Sadler v. Creekmur, 354 Ill.App.3d 1029, 1039, 290 Ill.Dec. 289, 821 N.E.2d 340 (2004); 735 ILCS 5/2"619(a)(9) (West 2006). Dismissal pursuant to section 2"619(a)(9) should be entered when the plaintiff's claim is barred by "affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2"619(a)(9) (West 2006)), such as when a defense is presented that "negates an alleged cause of action completely." ChiCorp, Inc. v. Bower, 336 Ill.App.3d 132, 136, 270 Ill.Dec. 209, 782 N.E.2d 768 (2002). When the issues have ceased to exist and there is no longer an actual controversy between the parties, the alleged cause of action has been negated and should be dismissed as moot. People ex rel. Newdelman v. Weaver, 50 Ill.2d 237, 241, 278 N.E.2d 81 (1972). Mootness occurs once the plaintiff has secured what he basically sought and a resolution of the issues could not have any practical effect on the existing controversy. Newdelman, 50 Ill.2d at 241, 278 N.E.2d 81. A mooted action should be dismissed out of "concern that parties to a resolved dispute lack a sufficient personal stake in the outcome to assure that there is an adversarial relationship that sharpens the presentation of issues upon which the courts largely depend for illumination of difficult questions." Fisch v. Loews Cineplex Theatres, Inc., 365 Ill.App.3d 537, 539, 303 Ill.Dec. 10, 850 N.E.2d 815 (2005). | When the issues have ceased to exist and there is no longer an actual controversy between the parties, the alleged cause of action has been negated and should be dismissed as moot. | Is the alleged cause of action negated and to be dismissed as moot when the issues have ceased to exist and there is no longer an actual controversy between the parties? | 034206.docx | LEGALEASE-00144724-LEGALEASE-00144725 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5363 | In re 2007 Admin. of Appropriations of Waters of Niobrara River, 278 Neb. 137 | 307A+552 | Mootness differs from standing. Mootness refers to events occurring after the filing of suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. Although a moot case is subject to summary dismissal, it does not necessarily prevent a court from exercising jurisdiction. But if an exception does not apply, a court must dismiss a case when the issues are no longer alive because the litigants lack a personal interest in their resolution. Dismissal is required because the court or tribunal can no longer give any meaningful relief. The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. A case is not moot unless a court cannot fashion some meaningful form of relief, even if that relief only partially redresses the prevailing party's grievances. A court assesses a plaintiff's personal interest under the framework of standing at the commencement of the litigation and under mootness thereafter. | Under mootness doctrine, if an exception does not apply, a court must dismiss a case when the issues are no longer alive because the litigants lack a personal interest in their resolution. | Should a court dismiss a case when the issues are no longer alive because the litigants lack a personal interest in their resolution? | 034259.docx | LEGALEASE-00144781-LEGALEASE-00144782 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 5364 | Wilson Foods Corp. v. Turner, 218 Ga. App. 74 | 307A+746 | In view of our holding in Division 1 above, and it being unlikely that such error will recur in the event of retrial, we will not address appellant's claim that the trial court erred in failing to allow it to introduce the deposition testimony of Mr. Moore on the grounds the witness had not been named in the pretrial order. However, a pretrial order is ineffective for any purpose until it is signed by the trial judge. Roman v. Terrell, 195 Ga.App. 219(1), 393 S.E.2d 83. Moreover, the harsh sanction of precluding the calling of witnesses not listed in a valid pretrial order cannot be upheld if less harsh sanctions are available and appropriate. See generally, Ambler v. Archer, 230 Ga. 281, 289(1), 196 S.E.2d 858. | Sanction of precluding calling of witnesses not listed in valid pretrial order cannot be upheld if less harsh sanctions are available and appropriate. | Can the sanction of precluding calling of witnesses not listed in valid pretrial order be upheld if less harsh sanctions are available and appropriate? | Pretrial Procedure - Memo # 6651 - C - SJ.docx | ROSS-003288416-ROSS-003288417 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5365 | Duncan v. Johnson, 14 So. 3d 760 | 307A+674 | Our trial courts possess an inherent authority to dismiss frivolous complaints, sua sponte, even prior to service of process on the defendants. See Blanks v. State, 594 So.2d 25, 28 (Miss.1992) ("If the complaint is frivolous, process need not be issued. In this event, there would be no occasion for the defendants to file an answer to the prisoner complaint."). See also Bilbo v. Thigpen, 647 So.2d 678, 684 (Miss.1994). Although a trial court is required to give a liberal construction to pro se civil rights complaints, see Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.1994), we review a trial court conclusion that a complaint is frivolous for abuse of discretion. Huggins v. State, 928 So.2d 981, 983 (Miss.Ct.App.2006) (citing Dock v. State, 802 So.2d 1051, 1056(Miss.2001)). The power to dismiss a frivolous complaint is distinct from a trial court authority to dismiss for failure to state a claim under Rule 12 (b) (6). See Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A trial court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327, 109 S.Ct. 1827. | Trial courts possess an inherent authority to dismiss frivolous complaints, sua sponte, even prior to service of process on the defendants. | "Do courts possess an authority to dismiss frivolous complaints, even prior to service of process on the defendants?" | 034395.docx | LEGALEASE-00144999-LEGALEASE-00145000 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 5366 | Whitten v. Whitten, 956 So. 2d 1093 | 307A+560 | The plaintiff bears the burden to demonstrate the existence of good cause for the failure to timely serve process. Id at 548. A showing of good cause requires at least as much as would establish excusable neglect, and must be more than "simple inadvertence or mistake of counsel or ignorance of the rules." Watters v. Stripling, 675 So.2d 1242, 1243 (Miss.1996). "A plaintiff must be diligent in serving process if he is to show good cause in failing to serve process within 120 days." Bang v. Pittman, 749 So.2d 47, 52 (Miss.1999) (overruled on other grounds). In Holmes, the court stated that good cause may be found when the plaintiff failure to effect timely service was due to the conduct of a third person, such as the process server, or when the defendant has evaded service of process or has engaged in misleading conduct. Holmes, 815 So.2d at 1186. | The plaintiff bears the burden to demonstrate the existence of good cause for the failure to timely serve process in order to prevent dismissal of the action. Rules Civ.Proc., Rule 4(h). | Does the plaintiff bear the burden to demonstrate the existence of good cause for the failure to timely serve process in order to prevent dismissal of the action? | 034478.docx | LEGALEASE-00143945-LEGALEASE-00143946 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5367 | Lewis v. Dillon, 352 Ill. App. 3d 512 | 307A+560 | The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process and to prevent the circumvention of the statute of limitations. See Segal v. Sacco, 136 Ill.2d 282, 286"87, 144 Ill.Dec. 360, 555 N.E.2d 719, 720 (1990) ("It has long been noted that "[p]revention of intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run, was a primary reason for the passage of Supreme Court Rule 103(b) and its predecessors. [Citations.]" "); see also Wilk v. Wilmorite, Inc., 349 Ill.App.3d 880, 887, 285 Ill.Dec. 945, 812 N.E.2d 765, 771 (2004)("Rule 103(b) further aims to protect defendants from unnecessary delay in the service of process so that they are afforded a fair opportunity to investigate. | Purpose of rule providing for dismissal of case for failure to exercise reasonable diligence to obtain service of process is to protect defendants from unnecessary delay in service of process and to prevent circumvention of statute of limitations. Sup.Ct.Rules, Rule 103(b). | Is the purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process and to prevent the circumvention of the statute of limitations? | 034487.docx | LEGALEASE-00144105-LEGALEASE-00144106 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 5368 | Whitten v. Whitten, 956 So. 2d 1093 | 307A+560 | The plaintiff bears the burden to demonstrate the existence of good cause for the failure to timely serve process. Id. at 548. A showing of good cause requires at least as much as would establish excusable neglect, and must be more than "simple inadvertence or mistake of counsel or ignorance of the rules." Watters v. Stripling, 675 So.2d 1242, 1243 (Miss.1996). "A plaintiff must be diligent in serving process if he is to show good cause in failing to serve process within 120 days." Bang v. Pittman, 749 So.2d 47, 52 (Miss.1999) (overruled on other grounds). In Holmes, the court stated that good cause may be found when the plaintiff failure to effect timely service was due to the conduct of a third person, such as the process server, or when the defendant has evaded service of process or has engaged in misleading conduct. Holmes, 815 So.2d at 1186. Holmes expressly held that good faith negotiations between the parties are not good cause that will excuse timely service of process. Id. at 1186. In Montgomery, the court found that the unsuccessful efforts of a newly associated law firm to confer with its clients were insufficient to establish good cause excusing untimely service of process when considered along with the associating firm failure to effect timely service. Montgomery, 910 So.2d at 547"48. Montgomery also recognized that, if it appears that process cannot be served within the 120 day period, a diligent plaintiff will request additional time to serve process and that such a request supports a later allegation that good cause existed for the failure to effect timely service. Id. | A plaintiff must be diligent in serving process if he is to show good cause in failing to serve process within 120 days to avoid dismissal of action. Rules Civ.Proc., Rule 4(h). | Should a plaintiff be diligent in serving process if he is to show good cause in failing to serve process within 120 days to avoid dismissal of action? | 034510.docx | LEGALEASE-00143790-LEGALEASE-00143791 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5369 | Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty., 301 S.W.3d 196 | 307A+552 | There has been much scholarly discussion regarding the doctrinal foundations of the mootness doctrine. In federal courts, the doctrine has been traditionally understood to rest on (1) the "case and controversy" requirements of Article III, Section 2 and (2) the more discretionary doctrines of remedial utility and judicial administration. See 1 Treatise on Constitutional Law " 2.13(c)(i), at 261; 13B Federal Practice and Procedure " 3533.1, at 725. This case does not require us to excavate the legal foundations of the mootness doctrine in Tennessee. In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case. | In the absence of an explicit constitutional imperative, decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the facts and circumstances of the case. | "Do decisions to dismiss a case on the ground of mootness, require the exercise of judgment based on the facts and circumstances of the case?" | 034591.docx | LEGALEASE-00144462-LEGALEASE-00144463 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5370 | Rios v. Moore, 902 So. 2d 181 | 302+359 | A trial court has the authority to dismiss actions based on fraud and collusion, as well as to strike sham pleadings. See Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978). However, this power should be "cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion or other similar wrongdoing." Id. at 59. Here, Rios voluntarily disclosed her prior accident to the Moores and agreed to produce the name of her treating physician. A review of the record indicates that Rios's explanation, along with the complete transcript of relevant testimony and medical records, indicates that she committed no fraud. Her actions were a far cry from the plaintiff's actions in Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011 (Fla. 4th DCA 1997), and Cox v. Burke, 706 So.2d 43 (Fla. 5th DCA 1998), cited by the Moores. Although Rios did not accurately describe her injuries, her actions did not rise to the level of fraudulent, willful or intentional conduct. Any inconsistencies or confusion in the testimony would be the proper subject of cross-examination or impeachment. The detailed, thoughtful order of the trial court notwithstanding, we hold that the facts did not rise to the level of fraud or collusion as to require the court to dismiss Rios's claim. Accordingly, the order appealed from is reversed and the cause remanded to the trial court for further proceedings. | Trial court has the authority to dismiss actions based on fraud and collusion, as well as to strike sham pleadings, but this power should be cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing. | "Can a court dismiss action when a party blatantly refuses to comply with demand, in defiance of court authority?" | 035081.docx | LEGALEASE-00144564-LEGALEASE-00144565 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 5371 | Bass v. City of Pembroke Pines, 991 So. 2d 1008 | 307A+684 | A trial court possesses the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court.Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003). When imposing this harshest of sanctions, trial courts should weigh the "policy favoring adjudication on the merits" with the need to "maintain the integrity of the judicial system." Id. "The integrity of the civil litigation process depends on truthful disclosure of facts. A system that depends on an adversary's ability to uncover falsehoods is doomed to failure, which is why this kind of conduct must be discouraged in the strongest possible way." Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998). | A trial court possesses the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court. | Does a trial court possess the discretion to dismiss a complaint when there is clear and convincing evidence that the plaintiff has committed fraud upon the court? | 035412.docx | LEGALEASE-00145007-LEGALEASE-00145008 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5372 | Application of Kaul, 261 Kan. 755 | 371+2003 | There are well-established rules of statutory and constitutional construction applicable to tax matters: The power to levy taxes is inherent in the power to govern, but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed. Nothing is taxable unless clearly within the grant of the power to tax. Robbins"Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co., 229 Kan. 511, 512, 625 P.2d 494 (1981). The right to tax is penal in nature, and this right must be strictly construed in favor of the taxpayer. See J.G. Masonry, Inc. v. Department of Revenue, 235 Kan. 497, 500, 680 P.2d 291 (1984). Tax statutes will not be extended by implication beyond the clear import of the language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. Director of Taxation v. Kansas Krude Oil Reclaiming Co., 236 Kan. 450, 455, 691 P.2d 1303 (1984). Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer. National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs, 228 Kan. 595, 597, 618 P.2d 1176 (1980). | Power to levy taxes is inherent in power to govern, but exercise of that power is dependent upon existence of legislation designating kinds of property to be taxed. | Is the power to levy taxes inherent in power to govern but exercise of that power is dependent upon existence of legislation designating kinds of property to be taxed? | 045685.docx | LEGALEASE-00144419-LEGALEASE-00144420 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5373 | PC Const. Co. v. City of Salisbury, 871 F. Supp. 2d 475 | 25T+182(1) | In general, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Fourth Circuit has concluded, however, that in certain cases nonsignatories may be bound to an arbitration provision within a contract executed by other parties. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir.2000). One way in which this may occur is through the doctrine of equitable estoppel. In the arbitration context, this doctrine "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that the other provisions of the same contract should be enforced to benefit him." Id. at 418. In other words, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a "direct benefit" from a contract containing an arbitration clause." Id. (internal quotations and citations omitted) (concluding that a nonsignatory was estopped from refusing to arbitrate because its "entire case hinge[d] on its asserted rights" under the contract containing the arbitration provision). | In the arbitration context, the doctrine of equitable estoppel recognizes a party may be estopped from asserting the lack of its signature on a written contract precludes enforcement of the contract's arbitration clause when it has consistently maintained the other provisions of the same contract should be enforced to benefit it; in other words, a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause. | What does the doctrine of equitable estoppel mean in the context of arbitration? | 007777.docx | LEGALEASE-00146436-LEGALEASE-00146437 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5374 | Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 712 F.2d 270 | 25T+182(1) | To determine whether a party has defaulted in proceeding with arbitration, thereby waiving the arbitration agreement, the court must analyze all the facts and circumstances. Martin Marietta Aluminum, Inc. v. General Electric Co., 586 F.2d 143 (9th Cir.1978).Prejudice and delay are significant factors the court must consider in applying the default provision of section 3 of the Federal Arbitration Act, 9 U.S.C. " 3. In re Mercury Construction Corp., 656 F.2d 933 (4th Cir.1981), aff'd sub nom. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., """U.S. """", 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Midwest Window Systems, Inc. v. Amcor Industries, Inc., 630 F.2d 535 (7th Cir.1980). | To determine whether party has defaulted in proceeding with arbitration, thereby waiving arbitration agreement, court must analyze all facts and circumstances. | Should a court analyze all the facts and circumstances to determine whether a party has defaulted in proceeding with arbitration thereby waving the arbitration agreement? | 007785.docx | LEGALEASE-00146446-LEGALEASE-00146447 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5375 | Allen v. Wilkinson, 129 F. Supp. 73 | 258A+520 | The petitioner, however, would have been guilty of a military offense under Article of War 54, 10 U.S.C. " 1526, now Article 83 of the Uniform Code of Military Justice, 50 U.S.C.A. " 677, and certainly, having continued to serve and receive pay after attaining age seventeen, with the parents having consented, the court-martial would have had jurisdiction of offenses committed during such service. Ex parte Hubbard, 182 F. 76, 81. In any event, as previously indicated, this Court would be bound by the determination of this disputed question of fact by the Military Court. Moreover, the overwhelming weight of authority is that neither a minor soldier or his parents, even where no consent has been given, may void such an enlistment or effect the release of such soldier when he is held for a military offense or is under sentence for a military offense. | Neither a minor soldier nor his parents, even where no consent has been given, may void an enlistment made while under age or effect release of such soldier when he is held for a military offense or is under sentence for a military offense. | Can a minor soldier or his parents void an enlistment or effect the release of such soldier when he is held for a military offense? | Armed Services - Memo 230 - JK.docx | ROSS-003288504-ROSS-003288505 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 5376 | Herrington v. Boatright, 633 S.W.2d 781 | 34+56 | The Veterans Administration policy, however, involves very different principles of law and the proceeds thereof are not necessarily payable as are proceeds from a private insurance policy. This policy is a National Service Life Insurance (NSLI) policy with the United States Government as the insurer. Policies of NSLI are contracts of the United States and possess the same legal incidents as other government contracts, and the validity and construction of such policies present questions of federal law. Woodward v. United States, 167 F.2d 774 (1948). | Insurance policies of National Service Life Insurance are contracts of the United States and possess same legal incidents as other government contracts, and validity and construction of such policies present questions of federal law. | Are National Service Life Insurance policies considered contracts of the United States? | Armed Services - Memo 280 - JK.docx | ROSS-003290803-ROSS-003290804 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 5377 | United States v. Kay, 359 F.3d 738 | 63+1(1) | None contend that the FCPA criminalizes every payment to a foreign official: It criminalizes only those payments that are intended to (1) influence a foreign official to act or make a decision in his official capacity, or (2) induce such an official to perform or refrain from performing some act in violation of his duty, or (3) secure some wrongful advantage to the payor. And even then, the FCPA criminalizes these kinds of payments only if the result they are intended to produce"their quid pro quo"will assist (or is intended to assist) the payor in efforts to get or keep some business for or with "any person." Thus, the first question of statutory interpretation presented in this appeal is whether payments made to foreign officials to obtain unlawfully reduced customs duties or sales tax liabilities can ever fall within the scope of the FCPA, i.e., whether the illicit payments made to obtain a reduction of revenue liabilities can ever constitute the kind of bribery that is proscribed by the FCPA. The district court answered this question in the negative; only if we answer it in the affirmative will we need to analyze the sufficiency of the factual allegations of the indictment as to the one element of the crime contested here. | Foreign Corrupt Practices Act (FCPA) did not criminalize every payment to foreign official, but only those payments intended to (1) influence foreign official to act or make decision in his official capacity, or (2) induce such official to perform or refrain from performing some act in violation of his duty, or (3) secure some wrongful advantage to payor, and Act criminalized such payments only if result they are intended to produce will assist, or is intended to assist, payor in efforts to get or keep some business. Securities Exchange Act of 1934, S 104(a), 15 U.S.C.A. S 78dd-2(a). | What kind of payments to foreign officials does FCPA criminalize? | 012327.docx | LEGALEASE-00145800-LEGALEASE-00145801 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 5378 | Hammerman v. Louis Watch Co., 7 A.D.2d 817 | 401+28 | Pursuant to sec. 182 of the Civil Practice Act an action, with certain exceptions not applicable here, must be tried in the county where one of the parties resided at the commencement of the action. It also provides that a person having a residence in more than one county shall be deemed a resident of either. One of the grounds for the defendant's motion for a change of venue is that none of the plaintiffs are bona fide residents of Sullivan County. In the affidavit, in support of the motion, made by the defendant's president it is stated that plaintiffs all reside with their families in New York City and that the address which the plaintiffs give at Kiamesha Lake is not their true residence. Further that the plaintiffs only have a jewelry concession at a hotel at Kiamesha Lake and that they only occasionally make business visits there at which times they stay overnight. In the opposing affidavit of Benjamin Hammerman it is stated that the plaintiffs actually reside at Kiamesha Lake where they maintain a residence although it is admitted that they also have a place of business and residence outside of Sullivan County. A supporting affidavit was filed by one, Irving Cohen, stating that he let premises "upon an all year basis to the plaintiffs who reside therein, occupy the same and actually sleep therein, in connection with the operation of their business'. Although it is true that a person may have more than one residence for venue purposes, to consider a place as such, he must stay there for some length of time and have the bona fide intent to retain the place as a residence with at least some degree of permanency (Hurley v. Union Trust Co. of Rochester, 244 App.Div. 590, 280 N.Y.S. 474; Bradley v. Plaisted, 277 App.Div. 620, 102 N.Y.S.2d 295). The mere assertion by plaintiffs that they reside at Kiamesha Lake where they have a place of business is not sufficient. It is apparent from the affidavits that the plaintiffs only visit Kiamesha Lake occasionally on business. Residence | Although it is true that person may have more than one residence for venue purposes, to consider a place as such, he must stay there for some length of time and have bona fide intent to retain place as residence with at least some degree of permanency. | What must a person do to consider a place as his residence? | 014508.docx | LEGALEASE-00145913-LEGALEASE-00145915 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 5379 | Bowman v. Benouttas, 519 S.W.3d 586 | 307A+746 | A trial court has the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery. See Waters v. Coker, No. M2007-01867-COA-RM-CV, 2008 WL 4072104, at (Tenn. Ct. App. Aug. 28, 2008); Tenn. R. Civ. P. 16.01. In situations where a party fails to comply with a trial court's scheduling order, Tenn. R. Civ. P. 16.06 provides: If a party or party's attorney fails to obey a scheduling or pretrial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just .... In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. Tenn. R. Civ. P. 16.06. However, "[i]t is within the trial judge's discretion to decide what orders, if any, to issue as a consequence of a party's failure to obey a scheduling order." Waters, 2008 WL 4072104. We review the trial court's decision under an abuse of discretion standard. Id. | It is within the trial judge's discretion to decide what orders, if any, to issue as a consequence of a party's failure to obey a scheduling order. Tenn. R. Civ. P. 16.06. | "Is it within the trial judge's discretion to decide what orders, if any, to issue as a consequence of a party's failure to obey a scheduling order?" | 033139.docx | LEGALEASE-00146009-LEGALEASE-00146011 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5380 | Ogden v. Gibbons, 5 N.J.L. 518 | 307A+726 | As to the postponement of the trial. A party who has encountered the expense of a preparation for the circuit is entitled to a trial, unless his adversary can satisfy the court that he has exhibited due diligence on his part but has not been able to come prepared, and that justice will probably not be done if the trial progresses. In ordinary cases, upon a first application for a postponement, an affidavit of the absence of a material witness who has been legally subp"naed is sufficient. But a second or third application by the same party naturally induces a suspicion that he is not so often unfortunate, but is seeking delay; and then, more particularity and more evidence is required. But whether it be the first or third application, it is always addressed to the sound discretion of the court and is refused or granted on such terms as justice to the parties requires. The judge before whom it is made has, in the manner and appearance and acts of the applicant, means of a correct decision with which the court at bar cannot be furnished. His determination of the question, therefore, affords strong presumption of correctness, but it is not conclusive. If a clear case of mistake on his part be made out, and we perceive that injustice has been done, the evil will be remedied by a new trial. But the inquiry always is, Has injustice been done? has the party been injured? If he have not, no good reason can be given why he should receive the favor of trying his cause over again. | Whether it be the first or third application, it is always addressed to the sound discretion of the court, and is refused or granted on such terms as justice to the parties requires. | Will an application addressed to the sound discretion of court be refused or granted on terms as justice to the parties requires? | Pretrial Procedure - Memo # 5843 - C - SS.docx | ROSS-003291356-ROSS-003291357 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5381 | Jones v. Ohio Edison Co., 2014-Ohio-5466 | 30+3212 | Subject-matter jurisdiction is the power conferred upon a court, either by constitutional provision or by statute, to decide a particular matter or issue on its merits. State ex rel. Jones v. Suster, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). A motion to dismiss for lack of subject-matter jurisdiction is made pursuant to Civ.R. 12(B)(1), and "[t]he standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). This court has noted, " "in determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, the trial court is not confined to the allegations of the complaint and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." " Kinder v. Zuzak, 11th Dist. Lake No. 2008"L"167, 2009-Ohio-3793, 2009 WL 2357800, quoting McHenry v. Industrial Com. of Ohio, 68 Ohio App.3d 56, 62, 587 N.E.2d 414 (4th Dist.1990). | The standard of review for a dismissal pursuant to rule allowing the defense of lack of subject matter jurisdiction to be made by motion is whether any cause of action cognizable by the forum has been raised in the complaint. Rules Civ.Proc., Rule 12(B)(1). | Is dismissal due to lack of subject matter jurisdiction inappropriate if any cause of action cognizable by the forum has been raised in the complaint? | 033181.docx | LEGALEASE-00145379-LEGALEASE-00145380 | Order, SA, Sub | 0.77 | 1 | 0 | 1 | 1 | 1 |
| 5382 | El Paso Mental Health & Mental Retardation Ctr. v. Crissman, 241 S.W.3d 578 | 307A+554 | When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex.App.-Austin 1998, no pet.). A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. City of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App.-Fort Worth 1999, pet.dism'd w.o.j.); State v. Benavides, 772 S.W.2d 271, 273 (Tex.App.-Corpus Christi 1989, writ denied). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. Texas Association of Business v. Texas Air Control Board, 852 S.W.2d 440, 446 (Tex.1993); City of Saginaw, 996 S.W.2d at 2. Subject matter jurisdiction is a legal question which we review de novo. City of Saginaw, 996 S.W.2d at 2; Texas Department of Health v. Doe, 994 S.W.2d 890, 892 (Tex.App.-Austin 1999, pet. dism'd by agr.). We consider the allegations in the petition and accept them as true. See City of Saginaw, 996 S.W.2d at 2"3. The plaintiff's jurisdictional pleadings are to be construed liberally in the plaintiff's favor and we look to the pleader's intent. See Texas Association of Business, 852 S.W.2d at 446. A court deciding a plea to the jurisdiction is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. Bland Independent School District v. Blue, 34 S.W.3d 547, 555 (Tex.2000); see County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.2002). | When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. | "When a lawsuit is barred by sovereign immunity, does the trial court lack subject matter jurisdiction and dismissal with prejudice is proper?" | 033183.docx | LEGALEASE-00145360-LEGALEASE-00145361 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5383 | Kramer v. Crout, 279 S.W.2d 932 | 307A+726 | Contestants' 5th point complains of the refusal of the Trial Court to grant their second motion for continuance. This motion was predicated primarily on the desire to give C. Gordon Martin, a handwriting expert, more time to examine and analyze the will. The record reflects that the will had been withdrawn for examination by Mr. Martin. Instead of Mr. Martin appearing and testifying, contestants filed this second motion for continuance. There was no showing then or on the motion for new trial what, if anything, the handwriting expert could testify to helpful to contestants. Further, the granting or refusing of a second motion for continuance is a matter in the discretion of the Trial Court, which will not be disturbed in the absence of a clear showing of an abuse of such discretion. No such abuse is here shown. | Granting or refusing of second motion for continuance is matter in discretion of trial court, which will not be disturbed in absence of clear showing of abuse of discretion. | Would a court grant or refuse the second motion for continuance which will not be disturbed in absence of clear showing of abuse of discretion? | Pretrial Procedure - Memo # 5883 - C - KS.docx | ROSS-003289004-ROSS-003289005 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5384 | Cronin v. Kottke Assocs., 2012 IL App (1st) 111632 | 307A+563 | Even if Rule 219 were inapplicable, however, the trial court possessed the power to enter sanctions, including a dismissal with prejudice, under these circumstances. In Sander, 166 Ill.2d at 65, 209 Ill.Dec. 623, 651 N.E.2d 1071, our supreme court found that apart from and independent of any authority granted by Rule 219(c), a trial court has the inherent authority to control its docket and impose sanctions for the failure to comply with court orders. "The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets." Id. at 66, 209 Ill.Dec. 623, 651 N.E.2d 1071; J.S.A. v. M.H., 224 Ill.2d 182, 196, 309 Ill.Dec. 6, 863 N.E.2d 236 (2007) (inherent authority allows a court to "prevent undue delays in the disposition of cases caused by abuses of the litigation process"). Pursuant to this inherent power, a court may dismiss a cause of action with prejudice where a party has deliberately and contumaciously disregarded the court's authority. Sander, 166 Ill.2d at 68, 209 Ill.Dec. 623, 651 N.E.2d 1071. | Pursuant to its inherent authority, a trial court may dismiss a cause of action with prejudice where a party has deliberately and contumaciously disregarded the court's authority. | "Pursuant to its inherent power, can a trial court dismiss a cause of action with prejudice where a party has deliberately and contumaciously disregarded the court's authority?" | 034100.docx | LEGALEASE-00145306-LEGALEASE-00145307 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5385 | Peterson v. McCawley, 135 Idaho 282 | 307A+746 | In fashioning sanctions, a trial court should "balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party." | In fashioning sanctions, a trial court should balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party. | "In fashioning sanctions, should a trial court balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party?" | 034121.docx | LEGALEASE-00145364-LEGALEASE-00145365 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 5386 | Webber v. St. Louis Cty. 2010 WL 462862 | 307A+552 | "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." State ex rel. Mo. Parks Ass'n v. Mo. Dept. of Nat. Res., 316 S.W.3d 375, 384 (Mo.App. W.D.2010) (quotation omitted). Likewise, a case becomes moot and should be dismissed "[w]hen an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible [.]" State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001) (quotation omitted). | A case becomes moot and should be dismissed when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible. | "Does a case become moot and dismissed, when an event occurs that makes granting effectual relief by the court impossible?" | 034129.docx | LEGALEASE-00145421-LEGALEASE-00145422 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 5387 | Sammis v. Magnetek, 130 Idaho 342 | 307A+560 | The Sammises also argue that Rule 4(a)(2) provides for dismissal withoutprejudice wherea plaintiff fails to timely serve defendants. They point out that if we affirm thedistrict court's order dismissing these respondents, refiling of their claim will be time barred.This, they urge, should be considered in the assessment of good cause and should weigh in theirfavor. The Sammises, however, cite no authority for this proposition. Although Idaho courtshave not addressed this issue, the federal courts have ruled that, under the analogousfederal rule, the running of the statute of limitations and the consequent bar to refiling theaction is not a factor to be taken into account when determining whether good causeexists. Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1306 & n. 7 (3d Cir.1995); Mendezv. Elliot, 45 F.3d 75, 78 (4th Cir.1995); Floyd v. United States, 900 F.2d 1045, 1048 (7thCir. (citations omitted). We hold that the running of the statute of limitations and thesubsequent time-bar to refiling the action is not a factor to be considered in determining whethergood cause exists under Rule 4(a)(2). | Running of statute of limitations and subsequent time-bar to refiling of action is not factor to be considered in determining whether good cause exists for failure to effect timely service on defendants, which will otherwise warrant dismissal of action. Rules Civ.Proc., Rule 4(a)(2). | Is the running of statute of limitations and subsequent time-bar to refiling of action not a factor to be considered in determining whether good cause exists? | Pretrial Procedure - Memo # 6561 - C - AP.docx | ROSS-003289249-ROSS-003289250 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 5388 | Henry v. Prusak, 229 Mich. App. 162 | 307A+746 | We agree with the analysis and holding in McGee and hereby adopt it. Logic compels us to conclude that because the court rules do not authorize a default against a party based on the failure of a representative of a party's insurance carrier to attend a settlement conference, the court rules likewise do not authorize default against a party based on the failure of a representative of a party's insurance carrier to make a settlement offer. Indeed, the default provisions of MCR 2.401(F) are specifically limited to the failure of a party or a party's attorney to attend a court-ordered settlement conference and make no provision for a default based upon the party's or the party's attorney's failure to make a settlement offer. The entry of a default against defendants was improper because defendants, their attorney, and the Allstate representative appeared at the settlement conference as directed by Judge Kolenda. | Court rules do not authorize default against a party based on the failure of a representative of a party's insurance carrier to make a settlement offer. | Do court rules not authorize default against a party based on the failure of a representative of a party's insurance carrier to make a settlement offer? | 034159.docx | LEGALEASE-00145488-LEGALEASE-00145489 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 5389 | Cowan v. Patrick, 247 Ark. 886 | 307A+552 | Yet, this court has recognized that there are circumstances under which a circuit court has the power to dismiss an action which is shown to have been brought without merit and which constitutes an abuse of process. Heard v. McCabe, 130 Ark. 185, 196 S.W. 917. In that case we sustained the circuit court's dismissal of a complaint upon a finding that the cause was without merit and was brought for vexatious purposes. This ground is not one of those recognized in Ark.Stat.Ann. s 27"1405 (Repl. 1962) as the basis of a dismissal without prejudice, so it is clear that the statute does not necessarily preclude the dismissal of a complaint on other grounds. | There are circumstances under which the circuit court has power to dismiss an action which is shown to have been brought without merit and which constitutes an abuse of process. | Are there circumstances under which the circuit court has power to dismiss an action which is shown to have been brought without merit and which constitutes an abuse of process? | 034756.docx | LEGALEASE-00145156-LEGALEASE-00145157 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5390 | Modica v. Verhulst, 195 Wis. 2d 633 | 307A+746 | When a scheduling order is violated, trial courts may make such orders as are just, including requiring the party who failed to obey the order to pay reasonable costs and attorney fees caused by the failure. Sections 802.10(3)(d), 805.03 and 804.12(2)(b), Stats.; Bell, Metzner & Gierhart v. Stern, 165 Wis.2d 34, 40"41, 477 N.W.2d 289, 292 (Ct.App.1991).A finding of egregious conduct is not required for the imposition of expenses. Cf. Johnson v. Allis Chalmers Corp., 162 Wis.2d 261, 275, 470 N.W.2d 859, 864 (1991) (because of harshness of dismissal as a sanction for failing to obey scheduling orders, there must be a showing of egregious conduct). | When scheduling order is violated, trial courts may make such orders as are just, including requiring party who failed to obey order to pay reasonable costs and attorney fees caused by failure. W.S.A. 802.10(3)(d), 804.12(2)(b), 805.03. | Is the finding of egregious conduct required for imposition of expenses for violation of a scheduling order? | 034790.docx | LEGALEASE-00145448-LEGALEASE-00145449 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5391 | Shimanovsky v. Gen. Motors Corp., 181 Ill. 2d 112 | 307A+434 | Contrary to defendant's contention, a party is not automatically entitled to a specific sanction just because evidence is destroyed or altered. Rather, a court must consider the unique factual situation that each case presents and then apply the appropriate criteria to these facts in order to determine what particular sanction, if any, should be imposed. Boatmen's National Bank, 155 Ill.2d at 314, 185 Ill.Dec. 509, 614 N.E.2d 1194; Ashford, 99 Ill.2d at 372, 76 Ill.Dec. 805, 459 N.E.2d 940. Dismissing plaintiffs' cause of action solely because evidence was altered, without any regard to the unique factual situation or the relevant factors which should be considered in determining an appropriate sanction, is a sanction which serves only to punish the party and does nothing to further the objects of discovery (see Sander, 166 Ill.2d at 68, 209 Ill.Dec. 623, 651 N.E.2d 1071; Bua, 37 Ill.2d at 196, 226 N.E.2d 6). Accordingly, we agree with the appellate court's order which remanded the instant cause to the trial court for a hearing to specifically determine the degree of prejudice defendant suffered as a result of the plaintiffs' alteration of evidence. | Destruction or alteration of evidence does not automatically entitle party to specific sanction; rather, court must consider unique factual situation that each case presents and then apply appropriate criteria to those facts to determine what sanction, if any, should be imposed. Sup.Ct.Rules, Rule 219(c). | Should the sanction of dismissal be applied automatically without full consideration of the dynamics of an individual case? | 034843.docx | LEGALEASE-00146232-LEGALEASE-00146233 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 5392 | Kinter v. Baskin, 1974 OK 36 | 307A+583 | A court has discretionary power to dismiss without prejudice a lawsuit for want of prosecution, or where a plaintiff fails to appear at a hearing or refuses to comply with an order concerning the proceeding. Goins v. Fox, Okl., 332 P.2d 220. Plaintiff's position in the present case is that the court has no power to dismiss a lawsuit while the case is pending in default of an answer, and no authority to set the case on a pre-trial docket when it was not at issue. But this argument does not take into consideration the power of a court to regulate its docket and dispose of cases where there has been no activity or interest shown in prosecuting it. 12 O.S.1971 ss 682, 683; Hambright v. City of Cleveland, Okl., 360 P.2d 493. | A court has discretionary power to dismiss without prejudice a lawsuit for want of prosecution, for failure of plaintiff to appear at a hearing, or for refusal of plaintiff to comply with an order concerning the proceeding. | Does a court have discretionary power to dismiss without prejudice a lawsuit for want of prosecution? | 035100.docx | LEGALEASE-00146071-LEGALEASE-00146072 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5393 | Carson v. Gomez, 841 S.W.2d 491 | 307A+552 | The standard of review of a dismissal under section 13.001 is abuse of discretion. Spellmon v. Sweeney, 819 S.W.2d 206, 211 (Tex.App."Waco 1991, no writ); Johnson v. Peterson, 799 S.W.2d 345, 346 (Tex.App."Houston [14th Dist.] 1990, no writ). The trial court has broad discretion in making this determination at any time, even before service of process. 799 S.W.2d at 346. The Texas Supreme Court has accepted the analogy of section 13.001 to 28 U.S.C. " 1915(d) (1989), which allows dismissal of frivolous or malicious actions in federal court. Johnson v. Lynaugh, 796 S.W.2d 705, 706 (Tex.1990). Citing Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989), the court suggested that only section 13.001(b)(2), which provides for dismissal if the claim has no arguable basis in law or in fact, may remain as a proper factor to be considered in dismissing an action. Johnson v. Lynaugh, 796 S.W.2d at 706. Therefore, before dismissing the action under section 13.001(b)(2), the petition "must receive judicial examination for a determination of its basis in fact and in law." Spellmon, 819 S.W.2d at 210. | Trial court has broad discretion in determining at any time that action should be dismissed as frivolous or malicious, even before service of process. V.T.C.A., Civil Practice & Remedies Code S 13.001. | "Does court have broad discretion in determining at any time that action should be dismissed as frivolous or malicious, even before service of process?" | 035196.docx | LEGALEASE-00145768-LEGALEASE-00145769 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5394 | St. Louis Ass'n of Realtors v. City of Ferguson, 448 S.W.3d 340 | 13+6 | SLAR appeals and argues that the 2009 amendments did not moot its challenge to the 2006 ordinance, as the licensing scheme generally and Title 25 specifically remain intact. A cause of action is moot when the question presented seeks a judgment that would have no practical effect because the controversy no longer exists. Humane Society of the United States v. State of Missouri, 405 S.W.3d 532, 535 (Mo.2013). Where another enactment supersedes the statute on which the litigants rely to define their rights, there is no longer an actual controversy, and the case must be dismissed as moot. Id. | Where another enactment supersedes the statute on which the litigants rely to define their rights, there is no longer an actual controversy, and the case must be dismissed as moot. | Can a case be dismissed as moot where another enactment supersedes the statute on which the litigants rely to define their rights? | Pretrial Procedure - Memo # 7231 - C - PC.docx | ROSS-003289992-ROSS-003289993 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 5395 | Mosley v. State, 908 N.E.2d 599 | 307A+552 | The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. Matter of Lawrance, 579 N.E.2d 32, 37 (Ind.1991). When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will usually be dismissed. Id. | When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will usually be dismissed. | "Can a case be dismissed when the controversy at issue in a case has been ended or settled, so as to render it unnecessary to decide the question involved?" | 035219.docx | LEGALEASE-00145875-LEGALEASE-00145876 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 5396 | Dockery v. Dockery, 559 S.W.2d 952 | 307A+552 | The courts in this State have consistently followed the principle that to invoke the jurisdiction of the court it is primarily essential that there be a genuine and existing controversy requiring present adjudication of present rights. Although the case may have originally presented such a controversy, if before decision it has lost that essential character through the act of the parties or some other cause, it is the duty of the court, upon the presentment of that fact, to dismiss it. | Although a case may originally have presented a genuine and existing controversy requiring present adjudication of present rights, if, before decision, the case loses that essential character through the act of the parties or some other cause, it is the duty of the court to dismiss the case. | "Is it the duty of the court to dismiss the case if, before decision, the case loses that essential character through the act of the parties or some other cause?" | 035236.docx | LEGALEASE-00145924-LEGALEASE-00145925 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 5397 | Flores v. Georgeson, 191 Cal. App. 4th 881 | 307A+552 | The appellate court in Shieh did not purport to apply section 391.7 in accordance with its terms; indeed, the court expressly noted that in the "ordinary" case, the statute only prohibits new litigation filed in propria persona. (In re Shieh, supra, 17 Cal.App.4th at p. 1167, 21 Cal.Rptr.2d 886.) A court has inherent power, upon a sufficient factual showing, to dismiss an action "shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process." (Muller v. Tanner (1969) 2 Cal.App.3d 438, 443, 82 Cal.Rptr. 734, quoting from Lincoln v. Didak (1958) 162 Cal.App.2d 625, 629"630, 328 P.2d 498.) That power, exercised after a hearing and upon sufficient factual showing, is a different power than the virtually ministerial power granted by section 391.7, subdivision (c). | A court has inherent power, upon a sufficient factual showing, to dismiss an action shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process. | Do courts have inherent power to dismiss actions on grounds that they are fictitious or sham? | Pretrial Procedure - Memo # 7264 - C - KG.docx | ROSS-003330478-ROSS-003330479 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5398 | Patterson v. N. Tr. Co., 207 Ill. App. 355 | 307A+552 | This is so obvious, when the bill is read in the light of said affidavit, that the court was justified in exercising its inherent power to protect itself and the principal defendants against a multiplicity of actions and harassing and vexatious litigation, by dismissing the bill on motion. (Stewart v. Butler, 27 N. Y. Misc. 708, 59 N. Y. Supp. 573; 20 Encyc. Pl. & Pr. pp. 44, 51, 61, 70, 74; Edmonds v. Attorney General, 47 L. J. Ch. (1878) 345; Barrett v. Day, L. R. 43 Ch. 449; Burstall v. Beyfus, L. R. 26 Ch. 38; Macdougall v. Knight, L. R. 25 Q. B. Div. 10 (1890); Metropolitan Bank v. Pooley, 54 L. J. H. of L. 449.) In the cases cited is found ample authority for the doctrine that every court of justice possesses the inherent power to protect itself from the abuse of its own process, and may resort to the summary remedy of dismissing a cause of action that is frivolous or vexatious. | Every court of justice possesses inherent power to protect itself from abuse of its own process, and may resort to summary remedy of dismissing cause of action that is frivolous or vexatious. | Does a court of justice possess inherent power to protect itself from abuse of its own process? | Pretrial Procedure - Memo # 7272 - C - BP.docx | ROSS-003303007-ROSS-003303008 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5399 | In re Patton, 47 S.W.3d 825 | 307A+746 | First, a direct relationship must exist between the offensive conduct and the sanction imposed. This prong is not met when the party seeking sanctions can show no prejudice due to the offending party's conduct. Second, the sanction imposed must not be excessive. This prong requires trial courts to consider whether the imposition of lesser sanctions would promote compliance. | The requirement that sanctions for violations of pre-trial orders not be excessive requires trial courts to consider whether the imposition of lesser sanctions would promote compliance. Vernon's Ann.Texas Rules Civ.Proc., Rule 166. | Will the requirement that sanctions for violations of pre-trial orders not be excessive requires trial courts to consider whether the imposition of lesser sanctions promote compliance? | 035291.docx | LEGALEASE-00145551-LEGALEASE-00145552 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 5400 | Rockett v. Radar, 97 S.W.3d 535 | 307A+552 | "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." Bank of Washington v. McAuliffe, 676 S.W.2d 483, 487 (Mo. banc 1984). When an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible, then the case is rendered moot and generally should be dismissed. State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001). The doctrine is triggered when an event occurs that alters the position of the parties and any judgment would be a hypothetical opinion. Id. In deciding whether a case is moot, an appellate court is allowed to consider matters outside the record. Id. | When an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible, then the case is rendered moot and generally should be dismissed. | Is a case rendered moot when an event occurs that makes a decision unnecessary or makes granting any relief by the court impossible? | 035309.docx | LEGALEASE-00145671-LEGALEASE-00145672 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5401 | Smith v. Gold Dust Casino, 526 F.3d 402 | 170A+1741.3 | While parties who do not comply with court orders may face sanctions, we reiterate that "the punishment should fit the crime, and not every instance of failure to comply with an order of [the] court, however inexcusable, justifies total extinction of a client's cause of action." Givens, 751 F.2d at 263. We conclude that the district court abused its discretion in dismissing with prejudice Smith's complaint. | While parties who do not comply with court orders may face sanctions, the punishment should fit the crime, and not every instance of failure to comply with an order of the court, however inexcusable, justifies total extinction of a client's cause of action. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A. | Should punishment for disregard of a court order fit the crime? | Pretrial Procedure - Memo # 7310 - C - PB.docx | ROSS-003288648-ROSS-003288649 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 5402 | Alabama Dep't of Labor v. Dental Referral Serv., 181 So. 3d 1061 | 307A+552 | On appeal, the DOL raises five issues, but we find the dispositive issue to be the DOL's argument that this case became moot when the deadline passed after which Dental Referral could no longer be charged for the unemployment-compensation benefits that were paid to Yancy. " "It is well settled that the judiciary of Alabama is not empowered " "to decide moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided for the government of future cases." " ' Ex parte Connors, 855 So.2d 486, 488 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994), quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963))." "In deciding whether a case is moot, a court must consider "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure " 3533, at 212 (1984). "[I]f a case has become moot, or [if a] judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment, the court will decline to consider the merits, and [the court will] dismiss the case." Chisolm v. Crook, 272 Ala. 192, 194, 130 So.2d 191 (1961)." | If a case has become moot, or if a judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment, the court will decline to consider the merits, and the court will dismiss the case. | Will a court dismiss the case if a judgment would not accomplish an end recognized as sufficient in law? | 035348.docx | LEGALEASE-00145845-LEGALEASE-00145846 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5403 | A.D. v. State, 736 N.E.2d 1274 | 307A+552 | The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. Matter of Lawrance, 579 N.E.2d 32, 37 (Ind.1991). When the controversy at issue in a case "has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will be dismissed." Dunn v. State, 163 Ind. 317, 321, 71 N.E. 890, 891 (1904). Although Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, the Indiana Constitution does not contain any similar restraint. Matter of Lawrance, 579 N.E.2d at 37. However, Indiana appellate courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." Id. Cases found to fall within this exception typically contain issues likely to recur. Id. | A case may be decided on its merits under an exception to the general rule that a moot case should be dismissed when the case involves questions of great public interest. | Can a case be decided on its merits under an exception to the general rule that a moot case should be dismissed when the case involves questions of great public interest? | 035490.docx | LEGALEASE-00146277-LEGALEASE-00146278 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5404 | Clark v. State Farm Mut. Auto. Ins. Co., 769 So. 2d 176 | 307A+590.1 | Mr. Clark asserts two arguments, however, as to why the unconditional tender should be considered in determining whether the suit has been abandoned. He first asserts that, as an insurance carrier providing uninsured/underinsured motorist coverage, State Farm has an obligation to make an unconditional tender to its insured pursuant to La. R.S. 22:658, or be subject to penalties. Mr. Clark argues, therefore, that the payment of an unconditional tender is a defense of the action because of the requirement of R.S. 22:658. He does not, however, provide any support for this argument. To the contrary, such a tender is merely of the negotiation process which does not constitute a step in the prosecution of a suit. See Newson v. Bailey, 88 So.2d 391 (La.App. 2d Cir.1956). A "step" in the prosecution or defense of a suit occurs when a party takes formal action .. intended to hasten the matter to judgment. Chevron Oil Co. v. Traigle, 436 So.2d 530 (La.1983). An unconditional tender is neither formal, nor does it hasten a matter to trial. Most important, it was not made a part of the record until after the suit had technically been abandoned pursuant to La. C.C.P. art. 561. | A "step" in the prosecution or defense of a suit occurs, and the suit is thus not abandoned, when a party takes formal action intended to hasten the matter to judgment. LSA-C.C.P. art. 561. | "Does a ""step"" in the prosecution or defense of a suit occur when a party takes formal action intended to hasten the matter to judgment?" | Pretrial Procedure - Memo # 7466 - C - DHA.docx | ROSS-003315680-ROSS-003315681 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5405 | Com. v. Lowe Coal Co., 296 Pa. 359 | 371+2005 | Our decisions show that, where no act of assembly provides to the contrary, a lien for local taxes may be entirely discharged by a judicial sale, even where the proceeds of the sale are insufficient to pay the claim in full (Hopkins v. Rettinger, 230 Pa. 192, 194, 197, 79 A. 255); but, unless particularly ordained by fundamental law or otherwise, general rules"whether of the written or unwritten law"governing the rights of municipalities and local political subdivisions given taxing powers by the state, do not necessarily apply to the state itself, where such rules would adversely affect its interest, and especially is this so where, under any other doctrine, an interest in the nature of a prerogative right would be divested. See 36 Cyc. 1171, 1172, " 11.Therefore, decisions in cases of local taxes, and statements of general principles to be found in judicial opinions disposing of such cases, do not control one like the present, which involves taxes due the sovereign state. State taxes stand on a different basis from local levies; the former are essential to the very "preservation" of the state itself (Schoyer v. Comet Oil & Refining Co., 284 Pa. 189, 193, 130 A. 413), while the latter are authorized or permitted by the state, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the sovereign authority requires the direct revenues of the commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise. | General rules governing local political subdivisions given taxing powers do not apply to state, unless specifically ordained by fundamental law or otherwise. | "Do the general rules governing local political subdivisions given taxing power, apply to state?" | 045881.docx | LEGALEASE-00146301-LEGALEASE-00146302 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 5406 | Techniarts Video v. 1631 Kalorama Assocs., 572 A.2d 1051 | 307A+563 | As a general matter, dismissal under Rule 41(b) lies within the exercise of the trial court's discretion, which this court will not disturb absent clear evidence of abuse. See Frazier v. Center Motors, 418 A.2d 1018, 1020 (D.C.1980). Given the severity of dismissal as a sanction, however, and the oft-stated preference for trial on the merits, this discretion must be exercised carefully and in accordance with standards identified in our cases. Brown v. Cohen, 505 A.2d 77, 78 (D.C.1986); LaPrade v. Lehman, supra note 10, 490 A.2d at 1155; Shimer v. Edwards, 482 A.2d 399, 400"01 (D.C.1984); Frazier, supra, 418 A.2d at 1020; Pollock v. Brown, 395 A.2d 50, 52 (D.C.1978); Garces v. Bradley, 299 A.2d 142, 144 (D.C.1973). Thus, dismissal should be adopted as a remedy only in extreme circumstances and only after the trial court has considered lesser sanctions. Granville v. Hunt, 566 A.2d 65, 66 (D.C.1989); LaPrade v. Lehman, supra, 490 A.2d at 1155; see also District of Columbia v. Greene, 539 A.2d 1082, 1084 (D.C.1988); National Voter Contact, Inc. v. Versace, 511 A.2d 393 (D.C.1986); Vernell v. Gould, 495 A.2d 306, 311 (D.C.1985); Braxton v. McNamara, 429 A.2d 183, 184 (D.C.1981).12 The inquiry should include whether the conduct calling for sanctions was willful and whether the other party was prejudiced by it, Vernell, supra; Brown v. Cohen, supra, 505 A.2d at 78"79; Garces, supra, 299 A.2d at 144"45; and the sanction imposed should, wherever possible, be tailored to the offense. Pollock v. Brown, supra, 395 A.2d at 52; see also Peek v. District of Columbia, 567 A.2d 50, 54 (D.C.1989); Vernell, supra (trial court abuses its discretion where the sanction is too strict or unnecessary under the circumstances). These factors serve as a basis for determining whether or not the trial court has abused its discretion. Pollock, supra, 395 A.2d at 52. | Dismissal as sanction for plaintiff's failure to prosecute or to comply with superior court order should be adopted as remedy only in extreme circumstances and only after trial court has considered lesser sanctions. Civil Rule 41(b). | Should dismissal as sanction for a plaintiff's failure to prosecute or to comply with superior court order be adopted as remedy only in extreme circumstances and only after trial court has considered lesser sanctions? | 034892.docx | LEGALEASE-00146756-LEGALEASE-00146758 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5407 | State ex rel. Chastain v. City of Kansas City, 968 S.W.2d 232 | 30+781(1) | The mootness of a controversy is a threshold question in any appellate review of that controversy. See State ex rel. Kirkpatrick v. Board of Election Comm'rs of St. Louis County, 686 S.W.2d 888, 890 (Mo.App.1985). "With regard to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy." Gilroy"Sims & Assocs. v. City of St. Louis, 697 S.W.2d 567, 569 (Mo.App.1985). Because mootness implicates the justiciability of a case, the court may dismiss a case for mootness sua sponte. See Grassmuck v. Autorama Auto Equip. & Supply Co., 659 S.W.2d 264, 266 (Mo.App.1983). When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed. State ex rel. Donnell v. Searcy, 347 Mo. 1052, 152 S.W.2d 8, 10 (banc 1941); State ex rel. Hooker v. City of St. Charles, 668 S.W.2d 641, 643 (Mo.App.1984). We do not decide questions of law disconnected from the granting of actual relief. Committee for Educ. Equality v. State, 878 S.W.2d 446, 454 (Mo. banc 1994). In considering the possible mootness of a controversy, an appellate court may consider matters outside of the record. State ex rel. Wilson v. Murray, 955 S.W.2d 811, 812 (Mo.App.1997). While courts usually should not decide moot cases, a court has discretion to review a moot case when the case presents an unsettled legal issue of public interest and importance of a recurring nature that will escape review unless the court exercises its discretionary jurisdiction. Citizens for Safe Waste Management v. St. Louis County Air Pollution Control Appeal Bd., 896 S.W.2d 643, 645 (Mo.App.1995). This exception, however, is narrow. If an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the "public interest" exception does not apply. See State ex rel. Missouri | When event occurs that makes decision on appeal unnecessary or makes it impossible for appellate court to grant effectual relief, appeal is moot and generally should be dismissed. | Will a case be moot when an intervenient event occurs which makes a court's decision unnecessary or granting effectual relief impossible? | 034895.docx | LEGALEASE-00146759-LEGALEASE-00146761 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 5408 | Lyons v. Dohman, 958 So. 2d 771 | 307A+590.1 | La.Code Civ.P. art. 561(A)(2) (emphasis added). A step taken by a plaintiff after the three-year period has run is ineffective to prevent a judgment of dismissal from being granted. Clark v. State Farm Mut. Auto. Ins. Co., 00"3010 (La.5/15/01), 785 So.2d 779. Thus, to prevent a claim from being dismissed based on abandonment pursuant to La.Code Civ.P. art. 561, a party must do three things: (1) Take some step in the prosecution or defense of the action; (2) take that step in the trial court and, with the exception of formal discovery, on the record of the suit; and (3) take the step within three years of the last step taken by either party. Id. | A step taken by a plaintiff after the three-year period for abandonment has run is ineffective to prevent a judgment of dismissal from being granted. LSA-C.C.P. art. 561(A)(1). | Is a step taken by a plaintiff after the three-year period for abandonment has run ineffective to prevent a judgment of dismissal from being granted? | Pretrial Procedure - Memo # 7059 - C - SN_58313.docx | ROSS-003292424-ROSS-003292425 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5409 | In re Cty. Treasurer, 2013 IL App (3d) 120999 | 307A+556.1 | A trial court's ruling on a section 2"619 motion to dismiss is subject to de novo review on appeal. Van Meter v. Darien Park District, 207 Ill.2d 359, 368, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). In conducting that review, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. Id. at 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273. Under section 2"619(a)(9), which allows a litigant to obtain an involuntary dismissal of a claim against him if that claim is completely negated or defeated by other "affirmative matter" in the nature of a defense. (735 ILCS 5/2"619(a)(9) (West 2010);Van Meter, 207 Ill.2d at 367, 278 Ill.Dec. 555, 799 N.E.2d 273), lack of standing may be raised as a basis for dismissal (International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security, 215 Ill.2d 37, 45, 293 Ill.Dec. 606, 828 N.E.2d 1104 (2005) (Local 148)).) In addition, the issue of standing is a question of law and is also subject to de novo review on appeal. Powell v. Dean Foods Co., 2012 IL 111714, 35, 358 Ill.Dec. 333, 965 N.E.2d 404. | Under statute that allows a litigant to obtain an involuntary dismissal of a claim against him if that claim is completely negated or defeated by other "affirmative matter" in the nature of a defense, lack of standing may be raised as a basis for dismissal. S.H.A. 735 ILCS 5/2-619(a)(9). | Will a litigant be allowed to obtain an involuntary dismissal of a claim against him if that claim is completely negated or defeated by other affirmative matter in the nature of a defense? | 11333.docx | LEGALEASE-00094380-LEGALEASE-00094382 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5410 | Schutz v. United States, 422 F.2d 991 | 34+20.10(1) | Nor could appellant refuse to report for induction on the claim that he had been called out of turn. Every registrant is required to report for induction as ordered even though he may have valid legal grounds for refusing to submit to induction, United States v. Irons, 6 Cir., 1966, 369 F.2d 557, 559; Nickerson v. United States, 10 Cir., 1968, 391 F.2d 760, 763, cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366. | Every registrant is required to report for induction as ordered even though he may have valid legal grounds for refusing to submit to induction. Military Selective Service Act of 1967, S 12, 50 U.S.C.A. App. S 462. | Does every registrant have the duty to report for induction even though he may have valid legal grounds for refusing to submit to induction? | 008744.docx | LEGALEASE-00147990-LEGALEASE-00147991 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 5411 | Gerhard v. Stephens, 68 Cal. 2d 864 | 260+55(1) | In Dabney-Johnston Oil Corp. v. Walden (1935) 4 Cal.2d 637, 52 P.2d 237, we further elaborated the California position. "The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer, The right when granted is a profit a prendre, a right to remove a part of the substance of the land. A profit a prendre is an interest in real property in the nature of an incorporeal hereditament. * * * The profit A prendre, whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real, which is nevertheless an estate in real property, although not real property or real estate. (Citation omitted.) Where it is unlimited in duration, it is a freehold interest, an estate in fee, and real property or real estate. Thus, although the oil and gas in place doctrine is rejected, interests in oil rights which are estates in real property may be granted separate and apart from a grant of surface title." (Italics added.) (P. 649, 52 P.2d p. 243.) | Exclusive right to drill for and produce oil inhering in landowner by virtue of his title to the land is a valuable right which he may transfer, and such right, when granted, is a "profit a prendre", which is a right to remove a part of the substance of the land. | Is the exclusive right to drill for and produce oil when granted a profit a prendre? | Mines and Minerals - Memo #290 - C - CSS_57482.docx | ROSS-003279558-ROSS-003279559 | Condensed, Order, SA, Sub | 0.77 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5412 | Flores v. Georgeson, 191 Cal. App. 4th 881 | 307A+552 | The appellate court in Shieh did not purport to apply section 391.7 in accordance with its terms; indeed, the court expressly noted that in the "ordinary" case, the statute only prohibits new litigation filed in propria persona. (In re Shieh, supra, 17 Cal.App.4th at p. 1167, 21 Cal.Rptr.2d 886.) A court has inherent power, upon a sufficient factual showing, to dismiss an action "shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process." (Muller v. Tanner (1969) 2 Cal.App.3d 438, 443, 82 Cal.Rptr. 734, quoting from Lincoln v. Didak (1958) 162 Cal.App.2d 625, 629"630, 328 P.2d 498.) That power, exercised after a hearing and upon sufficient factual showing, is a different power than the virtually ministerial power granted by section 391.7, subdivision (c). | A court has inherent power, upon a sufficient factual showing, to dismiss an action shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process. | Does a Superior Court have inherent power to dismiss action which is made to appear fictitious and sham? | 10109.docx | LEGALEASE-00095079-LEGALEASE-00095080 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5413 | Patel v. Home Depot USA, 2012 IL App (1st) 103217 | 307A+681 | A motion to dismiss under section 2"615 attacks the legal sufficiency of the complaint. Such a motion to dismiss does not raise affirmative factual defenses, but alleges defects appearing on the face of the pleadings. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 8, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). In ruling on a section 2"615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and all reasonable inferences which can be drawn therefrom. McGrath v. Fahey, 126 Ill.2d 78, 90, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988). | A motion to dismiss under statute governing motions with respect to the pleadings attacks the legal sufficiency of the complaint; such a motion to dismiss does not raise affirmative factual defenses, but alleges defects appearing on the face of the pleadings. S.H.A. 735 ILCS 5/2-615. | Will a motion to dismiss with respect to the pleadings challenge the legal sufficiency of a complaint and raise affirmative factual defenses? | 10965.docx | LEGALEASE-00094049-LEGALEASE-00094050 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5414 | Webber v. St. Louis Cty. 2010 WL 462862 | 307A+561.1 | As Plaintiffs correctly assert, laches is an affirmative defense. Associated Elec. Co-op., Inc. v. City of Springfield, 793 S.W.2d 517, 520 (Mo.App. S.D.1990); Mo. Sup.Ct. Rule 55.08. Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes "on its face and without exception" that the defense applies and the claim is barred. Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc 1995) (quoting Int'l Plastics Dev., Inc. v. Monsanto Co., 433 S.W.2d 291, 294 (Mo. banc 1968)); see also Ver Standig v. St. Louis Union Trust Co., 339 Mo. 539, 98 S.W.2d 588, 591 (1936). | Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes on its face and without exception that the defense applies and the claim is barred. V.A.M.R. 55.08. | Can a petition be dismissed based on an affirmative defense unless the petition establishes on its face and without exception that the defense applies? | 10978.docx | LEGALEASE-00094337-LEGALEASE-00094338 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 5415 | Weydert Homes v. Kammes, 395 Ill. App. 3d 512 | 307A+686.1 | The trial court dismissed count I pursuant to section 2"619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2"619(a)(9) (West 2006)). A section 2"619 motion to dismiss admits the legal sufficiency of the complaint while it raises defenses, defects, or other affirmative matters that defeat the claim. Fuller Family Holdings, LLC v. Northern Trust Co., 371 Ill.App.3d 605, 613, 309 Ill.Dec. 111, 863 N.E.2d 743 (2007). The court accepts as true well-pleaded allegations. Fuller, 371 Ill.App.3d at 613, 309 Ill.Dec. 111, 863 N.E.2d 743. An action will be dismissed under section 2"619 if after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the court finds that no set of facts can be proved upon which relief can be granted. Fuller, 371 Ill.App.3d at 613, 309 Ill.Dec. 111, 863 N.E.2d 743. The question is whether there is a genuine issue of material fact that precludes dismissal or whether dismissal is proper as a matter of law. Fuller, 371 Ill.App.3d at 613, 309 Ill.Dec. 111, 863 N.E.2d 743. Our review is de novo. Fuller, 371 Ill.App.3d at 613, 309 Ill.Dec. 111, 863 N.E.2d 743. | A motion to dismiss based on defects or defenses which avoid or defeat claims admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | "Will a motion to dismiss raise defects, defenses, or other affirmative matters that avoid the legal effect or defeat a claim?" | 035720.docx | LEGALEASE-00147417-LEGALEASE-00147418 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 5416 | Speedway Motorsports v. Pinnacle Bank, 315 Ga. App. 320 | 307A+561.1 | Whether or not Speedway has alleged facts in its second amended complaint that, if true, would be sufficient to disprove these defenses, a plaintiff has no obligation to anticipate and plead away any defenses in his complaint. See OCGA " 9"11"8(a)(2) (complaint requires "short and plain statement of the claims" and "demand for judgment"). A motion to dismiss for failure to state a claim can properly be granted upon an affirmative defense only when the elements of the defense are admitted by the plaintiff or "completely disclosed on the face of the pleadings." Murrey v. Specialty Underwriters, 233 Ga. 804, 807, 213 S.E.2d 668 (1975). See also Ghertner v. Solaimani, 254 Ga.App. 821, 825, n. 4, 563 S.E.2d 878 (2002) ("Where the facts necessary to establish an affirmative defense are admitted or not controverted, the court may dispose of the matter upon a motion to dismiss...."); Liner v. North, 194 Ga.App. 175, 179(2), 390 S.E.2d 263 (1990) (affirmative defense "may be properly raised by motion where the facts are admitted or are not controverted or are completely disclosed on the face of the pleadings") (citation and punctuation omitted); Flanders v. Georgia Farm Bureau Mut. Ins. Co., 171 Ga.App. 188, 188"189, 318 S.E.2d 794 (1984) (same). Consequently, if the facts alleged in the complaint affirmatively prove a defense, a court may dismiss the complaint based upon the defense, but if the facts alleged in the complaint merely fail to affirmatively disprove a defense, no dismissal is warranted. Here, the allegations of the second amended complaint may or may not disprove the defenses on which the Bank relies, but they do not affirmatively prove those defenses. For these reasons, we reverse the dismissal of the claims against the Bank under the Uniform Fraudulent Transfers Act and for a constructive trust, equitable lien, and declaratory judgment, as well as the derivative claim for attorney fees and expenses of litigation. | A motion to dismiss for failure to state a claim can properly be granted upon an affirmative defense only when the elements of the defense are admitted by the plaintiff or completely disclosed on the face of the pleadings. | Will a motion to dismiss for a failure to state a claim be granted upon an affirmative defense? | Pretrial Procedure - Memo # 7568 - C - SHB_57555.docx | ROSS-003284132-ROSS-003284133 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 5417 | Barna v. Passage 350 Canon, 186 Cal. App. 3d 440 | 307A+589 | In Moran, the Supreme Court focused on the five-year dismissal statute, concluding that "[t]he time between the date the arbitration award is filed with the court and the date set for the new trial is to be excluded from calculation of the five-year period of section 583(b)." (35 Cal.3d at p. 242, 197 Cal.Rptr. 546, 673 P.2d 216. | When defendant seeks trial de novo after arbitration award for plaintiff, trial court should assign matter to earliest possible trial date, and time between date arbitration award is filed and date set for new trial is excluded from calculation of five-year limitations period. West's Ann.Cal.C.C.P. S 1141.10; S 583(b) (Repealed). | Is the time between date that arbitration award is filed and date set for trial de novo not to be excluded from calculation of five-year period within which action must be brought to trial ? | 11009.docx | LEGALEASE-00094709-LEGALEASE-00094710 | Condensed, Order, SA, Sub | 0 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5418 | In re Scarlett Z.-D., 2015 IL 117904 | 307A+561.1 | A motion to dismiss under section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2012)) tests the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2"619 (735 ILCS 5/2"619 (West 2012)) admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading that defeat the claim. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318; Wallace v. Smyth, 203 Ill.2d 441, 447, 272 Ill.Dec. 146, 786 N.E.2d 980 (2002). | Motion for involuntary dismissal admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading that defeat the claim. S.H.A. 735 ILCS 5/2-619. | Would a motion to dismiss assert certain defects or defenses outside the pleadings which defeat the claim? | 11019.docx | LEGALEASE-00094673-LEGALEASE-00094674 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 5419 | Estate of Paulk v. Lott, 217 So. 3d 747 | 307A+581 | Our Supreme Court has emphasized that the threshold question "is whether there is "a clear record of delay or contumacious conduct by the plaintiff[.]" " Holder, 54 So.3d at 198 ( 20) (quoting Cox, 976 So.2d at 875 ( 17)). Thus, " "[d]elay alone may suffice" for a dismissal under Rule 41(b). "Factors other than delay are not required." " Id. (citation omitted) (quoting Cox, 976 So.2d at 875 ( 18)). The trial court and this Court may also consider "aggravating factors" such as "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of prejudice to the defendant, and whether the delay was the result of intentional conduct." State ex rel. Hood v. Louisville Tire Ctr., Inc., 204 So.3d 1250, 1256 ( 16) (Miss. 2016) (quoting AT&T v. Days Inn of Winona, 720 So.2d 178, 181 ( 13) (Miss. 1998)). "The presence of an aggravating factor may serve to bolster or strengthen the case for a dismissal .." Holder, 54 So.3d at 200 ( 31). However, neither "contumacious conduct" nor an "aggravating factor" is required to support a Rule 41(b) dismissal. Louisville Tire Ctr., 204 So.3d at 1254 n.2 & ( 9). | The presence of an aggravating factor may serve to bolster or strengthen the case for a dismissal; however, neither contumacious conduct nor an aggravating factor is required to support a dismissal for failure to prosecute under the rules of civil procedure. Miss. R. Civ. P. 41(b). | "Can the court consider prejudice or the presence of an aggravating factor, to bolster or strengthen a defendant's case in support of dismissal for failure to prosecute?" | 11078.docx | LEGALEASE-00094557-LEGALEASE-00094558 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5420 | Dresser v. Bindi, 221 Cal. App. 3d 1493 | 307A+590.1 | Section 1141.20, which addresses requests for trial de novo after arbitration, provides: "Any party may elect to have a de novo trial, by court or jury, both as to law and facts. Such trial shall be calendared, insofar as possible, so that the trial shall be given the same place on the active list as it had prior to arbitration, or shall receive civil priority on the next setting calendar." Section 1141.17 makes it clear, however, that the statute of limitations is not tolled when a case is sent to arbitration, unless the action is or remains submitted to arbitration within six months of the expiration of this statutory period. | Limitations period for bringing action to trial after action is commenced is not tolled if case is sent to arbitration, unless action is or remains submitted to arbitration within six months of expiration of statutory period. West's Ann.Cal.C.C.P. SS 583.310, 583.360, 1141.17, 1141.17(b), 1141.20. | Is the limitations period for bringing action to trial after action is commenced not tolled if a case is sent to arbitration? | 11106.docx | LEGALEASE-00094615-LEGALEASE-00094616 | Condensed, Order, SA, Sub | 0.53 | 1 | 1 | 1 | 1 | 1 |
| 5421 | Schroeder v. RGIS, 2013 IL App (1st) 122483 | 307A+561.1 | We note initially that defendant filed its motion pursuant to section 2"619.1 of the Code, which allows for combined motions to dismiss. 735 ILCS 5/2"619.1 (West 2010). Due to our ultimate conclusion in this case, we need not address defendant's argument, brought pursuant to section 2"615 of the Code (735 ILCS 5/2"615 (West 2010)), that plaintiff failed to state a claim upon which relief can be granted. A motion to dismiss brought pursuant to section 2"619(a)(9) of the Code allows for the involuntary dismissal of a complaint when the "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." | When proceeding under Code of Civil Procedure section allowing dismissal of complaint when claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim, the legal sufficiency of the complaint is admitted. S.H.A. 735 ILCS 5/2-619. | Is the legal sufficiency of the complaint admitted when proceeding allows dismissal of complaint when claim asserted is barred by other affirmative matter? | Pretrial Procedure - Memo # 7706 - C - SKG.docx | ROSS-003300019-ROSS-003300020 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 5422 | Am. Eagle v. Employers' Liab. Assur. Corp., 389 So. 2d 1339 | 307A+590.1 | If the post-trial conference was a "step in the prosecution" by a party, the motion to dismiss the action as abandoned should be denied. The term "step in the prosecution" consistently has been defined by Louisiana courts as some formal action before the court intended to hasten the suit to judgment. DeClouet v. Kansas City Southern Railway Company, 176 So.2d 471 (La.App.3d Cir. 1965), writs denied 248 La. 383, 178 So.2d 662; Marchand v. Gene Thorpe Finance, Inc., 225 So.2d 485 (La.App. 4th Cir. 1969), writs denied 254 La. 848, 227 So.2d 592; Evergreen Plantation, Inc. v. Zunamon, 272 So.2d 414 (La.App.2d Cir. 1973), writ denied La., 274 So.2d 708; Melancon v. Wood, 303 So.2d 222 (La.App. 4th Cir. 1974). A post-trial conference whose purpose is to facilitate completion of a transcript so that briefs could be filed and a decision rendered most certainly is a "step in the prosecution" of the matter. | A posttrial conference whose purpose is to facilitate completion of a transcript so that briefs could be filed and a decision rendered is a "step in the prosecution" and operates to preclude dismissal for abandonment by failure to take any step in prosecution for five years. LSA-C.C.P. art. 561. | "Is a post-trial conference whose purpose is to facilitate completion of a transcript so that briefs could be filed and a decision rendered a ""step in the prosecution""?" | Pretrial Procedure - Memo # 7712 - C - ES.docx | ROSS-003300030-ROSS-003300031 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 5423 | Clark v. State Farm Mut. Auto. Ins. Co., 769 So. 2d 176 | 307A+590.1 | Mr. Clark asserts two arguments, however, as to why the unconditional tender should be considered in determining whether the suit has been abandoned. He first asserts that, as an insurance carrier providing uninsured/underinsured motorist coverage, State Farm has an obligation to make an unconditional tender to its insured pursuant to La. R.S. 22:658, or be subject to penalties. Mr. Clark argues, therefore, that the payment of an unconditional tender is a defense of the action because of the requirement of La. R.S. 22:658. He does not, however, provide any support for this argument. To the contrary, such a tender is merely part of the negotiation process which does not constitute a step in the prosecution of a suit. See Newson v. Bailey, 88 So.2d 391 (La.App. 2d Cir.1956). A "step" in the prosecution or defense of a suit occurs when a party takes formal action .. intended to hasten the matter to judgment. Chevron Oil Co. v. Traigle, 436 So.2d 530 (La.1983). An unconditional tender is neither formal, nor does it hasten a matter to trial. Most important, it was not made a part of the record until after the suit had technically been abandoned pursuant to La. C.C.P. art. 561. | A "step" in the prosecution or defense of a suit occurs, and the suit is thus not abandoned, when a party takes formal action intended to hasten the matter to judgment. LSA-C.C.P. art. 561. | Does a step in the prosecution or defense of an action that can defeat abandonment occur whenever a party takes a formal action that is intended to hasten the matter to judgment? | 10351.docx | LEGALEASE-00095058-LEGALEASE-00095059 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5424 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+561.1 | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed. | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Rules Civ.Proc., Rule 12(b)(6). | "Can a complaint be dismissed for absence of sufficient facts to make a good claim, or disclosure of some fact that necessarily defeats the claim?" | Pretrial Procedure - Memo # 7774 - C - KS.docx | ROSS-003286704-ROSS-003286705 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5425 | Stephanie W. v. Maxwell V., 319 P.3d 219 | 307A+46 | Under Rule 37, "the trial court's discretion [to sanction discovery violations] is limited when the effect of the sanction it selects is to ... establish the outcome of or preclude evidence on a central issue, or end the litigation entirely."29 In particular, "the trial court's discretion to impose [litigation-ending] sanctions is narrowly limited to extreme situations," and such sanctions cannot be imposed "where an alternative remedy would suffice to make the adverse party whole." | Trial court's discretion to impose litigation-ending discovery sanctions is narrowly limited to extreme situations, and such sanctions cannot be imposed where an alternative remedy would suffice to make the adverse party whole. Rules Civ.Proc., Rule 37. | Is a trial court's discretion to order litigation-ending sanctions severely limited? | 11275.docx | LEGALEASE-00094238-LEGALEASE-00094239 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 5426 | Sewell Masonry Co. v. DCC Const., 862 So. 2d 893 | 307A+590.1 | Documents filed of record concerning discovery may, but do not always, constitute record activity sufficient to avoid a dismissal for failure to prosecute. Sheen v. The Time Inc. Magazine Co., 817 So.2d 974 (Fla. 3d DCA 2002). The discovery activity that is filed will not be sufficient to avoid a dismissal where the discovery is in bad faith and is also "without any design to move the case forward toward a conclusion on its merits." Del Duca v. Anthony, 587 So.2d 1306 (Fla.1991). In Anthony, the supreme court approved the Second District Court of Appeal's reversal of a dismissal for failure to prosecute where some discovery activity had occurred during the year previous to the motion to dismiss. The discovery activity consisted of the filing by the plaintiff of a request to produce and of a notice of service of interrogatories. The district court had concluded that while the discovery was filed primarily to avoid the application of Rule 1.420(e), the discovery did ask for important witnesses and did assist in moving the case toward a conclusion on the merits. | Documents filed of record concerning discovery may, but do not always, constitute record activity sufficient to avoid dismissal for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | "Can documents filed of record concerning discovery constitute ""record activity"" sufficient to avoid dismissal for failure to prosecute?" | Pretrial Procedure - Memo # 7840 - C - SHB.docx | ROSS-003286751-ROSS-003286752 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5427 | Barnett Bank of E. Polk Cty. v. Fleming, 508 So. 2d 718 | 307A+590.1 | Accordingly, we hold that a motion to dismiss for lack of prosecution pursuant to Rule 1.420(e), whether initiated by the court or a party, cannot be deemed "record activity" sufficient to defeat dismissal of the case for lack of prosecution. | Motion to dismiss for lack of prosecution, whether initiated by court or a party, cannot be deemed "record activity" sufficient to defeat dismissal of case for lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | "Can a motion to dismiss for lack of prosecution be deemed a ""record activity"" sufficient to defeat a dismissal of a case for lack of prosecution?" | 11331.docx | LEGALEASE-00094451-LEGALEASE-00094452 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |
| 5428 | Peruvian Connection, Ltd. v. Christian, 977 F. Supp. 1107 | 25T+230 | Whether the parties enter into a formal written agreement or merely ask the arbitrator to decide the claims submitted, "they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority." Piggly Wiggly, 611 F.2d at 584."On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." Id. | Whether parties enter into formal written agreement or merely ask arbitrator to decide claims submitted, they have in effect empowered arbitrator to decide issues stated in grievance, and grievance itself becomes submission agreement and defines limits of arbitrator's authority. | When does a grievance become a submission agreement? | 007845.docx | LEGALEASE-00148880-LEGALEASE-00148881 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 5429 | Citizens & S. Nat. Bank v. Scheider, 139 Ga. App. 475 | 278+4 | The new note was given for an existing indebtedness, from the same principal to the same payee. "A new note given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a novation." Georgia National Bank v. Fry, 32 Ga.App. 695(1), 124 S.E. 542; Brooks v. Jackins, 38 Ga.App. 57(1), 142 S.E. 574. See also Motor Contract Division of Trusco Finance Co. v. Southern Cotton Oil Co., 76 Ga.App. 199, 202, 45 S.E.2d 291 and Northwest Acceptance Corp. v. Heinicke Instruments Co., 441 F.2d 887, 892 (5th CCA, 1971). | New note given in lieu of existing note between same parties and for same indebtedness, even at higher rate of interest and due at latter date is not given for new consideration and therefore does not constitute a novation. | Will a new note given in lieu of an existing note between the same parties for the same indebtedness constitute a novation? | Bills and Notes- Memo 468-IS_57878.docx | ROSS-003294339-ROSS-003294340 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 5430 | Kansas Bankers Sur. Co. v. Ford Cty. State Bank, 184 Kan. 529 | 8.30E+05 | The Uniform Negotiable Instruments Law (hereafter N.I.L.) was designed to harmonize decisions of courts of last resort in respect to commercial paper, and to give to negotiable instruments a degree of certainty that would be universal in its application in the states enacting it. It is fundamental that the court of no state in which the law is enacted is bound by the construction of the statute by the courts of other states; but courts, with full knowledge of the history of this legislation, and knowing that its chief purpose is as above stated, should upon all questions of construction, where the rule adopted by other states is not plainly erroneous, be disposed to follow the construction given to the act by the courts of the state in which the act has heretofore been adopted and construed. Cherokee Nat. Bank v. Union Trust Co., 33 Okl. 342, 346, 125 P. 464. | The Uniform Negotiable Instruments Law was designed to harmonize decisions of courts of last resort in respect to commercial paper, and to give to negotiable instruments a degree of certainty that would be universal in its application in states enacting it. G.S.1949, 52-101 et seq. | Why was Uniform Negotiable Instruments Law designed? | 010501.docx | LEGALEASE-00148153-LEGALEASE-00148154 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 5431 | United States v. Pinson, 860 F.3d 152 | 91+152 | To prove "a pattern of racketeering activity," the evidence "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240, 109 S.Ct. 2893 (internal quotation marks omitted). To constitute or threaten continued criminal activity, racketeering acts may either be closed-ended, i.e., "a closed period of repeated conduct," or open-ended, i.e., naturally "project[ing] into the future with a threat of repetition." Id. at 241"42, 109 S.Ct. 2893. | To prove a pattern of racketeering activity, as required to support Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy conviction, the evidence must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. 18 U.S.C.A. S 1962(d). | "What must the evidence show to prove a ""pattern of racketeering activity"" for a Racketeer Influenced and Corrupt Organizations Act conviction?" | 012443.docx | LEGALEASE-00148272-LEGALEASE-00148273 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5432 | United States v. Carson, 464 F.2d 424 | 63+1(2) | While "[n]ot every person performing any service for the government, however humble, is embraced within the terms" of the bribery statute, Krichman v. United States, 256 U.S. 363, 366, 41 S.Ct. 514, 515, 65 L.Ed. 992 (1921), appellant, as an administrative assistant to a member of the Senate Judiciary Committee, clearly is, in a situation in which his influence in connection with federal criminal charges or penalties is sought. 18 U.S.C. " 201(a). | Defendant administrative assistant to member of Senate Judiciary Committee was clearly embraced within terms of the bribery statute, for purposes of situation in which influence of defendant was sought in connection with federal criminal charges that were being contemplated against other persons. 18 U.S.C.A. S 201(a). | Is every person performing any service for the government embraced within the terms of bribery statute? | 012489.docx | LEGALEASE-00148482-LEGALEASE-00148483 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 5433 | Watt v. Lee, 238 Ala. 451 | 156+3(1) | " "A party who obtains or defeats a judgment, by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter."" | A party who obtains or defeats a judgment, by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter. | Is a party who obtains or defeats a judgment estopped from giving it another in a suit founded upon the same subject matter? | Estoppel - Memo #16 - C - CSS_58248.docx | ROSS-003293863-ROSS-003293864 | Condensed, SA | 0.03 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5434 | Elliott v. Berry, 206 Okla. 594 | 260+79.1(2) | Generally speaking, the term "royalty" is construed in the broad sense of denoting mineral rights when there is no oil or gas lease upon the property but is construed in the restricted sence of denoting an interest in the production when the property is under lease for oil and gas. Melton v. Sneed, 188 Okl. 388, 109 P.2d 509, Purcell v. Thaxton, 202 Okl. 612, 216 P.2d 574. | Term "royalty" is construed in broad sense of denoting mineral rights when there is no oil and gas lease on property, but is construed in restricted sense of denoting interest in production when property is under lease for oil and gas. | Is the term royalty construed in the broad sense of denoting mineral rights when there is no oil or gase lease upon the property? | 021515.docx | LEGALEASE-00148369-LEGALEASE-00148370 | Condensed, SA | 0.36 | 0 | 1 | 0 | 1 | |
| 5435 | Appeal of York Bank, 36 Pa. 458 | 289+723 | A judgment confessed by one partner in the name of the firm, though void as to his copartners, is good as between him and the creditor, not only as evidence of the amount of his indebtedness, but as a lien upon his real estate within the county. | A judgment confessed by one partner in the name of the firm, though void as to his copartners, is good as between him and the creditor, not only as evidence of the amount of his indebtedness, but as a lien on his real estate within the county. | Is a judgment confessed by a partner in the name of the firm good as between the partner and the creditor? | 022505.docx | LEGALEASE-00148963-LEGALEASE-00148964 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 5436 | Lujan v. City of Albuquerque, 134 N.M. 207 | 307A+563 | A district court has authority to dismiss claims with prejudice for a party's failure to prosecute or to comply with procedural rules or court orders. See, e.g., Rule 1-037 NMRA 2003 (discovery); Rule 1-041 (failure to prosecute); Lowery, 113 N.M. at 74, 823 P.2d at 316 (recognizing Rule 1-041(B) dismissal with prejudice, but holding that circumstances were not "so extreme as to justify dismissal"); Restaurant Mgmt. Co. v. Kidde-Fenwal, Inc., 1999-NMCA-101, 20, 24, 127 N.M. 708, 986 P.2d 504 (recognizing court's authority to dismiss through the exercise of its inherent power, but remanding for the district court to consider certain factors before imposing sanctions for pre-litigation spoliation); Universal Constructors, Inc. v. Fielder, 118 N.M. 657, 660, 884 P.2d 813, 816 (Ct.App.1994) (recognizing court's authority to dismiss based on party's failure to comply with pretrial order and to attend scheduled hearing, but finding error in court's failure to give notice and an opportunity to be heard); Lopez, 108 N.M. at 260-61, 771 P.2d at 193-94 (recognizing court's authority to dismiss under the Rules of Civil Procedure, Rule 37(b), for willful failure to comply with discovery, but holding that the evidence did not support a finding of such failure). | A district court has authority to dismiss claims with prejudice for a party's failure to prosecute or to comply with procedural rules or court orders. NMRA, Rules 1-037, 1-041. | Does a district court have authority to dismiss claims with prejudice for a party's failure to prosecute or to comply with procedural rules or court orders? | 035030.docx | LEGALEASE-00148137-LEGALEASE-00148138 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5437 | Gilbert v. Eckerd Corp. of Florida, 34 So. 3d 773 | 307A+563 | We note that, as a preliminary matter, if the motion to dismiss for fraud would not likewise survive a motion for summary judgment, the trial court should presume the matter not subject to dismissal. See Jacob v. Henderson, 840 So.2d 1167, 1170 (Fla. 2d DCA 2003) ("The same facts for which this case was dismissed would not withstand a motion for summary judgment nor a motion for directed verdict, for there are questions of material fact."). The mere conflict between discovery depositions, interrogatories and records disclosed during the discovery process should not warrant dismissal. See Ramey, 993 So.2d at 1021-22 (Altenbernd, J., concurring). Factual inconsistencies or even false statements are better managed through the use of impeachment or other discovery sanctions. See Ruiz, 859 So.2d at 576. | If the motion to dismiss for fraud on the court would not likewise survive a motion for summary judgment, the trial court should presume the matter not subject to dismissal. | "If the motion to dismiss for fraud on the court would not likewise survive a motion for summary judgment, should the trial court presume the matter not subject to dismissal?" | Pretrial Procedure - Memo # 7126 - C - DHA_58019.docx | ROSS-003280790-ROSS-003280791 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 5438 | Van Tieghem v. Sushenka, 254 Ill. App. 409 | 307A+563 | The court may dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause, where no sufficient excuse is given. McClay v. Williamson, 247 Ill. App. 141-147. | The court may dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause, where no sufficient excuse is given. | Can the court dismiss a cause for noncompliance with a rule entered against a plaintiff to file a pleading or take some other step in the cause? | Pretrial Procedure - Memo # 7127 - C - KA_58020.docx | ROSS-003284208-ROSS-003284209 | Condensed, SA | 0.21 | 0 | 1 | 0 | 1 | |
| 5439 | Brodbeck v. Gonzalez, 336 So. 2d 475 | 307A+563 | A dismissal as punishment for the plaintiff's failure to comply with a court order is in large measure a discretionary matter with the trial judge. Warriner v. Ferraro, 177 So.2d 723 (Fla.3d DCA 1965). We find no abuse of discretion by the trial judge in this case. See Swindle v. Reid, 242 So.2d 751 (Fla.4th DCA 1971). | Dismissal as punishment for plaintiff's failure to comply with court order is in large measure discretionary matter with trial judge. 30 West's F.S.A. Rules of Civil Procedure, rule 1.380(b)(2). | Is dismissal as a punishment for a plaintiff's failure to comply with a court order is in large measure a discretionary matter with a trial judge? | Pretrial Procedure - Memo # 7132 - C - NS_58025.docx | ROSS-003321395-ROSS-003321396 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 5440 | Jackson v. Carolina Hardwood Co., 120 N.C. App. 870 | 307A+622 | In response, defendant argues that the complaint should be dismissed because plaintiff's claims are barred under the doctrine of res judicata. Where the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim, the complaint may properly be dismissed by a motion under Rule 12(b)(6). Brown v. Brown, 21 N.C.App. 435, 437, 204 S.E.2d 534, 535 (1974). | Where complaint discloses unconditional affirmative defense which defeats claim asserted or pleads facts which deny right to any relief on alleged claim, complaint may properly be dismissed for failure to state claim upon which relief can be granted. Rules Civ.Proc., Rule 12(b)(6), G.S. S 1A-1. | What happens if a complaint discloses an unconditional affirmative defense which defeats the claim asserted? | Pretrial Procedure - Memo # 7600 - C - TM_57808.docx | ROSS-003279474-ROSS-003279475 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 5441 | Broudy v. Mather, 460 F.3d 106 | 34+102 | This argument misreads the statute. Section 511(a) does not give the VA exclusive jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits, see " 511(a) ("[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans"), and, more importantly for the question of our jurisdiction, prevents district courts from "review[ing]" the Secretary's decision once made, see id. (except as provided by subsection (b), "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court") (emphasis added). | Statute providing that Secretary of Department of Veterans Affairs (VA) "shall decide all questions of law and fact necessary" to a veterans benefits decision, and that such decision is not reviewable by any court, does not vest exclusive jurisdiction with Secretary to construe laws affecting provision of benefits; statute divests courts of authority to review Secretary's benefits decisions once made, but does not divest federal district court of jurisdiction to consider question arising underlaw affecting provision of benefits, where Secretary has not yet made decision on same question. 38 U.S.C.A. S 511(a). | Does the Secretary of the Department of Veterans Affairs (VA) make determinations regarding the availability of VA benefits? | 008791.docx | LEGALEASE-00149772-LEGALEASE-00149773 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 5442 | Cox v. McDonald, 28 Vet. App. 318 | 34+101.1 | However, when VA's interpretation of a statute is clear from its existing regulations, any discrepancy between the VA's internal Adjudications Manual and the agency's properly promulgated regulations "does not confer any rights" on a claimant. Haas v. Peake, 525 F.3d 1168, 1197 (Fed. Cir. 2008). Further, in Fournier v. Shinseki, this Court held that, where an existing regulation defined the scope of the required notice to a veteran of denial of his or her claim from VA, the M21"1 provision at issue that required the notice to be in the form of a rating decision "does not establish or alter the criteria for benefits but only illuminates a suggested procedural practice for VA adjudicators." 23 Vet.App. 480, 487 (2010). In other words, the manual provision provided guidance but did not create a substantive right to notice in the form of a rating decision. | When the Veterans Affairs' (VA) interpretation of a statute is clear from its existing regulations, any discrepancy between the VA's internal adjudications manual and the agency's properly promulgated regulations does not confer any rights on a claimant. | Does a discrepancy between the VA's internal adjudications manual and the agency's properly promulgated regulations confer any rights on a claimant? | Armed Services - Memo 340 - RK_58613.docx | ROSS-003282010-ROSS-003282011 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5443 | Northridge v. Grenier, 278 Mass. 438 | 8.30E+05 | Before the passage of any controlling statute and under the common law of this commonwealth a written promise to pay in the terms of one here in suit was not negotiable. Stults v. Silva, 119 Mass. 137; Mahoney v. Fitzpatrick, 133 Mass. 151, 43 Am. Rep. 502. It is not necessary to revert to the common law and those decisions do not state the present law of the commonwealth in view of the explicit provisions of G. L. c. 107, already quoted. It is our duty to construe the provisions of the Negotiable Instrument Act in conformity to their obvious meaning without regard to the previous law of the commonwealth unless necessary to resolve some doubt or obscurity. Union Trust Co. v. McGinty, 212 Mass. 205, 207, 98 N. E. 679, Ann. Cas. 1913C, 525. | Negotiable Instrument Law must be construed in conformity to its obvious meaning, without regard to previous law of commonwealth, unless necessary to resolve some doubt or obscurity. G.L. c. 107, SS 23, 26 (M.G.L.A. c. 106 SS 3-102(1) (b), 3-104(1), 3-109). | Should the provisions of the Negotiable Instrument Act be construed in conformity to their obvious meaning without regard to the previous law? | 010616.docx | LEGALEASE-00149175-LEGALEASE-00149176 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5444 | Adams v. Bank of Am., N.A., 237 F. Supp. 3d 1189 | 172H+1350 | In the alternative, even if the court were to consider the merits of Plaintiffs' Truth in Lending Act claim (and to be sure, it need not), Defendant would nonetheless still be entitled to summary judgment on that claim. TILA requires creditors to provide lenders with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights," including the right of rescission.Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). "Pursuant to " 1640(e), all TILA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. " 1640(e). The violation "occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations."13 Velardo v. Fremont Inv. & Loan, 298 Fed.Appx. 890, 892 (11th Cir. 2008). Accordingly, the latest possible date where a credit action was "consummated" between Defendant and Plaintiffs was on August 29, 2011, when the parties modified the Mortgage and Note by mutual agreement. (See Doc. # 31"2 at 11; Doc. # 31"8 at pp. 32"36). Plaintiffs' originally brought this suit in state court on September 20, 2015 (Doc. # 1"1), well after the August 29, 2012 deadline imposed by the statute of limitations. As such, Defendant is additionally entitled to summary judgment as to Count Three of Plaintiffs' Amended Complaint because Plaintiffs' TILA claim is time-barred. | Truth in Lending Act (TILA) requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights, including the right of rescission. Truth in Lending Act S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Are creditors required to disclose the terms of the borrowers rights? | 013921.docx | LEGALEASE-00149523-LEGALEASE-00149524 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 5445 | Beukes v. GMAC Mortg., 786 F.3d 649 | 172H+1372 | The disputed issue is how to measure whether the finance charge disclosed by the lender in 2007 was "accurate." The Act tolerates some variation between the amount disclosed as the finance charge and the actual finance charge. According to 15 U.S.C. " 1605(f)(2)(A), a disclosure of the finance charge generally must be treated as accurate in a refinancing transaction like this one if "the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended." In this case, that amount is $1235. | Under the Truth in Lending Act (TILA), a lender's disclosure of the finance charge in a refinancing transaction generally must be treated as "accurate" if the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended, unless the borrower has attempted to exercise his or her rescission rights after the initiation of any judicial or nonjudicial foreclosure process, in which case a narrower tolerance for variation applies. Truth in Lending Act, SS 106(f)(2), 125(i)(2), 15 U.S.C.A. SS 1605(f)(2), 1635(i)(2). | When is disclosure of the finance charge treated as accurate? | 013935.docx | LEGALEASE-00149541-LEGALEASE-00149542 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 5446 | Oakman v. Ogilvie, 185 S.C. 118 | 200+183 | In this case the jury has found that the defendants were guilty of actionable negligence. Every traveler on the highway, exercising due care himself, in the absence of any circumstances which reasonably should put him on notice to the contrary, is entitled to assume, and to act upon the assumption, that others using it in common with him will exercise reasonable care. Thus, a person, as in this case, who is standing on the running board of a stationary truck, which is on its extreme right-hand side of the center of the highway, has the right to rely upon the observance of the rules of the road by the operator of an approaching automobile; and, when there is sufficient room for a motor vehicle to pass him without interference, he is not necessarily negligent in assuming that the driver will so operate the motor vehicle as not to injure him. | Every traveler on the highway, exercising due care, in the absence of any circumstances which reasonably should put him on notice to the contrary, is entitled to assume and to act upon the assumption, that others using it in common with him will exercise reasonable care. | Can a traveler assume that others would also exercise reasonable care? | 018705.docx | LEGALEASE-00149706-LEGALEASE-00149707 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 5447 | Williams v. Shinseki, 161 F. Supp. 3d 77 | 170A+1772 | "Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." " Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." Id. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. Id. | A complaint will not survive a motion to dismiss for failure to state a claim if it tenders naked assertions devoid of further factual enhancement; rather, a complaint must contain sufficient factual allegations that, if accepted as true, state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6). | Does a complaint suffice if it tenders naked assertions devoid of further factual enhancement? | Pretrial Procedure - Memo # 7969 - C - SS_58331.docx | ROSS-003293787-ROSS-003293788 | Condensed, Order, SA, Sub | 0.68 | 1 | 1 | 1 | 1 | 1 |
| 5448 | Capaci v. Folmar Kenner, 43 So. 3d 1229 | 30+3206 | The determination of whether a party's conduct was willful or contumacious is within the trial court's discretion. "Because the trial judge is in the best position to assess the conduct of the plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court." Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d at 341 (citing Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 947 (9th Cir.1976), and Von Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F.2d 1047, 1051 (9th Cir.1971)). However, the dismissal of a party's claim with prejudice is a drastic sanction that should be used only in extreme situations. Burdeshaw v. White, 585 So.2d at 847. Further, ""[d]ismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal." " Hosey v. Lowery, 911 So.2d at 17 (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989)). | Because the trial judge is in the best position to assess the conduct of plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court. Rules Civ.Proc., Rule 41(b). | "Should involuntary dismissal for failure of plaintiff to prosecute or to comply with rules or any order of court, be carefully scrutinized?" | Pretrial Procedure - Memo # 8029 - C - SKG.docx | LEGALEASE-00039379-LEGALEASE-00039380 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5449 | Scottsdale Ins. Co. v. Lakeside Cmty. Comm., 2016 IL App (1st) 141845 | 307A+686.1 | A motion to dismiss based on section 2"619 admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. Mount Mansfield Insurance Group, Inc. v. American International Group, Inc., 372 Ill.App.3d 388, 392, 310 Ill.Dec. 200, 865 N.E.2d 524 (2007). In particular, section 2"619(a)(5) permits the circuit court to dismiss a cause of action if was not commenced within the time limited by law. We review a section 2"619 order of dismissal de novo. Porter v. Decatur Memorial Hospital, 227 Ill.2d 343, 352, 317 Ill.Dec. 703, 882 N.E.2d 583 (2008). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. S.H.A. 735 ILCS 5/2-619. | Would a motion to dismiss based upon certain defects or defenses admit the legal sufficiency of the complaint? | 036455.docx | LEGALEASE-00149988-LEGALEASE-00149989 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5450 | Schafer v. City of Defiance Police Dep't, 529 F.3d 731 | 170A+1758.1 | Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court. Knoll v. AT & T, 176 F.3d 359, 362"63 (6th Cir.1999). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." Id. at 363 (brackets and internal quotation marks omitted). A district court therefore "must be given substantial discretion in serving these tasks." | District courts have the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the federal rules of civil procedure or any order of the court. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A. | Does the district court have authority to dismiss claims with prejudice for a party's failure to prosecute or to comply with procedural rules or court orders? | 036612.docx | LEGALEASE-00149414-LEGALEASE-00149415 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5451 | Wildcat Prop. Mgmt. v. Reuss, 302 S.W.3d 89 | 307A+581 | Rule 25 is virtually the same as CR 77.02(2), which states:at least once each year trial courts shall review all pending actions on their dockets. Notice shall be given to each attorney of record of every case in which no pretrial step has been taken within the last year, that the case will be dismissed in thirty days for want of prosecution except for good cause shown. The court shall enter an order dismissing without prejudice each case in which no answer or an insufficient answer to the notice is made.Commonly referred to as "housekeeping rules," CR 77.02, and its local counterpart, Fayette Local Rule 25, are a means to expedite the removal of unprosecuted cases from court dockets. Construing CR 77.02(2), this Court has said:Under the plain language of the rule, the trial court is required once a year to review its cases and dismiss those in which no pretrial steps have been taken in the preceding year unless good cause is shown. Notably, however, the rule provides that cases shall be dismissed "without prejudice." | "Housekeeping rules," which allow a trial court to dismiss actions without prejudice for lack of prosecution when no pretrial steps have been taken within the preceding year, are a means to expedite the removal of unprosecuted cases from court dockets. Rules Civ.Proc., Rule 77.02(2); Fayette Circuit Criminal and Civil Court Rule 25. | "Can a court dismiss actions without prejudice for lack of prosecution, when no pretrial steps have been taken within the preceding year?" | 036637.docx | LEGALEASE-00149917-LEGALEASE-00149918 | Condensed, Order, SA, Sub | 0.67 | 1 | 1 | 1 | 1 | 1 |
| 5452 | Spates v. Howell, 420 S.W.3d 776 | 307A+622 | A motion filed under Rule 12.02(6) of the Tennessee Rules of Civil Procedure "is an appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 455"56 n. 11 (Tenn.2012) (citing Hawk v. Chattanooga Orthopaedic Grp., P.C., 45 S.W.3d 24, 28 (Tenn.Ct.App.2000); 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice " 11:3, at 857"58 (2011 ed.)). However, this type of motion "tests only the legal sufficiency of the plaintiff's complaint," not the strength of the plaintiff's proof or evidence. Id. at 455 (citing Highwoods Props., Inc. v. City of Memphis, 297 S.W.3d 695, 700 (Tenn.2009)). Thus, we resolve a motion to dismiss by an examination of the pleadings alone. Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn.2011). "A defendant who files a motion to dismiss "admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action." " Id. (quoting Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854 (Tenn.2010)). At this early stage of the proceedings, courts " "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." " Id. (quoting Tigg v. Pirelli Tire Corp., 232 S.W.3d 28, 31"32 (Tenn.2007)). | A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but asserts that the allegations fail to establish a cause of action. Rules Civ.Proc., Rule 12.02(6). | Does a defendant who files a motion to dismiss admit the truth of all of the relevant and material allegations contained in the complaint? | Pretrial Procedure - Memo # 8184 - C - NS_58759.docx | ROSS-003319316-ROSS-003319317 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5453 | Wells Fargo Bank v. Country Place Condo. Ass'n, 304 Mich. App. 582 | 307A+622 | A motion for summary disposition pursuant to MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim. A defense to a claim is invalid for the purposes of MCR 2.116(C)(9) when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery. [Payne v. Farm Bureau Ins., 263 Mich.App. 521, 525, 688 N.W.2d 327 (2004) (quotation marks and citations omitted).]. | A motion for summary disposition for alleged failure to state a valid defense against a claim asserted tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim. MCR 2.116(C)(9). | Does a motion for summary disposition for failure to state a valid defense to the claim test the legal sufficiency of a defense? | Pretrial Procedure - Memo # 8338 - C - KI_58851.docx | ROSS-003296697-ROSS-003296698 | Condensed, Order, SA, Sub | 0.52 | 1 | 1 | 1 | 1 | 1 |
| 5454 | Pub. Res. Prot. Assn. v. Dep't of Forestry & Fire Prot., 7 Cal. 4th 111 | 411+7 | The Legislature has vested in the board the authority to adopt forest practice rules and regulations "to assure the continuous growing and harvesting of commercial forest tree species and to protect the soil, air, fish, and wildlife, and water resources" (" 4551.) It has expressly granted to the board the power to continuously review and revise those rules (" 4553), and, in section 4555, specifically authorizes the director of the department to withhold approval of a timber harvesting plan if the director determines that existing rules are insufficient to prevent significant harm to the natural resources of the state. If the board concurs in the director's conclusion, it is required to amend the rules by emergency regulation so that they conform to the intent of the Act. The director then has 15 days to act on the pending timber harvesting plan. | Legislature has given Board of Forestry authority to adopt forest practice rules and regulations in order to assure continuous growing and harvesting of commercial forest tree species and to protect environment, which authority includes power to review and revise rules and to withhold approval of timber harvesting plan if director determines that existing rules are insufficient to prevent significant harm to state's natural resources. West's Ann.Cal.Gov.Code SS 11342.1, 11342.2; West's Ann.Cal.Pub.Res.Code SS 4551, 4553. | Has the legislature vested in the board the authority to adopt forest practice rules and regulations? | Woods and Forest - Memo 24-ANM_58702.docx | ROSS-003284923-ROSS-003284924 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5455 | Mathews v. Sun Oil Co., 411 S.W.2d 561 | 156+32(1) | We further conclude, under the uncontroverted facts of this case, the appellants are estopped from seeking to convert the single lease on both Sections 13 and 4 into two separate leases on each of these sections. This same doctrine of estoppel by deed also precludes the contention that production on Section 13 does not continue the lease in force as to Section 4. Estoppel by contract or deed is the doctrine whereby a party is bound by the terms of his own contract or deed until it is set aside by fraud, accident or mistake. United Fidelity Life Insurance Co. v. Fowler (Tex.Civ.App.) 38 S.W.2d 128 (Error Dis.) and Gress v. Gress (Tex.Civ.App.) 209 S.W.2d 1003 (Ref. N.R.E.). 22 Tex.Jur.2d Estoppel, Section 3. Estoppel by deed precludes parties to a valid sealed instrument and their privies to deny its force and effect by evidence of inferior solemnity. It denies to the grantor or those claiming under him the right to take a position inconsistent with the grant. Surtees v. Hobson, Tex.Civ.App., 4 S.W.2d 245. Affirmed Tex.Com.App., 13 S.W.2d 345. That doctrine is applicable under the uncontradicted facts of this case. | Estoppel by deed precludes parties to a valid sealed instrument and their privies from denying its force and effect by evidence of inferior solemnity. | Is estoppel by deed a preclusion against the competent parties to a valid sealed instrument to deny its force and effect by any evidence of inferior solemnity? | 018014.docx | LEGALEASE-00150408-LEGALEASE-00150409 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 5456 | Bassim v. Hassett, 184 A.D.2d 908 | 379+155 | Although plaintiff did not advert to prima facie tort in his complaint, he did so in his response to defendant's motion to dismiss and for summary judgment when he stated that "there are clues as to presence of defamation and prima facie tort in the Defendant's profile to justify probing into the matter via Discovery". Even viewing the pleadings in the light most favorable to plaintiff, it cannot be said that a cause of action in prima facie tort has been stated. Prima facie tort, which may be pleaded in the alternative with traditional torts, consists of unjustified or inexcusable intentional infliction of harm, causing special damages, by an act or series of acts that would otherwise be lawful (Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324; see, Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332"333, 464 N.Y.S.2d 712, 451 N.E.2d 459). | "Prima facie tort," which may be pleaded in the alternative with traditional torts, consists of unjustified or inexcusable intentional infliction of harm, causing special damages, by an act or series of acts which would otherwise be lawful. | Can prima facie tort be pleaded in the alternative? | Pleading - Memo 490-RMM.docx | LEGALEASE-00039990-LEGALEASE-00039991 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5457 | Leon v. Martinez, 638 N.E.2d 511 | 307A+685 | Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law (see, e.g., Heaney v. Purdy, 29 N.Y.2d 157, 324 N.Y.S.2d 47, 272 N.E.2d 550).In assessing a motion under CPLR 3211(a)(7), however, a court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint (Rovello v. Orofino Realty Co., supra, 40 N.Y.2d at 635, 389 N.Y.S.2d 314, 357 N.E.2d 970) and "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 372 N.E.2d 17; Rovello v. Orofino Realty Co., supra, 40 N.Y.2d at 636, 389 N.Y.S.2d 314, 357 N.E.2d 970). In light of these principles, we agree with the majority at the Appellate Division that the instant complaint and supporting affidavit, although inartfully drafted, adequately alleged for pleading survival purposes that the instrument prepared by Futterman was intended by all parties to effectuate a present assignment to plaintiffs of interests in the future settlement | In assessing motion to dismiss for failure to state cause of action, court may freely consider affidavits submitted by plaintiff to remedy any defects in complaint. McKinney's CPLR 3211(a), par. 7. | In assessing a motion to dismiss for failure under CPLR 3211(a)(7) is the criterion is that proponent of the pleading has a cause of action to state a cause of action? | 036653.docx | LEGALEASE-00150498-LEGALEASE-00150499 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5458 | Estate of Radvin ex rel. Radvin v. City of New York, 38 Misc. 3d 821 | 307A+622 | The criterion in considering a motion to dismiss under CPLR 3211(a)(7) "is whether the proponent of the pleading has a cause of action, not whether he has stated one" (Allen v. City of New York, 49 A.D.3d 1126, 1127, 855 N.Y.S.2d 279 [3d Dept.2008] (citing Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 372 N.E.2d 17 [1977]; see Griffin v. Anslow, 17 A.D.3d 889, 891, 793 N.Y.S.2d 615 [3d Dept.2005] )). Affidavits and other evidentiary material may be considered to "establish conclusively that [the] plaintiff has no cause of action" (Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 636, 389 N.Y.S.2d 314, 357 N.E.2d 970 [1976]; see Wilhelmina Models, Inc. v. Fleisher, 19 A.D.3d 267, 268"69, 797 N.Y.S.2d 83 [1st Dept.2005]). | The criterion in considering a motion to dismiss for failure to state a cause of action is whether the proponent of the pleading has a cause of action, not whether he has stated one. McKinney's CPLR 3211(a)(7). | Is the criterion in considering a motion to dismiss for failure under CPLR 3211(a)(7) to state a cause of action whether the proponent of the pleading has a cause of action? | Pretrial Procedure - Memo # 8163 - C - PC_58975.docx | ROSS-003292275-ROSS-003292277 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5459 | Hutchison v. Tompkins, 259 So. 2d 129 | 115+9 | Finally, we disagree that a finding that the liquidated damage provision constituted a penalty would have required that the complaint be dismissed for failure to state a cause of action. It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages, and a motion to dismiss should be overruled.Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 So. 209, 24 L.R.A.,N.S., 134 (1909) and Augustine v. Southern Bell Telephone & Telegraph Co., 91 So.2d 320 (Fla.1956). In our opinion this principle is applicable to the instant case since the complaint alleged a contract creating a legal right in the petitioners to receive the contract price in exchange for the land, and an invasion of that right when the respondent failed to perform. | Where allegations of complaint show invasion of legal right, plaintiff may recover at least nominal damages and motion to dismiss should be overruled. | "Where the allegations of a complaint show the invasion of a legal right, can the plaintiff on the basis thereof recover at least nominal damages?" | 036672.docx | LEGALEASE-00150070-LEGALEASE-00150071 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5460 | Theilmann v. Rutland Hosp., 455 F.2d 853 | 170A+1758.1 | Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations. Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 888 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Syracuse Broadcasting Corp. v. Newhouse, 271 F.2d 910, 914 (2d Cir. 1959). Nevertheless, the authority to invoke it for lack of prosecution, both on defendant's motion and sua sponte, is an inherent ". . . control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash Railroad Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). Thus the scope of review over an order of dismissal accorded an appellate court is extremely narrow, confined solely to whether the control has been exercised within the permissible range of the trial court's discretion. Peterson v. Term Taxi Inc., 429 F.2d 888, 890 (2d Cir. 1970); Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 879 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969); Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146, 148 (3rd Cir. 1968). | Dismissal with prejudice is harsh remedy to be utilized only in extreme situations, but authority to invoke it for lack of prosecution, both on defendant's motion and sua sponte is an inherent control vested in courts. Fed.Rules Civ.Proc. rule 41(b), 28 U.S.C.A. | Is a dismissal with prejudice a harsh remedy to be utilized only in extreme situations? | 036835.docx | LEGALEASE-00150373-LEGALEASE-00150374 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5461 | Adem v. Des Peres Hosp., 515 S.W.3d 810 | 307A+622 | "Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit." ITT Commercial Fin. Corp. v. Mid"America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). "Missouri rules of civil procedure demand more than mere conclusions that the pleader alleges without supporting facts." Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Employees, 43 S.W.3d 293, 302 (Mo. banc 2001) (citing Rule 55.05). Missouri is a fact-pleading state and every petition must contain facts that sufficiently demonstrate the pleader is entitled to the relief sought. ITT, 854 S.W.2d at 379. "A petition must contain allegations of fact in support of each essential element of the cause sought to be pleaded." Sparks v. PNC Bank, 400 S.W.3d 454, 460 (Mo. App. E.D. 2013). This Court disregards all conclusions in a petition when they are not supported by facts. Zafer Chiropractic & Sports Injuries, P.A. v. Hermann, 501 S.W.3d 545, 2016 WL 6106851, 2, 2016 Mo. App. LEXIS 1020, 5 (Mo. App. E.D. October 18, 2016). | Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit. | Can a trial court dismiss a claim when a party fails to state a cause of action or fails to state facts entitling him to relief? | 036975.docx | LEGALEASE-00150306-LEGALEASE-00150307 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5462 | Darby v. Wal-Mart, 775 So. 2d 592 | 307A+622 | Dismissal of a claim is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93"0690 (La.7/5/94), 640 So.2d 237. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law. City of New Orleans v. Board of Directors of Louisiana State Museum, 98"1170 (La.3/2/99), 739 So.2d 748; Holloway v. Midland Risk Insurance Co., 33,026 (La.App.2d Cir.5/15/00), 759 So.2d 309. | Dismissal of a claim is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. | Is it justified to dismiss a claim when the allegations of the petition clearly show that the plaintiff does not have a cause of action? | Pretrial Procedure - Memo # 8523 - C - NS_59202.docx | ROSS-003281963-ROSS-003281964 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 5463 | Summerlin v. Com., 37 Va. App. 288 | 3.77E+11 | To establish a threat to bomb under Code " 18.2"83, the Commonwealth was required to prove Summerlin made and communicated to SRHA a "threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure." As we stated in analyzing this statute in Perkins: A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property. The communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expression of intent. 12 Va.App. at 16, 402 S.E.2d at 234. We further noted in Parnell that a threat is "an avowed present determination or intent to injure presently or in the future." 15 Va.App. at 345"46, 423 S.E.2d at 836"37. Code " 18.2"83, however, does not require the Commonwealth to prove that Summerlin intended to carry out his threat to bomb the SRHA building. Proof that he intended to make and communicate the threat and that the threat was made and communicated satisfies the statutory requirement. See Parnell, 15 Va.App. at 346"47, 423 S.E.2d at 837. | A "threat," in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property; the communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expression of intent. Code 1950, S 18.2-83. | How is a threat in the criminal context recognized? | Threats and Stalking - Memo #42 - C - LB_58924.docx | ROSS-003291974-ROSS-003291975 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5464 | Graig Shipping Co. v. Midland Overseas Shipping Corp., 259 F. Supp. 929 | 25T+182(2) | It is clear that a libellant may not invoke arbitration and yet seek pre-trial discovery going to the merits. Penn Tanker Co. of Del. v. C.H.Z. Rolimpex, Warszawa, 199 F.Supp. 716 (S.D.N.Y.1961). While 9 U.S.C. " 8 contemplates that a party to an arbitration agreement may bring a libel to obtain the benefit of security by attachment, The Sydfold, 25 F.Supp. 662 (S.D.N.Y.1938), that section does not give a libellant the unrestricted privilege of utilizing pre-trial procedures. While it may be permissible to allow a libellant discovery of information related to security, any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible.Libellant, as I have said before, contends here that it did not intend and has not gone to the merits, but the record does not so indicate. Libellant, I believe, should be bound here by the objective manifestation of the record, which is that discovery going to the merits was sought | Though statute contemplates that party to arbitration agreement may bring libel to obtain benefit of security by attachment, statute does not give libellant unrestricted privilege of utilizing pre-trial procedures, and though it may be permissible to allow libellant discovery of information relating to security, any attempt to go to merits and to retain still the right to arbitration is clearly impermissible. 9 U.S.C.A. S 8. | Can a party to an arbitration agreement bring a libel to obtain the benefit of security by attachment? | 007936.docx | LEGALEASE-00151399-LEGALEASE-00151400 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 5465 | Aspenhof Corp. v. State Tax Comm'n of Missouri, 789 S.W.2d 867 | 371+2515 | The assessed valuation of property is its true value in money. True value in money is the fair market value of the property on the valuation date, Hermel, 564 S.W.2d at 897, and is a function of its highest and best use, which is the use of the property which will produce the greatest return in the reasonably near future. It is at best an estimate.Newman v. State Tax Commission, 781 S.W.2d 193, 194 (Mo.App.1989). Determining the true value in money is an issue of fact for the Commission. O'Flaherty v. State Tax Commission, 698 S.W.2d 2, 3 (Mo. banc 1985). | Assessed valuation of property is its true value in money; true value in money is fair market value of property on valuation date, and is function of its highest and best use, which is use of property which will produce greatest return in reasonably near future. | Is true value an absolute figure or an estimate of the fair market value of the property on the valuation date? | 018344.docx | LEGALEASE-00150954-LEGALEASE-00150955 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5466 | Proctor v. Bank of New Hampshire, N.A., 123 N.H. 395 | 307A+624 | In determining whether a motion to dismiss should be granted, all facts properly pleaded are assumed to be true, and the reasonable inferences therefrom are construed most favorably to the plaintiff. Jarvis v. Prudential Ins. Co., 122 N.H. 648, 651, 448 A.2d 407, 409 (1982). If the plaintiff could recover upon any set of facts under the pleadings, the motion to dismiss as to that count should be denied. Id., 448 A.2d at 409. | In determining whether a motion to dismiss should be granted, all facts properly pleaded are assumed to be true, and reasonable inferences therefrom are construed most favorably to the plaintiff; if the plaintiff could recover on any set of facts under the pleadings, the motion to dismiss as to that count should be denied. | "In considering a motion to dismiss, does the court assume the petitioner's pleadings to be true and construes all reasonable inferences drawn therefrom most favorably to him?" | 037171.docx | LEGALEASE-00150844-LEGALEASE-00150845 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 5467 | Byrne & Jones Enterprises v. Monroe City R-1 Sch. Dist., 493 S.W.3d 847 | 307A+679 | This Court reviews the grant of a motion to dismiss de novo. Ambers"Phillips v. SSM DePaul Health Ctr., 459 S.W.3d 901, 905 (Mo. banc 2015). "In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." Doss v. Doss, 822 S.W.2d 427, 428 (Mo. banc 1992). "This Court must affirm the dismissal if it can be sustained on any ground supported by the motion to dismiss." Beck v. Fleming, 165 S.W.3d 156, 158 (Mo. banc 2005). | In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief. | "In reviewing the dismissal of a petition, what is the sole issue to be decided?" | Pretrial Procedure - Memo # 8464 - C - NS_59163.docx | ROSS-003282909-ROSS-003282910 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 5468 | Schreiner v. Karson, 52 Ohio App. 2d 219 | 307A+690 | The trial judge's lack of patience is understandable. A dismissal with prejudice, however, is an extremely harsh sanction. It affects not only the suit dismissed but, because it acts as a decision on the merits, also controls questions of fact in other related cases. The law favors deciding cases on their merits unless the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order. Dyotherm Corp. v. Turbo Machine Co., supra; Flaska v. Little River Marine Constr. Co. (C.A. 5, 1968), 389 F.2d 885, certiorari denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387; cf. McDonald v. Haught (1967), 10 Ohio St.2d 43, 46, 225 N.E.2d 235; Brown v. Best (1974), 44 Ohio App.2d 82, 84, 335 N.E.2d 734. Lesser sanctions than a dismissal with prejudice should be applied when possible. Flaska, supra; Dyotherm, supra. | Lesser sanctions than dismissal with prejudice before trial should be applied unless a plaintiff's conduct is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for dismissal for failure to prosecute or obey a court order. Civ.R. 41(B)(1). | Is dismissal for failure to prosecute or comply with a court order appropriate where the conduct of a party is dilatory as to merit the harsh sanction of a dismissal with prejudice? | 037228.docx | LEGALEASE-00151102-LEGALEASE-00151103 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5469 | Cangemi v. Advocate S. Suburban Hosp., 364 Ill. App. 3d 446 | 307A+561.1 | The question presented on review of a motion to dismiss pursuant to section 2"615 is "whether sufficient facts are contained in the pleadings which, if established, could entitle plaintiff to relief." Nickum, 159 Ill.2d at 488, 203 Ill.Dec. 463, 639 N.E.2d at 1291. On the other hand, while a motion to dismiss pursuant to section 2"619 also attacks the legal sufficiency of the complaint, it generally does so by raising affirmative matter that avoids the legal effect of or defeats the claim Nickum, 159 Ill.2d at 485, 203 Ill.Dec. 463, 639 N.E.2d at 1289. The question on review of a motion to dismiss pursuant to section 2"619 is "whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." Nickum, 159 Ill.2d at 494, 203 Ill.Dec. 463, 639 N.E.2d at 1294. | While a motion to dismiss pursuant to section of Code of Civil Procedure allowing for involuntary dismissal of claim based on certain defects or defenses attacks the legal sufficiency of the complaint, it generally does so by raising affirmative matter that avoids the legal effect of or defeats the claim. S.H.A. 735 ILCS 5/2-619. | Does a motion to dismiss raise an affirmative matter that avoids the legal effect of or defeats the claim? | 037352.docx | LEGALEASE-00151046-LEGALEASE-00151047 | Condensed, Order, SA, Sub | 0.59 | 1 | 1 | 1 | 1 | 1 |
| 5470 | W. Radio Servs. Co. v. Allen, 147 F. Supp. 3d 1132 | 205H+3 | Unjust enrichment is a theory of "quasi-contract" based on an implied contract. See Summer Oaks Ltd. P'ship v. McGinley, 183 Or.App. 645, 654, 55 P.3d 1100 (2002). The theory of unjust enrichment provides a remedy where no enforceable contract exists, and 1) one party has conferred a benefit on another, 2) the recipient is aware that a benefit has been received, and 3) "under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." | Under Oregon law, the theory of unjust enrichment provides a remedy where no enforceable contract exists, and (1) one party has conferred a benefit on another, (2) the recipient is aware that a benefit has been received, and (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. | Is unjust enrichment a remedy? | Woods and Forests-Memo 61-ANM-JR_59292.docx | ROSS-003281273-ROSS-003281274 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 5471 | Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387 | 25T+374(1) | Federal asserts, however, that the arbitrators had exceeded the bounds of the submission agreement by passing on the validity of the individual contracts. But this judgment presupposes a rule of law"that the validity of the master charter depended only on whether the delay in furnishing the first ship was a substantial breach of the contract. It is not the function of a reviewing court, in the guise of interpreting the scope of the submission agreement, to substitute its judgment on the law for what the arbitrators thought with good reason to be relevant. Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); cf. 9 U.S.C. " 10. Moreover, Federal certainly was on notice that if the arbitrators held the master charter invalid, they would necessarily be ruling in favor of Kanematsu as to the individual charters. | It is not function of reviewing court, in guise of interpreting scope of submission agreement, to substitute its judgment on law for what arbitrators thought with good reason to be relevant. | Can the reviewing court substitute its judgment on the law for what an arbitrator thought with good reason to be relevant? | Alternative Dispute Resolution - Memo 812 - RK_59497.docx | ROSS-003279458-ROSS-003279459 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5472 | Bonner v. Michigan Logistics Inc., 250 F. Supp. 3d 388 | 25T+175 | However, a court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency [and] the [FAA] "requires piecemeal resolution when necessary to give effect to an arbitration agreement." " Tracer Research Corp., 42 F.3d at 1294 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24"25, 103 S.Ct. 927) (emphasis in original). "[T]he judicial inquiry ... must be strictly confined to the question whether the reluctant party did agree to arbitrate[.]" United Steelworkers, 363 U.S. at 582, 80 S.Ct. 1347. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp., 207 F.3d at 1130 (citing Simula, 175 F.3d at 719"20; Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 477"78 (9th Cir. 1991)); see Simula, 175 F.3d at 720 (stating that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citing Howard Elec. & Mech. v. Briscoe Co., 754 F.2d 847, 849 (9th Cir. 1985)). | A court cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency, and the Federal Arbitration Act (FAA) requires piecemeal resolution when necessary to give effect to an arbitration agreement. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act require piecemeal resolution when necessary to give effect to arbitration agreement? | 007972.docx | LEGALEASE-00151435-LEGALEASE-00151436 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5473 | Joca-Roca Real Estate v. Brennan, 772 F.3d 945 | 25T+182(2) | In determining whether a conduct-based waiver has occurred, we ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir.2005); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir.2003).That determination is informed by a salmagundi of factors, including: the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced. See, e.g., Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc.), 376 F.3d 23, 26 (1st Cir.2004); Restoration Pres. Masonry, 325 F.3d at 61. | In determining whether a conduct-based waiver of the contractual right to arbitration has occurred, the court asks whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice, and that determination is informed by a salmagundi of factors, including the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced. | What should the court examine in order to determine whether a conduct based waiver of the contractual right to arbitration has occurred? | Alternative Dispute Resolution - Memo 831 - RK.docx | LEGALEASE-00041222-LEGALEASE-00041223 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 5474 | Berhorst v. J.L. Mason of Missouri, 764 S.W.2d 659 | 25T+182(2) | Actions constituting waiver of the right to arbitrate may include the applicant's engaging in some combination of filing an answer, setting up a counterclaim, pursuing discovery, and moving for a continuance prior to a stay pending arbitration. Parcel Tankers, Inc. v. Formosa Plastics Corp., 569 F.Supp. 1459, 1467[6"9] (S.D.Texas 1983). In Rush v. Oppenheimer & Co., 779 F.2d 885 (2nd Cir.1985), the court held that it was "beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate, for in addition, prejudice ... must be demonstrated." Id. at 887[1].In Lake Communications, Inc. v. ICC Corp., 738 F.2d 1473, 1477[34] (9th Cir.1984), waiver was not found, nor prejudice to the opposing party, despite the fact that movant had earlier alluded to an arbitration provision and gave notice of their intent to rely upon it but did not motion to compel until more than a year after the complaint was filed and had initiated limited discovery prior to the motion to compel. Id. at 1477[3, 4]. | Actions constituting waiver of right to arbitrate may include applicant's engaging in some combination of filing answer, setting up counterclaim, pursuing discovery and moving for continuance prior to seeking stay pending arbitration. 9 U.S.C.A. S 1 et seq. | What do actions constituting waiver of arbitration include? | 008031.docx | LEGALEASE-00151506-LEGALEASE-00151507 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 5475 | Hunt v. NationsCredit Fin. Servs. Corp., 902 So. 2d 75 | 83E+878 | NationsCredit submitted evidence that it took the note for value ($27,182.41), in good faith, and without notice of Hunt's failure-of-consideration or lack-of-mutual-assent defenses, thus entitling it to holder-in-due-course status. See " 7"3"302(a)(2), Ala.Code 1975. Hunt presented no evidence to the contrary. Instead, her attorney argued to the trial court that common sense dictated that a second assignee like Chrysler First (NationsCredit's predecessor corporation) must have been on notice that Rice had paid Hunt less than the $25,000 that Rice received from Invest Co. (the first assignee) because the assignments occurred during the first year of a 15"year loan with a face amount of $35,000, the borrower's payments on the loan were current, and, Hunt claimed, Rice was in no distress to sell the note at a discount. The trial court was apparently unwilling, as we are, to accept the factual and legal premises underlying that argument. As the Alabama Supreme Court stated in Spires v. Jones, 212 Ala. 117, 101 So. 753 (1924):" "The mere fact that a note is purchased for an amount less than its face, or that an unusually large discount is accepted, is never of itself sufficient to charge the purchaser with notice of existing equities, unless the consideration is merely nominal. However, inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of bad faith, especially if the consideration is grossly inadequate." 8 Corp. Jur. 508, " 717. This is, of course, a corollary to the general rule that negotiable paper may be bought and sold like any other chattel at its real or supposed value, and the transfer of such an instrument at a discount greater than the legal rate of interest does not deprive the transferee of the protection of a bona fide purchaser for value." 212 Ala. at 119, 101 So. at 754. In the absence of any evidence to refute the showing that NationsCredit was a | Inadequacy in the amount an assignee of a promissory note paid for the note is always a fact to be considered by the jury in an action to collect on the note as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of bad faith and deprive the assignee of holder in due course status, especially if the consideration is grossly inadequate. Code 1975, S 7-3-302(a)(2). | Can grossly inadequate consideration with suspicious circumstances authorize a finding of bad faith? | Bills and Notes - Memo 872 - RK_59553.docx | ROSS-003284879-ROSS-003284880 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 5476 | Betancourt v. Countrywide Home Loans, 344 F. Supp. 2d 1253 | 172H+1555 | Section 1602(w), 15 U.S.C., defines a "residential mortgage transaction" subject to the rescissionary exception as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Thus, there is no statutory right of rescission under 15 U.S.C. " 1535(e) where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside. French v. Wilson, 446 F.Supp. 216, 218 (D.R.I.1978); Simmons v. American Budget Plan, Inc., 386 F.Supp. 194, 200 (E.D.La.1974). | There is no right under TILA to rescind a loan transaction when the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside. Truth in Lending Act, S 125(a), (e)(1), as amended, 15 U.S.C.A. S 1635(a), (e)(1). | Is there a statutory right of rescission when the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside? | 013890.docx | LEGALEASE-00151582-LEGALEASE-00151583 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 5477 | Sears v. Ogden City, 572 P.2d 1359 | 268+1000(5) | In a proceeding to set aside a vacation order, a complainant should allege that by reason of closing the street he has suffered special damages different in kind from the damage to the general public. However, a taxpayer is not required to show special damage or injury where the right to relief is grounded on illegal acts of the council claimed to operate as a constructive fraud affecting the city and its citizens. | In a proceeding to set aside a street vacation order, a complainant should allege that by reason of closing street he has suffered special damage different in kind from damage to general public; however, a taxpayer is not required to show special damage or injury where right to relief is grounded on illegal acts claimed to operate as constructive fraud affecting city and its citizens. | Does a complainant have to suffer a special injury different in kind to the public in generalto have standing to challenge the validity of a vacation of a street? | 018730.docx | LEGALEASE-00151699-LEGALEASE-00151700 | SA, Sub | 0.07 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5478 | United States v. First Nat. Bank, 82 F. 410 | 296+10 | The questions of law involved in this case have been so often settled, and are so simple, that it would avail nothing for this court to indulge in any lengthy opinion in regard to it. The issuance of the check to said Mary L. Beard after she was dead was an act utterly void, and the check itself was absolutely void, and no act of any one could breathe into it the breath of life, or make it of any value whatever. When the defendant bank took the check from the said Beard, the grandson of the pensioner, it devolved upon it to know that he was the legal holder of the said check, and it paid the money out at its own risk, and peril. This is true of any transaction of a similar nature, and is so held by all courts that have passed upon kindred questions. No laches of the government can be attributed in this case, and cannot possibly afford any defense to the defendant. The loss sustained is by reason of its own neglect in paying the check. It has received from the government of the United States the amount demanded in this suit, and there is no reason in law or equity why it should not be held responsible and reimburse the government in the amount paid out. True it is that, if the bank had known of the forgery prior to the payment of the last thousand dollars, it could have saved itself in that sum, but the government did not know of the forgery. It was in no attitude to know of it. The bank should have known that the indorsement was a forgery, and that the person who presented it was not the legal holder of the check. The government has discharged its full duty by having the party arrested, tried, and sentenced to the penitentiary for this offense. Under the agreed statement of facts and the law of this case, the government is entitled to recover a judgment for the amount claimed in this case, and judgment will be entered accordingly. | A bank which pays out money on a pension check which is void because the payee was dead at the time it was drawn, and which, through intermediate banks, collects the money from the government, which is ignorant of the facts, is liable to reimburse the government the said amount. | "Can a bank which pays out money on a pension check which was void because the payee was dead at the time it was drawn, be liable to reimburse the government the said amount?" | 022883.docx | LEGALEASE-00151570-LEGALEASE-00151571 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5479 | M.S.P.C. v. U.S. Cust. and Border Protec., 60 F. Supp. 3d 1156 | 92+4435 | The Fifth Amendment protects aliens and citizens, even aliens "whose presence in this country is unlawful, involuntary, or transitory." Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). See also Zadvydas v. Davis, 533 U.S. 678, 684"85, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); YickWo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding that due process and equal protection clauses of Fourteenth Amendment are not confined to protection of citizens; rather, they apply "to all persons within the territorial jurisdiction"). The fact that aliens within the territorial jurisdiction of the United States are protected by the Due Process Clause, however, does not lead to the conclusion that all aliens are entitled to the same rights as citizens or to the conclusion that all aliens must be treated alike. See Mathews, 426 U.S. at 78, 96 S.Ct. 1883. Indeed, the Supreme Court has held that, although the Due Process Clause protects an alien subject to a final order of deportation, "the nature of that protection may vary depending upon status and circumstance." Zadvydas, 533 U.S. at 694, 121 S.Ct. 2491. See also Wong Wing v. United States, 163 U.S. 228, 232"38, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (holding that, despite fact that Congress could withhold judicial review of decision to not admit resident alien seeking re-admission upon landing and vest decision exclusively with executive officers, alien did have rights to due process to challenge provision of statute confining alien to year of hard labor). | The fact that aliens within the territorial jurisdiction of the United States are protected by the Due Process Clause does not lead to the conclusion that all aliens are entitled to the same rights as citizens or to the conclusion that all aliens must be treated alike. U.S.C.A. Const.Amend. 5. | Does the fact that aliens are protected by the Due Process Clause mean that aliens are entitled to enjoy all the advantages of citizenship? | 006872.docx | LEGALEASE-00152550-LEGALEASE-00152551 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5480 | Poole v. Perkins, 126 Va. 331 | 95+101(1) | In the case of Freeman's Bank v. Ruckman, 16 Grat. (57 Va.) 126, Judge Moncure announced the following general rule, upon which there is practically no conflict of opinion: "It is a general rule that every contract, as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another place; and then it is governed by the law of the place where it is to be performed." This familiar and well"settled rule, however, cannot be said to be conclusive of the instant case, because as the same was applied by Judge Moncure, and as most commonly illustrated by decided cases, it does not relate specifically to the capacity of the parties to make a contract, but to the validity and effect of a contract made by concededly competent parties. | It is a general rule that every contract, as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another place; and then it is governed by the law of the place where it is to be performed. | What law governs contracts made in one place to be executed at another? | 009729.docx | LEGALEASE-00152586-LEGALEASE-00152587 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 5481 | Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170 | 30+3951 | A movant establishes its entitlement to summary judgment by conclusively proving all essential elements of its cause of action as a matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). When determining whether summary judgment was proper, we review the evidence in the light most favorable to the nonmovant, taking all evidence in favor of the nonmovant as true and resolving all doubts as to the existence of a genuine issue of material fact in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548"49 (Tex.1985). | When determining whether summary judgment was proper, appellate court reviews evidence in light most favorable to nonmovant, taking all evidence in favor of nonmovant as true and resolving all doubts as to existence of genuine issue of material fact in its favor. | Is evidence reviewed in the light most favorable to the nonmovant when deciding summary judgment? | 009758.docx | LEGALEASE-00152651-LEGALEASE-00152652 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5482 | Williams v. HomestakeMortg. Co., 968 F.2d 1137 | 172H+1552 | Though one goal of the statutory rescission process is to place the consumer in a much stronger bargaining position, another goal of " 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction. The addition of the last sentence of " 1635(b), stating that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," was added by the Truth in Lending Simplification and Reform Act, Pub.L. No. 96"221, tit. VI, " 612(a)(4), 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. " 1635(b) (1988)) ("Simplification and Reform Act"), and is a reflection of this equitable goal. Prior to the statute's amendment,6 the majority of circuit courts that addressed this issue permitted judicial modification of the statutory rescission process. Rudisell v. Fifth Third Bank, 622 F.2d 243 (6th Cir.1980); Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir.1976); Rachbach v. Cogswell, 547 F.2d 502 (10th Cir.1976); LaGrone v. Johnson, 534 F.2d 1360 (9th Cir.1976); Palmer v. Wilson, 502 F.2d 860 (9th Cir.1974). | Though one goal of rescission process outlined by the Truth in Lending Act (TILA) is to place the consumer in a much stronger bargaining position, another goal of statute is to return the parties most nearly to the position they held prior to entering into the transaction. Truth in Lending Act, S 125(b), as amended, 15 U.S.C.A. S 1635(b). | Is placing the consumer in a strong bargaining position a goal of recession process ? | 013858.docx | LEGALEASE-00152437-LEGALEASE-00152438 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | 1 |
| 5483 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525 | 200+181 | The present case does not come within the rule above stated. None of the occurrences described were of such a character as to convey notice to the railway compny, or to be known to any others than the witnesses themselves. Evidence of other similar occurrences on other occasions is not admissible for the purpose of raising a presumption that the particular accident in question happened, or that the place was defective and dangerous, or that the situation was of such a character that the occurrence resulting in the injury complained of might well have taken place. The facts are the only legitimate evidence of the injury, and of the manner and cause of the occurrence. Ramsey v. Road Co., 81 Ind. 394; Collins v. Inhabitants of Dorchester, 6 Cush. 396; Hubbard v. City of Concord, 35 N. H. 52; Maguire v. Railroad Co., 115 Mass. 239; Hawks v. Inhabitants of Charlemont, 110 Mass. 110; Blair v. Pelham, 118 Mass. 420. The case is parallel in principle with Hudson v. Railway Co., 59 Iowa, 581, 13 N. W. Rep. 735. In that case the plaintiff claimed damages for injuries occasioned to his horse resulting from defective planking at a railway crossing. The judgment of the lower court was reversed because a witness was permitted to testify that some time prior to the injury complained of a horse driven by him had got his foot between the plank and rail, at the same place where the plaintiff's horse was injured. We are aware of the fact that some contrariety exists in the decisions upon the point in question. In our opinion the rule above indicated is the one justified by the decisions of this court, and altogether the safer one upon principle. Patt. Ry. Acc. Law, 420. There is, in the present case, no open, visible connection between the evidentiary facts or independent occurrences out of which it is assumed certain presumptions arise, and the facts sought to be established by deduction from the evidentiary facts proved. This the law requires. The jury must not be left to decide the | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | "Will the object that has occasioned to the horses in the highway, in violation of statute make the owner liable for the damages ?" | Highways -Memo 347-SB_60198.docx | ROSS-003283518-ROSS-003283520 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 5484 | Worley v. Barger, 347 Ill. App. 3d 492 | 307A+561.1 | Although the motion was filed as a section 2"619 motion to dismiss, we will analyze it as a motion to dismiss under section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2000)), because the motion challenges the legal sufficiency of the complaint. See Chandler v. Illinois Central R.R. Co., 207 Ill.2d 331, 348, 278 Ill.Dec. 340, 798 N.E.2d 724, 733 (2003). "A section 2"615 motion attacks only a complaint's legal sufficiency; its purpose is not to raise affirmative factual defenses but rather to allege defects apparent on the face of the pleadings." Stinnes Corp. v. Kerr"McGee Coal Corp., 309 Ill.App.3d 707, 712, 243 Ill.Dec. 98, 722 N.E.2d 1167, 1170 (1999). | Motion to dismiss that is filed under statute governing motions with respect to pleadings attacks only a complaint's legal sufficiency; its purpose is not to raise affirmative factual defenses but rather to allege defects apparent on the face of the pleadings. S.H.A. 735 ILCS 5/2-615. | Will motion to dismiss that is filed under statute governing motions to pleadings attack complaint's legal sufficiency? | 037474.docx | LEGALEASE-00151929-LEGALEASE-00151930 | Condensed, Order, SA, Sub | 0.58 | 1 | 1 | 1 | 1 | 1 |
| 5485 | Khan v. Deutsche Bank AG, 2012 IL 112219 | 307A+679 | The Deutsche defendants filed a section 2"615 motion seeking to dismiss count I of plaintiffs' complaint, alleging breach of fiduciary duty. The trial court granted the motion. A section 2"615 motion to dismiss challenges the legal sufficiency of the complaint based upon defects apparent on its face. Accordingly, we review de novo the trial court's order granting defendants' motion. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom. In addition, we construe the allegations of the complaint in the light most favorable to the plaintiff. Only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. K. Miller Construction Co. v. McGinnis, 238 Ill.2d 284, 291, 345 Ill.Dec. 32, 938 N.E.2d 471 (2010). A cause of action should not be dismissed unless it is clearly apparent that no set of facts can be proved that would entitle a plaintiff to recover. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. | In reviewing the sufficiency of a complaint when ruling on motion to dismiss on the pleadings, court accepts as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom and construes the allegations of the complaint in the light most favorable to the plaintiff. S.H.A. 735 ILCS 5/2-615. | "In reviewing the sufficiency of a complaint when ruling on motion to dismiss on the pleadings, does a court accept as true all well-pleaded facts in the complaint and all reasonable inferences?" | 037555.docx | LEGALEASE-00152323-LEGALEASE-00152324 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5486 | Ericksen v. Rush Presbyterian St. Luke's Med. Ctr., 289 Ill. App. 3d 159 | 307A+682.1 | A section 2"619 motion to dismiss admits all well-pleaded facts in the complaint. All documents submitted in support of the motion must be considered in a light most favorable to the nonmoving party, and the motion will be granted if there exist no disputed issues of fact. 735 ILCS 5/2"619 (West 1994); Jackson v. Moreno, 278 Ill.App.3d 503, 505, 215 Ill.Dec. 277, 663 N.E.2d 27 (1996). A reviewing court exercises de novo review of orders granting motions to dismiss. Lawson v. City of Chicago, 278 Ill.App.3d 628, 634, 215 Ill.Dec. 237, 662 N.E.2d 1377 (1996); Crespo v. Weber Stephen Products Co., 275 Ill.App.3d 638, 641, 212 Ill.Dec. 1, 656 N.E.2d 154 (1995). | Motion to dismiss admits all well-pleaded facts in complaint and all documents submitted in support of motion must be considered in light most favorable to nonmoving party, and motion will be granted if there exist no disputed issues of fact. S.H.A. 735 ILCS 5/2-619. | "In considering a motion to dismiss, does a court accept as true all well-pleaded facts and draws all inferences from those facts in favor of a nonmovant?" | 037797.docx | LEGALEASE-00151978-LEGALEASE-00151979 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5487 | Thompson v. Williams, 752 So. 2d 525 | 307A+581 | "In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Willful default or conduct is a conscious or intentional failure to act. "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrong motive or intent is necessary to show willful conduct." 716 So.2d at 227 (quoting Atkins, 561 So.2d at 1077). | Interest in disposing of litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff; willful default or conduct is a conscious or intentional failure to act. | "Can a dismissal be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff?" | 037847.docx | LEGALEASE-00152083-LEGALEASE-00152084 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 5488 | W. Boatmen's Benev. Ass'nv. Wolff, 45 Mo. 104 | 83E+616 | WAGNER, Judge, delivered the opinion of the court. Prima facie, a party who writes his name on the back of a promissory note, of which he is neither payee nor indorsee, is to be treated as a maker of the note, and the payee is entitled to recover of him without proof of demand on the maker and notice of non-payment. (Powell v. Thomas, 7 Mo. 440; Hooper v. Pritchard, id. 492; Lewis v. Harvey, 18 Mo. ??; Baker v. Block, 30 Mo. 225.) The note was presumptive evidence of the defendant's undertaking as a maker, and he introduced himself as a witness, and gave evidence tending to show that he placed his name on the back of the note as indorser, and not as maker. The trial was before the court, and no instructions were asked for or given by either party. There is no point of law saved which this court can pass upon. | Prima facie, a party who writes his name on the back of a promissory note of which he is neither payee nor indorsee is to be treated as the maker of the note, and the payee is entitled to recover of him, without proof of demand on the maker and notice of nonpayment. | Can a party who writes his name on the back of note of which he is not a payee or an endorsee be considered as the maker of the note? | Bills and Notes - Memo 930 - RK_60722.docx | ROSS-003284830-ROSS-003284831 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 5489 | Rodash v. AIB Mortg. Co., 16 F.3d 1142 | 172H+1322 | Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers. Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir.1984). The Act ensures a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace. Congress intended the statute to create a system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, we liberally construe its language in favor of the consumer. McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir.1978). | Congress intended Truth in Lending Act (TILA) to create system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, Court of Appeals liberally construes language in favor of consumer. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | How did Congress aid the enforcement of Truth in Lending Act (TILA)? | 013699.docx | LEGALEASE-00153402-LEGALEASE-00153403 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 5490 | Guckenberger v. Boston Univ., 974 F. Supp. 106 | 78+1069 | University may, consonant with Americans with Disabilities Act (ADA), require student requesting reasonable accommodation on basis of learning disability to provide current documentation from qualified professional concerning his learning disability. However, university cannot impose upon such individuals documentation criteria that unnecessarily screen out or tend to screen out truly disabled persons. Americans with Disabilities Act of 1990, " 302(b)(2)(i), 42 U.S.C.A. " 12182(b)(2)(i); 34 C.F.R. " 104.4(b)(4). | University may, consonant with Americans with Disabilities Act (ADA), require student requesting reasonable accommodation on basis of learning disability to provide current documentation from qualified professional concerning his learning disability; however, university cannot impose upon such individuals documentation criteria that unnecessarily screen out or tend to screen out truly disabled persons. Americans with Disabilities Act of 1990, S 302(b)(2)(i), 42 U.S.C.A. S 12182(b)(2)(i); 34 C.F.R. S 104.4(b)(4). | Are universities liable to students with learning disabilities who fail to request accomodations under theAmericans with Disabilities Act? | 017097.docx | LEGALEASE-00153734-LEGALEASE-00153735 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 5491 | Koch v. Dakota Cty., 151 Neb. 506 | 200+77(2) | "The statutory provision that a petition for the establishment or vacation of a public road shall be signed by at least ten electors residing within five miles of the road is jurisdictional. The facts essential to the jurisdiction of a county board to establish or vacate a road must affirmatively appear on the record of the proceedings." Letherman v. Hauser, 77 Neb. 731, 110 N.W. 745. See McNair v. State, 26 Neb. 257, 41 N.W. 1099. It follows that the board was without jurisdiction to enter any order in the matter save to dismiss for want of jurisdiction. | The statutory provision that a petition for establishment or vacation of a public road shall be signed by at least ten electors residing within five miles of road, is jurisdictional. R.S.1943, S 39-105. | "Is it necessary that a petition be signed by ten electors, or petitioners residing within five miles of the road?" | 019300.docx | LEGALEASE-00153637-LEGALEASE-00153638 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 5492 | London v. Adams, 1998 S.D. 41 | 307A+581 | Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. Opp, 458 N.W.2d at 356; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Simkins, 192 N.W.2d at 732; Chicago & Northwestern R. Co. v. Bradbury, 80 S.D. 610, 129 N.W.2d 540, 542 (S.D.1964). An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights."Bradbury, 129 N.W.2d at 542 [ (citation omitted) ]. | "Unreasonable and unexplained delay," warranting dismissal for failure to prosecute, is an omission to do something which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights. SDCL 15-6-41(b), 15-11-11. | "Is ""Unreasonable and unexplained delay,"" an omission to do something which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights?" | 037953.docx | LEGALEASE-00153774-LEGALEASE-00153775 | Condensed, Order, SA, Sub | 0.59 | 1 | 1 | 1 | 1 | 1 |
| 5493 | QK Healthcare v. InSource, 108 A.D.3d 56 | 307A+683 | On a motion pursuant to CPLR 3211(a)(7) to dismiss a complaint for failure to state a cause of action, "the court will "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" " (Nonnon v. City of New York, 9 N.Y.3d 825, 827, 842 N.Y.S.2d 756, 874 N.E.2d 720, quoting Leon v. Martinez, 84 N.Y.2d 83, 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511). The complaint must be construed liberally, the factual allegations deemed to be true, and the nonmoving party granted the benefit of every possible favorable inference (see CPLR 3026; Leon v. Martinez, 84 N.Y.2d at 87, 614 N.Y.S.2d 972, 638 N.E.2d 511; Kopelowitz & Co., Inc. v. Mann, 83 A.D.3d 793, 797, 921 N.Y.S.2d 108). | On a motion to dismiss a complaint for failure to state a cause of action, the complaint must be construed liberally, the factual allegations deemed to be true, and the nonmoving party granted the benefit of every possible favorable inference. McKinney's CPLR 3211(a)(7). | "On a motion to dismiss a complaint for failure to state a cause of action, should the complaint be construed liberally?" | Pretrial Procedure - Memo # 8942 - C - DA_60395.docx | ROSS-003278636-ROSS-003278637 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 5494 | CitiMortgage v. Gaudiano, 142 Conn. App. 440 | 307A+679 | The procedural posture of this case governs our recitation of the facts underlying the appeal. "When a ... court decides a ... question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Bellman v. West Hartford, 96 Conn.App. 387, 393, 900 A.2d 82 (2006). Further, in addition to admitting all facts well pleaded, the motion to dismiss "invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) Henriquez v. Allegre, 68 Conn.App. 238, 242, 789 A.2d 1142 (2002). | When a court decides a question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light; in this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. | "When a court decides a question raised by a pretrial motion to dismiss, should it consider the allegations of the complaint in their most favorable light?" | Pretrial Procedure - Memo # 8943 - C - DA_60396.docx | ROSS-003285401-ROSS-003285402 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5495 | P.E. Sys. v. CPI Corp., 176 Wash. 2d 198 | 307A+680 | Again, the only issue before us is whether PES's complaint should be dismissed on the pleadings. Dismissal under CR 12(c) "is appropriate only if it is beyond doubt that the plaintiff cannot prove any set of facts to justify recovery. In making this determination, a trial court must presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record." Parmelee v. O'Neel, 145 Wash.App. 223, 232, 186 P.3d 1094 (2008) (citing Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005); Suleiman, 48 Wash.App. at 376, 739 P.2d 712),overruled in part on other grounds by 168 Wash.2d 515, 229 P.3d 723 (2010). | When considering a motion for judgment on the pleadings, a trial court must presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record. CR 12(c). | "When dismissing a complaint on the pleadings, should a trial court presume that the plaintiff's allegations are true and can consider hypothetical facts that are not included in the record?" | Pretrial Procedure - Memo # 8949 - C - SKG.docx | LEGALEASE-00042987-LEGALEASE-00042988 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5496 | Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP, 68 A.3d 697 | 30+3896 | We review the trial court's decision to dismiss a complaint for failure to state a claim de novo. Grayson v. AT & T Corp., 15 A.3d 219, 228 (D.C.2011) (en banc) (citation omitted). We construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true. In re Curseen, 890 A.2d 191, 193 (D.C.2006). Furthermore, "[t]he only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint; and a complaint should not be dismissed because a court does not believe that a plaintiff will prevail on [his] claim." Grayson, supra, 15 A.3d at 228"29 (alteration in original) (citation and internal quotation marks omitted). | On a motion to dismiss for failure to state claim on which relief could be granted, the Court of Appeals will construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true. Civil Rule 12(b)(6). | "On a motion to dismiss for failure to state claim on which relief could be granted, are all facts alleged in the complaint taken as true?" | 038091.docx | LEGALEASE-00153368-LEGALEASE-00153369 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 5497 | Shapiro v. Columbia Union Nat. Bank & Tr. Co., 576 S.W.2d 310 | 30+3197 | The trial court dismissed the second amended petition for failure to state a claim. Plaintiff appealed to the Court of Appeals, Kansas City District which reversed and reinstated the petition as to all defendants except the Board of Curators of the University. We granted applications to transfer. We now decide the case as an original appeal pursuant to the provisions of Art. V, s 10, Mo.Const., and Rule 83.03. Our review of the dismissal of the petition allows the pleading its broadest intendment, we treat all facts alleged as true, construe the allegations favorably to the plaintiff and determine whether the averments invoke principles of substantive law. Sisters of St. Mary's v. Campbell, 511 S.W.2d 141, 145 (Mo.App.1974). | Supreme Court's review of dismissal of plaintiff's petition would allow pleading its broadest intendment; Supreme Court would treat all facts alleged as true, construe allegations favorably to plaintiff and determine whether averments invoke principles of substantive law. | "Are all facts alleged in a petition are regarded as true, for purposes of a motion to dismiss?" | 038186.docx | LEGALEASE-00153139-LEGALEASE-00153140 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5498 | Holt v. Ayers, 127 Ohio App. 3d 535 | 307A+587 | Dismissal pursuant to Civ.R. 41(B)(1) is appropriate where the conduct of a party is so negligent, irresponsible, contumacious, or dilatory as to merit the harsh sanction of a dismissal with prejudice. Id.; Schreiner v. Karson (1977), 52 Ohio App.2d 219, 223, 6 O.O.3d 237, 239, 369 N.E.2d 800, 803. Review of the record indicates that Holt and his attorney failed to appear at trial due to the attorney's confusion regarding the assigned judge and the trial date posted on the court's computer docketing system. However, there is nothing further in the record sub judice to indicate that Holt's behavior throughout the course of the litigation was negligent, irresponsible, contumacious, or dilatory. The record is devoid of evidence that Holt failed to prosecute his claims. | Dismissal of action for failure to prosecute was an abuse of discretion, where plaintiff and his attorney failed to appear at trial due to attorney's confusion regarding assigned judge and date posted on court's computer docketing system, there was nothing else to indicate that plaintiff's behavior was negligent, irresponsible, contumacious, or dilatory, and court failed to provide required notice of dismissal. Rules Civ.Proc., Rule 41(B)(1). | "Is dismissal appropriate where the conduct of a party is so negligent, irresponsible, contumacious, or dilatory as to merit the harsh sanction of a dismissal with prejudice?" | Pretrial Procedure - Memo # 9197 - C - SHS_60505.docx | ROSS-003282655-ROSS-003282657 | Condensed, Order, SA, Sub | 0.43 | 1 | 1 | 1 | 1 | 1 |
| 5499 | Ackerman v. Sobol Family P'ship, LLP, 298 Conn. 495 | 308+38 | "Apparent authority terminates when the third person has notice that: (1) the agent's authority has terminated; (2) the principal no longer consents that the agent shall deal with the third person; or (3) the agent is acting under a basic error as to the facts. Unless otherwise agreed, there is a notification by the principal to the third person of revocation of an agent's [apparent] authority or other fact indicating its termination: (a) when the principal states such fact to the third person; or (b) when a reasonable time has elapsed after a writing stating such fact has been delivered by the principal (i) to the other personally. In addition, the principal can properly give notification of the termination of the agent's authority by (b) giving publicity by some method reasonably adapted to give the information to such third person. | Unless otherwise agreed, there is a notification by the principal to the third person of revocation of an agent's apparent authority or other fact indicating its termination: (1) when the principal states such fact to the third person, or (2) when a reasonable time has elapsed after a writing stating such fact has been delivered by the principal to the other personally. Restatement (Second) of Agency S 136(1). | Can apparent authority be terminated if a third person has notice of the agents authority being terminated? | Principal and Agent - Memo 160 - SB_60779.docx | ROSS-003278469-ROSS-003278470 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 5500 | Ping v. Beverly Enterprises, 376 S.W.3d 581 | 156+52(1) | Beverly next maintains that because Ms. Ping held herself out as authorized to enter the Arbitration Agreement on behalf of her mother, her mother's Estate should now be equitably estopped from denying that authority. Equitable estoppel is a defensive doctrine founded on the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious our detrimental way. Under Kentucky law, "equitable estoppel requires both a material misrepresentation by one party and reliance by the other party." Fluke Corporation v. LeMaster, 306 S.W.3d 55, 62 (Ky.2010) (discussing the elements of an equitable estoppel defense). | Equitable estoppel is a defensive doctrine founded on the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious or detrimental way. | Is equitable estoppel a defensive doctrine found on the principles of fraud? | 06610.docx | LEGALEASE-00096599-LEGALEASE-00096600 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 5501 | Anderson v. Wilken, 377 P.3d 149 | 307A+622 | We have no established standard of review in this matter as this appears to be a matter of first instance. A court's denial of a motion to dismiss is not traditionally a final order, and we have no standard of review for such a denial. Nor can we apply the standards traditionally used to review the granting of a motion to dismiss. In a traditional motion to dismiss, the trial court "takes as true all of the factual allegations together with all reasonable inferences that can be drawn from them." Wilson v. State ex rel. State Election Bd., 2012 OK 2, 270 P.3d 155, and dismissal will be granted "only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory." Id. Further, the party moving for dismissal bears the burden of proof to show the legal insufficiency of the petition. Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, 212 P.3d 1158. | In a traditional motion to dismiss, the trial court takes as true all of the factual allegations together with all reasonable inferences that can be drawn from them, and dismissal will be granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory. | "In a traditional motion to dismiss, does the trial court take as true all of the factual allegations together with all reasonable inferences that can be drawn from them?" | 038463.docx | LEGALEASE-00154395-LEGALEASE-00154396 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5502 | Weiss v. Indiana Parole Bd., 838 N.E.2d 1048 | 307A+680 | The standard of review for the dismissal of a claim granted pursuant to Trial Rule 12(B)(6) is de novo, requiring no deference to the trial court's decision. Sims v. Beamer, 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). A motion to dismiss based on Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Id. Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts upon which the trial court could have granted relief. Id. In determining whether any facts will support the claim, we may look only to the complaint and the reasonable inferences to be drawn therefrom, and we may not rely upon any other evidence in the record. Id. If a complaint states a set of facts which, even if true, would not support the relief requested therein, we will affirm the dismissal. Id. Furthermore, we may affirm the trial court's grant of a motion to dismiss if it is sustainable upon any theory. Id. | A motion to dismiss a claim for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Trial Procedure Rule 12(B)(6). | "Does a motion to dismiss a claim for failure to state a claim upon which relief can be granted test the sufficiency of a claim, not the facts supporting it?" | Pretrial Procedure - Memo # 9275 - C - VA_61240.docx | ROSS-003279355-ROSS-003279356 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5503 | Connolly v. Sebeco, 89 So. 2d 482 | 307A+686.1 | The purpose of a complaint is to advise the Court and the defendant of the nature of a cause of action asserted by the plaintiff. The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts alleged to state a cause of action. For the purpose of passing upon a motion to dismiss the Court must assume all facts alleged in the complaint to be true. Consequently a motion to dismiss a complaint must be decided on questions of law and questions of law only. | For purpose of passing upon a motion to dismiss a complaint, the court must assume all facts alleged in the complaint to be true and must decide motion on questions of law only. | "For purpose of passing upon motion to dismiss, should a court assume all facts alleged in a complaint to be true?" | Pretrial Procedure - Memo # 9296 - C - UG_61151.docx | ROSS-003278429 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5504 | Volkswagen Aktiengesellschaft v. Jones, 227 So. 3d 150 | 307A+681 | The defendant may challenge the jurisdictional allegations in the plaintiff's complaint or raise a contention of minimum contacts by moving to dismiss the complaint and filing legally sufficient affidavits or other sworn proof in support. Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989); Rautenberg v. Falz, 193 So.3d 924, 928"29 (Fla. 2d DCA 2016). If the defendant's affidavit or sworn proof fully disputes the jurisdictional allegations, then the burden shifts to the plaintiff to prove by affidavit or other sworn proof that there is a basis for personal jurisdiction. Venetian Salami, 554 So.2d at 502; Rautenberg, 193 So.3d at 929. If the parties' affidavits and sworn proof can be harmonized, the trial court can determine the jurisdictional issue based on the undisputed facts. Venetian Salami, 554 So.2d at 502"03; Rautenberg, 193 So.3d at 929. | If parties' affidavits and sworn proof can be harmonized, on motion to dismiss for lack of personal jurisdiction, the trial court can determine the jurisdictional issue based on the undisputed facts. | "If parties' affidavits and sworn proof can be harmonized, can the trial court determine the jurisdictional issue based on the undisputed facts?" | 038562.docx | LEGALEASE-00153915-LEGALEASE-00153916 | Condensed, Order, SA, Sub | 0.77 | 1 | 1 | 1 | 1 | 1 |
| 5505 | Landmark Funding, Inc on Behalf of Naples Syndications v. Chaluts, 213 So. 3d 1078 | 307A+681 | We review a trial court's order dismissing a complaint de novo. Mortg. Elec. Registration Sys., Inc. v. Azize, 965 So.2d 151, 153 (Fla. 2d DCA 2007). "A motion to dismiss ... tests the legal sufficiency of a complaint to state a cause of action and is not intended to determine issues of ultimate fact." McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss, 704 So.2d 214, 215 (Fla. 2d DCA 1998). As such, when passing on a motion to dismiss, the trial court "is limited to considering the four corners of the complaint along with the attachments incorporated into the complaint."Neapolitan Enters., LLC v. City of Naples, 185 So.3d 585, 589 (Fla. 2d DCA 2016); see also McWhirter, 704 So.2d at 215 ("[T]he trial court must confine itself strictly to the allegations within the four corners of the complaint."). | When passing on a motion to dismiss, the trial court is limited to considering the four corners of the complaint along with the attachments incorporated into the complaint. | "When passing on a motion to dismiss, is the trial court limited to considering the four corners of the complaint along with the attachments incorporated into the complaint?" | 038568.docx | LEGALEASE-00153945-LEGALEASE-00153946 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5506 | Bilnoski v. Pizza Inn, 858 S.W.2d 55 | 307A+581 | In his first point of error, Appellant maintains that the trial court abused its discretion in dismissing his case without first providing notice of its intent to dismiss. A trial court may dismiss a case for want of prosecution (1) when a party fails to appear at a hearing or at trial, (2) when the case has not been disposed of within the supreme court's guidelines, and (3) when a case has not been prosecuted with due diligence. City of Houston v. Thomas, 838 S.W.2d 296, 297 (Tex.App."Houston [1st Dist.] 1992, no writ). The trial court's authority to dismiss is derived both from Tex.R.Civ.P. 165 and its own inherent powers. City of Houston at 297. When an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. Hosey v. County of Victoria, 832 S.W.2d 701, 704 (Tex.App."Corpus Christi 1992, no writ). If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed. Id. The trial court is required to provide litigants with notice of its intent to dismiss. Id. at 705. | Trial court may dismiss case for want of prosecution when party fails to appear at hearing or at trial, when case has not been disposed of within Supreme Court's guidelines, and when case has not been prosecuted with due diligence; authority to dismiss is derived both from rules of civil procedure and from court's inherent powers. Vernon's Ann.Texas Rules Civ.Proc., Rule 165. | Can a court dismiss a case for want of prosecution when the case has not been disposed of within Supreme Court's guidelines? | Pretrial Procedure - Memo # 9437 - C - PC_62155.docx | ROSS-003280377-ROSS-003280378 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 5507 | Youngworth v. Stark, 232 Cal. App. 3d 395 | 307A+581 | The management of the trial court's delay reduction program is an area within the court's discretion and will not be disturbed unless it appears that the exercise of that discretion was a clear abuse or a miscarriage of justice. (Denham v. Superior Court (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193; Moyal v. Lanphear (1989) 208 Cal.App.3d 491, 498, 256 Cal.Rptr. 296.)Guiding the disposition of this issue are two competing policies: (1) the reduction of delay in litigation and the expeditious and timely resolution of cases, and (2) the resolution of cases on their merits rather than dismissal on procedural grounds. (See Denham v. Superior Court, supra, 2 Cal.3d at p. 566, 86 Cal.Rptr. 65, 468 P.2d 193; Barrington v. A.H. Robins Co. (1985) 39 Cal.3d 146, 152, 216 Cal.Rptr. 405, 702 P.2d 563; Holder v. Sheet Metal Worker's Internat. Assn. (1981) 121 Cal.App.3d 321, 325, 175 Cal.Rptr. 313.) | Policies guiding trial court's management of delay reduction program are reduction of delay in litigation and expeditious and timely resolution of cases, and resolution of cases on their merits rather than dismissal on procedural grounds. West's Ann.Cal.Gov.Code S 68601 (Repealed). | What are the policies guiding trial court's management of delay reduction program? | 038774.docx | LEGALEASE-00153951-LEGALEASE-00153952 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5508 | O.S.G. by L.G. v. G.B., Jr., 805 S.W.2d 704 | 307A+581 | In deciding whether to order dismissal for failure to prosecute, a trial court may consider not only the length of delay, but attendant circumstances. State ex rel. Mo. Highway and Transportation Comm'n. v. Kersey, 663 S.W.2d 364, 367[4] (Mo.App.1983); State ex rel. State Highway Comm'n. v. Milnes, 573 S.W.2d 727, 728 (Mo.App.1978). Whether an action has been diligently prosecuted must be decided on a case-by-case basis. Knight v. Kitchen, 733 S.W.2d 864, 865[2] (Mo.App.1987); Kralik v. Mortgage Syndicate, Inc., 673 S.W.2d 448, 449[2] (Mo.App.1984). | In deciding whether to order dismissal for failure to prosecute, trial court may consider not only the length of the delay but attendant circumstances. | Will the court consider not only the length of the delay but also attendant circumstances in deciding whether to order dismissal for failure to prosecute? | 038786.docx | LEGALEASE-00153994-LEGALEASE-00153995 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5509 | Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639 | 307A+581 | "The power to invoke [the sanction of dismissal for want of prosecution] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars…." Link v. Wabash R.R. Co., supra, 370 U.S. at 629-630, 82 S.Ct. at 1388. See State Realty Co. of Boston, Inc. v. MacNeil Bros. Co., 358 Mass. 374, 379, 265 N.E.2d 85 (1970); Massachusetts Gen. Hosp. v. Grassi, 356 Mass. 1, 2, 247 N.E.2d 594 (1969); Bancroft v. Sawin, 143 Mass. 144, 146-147 (1887). Of "ancient origin," that power is critical to the orderly and expeditious disposition of cases and the calendar as a whole. Link v. Wabash R.R. Co., supra, 370 U.S. at 630-631, 82 S.Ct. at 1388-1389. State Realty Co. of Boston, Inc., supra, 359 Mass. at 379, 265 N.E.2d 85. "As with most rulings by a judge regarding the management of a case, "[o]nly in rare instances can it be ruled that there has been an abuse of discretion amounting to [an] error of law." " Merles v. Lerner, 391 Mass. 221, 223-224, 461 N.E.2d 772 (1984), quoting Bresnahan v. Proman, 312 Mass. 97, 101-102, 43 N.E.2d 336 (1942). Indeed, abuse of discretion is "arbitrary determination, capricious disposition, or whimsical thinking," Davis v. Boston Elevated Ry., 235 Mass. 482, 496, 126 N.E. 841 (1920), or "idiosyncratic choice," Berube v. McKesson Wine & Spirits Co., 7 Mass.App. 426, 433, 388 N.E.2d 309 (1979), quoting Restatement (Second) of Judgments " 122 comment g (Tent.Draft No. 6, 1979). See Restatement (Second) of Judgments " 74 comment g (1982). | Power to invoke sanction of dismissal for want of prosecution, Rules Civ.Proc., Rule 41(b)(2), 43A M.G.L.A., is critical to orderly and expeditious disposition of cases and the calendar as a whole. | Is power to invoke sanction of dismissal for want of prosecution critical to orderly and expeditious disposition of cases and the calendar as a whole? | 038801.docx | LEGALEASE-00154032-LEGALEASE-00154033 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 5510 | Comstock Const. Co. v. LHG Inv. Co., 126 Mich. App. 408 | 307A+581 | It is clear that the failure of an attorney to appear after due notice has been given is a sufficient ground for either the entry of a default or an involuntary nonsuit. Butler v. Cann, 62 Mich.App. 663, 233 N.W.2d 827 (1975), Cavataio v. City-Wide Cleaners & Dyers, Inc., 23 Mich.App. 419, 178 N.W.2d 831 (1970). However, in our opinion, the action taken by the trial court was too harsh under the circumstances presented and constituted an abuse of discretion. Cook v. Haynes, 92 Mich.App. 288, 284 N.W.2d 479 (1979). | Failure of an attorney to appear after due notice has been given is a sufficient ground for either the entry of a default or an involuntary nonsuit. | "Is failure of an attorney to appear after due notice has been given, a sufficient ground for either the entry of a default or an involuntary nonsuit?" | 038842.docx | LEGALEASE-00154376-LEGALEASE-00154377 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5511 | Troester v. Sisters of Mercy Health Corp., 328 N.W.2d 308 | 307A+581 | We have indicated that questions of subject matter jurisdiction may be raised at any time. In re Estate of Dull, 303 N.W.2d 402, 406 (Iowa 1981); Lloyd v. State, 251 N.W.2d 551, 556"57 (Iowa 1977); Green v. Sherman, 173 N.W.2d 843, 846 (Iowa 1970). We stated in Walles v. International Brotherhood of Electrical Workers, 252 N.W.2d 701, 710 (Iowa 1977), that:Every court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it. It makes no difference how the question comes to its attention. Once raised, the question must be disposed of, no matter in what manner of form or stage presented. The court on its own motion will examine grounds of its jurisdiction before proceeding further. We have also indicated that it is proper to challenge a plaintiff's capacity to sue by a motion to dismiss based on facts that occurred subsequent to the filing of the petition. | It is proper to challenge plaintiff's capacity to sue by motion to dismiss based on facts that occurred subsequent to filing of petition. | Is it proper to challenge plaintiff's capacity to sue by motion to dismiss based on facts that occurred subsequent to filing of petition? | Pretrial Procedure - Memo # 9490 - C - TM_61158.docx | ROSS-003292473-ROSS-003292474 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5512 | Becky v. Norwest Bank Dillon, N.A., 245 Mont. 1 | 307A+581 | The party moving for dismissal must demonstrate that the plaintiff has delayed action on the claim for an unreasonable period of time. Once an unreasonable delay has been shown, the plaintiff must proffer a reasonable excuse for the delay.Calaway v. Jones, 177 Mont. 516, 520, 582 P.2d 756, 758 (1978). An unreasonable delay raises a presumption of prejudice to the defendant, and the defendant is under no obligation to demonstrate injury from the delay. Shackelton, 207 Mont. at 102, 672 P.2d at 1115. | Party moving for dismissal for failure to prosecute must demonstrate that plaintiff has delayed action on a claim for an unreasonable period of time and once delay has been shown, plaintiff must proffer a reasonable excuse for the delay; an unreasonable delay raises a presumption of prejudice and defendant is under no obligation to demonstrate injury from the delay, but if plaintiff comes forward with a reasonable excuse for the delay, burden shifts to defendant to show actual prejudice. Rules Civ.Proc., Rule 41(b). | "Should party moving for dismissal due to failure to prosecute, demonstrate that plaintiff has unreasonably delayed prosecution of his claims?" | 039027.docx | LEGALEASE-00154799-LEGALEASE-00154800 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 5513 | Gen. Pump & Well v. Miller, 326 Ga. App. 546 | 307A+681 | General Pump appeals from the grant of Centerline's motion to dismiss, contending that the trial court erred in dismissing this case for lack of personal jurisdiction and improper venue based solely upon this Court's decision in General Pump 1. Since we find that our decision in General Pump 1 is not controlling here, we reverse and remand. A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA " 9"11"43(b). | A defendant moving to dismiss for lack of personal jurisdiction under the long-arm statute bears the burden of proving the absence of jurisdiction; to meet that burden, the defendant may raise matters not contained in the pleadings. West's Ga.Code Ann. S 9-11-43(b). | Does a defendant moving to dismiss for lack of personal jurisdiction bear the burden of proving the absence of jurisdiction? | 039273.docx | LEGALEASE-00154803-LEGALEASE-00154804 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5514 | Kavanagh v. Trustees of Boston Univ., 440 Mass. 195 | 141E+1234 | The fact that a college or university has facilitated a student's ability to attend that institution by providing a scholarship or other financial assistance does not transform the relationship between the academic institution and the student into any form of employment relationship, for purposes of the doctrine of respondeat superior.While scholarships may introduce some element of "payment" into the relationship, scholarships are not wages, and neither side understands the relationship to be that of employer-employee or principal-agent. | The fact that a college or university has facilitated a student's ability to attend that institution by providing a scholarship or other financial assistance does not transform the relationship between the academic institution and the student into any form of employment relationship, for purposes of the doctrine of respondeat superior; while scholarships may introduce some element of "payment" into the relationship, scholarships are not wages, and neither side understands the relationship to be that of employer-employee or principal-agent. | Are students who attend college with athletic scholarships considered employees of the university? | Education - Memo #209 - C - HJ.docx | LEGALEASE-00044807-LEGALEASE-00044808 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 5515 | Winter v. Am. Inst. of Med. Scis. & Educ., 242 F. Supp. 3d 206 | 141E+1000 | Defendant argues that even assuming an implied contract existed between Plaintiff and AIMS, Plaintiff's claims are automatically barred by the educational malpractice doctrine under both New York and New Jersey law. The Court disagrees in so far as Defendant fails to categorize the full range of educational malpractice cases under New York law. While Defendant is correct that a student cannot request judicial review of purely academic determinations that would require the Court to evaluate "the course of instruction" or "the soundness of educational methodology" under either New York (Paladino v. Adelphi Univ., 89 A.D.2d 85, 92, 454 N.Y.S.2d 868, 872"73 (2d Dep't 1982)) or New Jersey law (Myers v. Medford Lakes Bd. of Ed., 199 N.J.Super. 511, 489 A.2d 1240, 1241 (N.J. App. Div. 1985)), the Court finds that New York law is slightly broader than New Jersey law regarding student-university conflicts. By way of example, under New York law a student may sue a school for failing to provide "certain specified services" for which she or he has contracted, such as "a designated number of hours of instruction." Paladino, 89 A.D.2d at 92, 454 N.Y.S.2d 868. Where "the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable." (Id.) The Court was unable to find any analogous cases or a factual equivalent under New Jersey law. | Under New York and New Jersey law, student cannot request judicial review of purely academic determinations that would require court to evaluate course of instruction or soundness of educational methodology. | Can a student request judicial review of academic determinations? | 017117.docx | LEGALEASE-00155302-LEGALEASE-00155304 | Condensed, Order, SA, Sub | 0.85 | 1 | 1 | 1 | 1 | 1 |
| 5516 | Trisler v. Berry, 470 S.W.3d 387 | 307A+690 | "A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred." Chavez v. Walters, 78 S.W.3d 234, 236 (Mo.App.W.D.2002) (internal quotation omitted). "Accordingly, as a general rule, a dismissal without prejudice is not a final judgment from which an appeal may be taken." Id. An exception to this general rule exists, however, "[w]hen the effect of the order is to dismiss the action and not merely the pleading." Id. Thus, "where refiling of the petition would be futile, the order of dismissal is appealable." Barazi v. Eckoldt, 180 S.W.3d 507, 510 (Mo.App.E.D.2005). | Dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred. | "Does dismissal without prejudice permit the party to bring another civil action for the same cause, unless the civil action is otherwise barred?" | 024628.docx | LEGALEASE-00155843-LEGALEASE-00155844 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5517 | O.S.G. by L.G. v. G.B., Jr., 805 S.W.2d 704 | 307A+581 | In deciding whether to order dismissal for failure to prosecute, a trial court may consider not only the length of delay, but attendant circumstances. State ex rel. Mo. Highway and Transportation Comm'n. v. Kersey, 663 S.W.2d 364, 367[4] (Mo.App.1983); State ex rel. State Highway Comm'n. v. Milnes, 573 S.W.2d 727, 728 (Mo.App.1978). Whether an action has been diligently prosecuted must be decided on a case-by-case basis. Knight v. Kitchen, 733 S.W.2d 864, 865[2] (Mo.App.1987); Kralik v. Mortgage Syndicate, Inc., 673 S.W.2d 448, 449[2] (Mo.App.1984). | In deciding whether to order dismissal for failure to prosecute, trial court may consider not only the length of the delay but attendant circumstances. | Will court consider not only the length of the delay but attendant circumstances in deciding whether to order dismissal for failure to prosecute? | 039039.docx | LEGALEASE-00154853-LEGALEASE-00154854 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5518 | Crawford v. Crawford, 39 Ill. App. 3d 457 | 307A+581 | Finally, we are of the opinion that the presiding judge of the circuit court of Cook County inadvertently entered the September 25, 1974 order dismissing this cause for want of prosecution. While it has uniformly been held that courts have the inherent power to dismiss actions for want of prosecution in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the progress of trial calendars, (E.g., Ryan v. Dixon, 28 Ill.App.3d 463, 466, 328 N.E.2d 672, 674; Bender v. Schallerer, 9 Ill.App.3d 951, 952-53, 293 N.E.2d 411, 413), it must be remembered that a dismissal of a valid cause of action is error unless the plaintiff is guilty of an inexcusable delay in litigating the controverted matter. (Geraty v. Carbona Products Company, 16 Ill.App.3d 702, 705, 306 N.E.2d 544, 547.). Considering such tenets in light of the litigious efforts of the parties at bar, it is evident that the presiding judge mistakenly dismissed this cause for want of prosecution. As revealed in the record, the plaintiff engaged in an abundance of legal activity from the time of the prove-up hearing to September 25, 1974, when the order of dismissal was entered. | Dismissal of valid cause of action is error unless plaintiff is guilty of inexcusable delay in litigating controverted matter. | Is dismissal of valid cause of action an error unless plaintiff is guilty of inexcusable delay in litigating controverted matter? | 039159.docx | LEGALEASE-00155320-LEGALEASE-00155321 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 5519 | Rossi v. Mathers, 749 P.2d 964 | 307A+581 | The determination of whether to dismiss an action for failure to prosecute with due diligence lies within the sound discretion of the trial court. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., 698 P.2d 1340 (Colo.1985). The burden is on the plaintiff to prosecute a case in due course without unusual or unreasonable delay. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra; BA Leasing Corp. v. Board of Assessment Appeals, 653 P.2d 80 (Colo.App.1982). Thus, in the absence of a showing by the plaintiff of mitigating circumstances or a reasonable excuse for the delay, an unusual delay in prosecuting an action justifies dismissal with prejudice. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra; Richardson v. McFee, 687 P.2d 517 (Colo.App.1984). | In absence of showing by plaintiff of mitigating circumstances or reasonable excuse for delay, unusual delay in prosecuting action justifies dismissal with prejudice. Rules Civ.Proc., Rule 121(b), Standard S 1-10 (1987). | "In the absence of a showing by the plaintiff of a reasonable excuse for the delay, does an unusual delay in prosecuting an action justify dismissal with prejudice?" | 039163.docx | LEGALEASE-00155338-LEGALEASE-00155339 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 5520 | Stoot v. S. Pac. Co., 527 S.W.2d 765 | 307A+581 | A suit may be dismissed for want of prosecution even though the appellant objects to the dismissal at the hearing thereon and manifests his intention to prosecute the suit to judgment. Rorie v. Avenue Shipping Co., 414 S.W.2d 948 (Tex.Civ.App."Houston 1967, writ ref'd n.r.e.). In this case the trial court reviewed the entire record. Such review revealed that no action was taken by the plaintiff from the date of the filing of this suit on August 11, 1971, until the date of the initial notice of dismissal given on July 17, 1973. That two year period of total inactivity bears on the question of the appellant's diligence in the prosecution of this suit. | A suit may be dismissed for want of prosecution even though the plaintiff objects to dismissal at the hearing thereon and manifests his intention to prosecute the suit to judgment. | Can a suit be dismissed for want of prosecution even though the plaintiff objects to dismissal at the hearing thereon and manifests his intention to prosecute the suit to judgment? | Pretrial Procedure - Memo # 9710 - C - VP_61980.docx | ROSS-003295212-ROSS-003295213 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5521 | Yellam v. Woerner, 77 Wash. 2d 604 | 307A+581 | An action on appeal is a pending action. State v. Tugwell, 19 Wash. 238, 52 P. 1056, 43 L.R.A. 717 (1898); Haynes v. Seattle, 87 Wash. 375, 151 P. 789 (1915). The rule providing for dismissal for want of prosecution is punitive or administrative in nature and every reasonable opportunity should be afforded to permit the parties to reach the merits of the controversy. Franks v. Douglas, 57 Wash.2d 583, 358 P.2d 969 (1961); State ex rel. Witting v. Superior Court, 56 Wash.2d 117, 351 P.2d 409 (1960); 4L. Orland, Wash.Prac. 86 (2d ed. 1968). We perceive no manifest injustice which would result from applying CR 41(b)(1) to the present case, particularly in view of the fact that the former rule was modified to further procedural fairness | Rule providing for dismissal for want of prosecution is punitive or administrative in nature and every reasonable opportunity should be afforded to permit the parties to reach the merits of the controversy. CR 41(b) (1), (b) (2) (C). | Should every reasonable opportunity be afforded to permit the parties to reach the merits of the controversy? | 039221.docx | LEGALEASE-00155229-LEGALEASE-00155230 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5522 | Andra v. Left Gate Prop. Holding, 453 S.W.3d 216 | 307A+554 | When the motion to dismiss for lack of personal jurisdiction is based on facts not appearing in the record, a court may also consider affidavits and depositions properly filed in support of the motion to dismiss. Chromalloy Am. Corp. v. Elyria Foundry Co., 955 S.W.2d 1, 3 n.3 (Mo. banc 1997); see also Rule 55.28. Such consideration "does not serve to convert the motion to dismiss into a motion for summary judgment" as "the trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction." Chromalloy, 955 S.W.2d at 3 n.3. The merits of the underlying case are not considered. Id. "The circuit court can believe or disbelieve any statement in such affidavits, and factual determinations are within the sole discretion of the circuit court." Peoples Bank v. Frazee, 318 S.W.3d 121, 130 (Mo. banc 2010). | When a nonresident defendant's motion to dismiss for lack of personal jurisdiction is based on facts not appearing in the record, a trial court may consider affidavits and depositions properly filed in support of the motion. Mo. Sup. Ct. R. 55.28. | Should a court consider any proper affidavits that are filed in connection with a motion to dismiss for lack of personal jurisdiction? | 039407.docx | LEGALEASE-00155576-LEGALEASE-00155577 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5523 | Granada Condo. III Ass'n v. Palomino, 78 A.D.3d 996 | 307A+684 | On a pre-answer motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction and the plaintiff's allegations are accepted as true and accorded the benefit of every possible favorable inference (see Leon v. Martinez, 84 N.Y.2d 83, 87, 614 N.Y.S.2d 972, 638 N.E.2d 511; Reiver v. Burkhart Wexler & Hirschberg, LLP, 73 A.D.3d 1149, 901 N.Y.S.2d 690). A motion to dismiss a complaint pursuant to CPLR 3211(a)(1) may be granted only if the documentary evidence submitted by the defendant utterly refutes the factual allegations of the complaint and conclusively establishes a defense to the claims as a matter of law (see Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190; First Keystone Consultants, Inc. v. DDR Constr. Servs., 74 A.D.3d 1135, 904 N.Y.S.2d 113). In order for evidence to qualify as "documentary," it must be unambiguous, authentic, and undeniable (Fontanetta v. John Doe 1, 73 A.D.3d 78, 84"86, 898 N.Y.S.2d 569). | A motion to dismiss a complaint may be granted only if documentary evidence submitted by defendant utterly refutes the factual allegations of complaint, and conclusively establishes defense to claims as matter of law. McKinney's CPLR 3211(a)(1). | "Are neither affidavits, deposition testimony, nor letters considered ""documentary evidence"" for purposes of a motion to dismiss a complaint?" | 039412.docx | LEGALEASE-00155582-LEGALEASE-00155584 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5524 | Ferreira v. Pringle, 255 Conn. 330 | 307A+687 | "A motion to dismiss properly attacks the jurisdiction of the court."Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991); see also Sadloski v. Manchester, 235 Conn. 637, 645"46 n. 13, 668 A.2d 1314 (1995) ("the motion to dismiss shall be used to assert lack of jurisdiction over the subject matter"). "The motion to dismiss admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde v Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988); see Amore v. Frankel, 228 Conn. 358, 366, 636 A.2d 786 (1994). | Motion to dismiss admits all facts which are well pleaded, invokes existing record, and must be decided upon that alone. | "Does a motion to dismiss admit all facts that are well pleaded, invokes the existing record, and must be decided upon that alone?" | 039480.docx | LEGALEASE-00155014-LEGALEASE-00155015 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 5525 | Griffin v. Fluellen, 283 Ill. App. 3d 1078 | 307A+685 | A trial court decision to grant a motion to dismiss pursuant to section 2-619 is proper "if no set of facts may be proven by which the plaintiff can recover." Management Assn of Illinois, Inc. v. Board of Regents of Northern Illinois University, 248 Ill.App.3d 599, 606, 188 Ill.Dec. 124, 128, 618 N.E.2d 694, 698 (1993). All well-pleaded facts that have been alleged in the complaint are taken as true for purposes of the motion to dismiss. Management Assn of Illinois, Inc. v. Board of Regents of Northern Illinois University, 248 Ill.App.3d 599, 188 Ill.Dec. 124, 618 N.E.2d 694. Conclusions that are not supported by specific factual allegations are not considered, and where defects do not appear on the face of the pleadings, affidavits may be filed, stating affirmative matters that justify dismissal. Management Assn of Illinois Inc. v. Board of Regents of Northern Illinois University, 248 Ill.App.3d 599, 188 Ill.Dec. 124, 618 N.E.2d 694. Applying these legal principles, we must determine whether the facts alleged in plaintiff's first amended complaint support a finding that the circuit court has subject matter jurisdiction here. | In context of motion to dismiss based upon certain defects or defenses, conclusions that are not supported by specific factual allegations are not considered and, where defects do not appear on face of pleadings, affidavits may be filed stating affirmative matters that justify dismissal. S.H.A. 735 ILCS 5/2-619. | Are conclusions that are not supported by specific factual allegations not considered to justify dismissals? | Pretrial Procedure - Memo # 9997 - C - NE_61622.docx | ROSS-003292372-ROSS-003292373 | Order, SA, Sub | 0.73 | 1 | 0 | 1 | 1 | 1 |
| 5526 | Rich Printing Co. v. McKellar's Estate, 46 Tenn. App. 444 | 308+92(1) | It is axiomatic that an agency may be created for any lawful act and that whatever a person may lawfully do, if acting in his own right and in his own behalf, he may delegate that authority to an agent. It is also axiomatic that authority cannot be lawfully delegated which is illegal, immoral or opposed to public policy, nor can one delegate an act which is personal in its nature, such as designating an agency to perform a personal duty or a personal trust. Of course an elected officer cannot delegate one to hold the office to which he has been elected in the absence of statutory authority so to do, nor to cast his vote for him | Authority cannot be lawfully delegated which is illegal, immoral or opposed to public policy, nor can one delegate an act which is personal in its nature, such as designating an agency to perform a personal duty or personal trust. | "Can authority to do an act which is illegal, immoral or opposed to public policy be lawfully delegated?" | 041661.docx | LEGALEASE-00155714-LEGALEASE-00155715 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5527 | Pasquaretto v. Long Island Univ., 106 A.D.3d 794 | 141E+1213(1) | To prevail on a cause of action alleging negligence, a plaintiff must establish the existence of a legal duty, a breach of that duty, proximate causation, and damages. "Absent a duty of care, there is no breach, and without breach there can be no liability" (Fox v. Marshall, 88 A.D.3d 131, 135, 928 N.Y.S.2d 317, citing Pulka v. Edelman, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 358 N.E.2d 1019). The existence of a legal duty presents a question of law for the court (see Eiseman v. State of New York, 70 N.Y.2d 175, 189, 518 N.Y.S.2d 608, 511 N.E.2d 1128; Talbot v. New York Inst. of Tech., 225 A.D.2d 611, 612, 639 N.Y.S.2d 135). "New York has affirmatively rejected the doctrine of in loco parentis at the college level and colleges "in general have no legal duty to shield their students from the dangerous activity of other students' " (Luina v. Katharine Gibbs School N.Y., Inc., 37 A.D.3d 555, 556, 830 N.Y.S.2d 263, quoting Eiseman v. State of New York, 70 N.Y.2d at 190, 518 N.Y.S.2d 608, 511 N.E.2d 1128; see Rydzynski v. North Shore Univ. Hosp., 262 A.D.2d 630, 630, 692 N.Y.S.2d 694). A duty, however, may be imposed upon a college where it has encouraged its students to participate in an activity and taken affirmative steps to supervise and control the activity (see Hores v. Sargent, 230 A.D.2d 712, 712, 646 N.Y.S.2d 165).. | A duty to shield their students from the dangerous activity of other students may be imposed upon a college where it has encouraged its students to participate in an activity and taken affirmative steps to supervise and control the activity. | Could duty be imposed upon a college where it has encouraged students to participate in an activity and taken steps to supervise and control the activity? | 016856.docx | LEGALEASE-00156361-LEGALEASE-00156362 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |
| 5528 | United States v. Marine Shale Processors, 81 F.3d 1329 | 156+52(1) | The district court denied MSP's estoppel defense on the grounds that Congress, not EPA or LDEQ, grants interim status. See State of New Mexico v. Watkins, 969 F.2d 1122, 1130 (D.C.Cir.1992). Although the district court's reasoning contains a valuable insight, its conclusion is not technically correct. Equitable estoppel does not rest on the grounds that the claimant is in reality entitled to the benefit or status in question.Rather, equitable estoppel responds to the unfairness inherent in denying the claimant some benefit after it has reasonably relied on the misrepresentations of the adverse party. Thus, at least in its estoppel defense, MSP does not contend that it in reality was entitled to interim status, and LDEQ's June 9 letter may have been no defense had the issue of interim status arisen in a citizen suit under 42 U.S.C. " 6972. Rather, MSP claims that the United States should not be allowed to deny that MSP has interim status because MSP reasonably relied on the representations of government agents. | Equitable estoppel responds to unfairness inherent in denying claimant some benefit after it has reasonably relied on misrepresentations of adverse party. | Does equitable estoppel respond to the unfairness inherent in denying the claimant some benefit after it has reasonably relied on the misrepresentations of the adverse party? | 017765.docx | LEGALEASE-00156054-LEGALEASE-00156055 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5529 | Nelson v. Cool, 230 Neb. 859 | 302+49 | We agree the judgment is supported by such a presumption of correctness. Flood v. Keller, 214 Neb. 797, 336 N.W.2d 549 (1983). However, we are obligated to dispose of the case on the basis of the theory presented by the pleadings on which the case was tried. Union Pacific RR. Co. v. Kaiser Ag. Chem. Co., 229 Neb. 160, 425 N.W.2d 872 (1988). A petition should not leave uncertain the theory on which the plaintiff chooses to proceed, Hutmacher v. City of Mead, 230 Neb. 78, 430 N.W.2d 276 (1988), but should state in logical and legal form the facts which constitute the cause of action, define the issues to which defendant must respond at trial, and inform the court of the real matter in dispute. First Nat. Bank of Omaha v. State, 230 Neb. 259, 430 N.W.2d 893 (1988). Nelson did not allege in his petitions that the truck or title was obtained by fraud, theft, misrepresentation, or breach of contract, and a judgment based on any of those theories would not be supported by the pleadings. We would further point out the record discloses nothing to indicate the district judge decided the case on any basis other than as presented by the pleadings, and Nelson never asked for leave to amend his petitions to conform to any evidence which may have shown other legal theories of recovery. | Petition should not leave uncertain theory on which plaintiff chooses to proceed, but should state facts which constitute cause of action, define issues to which defendant must respond, and inform court of real matter in dispute. | Can a petition leave uncertainty as to the theory on which the pleader wishes to proceed? | 023793.docx | LEGALEASE-00156186-LEGALEASE-00156187 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5530 | Builders Bank v. Barry Finkel & Assocs., 339 Ill. App. 3d 1 | 30+3197 | Appellate review of a dismissal pursuant to section 2"619 is de novo, and thus, a reviewing court need not defer to the circuit court's reasoning. Spillyards v. Abboud, 278 Ill.App.3d 663, 215 Ill.Dec. 218, 662 N.E.2d 1358 (1996). The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116"17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). In making this determination, we will construe all pleadings and supporting documents in a light most favorable to the nonmoving party. Mayfield v. ACME Barrel Co., 258 Ill.App.3d 32, 34, 196 Ill.Dec. 145, 629 N.E.2d 690 (1994). | The relevant inquiry on appeal of an involuntary dismissal that was based on defects or defenses is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. S.H.A. 735 ILCS 5/2 619. | Is the relevant inquiry on appeal whether the existence of a genuine issue of material fact should have precluded the dismissal? | 024474.docx | LEGALEASE-00155950-LEGALEASE-00155951 | Condensed, Order, SA, Sub | 0.62 | 1 | 1 | 1 | 1 | 1 |
| 5531 | Terry v. City of Detroit, 226 Mich. App. 418 | 307A+680 | To defeat the motion for summary disposition, the plaintiff must allege facts giving rise to an exception to governmental immunity. Wade, supra at 163, 483 N.W.2d 26; Vargo v. Sauer, 215 Mich.App. 389, 398, 547 N.W.2d 40 (1996). | To defeat summary disposition motion based on governmental immunity, plaintiff must allege facts giving rise to exception to governmental immunity. MCR 2.116(C)(7). | "To defeat summary disposition motion based on governmental immunity, should a plaintiff allege facts giving rise to exception to governmental immunity?" | Pretrial Procedure - Memo # 10032 - C-AC_62168.docx | ROSS-003308419 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 5532 | Rodolico v. Rubin & Licatesi, P.C., 114 A.D.3d 923 | 307A+684 | Further, the evidence submitted in support of a motion pursuant to CPLR 3211(a)(1) to dismiss a complaint on the ground that a defense is founded on documentary evidence "must be "documentary" or the motion must be denied" (Cives Corp. v. George A. Fuller Co., Inc., 97 A.D.3d 713, 714, 948 N.Y.S.2d 658, quoting Fontanetta v. John Doe 1, 73 A.D.3d 78, 84, 898 N.Y.S.2d 569 [internal quotation marks omitted]; see Rodolico v. Rubin & Licatesi, P.C., 112 A.D.3d at 610, 977 N.Y.S.2d 264). " "[N]either affidavits, deposition testimony, nor letters are considered documentary evidence within the intendment of CPLR 3211(a)(1)" " (Cives Corp. v. George A. Fuller Co., Inc., 97 A.D.3d at 714, 948 N.Y.S.2d 658, quoting Granada Condominium III Assn. v. Palomino, 78 A.D.3d 996, 997, 913 N.Y.S.2d 668; see Rodolico v. Rubin & Licatesi, P.C., 112 A.D.3d at 610, 977 N.Y.S.2d 264; Suchmacher v. Manana Grocery, 73 A.D.3d 1017, 900 N.Y.S.2d 686; Fontanetta v. John Doe 1, 73 A.D.3d at 86, 898 N.Y.S.2d 569). | The evidence submitted in support of a motion to dismiss a complaint on the ground that a defense is founded on documentary evidence must be "documentary" or the motion must be denied; neither affidavits, deposition testimony, nor letters are considered documentary evidence. McKinney's CPLR 3211(a)(1). | "Should the evidence submitted in support of a motion to dismiss a complaint on the ground that a defense is founded on documentary evidence be ""documentary"" or the motion must be denied?" | Pretrial Procedure - Memo # 10038 - C - DA_62054.docx | ROSS-003283512-ROSS-003283513 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5533 | Maxfield v. Rushton, 779 P.2d 237 | 307A+581 | A court's discretion, however, must be balanced against a higher priority: to "afford disputants an opportunity to be heard and to do justice between them." Westinghouse Elec. Supply Co., 544 P.2d at 879. Thus, there is more to consider in determining if a dismissal for failure to prosecute is proper than merely the amount of time elapsed since the suit was filed. Id. The factors which we consider may include the following: (1) The conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each of the parties has done to move the case forward; (4) what difficulty or prejudice may have been caused to the other side; and (5) most important, whether injustice may result from the dismissal. K.L.C. Inc. v. McLean, 656 P.2d 986, 988 (Utah 1982); Utah Oil Co. v. Harris, 565 P.2d 1135, 1137 (Utah 1977). | In addition to the amount of elapsed time since suit was filed, when ruling on a motion to dismiss for failure to prosecute, a court may consider the conduct of both parties, the opportunity each party has had to move the case forward, what each of the parties has done to move the case forward, what difficulty or prejudice may have been caused to the other side, and, most important, whether injustice may result from the dismissal. Rules Civ.Proc., Rule 41(b). | "Should a court consider the conduct of both parties in addition to the amount of elapsed time since suit was filed, when ruling on a motion to dismiss for failure to prosecute?" | 024500.docx | LEGALEASE-00156339-LEGALEASE-00156340 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 5534 | Botton v. Elbaz, 722 So. 2d 974 | 307A+684 | We agree with the holding in Ground Improvement Techniques, Inc. v. Merchants Bonding Co., 707 So.2d 1138, 1139 (Fla. 5th DCA 1998): [A] dismissal based on forum non conveniens, if not evident from the allegations appearing on the face of the complaint, must be supported by record evidence, either in the form of affidavits or live testimony. Based upon the rationale of the cases interpreting section 47.122, Florida Statutes and the language of the new Rule 1.061, it appears that the procedure to be followed under the forum non conveniens rule is the same as the procedure to be followed under the forum non conveniens statute. | Dismissal based on forum non conveniens, if not evident from the allegations appearing on the face of the complaint, must be supported by record evidence, either in the form of affidavits or live testimony. West's F.S.A. S 47.122; West's F.S.A. RCP Rule 1.061. | Should a dismissal based on forum non conveniens be supported by record evidence? | Pretrial Procedure - Memo # 10157 - C - SHB_62067.docx | ROSS-003291961-ROSS-003291962 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 5535 | Quality Christmas Trees Co. v. Florico Foliage, 689 So. 2d 1222 | 307A+685 | A plaintiff may initially seek to obtain jurisdiction over a nonresident defendant by pleading the statutory basis for long-arm jurisdiction in the complaint. Venetian Salami, 554 So.2d at 502. The defendant may challenge the legal sufficiency of the complaint by filing a motion to dismiss the complaint alleging lack of personal jurisdiction. Grogan v. Archer, 669 So.2d 289 (Fla. 5th DCA 1996). In doing so, the defendant may contest the jurisdictional allegations of the complaint or claim a lack of sufficient minimum contacts. Such challenges must be made by supporting affidavit. Once such affidavits are filed, the burden shifts to the plaintiff to establish by affidavit its basis for jurisdiction. Venetian Salami, 554 So.2d at 502. | Defendant, by filing motion to dismiss complaint for lack of personal jurisdiction, may contest jurisdictional allegations of complaint or claim lack of sufficient minimum contacts; such challenges must be made by supporting affidavit, and once such affidavits are filed, burden shifts to plaintiff to establish by affidavit its basis for jurisdiction. U.S.C.A. Const.Amend. 14. | Should a defendant wishing to contest allegations of a complaint concerning jurisdiction or to raise contention of minimum contacts file affidavits in support of his position? | 024583.docx | LEGALEASE-00156006-LEGALEASE-00156007 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 5536 | Orbe v. Orbe, 651 So. 2d 1295 | 307A+622 | A defendant may challenge the sufficiency of jurisdictional allegations of a complaint by filing a motion to dismiss, but must support his position by affidavit.The burden then shifts to the plaintiff to show by affidavit the basis upon which jurisdiction may be obtained. Sutton v. Smith, 603 So.2d 693 (Fla. 1st DCA 1992); Unger v. Publisher Entry Service, Inc., 513 So.2d 674 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 586 (Fla.1988); Miller v. Marriner, 403 So.2d 472 (Fla. 5th DCA 1981); Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43, 46 (Fla. 1st DCA 1986). An unsworn motion is insufficient to meet the defendant's burden. Davis v. Dempsey, 343 So.2d 950 (Fla. 3d DCA 1977). All well pleaded allegations in the petition are admitted as true by the motion. Olin's, Inc. v. Avis Rental Car System of Florida, 104 So.2d 508 (Fla.1958); Lincoln Tower Corp. v. Dunhall's-Florida, Inc., 61 So.2d 474 (Fla.1952); Triple E Development Co. v. Floridagold Citrus Corp., 51 So.2d 435 (Fla.1951). | Defendant may challenge the sufficiency of jurisdictional allegations of complaint by filing motion to dismiss, but must support his or her position by affidavit; burden then shifts to plaintiff to show by affidavit the basis upon which jurisdiction may be obtained. | Should the defendant challenging the sufficiency of jurisdictional allegations of complaint by filing a motion to dismiss support his or her position by affidavit? | 024587.docx | LEGALEASE-00156014-LEGALEASE-00156015 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5537 | Mulgrew v. Spectraseis, 436 S.W.3d 798 | 307A+554 | Under the exclusive jurisdiction doctrine, the legislature grants an administrative agency the sole authority to make an initial determination in a dispute. Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex.2002). Typically, if an agency has exclusive jurisdiction, a plaintiff must exhaust all administrative remedies before seeking judicial review of the agency actions. Id. When the legislature grants an administrative agency exclusive jurisdiction over a dispute, the district court lacks jurisdiction to the extent of the agency exclusive authority to decide the dispute. See Thomas, 207 S.W.3d at 340. Until the party has exhausted all administrative remedies, the trial court must dismiss without prejudice the claims within the agency exclusive jurisdiction for lack of subject matter jurisdiction. See Subaru of Am., 84 S.W.3d at 221. | When the legislature grants an administrative agency exclusive jurisdiction over a dispute, the district court lacks jurisdiction to the extent of the agency's exclusive authority to decide the dispute, and until the party has exhausted all administrative remedies, the trial court must dismiss without prejudice the claims within the agency's exclusive jurisdiction for lack of subject matter jurisdiction. | "When the legislature grants an administrative agency exclusive jurisdiction over a dispute, does the district court lack jurisdiction to the extent of the agency exclusive authority to decide the dispute?" | 024658.docx | LEGALEASE-00155912-LEGALEASE-00155913 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 5538 | Palm v. 2800 Lake Shore Drive Condo. Ass'n, 2014 IL App (1st) 111290 | 307A+690 | "Where there is no adjudication on the merits, a dismissal should be granted without prejudice, as opposed to granting dismissal with prejudice. [Citation.] The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. [Citation.] Conversely, "a dismissal with prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim." " (Emphases in original.) Johnson, 268 Ill.App.3d at 418, 206 Ill.Dec. 34, 644 N.E.2d 802 (quoting Rogaris v. Oliver, 246 Ill.App.3d 876, 881, 186 Ill.Dec. 814, 617 N.E.2d 53 (1993)). | The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. | Is the effect of a dismissal without prejudice to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed? | Pretrial Procedure - Memo # 10248 - C - SHB_61753.docx | ROSS-003285784-ROSS-003285785 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5539 | Meadows v. Cross Gates, 878 So. 2d 674 | 307A+690 | We disagree. The October 10, 2002 judgment, dismissing the action against the Parish without prejudice, based on the failure to serve as required by La. R.S. 13:5107, was a final, appealable judgment. Batson v. Cherokee Beach and Campgrounds, 470 So.2d 478, 480 (La.App. 1 Cir.1985). Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, it does terminate the instant suit. | Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, it does terminate the instant suit. | "Although a judgment of dismissal without prejudice does not bar the filing of another suit on the same cause of action, does it terminate the instant suit?" | 024750.docx | LEGALEASE-00156178-LEGALEASE-00156179 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 5540 | Hope Assoc. of Syosset LLC v. STP Assocs. LLC, 37 Misc. 3d 490 | 307A+683 | A plaintiff is not ordinarily obligated to demonstrate evidentiary facts to support the allegations contained in the complaint (Stuart Realty Co. v. Rye Country Store, Inc., 296 A.D.2d 455, 745 N.Y.S.2d 72 [2d Dept.2002] ) nor is "[w]hether a plaintiff can ultimately establish its allegations ... part of the calculus in determining a motion to dismiss". EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005). "However, bare legal conclusions and factual claims which are flatly contradicted by the evidence are not presumed to be true on a motion to dismiss for failure to state a cause of action' ". | A plaintiff is not ordinarily obligated to demonstrate evidentiary facts to support the allegations contained in the complaint in order to survive a motion to dismiss for failure to state a cause of action, nor is whether a plaintiff can ultimately establish its allegations part of the calculus in determining a motion to dismiss. McKinney's CPLR 3211(a)(7). | Is whether a plaintiff can ultimately establish his or her allegations not part of the calculus on a motion to dismiss? | Pretrial Procedure - Memo # 10377 - C-AC_62102.docx | ROSS-003280010 | Condensed, Order, SA, Sub | 0.44 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5541 | Am. Tel. & Tel. Co. v. Everett, 38 Del. Ch. 352 | 371+2060 | Finally, assuming that the Legislature might properly enact a property tax for the benefit of the State, I am nonetheless satisfied that the incidence of the tax here clearly demonstrates that a privilege rather than a property tax was intended, Spector Motor Service Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573. The device of fixing a taxing day for the computation of the mileage of plaintiff's wires within Delaware without regard to the number of strands in such wires or their value is essentially the type of formula deemed a privilege tax in Cooney v. Mountain States Telephone & Telegraph Co., supra,4 although admittedly in that case the statute, while markedly similar to the one in the case at bar, termed itself a license tax. However, the name given to a tax is not the controlling factor in determining its nature, a property tax being one clearly and directly on property while an occupation tax is imposed on the voluntary action of the person taxed in performing the act or occupation in question, 1 Cooley on Taxation, (4th Ed.) p. 132. | The name given to a tax is not the controlling factor in determining its nature, a "property tax" being one clearly and directly on property while an "occupation tax" is imposed on the voluntary action of the person taxed in performing the act or occupation in question. | Is the name given to a tax the controlling factor in determining its nature? | 046068.docx | LEGALEASE-00156303-LEGALEASE-00156304 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5542 | Scheuer v. Rhodes, 416 U.S. 232 | 170A+671 | When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. | When a federal court reviews sufficiency of complaint, before reception of any evidence either by affidavit or admissions, issue is not whether plaintiff will ultimately prevail or is likely to prevail but whether claimant is entitled to offer evidence to support claims. | "When a court reviews the sufficiency of a complaint, before the reception of any evidence, is its task necessarily a limited one?" | Pretrial Procedure - Memo # 10380 - C - KG_62404.docx | ROSS-003321234-ROSS-003321235 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 5543 | Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100 | 307A+563 | In assessing the appropriate sanction for the violation of one of its orders, the court must consider a number of factors, including whether the plaintiff acted willfully and whether the defendant suffered harm, and if so, to what degree. See Abtrax Pharm., Inc. v. Elkins"Sinn, Inc., 139 N.J. 499, 514, 655 A.2d 1368 (1995). Because the dismissal of a plaintiff's cause of action with prejudice is a drastic remedy, it should be invoked sparingly, such as when the plaintiff's violation of a rule or order evinces ""a deliberate and contumacious disregard of the court's authority." " | Because the dismissal of a plaintiff's cause of action with prejudice is a drastic remedy, it should be invoked sparingly, such as when the plaintiff's violation of a rule or order evinces a deliberate and contumacious disregard of the court's authority. R. 1:2-4(a); R. 1:9-1; R. 4:37-2(a). | Is the dismissal of a plaintiff's cause of action with prejudice a drastic remedy and should be invoked sparingly? | 025034.docx | LEGALEASE-00156691-LEGALEASE-00156692 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5544 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+481 | We have already seen in Kaw Valley State Bank & Trust, 567 S.W.2d 710, that the owner of a note that is not negotiable may transfer his interest therein by assignment. An earlier case, Sauter v. Leveridge, 103 Mo. 615, 15 S.W. 981 (1891), reached the same result.There, the owner-payee of two notes that were past maturity, and thus no longer negotiable, assigned the notes to another. The assignment was by separate instrument, the notes themselves being lost. Judgment for the assignee against the maker was affirmed. It is thus established in Missouri that even though a note does not possess the quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another. Any language, however informal, if it shows the intention of the owner of a chose in action to transfer it, and sufficiently identifies the subject matter, is sufficient to vest the property therein in the assignee.Greater Kansas City Baptist and Community Hospital Association, Inc. v. Businessmen's Assurance Co., 585 S.W.2d 118, 119[1] (Mo.App.1979); Halvorson v. Commerce Trust Co., 222 S.W. 897, 898 (Mo.App.1920). | Even though note does not possess quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another, and any language, however informal, if it shows intention of owner of chose in action to transfer it, and sufficiently identifies subject matter, is sufficient to vest property therein in assignee. | Is any language sufficiently identifying the intent of the owner to transfer sufficient to vest the property with the assignee? | 009087.docx | LEGALEASE-00157133-LEGALEASE-00157134 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 5545 | Compton v. Country Mut. Ins. Co., 382 Ill. App. 3d 323 | 307A+679 | "It is the court's duty to determine, considering the allegations of the complaint in the light most favorable to the plaintiffs, whether the allegations are sufficient to state a cause of action upon which relief may be granted." Guinn, 361 Ill.App.3d at 586, 296 Ill.Dec. 930, 836 N.E.2d 681. "The complaint should not be dismissed unless it is clearly apparent that the plaintiffs could prove no set of facts that would entitle them to relief." Guinn, 361 Ill.App.3d at 586, 296 Ill.Dec. 930, 836 N.E.2d 681. | On a motion to dismiss for failure to state a claim upon which relief can be granted, the court considers the allegations of the complaint in the light most favorable to the plaintiffs, and the complaint should not be dismissed unless it is clearly apparent that the plaintiffs could prove no set of facts that would entitle them to relief. S.H.A. 735 ILCS 5/2-615. | "Unless it is clearly apparent that plaintiff could prove no set of facts that would entitle him to relief, should a complaint not be dismissed?" | Pretrial Procedure - Memo # 10389 - C - KG_63338.docx | ROSS-003307429-ROSS-003307430 | Condensed, Order, SA, Sub | 0.29 | 1 | 1 | 1 | 1 | 1 |
| 5546 | Selby v. Money, 403 So. 2d 218 | 307A+581 | In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Smith v. Wilcox County Board of Education, 365 So.2d at 661. See, e. g., Boazman v. Economics Laboratory, Inc., 537 F.2d 210 (5th Cir. 1976); Pond v. Braniff Airways, 453 F.2d 347 (5th Cir. 1972). Willful default or conduct is a conscious or intentional failure to act. Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95 (8th Cir. 1971). "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct. | Interest in disposing of litigation on the merits is overcome and dismissal may be granted when there is clear record of delay, willful default or contumacious conduct by plaintiff. Rules of Civil Procedure, Rule 41(b). | "Can dismissal be granted when there is clear record of delay, willful default or contumacious conduct by plaintiff?" | Pretrial Procedure - Memo # 10391 - C - KS_63341.docx | ROSS-003296002-ROSS-003296003 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5547 | Laird v. Jobes, 580 S.W.2d 413 | 307A+581 | The provisions of Rule 165a have heretofore been set forth in part. In addition, the rule provides that (w)ithin thirty days after the signing of the order of dismissal, the court shall reinstate the case upon finding, after hearing, that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake. Tex.R.Civ.P. 165a. Laird v. Jobes, 580 S.W.2d 413, 415 (Tex. Civ. App. 1979), disapproved of by Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628 (Tex. 1999)Appellant's motion to reinstate does not affirmatively state that he was never served with notice nor does appellant ever state exactly when he received actual notice. A party to a suit is always charged with notice that it may be dismissed for want of prosecution where there is inaction for a long period of time. | A party to a suit is always charged with notice that suit may be dismissed for want of prosecution where there is inaction for a long period of time. Rules of Civil Procedure, rule 165a. | Is party to suit always charged with notice that it may be dismissed for want of prosecution where there is inaction for a long period of time? | 024792.docx | LEGALEASE-00157708-LEGALEASE-00157709 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5548 | Mamet v. Mamet, 132 A.D.2d 479 | 388+14 | CPLR 3404 provides that a case marked off the trial calendar and not restored within one year shall be deemed abandoned and shall be dismissed. Furthermore, for a case to be restored to the calendar, an order of restoration must be entered within the one-year period. Farmer v. L.B. Smith, Inc., 52 A.D.2d 1068, 384 N.Y.S.2d 331; Campbell v. Puntoro, 36 A.D.2d 568, 569, 317 N.Y.S.2d 768. | Case marked off trial calendar and not restored within one year shall be deemed abandoned and shall be dismissed; furthermore, for case to be restored to calendar, order of restoration must be entered within one-year period. McKinney's CPLR 3404. | Should a case marked off trial calendar and not restored within one year be deemed abandoned and shall be dismissed? | Pretrial Procedure - Memo # 10404 - C - AC_63354.docx | ROSS-003310387-ROSS-003310388 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 5549 | Beltrone v. Gen. Schuyler & Co., 223 A.D.2d 938 | 307A+685 | If this were a motion for summary judgment, DeGraff's affidavit would be sufficient to meet his initial burden to demonstrate entitlement to judgment as a matter of law on the malpractice claim (see, Sucese v. Kirsch, 199 A.D.2d 718, 606 N.Y.S.2d 60). On a motion to dismiss, however, affidavits submitted by a defendant will seldom if ever warrant the relief he seeks unless the affidavits establish conclusively that plaintiff has no cause of action (see, Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 636, 389 N.Y.S.2d 314, 357 N.E.2d 970; see also, Pietrosanto v. NYNEX Corp., 195 A.D.2d 843, 600 N.Y.S.2d 802). | Affidavits submitted by defendant in connection with motion to dismiss will seldom if ever warrant relief sought, unless affidavits establish conclusively that plaintiff has no cause of action. | Will affidavits submitted by a defendant in connection with motion to dismiss seldom if ever warrant the relief sought? | Pretrial Procedure - Memo # 10429 - C - KG_62414.docx | ROSS-003280451 | Order, SA, Sub | 0.69 | 1 | 0 | 1 | 1 | 1 |
| 5550 | Magnum Capital v. Carter & Assocs., 905 So. 2d 220 | 307A+690 | We review de novo a trial court's final disposition on a motion to dismiss for failure to state a cause of action. See W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., 728 So.2d 297, 300 (Fla. 1st DCA 1999) ("Whether a complaint is sufficient to state a cause of action is an issue of law."). In exercising our review, we are required, as was the trial court, to take all the well-pled allegations of Appellant's Second Amended Complaint as admitted and to draw all reasonable inferences in favor of the pleading party. See id. However, if documents are attached to a complaint and conclusively negate a claim, the pleadings can be dismissed. See Franz Tractor Co. v. J.I. Case Co., 566 So.2d 524, 526 (Fla. 2d DCA 1990). If it is apparent that the claim cannot be cured by amendment, the dismissal may be with prejudice. | If documents are attached to a complaint and conclusively negate a claim, the pleadings can be dismissed on a motion to dismiss for failure to state a cause of action; if it is apparent that the claim cannot be cured by amendment, the dismissal may be with prejudice. | "If documents are attached to a complaint and conclusively negate a claim, can the pleadings be dismissed on a motion to dismiss for failure to state a cause of action?" | 025046.docx | LEGALEASE-00156705-LEGALEASE-00156706 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5551 | Samanie & Barnes v. Lawler, 619 So. 2d 1166 | 307A+587 | LSA-C.C.P. Art. 1672 A provides that a judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial. In such case, the court shall determine whether the judgment of dismissal shall be with or without prejudice. The trial court has much discretion in determining whether a motion for dismissal should be granted. Fragala v. City of Rayville, 557 So.2d 1118 (La.App. 2nd Cir.), writ denied, 561 So.2d 103 (La.1990); Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3rd Cir.1984). | Judgment dismissing action shall be rendered upon application of any party when plaintiff fails to appear on day set for trial. LSA-C.C.P. art. 1672, subd. A. | "When the plaintiff fails to appear on the day set for trial, should the trial court determine whether the judgment of dismissal shall be with or without prejudice?" | 025110.docx | LEGALEASE-00156901-LEGALEASE-00156902 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5552 | Mages Sports Arenas v. Winston Park Shopping Ctr., 112 Ill. App. 2d 409 | 307A+693.1 | The sole issue in this appeal is whether the dismissal of a complaint for want of prosecution bars the filing of a new action when the statute of limitations has not run. At common law a dismissal for want of prosecution did not prejudice the case of the party against whom it was entered. 54 A.L.R.2d, 473, 478. In Wood v. Maxwell, 238 Ill.App. 597, and in Motel v. Andracki, 299 Ill.App. 166, 19 N.E.2d 832, the courts held that a dismissal for want of prosecution did not bar the filing of a new complaint. Since it is conceded that the statute of limitations had not run, at common law plaintiffs would have a right to refile their suit. The case of Williams v. Pearson,28 Ill.App.2d 210, 171 N.E.2d 250, cited by defendants, is not applicable. | At common law a dismissal for want of prosecution does not prejudice case of party against whom dismissal is entered and does not bar filing of new complaint. | "At common law, does a dismissal for want of prosecution not prejudice a case of a party against whom dismissal is entered and does not bar filing of a new complaint?" | 025272.docx | LEGALEASE-00156921-LEGALEASE-00156922 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |
| 5553 | Peaslee v. Michalski, 167 So. 2d 242 | 228+197 | The foregoing cases clearly show that an appropriate and regular way to conclude a case nonsuited is to procure the entry of a final judgment from which judgment an appeal may be taken "as a matter of right," Section 5(3) of Article V of the Constitution, F.S.A., and the right to appeal does not depend on whether the nonsuit was voluntary or involuntary or whether the granting of the nonsuit was proper or improper. However, these factors may influence the success of the appeal when the appeal is determined on its merits. | Where nonsuit is granted, appropriate procedure to conclude case is to procure entry of final judgment from which appeal may be taken as a matter of right regardless of whether nonsuit was voluntary or involuntary or whether granting of nonsuit was proper or improper, though such factors may influence determination of appeal on its merits. F.S.A. S 54.09; F.S.A.Const. art. 5, S 5(3). | Is the appropriate way to conclude a case nonsuited to procure a final judgment? | Pretrial Procedure - Memo # 10686 - C - TJ_62665.docx | ROSS-003308815 | Order, SA, Sub | 0.27 | 1 | 0 | 1 | 1 | 1 |
| 5554 | City of Revere v. Massachusetts Gaming Comm'n, 71 N.E.3d 457 | 307A+622 | A complaint only survives a motion to dismiss if it includes enough factual heft "to raise a right to relief above the speculative level." Motor Co., 451 Mass. 623, 636, 888 N.E.2d 879 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The open meeting law provides a framework under which "all meetings of a public body shall be open to the public" unless a statutory exception applies. G. L. c. 30A, " 20 (a). A "meeting" under the statute consists of "a deliberation by a public body with respect to any matter within the body's jurisdiction." G. L. c. 30A, " 18. There are several statutory exceptions from this broad definition of "meeting""for example, "attendance by a quorum of a public body at a public or private gathering, including a conference or training program or a media, social or other event, so long as the members do not deliberate" (emphasis added). G. L. c. 30A, " 18 (b). | A complaint only survives a motion to dismiss if it includes enough factual heft to raise a right to relief above the speculative level. | Does a complaint only survive a motion to dismiss if it includes enough factual heft to raise a right to relief above the speculative level? | Pretrial Procedure - Memo # 10712 - C - SK_62688.docx | ROSS-003280945-ROSS-003280946 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5555 | Klein v. MTA-Long Island Bus, 61 A.D.3d 722 | 307A+581 | The Supreme Court did not improvidently exercise its discretion in granting that branch of the plaintiffs' motion which was to vacate the dismissal of the action pursuant to CPLR 3216, and restore the action to the trial calendar. CPLR 3216 is an "extremely forgiving statute" which "never requires, but merely authorizes, the Supreme Court to dismiss a plaintiff's action based on the plaintiff's unreasonable neglect to proceed" (Davis v. Goodsell, 6 A.D.3d 382, 383, 774 N.Y.S.2d 568; see Di Simone v. Good Samaritan Hosp., 100 N.Y.2d 632, 633, 768 N.Y.S.2d 735, 800 N.E.2d 1102; Primiano v. Ginsberg, 55 A.D.3d 709, 865 N.Y.S.2d 639; Zito v. Jastremski, 35 A.D.3d 458, 825 N.Y.S.2d 255; Ferrara v. N.Y. & Atl. Ry. Co., 25 A.D.3d 753, 754, 808 N.Y.S.2d 761). The statute prohibits the Supreme Court from dismissing a complaint based on failure to prosecute whenever the plaintiff has shown a justifiable excuse for the delay and the existence of a meritorious cause of action (see CPLR 3216[e]; Di Simone v. Good Samaritan Hosp., 100 N.Y.2d at 633, 768 N.Y.S.2d 735, 800 N.E.2d 1102; Zito v. Jastremski, 35 A.D.3d at 459, 825 N.Y.S.2d 255; Goldblum v. Franklin Munson Fire Dist., 27 A.D.3d 694, 815 N.Y.S.2d 593). | Statute providing for dismissal for failure to prosecute is an extremely forgiving statute which never requires, but merely authorizes, a trial court to dismiss an action based on the plaintiff's unreasonable neglect to proceed. McKinney's CPLR 3216. | Is a court authorised to dismiss a plaintiff's action based on plaintiff's unreasonable neglect to proceed? | Pretrial Procedure - Memo # 10724 - C - KG.docx | LEGALEASE-00047289-LEGALEASE-00047290 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5556 | Brennan v. Mead, 73 A.D.2d 926 | 307A+693.1 | However, Special Term improperly dismissed appellant's cross claim. Plaintiffs' action against Meade, Dore and Voute was dismissed on the ground that those attorneys were mere agents of appellant and owed no duty to plaintiffs' assignor. However, Mead, Dore and Voute clearly owed a duty of care to appellant. Further the fact that plaintiffs' action against Mead, Dore and Voute was dismissed does not in and of itself mandate dismissal of the cross claim. A cause of action contained in a cross claim shall be treated, as far as practicable, as if it were contained in a complaint (CPLR 3019, subd. d), and in cases where the plaintiff's action against a defendant is dismissed on the merits, the court may still adjudicate cross claims against that defendant (see 3 Weinstein-Korn-Miller N.Y.Civ.Prac., par. 3019.32; Edelman v. Edelman, 88 Misc.2d 156, 386 N.Y.S.2d 331). In this case, appellant's cross claim was directly related to plaintiffs' second cause of action. Therefore, the trial court's dismissal of the cross claim was an abuse of discretion. | Cause of action contained in cross claim shall be treated, as fair as practicable, as if it were contained in complaint, and in cases where plaintiff's action against defendant is dismissed on merits, court may still adjudicate cross claims against that defendant. CPLR 3019(d). | Can counterclaims against a plaintiff be adjudicated after a plaintiff's action against a defendant is dismissed on merits? | 025809.docx | LEGALEASE-00157654-LEGALEASE-00157655 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 5557 | City of Marion v. Baioni, 312 Ark. 423 | 371+2002 | In this case, the chancellor reviewed considerable legal authority leading him to the general conclusion that a governmental levy or fee, in order not to be denominated a tax, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. We agree with the chancellor's conclusion, which seems to be the prevailing rule in other jurisdictions. However, the rule's application is not always an easy one for the courts. See Bldg. Ind. Ass'n of S. Cal. v. City of Oxnard, 150 Cal.App.3d 535, 198 Cal.Rptr. 63 (2 Dist.1984) (a growth requirement capital fee applicable to new development held a tax because the fee was designed to collect revenues to benefit the community as a whole); Contractors & Builders Ass'n v. City of Dunedin, 329 So.2d 314 (Fla.1976) (connection fees to expand water and sewage systems held a tax because the use of the money collected was not limited to the costs of expansion); Eastern Diversified v. Montgomery County, 319 Md. 45, 570 A.2d 850 (1990) (development impact fees to raise funds to finance construction of roads held a tax because funds benefited general public); Amherst Builders Assn v. City of Amherst, 61 Ohio St.2d 345, 402 N.E.2d 1181 (1980) (sewer tap-in or connection fees of $400 for single family homes of new users upheld as valid fee, not a tax); but see State ex rel. Waterbury Development v. Witten, 58 Ohio App.2d 17, 387 N.E.2d 1380 (1977) (water tap-in fee of $720 held a tax because it exceeded cost of service provided new users); Hayes v. City of Albany, 7 Or.App. 277, 490 P.2d 1018 (1971) (sewer connection fee of $255 for a single family dwelling for construction and expansion of sewer system held valid because proceeds must be used directly in development and maintenance of sewer system); Haugen v. Gleason, 226 Or. 99, 359 P.2d 108 (1961) (land acquisition fee held tax because the use of money produced no direct benefit or relationship to the new division); Hillis | Governmental levy or fee, in order not to be denominated tax, must be fair and reasonable and bear reasonable relationship to benefits conferred on those receiving services. | Must a fee be fair and reasonable and bear a reasonable relationship to the benefits conferred in order not to be denominated a tax? | Taxation - Memo # 1012 - C - JL_63291.docx | ROSS-003279103-ROSS-003279104 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5558 | Silva v. City Of Attleboro, 454 Mass. 165 | 371+2002 | In distinguishing fees from taxes, we have noted that fees tend to share common traits. Fees, unlike taxes, "are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner "not shared by other members of society." " Emerson College, supra, quoting National Cable Television Ass'n v. United States, 415 U.S. 336, 341, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Fees "are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge." Emerson College, supra at 424"425, 462 N.E.2d 1098. Finally, the charges "are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." Id. at 425, 462 N.E.2d 1098. Valid fees fall into one of two categories: "user fees, based on the rights of the entity as proprietor of the instrumentalities used ... or regulatory fees (including licensing and inspection fees), founded on the police power to regulate particular businesses or activities." Id. at 424, 462 N.E.2d 1098, citing Opinion of the Justices, 250 Mass. 591, 597, 602, 148 N.E. 889 (1925). | In distinguishing fees from taxes, fees are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge. | "In distinguishing fees from taxes, does a party paying a fee have the option of not utilizing the governmental service and thereby avoiding the charge?" | 044579.docx | LEGALEASE-00156979-LEGALEASE-00156980 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5559 | Pallas v. State, 636 So. 2d 1358 | 3.77E+35 | In our view the statute creates no such subjective standard, but in fact creates a "reasonable person" standard. The stalking statute bears a family resemblance to the assault statutes. See " 784.011(1), Fla.Stat. (1993) ( "An "assault" is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."); id. " 784.021 (aggravated assault).3 Under the assault statutes, it is settled that a "well-founded fear" is measured by a reasonable person standard, not a subjective standard. Indeed, "where the circumstances were such as to ordinarily induce fear in the mind of a reasonable man, then the victim may be found to be in fear, and actual fear need not be strictly and precisely shown." Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977) (citations omitted); McClain v. State, 383 So.2d 1146, 1147 (Fla. 4th DCA), review denied, 392 So.2d 1376 (Fla.1980). The same principle applies to the definition of "harasses" under the stalking statute; the legislature has proscribed willful, malicious, and repeated acts of harassment which are directed at a specific person, which serve no legitimate purpose, and which would cause substantial emotional distress in a reasonable person. See generally State v. Elder, 382 So.2d at 689 (upholding constitutionality of statute forbidding "the making of an anonymous telephone call with the intent to annoy, abuse, threaten, or harass the recipient of the call....."). | Statute defining offense of aggravated stalking proscribes willful, malicious, and repeated acts of harassment which are directed at specific person, which serve no legitimate purpose, and which would cause substantial emotional distress in reasonable person. West's F.S.A. S 784.048(3). | What does the statute defining the offense of aggravated stalking proscribe? | 046912.docx | LEGALEASE-00157836-LEGALEASE-00157837 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5560 | Shepherd v. State, 230 Ga. App. 426 | 3.77E+11 | The threat of physical violence directed against an absent third party is clearly within the conduct prohibited by the criminal statute, thus this factual circumstance of the case sub judice provides no basis for overturning defendant's conviction. A rational trier of fact could reasonably have found defendant guilty beyond a reasonable doubt of the offense of committing a terroristic threat. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; Jordan v. State, 214 Ga.App. 346, 347, 447 S.E.2d 341, supra. | Threat of physical violence directed against absent third party is within conduct prohibited by criminal statute governing terroristic threats. O.C.G.A. S 16-11-37(a). | Are threats of physical violence directed against an absent third party within the type of conduct prohibited by the criminal statute governing terroristic threats? | 047066.docx | LEGALEASE-00157724-LEGALEASE-00157725 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 5561 | Arizona v. United States, 567 U.S. 387 | 24+690 | The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. See Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982); see generally S. Legomsky & C. Rodr"guez, Immigration and Refugee Law and Policy 115"132 (5th ed. 2009). This authority rests, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations, see Toll, supra, at 10, 102 S.Ct. 2977 (citing United States v. Curtiss"Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936)). | Government of United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations. U.S.C.A. Const. Art. 1, S 8, cl. 4. | Does the federal government have the constitutional power to establish a uniform rule of naturalization? | 006978.docx | LEGALEASE-00159152-LEGALEASE-00159153 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 5562 | Carrico v. Scott's Ex'r, 11 Ky.L.Rptr. 905 | 289+961 | Same"As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transaction of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transactions of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | Does dissolution of a partnership absolve the partners from all liability as to third persons? | Partnership - Memo 502 - GP_63815.docx | ROSS-003296512 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 5563 | Associated Bonded Const. Co. v. Griffin Corp., 438 A.2d 1088 | 307A+561.1 | We hold therefore that a defending party who fails to plead an affirmative defense, thereby waiving it, may not later move to dismiss the opponent's complaint under Super.R.Civ.P. 12, using that waived affirmative defense as a basis for dismissal. | A defending party who fails to plead affirmative defense, thereby waiving it, may not later move to dismiss opponent's complaint using waived affirmative defense as basis for dismissal. Rules Civ.Proc., Rules 8(c), 12, 12(b)(6). | Can a defending party dismiss opponents complaint using waived affirmative defense as basis for dismissal? | 025447.docx | LEGALEASE-00158266-LEGALEASE-00158267 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |
| 5564 | Cornell v. Ripka, 897 N.W.2d 801 | 307A+699 | A party seeking vacation of a dismissal must prove "no substantial prejudice will result to the other party." Gams, 884 N.W.2d at 620; Cole, 884 N.W.2d at 637; Finden v. Klaas, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964). Substantial prejudice is neither to be "presumed nor inferred from the mere fact of delay;" rather, there must be "some particular prejudice of such a character that some substantial right or advantage will be lost or endangered if relief is granted." Cole, 884 N.W.2d at 639 (quotation omitted). When the non-moving party is able to "present the same evidence and call the same witnesses as he would have had the original judgment not been entered," no substantial prejudice has occurred. Seiberlich v. Burlington N. R.R., 447 N.W.2d 896, 898 (Minn. App. 1989), review denied (Minn. Nov. 21, 1990). | Substantial prejudice, the lack of which the party seeking vacation of a dismissal must prove, is neither to be presumed nor inferred from the mere fact of delay; rather, there must be some particular prejudice of such a character that some substantial right or advantage will be lost or endangered if relief is granted. Minn. R. Civ. P. 60.02. | Is substantial prejudice neither to be presumed nor inferred from the mere fact of delay? | 025481.docx | LEGALEASE-00158540-LEGALEASE-00158541 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 5565 | Smith v. McKee, 145 S.W.3d 299 | 307A+699 | It is not within the discretion of the trial court to fail to hold an oral hearing on a timely-filed, properly verified motion to reinstate. Thordson v. City of Houston, 815 S.W.2d 550, 550 (Tex.1991); see Gulf Coast Inv. Corp. v. Nasa 1 Bus. Ctr., 754 S.W.2d 152, 153 (Tex.1988) (affirming court of appeals' holding that trial court abused its discretion in failing to hold hearing on motion to reinstate). | It is not within the discretion of the trial court to fail to hold an oral hearing on a timely-filed, properly verified motion to reinstate. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | "Is it not within the discretion of the trial court to fail to hold an oral hearing on a timely-filed, properly verified motion to reinstate?" | 025517.docx | LEGALEASE-00158848-LEGALEASE-00158849 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 5566 | Infinite Sec. Sols. v. Karam Properties I, Ltd., 2 N.E.3d 297 | 307A+693.1 | Turning to the merits of the assignment of error, we note that a trial court possesses authority to enforce a settlement agreement voluntarily entered into by the parties to a lawsuit because such an agreement constitutes a binding contract. Mack v. Polson Rubber Co., 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984). Further, "[w]hen an action is dismissed pursuant to a stated condition, such as the existence of a settlement agreement, the court retains the authority to enforce such an agreement in the event the condition does not occur." Estate of Berger v. Riddle, 8th Dist. Cuyahoga Nos. 66195, 66200, 1994 WL 449397,(Aug. 18, 1994). However, we also note that a trial court loses jurisdiction to proceed in a matter when the court has unconditionally dismissed the action. State ex rel. Rice v. McGrath, 62 Ohio St.3d 70, 71, 577 N.E.2d 1100 (1991). Therefore, the threshold issue in this case is whether the trial court's May 26, 2011 judgment constituted a conditional or unconditional dismissal of the action. | When an action is dismissed pursuant to a stated condition, such as the existence of a settlement agreement, the court retains the authority to enforce such an agreement in the event the condition does not occur. | "When an action is dismissed pursuant to a stated condition, does the court retain the authority to enforce such an agreement in the event the condition does not occur?" | 025711.docx | LEGALEASE-00158376-LEGALEASE-00158377 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5567 | Williams v. S. Union Co., 364 S.W.3d 228 | 307A+693.1 | "Generally, a nonsuit occurs when a court order terminates a cause of action without prejudice." Rickner v. Golfinopoulos, 271 S.W.3d 32, 34 (Mo.App.2008). " "The taking of a nonsuit amounts to, and has the effect of, a dismissal of the case as to one or all the defendants. It is not a final disposition of the cause of action on the merits, but is a final termination of the particular suit." " Rainwater v. Wallace, 351 Mo. 1044, 174 S.W.2d 835, 838 (1943) (citations omitted). " "[I]t has practically been held that the word "nonsuit" ... means any judgment or discontinuance or dismissal whereby the merits are left untouched[.]" " Turner v. Mo."Ks."Tx. R. Co., 346 Mo. 28, 142 S.W.2d 455, 459 (1940) (quoting Wetmore v. Crouch, 188 Mo. 647, 87 S.W. 954, 955 (1905)). Thus, "a judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end, and hence should be treated alike and allowed the same office in the everyday administration of the law." Wetmore, 87 S.W. at 956. | A judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end, and hence should be treated alike and allowed the same office in the everyday administration of the law. | "Does a judgment of nonsuit and a judgment of dismissal serve the same purpose, have the same legal effect, and arrive at the same end?" | 025725.docx | LEGALEASE-00158424-LEGALEASE-00158425 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5568 | Kiefer v. Rust-Oleum Corp., 394 Ill. App. 3d 485 | 307A+693.1 | Where, as here, a dismissal order does not explicitly state that it is entered "with prejudice" or "without prejudice," it is necessary "to look to the substance of what was actually decided by the dismissal order" to determine if the order is final. McMann v. Pucinski, 218 Ill.App.3d 101, 106, 161 Ill.Dec. 22, 578 N.E.2d 149 (1991). Here, there can be no dispute that Kiefer's strict liability claims were adjudicated on its merits. Kiefer's first amended complaint in Kiefer I asserted claims for strict product liability against both Rust"Oleum and U.S. Can. Rust"Oleum moved, and U.S. Can joined Rust"Oleum's motion, to dismiss Kiefer's strict product liability claims on the grounds that British Columbian law governed Kiefer's claims and that British Columbia did not recognize a cause of action based on strict products liability. | Where a dismissal order does not explicitly state that it is entered with prejudice or without prejudice, it is necessary to look to the substance of what was actually decided by the dismissal order to determine if the order is final. | "Where a dismissal order does not explicitly state that it is entered with prejudice or without prejudice, is it necessary to look to the substance of what was actually decided by the dismissal order?" | 025738.docx | LEGALEASE-00158584-LEGALEASE-00158585 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 5569 | Goodwyn v. Carter, 252 Ga. App. 114 | 307A+693.1 | The dismissal occurs as a matter of law automatically without the necessity of entry of an order by the trial judge or any action marking it dismissed by the clerk on the court docket. Swint v. Smith, 219 Ga. 532, 533-34(3), 134 S.E.2d 595 (1964); Maroska v. Williams, 146 Ga.App. 130(1), 245 S.E.2d 470 (1978); Norton v. Brady, 129 Ga.App. 753(1), 201 S.E.2d 188 (1973). The action of the clerk of court in marking a case dismissed after the period has run is ministerial only. Norton v. Brady, supra at 753, 201 S.E.2d 188. From the expiration of the five-year period when the case stands dismissed by operation of law until the actual marking of the case as dismissed, the case stands completely lifeless for all purposes from the date of automatic dismissal and not from the date the case is physically stricken from the docket. Fulton County v. Corp. of the Presiding Bishop & c., 133 Ga.App. 847, 853(3), 212 S.E.2d 451 (1975); Dollar v. Webb, 132 Ga.App. 811, 209 S.E.2d 253 (1974). Neither OCGA " 9-2-60 nor " 9-11-41(e) is in conflict, and they are supplementary to each other, making the rule applicable to all proceedings. Fulton County v. Corp. of the Presiding Bishop &c., supra at 849, 212 S.E.2d 451. | Case automatically dismissed due to passage of five-year period without any order being filed stands completely lifeless, for all purposes, from date of automatic dismissal and not from date case is physically stricken from docket. O.C.G.A. S 9-11-41(e). | Does a case automatically get dismissed due to passage of five-year period without any order being filed stand completely lifeless? | Pretrial Procedure - Memo # 10989 - C - NS_64112.docx | ROSS-003309791-ROSS-003309792 | Condensed, Order, SA, Sub | 0.79 | 1 | 1 | 1 | 1 | 1 |
| 5570 | In re Adams, 302 B.R. 535 | 308+3(5) | If there are serious questions about whether Equitable is a trustee under the plan, there are equally serious questions about whether the employer may be a trustee. Nowhere in the plan or the certificate is it called one. It may be a fiduciary insofar as it is the custodian of the insurance contracts, as the Subcommittee on Labor observed, but, according to the Equitable's certificate, once the first payment is made on behalf of an employee, Equitable issues an annuity and all further dealings of any substance are between Equitable and the employee. In fact, the employer is little more than a conduit or forwarding agent acting on the employee's behalf to withhold and send off the annuity payments. Once the employer has forwarded the payment, it has no control over the money or the accounts into which the payment is invested, and it has no control over how the benefits are ultimately paid out to the employee. This being the case, the plan may be viewed as a device operating primarily under principles of agency rather than those of trust. Even if there is a mixture of trust and agency principles involved, the agency principles may predominate:"A person may be both agent of and trustee for another. If he undertakes to act on behalf of the other and subject to his control, he is an agent; but if he is vested with the title to property which he holds for his principal, he is also a trustee. In such a case, however, it is the agency relation that predominates, and the principles of agency, rather than the principles of trust, are applicable. This is the case, for example, where the title to bonds or shares of stock or other securities is vested in a person who undertakes to hold subject to the directions of the person who caused the property to be vested in him. He is an agent since he is acting subject to the control of another, even though he is also trustee since he is vested with the title to the property. Where an agent receives money for his principal, he acquires the legal title to the money according to the view | When title to bonds or shares of stock or other securities is vested in a person who undertakes to hold subject to the directions of the person who caused the property to be vested in him, he is an "agent" since he is acting subject to the control of another, even though he is also "trustee" since he is vested with the title to the property. | Can a person be both an agent and a trustee for another? | Principal and Agent - Memo 514 - RK_63973.docx | ROSS-003279966-ROSS-003279967 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5571 | Turner v. State ex rel. Gruver, 168 So. 2d 192 | 92+1106 | The rule generally recognized is that taxes and excises including license fees are not debts within the meaning of a constitutional prohibition against imprisonment for debt. The obligation placed by the Metro code on landowners to pay a charge for garbage and waste collection and disposal is not a tax but is a charge imposed for a special service performed to the owner by the county, and as such it constitutes a debt within the guarantee of " 16 of the Declaration of Rights against imprisonment for debt. It was so held (as to hotel inspection service) in Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914, 918, and State v. McFarland, 60 Wash. 98, 110 P. 792, 794. In the first of those cases, in dealing with this proposition, the Iowa court said: | Obligation placed on landowners to pay a charge for garbage and waste collection and disposal was not a tax but was a charge imposed for a special service and as such it constituted a "debt" within constitutional guarantee against imprisonment for debt and provision purporting to make nonpayment a crime punishable by imprisonment was debt collecting device in contravention of constitutional prohibition. F.S.A.Const. Declaration of Rights, S 16. | Is a charge for garbage and waste collection and disposal a tax? | Taxation - Memo # 1026 - C - JL_63834.docx | ROSS-003281948-ROSS-003281949 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5572 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+101 | Federal authority to regulate immigration derives from various sources, including the federal government's power "[t]o establish [a] uniform rule of naturalization" (U.S. Const., art. I, " 8, cl. 4), its power "[t]o regulate commerce with foreign nations" (id., cl. 3), and its broad authority over foreign affairs. (Toll v. Moreno (1982) 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563.) Thus, the Supreme Court has established that the "[p]ower to regulate immigration is unquestionably exclusively a federal power." (De Canas, supra, 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43; accord, Hines v. Davidowitz (1941) 312 U.S. 52, 62, 61 S.Ct. 399, 85 L.Ed. 581; Galvan v. Press (1954) 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911; Truax v. Raich (1915) 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131.) As the Supreme Court has repeatedly said, " "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens." (Fiallo v. Bell (1977) 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50, quoting Oceanic Steam Navigation Co. v. Stranahan (1909) 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013.) | Federal authority to regulate immigration derives from various sources, including the federal government's power to establish a uniform rule of naturalization, its power to regulate commerce with foreign nations, and its broad authority over foreign affairs. U.S.C.A. Const. Art. 1, cl. 3, 4. | From what sources does federal authority to regulate immigration derive from? | "Aliens, Immigration and Citizenship - Memo 125 - RK_64767.docx" | ROSS-003282810-ROSS-003282811 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5573 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+103 | Nevertheless, not every state enactment or action "which [may] in any way deal[ ] with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." (De Canas, supra, 424 U.S. at p. 355, 96 S.Ct. 933.) "[S]tanding alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." (Ibid., see also Takahashi v. Fish Comm'n (1948) 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 [states are granted no powers to determine "what aliens shall be admitted to the **575 United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization"].) Thus, De Canas holds that a California statute prohibiting employers from knowingly employing aliens not lawfully residing in the United States was not preempted under the supremacy clause by the INA. (De Canas, at pp. 355"356, 96 S.Ct. 933.) | Not every state enactment or action which may in any way deal with aliens is a regulation of immigration and thus per se pre-empted by the federal constitutional power, whether latent or exercised. U.S.C.A. Const. Art. 6, cl. 2. | Is every state enactment which in any way deals with aliens considered a regulation of immigration? | "Aliens, Immigration and Citizenship - Memo 129 - RK_64770.docx" | ROSS-003283187-ROSS-003283188 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5574 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+217 | Nevertheless, not every state enactment or action "which [may] in any way deal[ ] with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." (De Canas, supra, 424 U.S. at p. 355, 96 S.Ct. 933.) "[S]tanding alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." [states are granted no powers to determine "what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization"].) Thus, De Canas holds that a California statute prohibiting employers from knowingly employing aliens not lawfully residing in the United States was not preempted under the supremacy clause by the INA. (De Canas, at pp. 355"356, 96 S.Ct. 933.) | Standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain. | Does the fact that aliens are the subject of a state statute render it a regulation of immigration? | "Aliens, Immigration and Citizenship - Memo 131 - RK_64772.docx" | ROSS-003320357-ROSS-003320358 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 5575 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+103 | Nevertheless, not every state enactment or action "which [may] in any way deal[ ] with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." (De Canas, supra, 424 U.S. at p. 355, 96 S.Ct. 933.) "[S]tanding alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." (Ibid., see also Takahashi v. Fish Comm'n (1948) 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 [states are granted no powers to determine "what aliens shall be admitted to the **575 United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization"].) Thus, De Canas holds that a California statute prohibiting employers from knowingly employing aliens not lawfully residing in the United States was not preempted under the supremacy clause by the INA. (De Canas, at pp. 355"356, 96 S.Ct. 933.) | Not every state enactment or action which may in any way deal with aliens is a regulation of immigration and thus per se pre-empted by the federal constitutional power, whether latent or exercised. U.S.C.A. Const. Art. 6, cl. 2. | Is every state enactment which in any way deals with aliens per se pre-empted? | "Aliens, Immigration and Citizenship - Memo 139 - RK_64778.docx" | ROSS-003292701-ROSS-003292702 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5576 | Garcia-Torres v. Holder, 660 F.3d 333 | 24+423 | In Immigration and Naturalization Service v. Lopez"Mendoza, the Supreme Court applied a balancing test to determine whether the exclusionary rule, which is generally applied only in criminal proceedings, should also apply in civil deportation proceedings. 468 U.S. 1032, 1040"50, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Applying the "framework," "imprecise as the exercise may be," set forth in United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the *336 Court analyzed various factors to weigh "the likely social benefits of excluding unlawfully seized evidence against the likely costs." Id. at 1041, 104 S.Ct. 3479. Although the factors that weighed against applying the exclusionary rule in civil tax proceedings in Janis might not apply in the deportation context, the Court reached "the same conclusion as in Janis" based on "several other factors [that] significantly reduce the likely deterrent value of the exclusionary rule in a civil deportation proceeding." The Court concluded that the exclusionary rule does not apply "in an INS civil deportation hearing" conducted solely to determine if the alien is eligible to remain in the U.S., not to criminally punish any unlawful entry, even though that is a crime. | The exclusionary rule does not apply in an Immigration and Naturalization Service (INS) civil deportation hearing conducted solely to determine if the alien is eligible to remain in the United States, not to criminally punish any unlawful entry, even though that is a crime. | Does the exclusionary rule apply in civil deportation hearings? | 006931.docx | LEGALEASE-00160196-LEGALEASE-00160197 | Condensed, Order, SA, Sub | 0.78 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5577 | Com. v. Swan, 73 Mass. App. Ct. 258 | 281+126 | Open and gross lewdness."Open and gross lewdness and lascivious behavior" is prohibited by G.L. c. 272, " 16, but the statute does not define the offense. However, decisional law requires proof of five elements to support a conviction, i.e., that the defendant (1) exposed genitals, breasts, or buttocks;(2) intentionally; (3) openly or with reckless disregard of public exposure; (4) in a manner so "as to produce alarm or shock"; (5) thereby actually shocking or alarming one or more persons. Commonwealth v. Kessler, 442 Mass. 770, 773 & n. 4, 817 N.E.2d 711 (2004). | A conviction for open and gross lewdness and lascivious behavior requires proof that a defendant (1) exposed genitals, breasts, or buttocks, (2) intentionally, (3) openly or with reckless disregard of public exposure, (4) in a manner so as to produce alarm or shock, (5) thereby actually shocking or alarming one or more persons. M.G.L.A. c. 272, S 16. | What are the elements required to prove open and gross lewdness? | 014281.docx | LEGALEASE-00159982-LEGALEASE-00159983 | SA, Sub | 0.38 | 0 | 0 | 1 | 1 | |
| 5578 | Carrico v. Scott's Ex'r, 11 Ky.L.Rptr. 905 | 289+961 | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transaction of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | As a general rule, the dissolution of a partnership will not absolve the partners from liability to a third person, who dealt with the firm while in existence, for the future transactions of any of the partners acting on account of the firm, unless such third party has had notice of the dissolution. | Does the dissolution of a partnership absolve the partners from all liability to a third person? | 022592.docx | LEGALEASE-00160146-LEGALEASE-00160147 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 5579 | Jones v. Virginian Ry. Co., 116 W. Va. 201 | 302+17 | Now with respect to the automobile: It was certainly no fault of the railroad that it came onto the track. The company had no reason to expect it at such place. It seems to us, therefore, that defendant should be required to exercise no greater duty to discover its presence on the track than accorded a trespasser, or licensee. A railroad, under our decisions, is under no duty or obligation to be actively diligent in providing against danger or accident to a mere licensee on its tracks or right of way. Spicer v. Railroad, 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385; 3 Elliott on Railroads (3d Ed.) 833, " 1788. There is no statute in this state requiring the defendant to maintain a lookout, or lights, at such places. Melton v. Railroad Co., 64 W. Va. 168, 61 S. E. 39; 3 Elliott on Railroads (3d Ed.) 854, " 1795. "It always has been, and still is a general rule in pleading, that whatever facts are necessary to constitute the cause of action should be directly and distinctly stated in the declaration, and such facts should not be left to be inferred from other facts distinctly alleged in the declaration, and arguments, inferences and matters of law should be excluded." Burton v. Hansford, 10 W. Va. 470, 27 Am. Rep. 571. | Whatever facts are necessary to constitute cause of action must be directly and distinctly stated in declaration, and not left to be inferred from other facts distinctly alleged therein, and arguments, inferences, and matters of law should be excluded. | Should facts that are necessary to constitute the cause of action be directly and distinctly stated in the declaration? | 023851.docx | LEGALEASE-00159903-LEGALEASE-00159904 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5580 | In re Valliance Bank, 422 S.W.3d 722 | 307A+697 | A trial court has plenary power to reinstate a case within thirty days after it signs an order of dismissal for want of prosecution. Tex.R. Civ. P. 165a(3), (4); Neese v. Wray, 893 S.W.2d 169, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ) (recognizing trial court has plenary power to reinstate case within thirty days of dismissal even in absence of motion to reinstate). A verified motion to reinstate a case filed within thirty days of a dismissal for want of prosecution extends the trial court's plenary power in the same manner as a motion for new trial. Tex.R. Civ. P. 165a(3), (4). The Supreme Court of Texas has made clear, however, that an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction or the time in which to file a notice of appeal. McConnell v. May, 800 S.W.2d 194, 194 (Tex.1990) (orig. proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); Butts v. Capitol City Nursing Home, Inc., 705 S.W.2d 696, 697 (Tex.1986). | A verified motion to reinstate a case filed within thirty days of a dismissal for want of prosecution extends the trial court's plenary power to reinstate the case in the same manner as a motion for new trial. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3, 4). | Is an unverified motion to reinstate a case a nullity and does not extend the trial court's plenary jurisdiction or the deadlines for perfecting an appeal? | 039607.docx | LEGALEASE-00159575-LEGALEASE-00159576 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5581 | Higginbotham v. Pub. Serv. Commn of Maryland, 171 Md. App. 254 | 307A+695 | Maryland Rule 2"322 (c) provides that if the court grants a motion to dismiss pursuant to Rule 2"322 (a), "an amended complaint may be filed only if the court expressly grants leave to amend." It is within the court discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal. G & H Clearing and Landscaping v. Whitworth, 66 Md.App. 348, 356 n. 5, 503 A.2d 1379 (1986); Gaskins v. Marshall Craft Associates, Inc., 110 Md.App. 705, 716, 678 A.2d 615 (1996). "The circuit court decision to deny leave to amend will be reversed only upon a finding that the court abused that discretion." McMahon v. Piazze, 162 Md.App. 588, 598, 875 A.2d 807 (2005). | It is within the court's discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal, and court's decision to deny leave to amend will be reversed only upon a finding that the court abused that discretion. | Is it within the court discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal? | Pretrial Procedure - Memo 11589 - C - NE_65607.docx | ROSS-003281067-ROSS-003281068 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5582 | Conoco v. Tinklenberg, 121 P.3d 893 | 371+3602 | A sales tax is a tax on a purchase, whereas a use tax is a levy upon the privilege of storing, using, or consuming tangible personal property purchased at retail.Int'l Bus. Machs. Corp. v. Charnes, 198 Colo. 374, 377, 601 P.2d 622, 624 (1979); see CCSUTC "" 20"1(1"1), 20"2(2"1), 20"3(3"70), (3"71). | A "sales tax" is a tax on a purchase, whereas a "use tax" is a levy upon the privilege of storing, using, or consuming tangible personal property purchased at retail. | "Is a ""use tax"" a levy upon the privilege of storing, using or consuming tangible personal property purchased at retail?" | 046235.docx | LEGALEASE-00159848-LEGALEASE-00159849 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 5583 | Louisiana Paving Co. v. St. Charles Par. Pub. Sch., 604 So. 2d 593 | 371+3603 | The purpose of a sales/use tax scheme is to make all tangible personal property used or consumed within the state subject to a uniform tax burden irrespective of whether it is acquired in the state, making it subject to the sales tax, or acquired from without the state, making it subject to the use tax at the same rate. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975).The substance of the contract is controlling for the determination of tax liability for sales/use tax purposes. Cajun Contractors, Inc. v. State of La., Dep't of Revenue and Taxation, 515 So.2d 625 (La.App. 1st Cir.1987). The sales/use tax is payable by the general contractor, who is held to be the ultimate purchaser or user of building materials used in construction of an immovable. The building materials, equipment, and supplies purchased by the contractor are "tangible personal property." La.R.S. 47:301(10), (16). | Purpose of sales/use tax scheme is to make all tangible personal property used or consumed within state subject to uniform tax burden irrespective of whether it is acquired in state, making it subject to sales tax, or acquired from without state, making it subject to use tax at same rate. | What is the purpose of a sales and use tax scheme? | 046241.docx | LEGALEASE-00159858-LEGALEASE-00159859 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5584 | State v. Nunez, 129 N.M. 63 | 135H+25 | Proceeds are the profits of illegal activities and property purchased with those illegal profits and their forfeiture deprives the owner of nothing to which he or she is entitled. Cheh, Easy, supra, at 15. It is claimed as well that the forfeiture of instrumentalities-property that is used to facilitate a crime-serves remedial objectives. The harmful nature of such property and the remedial character of such forfeitures is disputed. See Eric Blumenson & Eva Nilsen, Policing for Profit: The Drug War's Hidden Economic Agenda, 65 U. Chi. L.Rev. 35, 45"46 (1998). Forfeiture of harmful property can be beneficial.However, this factor, even when considered with the other remedial qualities we mention, does not outweigh the punitive nature of forfeiture under the Controlled Substances Act. | Forfeiture of harmful property can be beneficial; however, this factor, even when considered with the other remedial qualities, does not outweigh the punitive nature of forfeiture under the Controlled Substances Act, for double-jeopardy purposes. Const. Art. 2, S 15; NMSA 1978, S 30-31-34 et seq. | "Does forfeiture of harmful property considered with the other remedial qualities, outweigh the punitive nature of forfeiture under the Controlled Substances Act?" | 016481.docx | LEGALEASE-00160539-LEGALEASE-00160540 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5585 | Ex parte Baker, 459 So. 2d 873 | 307A+699 | Without question, a movant must both allege and prove one of the grounds set forth in Rule 60 in order to be granted relief under that rule. Raine v. First Western Bank, 362 So.2d 846 (Ala.1978). Moreover, because Rule 60(b) relief is extraordinary relief, a movant has the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under Rule 60(b)(6). Howell v. D.H. Holmes, Ltd., 420 So.2d 26 (Ala.1982). And, while the decision of whether to grant or deny the motion is within the sound discretion of the trial judge, that discretion is not unbridled. Douglass v. Capital City Church of the Nazarene, 443 So.2d 917 (Ala.1983); Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1979). | Because reinstatement of cause of action under rule of civil procedure pertaining to relief from final judgment after dismissal with prejudice is extraordinary relief, a movant has the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under rule. Rules Civ.Proc., Rule 60(b), (b)(6). | Does a movant have the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under rule 60(b)(6)? | 039652.docx | LEGALEASE-00161168-LEGALEASE-00161169 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 5586 | Wharff v. Iowa Methodist Hosp., 219 N.W.2d 18 | 307A+699 | The general policy in this jurisdiction has been to allow trial on the merits. In general, a liberal approach is taken in appeals from rulings overturning default (rule 236, R.C.P.) entered because of mistake, inadvertence and excusable neglect. In Rath v. Sholty, 199 N.W.2d at 335-337, this same liberal approach taken in regard to rule 236 appeals was considered as the approach to be followed with respect to reinstatement under rule 215.1, R.C.P., in view of the 1965 amendment. | Generally, liberal approach is taken in appeals from rulings overturning default entered because of mistake, inadvertence and excusable neglect and the same liberal approach must be followed with respect to reinstatement of actions dismissed for delay at trial. 58 I.C.A. Rules of Civil Procedure, rules 215.1, 236. | "Is a liberal approach taken in appeals from rulings overturning default entered because of mistake, inadvertence and excusable neglect?" | 039673.docx | LEGALEASE-00161148-LEGALEASE-00161149 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 5587 | Harris Cty. v. Progressive Nat. Bank, 93 S.W.3d 381 | 302+111.48 | When deciding a plea to the jurisdiction, the general rule is the trial court must look to the allegations in the petition and must accept those allegations as true. Id. The trial court does not look at the merits of the case. Id. If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. Id. Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the court. Id. | If petition being challenged through plea to the jurisdiction fails to allege jurisdictional facts, plaintiff has right to amend before trial court dismisses cause. | "If a petition being challenged through plea to the jurisdiction fails to allege jurisdictional facts, does the plaintiff have a right to amend before a trial court dismisses cause?" | Pretrial Procedure - Memo 11611 - C - SKG_65627.docx | ROSS-003294614-ROSS-003294615 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5588 | Allied Prod. Co. v. Green, 175 Ga. App. 802 | 307A+695 | Appellant suggests that the decision in Williams v. Holland, 9 Ga.App. 494, 71 S.E. 760 (1911), is analogous to the case at bar. In Williams, the plaintiff paid the clerk and sheriff "such portion of the costs as had not been previously paid to them by the defendant," but made no payment or tender to the defendant of the costs which the defendant had paid in the earlier proceeding. The Williams court held that all costs, whether due to court officers or the opposite party, had to be paid before the commencement of the second suit. We agree with the Williams holding and do not find it analogous to the present situation where payment of an expense, not a cost, is at issue. | All costs of earlier proceeding, whether due court officers or opposite party, must be paid before commencement of second suit. | "Should all costs of earlier proceeding, whether due court officers or opposite party, be paid before commencement of a second suit?" | 040340.docx | LEGALEASE-00161124-LEGALEASE-00161125 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 5589 | Bobbin v. Sail the Sounds, 153 Conn. App. 716 | 307A+583 | Practice Book " 14"3(a) permits a trial court to dismiss an action with costs if a party fails to prosecute the action with reasonable diligence. "The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court." Nickerson v. Gachim, 183 Conn. 413, 415, 439 A.2d 379 (1981), overruled in part on other grounds by Morelli v. Manpower, Inc., 226 Conn. 831, 834, 628 A.2d 1311 (1993). "Under [" 14"3], the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the "reasonable" section of the diligence spectrum." Jaconski v. AMF, Inc., 208 Conn. 230, 234, 543 A.2d 728 (1988). Courts must remain mindful, however, that "[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible"; Snow v. Calise, 174 Conn. 567, 574, 392 A.2d 440 (1978); and that "[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) Millbrook Owners Assn., Inc. v. Hamilton Standard, 257 Conn. 1, 16, 776 A.2d 1115 (2001) | A trial court ruling on a motion to dismiss for lack of diligence is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the "reasonable" section of the diligence spectrum. Practice Book 1998, S 14-3. | Is the court ruling on a motion to dismiss for lack of diligence confronted with endless gradations of diligence? | 040382.docx | LEGALEASE-00160553-LEGALEASE-00160555 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 5590 | Chacha v. Transp. USA, 78 So. 3d 727 | 307A+583 | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed "a fraud on the court which permeates the entire proceedings." See McKnight v. Evancheck, 907 So.2d 699, 700 (Fla. 4th DCA 2005). In Arzuman v. Saud, 843 So.2d 950 (Fla. 4th DCA 2003), we explained: The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117"18. | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed a fraud on the court which permeates the entire proceedings. | Does a court have the authority to dismiss a plaintiff's entire case when there is evidence that the plaintiff has committed a fraud on the court which permeates the entire proceedings? | 040389.docx | LEGALEASE-00160614-LEGALEASE-00160615 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5591 | Hung v. Bullock, 180 S.W.3d 931 | 307A+583 | The trial court's authority to dismiss a case for want of prosecution derives from two sources: Rule 165a of the Texas Rules of Civil Procedure and the court's inherent power. Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). A trial court may dismiss under Rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice...." Tex.R. Civ. P. 165a; Villarreal, 994 S.W.2d at 630. The trial court possesses the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex.1976). A plaintiff must prosecute the case to a standard of "reasonable diligence" and in resolving the issue of reasonable diligence, the court may consider the entire trial history with no single factor being dispositive. See State v. Rotello, 671 S.W.2d 507, 509 (Tex.1984). The trial court's decision to dismiss a case for want of prosecution may only be reversed upon a showing of abuse of discretion. See Williams, 543 S.W.2d at 90. An abuse of discretion occurs when a trial court acts arbitrarily or unreasonably without reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241"42 (Tex.1985). | The trial court's authority to dismiss a case for want of prosecution derives from two sources: the Rules of Civil Procedure and the court's inherent power. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | What are the two sources from where the trial court's authority to dismiss a case for want of prosecution derive from? | 040473.docx | LEGALEASE-00161229-LEGALEASE-00161230 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5592 | Bartlett v. Peak, 107 Idaho 284 | 307A+583 | Appellants attempt to distinguish the instant case from Kirkham on the ground that in Kirkham the trial court dismissed a matter on its own motion in light of the plaintiff's failure to comply with a local district court rule which specifically provided for procedures to be followed in the prosecution of an action. Appellants point to the fact that in the Fifth Judicial District, where the instant case was pending, there are no such local rules. This distinction is simply not relevant, since the trial court's power to dismiss a case because of failure to prosecute with due diligence is inherent and independent of any statute or rule of court. Warden v. Lathan, 96 Idaho 34, 524 P.2d 162 (1974), Cox v. Widmer, 94 Idaho 451, 490 P.2d 318 (1971), Beckman v. Beckman, 88 Idaho 522, 401 P.2d 810 (1965), Hansen v. Firebaugh, 87 Idaho 202, 392 P.2d 202 (1964). | Trial court's power to dismiss a case because of failure to prosecute with due diligence is inherent and independent of any statute or rule of court. Rules Civ.Proc., Rule 41(b). | Is the Trial courts power to dismiss a case because of failure to prosecute with due diligence inherent and independent of any statute or rule of court? | 040548.docx | LEGALEASE-00160919-LEGALEASE-00160920 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5593 | United States v. Lara-Ramirez, 519 F.3d 76 | 135H+96 | To evaluate this claim, we must inquire whether Lara waived his right to avoid double jeopardy by consenting, either expressly or impliedly, to the mistrial. Id.; DiPietro, 936 F.2d at 9; see also United States v. Smith, 621 F.2d 350, 351-52 (9th Cir.1980). Consent may sometimes "be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so." Toribio-Lugo, 376 F.3d at 40. However, such an "implication of consent is not lightly to be indulged." Id. | Consent to a mistrial, for double jeopardy purposes, may sometimes be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so. U.S.C.A. Const.Amend. 5. | "Can consent to a mistrial, for double jeopardy purposes sometimes be implied from a defendants acts or failures to act?" | 015057.docx | LEGALEASE-00162259-LEGALEASE-00162260 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5594 | Bessler v. Bd. of Ed. of Chartered Sch. Dist. No. 150 of Peoria Cty., 69 Ill. 2d 191 | 316P+810 | Measure of damages for breach of teacher's employment contract would be salary provided in contract reduced by such sums as wrongfully discharged teacher had earned or by reasonable diligence could have earned in other employment subsequent to discharge, and employer has burden of showing that employee could or did have other earnings subsequent to wrongful discharge and that those earnings stemmed from employment incompatible with employment from which she was wrongfully discharged.Ill.Rev.Stat.1971, ch. 122, " 24"11. This court has consistently held that a writ of mandamus will not issue for the reinstatement of a nontenured teacher. (Wilson v. Board of Education, 394 Ill. 197, 68 N.E.2d 257; Anderson v. Board of Education, 390 Ill. 412, 61 N.E.2d 562; People ex rel. Davidson v. Bradley, 382 Ill. 383, 47 N.E.2d 93.) The appropriate remedy for the wrongful discharge of a nontenured teacher is an action for breach of contract. (Hartmann v. Board of Education, 356 Ill. 577, 191 N.E. 279.) The measure of damages is the salary provided in the contract (School Directors v. Reddick, 77 Ill. 628) reduced by such sums as the wrongfully discharged teacher has earned or by reasonable diligence could have earned in other employment subsequent to the discharge (Doherty v. Schipper & Block, 250 Ill. 128, 95 N.E. 74). The employer has the burden of showing that the employee could or did have other earnings subsequent to the wrongful discharge and that those earnings stemmed from employment incompatible with the employment from which he was wrongfully discharged. (People ex rel. Bourne v. Johnson, 32 Ill.2d 324, 205 N.E.2d 470.) On this record, plaintiff was entitled to judgment in the amount of $10,680, the amount she would have earned for the 1972-73 school term as damages for breach of contract, and costs. We have considered plaintiff's argument that under the provisions of section 24-12 of the School Code (Ill.Rev.Stat. | Measure of damages for breach of teacher's employment contract would be salary provided in contract reduced by such sums as wrongfully discharged teacher had earned or by reasonable diligence could have earned in other employment subsequent to discharge, and employer has burden of showing that employee could or did have other earnings subsequent to wrongful discharge and that those earnings stemmed from employment incompatible with employment from which she was wrongfully discharged. Ill.Rev.Stat.1971, ch. 122, S 24-11. | What remedies are available to teachers who are wrongfully discharged? | 017212.docx | LEGALEASE-00162076-LEGALEASE-00162078 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5595 | Asociacion de Educacion Privada de Puerto Rico v. Garcia-Padilla, 490 F.3d 1 | 141E+919 | In view of this history, we find that the private schools have a First Amendment right to academic freedom. By the same token, we also acknowledge the right and power of the state to promulgate reasonable regulations affecting private primary and secondary schools to ensure that minimum educational standards are met. See Pierce, 268 U.S. at 534, 45 S.Ct. 571 ("No question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils...."); Board of Ed. of Central Dist. No. 1 v. Allen, 392 U.S. 236, 246, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968)("[A] substantial body of case law has confirmed the power of the States to insist that attendance at private schools, if it is to satisfy state compulsory attendance laws, be at institutions which provide minimum hours of instruction, employ teachers of specified training, and cover prescribed subjects of instruction."). Still, "the discretion of the States and local school boards must be exercised in a manner that comports with the transcendental imperatives of the First Amendment." Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 864, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982). Mindful of this balancing requirement, we examine the constitutionality of Regulation 6458 and Law 116. | State has right and power to promulgate reasonable regulations affecting private primary and secondary schools to ensure that minimum educational standards are met. | Does the state have the right and power to promulgate reasonable regulations affecting primary and secondary schools? | 017268.docx | LEGALEASE-00162128-LEGALEASE-00162129 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5596 | Cook v. Peacock, 154 S.W.2d 688 | 289+568(3) | The duties and responsibilities of a managing partner are in substance stated in Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 180, as follows: "It is the duty of the managing partner to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Where he has failed to keep accurate accounts, the burden rests upon him, as managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him. 47 C.J. 1245. Under the circumstances, C. L. Dial has the burden of showing the application of firm assets to the payment of firm debts, Marcum's Administrator v. Marcum, 154 Ky. 401, 157 S.W. 1101, and every reasonable presumption must be indulged against him. McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280. Doubt as to the validity of credits which he claims must be resolved against him. Kirwan v. Henry (Ky.) 16 S.W. 828; Navarro v. Lamana (Tex.Civ.App.) 179 S.W. 922. The duty of a partner in control of such a business is analogous to that of a trustee. Raymond v. Vaughn, 128 Ill. 256, 21 N.E. 566, 4 L.R.A. 440, 15 Am.St.Rep. 112." | Where a managing partner has failed to keep accurate accounts of his transactions with or for partnership, the burden rests upon him to show that he has performed his duty of keeping accounts fairly, impartially, and honestly. | Does the burden of proof of accounting rest upon the managing partner when he has failed to keep accurate accounts? | Partnership - Memo 597 - SNP.docx | LEGALEASE-00052064-LEGALEASE-00052065 | Condensed, Order, SA, Sub | 0.82 | 1 | 1 | 1 | 1 | 1 |
| 5597 | Baum v. McBride, 152 Neb. 152 | 289+568(3) | It is ordinarily true, as stated in Sweatt v. Johnson, 97 Vt. 177, 122 A. 501, 503: "* * * where a partner sues his co-partner for an accounting the burden of producing evidence on which the full account of the partnership can be stated is primarily upon the plaintiff, and if he cannot furnish sufficient evidence to enable the court to state the account his suit necessarily fails. Ashley v. Williams, 17 Or. 441, 21 P. 556; Maupin v. Daniel, 3 Tenn. Ch. 223; Hall v. Clagett, 48 Md. 223; Slater v. Arnett, 81 Va. 432; Davidson v. Wilson, 3 Del. Ch. 307; Simpson v. Gernandt, 98 Neb. 330, 152 N.W. 549; Oglesby v. Thompson, 59 Ohio St. 60, 51 N.E. 878; Gay v. Householder, 71 W.Va. 277, 76 S.E. 450, Ann.Cas.1914C, 297; Slaughter v. Danner, 102 Va. 270, 46 S.E. 289." However, where as here, one partner is in control of the books and has managed the business, he is in the position of a trustee and must make a proper accounting accordingly. See Sweatt v. Johnson, supra. As stated in Riley v. Riley, 150 Neb. 176, 33 N.W.2d 525, 526: "It is the duty of a partner to account to the partnership for any benefit, and hold as trustee for it, any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use of its property." | It is the duty of a partner to account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partner from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use of its property. | Does a partner have a duty to account for any benefit he derived from his use of partnership property? | 022724.docx | LEGALEASE-00162446-LEGALEASE-00162447 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5598 | McDermott v. Reynolds, 260 Va. 98 | 302+42 | The essential basis of McDermott's claim is that the defendant had an adulterous relationship with McDermott's wife, which he continued in an open and notorious manner after being confronted by McDermott. This alleged conduct is precisely the type of conduct that the General Assembly intended to exclude from civil liability when it enacted Code " 8.01"220. Thus, the fact that McDermott labels his claim as intentional infliction of emotional distress and recites the elements of that tort in support of his action does not shield the action from the statutory bar. We must consider the nature of the cause of action pleaded, not merely its form, in determining whether a plaintiff has stated a cause of action that will permit recovery of damages for the conduct alleged. See Philip Morris Inc. v. Emerson, 235 Va. 380, 407, 368 S.E.2d 268, 282"83 (1988). | Court must consider the nature of the cause of action pleaded, not merely its form, in determining whether a plaintiff has stated a cause of action that will permit recovery of damages for the conduct alleged. | "In determining whether a plaintiff has stated a cause of action, should the nature of the cause of action or its form be considered?" | Pleading - Memo 630-RMM_66430.docx | ROSS-003293057-ROSS-003293058 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5599 | Enriquez v. Livingston, 400 S.W.3d 610 | 307A+583 | A trial court has authority to dismiss a case for want of prosecution either (1) under Rule 165a of the Texas Rules of Civil Procedure (for failure to appear for any hearing or trial or for failure to dispose of the case within the time standards promulgated by the supreme court under its administrative rules), or (2) under the court's inherent power under the common law. Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). Whichever source of authority the court uses, the plaintiff must be provided with "notice and an opportunity to be heard." Id. A failure to provide adequate notice of the court's intent to dismiss for want of prosecution requires reversal. Id. The central question as to this issue is what constitutes "adequate notice." | Dismissal of inmate's action against Department of Criminal Justice officials, for allegedly refusing him access to adequate medical treatment, was not based on Civil Procedure Rule, governing dismissal for want of prosecution, but, rather, on the trial court's inherent power to dismiss a suit for want of prosecution, and accordingly, the notice of dismissal did not need to satisfy the specific requirements of Rule, but, rather, merely needed to be adequate to satisfy due process; dismissal notice did not reference Civil Procedure Rule, and in the dismissal notice, there was no mention of a requirement to appear for any hearing or any mention of a failure to abide by the time standards in the Supreme Court's administrative rules, and court's dismissal order recited that the case was pending for fifteen months without service of citation or filing of answer. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does the court have the authority to dismiss a case for want of prosecution under the court's inherent power under common law? | Pretrial Procedure - Memo 11847 - C - DA_66451.docx | ROSS-003293635-ROSS-003293636 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 5600 | DeSantis v. Gaudioso, 39 Conn. Supp. 222 | 413+2 | The workers' compensation act exists to compensate employees for injuries arising out of and in the course of employment through a guaranteed, fixed schedule recovery system. Klapproth v. Turner, 156 Conn. 276, 279, 240 A.2d 886 (1968). Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. Jett v. Dunlap, 179 Conn. 215, 217, 425 A.2d 1263 (1979); General Statutes " 31"284. | Under workers' compensation statute, employee surrenders his right to bring common-law action against employer, thereby limiting employer's liability to the statutory amount. C.G.S.A. S 31-284. | "Under the Workers' Compensation Act, does the employee surrender his right to bring a common law action against the employer limiting the employers liability to the statutory amount?" | Workers' Compensation Memo #526 ANC_66492.docx | ROSS-003283174-ROSS-003283175 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 5601 | Lockwood v. Mitchell, 7 Ohio St. 387 | 8.30E+10 | The contract for the loan was made in the State of New York; the money was advanced there; the note and mortgage delivered there; and the loan was to be repaid there. The fact that one of the incidents of the debt consisted of a lien, by way of mortgage, upon lands in Ohio, to secure payment, does not change the law in this respect. It was a contract not only made, but to be performed in the State of New York, and must be governed by the laws of that state. | Where a loan was made, the money advanced and to be repaid, and a note and a mortgage delivered in New York, of land in Ohio, it will be regarded as a contract made in New York, and governed by the laws of that state; and the usury laws of that state will apply to it. | "If the contract for loan is made in a particular state, the money was advanced there, and the note and mortgage delivered there will the contract be governed in that state?" | 009147.docx | LEGALEASE-00162807-LEGALEASE-00162808 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 5602 | Stephens v. Messick, 2002 PA Super 117 | 30+3202 | More recently, in Jacobs v. Halloran, 551 Pa. 350, 710 A.2d 1098 (1998), our Supreme Court abandoned the Penn Piping presumption of prejudice and reinstated the original James Brothers three-part test for the entry of a judgment of non pros. Thus, subsequent to Jacobs, the moving party was once again required to demonstrate that its opponent's delay has caused actual prejudice. The decision whether to enter a judgment of non pros is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Jacobs, 710 A.2d at 1101, citing Gallagher v. Jewish Hospital Ass'n, 425 Pa. 112, 228 A.2d 732, 733 (1967).1 | Decision whether to enter a judgment of non pros is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. | Is the decision whether to enter a judgment of non pros committed to the sound discretion of the trial court? | Pretrial Procedure - Memo 12225 - C - DHA_67598.docx | ROSS-003294722-ROSS-003294723 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5603 | Shushunov v. Illinois Dep't of Fin. & Prof'l Regulation, 74 N.E.3d 71 | 135H+25 | With regard to plaintiff's double jeopardy argument, we further find the Regulation did not violate the constitutional protection against double jeopardy. The United States and Illinois Constitutions prohibit multiple criminal punishments for one offense. Consiglio, 2013 IL App (1st) 121142, 23, 370 Ill.Dec. 664, 988 N.E.2d 1020. However, a civil penalty generally is not considered a punishment for purposes of double jeopardy, unless it is so punitive in nature or effect that it is the "functional equivalent" of a criminal penalty. Id. In order to ascertain whether a civil penalty is actually punitive in nature, a court must consider the intent of the legislature. Id. | A civil penalty generally is not considered a punishment for purposes of double jeopardy, unless it is so punitive in nature or effect that it is the functional equivalent of a criminal penalty. U.S. Const. Amend. 5; Ill. Const. art. 1, S 10. | "Is a civil penalty generally not considered a punishment for purposes of double jeopardy, unless it is so punitive in nature?" | 015067.docx | LEGALEASE-00162837-LEGALEASE-00162838 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 5604 | People v. Anderson, 117 Cal. App. Supp. 763 | 135H+112.1 | For these reasons, we have previously rejected the argument that a conviction on an underlying offense is enough in itself to bar retrial of attached sentencing allegations. As noted in Bright, supra, 12 Cal.4th at pages 661"662, 49 Cal.Rptr.2d 732, 909 P.2d 1354, "a defendant's conviction of the underlying substantive offense does not (on double jeopardy grounds) bar further proceedings, such as retrial, on a penalty allegation. [Citation.] Thus, the circumstance that the jury has returned a verdict on the underlying offense, but is unable to make a finding on the penalty allegation, does not constitute an "acquittal" of (or otherwise bar retrial of) the penalty allegation on the ground of double jeopardy. [Citations.]" The question now is whether Apprendi requires us to overrule this holding by treating penalty allegations as substantive elements of an offense for purposes of section 1023, the state statute governing retrial of included offenses. We conclude it does not. | A defendant's conviction of the underlying substantive offense does not on double jeopardy grounds bar further proceedings, such as retrial, on a penalty allegation. U.S.C.A. Const.Amend. 5. | "Does a defendant's conviction of the underlying substantive offense, on double jeopardy grounds bar further proceedings, such as retrial, on a penalty allegation?" | 014857.docx | LEGALEASE-00163994-LEGALEASE-00163995 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5605 | United States v. Clementi, 70 F.3d 997 | 135H+25 | Furthermore, even if jeopardy could attach to a " 924(d) forfeiture, we find as a factual matter that the government's stay of the forfeiture proceedings in this case prevented the attachment of jeopardy, because jeopardy does not attach upon the government's mere filing of an administrative claim. Accord United States v. McDermott II, 64 F.3d 1448, 1455 (10th Cir.1995); United States v. Arreola"Ramos, 60 F.3d 188, 192 (5th Cir.1995); United States v. Barton, 46 F.3d 51, 52 (9th Cir.1995); United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.), cert. denied, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). Additionally, jeopardy has not attached here because Clementi has not intervened in the forfeiture proceeding.4 United States v. Pena, 67 F.3d 153, 155 (8th Cir.1995) (citing United States v. Baird, 63 F.3d 1213, 1218"19 (3d Cir.), petition for cert. filed, (U.S. Oct. 17, 1995) (No. 95"630); Arreola"Ramos, 60 F.3d at 192; and Torres, 28 F.3d at 1465"66). | Assuming that double jeopardy could attach to forfeiture of firearms found in possession of felon, Government's stay of forfeiture proceedings pending criminal prosecution prevented attachment of jeopardy. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. SS 922(g)(1), 924(d). | "Assuming that double jeopardy could attach to forfeiture of firearms found in possession of felon, does a Government's stay of forfeiture proceedings pending criminal prosecution prevent attachment of jeopardy?" | 015162.docx | LEGALEASE-00163497-LEGALEASE-00163498 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 5606 | People v. McDougal, 109 Cal. App. 4th 571 | 135H+96 | Moreover, it is settled that a defendant who seeks dismissal before the jury has rendered a verdict consents to the dismissal and by that consent waives any argument that jeopardy has attached so as to bar an appeal. (People v. Mills (1978) 87 Cal.App.3d 302, 151 Cal.Rptr. 71.) As it was McDougal who sought dismissal, he has waived the argument that jeopardy attached as a result of the second proceedings. | A defendant who seeks dismissal before the jury has rendered a verdict consents to the dismissal and by that consent waives any argument that jeopardy has attached so as to bar an appeal. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | Does a defendant who seeks dismissal before the jury has rendered verdict consents to the dismissal and by that consent waives any argument that jeopardy has attached so as to bar an appeal? | Double Jeopardy - Memo 267 - C - MS_66581.docx | ROSS-003279052-ROSS-003279053 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5607 | State v. Chase, 2000 ME 114 | 135H+97 | Criminal defendants are protected against being " "twice put in jeopardy of life or limb" for the same offense under both the Maine and federal constitutions." State v. Cotton, 673 A.2d 1317, 1319 (Me.1996) (quoting Tribou, 598 A.2d at 175). A motion by the defendant for mistrial, however, "is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." State v. Flick, 495 A.2d 339, 344 (Me.1985) (quoting United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). As to the conduct of the prosecutor, we have stated that, "[b]arring intentional prosecutorial misconduct, a defendant's motion for ... a declaration of mistrial eliminates any constitutional barrier, created by the double jeopardy clause of either the United States or Maine Constitutions, to retrial." | Motion by defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if defendant's motion is necessitated by prosecutorial or judicial error. | "Is a motion by defendant for mistrial ordinarily assumed to remove any barrier to reprosecution, even if a defendant's motion is necessitated by prosecutorial or judicial error?" | 015269.docx | LEGALEASE-00163707-LEGALEASE-00163708 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5608 | People v. Brandon, 40 Cal. App. 4th 1172 | 135H+96 | Legal necessity has also been found where it becomes necessary to replace defense counsel during trial due to the disappearance of counsel at a critical stage of trial (People v. Manson (1976) 61 Cal.App.3d 102, 201, 203, 132 Cal.Rptr. 265) or the belated discovery by counsel of a conflict of interest. (People v. McNally (1980) 107 Cal.App.3d 387, 391, 165 Cal.Rptr. 715.) Consent to mistrial may be implied from affirmative conduct, such as moving for mistrial or stating that there is no objection to mistrial, but will not be inferred from silence or simply bringing a matter of concern to the trial court's attention. (People v. Chaney (1988) 202 Cal.App.3d 1109, 1115"1116, 249 Cal.Rptr. 251; People v. Compton (1971) 6 Cal.3d 55, 62, 98 Cal.Rptr. 217, 490 P.2d 537.) | Consent to mistrial may be implied from affirmative conduct, such as moving for mistrial or stating that there is no objection to mistrial, but will not be inferred from silence or simply bringing matter of concern to trial court's attention. | "Can consent to mistrial be implied from affirmative conduct, such as moving for mistrial or stating that there is no objection to mistrial?" | Double Jeopardy - Memo 300 - C - PC_66531.docx | ROSS-003282056-ROSS-003282057 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 5609 | State v. Dow, 152 A.3d 437 | 135H+95.1 | The constitutional protection against putting a defendant in jeopardy for the same offense twice attaches before a judgment becomes final because of a "defendant's valued right to have his [or her] trial completed by a particular tribunal." Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (quotation omitted); see In re Dunkerley, 135 Vt. 260, 263, 376 A.2d 43, 46 (1977) (stating that jeopardy attaches with empaneling and swearing-in of jury). Retrial is not, however automatically barred "when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." Arizona, 434 U.S. at 505, 98 S.Ct. 824. Defendant's right to have "the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his [or her] evidence to an impartial jury." Id. To justify a mistrial and avoid double jeopardy, the State "must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant." Id. | Following a mistrial, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused; defendant's right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his or her evidence to an impartial jury. | "Following a mistrial, is a retrial not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused?" | 015399.docx | LEGALEASE-00163301-LEGALEASE-00163302 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5610 | State v. Fassero, 256 S.W.3d 109 | 135H+95.1 | Although double jeopardy protection generally gives a defendant a right to have his trial completed by the jury selected, not all declarations of mistrial bar retrial. When a defendant requests or consents to a mistrial, for example, double jeopardy does not prohibit reprosecution. If the defendant opposes the mistrial, double jeopardy will bar retrial unless there is a "manifest necessity" for the trial court's declaration of mistrial. In this case, the court in Fassero's first trial declared a mistrial sua sponte. Since Fassero neither sought nor agreed to a mistrial, the first court's mistrial must be justified by "manifest necessity | If the defendant opposes the mistrial, double jeopardy will bar retrial unless there is a manifest necessity for the trial court's declaration of mistrial. U.S.C.A. Const.Amend. 5. | "If the defendant opposes the mistrial, will double jeopardy bar retrial unless there is a manifest necessity for the trial court's declaration of a mistrial?" | 015434.docx | LEGALEASE-00163731-LEGALEASE-00163732 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5611 | Ullmo ex rel. Ullmo v. Gilmour Acad., 273 F.3d 671 | 141E+863 | Under the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the state educational agency (SEA).20 U.S.C. " 1412(a)(11) (recognizing the SEA as the primary authority for establishing a state's compliance with the IDEA). The SEA distributes a substantial portion of the state's IDEA funds to local educational agencies (LEAs), which directly provide disabled students with a free appropriate public education. 20 U.S.C. " 1411(g)(1) (establishing the LEAs' right to at least 75% of the IDEA funds paid to the state) | Under IDEA, responsibility for ensuring that disabled students receive a free appropriate public education lies with the state educational agency (SEA), which distributes a substantial portion of the state's IDEA funds to local educational agencies (LEAs), and LEAs in turn directly provide disabled students with a free appropriate public education. Individuals with Disabilities Education Act, S 611(g)(1), 1412(a)(11), as amended, 20 U.S.C.A. SS 1411(g)(1), 1412(a)(11). | "Under IDEA, does the state educational agency has the responsibility for ensuring that disabled students receive a free appropriate public education?" | 017153.docx | LEGALEASE-00164132-LEGALEASE-00164133 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 5612 | Ex parte Baker, 459 So. 2d 873 | 307A+699 | Without question, a movant must both allege and prove one of the grounds set forth in Rule 60 in order to be granted relief under that rule. Raine v. First Western Bank, 362 So.2d 846 (Ala.1978). Moreover, because Rule 60(b) relief is extraordinary relief, a movant has the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under Rule 60(b)(6). Howell v. D.H. Holmes, Ltd., 420 So.2d 26 (Ala.1982). And, while the decision of whether to grant or deny the motion is within the sound discretion of the trial judge, that discretion is not unbridled. Douglass v. Capital City Church of the Nazarene, 443 So.2d 917 (Ala.1983); Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1979). | Because reinstatement of cause of action under rule of civil procedure pertaining to relief from final judgment after dismissal with prejudice is extraordinary relief, a movant has the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under rule. Rules Civ.Proc., Rule 60(b), (b)(6). | Does a movant have the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under rule? | Pretrial Procedure - Memo 11869 - C - PB_66562.docx | ROSS-003295112-ROSS-003295113 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 5613 | Koehler v. State, 519 P.2d 442 | 135H+99 | We are of the further view that the principle of double jeopardy bars retrial of petitioner on both counts of the indictment in the case at bar. Under the Alaska and United States Constitutions, jeopardy attaches when a defendant is placed on trial before a court of competent jurisdiction and a jury sworn. If the court discharges the jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or "manifest necessity" required it. | Under the State and Federal Constitutions jeopardy attaches when a defendant is placed on trial before a court of competent jurisdiction and a jury sworn; if the court discharges the jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or manifest necessity required. Const. art. 1, S 9; U.S.C.A.Const. Amend. 5. | "If a court discharges a sworn jury before a verdict is reached, can a defendant be retried unless he consented to discharge or manifest necessity required it?" | Pretrial Procedure - Memo 11922 - C - AC_67020.docx | ROSS-003279507-ROSS-003279508 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 5614 | City of Jefferson v. Capital City Oil Co., 286 S.W.2d 65 | 30+3206 | The general rule is that courts have the inherent power, in the exercise of a sound judicial discretion, to dismiss a case for failure to prosecute with due diligence, and that the action thereon will not be disturbed on appeal unless such discretion was abused. Levee District No. 4 of Dunklin County v. Small, Mo.App., 281 S.W.2d 614; Guhman v. Grothe, 346 Mo. 427, 142 S.W.2d 1; Shotkin v. Westinghouse Electric & Mfg. Co., 10 Cir., 169 F.2d 825. There is also statutory authority in this state for such a dismissal. See Section 510.140 RSMo 1949, V.A.M.S. | Courts have inherent power, in the exercise of a sound judicial discretion, to dismiss a case for failure to prosecute with due diligence, and such action will not be disturbed on appeal unless such discretion was abused. | "Do courts have the inherent authority, in exercise of sound discretion, to dismiss for failure to prosecute?" | 040971.docx | LEGALEASE-00163297-LEGALEASE-00163298 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5615 | Prograph Int'l Inc. v. Barhydt, 928 F. Supp. 983 | 25T+179 | The remaining petitioner is Pictorius. Barhydt alleges that Pictorius is the "de facto successor in interest" to PII, and PII's alter ego. (Kim Decl., Ex. B, Am.Compl. 2, 27(g).) Barhydt seeks to hold Pictorius jointly liable for breach of the employment contract. (Id. at 12, 5.) Nonsignatory successors and alleged alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed. Pritzer, 7 F.3d at 1122. The Court finds that the arbitration will include Pictorius. | Nonsignatory successors and alleged alter egos are entitled to compel arbitration under clauses signed by corporations whose liabilities they are alleged to have assumed. | Are nonsignatory successors entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed? | 008062.docx | LEGALEASE-00165008-LEGALEASE-00165009 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 5616 | MicroStrategy v. Lauricia, 268 F.3d 244 | 25T+182(2) | A party may waive its right to insist on arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Maxum, 779 F.2d at 981. But even in cases where the party seeking arbitration has invoked the "litigation machinery" to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir.1987) (emphasis added). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." Id. (citation omitted). | Party may waive its right to insist on arbitration if that party so substantially utilizes litigation machinery that to subsequently permit arbitration would prejudice party opposing the stay. | Will a party waive its right to arbitration if it substantially utilizes litigation machinery that prejudices the party opposing a stay? | 008095.docx | LEGALEASE-00165075-LEGALEASE-00165076 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5617 | In re Soybean Futures Litig., 892 F. Supp. 1025 | 83H+17 | In addition, the courts and the CFTC generally have adopted a practical, four-part test for manipulation, in which the accuser must show that: (1) the defendant possessed the ability to influence prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price. Frey, 931 F.2d at 1177"78; In re Cox, [1986"87 Transfer Binder] Comm.Fut.L.Rep. (CCH) " 23,786 at 34,063 (CFTC July 15, 1987). See also Great Western, 201 F.2d at 480. This framework is occasionally modified to fit the specific facts of a particular case, and there is some question to what extent these elements should be treated as separate and independent or whether they are factually and legally interdependent.20 Nevertheless, this framework is the one adopted by the parties and, given its widespread application, it will be adopted by this court as well. | Practical four-part test for manipulation, as adopted by Commodity Futures Trading Commission, under which accuser must show that defendant possessed ability to influence prices, an artificial price existed, defendant caused the artificial price, and the defendant specifically intended to cause the artificial price, would be adopted for futures market manipulation case, where parties to the instant litigation adopted this framework. Commodity Exchange Act, S 22(a)(1)(D), as amended, 7 U.S.C.A. S 25(a)(1)(D). | What are the four necessary elements that the courts and the Commodities Futures Trading Commission (CFTC) have adopted that an accuser must prove to prevail on a manipulation claim? | 013637.docx | LEGALEASE-00164291-LEGALEASE-00164293 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 5618 | Caballero v. Martinez, 186 N.J. 548 | 135+2 | Under New Jersey law, the term resident, although present in many statutes, is not fixed in meaning. Instead, courts define the term by looking to the purpose of the statute and the context in which the term is found. Continos v. Parsekian, 68 N.J.Super. 54, 58"59, 171 A.2d 663 (App.Div.1961); Collins, supra, 55 N.J.Super. at 518, 151 A.2d 68. Other jurisdictions interpret the term resident in a similar manner. | Under New Jersey law, the term "resident," although present in many statutes, is not fixed in meaning, and instead, courts define the term by looking to the purpose of the statute and the context in which the term is found. | "Is the term ""resident,"" although present in many statutes, not fixed in meaning?" | Domicile - Memo 55 - C - KAD_67134.docx | ROSS-003293508-ROSS-003293509 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 5619 | Berryhill v. Entergy New Orleans Inc., 925 So. 2d 12 | 135+2 | he phrase "resident of the same household," as used in insurance policies, has no precise meaning. Palermo v. Audubon Ins.Co., 96-887 (La.App. 3 Cir. 2/5/97), 689 So.2d 589, 593. Whether someone is a resident "is to be determined from the facts and circumstances taken together in each particular case." Bearden v. Rucker, 437 So.2d 1116, 1120 (La.1983), quoting Mathis v. Employers' Fire Insurance Company, 399 So.2d 273, 275 (Ala.1981). Residency is a matter of intention and choice, and not necessarily physical location. Bearden, 437 So.2d at 1122. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. | The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. | "Is the intention of a person to be a resident of a particular place determined by his expressions at times not suspicious, and his testimony?" | 014581.docx | LEGALEASE-00164224-LEGALEASE-00164225 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5620 | Dietz v. City of Medora, 333 N.W.2d 702 | 135+2 | A legal residence is the place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure. Nelson v. Gass, 27 N.D. 357, 146 N.W. 537, 543 (1914). See " 54"01"26(1), N.D.C.C.; Wehrung, supra 78 N.W.2d at 70. There is a legal presumption against a change of legal residence, or domicile, " 31"11"03(40), N.D.C.C.; and the burden of proving the change of legal residence is on the person alleging the change, in this case, Dietz. Mittelstadt v. Bender, 210 N.W.2d 89, 93 (N.D.1973); Northwestern Mortgage & S. Co. v. Noel Const. Co., 71 N.D. 256, 300 N.W. 28, 32 (1941); Moodie, supra 258 N.W. at 564. | A legal residence is place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure. NDCC 54-01-26, subd. 1. | "Is a legal residence a place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure?" | Domicile - Memo 67 - C - SJ_67146.docx | ROSS-003293549-ROSS-003293550 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5621 | In re Marriage of Weiss, 87 Ill. App. 3d 643 | 135+2 | Residence denotes one's permanent abode, (Rosenshine ), while domicile has been defined as the place where a person lives and has his true permanent home, to which he intends to return whenever he is absent. (Owego Community Consol. School Dist. No. 434 v. Goodrich (1960), 28 Ill.App.2d 407, 171 N.E.2d 816.) A person can have only one domicile, and once he establishes a domicile or permanent residence he retains it until a new one is established. (Owego Community Consol. School Dist. No. 434 v. Goodrich.) Even if, based on petitioner's testimony, it could be found that petitioner was, in fact, a domiciliary of Illinois in May, 1977, such testimony would not be conclusive of her domiciliary status when count IV was considered in 1979. | "Residence" denotes one's permanent abode, while "domicile" is a place where a person lives and has his true permanent home and to which he intends to return whenever he is absent. | "Is ""domicile a place where a person lives and has his true permanent home and to which he intends to return whenever he is absent?" | 014598.docx | LEGALEASE-00164258-LEGALEASE-00164259 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5622 | Ziebell v. State, 788 N.E.2d 902 | 135H+30 | The State argues that "Indiana courts have long recognized that sentence enhancements based on prior criminal convictions do not constitute multiple punishment in violation of the double jeopardy clause." Appellee Brief at 10. We agree. Our supreme court considered this issue in Wise v. State, 272 Ind. 498, 400 N.E.2d 114 (Ind.1980). In Wise, our supreme court held that, under the habitual offender statute, "the individual is subjected to the greater sentence neither for the prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime committed." 272 Ind. at 501, 400 N.E.2d at 117. | Sentence enhancements based on prior criminal convictions do not constitute multiple punishment in violation of double jeopardy clause; under the habitual offender statute, defendant is subjected to greater sentence neither for prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime committed. U.S.C.A. Const.Amend. 5; West's A.I.C. 35-50-2-8. | Do sentence enhancements based on prior criminal convictions constitute multiple punishment in violation of double jeopardy clause? | 014970.docx | LEGALEASE-00164825-LEGALEASE-00164826 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5623 | State v. Picot, 724 So. 2d 236 | 135H+30 | In State v. Johnson, 432 So.2d 815 (La.1983), the Court held that the defendant could be tried again on the multiple bill, even though the State failed to prove his identity as the perpetrator of the prior crimes. In Johnson, the Court noted: "Defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction." Id. at 817. The Habitual Offender Law creates no independent offense, but rather prescribes the conditions under which there is an enhanced penalty for the current offense and does not violate constitutional prohibitions against double jeopardy. State v. Boatner, 304 So.2d 661 (La.1974). | Habitual Offender Law creates no independent offense, but rather prescribes conditions under which there is enhanced penalty for current offense, and does not violate constitutional prohibitions against double jeopardy. U.S.C.A. Const.Amend. 5. | Does Habitual Offender Law prescribe conditions under which there is enhanced penalty for current offense? | Double Jeopardy - Memo 1227 - C - SS_67364.docx | ROSS-003278937-ROSS-003278938 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 5624 | State v. Long, 405 Md. 527 | 135H+1 | The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. In Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), the Supreme Court held that the Fifth Amendment prohibition against making a defendant twice accountable for the same offense is a provision applicable to the States. Double Jeopardy, under both the Fifth Amendment and at common law, bars multiple punishments and trials for the same offense. United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232, 241 (1975); see also Cousins v. State, 277 Md. 383, 388, 354 A.2d 825, 828 (1976). Despite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy. Taylor v. State, 381 Md. 602, 610, 851 A.2d 551, 555 (2004). | Despite the fact that the Maryland Constitution lacks an explicit Double Jeopardy Clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy. | Does state common law provide well-established protections for individuals against being twice put in jeopardy? | 016380.docx | LEGALEASE-00165171-LEGALEASE-00165172 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5625 | Does 1, 2, 3, 4, 5, 6, & 7 v. State, 164 Or. App. 543 | 302+72 | However, the fact that plaintiffs have requested relief to which they are not entitled does not defeat their claim. A prayer for relief is not a part of the complaint. Finch v. Miller, Credithrift, 271 Or. 271, 275, 531 P.2d 892 (1975). Moreover, "a prayer for the wrong relief following a pleading that sets forth facts entitling the pleader to some relief does not operate to deny the proper relief[.]" Wright v. Morton, 125 Or. 563, 569, 267 P. 818 (1928). Although plaintiffs sought improperly to enjoin enforcement of Measure 58 in its entirety, they also sought "other and further relief as the Court deems just and equitable." We, therefore, address plaintiffs' as-applied constitutional claims, because other relief, such as more limited injunctive relief, might be appropriate should plaintiffs prevail. | A prayer for the wrong relief following a pleading that sets forth facts entitling the pleader to some relief does not operate to deny the proper relief. | "Will a prayer for the wrong relief, following a pleading that sets forth facts entitling the pleader to some relief, operate to deny the proper relief?" | Pleading - Memo 655 - RMM_67388.docx | ROSS-003279802-ROSS-003279803 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5626 | Johnson v. Elayyan, 2002 WL 959518 | 307A+583 | The trial court's authority to dismiss a case for want of prosecution arises from two sources: (1) Texas Rule of Civil Procedure 165a, and (2) the court's inherent power. Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). Rule 165a(1) expressly authorizes dismissal of a case for failure of a party seeking affirmative relief to appear for any hearing or trial of which the party had notice, and Rule 165a(2) expressly authorizes dismissal when a case is not disposed of within the time standards promulgated by the Texas Supreme Court. Independent of its express authority under Rule 165a, the trial court has inherent power under the common law to dismiss a case when the plaintiff fails to prosecute the case with due diligence. Villarreal, 994 S.W.2d at 630. The conclusion that disobeyance of its order was willful or consciously indifferent is sufficient basis for the trial court to impose the ultimate sanction of dismissing the case or striking pleadings and rendering judgment by default. Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex.1990). | Trial court has inherent power under the common law to dismiss a case when the plaintiff fails to prosecute the case with due diligence. | Does a trial court have inherent power under the common law to dismiss a case when the plaintiff fails to prosecute the case with due diligence? | Pretrial Procedure - Memo 12224 - C - DHA_67597.docx | ROSS-003292331-ROSS-003292332 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 5627 | In re Nationwise Auto., 250 B.R. 900 | 343+517(1) | Where the term of the agreement consumes the majority of the useful life of the goods in question, that agreement resembles a purchase contract or financing arrangement rather than a lease. In re Beker Indus. Corp., 69 B.R. 937, 943 (Bankr.S.D.N.Y.1987). According to the testimony of Stephen Florkoski, a thirty-year employee of IBM Credit who currently works for a sub-group responsible for remarketing end-of-lease assets and other returned assets of IBM Credit, the life span of computer equipment in the early '90s was a great deal longer than it is today. He testified that IBM Credit was committed to retaining trained service personnel, manufacturing or being able to obtain spare parts and whatever else was necessary to keep the equipment serviceable for a period of 18"24 months. He further testified that the equipment returned by the Debtor to IBM Credit was in use today, although he did not have knowledge of the location of the equipment in question or the capacity in which such equipment would typically be used now, at least six years after its manufacture. Mr. Florkoski concluded that the useful or economic life of the equipment would not have been consumed by the thirty-six-month term of the TLMA and TLS. | When term of agreement consumes majority of useful life of goods in question, agreement resembles purchase contract, or financing arrangement, rather than lease. | "When a term of agreement consumes a majority of useful life of goods in question, does an agreement resemble a purchase contract?" | Secured Transactions - Memo 66 - C - DHA_67319.docx | ROSS-003293701-ROSS-003293702 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5628 | United States v. Dutcher, 851 F.3d 757 | 3.77E+18 | Section 871(a) criminalizes "knowingly and willfully" making "any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States." The charged statement must be a "true threat," which has been defined for First Amendment purposes as "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). In United States v. Fuller, 387 F.3d 643, 646 (7th Cir. 2004), we held that a "true threat" for purposes of section 871(a) is defined objectively. A communication, we wrote, "is a "true threat" if a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President." Id. (internal quotation marks omitted). Addressing a different statute, 18 U.S.C. " 875(c), which criminalized the transmission of any threat to kidnap or injure another, the Supreme Court held that the speaker must know that his communication contains a threat. Elonis v. United States, """ U.S. """", 135 S.Ct. 2001, 2009"11, 192 L.Ed.2d 1 (2015). | Communication is "true threat," of kind required to support prosecution for knowingly and willfully making any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, if reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon, or to take life of, the President. 18 U.S.C.A. S 871(a). | "What is a ""true threat"" for the purposes of a prosecution for knowingly and willfully making any threat?" | 047047.docx | LEGALEASE-00164589-LEGALEASE-00164590 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5629 | Lamb v. State Work Relief Comp. Fund, 127 Pa. Super. 44 | 413+186 | We readily recognize that ordinarily the test of determining by whom one is employed does not depend solely upon the payment of wages, but it may aid in determining that fact. Sgattone v. Mulholland & Gotwals, Inc. et al., 290 Pa. 341, 346, 138 A. 855, 58 A.L.R. 1463. Who the responsible employer in case of injury depends largely on the control or right of control of the employee, not only with regard to the work to be done, but also as to the method and manner of performing it. Venezia v. Philadelphia Electric Co., 317 Pa. 557, 177 A. 25. It must not be overlooked, however, that we are here considering the rights and status of a work relief employee and the laws especially applicable thereto. | Who is the responsible employer in case of injury to employee depends largely on control or right of control of the employee, not only with regard to work to be done, but also as to method and manner of performing it. | "Does being an employer with the right of control mean not only regarding to the work being done, but also the method and manner of performing it?" | 048812.docx | LEGALEASE-00164715-LEGALEASE-00164716 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5630 | Kendall v. State, 429 Md. 476 | 135H+59 | The federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." United States Constitution, Fifth Amendment.11 That protection is also a fundamental part of Maryland common law. See State v. Taylor, 371 Md. 617, 629"30, 810 A.2d 964 (2002). In a nonjury trial, jeopardy ordinarily attaches when the first witness is sworn, Crist v. Bretz, 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), although in some circumstances it may attach without the appearance of a witness if the defendant is "subjected to the risk of conviction." Daff v. State, 317 Md. 678, 688"89, 566 A.2d 120 (1989) (acquittal following failure of prosecution witnesses to appear for trial). For each offense for which the defendant is thereafter acquitted, both the federal Constitution and State common law prohibit a second prosecution. See Benton v. Maryland, 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (federal Constitution); Gianiny v. State, 320 Md. 337, 342, 577 A.2d 795 (1990) (Maryland common law). | In a nonjury trial, jeopardy ordinarily attaches when the first witness is sworn, although in some circumstances it may attach without the appearance of a witness if the defendant is subjected to the risk of conviction. U.S.C.A. Const.Amend. 5. | "Can the jeopardy attach without the appearance of a witness, if the defendant is subjected to the risk of conviction?" | 014638.docx | LEGALEASE-00165321-LEGALEASE-00165322 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 5631 | State v. Baranski, 173 Ohio App. 3d 410 | 135H+57 | Baranski's motion to dismiss was based upon double-jeopardy grounds, which protect an accused against a second prosecution for the "same offense" after an "acquittal" and after a "conviction," as well as providing protection against multiple punishments for the same offense. State v. Moss (1982), 69 Ohio St.2d 515, 518, 23 O.O.3d 447, 433 N.E.2d 181, citing North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656. However, the protections under the state and federal double jeopardy clauses are implicated only when the accused has actually been placed in jeopardy. Serfass v. United States (1975), 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265. Contrary to Baranski's assertion, jeopardy did not attach upon the filing of an indictment for theft in the first case. Jeopardy attaches in a bench trial when the court first hears evidence and in a jury trial when the jury is empaneled and sworn. State v. Meade (1997), 80 Ohio St.3d 419, 424, 687 N.E.2d 278, citing United States v. Martin Linen Supply Co. (1977), 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642. Jeopardy would also attach upon a plea of guilty or no contest and a subsequent finding of guilt by the trial court. However, none of those events occurred in the theft proceedings. | Jeopardy attaches in a bench trial when the court first hears evidence and in a jury trial when the jury is empaneled and sworn; jeopardy would also attach upon a plea of guilty or no contest and a subsequent finding of guilt by the trial court. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 10. | Will jeopardy attach when the court first hears evidence? | Double Jeopardy - Memo 1032 - C - KG_67854.docx | ROSS-003282403-ROSS-003282404 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5632 | People v. Lett, 466 Mich. 206 | 135H+59 | From this fundamental idea, the United States Supreme Court has over the years developed a body of double jeopardy jurisprudence that recognizes, among other related rights,9 an accused's "valued right to have his trial completed by a particular tribunal...." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); see also Washington, supra, 434 U.S. at 503, 98 S.Ct. 824; Illinois v. Somerville, 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Jeopardy is said to "attach" when a jury is selected and sworn, see Somerville, supra, 410 U.S. at 467, 93 S.Ct. 1066; Hicks, supra, 447 Mich. at 827, n. 13, 528 N.W.2d 136 (Griffin, J.), and the Double Jeopardy Clause therefore protects an accused's interest in avoiding multiple prosecutions even where no determination of guilt or innocence has been made. See Scott, supra, 437 U.S. at 87"92, 98 S.Ct. 2187; Crist, supra, 437 U.S. at 33"34, 98 S.Ct. 2156. It is this interest that is implicated when the trial judge declares a mistrial, thereby putting an end to the proceedings before a verdict is reached. Scott, supra, 437 U.S. at 92, 98 S.Ct. 2187; Crist, supra, 437 U.S. at 33"34, 98 S.Ct. 2156. However, the general rule permitting the prosecution only one opportunity to obtain a conviction " "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." " Washington, supra, 434 U.S. at 505, n. 11, 98 S.Ct. 824, quoting Wade, supra, 336 U.S. at 689, 69 S.Ct. 834. | Jeopardy is said to attach when a jury is selected and sworn, and the Double Jeopardy Clause therefore protects an accused's interest in avoiding multiple prosecutions even where no determination of guilt or innocence has been made. U.S.C.A. Const.Amend. 5. | How does the double jeopardy clause protect an accused's interest? | 014778.docx | LEGALEASE-00166042-LEGALEASE-00166043 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5633 | People v. Barragan, 32 Cal. 4th 236 | 135H+30 | In resolving this conflict, we begin with a related principle that the United States Supreme Court has recently established:In the noncapital sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution. (Monge v. California 1998 524 U.S. 721, 734, 118 S.Ct. 2246, 141 L.Ed.2d 615 (Monge II).In reaching this conclusion, the high court acknowledged that a finding on appeal that the evidence at trial was insufficient to sustain a "conviction" on a substantive offense "is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. (Citation.)" (Id. at p. 729, 118 S.Ct. 2246.) However, the court explained, "where a similar failure of proof occurs in a sentencing proceeding, the analogy is inapt." (Ibid.) "The determinations at issue in noncapital sentencing proceedings do not place a defendant in jeopardy for an offense, (citation.)" (Id. at p. 728, 118 S.Ct. 2246.) "An enhanced sentence imposed on a persistent offender" does not constitute "either a new jeopardy or additional penalty for the earlier crimes but is simply a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. (Citations.)" (Ibid.) "The pronouncement of sentence simply does not have the qualities of constitutional finality that attend an acquittal. (Citations.)" (Id. at p. 729, 118 S.Ct. 2246.) Thus, a "sentencing decision favorable to the defendant cannot generally be analogized to an acquittal." (Ibid.) This rule applies even in states that, as "a matter of legislative grace," have enacted "procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements." (Id. at p. 734, 118 S.Ct. 2246.) | In the noncapital sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution. U.S.C.A. Const.Amend. 5. | Does retrial of a prior conviction allegation violate the double jeopardy clause of the federal Constitution in the noncapital sentencing context? | 014952.docx | LEGALEASE-00165453-LEGALEASE-00165454 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 5634 | Righetti v. Eighth Judicial Dist. Court of State in & for Cty. of Clark, 388 P.3d 643 | 135H+1 | The Double Jeopardy Clause was designed to protect defendants from harassment and oppression, id. at 501"02, 104 S.Ct. 2536; Green v. United States, 355 U.S. 184, 187"88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), not to shield defendants like Righetti from their decisions to gamble on novel interpretations of law which ultimately prove unsuccessful, see Ricketts v. Adamson, 483 U.S. 1, 11, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) ("[T]he Double Jeopardy Clause does not relieve a defendant from the consequences of his voluntary choice." (internal quotation marks and ellipses omitted)). The prosecution in this case has not overreached; it has simply charged Righetti with several of the most egregious violations of society's laws and seeks to exercise "its right to one full and fair opportunity" to present its case against him. Johnson, 467 U.S. at 502, 104 S.Ct. 2536. It is entitled to do so. | Double Jeopardy Clause was designed to protect defendants from harassment and oppression, not to shield defendants from their decisions to gamble on novel interpretations of law which ultimately prove unsuccessful. U.S. Const. Amend. 5; Nev. Const. art. 1, S 8. | Was double Jeopardy Clause designed to protect defendants from harassment and oppression? | 016094.docx | LEGALEASE-00165843-LEGALEASE-00165844 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5635 | Sanabria v. United States, 437 U.S. 54 | 135H+100.1 | In Lee we held a retrial permissible because the District Court's midtrial decision granting the defendant's motion to dismiss the indictment for failure to state an offense was "functionally indistinguishable from a declaration of mistrial" at the defendant's request. 432 U.S., at 31, 97 S.Ct. at 2146. The mistrial analogy relied on in Lee is manifestly inapposite here. Although jeopardy had attached in Lee, no verdict had been rendered; indeed, petitioner conceded that "the District Court's termination of the first trial was not an acquittal," id., at 30 n. 8, 97 S.Ct. at 2146. Here, by contrast, the trial proceeded to verdict, and petitioner was acquitted. While in Lee the trial court clearly did contemplate a reprosecution when it granted defendant's motion, id., at 30"31, 97 S.Ct. at 2143, neither petitioner's motion here nor the trial court's rulings contemplated a second trial"nor could they have, since only a single offense was involved and petitioner went to judgment on that offense. Where a trial terminates with a judgment of acquittal, as here, "double jeopardy principles governing the permissibility of retrial after a declaration of mistrial," Lee v. United States, supra, 432 U.S., at 31, 97 S.Ct. at 2146, have no bearing. | Where trial terminates with a judgment of acquittal, double jeopardy principles governing permissibility of retrial after declaration of mistrial have no bearing. U.S.C.A.Const. Amend. 5. | "Where a trial terminates with a judgment of acquittal, do double jeopardy principles governing the permissibility of retrial after declaration of mistrial has any bearing?" | Double Jeopardy - Memo 829 - C - DHA_67946.docx | ROSS-003296012-ROSS-003296013 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5636 | State v. Muhannad, 837 N.W.2d 792 | 135H+1 | Traditionally, the Double Jeopardy Clause has been viewed as safeguarding three interests of defendants: (1) the interest in being free from successive prosecutions, (2) the interest in the finality of judgments, and (3) the interest in having the trial completed in front of the first tribunal. This appeal involves the defendant's interest in having the trial completed in front of the first tribunal. | Traditionally, the Double Jeopardy Clause safeguards three interests of defendants: (1) the interest in being free from successive prosecutions, (2) the interest in the finality of judgments, and (3) the interest in having the trial completed in front of the first tribunal. U.S. Const. Amend. 5 | Does the double jeopardy clause safeguard the interest in being free form successive prosecutions? | Double Jeopardy - Memo 875 - C - TJ_67664.docx | ROSS-003308450 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5637 | Sweets v. State, 2013 WY 98 | 135H+1 | The double jeopardy clauses of the United States and Wyoming constitutions afford three distinct protections: "1) [P]rotection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense." James, 12, 271 P.3d at 1018 (quoting Meyers v. State, 2005 WY 163, 9, 124 P.3d 710, 714 (Wyo.2005)). We are concerned in this case with the third protection, that being the protection against multiple punishments for the same offense. | The Double Jeopardy Clauses of the United States and Wyoming constitutions afford three distinct protections: 1) protection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's Wyo.Stat.Ann. Const. Art. 1, S 11. | What are the three distinct protections double jeopardy clauses afford? | 016445.docx | LEGALEASE-00165241-LEGALEASE-00165242 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 5638 | Odem v. State, 175 Md. App. 684 | 135H+2 | Maryland recognizes the prohibition against twice placing a criminal defendant in jeopardy as both a common law principle and by virtue of the Fifth and Fourteenth Amendments to the United States Constitution. See Blondes v. State, 273 Md. 435, 443, 330 A.2d 169 (1975) (recognizing the result of the Supreme Court decision in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding that the Fifth Amendment prohibition against double jeopardy was applicable to the States through the Fourteenth Amendment Due Process Clause)). | Maryland recognizes the prohibition against twice placing a criminal defendant in jeopardy as both a common law principle and by virtue of the Fifth and Fourteenth Amendments to the United States Constitution. U.S.C.A. Const.Amends. 5, 14. | Does Maryland recognize the prohibition against twice placing a criminal defendant in jeopardy? | 016565.docx | LEGALEASE-00165383-LEGALEASE-00165384 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 5639 | State in Interest of M.B., 217 So. 3d 555 | 135H+5.1 | La. Ch.C. art. 808 provides that all the rights guaranteed to criminal defendants under the state and federal constitutions, except the right to jury trial, shall be applicable in juvenile court proceedings. See State ex rel. D.J., 2001-2149, p. 3 (La. 05/14/02), 817 So.2d 26, 28. The Fifth Amendment to the United States Constitution, as well as Article 1, " 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. State v. Bridgewater, 98-658, p. 8 (La.App. 5 Cir. 12/16/98), 726 So.2d 987, 991. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also from multiple punishments for the same criminal act. | Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also from multiple punishments for the same criminal act. U.S. Const. Amend. 5; La. Const. art. 1, S 15. | "Does ""Double jeopardy"" protect an accused not only from a second prosecution for the same offense but also multiple punishments for the same criminal act?" | 016586.docx | LEGALEASE-00165403-LEGALEASE-00165404 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5640 | In re USA Commercial Mortg. Co., 802 F. Supp. 2d 1147 | 349A+10 | Under New York law (which expressly governs the MRA), the objective intention of the parties, as reflected in their contract language, dictates whether a repurchase agreement is a purchase-and-sale transaction or a collateralized loan. See Granite Partners, L.P., 17 F.Supp.2d at 300. "The mere presence of secured loan characteristics in repo and reverse repo agreements is not enough to negate the parties' voluntary decision to structure the transactions as purchases and sales." See id. at 302 (citation omitted). Moreover, when the repurchase agreement expressly states that the parties' intent is to consummate a purchase and sale transaction, but nevertheless grants a contingent security interest in the event that the parties' agreement is later construed to be a collateralized loan, such a contingent security interest does not transform the sale into a loan. See Am. Home Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage Holdings, Inc.), 388 B.R. 69, 90 (Bankr.D.Del.2008) ("[T]he Court finds that the MRA is a purchase and sale agreement and not a loan. Therefore, this "contingent" security interests [sic] does not arise in this case, and Article 9 does not apply. Furthermore, the MRA cannot be simultaneously a purchase and sale agreement and an agreement which creates a security interest. Therefore, the simple existence of a "contingent" security interest, whether or not the contingency ever occurs, also does not give rise to Article 9 applicability."). | The mere presence of secured loan characteristics in repo and reverse repo agreements is not enough, under New York law, to negate the parties' voluntary decision to structure the transactions as purchases and sales. | When is the mere presence of secured loan characteristics in repo and reverse repo agreements not enough? | Secured Transactions - Memo 23 - C - KG_67966.docx | ROSS-003278764-ROSS-003278765 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5641 | State v. Linton, 122 Wash. App. 73 | 135H+1 | State v. Schoel, 54 Wash.2d 388, 391, 341 P.2d 481 (1959). Thus, the double jeopardy clause of the state constitution, like its counterpart in the United States Constitution, offers several, related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds in Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." United States v. DiFrancesco, 449 U.S. 117, 128, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (quoting Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949))). "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. | Double jeopardy clause of the state constitution, like its counterpart in the United States Constitution, offers several, related protections: it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Does double jeopardy protect against a second prosecution or the same offense after conviction? | 016003.docx | LEGALEASE-00166357-LEGALEASE-00166358 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5642 | Doe 30's Mother v. Bradley, 58 A.3d 42 | 307A+687 | When making a futility determination based on a proposed amendment, the court accepts as true all of the well-plead facts presented therein. In addition, Delaware courts have considered representations from the parties, as well as potential hypothetical fact patterns, in determining whether a party will be granted leave to amend a dismissed claim. Accordingly, in order to accommodate a "just, speedy and inexpensive determination" of what already forebodes to be a complex series of claims, the Court agrees with the parties that consideration of the extraneous facts for the sole purpose of determining the futility of amendment is prudent at this point in the litigation. | When making a futility determination based on a proposed amendment to a complaint, the court accepts as true all of the well-pled facts presented therein. Superior Court Civil Rule 15. | "When making a futility determination based on a proposed amendment to a complaint, does the court accept as true all of the well-pled facts presented therein?" | Pretrial Procedure - Memo 12028 - C - TM_68452.docx | ROSS-003279732-ROSS-003279733 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5643 | State v. Cooley, 47 N.C. App. 376 | 135H+95.1 | We next address the question of the constitutionality of retrying the defendant after the trial court's action granting a mistrial in the earlier proceedings. We recognize that the Double Jeopardy Clause of the Fifth Amendment precludes retrial of a defendant in some circumstances where the proceedings are terminated prior to judgment. Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The interest of the accused which is protected in such cases is his right to retain a given tribunal. Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); In the Matter of Hunt and In the Matter of Dowd, 46 N.C.App. 732, 266 S.E.2d 385 (1980). | Double jeopardy clause of Fifth Amendment precludes retrial of defendant in some circumstances where proceedings are terminated prior to judgment and interest of accused which is protected in such cases is his right to retain a given tribunal. U.S.C.A.Const. Amend. 5. | Double the jeopardy clause of the Fifth Amendment preclude retrial of a defendant in some circumstances where proceedings are terminated prior to judgment? | Double Jeopardy - Memo 564 - C - SK_68343.docx | ROSS-003294581-ROSS-003294582 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 5644 | United States v. Cessa, 861 F.3d 121 | 135H+100.1 | The doctrine of double jeopardy bars retrial when the defendant has been acquitted, or when an appellate court reverses "on grounds of evidentiary insufficiency." Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, double jeopardy does not apply when a "conviction is set aside because of an error in the proceedings leading to conviction." Id. at 14, 98 S.Ct. 2141 (quoting United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)). | Doctrine of double jeopardy bars retrial when the defendant has been acquitted, or when an appellate court reverses on grounds of evidentiary insufficiency; however, double jeopardy does not apply when a conviction is set aside because of an error in the proceedings leading to conviction. U.S. Const. Amend. 5. | "Does the doctrine of double jeopardy bar retrial when the defendant has been acquitted, or when an appellate court reverses on grounds of evidentiary insufficiency?" | Double Jeopardy - Memo 590 - C - NE_68369.docx | ROSS-003278505-ROSS-003278506 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 5645 | Kultura v. S. Leasing Corp., 923 S.W.2d 536 | 349A+10 | The Comments further state that "if the lease is a true lease, none of the provisions of the Article Chapter is applicable to the lease as an interest in the chattel." (Emphasis added.) Thus, if the lease is a true lease, questions involving the lessor interest in the property such as priority are not governed by Article 9 of the Uniform Commercial Code. This does not mean, however, that the lessor who files "for safety" under Section 47"9"408 can take advantage of this provision and ignore other provisions of Article 9 pertaining to filing. | If lease is true lease, Article 9 of the Uniform Commercial Code (UCC), relating to secured transactions, does not govern questions involving lessor's interest in property. | "If a lease is a true lease, does the Uniform Commercial Code relating to secured transactions, govern questions involving a lessor interest in property?" | 042673.docx | LEGALEASE-00167013-LEGALEASE-00167014 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5646 | Legends Gym v. ABCO Leasing, 383 F. Supp. 2d 911 | 349A+10 | If a purported lease "provides on its face that upon compliance with its terms, the lessee becomes the owner of the property for no additional consideration, then the lease is deemed as a matter of law to be intended for a security." Superior Packing, Inc. v. Worldwide Leasing & Financing, Inc., 880 S.W.2d 67, 71(Tex.App."Houston 1994, writ denied); see also Tex. Bus. & Com. Code " 1.203(b)(4) (codifying UCC " 1.201(37)). But many purported leases that are in fact disguised purchase agreements do not blatantly deem the leased property the lessee's at the end of the lease term. | Under Texas law, if a purported lease provides on its face that upon compliance with its terms, the lessee becomes the owner of the property for no additional consideration, then the lease is deemed as a matter of law to be intended for a security. V.T.C.A., Bus. & C. S 1.203(b)(4). | When is a lease deemed as matter of law to be intended for security? | Secured Transactions - Memo 150 - C - TJ_68475.docx | ROSS-003280856-ROSS-003280857 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 5647 | Green v. Cont'l Rentals, 292 N.J. Super. 241 | 349A+41 | The language of the agreement, not the subjective intent of the parties, determines the nature of the interests created. Leasing Service Corp. v. American National Bank & Trust Co., 19 UCC Rep. 252, 261, 1976 WL 23674 (D.N.J.1976), citing Gilmore, Security Interests in Personal Property, " 11.2, at pg. 338. The inclusion of a contractual provision that upon compliance with the lease terms the customer shall become the owner of the property for no additional consideration, identifies the agreement as a security interest as a matter of law. | Inclusion of contractual provision that, upon compliance with lease terms, customer shall become owner of property for no additional consideration, identifies agreement as security interest as matter of law. | When should a customer become an owner of property for no additional consideration? | 042706.docx | LEGALEASE-00166723-LEGALEASE-00166724 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 5648 | Pepin v. City of Danbury, 171 Conn. 74 | 371+2016 | Included within the General Assembly's discretion is the power to authorize municipalities to collect taxes, for example, by granting them a charter. State ex rel. Brush v. Sixth Taxing District, 104 Conn. 192, 198-99, 132 A. 561. A municipality, as a creation of the state, has no inherent power of its own, id., 198, 132 A. 561, nor does it have any powers of taxation except those expressly granted to it by the legislature. | Included within the General Assembly's discretion to levy taxes is the power to authorize municipalities to collect taxes, for example, by granting them a charter. | "Is the power to authorize municipalities to collect taxes by granting them a charter, included within the General Assembly's discretion to levy taxes?" | 046597.docx | LEGALEASE-00166643-LEGALEASE-00166644 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 5649 | Mobil Oil Corp. v. Town of Huntington, 85 Misc. 2d 800 | 371+2016 | The power of taxation is vested exclusively in the state legislature (United States Steel Corporation v. Gerosa, 7 N.Y.2d 454, 199 N.Y.S.2d 475, 166 N.E.2d 489) and municipalities have no inherent power of taxation (County Securities v. Seacord, 278 N.Y. 34, 15 N.E.2d 179; Society of Plastics Indus. Inc. v. City of New York, 68 Misc.2d 366, 326 N.Y.S.2d 788). The power to assess and collect taxes may be delegated to localities (Roosevelt Raceway, Inc. v. County of Nassau, 18 N.Y.2d 30, 271 N.Y.S.2d 662, 218 N.E.2d 539, mot. den., 18 N.Y.2d 720, 274 N.Y.S.2d 156, 220 N.E.2d 802, app. dism., 385 U.S. 453, 87 S.Ct. 614, 17 L.Ed.2d 510) but the delegation must be made in express terms by a proper enabling act (see 16 McQuillin Municipal Corporations s 44.05; County Securities v. Seacord, supra). | Power to assess and collect taxes may be delegated to localities but delegation must be made in express terms by proper enabling act. | Should the power to assess and collect taxes delegated to localities be made in express terms by proper enabling act? | Taxation - Memo 1348 - C - SBH_68542.docx | ROSS-003284390-ROSS-003284391 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5650 | Parate v. Isibor, 868 F.2d 821 | 141E+1000 | It has long been recognized that the purpose of academic freedom is to preserve the "free marketplace of ideas" and protect the individual professor's classroom method from the arbitrary interference of university officials. See id. University administrators, however, are free to observe, review or evaluate a nontenured professor's competence. See e.g., Hetrick, 480 F.2d at 709. Moreover, because public education in America is committed to the control of local and state authorities, the courts cannot intervene to resolve educational conflicts that do not "sharply implicate basic constitutional values." Epperson, 393 U.S. at 104, 89 S.Ct. at 270. Although defendants' behavior was unprofessional, their actions on October 4, 1985, did not violate Parate's First Amendment right to academic freedom. First, Parate alleges that the defendants interfered with his classroom teaching on only one occasion. Thus, defendants' incidental conduct could not have resulted in a "pall of orthodoxy" being cast over Parate's "Statics" classroom. Second, Parate failed to allege that the defendants consistently denied him a free and open exchange with his students. Third, because Parate is a nontenured professor, he can allege no First Amendment right to teach a particular class or to be free from the supervision of university officials. See, e.g., Hetrick, 480 F.2d at 709. | Public education in America is committed to the control of local and state authorities; therefore, courts cannot intervene to resolve educational conflicts that do not sharply implicate basic constitutional values. | Can courts intervene to resolve educational conflicts that do not implicate basic constitutional values? | 017150.docx | LEGALEASE-00167326-LEGALEASE-00167327 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5651 | Mort v. United States, 86 F.3d 890 | 366+2 | The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. Id. (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " (quoting Caito v. United Cal. Bank, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)). | Equitable subrogation is broad equitable remedy, and therefore it applies whenever one person, not acting as mere volunteer or intruder, pays debt for which another is primarily liable, and which in equity and good conscience should have been discharged by latter. | Is equitable subrogation a broad equitable remedy? | 05077.docx | LEGALEASE-00083709-LEGALEASE-00083710 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 5652 | In re Forfeiture of U.S. Currency in Amount of Ninety-One Thousand Three Hundred Fifty-Seven & 12/100 Dollars ($91,357.12), 595 So. 2d 998 | 366+1 | The doctrine of equitable subrogation is designed to apply where the claimant satisfied an obligation of another and then stands in the shoes of the satisfied creditor. The doctrine is founded on established principles of equity to prevent an unjust forfeiture, on the one hand, and a windfall amounting to unjust enrichment, on the other. E.g., Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933); Mortoro v. Maloney, 580 So.2d 822 (Fla. 5th DCA 1991); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987). | "Equitable subrogation" applies where claimant satisfied obligation of another and then stands in shoes of satisfied creditor; doctrine prevents unjust forfeiture and windfall amounting to unjust enrichment. | "Is doctrine of equitable subrogation recognized as one founded on established principles of equity to prevent unjust forfeiture, and windfall amounting to unjust enrichment on the other? " | 05093.docx | LEGALEASE-00083742-LEGALEASE-00083743 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5653 | In re Shavers, 418 B.R. 589 | 366+1 | A more difficult issue arises in determining when to apply the equitable subrogation doctrine. In Mississippi, this doctrine applies, in general, "wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable...." Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). The object of equitable subrogation "is the doing of complete, essential, and perfect justice between all parties." Lyon v. Colonial United States Mortgage Co., 129 Miss. 54, 91 So. 708, 709 (1922). | In Mississippi, the doctrine of equitable subrogation applies, in general, wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable. | When is the doctrine of equitable subrogation applied? | Subrogation - Memo 314 - RM C.docx | ROSS-003284473-ROSS-003284474 | Order, SA, Sub | 0.5 | 1 | 0 | 1 | 1 | 1 |
| 5654 | Employers Ins. of Wausau v. Com., Dep't of Transp., 581 Pa. 381 | 366+8 | Thus, the doctrine of equitable subrogation itself is not founded on contract law, but rather arises from society's recognition of the contractor's statutory obligation to provide the bonds in questions, and society's concomitant belief that any monies otherwise due the contractor should, in fairness, be employed to recompense the bondsman. See Jacobs, 206 A.2d at 53. As noted above, it is a creature of equity and is independent of any contractual relations.See id. Wausau's claim in this case is an attempt to enforce its equitable lien against contract funds. To determine whether the subrogation claim nevertheless should be deemed to arise from a contract entered into with the Commonwealth for purposes of Section 4, it is instructive to review and understand the purpose of the Board of Claims. | Doctrine of equitable subrogation for a bond surety is not founded on contract law, but arises from society's recognition of the contractor's statutory obligation to provide the bonds in questions, and society's concomitant belief that any monies otherwise due the contractor should, in fairness, be employed to recompense the bondsman. | Is equitable subrogation a creature of equity and is independent of any contractual relations? | 05613.docx | LEGALEASE-00084304-LEGALEASE-00084306 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 5655 | Compton v. Ubilluz, 353 Ill. App. 3d 863 | 307A+3 | Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 205, 169 Ill.Dec. 200, 591 N.E.2d 80 (1992). It is well settled that both the motion in limine and the resulting order should be in writing to prevent confusion and misunderstanding during trial. Stennis v. Rekkas, 233 Ill.App.3d 813, 825, 175 Ill.Dec. 45, 599 N.E.2d 1059 (1992); Cunningham, 227 Ill.App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80. | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | Is an unclear order in limine worse than no order at all; and even if the court concludes that the evidence is inadmissible does it has the discretion to deny the motion in limine before trial? | 05231.docx | LEGALEASE-00084934-LEGALEASE-00084936 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5656 | Nowlin v. United States, 81 F. Supp. 3d 514 | 234+5 | The requirement of such a nexus cannot be found in the text of " 666; however, the nexus must exist to establish jurisdiction over the subject matter of the case. The Fifth Circuit recognizes that Congress established subject matter jurisdiction in " 666 cases: "Congress has cast a broad net to encompass local officials who may administer federal funds...." United States v. Westmoreland, 841 F.2d 572 (5th Cir.1988), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988). Indeed, the jurisdictional net is broad enough that, for the court to entertain a charge under " 666, "[t]he particular program involved in the theft or bribery need not be the recipient of federal funds."United States v. Little, 889 F.2d 1367, 1369 (5th Cir.1989). The Fifth Circuit, however, held that there are limits to the scope of subject matter jurisdiction under " 666, holding that, "[a]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal funds." Moeller, 987 F.2d at 1137 (5th Cir.1993) (emphasis added). Thus, to establish initially that a federal court may exercise subject matter jurisdiction over a " 666 case, the government must allege facts sufficient to show such a nexus between the criminal conduct and the agency. Id. In a case where a defendant challenges subject matter jurisdiction, the government must present proof, by a preponderance of the evidence, to support the claim of jurisdiction. Vantage Trailers *527 v. Beall Corp., 567 F.3d 745, 748 (5th Cir.2009). | For the court to entertain a charge for theft or bribery concerning programs receiving federal funds, the particular program involved in the theft or bribery need not be the recipient of federal funds. 18 U.S.C.A. S 666. | "For the court to entertain a charge for theft or bribery concerning programs receiving federal funds, does the particular program involved in the theft or bribery have to be the recipient of federal funds?" | 01684.docx | LEGALEASE-00092024-LEGALEASE-00092025 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5657 | Bd. of Trustees of Cmty. Coll. Dist. No. 502, Cty. of Du Page v. Dep't of Prof'l Regulation, 363 Ill. App. 3d 190 | 307A+561.1 | A motion to dismiss under section 2"619(a)(9) admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions and that act to defeat the plaintiff's claim. McElmeel v. Village of Hoffman Estates, 359 Ill.App.3d 824, 826"27, 296 Ill.Dec. 328, 835 N.E.2d 183 (2005). In ruling on a section 2"619 motion, a court must accept as true all well-pleaded facts (Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72, 85, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995)), and must view the pleadings and supporting evidence in the light most favorable to the plaintiff (Borowiec v. Gateway 2000, Inc., 209 Ill.2d 376, 383, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004)).The question is whether the existence of a genuine issue of material fact precludes a dismissal or, absent such an issue of fact, whether a dismissal is proper as a matter of law. Northern Trust Co. v. County of Lake, 353 Ill.App.3d 268, 276, 288 Ill.Dec. 701, 818 N.E.2d 389 (2004). We review de novo a dismissal under either section. Floyd v. Rockford Park District, 355 Ill.App.3d 695, 699, 291 Ill.Dec. 418, 823 N.E.2d 1004 (2005). | A motion for involuntary dismissal based upon certain defects or defenses admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions and that act to defeat the plaintiff's claim. S.H.A. 735 ILCS 5/2-619. | Will the legal sufficiency of the complaint be admitted when proceeding on a motion to dismiss? | 10970.docx | LEGALEASE-00094370-LEGALEASE-00094371 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 5658 | Jenner v. Illinois Dep't of Commerce & Econ. Opportunity, 2016 IL App (4th) 150522 | 307A+686.1 | Under section 2"619(a)(9) of the Code of Civil Procedure ( 735 ILCS 5/2"619(a)(9) (West 2014)), the defendant "may, within the time for pleading, file a motion for dismissal of the action" on the ground that "the claim asserted against defendant is barred by affirmative matter avoiding the legal effect of or defeating the claim." A motion for dismissal under this section admits the legal sufficiency of the complaint but raises "a defense outside the complaint," an "affirmative matter," that defeats the action. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 31, 364 Ill.Dec. 40, 976 N.E.2d 318. Lack of standing is one such affirmative matter. Estate of Zivin, 2015 IL App (1st) 150606, 13, 399 Ill.Dec. 583, 46 N.E.3d 902 | A motion for dismissal on the ground that the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim admits the legal sufficiency of the complaint but raises a defense outside the complaint, an "affirmative matter," that defeats the action. S.H.A. 735 ILCS 5/2-619(a)(9). | Will a motion for dismissal be barred by affirmative matter avoiding the legal effect of or defeating the claim admit the legal sufficiency of the complaint? | 10103.docx | LEGALEASE-00095108-LEGALEASE-00095109 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 5659 | Hutchison v. Seariver Mar., 22 So. 3d 989 | 307A+590.1 | With these principles in mind, we first evaluate whether the plaintiff's claim is abandoned based on the record. Prior to the October 16, 2008 filing of SeaRiver's motion to dismiss Mr. Hutchison's suit as abandoned, the last action in the record was the October 12, 2005 joint motion to extend the discovery and pre-trial deadlines that were previously established in this case. The trial court found, and we agree, that this motion was essentially a motion to continue (and not a motion to extend) because the motion sought an indefinite extension of the deadlines, did not request that the court set any new deadlines, and indicated that, at some point in the future, the parties would request new deadlines. A joint motion to continue without date or indefinitely is not considered a step in the prosecution of a case, since by its very nature, an indefinite continuance is not intended to hasten the matter to judgment. See Oliver v. Oliver, 95"1026 (La.App. 3rd Cir.3/27/96), 671 So.2d 1081, 1090; c.f. Reed v. Finklestein, 2001"1015, p. 6 (La.App. 4th Cir.1/16/02), 807 So.2d 1032, 1035, writ denied, 2002"0550 (La.4/26/02), 814 So.2d 560 (opposing a motion to continue and/or filing a motion to continue to a date certain may be a step in the prosecution of a case because it evidences an intent of the parties to hasten the suit to judgment). Accordingly, in this case, we find that the joint motion to indefinitely extend or continue the deadlines previously established did not constitute a step in the prosecution of this case. | A joint motion to continue without date or indefinitely is not considered a step in the prosecution of a case, since by its very nature, an indefinite continuance is not intended to hasten the matter to judgment. | Is a joint motion to continue without date or indefinitely not considered a step in the prosecution of a case? | 10487.docx | LEGALEASE-00095614-LEGALEASE-00095615 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5660 | Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 | 170B+3053 | Second, appellant argues that we should set aside the Court of Appeal's construction of the choice-of-law clause because it violates the settled federal rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration. Brief for Appellant 49"52; id., at 92"96, citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"942, 74 L.Ed.2d 765 (1983) (" 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," which requires that "questions of arbitrability ... be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration"); Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (in construing an arbitration agreement within the coverage of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"). These cases of course establish that, in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, see Perry v. Thomas, 482 U.S. 483, 493, n. 9, 107 S.Ct. 2520, 2527, n. 9, 96 L.Ed.2d 426 (1987), due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration. | In applying general state-law principles of contract interpretation to interpretation of arbitration agreement within scope of Federal Arbitration Act, due regard must be given to federal policy favoring arbitration, and ambiguities as to scope of arbitration clause itself resolved in favor of arbitration. 9 U.S.C.A. S 1 et seq. | What should the court consider while interpreting an agreement covered by Federal Arbitration Act? | 004890.docx | LEGALEASE-00117147-LEGALEASE-00117149 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5661 | In re Olson, 355 B.R. 649 | 366+1 | Equitable subrogation "is founded on principles of justice and equity, and its operation is governed by principles of equity." Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968); see also Wimberly v. Am. Cas. Co., 584 S.W.2d 200, 203 (Tenn.1979). When deciding whether to employ subrogation as a remedy, the court should balance the equities involved, and the case must be "strong and clear." Lawyers Title Ins. Corp. v. United Am. Bank, 21 F.Supp.2d 785, 792 (W.D.Tenn.1998). The negligence of a party seeking subrogation is a factor to be considered, along with any harm to be suffered by third parties if subrogation is allowed. Dixon v. Morgan, 154 Tenn. 389, 285 S.W. 558, 561"62 (1926). If "no one is injured by the mistake other than the party himself, relief may be granted, even though a high degree of care has not been exercised." Dixon, 285 S.W. at 562. | Under Tennessee law, when deciding whether to employ subrogation as a remedy, the court should balance the equities involved, and the case must be "strong and clear." | "hen deciding whether to employ subrogation as a remedy, should the court balance the equities involved, and must the case be ""strong and clear""?" | 043698.docx | LEGALEASE-00121342-LEGALEASE-00121343 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5662 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | A motion in limine provides a vehicle for requesting guidance from the trial court prior to trial regarding an evidentiary question which the court may provide, at its discretion, to aid the parties in formulating their trial strategy. Pullum v. Robinette, 174 S.W.3d 124, 136 n. 12 (Tenn.Ct.App.2004) (quoting United States v. Luce, 713 F.2d 1236, 1239 (6th Cir.1983)); see also Jones v. Stotts, 59 F.3d 143, 146 (10th Cir.1995); Hunt v. K"Mart Corp., 294 Mont. 444, 981 P.2d 275, 278 (1999); see also McCormick on Evidence " 52, at 255"58 (Kenneth S. Brouned., 6th ed. 2006) ("McCormick on Evidence "); Neil P. Cohen et al., Tennessee Law of Evidence " 1.03[4](f), at 1"20 to 1"21 (5th ed. 2005) ("Tennessee Law of Evidence "). It enables the trial court, prior to trial, to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial. Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir.1997); Forsyth County v. Martin, 279 Ga. 215, 610 S.E.2d 512, 518 (2005). It is, essentially, a substitute for an evidentiary objection at trial. Premium Cigars Int'l, Ltd. v. Farmer"Butler"Leavitt Ins. Agency, 208 Ariz. 557, 96 P.3d 555, 570 (Ct.App.2004). | A "motion in limine" enables a trial court, prior to trial, to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial. | "Does a ""motion in limine"" enable a trial court, prior to trial, to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial?" | 030988.docx | LEGALEASE-00122101-LEGALEASE-00122102 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 5663 | Kosydar v. Wolman, 353 F. Supp. 744 | 1.41E+30 | As we indicated in Wolman, the Court is willing to concede in the case at bar and in all cases arising in this area, that the legislature is responding to what it sees as a valid social purpose. The state has an important and recognized interest in maintaining minimum educational, safety and health standards in all schools operated within the state. We will assume that the present act, like the one invalidated in Wolman, was enacted for these worthwhile purposes. Id., at 411. Where legislative findings affixed to the act now before us, we would afford them appropriate deference. Lemon, 403 U.S. 602, 91 S.Ct. at 613; Wolman, 342 F.Supp. at 411. | State has an important and recognized interest in maintaining minimum educational, safety and health standards in all schools operated within the state. | "Does a state have an important and recognized interest in maintaining minimum educational, safety and health standards in all schools operated within the state?" | Education - Memo # 39 - C - SU.docx | ROSS-003317092-ROSS-003317093 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5664 | King v. Indus. Comm'n of Utah, 850 P.2d 1281 | 413+511 | We therefore hold the absence of a statutory provision limiting workers' compensation benefits upon a claimant's incarceration mandates a conclusion that temporary total benefits should be awarded to King. Moreover, the Utah Workers' Compensation Act is based on contract principles and an employee's right to benefits arises when he suffers a work-related injury. Absent an explicit statutory provision, the Industrial Commission is not free to reduce statutorily-created benefits. "The Industrial Commission is not free to "legislate" in areas apparently overlooked by our lawmakers or to exercise power not expressly or impliedly granted to it by the legislature, even in the name of fairness." Bevans v. Industrial Comm'n, 790 P.2d 573, 578 (Utah App.1990). | Workers' Compensation Act is based on contract principles and employee's right to benefits arises when he suffers work-related injury. U.C.A.1953, 35-1- to 35-1-107. | Is the Workers Compensation Act based on contract principles and employees rights to benefits arise when they suffer a work-related injury? | 047712.docx | LEGALEASE-00128717-LEGALEASE-00128719 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5665 | United States v. Redzic, 627 F.3d 683 | 63+1(1) | To prove the payment of an illegal bribe, the government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct. It was not necessary for the government to link any particular payment to any particular action undertaken by Parr. | To prove the payment of an illegal bribe, the government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct. 18 U.S.C.A. S 666(a)(2). | "In a case of illegal bribe, should the payment be made with the intent to influence a general course of conduct?" | 011391.docx | LEGALEASE-00133410-LEGALEASE-00133411 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 5666 | Salazar v. Scotts Bluff County, 665 N.W.2d 659 | 307A+485 | A hearing on a motion for expenses pursuant to rule 37(c) is a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case. Kaminski v. Bass, 252 Neb. 760, 567 N.W.2d 118 (1997). The appellate court reviewing a decision on a motion for expenses is to concern itself solely with the evidence established and produced at that hearing. Id. The determination of an appropriate sanction under rule 37 rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Id. Once the party making a motion for sanctions proves the truth of the matter previously denied and that reasonable expenses were incurred in doing so, the burden then shifts to the nonmoving party to prove, by a preponderance of the evidence, one of the four exceptions enumerated in the discovery rule. Id. | A hearing on a motion for expenses pursuant to discovery rule, which allows a party to recover expenses associated with proving the genuineness of a matter which a party failed to admit to in requests for admission, is a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case. Discovery Rule 37(c). | Is hearing on a motion for expenses for a party's failure to admit a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case? | 030019.docx | LEGALEASE-00134846-LEGALEASE-00134847 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5667 | Nixon v. Harris, 31 Ill. App. 3d 204 | 307A+716 | Defendant places considerable significance on the fact that defense counsel was engaged in another trial on October 30, 1970. Although, for the reasons earlier stated, defendant was not entitled to a later date continuance as a matter of right, defense counsel's engagement elsewhere was a circumstance to be considered in connection with the motion to vacate. In determining the propriety of a continuance due to counsel's absence, an important, if not determinative, factor is the degree of due diligence exercised by the party seeking the continuance. (Adcock v. Adcock, 339 Ill.App. 543, 91 N.E.2d 99.) For continuances which are sought merely to delay the administration of justice are not countenanced by the law. We are all vividly aware of the number and backlog of cases which confront the circuit court each year and the consumption of court time when cases are sought to be continued on the date set for trial. (See Gray v. Gray, 6 Ill.App.2d 571, 128 N.E.2d 602.) As reiterated in Davies v. Infragnia, 54 Ill.App.2d 299, 305, 203 N.E.2d 725, 728:Litigants and their attorneys owe a duty to the court to be ready to proceed with trials in their cases when reached on the trial calendar. That is particularly true today with the great number of pending cases and because of the efforts being made, both by the assignment judge and trial judges, to cut down the backlog of pending cases. | In determining propriety of continuance due to counsel's absence, important if not determinative factor was degree of due diligence exercised by party seeking continuance. Supreme Court Rules, rules 231, 231(f), S.H.A. ch. 110A, SS 231, 231(f); S.H.A. ch. 110, S 59. | "Is the degree of due diligence exercised by the party seeking a continuance an important, if not determinative factor, in determining the propriety of a continuance due to counsel's absence?" | 029282.docx | LEGALEASE-00136446-LEGALEASE-00136447 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5668 | Triffin v. Dillabough, 448 Pa. Super. 72 | 8.30E+282 | By way of summary, we hold that the money orders sued upon are negotiable instruments. We further hold that appellant has the rights of a holder in due course and is entitled to payment on the instruments. Our conclusion is consistent with the purpose of the Uniform Commercial Code "to meet the contemporary needs of a fast moving commercial society," Arcuri v. Weiss, 198 Pa.Super. 506, 510, 184 A.2d 24, 26 (1962), and to "enhance the marketability of negotiable instruments [allowing] bankers, brokers, and the general public to trade in confidence."Manor Bldg. Corp. v. Manor Complex Assoc. Ltd., 435 Pa.Super. 246, 253, 645 A.2d 843, 846 (1994) (en banc). Furthermore, while American Express received no consideration for its liability on the instruments, our result is consistent with the established policy in Pennsylvania that "as between two innocent parties ... liability should be borne by the one ... who made the loss possible." Weiner v. The Pennsylvania Co. for Insurances on Lives and Granting Annuities, 160 Pa.Super. 320, 325, 51 A.2d 385, 388 (1947). Accord: Garden Check Cashing Serv., Inc. v. Chase Manhattan Bank, 46 Misc.2d 163, 258 N.Y.S.2d 918 (1965). | Purpose of Uniform Commercial Code (UCC) is to meet contemporary needs of fast-moving commercial society, and to enhance marketability of negotiable instruments, allowing bankers, brokers and general public to trade in confidence. | Is the purpose of Commercial Code to enhance the marketability of negotiable instruments? | 010542.docx | LEGALEASE-00148452-LEGALEASE-00148453 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 5669 | Joca-Roca Real Estate v. Brennan, 772 F.3d 945 | 25T+182(2) | In determining whether a conduct-based waiver has occurred, we ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir.2005); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir.2003).That determination is informed by a salmagundi of factors, including: the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced. See, e.g., Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc.), 376 F.3d 23, 26 (1st Cir.2004); Restoration Pres. Masonry, 325 F.3d at 61. | In determining whether a conduct-based waiver of the contractual right to arbitration has occurred, the court asks whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice, and that determination is informed by a salmagundi of factors, including the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced. | "As this Court explained in Currency Conversion III, a party may impliedly waive its right to enforce a contractual arbitration clause when it engages in protracted litigation that results in prejudice to the opposing party. " | 008006.docx | LEGALEASE-00151469-LEGALEASE-00151470 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 5670 | Cirillo v. Slomin's Inc., 196 Misc. 2d 922 | 307A+680 | In ruling upon a motion to dismiss, the Court must accept the factsalleged as true and accord plaintiffs the benefit of every possible favorable inference. Leon v. Martinez, 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511. The Complaint is to be construed liberally. The courtmaynotaddress the merits of the complaint or any of its factualallegations, but must determine only whether the allegedfactsfit within any cognizablelegaltheory. Id.; P.T. Bank Central Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 754 N.Y.S.2d 245. "Dismissal is warranted only if the documentary evidence conclusively establishes a defense to the asserted claims as a matter of law ... [T]he criterion is whether the proponent of a pleading has a cause of action, not whether he has stated one." Leon v. Martinez, supra, at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511; see also Steiner v. Lazzaro & Gregory, P.C., 271 A.D.2d 596, 706 N.Y.S.2d 157. | In ruling upon a motion to dismiss the Court may not address the merits of the complaint or any of its factual allegations, but must determine only whether the alleged facts fit within any cognizable legal theory. McKinney's CPLR 3211. | "In ruling upon a motion to dismiss, can the court not address the merits of the complaint or any of its factual allegations?" | 037744.docx | LEGALEASE-00151833-LEGALEASE-00151834 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 5671 | Kavanagh v. Trustees of Boston Univ., 440 Mass. 195 | 141E+1234 | The fact that a college or university has facilitated a student's ability to attend that institution by providing a scholarship or other financial assistance does not transform the relationship between the academic institution and the student into any form of employment relationship, for purposes of the doctrine of respondeat superior.While scholarships may introduce some element of "payment" into the relationship, scholarships are not wages, and neither side understands the relationship to be that of employer-employee or principal-agent. | The fact that a college or university has facilitated a student's ability to attend that institution by providing a scholarship or other financial assistance does not transform the relationship between the academic institution and the student into any form of employment relationship, for purposes of the doctrine of respondeat superior; while scholarships may introduce some element of "payment" into the relationship, scholarships are not wages, and neither side understands the relationship to be that of employer-employee or principal-agent. | Are students who attend college with an athletic scholarship considered employees of the university? | 017087.docx | LEGALEASE-00154835-LEGALEASE-00154836 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 5672 | Gorman v. Gilliam, 2010 Ark. App. 118 | 307A+681 | In determining whether to dismiss a complaint under Rule 12(b)(6), it is improper for the trial court to look beyond the complaint. Smith v. Eisen, 97 Ark.App. 130, 138"39, 245 S.W.3d 160, 168 (2006). In order to properly dismiss the complaint, the trial court must find that the complaining party either (1) failed to state general facts upon which relief could have been granted or (2) failed to include specific facts pertaining to one or more of the elements of one of his claims, after accepting all facts contained in the complaint as true and in the light most favorable to the nonmoving party. Eisen, 97 Ark.App. at 138"39, 245 S.W.3d at 168. Pleadings are sufficient if they advise a party of his obligations and allege a breach of them. Id., 245 S.W.3d at 168. | In determining whether to dismiss a complaint for failure to state facts upon which relief can be granted, it is improper for the trial court to look beyond the complaint. Rules Civ.Proc., Rule 12(b)(6). | "In determining whether to dismiss a complaint under Rule 12(b)(6) for failure to state facts upon which relief can be granted, is it improper for the trial court to look beyond the complaint?" | Pretrial Procedure - Memo # 9600 - C - KS_61363.docx | ROSS-003283043-ROSS-003283044 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5673 | Brewington v. State, 7 N.E.3d 946 | 3.77E+12 | But Defendant asks us to also consider whether he intended to put his targets in fear for their safety. We believe his suggestion is consistent with Black's focus on "whether a particular [communication] is intended to intimidate," 538 U.S. at 345, 123 S.Ct. 1536 (emphasis added)"and consistent with "our strong commitment to protecting the freedom of speech and expression" as a matter of Indiana law, even beyond what the First Amendment requires. Bandido's, 712 N.E.2d at 451"54 (adopting actual malice standard for defamation claims brought by private figures relating to issues of public concern, exceeding First Amendment protections); see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ("[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."). We therefore hold that "true threats" under Indiana law depend on two necessary elements: that the speaker intend his communications to put his targets in fear for their safety, and that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target. We conclude there is ample evidence on both points as to both victims. | True threats depend on two necessary elements: that the speaker intend his communications to put his targets in fear for their safety, and that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target. West's A.I.C. 35-45-2-1(c). | What are the two necessary elements that true threats depend on? | Threats - Memo #56 - C - LB_61631.docx | ROSS-003278510-ROSS-003278511 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5674 | Mayfield v. ACME Barrel Co., 258 Ill. App. 3d 32 | 307A+561.1 | Section 2"619 affords a defendant an expeditious means to obtain a summary disposition of an action based upon an affirmative bar to the plaintiff's right to recovery. (Kontos v. Boudros (1993), 241 Ill.App.3d 198, 181 Ill.Dec. 500, 608 N.E.2d 573.) | Statute governing involuntary dismissal affords defendant expeditious means to obtain summary disposition of action based upon affirmative bar to plaintiff's right to recovery. Ill.Rev.Stat.1989, ch. 110, P 2-619. | Will a statute for involuntary dismissal afford defendant expeditious means to obtain summary disposition of action? | Pretrial Procedure - Memo # 10763 - C - SJ_63405.docx | ROSS-003280144 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |
| 5675 | In re Frykberg, 490 B.R. 652 | 172H+15(3) | Mass. Gen. Laws ch. 183C requires lenders to receive certification that their borrowers received counseling from an approved third-party prior to finalizing a "high-cost home mortgage loan," in order for the loan to be enforceable. Mass. Gen. Laws ch. 183C, " 3. The statute defines "high [-]cost" home mortgage loans as those in which the points and fees exceed the greater of 5 percent of the total financed amount or $400. Mass. Gen. Laws ch. 183C, " 2. | Massachusetts Predatory Home Loan Practices Act, which requires lenders to receive certification that their borrowers received counseling from an approved third party prior to finalizing a "high-cost home mortgage loan," in order for the loan to be enforceable, is preempted by the Home Owners' Loan Act (HOLA). Home Owners' Loan Act of 1933, S 1 et seq., 12 U.S.C.A. S 1461 et seq.; M.G.L.A. c. 183C, S 3; 12 C.F.R. S 560.2. | Does a lender need to receive certification that their borrowers received counseling prior to finalizing a high cost home mortgage loan? | Consumer Credit - Memo 11 - RK.docx | ROSS-003282746-ROSS-003282747 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 5676 | Barnes v. Nw. Repossession, 210 F. Supp. 3d 954 | 386+7 | In Count IV, Plaintiff alleges that Northwest's repossession constituted an unlawful trespass to chattel. First Am. Compl. [70] 146-51. The common law tort "provides redress for unauthorized use of or intermeddling with another's physical property." Fi dlar Techs. v. LPS Real Estate Data Sols., Inc., 82 F.Supp.3d 844, 859 (C.D.Il1.2015), affd, 810 F.3d 1075 (7th Cir.2016). Under Illinois law, "an injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." Smith v. City of Chicago, 143 F.Supp.3d 741, 761 (N.D.Ill.2015) (quoting Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1229 (N.D.Ill.2005)). A trespass to a chattel "may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Frazier v. U.S. Bank Nat. Ass'n, No. 11-CV-8775, 2013 WL 1337263, at (N.D.DI. Mar. 29, 2013); Restatement (Second) of Torts " 217 (1965). In other words, "harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can result in liability." Smith, 143 F.Supp.3d at 761. | Under Illinois law, harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can result in liability for trespass to chattel. | "Can a harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use result in liability for trespass to chattel?" | Trespass - Memo 207 - BP.docx | ROSS-003285491-ROSS-003285492 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5677 | McDonnell v. McPartlin, 192 Ill. 2d 505 | 307A+3 | A trial court is vested with broad discretion to determine the propriety of declaring a mistrial. Where the alleged error, however, did not prejudice the complaining party, or otherwise impair that party's right to a fair trial, no mistrial will be declared. People v. Jones, 123 Ill.2d 387, 410, 123 Ill.Dec. 944, 528 N.E.2d 648 (1988). Error that occurs through the violation of a motion in limine is subject to the same analysis, i.e., such a violation will be deemed an appropriate ground for mistrial only where the violation resulted in the denial of a fair trial. See Kutchins v. Berg, 264 Ill.App.3d 926, 930, 202 Ill.Dec. 805, 638 N.E.2d 673 (1994); Northern Trust Bank v. Carl, 200 Ill.App.3d 773, 778, 146 Ill.Dec. 488, 558 N.E.2d 451 (1990). | Error that occurs through the violation of a motion in limine will be deemed an appropriate ground for mistrial only where the violation resulted in the denial of a fair trial. | Will an error that occurs through the violation of a motion in limine be deemed an appropriate ground for mistrial only where the violation resulted in the denial of a fair trial? | Pretrial Procedure - Memo # 161 - C - SB.docx | ROSS-003286281-ROSS-003286282 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5678 | City of El Dorado v. Union Cty., 122 Ark. 184 | 200+121 | Act 230 has reference to the road funds levied and collected under amendment No. 5 of the Constitution. It has no reference whatever to the optional road tax provided for by section 7280 of Kirby's Digest, supra, which is levied and collected solely as a part of the general revenue under the authority of article 16, " 9, of the Constitution. All taxes levied for general revenue purposes under article 16, " 9, of the Constitution, supra, and the optional road tax as a part of such general revenue funds, levied and appropriated under the provisions of section 7280 of Kirby's Digest, must be expended under the supervision of the county courts. Article 7, " 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. And under these provisions of the Constitution the Legislature would have no power to vest any other tribunal with jurisdiction over the expenditure of the funds raised under (article 16, " 9, supra) the general revenue clause of the Constitution. | Article 7, section 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | "Does the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges? " | Highways -Memo 146 - DB.docx | ROSS-003288837-ROSS-003288838 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5679 | Wayne Knorr v. Dep't of Transp., 973 A.2d 1061 | 13+61 | A party is first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim. Kutnyak v. Dep't of Corr., 748 A.2d 1275 (Pa.Cmwlth.2000); Zeppi v. Pa. State Police, 705 A.2d 1368 (Pa.Cmwlth.1998).This Court holds a claim does not accrue until the claimant knows the full extent of his claim. Nilsen v. Dep't of Pub. Welfare, 100 Pa.Cmwlth. 568, 514 A.2d 1025 (1986); C.J. Langenfelder& Son, Inc. v. Dep't of Transp., 44 Pa.Cmwlth. 585, 404 A.2d 745 (1979); Penn"Jersey Contractors, Inc. v. Gen. State Auth., 12 Pa.Cmwlth. 203, 315 A.2d 920 (1974). | A party is first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim. | Is a party first able to litigate a claim when the amount due under the claim is known and the claimant is able to prepare a concise and specific statement of his claim? | Action - Memo # 70 - C - LK.docx | ROSS-003289107-ROSS-003289109 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5680 | Tolman v. Underhill, 39 Cal. 2d 708 | 141E+997 | Respondents contend that state legislation like sections 1360 et seq. and 18150 et seq. of the Government Code is inapplicable to university personnel because of that portion of section 9 of article IX of the state Constitution which provides that the University of California shall be administered by the regents, "with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds." It is well settled, however, that laws passed by the Legislature under its general police power will prevail over regulations made by the regents with regard to matters which are not exclusively university affairs. See Wallace v. Regents, 75 Cal.App. 274, 278, 242 P. 892; Williams v. Wheeler, 23 Cal.App. 619, 624-625, 138 P. 937. There can be no question that the loyalty of teachers at the university is not merely a matter involving the internal affairs of that institution but is a subject of general statewide concern. Constitutional limitations upon the Legislature's powers are to be strictly construed, and any doubt as to its paramount authority to require University of California employees to take an oath of loyalty to the state and federal Constitutions will be resolved in favor of its action. Cf. Collins v. Riley, 24 Cal.2d 912, 915-916, 152 P.2d 169. | Laws passed by legislature under its general police power prevail over regulations made by regents of university of California with regard to matters which are not exclusively university affairs. | Do laws passed by the legislature under its general police power prevail over regulations made by regents of university? | Education - Memo #306 - C - ATS_64305.docx | ROSS-003294438-ROSS-003294439 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5681 | Manning v. North, 82 S.W.3d 706 | 30+3206 | The power of a trial court to dismiss for want of prosecution is not unbridled as it rests in the exercise of sound judicial discretion, subject to review. Thus, on appeal, the trial court's judgment of dismissal will not be reversed unless, as a matter of law, the trial court clearly abused its discretion. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957); F.D.I.C. v. Kendrick, 897 S.W.2d 476, 479 (Tex.App.-Amarillo 1995, no writ). The burden of proof rests on a litigant asserting an abuse of discretion. This is true because there is a presumption that the action of the trial court was justified. Id. at 479. | Power of a trial court to dismiss for want of prosecution is not unbridled as it rests in the exercise of sound judicial discretion, subject to review; thus, on appeal, the trial court's judgment of dismissal will not be reversed unless, as a matter of law, the trial court clearly abused its discretion. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Is the power of a trial court to dismiss for want of prosecution unbridled as it rests in the exercise of sound judicial discretion? | Pretrial Procedure - Memo 12221 - C - DHA_67594.docx | ROSS-003296382-ROSS-003296383 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 5682 | Rhodes v. Blair, 919 S.W.2d 561 | 307A+3 | Additionally, Plaintiffs' attempted use of the motion in limine was to obtain a judgment prior to trial. "In limine" is defined as "in or at the beginning," and such a motion is designed to accomplish, at the beginning of litigation, some purpose which may be known only by reference to the context thereof. State v. Riggs, 586 S.W.2d 447, 449 (Mo.App.S.D.1979). It is traditionally used, however, as a form of a motion to suppress designated testimony or evidence. See Robbins v. Jewish Hosp., 663 S.W.2d 341, 348 (Mo.App.E.D.1983). | "In limine" is defined as "in or at the beginning," and motion in limine is designed to accomplish, at beginning of litigation, some purpose which may only be known by reference to the context thereof. | "Is in limine defined as ""in or at the beginning,"" and motion in limine is designed to accomplish, at beginning of litigation, some purpose which may only be known by reference to the context thereof? " | Pretrial Procedure - Memo # 528 - C - RY.docx | ROSS-003296752-ROSS-003296754 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 5683 | Butler Univ. v. Bahssin, 892 So. 2d 1087 | 307A+695 | Generally, leave to amend a complaint "shall be given freely when justice so requires." Fla. R. Civ. P. 1.190(a). When a complaint fails to state a cause of action, the proper approach is for the trial court to allow leave to amend, not to dismiss the complaint with prejudice. Fla. Nat'l Org. for Women, Inc. v. State, 832 So.2d 911, 915 (Fla. 1st DCA 2002). Leave to amend may be denied when a party has abused the privilege to amend or when "it conclusively appears there is no possible way to amend the complaint to state a cause of action." Id. (quoting Undereducated Foster Children of Fla. v. Fla. Senate, 700 So.2d 66, 67 (Fla. 1st DCA 1997)). Because this was Butler's first attempt to amend its complaint, it had not abused the privilege to amend. Thus dismissal with prejudice was appropriate only if the trial court could conclusively determine there was "no possible way to amend the complaint to state a cause of action." Because the trial court had the benefit of having before it Butler's proposed amended complaint, we must examine its allegations to determine whether something within it revealed there was no way Butler could state a cause of action. | When a complaint fails to state a cause of action, the proper approach is for the trial court to allow leave to amend, not to dismiss the complaint with prejudice. West's F.S.A. RCP Rule 1.190(a). | "When a complaint fails to state a cause of action, is the proper approach for the trial court to allow leave to amend? " | Pretrial Procedure - Memo 12048 - C - PB_68456.docx | ROSS-003296835-ROSS-003296836 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5684 | Poff v. Elkins, 2014 Ark. App. 663 | 307A+3 | The appellant is barred from arguing that this ruling was in error. When a party opens the door to a line of questioning, the opposing party may introduce testimony on that issue. Pursley v. Price, 283 Ark. 33, 34, 670 S.W.2d 448, 449 (1984). The appellant argues that the circuit court's ruling on the motion in limine forced her to introduce this evidence on direct examination. This argument is not persuasive. A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. 8 Conagra, Inc. v. Strother, 68 Ark.App. 120, 126, 5 S.W.3d 69, 73 (1999). As such, it is subject to reconsideration and change by the court during the course of the trial, as the evidence in the trial is fully developed. Id. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | "Is a trial court's ruling on a motion in limine a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature? " | Pretrial Procedure - Memo # 130 - C - ES.docx | ROSS-003297644-ROSS-003297645 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5685 | Turner v. 1212 S. Michigan P'ship, 355 Ill. App. 3d 885 | 307A+561.1 | A "motion to dismiss pursuant to section presents affirmative matters that avoid the legal effect of a plaintiff's claim." Hopewell v. Vitullo, 299 Ill.App.3d 513, 516, 233 Ill.Dec. 456, 701 N.E.2d 99, 101 (1998). The section thereby "furnishes a mechanism for the disposition of issues of law and easily proved issues of fact."]\|Davis v. Chicago Police Board, 268 Ill. App.3d 851, 854, 206 Ill. Dec. 269, 645 N.E.2d 274, 276 (1995). As such, "it amounts essentially to a summary judgment procedure." Palmisano v. Connell, 179Ill. App.3d 1089, 1097, 128Ill. Dec. 638, 534 N.E.2d 1243, 1249 (1989). | A motion to dismiss based on claims being barred by other affirmative matters avoiding legal effect of or defeating the claims furnishes a mechanism for the disposition of issues of law and easily proved issues of fact; as such, it amounts essentially to a summary judgment procedure. S.H.A. 735 ILCS 5/2-619(a)(9). | Will a motion to dismiss furnish a mechanism for the disposition of issues of law and easily prove issues of fact? | Pretrial Procedure - Memo # 8855 - C - MS_59852.docx | ROSS-003297705-ROSS-003297706 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 5686 | In re Jones, 534 B.R. 588 | 366+1 | Equitable subrogation may be used to remedy a situation in which, as a result of a mistake, a party stands to suffer unfair consequences.The District Court in Orcutt articulated four criteria a party must satisfy to demonstrate a right to the benefits of equitable subrogation under Vermont law:(1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others. | Equitable subrogation may be used to remedy a situation in which, as result of mistake, a party stands to suffer unfair consequences. | May equitable subrogation be used to remedy a situation in which as a result of a mistake a party stands to suffer unfair consequences? | Subrogation - Memo 273 - ES.docx | ROSS-003298149-ROSS-003298150 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5687 | Shatswell v. Shatswell, 758 F. Supp. 662 | 34+34.2(1) | Upon the court's own motion, this case shall be dismissed. The provisions of the Soldiers and Sailors Relief Act may be applied by federal and state courts. 50 U.S.C.App. " 512(1). But, the Act does not empower this court to collaterally review, vacate or impede the decisions of a state court. See Scheidegg v. Department of Air Force, 715 F.Supp. 11, 13-14 (D.N.H.1989); Sarfaty v. Sarfaty, 534 F.Supp. 701, 704 n. 4 (E.D.Pa.1982),; Davidson v. General Finance Corp., 295 F.Supp. 878, 882 (N.D.Ga.1968); Runge v. Fleming, 181 F.Supp. 224 (N.D.Iowa 1960); Radding v. Ninth Federal Savings & Loan Ass'n, 55 F.Supp. 361 (S.D.N.Y.1944). Judgments made in violation of the Act are subject to attack only in the courts which rendered the judgments. See 50 U.S.C.App. " 520(4). | Soldiers' and Sailors' Civil Relief Act does not empower district court to collaterally review, vacate or impede decisions of state court. Soldiers' and Sailors' Civil Relief Act of 1940, S 1 et seq., 50 U.S.C.A.App. S 501 et seq. | "Does the Soldiers and Sailors Civil Relief Act empower district court to collaterally review, vacate or impede decisions of state court?" | 34 - 7.1 - Memo 198 - SNJ - 11.08.2017.docx | ROSS-003301885-ROSS-003301886 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5688 | B & D Fabricators v. D.H. Blair Inv. Banking Corp., 220 Ga. App. 373 | 106+39 | Finally, we note that a court has a duty to inquire into its jurisdiction, upon its own motion where there is doubt, and is authorized to dismiss a case against a defendant where personal jurisdiction is lacking. See Culwell v. Lomas & Nettleton Co., 145 Ga.App. 519, 522"523(2), 244 S.E.2d 61 (1978), rev'd on other grounds, 242 Ga. 242, 248 S.E.2d 641 (1978). It also has the power to correct its own proceedings before final judgment and to amend and control its orders. OCGA " 15"1"3. Based on the record before us, the trial court did not err in opening the default, setting aside the default judgment or dismissing the acti | Court has duty to inquire into its jurisdiction, upon its own motion where there is doubt, and is authorized to dismiss case against defendant where personal jurisdiction is lacking. | "Does a court have a duty to inquire into its jurisdiction, upon its own motion where there is doubt, and is authorized to dismiss a case against a defendant where personal jurisdiction is lacking?" | Pretrial Procedure - Memo # 5625 - C - NC.docx | ROSS-003302858-ROSS-003302859 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5689 | Loftus v. Primero Mining Corp., 230 F. Supp. 3d 1209 | 221+342 | First, Plaintiffs appear to request that Court to reevaluate the propriety of theSAT's ruling as to whether Primero complied with the transfer pricing rules. The Court declinesto do so. "The act of state doctrine in its traditional formulation precludes the courts ofthis country from inquiring into the validity of the public acts arecognized foreign sovereign power committed within its own territory." \| Mujica v.Occidental Petroleum Corp., 381 F.Supp.2d 1164, 1171 (C.D. Cal. 2005) (quoting BancoNacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)); seealso Roe v. Unocal, 70 F.Supp.2d 1073, 1076 (C.D. Cal. 1999)("The act of state doctrine precludes a court of the United States from considering a plaintiff'sclaims where either the claims or the defenses asserted would require the court to determine thata foreign sovereign's official acts performed in its own territory were invalid."). Thus, where, ashere, a Mexican governmental body has already reached a decision as to whether Primero'stransfer pricing complied with Mexican law, this Court should not reevaluatethe foreign government's decision. See Unocal, 70 F.Supp.2d at 1082 (findingthe act of state doctrine applied where the plaintiffs "allegations turn[ed] on the effect of anofficial act by an authorized representative of a foreign sovereign'); see also Tiangang Sun v.China Petroleum & Chem. Corp. Ltd., No. CV 13-05355 BRO, 2014 WL 11279466, at (C.D.Cal. Apr. 15, 2014) ("The Court will not rule on the legality of an 'official act ofa foreign sovereign state performed within its own territory.' " (quoting W.S. Kirkpatrick & Co.v. Envt'l Tectonics Corp., 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990))). | The act of state doctrine in its traditional formulation precludes courts from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory. | Does the act of state doctrine bar an American court from questioning the validity of the act ofa foreign sovereign when that act is done within the sovereign's territory? | International Law - Memo 606 - TH.docx | ROSS-003303193-ROSS-003303195 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5690 | Grant v. Friendly Chrysler-Plymouth, 612 S.W.2d 667 | 172H+93 | Appellant urges this Court to find appellees in violation of the Credit Code because in their Retail Installment Contract they included the amount of $103.74 of sales tax in the "Principal Balance." It is clear from a reading of Article 5069-7.01(f) and (h) that any sales taxes were clearly intended to be part of the "Principal Balance." The failure to include them as part of the "Cash Sale Price" was de minimus and did not contravene the intent of the Credit Code as passed by the Legislature. Point of error number two is overruled. | Failure to include sales taxes as part of "cash sale price" in automobile retail installment contract was de minimus and did not contravene intent of Consumer Credit Code. Vernon's Ann.Civ.St. art. 5069-7.01(f, h). | Is failure to include sales taxes as part of Cash Sale Price is de minimus and contravene intent of Consumer Credit Code? | Consumer Credit -Memo 113-DB_59232.docx | ROSS-003305834 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 5691 | Hollander v. Nance, 888 So. 2d 1275 | 307A+581 | "The dismissal of a civil action for want of prosecution because of the plaintiff's failure to appear at trial falls within the judicial discretion of a trial court and will not be reversed upon an appeal except for an abusive use of that discretionary power." Thompson v. McQuagge, 464 So.2d 105, 106 (Ala.Civ.App.1985). Although dismissal is a harsh sanction, it is warranted where there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332, 341 (Ala.1991). Because the trial judge is in the best position to assess the conduct of the plaintiff, the trial court's "decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court." Id. | Although dismissal of action for want of prosecution because of the plaintiff's failure to appear at trial is a harsh sanction, it is warranted where there is a clear record of delay, willful default, or contumacious conduct by the plaintiff. | "Is dismissal of action for failure to prosecute or to comply with rules or order warranted when there is clear record of delay, willful default or contumacious conduct of plaintiff? " | Pretrial Procedure - Memo # 9237 - C - SN_61141.docx | ROSS-003307727-ROSS-003307728 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5692 | Onstad v. Wright, 54 S.W.3d 799 | 307A+3 | This situation, however, is different than a complaint about the improper admission of evidence. A motion in limine will not preserve error to the admission of inadmissible evidence. An order on a motion in limine, however, is an action taken by the trial court in the exercise of its control over proceedings before that court. When a trial court issues an order granting such a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same. Noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. Heidelberg v. State, 36 S.W.3d 668, 673 n. 3 (Tex.App."Houston [14th Dist.] 2001, no pet. h.); see Harnett v. State, 38 S.W.3d 650, 655 (Tex.App."Austin 2000, pet. ref'd) (citing Brazzell v. State, 481 S.W.2d 130, 131 (Tex.Crim.App.1972)); see also Weidner, 14 S.W.3d 353; Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ) (holding in civil case trial court may strike a party's pleadings as a sanction for violation of an order in limine if the circumstances warrant). The violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation lie with the trial court. See Brazzell, 481 S.W.2d at 131. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. Lewis v. State, 627 S.W.2d 492, 494 (Tex.App."Houston [1st Dist.] 1981, no pet.). | When a trial court issues an order granting a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same; noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. | "When a trial court issues an order granting a motion in limine, does the opposing party have a duty to comply with that order and to instruct the witnesses to do the same?" | Pretrial Procedure - Memo # 115 - C - ANC.docx | ROSS-003311670-ROSS-003311671 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5693 | Pulte Home Corp. v. Parex, 174 Md. App. 681 | 366+1 | Subrogation is founded upon the equitable powers of the court. It is intended to provide relief against loss and damage to a meritorious creditor who has paid the debt of another. The doctrine is a legal fiction whereby an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person. This third person succeeds to the rights of the creditor in relation to the debt. The rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt. Riemer, 358 Md. at 231"32, 747 A.2d 677 (internal citations omitted). | The rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt. | Is the rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt? | Subrogation - Memo 546 - C - SU.docx | ROSS-003315597-ROSS-003315599 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5694 | MMA Consultants 1 v. Republic of Peru, 245 F. Supp. 3d 486 | 221+342 | The act of state doctrine "confer[s] presumptive validity on certain acts of foreign sovereigns by rendering non-justiciable claims that challenge such acts." Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 520 (2d Cir. 1985). Its applicability depends, in part, on whether judicial examination of the sovereign's act "would embarrass or hinder the executive in the realm of foreign relations." Id. at 521. | The act of state doctrine confers presumptive validity on certain acts of foreign sovereigns by rendering non-justiciable claims that challenge such acts; its applicability depends, in part, on whether judicial examination of the sovereign's act would embarrass or hinder the executive in the realm of foreign relations. | Does the act of state doctrine confer presumptive validity on certain acts of foreign sovereigns by rendering non-justiciable claims that challenge such acts? | International Law - Memo # 110 - C - LK.docx | ROSS-003322281-ROSS-003322282 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 5695 | State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099 | 366+1 | "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." West Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204, 206 (Fla. 5th DCA 1986). Florida recognizes two types of subrogation: conventional or contractual subrogation and equitable or legal subrogation. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999). Conventional or contractual subrogation arises from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. Equitable or legal subrogation is not created by a contract but by the legal consequences of the acts and relationships of the parties. Id. at 646. The doctrine is based on the policy that no person should benefit by another's loss, and it "may be invoked wherever justice demands its application, irrespective of technical legal rules." West Am. Ins. Co., 495 So.2d at 207. | The doctrine of equitable subrogation is based on the policy that no person should benefit by another's loss, and it may be invoked wherever justice demands its application, irrespective of technical legal rules. | Is the doctrine of equitable subrogation based on the policy that no person should benefit by another's loss? | Subrogation - Memo 316 - RM C.docx | ROSS-003322878-ROSS-003322880 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5696 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+1 | Equitable subrogation requires that a party show that (1) it paid a debt in order to protect its own interest, (2) it was not acting as a volunteer in making the payment, (3) it was not primarily liable for the debt, (4) the entire debt was paid, and (5) subrogation would not cause an injustice to the rights of third parties. Fibreboard Corp. v. Celotex Corp., (In re Celotex Corp.) 472 F.3d 1318, 1323 (11th Cir.2006) (applying Florida law); Hamada v. Far East National Bank, (In re Hamada) 291 F.3d at 651 (applying California law); McAllister Towing v. Ambassador Factors, (In re Topgallant Lines, Inc.) 154 B.R. 368, 382 n. 14 (S.D.Ga.1993), aff'd 20 F.3d 1175 (11th Cir.1994) (maritime law); In re Flamingo 55, Inc., 378 B.R. 893, 911 (Bankr.D.Nev.2007) (applying California law); Celotex Corp. v. Allstate Insurance Co., (In re Celotex Corp.) 289 B.R. at 467 (applying generic criteria for equitable subrogation); Photo Mechanical Services, Inc.v. E.I. Dupont De Nemours & Co., (In re Photo Mechanical Services, Inc.) 179 B.R. 604, 618 (Bankr.D.Minn.1995) (citing 73 Am.Jur. 2 D, Subrogation " 11 (1974)). | Under Georgia law, equitable subrogation requires a party to prove: (1) that it paid debt in order to protect its own interest; (2) that it was not acting as volunteer in making payment; (3) that it was not primarily liable for debt, (4) that entire debt was paid; and (5) that subrogation would not cause injustice to rights of third parties. | What does equitable subrogation require a party to prove? | Subrogation - Memo 291 - RM C.docx | ROSS-003325257-ROSS-003325258 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5697 | Rex v. Warner, 183 Kan. 763 | 13+61 | No doctrine of equity jurisprudence is better settled than the rule that in the absence of the existence of a statute of limitations, the time in which a party will be barred from relief in a court of equity must necessarily depend to a certain extent upon the facts of each case as they may arise; but, when the statute has fixed the period of limitations under which the claim, if interposed in a court of law, would be barred, courts of equity by analogy follow the limitations provided by law (Bell v. Bank of Whitewater, 146 Kan. 901, 906, 73 P.2d 1059; 34 Am.Jur., Limitation of Actions, " 59, p. 55; 53 C.J.S. Limitations of Actions " 36, p. 987; 30 C.J.S. Equity " 131, pp. 560, 561; 1 Wood on Limitations [4th Ed.], 272, 277; Kelly, Code, Statute of Limitations, " 49, p. 54). Under G.S.1949, 60"306, Second, an action upon a contract not in writing must be commenced within three years after the cause of action shall have accrued. Generally speaking, a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement (54 C.J.S. Limitations of Actions " 109, pp. 11, 12). Stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused. The true test to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result (Howard v. Ritchie, 9 Kan. 102; McBride v. Lombard Mortgage Co., 44 Kan. 351, 24 P. 428; Railway Co. v. Atchison Grain Co., 68 Kan. 585, 75 P. 1051; Bruner v. Martin, 76 Kan. 862, 865, 868, 93 P. 165, 14 L.R.A., N.S., 775; 3 Hatcher's Kansas Digest [Rev. ed.], Limitation of Actions, 21). Plaintiff alleged that he fully performed his part of the contract on February 12, 1954, but that defendants failed on that date to perform their part and have refused to perform ever since. According to plaintiff's allegations the defendants | True test to determine when cause accrued is to ascertain when plaintiff could first have maintained his action to a successful result. | Is the true test to determine when cause accrued to ascertain when plaintiff could first have maintained his action to a successful result? | Action - Memo # 168 - C CS.docx | ROSS-003325683-ROSS-003325684 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 5698 | Mort v. United States, 86 F.3d 890 | 366+2 | The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " (quoting Caito v. United Cal. Bank, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)). | Equitable subrogation is broad equitable remedy, and therefore it applies whenever one person, not acting as mere volunteer or intruder, pays debt for which another is primarily liable, and which in equity and good conscience should have been discharged by latter. | "Is ""subrogation"" an equitable remedy?" | Subrogation - Memo 180 - ANG C.docx | ROSS-003330114-ROSS-003330115 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 5699 | Pressman v. Estate of Steinvorth, 860 F. Supp. 171 | 9+1 | A party seeking an accounting must first establish four conditions: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." 300 Broadway Realty Corp. v. Kommit, 37 Misc.2d 325, 325, 235 N.Y.S.2d 205, 206 (Sup.Ct.1962). Although Pena has shown three of conditions listed above, that"(1) by acting as Steinvorth's attorney, Pressman became a fiduciary obligated to account to Steinvorth, and upon Steinvorth's death, his Estate; (2) she has no adequate remedy at law in terms or damages, but must see the Withheld Documents; and (3) she has demanded to see the Withheld Documents but Pressman has refused to disclose them absent a general release"her failure to adequately establish that she has an interest in all the relevant corporate entities is fatal to her claim. See Kelly v. Chester Fire Dist., 116 Misc.2d 334, 337, 455 N.Y.S.2d 312, 314 (Sup.Ct.1982), rev'd on other grounds, 95 A.D.2d 799, 463 N.Y.S.2d 518 (2d Dep't 1983) (to warrant a decree in equity for an accounting, it must be established that the defendant has been entrusted with money or property of the plaintiff); 1 N.Y.Jur.2d, Accounts and Accounting " 36 (1979). | Party seeking accounting must first establish: (1) relations of mutual and confidential nature; (2) money or property entrusted to defendant imposing upon him burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, demand for accounting and refusal. | What are the elements to establish a claim of accounting? | Account - Memo 5 - VP__16KbEM4aNHjA6SI RKDMiFP1TEHWNV7Hzx .docx | ROSS-000000003-ROSS-000000004 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 5700 | People v. Hunter, 331 Ill. App. 3d 1017 | 181+1 | After reviewing the record, we conclude that the evidence produced by the State is abundantly sufficient to prove defendant's guilt of forgery beyond a reasonable doubt. The essential elements necessary to prove forgery in this case are (1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document; and (5) intent to defraud.People v. Hockaday, 93 Ill.2d 279, 282, 66 Ill.Dec. 640, 443 N.E.2d 566 (1982). Intent to defraud may be inferred from the circumstances of the transaction and, if the forged document is delivered, then the intent to defraud will be presumed. People v. Carr, 225 Ill.App.3d 170, 176, 167 Ill.Dec. 274, 587 N.E.2d 543 (1992). Defendant contends that there was insufficient evidence to prove that defendant knew that the check had been forged, that he knowingly delivered the check, or that he possessed the intent to defraud. These arguments are contradicted by the record. | The essential elements necessary to prove forgery are (1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document, and (5) intent to defraud. | What is required to prove forgery under law? | 000142.docx | LEGALEASE-00115513-LEGALEASE-00115514 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5701 | Little v. State Indus. Comm'n, 1936 OK 817 | 181+1 | A forgery statute is "aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." LaFave & Scott, Handbook on Criminal Law, p. 671 (1972). This purpose underlies not only the prohibition against forging a false instrument but also that against possessing or uttering such an instrument. Perkins, Criminal Law, pp. 339-40 (2d ed. 1969). It would be anomalous for the legislature to prohibit the possession of a false instrument with intent to utter but not the tendering or offering of it. The actual tendering of a forged instrument, whether the instrument is accepted or not, is more harmful to public confidence in the genuineness of documents than is the possession of the instrument with intent to utter. | Forgery statute is aimed primarily at safeguarding confidence in genuineness of documents relied upon in commercial and business activity; such purpose underlies not only prohibition against forging false instrument but also against possessing or uttering such an instrument. W.S.A. 943.38. | What is the purpose of forgery statute? | Forgery - Memo 6 - RMM.docx | ROSS-003288087-ROSS-003288088 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5702 | Four States Realty Co. v. City of Baton Rouge, 309 So. 2d 659 | 414+1639 | The authority to enact zoning regulations flows from the police power of the various governmental bodies; zoning is a legislative function. State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440 (1923); State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613 (1921); Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App.1st Cir. 1966); Smith v. City of Baton Rouge, 233 So.2d 569 (La.App.1st Cir. 1970).Courts will not and cannot substitute their wisdom for that of a legislative body or other zoning authority except when there is an abuse of discretion or an excessive use of power. However, the exercise of a police power in zoning cannot be made without substantial relation to the health, safety and general welfare of the public.City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503 (1947); City of Shreveport v. Bayse, 166 La. 689, 117 So. 775 (1928). All ordinances are presumed valid; whoever attacks the constitutionality of an ordinance bears the burden of proving his allegation. City of New Orleans v. Beck, 139 La. 595, 71 So. 883 (1916); Ward v. Leche, 189 La. 113, 179 So. 52 (1938). However, rezoning on a piecemeal or spot basis is highly suspect. Generally, property owners may rely upon the previous exercise of police power in zoning, expecting that changes in zoning will only be made so as to affect vested property interests when the change is required to assure the public welfare. A city purporting to act under its police powers cannot create in a large area of property zoned in one classification an island of one parcel of land relegated to another zoning classification when no rational reason exists for such a separate classification. 51 A.L.R.2d 311, Reynolds v. Barrett (1938), 12 Cal.2d 244, 83 P.2d 29. | The authority to enact zoning regulations flows from the police power of the various governmental bodies; zoning is a legislative function and courts will not and cannot substitute their wisdom for that of a legislative body or other zoning authority except when there is an abuse of discretion or an excessive use of power. | Is the authority to enact zoning regulations derived from the police power of a governing authority? | 000288.docx | LEGALEASE-00115742-LEGALEASE-00115743 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5703 | Strother v. Lexington Cty. Recreation Comm'n, 324 S.C. 611 | 277+3 | Generally, actual notice is synonymous with knowledge. Hannah v. United Refrigerated Serv., 312 S.C. 42, 430 S.E.2d 539 (Ct.App.1993), cert. denied, (December 7, 1993). Actual notice may be subdivided into two categories, express and implied. 66 C.J.S. Notice " 3; 58 Am.Jur.2d Notice " 6 (1989). "Express notice is that kind of actual notice which consists of general knowledge actually brought personally home; information which of itself gives actual notification." 66 C.J.S. Notice " 4. On the other hand, "implied notice is generally regarded as a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact." 66 C.J.S. Notice " 5. | Generally, actual notice is synonymous with knowledge and may be subdivided into two categories, express and implied; express notice consists of general knowledge actually brought personally home, information which of itself gives actual notification, and implied notice consists of knowledge of facts so informing that a reasonably cautious person would then be led by them to the ultimate fact. | How is actual notice classified under the law? | 000283.docx | LEGALEASE-00115572-LEGALEASE-00115574 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 5704 | Scientists' Inst. for Pub. Info. v. Atomic Energy Comm'n, 481 F.2d 1079 | 149E+595(1) | NEPA requires federal agencies to include a detailed environmental impact statement "in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment * * *." That the Commission must issue a detailed statement for each of the major test facilities and demonstration plants encompassed by the LMFBR program is conceded by the Commission and not at issue in this case. The Commission has already issued an impact statement for its Fast Flux Test Facility to be constructed in Hanford, Washington, and, at the President's request, has completed a statement for the first demonstration plant prior to the time such a statement would normally be issued.19 Nor is the adequacy of either of these statements as they pertain to their respective individual facilities an issue on this appeal. The question raised, instead, is basically twofold: whether at some point in time the Commission must issue a statement for the research and development program as a whole, rather than simply for individual facilities, and, assuming an affirmative answer to this question, whether a statement covering the entire program should be drafted now. | Statute which requires federal agencies to include a detailed environmental impact statement in every major recommendation or report on proposals for legislation and other major federal actions significantly affecting the quality of human environment is applicable to technological development programs. National Environmental Policy Act of 1969, S 102(2)(C), 42 U.S.C.A. S 4332(2)(C). | When do the courts require a federal agency to prepare an impact statement? | 003818.docx | LEGALEASE-00115774-LEGALEASE-00115775 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5705 | Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs, 158 N.C. App. 376 | 21+1 | It is true thata " "verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." " Spinks v. Taylor and Richardson v. Taylor Co., 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981) (quoting Page v. Sloan, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972)). However, the allegations in plaintiff's complaint regarding Robert Jacob's authority to act on behalf of defendants "meet[] neither the first nor the third requirements of the rule for affidavits and therefore may not be considered." Page, 281 N.C. at 705, 190 S.E.2d at 194; see also Talbert v. Choplin, 40 N.C.App. 360, 365, 253 S.E.2d 37, 41 (1979) (verified affidavit that failed to establish that plaintiff was competent to testify to matter asserted had "failed to meet the requirements for an affidavit to be considered under Rule 56(e)" and thus could not be considered by the trial court). Because plaintiff failed to offer any evidence, by affidavit or otherwise, that Robert Jacobs entered into a contract on behalf of defendants, this allegation is disregarded in our determination of whether grounds exist for the exercise of personal jurisdiction over defendants. | A verified complaint may be treated as an affidavit if it: (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein. | Can a verified complaint be treated as an affidavit? | 07330.docx | LEGALEASE-00077609-LEGALEASE-00077610 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5706 | NAC Tex Hotel Co. v. Greak, 481 S.W.3d 327 | 20+1 | Of the six above-named elements required to prove adverse possession, a discussion of the element of hostile intent is dispositive here. The test for hostility is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property. Masonic Bldg. Ass'n of Houston, Inc. v. McWhorter, 177 S.W.3d 465, 472 (Tex.App."Houston [1st Dist.] 2005, no pet.). Mere occupancy of land without any intention to appropriate it will not support the statute of limitations. Ellis v. Jansing, 620 S.W.2d 569, 571 (Tex.1981). No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by intent on the part of the occupant to make it so. Id. at 571"72. There must be an intention to claim the property as one's own to the exclusion of all others. Tran v. Macha, 213 S.W.3d 913, 915 (Tex.2006) (per curiam). But the doctrine of adverse possession itself is a harsh one, taking real estate from a record owner without express consent or compensation. Id. Before taking such a severe step, the law reasonably requires that the parties' intentions be very clear. Id. | The doctrine of adverse possession itself is a harsh one, taking real estate from a record owner without express consent or compensation; before taking such a severe step, the law reasonably requires that the parties' intentions be very clear. Tex. Civ. Prac. & Rem. Code Ann. S 16.026(a). | Is the element of intention essential to prove adverse possession? | Adverse Possession - Memo 12- AKA.docx | LEGALEASE-00000871-LEGALEASE-00000872 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5707 | Jaffe v. Bank of America, N.A., 667 F.Supp.2d 1299 | 195+4 | An important aspect of the letter of credit is that it is subject to the independence principle, which provides that, absent any fraud in connection with the letters of credit itself, the issuer's obligation to make payment to the beneficiary is independent of any party's performance on any other underlying contract. In re Air Conditioning, Inc. of Stuart, 72 B.R. 657, 660 (S.D.Fla.1987). "Thus, the letter of credit can be distinguished from a guarantee because the issuer is primarily liable and cannot assert defenses available to the customer that arise from a breach in the underlying contract." Dibrell Bros. Int'l, S.A., 38 F.3d at 1579. | An important aspect of a letter of credit is that it is subject to the "independence principle," which provides that, absent any fraud in connection with the letter of credit itself, the issuer's obligation to make payment to the beneficiary is independent of any party's performance on any other underlying contract; thus, a letter of credit can be distinguished from a guarantee since the issuer is primarily liable and cannot assert defenses available to the customer that arise from a breach in the underlying contract. | Is the independence principle an aspect of letter of credit? | 003947.docx | LEGALEASE-00115860-LEGALEASE-00115861 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 5708 | Japan Gas Lighter Ass'n v. Ronson Corp., 257 F. Supp. 219 | 170B+2701 | The concepts of personal jurisdiction and of venue are closely related, but nonetheless distinct. Olberding v. Illinois Central R.R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); Polizzi v. Cowles Magazine, Inc., 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953).1 The distinction between venue and personal jurisdiction is important precisely because often several district courts are competent to hear the matter, and can assert jurisdiction over the defendant; venue then is decisive as to where the suit may be brought. Nationale's blurring of this distinction has impaired its analysis of both requirements | The concepts of personal jurisdiction and of venue are closely related, but nonetheless distinct; often several district courts are competent to hear the matter and can assert jurisdiction over the defendant, and venue then is decisive as to where the suit may be brought. | Are personal jurisdiction and venue different concepts? | 004578.docx | LEGALEASE-00116044-LEGALEASE-00116046 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 5709 | Kurek v. Luszcyk, 51 Misc. 3d 19 | 315+185 | "A life estate is more than merely a right of enjoyment. Rather, a life tenant is entitled to possession, control, and enjoyment of the property for the duration of his or her life" (56 N.Y. Jur. 2d, Estates, Powers, and Restraints on Alienation " 35). The "substance of a life estate consists in the life tenant's right to exclude all others from the possession of the subject property for the duration of his or her own life" (Torre v. Giorgio, 51 A.D.3d 1010, 1011, 858 N.Y.S.2d 765 [2008] [internal quotation marks omitted] ). Because a life tenant has the exclusive right to the property during her life, "the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land"(56 N.Y. Jur 2d, Estates, Powers, and Restraints on Alienation " 186; see Novakovic v. Novakovic, 25 Misc.3d 94, 890 N.Y.S.2d 758 [App.Term, 2d, 11th & 13th Jud.Dists.2009] ). | Because a life tenant has the exclusive right to the property during her life, the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land. | "Does the remainderman or reversioner have a right to possession or any present right of enjoyment, or tangible or physical ownership, of the land during the term of the life tenancy?" | 004244.docx | LEGALEASE-00115985-LEGALEASE-00115986 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5710 | Buttermilk Farms v. Planning & Zoning Comm'n of Town of Plymouth, 292 Conn. 317 | 414+1042 | It is well established that, "as a creation of the state, a municipality [whether acting itself or through its planning and zoning commission] has no inherent powers of its own ... and that [it] possesses only such rights and powers that have been granted expressly to it by the state...." (Citation omitted; emphasis added.) Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 19, 523 A.2d 467 (1987). "Thus, while the state may have inherent power to regulate in the interest of public health, safety, morality and welfare ... [i]n connection with [municipal regulations], it is a cardinal principle of construction that provisions and amendments must be enacted pursuant to the ... enabling statute." (Citation omitted; internal quotation marks omitted.) Capalbo v. Planning & Zoning Board of Appeals, 208 Conn. 480, 490, 547 A.2d 528 (1988). In determining whether a particular regulation "[is] within the authority of the commission to enact, [therefore] we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." Avonside, Inc. v. Zoning & Planning Commission, 153 Conn. 232, 236, 215 A.2d 409 (1965). | In determining whether a particular regulation is within the authority of the town planning and zoning commission to enact, appellate courts do not search for a statutory prohibition against such an enactment; rather, appellate courts must search for statutory authority for the enactment. | Do the courts to search for a statutory prohibition for an enactment while determining whether a regulation was enacted within the authority of the enactor? | 05032.docx | LEGALEASE-00078109-LEGALEASE-00078110 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5711 | Miami Nat. Bank v. Knudsen, 300 F.2d 289 | 38+46 | We are asked to construe the Florida Assignment of Accounts Receivable Act. In Florida, as in most states, the legislature has adopted a statute designed to protect non-notification accounts receivable financing. The statute in question, Chapter 524, Florida Statutes, 1957, F.S.A., provides that an assignee may perfect his assignment of accounts receivable by filing a notice of the assignment with the Secretary of State of Florida. The law is silent on the point at issue: is notice-filing under Chapter 524 mandatory and now the exclusive method in Florida for perfection of an assignment of accounts receivable? Or is it optional, an alternative method to perfection of an assignment by actual notice to the account debtors? We hold that the statute establishes a mandatory, exclusive system of perfecting assignments of accounts receivable, and affirm the judgment below for the trustee. | Florida Accounts Receivable Act establishes a mandatory, exclusive system of perfecting assignments of accounts receivable, and failure to file requisite notice with Florida Secretary of State prevented perfection of assignment even though actual notice was given account debtors. F.S.A. SS 524.01 et seq., 524.02, 524.04; Bankr.Act, SS 60, sub. a(1), 101 et seq., 11 U.S.C.A. SS 96, sub. a(1), 501 et seq.; Laws Ala.1949, p. 503, S 7. | Does the Assignment of Accounts Receivable Act establish an exclusive system of perfecting assignments of accounts receivable? | Assignments - Memo 32 JS.docx | ROSS-003281926-ROSS-003281927 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 5712 | Wall v. Airport Parking Co. of Chicago, 41 Ill. 2d 506 | 50+1 | In order to establish a bailorbailee relationship there must be either an express agreement (there is none here) or an agreement by implication, which may be gathered from the circumstances surrounding the transaction, such as the benefits to be received by the parties, their intentions, the kind of property involved, and the opportunities of each to exercise control over the property. There must not only be a delivery of possession, but there must also be an acceptance, either actual or constructive, before there can be a bailment. (8 Am.Jur.2d, Bailments, secs. 56, 57.) Applying these criteria to the facts here we find that the self-parking-lot operator primarily offers spaces for parking with a minimum amount of labor, which presumably is reflected in the fees charged for use of the facilities. There undoubtedly is more protection to the users of the facilities than is afforded by street parking in that the parking lot is fenced, well lighted, attended around the clock by one to five attendants, and is patrolled by the Chicago police squad cars from time to time. But space rather than security is the primary purpose of a self-service parking lot. The motorist is, of course, benefited by having parking space reasonably close to the airport. | In order to establish a bailor-bailee relationship there must be either an express agreement or agreement by implication, which may be gathered from the circumstances surrounding the transaction, such as the benefits to be received by the parties, their intentions, the kind of property involved, and the opportunities of each to exercise control over the property. | Does a bailor-bailee relationship require the existence of a contract? | 004292.docx | LEGALEASE-00116682-LEGALEASE-00116684 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5713 | Vallo v. Gayle Oil Co., 646 So. 2d 859 | 92+966 | The pleadings allowed in civil actions are petitions, exceptions, written motions and answers. LSA"C.C.P. art. 852.10 Therefore, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and supplemental petition or a petition in an incidental demand), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings. | When unconstitutionality of statute is specifically pled, claim must be raised in petition (the original petition, an amended and supplemental petition or petition in an incidental demand), exception, motion or answer; it cannot be raised in memorandum, opposition or brief as those documents do not constitute pleadings. LSA-C.C.P. art. 852. | Can constitutionality of a statute be challenged in a memorandum? | 004453.docx | LEGALEASE-00116578-LEGALEASE-00116579 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 5714 | Hinkle v. Bauer Lumber & Home Bldg. Ctr., 158 W. Va. 492 | 106+40 | Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket. State ex rel. Lynn v. Eddy, Judge, 152 W.Va. 345, 163 S.E.2d 472 (1968). See also, Rule 12(b)(1) and (h)(2), W.Va. R.C.P. | Whenever it is determined that a court has no jurisdiction to entertain subject matter of a civil action, forum court must take no further action in case other than to dismiss it from docket. R.C.P. rule 12(b)(1), (h)(2). | What action must a forum court take when it is determined that a court has no jurisdiction in a matter? | Venue - Memo 9 - RM.docx | LEGALEASE-00002253-LEGALEASE-00002254 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 5715 | CropLife Am. v. E.P.A., 329 F.3d 876 | 1.49E+18 | The disputed directive constitutes a binding regulation that is directly aimed at and enforceable against petitioners. It provides that "the Agency will not consider or rely on any [third-party] human studies in its regulatory decision making." This clear and unequivocal language, which reflects an obvious change in established agency practice, creates a " "binding norm" " that is " "finally determinative of the issues or rights to which it is addressed." " Chamber of Commerce v. United States Dep't of Labor, 174 F.3d 206, 212 (D.C.Cir.1999) (quoting Pacific Gas & Elec. Co. v. FPC, 506 F.2d 33, 38 (D.C.Cir.1974)); see also Gen. Elec. Co. v. EPA, 290 F.3d 377, 383 (D.C.Cir.2002) ("[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding.") (citations omitted). EPA's stated rule is binding on petitioners, who are now barred from relying on third-party human studies (even in cases where such studies formerly were approved), and is binding on the agency because EPA has made it clear that it simply "will not consider" human studies. | Environmental Protection Agency (EPA) directive that was included in agency press release, and that provided that the EPA, contrary to its established practice, would no longer consider or rely on any third-party human studies in its regulatory decisionmaking unless legally required to do so, was in nature of binding regulation, rather than a mere policy statement, which should not have been issued without notice of proposed rulemaking and opportunity for public comment; binding, determinative nature of this directive was not in any way altered by the "unless" clause, which merely contemplated the possibility of successful court challenge to disputed rule. | Will the Environmental Protection Agency (EPA) consider or rely on third party human studies in its regulatory decision making? | Environmental Law - Memo 48 - AKA.doc | ROSS-003285090-ROSS-003285091 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5716 | Envtl. Integrity Project v. E.P.A., 425 F.3d 992 | 1.49E+18 | This Court will uphold EPA's final agency action unless it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. " 706(2)(A) (2000); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); Air Transp. Ass'n of Am. v. FAA, 291 F.3d 49, 53 (D.C.Cir.2002). However, an interpretation of a legislative rule "cannot be modified without the notice and comment procedure that would be required to change the underlying regulation"otherwise, an agency could easily evade notice and comment requirements by amending a rule under the guise of reinterpreting it."Molycorp, Inc. v. EPA, 197 F.3d 543, 546 (D.C.Cir.1999); see also Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579, 586 (D.C.Cir.1997). | Interpretation by Environmental Protection Agency (EPA) of a legislative rule cannot be modified without the notice and comment procedure that would be required to change the underlying regulation; otherwise, an agency could easily evade notice and comment requirements by amending a rule under the guise of reinterpreting it. | Can an interpretation to a regulation given by an agency modified only through the process of notice and comment rulemaking? | Environmental Law - Memo 47 - AKA.doc | LEGALEASE-00002694-LEGALEASE-00002696 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 5717 | Erickson v. Dir., N. Dakota Dep't of Transp., 507 N.W.2d 537 | 48A+144.2(2.1) | An appeal from an administrative hearing officer's decision involving a license suspension under N.D.C.C. " 39-20-04.1 is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. Hammeren v. North Dakota State Highway Com'r, 315 N.W.2d 679, 683 (N.D.1982). This Court examines the record of the administrative agency rather than the findings of the district court. Holler v. Dept. of Transp. Director, 470 N.W.2d 616, 617 (N.D.1991). Since this appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law. See N.D.C.C. "" 28-32-21 and 28-32-19. | Appeal from administrative hearing officer's decision involving license suspension is governed by Administrative Agencies Practices Act. NDCC 28-32-01 et seq., 39-20-04.1. | Does Administrative Agencies Practice Act govern an appeal from administrative hearing officer's decision involving a license suspension? | Administrative Law - Memo 28 - RM.docx | ROSS-003301543-ROSS-003301544 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5718 | Seureau v. ExxonMobil Corp., 274 S.W.3d 206 | 148+1 | A governmental entity may not agree to a contract provision that would limit the free exercise of its governmental powers. See City of Corpus Christi v. Taylor, 126 S.W.3d 712, 719 (Tex.App.-Corpus Christi 2004, pet. withdrawn); Clear Lake City Water Auth. v. Clear Lake Utils. Co., 549 S.W.2d 385, 391 (Tex.1977). The power of eminent domain or condemnation is such a governmental function that cannot be delegated or restricted by contract. See City of Corpus Christi, 126 S.W.3d at 719. Thus, a contract that restricts a governmental entity's freedom to decide whether to initiate eminent domain or condemnation proceedings would be illegal and void. Id. The Port's refusal to waive its eminent-domain powers, then, was appropriate and not inequitable. See id. Thus, we cannot conclude that the Port waived its immunity from suit by simply offering to trade the Hollier tract for the Triangular tract, without waiving its eminent-domain powers. | A contract that restricts a governmental entity's freedom to decide whether to initiate eminent domain or condemnation proceedings would be illegal and void. | What is the effect of a contract that restricts a governmental entity's freedom to decide whether to initiate eminent domain? | Eminent Domain - Memo 24 - AKA.doc | LEGALEASE-00002817-LEGALEASE-00002818 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5719 | Pasternack v. Lab. Corp. of Am. Holdings, 807 F.3d 14 | 272+1692 | The elements of a negligence claim under New York law are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (citing Merino v. New York City Transit Auth., 218 A.D.2d 451, 639 N.Y.S.2d 784 (1st Dep't 1996)). If the defendant owes no duty to the plaintiff, the action must fail. "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." Darby v. Compagnie Nat'l Air France, 96 N.Y.2d 343, 347, 753 N.E.2d 160, 728 N.Y.S.2d 731 (2001). "[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration." Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 585, 634 N.E.2d 189, 611 N.Y.S.2d 817 (1994). | Under New York law, the definition of the existence and scope of an alleged tortfeasor's duty, as element of negligence claim, is usually a legal, policy-laden declaration reserved for judges to make prior to submitting anything to fact-finding or jury consideration. | Is the definition of the existence and scope of an alleged duty a legal issue for the court to resolve? | 005143.docx | LEGALEASE-00116959-LEGALEASE-00116960 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5720 | Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co., 367 F. Supp. 2d 711 | 170B+3053 | Arbitration, of course, is a matter of contract. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). If there is "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration any controversy," the contract falls within the scope of the FAA. 9 U.S.C. " 2. It is undisputed that the MA here concerns a transaction involving interstate commerce. | Arbitration is a matter of contract; if there is a written provision in a contract evidencing a transaction involving commerce to settle by arbitration any controversy, the contract falls within the scope of the Federal Arbitration Act (FAA). 9 U.S.C.A. S 1 et seq. | How is it determined whether a written provision in a contract to settle by arbitration falls within the scope of the Federal Arbitration Act (FAA)? | 005212.docx | LEGALEASE-00116869-LEGALEASE-00116870 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 5721 | Sokol Holdings v. BMB Munai, 542 F.3d 354 | 25T+112 | Defendants' main argument is that Sokol, being a signatory to an arbitration contract, should be estopped from refusing the demand of BMB, a nonsignatory, to arbitrate Sokol's claims against the BMB defendants because those claims are "intertwined" with the arbitration contract (the Emir Contract) from which the dispute arises. It is black letter law that an obligation to arbitrate can be based only on consent. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.2003) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." (internal citation and quotation marks omitted)); accord Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir.2002) ("An agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems"an openness this country has been committed to from its inception."). Persons are generally entitled to have their dispute settled by the ruling of a court of law. Cf. Tice v. Am. Airlines, Inc., 162 F.3d 966, 968 (7th Cir.1998) ("It is a fundamental principle of American law that every person is entitled to his or her day in court."). It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration. Most frequently such a commitment is made either by entering into an agreement to arbitrate or by entering into a relationship which is governed by an agreement to arbitrate. | Persons are generally entitled to have their dispute settled by ruling of court of law, and it is essentially only by making commitment to arbitrate that one gives up this right of access to court of law in favor of arbitration. | How does a person give up the right to access the court of law in favor of arbitration? | Alternative Dispute Resolution - Memo 113 - JS.docx | ROSS-003284832-ROSS-003284833 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5722 | Sokol Holdings v. BMB Munai, 542 F.3d 354 | 25T+112 | Defendants' main argument is that Sokol, being a signatory to an arbitration contract, should be estopped from refusing the demand of BMB, a nonsignatory, to arbitrate Sokol's claims against the BMB defendants because those claims are "intertwined" with the arbitration contract (the Emir Contract) from which the dispute arises. It is black letter law that an obligation to arbitrate can be based only on consent. See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.2003) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." (internal citation and quotation marks omitted)); accord Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir.2002) ("An agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems"an openness this country has been committed to from its inception."). Persons are generally entitled to have their dispute settled by the ruling of a court of law. Cf. Tice v. Am. Airlines, Inc., 162 F.3d 966, 968 (7th Cir.1998) ("It is a fundamental principle of American law that every person is entitled to his or her day in court."). It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration. Most frequently such a commitment is made either by entering into an agreement to arbitrate or by entering into a relationship which is governed by an agreement to arbitrate. | Persons are generally entitled to have their dispute settled by ruling of court of law, and it is essentially only by making commitment to arbitrate that one gives up this right of access to court of law in favor of arbitration. | How can one give up the right of access to a court of law in favor of arbitration? | Alternative Dispute Resolution - Memo 98 - JS.docx | ROSS-003298151-ROSS-003298153 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5723 | Shearson/Am. Exp. v. McMahon, 482 U.S. 220 | 25T+113 | The Arbitration Act thus establishes a "federal policy favoring arbitration," Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that "we rigorously enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, supra, 470 U.S., at 221, 105 S.Ct., at 1242. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals" should inhibit enforcement of the Act " "in controversies based on statutes." " 473 U.S., at 626-627, 105 S.Ct., at 3354, quoting Wilko v. Swan, supra, 346 U.S., at 432, 74 S.Ct., at 185. Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds "for the revocation of any contract," " 473 U.S., at 627, 105 S.Ct., at 3354, the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." Ibid. | Arbitration Act establishes federal policy favoring arbitration, requiring that courts rigorously enforce arbitration agreements, and courts' duty is not diminished when party bound by agreement raises claim founded on statutory rights. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) establish a federal policy favoring arbitration? | 004884.docx | LEGALEASE-00117144-LEGALEASE-00117146 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5724 | Circuit City Stores v. Adams, 279 F.3d 889 | 25T+134(1) | Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2 (emphasis added). In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, although "courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions," general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). | Pursuant to Federal Arbitration Act (FAA) provision that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract, federal courts determining the validity of an agreement to arbitrate should apply ordinary state-law principles that govern the formation of contracts; thus, although courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions, general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. 9 U.S.C.A. S 2. | Under state law can courts invalidate an arbitration agreement? | 004931.docx | LEGALEASE-00117177-LEGALEASE-00117179 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 5725 | Hooters of Am. v. Phillips, 39 F. Supp. 2d 582 | 25T+137 | "Although the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements, and questions of arbitrability must be addressed with regard for the policy, the Act leaves the interpretation of an agreement to the application of common law principles of contract law."Whiteside v. Teltech Corp., 940 F.2d 99 (4th Cir.1991). Moreover, an "[a]rbitration provision's scope and meaning is for the court to resolve." Brown v. Trans World Airlines, 127 F.3d 337 (4th Cir.1997). Here Phillips asserts that interpretation of the Hooters arbitration agreement and Rules proves they are an unconscionable contract of adhesion, and therefore, unenforceable as a matter of common law contract law. Hooters disputes Phillips' interpretation of some of the Rules provisions, which has compelled this court to undertake the perplexing task of interpreting the agreement and Rules provisions. | Although Federal Arbitration Act (FAA) manifests liberal federal policy favoring arbitration agreements, and questions of arbitrability must be addressed with regard for policy, FAA leaves interpretation of agreement to application of common law principles of contract law. 9 U.S.C.A. S 1 et seq. | How does the Federal Arbitration Act interpret an arbitration agreement? | 004934.docx | LEGALEASE-00117180-LEGALEASE-00117182 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 5726 | Tri-Cty. Landfill Co. v. Illinois Pollution Control Bd., 41 Ill. App. 3d 249 | 1.49E+19 | While more evidence could have been introduced as to the potential economic hardship to the petitioners and to the surrounding communities if the Board orders are sustained, it must be remembered that the burden of proof as to unreasonable hardship is on the petitioners, not upon the agency (Illinois Revised Statutes, 1975, ch. 111 1/2, par. 31; Processing and Books, Inc. v. Pollution Control Board (1976), Ill., 351 N.E.2d 865, and the Board, in order to make a valid determination that a violation has been committed, is not required to make an unfavorable finding as to each Section 33(c) factor (Sangamo Construction Co. v. Pollution Control Board (1975), 27 Ill.App.3d 949, 328 N.E.2d 571.) Yet at no time in the proceedings below did the petitioners suggest that the evidence as to these factors was insufficient, seek to introduce additional evidence as to these matters or request that proper findings be made. How insignificant this whole issue was to the parties is demonstrated by the fact that it was not raised by Tri-County as all on appeal and was raised only in passing by Elgin. | State Pollution Control Board, in order to make valid determination that violation of Environmental Protection Act has been committed, is not required to make unfavorable finding as to each factor listed in statute. S.H.A. ch. 1111/212, S 1033(c). | Is an unfavorable finding under each Section 33(c) factor of the Environmental Protection Act required to make a valid determination that a violation has occured? | 005035.docx | LEGALEASE-00117219-LEGALEASE-00117220 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5727 | Letsinger v. Drury Coll., 68 S.W.3d 408 | 233+501 | Here, unlike most cases, there are disputes about whether a landlord-tenant relationship exists and, if so, who was a tenant and who was a landlord. The relation of landlord and tenant is that which "arises from a contract by which one person occupies the real estate of another with his permission and in subordination to his rights[.]" Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947, 954 (1935). The essentials of a landlord-tenant relationship are: (1) a reversion in the landlord; (2) the creation of an estate in the tenant either at will or for a term less than that which the landlord holds; (3) the transfer of exclusive possession and control of the premises, or a portion thereof, to the tenant; and (4) a contract, either express or implied, between the parties. Hill v. Eads, 970 S.W.2d 882, 883 (Mo.App.1998); Friend v. Gem International, Inc., 476 S.W.2d 134, 137"38 (Mo.App.1971). | Essentials of a landlord-tenant relationship are: (1) a reversion in the landlord; (2) the creation of an estate in the tenant either at will or for a term less than that which the landlord holds; (3) the transfer of exclusive possession and control of the premises, or a portion thereof, to the tenant; and (4) a contract, either express or implied, between the parties. | How is a landlord-tenant relationship created? | 005083.docx | LEGALEASE-00117237-LEGALEASE-00117238 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 5728 | Kelly v. St. Mary Hosp., 778 A.2d 1224 | 272+202 | In order to establish a claim of negligence the plaintiff has the burden of proving four elements: 1) a duty or obligation recognized by law; 2) a breach of that duty; 3) a causal connection between the conduct and the resulting injury; and 4) actual damages. Pittsburgh National Bank v. Perr, 431 Pa.Super. 580, 637 A.2d 334, 336 (1994). In finding that Appellant failed to establish a prima facie case of negligence the trial court stated:Because Plaintiff failed to adduce any evidence whatsoever that St. Mary Hospital was using unsafe or defective equipment or that the hospital staff breached the applicable standard of care, her claims necessarily failed.Trial Court Opinion, 12/11/00, at 18. | In order to establish a claim of negligence, the plaintiff has the burden of proving four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. | What are the elements that a plaintiff must establish to prevail in a negligence action? | 005131.docx | LEGALEASE-00117244-LEGALEASE-00117245 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 5729 | Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma, 636 F.3d 562 | 25T+200 | So long as the parties have not specifically agreed to submit the arbitrability question itself to arbitration (i.e., to arbitrate arbitrability), a court will decide independently whether the merits of the parties' dispute is arbitrable. First Options of Chicago v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." Id. at 942, 115 S.Ct. 1920. | So long as parties have not specifically agreed to submit arbitrability question itself to arbitration, i.e., to arbitrate arbitrability, court will decide independently whether merits of parties' dispute is arbitrable; thus, party who has not agreed to arbitrate will normally have right to court's decision about merits of its dispute. | "When parties have agreed to arbitrate can courts decide the merits of a dispute, which parties have not agreed to arbitrate?" | 004864.docx | LEGALEASE-00117126-LEGALEASE-00117127 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 5730 | Straube v. Bowling Green Gas Co., 360 Mo. 132 | 317A+146 | "The Public Service Commission is an administrative body only, and not a court, and hence the commission has no power to exercise or perform a judicial function, or to promulgate an order requiring a pecuniary reparation or refund." State ex rel. Laundry, Inc., v. Public Service Commission, 327 Mo. 93, 34 S.W.2d 37, 46; May Dept. Stores Co. v. Union Electric Light & Power Co., 341 Mo. 299, 107 S.W.2d 41, 57; State ex rel. Rutledge v. Public Service Commission, 316 Mo. 233, 289 S.W. 785, 787. "The commission "has no power to declare or enforce any principle of law or equity" * * * and as a result it cannot determine damages or award pecuniary relief.' American Petroleum Exchange v. Public Service Commission, Mo.Sup., 172 S.W.2d 952, 955. | Public Service Commission is an administrative body only, and it has no power to exercise or perform a judicial function, or to promulgate an order requiring a pecuniary reparation or refund, and has no power to declare or enforce any principle of law or equity, and cannot determine damages. V.A.M.S. SS 393.110 et seq., 393.130; V.A.M.S. Const. art. 5, SS 1, 14. | Can a Public Service Commission promulgate an order requiring a pecuniary reparation or refund? | Administrative Law - Memo 157 - RK.docx | ROSS-003285426-ROSS-003285428 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 5731 | Coggins v. Gregorio, 97 F.2d 948 | 233+501 | To constitute the relation of landlord and tenant these elements must be present: Permission or consent on the part of the landlord, subordination to the landlord's title and rights on the part of the tenant, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract either express or implied between the parties. | To constitute the relation of "landlord and tenant" there must be permission or consent on the part of the landlord, subordination of the tenant to the landlord's title and rights, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract express or implied. | Can a Landlord and Tenant relationship be created by an express or implied contract? | Landlord and Tenant - Memo 19 - RK.docx | ROSS-003282427-ROSS-003282428 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 5732 | Robert Lawrence Co. v. Devonshire Fabrics, 271 F.2d 402 | 25T+113 | Finally, an doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars. Such policy has been consistently reiterated by the federal courts and we think it deserves to be heartily endorsed.See Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583; Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., supra, 2 Cir., 126 F.2d 978; Signal-Stat Corp. v. Local 475, 2 Cir., 1956, 235 F.2d 298, certiorari denied 1957, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428. See also Wabash R. Co. v. American Refrigerator Transit Co., 8 Cir., 1925, 7 F.2d 335, 351, certioari denied 1926, 270 U.S. 643, 46 S.Ct. 208, 70 L.Ed. 776. | Any doubts as to construction of Arbitration Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with original intention of parties and to help ease congestion of court calendars. 9 U.S.C.A. SS 2, 3. | How do courts resolve a dispute when there is doubt as to the construction of the Arbitration Act? | 004921.docx | LEGALEASE-00117387-LEGALEASE-00117388 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5733 | Matter of Head, 204 B.R. 1022 | 315+40 | A chose in action is "a personal right to demand money or property by an action." Peavy Lumber Co., 130 So.2d at 340. The term includes an infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action. Sheldon v. Sill, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850). For example, a chose in action includes (i) money due under a contract, Peavy Lumber Co., 130 So.2d at 341, (ii) damages arising from a breach of a contract, Merchants Nat'l Bank of Mobile v. Ching, 681 F.2d 1383, 1389 (11th Cir.1982), (iii) a check, Tillery v. State, 44 Ala.App. 369, 209 So.2d 432, 435 (1968), (iv) an interest in a pension and profit-sharing plan, In re Wilson, 56 B.R. 693, 696 (Bankr.M.D.Ala.1986), and (v) the right to receive payment under an insurance contract and the proceeds from such policy, see Robinson v. Eppes, 252 Ala. 242, 40 So.2d 326, 327 (1949). Additionally, intangible personal property like instruments and securities for the payment of money such as bonds and promissory notes, book entry accounts, an interest in an insurance policy, judgments, and shares of stock are within the perimeters of what is a chose in action. Maricopa County v. Trustees of Arizona Lodge No. 2., 52 Ariz. 329, 80 P.2d 955 (1938). | Under Alabama law, "chose in action" is personal right to demand money or property by action, and includes infinite variety of contracts, covenants, and promises which confer on one party right to recover personal chattel or sum of money from another by action. | Can a thing in action be termed as a right to demand money or property? | 005151.docx | LEGALEASE-00117357-LEGALEASE-00117359 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5734 | State Tax Comm'n v. Shor, 43 N.Y.2d 151 | 83T+8 | The ownership interest of a tenant-shareholder in a co-operative apartment is sui generis. It reflects only an ownership of a proprietary lease, and therefore arguably an interest in a chattel real, conditional however upon his shareholder interest in the co-operative corporation, an interest always treated as personal property. The leasehold and the shareholding are inseparable. For some special purposes, the real property aspect may predominate (see Grenader v. Spitz, 2 Cir., 537 F.2d 612, 617-620, cert. den. 429 U.S. 1009, 97 S.Ct. 541, 50 L.Ed.2d 619; cf. United Housing Foundation v. Forman, 421 U.S. 837, esp. 854-860, 95 S.Ct. 2051, 44 L.Ed.2d 621, reh. den. 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115). But, where priorities of judgment creditors are involved, the stock certificate and lease involved in the typical co-operative apartment transaction fit better, legally and pragmatically, although with imperfect linguistic formulation, into the statutory framework governing personal property. Since a co-operative apartment leasehold, inseparable from co-operative shares, is not a chattel real for purposes of CPLR 5203, Fidelity did not obtain a lien merely upon docketing its judgment. | The ownership interest of a tenant shareholder in a cooperative apartment is sui generis; it reflects only an ownership of a proprietary lease and, therefore, arguably an interest in a chattel real which is, however, conditional on the tenant shareholder's interest in the cooperative corporation, an interest always treated as personal property. | Is a cooperative apartment personal property or real property? | Property - Memo 16 - JS.docx | ROSS-003285435-ROSS-003285437 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5735 | Groce v. Dep't of Envtl. Prot., 921 A.2d 567 | 1.49E+20 | Where a DEP decision is appealed to the EHB, the EHB is required to conduct a hearing de novo to determine whether the evidence taken by the EHB can sustain the DEP's decision. Pennsylvania Trout v. Department of Environmental Protection, 863 A.2d 93 (Pa.Cmwlth.2004). Hearsay evidence, properly objected to, is not competent evidence to support a finding in administrative proceedings. Rox Coal Company v. Workers' Compensation Appeals Board (Snizaski), 570 Pa. 60, 807 A.2d 906 (2002). Parties have a right to cross examination under the Administrative Agency Law28 and the EHB's Rules.29 The rules of evidence relating to administrative agencies in admitting or excluding evidence are liberal, and exclusion alone may not constitute procedural defect. Leeward Construction, Inc. v. Department of Environmental Protection, 821 A.2d 145 (Pa.Cmwlth.2003). | Where a Department of Environmental Protection (DEP) decision is appealed to the Environmental Hearing Board (EHB), the EHB is required to conduct a hearing de novo to determine whether the evidence taken by the EHB can sustain the DEP's decision. | Is the Environmental Hearing Board (EHB) required to conduct a hearing de novo where a Department of Environmental Protection (DEP) decision is appealed to the EHB? | Environmental Law - Memo 79 - MS.docx | ROSS-003288246-ROSS-003288247 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5736 | Cummings v. Gen. Motors Corp., 365 F.3d 944 | 313A+119 | We review the district court's denial of the Cummings' motion for judgment as a matter of law as to GM's defense of misuse de novo, although as above noted we are limited to determining whether the Cummings are entitled to a new trial. Under Oklahoma law, to establish a manufacturer's product liability, a plaintiff must prove that (1) "the product was the cause of the injury," (2) the defect existed in the product "at the time the product left the manufacturer's possession and control," and (3) "the defect made the article unreasonably dangerous." Kirkland v. Gen. Motors Corp., 521 P.2d 1353, 1363 (Okla.1975). However, where a plaintiff is using a product for a purpose for which it was not intended, and is injured, the plaintiff may not recover. Id. at 1366. Misuse of a product is a "defense subject to being pleaded and proved by defendant." Stewart v. Scott"Kitz Miller Co., 626 P.2d 329, 331 (Okla.App.1981). "Abnormal or misuse of a product occurs where the method of using a product is not that which the maker intended or is a use that could not reasonably be anticipated by a manufacturer." Treadway v. Uniroyal Tire Co., 766 P.2d 938, 941 (Okla.1988). Oklahoma has drawn a distinction between "use for an abnormal purpose" or misuse, and "use for a proper purpose but in a careless manner." Id. Use for a proper purpose but in a careless manner is considered contributory negligence, id., and contributory negligence is not a defense to a products liability claim, Fields v. Volkswagen of Am., Inc., 555 P.2d 48, 56 (Okla.1976). | Under Oklahoma law, to establish a manufacturer's product liability, a plaintiff must prove that (1) the product was the cause of the injury, (2) the defect existed in the product at the time the product left the manufacturer's possession and control, and (3) the defect made the article unreasonably dangerous. | What are the elements to prove a claim of manufacturer's product liability? | 000636.docx | LEGALEASE-00117878-LEGALEASE-00117880 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5737 | Skolnick v. Martin, 32 Ill. 2d 55 | 302+2 | The statute here authorizes dismissal where another action is pending without distinguishing between actions pending in another jurisdiction. Had it been intended to restrict the authority to dismiss to situations where the other cause of action was pending in our own jurisdiction, it would have been a simple matter to do so. Furthermore, the Civil Practice Act was designed to eliminate the formalized rules of common-law pleading and to provide a procedure whereby substantive rights could be determined with a minimum of delay, technicality and expense. (Scott v. Freeport Motor Casualty Co., 392 Ill. 332, 64 N.E.2d 542.) Indeed, it is the express direction of section 4 that the act shall be liberally construed to the end that controversies may be speedily and finally determined. (Ill.Rev.Stat.1961, chap. 110, par. 4.) Certainly the elimination of repetitious suits and the relief of courts and litigants alike from the unnecessary burden of trying the same issues pending in another action are consistent with the purpose and spirit of the Civil Practice Act, and it can hardly be said that actions for the same cause filed in the Federal courts or those of our sister States are less repetitious or burdensome than those filed within our own jurisdiction. | The Civil Practice Act was designed to eliminate formalized rules of common-law pleading and to provide a procedure whereby substantive rights could be determined with a minimum of delay, technicality and expense. | Does the Civil Practice Act eliminate the common law practice of pleading? | 000855.docx | LEGALEASE-00117887-LEGALEASE-00117888 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5738 | Grand Traverse Band of Ottawa & Chippewa Indians v. Office of U.S. Atty. for W. Div. of Michigan, 369 F.3d 960 | 209+104 | A prominent treatise on federal Indian law states that federal recognition of a tribe requires (1) a legal basis for recognition (i.e. Congressional or Executive action) and (2) the empirical indicia of recognition, namely, a "continuing political relationship with the group, such as by providing services through the Bureau of Indian Affairs." Cohen, Handbook of Federal Indian Law 6 (1982). The First Circuit adopted Professor Cohen's test for tribal recognition in Mashpee Tribe v. Sec'y of the Interior, 820 F.2d 480, 484 (1st Cir.1987) (Breyer, C.J.). See also W. Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1056 (10th Cir.1993) ( "Historically, the federal government has treated a tribe as "recognized" if Congress or the President has created a reservation for the group and the United States has a continuing political relationship with the group.") (citing Cohen, supra, at 6). The implication of Professor Cohen's two-part test, which we adopt today, is that the empirical acts that are tantamount to the termination of tribal recognition are analytically distinct from the legality of those acts, just as the empirical act of terminating an individual's employment (e.g., being told to leave the workplace and never to return) is distinct from the legality of that act (e.g., a breach of contract) | Federal recognition of a tribe requires: (1) a legal basis for recognition, i.e. Congressional or Executive action, and (2) the empirical indicia of recognition, namely, a continuing political relationship with the group, such as by providing services through the Bureau of Indian Affairs. | How can an Indian tribe be federally recognized? | Indians - Memo 6 - JS.docx | LEGALEASE-00004966-LEGALEASE-00004968 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5739 | Palazzolo v. Mire, 10 So. 3d 748 | 76D+21 | The focus in any dispute over custody is on the best interest of the child. La. C.C. art. 131 (which provides that "the court shall award custody of a child in accordance with the best interest of the child.") Because the trial judge is in the best position to ascertain the best interest of the child based on the particular circumstances of the particular case, the trial court's custody determination is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion. McKenzie v. Cuccia, 04"0112, p. 3"4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338 (citing Thompson v. Thompson, 532 So.2d 101 (La.1988)). Every child custody case must be viewed within its own particular set of facts. McKenzie, supra. Each case must be viewed in light of the child's age, the situation of the parents, and any other factor relevant to the particular case.White v. Kimrey, 37,408, p. 7 (La.App. 2 Cir. 5/14/03), 847 So.2d 157, 161. It is a well-recognized tenet in Louisiana jurisprudence that an award of child custody is not a tool to regulate human behavior. Everett v. Everett, 433 So.2d 705, 708 (La.1983) | Every child custody case must be viewed within its own particular set of facts; each case must be viewed in light of the child's age, the situation of the parents, and any other factor relevant to the particular case. LSA-C.C. art. 131. | Should every child custody case be viewed within its own particular set of facts? | 000894.docx | LEGALEASE-00118182-LEGALEASE-00118183 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5740 | Modine Mfg. Co. v. Pollution Control Bd., 193 Ill. App. 3d 643 | 149E+678 | Section 33(b) of the Act provides that in enforcement actions the final order of the PCB "may include a direction to cease and desist from violations of the Act or of the Board's rules and regulations or of any permit or term or condition thereof, and/or the imposition by the Board of civil penalties in accord with Section 42 of this Act." (Ill.Rev.Stat.1987, ch. 111", par. 1033(b).) Section 42 provides for a civil penalty not to exceed $10,000 for each violation and an additional penalty not to exceed $1,000 for each day during which the violation continues. (Ill.Rev.Stat.1987, ch. 111", par. 1042.) The legislature has vested the PCB with broad discretionary powers in the imposition of civil penalties, and its order will not be disturbed upon review unless it is clearly arbitrary, capricious or unreasonable. City of Freeport v. Pollution Control Board (1989), 187 Ill.App.3d 745, 750, 135 Ill.Dec. 644, 544 N.E.2d 1. | Legislature has vested the Pollution Control Board with broad discretionary powers in the imposition of civil penalties, and its order will not be disturbed upon review unless it is clearly arbitrary, capricious, or unreasonable. S.H.A. ch. 1111/212, P 1033(b). | Does the Pollution Control Board (PCB) have broad discretionary powers in imposing civil penalties? | 06675.docx | LEGALEASE-00080954-LEGALEASE-00080955 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5741 | Johnson Controls v. City of Cedar Rapids, Iowa, 713 F.2d 370 | 25T+113 | When a party to an interstate contract invokes the Arbitration Act to enforce a putative arbitration clause within that contract, the court's review is limited to two issues: (1) whether an express written agreement to arbitrate the subject matter of the present dispute exists between the parties, and (2) if so, whether the agreement to arbitrate has been breached. National R.R. Passenger Corp. v. Missouri Pacific R.R., 501 F.2d 423, 427 (8th Cir.1974). In addressing each issue, the court must apply federal substantive law, although applicable non-discriminatory state law may provide a helpful reference in formulating the federal rule of decision. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). See United States v. Kimbell Foods, Inc., 440 U.S. 715, 728"29, 99 S.Ct. 1448, 1458"59, 59 L.Ed.2d 711 (1979) (relying on state law to give content to the federal rule of decision). The court must also be guided by "the liberal federal policy favoring arbitration" in contracts governed by the Arbitration Act. Moses H. Cone Memorial Hospital, 103 S.Ct. at 941. Thus, any doubts about the construction or breach of the putative arbitration provision are to be resolved in favor of ordering arbitration. Id.; National R.R. Passenger Corp., 501 F.2d at 428. | In determining whether putative arbitration clause requires arbitration of given subject, Court of Appeals must be guided by liberal federal policy favoring arbitration in contract governed by federal Arbitration Act, and any doubts about construction or breach of putative arbitration provision are to be resolved in favor of ordering arbitration. 9 U.S.C.A. S 4. | How do courts resolve doubts regarding the construction of a putative arbitration provision? | 001148.docx | LEGALEASE-00118385-LEGALEASE-00118386 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 5742 | Town of Oronoco v. City of Rochester, 293 Minn. 468 | 148+1 | The exigencies of the present matter, however, illustrate the core of wisdom in that general rule and the danger in too readily assuming enlightenment where none in fact may exist in the implementation of a particular local zoning policy. Therefore, we adopt a balancing-of-public-interests test for the resolution of conflicts which arise between the exercise by governmental agencies of their police power and their right of eminent domain. This is preferable to adherence to a less flexible "general rule" based simply on the form of the opposing parties rather than the substance of their conflict. | Balancing-of-public-interests test is adopted for resolution of conflicts which arise between exercise by governmental agencies of their police power and their right of eminent domain. | What test does the court adopt for resolving the conflicts between the exercise by governmental agencies of their police power and their right of eminent domain? | 001265.docx | LEGALEASE-00118342-LEGALEASE-00118343 | Order, SA, Sub | 0.69 | 1 | 0 | 1 | 1 | 1 |
| 5743 | Terada v. Eli Lilly & Co., 2015 IL App (5th) 140170 | 401+2 | The second factor in determining transactional venue"where the cause of action springs into existence"considers, among other things, where " "any significant negotiations were carried on between the parties, where an agreement was signed, the placewhere it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving." " Williams v. Illinois State Scholarship Comm'n, 139 Ill.2d 24, 68, 150 Ill.Dec. 578, 563 N.E.2d 465 (1990) (quoting People ex rel. Carpentier v. Lange, 8 Ill.2d 437, 441, 134 N.E.2d 266 (1956)). | Second factor in determining transactional venue-where the cause of action springs into existence-considers, among other things, where any significant negotiations were carried on between the parties, where an agreement was signed, the place where itwas, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving. S.H.A. 735 ILCS 5/2-101. | What do the courts look for when considering where the cause of action arose in determining transactional venue? | 05863.docx | LEGALEASE-00080894-LEGALEASE-00080896 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5744 | Dawdy v. Union Pac. R.R. Co., 207 Ill. 2d 167 | 401+52(1) | However, the plaintiff's choice of forum is not entitled to the same weight or consideration in all cases. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255"56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981). "Similarly, when the site of the accident or injury is chosen, the choice is convenient because the litigation has the aspect of being "decided at home." " Guerine, 198 Ill.2d at 518, 261 Ill.Dec. 763, 764 N.E.2d 54; see Brummett v. Wepfer Marine, Inc., 111 Ill.2d 495, 499"500, 95 Ill.Dec. 841, 490 N.E.2d 694 (1986). "When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."Piper, 454 U.S. at 256, 102 S.Ct. at 266, 70 L.Ed.2d at 436; see McClain v. Illinois Central Gulf R.R. Co., 121 Ill.2d 278, 289, 117 Ill.Dec. 207, 520 N.E.2d 368 (1988); Bland, 116 Ill.2d at 227"28, 107 Ill.Dec. 236, 506 N.E.2d 1291 (collecting cases). Indeed, as a panel of our appellate court has observed:"[W]hen the plaintiff is foreign to the forum chosen and the action that gives rise to the litigation did not occur in the chosen forum, this assumption [of convenience] is no longer reasonable. Instead, it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules." Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co., 329 Ill.App.3d 189, 196, 263 Ill.Dec. 698, 768 N.E.2d 779 (2002).We agree. | When the plaintiff is foreign, assumption that his or her choice is convenient is much less reasonable, for purposes of applying the doctrine of forum non conveniens; because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference. S.H.A. 735 ILCS 5/2-101. | Does a plaintiffs choice of forum deserve less deference when the plaintiff is foreign to his chosen forum? | 001653.docx | LEGALEASE-00118451-LEGALEASE-00118453 | Condensed, Order, SA, Sub | 0.79 | 1 | 1 | 1 | 1 | 1 |
| 5745 | Schattner v. Girard, 668 F.2d 1366 | 25T+138 | A party whose claims have been decided in arbitration may not then bring the same claims under new labels. E.g., Goldstein v. Doft, 236 F.Supp. 730, 734 (S.D.N.Y. 1964), aff'd, 353 F.2d 484 (2d Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966). The same is true of claims that should have been submitted to arbitration, even if they were not actually heard, for any other rule would allow parties to split their causes of action. See Brotherhood of Railroad Trainmen v. Atlantic Coast Line R. Co., 383 F.2d 225, 227 (D.C. Cir. 1967), cert. denied, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). Although claims will not be barred unless they come within the scope of an arbitration agreement, see Davis v. Chevy Chase Financial Ltd., No. 80-1297 (D.C. Cir. October 15, 1981), the "strong federal policy in favor of voluntary commercial arbitration" requires that we not read the scope of such agreements too narrowly. Hanes Corp v. Millard, 531 F.2d 585, 597 (D.C. Cir. 1976). | Although claims will not be barred unless they come within scope of an arbitration agreement, the strong federal policy in favor of voluntary commercial arbitration requires that the scope of such agreements not be read too narrowly. | Is there a strong federal policy in favor of voluntary commercial arbitration? | 001706.docx | LEGALEASE-00118750-LEGALEASE-00118752 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 5746 | Thun v. City of Bonney Lake, 164 Wash. App. 755 | 148+277 | The federal "final decision" requirement "follows from the principle that only a regulation that "goes too far" results in a taking." Suitum, 520 U.S. at 734, 117 S.Ct. 1659 (quoting Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). "A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes." MacDonald, Sommer, & Frates v. Yolo County, 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) (quoting Pennsylvania Coal Co., 260 U.S. at 415, 43 S.Ct. 158). The United States Supreme Court has repeatedly found the "final decision" requirement not satisfied where there is some uncertainty as to how the challenged regulations apply to the property at issue, and where the uncertainty could be solved by an application for a building permit or variance. See Suitum, 520 U.S. at 735"38, 117 S.Ct. 1659. | The federal final decision requirement for ripeness of a takings claim follows from the principle that only a regulation that "goes too far" results in a taking; a court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 16. | Is there a requirement following the principle that only a regulation that goes too far results in a taking? | Eminent Domain -Memo 77 - VP.docx | LEGALEASE-00006728-LEGALEASE-00006729 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5747 | Com. v. Casanova, 429 Mass. 293 | 203+510 | At common law, a defendant could not be prosecuted for murder unless his victim died within a year and a day of the act inflicting injury. See Commonwealth v. Lewis, 381 Mass. 411, 413-414, 409 N.E.2d 771 (1980), cert. denied sub nom. Phillips v. Massachusetts, 450 U.S. 929, 101 S.Ct. 1386, 67 L.Ed.2d 360 (1981); 4 W. Blackstone, Commentaries; 4 H. Broom, Commentaries on the Laws of England 235-236 (1869) ("no person shall be adjudged by any act whatever to have killed another, if that other does not die within a year and a day after the stroke received, or cause of death administered"). Otherwise, the loss of life would be attributed to natural causes rather than the distant act inflicting injury. R.M. Perkins & R.N. Boyce, Criminal Law 46 (3d ed. 1982). This requirement envisioned that the death must be shown to be "sufficiently connected with the act." 3 W. Holdsworth, A History of English Law 315 (3d ed. 1923). See 1 W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law " 3.12(i), at 421 (1986) ( "[t]he difficulty in proving that the blow caused the death after so long an interval was obviously the basis of the rule"); 3 E. Coke, Third Institute (if the person alleged to have been murdered died after a year and a day "it cannot be discerned, as the law presumes, whether he died of a stroke or poison, & c, or of a natural death; and in the case of life, the rule of law ought to be certain").1 In 1980, after a complete review of the history, rationale, and current status of the rule, we abolished it, deeming it "anachronistic upon a consideration of the advances of medical and related science in solving etiological problems as well as in sustaining or prolonging life in the face of trauma or disease." Lewis, supra at 414-415, 409 N.E.2d 771 | At common law, a defendant could not be prosecuted for murder unless his victim died within a year and a day of the act inflicting injury. | Can a defendant be prosecuted for murder or homicide if the victim died after a year and a day of the act inflicting injury? | 001556.docx | LEGALEASE-00118987-LEGALEASE-00118989 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5748 | Morrison v. Labor and Indus. Relations Com'n, 23 S.W.3d 902 | 289+501 | A partnership agreement can be in written form, expressed orally, or implied from the acts and conduct of the parties. Meyer, 949 S.W.2d at 82. In the absence of a written contract creating a partnership, a partnership can be implied only if "the purported partners... have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence [.]" Shea v. Helling, 826 S.W.2d 419, 421 (Mo.App. E.D.1992) (quoting Brotherton v. Kissinger, 550 S.W.2d 904, 907 (Mo.App.1977)(emphasis added); Wirth v. Wirth, 646 S.W.2d 394, 396 (Mo.App. S.D.1983). The intent of the parties is the primary criterion for determining whether a partnership relationship exists. Meyer, 949 S.W.2d at 82. The requisite intent is satisfied by an intent to enter a relationship which in law constitutes a partnership rather than an intent to form a partnership. Id.; Fischer v. Brancato, 937 S.W.2d 379, 382 (Mo.App. E.D.1996); Arnold v. Erkmann, 934 S.W.2d 621, 630 (Mo.App. E.D.1996); Schreibman v. Zanetti, 909 S.W.2d 692, 701 (Mo.App. W.D.1995). This intent is determined at the time of formation. Fischer, 937 S.W.2d at 383. | In the absence of a written contract creating a partnership, a partnership can be implied only if the purported partners have made a definite and specific agreement proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence. | What evidence is required to prove the existence of a partnership when there is no written partnership agreement? | 001565.docx | LEGALEASE-00118963-LEGALEASE-00118964 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5749 | Arnold v. Universal Oil Land Co., 45 Cal. App. 2d 522 | 157+48 | It is too elemental to need the citation of supporting authorities, that a demurrer admits the truth of all of the well pleaded allegations of a complaint, subject to the exception hereafter mentioned. It is also equally well settled that the courts must take judicial notice of the public and private official acts of the legislative, executive, and judicial departments of this state and of the United States government (Code Civ.Proc., " 1875); that judicial notice must be taken of the records of the General Land Office of the United States (Southern Pacific Co. v. Lipman, 148 Cal. 480, 83 P. 445) and of regulations of the Department of the Interior (Whittaker v. Pendola, 78 Cal. 296, 20 P. 680); that the judicial notice comes to the aid of a pleading when such aid is necessary (Ohm v. City and County of San Francisco, 92 Cal. 437, 28 P. 580); that facts alleged, which are contrary to those facts of which judicial notice is taken, cannot be regarded as true. French v. Senate of California, 146 Cal. 604, 80 P. 1031, 69 L.R.A. 556, 2 Ann.Cas. 756; Fey v. Rossi Improvement Co., 23 Cal.App. 766, 139 P. 908; Sheehan v. Vedder, 108 Cal.App. 419, 292 P. 175; Livermore v. Beal, 18 Cal.App.2d 535, 64 P.2d 987, 992. | The courts must take judicial notice of the public and private official acts of the legislative, executive and judicial departments of the State of California and of the United States government, and of records of General Land Office of United States, and of regulations of Department of Interior. Code Civ.Proc. S 1875. | Does judicial notice aid pleading? | Pleading - Memo 65 - ANG.docx | ROSS-003289043-ROSS-003289045 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 5750 | St. Marys v. Auglaize Cty. Bd. of Commrs., 115 Ohio St. 3d 387 | 317A+101 | In sum, where an entity "serves such a substantial part of the public that its rates, charges and methods of operation become a public concern, it can be characterized as a public utility." A & B Refuse Disposers, 64 Ohio St.3d at 388, 596 N.E.2d 423. Because the district possesses these attributes, we hold that the district is a public utility as that term is used in R.C. 5705.44. | Where an entity serves such a substantial part of the public that its rates, charges and methods of operation become a public concern, it can be characterized as a public utility. | "Can an entity serving a substantial part of the public causing its rates, charges and methods of operation to become a public concern, be characterized as a public entity?" | Public utilities - Memo 14 - RM.docx | ROSS-003284976-ROSS-003284977 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 5751 | St. Marys v. Auglaize Cty. Bd. of Commrs., 115 Ohio St. 3d 387 | 317A+101 | One of the most important attributes of a public utility is that it provides "an essential good or service to the general public which has a legal right to demand or receive this good or service." A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees (1992), 64 Ohio St.3d 385, 387, 596 N.E.2d 423; Freight, Inc. v. Northfield Ctr. Bd. of Twp. Trustees (1958), 107 Ohio App. 288, 292"293, 8 O.O.2d 212, 158 N.E.2d 537; Motor Cargo, Inc. v. Richfield Bd. of Twp. Trustees (C.P.1953), 67 Ohio Law Abs. 315, 52 O.O. 257, 117 N.E.2d 224. | One of the most important attributes of a public utility is that it provides an essential good or service to the general public which has a legal right to demand or receive this good or service. | Does a public utility provide essential goods and services to the general public that has the legal right to demand or receive such goods? | Public utilities - Memo 9- RM.docx | ROSS-003287281-ROSS-003287282 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 5752 | Reynolds v. Menard, 365 Ill. App. 3d 812 | 249+20 | Probable cause is defined as " "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." " Johnson v. Target Stores, Inc., 341 Ill.App.3d 56, 72, 274 Ill.Dec. 795, 791 N.E.2d 1206 (2003), quoting Rodgers, 315 Ill.App.3d at 348, 248 Ill.Dec. 160, 733 N.E.2d 835. The state of mind of the one commencing the prosecution, rather than the actual facts of the case, the guilt or innocence of the accused, is at issue. Johnson, 341 Ill.App.3d at 72, 274 Ill.Dec. 795, 791 N.E.2d 1206. "[A] mistake or error that is not grossly negligent will not affect the question of probable cause in an action for malicious prosecution when there is an honest belief by the complainant that the accused is probably guilty of the offense." Johnson, 341 Ill.App.3d at 72, 274 Ill.Dec. 795, 791 N.E.2d 1206. | In action for malicious prosecution, "probable cause" is defined as a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged. | Is actual guilt or innocence of the accused required to establish the probable cause in a malicious prosecution claim? | 001809.docx | LEGALEASE-00118953-LEGALEASE-00118954 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5753 | Hall v. IKEA Property Inc., 171 F.Supp.3d 634 | 302+4 | With respect to premises liability and ordinary negligence claims, Michigan case law holds the following:Courts are not bound by the labels that parties attach to their claims. Manning v. Amerman, 229 Mich.App. 608, 613, 582 N.W.2d 539 (1998). Indeed, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." Adams v. Adams (On Reconsideration), 276 Mich.App. 704, 710"711, 742 N.W.2d 399 (2007). Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. See James v. Alberts, 464 Mich. 12, 18"19, 626 N.W.2d 158 (2001). In the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. Laier v. Kitchen, 266 Mich.App. 482, 493, 702 N.W.2d 199 (2005). If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. James, 464 Mich. at 18"19, 626 N.W.2d 158.Buhalis v. Trinity Continuing Care Servs., 296 Mich.App. 685, 822 N.W.2d 254, 258 (2012) | Under Michigan law, courts are not bound by the labels that parties attach to their claims; the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim. | Is a court bound by the label a party assigns to its claims? | 001874.docx | LEGALEASE-00118885-LEGALEASE-00118886 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5754 | Kelly v. Wolpoff & Abramson, L.L.P., 634 F. Supp. 2d 1202 | 25T+378 | Moreover, I alternatively find that, even assuming Plaintiff had managed to shoehorn this alleged procedural misstep into some particular FDCPA claim, such an effort would have been in vain because the Federal Arbitration Act ("FAA") " "provides the exclusive remedy for challenging conduct that taints an arbitration award within the Act's coverage." " Nazar v. Wolpoff & Abramson, LLP, 530 F.Supp.2d 1161, 1168 (D.Kan.2008) (citation omitted). Under the FAA, a party must move to vacate, modify, or correct any erroneous arbitration award within three months of its issuance, and it is undisputed that Plaintiff did not so move after the arbitrator's January 2006 issuance of his award. 9 U.S.C. " 12 (2006); (Def.'s Br., SOF 7; admitted at Pl.'s Resp., RSOF 7.) Accordingly, I find that any FDCPA claim which may properly be based upon Defendant's alleged failure to seek an order compelling arbitration would necessarily constitute an impermissible collateral attack on the arbitration award. See, e.g., Nazar, 530 F.Supp.2d at 1170 (finding a plaintiff's "belated challenge to the arbitration award" premised upon an alleged consumer protection act violation to be an "impermissible collateral attack" precluding the court's review). | Any Fair Debt Collection Practices Act (FDCPA) claim that consumer had against debt collector arising out of collector's alleged failure to formally seek court order compelling arbitration had to be made via motion to vacate, modify, or correct erroneous arbitration award, not via post-arbitration lawsuit; Federal Arbitration Act (FAA) provided exclusive remedy for challenging conduct tainting arbitration award, and FDCPA suit constituted impermissible collateral attack on arbitration award. 9 U.S.C.A. S 12; Fair Debt Collection Practices Act, S 802 et seq., 15 U.S.C.A. S 1692 et seq. | Does the Federal Arbitration Act (FAA) provide the exclusive remedy for challenging conduct that taints an arbitration award? | Alternative Dispute Resolution - Memo 237 - RK.docx | ROSS-003284506-ROSS-003284507 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 5755 | Diaz v. Michigan Logistics Inc., 167 F. Supp. 3d 375 | 25T+114 | As for Defendants' argument that Plaintiffs do not fall within the " 1 exemption because Plaintiffs were "independent contractors," the Court cannot say, based on the limited record presented, that Plaintiffs were not "employees" subject to a "contract of employment" within the meaning of the FAA. Contrary to Defendants' argument, the economic reality of the parties' relationship"a highly factual question"determines employment status, not a contractual label. See Cilluffo v. Cent. Refrigerated Servs., Inc., No. EDCV 12-00886 VAP (OPx), 2012 WL 8523507 (C.D.Cal. Sept. 24, 2012). Discovery and a fact-intensive analysis is required for a determination of whether Plaintiffs were "independent contractors," rather than "employees" subject to a "contract of employment" for purposes of the FAA. See, e.g., Oliveira v. New Prime, Inc., No. 15"10603"PBS, 141 F.Supp.3d 125, 2015 WL 6472248, at *8 (D.Mass. Oct. 27, 2015) (directing discovery on threshold question of plaintiff's status as employee or independent contractor during certain time period). | Discovery and a fact-intensive analysis is required for a determination of whether plaintiffs were independent contractors, rather than employees subject to a contract of employment for purposes of the Federal Arbitration Act (FAA). 9 U.S.C.A. S 2. | Is discovery and fact-intensive analysis requiredto determine whether the Plaintiff is an employee or independent contractor? | 002143.docx | LEGALEASE-00119103-LEGALEASE-00119104 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 5756 | Shearson Hayden Stone v. Liang, 493 F. Supp. 104 | 83+80.5 | The first inquiry is whether the United States Arbitration Act, 9 U.S.C. s 1 (1976), is applicable to this case. The Act governs all written arbitration agreements arising from, among other things, a contract "evidencing a transaction involving commerce." Id. s 2. Interstate commerce is a necessary basis for application of the United States Arbitration Act, and a contract or agreement not predicated upon interstate commerce must be governed by state arbitration law. Pawgan v. Silverstein, 265 F.Supp. 898, 901 (S.D.N.Y.1967). | Interstate commerce is necessary basis for application of United States Arbitration Act and contract or agreement not predicated upon interstate commerce must be governed by state arbitration law. 9 U.S.C.A. SS 1, 2. | can a contract or agreement not predicated upon interstate commerce be governed under the Federal Arbitration Act? | Alternative Dispute Resolution - Memo 249 - RK.docx | LEGALEASE-00006967-LEGALEASE-00006968 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 5757 | Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, 585 F. Supp. 770 | 83+80.5 | The first inquiry is whether the Trainee Agreement is a contract "evidencing a transaction involving commerce." 9 U.S.C. " 2. Interstate commerce is a necessary basis for application of the Arbitration Act, and a contract or agreement not predicated upon interstate commerce must be governed by state arbitration law. Pawgan v. Silverstein, 265 F.Supp. 898, 901 (S.D.N.Y.1967). Federal courts have consistently held that the contract between a New York Stock Exchange brokerage firm and its employee is a contract involving interstate commerce governed by the Arbitration Act. See Shearson Hayden Stone, Inc. v. Liang, 493 F.Supp. 104, 106 (N.D.Ill.1980) (citations omitted), aff'd, 653 F.2d 310 (7th Cir.1981). I agree, and find that Roodveldt's Trainee Agreement is an agreement involving interstate commerce, and falls within the scope of the Arbitration Act. | Interstate commerce is necessary basis for application of Federal Arbitration Act, and contract or agreement not predicated upon interstate commerce must be governed by state arbitration law. 9 U.S.C.A. S 1 et seq. | Can a contract or agreement not predicated upon interstate commerce be governed under the Federal Arbitration Act? | 002147.docx | LEGALEASE-00119107-LEGALEASE-00119108 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5758 | Pollack v. Hogan, 703 F.3d 117 | 393+555 | The defendants further urge that there is another limitation on the Larson" Dugan exception. Seizing upon the Larson Court's statement that in "a suit against an agency of the sovereign" it is "necessary that the plaintiff claim an invasion of his recognized legal rights," Larson, 337 U.S. at 693, 69 S.Ct. 1457, the defendants maintain that "sovereign immunity bars" Pollack's claim because she does not have a "viable constitutional right-to-travel claim." AO Br. 31. But this argument fails to consider the Court's statement in its full context and, as Larson itself explained, "confuses the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action." Larson, 337 U.S. at 692"93, 69 S.Ct. 1457. As the Court stated in full:It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened.... If he does not, he has not stated a cause of action. This is true whether the conduct complained of is sovereign or individual. In a suit against an agency of the sovereign, as in any other suit, it is therefore necessary that the plaintiff claim an invasion of his recognized legal rights. If he does not do so, the suit must fail even if he alleges that the agent acted beyond statutory authority or unconstitutionally. | It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened; if he does not, he has not stated a cause of action; this is true whether the conduct complained of is sovereign or individual. | Is it a prerequisite to the maintenance of any action for specific relief that the plaintiff claims an invasion of his legal rights? | Action - Memo 25 - MS.docx | ROSS-003284085-ROSS-003284086 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5759 | Moss v. People's California Hydro-Elec. Corp., 134 Or. 227 | 145+6 | The briefs are in accord that the plaintiff granted to the defendant authority to trim the tree branches so as to yield a four-foot clearance for the wires. The defendant does not claim that a greater clearance was necessary, and the plaintiff concedes that four feet were essential. Before beginning this work the defendant obtained a franchise from the city council of Lakeview which authorized it to string these wires in the street upon which the plaintiff's property faced and to erect the necessary poles at places to be selected by the city's engineer. The work was done in compliance with the franchise and the instructions of the latter official. As above stated, the parties are agreed that the plaintiff granted to the defendant the right to trim the trees sufficiently to afford a four-foot clearance for its wires, and that such a clearance was ample; but, even if no express authority had been obtained, the authorities hold that an electrical company which has strung wires pursuant to a legal franchise may trim overhanging branches which interfere with its wires if such removal is reasonably necessary to assure safety and the enjoyment of the privileges conferred by the franchise. Elliott on Roads & Streets (2d Ed.) " 806 and 20 C. J. p. 310, " 11. | Company supplying electricity may trim branches of trees interfering with wires, if necessary for safety and enjoyment of franchise privileges. | Can company supplying electricity trim branches of trees interfering with wires if necessary for safety and enjoyment of franchise privileges? | 002189.docx | LEGALEASE-00119321-LEGALEASE-00119322 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 5760 | Vargas v. Spirit Delivery & Distribution Servs., 245 F. Supp. 3d 268 | 231H+2178 | In Count I of the Amended Complaint, Civil asserts claims against Spirit under the independent contractor provision on the grounds that Spirit mischaracterized him as an independent contractor rather than employee and in doing so, failed to pay him all wages and grant him employment benefits to which he is entitled. The independent contractor provision of the MWA " " establishes a standard to determine whether an individual performing services for another shall be deemed an employee or independent contractor for purposes of [Massachusetts] wage statutes." ... "The purpose of the independent contractor statute is to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate they are, in fact, employees' " Chambers v. RDI Logistics, Inc., 476 Mass. 95,100, 65 N.E.3d 1 (2016)(internal citations and citations to quoted cases omitted). Under the MWA, workers are presumed to be employees unless the entity making use of those workers' services (the putative employer) proves that they are independent contractors. Id. In order to overcome the presumption, the employer must establish each and every prong of the following three-prong test set forth in the independent contractor provision of the MWA:(1) The individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and(2) the service is performed outside of the usual course of business of the employer; and,(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involving the service performed.Mass.Gen.L. ch. 149, " 148B. The employer can treat the worker as an independent contractor only if it establishes all three prongs"where the employer cannot do so, the worker must be treated as an employee. See Chambers, | The independent contractor provision of the Massachusetts Wage Act (MWA) establishes a standard to determine whether an individual performing services for another shall be deemed an employee or independent contractor for purposes of Massachusetts wage statutes. Mass. Gen. Laws Ann. ch. 149, S 148B. | What is the purpose of establishing an independent contractor statute? | 003238.docx | LEGALEASE-00119176-LEGALEASE-00119178 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5761 | Arceo v. City of Junction City, Kansas, 182 F. Supp. 2d 1062 | 249+22 | Defendant Lueker's motion for summary judgment brings each of these elements into issue. As to the first element, to establish that the defendant initiated the criminal proceeding, Kansas case law is clear that the defendant must have acted affirmatively in instigating or participating in the prosecution. Barnes v. Danner, 169 Kan. 32, 216 P.2d 804, 807 (1950). As in a cause of action for false imprisonment, merely reporting facts to a law enforcement officer who then deems a crime to have been committed and directs the defendant's arrest is not sufficient to establish this element. Id. Persons supplying information to a public prosecutor will not be liable for malicious prosecution when the prosecutor initiates criminal proceedings, if the person supplies the information in good faith and represents all the information available to the informant through diligent effort. Nelson v. Miller, 227 Kan. 271, 279, 607 P.2d 438 (1980). This court further instructed that "generally a third person's giving of certain information to a public prosecutor does not constitute the procurement of proceedings if the decision to prosecute is left entirely to the uncontrolled discretion of the prosecuting officer, or if the officer conducts an independent investigation, or if he prosecutes on a different offense than that being accused." Slavens v. Crossman, Case No. 86"1347, 1989 WL 79068, (D.Kan. June 14, 1989). The Restatement (Second) of Torts further clarifies the issue, as follows:When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose | Persons supplying information to a public prosecutor will not be liable for malicious prosecution under Kansas law when the prosecutor initiates criminal proceedings, if the person supplies the information in good faith and represents all the information available to the informant through diligent effort. Restatement (Second) of Torts S 653 comment. | Will an informer to a public prosecutor be liable for malicious prosecution upon the instigation of criminal proceedings by the prosecutor? | 002926.docx | LEGALEASE-00119456-LEGALEASE-00119457 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 5762 | Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P., 853 F.3d 804 | 25T+140 | The Supreme Court has explained that "[t]here are two types of validity challenges under " 2." "One type challenges specifically the validity of the agreement to arbitrate." "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." The Supreme Court has held that even if "another provision of the contract, or ... the contract as a whole," is invalid, unenforceable, voidable, or void, that "does not prevent acourt from enforcing a specific agreement to arbitrate" because, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." | Even if another provision of the parties' contract, or the contract as a whole, is invalid, unenforceable, voidable, or void, that does not prevent a court from enforcing a specific agreement to arbitrate because, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. | Is an arbitration clause severable from the remainder of the contract? | 002790.docx | LEGALEASE-00119725-LEGALEASE-00119726 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5763 | Omstead v. Dell, 533 F. Supp. 2d 1012 | 25T+116 | On December 22, 2006, Dell filed a motion to compel arbitration. Under the Federal Arbitration Act, 9 U.S.C. " 1, et seq. ("FAA"), the question whether an agreement to arbitrate is valid is governed by state law. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Where an arbitration agreement contains a choice-of-law clause, the court must apply the appropriate analysis to determine which state's laws govern the validity of the agreement to arbitrate. Federal courts sitting in diversity look to the law of the forum state in making a choice-of-law determination. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). | Where an arbitration agreement contains a choice-of-law clause, the court must apply the appropriate analysis to determine which state's laws govern the validity of the agreement to arbitrate. 9 U.S.C.A. S 1. | How do courts determine which state's laws govern the validity of an agreement to arbitrate when there is a choice-of-law clause? | 002806.docx | LEGALEASE-00119741-LEGALEASE-00119742 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5764 | Henson v. Nat'l Aeronautics & Space Admin., 14 F.3d 1143 | 170B+3071(2) | A determination of whether an employee was acting within the scope of employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred. Arbour, 903 F.2d at 421"22. Under Ohio law, an employee acts within the scope of employment if the employee acts within its authority during the course of employment even though acting intentionally or maliciously. However, an employee is not acting within the scope of employment if its acts are self-serving and in no way facilitate or promote business, or for " "an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person." " Woods v. McGuire, 954 F.2d 388, 390 (6th Cir.1992) (citation omitted). | Determination of whether employee was acting within scope of employment for purposes of Federal Tort Claims Act is question of law, not fact, made in accordance with law of state where conduct occurred. 28 U.S.C.A. S 2679(d)(1). | Is the determination of whether an employee was acting within the scope of his employment a question of law or a question of fact? | 003266.docx | LEGALEASE-00119560-LEGALEASE-00119562 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5765 | San Jacinto Life Ins. Co. v. Boyd, 214 S.W. 482 | 101+2529 | A cause of action upon which recovery is sought does not comprise every piece of evidence which is necessary to prove each fact, but every fact which is necessary to be proved. We believe under our statute on venue it is too narrow to confine it to the genesis of the right, but it embraces every fact necessary to be shown in order to recover."Arose," we do not think, refers alone to the very beginning of the right, but to every fact which has arisen and inheres in the cause of action. It is the right to bring a suit, or that right which is based upon the ground or grounds on which an action may be maintained. Payne v. Railway Co., 201 N.Y. 436, 95 N.E. 19; Baker v. Railway Co 184 S.W. 237; Merchants, etc., v. Williams, 181 S.W. 859. | A "cause of action," within Rev.St. art. 1830 (Vernon's Ann.Civ.St. art. 1995), providing that suits against private corporations may be commenced in any county in which the cause of action arose, is not confined to the genesis of the right, and does not comprise every piece of evidence which is necessary to prove each fact, but it embraces every fact necessary to be shown in order to recover. | Does a cause of action need to embrace every fact necessary to be shown in order to recover? | 002444.docx | LEGALEASE-00119910-LEGALEASE-00119912 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 5766 | In re Alfred H.H., 233 Ill. 2d 345 | 13+6 | Respondent's first established exception to the mootnessdoctrine is the "publicinterest" exception. The publicinterestexception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. People ex rel. Wallace v. Labrenz, 411 Ill. 618, 622, 104 N.E.2d 769 (1952). The "publicinterest" exception is " narrowly construed and requires a clear showing of each criterion." In re Marriage of Peters"Farrell, 216 Ill.2d 287, 292, 296 Ill.Dec. 444, 835 N.E.2d 797 (2005) (citing In re India B., 202 Ill.2d 522, 543, 270 Ill.Dec. 30, 782 N.E.2d 224 (2002), and In re Adoption of Walgreen, 186 Ill.2d 362, 365, 238 Ill.Dec. 124, 710 N.E.2d 1226 (1999)). | Under the public interest exception to the mootness doctrine, a court may consider an otherwise moot case when (1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question. | Will the public interest exception permits review of an otherwise moot appeal or case? | 002493.docx | LEGALEASE-00119964-LEGALEASE-00119965 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 5767 | In re Trampush, 552 B.R. 817 | 366+1 | Subrogation is an equitable doctrine intended to "avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." Rock River Lumber Corp. v. Universal Mortg. Corp., 82 Wis.2d 235, 262 N.W.2d 114, 116 (1978). Equitable subrogation for advances made to a debtor depends on one of three conditions: (1) the lender was secondarily liable, (2) the lender loaned money to protect his own interests, or (3) there was an agreement that the lender was to have security on the debt. Id. at 117. Subrogation is applied or denied on equitable principles. The object is to do "substantial justice independent of form or contract relation between the parties." Id. | Under Wisconsin law, subrogation is an equitable doctrine intended to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another. | Does subrogation avoid unjust enrichment? | 002543.docx | LEGALEASE-00119970-LEGALEASE-00119971 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 5768 | Young Men's Bldg. Ass'n v. Ware, 158 Ark. 137 | 366+1 | In the case of Southern Cotton Seed Oil Co. v. Napoleon Hill Cotton Co., 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1049, we said: "The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice." | The doctrine of subrogation is equitable, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. | Does the doctrine of subrogation have its basis in the doing of complete and perfect justice between the parties without regard to form? | 002574.docx | LEGALEASE-00120103-LEGALEASE-00120105 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5769 | Casa de Cambio Comdiv S.A. de C.V. v. United States, 48 Fed. Cl. 137 | 393+1010 | Under the Tucker Act, illegal exaction jurisdiction lies where a plaintiff "has paid money over to the Government, directly or in effect," and "seeks return of all or part of that sum arguing" that it "was improperly paid, exacted, or taken from [it] in contravention of the Constitution, a statute, or a regulation." Eastport S.S. Corp., 372 F.2d at 1007"08.5 In illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the Constitutional provision allegedly violated does not contain compensation mandating language. Bowman v. United States, 35 Fed.Cl. 397, 401 (1996). For example, in Mallow v. United States, 161 Ct.Cl. 446, 1963 WL 8503 (1963), this court's predecessor was faced with a claim by a civilian seeking to recover a fine imposed by a courts-martial that had no jurisdiction over him. In these circumstances, the Court of Claims found that the fine was collected in violation of due process and concluded that "it seems that the plaintiff's claim for the recovery of the money that was taken from him by the Government without due process of law may be properly regarded as one "founded ... upon the Constitution," for purposes of 28 U.S.C. " 1491." 161 Ct.Cl. at 454 (alteration in original). More recently, in Commonwealth Edison Co. v. United States, 46 Fed.Cl. 29, 42"43 (2000), appeal docketed, No. 00"5069 (Fed.Cir. Apr. 26, 2000) this court concluded that it had illegal exaction jurisdiction to consider claims that money had illegally been collected by the government pursuant to a provision that allegedly violated due process. | Under the Tucker Act, illegal exaction jurisdiction lies in the Court of Federal Claims where a plaintiff has paid money over to the government, directly or in effect, and seeks return of all or part of that sum arguing that it was improperly paid, exacted, or taken from it in contravention of the Constitution, a statute, or a regulation. 28 U.S.C.A. S 1491(a)(1). | When does an illegal exaction occur under the law? | 002732.docx | LEGALEASE-00120219-LEGALEASE-00120221 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5770 | Clark v. D.C., 241 F. Supp. 3d 24 | 249+34 | Turning next to the argument regarding the termination of the criminal case, the parties dispute whether Plaintiff has sufficiently pled that there was a decision in his favor in the underlying criminal case. Indeed, under District of Columbia law, a Plaintiff must show termination of the underlying suit in the Plaintiff's favor in order to prevail on a claim for malicious prosecution. Harris v. District of Columbia, 696 F.Supp.2d 123, 134 (D.D.C. 2010). Furthermore, "the termination must reflect on the merits of the underlying action." Brown v. Carr, 503 A.2d 1241, 1245 (D.C. 1986). In Brown, the D.C. Court of Appeals adopted the approach of the California courts to malicious prosecution claims. Harris, 696 F.Supp.2d at 134. Accordingly, " "[i]f [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, ... it does not constitute favorable termination." " Id. (quoting Brown, 503 A.2d at 1245). "[D]ismissal for failure to prosecute has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit." Brown, 503 A.2d at 1245 (emphasis added). | Under District of Columbia law, a plaintiff must show termination of the underlying suit in the plaintiff's favor in order to prevail on a claim for malicious prosecution; in this context, the termination must reflect on the merits of the underlying action. | Is it necessary for the Plaintiff to show termination of the underlying suit in their favor to prevail on a claim for malicious prosecution? | Malicious Prosecution - Memo 79 - RK.docx | ROSS-003283931-ROSS-003283932 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 5771 | Zimmerman v. Al Jazeera Am., 246 F. Supp. 3d 257 | 237+6(1) | "When confronted with a motion to dismiss [a defamation claim], a court must evaluate "[w]hether a statement is capable of defamatory meaning," " which is a threshold "question of law[,]" Jankovic v. Int'l Crisis Grp. (Jankovic I), 494 F.3d 1080, 1091 (D.C. Cir. 2007) (second alteration in original) (quoting Weyrich v. New Republic, Inc., 235 F.3d 617, 627 (D.C. Cir. 2001)), and must also determine whether the statement is false, see White v. Fraternal Order of Police, 909 F.2d 512, 520 (D.C. Cir. 1990) ("Defamatory meaning and falsity are distinct elements of the tort of defamation and are considered separately."). To evaluate whether a statement is capable of defamatory meaning, courts employ a two-part framework that asks: " "(a) whether a communication is capable of bearing a particular meaning, and (b) whether that meaning is defamatory." The jury then determines whether the communication was in fact so understood by its recipient." Moldea v. N.Y. Times Co. (Moldea I), 15 F.3d 1137, 1142 (D.C. Cir. 1994) (quoting Restatement (Second) of Torts " 614 (1977)), modified on reh'g on other grounds, 22 F.3d 310 (D.C. Cir. 1994) (Moldea II ). | Under District of Columbia law, to evaluate whether a statement is capable of defamatory meaning, courts employ a two-part framework that asks (1) whether a communication is capable of bearing a particular meaning, and (2) whether that meaning is defamatory, after which the jury determines whether the communication was in fact so understood by its recipient. | What is the role of the Court and jury in determining the defamatory meaning of a statement? | Libel and Slander - Memo 140 - RK.docx | ROSS-003284544-ROSS-003284546 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5772 | In re Healthcare Am. Med. Grp., 289 B.R. 442 | 366+1 | The doctrine of equitable subrogation has long been recognized by Florida courts. In order to invoke the doctrine, the party must establish the following: (1) that the party paid the debt; (ii) that the party had a liability, right or fiduciary relationship which equated a direct interest in discharging the debt or lien; and (iii) that no injustice is visited on the other party by applying equitable subrogation. In re Munzenrieder Corp., 58 B.R. 228 (Bankr.M.D.Fla.1986). The effect of subrogation is that the party who discharges the debt stands in the shoes of the person whose claims have been discharged and therefore, succeeds to all rights and priorities of the original creditor. In re Eastern Marine, Inc., 104 B.R. 421 (Bankr.N.D.Fla.1989). Notwithstanding the invoking party's failure to discover a prior recorded lien, the court may order subrogation against intervening interests where the negligence has not caused harm to anyone. Eastern National Bank v. Glendale Federal Savings and Loan Association, 508 So.2d 1323, 1324 (Fla. 3rd DCA 1987). | To invoke the doctrine of equitable subrogation under Florida law, a party must establish that: (1) the party paid the debt, (2) the party had a liability, right, or fiduciary relationship which equated a direct interest in discharging the debt or lien, and (3) no injustice is visited on the other party by applying equitable subrogation. | When can the doctrine of equitable subrogation be invoked? | 003580.docx | LEGALEASE-00120386-LEGALEASE-00120387 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 5773 | Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362 | 366+1 | "Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid." Id., " 9; see also Security Ins. Co. of New Haven v. Mangan, 250 Md. 241, 242 A.2d 482 (1968). | "Conventional subrogation" occurs where one having no interest or any relation to matter pays debt of another, and by agreement is entitled to rights and securities of creditor so paid; it can take effect only by agreement and has been said to be synonymous with assignment. | How can conventional subrogation take effect? | Subrogation - Memo 60 - RM C.docx | ROSS-003316297-ROSS-003316298 | Order, SA, Sub | 0.28 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5774 | Miccosukee Tribe of Indians of Florida v. Cypress, 2013 WL 2158422 | 209+222 | As Plaintiff properly defines, an intra-tribal dispute is one that affects matters of trial self-government and sovereignty. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 53, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Some such matters"but by no means an exhaustive list"include the inherent power to determine tribal membership, to regulate domestic relations among members, to prescribe rules of inheritance for members, and the power to punish tribal offenders. Montana v. U.S., 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). | Indian tribes have inherent power to determine tribal membership, to regulate domestic relations among members, to prescribe rules of inheritance for members, and to punish tribal offenders. | Does an Indian tribe retain power to regulate tribal membership and domestic relations among members? | Indians - Memo 48 - BP.docx | LEGALEASE-00010443-LEGALEASE-00010444 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 5775 | Payne v. E. Liberty Spear Co., 323 Pa. 100 | 249+42 | In the leading case of Markley v. Snow, 207 Pa. 447, 451, 56 A. 999, 1000, 64 L.R.A. 685, it was said-and this correctly states the law not only of Pennsylvania but of other jurisdictions generally: "Undoubtedly a principal may be held liable for the act of his agent in instituting a malicious prosecution. But the act of the agent becomes that of the principal only when expressly authorized, or when his authority to act may fairly be inferred from the nature and scope of the employment. Generally, the duty of superintendence does not carry with it the duty to arrest or prosecute. The inference of authority to do either does not arise from the mere fact of the agency. The authority may be implied when the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, or in some cases it has been inferred when the arrest was to recover the property back, or where the crime was at the time being perpetrated. But where the act is done for the punishment of the supposed criminal, or for the vindication of the law, it is not the act of the principal, and does not subject him to liability." To the same effect see Fletcher, Cyclopedia of Corporations, vol. 10, " 4885; Annotation, 77 A.L.R. 927. | Principal may be held liable for agent's act in instituting malicious prosecution, but agent's act becomes that of principal only when expressly authorized or when authority may fairly be inferred from nature and scope of employment, and authority to arrest or prosecute does not arise from mere fact of agency. | When can a principal be held liable for the act of his agent in instituting a malicious prosecution? | Malicious Prosecution - Memo 87 - AKA.docx | ROSS-003296276-ROSS-003296277 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 5776 | Oravek v. Cmty. Sch. Dist. 146, 264 Ill. App. 3d 895 | 307A+679 | Although we must take all well-pleaded facts as true, we must also disregard mere conclusions of law or fact unsupported by the facts alleged. (Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc. (1992), 229 Ill.App.3d 119, 123, 171 Ill.Dec. 52, 593 N.E.2d 872; Washington v. Chicago Board of Education (1990), 204 Ill.App.3d 1091, 1094, 150 Ill.Dec. 11, 562 N.E.2d 541.) The bare characterization of certain acts as wilful and wanton misconduct is not sufficient to withstand a motion to dismiss because such misconduct must be manifested by facts alleged in the complaint. Cipolla v. Bloom Township High School District No. 206 (1979), 69 Ill.App.3d 434, 437, 26 Ill.Dec. 407, 388 N.E.2d 31. | In considering motion to dismiss for failure to state cause of action, Appellate Court must take all well-pleaded facts as true, but must also disregard mere conclusions of law or fact unsupported by facts alleged, and bare characterization of certain acts as wilful and wanton misconduct is not sufficient to withstand motion to dismiss because such misconduct must be manifested by facts alleged in complaint. S.H.A. 735 ILCS 5/2-615. | Is the characterization of certain acts as willful and wanton misconduct sufficient to withstand a motion to dismiss? | 003474.docx | LEGALEASE-00120873-LEGALEASE-00120874 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 5777 | Villarreal v. Harris Cty., 226 S.W.3d 537 | 148+1 | Article I, section 17 does not grant any powers to the government, but instead limits the inherent sovereign power of eminent domain by imposing the requirements that the government take property only for "public use" and pay "adequate compensation" when doing so. See Tex. Const. art. I, " 17; Whittington v. City of Austin, 174 S.W.3d 889, 896 (Tex.App.-Austin 2005, pet. denied); McInnis v. Brown County Water Improvement Dist. No. 1, 41 S.W.2d 741, 744 (Tex.Civ.App.-Austin 1931, writ ref'd). " "Eminent domain" refers to "[t]he power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power." " Taub v. Aquila Sw. Pipeline Corp., 93 S.W.3d 451, 456 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (alteration in original) (quoting Black's Law Dictionary 523 (6th ed.1990)). If Villarreal is to recover for the alleged taking in this case, however, the only provision of the constitution that provides a remedy is article I, section 17. See Tex. Const. art. I, " 17; Whittington, 174 S.W.3d at 896; McInnis, 41 S.W.2d at 744. If the government properly uses its taxing power to take private property, the owner of the property has no remedy and article I, section 17 does not apply. See Rylander v. Palais Royal, Inc., 81 S.W.3d 909, 915 (Tex.App.-Austin 2002, pet. denied) ("The State has the authority to levy and collect taxes in a rational and legitimate manner. The exercise of that authority here does not amount to a taking."). In contrast, if the government improperly uses its taxing power to take private property for public use, then an article I, section 17 taking has occurred and the owner may recover in a takings action. See Midfirst Bank, 40 S.W.3d at 697; Gen. Elec., 831 S.W.2d at 60. An improper use of taxing power is therefore not a use of taxing power at all, but instead a condemnation and a use of eminent domain power. We hold that the improper use of taxing power | "Eminent domain" refers to the power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power. | Is the State's intentional act of taking property for public use an exercise of its eminent domain powers? | 017350.docx | LEGALEASE-00120758-LEGALEASE-00120759 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 5778 | Kansas Gas & Elec. Co. v. State Corp. Comm'n, 239 Kan. 483 | 317A+146 | Under the constitutional separation of powers doctrine, the regulation of public utilities is legislative in nature. The legislature created the Kansas Corporation Commission and granted it full and exclusive authority and jurisdiction to supervise, control, and regulate the public utilities of this state and, when acting in the exercise of its delegated powers, the Commission is not a quasi-judicial body. Cities Service Gas Co. v. State Corporation Commission, 201 Kan. 223, 440 P.2d 660 (1968); Midwest Gas Users Ass'n v. Kansas Corporation Commission, 5 Kan.App.2d 653, 623 P.2d 924. | State Corporation Commission has been granted by legislature full and exclusive authority and jurisdiction to supervise, control, and regulate public utilities of the state, and, when acting in exercise of its delegated powers, is not acting as quasi-judicial body, but rather is performing a legislative function. | Is the regulation of public utilities legislative in nature? | 042579.docx | LEGALEASE-00121005-LEGALEASE-00121006 | Order, SA, Sub | 0.47 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5779 | One Bluff Drive v. K.A.P., 330 Ga. App. 45 | 307A+3 | Finally, the appellants contend the trial court erred by denying their motion in limine to exclude testimony or evidence of KAP's "total costs" of performing the contract. We review the trial court's decisions on the admissibility of evidence, including a denial of a motion in limine, for an abuse of discretion. Forsyth County v. Martin, 279 Ga. 215, 221(3), 610 S.E.2d 512 (2005); Toler v. Ga. Dept. of Transp., 328 Ga.App. 144, 145, 761 S.E.2d 550 (2014). And motions in limine should only be granted with great care and when there is no circumstance under which the evidence at issue could be admissible at trial:By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care. | By its very nature, grant of motion in limine excluding evidence suggests that there is no circumstance under which evidence under scrutiny is likely to be admissible at trial, and in light of that absolute, grant of motion in limine excluding evidence is judicial power which must be exercised with great care. | Does a grant of motion in limine excluding evidence suggest that there is no circumstance under which evidence under scrutiny is likely to be admissible at trial? | Pretrial Procedure - Memo # 129 - C - ES.docx | ROSS-003298983-ROSS-003298984 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 5780 | Houle v. Sch. Dist. of Ashland, 267 Wis. 2d 708 | 366+1 | There are three main types of subrogation: conventional, legal/equitable, and statutory. American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142 (1971); see 73 Am.Jur.2d Subrogation " 3 (2002). Conventional subrogation is based in contract, such as an insurance policy. See 73 Am.Jur.2d Subrogation " 4 (2002); American Ins., 51 Wis.2d at 351, 187 N.W.2d 142. Legal subrogation, also known as equitable subrogation, derives from the doctrine of preventing unjust enrichment and it applies when a person other than a mere volunteer pays a debt that in equity and good conscience, another should pay.Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan, 200 Wis.2d 599, 620, 547 N.W.2d 578 (1996). It is not dependent on contract or privity, and we allow it when injustice would follow its denial. Id. Statutory subrogation, as its name suggests, arises from a legislative act that vests a right of subrogation with a party or class of parties. See 73 Am.Jur.2d Subrogation " 3 (2002). | "Legal subrogation," also known as equitable subrogation, derives from doctrine of preventing unjust enrichment, and it applies when person other than mere volunteer pays debt that in equity and good conscience, another should pay. | Is equitable subrogation related to or derived from the equitable principle against unjust enrichment? | 043658.docx | LEGALEASE-00121123-LEGALEASE-00121124 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 5781 | Acuity v. McGhee Eng'g, 297 S.W.3d 718 | 366+1 | Almany v. Nationwide Ins. Co., No. 85"341"II, 1987 WL 4745, (Tenn.Ct.App. Jan.29, 1987) (citations omitted). Equitable subrogation is based on the principle that " "substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form." "Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (quoting 83 C.J.S. Subrogation "" 1"2). | Equitable subrogation is based on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form. | Is equitable subrogation based on the principle that substantial justice should be attained regardless of form? | 043691.docx | LEGALEASE-00121308-LEGALEASE-00121310 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 5782 | Neu v. Gibson, 928 N.E.2d 556 | 366+17 | The nature of equitable subrogation is, as its name indicates, equity. The doctrine substitutes one who fully performs the obligation of another, secured by a mortgage, for "the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Restatement (Third) of Property " 7.6(a) (1997); see Bank of New York v. Nally, 820 N.E.2d 644, 653 (Ind.2005). This avoids an inequitable application of the general principle that priority in time gives a lien priority in right. See Jones v. Rhoads, 74 Ind. 510, 513 (1881). In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders. Nally, 820 N.E.2d at 653. As noted above, during the earlier stages of this litigation, the trial court ordered that the Neus and their lender be subrogated to the extent of the Irwin mortgage, and the Court of Appeals affirmed. There is no request to reconsider that determination, so we proceed by accepting it as the law of the case. | In considering whether to order subrogation and, thus, bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders. | What must courts consider when deciding to order subrogation? | 043777.docx | LEGALEASE-00121649-LEGALEASE-00121650 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5783 | Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, 223 Wis. 2d 439 | 366+1 | Because the Fund is not itself an alleged joint tortfeasor, the Fund may not bring its contribution claim unless it is subrogated to the rights of one of the alleged joint tortfeasors whom it insures. Subrogation rights arise by operation of law "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liab. Ins. Plan, 200 Wis.2d 599, 620, 547 N.W.2d 578 (1996) (quoting American Ins. Co. v. Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142 (1971)) [hereinafter, "WHCLIP "]. See also D'Angelo v. Cornell Paperboard Prods. Co., 19 Wis.2d 390, 399"400, 120 N.W.2d 70 (1963); Arnold P. Anderson, Wisconsin Insurance Law "" 12.1, 12.2, at 12"5, 12"9, 12"13 (4th ed.1998). A party who is subrogated to a second party's rights against a third party "steps into the shoes" of the second party and may bring all claims which the second party could have brought against the third party. Arnold P. Anderson, Wisconsin Insurance Law " 12.3, at 12"18 (4th ed.1998). | Subrogation rights arise by operation of law when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another. | Does the right to subrogation arise when a person other than a mere volunteer pays a debt which should be satisfied by another? | Subrogation - Memo # 522 - C - NO.docx | ROSS-003297702-ROSS-003297704 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5784 | W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, 495 So. 2d 204 | 366+1 | To deny recovery, however, because West American was unable to prove its own liability produces a most unfair and inequitable result when it is apparent that West American is entitled to recovery under principles of subrogation. Both the Wisconsin court and the Hawaii court in the previously cited cases recognized that recovery could be had by way of subrogation, although not by contribution when common liability was lacking. Subrogation provides an equitable remedy for restitution to one who in the performance of some duty has discharged a legal obligation which should have been met, either wholly or partially, by another. See Underwriters at Lloyds v. City of Lauderdale, 382 So.2d 702 (Fla.1980); Jones v. Williams Steel Industries, Inc., 460 So.2d 1004 (Fla. 5th DCA), rev. denied, 467 So.2d 1000 (Fla.1984); Allstate Life Ins. Co. v. Weldon, 213 So.2d 15 (Fla. 3d DCA 1968). Florida recognizes two types of subrogation, conventional and legal. See Dixie Nat. Bank v. Employer's Commercial Union Inc. Co., 463 So.2d 1147 (Fla.1985). In the early case of Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916), the supreme court offered the following bench-mark definition: | "Subrogation" provides an equitable remedy for restitution to one who in performance of some duty has discharged a legal obligation which should have been met, either wholly or partially, by another. | "Does equitable subrogation apply when a legal obligation ought to have been met, either wholly or partially, by another?" | Subrogation - Memo # 614 - ANG C.docx | ROSS-003287406-ROSS-003287407 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5785 | S. Ry. Co. v. Overnite Transp. Co., 223 Ga. 825 | 366+1 | "Legal subrogation takes place as a matter of equity, without any agreement to that effect made with the person paying the debt, and is independent of both creditor and debtor." | Legal subrogation takes place as a matter of equity, without any agreement to that effect made with the person paying the debt, and is independent of both creditor and debtor. | "Does legal subrogation take place as a matter of equity, without any agreement to that effect?" | Subrogation - Memo # 616 - ANG C.docx | ROSS-003285051-ROSS-003285052 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 5786 | Wasko v. Manella, 269 Conn. 527 | 366+1 | "The law has recognized two types of subrogation: conventional; and legal or equitable. 73 Am.Jur.2d 599, Subrogation " 2 (1974 and 1995 Sup.) Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid. By contrast, [t]he right of [legal or equitable] subrogation is not a matterof contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. The object of [legalor equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. As now applied, the doctrine of [legal or] equitablesubrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted; internal quotation marks omitted.) Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 370"71, 672 A.2d 939 (1996). | The right of legal or equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | "Does legal subrogation take place as a matter of equity, without any agreement to that effect?" | 043916.docx | LEGALEASE-00121164-LEGALEASE-00121165 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5787 | Middlebrook Tech v. Moore, 157 Md. App. 40 | 366+7(1) | In Maryland, there are two types of third-party contractual obligors: guarantors and sureties. Mercy Medical Center, Inc. v. United Healthcare of the Mid"Atlantic, Inc., 149 Md.App. 336, 357, 815 A.2d 886 (2003). A suretyship contract.is a tripartite agreement among a principal obligor, his obligee, and a surety. This contract is a direct and original undertaking under which the surety is primarily liable with the principal obligor and therefore is responsible at once if the principal obligor fails to perform.General Motors Acceptance Corp. v. Daniels, 303 Md. 254, 259, 492 A.2d 1306 (1985). See also Atl. Contracting & Material Co. v. Ulico, 380 Md. 285, 844 A.2d 460 (2004), . "The liability of a surety is coextensive with that of the principal. The surety is primarily or jointly liable with the principal and, therefore, is immediately responsible if the principal fails to perform." Ulico, supra, 380 Md. 285, 844 A.2d 460 (citing Gen. Builders Supply Co. v. MacArthur, 228 Md. 320, 326, 179 A.2d 868 (1962)). "Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has a remedy against both. The surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor." General Motors, supra, 303 Md. at 259, 492 A.2d 1306. | Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has a remedy against both; the surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor. | Does the surety become subrogated to the rights of the obligee when the surety pays the debt for the principal obligor? | 044001.docx | LEGALEASE-00121344-LEGALEASE-00121345 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5788 | Am. Family Ins. Grp. v. Cleveland, 356 Ill. App. 3d 945 | 366+32 | Under the doctrine of subrogation, a person who has paid a debt for which another is primarily liable succeeds to the rights of the person whose debt has been paid in relation to the debt or claim. The doctrine includes every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been paid by the latter. The right of subrogation may be grounded in equity and may also be founded upon an express or implied agreement. North American Insurance Co. v. Kemper National Insurance Co., 325 Ill.App.3d 477, 481, 259 Ill.Dec. 448, 758 N.E.2d 856, 859 (2001). | Under the doctrine of "subrogation," a person who has paid a debt for which another is primarily liable succeeds to the rights of the person whose debt has been paid in relation to the debt or claim; it includes every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been paid by the latter. | "Under the doctrine of ""subrogation,"" does a person who has paid a debt for which another is primarily liable succeed to the rights of the person whose debt has been paid in relation to the debt or claim?" | Subrogation - Memo # 694 - C - SA.docx | ROSS-003311619-ROSS-003311620 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5789 | In re Climate Control Mech. Servs., 570 B.R. 673 | 366+7(2) | A suretyship is a three-way relationship that gives rights of subrogation to the surety. "When, on default of the contractor, [the surety] pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and material men who have been paid by the surety"who may have had liens; and, not least, in the shoes of the government, for whom the job was completed." Transamerica Ins. Co. v. Barnett Bank, 540 So.2d 113, 115"16 (Fla. 1989) (holding that a surety's subrogation right is not a security interest yet supersedes a security interest of a contract assignee, such as a bank with an interest in a debtor's accounts receivable); Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1270 (11th Cir. 2003) (applying Transamerica Ins. Co.); 7 Fla. Jur 2d Bonds " 22 (subrogation of surety); 8 Fla. Constr. Law Manual " 10:5 (2016"2017 ed.) (rights of surety). Pearlman has precedential value as applied to a surety's equitable subrogation claim to retainage, but has no precedential value as applied to a subcontractor's claim of equitable lien on retainage. | When, upon default of contractor, surety pays all the bills of the job to date and completes the job, surety stands in shoes of contractor insofar as there are receivables due it, in the shoes of laborers and materialmen who have been paid by surety, who may have liens, and in the shoes of the government, for whom job was completed. | Is a surety who pays claims of laborers and materialmen only entitled to stand in shoes of those laborers and materialmen who might have had liens but for the surety's payment? | 044081.docx | LEGALEASE-00121712-LEGALEASE-00121713 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5790 | Wetzler v. Cantor, 202 B.R. 573 | 366+7(1) | The right of subrogation is an equitable doctrine, designed to perform substantial justice." Western Cas. and Sur. Co. v. Brooks, 362 F.2d 486, 490 (4th Cir.1966). This doctrine establishes "the right of "a surety who pays the debt of another to [assert] all the rights of the person he paid to enforce his right to be reimbursed." " Id. (quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962)). | Subrogation doctrine establishes right of surety who pays debt of another to assert all rights of person surety paid to enforce surety's right to be reimbursed. | Does the subrogation doctrine establish a right of a surety who pays the debt of another to assert all rights of the person surety paid to enforce surety's right to be reimbursed? | Subrogation - Memo # 731 - C - SU.docx | ROSS-003324528-ROSS-003324529 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 5791 | Pearlman v. Reliance Ins. Co., 371 U.S. 132 | 366+7(1) | Since there is no statute which expressly declares that a surety does acquire a property interest in a fund like this under the circumstances here, we must seek an answer in prior judicial decisions. Some of the relevant factors in determining the question are beyond dispute. Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise such as the surety here had. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule, widely applied in this country and generally known as the right of subrogation, was relied on by the Court of Appeals in this case. It seems rather plain that at least two prior decisions of this Court have held that there is a security interest in a withheld fund like this to which the surety is subrogated, unless, as is argued, the rule laid down in those cases has been changed by passage of the Miller Act or by our holding in the Munsey case. Those two cases are Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908). | Surety paying debt of another is, by doctrine generally known as "subrogation," entitled to all rights of person paid to enforce his right to be reimbursed. | Does the subrogation doctrine establish a right of a surety who pays the debt of another to assert all rights of the person surety paid to enforce surety's right to be reimbursed? | 044130.docx | LEGALEASE-00121774-LEGALEASE-00121775 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 5792 | Gardner v. Shearson, Hammill & Co., 433 F.2d 367 | 25T+415 | Claiming that she sustained losses in certain stock transactions due to defendants' misrepresentations, Mrs. Gardner sought recovery under the Securities Exchange Act of 1934. On undisputed facts the District Court found that, pursuant to an agreement, the parties had submitted "the identical alleged acts and transactions which are the basis for her claims for relief in the instant action" to arbitration under the New York Stock Exchange Rules. Accordingly, the Court granted defendants' motion for summary judgment. We affirm. We agree with the Third Circuit that "under the Securities Exchange Act of 1934, the voluntary submission to arbitration of an existing controversy is a valid one and, absent fraud or a basic fault in the proceedings, * * * the proceeding is a valid one." Moran v. Paine, Webber, Jackson & Curtis, 3d Cir. 1968, 389 F.2d 242, 246. | Under Securities Exchange Act of 1934, voluntary submission to arbitration of existing controversy is valid and, absent fraud or basic fault in arbitration proceedings, such proceedings are valid. | Is the voluntary submission to arbitration of an existing controversy valid under the Securities Exchange Act of 1934? | 007062.docx | LEGALEASE-00122406-LEGALEASE-00122407 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5793 | Kruse v. AFLAC Int'l, 458 F. Supp. 2d 375 | 25T+121 | Under the third part of the Stout test, the Court must determine if Congress intended plaintiff's federal statutory claims to be nonarbitrable. In the same vein, the Court also considers whether plaintiff's state statutory claims were intended to be nonarbitable. The FAA applies to all employment contracts which parties have agreed to arbitrate except those of "seamen, railroad workers, and [other classes] of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 600"601 (6th Cir.1995). There is no suggestion in plaintiff's amended complaint that her position was related to the actual transport of goods in interstate commerce. Likewise, her claims are not disqualified from arbitration because they raise claims under various federal statutes. "A district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." Stout, 228 F.3d at 715. Absent clear congressional intent to exempt the enforcement of statutory rights from the FAA, claims arising under specific statutes are subject to arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). | District court's duty to enforce arbitration agreement under the Federal Arbitration Act (FAA) is not diminished when party bound by the agreement raises claims arising from statutory rights. 9 U.S.C.A. S 1 et seq. | Does a district court's duty to enforce an arbitration agreement diminish when a party to the agreement asserts a statutory claim? | Alternative Dispute Resolution - Memo 378 - RK.docx | ROSS-003298867-ROSS-003298869 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5794 | Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 | 25T+121 | In this appeal, we revisit an issue which has commanded the attention of the Supreme Court and other courts of appeals since we last addressed it: whether claims of statutory violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. " 1001 et seq. ("ERISA"), are subject to arbitration pursuant to section 2 of the Federal Arbitration Act ("FAA" or "Arbitration Act"), 9 U.S.C. " 2. In Barrowclough v. Kidder, Peabody & Co., Inc., 752 F.2d 923 (3d Cir.1985), we held that statutory ERISA claims are not subject to arbitration. Since Barrowclough, however, Supreme Court decisions have substantially revised the rationale we relied upon there. We now hold that such claims are subject to arbitration under the FAA. We will, therefore, overrule Barrowclough insofar as it held that arbitration of statutory ERISA claims is precluded, and reverse the district court's order denying defendant's motion to compel arbitration of the plaintiffs' claims in this case. We also hold that the arbitration clauses in the agreements in question here should be read to include all of the named defendants even though only one defendant signed them. Accordingly, we will instruct the district court to order arbitration of the claims against the non-signatory defendants as well. | Statutory ERISA claims are subject to arbitration under Federal Arbitration Act (FAA) when parties have executed valid arbitration agreement encompassing claims at issue; overruling Barrowclough v. Kidder, Peabody & Co., Inc., 752 F.2d 923. 9 U.S.C.A. SS 1, 2; Employee Retirement Income Security Act of 1974, S 2 et seq., 29 U.S.C.A. S 1001 et seq. | Are Employee Retirement Income Security Act (ERISA) claims subject to arbitration? | 007087.docx | LEGALEASE-00122431-LEGALEASE-00122432 | Condensed, Order, SA | 0.73 | 1 | 1 | 0 | 1 | 1 |
| 5795 | State v. DeJesus, 260 Conn. 466 | 110+1038.1(4) | In the present case, the trial court stated on at least six separate occasions, both in its initial charge and its supplemental charge, that, for the jury to find the defendant guilty of murder, the state must prove beyond a reasonable doubt that the defendant specifically intended to cause the victim's death. This repeated instruction eliminated any possibility of juror confusion with respect to the element of intent. Moreover, as in Austin, "the factual issues of th[e] [present] case mitigate against the possibility of jur[or] confusion. A court's charge is not to be examined in a vacuum. Rather, it is to be viewed in the context of the factual issues raised at the trial." (Internal quotation marks omitted.) Id., at 237, 710 A.2d 732. The defendant admitted to police and at trial that he had pointed his gun in the direction of the victim and had pulled the trigger, thereby discharging a bullet toward the victim. Thus, the only disputed issue for the jury to resolve was the defendant's mental state in connection with the shooting. Accordingly, "[i]t strains reason to believe that the jury could have [understood] the challenged instruction as not requiring that the state prove beyond a reasonable doubt that the defendant intended to kill [the victim]." (Internal quotation marks omitted.) Id., quoting State v. Prioleau, supra, 235 Conn. at 322, 664 A.2d 743. | In murder prosecution, trial court's reading of entire definition of intent did not violate defendant's right to due process or deprive defendant of fair trial, and as such, his claim of instructional error did not satisfy Golding test, holding that defendant can prevail on unpreserved claim of constitutional error if certain conditions are met; court stated on at least six separate occasions that, for jury to find defendant guilty of murder, state had to prove that defendant specifically intended to cause victim's death, and this repeated instruction eliminated possibility of juror confusion with respect to intent. U.S.C.A. Const.Amend. 14; C.G.S.A. S 53a-3 (11). | Does the state have to prove the defendants intent to cause the death of another in order to secure a conviction for murder? | 019329.docx | LEGALEASE-00122448-LEGALEASE-00122449 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 5796 | Jones v. Clark, 42 Cal. 180 | 260+97 | But it is claimed that this finding is not justified by the evidence. It is true there is no evidence that the note was authorized by the company, at a company meeting, or that it was adopted in that manner after it had been executed by Longley. Nor is there any evidence either of the practice of this particular company, or of usage in similar companies, which would show the necessity of such action. Mining partnerships, where there are no partnership articles, are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits, or the established practice of the particular company has established a different rule. The only difference generally existing, as established by the decisions of this Court, are such as legitimately flow from the fact that in such partnerships there is no delectus person". (Bainbridge on Mines, 425.) | Where there are no partnership articles, mining partnerships are governed by the law of ordinary partnerships, except so far as the general usage of persons engaged in similar pursuits or the established practice of the particular company has established a different rule; the only differences generally existing being such as flow from the fact that in such partnerships there is no delectus personae. | Are mining partnerships governed by the laws of ordinary partnerships? | 021837.docx | LEGALEASE-00122498-LEGALEASE-00122499 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 5797 | Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency, 208 Ariz. 557 | 307A+3 | A motion in limine filed in a civil case "is generally used as a substitute for evidentiary objections at trial" and "as a means to exclude evidence from trial for violations of the disclosure rules." Zimmerman v. Shakman, 204 Ariz. 231, 235 12, 62 P.3d 976, 980 (App.2003).A trial court is given considerable discretion in resolving those issues, State v. Duzan, 176 Ariz. 463, 465, 862 P.2d 223, 225 (App.1993), and so we do not review its decisions until they are made. See McMurren v. JMC Builders, Inc., 204 Ariz. 345, 351 20 n. 7, 63 P.3d 1082, 1088 (App.2003) (holding against advisory opinions). Because the trial court has not ruled on the admissibility of this evidence, we remand, allowing it to exercise its discretion without advising it on how to make such a ruling. | A "motion in limine" filed in a civil case is generally used as a substitute for evidentiary objections at trial and as a means to exclude evidence from trial for violations of the disclosure rules. | Is a pretrial motion in limine used generally as a substitute for evidentiary objections at trial? | 024025.docx | LEGALEASE-00121928-LEGALEASE-00121929 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5798 | Kinda v. Carpenter, 203 Cal. Rptr. 3d 183 | 307A+3 | Motions in limine are "designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial." (Amtower, supra, 158 Cal.App.4th 1582, 1593, 71 Cal.Rptr.3d 361.) Their " " "usual purpose .. is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party." " " (Ibid.) As we have explained, the use of the in limine process to dispose of a case or cause of action for evidentiary reasons triggers a more rigorous standard of review in which we consider whether the nonmoving party has had a full and fair opportunity to state all the facts in its favor. ( Id. at p. 1595, 71 Cal.Rptr.3d 361.) All inferences and conflicts in the evidence must be resolved in favor of the nonmoving party. (Ibid.) "No matter how logical a moving party's motion may sound, a judge generally should not be weighing the evidence on a motion in limine." (R & B Auto Center, supra, 140 Cal.App.4th 327, 333, 44 Cal.Rptr.3d 426.). | Motions in limine are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are motions in limine designed to facilitate the management of a case by deciding difficult evidentiary issues in advance of trial? | 024035.docx | LEGALEASE-00121962-LEGALEASE-00121963 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5799 | Amtower v. Photon Dynamics, 158 Cal. App. 4th 1582 | 307A+3 | Strictly speaking, Photon's motion was not an in limine motion. In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. " "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence [ (3d. ed.1986) ], supra, " 2011 at p. 1969.) "The advantage of such motions is to avoid the obviously futile attempt to unring the bell in the event a motion to strike is granted in the proceedings before the jury." (Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337[, 145 Cal.Rptr. 47].)" " (Kelly v. New West Federal Savings (1996) 49 Cal.App.4th 659, 669, 56 Cal.Rptr.2d 803.) What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure. t has become increasingly common, however, for litigants to utilize in limine motions for this purpose.. | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are motions in limine designed to facilitate the management of a case by deciding difficult evidentiary issues in advance of trial? | Pretrial Procedure - Memo # 107 - C - SJ.docx | LEGALEASE-00012042-LEGALEASE-00012043 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5800 | In re Estate of McCreath, 240 P.3d 413 | 307A+2 | At any time after the last required pleading, with or without supporting affidavits, a party may move for determination of a question of law. If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question. C.R.C.P. 56(h). | At any time after the last required pleading, with or without supporting affidavits, a party may move for determination of a question of law. Rules Civ.Proc., Rule 56(h). | "Can a party move for determination of a question of law at any time after the last required pleading, with or without supporting affidavits?" | Pretrial Procedure - Memo # 170 - C - CRB.docx | ROSS-003324288-ROSS-003324289 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 5801 | Huckaby v. A.G. Perry & Son, 20 S.W.3d 194 | 307A+3 | The appellees urge on rehearing that an objection made in the form of a pretrial motion could not carry over to the trial because of the language in Rule 103(a)(1) which states, "When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." Tex.R. Evid. 103(a)(1). The appellees argue in the present case that this rule would not apply because the evidence in question was not "offered evidence." We do not read this rule to prevent a trial court from conducting a pretrial hearing or a hearing outside the presence of the jury on evidence that is contemplated to be offered. | Rule permitting trial court to hear objections to "offered evidence" out of the presence of the jury and rule on its admissibility does not prevent a trial court from conducting a pretrial hearing or a hearing outside the presence of the jury on evidence that is contemplated to be offered. Rules of Evid., Rule 103(a)(1). | Does a rule permitting a trial court to hear objections to offered evidence out of the presence of the jury and rule on its admissibility prevent a trial court from conducting a pretrial hearing? | 024117.docx | LEGALEASE-00121986-LEGALEASE-00121987 | Condensed, Order, SA | 0.59 | 1 | 1 | 0 | 1 | 1 |
| 5802 | Taylor v. Dowling Gosslee & Assocs., 22 So. 3d 246 | 307A+3 | Motions in limine present evidentiary matters that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000-0261 (La.2/2/2000), 753 So.2d 841; Randall v. Concordia Nursing Home, 2007-101 (La.App. 3d Cir.8/22/07), 965 So.2d 559, writ denied, 2007-2153 (La.1/7/08), 973 So.2d 726. This great discretion extends to the trial court's assessment of the probative value of evidence. Green v. Claiborne Elec. Co-op., Inc., 28,408 (La.App. 2d Cir.6/26/96), 677 So.2d 635. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. La. C.E. art. 403. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court; this great discretion extends to the trial court's assessment of the probative value of evidence. | Does a motion in limine present an evidentiary matter that is subject to the great discretion of the trial court? | Pretrial Procedure - Memo # 90 - C - JTB.docx | ROSS-003296504-ROSS-003296505 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 5803 | In re ADL Contracting Corp., 184 B.R. 436 | 366+7(1) | Courts dating back to the era of the civil law have recognized the social good that is furthered when sureties discharge obligations that exist upon the default of the general contractor. Pearlman, 371 U.S. at 137, 83 S.Ct. at 235 (citing Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595 (1887) (The right of subrogation is a creature of equity, and "is enforced solely for the purpose of accomplishing the ends of substantial justice")); Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896) (quoting Aetna L. Ins. Co. v. Middleport, 124 U.S. 534, 8 S.Ct. 625, 31 L.Ed. 537 (1888)) (internal quotations omitted) ("the doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice .."). In this spirit, the case law has firmly established that once a surety satisfies its obligation under either of the bonds, the surety accedes by the equitable doctrine of subrogation to the rights of the party whose rights were satisfied by its performance under the particular bond. United States v. California and California State Bd. of Equalization, 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (citing Munsey Trust, 332 U.S. at 242, 67 S.Ct. at 1603); Pearlman, 371 U.S. at 136"37, 83 S.Ct. at 234"35 (citations omitted) ("[p]robably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.") | Once surety satisfies its obligation under payment or performance bond, surety accedes by equitable doctrine of subrogation to rights of party whose rights were satisfied by its performance under bond. | "Once a surety satisfies its obligation under a payment or performance bond, does the surety accede by the equitable doctrine of subrogation to the rights of a party whose rights were satisfied by its performance under bond?" | Subrogation - Memo # 918 - C - CAR.docx | ROSS-003282821-ROSS-003282822 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 5804 | Lesikar v. EOG Res., 236 S.W.3d 457 | 13+61 | So too do we recognize that when obligations are ongoing (such as the duty to make periodic payments of money), claims for their breach normally do not accrue until default occurs. See Slusser v. Union Bankers Ins. Co., 72 S.W.3d 713, 717 (Tex.App.-Eastland 2002, no pet.) (stating that when a duty exists to make periodic payments, a separate cause of action arises for each missed payment). And, without default, there is no claim.This is of import when considered against the framework of the Rule 11 agreement at bar. Again, the $22,500 was payment to resolve "allegations brought or which could have beenz brought." (Emphasis added). Claims that have yet to accrue when the settlement was reached because default had yet to occur could not have been brought in the lawsuit. Logic and rules of jurisdiction dictate that one cannot sue for damages arising from conduct that has never occurred. And while parties can release unknown claims and damages that arise in the future, Keck, Mahin & Cate v. National Fire Union Ins. Co., 20 S.W.3d 692, 698 (Tex.2000), we hesitate to read such an expansive intent into a document lacking words expressly indicative of such an intent and contemplating an ongoing business relationship. | When obligations are ongoing, such as the duty to make periodic payments of money, claims for their breach normally do not accrue until default occurs, and without default, there is no claim. | "Do claims for breach normally accrue when obligations are ongoing, such as the duty to make periodic payments of money?" | 05182.docx | LEGALEASE-00084894-LEGALEASE-00084895 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5805 | Smith v. Minnesota Mut. Life Ins. Co., 86 Cal. App. 2d 581 | 13+61 | The term "accrue", as applied to a cause of action, means to arrive; to commence; to come into existence; to become a present enforceable demand. A cause of action accrues at the moment when the party owning it is entitled to begin and prosecute an action thereon. Los Angeles County v. Metropolitan Casualty Insurance Company, 135 Cal.App. 26, 26 P.2d 699. The reasoning applied in the case of Columbian National Life Insurance Company v. Lemmons, supra, seems quite appropriate to a proper disposition of this case. There it was said, 222 P. at page 258: The cause of action would survive to the administrator if founded on a contract. The same rule applies in actions on implied or quasi contracts, although founded upon a tort. | The term "accrue" as applied to cause of action means to arrive, to commence, to come into existence, to become a present enforceable demand. | "Does the term ""accrue"" mean to arrive, to commence, to come into existence, to become a present enforceable demand?" | 005496.docx | LEGALEASE-00123801-LEGALEASE-00123802 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5806 | Perez v. Todd Shipyards Corp., 999 S.W.2d 31 | 13+61 | See also Fairchild Aircraft Corp. v. Cambell, 184 B.R. 910, 932"34 (Bankr.W.D.Texas 1995) (holding that aircraft manufacturer's pre-bankruptcy-petition conduct resulting in injuries which occurred post-petition were not dischargeable because of notions of dues process and fundamental fairness). The court found that the legislative history of Section 101(5) provides a decisional matrix. "On the one hand, bankruptcy claims encompass the "broadest" relief of the estate. On the other, bankruptcy claims can go no further that what is possible." Id. at 925. A " "[c]laim" ought not do what is "not possible" in a court of law-it may not authorize courts to ride roughshod over due process and notions of fundamental fairness.." Id. at 927. Under Texas law, a cause of action accrues when the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. Diaz v. Westphal, 941 S.W.2d 96, 99 (Tex.1997); Harrison County Finance Corp. v. KPMG Peat Marwick, LLP, 948 S.W.2d 941, 946 (Tex.App.-Texarkana 1997, no writ). | Cause of action accrues when the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. | Does the cause of action accrue when the plaintiff has known or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury? | Action - Memo # 128 - C CS.docx | ROSS-003299141-ROSS-003299142 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5807 | Louviere v. State, Louisiana Dep't of Educ., 2004-1897 (La. App. 1 Cir. 9/23/05), 923 So. 2d 146 | 401+2 | All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.Based on the allegations set forth in plaintiffs' petition, we conclude that plaintiffs' causes of action arose in St. Mary Parish. Under Louisiana law, a cause of action accrues when a party has the right to sue. Landry v. Avondale Industries, Inc., 03-0719, p. 4 (La.12/3/03), 864 So.2d 117, 122. A plaintiff's injury in a wrongful death action occurs when the victim dies. Walls v. American Optical Corp., 98-0455, p. 9 (La.9/8/99), 740 So.2d 1262, 1270. The supreme court has often recognized that a wrongful death action does not arise until the date of the victim's death. Id. Thomas' death occurred in St. Mary Parish, and thus, it is the parish in which plaintiffs' wrongful death action arose. | A cause of action accrues when a party has the right to sue for purposes of statute providing that all suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises. LSA-R.S. 13:5104(A). | Does a cause of action arise when plaintiff has right to sue? | 005523.docx | LEGALEASE-00123839-LEGALEASE-00123840 | Condensed, Order, SA, Sub | 0.6 | 1 | 1 | 1 | 1 | 1 |
| 5808 | In re Weinberger's Estate, 203 Neb. 674 | 13+61 | In the cases now before us the only performance remaining to be done by the seller under the sale contract, which was binding upon the heirs, executors, administrators, personal representatives, successors, and assigns of the decedent, was the delivery of a warranty deed to the purchasers conveying merchantable title to the premises. That performance was not required under the contracts until the purchasers completed payment for the land in 1981. At the time of the death of the decedent there was no breach of contract on the part of the seller, nor did the purchasers have any claim or cause of action against the decedent which could be presented or exhibited to the county court. A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned him, but not until then. See 1 Am.Jur.2d, Actions, s 89, p. 618. Similarly, a cause of action on a covenant of warranty or for quiet enjoyment does not accrue in favor of the covenantee until eviction or surrender by reason of a paramount title. See, Campbell v. Gallentine, 115 Neb. 789, 215 N.W. 111; Burling v. Estate of Allvord, 77 Neb. 861, 110 N.W. 683. | Cause of action in contract accrues at time of breach or failure to do thing agreed to, irrespective of any knowledge on part of plaintiff or of any actual injury occasioned him, but not until then. | Does a cause of action in contract accrue at time of breach or failure to do a thing agreed to? | Action - Memo # 138 - C CS.docx | ROSS-003312467-ROSS-003312469 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5809 | Hanes Dye & Finishing Co. v. Caisson Corp., 309 F. Supp. 237 | 13+61 | Defendants seemingly have based their contention that this is a premature tort action upon their further assertion that damages are not yet fully ascertainable. Their argument finds little basis in law. The North Carolina Supreme Court has explicitly held that a cause of action, whether in tort or contract, accrues upon the breach of a duty owed by one to another. It is the act by which the duty is breached and not the ensuing damages which give birth to a cause of action. | It is act by which duty is breached and not ensuing damages which gives rise to cause of action, and cause of action whether in tort or contract accrues upon breach of duty owed by one to another. | "Is it the act by which duty is breached, and not ensuing damages, which gives rise to cause of action?" | Action - Memo # 178 - C CS.docx | ROSS-003298668-ROSS-003298669 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 5810 | Matthieu v. Piedmont Nat. Gas Co., 269 N.C. 212 | 241+43 | A cause of action accrues and the statute of limitations begins to run whenever a party becomes liable to an action, if at such time the demanding party is under no disability. This rule is subject to certain exceptions, such as torts grounded on fraud or mistake, none of which are applicable to the instant case. However, the more difficult question is to determine when the cause of action accrues. In the case of Mast v. Sapp, 140 N.C. 533, 53 S.E. 350, 5 L.R.A.,N.S., 379, this Court said: "Where there is a breach of an agreement or the invasion of a right, the law infers some damage. The losses thereafter resulting from the injury, at least where they flow from it proximately and in continuous sequence, are considered in aggravation of damages. The accrual of the cause of action must, therefore, be reckoned from the time when the first injury was sustained. When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of the term, at once springs into existence and the cause of action is complete." | When right of party is once violated, even if ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete. G.S. S 1-52. | "If the right of a party is once violated, does the injury at once spring into existence and the cause of action get completed?" | Action - Memo # 30 - C - LK.docx | ROSS-003326547-ROSS-003326549 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5811 | Paradissiotis v. United States, 49 Fed. Cl. 16 | 148+13 | In settled Fifth Amendment jurisprudence, "a taking is more readily ... found when the interference with property can be characterized as a physical invasion by the government ... than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Shanghai, 4 Cl.Ct. at 242 (quoting Penn Cent. Transp., 438 U.S. at 124, 98 S.Ct. 2646) (internal quotations omitted). A regulation that burdens private property may "constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose ...." Penn Cent. Transp., 438 U.S. at 127, 98 S.Ct. 2646 (internal quotations omitted). In the area of foreign relations, the government, and especially the executive branch, is given "generous scope to accomplish its purpose," Propper v. Clark, 337 U.S. 472, 481, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949), and may cause extreme difficulties for foreign countries and their citizens in order to preserve the security of the United States. Tran Qui Than v. Regan, 658 F.2d 1296, 1304 (9th Cir.1981); see also Belk v. United States, 12 Cl.Ct. 732, 735 (1987) (citing United States v. Curtiss-Wright Corp., 299 U.S. 304, 320, 57 S.Ct. 216, 81 L.Ed. 255 (1936), and stating that when foreign relations are at issue, in takings cases as well as others, the president will not be questioned on whether his actions are for the public good), aff'd, 858 F.2d 706 (Fed.Cir.1988). | A regulation that burdens private property may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose. U.S.C.A. Const.Amend. 5. | Does a regulation that burdens private property constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose? | Eminent Domain - Memo 219 - GP.docx | ROSS-003287074-ROSS-003287075 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5812 | McKeel v. Islamic Republic of Iran, 722 F.2d 582 | 221+140 | Informed as we must be by that practice the issue before us is whether the embassy in Tehran is "territory subject to the jurisdiction of the United States." Appellants contend that it is. Territory, of course, is a primary basis for jurisdiction, i.e., a state may prescribe and enforce a rule of law for conduct occurring in territory under the state's sovereignty. Restatement (Second) of the Foreign Relations Law of the United States "" 10, 17, 20 (1965) [hereinafter cited as Restatement (Second)]. A United States embassy, however, remains the territory of the receiving state, and does not constitute territory of the United States. Restatement (Second) " 77 comment a. Thus, United States embassies are not within the territorial jurisdiction of the United States. See Meredith v. United States, 330 F.2d 9, 10"11 (9th Cir.), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964). | Territory is a primary basis for jurisdiction and a state may prescribe and enforce a rule of law for conduct occurring in territory under that state's sovereignty. | Is territory a primary basis for jurisdiction and can a state prescribe and enforce a rule of law for conduct occurring in territory under that state's sovereignty? | International Law - Memo # 12 - C - LK.docx | LEGALEASE-00013025-LEGALEASE-00013027 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5813 | O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449 | 221+343 | When the causal chain between a defendant's alleged conduct and plaintiff's injury cannot be determined without an inquiry into the motives of the foreign government, claims made under the antitrust laws are dismissed. Hunt, supra; Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F.Supp. 92, 108-12 (C.D.Cal.1971), aff'd, 461 F.2d 1261 (9th Cir.), cert. denied, 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972); Clayco Petroleum Corp. v. Occidental Petroleum Corp., 712 F.2d 404, 406-08 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). Furthermore, whereas here the conduct of the appellees has been compelled by the foreign government they are entitled to assert the defense of foreign government compulsion and the act of state doctrine is applicable. | Where conduct of defendant has been compelled by foreign government, defendant is entitled to assert the defense of foreign government compulsion and act of state doctrine is applicable. | "Where conduct of the defendant has been compelled by a foreign government, is a defendant entitled to assert the defense of foreign government compulsion and is the act of state doctrine applicable?" | International Law - Memo # 406 - C - MLS.docx | ROSS-003302499-ROSS-003302500 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5814 | United States v. Funmaker, 10 F.3d 1327 | 221+342 | Lastly, Funmaker contends that the government prosecuted him in violation of the act of state doctrine. That doctrine dictates that courts will not sit in judgment on the acts of another country done within that country's territory. See Antolok v. United States, 873 F.2d 369, 384 (D.C.Cir.1989). Courts apply the act of state doctrine if deciding a case "might frustrate the conduct of foreign relations by the political branches of the government."First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 767"68, 92 S.Ct. 1808, 1813"14, 32 L.Ed.2d 466 (1972). | "Act of state doctrine" dictates that courts will not sit in judgment of acts of another country done within that country's territory; courts apply the act of state doctrine if deciding a case might frustrate the conduct of foreign relations by political branches of the government. | Does the act of state doctrine dictate that courts will not sit in judgment of acts of another country done within that country's territory? | 020382.docx | LEGALEASE-00123741-LEGALEASE-00123742 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 5815 | Doe v. Roman Catholic Diocese of Galveston-Houston, 408 F. Supp. 2d 272 | 221+151 | Judicial willingness to withdraw from any review over this unilateral executive determination has long and deep constitutional roots. See Rich, 295 F.2d at 26. As the Supreme Court discussed in Baker v. Carr, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the justiciability doctrine limits"and in some cases, prohibits"federal courts from hearing suits that could impact authority explicitly given to a coordinate branch of government by the Constitution. Id. at 210"11, 82 S.Ct. 691. The field of foreign affairs contains numerous examples of areas of control wholly within the executive branch. See, e.g., Goldwater v. Carter, 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (holding a senator's challenge to the president's decision to withdraw from a treaty nonjusticiable); United States v. Curtiss"Wright Corp., 299 U.S. 304, 315, 57 S.Ct. 216, 81 L.Ed. 255 (1936) (finding a challenge to the executive's interpretation of a treaty obligation nonjusticiable on the ground that the resolution at issue affected "a situation entirely external to the United States, and .. within the category of foreign affairs"). Although not every case impacting foreign affairs is nonjusticiable, cases involving foreign heads of state are routinely found nonjusticiable or justiciable but subject to absolute immunity for the foreign heads of state. Compare Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 587, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (finding a challenge to the president's reliance on his Article II powers to seize steel mills both justiciable and unconstitutional); Dames & Moore v. Regan, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981) (addressing and upholding the constitutionality of the president's use of executive agreements instead of treaties to implement a foreign policy agreement) with, e.g., Ex Parte Peru, 318 U.S. at 588, 63 S.Ct. 793. Although courts often determine questions of foreign-sovereign immunity when the executive branch does not explicitly recognize a claim of immunity and | Although not every case impacting foreign affairs is nonjusticiable, cases involving foreign heads of state are routinely found nonjusticiable or justiciable but subject to absolute immunity for the foreign heads of state. | Are cases involving foreign heads of state routinely found nonjusticiable or justiciable? | 020925.docx | LEGALEASE-00123213-LEGALEASE-00123214 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5816 | George Lawrence v. Brodie, 302 Mass. 557 | 302+8(5) | The plaintiff contends, however, that, apart from the question whether a constructive trust can be made out, and that although it might sue Brodie in an action at law for the goods furnished "during operation and bring trustee process' against Donovan, nevertheless the springs which the plaintiff furnished for the original "inventory" to the value of $701.63 "was a sale by the plaintiff to Brodie and was by the agreement with Donovan to have been furnished as part payment for Brodie's stock in the corporation." The allegations of the bill are identical, in so far as the plaintiff is concerned, as to the transactions relating to the furnishing of the springs and also of the merchandise. In both instances, according to the bill, the plaintiff furnished the materials to Donovan at the direction of Brodie and charged their value to the corporation. We see no distinction or difference between these transactions, in so far as the plaintiff's right to recover for the value of the merchandise is concerned. But the plaintiff contends that, inasmuch as the springs were furnished under the agreement by which Brodie was to receive stock of the proposed corporation, and inasmuch as Donovan failed and refused to organize the corporation as he had agreed, Brodie's remedy against Donovan is for breach of contract, and that such a claim cannot be reached by trustee process. It is true that the bill recites that Donovan promised to pay Brodie for the merchandise, as distinguished from the springs, "and is indebted to the defendant Brodie for said sum and for $701.63 for the original inventory * * *." It is also true that a general averment that a defendant owes a plaintiff is a mere statement of a conclusion of law from facts previously stated, is not an allegation of a distinct substantive fact, and is not admitted on demurrer. Millard v. Baldwin, 3 Gray 484, 486; Hollis v. Richardson, 13 Gray 392; Foss v. Lowell Five Cents Savings Bank, 111 Mass. 285, 287. But in the case of | A general averment that a defendant owes a plaintiff is a mere statement of a conclusion of law from facts previously stated and is not an allegation of a distinct substantive fact and is not admitted on demurrer. | Is an averment that a defendant owes a plaintiff a mere statement of a conclusion of law? | 022944.docx | LEGALEASE-00123535-LEGALEASE-00123537 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 5817 | Francis v. State, 758 N.E.2d 528 | 110+632(4) | Granting a motion in limine does not determine the ultimate admissibility of the evidence. Godby v. State, 736 N.E.2d 252, 255 (Ind.2000), reh'g denied. Rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. Wright v. State, 593 N.E.2d 1192, 1194 (Ind.1992). If the trial court errs by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is in admitting the evidence at trial in violation of an evidentiary rule, not in rescinding a previous order in limine. Short v. State, 443 N.E.2d 298, 308 (Ind.1982) ("[I]f a Motion in Limine is granted and then at trial the court decides to admit the evidence, the error is not in violating the Motion in Limine but in admitting the evidence."). The record shows the trial court admitted the testimony over Francis' hearsay objection on the basis that a conspiracy had been established. R. at 673"74. See Ind. Evidence Rule 801(d)(2)(E); Barber v. State, 715 N.E.2d 848, 852 (Ind.1999) ("A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is not hearsay and is therefore admissible." (quotation omitted)). Despite Francis' argument to the contrary, by the time Jones testified there was sufficient evidence before the trial court to demonstrate the existence of a conspiracy between Francis and Dangerfield. See Ind.Code " 35"41"5"2(a), (b) (listing the elements of conspiracy as: (1) intent to commit a felony; (2) an agreement with another person to commit the felony; and (3) an overt act in furtherance of that agreement).5 We find no error here. | Granting a motion in limine does not determine the ultimate admissibility of the evidence; rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. | Is the purpose of a ruling in limine to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself? | 024066.docx | LEGALEASE-00123098-LEGALEASE-00123100 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5818 | Amtower v. Photon Dynamics, 158 Cal. App. 4th 1582 | 307A+3 | Strictly speaking, Photon's motion was not an in limine motion. In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. " "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence [ (3d. ed.1986) ], supra, " 2011 at p. 1969.) "The advantage of such motions is to avoid the obviously futile attempt to unring the bell in the event a motion to strike is granted in the proceedings before the jury." (Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337[, 145 Cal.Rptr. 47].)" " (Kelly v. New West Federal Savings (1996) 49 Cal.App.4th 659, 669, 56 Cal.Rptr.2d 803.) What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure. It has become increasingly common, however, for litigants to utilize in limine motions for this purpose. | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are motions in limine designed to facilitate management of a case by deciding difficult evidentiary issues in advance of trial? | Pretrial Procedure - Memo 342 - TH.docx | ROSS-003309466-ROSS-003309468 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5819 | Wilkinson v. British Airways, 292 A.D.2d 263 | 307A+3 | Contrary to plaintiff's contentions, there is no requirement that an in limine motion be made in writing and be in accordance with CPLR 2214. The court, therefore, properly considered defendant's oral application (see generally, State of New York v. Metz, 241 A.D.2d 192, 198, 671 N.Y.S.2d 79). | There is no requirement that an in limine motion be made in writing and be in accordance with rule governing motion papers, and an oral motion in limine may properly be considered by court. McKinney's CPLR 2214. | "Is there requirement that an in limine motion be made in writing and be in accordance with rule governing motion papers, and an oral motion in limine may properly be considered by court?" | 028960.docx | LEGALEASE-00122865-LEGALEASE-00122866 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 5820 | Gilcrease v. Gilcrease, 438 So. 2d 658 | 307A+748 | La.C.C.P. Art. 15512 outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice. La.C.C.P. Art. 1551; Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973). | Theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of case; accordingly, pretrial order or agreement controls subsequent course of action, though it can be modified at trial to prevent substantial injustice. LSA-C.C.P. art. 1551. | What is the theory inherent in pre-trial procedure? | 029021.docx | LEGALEASE-00122707-LEGALEASE-00122708 | SA, Sub | 0.38 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5821 | Ball v. Rao, 48 S.W.3d 332 | 307A+3 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet.) The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App."Houston [14th Dist.] 2000, no pet.); Enserch Corp., 977 S.W.2d at 757. The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court and we, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | The purpose of a motion in limine is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. | Is the purpose of a motion in limine to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury? | Pretrial Procedure - Memo # 64 - C - VA.docx | ROSS-003324944-ROSS-003324945 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5822 | Powell v. Alan Young Homes, 251 Ga. App. 72 | 307A+3 | The trial court has an absolute right to refuse to decide on the admissibility of evidence ... prior to trial [and] may reserve ruling on the admissibility of evidence until it is offered during trial." Where the plaintiff fails to raise an objection to the evidence when it is presented, he forfeits his right to have the evidence excluded. Furthermore, "[e]xcept as otherwise provided in OCGA " 5-5-24(c), in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." | Trial court has an absolute right to refuse to decide on the admissibility of evidence prior to trial and may reserve ruling on the admissibility of evidence until it is offered during trial. | Does a trial court have an absolute right to refuse to decide on the admissibility of evidence prior to trial and can it reserve ruling on the admissibility of evidence until it is offered during trial? | Pretrial Procedure - Memo # 67 - C - VA.docx | ROSS-003326255-ROSS-003326256 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 5823 | Compassion in Dying v. State of Wash., 79 F.3d 790 | 368+3 | The state clearly has a legitimate interest in safeguarding the interests of innocent third parties such as minor children and other family members dependent on persons who wish to commit suicide. That state interest, however, is of almost negligible weight when the patient is terminally ill and his death is imminent and inevitable. The state cannot help a minor child or any other innocent third party by forcing a terminally ill patient to die a more protracted and painful death. In fact, witnessing a loved one suffer a slow and agonizing death as a result of state compulsion is more likely to harm than further the interests of innocent third parties. | State has legitimate interest in safeguarding interests of innocent third parties such as minor children and other family members dependent on persons who wish to commit suicide; interest is of almost negligible weight when patient is terminally ill and his or her death is imminent and inevitable. | Does the state have an interest in safeguarding the interests of innocent third parties who are dependent on people who commit suicide? | Suicide - Memo 31 - RK.docx | ROSS-003283950 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 5824 | Washington v. Glucksberg, 521 U.S. 702 | 92+4455 | The history of the law's treatment of assisted suicide in this country has been and continues to be one of the rejection of nearly all efforts to permit it. That being the case, our decisions lead us to conclude that the asserted "right" to assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause. The Constitution also requires, however, that Washington's assisted-suicide ban be rationally related to legitimate government interests. See Heller v. Doe, 509 U.S. 312, 319"320, 113 S.Ct. 2637, 2642"2643, 125 L.Ed.2d 257 (1993); Flores, 507 U.S., at 305, 113 S.Ct., at 1448"1449. This requirement is unquestionably met here. As the court below recognized, 79 F.3d, at 816"817,20 Washington's assisted-suicide ban implicates a number of state interests.21 See 49 F.3d, at 592"593; Brief for State of California et al. as Amici Curiae 26"29; Brief for United States as Amicus Curiae 16"27. | Asserted right to assistance in committing suicide is not fundamental liberty interest protected by due process clause; history of law's treatment of assisted suicide has been and continues to be rejection of nearly all efforts to permit it. U.S.C.A. Const.Amends. 5, 14. | Does the statute prohibiting assisted suicide violate due process clauses? | Suicide - Memo 37 - JS.docx | ROSS-003284163-ROSS-003284164 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 5825 | Lippert v. Bailey, 241 Cal. App. 2d 376 | 13+61 | A party's right to recover against a purported wrongdoer is contingent upon his ability to state a "cause of action" against that party. The phrase "cause of action" is subject to different meanings dependent on its usage in a given context. (Stafford v. Yerge, 129 Cal.App.2d 165, 171, 276 P.2d 649.) The usage which is required to connote the existence of a remedial right is one pertaining to an obligation or right which is sought to be enforced as opposed to a meaning connoting a legal theory of recovery. (Ideal Hardware and Supply Company v. Department of Employment, 114 Cal.App.2d 443, 448, 250 P.2d 353.) The right or obligation constituting the cause of action does not arise, however, until some primary right of a party has been impinged upon by a wrongdoer in violation of a duty owed by the wrongdoer to that party. (Panos v. Great Western Packing Company, 21 Cal.2d 636, 638, 134 P.2d 242; 2 Witkin, California Procedure, Pleading s 11, p. 984.) | Right or obligation constituting cause of action does not arise until some primary right of a party has been impinged upon by wrongdoer in violation of duty owed by wrongdoer to that party. | Does the right or obligation constituting the cause of action arise when a primary right of a party has been impinged upon by a wrongdoer? | 006357.docx | LEGALEASE-00124339-LEGALEASE-00124340 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5826 | United States v. Rosen, 716 F.3d 691 | 63+1(1) | Were, each of the crimes of conviction could be proven by evidence of an illegal quid pro quo agreement, which we have previously defined as "a government official's receipt of a benefit in exchange for an act he has performed, or promised to perform, in the exercise of his official authority." United States v. Ganim, 510 F.3d 134, 141 (2d Cir.2007); see N.Y. Pub. Off. Law " 73(5)(a) (prohibiting exchanges intended to influence a state legislator in his official duties). To establish the " "corrupt" intent necessary to a bribery conviction," the Government must prove that the defendant had " "a specific intent to give ... something of value in exchange for an official act," " United States v. Alfisi, 308 F.3d 144, 149 (2d Cir.2002) (emphasis in original) (quoting United States v. Sun"Diamond Growers of Cal., 526 U.S. 398, 404"05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999)), which generally includes any act taken "under color of official authority," Ganim, 510 F.3d at 142 n. 4. We have made it crystal clear that the federal bribery and honest services fraud statutes that Rosen was convicted of violating criminalize "scheme[s] involving payments at regular intervals in exchange for specific official [] acts as the opportunities to commit those acts arise," even if "the opportunity to undertake the requested act has not arisen," id. at 147, and even if the payment is not exchanged for a particular act but given with the expectation that the official will "exercise particular kinds of influence," United States v. Coyne, 4 F.3d 100, 114 (2d Cir.1993). "Once the quid pro quo has been established, ... the specific transactions comprising the illegal scheme need not match up this for that." Ganim, 510 F.3d at 147. | To establish the corrupt intent necessary to support a federal bribery conviction, the government must prove that the defendant had a specific intent to give something of value in exchange for an official act, which generally includes any act taken under color of official authority. 18 U.S.C.A. S 666(a)(2). | Does bribery require a specific intent? | 011012.docx | LEGALEASE-00125443-LEGALEASE-00125444 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5827 | Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Office of Am. Corp., 20 F.3d 1224 | 221+342 | We therefore turn to an analysis of the act of state doctrine and its applicability in this case. As we have stated: Under the [act of state] doctrine, the courts of this country will refrain from judging the validity of a foreign state's governmental acts in regard to matters within that country's borders. Environmental Tectonics v. W.S. Kirkpatrick, Inc., 847 F.2d 1052, 1057"58 (3d Cir.1988) (citations omitted) (Environmental Tectonics Circuit Op.), aff'd, W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) (Environmental Tectonics S.Ct. Op.). "The act of state doctrine is not some vague doctrine of abstention but a "principle of decision binding on federal and state courts alike." " Environmental Tectonics S.Ct. Op., 493 U.S. at 406, 110 S.Ct. at 705 (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 427, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964)). "Act of state issues only arise when a court must decide"that is, when the outcome of the case turns upon"the effect of official action by a foreign sovereign." Environmental Tectonics S.Ct. Op., 493 U.S. at 406, 110 S.Ct. at 705. | Under act of state doctrine, courts will refrain from judging validity of foreign state's governmental acts in regard to matters within that country's borders. | Does the act of state doctrine provide that courts in the United States will generally refrain from examining the validity of a foreign state's governmental acts in regard to matters within its own territory? | 020257.docx | LEGALEASE-00124753-LEGALEASE-00124755 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 5828 | Nat'l Coal. Gov't of Union of Burma v. Unocal, 176 F.R.D. 329 | 221+342 | Nonetheless, Unocal has presented no evidence that SLORC's alleged jus cogens violations of international law are or were official acts. "It is only when officials having sovereign authority act in an official capacity that the Act of State Doctrine applies." Estate I, 25 F.3d at 1471 (citing Jimenez v. Aristeguieta, 311 F.2d 547, 557"58 (5th Cir.1962)). Moreover, an official may violate international law under color of authority even when the official is not acting within an official mandate. Id. at 1472 n. 8. | For purposes of act of state doctrine, official may violate international law under color of authority even when official is not acting within official mandate. | "For purposes of the act of state doctrine, may an official violate international law under color of authority even when an official is not acting within official mandate?" | International Law - Memo # 418 - C - MLS.docx | ROSS-003285588-ROSS-003285590 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5829 | United States v. Hendron, 813 F. Supp. 973 | 221+342 | Defendant refers to the Act of State doctrine but does not discuss it. It embodies the principle that "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The doctrine is not one of immunity and presents no jurisdictional question. It "addresses the Court's permissible scope of inquiry into certain governmental acts." United States v. Noriega, 746 F.Supp. 1506, 1521 (S.D.Fla.1990). For the doctrine to apply, the defendant must show that he performed public acts on behalf of the state. Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976). Whether Szwonder acted on behalf of the government of Poland is an issue of fact yet to be resolved. The Act of State doctrine is not a basis for dismissing the indictment. | "Act of state doctrine" addresses court's permissible scope of inquiry into certain governmental acts and application of doctrine requires showing by defendant that he perform public acts on behalf of the state; doctrine is not one of immunity and presents no jurisdictional question. | Does the Act of State doctrine address the court's permissible scope of inquiry into certain governmental acts? | International Law - Memo # 425 - C - MLS.docx | ROSS-003287618-ROSS-003287619 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5830 | Callejo v. Bancomer, S.A., 764 F.2d 1101 | 221+342 | In the present case, we need not decide whether to adopt the commercial activity exception, since Mexico's actions were clearly sovereign and not commercial in nature. For act of state (as opposed to sovereign immunity) purposes, the relevant acts are not merely those of the named defendants, but any governmental acts whose validity would be called into question by adjudication of the suit. Here, although the specific act complained of by the Callejos was Bancomer's breach of contract, not Mexico's promulgation of the exchange control regulations, adjudication of the breach of contract claim would necessarily call into question the Mexican regulations. Under these regulations, Bancomer has discharged its obligation to the Callejos by paying off the certificates in pesos at the established rate of exchange. Thus, we could require Bancomer to honor the terms of the certificates only by disregarding the regulations. See Braka v. Bancomer, S.N.C., 762 F.2d 222, 22"26 (2d Cir.1985). | For act of state, as opposed to sovereign immunity, purposes, relevant acts are not merely those of named defendants, but any governmental acts whose validity would be called into question by adjudication of suit. | "For act of state purposes, are relevant acts merely those of named defendants?" | 020364.docx | LEGALEASE-00124398-LEGALEASE-00124399 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5831 | Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1164 | 221+342 | "The act of state doctrine is not a jurisdictional limit on courts, but rather "a prudential doctrine designed to avoid judicial action in sensitive areas." " Liu v. Republic of China, 892 F.2d 1419, 1431 (9th Cir.1989) (quoting Int'l Ass'n of Machinists & Aerospace Workers v. OPEC, 649 F.2d 1354, 1359 (9th Cir.1981)). | Act of state doctrine is not jurisdictional limit on courts, but rather prudential doctrine designed to avoid judicial action in sensitive areas. | "While sovereign immunity addresses jurisdiction of court, is the act of state doctrine a prudential doctrine designed to avoid judicial action in sensitive areas?" | 020518.docx | LEGALEASE-00124514-LEGALEASE-00124515 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5832 | United States v. Noriega, 746 F. Supp. 1506 | 221+342 | In order for the act of state doctrine to apply, the defendant must establish that his activities are "acts of state," i.e., that they were taken on behalf of the state and not, as private acts, on behalf of the actor himself. Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976). "That the acts must be public acts of the sovereign has been repeatedly affirmed." Marcos I, 806 F.2d at 358. (emphasis in original). Though the distinction between the public and private acts of government officials may prove elusive, this difficulty has not prevented courts from scrutinizing the character of conduct in question. Id. at 359 (distinguishing deposed Philippine President Ferdinand Marcos' acts as head of state from his purely private acts); Dunhill, 425 U.S. at 695, 96 S.Ct. at 1862 (commercial activities are not acts of state); Sharon v. Time, Inc., 599 F.Supp. 538, 544"45 (S.D.N.Y.1984) (Defense Minister's alleged support of massacre was not the policy of Israeli government and therefore not an act of state); De Roburt v. Gannett Co., 733 F.2d 701, 704 (9th Cir.1984) (act of state doctrine does not apply to foreign ruler's private, unofficial acts), cert. denied, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); Jimenez v. Aristeguieta, 311 F.2d 547, 557"58 (5th Cir.1962) (foreign dictator's financial crimes were for his own personal benefit and therefore were not public acts sufficient to invoke act of state defense), cert. denied, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963). | In order for act of state doctrine to apply, defendant must show that activities were taken on behalf of state and were not private acts taken on behalf of actor himself. | "In order for act of state doctrine to apply, must a defendant show that activities were taken on behalf of state and were not private acts taken on behalf of actor himself?" | International Law - Memo 596 - TH.docx | ROSS-003295460-ROSS-003295462 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5833 | Davis v. Quality Pest Control, 641 S.W.2d 324 | 302+48 | Rule 47 of the Texas Rules of Civil Procedure requires that a pleading contain "... a short statement of a cause of action sufficient to give fair notice of the claim involved...." This has been characterized by McDonald as a thoroughly practical test: "Does the pleading give adequate notice?" 2 R. McDonald, Texas Civil Practice " 5.05 (rev. 1982). The test is whether "an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant," Rodriguez v. Yenawine, supra; see also, Eagle Trucking Company v. Texas Bitulithic Company, 590 S.W.2d 200 (Tex.Civ.App."Tyler 1979), aff'd in part and rev'd in part on other grounds, 612 S.W.2d 503 (Tex.1981); 2 R. McDonald, Texas Civil Practice " 5.05 (rev. 1982). If the opposing party is not misled and if no special exceptions have been filed, the petition may even allege legal conclusions. Neuhaus v. Kain, 557 S.W.2d 125 (Tex.Civ.App."Corpus Christi 1977, writ ref'd n.r.e.); Paxton v. Spencer, 503 S.W.2d 637 (Tex.Civ.App."Corpus Christi 1973, no writ); Tex.R.Civ.P. 45(b). | Test for determining whether pleading gives adequate notice is whether an opposing attorney of reasonable competence, with pleadings before him, can ascertain nature and basic issues of controversy and testimony probably relevant. | What is the test for determining whether a pleading gives adequate notice? | 022978.docx | LEGALEASE-00125380-LEGALEASE-00125381 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 5834 | Lloyd's, U.S. Corp. v. Landis, 777 S.W.2d 470 | 302+48 | The Texas Rules of Civil Procedure require that pleadings in the district court are to consist of a statement in plain and concise language of the cause of action, sufficient to give fair notice of the claim involved, and in a claim for unliquidated damages, only a statement that the damages sought exceed the minimum jurisdictional limits of the court. Tex.R.Civ.P. 45 and 47. In determining whether the pleadings are sufficient to give fair notice "[t]he test should be whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." 2 R. McDonald, Texas Civil Practice sec. 5.05 (rev.1982). Davis v. Quality Pest Control, 641 S.W.2d 324 (Tex.App."Houston [14th Dist.] 1982, writ ref'd n.r.e.); Rodriguez v. Yenawine, 556 S.W.2d 410 (Tex.Civ.App."Austin 1977, no writ). To be sufficient, pleadings should give fair and adequate notice of the facts upon which the pleader relies in order that the adversary can properly prepare his defense. Murray v. O & A Express, Inc., 630 S.W.2d 633 (Tex.1982); Stone v. Lawyers Title Insurance Corporation, 554 S.W.2d 183 (Tex.1977). In the absence of special exceptions, pleadings are to be liberally construed. Id. Where there is a question of whether a cause of action has been stated, the court will look to the intentions of the pleader and uphold the pleadings and the judgment rendered thereon even if some element of a cause of action has not been alleged specifically. Roark v. Allen, 633 S.W.2d 804 (Tex.1982). | Where there is question of whether pleadings state cause of action, court will look to intentions of pleader and uphold pleadings and judgment rendered thereon even if some element of cause of action has not been alleged specifically. | What will the courts look to when there is a question as to whether a cause of action has been stated? | 022982.docx | LEGALEASE-00125386-LEGALEASE-00125387 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 5835 | Weidner v. Sanchez, 14 S.W.3d 353 | 388+133.6(2) | In their second point of error, appellants contend the trial court erred by overruling its motion for mistrial because Sanchez deliberately violated the trial court's ruling on a pretrial motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. Fort Worth Hotel Ltd. Partnership v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Id. The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. See National Union Fire Ins. Co. of Pittsburgh v. Kwiatkowski, 915 S.W.2d 662, 664 (Tex.App."Houston [14th Dist.] 1996, no writ). Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. See Dove v. Director, State Employees Workers' Compensation Div., 857 S.W.2d 577 (Tex.App."Houston [1st Dist.] 1993, writ denied). Violations of an order on a motion in limine are incurable if the instructions to the jury would not eliminate the danger of prejudice. Id. | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | Does an appellate court review a violation of an order granting a motion in limine to see if the violation is curable by an instruction to the jury to disregard it? | 024270.docx | LEGALEASE-00124711-LEGALEASE-00124712 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5836 | Alberswerth v. Alberswerth, 184 S.W.3d 81 | 307A+3 | The trial court conditionally granted the Motion to Strike Expert Witness Opinion and Testimony, but denied the Motion in Limine. An in limine ruling is a preliminary expression of the court's opinion regarding the admissibility of the evidence at issue. Evans v. Wal-Mart Stores, Inc., 976 S.W.2d 582, 584 (Mo.App. E.D.1998). "The trial court is not bound by its in limine ruling and may admit the evidence when offered at trial." Id. Thus, an order sustaining a motion in limine and excluding evidence is an interlocutory order and is subject to change by the trial court during the course of the trial; the trial court is free to alter its pretrial ruling and admit the evidence. Smith v. Associated Natural Gas Co., 7 S.W.3d 530, 536 (Mo.App. S.D.1999); Choate v. Natvig, 952 S.W.2d 730, 733 (Mo.App. S.D.1997). The trial court Motion to Strike Expert Witness Opinion and Testimony was a motion in limine and the trial court could reverse its ruling at trial. | Trial court is not bound by its in limine ruling and may admit the evidence when offered at trial; thus, an order sustaining a motion in limine and excluding evidence is an interlocutory order and is subject to change by the trial court during the course of the trial, and the trial court is free to alter its pretrial ruling and admit the evidence. | Is an in limine ruling a preliminary expression of the court's opinion regarding the admissibility of the evidence? | Pretrial Procedure - Memo # 622 - C - SSB.docx | ROSS-003284739-ROSS-003284740 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 5837 | Greene v. State, 515 N.E.2d 1376 | 110+632(4) | Greene asserts the trial court erred when it ruled on motions in limine filed by the State and the defense. A motion in limine is not a final ruling on the admissibility of evidence. It serves to prevent the display of prejudicial material to the jury until the trial court has the opportunity to make an evidentiary ruling within the trial context. While the final evidentiary ruling is appealable, a ruling on a motion in limine preserves nothing for appeal. Hadley v. State (1986), Ind., 496 N.E.2d 67. | Motion in limine is not final ruling on admissibility of evidence; rather, it serves to prevent display of prejudicial material to jury until trial court has opportunity to make evidentiary ruling within trial court, and thus while final evidentiary ruling is appealable, ruling on motion in limine preserves nothing for appeal. | Is a ruling on a motion in limine considered a final order? | 036944.docx | LEGALEASE-00125246-LEGALEASE-00125247 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 5838 | Frasca v. Warner, 249 Cal. App. 2d 593 | 307A+749.1 | The philosophy underlying the trial court's rulings on the matters at bench is in harmony with the principles announced by the federal courts which have had extensive experience in dealing with pretrial orders and statements. (Century Refining Co. v. Hall, 10 Cir., 316 F.2d 15; Clark v. Pennsylvania R. Co., 2 Cir., 328 F.2d 591.). In Century Refining the court stated: "But, while the pre-trial order should measure the dimensions of a lawsuit and govern its course in the absence of some good reason for departure, this does not mean that the order should not be liberally construed to embrace all of the legal and factual theories inherent in the issues defined therein. Any other construction of the pre-trial order would tend to unduly construct the trial of the case and defeat the central and salutary purpose of the Federal Rules of Civil Procedure to insure the trial of every lawsuit on its merits and not to defeat it on a technicality." (pp. 19"20.) In Clark the court stated at page 594: "it is a fundamental principle of pre-trial that this procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statement of either party, when the interests of justice make such a course desirable." The decisions of our own courts are not contrary to these principles. In Atkins v. Atkins, 177 Cal.App.2d 207, 2 Cal.Rptr. 104, the court stated: "We do not believe that it was intended that the pretrial order should do away with the power of the trial court to permit amendments to conform to the proof. Justice may sometime require that the effect of a pretrial order be not so restrictive even when the order is not modified." (p. 211, 2 Cal.Rptr. p. 106.) This statement was quoted in Rocky Mountain Export Co. v. Colquitt, 179 Cal.App.2d 204, 206, 3 Cal.Rptr. 512; Vesci v. Ingram, 190 Cal.App.2d 419, 424, 11 Cal.Rptr. 830, and Texaco, Inc. v. Robinson, 209 Cal.App.2d 450, 452, 25 Cal.Rptr. 923. In Mays v. Disneyland, Inc., 213 Cal.App.2d 297, 28 | While pre-trial order should measure dimensions of lawsuit and govern its course in absence of some good reason for departure, this does not mean that order should not be liberally construed to embrace all legal and factual theories inherent in issues defined therein. | Do pretrial orders help govern the course of litigation? | 041189.docx | LEGALEASE-00125497-LEGALEASE-00125498 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5839 | Mort v. United States, 86 F.3d 890 | 366+2 | The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. Id. (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Id. (quoting Caito v. United Cal. Bank, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)). | Equitable subrogation is broad equitable remedy, and therefore it applies whenever one person, not acting as mere volunteer or intruder, pays debt for which another is primarily liable, and which in equity and good conscience should have been discharged by latter. | Are there factors that must be determined before equitable subrogation can be applied? | 044294.docx | LEGALEASE-00124725-LEGALEASE-00124726 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5840 | Employers Mut. Liab. Ins. Co. of Wis. v. Melcher, 378 Pa. 598 | 366+11 | "The doctrine of subrogation is based on "considerations of equity and good conscience * * * to promote justice * * * (and) is granted as a means of placing the ultimate burden of the debt upon the person who should bear it." It is not a matter of contract nor of privity. It "may be invoked in favor of persons who are legally obligated to make good a loss caused by the negligent or tortious act of another." "It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it."' **876 Potoczny to Use of City of Philadelphia v. Vallejo, 170 Pa.Super. 377, 380, 381, 85 A.2d 675, 677. Those having the superior equities will be granted the right of subrogation. Gildner v. First National Bank & Trust Company of Bethlehem, 342 Pa. 145, 157, 19 A.2d 910. "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct". Restatement, Restitution, " 76. In its section on subrogation (" 162), the Restatement, Restitution, states the rule as follows: "Where property of one person is used in discharging an obligation owed by another * * *, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee. * * *" There can be no question that plaintiff used its property to discharge the obligation owed by defendants through their lease with West. The order for payment in the compensation case was not only against the plaintiff as insurance carrier but also against West as employer. There was a "loss' suffered by West, paid by plaintiff, and indemnified against by the defendants, and plaintiff has a right to recover the payment from defendants. Plaintiff's equities-if they do not stand alone-are at least superior to those of defendants. | Doctrine of subrogation is based on considerations of equity and good conscience to promote justice, and is granted as a means of placing ultimate burden of debt upon person who should bear it, and it is not matter of contract nor of privity, but may be invoked in favor of persons who are legally obligated to make good a loss caused by negligent or tortious act of another. | "Since subrogation rights arise by contract or by operation of law, are those rights subject to good conscience?" | 044312.docx | LEGALEASE-00124842-LEGALEASE-00124843 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5841 | Sheridan v. Dudden Implement, 174 Neb. 578 | 366+7(1) | The general rule is: "The doctrine of subrogation, which at one time was limited in its operation to sureties, still finds its most frequent application where a guarantor or a surety makes good the default of his principal. On discharging the obligation of the principal, the surety is generally subrogated to the rights of the creditor or obligee and becomes entitled to the securities and the means or remedies which the creditor has for enforcing payment against the principal or others who are liable for the debt." 50 Am.Jur., Subrogation, s. 49, p. 714. See, also, American Surety Co. of New York v. School Dist., 117 Neb. 6, 219 N.W. 583; Mead Co. v. Doerfler, 148 Neb. 75, 26 N.W.2d 393. We need not give consideration to the contention that Sheridan had no assignment of the conditional sale contract from General Motors Acceptance Corporation before the replevin action was brought, for an assignment is unnecessary where the right of subrogation exists. Crawford State Bank v. McEwen, 132 Neb. 399, 272 N.W. 226. | On discharging obligation of principal, surety is generally subrogated to rights of creditor or obligee and becomes entitled to security and remedies which creditor has for enforcing payment against principal or others who are liable for debt. | "Upon payment of obligation of principal, is a surety subrogated to rights of a creditor against the principal?" | Subrogation - Memo 927 - RK.docx | ROSS-003290423-ROSS-003290424 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 5842 | United States v. Com. of Pa., Dep't of Highways, 349 F. Supp. 1370 | 316H+239 | In another case, Jacobs v. Northeastern Corp.,17 Northeastern had entered into a contract with the Secretary of Highways for the construction of state roads. There, as here, the contract required a bond for the prompt payment of labor and material claims. When Northeastern defaulted on the payment of labor and material claims, the surety made the payment and petitioned the court for the amount due from the Commonwealth on the contract, which amount due was less than the amount actually paid out by the surety. Northeastern's receiver counterclaimed for the retained funds and contended that the surety was only entitled to its pro rata share as a general creditor and not to the entire amount due on the contract as a successor to the rights of the contractor. In part, the construction contract and bond, as noted by that court, also contained terms similar to those in the O'Brien and Redmond contracts, which created an express undertaking by the contractor to pay the labor and materialmen under the terms of the construction contract itself. The Jacobs court noted with approval the federal rule, as found in Pearlman v. Reliance Ins. Co.18 that the surety, upon payment of labor and materialmen claims, is entitled to assert the benefits of subrogation against funds withheld by a public agency. Finding that the Department of Highways had an implied right to withhold moneys if it was determined that there were unsatisfied labor and material claims in breach of a condition of the contracts, that Pennsylvania court stated that these moneys must be paid to the surety, just as the fund would have gone to the labor and materialmen rather than to the general creditors even if there had been no bond, because the surety stands in the place of the persons whose claims it has paid. | Where highway construction contractor breached contract to promptly pay labor and materialmen claims, the Pennsylvania Department of Highways had an implied right to withhold monies and such monies were properly paid to surety on labor and material payment bonds just as fund would have gone to labor and materialmen rather than to general creditors even if there had been no bonds. | Does a surety stand in the place of the persons whose claims it has paid? | 044381.docx | LEGALEASE-00125530-LEGALEASE-00125531 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 5843 | Gerseta Corp. v. Equitable Tr. Co. of New York, 241 N.Y. 418 | 366+1 | Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability. (Seldon on Subrogation [2d Ed.] pp. 2, 4.) Earl, J., in Cole v. Malcolm, 66 N. Y. 363, 366, said that it is "applicable to cases where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property." Peckham, J., in Pease v. Egan, 30 N. E. 102, 131 N. Y. 262, 272, said, or repeated what had been said before, that it was founded upon principles of benevolence. In Pittsburgh-Westmoreland Coal Co. v. Kerr, 115 N. E. 465, 467, 220 N. Y. 137, 144, Chase, J., said it "includes so wide a range of subjects that it has been called the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.". | "Subrogation" includes every instance in which one pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as payment was made either under compulsion or protection of some interest of payer, and in discharge of existing liability. | "Is subrogation, an equitable doctrine taken from the civil law, broad enough?" | Subrogation - Memo 987 - C- CAT.docx | LEGALEASE-00015488-LEGALEASE-00015489 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5844 | Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362 | 366+1 | "Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid." Id., " 9; see also Security Ins. Co. of New Haven v. Mangan, 250 Md. 241, 242 A.2d 482 (1968). | "Conventional subrogation" occurs where one having no interest or any relation to matter pays debt of another, and by agreement is entitled to rights and securities of creditor so paid; it can take effect only by agreement and has been said to be synonymous with assignment. | Is conventional subrogation synonymous with assignment? | Subrogation - Memo 994 - C- CAT.docx | ROSS-003315229 | Order, SA, Sub | 0.28 | 1 | 0 | 1 | 1 | 1 |
| 5845 | Leto v. Bd. of Assessors of Wilmington, 348 Mass. 144 | 371+2882 | The Bettigole case establishes that a court of equity may prevent the enforcement of the whole of an illegal city or town tax assessment for a given year. The authorities just cited, however, make it plain that such somewhat extraordinary relief will not be granted (1) unless basic facts exist showing essentially a deliberate and substantial violation of the constitutional and statutory requirements that property tax valuations shall be proportional; (2) unless the plaintiffs show themselves to be directly, significantly and adversely affected; (3) unless relief by ordinary abatement procedures or by an action at law will be seriously inadequate; and (4) unless equitable relief is shown to be practicable and appropriate in the sense that the assessors' constitutional and statutory violations are so great as to warrant seasonable equitable interference with normal tax assessment and collection processes. There must be clear and precise allegation of facts which if proved will satisfy each of the foregoing prerequisites, if a bill in equity seeking such drastic relief is to be good against demurrer. No intendment will be made in favor of the allegations of such a bill in the face of a demurrer. See Mairs v. Madden, 307 Mass. 378, 380, 30 N.E.2d 242, 132 A.L.R. 256. There is particular practical reason in such cases that there be strict adherence to the requirement that averments of crucial facts be clear, direct, and unequivocal (see North Station Wine Co., Inc., v. United Liquors, Ltd., 323 Mass. 48, 51, 80 N.E.2d 1) so that the trial of very complicated issues of fact may be kept within reasonable limits. | There is peculiar practical reason in cases for equitable relief preventing enforcement of whole of illegal city or town tax assessment for given year that there be strict adherence to requirement that averments of crucial facts be clear, direct, and unequivocal so that trial of very complicated issues of fact may be kept within reasonable limits. M.G.L.A. c. 59 SS 38, 52. | "Should averments of crucial facts be clear, direct, and unequivocal?" | 023007.docx | LEGALEASE-00125620-LEGALEASE-00125621 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 5846 | Sch. of Visual Arts v. Kuprewicz, 3 Misc. 3d 278 | 386+6 | Judged by these standards, the Court concludes that the only viable cause of action pleaded in the complaint is defendant SVA's claim for common law trespass to chattels. To establish a trespass to chattels, SVA must prove that Kuprewicz intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in SVA's possession, and that SVA was harmed thereby. PJI 3:9. Thus, one who intentionally interferes with another's chattel is liable only if there results in harm to "the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time". Restatement (Second) of Torts " 218, com. e. Furthermore, to sustain this cause of action, the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result. Buckeye Pipeline Co., Inc. v. Congel-Hazard, Inc., 41 A.D.2d 590, 340 N.Y.S.2d 263 (4th Dept. 2 N.Y. PJI 2d 86 (2003). | To sustain cause of action for trespass to chattels, defendant must act with intention of interfering with property or with knowledge that such interference is substantially certain to result. | "Does a Defendant have to act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result, to satisfy the intent element of trespass?" | Trespass - Memo 154 - RK.docx | ROSS-003327580-ROSS-003327581 | Condensed, Order, SA | 0.82 | 1 | 1 | 0 | 1 | 1 |
| 5847 | Am. Online v. IMS, 24 F. Supp. 2d 548 | 386+6 | The undisputed facts establish that Melle committed a trespass to chattels in violation of Virginia Common Law. Although authority under Virginia law respecting an action for trespass to chattels is sparse, case law suggests that trespass to chattels is indeed actionable in Virginia. See Vines v. Branch, 244 Va. 185, 190, 418 S.E.2d 890, 894 (1992) ("Where a person has illegally seized the personal property of another and converted it to his own use, the owner may bring an action in trespass, trover, detinue, or assumpsit.... One who commits a trespass to chattel is liable to its rightful possessor for actual damages suffered by reason of loss of its use.") (emphasis added) (citations omitted)). A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization. See Restatement (Second) of TortsSSSSS " 217(b). One who commits a trespass to a chattel is liable to the possessor of the chattel if "the chattel is impaired as to its condition, quality, or value." Id. at " 218(b). | "Trespass to chattels" occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization. Restatement (Second) of Torts S 217(b). | Is intermeddling with personal property in rightful possession of another without authorization a trespass to chattels? | 047193.docx | LEGALEASE-00125796-LEGALEASE-00125797 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5848 | Kahn v. Cook, 22 Ill. App. 559 | 13+61 | The first instruction given for the plaintiffs was erroneous in ignoring the question as to whether the indebtedness sued for was due at the time the suit was commenced. It held that the only issue to be tried was whether at the time of the commencement of the suit, the defendant was indebted to the plaintiffs, and that if such indebtedness existed at that time, whether due or not, the plaintiffs were entitled to recover. That such is not the law seems to us to admit of no argument. A plaintiff's cause of action arises only upon the failure of his debtor to pay a debt at maturity, and an indebtedness not yet due constitutes no cause of action, and furnishes no ground for a recovery. As said in Nickerson v. Babcock, 29 Ill. 496, "No rule of practice is more uniformly recognized than that a suit cannot be maintained before a demand is due." In Daniels v. Osborn, 71 Ill. 169, it is held that where goods are sold on a definite credit, and suit is brought for the price before the credit expires, it will be premature, and no recovery can be had. So, in Hamlin v. Race, 78 Ill. 422, where the suit was on a contract for the payment of money by installments, it was held that the plaintiff could recover only the amount that was due at the time the suit was brought, although at the time of the trial all the installments may have matured. | A plaintiff's cause of action arises only on failure of his debtor to pay a debt at maturity, and indebtedness not yet due constitutes no cause of action and furnishes no ground for recovery. | Does a plaintiff's cause of action arise only on failure of his debtor to pay a debt at maturity? | 005338.docx | LEGALEASE-00126082-LEGALEASE-00126083 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5849 | United States v. McDonnell, 792 F.3d 478 | 63+1(1) | Appellant's statement of the law is correct, so far as it goes. See United States v. Jennings, 160 F.3d 1006, 1013 (4th Cir.1998). "It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent. That intent is not supplied merely by the fact that the gift was motivated by some generalized hope or expectation of ultimate benefit on the part of the donor." United States v. Arthur, 544 F.2d 730, 734 (4th Cir.1976) (citations omitted) (reversing a conviction for misapplication of bank funds pursuant to 18 U.S.C. " 656). The bribe payor must have more than a " "[v]ague expectation[ ]" " that the public official will reward his kindness, somehow or other. Jennings, 160 F.3d at 1013 (quoting United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993)). He must harbor an intent to secure a "specific type of official action or favor in return" for his largesse. Id. at 1014 (emphasis omitted). | Bribery occurs only if the gift given to a public official is coupled with a particular criminal intent; that intent is not supplied merely by fact that the gift was motivated by some generalized hope or expectation of ultimate benefit on part of thedonor, and the bribe payor must have more than a vague expectation that the public official will reward his kindness, somehow or other. | Does bribery occur if a gift is coupled with a particular criminal intent to receive a specific benefit in return for the payment? | 011069.docx | LEGALEASE-00126132-LEGALEASE-00126133 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 5850 | J.C. v. State Dep't of Human Res., 986 So. 2d 1172 | 361+1390 | After Beasley was decided, Alabama courts consistently applied the two-pronged test, using the provisions of " as "meaningful guidelines" in their analyses. Our legislature has amended the CPA twice since the supreme court's holding in Beasley. In 1997, the legislature amended "" and 26-18-7, and in 1998, it amended "" and 26- 18-7 and added " "without altering the effect of [Beasley and its progeny]." Ex parte HealthSouth Corp., 851 So.2d 33, 41 (Ala.2002). " "It is an ingrained principle of statutory construction that "[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala.1981)." ' Ex parte Fontaine Trailer Co., 854 So.2d 71, 83 (Ala.2003) (quoting Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998)). In adopting statutes and amendments thereto ' " 'the Legislature is presumed to have known the fixed judicial construction preexisting statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.' " 'Ex parte Fontaine Trailer Co., 854 So.2d at 83 (quoting Wood-Dickerson Supply Co. v. Cocciola, 153 Ala. 555, 557, 45 So. 192, 192 (1907), quoting in turn Morrison v. Stevenson, 69 Ala. 448, 450 (1881)). '[W]here a statute is reenacted without material change, "it must be assumed that the Legislature was familiar with its interpretation by [the supreme] court and was satisfied therewith." Jones v. Conradi, 673 So.2d 389, 392 (Ala.1995) (quoting Nolen v. Clark, 238 Ala. 320, 321, 191 So. 342, 343 (1939))." Wright v. Childree, 972 So.2d 771, 778-79 (Ala.2006). Therefore, we can presume that the two-pronged test and the application of the provisions of " as meaningful guidelines "are in fact consistent with legislative intent." HealthSouth, 851 So.2d at 42. | Where a statute is reenacted without material change, it must be assumed that the legislature was familiar with its interpretation by the Supreme Court and was satisfied therewith. | "When a statute is reenacted without material changes, is it assumed that the legislature was familiar with its interpretation by the Supreme Court?" | Clerks of Court - Memo 54 - RK.docx | ROSS-003286495-ROSS-003286496 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 5851 | Bishop v. Reno, 210 F.3d 1295 | 221+321 | To decide if the district court had jurisdiction to grant collateral, habeas relief on a foreign sentence is to delineate the interaction between the Treaty and the implementing statutes, which determine the procedure in the United States for administering a foreign-imposed sentence to be completed here. See Cannon v. United States Dep't of Justice, 973 F.2d 1190, 1197 (5th Cir.1992) ("Procedural legislation which makes operation of a Treaty more convenient cannot amend or abrogate a self-executing Treaty."). The Treaty signatories recognized "that foreigners who are deprived of their liberty as a result of their commission of a criminal offense should be given the opportunity to serve their sentences within their own society" and "that this aim can be achieved by having them transferred to their own countries." Treaty, 35 U.S.T. at 2870 (preamble)9; see Kanasola v. Civiletti, 630 F.2d 472, 474 (6th Cir.1980) (per curiam) (acknowledging that our country enters into transfer treaties with foreign nations "to permit an American citizen convicted of a crime in a foreign country to serve his sentence in a prison at home where conditions are much better").Nevertheless, "[a] sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction." Wilson v. Girard, 354 U.S. 524, 529, 77 S.Ct. 1409, 1412, 1 L.Ed.2d 1544 (1957). Furthermore, provisions of our Constitution, including the writ of habeas corpus, "have no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country"; an American citizen who commits a crime in a foreign country is subject to trial and punishment under the laws of that country. Neely v. Henkel, 180 U.S. 109, 122, 123, 21 S.Ct. 302, 307, 45 L.Ed. 448 (1901). | Sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction. | Does a sovereign nation have exclusive jurisdiction to punish offenses against its laws committed within its borders? | International law - Memo # 794 - C - MS.docx | ROSS-003290189-ROSS-003290191 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 5852 | United States v. Greer, 956 F. Supp. 531 | 221+397 | Congress has the power to control the conduct of United States citizens abroad, whether on the high seas or within the territory of other sovereigns. United States v. Mitchell, 553 F.2d 996, 1001 (5th Cir.1977); United States v. Black, 291 F.Supp. 262, 266 (S.D.N.Y.1968). See Skiriotes v. State of Florida, 313 U.S. 69, 73, 61 S.Ct. 924, 927"28, 85 L.Ed. 1193 (1941) (United States is not debarred by any rule of international law from governing conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed); Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932) (for disobedience to United States law United States citizen living in France was subject to punishment in United States court); Restatement (Third) of the Foreign Relations Law of the United States " 402 (1987) (state has jurisdiction to prescribe law with respect to activities of its nationals outside as well as within its territory). Thus Congress had the authority to give extraterritorial effect to the MDLEA with respect to citizens of the United States.] | Congress had authority to give extraterritorial effect to the Maritime Drug Law Enforcement Act (MDLEA) with respect to citizens of the United States. Maritime Drug Law Enforcement Act, S 3, 46 App.U.S.C.A. S 1903. | Does Congress have authority to give extraterritorial effect to the Maritime Drug Law Enforcement Act (MDLEA) with respect to citizens of the United States? | 020576.docx | LEGALEASE-00125928-LEGALEASE-00125929 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5853 | Langhans v. Hale, 345 So. 2d 1226 | 302+79 | In addition to those specifically listed in that article, an affirmative defense can be any response by defendant which raises new matter which, assuming the allegations of the petition to be true, constitutes a defense to the action which will have the effect of defeating the plaintiff's suit on the merits. Webster v. Rushing, 316 So.2d 111 (La.1975); Soloman v. Hickman, 213 So.2d 96 (La.App.1st Cir. 1968). | In addition to those affirmative defenses specifically listed in statute, an affirmative defense can be any response by defendant which raises new matter which, assuming the allegations of the petition to be true, constitutes a defense to the action which will have the effect of defeating plaintiff's suit on the merits. LSA-C.C.P. art. 1005. | Does an affirmative defense constitute a defense to the action? | 023028.docx | LEGALEASE-00126218-LEGALEASE-00126219 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 5854 | State v. Metz, 241 A.D.2d 192 | 307A+3 | While the motion court recognized that summary judgment is a procedural device to accelerate judgment by eliminating the trial stage when the only issues to be resolved are questions of law, it nevertheless overstated the concept that summary judgment is the functional equivalent of a trial and proceeded to treat defendants' cross-motions as motions in limine. Generally, the function of a motion in limine is to permit a party to obtain a preliminary order before or during trial excluding the introduction of anticipated inadmissible, immaterial, or prejudicial evidence or limiting its use. Its purpose is to prevent the introduction of such evidence to the trier of fact, in most instances a jury. The role of the court on a motion for summary judgment, and we emphasize the summary nature of the motion, is not to try the facts, but rather to determine whether evidence sufficient to require a trial of any issue of fact exists. "[I]t is the earmark of summary judgment that the court is confined to determining whether an issue of fact exists as a matter of law" (Phillips v. Joseph Kantor & Co., 31 N.Y.2d 307, 315, 338 N.Y.S.2d 882, 291 N.E.2d 129). | Generally, function of motion in limine is to permit party to obtain preliminary order before or during trial excluding introduction of anticipated inadmissible, immaterial, or prejudicial evidence or limiting its use; purpose of motion is to prevent introduction of such evidence to trier of fact, in most instances a jury. | Does a motion in limine challenge evidence which is claimed to be immaterial or request a limitation on the use of such evidence? | 037585.docx | LEGALEASE-00126172-LEGALEASE-00126173 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 5855 | Hughes v. State, 154 Neb. 86 | 211+1597 | The first contention was definitely answered in Hall v. State, 40 Neb. 320, 58 N.W. 929, 931, wherein we held: "* * * no force on the part of the defendant, or resistance on the part of the female, is essential to constitute the crime of rape, or of an assault with intent to commit that offense, when it is alleged and proved that the female is under the statutory age of consent and the defendant is at least eighteen years old." | No force on part of the defendant, or resistance on the part of the female, was essential to constitute crime of assault with intent to commit rape, where it was alleged and proved that female was under the statutory age of consent and that defendant was at least 18 years old. R.R.S.1943, S 28-408. | Is force and resistance essential to constitute rape? | Sex Offence - Memo 36 - BP.docx | LEGALEASE-00016170-LEGALEASE-00016171 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 5856 | Ralph's Grocery Co. v. California Dep't of Food & Agric., 110 Cal. App. 4th 694 | 407+1 | Division Five of the Business and Professions Code ("" 12001 et seq.) regulates the use of weights and measures to "protect consumers from unfair dealings where the person who sells tangible goods weighs the goods and collects a charge based on the weight of the goods sold." (Pitney-Bowes, Inc. v. State of California (1980) 108 Cal.App.3d 307, 321, 166 Cal.Rptr. 489.) It does so in part by prohibiting sales by gross weight (" 12023) or sales of less quantity than represented ("" 12024, 12024.3). | Sections of the Business and Professions Code regulate the use of weights and measures to protect consumers from unfair dealings where the person who sells tangible goods weighs the goods and collects a charge based on the weight of the goods sold. West's Ann.Cal.Bus. & Prof.Code S 112001 et seq. | What is the purpose behind codes regulating weights and measures? | Weights and Measures - Memo 1 - RK.docx | ROSS-003312397-ROSS-003312398 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 5857 | House v. Mayes, 227 Mo. 617 | 407+1 | That the inspection and regulation of weights and measures are within the police power of the states, and laws passed by the Legislature for such inspection and regulation, requiring dealers and traders to conform thereto, and for the appointment or election of officers or inspectors thereunder, are in the nature of police regulation, and not repugnant to the Constitution of the United States or of this state, can no longer be doubted. Pittsburg Coal Company v. Louisiana, 156 U. S. 590, 15 Sup. Ct. 459, 39 L. Ed. 544; 30 Am. & Eng. Ency. of Law (2d Ed.) 451, and cases therein cited. Legislation along these lines is found in almost every country, the underlying purpose of which is to secure uniform weights and measures, and to guard the people at large against defective and uncertain weights and measures and fraudulent practices connected therewith. While the act we are called to construe in this case, is not aimed at fraudulent and illegal weighing of the commodities named therein, it is aimed at practices which are closely akin to fraudulent weighing. State v. Wilson, 61 Kan. 32, 58 Pac. 981, 47 L. R. A. 71; Cooley on Const. Lim. (6th Ed.) 744. Of what benefit would it be to the shippers of grain to the grain markets like Kansas City to be assured that their grain was properly weighed, if, after it had been correctly weighed, the toll of 100 pounds to the car load, or any other amount which the Board of Trade might determine, should be taken without the knowledge or consent of the shippers, by virtue of this so-called rule or practice? The result to him will be the same as if fraudulent scales were used by which his grain was made to weigh 100 pounds less on the car load, without his knowledge or consent | Inspection and regulation of weights and measures are within the police power of the states, and laws providing for such inspection and regulation, requiring dealers to conform thereto, and for the appointment or election of inspectors thereunder, are in the nature of police regulations, and Act June 8, 1909 (Acts 1909, p. 519), providing that the sale of grain, etc., shall be made on the basis of actual weight, making one guilty of misdemeanor who deducts any amount from the actual weight under claim of custom, rule of board of trade, or other pretense, prohibiting agents or brokers from selling grain, etc., under claim of right, by reason of a custom or rule of the board of trade, otherwise than upon basis of actual weight, and making such contracts void, designed to prevent brokers from deducting any part of grain without authority from the owner, notwithstanding the existence of a contrary rule or custom, and to prevent the purchaser of wheat on exchanges from deducting from the amount so purchased, where the contract does not authorize such deduction, is a valid exercise of the legislative power. | Is the regulation of weights and measures a reasonable exercise of police power? | 047540.docx | LEGALEASE-00126307-LEGALEASE-00126310 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 5858 | In re Harber, 553 B.R. 522 | 13+61 | Although federal law determines when a debtor's interest in property becomes property of the estate for purposes of section 541, state law usually controls whether the debtor has such an interest. Under Pennsylvania law, "a cause of action accrues only when one has the right to institute a suit." As explained by the Pennsylvania Supreme Court, a claim accrues on the date "the plaintiff could have first maintained the action to a successful conclusion" by holding an enforceable claim or right after sustaining an injury that gives rise to damages. In the context of a personal injury tort which sounds in negligence, Pennsylvania law requires that the following elements be present: (1) the existence of a legal duty on the part of the defendant; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual damage suffered as a result. Additionally, in a tort case such as this, "the injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable. | Under Pennsylvania law, cause of action accrues on date that plaintiff could have first maintained the action to a successful conclusion by holding an enforceable claim or right after sustaining an injury that gives rise to damages. | Does a cause of action accrue when one has the right to institute suit? | 005490.docx | LEGALEASE-00126373-LEGALEASE-00126374 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5859 | In re Weinberger's Estate, 203 Neb. 674 | 13+61 | In the cases now before us the only performance remaining to be done by the seller under the sale contract, which was binding upon the heirs, executors, administrators, personal representatives, successors, and assigns of the decedent, was the delivery of a warranty deed to the purchasers conveying merchantable title to the premises. That performance was not required under the contracts until the purchasers completed payment for the land in 1981. At the time of the death of the decedent there was no breach of contract on the part of the seller, nor did the purchasers have any claim or cause of action against the decedent which could be presented or exhibited to the county court. A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury occasioned him, but not until then. See 1 Am.Jur.2d, Actions, s 89, p. 618.Similarly, a cause of action on a covenant of warranty or for quiet enjoyment does not accrue in favor of the covenantee until eviction or surrender by reason of a paramount title. See, Campbell v. Gallentine, 115 Neb. 789, 215 N.W. 111; Burling v. Estate of Allvord, 77 Neb. 861, 110 N.W. 683 | Cause of action in contract accrues at time of breach or failure to do thing agreed to, irrespective of any knowledge on part of plaintiff or of any actual injury occasioned him, but not until then. | Does cause of action in contract accrue at a time of breach or failure to do thing agreed to? | 005678.docx | LEGALEASE-00126652-LEGALEASE-00126653 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5860 | Estate of Riedel by Mirick v. Life Care Ret. Communities, 505 N.W.2d 78 | 241+43 | Minn.Stat. " 541.05 , subd. 1(1) (1992) prescribes a six-year limitations period for actions upon a contract. Unless a statute provides otherwise, the limitations period begins to run when the cause of action accrues. Minn.Stat. " 541.01. Generally, a cause of action accrues when a party may bring suit without dismissal for failure to state a claim. Levin v. C.O.M.B. Co., 441 N.W.2d 801, 803 (Minn.1989). Specifically, a breach of contract action accrues at the time of the breach, even though actual damages occur later. Bachertz v. Hayes-Lucas Lumber Co., 201 Minn. 171, 176, 275 N.W. 694, 697 (1937) cited in Levin, 441 N.W.2d at 803. | Generally, cause of action accrues when party may bring suit without dismissal for failure to state claim. | Does cause of action accrue when party may bring suit without dismissal for failure to state claim? | 005697.docx | LEGALEASE-00126452-LEGALEASE-00126453 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5861 | Eggleston's Lessee v. Bradford, 10 Ohio 312 | 59+1 | It is admitted that the number of the lot is mistaken. Where the description of an estate contains a number of particulars, each of which is necessary to ascertain the estate to be conveyed, the estate must correspond in character with each. But if sufficient be shown to ascertain the estate intended to be conveyed, the land may pass by the deed, although some of the particulars are false. 4 Mass. 205. And where the description alludes to facts beyond the deed, parol evidence may be offered, not to contradict the description, but to locate the deed upon the land. 4 Ohio, 453. In this deed we find it assumes to convey 960 acres, part of the share of Hine, lying in one of the two specified counties, to be taken from the largest lot. An original share in the Ohio Company's purchase consists of a section of 640 acres, a frational section of 240 acres, a quarter section of 160, a ten acre lot, a two acre lot, and a city lot. In this case the section was No. 32; the fractional section was No. 16. It was an evident error of the number of the section, for there is not land enough in the share to satisfy the grant, unless the section 32 be included. It is a plain mistake, and we find no difficulty in discovering a description certain enough, neglecting the mistaken number. | Where the description of an estate contains a number of particulars, each of which is necessary to ascertain the estate to be conveyed, the estate must correspond in character with each. But if sufficient be shown to ascertain the estate intended to be conveyed, the land may pass by the deed, although some of the particulars are false. | What is necessary to ascertain an estate intended to be conveyed? | Exchange Of Property - Memo 59 - ANG.docx | ROSS-003290159-ROSS-003290160 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5862 | Lang v. Shell Petroleum Corp., 141 S.W.2d 667 | 13+63 | Now limitation did not start running at the time Masterson converted appellants' interest in the notes (if he did convert same, and which we assume only for argument's sake), because of the disability of minority under which the Clevelands were at that time. The fact, however, that Masterson subsequently in effect invested half the proceeds of the notes in the land in question, does not mean that the Clevelands thereby became vested with the land so that they could be divested of the title only by adverse possession. The authorities already cited show this is not true. The right which the Clevelands acquired to follow the proceeds of the notes into the 400-acre tract was not a present vested property right, nor one vested in possession, but lay in the remedy or action which a court of equity would give to trace the proceeds of the conversion. For the same wrongful conversion, courts of law gave other remedies. The equity which the Clevelands had was a mere equity which could ripen into an equitable title only after suit had thereon, and its assertion in a court of equity could be resisted if long delayed by the plea of laches. As stated in 21 C.J. 215, "In determining whether plaintiff is barred by laches, it is important to consider the nature of the right asserted, and the character of the relief sought, and, as has been said, the nature of the proceedings resorted to. In reference to the nature of the right asserted and the relief sought, there is a well recognized and fundamental distinction between two classes of cases into one or the other of which all cases fall. The first class includes those cases where protection is sought against a violation of a present vested property right or what has been termed an executed interest. The second class includes those cases in which plaintiff's right is not vested in possession but lies in action, and it is necessary to obtain the peculiar relief afforded by courts of equity in order to invest plaintiff with the right claimed. This kind of right or | In determining whether a plaintiff is barred by "laches," it is important to consider the nature of the right asserted, the character of the relief sought, and the nature of the proceedings resorted to. | "In determining whether a plaintiff is barred by laches, is it important to consider the nature of the right asserted?" | 005411.docx | LEGALEASE-00126830-LEGALEASE-00126831 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5863 | Moore v. Ferrellgas, 533 F. Supp. 2d 740 | 25T+134(6) | 9 U.S.C. " 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, 470 U.S. at 218, 105 S.Ct. 1238 (citing 9 U.S.C. "" 3"4). Thus, only generally applicable state-law contract defenses are available to a plaintiff seeking to invalidate an arbitration agreement, such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Cooper, 367 F.3d at 498; Fazio v. Lehman Bros., 340 F.3d 386, 393"94 (6th Cir.2003). | Only generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability are available to plaintiff seeking to invalidate arbitration agreement. 9 U.S.C.A. S 2. | Can lack of consideration invalidate an arbitration agreement? | 007199.docx | LEGALEASE-00127215-LEGALEASE-00127216 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5864 | Nat'l Westminster Bank USA v. Century Healthcare Corp., 885 F. Supp. 601 | 101+1058 | Lender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. See In re Prima Co., 98 F.2d 952, 965 (7thCir. cert. denied, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426 (1939) ("No doubt the debtor, because of its inability to meet its maturing obligations, acquiesced in Harris' recommendations [to install new management], but this we think is not sufficient to constitute domination of its will."). There is nothing inherently wrong with suggesting what course the debtor ought to follow. Unless the creditor has become, in effect, the alter ego of the debtor, he will not be held to an ethical duty in excess of the morals of the market place. In re Teltronics Services, Inc., 29 B.R. 139, 171 (Bankr.E.D.N.Y.1983). | Lender liability is predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own and was being used to further purposes of dominant corporation. | "Is lender liability predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own?" | Bills and Notes - Memo 115 - ANG.docx | ROSS-003299895-ROSS-003299897 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 5865 | Plummer v. Univ. of Houston, 860 F.3d 767 | 1.41E+31 | "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); see also Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."). "A university is not a court of law, and it is neither practical nor desirable it be one." Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 635 n.1 (6th Cir. 2005) (citation omitted). Ultimately, courts must focus on "ensuring the presence of 'fundamentally fair procedures to determine whether the misconduct has occurred.' " Id. at 634 (quoting Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). | It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion. | Is it the role of the federal courts to set aside decisions of school administrators which it views as lacking in wisdom or compassion? | Education - Memo # 17 - C - SU.docx | ROSS-003327171-ROSS-003327172 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5866 | Cunningham v. Lenape Reg'l High Dist. Bd. of Educ., 492 F. Supp. 2d 439 | 1.41E+31 | The Court cautions that this assessment is not a review of the merits of the case, but rather an inquiry into a minimum evidentiary threshold that the Plaintiff must withstand to prove federal jurisdiction. See Kehr Packages, 926 F.2d at 1409 (holding threshold to withstand Rule 12(b)(1) motion is lower than threshold for Rule 12(b)(6) motion). In the educational context, courts-especially federal ones-are not the appropriate forum for resolving daily conflicts arising from the operation of school systems. See Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (holding public education is committed to state and local authorities and courts cannot interfere in daily operations unless a basic constitutional right is "directly and sharply" implicated). Plaintiff can continue petitioning the Board of Education to the outer limits of his First Amendment Rights; however, his claim can proceed no further before this Court. | In the educational context, courts, especially federal ones, are not the appropriate forum for resolving daily conflicts arising from the operation of school systems. | "In the educational context, are federal courts the appropriate forum for resolving daily conflicts arising from the operation of school systems?" | Education - Memo # 22 - C - SU.docx | ROSS-003290084-ROSS-003290085 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 5867 | Kehoe v. Brunswick City Sch. Dist. Bd. of Educ., 24 Ohio App. 3d 51 | 141E+440 | Kehoe holds the required provisional teaching certificates. Her duties include instructing handicapped students. Thus, she clearly fits within the statutory definition of a teacher. See Krolopp v. Bd. of Edn. (1974), 47 Ohio App.2d 208, 353 N.E.2d 642 [1 O.O.3d 282]. | Individual who held required provisional teaching certificates and whose duties included instructing handicapped students fit clearly within statutory definition of teacher. R.C. S 3319.09(A). | Does an individual who holds the required provisional teaching certificates fit within the statutory definition of teacher? | 016812.docx | LEGALEASE-00127050-LEGALEASE-00127051 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 5868 | Escambia River Elec. Co-op. v. Florida Pub. Serv. Comm'n, 421 So. 2d 1384 | 317A+113 | We find, contrary to the arguments made by Escambia River, that the record contains competent substantial evidence to support the Commission's findings of fact.We also find that when, as in the present case, no factual or equitable distinction exists in favor of either utility, Tampa Electric Co. v. Withlacoochee River Electric Cooperative, Inc., 122 So.2d 471 (Fla.1960), controls, and the territorial dispute is properly resolved in favor of the privately owned utility. We therefore agree with the Commission's conclusion of law concerning the application of Withlacoochee to the factual situation in the present case, and we affirm its order resolving the territorial dispute in favor of Gulf Power. | When no factual or equitable distinction exists in favor of either utility, territorial dispute is properly resolved in favor of privately owned utility. | Is a territorial dispute between two utilities resolved in favor of a privately owned utility when no factual or equitable distinction exists in favor of either utility? | 042416.docx | LEGALEASE-00126840-LEGALEASE-00126841 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5869 | Capital Elec. Power Ass'n v. Mississippi Power & Light Co., 216 So. 2d 428 | 317A+113 | The Elton case first extended the existing facility rule to electric power companies under the Public Utility Act of 1956. Capital Electric Power Assn. v. Mississippi Power & Light Co., 240 Miss. 139, 125 So.2d 739 (1961). It held: An existing utility within the certificated area has the right and duty to provide the service, and must be given that opportunity. If it fails, the ommission can award another franchise to another utility. (240 Miss. at 151, 125 So.2d at 743). | Under the "existing facility rule," existing utility within certificated area has right and duty to provide service and must be given that opportunity, and only if it fails can commission award franchise to another utility. | Does an existing utility within a certified area have the right and duty to provide a service and must be given such opportunity? | Public Utilities - Memo 220 - AM.docx | ROSS-003290308-ROSS-003290310 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 5870 | Kansas City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P'ship, 868 S.W.2d 210 | 366+41(6) | The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." State Sav. Trust Co. v. Spencer, 201 S.W. 967, 969 (Mo.App.1918) (quoting 37 Cyc. 363). Originally a common law doctrine, subrogation has as its aim the advancement of justice and prevention of injustice. Frago v. Sage, 737 S.W.2d 482, 483 (Mo.App.1987). "Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it." Id. Although available, subrogation is a fairly drastic remedy and is usually allowed only in extreme cases "bordering on if not reaching the level of fraud." Landmark Bank v. Ciaravino, 752 S.W.2d 923, 928 (Mo.App.1988). A party seeking subrogation must prove by clear and convincing evidence that equity requires another party to bear the loss. Frago, 737 S.W.2d at 483. | Party seeking subrogation must prove by clear and convincing evidence that equity requires another party to bear loss. | Should the party seeking subrogation prove by clear and convincing evidence that equity requires another party to bear loss? | 044267.docx | LEGALEASE-00126913-LEGALEASE-00126914 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5871 | Christy Hill Builders v. Hall, 184 Conn. 575 | 13+65 | The trial court in the present action declined to grant the plaintiff the drainage easement, holding that constitutional prohibitions against taking private property prevented the plaintiff from obtaining the easement because no sufficient public benefit had been demonstrated. We find it unnecessary to reach the constitutional issues addressed by the trial court because we conclude that the demise of the subdivision plan upon which the trial court based its decision leaves this appeal in legal limbo. Gormley v. Panuzio, 166 Conn. 1, 3, 347 A.2d 78 (1974); Young v. Tynan, 148 Conn. 456, 459, 172 A.2d 190 (1961). "When legal relief is sought relative to the doing of any act, the action stands or falls by the facts and governing law existing at the time of bringing suit." State ex rel. Foote v. Bartholomew, 106 Conn. 698, 700, 138 A. 787 (1927). This rule has special significance in a case such as this where most of the essential facts were stipulated to by the parties and relate specifically to the subdivision plan approved by the planning commission. The withdrawal from the planning commission of the subdivision plan which furnished the basis of the plaintiff's requested drainage easement detached the easement from its factual moorings. Since appellate review is not designed either to answer academic inquires; id.; or to float trial balloons, such action by the plaintiff renders this appeal moot. | Where legal relief is sought relative to doing of any act, action stands or falls by facts and governing law existing at time of bringing suit. | Does an action stand or fall by facts and governing law existing at time of bringing suit? | 005955.docx | LEGALEASE-00127927-LEGALEASE-00127928 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 5872 | United Bhd. of Carpenters & Joiners of Am., Local No. 101 v. United Slate Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local No. 80, 181 Md. 280 | 13+65 | The second amended bill of the Roofers Union prays for an injunction against the Carpenters Unions. The purpose of the suit is to determine the parties who have the right to lay the roofs at the Sparrows Point Housing Project in Baltimore. It is admitted by the parties that the work on this project has been completed. Under these circumstances, it is clear that there is no ground for the issuance of an injunction with respect to the Sparrows Point Housing Project, even if the complainant might have been entitled to the writ at the time the suit was entered. Injunction is primarily a preventive remedy. Its province is to afford relief against future acts which are against equity and good conscience, and to keep a condition in statu quo, rather than to remedy something which is past or to punish for wrongful acts already committed. Consequently it is a general rule that rights already lost and wrongs already perpetrated cannot be corrected by injunction. It is the condition of things at the time of the hearing of the suit, rather than the condition existing at the commencement of the suit, that furnishes the basis for injunctive relief.It is therefore the duty of the court to determine not merely whether the complainant was entitled to an injunction at the time he instituted the suit, but whether the facts as they appear at the time of the hearing warrant such relief. Inasmuch as the purpose of the writ of injunction is to prevent a nuisance or wrong, it is evident that, if it clearly appears to the court that there will not be a continuance thereof and the question has become moot, it is proper to refuse the writ. Redley v. Greiner, 117 Iowa 679, 91 N.W. 1033; Alsager v. Peterson, 31 S.D. 452, 141 N.W. 391, Ann.Cas.1915D, 1251; Rosenthal v. Shepard Broadcasting Service, 299 Mass. 286, 12 N.E.2d 819, 114 A.L.R. 1502. | At hearing of an application for an injunction court must determine whether facts as they appear at time of hearing warrant such relief and not merely whether complainant was entitled to injunction at time he instituted suit. | "In an injunction hearing, should the court determine whether the facts as they appear at the time warrant such relief?" | 006320.docx | LEGALEASE-00128103-LEGALEASE-00128105 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 5873 | Sarbak v. Citigroup Glob. Markets, 354 F. Supp. 2d 531 | 25T+134(3) | An additional reason advanced by Plaintiff for refusing to enforce the arbitration provision is that the documents purporting to require arbitration in the instant matter are so ambiguous and confusing that it cannot be said "to effectuate a knowing and voluntary waiver of rights." Garfinkel, 773 A.2d at 672. It is well-settled that arbitration clauses must refrain from any ambiguous language because in order to have knowingly waived her right to sue, the content of the agreement must clearly state its purpose. Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 393 A.2d 267, 276 (1978). Moreover, for the clauses to be given effect, any such waiver of statutory rights "must be clearly and unmistakably established, and that express language will not be read expansively." United Steelworkers v. Nat'l Labor Relations Bd., 536 F.2d 550, 555 (3d Cir.1976) (citing Radio Television Technical School, Inc. v. NLRB, 488 F.2d 457 (3d Cir.1973); Texaco, Inc. v. NLRB, 462 F.2d 812 (3d Cir.), cert. denied., 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 302 (1972)). Initially, it should be noted that Plaintiff's affidavit fails to raise the issue of confusion or *540 ambiguity as to the contractual language. Moreover, as Defendants correctly observe, it was incumbent upon Plaintiff to read and understand the dispute resolution procedures presented in the Smith Barney documents. The Principles of Employment specifically state, in pertinent part: [I]t is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions now or in the future, please ask. | Arbitration clauses must refrain from any ambiguous language; in order to have knowingly waived her right to sue, content of agreement must clearly state its purpose. | Must arbitration clauses refrain from ambiguous language in order to have a knowing waiver of rights to sue? | 007231.docx | LEGALEASE-00127435-LEGALEASE-00127436 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5874 | Hornor v. Hanks, 22 Ark. 572 | 150+187 | The law is expressly written that the right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill. Adams Equity 413; Barfield v. Kelly, 4 Russ. 359. And this court has decided that where a bill disclosed a good cause of action, but which had not accrued when the bill was filed, the bill could not be maintained. Phebe v. Quillin, 21 Ark. 499. And it would seem to be against the policy of a court of chancery to allow a defendant to cut off, or to modify the relief to which the whole case may show the plaintiff to have been entitled upon the condition of the case when the suit was begun, by the use of legal process or remedies after the defendant is brought into a court of equity, there to make his defense. For the object of a chancery suit is to administer entire justice, by a settlement of the whole controversy between all the persons affected by it, and this it can do only by engrossing the consideration of all the points of prosecution and defense that may be allowed to the respective parties. Hence Russell would have done well to have defended the bill of Hanks upon its deficiencies, and his own rights, as they were when the bill and his answer were filed. He could not, of course, have been deprived of any benefit that might attach to his levy of the lands made before the beginning of this suit; neither, on the other hand, does it follow that his execution sale against Hanks can assist his defense here, though he may be guiltless of a contempt of court, in completing, by sale, the inchoate claim which was dependent upon his levy. Russell might have set up the lien of his judgment, or of his levy, as a defense, which would have been as effectual in a court of chancery as their merger by sale during the progress of a suit against him for the lands, and he would have occupied an attitude less exceptionable before the court. | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | Is it against the policy of a court of chancery to allow a defendant to cut off relief? | 006016.docx | LEGALEASE-00128420- LEGALEASE-00128421 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 5875 | Kupferman v. Katz, 19 A.D.2d 824 | 13+63 | Order, entered October 23, 1963, denying petition for judgment declaring invalid Local Law No. 51 of the Local Laws of 1963 of the City of New York and enjoining submission of Proposition Number One to the voters on November 5, 1963, unanimously affirmed without costs to any party. It is clear enough that in the absence of express statutory authority, an advisory referendum by a city is not authorized (Mills v. Sweeney, 219 N.Y. 213, 221, 114 N.E. 65, 67). It is also clear that the City of New York possesses no such authority. It is equally clear that a legislative referendum is not authorized unless specifically required by statute (Matter of McCabe v. Voorhis, 243 N.Y. 401, 413, 153 N.E. 849, 852, 853, involving an abortive attempt to submit to the public the question of a rapid transit fare increase). It has also been held that a transparent attempt to formulate a mandatory legislative referendum on some technical basis will not suffice, if in fact the attempt is really to avoid governmental responsibility and shift the burden of decision to a public poll (Matter of Astwood v. Cohen, 291 N.Y. 484, 490"491, 53 N.E.2d 358, 360"361). On these premises, most of the Court believe that the instant referendum could not survive analysis that it is an advisory, and, therefore, unauthorized referendum. The Committee appropriation concededly could have been obtained in just slightly more than ten days without submission to the voters (N. Y. City Charter, " 124[c])"hardly a significant delay in view of the much greater time involved between the date of enactment in August and the projected submission to the voters in November. However, the applicable remedy is in the nature of mandamus involving the exercise of judicial discretion ( Matter of Ahern v. Bd. of Supervisors, 6 N.Y.2d 376, 381, 189 N.Y.S.2d 888, 890"891, 160 N.E.2d 640, 641"642). Although the local legislation was enacted in the City Council on August 20, 1963, this proceeding was not instituted until | Inexcusably delayed proceedings in election matters coming to judicial determination close to eve of polling are especially not to be encouraged. | Are inexcusably delayed proceedings in election matters coming to judicial determination close to the eve of polling encouraged? | 006324.docx | LEGALEASE-00128112- LEGALEASE-00128113 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 5876 | Dallavalle v. Berry Grant Co., 462 S.W.2d 175 | 30+776 | In McClellan, supra, it was held that while the right to a voluntary dismissal without prejudice is not absolute, the right to so dismiss has been well established and recognized throughout all of our procedure. The test to determine whether such a dismissal should be permitted is to inquire whether by so dismissing a party would gain some undue advantage or would cause the other party to lose some right of defense. See Smith v. Taylor, supra, quoted with approval in McClellan. Under such circumstances as here exist the option available to plaintiffs to refile their action goes far beyond the mere fact recited in Smith and McClellan when ruling that issue. It constitutes an "undue advantage" to plaintiffs so as to compel an exception to the rule allowing plaintiffs to so dismiss as announced in McClellan, and by this court in Aubuchon v. Ayers, supra. | Test to determine whether voluntary dismissal of appeal without prejudice should be permitted is to inquire whether by so dismissing party would gain some undue advantage or would cause other party to lose some right of defense. Section 506.010 RSMo 1969, V.A.M.S.; V.A.M.R. Civil Rules 41.01, 41.02, 67.01. | Is the test for determining the propriety of a voluntary dismissal whether or not the party opposing the dismissal would be substantially prejudiced by the dismissal? | 038855.docx | LEGALEASE-00128297- LEGALEASE-00128298 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5877 | Chadwick v. CSI, Ltd., 137 N.H. 515 | 366+35 | Lastly, Pine Hill argues that the trial court incorrectly applied the waiver provisions in the General Conditions to the damages incurred by Pine Hill beyond those sustained to "the Work," as that term is defined under the contract. The contract states:"The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor...."The trial court relied upon paragraphs 11.3.5 and 11.3.7, which deal with waivers of subrogation and which are quoted above, in ruling that Pine Hill waived its rights to recover for damage to property adjacent to the site to the extent that such adjacent property was covered by Pine Hill's own insurance. We agree with the trial court's ruling.Pine Hill argues that paragraph 11.3.5 cannot be interpreted as a waiver of its subrogation rights when read in light of other contract provisions requiring the contractor, CSI, to indemnify Pine Hill for certain property losses and against "claims for damages, other than to the Work itself, because of injury to or destruction of tangible property." Pine Hill contends that if paragraph 11.3.5 was intended to waive Pine Hill's claims for damages to property other than the Work, then the paragraphs requiring CSI to buy liability coverage and indemnify Pine Hill against such losses would be unnecessary. Paragraph 11.3.7, however, reconciles any inconsistency among these provisions by expressly stating that "[a] waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise." We reject Pine Hill's argument on the ground that this provision establishes that the waiver of subrogation in paragraph 11.3.5 is effective even if CSI is required to indemnify and insure Pine Hill for damage to property other than the Work. | Waiver of subrogation provisions in construction contract were properly applied to damages incurred by project owner beyond those sustained to "the work," where contract provided that waiver of subrogation was effective as to person or entity even where person or entity would otherwise have had a duty of indemnification, contractual or otherwise. | Are waiver of subrogation provisions in a construction contract properly applied to damages incurred by a project owner? | 043295.docx | LEGALEASE-00128242-LEGALEASE-00128244 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5878 | Citizens State Bank v. Raven Trading Partners, 786 N.W.2d 274 | 366+38 | In Minnesota, a party seeking equitable subrogation has the burden of establishing that equities weigh in the party's favor, which also requires that no injury to innocent third parties will result if subrogation is applied. See Peterson, 261 N.W.2d at 348. There is no injury to a party if the party's position remains unchanged or the party received that for which the party bargained. See, e.g., Hirleman, 193 Minn. at 58, 258 N.W. at 16 ("She bargained for and secured a second mortgage.... She has just that now. She is entitled to nothing more."); Gerdine, 41 Minn. at 421, 43 N.W. at 93 ("He had paid nothing, and his position remained unchanged."). Because Citizens is the party seeking equitable subrogation, Citizens has the burden of establishing that equities weigh in its favor. | A party seeking equitable subrogation has the burden of establishing that equities weigh in the party's favor, which also requires that no injury to innocent third parties will result if subrogation is applied; there is no injury to a party if the party's position remains unchanged or the party received that for which the party bargained. | Does a party seeking equitable subrogation have the burden of establishing that equities weigh in the party's favor? | 043352.docx | LEGALEASE-00128203-LEGALEASE-00128204 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 5879 | Caywood v. Supreme Lodge of Knights & Ladies of Honor, 171 Ind. 410 | 13+63 | The errors assigned call in question the action of the court in sustaining saiddemurrer. The benefit certificate sued on contains the following provision: "No suit shall be commenced against the Supreme Lodge after one year from the date of the death of the member." It appears from each paragraph of the complaint that the member to whom the certificate was issued died in the month of September, 1902. This action was commenced June 30, 1905, more than two years after the death of the member named in said certificate. Appellant insists that said provision limiting the time in which suit must be commenced is void, citing Eagle Insurance Co. v. Lafayette Insurance Co., 9 Ind. 443. The case cited followed French v.Lafayette Insurance Co., 5 McLean, 461, Fed. Cas. No. 5,402, which last-named case was disapproved by the Supreme Court of the United States in Riddlesbarger v. Hartford Insurance Co. (7 Wall.) 74 U. S. 386, 19 L. Ed. 257. This court, in Insurance Co. v. Brim, 111 Ind. 281, 12 N. E. 315, held that such a provision was not void, citing Riddlesbarger v. Hartford Insurance Co., supra, and thereby overruled the holding in Eagle Insurance Co. v. Lafayette Insurance Co., 9 Ind. 443, that such a provision was invalid. It is settled by the great weight of the authorities that a provision in an insurance policy limiting the time in which suit may be brought thereon to a period less than that fixed by statute of limitations is binding, unless it contravenes a statute. Riddlesbarger v. Hartford Insurance Co. (7 Wall.) 74 U. S. 386, 19 L. Ed. 257, and cases cited; Lewis v. Metropolitan Life Insurance Co., 180 Mass. 317, 62 N. E. 369, and cases cited; Sullivan v. Prudential Insurance Co., 172 N. Y. 482, 65 N. E. 268; Fey v. I. O. O. F. Mutual Life Insurance Co., 120 Wis. 358, 98 N. W. 206; Mead v. Phoenix Insurance Co., 68 Kan. 432, 75 Pac. 475, 64 L. R. A. 79, 104 Am. St. Rep. 412, and cases cited; McFarland v. Railway, etc., 5 Wyo. 126, 38 Pac. 347, 677, 27 L. R. A. 48, 63 Am. St. Rep. 29; Insurance | A provision in an insurance policy, limiting the time to bring suit thereon to a period less than that fixed by the statute of limitations, is valid, unless forbidden by statute. | "Is a provision in an insurance policy, limiting the time to bring suit thereon to a period less than that fixed by the statute of limitations, valid?" | Action - Memo # 847 - C SKG.docx | ROSS-003300618-ROSS-003300619 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 5880 | Drott v. Batement & Harper, 10 Ohio C.D. 824 | 269+10 | A firm name showing the surnames only of the partners, is not a fictitious name, nor a designation not showing the names of the partners within the meaning of the act of February 13, 1896, 92 O. L., 25, requiring every firm doing business under such a name or designation to file and publish a certificate showing the full names and residences of its members. | A firm name showing the surnames only of partners, is not a fictitious name, nor a designation not showing the names of the partners within the Act of Feb. 13, 1896, 92 Ohio Law 25, requiring every firm doing business under such a name or designation to file and publish a certificate showing the full names and residences of its members. | Is a firm name showing the surnames of the partners a fictitious name? | Partnership - Memo 214 - RK.docx | ROSS-003314236-ROSS-003314237 | Condensed, SA | 0.06 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5881 | Great W. Bank v. Terio, 200 A.D.2d 608 | 307A+501 | The defendant's contention that the court erred by granting the plaintiffs motionfor a voluntary discontinuance is without merit. The authority of a court to grant or to deny an application pursuant to CPLR 3217(b) for a voluntary discontinuance of an action is within its sound discretion (Tucker v. Tucker, 55 378, 383, 449 N.Y.S.2d 683, 434 N.E.2d 1050). In the absence of special circumstances, such as particular prejudice to the defendant or other improper consequences, an application for a voluntary discontinuance should begranted (see, CPLR 3217[b]; Tucker v. Tucker, supra; Matter of Commissioner ofFranklin County Dept. of Social Servs. [Carla L.] v. Terry "M.", 178 A.D.2d 881, 577N.Y.S.2d 735; State of New York v. Hubbard, 126 A.D.2d 717, 718, 511 N.Y.S.2d314; County of Westchester v. Becket Assoc., 102 A.D.2d 34, 49, 478 N.Y.S.2d 305, aff'd, 66 N.Y.2d 642, 495 N.Y.S.2d 364, 485 N.E.2d 1029). Additionally, when two actions for the same relief are pending, it is within the court's discretion to dismiss a prior pending action instead of dismissing the later action pursuant to CPLR 3211(a)(4) (see, Dunn v. Dunn, 86 A.D.2d 772, 774, 448 N.Y.S.2d 277). | Application for voluntary discontinuance should be granted absent special circumstances such as particular prejudice to defendant or other improper consequences. McKinney's CPLR 3217(b). | Should an application for voluntary discontinuance be granted absent special circumstances such as a particular prejudice to a defendant or other improper consequences? | Pretrial Proceedure - Memo # 1139 - C - TJ.docx | ROSS-003301123-ROSS-003301124 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 5882 | Burnham Serv. Corp. v. Nat'l Council on Comp. Ins., 288 A.D.2d 31 | 307A+502 | However, the court erred in declining to permit plaintiffs voluntarily to discontinue their action. CPLR 3217(b) authorizes a court to grant a motion for voluntary discontinuance "upon terms and conditions, as the court deems proper." While the determination upon such an application is generally within the sound discretion of the court (see, Tucker v. Tucker, 55 N.Y.2d 378, 383, 449 N.Y.S.2d 683, 434 N.E.2d 1050), a party ordinarily cannot be compelled to litigate and, absent special circumstances, such as prejudice to adverse parties, a discontinuance should be granted (see, Tucker v. Tucker, supra, at 383, 449 N.Y.S.2d 683, 434 N.E.2d 1050; Christenson v. Gutman, 249 A.D.2d 805, 806, 671 N.Y.S.2d 835). No special circumstances have been shown here, especially since the action is still in the pleading stage. Since the action should, therefore, have been terminated through voluntary discontinuance in the appealed order entered January 7, 2000, the motion court's subsequent orders purporting to dismiss plaintiffs' remaining causes with prejudice should be reversed and vacated. | While determination upon motion for voluntary discontinuance is generally within sound discretion of the court, party ordinarily cannot be compelled to litigate and, absent special circumstances, such as prejudice to adverse parties, discontinuance should be granted. McKinney's CPLR 3217(b). | Should an application for voluntary discontinuance be granted absent special circumstances such as a particular prejudice to a defendant or other improper consequences? | 041225.docx | LEGALEASE-00128766-LEGALEASE-00128767 | Condensed, Order, SA | 0.73 | 1 | 1 | 0 | 1 | 1 |
| 5883 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+41(6) | The burden of proof in subrogation cases involves two questions. When a party requests subrogation, that party has the burden of proving its right to subrogation. That involves showing (a) that there is some basis for asserting subrogation, and, (b) that subrogation should be allowed in those circumstances. The same rule and burden of proof apply whena party seeks to impose subrogation. The party seeking to impose subrogation has the burden of showing both (a) that there would be some basis for asserting subrogation in that instance, and, (b) that subrogation must be applied in equity in those circumstances. In practice, since subrogation is an equitable doctrine favored by the courts, the burden of proof is more easily satisfied when requesting subrogation than it would be when imposing subrogation. | Party seeking to impose subrogation upon another party has burden of showing both that there would be some basis for asserting subrogation in that instance, and that subrogation must be applied in equity in those circumstances. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Should a party seeking to impose subrogation upon another party have burden of showing both that there was a basis for asserting subrogation in that instance? | Subrogation - Memo # 1254 - C - KA.docx | ROSS-003317513-ROSS-003317514 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 5884 | Guzzo v. Goodrich Quality Theaters, 679 N.E.2d 166 | 401+5.1 | Considering the facts before us, we conclude that Lake County is a preferred venue because the appellee's claim sufficiently relates to the land to satisfy the requirement of T.R. 75(A)(2). We agree with the rationale of the Diesel decision that had the claim concerned only a question of debt, the relationship to the land would be too remote. The only determination to be made would have been the amount of money owed to the injured party. However, this action does not concern merely a question of debt. Rather, the complaint includes a claim for specific performance, which directly "relates" to the land because ownership of the land is at issue. If the appellee prevails on its claim, the land would be conveyed to the proper party. This potential for conveyance causes the relief to be in rem. The appellee wants the property, not merely monetary damages. Thus, this type of claim is designed to "determine any interest" in the land for which in rem relief would be proper as required by T.R. 75(A)(2). Therefore, we find that the requirements of T.R. 75(A)(2) have been satisfied and that Lake County is a county of preferred venue. Accordingly, the trial court did not err in denying the appellants' motion. | For purpose of determining whether county in which purchaser of real property filed suit against vendors was county of preferred venue, action seeking specific performance of contract for purchase and sale directly related to land within meaning of venue rules; action placed ownership of land at issue, and potential for conveyance caused relief to be in rem. Trial Procedure Rule 75(A)(2). | Does an action seeking specific performance of a contract for purchase and sale directly related to land cause the relief to be in rem? | 047472.docx | LEGALEASE-00128859-LEGALEASE-00128860 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5885 | DeLong v. Hampton Envelope Co., 149 S.W.3d 549 | 413+1 | With regard to Claimant's motion for frivolous appeal and sanctions, we find that, based on the substantial and competent evidence in the record, Employer's continuing failure to provide Claimant with a prosthesis is without reasonable grounds. Moreover, the cost ofproviding the prosthesis might have been less than the cost incurred by the parties to litigate Employer's appeals to the Commission and to this Court. Employer's delay of over two-and-one- half years in providing Claimant with the needed prosthesis and corresponding treatment was not only without reasonable grounds, but also, undoubtedly, has been a psychological detriment to Claimant. Additionally, we remind Employer that the purpose of the Act is to make an injuredemployee whole and to restore the employee's ability to work, either at the job the employee had when injured or a different one. We also note that without the workers' compensation statutes,employees would sue their employers for treatment made necessary by work-related injuries. [{Worker's compensation serves a dual role in that it provides employees with treatment for work-related injuries and protects employers from multiple lawsuits by employees and imposes monetary restrictions on awards. Here, Claimant suffered a work-related injury for which the authorized treating doctor prescribed treatment, and Employer has a statutory duty to provide that treatment. In light of the prior proceedings before the ALJ and the Commission, Employer could not have concluded in good faith that we would reverse the Commission's award. See Wieda v. Stupp Bros., Inc., 52 S.W.3d 602, 603 (Mo.App. E.D.2001). Therefore, we grant Claimant's motion for sanctions for frivolous appeal, pursuant to Rule 84.19, in the amount of $10,000 assessed against Employer. | Workers' compensation serves a dual role in that it provides employees with treatment for work-related injuries and protects employers from multiple lawsuits by employees and imposes monetary restrictions on awards. | Does workers' compensation provide employees with treatment for work-related injuries? | Workers' Compensation Memo # 29 - C - SA.docx | ROSS-003288348-ROSS-003288349 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 5886 | First Nat. Bank of Lafayette v. Gaddis, 250 So. 2d 504 | 83E+417 | Since the mortgage note involved in the instant suit was payable to the order of "Myself," and was endorsed in blank by the maker, the law considers it as being payable to bearer and transferable by mere delivery. LSA-R.S. 7:9 and 30; Williams v. Alphonse Mortgage Company, 144 So.2d 600 (La.App. 4 Cir. 1962). Our law is settled that a promissory note payable to bearer and secured by a mortgage, may be transferred by mere delivery, and authentic evidence of the endorsement or transfer of the note is not necessary to enable the holder to foreclose by executory process. Ford Motor Credit Co. v. Williams, 225 So.2d 717 (La.App. 1 Cir. 1969); General Contract Purchase Corp. v. Doyle, 56 So.2d 432 (La.App. Orl.Cir. 1952); Catalanotto v. Associates Discount, 207 So.2d 180 (La.App. 1 Cir. 1968). | Promissory note payable to bearer and secured by mortgage may be transferred by mere delivery and authentic evidence of endorsement or transfer of note is not necessary to enable holder to foreclose by executory process. LSA-R.S. 7:9, 7:30; LSA-C.C.P. art. 2635. | Is a promissory note payable to bearer and secured by a mortgage transferrable? | Bills and Notes - Memo 160 - RK.docx | ROSS-003286638-ROSS-003286639 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 5887 | Bank Leumi Tr. Co. of New York v. Bally's Park Place, 528 F. Supp. 349 | 172H+574(1) | Furthermore, although the death of the maker of a check or note does not terminate his liability, it does revoke the authority of the payee to collect from the drawee- bank and relegates the payee to the status of a general creditor of the estate of the deceased. InreKolben'sEstate, 203Misc. 1012, 1014, (N.Y.Sur.Ct.1953); In re Greene's Estate, 47 Misc.2d 140, 143, 261 N.Y.S.2d 977 (N.Y.Sur.Ct.1965). The U.C.C. provides a similar result. New York U.C.C. s 4-405(1). "Under 4-405(1) a bank's authority to handle items on its customer's account terminates when the bank learns that he has died ...." White & Summers, Uniform Commercial Code at 665 (2d ed. 1980). Bally's, therefore, had no right to collect the check from Bank Leumi once it knew Brinker had died. On this additional ground, Bank Leumi may recover for its mistaken payment. | Under New York law, although death of maker of check or note does not terminate his liability, it does revoke authority of payee to collect from drawee-bank and relegates payee to status of general creditor of estate of the deceased. McKinney's N.Y. Uniform Commercial Code S 4-405(1). | Does a payee have the status of general creditor of the estate of the deceased maker of a check? | Bills and Notes - Memo 167 - RK.docx | ROSS-003287351-ROSS-003287352 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5888 | Banking Comm'n v. Townsend, 243 Wis. 329 | 8.30E+186 | It is a rule of general application that marginal notations placed on a bill or a note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part of the contract and must be construed with the body of the instrument to arrive at the true agreement existing between the parties. Scholbe v. Schuchardt, 1920, 292 Ill. 529, 127 N.E. 169, 13 A.L.R. 247 and Note 251. It must be held that the marginal notation is a part of the instrument as the trial court found. The instrument properly construed operated to extend the time of payment until March 1, 1931. | Marginal notations placed on a note at the time of the execution thereof with the intention of making them a part of the contract constitute a part of the contract and must be construed with the body of the instrument to arrive at the true intention of the parties. | Are marginal notations on a note construed with the body of the instrument? | 009391.docx | LEGALEASE-00129185-LEGALEASE-00129186 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5889 | Barlow & Haun v. United States, 118 Fed. Cl. 597 | 148+277 | The ripeness analysis for plaintiffs' takings claim is not as straightforward. Defendant argues that plaintiffs' takings claim is not ripe for adjudication because plaintiffs have not availed themselves of the BLM's regulatory process for obtaining permission to pursue oil and gas development under the leases at issue. "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); accord Palazzolo v. Rhode Island, 533 U.S. 606, 620"21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) ("[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law."); MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) ("It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property."); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1351 (Fed.Cir.2002) (explaining that "[t]he rule that a taking does not ripen unless a permit is applied for and denied" has been "consistently followed"). For an agency action to be | A claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. U.S.C.A. Const. Amend 5. | "Where a land owner has not yet obtained a final decision regarding application of a land regulation to the particular property in question, is the claim ripe for review?" | Eminent Domain - Memo 346 - GP.docx | LEGALEASE-00019192-LEGALEASE-00019194 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 5890 | Koll v. Stanton-Pilger Drainage Dist., 207 Neb. 425 | 307A+501 | Neb.Rev.Stat. s 25-601 (Reissue 1979) provides, in part, that an action may be dismissed without prejudice to a future action by the plaintiffs before the final submission of the case to the jury, or to the court where the trial is by the court. It is well settled in Nebraska that a plaintiff may dismiss his action without prejudice as a matter of right at any time before final submission. It is a statutory right and not a matter of judicial grace or discretion. Gebhart v. Tri-State G. & T. Assn., 181 Neb. 457, 149 N.W.2d 41 (1967); Giesler v. City of Omaha, 175 Neb. 706, 123 N.W.2d 650 (1963). | Right of plaintiff to dismiss action without prejudice at any time before final submission is statutory right and not a matter of judicial grace or discretion. Neb.Rev.St. S 25-601. | Is the right of a plaintiff to dismiss an action without prejudice as a matter of right at any time before final submission a statutory right? | Pretrial Procedure - Memo # 1002 - C - SK.docx | ROSS-003287424-ROSS-003287425 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 5891 | Bay Gen. Indus. v. Johnson, 418 A.2d 1050 | 307A+501 | On review, the trial court's findings and conclusions will not be disturbed "unless clearly erroneous, with due regard being given to the opportunity of the trial court to judge the credibility of the witnesses." Marshall v. District of Columbia, supra at 1379-80 (quoting Keefer v. Keefer & Johnson, Inc., supra at 176 n.9). However, we are aware that a dismissal with prejudice under Rule 41(b) is a drastic remedy, to be sparingly exercised. Darden v. Capitol Cab Cooperative Ass'n, Inc., D.C.Mun.App., 154 A.2d 352, 354 (1959); National Tire Dealers Retreaders Ass'n, Inc. v. G.D.C. Corp., D.C.Mun.App., 147 A.2d 869, 871 (1959). We conclude that appellants' evidence clearly established that they were entitled to relief; the trial court's conclusions to the contrary-that the action by appellants was barred by their lack of contract privity with appellees or by their lack of legal title-are plainly erroneous. See Part III infra. We also conclude that appellants' relief may include consequential, as well as incidental, damages arising from the appellees' unlawful detention of the punch press, see Part IV infra, and that an award of punitive damages may also be appropriate for consideration by the trial court in this case. See Part V infra. | On review of trial court's order granting defendant's motion for judgment at the close of plaintiff's evidence in a nonjury case, trial court's findings and conclusions will not be disturbed unless clearly erroneous with due regard being given to opportunity of trial court to judge credibility of witnesses; however, dismissal with prejudice under rule providing for voluntary dismissal is a drastic remedy, to be sparingly exercised. D.C.C.E. SCR, Civil Rule 41(b). | Will a reviewing court disturb a trial courts findings and conclusions unless clearly erroneous? | 024011.docx | LEGALEASE-00129507-LEGALEASE-00129508 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5892 | Sutherland v. Shoemaker, 6 Neb. App. 157 | 307A+501 | Section 25-601 provides in part that "[a]n action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court." Additionally, "[i]t is well settled in Nebraska that a plaintiff may dismiss his action without prejudice as a matter of right at any timebefore final submission. It is a statutory right and not a matter of judicial grace or discretion." Koll v. Stanton-Pilger Drainage Dist., 207 Neb. 425, 426, 299 N.W.2d 435, 436 (1980) (construing " 25-601(1)). | Plaintiff may dismiss his action without prejudice as matter of right at any time before final submission; it is a statutory right and not a matter of judicial grace or discretion. Neb.Rev.St. S 25-601. | Can a plaintiff dismiss his action without prejudice as a matter of right at any time before final submission? | Pretrial Procedure - Memo # 1109 - C - CK.docx | ROSS-003312983-ROSS-003312984 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 5893 | DeJana v. Oleson, 264 Mont. 62 | 307A+501 | It is true that a district court is accorded broad discretion in determining whether a cause of action should be dismissed for failure to prosecute. Shackleton v. Neil (1983), 207 Mont. 96, 672 P.2d 1112. However, because dismissal for failure to prosecute is a harsh remedy, the court does not have unlimited discretion to grant an involuntary dismissal. Becky v. Norwest Bank (1990), 245 Mont. 1, 798 P.2d 1011. Courts exist primarily to afford a forum to settle litigable matters between disputing parties. Brymerski v. City of Great Falls (1981), 195 Mont. 428, 636 P.2d 846. Therefore, the district courts must balance the concerns of judicial efficiency embodied in Rule 41(b), M.R.Civ.P., against a party's right to meaningful access to the judicial system. Timber Tracts, Inc. v. Fergus Elec. Co-op, Inc. (1988), 231 Mont. 40, 753 P.2d 854. | District courts must balance concerns of judicial efficiency against party's right to meaningful access to judicial system when determining whether to dismiss cause of action for failure to prosecute. Rules Civ.Proc., Rule 41(b). | Must district courts balance concerns of judicial efficiency against a party's right to meaningful access to a judicial system? | Pretrial Proceedure - Memo # 1137 - C - TJ.docx | ROSS-003300213-ROSS-003300214 | Condensed, Order, SA | 0.73 | 1 | 1 | 0 | 1 | 1 |
| 5894 | Washington Fruit & Produce Co. v. City of Yakima, 3 Wash. 2d 152 | 268+683(1) | A franchise, in the sense in which we are now considering that term, connotes the right of a public utility to make use of the city streets for the purpose of carrying on the business in which it is generally engaged, that is, of furnishing service to of the public generally. When, however, a city undertakes, as in this instance, to supply a public need, and to that end purchases the necessary service from the utility, the city is to be regarded as merely authorizing the use of the streets as an incident to the delivery of service to itself, and not as granting a franchise to use the streets for general business purposes. | Where a city undertakes to supply a public need, and to that end purchases the necessary service from a utility, the city is regarded as merely authorizing the use of the streets as an incident to the delivery of service to itself, and not as granting the utility a "franchise" to use the streets for general business purposes. | What is a franchise of a public utility? | 042516.docx | LEGALEASE-00129222-LEGALEASE-00129224 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5895 | Vine St. Commercial P'ship v. City of Marysville, 98 Wash. App. 541 | 317A+114 | We conclude that property owners who petition for the formation of a ULID, whose properties are then assessed for the special benefits thereby accruing, and who subsequently pay their assessments in full, are entitled to receive the special benefits for which they have paid. In this respect, their relationship with the governing body that formed the ULID is indistinguishable from the relationship between parties who enter into individual contracts with the governing body for utility services, as was the case in Brookens, 15 Wash.App. 464, 550 P.2d 30, and in Five Mile Prairie, 51 Wash.App. 816, 755 P.2d 836. In both situations, there is a contract in the usual sense of that word, that is, " "an agreement of two or more minds, upon sufficient consideration, to do or not to do certain acts." " Caritas, 123 Wash.2d at 403, 869 P.2d 28 (citations omitted). | Property owners who petition for the formation of a utility local improvement district (ULID), whose properties are then assessed for the special benefits thereby accruing, and who subsequently pay their assessments in full, are entitled to receive the special benefits for which they have paid. | "Can property owners, after paying the assessments on their properties providing special benefits, obtain a right to receive the special benefits for which they have paid?" | 042523.docx | LEGALEASE-00129265-LEGALEASE-00129266 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5896 | Gore v. Alltel Commc'ns, 666 F.3d 1027 | 25T+143 | First, the omission that Gore insists First Cellular had a duty to disclose was its intention to transition the GSM users to the Alltel network post-acquisition. Second, Gore alleges that Alltel acquired First Cellular with an intent to breach the First Cellular Agreements without compensating the GSM users, and with an intent to "impos[e] additional fees, charges, and expenses ... in excess of those permitted under the First Cellular Agreements." Finally, Gore alleges that Alltel required the putative class members to enter into "new wireless agreements on less-favorable terms" and "threatened [the class members] that if they did not purchase the new equipment and/or enter into the less-favorable extended service contracts with Alltel ..., [they] would be charged an early termination fee of $250." But for Alltel's conduct in transitioning the First Cellular customers to the Alltel network and allegedly forcing the First Cellular customers to enter into the less-favorable Alltel Agreement, Gore's consumer fraud claim would be a simple breach of contract claim. As we have made clear in the past, "Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause. Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." In re Oil Spill by the "Amoco Cadiz" Off the Coast of France March 16, 1978, 659 F.2d 789, 794 (7th Cir.1981). Given the substance of Gore's factual allegations, his consumer fraud claim is one arising out of or relating to the Alltel Agreement. That claim too must therefore be arbitrated. | Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause; were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims. | Does the arbitrability of a claim depend upon the characterization of the claim? | Alternative Dispute Resolution - Memo 525 - RK.docx | ROSS-003287224-ROSS-003287225 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 5897 | Addison v. Reece, 263 Ga. 631 | 307A+747.1 | Appellant urges that Mrs. Reece did not timely comply with the trial court's order regarding the submission of proposed pre-trial orders. Under Uniform Superior Court Rule 7.1, however, the trial court has broad discretion in addressing the issue of an untimely submitted proposed pre-trial order. There is nothing to indicate that the trial court abused that discretion in the instant case. | Trial court has broad discretion in addressing issue of untimely submitted, proposed pretrial order. Uniform Superior Court Rule 7.1. | Does the trial court have broad discretion in addressing the issue of an untimely submitted proposed pretrial order? | Pretrial Procedure - Memo # 1339 - C - SB.docx | ROSS-003327506-ROSS-003327507 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5898 | Universal Underwriters Ins. Co. v. Superior Court for Los Angeles Cty., 250 Cal. App. 2d 722 | 307A+742.1 | The action involved here was filed in November 1964. Under rule 210, California Rules of Court, it was incumbent on all parties to complete all discovery proceedings before the pretrial conference. Pacific accordingly served its interrogatories on Universal in April 1965 pursuant to section 2030, Code of Civil Procedure. One purpose of pretrial discovery is "to simplify and narrow the issues." (Greyhound Corp. v. Superior Court, 56 Cal.2d 355, 376, 15 Cal.Rptr. 90, 99, 364 P.2d 266, 275.) As the court said in Pulse v. Hill, 217 Cal.App.2d 301, 304, 31 Cal.Rptr. 765, 767, "The principal purposes of pretrial are to find out what the lawsuit is about, to simplify and define the issues to be litigated, and to determine how the trial may proceed most expeditiously. It is also to give notice of matters not necessarily revealed by the pleadings where such matters may be issues in the case." | Principal purposes of pretrial are to find out what lawsuit is about, to simplify and define issues to be litigated, and to determine how trial may proceed most expeditiously; and another purpose is to give notice of matters not necessarily revealed by pleadings where such matters may be issues in case. Cal. Rules of Court, rules 210, 216; West's Ann.Code Civ.Proc. SS 473, 2030. | What are the principal purposes of pretrial? | 026325.docx | LEGALEASE-00130002-LEGALEASE-00130003 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 5899 | Whitaker v. Beasley, 261 N.C. 733 | 307A+742.1 | A pre-trial conference under G.S. s 1-169.1 is just what the name implies. Its purpose is to consider specifics mentioned in the statute; among them, motions to amend pleadings, issues, reference, admissions, judicial notice, and other matters which may aid in the disposition of the cause. In the discretion of the presiding judge, the hearing and determination of any motion, or the entry of any order, judgment or decree, which the presiding judge is authorized to hear, determine, or enter at term." No. 7, above quoted, fits into the framework of the pre-trial procedure. It is not a grant of authority to hear and determine disputed facts. Its order is interlocutory in nature. Green v. Western & Southern Life Ins. Co., 250 N.C. 730, 110 S.E.2d 321. "Following the hearing the presiding judge shall enter an order reciting the stipulations made and the action taken. Such order shall control the subsequent course of the case unless in the discretion of the trial judge the ends of justice require its modification. After the entry of the pre-trial order, the case shall stand for trial and may be tried at the same or at a subsequent term, as ordered by the judge. | Purpose of pre-trial conference is to consider specifics mentioned in the statute, e.g., motions to amend pleadings, issues, reference, admissions, judicial notice, and other matters which may aid in disposition of the cause. G.S. S 1-169.1. | What is the purpose of pre-trial conference? | 026578.docx | LEGALEASE-00129951-LEGALEASE-00129952 | Condensed, Order, SA | 0.79 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5900 | Stevens v. The Railroads, 4 F. 97 | 150+359 | I am inclined to think that none of these objections are tenable to qualify the right to dismiss in the present state of the practice, but it is not necessary to decide these points in the view I take of the first objection considered.The injury to the defendant must be of a character that deprives him of some substantive rights concerning his defences not available in a second suit, or that may be endangered by the dismissal, and not the mere ordinary inconveniences of doublelitigation, which, in the eye of the law, would be compensated by costs. Nor is it necessary to consider the suggestion that the stipulation of counsel, and the order upon it, amounts to an agreement to try or continue and not dismiss. I am satisfied that the right to dismiss is not absolute, and that this case is within the qualification mentioned. | The right of a plaintiff to dismiss his bill upon payment of the costs, at any time before a hearing on the merits, is not an absolute and unqualified right. It will not be allowed when by so doing the plaintiff will prejudice the defendant; but this injury must be of a character different from the mere ordinary inconveniences of double litigation, which, in the view of the law, are compensated by costs, and must deprive the defendant of some substantive right not available in a second suit, or that may be endangered by the dismissal. | Is the inconvenience of double litigation usually compensated by the payment of the costs? | 026709.docx | LEGALEASE-00130064-LEGALEASE-00130065 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 5901 | McKinney v. Emery Air Freight Corp., 954 F.2d 590 | 25T+143 | There can be no dispute about the breadth of the arbitration clause here. It isunquestionably broad, covering "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union." Agreement of May 15, 1989, at 44; ER 15, Exhibit A, at 44. We have said that "[a]n agreement to arbitrate 'any grievance or controversy affecting the mutual relations of the [parties]' ... or any other broad arbitration clause, such as 'any dispute arising out of this Agreement,' ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination [of the contract]." Camping, 915 F.2d at 1338-39 (quoting Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co., 832 F.2d 507, 510 n. 2 (9th Cir.1987)). | Broad phrase in contract "any grievance or controversy affecting the mutual relations of the (parties)" ordinarily requires court to hold that parties have provided for arbitration of disputes regarding termination of contract. | Will broad arbitration clauses cause a court to hold that the parties have provided for arbitration of disputes regarding termination? | Alternative Dispute Resolution - Memo 532 - RK.docx | ROSS-003300469-ROSS-003300470 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 5902 | Rumph v. State, 248 So. 2d 526 | 67+3 | In the light of the foregoing Florida decisions, we conceive the following to be a fair statement of the rule prevailing in this state on the present subject: When a person is charged with breaking and entering with intent to commit grand larceny, an essential element of that offense is his intent at the time of his breaking and entering to commit erand larceny (that is, to steal property of the value of $100 or more), which element must be proven at the trial. While, in the absence of 'other evidence or circumstances,' the best evidence of his intent is what he did steal, nevertheless, his said intent may be proven by such other evidence or circumstances. | When a person is charged with breaking and entering with intent to commit grand larceny, and essential element of that offense is his intent at time of his breaking and entering to commit grand larceny, that is, to steal property of the value of $100 or more, which element must be proven at the trial; while, in absence of other evidence or circumstances the best evidence of his intent is what he did steal, nevertheless, his intent may be proven by such other evidence or circumstances. | How can breaking and entering with intent to commit larceny be proven? | Burglary - Memo 21 - RK.docx | ROSS-003314334-ROSS-003314335 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |
| 5903 | Baldwin v. Klanke, 877 S.W.2d 879 | 307A+501 | The granting of a non-suit is merely ministerial; a plaintiff's right to a non-suit of its own action exists at the moment a motion is filed or an oral motion is made in open court. Shadowbrook Apartments v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). A plaintiff may take a non-suit any time during the trial until it introduces all of its evidence, other than rebuttal evidence. O'Brien v. Stanzel, 603 S.W.2d 826, 828 (Tex.1980); Tex.R.Civ.P. 162. A plaintiff's right to take a non-suit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990); Strawder v. Thomas, 846 S.W.2d 51, 59 (Tex.App."Corpus Christi 1992, no writ); Baca v. Hoover, Bax & Shearer, 823 S.W.2d 734, 737 (Tex.App."Houston [14th Dist.] 1992, writ denied) . | Granting of nonsuit is merely ministerial; plaintiff's right to nonsuit of its own action exists at moment motion is filed or oral motion is made in open court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is granting of nonsuit merely ministerial and a plaintiff's right to nonsuit of its own action exists at the moment the motion is filed? | 026089.docx | LEGALEASE-00131074-LEGALEASE-00131075 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5904 | Knightstown Banner v. Town of Knightstown, 882 N.E.2d 270 | 307A+501 | Indiana Trial Rule 41(A)(2) governs motions to dismiss such as the one before us. That rule states, in pertinent part: Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim or cross-claim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim or cross-claim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.This rule permits a claimant to voluntarily dismiss a claim after a motion for summary judgment has been filed, but only pursuant to court order. The test for determining whether a voluntary dismissal is proper is whether the opposing party would be substantially prejudiced by dismissal. Principal Life Ins. Co. v. Needler, 816 N.E.2d 499 (Ind.Ct.App.2004). Dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. Id. Concerning the assessment of legal prejudice, we have observed, [T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss. Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part. Id. at 503 (quoting 8 Moore's Federal Practice " 41.40[6] at pp. | Voluntary dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. Trial Procedure Rule 41(A)(2). | "Should voluntary dismissals generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit?" | 026117.docx | LEGALEASE-00130438-LEGALEASE-00130440 | Order, SA | 0.92 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5905 | Total Car Franchising Corp. v. Squire, 259 Ga. App. 114 | 307A+743 | In pertinent part, OCGA " 9-11-15(a) provides: "A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires." (Emphasis supplied.) Unless modified, the pretrial order, when entered, controls the subsequent course of the action. Bridges v. Dept. of Transp. The purpose of the pretrial order is to formulate and simplify the issues for trial, but these objectives should not operate contrary to the spirit of the Civil Practice Act which is to ensure that "cases be decided on their merits and that decisions based on other considerations be avoided." Ambler v. Archer.3 Even after entry of the pretrial order, amendments are to be liberally granted by the court as justice requires. Midtown Properties v. George F. Richardson, Inc.4 Thus, "[i]n considering belated motions to amend pleadings, the trial judge must freely allow amendment when justice so requires." (Punctuation omitted.) Hickox v. DuBose.5 Moreover, a pretrial order should be liberally construed "to allow the consideration of all questions fairly within the ambit of the contested issues." (Punctuation omitted.) Mullinax v. Shaw . | The purpose of the pretrial order is to formulate and simplify the issues for trial, but these objectives should not operate contrary to the spirit of the Civil Practice Act which is to ensure that cases be decided on their merits and that decisions based on other considerations be avoided. | What are the purposes of pretrial orders? | 026876.docx | LEGALEASE-00131252-LEGALEASE-00131253 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 5906 | All Weather Storm Windows v. Zahn, 112 A.2d 496 | 307A+749.1 | The trial court rule 16 provides that the pre-trial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Pre-trial procedure contemplates that a fair disclosure shall be made at pre-trial conference in order to remove cases from the realm of surprise, and generally a party is bound by pre-trial stipulations. However, rigid adherence to the pre-trial order should not always be exacted. The rule empowers the trial court to modify or amend the pre-trial order when in its judgment it is necessary in order to prevent manifest injustice. We find no abuse of the trial court discretion in this instance. | Pretrial procedure contemplates that a fair disclosure shall be made at pretrial conference in order to remove cases from realm of surprise, and, generally, a party is bound by pretrial stipulations, but rigid adherence to pretrial order should not always be exacted. | Does the rule governing pretrial order contemplate or require rigid adherence to the pretrial order? | Pretrial Procedure - Memo # 1758 - C - NE.docx | ROSS-003286332-ROSS-003286333 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 5907 | Helman v. Mendelson, 138 Md. App. 29 | 307A+749.1 | Appellant has failed to show good cause for his delay in completing discovery. See Shelton, 119 Md.App. at 333, 705 A.2d 25. We recognize the appropriateness of resolving cases on their merits and not sacrificing them on the altar of judicial efficiency. On the other hand, good faith compliance with scheduling orders is important to the administration of the judicial system and providing all litigants with fair and timely resolution of court disputes. Therefore, we conclude that the circuit court did not abuse its discretion when it decided in this case that further continuances were inappropriate. | Good faith compliance with scheduling orders is important to the administration of the judicial system and providing all litigants with fair and timely resolution of court disputes. | Is good faith compliance with scheduling orders important to the administration of the judicial system? | Pretrial Procedure - Memo # 1764 - C - PC.docx | ROSS-003301225-ROSS-003301226 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5908 | Parks v. Breedlove, 241 Ga. App. 72 | 307A+749.1 | The Parkses contend Breedlove waived his right to seek litigation expenses for bad faith because he failed to include a request for fees and expenses on that basis in the pretrial order. A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. An issue is waived if not included in the pretrial order.4 Nonetheless, a pretrial order "should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues."5 Breedlove preserved the issue of litigation expenses by including in his proposed verdict form (which was part of the pretrial order) a finding of attorney fees based on stubborn litigiousness. | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | "Does a pretrial order control the subsequent course of action, unless modified to prevent manifest injustice?" | 026987.docx | LEGALEASE-00131215-LEGALEASE-00131216 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5909 | Baumann v. Snider, 243 Ga. App. 526 | 307A+750 | A pretrial order, "when entered, controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." The purpose of a pretrial order is to promote efficiency and to conserve judicial resources. A pretrial order is to be construed liberally "to allow the consideration of all questions fairly within the ambit of contested issues." Failure of a party to raise an issue in the pretrial order is not controlling where evidence is introduced on the issue without objection, the opposing party is not surprised, and the issue is litigated. Rather, the pretrial order is deemed modified to conform to the evidence that is admitted. | Failure of a party to raise an issue in the pretrial order is not controlling where evidence is introduced on the issue without objection, the opposing party is not surprised, and the issue is litigated; in this instance, the pretrial order is deemed modified to conform to the evidence that is admitted. O.C.G.A. S 9-11-16(b). | Is a failure of a party to raise an issue in the pretrial order controlling where evidence is introduced on the issue without objection? | 026997.docx | LEGALEASE-00131266-LEGALEASE-00131267 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 5910 | DiBiase v. Universal Design & Builders, 473 A.2d 875 | 307A+750 | The Defendant's first objection to this final order is that the issue of mutual mistake was not properly before the court. The issue was mentioned neither in the initial pleadings, in the pretrial memoranda, nor in the trial court's pre-trial order. As a general rule, the issue would be treated as waived. M.R.Civ.P. 16(a)(3)(H); Ocean National Bank of Kennebunk v. Odell, 444 A.2d 422, 424 (Me.1982). However, M.R.Civ.P. 15(b) provides that "[w]hen issues not raised by the pleadings are tried by ... implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." This rule generally obtains even where the issue is omitted from a pre-trial order. See Mains v. United States, 508 F.2d 1251 (6th Cir.1975); 3 Moore's Federal Practice 15.13[1] (1983). | Rule that when issues not raised by pleadings are tried by implied consent of parties, they shall be treated in all respects as if they had been raised in pleadings generally obtains even when the issue is omitted from pretrial order. Rules Civ.Proc., Rules 15(b), 16(a)(3)(H). | "When issues not raised by pleadings are tried by implied consent of parties, will they be treated in all respects as if they had been raised in the pleadings?" | 027009.docx | LEGALEASE-00131294-LEGALEASE-00131295 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 5911 | Zavoral v. Pac. Intermountain Exp., 181 Neb. 40 | 388+9(1) | Generally, the effect of a pretrial order is to control the subsequent course of the action, and unless the order is modified at the trial to prevent a manifest injustice, the court may exclude evidenc on issues not stated in the pretrial order, and such issues need not be submitted to the jury. See Annotation, 22 A.L.R.2d 599. | Generally, the effect of a pretrial order is to control subsequent course of the action, and unless order is modified at trial to prevent manifest injustice, court may exclude evidence on issues not stated in pretrial order, and such issues need not be submitted to jury. | What is the effect of a pretrial order? | Pretrial Procedure - Memo # 1815 - C - SB.docx | ROSS-003287265-ROSS-003287266 | Condensed, SA | 0.18 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5912 | Highlands Underwriters Ins. Co. v. Foley, 691 So. 2d 1336 | 307A+749.1 | The jurisprudence provides that an orderly disposition of each case (and of the entire docket) and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. Futrell v. Scott Truck and Tractor Company of Louisiana, Inc., 629 So.2d 449, 453 (La.App. 3rd Cir.1993), writ denied, 94"0327 (La. 3/25/94); 635 So.2d 232; Bourg Dry Dock & Service Co., Inc. v. Lombas Industries, Inc., 393 So.2d 203, 204 (La.App. 1st Cir.1980). The pre-trial order controls the subsequent course of action, but it can be modified at trial to prevent substantial injustice. LSA"C.C.P. art. 1551. Although the trial court is vested with much discretion to amend its pre-trial order, this discretion must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured the preparation and presentation of their cases accordingly. | Orderly disposition of each case and avoidance of surprise are inherent in theory of pretrial procedure and are sufficient reasons for allowing trial judge to require adherence to pretrial order in conduct of action. | Is orderly disposition of each case inherent in a theory of pretrial procedure? | Pretrial Procedure - Memo # 2172 - C - TM.docx | ROSS-003286507-ROSS-003286508 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 5913 | Town of Tiburon v. Bonander, 180 Cal. App. 4th 1057 | 371+2001 | We begin with an overview of special assessments and Proposition 218, the 1996 initiative that added article XIII D to the California Constitution. The Supreme Court explained the nature of a special assessment in Knox v. City of Orland (1992) 4 Cal.4th 132, 14 Cal.Rptr.2d 159, 841 P.2d 144, a pre-Proposition 218 case. "[A] special assessment is "levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement." [Citation.]" (Id. at p. 142, 14 Cal.Rptr.2d 159, 841 P.2d 144.) "[T]he essential feature of the special assessment is that the public improvement financed through it confers a special benefit on the property assessed beyond that conferred generally. [Citations.]" (Southern Cal. Rapid Transit Dist. v. Bolen (1992) 1 Cal.4th 654, 661, 3 Cal.Rptr.2d 843, 822 P.2d 875.) A tax is different from a special assessment.Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. (Knox v. City of Orland, supra, 4 Cal.4th at p. 142, 14 Cal.Rptr.2d 159, 841 P.2d 144.) | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Can a tax be levied without regard to whether the property or person subject to the tax receives a particular benefit? | 044722.docx | LEGALEASE-00130849-LEGALEASE-00130850 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 5914 | Gunby v. Yates, 214 Ga. 17 | 316P+357 | Whether there is any merit to this constitutional attack depends upon the answer to this question: Does the provision of section 8 of the amended act, authorizing the collection of one dollar for each marriage license sold, amount to a fee or compensation for services rendered, or rather is it a tax levied upon the sale of the marriage license? A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered. United States v. Butler, 279 U.S. 1, 61, 56 S.C. 312, 80 L.Ed. 477; Central Savings Bank in City of New York v. City of New York, 279 N.Y. 266, 18 N.E.2d 151, 121 A.L.R. 607; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 S.E.2d 744, 167 A.L.R. 1347; Pittsburgh Milk Co. v. City of Pittsburgh, 360 Pa. 360, 62 A.2d 49; Memphis Natural Gas Co. v. McCanless, 183 Tenn. 635, 194 S.W.2d 476. As a general rule, fees prescribed for public officers are not taxes but compensation for particular services, unless the object and purpose of the charge is to provide general revenue rather than compensation for services rendered. Dickson v. Jefferson County Board of Education, 311 Ky. 781, 225 S.W.2d 672; State v. Montevallo Coal Mining Co., 29 Ala.App. 318, 197 So. 82. A fee is a charge fixed by law as compensation for a public officer, while a tax is a forced contribution to the public needs of government. Stewart v. Verde River Irrigation & Power District, 49 Ariz. 531, 68 P.2d 329. If a fee is required for a license to carry on a business and is intended to raise revenue, its exaction is an exercise of the power of taxation. Home Insurance Co. of New York v. City Council of Augusta, 50 Ga. 530; Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206(2), 56 S.E.2d 254. | Generally, a fee prescribed for a public officer is not a "tax" but compensation for particular services, unless object and purpose of charge is to provide general revenue rather than compensation for services rendered. | Is charge a tax if the object and purpose of such charge is to provide compensation for services rendered? | 044756.docx | LEGALEASE-00130952-LEGALEASE-00130953 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 5915 | In re George, 361 F.3d 1157 | 371+2001 | A final award that is "the subject of a demand on the [Trust] Fund ... shall constitute a liquidated claim for damages against an employer." The terminology the state uses to define the money does not control the federal-bankruptcy-law question of whether the debt is discharged by bankruptcy. In United States v. Reorganized CF & I Fabricators of Utah, Inc., the Supreme Court held that even a federal statutory denotation of the amount as a "tax" did not make it a tax for bankruptcy discharge purposes. Federal courts apply a "functional examination" to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else. "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government," as distinguished from a penalty, which is "an exaction imposed by statute as punishment for an unlawful act." Even though the money in Reorganized CF & I Fabricators would go to the United States Treasury and was termed a"tax" in the federal statute imposing the obligation, it was not a "tax," and thus not an "excise tax," because it was in substance a 100% penalty on pension plan funding deficiencies. Reorganized CF & I Fabricators does not really give us an answer for this case, because the amount the Georges owe the Trust Fund is not so obviously penal. | "Tax" is a pecuniary burden laid upon individuals or property for the purpose of supporting the government, as distinguished from a "penalty," which is an exaction imposed by statute as punishment for an unlawful act. | Is penalty an exaction imposed by statute as punishment for an unlawful act? | Taxation - Memo # 194 - C - SS.docx | ROSS-003304037-ROSS-003304039 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5916 | Jones v. Herbert Equities, 186 Misc. 163 | 413+1 | The court below, in our opinion, was warranted in the finding as fact that the accident did not arise out of and in the course of the employment and was due to negligence on the part of the employer. The employee sued the employer for the personal injuries sustained due to the latter's negligence and has recovered as damages a larger amount than could be awarded as Workmen's Compensation. It is recognized that where the facts clearly bring the case within the purview of the Workmen's Compensation Law, the employer as well as the employee is entitled to the benefit of the statute. | Where facts clearly bring case within Workmen's Compensation Law, the employer as well as employee is entitled to the benefits of the law. Workmen's Compensation Law, S 1 et seq. | Are the employer and employee entitled to the benefits of the workmens compensation laws where the facts clearly bring the case within it? | 047943.docx | LEGALEASE-00131352-LEGALEASE-00131353 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5917 | McCord v. United States, 131 Fed. Cl. 333 | 34+3(1) | The scope of this judicial review is a deferential one, as "determining who is fit or unfit to serve in the armed services is not a judicial province." See Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Id. at 1157 (emphasis in original). In determining whether the conclusion is supported by substantial evidence, "all of the competent evidence must be considered ... and whether or not it supports the challenged conclusion." Id. (emphasis omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). This Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156. | Court of Federal Claims may not substitute its judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence. | Can a court substitute its judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence? | Armed Services - Memo 63 - RK.docx | LEGALEASE-00021348-LEGALEASE-00021349 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5918 | Thomas v. United States, 122 Fed. Cl. 53 | 34+3(1) | In arguing that the Army Corps' actions were arbitrary, capricious, and not based on law, Mr. Thomas must overcome a high hurdle. "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993). The plaintiff bears the burden of overcoming the " "strong, but rebuttable, presumption" that the military discharges its duties "correctly, lawfully, and in good faith." " Bernard v. United States, 59 Fed.Cl. 497, 501 (quoting Hary v. United States, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980) (citations omitted)), aff'd, 98 Fed.Appx. 860 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); see also Spellissy v. United States, 103 Fed.Cl. 274, 283 (2012); Boyle v. United States, 101 Fed.Cl. 592, 596 (2011) (citing Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003)). | Plaintiff bears the burden of overcoming the strong, but rebuttable, presumption that the military discharges its duties correctly, lawfully, and in good faith. | "Who bears the burden of overcoming the presumption that the military discharges its duties correctly, lawfully, and in good faith?" | 008912.docx | LEGALEASE-00132431-LEGALEASE-00132432 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5919 | United States v. Ollison, 555 F.3d 152 | 146+21 | Ollison's argument is in tension with the plain language of the statute, which states that "the term "agent" ... in the case of an organization or government, includes a servant or employee. ..." See 18 U.S.C. " 666(d)(1) (emphasis added). The statute itself does not distinguish between "high-level" and "low-level" employees. Cf. Salinas v. United States, 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("The statute's plain language fails to provide any basis for limiting " 666(a)(1)(B) to bribes affecting federal funds."). When construing " 666 in the past, we have consistently applied the statute in accordance with its plain language. See Westmoreland, 841 F.2d at 576. Furthermore, if we were inclined to carve out an exception for "low-level employees," it would create a circuit split. See United States v. Sotomayor"Vazquez, 249 F.3d 1, 10 (1st Cir.2001) ("[Section] 666 has been given a wide scope, to include all employees "from the lowest clerk to the highest administrator." ") (quoting United States v. Brann, 990 F.2d 98, 101 (3d Cir.1993)). | Plain language of statute prohibiting theft or bribery by agent of organization receiving federal funds does not distinguish between "high-level" and "low-level" employees. 18 U.S.C.A. S 666(a)(1), (d)(1). | Does the plain language of the statute prohibiting theft or bribery by an agent of an organization receiving federal funds distinguish between high-level and low-level employees? | 011168.docx | LEGALEASE-00132519-LEGALEASE-00132520 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 5920 | United States v. McDonnell, 792 F.3d 478 | 63+1(1) | Next we turn to whether the Government presented evidence sufficient to support a conclusion that there was a corrupt quid pro quo, "a specific intent to give or receive something of value in exchange for an official act." Sun"Diamond, 526 U.S. at 404"05, 119 S.Ct. 1402 (emphasis omitted). To establish the necessary intent, the Government had to present evidence of "an exchange of money (or gifts) for specific official action." Jennings, 160 F.3d at 1014. Direct proof of a corrupt intent is not necessary, and "[s]uch an intent may be established by circumstantial evidence." Id. | To establish the necessary intent in a former state Governor's prosecution on corruption charges, Government had to present evidence of an exchange of money (or gifts) for specific official action. | "To establish the necessary intent for bribery, does the Government have to present evidence of an exchange of money (or gifts) for specific official action?" | 012400.docx | LEGALEASE-00132159-LEGALEASE-00132160 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 5921 | Grand Valley Ridge v. Metro. Nat. Bank, 2012 Ark. 121 | 307A+331 | We have long held that the trial court has wide discretion in matters pertaining to discovery and that a circuit court's decision will not be reversed absent an abuse of discretion. Parker v. Southern Farm Bureau Cas. Ins. Co., 326 Ark. 1073, 935 S.W.2d 556 (1996); Stein v. Lukas, 308 Ark. 74, 823 S.W.2d 832 (1992) (citing Marrow v. State Farm Ins. Co., 264 Ark. 227, 570 S.W.2d 607 (1978)). Although this court recognizes the magnitude of the circuit court's discretion in discovery matters, it has found an abuse of discretion where there has been an undue limitation of substantial rights of the appellant under the prevailing circumstances. Rickett v. Hayes, 251 Ark. 395, 473 S.W.2d 446 (1971). A motion for production of documents must be considered in light of the particular circumstances which give rise to it, and the need of the movant for the information requested. Marrow, supra. In cases where the appellant is relegated to having to prove his claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. Id. We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. Id. The goal of discovery is to permita litigant to obtain whatever information he or she may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. | In cases where a party is relegated to having to prove his claim by documents, papers, and letters kept by the opposing party, the scope of discovery with respect to such materials should be broad. | "In cases where a party is relegated to having to prove his claim by documents, papers, and letters kept by the opposing party, should the scope of discovery with respect to such materials be broad?" | Pretrial Procedure - Memo # 1924 - C - PB.docx | ROSS-003286409-ROSS-003286410 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5922 | Brown v. Superior Court In & For Butte Cty., 218 Cal. App. 2d 430 | 307A+331 | We have adverted above to the rule that the knowledge possessed by a defendant is not privileged. And it appears now settled in California that neither are the opinions of experts nor their reasons for such opinions where the opinions are based upon open, known or discoverable facts. These are discoverable not only under Professor Friedenthal's reasoning (quoted supra), but under the rules announced in Grand Lake Drive In, Inc. v. Superior Court, 179 Cal.App.2d 122, 3 Cal.Rptr. 621, 86 A.L.R.2d 129 (an expert's opinion regarding the slipperiness of a sidewalk); People ex rel. Department of Public Works v. Donovan, supra; Oceanside, supra; Mowry v. Superior Court, 202 Cal.App.2d 229, 20 Cal.Rptr. 698"in that portion of the opinion approved in Oceanside 58 Cal.2d at page 190, 23 Cal.Rptr.at page 381, 373 P.2d at page 445"(appraisers' opinions of the value of property being taken in eminent domain proceedings); and San Diego Professional Association v. Superior Court, 58 Cal.2d 194, 23 Cal.Rptr. 384, 373 P.2d 448 (an engineer's report based upon an examination of plans). The means by which plaintiff may share defendant's knowledge of the case is by taking his deposition by requests for admissions and by interrogatories. Documents in defendant's possession may be inspected. Depositions taken will also elicit the opinions of the members of the doctor-committee after hypothetical questions based upon the factual information ascertained by plaintiff's attorney from defendant (or others). These depositions may be taken without binding plaintiff to the answers given. (Code Civ.Proc. sec. 2016.) | Means by which plaintiff may share defendant's knowledge of case are by taking his deposition, by requests for admissions and by interrogatories, and documents in defendant's possession may be inspected. West's Ann.Code Civ.Proc. SS 1881, subd. 2, 2016-2034, 2036. | What are the means by which the plaintiff may share defendant's knowledge of case and documents in defendant's possession be inspected? | 027431.docx | LEGALEASE-00131846-LEGALEASE-00131847 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 5923 | Legare v. Urso, 96 R.I. 283 | 307A+331 | The statute was enacted to provide a discovery procedure that would constitute an effective and efficient substitute for the bill of discovery. General Products Co. v. Superior Court, supra. It is intended to further the simple and convenient administration of justice, and for that reason it should be given a liberal application to accomplish that purpose. Thrift v. Thrift, 30 R.I. 357, 75 A. 484. Examining the statute in that light, we conclude that a petition satisfies the requirement of particularity when it contains averments that are sufficient to inform the court of the existence of the document sought and the nature thereof. This provision of the statute was intended to be exclusory only as to petitions designed to search the records of the other party for evidence, that is to say, to preclude the "fishing excursion," so called. Broadway Furniture Co. v. Superior Court, R.I., 123 A. 566. We are of the opinion that the instant petition sufficiently describes the release and therefore complies with the statutory requirements. | The statute relating to production of documents was enacted to provide a discovery procedure that would constitute an effective and efficient substitute for bill of discovery. Gen.Laws 1956, S 9-19-23. | Is the statute relating to the production of documents enacted to provide a discovery procedure would constitute an effective and efficient substitute for the bill of discovery? | 027435.docx | LEGALEASE-00131879-LEGALEASE-00131880 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 5924 | Arfor-Brynfield v. Huntsville Mall Assocs., 479 So. 2d 1146 | 307A+745 | The pre-trial procedure established by Rule 16, A.R.Civ.P., is designed to clarify and simplify the issues to be tried. The order resulting is to control the subsequent course of the action. The drafters of the Alabama rule were mindful of the justified criticism that the federal pre-trial procedure had attracted and were committed to avoiding the wasteful and burdensome requirements of the federal pre-trial practice. Thus, the Alabama rule offers a simple procedure for defining and narrowing the issues remaining for trial. The pre-trial order is not written in stone, but it is not without meaning either. See Committee Comment, Rule 16, A.R.Civ.P. Obviously, as it is noted in the comment, pre-trial orders cannot be effective unless the judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial conference, particularly where, as here, the subject matter of the proffered amendment was known to the pleader at the time of the pre-trial conference and was not then offered. | Purpose of pretrial procedure is to clarify and simplify issues to be tried and resulting pretrial order controls subsequent course of action. Rules Civ.Proc., Rule 16. | Does the purpose of a pretrial procedure is to clarify and simplify issues to be tried and resulting pretrial order controls a subsequent course of action? | 027446.docx | LEGALEASE-00132000-LEGALEASE-00132001 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 5925 | n re Bennett (Tex. 1997) 960 S.W.2d 3 | 307A+514 | The removal to federal court placed this case in an unusual procedural posture. On the date of removal, Judge Bennett had not signed an order of dismissal, but he would have been well within his authority to defer signing such an order pending the disposition of the sanctions issues. A trial court has the discretion to allow a reasonable amount of time for holding a hearing on sanctions and, once the question of sanctions has been resolved, to then sign an order of dismissal. The court of appeals erred when it held otherwise. Judge Bennett would have had plenary power when he signed the order imposing sanctions but for the removal. | When case has been nonsuited, trial court has discretion to allow reasonable amount of time before signing order of dismissal to conduct hearing on sanctions for prior misconduct of counsel. Vernon%22s Ann.Texas Rules Civ.Proc., Rule 162. | Does a trial court have discretion to defer signing an order of dismissal so that it can allow a reasonable amount of time for holding hearings on these matters which are collateral to the merits of the underlying case? | 027672.docx | LEGALEASE-00132319-LEGALEASE-00132320 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 5926 | K. King & G. Shuler Corp. v. King, 259 Cal. App. 2d 383 | 307A+749.1 | Conceding that defendant in her verified answer to plaintiff's first amended complaint and in her cross-complaint pleaded that she operated and conducted the business as the authorized agent, manager, or employee of plaintiff corporation, this is not to be held conclusively binding upon her. Plaintiff denied the allegation in defendant's cross-complaint. As set forth in the pretrial conference order, there was an issue as to whether during the period March 8, 1963 to July 31, 1963, defendant was an agent or employee of plaintiff to be resolved at trial. It was litigated at trial and evidence thereon produced. Issues set forth in a pretrial conference order supersede those raised by the pleadings and control the subsequentcourse of trial. (Hurd v. Paquin (1964) 229 Cal.App.2d 634, 636, 40 Cal.Rptr. 524; Feykert v. Hardy (1963) 213 Cal.App.2d 67, 74, 28 Cal.Rptr. 510; County ofKings v. Scott (1961) 190 Cal.App.2d 218, 225, 11 Cal.Rptr. 893.) If the pleadings and pretrial order be ambiguous but the issue litigated, the parties cannot thereafter claim that the issue was outside the issues of the case. (California Viking Sprinkler Co. v. Pacific Indem. Co. (1963), supra, 213 Cal.App.2d 844, 850-851, 29 Cal.Rptr. 194; cf. Breakers Holding Co. v. Josebra Co. (1954) 122 Cal.App.2d 741, 748, 265 P.2d 938.) | Issues set forth in pre-trial conference order supersede those raised by pleadings and control subsequent course of trial. | Do issues set forth in pre-trial conference order supersede those raised by pleadings and control subsequent course of trial? | Pretrial Procedure - Memo # 2399 - C - ES.docx | ROSS-003300072-ROSS-003300073 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5927 | 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 | 371+2001 | Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. Richard R. Powell, Powell on Real Property, " 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in general. Id. at " 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. Ibid. Lastly, the benefit must be certain rather than speculative, although it may arise in the future. Ibid. These salient features of the special assessment are codified by statute. N.J.S.A. 40:56-1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. See, e.g. Meglino v. Township Comm. of Eaglewood, 103 N.J. 144, 510 A.2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 259 A.2d 218 (1969) (addressing special assessment for sewer); City of Paterson v. Fargo Realty, Inc., 174 N.J.Super. 178, 415 A.2d 1210 (App.Div.1980) (involving demolition of nuisance). | Traditionally, differences between assessment and tax include: assessment supports local improvements, while tax finances general operations; assessment is one-time charge, while tax is annual; and assessment requires that benefit be direct, while tax requires no such direct benefit. | "Does assessment support local improvements, while tax finances general operations?" | Taxation - Memo # 144 - C - KBM.docx | ROSS-003304013-ROSS-003304015 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5928 | Beattie v. E. China Charter Twp., 157 Mich. App. 27 | 371+2001 | Contrary to defendant's perception, however, we do not agree that the dispositive issue in this case is whether the Tax Tribunal's jurisdiction is exclusive and original. Rather, the critical inquiry is whether the subject matter of this controversy is one that in fact arises underthe property tax laws of this state. In Wikman v. Novi, supra, the Michigan Supreme Court made the distinction between assessments levied under the government's taxing powers and those levied under the government's police powers. Taxes levied (or exemptions created), under the state's police powers do not fall within the realm of property tax laws and are thus not within the jurisdiction of the Tax Tribunal:"In contrast to these special assessments which are levied under the taxing power, some special assessments are clearly not related to property taxes. Such special assessments are exacted through the state's police power as part of the government's efforts to protect society's health and welfare. Also, special assessments may be collected in connection with a regulatoryprogram to defray the cost of such regulation. Such assessments are not ones under the property tax laws and are not within the jurisdiction of the Tax Tribunal." 413 Mich. at 635-636, 322 N.W.2d 103 (citations omitted). | Taxes levied or exemptions created under state's police powers do not fall within realm of property tax laws, and are thus not within jurisdiction of Tax Tribunal. M.C.L.A. S 205.731. | "Are taxes levied or exemptions created under state's police powers, within the jurisdiction of a Tax Tribunal?" | Taxation - Memo # 282 - C - SS.docx | ROSS-003304069-ROSS-003304070 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5929 | In re Olde Florida Investments, Ltd., 272 B.R. 779 | 371+2001 | While the interpretation and construction of the term "tax" by Florida courts is not governing, it is illustrative. Florida courts long recognize the distinction between taxes and special assessments as set forth in the case of Klemm v. Davenport, 100 Fla. 627, 129 So. 904 (1930). In Klemm, the Florida Supreme Court stated: A "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A "special assessment" is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that a portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially. | Under Florida law, a "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. | Is tax imposed to execute various functions a sovereign is called on to perform? | Taxation - Memo # 284 - C - KBM.docx | ROSS-003288474-ROSS-003288475 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 5930 | United States v. Harris, 210 F.3d 165 | 63+1(1) | Our reasoning follows the rationale in Hunte: a general term like "whoever," as it appears in the antigratuity statute, excludes the United States when a contrary reading "would deprive the sovereign of a recognized or established prerogative" or would "work obvious absurdity." Nardone v. United States, 302 U.S. 379, 383-84, 58 S.Ct. 275, 82 L.Ed. 314 (1937). As the Fourth Circuit detailed, a broad array of statutes permit the government to pay witnesses for fees and expenses, including those incurred as part of the witness protection program. Anty, 203 F.3d at 309 (citing 28 U.S.C. " 1821 (per diem, mileage, and subsistence expenses for witnesses); Fed.R.Crim.P. 17(b) (same); 18 U.S.C. " 3195 (extradition costs); 18 U.S.C. " 3521(b) (expenses for witness protection program); 28 U.S.C. " 1821(b) (nominal witness attendance fee); Fed.R.Crim.P. 17(d) (same)). And the antigratuity statute itself allows the government to pay "witness fees provided by law." See 18 U.S.C. " 201(d). | A general term like "whoever," as it appears in the antigratuity statute, excludes the United States when a contrary reading would deprive the sovereign of a recognized or established prerogative, such as the government's power to use leniency or plea agreements in exchange for truthful testimony, or would work obvious absurdity. 18 U.S.C.A. S 201(c)(2). | Does the anti-gratuity statute apply to federal prosecutors or the United States government? | 011179.docx | LEGALEASE-00132570-LEGALEASE-00132571 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 5931 | United States v. Leyva, 282 F.3d 623 | 63+14 | Moreover, the district court properly instructed the jury that, under " 201(b)(2)(B), a public official acts corruptly when he accepts or receives, or agrees to accept or receive a thing of value, in return for being influenced with the specific intent that, in exchange for the thing of value, some act would be influenced. This is known as the quid pro quo in Count Two. These instructions accord with our decision in United States v. Strand, 574 F.2d 993 (9th Cir.1978),1 in which we explained that the term "corruptly" under the bribery sections of " 201 refers to the defendant's intent to be influenced to perform an act in return for financial gain. Id. at 995"96. | District court, in bribery trial, properly instructed jury as to when a public official acted "corruptly"; word "corruptly" referred to defendant's intent to be influenced to perform an act in return for financial gain. 18 U.S.C.A. S 201(b)(2)(B). | Does the word corruptly under the bribery sections refer to defendant's intent to be influenced to perform an act in return for financial gain? | 011361.docx | LEGALEASE-00133168-LEGALEASE-00133169 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5932 | United States v. Washington, 106 F.3d 983 | 110+881(1) | When a jury is instructed on multiple acts that may form the basis of a conviction, " "the verdict stands if the evidence is sufficient with respect to any one of the acts charged." " Griffin v. United States, 502 U.S. 46, 56"57, 112 S.Ct. 466, 473, 116 L.Ed.2d 371 (1991) (quoting Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970)). The fact that the district court may have instructed the jury on an additional ground not warranted by the evidence thus would not in itself establish grounds for reversing the bribery conviction. In the instant case, in any event, the instruction was supported by the evidence. The evidence showed that the defendants did "omit an act" in violation of their duties as police officers: they failed to arrest or even investigate a drug trafficker.40 Each appellant acknowledged that he thought "Jose" was a drug dealer, yet none arrested him, began an investigation into his activities, or reported him to the police department. Moreover, Harmon admitted that he accepted a bribe rather than taking appropriate "police procedures and arrest[ing] [Jose] or mak [ing] some type of report," and Taylor testified that he had accepted $2000 in return "for not arresting Jose." Based on this testimony, the jury reasonably could have concluded that the bribes were an inducement for the officers to keep quiet, as well as a payment for their affirmative misconduct. The district court's jury instruction on bribery thus comported with the evidence. | When jury is instructed on multiple acts that may legally form basis for conviction, general verdict must be sustained so long as evidence is sufficient with respect to any one of the acts charged. | "In a bribery case, if there are multiple acts that may form the basis of a conviction, does the verdict stand if the evidence is sufficient with respect to any one of the acts charged?" | Bribery - Memo #260 - C EB.docx | ROSS-003300137-ROSS-003300138 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 5933 | United States v. Allen, 10 F.3d 405 | 63+1(1) | As the law has evolved, extortion "under color of official right" and bribery are really different sides of the same coin. "Extortion "under color of official right" equals the knowing receipt of bribes.... [I]t is extortion if the official knows that the bribe ... is motivated by a hope that it will influence him in the exercise of his office and if, knowing this, he accepts the bribe." United States v. Holzer, 816 F.2d 304, 311 (7th Cir.), vacated on other grounds, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987); see also Evans v. United States, 504 U.S. 255, """", 112 S.Ct. 1881, 1888, 119 L.Ed.2d 57 (1992) ("the wrongful acceptance of a bribe establishes all the inducement the [Hobbs Act] requires" for extortion under color of official right). Because of the realities of the American political system, and the fact that the Hobbs Act's language did not justify making commonly accepted political behavior criminal, the Supreme Court in McCormick added to this definition of extortion the requirement that the connection between the payment and the exercise of office"the quid pro quo"be explicit. Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the McCormick Court did in interpreting the Hobbs Act: absent some fairly explicit language otherwise, accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe. | Extortion under color of official right and bribery are really different sides of the same coin; extortion under color of official right equals the knowing receipt of bribes and it is extortion if the official knows that the bribe is motivated by a hope that it will influence him in the exercise of his office and if, knowing that, he accepts the bribe. | How does extortion under color of official right and bribery differ? | Bribery - Memo #276 - C - LB.docx | ROSS-003300643-ROSS-003300644 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5934 | United States v. Langston, 590 F.3d 1226 | 234+15(3) | These cases reach the common-sense conclusion that an employee of an agency entity cannot be an agent of the principal entity unless the legal construct establishes such a relationship. For example, in Moeller, the Fifth Circuit concluded that the defendants were agents of the Texas Department of Agriculture ("TDA") by virtue of their employment at the Texas Federal Inspection Service ("TFIS") because the TFIS was an arm of the TDA empowered to enforce its regulations. 987 F.2d at 1138. The court inspected the cooperative agreement that created the TFIS in reaching its conclusion that employees of the agency, TFIS, were agents of the principal entity, TDA, because their conduct was directly executed on behalf of the TDA. See id. Similarly in Madrzyk, the court held that a city Alderman was an agent of both the city and the city council because the municipal code said exactly that. 970 F.Supp. at 643-44; see also Pretty, 98 F.3d at 1219 (state law put deputy treasurer in charge of investing state funds, authorizing her to act on behalf of both the state and its treasury). | For purposes of statutory prohibition against theft and bribery concerning programs receiving federal funds, employee of agency entity cannot be agent of principal entity unless legal construct establishes such relationship. 18 U.S.C.A. S 666. | "For purposes of statutory prohibition against theft and bribery concerning programs receiving federal funds, can employee of agency entity be agent of principal entity?" | 011451.docx | LEGALEASE-00133048-LEGALEASE-00133049 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5935 | United States v. Jefferson, 674 F.3d 332 | 63+1(1) | Although both the bribery and illegal gratuity statutes relate to giving a thing of value to a public official, or a public official accepting a thing of value, the illegal gratuity statute, on its face, is one-sided. That is, an illegal gratuity does not require an intent to influence or be influenced. The gratuity is a reward for an action that a public official has already taken, or for an action that the public official has committed to take in the future. The bribery statute, however, requires proof of a quid pro quo, that is, an intent on the part of the public official to perform acts on his payor's behalf. In other words, the public official's intent to perform acts for the payor"required for a bribery offense"is the exchange, or quid pro quo, missing from the illegal gratuity scenario. | Federal bribery statute requires proof of a quid pro quo, i.e., an intent on the part of the public official to perform acts on his payor's behalf. 18 U.S.C.A. S 201. | "For purpose of bribery, is quid pro quo established when a public official performs acts on his payor's behalf?" | 011459.docx | LEGALEASE-00133084-LEGALEASE-00133085 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5936 | Martin v. Yeoham, 419 S.W.2d 937 | 289+707 | As a legal entity a partnership ordinarily acts through its individual members. Each partner acts as a principle for himself and as an agent for the firm and for his copartners in respect of partnership matters. 48 C.J.S. Partnership s 136, page 571. Arado v. Keitel, 353 Mo. 223, 182 S.W.2d 176. The law of partnership is regarded as a branch of the law of agency, from which derive the principles on which a partner acts for and binds his copartners in dealings with third persons. 40 Am.Jur. Partnership, Sec. 136, p. 224. Generally speaking, and on the principles of mutual agency, the partnership, and each member, is liable for torts committed by one of the members acting in the scope of the firm business, although they do not participate in, ratify, or have knowledge of such torts. "The test of the liability is based on a determination of the question whether the wrong was committed in behalf of and within the reasonable scope of the business of the partnership. If it was so committed the partners are liable as joint tort-feasors." * * * "A necessary foundation for the liability of partners or the partnership for the tortious act of a copartner is that the act shall be performed in the line of the copartnership business, and if the injury results from a wanton or wilful act of one of the parties committed outside the agency or common business, then the person doing the act and causing the injury is alone responsible, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them, the act itself having been done in their behalf and interest." 40 Am.Jur. Partnership, Sec. 190, p. 262.6 With respect to whether the commission of a wilful tort, such as an assault and battery, by one partner will create liability against the partnership, or copartners, it is stated by 68 C.J.S]Partnership, s 168, page 618, that "the true test is not the illegality or the malicious and willful character of the wrong, but whether it was done within the scope of the wrongdoing | Where one partner commits a willful and malicious tort not within scope of agency or common business of the partnership, to which other members have not consented and which has not been ratified, they are not liable for harm caused thereby. | Will the partnership be liable for the willful tort of one partner? | 022089.docx | LEGALEASE-00133488-LEGALEASE-00133490 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 5937 | Livingston v. Stewart & Co., 194 Md. 155 | 302+8(17) | In Maryland, by a long series of statutes dating back earlier than the Constitution of the United States and by rules of court in recent years, common law pleading and practice has been so simplified as to be rid of most of the cumbersome technical requirements at common law and to remain free from the brood of new niceties of code pleading. "Whatever facts are necessary to constitute the ground of action * * * shall be stated in the pleading and nothing more; and facts only shall be stated and not arguments, or inferences, or matter of law or of evidence, or of which the court takes notice ex officio." Code, art. 75, sec. 2; Act of 1856, ch. 112, sec. 52. The requirement of "facts' and not "inferences' or "evidence" must include facts, e. g., negligent conduct, and not merely circumstantial evidence from which the facts may be inferred. Even at common law, and especially in Maryland, no great particularization of facts and circumstances is necessary in stating a cause of action for negligence. Art. 75, sec. 28, subsecs. (36, 37, 38); Hearn v. Quillen, 94 Md. 39, 41-42, 50 A. 402; Phelps v. Howard County, 117 Md. 175, 82 A. 1058; Washington, B. & A. Electric R. Co. v. Cross, 142 Md. 500, 504-506, 121 A. 374. There must, however, be "certain and definite allegation of the circumstances' sufficient to show a duty owed by defendant to plaintiff and a breach by defendant of that duty, as well as resulting injury. Jackson v. Pennsylvania Railroad Company, 176 Md. 1, 5, 3 A.2d 719, 721, 120 A.L.R. 1068. And "the general characterization of an act or omission as negligent, or of a condition as unsafe is not usually a sufficient statement of the supposed ground of liability." Phelps v. Howard County, 117 Md. 175, 177, 82 A. 1058, 1059. | A general characterization that an act or omission is negligent or a condition is unsafe is not usually a sufficient statement of supposed ground of liability. Code 1939, art. 75, SS 2, 28(36-38). | "Is the general characterization of an act or omission as negligent, or of a condition as unsafe, a sufficient statement of the supposed ground of liability?" | 023232.docx | LEGALEASE-00132660-LEGALEASE-00132661 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 5938 | Peart v. Superior Court In & For Mohave Cty., 6 Ariz. App. 6 | 307A+747.1 | Pre-trial conferences are governed by Rule 16 of the Rules of Civil Procedure, 16 A.R.S. and Rule VI of the Uniform Rules of Practice, 17 A.R.S. Rule 16 envisions "(t)he simplification of the issues (t)he possibility of obtaining admissions of fact" and "(s)uch other matters as may aid in the disposition of the action". The rule further provides that the court shall make an order reciting "the agreements made by the parties as to any of the matters considered" and that "(t)he order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice". Rule VI provides that the attorneys attending the pre-trial conference "shall have complete authority to make stipulations'. The rule directs that the Judge prepare a pre-trial order reciting '(a)ny admissions or stipulations of the parties'. While it is true that the rule contemplates that the order be reduced to writing and signed by the Judge, we hold that those matters which are set forth in the minutes are binding as a pre-trial order notwithstanding the lack of formality and strict compliance with all of the terms and provisions of the two rules relating to pre-trial conferences. Rule 80(d) of the Rules of Civil Procedure provides that "(n)o agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes'. In addition to the provisions set forth in the rules, the case law of Arizona recognizes that parties are bound by their stipulations unless relieved therefrom by the court. Higgins v. Guerin, 74 Ariz. 187, 245 P.2d 956, 33 A.L.R.2d 769 (1952). | Although it is true that rules regarding pretrial conferences contemplate that order be reduced to writing and signed by judge, those matters which are set forth in minutes are binding as pretrial order notwithstanding lack of formality and strict compliance with all terms and provisions of pretrial conference rules. 16 A.R.S. Rules of Civil Procedure, rule 16; 17 A.R.S. Uniform Rules of Practice of the Superior Court, rule VI. | "In absence of proper pretrial order, are minutes entered with respect to pretrial binding?" | Pretrial Procedure - Memo # 1862 - C - VA.docx | LEGALEASE-00022697-LEGALEASE-00022698 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5939 | Laitenberger v. State, 57 N.Y.S.2d 418 | 307A+130 | Courts have drawn a distinction between the discovery and inspection allowed by each of these two sections. The inspection under Section 296 apparently has been held to be a limited one, contemplating the production of books and papers, the examination of witnesses in connection with them to show that the books contain relevant entries, and then the inspection of such entries preparatory to offering them in evidence; while the inspection under Section 324 has been held to be a general one.Zeltner v. Fidelity & Deposit Co. of Maryland, 220 App.Div. 21, 220 N.Y.S. 356; Dunbar & Sullivan Dredging Co. v. State of New York, supra, and cases cited therein. | The right of inspection under section 296 contemplates production of books and papers, the examination of witnesses in connection with them to show that books contain relevant entries, and then inspection of such entries preparatory to offering them in evidence, as distinguished from right of inspection under section 324, which is a general right. Civil Practice Act, SS 296, 324. | What is the difference between sections 296 and 324 of the Civil Practice Act? | 027224.docx | LEGALEASE-00132603-LEGALEASE-00132604 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 5940 | Brown v. MO Delta Med. Ctr., 293 S.W.3d 28 | 30+155 | "Rule 67.02(a)(2) provides that, with exceptions not present here, "a civil action may be dismissed by the plaintiff without order of the court anytime in cases tried without a jury, prior to the introduction of evidence." " State ex rel. Moore v. Sharp, 151 S.W.3d 104, 107 (Mo.App.2004). " "The trial court loses jurisdiction at the time of dismissal and no appeal can be taken from the dismissal." " Id. (quoting P.R. v. R.S., 950 S.W.2d 255, 256 (Mo.App.1997)). A "voluntary dismissal is effective on the date it is filed with the court." v. Gaub, 75 S.W.3d 916, 917 (Mo.App.2002). "While no court order is required to effectuate the dismissal, the court may enter administrative orders such as those with regard to the assessment of costs." Id. It is clear that once a plaintiff files a voluntary dismissal of his or her petition [under Rule 67.02(a)(2) ]: "nothing remains before the court upon which it can act; even an order reinstating the case on the trial docket at the plaintiff's request is a nullity. The legal situation is as though the suit had never been brought. No steps can be taken, and any step attempted in the dismissed suit is a nullity." Richman v. Coughlin, 75 S.W.3d 334, 338 (Mo.App.2002); see P.R., 950 S.W.2d at 256. | The trial court loses jurisdiction at the time of voluntary dismissal by the plaintiff without order of the court in cases tried without a jury, and no appeal can be taken from the dismissal. V.A.M.R. 67.02(a)(2). | Does the trial court lose jurisdiction and no appeal can be taken from the dismissal when an action is voluntarily dismissed by the plaintiff without order of the court? | 027705.docx | LEGALEASE-00132694-LEGALEASE-00132695 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 5941 | Butts ex rel. Iverson v. Evangelical Lutheran Good Samaritan Soc., 802 N.W.2d 839 | 307A+517.1 | With respect to appellants' pending summary-judgment motions, this court has explained that, "[a]lthough courts may consider the existence of a pending summary judgment motion, this factor "is not by itself dispositive." " Id. at 411 (quoting Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1262 (8th Cir.1993)). "And the mere prospect of a second lawsuit is not sufficiently prejudicial to justify denial of a [rule 41.01(b) ] motion to dismiss." Id. (citing Phillips v. Ill. Cent. Gulf R.R., 874 F.2d 984, 987 (5th Cir.1989)). Nevertheless, "a voluntary dismissal that strips a defendant of a defense that would otherwise be available may be sufficiently prejudicial to justify denial." Id. (citing Ikospentakis v. Thalassic S.S. Agency, 915 F.2d 176, 177 (5th Cir.1990); Phillips, 874 F.2d at 987). | A voluntary dismissal that strips a defendant of a defense that would otherwise be available may be sufficiently prejudicial to justify denial. 48 M.S.A., Rules Civ.Proc., Rule 41.01(b). | Must a voluntary dismissal that strips a defendant of a defense that would otherwise be available be sufficiently prejudicial to justify denial? | Pretrial Procedure - Memo # 2446 - C - VA.docx | ROSS-003288051-ROSS-003288052 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5942 | Milton Meyer & Co. v. Curro, 239 Cal. App. 2d 480 | 307A+749.1 | The foregoing matters were not included among the issues in dispute set forth in the pretrial conference order and therefore do not require proof. "It is settled that, when filed, a pretrial conference order, unless modified at or before trial, supersedes the issues raised by the pleadings and controls the subsequent course of the case. [Citations.] The pretrial order limits the issues to be tried [citation] and those issues, neither raised at the pretrial conference nor designated in dispute in the pretrial conference order, are no longer issues in the case." (Feykert v. Hardy, 213 Cal.App.2d 67, 74, 28 Cal.Rptr. 510.) | When filed, pretrial conference order, unless modified at or before trial, supersedes issues raised by pleadings and controls subsequent course of case. | Does a pre-trial conference order setting out issues supersede issues raised by pleadings and controls subsequent course of case? | 028068.docx | LEGALEASE-00133422-LEGALEASE-00133423 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5943 | DeNardo v. Calista Corp., 111 P.3d 326 | 336H+137 | Res judicata applies if: "(1) a court of competent jurisdiction, (2) has rendered final judgment on the merits, and (3) the same cause of action and same parties or their privies were involved in both suits." In Plumber v. University of Alaska Anchorage we discussed whether a stipulation for dismissal with prejudice could give rise to res judicata:[A] stipulation to dismiss claims with prejudice is sufficient for res judicata purposes: "[A] stipulation [to dismiss claims with prejudice] is just as valid as a final judgment resulting from a trial on the merits, and is res judicata as to all issues that were raised or could have been determined under the pleadings. | A stipulation to dismiss claims with prejudice is sufficient for res judicata purposes; a stipulation to dismiss claims with prejudice is just as valid as a final judgment resulting from a trial on the merits, and is res judicata as to all issues that were raised or could have been determined under the pleadings. | "Does a stipulated dismissal with prejudice, entered before trial, act as a final judgment just as if the parties had proceeded to trial?" | 028129.docx | LEGALEASE-00132588-LEGALEASE-00132589 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 5944 | Alvarado v. Hyundai Motor Co., 885 S.W.2d 167 | 307A+517.1 | Upon timely motion, the nonsuit is effective at the moment it is filed and effects an immediate dismissal of the entire lawsuit. Merrill Lynch Relocation Management, Inc. v. Powell, 824 S.W.2d 804, 806 (Tex.App. Houston 14th Dist. 1992, orig. proceeding). Consequently, the trial judge merely performs a ministerial act in granting the nonsuit. Shadowbrook Apartments v. Abu Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). The taking of a nonsuit does not prejudice the parties from seeking the same relief in a subsequent suit. Ashpole v. Millard, 778 S.W.2d 169, 171 (Tex.App. Houston 1st Dist. 1989, orig. proceeding); see Aetna Casualty & Surety Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993) (subject to certain conditions, plaintiff taking nonsuit not precluded from filing subsequent suit seeking same relief); O Brien v. Stanzel, 603 S.W.2d 826, 828 (right to nonsuit without prejudice to refiling absolute when motion timely). The nonsuit or dismissal is not an adjudication of the rights of the parties but merely places them in the position they were in as if suit had never been filed. Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 103 (Tex.1962); Ashpole v. Millard, 778 S.W.2d 169, 171 (Tex.App. Houston 1st Dist. 1989, orig. proceeding). Moreover, once the case is dismissed voluntarily, no further action may be had in that case, and any further action must be taken by instituting a suit de novo unless the trial court grants a motion to reinstate.; see Missouri Pacific R.R. Co. v. Whitaker, 815 S.W.2d 348, 349 n. 2 (Tex.App. Tyler 1991, orig. proceeding) (trial court retains plenary power to entertain motion for reinstatement following nonsuit). | Nonsuit or dismissal is not adjudication of rights of parties but merely places them in position they were in as if suit had never been filed; moreover, once case is dismissed voluntarily, no further action may be had in that case, and any further action must be taken by instituting suit de novo unless trial court grants motion to reinstate. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Once a case is dismissed voluntarily, can further action be in a case by instituting suit de novo?" | Pretrial Procedure - Memo # 2660 - C - NE.docx | ROSS-003288107-ROSS-003288108 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5945 | Neuman v. Burstein, 230 Ill. App. 3d 33 | 307A+517.1 | Section 13"217 of the Code of Civil Procedure provides that after a voluntary dismissal the plaintiff may file a "new action" within a year or the remaining period of limitation. (Ill.Rev.Stat.1989, ch. 110, par. 13"217.) Thus, plaintiff is correct that under the language of section 13"217 the complaint before us constitutes a new action. (See Lyon v. Hasbro Industries, Inc. (1987), 156 Ill.App.3d 649, 656, 109 Ill.Dec. 41, 509 N.E.2d 702.) Although the trial court recognized the complaint as a new action, it found that, based on the delay in filing the certificate in the previous action, plaintiff was not entitled to another 90"day extension and dismissed the action. The court reasoned that because the trial judge had the discretion to deny the plaintiff's motion for nonsuit in the previous action and hear the defendant's motion to dismiss, the trial court in the present action "may look at the time lapse between the original affidavit and the current one as it relates to the merits of the request to extend the time for compliance with 2"622." (Emphasis added.) We do not agree. | Refiled action following voluntary dismissal was "new action" within meaning of statute permitting new action to be filed within year or remaining period of limitations. S.H.A. ch. 110, P 13-217. | Is a refiled action following a voluntary dismissal a new action within the meaning of a statute permitting a new action to be filed within a year or the remaining period of limitations? | 028378.docx | LEGALEASE-00132842-LEGALEASE-00132843 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 5946 | Ramirez v. Noble Energy, 521 S.W.3d 851 | 307A+486 | Ordinarily, the party seeking withdrawal of deemed admissions bears the burden of establishing the requirements of Rule 198.3: that good cause exists for the withdrawal, that the withdrawal will not unduly prejudice the party relying upon the deemed admissions, and that withdrawal will serve the presentation of the merits. However, when, as here, the party seeks withdrawal of merits-preclusive deemed admissions, due process requires the party opposing withdrawal to prove that the moving party's failure to timely answer the requests resulted from flagrant bad faith or callous disregard for the discovery rules. Medina, 492 S.W.3d at 62; In re Sewell, 472 S.W.3d at 456; Time Warner, 441 S.W.3d at 666. "This showing of flagrant bad faith or callous disregard is "an element of the movant's summary judgment burden." " Medina, 492 S.W.3d at 62; see also Marino, 355 S.W.3d at 634 (stating that using merits-preclusive deemed admissions as basis for summary judgment "incorporates the requirement [of showing flagrant bad faith or callous disregard] as an element of the movant's summary judgment burden"). We have already held that eight of the deemed admissions, including the primary admission relied upon by Noble in its summary judgment motion, were merits-preclusive. Thus, Noble, not Monroy, had the burden to demonstrate that Monroy's failure to respond was the result of flagrant bad faith or callous disregard. | Ordinarily, the party seeking withdrawal of deemed admissions bears the burden of establishing the following requirements: that good cause exists for the withdrawal, that the withdrawal will not unduly prejudice the party relying upon the deemed admissions, and that withdrawal will serve the presentation of the merits. Tex. R. Civ. P. 198.3. | Is the burden on the party opposing withdrawal of an admission to satisfy the court that it would be prejudiced by the amendment? | 028405.docx | LEGALEASE-00132920-LEGALEASE-00132921 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 5947 | State ex rel. Pulliam v. Reine, 108 S.W.3d 148 | 307A+517.1 | The Board relies on Rule 67.01 and cases interpreting the rule in arguing that the circuit court lacked jurisdiction to rule on her fee application after she filed her voluntary withdrawal, which the Board has termed a "voluntary dismissal." Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court anytime ... prior to the introduction of evidence." "[A] plaintiff's voluntary dismissal of his or her cause under Rule 67.02(a) is effective as of the date it is filed, and "after a case is dismissed, the trial court may take no further action and any step attempted is viewed as a nullity."" Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96, 104 (Mo.App. W.D.2003) (quoting Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 595 (Mo.App. E.D.2001)). | A plaintiff's voluntary dismissal of his or her cause is effective as of the date it is filed, and after a case is dismissed, the trial court may take no further action and any step attempted is viewed as a nullity. V.A.M.R. 67.02(a). | Is a voluntary dismissal of a plaintiff's action effective on the date it is filed? | 028655.docx | LEGALEASE-00133184-LEGALEASE-00133185 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5948 | Arie v. Intertherm, 648 S.W.2d 142 | 413+1 | However, the mere filing of a claim and subsequent discharge for absenteeism due to a work-related injury creates no cause of action under " 287.780 RSMo.1978, Rodriguez v. Civil Service Commission, 582 S.W.2d 354, 356[2] (Mo.App.1979), Mitchell v. St. Louis County, 575 S.W.2d 813, 815 [2] (Mo.App.1979). A cause of action lies only where the employee pleads and proves that she was discharged for exercising any of her rights under the Worker's Compensation Law. If the evidence demonstrates that the employer had just cause for terminating the employment, other than for the employee's exercise of her rights under the Worker's Compensation Law, then the employee cannot recover under this alternative of " 287.780 RSMo.1978. | Mere filing of a claim and subsequent discharge for absenteeism due to work-related injury creates no cause of action under statute relating to retaliatory discharge for exercising rights under the Worker's Compensation Law; cause of action lies only where employee pleads and proves that she was discharged for exercising rights under the Law. V.A.M.S. S 287.780. | Does the mere filing of a claim and subsequent discharge for absenteeism due to a work-related injury creates a cause of action? | 047780.docx | LEGALEASE-00132704-LEGALEASE-00132705 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 5949 | Lewis v. Indus. Comm'n, 2 Ariz. App. 522 | 413+1 | That the Commission was able to discredit the petitioner on many aspects of his testimony, there is little doubt. Although this evidence may be considered in connection with his credibility, we would, however, remind the Commission that industrial compensations is not based on the good moral character of the petitioner, but is founded upon whether the petitioner comes within the scope of the workmen's compensation statutes. | Industrial compensation is not based on good moral character of claimant but is founded on claim coming within scope of Workmen's Compensation Act. A.R.S. S 23-901 et seq. | "Is industrial compensation based on the good moral character of a claimant, or is it founded on a claim coming within the scope of the Workmens Compensation Act?" | 047866.docx | LEGALEASE-00132914-LEGALEASE-00132915 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 5950 | Kroer v. Smith, 318 Ill. App. 489 | 83E+863 | the Collins case the court quoted from Porter v. Cushman, 19 Ill. 572, as follows: " "If it [the negotiable paper] is found in the hands of a stranger, without such legal transfer, the presumption is, that it has been lost or purloined or otherwise improperly got into circulation" "; and went on to cite later Illinois cases as additional authority for the rule that "the legal holder of a note alone can maintain an action on it." In proceedings of that character it is essential to the plaintiff's right to recover to show that at the commencement of the suit he had the legal title to the negotiable instrument, and the mere possession thereof, payable to order and not indorsed by the payee, is not, alone, evidence of title, either legal or equitable, in the possessor, but the burden is on the possessor to prove his equitable title by showing a delivery to him with intent to pass title. Collins v. Ogden, supra; Elvin v. Wuchetich, 326 Ill. 285, 157 N.E. 243. Since defendant's answer denied plaintiff's ownership and his right to sue on the note, it was plaintiff's duty to prove ownership thereof. This he failed to do, and therefore he cannot recover on it. | The legal holder of a note alone can maintain an action on it, and if negotiable paper is found in the hands of a stranger, without negotiation by indorsement, presumption is that it has been lost or purloined or otherwise improperly got into circulation. | What is the presumption when a note or paper is presented for payment by a stranger without a legal transfer? | 010195.docx | LEGALEASE-00133674-LEGALEASE-00133675 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5951 | Tidwell v. Bank of Tifton, 115 Ga. App. 555 | 8.30E+76 | The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in (Section) 109A-3-603 on payment or satisfaction, discharge it or enforce payment in his own name." s 109A-3-301, Georgia Uniform Commercial Code. None of the provisions of s 109A-3-603 of the Georgia Uniform Commercial Code prevent a recovery by the holder here. The bank's only disability is that it takes the instrument subject to the defenses set forth in Section 109A-3-306 of the Georgia Uniform Commercial Code, none of which are pleaded or proven. While the drawer of a check has the right to stop payment of it at any time before it has been certified or paid by the drawee, the drawer remains liable, unless he has a defense which is good against the holder. Paton's Digest, p. 3447; Bank of Venice v. Clapp, 17 Cal.App. 657, 121 P. 298; Guild v. Eastern Trust & Banking Co., 122 Me. 514, 121 A. 13; Brady, The Law of Bank Checks, pp. 363, 364. Accordingly, the trial court did not err in granting a summary judgment for the plaintiff as to the amount of the check sued upon. | Drawer of check has right to stop payment of it at any time before it has been certified or paid by drawee but drawer remains liable unless he has defense which is good against holder. Code, S 109A-3-306. | "Does a drawer remain liable upon stop payment of a check, unless he has a defense which is good against the holder?" | Bills and Notes -Memo 227 -DB.docx | ROSS-003290024-ROSS-003290025 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5952 | Allred v. Hinkley, 8 Utah 2d 73 | 308+107(1) | The contention that an agent whose employment is restricted to purchases for cash supplied by the principal, absent the appearance of broader authority, has no authority to bind the principal's credit, though not disputed, has no application to this case. There is no dispute on the extent of Malin's actual authority. He was not furnished with cash nor did his authority contemplate payment of cash for the seed upon delivery. He was authorized, after the seed was graded to offer a specified price per pound for clean seed. However, before the price of a lot of seed could be fixed, the seed had first to be delivered to the Company's trucks and then taken to Burley, Idaho, were it would be cleaned and weighed. The sale was consummated and the title passed in accordance with the intention of the parties as soon as the offer was accepted and the seed delivered by placing it on the trucks. There was a necessary lapse of time after such delivery and the payment, for the seed had to be shipped to Burley, there cleaned and weighed, and only then was Malin authorized to make the final payment on such lots. | An agent whose employment is restricted to purchases for cash supplied by principal has, absent appearance of broader authority, no authority to bind principal's credit. | "Does an agent whose employment is restricted to purchases for cash supplied by the principal, have authority to bind principal's credit?" | 042129.docx | LEGALEASE-00133728-LEGALEASE-00133729 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 5953 | Taylor v. Fred Clark Felt Co., 567 S.W.2d 863 | 228+181(26) | In order to show himself entitled to summary judgment in a suit ona promissory note in which the defendant has made a general denial, the plaintiff must establish that he is the present legal owner or holder of the note sued upon. Perkins v. Crittenden, 462 S.W.2d 565 (Tex.Sup.1970). A holder of a note is the person in possession of a note "drawn, issued or indorsed to him or to his order or to bearer or in blank." Tex.Bus. &Comm.Code Ann. s 1.201(20) (Tex.UCC 1968). Even if he is not the owner thereof, the holder of a note may enforce payment of the note in his own name. Tex.Bus. &Comm.Code Ann. s 3.301 (Tex.UCC 1968). | In order to show himself entitled to summary judgment in suit on a promissory note in which defendant has made a general denial, plaintiff must establish that he is the present legal owner or holder of the note sued upon. Rules of Civil Procedure, rule 166-A; V.T.C.A., Bus. & C. SS 1.201(20), 3.301. | What needs to be proved in order to obtain a summary judgment on a note? | Bills and Notes- Memo 305-PR.docx | ROSS-003317447-ROSS-003317448 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 5954 | Barton v. Utah Transit Auth., 872 P.2d 1036 | 307A+517.1 | A party who voluntarily dismisses its complaint without prejudice generally has no right to appeal. United States v. Procter & Gamble Co., 356 U.S. 677, 680, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958); Bowers v. St. Louis S.W. Ry., 668 F.2d 369 (8th Cir.1981), cert. denied, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); Yoffe v. Keller Indus., Inc., 580 F.2d 126, 129 (5th Cir.1978), cert. denied, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979).5 The rationale behind this rule is that a voluntary dismissal without prejudice "render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought." In re Piper Aircraft Distribution Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir.1977). Indeed, a plaintiff who moves for voluntary dismissal receives just that which is sought-"the dismissal of his action and the right to bring a later suit on the same cause of action, without adjudication of the merits." LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir.1976). However, an exception to the general rule has been recognized when (1) the plaintiff is legally prejudiced by certain conditions placed by the court on the voluntary dismissal, and (2) the plaintiff evidences no acquiescence in those conditions. Bowers, 668 F.2d at 369-70; Yoffe, 580 F.2d at 130; LeCompte, 528 F.2d at 603-04. When both of these conditions are met, the plaintiff may appeal a voluntary dismissal. | Plaintiff who moves for voluntary dismissal receives just that which is sought: dismissal of his action and right to bring later suit on same cause of action, without adjudication of merits. Rules Civ.Proc., Rule 41(a). | "Is dismissal of a plaintiff's action and right to bring a later suit on a same cause of action, without adjudication of merits?" | 028461.docx | LEGALEASE-00134335-LEGALEASE-00134336 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 5955 | Sec. Nat. Tr. v. Kalmback, 613 So. 2d 664 | 307A+486 | However, even if a matter is deemed to be admitted due to a party's failure to answer, the admission may later be withdrawn or amended. LSA-C.C.P. Article 1468 provides:Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Article 1551 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under Articles 1466 and 1467 is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding. | Even if matter is deemed to be admitted due to party's failure to answer, admission may later be withdrawn or amended. LSA-C.C.P. art. 1468. | Even if a matter is deemed to be admitted due to party's failure to answer could an admission later be withdrawn or amended? | Pretrial Procedure - Memo # 2911 - C - NS.docx | ROSS-003317656-ROSS-003317657 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 5956 | Crockett v. Cassels, 95 Fla. 851 | 307A+69.1 | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | "Will no material deviation from statutes respecting taking of depositions be allowed, except by the parties' agreement or waiver?" | Pretrial Procedure - Memo # 2914 - C - NS.docx | ROSS-003331218-ROSS-003331219 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5957 | Ramirez v. Noble Energy, 521 S.W.3d 851 | 307A+486 | A party establishes "good cause" by showing that the failure to timely respond to the requests for admissions was an accident or mistake, not intentional or the result of conscious indifference. Wheeler v. Green, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam). Even a "slight excuse" for the failure to timely respond will suffice, especially when delay or prejudice to the opposing party will not result from the withdrawal. Time Warner, Inc. v. Gonzalez, 441 S.W.3d 661, 665 (Tex. App."San Antonio 2014, pet. denied). Courts have held that a showing of a clerical error is sufficient to establish good cause, even if the party is negligent, as long as the party's negligence does not rise to the level of conscious indifference. Boulet v. State, 189 S.W.3d 833, 837 (Tex. App."Houston [1st Dist.] 2006, no pet.). "Undue prejudice depends on whether withdrawing an admission ... will delay trial or significantly hamper the opposing party's ability to prepare for it." Wheeler, 157 S.W.3d at 443. Generally, the party seeking withdrawal of the deemed admissions has the burden to establish good cause. Cleveland v. Taylor, 397 S.W.3d 683, 694 (Tex. App."Houston [1st Dist.] 2012, pet. denied) (citing Boulet, 189 S.W.3d at 836). | Even a slight excuse for the failure to timely respond to requests for admission will suffice to establish good cause sufficient to withdraw deemed admissions, especially when delay or prejudice to the opposing party will not result from the withdrawal. Tex. R. Civ. P. 198.3. | Can good cause be shown when a party's failure to answer was accidental or the result of a mistake? | 028731.docx | LEGALEASE-00134844-LEGALEASE-00134845 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5958 | Martin v. Texas Dep't of Family & Protective Servs., 176 S.W.3d 390 | 307A+517.1 | Rule 162 provides that a plaintiff may nonsuit a case, "at any time" before the introduction of all of the plaintiff's evidence, as the DFPS did in this case. Tex.R. Civ. P. 162. It further provides: Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief .. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court. Id. After a trial court loses plenary power, however, it has no authority to award sanctions. Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596 (Tex.1996); re T.G., 68 S.W.3d 171, 179 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (op. on reh'g); Jobe v. Lapidus, 874 S.W.2d 764, (Tex.App.-Dallas 1994, writ denied). Thus, a trial court retains jurisdiction for 30 days after signing a final order of nonsuit to rule on pending motions. See Tex.R. Civ. P. 329b(d); In re Bennett, 960 S.W.2d 35, 38 (Tex.1997) ("Appellate timetables do not run from the date a nonsuit is filed, but rather from the date the trial court signs an order of dismissal."). | A trial court retains jurisdiction for 30 days after signing a final order of nonsuit to rule on pending motions. Vernon's Ann.Texas Rules Civ.Proc., Rule 329b(d). | Does a trial court retain jurisdiction for 30 days after signing a final order of nonsuit to rule on pending motions? | Pretrial Procedure - Memo # 2937 - C - SK.docx | ROSS-003290787-ROSS-003290788 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 5959 | Matelski v. Matelski, 840 S.W.2d 124 | 307A+476 | It has been held that where the plaintiff is not injured and the trial not delayed, even a slight excuse for the original failure to answer a request for admissions will suffice. Esparza v. Diaz, 802 S.W.2d 772, 776 (Tex.App."Houston [14th Dist.] 1990, no writ). We therefore hold that the trial court did not abuse its discretion in holding that there was good cause in granting Sharon's request for an extension of time to answer Dwain's first request for admissions. Dwain argues that a busy court schedule is not a sufficient reason to set aside deemed findings, relying on Curry v. Clayton, 715 S.W.2d 77 (Tex.App."Dallas 1986, no writ). In that case the trial court found that a showing that the late filing of a response to a request for admissions was due to an attorney's busy schedule was, without more, insufficient to show good cause for the late filing. Id. at 79. We hold that in this case there was more because, not only was the attorney busy, but there was confusion caused by a quick succession of requests and new, inexperienced office personnel. We overrule point of error number five. | Where plaintiff is not injured and trial is not delayed, even slight excuse for original failure to answer request for admissions will suffice. | "When a plaintiff is not injured and trial not delayed, will even slight excuse for original failure to answer suffice to allow withdrawal of deemed admissions?" | 028739.docx | LEGALEASE-00134703-LEGALEASE-00134704 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 5960 | Johnson v. City Wide Cab, 205 Ga. App. 502 | 307A+486 | Pursuant to OCGA " 9"11"36(b), as construed in Cielock v. Munn, 244 Ga. 810, 812"814, 262 S.E.2d 114 (1979) (Hill, J., concurring specially) and Whitemarsh Contractors v. Wells, 249 Ga. 194, 288 S.E.2d 198 (1982) (adopted Cielock special concurrence), a court may grant a motion to withdraw admissions "(1) when the presentation of the merits will be subserved thereby and (2) the party obtaining the admission fails to satisfy the court that the withdrawal will prejudice maintaining his action or defense on the merits. The burden as to the first prong is on the party moving to withdraw and the burden as to the second prong is on the respondent.... [As to the first prong, i]f the burden of proof on the subject matter of the request for admission is on the requestor, the movant is required to show the admitted request either can be refuted by admissible evidence having a modicum of credibility or is incredible on its face, and the denial is not offered solely for purposes of delay." Intersouth Properties v. Contractor Exchange, 199 Ga.App. 726, 727"728(1), 405 S.E.2d 764 (1991). | Court may grant motion to withdraw admissions when presentation of the merits will be subserved thereby and party obtaining admission fails to satisfy court that withdrawal will prejudice maintaining his action or defense on the merits. O.C.G.A. S 9-11-36(b). | "For purposes of motion to withdraw admissions, does the party moving to withdraw have the burden of showing that presentation of the merits will be subserved by withdrawal?" | Pretrial Procedure - Memo # 2977- C - KG.docx | ROSS-003305113-ROSS-003305114 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 5961 | Felton v. Hulser, 957 S.W.2d 394 | 307A+481 | Rule 59.01(c), in pertinent part, states that "[a]ny matter admitted under this [rule] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." "A request for admissions, as authorized by Rule 59.01(a), is designed to remove an issue from trial or to determine which pleaded matters present genuine issues for trial." N.R. v. A.D., 655 S.W.2d 733, 735 (Mo.App.1983) (citing Linde v. Kilbourne, 543 S.W.2d 543 (Mo.App.1976)). The purpose of the rule " "... is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." " N.R., 655 S.W.2d at 735 (analogy between Federal Rules of Civil Procedure 36 and Rule 59.01) (citations omitted). To serve this function, the rule accords conclusiveness to admissions so that a party may rely on the fact that the admission binds the party addressed, unless the court permits withdrawal or amendment of the admission. N.R., 655 S.W.2d at 735; Killian Const. Co. v. Tri"City Const. Co., 693 S.W.2d 819, 827 (Mo.App.1985) (citations omitted). A party need not produce any further proof regarding facts admitted. Killian Const. Co., 693 S.W.2d at 827. | To serve function of expediting trial by narrowing range of factual issues, rule governing requests for admissions accords conclusiveness to admissions so that party may rely on fact that admission binds party addressed, unless court permits withdrawal or amendment of admission. V.A.M.R. 59.01. | "Do admissions bind a party, unless the court permits withdrawal or amendment of the admission?" | Pretrial Procedure - Memo # 2994 - C - AP.docx | ROSS-003290799-ROSS-003290800 | Condensed, Order, SA | 0.75 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5962 | Bryant v. Cty. Council of Lake Cty., 720 N.E.2d 1 | 307A+486 | When a motion seeking the withdrawal of admissions has been made, the trial court must consider 1) whether the presentation of the merits will be subserved by permitting withdrawal, and 2) whether the party who obtained the admission will be prejudiced by withdrawal. General Motors, 573 N.E.2d at 888-89; Corby, 670 N.E.2d at 1326. Moreover, the party moving for the withdrawal of admissions established by operation of T.R. 36 does not meet its burden of showing that withdrawal will subserve the presentation of the merits simply by demonstrating that the admissions go to the core issues to be litigated. Royalty Vans Inc. v. Hill Bros. Plumbing and Heating, Inc., 605 N.E.2d 1217, 1221 (Ind.Ct.App.1993). Even if both conditions have been satisfied, the trial court is not compelled to grant withdrawal of the admissions, but may, in the exercise of its discretion, deny the request for withdrawal. General Motors, 573 N.E.2d at 889-90; Corby, 670 N.E.2d at 1326-27. | When a motion seeking the withdrawal of admissions has been made, trial court must consider (1) whether the presentation of the merits will be subserved by permitting withdrawal, and (2) whether the party who obtained the admission will be prejudiced by withdrawal. Trial Procedure Rule 36. | Does the party who has obtained withdrawal of the admissions has the burden of demonstrating that it will be prejudiced if the trial court permits withdrawal? | Pretrial Procedure - Memo # 3023 - C - SN.docx | ROSS-003289602-ROSS-003289603 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 5963 | Ruiz v. Nicolas Trevino Forwarding Agency, 888 S.W.2d 86 | 307A+486 | Trial courts possess broad discretion to permit or deny withdrawal of deemed admissions. In order to establish good cause a party must show legal or equitable excuses for his failure to answer. Eckman v. Centennial Sav. Bank, 757 S.W.2d 392, 396 (Tex.App."Dallas 1988, writ denied); Rosenthal v. National Terrazzo Tile & Marble, Inc., 742 S.W.2d 55, 57 (Tex.App."Houston [14th Dist.] 1987, no writ). The trial court has broad discretion in permitting withdrawal or amendment of the admissions, and its ruling will be set aside only on a showing of clear abuse of discretion. Lewis v. Mundy Const. Co., Inc., 781 S.W.2d 333, 335 (Tex.App."Houston [14th Dist.] 1989, writ dism'd w.o.j.); Crime Control, Inc. v. RMH"Oxford Joint Venture, 712 S.W.2d 550, 552 (Tex.App."Houston [14th Dist.] 1986, no writ). An abuse of discretion occurs when a court acts without reference to rules or principles or acts arbitrarily or unreasonably. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex.1985). | To establish good cause for withdrawal of deemed admissions, party must show legal or equitable excuses for his failure to answer. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "To establish good cause for withdrawal of deemed admissions, must a party show a legal or equitable excuses for his failure to answer?" | Pretrial Procedure - Memo # 3140 - C - VP.docx | ROSS-003290718-ROSS-003290719 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 5964 | Monolith Companies v. Hunter Douglas Hosp., 333 Ga. App. 898 | 307A+486 | In its order granting Hunter Douglas' motion for summary judgment, the trial court simply gave effect to the admission that resulted from Monolith's failure to object or respond to the requests for admission. Acknowledging Monolith's admission was not tantamount to compelling compliance with discovery contrary to Uniform Superior Court Rule 5.1, and the trial court was bound to recognize the admission under the express terms of OCGA " 9"11"36. Once an admission has been made for purposes of OCGA " 9"11"36, the matter is "conclusively established unless the court, on motion, permits withdrawal or amendment of the admission." OCGA " 9"11"36(b). A trial court "may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Id.2 Monolith never filed a motion to withdraw, and, as such, the trial court was without authority to disregard Monolith's admissions. See Vis v. Harris, 329 Ga.App. 129, 135(1)(b), 764 S.E.2d 156 (2014) ("[T]he failure to make a motion to have admissions withdrawn or amended forecloses remedial action under OCGA " 9"11"36(b), and therefore the requests for admissions which were not answered or objected to are deemed admitted.") (citation and punctuation omitted). | The first prong of the test for withdrawal or amendment of an admission that has resulted from failure to answer or object to a request for admissions, that presentation of the merits of the action will be subserved thereby, is not perfunctorily satisfied, and the desire to have a trial, standing alone, is not sufficient to satisfy the test. West's Ga.Code Ann. S 9-11-36(b). | "Is the first prong of the test for withdrawal or amendment of an admission that has resulted from failure to answer or object to a request for admissions, standing alone, is not sufficient to satisfy the test?" | 029077.docx | LEGALEASE-00134473-LEGALEASE-00134474 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 5965 | Kohl v. United States, 226 F.2d 381 | 371+2001 | tax on a transfer but rather a direct tax on proceeds without apportionment, as required by Article I, " 2, Clause 3 and Article I, " 9, Clause 4 of the Constitution. A tax imposed on property or the income therefrom only by reason of its ownership is direct. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 578, 580, 15 S.Ct. 673, 39 L.Ed. 759.Such taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon the happening of an event such as an exchange or transmission of property. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; see also Chase nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Scholey v. Rew, 23 Wall. 331, 90 U.S. 331, 23 L.Ed. 99; Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. | Direct taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon happening of an event, such as an exchange or transmission of property. U.S.C.A. Const. art. 1, SS 2, 9. | "Are indirect taxes levied upon happening of an event, such as an exchange or transmission of property?" | 045023.docx | LEGALEASE-00134436-LEGALEASE-00134437 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 5966 | Hurley v. United States, 192 F.2d 297 | 63+1(1) | As we read Sec. 201, there are three categories of persons whose conduct it forbids to be influenced: (1) officers of the United The phrases "officer or employee" and "person acting for or on behalf of the United States in any official function" must be read in the disjunctive. See Nordgren v. United States, 9 Cir., 181 F.2d 718, 720. The phrase "in any official function," therefore, modifies only the word "person" and not "officer or employee." States: (2) employees of the United States; and (3) persons acting for the United States in any official function. | The phrases "officer or employee" and "person acting for or on behalf of the United States in any official function" in statute making it an offense to promise, offer or give any money to officers or employees of United States and persons acting for United States in any official function with intent to influence their decisions must be read in the disjunctive, and the phrase "in any official function", therefore, modifies only the word "person" and not "officer or employee". 18 U.S.C.A. S 201. | Does the phrase in any official function in the statute only modify the word person? | Bribery - Memo #393 - C-CSS.docx | ROSS-003290373-ROSS-003290374 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5967 | Zoren v. Genesis Energy, 836 A.2d 521 | 289+1166(2) | Undoubtedly, a corporate general partner and the directors of that general partner owe a fiduciary duty of loyalty to a limited partnership and its limited partners. Nevertheless, the corporate general partner and its directors are entitled to the protections afforded corporate directors, including a presumption that their actions are protected from judicial oversight by the business judgment rule. "[T]he business judgment rule generally protects the actions of general partners, affording them a presumption that they acted on an informed basis and in the honest belief that they acted in the best interests of the partnership and the limited partners." Zoren has the burden of rebutting this presumption and must, as a threshold matter, plead sufficient facts showing that Salomon or the General Partner appeared on both sides of the transaction or derived a personal benefit from a transaction in the sense of self-dealing. | A corporate general partner and its directors are entitled to the protections afforded corporate directors, including a presumption that their actions are protected from judicial oversight by the "business judgment rule"; the business judgment rule generally protects the actions of general partners, affording them a presumption that they acted on an informed basis and in the honest belief that they acted in the best interests of the partnership and the limited partners. | Does the business judgment rule protect the actions of the general partner? | 022225.docx | LEGALEASE-00135717-LEGALEASE-00135718 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 5968 | Pratt v. Carns, 80 Fla. 243 | 69+37(7) | It is well settled that when a party seeks to have a deed declared to be void and delivered up to be canceled, on the ground of undue influence exerted over the mind of the grantor, he must plead the facts constituting such undue influence; the rule of pleading in such cases being the same as in cases of fraud. 31 Cyc. 55; Jackson et al. v. Rowell et al., 87 Ala. 685, 6 South. 95, 4 L. R. A. 637; Barksdale et al. v. Davis et al., 114 Ala. 623, 22 South. 17; Ellis et al. v. Crawson, 147 Ala. 294, 41 South. 942; Frick v. Kabaker, 116 Iowa, 494, 90 N. W. 498; Kelly et al. v. Perrault et al., 5 Idaho, 221, 48 Pac. 45; Heathcote v. Fairbanks, Morse & Co., 60 Fla. 97, 53 South. 950. | A party seeking to have a deed declared to be void and delivered up to be canceled, on the ground of undue influence exerted over the mind of the grantor, must plead the facts constituting such undue influence; the rule of pleading in such cases being the same as in cases of fraud. | Should facts constituting undue influence be pleaded? | 023315.docx | LEGALEASE-00135615-LEGALEASE-00135617 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 5969 | Bell v. Figueredo, 190 Ga. App. 163 | 241+130(5) | Moreover, a lawsuit renewed under OCGA " 9-2-61 is an action de novo, Adams v. Gluckman, 183 Ga.App. 666(1), 359 S.E.2d 710 (1987), and accordingly all procedural prerequisites such as filing of a new complaint and perfection of service must be met anew. See id. The affidavit filing requirement must be complied with as a prerequisite to the filing of the case at bar because OCGA " 9-11-9.1 became effective after the first suit was dismissed and before this action was filed. See St. Joseph's Hosp. v. Nease, 189 Ga.App. 239(1), 375 S.E.2d 241 (1988), cert. granted. Thus, we find the trial court properly concluded that the prerequisite of filing an affidavit pursuant to OCGA " 9-11-9.1 must be met for this renewal action. | Suit renewed under code section allowing party who files action within applicable statute of limitations and dismisses case to renew claim by filing another suit is an action de novo and all procedural prerequisites such as filing of new complaint and perfection of service must be met anew. O.C.G.A. S 9-2-61(a). | "As a renewal action is an action de novo, must procedural prerequisites of filing a renewed complaint and service of process be met anew?" | 028548.docx | LEGALEASE-00135286-LEGALEASE-00135287 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 5970 | State ex rel. White v. Hais, 17 S.W.3d 903 | 314+5(3) | However, we deny Relator's request to prohibit Judge Hais "from proceeding with trial on May 10, 2000, in light of the filed Motion for Legislative Continuance." First, Judge Hais has not ruled on Relator's motion for legislative continuance. Further, it would be within the trial court's discretion to grant or deny the legislative continuance, based upon its determination of whether Schneider's presence is necessary for a fair and proper trial, since Relator is still represented by Garnholz. Lardinois v. Lardinois, 827 284, 285 (Mo.App. E.D.1992); Riley v. Riley, 823 10, 11 (Mo.App. E.D.1991). | Party in family court matter was not entitled to writ prohibiting trial court from proceeding with trial, even though counsel filed motion for legislative continuance, where trial court did not rule on motion, it was within trial court's discretion to grant or deny legislative continuance based upon determination of whether presence of attorney, who was also state legislator, was necessary for fair and proper trial, and party was also represented by another attorney, whom trial court would not permit to withdraw. | Do courts have some discretion to grant or deny a motion for legislative continuance? | Pretrial Procedure - Memo # 3265 - C - KG.docx | ROSS-003291679-ROSS-003291680 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 5971 | Smith v. Circle P Ranch Co., 150 Cal. Rptr. 828 | 307A+476 | Where certain facts exist which the responding party does not intend to contest at trial, the proper time to admit and permit those facts to be established is during pretrial discovery. (Burke v. Superior Court (1969) 71 Cal.2d 276, 282, 78 Cal.Rptr. 481, 455 P.2d 409; Cembrook v. Superior Court, supra, 56 Cal.2d 423, 429, 15 Cal.Rptr. 127, 364 P.2d 303.) In the event, however, that the defendant denies a request for admission submitted by the plaintiff, he cannot be forced to admit the fact prior to trial despite its obvious truth. (Holguin v. Superior Court (1972) 22 Cal.App.3d 812, 820, 99 Cal.Rptr. 653.) Code of Civil Procedure section 2034, subdivision (c), provides:"If a party, after being served with a request under Section 2033 of this code to admit the genuineness of any documents or the truth of any matters of fact, Serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he may apply to the court in the same action for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. If the court finds that there were no good reasons for the denial and that the admissions sought were of substantial importance, the order shall be made. | Where certain facts exist which responding party does not intend to contest at trial, proper time to admit and permit those facts to be established is during pretrial discovery; in the event, however, that defendant denies a request for admission submitted by plaintiff, he cannot be forced to admit fact prior to trial despite its obvious truth. | Can a tort defendant be forced to admit a fact prior to trial despite its obvious truth and is the consequence for the failure to do so exposure to a costs of proof award? | 029501.docx | LEGALEASE-00135584-LEGALEASE-00135586 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 5972 | Sands v. State Through Louisiana State Med. Ctr., Sch. of Dentistry, 458 So. 2d 960 | 307A+716 | We postulate that a client who shows that he has himself behaved with reasonable diligence, but who has learned near trial time that his lawyer cannot produce material evidence because he has not prepared for trial, ought to be able to fire the lawyer and get a continuance to employ another, unless the unfairness to the other parties of granting the continuance outweighs the unfairness to the moving client of denying the continuance. A reasonably diligent client's having fired his lawyer for unpreparedness could be "good" ground for a continuance in the absence of counterbalancing circumstances. | A reasonably diligent client's having fired his lawyer for unpreparedness could be "good ground" for a continuance in the absence of counterbalancing circumstances. LSA-C.C.P. arts. 1601, 1602. | Can a reasonably diligent client's having fired his lawyer for unpreparedness be good ground for a continuance in the absence of counterbalancing circumstances? | 029534.docx | LEGALEASE-00135270-LEGALEASE-00135271 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 5973 | Payton v. Ashton, 29 S.W.3d 896 | 307A+474 | Yet, before one has an obligation to answer admissions or before any inaction on the part of the individual can give rise to deemed admissions, it is axiomatic that the requests for admissions be served. Indeed, Texas Rule of Civil Procedure 198.2(a) states as much. There we are told that the responding party must answer within a certain time period "after service of the request". tex.R. Civ. P. 198.2(a) (emphasis added). In utilizing the words "after service" the rule undoubtedly conditions the duty to respond upon service of the requests. | Before one has an obligation to answer requests for admissions or before any inaction on the part of the individual can give rise to deemed admissions, it is axiomatic that the request for admissions be served. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.2(a). | "Before one has an obligation to answer admissions or before any inaction on the part of the individual can give rise to deemed admissions, should the requests for admissions be served?" | Pretrial Procedure - Memo # 3489 - C - NS.docx | ROSS-003317458-ROSS-003317459 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5974 | Brougham Casket & Vault Co. v. DeLoach, 323 Ga. App. 701 | 307A+483 | Unless a response to requests for admission is timely and properly served upon the party requesting the admission, the requests are deemed admitted as a matter of law. See OCGA " 9"11"36(a)(2), (b); Fox Run Properties v. Murray, 288 Ga.App. 568, 569(1), 654 S.E.2d 676 (2007); Hammett v. Bailey, 147 Ga.App. 105, 106, 248 S.E.2d 180 (1978). Once the requests are deemed admitted, each of the matters addressed in the requests "are conclusive as a matter of law on the matters stated and cannot be contradicted by other evidence unless the admissions are withdrawn or amended on formal motion."(Citations and punctuation omitted.) Fox Run Properties, 288 Ga.App. at 569(1), 654 S.E.2d 676. The burden is on the party who failed to timely and properly respond to the requests for admission "to take the initiative and file a motion under OCGA " 9"11"36(b) to withdraw or amend the admissions." Karat Enterprises v. Marriott Corp., 196 Ga.App. 769, 770, 397 S.E.2d 44 (1990). | Once requests for admission are deemed admitted, each of the matters addressed in the requests are conclusive as a matter of law on the matters stated and cannot be contradicted by other evidence unless the admissions are withdrawn or amended on formal motion. West's Ga.Code Ann. S 9-11-36(a)(2), (b). | "Once requests for admission are deemed admitted, are each of the matters addressed in the requests conclusive as a matter of law on the matters stated?" | 029642.docx | LEGALEASE-00135167-LEGALEASE-00135168 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 5975 | Fox Run Properties v. Murray, 288 Ga. App. 568 | 307A+483 | It is well settled that a party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests. OCGA " 9-11-36(b); G.H. Bass & Co. v. Fulton County Bd. of Tax Assessors, 268 Ga. 327, 327-330(1), 486 S.E.2d 810 (1997); Ledford v. Darter, 260 Ga.App. 585, 587(1), 580 S.E.2d 317 (2003). This is true even if the requested admissions require opinions or conclusions of law, so long as the legal conclusions relate to the facts of the case. G.H. Bass, 268 Ga. at 329(1), 486 S.E.2d 810. As our Supreme Court has stated, "[t]he language in OCGA " 9-11-36(a) is clear, unambiguous, and unequivocal and means just what it says. One must comply strictly and literally with the terms of the statute upon the peril of having his response construed to be an admission." (Citations and punctuation omitted.) Id. at 331(2), 486 S.E.2d 810. Thus, matters deemed admitted under this statute become "solemn admission [s] in judicio [and are] conclusive as a matter of law on the matter[s] stated and cannot be contradicted by other evidence unless [the admissions are] withdrawn or amended on formal motion." (Citation and footnote omitted.) Mays v. Ed Voyles Chrysler-Plymouth, 255 Ga.App. 357, 358(1), 565 S.E.2d 515 (2002). See Vaughn v. Metro. Property & Cas. Ins. Co., 260 Ga.App. 573, 574-575(3), 580 S.E.2d 323 (2003). | Matters deemed admitted on basis of failure to respond to requests for admissions become solemn admissions in judicio and are conclusive as a matter of law on the matters stated and cannot be contradicted by other evidence unless the admissions are withdrawn or amended on formal motion. West's Ga.Code Ann. S 9-11-36(b). | "Once requests for admission are deemed admitted, are each of the matters addressed in the requests conclusive as a matter of law on the matters stated?" | Pretrial Procedure - Memo # 3520 - C - NC.docx | LEGALEASE-00025419-LEGALEASE-00025420 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 5976 | Brodtmann v. Duke, 1998-1518 (La. App. 4 Cir. 3/21/01) | 307A+485 | Louisiana Code of Civil Procedure Article 1472 provides as follows:If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit. | Attorney fees awarded for party's failure to admit genuineness of document or truth of any matter would be the reasonable expense incurred in proving the truth of the requested admission. LSA-C.C.P. art. 1472. | "If a party fail to admit the truth of any matter requested, should the party requesting the admissions prove the truth of the matter to apply to the court for an order requiring the other party to pay the reasonable expenses and reasonable attorney's fees?" | 029734.docx | LEGALEASE-00135713-LEGALEASE-00135714 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5977 | Dorfman v. Lederman, 154 Ga. App. 473 | 307A+483 | The trial judge in permitting the defendant to withdraw her admissions conducted a hearing in which he applied the statutory provisions of Code Ann. s 81A-136(b) (Ga.L.1966, pp. 609, 648; as amended through Ga.L.1972, pp. 510, 528) and the principles pertinent thereto as outlined in Cielock v. Munn, 244 Ga. 810, 262 S.E.2d 114. As we pointed out in Moore Ventures Limited Partnership v. Stack, 153 Ga.App. 215, 264 S.E.2d 725, wherein we followed Cielock, the party opposing the motion has the burden of establishing that withdrawal of the admissions will prejudice him in maintaining his action on the merits and that depriving such party of a judgment by default "is not the kind of prejudice envisioned by the Act." Accord, A & D Barrel etc. Co. v. Fuqua, 132 Ga.App. 827, 833, 209 S.E.2d 272. | Depriving a party of a judgment by default is not the kind of prejudice envisioned by statute requiring party opposing motion to withdraw admissions resulting from failure to answer request for admissions to establish that withdrawal of the admissions would prejudice him in maintaining his action on the merits. Code, S 81A-136(b). | Does the party opposing the motion of withdrawal of the admission has the burden to establish that such withdrawal will prejudice him in maintaining his action in merits? | 029814.docx | LEGALEASE-00135707-LEGALEASE-00135708 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 5978 | Bezou v. Bezou, 2015-1879 (La. App. 1 Cir. 9/16/16), 203 So. 3d 488 | 307A+485 | Furthermore, the trial court is required to allow the introduction of "all admissible evidence" when an attorney fee is claimed. La. R.S. 13:3738; Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd., 554 So.2d 1347, 1354 (La.App. 1 Cir.1989). The trial court has wide discretion in determining whether to award attorney's fees based on a party's failure to admit the truth of any matter that is later proved to be genuine.Matthews v. Matthews, 2015"499 (La.App. 5 Cir. 12/23/15), 184 So.3d 173, 180. | The trial court has wide discretion in determining whether to award attorney's fees based on a party's failure to admit the truth of any matter that is later proved to be genuine. La. Code Civ. Proc. Ann. art. 1472. | Does court have discretion in determining whether to award plaintiff attorney fees in personal injury action? | 030070.docx | LEGALEASE-00135039-LEGALEASE-00135040 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5979 | Gonzales v. Surplus Ins. Servs., 863 S.W.2d 96 | 307A+483 | In examining the record before us, appellant failed to timely answer request for admissions, or to file written objections, or to file a motion to file answers late, resulting in the appellee's admissions being deemed. Appellant admits receiving the request for admissions on May 23, 1991 and based on Rule 169 and Rule 21a admissions would be deemed by operation of law on June 26, 1991. The record reflects that appellant made no response to anything until July 19, 1991, and summary judgment was granted July 23, 1991. Admissions, once deemed admitted, are judicial admissions and appellant may not then introduce controverting testimony in any legal proceeding related to the instant action. Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App."Houston [1st Dist.] 1986, no writ). Deemed admissions may be employed as summary judgment proof, Elkins v. Jones, 613 S.W.2d 533, 534 (Tex.Civ.App."Austin 1981, no writ); and once admissions are deemed admitted by operation of law and where said admissions fully support each element of appellee's motion for summary judgment, notice to appellant of any proceedings with regard to the motion for summary judgment would appear moot. | Admissions, once deemed admitted, are judicial admissions, and party against whom admissions are deemed admitted may not then introduce controverting testimony in any legal proceeding related to action. Vernon's Ann.Texas Rules Civ.Proc., Rules 21a, 169. | "Are admissions, once deemed admitted, judicial admissions, and a party against whom admissions are deemed admitted may not then introduce controverting testimony in any legal proceeding related to action?" | 030543.docx | LEGALEASE-00135759-LEGALEASE-00135760 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5980 | In re Feldman's Estate, 387 Ill. 568 | 8.30E+186 | The above-cited case of Economy Fuse & Mfg. Co. v. Standard Electric Mfg. Co., 359 Ill. 504, 194 N.E. 922, 925, summarizes the primary rule of construction to be followed in Illinois, as follows: "Notations or memoranda placed on the back of a check contemporaneously with the execution of the instrument, with intention of making them a part of the contract for payment of money, constitute as much a part of the instrument as though incorporated in the body thereof. Scholbe v. Schuchardt, 292 Ill. 529, 127 N.E. 169, 13 A.L.R. 247; Van Zandt v. Hopkins, 151 Ill. 248, 37 N.E. 845. In the absence of evidence concerning the intention of the maker in placing such notation on the back of a check it will be presumed to have been made contemporaneously with the instrument and as a part of it, and will be given effect as if made in the body thereof." In that case, as well as in Van Zandt v. Hopkins, 151, Ill. 248, 37 N.E. 845, and Scholbe v. Schuschardt, 292 Ill. 529, 127 N.E. 169, 13 A.L.R. 247, there appeared something entirely contrary and foreign to the promise to pay a fixed sum on a definite date, such as a reference to certificates of stock and credits claimed, but this court held in each instance that the memorandum was a part of the instrument and had to be taken into account by all parties dealing with it | Notations or memoranda placed on the back of a check contemporaneously with the execution of the instrument with intention of making them a part of the contract for payment of money constitute as much a part of the instrument as though incorporated in the body thereof. | Should a memorandum or notation placed on the back of a note or an instrument at the time of execution binding on the parties? | 010178.docx | LEGALEASE-00136874-LEGALEASE-00136875 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 5981 | United States v. Triumph Capital Grp., 260 F. Supp. 2d 462 | 63+1(1) | The legislative history of the statute indicates that "the term "Federal program" means that there must exist a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives." S.Rep. No. 98"225, at 370 (1983) ("Senate Report"), reprinted in 1984 U.S.C.C.A.N. 3182, 3511; see also United States v. Zyskind, 118 F.3d 113, 115 (2d Cir.1997); United States v. Rooney, 986 F.2d 31 35 (2d Cir.1993) (finding that the relevant inquiry in determining whether federal funds constitute "benefits ... under a Federal program" is "whether the funds disbursed can be considered Federal assistance within a specific statutory scheme intended to promote public policy objectives").Congress intended that the term "Federal program" be interpreted broadly. See Senate Report at 369, 1984 U.S.C.C.A.N. at 3510 | For purposes of the federal program bribery statute, the term "Federal program" means that there must exist a specific statutory scheme authorizing the federal assistance in order to promote or achieve certain policy objectives. 18 U.S.C.A. S 666. | "What does the term ""federal program"" mean for purposes of the federal program bribery statute?" | 011697.docx | LEGALEASE-00136599-LEGALEASE-00136600 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 5982 | United States v. Ihnatenko, 482 F.3d 1097 | 63+1(1) | We today join our sister circuits and hold that 18 U.S.C. " 201(c)(2) does not prohibit the government from paying fees, housing, expenses, and cash rewards to any cooperating witness, so long as the payment does not recompense any corruption of the truth of testimony. See Smith, 196 F.3d at 1039 n. 5 (noting that "18 U.S.C. " 201(c)(2) might apply to a way-ward prosecutor who bribes a witness to lie on the stand"). In reaching this conclusion we stress, as did the Third and Fourth Circuits, that " "a defendant's right to be apprised of the government's compensation arrangement with the witness, and to inquire about it on cross-examination, must be vigorously protected." " Harris, 210 F.3d at 167 (quoting Anty, 203 F.3d at 312 (internal citations omitted)). The district court did so here, and Franco was exhaustively cross-examined on these benefits by eight defense lawyers in their efforts to discredit him. | Statute criminalizing giving something of value to a witness for or because of his testimony does not prohibit the government from paying fees, housing, expenses, and cash rewards to any cooperating witness, so long as the payment does not recompense any corruption of the truth of testimony. 18 U.S.C.A. S 201(c)(2). | Is government's promise of leniency to a cooperating witness amount to giving of something of value for testimony in violation of 18 U.S.C.  201(c)(2)? | 011753.docx | LEGALEASE-00136371-LEGALEASE-00136372 | Condensed, Order, SA | 0.66 | 1 | 1 | 0 | 1 | 1 |
| 5983 | United States v. Gjieli, 717 F.2d 968 | 63+1(1) | Intent: Van Hengel was approached by the defendants because he was a government employee and because they erroneously perceived that he had the power to effect the release of Zeff Lulgjuraj from state prison as a result of that status. Although erroneous, defendants' beliefs satisfy the intent requirement of " 201(b)(3). This provision encompasses both an intent to induce acts which are part of a public official's lawful duties and those acts which are erroneously perceived by the briber to be part of the public official's lawful duties. | Statutory provision proscribing bribery of a public official encompasses both an intent to induce acts which are part of public official's lawful duties and those acts which are erroneously perceived by briber to be part of public official's lawful duties. 18 U.S.C.A. S 201(b)(3). | Does bribers intent to induce acts which are erroneously perceived to be part of the public official's lawful duties satisfy the specific intent element of bribery? | 011871.docx | LEGALEASE-00136113-LEGALEASE-00136114 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5984 | Old Colony Ins. Co. v. Dressel, 220 Ga. 354 | 302+218(1) | 1. The office of a special demurrer is to compel the opposite party to plead his cause or defense plainly, fully and distinctly. See Code " 81-101. By requiring a plaintiff to set forth the facts upon which he relies for recovery with requisite clarity and fullness two purposes are accomplished. First, the defendant is informed of the facts to which he is entitled in the preparation of his defense. Where the purpose of the special demurrer is for the single purpose of obtaining such information and it clearly and affirmatively appears from the record that the defendant had full knowledge of the information sought, prior to the trial, there is no hurtful error in overruling the special demurrer. Aycock v. Williams, 185 Ga. 585, 196 S.E. 54; Glover v. Maddox, 98 Ga.App. 548(2), 106 S.E.2d 288. The second purpose of requiring the plaintiff to plead his case plainly and with reasonable fullness is to enable the demurring party and the court to ascertain whether the facts upon which the plaintiff predicates his cause constitute a cause of action, so that it may fairly appear from the petition whether it is subject to general demurrer. Kemp v. Central of Ga. Rwy. Co., 122 Ga. 559, 561, 50 S.E. 465; Wrightsville & Tennille R. Co. v. Vaughan, 9 Ga.App. 371(2), 71 S.E. 691; Porter v. Prudential Ins. Co., 82 Ga.App. 626, 631, 61 S.E.2d 797. In Alford v. Zeigler, 65 Ga.App. 294, 297, 16 S.E.2d 69, 72, it is held: "The legitimate function of a special demurrer is to compel the pleader to disclose whether he really has a cause of action or defense." When this is the object of the special demurrer the defendant is entitled to have the facts set forth with reasonable certainty and fullness, regardless of whether he has knowledge of these facts before the trial. | Defendant is entitled to have facts set forth with such reasonable certainty and fullness as to disclose whether plaintiff really has cause of action, regardless of whether defendant has knowledge of facts before trial, and defendant urging special demurrer need not make it appear that he does not possess knowledge of facts necessary for plaintiff to meet statutory requirement that he set forth his cause plainly, fully and distinctly. Code, S 81-101. | Is the legitimate function of a special demurrer compelling the pleader to disclose whether he really has a cause of action or defense? | Pleading - Memo 329 - RMM.docx | ROSS-003291639-ROSS-003291641 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5985 | Morrow v. Lindsey, 164 Ark. 606 | 228+143(14) | An appeal has been duly prosecuted to this court to test the correctness of the ruling of the trial court in refusing to set the judgment aside and to grant appellant a new trial. The only plausible argument made by appellant in his brief for a reversal of the judgment refusing to set aside the original judgment and grant him a new trial is that the court promised his attorney not to take up any of the cases until the Legislature, upon which he was in attendance as a member, adjourned. There is no foundation, however, in the record upon which to base the argument. The original and amended motions to set the judgment aside and grant a new trial do not allege that the court promised Mr. Eades to continue the cases, in which he was interested, until after the adjournment of the Legislature. The affidavits filed in support thereof do not contain a statement to that effect. The extent of the allegation and proof is that appellant and his attorney understood that this and other cases in which Mr. Eades was interested would be passed until the adjournment of the Legislature. The allegation and proof fails to show that appellee consented or the court agreed to a postponement of this case during Mr. Eades' attendance on the Legislature. The mere absence of employed counsel from court on account of other business engagements is not such an unavoidable casualty as will necessarily work a continuance of a cause pending in said court, or which will entitle the defaulting party to a new trial thereof. These are matters which appeal to the discretion of the court. Brickey v. State, 148 Ark. 595, 231 S. W. 549. It cannot be said that the trial court abused its discretion in the instant case in refusing to set the judgment aside and grant a new trial, for it was not alleged and shown that any arrangement had been made with appellee or the court for a continuance of the cause. | Mere absence of employed counsel from court on other business will not necessarily work a continuance of a pending cause or entitle defaulting party to set the judgment aside. | Will the mere absence of an employed counsel from court on account of other business necessarily work a continuance of a pending cause in that court? | Pretrial Procedure - Memo # 3287 - C - SU.docx | ROSS-003291681-ROSS-003291682 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 5986 | Miller v. Miller, 1981-NMSC-078 | 307A+716 | Additionally, a review of the evidence is necessary for this Court to properly determine whether the trial court erred in denying the motion for a continuance. A motion for a continuance is not ipso facto allowed when a party's attorney withdraws. Williams and Michael v. Kennamer, 71 N.C.App. 215, 321 S.E.2d 514 (1984). "[A] motion to continue is addressed to the sound discretion of the trial judge." Shankle v. Shankle, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). In deciding whether to grant the motion a court should "hear the evidence pro and con, consider it judicially and ... "consider all the facts in evidence.... [A] denial of the motion is not an abuse of discretion where the evidence introduced on the motion for a continuance is conflicting or insufficient." " Id. at 483, 223 S.E.2d at 386 (citation omitted). Without a narration of the evidence or reasons presented in support of the motion to continue, it is not possible for this Court to determine whether the trial judge abused his discretion. | Continuance is not ispo facto allowed when party's attorney withdraws; motion to continue is addressed to sound discretion of trial judge. | Is continuance not ispo facto allowed when party's attorney withdraws because the motion to continue is addressed to sound discretion of a trial judge? | 029406.docx | LEGALEASE-00136221-LEGALEASE-00136222 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 5987 | Every v. City of New Orleans, 514 So. 2d 556 | 307A+716 | Nonetheless, because the court cannot be closed to a defendant who desires to bring the case to trial, a plaintiff is not entitled to indefinite continuances simply because he has discharged his lawyer. Sands v. State Through La. State Med., supra. Among the factors a trial judge considers before granting a continuance are diligence, good faith, and reasonable grounds. Katz v. Melancon, 467 So.2d 1284 (La.App. 4th Cir.1985). The judge has wide discretion in acting upon a motion for continuance under LSA-C.C.P. Art. 1601, and his ruling will not be disturbed on appeal unless he clearly abused his discretion. Sauce v. Bussell, 298 So.2d 832 (La.1974). | Among the factors a trial judge considers before granting a discretionary continuance on motion of a litigant seeking continuance to employ another attorney are diligence, good faith and reasonable grounds. LSA-C.C.P. art. 1602. | What are the factors a trial judge considers before granting a discretionary continuance on motion of a litigant seeking continuance to employ another attorney? | 029410.docx | LEGALEASE-00136227-LEGALEASE-00136228 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5988 | Miller v. Grier S. Johnson, 191 Va. 768 | 307A+721 | Mere failure of a litigant to employ counsel until just prior to the date set for trial is not a ground for continuance. Neither is withdrawal or discharge of counsel under the same circumstances. If such were the rule a litigant could indefinitely avoid trial by changing counsel. Defendant was notified on December 14th by Mr. Parsons that he was withdrawing from the case. On December 17th she received a letter from the judge himself, stating that if she desired counsel she must act at once. Under the circumstances, her failure to employ counsel until three days before the date fixed for the trial is not the exercise of due diligence. The trial court did not abuse its discretion in refusing a continuance on this ground. | Mere failure of a litigant to employ counsel until just prior to date set for trial is not ground for a continuance, nor is withdrawal or discharge of counsel under the same circumstances. | Is the mere failure of a litigant to employ counsel until just prior to date set for trial is not ground for a continuance? | Pretrial Procedure - Memo # 3367 - C - SB.docx | ROSS-003316682-ROSS-003316683 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 5989 | Culp v. Hawkins, 711 S.W.2d 726 | 307A+483 | Appellant's failure to timely answer the requests for admissions, to timely file written objections, or to timely file a motion to file late answers resulted in each request for admission being deemed admitted pursuant to TEX.R.CIV.P. 169. Laycox v. Jaroma, 709 S.W.2d 2 (Tex.App."Corpus Christi, 1986, no writ); Cantu-Johnston Pools, Inc. v. Solis, 705 S.W.2d 299 (Tex.App."San Antonio, 1986, no writ). There is no longer a necessity to obtain an order deeming requests admitted. Under Rule 169, the requests for admissions are automatically deemed admitted after thirty days. The trial court had no discretion to exercise. Point of error number one is overruled. | Under Civil Rule 169, requests for admissions are automatically deemed admitted after 30 days; trial court has no discretion to exercise. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Under Civil Rule 169, are requests for admissions are automatically deemed admitted after 30 days and a trial court has no discretion to exercise?" | 029997.docx | LEGALEASE-00136760-LEGALEASE-00136761 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 5990 | Larson v. Karagan, 979 N.E.2d 655 | 307A+486 | However, a party who made admissions by failing to respond may move to withdraw those admissions pursuant to T.R. 36(B). Id. The trial court may grant a motion to withdraw admissions if it determines: (1) withdrawal or amendment will subserve the presentation of the merits, and (2) prejudice in maintaining the action or defense will not result to the party that obtained the admission. Id. The party seeking withdrawal has the burden of demonstrating the presentation of the merits will be subserved by withdrawal, and the party who obtained the admissions has the burden of demonstrating it will be prejudiced if the trial court permits withdrawal. Id.; T.R. 36(B). Even if both of these conditions are satisfied, the rule does not compel the trial court to grant a request to withdraw admissions; rather, the court may, in its discretion, permit withdrawal. Peters, 709 N.E.2d at 54"55. We will reverse the grant or denial of a motion to withdraw admissions only for an abuse of discretion. Id. at 55. | Trial court is not compelled to grant a request to withdraw admissions, even if trial court determines that withdrawal or amendment of admissions with subserve the presentation of the merits and that prejudice in maintaining the action or defense will not result to party that obtained the admission; rather, the court may, in its discretion, permit withdrawal. Trial Procedure Rule 36(B). | Does a trial court have discretion to permit a party to withdraw admissions? | 030226.docx | LEGALEASE-00136367-LEGALEASE-00136368 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 5991 | Ray v. Ray, 542 S.W.2d 209 | 307A+723.1 | To some extent the foregoing principles were brought forward in Rule 252 of the Texas Rules of Civil Procedure, especially insofar as the requisites of the affidavit accompanying a motion for continuance is concerned. The foregoing rule has been interpreted to require that the applicant for a continuance recite Inter alia that he has used due diligence, stating such diligence and the cause of failure, if known. Wilemon v. State,385 S.W.2d 573, 579 (Tex.Civ.App."Dallas 1964, rev'd on other grounds 393 S.W.2d 816 (Tex.1965). Furthermore, a statement in the affidavit of the mere conclusion that diligence was used is insufficient to satisfy Rule 252. Echols v. Brewer, 524 S.W.2d 731, 734 (Tex.Civ.App."Houston (14th Dist.) 1975, no writ); American Bankers Insurance Company v. Fish, 412 S.W.2d 723 (Tex.Civ.App."Amarillo 1967, no writ). | An applicant for a continuance must recite, inter alia, that he has used due diligence, stating such diligence and the cause of failure, if known. Rules of Civil Procedure, rules 251, 252. | "Should an applicant for a continuance recite, inter alia, that he has used due diligence, stating such diligence and the cause of failure, if known?" | 030292.docx | LEGALEASE-00136829-LEGALEASE-00136831 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5992 | J. C. Penney Co. v. Duran, 479 S.W.2d 374 | 307A+724 | Defendants' motion for continuance, while stating the materiality of the testimony, nowhere states that they have used due diligence to procure such testimony, nor does it set forth any diligence used. Where the motion for continuance does not allege facts showing diligence in attempting to procure testimony of an absent witness, the denial of such motion is proper. Wilemon v. State, 385 S.W.2d 573 (Tex.Civ.App."Dallas 1965, reversed on other ground, 393 S.W.2d 816, Tex.1965); Garcia v. Canales, 434 S.W.2d 895 (Tex.Civ.App."Corpus Christi 1968, no writ); Lopez v. Columbus Quarter Horse Ass'n, 409 S.W.2d 478 (Tex.Civ.App."Houston 1966, writ ref'd n.r.e.). | Where continuance motion does not allege facts showing diligence in attempting to procure testimony of an absent witness, the denial of such motion is proper. Rules of Civil Procedure, rule 252. | "Where a motion for continuance does not allege facts showing diligence in attempting to secure testimony of an absent witness, is denial of the motion proper?" | Pretrial Procedure - Memo # 4040 - C - SS.docx | ROSS-003304093-ROSS-003304094 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 5993 | Mathias v. Luke, 37 N.J. Super. 241 | 307A+749.1 | In view of the qualified reference in the pretrial order to the binding effect of the answers to interrogatories, "as of the date of said answers', the statement of the parents' demand in the complaint and the recited instructions to the jury, made without objection, we think the interests of substantial justice do not call for total disallowance of the parents' claim in the respect here under consideration. Cf. Lertch v. McLean, 18 N.J. 68, 112 A.2d 735 (1955). A court should not be astute to read a pretrial order as precluding what appears to be a just recovery where its language does not clearly require that result. We do not see how defendants' defense of the claim in this respect could have been materially aided by specification of the unliquidated item in the answer to the interrogatories. | A court should not be astute to read a pretrial order as precluding what appears to be just recovery by plaintiffs, where language of order does not clearly require such result. | "Should a court be astute to read a pretrial order as precluding what appears to be just recovery by plaintiffs, where language of order does not clearly require such result?" | Pretrial Procedure - Memo # 4088 - C - NS.docx | ROSS-003316946-ROSS-003316947 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 5994 | Stone v. Lenox Enterprises, 176 Ga. App. 696 | 307A+483 | It is established as a matter of law that under OCGA " 9"11"36 "[i]f a party served with a request for admission does not serve an answer or objection and does not move for an extension of time or to withdraw the admissions resulting from a failure to answer, the matter stands admitted. [Cits.]" Albitus v. Farmers etc. Bank, 159 Ga.App. 406, 407(1), 283 S.E.2d 632 (1981). Thus, the requests for admissions propounded by the defendants are properly deemed conclusively admitted by Stone as a matter of law unless appellant's responses to the defendants' interrogatories compels a contrary result. Id. By not responding on time, appellant admitted that the service station at which he was employed by Lenox Enterprises, Inc., had a safe with money stored in it; that in his employment he had access to the safe; that he had previously admitted to Lynwood Sumner that he had taken money from Lenox Enterprises, Inc., at the station in Cook County, Georgia, without permission; that he took over $200 from Lenox Enterprises, Inc., at the station without permission and had not repaid any of it; that he was indicted in February 1980; and that all transactions between himself and Lynwood Sumner were conducted while the latter was an employee of Lenox Enterprises, Inc., and in the context of that employment. | Employee's failure to answer or object to coemployee's and employer's requests for admissions and failure to move for extension of time or to withdraw admissions resulted in admissions being conclusively admitted by employee as a matter of law, in malicious prosecution action brought by employee, unless employee's responses to interrogatories compelled contrary result. O.C.G.A. SS 9-11-36, 9-11-36(a)(2). | "If a party served with a request for admission does not serve an answer or objection and does not move for an extension of time or to withdraw admissions resulting from failure to answer, does the matter stand admitted?" | 030452.docx | LEGALEASE-00136349-LEGALEASE-00136350 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5995 | Gorie v. Gorie, 48 Misc. 2d 411 | 307A+69.1 | CPLR 3108, however, provides that a commission "may be issued where necessary or convenient" so that the commission procedure is still permitted but, presumably, to be employed only where the notice 22 procedure under the circumstances of the case or the place where the deposition is to be taken may be deemed impracticable or some doubt felt as to whether the deposition may be taken.This two-fold aspect of a deposition upon written questions appears clearly from the provision in CPLR 3113(a) last sentence that "[o]fficers may be designated in notices or commissions either by name or descriptive title."The question raised as to the failure to set forth the time of the taking of the deposition is taken care of by the officer who, upon receipt of the papers, will arrange for the time and 415 place and for notification to the parties who may, if they wish, attend through representatives to observe compliance with all requirements. | Commission procedure is permitted with respect to taking of deposition, but presumably is to be employed only where notice procedure under circumstances of case or place where deposition is to be taken may be deemed impracticable or some doubt felt as to whether deposition may be taken. CPLR Rules 3108, 3113(a). | When is commission procedure permitted with respect to taking of deposition? | 030792.docx | LEGALEASE-00136523-LEGALEASE-00136524 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 5996 | Fanning v. Iversen, 535 N.W.2d 770 | 307A+721 | The grant or denial of a motion for continuance of a trial is within the sound discretion of the trial court. Wasserburger v. Consolidated Management, 502 N.W.2d 256, 263 (S.D.1993). "A continuance may properly be denied when the party had ample time for preparation or the request for a continuance was not made until the last minute." Mid"Western Elec. v. DeWild Grant Reckert, 500 N.W.2d 250 (S.D.1993). Reviewing the record, Iverson could not present any reason whatsoever as to why this evidence was relevant to the case. She had ample time to prepare, yet requested the continuance on the day of trial. Iversen was not prejudiced by the court's denial of this continuance. Adoption of C.T.E., 485 N.W.2d 591, 594 (S.D.1992). The trial court did not abuse its discretion in denying the motion. | Trial court may properly deny continuance when party requesting continuance has had ample time for preparation or where request for continuance is not made until last minute. | Can a trial court properly deny continuance when a party requesting continuance has had ample time for preparation or where request for continuance is not made until the last minute? | 030805.docx | LEGALEASE-00136724-LEGALEASE-00136725 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 5997 | Raven v. Panama Canal Co., 583 F.2d 169 | 92+3072 | Plaintiff also argues that the Equal Protection Clause of the United States Constitution requires extension of all Privacy Act rights to Panamanian employees of the Canal Zone Government. We cannot accept the plaintiff's argument. The United States Supreme Court has recognized that Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the Equal Protection clause. A legitimate distinction exists between citizens and aliens to warrant different treatment. Mathews v. Diaz, 426 U.S. 67, 78-79, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). | Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the equal protection clause. U.S.C.A.Const. Amend. 14. | Can an Act of Congress treat aliens differently than citizens without such treatment being considered invidious? | Aliens_Immigration and Citizenship_Memo 13 - GP.docx | ROSS-003316026-ROSS-003316027 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 5998 | Warren v. Iowa State Highway Comm'n, 250 Iowa 473 | 200+75.1 | It is settled in Iowa that public highways are created by statute, either directly or through power delegated to some subdivision of the state, that they may be discontinued in the same way, and no individual can acquire such vested rights against the state as will prevent the discontinuance of an established public road. Chrisman v. Brandes, 137 Iowa 433, 440, 112 N.W. 833, 835. Two methods may be used by the state to prevent access to a controlled-access facility: police power, or eminent domain. In Iowa, it is evident the state is proceeding *478 through exercise of its police power. Section 306A.1, as enacted by the Fifty-Sixth General Assemby and as it now appears in the Code of 1958, I.C.A., says: "Declaration of policy. The legislature hereby finds, determines, and declares that this chapter is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare." Generally, a taking through exercise of the police power is non-compensable; through eminent domain it is compensable. The state has clearly declared here its intention to proceed through its police powers. This is not a complete answer to plaintiff's contention, however; the exercise of the police power must be a proper and reasonable one, and must not amount to a taking of property without due process of law. We shall consider this matter further in connection with Division II. | Public highways are created by statute, either directly or through power delegated to same subdivision of the state, and they may be discontinued in the same way, and no individual can acquire such vested rights against the state as will prevent the discontinuance of an established public road. | Can an individual acquire a vested right of a highway? | Highways-Memo 70-ANM.docx | ROSS-003290616-ROSS-003290617 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 5999 | Cortez v. Brokaw, 632 P.2d 635 | 307A+483 | Hence, by this rule, a matter admitted by a failure timely to respond is conclusively established. And, contrary to the ruling of the trial court, admitted matters can constitute an adequate showing for summary judgment without the necessity of producing further supportive evidence. See Cox v. Pearl Investment Co., 168 Colo. 67, 450 P.2d 60 (1969). | Party who fails to timely respond to another party's request for admissions may not submit contradictory evidence, as a matter admitted by a failure timely to respond is conclusively established. Rules of Civil Procedure, Rule 36(a, b). | "May a party who fails to timely respond to another party's request for admissions submit contradictory evidence, as a matter admitted by a failure timely to respond is conclusively established?" | 030492.docx | LEGALEASE-00137122-LEGALEASE-00137123 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6000 | Aldridge v. Hasty, 240 N.C. 353 | 307A+125 | After the "examining party" and "the person to be examined" have both filed their pleadings, "an examination is a matter of right, and may be had as provided by G.S. 1-568.11." The examining party must apply to the clerk or judge for an order for the examination and his "application must be in the form of, or supported by, an affidavit showing: (1) That the action has been commenced; (2) That the applicant has filed complaint, petition or answer; (3) That the applicant desires to examine a designated person who has filed a petition, complaint or answer or on whose behalf a petition, complaint or answer has been filed; (4) That the examination should be held at a place designated in the affidavit, together with facts showing the reasons therefor." G.S. s 1-568.11. | The statutory provision that application by party to action for examination of adverse party after filing of their pleadings must be in form of or supported by affidavit showing that examination should be held at place designated therein, together with facts showing reasons therefor, requires allegation of reasons for naming place designated in petition for hearing, not reasons why applicant desires examination or information he seeks to obtain. G.S. S 1-568.11(b) (4). | "After examining the party and the person to be examined have both filed their pleadings, is examination a matter of right?" | Pretrial Procedure - Memo # 4482 - C - SS.docx | ROSS-003291052-ROSS-003291053 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 6001 | Firmes v. Chase Manhattan Auto. Fin. Corp., 50 A.D.3d 18 | 307A+36.1 | Pretrial discovery is available so defendants can acquire information and documents that may later be used to support a motion for a collateral source hearing (see Scalone v. Phelps Mem. Hosp. Ctr., 184 A.D.2d 65, 75, 591 N.Y.S.2d 419; Fleming v. Bernauer, 138 Misc.2d 267, 269, 524 N.Y.S.2d 143). The most common discovery mechanism, of course, is the demand for collateral source information (see Jacobs v. Levy, 154 A.D.2d 654, 547 N.Y.S.2d 248), served by many defense practitioners with their clients' answers. Noncompliance with a CPLR 4545 demand subjects recalcitrant plaintiffs to the enforcement remedies of CPLR 3124 and 3126. Moreover, plaintiffs are under a continuing obligation to promptly amend or supplement a collateral source response if an initial response is incorrect or incomplete, or if correct and complete when initially made, circumstances are such that the failure to amend or supplement would render the initial response misleading (see CPLR 3101[h]; Dehaney v. New York City Tr. Auth., 180 Misc.2d 695, 698"699, 694 N.Y.S.2d 831). | Pretrial discovery, including demand for collateral source information, may be used to acquire information and documents that may later support a motion for a collateral source hearing. McKinney's CPLR 4545. | Can pretrial discovery be used to acquire information and documents that can later support a motion for a collateral source hearing? | Pretrial Procedure - Memo # 4604 - C - KG.docx | ROSS-003291084-ROSS-003291085 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 6002 | Our Lady of the Lake Hosp. v. Vanner, 692 So. 2d 40 | 307A+711 | The trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance. Some factors to consider are diligence, good faith and reasonable grounds. Sparacello v. Andrews, 501 So.2d 269 (La.App. 1 Cir. 1986), writ denied, 502 So.2d 103 (La.1987); Katz v. Melancon, 467 So.2d 1284 (La.App. 4 Cir.1985). Equally important is the exceptor's corollary right to have his case heard as soon as is practicable. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3 Cir.1975), writ denied, 329 So.2d 458 (La.1976). The trial judge may also weigh the condition of the court docket, fairness to both parties and other litigants before the court, and the need for orderly and prompt administration of justice. Keyes v. Johnson, 542 So.2d 209 (La.App. 3 Cir.), writ denied, 546 So.2d 1215 (La.1989). | Trial court must consider particular facts in each case in deciding whether to grant or deny continuance, and some factors to consider are diligence, good faith, reasonable grounds, exceptor's corollary right to have his case heard as soon as is practicable, condition of the court docket, fairness to both parties and other litigants before court, and need for orderly and prompt administration of justice. | What should a judge consider in ruling on a partys motion for continuance? | 031288.docx | LEGALEASE-00137384-LEGALEASE-00137385 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 6003 | Friday v. Mutz, 483 So. 2d 1269 | 307A+720 | The right of a party to substantially amend pleadings during trial is a matter within the discretion of the presiding judge. La.C.C.P. Art. 1151; McCall v. United Bonding Insurance Co., 197 So.2d 400 (La.App. 4th Cir.1967). Generally, when an amendment presents a new claim or defense which takes the opposing party by surprise, a continuance must be allowed. The record shows that a year and a half elapsed between the filing of the original petition and the date of the trial in this case and that Mrs. Friday was represented by the same attorney throughout this period and that she was entitled to full discovery before trial. Under these circumstances, we find no abuse of discretion in the Trial Judge's refusal to grant Mrs. Friday leave to amend her petition during trial. | Generally, when amendment presents new claim or defense which takes opposing party by surprise, continuance must be allowed. LSA-C.C.P. art. 1151. | "When an amendment presents a new claim or defense which takes the opposing party by surprise, must a continuance be allowed?" | Pretrial Procedure - Memo # 4639 - C - NS.docx | ROSS-003318083-ROSS-003318085 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6004 | Rubenstein v. Metro. Life Ins. Co., 118 W. Va. 367 | 307A+720 | Point 1 is that the plaintiff's replication to the defendant's specification of defense should not have been filed on the second day of the trial, or, if filed, the defendant's motion for a continuance should have been granted. Under Code, 56-4-22, if, in action on an insurance policy, "the plaintiff intends to rely upon any matter in waiver, estoppel, or in confession and avoidance of any matter which may have been stated by the defendant [he] must file a statement in writing, specifying the matter on which he intends so to rely." This provision of the Code is mandatory. Duncan v. Federal Union Ins. Co., 113 W.Va. 71, 166 S.E. 813; Capehart v. Mutual Benefit, etc., Association, 111 W.Va. 317, 161 S.E. 609. Under our well-settled practice, the court, in its discretion, may permit the filing of a special replication during the course of the trial. Harvey v. Parkersburg Insurance Co., 37 W.Va. 272, 16 S.E. 580; 16 L.R.A.(N.S.) 1250, note; Levy v. Scottish Union, etc., Ins. Co., 58 W.Va. 546, 550, 52 S.E. 449; 47 L.R.A.(N.S.) 346, 442, note. With the filing of the replication, the court had the sound discretion to grant or refuse the defendant's motion for a continuance. Harvey v. Parkersburg Insurance Co., supra; Levy v. Scottish Union Ins. Co., supra. The granting of a continuance was not a matter of right, but only the exercise of the sound discretion of the court. The defendant knew what notice of claim it had received, and it knew of the correspondence which had passed between it and the plaintiff's attorney. Defendant did not state in what manner it had been taken by surprise, nor was any reason given why it could have not proceeded in the trial of the case. Under all the circumstances, we think that there is no reversible error in this action of the trial court in the filing of the replication and refusal of the motion for a continuance. | Court may, in its discretion, permit filing, during trial of action on insurance policy, of special replication setting up matter in waiver, estoppel or in confession and avoidance, and upon filing of such replication granting or refusal of insurer's motion for continuance rests within court's sound discretion. Code 1931, 56-4-22. | "Will the court, in its discretion, permit the filing of a special replication during the course of the trial and grant or refuse the defendant's motion for a continuance?" | 031384.docx | LEGALEASE-00137774-LEGALEASE-00137775 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6005 | Heiner v. Porter, 164 Or. App. 508 | 307A+483 | Plaintiffs next argue that defendant's failure to file her response to the requests with the trial court within a reasonable period after serving them on plaintiffs renders those responses ineffective. They point out that ORCP 9 C requires a party to file with the court, within a reasonable time, all papers that the rules require to be served on another party, except notices of deposition, requests for production, and answers and responses to those things. The question is what effect defendant's failure to comply with the rule has on her answers to the requests for admission, assuming that she properly served them. ORCP 45 provides that a request for admission is admitted "unless, within 30 days after service of the request, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney[.]" (Emphasis added.) Nothing in the rule provides that requests are deemed admitted if the party serves answers in accordance with the rule but then fails to file those answers within a reasonable time. Although the rules require both service and filing, it is only the failure to serve that expressly carries the consequence that plaintiffs seek. In most cases, only the failure to serve will affect the requesting party's substantial rights. | Although court rule governing requests for admission require both service and filing, it is only the failure to serve response that expressly results in request being admitted. Rules Civ.Proc., Rule 45. | "Although court rule governing requests for admission require both service and filing, is it only the failure to serve response that expressly results in request being admitted?" | 031402.docx | LEGALEASE-00137436-LEGALEASE-00137437 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 6006 | Pierce v. Nelson, 509 N.W.2d 471 | 307A+91 | An agreement reached between the Iowa State Bar Association and the Iowa Medical Society concerning such fees supports our reasoning. That document recites that a physician may expect reasonable compensation for testimony given as an expert or treating physician either by deposition or in court. It is reasonable that the compensation reflect the time away from medical practice.Principles of Cooperation for Attorneys and Physicians (Iowa Medical Society and Iowa State Bar Association (1993)).In other words, the fee should compensate the physician for the inconvenience of giving deposition testimony, yet it also must bear some rational relationship to time spent away from other professional duties. | Treating physician's deposition fee should compensate physician for inconvenience of giving deposition testimony, yet it also must bear some rational relationship to time spent away from other professional duties. Rules Civ.Proc., Rule 125(f). | Should a treating physician be compensated in the form of physician deposition fee bearing some reasonable relationship to a physician's customary hourly charge for patient care and consultation? | Pretrial Procedure - Memo # 4719 - C - MS.docx | ROSS-003291767-ROSS-003291768 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6007 | Peterson v. David, 69 Wash. 2d 566 | 307A+725 | Defendants base their primary attempt to show a denial of due process on "failure of the court on February 11 to allow the defendant Hughes a continuance in order to obtain an attorney." First, it should be noted that the court did not deny the continuance, but rather granted it conditionally, a procedure which is well established. Rule of Pleading, Practice and Procedure 40.04W; RCW 4.44.040. It seems pertinent to mention that even a denial of a motion for a continuance is reversible error only when there is a manifest abuse of discretion. Bennett v. Bennett, 63 Wash.2d 404, 387 P.2d 517 (1963). Furthermore, when the denial of a requested continuance would be improper, the imposition of conditions may still be within the trial court discretion. See Reser v. Labude, 103 Wash. 228, 173 P. 1093 (1918). In considering whether or not the trial court abused its discretion in the instant case by conditioning the continuance on the tender of payments, taxes, et cetera, which were due, we must not ignore the fact that the defendants were contesting forfeiture and had alleged in their answer the tender of such sums. It also appears that the next trial date would have been several months later, thus allowing the Hughes continued free occupancy of the house and farm land and continuing to deprive the plaintiffs of the use and enjoyment of their property. In light of all the circumstances, it seems that the condition imposed by the trial court was reasonable and well within its discretion. An alternative basis for our conclusion in regard to this issue rests on the fact that Hughes appeared in court on February 18 and stated that he had no objection to the entry of findings and conclusions on that day. Even assuming arguendo that Hughes had a right to a continuance on terms less harsh than those actually imposed, it seems that right was relinquished or waived on February 18. | When denial of requested continuance would be improper, imposition of conditions to granting of continuance may still be within trial court's discretion. Rules of Pleading, Practice and Procedure, rule 40.04W; RCWA 4.44.040. | "Is imposition of conditions to granting of continuance still within trial court discretion, when denial of requested continuance is improper?" | 031511.docx | LEGALEASE-00137221-LEGALEASE-00137222 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 6008 | Bowman v. Benouttas, 519 S.W.3d 586 | 307A+747.1 | A trial court has the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery. See Waters v. Coker, No. M2007-01867-COA-RM-CV, 2008 WL 4072104, at (Tenn. Ct. App. Aug. 28, 2008); Tenn. R. Civ. P. 16.01. In situations where a party fails to comply with a trial court's scheduling order, Tenn. R. Civ. P. 16.06 provides:If a party or party's attorney fails to obey a scheduling or pretrial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just .... In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. | A trial court has the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery. Tenn. R. Civ. P. 16.01. | "Does a court have the discretion to enter a scheduling order that, inter alia, limits the time to complete and respond to discovery?" | 031531.docx | LEGALEASE-00137278-LEGALEASE-00137279 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6009 | United Employers Cas. Co. v. McCloud, 146 S.W.2d 247 | 307A+725 | The application in question was in substantial compliance with the statute. It was properly verified and was not controverted by appellee, consequently the facts alleged therein must be accepted as true. The absent witness resided in the City of Houston, where the case was set for trial. He was a member of the partnership in whose favor said policy of insurance was issued and had promised appellant to be present during the trial of the case and had stated he would testify that on various occasions since the alleged injuries of appellee he had seen him walk normally and without limping and in such a manner as to indicate that he had no disability. This testimony was material, in that it strongly corroborates the testimony of appellant's two medical witnesses who testified on the trial that appellee's alleged injuries were simulated, and it is in direct conflict with the testimony of appellee and Dr. Ekman, both of whom testified that appellee was unable to walk without the aid of crutches. There can, we think, be no doubt but that the jury was entitled to have the benefit of this testimony and that the failure to procure it was prejudicial to appellant's case. | Where application for continuance was in substantial compliance with statute, was properly verified, and was not controverted, facts alleged therein must be accepted as true. Vernon's Ann.Civ.St. art. 2168. | "If application in question was in substantial compliance with the statute or rule and is properly verified and not controverted, is the facts alleged therein be accepted as true?" | Pretrial Procedure - Memo # 4818 - C - DHA.docx | ROSS-003291130-ROSS-003291131 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6010 | Noble v. Shawnee Gun Shop, 316 S.W.3d 364 | 307A+680 | Furthermore, a review of the record reveals that the trial court carefully considered each of the plaintiffs' discovery requests and attempted to address them in fairness to the parties. In considering a motion to dismiss due to lack of personal jurisdiction, the trial court considers only the facts relevant to jurisdiction; it does not consider the merits of the underlying action. Hollinger, 122 S.W.3d at 115. Thus, discovery is permissible only as to the jurisdictional issues during this phase of the action. See Rule 56.01. | In considering a motion to dismiss due to lack of personal jurisdiction, the trial court considers only the facts relevant to jurisdiction, and it does not consider the merits of the underlying action; thus, discovery is permissible only as to the jurisdictional issues during that phase of the action. V.A.M.R. 56.01. | "In considering a motion to dismiss due to lack of personal jurisdiction, does the trial court consider only the facts relevant to jurisdiction?" | 031967.docx | LEGALEASE-00138089-LEGALEASE-00138090 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 6011 | Hooks v. State, 660 N.E.2d 1076 | 129+110 | To sustain disorderly conduct conviction based on unreasonable noise, state must show that complained-of speech infringed upon right to peace and tranquility enjoyed by others | To sustain disorderly conduct conviction based on unreasonable noise, state must show that complained-of speech infringed upon right to peace and tranquility enjoyed by others. West's A.I.C. 35-45-1-3(2). | When do courts sustain disorderly conviction based on unreasonable noise? | Disorderly Conduct-Memo 39- PR.docx | ROSS-003290463-ROSS-003290464 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 6012 | Marble v. Parham, 3 Ariz. App. 585 | 302+360 | In testing a complaint against a motion to dismiss by reason of a claimed failure to state a claim for relief, the complaint is viewed in the light most favorable to the sustaining of the complaint and the allegations of the complaint must be taken as true for the purposes of the motion to dismiss. Pinkerton v. Pritchard, 71 Ariz. 117, 223 P.2d 933 (1950). | In testing complaint against motion to dismiss by reason of claimed failure to state a claim for relief, complaint is viewed in light most favorable to sustaining of complaint and allegations of complaint must be taken as true for purposes of motion to dismiss. | Should the allegations of the complaint be taken as true for the purposes of the motion to dismiss? | 023399.docx | LEGALEASE-00138584-LEGALEASE-00138585 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 6013 | Conaway v. McCrory Stores Corp., 82 Ga. App. 97 | 302+34(2) | ["It is an established rule of pleading that conclusions in conflict with the pleaded facts are to be disregarded (Flynt v. Southern Railway Co., 7 Ga.App. 313(1), 316 (66 S.E. 957), and general allegations that a person could not have avoided the consequences of another's negligence by the exercise of ordinary care after it was or should have been discovered must yield, on demurrer, to the particular facts shown where inferences from the facts are necessarily to be drawn contradictory of the conclusions. Wood v. Pynetree Paper Co., 29 Ga.App. 81 (114 S.E. 83(4)). * * * | General allegations that a person could not have avoided consequences of another's negligence by exercise of ordinary care, after it was and should have been discovered, must yield, on demurrer, to particular facts shown, where inferences from fact are necessarily to be drawn contradictory of conclusions. | Should conclusions in conflict with pleaded facts be disregarded? | 023401.docx | LEGALEASE-00138610-LEGALEASE-00138611 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 6014 | Paniagua v. Orange Cty. Fire Auth., 149 Cal. App. 4th 83 | 307A+517.1 | That dismissal had consequences. "A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. [Citations.] When [as in this case] an action is wilfully dismissed by the plaintiff against ... a sole defendant it is as though no action had ever been filed." (Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 761, 157 P.2d 868.) "[I]t is a well-settled proposition of law that where the plaintiff has filed a voluntary dismissal of an action ..., the court is without jurisdiction to act further [citations], and any subsequent orders of the court are simply void. [Citation.]" (Gherman v. Colburn (1971) 18 Cal.App.3d 1046, 1050, 96 Cal.Rptr. 424.) | Where the plaintiff has filed a voluntary dismissal of an action, the court is without jurisdiction to act further, and any subsequent orders of the court are simply void. | "Where the plaintiff has filed a voluntary dismissal of an action, is the court without jurisdiction to act further, and any subsequent orders of the court void?" | 028032.docx | LEGALEASE-00138986-LEGALEASE-00138987 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6015 | In re Celadon Trucking Servs., 281 S.W.3d 93 | 307A+91 | Generally, a party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence. See Tex.R.Civ.P. 192.3(a); Crown Central Petroleum Corp., 904 S.W.2d at 127. Parties are generally permitted to take the deposition of, "any person." Id. The person noticed for deposition, however, has the right to protection from, "undue burden, unnecessary expense, harassment or annoyance, or investigation of personal, constitutional, or property rights." See In re: El Paso Healthcare Sys., 969 S.W.2d at 72"3. | Parties are generally permitted to take the deposition of any person; however, the person noticed for deposition has the right to protection from, undue burden, unnecessary expense, harassment or annoyance, or investigation of personal, constitutional, or property rights. Vernon's Ann.Texas Rules Civ.Proc., Rule 192.3(a). | Are parties generally permitted to take the deposition of any person? | 030895.docx | LEGALEASE-00138846-LEGALEASE-00138847 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 6016 | Columbus Tr. Co. v. Upper Hudson Elec. & R. Co., 190 N.Y.S. 737 | 307A+123.1 | While, however, the defendants were in error in not applying to the court in the first instance in order that witnesses may be examined before trial under the Civil Practice Act, whose testimony could not thus be taken under the provisions of the Code, sections 105 and 111 of the Civil Practice Act are expressly made applicable to pending actions and proceedings, and permit the court to disregard the mistake in procedure and to order that the relief be granted to the same extent as if the application had been, in the first instance, properly made.Section 292 of the Civil Practice Act permits a party to take such testimony by deposition by obtaining an order of the court instead of proceeding by notice. Both parties are in court before me on this motion, and since I fail to see how the rights of the plaintiff can be prejudiced, I have concluded to disregard the mistake of procedure and to grant orders for the examination of the witnesses in question. I fail to see how it would be in the interest of justice and the expedition of the trial of this action for me to vacate the proceedings which have been instituted for these examinations and to require the defendants to come into court a second time for the purpose of obtaining only such relief as I seem to have the authority to grant in the pending motions. | Where parties to a pending action instituted proceedings for the examination of witnesses before trial by notice under Civil Practice Act, S 290, the court, on motion to vacate such proceedings, can disregard the mistake, and, since it has the parties before it, can enter an order under section 292 of that act for the examination of the witnesses if justice so requires and if they live more than 100 miles from the place of trial so that they are subject to examination under section 288 of that act. | Can a party to a pending action institute proceedings for the examination of witnesses before a trial by notice? | 030913.docx | LEGALEASE-00138928-LEGALEASE-00138929 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6017 | Del Vecchio v. Danielle Assocs., 94 A.D.3d 941 | 157+219.50 | CPLR 3101(a) requires full disclosure of all evidence material and necessary in the prosecution or defense of an action (see Giordano v. New Rochelle Mun. Hous. Auth., 84 A.D.3d 729, 730"731, 922 N.Y.S.2d 518; Kooper v. Kooper, 74 A.D.3d 6, 10, 901 N.Y.S.2d 312). "Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control" (Cleland v. 60"02 Woodside Corp., 221 A.D.2d 307, 308, 633 N.Y.S.2d 529; see Hughes v. Cold Spring Constr. Co., 26 A.D.3d 858, 859, 809 N.Y.S.2d 751; Niemann v. Luca, 214 A.D.2d 658, 625 N.Y.S.2d 267; Cacciolo v. Port Auth. of N.Y. & N.J., 186 A.D.2d 528, 530, 588 N.Y.S.2d 350; Klatz v. Armor El. Co., 93 A.D.2d 633, 637, 462 N.Y.S.2d 677). | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control. McKinney's CPLR 3101(a). | Is evidence of subsequent repairs and remedial measures not discoverable or admissible in a negligence case without an issue of maintenance or control? | Pretrial Procedure - Memo # 4831 - C - NS.docx | ROSS-003331242-ROSS-003331243 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 6018 | Hayes v. City of New York, 98 N.Y.S.2d 424 | 307A+74 | Motion is denied upon the condition that defendant sign and return the deposition before May 29, 1950, following the practice prescribed in Columbia v. Lee, et al., 239 App.Div. 849, 264 N.Y.S. 423. As is stated in Columbia v. Lee, et al., supra: "The proper practice to pursue is that indicated in Matter of Samuels, 2 Cir., 213 F. 447. Such a practice keeps the amount of friction and conflict at a minimum. Before the witness signs and subscribes his testimony, he may add to the foot thereof a statement that certain of his answers (indicating the answers to which he refers) are incorrect, giving the reason therefor-either that it is an incorrect transcript or that his present recollection of the facts is more accurate"and he may then state what his corrected answer is and give any other explanation he desires with respect to his prior answer. After adding such a statement, he must sign and subscribe his testimony. This will leave available to the trial court the original form of answer, which may then be compared with the second form of answer to determine which one may or should be credited. This will also make known before the trial whether there is any need to have the transcript authenticated as to its accuracy by the stenographer. This procedure gives to the plaintiff every practical benefit that would accrue to him by a literal following of the practice indicated in Van Son v. Herbst, 215 App.Div. 563, 214 N.Y.S. 272, which concerned a case where a witness was denied an opportunity to in any form make corrections to the transcript of his testimony when he was called upon to sign it." | Before a witness signs and subscribes his testimony he may add at the foot thereof a statement that certain of his answers are incorrect giving his reasons therefor and after adding such a statement he must sign and subscribe his testimony. | "Before a witness signs and subscribes his testimony, will he add at the foot thereof a statement that certain of his answers are incorrect?" | 031736.docx | LEGALEASE-00138186-LEGALEASE-00138187 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 6019 | Desson v. Trustees of Net Realty Holding Tr., 229 A.D.2d 512 | 307A+36.1 | Discovery of evidence of subsequent similar accidents, while material in cases where a defect is alleged in the design or creation of a product or structure, is irrelevant and inappropriate in cases such as this, where no inherent defect is alleged (see, Kolody v. Supermarkets General Corporation, 163 A.D.2d 276, 277, 557 N.Y.S.2d 145; Yoon v. F.W. Woolworth Co., 202 A.D.2d 575, 576, 609 N.Y.S.2d 260). Accordingly, the Supreme Court properly denied the branch of the plaintiff's motion which was to direct the defendant Estiminet Corp. to provide him with authorizations to obtain all personal injury claim files for the two-year period subsequent to the date of the accident. | Discovery of evidence of subsequent similar accidents, while material in cases where defect is alleged in design or creation of product or structure, is irrelevant and inappropriate in cases where no inherent defect is alleged. | Is the discovery of similar incidents or claims material in cases where the defect is alleged in design or creation of a product? | Pretrial Procedure - Memo # 4964 - C - VA.docx | ROSS-003291789-ROSS-003291790 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6020 | Gautier v. Gautier, 385 So. 2d 583 | 307A+726 | On appeal, the main issue presented is "Did the trial judge abuse his discretion by failing to grant a continuance as orally requested by defense counsel on the date of trial?" We conclude that the trial judge's denial of the motion was not an abuse of discretion. | Trial court did not abuse its discretion in failing to grant fourth continuance orally requested by defense counsel on the date of separation trial, where defense counsel simply informed the court that he had instructed his client, who had been subpoenaed, not to appear for trial if he was not in better condition than he had been on the previous day, and that, on the day before trial, upon interviewing his client, he had found him to be in an irrational state. | Would the court abuse its discretion in failing to grant fourth continuance orally requested by defense counsel on the date of separation trial? | Pretrial Procedure - Memo # 4971 - C - PC.docx | ROSS-003291254-ROSS-003291255 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 6021 | Rubenstein v. Schmuck, 129 A.D. 326 | 307A+725 | We are of opinion, therefore, that excepting in extreme cases, as indicated, it is better that the practice heretofore existing be adhered to, and that inquest be allowed to be taken where the court denies the motion to postpone, leaving the party making default to his remedy by motion at Special Term, where the whole matter may be disposed of by one motion, and there is greater authority and discretion in imposing terms. It is not for the party making the motion to postpone to dictate to the court the precise day and hour when his motion shall be heard and decided. His right to have an order entered does not accrue until the court has finally considered and denied his motion and decided to proceed with the trial or allow a dismissal or an inquest by default. If a motion be made before the cause is in a position to be moved for trial, the court may hold the motion and reserve decision until the cause is reached for trial, unless the rules of the court provide otherwise. An absent witness, for instance, if that should be the ground for postponement, might return before the cause would be reached for trial. When, however, the decision of the court on the motion becomes final, and the court, without intending to further consider the application, denies the motion without reserve, under circumstances indicating that it is reasonably probable that the cause will be tried or an inquest will be taken therein, then the party should have the benefit of the entry of an order from which he may appeal. | One moving to postpone cannot require his motion to be heard and decided on any particular day, and he is not entitled to have an order entered until the court has finally denied his motion and decided to proceed to trial, or allow a dismissal or inquest by default, and the court may withhold its decision on the motion until the cause is ready for trial, unless court rules provide to the contrary. | Can a party moving to postpone a trial require his motion to be heard and decided on any particular day? | 032038.docx | LEGALEASE-00138340-LEGALEASE-00138341 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6022 | Hodge v. Myers, 255 S.C. 542 | 307A+742.1 | This is the first time our court has been called upon to interpret Rule 43. The following, taken from 88 C.J.S. Trial s 17(2) (1955), is relevant to the powers of the pretrial judge and to the purposes of the pretrial conference: "The purposes of pretrial conferences are to expedite trials or shorten the actual period of trial, to narrow or simplify the issues, to eliminate the doing of useless things and to facilitate the attainment of justice between the parties. Pretrial conferences are designed to fprevent surprise and eliminate maneuvering; to encourage the settlement of cases in advance of the formal trial; to limit the issues for trial to those not disposed of by admissions or agreements of counsel; to avoid unnecessary proof of facts at the trial; to avoid the evil of submitting a complicated case to the jury in such a manner as to be incomprehensible to the jury; to compel the factual truth in the controversy short of invading the private, separate counsel of the parties; to amend the pleadings where necessary or to dispose of possible amendments of the pleadings; to obtain agreements concerning material evidence; to procure the presentation and identification of papers, documents, and exhibits of various kinds in advance of the formal trial; to determine the number of expert witnesses; and, in general, to do whatever may be reasonably necessary to facilitate and shorten the formal trial. | The purposes of pretrial conferences are to expedite trials or shorten the actual period of trial, to narrow or simplify the issue, to eliminate the doing of useless things, and to facilitate the attainment of justice between the parties. Circuit Court Rules, rule 43. | Are the purposes of pretrial conference to simplify issues and expedite trial proceedings? | 026353.docx | LEGALEASE-00139047-LEGALEASE-00139048 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6023 | Slowke v. Altermatt, 293 Mich. 360 | 307A+501 | Because there has been a material change in Court Rule No. 38 since our decision in Pear v. Graham, 258 Mich. 161, 241 N.W. 865, that case, which was at issue before plaintiff moved to discontinue, is not controlling. The rule as formerly worded is quoted in the opinion in the Pear case; and reference to the old rule discloses that the time within which a plaintiff might discontinue his suit was limited by the phrase "before answer filed". This limitation is not in the revised rule No. 38, 1939. The pertinent limitation in the present rule is that plaintiff may not discontinue "where a defendant shall have entered upon his defense in open court, unless with the consent of the defendant." The clear import of our former decisions is that a defendant has "entered upon his defense in open court by putting in his testimony upon the merits". Mintz v. Soule, 200 Mich. 9, 166 N.W. 491. But this case was clearly decided upon the Court's holding that after a plaintiff had introduced his proofs and rested, and the defendants before offering any testimony made a motion for a directed verdict, they did not by making such motion enter upon their defense. Both in the Mintz case and in Justice Wiest's opinion in Pear v. Graham, supra, the common law right of a plaintiff to dismiss or submit to a voluntary nonsuit is noted. The right still exists except as modified by statute or court rule. At the time plaintiff's motion was made in the instant case his right to a nonsuit was not curtailed by any existing statutory or rule provision. It follows that plaintiff's motion for nonsuit should have been granted. | A plaintiff's common law right to dismiss action or submit to voluntary nonsuit still exists, except as modified by statute or court rule. | Does the common law right to submit to a nonsuit still exist subject to limitations by statute and court rules?? | 032649.docx | LEGALEASE-00139315-LEGALEASE-00139316 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 6024 | Hoskin v. Resor, 324 F. Supp. 271 | 34+11(1) | In a series of cases involving World War I soldiers to whom notices to report for induction were sent, the courts have held that such a notice presumably is received and if the individual fails to report, he is thereby subjected to prosecution. A corresponding obligation is enforced insofar as the Government is concerned. If the soldier reports for service even though he does not serve as a solider by reason of hospitalization, he is still eligible for the usual veterans benefits, including veterans preference. Hurley v. Crawley, 60 App.D.C. 245, 247, 50 F.2d 1010 (1931). Even when there is some question as to the regularity of the commissioning of the officer, if the officer actually served, he is entitled to all the emoluments of office, including an Honorable Discharge, assuming the circumstances of his service do not preclude the issuance thereof. Information on the basis of which such a discharge is withheld must be revealed. Van Bourg v. Nitze, 128 U.S.App.D.C 301, 388 F.2d 557 (1967). Here, there is no suggestion of any impropriety in the service of these plaintiffs. Cf. Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321. | Even when there is some question as to regularity of commissioning of officers, if officer actually served, he is entitled to all emoluments of office, including an honorable discharge, assuming circumstances of his service did not preclude the issuance thereof. | Is an officer entitled to all the emoluments of an office even when there is some question as to the regularity of the commissioning of the officer? | Armed Services - Memo 215 - SB.docx | ROSS-003288498-ROSS-003288499 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6025 | State v. Books, 225 N.W.2d 322 | 63+3 | In 1967 the statute was amended by adding the italicized portion exempting state personnel from its ambit. The same legislature (The 62nd General Assembly) enacted a new Iowa Public Officials Act (Chapter 68B) to take effect the same time as the amendment to s 741.1. One section of that chapter, s 68B.5, relates to the acceptance of any gift by State officers and employees (with several exceptions not material here) if the value of the gratuity exceeds $25.00. Obviously, the enactment of Chapter 68B and the amendment to s 741.1, coinciding as they did in time, reflect a legislative intent to treat misconduct on the State level in Chapter 68B and misconduct on other governmental levels in Chapter 741. Parenthetically we mention the latter statute extends to private as well as public employees. See State v. Prybil, supra, 211 N.W.2d at 311. However, our consideration is limited to the latter in the case now before us. It is important to note that the two sections deal with Similar but not Indentical conduct. One (s 741.1) makes it a crime to accept any gift or gratuity given in connection with a business transaction. Section 68B.5 prohibits both the giving or acceptance of a gift having a value of more than $25.00 Under any circumstances with the two exceptions already noted as being unimportant to the present case. | Statute making it an offense for public officials and employees to accept any gift or gratuity in connection with a business transaction extends to private as well as public employees. I.C.A. S 741.1. | Does statute make it an offense for public officials and employees to accept any gift or gratuity in connection with a business transaction extends to private as well as public employees? | Bribery - Memo #686 - C-JL.docx | LEGALEASE-00029249-LEGALEASE-00029250 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6026 | Zinke v. Orskog, 422 S.W.3d 422 | 307A+517.1 | Zinke cites no authority to support this contention. In contrast, Missouri courts have uniformly concluded that the time for calculating the running of the savings statute commences upon the filing of a voluntary dismissal authorized by Rule 67.02(a). Kirby v. Gaub, 75 S.W.3d 916, 917 (Mo.App.S.D.2002) (citing State ex rel. Fisher v. McKenzie, 754 S.W.2d 557, 560 (Mo. banc 1988) and Garrison v. Jones, 557 S.W.2d 247, 249 (Mo. banc 1977)). "The calculation of the one-year time period under the savings statute commences when the voluntary dismissal or nonsuit is effective, i.e., on the date it is filed." Kirby, 75 S.W.3d at 918 (citing Fuller v. Lynch, 896 S.W.2d 764, 765"66 (Mo.App.W.D.1995)). Once a permitted voluntary dismissal is filed, there is nothing pending before the trial court on which it is permitted to act, though the court may enter administrative orders such as those with regard to the assessment of costs. Id. | Once a permitted voluntary dismissal is filed, there is nothing pending before the trial court on which it is permitted to act, though the court may enter administrative orders such as those with regard to the assessment of costs. V.A.M.S. S 516.230; V.A.M.R. 67.02. | Is there anything pending before the trial court on which it is permitted to act once a permitted voluntary dismissal is filed? | 028030.docx | LEGALEASE-00139524-LEGALEASE-00139525 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6027 | Reynolds v. Reynolds, 14 Cal. App. 2d 481 | 307A+69.1 | In the present case the defendant objected to the plaintiff taking his own deposition by written interrogatories, and sought to cross-examine him upon oral cross-examination. The deposition-interrogatory procedure outlined in " 38"2101 of the 1959 act clearly contemplates that such deposition, if admissible in evidence, would be admissible only "against any party who was present or represented at the taking of the deposition or who had due notice thereof," the purpose of notice being to afford the opposing party the opportunity to be present or be represented by counsel when the testimony is taken before the officer appointed by the court. In " 38"2105 (b) it is provided that after notice is served for the taking of a deposition by oral examination, the court in which the action is pending may order that the deposition not be taken, or that it be taken at some place other than that designated in the notice, or that it may be taken only on written interrogatories, "or that the examination shall be held with no one present except the parties to the action and their officers or counsel." (Italics ours.) It is clear from this provision, in connection with other provisions of the discovery mechanism of the adopted Federal Rules, that when a deposition is taken upon written interrogatories, the opposing party or his counsel have the right to be present. The exclusion of the defendant and her counsel from the taking of the deposition of the plaintiff on written interrogatories would void the procedure, if otherwise valid. This is true under the Federal discovery rules and the ruling in Smith v. Morrison-Knudsen Company, Inc., supra. | When a deposition is taken upon written interrogatories, opposing party or his counsel have right to be present, and exclusion of defendant and her counsel from taking of deposition of plaintiff on written interrogatories voided the procedure, even if it were otherwise valid. Code, S 38-2101. | Does the exclusion of defendant and counsel from taking of deposition of plaintiff on written interrogatories make the procedure void even if it were otherwise valid? | Pretrial Procedure - Memo # 3197 - C - SB.docx | ROSS-003331612-ROSS-003331613 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 6028 | Scarseth v. United States, 52 Fed. Cl. 458 | 34+5(3) | In the instant case, the record indicates that the Deputy Assistant Secretary of the Army, John Matthews, exercised his discretion to deny plaintiff's April 21, 1994, request to withdraw his resignation. Moreover, the decision to accept or deny a resignation from the service rests solely within the discretion of the Secretary of the Army, and the exercise of that discretion will be sustained unless it is exercised in a manner which is arbitrary, capricious or not in accordance with law. Plaintiff's own resignation, dated February 25, 1994, indicated that it can be withdrawn only with the approval of Headquarters, Department of the Army. See Army Regulation 635"120, paragraph 2"4b and Figure 5"1, paragraph 4, dated June 1, 1989, as amended; Cole v. United States, 231 Ct.Cl. 702, 704, 689 F.2d 1040, 1041 (1982); see also Brown v. United States, 30 Fed.Cl. at 230 ("Plaintiff fails to recognize, however, that his request for a withdrawal has no effect on his prior resignation. First, the decision to deny or accept a withdrawal of resignation from service rests solely within the discretion of the Army.") The Secretary of the Army's decision to deny plaintiff's request to withdraw the resignation at issue in Brown did not render it involuntary, because the decision of the Army "must be granted substantial deference." Brown v. United States, 30 Fed.Cl. at 231. Similar to the plaintiff in Brown v. United States, plaintiff resigned in lieu of facing court-martial, and it was within the Army's discretion to decide whether to allow plaintiff to withdraw his resignation. See id. at 231. See also Orloff v. Willoughby, for a discussion of deference to the military in military personnel matters. Orloff v. Willoughby, 345 U.S. at 90, 73 S.Ct. 534. | The decision to accept or deny a resignation from the service rests solely within the discretion of the Secretary of the Army, and the exercise of that discretion will be sustained unless it is exercised in a manner which is arbitrary, capricious or not in accordance with law. | Can the Secretary of the Army exercise discretion to accept a resignation or not? | 008554.docx | LEGALEASE-00139981-LEGALEASE-00139982 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6029 | Hughes v. Black, 39 So. 984 | 83E+814 | A blank indorsement vests the title to the note in the holder, and if a note, after having been indorsed, gets back into the possession of the payee, the law converts his possession into a prima facie legal title, upon which suit may be predicated, and the burden of proof is on the defendant to show want of title in the plaintiff. Berney v. Steiner Brothers, 108 Ala. 111, 19 South. 806, 54 Am. St. Rep. 144; Beeson v. Lippman & Brothers, 52 Ala. 276; 2 Randolph on Commercial Paper, " 708; 3 Randolph on Commercial Paper, " 1645.2. | While a blank indorsement of a note vests title to the note in the holder thereof, yet if the note, after having been indorsed, gets back into the possession of the payee or the indorser, his possession shows a prima facie legal title to the note upon which suit may be predicated, and the burden is on defendant in such suit to show plaintiff's actual want of title. | Whether a blank indorsement is sufficient to pass title? | 010292.docx | LEGALEASE-00139867-LEGALEASE-00139868 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 6030 | Seaboard Air Line Ry. v. Rentz, 60 Fla. 429 | 30+3273 | A ruling on a motion for compulsory amendment of a pleading, under Rev.St.1892, " 1043, F.S.A. " 50.21, being within the sound discretion of the trial court, will not be disturbed on appeal, unless the judicial discretion has been plainly abused. | A ruling on a motion for compulsory amendment of a pleading, under Rev.St.1892, S 1043, F.S.A. S 50.21, being within the sound discretion of the trial court, will not be disturbed on appeal, unless the judicial discretion has been plainly abused. | Can a motion for compulsory amendment of a plea addressed by the court be disturbed? | 010468.docx | LEGALEASE-00140378-LEGALEASE-00140379 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6031 | Bergerman v. Murphy, 199 Misc. 1008 | 268+871 | It is probably unnecessary to add that, in determining the nature of the allowance authorized by subd. 5 the distinction between a "gift" and a "pension" should not be lost sight of. A "gift" is a voluntary transfer of money or property by one to another without any consideration or compensation therefor, Pennsylvania Whiskey Distributing Corp. v. Bruckman, 256 App.Div. 781, 783, 11 N.Y.S.2d 718, 720, affirmed 282 N.Y. 665, 26 N.E.2d 804; while a "pension" is a period allowance made by a government to an individual or to those who represent him on account of past services or some meritorious work done by him. Matter of McCoromick's Estate, 169 Misc. 672, 675, 8 N.Y.S.2d 179, 183; Matter of Roche, 141 App.Div. 872, 875, 126 N.Y.S. 766, 768, affirmed 203 N.Y. 610, 96 N.E. 1128; Hoyt v. County of Broome, 285 N.Y. 402, 406"407, 34 N.E.2d 481, 482, 483, 134 A.L.R. 916. | A "gift" within meaning of constitutional provision prohibiting a municipality from making a "gift" of public funds to or in aid of any individual, is a voluntary transfer of money or property without any consideration or compensation therefor, while a "pension" which is not in violation of the constitutional provision, is a period allowance made by a government to an individual or to those who represent him on account of past services or some meritorious work done by him. Const. art. 8, S 10. | Is pension a periodic allowance? | 022815.docx | LEGALEASE-00140439-LEGALEASE-00140440 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 6032 | Vaughn v. Metro. Prop. & Cas. Ins. Co., 260 Ga. App. 573 | 307A+481 | Requests for admissions under OCGA " 9-11-36 are comparable to admissions in pleadings or stipulations of fact, and courts regard them generally as judicial admissions rather than evidentiary admissions of parties. Thus, unless the court allows the answers to be withdrawn, answers to requests for admissions are conclusive and not subject to contradiction or explanation. Wurlitzer Co. v. Watson, 207 Ga.App. 161, 164 165(2), 427 S.E.2d 555 (1993). Consequently,any matter admitted under OCGA " 9-11-36 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. In determining this issue, we must recognize that the intended purpose of the Code section is the facilitation of proof at trial. In form and substance an admission under OCGA " 9-11-36 is comparable to an admission in pleadings or stipulation of facts and as such is generally regarded as a judicial admission rather than evidentiary admission of a party. A judicial admission, unless allowed to be withdrawn by the court, is conclusive whereas an evidentiary admission is not conclusive but is always subject to be contradicted or explained. Past decisions of this court have recognized the binding effects of admissions under OCGA " 9-11-36. In ETI Corp. v. Hammett, 140 Ga.App. 618, 231 S.E.2d 545 (1976) it was held that evidence was not admissible to controvert matters deemed to have been admitted by failure to answer requests for admission even though the substance of the matter deemed admitted had been denied in the answer to the complaint. | Any matter admitted in request for admission is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. West's Ga.Code Ann. S 9-11-36. | "Does any matter admitted in request for admission conclusively establish unless the court, on motion, permits withdrawal or amendment of the admission?" | 029135.docx | LEGALEASE-00139745-LEGALEASE-00139747 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6033 | Fungaroli v. Fungaroli, 252 S.E.2d 849 | 307A+725 | Motions for continuance are addressed to the sound discretion of the trial court. They are not favored, and the party seeking a continuance bears the burden of showing sufficient grounds. N.C.Gen.Stat. 1A-1, Rule 40(b); Shankle v. Shankle, 289 N.C. 473, 223 S.E.2d 380 (1976). Attorney Morrow made a statement in argument of his motion to continue, but failed to offer any evidence in support of his motion. The trial court had before it the evidence set out above. The chief consideration to be weighed in passing upon the motion to continue is whether the grant or denial will be in furtherance of substantial justice. Id. Plaintiff contends he was prejudiced by the denial of the continuance. Although he made an exception to the entry of the order of 7 March 1978 holding plaintiff in contempt, plaintiff does not attempt to argue any error in his brief with respect to that order. Plaintiff thereby abandoned the exception to the order. Rule 28(a), North Carolina Rules of Appellate Procedure; State v. Wilson, 289 N.C. 531, 223 S.E.2d 311 (1976). We hold the court properly denied plaintiff's motion to continue. | Chief consideration to be weighed in passing upon motion to continue is whether grant or denial will be in furtherance of substantial justice. | Is the chief consideration to be weighed in passing a motion to continue the question whether a grant or denial is in furtherance of substantial justice? | 031334.docx | LEGALEASE-00140658-LEGALEASE-00140659 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6034 | Wait v. Brewster, 31 Vt. 516 | 307A+74 | A party who has taken a deposition, which the law does not require to be filed in court, is not obliged to produce it, at the request of the other party, on trial, notwithstanding the opposite party appeared when it was taken, and cross-examined the deponent, and though it has been filed with the clerk of the court by the party taking it. | A party who has taken a deposition, which the law does not require to be filed in court, is not obliged to produce it at the request of the other party, on trial, notwithstanding the opposite party appeared when it was taken, and cross-examined the deponent, and though it has been filed with the clerk of the court by the party taking it. | "Is a party who has taken a deposition, not obliged to produce it at the request of the other party?" | 032297.docx | LEGALEASE-00139771-LEGALEASE-00139772 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 6035 | City of Sullivan v. Cent. Illinois Pub. Serv. Co, 215 Ill. App. 606 | 30+569(2) | Evidence purported to be taken before master in chancery to whom suit for injunction was referred, and evidence purported to have been heard by court, would be stricken from record, where portion of record containing evidence taken before master was not signed by master, and there was no certificate by him that such evidence was all the evidence heard by him, and there was no certificate preserving evidence heard by court or stating that such evidence was all the evidence heard by the court. This alleged report of the evidence commencing on page 106 of the record is not preceded by any order in the record identifying it as a report of the master in chancery filed in said cause on a particular day. As stated before, it is not signed by the master in chancery, and there is no authorized certification that it contains all the evidence heard by the master. In regard to the evidence heard before the court on pages 689 to 695, inclusive, there is no certification by anybody of any kind. The motion by appellee to strike from the record pages 106 to 688 1/2, inclusive, and pages 690 to 696, inclusive, is sustained and said pages are hereby stricken from the record. | Evidence purported to be taken before master in chancery to whom suit for injunction was referred, and evidence purported to have been heard by court, would be stricken from record, where portion of record containing evidence taken before master was not signed by master, and there was no certificate by him that such evidence was all the evidence heard by him, and there was no certificate preserving evidence heard by court or stating that such evidence was all the evidence heard by the court. | "Should a deposition taken before a master in chancery, and reported by him, but not signed by the witness, upon motion be stricken from the record?" | 032302.docx | LEGALEASE-00139825-LEGALEASE-00139826 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 6036 | Inhabitants of Brighton v. Walker, 35 Me. 132 | 307A+74 | The R. S. c. 133, " 15, requires, that a deponent before giving his deposition, shall be sworn to "testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken." In this respect the deponent is treated in the same manner, and required to take substantially the same oath, as a witness upon the stand. | A deponent, before giving his deposition, must be sworn "to testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken"; and where a caption recites that "the deponent was first sworn, according to law, to the aforesaid deposition by him subscribed," the deposition will be rejected. | "Must a deponent, before giving his deposition, be sworn ""to testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken""?" | 032356.docx | LEGALEASE-00140139-LEGALEASE-00140140 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6037 | Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428 | 170B+2077 | Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. For purposes of efficiency and fairness, our legal system is replete with rules requiring that certain matters be raised at particular times. See Sanchez"Llamas, supra, at 356"357, 126 S.Ct. 2669. Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. Arbaugh, 546 U.S., at 508, 126 S.Ct. 1235. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. Ibid. And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted. | Objections to subject-matter jurisdiction may be raised at any time; thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction, and indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. | "Can a party, after losing at trial, move to dismiss the case because the trial court lacked subject-matter jurisdiction?" | Pretrial Procedure - Memo # 5622 - C - CK.docx | ROSS-003328484-ROSS-003328485 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6038 | Tucker v. Fayetteville State Univ., 238 N.C. App. 188 | 307A+554 | "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. An appellate court's review of such a dismissal is de novo." Johnson v. Univ. of N.C., 202 N.C.App. 355, 357, 688 S.E.2d 546, 548 (2010) (citations and quotations omitted). | Action is properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. Rules Civ.Proc., Rule 12(b)(1), West's N.C.G.S.A. S 1A-1. | Is action properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies? | 032818.docx | LEGALEASE-00139813-LEGALEASE-00139814 | Order, SA, Sub | 0.42 | 1 | 0 | 1 | 1 | 1 |
| 6039 | Sprague v. Cortes, 223 F. Supp. 3d 248 | 170B+2073 | A motion to dismiss for lack of subject-matter jurisdiction is properly made under Federal Rule of Civil Procedure 12(b)(1). When a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court should first consider a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, "all other defenses and objections become moot." In re Corestates Trust Fee Litig., 837 F.Supp. 104, 105 (E.D. Pa. 1993), aff'd 39 F.3d 61 (3d Cir. 1994). | When a motion to dismiss is based on several grounds, a court should first consider a challenge based on subject matter jurisdiction because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot. Fed. R. Civ. P. 12(b)(1). | Is a motion to dismiss for lack of subject-matter jurisdiction made pursuant to rule of procedure governing defenses and objections? | Pretrial Procedure - Memo # 5636 - C - SS.docx | ROSS-003291338-ROSS-003291339 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 6040 | Reiter v. Cooper, 507 U.S. 258 | 15A+2105 | Second, respondents contend that the doctrine of primary jurisdiction requires petitioners initially to present their unreasonable-rate claims to the ICC, rather than to a court. That reflects a mistaken understanding of primary jurisdiction, which is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a "referral" to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.3 See Western Pacific, 352 U.S., at 63"64, 77 S.Ct., at 164"165; Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 291, 302, 93 S.Ct. 573, 574, 580, 34 L.Ed.2d 525 (1973); Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 65, 68, 91 S.Ct. 203, 206, 208, 27 L.Ed.2d 203 (1970). Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice. See Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 222"223, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966); Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 266"267, 33 S.Ct. 916, 924"925, 57 L.Ed. 1472 (1913); Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037, 1055 (1964). | Referral of issue to administrative agency under doctrine of primary jurisdiction does not deprive court of jurisdiction; it has discretion either to retain jurisdiction or, if parties would not be unfairly disadvantaged, to dismiss case without prejudice. | "If the court determines that the primary jurisdiction doctrine applies, may the court determine whether to stay the litigation or dismiss without prejudice?" | 033253.docx | LEGALEASE-00140660-LEGALEASE-00140661 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6041 | Harris v. Westin Mgmt. Co. E., 230 S.W.3d 1 | 307A+554 | As noted in James v. Poppa, 85 S.W.3d 8, 9 (Mo. banc 2002), a motion to dismiss for lack of subject matter jurisdiction is an appropriate means of raising the workers' compensation law, chapter 287,2 as a defense to a common law tort action. A court shall dismiss the action whenever it appears that the court lacks subject matter jurisdiction. As the term "appears" suggests, the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction. | A court shall dismiss an action whenever it appears that the court lacks subject matter jurisdiction, and the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction. | "Should a court dismiss an action whenever it appears that the court lacks subject matter jurisdiction, and the quantum of proof is not high?" | 033255.docx | LEGALEASE-00140664-LEGALEASE-00140665 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 6042 | Chief Seattle Properties v. Kitsap Cty., 86 Wash. 2d 7 | 371+2005 | Furthermore if the state tax imposed on an Indian or a nonIndian would substantially interfere with a discernible federal policy to aid the Indian, the tax would be invalid. Sohol v. Clark, 78 Wash.2d 813, 479 P.2d 925 (1971); Makah Indian Tribe v. Clallam County, 73 Wash.2d 677, 440 P.2d 442 (1968). The interference may not be treated as substantial if it is too remote to be legally sufficient to invalidate the tax. | State tax imposed on an Indian or a non-Indian would be invalid if it would substantially interfere with a discernible federal policy to aid the Indian; the interference may not be treated as substantial if it is too remote to be legally sufficient to invalidate the tax. | Would a state tax imposed on an Indian or a non-Indian be invalid if it would substantially interfere with a discernible federal policy to aid the Indian? | 045522.docx | LEGALEASE-00140429-LEGALEASE-00140430 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6043 | Schacht v. United States, 398 U.S. 58 | 34+40(1) | Our previous cases would seem to make it clear that 18 U.S.C. s 702, making it an offense to wear our military uniforms without authority is, standing alone, a valid statute on its face. See, e.g., United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). But the general prohibition of 18 U.S.C. s 702 cannot always stand alone in view of 10 U.S.C. s 772, which authorizes the wearing of military uniforms under certain conditions and circumstances including the circumstance of an actor portraying a member of the armed services in a "theatrical production." 10 U.S.C. s 772(f). The Government's argument in this case seems to imply that somehow what these amateur actors did in Houston should not be treated as a "theatrical production" within the meaning of s 772(f). We are unable to follow such a suggestion. Certainly theatrical productions need not always be performed in buildings or even on a defined area and as a conventional stage. Nor need they be performed by professional actors or be heavily financed or elaborately produced. Since time immemorial, outdoor theatrical performances, often performed by amateurs, have played an important part in the entertainment and the education of the people of the world. Here, the record shows without dispute the preparation and repeated presentation by amateur actors of a short play designed to create in the audience an understanding of and opposition to our participation in the Vietnam war. Supra, at 1557 and this page. It may be that the performances were crude and amateurish and perhaps unappealing, but the same thing can be said about many theatrical performances. We cannot believe that when Congress wrote out a special exception for theatrical productions it intended to protect only a narrow and limited category of professionally produced plays.3 Of course, we need not decide here all the questions concerning what is and what is not within the scope of s 772(f). We need only find, as we | Statute making it an offense to wear military uniforms of United States without authority is, standing alone, a valid statute on its face. 18 U.S.C.A. S 702. | "Is a statute making it an offense to wear military uniforms of the United States, without authority, a valid statute on its face?" | Armed Services - Memo 242 - TB.docx | ROSS-003317782-ROSS-003317783 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 6044 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Whether a payment is a bribe or an illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly," that is, with "corrupt intent." Under " 201 "corrupt intent" is the intent to receive a specific benefit in return for the payment. See Muldoon, 931 F.2d at 287; United States v. Duvall, 846 F.2d 966, 971 n. 6, 972 (5th Cir.1988); United States v. Irwin, 354 F.2d 192, 197 (2d Cir.1965). In other words, the payor of a bribe must intend to engage in " "some more or less specific quid pro quo" " with the official who receives the payment. | Payor of a bribe must intend to engage in some more or less specific quid pro quo with the official who receives the payment in order for payment to be bribe for purposes of statute prohibiting bribery of public officials and witnesses. 18 U.S.C.A. S 201(b)(1)(A). | What must the payor of a bribe do in order for payment to be considered a bribe for purposes of statute prohibiting bribery of public officials and witnesses? | 012128.docx | LEGALEASE-00142021-LEGALEASE-00142022 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 6045 | United States v. Copeland, 143 F.3d 1439 | 63+1(1) | The scope of " 666, however, is not limitless; the statute clearly indicates that only those contractual relationships constituting some form of "Federal assistance" fall within the scope of the statute. 18 U.S.C. " 666(b); see Rooney, 986 F.2d at 34 (stating that "[t]he statute expressly equates "benefits' with "Federal assistance.""). Thus, organizations engaged in purely commercial transactions with the federal government are not subject to " 666. See United States v. Stewart, 727 F.Supp. 1068, 1072"73 (N.D.Tex.1989) (holding that defense contractor was not an organization within the scope of " 666 because it was engaged in purely commercial transactions with the government); see also Marmolejo, 89 F.3d at 1190; Rooney, 986 F.2d at 34"35. | Only those contractual relationships constituting some form of federal assistance fall within scope of anti-bribery statute; thus, organizations engaged in purely commercial transactions with federal government are not subject to the statute. 18 U.S.C.A. S 666(b). | What type of relationships fall within the scope of the anti-bribery statute? | 012134.docx | LEGALEASE-00141933-LEGALEASE-00141934 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 6046 | United States v. Muhammad, 120 F.3d 688 | 63+1(1) | The federal bribery statute found at 18 U.S.C. " 201(b)(2)(A) provides that a public official1 commits bribery when he "corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally ... in return for ... being influenced in the performance of any official act." The language in the statute is disjunctive. In other words, a defendant violates " 201 by merely seeking or demanding a bribe, regardless of whether he accepts or even agrees to accept it. See, e.g., United States v. Gallo, 863 F.2d 185, 189 (2d Cir.1988) (holding that " 201(b) "makes attempted bribery a crime, and so long as a bribe is "offered or promised" with the requisite intent "to influence any official act" the crime is committed") (quoting United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970)); United States v. Arroyo, 581 F.2d 649, 654"55 (7th Cir.1978) (maintaining that bribe solicitation alone imposes criminal liability); see also United States v. LeDonne, 21 F.3d 1418, 1425 (7th Cir.1994) (analyzing disjunctive nature of clauses in bank fraud statute). | Defendant violates federal bribery statute by merely seeking or demanding bribe, regardless of whether he accepts or even agrees to accept it. 18 U.S.C.A. S 201(b)(2)(A). | Does a defendant violate the federal bribery statute by merely seeking or demanding a bribe even if he doesn't accept it? | 012144.docx | LEGALEASE-00141943-LEGALEASE-00141944 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6047 | R.R. Comm'n v. Graford Oil Corp., 557 S.W.2d 946 | 260+92.50 | Since we hold that a common reservoir consists of a common pool or a common accumulation of hydrocarbons, separate and distinct pools of oil or gas, which are not connected, and which do not communicate with one another, do not constitute a "common reservoir." Each separate pool or accumulation is, under the statute, a separate reservoir, even though several different reservoirs may underlie a single gas-producing area and an entire gas-producing area may often be loosely referred to as a "field." See Railroad Commission v. Rio Grande Valley Gas Co., 405 S.W.2d 304, 310 (Tex.1966). Consequently, the consolidation order in this cannot stand unless the consolidated area is found to be a common pool or common accumulation of hydrocarbons. | Separate and distinct pools of oil or gas which are not connected and do not communicate with one another do not constitute "common reservoir" within statute stating duty of Railroad Commission to regulate daily production; each separate pool or accumulation is separate reservoir even though several different reservoirs may underlie single gas-producing area and entire gas-producing area may be loosely referred to as "field." Vernon's Ann.Civ.St. art. 6008, SS 2, 10. | Do separate and distinct pools of oil or gas which are not connected and which do not communicate with one another constitute a common reservoir? | 021279.docx | LEGALEASE-00141234-LEGALEASE-00141235 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 6048 | Bacon v. Lloyd, 1882 WL 9056 | 307A+74 | " 284. Depositions. A motion to suppress depositions should be sustained, where the certificate of the officer taking them fails to show that the answers of the witness were subscribed and sworn to before him. [Rev. Stats. art. 2229; Chapman v. Allen, 15 Tex. 282; Patton v. King, 26 Tex. 685.]. | A motion to suppress depositions should be sustained where the certificate of the officer taking them fails to show that the answers of the witness were subscribed before him as required by Rev.St.1879, art. 2229, Rules of Civil Procedure, rule 196. | Should a motion to suppress depositions be sustained where the certificate of the officer taking them fails to show that the answers of the witness were subscribed to before him as required? | Pretrial Procedure - Memo # 5456 - C - SKG.docx | ROSS-003291323-ROSS-003291324 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6049 | Fredericks v. Davis, 3 Mont. 251 | 307A+74 | The certificate authenticating the official character of the justice of the peace, before whom the deposition was taken, was properly made under the laws of Arizona by a deputy recorder. The commission was issued to J. Logan, or any acting justice of the peace of Mohave county, Territory of Arizona, and the deposition was taken by R. R. Baker, a justice of the peace of said county, at the time and place named. The officer so taking the deposition had authority under the commission to take the same, and the objection that the deposition was not taken by J. Logan was properly overruled. | The certificate of a deputy county recorder to the official character of an acting justice taking a deposition must be tested by the laws of the state or territory where taken. | Must the certificate of a deputy county recorder to the official character of an acting justice taking a deposition be tested by the laws of the state or territory where taken? | 032588.docx | LEGALEASE-00141673-LEGALEASE-00141674 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6050 | Harris v. Leavitt, 16 Tex. 340 | 307A+76.1 | We therefore believe that but one question is raised by the record for our consideration: the refusal of the court to allow the plaintiffs to use in evidence the depositions taken by the defendant, on the ground that they had not been crossed by the plaintiffs. This is not now an open question. This court decided in the case of Norvell v. Oury (13 Tex. 31), under our statute (Hart. Dig. art. 731), "that where one party applies for a commission to take the deposition of a witness, by interrogatories, and the opposite party fails to file cross interrogatories, the party at whose instance the commission was issued may decline, on the trial, to read the deposition, and the opposite party will have no right to read it." On that adjudged case we affirm the judgment in this. | Where one party applies for a commission to take the deposition of a witness by interrogatories and the opposite party fails to file cross interrogatories, the party at whose instance the commission was issued may decline on the trial to read the deposition, and the opposite party will have no right to read it. | Is it no objection to the reading of a deposition that notice of its being filed in the clerk's office was not given to the opposite party? | 032624.docx | LEGALEASE-00141198-LEGALEASE-00141199 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 6051 | Berrier v. CareFusion 203, 231 N.C. App. 516 | 307A+685 | Quality Medical submitted a motion to dismiss plaintiffs' amended complaint for lack of personal jurisdiction. The motion was supported by an affidavit from Quality Medical manager Donald Perfetto and a memorandum of law contending that Quality Medical lacked sufficient minimum contacts with North Carolina for the trial court to exercise personal jurisdiction. If the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations in the complaint can no longer be taken as true or controlling and plaintiff cannot rest on the allegations of the complaint. In order to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence).Id. at 693"94, 611 S.E.2d at 182"83 | If the defendant supplements his motion to dismiss for lack of personal jurisdiction with an affidavit or other supporting evidence, the allegations in the complaint can no longer be taken as true or controlling, plaintiff cannot rest on those allegations, and trial court considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit which are uncontroverted because of the plaintiff's failure to offer evidence. Rules Civ.Proc., Rule 12(b)(2), West's N.C.G.S.A. S 1A-1. | "If the defendant submits supportive evidence along with the motion to dismiss, can the complaints allegations be taken as true or controlling?" | 032995.docx | LEGALEASE-00141614-LEGALEASE-00141615 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 6052 | Noble v. Shawnee Gun Shop, 316 S.W.3d 364 | 307A+680 | Furthermore, a review of the record reveals that the trial court carefully considered each of the plaintiffs' discovery requests and attempted to address them in fairness to the parties. In considering a motion to dismiss due to lack of personal jurisdiction, the trial court considers only the facts relevant to jurisdiction; it does not consider the merits of the underlying action. Hollinger, 122 S.W.3d at 115. Thus, discovery is permissible only as to the jurisdictional issues during this phase of the action. See Rule 56.01. | In considering a motion to dismiss due to lack of personal jurisdiction, the trial court considers only the facts relevant to jurisdiction, and it does not consider the merits of the underlying action; thus, discovery is permissible only as to the jurisdictional issues during that phase of the action. V.A.M.R. 56.01. | Does a trial court consider only facts relevant to jurisdiction in considering a motion to dismiss due to lack of personal jurisdiction? | Pretrial Procedure - Memo # 6024 - C - CK.docx | ROSS-003288160-ROSS-003288161 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 6053 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920 | 307A+554 | Garland's pleadings affirmatively negate the existence of subject matter jurisdiction. See Miranda, 133 S.W.3d at 227. Therefore, the trial court erred by denying TPWD's plea to the jurisdiction. Accordingly, we sustain TPWD's sole issue. Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. Cf. Hickman v. Adams, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Therefore, the trial court should have granted the plea and dismissed these claims with prejudice. Accordingly, we reverse the order of the trial court denying TPWD's plea to the jurisdiction and dismiss Garland's action, with prejudice, for lack of subject matter jurisdiction. See Sykes, 136 S.W.3d at 639 (requiring dismissal with prejudice where plaintiff previously had opportunity to amend); see also Tex.R.App. P. 43.2 (authorizing court of appeals to reverse the trial court's judgment and render the judgment the trial court should have rendered) | Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. | Is the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice? | Pretrial Procedure - Memo # 6032 - C - PB.docx | ROSS-003303024-ROSS-003303025 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6054 | Avco Fin. Servs. Loan v. Hale, 36 Ohio App. 3d 65 | 307A+554 | The standard to apply for a dismissal pursuant to Civ.R. 12(B)(1), lack of jurisdiction over the subject matter, is whether the plaintiff has alleged any cause of action cognizable by the forum. Steffen v. General Telephone Co. (1978), 60 Ohio App.2d 144, 14 O.O.3d 111, 395 N.E.2d 1346. | Standard to apply for dismissal for lack of subject matter jurisdiction is whether the plaintiff has alleged any cause of action cognizable by the forum. Rules Civ.Proc., Rule 12(B)(1). | "Is whether any cause of action cognizable by the forum has been raised in the complaint, a standard for determining motion to dismiss for lack of subject matter jurisdiction?" | 033462.docx | LEGALEASE-00140921-LEGALEASE-00140922 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 6055 | Shannon v. Streckfus Steamers, 279 Ky. 649 | 238+1 | In City of Louisville v. Churchill Downs, Inc., 267 Ky. 339, 102 S.W.2d 10, 13, where it was contended that the imposition of an excise tax on gross receipts derived from the operation of a race track as a place of amusement or entertainment was the duplication of a daily license tax for the privilege of engaging in that business, we pointed out that it was an additional tax, saying: "The first is a license to do business. The second is purely an excise. While the distinction sometimes is not recognized and inexact expressions regard the two as synonymous, an excise tax is in its proper sense "something cut off from the price paid on a sale of goods as a contribution to the support of the government."" | An "excise tax" is often used as synonymous with "privilege" or "license tax," though there is no clear line of demarkation between the so-called "license," "occupation" and "privilege tax," and "excise tax" is in its proper sense something cut off from the price paid on a sale of goods as a contribution to the support of the government. | Is excise something cut off from the price paid on a sale of goods as a contribution to the support of the government in its original sense? | 045144.docx | LEGALEASE-00140865-LEGALEASE-00140866 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6056 | State ex rel. & to Use of Benson v. Union Elec. Co. of Mo., 359 Mo. 35 | 371+2166 | In the first place, all property, except such as is specifically exempted by the Constitution and the statutes enacted pursuant thereto, is subject to taxation. State ex rel. Ziegenhein v. Mission Free School, 162 Mo. 332, 337, 62 S.W. 998, 999; 2 Cooley, Taxation, Secs. 550"551. "It is the well-settled policy of our law that taxes shall be levied and collected for public purposes on all property within the territorial jurisdiction of the state, except that expressly enumerated as exempt" [316 Mo. 853, 293 S.W. 401] even though all such property must be subjected to the various specific taxes by law. State ex rel. Union Electric L. & P. Co. v. Baker, supra. In that case it was specifically held, as the statutes then and now plainly provide, that all the property of the Union Electric Light and Power Company, including all its distributable property, had been designated for and subjected to taxation, and, that there were no exemptions,""and all property, real and tangible personal, owned by electric power and light companies, shall be subject to taxation for state, county, municipal and other local purposes to the same extent as the property of private persons." Mo.R.S.A. "" 11295, 11280.1. The mere fact that distributable property, unlike the ordinary property of private persons, is assessed and apportioned by the State Tax Commission does not mean that such property is withdrawn from the county's taxing power. | Taxes are levied and collected for public purposes on all property within territorial jurisdiction of the state, except that expressly enumerated as exempt, even though all such property must be subjected to the various specific taxes by law. | Does the property to be taxed be subjected thereto by law? | 045701.docx | LEGALEASE-00141671-LEGALEASE-00141672 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6057 | State ex rel. Tri-Cty. Elec. Co-op. Ass'n v. Dial, 192 S.W.3d 708 | 413+2 | "The Worker's Compensation Law is wholly substitutional in character and ... any rights which a plaintiff might have had at common law have been supplanted and superseded by the act, if applicable." Killian v. J J Installers, Inc., 802 S.W.2d 158, 160 (Mo. banc 1991) (citing Jones v. Jay Truck Driver Training Center, Inc., 709 S.W.2d 114, 115 (Mo. banc 1986)). Section 287.120 provides,1 in relevant part: 1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.... 2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter. | Workers' compensation is wholly substitutional in character, and any rights which a plaintiff might have had at common law have been supplanted and superseded by the act, if applicable. | Is workers compensation law wholly substitutional in character and are any rights at common law supplanted or superseded by the act? | Workers Compensation - Memo #365 ANC.docx | ROSS-003289892-ROSS-003289893 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6058 | Baron v. Best Buy Co., 79 F. Supp. 2d 1350 | 25T+155 | The Supreme Court has instructed that district courts must "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).Judge King, citing a recent Florida decision, Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla.Ct.App.1999), declined to order arbitration of Ms. Baron's state law claims because (1) the arbitration clause was unenforceable as to the TILA claims under Paladino and Randolph, and because (2) the arbitration clause was invalid under the common law doctrine of unconscionability [DE 60 at 6"7]. | Federal district courts must compel arbitration of pendent arbitrable claims when party files a motion to compel, even where result would be possibly inefficient maintenance of separate proceedings in different forums. 9 U.S.C.A. S 4. | When should the court compel arbitration of pendent arbitrable claims? | 007650.docx | LEGALEASE-00143374-LEGALEASE-00143375 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6059 | United States v. Gatling, 96 F.3d 1511 | 63+1(1) | Finally, there was also sufficient evidence for the jury to find that Walker conspired to accept bribes rather than gratuities. Bribery is defined as occurring when "a public official ... corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for another person ... in return for: (A) being influenced in the performance of any official act." 18 U.S.C. " 201 (1994). This court has held that "[p]ayments to a public official for acts that would have been performed in any event ... are probably illegal gratuities rather than bribes" and that bribery implies a quid pro quo. United States v. Campbell, 684 F.2d 141, 148 (D.C.Cir.1982); United States v. Brewster, 506 F.2d 62, 72 (D.C.Cir.1974). A central difference between accepting a bribe and accepting a gratuity is the degree of culpable intent on the part of the recipient; to convict a defendant for accepting a bribe a jury must find that the defendant acted "corruptly," whereas to convict for accepting a gratuity the jury need only find that the defendant acted "knowingly and willingly." Campbell, 684 F.2d at 149-50. Given the equation of bribery with a quid pro quo, "corruptly" in the context of the bribery statute would appear to mean that the defendant accepts money with the specific intent of performing an official act in return. | Central difference between accepting bribe and accepting gratuity is degree of culpable intent on part of recipient; to convict defendant for accepting bribe, jury must find that defendant acted corruptly, whereas to convict for accepting gratuity, jury need only find that defendant acted knowingly and willingly. 18 U.S.C.A. S 201. | What is the difference between accepting a bribe and accepting a gratuity? | 011516.docx | LEGALEASE-00142250-LEGALEASE-00142251 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6060 | Nowlin v. United States, 81 F. Supp. 3d 514 | 63+1(1) | The requirement of such a nexus cannot be found in the text of " 666; however, the nexus must exist to establish jurisdiction over the subject matter of the case. The Fifth Circuit recognizes that Congress established subject matter jurisdiction in " 666 cases: "Congress has cast a broad net to encompass local officials who may administer federal funds...." United States v. Westmoreland, 841 F.2d 572 (5th Cir.1988), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988). Indeed, the jurisdictional net is broad enough that, for the court to entertain a charge under " 666, "[t]he particular program involved in the theft or bribery need not be the recipient of federal funds." United States v. Little, 889 F.2d 1367, 1369 (5th Cir.1989). The Fifth Circuit, however, held that there are limits to the scope of subject matter jurisdiction under " 666, holding that, "[a]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal funds."Moeller, 987 F.2d at 1137 (5th Cir.1993) (emphasis added). Thus, to establish initially that a federal court may exercise subject matter jurisdiction over a " 666 case, the government must allege facts sufficient to show such a nexus between the criminal conduct and the agency. Id. In a case where a defendant challenges subject matter jurisdiction, the government must present proof, by a preponderance of the evidence, to support the claim of jurisdiction. Vantage Trailers v. Beall Corp., 567 F.3d 745, 748 (5th Cir.2009). | To establish initially that a federal court may exercise subject matter jurisdiction over a case charging theft or bribery concerning programs receiving federal funds, the government must allege facts sufficient to show such a nexus between the criminal conduct and the agency, but in a case where a defendant challenges subject matter jurisdiction, the government must present proof, by a preponderance of the evidence, to support the claim of jurisdiction. 18 U.S.C.A. S 666. | "For the court to entertain a bribery charge where the federal funds were received by the agency, is there a requirement that the particular program be the recipient of the federal funds?" | 011604.docx | LEGALEASE-00142764-LEGALEASE-00142765 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6061 | W. Virginia Dep't of Highways v. Farmer, 159 W. Va. 823 | 260+48 | It is conceded by all parties that sand and gravel are normally included in the term "minerals'. This was cogently stated in Waugh v. Thompson Land & Coal Company, 103 W.Va. 567, 137 S.E. 895 (1927), in the following language: "The word "mineral" in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit, whether containing metallic or non-metallic substances.' See Robinson v. Wheeling Steel & Iron Co., 99 W.Va. 435, 129 S.E. 311 (1925); Ramage v. South Penn Oil Company, 94 W.Va. 81, 118 S.E. 162 (1923), and Horse Creek Land & Mining Co. v. Midkiff, 81 W.Va. 616, 95 S.E. 26 (1918). The intervenors charge that since and and gravel are minerals and since they own nine-tenths of the minerals, they are entitled to that proportionate share of the award. It is the further position of the intervenors that the language is clear and unambiguous and that there is therefore no need for construction of such language. | Word "minerals" in its ordinary and common meaning is a comprehensive term including every description of stone and rock deposit whether containing metallic or nonmetallic substances. | Does the word mineral include every description of stone and rock deposit? | 021402.docx | LEGALEASE-00143498-LEGALEASE-00143499 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6062 | City of Glendale v. Marcus Cable Associates, 185 Cal. Rptr. 3d 331 | 307A+477.1 | Requests for admission are not restricted to facts or documents, but apply to conclusions, opinions, and even legal questions. (See 2 Witkin, supra, " 174 at p. 1164; Burke v. Superior Court of Sacramento County (1969) 71 Cal.2d 276, 282, 78 Cal.Rptr. 481, 455 P.2d 409.) Thus, requests for admission serve to narrow discovery, eliminate undisputed issues, and shift the cost of proving certain matters. As such, the requests for admission mechanism is not a means by which a party obtains additional information, but rather a dispute-resolution device that eliminates the time and expense of formal proof at trial.(See Hansen v. Superior Court (1983) 149 Cal.App.3d 823, 829, 197 Cal.Rptr. 175 ["Such requests are a useful and important part of the dispute-resolution mechanism.."] ). | The requests for admission mechanism is not a means by which a party obtains additional information, but rather a dispute-resolution device that eliminates the time and expense of formal proof at trial. | Is the request for admission mechanism a mean by which a party obtains additional information? | 030671.docx | LEGALEASE-00142866-LEGALEASE-00142867 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6063 | In re Consol. Zicam Prod. Liab. Cases, 212 Ariz. 85 | 307A+554 | "The "purposeful availment" requirement ensures that defendants will not be haled into a jurisdiction solely as a result of "random," fortuitous or "attenuated" contacts, or of the "unilateral activity of another party or a third person." " Burger King Corp. v.Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). Jurisdiction is only proper if the defendants may reasonably anticipate that their conduct and connection with Arizona may subject them to its jurisdiction. Bils v. Nixon, Hargrave, Devans & Doyle, 179 Ariz. 523, 525, 880 P.2d 743, 745 (App.1994). Moreover, the plaintiff cause of action must arise out of or relate to the defendant contacts with Arizona. "If the non-resident defendant forum-related activities "are not sufficiently connected for the court to conclude that the plaintiff claim arises out of" those activities, dismissal is warranted." Rollin, 196 Ariz. at 354, 996 P.2d at 1258 (quoting Westphal v. Mace, 671 F.Supp. 665, 668 (D.Ariz.1987)); see also Chandler v. Roy, 985 F.Supp. 1205, 1212 (D.Ariz.1997) (The "arising out of" test is met if, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen."). | If nonresident defendants' forum-related activities are not sufficiently connected for the court to conclude that the plaintiffs' claim arises out of those activities, dismissal is warranted. | "If nonresident defendant forum-related activities are not sufficiently connected for the court to conclude that the plaintiff claim arises out of those activities, is dismissal warranted?" | 033449.docx | LEGALEASE-00143057-LEGALEASE-00143058 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6064 | Verbitski v. Union Pac. R. Co., 2011 Ark. App. 6 | 313+153 | When service requirements are not met, the trial court jurisdiction extends only to the act of ordering a dismissal of the case and nothing more. Boyd v. Sharp County Circuit Court, 368 Ark. 566, 247 S.W.3d 864 (2007). Any other act by the trial court constitutes a plain, manifest, clear, and gross abuse of discretion. See id. Because there was no strict compliance with the service requirements in this case, the trial court properly dismissed the action. | When service of process requirements are not met, the trial court's jurisdiction extends only to the act of ordering a dismissal of the case and nothing more; any other act by the trial court constitutes a plain, manifest, clear, and gross abuse of discretion. Rules Civ.Proc., Rule 4(i). | "When services of process requirements are not met, does the trial court jurisdiction extend only to the act of ordering a dismissal of the case and nothing more?" | 033701.docx | LEGALEASE-00142897-LEGALEASE-00142898 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6065 | Israel v. Flick Mortg. Inv'rs, 23 So. 3d 1196 | 307A+560 | Even if the manner of service of process is a defense to recognition and enforcement of a foreign money-judgment under section 55.605, we nonetheless would reverse the order on appeal because Flick waived the defense through its actions in the Israeli proceedings. When the plaintiffs initiated the underlying action against Flick in the Israeli court, Flick challenged only the foreign court's exercise of personal jurisdiction over it for reasons wholly unrelated to any claim that service of process by registered mail was insufficient. Claims of lack of personal jurisdiction are, course, not the same as a claim that service of process is insufficient: A motion to dismiss for lack of jurisdiction based on insufficiency of service of process lies when the service effected does not comport with the requirements of the statute pertaining to the manner in which such service is to be effected. P.S.R. Associates v. Artcraft-Heath, 364 So.2d 855 (Fla. 2d DCA 1978). A motion to dismiss based on lack of jurisdiction over the person lies when the service effected .. although proper in manner, is not authorized by [a statute] which confers jurisdiction. | A motion to dismiss for lack of jurisdiction based on insufficiency of service of process lies when the service effected does not comport with the requirements of the statute pertaining to the manner in which such service is to be effected. | Does a motion to dismiss for lack of jurisdiction based on insufficiency of service of process lie when the service is to be effected? | 033754.docx | LEGALEASE-00142469-LEGALEASE-00142470 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6066 | Patton v. Jones, 212 S.W.3d 541 | 302+104(1) | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. Lacy v. Bassett, 132 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (discussing dismissal based on ecclesiastical doctrine) (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000)). We review the record de novo to determine whether the trial court had subject matter jurisdiction. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998). We consider only the evidence pertinent to the jurisdictional inquiry and do not weigh the merits. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.2002). Also, we construe the pleadings in favor of the plaintiff, accepting all his allegations as true. Bland Indep. Sch. Dist., 34 S.W.3d at 555. To prevail, the defense must show that, even accepting all of the plaintiff's allegations as true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject matter jurisdiction. Brenham Hous. Auth. v. Davies, 158 S.W.3d 53, 56 (Tex.App.-Houston [14th Dist.] 2005, no pet.). | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss based upon a lack of jurisdiction the functional equivalent of a plea to the jurisdiction? | 033813.docx | LEGALEASE-00142471-LEGALEASE-00142472 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 6067 | Thompson v. Peterson, 546 N.W.2d 856 | 307A+554 | Under FRCivP 12(b)(1), federal courts have generally held that dismissal for lack of subject matter jurisdiction is appropriate if the plaintiff has failed to exhaust remedies before an administrative agency. Komninos v. Upper Saddle River Bd. of Ed., 13 F.3d 775 (3rd Cir.1994); Bueford v. Resolution Trust Corp., 991 F.2d 481 (8th Cir.1993); DiLaura v. Power Authority of State of New York, 982 F.2d 73 (2nd Cir.1992). See 5A Wright and Miller, at " 1350. Our decisions have also consistently required exhaustion of remedies before the appropriate administrative agency as a prerequisite to making a claim in court. Lapp v. Reeder Public School Dist. No. 3, 544 N.W.2d 164 (N.D.1996); Medical Arts Clinic v. Franciscan Initiatives, 531 N.W.2d 289 (N.D.1995); Tooley v. Alm, 515 N.W.2d 137 (N.D.1994); Transportation Division v. Sandstrom, 337 N.W.2d 160 (N.D.1983); Shark Bros., Inc. v. Cass County, 256 N.W.2d 701 (N.D.1977). Failure to exhaust administrative remedies generally precludes making a claim in court. | Exhaustion of remedies before appropriate administrative agency is generally prerequisite to making claim in court, and dismissal for lack of subject matter jurisdiction is appropriate if plaintiff has failed to exhaust such remedies. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.; Rules Civ.Proc., Rule 12(b)(i). | Is a dismissal for lack of subject matter jurisdiction appropriate if the plaintiff failed to exhaust administrative remedies? | 033819.docx | LEGALEASE-00142559-LEGALEASE-00142560 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6068 | CNA Int'l v. Baer, 2012 IL App (1st) 112174 | 307A+531 | As we have also explained:"The purpose of a section 2"619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. [Citation.] When ruling on a section 2"619 motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. [Citation.] The reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent an issue of material fact, whether a dismissal was proper as a matter of law. [Citation.] We may affirm the dismissal on any proper basis found in the record. [Citation.]" Zerjal v. Daech& Bauer Construction, Inc., 405 Ill.App.3d 907, 910"11, 345 Ill.Dec. 887, 939 N.E.2d 1067 (2010). | The purpose of a motion to dismiss based on certain defects or defenses is to dispose of issues of law and easily proved issues of fact early in the litigation. S.H.A. 735 ILCS 5/2-619(a). | Does the purpose of a motion to dismiss based on certain defects or defenses is to dispose of issues of law and easily proved issues of fact early in the litigation? | 033859.docx | LEGALEASE-00143556-LEGALEASE-00143557 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6069 | City of El Paso v. Wilkins, 281 S.W.3d 73 | 307A+554 | Municipalities are immune from suit under the doctrine of sovereign immunity unless the Legislature has expressly waived immunity. Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.1998). A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. Sepulveda v. County of El Paso, 170 S.W.3d 605, 610 (Tex.App."El Paso 2005, pet. denied). citing City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex.App."Austin 1998, no pet.). Subject matter jurisdiction is a question of law, which we review de novo. Sepulveda, 170 S.W.3d at 610, citing City of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App."Fort Worth 1999, pet. dism'd w.o.j.). The plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject matter jurisdiction. Id. We consider the allegations in the petition as true, and construe the jurisdictional pleadings liberally in the plaintiff's favor and look to the pleader's intent. Sepulveda, 170 S.W.3d at 610, citing City of Saginaw, 996 S.W.2d at 2"3; Texas Association of Business v. Texas Air Control Board, 852 S.W.2d 440, 446 (Tex.1993). A court deciding a plea to the jurisdiction, however, is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. Bland Independent School District v. Blue, 34 S.W.3d 547, 555 (Tex.2000). | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | Does a trial court lack subject matter jurisdiction when a cause of action is barred by sovereign immunity? | 033926.docx | LEGALEASE-00142373-LEGALEASE-00142375 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6070 | Roberts v. Stidham, 19 So. 3d 1155 | 313+63 | When a plaintiff shows good cause for failure to serve process within 120 days, the trial court must extend the time for service and has no discretion to do otherwise. Pixton v. Williams Scotsman, Inc., 924 So.2d 37, 39 (Fla. 5th DCA 2006). The trial court has broad discretion to extend the time for service even when good cause for failing to meet the 120"day deadline has not been shown. Bacchi v. Manna of Hernando, Inc., 743 So.2d 34, 34 (Fla. 5th DCA 1999). However, even when there has been no showing of good cause or excusable neglect and the statute of limitations has run, discretion should be exercised in favor of allowing the plaintiff an extension to accomplish service. Kohler v. Vega"Maltes, 838 So.2d 1249, 1250 (Fla. 2d DCA 2003). Even without a motion to extend, dismissal is required only if reasonable cause for the delay in service is not documented. Root v. Little, 721 So.2d 836, 837 (Fla. 5th DCA 1998). Rule 1.070(j) is designed to be a case management tool, not an additional statute of limitations cutting off the liability of a tortfeasor, and it is not to be imposed inflexibly when the plaintiff demonstrates diligence and good cause. Id. | Even when there has been no showing of good cause or excusable neglect for failure to serve process within 120 days and the statute of limitations has run, discretion should be exercised in favor of allowing the plaintiff an extension to accomplish service. West's F.S.A. RCP Rule 1.070(j). | Is dismissal for failure to serve process within 120 days required only if reasonable cause for the delay in service is not documented? | 033943.docx | LEGALEASE-00142449-LEGALEASE-00142450 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6071 | McGee v. Macambo Lounge, 158 Mich. App. 282 | 307A+746 | Clearly, default is authorized if a "party or an officer, director, or managing agent of a party" fails to appear at a pretrial or settlement conference after having been ordered to attend. Neither of said court rules authorized default of a party for the failure of a representative of the party's insurance carrier to attend a settlement conference. There is no indication that default in this case rested upon the failure of a named party or attorney for a named party to appear at any of the scheduled pretrial or settlement conferences or trial dates. | Default judgment is authorized if party or officer, director, or managing agent of party fails to appear at pretrial or settlement conference after having been ordered to attend. MCR 2.401(F), 2.506(F), 2.603. | Is a default judgment authorized if a party fails to appear at a pretrial or settlement conference after having been ordered to attend? | 034322.docx | LEGALEASE-00143210-LEGALEASE-00143211 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 6072 | Mountain Fuel Supply Co. v. Salt Lake City Corp., 752 P.2d 884 | 371+2005 | Second, the City's undisputed evidence shows that it would be economically inefficient and administratively cumbersome to track down every supplier of firewood, coal, or bottled gas sold for use within the city and attempt to collect from each such supplier a tax based on revenues earned from customers within the city. This evidence is sufficient to justify the City's decision not to include small-scale fuel suppliers in the taxed class. The City is not to be denied the most effective means of raising needed revenues unless that means imposes an unreasonable burden on the affected parties. See Thompson v. Salt Lake City Corp., 724 P.2d 958, 959 (Utah 1986). We agree with the court below that as a matter of law, the City has chosen a reasonable means to achieve legitimate legislative ends. Mountain Fuel's challenge to the ordinances under the uniformity provisions of the Utah Code and Utah Constitution and under the equal protection clause of the federal fourteenth amendment is therefore rejected. | City is not denied most effective means of raising needed revenues unless that means imposes unreasonable burden on affected parties. | Is the city denied most effective means of raising needed revenues if those means impose unreasonable burden on affected parties? | 045318.docx | LEGALEASE-00142601-LEGALEASE-00142602 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6073 | Cty. of Lenoir v. Moore, 114 N.C. App. 110 | 371+2060 | Here, the terms immediately preceding the phrase "other recorded specific liens" in G.S. 105-241 are "duly recorded mortgages" and "deeds of trust." These two items giving rise to liens are usually, if not exclusively, obtained by private lenders of capital as security for an underlying debt. On the other hand, real property ad valorem taxes are inherently public in character: they are statutorily authorized taxes raised to serve the needs of the community as a whole. See Saluda v. Polk County, 207 N.C. 180, 185, 176 S.E. 298, 301 (1934) (distinguishing between "mortgages, deeds of trust, etc., on the property" from "governmental taxes" in interpreting priority under statute). | Real property ad valorem taxes are inherently public in character; they are statutorily authorized taxes raised to serve needs of community as whole. | Are real property ad valorem taxes statutorily authorized taxes raised to serve needs of community as whole? | 045614.docx | LEGALEASE-00142591-LEGALEASE-00142592 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 6074 | United States v. Moeller, 987 F.2d 1134 | 234+5 | We have recognized that in enacting section 666, "Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of whether they actually do." Although the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance. In Westmoreland we held that so long as the agency received $10,000 per year from a federal assistance program, its agents are subject to section 666. The particular program involved in the theft or bribery scheme need not be the recipient of federal funds. | Some nexus must exist between agency receiving federal assistance and criminal conduct in violation of statutory prohibition against theft or bribery concerning programs receiving federal funds, although conduct prohibited by the statute need not actually affect federal funds received by the agency. 18 U.S.C.A. S 666. | "Under law, with regard to the prohibited conduct that affect administration of federal funds, should there be some nexus between the criminal conduct and the agency receiving federal assistance?" | Bribery - Memo #420 - C-CSS.docx | ROSS-003302293-ROSS-003302294 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 6075 | United States v. Harvey, 532 F.3d 326 | 63+1(1) | "Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent." U.S. v. Arthur, 544 F.2d 730, 734 (4th Cir.1976). The requirement of "corrupt intent," simply means "the intent to receive a specific benefit in return for the payment." U.S. v. Jennings, 160 F.3d 1006, 1013 (4th Cir.1998). The intent to receive a "specific benefit," however, is not as limiting as it first appears; it is "sufficient that the gift is made on the condition "that the offeree act favorably to the offeror when necessary." " Arthur, 544 F.2d at 734 (quoting U.S. v. Isaacs, 493 F.2d 1124, 1145 (7th Cir.1974)). Thus, [t]his requirement of criminal intent would, of course, be satisfied if the jury were to find a "course of conduct of favors and gifts flowing" to a public official in exchange for a pattern of official actions favorable to the donor even though no particular gift or favor is directly connected to any particular official act. Id. (quoting U.S. v. Baggett, 481 F.2d 114, 115 (4th Cir.1973), cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973)). | Not every gift, favor or contribution to a government or political official constitutes bribery; bribery occurs only if the gift is coupled with a particular criminal intent to receive a specific benefit in return for the payment. 18 U.S.C.A. S 201(b)(1)(A), (b)(2)(A). | "When do gifts, favors, and contributions to government or public officials constitue bribery?" | 012208.docx | LEGALEASE-00143704-LEGALEASE-00143705 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6076 | Comm'r of IRS v. Estate of Sanders, 834 F.3d 1269 | 135+1 | That said, there is some guidance in existing case law as to its meaning. "Although the meaning may vary according to context, "residence" generally requires both physical presence and an intention to remain." Martinez v. Bynum, 461 U.S. 321, 330, 103 S.Ct. 1838, 1843, 75 L.Ed.2d 879 (1983). Residency demands that one be more than a transient or a sojourner, but requires "far less than domicile which requires an intent to make a fixed and permanent home." Sochurek v. Comm'r, 300 F.2d at 38. Additionally, while a person may have only one domicile at a time, cases have recognized the possibility that one person may have multiple residences simultaneously. Vento, 715 F.3d at 466; Downs v. Comm'r, 166 F.2d 504, 508 (9th Cir. 1948). | Although the meaning may vary according to context, "residence" generally requires both physical presence and an intention to remain. | "Does ""residence"" require both physical presence and an intention to remain although the meaning may vary according to context?" | 014486.docx | LEGALEASE-00144375-LEGALEASE-00144376 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6077 | Finks v. Middleton, 795 S.E.2d 789 | 13+13 | "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." Fuller v. Easley, 145 N.C.App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted). "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the pleadings." Harris v. Matthews, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). | Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a motion to dismiss for lack of jurisdiction. N.C. R. Civ. P. 12(b)(1). | Does standing concern the trial court's subject matter jurisdiction and is therefore properly challenged by a motion to dismiss for lack of jurisdiction? | 032916.docx | LEGALEASE-00143766-LEGALEASE-00143767 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6078 | Petrie v. Columbia & G.R. Co., 27 S.C. 63 | 307A+74 | The rule in reference to testimony taken by commission was laid down in the case of Walton v. Bostick, 1 Brev. 162, in the following language: "Where parties join in a commission to take the examination of witnesses, and the commissions returned into court, either party may move for publication, and neither can object to it. Both have an interest in the evidence thus procured; and the court, having possession of it, will allow both parties the benefit of it." This rule was subsequently recognized in Pulaskiv. Ward, 2 Rich. 119, and seems to be now well settled, as we know of no case in which it has been questioned. This being the rule, the practical inquiry is whether it was violated in this case. Although the circuit judge seems to have recognized the rule, yet we think he erred in its application. According to his view, the plaintiff had no right to avail himself of the testimony, until after the defendant had manifested an intention not to use it, either by moving for a nonsuit, or by declining to introduce it when it came his turn to offer testimony. This view is based upon the assumption that the party at whose instance the testimony has been taken has the prior and superior right to use it, and that the right of his adversary does not arise until he has declined or waived his prior right. We know of no authority for such a qualification of the rule. It certainly cannot be found in the terms of the rule as stated in the case cited, where it was formulated in a distinct resolution, indicating that it was carefully prepared and fully stated. | Where parties join in a commission to take the examination of a witness, and the commission is returned into court, either party may move for publication, and neither can object to it. It is error, therefore, to refuse the plaintiff publication of testimony taken on behalf of the defendant until the defendant has manifested an intention not to use it, either by moving for a nonsuit, or by declining to introduce it when it came his turn to offer testimony. | Where parties join in a commission to take the examination of witnesses and the commission is returned into the court can a party object to it? | 033055.docx | LEGALEASE-00143909-LEGALEASE-00143910 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 6079 | Gen. Elec. Capital Corp. v. Browning Mulch Co., 303 Ga. App. 795 | 30+3232 | An order of dismissal for failure to appear is discretionary with the trial court and is not subject to review by this court in the absence of an abuse of discretion. (Punctuation and footnote omitted.) Maupin v. Vincent, 245 Ga.App. 635, 636(1), 538 S.E.2d 529 (2000). GECC argues on appeal that the trial court abused its discretion by dismissing this action with prejudice. | An order of dismissal for failure to appear is discretionary with the trial court and is not subject to review by the Court of Appeals in the absence of an abuse of discretion. | Is an order of dismissal for failure to appear discretionary with the trial court and is not subject to review by the Court of Appeals in the absence of an abuse of discretion? | 033646.docx | LEGALEASE-00144083-LEGALEASE-00144084 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 6080 | Shams v. Hassan, 829 N.W.2d 848 | 307A+554 | Unlike other grounds for dismissal, however, a court considering a motion to dismiss for lack of personal jurisdiction must make factual findings to determine whether it has personal jurisdiction over the defendant. Capital Promotions, L.L.C. v. Don King Prods., Inc., 756 N.W.2d 828, 832 (Iowa 2008). Those findings are binding if supported by substantial evidence. Hodges v. Hodges, 572 N.W.2d 549, 551 (Iowa 1997). | Unlike other grounds for dismissal, a court considering a motion to dismiss for lack of personal jurisdiction must make factual findings to determine whether it has personal jurisdiction over the defendant. | Would a district court make necessary factual findings to determine whether a court has personal jurisdiction over the defendant? | 033658.docx | LEGALEASE-00144121-LEGALEASE-00144122 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 6081 | Wilder Chiropractic v. State Farm Fire & Cas. Co., 2014 IL App (2d) 130781 | 307A+560 | "No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions." Kole v. Brubaker, 325 Ill.App.3d 944, 949, 259 Ill.Dec. 649, 759 N.E.2d 129 (2001). "[T]he determination of whether the defendant has established a prima facie case of lack of diligence must be made on a case-by-case basis." Id. The court in Kole suggested that, in determining whether a prima facie case was made, the court should consider "any patently unusual circumstances" that would have "prevented or otherwise hindered [the] plaintiff's ability to serve [the] defendants." Id. | No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions in delaying service on defendant. Sup.Ct.Rules, Rule 103(b). | "Does an absolute time frame that will shift the burden and require the plaintiff to offer an explanation for his or her actions in delaying service on a defendant, exist?" | 033714.docx | LEGALEASE-00144425-LEGALEASE-00144426 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6082 | Reid v. Evans, 273 Neb. 714 | 307A+560 | Central to our analysis of Reid first assignment of error is the language of 25"217, which provides that "an action is commenced on the date the complaint is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." We have construed this language to mean that an action is dismissed by operation of law as to any defendant who is named and who is not served with process within 6 months after the complaint is filed. We have recently stated that "under 25"217 the expression "any defendant" means that dismissal is indicated as to that defendant who is named and is "not served." State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 268 Neb. 439, 447, 684 N.W.2d 14, 21"22 (2004) (determining that dismissal affects only those named defendants who are not properly served). | An action is dismissed by operation of law as to any defendant who is named and who is not served with process within six months after the complaint is filed. Neb.Rev.St. S 25-217. | Is an action dismissed by operation of law as to any defendant who is named and who is not served with process within six months after the complaint is filed? | 034443.docx | LEGALEASE-00144275-LEGALEASE-00144276 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6083 | Willis v. RCA Corp., 12 Ohio App. 3d 1 | 307A+746 | However, the court should not order a dismissal with prejudice unless plaintiff's "conduct is so negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds for [such] a dismissal ." Schreiner v. Karson, supra, at 233, 369 N.E.2d 800; see, also, Dyotherm Corp. v. Turbo Machine Co. (C.A.3,1968), 392 F.2d 146; Flaska v. Little River Marine Constr. Co. (C.A.5,1968), 389 F.2d 885, certiorari denied (1968), 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387. | Unless party's conduct is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for dismissal with prejudice, court should consider lesser sanctions when party fails to appear at hearing. Rules Civ.Proc., Rule 41(B). | "Should a court not order dismissal with prejudice unless the party's conduct is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for such dismissal?" | Pretrial Procedure - Memo # 6825 - C - BP.docx | ROSS-003316365-ROSS-003316366 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6084 | Cox v. Burke, 706 So. 2d 43 | 307A+563 | In Kirby v. Adkins, 582 So.2d 1209 (Fla. 5th DCA 1991), this court reversed the trial court's dismissal of the plaintiff's complaint in that case when the plaintiff perjured herself in court concerning her marital status. This court referenced the third district's holding in Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978) that, although the trial court's findings constituted a basis on which it could be inferred that plaintiff's claimed injuries were feigned, the matter should be left to the jury where such inference was by no means overwhelming and the matter was fairly debatable. We also relied on an earlier third district case, Parham v. Kohler, 134 So.2d 274 (Fla. 3d DCA 1961), a factually similar case which involved the false assertion of marriage in support of a consortium claim.Kirby and Parham differ from the present case because the false testimony in those cases did not affect the plaintiff's own claim; it supported the false claim of a putative husband. If the party's false testimony is collateral to the claim or defense that he or she is asserting, the remedies are appropriately limited to those discussed in Parham. However, where a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper. Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011 (Fla. 4th DCA 1997). | Where party lies about matters pertinent to party's own claim, or portion of it, and perpetrates a fraud that permeates entire proceeding, dismissal of whole case for fraud on court is proper. | "Where a party lies about matters pertinent to his own claim, or a portion of it, is dismissal of the whole case proper?" | 034551.docx | LEGALEASE-00143888-LEGALEASE-00143889 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6085 | Bachmeier v. Wallwork Truck Centers, 507 N.W.2d 527 | 307A+44.1 | The trial court has broad discretion in determining when sanctions are appropriate, and what sanctions to impose. See Benedict v. St. Luke's Hospitals, 365 N.W.2d 499, 504 (N.D.1985). Similar to Rule 37 sanctions, we believe inherent power sanctions require case-by-case analysis of all the circumstances presented in the case. Vorachek v. Citizens State Bank of Lankin, 421 N.W.2d 45, 51 (N.D.1988) ( Rule 37). Valid considerations include, but are not limited to: the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case;3 and, the availability of less severe alternative sanctions. See Dillon, 986 F.2d at 267-68; Computer Associates Int'l, Inc., 133 F.R.D. at 169; Nevada Power v. Fluor Illinois, 108 Nev. 638, 837 P.2d 1354 (1992); Stubli v. Big D Int'l Trucks, Inc., et al., 107 Nev. 309, 810 P.2d 785 (1991). | Inherent power sanctions require case-by-case analysis of all circumstances presented in case, including culpability of party against whom sanctions are being imposed, finding of prejudice against moving party, degree of prejudice, including impact it has on presenting or defending case, and availability of less severe alternative sanctions. (Per Neumann, J., with one Judge concurring and two Judges concurring in the result.) | "In determining when sanctions are appropriate against party, what are the three factors considered by the trial court?" | 034579.docx | LEGALEASE-00144623-LEGALEASE-00144624 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 6086 | E.I. DuPont De Nemours & Co. v. Sidran, 140 So. 3d 620 | 307A+563 | Although a finding of fraud on the court generally has been premised on a proven outright lie on a critical issue, or the destruction of determinative evidence, whatever "scheme" of fraud a court finds must be supported by clear and convincing evidence that goes to "the very core issue at trial":To support a dismissal the court must find the "false testimony was directly related to the central issue in the case." Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002); see also Ramey v. Haverty Furniture Cos., 993 So.2d 1014, 1019 (Fla. 2d DCA 2008). It is the moving party's burden to establish by clear and convincing evidence that the non-moving party has engaged in fraudulent conduct warranting dismissal. Cross v. Pumpco, Inc., 910 So.2d 324, 327 (Fla. 4th DCA 2005).Gilbert v. Eckerd Corp. of Fla., Inc., 34 So.3d 773, 775"76 (Fla. 4th DCA 2010). | To support a dismissal based upon a fraud on the court, the court must find the false testimony was directly related to the central issue in the case. | "To support a dismissal for fraud on the court, should the court find the false testimony was directly related to the central issue in the case?" | 034610.docx | LEGALEASE-00144177-LEGALEASE-00144178 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6087 | Kirtland v. Hotchkiss, 100 U.S. 491 | 371+2005 | In the last-named case we said that, "unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, the subjects to which it applies are within her jurisdiction." We perceive no reason to modify the principles announced in these cases or to question their soundness. They are fundamental and vital in the relations which, under the Constitution, exist between the United States and the several States. Upon their strict observance depends, in no small degree, the harmonious and successful working of our complex system of government, Federal and State. It may, therefore, be regarded as the established doctrine of this court, that so long as the State, by its laws, prescribing the mode and subjects of taxation, does not entrench upon the legitimate authority of the Union, or violate any right recognized, or secured, by the Constitution of the United States, this court, as between the State and its citizen, can afford him no relief against State taxation, however unjust, oppressive, or onerous. | Unless restrained by provisions of the federal constitution the power of the state as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction. | Can the provisions of the federal constitution restrain the form and extent of the taxation power of the state? | Taxation - Memo # 757 - C - DHA.docx | ROSS-003303313-ROSS-003303314 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6088 | Estate of Rose, 465 Pa. 53 | 220+3003 | The federal and state governments may generally tax the same subject matter at the same time and neither the United States nor the state, in determining the amount of tax due to it, is under constitutional obligation to make any allowance on account of the tax of the other. Frick v. Pennsylvania, 268 U.S. 473, 499, 500, 45 S.Ct. 603, 69 L.Ed. 1058 (1925), Affirming in part, Frick Estate, 277 Pa. 242, 121 A. 35 (1923). | Federal and state governments may generally tax same subject matter at same time and neither the United States nor the state, in determining amount of tax due it, is under constitutional obligation to make any allowance on account of tax of the other. | Can federal and state governments tax the same subject at the same time? | 045769.docx | LEGALEASE-00144480-LEGALEASE-00144481 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 6089 | Birmingham Assocs. Ltd. v. Abbott Labs., 547 F. Supp. 2d 295 | 25T+182(1) | Section 3 of the FAA requires a court to enter a stay in a case where the asserted claims are "referable to arbitration" by written agreement. " "Because arbitration is a matter of contract, exceptional circumstances must apply" " before a court will allow a non-contracting party to impose a contractual agreement to arbitrate. A non-signatory may compel arbitration on an estoppel theory, where (i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are " "intimately founded in and intertwined with the underlying" " agreement containing the arbitration clause. Claims are intertwined "where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause." | A non-signatory may compel arbitration on an estoppel theory where (1) there is a close relationship between the parties and controversies involved and (2) the signatory's claims against the non-signatory are intimately founded in and intertwined with the underlying agreement containing the arbitration clause; claims are intertwined where the merits of an issue between the parties is bound up with a contract binding one party and containing an arbitration clause. | When can a non-signatory compel arbitration on an estoppel theory? | Alternative Dispute Resolution - Memo 734 - RK.docx | ROSS-003300531-ROSS-003300532 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6090 | Ramsden v. Farm Credit Servs. of N. Cent. Wisconsin ACA, 223 Wis. 2d 704 | 30+3281 | Whether a complaint states a claim upon which relief can be granted is a question of law, which we review de novo. Heinritz v. Lawrence Univ., 194 Wis.2d 606, 610, 535 N.W.2d 81, 83 (Ct.App.1995). A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim. Ollerman v. O'Rourke Co., Inc., 94 Wis.2d 17, 24, 288 N.W.2d 95, 98 (1980). Therefore, we admit as true all facts pleaded and all reasonable inferences from the pleadings, but only for the purpose of testing the legal sufficiency of the claim, not for the purpose of trial. Id. A complaint does not need to state all the ultimate facts constituting each cause of action, and we will not affirm the dismissal of a complaint as legally insufficient unless "it is quite clear that under no conditions can the plaintiff recover." Id. at 24, 288 N.W.2d at 98-99. | A complaint does not need to state all the ultimate facts constituting each cause of action, and the Court of Appeals will not affirm the dismissal of a complaint as legally insufficient unless it is quite clear that under no conditions can the plaintiff recover. W.S.A. 802.06(2)(a)6. | Should a complaint state all the ultimate facts constituting each cause of action? | 023545.docx | LEGALEASE-00145521-LEGALEASE-00145522 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6091 | Young v. Fed. Bureau of Prisons, 825 F. Supp. 2d 234 | 170B+2788 | Under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over each defendant. Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C.Cir.1990). In order to satisfy this burden, a plaintiff must establish the court's jurisdiction over each defendant through specific allegations in her complaint. Kopff v. Battaglia, 425 F.Supp.2d 76, 80"81 (D.D.C.2006). Additionally, the plaintiff cannot rely on conclusory allegations; rather, she must allege the specific facts on which personal jurisdiction is based. First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378 (D.C.Cir.1988). | Under rule authorizing motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over each defendant, and in order to satisfy this burden, the plaintiff must establish the court's jurisdiction over each defendant through specific allegations in her complaint. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A. | Does the plaintiff have the burden on a defendant's motion to dismiss for lack of personal jurisdiction to establish that the court does have such jurisdiction? | 033122.docx | LEGALEASE-00146170-LEGALEASE-00146171 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 6092 | Cooper v. Kirkwood Cmty. Coll., 782 N.W.2d 160 | 106+40 | A lack of subject matter jurisdiction can be raised at any stage in the proceedings. Id.; Lloyd v. State, 251 N.W.2d 551, 556 (Iowa 1977). "It is elementary that the court's first duty is to determine its jurisdiction to entertain and decide a case on its merits." Lloyd, 251 N.W.2d at 558. Once a court determines that it lacks subject matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action. Id. "If a court enters a judgment without jurisdiction over the subject matter, the judgment is void and subject to collateral attack." Klinge, 725 N.W.2d at 15. | Once a court determines that it lacks subject-matter jurisdiction over a claim, it has no power to enter a judgment on the merits and must dismiss the action. | "Once a court determines that it lacks subject-matter jurisdiction over a claim, does it have no power to enter a judgment on the merits and must dismiss the action?" | 033171.docx | LEGALEASE-00145417-LEGALEASE-00145418 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6093 | Clay v. Deering, 618 A.2d 92 | 307A+746 | Although the trial court did not question appellants' statements that they did not receive actual notice of the pre-trial conference, the court attributed the want of notice to mishandling of the mail in counsel's office. A court is not required to grant a 60(b)(6) motion when circumstances indicate that the movant did not receive actual notice due to his own negligence. Union Storage Co. v. Knight, supra, 400 A.2d at 319. | Court is not required to grant relief from default judgment for failure to appear due to party's failure to receive notice of pretrial conference when circumstances indicate that movant did not receive actual notice due to his own negligence. Civil Rule 60(b)(6). | Is a court not required to grant relief from default judgment for a failure to appear due to a party's failure to receive notice of a pretrial conference? | 034072.docx | LEGALEASE-00145216-LEGALEASE-00145217 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 6094 | Roberts v. Stidham, 19 So. 3d 1155 | 313+63 | When a plaintiff shows good cause for failure to serve process within 120 days, the trial court must extend the time for service and has no discretion to do otherwise. Pixton v. Williams Scotsman, Inc., 924 So.2d 37, 39 (Fla. 5th DCA 2006). The trial court has broad discretion to extend the time for service even when good cause for failing to meet the 120"day deadline has not been shown. Bacchi v. Manna of Hernando, Inc., 743 So.2d 34, 34 (Fla. 5th DCA 1999). However, even when there has been no showing of good cause or excusable neglect and the statute of limitations has run, discretion should be exercised in favor of allowing the plaintiff an extension to accomplish service. Kohler v. Vega"Maltes, 838 So.2d 1249, 1250 (Fla. 2d DCA 2003). Even without a motion to extend, dismissal is required only if reasonable cause for the delay in service is not documented. Root v. Little, 721 So.2d 836, 837 (Fla. 5th DCA 1998). Rule 1.070(j) is designed to be a case management tool, not an additional statute of limitations cutting off the liability of a tortfeasor, and it is not to be imposed inflexibly when the plaintiff demonstrates diligence and good cause. Id. | When a plaintiff shows good cause for failure to serve process within 120 days, the trial court must extend the time for service and has no discretion to do otherwise. West's F.S.A. RCP Rule 1.070(j). | Is the rule governing dismissal of actions for failure to serve process within 120 days designed to be a tool of case management? | Pretrial Procedure - Memo # 6520 - C - RY.docx | LEGALEASE-00035391-LEGALEASE-00035392 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6095 | Beto v. Stewart, 213 W. Va. 355 | 307A+44.1 | This Court previously provided guidance to circuit courts regarding the issue of sanctions by stating:"In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. pt. 2, Bartles v. Hinkle, 196 W.Va. 381, 472 S.E.2d 827 (1996). | In formulating the appropriate sanction for violation of a discovery rule, trial court initially must identify alleged wrongful conduct and determine if it warrants a sanction, and explain its reasons clearly on the record if it decides a sanction is appropriate. Rules Civ.Proc., Rule 37(b)(2). | Should a court explain reasons clearly on record if it decides sanction is appropriate? | Pretrial Procedure - Memo # 6545 - C - NS.docx | ROSS-003301838-ROSS-003301840 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6096 | Seldomridge v. Gen. Mills Operations, 140 S.W.3d 58 | 307A+690 | As an important final note, we must address the fact that the circuit court dismissed Mr. Seldomridge's claim "with prejudice." A dismissal for lack of subject matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. Shaver, 713 S.W.2d at 300. See also, State ex rel. J.E. Jones Constr. Co. v. Sanders, 875 S.W.2d 154, 157 (Mo.App. E.D.1994) (in a motion to dismiss for lack of subject matter jurisdiction, "the trial court decides only the preliminary question of its own jurisdiction, which is not a decision on the merits and is without res judicata effect"). So even if we had affirmed the circuit court, we still would have remanded the case so the circuit court could change its order to a dismissal without prejudice. | A dismissal for lack of subject matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. | Can a dismissal for lack of subject matter jurisdiction be without prejudice because the court had no authority to decide the case on the merits? | 034402.docx | LEGALEASE-00145132-LEGALEASE-00145133 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6097 | Darville v. Mejia, 184 So. 3d 312 | 307A+560 | Once a party has been granted an initial extension of time under Rule 4(h) in which to serve process, "a second or subsequent extension of time to effectuate service of process may be granted by the trial court only upon a showing of "good cause." In other words, once the initial, 120"day period after filing the complaint has elapsed, good cause is required to avoid dismissal." Johnson v. Thomas ex rel. Polatsidis, 982 So.2d 405, 413 (Miss.2008). | Once the initial, 120-day period after filing the complaint has elapsed, good cause for failure to effectuate service of process is required to avoid dismissal. Rules Civ.Proc., Rule 4(h). | Is good cause required to avoid dismissal once the initial 120-day period after filing the complaint has elapsed? | 034406.docx | LEGALEASE-00145172-LEGALEASE-00145173 | Condensed, Order, SA | 0.58 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6098 | Peer v. Lewis, 606 F.3d 1306 | 170A+2757 | The inherent power "is both broader and narrower than other means of imposing sanctions." Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). While the other sanction mechanisms only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." Id. Indeed, the inherent power of a court " "can be invoked even if procedural rules exist which sanction the same conduct," for these rules are not substitutes for the inherent power." Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir.1995) (citation omitted). Concomitantly, the inherent power's bad faith standard narrows the range of conduct that can satisfy this higher threshold for sanctions. See Chambers, 501 U.S. at 47, 111 S.Ct. at 2134. | While the other sanction mechanisms only reach certain individuals or conduct, the court's inherent power to impose sanctions extends to a full range of litigation abuses and must continue to exist to fill in the interstices. | "When the court's inherent power to impose sanctions is relied upon, will the court rely on rules or statutes related to reasonable and appropriate sanctions?" | 034764.docx | LEGALEASE-00145236-LEGALEASE-00145237 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 6099 | City of Manchester v. Ryan, 180 S.W.3d 19 | 30+781(1) | Ryan argues the case, if found moot, nevertheless falls within the "public interest" exception to the mootness doctrine, providing this Court with discretionary jurisdiction to decide the case. Missouri law recognizes two narrow exceptions to the mootness doctrine that bestow discretionary jurisdiction on the appellate court to decide an otherwise moot issue. McNeil"Terry v. Roling, 142 S.W.3d 828, 832 (Mo.App. E.D.2004). The first exception occurs if a case becomes moot after argument and submission. Id. The second, "public interest," exception occurs if a case presents an issue that (1) is of general public interest and importance, (2) will recur, and (3) will evade appellate review in future live controversies. Id. "This second exception is "very narrow ... and if an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of review, the "public interest" exception does not apply.' " Kinsky, 109 S.W.3d at 196 quoting In re Southwestern Bell Tel., 18 S.W.3d 575, 577 (Mo.App. W.D.2000). If an exception applies, then dismissal of a case for mootness is within the discretion of the appellate court. McNeil"Terry, 142 S.W.3d at 832. | Public-interest exception to mootness doctrine occurs if an appellate case presents an issue that (1) is of general public interest and importance, (2) will recur, and (3) will evade appellate review in future live controversies. | Is a dismissal of a case due to mootness discretionary if the case presents an issue that is of general public interest and importance? | 034788.docx | LEGALEASE-00145438-LEGALEASE-00145439 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6100 | Canal St., Ltd. v. Sorich, 77 Cal. App. 4th 602 | 307A+590.1 | Additionally, since Varwig the five-year statute has been amended to particularly incorporate what had been simply a judicially created exception to the mandatory five-year dismissal. The computation of the five-year period now specifically excludes the time during which bringing the action to trial was impossible, impracticable, or futile. (" 583.340, subd. (c).) As both Schiro and Brown & Bryant, Inc. conclude, the time during which a settlement agreement is in effect tolls the five-year period, for the reason that attempting to bring an action to trial when all issues have been resolved through settlement would be futile. (Brown & Bryant, Inc., supra, 24 Cal.App.4th at pp. 255"257, 29 Cal.Rptr.2d 144; Schiro, supra, 220 Cal.App.3d at p. 845, 269 Cal.Rptr. 639.) | Time during which a settlement agreement is in effect tolls five-year period following filing of action in which action must be brought to trial, since attempting to bring action to trial when all issues have been resolved would be futile; abrogating Varwig v. Leider, 171 Cal.App.3d 312, 217 Cal.Rptr. 208. West's Ann.Cal.C.C.P. S 583.310. | Does the time during which a settlement agreement is in effect toll a five-year period following filing of action? | Pretrial Procedure - Memo # 7171 - C - KA.docx | ROSS-003289969 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 6101 | Wimbley v. Jacksonville Moving & Storage Co., 624 So. 2d 323 | 307A+590.1 | While we are of the opinion that the instant case has not proceeded as swiftly as it should have, we cannot agree that dismissal was warranted under Rule 1.420 (e). It is true that in order to avoid dismissal, there must be record activity "constituting an affirmative act calculated to hasten the suit to judgment." Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992). We hold that appellant motion to compel payment of arbitration fees, filed in December 1991, was sufficient record activity to make dismissal under Rule 1.420 (e) improper. | To avoid dismissal for failure to prosecute, there must be record activity constituting affirmative act calculated to hasten suit to judgment. West's F.S.A. RCP Rule 1.420(e). | "To avoid dismissal for failure to prosecute, should there be record activity constituting affirmative act calculated to hasten suit to judgment?" | 035156.docx | LEGALEASE-00145756-LEGALEASE-00145757 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6102 | Stresscon Int'l v. Ralph Merritt Dev. Corp., 368 So. 2d 384 | 307A+563 | It should first be made clear that a trial judge may properly dismiss a cause with prejudice for failure of a plaintiff to comply timely with an order of the court. See Clifford Ragsdale, Inc. v. Morganti, Inc., 356 So.2d 1321 (Fla. 4th DCA 1978). The circumstances of this case, which call into question the exercise of discretion by the trial court, are that the order requiring election within a stated time was susceptible to a misunderstanding by the plaintiff. | The trial judge may properly dismiss a cause with prejudice for failure of a plaintiff to comply timely with an order of court. | Can the trial judge properly dismiss a cause with prejudice for failure of a plaintiff to comply timely with an order of court? | 035182.docx | LEGALEASE-00145706-LEGALEASE-00145707 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 6103 | Hercules Offshore v. Lafayette Par. Sch. Bd., Sales & Use Tax Dep't, 157 So. 3d 1177 | 13+70 | At issue is whether Hercules' 2007 suit to redetermine and refund the tax paid under protest was abandoned. Under La.Code Civ. P. art. 561, an action is abandoned "when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La.Code Civ. P. art. 561(A). A party takes a "step" in the prosecution or defense of a suit when he takes formal action, before the court, intended to hasten the matter to judgment. Chevron Oil Co. v. Traigle, 436 So.2d 530, 532 (La.1983). Formal discovery "served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action." La.Code Civ. P. art. 561(B). Abandonment operates without a formal order, "but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment." La.Code Civ. P. art. 561(A)(3). | A party takes a "step" in the prosecution or defense of a suit, under article providing for abandonment of an action, when he takes formal action, before the court, intended to hasten the matter to judgment. LSA-C.C.P. art. 561. | Does a party take a step in the prosecution or defense of a suit when he takes formal action intended to hasten the matter to judgment? | Pretrial Procedure - Memo # 7265 - C - SS.docx | LEGALEASE-00035962-LEGALEASE-00035963 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6104 | Wells v. Bushe, 118 N.Y.S. 486 | 307A+531 | It seems to me the motion must be granted. There is no such party in existence as the plaintiff in this action. The only effect of continuing the suit will be to subject the defendants to the annoyance, danger, and expense of protecting themselves from groundless, vexatious, and harassing litigation. That the court possesses the inherent power, in the absence of statute, to dismiss or perpetually stay such suits, has been held in Stewart v. Butler, 27 Misc. Rep. 708, 59 N. Y. Supp. 573. This is peculiarly the case where concededly the plaintiff has no existence. | The court has inherent power, in the absence of statute, to dismiss or perpetually stay a suit the only effect of continuing which would be to subject defendants to the annoyance, danger, and expense of protecting themselves from groundless, vexatious, and harassing litigation. | "Does court have power, in absence of any statute to dismiss or perpetually stay groundless, vexatious, annoying, and harassing litigations?" | 035279.docx | LEGALEASE-00145476-LEGALEASE-00145477 | Order, SA, Sub | 0.51 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6105 | State ex rel. Reed v. Reardon, 41 S.W.3d 470 | 13+6 | In terms of justiciability, " "[a] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." " Shelton v. Farr, 996 S.W.2d 541, 543 (Mo.App.1999) (quoting Bank of Washington v. McAuliffe, 676 S.W.2d 483, 487 (Mo. banc 1984)). " "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." " Armstrong, 990 S.W.2d at 64 (quoting State ex rel. Wilson v. Murray, 955 S.W.2d 811, 812"13 (Mo.App.1997) (citation omitted))."When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." Id.; In re C.A.D., 995 S.W.2d 21, 28 (Mo.App.1999). " "Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion." " Armstrong, 990 S.W.2d at 64 (quoting Gilroy"Sims and Assocs. v. City of St. Louis, 697 S.W.2d 567, 569 (Mo.App.1985)). In deciding whether a case is moot, an appellate court is allowed to consider matters outside the record. Bratton v. Mitchell, 979 S.W.2d 232, 236 (Mo.App.1998); Wilson, 955 S.W.2d at 812. | In terms of justiciability, a cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. | Will a case be moot if a judgment rendered has no practical effect upon an existing controversy? | 035369.docx | LEGALEASE-00146073-LEGALEASE-00146074 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6106 | Goss v. Battle, 111 N.C. App. 173 | 307A+44.1 | The determination of what sanction, if any, should be imposed under Rule 41(d) and G.S. 1"109 lies in the sound discretion of the trial court. Rivenbark, 93 N.C.App. at 420, 378 S.E.2d at 200; Thompson, 109 N.C.App. at 93, 426 S.E.2d at 281. Likewise, the determination of what, if any, sanction to be imposed under Rule 37(d) lies in the sound discretion of the trial court. Plumbing Co. v. Associates, 37 N.C.App. 149, 153, 245 S.E.2d 555, 557 (1978). In the context of Rule 41 (d) and G.S. 1"109, this Court requires the trial court to first consider less severe sanctions. The same policy requires the trial court consider less severe sanctions before dismissing pursuant to Rule 37(d). | Determination of what sanction, if any, is to be imposed under rule authorizing trial court to impose sanctions for failure to comply with order or to permit discovery, lies in sound discretion of trial court. Rules Civ.Proc., Rule 37(d), G.S. S 1A-1. | "Is the determination of what sanction, to be imposed under rule authorizing the trial court to impose sanctions for failure to comply with the order or to permit discovery, lie in the sound discretion of trial court?" | 035504.docx | LEGALEASE-00146684-LEGALEASE-00146685 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 6107 | Parfi Holding AB v. Mirror Image Internet, 954 A.2d 911 | 307A+563 | When a party makes materially misleading statements to the court in order to gain an advantage, a court has "clear" authority to dismiss a plaintiff's action for failure to comply with its Rules. This "is an inherent power of the Trial Court arising from the control necessarily vested in the Court to manage its own affairs and to achieve the orderly and expeditious disposition of its business." This authority is consistent with the U.S. Supreme Court's interpretation of the inherent authority of federal courts to sanction bad-faith conduct, especially when the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." Moreover, the Court of Chancery Rules specifically authorize stringent sanctions where parties have committed fraud on the court. Rule 60(b) authorizes the court to "set aside a judgment for fraud on the court" in the interests of "the integrity of the judicial process." | When a party makes materially misleading statements to the court in order to gain an advantage, that court has clear authority to dismiss a plaintiff's action for failure to comply with its Rules. | Does that court have authority to dismiss a plaintiff's action for failure to comply with its Rules? | 035520.docx | LEGALEASE-00145754-LEGALEASE-00145755 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6108 | Kedy v. A.W. Chesterton Co., 946 A.2d 1171 | 106+40.11(9) | Before embarking on a forum non conveniens inquiry, a court must determine the existence of proper jurisdiction and venue. See Gulf Oil Corp., 330 U.S. at 504, 67 S.Ct. 839 ("the doctrine of forum non conveniens can never apply if there is an absence of jurisdiction or mistake of venue"). A court never can apply forum non conveniens once it determines that jurisdiction is lacking. Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 549 U.S. 422, """", 127 S.Ct. 1184, 1193, 167 L.Ed.2d 15 (2007). Nevertheless, a court may "dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Id. at 1192. Such a scenario occurs, for example, when discovery concerning personal jurisdiction would burden a defendant with expense and delay for "scant purpose" because a court would inevitably dismiss on the basis of forum non conveniens. Id. at 1194. However, in most cases, when a court can "readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." Id. | In most cases, when a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground, rather than forum non conveniens. | "When a court can readily determine that it lacks jurisdiction over the cause or the defendant, would the proper course be to dismiss on that ground?" | 035532.docx | LEGALEASE-00146142-LEGALEASE-00146143 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6109 | MBIA Ins. Corp. v. Countrywide Home Loans, 34 Misc. 3d 895 | 307A+683 | CPLR 3211(b) states that "[a] party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." When moving to dismiss an affirmative defense, the plaintiff bears the burden of demonstrating that the affirmative defense is without merit as a matter of law because it either does not apply under the factual circumstances of the case or fails to state a defense. Bank of America, N.A. v. 414 Midland Ave. Assocs., LLC, 78 A.D.3d 746, 748, 911 N.Y.S.2d 157 (2nd Dep't 2010). | When moving to dismiss an affirmative defense, the plaintiff bears the burden of demonstrating that the affirmative defense is without merit as a matter of law because it either does not apply under the factual circumstances of the case or fails to state a defense. McKinney's CPLR 3211(b). | What would a plaintiff have to demonstrate when moving to dismiss affirmative defense? | 036303.docx | LEGALEASE-00146676-LEGALEASE-00146677 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6110 | Giers Imp. Corp. v. Inv. Serv., 235 S.W.2d 355 | 268+956(1) | As was true of the city which had framed and adopted a charter under the provisions of Section 16, Article IX, Constitution of 1875, supra, so it must be true of the City of University City which has framed and adopted a charter pursuant to Section 19, Article VI of the Constitution of 1945, supra. The charter adopted presents a complete system of local self-government. Plaintiffs-appellants are correct in urging that the power to tax is a governmentalfunction inherent in the State (more precisely stated, "inherent in the sovereign people of the State"), exercised by the legislature subject to constitutional limitation. But there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. In the case of a city organized under general law the delegation is by statute. A city, the people of which have framed and adopted a charter under direct constitutional authority, may exercise such powers of local self-government, including taxation, as the people of the city have delegated to it by charter, subject to constitutional limitation. This is because the sovereign people of the State by their Constitution have set over, transferred or granted to the people of the city a part of the State legislative power. The part so granted is the legislative power to frame and adopt a charter for local self-government. Hence it is said charter provisions ("consistent with and subject to the Constitution and laws of the state") have the force and effect of enactments of the legislature. McGhee v. Walsh, 246 Mo. 266, 155 S.W. 445. See also Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498; Troost Ave. Cemetery Co. v. Kansas City, 348 Mo. 561, 154 S.W.2d 90; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195; Mullins v. Kansas City, 268 Mo. 444, 188 S.W. 193. In framing and adopting a charter, what did the people of the City of University City say the City could do? | The power to tax is a governmental function inherent in the state and exercised by legislature subject to constitutional limitation, but there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. | Do the state department exercising taxing power exercise purely governmental functions? | 045873.docx | LEGALEASE-00146293-LEGALEASE-00146294 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6111 | Stoker v. Workers' Comp. Fund of Utah, 889 P.2d 409 | 413+2 | The Workers' Compensation Act is a comprehensive statutory scheme that provides remedies for injuries to workers occurring in the course of their employment, irrespective of fault, in lieu of common law tort actions. The Act provides temporary total disability benefits, " 35-1-65; temporary partial disability benefits, " 35-1-65.1; permanent partial and permanent total disability benefits, " 35-1-81; and medical expenses for injured employees, " 35-1-81, as well as certain other benefits. These remedies, whether viewed individually or together, are not analogous to an ordinary lump-sum judgment that the common law provides for personal injury actions. Not only may benefits be paid over a period of time rather than in a lump-sum judgment, but an award of benefits does not generally have the res judicata effect of a judgment. | Workers' Compensation Act is comprehensive statutory scheme that provides remedies for injuries to workers occurring in course of their employment, irrespective of fault, in lieu of common-law tort actions. U.C.A.1953, 35-1-1 et seq. | Is the statutory scheme of the Workers Compensation Act in lieu of common law tort actions? | 048250.docx | LEGALEASE-00145605-LEGALEASE-00145606 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6112 | Hartford Fire Ins. Co. v. Tucker, 3 Va. App. 116 | 413+2 | Questions between the insurer and the employer or another insurer do not "arise under" the Act except insofar as they affect the rights of an injured employee. Code " 65.1-92. When the rights of the claimant are not at stake, the Act clearly leaves the litigants to their common law remedies, with the pleading requirements, broader discovery and the more stringent rules of evidence not applicable under the Act. Dillard v. Industrial Commission, 347 F.Supp. 71, 73 (E.D.Va.1972), vacated on other grounds, 416 U.S. 783, 94 S.Ct. 2028, 40 L.Ed.2d 540 (1974). We find no error in the Commission's denial of jurisdiction. | When rights of a claimant are not at stake, Workers' Compensation Act clearly leaves litigants to their common-law remedies, with pleading requirements, broader discovery, and more stringent rules of evidence not applicable under the Act. Code 1950, S 65.1-1 et seq. | "When the rights of claimants are not at stake, does the Workers Compensation Act leave litigants to their common law remedies?" | Workers Compensation - Memo #501 ANC.docx | ROSS-003300465-ROSS-003300466 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 6113 | Comm'r Of Prob. v. Adams, 65 Mass. App. Ct. 725 | 307A+563 | It is well established that, upon a finding of fraud on the court, judges may enter default judgments, dismiss claims, or dismiss entire actions. See Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 418 Mass. at 598"599, 638 N.E.2d 29; Munshani v. Signal Lake Venture Fund II, LP, 60 Mass.App.Ct. at 721, 805 N.E.2d 998. In cases where an attorney has committed fraud on the court, judges have used their inherent authority to suspend or disbar the attorney. See Matter of Neitlich, 413 Mass. at 423"425, 597 N.E.2d 425; Matter of Otis, 438 Mass. 1016, 1017, 782 N.E.2d 502 (2003). Common to these cases is the notion that judges have the authority to fashion remedies that will protect the integrity of the courts, and that will discourage the public from attempting to use the courts to perpetuate fraudulent schemes. See Munshani v. Signal Lake Venture Fund II, LP, supra. | Upon a finding of fraud on the court, judges may enter default judgments, dismiss claims, or dismiss entire actions. | "Upon a finding of fraud on the court, can judges enter default judgments, dismiss claims, or dismiss entire actions?" | Pretrial Procedure - Memo # 7033 - C - SKG.docx | ROSS-003286083-ROSS-003286084 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6114 | W. Auto Supply Co. v. Banner, 288 S.W.2d 402 | 307A+552 | Plaintiff is correct in asserting that a cause should not be dismissed as moot where it is disclosed that public interest is involved, and this is true even though plaintiff has received the precise relief sought as the result of defendant's voluntary act. Such contention finds support in the expressions of the courts of this jurisdiction. State ex rel. Henderson v. Cook, 353 Mo. 272, 182 S.W.2d 292; Burke v. Coleman, 356 Mo. 594, 202 S.W.2d 809; Morrison v. State, Mo.App., 252 S.W.2d 97; State ex rel. Jones v. Wurdeman (en banc), 309 Mo. 408, 274 S.W. 407; Civic League of St. Louis v. St. Louis, Mo., Mo.Sup., 223 S.W. 891. | A cause should not be dismissed as moot where it is disclosed that public interest is involved, even though plaintiff has received precise relief sought as result of defendant's voluntary act. | Should a cause be dismissed as moot where it is disclosed that public interest is involved? | Pretrial Procedure - Memo # 7903 - C - KG.docx | ROSS-003327299-ROSS-003327300 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6115 | United States v. Chandler, 72 F. Supp. 230 | 384+2 | At the outset it is plain that the Constitutional definition of treason does not expressly place any territorial limitation in respect of the crime of treason. Article III, Section 3. Treasonable acts endanger the sovereignty of the United States. It has never been doubted that Congress has the power to punish an act committed beyond the territorial jurisdiction of the United States which is directly injurious to the government of the United States. United States v. Bowman, 260 U.S. 94, 97, 43 S.Ct. 39, 67 L.Ed. 149. It is true as stated in United States v. Rodgers, 150 U.S. 249, 264, 14 S.Ct. 109, 37 L.Ed. 1071, that "as a general principle the criminal laws of a nation do not operate beyond its territorial limits" but, as stated in United States v. Bowman, supra, 260 U.S. at page 97, 43 S.Ct. at page 41, 67 L.Ed. 149: "The necessary locus, when not specifically defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. This court believes Congress did define the locus of the crime of treason without violating in any manner the Constitutional definition of treason. Section 1 of the Criminal Code, 18 U.S.C.A. " 1, reads as follows: "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason." This statute, if given a natural meaning, seems directed at the crime of treason wherever the treasonable acts are committed, whether territorially or extra-territorially. If we assume, as defendant argues, that the section contains no qualification as to the locale of the adherence and the addition of the words "within the United States or elsewhere define the locality only of "giving them aid and comfort", this is not sufficient basis for an implication that the framers intended that adherence must be within the | The statute declaring that whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason, is directed at crime of treason wherever the treasonable acts are committed, whether territorially or extra-territorially, and in so defining the locus of the crime of treason does not violate the constitutional definition thereof. 18 U.S.C.A. S 2381; U.S.C.A.Const. art. 3, S 3. | Does giving aid and comfort to an enemy outside the United States constitute treason? | 11435.docx | LEGALEASE-00094287-LEGALEASE-00094288 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6116 | Badette v. Rodriguez, 2014 IL App (1st) 133004 | 307A+686.1 | A motion to dismiss pursuant to section 2"619 of the Code admits the legal sufficiency of a claim but asserts affirmative matter that defeats the claim. Doe v. Diocese of Dallas, 234 Ill.2d 393, 396, 334 Ill.Dec. 649, 917 N.E.2d 475 (2009). Sections 2"619(a)(1) through (a)(9) provide a list of such affirmative matter. 735 ILCS 5/2"619(a)(1)"(9) (West 2012). Relevant here, section 2"619(a)(6) allows for the involuntary dismissal of a claim when "the claim set forth in the plaintiff's pleading has been released." 735 ILCS 5/2"619(a)(6) (West 2012). All facts in the pleadings, depositions, and affidavits found in the record may be considered upon review. Doe, 234 Ill.2d at 396, 334 Ill.Dec. 649, 917 N.E.2d 475. Pleadings and supporting documents must be interpreted by the court in the light most favorable to the nonmoving party. Porter v. Decatur Memorial Hospital, 227 Ill.2d 343, 352, 317 Ill.Dec. 703, 882 N.E.2d 583 (2008). If a defendant satisfies its initial burden of presenting affirmative matter defeating a plaintiff's complaint, the burden then shifts to the plaintiff to show that the asserted defense is unfounded or leaves unresolved issues of material fact as to an essential element. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). We review a motion to dismiss brought pursuant to section 2"619 of the Code de novo. Czarobski v. Lata, 227 Ill.2d 364, 369, 317 Ill.Dec. 656, 882 N.E.2d 536 (2008). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of a claim but asserts affirmative matter that defeats the claim. S.H.A. 735 ILCS 5/2-619(a). | Will a motion to dismiss based upon certain defects or defenses admit the legal sufficiency of a claim or assert affirmative matter that defeats the claim? | Pretrial Procedure - Memo # 7868 - C - SU.docx | ROSS-003286789-ROSS-003286790 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6117 | D & S Builders v. Mickey Const. Co., 524 So. 2d 245 | 307A+590.1 | Abandonment proceedings in accordance with Article 561 should be given a liberal interpretation, and any action or step taken by a plaintiff to move his case toward judgment should be considered. Michel v. Home Town Supermarket, Inc., 493 So.2d 142 (5th Cir.1986); Acosta v. Hepplewhite Home, Inc., 450 So.2d 770 (5th Cir.1984). | Abandonment proceedings should be given liberal interpretation, and any action or step taken by plaintiff to move case toward judgment should be considered. LSA-C.C.P. art. 561. | Will courts give a liberal interpretation of statute related to abandonment proceeding in favor of any action or step taken by plaintiff to move his case forward? | 035585.docx | LEGALEASE-00147662-LEGALEASE-00147663 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 6118 | Adams ex rel. Andrews v. Kallman, 113 N.W.2d 773 | 307A+552 | Therein, this Court stated that "The questions involved are moot questions, and the case becomes a moot case, which we must decline to consider." We reiterate the rule that when it appears by the record that action by the Court would be futile, by reason of the lapse of time, resulting in a change in circumstances, the case will be dismissed. Schouwink v. Ferguson, 191 Mich. 284, 157 N.W. 726. See, also, LaBello v. Victory Pattern Shop, Inc., 351 Mich. 598, 88 N.W.2d 288. | When it appears by record that action by court would be futile, by reason of lapse of time, resulting in a change in circumstances, the case will be dismissed. | "Will a case be dismissed when it appears by record that action by court would be futile, by reason of lapse of time?" | 035610.docx | LEGALEASE-00147551-LEGALEASE-00147552 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6119 | 527 S. Clinton v. Westloop Equities, 403 Ill. App. 3d 42 | 307A+679 | A section 2"619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. Cohen v. McDonald's Corp., 347 Ill.App.3d 627, 632, 283 Ill.Dec. 451, 808 N.E.2d 1 (2004). Such a motion should be granted if, after construing the pleadings and supporting documents in a light most favorable to the nonmoving party, the court finds that no set of facts can be proved upon which relief can be granted. Webb v. Damisch, 362 Ill.App.3d 1032, 1037, 299 Ill.Dec. 401, 842 N.E.2d 140 (2005). | A motion for involuntary dismissal admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim; such a motion should be granted if, after construing the pleadings and supporting documents in a light most favorable to the nonmoving party, the court finds that no set of facts can be proved upon which relief can be granted. S.H.A. 735 ILCS 5/2-619. | Can the court construe the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party? | Pretrial Procedure - Memo # 7516 - C - NS.docx | ROSS-003286213-ROSS-003286214 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 6120 | A.F.P. Enterprises v. Crescent Pork, 243 Ill. App. 3d 905 | 307A+561.1 | Affirmative matter as used in section 2-619(a)(9) of the Code of Civil Procedure (Code) is a type of defense that either negates an alleged cause of action completely or refutes conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. By contrast, where the affirmative matter is merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint, section 2-619(a)(9) should not be used. Consumer Electric Co. v. Cobelcomex, Inc. (1986), 149 Ill.App.3d 699, 703, 103 Ill.Dec. 135, 501 N.E.2d 156. | "Affirmative matter" as used in rule governing involuntary dismissal based on certain defects or defenses, means type of defense that either negates alleged cause of action completely or refutes conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from complaint; where affirmative matter is merely evidence upon which defendant expects to contest ultimate fact stated in complaint, rule should not be used. Ill.Rev.Stat.1991, ch. 110, P 2-619(a)(9). | Does an affirmative matter include evidence upon which defendant expects to contest an ultimate fact stated in the complaint? | Pretrial Procedure - Memo # 7525 - C - SKG.docx | ROSS-003286234-ROSS-003286235 | SA, Sub | 0.14 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6121 | In re Cty. Treasurer, 2015 IL App (1st) 133693 | 307A+561.1 | A section 2"619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. Krilich v. American National Bank & Trust Co. of Chicago, 334 Ill.App.3d 563, 570, 268 Ill.Dec. 531, 778 N.E.2d 1153 (2002). Affirmative matter "refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." | "Affirmative matter" supporting a motion to dismiss based upon defects or defenses refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. S.H.A. 735 ILCS 5/2-619. | Would an affirmative matter negate the cause of action completely? | 11016.docx | LEGALEASE-00094093-LEGALEASE-00094094 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 6122 | Selective Ins. Co. of S.C. v. Cherrytree Companies, 2013 IL App (3d) 120959 | 307A+687 | A motion to dismiss brought pursuant to section 2"619 of the Code of Civil Procedure (735 ILCS 5/2"619 (West 2012)) admits the legal sufficiency of the complaint it attacks and asserts a defense that allegedly defeats the complaint's allegations. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts." Id. We review a section 2"619 dismissal under the de novo standard. Id. | When ruling on a motion for involuntary dismissal based on certain defects or defenses, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them, but a court cannot accept as true mere conclusions unsupported by specific facts. | "Can the legal sufficiency of the complaint be admitted under the ""involuntary dismissal based upon certain defects or defenses"" statute?" | 11263.docx | LEGALEASE-00094005-LEGALEASE-00094006 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 6123 | Fleming v. Barnett Bank of E. Polk Cty., 490 So. 2d 126 | 307A+590.1 | The trial court concluded that it had the inherent authority to dismiss the action for lack of due diligence under Shalabey v. Memorial Hospital of the South Broward Hospital District, 253 So.2d 712 (Fla. 4th DCA 1971). Inherent authority to dismiss an action for lack of due diligence no longer exists. See, American Salvage & Jobbing Co., Inc. v. Salomon, 367 So.2d 716 (Fla. 3d DCA 1979). There is an exception to the extent that it is authorized by Florida Rule of Civil Procedure 1.420(e). However, under that exception the parties are entitled to reasonable notice by the court of its proposed action. Here the trial court did not act on its own motion and the matter was heard upon the defendant's premature motion and notice. The concern which prompted our en banc hearing is the principle that record activity sufficient to preclude dismissal must be an affirmative act that is reasonably calculated to hasten the suit to judgment. Harris v. Winn Dixie Stores, Inc., 378 So.2d 90 (Fla. 1st DCA 1979). A motion to dismiss for failure to prosecute which is premature does not fall within this category, it does not achieve the termination of the litigation and, for purposes of the rule, the premature motion is a nullity. We therefore recede from the statement in Johnson v. Mortgage Investors of Washington, supra, that a prematurely-filed motion to dismiss for lack of prosecution constitutes record activity. Accordingly, we reverse and direct that the case be reinstated. | Record activity sufficient to preclude dismissal must be an affirmative act that is reasonably calculated to hasten the suit to judgment. | Should a record activity sufficient to preclude dismissal be an affirmative act that is reasonably calculated to hasten the suit to judgment? | 036114.docx | LEGALEASE-00148044-LEGALEASE-00148045 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 6124 | Patrick Eng'g v. City of Naperville, 2012 IL 113148 | 307A+687 | The City's motion to dismiss Patrick Engineering's third amended complaint was brought under section 2"619.1 of the Code of Civil Procedure, which allows a party to file a motion combining a section 2"619 motion to dismiss with a section 2"615 motion to dismiss. See 735 ILCS 5/2"619.1 (West 2010). A section 2"615 motion to dismiss tests the legal sufficiency of a complaint. Vitro v. Mihelcic, 209 Ill.2d 76, 81, 282 Ill.Dec. 335, 806 N.E.2d 632 (2004). A section 2"619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it. King v. First Capital Financial Services Corp., 215 Ill.2d 1, 12, 293 Ill.Dec. 657, 828 N.E.2d 1155 (2005). Specifically, section 2"619(a)(9) permits involuntary dismissal where the claim is barred by "other affirmative matter." 735 ILCS 5/2"619(a)(9) (West 2010). When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them (Doe v. Chicago Board of Education, 213 Ill.2d 19, 23"24, 289 Ill.Dec. 642, 820 N.E.2d 418 (2004)), but a court cannot accept as true mere conclusions unsupported by specific facts (Pooh"Bah Enterprises, Inc. v. County of Cook, 232 Ill.2d 463, 473, 328 Ill.Dec. 892, 905 N.E.2d 781 (2009)). See also Hanks v. Cotler, 2011 IL App (1st) 101088, 17, 355 Ill.Dec. 314, 959 N.E.2d 728 (stating that a motion to dismiss under sections 2"615 and 2"619 admits well-pleaded facts, but that "conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted" (internal quotation marks omitted)). Our review of a dismissal under either section 2"615 or 2"619 is de novo. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). We turn to the three counts before us. | When ruling on motions to dismiss, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them; but a court cannot accept as true mere conclusions unsupported by specific facts. | Will the court accept all well-pleaded facts and any reasonable inferences drawn as true? | 036236.docx | LEGALEASE-00147602-LEGALEASE-00147603 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6125 | In re Cty. Collector, 2016 IL App (3d) 150712 | 307A+686.1 | Section 2"619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2"619 (West 2014). The statute's purpose is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003); Advocate Health & Hospitals Corp. v. Bank One, N.A., 348 Ill.App.3d 755, 759, 284 Ill.Dec. 710, 810 N.E.2d 500 (2004). In a section 2"619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the non moving party's claim. | On a motion for involuntary dismissal due to certain defects or defenses, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. S.H.A. 735 ILCS 5/2-619. | Would a moving party admit the legal sufficiency of the complaint on a motion for involuntary dismissal due to certain defects or defenses? | 036326.docx | LEGALEASE-00147644-LEGALEASE-00147645 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6126 | Effertz v. N. Dakota Workers' Comp. Bureau, 481 N.W.2d 223 | 413+2 | So too, all rights and obligations under the North Dakota Workers' Compensation Act are wholly statutory. The legislature may change those rights and obligations and the legislature may afford remedies for violations of workers' compensation statutes or may not. At any rate, common-law contract principles cannot be used to expand either the statutory rights of the claimant or the statutory obligations of the Bureau. NDCC " 1"01"06 [there is no common law where the law is declared by code]. We conclude that the district court correctly concluded that Effertz cannot maintain a breach-of-contract claim against the Bureau. | Because all rights and obligations under state Workers' Compensation Act are statutory, common-law contract principles cannot be used to expand either rights of claimant or obligations of Workers' Compensation Bureau. NDCC 1-01-06, 65-01-01 et seq. | Can common-law contract principles be used to expand the statutory rights and obligations under Workers Compensation Act? | 11446.docx | LEGALEASE-00094236-LEGALEASE-00094237 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6127 | Reynolds v. Indus. Claim Appeals Office of State of Colo., 794 P.2d 1080 | 413+2 | The right to disability benefits is not a fundamental right, Claimants in re Death of Kohler, 671 P.2d 1002 (Colo.App.1983), see Olson v. Public Service Co., 190 Colo. 512, 549 P.2d 780 (1976), and the legislative body has broad discretion in implementing social programs designed to promote public health, safety, and welfare. See Anaya v. Industrial Commission, 182 Colo. 244, 512 P.2d 625 (1973). If a legislative classification neither impinges upon a fundamental right nor involves a suspect class, the constitutional guarantee of equal protection requires only that the classification bear a rational relationship to a permissible governmental purpose. Bellendir v. Kezer, 648 P.2d 645 (Colo.1982). | Right to disability benefits is not fundamental, and legislative body has broad discretion in implementing social programs designed to promote public health, safety, and welfare. | Does the legislative body or the General Assembly has broad discretion in implementing social programs or social welfare legislation? | 11460.docx | LEGALEASE-00094711-LEGALEASE-00094712 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6128 | Landon v. Plasencia, 459 U.S. 21 | 24+116 | This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative. See, e.g., United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950); Nishimura Ekiu v. United States, 142 U.S. 651, 659-660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892). Our recent decisions confirm that view. See, e.g., Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977); Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). As we explained in Johnson v. Eisentrager, 339 U.S. 763, 770, 70 S.Ct. 936, 939, 94 L.Ed. 1255 (1950), however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly. | Once an alien gains admission to the United States and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly. | Does the constitutional status of an alien change when he gains admission into the United States and begins to develop ties that go with permanent residence? | Aliens_Immigration and_1NSZYIJeeQna5BzG3W-U2xl4qZioVLNXI.docx | ROSS-000000288-ROSS-000000289 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6129 | Parvataneni v. E*Trade Fin. Corp., 967 F. Supp. 2d 1298 | 25T+134(1) | Mr. Parvataneni argues that parties cannot, by private consent, agree to waive rights created by the state under PAGA. (Pl.'s Mot. at 13.) However, under the Supremacy Clause, the FAA is "the supreme law of the land." U.S. Const. art. VI. Further, in the wake of Concepcion, an arbitration agreement that denies a plaintiff a right of collective action is still a valid agreement. See 131 S.Ct. at 1750"51. Thus, it follows that an arbitration agreement that denies a plaintiff the right to pursue a representative PAGA claim is still a valid agreement. See Morvant v. P.F. Chang's China Bistro, Inc., 870 F.Supp.2d 831, 846 (N.D.Cal.2010) (holding that "the Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general"); cf. Valle v. Lowe's HIW, Inc., No. 11"1489"SC, 2012 WL 4466523, 3 (N.D.Cal. Aug. 30, 2012) (upholding arbitrator's decision to dismiss plaintiff's representative PAGA claims but permitting him to arbitrate his PAGA claims on an individual basis). | An arbitration agreement that denies a plaintiff the right to pursue a representative Private Attorneys General Act (PAGA) claim under California law is still a valid agreement. West's Ann.Cal.Labor Code S 2698 et seq. | Is an arbitration agreement that denies a plaintiff the right to pursue a representative Private Attorneys General Act (PAGA) claim a valid agreement? | 007825.docx | LEGALEASE-00148860-LEGALEASE-00148861 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6130 | Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 | 25T+210 | "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002) (citation and quotation marks omitted). Even though there is that presumption in favor of arbitration, "[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419"20 (11th Cir.1990). That means "the parties will not be required to arbitrate when they have not agreed to do so." Id. at 1419; see also Waffle House, 534 U.S. at 294, 122 S.Ct. at 764 ("Arbitration under the FAA is a matter of consent, not coercion." (quotation marks and alteration omitted)); Telecom Italia, 248 F.3d at 1114 (" "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." " (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960))). | Even though there is a presumption in favor of arbitration, courts determining the scope of arbitrable issues are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties. | Can courts twist the language of a contract to achieve a result that is favored by federal policy? | Alternative Dispute Resolution - Memo 766 - RK_58099.docx | ROSS-003293109-ROSS-003293110 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6131 | Nino v. Jewelry Exch., 609 F.3d 191 | 25T+182(2) | As we now explain, we further conclude that the District Court erred in determining that DI did not waive its right to compel arbitration after litigating this case for fifteen months. "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068"69 (3d Cir.1995) (internal quotations and citations omitted).Notwithstanding the preference for arbitration, however, "a court may refuse to enforce an arbitration agreement where, for example, "the alleged defaulting party has acted inconsistently with the right to arbitrate," " Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 981 (2d Cir.1996) (quoting St. Mary's Medical Ctr. | Consistent with the strong preference for arbitration in federal courts, waiver of right to compel arbitration is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery. | What are the circumstances in which waiver of the right to arbitrate can normally be found? | 007882.docx | LEGALEASE-00148939-LEGALEASE-00148941 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6132 | Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285 | 25T+182(2) | Conoco has clearly availed itself of certain discovery proceedings not available in arbitration. However, the undersigned finds that the limited amount of discovery conducted does not support a finding of waiver in this case without some showing of actual prejudice to Plaintiffs, which will be analyzed in more detail below. In fact, some of the discovery conducted may even prove helpful to both parties in the arbitration. See Tenneco Resins, Inc., 770 F.2d at 421 ("[W]hen only a minimal amount of discovery has been conducted, which may be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon the prejudice to the party opposing the motion to stay litigation."). Defendant notes that the depositions of Plaintiffs were conducted in an effort to comply with the discovery cut-off deadline and occurred after Defendant had filed its motion to stay and compel arbitration. Limited interrogatories and requests for production have been exchanged. The undersigned declines to infer a waiver of the right to arbitrate based upon the occurrence of limited discovery in this case otherwise unavailable in arbitration absent a showing of actual prejudice to Plaintiffs. See Shahan, 932 P.2d at 1349 ("[L]imited discovery, even though generally unavailable in arbitration, fails to show sufficient prejudice to warrant finding waiver.") | Waiver of right to arbitrate would not be inferred, based upon occurrence of limited discovery otherwise unavailable in arbitration, absent showing of actual prejudice; some discovery conducted may have proved helpful to both parties in arbitration, and depositions were conducted in effort to comply with discovery cut-off deadline and occurred after motion to stay and compel arbitration had been filed. | Can a court infer waiver based upon prejudice to the party opposing the motion to stay litigation pending arbitration when only a minimal amount of discovery has been conducted? | Alternative Dispute Resolution - Memo 778 - RK.docx | LEGALEASE-00037911-LEGALEASE-00037913 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 6133 | Wright v. Prudential Ins. Co. of Am., 551 S.W.2d 697 | 34+76 | Seeking to avoid the literal effect of s 770(b), appellant insists that since appellee paid the insurance proceeds to the parents of Jimmy Ray Wright earlier than one year after their son's death, appellee can not rely on the payment as a bar to appellant's claim. There is nothing in Section 770(b) that requires the insurer to wait one year before paying the policy proceeds in order to rely upon the payment as a bar to recovery by any other person. It states that, if no claim is made within the year by a person who is otherwise eligible, then payment to another eligible beneficiary claiming within the year constitutes a bar to recovery by any other statutory beneficiary who has precedence over the insured's parents, when the beneficiary's claim is filed within the statutorily prescribed one year period. It takes both the payment of benefits and the passage of one year from the date of death of the insured without the filing of a claim by a beneficiary under the Act to discharge appellant's liability under the group policy of life insurance. Cf. Coomer v. United States, 471 F.2d 1 (5th Cir. 1973). Here, no claim was filed by a beneficiary other than the insured's parents within the requisite one year period; consequently, payment to the parents was effective to discharge appellant's liability for payment of benefits provided in the group life insurance policy. | It takes both payment of benefits and passage of one year from date of death of insured without filing of claim by beneficiary under the Servicemen's Group Life Insurance Act to discharge insurer's liability under group life policy. 38 U.S.C.A. S 770(b). | When will the appellants liability under the group life insurance policy be discharged? | Armed Services - Memo 321 - RK_58135.docx | ROSS-003310210-ROSS-003310211 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6134 | Triffin v. Dillabough, 448 Pa. Super. 72 | 8.30E+282 | By way of summary, we hold that the money orders sued upon are negotiable instruments. We further hold that appellant has the rights of a holder in due course and is entitled to payment on the instruments. Our conclusion is consistent with the purpose of the Uniform Commercial Code "to meet the contemporary needs of a fast moving commercial society," Arcuri v. Weiss, 198 Pa.Super. 506, 510, 184 A.2d 24, 26 (1962), and to "enhance the marketability of negotiable instruments [allowing] bankers, brokers, and the general public to trade in confidence." Manor Bldg. Corp. v. Manor Complex Assoc. Ltd., 435 Pa.Super. 246, 253, 645 A.2d 843, 846 (1994) (en banc). Furthermore, while American Express received no consideration for its liability on the instruments, our result is consistent with the established policy in Pennsylvania that "as between two innocent parties ... liability should be borne by the one ... who made the loss possible." Weiner v. The Pennsylvania Co. for Insurances on Lives and Granting Annuities, 160 Pa.Super. 320, 325, 51 A.2d 385, 388 (1947). Accord: Garden Check Cashing Serv., Inc. v. Chase Manhattan Bank, 46 Misc.2d 163, 258 N.Y.S.2d 918 (1965). | Purpose of Uniform Commercial Code (UCC) is to meet contemporary needs of fast-moving commercial society, and to enhance marketability of negotiable instruments, allowing bankers, brokers and general public to trade in confidence. | Was the Commercial Code formed to enhance the marketability of negotiable instruments? | 010551.docx | LEGALEASE-00148552-LEGALEASE-00148553 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6135 | Bank of Conway v. Stary, 51 N.D. 399 | 83E+433(1) | An accommodation indorser, who indorses a promissory note before delivery, under sections 6914, 6948, 6949, C. L. 1913 (sections 29, 63, and 64 of the Uniform Negotiable Instrument Law), is not a surety within the provisions of chapter 85 of the Civil Code (sections 6675 to 6689, C. L. 1913) so as to have the right, under section 6683 thereof, to require the creditor to proceed against the principal or to pursue any other remedy in his power which the surety cannot himself pursue, and which will lighten his burden, with resulting exoneration from liability if the creditor fails, refuses, or neglects to sue the principal or enforce payment by the principal in appropriate legal proceedings. Whether, and, if he is, under what circumstances and to what extent, an accommodation indorser or maker of a promissory note may be entitled to any of the rights and remedies of sureties under chapter 85, supra, is not decided, because that question is not properly involved in this proceeding. | Accommodation indorser, indorsing note before delivery under Comp. Laws 1913, SS 6914, 6948, 6949, is not surety within sections 6675-6689, so as to have right under section 6683 thereof to require creditor, on penalty of exoneration of surety, to proceed against principal or to pursue any other remedy in his power which surety cannot himself pursue. | Who is an accommodation indorser? | Bills and Notes- Memo 647-IS_58218.docx | ROSS-003293686-ROSS-003293687 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6136 | Shapera v. Allegheny Cty., 344 Pa. 473 | 200+77(1) | Since, as already indicated, public highways are within the control of the commonwealth and counties and townships do not have any common-law power to build or improve roads, it is well settled that the statutory directions for their creation and abolishment must be strictly complied with. See Luzerne Township v. Fayette County, 330 Pa. 247, 249, 199 A. 327; Breisch v. Locust Mountain Coal Co., 267 Pa. 546, 551, 110 A. 242, 9 A.L.R. 1330. Section 916 of the Act of 1929 provides that "when the county commissioners shall resolve to exercise any of the powers conferred by any of the preceding sections they shall cause to be prepared surveys and plans of such road or highways, or such public highway showing the improvement proposed to be made, together with any proposed changes in existing public roads or highways, and they shall present such surveys and plans, together with their petition, on behalf of such county to the court of quarter sessions praying for authority to make such improvement." This section, which prescribes the procedure to be followed by the commissioners, clearly contemplates that the proceedings must designate, with reasonable certainty, the portions of the existing highway, if any, to be vacated as "unnecessary and useless"; otherwise it would be impossible to tell from the record what segments have ceased to be part of the public highway system as a result of the proceedings. | The statutory directions for the creation and abolishment of public highways must be strictly complied with, since such highways are within the control of the commonwealth, and counties and townships have no common-law power to build or improve roads. 16 P.S. $ 916. | Do counties have common-law power to improve roads? | Highway- Memo 197-ANM_57959.docx | ROSS-003294902-ROSS-003294903 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6137 | Cuka v. State, 80 S.D. 232 | 200+80 | However, in the absence of express statutory authorization otherwise, when the state acquires private property for highway right of way it merely acquires an easement and fee title remains in the abutting landowner. Edmison v. Lowry, 3 S.D. 77, 52 N.W. 583, 17 L.R.A. 275; Meek v. Meade County, 12 S.D. 162, 80 N.W. 182; Sweatman v. Bathrick, 17 S.D. 138, 95 N.W. 422; Henle v. Bodin, 54 S.D. 46, 222 N.W. 492. Ordinarily, proceedings for the establishment of a highway may be abandoned by public authorities any time prior to their consummation subject only to intervening or vested rights. 25 Am.Jur., Highways, " 33, p. 357. Upon abandonment or vacation of an established or proposed highway the land is relieved from the servitude created by the public way or proposed public way and possession reverts to the abutting owner. 25 Am.Jur., Highways, " 128, p. 424; 39 C.J.S. Highways " 137, p. 1073. | In absence of express statutory authorization otherwise, when state acquires private property for highway right of way it merely acquires easement and the title remains in abutting landowner. | What rights does the state acquire on a highway in the absence of a statutory authority? | 019070.docx | LEGALEASE-00148448-LEGALEASE-00148449 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6138 | Pioneer Bank & Tr. Co. v. Austin Bank of Chicago, 279 Ill. App. 3d 9 | 302+19 | Robbins' counterclaim is inconsistent. The allegations in paragraph 10 and 11 of count I assert a lack of knowledge regarding the forgery, but allegations in the remaining counts state the forgery as fact. A party may make inconsistent statements of fact in a pleading when the party is in doubt as to which statement is true. (735 ILCS 5/2"613(b) (West 1992).) However, when the nature of the statements are such that the plaintiff must know which statement is true, inconsistent pleading is improper; the pleading will be deemed ambiguous, with any doubt resolved against the pleader. (Church v. Adler (1953), 350 Ill.App. 471, 483, 113 N.E.2d 327, 333"33.) Moreover, in this case, if the signatures are not forged, Robbins would not be able to recover as against the counterdefendants because the Pioneer Bank would not be able to recover as against Robbins. Thus, given the record on appeal, the trial court did not err in construing the counterclaim as alleging the forgeries as fact. | When nature of statements are such that plaintiff must know which statement is true, inconsistent pleading is improper; pleading will be deemed ambiguous, with any doubt resolved against pleader. S.H.A. 735 ILCS 5/2-613(b). | Is inconsistent pleading improper when the nature of the statements are such that the plaintiff must know which statement is true? | Pleading - Memo 470 - RMM_58288.docx | ROSS-003279528-ROSS-003279529 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6139 | Plumpton v. Cont'l Acreage Dev. Co., 743 So. 2d 554 | 307A+590.1 | When a motion to dismiss for lack of prosecution is filed by the defendant the plaintiff must show either active prosecution within the preceding year or good cause for his failure to prosecute. See Chrysler Leasing Corp. v. Passacantilli, 259 So.2d 1, 4 (Fla.1972). In that regard, rule 1.410(e) of the Florida Rules of Civil Procedure provides:Rule 1.420. Dismissal of Actions.2 (e) Failure to Prosecute. All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court or otherwise has occurred for a period of one year shall be dismissed by the court ... unless ... a party shows good cause in writing at least five days before the hearing on the motion why the action should remain pending. | When motion to dismiss for lack of prosecution is filed by defendant, plaintiff must show either active prosecution within preceding year or good cause for his failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | What should a plaintiff show when motion to dismiss for lack of prosecution is filed by a defendant? | 035059.docx | LEGALEASE-00148334-LEGALEASE-00148335 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6140 | Willis v. Wetco, 853 P.2d 533 | 307A+681 | Upon consideration of the foregoing we hold that the superior court did not abuse its discretion in entering its Civil Rule 41(e) order dismissing Willis' counterclaim for failure to prosecute. Given the calendar clearing goal of Rule 41(e) as well as its additional goal of protecting parties against undue delay, and the fact that dismissals under the rule are without prejudice, we conclude that a trial court is not under a duty to explore meaningful alternatives before entering a dismissal without prejudice under Rule 41(e). The relevant inquiry on the court's part in cases of this nature is to determine whether any proceedings have been taken within the one year period, and if no proceedings have been taken for more than one year to determine whether or not good cause has been shown why the action should not be dismissed. | Trial court is not under duty to explore meaningful alternatives before entering dismissal without prejudice for failure to prosecute where function of rule is to clear court's calendar and to protect parties against undue delay; however, relevant inquiry for court is to determine whether any proceedings have been taken within one-year period, and if no proceedings have been taken for more than one year, to determine whether or not good cause has been shown why action should not be dismissed. Rules Civ.Proc., Rule 41(e); AS 09.10.240. | "Before ordering dismissal for want of prosecution, should a court initially inquire whether the party facing dismissal has engaged in any proceedings within the previous one-year period?" | 035091.docx | LEGALEASE-00148526-LEGALEASE-00148527 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 6141 | Barber v. Bozeman, 577 So. 2d 180 | 307A+590.1 | It is well accepted under the jurisprudence that "a step in the prosecution or defense" of a suit requires something more than a passive effort to keep a suit on the docket of the court, and requires a formal move or action before the court intended to hasten judgment, Augusta Sugar Co. v. Haley, 163 La. 814, 112 So. 731 (1927); Gros v. Houma Medical and Surgical Clinic, 343 So.2d 1115 (La.App. 1st Cir.), writ refused, 345 So.2d 504 (La.1977). | Step in the prosecution or defense of suit, as required to interrupt five-year abandonment period, requires something more than passive effort to keep suit on docket of court, and requires formal move or action before court intended to hasten judgment. LSA-C.C.P. art. 561. | Does a step in the prosecution or defense of suit require something more than passive effort? | 035775.docx | LEGALEASE-00148195-LEGALEASE-00148196 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6142 | Brister v. Manville Forest Prod., 749 So. 2d 881 | 13+70 | "An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La. C.C.P. art. 561. The policy underlying this requirement is to prevent protracted litigation which is filed for purposes of harassment or without serious intent to hasten the claim to judgment. Viesel v. Republic Ins. Co., 95-0244 (La.App. 4th Cir.11/30/95), 665 So.2d 1221, writ denied 95-3099 (La.2/16/96), 667 So.2d 1058. However, the law favors, and justice requires, that an action be maintained whenever possible so that the aggrieved party has his day in court. Jones v. Phelps, 95 0607 (La.App. 1st Cir.11/9/95), 665 So.2d 30, writ denied 95-2907 (La.2/2/96), 666 So.2d 1104. Article 561 is to be liberally interpreted and any action or step taken to move the case toward judgment should be considered; article 561 was not intended to dismiss those cases in which the plaintiff has clearly demonstrated that he does not intend to abandon the action. Id; Viesel v. Republic Ins. Co., supra; Sullivan v. Cabral, 32,454 (La.App.2d Cir.10/27/99), 745 So.2d 791. | Provision governing abandonment of action is to be liberally interpreted and any action or step taken to move the case toward judgment should be considered; provision was not intended to dismiss those cases in which the plaintiff has clearly demonstrated that he does not intend to abandon the action. LSA-C.C.P. art. 561. | Should any action or step taken to move a case toward judgment be considered? | Pretrial Procedure - Memo # 7785 - C - NS_57811.docx | ROSS-003321556-ROSS-003321557 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6143 | Williamson v. Vill. of Baskin, 339 So. 2d 474 | 135+4(2) | A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established. There was no such use or occupation in this case. | Person may maintain more than one residence, and fact that one is maintained for political purposes does not itself prevent residence from being actual and bona fide; intent to maintain residence is important factor, but intent alone does not establish bona fide residence; there must be actual, physical use or occupation of quarters for living purposes before residence is established. | Does maintaining a residence for political purposes prevent the residence from being actual or bona fide? | 014518.docx | LEGALEASE-00149153-LEGALEASE-00149154 | Condensed, SA | 0.15 | 0 | 1 | 0 | 1 | |
| 6144 | Barlow v. Cornwell, 125 A.2d 63 | 289+692 | It is true, as appellant says, that generally notice to, or knowledge of, an acting partner with respect to any matter relating to a transaction within the ordinary scope of the firm's business is notice or knowledge as to all the partners. This rule however is not without exception. It has been held that "Where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, in all such cases notice on his part is not equivalent to notice by them." Bienenstok v. Ammidown, 155 N.Y. 47, 49 N.E. 321, 324, quoting from Lindley on Partnership. When Frost requested appellant to mark his claim paid or satisfied, Frost was acting primarily in his own interest and not in the interest of the partnership. He was seeking the means of taking over the business and disclosure of the true facts to appellee would have defeated Frost's scheme. Under these circumstances Frost's knowledge cannot be imputed to appellee. | Generally notice to, or knowledge of, an acting partner with respect to any matter relating to a transaction within the ordinary scope of firm's business is notice or knowledge as to all the partners, however where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, notice on his part is not equivalent to notice by all partners. | Is knowledge by one partner with respect to any matter relating to a transaction within the ordinary scope of the partnership business considered knowledge to all partners? | 022568.docx | LEGALEASE-00149901-LEGALEASE-00149902 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 6145 | Dick v. Am. Motors Sales Corp., 14 Ohio App. 3d 322 | 307A+563 | The court then went on to examine and cite with approval cases recognizing the court's power to dismiss a case where the litigant fails to meet his duty of compliance with reasonable orders of the court, or to diligently prosecute his case, and affirmed the judgment of the district court. | Trial court has power to dismiss case where litigant fails to meet his duty of compliance with reasonable orders of the court or to diligently prosecute the case. | Does a trial court have power to dismiss a case where a litigant fails to meet his duty of compliance with reasonable orders of the court? | 034898.docx | LEGALEASE-00149983-LEGALEASE-00149984 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 6146 | Welch v. Henry, 305 U.S. 134 | 371+2001 | Second. The objection chiefly urged to the taxing statute is that it is a denial of due process of law because in 1935 it imposed a tax on income received in 1933. But a tax is not necessarily unconstitutional because retroactive. Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 326, 75 L.Ed. 809, and cases cited. Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute. | "Taxation" is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract, but it is a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. | Is taxation a way of apportioning the cost of government? | 045928.docx | LEGALEASE-00149370-LEGALEASE-00149371 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 6147 | United States v. Allegheny Cty., Pa., 322 U.S. 174 | 170B+3209(1) | "Where a federal right is concerned we are not bound by the characterization given to a state tax by state courts or Legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted." Carpenter v. Shaw, 280 U.S. 363, 367, 368, 50 S.Ct. 121, 123, 74 L.Ed. 478. | Where a federal right is concerned, the Supreme Court is not bound by the characterization given to a state tax by state courts or legislatures, or relieved of duty of considering the real nature of the tax and its effect upon the federal right asserted. | "Where a federal right is concerned, should the court consider the nature of the tax?" | 045938.docx | LEGALEASE-00149398-LEGALEASE-00149399 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 6148 | Solo v. Chrysler Corp., 408 Mich. 345 | 413+2 | It may be that the statutory safeguards in the workers' compensation legislation will make equitable relief unnecessary in a particular case. But they are only factors to be considered; they do not divest the court of its equitable powers altogether. | Though statutory safeguards found in workers' compensation legislation may make equitable relief unnecessary in a particular case, they do not divest the court of its equitable powers altogether. | Will the statutory safeguards in the workers' compensation legislation divest the court of its equitable powers? | 048404.docx | LEGALEASE-00149977-LEGALEASE-00149978 | SA, Sub | 0.22 | 0 | 0 | 1 | 1 | |
| 6149 | Innovative Data Sys. of Louisiana v. Ellender, 316 So. 2d 12 | 302+20 | For purposes of the exception of no cause of action, all well-pleaded facts in a petition must be taken as true, and if the petition sets forth a cause of action in any respect, the exception must be overruled. Burns v. Genovese, 254 La. 237, 223 So .2d 160 (1969); Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968). It a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Louisiana and Arkansas Railway Company et al. v. Goslin, 258 La. 530, 246 So.2d 852 (1971). Technical objections and harsh rules of pleading are not favored. Pleadings are to be liberally construed to yield as little as possible to technicality in order that the ends of justice may be served. Burns v. Genovese, supra; Lewis Machine and Welding Srvice, Inc. v. Amite Ready Mix Company et al., 148 So.2d 869 (La.App. 1 Cir. 1963). In a case such as this, it is permissible that a petition may set forth two or more causes of action in the alternative, even though the legal or factual bases thereof may be inconsistent or mutually exclusive. Louisiana Code of Civil Procedure Article 892. | It is permissible for petition to set forth two or more causes of action in the alternative even though legal or factual bases thereof may be inconsistent or mutually exclusive. LSA-C.C.P. art. 892. | Can a petition set forth two or more causes of action in the alternative? | Pleading -Memo 494 - RMM_59054.docx | ROSS-003282841-ROSS-003282842 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6150 | Ferer v. Erickson & Sederstrom, P.C., 272 Neb. 113 | 228+183 | Because a rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the claim's substantive merits, a court may typically look only at the face of the complaint to decide a motion to dismiss. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977 (9th Cir.2002). However, while a court's consideration of a rule 12(b)(6) motion is generally confined to the allegations in the complaint, a court may take judicial notice of " "matters of public record" " without converting a rule 12(b)(6) motion to dismiss into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001); Neb.Rev.Stat. " 27-201(6) (Reissue 1995) ("[j]udicial notice may be taken at any stage of the proceeding"). See, also, Watterson v. Page, 987 F.2d 1 (1st Cir.1993). Thus, the district court may, and in this case did, consider the other lawsuits filed by the appellants in determining whether the district court erred in granting E&S' rule 12(b)(6) motion. | While a court's consideration of a motion to dismiss for failure to state a claim is generally confined to the allegations in the complaint, a court may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment. Pleading Rule 12(b)(6). | Can a court typically look only at face of complaint to decide a motion to dismiss? | 036663.docx | LEGALEASE-00150584-LEGALEASE-00150585 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6151 | Medley v. Lemmon, 994 N.E.2d 1177 | 307A+624 | We review de novo a ruling on a motion to dismiss a civil complaint for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6). Putnam County Sheriff v. Price, 954 N.E.2d 451, 453 (Ind.2011). "Such a motion tests the legal sufficiency of a claim, not the facts supporting it." Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1122 (Ind.2010). "That is to say, it tests whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Price, 954 N.E.2d at 453. In ruling on a Rule 12(B)(6) motion, courts are required to view the complaint in the light most favorable to the non-moving party and with every inference in its favor. Id. | A motion to dismiss a civil complaint for failure to state a claim tests the legal sufficiency of a claim, not the facts supporting it; that is to say, it tests whether the allegations in the complaint establish any set of circumstances under which aplaintiff would be entitled to relief. Trial Procedure Rule 12(B)(6). | "Does a motion to dismiss a complaint for failure to state a claim test the legal sufficiency of a claim, not the facts supporting it?" | 036880.docx | LEGALEASE-00150222-LEGALEASE-00150223 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 6152 | Boyer v. Bedrosian, 57 A.3d 259 | 307A+622 | A motion under Rule 12(b)(6) challenges the sufficiency of the complaint about whether it fails to state a claim upon which relief can be granted. | A motion to dismiss for failure to state a claim challenges the sufficiency of the complaint about whether it fails to state a claim upon which relief can be granted. Superior Court Rules Civ.Proc., Rule 12(b)(6). | Does a motion to dismiss for failure to state a claim challenge the sufficiency of the complaint about whether it fails to state a claim upon which relief can be granted? | Pretrial Procedure - Memo # 8367 - C - NC_58878.docx | ROSS-003292327-ROSS-003292328 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 6153 | Rivera v. Atl. Coast Rehab. & Health Care Ctr., 321 N.J. Super. 340 | 307A+581 | There is a final observation we must make. There were four named defendants here. Two, Atlantic Coast and Covington, were served with process. Two, Onufrat and Willinger, were not, apparently because of plaintiff's inability to locate them. We have no doubt that an administrative dismissal under R. 1:13-7(a), as either a rule of general application or as a DCM rule, does not permit the dismissal of the entire action where one or more of multiple defendants have been served or have answered. | Administrative dismissal of complaint for lack of prosecution does not permit dismissal of the entire action where one or more of the multiple defendants have been served or have answered; although complaint may be dismissed as to those defendants who have not been served or have not answered, rule does not countenance dismissal in favor of those defendants who have been served and have answered. R. 1:13-7(a). | Does administrative dismissal of complaint for lack of prosecution permit dismissal of the entire action where one or more of the multiple defendants have been served or have answered? | Pretrial Procedure - Memo # 8427 - C - NS_59126.docx | ROSS-003306114 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |
| 6154 | Johnson v. Preferred Prof'l Ins. Co., 91 A.3d 994 | 307A+622 | The applicable standard of review for a motion to dismiss is well-settled. For this purpose, the Court is to accept all well-pled allegations as true. To be well-pled, the complaint must put the opposing parties on notice of the claims being brought. If the complaint and facts alleged are sufficient to support a claim upon which relief may be granted, the motion must be denied. If any reasonable conception can be formulated to allow Plaintiff's recovery, the Motion to Dismiss must be denied. Dismissal is warranted only when "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted." | If the complaint and facts alleged are sufficient to support a claim upon which relief may be granted, the motion to dismiss must be denied. | "If the complaint and facts alleged are sufficient to support a claim upon which relief can be granted, should the motion to dismiss be denied?" | Pretrial Procedure - Memo # 8527 - C - SHS_59206.docx | ROSS-003294207-ROSS-003294208 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6155 | Lainhart v. State, 916 N.E.2d 924 | 3.77E+10 | Marlow argues, however, that the State presented insufficient evidence that he intended to place the girls in fear of retaliation for their prior lawful conduct.Section 35"45"2"1(a) requires the State to prove that the victim engaged in a prior act which was not contrary to law and that the defendant intended to repay the victim for the prior lawful act. Casey v. State, 676 N.E.2d 1069, 1072 (Ind.Ct.App.1997).Mere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient. Id. The State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act. Id. | Mere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient to establish Class A misdemeanor intimidation; the state must also establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act. West's A.I.C. 35-45-2-1(a). | "When challenging the sufficiency of the evidence of the intimidation element of intent to place the victim in fear of retaliation for prior lawful conduct, is mere proof that the victim is engaged in an act which is not illegal at the time the threat is made sufficient?" | 046823.docx | LEGALEASE-00150284-LEGALEASE-00150285 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 6156 | Nassau v. State, 311 Ga. App. 438 | 3.77E+10 | A defendant "commits the offense of a terroristic threat when he or she threatens to commit any crime of violence ... with the purpose of terrorizing another[.]" A determination of whether a defendant has committed "[t]he crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize." Furthermore, "OCGA " 16"11"37 encompasses threats of physical violence directed toward an absent third party." Moreover, "[t]hat the message was not directly communicated to the victim would not alone preclude a conviction where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim." Finally, "a defendant need not have the immediate ability to carry out the threat to violate OCGA " 16"11"37(a)."10 | A determination of whether a defendant has committed the crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize. West's Ga.Code Ann. S 16-11-37. | Is the determination of whether a defendant has made a terroristic threat focus solely on the conduct of the accused? | 046852.docx | LEGALEASE-00150480-LEGALEASE-00150481 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6157 | Poirier v. Town of Plymouth, 374 Mass. 206 | 413+2 | Much of this development of the common law doctrine occurred prior to the enactment of G.L. c. 152 which provided an alternative method of distributing the economic loss when an employee is killed or injured as a result of an injury arising out of his employment. See L. Locke, Workmen's Compensation ss 21-31 (1968). The Workmen's Compensation Act effectively displaced the need to apply common law principles in most cases of employee injury, but the common law principles as to liability continue to have vitality where G.L. c. 152 does not apply. The "hidden defect" rule, where applicable, thus has defined in part the duty of an "employer" to an "employee" whether the relationship of the defendant and the plaintiff is that of employer-employee or whether, as here, the "employer" defendant is a landowner who engages an independent contractor whose employee is injured in the course of the employment. Thus the "employee" referred to in the "hidden defect" rule may in fact not be employed by the defendant. While we use here the customary term "employee" in our analysis of the relevant authorities, we limit our discussion to the factual situation before us, namely to that of an injury suffered by one not an employee of the defendant landowner but instead the employee of an independent contractor engaged by a defendant to do work on the property of the defendant. | Workmen's Compensation Act effectively displaced need to apply common-law principles in most cases of employee injury, but common-law principles as to liability continue to have vitality where Act does not apply. M.G.L.A. c. 152 S 1 et seq. | Did the Workmen's Compensation Act displaced the need to apply common law principles in cases of employee injury? | Workers Compensation - Memo #554 - C - ANC_58936.docx | ROSS-003294633-ROSS-003294634 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6158 | In re Franklin Nat. Bank, 381 F. Supp. 1390 | 172H+981 | The special character of banks, and the delicate problems involved in preserving credit, justify denial of the judicial hearing which would be essential in other situations. Slay v. Berry, 27 Mich.App. 271, 183 N.W.2d 436, 452-453 (1970), quoting from Fahey v. Mallonee, 332 U.S. 245, 253, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947). | Special character of banks and problems involved in preserving credit can justify denial of judicial hearing with regard to receivership matters involving national banks, though such a hearing would be essential in other situations. | Do the special character of banks and the delicate problems involved in preserving credit justify denial of the judicial hearing? | 010357.docx | LEGALEASE-00151070-LEGALEASE-00151071 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 6159 | Grand Lodge, Benevolent Knights of Am., v. Murphy Const. Co., 152 La. 123 | 309+113 | In general, therefore, the debtor may impute his payments as he pleases, and cannot be controlled therein by a surety, although that rule may be subject to some exception, as where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties. See, for instance, Merchant's Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624; First Nat. Bank of Elizabeth City v. Scott, 123 N. C. 538, 31 S. E. 819, and Burbank v. Buhler, 108 La. 39, 32 South. 201. Hence except where such imputation of payment would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payment as he pleases. | In general, and except where such imputation would amount to a fraud on the part of both debtor and creditor, the debtor may always impute payments as he pleases, and cannot be controlled therein by a surety. | "In situations where imputation would amount to a fraud on the part of both debtor and creditor, could the debtor impute the payments as he pleases?" | 010450.docx | LEGALEASE-00150958-LEGALEASE-00150959 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 6160 | Kish v. Van Note, 692 S.W.2d 463 | 29T+390 | The object of awarding a plaintiff recovery is to compensate for the actual loss sustained as a result of the defendant's conduct.The DTPA embraces this concept by permitting the injured consumer to recover the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice, including related and reasonably necessary expenses. Building Concepts, Inc. v. Duncan, 667 S.W.2d 897, 901 (Tex.Civ.App."Houston [14th Dist.] 1984, writ ref'd n.r.e.); Woo v. Great Southwestern Acceptance Corp., 565 S.W.2d 290, 298 (Tex.Civ.App."Waco 1978, writ ref'd n.r.e.). | Deceptive Trade Practices Act (V.T.C.A. Bus. & C. S 17.41 et seq.) permits injured consumer to recover the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice, including related and reasonably necessary expenses; amount of actual damages recoverable is determined by the total loss sustained as result of the deceptive trade practice. | Can damages be recovered by loss sustained by deceptive practice? | 013672.docx | LEGALEASE-00150920-LEGALEASE-00150921 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 6161 | Spence v. Yocum, 201 Mont. 79 | 322H+484(1) | Yocum first contends that his statement to Spence concerning the value of the business was merely an opinion, not a representation upon which Spence could rely. It is true that "[s]tatements as to the value of property are generally considered declarations of opinion and will not constitute a proper basis for rescission." Dolson Co. v. Imperial Cattle Co. (1981), Mont., 624 P.2d 993, 996, 38 St.Rep. 306, 309"310, citing 37 Am.Jur.2d Fraud and Deceit, Sec. 119 at 164. However, we emphasize the word "generally." Statements concerning property value are opinions when the "parties stand on an equal footing and have equal means of knowledge, with no relation of trust or confidence existing between them." 37 Am.Jur.2d Fraud and Deceit, Sec. 115 at p. 160. | Statements concerning property value are opinions, and thus provide no proper basis for rescission of a real estate contract, when the parties stand on an equal footing and have equal means of knowledge, with no relation of trust or confidence existing between them. | Is statements as to the value of property considered declarations of opinion and constitute a proper basis for rescission? | Exchange Of Property - Memo 43 - KK.docx | LEGALEASE-00040712-LEGALEASE-00040713 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6162 | Finch v. Matthews, 74 Wash. 2d 161 | 200+80 | Since Burmeister v. Howard, 1 Wash.T. 207 (1867), this court has not departed from the rule established in that case, that the fee in a public street or highway remains in the owner of the abutting land, and the public acquires only the right of passage, with powers and privileges necessarily implied in the grant of the easement. Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle, 70 Wash.Dec.2d 218, 422 P.2d 799 (1967). This rule was applied specifically to a street dedicated to the public through the recording of a plat in Schwede v. Hemrich Bros. Brewing Co., 29 Wash. 21, 69 P. 362 (1902). Therefore, the only property right which either the city of Seattle, or King County ever acquired in the tract of land in controversy, was an easement for passage and use for street purposes. | Fee in public street or highway remains in owner of abutting land, and public acquires only right of passage, with powers and privileges necessarily implied in grant of easement. | Does the fee in a public street or highway remain in the owner of the abutting land? | Highways -Memo 59 - DB_59346.docx | ROSS-003280739-ROSS-003280740 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6163 | Shibata v. Lim, 133 F. Supp. 2d 1311 | 170A+675.1 | Defendant Lim claims that Count IV fails to state a cause of action because a claim for unjust enrichment cannot exist if there is an express agreement between the parties. Defendant is correct that a plaintiff cannot recover under both unjust enrichment and breach of contract. See Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d, 518 (Fla.3d D.C.A.1975). However, both the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment. See Fed.R.Civ.P. 8(a)(1); ThunderWave, Inc. v. Carnival Corp., 954 F.Supp. 1562 (S.D.Fla.1997). To the extent that Dr. Shibata pleads unjust enrichment as an alternative to his breach of contract claim, such a claim should not be dismissed at this time. Dr. Shibata has sufficiently stated a cause of action for unjust enrichment. He has alleged that he lent defendants $200,000, that defendants knew they were required to repay that sum at the time they accepted the money, and that defendants would be unjustly enriched if they are not required to repay the amounts received, less the one payment of $30,000. Docket No. 1, "" 26 " 28. Defendants' motion to dismiss Dr. Shibata's unjust enrichment claim should be DENIED. | Under federal and Florida law, party may allege, in alternative, recovery under express contract and entitlement to equitable relief under theory of unjust enrichment. Fed.Rules Civ.Proc.Rule 8(a)(1), 28 U.S.C.A. | "Can a party allege in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment?" | 023670.docx | LEGALEASE-00150998-LEGALEASE-00150999 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6164 | Elworthy v. First Tennessee Bank, 2017 WY 33, 38, 391 P.3d 1113 | 307A+622 | We agree with the district court's reasoning. We have held that "[w]hen the complaint shows the existence of a built-in defense, a notice to dismiss lies." Weber v. Johnston Fuel Liners, Inc., 540 P.2d 535, 540 (Wyo. 1975) (citing Vossler v. Peterson, 480 P.2d 393, 394 (Wyo. 1971)). In such circumstances, a plaintiff is required to plead the factual allegations that would prevent operation of the built-in defense. The pleader must be careful not to allege facts that constitute a defense to his claim for relief, or, for that matter, a defense to his defense. For example, a complaint in an action seeking specific performance for the sale of land that alleges an oral agreement defeats itself by showing a prima facie defense of the statute of frauds. This so-called "built-in defense" may be either partial or absolute. If partial, it can be avoided by a showing that certain facts or circumstances vitiating the defense exist. Thus, a statute of frauds defense to the action hypothesized above can be avoided if the complaint indicates that there has been part performance of the oral contract, perhaps in the form of improvements on the land. | When the complaint shows the existence of a built-in defense, a notice to dismiss lies; in such circumstances, a plaintiff is required to plead the factual allegations that would prevent operation of the built-in defense. | "When the complaint shows the existence of a built-in defense, does a notice to dismiss lie?" | 037025.docx | LEGALEASE-00150786-LEGALEASE-00150787 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6165 | Green v. Trinity Int'l Univ., 344 Ill. App. 3d 1079 | 307A+687 | A motion pursuant to section 2"615 attacks the legal sufficiency of a complaint. Provenzale v. Forister, 318 Ill.App.3d 869, 878, 252 Ill.Dec. 808, 743 N.E.2d 676 (2001). Such a motion admits as true all well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. Provenzale, 318 Ill.App.3d at 878, 252 Ill.Dec. 808, 743 N.E.2d 676. When deciding a section 2"615 motion, the court must determine whether the allegations of the complaint, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. Abbasi v. Paraskevoulakos, 187 Ill.2d 386, 391, 240 Ill.Dec. 700, 718 N.E.2d 181 (1999). A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff would not be entitled to relief under any set of facts. Abbasi, 187 Ill.2d at 391, 240 Ill.Dec. 700, 718 N.E.2d 181. | A motion to dismiss for failure to state a cause of action attacks the legal sufficiency of a complaint; such a motion admits as true all well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. S.H.A. 735 ILCS 5/2-615. | Does a motion to dismiss for failure to state a cause of action attack the legal sufficiency of a complaint based on defects apparent on its face? | 037037.docx | LEGALEASE-00150992-LEGALEASE-00150993 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 6166 | Rilley v. MoneyMutual, 884 N.W.2d 321 | 307A+679 | "Whether personal jurisdiction exists is a question of law, which we review denovo." Juelich v. Yamazaki Mazak Optonics Corp., 682 N.W.2d 565, 569 (Minn.2004). When reviewing a motion to dismiss for lack of personal jurisdiction, we determine whether, taking all the factual allegations in the complaint and supporting affidavits as true, the plaintiff has made a prima facie showing of personal jurisdiction. Marquette Nat'l Bank v. Norris, 270 N.W.2d 290, 292 (Minn.1978); Hardrives, Inc. v. City of LaCrosse, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). | In ruling on motion to dismiss for lack of personal jurisdiction, courts must take all allegations contained in the complaint and the supporting affidavits as true. M.S.A. S 543.19. | "In ruling on a motion to dismiss for lack of personal jurisdiction, should courts take all allegations contained in the complaint and the supporting affidavits as true?" | Pretrial Procedure - Memo # 8461 - C - SHB_59160.docx | ROSS-003279239-ROSS-003279240 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6167 | Leon v. Martinez, 638 N.E.2d 511 | 30+3281 | On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction (see, CPLR 3026). We accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (Morone v. Morone, 50 N.Y.2d 481, 484, 429 N.Y.S.2d 592, 413 N.E.2d 1154; Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 634, 389 N.Y.S.2d 314, 357 N.E.2d 970). Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law (see, e.g., Heaney v. Purdy, 29 N.Y.2d 157, 324 N.Y.S.2d 47, 272 N.E.2d 550). In assessing a motion under CPLR 3211(a)(7), however, a court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint (Rovello v. Orofino Realty Co., supra, 40 N.Y.2d at 635, 389 N.Y.S.2d 314, 357 N.E.2d 970) and "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 372 N.E.2d 17; Rovello v. Orofino Realty Co., supra, 40 N.Y.2d at 636, 389 N.Y.S.2d 314, 357 N.E.2d 970). | On appeal from order granting motion to dismiss, Court of Appeals accepts facts as alleged in complaint as true, accords plaintiffs benefit of every possible favorable inference, and determines only whether facts as alleged fit within any cognizable legal theory. McKinney's CPLR 3026, 3211. | Should the court accept as true the facts as alleged in the complaint? | 037232.docx | LEGALEASE-00151080-LEGALEASE-00151081 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6168 | Moses v. Dirghangi, 430 S.W.3d 371 | 307A+622 | We further note that Tennessee Rule of Civil Procedure 12.02(6) motions are not designed to correct inartfully drafted pleadings. Dobbs v. Guenther, 846 S.W.2d 270, 273 (Tenn.Ct.App.1992). However, a complaint should not be dismissed, no matter how inartfully drafted, if it states a cause of action. Id. (citing Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 152 (Tenn.1966); Collier v. Slayden Bros. Ltd. Partnership, 712 S.W.2d 106, 108 (Tenn.Ct.App.1985)). Nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. Utter v. Sherrod, 132 S.W.3d 344 (Tenn.Ct.App.2003), perm. app. denied (Tenn. March 8, 2004). But while we should not endeavor to create claims where none exist, we must always look to the substance of the pleading rather than to its form. Dobbs, 846 S.W.2d at 273 (citing Donaldson v. Donaldson, 557 S.W.2d 60, 62 (Tenn.1977); Usrey v. Lewis, 553 S.W.2d 612, 614 (Tenn.Ct.App.1977)). | Motions to dismiss a complaint for failure to state a claim upon which relief can be granted are not designed to correct inartfully drafted pleadings; nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. Rules Civ.Proc., Rule 12.02(6). | Are motions to dismiss a complaint for failure to state a claim upon which relief can be granted not designed to correct inartfully drafted pleadings? | 037341.docx | LEGALEASE-00151034-LEGALEASE-00151035 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6169 | Bob Timberlake Collection v. Edwards, 176 N.C. App. 33 | 307A+561.1 | "A legal insufficiency may be due to an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." State of Tennessee v. Environmental Management Comm., 78 N.C.App. 763, 765, 338 S.E.2d 781, 782 (1986). Furthermore, when a complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, the motion to dismiss will be granted and the action dismissed. Skinner at 270, 333 S.E.2d at 238. As Edwards' claim for breach of the Agreement was filed in his counterclaim on 4 September 2003, it is more than 2 years after the parties initially entered into the Agreement (30 April 2001) and therefore, barred by an express limitation contained in the Agreement. Such an insurmountable bar to recovery on the claim requires that the claim be dismissed. "A counterclaim is sufficient to withstand the motion [12(b)(6)] where no insurmountable bar to recovery on the claim appears on its face." Chrysler Credit Corp. v. Rebhan, 66 N.C.App. 255, 257, 311 S.E.2d 606, 608 (1984). At the hearing on the motion to dismiss, counsel for BTI explicitly argued Edwards' alleged claim for breach of the Agreement was barred by the express terms of the Agreement. The trial court properly dismissed the claim. | When a complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, a motion to dismiss for failure to state a claim will be granted and the action dismissed. Rules Civ.Proc., Rule 12, West's N.C.G.S.A. S 1A-1(b)(6). | What happens when a complaint states a valid claim and discloses an unconditional affirmative defense which defeats the asserted claim? | 037360.docx | LEGALEASE-00151120-LEGALEASE-00151121 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6170 | Kling v. Landry, 292 Ill. App. 3d 329 | 307A+581 | Although the trial court's dismissal of the plaintiff's action is not authorized by section 2"607 of the Code, the dismissal could nonetheless be upheld as within the court's inherent authority to control its business. Bejda, 82 Ill.2d at 329, 45 Ill.Dec. 113, 412 N.E.2d 464. A plaintiff's failure to take any action as ordered by the trial court evidences want of prosecution by that party, and the trial court may dismiss a suit for the failure of the complainant to prosecute it with due diligence. Bejda, 82 Ill.2d at 329, 45 Ill.Dec. 113, 412 N.E.2d 464. It has therefore been recognized by our supreme court that the failure to file a bill of particulars in disobedience of a trial court's order may be a ground for dismissal with prejudice. Bejda, 82 Ill.2d at 329, 45 Ill.Dec. 113, 412 N.E.2d 464. | Plaintiff's failure to take any action as ordered by trial court evidences want of prosecution by that party, and trial court may dismiss suit for failure of complainant to prosecute it with due diligence. | Can court dismiss suit for failure of complainant to prosecute it with due diligence? | 037416.docx | LEGALEASE-00151341-LEGALEASE-00151342 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6171 | Kettle Range Conservation Grp. v. Washington Dep't of Nat. Res., 120 Wash. App. 434 | 411+7 | The APA governs appeals from Forest Practices Appeals Board decisions.RCW 76.09.230(5). Accordingly, we may overturn the [Boards] decision only if [t]he agency has erroneously interpreted or applied the law or [t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court. RCW 34.05.570(3)(d), (e).ALPS III, 99 Wash.App. at 588, 993 P.2d 287. | Appellate court may overturn decision of Forest Practices Appeals Board (FPAB) only if agency has erroneously interpreted or applied the law or FPAB's order is not supported by evidence that is substantial when viewed in light of the whole record before the court. West's RCWA 34.05.570(3)(d, e). | Under what circumstance can the decision of the Forest Practices Appeals Board (FPAB) be overturned? | 047544.docx | LEGALEASE-00151044-LEGALEASE-00151045 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 6172 | W. Radio Servs. Co. v. Allen, 147 F. Supp. 3d 1132 | 205H+3 | Unjust enrichment is a theory of "quasi-contract" based on an implied contract. See Summer Oaks Ltd. P'ship v. McGinley, 183 Or.App. 645, 654, 55 P.3d 1100 (2002). The theory of unjust enrichment provides a remedy where no enforceable contract exists, and 1) one party has conferred a benefit on another, 2) the recipient is aware that a benefit has been received, and 3) "under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." | Under Oregon law, the theory of unjust enrichment provides a remedy where no enforceable contract exists, and (1) one party has conferred a benefit on another, (2) the recipient is aware that a benefit has been received, and (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. | What is quasi-contractual claim of unjust enrichment? | Woods and Forests-Memo 60-ANM_59291.docx | ROSS-003320075 | Condensed, SA | 0.29 | 0 | 1 | 0 | 1 | |
| 6173 | Rheem Mfg. Co. v. Cent. States Se. & Sw. Areas Pension Fund, 63 F.3d 703 | 25T+146 | Central States argues that the declaratory judgment action was improperly before the district court because the MPPAA requires that: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. " 1401(a)(1). Several of our sister circuits have stated that the determination of whether an entity ever became an employer under the MPPAA is an issue properly addressed by a district court prior to arbitration of any remaining issues: [There is] a third narrow exception to the arbitration requirement. This exception allows a company to bypass arbitration for the limited purpose of determining whether it is an "employer" within the meaning of section 1401(a)(1). This conclusion follows from the language of that section, which states that arbitration shall govern disputes between an "employer" and the plan sponsor. Since only an "employer" is required to arbitrate, the district court may address this threshold question before arbitration. | Requirement of Multi-Employer Pension Plan Amendments Act (MPPAA), that dispute between employer and plan sponsor concerning certain determinations be resolved through arbitration, did not apply to declaratory judgment action in which sole question was whether corporation was "employer" under MPPAA. Employee Retirement Income Security Act of 1974, S 4221(a)(1), as amended, 29 U.S.C.A. S 1401(a)(1). | Does the Multi-Employer Pension Plan Amendments Act (MPPAA) stipulate that any dispute between an employer and the plan sponsor of a multiemployer plan should be resolved through arbitration? | 007988.docx | LEGALEASE-00151451-LEGALEASE-00151453 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6174 | In re Veal, 450 B.R. 897 | 83E+401 | This distinction further recognizes that the rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. UCC " 3"602(a), (c). By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay). Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals should not care who actually owns the Note"and it is thus irrelevant whether the Note has been fractionalized or securitized"so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the "person entitled to enforce" the Note, the Veals should be content. | Rules to determine who is entitled to enforce promissory note are concerned primarily with maker of note and are designed to provide the maker with relatively simple way of determining whom he must pay in order to avoid defaulting on obligation; in contrast, rules concerning transfer of ownership and other interests in note identify who, among competing claimants, is entitled to the note's economic value, i.e., the value of maker's promise to pay. | Who are the rules that determine who is entitled to enforce a note concerned with? | Bills and Notes - Memo 631 - RK_59535.docx | ROSS-003308027-ROSS-003308028 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 6175 | Dover Historical Soc. v. City of Dover Planning Comm'n, 838 A.2d 1103 | 307A+680 | In this appeal, we are called upon to review the Superior Court's decision to grant the respondent's motion to dismiss the petition for a writ of certiorari. In ruling upon a Rule 12(b)(6) motion to dismiss, the relevant universe of facts are ordinarily confined to the allegations of the petition. Accordingly, as a general rule, factual matters outside the petition may not be considered in ruling upon a motion to dismiss. | In ruling upon a motion to dismiss for failure to state a claim, the relevant universe of facts are ordinarily confined to the allegations of the petition; accordingly, as a general rule, factual matters outside the petition may not be considered in ruling upon a motion to dismiss. Superior Court Civil Rule 12(b)(6). | "In ruling upon a motion to dismiss for failure to state a claim, is the relevant universe of facts ordinarily confined to the allegations of the petition?" | 037733.docx | LEGALEASE-00151715-LEGALEASE-00151716 | SA, Sub | 0.25 | 0 | 0 | 1 | 1 | |
| 6176 | Williams v. Frederick's Estate, 289 Ill. App. 410 | 83E+481 | It is true that a note may be assigned by a separate instrument without indorsement so as to vest the legal title in the assignee, provided, the note is also transferred by delivery to the assignee. | Negotiable notes may be assigned by separate instruments without indorsement so as to vest legal title in assignee provided note is also transferred to assignee by delivery. S.H.A. ch. 98, SS 2, 51, 69. | Can a note be assigned by a separate instrument without indorsement so as to vest a legal title in an assignee? | Bills and Notes - Memo 936 - RK_59638.docx | ROSS-003281473-ROSS-003281474 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 6177 | Bloom v. Martin, 865 F. Supp. 1377 | 172H+1584 | To determine whether RESPA provides for an implied, private right of action, the Court must focus on "the intent of Congress when it enacted the statute in question." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984). "[U]nless ... Congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." Karahalios v. National Fed'n of Fed. Employees, 489 U.S. 527, 532"33, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989). "In the absence of strong indicia of contrary congressional intent, [the court is] compelled to conclude that Congress provided precisely the remedies it considered appropriate." . "There is a presumption against implied rights of action"a presumption that will endure unless plaintiff proffers adequate evidence of contrary congressional intent." Stowell v. Ives, 976 F.2d 65, 70 n. 5 (1st Cir.1992). Thus, the burden of demonstrating Congressional intent to create an implied right of action lies with the plaintiffs. See Suter v. Artist M., 503 U.S. 347, """", 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992). | To determine whether Real Estate Settlement Procedures Act (RESPA) provides for implied, private right of action, court must focus on intent of Congress when it enacted statute. Real Estate Settlement Procedures Act of 1974, SS 2-19, as amended, 12 U.S.C.A. SS 2601-2617. | Should the court focus on the intent of Congress to determine whether there is an implied private right of action? | 013677.docx | LEGALEASE-00152416-LEGALEASE-00152417 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 6178 | Arnold v. Goldstein, 344 Mich. 103 | 48A+221 | In White v. Edwards, 222 Mich. 321, 323, 192 N.W. 560, 561, we stated:"Numerous decisions of courts of last resort hold, and we think they should be followed, that one injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and that the offending party is not exonerated from all duty and from liability by the fact that he is not in motion.' To like effect see Rentz v. Anhut, 284 Mich. 695, 279 N.W. 891; Carter v. C. F. Smith Co., 285 Mich. 621, 281 N.W. 380; Wallace v. Kramer, 296 Mich. 680, 296 N.W. 838; Burnash v. Compton, 298 Mich. 70, 298 N.W. 408; Douglas v. Holcomb, 340 Mich. 43, 64 N.W.2d 656. | One injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and the offending party is not exonerated from all duty and from liability by the fact that he is not in motion. | Is one who is injured while momentarily standing in the highway not in motion guilty of contributory negligence? | Highways - Memo 327 - RK_60189.docx | ROSS-003281830-ROSS-003281831 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 6179 | Patton v. Wells Fargo Fin. Maryland, 437 Md. 83 | 307A+679 | In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations, and any reasonable inferences, in the light most favorable to the plaintiff. Bobo v. State, 346 Md. 706, 708, 697 A.2d 1371 (1997). In reviewing the dismissal of a complaint, an appellate court applies the same standard and assesses whether that decision was legally correct. See Reichs Ford Rd. Joint Venture v. State Roads Comm'n, 388 Md. 500, 509, 880 A.2d 307, 312 (2005) (citing Adamson v. Corr. Med. Servs., 359 Md. 238, 246, 753 A.2d 501 (2000)). The appellate court accords no special deference to the circuit court's legal conclusions. | In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations, and any reasonable inferences, in the light most favorable to the plaintiff. | "In deciding a motion to dismiss a complaint, does a circuit court assume the truth of the complaints factual allegations?" | Pretrial Procedure - Memo # 8657 - C - NC_60222.docx | ROSS-003297905 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6180 | Baycon Indus. v. Shea, 714 So. 2d 1094 | 307A+531 | We are unable to conclude whether the error is harmless and therefore remand for further proceedings. A motion to dismiss is not a substitute for a motion for summary judgment, and in ruling on a motion to dismiss a complaint the trial court is confined to consideration of the allegations found within the four corners of the complaint. See Thompson v. Martin, 530 So.2d 495 (Fla. 2d DCA 1988). | Motion to dismiss is not a substitute for a motion for summary judgment, and in ruling on a motion to dismiss a complaint the trial court is confined to consideration of the allegations found within the four corners of the complaint. West's F.S.A. RCP Rule 1.510. | "In ruling on a motion to dismiss, should a trial court confine itself to the four corners of the complaint?" | 037531.docx | LEGALEASE-00152235-LEGALEASE-00152236 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6181 | Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc., 41 Misc. 3d 673 | 307A+680 | In considering a motion to dismiss for failing to state a cause of action under CPLR 3211(a)(7), the pleading is to be afforded a liberal construction (CPLR 3026), and the court should accept as true the facts alleged in the complaint, accord plaintiff the benefit of every possible inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (see Hurrell"Harring v. State of New York, 15 N.Y.3d 8, 20, 904 N.Y.S.2d 296, 930 N.E.2d 217 [2010]; Leon v. Martinez, 84 N.Y.2d 83, 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1995] ). Although evidentiary material may be considered in determining the viability of a complaint, the complaint should not be dismissed unless defendant has established "that a material fact alleged by the plaintiff is not a fact at all and that no significant dispute exists regarding it" (Stewart v. New York City Tr. Auth., 50 A.D.3d 1013, 1014, 856 N.Y.S.2d 638 [2d Dept. 2008] [internal quotation marks and citations omitted]; see also Lawrence v. Miller, 11 N.Y.3d 588, 595, 873 N.Y.S.2d 517, 901 N.E.2d 1268 [2008]; Nunez v. Mohamed, 104 A.D.3d 921, 922, 962 N.Y.S.2d 338 [2d Dept. 2013] ). | Although evidentiary material may be considered in determining the viability of a complaint, the complaint should not be dismissed for failing to state a cause of action unless defendant has established that a material fact alleged by the plaintiff is not a fact at all and that no significant dispute exists regarding it. McKinney's CPLR 3211(a)(7). | Can evidentiary material be considered in determining the viability of a complaint? | 037658.docx | LEGALEASE-00152198-LEGALEASE-00152200 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6182 | Valley Peat & Humus v. Sunnylands, 398 Pa. Super. 400 | 307A+583 | We note the dissent's view that the general three prong test requiring: (1) a want of due diligence; (2) no compelling reason for the delay, and (3) some prejudice, has no application to non pros judgments entered under Rule 218. Although the position has superficial appeal, we do not agree. It is most important to remember that underlying the entry of a judgment of non pros, whether pursuant to Rule 218 or otherwise, is equity. The entry of a non pros judgment depends upon a proper balancing of equitable considerations in the discretion of the trial court. Although, like the dissent, we favor a procedure wherein a petition to open a non pros judgment would be filed and ruled upon by the trial court prior to the filing of an appeal, this does not assist us in reviewing the case sub judice. We must review the exercise of the trial court's discretion on March 7, 1989. We must assure that the trial court did not abuse its discretion in balancing all of the surrounding facts and circumstances present at the time of the entry of the March 7, 1989, non pros judgment. The three part test is completely consistent with the language of Rule 218. | Entry of non pros judgment whether because plaintiff is not ready without satisfactory excuse or otherwise, depends upon proper balancing of equitable considerations and discretion of trial court. Rules Civ.Proc., Rule 218, 42 Pa.C.S.A. | Does entry of non pros judgment depend upon proper balancing of equitable considerations and discretion of court? | 038333.docx | LEGALEASE-00152690-LEGALEASE-00152691 | Condensed, Order, SA | 0.8 | 1 | 1 | 0 | 1 | 1 |
| 6183 | Becky v. Norwest Bank Dillon, N.A., 245 Mont. 1 | 307A+581 | The party moving for dismissal must demonstrate that the plaintiff has delayed action on the claim for an unreasonable period of time. Once an unreasonable delay has been shown, the plaintiff must proffer a reasonable excuse for the delay. Calaway v. Jones, 177 Mont. 516, 520, 582 P.2d 756, 758 (1978). An unreasonable delay raises a presumption of prejudice to the defendant, and the defendant is under no obligation to demonstrate injury from the delay. Shackelton, 207 Mont. at 102, 672 P.2d at 1115. However, if the plaintiff comes forward with a reasonable excuse for the delay, the burden shifts to the defendant to show actual prejudice. "A reasonable excuse is one that is not frivolous "where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice." " Cox, 231 Mont. at 322, 752 P.2d at 1094 (quoting Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir.1980)). | Party moving for dismissal for failure to prosecute must demonstrate that plaintiff has delayed action on a claim for an unreasonable period of time and once delay has been shown, plaintiff must proffer a reasonable excuse for the delay; an unreasonable delay raises a presumption of prejudice and defendant is under no obligation to demonstrate injury from the delay, but if plaintiff comes forward with a reasonable excuse for the delay, burden shifts to defendant to show actual prejudice. Rules Civ.Proc., Rule 41(b). | "Should party moving for dismissal for failure to prosecute, demonstrate that plaintiff has delayed action on a claim for an unreasonable period of time?" | Pretrial Procedure - Memo # 9157 - C - MS_60102.docx | ROSS-003293881-ROSS-003293882 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 6184 | Sabel v. Mead Johnson & Co., 737 F. Supp. 135 | 308+1 | An agency relationship has three essential characteristics: 1) the power of the agent to alter the legal relationships between the principal and third parties and the principal and himself; 2) the existence of a fiduciary relationship toward the principal with respect to matters within the scope of the agency; and 3) the right of the principal to control the agent's conduct with respect to matters within the scope of the agency. Restatement (Second) of Agency "" 12"14 (1958). The courts have looked primarily at the issue of control in determining whether an agency relationship exists. See United States v. Paxson, 861 F.2d 730, 734 (D.C.Cir.1988) (admitting statement of corporate employee against corporate superior under Rule 801(d)(2)(D) where employee reported directly to superior); United States v. Young, 736 F.2d 565, 568 (10th Cir.1983) (same); United States v. Mandel, 591 F.2d 1347, 1368 (4th Cir.1979) (in criminal prosecution of governor, Rule 801(d)(2)(D) covered statements of governor's legislative aides, but not of state senators); see also North American Van Lines, Inc. v. NLRB, 869 F.2d 596, 599 (D.C.Cir.1989) (right to control means and manner of performance the central inquiry in determining agency status for purposes of defining NLRB jurisdiction); Allbritton Communications Co. v. NLRB, 766 F.2d 812, 818 (3rd Cir.1985) (same), cert. denied, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986); Afonso v. City of Boston, 587 F.Supp. 1342, 1347 (D.Mass.1984) (liability to direction and control the essential element in existence of master-servant relationship). Payment for services is relevant only to the extent that it bears on the issue of control. Afonso, 587 F.Supp. at 1347. Similarly, consent to control and to act in a fiduciary manner is important to a finding of an agency relationship. See Abatti v. C.I.R., 644 F.2d 1385, 1390 (9th Cir.1981) (admitting binders prepared by defendant's accountant where accounting arrangements delegated to | Agency relationship has three essential characteristics: power of agent to alter legal relationships between principal and third parties and principal and himself, existence of fiduciary relationship toward principal with respect to matters within scope of agency, and right of principal to control agent's conduct with respect to matters within scope of agency. | What are the essential characteristics of an agency? | Principal and Agent - Memo 198 - KC_59866.docx | ROSS-003282936-ROSS-003282937 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6185 | W. Radio Servs. Co. v. Espy, 79 F.3d 896 | 411+7 | The Manual and Handbook are a series of "[p]rocedures for the conduct of Forest Service activities." 36 C.F.R. " 200.4(b), (c)(1) (1995).The Manual and Handbook are not promulgated in accordance with the procedural requirements of the Administrative Procedure Act. Neither is published in the Federal Register or the Code of Federal Regulations. See Parker v. United States, 448 F.2d 793, 797 (10th Cir.1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1252, 1255, 31 L.Ed.2d 455 (1972). They are not subjected to notice and comment rulemaking; they are not regulations. Hi"Ridge Lumber Co. v. United States, 443 F.2d 452, 455 (9th Cir.1971) (Manual "does not rise to the status of a regulation"). | Forest Service manual and handbook are not substantive in nature, are not promulgated in accordance with procedural requirements for regulations, are not promulgated pursuant to independent congressional authority, and thus do not have independent force and effect of law so as to bind Forest Service; manual and handbook are not published in Federal Register or Code of Federal Regulations, and are not subjected to notice and comment rulemaking. 36 C.F.R. S 200.4(d)(1). | Are the Forest Service Manual and Handbook federal regulations? | 047554.docx | LEGALEASE-00152053-LEGALEASE-00152054 | Condensed, Order, SA | 0.32 | 1 | 1 | 0 | 1 | 1 |
| 6186 | Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv., 378 F.3d 1059 | 15A+1990 | In the context of agency review, the role of harmless error is constrained. The doctrine may be employed only "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." Buschmann v. Schweiker, 676 F.2d 352, 358 (9th Cir.1982). In the context of non-formal agency decision-making, like a BiOp, "we must exercise great caution in applying the harmless error rule in [informal agency adjudications including notice and comment rulemaking] To avoid gutting the APA's procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result." Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1487 (9th Cir.1992) (emphases added). | In the context of agency review, the role of harmless error is constrained; the doctrine may be employed only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached. | When can the harmless error doctrine be employed? | Woods and Forests-Memo 47-ANM_60274.docx | ROSS-003309752 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6187 | Pineda v. Masonry Const., 831 F. Supp. 2d 666 | 21+3 | The Second Circuit has explained that "a court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir.1999) (abrogated on other grounds by Schnabel v. Abramson, 232 F.3d 83 (2d Cir.2000)).For example, the Hollander court held that a district court had acted within its discretion by striking portions of an affidavit that the district court had described as "more resembling an adversarial memorandum than a bona fide affidavit." Hollander, 172 F.3d at 198 (emphasis in the original). A court may also "simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." Doe v. Nat'l Bd. of Podiatric Med. Examiners, No. 03 Civ. 4034(RWS), 2004 WL 912599, at *4, 2004 U.S. Dist. LEXIS 7409, at *4 (S.D.N.Y. April 29, 2004). | Court may strike portions of affidavit that are not based upon affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statement; court may also simply decline to consider those aspects of supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible. | Can a court strike portions of the affidavit if they are not based on affiants personal knowledge? | Affidavits - Memo 59 - SNJ.docx | LEGALEASE-00042523-LEGALEASE-00042524 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 6188 | Rey v. Simpson, 63 U.S. 341 | 83E+454 | When a promissory note, made payable to a particular person or order, as in this case, is first endorsed by a third person, such third person is held to be an original promissor, guarantor, or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker, and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered as a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name there at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor. But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then be liable only as a second endorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such endorsers. | When a note payable to a particular person or order is first endorsed by a third person, such third person is held to be an original promissor, guarantor or endorser according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | When can a third person be held as an original promissor? | Bills and Notes - Memo 892 - RK_60691.docx | ROSS-003296439-ROSS-003296440 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6189 | Bilbrey v. Smithers, 937 S.W.2d 803 | 156+27(2) | "Where one recognizes another's title or is instrumental in another's acquiring title he is estopped to afterwards deny that title." Spicer v. Kimes, 25 Tenn.App. 247, 156 S.W.2d 334, 337 (1941). "The privies of a grantor or grantee are estopped to the same extent as the original parties to the deed." Id. Estoppel by deed applies where both parties were grantors or grantees, and also where one party was a grantor and the other was a grantee. In either case, an individual's property rights are being recognized by the other party or parties signing the deed. That recognition of rights cannot be taken back at a later time. | When one recognizes another's title or is instrumental in another's acquiring title he is estopped to afterwards deny that title, and privies of grantor or grantee are estopped to same extent as original parties to deed. | "Where one recognizes another's title or is instrumental in another's acquiring title, is he estopped to afterwards deny that title?" | 018012.docx | LEGALEASE-00153014-LEGALEASE-00153015 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6190 | Aspenhof Corp. v. State Tax Comm'n of Missouri, 789 S.W.2d 867 | 371+2510 | There are several methods to calculate true value in money when assessing property: the sales comparison or market data approach, the income approach, the replacement cost approach, and the cost of construction approach, to name just four. St. Louis County v. Security Bonhomme, Inc., 558 S.W.2d 655, 659 (Mo. banc 1977). The method used depends on several variables inherent in the highest and best use of the property in question. Each method has factors, unique to the method, to consider in calculating the property's true value in money. Security Bonhomme, 558 S.W.2d at 659. Once the Commission decides to use a particular method, it must consider all of that method's factors in arriving at a valuation. Stephen & Stephen Properties, Inc. v. State Tax Commission, 499 S.W.2d 798, 802 (Mo.1973). | Methods of calculating true value in money when assessing property include sales comparison or market data approach, income approach, replacement cost approach, and cost of construction approach; method used depends on several variables inherent in highest and best use of property in question. | What are the methods used to calculate true value in money when assessing property or real estate? | Exchange Of Property - Memo 37 - KK_60741.docx | ROSS-003308811-ROSS-003308812 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6191 | Plaza PH2001 LLC v. Plaza Residential Owner LP, 98 A.D.3d 89 | 307A+679 | The amended complaint must therefore be analyzed must any complaint on a CPLR 3211 motion; we construe the complaint liberally, accepting as true the facts alleged, and according plaintiff the benefit of every possible inference (see 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 151"152, 746 N.Y.S.2d 131, 773 N.E.2d 496 [2002] ). Of course, this Court's ruling regarding the sufficiency of a portion of the original complaint's breach of contract claim constitutes the law of the case and remains controlling to the extent the issues raised in the original complaint and addressed by our decision are presented in the amended complaint (see Fusco v. Kraumlap Realty Corp., 1 A.D.3d 189, 767 N.Y.S.2d 84 [2003] ). | Amended complaint must be analyzed as must any complaint on a motion to dismiss, construing the complaint liberally, accepting as true the facts alleged, and according the plaintiff the benefit of every possible inference. McKinney's CPLR 3211. | Should an amended complaint be analyzed as must any complaint on a motion to dismiss? | 038043.docx | LEGALEASE-00153051-LEGALEASE-00153052 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 6192 | McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss, 704 So. 2d 214 | 307A+622 | A motion to dismiss, filed pursuant to Florida Rule of Civil Procedure 1.140(b)(6), tests the legal sufficiency of a complaint to state a cause of action and is not intended to determine issues of ultimate fact. | Motion to dismiss tests legal sufficiency of complaint to state a cause of action and is not intended to determine issues of ultimate fact. West's F.S.A. RCrP Rule 1.140(b)(6). | Does a motion to dismiss test the legal sufficiency of complaint to state a cause of action? | Pretrial Procedure - Memo # 9023 - C - NS_60429.docx | ROSS-003321457-ROSS-003321458 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 6193 | Defalco v. Office of Court Mgmt., 90 Mass. App. Ct. 1104 | 228+183 | Moreover, judges may consider exhibits attached to a complaint without converting a motion to dismiss to one for summary judgment. Johnston v. Box, 453 Mass. 569, 581"582 n. 19, 903 N.E.2d 1115 (2009). See Mass.R.Civ.P. 10(c), as amended, 456 Mass. 1401 (2010) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). | Judges may consider exhibits attached to a complaint without converting a motion to dismiss to one for summary judgment. Rules Civ.Proc., Rule 10(b), 43A M.G.L.A. | Can judges consider exhibits attached to a complaint without converting a motion to dismiss to one for summary judgment? | Pretrial Procedure - Memo # 9059 - C - MS_60464.docx | ROSS-003305701-ROSS-003305702 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 6194 | Cumberland Farms v. Dubois, 154 Conn. App. 448 | 302+354 | We must next determine whether the court erred in both failing to rule on the motion to dismiss and in utilizing the court's "inherent authority" to treat the defendant trooper Dubois' motion to dismiss as a motion to strike. "[I]f a pleading ... onitsface is legallyinsufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted, a motion to strike is required. A motion to dismiss, by contrast, properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Citations omitted; emphasis in original; internal quotation marks omitted.). Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). | If a pleading on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted, a motion to strike is required; a motion to dismiss, by contrast, properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. | "If a pleading on its face is legally insufficient, is a motion to strike required?" | 038265.docx | LEGALEASE-00153710-LEGALEASE-00153711 | Condensed, SA | 0.46 | 0 | 1 | 0 | 1 | |
| 6195 | Admiral Oriental Line v. United States, 86 F.2d 201 | 308+85 | An agent, compelled to defend a baseless suit, grounded upon acts performed in his principal's business, may recover from the principal the expenses of his defense. We considered the question in Cory Bros. & Co. v. United States, 51 F.(2d) 1010, where we did not have to rule upon it; but the cases are unanimous, so far as we have found. Stocking v. Sage, 1 Conn. 519; Powell v. Newburgh, 19 Johns.(N.Y.) 284; The James Seddon, L.R. 1 Ad.& Ec. 62; In Re Famatina Development Corp'n (1914) 2 Ch.D. 271 (C.A.); Herrman v. Leland, 84 Misc. 82, 145 N.Y.S. 972; Restatement of Agency, Sec. 439(d). In Howe v. Buffalo, etc., R.R. Co., 37 N.Y. 297, and Clark v. Jones, 16 Lea (Tenn.) 351, notwithstanding that the agent had lost the suit brought by the third party against him, he recovered of the principal because his conduct was within the scope of his authority, though it was wrongful. The right of recovery in all these instances is only an example of the general doctrine that an agent may recover any expenditures necessarily incurred in the transaction of his principal's affairs. Bibb v. Allen, 149 U.S. 481, 499, 13 S.Ct. 950, 37 L.Ed. 819. | An agent, compelled to defend a baseless suit, grounded on acts performed in his principal's business, may recover from principal expenses of his defense. | "Can an agent recover from the principal the expenses incurred to defend a baseless suit, grounded upon acts performed in his principal's business?" | 041553.docx | LEGALEASE-00152804-LEGALEASE-00152805 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6196 | Krumpelman v. Louisville & Jefferson Cty. Metro. Sewer Dist., 314 S.W.2d 557 | 371+2060 | We agree with Mortgagee that it is very generally held that special assessments or special taxes to pay for local improvements are not taxes in the ordinary or strict sense of the term. See Gosnell v. City of Louisville, 104 Ky. 201, 46 S.W. 722; and Kilgus v. Trustees of the Church Home for Females, 94 Ky. 439, 22 S.W. 750. In practice, and as usually understood, there is a clear distinction between taxes and special assessments. The latter are local burdens laid on property made for a public purpose, but fixed in amount once and for all time with reference to the special benefit which such property derives from the cost of the project, while taxes are generally held to be a rate or duty levied each year for purposes of general revenue, regardless of the direct benefit accruing to the person or property taxed. See Dressman v. Farmers' & Traders' Nat. Bank of Covington, 100 Ky. 571, 38 S.W.1052, 36 L.R.A. 121; and 63 C.J.S. Municipal Corporations " 1290b, page 1026. | "Taxes" are distinguishable from "special assessments" in that taxes are generally a rate or duty levied each year for purposes of general revenue, regardless of benefit to the taxpayer, while special assessments are local burdens laid on property, for a public purpose, but in a fixed amount and once for all time with reference to a special benefit. | How is special assessments distinguished from taxes? | Taxation - Memo # 914 - C - JL_60618.docx | ROSS-003294107-ROSS-003294108 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 6197 | Rubio v. Capital One Bank, 613 F.3d 1195 | 172H+1342 | It is argued that this appeal should be remanded for factual development because "fixed" can also reasonably be interpreted to mean "not tied to an index." See Concurrence and Dissent at 1208"09. But it is precisely because reasonable consumers can interpret an ambiguous disclosure in more than one way that such a disclosure cannot be clear and conspicuous. See, e.g., Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803, 808 (7th Cir.2001). Furthermore, because TILA is liberally construed in favor of the consumer and strictly enforced against the creditor, Jackson, 890 F.2d at 120, any misleading ambiguity any disclosure that a reasonable person could read to mean something that is not accurate "should be resolved in favor of the consumer." Rossman, 280 F.3d at 394. | Because Truth in Lending Act (TILA) is liberally construed in favor of the consumer and strictly enforced against the creditor, any misleading ambiguity, that is, any disclosure that a reasonable person could read to mean something that is not accurate, should be resolved in favor of the consumer. Truth in Lending Act, S 127(c)(1)(A)(i)(I), 15 U.S.C.A. S 1637(c)(1)(A)(i)(I). | "Under TILA, should any misleading ambiguity be resolved in the favor of the consumer?" | 013948.docx | LEGALEASE-00153939-LEGALEASE-00153940 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 6198 | Supervisors of Washington Cty. v. Saltville Land Co., 99 Va. 640 | 200+121 | It seems to be well settled that the general assembly, in the absence of constitutional restrictions, may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. | In the absence of constitutional restrictions, the Legislature may impose upon a taxing district, such as a town, the duty of keeping in repair the streets and roads within, and relieve it from taxation for roads without, its limits. The Legislature judges finally and conclusively upon this question. Section 2 of Article VII of the Constitution of this State does not restrain the Legislature in this respect, and it may exempt lands lying within a town from the payment of a county road tax. | Can the Legislature relieve a taxing district from taxation for roads? | 019188.docx | LEGALEASE-00154079-LEGALEASE-00154080 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6199 | Tactuk v. Freiberg, 24 A.D.2d 503 | 307A+581 | The parties were actively engaged in settlement negotiations of this action and, at the time of the "automatic" dismissal of the action, a motion was pending before the court. Rule II(e) of the rule for the Supreme Court, Queens County, and CPLR 3404, both of which provide for the dismissal of abandoned cases, suggest a "presumption;" they were not intended to apply where litigation is "actually in progress' (Marco v. Sachs, 10 N.Y.2d 542, 550, 226 N.Y.S.2d 353, 357, 181 N.E.2d 392, 395). | Rules providing for dismissal of abandoned cases are not intended to apply where litigation is actually in progress. Supreme Ct. Rules, N.Y. and Queens Counties, rule 2(e); CPLR Rule 3404. | Are rules providing for dismissal of abandoned cases intended to apply where litigation is actually in progress? | 038898.docx | LEGALEASE-00154348-LEGALEASE-00154349 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 6200 | O'Callaghan v. Satherlie, 2015 IL App (1st) 142152 | 307A+685 | In comparison, section 2"619 permits dismissal based on certain defects or defenses, and provides that the motion must be supported by affidavit where the grounds for the motion do not appear on the face of the complaint. Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 485, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). Because section 2"619(a)(9) permits dismissal where a plaintiff's claims are "barred by other affirmative matter avoiding the legal effect of or defeating the claim" (emphasis added) (735 ILCS 5/2"619(a)(9) (West 2006)), rather than affirmative defenses, section 2"619 is not the exclusive means for obtaining dismissal based on an affirmative defense. See K. Miller Construction Co., 238 Ill.2d at 291"92, 345 Ill.Dec. 32, 938 N.E.2d 471. | A motion to dismiss based on defects or defenses provides that the motion must be supported by affidavit where the grounds for the motion do not appear on the face of the complaint. S.H.A. 735 ILCS 5/2-619. | Should a motion to dismiss based on defects or defenses provides that the motion be supported by an affidavit where the grounds for the motion do not appear on the face of the complaint? | 038956.docx | LEGALEASE-00154471-LEGALEASE-00154472 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 6201 | Moening v. Alaska Mut. Bank, 751 P.2d 5 | 8.30E+239 | When a note is executed and secured by a deed of trust, the documents are read and construed together as one contract to ascertain the parties' intent. In re Sutton Inv., 46 N.C.App. 654, 266 S.E.2d 686, 689 (1980), rev. denied, 301 N.C. 90 (1980); Herrington v. Murphy, 446 P.2d 595, 597 (Okla.1968). The contract is interpreted to give effect to the reasonable expectations of the parties, looking to the language of the contract, the circumstances surrounding its adoption, and case law interpreting similar agreements. Craig Taylor Equip. v. Pettibone Corp., 659 P.2d 594, 597 (Alaska 1983). Ambiguities are construed in favor of the debtor. Patton v. First Fed. Sav. & Loan Ass'n, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978). | When note is executed and secured by deed of trust, documents are read and construed together as one contract to ascertain parties' intent. | "When a note is executed and secured by a deed of trust, is the documents read and construed together as one contract?" | Bills and Notes - Memo 17 - KC_61941.docx | ROSS-003323199-ROSS-003323200 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6202 | In re Hollingworth, 453 B.R. 32 | 172H+41 | Chapter 183C requires lenders to receive certification that their borrowers received counseling prior to finalizing high-cost home mortgage loans. Chapter 183C, " 3. High-cost home mortgage loans are defined as loans in which the points and fees exceed 5% of the total financed amount. Chapter 183C, " 2. In the absence of certification the loan is unenforceable. Chapter 183C, " 3. Because Keybank never received such certification, the plaintiffs assert the mortgage on their home is unenforceable and must be discharged. | Under the Massachusetts Predatory Home Loan Practices Act, lenders are required to receive certification that their borrowers received counseling prior to finalizing high-cost home mortgage loans. M.G.L.A. c. 183C, S 3. | Should lenders require to receive certification that their borrowers received counseling from an approved third-party prior to finalizing a high-cost home mortgage loan for the loan to be enforceable? | 013673.docx | LEGALEASE-00155376-LEGALEASE-00155377 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 6203 | United States v. Bloom, 925 F. Supp. 426 | 141E+1237 | While relationship between scholar and National Health Service Corps (NHSC) under scholarship loan program is evidenced by contract, relationship is statutory, not contractual, and contract defenses such as breach of contract, impossibility, and accord and satisfaction are not defenses to payment of scholarship obligation. United States v. Vanhorn, 20 F.3d 104, 110 (4th Cir.1994) (contract defenses of substantial compliance, economic duress, and estoppel are not valid defenses in cases under this statutory scheme); United States v. Arron, 954 F.2d at 251; United States v. Melendez, 944 F.2d 216, 219 (5th Cir.1991) (contract principles do not apply to NHSC scholarship agreement); United States v. Citrin, 972 F.2d 1044, 1049 (9th Cir.1992); United States v. Martin, 710 F.Supp. at 274 (impossibility defense does not apply to contracts when the terms are established by statute). | While relationship between scholar and National Health Service Corps (NHSC) under scholarship loan program is evidenced by contract, relationship is statutory, not contractual, and contract defenses such as breach of contract, impossibility, and accord and satisfaction are not defenses to payment of scholarship obligation. | Can a student raise a defense for defaulting on loan or scholarship payments? | 017083.docx | LEGALEASE-00154827-LEGALEASE-00154828 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 6204 | Fischer v. Zollino, 303 Conn. 661 | 156+52(1) | "Strong public policies have long formed the basis of the doctrine of equitable estoppel. The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties.... No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong.... | The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. | Is the office of an equitable estoppel to show what equity and good conscience require? | 018080.docx | LEGALEASE-00155346-LEGALEASE-00155347 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 6205 | Countrywide Home Loans v. Estate of Rowe, 224 So. 3d 1152 | 307A+690 | Suits dismissed for want of prosecution do not decide any issues in controversy, do not form the basis of res judicata, and are therefore presumptively to be dismissed without prejudice. City of New Orleans v. Westwego Canal & Terminal Co., 206 La. 450, 19 So.2d 201 (1944), cited in Johnson v. American Bell Fedl Credit Union, 2014-2551 (La. 3/27/15), 164 So.3d 182; Entrada Co. v. Pressley, 50,261 (La. App. 2 Cir. 12/2/15), 183 So.3d 617. We are constrained to find that the instant judgment addressed none of the substantive issues and, presumptively, should have been without prejudice. | Suits dismissed for want of prosecution do not decide any issues in controversy, do not form the basis of res judicata, and are therefore presumptively to be dismissed without prejudice. | Do suits dismissed for want of prosecution not decide any issues in controversy or the basis of res judicata? | 024597.docx | LEGALEASE-00155795-LEGALEASE-00155796 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 6206 | State ex rel. Missouri Highway & Transp. Comm'n v. Kersey, 663 S.W.2d 364 | 307A+581 | In deciding whether to order dismissal for failure to prosecute, a trial court may consider not only the length of delay, but attendant circumstances. Schreck v. Parker, 388 S.W.2d 538, 541 (Mo.App.1965); State ex rel. State Highway Commission v. Milnes, 573 S.W.2d 727, 728 (Mo.App.1978). | In deciding whether to order dismissal for failure to prosecute, trial court may consider not only length of delay, but attendant circumstances; a fair test is whether the excepting party had a reasonable opportunity to bring its exceptions to trial. | Can court consider length of delay and any other attendant circumstances in deciding whether to dismiss for failure to prosecute? | 039072.docx | LEGALEASE-00155090-LEGALEASE-00155091 | Condensed, SA | 0.13 | 0 | 1 | 0 | 1 | |
| 6207 | DeSiato v. Shahboz, 277 419 A.2d 798 | 307A+581 | However, a party's right to seek a non pros may be waived when he indicates through his conduct a willingness the merits notwithstanding the delay. Pennsylvania R. R. Co. v. Pittsburgh, 335 Pa. 449, 6 A.2d 907 (1939); Kennedy v. Bulletin Co., 237 Pa.Super. 66, 346 A.2d 343 (1975); Poluka v. Cole, supra. The rationale behind this waiver is that both parties have an obligation to assert their legal rights with promptness so that it would be inequitable to grant a non pros to a defendant who believed that the plaintiff had abandoned his action and yet who still manifested an intention to pursue the merits of the cause and allowed the plaintiff to incur the expense of bringing the case to trial. Forrest v. Philadelphia R. T. Co., 261 Pa. 383, 104 A. 663 (1918). | Party's right to seek non pros may be waived when he indicates through his conduct a willingness to try case on merits, notwithstanding the delay, and rationale behind waiver is that both parties have obligation to assert their legal rights with promptness so that it would be inequitable to grant non pros to defendant who believed that plaintiff had abandoned his action and yet who still manifested intention to pursue merits of cause and allowed plaintiff to incur expense of bringing case to trial. | Can a party's right to seek non pros be waived when he indicates through his conduct a willingness to try case on merits? | Pretrial Procedure - Memo # 9685 - C - SK_61586.docx | ROSS-003279694-ROSS-003279695 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6208 | Johnson v. Campbell, 154 S.W.2d 878 | 307A+583 | And as has already been indicated, before a court is authorized to dismiss a cause for want of prosecution, he must reach the conclusion that the plaintiff has intentionally abandoned the prosecution thereof, or that the facts are such that the law will imply an intention to abandon the prosecution. The facts presented in this case are such as would support the trial court's conclusion that relator had intended to abandon his cross-action and cause its dismissal on November 7, 1938, by failing to appear on or before that day, afternotice that it would then be dismissed. Such a conclusion by the court would justify his refusal to set the cause down for trial, even if after its abandonment it had not been dismissed from the docket. See Burger v. Young, 78 Tex. 656, 15 S.W. 107. And since the court may have refusedto set the cross-action down for trial upon such a conclusion, which conclusion would constitute an action of judicial discretion, and we will not by a writ of mandamus constrain the court in the exercise ofjudicial discretion. See Wright v. Swayne, 104 Tex. 440, 140 S.W. 221, Ann.Cas.1914B, 288. | Before a court is authorized to dismiss a case for want of prosecution, court must reach the conclusion that the plaintiff has intentionally abandoned the prosecution thereof or that the facts are such that the law will imply an intention to abandon the prosecution. | Should a court reach the conclusion that plaintiff has intentionally abandoned prosecution before dismissing the case for want of prosecution? | Pretrial Procedure - Memo # 9745 - C - SHS_61620.docx | ROSS-003296666-ROSS-003296667 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 6209 | CitiMortgage v. Gaudiano, 142 Conn. App. 440 | 307A+687 | In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Bellman v. West Hartford, 96 Conn.App. 387, 393, 900 A.2d 82 (2006). Further, in addition to admitting all facts well pleaded, the motion to dismiss "invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) Henriquez v. Allegre, 68 Conn.App. 238, 242, 789 A.2d 1142 (2002). | In addition to admitting all facts well pleaded, a motion to dismiss invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. | "In addition to admitting all facts well pleaded, does a motion to dismiss invoke any record that accompanies the motion?" | 039364.docx | LEGALEASE-00154914-LEGALEASE-00154915 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6210 | Gamboa v. Alvarado, 407 Ill. App. 3d 70 | 307A+685 | Section 2"619(a)(9) of the Code permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2008); Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). An " "affirmative matter," in a section 2"619(a)(9) motion, is something in the nature of a defense" which, although the moving party admits the legal sufficiency of the complaint, negates the cause of action completely. Van Meter, 207 Ill.2d at 367, 278 Ill.Dec. 555, 799 N.E.2d 273; Borowiec v. Gateway 2000, Inc., 209 Ill.2d 376, 383, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004); Neppl v. Murphy, 316 Ill.App.3d 581, 584, 249 Ill.Dec. 736, 736 N.E.2d 1174 (2000). The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit. Borowiec, 209 Ill.2d at 383, 283 Ill.Dec. 669, 808 N.E.2d 957. | The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit in order for a motion to dismiss to be granted. S.H.A. 735 ILCS 5/2-619(a)(9). | "Should the defect, defense or affirmative matter be apparent on the face of the pleading attacked or be supported by affidavit in order for a motion to dismiss to be granted?" | 039410.docx | LEGALEASE-00155580-LEGALEASE-00155581 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6211 | Wallace v. Sinclair, 114 Cal. App. 2d 220 | 308+92(1) | Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. The heart of agency is expressed in the ancient maxim: "Qui facit per alium facit per se." See 2 C.J.S., Agency, " 1, p. 1023. The extent of the agency is measured by the authority conferred upon the agent, actually or ostensibly and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal. Civil Code, secs. 2315, 2316, 2317, 2318, 2319, 2320, 2330. The agent has actual authority defined by section 2316 unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency, sec. 2318. In brief, an agent can act in the place of his principal while an employee may act only for his employer. 2 Cal.Jur.2d p. 653; People v. Treadwell, 69 Cal. 226, 236, 10 P. 502; Crossin v. Elysian Springs Water Company, 105 Cal.App. 449, 454, 287 P. 985 | The extent of an agency is measured by the authority conferred upon the agent, actually or ostensibly, and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal, and the agent has actual authority as defined by the Civil Code, unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency. Civ.Code, SS 2315-2320, 2330. | Can the extent of agency be measured by the authority conferred upon the agent? | 041632.docx | LEGALEASE-00155678-LEGALEASE-00155679 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 6212 | Com. v. O'Neil, 67 Mass. App. Ct. 284 | 3.77E+25 | The defendant proposes that we adopt the definition of malice required as an element of the crime of malicious destruction of property (G.L. c. 266, " 127). We decline to adopt this proposal as we have declined to adopt it in the past. See Commonwealth v. Paton, 63 Mass.App.Ct. at 219, 824 N.E.2d 887. Malicious destruction of property is a specific intent crime that requires, as an element of the offense, a showing of a cruel, hostile, or vengeful intent in addition to the intentional doing of the unlawful act. See Commonwealth v. McDowell, 62 Mass.App.Ct. 15, 22, 814 N.E.2d 1139 (2004). Even with crimes not requiring a specific intent, "it seems frequently to be assumed that malice, as a jural concept, must involve intent plus some matter of aggravation whereas, in truth, the requirement is fully satisfied by intent minus any matter of exculpation or mitigation" (emphasis original). Perkins & Boyce, Criminal Law 857 (3d ed.1982). As usually applied, "the wilful doing of an unlawful act suffices to prove malice." Commonwealth v. Redmond, 53 Mass.App.Ct. 1, 4, 757 N.E.2d 249 (2001). The concept of malice, therefore, need not include the element of hatred, spite, grudge, or ill will. "The malice required ... is not a feeling of ill-will toward the person threatened, but the wilful doing of the act with the illegal intent." Commonwealth v. Buckley, 148 Mass. 27, 28, 18 N.E. 577 (1888). In certain circumstances malice does not require an intent even to do the prohibited act, when, "[i]n the absence of any circumstance of exculpation or mitigation an act may be done with such heedless disregard of a harmful result, foreseen as a likely possibility, that it differs little in the scale of moral blame worthiness from an actual intent to cause such harm." Perkins & Boyce, supra at 858.7 See Commonwealth v. Pierce, 138 Mass. 165, 179 (1884). | Concept of "malice," for purposes of offense of criminal harassment, need not include the element of hatred, spite, grudge, or ill-will; the malice required is not a feeling of ill-will toward the person threatened, but the wilful doing of the act with the illegal intent. M.G.L.A. c. 265, S 43A(a). | "For the purposes of the offense of criminal harassment, what does the concept of ""malice"" require?" | 046791.docx | LEGALEASE-00155190-LEGALEASE-00155192 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6213 | Stanley v. Magrath, 719 F.2d 279 | 141E+1196 | Plaintiffs claim that the Regents' decision to institute the refundable fee system for the Board of Student Publications was in response to the content of the "Humor Issue" and hence violates the First Amendment. A public university may not constitutionally take adverse action against a student newspaper, such as withdrawing or reducing the paper's funding, because it disapproves of the content of the paper. Joyner v. Whiting, 477 F.2d 456, 460 (4th Cir.1973); Antonelli v. Hammond, 308 F.Supp. 1329, 1337"38 (D.Mass.1970); cf. Papish v. University of Missouri Curators, 410 U.S. 667, 670"71, 93 S.Ct. 1197, 1199"1200, 35 L.Ed.2d 618 (1973) (invalidating student's expulsion that was motivated by disapproval of contents of newspaper that student distributed on campus). Thus, to prevail on their First Amendment claim, the plaintiffs must show that the Regents' decision was adverse and that the decision was substantially motivated by the content of the newspaper. See Givhan v. Western Line Consolidated School Dist., 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); Mt. Healthy School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). | Public university may not constitutionally take adverse action against student newspaper, such as withdrawing or reducing paper's funding, because it disapproves of content of paper. | Can a public university take adverse action against a student newspaper because it disapproves of the content of the paper? | 016834.docx | LEGALEASE-00156282-LEGALEASE-00156283 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 6214 | Manago v. Giorlando, 143 A.D.2d 646 | 307A+581 | An action is deemed abandoned where a default has occurred and where a plaintiff has failed to seek a default judgment within one year after the default (CPLR 3215[c]). Under such circumstances, to avoid dismissal of the complaint as abandoned, the plaintiffs must offer a reasonable excuse for their delay and must demonstrate that their complaint is meritorious (see, Eaves v. Ocana, 122 A.D.2d 18, 504 N.Y.S.2d 187). However, in the instant case, the parties' agreement extending, sine die, Arenstein's time to answer precluded the plaintiffs from seeking a default judgment against him within the statutory period (see, Keen v. Keen, App.Div., 527 N.Y.S.2d 817). Moreover, the plaintiffs' verified complaint established that their causes of action were meritorious (see, Grosso v. Hauck, 99 A.D.2d 750, 471 N.Y.S.2d 662 | To avoid dismissal of complaint as abandoned, plaintiff must offer reasonable excuse for delay in demanding answer and must demonstrate that complaint is meritorious. McKinney's CPLR 3215(c). | "Should plaintiff offer reasonable excuse for delay in demanding answer and demonstrate that complaint is meritorious, to avoid dismissal of complaint as abandoned?" | Pretrial Procedure - Memo # 10053 - C - KG_62394.docx | ROSS-003311322-ROSS-003311323 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 6215 | Warner v. Chauffeurs, Teamsters, & Helpers Local Union No. 414, 73 N.E.3d 190 | 307A+554 | In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support. In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. | In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts. Ind. R. Trial P. 12(B)(1). | Can the trial court weigh the evidence to determine the existence of the requisite jurisdictional facts? | Pretrial Procedure - Memo # 10071 - C - AC_62401.docx | ROSS-003307387 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 6216 | Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening, 791 So. 2d 4 | 307A+685 | Florida law prescribes a certain procedure when a motion to dismiss raises the issue of personal jurisdiction. See Venetian Salami v. Parthenais, 554 So.2d 499, 502 (Fla.1989). First, the plaintiff pleads the basis for jurisdiction without the necessity of including all supporting facts. See id. A foreign defendant that wishes to contest jurisdiction must move to dismiss and, further, must attach to the motion affidavits in support of this position. See id. The burden then shifts to the plaintiff to prove by affidavit that jurisdiction is proper. See id. | A foreign defendant that wishes to contest personal jurisdiction must move to dismiss and attach to the motion affidavits in support of this position. West's F.S.A. S 48.193. | Should a foreign defendant that wishes to contest personal jurisdiction move to dismiss the complaint attaching affidavits in support of the position? | Pretrial Procedure - Memo # 10147 - C - SB_62058.docx | ROSS-003281393-ROSS-003281394 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6217 | Jaffe v. Carol Mgmt. Corp., 268 A.D.2d 292 | 307A+685 | Plaintiff's sole submission on the merits was a written decision of the Supreme Court, New York County, which permitted plaintiff to serve an amended complaint adding causes of action (CPLR 3025[b] ), and dismissed some causes of action, while sustaining others (CPLR 3211[a][7] ). Such a decision is insufficient to defeat a CPLR 3216 motion to dismiss, where the plaintiff must present an affidavit of merit, or its equivalent, from an individual having personal knowledge of the facts underlying the action (CPLR 3216[e]; Hy"Tech Coatings v. Middle Country Cent. School Dist., 266 A.D.2d 264, 698 N.Y.S.2d 277; Pub. Serv. Mut. Ins. Co. v. Zucker, 225 A.D.2d 308, 309, 639 N.Y.S.2d 5; Russo v. Automotive Rentals, Inc., 247 A.D.2d 603, 669 N.Y.S.2d 232). The decision upon which plaintiff relies decided no more than that the causes of action sustained were facially valid. | To defeat motion to dismiss for want of prosecution, plaintiff must present an affidavit of merit, or its equivalent, from an individual having personal knowledge of the facts underlying the action. McKinney's CPLR 3216(e). | "Should a plaintiff present an affidavit of merit, or its equivalent to defeat motion to dismiss?" | Pretrial Procedure - Memo # 10149 - C - KI_62060.docx | ROSS-003292829-ROSS-003292830 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6218 | Curtis by Curtis v. Cook Cty., 109 Ill. App. 3d 400 | 307A+685 | In addition to the other arguments raised, Westchester contends that the section of 22nd Street relevant to plaintiffs' cause of action is outside the geographical boundaries of Westchester. Westchester failed to renew this issue or attach its affidavit in its response to this complaint. Furthermore, Westchester's motion to dismiss the second amended complaint was brought pursuant to section 45 of the Civil Practice Act (Ill.Rev.Stat.1979, ch. 110, par. 45). Although affidavits may be considered under a section 48 motion to dismiss (Ill.Rev.Stat.1979, ch. 110, par. 48), they may not be considered under a section 45 motion to dismiss for failure to state a cause of action, which admits all well pleaded facts and attacks facially only the complaint's legal sufficiency. Johnson v. Nationwide Business Forms, Inc. (1976), 41 Ill.App.3d 128, 131, 3 Ill.Dec. 761, 359 N.E.2d 171. | Although affidavits may be considered under motion to dismiss, they may not be considered under motion to dismiss for failure to state cause of action, which admits all well-pleaded facts and attacks facially only complaint's legal sufficiency. Ill.Rev.Stat. 1979, ch. 110, PP 45, 48. | Can affidavits be considered in support of any motion to dismiss attacking sufficiency of complaint? | 024585.docx | LEGALEASE-00156012-LEGALEASE-00156013 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6219 | Hammonds v. Sherman, 277 Ga. App. 498 | 307A+690 | A trial court may dismiss a civil action without prejudice for failure to appear at a peremptory calendar call. We review such a dismissal for abuse of discretion. There is a presumption that the clerk gave proper notice of the calendar call, and the burden is on Hammonds to show that she was not notified. | Trial court may dismiss a civil action without prejudice for failure to appear at a peremptory calendar call. West's Ga.Code Ann. S 9-11-41(b); Uniform Superior Court Rule 14, 20(A). | Can a trial court dismiss a civil action without prejudice for failure to appear at a peremptory calendar call? | Pretrial Procedure - Memo # 10362 - C - NS_62087.docx | ROSS-003298223 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6220 | People v. Saltray, 969 P.2d 729 | 3.77E+10 | As pertinent here, the current statute requires the prosecution to prove that defendant acted knowingly, i.e., that he was aware that his conduct was such that it was practically certain to place the victim in fear of imminent serious bodily injury. As stated by our supreme court in People v. Crump, 769 P.2d 496, 499 (Colo.1989): [T]he mental culpability element of felony menacing is satisfied when the offender is aware that he is placing or attempting to place another person in fear of imminent serious bodily injury by the use of a deadly weapon, regardless of whether or not the offender had a conscious objective to cause such fear in the other person. As a result, in People v. Zieg, 841 P.2d 342 (Colo.App.1992), a division of this court held that what the victim saw or heard during the course of a felony menacing incident would be relevant to determining defendant's intent but that it was unnecessary to prove that the victim actually knew a deadly weapon was involved. The court stated: Hence, we conclude that, if the actions of the perpetrator would reasonably cause fear of imminent serious bodily injury in the victim ... felony menacing has been committed.People v. Zieg, supra, 841 P.2d at 344. | Menacing statute, which prohibits defendant from knowingly placing or attempting to place another person in fear of imminent serious bodily injury, requires prosecution to prove that defendant acted knowingly, i.e., that he was aware that his conduct was such that it was practically certain to place victim in fear of imminent serious bodily injury. West's C.R.S.A. S 18-3-206. | "For a conviction under the menacing statute, what is the prosecution required to prove about the defendant?" | 046655.docx | LEGALEASE-00156062-LEGALEASE-00156063 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6221 | Fiona C. v. Kevin L., 166 Conn. App. 844 | 3.77E+34 | We proceeded to interpret the elements of stalking in the second degree, one of the underlying predicate offenses set forth in " 46b"16a (a), and the specific offense for which the court granted the plaintiff's application for a civil protection order. "Stalking in the second degree under " 53a"181d (b)(1) includes the following elements: (1) that the respondent acting knowingly, (2) that the respondent engaged in a course of conduct directed at the victim, and (3) that such conduct would cause a reasonable person to fear for his or her physical safety or for the physical safety of a third person." Kayla M. v. Greene, supra, 163 Conn.App. at 505, 136 A.3d 1. We then recited the statutory definition of "course of conduct" as follows: "A course of conduct is defined as two or more acts, including, but not limited to, acts in which a person directly, indirectly or through a third party, by any action, method, device or means, (1) follows, lies in wait for, monitors, observes, surveils, threatens, harasses, communicates with or sends unwanted gifts to, a person, or (2) interferes with a person's property. General Statutes " 53a"181d (a)." (Internal quotation marks omitted.) Id., at 505"506, 136 A.3d 1. | Stalking in the second degree includes the following elements: (1) that the defendant acting knowingly, (2) that the defendant engaged in a course of conduct directed at the victim, and (3) that such conduct would cause a reasonable person to fear for his or her physical safety or for the physical safety of a third person. C.G.S.A. S 53a-181d(b)(1). | What are the elements of stalking in the second degree? | Threats - Memo #84 - C - LB_61816.docx | ROSS-003296683-ROSS-003296684 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6222 | State v. Rio, 38 Wash. 2d 446 | 67+9(2) | It is stated in 12 C.J.S., Burglary, " 11, p. 675, that "a servant, or boarder, or joint occupant of a room, is guilty of burglary if he exceeds his rights either with respect to the time of entering or the room into which he enters; and a servant, or a guest or boarder, with the right to be in the house, may be convicted of burglary on proof that he broke and entered at a time or place beyond his authority." | A servant, or boarder, or joint occupant of a room is guilty of burglary if he exceeds his rights either with respect to time of entering or room into which he enters, and a servant, or a guest or boarder, with right to be in house, may be convicted of burglary on proof that he broke and entered at a time or place beyond his authority. Rem.Rev.Stat. S 2579. | When is a servant guilty of burglary? | Burglary - Memo 275 - RK_62278.docx | ROSS-003279058-ROSS-003279060 | SA, Sub | 0.13 | 0 | 0 | 1 | 1 | |
| 6223 | Ebbets Partners, Ltd. v. Day, 171 Ohio App. 3d 20 | 307A+690 | An action dismissed without prejudice for failure to prosecute is a dismissal otherwise than on the merits, and as such, is not a final, appealable order. See Thomas v. Freeman (1997), 79 Ohio St.3d 221, 680 N.E.2d 997, fn. 2; Christian v. McFarland (June 20, 1997), Montgomery App. No. 15984, 1997 WL 337654. Furthermore, "[a] dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced." (Citations omitted.) Stafford v. Hetman (June 4, 1998), Cuyahoga App. No. 72825, 1998 WL 289383. | Dismissal without prejudice relieves the trial court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. | "Does a dismissal without prejudice relieve the trial court of all jurisdiction over the matter, and the action is treated as though it had never been commenced?" | 025019.docx | LEGALEASE-00156655-LEGALEASE-00156656 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 6224 | Cardiff Equities v. Superior Court, 166 Cal. App. 4th 1541 | 307A+517.1 | "A dismissal "without prejudice" necessarily means without prejudice to the filing of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations. [Citations.]" (Eaton Hydraulics Inc. v. Continental Casualty Co. (2005) 132 Cal.App.4th 966, 974"975, fn. 6, 34 Cal.Rptr.3d 91.) Thus, subject to the statute of limitations, Cardiff had the right to file a new action eliminating all but one of the defendants named in the original action and containing some, but not all, of the claims previously set forth in Case No. 1. In fact, following its voluntary dismissal of Case No. 1, Cardiff could have filed an action identical to the one it dismissed. (Elling Corp. v. Superior Court (1975) 48 Cal.App.3d 89, 96, 123 Cal.Rptr. 734.) | A dismissal "without prejudice" necessarily means without prejudice to the filing of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations. West's Ann.Cal.C.C.P. S 581. | "Does a dismissal ""without prejudice"" necessarily mean without prejudice to the filing of a new action on the same allegations?" | Pretrial Procedure - Memo # 10529 - C - NS_62429.docx | ROSS-003296202-ROSS-003296203 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6225 | Johnson v. Owens, 629 S.W.2d 873 | 308+1 | An essential element of proof of agency is that the alleged principal has both the right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the task. New Terminal Warehouse Corp. v. Wilson, 589 S.W.2d 465 (Tex.Civ.App.-Houston (14th Dist.) 1979, writ ref'd. n.r.e. per curiam, 605 S.W.2d 855, Tex. 1980). | An essential element of proof of agency is that alleged principal has both right to assign agent's task and to control means and details of process by which agent will accomplish the task. | "Can the right to control the means by which the agent will accomplish the task, be an essential element of proof of agency?" | Principal and Agent - Memo 587- SB_63600.docx | ROSS-003322814-ROSS-003322815 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 6226 | Zilinmon v. State, 234 Ga. 535 | 3.77E+10 | The fourteenth enumeration of error complaining of the charge on terroristic threats need not be reached since under the general grounds a conviction would not be authorized on this count. The statute making illegal threats for the purpose of terrorizing another, does not include situations where overt acts are done to carry out the threat. Once an overt act is done, a violation of some other statute occurs. In this case, a threat to kill, if accomplished, would be murder; if not accomplished, it would be aggravated assault. The defendant having been convicted of aggravated assault with intent to murder, the count of the indictment charging the terroristic threats merged into this conviction as stated in State v. Estevez,232 Ga. 316, 320, 206 S.E.2d 475, 479: "An accused may be prosecuted for each crime arising from the same conduct. The proscription is that he may not be convicted of more than one crime if one is included in the other. Code Ann. s 26-506." Accordingly, the trial court is directed to vacate the conviction and sentence for terroristic threats. | Prohibition against the making of illegal threats for purpose of terrorizing another does not include situations where overt acts are done to carry out the threat. | Does the prohibition against the making of illegal threats for the purpose of terrorizing another include situations where overt acts are done to carry out the threat? | Threats - Memo #126 - C - LB_62514.docx | ROSS-003285131-ROSS-003285132 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6227 | Polk Chevrolet v. Vicaro, 162 So. 2d 761 | 83E+426 | Those jurisdictions which have adopted the Uniform Negotiable Instruments Act have interpreted the applicable provisions of the statute as establishing rules precisely conformable with the views set forth in the hereinabove cited authorities as evidenced by the following which we quote with approbation from 10 C.J.S. Bills and Notes, s 212b, Page 698: 'Where a negotiable instrument is indorsed in blank, subsequent blank indorsements need not be considered so far as concerns passing title to the paper, and a Negotiable instrument indorsed in blank followed by an indorsement in full is still payable to bearer, although, as against the special indorser, title must be made through his indorsee.' | Where negotiable instrument is endorsed in blank, subsequent blank endorsements need not be considered so far as concerns passing title to instrument, and negotiable instrument endorsed in blank followed by endorsement in full is still payable to bearer, though as against special endorser title must be made through his endorsee. LSA-R.S. 7:40, 7:48. | When a negotiable instrument is indorsed in blank should subsequent blank endorsements needs to be considered? | Bills and Notes-Memo 1271-ANM_63199.docx | ROSS-003322964 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 6228 | Hilligoss v. Illini Cablevision of Illinois, 294 Ill. App. 3d 282 | 307A+685 | Where the defect is not apparent on the face of the pleading attacked, the motion must be supported by affidavit or documents of a similar nature such as depositions and answers to interrogatories. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 34, 619 N.E.2d 732, 735 (1993). | On motion to dismiss in which defect in claim is not apparent on face of pleading attacked, motion must be supported by affidavit or documents of similar nature such as depositions and answers to interrogatories. S.H.A. 735 ILCS 5/2-619(a)(9). | "On motion to dismiss in which a defect in a claim is not apparent on a face of a pleading attacked, should a motion be supported by affidavit?" | 024852.docx | LEGALEASE-00156735-LEGALEASE-00156736 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 6229 | Fed. Nat. Mortg. Ass'n v. Linner, 193 So. 3d 1010 | 307A+690 | It is not reversible error for a trial court to fail to consider the Kozel factors before dismissing a case without prejudice. The factors set forth in Kozel apply to dismissals with prejudice because such dismissals dispose of a case and may run the risk of punishing the litigant too harshly for counsel's conduct. See Kozel, 629 So.2d at 818. When a case is dismissed without prejudice, a litigant may still have his or her day in court, even if the case needs to be refiled. The concern underlying the Kozel factors is simply not presented by a dismissal without prejudice. | The Kozel factors for determining whether dismissal with prejudice is a warranted response to an attorney's misconduct apply to dismissals with prejudice because such dismissals dispose of a case and may run the risk of punishing the litigant too harshly for counsel's conduct; when a case is dismissed without prejudice, a litigant may still have his or her day in court, even if the case needs to be refiled. | Can dismissal dispose of a case and run the risk of punishing the litigant too harshly for counsel's conduct? | 024919.docx | LEGALEASE-00157367-LEGALEASE-00157368 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 6230 | Singer v. Florida Paving Co., 459 So. 2d 1146 | 307A+693.1 | We also reject appellee contention that res judicata principles bar the filing of Singer independent claim in circuit court. A party who has failed to interpose a compulsory counterclaim in a lawsuit which remains pending may nevertheless file an independent action on the same claim. Cheezem Development Corp. v. Maddox Roof Service, Inc., 362 So.2d 99 (Fla. 2d DCA 1978), cert. denied, 368 So.2d 1370 (Fla.1979). Even though a counterclaim has been dismissed with prejudice, it may be refiled as an independent action while the initial lawsuit remains pending. See Travelers Express, Inc. v. Acosta, 397 So.2d 733 (Fla. 3d DCA 1981). | Even though a counterclaim has been dismissed with prejudice, it may be refiled as an independent action while the initial lawsuit remains pending. West's F.S.A. RCP Rule 1.420(b). | "Even though a counterclaim has been dismissed with prejudice, can it be refiled as an independent action while the initial lawsuit remains pending?" | 025230.docx | LEGALEASE-00156731-LEGALEASE-00156732 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6231 | Deutsche Bank Nat. Tr. Co. v. Harris, 985 N.E.2d 804 | 307A+594.1 | We generally balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. Am. Family Ins. Co. ex rel. Shafer v. Beazer Homes Ind., LLP, 929 N.E.2d 853, 857 (Ind.Ct.App.2010) (citing Office Env'ts, Inc. v. Lake States Ins. Co., 833 N.E.2d 489, 494 (Ind.Ct.App.2005); Belcaster, 785 N.E.2d at 1167); see also Westlake v. Benedict, 469 N.E.2d 27 (Ind.Ct.App.1984), reh'g denied, trans. denied. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of the plaintiff's personal responsibility; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. Am. Family Ins. Co., 929 N.E.2d at 857 (citing Belcaster, 785 N.E.2d at 1167 (citing Lee v. Friedman, 637 N.E.2d 1318, 1320 (Ind.Ct.App.1994))). "The weight any particular factor has in a particular case depends on the facts of that case." Id. (citing Belcaster, 785 N.E.2d at 1167 (quoting Lee, 637 N.E.2d at 1320)). "However, a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay." Id. (citing Belcaster, 785 N.E.2d at 1167 (citing Lee, 637 N.E.2d at 1320)). Although Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be | The weight any particular factor, on an appeal of an order dismissing a case for lack of prosecution, has in a particular case depends on the facts of that case; however, a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay. Trial Procedure Rule 41(E). | Is a lengthy period of inactivity enough to justify dismissal under the circumstances of a particular case? | 025356.docx | LEGALEASE-00157357-LEGALEASE-00157358 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6232 | Villarreal v. San Antonio Truck & Equip., 974 S.W.2d 275 | 307A+582 | The trial court's authority to dismiss for want of prosecution stems from two sources: (1) Rule 165a of the Texas Rules of Civil Procedure, and (2) the court's inherent power. See Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex.1976); Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957). A trial court may dismiss under Rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," tex.R. Civ. P. 165a(1), or when a case is "not disposed of within the time standards promulgated by the Supreme Court...." tex.R. Civ. P. 165a(2). In addition, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. See Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex.1980); Williams, 543 S.W.2d at 90. | In addition to the trial court's authority to dismiss a case for want of prosecution provided by the rules of civil procedure, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | "Can a court dismiss for want of prosecution, when any party seeking affirmative relief fails to appear for any hearing or trial of which the party had notice?" | 025369.docx | LEGALEASE-00157434-LEGALEASE-00157435 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 6233 | Dinerstein v. Evanston Athletic Clubs, 2016 IL App (1st) 153388 | 307A+686.1 | We review de novo the trial court's dismissal of a complaint under section 2"619. Cooney v. Rossiter, 2012 IL 113227, 369 Ill.Dec. 305, 986 N.E.2d 618. A motion to dismiss under section 2"619 admits the legal sufficiency of the complaint but asserts a defense outside the complaint that defeats it. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. Defendants' motion was specifically based on subsection (a)(9), which permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2014); see also Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). | A motion for involuntary dismissal based upon certain defects or defenses admits the legal sufficiency of the complaint but asserts a defense outside the complaint that defeats it. S.H.A. 735 ILCS 5/2-619. | Will a motion for involuntary dismissal based upon certain defects or defenses admit the legal sufficiency of the complaint but asserts a defense outside the complaint that defeats it? | Pretrial Procedure - Memo # 10733 - C - KG_63263.docx | ROSS-003321897-ROSS-003321898 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6234 | Goldberg v. Brooks, 409 Ill. App. 3d 106 | 307A+685 | While affirmative matter must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. Harris v. News"Sun, 269 Ill.App.3d 648, 651, 206 Ill.Dec. 876, 646 N.E.2d 8 (1995). Accordingly, we conclude that Brooks and Bradley were immunized for providing information within the scope of their public employment. | While affirmative matter in motion for involuntary dismissal must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. S.H.A. 735 ILCS 5/2-619. | Should an affirmative matter be more than evidence offered to refute well-pleaded fact? | 025407.docx | LEGALEASE-00158000-LEGALEASE-00158001 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 6235 | Mobil Oil Corp. v. Linear Films, 718 F. Supp. 260 | 308+1 | Distinct from agency based upon complete domination and control is the pure agency theory.When legal liability is predicated on [customary] principles of agency, the existence and entity of the agent are not ignored or set aside but affirmed, and the principal held [liable] precisely because the agent did act in the course of his employment and within the scope of his authority. The very opposite is true when the subsidiary's corporate entity is set aside and ignored and the parent held liable.Stinnes Interoil v. Petrokey (quoting Lowendahl v. Baltimore & Ohio R.R. Co., 247 A.D. 144, 287 N.Y.S. 62, 74 (N.Y.App.Div.), aff'd, 272 N.Y. 360, 6 N.E.2d 56 (1936)). See also Phoenix Canada Oil v. Texaco, 842 F.2d at 1476"77. The pure agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside of the limited agency setting. Phoenix Canada Oil v. Texaco, 842 F.2d at 1477"78. Complete or general domination and control of the agent by the principal is not required. See also supra note 10 and accompanying text. | Pure agency relationship may develop between two corporations whether the two are parent and subsidiary or completely unrelated outside of limited agency setting since complete or general domination and control of agent by principal is not required. | Can an agency relationship develop if two separate corporations are completely unrelated outside of the limited agency setting? | Principal and Agent - Memo 439 - RK_63559.docx | ROSS-003309443-ROSS-003309444 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6236 | Wilson v. Edward Hosp., 2012 IL 112898 | 308+1 | To prove that the hospital is liable for the actions and omissions of the allegedly negligent doctors, plaintiffs were required to prove that the doctors were either the actual agents or the apparent agents of the hospital. Proof of actual agency, or respondeat superior, requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. See Oliveira"Brooks v. Re/Max International, Inc., 372 Ill.App.3d 127, 134, 309 Ill.Dec. 889, 865 N.E.2d 252 (2007). To establish apparent agency, a plaintiff must prove that (1) the principal or its agent acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the principal; (2) the principal had knowledge of and acquiesced in the acts of the agent; and (3) the plaintiff acted in reliance upon the conduct of the principal or its agent, consistent with ordinary care and prudence. Gilbert v. Sycamore Municipal Hospital, 156 Ill.2d 511, 525, 190 Ill.Dec. 758, 622 N.E.2d 788 (1993). | Proof of actual agency, or respondeat superior, requires a showing that: (1) a principal/agent, master/servant, or employer/employee relationship existed, (2) the principal controlled or had the right to control the conduct of the alleged employee or agent, and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. | How is actual agency proven? | Principal and Agent - Memo 489 - KK_62692.docx | ROSS-003319481-ROSS-003319482 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6237 | Tomlinson v. G.E. Capital Dealer Distrib. Fin., 624 So. 2d 565 | 308+1 | The test for determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986); Williams v. Tennessee River Pulp & Paper Co., 442 So.2d 20 (Ala.1983). Just as the retention, under a contract, of a right to supervise an alleged agent to determine whether that person's performance conforms to the requirements of the contract does not conclusively establish control, Wood, 495 So.2d at 1036; Williams, 442 So.2d at 21, terms of a contract disavowing any agency relationship between the parties to a contract will not conclusively establish the absence of control. | Test for determining existence of agency relationship under doctrine of respondeat superior is whether alleged principal reserved right of control over manner of alleged agent's performance. | What is the test for determining the existence of an agency relationship under the doctrine of respondeat superior? | Principal and Agent - Memo 588-SB_63601.docx | ROSS-003307369-ROSS-003307370 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6238 | Franks & Son v. State, 136 Wash. 2d 737 | 371+2002 | We recently articulated a three-part test to determine whether a charge imposed by a governmental entity is a fee or a tax. The first factor to consider is whether the primary purpose of the monetary assessment is to accomplish desired public benefits which cost money, or to regulate an industry or activity. If the primary purpose is to raise revenue, rather than to regulate, then the charge is a tax. "Conversely, if the primary purpose is regulatory, "the charges are properly characterized as "tools of regulation," rather than taxes." " Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995) (quoting Teter v. Clark County, 104 Wash.2d 227, 239, 704 P.2d 1171 (1985)). The primary purpose of the fee in this case was to regulate the trucking industry, and specifically to conduct safety inspections and programs. | In three-part test to determine whether a charge imposed by a governmental entity is a fee or a tax, court considers whether the primary purpose of the monetary assessment is to accomplish desired public benefits which cost money, or to regulate an industry or activity; whether the money collected must be allocated only to the authorized regulatory purpose; and whether there is a direct relationship between the fee charged and the service received, or between the fee charged and the burden produced by the fee payer. | "In the three-part test to determine the nature of a charge imposed by a governmental, what is the first factor a court will consider?" | 044547.docx | LEGALEASE-00157548-LEGALEASE-00157549 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 6239 | Clean Water Coal. v. The M Resort, 127 Nev. 301 | 371+2002 | The Legislature is not permitted to pass local or special laws "[f]or the assessment and collection of taxes for state, county, and township purposes." Nev. Const. art. 4, " 20. An exaction of money for the purpose of generating revenue is a tax. Douglas Co. Contractors v. Douglas Co., 112 Nev. 1452, 1457, 929 P.2d 253, 256 (1996); State v. Boyd, 27 Nev. 249, 256, 74 P. 654, 655 (1903); see also Hawaii Insurers Council v. Lingle, 120 Hawai"i 51, 201 P.3d 564 (2008); 71 Am.Jur.2d State and Local Taxation " 13 (2001) (explaining that a charge is a tax if its purpose is to raise revenue). While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a user fee is optional and applies to a specific charge for the use of publicly provided services. See U.S. v. City of Huntington, W.Va., 999 F.2d 71, 74 (4th Cir.1993) (explaining that "[u]ser fees are payments given in return for a government-provided benefit"; while taxes are " "enforced contribution[s] for the support of government" " (alteration in original) (quoting United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1931))); City of Gary, Ind. v. Indiana Bell Tel., 732 N.E.2d 149, 156 (Ind.2000). | While a tax is compulsory and it entitles the taxpayer to receive nothing except the governmental rights enjoyed by all citizens, a "user fee" is optional and applies to a specific charge for the use of publicly provided services. | Does a tax entitle the taxpayer to receive anything in return? | Taxation - Memo # 1055 - C - JL_62706.docx | ROSS-003293633-ROSS-003293634 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6240 | United States v. Nicklas, 713 F.3d 435 | 3.77E+11 | To sustain a conviction under " 875(c), the government was required to prove the following elements: (1) Nicklas caused a transmission to be made in interstate commerce; (2) he did so knowingly; and (3) the transmission contained a threat to injure the person of another. See, e.g., DeAndino, 958 F.2d at 148. Nicklas stipulated to the first two elements, so the only issue for the jury was whether the September 28 fax contained a statement a reasonable recipient would interpret as a threat to injure the person of another. In determining whether a communication is a threat that violates the statute, "the communication must be viewed in "textual context and also in the context of the totality of the circumstances in which the communication was made." " Floyd, 458 F.3d at 849 (quoting United States v. Bellrichard, 994 F.2d 1318, 1323 (8th Cir.1993) (addressing an analogous violation of " 876)). | In determining whether a communication is a threat that violates the statute prohibiting the transmission in interstate commerce of any communication containing any threat to injure the person of another, the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made. 18 U.S.C.A. S 875(c). | How must a communication be viewed in order to determine whether it is a threat in violation of the statute prohibiting the transmission of a threat in interstate commerce? | 046698.docx | LEGALEASE-00157009-LEGALEASE-00157011 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 6241 | Toll v. Moreno, 458 U.S. 1 | 24+101 | Our cases have long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders. See, e.g., Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); Graham v. Richardson, 403 U.S. 365, 377"380, 91 S.Ct. 1848, 1854"1856, 29 L.Ed.2d 534 (1971); Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 418"420, 68 S.Ct. 1138, 1142"1143, 92 L.Ed. 1478 (1948); Hines v. Davidowitz, 312 U.S. 52, 62"68 (1941); Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 11, 60 L.Ed. 131 (1915). Federal authority to regulate the status of aliens derives from various sources, including the Federal Government's power "[t]o establish [a] uniform Rule of Naturalization," U.S.Const., Art. I, " 8, cl. 4, its power "[t]o regulate Commerce with foreign Nations", id., cl. 3, and its broad authority over foreign affairs, see United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936); Mathews v. Diaz, supra, at 81, n. 17, 96 S.Ct., at 1892, n. 17; Harisiades v. Shaughnessy, 342 U.S. 580, 588"589, 72 S.Ct. 512, 518"519, 96 L.Ed. 586 (1952). | Federal authority to regulate status of aliens derives, inter alia, from federal government's constitutional powers to establish uniform rule of naturalization and to regulate commerce with foreign nations and from its broad authority over foreign affairs. U.S.C.A.Const.Art. 1, S 8, cls. 3, 4. | Does the federal government have the constitutional power to establish a uniform rule of naturalization? | "Aliens, Immigration, and Citizenship - Memo 46 - RK_63915.docx" | ROSS-003281693-ROSS-003281694 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 6242 | Purdy & Fitzpatrick v. State, 71 Cal. 2d 566 | 24+103 | Under such circumstances the state statute encroaches upon the federal power over immigration; a state "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." (Takahashi v. Fish and Game Commission, supra, 334 U.S. at p. 419, 68 S.Ct. at p. 1142.) "The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work." (Truax v. Raich, supra, 239 U.S. at p. 42, 36 S.Ct. at p. 11.) Finally, a state law cannot stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Hines v. Davidowitz, supra, 312 U.S. at p. 67, 61 S.Ct. at p. 404.) | State can neither add to nor take from conditions lawfully imposed by Congress on admission, naturalization and residence of aliens in United States or several states. Immigration and Nationality Act, S 101 et seq., 8 U.S.C.A. S 1101 et seq.; U.S.C.A.Const. art. 1, S 8, cl. 4. | Can states add to or take from the conditions lawfully imposed by Congress upon the naturalization of aliens in the United States? | "Aliens, Immigration, and Citizenship - Memo 50 - RK_63918.docx" | ROSS-003294449-ROSS-003294450 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 6243 | Arizona v. United States, 567 U.S. 387 | 24+690 | The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens.See Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982); see generally S. Legomsky & C. Rodr"guez, Immigration and Refugee Law and Policy 115"132 (5th ed. 2009). This authority rests, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations, see Toll, supra, at 10, 102 S.Ct. 2977 (citing United States v. Curtiss"Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936)). | Government of United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations. U.S.C.A. Const. Art. 1, S 8, cl. 4. | Does the federal government have the power to establish a uniform rule of naturalization? | 006985.docx | LEGALEASE-00159148-LEGALEASE-00159149 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6244 | Griffin v. Oklahoma Nat. Gas Corp., 37 F.2d 545 | 268+681(4) | Grants of the right or privilege to use public streets for the purpose of maintaining and operating railroads, electric light power lines, system or waterworks, gas pipe lines and the like, are franchises. New Orleans Gaslight Co. v. Louisiana Light Co., 115 U.S. 650, 659, 660, 6 S.Ct. 252, 29 L.Ed. 516; People v. State Bd. of Tax Com'rs, 174 N.Y. 417, 67 N.E. 69, 72; Purnell v. McLane, 98 Md. 589, 56 A. 830, 831; Spring Valley Water Works v. Schottler, 62 Cal. 69, 106-109; State v. Billings Gas Co., 55 Mont. 102, 172 P. 799, 800. | Grants of right or privilege to use public streets for maintaining and operating railroads, electric lines, waterworks systems, and gas pipe lines are "franchises." Grants of right or privilege to use public streets for purpose of maintaining and operating railroads, electric light power lines, system of waterworks, gas pipe lines, and the like are franchises. | Is privilege to use the public street a franchise? | Franchises - Memo 6 - ANG_65708.docx | ROSS-003282831-ROSS-003282832 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 6245 | New York Firemen Ins. Co. v. Bennett, 5 Conn. 574 | 289+667 | The indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm; and the burden of proving the authority of the partner so using the partnership name, lies on the creditor or holder of the note. | The indorsement of a note, by one of several partners, in the partnership name, as surety for a third person, without the consent or knowledge of the other partners, will not bind the firm. | "Does an indorsement of a note, by one of several partners, in the partnership name, without the consent of other partners, bind the partnership?" | 022630.docx | LEGALEASE-00158735-LEGALEASE-00158736 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 6246 | Manassas Park Dev. Co. v. Offutt, 203 Va. 382 | 302+20 | It is not even debatable that under the general rule of pleading, and Rule 3:18 of the rules of this Court, material facts constituting a cause of action shall be stated by direct and positive allegations clearly informing the opposite party of the true nature of the claim he is to meet. But alternative pleading is permitted as a modification of the general rule where the pleader has no knowledge as to which of two sets of facts should be alleged and the opposite party would be equally liable under either. Glover v. Berger, 75 Wyo. 191, 294 P.2d 793, 60 A.L.R.2d 583, 588, 589; McGrath v. Dubs, 127 Mont. 101, 257 P.2d 899, 902; 41 Am. Jur., Pleading, "" 41, 42, pp. 317, 318; 71 C.J.S., Pleading, " 41, pp. 109, 110. | Material facts constituting cause of action must be stated by direct and positive allegations clearly informing opposite party of true nature of claim he is to meet, but alternative pleading is permitted where pleader has no knowledge as to which of two sets of facts should be alleged, and opposite party would be equally liable under either. Supreme Court of Appeals Rules, rule 3:18. | Should material facts be stated positively and directly? | 023827.docx | LEGALEASE-00158663-LEGALEASE-00158664 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6247 | Kemp-Golden v. Dep't of Children & Family Servs., 281 Ill. App. 3d 869 | 307A+561.1 | Under section 2"619(a)(9) of the Illinois Code of Civil Procedure (Code), a motion to dismiss must demonstrate "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 1994). Such "affirmative matter" may take the form of an affirmative defense. Curtis v. Wolfe, 160 Ill.App.3d 588, 591, 112 Ill.Dec. 530, 532, 513 N.E.2d 1139, 1141 (1987). In its motion to dismiss, DCFS raised an affirmative defense to both counts of plaintiff's complaint alleging she was without standing to seek the relief she requested. Once a defendant has satisfied its burden of going forward on its motion asserting an affirmative defense, if the plaintiff cannot establish the defense is unfounded, the motion may properly be granted. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 34, 619 N.E.2d 732, 735 (1993). | Once defendant has satisfied its burden of going forward on its motion asserting affirmative defense, if plaintiff cannot establish defense is unfounded, motion may properly be granted. S.H.A. 735 ILCS 5/2-619(A)(9). | Will a motion be granted once defendant satisfies its burden of going forward on its motion asserting affirmative defense? | Pretrial Procedure - Memo # 10745 - C - KI_63862.docx | ROSS-003281489-ROSS-003281490 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6248 | Goldberg v. Brooks, 409 Ill. App. 3d 106 | 307A+685 | In this case, Brooks' affidavit states that the bus duty is not part of the assigned duties of a teacher's assistant. However, she was paid additional money for the bus duty. Brooks also states it was her responsibility to supervise the students and to report any problems or unusual incidents to the principal. Similarly, Bradley merely passed the complaints from Brooks and a parent up the internal chain to Allen. Goldberg submitted no counteraffidavit or evidence creating a genuine issue of material fact on this issue. While affirmative matter must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. Harris v. News"Sun, 269 Ill.App.3d 648, 651, 206 Ill.Dec. 876, 646 N.E.2d 8 (1995). Accordingly, we conclude that Brooks and Bradley were immunized for providing information within the scope of their public employment. | While affirmative matter in motion for involuntary dismissal must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. S.H.A. 735 ILCS 5/2-619. | Can the court accept facts in affidavit if they dispute allegations of complaint and are not contradicted via counter affidavit? | 025405.docx | LEGALEASE-00158715-LEGALEASE-00158716 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6249 | Connelly v. Dooley's Estate, 96 Ill. App. 3d 1077 | 307A+561.1 | Although the affirmative defenses delineated in section 48 are not exclusive, where the affirmative matter is merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint section 48 should not be used. See Venturini v. Affatato (1980), 84 Ill.App.3d 547, 40 Ill.Dec. 1, 405 N.E.2d 1093; Brewer v. Stovall (1977), 54 Ill.App.3d 261, 11 Ill.Dec. 911, 369 N.E.2d 365. | Although affirmative defenses delineated in section of Civil Practice Act permitting the raising of affirmative matter in bar and abatement in motion to dismiss are not exclusive, where affirmative matter is merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint the section should not be used. S.H.A. ch. 110, S 48. | Can a statute for involuntary dismissal be invoked where affirmative matter is evidence which movant submits in contesting ultimate fact contained in contested pleading? | 025422.docx | LEGALEASE-00158056-LEGALEASE-00158057 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 6250 | Gardner v. Hollifield, 96 Idaho 609 | 302+354 | A complaint is subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on the face of the complaint itself. Stewart v. Arrington Const. Co., supra, 92 Idaho at 530, 446 P.2d 895; 2A Moore's Federal Practice 8.28, p. 1863 (1974); 5 Wright & Miller, Federal Practice and Procedure: Civil ss 1277, 1357 (1969). If an affirmative defense is not disclosed by the complaint itself, the defense may not be raised by motion to dismiss, except where "matters outside the pleading are presented to and not excluded by the court," in which case "the motion shall be treated as one for summary judgment." I.R.C.P. 12(b); see Cook v. Soltman, 96 Idaho 187, 525 P.2d 969 (1974); 2A Moore's, supra; 5 Wright & Miller, supra; Stewart v. Arrington Const. Co., supra, 92 Idaho at 531, 446 P.2d 895. | If affirmative defense is not disclosed by complaint itself defense may not be raised by motion to dismiss except for matters outside the pleading are presented to and not excluded by court, in which case, the motion shall be treated as one for summary judgment. Rules of Civil Procedure, rule 12(b)(6). | When can a motion be treated as one for summary judgement? | 025466.docx | LEGALEASE-00158442-LEGALEASE-00158443 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 6251 | Enriquez v. Livingston, 400 S.W.3d 610 | 307A+697 | In light of these requirements, it would be unnecessary and illogical to place the burden on the movant to obtain a setting for an oral hearing on such a motion or somehow directly communicate to the judge his desire for an oral hearing. Accordingly, we hold that a timely and properly verified motion to reinstate requires the trial court to hold an oral hearing on the motion without regard to whether the movant obtains a setting, prepares and files a fiat, sends a letter to the trial judge, or otherwise requests an oral hearing by some communication directly to the trial court. | Burden is on the judge to set an oral hearing on a motion to reinstate plaintiff's case which was dismissed for want of prosecution; upon receiving a copy of a motion to reinstate from the court clerk, a trial judge knows, by virtue of the express language of Civil Procedure Rule governing dismissal and reinstatement of cases, that he is required-without discretion-to set the motion for an oral hearing and notify the parties of the date, time, and place of the hearing, and thus, it is unnecessary and illogical to place the burden on the movant to obtain a setting for an oral hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | Does a timely and properly verified motion to reinstate a case which has been dismissed for want of prosecution require the trial court to hold an oral hearing on the motion without regard to whether the movant obtains a setting? | 025490.docx | LEGALEASE-00158637-LEGALEASE-00158638 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 6252 | Unit 82 Joint Venture v. Int'l Commercial Bank of China, Los Angeles Branch, 359 S.W.3d 267 | 307A+699 | Rule 165a(3) specifies that if no written order disposing of the motion is entered with-in seventy-five days of the judgment, or as provided by Rule 306a, the motion is deemed to be overruled by operation of law. Tex.R.Civ.P. 165a(3). In addition, much like a motion for new trial, a motion to reinstate extends the trial court's plenary jurisdiction, as well as the appellate timetable. See Howlett v. Tarrant Cty., 301 S.W.3d 840, 843"44 (Tex.App.-Fort Worth 2009, pet. denied). | A motion to reinstate following dismissal of a case for want of prosecution extends the trial court's plenary jurisdiction, as well as the appellate timetable. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | "Does a motion to reinstate following dismissal of a case for want of prosecution extend the trial court's plenary jurisdiction, as well as the appellate timetable?" | Pretrial Procedure - Memo # 10813 - C - BP_64076.docx | ROSS-003292689-ROSS-003292690 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 6253 | Finlan v. Peavy, 205 S.W.3d 647 | 307A+676 | But the Fourteenth Court of Appeals in Jimenez recognized, as do we, that the application of Villarreal "would obfuscate what we perceive as bright line precedent regarding satisfaction of a litigant's due process rights applicable to a dismissal of a case for want of prosecution." Jimenez v. Transwestern Prop. Co., 999 S.W.2d 125, 128 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Moreover, application of the Villarreal standard in this case would clash with the United States Supreme Court's notions of due process as a fundamental fairness standard applied to the particular facts in each case. See Lassiter v. Dep't. of Soc. Serv., 452 U.S. 18, 24"25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Therefore, we maintain that the timely received notice of dismissal and a motion for new trial and motion to reinstate with the opportunity for a hearing cures the due process violations, if any, caused by a lack of notice prior to the actual dismissal in this case. | Timely notice to plaintiffs of the dismissal of their cause of action and plaintiffs' motions for new trial and to reinstate, with the opportunity for a hearing, cured any violation of plaintiffs' due process rights resulting from trial court's dismissal of their claims without prior notice and opportunity to be heard, although plaintiffs failed to avail themselves of the opportunity to file motion for a hearing; plaintiffs had opportunity to receive the same hearing post-dismissal they would have received pre-dismissal. U.S.C.A. Const.Amend. 14. | Does a motion to reinstate a dismissed case with the opportunity for a hearing cure the due process violations? | Pretrial Procedure - Memo # 10817 - C - BP_64080.docx | ROSS-003309938-ROSS-003309939 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6254 | Knight v. Trent, 739 S.W.2d 116 | 307A+699 | Appellants contend that rule 165a(2) makes it mandatory for the trial court to grant reinstatement when the failure of a party to appear was not the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. Rule 165a(2) does provide that the trial court shall reinstate the case. Local rule 1.8 requires appellants to show cause, at a hearing, why their case should not be dismissed. The "failure" referred to in rule 165a(2) is not the failure to appear at the show cause hearing, but the failure to show cause why the cause of action should not be dismissed and rule 165a(2)'s mandatory reinstatement requirement is not triggered until appellants have shown cause why the case should not be dismissed for want of prosecution. | Term "failure," referred to in Rule 165a(2), is not failure to appear at show cause hearing, but failure to show cause why suit should not be dismissed for want of prosecution, and Rule 165a(2)'s mandatory reinstatement requirement is not triggered until cause is shown why suit should have been dismissed for said want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd. 2. | "Is a term ""failure,"" referred to in Rule 165a(2), not failure to appear at a show cause hearing?" | Pretrial Procedure - Memo # 10869 - C - KS_63887.docx | ROSS-003279783-ROSS-003279784 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 6255 | Price v. Firestone Tire & Rubber Co., 700 S.W.2d 730 | 307A+583 | The trial court may dismiss a suit for want of prosecution pursuant to either the statutory authority of Rule 165a of the Texas Rules of Civil Procedure or the trial court's "inherent power". State v. Rotello, 671 S.W.2d 507, 508"09 (Tex.1984); Veterans' Land Board v. Williams, 543 S.W.2d 89 (Tex.1976). | Trial court may dismiss suit for want of prosecution pursuant to either statutory authority of Civil Procedure Rule 165a or trial court's "inherent power." Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | "Does a Civil Procedure Rule control reinstatement procedure for all cases, whether dismissed pursuant to that rule or pursuant to a court's inherent power?" | 025585.docx | LEGALEASE-00158338-LEGALEASE-00158339 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 6256 | Seldomridge v. Gen. Mills Operations, 140 S.W.3d 58 | 307A+690 | As an important final note, we must address the fact that the circuit court dismissed Mr. Seldomridge's claim "with prejudice." A dismissal for lack of subject matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. Shaver, 713 S.W.2d at 300. See also, State ex rel. J.E. Jones Constr. Co. v. Sanders, 875 S.W.2d 154, 157 (Mo.App. E.D.1994) (in a motion to dismiss for lack of subject matter jurisdiction, "the trial court decides only the preliminary question of its own jurisdiction, which is not a decision on the merits and is without res judicata effect"). So even if we had affirmed the circuit court, we still would have remanded the case so the circuit court could change its order to a dismissal without prejudice. | A dismissal for lack of subject matter jurisdiction must be without prejudice because the court has no authority to decide the case on the merits. | Should a dismissal for lack of subject matter jurisdiction be without prejudice because the court has no authority to decide the case on the merits? | Pretrial Procedure - Memo # 10887 - C - PC_63691.docx | ROSS-003293047-ROSS-003293048 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6257 | Cornell v. Ripka, 897 N.W.2d 801 | 307A+693.1 | Appellant apparently does not contest that, under Gams, her action was deemed dismissed upon her failure to file the complaint. She argues, however, that her request for voluntary dismissal revived the action for the sole purpose of allowing the district court to dismiss it once more, this time without prejudice. She cites no authority supporting the proposition that rule 41.01(a) empowers a party to revive a previously dismissed action, and we are not persuaded by her argument that rule 5.04 may be circumvented in this way. When an action has been dismissed with prejudice under rule 5.04, a voluntary dismissal without prejudice under rule 41.01(a) is no longer available. | When an action has been dismissed with prejudice under rule that states that any action not filed within one year of commencement is deemed dismissed with prejudice against all parties, a voluntary dismissal without prejudice is no longer available. Minn. R. Civ. P. 5.04, 41.01(a). | "When an action has been dismissed with prejudice under a rule that states that any action not filed within one year of commencement is deemed dismissed with prejudice, is a voluntary dismissal without prejudice no longer available?" | Pretrial Procedure - Memo # 10935 - C - DA_63701.docx | ROSS-003282296-ROSS-003282297 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 6258 | Skinner v. E.F. Hutton & Co., 314 N.C. 267 | 307A+686.1 | On appeal we review the holding of the Court of Appeals that the trial court was required to grant the defendants' motion to dismiss under N.C.G.S. 1A-1, Rule 12(b)(6) for failure to state any claim upon which relief might be granted. Such a motion tests the legal sufficiency of the complaint, and in ruling on "the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." Stanback v. Stanback, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). When the complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, however, the motion will be granted and the action dismissed. Sutton v. Duke, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970). The defendants contend that the doctrine of in pari delicto causes the complaint in the present case to disclose just such an unconditional affirmative defense. | Motion to dismiss under Civil Rule 12(b)(6), for failure to state any claim upon which relief might be granted, tests legal sufficiency of complaint and in ruling on motion, allegations of complaint must be viewed as admitted, and on that basis court must determine as matter of law whether allegation states claim for which relief may be granted. Rules Civ.Proc., Rule 12(b)(6), G.S. S 1A-1. | When will a motion be granted and the action dismissed? | Pretrial Procedure - Memo # 11076 - C - RF_63463.docx | ROSS-003283619 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 6259 | Webber v. St. Louis Cty. 2010 WL 462862 | 307A+561.1 | Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes "on its face and without exception" that the defense applies and the claim is barred." Cornelius v. CJ Morrill, 302 S.W.3d 176, 179 (Mo.App. E.D.2009); Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc 1995) (internal quotation omitted). In this case, the trial court expressly stated that evidence was required for it to rule on the issue of official immunity, evidence was presented and considered by the trial court, and the trial court indicated that it was treating the motion as a motion for summary judgment.Where the trial court entertains matters and evidence outside of the pleadings on a motion to dismiss, the motion to dismiss is converted into a motion for summary judgment, and the judgment is reviewed by this Court as such. Wilson v. Cramer, 317 S.W.3d 206, 208 (Mo.App. W.D.2010). Point denied. | Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes on its face and without exception that the defense applies and the claim is barred. V.A.M.R. 55.08. | Can the petition be dismissed unless it establishes on its face without exception that the defense applies? | Pretrial Procedure - Memo # 11089 - C - KS_63745.docx | ROSS-003296253-ROSS-003296254 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6260 | Nguyen v. Grain Valley R-5 Sch. Dist., 353 S.W.3d 725 | 307A+561.1 | Nguyen v. Grain Valley R-5 Sch. Dist., 353 S.W.3d 725. | Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes on its face and without exception that the defense applies and the claim is barred. | Can the petition be dismissed unless it establishes on its face without exception that the defense applies? | 025938.docx | LEGALEASE-00158254-LEGALEASE-00158255 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 6261 | Tom Geise Plumbing v. Taylor, 396 Ill. App. 3d 289 | 307A+561.1 | As stated, plaintiff contends the trial court erred by granting defendants' motion to dismiss. While defendants' motion to dismiss does not specify what subsection of section 2"619 they intended to proceed under, the parties and trial court seem to have proceeded under section 2"619(a)(9), which permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2006). "[A]ffirmative matter," in a section 2"619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely." | "Affirmative matter," for purposes of a motion to dismiss on basis that the claim is barred by other affirmative matter avoiding the legal effect of or defeating the claim, is something in the nature of a defense which negates the cause of action completely. S.H.A. 735 ILCS 5/2-619(a)(9). | Will an affirmative matter be a nature of defense that negates the cause of action completely? | Pretrial Procedure - Memo # 11092 - C - KS.docx | LEGALEASE-00048593-LEGALEASE-00048594 | Condensed, Order, SA | 0.55 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6262 | State v. Chillingworth, 106 Fla. 323 | 307A+693.1 | While a judgment dismissing an action at law not involving the merits is not a bar to a subsequent action and the same rule applies also to a judgment or nonsuit of a nolle prosequi, such judgment is nevertheless a sufficient disposition of the cause then pending to deprive the court of jurisdiction to reinstate it after the expiration of the term of court at which the judgment of dismissal was property entered. A common-law case noted on the trial docket as a cause triable at a particular term of court is a part of the business required to be disposed of by the court at that trial term, and an order made during the term dismissing the cause for want of prosecution passes beyond the jurisdiction of the court to alter, vacate, or modify upon application therefor not made until after the expiration of the term of court at which the order of dismissal was entered. | Though judgment dismissing law action not involving merits does not bar subsequent action, such judgment is sufficient disposition of cause to deprive court of jurisdiction to reinstate it after expiration of term. | Does a judgment dismissing a law action not involving merits bar subsequent action? | 026007.docx | LEGALEASE-00158394-LEGALEASE-00158395 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6263 | Cislaw v. Southland Corp., 4 Cal. App. 4th 1284 | 308+3(1) | Franchising is a heavily regulated form of business in California, but there are relatively few decisions on the nature of the relationship between franchisor and franchisee as it affects third persons. The general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. (2 Witkin, Summary of Cal. Law (9th ed. 1987) "Agency and Employment," " 6, pp. 24"25.) "[I]t is the right to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists." (Wickham v. Southland Corp. (1985) 168 Cal.App.3d 49, 59, 213 Cal.Rptr. 825, italics added.) "In the field of franchise agreements, the question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee. [Citations.]" (Kuchta v. Allied Builders Corp. (1971) 21 Cal.App.3d 541, 547, 98 Cal.Rptr. 588.) "Only when the essential facts are not in conflict will an agency determination be made as a matter of law." (Wickham v. Southland Corp., supra, 168 Cal.App.3d at p. 55, 213 Cal.Rptr. 825.) | General rule is where franchise agreement gives franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. | Will an agency relationship exist when a franchise agreement gives the franchisor the right of complete control over the franchisee? | Principal and Agent - Memo 382 - RK_63940.docx | ROSS-003320073-ROSS-003320074 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6264 | City of Chicago v. Barnett, 404 Ill. 136 | 308+3(1) | Webster's New International Dictionary defines an insurance broker as "A broker who usually acts as the agent of the insured in making contracts of insurance. Sometimes the broker is declared by statute to be the agent of the insurer for certain purposes, as payment of the premium, and of the insured for all other purposes." The essential and basic feature underlying the relation of a broker to his employer is that of agency, and the principles of law applicable to principal and agent govern their respective rights and liabilities throughout. 8 Am.Jur., Brokers, sec. 14. We held in France v. Citizens Casualty Co., 400 Ill. 55, 79 N.E.2d 28, 30, "The rule is that an insurance broker, like any other broker, is the agent of the person who employs him. If an insurance broker is engaged to purchase insurance covering property of the one employing him, he becomes the agent of the insured and not the insurer. Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402. It is true that under certain circumstances a broker may become the agent of the insurer or, on full disclosure to both parties, he may be the agent for both the insurer and insured as to some particular matters." The word "agent" is a broader term than "broker," more comprehensive in its legal scope, for while every broker is in a sense an agent, every agent is not a broker. 12 C.J.S., Brokers, s 3. A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, El Reno Wholesale Grocery Co. v. Stocking, 293 Ill. 494, 127 N.E. 642, whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance. A broker does not cease to be a broker because he may also in some transactions act as the agent of either or both of the parties thereto. | A "broker," as distinguished from agent, sustains no fixed and permanent employment by or in relation to any principal, but holds himself out for employment by public generally, is employment being that of special agent for single object, whereas an agent sustains fixed and permanent relation to his principal and owes permanent and continued allegiance. | Do brokers have a fixed and permanent employment relation to the principal? | Principal and Agent - Memo 389 - RK_63947.docx | ROSS-003294835-ROSS-003294836 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 6265 | Baker v. Fenley, 233 Mo. App. 998 | 308+1 | Plaintiff does not claim that defendants, or either of them, were brewers or manufacturers of non-intoxicating beer. He does claim that they were agents, subsidiaries or affiliates of such brewers or manufacturers. An "agency is the legal relation which arises when one party, called the "agent," is authorized to represent and act for another party, called the "principal," in bringing or to aid in bringing such principal in contractual relation with a third person, however such authority may be conferred." | An "agency" is the legal relation which arises when one party, called the "agent," is authorized to represent and act for another party, called the "principal," in bringing or to aid in bringing such principal in contractual relation with a third person, however such authority may be conferred. | Can authority to represent another be conferred? | 041857.docx | LEGALEASE-00158454-LEGALEASE-00158455 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 6266 | Van't Rood v. Cty. of Santa Clara, 113 Cal. App. 4th 549 | 308+1 | "The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other.... An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent." (Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974, 983, 21 Cal.Rptr.2d 834; see also, e.g., Vallely Investments v. BancAmerica Commercial Corp. (2001) 88 Cal.App.4th 816, 826, 106 Cal.Rptr.2d 689 [indicia of agency relationship include right to control].) By the same token, "[a] person does not become the agent of another simply by offering help or making a suggestion." (Violette v. Shoup, supra, 16 Cal.App.4th at p. 620, 20 Cal.Rptr.2d 358.) Our high court long ago rejected the notion that "one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent." (Edwards v. Freeman, supra, 34 Cal.2d at pp. 591"592, 212 P.2d 883.) "Control may not be inferred merely from the fact that one person's act benefits another. [Citation.]" (St. Paul Ins. Co. v. Industrial Underwriters Ins. Co., supra, 214 Cal.App.3d at p. 123, 262 Cal.Rptr. 490.) | An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent, and the fact that the parties had a preexisting relationship is not sufficient to make one party the agent for the other. West's Ann.Cal.Civ.Code S 2295. | Is a preexisting relationship sufficient to make one party the agent for the other? | Principal and Agent - Memo 469- PR_63792.docx | ROSS-003281155-ROSS-003281156 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6267 | Ransom v. A.B. Dick Co., 289 Ill. App. 3d 663 | 184+7 | A fiduciary relationship may arise in one of two ways. Particular relationships, such as attorney-client and principal-agent, constitute fiduciary relationships as a matter of law. See Gunther v. Commonwealth Edison Co., 126 Ill.App.3d 595, 82 Ill.Dec. 31, 467 N.E.2d 1104 (1984); Restatement (Second) of Agency "" 1, 13, at 7, 58-60 (1958). Additionally, a fiduciary relationship and the attendant duties may arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. In re Estate of Rothenberg, 176 Ill.App.3d 176, 125 Ill.Dec. 739, 530 N.E.2d 1148 (1988); State Security Insurance Co. v. F.B. Hall & Co., 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940 (1994). When the relationship is not one which gives rise to a fiduciary duty as a matter of law, the party asserting its existence has the burden of establishing such Ill.Dec. 775, 630 N.E.2d 940. | While particular relationships may constitute fiduciary relationships as matter of law, fiduciary relationship and its attendant duties may also arise as result of special circumstances of parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. | Can a fiduciary relationship arise from special circumstances of the parties' relationship? | Principal and Agent - Memo 485 - RK_63970.docx | ROSS-003307216-ROSS-003307217 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6268 | Wilson v. Edward Hosp., 2012 IL 112898 | 308+1 | 18 To prove that the hospital is liable for the actions and omissions of the allegedly negligent doctors, plaintiffs were required to prove that the doctors were either the actual agents or the apparent agents of the hospital. Proof of actual agency, or respondeat superior, requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. See Oliveira"Brooks v. Re/Max International, Inc., 372 Ill.App.3d 127, 134, 309 Ill.Dec. 889, 865 N.E.2d 252 (2007). To establish apparent agency, a plaintiff must prove that (1) the principal or its agent acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the principal; (2) the principal had knowledge of and acquiesced in the acts of the agent; and (3) the plaintiff acted in reliance upon the conduct of the principal or its agent, consistent with ordinary care and prudence. Gilbert v. Sycamore Municipal Hospital, 156 Ill.2d 511, 525, 190 Ill.Dec. 758, 622 N.E.2d 788 (1993). | Proof of actual agency, or respondeat superior, requires a showing that: (1) a principal/agent, master/servant, or employer/employee relationship existed, (2) the principal controlled or had the right to control the conduct of the alleged employee or agent, and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment. | What does actual agency consist of? | Principal and Agent - Memo 527 - RK_63985.docx | ROSS-003308952-ROSS-003308953 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6269 | Noble Sec. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513 | 308+1 | "In determining whether an agency relationship exists, the critical test is the nature and extent of control exercised by the purported principal over the agent." Butterworth v. Integrated Resources Equity Corp., 680 F.Supp. 784, 789 (E.D.Va.1988). Even if no actual agency exists, one party may be held to be an agent of a second party on the basis that the first party has been held out by the second party in such a way that reasonably induces reliance on the appearance. Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 166 (4th Cir.1988). Generally, apparent agency occurs when it is the principal, rather than the agent, who represents or holds out to others that agency exists. In re MBA, Inc., 51 B.R. 966, 973 (Bankr.E.D.Va.1985). Therefore, "[a]n apparent agent is one who reasonably appears to third persons, because of manifestations of another, to be authorized to act as agent for such other." Lynn v. Farm Bureau Mut. Auto. Ins. Co., 264 F.2d 921, 924 (4th Cir.1959). | Under Virginia law, when determining whether an agency relationship exists, the critical test is the nature and extent of control exercised by the purported principal over the agent. | Is the extent of control exercised by the principal a critical test in determining whether an agency relationship exists? | Principal and Agent - Memo 533 - RK_63991.docx | ROSS-003298259-ROSS-003298260 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6270 | Van't Rood v. Cty. of Santa Clara, 113 Cal. App. 4th 549 | 308+1 | "The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other.... An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent." (Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974, 983, 21 Cal.Rptr.2d 834; see also, e.g., Vallely Investments v. BancAmerica Commercial Corp. (2001) 88 Cal.App.4th 816, 826, 106 Cal.Rptr.2d 689 [indicia of agency relationship include right to control].) By the same token, "[a] person does not become the agent of another simply by offering help or making a suggestion." (Violette v. Shoup, supra, 16 Cal.App.4th at p. 620, 20 Cal.Rptr.2d 358.) Our high court long ago rejected the notion that "one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent." (Edwards v. Freeman, supra, 34 Cal.2d at pp. 591"592, 212 P.2d 883.) "Control may not be inferred merely from the fact that one person's act benefits another. [Citation.]" (St. Paul Ins. Co. v. Industrial Underwriters Ins. Co., supra, 214 Cal.App.3d at p. 123, 262 Cal.Rptr. 490.) | An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent, and the fact that the parties had a preexisting relationship is not sufficient to make one party the agent for the other. West's Ann.Cal.Civ.Code S 2295. | Can the fact that the parties had a preexisting relationship make one party the agent for the other? | Principal and Agent - Memo 535 - RK_63993.docx | ROSS-003308658-ROSS-003308659 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6271 | Borders v. Cline, 212 N.C. 472 | 413+101 | Again, "The rule has been said to be to construe a compensation statute so as to include all services which can reasonably be said to come under the provisions; thus, with regard to the employments to which they apply, the acts are to be construed liberally. * * * Even such a provision, however, will not permit a forced construction to be given to their wording; and, apart from such provisions, the rule of liberal construction cannot be carried to the point of applying an act to employments not within its stated scope, or not within its intent or purpose, or of supporting a strained construction to include an occupation or employment not falling within it." 71 C.J. 359. | The Workmen's Compensation Act is to be liberally construed with regard to the employment to which it applies, but the rule of liberal construction cannot be carried to the point of applying the act to employments not within its stated scope or not within its intent or purpose or of supporting a strained construction to include an occupation or employment not falling within it (Code 1935, S 8081(h) et seq.). | Can the compensation act apply to employments not within its stated scope? | 048628.docx | LEGALEASE-00158122-LEGALEASE-00158123 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 6272 | Kaplan v. Gaskill, 108 Neb. 455 | 413+101 | The next question presented is whether or not the employment was in the usual course of the regular trade, business, profession, occupation or vocation of such employer. The statute provides that the act "shall apply * * * to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer" (Laws 1917, c. 85, " 1), and further provides that the act "shall not be construed to include any person whose employment * * * is not in the usual course of the trade, business, profession or occupation of his employer" (Laws 1917, c. 85, " 4, subd. 3). | The provision of the Workmen's Compensation Act that it shall apply to every employer employing one or more employees in a regular trade, business, profession or vocation of such employer does not contemplate that a person can be engaged in only one regular business but he may be engaged in several. Laws 1917, c. 85, S 1. | "Does the Compensation Act apply to employees in the regular trade, business, profession or vocation of an employer?" | Workers' Compensation Memo #624 - C - ANC.docx | LEGALEASE-00048969-LEGALEASE-00048970 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6273 | Arizona v. United States, 567 U.S. 387 | 24+690 | The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. See Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982); see generally S. Legomsky & C. Rodr"guez, Immigration and Refugee Law and Policy 115"132 (5th ed. 2009). This authority rests, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations, see Toll, supra, at 10, 102 S.Ct. 2977 (citing United States v. Curtiss"Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936)). | Government of United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations. U.S.C.A. Const. Art. 1, S 8, cl. 4. | Does the government have the power to establish uniform rules of naturalization? | "Aliens, Immigration and Citizenship - Memo 86 - RK_64819.docx" | ROSS-003281347-ROSS-003281348 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6274 | Scheidemann v. I.N.S., 83 F.3d 1517 | 92+2838 | The Supreme Court, however, has long held that deportation is not a punishment, but rather a mere administrative action:A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish.... The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. | Prohibition against ex post facto laws does not apply to deportation proceedings, which are purely civil actions to determine eligibility to remain in country, not to punish; past conduct is relevant only insofar as it may shed light on respondent's right to remain. U.S.C.A. Const. Art. 1, S 9, cl. 3. | Is a respondents right to remain in the future determined in deportation proceedings? | 006968.docx | LEGALEASE-00160262-LEGALEASE-00160263 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 6275 | Com. v. Mulvey, 57 Mass. App. Ct. 579 | 129+107 | The public element of the offense is readily met in cases where the proscribed conduct takes place on public streets, see Commonwealth v. Mulero, 38 Mass.App.Ct. 963, 963"964, 650 N.E.2d 360 (1995); or by the side of a highway, see Commonwealth v. Bosk, 29 Mass.App.Ct. 904, 906"907, 556 N.E.2d 1055 (1990). It also may be satisfied where the disturbance takes place in a more secluded environment, but only if members of the public are likely to be affected. See Commonwealth v. Collins, 36 Mass.App.Ct. 25, 33, 627 N.E.2d 941 (1994) (disruption occurred in area of police station that was public place); Commonwealth v. LePore, 40 Mass.App.Ct. 543, 549, 666 N.E.2d 152 (1996) (voyeur's conduct, even though unseen by victim, occurred in public alley). Compare Commonwealth v. Blavackas, 11 Mass.App.Ct. 746, 747"750, 419 N.E.2d 856 (1981) (defendant's sexual solicitation and conduct should not have been prosecuted as disorderly conduct; regardless, public element was not met where acts took place in car parked fifty feet from street, up driveway and on lawn area of house). | "Public" element of offense of disorderly conduct may be satisfied if disturbance takes place in a more secluded environment than, for example, on public street or by side of highway, but only if members of the public are likely to be affected. M.G.L.A. c. 272, S 53. | Will the public element of the offense be met in cases where the proscribed conduct takes place in a secluded environment? | Disorder Conduct - Memo 19 - PR_64608.docx | ROSS-003282740-ROSS-003282741 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6276 | Town of Plainfield v. Paden Eng'g Co., 943 N.E.2d 904 | 217+1001 | A contract of surety creates a tripartite contractual relationship between the party secured, the principal obligor, and the party secondarily liable. Meyer v. Bldg. & Realty Serv. Co., 209 Ind. 125, 133, 196 N.E. 250, 253 (1935). A surety is one who undertakes to do that which the principal is bound to do in the event the principal fails to comply with an obligation. Id. While insurance contracts are in many respects similar to surety contracts, there is a "wide difference between the two kinds of contracts." Id. "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event; whereas a contract of suretyship is one to answer for the debt, default, or miscarriage of another[.]" Id. 209 Ind. at 134, 196 N.E. at 253"54. A surety's liability must be measured by the strict terms of his contract. In re Kemper Ins. Companies, 819 N.E.2d 485, 490 (Ind.Ct.App.2004), trans. denied. | While insurance contracts are in many respects similar to surety contracts, there is a wide difference between the two kinds of contracts; insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event, whereas a contract of suretyship is one to answer for the debt, default, or miscarriage of another. | What is the difference between surety and insurance contracts? | 019600.docx | LEGALEASE-00159654-LEGALEASE-00159655 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 6277 | Douthart v. Logan, 86 Ill.App. 294 | 289+525 | The modern definition of the term "good will," as adopted by our Supreme Court, is: "The good will of a partnership may be defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises, or name, or other matter." Farwell et al. v. Huling, 132 Ill. 119; Bates on Partnership, Sec. 957; Story on Partnership, Sec. 99; A. & E. Ency. of Law, Vol. 8, 1366. | The "good will" of a partnership may be defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises or name or other matter. | Is good will of a partnership every possible advantage acquired by the firm in carrying on its business? | Partnership - Memo 537 - RM_64660.docx | ROSS-003280904-ROSS-003280905 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 6278 | Expocorp v. Hyatt Mgmt. Corp. of New York, 134 A.D.2d 234 | 307A+561.1 | To warrant dismissal, a defense grounded on documentary evidence must be a complete one, leaving no genuine triable issues of fact (see, Suburban Broadcasting Corp. v. RCA Corp., 51 A.D.2d 785, 379 N.Y.S.2d 486). Here, since the parol evidence rule does not bar the introduction of extrinsic evidence to show a subsequent waiver or modification of a written contract (see, e.g., Allied Chem. Corp. v. Alpha Portland Ind., 58 A.D.2d 975, 397 N.Y.S.2d 480; see also, 9 Wigmore, Evidence " 2441 [Chadbourn rev., 1981] ), triable issues of fact exist as to whether the alleged representations made subsequent to the execution of the lease constituted a waiver of strict enforcement of the written contract. Accordingly, the motion was improperly granted. | To warrant dismissal, defense grounded on documentary evidence must be complete one, leaving no genuine triable issues of fact. | Should defense on documentary evidence be complete to warrant dismissal leaving no genuine triable issues of fact? | 039560.docx | LEGALEASE-00159268-LEGALEASE-00159269 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6279 | Smith v. Babcock & Wilcox Const. Co., 913 S.W.2d 467 | 307A+697 | When a case is dismissed for want of prosecution, "[t]he court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney [to appear] was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." Tex.R.Civ.P. 165a(3). The operative standard is essentially the same as that for setting aside a default judgment. See Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939). A failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without adequate justification. Proof of such justification"accident, mistake or other reasonable explanation"negates the intent or conscious indifference for which reinstatement can be denied. Bank One, Texas, N.A. v. Moody, 830 S.W.2d 81, 84 (Tex.1992). Also, conscious indifference means more than mere negligence. Ivy v. Carrell, 407 S.W.2d 212, 213 (Tex.1966). | Failure to appear is not intentional or due to conscious indifference, as required to dismiss for want of prosecution, merely because it is deliberate, it must also be without adequate justification; accident, mistake, or other reasonable explanation negates intent or conscious indifference for which reinstatement can be denied. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd. 3. | "Can proof of accident, mistake, or other reasonable explanation negate the intent or conscious indifference for which reinstatement of a case dismissed can be denied?" | 039727.docx | LEGALEASE-00159280-LEGALEASE-00159281 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6280 | Bagwell v. Bagwell, 290 Ga. 378 | 307A+698 | As for the superior court's attempt in the present order to recast its dismissal of Husband's first modification as "simply a sanction" and not an adjudication on the merits so as to render it outside the ambit of OCGA " 19"6"15(k)(2), it is unavailing. Once an order of dismissal is entered it may not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice. Ivery v. Brown, 307 Ga.App. 732, 706 S.E.2d 120 (2011). This is so because transforming a dismissal that is "with prejudice" to one that is "without prejudice" is not merely a clerical correction or alteration but is a substantive change. Id. at 734, 706 S.E.2d 120. And, there is no question that this January 13, 2011 order was entered in a different term of the superior court from that in which the November 16, 2010, nunc pro tunc to October 22, 2010, dismissal order issued. | Once an order of dismissal is entered it may not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice. | "Once an order of dismissal is entered, can it not be modified by the trial court outside the term of court in which it was issued in order to specify that it was without prejudice?" | 039832.docx | LEGALEASE-00159443-LEGALEASE-00159444 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6281 | Signature Dev. v. Sandler Commercial at Union, 207 N.C. App. 576 | 307A+561.1 | Dismissal is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face that some fact essential to plaintiff's claim is missing; and (3) when some fact disclosed in the complaint defeats the plaintiff's claim." Schloss Outdoor Advertising Co. v. Charlotte, 50 N.C.App. 150, 152, 272 S.E.2d 920, 922 (1980). Moreover, "[w]hen the complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, ... the motion will be granted and the action dismissed." Skinner v. E.F. Hutton & Co., 314 N.C. 267, 270, 333 S.E.2d 236, 238 (1985). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Leonard v. Pugh, 86 N.C.App. 207, 209, 356 S.E.2d 812, 814 (1987). On appeal of a trial court's ruling on a 12(b)(6) motion to dismiss, our Court "conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Page v. Lexington Ins. Co., 177 N.C.App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation and quotation marks omitted). | On a motion to dismiss for failure to state a claim upon which relief may be granted, when a complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, the motion will be granted and the action dismissed. Rules Civ.Proc., Rule 12(b)(6), West's N.C.G.S.A. S 1A-1. | What happens when a complaint states a valid claim but discloses an unconditional affirmative defense which defeats the asserted claim? | 039843.docx | LEGALEASE-00159465-LEGALEASE-00159466 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6282 | Bailey v. Gitt, 135 N.C. App. 119 | 13+53(2) | Dismissal of claims for certain types of damages by the trial court does not necessarily dismiss the underlying allegation of negligence upon which the wrongful death claim is predicated; however, a claim for negligence cannot be split into its various kinds of damages. Smith v. Red Cross, 245 N.C. 116, 95 S.E.2d 559 (1956). Therefore, claims for particular kinds of damage cannot exist without an underlying claim of negligence or fault. | Dismissal of claims for certain types of damages by the trial court in a wrongful death action does not necessarily dismiss the underlying allegation of negligence upon which the claim is predicated; however, a claim for negligence cannot be split into its various kinds of damages. G.S. S 28A-18-2. | Can a claim for negligence be split into various kinds of damages? | 039862.docx | LEGALEASE-00159628-LEGALEASE-00159629 | Order, SA | 0.32 | 1 | 0 | 0 | 1 | |
| 6283 | Mason v. State ex rel. Bd. of Regents of Univ. of Oklahoma, 23 P.3d 964 | 307A+695 | Mason now appeals the dismissal of his amended petition. When a petition is dismissed for failure to state a claim, the plaintiff must be granted leave to amend the pleading if the defect can be remedied. 12 O.S.1991 " 2012(G). If the pleading is not amended, a final judgment of dismissal with prejudice may be entered. Id. OU alleged in part that Mason failed to substantively amend his petition before refiling it as an amended petition. An order dismissing a petition with prejudice, entered pursuant to 12 O.S.1991 " 2012(G) constitutes a final appealable order from which the merits of the substantive claim for relief may be reviewed. Brown v. Founders Bank and Trust Co., 1994 OK 130, 890 P.2d 855, 861. | When a petition is dismissed for failure to state a claim, the plaintiff must be granted leave to amend the pleading if the defect can be remedied. 12 Okl.St.Ann. S 2012, subd. G. | "When District Court grants motion to dismiss for failure to state claim, should it grant a plaintiff leave to file an amended petition if a defect can be remedied?" | 039948.docx | LEGALEASE-00159685-LEGALEASE-00159686 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6284 | VanMatre v. State, 714 N.E.2d 655 | 3.77E+10 | VanMatre argues that the evidence was insufficient to prove that he either communicated a threat to Brown or, even if a threat was communicated, that he possessed the intent to place Brown in fear of retaliation for any prior lawful act. In order to prove Intimidation in the instant case, the State was required to allege and prove that the defendant: (1) communicated a threat; (2) to another person; (3) with the intent that the other person be placed in fear of retaliation for a prior lawful act; (4) while armed with a deadly weapon. Casey, supra, 676 N.E.2d at 1072. In Casey, supra at 1072, we noted that, "the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act." | In order to prove intimidation as class C felony, state must allege and prove that defendant: (1) communicated threat; (2) to another person; (3) with intent that other person be placed in fear of retaliation for prior lawful act; (4) while armed with deadly weapon. West's A.I.C. 35-45-2-1(b)(2). | In order to prove intimidation what must the state show? | 046924.docx | LEGALEASE-00160306-LEGALEASE-00160307 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 6285 | Hawes v. 1997 Jeep Wrangler, 602 N.W.2d 874 | 135H+25 | "[A] criminal adjudication followed by a civil forfeiture, or vice versa, only violates double jeopardy provisions if the forfeiture constitutes "punishment." " One 1992 Harley Davidson, 555 N.W.2d at 750. | A criminal adjudication followed by a civil forfeiture, or vice versa, only violates double jeopardy provisions if the forfeiture constitutes punishment. U.S.C.A. Const.Amend. 5; M.S.A. Const. Art. 1, S 7. | "Does a criminal adjudication followed by a civil forfeiture, or vice versa, only violate double jeopardy provisions if the forfeiture constitutes punishment?" | Double Jeopardy - Memo 14 - C - SS_65113.docx | ROSS-003280531-ROSS-003280532 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 6286 | Schug v. Nine Thousand Nine Hundred Sixteen Dollars & Fifty Cents in U.S. Currency, 669 N.W.2d 379 | 135H+25 | Generally, absent a compelling reason, Minnesota courts apply federal interpretations to a state constitutional provision when the federal and state constitutional provisions are nearly identical. City of Pine Springs v. One 1992 Harley Davidson, 555 N.W.2d 749, 752 (Minn.App.1996). "[A] criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy provisions only if the forfeiture constitutes "punishment." " Id. at 750 | A criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy provisions only if the forfeiture constitutes punishment. U.S.C.A. Const.Amend. 5; M.S.A. Const. Art. 1, S 7. | "Does a criminal adjudication followed by a civil forfeiture, or vice versa, only violate double jeopardy provisions if the forfeiture constitutes punishment?" | 015073.docx | LEGALEASE-00160566-LEGALEASE-00160567 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 6287 | People v. Dahlberg, 355 Ill. App. 3d 308 | 135H+99 | Accordingly, reprosecution of a defendant following the declaration of a mistrial is constitutionally permissible if (1) the mistrial was attributable to the defendant by virtue of his motion or consent; or (2) the mistrial was warranted by "manifest necessity." People v. Hill, 353 Ill.App.3d 961, 967"68, 289 Ill.Dec. 485, 819 N.E.2d 1285 (2004). | Reprosecution of a defendant following the declaration of a mistrial is constitutionally permissible if: (1) the mistrial was attributable to the defendant by virtue of his motion or consent; or (2) the mistrial was warranted by "manifest necessity." | Is reprosecution of a defendant following the declaration of a mistrial constitutionally permissible if the mistrial was attributable to the defendant by virtue of his motion or consent? | 016166.docx | LEGALEASE-00160807-LEGALEASE-00160808 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6288 | H.D. ex rel. A.S. v. Cent. Bucks Sch. Dist., 902 F. Supp. 2d 614 | 141E+862 | As an initial matter, the parties dispute the appropriate scope of H.D.'s claim and the evidence which may be considered in determining whether the challenged IEP was satisfactory. H.D. asserts because his due process complaint pertained to the IEP created on March 18, 2010, this Court may not consider the June 2010 IEP or any events occurring after March 18. The Hearing Officer rejected these arguments, noting the events leading up to and including the proposal of the June IEP were known to H.D. at the start of the due process hearing, the June IEP was nearly identical to the March IEP, and the June IEP aims to provide H.D. with meaningful educational benefits, which is the central issue of H.D.'s claim. While "a court should determine the appropriateness of an IEP as of the time it was made," it may consider evidence acquired after the creation of an IEP, but "only to evaluate the reasonableness of the school district's decisions at the time that they were made." Bayonne Bd. of Educ., 602 F.3d at 564"65 (citing Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 762 (3d Cir.1995)). | While a court determining whether a public school has provided a disabled student a free, appropriate public education (FAPE) should determine the appropriateness of an individualized education program (IEP) as of the time it was made, it may consider evidence acquired after the creation of an IEP, but only to evaluate the reasonableness of the school district's decisions at the time that they were made. Individuals with Disabilities Education Act, SS 612(a)(1), 614(d)(1)(B), 20 U.S.C.A. SS 1412(a)(1), 1414(d)(1)(B). | When should the reasonableness of a school district's decision be considered in determining the appropriateness of and Individualized Education Plan? | 017181.docx | LEGALEASE-00160963-LEGALEASE-00160964 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 6289 | VanHouten v. Mount St. Mary Coll., 137 A.D.3d 1293 | 141E+919 | "[P]rivate schools are afforded broad discretion in conducting their programs, including decisions involving the discipline, suspension and expulsion of ... students" (Hutcheson v. Grace Lutheran School, 132 A.D.2d 599, 599, 517 N.Y.S.2d 760; see Cavanagh v. Cathedral Preparatory Seminary, 284 A.D.2d 360, 361, 725 N.Y.S.2d 889). Judicial review of the actions of a private school in disciplinary matters is limited to a determination as to whether the school acted arbitrarily and capriciously, or whether it substantially complied with its own rules and regulations (see Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 660, 427 N.Y.S.2d 760, 404 N.E.2d 1302; Matter of Khaykin v. Adelphi Academy of Brooklyn, 124 A.D.3d 781, 782, 1 N.Y.S.3d 356). | Judicial review of the actions of a private school in disciplinary matters is limited to a determination as to whether the school acted arbitrarily and capriciously, or whether it substantially complied with its own rules and regulations. | Is judicial review of the actions of a private school in disciplinary matters limited? | 017248.docx | LEGALEASE-00161120-LEGALEASE-00161121 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6290 | Antenucci v. Hartford Roman Catholic Diocesan Corp., 142 Conn. 349 | 200+80 | The plaintiffs also maintain that the cemetery cannot be increased in size by the use of land, acquired for the purpose, on the opposite side of a public highway. An abutting owner is presumed under the law of this state, no evidence having been offered to the contrary, to own the fee of the land to the center of the highway. Therefore, as to the land within the limits of the highway, an abutting owner has all rights not incompatible with the public easement. Allen v. Mussen, 129 Conn. 151, 155, 26 A.2d 776; State v. Muolo, 119 Conn. 323, 326, 176 A. 401. "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all of the acts necessary to keep it in repair." Peck v. Smith, 1 Conn. 103, 132; Newton v. New York, N.H. & H.R. Co., 72 Conn. 420, 426, 44 A. 813. The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner of the land in the same manner as before the highway was established, subject to the easement. Peck v. Smith, supra. The adjoining proprietors have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement. Knothe v. Zinzer, 96 Conn. 709, 713, 115 A. 477; Peck v. Smith, supra, 1 Conn. 146. | Highway is nothing but an easement, comprehending merely right of all individuals in community to pass and repass, with incidental right in public to do all of acts necessary to keep it in repair. | Is a highway an easement comprehending merely the right of all the individuals in the community to pass and repass? | 018821.docx | LEGALEASE-00161649-LEGALEASE-00161650 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6291 | Ham v. Strenzke Realty Co., 218 La. 499 | 200+80 | Plaintiffs are correct in stating that the opening or laying out of a road under the provisions of Sec. 3369 of the Revised Statutes of 1870 has the effect of vesting in the Police Jury of the Parish only a right of passage or a servitude over the land, the fee remaining in the owner of the soil. That was held in Paret v. Louisiana Highway Commission, 178 La. 454, 151 So. 768 and affirmed in Police Jury of the Parish of St. James v. Borne, 198 La. 959, 5 So.2d 301. Their contention would most probably have to be sustained had the Police Jury in this case, which had initiated proceedings under that provision of the Revised Statutes, continued along that course and terminated them. But as far as the pleadings and the annexed documents annexed to them reveal, the proceedings which it had originated along that line on March 14, 1933, appear to have ended abruptly on April 11, 1933 and the next thing we find is the act of sale by the plaintiffs more than a year thereafter in which they convey the fee title of their property to the Police Jury. Certainly it cannot be said that all that was acquired by the Police Jury was a right of passage or a servitude over their land under the provisions of the statute. In the case of Parish of Jefferson v. Texas Co., 192 La. 934, 960, 189 So. 580, the Court stated that in a situation with facts similar to those that are presented in this case, parties who had sold to the Parish the fee title to their property will not be heard to contend that the only authority of the Parish was to acquire a servitude. | The opening or laying out of a road has the effect of vesting in police jury of parish only a right of passage or a servitude over the land, the fee remaining in owner of soil. | Does the opening or laying out of a road vest in the Police Jury a right of passage over the land? | Highways - Memo 436 - RK_66337.docx | ROSS-003305433-ROSS-003305434 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 6292 | Allen v. Encore Energy Partners, 72 A.3d 93 | 289+1099 | To determine whether Allen has pleaded that the Defendants breached the LPA's contractual duty of good faith, we must first analyze what standard the LPA imposes. We construe limited partnership agreements in accordance with their terms in order to give effect to the parties' intent. When interpreting limited partnership agreements, we give words their plain meaning unless it appears that the parties intended a special meaning. We construe limited partnership agreements as a whole and give effect to every provision if it is reasonably possible to do so. | When interpreting limited partnership agreements, court gives words their plain meaning unless it appears that the parties intended a special meaning. | "When interpreting limited partnership agreements, should the words be given their plain meaning unless it appears that the parties intended a special meaning?" | Partnership - Memo 574 - GP_65580.docx | ROSS-003294148-ROSS-003294149 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6293 | Looney v. Gibraltar Sav. Ass'n, 695 S.W.2d 336 | 307A+698 | In the event the motion is overruled, either by a timely signed written order or by operation of law, the court retains plenary power to reinstate the cause for 30 days after the reinstatement motion is overruled. Id. Where, however, the party whose cause is dismissed for want of prosecution or his attorney receives the specified notice or acquires actual knowledge of the dismissal more than 20 days after the judgment of dismissal is signed, Rule 165a operates in conjunction with Rule 306a to fix the timetables for the timely filing of the motion to reinstate and the exercise of the court's plenary power to decide it. Rule 165a(1). | When party whose cause has been dismissed for want of prosecution either personally, or through attorney, receives notice or acquires actual knowledge of dismissal within 20 days after dismissal judgment is signed, motion to reinstate must be filed within 30 days after judgment is sought and if court does not decide timely filed motion by written order within 75 days, then motion is overruled by operation of law at that time and court retains plenary power to reinstate the cause for 30 days after motion is overruled. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does the court retain plenary power to reinstate the cause for 30 days after the reinstatement motion is overruled? | Pretrial Procedure - Memo 11251 - C - SHB_65270.docx | ROSS-003282104-ROSS-003282105 | Condensed, SA | 0.11 | 0 | 1 | 0 | 1 | |
| 6294 | Higginbotham v. Pub. Serv. Commn of Maryland, 171 Md. App. 254 | 307A+695 | Maryland Rule 2"322 (c) provides that if the court grants a motion to dismiss pursuant to Rule 2"322 (a), "an amended complaint may be filed only if the court expressly grants leave to amend." It is within the court discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal. G & H Clearing and Landscaping v. Whitworth, 66 Md.App. 348, 356 n. 5, 503 A.2d 1379 (1986); Gaskins v. Marshall Craft Associates, Inc., 110 Md.App. 705, 716, 678 A.2d 615 (1996). "The circuit court decision to deny leave to amend will be reversed only upon a finding that the court abused that discretion." McMahon v. Piazze, 162 Md.App. 588, 598, 875 A.2d 807 (2005). | It is within the court's discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal, and court's decision to deny leave to amend will be reversed only upon a finding that the court abused that discretion. | Is it within the court's discretion to grant a plaintiff leave to amend complaint to remedy defects that led to dismissal? | 040211.docx | LEGALEASE-00161531-LEGALEASE-00161532 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 6295 | Workman v. Anderson Music Co., 149 P.3d 1060 | 307A+695 | "On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied." 12 O.S. 2012 (G). "Because the statute provides that the trial court "shall" grant leave to amend if the defect can be remedied, the duty is mandatory." Kelly, 1989 OK 124, 781 P.2d at 1190. But, where the proposed amenment will not remedy the defect, the law imposes no mandatory duty on the trial court to allow the amendment. Gallagher v. Enid Regional Hosp., 1995 OK 137, 910 P.2d 984, 986. And see, Fanning v. Brown, 2004 OK 7, 85 P.3d 841, 848. | Because dismissal statute provides that the trial court shall grant leave to amend if the defect can be remedied, the duty is mandatory. 12 Okl.St.Ann. S 2012(G). | "Because a dismissal statute provides that the trial court shall grant leave to amend if the defect can be remedied, is the duty mandatory?" | 040222.docx | LEGALEASE-00161545-LEGALEASE-00161546 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6296 | Thacker v. Bartlett, 785 N.E.2d 621 | 307A+695 | Browning v. Walters, 616 N.E.2d 1040, 1044 n. 2 (Ind.Ct.App.1993), modified on reh'g on other grounds, 620 N.E.2d 28. A plaintiff is entitled either to amend his complaint pursuant to Trial Rule 12(B)(6) and Trial Rule 15(A), or to elect to stand upon his complaint and to appeal from the order of dismissal. Id. at 1044. Therefore, a Trial Rule 12(B)(6) dismissal is without prejudice, since the complaining party remains able to file an amended complaint within the parameters of the rule. Platt v. State, 664 N.E.2d 357, 361 (Ind.Ct.App.1996), trans. denied. Such a dismissal also does not usually operate as an adjudication on the merits and is not res judicata. | Plaintiff is entitled either to amend his complaint when it is dismissed for failure to state a claim or to elect to stand on his complaint and to appeal from the order of dismissal. Trial Procedure Rules 12(B)(6), 15(A). | Is a plaintiff entitled either to amend his complaint when it is dismissed for failure to state a claim or to elect to stand on his complaint and to appeal from the order of dismissal? | Pretrial Procedure - Memo 11607 - C - SKG_65623.docx | ROSS-003280521-ROSS-003280522 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6297 | Gladstone v. Smith, 729 So. 2d 1002 | 307A+695 | A claim should not be dismissed with prejudice "without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." | Claim should not be dismissed with prejudice without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action. | Should a claim not be dismissed with prejudice without giving the plaintiff an opportunity to amend the defective pleading? | Pretrial Procedure - Memo 11623 - C - TJ_65360.docx | ROSS-003281290-ROSS-003281291 | Condensed, SA | 0.02 | 0 | 1 | 0 | 1 | |
| 6298 | Nevada Interstate Properties Corp. v. City of W. Palm Beach, 747 So. 2d 447 | 307A+695 | As further grounds for reversal, we note the trial court dismissed Nevada's original complaint with prejudice without affording Nevada the opportunity to amend in an effort to cure defects in its pleadings. It is well settled that a dismissal with prejudice for failure to state a cause of action should not be ordered without giving the party offering the defective pleading an opportunity to amend, unless it is apparent that the pleading cannot be amended so as to state a cause of action. | Dismissal with prejudice for failure to state a cause of action should not be ordered without giving the party offering the defective pleading an opportunity to amend, unless it is apparent that the pleading cannot be amended so as to state a cause of action. | Should a claim not be dismissed with prejudice without giving the plaintiff an opportunity to amend the defective pleading? | 040271.docx | LEGALEASE-00160871-LEGALEASE-00160872 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 6299 | Hooper v. Pizzagalli Const. Co., 112 N.C. App. 400 | 307A+695 | In addition, we find the trial court properly denied plaintiffs' motion to amend. As a general rule, when an order is entered dismissing a claim, amendment of the complaint is not allowed unless the order is set aside or vacated under Rule 59 or Rule 60.Johnson v. Bollinger, 86 N.C.App. 1, 356 S.E.2d 378 (1987). Since the court did not allow plaintiffs' motion to set aside the order dismissing plaintiffs' complaint, it could not allow plaintiffs' motion to amend plaintiffs' complaint. Chrisalis Properties, Inc. v. Separate Quarters, Inc., 101 N.C.App. 81, 398 S.E.2d 628 (1990), disc. review denied, 328 N.C. 570, 403 S.E.2d 509 (1991). | Generally, when order is entered dismissing claim, amendment of complaint is not allowed unless order is set aside or vacated under rule providing for new trials and amendment of judgments or rule providing for relief from judgment or order. Rules Civ.Proc., Rules 59, 60, 60(b), G.S. S 1A-1. | "When an order is entered dismissing a claim, is amendment of complaint not allowed unless an order is set aside or vacated under rule?" | 040309.docx | LEGALEASE-00161004-LEGALEASE-00161005 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 6300 | Bernards v. Summit Real Estate Mgmt., 229 Or. App. 357 | 307A+583 | Plaintiffs objected to defendant motion to dismiss, but made no mention of the motion to dismiss with prejudice. These are different types of errors triggering different standards of review on appeal: while we review the trial court decision to dismiss the complaint for errors of law, Hansen, 113 Or.App. at 218, 831 P.2d 717, "the decision to dismiss a case with or without prejudice is within the discretion of the trial judge, and we review only for manifest abuse of that discretion," Bernard v. Gary J. Lekas, P.C., 124 Or.App. 416, 418, 862 P.2d 564 (1993). We conclude that requiring plaintiffs to preserve both types of error below serves the purposes of the preservation requirement, that it was reasonably possible for plaintiffs to have preserved the issue of dismissal with prejudice, and that plaintiffs "very right to appellate review of that issue is plaintiffs to preserve or lose." Peeples v. Lampert, 345 Or. 209, 223, 191 P.3d 637 (2008) (emphasis in original). Because plaintiffs failed to preserve the issue of dismissal with prejudice below, we will not consider it on appeal. | While an appellate court will review the trial court's decision to dismiss the complaint for errors of law, the decision to dismiss a case with or without prejudice is within the discretion of the trial judge, and is reviewed only for manifest abuse of that discretion. | Is the decision to dismiss a case with or without prejudice within the discretion of the trial judge? | 040439.docx | LEGALEASE-00161020-LEGALEASE-00161021 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6301 | Cucos v. McDaniel, 938 So. 2d 238 | 307A+583 | Any court of law or equity may exercise the power to dismiss for want of prosecution. This power, inherent to the courts, is necessary as a means to "the orderly expedition of justice" and "the court's control of its own docket". Walker v. Parnell, 566 So.2d 1213, 1216 (Miss.1990) (quoting Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). It has been clear since the adoption of the Mississippi Rules of Civil Procedure that the granting of motions to dismiss is a matter within the discretion of the trial court. Roebuck v. City of Aberdeen, 671 So.2d 49, 50 (Miss.1996) (citing Carter v. Clegg, 557 So.2d 1187, 1190 (Miss.1990)). This Court will not disturb a trial court's ruling on a dismissal for want of prosecution unless it finds an abuse of discretion. Watson, 493 So.2d at 1279. | The power to dismiss an action for want of prosecution, inherent to the courts, is necessary as a means to the orderly expedition of justice and the court's control of its own docket. | "Is the power to dismiss an action for want of prosecution, inherent to the courts, necessary as a means to the orderly expedition of justice?" | Pretrial Procedure - Memo 11730 - C - SHS_65446.docx | ROSS-003281104-ROSS-003281105 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6302 | Guest v. Dixon, 223 S.W.3d 531 | 307A+583 | The trial court has the inherent power to dismiss a suit for failure to prosecute with due diligence, and the determination rests within the sound discretion of the trial court. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957). In considering the motion to dismiss, the trial court was entitled to consider the entire history of the case, and its scope of review was not limited to the two factors as suggested by Guest. See State v. Rotello, 671 S.W.2d 507, 509 (Tex.1984). See also F.D.I.C. v. Kendrick, 897 S.W.2d 476, 479 (Tex.App.-Amarillo 1995, no writ). The burden of proof for abuse of discretion rests with Guest because of the presumption that the trial court's action was justified. See Manning v. North, 82 S.W.3d 706, 709 (Tex.App.-Amarillo 2002, no pet.). | The trial court has the inherent power to dismiss a suit for failure to prosecute with due diligence, and the determination rests within the sound discretion of the trial court. | Does the trial court have the inherent power to dismiss a suit for failure to prosecute with due diligence? | 040455.docx | LEGALEASE-00161074-LEGALEASE-00161075 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6303 | Bair v. Palm Beach Newspapers, 387 So. 2d 517 | 307A+584 | First, the inherent power of a trial court to dismiss an action for failure to prosecute, as referred to in Shalabey, supra, has been abrogated by the following amendment to Rule 1.420(e), Florida Rules of Civil Procedure: "Mere inaction for a period of less than one year shall not be sufficient cause for dismissal for failure to prosecute." As stated by the court in American Salvage and Jobbing Company, Inc. v. Salomon, 367 So.2d 716, 717 (Fla. 3d DCA 1979); "It is obvious that the effect of the amendment is to preclude a trial court from exercising its supposed inherent, discretionary power to dismiss a case for failure to prosecute, when, as in this case, there is activity of record within one year prior to the dismissal." | The effect of the amendment which states that mere inaction for a period of less than one year shall not be sufficient cause for dismissal for failure to prosecute is to preclude a trial court from exercising its supposed inherent, discretionary power to dismiss for failure to prosecute if there is activity of record within one year prior to the dismissal. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.420(e). | Is the power to dismiss for failure to prosecute a discretionary power? | Pretrial Procedure - Memo 11780 - C - SN_65642.docx | ROSS-003280271-ROSS-003280272 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 6304 | Yusem v. People, 210 P.3d 458 | 3.77E+38 | We first address the stated purposes that the evidence was used to show Yusem's mental state and to rebut his claim of self-defense. When prior act evidence is used to rebut a claim of self-defense against the charge of felony menacing, the question for the jury is whether the defendant used the gun to defend himself or whether he acted only to menace his victim. Douglas, 969 P.2d at 1207. Thus, we combine the analysis of these purposes because the defendant's mental state and rebutting self-defense are two sides of the same inquiry. | When prior act evidence is used to rebut a claim of self-defense against the charge of felony menacing, the question for the jury is whether the defendant used the gun to defend himself or whether he acted only to menace his victim. Rules of Evid., Rule 404(b). | Can a self-defense claim for a charge of felony menacing uses prior act evidence? | 046933.docx | LEGALEASE-00161088-LEGALEASE-00161089 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6305 | Com. v. Magliocco, 584 Pa. 244 | 3.77E+10 | We agree with the Commonwealth that it was not required to secure a formal conviction for the predicate crime of terroristic threats in order to secure a conviction for ethnic intimidation based upon such terroristic threats. Indeed, as we read the statute, the Commonwealth need not formally charge the defendant with the predicate offense, as long as it makes clear which offense it is pursuing as the predicate offense for purposes of the ethnic intimidation charge, and the factfinder is so made aware and, in the case of a jury, so charged. | Commonwealth is not required to secure a formal conviction for the predicate crime of terroristic threats in order to secure a conviction for ethnic intimidation based upon such terroristic threats; indeed, the Commonwealth need not formally charge the defendant with the predicate offense, as long as it makes clear which offense it is pursuing as the predicate offense for purposes of the ethnic intimidation charge, and the factfinder is so made aware and, in the case of a jury, so charged. 18 Pa.C.S.A. SS 2706, 2710(a). | Is the prosecution required to secure a formal conviction for the predicate crime of terroristic threats in order to secure a conviction for ethnic intimidation? | 046948.docx | LEGALEASE-00160961-LEGALEASE-00160962 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 6306 | Peretzman v. Borochoff, 58 Ga. App. 838 | 8.30E+10 | 345 "Any plea which impeaches the original validity, or declares any subsequent extinguishment of the contract, must be governed by the law of the place where the contract was made. Thus, infancy, coverture, tender, or payment, or discharge by insolvent laws, if a valid defense by the lex loci contractus, will be a valid defense everywhere." Vol. 2, Daniel on Negotiable Instruments, 7th Ed., 1114, " 1023 "The place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain. Thus, the law of the place where a bill or note is written, signed, or dated does not necessarily control it but the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or, as has been said, where the last act essential to its completion was done, so that, where a note was executed in one State but not completed until accepted in another State, it is made in that other State. A note drawn and dated in Maryland, but delivered in New York, in payment of goods there purchased, or money loaned, is payable in and governed by the laws of New York. And if a note be dated and signed in blank in Virginia, and sent to Maryland, and there filled up and negotiated, it is a Maryland, and not a Virginia note. In a Maine case, it appeared that a husband and wife executed a note in Massachusetts, the wife being surety for her husband, and the husband delivered it by mail to the payee in Maine. By law of Massachusetts the wife could not bind herself, but in Maine a married woman could contract for any lawful purpose. The law of Maine was held to apply, and the wife held liable." 2, Daniel on Negotiable Instruments, 7th Ed., 1110, " 1017. | A bill or note is controlled, not necessarily by the law of the place where it is written, signed, or dated, but by the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or where the last act essential to its completion was done. | Will the law of the place where a note is written control it? | 009184.docx | LEGALEASE-00162640-LEGALEASE-00162641 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6307 | State v. Cole, 128 Wash. 2d 262 | 135H+25 | We disagree. Neither the federal forfeiture statute nor our state forfeiture statute at issue here is self-executing. Even if the statute as it reads could lead to a punishment pursuant to the Austin analysis, unless the statute is applied so as to effect such a punishment, there obviously is no punishment. We hold that so long as the forfeited property is proceeds of an illegal drug transaction, there is no punishment for purposes of double jeopardy. | So long as forfeited property is proceeds of illegal drug transaction, forfeiture does not constitute "punishment" for purposes of double jeopardy clause and does not bar subsequent drug prosecution. (Per Talmadge, J., with two Justices concurring and three Justices concurring in part and dissenting in part). U.S.C.A. Const.Amend. 5. | "So long as forfeited property is proceeds of illegal drug transaction, does forfeiture constitute punishment for purposes of a double jeopardy clause?" | Double Jeopardy - Memo 118 - C - BP_65897.docx | ROSS-003278962-ROSS-003278963 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6308 | Tritt v. State, 173 P.3d 1017 | 135H+99 | Jeopardy attaches when the jury is sworn. Once jeopardy attaches, the trial may not be stopped short of a verdict unless the defendant consents or there is manifest necessity for a mistrial. Because of the double jeopardy implications of ending a trial short of a verdict, this court has cautioned trial courts that a mistrial should be declared without a defendant's consent only in "very extraordinary and striking circumstances." | Once jeopardy attaches, the trial may not be stopped short of a verdict unless the defendant consents or there is manifest necessity for a mistrial. U.S.C.A. Const.Amend. 5. | "Once jeopardy attaches, can the trial not be stopped short of a verdict unless the defendant consents or there is manifest necessity for a mistrial?" | Double Jeopardy - Memo 129 - C - NC_66375.docx | ROSS-003293507 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6309 | Garner v. State, 858 S.W.2d 656 | 135H+96 | Before failure to object constitutes an implied consent to a mistrial, a defendant must be given an adequate opportunity to object to the court's motion. Gori, 367 U.S. at 366, 81 S.Ct. at 1524"25, 6 L.Ed.2d at 903; Little, 853 S.W.2d at 767"68; Torres, 614 S.W.2d at 441"42. Moreover, consent will not be inferred from a silent record. Allen v. State, 656 S.W.2d 592, 595 (Tex.App."Austin 1983, no pet.). | In determining whether retrial after mistrial violates double jeopardy clause, before defendant's failure to object constitutes implied consent to mistrial, defendant must be given adequate opportunity to object to court's motion. U.S.C.A. Const.Amend. 5. | "Before a defendant's failure to object constitutes implied consent to mistrial, should a defendant be given an adequate opportunity to object to a court's motion?" | 015307.docx | LEGALEASE-00162556-LEGALEASE-00162557 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 6310 | Bergman v. Bouligny, 82 A.2d 760 | 141E+953 | In that connection the judge told the jury that a contract for a complete course of instruction for a specified period is entire and that a school proprietor who has established a case is entitled to recover the whole sum in accordance with the contract. This is a correct statement of the law. It is generally held that a contract for schooling for a specified term is entire and that when a pupil withdraws for reasons of his own without fault on the part of the school, such school is entitled to the agreed tuition for the entire period. Stewart v. Claudius, 19 Cal.App.2d 349, 65 P.2d 933; Hoadley v. Allen, 108 Cal.App. 468, 291 P. 601; Hitchcock Military Academy v. Myers, 76 Cal.App. 473, 245 P. 219; William v. Stein, 100 Misc. 667, 166 N.Y.S. 836; Vidor v. Peacock, Tex.Civ.App., 145 S.W. 672; Northwestern M. & N. Academy v. Wadleigh, 267 Ill.App. 1; Dwyer v. Cashen, 232 Ill.App. 493. See also Holton v. Cook, 181 Ark. 806, 27 S.W.2d 1017 and annotation thereto, 69 A.L.R. 714.We adopted this rule in. | Generally, a contract for schooling for specified term is entire and when pupil withdraws for reasons of his own without fault on part of school, such school is entitled to agreed tuition for entire period. | Is a contract for schooling for a specified term is entire and as such the school is entitled to the agreed tuition for the entire period? | Education - Memo 364 - C - KS.docx | LEGALEASE-00051910-LEGALEASE-00051911 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6311 | State v. Schares, 548 N.W.2d 894 | 217+1001 | Likewise, we believe the Archdiocese is not an insurer. "A contract is one of insurance if it meets the following test: one party, for compensation, assumes the risk of another; the party who assumes the risk agrees to pay a certain sum of money on a specified contingency; and the payment is made to the other party or the party's nominee." Iowa Contractors, 437 N.W.2d at 916.Here, the various organizations and entities of the Archdiocese pay an amount into a general fund. If any of the entities suffers a loss, it may seek reimbursement from this general fund. While this relationship has some indices of insurance, " "not all contracts concerning risk transference are insurance." " Id. at 917 (quoting R.E. Keeton, Insurance Law 6 (1971)). There is a type of contract between the Archdiocese and its various entities, but the Archdiocese did not contract with "another." We adopt the view that self-insurance, or internal risk distribution, is "no insurance" for victim restitution purposes. Iowa Contractors, 437 N.W.2d at 917 (citing Keeton). | Contract is one of insurance if it meets following test: one party, for compensation, assumes risk of another; party who assumes risk agrees to pay certain sum of money on specified contingency; and payment is made to other party or party's nominee. | What is the test that a contract has to meet to be classified as a contract of insurance? | 019508.docx | LEGALEASE-00162308-LEGALEASE-00162309 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 6312 | Hansen v. Eighth Judicial Dist. Court ex rel. Cty. of Clark, 116 Nev. 650 | 307A+560 | Now, before a defendant files a responsive pleading such as an answer, that defendant may move todismiss for lack of personal jurisdiction, insufficiency of process, and/or insufficiency of service of process, and such a defense is not "waived by being joined with one or more other defenses." Alternatively, a defendant may raise its defenses, including those relating to jurisdiction and service, in a responsive pleading. Objections to personal jurisdiction, process, or service of process are waived, however, if not made in a timely motion or notincluded in a responsive pleading such as an answer. See NRCP 12(g) and (h)(1). | Before a defendant files a responsive pleading such as an answer, that defendant may move to dismiss for lack of personal jurisdiction, insufficiency of process, and/or insufficiency of service of process, and such a defense is not waived by being joined with one or more other defenses. Rules Civ.Proc., Rule 12(b). | "Where the initial motion to dismiss does not include a claim of lack of jurisdiction or insufficiency of service of process, are those claims waived?" | 040126.docx | LEGALEASE-00162230-LEGALEASE-00162231 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 6313 | Atkins v. Jester, 309 S.W.3d 418 | 30+78(4) | To qualify as a final, appealable judgment, the dismissal order must fall within a limited exception to the general rule governing dismissals. The applicable general rule is that "[a] dismissal failing to indicate that it is with prejudice is deemed to be without prejudice." Jeffrey v. Cathers, 104 S.W.3d 424, 428 (Mo.App. E.D.2003) (citing Rule 67.03; Balke v. Ream, 983 S.W.2d 579, 580 (Mo.App. W.D.1998)). The usual means of specifying that a dismissal is being made "with prejudice" is to use those words. Under this bright-line interpretation of Rule 67.03, the dismissal order would be deemed a dismissal without prejudice. "In a case of a dismissal without prejudice, a plaintiff typically can cure the dismissal by filing another suit in the same court; hence, a dismissal without prejudice is not a final judgment for purposes of appeal." | In a case of a dismissal without prejudice, a plaintiff typically can cure the dismissal by filing another suit in the same court; hence, a dismissal without prejudice is not a final judgment for purposes of appeal. | "Following a dismissal without prejudice, can a plaintiff cure the dismissal by filing another suit in the same court?" | Pretrial Procedure - Memo 11551 - C - NC_65983.docx | ROSS-003279762-ROSS-003279763 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6314 | Moye v. City of New York, 168 A.D.2d 342 | 307A+697 | Cases which are not diligently pursued will be dismissed automatically one year after stricken from the calendar (CPLR 3404; Rosser v. Scacalossi, 140 A.D.2d 318, 527 N.Y.S.2d 552). The presumption that an action so dismissed has been abandoned is rebuttable, and the action may be restored upon a showing of a meritorious cause of action, a reasonable excuse for the delay, a lack of prejudice to the opposing party, and a lack of intent to abandon the action (Rodriguez v. Middle Atlantic Auto Leasing, Inc., 122 A.D.2d 720, 511 N.Y.S.2d 595, appeal dismissed, 69 N.Y.2d 874, 514 N.Y.S.2d 723, 507 N.E.2d 317). | Action which has been automatically dismissed one year after being stricken from calendar may be restored upon showing of: meritorious cause of action; reasonable excuse for delay; lack of prejudice to opposing party; and lack of intent to abandon action. McKinney's CPLR 3404. | How can an action which has been automatically dismissed one year after being stricken from calendar be restored? | 040573.docx | LEGALEASE-00162492-LEGALEASE-00162493 | Condensed, Order, SA | 0.55 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6315 | Parillo v. Blatt, 160 A.D.2d 853 | 307A+697 | It is well settled that a motion to restore an action to the calendar must be supported by affidavits showing an excuse for the delay in prosecution and demonstrating the merits of the action (Baumgartner v. Foodarama Supermarkets, 86 A.D.2d 590, 446 N.Y.S.2d 136; Fluman v. TSS Dept. Stores, 100 A.D.2d 838, 473 N.Y.S.2d 835; Bunyan v. Goldwasser, 131 A.D.2d 805, 517 N.Y.S.2d 85). The plaintiffs failed to advance any excuse for the three-year delay in having an administratrix appointed and for the delay in moving to restore the action to the trial calendar. Nor is there any "competent indication" (Bunyan v. Goldwasser, supra, at 806, 517 N.Y.S.2d 85) that the injured plaintiffs suffered "serious injury" (see, Insurance Law " 5102[d]; " 5104[a]). | Motion to restore action to calendar must be supported by affidavits showing excuse for delay in prosecution and demonstrating merits of action. | Should a motion to restore an action to a calendar be supported by affidavits showing an excuse for delay in prosecution and demonstrating merits of action? | Pretrial Procedure - Memo 11820 - C - MS_66104.docx | ROSS-003279162-ROSS-003279163 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6316 | Conkle v. State, 677 So. 2d 1211 | 3.77E+11 | However, under current law in Alabama, a verbal threat alone, in circumstances that would not cause public disorder or unrest by being likely to start a fight, does not constitute an offense. Therefore, in the present case, the appellant's conviction for harassment was improper. The judgment of the trial court is reversed and a judgment rendered for the appellant. | Verbal threat alone, in circumstances that would not cause public disorder or unrest by being likely to start fight, does not constitute an offense. Code 1975, SS 13A-6-23, 13A-11-8. | "Can a verbal threat alone, in circumstances that would not cause public disorder or unrest constitute an offense?" | 046965.docx | LEGALEASE-00162186-LEGALEASE-00162187 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 6317 | Fleming v. Shaheen Bros., 71 Mass. App. Ct. 223 | 413+2161 | A two-part test determines whether an employer is immune from liability under the workers' compensation statute,G.L. c. 152. See Lang v. Edward J. Lamothe Co., 20 Mass.App.Ct. 231, 232, 479 N.E.2d 208 (1985)."[A] direct employment relationship must exist, and "the employer must be an insured person liable for the payment of compensation." " Numberg v. GTE Transp., Inc., 34 Mass.App.Ct. 904, 904, 607 N.E.2d 1 (1993), quoting from Lang, supra. In this case, Shaheen was Fleming's employer and liable for his workers' compensation payments. Therefore, Shaheen is immune from Fleming's negligence suit. | Under the two-part test to determine whether a temporary employer is immune from tort liability for a worker's injuries under the workers' compensation statute, a direct employment relationship must exist, and the employer must be an insured person liable for the payment of compensation. M.G.L.A. c. 152, S 1(4, 5). | What is the two-part test to determine immunity from liability under workers compensation? | 048742.docx | LEGALEASE-00162684-LEGALEASE-00162686 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 6318 | Labor Ready v. Johnston, 289 S.W.3d 200 | 413+2161 | KRS 342.640(1) bases a worker's status as an employee on the existence of an express or implied contract of hire between the worker and putative employer. The loaned employee doctrine permits the direct employee of one business (general employer) to be considered an employee of another business (special employer) and, thus, a co-employee of its employees if three basic tests of an employment relationship are present: 1.) an express or implied contract of hire exists between the employee and the special employer; 2.) the employee performs work for the special employer; and 3.) the special employer has the right to control the work that the employee performs. The doctrine was instituted to protect injured workers and does not permit a special employer to be thrust upon them against their will or without their knowledge, thereby depriving them of the right to sue for damages. Allied Machinery, Inc. v. Wilson noted, however, that the more recent cases had broadened the scope of a putative employer's immunity by focusing on its right to control the details of the work being performed at the time of the injury rather than on the existence of a contractual relationship with injured worker. | The loaned employee doctrine was instituted to protect injured workers and does not permit a special employer to be thrust upon them against their will or without their knowledge, thereby depriving them of the right to sue for damages based on the exclusive remedy provision of the Workers' Compensation Act. KRS 342.0011 et seq. | "Under Workers Compensation, can an employer be thrust upon an employee against his will and without his knowledge?" | Workers' Compensation Memo 728 - C - ANC_67095.docx | ROSS-003294402-ROSS-003294403 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 6319 | Carter v. Taylor, 180 W. Va. 570 | 227+24 | In a like manner the circuit judge or chief circuit judge is the administrative head of the circuit. In Rutledge this court held that "[a]t the county level, except to the extent that the circuit courts are given explicit direction by the Supreme Court of Appeals, the power to control the local affairs of the circuit is placed in the circuit judge or the chief circuit judge." Rutledge, 175 W.Va. at 281, 332 S.E.2d at 836. | At county level, except to extent that circuit courts are given explicit direction by Supreme Court of Appeals, power to control local affairs of circuit is placed in circuit judge or chief circuit judge. Const. Art. 8, S 9. | Do circuit court judges have the power to control local affairs? | 013577.docx | LEGALEASE-00164100-LEGALEASE-00164101 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 6320 | People v. Berreth, 13 P.3d 1214 | 135H+57 | In general, the double jeopardy prohibition is implicated if a defendant is arraigned, enters a plea, is brought to trial in a court of competent jurisdiction, and a jury has been selected and sworn to hear the case. See Maes v. District Court, 180 Colo. 169, 173, 503 P.2d 621, 623 (1972); see also Barela v. People, 826 P.2d 1249, 1254 (Colo.1992)(finding that the jury must be both impaneled and sworn in order for jeopardy to attach). In the present case, Berreth had been arraigned and pled not guilty, the jury had been selected and sworn, and the presentation of the evidence had begun. Thus, there is no dispute that jeopardy had attached by the time the trial judge declared a mistrial. However, in this type of case, a finding that jeopardy has attached is only the beginning of the inquiry. See People v. Baca, 193 Colo. 9, 11 n. 1, 562 P.2d 411, 412 n. 1 (1977). | In general, the double jeopardy prohibition is implicated if a defendant is arraigned, enters a plea, is brought to trial in a court of competent jurisdiction, and a jury has been selected and sworn to hear the case. U.S.C.A. Const.Amend. 5; West's C.R.S.A. Const. Art. 2, S 18. | Would a double jeopardy prohibition be implicated when defendant has been arraigned? | 014788.docx | LEGALEASE-00163944-LEGALEASE-00163945 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6321 | United States v. Corrado, 227 F.3d 543 | 135H+25 | In sum, we hold that the criminal forfeitures sought in this case constitute a part of the defendants' sentences, and are appealable under " 3742(b). In addition, we find that, in accordance with the Supreme Court's decision in Monge, the Double Jeopardy Clause does not apply to sentencing and, therefore, does not prohibit the government from appealing the district court's forfeiture award. | Double Jeopardy Clause does not apply to sentencing and, therefore, does not prohibit government from appealing district court's forfeiture award. U.S.C.A. Const.Amend. 5. | Does a Double Jeopardy Clause not apply to sentencing and not prohibit a government from appealing a district court's forfeiture award? | 015115.docx | LEGALEASE-00163788-LEGALEASE-00163789 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 6322 | State v. Bostwick, 222 Neb. 631 | 135H+97 | "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." ... Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." [Quoting Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).] | Where government conduct in question is intended to "goad" defendant into moving for mistrial, defendant may raise bar of double jeopardy to second trial after having succeeded in aborting first trial on defendant's own motion. U.S.C.A. Const.Amend. 5. | Does a defendant's motion for a mistrial constitute a deliberate election on his or her part to forgo the right under the Double Jeopardy Clause to have the trial completed before the first trier of fact? | 015209.docx | LEGALEASE-00163657-LEGALEASE-00163658 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6323 | State v. Juarez, 115 Wash. App. 881 | 135H+96 | The State urges that the mistrial and continuance were at the defendant's behest. A motion by the defendant for mistrial will ordinarily remove any barrier to further prosecution, absent circumstances attributable to " "prosecutorial or judicial overreaching." " Dinitz, 424 U.S. at 607, 96 S.Ct. 1075 (quoting United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970)). Retrial is allowed if the defense consents and the mistrial results from judicial or prosecutorial error that is not motivated by bad faith. Rich, 63 Wash.App. at 747, 821 P.2d 1269 (citing Dinitz, 424 U.S. at 611, 96 S.Ct. 1075). | A motion by defendant for mistrial will ordinarily remove any barrier to further prosecution, absent circumstances attributable to prosecutorial or judicial overreaching. | "Will a motion by defendant for mistrial ordinarily remove any barrier to further prosecution, absent circumstances attributable to prosecutorial or judicial overreaching?" | 015245.docx | LEGALEASE-00163117-LEGALEASE-00163118 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 6324 | People v. Baca, 193 Colo. 9 | 135H+96 | A completely different situation is presented, however, when the defendant moves for, or consents to, a mistrial. See United States v. Sanford, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) ("If the mistrial is declared at the behest of the defendant, the manifest necessity test does not apply."); United States v. Dinitz, supra (different considerations than the "manifest necessity" standard apply when a mistrial is declared at the defendant's request). The defendant's motion for a mistrial is generally considered to operate as a waiver of the principle of "manifest necessity," which protects him from retrial under the double jeopardy clause. See United States v. Dinitz, supra; Illinois v. Somerville,supra; United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). | Defendant's motion for mistrial is generally considered to operate as waiver of principle of manifest necessity which protects him from retrial under double jeopardy clause. U.S.C.A.Const. Amend. 5; Const. art. 2, S 18. | Is a defendant's motion for a mistrial generally a waiver of protection from retrial under the Double Jeopardy Clause? | Double Jeopardy - Memo 277 - C - MS_66591.docx | ROSS-003279019-ROSS-003279020 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6325 | People v. Moore, 285 A.D.2d 827 | 135H+100.1 | In a criminal prosecution before a jury, the constitutional protection against double jeopardy attaches after the jury is sentenced and sworn. 720 ILCS 5/3"4(a)(3) (West 2004); People v. Dahlberg, 355 Ill.App.3d 308, 312, 291 Ill.Dec. 357, 823 N.E.2d 649, 653 (2005). A retrial is automatically barred when a trial ends with an acquittal or a conviction; however, when a criminal proceeding ends before a final resolution of the merits of the charges against the defendant, a second trial is not necessarily precluded.People v. Burtron, 376 Ill.App.3d 856, 861"62, 315 Ill.Dec. 600, 877 N.E.2d 87, 91 (2007). At times, the accused's right to have the trial concluded by a particular tribunal is subordinate to the public's interest in affording the prosecutor one full and fair opportunity to present the State's evidence to an impartial jury. Burtron, 376 Ill.App.3d at 862, 315 Ill.Dec. 600, 877 N.E.2d at 91. | A retrial is automatically barred when a trial ends with an acquittal or a conviction; however, when a criminal proceeding ends before a final resolution of the merits of the charges against the defendant, a second trial is not necessarily precluded. U.S.C.A. Const.Amend. 5; S.H.A. 720 ILCS 5/3-4(a)(1). | Is a retrial automatically barred when a trial ends with an acquittal or a conviction? | 015430.docx | LEGALEASE-00163649-LEGALEASE-00163650 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 6326 | DeCormier v. Harley-Davidson Motor Co. Grp., 2013 WL 4080699 | 302+43 | Finally, Defendants argue that because Plaintiff used the term "negligence" in her petition to describe Defendants' conduct and because she denominated her claims "Count I: Negligence" and "Count II: Premises Liability," Plaintiff only pleaded an action for ordinary negligence and Defendants are therefore entitled to summary judgment. We disagree. "[I]n determining whether a pleading adequately states a claim for relief on a particular basis, the rule is well established in Missouri that the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader." Am. Eagle Waste Indus., LLC v. St. Louis County, 379 S.W.3d 813, 829 (Mo. banc 2012) (quotation omitted). "To properly plead a cause of action, the petition must state allegations of fact in support of each essential element of the cause pleaded." Id. (quotation omitted). "To be deemed sufficient, a petition need not even label the theory upon which a plaintiff seeks recovery." Id. Therefore, the labels Plaintiff used in her petition to describe her claims have no bearing on the nature of the claims she pleaded | In determining whether a pleading adequately states a claim for relief on a particular basis, the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader. | Is the character of a cause of action determined from the name given to the action by the pleader? | 023927.docx | LEGALEASE-00163243-LEGALEASE-00163244 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6327 | DeCormier v. Harley-Davidson Motor Co. Grp., 2013 WL 4080699 | 302+43 | Finally, Defendants argue that because Plaintiff used the term "negligence" in her petition to describe Defendants' conduct and because she denominated her claims "Count I: Negligence" and "Count II: Premises Liability," Plaintiff only pleaded an action for ordinary negligence and Defendants are therefore entitled to summary judgment. We disagree. "[I]n determining whether a pleading adequately states a claim for relief on a particular basis, the rule is well established in Missouri that the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader." Am. Eagle Waste Indus., LLC v. St. Louis County, 379 S.W.3d 813, 829 (Mo. banc 2012) (quotation omitted). "To properly plead a cause of action, the petition must state allegations of fact in support of each essential element of the cause pleaded." Id. (quotation omitted). "To be deemed sufficient, a petition need not even label the theory upon which a plaintiff seeks recovery." Id. Therefore, the labels Plaintiff used in her petition to describe her claims have no bearing on the nature of the claims she pleaded. | In determining whether a pleading adequately states a claim for relief on a particular basis, the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader. | Is the character of a cause of action determined from the facts stated in the petition? | 023935.docx | LEGALEASE-00163419-LEGALEASE-00163420 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6328 | Hayes v. Vill. of Middleburgh, 140 A.D.3d 1359 | 307A+697 | We affirm. "At any scheduled call of a calendar or at any conference, . [i]f the defendant appears but the plaintiff does not, the judge may dismiss the action" (22 NYCRR 202.27[b]; see Bank of N.Y. v. Castillo, 120 A.D.3d 598, 599, 991 N.Y.S.2d 446 [2014] ). "In order to vacate a dismissal pursuant to 22 NYCRR 202.27, [a] plaintiff [is] required to demonstrate a reasonable excuse for [his or her] failure to appear and a potentially meritorious cause of action." | In order to vacate a dismissal for failure to appear, a plaintiff is required to demonstrate a reasonable excuse for his or her failure to appear and a potentially meritorious cause of action. N.Y.Ct.Rules, S 202.27(a). | In order to vacate a dismissal for failure to appear is a plaintiff required to demonstrate a reasonable excuse for his or her failure to appear? | Pretrial Procedure - Memo 11900 - C - SHB_66690.docx | ROSS-003285669-ROSS-003285670 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6329 | Becker v. D.C., 258 F.R.D. 182 | 170A+828.1 | The amendment of pleadings in civil matters is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 permits amendment under a relatively liberal standard; leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a)(2). The decision to grant or deny leave to amend is within the sound discretion of the trial court, however, it is an abuse of discretion to deny leave without a sufficient reason. Dove v. Wash. Metro. Area Transit Auth., 221 F.R.D. 246, 247 (D.D.C.2004). A denial of leave to amend is appropriate in cases of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and/or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The party opposing the amendment bears the burden to show why leave should not be granted. Dove, 221 F.R.D. at 247. | The decision to grant or deny leave to amend a pleading is within the sound discretion of the trial court, however, it is an abuse of discretion to deny leave without a sufficient reason. Fed.Rules Civ.Proc.Rule 15, 28 U.S.C.A. | Is the decision to deny leave to amend before granting a motion to dismiss within the sound discretion of the trial court? | 040825.docx | LEGALEASE-00163834-LEGALEASE-00163836 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 6330 | In re PSINet, 271 B.R. 1 | 349A+10 | Under California law, the determination of whether an agreement creates a true lease, on the one hand, or a security interest, on the other, is dependent on the economics of the transaction, and not the intent of the parties. California has adopted UCC " 1"201(37), as amended as a uniform law in 1987 and by the State of California, implementing the uniform law change, in 1988. UCC " 1"201(37) defines the term "security interest," and provides the test for distinguishing between a "security interest," on the one hand, and a "true lease," on the other. Following its amendment in 1988, UCC " 1"201(37) no longer takes into account the actual or stated intent of the parties at the time of the transaction, and instead looks solely to the terms of the agreement itself. | Under California law, determination of whether agreement creates true lease, on the one hand, or a security interest, on the other, is dependent on economics of transaction, and not upon intent of parties. West's Ann.Cal.Com.Code S 1201(36). | How to determine whether an agreement creates a true lease or a security interest? | Secured Transactions - Memo 25 - C - KG_67968.docx | ROSS-003282976-ROSS-003282977 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6331 | In re Commercial Money Ctr., 350 B.R. 465 | 349A+10 | NetBank argues that it now has a "real risk" of loss, as evidenced by the bankruptcy court's Judgment. NetBank misstates the issue. In determining whether parties intended a sale or a loan the issue is how risks are contractually allocated when the transactions were entered into. In this case the risk was allocated to Debtor. The fact that Debtor later became insolvent is irrelevant. In Woodson the debtor had not paid its investors and was in bankruptcy but the contractual risk was allocated to the debtor. Primarily for that reason the transaction was determined to be a loan rather than a sale. Woodson, 813 F.2d at 270"72. | In determining whether parties intended a sale or a loan for security, the issue is how risks are contractually allocated when the transactions were entered into. | "In determining whether parties intended a sale or a loan for security, is the issue how risks are contractually allocated when the transactions were entered into?" | Secured Transactions - Memo 58 - C - TM_68085.docx | ROSS-003282364-ROSS-003282365 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6332 | Rolick v. Collins Pine Co., 925 F.2d 661 | 413+186 | Generally, only employers standing in a direct master-servant relationship with an injured worker may be liable for workmen's compensation benefits. But a narrow statutory exception to this principle provides that, under certain very limited circumstances, an employer not standing in a direct master-servant relationship with an injured worker may nonetheless become liable for workmen's compensation benefits. The exception, which creates the status of a so-called "statutory employer," is embodied in section 203 of the Workmen's Compensation Act: An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to that employee or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee. 77 Pa.Stat.Ann. "" 52, 462 (Purdon Supp.1990) | Generally, only employers standing in direct master-servant relationship with injured worker may be liable for workmen's compensation benefits under Pennsylvania law. 77 P.S. SS 1-1603. | "Generally, is it only employers standing in a direct master-servant relationship with an injured worker liable for workmens compensation benefits?" | 048757.docx | LEGALEASE-00164140-LEGALEASE-00164141 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6333 | Marzano v. Proficio Mortg. Ventures, 942 F. Supp. 2d 781 | 25T+183 | Even if Defendants had sought an order compelling arbitration, the Court may only compel arbitration "if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir.2005). While the first two elements are clearly present, it is not clear that Plaintiffs have refused to arbitrate. The FAA requires parties demanding arbitration to provide written notice of the demand so that responding parties may agree to arbitrate and thus avoid court involvement. All Saint's Brands, Inc. v. Brewery Grp. Denmark, A/S, 57 F.Supp.2d 825, 828 (D.Minn.1999) (citing 9 U.S.C. " 4)."Judicial involvement prior to this sequence is premature, since it is only "the alleged failure, neglect, or refusal of another to arbitrate" which triggers jurisdiction under 9 U.S.C. " 4." Id. (quoting 9 U.S.C. " 4). Here, Defendants have neither shown by providing the Court with demands they may have sent to Plaintiffs nor even alleged that Plaintiffs have refused to arbitrate. | Federal Arbitration Act (FAA) requires parties demanding arbitration to provide written notice of the demand so that responding parties may agree to arbitrate and thus avoid court involvement. 9 U.S.C.A. S 4. | Does the Federal Arbitration Act (FAA) require parties demanding arbitration to provide written notice of the demand? | 008105.docx | LEGALEASE-00165069-LEGALEASE-00165070 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6334 | Vaden v. Discover Bank, 556 U.S. 49 | 25T+184 | Having determined that a district court should "look through" a " 4 petition, we now consider whether the court "would have [federal-question] jurisdiction" over "a suit arising out of the controversy" between Discover and Vaden. 9 U.S.C. " 4. As explained above, " 4 of the FAA does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have "save for [the arbitration] agreement." See supra, at 1271. Mindful of that limitation, we read " 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, "save for" the agreement, the entire, actual "controversy between the parties," as they have framed it, could be litigated in federal court. We conclude that the parties' actual controversy, here precipitated by Discover's state-court suit for the balance due on Vaden's account, is not amenable to federal-court adjudication. Consequently, the " 4 petition Discover filed in the United States District Court for the District of Maryland must be dismissed. As the Fourth Circuit initially stated, the "controversy between the parties" arose from the "alleged debt" Vaden owed to Discover. 396 F.3d, at 370. Discover's complaint in Maryland state court plainly did not "arise under" federal law, nor did it qualify under any other head of federal-court jurisdiction. See supra, at 1268, and n. 1. | A party seeking to compel arbitration under the Federal Arbitration Act (FAA) may gain a federal court's assistance only if, "save for" the agreement, the entire, actual "controversy between the parties," as they have framed it, could be litigated in federal court. 9 U.S.C.A. S 4. | When can a party seeking to compel arbitration gain a federal courts assistance? | 008107.docx | LEGALEASE-00165051-LEGALEASE-00165053 | Condensed, Order, SA | 0.79 | 1 | 1 | 0 | 1 | 1 |
| 6335 | Gue v. Tide Water Canal Co., 65 U.S. 257 | 108H+37 | In Coe v. Hart, before Mr. Justice McLEAN, (6 Am. Law Reg., 42,*) it was said, on the contrary, in regard to a railroad company, that while the proper mode of enforcing payment was by a proceeding in chancery to distribute the earnings equitably among the creditors, yet in a case where such a course would not satisfy their demands, the road might be sold, and the proceeds distributed; and the same doctrine was laid down by the superior court of Cincinnati, in the case of Ludlow and Heard, reported in the same volume of the Law Register, at page 503. A corporate franchise to take tolls on a canal cannot be seized and sold under a fieri facias, unless authorized by a statute of the State which granted the act of incorporation. | A corporate franchise to take tolls on a canal cannot be seized and sold under a fieri facias, unless authorized by a statute of the state which granted the act of incorporation. | Can a corporate franchise to take tolls on a canal be seized and sold under a fieri facias? | 014104.docx | LEGALEASE-00165098-LEGALEASE-00165099 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 6336 | Parkview Baptist Church & Sch. v. White, 971 So. 2d 1078 | 135+2 | The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. Berryhill v. Entergy New Orleans Inc., 2005"0005 (La.App. 4 Cir. 8/3/05), 925 So.2d 12, 15, writ denied, 2005"2068 (La.2/10/96), 924 So.2d 168. | Intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. | Is intention of a person to be a resident of a particular place determined by his expressions at times not suspicious? | Domicile - Memo 54 - C - KAD_67133.docx | ROSS-003306878-ROSS-003306879 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 6337 | State v. Picot, 724 So. 2d 236 | 135H+30 | In State v. Johnson, 432 So.2d 815 (La.1983), the Court held that the defendant could be tried again on the multiple bill, even though the State failed to prove his identity as the perpetrator of the prior crimes. In Johnson, the Court noted: "Defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction." Id. at 817. The Habitual Offender Law creates no independent offense, but rather prescribes the conditions under which there is an enhanced penalty for the current offense and does not violate constitutional prohibitions against double jeopardy. State v. Boatner, 304 So.2d 661 (La.1974). | Habitual Offender Law creates no independent offense, but rather prescribes conditions under which there is enhanced penalty for current offense, and does not violate constitutional prohibitions against double jeopardy. U.S.C.A. Const.Amend. 5. | Does Habitual Offender Law violate constitutional prohibitions against double jeopardy? | 015005.docx | LEGALEASE-00164631-LEGALEASE-00164632 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6338 | City of Smithville v. Summers, 690 S.W.2d 850 | 135H+95.1 | That principle expresses a constitutional policy of finality for the benefit of the defendant in a criminal proceeding. It manifests the willingness of our society to limit government to a single proceeding to vindicate its very vital interest in the enforcement of the criminal laws. United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). A criminal defendant owns "the valued right to have his trial completed by a particular tribunal." Thus, the declaration of a mistrial implicates that right. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); State v. Irving, 559 S.W.2d 301, 306 (Mo.App.1977). | Criminal defendant owns valued right to have his trial completed by a particular tribunal, and thus, declaration of mistrial implicates such right. | "Does a criminal defendant own a valued right to have his trial completed by a particular tribunal, and thus, declaration of mistrial implicates such right?" | 015610.docx | LEGALEASE-00164242-LEGALEASE-00164243 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 6339 | Scriber v. State, 437 Md. 399 | 135H+1 | The Fifth Amendment prohibition "against making a defendant twice accountable for the same offense" is applicable to the states through the Fourteenth Amendment. State v. Long, 405 Md. 527, 535"36, 954 A.2d 1083 (2008) (citing Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). Also, "[d]espite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy." Long, 405 Md. at 536, 954 A.2d 1083 (citing Taylor v. State, 381 Md. 602, 610, 851 A.2d 551 (2004)). Double jeopardy "bars multiple punishments and trials for the same offense." Long, 405 Md. at 536, 954 A.2d 1083 (citing United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). | Despite the fact that state constitution lacks explicit double jeopardy clause, common law provides well-established protections for individuals against being twice put in jeopardy. U.S.C.A. Const.Amend. 5. | Does state common law provide well-established protections for individuals against being twice put in jeopardy? | Double Jeopardy - Memo 851 - C - NS_67640.docx | ROSS-003283481-ROSS-003283482 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6340 | Com. v. Scott, 22 N.E.3d 171 | 135H+1 | Double jeopardy. The double jeopardy clause, which protects a defendant against "multiple punishments for the same offense ... " represents a constitutional policy of finality for the defendant's benefit" in criminal proceedings." Commonwealth v. Goodwin, 458 Mass. 11, 19, 933 N.E.2d 925 (2010), quoting from Aldoupolis v. Commonwealth, 386 Mass. 260, 271"272, 274, 435 N.E.2d 330, cert. denied, 459 U.S. 864, 103 S.Ct. 142, 74 L.Ed.2d 120 (1982). "In this Commonwealth, the subject of double jeopardy generally has been treated as a matter of common law rather than as a question under the Constitution of the Commonwealth." Commonwealth v. Goodwin, supra at 20, 933 N.E.2d 925, quoting from Aldoupolis v. Commonwealth, supra at 271 n. 14, 435 N.E.2d 330. | The double jeopardy clause, which protects a defendant against multiple punishments for the same offense, represents a constitutional policy of finality for the defendant's benefit in criminal proceedings. U.S.C.A. Const.Amend. 5. | Does double jeopardy represent a constitutional policy of finality for the defendant's benefit in criminal proceedings? | Double Jeopardy - Memo 862 - C - NS_67651.docx | ROSS-003294042-ROSS-003294043 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6341 | Dothan City Bd. of Educ. v. V.M.H., 660 So. 2d 1328 | 141E+741 | Section of code of student conduct barring students from possessing "item which may be conceivably used as a weapon" was unconstitutionally ambiguous and vague, as it did not give proper notice about what conduct could be offense, and denied student due process. U.S.C.A. Const.Amend. 14. The Juvenile Court determined that Section 440 "is almost impossible to reasonably interpret." We agree. One may conceive, without difficulty, that a sharpened pencil, a set of chemistry supplies, a baseball bat, and a tennis racket, for example, could be used as weapons. The testimony in court established that, in fact, the air gun in question was unloaded and that no ammunition for it was found in the student's car or on his person. Moreover, the police officer who investigated the incident testified that the unloaded air gun could not have been fired as a weapon. | Section of code of student conduct barring students from possessing "item which may be conceivably used as a weapon" was unconstitutionally ambiguous and vague, as it did not give proper notice about what conduct could be offense. U.S.C.A. Const.Amend. 14. | Are students denied due process when they are penalized for violating a code of student conduct and the code is unconstitutionally ambiguous and vague? | Education - Memo 376 - C - HJ_67171.docx | ROSS-003283376-ROSS-003283377 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6342 | Spear-Newman v. Modern Floors Corp., 149 Conn. 88 | 156+54 | Fawcett v. New Haven Organ Co., 47 Conn. 224, 227; Tradesmens National Bank v. Minor, 122 Conn. 419, 424, at p. 425, 190 A. 270, and cases cited therein. Estoppel rests on the misleading conduct of one party to the prejudice of the other. Franke v. Franke, 140 Conn. 133, 139, 98 A.2d 804. In the absence of prejudice, estoppel does not exist. Tradesmens National Bank v. Minor, supra. It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did *92 not know the true state of things but also lacked any reasonably available means of acquiring knowledge. Myers v. Burke, 120 Conn. 69, 76, 179 A. 88. | One seeking to invoke an estoppel against another must show that he has exercised due diligence to know the truth, and that he not only did not know true state of things but also lacked any reasonably available means of acquiring knowledge thereof. | Should the person who claims estoppel show that he has exercised due diligence to know the truth? | Estoppel - Memo 319 - C - CSS_67201.docx | ROSS-003282851-ROSS-003282852 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 6343 | Ex parte Jones, 25 Okla. Crim. 347 | 284+24 | It will be observed, as preliminary to the consideration of the question presented, that a pardon is an act of grace and mercy bestowed by the state through its chief executive, upon offenders against its laws after conviction, and a full and unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender; it obliterates in legal contemplation the offense itself; and hence its effect is to make the offender a new man. Ex parte Crump, 10 Okl. Cr. 133, 135 Pac. 428, 47 L. R. A. (N. S.) 1036. | A pardon is an act of grace and mercy bestowed by the state through its chief executive upon offenders against its laws after conviction, and a full, unconditional pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and obliterates in legal contemplation the offense itself. | Are pardons an act of grace? | Pardon and Parole - Memo 3 - RK_67518.docx | ROSS-003294359-ROSS-003294360 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 6344 | Hillsborough Inv. Co. v. City of Tampa, 149 Fla. 7 | 371+2016 | The counter claim asserts that the 1925 and 1927 taxes were paid to protect the mortgagee's property. It is assumed that the collecting officers issued receipts as evidence of payment. It is not contended that the taxing officers possessed the power or authority to assign to the mortgagee the right to enforce the payment thereof as vested in the sovereign power. It must be remembered that a tax and the lien created thereby is not a debt subject to the control of the parties. The sovereign power to levy a tax and the machinery for collection thereof cannot be transferred to private individuals, in the absence of a statute, but this power by law is vested in public officials. | The sovereign power to levy a tax and the machinery for collection thereof cannot be transferred to private individuals in absence of statute, but is vested in public officials, and a taxing unit, in absence of statute, cannot assign its claim for taxes to a citizen, and thereby subrogate the citizen to the collecting rights of the taxing unit. | Can the sovereign power to levy a tax and the machinery for collection thereof be transferred to private individuals? | 046617.docx | LEGALEASE-00164987-LEGALEASE-00164988 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 6345 | Abbott v. State, 190 Md. App. 595 | 3.77E+18 | Of import here, "[a] threat may be considered a "true threat" even if it is premised on a contingency." United States v. Bellrichard, 994 F.2d 1318, 1322 (8th Cir.), cert. denied, 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993); see United States v. Kosma, 951 F.2d 549, 554 n. 8 (3d Cir.1991) (recognizing that conditional threats could still be considered "true threats"); Dysart, 705 F.2d at 1256 (" "A statement may constitute a threat even though it is subject to a possible contingency in the maker's control" ") (quoting trial court's jury instructions with approval). Cf. Moosavi, 355 Md. at 664, 736 A.2d 285 (construing former Art. 27, " 9, which provided that "a person may not threaten ... to: (1) Set fire to or burn a structure," and stating that the statute "does not look to the truth or falsity of the statement; rather, it punishes statements which constitute communicated intentions to do harm"). Nor is the government required to prove the present ability or intent to carry out the threat. Roberts, 915 F.2d at 890; Dysart, 705 F.2d at 1256; see United States v. Armel, 585 F.3d 182, 185 (4th Cir.2009) ("defendant's inability to carry out specific threats does not render them unthreatening or harmless"). | The government is not required to prove the present ability or intent to carry out the threat, in order to convict a defendant of threatening to injure a State official. West's Ann.Md.Code, Criminal Law, S 3-708. | "Is the government required to prove the present ability or intent to carry out the threat, in order to convict a defendant of threatening to injure a state official?" | 047053.docx | LEGALEASE-00164597-LEGALEASE-00164598 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6346 | Loudenslager v. Gorum, 355 Mo. 181 | 413+49 | Nevertheless, we do not think that the Schendel and Magnolia Petroleum Company cases prohibit the award made herein by the Missouri Commission. In each of those cases, a substantial award was made to the claimant in the state in which the matter was first litigated. In the Schendel case, the award was affirmed after judicial review, and in the Magnolia case it was paid to claimant, before there was any determination of rights in other states. However, the Arkansas Commission found that these claimants were not entitled to anything under the Arkansas Act. The questions of who is an employer and who is an employee, under compensation acts, do not usually depend upon common-law principles (although they may be considered in their construction) but depend instead upon the terms and definitions of such Acts. Under our Act certain independent contractors are deemed employees, " 3698(a), R.S.1939, Mo.R.S.A.; and this is also true of certain tenants or lessees and their employees. Section 3698(b), R.S.1939, Mo.R.S.A. Likewise only certain employers are under it. The Workmen's Compensation Acts of Missouri and Arkansas are different in many respects. Therefore, the finding of the Arkansas Commission that claimants had no remedy to recover anything for Loudenslager's death under the Arkansas Act does not mean that they could not be given a remedy therefor by the Missouri Act. This very exception to the application of the full faith and credit clause is thus stated by the United States Supreme Court (64 S.Ct. loc. cit. 216) in the majority opinion in the Magnolia Petroleum Company case: "The fact that a suitor has been denied a remedy by one state because it does not afford a remedy for the particular wrong alleged, may not bar recovery in another state which does provide a remedy. See Troxell v. Delaware, L. & W. R. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; cf. Ash Sheep Co. v. United States, 252 | Under Workmen's Compensation Acts the questions of who is an employer and who is an employee do not usually depend upon common-law principles, although they may be considered in their construction, but upon the terms and definitions in such acts. | Is the question of who is an employer and who is an employee under the workmens compensation acts determined upon the terms and definitions in the acts? | 048795.docx | LEGALEASE-00164366-LEGALEASE-00164367 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 6347 | Day v. Haskell, 799 N.W.2d 355 | 135H+59 | " "The general rule is that a person is put in jeopardy when his trial commences, which in a jury case occurs when the jury is empaneled and sworn, and in a non-jury trial when the court begins to hear evidence." " Linghor, 2004 ND 224, 20, 690 N.W.2d 201 (quoting State v. Berger, 235 N.W.2d 254, 257 (N.D.1975)). Here, jeopardy attached when the jury was empaneled and sworn. | The general rule is that a person is put in jeopardy when his trial commences, which in a jury case occurs when the jury is empaneled and sworn, and in a non-jury trial when the court begins to hear evidence. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 12; NDCC 29-01-07. | What is the general rule for a person who is put in jeopardy in a jury and a non-jury trial? | Double Jeopardy - Memo 1028 - C - KG_67743.docx | ROSS-003282783-ROSS-003282784 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 6348 | State v. Linghor, 690 N.W.2d 201 | 135H+59 | "The general rule is that a person is put in jeopardy when his trial commences, which in a jury case occurs when the jury is empaneled and sworn, and in a non-jury trial when the court begins to hear evidence." State v. Berger, 235 N.W.2d 254, 257 (N.D.1975); see also Allesi, 216 N.W.2d at 813 (discussing United States v. Jorn, 400 U.S. 470, 479"80, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). "But in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). "[The Double Jeopardy Clause] does not prohibit retrial in every instance when the first trial has terminated prior to a verdict." | General rule is that a person is put in jeopardy when his trial commences, which in a jury case occurs when the jury is empaneled and sworn and in a non-jury trial when the court begins to hear evidence. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 12; NDCC 29-01-07. | What is the general rule for a person who is put in jeopardy in a jury and a non-jury trial? | Double Jeopardy - Memo 1028 - C - KG.docx | LEGALEASE-00054955-LEGALEASE-00054956 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6349 | People v. Cabrera, 402 Ill. App. 3d 440 | 135H+59 | To determine whether a subsequent prosecution would violate a defendant's right to avoid being placed in double jeopardy, a reviewing court must initially determine whether jeopardy "attached" in the first proceeding. Bellmyer, 199 Ill.2d at 537"38, 264 Ill.Dec. 687, 771 N.E.2d 391. There are three settings in which jeopardy may attach: (1) at a jury trial when the jury is empaneled and sworn; (2) at a bench trial when the first witness is sworn and the court begins to hear evidence; and (3) at a guilty plea hearing "when the guilty plea is accepted by the trial court." Bellmyer, 199 Ill.2d at 538, 264 Ill.Dec. 687, 771 N.E.2d 391. The defendant contends the constitutional rule against double jeopardy barred the subsequent trial on the offenses the State nol-prossed and the armed robbery charge to which the defendant pleaded guilty, but which was rejected and vacated by the circuit court. We address each contention separately. | There are three settings in which jeopardy may attach: (1) at a jury trial when the jury is empaneled and sworn; (2) at a bench trial when the first witness is sworn and the court begins to hear evidence; and (3) at a guilty plea hearing when the guilty plea is accepted by the trial court. U.S.C.A. Const.Amend. 5; S.H.A. Const. Art. 1, S 10. | Does jeopardy attach when the court begins to hear evidence? | 014682.docx | LEGALEASE-00165680-LEGALEASE-00165681 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 6350 | United States v. Cabrera, 804 F. Supp. 2d 1261 | 135H+100.1 | "Double jeopardy concerns are not implicated unless there has been some jeopardy-terminating event, such as an acquittal." Bobo, 419 F.3d at 1268. It is a fundamental principle, one not challenged by the government, that a person who has been found not guilty by a jury may not thereafter be tried for the same offense without violating the Double Jeopardy Clause. This is because the law "afford[s] absolute finality to a jury's verdict of acquittal"no matter how erroneous its decision"..." | A person who has been found not guilty by a jury may not thereafter be tried for the same offense without violating the Double Jeopardy Clause; this is because the law affords absolute finality to a jury's verdict of acquittal, no matter how erroneous its decision. U.S.C.A. Const.Amend. 5. | Can a person who has been found not guilty by a jury not thereafter be tried for the same offense without violating the Double Jeopardy Clause? | Double Jeopardy - Memo 479 - C - TJ_68258.docx | ROSS-003278520 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 6351 | Sam v. State, 401 P.3d 834 | 135H+1 | The double jeopardy clauses of the United States and Wyoming constitutions "provide protection against three distinct ills: a second prosecution for the same offense after one has been acquitted, a second prosecution for the same offense after one has been convicted, and multiple punishments for the same offense." Solis v. State, 2013 WY 152, 63, 315 P.3d 622, 636 (Wyo. 2013). However, such an analysis presupposes that the same conduct proved both offenses in issue. Thus, if the evidence showing one offense is separate and distinct from the evidence showing the other offense, then there is no need to analyze the similarity of the offenses or their lesser included quality, or to determine whether or not the legislature clearly intended to impose separate punishment for separate offenses originating from the same conduct. | The double jeopardy clauses of the federal and state constitutions provide protection against three distinct ills: a second prosecution for the same offense after one has been acquitted, a second prosecution for the same offense after one has been convicted, and multiple punishments for the same offense. U.S. Const. Amend. 5; Wyo. Const. art. 1, S 11. | What are the three distinct ills double jeopardy clauses protect against? | 016064.docx | LEGALEASE-00165811-LEGALEASE-00165812 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6352 | Ready v. State, 183 So. 3d 1234 | 135H+1 | "Because double jeopardy issues involve purely legal determinations, the standard of review is de novo." Benjamin v. State, 77 So.3d 781, 783 (Fla. 4th DCA 2011).[B]oth the United States and Florida Constitutions contain double jeopardy clauses that "prohibit[ ] subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense." However, ... "there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments." | Both the United States and Florida Constitutions contain double jeopardy clauses that prohibit subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense; however, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments. U.S.C.A. Const.Amend. 5; West's F.S.A. Const. Art. 1, S 9. | Does the constitution contain double jeopardy clauses prohibiting multiple prosecutions? | Double Jeopardy - Memo 709 - C - RF_68033.docx | ROSS-003294105-ROSS-003294106 | SA, Sub | 0.2 | 0 | 0 | 1 | 1 | |
| 6353 | Bryan v. State, 438 N.E.2d 709 | 135H+95.1 | The court ruled here that it felt the defendant was competent after hearing testimony from Drs. Hansen and Berkson, but that its ruling was subject to change and if a change occurred it would declare a mistrial. At that time, the trial court appointed another psychiatrist to examine the defendant and report back to the court. If a defendant is found incompetent during trial, the court may declare a mistrial sua sponte without jeopardy attaching. Wilson v. State, (1976) 169 Ind.App. 297, 299"300, 348 N.E.2d 90, 92. Here, given the late date of defendant's suggestion of incompetence and the unexpected absence of one psychiatrist, the court properly made an interim ruling and called for the additional evidence required by statute, receiving the same within the time permitted. | If defendant is found incompetent during trial, court may declare mistrial sua sponte without jeopardy attaching. | "If defendant is found incompetent during trial, can a court declare mistrial sua sponte without jeopardy attaching?" | Double Jeopardy - Memo 777 - C - NS_67782.docx | ROSS-003279544-ROSS-003279545 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6354 | Marshall v. State, 265 Ark. 302 | 135H+105 | We must decide to what extent, if any, the Fourteenth Amendment limits imposition of second sentences after the first is set aside. The United States Supreme Court has held that the Fifth Amendment guarantee against double jeopardy may be enforced through the Fourteenth Amendment. The Fifth Amendment was held in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), to guarantee three separate classes of protection: (1) Protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. These three prohibitions are protected by both the Fifth and Fourteenth Amendments to the Constitution of the United States. The third prohibition above-listed is the basis of the problem here presented. It would clearly be a violation of basic constitutional guarantees to fail to allow full credit for any time served pursuant to a prior sentence upon pronouncement of a second sentence for the same offense. | Both Fifth and Fourteenth Amendments to Constitution of the United States protect against second prosecution for same offense after acquittal, against second prosecution for same offense after conviction, and against multiple punishments for same offense. U.S.C.A.Const. Amends. 5, 14. | Do both the Fifth and Fourteenth Amendments to the Constitution of the United States protect against second prosecution for a same offense after acquittal? | 016328.docx | LEGALEASE-00165651-LEGALEASE-00165652 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6355 | Luke v. State, 51 N.E.3d 401 | 135H+1 | The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, " 14. "Indiana's Double Jeopardy Clause ... prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." Hopkins v. State, 759 N.E.2d 633, 639 (Ind.2001) (quoting Richardson v. State, 717 N.E.2d 32, 49 (Ind.1999)). The Indiana Supreme Court has held that "two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson, 717 N.E.2d at 49 | Indiana's Double Jeopardy Clause prevents the State from being able to proceed against a person twice for the same criminal transgression. West's A.I.C. Const. Art. 1, S 14. | Does double jeopardy Clause prevent the State from being able to proceed against a person twice for the same criminal transgression? | Double Jeopardy - Memo 868 - C - NS_67657.docx | ROSS-003293798-ROSS-003293799 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6356 | Gerlach v. Ballard, 233 W. Va. 141 | 135H+1 | The only issue in this appeal is whether the petitioner's convictions for second degree murder pursuant to West Virginia Code " 61"2"1 (2010)4 and death of a child by a parent, guardian or custodian pursuant to West Virginia Code " 61"8D"2a(a) (2010)5 violate the proscription against double jeopardy. We have explained that [t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.Syl. Pt. 1, State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992). Likewise, | The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections; it protects against a second prosecution for the same offense after acquittal, it protects against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | What constitutional protection does the double jeopardy clause of the fifth-amendment consist of? | 016424.docx | LEGALEASE-00165219-LEGALEASE-00165220 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 6357 | Herbert v. Billy, 160 F.3d 1131 | 135H+5.1 | While the "primary evil" to be prevented by the Double Jeopardy Clause is successive prosecution, Schiro v. Farley, 510 U.S. 222, 230, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), the Supreme Court has also construed the Clause to bar "successive punishments." United States v. Ursery, 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The protection against multiple punishments prohibits the government from punishing twice, or attempting a second time to punish criminally, for the same offense. Witte v. United States, 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)). | Double jeopardy clause's protection against multiple punishments prohibits the government from punishing twice, or attempting a second time to punish criminally, for the same offense. U.S.C.A. Const.Amend. 5. | "Does the protection against multiple punishments prohibit the Government from punishing twice, or attempting a second time to punish criminally for the same offense?" | 016465.docx | LEGALEASE-00165263-LEGALEASE-00165264 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6358 | United States v. Ahrensfield, 698 F.3d 1310 | 135H+1 | We review the district court's ultimate determination regarding double jeopardy de novo. United States v. Rodriguez"Aguirre, 73 F.3d 1023, 1025 (10th Cir.1996). The Double Jeopardy Clause "embodies two vitally important interests." Yeager v. United States, 557 U.S. 110, 117, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). The first is the principle that the state is not permitted to make repeated attempts to convict an individual for the same offense. Id. at 117"18, 129 S.Ct. 2360. "The second interest is the preservation of the finality of judgments." Id. at 118, 129 S.Ct. 2360 (internal quotation marks omitted). Defendant argues the second principle precluded the government from introducing evidence he allegedly made false statements to the FBI because he had been acquitted of that charge in the first trial. | Double Jeopardy Clause embodies two vitally important interests, i.e., the principle that state is not permitted to make repeated attempts to convict individual for same offense and interest in preserving finality of judgments. U.S.C.A. Const.Amend. 5. | What are the interests embodied in Double jeopardy clause? | 016500.docx | LEGALEASE-00165315-LEGALEASE-00165316 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6359 | State v. Moos, 758 N.W.2d 674 | 135H+1 | The constitutional guarantee against double jeopardy encompasses three separate protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. Department of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). When the same conduct violates more than one statutory provision, the first step in the double jeopardy analysis is to determine whether the legislature intended that each violation be a separate offense. Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The "question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). | Constitutional guarantee against double jeopardy encompasses three separate protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does the constitutional guarantee against double jeopardy encompass the protection against a second prosecution for the same offense after acquittal? | 016532.docx | LEGALEASE-00165352-LEGALEASE-00165354 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6360 | In re Commercial Money Ctr., 350 B.R. 465 | 349A+10 | Whether a transaction is a sale or a loan is based on the intentions of the parties as "determined from all the facts and circumstances surrounding the transactions at issue." Golden Plan, 829 F.2d at 709. NetBank argues that the bankruptcy court erred by excluding the declarations of its own executives and Debtor's former executives regarding their understanding of the transactions. | Whether a transaction is a sale or a loan for security is based on the intentions of the parties as determined from all the facts and circumstances surrounding the transactions at issue. | Is whether a transaction is a sale or a loan for security based on the intentions of the parties as determined from all the facts and circumstances surrounding the transactions at issue? | 042812.docx | LEGALEASE-00166032-LEGALEASE-00166033 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6361 | Porter v. State, 935 N.E.2d 1228 | 135H+132.1 | "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, " 14.3 Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Miller v. State, 790 N.E.2d 437, 439 (Ind.2003) (quoting Richardson v. State, 717 N.E.2d 32, 49 (Ind.1999)). In addition, categories of double jeopardy based on rules of statutory construction and common law prohibit multiple convictions or punishments for the same crime. Guyton v. State, 771 N.E.2d 1141, 1143 (Ind.2002); Calvert v. State, 930 N.E.2d 633, 641"42 (Ind.Ct.App.2010). As relevant here, these categories bar "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished," as well as "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." Guyton, 771 N.E.2d at 1143; Richardson v. State, 717 N.E.2d 32, 55"56 (Ind.1999) (Sullivan, J., concurring). | Under the Indiana Constitution, categories of double jeopardy bar conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished, as well as conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. West's A.I.C. Const. Art. 1, S 14. | Does categories of double jeopardy bar conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished? | 014867.docx | LEGALEASE-00166168-LEGALEASE-00166169 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6362 | Clancy v. State, 886 So. 2d 166 | 135H+99 | "The Supreme Court [has] cautioned that the phrase "manifest necessity" cannot be interpreted literally; only a "high degree" of necessity is required before concluding that a mistrial is appropriate. Arizona v. Washington, 434 U.S. [497,] at 506, 98 S.Ct. [824,] at 831 [ (1978) ]. "Manifest necessity for a mistrial is not determined by whether in fact the event precipitating the mistrial did influence the juror, but whether it might have unlawfully influenced the juror." Woods v. State, 367 So.2d 982, 984 (Ala.1978)." | "Manifest necessity" for a mistrial for double jeopardy purposes is not determined by whether in fact the event precipitating the mistrial did influence the juror, but whether it might have unlawfully influenced the juror. U.S.C.A. Const.Amend. 5. | "Is ""manifest necessity"" for a mistrial for double jeopardy purposes not determined by whether in fact the event precipitating the mistrial did influence the juror?" | 015934.docx | LEGALEASE-00166293-LEGALEASE-00166294 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6363 | Montgomery v. State, 21 N.E.3d 846 | 135H+1 | The next issue is whether Montgomery's conviction of neglect of a dependent as a class B felony violates double jeopardy principles. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, " 14. "Indiana's Double Jeopardy Clause ... prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." Hopkins v. State, 759 N.E.2d 633, 639 (Ind.2001) (quoting Richardson v. State, 717 N.E.2d 32, 49 (Ind.1999)). The Indiana Supreme Court has held that "two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson, 717 N.E.2d at 49. | State constitutional Double Jeopardy Clause prevents the State from being able to proceed against a person twice for the same criminal transgression. West's A.I.C. Const. Art. 1, S 14. | Does double Jeopardy clause prevent a State from being able to proceed against a person twice for the same criminal transgression? | Double Jeopardy - Memo 640 - C - PC_68417.docx | ROSS-003278287-ROSS-003278288 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6364 | Wilson v. Evanston Hosp., 276 Ill. App. 3d 885 | 307A+695 | If the refiling time under section 13"217 were to begin when the motion to reconsider is denied, a plaintiff could indefinitely extend the limitations period by filing successive motions to reconsider, since the denial of each successive motion would begin another limitations period. We therefore conclude that in order to promote certainty and finality of judgments, the one-year refiling period of section 13"217 begins to run when the motion to vacate the trial court's dismissal order is denied, and not when the motion to reconsider is denied. Plaintiffs' complaint, refiled nearly 19 months after the trial court denied Madeline Wilson's motion to vacate, was therefore properly dismissed as untimely. We note that even after plaintiff Madeline Wilson's motion for reconsideration was denied on March 24, 1992, plaintiffs still had almost four months in which to timely refile their complaint within one year of the July 12, 1991, order denying the motion to vacate. Plaintiffs instead chose to wait until February 10, 1993, to refile. | One-year refiling period permitted by Code of Civil Procedure following dismissal of action for want of prosecution begins to run when motion to vacate trial court's dismissal order is denied, and not when motion to reconsider is denied. S.H.A. 735 ILCS 5/13-217. | To promote certainty and finality of judgments does the statutory one-year refiling period begin to run when the motion to vacate the trial court's dismissal order is denied? | 040840.docx | LEGALEASE-00166192-LEGALEASE-00166193 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6365 | United States v. Leppo, 641 F.2d 149 | 135H+95.1 | The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267 (1976). The Clause, however, does not always bar a new trial after a mistrial has been declared. Where the mistrial is not requested by the defendant a retrial is permitted if there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. Id. at 607, 96 S.Ct. at 1079. Where the defendant requests the mistrial, ordinarily a retrial is not barred unless "the underlying error was "motivated by bad faith or undertaken to harass or prejudice." " Lee v. United States, 432 U.S. 23, 33, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977). | Double jeopardy clause protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense but does not always bar a new trial after a mistrial has been declared, and where a mistrial is not requested by the defendant a retrial is permitted if there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated and where defendant requests a mistrial, ordinarily a retrial is not barred unless the underlying error is motivated by bad faith or undertaken to harass or prejudice. U.S.C.A.Const. Amend. 5. | Does a double jeopardy clause protect a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense? | Double Jeopardy - Memo 561 - C - SK_68340.docx | ROSS-003280652-ROSS-003280654 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | |
| 6366 | In re Winston, 181 B.R. 589 | 349A+10 | "Nominal" means "being so small, slight, or negligible as scarcely to be entitled to the name: trifling, insignificant." Webster's Third New International Dictionary of the English Language Unabridged (1966), page 1534. "Hence a nominal payment is a token payment, bearing no relation to the real value of what is being paid for." The American Heritage Dictionary, Second College Edition (1985), page 845. "Nominal consideration" is "[o]ne bearing no relation to the real value of the contract or article...." Black's Law Dictionary (6th ed. 1990), page 307. "The courts, in referring to the term "nominal," frequently use it interchangeably with the sum of one dollar or some other piddling amount; but the real yardstick in determining whether the option price is nominal or substantial would appear to hinge on whether that price bears a resemblance to the fair market price of the article." In re Universal Medical Services, Inc., 8 U.C.C.Rep.Serv. 614, 1970 WL 12640 (Bankr.E.D.Pa.1970). | In deciding whether alleged lease permits lessee to purchase for "nominal consideration," so as to qualify as disguised security agreement under Alabama law, court must consider whether option price bears resemblance to fair market value of article; this is the real yardstick in determining whether option price is nominal or substantial. | When should a court consider whether an option price bears a resemblance to a fair market value of an article? | 042693.docx | LEGALEASE-00166707-LEGALEASE-00166708 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6367 | In re QDS Components, 292 B.R. 313 | 349A+10 | After determining that the Bright"Line Test has not been satisfied, an examination of all the facts and circumstances of the case must be made to determine whether the agreement in question is a true lease or disguised security agreement. Triplex Marine, 258 B.R. at 669 ("If a court determines that the [Bright"Line Test] does not compel a conclusion that a security interest was created per se, it should proceed to an examination of all the facts to determine whether the economic realities of a particular transaction create a security interest."); Taylor, 209 B.R. at 484"85 ("If the Court determines that the transaction is not a disguised security interest per se, it must then look to the specific facts of the case to determine whether the "economics of the transaction" suggest such a result." (quoting Lerch, 147 B.R. at 460)). The "key issue [the Court must determine] is "whether the lessor retains a meaningful residual interest" at the end of the lease term." In re Bumgardner, 183 B.R. at 224, 228 (Bankr.D.Idaho 1995) (quoting In re Zaleha, 159 B.R. 581, 585 (Bankr.D.Idaho 1993)); Addison, 41 Cal.App.4th at 1295, 49 Cal.Rptr.2d at 136 ("If ... a security interest [is] not conclusively found to exist ...., the court must then resort to an examination of the facts of the case to determine whether the lessor has retained a "meaningful residual interest" in the goods." | Under California law, once court determines that purported lease is not disguised security agreement as matter of law, as failing to satisfy bright-line statutory test, court must examine all of the facts and circumstances of case to determine whether the agreement in question is lease or security agreement, with the key issue being whether lessor retains meaningful residual interest at end of lease term. West's Ann.Cal.Com.Code S 1201(36). | When is the key issue being whether a lessor retains meaningful residual interest at an end of lease term considered? | 042875.docx | LEGALEASE-00167067-LEGALEASE-00167068 | Condensed, Order, SA, Sub | 0.68 | 1 | 1 | 1 | 1 | 1 |
| 6368 | In re APB Online, 259 B.R. 812 | 349A+10 | Consideration may be sizeable yet still be nominal under UCC " 1"201(37). Granite Equip. Leasing Corp. v. Acme Pump Co., 335 A.2d at 295. A lease stating that the lessee may purchase the equipment at the fair market value, determined at the time that the option is exercised, gives rise to an inference that the option price is not nominal. Jahn v. M.W. Kellogg Co. (In re Celeryvale Transp., Inc.), 822 F.2d 16, 18 (6th Cir.1987); In re Edison Bros. Stores, Inc., 207 B.R. at 810; In re The Answer"The Elegant Large Size Discounter, Inc., 115 B.R. 465, 468 (Bankr.S.D.N.Y.1990). The inference may be rebutted by proof that parties expected the fair market value at the end of the lease term to be negligible. In re Celeryvale Transp. Inc., 822 F.2d at 18; In re Edison Bros. Stores, Inc., 207 B.R. at 810; In re Beker Indus. Corp., 69 B.R. at 941. | Under Connecticut law, in deciding whether so-called equipment lease must conclusively be presumed to constitute a sale with disguised security agreement, on ground that lessee has option to purchase at conclusion of lease for nominal consideration, court should remember that consideration may be sizeable yet still be "nominal." C.G.S.A. S 42a-1-201(37). | "On ground that a lessee has an option to purchase at conclusion of a lease for nominal consideration, should a court remember that consideration may be sizeable yet still be ""nominal""?" | 042884.docx | LEGALEASE-00167093-LEGALEASE-00167094 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 6369 | Atl. City Casino Hotel Ass'n v. Casino Control Comm'n, 203 N.J. Super. 230 | 371+2016 | The Legislature may confer upon the minor political subdivisions of the State the "power to impose and levy local rates, taxes and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid, on the principle that for local purposes the local authorities are the representatives of the people." Tp. of Bernards v. Allen, 61 N.J.L. 228, 236, 39 A. 716 (E. & A. 1897). The Legislature may not however "delegate to another body, having no governmental functions, the authority to determine in its judgment or discretion, the amount to be raised by taxation...." Van Cleve v. Passaic Valley Sewerage Comm'rs, 71 N.J.L. 574, 583, 60 A. 214 (E. & A. 1905). | Power to originate a tax for revenue is vested with the general assembly and it may not delegate to another body, having no governmental functions, authority to determine in its judgment or discretion the amount to be raised by taxation. N.J.S.A. Const. Art. 4, S 6, par. 1. | Can the general assembly delegate to another non-governmental body the authority to determine in its judgment or discretion the amount to be raised by taxation? | Taxation - Memo 1333 - C - KAD_68527.docx | ROSS-003321928-ROSS-003321929 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 6370 | Joe Hatton v. Conner, 240 So. 2d 145 | 371+2016 | The remainder of appellant's arguments are directed at provisions of the Celerty and Sweet Corn Marketing Law which we did not rule upon in our previous decision. These arguments warrant little discussion. It is contended that since assessments under the Marketing Order are considered to be taxes under our decision in Conner v. Joe Hatton, Inc., 203 So.2d 154 (Fla.1967), the Legislature has unconstitutionally delegated its power to tax to the Commissioner of Agriculture. We disagree. The legislative power to tax may be exercised through subordinate governmental agencies within definite limitations fixed by law. | Legislative power to tax may be exercised through subordinate governmental agencies within definite limitations fixed by law. | Can the legislative power to tax be exercised through subordinate governmental agencies within definite limitations fixed by law? | Taxation - Memo 1355 - C - NK_68549.docx | ROSS-003280397-ROSS-003280398 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6371 | Tulane Homestead Ass'n v. Philip Bohrer Realty Co., 192 So. 154 | 371+2769 | We fully concur with the view expressed by the Attorney General, which we find is sustained by respectable authority. See 25 Ruling Case Law, Sections 48 and 52, 61 Corpus Juris, Page 954, and 61 A.L. R. 589. Section 1228 of Volume 61 of Corpus Juris (Verbum Taxation) states the general rule at page 954 as follows: "A state tax is not an ordinary debt subject to the control of the parties, and the taxing unit cannot assign the claim to a citizen and thereby subrogate him to the collecting rights of the taxing unit, unless the law expressly confers such power." (Italics ours). | A state tax is not an ordinary debt subject to control of parties, and taxing unit cannot assign the claim to a citizen and thereby subrogate him to the collecting rights of the taxing unit unless the law expressly confers such power. | Can a taxing unit assign its claim for taxes to a citizen? | 046618.docx | LEGALEASE-00166791-LEGALEASE-00166792 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 6372 | State v. Moulton, 120 Conn. App. 330 | 372+1013 | To prove the crime of harassment in the second degree, the state must show that the defendant, with the intent to harass, annoy or alarm another person, made a telephone call in a manner likely to cause annoyance or alarm. "Alarm is defined as to strike with fear: fill with anxiety as to threatening danger or harm...." (Internal quotation marks omitted.) State v. Cummings, 46 Conn.App. 661, 673, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). There is no conceptual distinction among acts intended "to harass," "to annoy" and "to alarm." State v. Marsala, 43 Conn.App. 527, 540, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997). | To prove the crime of harassment in the second degree, the state must show that the defendant, with the intent to harass, annoy or alarm another person, made a telephone call in a manner likely to cause annoyance or alarm. C.G.S.A. S 53a-183(a). | What is required to prove the crime of harassment in the second degree? | Threats - Memo #73 - C - LB_61641.docx | ROSS-003296506-ROSS-003296507 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6373 | Garza v. Citigroup Inc., 192 F. Supp. 3d 508 | 9+1 | Analysis. Citigroup's motion for judgment on the pleadings is premised on its argument that Garza fails to state a claim for the relief of an accounting when it has alleged no substantive claim entitling the Estate to that remedy. (D.I. 41 at 1-2) According to Citigroup, Garza has also failed to allege any relationship between the Estate and Citigroup that supports any duty by Citigroup to provide an accounting. (Id. at 2) Under well-accepted Delaware law, "[a]n accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result." Albert v. Alex. Brown Mgmt. Servs., Inc., Civ. No. 762"N, 2005 WL 2130607, at *11 (Del.Ch. Aug. 26, 2005). In other words, an accounting "reflects a request for a particular type of remedy, rather than an equitable claim in and of itself." Stevanov v. O'Connor, Civ. No. 3820"VCP, 2009 WL 1059640, at *15 (Del.Ch. Apr. 21, 2009); see also Addy v. Piedmonte, Civ. No. 3571"VCP, 2009 WL 707641, at *23 (Del.Ch. Mar. 18, 2009) (explaining that an accounting is "dependent on the viability and outcome of the underlying causes of action"); Rhodes v. Silkroad Equity, LLC, Civ. No. 2133"VCN, 2007 WL 2058736, at *11 (Del.Ch. July 11, 2007) ("An accounting is not so much a cause of action as it is a form of relief. Here, the demand for accounting is inherently dependent on the Court's decision on the fiduciary duty claims."). | Under Delaware law, an accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result; in other words, an accounting reflects a request for a particular type of remedy, rather than an equitable claim in and of itself. | Is accounting an equitable remedy? | 03602.docx | LEGALEASE-00077148-LEGALEASE-00077149 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6374 | Gilbreath v. State, 15 Ala. App. 588 | 36+12 | The statute provides: "Any person *** who willfully sets fire to, or burns any uninhabited dwelling house" is guilty of arson in the second degree. (Code 1907, " 6296.) The word "uninhabited" employed in the statute excludes the idea that the sole purpose of the statute is to protect the habitation or person, and manifests a legislative intent to protect the property of the owner in the "uninhabited dwelling house." The same legislative intent is manifest in the provisions of section 6301, Code 1907. Williams v. State, 4 Ala.App. 92, 58 South. 925; Garrett v. State, 109 Ind. 527, 10 N.E. 570; State v. Shaw, 79 Kan. 396, 100 Pac. 78, 21 L.R.A.(N.S.) 27, 131 Am.St.Rep. 298; 2 R.C.L. 496, " 1. | A statute, providing that any person who willfully sets fire to or burns any uninhabited dwelling house shall be guilty of arson in the second degree, manifests a legislative intent to protect the property rather than the habitation or person. | When is a person considered guilty of arson in the second degree? | 06343.docx | LEGALEASE-00078383-LEGALEASE-00078384 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6375 | Erickson v. Dir., N. Dakota Dep't of Transp., 507 N.W.2d 537 | 48A+144.2(2.1) | An appeal from an administrative hearing officer's decision involving a license suspension under N.D.C.C. " 39-20-04.1 is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. Hammeren v. North Dakota State Highway Com'r, 315 N.W.2d 679, 683 (N.D.1982). This Court examines the record of the administrative agency rather than the findings of the district court. Holler v. Dept. of Transp. Director, 470 N.W.2d 616, 617 (N.D.1991). Since this appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law. See N.D.C.C. "" 28-32-21 and 28-32-19. | Appeal from administrative hearing officer's decision involving license suspension is governed by Administrative Agencies Practices Act. NDCC 28-32-01 et seq., 39-20-04.1. | Does Administrative Agencies Practice Act governs an appeal from administrative hearing officer's decision involving a license suspension? | 07373.docx | LEGALEASE-00079068-LEGALEASE-00079069 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6376 | F.E.R.C. v. Elec. Power Supply Ass'n, 136 S. Ct. 760 | 145+11(4) | The Federal Power Act (FPA or Act), 41 Stat. 1063, as amended, 16 U.S.C. " 791a et seq., authorizes the Federal Energy Regulatory Commission (FERC or Commission) to regulate "the sale of electric energy at wholesale in interstate commerce," including both wholesale electricity rates and any rule or practice "affecting" such rates."" 824(b), 824e(a). But the law places beyond FERC's power, and leaves to the States alone, the regulation of "any other sale""most notably, any retail sale"of electricity. " 824(b). That statutory division generates a steady flow of jurisdictional disputes because"in point of fact if not of law"the wholesale and retail markets in electricity are inextricably linked. | Federal Energy Regulatory Commission's (FERC) authority under the FPA to regulate the interstate wholesale market for electricity is limited to rules or practices that directly affect the wholesale electricity rate. Federal Power Act, SS 205(da), 206(a), 16 U.S.C.A. SS 824d(a), 824e(a). | Does Federal Energy Regulatory Commission regulate the sale of electricity at wholesale in interstate commerce? | 06664.docx | LEGALEASE-00080956-LEGALEASE-00080959 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 6377 | Liberty Mut. Ins. Co. v. Westport Ins. Corp., 664 F. Supp. 2d 587 | 366+1 | Under South Carolina law, a claim for equitable subrogation requires: (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity.Id. at 617"18. | Under South Carolina law, a claim for equitable subrogation requires (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. | What does a claim for equitable subrogation require? | 00832.docx | LEGALEASE-00083960-LEGALEASE-00083961 | Condensed, SA | 0.04 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6378 | In re McCabe Grp., 424 B.R. 1 | 366+1 | " "Subrogation is an old term, rooted in equity," which today is used to mean "stand in the shoes of." " "[It] occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment." In East Boston Savs. Bank v. Ogan, the Supreme Judicial Court of Massachusetts set forth five factors that a court must determine for equitable subrogation to apply: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. The Supreme Judicial Court further explained that: Parties may be considered volunteers if, in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, and they act without being requested to do so by the person liable on the original obligation. Ultimately, equitable subrogation "is "a broad equitable remedy" and, depending on the individual case, it may apply even where one or more of these factors is absent." Nonetheless, equitable subrogation exists to prevent an unwarranted windfalls and "[d]uplicative recover[ies] [are] "a result which the law has never looked upon with favor." " Indeed, the Supreme Judicial Court noted that in applying Massachusetts subrogation theory, the United States Court of Appeals for the First Circuit "termed [it] to be one of "unjust enrichment" because of the importance .. placed on balancing the interests of all [parties]." | Under Massachusetts law, equitable subrogation exists to prevent unwarranted windfalls, because duplicative recoveries are a result which the law has never looked upon with favor. | "Does equitable subrogation exist to prevent unwarranted windfalls, because duplicative recoveries are a result which the law has never looked upon with favor?" | Subrogation - Memo 353 - SK.docx | ROSS-003303021-ROSS-003303023 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6379 | In re Olinger, 160 B.R. 1004 | 366+7(1) | Under the doctrine of equitable subordination, if a guarantor is called upon to pay the debt of the principal, the guarantor steps into the shoes of the creditor who was paid off. Homeowners Loan Corp. v. Henson, 217 Ind. 554, 29 N.E.2d 873 (1940); White v. Household Finance Corp., 158 Ind.App. 394, 302 N.E.2d 828 (1973); 38 Am.Jur. "Guaranty" " 127. The guarantor's interest also attaches to any security which the creditor does or could have obtained from the principal. White, 302 N.E.2d 828. Thus, the fact that the terms of the refinancing differed from the terms present with Regional financing did adversely affect the plaintiffs' position. | Under doctrine of equitable subrogation, if guarantor is called upon to pay debt of principal, guarantor steps into the shoes of creditor who was paid off; guarantor's interest also attaches to any security which creditor does or could have obtained from principal. | "Under the doctrine of equitable subrogation, if a guarantor is called upon to pay the debt of a principal, does the guarantor step into the shoes of the creditor who was paid off?" | 05153.docx | LEGALEASE-00084248-LEGALEASE-00084249 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 6380 | Armstrong v. Land & Marine Applicators, 463 So. 2d 1331 | 413+1 | As a matter of policy, the worker's compensation act in general is designed to balance the interests of the worker and the employer, with the theoretical concurrent benefit to the public of reducing the cost of doing business. Under the act, the employee is forced to relinquish his right to recover for injuries in tort and receive damages possibly more in line with the injury; in exchange the workman receives the benefit of faster compensation without the difficulties inherent in tort litigation. The employer who is forced to pay, except in very limited circumstances, is not burdened by high awards which could put the company out of business. Theoretically, the public benefits in that the integrity of the business community is maintained, injured workmen are compensated quickly and the cost of doing business remains reasonable with the result that the prices of goods and services do not overburden the consumer. | As matter of policy, Worker's Compensation Act in general is designed to balance interest of worker and employer with theoretical concurrent benefit to public of reducing the cost of doing business. LSA-R.S. 23:1021-23:1351. | "How does the workers compensation act balance the interest of the worker and employer, and benefit the public? " | 02222.docx | LEGALEASE-00092124-LEGALEASE-00092125 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 6381 | Denisen v. Milwaukee Mut. Ins. Co., 360 N.W.2d 448 | 413+1 | The Minnesota workers' compensation law establishes an exclusive system of compensation in all but certain designated employments for injuries which result in disability or death to employees and which arise out of and in the course of their employment. Minn.Stat. " 176.031 (1982) | Minnesota workers' compensation law establishes an exclusive system of compensation in all but certain designated employments for injuries which result in disability or death to employees and which arise out of and in course of their employment. M.S.A. S 176.031. | Is the workers compensation an exclusive system of compensation and does the injury or accident arise out of and in the course of their employment? | 02220.docx | LEGALEASE-00092130-LEGALEASE-00092131 | SA, Sub | 0.06 | 0 | 0 | 1 | 1 | |
| 6382 | Schroeder v. RGIS, 2013 IL App (1st) 122483 | 307A+683 | "Once a defendant satisfies the initial burden of presenting affirmative matter, the burden then shifts to the plaintiff to establish that the defense is "unfounded or requires the resolution of an essential element of material fact before it is proven.""Reilly v. Wyeth, 377 Ill.App.3d 20, 36, 315 Ill.Dec. 428, 876 N.E.2d 740 (2007) (quoting Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993)). | Once a defendant satisfies the initial burden of presenting affirmative matter, in moving for dismissal under Code of Civil Procedure section allowing dismissal of complaint when claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim, the burden then shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. S.H.A. 735 ILCS 5/2-619. | "Once the burden shifts to plaintiff, can he establish that the defense is unfounded? " | 11062.docx | LEGALEASE-00094585-LEGALEASE-00094586 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 6383 | Chappelle v. S. Florida Guardianship Program, 169 So. 3d 291 | 307A+46 | "Before a court may dismiss a cause as a sanction, it must first consider the six factors delineated in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), and set forth explicit findings of fact in the order that imposes the sanction of dismissal." Bennett ex rel. Bennett, 67 So.3d at 426 (citation omitted). Those factors are whether:1. the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2. the attorney has been previously sanctioned;3. the client was personally involved in the act of disobedience;4. the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5. the attorney offered reasonable justification for noncompliance; and 6. the delay created significant problems of judicial administration. | Before a court may dismiss a cause as a sanction, it must first consider the six factors delineated in Kozel v. Ostendorf for entering dismissal as sanction and set forth explicit findings of fact in the order that imposes the sanction of dismissal. | Should a trial court consider six factors prior to determining an appropriate sanction for a plaintiff's failure to amend? | 10859.docx | LEGALEASE-00094617-LEGALEASE-00094618 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6384 | Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co., 93 Cal. App. 4th 1142 | 366+1 | "The Court of Appeal in Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra, 65 Cal.App.4th at pages 1291"1292, 77 Cal.Rptr.2d 296, explained the concepts and confusion surrounding the theories of subrogation and contribution at length as follows: "As one California appellate court has opined, "[i]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship." It is also difficult to think of two legal concepts that have caused more confusion and headache for both courts and litigants than have contribution and subrogation. [Citation.] Although the concepts of contribution and subrogation are both equitable in nature, they are nevertheless distinct. Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the "subrogee" is equitably subrogated to the claimant (or "subrogor"), and succeeds the subrogor's rights against the obligor. [Citation.] In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. ""As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."" The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to " "stand in the shoes' " of its insured, because it has no greater rights than the | The doctrine of "equitable subrogation" is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. | Is the right of subrogation purely derivative? | 043725.docx | LEGALEASE-00121559-LEGALEASE-00121561 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6385 | Martin v. Sally, 341 Ill. App. 3d 308 | 388+43 | At issue are several evidentiary rulings rendered by the trial court in its consideration of the motions in limine brought by the parties to this appeal. Motions in limine are designed to produce a trial without the introduction of prejudicial material. Konieczny v. Kamin Builders, Inc., 304 Ill.App.3d 131, 136, 237 Ill.Dec. 440, 709 N.E.2d 695 (1999). On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. Green v. Union Pacific R.R. Co., 269 Ill.App.3d 1075, 1082, 207 Ill.Dec. 599, 647 N.E.2d 1092 (1995). A trial court's decision on a motion in limine will not be disturbed absent an abuse of discretion. Hallowell v. University of Chicago Hospital, 334 Ill.App.3d 206, 210, 267 Ill.Dec. 632, 777 N.E.2d 435 (2002). In case of trial court error, a reversal is called for only if the evidence improperly admitted was sufficiently prejudicial to change the outcome of the trial. Cairns v. Hansen, 170 Ill.App.3d 505, 511, 120 Ill.Dec. 757, 524 N.E.2d 939 (1988). | On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. | Does a trial court judge maintain broad discretion in the admission of evidence and in ruling upon a motion in limine? | 027896.docx | LEGALEASE-00125051-LEGALEASE-00125052 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6386 | In re Nancy A., 344 Ill. App. 3d 540 | 307A+501 | We agree with the petitioner's interpretation of Gibellina that a plaintiff has an absolute right to take a voluntary dismissal unless there exists an unequivocal conflict between a specific rule of the supreme court and section 2-1009, as in O'Connell, or where a previously filed motion exists, which, if ruled upon favorably by the court, could result in a final disposition of the case. (Gibellina, 127 Ill.2d at 138, 129 Ill.Dec. 93, 535 N.E.2d 858 (emphasis added). When deciding Gibellina, the court rejected the argument that a version of the Federal rule, which permits a plaintiff to take a voluntary dismissal as of right only prior to the filing of an answer or motion by the defendant (Fed.R.Civ.P. 41(a).), should be adopted. We believe it is clear that, under Gibellina, the trial court only has the discretion to decide whether to hear a previously filed dispositive motion. See Mizell v. Passo (1989), 192 Ill.App.3d 435, 440, 139 Ill.Dec. 398, 548 N.E.2d 783 (appeal all'd (1990), 131 Ill.2d 560, 142 Ill.Dec. 883, 553 N.E.2d 397). | Plaintiffs have an almost absolute right to take a voluntary dismissal absent an unequivocal conflict between a specific rule of the Supreme Court and Code of Civil Procedure. S.H.A. 735 ILCS 5/2-1009. | Do plaintiffs have an absolute right to take a voluntary dismissal? | 024939.docx | LEGALEASE-00129309-LEGALEASE-00129310 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6387 | Briden v. Rd. Sys., 705 F. Supp. 367 | 413+195 | The economic reality test looks to the totality of the circumstances surrounding the performed work, and considers: (1) control of a worker's duties; (2) payment of wages; and (3) the right to hire, fire and the maintenance of discipline. 421 Mich. at 648, 364 N.W.2d 670. The Wodogaza court adds a fourth factor: The performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.161 Mich.App. at 753, 411 N.W.2d 848. | Under Michigan's economic reality test, which attempts to determine true employer of injured worker for worker's disability compensation purposes, totality of circumstances surrounding performed work is considered including who had control of worker's duties, who paid wages, who had right to hire, fire, and maintain discipline, and worker's performance of duties as integral part of employer's business toward accomplishment of common goal. M.C.L.A. S 418.101 et seq. | Does the economic reality test look to the totality of the circumstances surrounding the performed work? | 047739.docx | LEGALEASE-00132554-LEGALEASE-00132555 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 6388 | United States v. Etcheverry, 230 F.2d | 260+34 | The law is well settled by innumerable decisions that when a mining claim has been perfected under the law, it is in effect a grant from the United States of the exclusive right of possession to the same. It constitutes property to its fullest extent, and is real property subject to be sold, transferred, mortgaged, taxed, and inherited without infringing any right or title of the United States. Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S.Ct. 888, 79 L.Ed. 1627; Wilbur v. U.S. ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445; Clipper Mining Co. v. Eli Mining & Land Co., 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944; St. Louis Mining & Mill Co. v. Montana Mining Co., 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735. | A perfected mining claim constitutes property to its fullest extent and is real property subject to be sold, transferred, mortgaged, taxed and inherited without infringing any right or title of United States. 30 U.S.C.A. SS 22, 26. | "When a mining claim has been perfected under the law, is it in effect a grant from the United States?" | 021340.docx | LEGALEASE-00142770-LEGALEASE-00142771 | Condensed, Order, SA | 0.71 | 1 | 1 | 0 | 1 | 1 |
| 6389 | Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170 | 30+3951 | A movant establishes its entitlement to summary judgment by conclusively proving all essential elements of its cause of action as a matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). When determining whether summary judgment was proper, we review the evidence in the light most favorable to the nonmovant, taking all evidence in favor of the nonmovant as true and resolving all doubts as to the existence of a genuine issue of material fact in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548"49 (Tex.1985). | When determining whether summary judgment was proper, appellate court reviews evidence in light most favorable to nonmovant, taking all evidence in favor of nonmovant as true and resolving all doubts as to existence of genuine issue of material fact in its favor. | Will evidence favorable to the nonmovant will be accepted as true when making decisions on summary judgment? | Bills and Notes - Memo 845 - RK_60144.docx | ROSS-003284351-ROSS-003284352 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6390 | Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170 | 30+3951 | A movant establishes its entitlement to summary judgment by conclusively proving all essential elements of its cause of action as a matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). When determining whether summary judgment was proper, we review the evidence in the light most favorable to the nonmovant, taking all evidence in favor of the nonmovant as true and resolving all doubts as to the existence of a genuine issue of material fact in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548"49 (Tex.1985). | When determining whether summary judgment was proper, appellate court reviews evidence in light most favorable to nonmovant, taking all evidence in favor of nonmovant as true and resolving all doubts as to existence of genuine issue of material fact in its favor. | Will all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true when deciding summary judgment? | 009756.docx | LEGALEASE-00152649-LEGALEASE-00152650 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 6391 | DePuy Synthes Sales v. Globus Med., 259 F. Supp. 3d 225 | 13+27(1) | Bruno, 106 A.3d at 68. Although the gist of the action doctrine "call[s] for a fact-intensive judgment as to the true nature of a claim," Williams v. Hilton Grp. PLC, 93 Fed.Appx. 384, 386 (3d Cir. 2004), whether the gist of the action doctrine applies in any particular setting is a question of law. Alexander Mill Servs., LLC v. Bearing Distrib., Inc., No. 06-1116, 2007 WL 2907174, at (W.D. Pa. Sep. 28, 2007). | Under Pennsylvania law, although gist of the action doctrine calls for fact-intensive judgment as to claim's true nature, whether gist of the action doctrine applies in any particular setting is question of law. | Does gist of the action doctrine call for fact-intensive judgment as to a claim's true nature | 006391.docx | LEGALEASE-00166859-LEGALEASE-00166860 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 6392 | Bank of Tennessee v. Officer, 62 Tenn. 173 | 83E+460 | In this there is no error. In the case of bills of exchange, promissory notes, and other commercial contracts, a month is always a calendar month, so, if a bill or note is dated on the 10th of January, and made payable one month after date, it is due, the three days of grace being included, the 13th of February. | In the case of bills of exchange, promissory notes, and other commercial contracts, a month is always a calendar month. A note payable six months after the 30th of May is due just six calendar months and three days thereafter, the days of grace being included, bringing it to maturity, consequently, on the 3rd of December succeeding. Until that day the endorsers of such paper have not broken their contract by non-payment. | "In the case of bills of exchange, promissory notes, and other commercial contracts, how many days of grace are available in time of payment?" | Bills and Notes- Memo 492-IS_60216.docx | ROSS-003280409-ROSS-003280410 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 6393 | Knight v. Chicago Corp., 183 S.W.2d 666 | 260+79.1(0.5) | The words "pooling agreements," "unitizing contracts," or like specific terms were not employed in the provision prohibiting assignments of certain types of interests, although pooling or unitizing arrangements for oil and gas development purposes were well known to the Texas oil industry in 1940. The words actually used in the lease were, "Lessee shall not make assignments of undivided interests, overriding royalties or oil payments." These three classes of assignments mentioned are referred to by Professor Summers as per cent. interests. Summers Oil and Gas, Perm. Ed., 327, " 556. According to Summers this type of assignment had its origin in the attempted development of oil and gas leases by persons of limited capital. A certain percentage of the lessee's interest would be sold in order to raise funds for drilling costs. We think the terms undivided interest, overriding royalties and oil payments have certain well defined meanings in Texas. All three types of interest are carved out of and constitute a part of the working interest created by an oil and gas lease. An overriding royalty is a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production. | An "overriding royalty" is a certain percentage of the working interest which as between lessee and assignee of mineral lease is not charged with cost of development or production. | Can the term overriding royalty be defined as a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production? | Mines and Minerals - Memo 341 - C - ML_66666.docx | ROSS-003283264-ROSS-003283265 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6394 | People v. Brumfield, 72 Ill. App. 3d 107 | 110+632(5) | A motion Inlimine should be used with caution, particularly in criminal cases. When used in the manner of its application in this case, it has the potential to deprive a criminal defendant of his day in court. That a defendant may have a tenuous defense is an insufficient justification for prohibiting him from trying to establish that defense. Nor should a party ordinarily be required to try a case or defense twice once outside the jury's presence to satisfy the trial court of its sufficiency and then again before the jury. Whether the defendant will be able to substantiate his defense sufficiently to generate a jury question cannot be known until the evidence is in, but a defendant has the right to present his defense at trial. The trial court's order granting the State's motion Inlimine before the admission of any evidence deprived the defendant of his fundamental right to defend himself in a criminal trial. Summary judgments are allowed on rare occasions in civil cases, but never in criminal cases.For the foregoing reasons the judgment of the circuit court of Madison County is reversed and this cause is remanded for a new trial. | Defendant should not ordinarily be required to try a case or defense twice, once outside jury's presence to satisfy trial court of its sufficiency and then again before the jury. U.S.C.A.Const. Amends. 6, 14; S.H.A.Const.1970, art. 1, S 2. | "Should a party be required to try a case twice - once outside the jury's presence to satisfy the trial court of its sufficiency, and then again before jury? " | Pretrial Procedure - Memo # 489 - C - LK.docx | ROSS-003283406-ROSS-003283408 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6395 | Norcon Builders v. GMP Homes VG, 161 Wash. App. 474 | 366+31(4) | Finally, we note "in the real estate context, equitable subrogation has been traditionally invoked only to prevent unjust enrichment; equitable remedies are not granted where it would produce injustice." Kim v. Lee, 145 Wash.2d 79, 89, 31 P.3d 665 (2001); see also Restatement (Third) of Property: Mortgages 7.6 cmt. (f) at 522. As discussed above, the UOs fail to establish that Liberty was unjustly enriched. See Section II, supra. Accordingly, the trial court did not err in refusing to equitably subrogate the UOs to Frontier's first priority position. | In the real estate context, equitable subrogation has been traditionally invoked only to prevent unjust enrichment; equitable remedies are not granted where it would produce injustice. Restatement (Third) of Property (Mortgages) S 7.6 comment. | Is equitable subrogation traditionally invoked in the context of real estate to prevent unjust enrichment? | Subrogation - Memo 245- VG C.docx | ROSS-003285301-ROSS-003285302 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6396 | Misener Marine Construction Inc. v. Norfolk Dredging Co., 594 F.3d 832 | 16+121 | The law in this Circuit regarding attorneys' fees in maritime disputes is clear. "The prevailing party in an admiralty case is not entitled to recover its attorneys' fees as a matter of course." Natco Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1193 (11th Cir. 2001) (citing Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 730 (5th Cir. 1980) ("Absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees.")); see also Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., 207 F.3d 1247, 1250 (11th Cir. 2000) ("A party is not entitled to attorney's fees in an admiralty case unless fees are statutorily or contractually authorized."). There are exceptions to the general rule precluding recovery of attorneys' fees. See Natco, 267 F.3d at 1196 (attorneys' fees were properly awarded in a maritime case where a specific contractual provision was interpreted to provide the recovery of attorneys' fees). Attorneys' fees will be awarded to the prevailing party in maritime cases if: "(1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." Id. at 1193. Absent one of these exceptions, this Court will not award the prevailing party attorneys' fees. | Attorneys' fees will be awarded to the prevailing party in maritime cases if (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees. | Are attorneys fees awarded to prevailing parties in admiralty cases? | Admiralty Law - Memo 17 - JS.docx | ROSS-003285802-ROSS-003285804 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6397 | Arkansas Louisiana Gas Co. v. Hardin, 206 Ark. 593 | 371+2005 | The public policy of the state is determined by the legislative branch of the government. The legislature, in adopting this "back tax law", took into consideration the manifold taxes and excises that are now being collected by various governmental taxing units, as well as the irreparable harm that might in many cases be done to business enterprise by permitting a taxpayer, who has, in good faith, tried to comply with the law, to be sued for "back taxes" long after the occurrence of the transactions creating the alleged tax liability. By this act it has declared it to be the policy of the state that whenever the taxpayer, in good faith, without collusion or fraud, makes to the state a full disclosure of all the facts essential to a calculation of the correct amount due from him for any excise or tax and pays the amount shown by his report to be due, and thereupon the statutory machinery for determining and collecting any deficiency of taxes is not put in motion by the state's collecting officials, the state may not afterwards sue to recover any delinquency in the taxes arising from transactions covered by such disclosure. It is an axiom that the state, in order to function properly, must collect taxes. A corollary, doubtless recognized by the legislature in formulating the policy above stated, is that it is necessary for the state to exercise its power of taxation, aptly described as "the power to destroy", in such a manner as to permit the solvent survival of taxpayers able to pay the taxes required by the state for its support. | Though state in order to function properly must collect taxes, it must exercise power of taxation in such manner as to permit the solvent survival of taxpayers able to pay the taxes required by state for its support. | Should the exercise of the power of taxation be in such a manner as to permit the taxpayers ability to pay the taxes required by state for its support? | Taxation - Memo # 613 - C - KA.docx | ROSS-003288855-ROSS-003288856 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 6398 | Chaplin v. Selznick, 186 Misc. 66 | 307A+99 | Ordinarily, one defendant may not examine a co-defendant before trial unless the one seeking the examination has asked for affirmative relief against the defendant whose examination is sought. A derivative stockholders' suit is an anomaly in the law. Nowhere have its characteristics been more clearly or succinctly stated than in an opinion by Mr. Justice Scott, speaking for the Appellate Division of the First Department, in which he said: "Representative actions by stockholders are unique, in that they are not prosecuted by the stockholder plaintiff for his own direct benefit, or in his own direct right, or because any right of his has been directly violated, or because he is entitled individually to the relief sought. Such actions are, as they are commonly designated, purely representative; the plaintiff being permitted to maintain the action, notwithstanding his lack of direct interest, solely to set the machinery of justice in motion, and to prevent what would otherwise be a complete failure of justice. (3 Pom.Eq.Juris [3rd ed.] 2123.) This form of action is an invention of equity, and stockholders are allowed to resort to it, notwithstanding a lack of direct interest in the relief sought because, as it has been said: "The claims of justice would be found superior to any difficulties arising out of technical rules respecting the mode in which corporations are required to sue." Foss v. Harbottle, 2 Hare 461"492. The part which a stockholder plays in such an action is merely that of an instigator. The cause of action is that of the corporation, and the recovery must run in its favor.' Holmes v. Camp, 180 App.Div. 409, 412, 167 N.Y.S. 840, 842. | Ordinarily one defendant may not examine a codefendant before trial unless the one seeking examination has asked for affirmative relief against the defendant whose examination is sought. Civil Practice Act SS 288, 289. | Can a defendant examine a codefendant before trial unless the one seeking examination has asked for affirmative relief against the defendant whose examination is sought? | Pretrial Procedure - Memo # 4548 - C - KG.docx | ROSS-003291753-ROSS-003291754 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6399 | State v. Ensley, 240 Ind. 472 | 200+80 | Third: What appellees are actually contending here is that they have a property right in the free and unrestricted flow of traffic passing their premises and any impairment of, or interference with, this alleged right must be compensated. They here are attempting to equate this alleged "right" with the property right of ingress and egress. The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route. Warren v. Iowa State Highway Commission, Iowa 1958, 93 N.W.2d 60, 65; Walker v. State, 1956, 48 Wash.2d 587, 295 P.2d 328, 331; In re Appropriation of Easements for Highway and Slope Purposes, 1955, 101 Ohio App. 1, 137 N.E.2d 595, 598; Jones Beach Boulevard Estate, Inc. v. Moses, et al., 1935, 268 N.Y. 362, 197 N.E. 313, 315, 100 A.L.R. 487. | Generally, there is no property right of an abutting owner in the free flow of traffic past his property and no compensation can be claimed if such traffic is diverted from his premises or is made to travel a more circuitous route. | Is there any property right of an abutting owner in the free flow of traffic past his property? | Highways -Memo 262 - DB_58960.docx | ROSS-003294532-ROSS-003294533 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6400 | Frymire Eng'g Co., ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd., 194 S.W.3d 713 | 366+1 | The doctrine of equitable subrogation "may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract." Smart v. Tower Land and Inv. Co., 597 S.W.2d 333, 337 (Tex.1980) (emphasis added). By entering into the contract with Price Woods, Frymire voluntarily agreed to pay for any damages caused by its employees or suppliers. Frymire/Liberty concedes in its brief that its contractual duty operated "not just in favor of Price Woods but also in favor of the owner of the Renaissance Hotel...." There is no evidence that Renaissance made any demand upon appellees to recover damages. When Frymire/Liberty paid Renaissance, it paid to satisfy its own contractual obligation rather than to satisfy appellees' hypothetical tort liability. Thus, Frymire/Liberty cannot show that appellees were primarily liable upon the debt it paid. See Argonaut, 869 S.W.2d at 540. See also Kerrville, 856 S.W.2d at 415"16 (bank not entitled to equitable subrogation from debtor when it purchased notes and renewed liens for its own benefit). Appellees were not unjustly enriched by Frymire's performance of a contract to which appellees were not parties. We conclude that Frymire/Liberty does not have standing to sue appellees under the doctrine of equitable subrogation. | The doctrine of equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. | When can the doctrine of equitable subrogation be invoked to prevent unjust enrichment? | Subrogation - Memo 993 - C- CAT.docx | ROSS-003296418-ROSS-003296419 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6401 | Englewood v. Miami Valley Lighting, 182 Ohio App. 3d 58 | 317A+101 | Next, a public utility must conduct "its operations in such a manner as to be a matter of public concern." A & B Refuse Disposers, 64 Ohio St.3d at 388, 596 N.E.2d 423. In evaluating whether an entity conducts itself in a manner as to be a public concern, courts consider (1) the good or service provided, (2) competition in the local marketplace, and (3) regulation by a governmental authority. Id. | In evaluating whether an entity conducts itself in a manner as to be a public concern, for purposes of determining whether the entity is a "public utility," courts consider (1) the good or service provided, (2) competition in the local marketplace, and (3) regulation by a governmental authority. | What determines whether an entity conducts itself as to be of public concern or a public utility? | Public utilities - Memo 10 - RM.docx | ROSS-003297344-ROSS-003297345 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 6402 | In re Flamingo 55, 378 B.R. 893 | 366+1 | "[S]ubrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right.... Subrogation places the party paying the loss or claim (the "subrogee") in the shoes of the person who suffered the loss ("the subrogor"). Thus, when the doctrine of subrogation applies, the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim." Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645 (9th Cir.2002). See also Han v. United States, 944 F.2d 526 (9th Cir.1991); Milgard Tempering, Inc. v. Darosa (In re Darosa), 318 B.R. 871 (9th Cir. BAP 2004). | "Subrogation" is the substitution of one party in place of another with reference to a lawful claim, demand, or right, by which the party paying the loss or claim, that is, the "subrogee," is placed in the shoes of the person who suffered the loss, the "subrogor." | "Does subrogation refer to the placing of one party in the position of a second party, with respect to the rights and obligations of a claim?" | Subrogation - Memo 196 - RM C.docx | ROSS-003298322-ROSS-003298323 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 6403 | In re Frankum, 399 B.R. 498 | 366+1 | Under a theory of equitable subrogation, a person who pays the debt of another may seek reimbursement to prevent unjust enrichment. In re Hall, 295 B.R. 877, 881 (Bankr.W.D.Ark.2003). To invoke the doctrine of equitable subrogation, five criteria must be met: (1) the party seeking subrogation must have made the payment to protect his own interest; (2) the party seeking subrogation must not have acted as a volunteer; (3) the party seeking subrogation must not have been primarily liable for the debt; (4) the party seeking subrogation must have paid off the entire debt; and (5) subrogation must not work injustice to the rights of others. In Re Flamingo 55, Inc., 378 B.R. 893, 919 (Bankr.D.Nev.2007). | Under a theory of "equitable subrogation," a person who pays the debt of another may seek reimbursement to prevent unjust enrichment. | Should a person who pays the debt of another seek reimbursement to prevent unjust enrichment under a theory of equitable subrogation? | Subrogation - Memo 336 - RM C.docx | ROSS-003299117-ROSS-003299118 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6404 | Jordan v. Griley, 667 So. 2d 493 | 307A+680 | This is an appeal from a final order dismissing appellee George Griley as a party defendant in appellants' lawsuit. Griley's motion to dismiss was based on factual matters which were outside the second amended complaint. As stated in Lewis v. Barnett Bank, 604 So.2d 937 (Fla. 3d DCA 1992):The law is well settled that a motion to dismiss a complaint is not a motion for summary judgment in which the court may rely on facts adduced in depositions, affidavits, or other proofs. On a motion to dismiss, the trial court is necessarily confined to the well-pled facts alleged in the four corners of the complaint and contrary to the defendant's argument, is not authorized to consider any other facts, including, as here, the sufficiency of the evidence which the plaintiff will likely produce at trial or other claimed facts asserted by defense counsel relating to unpled affirmative defenses, even if argued by counsel for the parties on the motion to dismiss. | Motion to dismiss complaint is not motion for summary judgment in which court may rely on facts adduced in depositions, affidavits, or other proofs. | "Is a motion to dismiss complaint not a motion for summary judgment in which a court can rely on facts adduced in depositions, affidavits, or other proofs?" | Pretrial Procedure - Memo # 10428 - C - KG_62413.docx | ROSS-003305789-ROSS-003305790 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 6405 | Marshall v. Horn Seed Co., 509 F. Supp. 1 | 349+200 | Under any standard of probable cause, the affidavit which formed the basis for the issuance of the warrant in this case is insufficient. In passing on the validity of the search warrant, the reviewing court may consider only that information brought to the attention of the issuing magistrate or judge. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Weyerhaeuser Co. v. Marshall, supra. The issuance of an inspection warrant is, of necessity, an ex parte proceeding, and while the issuing court did not have the benefit of the arguments and authorities presented by respondent, or the time to conduct research on the issue, that court's determination must be reviewed by what was presented to it, not what is known after the hearing. | In passing on validity of a search warrant, a reviewing court may consider only that information brought to the attention of the issuing magistrate or judge. U.S.C.A.Const. Amend. 4. | Should the court consider only that information brought to the attention of the issuing magistrate or judge while deciding on the validity of the search warrant? | Inspection - Memo 14 - SH.docx | ROSS-003311224-ROSS-003311226 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6406 | In re Hall, 477 B.R. 74 | 366+1 | The Trustee alternatively maintains the Defendant would not be subrogated to the rights of Bank upon payment of the Second Mortgage from sale proceeds because requirements under 11 U.S.C. " 509(a) are not met. There is some disagreement as to what is required to subrogate a claim under " 509. The issue is whether subrogation is governed exclusively by the requirements of " 509 of the Bankruptcy Code, or whether the creditor seeking subrogation under " 509 must also satisfy a state common law right commonly referred to as "equitable subrogation." The distinction will be critical in this case if an offer to purchase is even received. Under the Bankruptcy Code, a co-debtor is subrogated to the rights of a creditor if it: (1) is liable with the debtor on or has secured; (2) a claim of a creditor against the debtor; and (3) pays such claim. In contrast, under Iowa state law, equitable subrogation is appropriate where: (1) payment was made to protect the subrogee's own interest; (2) repayment by the subrogee was not voluntary; (3) the debt paid was one for which the subrogee was not primarily liable; (4) the entire debt was paid; and (5) subrogation will not injure the rights of others. Klotz v. Klotz, 440 N.W.2d 406, 409 (Iowa Ct.App.1989). The state law requirements for equitable subrogation are therefore more exacting and their application here would possibly defeat Defendant's theory as he will not have paid the entire debt to the Bank. The Defendant argues that his situation warrants subrogation under either theory. | Under Iowa state law, equitable subrogation is appropriate when: (1) payment was made to protect subrogee's own interest; (2) repayment by subrogee was not voluntary; (3) debt paid was one for which subrogee was not primarily liable; (4) entire debt was paid; and (5) subrogation will not injure rights of others. | When is equitable subrogation appropriate? | Subrogation - Memo 276 - SHS.docx | ROSS-003312862-ROSS-003312864 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6407 | Mahler v. Szucs, 135 Wash. 2d 398 | 366+1 | There are, in effect, two features to subrogation. The first is the right to reimbursement. The second is the mechanism for the enforcement of the right. The right to reimbursement may arise by operation of law, termed legal or equitable subrogation, or by contract, called conventional subrogation. Ross v. Jones, 174 Wash. 205, 216, 24 P.2d 622 (1933). | Right to reimbursement under law of subrogation may arise by operation of law, termed "legal subrogation" or "equitable subrogation," or by contract, called "conventional subrogation." | "Does the right to reimbursement arise by operation of law, termed legal or equitable subrogation, or by contract, called conventional subrogation?" | Subrogation - Memo 133 - VP C.docx | ROSS-003322532-ROSS-003322533 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 6408 | XL Specialty Ins. Co. v. Com., Dep't of Transp., 269 Va. 362 | 366+1 | Equitable subrogation is subrogation that arises by operation of law. It is not based on contract or privity of parties, but is "purely equitable in nature, dependent on the facts and circumstances of each particular case." Centreville Car Care, Inc. v. North Am. Mortgage, 263 Va. 339, 345, 559 S.E.2d 870, 872 (2002) (quoting Federal Land Bank of Baltimore v. Joynes, 179 Va. 394, 402, 18 S.E.2d 917, 920 (1942)). When a principal defaults on a contract guaranteed by a performance or payment bond and the surety performs on the bond, principles of surety law and the doctrine of equitable subrogation impose certain rights and duties running between the surety, principal, and obligor, and allow the surety to enforce such rights and duties. See Dickenson v. Charles, 173 Va. 393, 400, 4 S.E.2d 351, 353 (1939) (quoting Kendrick v. Forney, 63 Va. (22 Gratt.) 748, 749"50 (1872)); Fulkerson v. Taylor, 100 Va. 426, 432, 41 S.E. 863, 865 (1902); Restatement (Third) of Suretyship and Guaranty " 27 (1996). | "Equitable subrogation" is subrogation that arises by operation of law; it is not based on contract or privity of parties, but is purely equitable in nature, dependent on the facts and circumstances of each particular case. | Does legal or equitable subrogation arise by operation of law based on the facts or underlying circumstances of the case? | Subrogation - Memo # 492 - C - NO.docx | ROSS-003322668-ROSS-003322669 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6409 | Rupp v. Transcon. Ins. Co., 627 F. Supp. 2d 1304 | 366+1 | The Rupps, as assignees of Westchester, apparently bring a claim of equitable subrogation against American and Continental. Utah law recognizes a claim for equitable subrogation by an excess insurer against a primary insurer arising out of the excess insurer's payment of a claim to the insured or a third-party on behalf of the insured. Subrogation is an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights. The right to subrogation does not depend on contractual relationships, as its purpose is to work out an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who, in equity and in good conscience, ought to pay it. State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co., 912 P.2d 983, 985 (Utah 1996) (internal quotations and citations omitted). Relief is available if the following conditions are met: (1) There must be a debt or obligation for which the subrogee [here, excess carrier Westchester] was not primarily liable; (2) the subrogee must have made payment to protect his own rights or interest; (3) the subrogee must not have acted merely as a volunteer; and (4) the entire debt must have been paid. Furthermore, subrogation must not work any injustice to the rights of others. Id. at 986 (internal citations omitted). Here, the first condition is met. Granite of Utah owed a debt to the Rupps based on the Settlement Agreement. Westchester participated in that settlement and took responsibility for some of that debt, but the parties primarily liable for that debt"American and Continental, the primary and umbrella insurers"did not contribute anything. | Under Utah law, the right to subrogation does not depend on contractual relationships, as its purpose is to work out an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who, in equity and in good conscience, ought to pay it. | Does the right to subrogation depend on contractual relationships? | Subrogation - Memo 307 - RM C.docx | ROSS-003324441-ROSS-003324443 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6410 | Dees v. Logan, 281 Ga. App. 837 | 307A+3 | "A trial court's ruling on a motion in limine is reviewed for abuse of discretion. [Cits.]" Forsyth County v. Martin, 279 Ga. 215, 221(3), 610 S.E.2d 512 (2005). Because the grant of a motion in limine forecloses the admission of the evidence at trial, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." (Citation omitted.) Id. | Because the grant of a motion in limine forecloses the admission of the evidence at trial, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care. | "Because the grant of a motion in limine forecloses the admission of the evidence at trial, must the grant of a motion in limine be exercised with great care? " | Pretrial Procedure - Memo # 855 - C - TJ.docx | ROSS-003324786-ROSS-003324787 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 6411 | Am. Safety Equip. Corp. v. J. P. Maguire & Co., 391 F.2d 821 | 25T+121 | We now come to the merits of the district court orders, which stayed the declaratory judgment actions and required ASE to proceed to arbitration on all disputes with Hickok and Maguire, including the validity of the License Agreement. The basic issue was aptly phrased by this court fifteen years ago in Wilko v. Swan, 201 F.2d 439, 444 (2d Cir. 1953): We think that the remedy a statute provides for violation of the statutory right it creates may be sought not only in any "court of competent jurisdiction" but also in any other competent tribunal, such as arbitration, unless the right itself is of a character inappropriate for enforcement by arbitration * * *. | The remedy a statute provides for violation of the statutory right it creates may be sought, not only in any court of competent jurisdiction, but also in any other competent tribunal, such as arbitration, unless right itself is of a character inappropriate for enforcement by arbitration. 9 U.S.C.A. SS 2-4, 6. | Can the remedy for a violation of a statutory right be sought in arbitration? | Alternative Dispute Resolution - Memo 341 - RK.docx | ROSS-003325971-ROSS-003325972 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6412 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37 | 30+3209 | A motion in limine is a procedural device that permits a party to identify, pre- trial, certain evidentiary issues the court may be asked to rule upon. Vulcan Materials, 2004 WL 2997852 at *2 . "The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first seeking leave of court." Id.; Weidner v. Sanchez, 14 353, 363 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Judges have the inherent power to regulate behavior in their courtrooms. Dow Chemical, 46 S.W.3d at 240. The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex.2004); Vulcan Materials, 2004 WL 2997852 at *2.. | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | Will an appellate court reverse a trial court's decision on sanction for the violation of an order in limine? | Pretrial Procedure - Memo # 872 - C - TJ.docx | ROSS-003327139-ROSS-003327140 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 6413 | N. Am. Ins. Co. v. Kemper Nat. Ins. Co., 325 Ill. App. 3d 477 | 366+2 | North American next argues that it is entitled to be repaid for the money it spent based upon the doctrine of equitable subrogation. " Subrogation has been defined as the substitution of another person in the place of a claimant whose rights he succeeds in relation to the debt or claim asserted which has been paid by him involuntarily." Bost v. Paulson's Enterprises, Inc., 36 Ill.App.3d 135, 139, 343 N.E.2d 168, 172 (1976). The right of subrogation may be grounded in equity and may also be founded upon an express or implied agreement. State Farm General Insurance Co. v. Stewart, 288 Ill.App.3d 678, 686, 224 Ill.Dec. 310, 681 N.E.2d 625, 630 (1997). The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. Bost, 36 Ill.App.3d at 139, 343 N.E.2d 168. When an innocent party voluntarily makes a payment for which another is liable, the right of subrogation exists as a matter of law and independent of contract. See generally Bost, 36 Ill.App.3d 135, 343 N.E.2d 168. Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 319, 173 Ill.Dec. 648, 597 N.E.2d 622, 624 (1992). The prerequisites to subrogation are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party. State Farm, 288 Ill.App.3d at 686"87, 224 Ill.Dec. 310, 681 N.E.2d 625. | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | "Is subrogation the substitution of another person in the place of a claimant whose rights he succeeds to in relation to the debt or claim asserted, which he has paid involuntarily? " | Subrogation - Memo 321 - RM C.docx | ROSS-003327675-ROSS-003327677 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6414 | Whitney v. Turmel, 180 Conn. 147 | 20+13 | Where title is claimed by adverse possession, the burden of proof is on the claimant. Loewenberg v. Wallace, 147 Conn. 689, 699, 166 A.2d 150 (1960). The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. Stevens v. Smoker, 84 Conn. 569, 574, 80 A. 788 (1911). The use is not exclusive if the adverse user merely shares dominion over the property with other users. Short Beach Cottage Owners Improvement Ass'n v. Stratford, 154 Conn. 194, 199, 224 A.2d 532 (1966). Such a possession is not to be made out by inference, but by clear and positive proof. Robinson v. Myers, 156 Conn. 510, 517, 244 A.2d 385 (1968). In the final analysis, whether possession is adverse is a question of fact for the trier. Padula v. Padula, 138 Conn. 102, 110, 82 A.2d 362 (1951). | Essential elements of adverse possession are that the owner shall be ousted from possession and kept uninterruptedly for 15 years under claim of right by an open, visible or exclusive possession of the claimant without license or consent of the owner. | Is exclusive possession an essential element of adverse possession? | 04783.docx | LEGALEASE-00077096-LEGALEASE-00077097 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6415 | Stone v. Baum, 409 F. Supp. 2d 1164 | 2+4 | "It is settled law that the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good grounds for abatement of the later suit." O'Reilly v. Curtis Pub. Co., 31 F.Supp. 364, 364"65 (1940) (citing Watson v. Jones, 13 Wall. 679, 80 U.S. 679, 681, 20 L.Ed. 666 (1871)). Any concerns regarding the right of access to a federal forum are moot when, like here, two federal district courts are involved. Then, there is little trouble in finding a discretionary power to abate the second action. Weiner v. Shearson, Hammill & Co., 521 F.2d 817, 820 (9th Cir.1975). | Pendency of prior action, in court of competent jurisdiction, between same parties, predicated upon same cause of action and growing out of same transaction, and in which identical relief is sought, constitutes good grounds for abatement of later suit. | When is abatement of a subsequent cause of action appropriate? | Abatement and Revival - Memo 3 - VP.docx | LEGALEASE-00000372-LEGALEASE-00000373 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 6416 | N. Buncombe Ass'n of Concerned Citizens v. Rhodes, 100 N.C. App. 24 | 15A+1331 | Regulations promulgated under the authority of " 74-63 of the Mining Act empower the Director, Division of Land Resources, Department of Environment, Health, and Natural Resources to issue, deny, modify, renew, suspend, and revoke permits. N.C.Admin. Code tit. 15A, r.5A.0202(a) [3/20/90]. The plaintiffs in the case below challenged the decision of Stephen Conrad, Director of DLR, to issue a permit to Vulcan without requiring the company to submit an EIS. When a dispute between a state agency and another person arises and cannot be settled informally, the procedures for resolving the dispute are governed by the Administrative Procedure Act (APA), N.C.Gen.Stat. "" 150B-1 to -63. See Vass v. Bd. of Trustees of State Employees' Medical Plan, 324 N.C. 402, 405, 379 S.E.2d 26, 27-28 (1989). Thus, the proper course for the plaintiffs was to exhaust their remedies under the APA before seeking judicial review. | If dispute between state agency and another person arises and cannot be settled informally, procedures for resolving disputes are governed by Administrative Procedure Act. G.S. SS 150B-1 to 150B-63, 150B-1(b-d), 150B-2(1). | Does the Administrative Procedure Act provide the procedure for resolution of a dispute that arises between a state agency and a person which cannot be informally resolved? | 000025.docx | LEGALEASE-00115744-LEGALEASE-00115745 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6417 | AT&T Mobility LLC v. Concepcion, 563 U.S. 333 | 25T+114 | Section 2 reflects a "liberal federal policy favoring arbitration," Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765, and the "fundamental principle that arbitration is a matter of contract," Rent"A"Center, West, Inc. v. Jackson, 561 U.S. """, """, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Thus, courts must place arbitration agreements on an equal footing with other contracts, Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038, and enforce them according to their terms, Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488. Section 2's saving clause permits agreements to be invalidated by "generally applicable contract defenses," but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902. Pp. 1745 " 1746 | In light of the liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract, which are reflected in the provision of the Federal Arbitration Act (FAA) stating that arbitration agreements in maritime transactions or contracts evidencing transactions involving commerce are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. 9 U.S.C.A. S 2. | What is the fundamental principal of Federal Arbitration Act (FAA)? | 003715.docx | LEGALEASE-00116035-LEGALEASE-00116036 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 6418 | Day v. Corn%22er Bank (Overseas) Ltd., 789 F. Supp. 2d 150 | 170B+2701 | Rather than to allege facts establishing any connection between the defendants and the District of Columbia, plaintiff places heavy emphasis on the federal venue statute, which in relevant part declares that "[a]n alien may be sued in any district." 28 U.S.C. " 1391(d). Plaintiff's reliance is misplaced. Section 1391 is a venue statute and "has nothing whatever to do with acquiring personal jurisdiction by service of process." James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451, 464 (5th Cir.1971). Indeed, as legal concepts, questions of personal jurisdiction and venue are distinct. The former concerns itself with the power of a court to adjudicate the rights and liabilities of a party, while the latter focuses on the most convenient location for litigation. Consequently, "the question of venue has no bearing on the question of personal jurisdiction." Companhia Brasileira Carbureto de Calcio"CBCC v. Applied Indus. Materials Corp., 698 F.Supp.2d 109, 120 (D.D.C.2010). Consistent with this understanding, courts evaluating " 1391(d)"which deals with the proper venue for suits against foreign entities"uniformly find that this provision "is a venue statute and not a statute creating personal jurisdiction in federal courts." Weinstein v. Norman M. Morris Corp., 432 F.Supp. 337, 339 (E.D.Mich.1997); see Tatum v. Woods, No. 04 Civ. 0748, 2007 WL 2426595, at *3, 2007 U.S. Dist. LEXIS 61790, at *8"*9 (M.D.Tenn. Aug. 22, 2007) ("[S]ection 1391(d) is a venue provision and has no bearing on the question of personal jurisdiction.") (citing Watkins v. Kajima Int'l Inc., No. 06 Civ. 197, 2007 WL 865823, at *4 n. 5, 2007 U.S. Dist. LEXIS 19402, at *16 n. 5 (M.D.Tenn. Mar. 16, 2007)); eMag Solutions, LLC v. Toda Kogyo Corp., No. 02 Civ. 1611, 2006 WL 3783548, at *1, 2006 U.S. Dist. LEXIS 94462, at *7 (N.D.Cal. Dec. 21, 2006) ("[Section] 1391(d) is a venue statute, not a statute authorizing personal jurisdiction."); Nova Biomed. Corp. v. Moller, No. 79 Civ. 1426, 1979 WL 25095, at *1 n. 1, | As legal concepts, questions of "personal jurisdiction" and "venue" are distinct; the former concerns itself with the power of a court to adjudicate the rights and liabilities of a party, while the latter focuses on the most convenient location for litigation. | Are personal jurisdiction and venue different concepts? | Venue - Memo 5 - RK.docx | ROSS-003323742-ROSS-003323744 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6419 | Davis Sewing-Mach. Co. v. Richards, 115 U.S. 524 | 195+6 | The decision of this case depends upon the application of the rules of law stated in the opinion in the recent case of Davis v. Wells, 104 U. S. 159, in which the earlier decisions of this court upon the subject are reviewed. Those rules may be summed up as follows: A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract. | When a guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them, except future advances to be made to the principal debtor, the guaranty is, in legal effect, an offer or proposal on the part of the guarantor, and, without an acceptance by the creditor, no liability is incurred thereby. | How can a contract of guaranty be distinguished from an offer to guarantee? | Guaranty - Memo 25 - JS.docx | LEGALEASE-00001359-LEGALEASE-00001360 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6420 | Pierce v. Parker Towing Company, 25 F. Supp. 3d 1372 | 16+2 | The "savingtosuitors"clauseis "a feature of the congressional grant of original admiraltyjurisdictionto the federal district courts in 28 U.S.C. " 1333[,]" "preserves a plaintiff's right to a common law remedy, not[, necessarily,] to a nonfederal forum." Perio v. Titan Maritime, LLC, Civil Action No. H"13"1754, 2013 WL 5563711, at *12 (S.D.Tex. Oct. 8, 2013) (citing The Moses Taylor, 71 U.S. (4 Wall.) 411, 431, 18 L.Ed. 397 (1867); Tennessee Gas Pipeline v. Houston Cas. Ins. Co., 87 F.3d 150, 153 (5th Cir.1996) (quoting Poirrier v. Nicklos Drilling Co., 648 F.2d 1063, 1066 (5th Cir. Unit A 1981))).The saving clause""[c]ontained as it is, in a jurisdictionalstatute"""is jurisdictional in nature" and preserves the historical "concurrentjurisdiction of the state and federal courts regarding maritimeclaims where the common law [is] competent to provide a remedy," such as with plaintiffs' claims, but the clause"afford[s] exclusive jurisdiction to federalcourtswhere the common law [is] not so competent." Perio, 2013 WL 5563711, at *12"13. See also Madruga v. Superior Court, 346 U.S. 556, 560, 74 S.Ct. 298, 98 L.Ed. 290 (1954) ("Admiralty'sjurisdictionis "exclusive" only as to thosemaritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." (citations omitted)) | The maritime jurisdictional statute's "saving to suitors" clause is a feature of the congressional grant of original admiralty jurisdiction to the federal district courts, and preserves a plaintiff's right to a common law remedy, not necessarily to a nonfederal forum. 28 U.S.C.A. S 1333. | How is the saving to suitors clause defined? | 04991.docx | LEGALEASE-00078105-LEGALEASE-00078106 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6421 | Beneficial Fin. Co. of Newark v. Daloisio, 90 N.J. Super. 80 | 92+3689 | The Judgment under appeal is affirmed. We find no merit in defendants' contention that enforcement of a wage assignment under N.J.S.A. 17:10-18, part of the Small Loan Law, violates the provisions of N.J.Const., Art. I, par. 1, and Art. IV, s VII, pars. 7, 8 and 9, and the Fourteenth Amendment of the United States Constitution. Nor is their argument that the county district court was without jurisdiction sound. This is not a case of a wage assignment relating to a future contract of employment, in which case the claim for relief would be purely equitable. 6 Am.Jur.2d, Assignments, sec. 46, p. 229 et seq. (1963). The assignor was an employee of defendants at the time he executed the wage assignment and when it was served; and the fact that there subsequently was a brief break in his continuity of service did not defeat the effectiveness of the assignment. | Enforcement of wage assignment under Small Loan Law provision is not violative of natural and unalienable rights provision of state Constitution or of Fourteenth Amendment of federal Constitution. N.J.S.A. 17:10-18; Const.1947, Art. I, par. 1; Art. IV, S VII, pars. 7-9; U.S.C.A.Const. Amend. 14. | Is the Small Loan Law pertaining to an assignment of wages violative of provisions of the Constitution? | 05006.docx | LEGALEASE-00078117-LEGALEASE-00078118 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 6422 | Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14 | 170B+2285 | First, the UDRP clearly contemplates judicial intervention and, in fact, that the judicial outcome will override the UDRP one. See UDRP 4(k) (stating that UDRP proceedings shall not prevent either party from "submitting the dispute to a court of competent jurisdiction for independent resolution"); World Intellectual Property organization, The Management of Internet Names and Addresses: Intellectual Property Issues: Final Report of the WIPO Internet Domain Name Process 150(v), at http:// wipo2.wipo.int/process1/report/finalreport.html (Apr. 30, 1999) [hereinafter First WIPO Report ] (stating that UDRP administrative dispute resolution procedures "should not have (and cannot have) the effect of binding precedent in national courts"); id. at 196(v) (stating that "[a] decision by a court of competent jurisdiction, that is contrary to a determination resulting from the administrative procedure should .override the administrative determination").This is how the UDRP has been interpreted.BroadBridge Media, L.L.C. v. Hypercd.com, 106 F.Supp.2d 505, 508"09 (S.D.N.Y.2000) (concluding that a plaintiff that has filed an ICANN administrative proceeding may, before, during, and after filing such a proceeding, bring an action in federal court); Weber"Stephen Prods. Co. v. Armitage Hardware & Bldg. Supply, Inc., No. 00 C 1738, 2000 WL 562470, at 1"2 (N.D.Ill. May 3, 2000) (concluding that "the ICANN Policy and its accompanying rules do contemplate the possibility of parallel proceedings in federal court" and that federal courts are "not bound by the outcome of the ICANN administrative proceedings"); Parisi, 139 F.Supp.2d at 746, 751"52 (concluding that UDRP proceedings should not receive the significant deference accorded to arbitration under the Federal Arbitration Act). | Domain name registrant's action against Brazilian corporation that instituted World Intellectual Property Organization (WIPO) dispute resolution proceeding resulting in registrant's loss of right to use name, seeking declaration that registrant's use of name was not unlawful under Anticybersquatting Consumer Protection Act (ACPA), arose under federal law, thus supporting federal question jurisdiction, because registrant clearly relied on provision of ACPA permitting the filing of civil actions, and action was not wholly insubstantial and frivolous. Lanham Trade-Mark Act, S 32(2)(D)(ii)(II), (2)(D)(v), 15 U.S.C.A. S 1114(2)(D)(ii)(II), (2)(D)(v); 28 U.S.C.A. S 1331. | Do mandatory administrative proceedings conducted under Uniform Domain Name Dispute Resolution Policy (UDRP) constitute arbitration within the meaning of the Federal Arbitration Act? | 004218.docx | LEGALEASE-00116220-LEGALEASE-00116222 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 6423 | Guy v. United Healthcare Corp., 154 F.R.D. 172 | 311H+102 | The party invoking the protection of the attorney-client privilege must establish the following:(1) Where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived.Fausek v. White, 965 F.2d 126, 129 (6th Cir.1992) (quoting Humphreys, Hutcheson & Moseley v. Donovan, 755 F.2d 1211, 1219 (6th Cir.1985)); United States v. Goldfarb, 328 F.2d 280 (6th Cir.), cert. denied 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). | When legal advice of any kind is sought, from professional legal advisor in his capacity as such, communications relating to that purpose, made in confidence, by the client, are at his instance permanently protected, by attorney-client privilege, from disclosure by himself or by his legal advisor, except if protection be waived. | What should a party invoking the protection of the attorney-client privilege establish? | 005319.docx | LEGALEASE-00116113-LEGALEASE-00116114 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6424 | Osborne v. City of Camden, 301 Ark. 420 | 414+1125 | Municipal zoning authority is conferred solely by State enabling legislation. Taggart v. City of Augusta, 278 Ark. 570, 647 S.W.2d 458 (1983). Failure to comply with a mandatory procedural requirement of the enabling statute renders a zoning ordinance invalid. City of Searcy v. Roberson, 224 Ark. 344, 273 S.W.2d 26 (1954). A zoning ordinance "shall consist of both a map and a text." Ark.Code Ann. " 14"56"416(a)(2) (1987). Compliance with this provision of the statute is mandatory, and failure to comply with it will render a zoning ordinance void. City of Benton v. Phillips, 191 Ark. 961, 88 S.W.2d 828 (1936); City of Searcy v. Roberson, supra. The purpose of this provision is to give notice of the city's zoning proposal so that, before adoption, residents may object or make suggestions, and after adoption, land purchasers may acquaint themselves with the zoning restriction. City of Benton v. Phillips, supra. | Municipal zoning authority is conferred solely by state enabling legislation, and failure to comply with mandatory procedural requirement of enabling statute renders zoning ordinance invalid. | Will a failure to comply with the enabling statute requirement render a zoning action void? | 004267.docx | LEGALEASE-00116345-LEGALEASE-00116346 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6425 | Town of Midland v. Wayne, 368 N.C. 55 | 148+1 | "[T]he power of eminent domain [] is one of the prerogatives of a sovereign state... Its exercise, however, is limited by the constitutional requirements of due process and payment of just compensation for property condemned." Dep't of Transp. v. M.M. Fowler, Inc., 361 N.C. 1, 4, 637 S.E.2d 885, 889 (2006) (citations and quotation marks omitted). See N.C. Const. art. I, " 19 ("No person shall be ... deprived of his ... property, but by the law of the land."); see also U.S. Const. amend. XIV, " 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."). Due process requires that the property right taken and the owner of the right be identified in the condemnation complaint. See Barnes v. N.C. State Highway Comm'n, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959) (noting the government's duty to make just compensation to the owner of the property appropriated). Just compensation means "that persons being required to provide land for public projects are put in the same financial position as prior to the taking." Dep't of Transp. v. Rowe, 353 N.C. 671, 679, 549 S.E.2d 203, 210 (2001) (citations omitted), cert. denied, 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002). | The power of eminent domain is one of the prerogatives of a sovereign state, however, its exercise is limited by the constitutional requirements of due process and payment of just compensation for property condemned; just compensation means that persons being required to provide land for public projects are put in the same financial position as prior to the taking. U.S.C.A. Const.Amend. 14; West's N.C.G.S.A. Const. Art. 1, S 19. | Is the power of eminent domain limited by constitutional requirements? | Eminent Domain - Memo 6 - AKA.doc | LEGALEASE-00002122-LEGALEASE-00002123 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6426 | Ratajack v. Brewster Fire Department of the Brewster-Southeast Joint Fire District, 178 F.Supp.3d 118 | 237+1 | Because Plaintiff's defamation allegations turn upon the content of these letters, his is a claim of libel. See Albert v. Loksen, 239 F.3d 256, 265 (2d Cir.2001) (explaining that "[g]enerally, spoken defamatory words are slander; written defamatory words are libel"); Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir.2000) ("Libel is a method of defamation expressed in writing or print."). To recover for libel under New York law, a plaintiff must "prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) [the] defendant's fault ...; (4) the falsity of the defamatory statement; and (5) injury to [the] plaintiff." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir.2001); see also Giuffre v. Maxwell, 165 F.Supp.3d 147, 150"51, 2016 WL 831949, at *2 (S.D.N.Y. Feb. 29, 2016) (same).Additionally, an otherwise actionable statement may not be actionable if subject to a qualified privilege. See, e.g., Colantonio v. Mercy Med. Ctr., 135 A.D.3d 686, 24 N.Y.S.3d 653, 658"59 (2016) ("Generally, communications "protected by a qualified privilege are not actionable unless a plaintiff can demonstrate that the declarant made the statement with malice." " (quoting Rosenberg v. MetLife, Inc., 8 N.Y.3d 359, 834 N.Y.S.2d 494, 866 N.E.2d 439, 442 (2007))). Before exploring why Defendants are entitled to summary judgment on each of the letters, the Court must first survey the legal principles underlying several of these requirements | To recover for libel under New York law, a plaintiff must prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) the defendant's fault; (4) the falsity of the defamatory statement; and (5) injury to the plaintiff. | How can a person recover damages for Libel? | 004416.docx | LEGALEASE-00116621-LEGALEASE-00116623 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6427 | Mathieu v. Imperial Toy Corp., 646 So. 2d 318 | 272+202 | The standard negligence analysis we employ in determining whether to impose liability under La.C.C. art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry:I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?II. Did the defendant(s) owe a duty to the plaintiff?III. Was the duty breached?IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?See Mart v. Hill, 505 So.2d 1120, 1122 (La.1987); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) | Duty/risk analysis consists of four inquiries all of which must be affirmatively answered for plaintiff to recover and these inquiries are: (1) was conduct in question substantial factor in bringing about harm to the plaintiff, i.e., was it cause-in-fact of the harm which occurred; (2) did defendant owe duty to plaintiff; (3) was duty breached; and (4) was the risk, and harm caused, within scope of protection afforded by the duty breached. | How is liability determined in a negligence action? | 004440.docx | LEGALEASE-00116661-LEGALEASE-00116662 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 6428 | Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson Cty., 98 S.W.3d 159 | 50+1 | Although bailments are generally founded on a contractual relation, the agreement of the parties may be quasi and constructive and an actual contract or one implied in fact is not always necessary to create a bailment. There is also a class of bailments which arise by operation of law. Such a constructive or involuntary bailment arises where the person having possession of a chattel holds it under such circumstances that the law imposes on him the obligation of delivering it to another, where a person has lawfully acquired possession of personal property of another otherwise than by a mutual contract of bailment, or where a person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he should, on principals of justice, keep it safely and restore it or deliver it to the owner. In the case of a constructive bailment it is not necessary that there be either an actual or a constructive delivery. Merritt v. Nationwide Warehouse Company, supra. The lawful possession of the chattel and the duty to account for it as the property of another is sufficient. Constructive bailment is held distinct from constructive delivery. 8 C.J.S., Bailments " 15, p. 362. | Although bailments are generally founded on a contractual relation, the agreement of the parties may be quasi and constructive and an actual contract or one implied in fact is not always necessary to create a bailment. | Is a contract always necessary to create a bailment? | 004499.docx | LEGALEASE-00116442-LEGALEASE-00116443 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 6429 | United States v. 2004 Ferrari 360 Modeno, 902 F. Supp. 2d 944 | 50+5 | Under section 983(d), a bailee with a colorable legitimate interest in the property seized may qualify for standing as an innocent owner. " 983(d)(2). In short, a bailment is an express or implied contract wherein the bailor delivers property to the bailee for some purpose and the bailee actual accepts the property. Thus, both delivery and acceptance of the property are essential to the creation of a contractual bailment relationship between parties. However, in an implied bailment, it is not necessary that delivery and acceptance be formal; in general, knowingly taking property into possession or control is a sufficient acceptance and may suffice to establish an implied bailment. See 8a Am Jur. 2d Bailments " 15 (2003). | A "bailment" is an express or implied contract wherein the bailor delivers property to the bailee for some purpose and the bailee actually accepts the property; both delivery and acceptance of the property are essential to the creation of a contractual bailment relationship between parties. 18 U.S.C.A. S 983(d)(2). | Can a contract of bailment be an express or implied agreement between a bailor and a bailee? | 004504.docx | LEGALEASE-00116427-LEGALEASE-00116428 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 6430 | In re Mechanics Tr. Co., 119 N.J. Eq. 141 | 172H+204 | The banking business is charged with the public interest, and it is subject to regulation under the police power of the state; consequently, the rights of all persons having a direct contact with that business may be altered and changed in a reasonable manner. Munn v. Illinois, 94 U. S. 113, 132, 24 L. Ed. 77; Manigault v. Springs, supra; Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165; Edgar A. Levy Leasing Co. v. Siegel, 258 U. S. 242, 42 S. Ct. 289, 66 L. Ed. 595. | Banking business is charged with public interest, rendering it subject to regulation under state police power, and rights of all persons having direct contact with banking business may be altered or changed in reasonable manner. | Is the business of banking within the police power of the state? | 004524.docx | LEGALEASE-00116490-LEGALEASE-00116491 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 6431 | In re Adoption of N.J.A.C. 7:15-5.24(b), 420 N.J. Super. 552 | 1.49E+15 | Lastly, the DEP's general enabling statute, N.J.S.A. 13:1D"1 to "137, grants the agency vast authority to set policy and promulgate regulations "for the conservation of the natural resources of the State, the promotion of environmental protection and the prevention of pollution of the environment of the State." N.J.S.A. 13:1D"9.3 | Enabling statute for Department of Environmental Protection (DEP) grants the DEP vast authority to set policy and promulgate regulations for the conservation of the natural resources of the State, the promotion of environmental protection, and the prevention of pollution of the environment of the State. N.J.S.A. 13:1D-1 et seq. | What responsibilities are the Department of Environmental Protection charged with? | 004539.docx | LEGALEASE-00116509-LEGALEASE-00116510 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6432 | Zimmerman v. N. Dakota Dep't of Transp. Dir., 543 N.W.2d 479 | 48A+144.2(2.1) | An appeal from an administrative hearing officer's decision involving a license suspension under N.D.C.C. " 39"20"04.1, is governed by the Administrative Agencies Practice Act, N.D.C.C. Ch. 28"32. Erickson v. Director, N.D. Dep't of Transp., 507 N.W.2d 537, 539 (N.D.1993). In reviewing an administrative agency order, under N.D.C.C. " 28"32"21, we review the findings and decisions of the agency and not those of the district court. Johnson v. N.D. Dep't of Transp., 530 N.W.2d 359, 360 (N.D.1995). On appeal, the decision of the agency must be affirmed: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the decision is supported by the conclusions of law; and (4) if the decision is in accordance with the law. Wolf v. N.D. Dep't of Transp., 523 N.W.2d 545, 546 (N.D.1994). We do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether a reasoning mind could reasonably have determined the facts or conclusions were supported by the weight of the evidence. Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D.1979); Maher v. N.D. Dep't of Transp., 510 N.W.2d 601, 603 (N.D.1994). Resolving disputes over the underlying facts and circumstances supporting an officer's reasonable and articulable suspicion is the exclusive province of the hearing officer, as is determining the credibility of witnesses and the weight to be given their testimony. Johnson at 361. | Appeal from administrative hearing officer's decision involving driver's license suspension is governed by Administrative Agencies Practice Act. NDCC 28-32-01 et seq. | Does Administrative Agencies Practice Act govern an appeal from administrative hearing officer's decision involving a license suspension? | 004592.docx | LEGALEASE-00117019-LEGALEASE-00117020 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 6433 | Bank of New York v. Sumter Cty., 387 S.C. 147 | 50+1 | "A constructive bailment arises when one person has lawfully acquired possession of another person's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner." Hadfield v. Gilchrist, 343 S.C. 88, 538 S.E.2d 268 (Ct.App.2000) (internal citations omitted). Here, SCJD never acquired possession of Lenders' funds, nor does it hold those funds, which have been embezzled by Holloman. | A "constructive bailment" arises when one person has lawfully acquired possession of another person's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner. | When does a constructive bailment arise? | 004616.docx | LEGALEASE-00116799-LEGALEASE-00116800 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 6434 | Floss v. Ryan's Family Steak Houses, 211 F.3d 306 | 25T+112 | The Federal Arbitration Act declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. However, "the FAA was not enacted to force parties to arbitrate in the absence of an agreement." Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1286 (10th Cir.1997). Indeed, "[t]he sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1061 (5th Cir.1990). | The sine qua non of the applicability of the Federal Arbitration Act (FAA) to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce. 9 U.S.C.A. S 1 et seq. | What is the sine qua non of the Federal Arbitration Acts (FAA) applicability to a particular dispute? | Alternative Dispute Resolution - Memo 118 - JS.docx | ROSS-003285268-ROSS-003285269 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 6435 | Gay v. CreditInform, 511 F.3d 369 | 25T+112 | The cardinal principle of the law of arbitration is that "under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). That freedom extends to choice-of-law provisions governing agreements, including agreements to arbitrate. See Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir.2005) (applying New York law pursuant to choice-of-law provision in determining whether to enforce arbitration agreement); Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 155 (3d Cir.2001)( "In general, we respect the choice of law that parties agree upon to resolve their private disputes."); see also Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc., 468 F.3d 523, 526 (8th Cir.2006) (applying Virginia law pursuant to choice-of-law provision after determining that both Virginia and the forum state of Missouri enforce choice-of-laws provisions); Overstreet v. Contigroup Cos., 462 F.3d 409, 411 (5th Cir.2006) (applying Georgia law pursuant to choice-of-law provision in determining whether to enforce arbitration agreement); Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 872 (8th Cir.2004) (applying Texas law pursuant to choice-of-law provision to determine whether to enforce arbitration agreement). | Cardinal principle of law of arbitration is that, under the Federal Arbitration Act (FAA), arbitration is matter of consent, not coercion, and that parties are generally free to structure their arbitration agreements as they see fit, a freedom that extends to choice-of-law provisions governing parties' agreement to arbitrate. 9 U.S.C.A. S 1 et seq. | What is the cardinal principle of the law of arbitration? | 005260.docx | LEGALEASE-00116839-LEGALEASE-00116840 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 6436 | Spear, Leeds & Kellogg v. Cent. Life Assur. Co., 85 F.3d 21 | 25T+139 | Second, because we are interpreting a contract, our construction must ascertain and implement the reasonable expectations of the parties who undertake to be bound by its provisions. See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 29 (2d Cir.1995). Despite the presumption of arbitrability, the strong federal policy favoring arbitration may not extend the reach of arbitration beyond the intended scope of the clause providing for it. See Fuller v. Guthrie, 565 F.2d 259, 261 (2d Cir.1977). | Despite presumption of arbitrability, strong federal policy favoring arbitration may not extend reach of arbitration beyond intended scope of clause providing for it. | Can federal policy extend the reach of arbitration beyond the intended scope of the arbitration clause? | 004919.docx | LEGALEASE-00117167-LEGALEASE-00117168 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6437 | Clean Air Coordinating Comm. v. Envtl. Prot. Agency, 42 Ill. App. 3d 124 | 1.49E+19 | It must be noted that the Board is required by statute to file and publish a written opinion stating the facts and reasons leading to its decision. (Ill.Rev.Stat. 1973, ch. 111 1/2, par. 1033; Mystik Tape v. Pollution Control Bd. (1973), 16 Ill.App.3d 778, 306 N.E.2d 574.) The statutory mandate "* * * provides this court with data necessary to a complete and fair review of the administrative decision by the Board. Without such information, in matters of this type, a thorough and judicious review of the decision cannot be made. (Citation.)" (Allied Metal Co. v. Pollution Control Bd. (1974), 22 Ill.App.3d 823, 833, 318 N.E.2d 257, 264.) The February 14 decision expanded upon the testimony, facts and reasons to support the earlier decision and must be held a material and substantive revision of the Board's earlier decision. | Pollution Control Board is required by statute to file and publish written opinion stating facts and reasons leading to its decision. S.H.A. ch. 1111/212, S 1033. | "Under Section 33 of the Environmental Protection Act, is the Pollution Control Board required to file and publish a written opinion stating the facts and reasons for its decision?" | 005033.docx | LEGALEASE-00117217-LEGALEASE-00117218 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6438 | Morgan v. Texas Alcoholic Beverage Comm'n, 519 S.W.2d 250 | 23H+621 | The County Judge of Lamar County, in refusing to grant the application for a wine and beer retailers license and a cartage permit acted in an administrative rather than a judicial capacity. Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198, 201 (1949). Under the substantial evidence rule the appellees' ruling is presumed to be valid; the burden is on the appealing party to show it is not reasonably supported by substantial evidence; preponderance of evidence is not the test (since there is no trial of fact issues); and the court cannot substitute its discretion for that of the agency. Texas Employment Commission v. Keller, 456 S.W.2d 225 (Tex.Civ.App. Waco 1970, no writ); Texas Employment Commission v. Riddick, 485 S.W.2d 849, 851 (Tex.Civ.App. Texarkana 1972, no writ). | In refusing to grant application for wine and beer retailers license and cartage permit, county judge acts in administrative rather than judicial capacity. | Does a county judge in passing on an application for license to sell beer acts in administrative capacity? | Administrative Law - Memo 158 - RK.docx | ROSS-003297395-ROSS-003297396 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6439 | Johnston v. Bd. of Sup'rs of Marin Cty., 31 Cal. 2d 66 | 104+21.5 | The Board of Supervisors, moreover, had no inherent power to grant the use permit, regardless of the terms of the ordinance. It has long been recognized in this state that a county board of supervisors performs administrative as well as legislative functions. (Chinn v. Superior Court, 156 Cal. 478, 481, 105 P. 580.) If the Board of Supervisors had power to grant a use permit, it was an administrative power for the same reason that the granting of permits is administrative when done by a local board. When a board of supervisors acts in an administrative capacity, as in granting permits under a zoning ordinance, it is bound by the terms of the ordinance until the ordinance is amended through proper legislative procedure. (See, Magruder v. City of Redwood, 203 Cal. 665, 675, 265 P. 806; Hopkins v. MacCulloch, 35 Cal.App.2d 442, 452, 95 P.2d 950.) The action of the Marin County Board of Supervisors in attempting to grant a use permit contrary to the terms of the ordinance cannot be considered an amendment to the ordinance, for by its terms and by the terms of the State Planning Act under which it was adopted, any amendments to the master plan must be submitted to the local planning commission. (Ordinance 264, sec. 21; State Planning Act, sec. 9.) | County board of supervisors acts in administrative capacity in granting permits under zoning ordinance, and is bound by terms of ordinance, until ordinance is amended through proper legislative procedure. Gen.Laws, Act 5211b (repealed 1947. See Act 5211c). | Does a board of supervisors when granting a permit under a zoning ordinance act in an administrative capacity? | Administrative Law - Memo 159 - RK.docx | ROSS-003311678-ROSS-003311680 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6440 | Murphy v. Colson, 2013 IL App (2d) 130291 | 253+1102 | We first examine how the Acts' exclusion of certain noneconomic compensatory damages came to be. The causes of action at issue here, alienation of affections and criminal conversation, arose in common law and, along with breach of contract to marry, have been treated "indistinguishabl[y]" (Siegall, 19 Ill.2d at 149, 166 N.E.2d 5), at least on questions of statutory exclusions of certain types of damages. Still, for context, we set forth the elements comprising each respective common-law cause of action. To sustain a cause of action for alienation of affection, the plaintiff must allege and prove: (a) love and affection of the spouse for the plaintiff; (b) overt acts, conduct, or enticement on the part of the defendant causing these affections to depart; and (c) actual damages. Kniznik v. Quick, 130 Ill.App.2d 273, 276, 264 N.E.2d 707 (1970). The tort of criminal conversation "consists of a violation of a spouse's right to the exclusive privilege of sexual intercourse, and it is thus a common law tort claim[ ] for adultery." 21 Ill. L. and Prac.,Husband & Wife " 5(2007). To sustain a cause of action for criminal conversation, the plaintiff must allege and prove: (a) a valid marriage between spouses; and (b) the occurrence of sexual intercourse between the plaintiff's spouse and the defendant. Id. (citing Hardy v. Bach, 173 Ill.App. 123 (1912)). | To sustain a cause of action for alienation of affection, the plaintiff must allege and prove: (1) love and affection of the spouse for the plaintiff; (2) overt acts, conduct, or enticement on the part of the defendant causing these affections to depart; and (3) actual damages. | When can a spouse maintain an action for alienation of affection against a third party? | Marriage and Cohabitation- Memo 47 - JS.docx | LEGALEASE-00003890-LEGALEASE-00003892 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6441 | Malouf v. Dallas Athletic Country Club, 837 S.W.2d 674 | 386+2 | In points of error one and three, appellants argue that they established the elements of trespass and that, because DAC filed a general denial, there was no affirmative defense. The gist of trespass to personalty is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force. Mountain States Tel. & Tel. Co. v. Vowell Constr. Co., 341 S.W.2d 148, 150 (Tex.1960). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. Id. A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation. General Tel. Co. v. Bi"Co Pavers, Inc., 514 S.W.2d 168, 170 (Tex.Civ.App."Dallas 1974, no writ). Unless the intended act would violate a property right, the actor's liability for unintended consequences ordinarily depends upon proof of negligence. Id. (emphasis added).2 | Trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although actor may not know that act he intends to commit is such a violation. | When is intent relevant for the tort of trespass? | Trespass - Memo 31 - RK.docx | LEGALEASE-00004156-LEGALEASE-00004157 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6442 | Texas Woman's Univ. v. The Methodist Hosp., 221 S.W.3d 267 | 386+10 | A claim for trespass to real property requires a showing of an unauthorized physical entry onto the plaintiff's property by some person or thing. E"Z Mart Stores, Inc., 184 S.W.3d at 758. "The entry need not be in person but may be made by causing or permitting a thing to cross the boundary of a property." Id. To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. Wilen v. Falkenstein, 191 S.W.3d 791, 798 (Tex.App.-Fort Worth 2006, pet. filed) (citing generally Stone Res., Inc. v. Barnett, 661 S.W.2d 148, 151 (Tex.App.-Houston [1st Dist.] 1983, no writ)). | To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. | How can damages be recovered under trespass? | Trespass - Memo 51- JS.docx | ROSS-003298429-ROSS-003298430 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6443 | Osthus v. Whitesell Corp., 639 F.3d 841 | 231H+1696(1) | As the opinion of the court observes,federal courts have ruled consistently for more than sixty years that the National Labor Relations Board may delegate its authority to seek an injunction under Section 10(j) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. " 160(j), to the General Counsel of the Board. See Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 852 (5th Cir.2010); Muffley v. Spartan Mining Co., 570 F.3d 534, 540 (4th Cir.2009); Kentov v. Point Blank Body Armor, Inc., 258 F.Supp.2d 1325, 1329 (S.D.Fla.2002); Penello v. Int'l Union, United Mine Workers of Am., 88 F.Supp. 935, 937 (D.D.C.1950); Evans v. Int'l Typographical Union, 76 F.Supp. 881, 888"89 (S.D.Ind.1948). Whitesell argues that all of these cases were decided *846 incorrectly, primarily because the statute describes the authority to seek an injunction as a "power" of the Board, 29 U.S.C. " 160(j), whereas the General Counsel "shall have such other duties as the Board may prescribe or as may be provided by law." Id. " 153(d) (emphasis added). Whitesell contends that the Board may not prescribe a "duty" of the General Counsel that involves the exercise of a "power" of the Board. | National Labor Relations Board (NLRB) may delegate its authority to initiate and prosecute injunction proceedings under the Labor Management Relations Act (LMRA) to its general counsel. National Labor Relations Act, S 10(j), 29 U.S.C.A. S 160(j). | Can the National Labor Relations Board delegate the authority to authorize and initiate the filing of a petition for injunction to its General Counsel? | 000311.docx | LEGALEASE-00117671-LEGALEASE-00117672 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6444 | Adams v. New York, C. & St. L.R. Co., 121 F.2d 808 | 231H+1534 | Upon the merits, in view of the decision of the United States Supreme Court, in Earl Moore v. Illinois Central Railroad Company, 61 S.Ct. 754, 85 L.Ed " , decided March 31, 1941, the order of the District Court sustaining the defendant's motion to dismiss plaintiffs' complaint, was erroneous; the complaint should stand. In view of the Supreme Court's clarifying language as to the intended scope of the Railway Labor Act, 45 U.S.C.A. " 151 et seq., we can definitely state that the employees' action may be brought, at their election, either in a court, or settled by the administrative remedies prescribed by said Act. | An action by railroad employees to determine their seniority rights may be brought either in a court, or settled by the administrative remedies prescribed by the Railway Labor Act. Railway Labor Act S 1 et seq. as amended, 45 U.S.C.A. S 151 et seq. | "Under the Railway Labor Act, can an employees action be settled by the administrative remedies prescribed by the Act?" | 000356.docx | LEGALEASE-00117713-LEGALEASE-00117714 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 6445 | Com. v. Earle, 458 Mass. 341 | 203+504 | As a general proposition, both the murder and involuntary manslaughter standards can be satisfied by a defendant's omission where the defendant has a duty to act. Thus, as a parent has a duty to provide for the care and welfare of his or her child, see Commonwealth v. Gallison, 383 Mass. 659, 665, 421 N.E.2d 757 (1981), a failure to discharge that duty can be rendered criminal if the defendant parent had the means to perform it and, depending on the circumstances, can constitute murder or involuntary manslaughter. See Commonwealth v. Hall, 322 Mass. 523, 529, 78 N.E.2d 644 (1948). | As a parent has a duty to provide for the care and welfare of his or her child, a failure to discharge that duty can be rendered criminal if the defendant parent had the means to perform it, and depending on the circumstances, can constitute murder or involuntary manslaughter. | Do parents have a legal duty to provide medical care for a child if necessary? | 000434.docx | LEGALEASE-00117752-LEGALEASE-00117753 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 6446 | Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365 | 237+120(2) | Having decided that the lower default standard applies, the court will examine whether plaintiff's evidence satisfies it and thereby precludes summary judgment. Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts on the definition of common law malice for purposes of awarding punitive damages. Sprague, 656 A.2d at 922 (citing Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747"748 (1984)); DiSalle, 544 A.2d at 1369 (same). Common law malice "involves conduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others ... conduct which is malicious, wanton, reckless, willful, or oppressive...." "17 DiSalle, 544 A.2d at 1364 (quoting Restatement (Second) of Torts " 908(2)); see also Sprague, 656 A.2d at 923 (approving jury charge that conduct is sufficiently outrageous if it shows reckless indifference to the "interest of others"). | Under Pennsylvania law, common law "malice" required for recovery of punitive damages in a defamation action involves conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others, meaning conduct which is malicious, wanton, reckless, willful, or oppressive. Restatement (Second) of Torts S 908(2). | What is common law malice? | Libel and Slander - Memo 74 - RK.docx | LEGALEASE-00004622-LEGALEASE-00004623 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 6447 | Harasz v. Katz, 239 F. Supp. 3d 461 | 249+0.6 | For the most part, these federal and state claims are defined by the same substantive law. "Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state." Turner, 116 F.Supp.3d at 75"76 (citing Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003)). In the case at bar, all proceedings took place in Connecticut. No other state figures in the case. Accordingly Connecticut law governs both federal and state claims against Katz, with one additional requirement on the federal side. To prevail on a Section 1983 claim of malicious prosecution, the plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160"61 (2d Cir. 2010) (citations omitted). "To state a malicious prosecution claim under Section1983, a plaintiff must also plead that he suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights." Turner, 116 F.Supp.3d at 85 (citation omitted) | Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state. | What law governs a claim of malicious prosecution? | Malicious Prosecution - Memo 2 - ANG.docx | ROSS-003285621-ROSS-003285622 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6448 | China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274 | 25T+510 | Our cases involving enforcement under the Convention largely have arisen under Article II, with one party seeking an order compelling another party to arbitrate a dispute. Under those cases, it is clear that if Minmetals had initiated proceedings in the district court to compel arbitration, the court would have been obligated to consider Chi Mei's allegations that the arbitration clause was void because the underlying contract was forged. See Sandvik v. Advent Int'l Corp., 220 F.3d 99, 104-07 (3d Cir.2000). It is, of course, true that the FAA, of which the Convention is a part, establishes a strong federal policy in favor of arbitration and that the presumption in favor of arbitration carries " "special force" " when international commerce is involved. Id. at 104 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985)).Nonetheless, we have stated that the " "liberal federal policy favoring arbitration agreements ... is at bottom a policy guaranteeing the enforcement of private contractual arrangements," " id. at 105 (quoting Mitsubishi, 473 U.S. at 625, 105 S.Ct. at 3353), and that because "arbitration is a matter of contract, ... no arbitration may be compelled in the absence of an agreement to arbitrate," id. at 107-08 (citing AT & T Techs, Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). | Federal Arbitration Act (FAA), of which Convention on the Recognition and Enforcement of Foreign Arbitral Awards is a part, establishes strong federal policy in favor of arbitration, and that presumption carries special force when international commerce is involved. 9 U.S.C.A. S 207. | Does federal policy favoring the liberal enforcement of arbitration clauses apply when international commerce is involved? | 001050.docx | LEGALEASE-00118049-LEGALEASE-00118051 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 6449 | Dennis O. v. Stephanie O., 393 P.3d 401 | 92+4396 | The private interests of parents in these custody cases are weighty, but they do not rise to the level considered in the parental rights termination cases. We observe that "[t]he right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions" and that it "clearly falls within the protections of the due process clause and should be accorded significant weight." But custody hearings do not threaten termination of parental rights. We recognized in V.F. that "a proceeding for the termination of parental rights affects a parent's right to direct the upbringing of ... [a] child even more than does a private child custody proceeding." And as we noted in In re K.L.J., the risk of termination creates an interest "of the highest magnitude." Although custody is a significant private interest, it does not reach that magnitude. | While the right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions that clearly falls within the protections of the state and federal due process clauses and should be accorded significant weight in a parental rights termination case, custody hearings do not threaten termination of parental rights, and thus, while custody is a significant private interest, it does not reach the magnitude that a risk of termination does. U.S. Const. Amend. 14; Alaska Const. art. 1, S 7. | Is the right to the custody of a child a fundamental right? | 000886.docx | LEGALEASE-00118108-LEGALEASE-00118109 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 6450 | United States v. CDMG Realty Co., 875 F. Supp. 1077 | 149E+650 | The primary prosecutorial responsibility for enforcing the state's environmental laws resides in the government, and the ERA anticipates private parties' standing only when the government has failed to properly act. Superior Air Products Co. v. NL Industries, Inc., 216 N.J.Super. 46, 58, 522 A.2d 1025 (App.Div.1987). In this case, the government has already taken action to redress the situation at the Sharkey Landfill Superfund site, which encompasses the Property. The state and federal authorities continue to ensure cleanup of the site and are aggressively pursuing the parties they deem responsible for the contamination. Unless and until the government can be shown to have fallen short in its dedication to full enforcement of the respective statutes and regulations involved, HMAT cannot maintain an ERA action. Allied Corp. v. Frola, 730 F.Supp. 626, 636 (D.N.J.1990). | Primary prosecutorial responsibility for enforcing New Jersey's environmental laws resides in government, and Environmental Rights Act (ERA) anticipates private parties' standing only when government has failed to properly act. N.J.S.A. 2A:35A-4, subd. a. | When does the Environmental Rights Act (ERA) anticipate private parties standing? | 000924.docx | LEGALEASE-00118235-LEGALEASE-00118236 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6451 | Owens v. Commonwealth, 187 Ky. 207 | 203+1319 | The established rule on the subject is that, where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law; but, where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. Thus, in the case of Commonwealth v. Duncan, 91 Ky. 595, 16 S. W. 531, 13 Ky. Law Rep. 162, the defendant struck the prosecuting witness with a rock larger than a man's fist. The court said:"Whether, in this instance, the rock was large enough to produce death, and therefore a deadly weapon, should have been left to the jury and the court erred in taking the question from them." | Where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law; but, where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. | Is it for a jury to decide if a weapon is deadly if it is not a deadly weapon per se? | 001082.docx | LEGALEASE-00118096-LEGALEASE-00118097 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 6452 | Sturdivant v. Tollette, 84 Ark. 412 | 231H+908 | The General Assembly of 1905 (Acts 1905, p. 726) amended section 5030 of Kirby's Digest so as to make it read as follows:"If any person shall interfere with, entice away, knowingly employ, or induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord, he shall, upon conviction before any justice of the peace or circuit court, be fined not less than twenty-five nor more than one hundred dollars, and in addition shall be liable to such employer or landlord for all advances made by him to such renter or laborer by virtue of his contract, whether verbal or written, with said renter or laborer, and for all damages which he may have sustained by reason thereof." Caledonia Tollette owned a farm in Howard county, and employed Will Beckwith, a negro, in January, 1906, to make a crop thereon. He left her place about the middle of February and rented land from W. A. J. Sturdivant, and was also employed by Jno. Sturdivant for a few days, making some rails and posts. She had furnished Beckwith $40.52 for supplies before he left, and she sued the Sturdivants for said amount and $400 damages, basing her action on the aforesaid statute, and secured a verdict for $65. From a judgment rendered thereon, the Sturdivants have appealed. | Hiring a tenant to do two or three days' work is not within the prohibition of the Acts of 1905, p. 726, providing that one who interferes with, entices away or knowingly employs another's renter before the expiration of his contract shall be liable to the other for advances made to the renter and for all damages sustained by reason thereof. | Can a person be convicted for enticing away a renter? | 001086.docx | LEGALEASE-00118156-LEGALEASE-00118157 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6453 | Olle v. 5401 W. Ave. Residential, 569 F. Supp. 2d 141 | 25T+210 | The Federal Arbitration Act ("FAA") provides that "a written provision in ... a contract to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. The FAA creates a strong presumption in favor of enforcing arbitration agreements and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226"27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (stating that arbitration agreements must be rigorously enforced); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that federal policy favors arbitration). Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so. AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648"49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted). | Federal Arbitration Act (FAA) creates a strong presumption in favor of enforcing arbitration agreements and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. 9 U.S.C.A. S 2. | Does the Federal Arbitration Act (FAA) create a strong presumption in favor of enforcing arbitration agreements? | Alternative Dispute Resolution - Memo 205 - RK.docx | ROSS-003301120-ROSS-003301122 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6454 | Connor v. Elliott, 79 Fla. 513 | 315+22 | So far as real estate or immovable property is concerned, the laws of the state where it is situated furnish the rules which govern its descent, alienation, and transfer, the construction, validity, and effect of conveyances thereof, and the capacity of the parties to such contracts or conveyances, as well as their rights under the same. | The laws of the state where real estate or immovable property is situated furnish the rules governing its descent, alienation, transfer, and the capacity of the parties to such contracts or conveyances. | Does the law of the state where the real estate is situated govern the rights of the parties? | 000960.docx | LEGALEASE-00118577-LEGALEASE-00118578 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 6455 | People v. Ceballos, 12 Cal. 3d 470 | 203+758 | Furthermore, even if that rule were applied here, as we shall see, defendant was not justified in shooting Stephen. Penal Code section 197 provides: "Homicide is . . . justifiable . . . 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . .." (See also Pen. Code, s 198.) Since a homicide is justifiable under the circumstances specified in section 197, A fortiori an attempt to commit a violent injury upon another under those circumstances is justifiable. | Attempt to commit voluntary injury upon another is justifiable when resisting attempt to murder any person, or to commit felony, or to do some great bodily injury upon any person or when committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony. West's Ann.Pen.Code, SS 197, 197, subd. 1, 198. | When is homicide justifiable? | 001084.docx | LEGALEASE-00118671-LEGALEASE-00118672 | Condensed, Order, SA | 0.45 | 1 | 1 | 0 | 1 | 1 |
| 6456 | Brown ex rel. Stevens v. State, 144 A.D.3d 88 | 1.41E+16 | Having determined that infant plaintiffs, at least, have standing to assert a cause of action against defendant under the Education Article, we now address the merits of that part of defendant's motion dealing therewith. The Education Article states: "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated" (N.Y. Const. art XI, " 1). Those words enshrined in the State Constitution the traditional, centuries-old system of school districts in which communities make decisions on funding and operating publically-funded local schools (see New York Civ. Liberties Union v. State of New York, 4 N.Y.3d 175, 181, 791 N.Y.S.2d 507, 824 N.E.2d 947 [NYCLU]; Paynter, 100 N.Y.2d at 442, 765 N.Y.S.2d 819, 797 N.E.2d 1225). Its purpose was to constitutionalize the traditional public school system, not to alter its substance (see NYCLU, 4 N.Y.3d at 181, 791 N.Y.S.2d 507, 824 N.E.2d 947; Payntner, 100 N.Y.2d at 442, 765 N.Y.S.2d 819, 797 N.E.2d 1225). If that system""which is what is to be maintained and supported""offers students a "sound basic education," then "the constitutional mandate is satisfied" (Nyquist, 57 N.Y.2d at 48, 453 N.Y.S.2d 643, 439 N.E.2d 359). | The New York constitution enshrined the traditional public school system of school districts in which communities make decisions on funding and operating publicly-funded local schools, but it did not alter its substance. McKinney's Const. Art. 11, S 1. | Do communities make decisions on funding and operating publicly-funded local schools? | 001213.docx | LEGALEASE-00118634-LEGALEASE-00118636 | Condensed, Order, SA | 0.8 | 1 | 1 | 0 | 1 | 1 |
| 6457 | DiFolco v. MSNBC Cable L.L.C., 831 F. Supp. 2d 634 | 237+9(1) | New York, however, recognizes the "single instance rule" as a narrow exception to the category of defamation per se outlined above. Celle, 209 F.3d at 180. The rule applies " "where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation." " Id. (quoting Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 828 n. 5 (1995)). "[U]nder the "single, instance" exception to [the per se rule], a statement charging another with a single dereliction in connection with his or her trade, occupation or profession does not necessarily charge that party with general incompetence, ignorance or lack of skill and is not deemed actionable unless special damages are pleaded and shown." Bowes v. Magna Concepts, Inc., 166 A.D.2d 347, 561 N.Y.S.2d 16, 17 (1990). | Under New York law, the single instance rule applies as an exception to defamation per se actions for disparaging a person in his or her profession where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation; under the single, instance exception to the per se rule, a statement charging another with a single dereliction in connection with his or her trade, occupation or profession does not necessarily charge that party with general incompetence, ignorance or lack of skill and is not deemed actionable unless special damages are pleaded and shown. Restatement (Second) of Torts S 558. | What is the single instance rule in defamation law? | Libel and Slander - Memo 97 - JS.docx | ROSS-003284024-ROSS-003284026 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 6458 | State v. Posenjak, 127 Wash. App. 41 | 209+125 | A tribe asserting tribal rights, as a successor in interest to a signatory tribe, bears the burden of demonstrating successorship. United States v. Suquamish Indian Tribe, 901 F.2d 772, 775 (9th Cir.1990). To obtain such tribal rights, the successor tribe must obtain "treaty tribe status." Id. at 776. Showing that the successor tribe includes descendents of a signatory tribe is inadequate. Id. Establishing common ancestry is inadequate. United States, 29 F.3d at 484. Instead, the successor tribe must establish the "actual merger or combination of tribal or political structure." Id. In other words, it "must trace a continuous and defining political or cultural characteristic to the entity that was granted the treaty rights." Id. at 485. | The successor tribe must establish the actual merger or combination of tribal or political structure in order to obtain treaty tribe status for purposes of asserting tribal rights as a successor in interest to a signatory tribe; it must trace a continuous and defining political or cultural characteristic to the entity that was granted the treaty rights. | What should the descendants of treaty-signatory tribes do to acquire the rights of a treaty-signatory tribe? | 001794.docx | LEGALEASE-00118796-LEGALEASE-00118797 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6459 | Caspar v. Lewin, 82 Kan. 604 | 231H+1 | Under section 7 of the factory act (chapter 356, Laws 1903), besides certain named establishments, any other establishment is a "manufacturing establishment," wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form. | Factory Act (Laws 1903, c. 356) S 7, provides that an establishment wherein any natural products or other articles, in raw, incomplete, or unfinished condition, are converted into a new improved or different form, is a manufacturing establishment, within the act. Held, that an establishment wherein railroad iron, old stoves, waste and scrap iron of every description, is cut into lengths, known as grade No. 1, grade No. 2 and busheling scrap, by machines known as alligator shears, operated by power, to meet standing specifications of mills which purchase the product, is a manufacturing establishment within the act. | What is a manufacturing establishment under the Factory Act? | Labor and Employment - Memo 34 - VP.docx | ROSS-003297391-ROSS-003297392 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 6460 | Husser v. New York City Dep't of Educ., 137 F. Supp. 3d 253 | 231H+2461 | Husser claims that the defendants willfully failed to pay her wages equal to those paid to men for equal work. Complaint "" 42"44. The Equal Pay Act "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for "equal work." " Chepak v. Metro. Hosp., 555 Fed.Appx. 74, 76 (2d Cir.2014) (quoting Belfi, 191 F.3d at 135). For purposes of both federal and state law, this claim is governed by the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Rambacher v. Bemus Point Cent. Sch. Dist., 307 Fed.Appx. 541, 543 (2d Cir.2009) (citing McDonnell Douglas, 411 U.S. at 792, 93 S.Ct. 1817); Setelius v. Nat'l Grid Elec. Svcs. LLC, 2014 WL 4773975, at *6 (E.D.N.Y. Sept. 24, 2014) (applying same analysis to state law discrimination claims); Sista v. CDC Ixis North Am., Inc., 2005 WL 356973, at *6 n. 7 (S.D.N.Y. Feb. 15, 2005) (same). | Equal Pay Act prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work. Equal Pay Act of 1963, S 3(d)(1), 29 U.S.C.A. S 206(d)(1). | Does the Equal Pay Act prohibit an employer from discriminating between employees on the basis of sex while paying wages? | 001426.docx | LEGALEASE-00118945-LEGALEASE-00118946 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6461 | First Assembly of God v. Texas Utilities Elec. Co., 52 S.W.3d 482 | 317A+101 | Appellant contends T.U. owed appellant the following duties: (1) a duty of ordinary care in a manner that would prevent electricity from causing damages to the church's real and personal property; (2) a duty to exercise reasonably prudent and ordinary care in the repair and/or replacement of the transformers, electric meter, and related equipment outside of the church; and (3) a duty to notify the church and/or Council before restoring electrical power. Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. W. Tex. Utils. v. Renner, 53 S.W.2d 451, 453"54 (Tex. Comm'n App.1932, holding approved); Tex. Cities Gas Co. v. Dickens, 140 Tex. 433, 438, 168 S.W.2d 208, 210 (1943). This "commensurate with the danger" standard does not impose a higher duty of care; rather, it more fully defines what is ordinary care under the facts presented. Renner, 53 S.W.2d at 453"54. Texas courts examine the language of the tariff to determine if a duty exists. Texaco, Inc. v. Cent. Power & Light Co., 955 S.W.2d 373, 377"78 (Tex.App."San Antonio 1997, pet. denied); Cent. Power & Light Co. v. Romero, 948 S.W.2d 764, 766"67 (Tex.App."San Antonio 1996, writ denied). | The commensurate with the danger standard of care imposed upon a public utility does not impose a higher duty of care; rather, it more fully defines what is ordinary care under the facts presented. | Does the commensurate with the danger standard impose a higher duty of care by a public utility? | 001619.docx | LEGALEASE-00118969-LEGALEASE-00118970 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 6462 | Town of Sterlington v. Greater Ouachita Water Applicant Co., 149 So. 3d 952 | 317A+181 | The manner in which a plaintiff couches his claim does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive. Daily Advertiser, supra; Central Louisiana Elec. Co., supra. Nor does the fact that a party to an action qualifies as a public utility automatically divest a court of original jurisdiction; however, that fact renders La. Const. Art. IV, " 21(B) arguably applicable. Daily Advertiser, supra. | Fact that a party to an action qualifies as a public utility does not automatically divest a court of original jurisdiction; however, that fact renders state constitutional article, providing that Public Service Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law, arguably applicable. LSA-Const. Art. 4, S 21(B). | Does the fact that one party is a public utility divest the district court of its original jurisdiction? | 001621.docx | LEGALEASE-00118975-LEGALEASE-00118976 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 6463 | City of Cohasset v. Minnesota Power, 776 N.W.2d 776 | 317A+101 | We agree. "[A]n entity, to operate as a utility, must not only lay pipes and install equipment, but also must provide service, collect charges, and do other things necessary to conduct a utility business." City of St. Paul v. N. States Power Co., 462 N.W.2d 379, 385 (Minn.1990) (quotation omitted). Here, respondent is not using the pipeline to furnish gas to the public; it is not collecting charges or doing the things necessary to conduct a utility business as a natural gas public utility. Rather, the pipeline is solely a component of respondent's electrical production. Therefore, Minn.Stat. " 301B.01, is not applicable to respondent's gas pipeline. | An entity, to operate as a utility, must not only lay pipes and install equipment, but also must provide service, collect charges, and do other things necessary to conduct a utility business. | Should an entity only lay pipes and install equipment to operate as a utility? | 001624.docx | LEGALEASE-00118983-LEGALEASE-00118984 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6464 | United States v. Dion, 476 U.S. 734 | 209+123 | We have enunciated, however, different standards over the years for determining how such a clear and plain intent must be demonstrated. In some cases, we have required that Congress make "express declaration" of its intent to abrogate treaty rights. See Leavenworth, L., & G. R. Co. v. United States, 92 U.S. 733, 741-742, 2 Otto 733, 741-742, 23 L.Ed. 634 (1876); see also Wilkinson & Volkman 627-630, 645-659. In other cases, we have looked to the statute's " "legislative history" " and " "surrounding circumstances' " as well as to " "the face of the Act." " Rosebud Sioux Tribe v. Kneip, 430 U.S. 584, 587, 97 S.Ct. 1361, 1363, 51 L.Ed.2d 660 (1977), quoting Mattz v. Arnett, 412 U.S. 481, 505, 93 S.Ct. 2245, 2258, 37 L.Ed.2d 92 (1973). Explicit statement by Congress is preferable for the purpose of ensuring legislative accountability for the abrogation of treaty rights, cf. Seminole Nation v. United States, 316 U.S. 286, 296-297, 62 S.Ct. 1049, 1054-1055, 86 L.Ed. 1480 (1942). We have not rigidly interpreted that preference, however, as a per se rule; where the evidence of congressional intent to abrogate is sufficiently compelling, "the weight of authority indicates that such an intent can also be found by a reviewing court from clear and reliable evidence in the legislative history of a statute." Cohen 223. What is essential is clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty. | In determining whether Congress intended to abrogate Indian treaty rights, what is essential is clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty. | How doe courts determine if Congress intended to abrogate Indian treaty rights? | 001783.docx | LEGALEASE-00118841-LEGALEASE-00118842 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6465 | Heckert Const. Co. v. City of Fort Scott, 278 Kan. 223 | 268+104 | A judgment rendered or final order made by a political subdivision exercising judicial or quasi-judicial functions may be reversed, vacated, or modified by the district court on appeal under K.S.A. 60"2101. A decision of a legislative body is quasi-judicial if a state or local law (1) requires notice to the community before the action, (2) requires a public hearing pursuant to notice, and (3) requires the application of criteria established by law to the specific facts of the case. Reiter v. City of Beloit, 263 Kan. 74, 85, 947 P.2d 425 (1997). | For purposes of statute allowing district court to review judgment or order made by political subdivision exercising quasi-judicial functions, decision of a legislative body is "quasi-judicial" if a state or local law (1) requires notice to the community before the action, (2) requires a public hearing pursuant to notice, and (3) requires the application of criteria established by law to the specific facts of the case. K.S.A. 60-2101. | When is a decision of a legislative body quasi-judicial in nature? | Administrative Law - Memo 174 - RK.docx | ROSS-003324396-ROSS-003324397 | SA, Sub | 0.2 | 0 | 0 | 1 | 1 | |
| 6466 | Connick v. Myers, 461 U.S. 138 | 92+1934 | The Court correctly reaffirms the long established principle that the government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment. E.g., Keyishian v. Board of Regents, 385 U.S. 589, 605"606, 87 S.Ct. 675, 684"685, 17 L.Ed.2d 629 (1967); Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Pickering held that the First Amendment protects the rights of public employees "as citizens to comment on matters of public interest" in connection with the operation of the government agencies for which they work. 391 U.S., at 568, 88 S.Ct., at 1734. We recognized, however, that the government has legitimate interests in regulating the speech of its employees that differ significantly from its interests in regulating the speech of people generally. Ibid. We therefore held that the scope of public employees' First Amendment rights must be determined by balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Ibid. | In determining a public employee's rights of free speech, task of the Supreme Court is to arrive at a balance between interests of the employee as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. U.S.C.A. Const.Amends. 1, 14. | Does the First Amendment protect the right of public employees to comment on matters of public interest? | 001365.docx | LEGALEASE-00119464-LEGALEASE-00119465 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6467 | Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104 | 148+2.1 | In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. See Goldblatt v. Hempstead, supra, 369 U.S., at 594, 82 S.Ct., at 990. So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government, see, e. g., United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. | A "taking" may more readily be found when the interference with property had to be characterized as a physical invasion by the government, and when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. U.S.C.A.Const. Amends. 5, 14. | When can a taking be readily found? | 002399.docx | LEGALEASE-00119500-LEGALEASE-00119501 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6468 | State ex rel. State Highway Comm'n v. Gatson, 617 S.W.2d 80 | 148+146 | We initially turn to the accepted definitions for guidance. A special benefit is one that accrues directly and proximately to the particular land remaining after a partial taking by reason of the construction of the public work upon that part of the land that was taken reflected in an increase in market value of the remaining land. General benefits on the other hand are those that accrue to the owners of property within the usable range of the public work. General benefits do not arise by reason of the location of the public work upon the land taken. State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S.W.2d 338, 340 (banc 1929). See also State ex rel. State Highway Commission v. Tate, supra. | A "special benefit," which condemnor may utilize as setoff against landowner's damages, is one that accrues directly and approximately to particular land remaining after partial taking by reason of construction of public work upon that part of land that was taken reflected in increase in market value of remaining land. | What are special benefits in taking? | 001892.docx | LEGALEASE-00119654-LEGALEASE-00119655 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 6469 | Vill. of Monsanto v. Touchette, 63 Ill. App. 2d 390 | 317A+101 | Due to the nature and purpose of the Public Utilities Act it is difficult for this Court to comprehend how its amendment by adding Section 28a, could impliedly amend the series of laws having to do with roads and bridges or taxation for road and bridge purposes, or distribution of taxes levied for such purpose. The Public Utilities Act is in derogation of common law, and nothing should be read into it by intendment. Consumers Sanitary Coffee & Butter Stores v. Illinois Commerce Commission, 348 Ill. 615, 181 N.E. 411. It is complete in itself, Illinois Central Railroad Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545, and is subject to repeal or amendment of the Legislature at any time that the Legislature sees fit in the public interest to so do. It has historically dealt with the regulation of public utilities in connection with rates and service to the public and has never been the legislative vehicle by which taxes were imposed, levied or distributed. Its purpose has been a maintain a general control over the operation of utilities in the State to the extent of preventing them from exacting from their patrons unjust, unreasonable, and discriminatory rates, and the theory of regulation of public utilities is protection of the public and the assurance of adequate service on the one hand, and, on the other, a fair opportunity to the tuility to, by business economy, secure a reasonable return from such service. Ill. Central Railroad v. Ill. Commerce Commission, supra. Being in derogation of common law it is to be strictly construed, People v. Norman Acceptance Co., 17 Ill.App.2d 215, 149 N.E.2d 653, Chicago Pump Co. v. Lakeside Engineering Corporation, 296 Ill.App. 126, 15 N.E.2d 929. | Purpose of Public Utilities Act is to maintain general control over operation of utilities to extent of preventing them from exacting unjust, unreasonable and discriminatory, rates, and to assure adequate service and fair opportunity to secure reasonable return. | What is the theory behind regulation of public utilities? | 001961.docx | LEGALEASE-00119563-LEGALEASE-00119564 | Condensed, Order, SA | 0.85 | 1 | 1 | 0 | 1 | 1 |
| 6470 | Entergy Gulf States v. Louisiana Pub. Serv. Comm'n, 730 So. 2d 890 | 317A+101 | Utilities have an obligation to manage their facilities efficiently. The utility must make reasonable attempts to minimize costs through prudent decision making, since ratepayers depend on only one monopolistic supplier. Gulf States Utils. Co. v. Louisiana Pub. Serv. Comm'n, No. 96"2046 (La.2/25/97), 689 So.2d 1337, 1346 & n. 9. | Utility must make reasonable attempts to minimize costs through prudent decision making, since ratepayers depend on only one monopolistic supplier. | Should the utility must make reasonable attempts to minimize costs through prudent decision making? | 001963.docx | LEGALEASE-00119565-LEGALEASE-00119566 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6471 | Moghazeh v. Valdes-Rodriguez, 151 A.D.2d 428 | 401+4 | In making its ruling, the trial court relied upon the general rule that, "all things being equal, a transitory action should be tried in the county in which the cause of action arose". McGuire v. General Electric Company, 117 A.D.2d 523, 498 N.Y.S.2d 137. As we have repeatedly held, however, this rule "is predicated on the convenience of material witnesses". Green v. Shortts, 145 A.D.2d 340, 341, 535 N.Y.S.2d 608; Morales v. Muccio, 145 A.D.2d 340, 341, 535 N.Y.S.2d 607; Boriskin v. Long Island Jewish Hillside Medical Center, 85 A.D.2d 523, 444 N.Y.S.2d 618. In the instant matter, defendants have failed to make a sufficient showing to justify a change of venue on this ground. | General rule that, all things being equal, transitory action should be tried in county in which cause of action arose, is predicated on convenience of material witnesses. McKinney's CPLR 510, subd. 3. | Is the general rule that a transitory action should be brought where the cause of action arose predicated on the convenience of material witnesses? | Venue - Memo 61 - ANG.docx | ROSS-003312744-ROSS-003312746 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6472 | People v. Braboy, 393 Ill. App. 3d 100 | 110+798.5 | Our supreme court, hearing these consolidated appeals, noted that "first degree murder is a single offense and, for that reason, it is constitutionally permissible to use a general verdict form, even when murder is charged in a multicount indictment based on different theories." Smith, 233 Ill.2d at 14, 329 Ill.Dec. 331, 906 N.E.2d 529, citing Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). The different theories embodied in the first degree murder statute are simply differing ways to commit the same crime of first degree murder. Smith, 233 Ill.2d at 16, 329 Ill.Dec. 331, 906 N.E.2d 529, citing People v. Cooper, 194 Ill.2d 419, 429, 252 Ill.Dec. 458, 743 N.E.2d 32 (2000). Accordingly, "because first degree murder is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to the means by which the murder was committed." (Emphasis in original.) Smith, 233 Ill.2d at 16, 329 Ill.Dec. 331, 906 N.E.2d 529, citing Schad, 501 U.S. at 631"32, 111 S.Ct. at 2497, 115 L.Ed.2d at 565. | Defendant was not entitled to separate verdict forms for various theories of first degree murder under which defendant was charged; first degree murder was single offense and, for that reason, it was constitutionally permissible to use general verdict form, even when murder was charged in a multicount indictment based on different theories, different theories embodied in first degree murder statute were simply differing ways to commit same crime of first degree murder, and thus, because first degree murder was single offense, it was constitutionally permissible for jurors to return general verdict of guilty even if there was no juror unanimity with regard to means by which murder was committed. | Is first degree murder a single offense? | 002864.docx | LEGALEASE-00119766-LEGALEASE-00119767 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 6473 | Am. Disc. Co. v. Wyckroff, 29 Ala. App. 82 | 386+3 | In addition to the above there must be shown force either expressed or implied, and if there be actual force there could be no question about it, but if the conduct of the defendant's agents was such as to imply force in the taking of the property in such sort as to cause plaintiff to yield to the demands of defendant's agents, such action would be an implied force which would sustain the action. The term "force" as applied to a trespass to personal property does not necessarily mean the application of physical force, violence, etc., but merely of constructive force, which would be sustained by proof of threats to compel plaintiff's submission. Crews & Green v. Parker, 192 Ala. 383, 68 So. 287. | The term "force," as applied to trespass to personal property, does not necessarily mean application of physical force or violence, but merely of constructive force which is sustained by proof of threats to compel submission. | Should the term force as applied to trespass mean actual physical force? | 002957.docx | LEGALEASE-00119817-LEGALEASE-00119818 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6474 | Frye v. Baskin, 241 Mo. App. 319 | 386+3 | However, the evidence in this case does not show such a trespass on the part of defendant as to make her liable to plaintiff. Trespass involves the idea of force. The principle is elementary that trespass lies whenever an injury to plaintiff's property, against his will, is the immediate result of a forceful, unlawful or wrongful act (not in a criminal sense) by the trespasser, the consequences of which make themtortious. Mawson v. Vess Beverage Co., Mo.App., 173 S.W.2d 606. 52 Am.Jurs. Trespass, Sec. 1. | Trespass lies whenever an injury to plaintiff's property, against the will of the plaintiff, is the immediate result of a forceful, unlawful or wrongful act, not in a criminal sense, by the trespasser, the consequences of which make the act tortious. | "Is trespass the immediate result of a forceful, unlawful or wrongful act?" | Trespass - Memo 80 - TH.docx | ROSS-003283508-ROSS-003283509 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 6475 | State v. Hummel, 165 Wash. App. 749 | 110+413.73 | A jury convicted Bruce Hummel of the premeditated murder of his wife Alice. The main issue in this appeal is whether Hummel's statements were properly admitted under the corpus delicti rule. That rule requires the State to produce sufficient evidence to establish the corpus delicti of the charged crime before a defendant's statements may be admitted into evidence. The corpus delicti of a homicide case is proved by evidence, independent of a defendant's statements, establishing the fact of death and a causal connection between the death and a criminal act. We conclude that there was sufficient independent evidence to establish the corpus delicti and that Hummel's statements were properly admitted into evidence. We reject Hummel's contention that the conviction should be reversed and the charge dismissed. | The corpus delicti of a homicide case is proved by evidence, independent of a defendant's statements, establishing the fact of death and a causal connection between the death and a criminal act; such statements cannot be considered by the finder of fact unless the State first establishes the corpus delicti of the crime by independent evidence. | Does a causal connection between the death and a criminal act considered as an element of corpus delicti? | Homicide - Memo 62 - MS.docx | LEGALEASE-00008443-LEGALEASE-00008444 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 6476 | Am. Mgmt. Consultant v. Carter, 392 Ill. App. 3d 39 | 13+11 | The law provides that a plaintiff in a forcible entry and detainer action bears the burden of proving to the trial court his or her right to possession of the property in question. Harper Square Housing Corp. v. Hayes, 305 Ill.App.3d 955, 963, 239 Ill.Dec. 135, 713 N.E.2d 666, 672 (1999). An action to recover possession of a premises is a special statutory proceeding and, as we have already discussed, a party seeking this remedy must strictly comply with the requirements of the statute. In re A.H., 195 Ill.2d 408, 416, 254 Ill.Dec. 737, 748 N.E.2d 183, 189 (2001); Nance v. Bell, 210 Ill.App.3d 97, 99, 154 Ill.Dec. 753, 568 N.E.2d 974, 975"76 (1991). Where the statute includes a requirement that written demand is made prior to filing a complaint, the demand must be made in strict compliance with the statute. Williams v. Manchester, 228 Ill.2d 404, 419, 320 Ill.Dec. 784, 888 N.E.2d 1, 10 (2008); Eddy v. Kerr, 96 Ill.App.3d 680, 681, 52 Ill.Dec. 495, 422 N.E.2d 176, 177 (1981). | Where a statute includes a requirement that written demand is made prior to filing a complaint, the demand must be made in strict compliance with the statute. | "Where a statute includes a requirement that written demand be made prior to filing a complaint, must the demand be made in strict compliance with the statute?" | Action - Memo 56 - MS.docx | ROSS-003328832-ROSS-003328833 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6477 | First Nat. Bank of Jackson v. Huff, 441 So. 2d 1317 | 366+1 | The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles. Some other jurisdictions do not bar the application of subrogation for negligence alone. Accord, Castleman Construction Company v. Pennington, 222 Tenn. 82, 432 S.W.2d 669 (1968) (ordinary negligence alone will not be a complete bar to subrogation where in spite of such negligence the equities are still in favor of the subrogee); Federal Land Bank v. Joynes, 179 Va. 394, 18 S.E.2d 917 (1942) (negligence should be chiefly of significance when there are subsequently intervening rights involved which would be prejudiced if subrogation were allowed); Home Owners' Loan Corp. v. Papara, 241 Wis. 112, 3 N.W.2d 730 (1942) (where debtors received benefit in payment of existing mortgage against their interests and none of them has changed his position by reason of said payment, subrogation would be invoked in spite of negligence of payor); G. Osborne, Handbook on the Law of Mortgages, 572 (2d Ed.1970) (where no one has been misled or injured thereby, negligence of any sort should be entirely immaterial). | Determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles. | Is the determination of whether subrogation is applicable a factual determination of each particular case with consideration of fairness and justice as its guiding principles? | 002566.docx | LEGALEASE-00120064-LEGALEASE-00120065 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6478 | Wasko v. Manella, 269 Conn. 527 | 366+1 | "The law has recognized two types of subrogation: conventional; and legal or equitable. 73 Am.Jur.2d 599, Subrogation " 2 (1974 and 1995 Supp.) .... Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid.... By contrast, [t]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.... The object of [legal or equitable] subrogation is the prevention of injustice.It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.... As now applied, the doctrine of [legal or] equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted; internal quotation marks omitted.) Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 370"71, 672 A.2d 939 (1996). | The object of legal or equitable subrogation is the prevention of injustice; it is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. | Is prevention of injustice the object of subrogation? | 002604.docx | LEGALEASE-00119999-LEGALEASE-00120000 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6479 | AT&T Mobility LLC v. Concepcion, 563 U.S. 333 | 360+18.15 | When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. Preston v. Ferrer, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. In Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist " "at law or in equity for the revocation of any contract." " Id., at 492, n. 9, 107 S.Ct. 2520 (emphasis deleted). We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." Id., at 493, n. 9, 107 S.Ct. 2520. | In light of the preemptive effect of the Federal Arbitration Act (FAA), a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what the state legislature cannot. 9 U.S.C.A. S 2. | Can a court rely on the uniqueness of an arbitration agreement when state-law says that the enforcement of the agreement is unconscionable? | 002672.docx | LEGALEASE-00120100-LEGALEASE-00120102 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6480 | Morris v. Jefferson Elec. Co., 278 Pa. 361 | 145+14(1) | A company using a dangerous agency, like an electric current of high power, is bound to the highest degree of care practicable to avoid injury to any one lawfully within its proximity, but ordinary persons must all know danger attends contact with electric wires. Haertel v. Pennsylvania Light & Power Co., 219 Pa. 640, 69 Atl. 282. The latter rule does not apply to a child of immature years. While electric companies are bound to this degree of care, we cannot hold as a matter of law that they would be guilty of negligence in permitting their wires to be constructed close to trees or branches that might fall over them as they pass through wooded country districts. Generally it is well nigh impossible to keep far enough away, and in cities and boroughs, with shade trees along the streets it may be easily understood why it would be very difficult to construct lines to absolutely clear these trees. The rules of the Public Service Commission require the wires to be cleared of a certain amount of foliage, and well-regulated companies no doubt endeavor to keep all these disturbing causes as far as possible from their lines | Electric companies must use highest degree of care practicable to avoid injury to those in lawful proximity to their wires. | What is the degree of care that Electric companies must use to avoid injury to those in lawful proximity to their wires? | Electricity - Memo 53 - RK.docx | ROSS-003326542-ROSS-003326544 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 6481 | Florida E. Coast Ry. Co. v. Broward Cty., 421 So. 2d 681 | 148+47(1) | The parties have stipulated that the traditional prior use doctrine applies to this case. Under that doctrine, property devoted to a public use cannot be taken and appropriated to another or different public use unless the authority to do so has been expressly given by the legislature or may be necessarily implied. Thus, the power of condemnation may not be exercised where the proposed use will destroy an existing public use in the absence of specific legislative authority. Florida East Coast Railway v. City of Miami, 372 So.2d 152 (Fla. 3d DCA 1979). However, when a taking will not materially impair or interfere with or is not inconsistent with the existing use, and the proposed use is not detrimental to the public, then a court possesses authority to order a taking of the property. Georgia Southern & Florida Railway v. State Road Department, 176 So.2d 111 (Fla. 1st DCA 1965). This exception to the prior public use doctrine is known as the "compatible use" theory. | When a taking will not materially impair or interfere with or is not inconsistent with the existing public use, and the proposed use is not detrimental to the public, then a court possesses authority to order a taking of the property; this exception to the prior public use doctrine is known as the "compatible use" theory. | How is compatible use theory identified under the law? | 002715.docx | LEGALEASE-00120202-LEGALEASE-00120204 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6482 | State v. Crawford, 104 Kan. 14 | 145+1 | The clause in section 5 of the Fire Prevention Act (section 4863 of the General Statutes of 1915), requiring that "all electric wiring shall be in accordance with the National Electrical Code," is void for uncertainty, and the informations charging offenses thereunder were properly quashed. | The Fire Prevention Act, S 5, requiring that "all electric wiring shall be in accordance with the National Electrical Code," is void for uncertainty. | Is the Fire Prevention Act requiring that all electrical wiring shall be in accordance with the National Electrical Code void for uncertainty? | Electricity - Memo 52 - JS.docx | ROSS-003289646-ROSS-003289648 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 6483 | Wong v. Yoo, 649 F. Supp. 2d 34 | 249+37 | With regard to the second element of malicious prosecution, the parties dispute whether the criminal charges against plaintiff were terminated in plaintiff's favor. "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir.2002). Under certain circumstances, however, dismissal is considered to be a termination in plaintiff's favor. For example, "the state's effective abandonment of a prosecution, [resulting] in a dismissal for violation of the accused's speedy trial rights, without an adjudication of his guilt or innocence, constitute[s] a favorable termination." Id. (citing Murphy v. Lynn, 118 F.3d 938, 949"50 (2d Cir.1997)). See also Smith"Hunter v. Harvey, 95 N.Y.2d 191, 195"98, 712 N.Y.S.2d 438, 734 N.E.2d 750 (N.Y.2000) (a "CPL 30.30 dismissal" based on New York's speedy trial statute that is "sought and granted as a matter of statutory right based on the prosecutor's inaction" is a favorable termination in the absence of circumstances inconsistent with innocence). | Where a prosecution did not result in an acquittal, under New York law it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence; however, under certain circumstances dismissal is considered to be a termination in plaintiff's favor. | When is a prosecution deemed to have ended in favor of the accused for purposes of a malicious prosecution claim? | 003370.docx | LEGALEASE-00120262-LEGALEASE-00120263 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6484 | Qualls v. Lake Berryessa Enterprises, 76 Cal. App. 4th 1277 | 238+44(2) | The interpretation of an agreement to determine whether it is a lease, a license or another form of interest is often a subtle pursuit. At the most rudimentary level, "[w]hether an agreement for the use of property constitutes a license or a lease generally is determined by the nature of the possession granted. If the contract gives exclusive possession of the premises against all the world, including the owner, it is a lease; if it merely confers a privilege to occupy the premises under the owner, it is a license." (6 Miller & Starr, Cal. Real Estate (2d ed.1989) " 18:5, p. 14 .) | Whether an agreement for the use of property constitutes a "license" or a lease generally is determined by the nature of the possession granted: if the contract gives exclusive possession of the premises against all the world, including the owner, it is a lease, but if it merely confers a privilege to occupy the premises under the owner, it is a license. | What is the difference between a lease and a license? | 002741.docx | LEGALEASE-00120230-LEGALEASE-00120231 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 6485 | F.T.C. v. Flotill Prod., 389 U.S. 179 | 15A+1062 | Insofar as the Court of Appeals' holding implies that the proposition state by it is the common-law rule, the court was manifestly in error. The almost universally accepted common-law rule is the precise converse"that is, in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body. Where the enabling statute is silent on the question, the body is justified in adhering to that common-law rule. | Where enabling statute is silent on question, collective body is justified in adhering to common-law rule that majority of quorum constituted of simple majority of collective body is empowered to act for body. | Is the majority of a quorum constituted of a simple majority of a collective body empowered to act for a body? | Administrative Law - Memo 185 - RK.docx | ROSS-003283802-ROSS-003283803 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 6486 | Gibson v. Am. Cyanamid Co., 760 F.3d 600 | 148+2.1 | In light of our conclusion that the manufacturers' substantive-due-process challenge to Thomas must fail, and that Eastern Enterprises does not support that challenge, we can readily reject the manufacturers' other constitutional challenges. The primary premise of the manufacturers' argument that Thomas amounts to a "taking" of property under the Takings Clause is that the plurality opinion in Eastern Enterprises announces the applicable test, but as we explained earlier, there is no binding precedent arising from that case, whether on substantive due process or on the Takings Clause.10 This leaves the manufacturers without a basis to argue that a statute or regulation (let alone a judicial decision) that imposes a liability on a party rather than take or burden a specific property interest owned by that party amounts to a "taking." Instead, the Supreme Court has recognized that Congress, for example, "may set minimum wages, control prices, or create causes of action that did not previously exist," all without implicating the Takings Clause. Connolly v. Pension Ben. Guaranty Corp., 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (emphasis added). Assessing liability "that adjusts the benefits and burdens of economic life to promote the common good ... does not constitute a taking." Id. at 225, 106 S.Ct. 1018; accord Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. 602, 643, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). | Assessing liability that adjusts the benefits and burdens of economic life to promote the common good does not constitute a taking. U.S.C.A. Const.Amend. 5. | Does assessing liability that adjusts the benefits and burdens of economic life to promote the common good constitute a taking? | 003097.docx | LEGALEASE-00120382-LEGALEASE-00120383 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6487 | State v. Becker, 351 N.W.2d 923 | 207+10 | We hold that the time span that constitutionally may be included within a charge under this statute must be reasonable under all the circumstances of the particular case but cannot exceed the period of the statute of limitations. It is not sufficient to merely restate the statutory language in the complaint or indictment without setting forth a time frame. | Complaint charging a defendant with multiple acts of intrafamilial sexual abuse over an extended period of time must allege that the crime occurred during a reasonably specific time period not exceeding the statute of limitations; it is not sufficient to merely restate the statutory language without setting forth a time frame. M.S.A. S 609.3641, subd. 1(2)(e); U.S.C.A. Const.Amend. 6; M.S.A. Const. Art. 1, S 6. | Is the time span in which multiple acts of intrafamilial sexual abuse took place relevant? | 003203.docx | LEGALEASE-00120560-LEGALEASE-00120561 | SA, Sub | 0.14 | 0 | 0 | 1 | 1 | |
| 6488 | Hall v. D.C., 867 F.3d 138 | 237+51(1) | District of Columbia law provides a qualified privilege to any person who reports a crime, as long as the "statement about suspected wrongdoing is made in good faith to law enforcement authorities." Carter v. Hahn, 821 A.2d 890, 894 (D.C. 2003) (quoting Columbia First Bank v. Ferguson, 665 A.2d 650, 655 (D.C. 1995)). No privilege attaches to a statement made "without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." Id. (quoting Columbia First Bank, 665 A.2d at 656). | In context of defamation claim, under District of Columbia law, no qualified privilege attaches to a statement made without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will. | When does qualified privilege attach to statements? | Libel and Slander - Memo 147 - RK.docx | ROSS-003295404-ROSS-003295406 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6489 | Kala Investments v. Sklar, 538 So. 2d 909 | 366+1 | In our view, the doctrine of equitable subrogation provides the avenue for Kala to seek recompense for the settlement money it paid to the plaintiffs. "Equitable" subrogation is a creature of equity which was developed to afford relief "when one person has satisfied the obligations of another and equity compels that the person discharging the debt stand in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." Eastern National Bank v. Glendale Federal Savings and Loan Association, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987). The policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge. Id. See United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394 (1928). The doctrine is then a part of the universe usually spoken of as being inhabited by only indemnity or contribution. | Policy behind doctrine of equitable subrogation is to prevent unjust enrichment by assuring that person who in equity and good conscience is responsible for debt is ultimately answerable for its discharge. | Is prevention of unjust enrichment the policy behind the doctrine of equitable subrogation? | 003588.docx | LEGALEASE-00120396-LEGALEASE-00120397 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6490 | Youngblood v. Am. States Ins. Co., 262 Mont. 391 | 366+1 | Subrogation is an equitable doctrine which is not dependent on any contractual relationship between the parties and is not dependent on privity. Bower v. Tebbs (1957), 132 Mont. 146, 155, 314 P.2d 731, 736. The purpose of subrogation is to prevent injustice by "compel[ling] the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment." Bower, 314 P.2d at 736. | Purpose of subrogation is to prevent injustice by compelling ultimate payment of debt by one who in justice, equity, and good conscience, should pay it; it is appropriate means of preventing unjust enrichment. | Is subrogation an appropriate means of preventing unjust enrichment? | Subrogation - Memo 78 - ANG C.docx | ROSS-003286104-ROSS-003286105 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 6491 | Hartford Fire Ins. Co. v. Columbia State Bank, 183 Wash. App. 599 | 366+1 | Equitable subrogation allows a party who satisfies another's obligation to recover from the party primarily liable for the extinguished obligation. Columbia Cmty. Bank v. Newman Park, LLC, 177 Wash.2d 566, 573, 304 P.3d 472 (2013). "The right of "legal" or "equitable" subrogation arose as a "creature of equity" and "is enforced solely for the purpose of accomplishing the ends of substantial justice." " In re Hamada, 291 F.3d 645, 649 (9th Cir.2002) (quoting Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 302, 7 S.Ct. 482, 30 L.Ed. 595 (1887)). | The right of legal or equitable subrogation arose as a creature of equity and is enforced solely for the purpose of accomplishing the ends of substantial justice. | Is the right of legal or equitable subrogation enforced for the purpose of accomplishing the ends of substantial justice? | Subrogation - Memo 98 - RM C.docx | ROSS-003286121-ROSS-003286123 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 6492 | Sansotta v. Town of Nags Head, 97 F. Supp. 3d 713 | 148+2.2 | As for the Owners' first takings theory, the government is "absolv[ed] ... of liability for the destruction of real and personal property, in cases of actual necessity, to prevent the spreading of a fire or to forestall other grave threats to the lives and property of others." Lucas, 505 U.S. at 1029 n. 16, 112 S.Ct. 2886; see TrinCo Inv. Co. v. United States, 722 F.3d 1375, 1377"80 (Fed.Cir.2013). Here, the evidence shows that, once Seagull Drive had been breached, the Town's emergency-management personnel were concerned about the safety of the contractors and those who might need to rescue the contractors should they be injured. Even viewing the evidence in the light most favorable to the Owners, the Owners' first takings theory fails. | Government is absolved of liability for the destruction of real and personal property, in cases of actual necessity, to prevent the spreading of a fire or to forestall other grave threats to the lives and property of others. U.S.C.A. Const.Amend. 5. | Is the government absolved of liability in cases of actual necessity? | 003095.docx | LEGALEASE-00120687-LEGALEASE-00120688 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 6493 | State ex rel. Dep't of Transp. v. El Dorado Properties, 157 Or. App. 624 | 148+134 | A landowner is entitled to receive just compensation for land taken for a public use, based on the value of the land at its highest and best use, which is the most profitable likely use of the property at the time of the taking. That likely use may include a program of future use of the land that represents its highest present land value. Dept. of Trans. v. Lundberg, 312 Or. 568, 574, 825 P.2d 641 (1992). Thus, evidence of uses to which the land is reasonably adapted is admissible, even if the land is not presently being used for those purposes. That includes evidence that at the time of the taking the land was being developed for a particular use. Highway Com. v. Assembly of God et al, 230 Or. 167, 176, 368 P.2d 937 (1962) | Landowner is entitled to receive just compensation for land taken for a public use, based on the value of the land at its "highest and best use," which is the most profitable likely use of the property at the time of the taking, including a program of future use of the land that represents its highest present land value. | What is a landowner entitled to receive for land taken for a public use? | 003149.docx | LEGALEASE-00120815-LEGALEASE-00120816 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 6494 | Cipolla v. Bloom Twp. High Sch. Dist. No. 206, 69 Ill. App. 3d 434 | 302+8(3) | A cause of action should not be dismissed upon the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which would entitle plaintiff to relief. (Phillips Construction Co., Inc. v. Muscarello (1976), 42 Ill.App.3d 151, 355 N.E.2d 567.) Willful and wanton misconduct must be manifested by the facts alleged in the complaint the characterization of certain acts as willful and wanton misconduct is insufficient to withstand a motion to dismiss (Jarvis v. Herrin City Park Dist. (1972), 6 Ill.App.3d 576, 285 N.E.2d 564). Willful and wanton misconduct has been defined as follows:"A willful and wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, Such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." Schneiderman v. Interstate Transit Lines, Inc. (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300; Hocking v. Renquist (1969), 44 Ill.2d 196, 201, 254 N.E.2d 515, 518 (emphasis added). | Willful and wanton misconduct must be manifested by facts alleged in complaint; characterization of certain acts as willful and wanton misconduct is insufficient to withstand a motion to dismiss. | Is the characterization of certain acts as willful and wanton misconduct sufficient to withstand a motion to dismiss? | Pleading - Memo 94 - RK.docx | ROSS-003283587-ROSS-003283588 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6495 | Cipolla v. Bloom Twp. High Sch. Dist. No. 206, 69 Ill. App. 3d 434 | 302+8(3) | A cause of action should not be dismissed upon the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which would entitle plaintiff to relief. (Phillips Construction Co., Inc. v. Muscarello (1976), 42 Ill.App.3d 151, 355 N.E.2d 567.) Willful and wanton misconduct must be manifested by the facts alleged in the complaint the characterization of certain acts as willful and wanton misconduct is insufficient to withstand a motion to dismiss (Jarvis v. Herrin City Park Dist. (1972), 6 Ill.App.3d 576, 285 N.E.2d 564). Willful and wanton misconduct has been defined as follows:"A willful and wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, Such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." Schneiderman v. Interstate Transit Lines, Inc. (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300; Hocking v. Renquist (1969), 44 Ill.2d 196, 201, 254 N.E.2d 515, 518 (emphasis added). | Willful and wanton misconduct must be manifested by facts alleged in complaint; characterization of certain acts as willful and wanton misconduct is insufficient to withstand a motion to dismiss. | Does willful and wanton misconduct have to be manifested by facts alleged in the complaintto withstand a motion to dismiss? | 003476.docx | LEGALEASE-00120875-LEGALEASE-00120876 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6496 | Trailways v. City of Atl. City, 179 N.J. Super. 258 | 317A+147 | The statutes governing public utilities reflect the legislative recognition that "public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service throughout the State." Bergen Cty. v. Public Utilities Dep't, 117 N.J.Super. 304, 312, 284 A.2d 543 (App.Div.1971), citing In re Public Service Electric and Gas Co., 35 N.J. at 358, 371, 173 A.2d 233 (1961). N.J.S.A. 48:2-1 creates the Department of Public Utilities and the Board of Public Utility Commissioners to enforce the state public utilities laws. The Board of Public Utility Commissioners was intended by the Legislature to have the widest range of regulatory power over public utilities, and the provisions of the statute governing public utilities are to be construed liberally. Bergen Cty. v. Public Utilities Dep't, supra at 312, 284 A.2d 543. | Board of Public Utility Commissioners was intended to have widest range of regulatory power over public utilities, and provisions of the statute governing public utilities are to be construed liberally. N.J.S.A. 48:2-1. | Does the Board of Public Utility Commissioners (Board) have the widest range of regulatory power over public utilities? | 042564.docx | LEGALEASE-00120944-LEGALEASE-00120945 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 6497 | Polaris Bldg. Corp. v. Bimberg, 137 Misc. 289 | 302+8(4) | The answer of the defendants Bimberg and Schor alleges, upon information and belief, the making, for a valuable consideration, of the extension agreement therein referred to, without notice to or consent by the defendants. The only reference to this alleged agreement in the answering affidavit of Bimberg is that "the plaintiff * * * did extend, without the knowledge or consent of the defendants, the time of payment on the mortgage because the mortgagee happened to be a friend of his' (sic.). The allegation "for a valuable consideration" is not a statement of fact but a mere conclusion of law, as is any such allegation when applied to a nonnegotiable instrument, unaccompanied by any statement of the facts showing consideration. Browning, King & Co. v. Terwilliger, 144 App. Div. 516, 519, 129 N. Y. S. 431. To have the effect of discharging the surety, the agreement must be upon a valid consideration and must be sufficient to preclude the creditor, during the extended period from enforcing the debt against the principal. Fifth National Bank of Cincinnati v. Woolsey, 21 Misc. Rep. 757, 761, 762, 48 N. Y. S. 148; National Citizens' Bank v. Toplitz, 178 N. Y. 464, 467, 71 N. E. 1. | Allegation "for valuable consideration," unaccompanied by statement of facts showing consideration, is mere conclusion when applied to nonnegotiable instrument. | "Is an allegation for valuable consideration, unaccompanied by statement of facts showing consideration, a mere conclusion when applied to nonnegotiable instrument?" | 022906.docx | LEGALEASE-00120975-LEGALEASE-00120976 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6498 | Employers Health Ins. v. Gen. Cas. Co. of Wisconsin, 161 Wis. 2d 937 | 366+1 | Subrogation derives, in part, from the equitable doctrine of preventing unjust enrichment and placing the loss ultimately on the wrongdoers. Cunningham, 121 Wis.2d at 444, 360 N.W.2d 33; American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142 (1971). The right to subrogation "arises, not as a direct legal consequence of the contract of the parties, but rather as a matter of doing justice after a balancing of the equities .. [T]he agreement is merely a consideration-although an important consideration-in determining whether subrogation is appropriate." Rock River Lumber v. Universal Mortg. Corp., 82 Wis.2d 235, 242, 262 N.W.2d 114 (1978). Subrogation is permitted only when "the rights of those seeking subrogation have greater equity than the rights of those who oppose it." First National Bank of Columbus v. Hansen, 84 Wis.2d 422, 429, 267 N.W.2d 367 (1978). The right to subrogation arises "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." American Ins. Co., 51 Wis.2d at 351, 187 N.W.2d 142. | Equitable subrogation is permitted only when rights of those seeking subrogation have greater equity than rights of those who oppose it; right to subrogation arises when person other than mere volunteer pays debt which in equity and good conscience should be satisfied by another. | Is subrogation permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it? | Subrogation - Memo # 417 - C - SA.docx | ROSS-003314019-ROSS-003314020 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6499 | Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 | 92+3874(3) | Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in Goldberg v. Kelly, supra, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. | Property interests are not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. U.S.C.A.Const. Amend. 14. | Are property interests created by the constitution? | Eminent Domain - Memo 180 - GP.docx | ROSS-003284204-ROSS-003284205 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6500 | Westfield Ins. Companies v. Econ. Fire & Cas. Co., 623 N.W.2d 871 | 307A+2 | On appeal, Westfield argues that "[i]n making its coverage determination, the district court went beyond the specific terms of the policy and used extrinsic evidence to ascertain the reasonable expectations of the insured." Westfield contends, therefore, that the district court "made a finding of fact" that the Universal policy provided coverage and that this finding is binding on this court because it is supported by substantial evidence. To the extent that the district court did, in fact, resolve a contested issue of fact in ruling on the reasonable expectations issue, its decision was improper. A motion for adjudication of law points is not intended to be used to resolve factual disputes, but rather to determine "legal matters on uncontroverted pleadings." Mortensen, 590 N.W.2d at 38. As Westfield's argument illustrates, the issue of reasonable expectations is a factual matter, not a legal matter. Moreover, the record shows no uncontroverted pleadings establishing the factual predicates for application of the reasonable expectations doctrine. | A motion for adjudication of law points is not intended to be used to resolve factual disputes; rather, it is intended to determine legal matters on uncontroverted pleadings. | Is a motion for adjudication of law points intended to be used to resolve factual disputes? | Pretrial Procedure - Memo # 4 - C - SU.docx | ROSS-003298048 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6501 | Dunn & Black, P.S. v. United States, 366 F. Supp. 2d 1008 | 170B+3079(8) | Equitable subrogation is a state law doctrine and therefore whether equitable subrogation applies in this case presents a question of Idaho law. In Idaho, the doctrine of subrogation is not administered as a legal right but the principle is applied to subserve the ends of justice and to do equity. Hoopes v. Hoopes, 124 Idaho 518, 520, 861 P.2d 88, 90 (1993). It does not rest on contract and no general rule can be laid down which will afford a test in all cases for its application, and whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case. Houghtelin v. Diehl, 47 Idaho 636, 639"40, 277 P. 699, 700 (1929). | Whether equitable subrogation applies in a case presents a question of state law; whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case. | Does the question of whether equitable subrogation applies to any particular case depend upon the peculiar facts and circumstances of such case? | Subrogation - Memo # 462 - C - SA.docx | LEGALEASE-00011222- LEGALEASE-00011223 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6502 | Enright v. Lehmann, 735 N.W.2d 326 | 366+1 | We note, as a side matter, that subrogation stems from the equitable powers of the court, which must give due regard to the legal and equitable rights of others. United Carolina Bank v. Beesley, 663 A.2d 574, 576 (Me.1995). Subrogation will not be enforced to the prejudice of other rights of equal rank or to the injury of innocent third persons. Compania Anonima Venezolana De Navegacion v. A.J. Perez Exp. Co., 303 F.2d 692, 697 (5th Cir.1962). Enright's argument for subrogation on the equities of this case is not particularly strong because Lehmann's wife, who is not indebted to Enright, contributed all the funds in the joint accounts. | Subrogation stems from the equitable powers of the court, which must give due regard to the legal and equitable rights of others; subrogation will not be enforced to the prejudice of other rights of equal rank or to the injury of innocent third persons. | "Does subrogation stem from the equitable powers of the court, which must give due regard to the legal and equitable rights of others?" | Subrogation - Memo # 481 - C - SA.docx | ROSS-003299005-ROSS-003299006 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 6503 | Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307 | 366+1 | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. 15 Couch on Insurance 3d " 217:5 (rev.2004). Indemnification differs from subrogation in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment. 15 Couch on Insurance 3d " 217:5 (rev.2004). | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. | Are indemnification and subrogation devices that are used to place the entire burden for a loss on the party that is ultimately liable for it? | Subrogation - Memo # 517 - C - SU.docx | ROSS-003311345-ROSS-003311346 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 6504 | In re Deuel, 361 B.R. 509 | 366+1 | Subrogation is a derivative right whereby one party is substituted in the place of another with reference to a lawful claim, demand, or right. In re Hamada, 291 F.3d 645, 649 (9th Cir.2002). Equitable subrogation is a legal fiction and because it is a creature of equity it "is enforced solely for the purpose of accomplishing the ends of substantial justice." Hamada, 291 F.3d at 649 (citation omitted). The doctrine is governed by state law and one of the requirements of California law is that its application must "not work an injustice to the rights of others." Golden Eagle Ins. Co. v. First Nationwide Fin. Corp., 26 Cal.App.4th 160, 31 Cal.Rptr.2d 815, 821 (1994); Hamada, 291 F.3d at 651 (same); M. Lilly, Subrogation of Mortgages in California: a Comparison with the Restatement and Proposals for Change, 48 UCLA L.Rev. 1633, 1660"61 at n. 120 and accompanying text (2001). | Under California law, equitable subrogation is legal fiction, and because it is creature of equity it is enforced solely for purpose of accomplishing ends of substantial justice. | Is equitable subrogation a legal fiction and enforced solely for purpose of accomplishing the ends of substantial justice? | Subrogation - Memo # 577 - ES.docx | ROSS-003298603-ROSS-003298604 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6505 | Harris v. Am. Prot. Ins. Co., 158 S.W.3d 614 | 366+1 | Subrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy. Black's Law Dictionary 1467 (8th ed.2004). Application of the doctrine is said to be "the purest of equities," and Texas courts are particularly hospitable to it. Interfirst Bank Dallas, N.A. v. U.S. Fidelity & Guar. Co., 774 S.W.2d 391, 397 (Tex.App.-Dallas 1989, writ denied). Equitable subrogation is not dependent upon contract, but arises by operation of law or by implication in equity to prevent injustice. Id. | "Equitable subrogation" is not dependent upon contract, but arises by operation of law or by implication in equity to prevent injustice. | Is equitable subrogation dependent upon contract or arise by operation of law or by implication in equity to prevent injustice? | 043900.docx | LEGALEASE-00121080- LEGALEASE-00121081 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6506 | In re Wiley, 438 B.R. 331 | 366+1 | In Dairyland Ins. Co. v. Herman, 1998"NMSC"005, 23, 124 N.M. 624, 631, 954 P.2d 56, 63 (1997), the New Mexico Supreme Court discussed the concept of subrogation. Subrogation is an equitable remedy of civil law origin whereby through a supposed succession to the legal rights of another, a loss is put ultimately on that one who in equity and good conscience should pay it. It is a remedy for the benefit of one secondarily liable, who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor. Id. (citing United States Fidelity & Guar. Co. v. Raton Natural Gas Co., 86 N.M. 160, 162, 521 P.2d 122, 124 (1974)).See also Restatement (Third) of Suretyship and Guaranty " 27 cmt. a (1967): Subrogation is a term used by the law to describe the remedy by which, when the property of one person is used to discharge a duty of another or a security interest or lien upon property of another, under such circumstances that the other will be unjustly enriched by the retention of the benefit thus conferred, the former is placed in the position of the obligee or lienholder. | Under New Mexico law, "subrogation" is equitable remedy of civil law origin, whereby, through a supposed succession to legal rights of another, a loss is put ultimately on the one who in equity and good conscience should pay it. | Is subrogation or equitable subrogation a remedy for the benefit of one secondarily liable? | 044091.docx | LEGALEASE-00121699- LEGALEASE-00121700 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6507 | Miller v. Rosewick Rd. Dev., 214 Md. App. 275 | 30+10 | Although "ordinarily, a party may not appeal from a judgment to which he/she consented," Bryant v. Howard Cnty. Dept. of Soc. Servs. ex rel. Costley, 387 Md. 30, 42, 874 A.2d 457 (2005), it may, nonetheless, seek a judicial remedy, by invoking the procedures set forth in Title 2 of the Maryland Rules, if there is a failure by any party to abide by the terms to which he or she had agreed. According to Maryland 2"631, judgments "may be enforced only as authorized by [the Maryland Rules] or by statute." As the consent order in this case provided for the establishment of a liquidating trust, the statute to which we turn is section 14"101 of the Estates and Trusts Article. That section provides that a "court having equity jurisdiction has general superintending power with respect to trusts." Md.Code (1974, 2011 Repl.Vol.), " 14"101 of the Estates & Trusts Article ("ET").As appellees point out, such "superintending power would include the power to remove a fiduciary pursuant to" ET " 15"112. | Although ordinarily, a party may not appeal from a judgment to which the party consented, the party may, nonetheless, seek a judicial remedy, by invoking the procedures set forth in rules governing enforcement of judgments, if there is a failure by any party to abide by the terms to which he or she had agreed. Md.Rule 2-631. | Can a party appeal from a judgment to which the party consented? | 008150.docx | LEGALEASE-00121894-LEGALEASE-00121895 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6508 | Great N. Ins. Co. v. ADT Sec. Servs., 517 F. Supp. 2d 723 | 113+1 | Course of dealing and usage of trade are distinguishable from course of performance, the latter of which refers to a "sequence of conduct between the parties subsequent to formation of the contract during performance of the terms of the contract[,]" and may be used only to interpret a contract. J.W.S. Delavau, 810 A.2d at 683"84 (citations omitted). | Under Pennsylvania law, course of dealing and usage of trade are distinguishable from course of performance, the latter of which refers to a sequence of conduct between the parties subsequent to formation of the contract during performance of the terms of the contract, and may be used only to interpret a contract. | Is course of dealing and usage of trade distinguishable from course of performance? | Customs & Usage - Memo 27 - TH.docx | ROSS-003283346-ROSS-003283347 | SA, Sub | 0.1 | 0 | 0 | 1 | 1 | |
| 6509 | Texaco v. Short, 454 U.S. 516 | 148+2.13 | In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property-and not the action of the State-that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking." | It is owner's failure to make any use of property, not action of state, that causes lapse of property right under Indiana Dormant Mineral Interests Act, and, therefore, there is no "taking" that requires compensation. IC 32-5-11-1 to 32-5-11-8 (1976 Ed.); U.S.C.A.Const.Amend. 14. | "Can the owner's failure to make any use of the property that causes the lapse of the property right, be considered taking that requires compensation?" | 017426.docx | LEGALEASE-00121914-LEGALEASE-00121915 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 6510 | Thomas v. Lloyd, 17 S.W.3d 177 | 289+623 | "The true method of determining whether, as between partners themselves, land standing in the names of individuals is to be treated as partnership property is to ascertain from the conduct of the parties and their course of dealing, the understanding and intention of the partners themselves, which, when ascertained, unquestionably should control." State Auto. and Cas. v. Johnson, 766 S.W.2d 113, 122[5] (Mo.App.1989); Hudson v. French, 211 Mo.App. 175, 241 S.W. 443, 446[5] (1922). Whether real estate titled in the names of individual partners is partnership property is a question of fact and the burden of proof is on the one alleging that the ownership does not accord with the legal title. 68 C.J.S. Partnership " 75, at 277 (1998). | Whether real estate titled in the names of individual partners is partnership property is a question of fact and the burden of proof is on the one alleging that the ownership does not accord with the legal title. | Is property titled in the name of an individual partner a partnership property? | 021869.docx | LEGALEASE-00122530-LEGALEASE-00122531 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6511 | Gosselin v. Webb, 242 F.3d 412 | 289+441 | We begin our review by noting, as did the district court, that the individual Appellees were not in fact partners in a law firm. They shared office space and certain expenses and practiced under the "trade name Field, Hurley, Webb & Sullivan (collectively "the group"). Appellees' Brief at 1. Gosselin, therefore, relies on the doctrine of partnership by estoppel to hold Appellees liable for O'Dea's alleged malpractice. To prevail under this doctrine, a plaintiff must prove four elements: "(1) that the would-be partner has held himself out as a partner; (2) that such holding out was done by the defendant directly or with his consent; (3) that the plaintiff had knowledge of such holding out; and (4) that the plaintiff relied on the ostensible partnership to his prejudice." Atlas Tack Corp. v. DiMasi, 37 Mass.App.Ct. 66, 637 N.E.2d 230, 232 (1994) (quoting Brown v. Gerstein, 17 Mass.App.Ct. 558, 460 N.E.2d 1043, 1052 (1984)). Evidence of "holding out" may consist of "words spoken or written or ... conduct." Mass. Gen. Laws ch. 108A, " 16(1). Thus, a plaintiff may establish the first two elements of his claim by pointing not only to what the putative partners have said, but also to what they did. | To prevail under doctrine of partnership by estoppel under Massachusetts law, plaintiff must prove four elements: (1) that the would-be partner has held himself out as a partner, (2) that such holding out was done by defendant directly or with his consent, (3) that plaintiff had knowledge of such holding out, and (4) that plaintiff relied on the ostensible partnership to his prejudice. | What are the elements of partnership by estoppel? | Partnership - Memo 164 - RK.docx | ROSS-003284241-ROSS-003284242 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 6512 | Gillispie v. Goodyear Serv. Stores, 258 N.C. 487 | 302+193(5) | When a complaint alleges defendant is indebted to plaintiff in a certain amount and such debt is due, but does not allege in what manner or for what cause defendant became indebted to plaintiff, it is demurrable for failure to state facts sufficient to constitute a cause of action. Moore v. Hobbs, 79 N.C. 535; Griggs v. Griggs, 213 N.C. 624, 627, 197 S.E. 165. | A complaint alleging that defendant is indebted to plaintiff in a certain amount and that such debt is due, but not alleging in what manner or for what cause defendant became indebted to plaintiff, is demurrable for failure to state facts sufficient to constitute cause of action. | "Is a complaint which alleges indebtedness but does not allege the manner or cause of indebtedness, demurrable?" | 022927.docx | LEGALEASE-00122076-LEGALEASE-00122077 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 6513 | Hand v. Pettitt, 258 Ga. App. 170 | 307A+3 | The grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care, because it seeks to preclude by pre-trial evidentiary ruling on the admission of evidence without the trial court having any evidentiary foundation for the ruling in the context of the trial. Homebuilders Assn. of Ga. v. Morris, 238 Ga.App. 194, 195, 518 S.E.2d 194 (1999). Where the exclusion of evidence is required as a matter of law, the trial court does not abuse its discretion in granting a motion in limine. Id. at 197, 518 S.E.2d 194; American Petroleum Products v. Mom & Pop Stores, 231 Ga.App. 1, 7(3), 497 S.E.2d 616 (1998). Thus, "[b]y its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." (Citation omitted.) Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). | Where the exclusion of evidence is required as a matter of law, a trial court does not abuse its discretion in granting a motion in limine. | "Where the exclusion of evidence is required as a matter of law, does a trial court abuse its discretion in granting a motion in limine?" | Pretrial Procedure - Memo # 151 - C - CRB.docx | ROSS-003286032-ROSS-003286033 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6514 | Hamilton v. Thomasville Med. Assocs., 187 N.C. App. 789 | 307A+3 | A motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling and will not be reversed absent an abuse of discretion. Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Industrial Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (emphasis supplied) (internal citations and quotation omitted).Judge Ford's denial of defendants' motion in limine to exclude plaintiff's experts' testimony on 3 November 2006 was "subject to modification during the course of the trial." Id. The trial court did not err by revisiting and considering defendants' motion in limine on 12 February 2007. This assignment of error is overruled. | The court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature, and therefore, the court's ruling on the motion is subject to modification during the course of the trial. | Is the court's ruling on a motion in limine subject to modification during the course of the trial? | Pretrial Procedure - Memo # 176 - C - CRB.docx | ROSS-003308710-ROSS-003308711 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 6515 | Stephens v. Rakes, 235 W. Va. 555 | 106+99(6) | ""Once a trial judge rules on a motion in limine, that ruling becomes the law of the case unless modified by a subsequent ruling of the court. A trial court is vested with the exclusive authority to determine when and to what extent an in limine order is to be modified." Syl. Pt. 4, Tennant v. Marion Health Care Foundation, 194 W.Va. 97, 459 S.E.2d 374 (1995)." Syl. Pt. 2, Adams v. Consol. Rail Corp., 214 W.Va. 711, 591 S.E.2d 269 (2003). | Once a trial judge rules on a motion in limine, that ruling becomes the law of the case unless modified by a subsequent ruling of the court. Rules of Evid., Rule 103(c). | "Once a trial judge rules on a motion in limine, does that ruling become the law of the case unless modified by a subsequent ruling of the court?" | 024218.docx | LEGALEASE-00122027-LEGALEASE-00122028 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 6516 | Three Way v. Burton Enterprises, 177 P.3d 219 | 307A+3 | "The purpose of a motion in limine is to obtain the court's pretrial ruling on the admissibility of evidence." Reichert v. Phipps, 2004 WY 7, n.1, 84 P.3d 353, 355 n.1 (Wyo.2004). As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. Capshaw v. WERCS, 2001 WY 68, 28 P.3d 855, 857 (Wyo.2001). Evidence that is not relevant may be found inadmissible via a motion in limine. | As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. | Is the question of whether or not to grant a motion in limine left to the sound discretion of the district court as with other evidentiary decisions? | 024246.docx | LEGALEASE-00121888-LEGALEASE-00121889 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6517 | In re Darosa, 318 B.R. 871 | 366+1 | "In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right. It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another." Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645, 649 (9th Cir.2002). When the doctrine of subrogation applies, the party paying the loss or claim (the subrogee) steps into the shoes of the person who suffered the loss (the subrogor), thereby allowing the subrogee to succeed to the legal rights and claims of the subrogor with respect to the loss or claim. | In general terms, "subrogation" is substitution of one party in place of another with reference to a lawful claim, demand, or right. | "Is subrogation the substitution of one party in place of another with reference to a lawful claim, demand, or right, by which the party paying the loss or claim, that is, the ""subrogee,"" is placed in the shoes of the person who suffered the loss, the ""subrogor""?" | 043821.docx | LEGALEASE-00121784-LEGALEASE-00121785 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6518 | River Bar Farms v. Moore, 83 Ark. App. 130 | 401+5.1 | Ordinarily, if the effect of a decree is to reach and operate upon the land itself, it is regarded as a proceeding in rem, and is a local action, which must be brought in the county where the land is situated. Drum v. McDaniel, 215 Ark. 690, 222 S.W.2d 59 (1949); Estate of Sabbs v. Cole, 57 Ark.App. 179, 944 S.W.2d 123 (1997). Arkansas Code Annotated section 16"60"101 (1987) provides that actions for the recovery of real property, or of an estate or interest therein, must be brought in the county in which the subject of the action, or some part thereof, is situated. It is clear that the land over which appellees established a prescriptive easement is in Perry County. | Ordinarily, if the effect of a decree is to reach and operate upon the land itself, it is regarded as a proceeding in rem, and is a local action, which must be brought in the county where the land is situated. A.C.A. S 16-60-101. | Is a proceeding in rem if the effect of the decree is to reach and operate upon the land itself? | 047526.docx | LEGALEASE-00121865-LEGALEASE-00121866 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6519 | Ward v. Stanford, 443 S.W.3d 334 | 241+95(1) | As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. See Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex.1997) (quoting S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996)). Quoting Houston Water"Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37"38 (1888), the Murphy court explained a "legal injury" is "an injury giving cause of action by reason of its being an invasion of a plaintiff's right be the damage however slight.' " Murphy, 964 S.W.2d at 270 (quoting Kennedy) | As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. | Does a cause of action accrue when a wrongful act causes some legal injury? | Action - Memo # 29 - C - LK.docx | ROSS-003284510-ROSS-003284511 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6520 | Morris v. Ernst & Young, LLP, 834 F.3d 975 | 25T+123 | When an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense of illegality.9 U.S.C. " 2; Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. The term may be excised, or the district court may decline enforcement of the contract altogether. See 19 Richard Lord, 8 Williston on Contracts " 19:70 (4th ed. 1990) ("Illegal portions of a contractual agreement may be severed if the illegal provision is not central to the parties' agreement."); see also Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 433 (9th Cir. 2015) (" "generally applicable" contract defense" is "preserved by " 2's saving clause"). | When an illegal provision not targeting arbitration is found in an arbitration agreement, the Federal Arbitration Act (FAA) treats the contract like any other; the FAA recognizes a general contract defense of illegality. 9 U.S.C.A. S 2. | How does the Federal Arbitration Act (FAA) treat contracts when an illegal provision not targeting arbitration is found in an arbitration agreement? | 007128.docx | LEGALEASE-00123880-LEGALEASE-00123881 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6521 | Garcia v. Chapman, 911 F. Supp. 2d 1222 | 221+342 | Regarding the act of state doctrine, Chapman asserts the Court cannot "inquir[e] into the validity of a recognized foreign sovereign's public acts committed within its own territory." (Mot. Dismiss 29 (quoting Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1293 (11th Cir.2001))). The act of state doctrine "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State. It is clear, however, from both history and the ipinions [sic] of [the Supreme] Court that the doctrine is not an inflexible one." First Nat. City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 763, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972). Although the doctrine is not inflexible, jus cogens norms, which are afforded the highest status under international law, are exempt from the act of state doctrine because they "constitute norms from which no derogation is permitted." Sarei, 671 F.3d at 757. State torture violates such a jus cogens norm. See Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 717 (9th Cir.1992) ("Given this extraordinary consensus, we conclude that the right to be free from official torture is fundamental and universal, a right deserving of the highest status under international law, a norm of jus cogens. That states engage in official torture cannot be doubted, but all states believe it is wrong, all that engage in torture deny it, and no state claims a sovereign right to torture its own citizens."). There is support that prolonged arbitrary detentions likewise violate jus cogens norms. See Restatement (Third) of Foreign Relations Law " 702, comment n (1987) ("Not all human rights norms are peremptory norms (jus cogens), but those in clauses (a) to (f) of this section[, which include prolonged arbitrary detention,] are, and an international agreement that violates them is void."). "Thus, Plaintiffs' claims that allege jus cogens violations are not barred by the act of state doctrine." Sarei, 671 F.3d at 757. | Although the act of state doctrine, precluding any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State, is not inflexible, jus cogens norms, which are afforded the highest status under international law, are exempt from the act of state doctrine because they constitute norms from which no derogation is permitted. | Why are jus cogens norms exempt from the act of the state doctrine? | 019737.docx | LEGALEASE-00123822-LEGALEASE-00123823 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 6522 | Garcia v. Chapman, 911 F. Supp. 2d 1222 | 221+342 | Regarding the act of state doctrine, Chapman asserts the Court cannot "inquir[e] into the validity of a recognized foreign sovereign's public acts committed within its own territory." (Mot. Dismiss 29 (quoting Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1293 (11th Cir.2001))). The act of state doctrine "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State. It is clear, however, from both history and the opinions [sic] of [the Supreme] Court that the doctrine is not an inflexible one." First Nat. City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 763, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972). Although the doctrine is not inflexible, jus cogens norms, which are afforded the highest status under international law, are exempt from the act of state doctrine because they "constitute norms from which no derogation is permitted." Sarei, 671 F.3d at 757 (internal quotation marks and citations omitted). State torture violates such a jus cogens norm. See Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 717 (9th Cir.1992) ("Given this extraordinary consensus, we conclude that the right to be free from official torture is fundamental and universal, a right deserving of the highest status under international law, a norm of jus cogens.. That states engage in official torture cannot be doubted, but all states believe it is wrong, all that engage in torture deny it, and no state claims a sovereign right to torture its own citizens.").There is support that prolonged arbitrary detentions likewise violate jus cogens norms. See Restatement (Third) of Foreign Relations Law " 702, comment n (1987) ("Not all human rights norms are peremptory norms (jus cogens), but those in clauses (a) to (f) of this section[, which include prolonged arbitrary detention,] are, and an international agreement that violates them is void."). "Thus, Plaintiffs' claims that allege jus cogens violations are not barred by the | Although the act of state doctrine, precluding any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State, is not inflexible, jus cogens norms, which are afforded the highest status under international law, are exempt from the act of state doctrine because they constitute norms from which no derogation is permitted. | Are jus cogens norms exempt from the act of state doctrine? | International Law - Memo # 130 - C - SA.docx | LEGALEASE-00013047-LEGALEASE-00013049 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6523 | Oregon-Pac. Forest Prod. Corp. v. Welsh Panel Co., 248 F. Supp. 903 | 221+134 | All nationals of the United States, including plaintiff, are bound by this provision. This treaty, insofar as it affects the parties, is read into and becomes a part of the contract. A treaty is the supreme law of the land. American Trust Co. v. Smyth, 247 F.2d 149 (9th Cir. 1957); Z & F Assets Realization Corp. v. Hull, 72 App.D.C. 234, 114 F.2d 464 (1940), cert. granted 311 U.S. 632, 61 S.Ct. 51, 85 L.Ed. 402, aff'd 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288 (1941). Even a state law must yield, when it is inconsistent with or impairs the policy or provisions of a treaty, and a state has no power to refuse enforcement of rights based on a federal policy which is evidenced by an international compact or agreement. United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). | A state has no power to refuse enforcement of rights based on a federal policy which is evidenced by an international compact or agreement. | Does a state have the power to refuse enforcement of rights based on a federal policy which is evidenced by an international compact or agreement? | International Law - Memo # 197 - C - PHS.docx | ROSS-003298263-ROSS-003298264 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6524 | In re Grand Jury Subpoena dated Aug. 9, 2000, 218 F. Supp. 2d 544 | 221+342 | The act of state doctrine counsels a court to avoid examining the validity of an official act of a sovereign state taken on its own soil. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.").The guiding principle of the act of state doctrine is that "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). "The major underpinning of the act of state doctrine is the policy of foreclosing court adjudications involving the legality of acts of foreign states on their own soil that might embarrass the Executive Branch of our Government in the conduct of our foreign relations." Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 697, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (plurality opinion); see Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("It arises out of the basic relationships between branches of government in a system of separation of powers. It concerns the competency of dissimilar institutions to make and implement particular kinds of decisions in the area of international relations."). | Act of state doctrine counsels a court to avoid examining the validity of an official act of a sovereign state taken on its own soil. | Does the act of state doctrine counsel a court to avoid examining the validity of an official act of a sovereign state taken on its own soil? | International Law - Memo # 263 - C - ANC.docx | ROSS-003310540-ROSS-003310541 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 6525 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221+342 | As noted above, the act of state doctrine is not rendered inapposite simply because international law or jus cogens norms are violated. As the Court noted in Sabbatino, "the act of state doctrine is applicable even if international law has been violated." 376 U.S. at 431, 84 S.Ct. 923. The fact that the challenged action of the foreign state violates clear international consensus informs the doctrinal analysis (i.e. the first Sabbatino factor), not the threshold question of whether there is an act of state. Id. at 428, 84 S.Ct. 923. The Sabbatino analysis presupposes a violation of international law. The act of state doctrine is not compelled by international law. Sabbatino, 376 U.S. at 427, 84 S.Ct. 923. As a corollary, neither is it controlled by international law. Moreover, as previously discussed, Sosa made clear that specific deference to the political branches, as the act of state doctrine implies, may be warranted even where the alleged international law violations meets the clear definition test. 124 S.Ct. at 2766, n. 21. | Act of state doctrine is not rendered inapposite simply because international law or jus cogens norms are violated. | Is the act of state doctrine rendered inapposite simply because international law or jus cogens norms are violated? | 020133.docx | LEGALEASE-00122937-LEGALEASE-00122938 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 6526 | Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 | 221+151 | Like foreign sovereign immunity, head of state immunity is a matter of grace and comity, rather than a matter of right. Lafontant v. Aristide, 844 F.Supp. at 132, citing Hilton v. Guyot, 159 U.S. 113, 163"164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Only individuals whom the United States recognizes as legitimate heads of state qualify; whether an individual qualifies as a head of state is a decision committed exclusively to the political branches and the judiciary is bound by their determinations. Id. at 132"133, citing Sabbatino, 376 U.S. at 410. See also United States v. Noriega, 746 F.Supp. 1506 (S.D.Fla.1990); United States v. Pink, 315 U.S. 203, 230, 62 S.Ct. 552, 86 L.Ed. 796 (1942). | Only individuals whom United States recognizes as legitimate heads of state qualify for head of state immunity; whether individual qualifies as head of state is decision committed exclusively to political branches and judiciary is bound by their determinations. | Do only individuals whom the United States recognizes as legitimate heads of state qualify for head of state immunity? | 020315.docx | LEGALEASE-00123622-LEGALEASE-00123623 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 6527 | Menendez v. Saks & Co., 485 F.2d 1355 | 221+357 | We find no legally significant distinction between the circumstances surrounding the attempted seizure here and those in Republic of Iraq, where we denied legal effect to Iraq's purported confiscation of former King Faisal's money deposits and shares of stock held in New York by a New York bank. Judge Friendly there pointed out that the Sabbatino act of state doctrine, which applies to a foreign state's seizure of property located within its territory, does not protect a foreign state's attempted seizure of debts owed by persons outside of the foreign state's territory. For purposes of the act of state doctrine, a debt is not "located" within a foreign state unless that state has the power to enforce or collect it. We concluded in Republic of Iraq that we will not give legal effect to a foreign state's confiscation, without compensation, of obligations which it cannot enforce on its own if the seizure is inconsistent with the laws and public policy of New York. See in accord Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co., 392 F.2d 706 (5th Cir.), cert. denied, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). | For purposes of the act of state doctrine, a debt is not "located" within a foreign state unless that state has the power to enforce or collect it. | "For the act of state doctrine purposes, is debt located within a foreign state unless that state has the power to enforce or collect it?" | 020374.docx | LEGALEASE-00123699-LEGALEASE-00123700 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6528 | Eckert Int'l v. Gov't of Sovereign Democratic Republic of Fiji, 834 F. Supp. 167 | 221+342 | Fiji fares no better in its attempt to invoke the act of state doctrine. Under that doctrine, courts may not sit in judgment of a sovereign state's public acts performed within that state's boundaries. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (precluding American courts from inquiring into the validity of Cuban expropriation decree); Underhill v. Fernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) (shielding Venezuelan military commander from liability for wrongs inflicted against American citizen during Venezuelan revolution). The doctrine's purpose is to prevent judicial pronouncements that would disrupt this country's foreign relations. Sabbatino, 376 U.S. at 428, 84 S.Ct. at 940; see also Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). | Under "act of state doctrine," courts may not sit in judgment of sovereign state's public acts performed within that state's boundaries. | "Under the act of state doctrine, may courts sit in judgment of a sovereign state's public acts performed within that state's boundaries?" | 020386.docx | LEGALEASE-00123748-LEGALEASE-00123749 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 6529 | Nat'l Am. Corp. v. Fed. Republic of Nigeria, 448 F. Supp. 622 | 221+342 | By invoking the act of state doctrine, defendants assert a blanket right to repudiate all their commercial obligations flowing from the original contract and letter of credit and the later Agreements of Discharge. As the Second Circuit interprets the act of state doctrine, it operates only to preclude issues from consideration an effect which does not necessarily render an entire claim non justiciable. Thus, a complete defense to this claim, if it existed, would lie only in sovereign immunity. While the doctrines developed separately and remain distinct, neither serves to insulate these defendants in this case from all the consequences of their actions. | Act of state doctrine operates only to preclude issues from consideration, an effect which does not necessarily render entire claim nonjusticiable. | "Does the act of state doctrine operate only to preclude issues from consideration, an effect which does not necessarily render the entire claim non justiciable?" | International Law - Memo # 551 - C - SA.docx | ROSS-003284296-ROSS-003284297 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6530 | Dillingham-Ray Wilson v. City of Los Angeles, 182 Cal. App. 4th 1396 | 307A+3 | In instances in which an in limine ruling does not preclude an entire claim but instead limits the evidence that will be offered to prove a claim, we review the ruling for an abuse of discretion. (Katiuzhinsky v. Perry (2007) 152 Cal.App.4th 1288, 1294, 62 Cal.Rptr.3d 309.) "[I]f the trial court's in limine ruling was based upon a misinterpretation of applicable law, an abuse of discretion has been shown." (Ibid.). | If the trial court's in limine ruling was based upon a misinterpretation of applicable law, an abuse of discretion has been shown. | "If the trial court's in limine ruling was based upon a misinterpretation of applicable law, has an abuse of discretion has been shown?" | 024058.docx | LEGALEASE-00123044-LEGALEASE-00123045 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 6531 | Evans v. Wal-Mart Stores, 976 S.W.2d 582 | 307A+3 | We first address whether these issues were preserved for appellate review. We are bound by Rule 84.13(a), which states in part, "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." A trial court's ruling on a motion in limine is interlocutory in nature and thus is not appealable. Eckert v. Thole, 857 S.W.2d 543, 546 (Mo.App. E.D.1993). An in limine ruling "is merely a preliminary expression of the court's opinion as to the admissibility of the evidence" and is subject to change when presented in the proper perspective in the trial of the case. Brown v. Hamid, 856 S.W.2d 51, 55 (Mo.banc 1993) (citing Annin v. Bi"State Development Agency, 657 S.W.2d 382, 385 (Mo.App. E.D.1983)). To preserve the issue of exclusion of evidence for appeal, an offer of proof must be made at trial demonstrating why the evidence is relevant and admissible. Id. | An in limine ruling is merely a preliminary expression of the court's opinion as to the admissibility of the evidence and is subject to change when presented in the proper perspective in the trial of the case. | Is an in limine ruling a preliminary expression of the court's opinion regarding the admissibility of the evidence at issue? | Pretrial Procedure - Memo # 146 - C - CRB.docx | ROSS-003302352-ROSS-003302354 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 6532 | Gregory v. Kilbride, 150 N.C. App. 601 | 307A+3 | A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. The granting or denying of a motion in limine is not appealable. To preserve the evidentiary issue for appeal where a motion in limine has been granted, the non-movant must attempt to introduce the evidence at trial. Condellone v. Condellone, 129 N.C.App. 675, 681, 501 S.E.2d 690, 695, review denied, 349 N.C. 354, 517 S.E.2d 889 (1998). | A trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. | Is a trial court's ruling on a motion in limine preliminary and is subject to change depending on the actual evidence offered at trial? | Pretrial Procedure - Memo # 301 - C - CRB.docx | ROSS-003309669-ROSS-003309671 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 6533 | Smith v. Associated Nat. Gas Co., 7 S.W.3d 530 | 307A+3 | We determine that this point has no merit. We first note that "[a]n in limine ruling is a "preliminary expression of the court's opinion as to the admissibility of evidence" and is subject to change during the course of the trial." Wilkerson v. Prelutsky, 943 S.W.2d 643, 646 (Mo. banc 1997) (quoting Brown v. Hamid, 856 S.W.2d 51, 55 (Mo. banc 1993)). Therefore, "a complaint about a trial court's in limine ruling preserves nothing for appellate review." Sullivan v. Spears, 871 S.W.2d 75, 76 (Mo.App.1994); see also Bushong v. Marathon Elec. Mfg. Corp., 719 S.W.2d 828, 840 (Mo.App.1986). "If the court rules in limine that certain evidence will be excluded, the proponent still must make an offer of proof." Sullivan, 871 S.W.2d at 76. "If the evidence is still excluded upon offer of proof, the proponent may predicate error on the exclusion." Id. | An in limine ruling is a preliminary expression of the court's opinion as to the admissibility of evidence and is subject to change during the course of the trial. | Is an in limine ruling a preliminary expression of the court's opinion as to the admissibility of evidence and is subject to change during the course of the trial? | Pretrial Procedure - Memo # 310 - C - ANC.docx | ROSS-003315072-ROSS-003315073 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6534 | Forsyth Cty. v. Martin, 279 Ga. 215 | 307A+3 | A motion in limine is a pretrial method of determining the admissibility of evidence. By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care. | A "motion in limine" is a pretrial method of determining the admissibility of evidence; by its very nature, the grant of a motion in limine suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. | Does the grant of a motion in limine excluding evidence suggest that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial? | Pretrial Procedure - Memo # 315 - C - ANC.docx | ROSS-003281781-ROSS-003281782 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 6535 | First State Ins. Co. v. Superior Court, 79 Cal. App. 4th 324 | 307A+1 | Standards of Judicial Administration section 19, former subdivision (c), Government Code section 68607 and the currently applicable California Rules of Court all recognize that complex litigation presents problems not presented by other less complicated cases. "The complex litigation procedure is intended to facilitate pretrial resolution of evidentiary and other issues, and to minimize the time and expense of lengthy or multiple trials." (Asbestos Claims Facility v. Berry & Berry, supra, 219 Cal.App.3d at p. 14, 267 Cal.Rptr. 896. | Complex litigation procedure is intended to facilitate pretrial resolution of evidentiary and other issues, and to minimize the time and expense of lengthy or multiple trials. West's Ann.Cal.Gov.Code S 68607. | Is complex litigation procedure intended to facilitate pretrial resolution of evidentiary and other issues? | 032147.docx | LEGALEASE-00122787-LEGALEASE-00122788 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 6536 | Mollerson v. City of New York, 178 Misc. 2d 803 | 307A+1 | The deposition of Plaintiff Urmas M"llerson and the handwritten transcript thereof should be suppressed, pursuant to CPLR 3103(c). As a matter of elementary fairness, all parties to an action have the right to appear at and participate in all pre-trial and trial stages of an action, unless they waive their right to do so or exceptional circumstances occur, such as disruptiveness by the party (see, Matter of Guardianship of Daniel D., 49 N.Y.2d 788, 791, 426 N.Y.S.2d 729, 403 N.E.2d 451 [1980]; Lunney v. Graham, 91 A.D.2d 592, 593, 457 N.Y.S.2d 282 [1st Dept.1982] ). Both of those holdings were reversals where parties had been barred from appearances at their trials. Here, the other pro se Plaintiffs were denied the right to appear at the deposition of the pro se Plaintiff Urmas M"llerson, which was taken in their action number 1. This occurred in spite of this Court's having specifically stated in its February 3, 1998 Opinion that two of the pro se Plaintiffs could attend the depositions of the other two pro se Plaintiffs who do not speak English (the pro se Plaintiffs are from Estonia). That statement was made in light of the right of those Plaintiffs, and each Plaintiff, to attend all depositions, and to assuage the fears of the pro se Plaintiffs that an inaccurate translation could occur of the depositions of the non-English speaking pro se Plaintiffs (see generally, 9th Street Estates, Inc. v. Rohatycka, 160 Misc.2d 560, 610 N.Y.S.2d 430 [Civ.Ct., N.Y. County], mod., 162 Misc.2d 502, 619 N.Y.S.2d 487 [App.Term, 1st Dept.1994] ). Due to the violation by Defendants in action number 1 of the rights of the pro se Plaintiffs, the request of the pro se Plaintiffs for a protective order suppressing the entire deposition should be granted. | As a matter of elementary fairness, all parties to action have right to appear at and participate in all pretrial and trial stages of action, unless they waive their right to do so, or exceptional circumstances occur, such as disruptiveness by party. | Can all parties to action have right to appear at and participate in all pretrial and trial stages of action? | Pretrial Procedure - Memo # 517b - C - SPB.docx | ROSS-003283752-ROSS-003283753 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6537 | Kelly v. New W. Fed. Sav., 49 Cal. App. 4th 659 | 307A+3 | "Motions in limine are a commonly used tool of trial advocacy and management in both criminal and civil cases. Such motions are generally brought at the beginning of trial, although they may also be brought during trial when evidentiary issues are anticipated by the parties. In either event, they are argued by the parties, either orally or in writing or both, and ruled upon by the trial judge. The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence, supra, " 2011 at p. 1969.) "The advantage fof such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury." (Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337 [145 Cal.Rptr. 47].) Motions in limine serve other purposes as well. They permit more careful consideration of evidentiary issues than would take place in the heat of battle during trial. They minimize side-bar conferences and disruptions during trial, allowing for an uninterrupted flow of evidence. Finally, by resolving potentially critical issues at the outset, they enhance the efficiency of trials and promote settlements. [Citation.]" (People v. Morris (1991) 53 Cal.3d 152, 188, 279 Cal.Rptr. 720, 807 P.2d 949, disapproved on an unrelated ground in People v. Stansbury (1995) 9 Cal.4th 824, 830, 38 Cal.Rptr.2d 394, 889 P.2d 588.). | Usual purpose of motions in limine is to preclude presentation of evidence deemed inadmissible and prejudicial by moving party. | Is the usual purpose of motions in limine to preclude presentation of evidence deemed inadmissible and prejudicial by moving party? | Pretrial Procedure - Memo # 521 - C - CK.docx | ROSS-003310398-ROSS-003310400 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 6538 | Blanks v. Shaw, 171 Cal. App. 4th 336 | 307A+3 | "In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. " "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. [Citation.]"The advantage of such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury."[Citation.]" ' [Citation.] What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure." (Amtower v. Photon Dynamics, Inc. (2008) 158 Cal.App.4th 1582, 1593, 71 Cal.Rptr.3d 361.) Although trial courts may exercise their inherent powers to permit non-traditional uses of motions in limine p. 1595, 71 Cal.Rptr.3d 361), when used in such fashion they become substitutes for other motions, such as summary judgment motions, thereby circumventing "procedural protections provided by the statutory motions or by trial on the merits; they risk blindsiding the nonmoving party; and, in some cases, they could infringe a litigant's right to a jury trial. (Cal. Const., art. I, " 16.)" (Amtower v. Photon Dynamics, Inc., supra, at p. 1594, 71 Cal.Rptr.3d 361.). | The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. | Is the usual purpose of motions in limine to preclude presentation of evidence deemed inadmissible and prejudicial by moving party? | 032195.docx | LEGALEASE-00122803-LEGALEASE-00122804 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 6539 | Sculler v. Sculler, 348 N.J. Super. 374 | 307A+3 | This matter comes before the court by way of defendant's motion in limine for a clarification of the relative burdens that the parties bear when a spouse seeks equitable distribution of the increase in value of a pre-marital asset owned by the other spouse. As a general rule, in limine motions are inappropriate if they require the court to engage in an analysis of credibility or evidence yet to be presented. In such cases, the motions should ordinarily be denied until a sufficient predicate is established. Bellardini v. Krikorian, 222 N.J.Super. 457, 464, 537 A.2d 700 (App.Div.1988). They may, however, be used effectively to clarify legal issues in advance of trial, such as the need for expert testimony to prove a standard of care or deviation therefrom. Kelly v. Berlin, 300 N.J.Super. 256, 270, 692 A.2d 552 (App.Div.1997). | As a general rule, in limine motions are inappropriate if they require the court to engage in an analysis of credibility or evidence yet to be presented, and in such cases, the motions should ordinarily be denied until a sufficient predicate is established. | Are in limine motions inappropriate if they require the court to engage in an analysis of credibility or evidence yet to be presented? | Pretrial Procedure - Memo # 65 - C - VA.docx | ROSS-003322266-ROSS-003322267 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6540 | Manhattan Ice & Cold Storage v. City of Manhattan, 294 Kan. 60 | 307A+3 | A district judge " "has broad discretion in determining what evidence will be allowed in an eminent domain proceeding." " Mooney v. City of Overland Park, 283 Kan. 617, 619, 153 P.3d 1252 (2007) (quoting U.S.D. No. 464 v. Porter, 234 Kan. 690, 694, 676 P.2d 84 [1984] )."[A] motion in limine may be granted when a district court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial; and (2) The pretrial ruling is justified as opposed to a ruling during trial because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during the trial might unduly interrupt and delay the trial and inconvenience the jury; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. In determining if a pretrial ruling is justified a district court should weigh whether the court will be in a better position during trial to assess the value and utility of evidence and its potential prejudice." State v. Shadden, 290 Kan. 803, 816, 235 P.3d 436 (2010). | In determining if a pretrial ruling on a motion in limine is justified, a district court should weigh whether the court will be in a better position during trial to assess the value and utility of evidence and its potential prejudice. | What should a district court weigh in determining if a pretrial ruling is justified? | 041159.docx | LEGALEASE-00124063-LEGALEASE-00124064 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6541 | TNA Merch. Projects v. Fed. Energy Regulatory Comm'n, 857 F.3d 354 | 145+1 | In general, this court will "set aside a decision [by FERC] only if it is arbitrary and capricious or otherwise contrary to law." Envtl. Action, Inc. v. FERC, 939 F.2d 1057, 1061 (D.C. Cir. 1991).FERC's interpretation of the FPA, including its "jurisdictional provisions," however, "enjoy[s] Chevron deference." Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC, 475 F.3d 1277, 1279 (D.C. Cir. 2007); see S.C. Pub. Serv. Auth. v. FERC, 762 F.3d 41, 54 (D.C. Cir. 2014). When FERC has taken action pursuant to its delegated authority under the Act, "unless Congress has directly spoken to the contrary, or FERC has unreasonably or impermissibly interpreted the statute, we must defer to the Commission's construction of ambiguous provisions of the FPA." Transmission Access Policy Study Grp. v. FERC, 225 F.3d 667, 694 (D.C. Cir. 2000). | Federal Energy Regulatory Commission's (FERC) interpretation of the Federal Power Act (FPA), including its jurisdictional provisions, enjoys Chevron deference; as a result, when FERC has taken action pursuant to its delegated authority under the FPA, unless Congress has directly spoken to the contrary, or FERC has unreasonably or impermissibly interpreted the statute, the Court of Appeals must defer to FERC's construction of ambiguous provisions of the FPA. Federal Power Act, SS 1 et seq., 321, 16 U.S.C.A. SS 792 et seq., 791a. | Does the Federal Energy Regulatory Commissions (FERC) interpretation of the Federal Power Act (FPA) enjoy the Chevron deference? | 042261.docx | LEGALEASE-00124169-LEGALEASE-00124170 | Order, SA, Sub | 0.36 | 1 | 0 | 1 | 1 | 1 |
| 6542 | Feigenbaum v. Guaracini, 402 N.J. Super. 7 | 366+1 | Subrogation rights may be created in three different ways: "(1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002) (citing Culver, supra, 115 N.J. at 456, 559 A.2d 400). The doctrine of equitable subrogation should not be imposed " "where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application." " Culver, supra, 115 N.J. at 456, 559 A.2d 400 (quoting Ganger v. Moffett, 8 N.J. 73, 80, 83 A.2d 769 (1951)). Equitable subrogation may only be imposed "if the cause is just and enforcement is consonant with right and justice." Standard Acc. Ins., supra, 15 N.J. at 173, 104 A.2d 288. | Subrogation rights may be created in three different ways: (1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it. | How may subrogation rights be created? | 044243.docx | LEGALEASE-00123009-LEGALEASE-00123010 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6543 | Jo Ann Howard & Assocs., P.C. v. Cassity, 868 F.3d 637 | 13+4 | Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and in pari delicto defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. Walker v. James, 337 Mo. 750, 85 S.W.2d 876, 885 (1935). The in pari delicto defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses. | Under Missouri law, "in pari delicto defense" provides that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | What is the defense if a person cause an immoral act? | Action - Memo # 347.docx | ROSS-003315920-ROSS-003315921 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6544 | Webb's Fabulous Pharmacies v. Beckwith, 449 U.S. 155 | 222+32 | It is true, of course, that none of the creditor claimants had any right to the deposited fund until their claims were recognized and distribution was ordered. See Aron v. Snyder, 90 U.S.App.D.C. 325, 327, 196 F.2d 38, 40, cert. denied, 344 U.S. 854, 73 S.Ct. 92, 97 L.Ed. 663 (1952). That lack of immediate right, however, does not automatically bar a claimant ultimately determined to be entitled to all or a share of the fund from claiming a proper share of the interest, the fruit of the fund's use, that is realized in the interim. To be sure, " 28.33 establishes as a matter of Florida law that interest is to be earned on deposited funds. But the State's having mandated the accrual of interest does not mean the State or its designate is entitled to assume ownership of the interest. | Although none of debtor's creditor claimants had any right to interpleader fund deposited in registry of county court until their claims were recognized and distribution was ordered, that lack of immediate right did not automatically bar claimant ultimately determined to be entitled to all or a share of the fund from claiming proper share of the interest, nor did statute requiring interest to be earned on deposited funds require conclusion that state or its designate was entitled to assume ownership of interest. West's F.S.A. SS 28.24, 28.33; U.S.C.A.Const. Amends. 5, 14. | Does the State having mandated the accrual of interest mean the State or its designate is entitled to assume ownership of the interest? | Eminent Domain - Memo 235 - GP.docx | LEGALEASE-00014311-LEGALEASE-00014312 | Order, SA, Sub | 0.27 | 1 | 0 | 1 | 1 | 1 |
| 6545 | Allied Bank Int'l v. Banco Credito Agricola de Cartago, 566 F. Supp. 1440 | 221+342 | Even where the defense of sovereign immunity does not apply, nevertheless the act of state doctrine may prevent recovery. Empresa Cubana Exportadora, Inc. v. Lamborn & Co., 652 F.2d 231, 238"9 n. 11 (2d Cir.1981). The act of state doctrine is designed to avoid judicial action which would impinge upon the foreign relations of the United States. IAM v. OPEC, 649 F.2d 1354, 1359 (9th Cir.1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The doctrine ultimately derives from the separation of powers provided in the Constitution. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). | The act of state doctrine is designed to avoid judicial action which impinges upon the foreign relations of the United States. | Is the act of state doctrine designed to avoid judicial action which impinges upon the foreign relations of the United States? | International Law - Memo 584 - TH.docx | ROSS-003323517-ROSS-003323518 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6546 | Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F. Supp. 92 | 221+351 | The significance of the American Banana case has been somewhat obscured by virtue of the fact that Justice Holmes's opinion expounds at some length a restrictive view of Sherman Act jurisdiction, based upon the situs of primary conduct. This aspect of the opinion has been distinguished in subsequent international antitrust cases, e. g., United States v. Sisal Sales Corp., 274 U.S. 268, 276, 47 S.Ct. 592, 71 L.Ed. 1042 (1927); Continental Ore Co. v. Union Carbide & Carbon Corp., supra, 370 U.S. at 704-705, 82 S.Ct. 1404. But as those two cases intimate, and as other analyses clearly establish, the holding of American Banana that has endured is that the act of state doctrine bars a claim for antitrust injury flowing from foreign sovereign acts allegedly induced and procured by the defendant. This holding would appear directly to control the present case. | The act of state doctrine bars a claim for antitrust injury flowing from foreign sovereign acts allegedly induced and procured by defendant. | Does the act of state doctrine bar a claim for antitrust injury flowing from foreign sovereign acts? | International Law - Memo 609 - TH.docx | ROSS-003283943-ROSS-003283944 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6547 | Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, 889 F. Supp. 2d 912 | 24+763 | To state a claim under the law of nations, a complaint must "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms" that the Supreme Court has previously recognized, such as violation of safe conducts, infringements of the rights of ambassadors, or piracy. Sosa v. Alvarez"Machain, 542 U.S. 692, 724"25, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). The ATS "applies only to shockingly egregious violations of universally recognized principles of international law." Beanal, 197 F.3d at 167 (citation omitted). For example, Sosa held that the ATS did not confer jurisdiction on federal courts for tort claims related to an illegal detention of a Mexican national in Mexico, because the broad principles espoused by the plaintiff regarding illegal detentions merely expressed "an aspiration that exceeds any binding customary rule having the specificity we require." Sosa, 542 U.S. at 736"38, 124 S.Ct. 2739. Moreover, as the Second Circuit recently held in Kiobel, corporate liability for human rights violations is a similarly aspirational theory that lacks the specificity required under Sosa. | Alien Tort Statute (ATS) applies only to shockingly egregious violations of universally recognized principles of international law. 28 U.S.C.A. S 1350. | Does the Alien Tort Statute (ATS) apply only to shockingly egregious violations of universally recognized principles of international law? | International Law - Memo # 361 - MC.docx | ROSS-003298039-ROSS-003298041 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6548 | Nat'l Inst. of Agrarian Reform v. Kane, 153 So. 2d 40 | 221+321 | The highest court of our land has said that "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897).This appears to be the law of the land at the present time, and we will not depart from its mandate. | Every sovereign state is bound to respect independence of every other sovereign state, and courts of one country will not sit in judgment on acts of government of another done within its own territory. | Are United States courts are bound to respect independence of every other sovereign state? | 020396.docx | LEGALEASE-00125378-LEGALEASE-00125379 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 6549 | Villeda Aldana v. Fresh Del Monte Produce, 305 F. Supp. 2d 1285 | 24+763 | Under the ATCA, the "law of nations" refers to a body of law known as customary international law. Flores v. Southern Peru Copper Corp., 343 F.3d 140, 154 (2d Cir.2003). Conduct violates the "law of the nations" if it contravenes "well-established, universally recognized norms of international law." Kadic v. Karadzic, 70 F.3d 232, 239 (2d Cir.1995), cert. denied, 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996). | Under Alien Tort Claims Act (ATCA), the "law of nations" refers to a body of law known as customary international law; conduct violates the "law of the nations" if it contravenes well-established, universally recognized norms of international law. 28 U.S.C.A. S 1350. | "Does certain wrongful conduct violate the law of nations, and gives rise to a right to sue cognizable by exercise of federal jurisdiction under the Alien Tort Claims Act (ATCA)?" | 020457.docx | LEGALEASE-00125197-LEGALEASE-00125198 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 6550 | United States v. Martinez, 599 F. Supp. 2d 784 | 221+391 | "Generally, there is no constitutional bar to the extraterritorial application of the United States penal laws." United States v. Felix"Gutierrez, 940 F.2d 1200, 1204 (9th Cir.1991) (citing Chua Han Mow v. United States, 730 F.2d 1308, 1311 (9th Cir.1984), cert. denied, 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985); United States v. King, 552 F.2d 833, 850 (9th Cir.1976), cert. denied, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977)). It is further undisputed that "the legislative authority of the United States over its citizens extends to conduct by Americans ... even within the territory of other sovereigns." United States v. Mitchell, 553 F.2d 996, 1001 (5th Cir.1977) (citing Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952); Foley Bros. v. Filardo, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949); Vermilya"Brown Co. v. Connell, 335 U.S. 377, 69 S.Ct. 140, 93 L.Ed. 76 (1948); Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Cook v. Tait, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 (1924); United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922)). Moreover, "international law principles do not constrain this legislative authority, because citizenship alone is generally recognized as a relationship sufficient to justify the exercise of jurisdiction by a state." Id. (citations omitted). In determining whether Congress intended for a law to apply extra-territorially, the court considers two principles. Id. The first is whether the law itself speaks to being applied extra-territorially: (Some laws) are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens ... in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the ... foreign countries, but allows it to be inferred from the | The legislative authority of the United States over its citizens extends to conduct by Americans even within the territory of other sovereigns; international law principles do not constrain this legislative authority, because citizenship alone is generally recognized as a relationship sufficient to justify the exercise of jurisdiction by a state. | Does the legislative authority of the United States over its citizens extend to conduct by Americans even within the territory of other sovereigns? | International Law - Memo # 808 - C - ANC.docx | ROSS-003285318-ROSS-003285320 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6551 | United States v. Hamdan, 801 F. Supp. 2d 1247 | 221+391 | The protective principle in international law provides a basis for jurisdiction of offenses occurring outside the United States. Recently, the courts have discussed the constitutional authority of Congress to establish and punish drug traffickers apprehended outside U.S. territorial waters under the Maritime Drug Law Enforcement Act (MDLEA). The Supreme Court noted that Congress may constitutionally operate under a broader inherent authority when acting to protect national interests. Youngstown, 343 U.S. at 637, 72 S.Ct. 863. This is so even in instances where the act occurs outside the territory of the United States. In a challenge to the constitutionality of the MDLEA to prosecute noncitizen defendants captured on the high seas, the 1st Circuit Court noted: Under the protective principle of international law, Congress can punish crimes committed on the high seas regardless of whether a vessel is subject to the jurisdiction of the United States. Under the protective principle, [a] state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens its security as a state or the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems. United States v. Vilches"Navarrete, 523 F.3d 1, 21"22 (1st Cir.2008) (Lynch, J., concurring in judgment) (quotation marks and citations omitted). More specifically, in dealing with a direct challenge to constitutionality of the 1990 Antiterrorism Act for murder of U.S. nationals outside the United States, a Federal District Court made the following observation, which provides some authority for concluding the Define and Punish Clause does not limit prosecution of extraterritorial conduct connected to terrorism: [E]ven assuming that the acts described in [the Antiterrorism Act] are not widely regarded as violations of international law, it does not necessarily follow | The protective principle in international law provides a basis for jurisdiction of offenses occurring outside the United States. | Does the protective principle in international law provide a basis for jurisdiction of offenses occurring outside the United States? | International Law - Memo # 814 - C - ANC.docx | ROSS-003299689-ROSS-003299691 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6552 | Jungquist v. Nahyan, 940 F. Supp. 312 | 92+2550 | The defendants assert that Sheikh Sultan is immune from the Court's jurisdiction under the common law Head of State Doctrine, which immunizes a head-of-state from personal jurisdiction in the United States courts. See, e.g., Lafontant v. Aristide, 844 F.Supp. 128, 131"34 (E.D.N.Y.1994). Head of State immunity, however, extends only to the person the United States government acknowledges as the official head-of-state. Id. Recognition of a government and its officers is the exclusive function of the Executive Branch, to which the courts must defer. Id.] | Head-of-State doctrine, which immunizes a Head-of-State from personal jurisdiction in United States courts, applies only to person United States government acknowledges as official Head-of-State; recognition of government and its officers is exclusive function of Executive Branch. | Does the Head-of-State doctrine apply only to persons the United States government acknowledges as official Heads-of-State? | 020889.docx | LEGALEASE-00124705-LEGALEASE-00124706 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 6553 | Drexel Burnham Lambert Grp. Inc. v. Galadari, 610 F. Supp. 114 | 221+354 | Under either version of the test, the situs of the debt in the case at bar is other than Dubai. First of all, the alleged "taking," in this case"the government decree freezing payment of Galadari's debts"could not "come to complete fruition" in Dubai. It matters not that the decree itself was executed within the borders of Dubai, since the act of state doctrine looks to actual dominion over property rather than to the mere execution of official documents. Libra Bank, 570 F.Supp. at 878. Just as the government of Costa Rica could not extinguish the obligation of Costa Rican banks to make payments in United States dollars in New York, see Allied Bank, 757 F.2d at 521, the government of Dubai cannot demand the absolute deference of the act of state doctrine for its attempts to alter the obligation of defendants to make payments in United States dollars in London. | Act of state doctrine looks to actual dominion over property rather than to mere execution of official documents. | Does the act of state doctrine look to actual dominion over property rather than to mere execution of official documents? | International Law - Memo 610 - TH.docx | ROSS-003284791-ROSS-003284792 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6554 | In re Travelstead, 227 B.R. 638 | 221+162 | Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa, 482 U.S. 522, 543, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987). "Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of "practice, convenience, and expediency" rather than of law." Pravin Banker Assocs. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir.1997) (quoting Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir.1971)). "And courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States." Id. (citing Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 522 (2d Cir.1985)). "[T]he threshold question in a comity analysis is whether there is in fact a true conflict between domestic and foreign law." Societe Nationale, 482 U.S. at 555, 107 S.Ct. at 2562 (1987) (Blackmun, J., concurring in part and dissenting in part). | Courts will not extend comity to foreign proceedings when doing so would be contrary to policies or prejudicial to interests of the United States. | Can United States courts extend comity to foreign proceedings and when doing so would it be contrary to policies or prejudicial to interests of the United States? | International Law-Memo # 773 - C - SU.docx | ROSS-003297194-ROSS-003297196 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6555 | Addis v. Exelon Generation Co., 378 Ill. App. 3d 781 | 30+3209 | Plaintiff contends that the circuit court erred in denying several of her motions in limine. A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence, and this court will not disturb the trial court's ruling absent an abuse of discretion. Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001).Plaintiff argues that the court erred in denying her motion in limine No. 11, which sought to bar the contention that plaintiff's report to the employee concerns program constituted protected activity. Plaintiff notes that during the proceedings before the United States Department of Labor, defendant stipulated that plaintiff's safety report constituted protected activity under the Energy Reorganization Act of 1974 (42 U.S.C. " 5851(a)(1)(A)(2000)). Plaintiff maintains that defendant should have been estopped from arguing in this case that her safety report did not constitute protected activity. | A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence, and appellate court will not disturb the trial court's ruling absent an abuse of discretion. | Can a trial court's ruling on a motion in limine be disturbed absent an abuse of discretion? | 024285.docx | LEGALEASE-00124820-LEGALEASE-00124821 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6556 | Maliqi v. 17 E. 89th St. Tenants, 25 Misc. 3d 182 | 307A+3 | A motion in limine, by definition, is a "preliminary application," usually made at the beginning of a trial, that certain evidence, claimed to be inadmissible and prejudicial, not be referred to or offered at trial (see generally, Black's Law Dictionary [7th ed. 1999] ). Each party requests a ruling to preclude the other from introducing evidence that involves Plaintiff's immigration status. Plaintiff argues Defendant's emphasis on the matter of documentation will prejudice the jury against him. Defendant feels that withholding information of Plaintiff's illegal entry in the United States could permit an unfair windfall. Each side bases its sought after relief squarely upon the Third Circuit's opinion in Maliqi v. Attorney General of the United States, supra, which remanded the BIA's decision adverse to Plaintiff for further determination. Because both versions of in limine relief are intertwined, disposition jointly is necessa | A "motion in limine" is a preliminary application usually made at the beginning of a trial that certain evidence, claimed to be inadmissible and prejudicial, not be referred to or offered at trial. | Is a motion in limine a preliminary application that certain prejudicial evidence not be offered at trial? | Pretrial Procedure - Memo # 606 - C - SSB.docx | ROSS-003329997-ROSS-003329998 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6557 | Maliqi v. 17 E. 89th St. Tenants, 25 Misc. 3d 182 | 307A+3 | A motion in limine, by definition, is a "preliminary application," usually made at the beginning of a trial, that certain evidence, claimed to be inadmissible and prejudicial, not be referred to or offered at trial (see generally, Black's Law Dictionary [7th ed. 1999] ). Each party requests a ruling to preclude the other from introducing evidence that involves Plaintiff's immigration status. Plaintiff argues Defendant's emphasis on the matter of documentation will prejudice the jury against him. Defendant feels that withholding information of Plaintiff's illegal entry in the United States could permit an unfair windfall. Each side bases its sought after relief squarely upon the Third Circuit's opinion in Maliqi v. Attorney General of the United States, supra, which remanded the BIA's decision adverse to Plaintiff for further determination. Because both versions of in limine relief are intertwined, disposition jointly is necessary. | A "motion in limine" is a preliminary application usually made at the beginning of a trial that certain evidence, claimed to be inadmissible and prejudicial, not be referred to or offered at trial. | Is a motion in limine a preliminary application that certain inadmissible evidence not be referred to at trial? | 024338.docx | LEGALEASE-00125193-LEGALEASE-00125194 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6558 | Smith v. Polsky, 796 S.E.2d 354 | 307A+3 | A motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling. Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Indus. Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. | Trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature; therefore, trial court's ruling on a motion in limine is subject to modification during the course of the trial. | "Is a trial court's ruling on a motion in limine not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature?" | Pretrial Procedure - Memo # 260 - C - MLS.docx | ROSS-003288887-ROSS-003288888 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6559 | Reese v. Proppe, 3 Ohio App. 3d 103 | 307A+1 | Even supposing that a trial date had been set, appellant could not have been sanctioned for failure to submit a trial memorandum for yet another reason. It is axiomatic that a court speaks only through its journal, Wolff v. Kreiger (1976), 48 Ohio App.2d 153, 156, 356 N.E.2d 316 [2 O.O.3d 118], and any purported "order" of the court not properly filed and journalized is not binding upon the parties. In the instant case, the record contains no journal entry ordering the submission of trial memoranda. A mere letter signed by the judge ordering that trial memoranda be submitted is not an order of the court for the disobeyance of which a sanction may be applied against a party. Consequently, no punitive action could properly have been taken against appellant for failing to submit a trial memorandum. | Mere letter signed by judge ordering that trial memorandum be submitted was not an order of court for the disobedience of which a sanction could be applied against a party. | Is the disobeyance of a mere letter signed by a judge ordering that trial memorandum be submitted an order of the court for which a sanction could be applied against a party? | Pretrial Procedure - Memo # 479 - C - LK.docx | ROSS-003298815-ROSS-003298816 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6560 | Lambert v. Coonrod, 2012 IL App (4th) 110518 | 30+3209 | "A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused." Swick v. Liautaud, 169 Ill.2d 504, 521, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1246 (1996). To the extent plaintiffs' argument requires the construction of a statute or rule of evidence, it presents a question of statutory interpretation, which we review de novo. McFatridge v. Madigan, 2011 IL App (4th) 100936, 357 Ill.Dec. 212, 218"19, 962 N.E.2d 1113, 1119"20; see also In re Storment, 203 Ill.2d 378, 390, 272 Ill.Dec. 129, 786 N.E.2d 963, 970 (2002) (stating the interpretation of a rule is reviewed de novo ). In construing a statute, the fundamental rule "is to ascertain and give effect to the legislature's intent." Nowak v. City of Country Club Hills, 2011 IL 111838, 354 Ill.Dec. 825, 958 N.E.2d 1021, 1023. "The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning." Snyder v. Heidelberger, 2011 IL 111052, 352 Ill.Dec. 176, 953 N.E.2d 415, 420"21. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Will a reviewing court reverse a trial courts motion in limine if the trial courts discretion was not abused? | Pretrial Procedure - Memo # 831 - C - KA.docx | ROSS-003330013-ROSS-003330014 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6561 | Smith v. Polsky, 796 S.E.2d 354 | 307A+3 | It is well established that [a] motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials.The trial court has wide discretion in making this advance ruling.... Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Indus. Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. Id. | Trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature; therefore, trial court's ruling on a motion in limine is subject to modification during the course of the trial. | Is a trial court's ruling on a motion in limine interlocutory and subject to modification? | 038273.docx | LEGALEASE-00124180-LEGALEASE-00124182 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 6562 | Greer v. Buzgheia, 141 Cal. App. 4th 1150 | 307A+3 | Trial judges enjoy " "broad authority" " over the admission and exclusion of evidence. (Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal.App.3d 272, 288, 245 Cal.Rptr. 873.) The motion in limine is not expressly authorized by statute, but is within the trial court's " "inherent power to entertain and grant." [Citation.] "The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial." [Citation.] Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the "obviously futile attempt to "unring the bell." " " (Ibid.) | A motion in limine is not expressly authorized by statute, but is within the trial court's inherent power to entertain and grant. | Is a motion in limine expressly authorized by statute or is it within the trial court's inherent power to entertain and grant? | 038443.docx | LEGALEASE-00124451-LEGALEASE-00124452 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6563 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37 | 30+3209 | A motion in limine is a procedural device that permits a party to identify, pre-trial, certain evidentiary issues the court may be asked to rule upon. Vulcan Materials, 2004 WL 2997852."The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first seeking leave of court." Id.; Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Judges have the inherent power to regulate behavior in their courtrooms. Dow Chemical, 46 S.W.3d at 240. The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. Cire v. Cummings, 134 S.W.3d 835, 838"39 (Tex.2004); Vulcan Materials, 2004 WL 2997852 at . | The imposition of sanctions for violation of an order in limine is left to the sound discretion of the trial court, and an appellate court will not reverse a trial court's decision on sanctions absent a clear abuse of discretion. | Are sanctions for the violation of an order in limine left to the sound discretion of the trial? | 038512.docx | LEGALEASE-00124563-LEGALEASE-00124564 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6564 | Matter of Hemphill, 18 B.R. 38 | 366+7(1) | The Oakland Savings Bank had a prime security interest in the following property: office equipment; seed equipment; hog equipment; growing corn crop; farm machinery and hogs. Under Iowa law a guarantor required to pay the debt of his principal has an enforceable right of subrogation in the collateral securing the obligation. Ohio Casualty Ins. Co. v. Galvin, 222 Iowa 670, 269 N.W. 254 (1936); American Surety of New York v. State Trust and Savings Bank, 218 Iowa 1, 254 N.W. 338 (1934). | Under Iowa law a guarantor required to pay the debt of his principal has an enforceable right of subrogation in the collateral securing the obligation. | Does a guarantor who is required to pay the debt of his principal have an enforceable right of subrogation in the collateral securing the obligation? | Subrogation - Memo 920 - RK.docx | ROSS-003283111-ROSS-003283112 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6565 | Tri-Cty. Elec. Ass'n v. City of Gillette, 584 P.2d 995 | 317A+111 | At no time in the statutory history of municipal ownership and operation of an electric utility has a Wyoming city or town had authority to grant or deny the right to any utility to serve areas outside its corporate limits. That jurisdiction has been and still is solely vested in the P.S.C. As we view the agreement between Gillette and Tri-County, it was no more than a stipulation for the consideration of the P.S.C. in its authority to regulate service by public utilities. The parties to the agreement recognized that authority by a specific provision of their 1960 agreement which stated: "9. That the entire agreement between the parties hereto is subject to final approval and authorization by the Wyoming Public Service Commission to the extent of their jurisdiction in the matter." Rather than taking their problems of territory and service to the P.S.C. for resolution following a hearing wherein the facts are developed by testimony and other types of evidence, the parties made it easy for that regulatory body; without the approval of that body neither party had any freedom to act. This court has held that the P.S.C. has the power to amend a certificate of public convenience and necessity, following hearing or "upon agreement of the parties." Riverton Valley Electric Association v. Pacific Power and Light Company, Wyo.1964, 391 P.2d 489, 500; Svilar Light and Power, Inc. v. Riverton Valley Electric Association, Inc., Wyo.1960, 355 P.2d 52. The P.S.C. is authorized in the event of a conflict between two utilities to make such order and prescribe such conditions as seem just and reasonable, Dubois Telephone Exchange v. Mountain States Telephone & Telegraph Co., Wyo.1967, 429 P.2d 812, citing s 37-31, W.S. 1957, now s 37-2-205(a), W.S.1977. Apparently, Gillette and Tri-County were interfering with each other and by agreement submitted the matter for official adjustment. | In the event of a conflict between two utilities, the Public Service Commission is authorized to make such order and prescribe such conditions as seem just and reasonable. W.S.1977, SS 37-1-101, 37-2-205(a). | Is the Public Service Commission (PSC) authorized to order and prescribe reasonable conditions when a conflict between two utilities arises? | 042320.docx | LEGALEASE-00125688-LEGALEASE-00125689 | Condensed, Order, SA | 0.89 | 1 | 1 | 0 | 1 | 1 |
| 6566 | Greater Anchorage Area Borough v. City of Anchorage, 504 P.2d 1027 | 317A+111 | The essence of the administrative power conferred upon the PUC is regulatory; the Commission's empowered to set rates, promulgate regulations, collect information, process complaints against utilities and the like. The statutory framework, however, does not grant unlimited adjudicatory authority to the PUC. The agency is not empowered to decide disputes between municipalities over the control of construction activities within rights of way belonging to one of the disputants. The City's reliance on AS 42.05.221(d)20 is misplaced, in that the "matter" which was referred to the PUC was not a question of duplication of electrical services or facilities and did not involve the interpretation of a utility's certificate of public convenience and necessity. Further, the controversy in the instant case does not involve competing utilities seeking to provide the same service to a single consumer. By stipulation, the dispute concerns the Borough's authority to control construction work and other activities which take place within the Borough's rights of way. In short, the Alaska Public Utilities Commission Act simply does not contemplate the establishment of an administrative body with the authority to adjudicate such disputes. | Essence of administrative power conferred upon state Public Utilities Commission is regulatory; the Commission is empowered to set rates, promulgate regulations, collect information, process complaints against utilities and the like; however, the statutory framework does not grant unlimited adjudicatory authority to the Commission. AS 42.05.141. | Is the administrative power of the Public Utilities Commission (PUC) regulatory? | 042330.docx | LEGALEASE-00125706-LEGALEASE-00125707 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6567 | Sotelo v. DirectRevenue, 384 F. Supp. 2d 1219 | 386+6 | Although the above cases do not apply Illinois law, the law regarding trespass to personal property applied is substantially similar to that used in Illinois, and the courts' reasoning is applicable to the instant case. Defendants' attempt to distinguish these cases on the basis that the plaintiffs were ISP's, not individual computers users like plaintiff in the instant case, is unpersuasive. The elements of trespass to personal property-interference and damage- do not hinge on the identity of the plaintiff, and the cause of action may be asserted by an individual computer user who alleges unauthorized electronic contact with his computer system that causes harm, such as Spyware. | Under Illinois law, as predicted by the district court, cause of action for trespass to personal property may be asserted by individual computer user who alleges unauthorized electronic contact with his computer system that causes harm, such as spyware. | Is an unauthorized electronic contact with a computer system that causes harm trespass? | Trespass - Memo 166 - RK.docx | ROSS-003286841-ROSS-003286842 | Condensed, Order, SA | 0.63 | 1 | 1 | 0 | 1 | 1 |
| 6568 | United States v. Gray, 292 F. Supp. 2d 71 | 63+1(1) | Rule 35(b)4 permits the government to move, within one year of sentencing, to reduce a defendant's sentence to reflect his subsequent substantial assistance in the investigation or prosecution of another person. Fed.R.Crim.P. 35(b). Contrary to Nunn's contention, it is well established that the federal bribery statute does not preclude the government from agreeing to grant leniency to a defendant in exchange for truthful testimony. United States v. Ramsey, 165 F.3d 980, 986"88 (D.C.Cir.1999). As held by the D.C. Circuit in Ramsey, "application of [the bribery statute] to the United States would deprive the sovereign of a critically important interest, one that is well established in our legal system and recognized by the courts, the Congress, and more recently, the United States Sentencing Commission." Ramsey, 165 F.3d at 988. | Federal bribery statute does not preclude government from agreeing to grant leniency to a defendant in exchange for truthful testimony. | Does Federal bribery statute preclude government from agreeing to grant leniency to a defendant in exchange for truthful testimony? | 011057.docx | LEGALEASE-00126068-LEGALEASE-00126069 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6569 | Forest Properties v. United States, 177 F.3d 1360 | 148+2.2 | With regard to the relevant parcel, "[o]ur precedent displays a flexible approach, designed to account for factual nuances." Loveladies Harbor, 28 F.3d at 1181. It requires courts to focus on the economic expectations of the claimant with regard to the property. See Keystone, 480 U.S. at 500-01, 107 S.Ct. 1232. Where the developer treats legally separate parcels as a single economic unit, together they may constitute the relevant parcel. See id.; Naegele Outdoor Adver. v. City of Durham, 844 F.2d 172, 176 (4th Cir.1988); K & K Constr., Inc. v. Department of Natural Resources, 456 Mich. 570, 575 N.W.2d 531, 535-37, cert. denied, 525 U.S. 819, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998). | In determining what parcel of property must be considered in connection with claim of regulatory taking, court takes flexible approach, designed to account for factual nuances, and court must focus on the economic expectations of the claimant with regard to the property; where the developer treats legally separate parcels as a single economic unit, together they may constitute the relevant parcel. U.S.C.A. Const.Amend. 5. | "Where the developer treats legally separate parcels as a single economic unit, do they together constitute the relevant parcel under the takings law?" | 017570.docx | LEGALEASE-00125882-LEGALEASE-00125883 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 6570 | Lafontant v. Aristide, 844 F. Supp. 128 | 221+151 | This absolute form of immunity is based on the notion that all states are equal and that no one state may exercise judicial authority over another. The foreign head-of-state, as representative of his nation, enjoys extraterritorial status when travelling abroad because he would not intend "to subject himself to a jurisdiction incompatible with his dignity, and the dignity of his nation." Id. at 137, 3 L.Ed. 287; see also L. Henkin, International Law 893 (2d Ed. 1987). | Absolute immunity accorded head-of-state is based on notion that all states are equal and that no one state may exercise judicial authority over another, is supported by doctrine of comity, and is required to safeguard mutual respect among nations. | Is absolute immunity based on the notion that all states are equal and that no one state may exercise judicial authority over another? | 020390.docx | LEGALEASE-00125952-LEGALEASE-00125953 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6571 | United States v. Frank, 486 F. Supp. 2d 1353 | 221+321 | First, Mr. Frank asserts that the exercise of extra-territorial jurisdiction violates precepts of international law. That assertion, however, is foreclosed by binding precedent. Congress has the power to control (and punish) the conduct of American citizens abroad. See, e.g., Blackmer v. United States, 284 U.S. 421, 437, 52 S.Ct. 252, 76 L.Ed. 375 (1932); United States v. Plummer, 221 F.3d 1298, 1304 (11th Cir.2000); United States v. Mitchell, 553 F.2d 996, 1001 (5th Cir.1977). International law, moreover, generally allows a country to exert extra-territorial jurisdiction over its own citizens, as long as the exercise of such jurisdiction is not unreasonable. See Plummer, 221 F.3d at 1307; Restatement (Third) of Foreign Relations "" 402(2), 403(1)-(2) (1987). Finally, "public international law is controlling only "where there is no treaty and no controlling executive or legislative act or judicial decision [.]" " Garcia"Mir v. Meese, 788 F.2d 1446, 1453 (11th Cir.1986) (quoting The Paquete Habana, 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900)). Here there is a treaty"the Optional Protocol"ratified by both the United States and Cambodia. | International law generally allows a country to exert extra-territorial jurisdiction over its own citizens, as long as the exercise of such jurisdiction is not unreasonable. | "Does international law generally allow a country to exert extra-territorial jurisdiction over its own citizens, as long as the exercise of such jurisdiction is not unreasonable?" | 020680.docx | LEGALEASE-00125978-LEGALEASE-00125979 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 6572 | Zapata v. Ford Motor Credit Co., 615 S.W.2d 198 | 386+47 | The parties concede the first part of the waiver clause, which provides "(a) ny personalty in or attached to the property when repossessed may be held by Seller without liability ...," merely restates the bailor-bailee relationship existing at common law with respect to personalty in a repossessed vehicle. However, a person in lawful possession of personalty may still be guilty of trespass or conversion for its unlawful detention. A detention of personalty lawfully obtained, after demand, is a wrongful act constituting a trespass. Brite v. Pfeil, 334 S.W.2d 596 (Tex.Civ.App. San Antonio 1960, no writ); see Mountain States Tel. & Tel. Co. v. Vowell Construction Co., 161 Tex. 432, 341 S.W.2d 148 (1960). The commission of a trespass does not necessarily mean the actor will be liable for damages. Restatement (Second) of Torts s 217, Comment a (1965). Liability does not attach, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time. See Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770 (1945); Restatement (Second) of Torts s 218 (1965). Even in the absence of damages, a trespass has occurred which is important in determining the legal relations between the parties. | Commission of a trespass does not necessarily mean the actor will be liable for damages; liability does not attach unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time. | When does liability attach to a trespass to chattel action? | 047203.docx | LEGALEASE-00125995-LEGALEASE-00125996 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6573 | Rolling Lands Investments, L.C. v. Nw. Airport Mgmt., 111 S.W.3d 187 | 241+66(6) | The present case is clearly distinguishable from Stevens. In the present case, the parties expressly agreed that, after foreclosure and on proper demand, new agreements would be executed in favor of the Bank or its nominee for fueling and license rights. In Stevens, Stevens' home had been fully repaired for more than a year before he made his demand. Stevens, 929 S.W.2d at 671. At that point, he had already been injured by paying more for the repair of his home, and he had reason to make his demand. Id. The 1989 Consent did not require the Bank or its nominee to make the demand within four years, or any period of time, after foreclosure. Unlike Stevens, the Bank or its nominee had no reason to make such a demand until it became necessary to exercise fueling rights. As a result, even though a demand was a prerequisite to filing suit, the cause of action did not accrue until the demand was denied and the contract was breached in January 2001. See Gabriel, 618 S.W.2d at 896"97. Therefore, the trial court erred to the extent summary judgment was based on Northwest's statute of limitations defense. | Even though demand was prerequisite to filing suit, cause of action, for purposes of four-year statute of limitations, did not accrue until demand to exercise fueling rights at private airport was denied and contract was breached; parties expressly agreed that, after foreclosure and on proper demand, new agreements would be executed in favor of adjacent property owner or its nominee for fueling and license rights, and owner or its nominee had no reason to make such a demand until it became necessary to exercise fueling rights. V.T.C.A., Civil Practice & Remedies Code S 16.004. | Does a cause of action become an enforceable demand until a claim is denied? | 005464.docx | LEGALEASE-00126336-LEGALEASE-00126337 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 6574 | Calamita v. De Ponte, 122 Conn. 20 | 13+61 | One of the principal contentions of the defendants is that, as the plaintiffs had not, when the action was brought, paid to the state the amount due on the bond or suffered any pecuniary loss, the action was prematurely brought. As far as concerns the timewhen a cause of action arises, indemnity agreements fall broadly into two classes, those where the contract is to indemnify against liability and those where it is to indemnify against loss; in the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the promisee has actually incurred a loss. Morehouse v. Employers' Liability Assurance Corporation, 119 Conn. 416, 425, 177 A. 568; 5 Elliott, Contracts, " 4011; 31 C. J. pp. 438, 439, "" 33, 35. Agreements to indemnify against loss were before us in Brentnal v. Holmes, 1 Root, 291, 1 Am. Dec. 44, Monson v. Lawrence, 27 Conn. 579, 585, and Wolthausen v. Trimpert, 93 Conn. 260, 105 A. 687; and in all of those it was held that a cause of action did not arise until the promisee had suffered loss. The plaintiffs rest their claim that the defendants were liable without proof of loss upon the case of Bridgeport v. Aetna Indemnity Co., 91 Conn. 197, 99 A. 566, and the trial court seems to have regarded our decision in that case as determinative in the case now before us. That case is not, however, in point. The condition of the bond sued upon there was that, if the promisor in a contract to which it was collateral fully performed the terms of that contract and saved the city harmless, then the bond should be of no effect; but there the claimant was the obligee in the bond, and as between it and the indemnity company the latter was in effect a guarantor of the performance of the contract. The holding in that case that when the contract was broken a cause of action at once arose in behalf of the obligee in the bond (the city) is not determinative in this action, where the sureties on the bond are suing upon an agreement that | As regards time when cause of action arises, indemnity agreements fall into classes where contract is to indemnify against liability, and where contract is to indemnify against loss; in first class, cause of action arises as soon as liability is incurred, but in second class, cause of action does not arise until promisee has actually incurred loss. | Do indemnity agreements fall into classes where contract is to indemnify against liability? | 005650.docx | LEGALEASE-00126636-LEGALEASE-00126637 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6575 | Outboard Marine Corp. v. Thomas, 773 F.2d 883 | 216+5 | The EPA's selective quoting of that section better suits its purposes than does the full statute, but even the EPA version is only of limited help as the need for a response has already been determined. The language for the "purpose[ ] of ... enforcing the provisions" of the subchapter also adds nothing specific. What the EPA omitted in its warrant application from that section plainly limits its authority to enter, whatever its broad language, to the "purposes specified in the preceding sentence." The preceding sentence refers to the necessity that any person who has had some involvement with the hazardous substance furnish information relating to such substance and permit EPA access to any records pertaining to the substance. A reading of the full section set forth in footnote 3 puts the authority in context, and deflates the EPA's selective and expanded reading of the section. It is germane to the application, as the EPA asserts, not for what the section says, but for what the section does not say. The power to enter at reasonable times is not given to begin any response construction, or even for design and surveying purposes, if we assume they are to be separated. The authority to enter to inspect and obtain samples, gather information, and inspect records is limited to the hazardous substance itself; the section does not provide authority for taking subsurface samples to determine what construction can be supported or for the other things the EPA seeks to accomplish as preliminary to construction. | Environmental Protection Agency's authority to enter property to inspect and obtain samples, gather information and inspect records is limited to hazardous substance itself; section (42 U.S.C.A. S 9604(e)) does not provide authority for taking subsurface samples to determine what construction can be supported or for design and surveying purposes as preliminary to construction of remedial operations on hazardous waste site. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, S 104(e), 42 U.S.C.A. S 9604(e). | Does EPA (Environment Protection Authority) have authority to enter property for inspection? | 019490.docx | LEGALEASE-00126568-LEGALEASE-00126569 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6576 | In re Harper, 2007 WL 45918 | 366+31(4) | Nor is equitable subrogation applicable here. The doctrine applies when a creditor has been unfairly deceived or defrauded, and may be applicable to protect a refinancing lender who is granted a defective mortgage.[ ] Landis v. State ex rel Comm'rs of Land Office, 179 Okla. 547, 66 P.2d 519, 521-522 (Okla.1937). However, it is not applicable where a creditor fails to take an assignment ofa prior lien voluntarily paid and discharged. Sw. Title & Trust Co. v. Norman Lumber Co., 441 P.2d 430, 433 (Okla. Here, the Credit Union loaned the Debtors funds, the Debtors paid off the original lien, and the Credit Union failed to protect its security interest and position. No evidence in the record supports the implementation of an equitable remedy. Equitable subrogation is simply not applicable here. | Under Oklahoma law, doctrine of equitable subrogation applies when a creditor has been unfairly deceived or defrauded, and may be applicable to protect a refinancing lender who is granted a defective mortgage, but doctrine does not apply when a creditor fails to take an assignment of a prior lien voluntarily paid and discharged. | Does the doctrine of equitable subrogation apply when a creditor has been unfairly deceived or defrauded? | Subrogation - Memo # 429 - C - SA.docx | ROSS-003300519-ROSS-003300520 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 6577 | Meadows v. Century Healthcare, 445 F. Supp. 2d 1297 | 366+1 | In a dispute between two insurers, "a claim based on equitable subrogation allows an insurer who has paid coverage to stand in the shoes of the insured and pursue recovery from a third party primarily responsible for the insured's loss which the insurer both insured and reimbursed." United States Fidelity & Guaranty Co. v. Federated Rural Electric Ins. Co., 37 P.3d 828, 831 (Okla.2001). There are few hard and fast rules for applying equitable subrogation, as the court must determine whether equity requires the burden of payment to be shifted based on the facts on circumstance of the particular case. Lawyers' Title Guaranty Fund v. Sanders, 571 P.2d 454, 456 (Okla.1977). | Under Oklahoma law, there are few hard and fast rules for applying equitable subrogation, and the court must determine whether equity requires the burden of payment to be shifted based on the facts on circumstance of the particular case. | Are there any rules for applying equitable subrogation? | 043953.docx | LEGALEASE-00126483-LEGALEASE-00126484 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 6578 | Nye v. Indus. Claim Appeals Office of State of Colo., 883 P.2d 607 | 413+1 | The statutory scheme providing compensation for those who suffer industrial injuries or diseases is an exercise of the state's police power. School District No. 1 v. Industrial Commission, 66 Colo. 580, 185 P. 348 (1919). The General Assembly may determine the extent and applicability of claims under that statutory scheme, unless some other legal or constitutional bar otherwise limits the exercise of its discretion, and may change the pre-existing state of the law in the furtherance of its legislative powers. See Allee v. Contractors, Inc., 783 P.2d 273 (Colo.1989); Reynolds v. Industrial Claim Appeals Office, 794 P.2d 1080 (Colo.App.1990). | Statutory scheme providing compensation for those who suffer industrial injuries or diseases is exercise of state's police power. | Is the statutory scheme providing for compensation for those who suffer industrial injuries or diseases an exercise of a states police power? | 048518.docx | LEGALEASE-00126753-LEGALEASE-00126755 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6579 | Rucker v. City of Ocala, 684 So. 2d 836 | 92+4186 | "Procedural due process rights derive from a property interest in which the individual has a legitimate claim." Metropolitan Dade County v. Sokolowski, 439 So.2d 932, 934 (Fla. 3d DCA 1983), petition for review denied, 450 So.2d 488 (Fla.1984). An injured employee's right to receive workers' compensation benefits qualifies as such a property interest. See De Ayala v. Florida Farm Bureau Casualty Ins. Co., 543 So.2d 204, 206 n. 6 (Fla.1989) (Analyzing an equal protection claim, the court stated, "[I]n the sense that the worker's compensation system replaced other rights formerly afforded to workers, we cannot agree with the district court that worker's compensation is entirely in the nature of a privilege."); Florida Forest & Park Serv. v. Strickland, 154 Fla. 472, 18 So.2d 251, 254 (1944) ("A right to compensation having accrued, at least potentially, by the happening of the injury, and the compensation claimant having proceeded by a judicially approved statutory course of procedure to enforce the claim, such valuable potential property or contract right to compensation should not be cut off by subsequent overruling court decision given a retrospective operation." (emphasis added)); Sokolowski, 439 So.2d at 934 ("A property interest may be created by statute, ordinance, or contract.."); see also Art. I, " 2, Fla. Const. ("All natural persons are equal before the law and have inalienable rights, among which are the right .. to be awarded for industry.."). "Property rights are among the basic substantive rights expressly protected by the Florida Constitution." Department of Law Enforce. v. Real Property, 588 So.2d 957, 964 (Fla.1991). "Once acquired, a property interest falls within the protections of procedural due process." Sokolowski, 439 So.2d at 934. Therefore, an injured employee's right to receive workers' compensation, as a property right, must be protected by procedural safeguards including notice and an opportunity to be heard.See Real Property, 588 So.2d at | Injured employee's right to receive workers' compensation, as property right, must be protected by due process procedural safeguards including notice and opportunity to be heard. West's F.S.A. Const. Art. 1, S 9. | Is the right to receive workers' compensation benefits a property right protected by procedural due process? | 048595.docx | LEGALEASE-00126710-LEGALEASE-00126711 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6580 | Piszel v. United States, 121 Fed. Cl. 793 | 148+69 | In contrast, physical or per se takings occur when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." Transportation Company v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336 (1878); see also Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). When an owner has suffered a physical invasion of his property, the Supreme Court has noted that "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." Lucas, 505 U.S. at 1015, 112 S.Ct. 2886. The distinction between a physical invasion and a governmental activity that merely impairs the use of that property turns on whether the intrusion is "so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." United States v. Causby, 328 U.S. 256, 265, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). | When an owner has suffered a physical invasion of his property, no matter how minute the intrusion, and no matter how weighty the public purpose behind it, just compensation is required under the Takings Clause. U.S. Const. Amend. 5. | "Does the court require compensation in the case of physical invasions, without looking how minute the intrusion and how weighty the public purpose behind it can be?" | 017671.docx | LEGALEASE-00127118-LEGALEASE-00127119 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6581 | Oliver v. Coffman, 112 Ind. App. 507 | 302+9 | The line of demarcation between "ultimate facts" or "conclusions of fact", and "conclusions of law", is quite often shadowy and indistinct, and it is difficult, if not impossible, to formulate a definition that will distinguish a conclusion of law from a conclusion of fact or from an ultimate fact. Sometimes an allegation which ordinarily would be considered an allegation of fact will be regarded as a legal conclusion when based upon other allegations. An example is an allegation of the ownership of specific property. While considered an ultimate fact, if standing alone, it will be considered a conclusion of law where the pleader sets forth a claim of title, and upon the claim so pleaded alleges ownership. Wagner v. Law, 3 Wash. 500, 28 P. 1109, 29 P. 927, 15 L.R.A. 784, 28 Am.St.Rep. 56. | An allegation of the ownership of specific property, standing alone, is considered an "ultimate fact", but it will be considered a "conclusion of law" where the pleader sets forth a claim of title and upon the claim so pleaded alleges ownership. | Is an allegation of the ownership of specific property an ultimate fact? | 023080.docx | LEGALEASE-00127036-LEGALEASE-00127037 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6582 | Vill. of Lucas v. Lucas Local Sch. Dist., 2 Ohio St. 3d 13 | 317A+113 | It has been previously stated that municipalities have the exclusive power to contract for public utility services. This exclusive power necessarily presumes that while being able to grant public utility franchises, a municipality may likewise exclude a public utility from serving its inhabitants. It follows that, without permission from the municipality, Firelands is prohibited from supplying electrical service to the Lucas Local School District. | Exclusive power of municipalities to contract for public utility services necessarily presumes that while being able to grant public utility franchises, municipality may likewise exclude public utility from serving its inhabitants. Const. Art. 18, S 4. | Do the municipalities have the power to exclude a public utility from serving its inhabitants? | Public Utilities - Memo 208 - AM.docx | ROSS-003286241-ROSS-003286242 | Order, SA, Sub | 0.44 | 1 | 0 | 1 | 1 | 1 |
| 6583 | Rundle v. Frontier-Kemper Constructors, 170 F. Supp. 2d 1075 | 413+1 | The Workers' Compensation Act, Colo.Rev.Stat. " 8"40"101 et seq., establishes the benefits available to workers injured in the course and scope of employment and the procedures for obtaining those benefits. See Duran v. Indus. Claim Appeals Office, 883 P.2d 477, 479 (Colo.1994). The purpose of the Act is "to provide a remedy in areas where remedies do not exist at common law." Chartier v. Winslow Crane Serv. Co., 142 Colo. 294, 350 P.2d 1044, 1056 (1960). The statute provides an employee injured in the course and scope of his employment with medical treatment and compensation for the temporary and/or permanent loss of income resulting from the employee's disability. The statutory scheme requires an employer, by insurance or otherwise, to provide for the benefits assured to his employees. See " 8"44"101(1)(a)"(d). It is unlawful under the Act to require the employee to pay "all or any part of the cost" of providing the benefits. See id. at " 101(2). | Under Colorado law, the "Workers' Compensation Act" establishes the benefits available to workers injured in the course and scope of employment and the procedures for obtaining those benefits. West's C.R.S.A. S 8-40-101 et seq. | Does the Workers Compensation Act establish the benefits available to workers injured in the course and scope of employment and the procedures for obtaining those benefits? | 048014.docx | LEGALEASE-00126992-LEGALEASE-00126993 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 6584 | Aranda v. Indus. Comm'n of Arizona, 195 Ariz. 403 | 413+1 | Although workers' compensation payments are property, United Riggers Erectors, 131 Ariz. at 262, 640 P.2d at 193, they are not fundamental rights in the sense of the Constitution but statutory benefits provided by and to the extent of the legislation. See Wood, 813 P.2d at 824. If this were not so, a suspension of payments would not be a matter of either legislation, e.g., A.R.S. "" 23"1026(C), 23"1047(D), or a legislative cure for a perceived ill as was made available in United Riggers Erectors, 131 Ariz. at 262, 640 P.2d at 193, and Bearden, 14 Ariz.App. at 343, 483 P.2d at 575; see Ashcraft, 472 N.E.2d at 1079; Spera, 713 P.2d at 1158; Crawford, 517 So.2d at 924. Nor would the payments be community property. Bugh v. Bugh, 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980), citing Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907 (1950). Thus, strict scrutiny is not required. Rather, the correct standard of review is the rational basis test. "Social and economic legislation that does not involve a suspect classification or a fundamental right will be upheld when it is rationally related to a legitimate government purpose." Church v. Rawson Drug & Sundry Co., 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992); see Lavine v. Milne, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (right to receive subsistence funds not fundamental); Wood, 813 P.2d at 824 (workers' compensation payments not a matter of fundamental right). To fail this test, the statute must be entirely unrelated to a legitimate legislative goal. Church, 173 Ariz. at 350, 842 P.2d at 1363. | Although workers' compensation payments are property, they are not fundamental rights in the sense of the Constitution but statutory benefits provided by and to the extent of the legislation. U.S.C.A. Const.Amend. 14. | Are workers compensation payments fundamental right under the Constitution or a statutory benefit provided by the legislation? | 048192.docx | LEGALEASE-00126931-LEGALEASE-00126933 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6585 | Provost v. Puget Sound Power & Light Co., 103 Wash. 2d 750 | 413+6 | By its express terms, the Washington workers' compensation act, RCW Title 51, bars all independent causes of action against the employer for damages arising out of unintentional injury to an employee. RCW 51.04.010, the statute's first exclusive remedy provision, states in relevant part:The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title ... | Intent of the exclusive remedy provision of the Workers' Compensation Act, and the statute as a whole, is to provide sure and certain relief for workers, and their families and dependents, unintentionally injured in the course of their work regardless of questions of fault and to the exclusion of every other remedy. West's RCWA 51.04.010 et seq. | Is the Workers Compensation Act (WCA) of a state an exercise of its police and sovereign powers? | 048208.docx | LEGALEASE-00126927-LEGALEASE-00126928 | Condensed, Order, SA | 0.52 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6586 | Rodgers v. United States, 158 F. Supp. 670 | 13+65 | The rights of the parties at the time the decree is rendered ought to govern the court in rendering the decree, Randel v. Brown, 1844, 2 How. 405, 423, 11 L.Ed. 318. A court of equity is not restricted to an adjustment of the rights of the parties as they existed when the suit was brought, but will give relief appropriate to events occurring pending the suit. 21 C.J. 137. 'Equity acts in the present tense', and molds its 'decree to actualities not history.' Continental Securities Co. v. Interborough Rapid Transit Co., D.C.N.Y., 207 F. 467, 471, affirmed, 2 Cir., 221 F. 44; 32 C.J. 76, 63.' Champion Spark Plug Co. v. Reich, 8 Cir., 1941, 121 F.2d 769, 772, certiorari denied 314 U.S. 669, 62 S.Ct. 130, 86 L.Ed. 535. | Court of equity is not restricted to an adjustment of the rights of the parties as they existed when the suit was brought but will give relief appropriate to events occurring pending the suit. | Is a court of equity restricted to an adjustment of the rights of the parties as they existed when the suit was brought? | Action - Memo # 653 - C KA.docx | ROSS-003313222-ROSS-003313223 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 6587 | City of Coral Gables v. Sakolsky, 215 So. 2d 329 | 13+65 | It is established in Florida that in law actions 'the right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted'. Voges v. Ward, 1929, 98 Fla. 304, 123 So. 785. And the same rule applies to equity proceedings. Meredith v. Long, 1928, 96 Fla. 719, 119 So. 114. See also to the same effect, Hasam Realty Corp. v. Dade County, Fla.App.1965, 178 So.2d 747; Tomayko v. Thomas, Fla.App.1962, 144 So.2d 335; Mutual Ben. Health & Accident Ass'n. v. Ott, 1942, 151 Fla. 185, 9 So.2d 383; and Stegemann v. Emery, 1933, 108 Fla. 672, 146 So. 650. In fact, this Court, in the per curiam majority opinion in Davidson v. City of Coral Gables, Fla.App.1960, 119 So.2d 704, text 708, held that the law as it stands at the time of the decree, rather than at the time of application or filing of the suit, controls the decision thereon'. In the instant case, however, whether the law at the time suit is filed or the decree is entered governs, is of no consequence, inasmuch as Ordinance No. 1475 was in force at both times. But Davidson is important in setting forth the exception, not applicable here, to the general rule aforesaid, which exception we reaffirm. | In both law actions and equity proceedings, right of plaintiff to recover must be measured by facts as they exist when suit is instituted. | "In a law action, must the right of a plaintiff to recover be measured by facts as they exist when suit is instituted?" | Action - Memo # 676 - C KG.docx | ROSS-003313232-ROSS-003313233 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 6588 | Quaker Oats Co. v. City of New York, 295 N.Y. 527 | 30+4619 | Turning to the case at hand, it is our conclusion that the local provision is inconsistent with the requirements of the Federal law, for, as we view it, the city forbids to interstate commerce what the government has authorized. In reaching that decision, we consider the Federal law, not as it read at the trial, but as it reads today in its amended form (Civil Practice Act, s 344-a subd. A, par. 5; see Graybar Electric Co. v. New Amsterdam Casualty Co., 292 N.Y. 246, 250, 54 N.E.2d 811, 812), since rights and other legal relations are to be determined as of the time they are declared. As amended, the pertinent portion of the regulation provides (Code Fed.Reg.Supp.1945, tit. 9, s 268.12 subd. (c)): "(c) Dog food or other animal food prepared in whole or in part, from materials derived from cattle, sheep, swine, goats, or horses, shall be distinguished from articles of human food, so as to avoid the distribution of such animal food as human food. To accomplish this, labeling of hermetically sealed, conventional retail size containers as, for example, "dog food" will be considered sufficient. If not in such containers, the product must not only be properly identified, but it must be of such character or so treated (denatured or decharacterized) as to be readily distinguishable from an article of human food. Dog food shall not be represented as being a human food.' (Emphasis supplied.) | In determining whether New York city ordinance requiring the "decharacterization" of horseflesh in the manner and with materials satisfactory to the Department of Health is inconsistent with federal regulation in that city forbids to interstate commerce that which the federal government had authorized, the federal regulation was considered as it read at time of appeal and not as read at trial, since rights and other legal relations are to be determined as of the time they are declared. Civil Practice Act, s 344-a, subd. A, par. 5; Code Regulation Supp.1945, tit. 9, s 268.12, subd. (c); New York City Charter 1936, s 558, subd. d; Administrative Code, s 564-6.0. | Are rights and other legal relations to be determined as of the time they are declared? | 006035.docx | LEGALEASE-00127321-LEGALEASE-00127322 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 6589 | Hall's W. Auto Supply Co. v. Brock, 240 Or. 85 | 9+20(3) | Equity, having once gained jurisdiction, will proceed to dispose of the matter fully. Plaintiff is entitled to an accounting of those funds, if any, in Budget Consultants' possession or control at the time of service of process and coming into its hands subsequent thereto. An accounting is not limited to conditions existing at the time the suit was instituted but covers all matters up to the final stating thereof. 1 C.J.S. Accounting " 41b, p. 683. | An accounting is not limited to conditions existing at time suit was instituted but covers all matters up to final stating thereof. | Is an accounting limited to conditions existing at the time suit was instituted but covers all matters up to final stating thereof? | 006074.docx | LEGALEASE-00127768-LEGALEASE-00127769 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6590 | Russo v. Williams, 160 Neb. 564 | 13+65 | Appellants are entitled to some form of relief in this proceeding because of the damaged condition of the motel for, as we said in Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N.W.2d 111, 117: "It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." See, also, Best & Co., Inc., v. City of Omaha, 149 Neb. 868, 33 N.W.2d 150; Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N.W.2d 545. | It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all relief which nature of case and facts demand, and to bring such relief down to close of litigation between the parties. | Is it the practice of courts of equity to administer all the relief which the nature of the case and the facts demand? | 006197.docx | LEGALEASE-00127515-LEGALEASE-00127516 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6591 | Blomgren v. Tinton 763 Corp., 18 A.D.2d 979 | 13+65 | Judgment dismissing the complaint in an action to foreclose a mortgage on real property, modified on the facts and in the exercise of discretion to provide that the dismissal be conditioned upon the payment of all arrears of mortgage installments to the time of the judgment and the plaintiff's costs and disbursements of the action, and otherwise affirmed, with costs to appellant. There was no default under the mortgage in the payment of installments of interest and principal. The refusal of plaintiff to accept the checks tendered was unwarranted, especially on the grounds urged for such refusal. Nor was there any actionable default in regard to the housing violations or failure to furnish a proper estoppel certificate. However, at the time of the commencement of the action, there was a violation of the terms of the mortgage due to the removal of personal property from the mortgaged premises and the replacement thereof under conditional sales agreements. The record is barren of any proof to show the particular property removed or the condition and value thereof. However, at the trial, defendant offered proof that the substituted personal property was free from encumbrances. Under the law a mortgagor will not be relieved from his default "in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter's part". (Ferlazzo v. Riley, 278 N.Y. 289, 292, 16 N.E.2d 286, 287.) In Domus Realty Corp. v. 3440 Realty Co., Inc., 179 Misc. 749, 40 N.Y.S.2d 69, aff'd 266 App.Div. 725, 41 N.Y.S.2d 940, Justice Shientag (p. 754, 40 N.Y.S.2d p. 73) defined "oppressive" conduct as that which "is unjustly burdensome, harsh or merciless'. Since an action to foreclose a mortgage is addressed to a court of equity, which should determine the rights of the parties to the suit according to equity and good conscience, the rights are determined on the facts as they exist at the time of the decree and not at the inception of the suit. (19 Am.Jur. | Rights of the parties to a mortgage which mortgagor seeks to foreclose must be determined on the facts as they exist at time of the decree and not at inception of the suit. | Should the rights of the parties to a mortgage which mortgagor seeks to foreclose be determined on the facts as they exist at time of the decree and not at inception of the suit? | 006243.docx | LEGALEASE-00127335-LEGALEASE-00127337 | Order, SA | 0.96 | 1 | 0 | 0 | 1 | |
| 6592 | Allstate Indem. Co. v. ADT LLC, 110 F. Supp. 3d 856 | 366+35 | Allstate does not contend that the waiver is unconscionable or against *862 public policy, but that it is unenforceable because Allstate has alleged "willful and wanton" misconduct, and "[e]xculpatory provisions are not enforceable in cases of willful and wanton conduct." (R. 16, Pl.'s Resp. 4"5.) Allstate cites two decisions in support of its argument, Oelze v. Score Sports Venture, LLC, 401 Ill.App.3d 110, 339 Ill.Dec. 596, 927 N.E.2d 137 (2010), and Cat Iron, Inc. v. Bodine Environmental Services, No. 10 CV 2102, 2010 WL 3767986 (C.D.Ill. Sept. 28, 2010). Oelze and Cat Iron, however, are distinguishable because they involved exculpatory provisions, not subrogation waivers. As the Bastian and Hartford courts explained, subrogation waivers are not true exculpatory provisions. They merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated. Bastian, 635 F.Supp. at 203"05; Hartford, 122 Ill.Dec. 204, 526 N.E.2d at 466. Plaintiff fails to cite any decisions applying Illinois law in which the court refused to enforce a subrogation waiver where willful and wanton misconduct was alleged. | Under Illinois law, subrogation waivers are not true exculpatory provisions, but, rather, they merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated. | Are subrogation waivers true exculpatory provisions? | 006310.docx | LEGALEASE-00127790-LEGALEASE-00127791 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6593 | Messner v. Am. Union Ins. Co., 119 S.W.3d 642 | 366+35 | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, Metmor Fin., Inc. v. Landoll Corp., 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955). Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract." Id. at 503"04[9]. This means, inter alia, that contract provisions waiving subrogation rights are valid and enforceable. | Subrogation based upon the common law, i.e., legal subrogation, is not an option where it would be inconsistent with the terms of the contract; thus, contract provisions waiving subrogation rights are valid and enforceable. | Are contract provisions waiving subrogation rights valid and enforceable? | 006312.docx | LEGALEASE-00127777-LEGALEASE-00127778 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6594 | Aktieselskabet Dampskibsselskabet Vesterhavet v. W.A. Kirk & Co., 180 Misc. 979 | 13+65 | The fact that payment in full of Chile's claim against the insurance fund did not occur until after the making of the motion for leave to appear specially and to dismiss the action should not affect the situation. The granting of the motion would be futile, for plaintiff would still be free to bring another action against C.S.A.V. to impress a trust against the $112,500 and to hold it liable for making payment of $445,500 to Chile after notice of plaintiff's claim. Chile, having been paid, could not successfully intervene in and dismiss such action. It should be borne in mind, moreover, that in an action in equity the decree is based on the situation existing at the time of trial rather than upon that obtaining at the date suit was commenced. It is relevant to point out, also, that amendments to the Civil Practice Act enacted in recent years, dealing with supplementary complaints, authorize an action to continue notwithstanding that plaintiff did not possess a cause of action when the summons was served. Sections 245, 245"a, 245"b, Civil Practice Act. In the instant case no supplemental complaint is necessary for the facts upon which Chile bases its motion do not appear in the complaint. Plaintiff may recover upon the trial on its present complaint, equity molding its decree to fit the factual situation then presented. | In equity action, decree is based on situation existing at time of trial rather than that obtaining when suit was commenced. | "In an equity action, should a decree be based on the situation existing at the time of trial rather than that obtained at the date when the suit was commenced?" | 006314.docx | LEGALEASE-00128093-LEGALEASE-00128095 | Condensed, Order, SA | 0.91 | 1 | 1 | 0 | 1 | 1 |
| 6595 | Wu Tien Li-Shou v. United States, 777 F.3d 175 | 34+1 | It is, after all, the President who is commander-in-chief. U.S. Const. art. II, " 2, cl. 1; see also Lebron, 670 F.3d at 549. It is, after all, Congress which holds "plenary control over rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures, and remedies." Chappell v. Wallace, 462 U.S. 296, 301, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); see also U.S. Const., art. " 8, cl. 11 (power to declare war); id. cl. 12-13 (power to establish an army and navy); id. cl. 14 (power "[t]o make Rules for the Government and Regulation of the land and naval Forces"). And, as our discussion has made abundantly clear, this controversy lacks discernible rules and standards for judicial resolution. | Congress holds plenary control over rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures, and remedies. U.S.C.A. Const. Art. 1, S 8, cls. 11-14. | "Does congress holds plenary control over rights, duties, and responsibilities in the framework of the military establishment?" | Armed Forces - Memo 1 RK.docx | ROSS-003286429-ROSS-003286430 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6596 | Miller v. Davis, 123 F. Supp. 3d 924 | 78+1072 | As a preliminary matter, the Court questions whether the act of issuing a marriage license constitutes speech. Davis repeatedly states that the act of issuing these licenses requires her to "authorize" same-sex marriage. A close inspection of the KDLA marriage licensing form refutes this assertion. The form does not require the county clerk to condone or endorse same-sex marriage on religious or moral grounds. It simply asks the county clerk to certify that the information provided is accurate and that the couple is qualified to marry under Kentucky law. Davis' religious convictions have no bearing on this purely legal inquiry. | Kentucky governor's directive, instructing all county clerks in Kentucky to issue marriage licenses to same-sex couples in compliance with Supreme Court's decision in Obergefell, did not substantially burden county clerk's rights under the free exercise clause, required to demonstrate violation of the Kentucky Religious Freedom Act; by requiring clerk to issue marriage licenses to same-sex couples, the state was not asking her to condone same-sex unions on moral or religious grounds, and clerk could continue her personal religious beliefs that marriage could only be union between a man and a woman. U.S.C.A. Const.Amend. 1; KRS 446.350. | Must county clerks condone or endorse same-sex marriage on religious or moral grounds when issuing marriage licenses? | Clerks of court - Memo 62 - RK.docx | ROSS-003303574-ROSS-003303575 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 6597 | Curtis v. Sch. Comm. of Falmouth, 420 Mass. 749 | 1.41E+30 | We begin our discussion by defining the role of the courts with respect to the administration of public education. Public education of children is unquestionably entrusted to the control, management, and discretion of State and local school committees. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1533 (9th Cir.), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985). See c. 72, " 37, wherein the Legislature explicitly delegates this authority to local school committees. | Public education of children is unquestionably entrusted to control, management, and discretion of state and local school committees. | "Is public education of children unquestionably entrusted to control, management, and discretion of state and local school committees?" | Education - Memo # 36 - C - SU.docx | ROSS-003311980-ROSS-003311981 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6598 | Packer Collegiate Inst. v. Univ. of State of N.Y., 273 A.D. 203 | 1.41E+30 | It may be observed that the only direction to the legislature in the state constitution concerning education, aside from the continuance of a state university and regents, is to maintain a system of free common schools (Article 11, sec. 1). Nothing is said about the regulation of private schools, and if such regulation is to be assumed it can only be justified as an exercise of police power. That any business or occupation affected with a public interest may be regulated by the legislature under its police power is a general principle too well settled to require the citation of any authorities. It is, we think, an indisputable fact also that all schools, public or private, are affected with a public interest, and hence subject to reasonable regulation under the police power of the state. The fact that prior to 1939 the state had never entered the field of regulating private nursery schools and kindergartens is not a sound reason for denying its power to do so now. The existence of such power is assumed even in those cases, cited hereafter, where specific compulsory laws or prohibitions have been held invalid. | All schools, public or private are "affected with a public interest" and hence subject to reasonable regulation under the police power of the state. | "Are all schools, public or private, affected with a public interest and hence subject to reasonable regulation under the police power of the state?" | 016906.docx | LEGALEASE-00127645-LEGALEASE-00127646 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6599 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19 | 366+41(6) | Generally, the doctrine of subrogation has its origins in equity. A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. The doctrine of subrogationpresupposes the payment of a debt by a party secondarily liable therefor, who thereby acquires an equitable right to be reimbursed by the principal debtor and for the purpose of making this right effective is invested with all the rights which the creditor had against him (the principal debtor). The purpose behind subrogation is to place the responsibility where it ultimately should rest by compelling payment by the one who in good conscience ought to pay it. It also prevents [individuals] from recouping a windfall.... In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of: the existence and applicability of equitable principles or contractual provisions as tosubrogation and reimbursement. Wolters v. Am. Republic Ins. Co., 149 N.H. 599, 601, 827 A.2d 197 (2003) (quotations, citations and brackets omitted). Claims for subrogation are generally made against a wrongdoer, but need not necessarily be limited to such an individual.]]] 73 Am.Jur.2d Subrogation " 2 (2001). | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | "Is the burden of proving entitlement on the subrogee, which generally must prove the existence and applicability of equitable principle?" | Subrogation - Memo # 1232 - C - CK.docx | ROSS-003286345-ROSS-003286346 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6600 | Metmor Fin. v. Landoll Corp., 976 S.W.2d 454 | 366+41(6) | The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership, 868 210, 223 (Mo.App.1994)(quoting State Sav. Trust Co. v. Spencer, 201 S.W. 967, 969 (Mo.App.1918)). Originally a common law doctrine, subrogation has as its aim the advancement ofjustice and prevention of injustice. Id.; Frago v. Sage, 737 S.W.2d 482, 483 (Mo.App. "Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it." Id. Although available, subrogation is a fairly drastic remedy and is usually allowed only in extreme cases "bordering on if not reaching the level of fraud." Landmark Bank v. Ciaravino, 752 923, 928 (Mo.App.1988). See also Anison v. Rice, 282 S.W.2d 497 (Mo.1955) (granting equitable subrogation where lender advanced money to pay off first deed of trust under threat of foreclosure at request of one joint owner where payment by lender benefitted equally the other joint owner); Bunn v. Lindsay, 95 Mo. 250, 7 S.W. 473 (1888) (refusing to allow equitable subrogation where lender provided money necessary to pay off first deed of trust and was unaware of intervening judgment lien of record and where judgment was recorded in public records and debtor failed to search public records because "a court of equity cannot relieve him by interfering with the legal rights of others who are without fault"); State Sav. Trust Co., 201 S.W. at 967 (determining equitable subrogation was appropriate where borrower obtained money from lender through the use of forged instrument and where superior liens were no worse off than they were before subsequent lender advanced his money to retire senior lien); Baker v. Farmers' Bank of Conway, 220 Mo.App. 85, 279 S.W. 428 (1926) (granting | Party seeking equitable subrogation must prove by clear and convincing evidence that equity requires another party to bear the loss. | Does a party need clear and convincing evidence to require another party to bear the loss in equitable subrogation? | Subrogation - Memo # 1233 - C - CK.docx | ROSS-003298886-ROSS-003298888 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6601 | Back v. Back, 307 Ky. 571 | 366+33(1) | Applicable principles of law are not in dispute. Where an heir discharges a valid encumbrance against property jointly owned, he is subrogated to the rights of the creditor, and would normally be entitled to interest paid. [] See 14 AmJur., Cotenancy, Section 45, and Ft. Jefferson Improvement Co. v. Dupoyster, 112 Ky. 792, 66 S.W. 1048, 2 L.R.A., N.S., 263. The same principle applies in the payment of taxes by a co-tenant. Gibson v. Western & Southern Life Insurance Company et al., 161 Ky. 810, 171 S.W. 390, L.R.A.1915D, 697. Where, however, the party making payment has by contract or his actions relinquished certain of his rights, he of course is not entitled to full subrogation and contribution. | Where an heir discharges a valid encumbrance against property jointly owned, he is subrogated to the rights of the creditor and would normally be entitled to interest paid, but where such heir has by contract or by his actions relinquished certain of his rights, he is not entitled to full subrogation and contribution from other heirs. | "Where an heir discharges a valid encumbrance against property jointly owned, is he subrogated to the rights of the creditor?" | Subrogation - Memo # 1239 - C - CK.docx | ROSS-003325836-ROSS-003325837 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 6602 | Kaf-Kaf v. Rodless Decorations, 90 N.Y.2d 654 | 217+3522 | Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse (see, Pennsylvania Gen. Ins. Co. v. Austin Powder Co., 68 N.Y.2d 465, 510 N.Y.S.2d 67, 502 N.E.2d 982). While parties to an agreement may waive their insurer's right of subrogation, a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears (see, S.S.D.W. Co. v. Brisk Waterproofing Co., 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097). | While parties to agreement may waive their insurer's right of subrogation, waiver of subrogation clause cannot be enforced beyond scope of specific context in which it appears. | Can a waiver of subrogation clause be enforced beyond the scope of a specific context in which it appears? | 043508.docx | LEGALEASE-00127594-LEGALEASE-00127595 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6603 | Walt Disney World Co. v. Harrison, 443 So. 2d 389 | 413+1 | No section of the act explicitly directs an employer to inform a claimant of the employee's rights, benefits, and obligations under the workers' compensation act in the manner section 440.185(4) requires the Division to so inform an employee when notice of a claim is received. Nevertheless, an employer must offer or furnish benefits when the employer knows, or should know from facts properly and diligently investigated, that such benefits are due. An employer is under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker. Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981); Holiday Care Center v. Scriven, 418 So.2d 322, 327 (Fla. 1st DCA 1982). This obligation cannot be met unless the employer informs the injured worker of the benefits to which he or she is entitled. Section 440.13(1) requires the employer to pay the claimant for attendant care services obtained by her, even though not first requested, if the nature of the injury requires such nursing services and if the employer, having knowledge of the injury, failed to provide such services. City of Leesburg v. Balliet, 413 So.2d 860 (Fla. 1st DCA 1982). The nature of the claimant's injury and necessary treatment may be such as to impute knowledge of claimant's need for attendant care services to the employer. Ibid., Silver Springs Sportswear v. Marlin, supra. There was no error in the deputy's finding that benefits were due from February 12, 1982. | Employer is under continuing obligation, once it has knowledge of employee's injury, to place needed benefits in hands of injured worker. West's F.S.A. SS 440.01 et seq., 440.13(1), 440.185(4). | "Is an employer under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker?" | 048463.docx | LEGALEASE-00127327-LEGALEASE-00127328 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6604 | Sokolek v. Gen. Motors Corp., 450 Mich. 133 | 413+1 | Worker's compensation benefits are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. Franks v. White Pine Copper Div., 422 Mich. 636, 654, 375 N.W.2d 715 (1985). In Lahti v. Fosterling, 357 Mich. 578, 99 N.W.2d 490 (1959), this Court held that the Legislature could increase medical benefits effective retroactively to include persons injured before the effective date of the amendatory act. Similarly, the Legislature may, as here, reduce medical benefits. | Worker's compensation benefits are form of income maintenance for persons whose wage earning capacity has been suspended or terminated. | Are workers compensation benefits a form of income maintenance for persons whose wage earning capacity have been suspended or terminated? | 048483.docx | LEGALEASE-00127421-LEGALEASE-00127423 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6605 | Inman v. Nationwide Mut. Ins. Co., 433 Pa. Super. 534 | 413+1 | Appellant's reliance on section 71 of the Act is likewise inappropriate. Section 71 prohibits, as against public policy, an employer from agreeing with his employee to hold employer harmless for any future injury the employee may suffer.This section is inapplicable to the matter before us as no such agreement was entered and appellants are seeking to recover for an injury which has already occurred. Further, we take no issue with this section and indeed find to allow the formation of such an agreement between employer and employee would clearly violate the intent and spirit of the Act. A contract of insurance to cover general liability of the insured cannot be construed, because of a clause which excludes employees' work-related injuries, to violate the Act, which voids any agreements to insulate an employer for future damages arising out of the employment. Neither the exclusion clause of the general liability contract nor section 71 prevents appellants from seeking damages directly from intervenors/employer. Accordingly, contrary to appellants' argument, the exclusionary language contained in employer's general liability policy is not void as against public policy, nor is it exemplary of that type of agreement which section 71 was drafted to avoid. | Section of Workmen's Compensation Act which prohibits, as against public policy, employer from agreeing with employee to hold employer harmless for any future injury employee may suffer was inapplicable where no agreement was entered and employee sought to recover for injury which had already occurred. 77 P.S. S 71. | Does the workmens compensation act prohibits that an employer from agreement with an employee to hold the employer harmless for any future injury? | 048532.docx | LEGALEASE-00127380-LEGALEASE-00127381 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6606 | Rodgers v. United States, 158 F. Supp. 670 | 13+65 | The rights of the parties at the time the decree is rendered ought to govern the court in rendering the decree, Randel v. Brown, 1844, 2 How. 405, 423, 11 L.Ed. 318. 'A court of equity is not restricted to an adjustment of the rights of the parties as they existed when the suit was brought, but will give relief appropriate to events occurring pending the suit. 21 C.J. 137. 'Equity acts in the present tense', and molds its 'decree to actualities not history.' Continental Securities Co. v. Interborough Rapid Transit Co., D.C.N.Y., 207 F. 467, 471, affirmed, 2 Cir., 221 F. 44; 32 C.J. 76, 63.' Champion Spark Plug Co. v. Reich, 8 Cir., 1941, 121 F.2d 769, 772, certiorari denied 314 U.S. 669, 62 S.Ct. 130, 86 L.Ed. 535. | Court of equity is not restricted to an adjustment of the rights of the parties as they existed when the suit was brought but will give relief appropriate to events occurring pending the suit. | Are equity courts restricted to an adjustment of rights of parties as such rights existed when suit was brought? | Action - Memo # 708 - C TJ.docx | ROSS-003325303-ROSS-003325304 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6607 | City of Coral Gables v. Sakolsky, 215 So. 2d 329 | 13+65 | It is established in Florida that in law actions "the right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted". Voges v. Ward, 1929, 98 Fla. 304, 123 So. 785. And the same rule applies to equity proceedings. Meredith v. Long, 1928, 96 Fla. 719, 119 So. 114. See also to the same effect, Hasam Realty Corp. v. Dade County, Fla.App.1965, 178 So.2d 747; Tomayko v. Thomas, Fla.App.1962, 144 So.2d 335; Mutual Ben. Health & Accident Ass'n. v. Ott, 1942, 151 Fla. 185, 9 So.2d 383; and Stegemann v. Emery, 1933, 108 Fla. 672, 146 So. 650. In fact, this Court, in the per curiam majority opinion in Davidson v. City of Coral Gables, Fla.App.1960, 119 So.2d 704, text 708, held that " the law as it stands at the time of the decree, rather than at the time of application or filing of the suit, controls the decision thereon". In the instant case, however, whether the law at the time suit is filed or the decree is entered governs, is of no consequence, inasmuch as Ordinance No. 1475 was in force at both times. But Davidson is important in setting forth the exception, not applicable here, to the general rule aforesaid, which exception we reaffirm | In both law actions and equity proceedings, right of plaintiff to recover must be measured by facts as they exist when suit is instituted. | "In law action, must the right of the plaintiff to recover be measured by facts as they existed when suit was instituted?" | 005979.docx | LEGALEASE-00128227-LEGALEASE-00128229 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 6608 | Richardson v. Hampton, 345 F. Supp. 600 | 13+63 | But the Court does not view plaintiffs actions as those of a reasonably diligent man under the circumstances. Persons claiming excuse for delay must show that they exercised the diligence required of reasonably prudent individuals.[] Morales v. Moore- McCormack Lines, 208 F.2d 218, 221 (5th Cir. 1953); Pacific Employers Insurance Co. v. Oberlechner, 161 F.2d 180 (5th Cir. 1947). | Persons claiming excuse for delay giving rise to claim of laches must show that they exercised the diligence required of reasonably prudent individuals. | Must persons claiming excuse for delay show that they exercised the diligence required of reasonably prudent individuals? | Action - Memo # 747 - C NS.docx | ROSS-003325319-ROSS-003325320 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6609 | Tomayko v. Thomas, 144 So. 2d 335 | 13+65 | The appellant contends the chancellor erred in denying his motion to transfer this cause to the law side. We find this contention to be without merit. The appellant analyzes the complaint as a simple demand for money judgment. After all, he says, what could the appellee hope to get but the money? This is not the test of equity jurisdiction. The test of equity jurisdiction is whether such facts exist at the time of the commencement of the action as are sufficient to confer jurisdiction on the court. Even where subsequent events render equitable relief unnecessary or improper equity jurisdiction is not defeated. Carner v. Shapiro, Fla.App.1958, 106 So.2d 87; Mutual Benefit Health and Accident Ass'n v. Ott, 151 Fla. 185, 9 So.2d 383. It is our conclusion that facts existed at the commencement of this action which entitled the appellees to the aid of a court of equity in accordance with the tenor of the demands made in their complaint. | Test of equity jurisdiction is whether such facts existed at time of commencement of the action as are sufficient to confer jurisdiction on the court, and even where subsequent events render equitable relief unnecessary or improper equity jurisdiction does not defeat it. | Whether facts existing at the time of commencement of the action are sufficient to confer jurisdiction on the court is the test of equity jurisdiction? | 006109.docx | LEGALEASE-00128186-LEGALEASE-00128187 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6610 | Territory v. McCandless, 24 Haw. 485 | 29T+451 | It should be stated at the outset that there is no disposition by the defendant to question the authority of Congress to enact, under the war-power conferred by the Constitution of the United States, plenary laws regulating the prices of foods and other commodities which may be helpful to the nation while engaged in war. This authority to legislate is conferred upon Congress by those constitutional provisions which grant to it power to declare war, to raise and support armies, etc., and which is known as the war-power of Congress. In the exercise of this authority Congress, shortly after the commencement of war between the United States and the Imperial German government, in April, 1917, passed what is known as the Federal Food Control Bill, which authorized the President of the United States by reason of the existence of a state of war and for the national security and defense, the successful prosecution of the war and the support and maintenance of the army and navy, to exercise the power of regulation and control over foods, fuel and numerous other commodities mentioned and to fix the prices of wheat and of coal and coke, and whenever it is deemed essential to carry into effect the provisions of the act the President might by proclamation require licenses to be obtained for the importation, manufacture, storage and distribution of necessities. By virtue of this authority the President did by proclamation dated the 8th day of October, 1917, require all persons engaged in distributing, buying and selling rice, rice flour and many other commodities mentioned in the proclamation to obtain licenses therefor, and profiteering in any necessity (rice, etc.) is made unlawful and punishable. | This authority to legislate is conferred upon Congress by those constitutional provisions which grant to it power to declare war, to raise and support armies, etc., and which is known as the war-power of Congress. | Is the power of Congress to raise and support armies constitutionally authorized? | 008307.docx | LEGALEASE-00128597-LEGALEASE-00128599 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6611 | Smith v. Reynolds, 54 Conn. App. 381 | 307A+517.1 | "The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by " 52-80, is absolute and unconditional. Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket."]] (Internal quotation marks omitted.) H.G. Bass Associates, Inc. v. Ethan Allen, Inc., 26 Conn. App. 426, 431, 601 A.2d 1040 (1992). "[A] withdrawal 'does not need the permission of the court for cause shown if a hearing on an issue of fact has not commenced.' " Baker v. Cordisco, 37 Conn.App. 515, 521, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995). | Effect of plaintiff's withdrawal of action before a hearing on merits, so far as pendency of action is concerned, is strictly analogous to that presented after rendition of final judgment or erasure of case from docket. C.G.S.A. S 52-80. | Is the right of a plaintiff to withdraw his action before a hearing on the merits absolute and unconditional? | Pretrial Procedure - Memo # 948 - C - SK.docx | ROSS-003303754-ROSS-003303755 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6612 | Collection Specialists a Div. of Gen. Serv. Bureau v. Vesely, 238 Neb. 181 | 388+162 | Defendant contends that the plaintiff in this case had no right to dismiss without prejudice after defendant's motion for directed verdict was made and that the court was without authority to grant plaintiff's motion to dismiss without prejudice. Defendant relies on language in Rhode v. Duff, 208 F. 115 (8th Cir.1913), and Spies v. Union Pac. R. Co., 250 F. 434 (8th Cir.1918), for this proposition. We agree that in this case, after defendant moved for a directed verdict and argument of both counsel on that motion had been completed, the case was under submission and plaintiff lost its absolute right to dismiss without prejudice. The trial court's holding to the contrary that the plaintiff has "a right to have [the petition] dismissed on his motion at his expense at any time before a decision is rendered" is specifically rejected. | Plaintiff had no right to dismiss without prejudice after defendant's motion for directed verdict was made and argument of both counsel on directed verdict motion had been completed. Neb.Rev.St. S 25-601. | Does a plaintiff has an absolute right to dismiss without prejudice after a defendant has moved for a directed verdict and the case is under final submission after both counsel have completed their argument on that motion? | 039287.docx | LEGALEASE-00128448-LEGALEASE-00128449 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6613 | In re Conservatorship of Martha P., 117 Cal. App. 4th 857 | 307A+501 | Code of Civil Procedure section 581, subdivision (b) provides in relevant part that "an action may be dismissed ...:(1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial...." For purposes of this provision, "action" means "any civil action or special proceeding." (" 581, subd. (a)(1).) The right to voluntarily dismiss an action or special proceeding before the commencement of trial, however, is not absolute. (Cravens v. State Bd. of Equalization (1997) 52 Cal.App.4th 253, 256, 60 Cal.Rptr.2d 436.) Section 581 of the Code of Civil Procedure recognizes exceptions to this right, and " "other limitations have evolved through the courts' construction of the term "commencement of trial." These exceptions generally arise where the action has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication." [Citation.]" (Mossanen v. Monfared (2000) 77 Cal.App.4th 1402, 1409, 92 Cal.Rptr.2d 459.)\ | The right to voluntarily dismiss an action or special proceeding before the commencement of trial is not absolute, as statute recognizes exceptions, and other limitations have evolved through the courts' construction of the term "commencement of trial." West's Ann.Cal.C.C.P. S 581(b)(1). | Is the right of a plaintiff to voluntarily dismiss an action before commencement of trial not absolute? | 039523.docx | LEGALEASE-00128455-LEGALEASE-00128456 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 6614 | Tesoro Petroleum Corp. v. Nabors Drilling USA, 106 S.W.3d 118 | 366+35 | A contractual right to indemnity should be determined in the same fashion as other contractual rights"as a matter of law. Fisk, 888 S.W.2d at 815. A liability insurer for an oil well driller or operator does not waive its right to subrogation to its insured's claims against the other party for matters beyond the scope of the indemnity agreement between those parties. See Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 355 (Tex.2000) (a waiver of subrogation by an oil well operator or drilling contractor for liabilities assumed under the contract does not waive the insurer's right to subrogation to enforce the indemnity agreement). The parties to the indemnity agreement must look to their own contract to determine what subrogation rights they may insist that the other party require its insurers to waive. Id. at 356"57. Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. See id. at 356. | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | "Where a party to an indemnity contract is not contractually obligated to enforce a waiver of subrogation, can the other party cannot insist that it assert a waiver of subrogation?" | 043220.docx | LEGALEASE-00128365-LEGALEASE-00128366 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6615 | Richmond Steel v. Legal & Gen. Assur. Soc., Ltd., 821 F. Supp. 793 | 366+35 | The purpose of a waiver of subrogation clause in construction contracts is to avoid disruptions and disputes between the parties working on a project.Commercial Union Ins. v. Bituminous Casualty Corp., 851 F.2d 98, 101 (3rd Cir.1988); Tokio Marine, 786 F.2d at 104. The clause is also meant to require a party to the contract to provide property insurance for all the parties. Industrial Risk v. Garlock Equipment, 576 So.2d 652, 656 (Alabama 1991). | Purpose of waiver of subrogation clause in construction contract is to avoid disruptions and disputes between parties working on project; clause is also meant to require one party to contract to provide property insurance for all parties. | Is the purpose of a waiver of subrogation clause in a construction contract to avoid disruptions and disputes between parties working on a project? | 043224.docx | LEGALEASE-00128397-LEGALEASE-00128398 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 6616 | Ray v. Donohew, 177 W. Va. 441 | 366+35 | "Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another." Syl. Pt. 6, Fuller, 304 S.E.2d 347 (quoting Syllabus, Buskirk, 113 W.Va. 764, 169 S.E. 738). Furthermore, "[e]quity will not enforce subrogation 'in the face of a contract that negatives the idea of subrogation.' An agreement for 'another and different' security 'negatives the existence of any agreement for subrogation.' " Buskirk, 113 W.Va. at 767, 169 S.E. at 739 (citations omitted). Thus, the right of subrogation can either be modified or extinguished through express contractual language, or by an action of the surety which is inconsistent with the right of subrogation, such as taking a different and independent security with the intent to rely on that security in the event of default by the principal. However, we feel that this holding of Buskirk is limited to the extent that the act must actually be inconsistent with subrogation, and the separate security must have been intended to provide an exclusive remedy to the surety. See 73 Am.Jur.2d Subrogation "" 8, 9 and 11 (1974); 83 C.J.S. Subrogation "" 3b and 51 (1953 & Supp. 1986). | Right of subrogation may be modified or extinguished through express contractual language or by action of surety inconsistent with right of subrogation, such as surety's taking of different and independent security as exclusive remedy in event of principal's default. | Can a right of subrogation be modified or extinguished through express contractual language? | Subrogation - Memo # 1060 - C - NS.docx | ROSS-003299757-ROSS-003299759 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6617 | Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A., 8 S.W.3d 893 | 366+35 | Generally, money paid unconditionally to a contractor for work done under the contract becomes his "to do with as he pleases" and is "freed of any equity or right of subrogation in the surety." Id. at 345. Capitol Indemnity makes no allegation, nor presents any evidence, that ESI was obligated under its construction contract with the city to use the payments it received from the city only to pay the labor and materials claims on the project. | Generally, money paid unconditionally to a contractor for work done under the contract becomes his to do with as he pleases and is freed of any equity or right of subrogation in the surety. | Does money paid unconditionally to a contractor for work done under the contract becomes his to do with as he pleases? | Subrogation - Memo # 1111 - C - ES.docx | ROSS-003314590-ROSS-003314591 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 6618 | Day Cruises Mar., L.L.C v. Christus Spohn Health Sys., 267 S.W.3d 42 | 366+1 | Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." First Nat'l Bank of Houston v. Ackerman, 70 Tex. 315, 8 S.W. 45, 47 (1888); see also Murray v. Cadle Co., 257 S.W.3d 291, 299 (Tex.App.-Dallas 2008, no pet. h.). Equitable subrogation, unlike contractual subrogation, "does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarilyliable and which in equity should have been paid by the latter." Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007). The rationale for this rule is that the insured would otherwise recover twice, a result that "the law refuses to sanction." Ortiz v. Great S. Fire & Cas. Ins. Co., 587 S.W.2d 818, 820 (Tex.Civ.App.-Amarillo 1979), rev'd on other grounds, 597 S.W.2d 342 (Tex.1980). The burden is on the party claiming equitable subrogation to establish he is entitled to it. Monk v. Dallas Brake & Clutch Serv. Co., 697 S.W.2d 780, 782 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). | Equitable subrogation, unlike contractual subrogation, does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | Is one entitled to subrogation only in the case he was required to pay a debt for which another who was primarily liable? | 043328.docx | LEGALEASE-00128143-LEGALEASE-00128144 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6619 | Rokeby-Johnson v. Aquatronics Int'l, 159 Cal. App. 3d 1076 | 217+3526(10) | In subrogation litigation California follows the doctrine of superior equities. When a surety seeks recovery against a third person in weighing the equities, which includes consideration of the negligence of its insured and the third person, the burden is upon the surety to establish its superior equity. (Meyers v. Bank of America, etc. Ass'n, 11 Cal.2d 92, 103, 77 P.2d 1084.) Underwriters in its opening brief has suggested that Aquatronics' remedy should be against NSI for indemnification should Underwriters prevail in its suit against Aquatronics. Not only would this provide a windfall to Underwriters who took the benefit of the premiums and now declines to suffer the loss, but is suggesting that NSI, its insured, should or may be liable to stand the loss that it had insured against. We fail to see how the doctrine of subrogation comes to the aid of Underwriters in this situation. | When surety seeks recovery against third persons in weighing equities, which includes consideration of negligence of its insured and third persons, burden is upon surety to establish its superior equity. | Is the burden upon surety to establish its superior equity in seeking recovery against third party? | Subrogation - Memo # 1123 - C - KA.docx | ROSS-003317345-ROSS-003317347 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6620 | In re S & D Foods, 144 B.R. 121 | 289+544 | The fiduciary duties owed by partners and joint ventures include the duties of loyalty, honesty and candor, good faith and fair dealing, and lack of self-dealing. See, Brunner v. Horton, 702 P.2d 283, 284 (Colo.Ct.App.1985); C.J.I.2d, " 31:16. Compare, Kincaid v. Miller, 129 Colo. 552, 272 P.2d 276, 281 (1954) (en banc ), reh'g denied, July 19, 1954. The same can be said for parties to any of the above mentioned relationships of trust and confidence to each other. All parties to such relationships are bound by the highest standards of good conduct and fair dealing. Thus, without the consent of the other parties, no party to a fiduciary or confidential relationship may pursue his own personal interest in a way that is hostile to the interest of another party so long as the relationship continues. See, Kincaid, supra, 272 P.2d at 281. Moreover, a fiduciary duty can form during the negotiations that precede the formal execution of a written agreement. Lucas v. Abbott, 198 Colo. 477, 601 P.2d 1376, 1379 (1979) (en banc ). See also, Fitz"Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 264"65 (1951). Thus, during negotiations, each party to a future or potential fiduciary relationship has a duty to make full disclosure to the other parties concerning matters that have induced them to enter into the relationship. See, Lucas, supra, 601 P.2d at 1379, citing, Taylor v. Jackson, 267 Or. 33, 514 P.2d 548 (1973). Finally, fiduciary obligations continue after dissolution of a partnership or joint venture and until all partnership or joint venture affairs are completely wound-up. See, Hooper v. Yoder, supra, 737 P.2d at 859. See also, Steeby v. Fial, 765 P.2d 1081, 1084 (Colo.Ct.App.1988). We hold that this same rule of law applies to confidential relationships. Thus, a partner, joint venturer, or one in a dissolving confidential relationship, which still has loose ends dangling, cannot cut-off the rights of the other partner in the dissolved relationship by the tactic of entering into a "new" contract to | Under Colorado law, fiduciary duties owed by partners to partnership and by joint venturers to the joint venture include duties of loyalty, honesty and candor, good faith and fair dealing, and lack of self-dealing. | Are the duties of loyalty and good faith included in the fiduciary duties of a partner in a partnership? | 022029.docx | LEGALEASE-00128955-LEGALEASE-00128957 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 6621 | Rose's Stores v. Bradley Lumber Co., 105 N.C. App. 91 | 401+5.1 | In deciding whether plaintiff's action would affect title to or an interest in land for purposes of N.C.G.S. " 1-76(1), we determine the nature and purpose of plaintiff's action solely from the allegations in its complaint. Rose's Stores v. Tarrytown Center, 270 N.C. 201, 203, 154 S.E.2d 320, 321 (1967); Pierce v. Associated Rest and Nursing Care, Inc., 90 N.C.App. 210, 368 S.E.2d 41 (1988). If the outcome of an action-whether plaintiff does or does not prevail on the particular claims asserted in its complaint-would not affect an interest in land, the action is not removable as a local action under N.C.G.S. " 1-76(1). Rose's Stores, 270 N.C. at 205, 154 S.E.2d at 324; see also Eames v. Armstrong, 136 N.C. 392, 393-94, 48 S.E. 769, 770 (1904). | In deciding whether action would affect title to or an interest in land for purposes of venue statute, court determines the nature and purpose of the action solely from allegations of the complaint. G.S. S 1-76(1). | Do courts consider the allegations in the complaint in deciding whether the judgment sought by plaintiff would affect title to land? | 047487.docx | LEGALEASE-00128874-LEGALEASE-00128875 | Order, SA, Sub | 0.72 | 1 | 0 | 1 | 1 | 1 |
| 6622 | Bundy v. Nustar GP, 277 Or. App. 785 | 413+2 | To provide context for the procedural history of this case, we begin with a brief overview of the applicable legal concepts. Under the workers' compensation law, "[w]orkers who are injured in the course and scope of employment are entitled to receive certain benefits from their employers, and, with some notable exceptions, those benefits are exclusive of all other remedies that would otherwise be available to the worker." Hanson v. Versarail Systems, Inc., 175 Or.App. 92, 95, 28 P.3d 626 (2001). The exclusive remedy bar is found in ORS 656.018,1 and is available to an employer to raise as a defense to a claim brought against it by an employee. See Olsen v. Deschutes County, 204 Or.App. 7, 21, 127 P.3d 655, rev. den., 341 Or. 80, 136 P.3d 1123 (2006) (discussing burden on the employer to plead and prove exclusivity bar when raised as an affirmative defense). Thus, "[t]he workers' compensation statutory scheme operates as a substitute for civil claims that an employee could assert against his or her employer in an action at common law and provides liability "coverage" against the risks that arise from those kinds of claims." Stone v. Finnerty, 182 Or.App. 452, 458, 50 P.3d 1179, adh'd to as modified, on recons., 184 Or.App. 111, 55 P.3d 531 (2002), rev. den., 335 Or. 422, 69 P.3d 1233 (2003) (emphasis omitted). | The workers' compensation statutory scheme operates as a substitute for civil claims that an employee could assert against his or her employer in an action at common law and provides liability "coverage" against the risks that arise from those kinds of claims. West's Or.Rev. Stat. Ann. S 656.018. | What is the general scheme of the workers compensation act? | 047710.docx | LEGALEASE-00128715-LEGALEASE-00128716 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6623 | Webster v. Boh Bros. Const. Co., 603 So. 2d 761 | 275+116 | However, trial judges lack the authority to make substantive amendments. Bruscato v. Century Ready Mix Corp., 569 So.2d 633, 634 (La.App.2d Cir.1990). They are prohibited from making substantive amendments to final judgments on their own motions or on motions of any party. Daughdrill v. Tenneco Oil, 529 So.2d 104, 105 (La.App. 4thCir. [(Only three avenues are available to a party seeking to alter the substance of a finaljudgment: (1) timely application for a new trial, (2) petition for nullity, and (3) timely appeal.|] Bonaventure v. Pourciau, 577 So.2d 742, 745 (La.App. 1st Cir.1991). Substantive amendments are thus invalid since they are made outside a trial judge's statutory authority. Creel v. Bogalusa Community Medical Center, 580 So.2d 551, 552 (La.App. Ist Cir.), writ denied 585 So.2d 567 (La.1991). Thus, the trial court improperly amended the original judgment in this case. | Only three avenues are available to a party seeking to alter the substance of a final judgment: timely application for new trial; petition for nullity; and timely appeal. | What avenues are available to a party seeking to alter the substance of a final judgment? | Appeal and error - Memo 37 - RK.docx | ROSS-003299127-ROSS-003299129 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6624 | Francis v. Lafon Nursing Home of Holy Family, 2002-1863 (La. App. 4 Cir. 3/19/03), 840 So. 2d 1281 | 275+0.5 | As this Court stated in Webster v. Boh Bros. Const. Co., Inc., 603 So.2d 761, 763 (La.App. 4th Cir.1992):[T]rial judges lack the authority to make substantive amendments. Bruscato v. Century Ready Mix Corp., 569 So.2d 633, 634 (La.App. 2d Cir.1990). They are prohibited from making substantive amendments to final judgments on their own motions or on motions of any party. Daughdrill v. Tenneco Oil, 529 So.2d 104, 105 (La.App. 4th Cir.1988). Only three avenues are available to a party seeking to alter the substance of a final judgment: (1) timely application for a new trial, (2) petition for nullity, and (3) timely appeal. Bonaventure v. Pourciau, 577 So.2d 742, 745 (La.App. 1st Cir.1991). | Only three avenues are available to a party seeking to alter the substance of a final judgment: (1) timely application for a new trial, (2) petition for nullity, and (3) timely appeal. LSA-C.C.P. art. 1951. | What avenues are available to a party seeking to alter the substance of a final judgment? | 008192.docx | LEGALEASE-00129074- LEGALEASE-00129076 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6625 | JFS v. ABMJ, 120 Ill. App. 3d 261 | 30+18 | It is the responsibility of this court to see that no unauthorized extension or reduction of appellate jurisdiction occurs whether by direct or indirect means. Any such ad hoc decision as urged by defendant disorganizes practice by encouraging attempts to secure or oppose appeals with a corresponding waste of time and money. The scope of appellate jurisdiction is defined by rules promulgated by the supreme court and any enlargement on the allowable list of appealable interlocutory orders must be initiated by a change of those rules. Accordingly, we dismiss the present appeal for lack of jurisdiction. | Scope of appellate jurisdiction is defined by rules promulgated by Supreme Court, and any enlargement on allowable list of appealable interlocutory orders must be initiated by change of such rules. S.H.A. ch. 110A, P 307(a). | Is appellate jurisdiction limited to those cases in which appeals have been timely filed under rules promulgated by the Supreme Court? | 008221.docx | LEGALEASE-00129107- LEGALEASE-00129108 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6626 | Lone Star Indus. v. United States, 109 Fed. Cl. 746 | 141+15.1 | The Louisiana Supreme Court admonishes against finding servitudes where they do not clearly exist. "Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication." Palomeque v. Prudhomme, 664 So.2d 88, 93 (La.1995). In fact,When these elements are unclear or doubtful on the face of the title, a court may not supply them by implication or reform the language used in the title to broaden or restrict the terms of the original agreement. Doubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude.St. Andrews Place, Inc. v. City of Shreveport, 914 So.2d 1203, 1210 (La.Ct.App.2005) (citing La. Civ. Code art. 730, Mardis v. Brantley, 717 So.2d 702 (La.Ct.App.1998)). In this case, Lone Star has not made a plausible allegation that the MRGO is a servitude of passage under Louisiana law. Plaintiff has failed to allege any facts that would suggest that access to the MRGO for use of a particular type of vessel inhered in the title to its property. By virtue of access to several public waterways, a public road and a railway, Plaintiff's property is not an enclosed estate as defined under Louisiana law. This Court therefore finds that Plaintiff has not alleged a cognizable property right to deep-draft access under Louisiana law. | Under Louisiana law, predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property; therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. | Why are predial servitudes in derogation of public policy? | 042503.docx | LEGALEASE-00129129- LEGALEASE-00129130 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6627 | Pena v. Minidoka Cty., 133 Idaho 222 | 104+113(6) | Before the commissioners can legally empower the appointment of a deputy by a county officer, they must first determine whether a new deputy is necessary. Taylor v. Canyon County, 6 Idaho 466, 470, 56 P. 168, 169"70 (1899) (as applicable to county officers named in Article XVIII, " 6). Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Crooks v. Maynard, 112 Idaho 312, 317, 732 P.2d 281, 282 (1987). The county commissioners' power, however, is limited and cannot be exercised to override every hiring decision, id., or to impose qualifications in the hiring process. Estep v. Comm'rs of Boundary County, 122 Idaho 345, 834 P.2d 862 (1992). | Before county commissioners can legally empower the appointment of a deputy by a county officer, they must first determine whether a new deputy is necessary, and upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Const. Art. 18, S 6. | Must county commissioners authorize the appointment of a deputy clerk upon a showing that a deputy or clerical assistant is needed? | 013365.docx | LEGALEASE-00129684- LEGALEASE-00129685 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 6628 | Tremont Lumber Co. v. May, 143 La. 389 | 302+279(1) | Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition must be considered to be the beginning of the suit; the suit must be considered as dating only from such filing, and not from the filing of the original petition; and the supplemental petition must be served upon the defendant, and the delays for answering must be allowed as in the case of an original petition. Hart & Co. v. Bowie, 34 La. Ann. 323; Raymond v. Palmer, 35 La. Ann. 281; Ursuline Nuns v. Depassau, 7 Mart. N. S. 645; 1 C. J. 1159. In the instant case the supplemental, or amended, petition was not served on defendants; defendants were never cited to answer it; they duly excepted on that ground to being required to answer it. | Where cause of action is stated for first time in supplemental petition, filing of supplemental petition must be considered beginning of suit, and must be served on defendant and delays for answering allowed as in case of original petition. | Can a supplemental petition be considered as the beginning of a suit? | 023110.docx | LEGALEASE-00129225- LEGALEASE-00129226 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6629 | Phillips v. Phillips, 137 Cal. App. 2d 651 | 302+225(2) | The sole question here involved is whether the trial court abused its discretion in sustaining the demurrer without leave to amend. The general rule is that it is an abuse of discretion to sustain without leave to amend a demurrer to an original complaint unless the complaint shows on its face that it is incapable of amendment. Temescal Water Co. v. Department of Public Works, 44 Cal.2d 90, 107, 280 P.2d 1; King v. Mortimer, 83 Cal.App.2d 153, 158, 188 P.2d 502; C. Dudley De Velbiss Co. v. Kraintz, 101 Cal.App.2d 612, 617, 225 P.2d 969. This rule applies irrespective of whether leave to amend is requested or not. MacIsaac v. Pozzo, 26 Cal.2d 809, 816, 161 P.2d 449; King v. Mortimer, 83 Cal.App.2d 153, 158, 188 P.2d 502, supra; Code Civ.Proc., Sec. 472c. It is also the rule that a judgment may be reopened or vacated in an equitable action for extrinsic fraud. Giavocchini v. Bank of America Nat. Trust and Savings Ass'n, 39 Cal.App.2d 444, 447, 103 P.2d 603; Baker v. Baker, 217 Cal. 216, 18 P.2d 61. In Metzger v. Vestal, 2 Cal.2d 517, 524, 42 P.2d 67, 70, the court said: "As types of extrinsic fraud, the courts of appellate jurisdiction of this state have adopted the classic definition, found in United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93, in which the Supreme Court of the United States said: "But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his | General rule is that it is abuse of discretion to sustain without leave to amend demurrer to original complaint unless complaint shows on its face that it is incapable of amendment, and this rule applies irrespective of whether leave to amend is requested or not. West's Ann.Code Civ.Proc. S 472c. | It is an abuse of discretion to sustain a demurrer to an original complaint without leave to amend? | Pleading - Memo 224 - RMM.docx | ROSS-003287590-ROSS-003287592 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6630 | Parnell v. Powell, 191 S.C. 159 | 307A+513 | If the discontinuance or dismissal before trial will not result in legal prejudice to the defendant, a plaintiff ordinarily has a right to discontinue any action commenced by him. A party should no more be compelled to continue a litigation than to commence one, except where substantial rights of other parties have accrued and injustice will be done to them by permitting the discontinuance. In such a case, through the control which the Court exercises over its order, there is discretion to refuse the discontinuance, but where nothing appears to show prejudice or violation of the rights or interests of the adverse party, the plaintiff may be granted a voluntary nonsuit, conditioned upon such terms and conditions as may be proper to protect the defendant. | Where substantial rights of other parties have accrued and injustice will be done to them by permitting discontinuance, trial court has discretion to refuse discontinuance or dismissal of action, but, if no prejudice results, plaintiff may be granted a voluntary nonsuit conditioned upon such terms and conditions as may be proper to protect defendant. | "If the discontinuance or dismissal before trial will not result in legal prejudice to the defendant, does a plaintiff has a right to discontinue an action commenced by him?" | Pretrial Procedure - Memo # 1305 - C-BP.docx | ROSS-003287422-ROSS-003287423 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 6631 | Levin & Sons v. Mathys, 409 N.E.2d 1195 | 307A+501 | In determining whether to grant a voluntary dismissal "the court should follow the traditional principle that dismissals should be allowed unless the defendant will suffer some plain legal prejudice, other than the mere prospect of a second lawsuit." State v. Holder, 260 Ind. 336, 348, 295 N.E.2d 799, 801 (concurring opinion, J. Prentice); See Lee-Moore Oil Co. v. Union Oil Co, 441 F.Supp. 730 (D.C.N.C.1977). Decatur offered no example of any prejudice other than the fact some issues are still justiciable and that a second lawsuit causing them to incur further expense could be initiated. Thus, Decatur has not shown legal prejudice under the Indiana standard as discussed in Holder or substantial prejudice as illustrated in the above quote from Moore's Federal Practice. | In determining whether to grant a voluntary dismissal, court should follow traditional principle that dismissal should be allowed unless defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. Rule TR. 41(A). | What is the test for determining whether a voluntary dismissal is proper? | 024876.docx | LEGALEASE-00129285-LEGALEASE-00129286 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6632 | Schering & Glatz v. Am. Pharm. Co., 234 A.D. 343 | 307A+501 | We realize there are exceptions to the rule. Where a party has been caused great expense in preparing for trial, the action may not be discontinued simply to avoid liability for such disbursements. When the plaintiff is without a meritorious case, it is within the power of the court to compel the payment of additional costs and disbursements. | Action may not be discontinued simply to avoid liability for great expense which another party has been caused in preparing for trial. | Can an action be discontinued simply to avoid liability for a great expense which has been caused by another party in preparing for the trial? | 025593.docx | LEGALEASE-00129388-LEGALEASE-00129389 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |
| 6633 | Parnell v. Powell, 191 S.C. 159 | 307A+501 | If the discontinuance or dismissal before trial will not result in legal prejudice to the defendant, a plaintiff ordinarily has a right to discontinue any action commenced by him. A party should no more be compelled to continue litigation than to commence one, except where substantial rights of other parties have accrued and injustice will be done to them by permitting the discontinuance. In such a case, through the control which the Court exercises over its order, there is discretion to refuse the discontinuance, but where nothing appears to show prejudice or violation of the rights or interests of the adverse party, the plaintiff may be granted a voluntary nonsuit, conditioned upon such terms and conditions as may be proper to protect the defendant. | If discontinuance or dismissal before trial will not result in legal prejudice to a defendant, a plaintiff ordinarily has the right to discontinue any action commenced by him. | "If discontinuance or dismissal before trial will not result in legal prejudice to a defendant, does a plaintiff ordinarily have the right to discontinue any action commenced by him?" | Pretrial Procedure - Memo # 1115 - C - CK.docx | ROSS-003327432-ROSS-003327434 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6634 | English v. IKON Bus. Sols., 94 Cal. App. 4th 130 | 307A+512 | A similar conclusion follows with regard to the word "dismissal." Two justices of Division Four of the Second Appellate District have observed that " 'dismissal' is a much broader concept than "default'...." (Yeap v. Leake (1997) 60 Cal.App.4th 591, 600, 70 Cal.Rptr.2d 680.) Even if that is generally true, it does not follow that by using the word "dismissal" in the mandatory provision of section 473(b), the Legislature intended to encompass every resolution of a case against a plaintiff, including a summary judgment in favor of a defendant. As Justice Epstein's dissent in Yeap explained: "Without belaboring the obvious, it should suffice to say that, in the context of pleadings and motions, a dismissal is the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court." (Id. at p. 603, 70 Cal.Rptr.2d 680 (dis. opn. of Epstein, J.).) Although Code of Civil Procedure section 581 describes various circumstances in which an action may be dismissed, either by the court or by a party, noticeably lacking is any provision describing a summary judgment in favor of a defendant as a "dismissal." | In the context of pleadings and motions, a "dismissal" is the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court. | "In the context of pleadings and motions, is a ""dismissal"" the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court?" | Pretrial Procedure - Memo # 1287 - C - RY.docx | ROSS-003287000-ROSS-003287002 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6635 | George v. Ospalik, 299 Ill. App. 3d 888 | 307A+501 | Section 2"1009(a) of the Code of Civil Procedure provides that a plaintiff may move for voluntary dismissal at any time before trial or hearing begins. 735 ILCS 5/2"1009(a) (West 1996). However, the right to a voluntary dismissal under section 2"1009 is not absolute. Our supreme court has held there is no right to voluntary dismissal under section 2"1009 when that section conflicts with supreme court rules. Catlett v. Novak, 116 Ill.2d 63, 106 Ill.Dec. 786, 506 N.E.2d 586 (1987). | While plaintiff may move for voluntary dismissal at any time before trial or hearing begins, right to a voluntary dismissal is not absolute. S.H.A. 735 ILCS 5/2-1009(a). | "While plaintiff may move for voluntary dismissal at any time before trial or hearing begins, is a right to a voluntary dismissal absolute?" | Pretrial Proceedure - Memo # 1133 - C - TJ.docx | ROSS-003300211-ROSS-003300212 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 6636 | Brown v. City of Barre, Vt., 878 F. Supp. 2d 469 | 317A+114 | Like the Tennessee statutory scheme in Craft, Vermont restricts water service termination to nonpayment of a just bill. In the event of nonpayment of a just bill, Vermont law does not allow termination if such nonpayment is related to a nonrecurring charge, is less than fifteen dollars, is subject to an appeal, or if the ratepayer has not been afforded the opportunity to enter into a repayment plan. When a proposed termination for nonpayment clears these hurdles, Vermont law creates an exception when there is serious medical need for water service and, in all cases, regulates the manner and content of notice, the timing of termination, and the right to reinstatement, hearing, and appeal. Where state law "mandates that utilities may not terminate utility service at will but only under certain enumerated conditions and after giving proper notice" there is "an independent source of state-authorized law that gives rise to a legitimate claim of entitlement to [a service] from a municipal utility." Gunter v. Long Island Power Auth., 2011 WL 1225791, at *8 (E.D.N.Y. Feb. 15, 2011) (citing Pilchen for the proposition that "tenants have a due process property interest in water service") | Where state law mandates that utilities may not terminate utility service at will but only under certain enumerated conditions and after giving proper notice there is an independent source of state-authorized law that gives rise to a legitimate claim of entitlement to a service from a municipal utility pursuant to the Due Process Clause. U.S.C.A. Const.Amend. 14. | Can a public utility terminate its services at will? | 042511.docx | LEGALEASE-00129164-LEGALEASE-00129166 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6637 | Fairway Manor v. Bd. of Comm'rs of Summit Cty., 36 Ohio St. 3d 85 | 405+2037 | Municipally owned public utilities have no duty to sell their products, including water, to extraterritorial purchasers absent a contractual obligation. State, ex rel. Indian Hill Acres, Inc., v. Kellogg (1948), 149 Ohio St. 461, 37 O.O. 137, 79 N.E.2d 319, paragraph three of the syllabus. Even where there is a contract, but the contract provides no termination date, either party to the agreement may terminate it upon reasonable notice. Grandview Heights v. Columbus (1963), 174 Ohio St. 473, 23 O.O.2d 117, 190 N.E.2d 453, paragraph two of the syllabus. Thus, it can be seen that a municipality does not assume a duty to continue supplying water in perpetuity to extraterritorial customers merely by virtue of having once agreed to supply it. This court has further held that the General Assembly is without power to require a municipality to furnish water to noninhabitants or to limit the price the municipality may charge for such service. State, ex rel. McCann, v. Defiance (1958), 167 Ohio St. 313, 4 O.O.2d 369, 148 N.E.2d 221, paragraph two of the syllabus. The municipality has the sole authority to decide whether to sell its water to extraterritorial purchasers. Indian Hill Acres, supra, paragraph two of the syllabus. | Municipally owned public utilities have no duty to sell their products, including water, to extraterritorial purchasers absent contractual obligation. | Are contractual obligations required by municipally owned public utilities to sell their products to extraterritorial purchasers? | Public Utilities - Memo 262 - AM.docx | ROSS-003287673-ROSS-003287675 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6638 | J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315 | 25T+141 | When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement. As the Fifth Circuit explained under similar circumstances, "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Company v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976). The same result has been reached under a theory of equitable estoppel. See McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir.1984). The district court properly included in its reference to arbitration Ryan's disputes with Rhone that are the subject of counts two through eight." | Claims against parent company could be referred to arbitration even though parent was not formally a party to arbitration agreement; charges against parent and subsidiary were based on the same facts and were inherently inseparable. | Can a court refer claims against a parent company to arbitration if the parent company is not formally a party to the arbitration agreement? | Alternative Dispute Resolution - Memo 513 - RK.docx | ROSS-003287215-ROSS-003287216 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6639 | Wiggins v. Lowndes Cty., Miss., 363 F.3d 387 | 92+1938 | A policymaker is an employee "whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." Stegmaier v. Trammell, 597 F.2d 1027, 1035 (5th Cir.1979). "[C]onsideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." Elrod, 427 U.S. at 368, 96 S.Ct. 2673. In Gentry we found that a Road Manager is a policymaker because he runs the county road department, supervises all road and bridge work in the county, helps to prepare a budget, purchases and leases equipment, hires assistants and employees, and carries out the general policies of the county board of supervisors. Gentry, 337 F.3d at 487 (citing Miss.Code Ann. " 65"17"1). The Road Manager appoints a Road Foreman for each district of the county he supervises. A Road Foreman implements the projects determined by the Road Manager; he assigns work to his road crew, supervises them in the field and participates in their work, inspects equipment, maintains records and inventories, inspects County roads and bridges, advises the Road Manager of needed repairs, and performs any other duties assigned by the Road Manager. These duties are critically different in nature from those of a Road Manager, and we find that a Road Foreman is not a policymaker. | A "policymaker," for purposes of determining whether a public employee's speech is protected, is an employee whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors. U.S.C.A. Const.Amend. 1. | Who are policymakers? | 013388.docx | LEGALEASE-00130195-LEGALEASE-00130196 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6640 | Paul H. Schwendener v. Larrabee Commons Partners, 338 Ill. App. 3d 19 | 307A+747.1 | Before trial the court, with the assistance of the parties, should establish a scheduling outline for the case, adequately accommodating the need to examine and cross-examine each necessary witness. The schedule must remain somewhat flexible to allow for unexpected developments during trial. The court must exercise its power to avoid undue delay in a manner that insures a fair trial for the parties. Hutson v. County of Cook, 17 Ill.App.3d 195, 205"06, 308 N.E.2d 65 (1974). In particular, the court must reserve for the parties time for adequate presentation of a defense to all claims. | The court must exercise its power to avoid undue delay in a manner that insures a fair trial for the parties; in particular, the court must reserve for the parties time for adequate presentation of a defense to all claims. | Must the court exercise its power to avoid undue delay in a manner that insures a fair trial for the parties? | 026296.docx | LEGALEASE-00129732-LEGALEASE-00129733 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 6641 | Politz v. Politz, 149 So. 3d 805 | 307A+711 | A continuance may be granted in any case if there is good ground therefor. LSA"C.C.P. art. 1601. The trial court's discretion in granting or denying a continuance under LSA"C.C.P. art. 1601 must be based upon consideration of the facts of each case and factors such as diligence, good faith, and reasonable grounds. English v. English, 47,331 (La.App.2d Cir. 12, 105 So.3d 994, writ denied, 2013"0326 (La.4/1/13), 110 So.3d 585; Connor v. Scroggs, 35,521 (La.App.2d Cir.6/12/02), 821 So.2d 542. Equally important is the exceptor's corollary right to have his case heard as soon as practicable. English v. English, supra; Stett v. Greve, 35,140 (La.App.2d Cir.2/27/02), 810 So.2d 1203. The trial judge may also weigh the condition of the court docket, fairness to both parties and other litigants before the court, and the need for orderly and prompt administration of justice. English v. English, supra; Connor v. Scroggs, supra. | The trial court's discretion in granting or denying a continuance must be based upon consideration of the facts of each case and factors such as diligence, good faith, and reasonable grounds; equally important is the exceptor's corollary right to have his case heard as soon as practicable. LSA-C.C.P. art. 1601. | "While deciding whether a continuance should be granted, what are the factors that a court should consider?" | 026671.docx | LEGALEASE-00129841-LEGALEASE-00129843 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 6642 | Carnes v. Meadowbrook Exec. Bldg. Corp., 17 Kan. App. 2d 292 | 307A+747.1 | similar problem was addressed by our Supreme Court in Boydston v. Kansas Board of Regents, 242 Kan. 94, 100"01, 744 P.2d 806 (1987):"The unsettled and confused status of this case on the day of trial was due in large part to the failure to hold a pretrial conference and file a subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both counsel and the trial court must share the responsibility for the breakdown in the pretrial procedure and resulting confusion: counsel, for not requesting a pretrial conference or court intervention when the proposed pretrial order could not be agreed to; the trial court, in failing to hold a pretrial conference or in making sure that counsel submitted an agreed-to pretrial order within a reasonable time prior to trial. The primary purposes of a pretrial conference are to reduce, if not eliminate, surprise from the trial and to determine exactly what issues are to be tried and what procedures are to be followed. In Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970), this court stated:"The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute...." In all but the simplest cases, reason and common sense dictate that a pretrial conference be held within an appropriate time prior to trial, and a pretrial order be prepared and filed, as required by Supreme Court Rule 104 [1991 Kan.Ct.R.Annot. 115]."On remand for a new trial, we strongly recommend that counsel cooperate with the court in holding a meaningful pretrial conference, resulting in a pretrial order that can serve the court, counsel, and litigants in obtaining a fair trial on all the relevant issues | In all but the simplest cases, trial court should hold pretrial conference within reasonable time in advance of trial and issue pretrial order as provided for by rule. Sup.Ct.Rules, Rule 140. | Should a trial court hold a pretrial conference within a reasonable time in advance of a trial and issue a pretrial order as provided for by rule? | 026723.docx | LEGALEASE-00130164-LEGALEASE-00130166 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6643 | Gerschick v. Pounds, 281 Ga. App. 531 | 307A+747.1 | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. "Nonetheless, a pretrial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues." | A pretrial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues. West's Ga.Code Ann. S 9-11-16(b). | Should a pretrial order be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues? | Pretrial Procedure - Memo # 1637 - C - SB.docx | ROSS-003328135-ROSS-003328136 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 6644 | Clanton v. Cain-Sloan Co., 677 S.W.2d 441 | 413+1 | We disagree. As we pointed out above, the Workers' Compensation Law is a comprehensive scheme enacted to provide a certain and expeditious remedy for injured employees. It reflects a careful balancing of the interests of employer and employee. As the Indiana court stated, "[t]he Act creates a duty on the employer to compensate employees for work-related injuries ... and a right on the employee to receive such compensation."Frampton v. Central Indiana Gas Co., supra, 297 N.E.2d at 427 (emphasis supplied). | Provisions of workers' compensation law, providing an expeditious and certain recovery from the employer while limiting the amount of liability to which the employee is exposed, create a duty on the employer to compensate the employee for work-related injuries and a right of the employee to receive such compensation. T.C.A. SS 50-6-102, 50-6-103, 50-6-108, 50-6-111, 50-6-225, 50-6-226. | Do the provisions of the Workers Compensation Law create a duty on the employers to compensate the employees for work-related injuries? | 047708.docx | LEGALEASE-00129919-LEGALEASE-00129920 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 6645 | Steeg v. Lawyers Title Ins. Corp., 329 So. 2d 719 | 302+228.6 | The defense may also be raised, as it was here, by the dilatory exception pleading prematurity, La.C.Civ.P. art. 926 (1), which is determined on the basis of the showing made at the in-limine trial of the exception, including evidence introduced at the trial thereof. La.C.Civ.P. arts. 929, 930. The functions of the exception permit raising the issue that the judicial cause of action has not come into existence because some prerequisite condition has not been fulfilled.}] I McMahon, Louisiana Practice 341-49 (1939). | Functions of dilatory exception permit raising issue that judicial cause of action has not come into existence because some prerequisite condition has not been fulfilled. LSA-C.C.P. art. 926(1). | Can an exception raising the objection of prematurity raise the issue of whether the judicial cause of action has not yet come into existence because some prerequisite condition has not been fulfilled? | Action - Memo # 933 - C SPB.docx | ROSS-003300624-ROSS-003300625 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6646 | Kubala v. Supreme Prod. Servs., 830 F.3d 199 | 25T+132 | We review de novo a ruling on a motion to compel arbitration. Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012). Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation"whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. Will"Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). | Enforcement of an arbitration agreement involves two analytical steps: first is contract formation, whether the parties entered into any arbitration agreement at all, and the second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. | What are the two analytical steps involved in enforcement of an arbitration agreement? | 007417.docx | LEGALEASE-00131378-LEGALEASE-00131379 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6647 | City of Norfolk v. Norfolk Cty., 194 Va. 716 | 307A+501 | In the absence of statute or rule of court, the matter of dismissing an action, or of taking a nonsuit, is controlled by the common law. 27 C.J.S., Dismissal and Nonsuit, " 6, page 159; 17 Am. Jur., Dismissal, Discontinuance and Nonsuit, " 13, page 64. | In absence of statute or rule of court, matter of dismissing an action, or of taking a nonsuit, is controlled by common law. | "In absence of statute or rule of court is the matter of dismissing an action or of taking a nonsuit, controlled by common law?" | Pretrial Procedure - Memo # 1237 - C - UG.docx | ROSS-003326545-ROSS-003326546 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 6648 | Nentwig v. United Indus., 256 Mont. 134 | 307A+750 | Nentwig correctly points out that failure to raise an issue in the pretrial order may result in a waiver. Har"Win, Inc. v. Consolidated Grain & Barge Co. (5th Cir.1986), 794 F.2d 985; Miles v. Tennessee River Pulp & Paper Co. (11th Cir.1989), 862 F.2d 1525. The purpose of the pretrial order is to prevent surprise, simplify the issues, and permit the parties to prepare for trial. Bache v. Gilden (1992), 252 Mont. 178, 181"82, 827 P.2d 817, 819. However, this Court said in Bell v. Richards (1987), 228 Mont. 215, 217, 741 P.2d 788, 790, that the pretrial order "should be liberally construed to permit any issues at trial that are "embraced within its language." " (Quoting Miller v. Safeco Title Ins. Co. (9th Cir.1985), 758 F.2d 364, 368.) But the theory or issue must be at least implicitly included in the pretrial order. United States v. First Nat'l Bank of Circle (9th Cir.1981), 652 F.2d 882, 886; ACORN v. City of Phoenix (9th Cir.1986), 798 F.2d 1260, 1272. | While pretrial order should be liberally construed to permit any issues at trial that are embraced within its language, theory or issue must be at least implicitly included in the pretrial order. | "Should a pretrial order be construed liberally, whilst the theory or issue tried is included, at least implicitly, in the pretrial order?" | 026782.docx | LEGALEASE-00130429-LEGALEASE-00130430 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6649 | In re Advanced Powder Sols., 496 S.W.3d 838 | 307A+331 | A person has a duty to preserve evidence "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." Wal-- Mart Stores, 106 at 722 (citing Nat'l Tank Co. v. Brotherton, 851 S.W.2d 193, 204 (Tex.1993)). A "substantial chance" of litigation "does not [mean] any particular statistical probability that litigation will occur; rather, it simply means that litigation is more than merely an abstract possibility or unwarranted fear." Nat'l Tank Co., 851 S.W.2d at 204 (citation and internal quotation marks omitted). When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises. Wal-Mart Stores, 106 S.W.3d at 722 (citing Nat'l Tank Co., 851 S.W.2d at 204). | A person has a duty to preserve evidence only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim. | When does law impute a person a duty to preserve evidence in its possession or control that will be material and relevant to that claim? | Pretrial Procedure - Memo # 1687 - C - BP.docx | ROSS-003287192-ROSS-003287193 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6650 | Rockdale Body Shop v. Thompson, 222 Ga. App. 821 | 307A+750 | At the outset we note that neither the complaint nor its amendment expressly avers a cause of action of breach of contract or of forgery. Likewise, neither did the consolidated pretrial order expressly address these particular causes of action. Nevertheless, the pretrial order stated that "the issues are in dispute," by plaintiff, regarding the terms of the restoration contract. While not expressly addressing a claim of forgery, the pretrial order also identified as an issue whether defendants were obligated to plaintiff for fraud and listed the name of plaintiff's handwriting expert as a witness. " "(A) pretrial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues." " (Citation omitted.) Hathaway v. Bishop, 214 Ga.App. 870, 871(2), 449 S.E.2d 318.Case 2: Echols v. Bridges, 239 Ga. 25. | Pretrial order should be liberally construed to allow consideration of all questions fairly within ambit of contested issues. | Should a pretrial order be liberally construed to allow consideration of all questions fairly within ambit of contested issues? | Pretrial Procedure - Memo # 1693 - C - CK.docx | LEGALEASE-00020668-LEGALEASE-00020669 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6651 | Heisler v. Hines Motor Co., 282 Mont. 270 | 307A+743 | The State Fund presents no relevant authority to support its argument that this Court's review of the facts presented in the trial court must be limited to the uncontested facts in a pretrial order. A pretrial order serves to "prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order." King v. Zimmerman (1994), 266 Mont. 54, 66, 878 P.2d 895, 903 (citing Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342). It lists such facts as are uncontested, and if a party admits to a fact by allowing its inclusion as uncontested in a pretrial order, the party will not be allowed to raise that particular factual issue on appeal. Whitehawk v. Clark (1989), 238 Mont. 14, 19, 776 P.2d 484, 487 (citing Morse v. Cremer (1982), 200 Mont. 71, 647 P.2d 358). The pretrial order, however, includes only such facts as are uncontested; it does not preclude a party from attempting to prove additional facts which remain in dispute. Nor does the pretrial order in and of itself limit the scope of this Court's review. On appeal, this Court may consider any evidence which is part of the record, Johnson, 894 P.2d at 273, even if it was not included in a pretrial order. Accordingly, if the depositions in question will facilitate our review we will consider them, just as we are free to consider the entirety of the record presented on appeal. | Pretrial order serves to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial. | "Does pretrial order serve to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial?" | 026833.docx | LEGALEASE-00130660-LEGALEASE-00130661 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 6652 | Am. Soc. of Lubrication Engineers v. Roetheli, 249 Ill. App. 3d 1038 | 307A+742.1 | Unlike the failure to file a brief discussed in Sanelli, a settlement agreement is often the logical result of a pre-trial conference, and Rule 218 specifically governs pre-trial conferences. One purpose of a pre-trial conference is to expedite the prosecution of a case, either by hastening a settlement agreement between the parties, or by clarifying the issues and evidence so that a trial on the merits may occur more swiftly. (Keilholz v. Chicago & N.W.R. Co. (1973), 10 Ill.App.3d 1087, 1091"92, 295 N.E.2d 561, rev'd on other grounds, Keilholz v. Chicago & N.W.R. Co. (1974), 59 Ill.2d 34, 319 N.E.2d 46; Conover v. Smith (1974), 20 Ill.App.3d 258, 260, 314 N.E.2d 638, 640 ("The pre-trial conference is a technique to promote the disposition of litigation by cooperation and agreement.").) Pretrial conferences frequently lead to settlement and dismissal of the action. (Fennema v. Vander Aa (1968), 93 Ill.App.2d 162, 166, 236 N.E.2d 409, 411, rev'd on other grounds, Fennema v. Vander Aa (1969), 42 Ill.2d 309, 247 N.E.2d 409.) Rule 218 therefore governs settlement agreements reached at pre-trial conferences and their respective dismissal orders. See Keilholz, 10 Ill.App.3d at 1091"92, 295 N.E.2d 561; 134 Ill.2d Rules 218(a)(1), (a)(5). | One purpose of pretrial conference is to expedite prosecution of case, either by hastening settlement agreement between parties, or by clarifying issues and evidence so that trial on merits may occur more swiftly. Sup.Ct.Rules, Rule 218. | How would pretrial conference help to expedite prosecution of case? | 026861.docx | LEGALEASE-00131083-LEGALEASE-00131084 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6653 | Blackmon v. Nexity Fin. Corp., 953 So. 2d 1180 | 302+236(2) | We have held that there is an "overarching liberal policy of allowing amendments under Rule 15." Ex parte Liberty Nat'l Life Ins. Co., 858 So.2d 950, 954 (Ala.2003). However, Rule 15 " "is not carte blanche authority to amend at any time." " Burkett v. American Gen. Fin., Inc., 607 So.2d 138, 141 (Ala.1992)(quoting Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala.1980)). The trial court has discretion to deny an amendment for good cause. Ex parte GRE Ins. Group, 822 So.2d 388, 390 (Ala.2001); Stallings, 388 So.2d at 947. The deadline in the scheduling order does not curtail the trial court's discretion in considering the merits of the offered amendment. See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1066 (8th Cir.2005)(holding that "the scheduling order merely prescribes the date by which all [motions to amend] "shall be filed;" the date on the scheduling order does not confine the district court's consideration of the merits of such motions and does not preclude it from finding that an amendment would result in prejudice"). The trial court can refuse to allow an amendment if allowing it would result in actual prejudice to the opposing party or for reasons of "undue delay." GRE Ins. Group, 822 So.2d at 390. | A deadline for filing amendments to pleadings in a scheduling order does not curtail the trial court's discretion in considering the merits of the offered amendment. Rules Civ.Proc., Rule 15(a). | Does a deadline for filing amendments to pleadings in a scheduling order curtail the trial court's discretion in considering the merits of the offered amendment? | 026867.docx | LEGALEASE-00131168-LEGALEASE-00131169 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6654 | Malerbi v. Cent. Reserve Life of N. Am. Ins. Co., 225 Neb. 543 | 307A+742.1 | Pretrial conferences are conducted to simplify the issues, amend pleadings, and avoid unnecessary proof of facts at trial.Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986). They are also conducted to avoid traps and surprises at trial. Priest v. McConnell, 219 Neb. 328, 363 N.W.2d 173 (1985). | Pretrial conferences are conducted to simplify issues, amend pleadings, and avoid unnecessary proof of facts at trial and to avoid traps and surprises at trial. | "Can pretrial conferences simplify the issues, amend the pleadings and avoid traps and surprises at trial?" | 026878.docx | LEGALEASE-00130283-LEGALEASE-00130284 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 6655 | Vogel v. Berkley, 354 Pa. Super. 291 | 307A+745 | The purpose of a pre-trial conference is to enable the parties to simplify and expedite the trial. Gill v. McGraw Electric Co., 264 Pa.Super. 368, 399 A.2d 1095 (1979). It is appropriate for the pre-trial conference court to decide issues of law based on admitted or undenied facts appearing of record. See Goodrich-Amram2d " 212:7.2. Here, the court determined that four of the counts in the complaint should be eliminated. In so doing, the court was properly making a ruling of law concerning the settlement agreement, which was part of the record before the court. Finding that the action was authorized, our next determination must be whether the legal decision made was correct. Appellant characterizes the action by the court as the equivalent of a summary judgment. We think it more closely parallels a judgment on the pleadings because the decision was based solely on the pleadings and the settlement agreement which was properly attached. | Purpose of pretrial conference is to enable parties to simplify and expedite trial, and it is appropriate for court to decide issues of law based on admitted or undenied facts appearing of record. Rules Civ.Proc., Rule 212, 42 Pa.C.S.A. | Is it appropriate for the pre-trial conference court to decide issues of law based on admitted or undenied facts appearing of record? | Pretrial Procedure - Memo # 1726 - C - NC.docx | ROSS-003301411-ROSS-003301412 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6656 | Hycarbex v. Anglo-Suisse, 927 S.W.2d 103 | 307A+717.1 | Likewise, the trial court did not abuse its discretion by denying Hycarbex's motion for continuance. The granting or denial of a continuance rests within the sound discretion of the trial court. State v. Crank, 666 S.W.2d 91, 94 (Tex.1984), cert. denied, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66; Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1963). The action of the trial court in denying a continuance will not be disturbed unless the record discloses a clear abuse of discretion. Crank, 666 S.W.2d at 94. The trial court found that Hycarbex's attorney acted "at his peril" by relying on Summa's assurances rather than deposing Summa when he knew five months earlier that Summa's deposition was necessary to preserve Summa's testimony for trial. Where a party elects to employ other means than those provided by law to assure that a witness appears to testify at trial, it will be at his peril. Elizondo v. Tavarez, 596 S.W.2d 667, 669-70 (Tex.App.-Corpus Christi 1980, writ ref'd n.r.e.) (holding that trial court did not abuse its discretion in denying plaintiff's motion for continuance where plaintiff's counsel knew of trial setting six months earlier, but relying on witness's assurances, made no attempt to contact the witness until two weeks before trial). We hold the trial court did not abuse its discretion. See Crank, 666 S.W.2d at 94. Points of error four and five are overruled. Accordingly, the trial court's judgment is affirmed. | Where party elects to employ other means than those provided by law to assure that witness appears to testify at trial, it will be at his peril. | "Where a party elects to employ other means than those provided by law to assure that witness appears to testify at trial, will it be at his peril?" | Pretrial Procedure - Memo # 1740 - C - NS.docx | ROSS-003301208-ROSS-003301209 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 6657 | Schowalter v. Washington Mut. Bank, 275 Ga. App. 182 | 307A+742.1 | To analyze this contention, we start with the premise that "[a] claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order." (Punctuation omitted.) Williams v. Safeway Ins. Co. The rationale is that the purpose of the pretrial order "is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the action is thereby narrowed to expedite the proceeding." (Punctuation omitted.) Id. Where a court excludes claims due to their omission from the pretrial order, we will reverse that ruling only if the trial court abused its discretion. Jamal v. Hussein. | Purpose of the pretrial order is to determine which of the claims pleaded will actually be tried; claims, issues, and evidence are limited by the order, and the course of the action is thereby narrowed to expedite the proceeding. | "What is the purpose of a pretrial order and are claims, issues, and evidence limited by the order?" | Pretrial Procedure - Memo # 1769 - C - PC.docx | ROSS-003314146-ROSS-003314147 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 6658 | Arfor-Brynfield v. Huntsville Mall Assocs., 479 So. 2d 1146 | 307A+745 | The pre-trial procedure established by Rule 16, A.R.Civ.P., is designed to clarify and simplify the issues to be tried.The order resulting is to control the subsequent course of the action. The drafters of the Alabama rule were mindful of the justified criticism that the federal pre-trial procedure had attracted and were committed to avoiding the wasteful and burdensome requirements of the federal pre-trial practice. Thus, the Alabama rule offers a simple procedure for defining and narrowing the issues remaining for trial. The pre-trial order is not written in stone, but it is not without meaning either. See Committee Comment, Rule 16, A.R.Civ.P. Obviously, as it is noted in the comment, pre-trial orders cannot be effective unless the judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial conference, particularly where, as here, the subject matter of the proffered amendment was known to the pleader at the time of the pre-trial conference and was not then offered. | Purpose of pretrial procedure is to clarify and simplify issues to be tried and resulting pretrial order controls subsequent course of action. Rules Civ.Proc., Rule 16. | "Is the purpose of pretrial procedure to clarify and simplify issues to be tried, and does the resulting pretrial order control subsequent course of action?" | 026981.docx | LEGALEASE-00131072-LEGALEASE-00131073 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6659 | Vlach v. Goode, 515 N.E.2d 569 | 307A+750 | Appellant argues that the trial court improperly allowed Dr. Goode to testify that he had administered Kenalog 10 rather than Kenalog 40 to Laura Vlach. Appellant argues that a Kenalog 10 defense was outside the scope of the issues as framed by the pretrial order and was contrary to responses given in interrogatories. In Indiana, where a pretrial order specifies the issues in the case, the parties will not be permitted to go into other issues unless the pretrial order is amended. Whisman v. Fawcett (1984), Ind., 470 N.E.2d 73, 76. The pretrial order has a binding effect, but it is not to be rigidly and pointlessly adhered to at trial. The pretrial process is not intended to revive the outmoded institution of "code pleading." The pretrial order should be liberally construed to embrace all legal and factual theories inherent in the issues defined therein. The trial court is given broad discretion in interpreting the pretrial order. Id. at 76"77; Eagle Motor Lines, Inc. v. Galloway (1981), Ind.App., 426 N.E.2d 1322, 1326"27; Hundt v. LaCrosse Grain Co., Inc. (1981), Ind.App., 425 N.E.2d 687, 694"95. Because the trial court has broad discretion in construing the pretrial order, we will reverse the judge's decision to admit the testimony only if it constitutes an abuse of discretion. In applying the abuse of discretion standard of review, we examine only whether the action taken by the court was clearly against the logic and effect of the circumstances. Radio Distributing v. National Bank & Trust Co. (1986), Ind.App., 489 N.E.2d 642, 647. | Pretrial order should be liberally construed to embrace all legal and factual theories inherent in issues defined therein. | Should pretrial orders be liberally construed to embrace all legal and factual theories inherent in issues defined therein? | 027037.docx | LEGALEASE-00131038-LEGALEASE-00131039 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 6660 | Chalupa v. Chalupa, 220 Neb. 704 | 307A+750 | Where evidence or rulings do not appear in the record, they cannot be considered on appeal. Kleeb v. Kleeb, 210 Neb. 637, 316 N.W.2d 583 (1982). Therefore, we deal only with a pretrial order in which no objection appears of record. Where a pretrial order improperly restricts the issues, nevertheless, the parties are bound by it at trial and on appeal, if no objection has been made, unless it does violence to the issues raised by the petition. Zavoral v. Pacific Intermountain Express, 181 Neb. 40, 146 N.W.2d 796 (1966). In any event, no showing of prejudice was made by the petitioner, and we do not agree that the trial court's order constituted an abuse of discretion . | Where pretrial order improperly restricts the issues, the parties are bound by it at trial and on appeal, if no objection has been made, unless it does violence to the issues raised by the petition. | "If a pretrial order improperly restricts the issues, are the parties bound by it at trial and on appeal?" | 027045.docx | LEGALEASE-00131129-LEGALEASE-00131130 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6661 | Bannum v. 2210 Adams Place, N.E., 4 A.3d 431 | 307A+749.1 | Bannum claims that the trial court erred in allowing the landlord to claim the tenant at sufferance clause for the first time during closing argument. It points out that the landlord never referenced the clause in its pleadings, motion for summary judgment, or in the joint pretrial statement. Bannum relies on Nelson v. Allstate Insurance Co. to assert that the landlord should have referenced the tenancy at sufferance clause in the joint pretrial order. Bannum's reliance is misplaced. First, we have never countenanced a "rigid adherence" to the contents of a pretrial order. Moreover, in determining whether a party was "surprised or prejudiced" by the other party's venture beyond the contents of the pretrial order, the law of this jurisdiction places the decision to allow such endeavors firmly in the hands of the trial court. Finally, in Nelson itself, we found, on facts very similar to those at bar, that the defendant's negligence in failing to reference the specific contract clauses on which it intended to rely did not amount to a surprise for the plaintiff who "could not plausibly claim ignorance of [the contractual] terms" where the contract was central to the case. Here, the lease was similarly central to the case, and the pretrial order includes as disputed issues whether Bannum owed unpaid rent as well as the date when Bannum surrendered the premises. Bannum therefore cannot claim to have been surprised when the landlord specifically referenced the tenancy at sufferance clause during closing arguments, at least not to the extent that we can say that the trial judge abused her discretion in allowing the landlord to do so. | Determination as to whether a party would be surprised or prejudiced by the other party's venture beyond the contents of the pretrial order belongs to the trial court. | Is it the trial court that determines whether a party was surprised or prejudiced by the other party's venture beyond the contents of the pretrial order? | Pretrial Procedure - Memo # 1818 - C - SB.docx | ROSS-003301468-ROSS-003301469 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6662 | Nolan v. Redevelopment Agency, 117 Cal. App. 3d 494 | 307A+749.1 | We note that the trial court's conclusions, quoted above, include a statement that the decision of another judge striking amendments to the complaint had been "codified." We do not understand what the draftsman meant by this. But to avoid another problem in this case, we point out that a pretrial order affecting the pleading does not prevent the trial judge from making a different order if circumstances call for such a ruling. (See, e. g., Code Civ.Proc., ss 576, 472; 4 Witkin Cal. Procedure (2d ed., 1971) Proceedings Without Trial, s 27, p. 2695.) | A pretrial order affecting pleading does not prevent trial judge from making a different order if circumstances call for such a ruling. West's Ann.Code Civ.Proc. SS 472, 576. | Does a pretrial order affecting pleading prevent a trial judge from making a different order if circumstances call for such a ruling? | 027265.docx | LEGALEASE-00131237-LEGALEASE-00131238 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6663 | Estopinal v. Thomas, 273 So. 2d 54 | 307A+718 | Comment (b) to this article restates that a party applying for a continuance must show due diligence in order to avail himself of its provisions. The record is devoid of any such effort made by the plaintiff in the instant case and while a peremptory ground for continuance is a failure of a party to obtain evidence material to his case this is available only when the party requesting the continuance shows that he has exercised "due diligence." Thompson v . Warmack, La.App., 231 So.2d 636 . | While a peremptory ground for continuance is failure of party to obtain evidence material to his case, that is available only when party requesting continuance shows that he has exercised due diligence. LSA-C.C.P. art. 1602. | Is a peremptory ground for a continuance a failure of party to obtain evidence material to his case? | 027314.docx | LEGALEASE-00131199-LEGALEASE-00131200 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6664 | Storedahl Properties v. Clark Cty., 143 Wash. App. 489 | 371+2001 | In contrast, charges imposed for purposes other than raising money to fund the public treasury, such as for regulating activities, are not taxes and are not subject to constitutional taxation constraints. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001); Dean v. Lehman, 143 Wash.2d 12, 25, 18 P.3d 523 (2001). Where a charge relates to a direct benefit or service, this court generally does not consider it a tax or assessment. King County Fire Prot. Dists. No. 16, No. 36, & No. 40 v. Housing Auth. of King County, 123 Wash.2d 819, 833, 872 P.2d 516 (1994). Instead, this court refers to such charges as regulatory fees, a rather broad category that can "include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees." Samis, 143 Wash.2d at 805, 23 P.3d 477. | Charges imposed for purposes other than raising money to fund the public treasury, such as for regulating activities, are not taxes and are not subject to constitutional taxation constraints. West's RCWA Const. Art. 7, S 1. | Are charges imposed for purposes other than raising money to fund the public treasury considered as taxes? | Taxation - Memo # 100 - C - SU.docx | ROSS-003288198-ROSS-003288199 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 6665 | Dean v. Lehman, 143 Wash. 2d 12 | 371+2001 | It is beyond dispute that article VII, section 1 applies only to taxes. Anything other than a tax is beyond the provision's scope. The term "tax" has been defined by this court as, an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities [and i]t is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. | A "tax" is an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities; it is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. | Is a tax charged for the benefit of legal taxing authorities? | Taxation - Memo # 120 - C - CK.docx | ROSS-003328881-ROSS-003328882 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 6666 | Hoskins v. United States, 61 Fed. Cl. 209 | 34+3(1) | This court must abstain from reviewing military decisions when those decisionsare beyond the competence of civilian judges. See Sargisson v. United States, 913 F.2d 918, 921(Fed.Cir. (stating that a personnel decision taken by the Secretary of the Air Force is "beyond the ken ofjudicial competence; it is nonjusticiable"); Murphy v. United States, 993 F.2d 871, 873 (Fed.Cir.1993) ("We have emphasized that judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established'tests and standards' againstwhich the court can measure his conduct." (quoting Sargisson, 913 F.2d at 922)). But even where Congress gives the military unlimited discretion, military regulations provide an "inherent" test or standard against which the court can measure the military's conduct. Murphy, 993 F.2d at 873.[(This court thus has the power to decide "whether [military] procedures were followed by applying the facts to the statutory or regulatory standard." Id. | The Court of Federal Claims has the power to decide whether military procedures were followed by applying the facts to the statutory or regulatory standard. | Do courts have the power to decide whether military procedures were followed by applying the facts to the statutory or regulatory standard? | Armed Services - Memo 77 - RK.docx | ROSS-003287108-ROSS-003287109 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6667 | United States v. Antico, 275 F.3d 245 | 164T+24(5) | In light of this express limitation, we decline Antico's invitation to extend McCormick to apply to his situation. The quid pro quo can be implicit, that is, a conviction can occur if the Government shows that Antico accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity "under color of official right." | Quid pro quo required to support conviction for extortion "under color of official right" under Hobbs Act, outside context of campaign contribution, can be implicit, that is, conviction can occur if government shows that defendant accepted payments or other consideration with implied understanding that he would perform or not perform act in his official capacity. 18 U.S.C.A. S 1951(b)(2). | Should quid pro quo be explicitly stated or can it be implied? | 011144.docx | LEGALEASE-00132196-LEGALEASE-00132197 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 6668 | United States v. Ring, 628 F. Supp. 2d 195 | 63+1(1) | To prove that Ring paid an illegal gratuity, the government must show that he conferred a thing of value upona present, past, or future public official "for or becauseof" a specific "official act" that the official performed or would perform. See 18 U.S.C. " 201(c)(1)(A); United States v. Smith, 267 F.3d 1154, 1163 (D.C.Cir.2001) ("[T]he Government'must prove a link between a thing of value conferred upon a public official and a specific"official act" for or because of which it was given.' ") (quoting United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 414, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999)). The statute defines "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. " 201(a)(3). Unlike statutory bribery, which requires a quid pro quo (i.e., "a specific intent to give or receive something of value in exchange for an official act"), an illegal gratuity may simply be "a reward" for a past or future act. Sun-Diamond, 526 U.S. at 119 S.Ct. 1402 (emphasis in original). The gratuities statute thus aims to criminalize "the corruption of official decisions through the misuse of influence in governmental decision-making." Valdes v.United States, 475 F.3d 1319, (D.C.Cir.2007) (en banc) (quoting United States v. Muntain, 610 F.2d 964, 968 (D.C.Cir.1979), and reviewing cases). Given this concern for"inappropriate influence on decisions that the government actually makes," id. at 1325, the statutory phrase "any question, matter, cause, suit, proceeding or controversy" refers to "a class of questions or matters whose answer or disposition is determined by the government." Id. at 1324. | To prove that defendant paid an illegal gratuity, the government must show that he conferred a thing of value upon a present, past, or future public official for or because of a specific official act that the official performed or would perform. 18 U.S.C.A. S 201(c)(1)(A). | Does an illegal gratuity need to be linked to a specific official act? | Bribery - Memo #128 - C CSS.docx | ROSS-003299241-ROSS-003299243 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6669 | Rock Island Bank & Tr. Co. v. Ford Motor Co., 54 Mich. App. 278 | 307A+331 | The purpose of discovery is to allow the parties to have access to material which will assist them in preparing and trying their cases.Willard v. Gaston, 333 Mich. 455, 53 N.W.2d 332 (1952). Defendant's counsel believed that the 1965 reports and films were not available. The fact is that they were. We must note that the basic purpose of discovery is to further the ends of justice. Daniels v. Allen Industries, Inc., 391 Mich. 398, 216 N.W.2d 762 (1974) | Purposes of discovery are to allow parties to have access to material which will assist them in preparing and trying their cases and to further ends of justice. | Does the purpose of discovery is to allow parties to have access to material which will assist them in preparing and trying their cases and to further ends of justice? | 027461.docx | LEGALEASE-00132110-LEGALEASE-00132111 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6670 | F.D.I.C. v. Finlay, 832 S.W.2d 158 | 307A+749.1 | In Tate, although the court of appeals upheld a dismissal based on an oral order, it noted that the appellant did not argue that the oral order of the trial court denied the trial court the right to impose the sanction of dismissal with prejudice. Tate, 767 S.W.2d at 222. Here, the FDIC's entire appeal is based on that very issue: The Tate court recognized that to be effective, orders must generally be entered of record, and cited Manoogian v. Lake Forest Corp., 652 S.W.2d 816, 819 (Tex.App."Austin 1983, writ ref'd n.r.e.) (oral order of the court striking an affidavit was not effective in a summary judgment case), and Kocman v. Kocman, 581 S.W.2d 516, 518 (Tex.Civ.App."Waco 1979, no writ) (docket notation that said the court granted a bill of review was not effective). Citing a case from this Court, the Tate court recognized that the docket sheet generally cannot stand as a substitute for an order. Harris Cty. Child Welfare Unit v. Caloudas, 590 S.W.2d 596, 598 (Tex.Civ.App."Houston [1st Dist.] 1979, no writ) (docket notation that unidentified motions were denied was not a judicial order). We agree with the reasoning of Tate. | Court may not dismiss suit with prejudice as sanction for violation of oral order announced at Rule 166 pretrial conference. Vernon's Ann.Texas Rules Civ.Proc., Rule 166. | Can a court dismissa party's suit with prejudice as a sanction for violation of an oral order announced at a pretrial conference? | 027648.docx | LEGALEASE-00132327-LEGALEASE-00132328 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 6671 | UFG v. Sw. Corp., 848 N.E.2d 353 | 307A+750 | Third, Southwest argues that while there was no final pre-trial order to be considered in Hudson, the pleadings in the instant case "were merged into the final pretrial order, which only sets forth a claim for specific performance and equitable accounting." Appellee's Br. p. 21. It is true that "a pre-trial order delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case." Rust-Oleum Corp. v. Fitz, 801 N.E.2d 754, 758 (Ind.Ct.App.2004), trans. denied. However, the final pre-trial order, like Buyers complaint, included a claim for money damages arising from Seller's breach; Plaintiffs Contention 6 provides: "Buyers are entitled to monetary and consequential damages proximately caused by the defendants breach, including, but not limited to, lost profits." Appellants' App. p. 39. Therefore, the "doctrine of merger," as Seller labels it, creates no meaningful distinction between Hudson and this case. | A pre-trial order delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case. | "Does a pre-trial order delineating the issues of the case, supplant the allegations raised in the pleadings and control all subsequent proceedings in the case?" | Pretrial Procedure - Memo # 2316 - C - NE.docx | ROSS-003286571-ROSS-003286572 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6672 | Bonneville Assocs., Ltd. P'ship v. Barram, 165 F.3d 1360 | 170A+1713.1 | In deciding that question, the Board looked to the treatment of the same issue by the federal courts under the similar provision of Federal Rule of Civil Procedure 41(a), which states that an action may be dismissed by the plaintiff without court order "by filing notice of dismissal" before the adverse party files an answer or moves for summary judgment, and that unless the notice provides otherwise "the dismissal is without prejudice." The rule in the federal courts is that "the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) "is to render the proceedings a nullity and leave the parties as if the action had never been brought."" Williams v. Clarke, 82 F.3d 270, 273 (8th Cir.1996) (quoting Smith v. Dowden, 47 F.3d 940, 943 (8th Cir.1995) and applying Rule 41(a) in the Habeas Corpus context). See, e.g., Beck v. Caterpillar, Inc., 50 F.3d 405, 407 (7th Cir.1995) ("While plaintiff first lawsuit was filed within the limitations period, that suit was voluntarily dismissed pursuant to [Rule] 41(a), and is treated as if it had never been filed."). | The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought. Fed.Rules Civ.Proc.Rule 41(a), 28 U.S.C.A. | Is the effect of a voluntary dismissal of a complaint to render the proceedings a nullity and leave the parties as if the action had never been brought? | 027771.docx | LEGALEASE-00132102-LEGALEASE-00132103 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6673 | In re Team Rocket, 256 S.W.3d 257 | 307A+517.1 | A plaintiff may nonsuit his case at any time prior to the close of the plaintiff's pre-rebuttal evidence. TEX. R. CIV. P. 162. "Subject to certain conditions, a plaintiff who takes a nonsuit is not precluded from filing a subsequent suit seeking the same relief." Aetna Cas. & Sur. Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993). The issue in this case is whether that general rule allows a plaintiff to use the procedural vehicle of nonsuiting a case to avoid unfavorable venue rulings. | Subject to certain conditions, a plaintiff who takes a nonsuit is not precluded from filing a subsequent suit seeking the same relief. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Subject to certain conditions, is a plaintiff who takes a nonsuit precluded from filing a subsequent suit seeking the same relief?" | 027791.docx | LEGALEASE-00131598-LEGALEASE-00131599 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6674 | Samland v. J. White Transp. Co., 675 S.W.2d 92 | 307A+517.1 | Missouri Supreme Court Rule 67.01 provides in part that "[a] civil action may be dismissed by the plaintiff without prejudice without order of court any time prior to the introduction of evidence at the trial." The Supreme Court has interpreted this part of the rule in Garrison v. Jones, 557 S.W.2d 247 (Mo.1977) (en banc) (at 250), to mean that "dismissal by plaintiff prior to the introduction of evidence does not require a court order to be effective." First National Bank of Colorado Springs v. Mark IV Co., 591 S.W.2d 63, 68 (Mo.App.1979). Once a plaintiff voluntarily dismisses his action, nothing remains before the court upon which it can act; even an order reinstating the case on the trial docket at the plaintiff's request is a nullity. Emigh Engineering Co., Inc. v. Rickhoff, 605 S.W.2d 173, 174 (Mo.App.1980). The legal situation is as though the suit had never been brought. No steps can be taken, and any step attempted in the dismissed suit is a nullity. Bell v. Kitt, 655 S.W.2d 881, 883 (Mo.App.1983), following Emigh Engineering, supra, and Bryan v. Smith, 174 F.2d 212, (7th Cir.1949). This rule applies even where, before plaintiffs voluntary dismissal without prejudice, the defendant has moved to dismiss plaintiffs action with prejudice because when the plaintiff files his memorandum of dismissal no court order is needed to give it effect-the case is automatically, ipso facto, dismissed. Rosenfeld v. Telcom Engineering, Inc., 619 S.W.2d 811, 813-14 (Mo.App.1981); Norris v. Johnson, 599 S.W.2d 90, 91 (Mo.App. 1980). | Once a plaintiff voluntarily dismisses his action, nothing remains before court upon which it can act; even an order reinstating the case on trial docket at plaintiff's request is a nullity because legal situation is as though the suit had never been brought. V.A.M.R. 67.01. | "Once a plaintiff files a voluntary dismissal of his or her petition, does nothing remain before the court upon which it can act?" | Pretrial Procedure - Memo # 2359 - C - VP.docx | ROSS-003286591-ROSS-003286592 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6675 | Bonneville Assocs., Ltd. P'ship v. Barram, 165 F.3d 1360 | 170A+1713.1 | In deciding that question, the Board looked to the treatment of the same issue by the federal courts under the similar provision of Federal Rule of Civil Procedure 41(a), which states that an action may be dismissed by the plaintiff without court order "by filing notice of dismissal" before the adverse party files an answer or moves for summary judgment, and that unless the notice provides otherwise "the dismissal is without prejudice." The rule in the federal courts is that "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) "is to render the proceedings a nullity and leave the parties as if the action had never been brought." " Williams v. Clarke, 82 F.3d 270, 273 (8th Cir.1996) (quoting Smith v. Dowden, 47 F.3d 940, 943 (8th Cir.1995) and applying Rule 41(a) in the Habeas Corpus context). See, e.g., Beck v. Caterpillar, Inc., 50 F.3d 405, 407 (7th Cir.1995) ("While [plaintiff's] first lawsuit was filed within the limitations period, that suit was voluntarily dismissed pursuant to [Rule] 41(a), and is treated as if it had never been filed."). | The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought. Fed.Rules Civ.Proc.Rule 41(a), 28 U.S.C.A. | Does a dismissal without prejudice render the proceedings a nullity and leaves the parties as if the action had never been brought? | 027830.docx | LEGALEASE-00131911-LEGALEASE-00131912 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6676 | Beard v. Montgomery Ward & Co., 215 Kan. 343 | 307A+749.1 | The purpose of the pre-trial order is to define and clarify the issues, and it controls the course of the trial unless subsequently modified (K.S.A. 60-216; Tillotson v. Abbott, 205 Kan. 706, 472 P.2d 240; Freeto Construction Co. v. American Hoist & Derrick Co., 203 Kan. 741, 457 P.2d 1; Bender v. Bulger Cadillac-Oldsmobile, Inc., 208 Kan. 72, 490 P.2d 361.) As we have said, "It is also a general rule that a court will not grant a new trial for insufficient reasons merely to give a party an opportunity to shift his ground of action or defense. If a case has been tried upon one theory, it is too late to mend his hold and advance another theory which might have been, but was not, presented at the trial." Mallows v. Mallows, 93 Kan. 551, 556, 144 P. 829, 831. See also, Dixon & Ebert Co. v. Hicks, 181 Kan. 953, 317 P.2d 407; U. P. Rly. Co. v. Springsteen, 41 Kan. 724, 21 P. 774. And cf., Evangelist v. Bellern Research Corporation, 199 Kan. 638, 639, 433 P.2d 380, and cases cited. | The purpose of a pretrial order is to define and clarify the issues and it controls the course of the trial unless subsequently modified. Rules of Civil Procedure, rule 16, K.S.A. 60-216. | Is the purpose of a pretrial order to define and clarify the issues and it controls the course of the trial unless subsequently modified? | Pretrial Procedure - Memo # 2525 - C - SB.docx | ROSS-003328024-ROSS-003328025 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6677 | Midland Title Sec. v. Carlson, Ohio, 171 Ohio App. 3d 678 | 307A+517.1 | A dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. See Zimmie v. Zimmie (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 464 N.E.2d 142; DeVille Photography, Inc. v. Bowers (1959), 169 Ohio St. 267, 272, 8 O.O.2d 281, 159 N.E.2d 443; Conley v. Jenkins (1991), 77 Ohio App.3d 511, 517, 602 N.E.2d 1187. Hence, because the dismissal was without prejudice, Midland was not foreclosed from bringing its action. Accordingly, the trial court erred by finding that no claims existed to assign based on the dismissal, and Midland first assignment of error is sustained. | A dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. | "Does a dismissal without prejudice relieve the court of all jurisdictions over the matter, and the action is treated as though it had never been commenced?" | Pretrial Procedure - Memo # 2651 - C - NE.docx | ROSS-003290614-ROSS-003290615 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6678 | Morning Star Co. v. Bd. of Equalization, 201 Cal. App. 4th 737 | 371+2002 | "'The distinction between taxes and fees is frequently "blurred," taking on different meanings in different contexts. [Citations.]' [Citation.] Ordinarily taxes are imposed for revenue purposes and not[,] [like regulatory fees,] 'in return for a specific benefit conferred or privilege granted.' " (California Farm Bureau, supra, 51 Cal.4th at p. 437, 121 Cal.Rptr.3d 37, 247 P.3d 112, quoting Sinclair Paint Co. v. State Bd. of Equalization (1997) 15 Cal.4th 866, 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350 (Sinclair Paint ).). | Ordinarily taxes are imposed for revenue purposes and not, like regulatory fees, in return for a specific benefit conferred or privilege granted. | "Are taxes imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted?" | Taxation - Memo # 226 - C - KI.docx | ROSS-003287742-ROSS-003287744 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 6679 | Chicago Park Dist. v. City of Chicago, 127 Ill. App. 3d 215 | 371+2001 | We find no merit in the Park District's argument that the mooring tax is not a tax but a usurpation of its authority to set fees for recreational harbors. The mooring tax in no way regulates access to recreational harbors, but appears to be strictly a revenue measure. While every tax on an activity increases the ultimate cost of that activity to the consumer, this factor does not change the tax from a revenue measure to a regulatory measure.. | While every tax on an activity increases ultimate cost of such activity to consumer, such factor does not change tax from a revenue measure to a regulatory measure. | "Does the factor that every tax on an activity increases ultimate cost of such activity to consumer, change tax from a revenue measure to a regulatory measure?" | Taxation - Memo # 293 - C - KBM.docx | LEGALEASE-00022235-LEGALEASE-00022236 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6680 | Swanson v. State, Dep't of Educ., 249 Neb. 466 | 371+2001 | Swanson also argues that he should be absolved of the burdens and benefits of schools within the Class VI school system because he has no children in school district 1. This argument is no more effective than an argument that Swanson should pay no property tax at all to support public schools if he has no school-age children. Tax laws, including L.B. 839, represent the Legislature's definition of the measure of every citizen's duty in support of the public burdens. See State ex rel. Spelts v. Rowe, 108 Neb. 232, 188 N.W. 107 (1922). | Tax laws represent legislature's definition of measure of every citizen's duty in support of public burdens. | Do tax laws represent legislature's definition of measure of every citizen's duty in support of public burdens? | 044984.docx | LEGALEASE-00132004-LEGALEASE-00132005 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6681 | Garrett Freight Lines v. State Tax Comm'n, 103 Utah 390 | 371+2001 | "The objection chiefly urged to the taxing statute is that it is a denial of due process of law because in 1935 it imposed a tax on income received in 1933. But a tax is not necessarily unconstitutional because retroactive. Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 326, 75 L.Ed. 809, and cases cited. Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. | "Taxation" is neither a "penalty" imposed on taxpayer nor a "liability" which he assumes by contract, but is merely a way of apportioning cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. | Is taxation a penalty imposed on a taxpayer? | 045000.docx | LEGALEASE-00132220-LEGALEASE-00132221 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6682 | Madge v. State, 160 So. 3d 86 | 399+1 | While the observations of lay persons leading up to the arrival of law enforcement may provide the factual background, prior wrongdoing cannot establish the basis for a loitering and prowling charge. See, e.g., B.A.A. v. State, 356 So.2d 304, 306 (Fla.1978) ("[T]here are no specific and articulable facts which would reasonably warrant a finding that the public peace and order were threatened or that safety of persons or property was jeopardized by the actions of the juvenile."); Jones v. State, 117 So.3d 818, 822 (Fla. 4th DCA 2013) (stating that the court could not rely on observations of lay witnesses of events that occurred before law enforcement arrived to determine whether defendant was guilty of loitering and prowling); A.D. v. State, 817 So.2d 1027, 1029 (Fla. 3d DCA 2002) (holding evidence insufficient to support finding that juvenile committed loitering and prowling); Freeman v. State, 617 So.2d 432, 433 (Fla. 4th DCA 1993) (reversing probation violation based on loitering and prowling arrest because officer must be able to point to specific and articulable facts). | While the observations of lay persons leading up to the arrival of law enforcement may provide factual background, prior wrongdoing cannot establish the basis for a loitering and prowling charge. West's F.S.A. S 856.021. | Does prior wrongdoing establish the basis for a loitering charge? | Vagrancy - Memo 15-SB.docx | ROSS-003287822-ROSS-003287823 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6683 | Leach v. Lauhoff Grain Co., 51 Ill. App. 3d 1022 | 413+1 | The first Workmen's Compensation Act was enacted in Illinois in 1911, and reenacted in 1913. It was taken substantially from a like enactment of Great Britain. (See Chicago Dry Kiln Co. v. Industrial Board (1916), 276 Ill. 556, 114 N.E. 1009.) The object and purpose of the enactment of the workmen's compensation law in this and other states was to eliminate the common law of liability for personal injuries based upon the negligence of the employer with its attendant and complex defenses of contributory negligence, fellow servant negligence and assumption of the risk. The difficulty of proof and delay in the courts often provided no remedy, subjected the injured employee to deprivation of livelihood, reduced him to poverty, and produced antagonisms between employers and employees to the point that under the police power, something had to be done. That which was done we now refer to as workmen's compensation. That legislation amounted to a tradeoff, liability became absolute, the various defenses disappeared, and the employee could receive compensation for his injuries without reference to fault. The employer had to pay, but the amount he had to pay was not left to the vagary of delayed jury verdicts but for the most part was dependent upon a statutory scheme, and the amount recovered would be less, but recovery would be certain. (See 81 Am.Jur.2d, Workmen's Compensation, s 1 et seq.) As we have indicated, the enactment of workmen's compensation legislation was pursuant to the police power and was done in furtherance of sound public policy. (Deibeikis v. Link-Belt Co. (1914), 261 Ill. 454, 104 N.E. 211.) We turn now to the specifics of this case. | Enactment of workmen's compensation legislation was pursuant to police power and was done in furtherance of sound public policy. S.H.A. ch. 48, S 138.1 et seq. | Was the enactment of workmens compensation legislation pursuant to a states police power and was it done in furtherance of sound public policy? | 047796.docx | LEGALEASE-00131682-LEGALEASE-00131683 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 6684 | Zimmerman v. Wisconsin Elec. Power Co., 38 Wis. 2d 626 | 413+1 | Finally, the appellant contends that since modern industrial conditions so greatly expand the risk that an employee will negligently cause injuries, it is unjust to place any burden of care upon him. "The fundamental idea upon which liability is imposed is that an injury to an employee, like damage to a machine, is a burden that should be borne by the product of the industry and ultimately paid by those who consume this product." Val Blatz Brewing Co. v. Industrial Comm. of Wisconsin (1930), 201 Wis. 474, 478, 230 N.W. 622, 624. In light of what has been said before, this is a matter for the legislature to decide, since it pertains to the wisdom of enactments of policy it previously made. | Fundamental idea upon which liability for workmen's compensation is imposed is that injury to an employee, like damage to a machine, is burden which should be borne by product of the industry and ultimately paid by those who consume the product. | What is the fundamental idea upon which liability for workmens compensation is imposed? | 047845.docx | LEGALEASE-00131797-LEGALEASE-00131798 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 6685 | United States v. Jefferson, 562 F. Supp. 2d 687 | 63+1(1) | An indictment charging bribery must therefore allege each of the following elements: (i) that the defendant is a public official, and (ii) that defendant corruptly demanded, sought, received, accepted, or agreed to receive or accept (iii) anything of value (iv) in return for being influenced in the performance of (v) an official act. | An indictment charging bribery must allege each of the following elements: (1) that the defendant is a public official; and (2) that defendant corruptly demanded, sought, received, accepted, or agreed to receive or accept (3) anything of value (4) in return for being influenced in the performance of (5) an official act. 18 U.S.C.A. S 201(b)(2)(A). | What are the elements of bribery? | Bribery - Memo #134 - C-CSS.docx | ROSS-003285743 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |
| 6686 | United States v. Fernandez, 722 F.3d 1 | 63+1(1) | Id. at 404"05, 119 S.Ct. 1402 (third emphasis added) (construing the general federal bribery and gratuity statute, 18 U.S.C. " 201); see also United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir.1993) (noting in a " 666 case that "[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a quid pro quo "). As the Eighth Circuit has noted, "[t]he core difference between a bribe and a gratuity is not the time the illegal payment is made, but the quid pro quo, or the agreement to exchange [a thing of value] for official action." United States v. Griffin, 154 F.3d 762, 764 (8th Cir.1998). Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe. | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | "If the agreement to exchange a thing of value for an act is made after that act has been performed, can that agreement be properly viewed as an agreement to offer or accept a bribe?" | 011181.docx | LEGALEASE-00132574-LEGALEASE-00132575 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6687 | United States v. Medford, 661 F.3d 746 | 63+1(1) | Although we ordinarily review issues of statutory construction de novo, United States v. Linney, 134 F.3d 274, 282 (4th Cir.1998), we observe that Medford's position is foreclosed by the Supreme Court's majority opinion in Skilling. In contrast to Justice Scalia's view, which also was joined by Justice Thomas and Justice Kennedy, the Court's majority opinion, joined by six Justices, held that the Honest Services Fraud statute was not unconstitutionally vague with respect to its provisions addressing "bribery or kickback schemes," the provisions on which the charges against Medford were based. See Skilling, 130 S.Ct. at 2930"31. Accordingly, we reject Medford's argument that the Honest Services Fraud statute is unconstitutionally vague, and we affirm his convictions for violating that statute. | Honest Services Fraud statute was not unconstitutionally vague with respect to its provisions addressing bribery or kickback schemes. 18 U.S.C.A. S 1346. | Is Honest Services Fraud statute unconstitutionally vague with respect to its provisions addressing bribery or kickback schemes? | Bribery - Memo #267 - C-JL.docx | ROSS-003327162-ROSS-003327163 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6688 | Williams v. Martin, 273 Ga. App. 562 | 307A+749.1 | Martin's attempt to create a jury question after resting her case by raising the issue of commingled assets cannot change our result. "[I]t generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order." (Footnotes omitted.) Dept. of Human Resources v. Phillips, 268 Ga. 316, 318(1), 486 S.E.2d 851 (1997); see also Tahamtan v. Tahamtan, 204 Ga.App. 680, 681(1), 420 S.E.2d 363 (1992); OCGA " 9-11-16(b). "Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." (Punctuation and footnote and omitted.) Dept. of Human Resources, supra, 268 Ga. at 318(1), 486 S.E.2d 851; see Tahamtan, supra, 204 Ga.App. at 681(1), 420 S.E.2d 363. | Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. | Can a pretrial order control the subsequent course of action unless modified at the trial to prevent injustice? | Pretrial Procedure - Memo # 1838 - C - UG.docx | ROSS-003328475-ROSS-003328476 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6689 | Wilkins v. T. Enterprises, 177 Ill. App. 3d 514 | 307A+46 | Illinois Supreme Court Rule 219(c) addresses the sanctions a trial court may impose upon a party's failure to comply with discovery orders. It provides that a trial court may enter a "just" order where a party unreasonably refuses to comply with a discovery order, and it outlines a nonexclusive list of sanctions, ranging from the issuance of a stay in proceedings until compliance to the dismissal of the offending party's action with prejudice. (Ill.Rev.Stat.1987, ch. 110A, par. 219(c).) The imposition of sanctions pursuant to this rule is a matter generally left to the discretion of the trial court. (Bautista v. Verson Allsteel Press Co. (1987), 152 Ill. App.3d 524, 105 Ill.Dec. 487, 504 N.E.2d 772.) The trial court, however, should impose sanctions to promote discovery, not to impose punishment (People ex rel. General Motors v. Bua (1967), 37 Ill.2d 180, 196, 226 N.E.2d 6, 16, rev'd on other grounds (1971), 45 Ill.2d 418, 261 N.E.2d 305), and an order of dismissal with prejudice under Rule 219(c) is a drastic action to be employed only as a last resort (Humboldt"Armitage Corp. v. Illinois Fair Plan Association (1980), 86 Ill.App.3d 888, 891, 41 Ill.Dec. 885, 887, 408 N.E.2d 307, 309; Williams v. City of Chicago (1977), 54 Ill.App.3d 974, 978, 12 Ill.Dec. 496, 499"500, 370 N.E.2d 119, 122"123, appeal denied (1978), 71 Ill.2d 601). | Imposition of sanctions pursuant to Illinois Supreme Court rule addressing party's failure to comply with discovery order is matter generally left to discretion of trial court; court, however, should impose sanctions to promote discovery, not to impose punishment, and order of dismissal with prejudice is drastic action to be employed only as last resort. S.H.A. ch. 110A, P 219(c). | Should sanctions be imposed by Court to impose a punishment? | 027125.docx | LEGALEASE-00133211-LEGALEASE-00133212 | Order, SA, Sub | 0.72 | 1 | 0 | 1 | 1 | 1 |
| 6690 | Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37 | 307A+331 | Before discovery abuse may be found based on a failure to produce relevant evidence, the moving party must establish that the non-producing party had a duty to preserve the evidence. Wal"Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 722 (Tex.2003). A party's duty to preserve evidence that it knows or reasonably should know is relevant to imminent or on-going litigation arises as soon as the party has notice that it possesses or controls material evidence relevant to the litigation. Albertson's, Inc. v. Arriaga, No. 04"03"00697"CV, 2004 WL 2045389 at (Tex.App.-San Antonio Sept. 15, 2004, no pet). A party who intentionally or negligently fails to preserve relevant information may be held accountable for the loss of such information. Id. (citing Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 666 (Tex.App.-Houston [1st Dist.] 1998, no pet.)). The affected party may move for sanctions, or request a spoliation presumption or instruction depending on the circumstances. Id. The trial court has discretion "to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available." Wal"Mart Stores, 106 S.W.3d at 721. A party is entitled to discovery of all documents, physical models, reports, compilations of data, or other material provided to, reviewed by, or prepared by or for a retained testifying expert. Tex.R. Civ. P. 192.3(e)(6), 194.2(f)(4). A party is entitled to obtain the same information about a consulting expert whose work was reviewed by a testifying expert as it can obtain from the testifying expert. Tex.R. Civ. P. 192.3(e). An expert is required to preserve his work product and the party who retained the expert may be sanctioned if the expert destroys his work product. See Walton v. City of Midland, 24 S.W.3d 853, 861"62 (Tex.App.-El Paso 2000, no pet.), abrogated on other grounds, 130 S.W.3d 144 (Tex.App.-El Paso 2003, no pet.) (affirming sanctions against party whose retained expert | A party's duty to preserve evidence that it knows or reasonably should know is relevant to imminent or on-going litigation arises as soon as the party has notice that it possesses or controls material evidence relevant to the litigation. | When does the partys duty to preserve evidence known to be relevant to an on-going litigation arise? | 027165.docx | LEGALEASE-00133107-LEGALEASE-00133108 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 6691 | Querry v. Montgomery Ward & Co., 217 Kan. 104 | 307A+749.1 | The purpose of the pretrial order is to define and clarify the issues; it has the full force and effect of other orders of the court and controls the course of the trial unless subsequently modified. (Beard v. Montgomery Ward & Co., 215 Kan. 343, 524 P.2d 1159; Baugher v. Hartford Fire Ins. Co., 214 Kan. 891, 522 P.2d 401; and Tillotson v. Abbott, 205 Kan. 706, 472 P.2d 240.) | Pretrial order has full force and effect of other orders of court and controls course of trial unless subsequently modified. Rules of Civil Procedure, rule 16, K.S.A. 60-216. | Does a pretrial order have full force and effect of other orders of court and controls course of trial unless subsequently modified? | Pretrial Procedure - Memo # 2426 - C - NC.docx | ROSS-003287518-ROSS-003287519 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6692 | Troup v. Chambers, 280 Ga. App. 392 | 307A+519 | By its plain terms, OCGA " 9-11-41(a)(1) deals with "Voluntary dismissal" in which "an action may be dismissed by the plaintiff, without order or permission of court." Subsection (a)(3) of the statute provides, "[a] dismissal under this subsection is without prejudice, except that the filing of a second notice of dismissal operates as an adjudication upon the merits." The plain meaning of this statute is that a plaintiff's second voluntary dismissal of a case operates as an adjudication on the merits against the plaintiff. See Ford v. Tycam Home Builders, 267 Ga.App. 581, 582, 601 S.E.2d 133 (2004); Zohoury v. Zohouri, 218 Ga.App. 748, 749(1), 463 S.E.2d 141 (1995). Subsection (a)(3) of the statute has nothing to do with involuntary dismissals. See Reese v. Frazier, 158 Ga.App. 237, 238(2), 279 S.E.2d 529 (1981) ("The language of [OCGA " 9-11-41(a) ] permits of no conclusion other than that only voluntary dismissals filed by a plaintiff are to be counted for purposes of that section.") (emphasis supplied); OCGA " 9-11-41(a)(3). | Section of voluntary dismissal statute providing that a voluntary dismissal is without prejudice, except that a second voluntary dismissal operates as an adjudication on the merits, has nothing to do with involuntary dismissals. West's Ga.Code Ann. S 9-11-41(a)(3). | "Is the section of voluntary dismissal statute providing that a voluntary dismissal without prejudice, except that a second voluntary dismissal operates as an adjudication on the merits?" | 028133.docx | LEGALEASE-00132605-LEGALEASE-00132606 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6693 | Nielsen v. Firelands Rural Elec. Coop., 123 Ohio App. 3d 104 | 307A+517.1 | This court has previously held that a voluntary dismissal, without prejudice, dissolves "all interlocutory orders made by the court in that action," including a partial summary judgment. Auto-Owners Mut. Ins. Co. v. Checker Cab, Inc. (July 30, 1996), Lucas App. No. L-96-170, unreported (reprinted in appendix "A"), citing Cent. Mut. Ins. Co. v. Bradford-White Co. (1987), 35 Ohio App.3d 26, 519 N.E.2d 422. Since the July 15, 1997 judgment of the trial court was dissolved when the remainder of the case was voluntarily dismissed, without prejudice, no appeal can be taken from that order. | Voluntary dismissal, without prejudice, dissolves all interlocutory orders made by court in that action, including a partial summary judgment. | Does a voluntary dismissal without prejudice dissolve interlocutory orders made by the court in the action? | Pretrial Procedure - Memo # 2600 - C - KA.docx | ROSS-003289483-ROSS-003289484 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 6694 | McGowen v. Huang, 120 S.W.3d 452 | 336H+428 | The next question is whether the nonsuit changed the partial summary judgments into final judgments. A nonsuit6 is effective as soon as it is filed. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982); Zimmerman v. Ottis, 941 S.W.2d 259, 261 (Tex.App.-Corpus Christi 1996, no writ); Miller v. Armogida, 877 S.W.2d 361, 364 (Tex.App.-Houston [1st Dist.] 1994, writ denied). A nonsuit taken after a partial summary judgment results in a dismissal with prejudice as to the issues adjudicated in favor of the defendant. Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 855 (Tex.1995). Huang argues that, since the issues were dismissed with prejudice under the principle established in Hyundai, the nonsuit in effect created a final judgment out of the prior partial summary judgment. He cites Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991) (dismissal with prejudice constitutes adjudication on merits). However, not all claims were dismissed with prejudice. A nonsuit without prejudice does not adjudicate the rights of the parties but merely places them in the positions in which they would have been, had suit not been brought. KT Bolt Mfg. Co. v. Tex. Elec. Coop., Inc., 837 S.W.2d 273, 275 (Tex.App.-Beaumont 1992, writ denied). Since claims exist which were not dismissed with prejudice, the nonsuits were not final judgments on the merits. | Nonsuit of the remaining claims in medical malpractice action, taken so the plaintiffs could appeal the partial summary judgment against them, did not transform the partial summary judgment into a final judgment, for purposes of res judicata; not all claims were dismissed with prejudice, and the nonsuit without prejudice did not adjudicate the rights of the parties, but merely placed them in the positions in which they would have been had suit not been brought. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Does a nonsuit without prejudice adjudicate the rights of the parties but merely places them in the positions in which they would have been, had suit not been brought?" | Pretrial Procedure - Memo # 2687 - C - TM.docx | ROSS-003300162-ROSS-003300164 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 6695 | Byrne v. Frank Cunningham Stores, 89 F. Supp. 489 | 386+8 | It is a serious interference with the owner's control of property to refuse to surrender possession to him when he is entitled to it. A mistake of law or fact is no defense. The gravamen of the action is the exercise of control over the property so as to deny the rightful owner of the possession to which he is entitled. At common law the action of trespass protected the interest in the possession of the property. As in the case of trespass to land and conversion, the property right is protected at the expense of an innocent mistake. | Refusal to surrender possession of property to owner when he is entitled to it constitutes interference with owner's control, and in an action by owner for trespass, owner's property right will be protected and a mistake of law or fact is no defense. | Can the refusal to surrender possession of property to the owner when he is entitled to it invoke an action for trespass? | 047336.docx | LEGALEASE-00133416-LEGALEASE-00133417 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 6696 | Umbreit v. Quality Tool, 302 Minn. 376 | 413+2 | While it is true that the Workmen's Compensation Act is remedial and humanitarian in purpose and is to be given a liberal interpretation in favor of employees, it is also true that the rights and benefits granted rest solely upon, and are limited by, the statutes creating them. Berard v. LaCoe, 286 Minn. 375, 176 N.W.2d 74 (1970); Radzak v. Mercy Hospital, 291 Minn. 189, 190 N.W.2d 86 (1971); Schwartz v. Talmo, 295 Minn. 356, 205 N.W.2d 318 (1973); Tierney v. Tierney & Co., 176 Minn. 464, 223 N.W. 773 (1929); Peterson v. Thief River Falls Welding Co., 245 Minn. 212, 72 N.W.2d 75 (1955). As observed in the Tierney case, which we conclude controls our decision, the rights granted fall into two general categories, namely, rights granted to the employee to compensate him for his work-related injury or disability and rights granted to the employee's dependents when death results from a work-related injury. 176 Minn. 465, 223 N.W. 774. Permanent partial disability benefits fall within the former category. They are personal to the injured workman and are designed to compensate him for his loss of earning capacity. Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N.W.2d 365 (1973). In the case of scheduled disability benefits for loss of a bodily member under Minn.St. 176.101, loss of earning capacity is conclusively presumed regardless of the employee's ability to return to work at the same or greater earnings. Boquist v. Dayton-Hudson Corp., 297 Minn. 14, 209 N.W.2d 783 (1973). At the time of our decision in Tierney, payment of compensation for permanent partial disability was to be made at intervals approximating the disabled employee's wage payments. Minn.St.1971, s 176.021, subd. 3, quoted in footnote 2, requires a "lump sum payment" of such benefits "upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the | While Workmen's Compensation Act is remedial and humanitarian in purpose and is to be given liberal interpretation in favor of employees, rights and benefits granted rest solely upon and are limited by statutes creating them. M.S.A. S 176.011 et seq. | Is it true that workmens compensation statutes are remedial? | 047893.docx | LEGALEASE-00133072-LEGALEASE-00133073 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6697 | Bowers v. Hiland Dairy Co., 132 S.W.3d 260 | 413+51 | We note, however, that statutes and rules relating to appeals in workers' compensation cases are to be construed liberally in favor of allowing appeals to proceed, and, to the extent possible, to permit disposition on the merits. Abrams v. Ohio Pacific Exp., 819 S.W.2d 338, 341 (Mo. banc 1991). Bearing that premise in mind, there is one portion of Employee's first point to which we can respond. It is apparent that he contends that the Commission erred as a matter of law in not ordering reimbursement of past prescription and hospital bills on the theory that the Commission required him to prove that the past treatment does not benefit any other condition, rather than simply requiring him to prove that the past treatment was to cure or relieve the effects of the accident. This apparently refers to the following statement in the ALJ's conclusions of law: Reviewing [Employee's] pharmaceutical prescription exhibits offered into evidence, all are due to the arthritis as much as any work accident. [Employee] has failed to meet his burden to separate out what medications are required as a result of the work accidents alone, rather than in combination with the preexisting rheumatoid arthritis. | Statutes and rules relating to appeals in workers' compensation cases are to be construed liberally in favor of allowing appeals to proceed, and, to the extent possible, to permit disposition on the merits. | Do compensation cases be construed liberally to permit disposition on the merits? | 047945.docx | LEGALEASE-00133228-LEGALEASE-00133229 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6698 | Scott v. Caddo Par. Sch. Bd., 6 So. 2d 806 | 413+1 | In the Puchner case cited above the Court answered this query in the affirmative and in the following language: "The interest and general welfare of the public being involved the parties cannot settle a compromise claim in contravention of the statute. As stated in our original opinion, matters relative to compensation claims are governed exclusively by the Workmen's Compensation Act and any settlement made in contravention of its provisions and its policies are unenforceable and may be set aside. Such being the case the Articles of the Civil Code are not applicable. For the same reason the contention that the compromise or settlement cannot be set aside because of an error of fact is unavailing. | Matters relative to compensation claims are governed exclusively by the Workmen's Compensation Act and the articles of the Civil Code are not applicable. Act No. 20 of 1914, as amended, LSA-R.S. 23:1021 et seq. | "Are matters relative to compensation claims governed exclusively by the Workmens Compensation Act, and are the articles of the Civil Code applicable?" | 047965.docx | LEGALEASE-00133424-LEGALEASE-00133425 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6699 | Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co., 115 F.2d 277 | 413+2189 | The analogy of payment under Workmen's Compensation Acts to accident or life insurance contracts is compelling. See Merrill v. Marietta Torpedo Co., supra, 92 S.E.at page 112; Holland v. Morley Button Co., supra, 145 A.at page 144; cf. Fox v. Dallas Hotel Co., 1922, 111 Tex. 461, 240 S.W. 517, 520. Both are subject to the same difficulties in the valuation of human life and human suffering. In fact, compensation from a fund is not measured by the extent of the employee's injury; rather is it measured by the size of his weekly wage. Thus, instead of being an indemnity, workmen's compensation is more in the guise of a pension or an investment, and, like life and accident insurance, is not subject (in the absence of a statute or specific contractual provision) to the principle of subrogation. But see Hardman, supra, 26 W.Va.L.Q.at p. 184; cf. Vance on Insurance, p. 680. | Workmen's compensation is not an "indemnity" but is more in the guise of a pension or investment, and like life or accident insurance, is not subject to the principle of subrogation, in absence of statute or specific contractual provision. Code W.Va.1931, 23-1-1 et seq. | Is workmens compensation an indemnity and is it subject to the principle of subrogation? | 047971.docx | LEGALEASE-00133450-LEGALEASE-00133451 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6700 | Shapell Indus. v. Superior Court, 132 Cal. App. 4th 1101 | 307A+517.1 | It is true that "[f]ollowing entry of a dismissal of an action by a plaintiff under Code of Civil Procedure section 581, a "trial court is without jurisdiction to act further in the action [citations] except for the limited purpose of awarding costs and statutory attorney's fees." " (Harris v. Billings (1993) 16 Cal.App.4th 1396, 1405, 20 Cal.Rptr.2d 718.) Furthermore, " "[a] voluntary dismissal of an entire action deprives the court of subject matter jurisdiction as well as personal jurisdiction of the parties." (Casa de Valley View Owner's Assn. v. Stevenson (1985) 167 Cal.App.3d 1182, 1192, 213 Cal.Rptr. 790.)" (Harris v. Billings, supra, 16 Cal.App.4th at p. 1405, 20 Cal.Rptr.2d 718. See also Lohnes v. Astron Computer Products (2001) 94 Cal.App.4th 1150, 1154, 115 Cal.Rptr.2d 34.) | A voluntary dismissal of an entire action deprives the court of subject matter jurisdiction as well as personal jurisdiction of the parties. | Does a voluntary dismissal of an entire action deprive the court of subject matter jurisdiction as well as the personal jurisdiction of the parties? | 028261.docx | LEGALEASE-00133618-LEGALEASE-00133619 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 6701 | Renner v. Hawk, 125 N.C. App. 483 | 307A+517.1 | Under N.C. Gen.Stat. " 1A-1, Rule 41(a)(1) (1990) a plaintiff may take a voluntary dismissal of his case without prejudice by filing a notice of dismissal at any time before resting his case. The effect of such a voluntary dismissal is to terminate the action, and no suit is pending thereafter on which the court can enter a valid order.Collins v. Collins, 18 N.C.App. 45, 50, 196 S.E.2d 282, 286 (1973). In Bryson v. Sullivan, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992), the North Carolina Supreme Court clearly established, however, that a voluntary dismissal pursuant to Rule 41(a) "does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated." See also Cooter and Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359, 375-76 (1990); Lassiter v. N.C. Farm Bureau Mut. Ins. Co., 106 N.C.App. 66, 70, 415 S.E.2d 212, 215, disc. review denied, 332 N.C. 148, 419 S.E.2d 573 (1992); Higgins v. Patton, 102 N.C.App. 301, 305, 401 S.E.2d 854, 856 (1991), overruled on other grounds by Bryson v. Sullivan, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992). | Effect of voluntary dismissal is to terminate action, and no suit is pending thereafter on which court can enter valid order. Rules Civ.Proc., Rule 41(a)(1), G.S. S 1A-1. | Does the effect of a voluntary dismissal is to terminate the action such that no suit is pending thereafter on which court can enter the valid order? | 028277.docx | LEGALEASE-00133642-LEGALEASE-00133643 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 6702 | Schwalier v. Hagel, 776 F.3d 832 | 34+4 | Mr. Schwalier also argues that the General Counsel for the Department of Defense acted arbitrarily and capriciously when it "coerced" the Secretary of the Air Force into rescinding the corrections of his records. Appellant's Br. 18"19. But the Air Force is a subcomponent of the Department of Defense. 10 U.S.C. " 111(a)(8). It acts "subject to the authority, direction, and control of the Secretary of Defense," 10 U.S.C. " 8013, who has prescribed that the General Counsel for the Department of Defense will resolve legal disagreements within itself, Department of Defense Directive 5145.01 "" 3.01, 3.10 (May 2, 2001). Accordingly, the Secretary of Defense and the General Counsel for the Department of Defense did not violate the law when they stepped in to resolve the issue of whether the Air Force legally could correct Mr. Schwalier's records. | Secretary of Defense and General Counsel for Department of Defense did not violate law when they stepped in to resolve issue of whether Air Force legally could correct officer's records; Air Force was subcomponent of Department of Defense, and it acted subject to authority, direction, and control of Secretary of Defense, who had prescribed that General Counsel for Department of Defense would resolve legal disagreements. 10 U.S.C.A. SS 111(a)(8), 8013. | Is the Air Force a subcomponent of the Department of Defense? | Armed Services - Memo 109 - JS.docx | LEGALEASE-00023533-LEGALEASE-00023534 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6703 | State ex rel. Arn v. State Comm'n of Revenue & Taxation, 163 Kan. 240 | 200+99 | And in 40 C.J.S., Highways, " 177, p. 25, it is said:"The construction and repair of public roads is a governmental function which may be exercised by the state or delegated to state or local agencies or bodies." | The construction and repair of public roads is a "governmental function" which may be exercised by the state or delegated to state or local agencies. | Is the construction and repair of public roads and highways a governmental function which may be exercised by the state or delegated to state or local agencies or bodies? | Highways -Memo 88 - KC.docx | LEGALEASE-00023635- LEGALEASE-00023636 | Condensed, SA | 0.29 | 0 | 1 | 0 | 1 | |
| 6704 | Univ. of Texas Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98 | 307A+517.1 | Under the Texas Rules of Civil Procedure, "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex. R. Civ. P. 162. Rule 162 applies in this case because Shultz filed the nonsuit while this matter was pending on interlocutory appeal from UTMB's pretrial plea to the jurisdiction. Under these circumstances, the nonsuit extinguishes a case or controversy from "the moment the motion is filed" or an oral motion is made in open court; the only requirement is "the mere filing of the motion with the clerk of the court." Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); see also Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). While the date on which the trial court signs an order dismissing the suit is the "starting point for determining when a trial court's plenary power expires," a nonsuit is effective when it is filed. In re Bennett, 960 S.W.2d 35, 38 (Tex.1997); Tex. R. Civ. P. 329b. The trial court generally has no discretion to refuse to dismiss the suit, and its order doing so is ministerial. In re Bennett, 960 S.W.2d at 38; Shadowbrook, 783 S.W.2d at 211. | While the date on which the trial court signs an order dismissing the suit is the starting point for determining when a trial court's plenary power expires, a nonsuit is effective when it is filed. Vernon's Ann.Texas Rules Civ.Proc., Rules 162, 329b. | Does Trial court's plenary power expire upon the trial court's signing of an order dismissing a case? | 028678.docx | LEGALEASE-00133877- LEGALEASE-00133878 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6705 | Roby v. U.S. Dep't of Navy, 76 F.3d 1052 | 34+5(4) | A conscientious objector has no constitutional or statutory right to be discharged from active service after voluntary enlistment. Sanger, 507 F.2d at 817; MILPERSMAN 1860120(1). We recognize, however, "a national policy ... not to subject bona fide conscientious objectors to combatant training and service in the armed forces." Harris v. Schlesinger, 526 F.2d 467, 469 (9th Cir.1975). Pursuant to this policy, the Department of Defense has developed procedures to discharge qualified applicants. See 32 C.F.R. " 75. Military branches may discharge an objector:(1) Who is conscientiously opposed to participation in war in any form;(2) Whose opposition is founded on religious training and beliefs; and(3) Whose position is sincere and deeply held.Id. " 75.5. The Navy's implementing regulation is similar. See MILPERSMAN 1860120(14) (belief must be "sincere and deeply held"). | There is national policy not to subject bona fide conscientious objectors to combatant training and service in the armed forces. | Is there a national policy to subject bona fide conscientious objectors to combatant training and service in the armed forces? | 008476.docx | LEGALEASE-00134218- LEGALEASE-00134219 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6706 | Kirby v. Gaub, 75 S.W.3d 916 | 307A+517.1 | Rule 67.02 (2001) provides "a civil action may be dismissed by the plaintiff without order of the court anytime prior to the introduction of evidence at the trial." Once a plaintiff files a voluntary dismissal pursuant to this rule, the trial court loses its jurisdiction as there is nothing before the court upon which to act. State ex rel. Fisher v. McKenzie, 754 S.W.2d 557, 560 (Mo.banc 1988). A voluntary dismissal is effective on the date it is filed with the court. Thornton v. Deaconess Medical Center-West, 929 S.W.2d 872, 873[3] (Mo.App.1996). While no court order is required to effectuate the dismissal, the court may enter administrative orders such as those with regard to the assessment of costs. Garrison v. Jones, 557 S.W.2d 247, 249 (Mo.banc 1977); Liberman v. Liberman, 844 S.W.2d 79, 80[1] (Mo.App.1992). Other actions taken by the trial court after a party files his or her voluntary dismissal are considered nullities. McKenzie, 754 S.W.2d at 560; Garrison, 557 S.W.2d at 250. | Once plaintiff files voluntary dismissal of civil action, trial court loses its jurisdiction as there is nothing before court upon which to act. V.A.M.R. 67.02. | "Once plaintiff files a voluntary dismissal of a civil action, does the trial court lose its jurisdiction as there is nothing before court upon which to act?" | 028429.docx | LEGALEASE-00134017- LEGALEASE-00134018 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6707 | Richman v. Coughlin, 75 S.W.3d 334 | 307A+517.1 | Rule 67.02(a), governing voluntary dismissals, provides, in pertinent part: "[A] civil action may be dismissed by the plaintiff without order of the court anytime prior to the introduction of evidence at the trial." (Emphasis added.) Thus, if a plaintiff voluntarily dismisses his or her petition prior to the introduction of evidence, no action of the trial court is necessary to effectuate the dismissal. Samland v. J. White Transp. Co., Inc., 675 S.W.2d 92, 96 (Mo.App.1984). "[W]hen the plaintiff files his memorandum of dismissal no court order is needed to give it effect"the case is automatically, ipso facto, dismissed." Id. (citations omitted). Thus, in our case, accepting the validity of the filing of the voluntary dismissal of her petition on March 22, 2001, by her purported attorney of record, the appellant's case would have been automatically dismissed. Nonetheless, the appellant contends in her reply brief that the subsequent court order of April 5 dismissing her petition was valid, arguing that the "trial court took upon itself to indicate that a Judgment was rendered and by so doing cannot invalidate the fact that it did not have jurisdiction to enter a Judgment so named." The appellant misunderstands the effect of a voluntary dismissal. | If plaintiff voluntarily dismisses his or her petition prior to the introduction of evidence, no action of the trial court is necessary to effectuate the dismissal. V.A.M.R. 67.02(a). | "If a plaintiff voluntarily dismisses his or her petition prior to the introduction of evidence, is any action of the trial court necessary to effectuate the dismissal?" | 028435.docx | LEGALEASE-00134463- LEGALEASE-00134464 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6708 | Marino v. King, 355 S.W.3d 629 | 228+185(4) | As we have previously observed, requests for admission should be used as "a tool, not a trapdoor." U.S. Fid. and Guar. Co. v. Goudeau, 272 S.W.3d 603, 610 (Tex.2008). And when admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions. Wheeler, 157 S.W.3d at 443 (citing TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917"18 (Tex.1991)). Thus, in Wheeler we required a showing of "flagrant bad faith or callous disregard for the rules" to substantiate a summary judgment based solely on deemed admissions. See id. at 443 (noting that "absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions"). | Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults, and thus using deemed admissions as the basis for summary judgment does not avoid the due-process requirement of flagrant bad faith or callous disregard, which is the showing necessary to support a merits-preclusive sanction; it merely incorporates the requirement as an element of the movant's summary-judgment burden. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Rules Civ.Proc., Rule 198.2(a, c). | "Where a party moves to withdraw deemed admissions that are merit-preclusive, does due process require the party opposing withdrawal to prove that the moving party's failure to answer the admissions resulted from flagrant bad faith or callous disregard of the rules?" | 028485.docx | LEGALEASE-00134607- LEGALEASE-00134608 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6709 | Carty v. McElwee, 31 N.J. Super. 532 | 307A+717.1 | An application for an adjournment or continuance based upon the absence of a witness is addressed to the sound discretion of the trial judge. There is nothing in this case to indicate that the judge acted arbitrarily. The defendant failed to utilize available judicial machinery for insuring the witness' appearance so that he cannot now urge the witness' failure to appear as a reason for adjournment. Although it is Dehors the record, the defendant's brief states that the witness in question simply stayed away on the advice of his insurance carrier. The trial judge did not abuse his discretion. Plaintiff and her attorney and witness were present in court and ready to try the case. It is problematic as to what the missing witness' testimony would have been because it appears that plaintiff attempted, without success, to subpoena the same person as a witness. Defendant made no offer of proof of what the witness would have testified to so that there is nothing before the court to show that he was a material witness or that his testimony would have been favorable to defendant | Application for adjournment or continuance based upon absence of a witness is addressed to the sound discretion of trial judge. | Is an application for adjournment or continuance based upon the absence of a witness addressed to the sound discretion of a trial judge? | 028495.docx | LEGALEASE-00134655-LEGALEASE-00134656 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6710 | Berkshire Aircraft v. AEC Leasing Co., 32 Kan. App. 2d 427 | 307A+486 | AEC's reliance on these cases is misplaced because a trial court's discretion to control discovery, to allow amendment of pleadings, and to grant continuances is based on statutory authority. See K.S.A.2001 Supp. 60"226 (discovery); K.S.A.2001 Supp. 60"215 (amendment of pleadings); K.S.A. 60"240 (continuances). Conversely, no statutory authority authorizes a trial court to allow a party to withdraw or amend admissions in limited action cases. Notably absent from Chapter 61 is a provision similar to that found in Chapter 60 allowing for withdrawal or amendment of admissions. If the legislature had wished to confer such authority in limited actions, it would have specifically done so as it did in actions under Chapter 60. | No statutory authority authorizes a trial court to allow a party to withdraw or amend admissions in limited action cases. K.S.A. 61-3101(b). | Does statutory authority authorize a trial court to allow a party to withdraw or amend admissions in limited action cases? | Pretrial Procedure - Memo # 2908 - C - NS.docx | ROSS-003331216-ROSS-003331217 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6711 | Vis v. Harris, 329 Ga. App. 129 | 307A+483 | Amerimar did not answer Vis's request and never moved to withdraw or amend its admissions; thus, the matters admitted were conclusively established as a matter of law, and Vis was not required to obtain a ruling by the trial court to that effect. A trial court has broad discretion to permit the withdrawal of an admission made by failing to timely respond to a request, which we review only for abuse. Velasco v. Chambless, 295 Ga.App. 376(1), 671 S.E.2d 870 (2008). However, "the failure to make a motion to have admissions withdrawn or amended forecloses remedial action under [OCGA " 9"11"36(b), and therefore] the requests for admissions which were not answered or objected to are deemed admitted." Post"Tensioned Construction, Inc. v. VSL Corp., 143 Ga.App. 148, 150"151(8), 237 S.E.2d 618 (1977); see also Brooks v. Roley & c., 144 Ga.App. 101, 101"102(1), 240 S.E.2d 596 (1977) (verdict reversed where trial court refused to admit admissions as probative evidence, allowing them only for impeachment purposes). | Failure to make a motion to have admissions withdrawn or amended forecloses remedial action, and therefore the requests for admissions which were not answered or objected to are deemed admitted. West's Ga.Code Ann. S 9-11-36(b). | Does failure to make motion to have admissions withdrawn or amended foreclose remedial action? | Pretrial Procedure - Memo # 2930 - C - NC.docx | ROSS-003318619-ROSS-003318620 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 6712 | Wells Fargo & Co. Express v. Allbright, 78 Ind. App. 574 | 307A+69.1 | Appellant made its motion to suppress the depositions of each of two witnesses taken March 17, 1920, which were read in evidence. These depositions were taken without leave of court first had and obtained, and while other depositions of the same witnesses taken by the same party in this case were on file and in effect. It is the law that a second deposition of the same witness cannot be taken while the first is on file and in full force and effect, without leave of court. Kirby v. Cannon, 9 Ind. 371; Addleman v. Swartz, 22 Ind. 249; Woodruff v. Garner, 39 Ind. 246; Scott v. Scott, 124 Ind. 66, 24 N. E. 666; Elliott's Evidence, " 1164. Authorities from other states on this question are cited in 18 C. J. p. 730. It follows that it was error to permit appellee to read in evidence depositions that should have been suppressed. For these errors the judgment must be reversed. Appellant presents error as to the amount of recovery, but we do not need to discuss this question. The same error is not likely to occur again. | A second deposition of the same witness cannot be taken without leave of the court while the first is on file and in full force and effect. | Can a second deposition of the same witness be taken without leave of the court while the first is on file and in full force and effect? | Pretrial Procedure - Memo # 2952 - C - SK.docx | ROSS-003290333-ROSS-003290334 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6713 | Approximately $14,980.00 v. State, 261 S.W.3d 182 | 307A+486 | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. Steffan v. Steffan, 29 S.W.3d 627, 631 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, the trial court clearly abused its discretion by acting without reference to guiding rules or principles, or acted arbitrarily or unreasonably. Id. We also review the trial court's application of local court rules in deciding not to hear a motion rebutting the presumption of service of discovery requests under an abuse of discretion standard. See Approximately $1,589.00 v. State, 230 S.W.3d 871, 873 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that clear failure to correctly analyze or apply law constitutes an abuse of discretion). | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. | Does the decision to allow or deny the withdrawal of deemed admissions lie within the broad discretion of the trial court? | Pretrial Procedure - Memo # 2970- C - KG.docx | ROSS-003290795-ROSS-003290796 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6714 | Ramirez v. Noble Energy, 521 S.W.3d 851 | 307A+486 | Trial courts have broad discretion to permit or deny withdrawal of deemed admissions; however, courts cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. Wheeler, 157 S.W.3d at 443; Cleveland, 397 S.W.3d at 694 (stating that we review trial court's ruling on motion to withdraw deemed admissions for abuse of discretion). Requests for admissions are intended to simplify trials and are useful when addressing uncontroverted matters; they are not intended to be used to force a party to admit the validity of his claims or concede his defenses. See Marino v. King, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam); Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam) (noting that requests for admissions were not intended "to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense"). | Trial courts have broad discretion to permit or deny withdrawal of deemed admissions; however, courts cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. Tex. R. Civ. P. 198.3. | Does the question of whether to permit the withdrawal of deemed admissions lie within the trial court's discretion? | Pretrial Procedure - Memo # 2993 - C - AP.docx | ROSS-003305115-ROSS-003305116 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6715 | City of Houston v. Riner, 896 S.W.2d 317 | 307A+486 | A trial court possesses broad discretion to permit or deny the withdrawal of deemed admissions, and its ruling will be set aside on appeal only upon a clear abuse of discretion. Esparza v. Diaz, 802 S.W.2d 772, 776 (Tex.App. Houston 14th Dist. 1990, no writ). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. Employers Ins. of Wausau v. Halton, 792 S.W.2d 462, 464 (Tex.App."Dallas 1990, writ denied). | Trial court possesses broad discretion to permit or deny withdrawal of deemed admissions, and its ruling will be set aside on appeal only upon clear abuse of discretion; "abuse of discretion" occurs when court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Does abuse of discretion occur when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably?" | 028854.docx | LEGALEASE-00134530-LEGALEASE-00134531 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 6716 | Motor Car Classics v. Abbott, 316 S.W.3d 223 | 307A+486 | As noted above, Weiss's attorney asserts that the existence of the deemed admissions first came to his notice on June 29, 2009, but filed no pleading to withdraw the deemed admissions until the date set for hearings, over two months after the discovery of the inadvertence. Had this issue been addressed reasonably expeditiously by promptly filing a motion to withdraw the deemed admissions, this may have obviated the need for the hearing on the motion for summary judgment, which was likewise set for the same date. The trial court could well have determined that the purpose in delaying the filing of the motion to withdraw the deemed admissions had delay of a final hearing as its primary goal. Because delay of trial is a factor to consider in determining whether prejudice to the other party can result, we determine that it was within the discretion of the trial court to deny the request. | Trial court did not abuse its discretion in denying motion to strike deemed admissions filed by car dealership's sales manager, against whom buyer of allegedly defective car had filed suit, as manager's attorney failed to file any pleading to withdraw the deemed admissions for over two months after existence of deemed admissions first came to his notice, and did not file motion to strike deemed admissions until date set for hearing on buyer's summary judgment motion, had this issue been addressed reasonably expeditiously by promptly filing a motion to withdraw the deemed admissions, this might have obviated need for hearing on summary judgment motion, and trial court could well have determined that purpose in delaying filing of motion to withdraw the deemed admissions had delay of a final hearing as its primary goal. Vernon's Ann.Texas Rules Civ.Proc., Rules 198.2(c), 198.3. | Is the delay of trial considered a factor in determining prejudice against the other party in determining denial of withdrawal of deemed admissions? | 028966.docx | LEGALEASE-00134713-LEGALEASE-00134714 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 6717 | Neal v. State Farm Fire & Cas. Co., 300 Ga. App. 68 | 307A+486 | The relevant principles of law are clear. Pursuant to OCGA " 9-11-36(a)(2), the matters in the requests for admissions were admitted by operation of law when [Neal] failed to answer the requests within 30 days of service. The trial court had the discretion to permit withdrawal of the admissions if the two-prong test of OCGA " 9-11-36(b) was satisfied. Those two prongs are (1) that withdrawal of the admissions will subserve or advance the presentation of the merits of the action and (2) that there is no satisfactory showing that withdrawal will prejudice the party who obtained the admissions. The party seeking to withdraw the admissions [where, as here, the requestor bore the burden of proving the matters addressed in the requests] has the burden of establishing the first prong by showing that the admitted request either can be refuted by admissible evidence having a modicum of credibility or is incredible on its face, and the denial is not offered solely for purposes of delay. Failure to present admissible, credible evidence contradicting the admitted matters justifies the denial of the motion to withdraw. | Party seeking to withdraw admissions by operation of law for failure to answer requests for admission within 30 days has the burden of establishing that withdrawal of the admissions will subserve or advance the presentation of the merits of the action by showing that the admitted request either can be refuted by admissible evidence having a modicum of credibility, or is incredible on its face, and the denial is not offered solely for purposes of delay; failure to present admissible, credible evidence contradicting the admitted matters justifies the denial of the motion to withdraw. West's Ga.Code Ann. S 9-11-36(b). | "Does the failure to present admissible, credible evidence contradicting the admitted matters justify the denial of the motion to withdraw?" | 029011.docx | LEGALEASE-00134054-LEGALEASE-00134055 | Order, SA, Sub | 0.45 | 1 | 0 | 1 | 1 | 1 |
| 6718 | Motor Car Classics v. Abbott, 316 S.W.3d 223 | 307A+486 | Although trial courts have broad discretion to permit or deny withdrawal of deemed admissions, they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. Stelly v. Papania, 927 S.W.2d 620, 622 (Tex.1996). A ruling on whether to strike deemed admissions will only be set aside upon a showing of clear abuse of discretion. Employers Ins. of Wausau v. Halton, 792 S.W.2d 462, 464 (Tex.App.-Dallas 1990, writ denied). In order to obtain the relief of withdrawing deemed admissions, the proponent of that relief must show (1) good cause and (2) no undue prejudice. Wheeler v. Green, 157 S.W.3d 439, 442 (Tex.2005) (per curiam) (citing TEX.R. CIV. P. 166a(c), 198.3). | To obtain the relief of withdrawing deemed admissions, the proponent of that relief must show good cause, and no undue prejudice. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | "To obtain the relief of withdrawing deemed admissions, must the proponent of that relief show good cause, and no undue prejudice?" | Pretrial Procedure - Memo # 3119 - C - MS.docx | ROSS-003289628-ROSS-003289629 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6719 | Hanh H. Duong v. Bank One, N.A., 169 S.W.3d 246 | 307A+486 | Appellants further contend that the trial court abused its discretion by denying their request to substitute a denial for the qualified admission to request number 6. A party may substitute a new response to a request for admission by showing (1) good cause for the substitution, (2) that the party relying on the response will not be unduly prejudiced, and (3) that the presentation of the merits of the action will be preserved.Stelly v. Papania, 927 S.W.2d 620, 621 (Tex.1996). A party can establish good cause by showing that its answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference. Id. | A party may substitute a new response to a request for admission by showing: (1) good cause for the substitution, (2) that the party relying on the response will not be unduly prejudiced, and (3) that the presentation of the merits of the action will be preserved. | What may a party substitute a new response to a request for admission? | 029091.docx | LEGALEASE-00134601-LEGALEASE-00134602 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 6720 | Worldwide Anesthesia Assocs. v. Bryan Anesthesia, 765 S.W.2d 445 | 307A+483 | In point of error two, appellant contends that the trial court erred in deeming admitted the second set of requests for admissions of facts. According to appellant, the answers to the second set of requests 449 were delivered to appellee on April 23, the day before the court ordered deadline. However, appellant had failed to sign these answers. Appellant argues that the requests were deemed admitted because the answers were not signed. Appellant is mistaken as to the sequence of events in this case. On May 20, the trial court extended the deadline for answering these requests until June 3. Pursuant to Rule 169 of the Texas Rules of Civil Procedure, these requests for admissions were deemed admitted without the necessity of court order after the June 3 deadline lapsed. Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236 (Tex.App."Houston [1st Dist.] 1986, no writ); Culp v. Hawkins, 711 S.W.2d 726, (Tex.App."Corpus Christi 1986, writ ref'd n.r.e.); Tex.R.Civ.P. 169, 215(4). Point of error two is overruled. | Requests for admission were deemed admitted without necessity of court order after deadline set by court for answering requests lapsed. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Are requests for admission deemed admitted without the necessity of a court order after a deadline set by court for answering requests lapses? | Pretrial Procedure - Memo # 3500 - C - ES.docx | ROSS-003290942-ROSS-003290943 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 6721 | State ex rel. Tomasic v. Kansas City, 237 Kan. 572 | 360+4.1(2) | States are subject to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in the exercise of their taxing power, but flexibility and variety appropriate to reasonable taxation schemes are permitted. The state taxation scheme must have a rational basis with classification based on differences having a fair and substantial relation to the object of the legislation. | States are subject to equal protection clause of Fourteenth Amendment of United States Constitution in exercise of their tax powers, but flexibility and variety appropriate to reasonable taxation schemes are permitted; state taxation scheme must have rational basis for classification based on differences having fair and substantial relation to object of legislation. U.S.C.A. Const.Amend. 14. | Are flexibility and variety of tax schemes appropriate? | 045071.docx | LEGALEASE-00134157-LEGALEASE-00134158 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6722 | Greenwood Cty. v. Duke Power Co., 81 F.2d 986 | 393+314(1) | There has been much discussion as to the meaning of this "general welfare" clause of the Constitution; but it is now definitely settled that the power of Congress to authorize expenditure of public money for public purposes is not limited by the direct grants of legislative power contained in the Constitution. Dealing with this question in the recent case of United States v. Butler, 56 S.Ct. 312, 319, 80 L.Ed. . . . , the Supreme Court, speaking through Mr. Justice Roberts, said:"Since the foundation of the nation, sharp differences of opinion have persisted as to the true interpretation of the phrase. Madison asserted it amounted to no more than a reference to the other powers enumerated in the subsequent clauses of the same section; that, as the United States is a government of limited and enumerated powers, the grant of power to tax and spend for the general national welfare must be confined to the enumerated legislative fields committed to the Congress. In this view the phrase is mere tautology, for taxation and appropriation are or may be necessary incidents of the exercise of any of the enumerated legislative powers. Hamilton, on the other hand, maintained the clause confers a power separate and distinct from those later enumerated, is not restricted in meaning by the grant of them, and Congress consequently has a substantive power to tax and to appropriate, limited only by the requirement that it shall be exercised to provide for the general welfare of the United States. Each contention has had the support of those whose views are entitled to weight. This court has noticed the question, but has never found it necessary to decide which is the true construction. Mr. Justice Story, in his Commentaries, espouses the Hamiltonian position. We shall not review the writings of public men and commentators or discuss the legislative practice. Study of all these leads us to conclude that the reading advocated by Mr. Justice Story is the correct one. While, | Congress' power to authorize expenditure of public money for public purposes is not limited by direct grants of legislative power in Constitution. U.S.C.A. Const. art. 1, S 8, cl. 1. | Is the power of Congress to authorize expenditure of public moneys for public purposes limited by the direct grants of legislative power found in the Constitution? | 045223.docx | LEGALEASE-00134916-LEGALEASE-00134918 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 6723 | Nat'l Iranian Oil Co. v. Ashland Oil, 817 F.2d 326 | 25T+148 | In The Bremen, 407 U.S. at 10"12, 92 S.Ct. at 1913"14, the Supreme Court held, in the context of an international admiralty dispute, that forum selection clauses must be strictly enforced, unless the enforcement would be "unreasonable," or unless the resisting party could show "countervailing" or "compelling" reasons why it should not be enforced. But the forum selection clause at issue in The Bremen did not relate to the choice of situs in an arbitral proceeding, rather it related to the parties' contractual choice of arbitration as opposed to litigation to resolve its disputes. Thus, in Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679 (5th Cir.1976), we held that the test in The Bremen was inapposite respecting the enforcement of the choice of situs expressed in an arbitration agreement. In Reisfeld, a U.S. company argued that a forum selection clause designating Belgium as the situs of arbitration should not be enforced because "it is so unreasonable that it either vitiates the arbitration clause altogether or requires a transfer to a more neutral situs." Id. at 680. We held that the forum selection clause contained in an arbitration provision must be enforced, even if unreasonable. A forum selection clause establishing the situs of arbitration must be enforced unless it conflicts with an "explicit provision of the Federal Arbitration Act." Id. at 680"81. | Forum selection clause establishing situs of arbitration must be enforced unless it conflicts with explicit provision of Federal Arbitration Act. 9 U.S.C.A. S 2. | Can a forum selection clause be enforced if it conflicts with an explicit provision of the Federal Arbitration Act? | 007574.docx | LEGALEASE-00135296-LEGALEASE-00135298 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6724 | Coppedge v. Marsh, 532 F. Supp. 423 | 34+6.1 | It is well established law that reserve officers in the Armed Forces of the United States have no constitutional right to be promoted or retained and their services may be terminated at any time for any reason, or for no reason at all. Pauls v. Secretary of Air Force, 457 F.2d 294, 297 (1st Cir. 1972); Woodward v. Moore, 451 F.Supp. 346, 347 (D.D.C.1978). A change in status of a reserve officer is a matter committed solely to the discretion of the Secretary of the officer's branch of service or the President of the United States.Woodward, supra, at 348. In Denby v. Berry, 263 U.S. 29, 33, 44 S.Ct. 74, 75, 68 L.Ed. 148 (1923), the Supreme Court commented on the statute creating a Naval Reserve Force:It is quite evident from the foregoing that members of this force occupy two statuses, one that of inactive duty, and the other of active service. It is further clear that it was within the power of the President, and of the Secretary of the Navy acting for him, to change the members of the Reserve Force from one status to the other. The power to call them from inactive duty to actual service was express. The power to order them from actual service to inactive duty was necessarily implied. How this should be done, was within the discretion of the President and his alter ego in the Navy Department, the Secretary. | A change in status of reserve officer is matter committed solely to discretion of secretary of officer's branch of service or president of United States. | Is a change in the status of the reserved officer a matter committed solely to the discretion of the President and the Secretary of Navy? | 008538.docx | LEGALEASE-00135593-LEGALEASE-00135594 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 6725 | United States v. Frega, 933 F. Supp. 1536 | 63+1(1) | Congress thus had a specific purpose in mind when it enacted " 666: the closing of loopholes left by 18 U.S.C. " 641 and 18 U.S.C. " 201, which respectively prohibit the theft of federal government property and the bribing of federal public officials. These statutes, however, failed to cover conduct where federal funds were stolen and then comingled with non-federal funds so that federal funds could not be traced. They also failed to cover many situations involving non-federal employees who corruptly administered federal funds. | Congress' specific purpose in enacting bribery statute was to close loopholes left by statutes that prohibit theft of federal government property and bribing of federal public officials; latter statutes failed to cover conduct where federal funds were stolen and then commingled with nonfederal funds so that federal funds could not be traced, and they also failed to cover many situations involving nonfederal employees who corruptly administered federal funds. 18 U.S.C.A. SS 201, 641, 666. | What is the specific purpose of Section 666 of the federal bribery statute? | Bribery - Memo #347 - C-JL.docx | ROSS-003290088-ROSS-003290089 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |
| 6726 | Com. v. Clarke, 311 Pa. Super. 446 | 63+1(1) | The crime of bribery is committed once the offer is made to confer a benefit or when the benefit, as here, is conferred, on a public official to cause that official to violate his legal duty. Under the section of the Crimes Code proscribing bribery in official and political matters, once the offer to confer the proscribed benefit, or once an agreement is made, the crime is complete. There need be no waiting for the benefit to actually be conferred. See Commonwealth v. Ohle, 291 Pa.Superior Ct. 110, 435 A.2d 592, 596 (1981). See also, Commonwealth v. Weselyk, 268 Pa.Superior Ct. 569, 408 A.2d 1149 (1979). | Under section of crimes code proscribing bribery in official and political matters, once offer to confer proscribed benefit or agreement is made, the crime is complete, and there need be no waiting for benefit to actually be conferred. 18 Pa.C.S.A. SS 4701, 4701(a)(3). | "Under the statute proscribing bribery in official and political matters, when is the crime complete? " | Bribery - Memo #388- C - LB.docx | LEGALEASE-00024895-LEGALEASE-00024896 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6727 | Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435 | 221+162 | Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. See Orfield and Re, International Law, Note, "Recognition and Enforcement of Foreign Judgments and Awards," pp. 736-737. | Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. | Should comity be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect? | 020748.docx | LEGALEASE-00135816-LEGALEASE-00135818 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6728 | Hobbs v. Arthur, 264 Ga. 359 | 307A+517.1 | The renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits.Clark v. Newsome, 180 Ga. 97, 178 S.E. 386 (1935); Cox v. Strickland, 120 Ga. 104(7), 47 S.E. 912 (1904); Atlanta K & N Ry. Co. v. Wilson, 119 Ga. 781, 47 S.E. 366 (1904), and cases cited therein. "The "privilege" of dismissal and renewal does not apply to cases decided on their merits or to void cases, but does allow renewal if the previous action was merely voidable." Patterson v. Douglas Women's Center, 258 Ga. 803, 804(3), 374 S.E.2d 737 (1989). | Renewal statute is remedial in nature and is to be construed liberally to allow renewal where suit is disposed of on any ground not affecting its merits. O.C.G.A. S 9-2-61(a). | Is a renewal statute remedial in nature and is to be construed liberally to allow renewal where suit is disposed of on any ground not affecting its merits? | 028542.docx | LEGALEASE-00135242-LEGALEASE-00135243 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6729 | Marpco v. S. States Pipe & Supply, 377 So. 2d 525 | 307A+716 | In our view, a continuance should have been granted pursuant to LSA-C.C.P. Article 1601 which empowers the trial court to grant a continuance any time there are good grounds therefor. See Patterson v. Leggio, 347 So.2d 1262 (La.App. 1 Cir. 1977). A district court has wide discretion in fixing cases for trial and the granting or denying of continuances, but when such discretion is exercised in a way that deprives a litigant of his day in court, there is an "abuse of discretion". Alford v. Glenn, 185 So. 720 (La.App.2 Cir. 1939). Certainly the withdrawal of litigant's attorney on the day of the trial without previous notice of trial or of the intent to withdraw to that litigant is sufficient grounds for a continuance. We can think of several good reasons why an attorney may wish to withdraw, even on the day of trial, however none of these reasons appear of record in the case at bar. | Withdrawal of a litigant's attorney on day of trial without previous notice of trial or of intent to withdraw to that litigant is sufficient grounds for a continuance. LSA-C.C.P. art. 1601. | Is withdrawal of a litigant's attorney on the day of the trial without previous notice of trial or of intent to withdraw to that litigant sufficient grounds for a continuance? | 029231.docx | LEGALEASE-00135276-LEGALEASE-00135277 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6730 | Riggin v. Rea Riggin & Sons, 738 N.E.2d 292 | 307A+716 | The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. Robertson v. Board of Zoning Appeals, Town of Chesterton (1998), Ind.App., 699 N.E.2d 310, 319. We will reverse the trial court only for an abuse of that discretion. Id. An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. Id.; Ind. Trial Rule 53.5. However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. Id. The withdrawal of legal counsel does not entitle a party to an automatic continuance, Danner v. Danner (1991), Ind.App., 573 N.E.2d 934, 937, trans. denied, and the moving party must show diligence in procuring counsel. Fetner v. Maury Boyd & Associates (1990), Ind.App., 563 N.E.2d 1334, 1338, trans. denied. | The withdrawal of legal counsel does not entitle a party to an automatic pretrial continuance, and the moving party must show diligence in procuring counsel. Trial Procedure Rule 53.5. | "Does the withdrawal of legal counsel not entitle a party to an automatic continuance, and the moving party must show diligence in procuring counsel?" | 029299.docx | LEGALEASE-00135252-LEGALEASE-00135253 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6731 | Beard Research v. Kates, 981 A.2d 1175 | 307A+331 | A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit. Whether a person has reason to anticipate litigation depends on whether the "facts and circumstances ... lead to a conclusion that litigation is imminent or should otherwise be expected." A court may sanction a party who breaches this duty by destroying relevant evidence or by failing to prevent the destruction of such evidence. | A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit. | Does a party in litigation or who has reason to anticipate litigation have an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit? | 029317.docx | LEGALEASE-00135471-LEGALEASE-00135472 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 6732 | People v. Rocha, 872 P.2d 1285 | 110+577.10(8) | The decision to grant a continuance is left to the sound discretion of the trial court. People v. Garcia, 690 P.2d 869 (Colo.App.1984). And, a continuance granted because of substitution of counsel may be chargeable to the defendant depending upon the facts and circumstances of the case and whether the substitution was warranted and caused by defendant's actions. People v. Scales, supra. Our supreme court has recommended that defense counsel make a record of the reason for the withdrawal to aid appellate review of the grounds for substitution of counsel. People v. Schultheis, supra. No such record was made here. | Continuance granted because of substitution of counsel may be chargeable to defendant depending upon facts and circumstances of case and whether substitution was warranted and caused by defendant's actions. West's C.R.S.A. SS 18-1-405, 18-1-405(3). | Will the question of whether continuance be granted because of counsel's absence depends on the facts and circumstances of each particular case? | 029390.docx | LEGALEASE-00135545-LEGALEASE-00135546 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 6733 | Ohio CAT v. Stoneman, 2015-Ohio-3546 | 307A+483 | When a party fails to timely respond to the request for admissions, "the admissions [become] facts of record which the court must recognize." Cleveland Trust Co. v. Willis, 20 Ohio St.3d 66, 67, 485 N.E.2d 1052 (1985). It is within the trial court's discretion whether it will allow the withdrawal of admissions. Szigeti v. Loss Realty Group, 6th Dist. Lucas No. L"03"1160, 2004-Ohio-1339, 2004 WL 541820. Further, whether to accept the filing of late responses to requests for admissions is also within the trial court's discretion. Sandler v. Gossick, 87 Ohio App.3d 372, 378, 622 N.E.2d 389 (8th Dist.1993) (citations omitted). | When a party fails to timely respond to the request for admissions, the admissions become facts of record which the court must recognize. Rules Civ.Proc., Rule 36. | "When a party fails to timely respond to requests for admissions, do the admissions become facts of record that the court must recognize?" | 029562.docx | LEGALEASE-00135415-LEGALEASE-00135416 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6734 | Zwicky v. Freightliner Custom Chassis Corp., 373 Ill. App. 3d 135 | 157+265(7) | Under Rule 216(c), the plaintiffs' failure to respond to the requests for admissions served by Fleetwood operates as an admission of all of the statements contained in the requests. 134 Ill.2d R. 216(c); Robbins v. Allstate Insurance Co., 362 Ill.App.3d 540, 543, 298 Ill.Dec. 879, 841 N.E.2d 22 (2005). Admissions created by the operation of Rule 216(c) are considered binding judicial admissions and thus are incontrovertible and may be cited in support of a motion for summary judgment. Robbins, 362 Ill.App.3d at 543, 298 Ill.Dec. 879, 841 N.E.2d 22. | Deemed admissions for failing to respond to request for admissions are considered binding judicial admissions and thus are incontrovertible and may be cited in support of a motion for summary judgment. Sup.Ct.Rules, Rule 216(c). | "Is a deemed admission for failing to respond to a request for admission a judicial admission and is thus incontrovertible, even at the summary judgment stage?" | 029714.docx | LEGALEASE-00135522-LEGALEASE-00135523 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6735 | Ramirez v. Noble Energy, 521 S.W.3d 851 | 92+3986 | "[W]hether an admission is one which precludes litigation of a claim or defense or merely seeks admission of an uncontroverted matter may not always be apparent until the admission is evaluated in the context of the other evidence." In re Sewell, 472 S.W.3d 449, 460 (Tex. App."Texarkana 2015, orig. proceeding). It is not enough to demonstrate that admissions do not conclusively establish the ultimate issue in the case to escape withdrawal of the deemed admissions. Id. at 461. Instead, "the record must affirmatively show that the requests are not merit-preclusive, either by showing that they seek to authenticate or prove the admissibility of documents or by showing that they involve uncontroverted facts." Id. Because merits-preclusive admissions implicate due process concerns, we must presume that the admissions are merits-preclusive if the record does not affirmatively establish that they are not merits-preclusive. Id. | Because merits-preclusive deemed admissions implicate due process concerns, courts must presume that the admissions are merits-preclusive if the record does not affirmatively establish that they are not merits-preclusive. U.S. Const. Amend. 14; Tex. R. Civ. P. 198.3. | "Because merits-preclusive deemed admissions implicate due process concerns, must courts presume that the admissions are merits-preclusive if the record does not affirmatively establish that they are not merits-preclusive?" | 029902.docx | LEGALEASE-00135574-LEGALEASE-00135575 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6736 | Hammond v. SBC Commc'ns, 365 Ill. App. 3d 879 | 307A+473 | Rule 216 provides that a party to an action may serve another party to that action with a written request for his admission of "any specified relevant fact" set forth in the request. 134 Ill.2d R. 216(a); P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill.2d 224, 234, 234 Ill.Dec. 459, 703 N.E.2d 71 (1998). The party receiving the request must then either deny or object to the request within 28 days, but if that party does neither, the factual matters in the request are deemed judicial admissions. See 134 Ill.2d R. 216(c); see also Banco Popular v. Beneficial Systems, Inc., 335 Ill.App.3d 196, 208, 269 Ill.Dec. 389, 780 N.E.2d 1113 (2002) (admission of facts which cannot later be disputed results from failure to respond as required by Rule 216). However, because a request seeking to admit legal conclusions is improper in form (see P.R.S. International Inc., 184 Ill.2d at 236, 234 Ill.Dec. 459, 703 N.E.2d 71), the failure to respond to that request does not result in a judicial admission. See P.R.S. International Inc., 184 Ill.2d at 239, 234 Ill.Dec. 459, 703 N.E.2d 71; Hubeny v. Chairse, 305 Ill.App.3d 1038, 1043, 238 Ill.Dec. 976, 713 N.E.2d 222 (1999) (failure to respond to request for admission of conclusion of law is irrelevant). | Because a request seeking to admit legal conclusions is improper in form, the failure to respond to that request does not result in a judicial admission. | "Because a request seeking to admit legal conclusions is improper in form, does the failure to respond to that request not result in a judicial admission?" | 029908.docx | LEGALEASE-00135589-LEGALEASE-00135590 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6737 | Matthews v. Matthews, 184 So. 3d 173 | 307A+485 | Given the broad exceptions provided in Article 1472, the trial court has wide discretion in determining whether to award attorney's fees. Brodtmann v. Duke, 98"1518 (La.App. 4 Cir. 3/21/01), 803 So.2d 41, 45. In Brodtmann, the Fourth Circuit provided the following prudent inquiry in determining whether to award attorney's fees and expenses:[t]he imposition of these sanctions must be carefully weighed against the recognition of the ultimate purposes of the adversarial system in the law. The purpose of the discovery process is not to force the opposing party to admit to the contested facts that are at the heart of the ultimate dispute. Rather, the central purpose of the discovery rules is to require the admission of facts which ought not to be disputed at trial, so as to eliminate the time, trouble and expenses of proving facts that are undisputed. | The trial court has wide discretion in determining whether to award attorney fees based on a party's failure to admit the truth of any matter that is latter proved to be genuine. LSA-C.C.P. art. 1472. | Does the court have wide discretion in determining whether to award party's attorney's fees for opposing party's failure to admit genuineness of document or truth of any matter? | 030098.docx | LEGALEASE-00135130-LEGALEASE-00135131 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 6738 | Tobin v. Oris, 3 Cal. App. 4th 814 | 307A+483 | Until we read the record and the briefs in this case, we would not have thought it necessary for a court to have to make explicit what the Legislature so clearly mandated. Under section 2033, subdivision (k), the court is required to grant a deemed admission motion unless a proposed response is served before the hearing on that motion. (Courtesy Claims Service, Inc. v. Superior Court (1990) 219 Cal.App.3d 52, 55"56, 268 Cal.Rptr. 30.) What the statute does not say, but obviously implies, is that where a proposed response is served prior to the hearing (and there is no finding that the "substantial compliance" requirement has not been met), then the motion may not be granted. Thus, under the statute, a motion to have admission requests deemed admitted may not be granted where the record establishes, as it does in this case, that (1) proposed responses to the requests have been served prior to the hearing on the motion and (2) such responses are in substantial compliance with the provisions of section 2033, subdivision (f)(1).25 | Court is required to grant deemed admission motion unless proposed response is served before hearing on that motion; conversely, where proposed response is served prior to hearing and there is no finding that response does not substantially comply with statutory requirements, motion may not be granted. West's Ann.Cal.C.C.P. S 2033(f)(1), (k). | "Where a proposed response is served prior to a hearing and there is no finding that response does not substantially comply with statutory requirements, may a motion not be granted?" | 030239.docx | LEGALEASE-00135743-LEGALEASE-00135744 | Order, SA, Sub | 0.67 | 1 | 0 | 1 | 1 | 1 |
| 6739 | Clodfelder v. Walker, 234 Ind. 219 | 307A+723.1 | Failure on the part of a party to timely file his motion for continuance operates as a waiver of any right to continuance which he might otherwise have had.Under the circumstances we cannot say that the denial of the motion for continuance constituted abuse of the court's discretion. | Failure on the part of the party to timely file his motion for continuance operates as a waiver of any right to continuance which he might otherwise have had. Burns' Ann.St. S 2-1301. | Does failure on the part of the party to timely file his motion for continuance operate as a waiver of any right to continuance which he might otherwise have had? | 030387.docx | LEGALEASE-00135895-LEGALEASE-00135896 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6740 | In re Calhoun Beach Holding Co., 205 Minn. 582 | 371+2001 | Relators believe that the settlement included special assessments and argue that since the approval of the board of review or other similar taxing authority was not obtained (as required by " 1983, supra), the commission was without authority to grant the application. Neither the application for abatement nor the order granting it mentions special assessments. The former offers $6,000 in "full settlment of all taxes'; the latter merely states that upon due consideration the application is granted and authorizes and directs the auditor and treasurer of Hennepin county to make necessary changes and entries in the books and records of their respective offices. While the word "tax" in its broad meaning includes both general taxes and special assessments (1 Cooley, Taxation, 4 ed. Ch. 1, " 31, p. 106), the reluctance of the courts so to hold where the result would be to deplete public revenues is well illustrated by the case of Washburn Memorial Asylum v. State, 73 Minn. 343, 76 N.W. 204, where it was held that a constitutional provision providing that institutions of public charity should be "exempt from taxation" did not exempt such institutions from paying special assessments. To concede that the commission intended to abate special assessments necessitates the inference that it ignored the command of the statute which endows it with power. Such an inference cannot be made without substantial evidence to support it since good faith on the part of the commission is presumed. State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 232, 207 N.W. 727; cf. State v. London & N. W. A. M. Co., 80 Minn. 277, 83 N.W. 339. In its amended return the commission denies "that the respondent (Commission) reduced or abated, or attempted to reduce or abate, any special assessment levied against the property involved". In the absence of mention of special assessments in the application for abatement and order granting it and in light of (a) the traditional | The word "tax" in its broad meaning includes both general taxes and special assessments, but the courts are reluctant to so hold when the result would be to deplete public revenues. | "Does the word ""tax"" in its broad meaning includes both general taxes and special assessments?" | 045257.docx | LEGALEASE-00135134-LEGALEASE-00135135 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 6741 | Bank of Glen Burnie v. Elkridge Bank, 120 Md App 402 | 83E+452 | Under Maryland law, "the burden of loss from a forged endorsement is generally placed on the person who dealt with and took the instrument in question from the forger." Hartford Fire Ins. Co. v. Maryland National Bank, 341 Md. 408, 671 A.2d 22 (1996). When a collecting bank, such as Glen Burnie, presents a check with an endorsement to the payor bank, such as Elkridge, the collecting bank warrants to the payor bank that it has good title to the instrument. Md.Code, Com. Law " 4-207(1) (a). An instrument paid over a forged endorsement, however, does not convey good title to the instrument to the collecting bank. Thus, as stated by the Court of Appeals in Bank of Glen Burnie v. Loyola Federal Savings Bank, 336 Md. 331, 648 A.2d 453 (1994): Because a forged endorsement generally does not confer good title, the drawee bank can recover upstream under a breach of warranty claim "against any person who presented a check bearing a forged endorsement. | Burden of loss from forged endorsement is generally placed on person who dealt with and took instrument in question from forger. | Is the burden of loss from a forged endorsement generally placed on the person who dealt with and took the instrument in question from the forger? | 010174.docx | LEGALEASE-00136563-LEGALEASE-00136564 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6742 | Swanson v. Sanders, 75 S.D. 40 | 8.30E+186 | A memorandum placed on the back of a note at the time of the execution thereof with the intention of making it a part of the note is as binding on the parties as if it were within the body of the instrument. National Bank of Commerce of Pierre v. Feeney, 9 S.D. 550, 70 N.W. 874, 46 L.R.A. 732, and on subsequent appeal, 12 S.D. 156, 80 N.W. 186, 46 L.R.A. 732. It is said in 7 Am.Jur., Bills and Notes, " 56, citing the above case: "It is a general rule, well supported by authority, that marginal notations or memoranda, placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part of the contract, and must be construed with the body of the instrument to arrive at the true agreement existing between the parties." We do not so decide, but for purpose of decision will assume that the evidence would sustain a finding that the parties intended to make the memorandum on the back a part of the note. | A memorandum placed on back of a note at time of execution thereof with intention of making it a part of the note is as binding on the parties as if it were within the body of the instrument. | Should a memorandum or notation placed on the back of a note or an instrument at the time of execution binding on the parties? | Bills and Notes -Memo 235 -VP.docx | ROSS-003318527-ROSS-003318528 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 6743 | United States v. Scruggs, 916 F. Supp. 2d 670 | 63+1(1) | In Skilling, the Supreme Court stated that "honest services fraud does not encompass conduct more wide-ranging than the paradigmatic cases of bribes and kickbacks." Skilling, 130 S.Ct. at 2932"2933. Honest services fraud by bribery requires a quid pro quo"i.e., specific intent to give or receive something of value in exchange for an official act. The Supreme Court in Skilling stated that the honest services statute "draws content" from federal statutes proscribing similar crimes, and the Court referenced 18 U.S.C. " 201(b) (bribery of a federal public official) and 18 U.S.C. " 666(a)(2) (federal programs bribery). The Court favorably cited three circuit court decisions holding that an honest services fraud conviction requires proof of a quid pro quo: United States v. Whitfield, 590 F.3d 325, 352"53 (5th Cir.2009); United States v. Ganim, 510 F.3d 134, 147"49 (2d Cir.2007); and United States v. Kemp, 500 F.3d 257, 281"86 (3d Cir.2007). | Honest services fraud by bribery requires a quid pro quo, i.e., specific intent to give or receive something of value in exchange for an official act. 18 U.S.C.A. S 1346. | Does honest services fraud by bribery require a quid pro quo? | Bribery - Memo #213 - C-JL.docx | ROSS-003290349-ROSS-003290350 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 6744 | United States v. Curescu, 674 F.3d 735 | 63+1(1) | To be guilty of soliciting or accepting a bribe in violation of section 666(a)(1)(B) requires knowing that the money or other thing of value received was indeed a bribe, which is to say an inducement to do a corrupt act. Salinas v. United States, 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011); United States v. Ford, 435 F.3d 204, 212"14 (2d Cir.2006). The evidence that Olivella had received three previous cash bribes (plus a $250 gift certificate, a noncash bribe), averaging more than $5,000, for overlooking code violations discovered in plumbing inspections tended to rebut an inference that Olivella had thought the money Garneata paid him was a gift rather than a bribe. The use of evidence of prior crimes to show "absence of mistake" is an express exception to the prohibition of prior-crimes evidence. Fed.R.Evid. 404(b)(2). | To be guilty of soliciting or accepting a bribe requires knowing that the money or other thing of value received was indeed a bribe, which is to say an inducement to do a corrupt act. 18 U.S.C.A. S 666(a)(1)(B). | Does bribery require the official to know that the money or other thing of value received was indeed a bribe? | Bribery - Memo #217 - C-JL.docx | ROSS-003289183-ROSS-003289184 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6745 | People v. Canepa, 295 A.D.2d 247 | 63+1(1) | The evidence failed to establish an "agreement," and also failed to prove the disjunctive requirement of an "understanding" (Penal Law " 200.00). The People were required to prove an understanding "in the mind of the bribe maker that the bribe receiver would effectuate the proscribed corruption of public process and was affected to do so by the actus reus of this particular crime" (People v. Bac Tran, 80 N.Y.2d 170, 177, 589 N.Y.S.2d 845, 603 N.E.2d 950). The mere hope that the public servant would be influenced by the benefit offered or conferred is insufficient (id.). | To support bribery conviction, People were required to prove an understanding in the mind of the bribe maker that the bribe receiver would effectuate the proscribed corruption of public process and was affected to do so by the actus reus of the crime. McKinney's Penal Law S 200.00. | What type of understanding does the prosecution need to prove the bribe-maker possessed in his/her mind in order to support a bribery conviction? | 011699.docx | LEGALEASE-00136593-LEGALEASE-00136594 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 6746 | United States v. Griffin, 154 F.3d 762 | 350H+653(4) | We reject Griffin's argument that his illegal conduct involved a gratuity and not a bribe because he was not paid money before he made the recommendation that Simmons be hired as a lobbyist. The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the quid pro quo, or the agreement to exchange cash for official action. To support his argument of a temporal distinction between bribery and gratuity, Griffin relies on United States v. Crozier, 987 F.2d 893 (2d Cir.), cert. denied, 510 U.S. 880, 114 S.Ct. 222, 126 L.Ed.2d 177 (1993). We do not read that case as requiring that, to sustain a conviction for bribery, the government must prove that the bribe-taker be paid before he performs the illegal service. In Crozier, the Court noted that 18 U.S.C. " 666(c) (1988), an earlier version of the statute Griffin has admitted violating, applied to anyone who "offers, gives, or agrees to give an agent of ... a State or local government agency ... anything of value for or because of the recipient's conduct...." The Court concluded that the "for or because of" language in the older version of the statute could support "both past acts supporting a gratuity theory and future acts necessary for a bribery theory." Crozier, 987 F.2d at 899. And because the illegal conduct in Crozier involved an improper loan made to a government official, but without an intent to influence the official's present or future conduct, the Court noted that "the facts lean[ed] more toward a gratuity theory." Id. at 899. In Griffin's case, the facts are clear: Griffin and Simmons agreed that he would be paid by Simmons for using his influence as Speaker of the House to steer business her way. Nowhere in Crozier did the Court suggest that, in a case involving an agreement to exchange cash for official action, the illegal conduct amounts to a gratuity rather than a bribe when the wrongdoer receives the money after he performs the action, rather than before. The Court merely held that the | The core difference between a "bribe" and a "gratuity," for purposes of determining whether conviction for bribery is subject to enhancement under Sentencing Guideline governing bribes, rather than Guideline governing illegal gratuities, is not the time the illegal payment is made, but the quid pro quo, or the agreement to exchange cash for official action. 18 U.S.C.A. S 666(a)(1)(B); U.S.S.G. SS 2C1.1, 2C1.2, 18 U.S.C.A. | Is the core difference between a bribe and a gratuity the time the illegal payment is made? | Bribery - Memo #448 - C-EB.docx | ROSS-003290124-ROSS-003290127 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 6747 | United States v. Haese, 162 F.3d 359 | 63+1(1) | Unlike the Singleton court, it is evident to this Court that Congress did not intend for section 201(c)(2) to be used when prosecutors offer lenity for a witness' truthful testimony. To interpret section 201(c)(2) in any other way would apply shackles to the government in its pursuit to enforce the law. See United States v. Hammer, 25 F.Supp.2d 518, 535"36 (M.D.Pa.1998) (noting that the Singleton opinion makes a criminal out of nearly every federal prosecutor, accomplices out of district judges, suppresses highly relevant evidence and cripples the enforcement of federal criminal law). | Statute prohibiting the giving, offering, or promising anything of value to witness for or because of his testimony is not intended to be used when prosecutors offer lenity for witness' truthful testimony; to interpret statute in any other way would apply shackles to government in its pursuit to enforce the law. 18 U.S.C.A. S 201(c)(2). | Can a prosecutor to offer lenity for a witness' truthful testimony? | Bribery - Memo #453 - C-JL.docx | ROSS-003291588-ROSS-003291589 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 6748 | United States v. Parise, 159 F.3d 790 | 63+1(1) | At the outset, it must be noted that the language of the Pennsylvania commercial bribery statute makes its reach quite broad. It requires that an employee solicit or accept a benefit from another in order to influence the employee's conduct in relation to his employer's affairs. The statute contains no requirement that the affected conduct be in relation to the official duties of an agent or employee, nor does it require a showing that an offender's conduct was adverse to the interests of the employer. In construing the language of the commercial bribery statute and in determining the meaning of "conduct in relation to the affairs" of an employer, we turn to the case of Commonwealth v. Bellis, 484 Pa. 486, 399 A.2d 397 (Pa.1979), for direction. | Pennsylvania's commercial bribery statute contains no requirement that the affected conduct be in relation to the official duties of an agent or employee, nor does it require a showing that an offender's conduct was adverse to the interests of the employer. 18 Pa.C.S.A. S 4108. | Does commercial bribery statute require the offenders conduct to be adverse to the interests of the employer? | 011747.docx | LEGALEASE-00136287-LEGALEASE-00136288 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 6749 | In re French, 320 B.R. 78 | 221+162 | International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Although there is some dispute as to the precise contours of this doctrine"compare Hartford Fire Ins. Co. v. California, 509 U.S. 764, 798, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), with id. at 813, 113 S.Ct. 2891 (Scalia, J., dissenting)"at base comity involves the recognition that there are circumstances in which the application of foreign law may be more appropriate than the application of our own law. In this case, the transferees maintain that application of Bahamian bankruptcy law, which (according to them) only allows avoidance if there is proof of an actual intent to defraud, is more appropriate than application of " 548, which allows avoidance of constructively fraudulent transfers like the one at issue here. | "International comity" is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. | What is comity or international comity? | International Law - Memo #1044 ANC.docx | ROSS-003291617-ROSS-003291619 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6750 | Ford Motor Credit Co. v. Updegraff, 218 S.W.3d 61 | 302+9 | The mandate of " 408.556.1, with respect to the pleading of facts to state a cause of action for a deficiency judgment, is consistent with the requirement of Rule 55.05, that a plaintiff's petition must "contain [ ] a short and plain statement of the facts showing that the pleader is entitled to relief[.]" The purpose of this fact-pleading requirement "is to present, define[,] and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits." Sivigliano v. Harrah's N. Kan. City Corp., 188 S.W.3d 46, 48 (Mo.App.2006) (internal quotation marks and citation omitted). "Although the petition does not have to plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement and cannot rely on mere conclusions." Brock, 143 S.W.3d at 56. In determining whether a petition states a cause of action upon which relief can be granted, we are to disregard conclusions not supported by the facts pled. Id. The failure to plead facts entitling the pleader to the relief requested, as required by Rule 55.05, deprives the trial court of jurisdiction to grant it. Id. | In determining whether a petition states a cause of action upon which relief can be granted, conclusions not supported by the facts pled are disregarded. V.A.M.R. 55.05. | Are conclusions not supported by the facts disregarded in determining whether a petition states a cause of action? | 023346.docx | LEGALEASE-00136856-LEGALEASE-00136857 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 6751 | Rodriguez-Farr Ins. Agency v. Sharp, 431 So. 2d 889 | 307A+716 | There is no right to a continuance because of a conflict in counsel's schedule. There is no abuse of discretion in denying a continuance, requested on grounds of a conflict in counsel's schedule, where counsel knew or should have known of the conflict for a substantial period of time, and fails to act to obtain a continuance until the last minute. Hall v. St. Paul Mercury Indemnity Co., 86 So.2d 751 (La.App. 1st Cir.1956); Powell v. Giddens, 271 So.2d 596 (La.App. 1st Cir.1972); Sather v. White, 388 So.2d 402 (La.App. 1st Cir.1980). | There is no abuse of discretion in denying a continuance, requested on grounds of conflict in counsel's schedule, where counsel knew or should have known of the conflict for a substantial period of time, and fails to act to obtain a continuance until the last minute. | "Is there no right to continuance because of conflict in counsel's schedule, though a scheduling conflict is discretionary ground for continuance?" | 029350.docx | LEGALEASE-00136078-LEGALEASE-00136079 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 6752 | Brougham Casket & Vault Co. v. DeLoach, 323 Ga. App. 701 | 307A+486 | Unless a response to requests for admission is timely and properly served upon the party requesting the admission, the requests are deemed admitted as a matter of law. See OCGA " 9"11"36(a)(2), (b); Fox Run Properties v. Murray, 288 Ga.App. 568, 569(1), 654 S.E.2d 676 (2007); Hammett v. Bailey, 147 Ga.App. 105, 106, 248 S.E.2d 180 (1978). Once the requests are deemed admitted, each of the matters addressed in the requests "are conclusive as a matter of law on the matters stated and cannot be contradicted by other evidence unless the admissions are withdrawn or amended on formal motion." (Citations and punctuation omitted.) Fox Run Properties, 288 Ga.App. at 569(1), 654 S.E.2d 676. The burden is on the party who failed to timely and properly respond to the requests for admission "to take the initiative and file a motion under OCGA " 9"11"36(b) to withdraw or amend the admissions." | The burden is on the party who failed to timely and properly respond to the requests for admission, resulting in their being deemed admitted, to take the initiative and file a motion to withdraw or amend the admissions. West's Ga.Code Ann. S 9-11-36(b). | Is the burden on one failing to answer request for admissions to take initiative and file motion to withdraw or amend admissions? | Pretrial Procedure - Memo # 3702 - C - TM.docx | ROSS-003289830-ROSS-003289831 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6753 | Gribin Von Dyl & Assocs. v. Kovalsky, 185 Cal. App. 3d 653 | 307A+483 | Defendant places great reliance on the fact that plaintiff did not claim prejudice as a result of his belated response to the request for admissions. Lack of prejudice, however, does not permit relief from default where the party seeking such relief fails to establish sufficient grounds therefor. (See Carroll v. Abbott Laboratories, Inc., supra, 32 Cal.3d 892, 900, 187 Cal.Rptr. 592, 654 P.2d 775.) "If lack of prejudice will not automatically enable one to succeed when making a motion under section 473, it should not automatically enable one who fails to make his motion within six months of the default [30 days under " 2033] to set aside the judgment by appealing to the equity powers of the court. To hold otherwise would encourage litigants to wait until the six-month period elapses before moving to set a default judgment aside." (Weitz v. Yankosky, supra, 63 Cal.2d 849, 857, 48 Cal.Rptr. 620, 409 P.2d 700; original emphasis.) Defendant also argues that the trial court abused its discretion in refusing to set aside the deemed admissions for the further reason that, as in Elston, the request for admissions did not include matters on which the parties conceivably might agree, but instead asked defendant to concede that he had no defense to the action. As we read Elston, that circumstance was not the basis for the holding that the trial court abused its discretion in refusing to set aside the deemed admissions. It was but one factor which militated in favor of granting such relief. | Lack of prejudice does not permit relief from deemed admission where party seeking such relief fails to establish sufficient grounds therefor. | Does a lack of prejudice not permit relief from a deemed admission where a party seeking such relief fails to establish sufficient grounds therefore? | 029995.docx | LEGALEASE-00136743-LEGALEASE-00136744 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 6754 | Eckman v. Centennial Sav. Bank, 757 S.W.2d 392 | 307A+483 | 4 In order to avoid the consequences of a failure to answer, the party must show legal or equitable excuse for his failure to answer. Burnett v. Cory Corp., 352 S.W.2d 502 (Tex.Civ.App."Dallas 1961, writ ref'd n.r.e.). The trial court has broad discretion in refusing or granting a motion of a non-answering party to permit the filing of an answer or denial to a request for admissions after the time for answering has expired. Texas Employers' Insurance Association v. Bragg, 670 S.W.2d 712, 715 (Tex.App."Corpus Christi 1984, writ ref'd n.r.e.). The ruling made by the trial court in either situation will be set aside only upon a showing of clear abuse. Id. | In order to avoid consequences of failure to answer requests for admissions, party must show legal or equitable excuse for that failure. | "In order to avoid consequences of failure to answer requests for admissions, must a party show legal or equitable excuse for that failure?" | 030013.docx | LEGALEASE-00136820-LEGALEASE-00136821 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6755 | Farm Credit Bank of Omaha v. McLaughlin, 474 N.W.2d 883 | 307A+483 | We believe that the district court in this case should have treated Mary's brief and affidavit in opposition to the motion for summary judgment as a motion to withdraw or amend her deemed admissions. We have previously noted in a similar case involving application of Rule 36 that "technical considerations should not be allowed to prevail to the detriment of substantial justice and that the rule is to be liberally construed." Farmers Elevator Co. of Horace v. Nagel, 307 N.W.2d 580, 586 (N.D.1981); see also 8 Wright & Miller, Federal Practice and Procedure: Civil " 2252 (1970). In this case, Mary was obviously challenging the truthfulness of the deemed admissions. She had attempted to respond to the requests for admissions when she finally received them, and denied each allegation therein. When served with the motion for summary judgment, she again challenged the deemed admissions and asserted material issues of fact. Under these circumstances, a liberal, non-technical application of Rule 36 required that the district court treat Mary's responses as a motion to withdraw or amend her deemed admissions. | In applying rule governing deemed admissions, technical consideration should not be allowed to prevail to the detriment of substantial justice, and rule should be liberally construed. Rules Civ.Proc., Rule 36. | "In applying the rule governing deemed admissions, should technical considerations not be allowed to prevail to the detriment of substantial justice and the rule be liberally construed?" | 030175.docx | LEGALEASE-00136762-LEGALEASE-00136763 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6756 | GeoChem Tech Corp. v. Verseckes, 929 S.W.2d 85 | 307A+723.1 | Appellate review of a trial court's ruling upon a motion for continuance is limited to a determination of whether the trial court abused its discretion. If the trial court acts without reference to any guiding rules or principles, it acts arbitrarily and unreasonably, and it has abused its discretion. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241"242 (Tex.1985), cert. den'd, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); Waste Water, Inc. v. Alpha Finishing & Developing Corporation, 874 S.W.2d 940 (Tex.App."Houston [14th Dist.] 1994, no writ). In ruling upon matters of this nature, the trial court is entitled to take the entire procedural history of the case into account. Waste Water, Inc. v. Alpha Finishing & Developing Corporation, supra. After examining the record, we cannot say that the trial court abused its discretion when it denied appellant's second motion for continuance. Appellant's second point of error is overruled. | In ruling on discretionary matter such as motion for continuance, trial court is entitled to take the entire procedural history of the case into account. | "While ruling upon a motion as a matter of discretion, will the trial court take the entire procedural history of the case into account?" | 030211.docx | LEGALEASE-00136144-LEGALEASE-00136145 | Order, SA, Sub | 0.85 | 1 | 0 | 1 | 1 | 1 |
| 6757 | Milton v. Montgomery Ward & Co., 33 Cal. App. 3d 133 | 307A+483 | Code of Civil Procedure section 2033(a) provides that upon a failure to answer requests for admissions, "(e)ach of the matters of which an admission is requested shall be deemed admitted. . . ." However, after a matter is deemed admitted, the scope and effect of the admission must be determined by the trial court. The trial court has broad discretion in determining the admissibility and relevance of evidence. (Spolter v. Four-Wheel Brake Serv. Co., 99 Cal.App.2d 690, 222 P.2d 307; Gladstone v. Fortier, 22 Cal.App.2d 1, 70 P.2d 255; May v. May, 275 Cal.App.2d 264, 79 Cal.Rptr. 622; Garfield v. Russell, 251 Cal.App.2d 275, 59 Cal.Rptr. 379.). | After a matter is deemed admitted upon failure to answer request for admissions, scope and effect of the admission must be determined by trial court. West's Ann.Code Civ.Proc. S 2033(a). | Should the scope and effect of the admission be determined by the trial court after a matter is deemed admitted? | Pretrial Procedure - Memo # 3937 - C - KBM.docx | ROSS-003291725-ROSS-003291726 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 6758 | Lucas v. Clark, 347 S.W.3d 800 | 307A+483 | he Appellees rely solely on Request for Admission 2, which was embedded in their petition, to prove that they suffered $10 million dollars of unliquidated damages in the form of lost profits. Request for Admission 2 stated: "As a proximate result of your breaching the contract made the basis of this suit, the Plaintiffs have suffered consequential damages in an amount not less than ten million dollars." Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. Oliphant Fin., LLC v. Galaviz, 299 S.W.3d 829, 838 (Tex.App.-Dallas 2009, no pet.); Sherman Acquisition II LP v. Garcia, 229 S.W.3d 802, 812 (Tex.App.-Waco 2007, no pet.) | Generally, when a party fails to respond to a request for admission, either by timely answer, written objection, or motion to file late answers, the facts contained in the request are deemed admitted. | Are the facts in a failure to answer a request for admissions deemed admitted? | 030230.docx | LEGALEASE-00136389-LEGALEASE-00136390 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6759 | Smith v. Emery, 109 Nev. 737 | 307A+483 | It is well settled that failure to respond to a request for admissions will result in those matters being deemed conclusively established. Woods, 107 Nev. at 425, 812 P.2d at 1297; Dzack, 80 Nev. at 347, 393 P.2d at 611. This is so even if the established matters are ultimately untrue. Lawrence v. Southwest Gas Corp., 89 Nev. 433, 514 P.2d 868 (1973); Graham v. Carson"Tahoe Hosp., 91 Nev. 609, 540 P.2d 105 (1975). Emery's failure to respond or object to the Smiths' request for admissions entitles the Smiths to have the assertions contained therein conclusively established. | Failure to respond to a request for admissions will result in those matters being deemed conclusively established, even if the established matters are ultimately untrue. Rules Civ.Proc., Rule 36. | "Will failure to respond to a request for admissions result in those matters being deemed conclusively established, even if the established matters are ultimately untrue?" | 030233.docx | LEGALEASE-00136486-LEGALEASE-00136487 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 6760 | Brooks v. Am. Broad. Co., 179 Cal. App. 3d 500 | 307A+485 | We first consider the factors which may properly be considered in determining whether a requested admission is "of substantial importance." Federal courts considering the issue have generally found a request for admission to have been of substantial importance when the matter requested for admission was central to disposition of the case. (See Campbell v. Spectrum Automation Co. (6th Cir.1979) 601 F.2d 246, 253 ["The admission sought ... was clearly of substantial importance since it was dispositive of [plaintiff's] claim...."]; Bradshaw v. Thompson (6th Cir.1972) 454 F.2d 75, 81; Boyle v. Leviton Mfg. Co. (S.D.Ind.1981) 94 F.R.D. 33, 36 ["[T]he requested admissions were dispositive of the lawsuit as indicated by the summary judgment."].) We agree with this view. Although circumstances may occur in some future case where a request for admission might be of substantial importance even though it is not at least partially outcome determinative, as ageneral rule a request for admission should have at least some direct relationship to one of the central issues in the case, i.e., an issue which, if not proven, would have altered the results in the case. | In order for request for admission to be of "substantial importance" so as to warrant imposing expenses of proving truth of requested admission upon party denying admission under S 2034(c), request should have at least some direct relationship to a central issue in case, i.e., an issue which, if not proven, will alter results in case. West's Ann.Cal.C.C.P. S 2034(c). | "Should a request have some direct relationship to a central issue in the case, in order for request for admission to be of ""substantial importance""?" | 030249.docx | LEGALEASE-00136888-LEGALEASE-00136889 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6761 | Shaw v. Nat'l Cty. Mut. Fire Ins. Co., 723 S.W.2d 236 | 307A+481 | In reviewing an instructed verdict, the evidence must be considered in the light most favorable to the losing party. White v. Southwestern Bell Telephone Co., 651 S.W.2d 260, 262 (Tex.1983). If there is any conflicting, probative evidence in the record, the jury should decide the issue. Id. An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce controverting testimony in any legal proceeding related to the action. Smith v. Home Indemnity Co., 683 S.W.2d 559, 562 (Tex.App."Fort Worth 1985, no writ). | Admission once admitted, deemed or otherwise, is judicial admission and party may not then introduce controverting testimony in any legal proceeding related to action. | Can a party introduce controverting testimony in any legal proceeding related to action in a judicial admission? | Pretrial Procedure - Memo # 4101 - C - NC.docx | ROSS-003289953-ROSS-003289954 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6762 | Concord Towers v. Long, 348 A.2d 325 | 307A+720 | While a continuance to take a deposition or interview the witness is Ordinarily appropriate, it is not Automatically so, for it is equally true that an unfair surprise-advantage obtained, through failure to abide by the Rules, is not to be condoned. To this end, the Trial Court must balance its duty to admit all relevant and material evidence with its duty to enforce standards of fairness and the Rules of Court. Hoey v. Hawkins, supra. In this case, because of defendant's timely and strenuous objection, the time factor, the inexcuseable withholding of the statement until the third day of trial, and the prejudicial effect of the statement itself when used in cross-examination, we think that the trial court should have given more consideration to balancing those interests, and that it was error to admit the statement into evidence. | Unfair surprise advantage obtained by party through its failure to abide by discovery rules is not to be condoned, and thus while continuance to take deposition or interview witness is ordinarily appropriate remedy where witness' identity is untimely disclosed, it is not automatically so. Superior Court Rules, Civil Rule 26(e), Del.C.Ann. | Is an unfair surprise advantage obtained by a party through its failure to abide by discovery rules not to be condoned? | 030836.docx | LEGALEASE-00136928-LEGALEASE-00136929 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 6763 | Heath v. Masotti, 55 N.Y.S.2d 416 | 307A+173 | It has been repeatedly held, particularly in the Third Department, that the right to examine an adverse party before trial is practically unrestricted, so long as the inquiry is directed to relevant issues. Stiles v. Davis, 265 App.Div. 985, 38 N.Y.S.2d 579; Breault v. Embossing Co., Inc., 253 App.Div. 175, 1 N.Y.S.2d 595; Parsons v. Moss, 171 Misc. 828, 13 N.Y.S.2d 865; Slattery v. Parsons, Sup., 17 N.Y.S. 2, 6. | The right to examine adverse party before trial is practically unrestricted so long as inquiry is directed to relevant issues. | Is the right to examine an adverse party before trial practically unrestricted so long as the inquiry is directed to relevant issues? | Pretrial Procedure - Memo # 4438 - C - NC.docx | ROSS-003331657-ROSS-003331659 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 6764 | Ex parte Lowengart, 59 So. 3d 673 | 307A+36.1 | A plaintiff may be entitled to discovery on the issue of personal jurisdiction. Ex parte Puccio, 923 So.2d 1069, 1077 (Ala.2005). A plaintiff, however, does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case. Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala.2003). In order to be entitled to jurisdictional discovery, the plaintiff must allege facts that would support a colorable claim of jurisdiction. Id. Discovery will be denied if it is based on bare, attenuated, or unsupported assertions of personal jurisdiction or if the plaintiff's claim is clearly frivolous. Id. "[T]he discovery to which a plaintiff is entitled in such a situation is only discovery that is relevant to the issue of personal jurisdiction, and the plaintiff is entitled to that discovery only when the plaintiff has offered the court more than conjecture and surmise in support of the jurisdictional theory." Ex parte Gregory, 947 So.2d 385, 390 (Ala.2006). | In order to be entitled to jurisdictional discovery, the plaintiff must allege facts that would support a colorable claim of jurisdiction. | "In order to be entitled to jurisdictional discovery, must the plaintiff allege facts that would support a colorable claim of jurisdiction?" | 031188.docx | LEGALEASE-00137031-LEGALEASE-00137032 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6765 | Cohen v. Laird, 315 F. Supp. 1265 | 34+5(4) | Turning now to the power of this Court, under the above facts, to reverse the determination of the Army in this particular case, it must be remembered that the jurisdiction of this Court to review and reverse determinations made by the appropriate military authorities is very limited. In fact, it has been denominated the "narrowest known to the law". Blalock v. United States (4th Cir. 1967) 247 F.2d 615, 619. Such determinations can only be overturned if without any "basis in fact". Witmer v. United States (1955) 348 U.S. 375, 380-381, 75 S.Ct. 392, 99 L.Ed. 428; Packard v. Rollins (8th Cir. 1970) 422 F.2d 525, 527. Every conscientious objector case presents two questions: One is the sincerity of the claimant; the other is the qualification of the applicant's belief under the statutory test. United States v. Corliss, supra, (280 F.2d at pp. 814-815). The "threshold" question however, and the one which must first be affirmatively answered, is the petitioner's sincerity in his claim for discharge as a conscientious objector" in his sincerity "in objecting, on religious grounds, to participation in war of any form". United States v. Henderson (5th Cir. 1969) 411 F.2d 224, 226. Such initial issue, involving as it does, the subjective state of another's mind is "not amenable to unerring objective determination." Bishop v. United States (9th Cir. 1969) 412 F.2d 1064, 1067. In resolving such issue, the Army may rest a denial on disbelief of the sincerity of the claimant, without more; such disbelief may not, though, be an arbitrary determination. It must, on the contrary, be honest and rational. Owens v. Commanding General (D.C.Cal.1969) 307 F.Supp. 285, 287. If, though, the military's disbelief in the applicant's sincerity is "honest and rational", there is such "basis in fact" for the determination made by the military as to bar relief in this Court. United States v. Corliss, supra (280 F.2d p. 814); United States v. Hesse (8th Cir. 1969) 417 F.2d 141, 143. | The Army may rest a denial of application for discharge as a conscientious objector on disbelief of sincerity of serviceman, without more; such disbelief may not, though, be an arbitrary determination; it must, on the contrary, be honest and rational. Military Selective Service Act of 1967, S 6(j), 50 U.S.C.A.App. S 456(j). | Can the Army rest a denial of application for discharge as a conscientious objector on disbelief of sincerity of the serviceman? | 008495.docx | LEGALEASE-00137322-LEGALEASE-00137323 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 6766 | Smith v. Sec'y of Army, 384 F.3d 1288 | 34+5(6) | As a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves. See James v. Caldera, 159 F.3d 573, 582 (Fed.Cir.1998); Dodson v. United States, 988 F.2d 1199, 1208 (Fed.Cir.1993); Skinner v. United States, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). For that reason, in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected. See Law v. United States, 11 F.3d 1061, 1064 (Fed.Cir.1993); Howell v. United States, 230 Ct.Cl. 816, 817 (1982); Knightly v. United States, 227 Ct.Cl. 767, 769 (1981) ("We do not have jurisdiction of a back pay claim predicated on a promotion not received."). | In a challenge to a decision not to promote a military service member, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected. 37 U.S.C.A. S 204. | Does the Military Pay Act give rise to a right to the pay of the higher rank for which the plaintiff was not selected? | 008510.docx | LEGALEASE-00137388-LEGALEASE-00137389 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6767 | E. E. Rivet & Sons v. Durand, 53 R.I. 48 | 8.30E+186 | It is apparent that the notation, "Due June 7, 1930," was placed there either through an error in computation or through ignorance of the statute (Gen. Laws 1923, c. 227, " 92) which made the note fall due June 6th. There is not the slightest evidence that the parties intended to make the note other than a note payable three months after its date. When a marginal notation, which does not purport to be a collateral agreement but only a restatement of the amount or date of the note, is in conflict with the terms in the main body thereof, it will be disregarded as being not a part of the note. Smith v. Smith, 1 R. I. 398, 53 Am. Dec. 652; Way v. Batchelder, 129 Mass. 361; Fisk v. McNeal, 23 Neb. 726, 37 N. W. 616, 8 Am. St. Rep. 162; Dark v. Middlebrook (Tex. Civ. App.) 45 S. W. 963; Norton on Bills & Notes, 108. | When marginal notation, which does not purport to be collateral agreement, but only restatement of amount or date of note, conflicts with terms in main body thereof, notation will be disregarded as not part of note. | Will marginal notation(s) be regarded as part of a note if it conflicts with the terms of its main body? | Bills and Notes -Memo 216- GP.docx | ROSS-003303806-ROSS-003303807 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6768 | State v. Lopez, 522 So. 2d 997 | 63+1(1) | In considering a Rule 3.190(c)(4) motion, the court must construe the facts in the light most favorable to the state. State v. Horton, 442 So.2d 408 (Fla. 2d DCA 1983); State v. McCray, 387 So.2d 559 (Fla. 2d DCA 1980). We agree with the state that the bribery statute prohibits any payment intended to influence the performance of any act by a public servant. The statute is violated even when a person pays for the doing of an act that the public servant is legally bound to do. State v. Saad, 429 So.2d 757 (Fla. 3d DCA 1983). Here, at the very least, Lopez intended to influence Ramirez's work habits. He wanted Ramirez to cooperate by appearing promptly to inspect and, perhaps, to wait while a code violation was corrected instead of rejecting the job and reinspecting at a later date. | Bribery statute prohibits any payment intended to influence performance of any act by public servant, even if person pays for doing of act the public servant is legally bound to do. West's F.S.A. S 838.015(1). | Does the bribery statute prohibit payments that are intended to influence an act that someone was legally bound to do? | Bribery - Memo #524 - C - LB.docx | ROSS-003290156-ROSS-003290157 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6769 | State v. Farrar, 190 N.C. App. 202 | 67+10 | The facts of this home invasion are more fully discussed in the prior opinions set forth above. The elements of burglary in the first degree are:(1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. | The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. | Is night time an element of burglary? | 012604.docx | LEGALEASE-00137600-LEGALEASE-00137602 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |
| 6770 | People v. Koberstein, 103 A.D.2d 1021 | 110+795(2.35) | Defendant also contends that the court erred in refusing to charge burglary in the second degree as a lesser included offense of the second count of burglary in the first degree. Burglary in the second degree is a lesser included offense of burglary in the first degree (CPL, " 1.20, subd. 37), but there was no reasonable view of the evidence to support a finding that defendant committed the lesser offense but did not commit the greater offense (CPL 300.50, subd. [1]; People v. Scarborough, 49 N.Y.2d 364, 426 N.Y.S.2d 224, 402 N.E.2d 1127; cf. People v. Martin, 59 N.Y.2d 704, 463 N.Y.S.2d 419, 450 N.E.2d 225). | Although burglary in the second degree is a lesser-included offense of burglary in the first degree, there was no reasonable view of evidence to support finding that defendant committed the lesser offense but did not commit the greater offense, and thus trial court did not err in refusing to charge burglary in the second degree as a lesser-included offense of a second count of burglary in the first degree. McKinney's CPL SS 1.20, subd. 37, 300.50, subd. 1. | Is second degree burglary a lesser included offense of first degree burglary? | Burglary - Memo 108 - JS.docx | ROSS-003290427-ROSS-003290429 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 6771 | State v. Solano, 181 Neb. 716 | 67+42(3) | We believe the correct rule to be that while the mere possession of stolen property standing alone is insufficient to justify a conviction of burglary, such possession of property is a circumstance which, taken in connection with other incriminating evidence in the case, may be considered by the jury in determining the question of the guilt or innocence of a defendant so charged. See, 12 C.J.S. Burglary s 59, p. 735; People v. Barber, 112 Cal.App.2d 333, 246 P.2d 99; Lefthand v. State (Okl.Cr.), 398 P.2d 98. In the application of this rule where both possession and other suspicious circumstances are shown, a conviction may be supported irrespective of whether either would have been sufficient of itself to sustain a verdict of guilty. 12 C.J.S. Burglary s 59e, p. 739; Gibson v. State, 25 Ariz. 236, 215 P.2d 729; People v. Morris, 124 Cal.App. 402, 12 P.2d 679; Oglesby v. State, 121 Tex.Cr. 52, 51 S.W.2d 587; State v. Johnson, 11 Wis.2d 130, 104 N.W.2d 379; State v. Bricker, 178 Iowa 297, 159 N.W. 873; Hart v. State, 61 Okl.Cr. 224, 67 P.2d 66; Myers v. Commonwealth, 132 Va. 746, 111 S.E. 463. An unreasonable or contradictory explanation of the possession of recently stolen property by a defendant is a circumstance pointing to guilt and is sufficient to submit the case to the jury. Such an explanation may not be believed by the jury and will not, as a matter of law, be insufficient to sustain a conviction. People v. Russell, 120 Cal.App. 622, 8 P.2d 209; Holliday v. State, 23 Ga.App. 400, 98 S.E. 386; People v. Hein, 315 Ill. 76, 145 N.E. 654; Stallard v. Commonwealth, 130 Va. 769, 107 S.E. 722. We believe the proper rule to be that possession of stolen property, coupled with false statements as to the manner in which the property came into defendant's possession, may be sufficient evidence to sustain a conviction of burglary. People v. Mercer, 103 Cal.App.2d 782, 230 P.2d 4; People v. Buratti, 96 Cal.App.2d 417, 215 P.2d 500; People v. Brown, 136 Cal.App.2d 244, 288 P.2d 984. In accordance with the above | Mere possession of stolen property standing alone is insufficient to justify burglary conviction, but such possession is circumstance which, taken in connection with other incriminating evidence, may be considered in determining question of guilt. | Is mere possession of stolen goods sufficient for a burglary charge? | Burglary - Memo 139 - JS.docx | ROSS-003331010-ROSS-003331012 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 6772 | Marshall v. Vise, 767 S.W.2d 699 | 307A+483 | Unanswered requests for admissions are automatically deemed admitted, unless the court on motion permits their withdrawal or amendment.TEX.R.CIV.P. 169. An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. See Shaw v. Nat'l County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App."Houston [1st Dist.] 1986, no writ). We have held, however, that a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex.1983). | Unanswered requests for admissions are automatically deemed admitted, unless court on motion permits there withdrawal or amendment. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Are unanswered requests for admissions automatically deemed admitted, unless a court on motion permits their withdrawal or amendment?" | 030159.docx | LEGALEASE-00137164-LEGALEASE-00137165 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6773 | Arcata Graphics Co. v. Heidelberg Harris, 874 S.W.2d 15 | 307A+723.1 | When the trial court grants a motion to amend, the opposing party must request a continuance if it believes it has been prejudiced. Allstate Ins. Co. v. Fox, 1990 WL 8058 at (Tenn.App. 6 Feb. 1990). If a continuance is not requested, the party against whom the amendment was granted may not complain on appeal. Id. | When trial court grants motion to amend, opposing party must request continuance if it believes it has been prejudiced; if continuance is not requested, party against whom amendment was granted may not complain on appeal. Rules Civ.Proc., Rule 15.01. | "When a trial court grants a motion to amend, must the opposing party request continuance if it believes it has been prejudiced?" | Pretrial Procedure - Memo # 4152 - C - DA.docx | ROSS-003304131-ROSS-003304132 | Condensed, SA | 0.2 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6774 | Ex parte Troncalli Chrysler Plymouth Dodge, 876 So. 2d 459 | 307A+36.1 | " "It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." " Andersen v. Sportmart, Inc., 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 311 (S.D.Ind.1997)). "However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." Id. "[T]o be permitted jurisdictional discovery, plaintiff must at least allege facts that would support a colorable claim of jurisdiction." Schenck v. Walt Disney Co., 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D.Ind.1997); Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475 (D.Del.1995); Daval Steel Prods. v. M.V. Juraj Dalmatinac, 718 F.Supp. 159, 162 (S.D.N.Y.1989); Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C.1988). | A court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction. | Does a court have the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction? | Pretrial Procedure - Memo # 4473 - C - ES.docx | ROSS-003330509-ROSS-003330510 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6775 | Anderson Columbia v. Brown, 902 So. 2d 838 | 307A+36.1 | We agree with our sister courts in holding that the discovery of an opposing party's legal costs is a matter best left to the sound discretion of the trial court. See Finol, 869 So.2d at 666; Brown Distrib. Co. of W. Palm Beach v. Marcel, 866 So.2d 160 (Fla. 4th DCA 2004); Mangel v. Bob Dance Dodge, Inc., 739 So.2d 720, 724 (Fla. 5th DCA 1999). As the Fifth District Court noted in Mangel: Florida has not yet adopted a hard and fast rule regarding the discovery and admission of opposing counsel's fees. This reflects the salutary view that the discovery may be justified in some cases but not in others and that it is a matter that should rest within the sound discretion of the trial court. | Discovery of opposing party's legal costs is matter best left to sound discretion of trial court. | Is discovery of opposing party's legal costs a matter best left to the sound discretion of a trial court? | 031252.docx | LEGALEASE-00137215-LEGALEASE-00137216 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 6776 | Slattery v. Parsons, 17 N.Y.S.2d 6 | 307A+91 | The cause or causes of the accident referred to in the plaintiff's complaint herein and the facts and circumstances surrounding said accident." This in effect, calls for a general examination of the defendant. The defendant maintains that the availability of the plaintiff as a witness in his own behalf and his knowledge of all of the facts and circumstances surrounding the accident, preclude the necessity for such an examination. The courts, however, have repeatedly held that the fact that the party seeking to take the depositions already has knowledge of the facts sought by the examination, is no reason for refusing the examination. Gaunt v. F. W. Woolworth Company, Inc., 2d Dep't. 1933, 239 App.Div. 850, 264 N.Y.S. 539; Matza v. Monks, 2d Dep't. 1935, 245 App.Div. 732, 280 N.Y.S. 147; Parsons v. Moss, 1939, 171 Misc. 828, 829, 13 N.Y.S.2d, 865, Gold, J. | Fact that a party seeking to take depositions before trial already has knowledge of the facts sought by the examination is not sufficient reason for refusing the examination. Civil Practice Act, S 288. | Is the fact that a party seeking to take depositions before trial already has knowledge of the facts sought by the examination not a sufficient reason for refusing the examination? | 031433.docx | LEGALEASE-00137460-LEGALEASE-00137461 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6777 | McGirl v. Wiltz, 148 S.W.2d 822 | 307A+725 | The chief consideration always to be weighed in passing upon an application for a continuance is whether its grant or denial would be in furtherance of substantial justice; and in a corresponding situation it was held that the court had not abused its discretion in denying a continuance where the absent witness "knew nothing of the facts of the case, but was desired to be used by defendant as an expert". Ten Broeck v. Travelers' Insurance Co., 42 Hun 656, 6 N.Y.St.R. 100, affirmed, 116 N.Y. 663, 22 N.E. 1134. Similarly, in our own state it was held that the court had been guilty of no abuse of its discretion in refusing a continuance because of the absence of an expert medical witness, a leading physician and surgeon of Kansas City, who had made a physical examination of the injured plaintiff; whose probable testimony the applicants could not even set out in detail in their application because of their lack of knowledge of medical terms and their inability to have a conference with the doctor who had been suddenly and unexpectedly compelled to enter a hospital for the purpose of undergoing a surgical operation; and upon whose services as a consulting expert the applicants had expected to rely during the examinations of the other medical witnesses. Pulliam v. Wheelock, 319 Mo. 139, 3 S.W.2d 374. | The chief consideration to be weighed in passing on an application for a continuance is whether its grant or denial will be in furtherance of substantial justice. | Is the chief consideration to be weighed in passing upon an application for a continuance is whether its grant or denial will be in furtherance of substantial justice? | 031594.docx | LEGALEASE-00138071-LEGALEASE-00138072 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 6778 | Menotti v. City of Seattle, 409 F.3d 1113 | 92+1498 | We must also assess whether Order No. 3 left ample alternative channels of communication. We have observed that "[t]he Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." Ctr. for Fair Pub. Policy, 336 F.3d at 1170 (quoting Colacurcio v. City of Kent, 163 F.3d 545, 555 (9th Cir.1998)). A time, place, and manner restriction does not violate the First Amendment "simply because there is some imaginable alternative that might be less burdensome on speech." Albertini, 472 U.S. at 689, 105 S.Ct. 2897. "Of course, the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."Bay Area Peace Navy, 914 F.2d at 1229 (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). However, an "alternative mode of communication may be constitutionally inadequate if the speaker's "ability to communicate effectively is threatened." " Id. (quoting Taxpayers for Vincent, 466 U.S. at 812, 104 S.Ct. 2118). | First Amendment does not guarantee right to communicate one's views at all times and places or in any manner that may be desired. U.S.C.A. Const.Amend. 1. | Does the First Amendment guarantee the right to communicate one's views at all times and places or in any manner that may be desired? | 014285.docx | LEGALEASE-00138736-LEGALEASE-00138737 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6779 | Kamler v. Kamler, 213 S.W.3d 185 | 307A+723.1 | By the trial date, the case had been pending for almost one year. During that time, Father paid no child support and had failed to make mortgage payments on the marital home. The parties had been appearing before the trial court on a regular, almost monthly basis, commencing in May, 2005. On August 3, 2005 the court set the trial date for October 5, 2005. Father testified he had been unhappy with his attorney for quite some time prior to August. Father fired his attorney on October 2, 2005, three days before trial. On the morning of trial, counsel was granted leave to withdraw. Father made an oral request to hire counsel and asked for a continuance. Supreme Court Rule 65.03 requires that absent consent of opposing counsel, an application for continuance must be made by written motion and accompanied by an affidavit. Here, there was no written motion, no affidavit and opposing counsel did not consent to the request for a continuance. Lack of a properly filed written continuance accompanied by an affidavit stating the reasons for the request are grounds to deny a continuance. Mills v. Mills, 939 S.W.2d 72, 74 (Mo.App. W.D.1997). We cannot say the trial court abused its discretion in denying the request that did not comply with Rule 65.03. Point denied. | Lack of a properly filed written continuance accompanied by an affidavit stating the reasons for the request is grounds to deny a continuance. V.A.M.R. 65.03. | Is a lack of a properly filed written continuance accompanied by an affidavit stating the reasons for the request grounds to deny a continuance? | 030591.docx | LEGALEASE-00138182-LEGALEASE-00138183 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 6780 | Sleezer v. Lang, 170 Neb. 239 | 307A+725 | We have said this statute should be liberally construed in order to prevent a failure of justice. See, Louis Hoffman Co. v. Western Smelting & Refining Co., 150 Neb. 524, 34 N.W.2d 889; Robinson Outdoor Advertising Co. v. Wendelin Baking Co., 145 Neb. 112, 15 N.W.2d 388. As stated in Dunn v. Bozarth, 59 Neb. 244, 80 N.W. 811: "It is within the discretion of the court to permit a defendant, during the course of the trial, to amend his answer so as to present a new defense. In such case the plaintiff, if not prepared to meet the new issue, may have a continuance of the cause, upon such terms as the court may deem just." See, also, Miller Rubber Products Co. v. Anderson, 123 Neb. 247, 242 N.W. 449; Robinson Outdoor Advertising Co. v. Wendelin Baking Co., supra. | It is within discretion of court to permit defendant, during course of trial, to amend answer so as to present new defense; in such a case the plaintiff, if not prepared to meet new issue, may have continuance, upon such terms as court may deem just. R.R.S.1943, S 25-852. | "Is it within the discretion of a court to permit a defendant, during course of trial, to amend an answer so as to present a new defense?" | 030865.docx | LEGALEASE-00138734-LEGALEASE-00138735 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 6781 | Friedman v. Heart Inst. of Port St. Lucie, 863 So. 2d 189 | 307A+36.1 | In exercising its discretion to prevent injury through abuse of the action or the discovery process within the action, trial courts are guided by the principles of relevancy and practicality. Clearly, "the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002); see also Mogul v. Mogul, 730 So.2d 1287, 1290 (Fla. 5th DCA 1999). As noted by this Court, "As appropriate, the trial court may conduct an in-camera inspection of the subject records. In that context, the trial court may balance (on an ad hoc basis) "the right to privacy and the right to know." " Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936, 945-46 (Fla.2002); (quoting Montana Human Rights Div. v. City of Billings, 199 Mont. 434, 649 P.2d 1283, 1290 (1982)); see also Pyszka, Kessler, Massey, Weldon, Catri, Holton &Douberley, P.A. v. Mullin, 602 So.2d 955, 955 (Fla. 3d DCA 1991). Additionally, Florida's trial courts are endowed with the authority to require the proponent of a claim to post bond. See, e.g., Med. Facilities Dev., Inc. v. Little Arch Creek Props., Inc., 675 So.2d 915, 918 (Fla.1996). | The disclosure of personal financial information during discovery may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant. | "Can the disclosure of personal financial information during discovery cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant?" | Pretrial Procedure - Memo # 4435 - C - ES.docx | ROSS-003316361-ROSS-003316362 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6782 | In re Revocation of Access of Block No. 1901, Lot No. 1, Borough of Paramus, Bergen Cty. Parkway 17 Assocs., 324 N.J. Super. 322 | 307A+36.1 | Discovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal. Generally, the action or the proposal must be judged on its own merits and its validity determined by the plan or the action itself, regardless of what may have been in the mind of one or more officials who played some role in its adoption. We can see no reason why that general rule should not apply here, nor do we see any reason to permit the interrogatories or depositions sought by Parkway. The Alexander's agreement exists and can be read and evaluated for what it provides. It did not mandate the DOT action in terminating Parkway's prior access rights. At most, it may have had the incidental effect of creating a new possible alternate access route"Access Drives D and F, which could then make it possible for the State to do what otherwise might not have been practicable: require the elimination of two access points which it considered undesirable and nonconforming with applicable code provisions. If that was the effect of the Alexander's agreement, we see no impropriety or illegality therein. As noted, the DOT's action must be weighed and resolved on its merits and, on those merits and on that basis, we see no reason to overturn the decision of the Commissioner. | Discovery does not normally include the right to explore the mental processes of government officials respecting why they did or did not take a particular course of action or adopt a particular proposal. | Does discovery include the right to explore the mental processes of government officials? | Pretrial Procedure - Memo # 4834 - C - RF.docx | ROSS-003291218-ROSS-003291219 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6783 | Riordan v. Riordan, 252 S.W.2d 901 | 307A+713 | Appellants insist that the trial judge abused his discretion in refusing to grant a continuance. It appears that the case first was assigned for trial by agreement of the parties for September 18, 1951. On the 18th, Mr. Leland H. Logan filed his affidavit that appellants' attorney, Mr. Rodes K. Myers, was unable to be present at that time due to his participation in the trial of another case in another court. On appellants' motion the case was passed to September 20. On the 20th, Mr. Logan filed his affidavit that Mr. Myers was still engaged in the trial of the other case and moved the court to continue this case until the next term of court. The motion was overruled and the court proceeded with the trial. Appellants were represented during the trial by Mr. Logan and Mr. Aaron F. Overfelt, both of whom we understand are associates of Mr. Myers in the practice of law. We have written many times that a trial court has broad discretion in granting or overruling a motion for a continuance, and that this court will not interfere in the exercise of that discretion unless it is clearly abused. Farris v. Evans, 289 Ky. 418, 158 S.W.2d 941. Although the trial court would have been justified in granting the continuance, we are unable to say that under the circumstances here shown there was such an abuse of discretion as to authorize reversal of the judgment. | A trial court has broad discretion in granting or overruling a motion for a continuance, and the appellate court will not interfere unless that discretion is clearly abused. | "Does a trial court have broad discretion in granting or overruling a motion for a continuance, and will not interfere in the exercise of that discretion unless it is clearly abused?" | 031663.docx | LEGALEASE-00138401-LEGALEASE-00138402 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6784 | Goldston Bros. v. Newkirk, 233 N.C. 428 | 307A+725 | The intimation in the judgment below that further proceedings in this case be held in abeyance pending the trial of the Babcock case has practical pertinency. But it is assumed that the intimation was intended only as a suggestion. It may not be interpreted as requiring a postponement of further proceedings in the instant case. 17 C.J.S., Continuances, ss 10 and 24, pp. 196 and 205 | Intimation in a judgment that further proceedings be held in abeyance pending the trial of another case could not be interpreted as requiring a postponement of further proceedings in the instant case. | "Can an intimation in a judgment that further proceedings be held in abeyance pending the trial of another case, be interpreted as requiring a postponement of further proceedings?" | Pretrial Procedure - Memo # 4875 - C - NS.docx | ROSS-003318135-ROSS-003318136 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 6785 | Edgefield Mfg. Co. v. Maryland Cas. Co., 78 S.C. 73 | 307A+74 | Testimony de bene esse taken in typewriting is good without a certificate of notary that it was written by the witness or read over to him. The court cannot presume the testimony to have been taken by a stenographer and afterwards typewritten, and therefore requiring a certificate that it had been read over to the witness. In taking testimony de bene esse typewriting is as any other writing. Stoddard v. Hill, 38 S. C. 390, 17 S. E. 138. Typewriting is common, and there is no presumption against its use by the officer or witness in reducing the testimony as required by the statute. Rule 12 of the circuit court (33 S. E. viii) lays down certain requirements as to the size and minimum weight of paper to be used for typewriting "original pleadings and other proceedings," and also as to initialing the pages. | Testimony de bene esse taken in typewriting is good without a certificate of notary that it was written by the witness or read over to him. | Is testimony de bene esse taken in typewriting good without a certificate of notary that it was written by the witness or read over to him? | 031768.docx | LEGALEASE-00138452-LEGALEASE-00138453 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 6786 | Bank of New Orleans & Tr. Co. v. Lambert, 373 So. 2d 550 | 307A+726 | The defendants filed an answer to the petition, admitting some of the allegations and denying others. Several months later the defendants filed a reconventional demand which alleged that BNO, Hibernia and Maryland shared a community of interest and in fact had a common plan and partnership relationship amongst themselves in connection with the Lambert obligations and interests. The demand then set out a number of allegations of wrongful conduct on the part of Maryland Casualty Company, which, in essence, accuses Maryland and a number of its agents with deliberately setting out to destroy the sources of income available to the Lambert interests on its contracts, while at the same time taking over the operation of those contracts, and by mismanagement and/or fraudulent schemes destroying the Lambert businesses. Maryland is also charged with improperly causing the banks to demand the balance due on the notes held by them, and the banks are accused of aiding Maryland and improperly making demand on the promissory notes. The demand concluded with prayer for trial by jury. To this reconventional demand Maryland had filed a number of exceptions as well as a motion to separate the trials of the main demand and the reconventional demand. The banks originally filed only a motion for severance, and it was not until a long time later that they filed exceptions to the reconventional demand. Maryland's exceptions and the motions for separate trial came up on November 4, 1976. Appellant does not argue before us that the exception of Maryland should not have been sustained, simply that his attorney was not present at trial and the judge should not have maintained the exception without his presence. Appellants' claim is that a letter had been written to the trial judge advising him that counsel was unable to attend. The letter is not contained in the record, and even if it were, nothing has been presented to us to show that the trial judge should have, on the | In view of fact that trial judge had granted a number of delays previously, trial court did not abuse its discretion in proceeding with the trial to the extent of sustaining an exception to a reconventional demand in the absence of defense attorney. | Will the court abuse its discretion in proceeding with the trial to the extent of sustaining an exception to a reconventional demand in the absence of defense attorney? | 031774.docx | LEGALEASE-00138466-LEGALEASE-00138467 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 6787 | Ex parte Green, 103 S.W. 503 | 307A+74 | In order to authorize the reading of depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. Notice to take depositions must state the place, the day, and between what hours of the day depositions will be taken, and that, if not completed on that day, the taking will continue at the same place and between the same hours from day to day until completed; and, to authorize the reading of the depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. If for any reason the taking is adjourned to the following day, the cause for the adjournment should be noted by the officer talking the deposition. | In order to authorize the reading of depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. | "In order to authorize the reading of depositions, must it appear from the return of the officer taking them that they were taken in pursuance of the notice?" | Pretrial Procedure - Memo # 4944 - C - TM.docx | ROSS-003291787-ROSS-003291788 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6788 | Fields Bros. Gen. Contractors v. Ruecksties, 288 Ga. App. 674 | 307A+747.1 | "A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues." In the consolidated pretrial order in this case, the Rueckstieses claimed that "the Defendants breached the contract" and specifically alleged that "[t]he residence has numerous serious structural deficiencies and other construction-related deficiencies." Construing the pretrial order liberally, we find that the pretrial order fairly raised the issue of negligent construction and the extent of Timmy Fields's involvement. As a general rule, there is implied in every contract for work or services a duty to perform it skilfully, carefully, diligently, and in a workmanlike manner. The law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession. | A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues. | Should a pretrial order be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues? | Pretrial Procedure - Memo # 5060 - C - KBM.docx | ROSS-003304728-ROSS-003304729 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 6789 | State ex rel. Ford v. Adolf, 724 S.W.2d 612 | 307A+36.1 | Respondent confuses the concepts of "discovery" and "admissibility of evidence." As an initial matter, a distinction must be made between evidence admissible for the purpose of showing defendants' financial condition and discoverable information pertaining to defendants' wealth. The broad test for discovery is whether or not the information sought could reasonably lead to the discovery of admissible evidence. Rule 56.01(b). Even if only "net worth" is admissible, relator may later seek information pertaining to defendants' liabilities. Evidence of defendants' assets, even those jointly held, can lead to a determination of net worth and are discoverable. | Even if only "net worth" of defendants from whom punitive damages are sought is admissible, evidence of defendants' assets, even those jointly held, is discoverable, in that information pertaining to defendants' liabilities may later be sought, and thus information pertaining to assets can lead to determination of net worth. V.A.M.R. 56.01(b). | "Is evidence of defendants' assets, even those jointly held, discoverable?" | Pretrial Procedure - Memo # 5103 - C - ES.docx | ROSS-003304366-ROSS-003304367 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 6790 | Empire Dist. Elec. Co. v. Johnston, 241 Mo. App. 759 | 307A+74 | That "a party should not be permitted to lie by and lull his adversary into a sense of security by failure to file any motion to suppress his depositions, thus induce him to announced himself ready for trial, and then count on springing the question of some informality on him, for the first time, when he offers to read those depositions in evidence", has long been recognized. It is equally well settled that, by proceeding to trial without any attack upon or complaint about a deposition, irregularities in connection with the taking thereof are waived. There being no showing or charge that the attorney representing plaintiff at the taking of defendant Johnston's deposition was restricted in the making of objections or in cross-examination of the witness, or that the notary was guilty of oppressive or fraudulent conduct, or that the deposition, as returned, was inaccurate or incomplete in any respect, and there having been no attack upon the deposition prior to trial, we cannot agree with the contention of plaintiff's counsel that their objection, after trial had begun, was timely. Such objection (if it was to have been made) should have been presented prior to trial, when defendants' counsel either might have arranged for their clients to have appeared personally or might have asked that the cause be continued in order that the deposition might be retaken. Abbott v. Marion Min. Co., 112 Mo.App. 550, 554, 87 S.W. 110, 111(1). The trial court did not err in admitting the deposition of defendant Johnston. | By proceeding to trial without any attack upon or complaint about a deposition, irregularities in connection with taking thereof are waived. | "By proceeding to trial without any attack upon or complaint about a deposition, are irregularities in connection with taking thereof waived?" | 032070.docx | LEGALEASE-00138479-LEGALEASE-00138481 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 6791 | Hodge v. Borden, 91 Idaho 125 | 307A+74 | I.R.C.P. 30(e) clearly contemplates that both the original and changed testimony will appear in the deposition, together with the reasons given by the witnesses for making the changes. While the referred to changes appear in the deposition, the reasons for the changes are not shown. | Rule relating to reading of deposition and the making of changes therein by witness contemplates that both the original and changed testimony will appear in deposition together with the reason given by witness for making the changes. Rules of Civil Procedure, rule 30(e). | Does the rule relating to a reading of deposition and the making of changes therein by witness contemplate that both the original and changed testimony will appear in a deposition together? | 032078.docx | LEGALEASE-00138497-LEGALEASE-00138498 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 6792 | Gov't of Fed'n of Saint Christopher & Nevis v. Detroit Diesel Corp., 368 F. Supp. 2d 155 | 308+99 | The doctrine of apparent authority applies to cases where: (1) the plaintiff trusted in "good faith" in the conduct before him and (2) said trust could lead a reasonable person to believe that in fact there was a principal-agent relationship.Berrios, 116 D.P.R. at 97 n. 2; Vega v. Med. Serv. Adm., 117 D.P.R. 138, 17 Offic. Trans. 163, 173 (1986). However, both Berrios and Vega dealt with the existing confusion facing the malpractice plaintiffs with respect to Centro M"dico's centralized facilities and the danger that those plaintiffs' claims could be frustrated by said confusion. Thus, the Puerto Rico Supreme Court concluded that the government, specifically, the Administration of Medical Services of Puerto Rico, could be held responsible under the doctrine of apparent authority even if the medical center(s) in question were not operated by the government in actuality. | Under Puerto Rico law, doctrine of apparent authority applies to cases where: (1) plaintiff trusted in good faith in conduct before him, and (2) said trust could lead reasonable person to believe that in fact there was principal-agent relationship. | How is doctrine of apparent authority applied in principal and agent relationship? | 041343.docx | LEGALEASE-00138790-LEGALEASE-00138791 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 6793 | Tillotson v. Abbott, 205 Kan. 706 | 307A+742.1 | The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepart their testimony on the issues to be tried. (Brown v. Hardin, 197 Kan. 517, 519, 419 P.2d 912; Evangelist v. Bellern Research Corporation, 199 Kan. 638, 641, 433 P.2d 380; Trimble, Administrator v. Coleman Co., Inc., 200 Kan. 350, 358, 437 P.2d 219.) | Pretrial conference provided for by statute is designed to acquaint each party in advance of trial with factual contentions of opposite parties as to matters in dispute, thus reducing opportunity for maneuver and surprise during trial, and enabling all parties to better prepare testimony on issues to be tried. K.S.A. 60-216. | "What is a pretrial conference provided for by a statute, designed to do?" | Pretrial Procedure - Memo # 1392 - C - DA.docx | ROSS-003302044-ROSS-003302045 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6794 | Whisman v. Fawcett, 470 N.E.2d 73 | 307A+749.1 | See, Hundt v. LaCrosse Grain Co., Inc., (1981) Ind.App., 425 N.E.2d 687, rev'd on other grounds, (1983) Ind., 446 N.E.2d 327; Galloway, 426 N.E.2d at 1327. Likewise, we must keep in mind that a pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pre-trial order in the spirit of common law pleading." Century Refining Co. v. Hall, 316 F.2d 15, 20 (10th Cir.1963). Furthermore, the reasons for avoiding overly technical application of pretrial orders are amplified when, as in this case, the pretrial order is not definitive, specific, complete, or detailed. See, e.g., Balon v. Hotel & Restaurant Supplies, Inc., (1967) 6 Ariz.App. 481, 433 P.2d 661, vacated on other grounds, (1968) 103 Ariz. 474, 445 P.2d 833; 62 Am.Jur.2d Pretrial Conference " 35 at 668 (1972). | Reasons for avoiding overly technical application of pretrial orders are amplified when pretrial order is not definitive, specific, complete, or detailed. | "Are reasons for avoiding overly technical application of pretrial orders amplified when a pretrial order is not definitive, specific, complete, or detailed?" | 027295.docx | LEGALEASE-00139260-LEGALEASE-00139261 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6795 | In re Marriage of Borowczyk, 78 Ill. App. 3d 425 | 307A+485 | We believe that the trial court properly denied petitioner's request for fees and costs for respondent's failure to admit the foregoing facts. It appears that the qualified answers given by respondent were made in good faith. Where facts requested to be admitted are properly admitted or denied with a qualified answer, costs and fees will not be assessed against the party who refused to admit. (First Trust and Savings Bank of Kankakee v. Town of Ganeer (1938), 296 Ill.App. 541, 16 N.E.2d 806.) In addition to the need of qualifying the answers to the requests, respondent's counsel at the hearing vigorously cross-examined the medical witnesses as to their findings. In view of the nature of the charge against respondent and in view of the result obtained in the trial court, we cannot say that respondent acted in bad faith in refusing to admit the facts sought. | Where facts requested to be admitted are properly admitted or denied with a qualified answer, costs and fees will not be assessed against party who refused to admit. Supreme Court Rules, rule 219(b), S.H.A. ch. 110A, S 219(b). | "Will costs and fees be assessed against party who refused to admit, if facts requested to be admitted are properly admitted or denied with a qualified answer?" | 030752.docx | LEGALEASE-00139101-LEGALEASE-00139102 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6796 | Burns v. Hayes, 193 Misc. 501 | 307A+91 | The defendant, Katherine N. Hayes, whose examination is sought, for many years was an employee of Joseph E. Burns, the predecessor of the plaintiffs, in the conduct of the business involved in this action. Mr. Burns is now deceased. Evidence as to the dealings between Mr. Burns and the defendant, Katherine N. Hayes, is certainly material and no person other than Mrs. Hayes is in better position to testify as to these transactions. Furthermore, as an employee of Mr. Burns in his lifetime and later as an employee and manager of the plaintiffs, the defendant, Katherine N. Hayes, was in a position of trust and confidence which requires that she make full disclosures of her acts. Where the relationship of principal and agent and similar relationships exist between the parties to an action, the technical rules governing the examination of a party before trial should be relaxed. Whitman v. Keiley, 58 App.Div. 92, 95, 68 N.Y.S. 551, 552; Ashinksky v. Gumberg, 188 App.Div. 23, 176 N.Y.S. 406; Colonial Trust Co. et al v. Alexander et al., 251 App.Div. 856, 296 N.Y.S. 918. | Where relationship of principal and agent or similar relationship exists between parties to an action the technical rules governing examination of a party before trial should be relaxed. | "Where the relationship of a principal and agent to an action, should the technical rules governing examination of a party before trial be relaxed?" | 030944.docx | LEGALEASE-00139134-LEGALEASE-00139136 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6797 | Potts v. Howser, 267 N.C. 484 | 307A+91 | G.S. s 1"568.3 provides that "an examination may be had before trial (2) For the purpose of obtaining evidence to be used at the trial, or at any hearing incident to the trial." An examination for the purpose of obtaining evidence to be used at the trial is a matter of right after both the examining party and the person being examined have filed their pleadings. G.S. s 1"568.9(c); Aldridge v. Hasty, 240 N.C. 353, 82 S.E.2d 331. "After both the examining party and the party to be examined have filed their complaint, petition, or answer, an examination is declared to be a matter of right." 2 McIntosh, N.C. Practice and Procedure, 2d ed., s 2285. It is true that defendant's answer has been stricken, and that plaintiff's cause of action and right to recover at least nominal damages have been established. However, defendant is entitled to a trial on inquiry before a jury on the issue of damages. G.S. s 1"212; Wilson v. Chandler, 238 N.C. 401, 78 S.E.2d 155. In the trial of the question of damages, the defaulting defendant has the right to be heard and participate. He may, if he can, reduce the amount of damages to nominal damages. 30A Am.Jur., Judgments, s 219. | An examination for purpose of obtaining evidence to be used at trial is a matter of right after both examining party and person being examined have filed their pleadings. G.S. S 1-568.9(c). | Is an examination for the purpose of obtaining evidence to be used at trial a matter of right after both examining a party and a person being examined have filed their pleadings? | Pretrial Procedure - Memo # 4443 - C - SKG.docx | ROSS-003289172-ROSS-003289173 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6798 | Todd v. Bear Valley Vill. Apartments, 980 P.2d 973 | 307A+725 | The basic purpose of our rules of civil procedure is to provide a "just, speedy, and inexpensive determination" of civil cases. C.R.C.P. 1(a). The 1995 revisions emphasize active trial court management of civil cases in order to reduce abuses of the system such as dilatory discovery tactics and inefficient trial preparation. The determination of whether to grant a continuance based on discovery issues is left to the sound discretion of the trial court in applying the good cause standard of Rule 121, section 1"11. See section III, supra. On one hand, the trial court must strive to afford all parties their day in court and an opportunity to present all relevant evidence at trial. See J.P., 873 P.2d at 751. On the other hand, the trial court must be careful not to reward a party who fails to make timely disclosures by granting a continuance, since this practice invites abuse. See Sullivan, 175 F.R.D. at 508. While not required, we note that the better practice is for the trial court to articulate the reasons underlying its conclusion that good cause for a continuance was either demonstrated or not. | While not required, better practice is for trial court to articulate the reasons underlying its conclusion that good cause for a continuance was either demonstrated or not. Rules Civ.Proc., Rule 121. | Is a court required to articulate the reasons underlying its conclusion that good cause for a continuance was demonstrated or not? | 031572.docx | LEGALEASE-00139212-LEGALEASE-00139213 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6799 | In re Briggs' Estate, 180 A.D. 843 | 307A+91 | Such an order cannot be sustained, unless made in pursuance of some statutory authority. It amounts to a general and unlimited examination of a party before trial, even before issue is joined. The Supreme Court, with general jurisdiction, has no inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists.Heishon v. Knickerbocker Life Ins. Co., 77 N. Y. 278. The Surrogate's Court is one of limited or inferior jurisdiction, and derives its every power from some express provision or necessary implication of statute. Matter of Hawley, 104 N. Y. 250, 10 N. E. 352. | The Supreme Court has no inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists. | "Does the Supreme Court have the inherent power to compel a party to submit to examination before trial, and can only do so where statutory authority exists?" | Pretrial Procedure - Memo # 5013 - C - SB.docx | ROSS-003287833-ROSS-003287834 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6800 | Knight v. Waggoner, 359 S.C. 492 | 307A+501 | Ordinarily, a plaintiff is entitled to a voluntary dismissal without prejudice as a matter of right, unless there is a showing of legal prejudice to the defendant. See Moore v. Berkeley County, 290 S.C. 43, 44, 348 S.E.2d 174, 175 (1986); Gulledge v. Young, 242 S.C. 287, 291, 130 S.E.2d 695, 697 (1963).If no legal prejudice is shown, the trial judge has no discretion with respect to granting a dismissal without prejudice; but if prejudice to the other party is shown, the matter becomes one of discretion for the trial judge. Id.; Ralston Purina Co. v. O'Dell, 248 S.C. 37, 41-42, 148 S.E.2d 736, 737 (1966). The same rules regarding voluntary dismissal of a plaintiff's claim apply to voluntary dismissal of a defendant's counterclaim. See Rule 41(c), SCRCP. | Ordinarily, a plaintiff is entitled to a voluntary dismissal without prejudice as a matter of right, unless there is a showing of legal prejudice to the defendant; if no legal prejudice is shown, the trial judge has no discretion with respect to granting a dismissal without prejudice, but if prejudice to the other party is shown, the matter becomes one of discretion for the trial judge. | Is a plaintiff entitled to a voluntary dismissal without prejudice as a matter of right without a showing of legal prejudice to the defendant? | 032199.docx | LEGALEASE-00139023-LEGALEASE-00139024 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 6801 | Knightstown Banner v. Town of Knightstown, 882 N.E.2d 270 | 307A+501 | This rule permits a claimant to voluntarily dismiss a claim after a motion for summary judgment has been filed, but only pursuant to court order. The test for determining whether a voluntary dismissal is proper is whether the opposing party would be substantially prejudiced by dismissal. Principal Life Ins. Co. v. Needler, 816 N.E.2d 499 (Ind.Ct.App.2004).Dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. Id. Concerning the assessment of legal prejudice, we have observed, [T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss.Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part. | Voluntary dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. Trial Procedure Rule 41(A)(2). | Should dismissals be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit? | 032638.docx | LEGALEASE-00139244-LEGALEASE-00139245 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6802 | Hartley v. Hartley, 435 A.2d 1052 | 307A+501 | Respondent suggests that the Family Court is a court of equity and can "enter such orders against any party to the action as the principles of equity appear to require," 10 Del.C. s 925(15), and argues that while the dismissal may be entirely within the letter of the law, it is inequitable to put respondent to the time, trouble and expense of extensive proceedings in Delaware and them to permit her status as a litigant to be nullified by petitioner's unilateral act. Equitable considerations, however, cannot obviate the rule.As the court suggested in McGhee, supra, Rule 41 grants a petitioner the absolute right to dismiss his action voluntarily at any time before the respondent files a responsive pleading or a motion for summary judgment. | Rule stating that an action may be dismissed by plaintiff without order of court by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment grants a petitioner the absolute right to dismiss his action voluntarily at any time before the respondent files a responsive pleading or a motion for summary judgment. 13 Del.C. S 1511; Superior Court Civil Rule 41(a)(1)(I), Del.C.Ann. | Can equitable considerations obviate a rule that the petitioner has an absolute right to dismiss his action voluntarily? | 032647.docx | LEGALEASE-00139313-LEGALEASE-00139314 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 6803 | Christian v. United States, 46 Fed. Cl. 793 | 34+5(8) | Defendant also argues that since plaintiff did not raise the new allegation in his appeal to the ABCMR, the waiver doctrine precludes him from making that claim in this court. Generally, under the waiver doctrine, issues and arguments not made before the relevant military correction board or administrative agency are deemed waived and could not be raised in a judicial tribunal. See, e.g. Laningham v. United States, 30 Fed.Cl. 296 (1994); Frecht v. United States, 25 Cl.Ct. 121 (1992); Walden v. United States, 22 Cl.Ct. 532 (1991). Plaintiff, however, points to Federal Circuit precedent holding that although a plaintiff may not generally raise issues involving agency expertise for the first time in this Court, a plaintiff may raise a constitutional claim for the first time in federal court. In Beard v. General Services Administration, 801 F.2d 1318, 1321 (Fed.Cir.1986), the Federal Circuit stated that plaintiff's failure to present certain arguments to the Merit Systems Protection Board did not preclude him from raising those contentions before the court. The court went on to state that "the principle of exhaustion of administrative remedies does not always apply to constitutional challenges to the agency's action." Id.(citing Hayes v. Dept. of the Navy, 727 F.2d 1535, 1539 (Fed.Cir.1984); Sullivan v. Dept. of the Navy, 720 F.2d 1266, 1274 n. 2 (Fed.Cir.1983)). | Generally, under the waiver doctrine, issues and arguments not made before a military correction board or administrative agency are deemed waived and may not be raised in a judicial tribunal. | Are the issues and arguments not made before the relevant Military Correction Board deemed waived? | 008529.docx | LEGALEASE-00139498-LEGALEASE-00139499 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6804 | Epstein v. Geren, 539 F. Supp. 2d 267 | 34+5(8) | "Congress has entrusted the primary duty of correcting military records with the [military] correction boards." Harris v. United States, 14 Cl.Ct. 84, 89 (1987); 10 U.S.C. " 1552. When a military member seeks to overturn the final decision of a military correction board, the court has a very limited scope of review. "[T]he function of [the court] is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F.Supp. 43, 50 (D.D.C.1998). Thus, when a military correction board relies not on clear, delineated, objective criteria, but on a broad delegation from Congress of discretion to use its inherent judgment to assess the merits of an application, the court will apply an especially deferential standard of review. See Cone v. Caldera, 223 F.3d 789, 793 (D.C.Cir.2000) (justifying deferential standard as "calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence") (citing Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)); Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C.Cir.1989). Alternatively, when a plaintiff alleges that a correction board has committed an error of law, violated procedural regulations or otherwise acted contrary to recognizable, substantive and readily recognizable justiciable standards, the court will apply the traditional APA standard of review: overturning a decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. " 706(2)(A); Wolfe v. Marsh, 835 F.2d 354, 358 (D.C.Cir.1987). | When a military member seeks to overturn the final decision of a military correction board, the court has a very limited scope of review. 10 U.S.C.A. S 1552. | Does the court have a very limited scope of review when a military member seeks to overturn the final decision of a Military Correction Board? | Armed Services - Memo 178 - JS.docx | ROSS-003302149-ROSS-003302150 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6805 | Carroll v. Bergen, 2002 WY 166 | 307A+750 | However, it is also true that adherence to such orders is critical in maintaining the integrity of judicial proceedings. 1488, Inc. v. Philsec Investment Corp., 939 F.2d 1281, 1289 (5th Cir.1991); Reaves v. Bergsrud, 127 N.M. 446, 982 P.2d 497, 502 (App.1999). The pretrial order controls the issues to be litigated, allowing the parties to rely on the pretrial order exhibit and witness lists to prepare their cases, and the trial court is vested with extensive authority to enforce its pretrial order. | A pretrial order controls the issues to be litigated, allowing the parties to rely on the pretrial order exhibit and witness lists to prepare their cases, and the trial court is vested with extensive authority to enforce its pretrial order. | Does a pretrial order control the issues to be litigated? | 027519.docx | LEGALEASE-00139406-LEGALEASE-00139407 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 6806 | Carlton v. Emhardt, 138 Ariz. 353 | 307A+749.1 | There are two reasons why the trial court did not err in holding that appellant had waived her defense of lack of personal jurisdiction. First of all, trial by ambush is a tactic no longer countenanced in Arizona courts. Rule 6(a), Uniform Rules of Practice of the Superior Court of Arizona, 17A A.R.S., requires the joint pretrial statement to contain such contested issues of law as counsel can agree are material or applicable. The joint pretrial statement takes the place of the former practice of having a pretrial conference before the trial judge who entered a pretrial order. Therefore, the law relating to the old practice of pretrial orders applies with equal force to the joint pretrial statement. The pretrial statement controls the subsequent course of the litigation otherwise modified at trial to prevent manifest injustice. Cf. Norman v. Del Elia, 111 Ariz. 480, 533 P.2d 537 (1975); Calderon v. Calderon, 9 Ariz.App. 538, 454 P.2d 586 (1969); Wright v. Demeter, 8 Ariz.App. 65, 442 P.2d 888 (1968); Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965). The stipulated pretrial statement had the effect of amending the pleading, and thus the defenses of insufficiency of service and lack of personal jurisdiction were waived. Cf. Ries v. McComb, 25 Ariz.App. 554, 545 P.2d 65 (1976). | Pretrial statement controls subsequent course of litigation otherwise modified at trial to prevent manifest injustice. 17A A.R.S. Super.Ct.Uniform Prac.Rules, Rule 6(a). | Does a pretrial statement control a subsequent course of litigation otherwise modified at trial to prevent manifest injustice? | 028007.docx | LEGALEASE-00139482-LEGALEASE-00139483 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6807 | Rowe v. Rodriguez-Schmidt, 89 So. 3d 1101 | 307A+36.1 | "Article I, section 23, of the Florida Constitution protects the financial information of persons if there is no relevant or compelling reason to compel disclosure." Borck, 906 So.2d at 1211. This is because "personal finances are among those private matters kept secret by most people." Woodward v. Berkery, 714 So.2d 1027, 1035 (Fla. 4th DCA 1998) (citing Winfield v. Div. of Pari"Mutuel Wagering, 477 So.2d 544 (Fla.1985)). The burden to prove the information is relevant or reasonably calculated to lead to the discovery of admissible evidence is on the party seeking the information. Spry v. Prof'l Emp'r Plans, 985 So.2d 1187, 1188"89 (Fla. 1st DCA 2008). | The burden to prove that personal financial information is relevant or reasonably calculated to lead to the discovery of admissible evidence, so as to overcome the protection of such information pursuant to the right of privacy under the Florida Constitution, is on the party seeking the information. West's F.S.A. Const. Art. 1, S 23. | Is the burden to prove that information relevant or reasonably calculated to lead to the discovery of admissible evidence on the party seeking the information? | Pretrial Procedure - Memo # 4551 - C - NS.docx | ROSS-003331664-ROSS-003331665 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 6808 | Calcor Space Facility v. Superior Court, 53 Cal. App. 4th 216 | 307A+24 | Although the scope of civil discovery is broad, it is not limitless. Section 2017, subdivision (a) provides matters are subject to discovery "if the matter either is itself admissible in evidence or appears reasonablycalculated to lead to the discovery of admissibleevidence." The burden rests upon the partyseeking the discovery to provide evidence from which the court may determine these conditions are met. Section 2031, subdivision (l ), which applies to document production requests served on a party, requires a partyseeking to compel such production to "set forth specific facts showing good cause justifying the discoverysought by the inspection demand...." (Emphasis added.) Section 2020, the statute at issue contains no such specific requirement. However, since both sections are part of a single statutory scheme, and since it is unlikely the Legislature intended to place greater burdens on a nonparty than on a party to the litigation, we read a similar requirement into the latter section. | Burden rests upon party seeking discovery to provide specific factual evidence from which court may determine that matter sought is either itself admissible in evidence or appears reasonably calculated to lead to discovery of admissible evidence. West's Ann.Cal.C.C.P. SS 2017(a), 2031(l ). | Is the burden to prove that information relevant or reasonably calculated to lead to the discovery of admissible evidence on the party seeking the information? | 031158.docx | LEGALEASE-00139551-LEGALEASE-00139552 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 6809 | M.M. ex rel. Meyers v. GlaxoSmithKline LLC, 2016 IL App (1st) 151909 | 307A+554 | In light of the "lenient and flexible" "arising from" and "related to" standard, plaintiffs meet the low threshold of a prima facie showing that their claims arose from defendanT GSK'S paxil trials in Illinois. As discussed above, "[o]n a motion to dismiss, plaintiff [s] need not prove [their] case, but rather must only establish a prima facie case, where all well-pleaded facts are taken as true." Senese v. Climatemp, Inc., 222 Ill.App.3d 302, 316, 164 Ill.Dec. 236, 582 N.E.2d 1180 (1991) (citing Mid"Town Petroleum, Inc. v. Dine, 72 Ill.App.3d 296, 299, 28 Ill.Dec. 261, 390 N.E.2d 428 (1979)). Plaintiffs have satisfied this burden, and now the burden switches to defendant. Russell, 2013 IL 113909, 28, 370 Ill.Dec. 12, 987 N.E.2d 778. Defendant may "overcome [the] plaintiff's prima facie case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." Russell, 2013 IL 113909, 28, 370 Ill.Dec. 12, 987 N.E.2d 778. | On a motion to dismiss for lack of personal jurisdiction, plaintiffs need not prove their case, but rather must only establish a prima facie case, where all well-pleaded facts are taken as true. | "On a motion to dismiss for lack of personal jurisdiction, need plaintiffs not prove their case?" | 032801.docx | LEGALEASE-00139687-LEGALEASE-00139688 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6810 | Bittel v. Farm Credit Servs. of Cent. Kansas, 265 Kan. 651 | 185+1.8 | A promissory note whereby a borrower promises in writing to pay an indebtedness cannot be subsequently amended to require the creditor to assume additional duties under the note. Such an amendment would change the nature of a note, particularly as notes only require the signature of the debtor to be enforceable. Therefore, an oral promise on the part of a lender to extend credit in the future may not be considered a modification of a debtor's promissory note and falls within the clear definition of "credit agreement" in K.S.A. 16"117(a). As such, K.S.A. 16"118(a) plainly requires such an agreement to be in writing and signed by both the creditor and debtor. | Oral promise on the part of a lender to extend credit in the future may not be considered a modification of a debtor's promissory note and falls within the definition of "credit agreement" in Credit Agreement Act; as such, Act requires such an agreement to be in writing and signed by both the creditor and debtor. K.S.A. 16-117(a), 16-118(a). | Can an oral promise be considered as modification of promissory note? | 010264.docx | LEGALEASE-00140175-LEGALEASE-00140176 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6811 | United States v. Canella, 63 F. Supp. 377 | 63+3 | The Section, under which the prosecution is instituted, dates back to 1853. It has undergone many changes and its present form dates to March 4, 1909, Chap. 321, Sec. 117, 35 Stats. 1109. The aim of the section is to punish officers of the United States for accepting bribes. The offense can only be committed by one, who is such an officer or who is acting for, or on behalf of, the United States in any official capacity. See my opinion in United States v. Furer, D.C. Cal. 1942, 47 F.Supp. 402. The givers of bribes are not punishable under this section, but under Section 91, 18 U.S.C.A., although it has been held that persons not officers may be guilty of conspiracy with an officer to commit the crime denounced by Section 207, 18 U.S.C.A., despite the fact that the officer alone could be guilty of the substantive offense. O'Leary v. United States, 7 Cir., 1931, 53 F.2d 956. | The offense of asking, accepting and receiving money with intent thereby to influence official action can only be committed by one who is an officer of the United States or who is acting for or on behalf of the United States in any official capacity, the givers of bribes being punishable under a different section of the Criminal Code. Cr.Code, SS 39, 117, 18 U.S.C.A. SS 201, 202. | Can the offense of bribery be committed by anyone other than one who is an officer of the United States or who is acting for or on behalf of the United States in any official capacity? | 012091.docx | LEGALEASE-00140698-LEGALEASE-00140699 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 6812 | KootenaiCty. v. Hope Lumber Co., 13 Idaho 262 | 200+150 | "Corporations or other employers of residents in any highway district, are responsible for the road poll tax assessed against their employ"s, and a notice to the employer or managing agent requiring the payment of the road poll tax of the employ", charges such employer or corporation with such road poll tax." That section makes corporations or other employers of persons subject to pay road poll tax responsible for such tax upon proper notice to them. | Under Rev.St.1887, S 901, providing that corporations or other employers of residents in any highway district are responsible for the road poll tax assessed against their employ├─s, and that a notice to the employer or managing agent requiring the payment of the road poll tax of the employ├─ charges the employer or corporation therewith, such corporations or employers may be made responsible for the road poll tax assessed against their employ├─s by proper notice given, provided that when the notice is given or thereafter, the employer becomes indebted to the employ├─. | Are corporations or other employers of residents responsible for the road poll tax assessed against their employees? | 018667.docx | LEGALEASE-00139729-LEGALEASE-00139730 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 6813 | Alabama Pension Comm'n v. Morris, 242 Ala. 110 | 296+2 | Said Act 126, while its purpose was to qualify the restrictions against remarriage as precluding the right to claim a pension if such remarriage was to a Confederate soldier or sailor entitled to a pension, it clearly contemplated that the right to apply for pension was as a widow of the last husband. Petitioner was not entitled to claim as the widow of Moore, inasmuch as the marriage to Moore was dissolved by divorce before his death and she did not become his widow at his death. Code of 1940, Tit. 60, " 7. | The statute providing that of a Confederate soldier or sailor who has again become a widow is entitled to a pension, provided her last husband was a Confederate soldier or sailor entitled to pension though its purpose was to qualify restrictions against remarriage as precluding right to claim pension if remarriage was to a Confederate soldier or sailor entitled to pension, contemplates that the right to apply for pension is as the widow of the last husband. Code 1940, Tit. 60, S 8. | Is the divorced wife of a confederate soldier entitled to pension as a husband's widow after his death? | 022805.docx | LEGALEASE-00140580-LEGALEASE-00140581 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 6814 | Overholser v. Glynn, 267 Cal. App. 2d 800 | 307A+749.1 | Appellant further contends that the findings are inaccurate in certain respects, are not supported by the evidence, and do not in turn support the conclusions of law and the judgment. We have reviewed the pretrial conference order, the evidence adduced at the trial, and the findings of fact and conclusions of law. We find therein no substantial discrepancies. "In order to justify the reversal of a judgment because of defective findings it must affirmatively appear not only that substantial injury has been caused and that substantial rights have been affected but also that a different result would have been probable if the defect had not occurred." (Culjak v. Better Built Homes, Inc., 58 Cal.App.2d 720, 725, 137 P.2d 492, 496; see also Pacific Finance Corp. v. Crane, 131 Cal.App.2d 399, 280 P.2d 502; Jaffa v. Guttman, 175 Cal.App.2d 790, 346 P.2d 876.) Obviously, there is no basis for reversal on these grounds. It was the duty of the litigation and, where inconsistent, issues in accordance with the pretrial conference order, which controls the conduct of the litigation and, where inconsistent, supersedes the pleadings. It was not necessary for Overholser to amend his complaint to allege Glynn's $1,000 promissory note separately since the pretrial conference order defined the legal and factual framework within which the law suit was properly decided. (Rule 216, Rules of the Superior Court; Perry v. Thrifty Drug Co., 186 Cal.App.2d 410, 9 Cal.Rptr. 50.) | It is duty of trial court to determine each of issues in accordance with pretrial conference order, which controls conduct of litigation and where inconsistent, supersedes the pleadings. Cal.Rules of Court, rule 216. | Is it the duty of a trial court to determine issues in accordance with pretrial conference order which controls conduct of the litigation? | Pretrial Procedure - Memo # 2411 - C - ES.docx | ROSS-003291202-ROSS-003291203 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6815 | Feykert v. Hardy, 213 Cal. App. 2d 67 | 307A+749.1 | It is settled that, when filed, a pretrial conference order, unless modified at or before trial, supersedes the issues raised by the pleadings and controls the subsequent course of the case. (Rule 216, California Rules of Court, formerly Rule 8.8, Rules for the Superior Courts; Baird v. Hodson (1958), 161 Cal.App.2d 687, 690, 327 P.2d 215; Dell "Orto v. Dell "Orto (1959), 166 Cal.App.2d 825, 829"831, 334 P.2d 97; County of Kings v. Scott (1961), 190 Cal.App.2d 218, 225, 11 Cal.Rptr. 893.) The pretrial order limits the issues to be tried (City of Los Angeles v. County of Mono (1959), 51 Cal.2d 843, 847, 337 P.2d 465) and those issues, neither raised at the pretrial conference nor designated in dispute in the pretrial conference order, are no longer issues in the case. (Dell "Orto v. Dell Orto, supra; County of Kings v. Scott, supra.) As this court said in Fitzsimmons v. Jones (1960), 179 Cal.App.2d 5, 8, 3 Cal.Rptr. 373, "[t]he purpose of the pre-trial procedure is to place the case in focus so that the defined and precise issues may be resolved as quickly as possible." Until presented with a request for its modification, the trial judge has a right to rely on the posture of the case defined by the pretrial conference order. (Baird v. Hodson, supra; Spence v. State of California (1961), 198 Cal.App.2d 332, 337"338, 18 Cal.Rptr. 302.) | Until presented with request for its modification, trial judge has right to rely on posture of case defined by pretrial conference order. | Does a trial judge and parties have a right to rely upon a posture of a case as defined by a pretrial order until a request for modification is made? | Pretrial Procedure - Memo # 2416 - C - SHS.docx | ROSS-003302771-ROSS-003302772 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6816 | Perel v. Brannan, 267 Va. 691 | 307A+486 | Rule 4:11(b) of the Rules of the Supreme Court of Virginia states that "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." (emphasis added). The permissive word "may" makes the court's decision on the issue discretionary. We, therefore, examine the trial court's decision not to grant permission to amend the response under an abuse of discretion standard. See Shaheen v. County of Mathews, 265 Va. 462, 475, 579 S.E.2d 162, 170 (2003). | The permissive word "may" in rule governing requests for admissions, which states that the court "may permit withdrawal or amendment" of an admission if the merits of the action will be subserved and there is no prejudice, makes the court's decision on the issue discretionary. Sup.Ct.Rules, Rule 4:11(b). | Is the decision of whether to permit withdrawal of an admission a discretionary one? | Pretrial Procedure - Memo # 3242 - C - KS.docx | ROSS-003302574-ROSS-003302575 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6817 | Jackson Hill Coal & Coke Co. v. Bales, 183 Ind. 276 | 307A+720 | In the motion for a new trial appellant insists that the court erred in permitting appellees to amend the complaint during the progress of the trial, and continuing the trial before the same jury without reswearing them. The amendment was to the effect that the defendant, appellant, mined a portion of the coal as lessee, while the original complaint alleged that appellant mined the same as owner. Each party may be permitted to amend his pleadings before or during the trial by permission of the court, with the right to the opposite party to a continuance if the amendment requires additional proof, upon a showing to that effect made under oath. Burns 1914, "" 400, 401, 403; The Toledo, etc., R. R. Co. v. Stephenson, 131 Ind. 203-205, 30 N. E. 1082. | Each party may amend pleadings before or during trial by leave of court, with right to opposite party to continuance if amendment requires additional proof. | Should each party amend pleadings before or during trial by leave of court with the right to opposite party to continuance if amendment requires additional proof? | Pretrial Procedure - Memo # 4670 - C - SN.docx | ROSS-003289399-ROSS-003289400 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6818 | Baldwin Union Free Sch. Dist. v. County of Nassau, 9 N.E.3d 351 | 268+73 | However, beneath its surface-level appeal, the County's interpretation of article IX does not withstand close scrutiny. Tellingly, when the legislature defined the generic restrictions on conflicting local legislation using the term "general laws," it removed the qualifier "general" from the comparable specific prohibition against local tax laws that are not consistent with state "laws" (compare N.Y. Const., art. IX, " 2[c] with N.Y. Const., art. IX, " 2[c][ii][8] ). There is no reason to suppose, as the County apparently does, that the legislature casually excised the modifier "general" from the prohibition against local tax laws which are not consistent with state "laws," and then somehow assumed that the word "general" would be read back into that restriction based on prior references to "general" laws in other related constitutional provisions. Rather, the legislature must have consciously omitted the term "general" from the prohibition against local tax laws that are not consistent with "laws enacted by the legislature," thereby revealing an intent to broadly ban any local tax law that conflicts with a state law, whether general or special (see Matter of Albano v. Kirby, 36 N.Y.2d 526, 530, 369 N.Y.S.2d 655, 330 N.E.2d 615 [1975] ["When different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended"] ). Moreover, given the overarching constitutional principle that the power of taxation lies with the State, any ambiguity in the constitutional restrictions on local legislation should be construed in favor of limiting local supersession of state tax laws | Given the overarching constitutional principle that the power of taxation lies with the state, any ambiguity in the constitutional restrictions on local legislation should be construed in favor of limiting local supersession of state tax laws. | How does ambiguity in the constitutional restrictions on local legislation be construed? | 032314.docx | LEGALEASE-00139999-LEGALEASE-00140000 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6819 | Turner v. Hardin, 80 Iowa 691 | 307A+74 | The deposition of James S. Lewis, taken upon interrogatories, was filed, and notice thereof given, on the 14th day of February, 1889. The term of court at which the cause was tried commenced on the 4th day of March, 1889, and on the 22d day of that month defendants moved to suppress the deposition, on the ground that the certificate of the notary who took the deposition did not show that either of the parties, their agents or attorneys, were present at the taking of the deposition. The motion was overruled. The certificate does not state whether any one was present, excepting the witness and the officer, during the examination. Section 3738 of the Code provides that, "where a deposition is taken upon interrogatories, neither party, nor his agent or attorney, shall be present at the examination of a witness unless both parties are present or represented by an agent or attorney, and the certificate shall state such fact if party or agent is present." The statute does not require the certificate to show the fact when neither party nor agent is present; and where the certificate is silent as to the fact, and there is no showing to the contrary, it will be presumed that the requirements of the law have been observed. In the case of Sheriff v. Hull, 37 Iowa, 175, the evidence in regard to the depositions showed affirmatively that one of the parties was present while they were being taken, and that the other was not. The ruling of the court in denying the motion was right on the merits, and was right for the further reason that the motion was filed too late. See Code, " 3751, as amended by chapter 26, Acts 17th Gen. Assem. | Under Code 1873, S 3738, which provides that on taking a deposition on interrogatories neither party shall be present at the examination unless both are present, and that the certificate of the officer taking the deposition "shall state such fact if party or agent is present," it will be presumed that neither party was present where the certificate is silent and there is no showing to the contrary; and a motion to suppress a deposition because the certificate does not show that either of the parties was present is properly overruled. | "When depositions are taken on commission, with interrogatories attached, can party attend in person or by attorney, unless the adverse party is present or is represented?" | 032322.docx | LEGALEASE-00140098-LEGALEASE-00140099 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 6820 | S. Pac. R. Co. v. Royal, 23 S.W. 316 | 307A+74 | There is but one assignment of error in this else, and that as to the action of the trial court in admitting in evidence the depositions of the appellee, which were taken before a notary public in Virginia. Neither the caption nor the certificate of the notary disclose in what case the depositions were taken. The caption is as follows: "State of Virginia, county of Nottoway. I, Joseph E. Leath, a notary public in and for the county of Nottoway, and state of Virginia, in obedience to the annexed commission, caused the witness Sam'l H. Royal to appear before me, and the said witness being by me first duly sworn," etc. In the certificate of the officer there is no reference whatever to the case in which the depositions were taken. The commission is not in the record, and, even if it were, it has been held that the reference to the "annexed commission" would not be sufficient to identify the case in which the depositions were taken, (Slaughter v. Rivenbark, 35 Tex. 68,) and we do not feel disposed to relax the rule on this subject. | Where neither the caption nor certificate of a deposition contains the title of the cause, a reference in the caption to the "annexed commission" is not sufficient to identify the case in which the deposition was taken. | "Where neither the caption nor certificate of a deposition contains the title of the cause, is a reference in the caption to the ""annexed commission"" sufficient to identify the case in which the deposition was taken?" | 032439.docx | LEGALEASE-00140464-LEGALEASE-00140465 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6821 | N. Pole Corp. v. Vill. of E. Dundee, 263 Ill. App. 3d 327 | 371+2060 | It has long been settled in this State that a tax exacts contributions in return for the general welfare, whereas a special assessment is a charge levied against specific property in return for a particular benefit to that property. (People ex rel. Fisher v. Baltimore & Ohio R.R. Co. (1945), 390 Ill. 389, 391"92, 61 N.E.2d 382; DeClercq v. Barber Asphalt Paving Co. (1897), 167 Ill. 215, 218, 47 N.E. 367; Trustees of the Illinois & Michigan Canal v. City of Chicago (1851), 12 Ill. 403, 406"07.) This distinction is preserved in the language of the relevant portion of the Municipal Code, which speaks of a "specified improvement" to "the property benefited by the improvement" (65 ILCS 5/9"2"44 (West 1992)). The amusement ordinance cannot fairly be considered a special assessment; as the parties agree, it was never designed to exact a charge in return for a particular benefit to a specific property. As with the constitutional restrictions on the taxing power that we have already discussed, the statutory limitations on special assessments do not require that one who pays a tax for the general revenue receive a corresponding or proportionate benefit from the proceeds of that tax. | "Tax" exacts contributions in return for general welfare, whereas "special assessment" is charge levied against specific property in return for particular benefit to that property. S.H.A. 65 ILCS 5/9-2-45. | "Is ""special assessment"" a charge levied against specific property in return for particular benefit to that property?" | Taxation - Memo # 241 - C - NA.docx | ROSS-003289659-ROSS-003289660 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6822 | United States v. Keen, 676 F.3d 981 | 234+2 | Section 666's legislative history and related Supreme Court jurisprudence validate this interpretation. Entitled "Theft or bribery concerning programs receiving Federal funds," 18 U.S.C. " 666 was enacted "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." S.Rep. No. 98"225, at 370 (1983), 1984 U.S.C.C.A.N. 3182, 3511; accord Sabri v. United States, 541 U.S. 600, 606, 124 S.Ct. 1941, 1946, 158 L.Ed.2d 891 (2004). According to the Supreme Court, to effectuate this purpose, Congress did not limit itself merely to going after corrupt individuals who abuse their positions to skim federal funds. In addition, Congress was committed to the even broader objective of ensuring "the integrity of organizations participating in federal assistance programs." Fischer v. United States, 529 U.S. 667, 678, 120 S.Ct. 1780, 1787, 146 L.Ed.2d 707 (2000). | Statute prohibiting theft or bribery concerning programs receiving Federal funds was enacted to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery. 18 U.S.C.A. S 666. | "According to Congress, what is the purpose of the statute governing theft and bribery in relation to federally funded programs?" | Bribery - Memo #637 - C-JL.docx | LEGALEASE-00030587-LEGALEASE-00030588 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 6823 | United States v. Grubb, 11 F.3d 426 | 63+1(2) | The defendant argues that section 666(a)(2) does not apply to the granting of employment in exchange for political contributions and cites United States v. Cicco, 938 F.2d 441 (3d Cir.1991), which concluded that section 666 was ambiguous as to whether contribution of previously existing party loyalty in exchange for retaining government employment is bribery within the meaning of the statute and, therefore, resorted to legislative intent to hold that Congress did not intend such coverage under section 666.10 However, Congress enacted section 666 to extend the reach of 18 U.S.C. " 201, which covers bribing federal public officials, to include bribery of "an official, employee, or agent of a State or local government agency." S.Rep. No. 225 at 369, 1984 U.S.C.C.A.N. (98 Stat.) 3510, 3511. Tomblin's $10,000 bribe of Adams, and Grubb's participation in that bribery, come squarely within the literal meaning of section 666(a)(2) and we see no clearly expressed legislative intent to the contrary. See United States v. Sheek, 990 F.2d 150, 152"53 (4th Cir.1993) (absent ambiguity or an unambiguously expressed legislative intent to the contrary, the statute must be given its literal meaning). Furthermore, defendant's argument, that the section 666(c) exemption for bona fide wages applies to this situation, lacks merit. Certainly Tomblin's wages were not "bona fide" and "in the usual course of business" within the meaning of the statutory exception of " 666(c). | Exemption in federal statute prohibiting bribery of agent of state or local organization which receives benefits in excess of $10,000 under federal program for "bona fide" wages did not apply to defendant judge's participation in bribery of county sheriff by friend of judge's in return for two years of part-time work in order that friend could get his Social Security and state pension benefits; friend's wages were not "bona fide" and not "in course of usual business" within meaning of exception. 18 U.S.C.A. SS 2, 201, 666(a)(2), (c), 1341. | "Where payments to bribe receiver were not made in the usual course of business, should the bona fide wage rule be applied as an exception to bribery statute?" | 011971.docx | LEGALEASE-00140967-LEGALEASE-00140969 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 6824 | United States v. Dubon-Otero, 76 F. Supp. 2d 161 | 110+2033 | We find Defendants' arguments unavailing. The First Circuit, and all other Circuits which have considered this issue, have rejected Defendants' line of thought. See United States v. Lara, 181 F.3d 183 (1st Cir.1999); United States v. Stephenson, 183 F.3d 110, 118 (2d Cir.1999); United States v. Hunte, 193 F.3d 173, 174 (3rd Cir.1999); United States v. Haese, 162 F.3d 359, 366"68 (5th Cir.1998), cert. denied, 526 U.S. 1138, 119 S.Ct. 1795, 143 L.Ed.2d 1022 (1999); United States v. Ware, 161 F.3d 414, 418 (6th Cir.1998); United States v. Condon, 170 F.3d 687, 688"89 (7th Cir.1999); United States v. Johnson, 169 F.3d 1092, 1097 (8th Cir.1999); United States v. Singleton, 165 F.3d 1297, 1298 (10th Cir.1999) (en banc); United States v. Lowery, 166 F.3d 1119, 1122"24 (11th Cir.1999); United States v. Ramsey, 165 F.3d 980, 987 (D.C.Cir.1999). The First Circuit has unequivocally stated that the federal witness-bribery statute does not prohibit the government from pledging more lenient treatment or like measures to cooperating witnesses. See Lara, 181 F.3d at 198. | Federal witness-bribery statute does not prohibit government from pledging more lenient treatment or like measures to cooperating witnesses. 18 U.S.C.A. S 201(c)(2). | Does federal witness-bribery statute prohibit government from pledging more lenient treatment or like measures to cooperating witnesses? | 011976.docx | LEGALEASE-00140873-LEGALEASE-00140874 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 6825 | United States v. Parlavecchio, 903 F. Supp. 788 | 36+2 | To serve as a predicate act under the Travel Act, conduct must be not merely criminal under the laws of the state in which committed or of the United States; it must also constitute "extortion, bribery or arson." 18 U.S.C. " 1952(b). Congress did not define the terms "extortion," "bribery" or "arson" as used in the Travel Act, but case law has established that these terms are to be read "generically," and that the "generic" definitions of these crimes may be broader than their strict common law definitions. | Terms "extortion," "bribery," and "arson" contained in Travel Act are to be read more broadly than their strict common law definitions. 18 U.S.C.A. S 1952(b). | "Are the terms ""extortion,"" ""bribery,"" and ""arson"" contained in the Travel Act supposed to be read more broadly than their strict common law definitions?" | 012150.docx | LEGALEASE-00141953-LEGALEASE-00141954 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6826 | Jarecki Mfg. Co. v. Merriam, 104 Kan. 646 | 113+3 | Persons are presumed to contract with reference to a custom or usage which pertains to the subject of the contract. Smythe v. Parsons, 37 Kan. 79, 14 Pac. 444. To constitute a custom which tacitly attends the obligation of a contract, the habit, mode, or course of dealing in the particular trade, business, or locality must be definite and certain; must be well settled and established; must be uniformly and universally prevalent and observed; must be of general notoriety; and must have been acquiesced in without contention or dispute so long and so continuously that contracting parties either had it in mind or ought to have had it in mind, and consequently contracted, or presumptively contracted, with reference to it. The requisites of a good custom must all be established by evidence which is clear and convincing. The very nature of the subject is such it is not enough that the evidence on the side of the existence of the custom merely preponderate, merely overbalance in some degree the weight of evidence on the other side. It must be of such cogency as to satisfy the mind and generate full belief. | A good custom, invocable as tacitly affecting a contract, must be definite and certain, well-established, uniformly and universally prevalent and observed, of general notoriety, and acquiesced in without contention so long and so continuously that contracting parties either had it in mind or ought to have had it in mind when contracting. | "What constitutes a custom which tacitly attends the obligation of a contract, the habit, mode, or course of dealing in the particular trade?" | 014165.docx | LEGALEASE-00141793-LEGALEASE-00141794 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6827 | King v. Modern Music Co., 33 P.3d 947 | 226H+1 | The Oklahoma Supreme Court has given the requirements for a joint venture.A joint venture is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit. The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project. None of these elements alone is sufficient. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each co-adventurer of something promotive of the enterprise. Each member of a joint venture acts for himself as principal and as agent for the other members within the general scope of the enterprise. The law of partnership and of principal and agent underlies the conduct of a co-adventurer and governs the rights and liabilities of co-adventurers and third parties as well. The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details. | A "joint venture" is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit. | Is the relationship of joint venture analogous to that of partnership? | 022370.docx | LEGALEASE-00141993-LEGALEASE-00141994 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6828 | Taylor v. Sauls, 772 So. 2d 686 | 307A+723.1 | The moving party has the burden of showing he met the requisites set forth in Article 1602. Armstrong v. State Farm Fire and Cas. Co., 423 So.2d 79 (La.App. 1 Cir.1982) "The trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance." Hughes v. Bailey, 29,314, p. 8-9 (La.App. 2 Cir. 4/2/97); 691 So.2d 359, 364. Moreover, the trial court should also consider the effect a continuance would have on the administration of justice. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3 Cir.1975), writ denied, 329 So.2d 458 (La.1976). | Moving party has burden of showing he met the requisites set forth in article governing peremptory grounds for granting continuance, and in deciding whether to grant or deny a continuance, trial judge must consider the particular facts in each case, as well as effect a continuance would have on the administration of justice. LSA-C.C.P. art. 1602. | Does the moving party have a burden of showing he met the requisites set forth in article governing peremptory grounds for granting continuance? | 030728.docx | LEGALEASE-00141403-LEGALEASE-00141404 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 6829 | Ulrich v. Ulrich, 366 P.2d 999 | 307A+74 | Although a proper interpretation of Rule 26(b) and Rule 33, Wyoming Rules of Civil Procedure, admits of great latitude in the examination of a party by interrogatory, that privilege is not without its limitations. If the answer to a question may lead to the discovery of evidence or enlighten as to some phase of the issues, the interrogatory is permissible. It is as true that interrogatory may be used to obtain admission as to a relevant fact, but this does not extend to its use to elicit an expression of opinion as to existence of what may become a fact only by virtue of a correct legal conclusion. | Proper interpretation of discovery rules admits great latitude in examination of party by interrogatory but such privilege is not without its limitations. Rules of Civil Procedure, rules 26(b), 33. | Does the proper interpretation of discovery rules admit great latitude in examination of party by an interrogatory? | Pretrial Procedure - Memo # 5163 - C - SB.docx | ROSS-003304749-ROSS-003304750 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 6830 | Borders v. Barber, 81 Mo. 636 | 307A+74 | Where a deposition is taken under a commission it is within the power of the court, on discovering merely formal defects therein, to direct the clerk to transmit the deposition back to the officer for correction, although there is no statute authorizing the amendment of a deposition. | Where a deposition is taken under a commission it is within the power of the court, on discovering merely formal defects therein, to direct the clerk to transmit the deposition back to the officer for correction, although there is no statute authorizing the amendment of a deposition. | "Can the court permit withdrawal of depositions to correct irregularities, and then permit their use?" | 032182.docx | LEGALEASE-00141497-LEGALEASE-00141498 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 6831 | State ex rel. Buck v. McCabe, 140 Ohio St. 535 | 307A+725 | As this court views it, these matters which may become important during the interim of continuance are not now before this court. This court is limited to the consideration of the relief sought by the prayer of the petition, which is that the order be set aside and that the case be set down immediately for trial. The trial court has continuing jurisdiction of this matter and may at any time revoke or modify the order for reasonable cause shown, or may attach such limitations as may seem, from time to time, to be necessary and proper. Royster v. Lederle, 7 Cir., 128 F.2d 197, 201. | Trial court which granted continuance for indefinite term had continuing jurisdiction of the matter and could at any time revoke or modify the order for reasonable cause shown, or attach such limitations as might seem from time to time, within sound discretion, to be necessary and proper. | Does a court which granted continuance for indefinite term have continuing jurisdiction of the matter? | Pretrial Procedure - Memo # 5204 - C - AC.docx | LEGALEASE-00031250-LEGALEASE-00031251 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 6832 | Rembert v. Whitworth, 14 La. Ann. 608 | 307A+74 | The Act of 25th of March, 1828, " 8, amending Article 425 of the Code of Practice, provides, that commissions to take testimony in another parish, may be directed to any Judge or Justice of the Peace, or to any other person authorized by law to administer oaths. Under this law, if a commission be specially directed by name to a person in another parish, the authority of such special commissioner to administer oaths, will be presumed. Baine v. Wilson, 18 La. 64. The defendants also excepted to the introduction of the testimony of J. J. Taylor, a witness introduced by plaintiff to prove declarations of one Bonneau, a witness of defendant, conflicting with the statements made by said Bonneau, when examined under a commission in this cause. But it is unnecessary to pass upon this bill of exceptions, inasmuch as there is evidence enough to sustain the verdict of the jury without the testimony of Taylor. | Where a commission to take testimony is specially directed by name to a person in another parish, his authority to administer oaths will be presumed. | "Where a commission to take testimony is specially directed by name to a person in another parish, will his authority to administer oaths be presumed?" | 032574.docx | LEGALEASE-00141690-LEGALEASE-00141691 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6833 | Patton v. Jones, 212 S.W.3d 541 | 302+104(1) | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. Lacy v. Bassett, 132 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (discussing dismissal based on ecclesiastical doctrine) (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000)). We review the record de novo to determine whether the trial court had subject matter jurisdiction. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998). | A motion to dismiss based on a lack of subject matter jurisdiction is functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | "Is a motion to dismiss for lack of subject-matter jurisdiction, a functional equivalent of a plea to the jurisdiction?" | 033359.docx | LEGALEASE-00140993-LEGALEASE-00140994 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 6834 | Hentz v. Asheville City Bd. of Educ., 189 N.C. App. 520 | 307A+554 | A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be raised at any time. Bache Halsey Stuart, Inc. v. Hunsucker, 38 N.C.App. 414, 421, 248 S.E.2d 567, 571 (1978), cert. denied, 296 N.C. 583, 254 S.E.2d 32 (1979). Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. Harris v. Pembaur, 84 N.C.App. 666, 667"68, 353 S.E.2d 673, 675 (1987). An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. Flowers v. Blackbeard Sailing Club, 115 N.C.App. 349, 352"53, 444 S.E.2d 636, 638"39 (1994), disc. review improvidently allowed, 340 N.C. 357, 457 S.E.2d 599 (1995). "[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." Presnell v. Pell, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). | An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. | Is an action properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies? | 033361.docx | LEGALEASE-00141004-LEGALEASE-00141005 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6835 | Abrons Family Practice & Urgent Care, PA v. N. Carolina Dep't of Health & Human Servs., 792 S.E.2d 528 | 307A+554 | Judicial review of the final decision of a State agency is governed by the Administrative Procedure Act (APA), N.C. Gen. Stat. " 150B"1 et seq., which applies to "both trial and appellate court review of administrative agency decisions." N.C. Dept. of Correction v. Myers, 120 N.C.App. 437, 440, 462 S.E.2d 824, 826 (1995). N.C. Gen. Stat. " 150B"43 (2015) states in relevant part that "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article[.]" "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." Johnson v. Univ. of N.C., 202 N.C.App. 355, 357, 688 S.E.2d 546, 548 (2010) (internal quotations omitted). "[T]he exhaustion requirement may be excused if the administrative remedy would be futile or inadequate." Justice for Animals, Inc. v. Robeson Cty., 164 N.C.App. 366, 372, 595 S.E.2d 773, 777 (2004) (citing Huang v. N.C. State University, 107 N.C.App. 710, 715, 421 S.E.2d 812, 815 (1992)). | An action is properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. N.C. Gen. Stat. Ann. S 150B-43; N.C. R. Civ. P. S 1A-1. | "Where a plaintiff has failed to exhaust administrative remedies, is an action properly dismissed for lack of subject matter jurisdiction?" | 033416.docx | LEGALEASE-00141630-LEGALEASE-00141631 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6836 | Havens v. Attorney Gen., 91 N.H. 115 | 371+2001 | The fact that the plaintiff may have suffered some loss of profits through diminished business because certain customers are buying cheaper products is of no materiality. "Taxes in themselves are economic charges which must be paid in some way by the person affected. They must either come from the surplus of the taxpayer, or the burden must be passed on to those with whom the taxpayer has economic relations. Except in pure theory it seems impossible to have a single uniform system of taxation affecting all alike. The state in seeking objects for taxation must act selectively, placing the burden here, and exempting from it there." 23 Cornell Law Quar. 45. The expedient distribution of that burden, within constitutional limitations, is the task of the legislature, and it is the "universally accepted doctrine" that no legislative act shall be declared unconstitutional "except upon unescapable grounds." Musgrove v. Parker, 84 N.H. 550, 551, 153 A. 320. In the opinion of a majority of the court no such grounds exist in the present case. | A "tax" in itself is an economic charge which must be paid in some way by the person affected, and it must either come from a surplus of the taxpayer, or the burden must be passed on to those with whom taxpayer has economic relations. | "Should a tax either come from a surplus of the taxpayer, or should the burden be passed on to those with whom taxpayer has economic relations?" | 045185.docx | LEGALEASE-00141128-LEGALEASE-00141129 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 6837 | Great Lakes Pipe Line Co. v. Comm'r of Taxation, 272 Minn. 403 | 371+2005 | In oral argument respondent relied to some extent on two cases, Marshall-Wells Co. v. Commr. of Taxation, 220 Minn. 458, 20 N.W.2d 92, and Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N.W.2d 728, as authority for its position that the commissioner's interpretation of Minn.St. c. 290, and specifically ss 290.02, 290.17(4), and 290.19, as applied to its short-term securities, deprived it of its property without due process of law. An analysis of the Marshall-Wells and Cargill cases discloses that in each the taxpayers had established a commercial domicile in the State of Minnesota, a factor entirely absent in the instant case. It discloses also that these cases recognize that a state's taxing power may reach income from intangibles located outside the state but correlated to a business conducted within the state. In the Marshall-Wells case, this court said (220 Minn. 462, 20 N.W.2d 94):"Generally speaking, a state may tax any privilege extended by it and may adopt any reasonable rule for the measurement of such tax, Provided it is not measured by property, or income from property, not within its jurisdiction and not used in connection with or correlated to any business authorized or conducted in the state. An attempt by the state to exercise its taxing authority upon property located and used Beyond its jurisdiction constitutes a taking without due process of law. (Ciatations omitted.)" | State may tax any privilege extended by it and may adopt any reasonable rule for measurement of tax, provided it is not measured by property, or income from property, not within its jurisdiction and not used in connection with or correlated to any business authorized or conducted in the state. | Can a state tax any privilege extended by it? | 045368.docx | LEGALEASE-00141374-LEGALEASE-00141375 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6838 | State v. Weil, 232 Ala. 578 | 371+2003 | The power to levy taxes is not a delegated power, but is an attribute of sovereignty inherent in the state, and is plenary over persons, franchises, privileges, and property within its jurisdiction, except as restricted by the limitations imposed by the State Constitution and the Constitution of the United States. Phelps v. Union Bank & Trust Co., 225 Ala. 238, 142 So. 552; Union Bank & Trust Co. v. Phelps, 288 U.S. 181, 53 S.Ct. 321, 77 L.Ed. 687; Capital City Water Co. v. Board of Revenue of Montgomery County, 117 Ala. 303, 23 So. 970; 26 R.C.L., p. 86, " 63; Id., p. 26, " 12. | Power to levy taxes is not delegated power, but is attribute of sovereignty inherent in state, and is plenary over persons, franchises, privileges, and property within its jurisdiction, except as restricted by limitations imposed by State and Federal Constitutions. | Is a states power to tax plenary? | 045435.docx | LEGALEASE-00141023-LEGALEASE-00141024 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6839 | Int'l Harvester Co. v. Wisconsin Dep't of Taxation, 322 U.S. 43 | 371+2005 | For the reasons stated in the Penney case we do not doubt that a state has constitutional power to make a levy upon a corporation, measured by so much of its earnings from within the state as it distributes in dividends, and to make the taxable event the corporation's relinquishment of the earnings to its stockholders. That power is not diminished or altered by the fact that the state courts, for purposes of their own, denominate the levy a tax on the privilege of declaring and receiving dividends, or that they decline to call it an income tax. In determining whether a tax is within the state's constitutional power, we look to the incidence of the tax and its practical operation, and not its characterization by state courts. Shaffer v. Carter, 252 U.S. 37, 55, 40 S.Ct. 221, 226, 64 L.Ed. 445, and cases cited; Lawrence v. State Tax Commission, 286 U.S. 276, 280, 52 S.Ct. 556, 557, 76 L.Ed. 1102, 87 A.L.R. 374, and cases cited. | In determining whether a tax is within the state's constitutional power, the Federal Supreme Court looks to the incidence of the tax and its practical operation and not its characterization by state courts. | Where does the Federal Supreme Court look to determine whether a tax is within the state's constitutional power? | Taxation - Memo # 604 - C - KA.docx | LEGALEASE-00031741-LEGALEASE-00031742 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6840 | Coleman v. Nat'l Movie-Dine, 449 F. Supp. 945 | 25T+155 | Second, Coleman argues that, even under the broadest interpretation of the agreement's arbitration clause, the parties never agreed to permit issues brought as a class action to be referable to arbitration. In the absence of any express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" where the arbitration clause is broad in its coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 584-585, 80 S.Ct. at 1354. Arbitration should not be foreclosed simply by adding persons to a civil action who are not parties to the arbitration agreement because such an inclusion would thwart the federal policy in favor of arbitration. Cf. Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 2 (1st Cir. 1968); Lawson Fabrics, Inc. v. Akzona, Inc., 355 F.Supp. 1146, 1151 (S.D.N.Y.), aff'd mem., 486 F.2d 1394 (2d Cir. 1973).We find, therefore, that Coleman cannot prevent the submission of his claims to arbitration by bringing this suit as a class action, because the broad arbitration clause in the agreement does not have an express provision excluding class actions from arbitration and because there is no forceful evidence of a purpose to exclude such a claim from arbitration. | Arbitration should not be foreclosed simply by adding persons to civil action who are not parties to arbitration agreement, since such inclusion would thwart federal policy in favor of arbitration. 9 U.S.C.A. S 1 et seq. | Can arbitration be foreclosed simply by adding persons to a civil action who are not parties to the arbitration agreement? | 007645.docx | LEGALEASE-00143365-LEGALEASE-00143367 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6841 | Interlake v. Kansas Power & Light Co., 231 Kan. 251 | 260+112(1) | Gas pipeline mechanics' liens are created and governed by the provisions of K.S.A. 55-207 to 55-210 inclusive. The general lien statutes (K.S.A. 60-1101 et seq.) do not apply to oil and gas leases (Mountain Iron & Supply Co. v. Branum, 200 Kan. 38, 41, 434 P.2d 1015 (1967)). Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature. | Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature. K.S.A. 55-207 to 55-210. | Do oil and gas lien laws confer special privileges? | Mines and Minerals - Memo #158 - C - CSS.docx | ROSS-003289104 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 6842 | W. S. Newell v. Randall, 373 So. 2d 1068 | 260+48 | To hold that the soil was within the reservation to Bessie Randall would, in effect, reserve the land itself to her, something she purportedly divested herself of in the 1951 deed. Although there is no precise definition of the term "mineral," it necessarily implies a substance rare and exceptional in character possessing special value something other than the soil itself. | Although there is no precise definition of the term "mineral," it necessarily implies a substance rare and exceptional in character possessing special value, something other than the soil itself. | Does the term mineral necessarily imply a substance rare and exceptional in character? | Mines and Minerals - Memo #192 - C - CSS.docx | ROSS-003291086-ROSS-003291087 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 6843 | Buxbom v. Smith, 23 Cal. 2d 535 | 302+49 | The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. Luckey v. Superior Court, 209 Cal. 360, 287 P. 450; Hinkel v. Crowson, 83 Cal.App. 87, 256 P. 479. In defining the relief which may be awarded to plaintiff where an answer in the action has been filed, section 580 of the Code of Civil Procedure provides that "the court may grant him any relief consistent with the case made by the complaint and embraced within the issues." Moreover, the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury. Stein v. United Railroads of San Francisco, 159 Cal. 368, 113 P. 663; Tietke v. Forrest, 64 Cal.App. 364, 221 P. 681. Consistent with these liberal principles is the mandate of section 4 " of article VI of the state Constitution: "No judgment shall be set aside * * * for any error as to any matter of pleading * * * unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." A careful review of the entire record in this case in the light of the foregoing observations compels the conclusion that the relief awarded plaintiff is commensurate with the injuries shown to have been sustained. | The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. Code Civ.Proc. SS 452, 475, 580. | Can the subject-matter of an action and the issues involved be determined from the title of the pleading? | Pleading - Memo 401 - RMM.docx | ROSS-003302020-ROSS-003302021 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6844 | Lozman v. Putnam, 328 Ill. App. 3d 761 | 302+48 | A complaint need only contain a plain and concise statement of plaintiff's cause of action; it is unnecessary for the complaint to set forth evidence that plaintiff intends to introduce at trial. Rodgers v. Whitley, 282 Ill.App.3d 741, 749, 218 Ill.Dec. 191, 668 N.E.2d 1023 (1996) (Rodgers). Pleadings in the complaint are to be liberally construed "with a view toward doing substantial justice between the parties." 735 ILCS 5/2"603(c) (West 2000). A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which would entitle plaintiff to recover. Davis v. Temple, 284 Ill.App.3d 983, 989, 220 Ill.Dec. 593, 673 N.E.2d 737 (1996). | A complaint need only contain a plain and concise statement of plaintiff's cause of action; it is unnecessary for the complaint to set forth evidence that plaintiff intends to introduce at trial. S.H.A. 735 ILCS 5/2-603(c). | Is it necessary for a complaint to set forth the evidence that the plaintiff intends to introduce at trial? | 023498.docx | LEGALEASE-00143065-LEGALEASE-00143066 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6845 | Holland v. First Nat. Bank in Dallas, 597 S.W.2d 406 | 307A+723.1 | Holland argues also that the judge had a mandatory duty under Rule 63 to permit him to amend further and abused his discretion in overruling his motion for a continuance. We hold that leave to amend is not mandatory, even in the absence of a showing of surprise, if the amendment is not tendered for filing and the party seeking to amend must move for a continuance to give him time to prepare it. A motion for continuance raises the question of diligence on the part of the moving party, as when the delay is sought because of the absence of a witness. See Fritsch v. J. M. English Truck Line, 151 Tex. 168, 246 S.W.2d 856, 858 (1952). | Motion for continuance raises question of diligence on part of moving party, as when delay is sought because of absence of witness. | "Does a motion for continuance raise a question of diligence on part of a moving party, as when a delay is sought because of an absence of a witness?" | 030661.docx | LEGALEASE-00142808-LEGALEASE-00142809 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6846 | Neff v. Brady, 527 S.W.3d 511 | 307A+554 | Standing is implicit in the concept of subject matter jurisdiction, and subject matter jurisdiction is essential to the authority of a court to decide a case. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Standing is never presumed, cannot be waived, and may be raised for the first time on appeal. Id. at 443"44. We review standing under the same standard by which we review subject matter jurisdiction generally. Id. at 446. We look to the facts alleged in the petition, but may consider other evidence in the record if necessary to resolve the question of standing. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Heckman, 369 S.W.3d at 156 (courts "must assess standing plaintiff by plaintiff, claim by claim"). "[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." Id. at 153 ("[S]tanding is not dispensed in gross."). A plaintiff's lack of standing to bring some, but not all, of his claims deprives the court of jurisdiction over those discrete claims. Id. at 145. If the plaintiff lacks standing to bring all of his claims, the court must dismiss the whole action for want of jurisdiction. Id. | If the plaintiff lacks standing to bring all of his claims, the court must dismiss the whole action for want of jurisdiction. | "If the plaintiff lacks standing to bring all of his claims, must the court dismiss the whole action for want of jurisdiction?" | 032954.docx | LEGALEASE-00143442-LEGALEASE-00143443 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 6847 | Austin Lakes Joint Venture v. Avon Utilities, 648 N.E.2d 641 | 15A+2161 | The doctrines of primary jurisdiction and exhaustion of remedies, therefore, are related but significantly different. The doctrine of primary jurisdiction is not, in our view, jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate. | Doctrine of exhaustion of administrative remedies is jurisdictional and, when applicable, makes motion to dismiss for lack of subject matter jurisdiction appropriate in court action. Trial Procedure Rule 12(B)(1). | Does a party's failure to exhaust its administrative remedies create a jurisdictional defect and makes a motion to dismiss for lack of subject matter jurisdiction appropriate? | Pretrial Procedure - Memo # 5748 - C - KBM.docx | LEGALEASE-00032529-LEGALEASE-00032530 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 6848 | Mercury Ins. Co. of Florida v. Jackson, 46 So. 3d 1129 | 401+1.5 | Actions must be brought in the county where the defendant resides, where the cause of action accrued, or where the property in litigation is located. " 47.011, Fla. Stat.While a trial court's discretionary decision to change venue is reviewable under an abuse of discretion standard, the issue of whether venue is proper in a particular forum is not a matter of judicial discretion. Dive Bimini, Inc. v. Roberts, 745 So.2d 482, 483 (Fla. 1st DCA 1999). If there is no legal basis to support a plaintiff's choice of venue, the trial court must dismiss the case or transfer it to the appropriate venue. Id. | While a trial court's discretionary decision to change venue is reviewable under an abuse of discretion standard, the issue of whether venue is proper in a particular forum is not a matter of judicial discretion. West's F.S.A. S 47.011. | Is the question of proper venue in a particular forum a matter of judicial discretion? | Pretrial Procedure - Memo # 5751 - C - NS.docx | ROSS-003329926-ROSS-003329927 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 6849 | Am. Benefit Corp. v. Parking Co. of Am., 310 Ga. App. 765 | 30+3259 | The pretrial order, when entered, "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." OCGA " 9"11"16(b). And "[t]he trial court has the power to impose appropriate sanctions to make effective its pretrial orders and appellate courts review the action taken for abuse of discretion." (Citation omitted.) Robinson v. Williams, 280 Ga. 877, 878(1), 635 S.E.2d 120 (2006). But although "[c]ontempt may at times be proper[,] and in an extreme case the plaintiff's action may be dismissed or the defendant precluded from introducing evidence relating to his defense ... these remedies are too drastic if less harsh sanctions are appropriate." (Citation and punctuation omitted.) Ambler v. Archer, 230 Ga. 281, 289(1), 196 S.E.2d 858 (1973). See also Wilson v. McNeely, 302 Ga.App. 213, 214"215(1), 690 S.E.2d 512 (2010). | Appellate courts review for abuse of discretion the action taken by a trial court to impose appropriate sanctions to make effective its pretrial orders. West's Ga.Code Ann. S 9-11-16(b). | Does the trial court have the power to impose appropriate sanctions to make effective its pretrial orders? | Pretrial Procedure - Memo # 5796 - C - SB.docx | LEGALEASE-00032569-LEGALEASE-00032570 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6850 | Krinitt v. Idaho Dep't of Fish & Game, 398 P.3d 158 | 307A+746 | However, the ability to raise an affirmative defense by motion is not unfettered. Parties must still comply with the court's scheduling orders, and failure to comply with such orders may result in the denial of the defendant's motion. I.R.C.P. 16(i); I.R.C.P. 37(b)(2)(B) (allowing the court to refuse to allow "the disobedient party to support or oppose designated claims or defenses" when a party fails to comply with a scheduling order). | The ability to raise an affirmative defense by motion is not unfettered; parties must still comply with a court's scheduling orders, and failure to comply with such orders may result in the denial of the defendant's motion. Idaho R. Civ. P. 16(i), 37(b)(2)(B) (2015). | Is the ability to raise an affirmative defense by motion not unfettered? | 033087.docx | LEGALEASE-00142565-LEGALEASE-00142566 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 6851 | Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, 169 N.C. App. 690 | 307A+554 | In the first category of motions, when neither party submits evidence, "[t]he allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged." Bruggeman v. Meditrust Acquisition Co., 138 N.C.App. 612, 615, 532 S.E.2d 215, 217, appeal dismissed and disc. review denied, 353 N.C. 261, 546 S.E.2d 90 (2000). | In a motion to dismiss for lack of personal jurisdiction, when neither party submits evidence, the allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged, and the trial judge must decide whether the complaint contains allegations that, if taken as true, set forth a sufficient basis for the court's exercise of personal jurisdiction. Rules Civ.Proc., Rule 12(b)(2), West's N.C.G.S.A. S 1A-1. | "When neither party submits evidence, should the allegations of the complaint disclose jurisdiction although the particulars of jurisdiction need not be alleged?" | 033089.docx | LEGALEASE-00142571-LEGALEASE-00142572 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 6852 | Lake Rd. Tr. Ltd. v. ABB Powertech (Pty) Ltd., 136 Conn. App. 671 | 307A+554 | A motion to dismiss may ... raise issues of fact and would, therefore, require a ... hearing [to determine the facts].... [A]ffidavits are insufficient to determine the facts unless, like the summary judgment, they disclose that no genuine issue as to a material fact exists.... When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citations omitted; internal quotation marks omitted.) Id., at 56, 459 A.2d 503. | A motion to dismiss for lack of personal jurisdiction may raise issues of fact and would, therefore, require a hearing to determine the facts. | "Can a motion to dismiss for lack of personal jurisdiction raise issues of fact and would, therefore, require a hearing to determine the facts?" | 033096.docx | LEGALEASE-00142610-LEGALEASE-00142611 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6853 | PSI Res. v. MB Fin. Bank, Nat. Ass'n, 2016 IL App (1st) 152204 | 307A+531 | On appeal, plaintiff asks us to review whether the circuit court erred in granting defendant's motion to dismiss brought under section 2"619(a)(5) of the Code. Section 2"619(a)(5) provides that a defendant may file a motion for dismissal when an action has not been commenced within the time limited by law (735 ILCS 5/ 2"619(a)(5) (West 2012)).Section 2"619 is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. Turner v. 1212 S. Michigan Partnership, 355 Ill.App.3d 885, 891, 291 Ill.Dec. 476, 823 N.E.2d 1062 (2005) (quoting Davis v. Chicago Police Board, 268 Ill.App.3d 851, 854, 206 Ill.Dec. 269, 645 N.E.2d 274 (1994)). A motion to dismiss under section 2"619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. Janda v. United States Cellular Corp., 2011 IL App (1st) 103552, 83, 356 Ill.Dec. 329, 961 N.E.2d 425 (citing DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006)). | A motion to dismiss based upon defects or defenses is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. S.H.A. 735 ILCS 5/2-619. | Is a motion to dismiss designed to afford litigants a means to dispose of issues of law? | 033267.docx | LEGALEASE-00142557-LEGALEASE-00142558 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 6854 | First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369 | 307A+673 | Based upon our consideration of these principles, we hold that determining whether to permit limited discovery prior to ruling on a motion to dismiss for lack of personal jurisdiction is an extremely fact-based determination that is best left to the discretion of the trial court. In making such a determination, trial courts, as a threshold issue, first should determine whether the plaintiff has set out sufficient facts to establish a colorable claim for personal jurisdiction. If the threshold of a colorable claim is met, trial courts then should consider the following non-exclusive factors to determine whether to grant jurisdictional discovery: (1) whether the plaintiff has shown that there is a likelihood that discovery will yield facts that will influence the personal jurisdiction determination; (2) whether the plaintiff has laid out with particularity the evidence sought by discovery; (3) whether the evidence sought is the type which would normally be in the exclusive control of the defendant; (4) whether the case is particularly complex; and (5) whether the plaintiff's interest in discovery outweighs the policy concerns of subjecting a nonresident defendant to burdensome discovery at such an early stage and seeking to avoid allowing the plaintiff to conduct a "fishing expedition." | In making determination of whether to permit limited discovery prior to ruling on a motion to dismiss for lack of personal jurisdiction, trial courts, as a threshold issue, first should determine whether plaintiff has set out sufficient facts to establish a colorable claim for personal jurisdiction, and if threshold of a colorable claim is met, trial courts then should consider the following non-exclusive factors to determine whether to grant jurisdictional discovery: (1) whether plaintiff has shown that there is a likelihood that discovery will yield facts that will influence personal jurisdiction determination; (2) whether plaintiff has laid out with particularity evidence sought by discovery; (3) whether evidence sought is type which would normally be in the exclusive control of defendant; (4) whether case is particularly complex; and (5) whether plaintiff's interest in discovery outweighs policy concerns of subjecting a nonresident defendant to burdensome discovery at such an early stage and seeking to avoid allowing plaintiff to conduct a fishing expedition. Tenn. R. Civ. P. 12.02(2); Tenn. Sup. Ct. Rule 28 S 2(H). | "Upon a defendant's motion to dismiss for lack of personal jurisdiction, does the plaintiff bear the burden of establishing that the trial court has personal jurisdiction over the defendant?" | Pretrial Procedure - Memo # 5942 - C - LN.docx | ROSS-003301605-ROSS-003301607 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 6855 | In re Enron Corp. Sec., Derivative & ""ERISA"" Litig., 511 F. Supp. 2d 742 | 307A+554 | Federal and Connecticut rules of procedure are quite different. Under Connecticutlaw, "[t]he purpose of a motion to strike is to contest ... the legal sufficiency of the allegations ofany complaint ... to state a claim upon which relief can be granted." Peter-Michael, Inc. v.Sea Shell Associates, 244 Conn. 269, 270-71, 709 A.2d 558, 559 (1998). Unlike underFed.R.Civ.P. 12(b)(6), under Connecticut practice a party may only employ a motion to dismiss to question whether, on the face of the record, the court has jurisdiction over the suit. Flanagan v. Commission on Human Rights and Opportunities, 54 Conn.App. 89, 93-94 & n. 5 733 A.2d 881, 885 & n. 5 (1999), cert. denied, 250 Conn. 925, 738 A.2d 656 (Conn.1999). The proper vehicle to challenge the legal sufficiency of a complaint under Connecticut law is a motion to strike. Id., citing Practice Book " 10-39. A motion to strike admits all well-pleadedfacts and implications therefrom as true, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Emerick v. Kuhn, 52 Conn.App. 724, 728-29, 739, 737 A.2d 456, 461, 467 (Conn. App.1999), cert. denied, 249 Conn. 929, 738 A.2d 653 (1999), cert. denied, 249 Conn. 929, 738 A.2d 653 (1999), cert. denied, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999); Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127, 137 (1996) ("The role of the trial court was to examine the complaints, construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action."), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106, 137 L.Ed.2d 308 (1997); Doe v. Yale University, 252 Conn. 641, 667, 748 A.2d 834, 851 (2000). The court may grant a motion to strike if it only asserts conclusions of law that the facts alleged do not support. Novametrix Medical Systems, Inc. v. The BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25, 28 (1992); Urda v. Glynos, No. CV 950067734, 1996 WL | Under Connecticut practice, a party may only employ a motion to dismiss to question whether, on the face of the record, the court has jurisdiction over the suit; proper vehicle to challenge the legal sufficiency of a complaint under Connecticut law is a motion to strike. Conn.Practice Book 1998, S 10-39. | Is motion to dismiss employed to test whether the court has jurisdiction over the suit on the face of the record? | Pretrial Procedure - Memo # 6070 - C - NS.docx | ROSS-003288180-ROSS-003288181 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 6856 | Wilson v. Kochnlein, 1 W. Va. 145 | 307A+726 | The cases cited in the argument clearly show that the discretion of the judge in granting or refusing a continuance, while it is a legal discretion, is nevertheless to be exercised more rigidly after long delays, or several continuances granted to the party, than upon the first application. | The discretion of the judge in granting or refusing a continuance is to be exercised more rigidly after long delays, or several continuances granted, than upon the first application. | "Is the granting or refusing a continuance to be exercised more rigidly after long delays, or several continuances granted to the party, than upon the first application?" | Pretrial Procedure - Memo # 6112 - C - RF.docx | ROSS-003289771 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 6857 | Krinitt v. Idaho Dep't of Fish & Game, 398 P.3d 158 | 307A+746 | "Upon motion or on its own initiative, the district court may impose sanctions for failure to obey a scheduling or pre-trial order." McKim v. Horner, 143 Idaho 568, 571, 149 P.3d 843, 846 (2006) (citing I.R.C.P. 16(i)). Such sanctions "shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees...." I.R.C.P. 16(i). "It is within the district court's discretion whether to impose such sanctions, and we will not overturn such a decision absent a manifest abuse of that discretion." Lepper, 160 Idaho at 109, 369 P.3d at 887. | Upon motion or on its own initiative, a district court may impose sanctions for failure to obey a scheduling or pretrial order. Idaho R. Civ. P. 16(i) (2015). | "Upon motion or on its own initiative, can a district court impose sanctions for failure to obey a scheduling or pretrial order?" | 033523.docx | LEGALEASE-00142316-LEGALEASE-00142317 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6858 | Burriss v. Wise, 2 Ark. 33 | 307A+726 | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. Every affidavit for a continuance must state that the party has reason to believe that he can procure the attendance of the witnesses by the next term of the court, or that their testimony can be procured by that time. | Where, at December Term, 1838, a cause was continued on account of the absence of A and B, two of defendant's witnesses; and at May Term, 1839, another affidavit for continuance is filed by him on account of the absence of A, one of the same witnesses, a continuance cannot be granted, because no suit can be twice continued for the same cause. | Will a second continuance be granted on account of absence of the same witness? | Pretrial Procedure - Memo # 6127 - C - DHA.docx | ROSS-003331777-ROSS-003331778 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6859 | Whitten v. Whitten, 956 So. 2d 1093 | 307A+560 | The plaintiff bears the burden to demonstrate the existence of cause for the failure to timely serve process. Id. at 548( 24). A showing of good cause requires at least as much as would establish excusable neglect, and must be more than "simple inadvertence or mistake of counsel or ignorance of the rules." Watters v. Stripling, 675 So.2d 1242, 1243 (Miss.1996). "A plaintiff must be diligent in serving process if he is to show good cause in failing to serve process within 120 days." Bang v. Pittman, 749 So.2d 47, 52( 25) (Miss.1999) (overruled on other grounds). In Holmes, the court stated that good cause may be found when the plaintiff's failure to effect timely service was due to the conduct of a third person, such as the process server, or when the defendant has evaded service of process or has engaged in misleading conduct. Holmes, 815 So.2d at 1186( 12). Holmes expressly held that good faith negotiations between the parties are not good cause that will excuse timely service of process. Id. at 1186( 14). In Montgomery, the court found that the unsuccessful efforts of a newly associated law firm to confer with its clients were insufficient to establish good cause excusing untimely service of process when considered along with the associating firm's failure to effect timely service. Montgomery, 910 So.2d at 547"48 ( 21"24). Montgomery also recognized that, if it appears that process cannot be served within the 120 day period, a diligent plaintiff will request additional time to serve process and that such a request supports a later allegation that good cause existed for the failure to effect timely service. Id. | A plaintiff must be diligent in serving process if he is to show good cause in failing to serve process within 120 days to avoid dismissal of action. Rules Civ.Proc., Rule 4(h). | Must a plaintiff be diligent in serving process if he is to show good cause in failing to serve process within 120 days? | 033741.docx | LEGALEASE-00143118-LEGALEASE-00143119 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 6860 | Paragon Const. Co. v. Dep't of Pub. Works, 130 Conn. App. 211 | 307A+554 | "Lack of a statutory waiver of immunity is a jurisdictional defect properly raised by a motion to dismiss....A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.... A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo.... In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged.... | In a lawsuit against the state, lack of a statutory waiver of sovereign immunity is a jurisdictional defect properly raised by a motion to dismiss. | "In a lawsuit against the state, is lack of a statutory waiver of sovereign immunity a jurisdictional defect properly raised by a motion to dismiss?" | 033789.docx | LEGALEASE-00142079-LEGALEASE-00142080 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6861 | Klemonski v. Univ. of Conn. Health Ctr., 141 Conn. App. 106 | 307A+554 | The doctrine of sovereign immunity, which implicates the court's subject matter jurisdiction, is a ground for granting a motion to dismiss. Martinez v. Dept. of Public Safety, 263 Conn. 74, 80"81, 818 A.2d 758 (2003). In the circumstances of this case, our review is plenary. See id., at 81, 818 A.2d 758. "In ruling on a motion to dismiss, the court must take the facts alleged in the complaint as true...." (Internal quotation marks omitted.) Capasso Restoration, Inc. v. New Haven, 88 Conn.App. 754, 758"59, 870 A.2d 1184 (2005). | Doctrine of sovereign immunity, which implicates the court's subject matter jurisdiction, is a ground for granting a motion to dismiss. | "Is the doctrine of sovereign immunity, which implicates the court's subject matter jurisdiction, a ground for granting a motion to dismiss?" | 033797.docx | LEGALEASE-00142217-LEGALEASE-00142218 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6862 | Conboy v. State, 292 Conn. 642 | 307A+554 | Lack of a statutory waiver of immunity is a jurisdictional defect properly raised by a motion to dismiss. Kelly v. University of Connecticut Health Center, 290 Conn. 245, 252, 963 A.2d 1 (2009); see also Practice Book " 10"31(a)(1). "A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.... A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) Filippi v. Sullivan, 273 Conn. 1, 8, 866 A.2d 599 (2005). In undertaking this review, we are mindful of the well established notion "that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Amodio v. Amodio, 247 Conn. 724, 728, 724 A.2d 1084 (1999). | Lack of a statutory waiver of the state's sovereign immunity is a jurisdictional defect properly raised by a motion to dismiss for lack of subject matter jurisdiction. Practice Book 1998, S 10-31(a)(1). | Is lack of a statutory waiver of the state's sovereign immunity a jurisdictional defect properly raised by a motion to dismiss for lack of subject matter jurisdiction? | Pretrial Procedure - Memo # 6312 - C - BP.docx | ROSS-003302624-ROSS-003302625 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 6863 | Grant v. Espiritu, 470 S.W.3d 198 | 307A+554 | Standing is a constitutional prerequisite to suit. Heckman, 369 S.W.3d at 150; see Sw. Bell Tel. Co. v. Mktg. on Hold Inc., 308 S.W.3d 909, 915 (Tex.2010). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. Heckman, 369 S.W.3d at 150; DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex.2008). Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim must dismiss it. Heckman, 369 S.W.3d at 150; see Andrade v. NAACP of Austin, 345 S.W.3d 1, 14 (Tex.2011) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)). Similarly, if the plaintiff lacks standing to bring any of his claims, the court must dismiss the whole action for want of jurisdiction. Heckman, 369 S.W.3d at 150"51; see Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 392 (Tex.2000) (holding that plaintiff had standing on some claims but not others, and dismissing only those claims for which it lacked standing) | If the plaintiff lacks standing to bring any of his claims, the court must dismiss the whole action for want of jurisdiction. | "If the plaintiff lacks standing to bring any of his claims, must the court dismiss the whole action for want of jurisdiction?" | Pretrial Procedure - Memo # 6338 - C - SK.docx | ROSS-003289859-ROSS-003289860 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 6864 | Old Home Enter. v. Fleming, 20 Neb. App. 705 | 307A+560 | Service of process effected more than 6 months after the petition was filed at a time when the action stood dismissed does not negate the dismissal pursuant to " 25"217. See Vopalka v. Abraham, supra. A voluntary appearance, which is the equivalent of service of process, is a nullity in a dismissed action. See id. Old Home's complaint against Becker for breach of a rental contract was filed December 29, 2009, and was not served until July 30, 2010. During that period, Becker did nothing that would constitute a voluntary appearance or waiver of process. More than 6 months had elapsed, and therefore, the action was dismissed by operation of law, without prejudice. | Service of process effected more than 6 months after the petition was filed at a time when the action stood dismissed does not negate the dismissal required by statute. West's Neb.Rev.St. S 25-217. | Is service of process effected more than 6 months after the petition filed at a time when the action stood dismissed does not negate the dismissal required by statute? | Pretrial Procedure - Memo # 6358 - C - PB.docx | ROSS-003303357 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6865 | Luxenberg v. Marshall, 835 S.W.2d 136 | 307A+44.1 | Courts possess all inherent powers necessary for the enforcement of their lawful orders. Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ); Equitable Trust Co. v. Lyle, 627 S.W.2d 824, 825 (Tex.App."San Antonio 1982, writ ref'd n.r.e.). The Texas Rules of Civil Procedure specifically authorize the striking of pleadings as a sanction for discovery abuse. Tex.R.Civ.P. 215, subd. 2(b)(5). Courts may impose similar sanctions for violations of pre-trial orders. | Rules of Civil Procedure specifically authorize striking of pleadings as sanction for discovery abuse, and courts may impose similar sanctions for violations of pretrial orders. Vernon's Ann.Texas Rules Civ.Proc., Rule 215, subd. 2, par. b(5). | Can sanctions include those enumerated in the rules of civil procedure for discovery violations? | 033905.docx | LEGALEASE-00142324-LEGALEASE-00142325 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 6866 | City of El Paso v. Wilkins, 281 S.W.3d 73 | 307A+554 | Municipalities are immune from suit under the doctrine of sovereign immunity unless the Legislature has expressly waived immunity. Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.1998).A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | A trial court lacks subject matter jurisdiction when a cause of action is barred by sovereign immunity, and dismissal with prejudice is proper. | "When a claim is barred by sovereign immunity and the trial court lacks jurisdiction, is dismissal with prejudice proper?" | 033912.docx | LEGALEASE-00142340-LEGALEASE-00142341 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 6867 | Evansville Garage Builders v. Shrode, 720 N.E.2d 1273 | 307A+746 | Though the remedy is extreme in nature, it is within the purview of the trial court to sanction a recalcitrant party by entering a default judgment against it.T.R. 16(K) states in relevant part: If without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on behalf of a party at a pre-trial conference .. the court may [order]: (1) payment by the delinquent attorney or party of the reasonable expenses .. [and/or] (2) take such other action as may be appropriate. "Such other action" may include entry of a default judgment against a defendant pursuant to T.R. 55. Farinelli v. Campagna, 166 Ind.App. 587, 593"94, 338 N.E.2d 299, 303 (1975) (recognizing the authority of the trial courts to order dismissals for violations of T.R. 16 orders); see also 2 William F. Harvey, Indiana Practice " 16.4 (2d ed.1988). We hold that when a trial court enters a default judgment against a party as a sanction under the authority of T.R. 16(k), as occurred here, it must follow the procedures prescribed by T.R. 55. | It is within the purview of the trial court to sanction a recalcitrant party for violation of pre-trial conference rule by entering a default judgment against it. Trial Procedure Rules 16(K), 55. | Is it within the purview of the trial court to sanction a recalcitrant party for violation of pre-trial conference rule by entering a default judgment against it? | 034200.docx | LEGALEASE-00143185-LEGALEASE-00143186 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 6868 | Beck v. McNeill, 782 S.W.2d 650 | 371+2005 | The test for determining if a state may tax interstate commerce is whether the tax (1) has a substantial nexus with the state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. Maryland, 451 U.S. at 754, 101 S.Ct. at 2133.Missouri has adopted this test for determining when a state may tax interstate commerce. Superior Aircraft, 734 S.W.2d at 506"508. | Test for determining whether state may tax interstate commerce is whether the tax: has a substantial nexus with the state; is fairly apportioned; does not discriminate against interstate commerce; and is fairly related to the services provided by the state. U.S.C.A. Const. Art. 1, S 8, cl. 3. | What is the test for determining whether the state may tax interstate commerce? | 045289.docx | LEGALEASE-00142844-LEGALEASE-00142845 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 6869 | State v. Wood, 187 So. 2d 820 | 371+2005 | Intrinsically it is obvious that the states and the federal government have the constitutional right and power as separate sovereigns to tax that which the sovereignty has declared to be illegal. Appellee in his brief concedes that the State of Mississippi has the right to impose a tax upon an illegal activity, and the appellant amply establishes this fact by proof that the United States Government has for a long period of time exercised its power to tax that which is forbidden or which is a violation of the law. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955); United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953); United States v. Staffoff, 260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358 (1923); United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043 (1921). | State and federal government have constitutional right and power as separate sovereigns to tax that which sovereignty has declared to be illegal. | Do the state and federal government have constitutional right and power as separate sovereigns to tax that which sovereignty has declared to be illegal? | 045341.docx | LEGALEASE-00142396-LEGALEASE-00142397 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6870 | Trumbo v. Crestline-Lake Arrowhead Water Agency, 250 Cal. App. 2d 320 | 268+405 | The standby water charge is not a tax. It is a special assessment to be levied upon land according to the availability of water. A levy on all property, both real and personal, without regard to special benefits, is a tax; but a levy made only upon land on the basis of benefits received is a special assessment and not a tax. (Cedars of Lebanon Hosp. v. County of L.A., 35 Cal.2d 729, 747"748, 221 P.2d 31, 15 A.L.R.2d 1045; Northwestern Etc. Co. v. St. Bd. Equal., 73 Cal.App.2d 548, 553, 166 P.2d 917.) Nor is the classification affected by the method provided for the collection of the assessment. (Cedars of Lebanon Hosp., supra, 35 Cal.2d p. 748, 221 P.2d 31.) Thus, the fact that section 11.5 of the Act provides that unpaid standby charges "shall be added to and become part of the annual tax levied upon the land" and "shall constitute a lien on that land, and shall be added to and become a part of the first installment of the tax" does not make the standby charge a tax. | A levy on all property, both real and personal, without regard to special benefits is a "tax;" but a levy made only upon land on basis of benefits received is a "special assessment" and not a tax. | Is a levy on all property both real and personal without regard to special benefits a tax? | Taxation - Memo # 709 - C - CK.docx | ROSS-003330572-ROSS-003330573 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6871 | Sabatino v. LaSalle Bank, N.A., 96 S.W.3d 113 | 401+5.1 | This court in Dickenson Manor, Inc. v. Slagle, noted that the phrase "whereby the title may be affected" in " 508.030 has been held to mean the judgment must operate directly upon the title to the real estate. 732 S.W.2d 263, 265 (Mo.App.W.D.1987). In order for "title to be affected" so as to predicate venue in the county where the land is located, title to the land must be the subject of the controversy. It is not enough for the judgment to affect the title incidentally or collaterally. State ex rel. S. Mo. Pine Lumber Co. v. Dearing, 180 Mo. 53, 79 S.W. 454, 457 (1904) (holding that a prayer for relief from promissory notes and an injunction against foreclosure under the deed of trust securing the notes did not subject the case to the mandatory venue provisions of 564, R.S. 1899, a predecessor to current " 508.030, because the action was not one whereby title to real estate may be "affected," as provided for in that statute). | In order for "title to be affected," so as to predicate venue in the county where the land is located, title to the land must be the subject of the controversy; it is not enough for the judgment to affect the title incidentally or collaterally. V.A.M.S. S 508.030. | "For the title to be affected, so as to predicate venue in the county where the land is located, is it required that the land is the subject of the controversy?" | Venue - Memo 92 - JS.docx | ROSS-003330625-ROSS-003330626 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6872 | Interstate Scaffolding v. Illinois Workers' Comp. Comm'n, 236 Ill. 2d 132 | 413+2 | We have reviewed the appellate court judgment and find that neither the majority nor the dissent has reached the correct conclusion on the issue before this court. It is important to remember that worker's compensation is a statutory remedy and the Workers' Compensation Commission, as an administrative agency, is without general or common law powers. See Flynn, 211 Ill.2d at 553, 286 Ill.Dec. 62, 813 N.E.2d 119; Cassens Transport Co. v. Illinois Industrial Comm'n, 218 Ill.2d 519, 525, 300 Ill.Dec. 416, 844 N.E.2d 414 (2006). Accordingly, a claimant's entitlement to TTD benefits is governed by the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 2004)) and the Commission is limited to those powers granted by the legislature. Cassens Transport Co., 218 Ill.2d at 525, 300 Ill.Dec. 416, 844 N.E.2d 414. Any action taken by the Commission must be specifically authorized by statute. Cassens Transport Co., 218 Ill.2d at 525, 300 Ill.Dec. 416, 844 N.E.2d 414. | Worker's compensation is a statutory remedy and the Workers' Compensation Commission, as an administrative agency, is without general or common law powers. S.H.A. 820 ILCS 305/1 et seq. | "Is workers compensation a statutory remedy and is the workers compensation commission an administrative agency, without general or common law powers?" | 048036.docx | LEGALEASE-00143343-LEGALEASE-00143344 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6873 | Curtis v. G.E. Capital Modular Space, 155 S.W.3d 877 | 413+2 | As previously noted, the workers' compensation system is purely a creature of statutory construct, with the rights and responsibilities of the parties being derived solely from the statutes themselves. | The workers' compensation system is purely a creature of statutory construct, with the rights and responsibilities of the parties being derived solely from the statutes themselves. | "Is the workers compensation system a creature of statutory construct, and where are the rights and responsibilities of the parties solely derived from?" | 048135.docx | LEGALEASE-00142092-LEGALEASE-00142093 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |
| 6874 | Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713 | 25T+182(1) | However, even though the no-waiver clause argument is preserved, Hartmann wrongly concludes that the district court's failure to address the issue requires remand. "[T]he presence of [a] "no waiver" clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration." S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 86 (2d Cir.1998), cert. denied, 528 U.S. 1058, 120 S.Ct. 629, 145 L.Ed.2d 506 (1999). This makes sense because "to allow the "no waiver" clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings" and allow parties to "test[ ] the water before taking the swim" by delaying assertion of their right to arbitration until the litigation is nearly complete. Id. (citation and internal quotation marks omitted); accord Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 452"53 (3d Cir.2011); Republic Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 348"49 (5th Cir.2004). Given that the alleged no-waiver provision in the Sourcing Agreement was not potentially determinative, Hartmann's argument that the district court's failure to address the issue requires remand is without merit. | The presence of a "no waiver" clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration; to allow the "no waiver" clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings and allow parties to "test the water before taking the swim" by delaying assertion of their right to arbitration until the litigation is nearly complete. | Will the presence of a no waiver clause alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration? | Alternative Dispute Resolution - Memo 701 - RK.docx | ROSS-003301441-ROSS-003301442 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6875 | Knox v. United States, 200 F.2d 398 | 34+20.8(1) | So far as we are aware it is the uniform view of the courts passing on the subject that failure to accord a registrant the procedural rights provided by the Regulations invalidates the action of the draft board. As to failure to observe the requirements of Sec. 1624.2 here involved, see United States v. Stiles, 3 Cir., 169 F.2d 455; Martin v. United States, 4 Cir., 190 F.2d 775. With the above view of the law we are in accord. We are also in full agreement with the limitations on that principle expressed by Judge Parker in the Martin case, supra, namely that procedural irregularities or omissions which do not result in prejudice to the registrant are to be disregarded. | Failure to accord a registrant the procedural rights provided by Selective Service Regulations invalidates action of draft board. Selective Service Act of 1948, S 12, 50 U.S.C.A.Appendix, S 462. | Does the failure to accord a registrant procedural rights provided by Selective Service Regulations invalidate actions of the draft board? | 008685.docx | LEGALEASE-00144668-LEGALEASE-00144669 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6876 | United States v. Fisher, 442 F.2d 109 | 34+20.8(1) | In its brief, the Government concedes that the Selective Service System has an affirmative duty not to mislead and to give clear and correct information and advice when requested to do so. See United States v. Hosmer, 310 F.Supp. 1166, 1171 (S.D.Me. 1970), and cases cited therein. We also note that Local Board Memorandum No. 82, SSLR 2199, issued by the Director of Selective Service on March 6, 1967, and amended July 27, 1967, provides, in relevant part:"If the registrant desires to consult the Government Appeal Agent, he should notify the local board clerk, who will arrange a time and place for such a meeting." | Selective Service System has an affirmative duty not to mislead and to give clear and correct information and advice when requested to do so. | Does the Selective Service System have an affirmative duty not to mislead and to give clear and correct information and advice when requested to do so? | Armed Services - Memo 275 - RK.docx | ROSS-003287127-ROSS-003287128 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 6877 | United States v. Hosmer, 310 F. Supp. 1166 | 34+20.8(1) | Defendant's other defenses require only brief discussion. He argues that he was improperly denied the right to have counsel present at his "courtesy interview" on December 29, 1969. No regulation requires a Local Board to permit counsel to appear with a registrant at a courtesy interview. See Local Board Memorandum No. 41, November 30, 1951 (as amended July 30, 1968); cf. 32 C.F.R. " 1624.1(b). Moreover, the courts with virtual unanimity, have held that there is no Constitutional or statutory right to counsel in any Selective Service proceeding. United States v. Tantash, 409 F.2d 227, 228 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2115, 23 L.Ed.2d 754 (1969); Haven v. United States, 403 F.2d 384, 385 (9th Cir.), cert. denied, 393 U.S. 1114, 89 S.Ct. 926, 22 L.Ed.2d 120 (1969); United States v. Dicks, 392 F.2d 524, 528 (4th Cir. 1968); Nickerson v. United States, 391 F.2d 760, 762 (10th Cir.), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968); United States v. Capson, 347 F.2d 959, 962-963 (10th Cir. 1965); United States v. Mendoza, 295 F.Supp. 673, 683-684 (E.D.N.Y. 1969). See Hershey, Legal Aspects of Selective Service, 33 n. 95 (1969). Contra, United States v. Weller, 309 F.Supp. 50 (N.D.Cal. Sept. 19, 1969). Defendant asserts that the Selective Service System has an affirmative duty, and a continuing obligation, to inform a registrant of all possible claims for exemption and deferment to which he might be entitled.It is settled in this Circuit, as elsewhere, that the Selective Service System is under no affirmative obligation to provide a registrant with "free advice and assistance either in preparing questionnaires and forms for submission to his local draft board or with respect to other matters relating to his liabilities under the selective service law." Steele v. United States, 240 F.2d 142, 145 (1st Cir. 1956); Palmer v. United States, supra, 401 F.2d at 228; United States v. Ruel, supra. The only affirmative duty of a Selective Service official is not | Selective Service System is under no affirmative obligation to provide registrant with free advice and assistance either in preparing questionnaires and forms for submission to local draft board or with respect to other matters relating to his liabilities under selective service law; only affirmative duty on Selective Service official is not to mislead, and to give clear and correct information when requested to do so. | Does the Selective Service System have an affirmative duty not to mislead and to give clear and correct information and advice when requested to do so? | 008691.docx | LEGALEASE-00144676-LEGALEASE-00144677 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6878 | NCNB Texas Nat. Bank, N.A. v. West, 631 So. 2d 212 | 260+47 | Under the rule of capture, gas that migrates from one property to another is subject to recovery and possession by the holder of the gas estate on the property to which the gas migrates. The rule has been stated as follows:"The owner of a tract of land acquires title to the oil and gas which he produces from wells drilled thereon, though it may be proved that part of such oil and gas migrated from adjoining lands." | Under "rule of capture," gas that migrates from one property to another is subject to recovery and possession by holder of gas estate on property to which gas migrates. | "Under the rule of capture, is gas that migrates from one property to another subject to recovery and possession by the holder of the gas estate on the property to which the gas migrates?" | Mines and Minerals - Memo #182 - C - CSS.docx | ROSS-003288911-ROSS-003288912 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 6879 | Abrons Family Practice & Urgent Care, PA v. N. Carolina Dep't of Health & Human Servs., 792 S.E.2d 528 | 307A+554 | Judicial review of the final decision of a State agency is governed by the Administrative Procedure Act (APA), N.C. Gen. Stat. " 150B"1 et seq., which applies to "both trial and appellate court review of administrative agency decisions." N.C. Dept. of Correction v. Myers, 120 N.C.App. 437, 440, 462 S.E.2d 824, 826 (1995). N.C. Gen. Stat. " 150B"43 (2015) states in relevant part that "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article[.]" "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." Johnson v. Univ. of N.C., 202 N.C.App. 355, 357, 688 S.E.2d 546, 548 (2010) (internal quotations omitted). "[T]he exhaustion requirement may be excused if the administrative remedy would be futile or inadequate." Justice for Animals, Inc. v. Robeson Cty., 164 N.C.App. 366, 372, 595 S.E.2d 773, 777 (2004) (citing Huang v. N.C. State University, 107 N.C.App. 710, 715, 421 S.E.2d 812, 815 (1992)). | An action is properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. N.C. Gen. Stat. Ann. S 150B-43; N.C. R. Civ. P. S 1A-1. | Is an action properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies? | Pretrial Procedure - Memo # 5549 - C - ES.docx | ROSS-003302319-ROSS-003302320 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6880 | Sudersan v. Royal, 386 N.J. Super. 246 | 307A+554 | In New Jersey, the trial court has jurisdiction to enter a judgment of possession only if the landlord can demonstrate one of the statutorily enumerated "good cause" grounds for eviction. N.J.S.A. 2A:18"61.1; see also Franklin Tower One, L.L.C. v. N.M., 304 N.J.Super. 586, 592, 701 A.2d 739 (App.Div.1997), affd, 157 N.J. 602, 725 A.2d 1104 (1999). A landlord has the burden of proving "good cause," Vill. Bridge Apts v. Mammucari, 239 N.J.Super. 235, 240, 570 A.2d 1301 (App.Div.1990), and the failure to meet this burden "is sufficient ground to warrant dismissal for lack of jurisdiction."Marini v. Ireland, 56 N.J. 130, 138, 265 A.2d 526 (1970). | A residential landlord has the burden of proving good cause for eviction, and the failure to meet this burden is sufficient ground to warrant dismissal of a summary dispossess action, for lack of jurisdiction. N.J.S.A. 2A:18-61.1. | Does a landlord has the burden of proving good cause and does the landlords failure to meet the burden warrant dismissal for lack of jurisdiction? | 033036.docx | LEGALEASE-00143745-LEGALEASE-00143746 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 6881 | Urbanowicz v. Planning & Zoning Comm'n of Town of Enfield, 87 Conn. App. 277 | 106+37(2) | We begin by addressing our standard of review. "A party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings." (Internal quotation marks omitted.) Berlin Batting Cages, Inc. v. Planning & Zoning Commission, 76 Conn.App. 199, 203, 821 A.2d 269 (2003). Whether the court has subject matter jurisdiction is a question of law to which the plenary standard of review applies. Brookridge District Assn. v. Planning & Zoning Commission, 259 Conn. 607, 611, 793 A.2d 215 (2002). Our decision is controlled by the relevant statutes. Statutory construction also is a question of law, requiring plenary review. Tighe v. Berlin, 259 Conn. 83, 89, 788 A.2d 40 (2002). | A party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings. | Can a party challenge a court's subject matter jurisdiction at any time? | Pretrial Procedure - Memo # 5766 - C - NS.docx | ROSS-003315940-ROSS-003315941 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 6882 | Brigham v. Abbott, 21 Vt. 455 | 307A+74 | A deposition, taken without notice, to be used before auditors, may be received in evidence by the auditor, although not having been on file in court 30 days, as required in case of depositions taken to be used in the county court.This is an action of book account. We think the deposition of Burnham, taken, to be used before the auditors, without notice, and without filing in court thirty days, as required by statute, where depositions are taken to be used in the county court, was properly received. Such has long been the practice in the county court, and we think the question has been decided in this court, if not reported. | A deposition, taken without notice, to be used before auditors, may be received in evidence by the auditor, although not having been on file in court 30 days, as required in case of depositions taken to be used in the county court. | "Can a deposition to be used before auditors, taken without notice, be received in evidence by the auditor?" | 033047.docx | LEGALEASE-00143844-LEGALEASE-00143845 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 6883 | Hipp v. Huchett, 4 Tex. 20 | 307A+726 | Applications for continuances have been held by the courts in some of the States to be addressed to the discretion of the court, and their action on such applications is not the subject of revision. This doctrine has but a partial sanction in our decisions. For the first and second applications the statute has prescribed sufficiently certain and definite rules to guide judicial action, and these can no more be disregarded than other positive and ascertained rules of law; and the rulings of the courts upon them are the proper subjects of review. (Hipp v. Bissell, 3 Tex. R., 18.) But the Legislature has not defined the requisites of a third application; and we may well hold, as a general rule, that it is addressed to the discretion of the court, to be guided in its judicious exercise by the nature of the case, the circumstances under which the application is made, and the object to be attained, viz, the fair as well as speedy trial of the cause. (Harp. R., 111.).There might, perhaps, be circumstances under which a refusal to grant a continuance would, even on a third application, operate such flagrant injustice as to induce its reversal by a superintending tribunal; but they would rarely arise, and are not to be found in this case. | There may be circumstances under which a refusal to grant a continuance on a third application would operate such flagrant injustice as to induce its reversal. | Would there be circumstances under which a refusal to grant a continuance on a third application would operate as flagrant injustice as to induce its reversal? | 033053.docx | LEGALEASE-00143890-LEGALEASE-00143891 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 6884 | Subaru of Am. v. David McDavid Nissan, 84 S.W.3d 212 | 307A+690 | Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. Cash Am., 35 S.W.3d at 15. Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. See Texas Educ. Agency v. Cypress"Fairbanks Indep. Sch. Dist., 830 S.W.2d 88, 90 (Tex.1992); Texas State Bd. of Examiners in Optometry v. Carp, 162 Tex. 1, 343 S.W.2d 242, 246 (1961). But because such dismissal does not implicate the claims' merits, the trial court must dismiss the claims without prejudice. See Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999); Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 104 (Tex.1962). When exhaustion is required, courts have only limited review of the administrative action. Cash Am., 35 S.W.3d at 15. | If an agency has exclusive jurisdiction and a party must exhaust all administrative remedies before seeking judicial review, the trial court lacks subject matter jurisdiction and must dismiss the claims without prejudice. | Does a litigant's failure to exhaust all administrative remedies before seeking judicial review deprive the court of subject matter jurisdiction over claims within an agencys exclusive jurisdiction? | 033058.docx | LEGALEASE-00143941-LEGALEASE-00143942 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6885 | Schneider v. Spaeth, 133 So. 3d 1167 | 307A+746 | The requisite written finding of willfulness is, in part, to provide assurance that "the trial judge has made a conscious determination that the noncompliance was more than mere neglect or inadvertence." Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990). "[N]o "magic words' are required but rather only a finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard." Id. Moreover, the trial court must include written findings supporting its ruling in the subject order, and "failure to do so constitutes reversible error." Petersen & Hawthorne, P.A. v. EMI Enters., Inc., 115 So.3d 1064, 1064 (Fla. 4th DCA 2013) (citation omitted); see also Kaufman ex rel. Yelnick v. FS Tenant Pool III Trust, 87 So.3d 1228, 1229 (Fla. 4th DCA 2012) (reversing a dismissal because the order failed to contain a finding that the failure to appear was willful and contumacious); Giemme, 92 So.3d at 922 (reversing default and final judgment based on trial court's order, entered after defendants failed to appear at case management conference, because that order failed to make the requisite finding that defendants' conduct was willful and contumacious). | No magic words are required in an order entering a default based on a party's failure to attend a properly noticed case management conference, but rather only a finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard. West's F.S.A. RCP Rule 1.200(c). | "In the requisite written finding of wilfulness, are magic words required or only a finding that the conduct upon which the order is based was equivalent to wilfulness or deliberate disregard?" | Pretrial Procedure - Memo # 5816 - C - CK.docx | ROSS-003288091-ROSS-003288092 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6886 | Kreykes Elec. v. Malk & Harris, 297 Ill. App. 3d 936 | 307A+560 | We note that "[t]he rules of our supreme court are not aspirational. "They have the force of law, and the presumption must be that they will be obeyed and enforced as written." " Billerbeck v. Caterpillar Tractor Co., 292 Ill.App.3d 350, 353, 226 Ill.Dec. 563, 685 N.E.2d 1018, 1020 (1997), quoting Bright v. Dicke, 166 Ill.2d 204, 210, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995). As a rule, the trial court has broad discretion in granting or denying a motion brought under Rule 103(b) ( Marks v. Rueben H. Donnelly, Inc., 260 Ill.App.3d 1042, 1047, 201 Ill.Dec. 393, 636 N.E.2d 825, 829 (1994)), and this court will not disturb the trial court's ruling absent an abuse of that discretion (Stash v. Doll, 223 Ill.App.3d 662, 663, 166 Ill.Dec. 72, 585 N.E.2d 1094, 1096 (1992)). | Trial court has broad discretion in granting or denying a motion to dismiss for lack of diligence in obtaining service, and Appellate Court will not disturb the trial court's ruling absent an abuse of that discretion. Sup.Ct.Rules, Rule 103(b). | Does a trial court have broad discretion in granting or denying a motion to dismiss for lack of diligence in obtaining service? | 033636.docx | LEGALEASE-00144027-LEGALEASE-00144028 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6887 | Velocity Investments v. McCaffrey, 31 Misc. 3d 308 | 307A+560 | CPLR 308(4) requires the affixing and the mailing to be done within 20 days of each other. Failure to mail the summons and complaint to the defendant within 20 days of affixing is a jurisdictional defect mandating dismissal. New York State Higher Education Services Corp. v. Palmeri, 167 A.D.2d 797, 563 N.Y.S.2d 358 (3rd Dept.1990); and Stanley Agency, Inc. v. Behind The Bench, Inc., 23 Misc.3d 1107(A), 885 N.Y.S.2d 713 (Sup.Ct. Kings Co.2009). | Failure to mail summons and complaint to defendant within 20 days of affixing is jurisdictional defect mandating dismissal. | "Does the failure to mail summons and complaint to defendant within 20 days of affixing a jurisdictional defect, mandate dismissal?" | 033656.docx | LEGALEASE-00144103-LEGALEASE-00144104 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6888 | Branscum v. Catherine , 759 So. 2d 234 | 307A+752 | Although, a trial judge has great discretion in deciding whether to receive or refuse testimony objected to on the grounds of failure to abide by the pre-trial order, any doubt must be resolved in favor of receiving the information. Curry v. Johnson, 590 So.2d 1213, 1216, (La.App. 1 Cir.1991). Moreover, the trial court is given express authority by La. C.C.P. art. 1551 to modify pre-trial orders to prevent "manifest injustice." Neff v. Rose, 546 So.2d 480, 483 (La.App. 4 Cir.1989). "While pre-trial orders assist the trial court in the orderly management of its cases, La. C.C.P. art. 1551 does not authorize severe limitation of party rights for the technical, though justifiable, violation of a pre-trial order." | Although a trial judge has great discretion in deciding whether to receive or refuse testimony objected to on the grounds of failure to abide by the pre-trial order, any doubt must be resolved in favor of receiving the information. | "Although pretrial orders assist the trial court in the orderly management of its cases, severe limitation of a party rights for the technical, is violation of a pretrial order not authorized?" | 034230.docx | LEGALEASE-00144747-LEGALEASE-00144748 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 6889 | Armstrong v. Elmore, 990 S.W.2d 62 | 30+19 | "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." State ex rel. Wilson v. Murray, 955 S.W.2d 811, 812"813 (Mo.App. W.D.1997). When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. Chastain, 968 S.W.2d at 237. "Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered merely becomes a hypothetical opinion."Gilroy"Sims and Assoc. v. City of St. Louis, 697 S.W.2d 567, 569 (Mo.App. E.D.1985). | The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction, and, when an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. | Will a case be moot and be dismissed when an event occurs that makes a court's decision unnecessary? | Pretrial Procedure - Memo # 6661 - C - NS.docx | ROSS-003291417 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 6890 | Bryant v. Mezo, 226 So. 3d 254 | 307A+563 | Fraud upon the court occurs when the evidence clearly and convincingly shows a party schemed to interfere with the court's ability to impartially adjudicate by intentionally hampering the presentation of the opposing party's defense. Herman v. Intracoastal Cardiology Ctr., 121 So.3d 583, 588 (Fla. 4th DCA 2013). Where repeated fabrications undermine the integrity of a party's entire case, a dismissal for fraud upon the court is proper. Id. | Where repeated fabrications undermine the integrity of a party's entire case, a dismissal for fraud upon the court is proper. | "Where repeated fabrications undermine the integrity of a party's entire case, is a dismissal for fraud upon the court proper?" | Pretrial Procedure - Memo # 6761 - C - SK.docx | ROSS-003316340 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 6891 | Trusclair v. McGowan Working Partners, 2009 Ark. 203 | 307A+560 | If a motion to extend is made within 120 days of the filing of the suit, the time for service may be extended by the court upon a showing of good cause." Ark. R. Civ. P. 4(i) (2008). By its plain language, which we have strictly construed, Rule 4(i) requires that service of process be accomplished within 120 days after the filing of the complaint unless the plaintiff has filed a motion to extend time prior to the expiration of the deadline. Smith v. Sidney Moncrief Pontiac, Buick, GMC Co., 353 Ark. 701, 120 S.W.3d 525.If service is not obtained within that time and no timely motion to extend is made, dismissal of the action is mandatory. Id. Appellant did not accomplish service of valid process within 120 days after the filing of the complaint or move for an extension within that period. Thus, the dismissal of Appellant's complaint was mandatory. | Dismissal of plaintiff's action was mandatory, where summons misstated the time in which defendant, a foreign corporation, was required to respond, and no motion to extend was made within 120 days of filing of the complaint. Rules Civ.Proc., Rule 4(b, h, i). | Is it mandatory for the trial court to dismiss the action without prejudice if service is not made within 120 days of filing the complaint and no motion to extend is timely made? | 034469.docx | LEGALEASE-00143919-LEGALEASE-00143920 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6892 | Few v. Hammack Enterprises, 132 N.C. App. 291 | 307A+746 | We note that striking a party's answer is a severe sanction which should only be imposed where the trial court has considered less severe sanctions and found them to be inappropriate. See Triad Mack Sales & Service, 113 N.C.App. at 409, 438 S.E.2d at 488. | Striking a party's answer is a severe sanction which should be imposed only where the trial court has considered less severe sanctions and found them to be inappropriate. | Is striking a party's answer a severe sanction which should be imposed only where the trial court has considered less severe sanctions and found them to be inappropriate? | 034618.docx | LEGALEASE-00144305-LEGALEASE-00144306 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6893 | TeleVideo Sys. v. Heidenthal, 826 F.2d 915 | 170A+2415 | Appellant claims that the district court abused its discretion in striking his answer and entering a default judgment against him. We disagree. Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); Link v. Wabash R.R., 370 U.S. 626, 632, 82 S.Ct. 1386, 632, 8 L.Ed.2d 734 (1962); United States v. Moss-American, Inc., 78 F.R.D. 214, 216 (E.D.Wis.1978). Although the inherent powers have been criticized as "nebulous" see Eash v. Riggins Trucking, Inc., 757 F.2d 557, 561 (3d Cir.1985), they are necessary to enable the judiciary to function. See Michaelson v. United States, 266 U.S. 42, 65, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924) (recognizing the inherent power of the courts to punish for contempts as essential to the administration of justice). | Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abuse of litigation practices. | Do courts have inherent equitable powers to dismiss actions for abusive litigation practices? | 10870.docx | LEGALEASE-00094543-LEGALEASE-00094544 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6894 | Hagar v. Reclamation Dist. No. 108, 111 U.S. 701 | 371+2005 | The power of taxation possessed by the state may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the constitution of the United States. As said by this court: "It may touch property in every shape, in its natural condition, in its manufactured form, and in its transmutations. And the amount of the taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the federal constitution, the power of the state, as to the mode, form, and extent of taxation, is unlimited where the subjects to which it applies are within her jurisdiction." State Tax on Foreign-held Bonds, 15 Wall. 319. | The power of taxation possessed by a state may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the constitution of the United States. | Can the power of taxation possessed by a state be exercised upon any subject within its jurisdiction and to any extent? | Taxation - Memo # 755 - C - DHA.docx | ROSS-003317122-ROSS-003317123 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6895 | Mickens v. W. Prob. Det. Ctr., 244 Ga. App. 268 | 413+2 | The Workers' Compensation Act constitutes a complete code of laws upon the subject, and "[t]he recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits." In construing a statute, our goal is to ascertain its legislative intent and meaning. "Statutes should be read according to the natural and most obvious import of the language, without resort to subtle and forced constructions, for the purpose of either limiting or extending their operation." "When a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it but must construe it according to its terms." | The Workers' Compensation Act constitutes a complete code of laws upon the subject, and the recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits. O.C.G.A. S 34-9-1 et seq. | Why is the recovery of workers compensation benefits strictly a matter of statutory construction? | 048181.docx | LEGALEASE-00144205-LEGALEASE-00144206 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 6896 | Dunlap v. State Comp. Dir., 149 W. Va. 266 | 413+2 | It is quite true that workmen's compensation statutes,though in derogation of the common law, are to be liberally construed in order to promote their beneficent purposes. Kincannon v. State Compensation Commissioner, 107 W.Va. 533, pt. 2 syl., 149 S.E. 665; Morris v. State Compensation Commissioner, 135 W.Va. 425, 429, 64 S.E.2d 496, 498. It is true, nevertheless, that a claimant is entitled to receive benefits only in the manner and to the extent authorized by statute; and the director is without right or authority to pay or authorize the payment of benefits except to the extent that such right or authority is expressly conferred by statute. | Workmen's compensation claimant is entitled to receive benefits only in manner and to extent authorized by statute and director is without right or authority to pay or authorize payment of benefits except to extent that such right or authority is expressly conferred by statute. Code, 23-4-6. | How does the workmens compensation statute control the benefits received by a claimant? | 048198.docx | LEGALEASE-00144251-LEGALEASE-00144252 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 6897 | Liskey v. Oppenheimer & Co., 717 F.2d 314 | 25T+178 | The Dickinson court notes that the plaintiff's argument derives "from the "doctrine of intertwining" as primarily enunciated in a line of Fifth Circuit cases. Miley v. Oppenheimer & Co., 637 F.2d 318, 334"37 (5th Cir.1981); Sibley v. Tandy Corp., 543 F.2d 540 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977)" (parallel citations omitted). This doctrine is a judicially-created exception to the application of the Arbitration Act which instructs that when arbitrable and non-arbitrable claims are sufficiently intertwined factually and legally, a court should deny arbitration of the arbitrable claims and try all the claims together in federal court. See Dickinson, 661 F.2d at 643; Miley, 637 F.2d at 335; Cunningham v. Dean Witter Reynolds, Inc., 550 F.Supp. 578, 581 (E.D.Cal.1982).The Dickinson court observes that two reasons have been advanced to justify this judicially-created exception: preservation of exclusive jurisdiction over the non-arbitrable claim; and efficiency. 661 F.2d at 633"64. | "Doctrine of intertwining" is a judicially created exception to the application of the Arbitration Act which instructs that when arbitrable and nonarbitrable claims are sufficiently intertwined factually and legally, trial court should deny arbitration of arbitrable claims and try all the claims together in federal court. 9 U.S.C.A. S 1 et seq. | Is the doctrine of intertwining a judicially created exception to the application of the Arbitration Act? | 007770.docx | LEGALEASE-00146429-LEGALEASE-00146430 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6898 | Am. Bankers Ins. Grp. v. Long, 453 F.3d 623 | 25T+182(1) | One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." Int'l Paper, 206 F.3d at 417"18 (internal quotation marks omitted). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. at 418.] | In the arbitration context, a party may be equitably estopped from asserting that the lack of another's signature on a written contract precludes enforcement of the contract's arbitration clause when the party has consistently maintained that other provisions of the same contract should be enforced to benefit him. | Does the doctrine of equitable estoppel recognize if there is a lack of signature on a written contract by the party? | 007795.docx | LEGALEASE-00146458-LEGALEASE-00146459 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6899 | Corbridge v. Corbridge, 230 Ind. 201 | 285+267 | The issue presented here is the effect of the enlistment. "An enlistment is not a contract only, but effects a change of status." Morrissey v. Perry, 1890, 137 U.S. 157, 159, 11 S.Ct. 57, 34 L.Ed. 644, 645. "Upon enlistment of plaintiff's son and until his death he became entirely subject to the control of the United States in respect of all things pertaining to or affecting his service." United States v. Williams, 1937, 302 U.S. 46, 49, 50, 58, S.Ct. 81, 83, 82 L.Ed. 39, 42, 43. "When a minor enlists in the military service of this country, he ceases to be a part of his father's family, and puts himself under the control of the government, and is consequently emancipated so long as this service continues. * * *" Iroquois Iron Co. v. Industrial Comm., 1920, 294 Ill. 106, 109, 128 N.E. 289, 290, 12 A.L.R. 924. "The emancipation of a child competent to support itself discharges the parent from obligation for its support, although, if the child becomes unable to support itself, the father's duty revives." 39 Am.Jur 707, " 66. See also note 165 A.L.R. 750. | When a minor child enlists in the military service, he ceases to be a part of the father's family and puts himself under the control of the government and is consequently emancipated so long as such service continues. | "When a minor child enlists in the military service, is he consequently emancipated so long as such service continues?" | 008610.docx | LEGALEASE-00146531-LEGALEASE-00146532 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6900 | United States v. Harstad, 487 F.2d 565 | 34+20.8(4) | Since the board's action was authorized under section 1632.14, there is no need to examine the other arrow in its quiver, 32 C.F.R. " 1642,1 the one, if we can understand the government's discoursive brief, upon which it seems to depend. In sum, while the case is different, we find clearly apposite our language in Palmer v. United States, 401 F.2d 226 (9th Cir. 1963) at 227-228, "[A] registrant cannot, by refusing to submit to induction, impose upon the board any new duties respecting reclassification or reopening." Since there remained a continuing order, defendant cannot rely on Ehlert. It follows that the judgment of the district court must be affirmed. | A registrant cannot, by refusing to submit to induction, impose upon local board any new duties respecting reclassification or reopening. Military Selective Service Act, S 12(a), 50 U.S.C.A. App. S 462(a). | Can a registrant who refuses to submit to induction impose upon a board any new duties respecting reclassification or reopening? | 008697.docx | LEGALEASE-00146539-LEGALEASE-00146540 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6901 | United States v. Crozier, 987 F.2d 893 | 63+1(2) | Crozier argues that the court erred in limiting his cross-examination of alleged co-conspirator Zumbo, precluding him from eliciting details of prior conversations between Zumbo and Crozier under the rule of completeness and in order to rebut a government theory of recent fabrication. In his examination of Zumbo, Crozier sought to bolster a defense theory that he intended the payment to Coyne to be a loan rather than an outright gift. However, as we have held in connection with " 201, any payment that the defendant subjectively believes has value, including a loan, constitutes a thing "of value" within the meaning of " 666(c). United States v. Williams, 705 F.2d 603, 622"23 (2 Cir.), cert. denied, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); see also United States v. Gorman, 807 F.2d 1299, 1305 (6 Cir.1986) (finding loan to be thing "of value" under former 18 U.S.C. " 201(g), now id. " 201(c)(1)(B)), cert. denied , 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987). Thus, the issue of whether the payment was a gift or a loan is irrelevant to the question of Crozier's guilt or innocence in this case, and his evidentiary arguments consequently fail on the ground of relevance. | Any payment that defendant subjectively believes has value, including a loan, constitutes thing "of value" within meaning of federal bribery of an official statute. 18 U.S.C.A. SS 201, 201(c)(1)(B), 666(c); 18 U.S.C.(1958 Ed.Supp.IV) S 201(g). | "Does a loan constitute a thing of value within the meaning of bribery statute, if the defendant subjectively believes it has value?" | 012331.docx | LEGALEASE-00145828-LEGALEASE-00145829 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 6902 | Miley v. Louisiana Farm Bureau Cas. Ins. Co., 599 So. 2d 791 | 217+2661 | Whether a person is or is not a resident of a household is a question of law as well as a question of fact that is to be determined from the facts of each case. The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life. Andrade v. Shiers, 516 So.2d 1192, 1194 (La.App. 2nd Cir.1987). Moreover, whether a living arrangement renders persons "residents of the same household" is not solely dependent upon whether they are living under the same roof. The emphasis is on whether the person can be found to have "membership in a group rather than an attachment to a building." Residency is, in this respect, "a matter of intention and choice" rather than a matter of location. Bearden v. Rucker, 437 So.2d at 1121; Andrade v. Shiers, 516 So.2d at 1194. | For the purposes of determining whether person is resident of household within meaning of policy, intention of person to be resident of particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life. | How is the intention of a person to be a resident of a particular place determined? | 014504.docx | LEGALEASE-00145895-LEGALEASE-00145896 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 6903 | Texaco v. Newton & Rosa Smith Charitable Tr., 471 So. 2d 877 | 260+54(2) | The appellant is not entitled to establish by evidence outside of the public records any right to the disputed mineral right. Roemer v. Caplis, supra. Ownership of immovable property (which includes mineral rights) in dispute must be determined from the public records. A conveyance of land carries with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved. Roemer v. Caplis, supra. The public records did not establish there was a mineral servitude which affected appellees' property created in favor of the Charitable Trust by the March 5, 1976 conveyance. The 500 acres was acquired by appellees' ancestors in title free of a mineral reservation affecting the disputed mineral interest and this mineral interest was included as an element of ownership in appellees' chain of title and was included with the property when it was purchased by appellees. | Conveyance of land carries with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved. | "Does a conveyance of land carry with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved?" | 021434.docx | LEGALEASE-00145983-LEGALEASE-00145984 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6904 | Pullar v. Cappelli, 148 A.3d 551 | 307A+554 | For reasons that we explicated at length in Hall v. Kuzenka, 843 A.2d 474, 478 (R.I. 2004), a defendant may move to dismiss for lack of personal jurisdiction so long as the defendant previously raised that defense in an answer. See also Rule 12(b)(2); Collins v. Fairways Condominiums Association, 592 A.2d 147, 148 (R.I. 1991) ("A strict interpretation of the timing language [of Rule 12(b) ] leads to the conclusion that the court must deny any motion made after a responsive pleading as being too late. However, courts have allowed untimely motions if the defense has been previously included in the answer." (quoting 5C Wright & Miller, Federal Practice and Procedure: Civil 2d " 1361 at 445"46 (3d ed. 2016))).2 Therefore, to evade the jurisdictional reach of this state, a defendant must raise the defense in the answer. Hall, 843 A.2d at 478. | Defendant may move to dismiss for lack of personal jurisdiction so long as the defendant previously raised that defense in an answer. R.I. Super. Ct. R. Civ. P. 12(b)(2). | Must a defendant move to dismiss for lack of personal jurisdiction so long as the defendant previously raised that defense in an answer? | 033187.docx | LEGALEASE-00145282-LEGALEASE-00145283 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6905 | Caperton v. A.T. Massey Coal Co., 225 W. Va. 128 | 307A+554 | The dispositive issue in this case is whether the circuit court erred in denying the Massey Defendants' motion to dismiss on the issue of the forum-selection clause. "Courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure, " 12(b)(3)[5] at 376 (2d ed.2006). "This Court's review of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion." Syl. pt. 1, United Bank, Inc. v. Blosser, 218 W.Va. 378, 624 S.E.2d 815 (2005). | Courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue. | "Do courts generally consider a motion to dismiss, based upon a forum selection clause, as a motion to dismiss for improper venue?" | 033198.docx | LEGALEASE-00145196-LEGALEASE-00145197 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6906 | Gray v. Bryant, 189 N.C. App. 527 | 307A+552 | Defendant presents one issue for this Court's review: Whether the trial court erred in dismissing his complaint as frivolous. A claim "is frivolous if "a proponent can present no rational argument based upon the evidence or law in support of [it]." " Rhyne v. K-Mart Corp., 149 N.C.App. 672, 689, 562 S.E.2d 82, 94 (2002) (alteration in original) (quoting Black's Law Dictionary 668 (6th ed.1990)), affirmed, 358 N.C. 160, 594 S.E.2d 1 (2004). In determining whether a complaint is frivolous, the standard is not the same as in a ruling on a motion under Rule 12(b)(6). Richards v. State's Attorneys Office, 40 F.Supp.2d 534, 536 (D.Vt.1999). Instead, we " "look with a far more forgiving eye" in examining whether a claim rests on a meritless legal theory." Id. (citation omitted). We review such dismissals for abuse of discretion. N.C. Gen.Stat. " 1-110. | In determining whether a complaint is frivolous, the standard is not the same as in a ruling on a motion to dismiss for failure to state a claim; instead, a court looks with a far more forgiving eye in examining whether a claim rests on a meritless legal theory. | What is the standard in determining whether a complaint is frivolous? | Pretrial Procedure - Memo # 6671 - C - ES.docx | ROSS-003330279-ROSS-003330280 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 6907 | Chisolm v. Crook, 130 So. 2d 191 | 13+6 | We have held that if a case has become moot, or the judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment, the court will decline to consider the merits, and dismiss the case. Ex parte McFry, 219 Ala. 492, 122 So. 641. It is not the practice of courts to decide cases after the time when a judgment may be made effective; nor is it customary to decide questions after their decision has become useless, merely to ascertain who is liable for the costs. State ex rel. City of Prichard v. Jansen, 271 Ala. 104, 122 So.2d 736. | If case has become moot, or judgment would not accomplish an end recognized as sufficient in law, there is no necessity for judgment, and court will decline to consider merits and will dismiss case. | Will court decline to consider merits and dismiss case when case has become moot? | Pretrial Procedure - Memo # 6966 - C - BP.docx | ROSS-003289933-ROSS-003289934 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6908 | Holstein v. City of Chicago, 29 F.3d 1145 | 170B+2134 | Ordinarily, simply determining that a plaintiff's case is moot dictates that his claim must be dismissed for lack of subject matter jurisdiction. But mootness requirements are somewhat different where the plaintiff attempts to represent a class. If the district court has certified the class before the expiration of the plaintiff's claims, mootness is avoided. Geraghty, 445 U.S. at 398, 100 S.Ct. at 1209. Here, Grove cannot claim the benefit of this exception to the mootness doctrine because the district court did not certify the class; indeed, Grove did not even move for class certification prior to the evaporation of his personal stake. Grove, then, cannot avail himself of the class action exception to the mootness doctrine. | Where plaintiff did not even move for class certification prior to evaporation of his personal stake in suit, he could not avail himself of class action exception to mootness doctrine. | Can a plaintiff avail himself of the class action exception to the mootness doctrine when the named plaintiff has not even moved for class certification? | 034776.docx | LEGALEASE-00145348-LEGALEASE-00145349 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 6909 | Shipe v. Pub. Wholesale Water Supply Dist. No. 25, 289 Kan. 160 | 13+13 | This court has stated that standing is "one of the most amorphous concepts in the entire domain of public law. [Citation omitted.]" Harrison v. Long, 241 Kan. 174, 176, 734 P.2d 1155, appeal dismissed 484 U.S. 804, 108 S.Ct. 50, 98 L.Ed.2d 15 (1987); see Board of Sumner County Comm'rs v. Bremby, 286 Kan. 745, 750, 189 P.3d 494 (2008). Nevertheless, it is clear that if a party does not have standing to challenge an action or to request a particular type of relief, then "there is no justiciable case or controversy" and the suit must be dismissed. Kansas Bar Ass'n v. Judges of the Third Judicial Dist., 270 Kan. 489, 490, 14 P.3d 1154 (2000). We have also indicated that when a person who does not have standing to file suit asks for relief, it is tantamount to a request for an advisory opinion. 270 Kan. at 491, 14 P.3d 1154. Advisory opinions are an executive, not a judicial, power, and as a result Kansas courts do not have jurisdiction to issue an advisory opinion. State ex rel. Morrison, 285 Kan. at 885, 889"91, 898, 179 P.3d 366. | If a party does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy and the suit must be dismissed. | Should a suit be dismissed if a party does not have standing to challenge an action or to request a particular type of relief? | Pretrial Procedure - Memo # 6977 - C - RY.docx | ROSS-003289453-ROSS-003289454 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 6910 | Metro Transp. Co. v. Pennsylvania Pub. Util. Comm'n, 128 Pa. Cmwlth. 223 | 307A+552 | In Pennsylvania, to avoid dismissal for mootness, an actual case or controversy must exist at all stages of the administrative or judicial process. Pennsylvania Liquor Control Board v. Dentici, 117 Pa. Commonwealth Ct. 70, 542 A.2d 229 (1988). Furthermore, when a litigant lacks a necessary stake in the outcome, or when the court or agency is not able to grant effective relief, a case will be dismissed as moot. Al Hamilton Contracting Co. v. Department of Environmental Resources, 90 Pa. Commonwealth Ct. 228, 494 A.2d 516 (1985). Although a case is apparently moot, dismissal is not an absolute. If the issue raised is of a recurring nature, is of important public interest, or is capable of repeatedly avoiding review, the case will not be dismissed. Wilkes Barre Area Vocational School v. Greater Nanticoke Area School District, 115 Pa. Commonwealth Ct. 73, 539 A.2d 902 (1988). | Although case is apparently moot, dismissal is not an absolute, if the issue raised is of recurring nature, is of important public interest, or is capable of repeatedly avoiding review, case will not be dismissed. | Is dismissal of a case absolute if the issue raised is of recurring nature? | 034786.docx | LEGALEASE-00145430-LEGALEASE-00145431 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 6911 | Carolina Marina & Yacht Club v. New Hanover Cty. Bd. of Comm'rs, 207 N.C. App. 250 | 15A+1724(2) | Whenever, during the course of litigation, "it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with cause merely to determine abstract propositions of law." In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), cert. denied sub nom. Peoples v. Jud'l Standards Comm'n of N.C., 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). "Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action." Id. at 148, 250 S.E.2d at 912. "If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action." Id. (emphasis added). | If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Should an action be dismissed if the issues before a court or administrative body become moot at any time during the course of the proceedings? | Pretrial Procedure - Memo # 6982 - C - SK.docx | ROSS-003318418-ROSS-003318419 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6912 | DiGiovanni v. All-Pro Golf, 332 So. 2d 91 | 307A+552 | Proceeding now to the first of the two issues raised by appellant, we hold that the lower court erred in dismissing the appellant's counterclaim as sham for several reasons. First of all, a motion to dismiss as sham should be granted only upon the convergence of two factors: the absence of any genuine issues of material fact, and a pleading good on the surface but set up in bad faith. Admittedly, DiGiovanni's deposition, which was evidently the only source of evidence considered by the trial court, provides little if any factual support for the allegations of mismanagement set forth in the appellant's counterclaim. But there were other depositions in the court file at the time the motion to strike was heard which the lower court should have considered. For instance, Lavarini, who disbursed the proceeds of the $35,000 loan to the corporation, stated in her deposition that she examined the corporate books for August 1974 and could find no accounts payable book nor could she find any accounting whatsoever of the appellant's contribution to capital. She also observed entries for expenditures which she considered improper or extravagant. Additionally, Peterson admitted in his filed deposition to a lack of familiarity with such details as the amount of aggregate indebtedness of the corporation, the amount of interest payable on outstanding loans, the balance in the corporate checking account and whether the company had made or lost money since its inception. In short, there sufficient support in the total record to give color to the appellant's claims of mismanagement and breach of fiduciary duties on the part of Peterson. | Motion to dismiss as sham should be granted only upon convergence of two factors; absence of any genuine issues of material fact, and pleading good on surface but set up in bad faith. 31 West's F.S.A. Rules of Civil Procedure, rule 1.510(e). | On what factors should a motion to dismiss as sham be granted? | Pretrial Procedure - Memo # 7019 - C - DHA.docx | ROSS-003299556-ROSS-003299557 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 6913 | Cole v. Dep't of Corr., 726 So. 2d 854 | 307A+590.1 | "Record activity" is an "act reflected in the court file that was designed to move the case forward toward a conclusion on the merits or to hasten the suit to judgment." Barnett Bank of East Polk County v. Fleming, 508 So.2d 718, 720 (Fla.1987). In F.X. Smith v. Broward County, 654 So.2d 1297, 1298 (Fla. 4th DCA 1995), we held that a letter to the judge requesting a trial date is sufficient record activity to avoid dismissal. Similarly, in Wilcox v. Morse, 693 So.2d 91, 92 (Fla. 2d DCA 1997), the second district held that a notice of hearing also serves as sufficient activity to avoid the effect of a motion to dismiss under rule 1.420(e). See also Heinz v. Watson, 615 So.2d 750, 753 (Fla. 5th DCA), rev. denied, 624 So.2d 266 (1993); Gelb v. Miranda, 456 So.2d 548, 549 (Fla. 3rd DCA 1984). | "Record activity," sufficient to defeat dismissal of case for lack of prosecution, is an act reflected in the court file that was designed to move the case forward toward a conclusion on the merits or to hasten the suit to judgment. West's F.S.A. RCP Rule 1.420(e). | Is record activity sufficient to defeat dismissal of a case? | Pretrial Procedure - Memo # 7198 - C - SS.docx | ROSS-003289980-ROSS-003289981 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 6914 | Lampert Lumber Co. v. Joyce, 405 N.W.2d 423 | 307A+690 | This rule, however, is no help to Joyce. Rule 41.02(1) is designed to let the trial court manage its docket and eliminate delays and obstructionist tactics by use of the sanction of dismissal. If a party does not cooperate with the litigation process by failing to comply with the rules of procedure or an order of the court, the judge may dismiss the case with or without prejudice. See, e.g., Firoved v. General Motors Corp., 277 Minn. 278, 152 N.W.2d 364 (1967) (trial court properly dismissed plaintiff's action under Rule 41.02(1) for refusal to proceed with trial as directed by the court, but dismissal, under the circumstances, should have been without prejudice). In other words, Rule 41.02(1) permits dismissal for trial management reasons, not for lack of substantive merits of a claim. | Trial court may dismiss case with or without prejudice upon party's failure to comply with rules of procedure or order of court. 48 M.S.A., Rules Civ.Proc., Rule 41.02(1). | Can a trial court dismiss a case with or without prejudice upon a party's failure to comply with rules of procedure or order of court? | 035180.docx | LEGALEASE-00145704-LEGALEASE-00145705 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6915 | Puget Sound Power & Light Co. v. City of Seattle, 271 F. 958 | 307A+552 | There doubtless is a question as to the propriety of considering the showing made by the affidavit on a motion to dismiss the bill; but, if the cause has become entirely moot by the payment of the installment of interest due March 1st, in the interests of the public and the court, it would be the latter's duty to consider such a question at any stage of the proceeding, however presented or suggested, and, if it is certain that only a moot question remains, to dismiss the suit in order to devote the time and effort which would be required for its consideration to other public business. | Though there is a question as to the propriety of considering an affidavit on motion to dismiss the bill, a suit should be dismissed in the interests of the public and the court whenever the controversy has become moot, regardless of how that issue is presented or suggested. | Should a suit be dismissed in the interests of the public and the court whenever the controversy has become moot? | 035200.docx | LEGALEASE-00145784-LEGALEASE-00145785 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 6916 | Lampert Lumber Co. v. Joyce, 405 N.W.2d 423 | 307A+581 | This rule, however, is no help to Joyce. Rule 41.02(1) is designed to let the trial court manage its docket and eliminate delays and obstructionist tactics by use of the sanction of dismissal. If a party does not cooperate with the litigation process by failing to comply with the rules of procedure or an order of the court, the judge may dismiss the case with or without prejudice. See, e.g., Firoved v. General Motors Corp., 277 Minn. 278, 152 N.W.2d 364 (1967) (trial court properly dismissed plaintiff's action under Rule 41.02(1) for refusal to proceed with trial as directed by the court, but dismissal, under the circumstances, should have been without prejudice). In other words, Rule 41.02(1) permits dismissal for trial management reasons, not for lack of substantive merits of a claim. | Rule permitting trial court to dismiss action or claim for failure to prosecute or failure to comply with rules or order of court permits dismissal for trial management reasons, not for lack of substantive merits of claim. 48 M.S.A., Rules Civ.Proc., Rule 41.02(1). | Does the rule permitting trial court to dismiss action or claim for failure to prosecute or failure to comply with rules or order of court permit dismissal for trial management reasons? | 035246.docx | LEGALEASE-00145952-LEGALEASE-00145954 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 6917 | Sheen v. The Time Inc. Magazine Co., 817 So. 2d 974 | 307A+590.1 | The case law interpreting rule 1.420(e) makes it clear that not every document filed in a case qualifies as record activity. See Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992); Otero v. Gastroenterology Group of South Florida, P.A., 710 So.2d 148, 149 (Fla. 3d DCA 1998); Heinz v. Watson, 615 So.2d 750 (Fla. 5th DCA 1993); Caldwell v. Mantei, 544 So.2d 252 (Fla. 2d DCA 1989); Boeing Co. v. Merchant, 397 So.2d 399, 402 (Fla. 5th DCA 1981). This is because for purposes of rule 1.420(e), "[r]ecord activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Toney, 600 So.2d at 1100. Under this definition of record activity, documents filed of record concerning discovery may, but do not always, constitute sufficient record activity.2 See Anthony v. Schmitt, 557 So.2d 656, 659 (Fla. 2d DCA 1990), approved by, Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991). | "Record activity" must be more than mere passive effort to keep the case on the docket, for purposes of rule governing dismissal of actions for failure to prosecute; the activity must constitute an affirmative act calculated to hasten the suit to judgment. West's F.S.A. RCP Rule 1.420(e). | Can every document filed in court file qualify as record activity for purposes of tolling a one year time limitation for prosecuting action? | 035261.docx | LEGALEASE-00145985-LEGALEASE-00145986 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6918 | Cunha v. Anglo California Nat. Bank of San Francisco, 34 Cal. App. 2d 383 | 307A+552 | It is not necessary, however, to resort to an affirmative action in equity to accomplish the purpose. "The more usual course in modern times, especially in this state, has been to grant the same relief on motion as might be obtained on formal suit." Lowber v. Mayor, etc., of City of New York, 5 Abb.Prac. 325. There seems to be no doubt of the inherent power of the court, in the absence of any statute on the subject, to dismiss or perpetually stay groundless, vexatious, and harassing litigations." In some of the cases which we have cited the conduct complained of consisted of acts done in different independent actions, in others some acts were done in the pending action and some acts were done in other actions, and in still other instances the conduct was done in the pending action. | Court has inherent power, in absence of any statute to dismiss or perpetually stay groundless, vexatious, annoying, and harassing litigations. | "Does court have power, in absence of any statute to dismiss or perpetually stay groundless, vexatious, annoying, and harassing litigations?" | Pretrial Procedure - Memo # 7268 - C - KS.docx | ROSS-003288634-ROSS-003288635 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6919 | Hoag v. Amex Assurance Co., 953 A.2d 713 | 307A+583 | Superior Court Civil Rule 37(b)(2)(C) provides that if a party fails to obey an order to provide or permit discovery, the action may be dismissed as to the disobedient party. A court is also vested with inherent authority to dismiss a plaintiff's action for failure to prosecute or comply with its rules or orders. We review the sanction of a dismissal for abuse of discretion. | A court is vested with inherent authority to dismiss a plaintiff's action for failure to prosecute or comply with its rules or orders. | Is a court vested with inherent authority to dismiss a plaintiff's action for failure to prosecute or comply with its rules or orders? | 035321.docx | LEGALEASE-00146327-LEGALEASE-00146328 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 6920 | Chacha v. Transp. USA, 78 So. 3d 727 | 307A+583 | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed "a fraud on the court which permeates the entire proceedings." See McKnight v. Evancheck, 907 So.2d 699, 700 (Fla. 4th DCA 2005). In Arzuman v. Saud, 843 So.2d 950 (Fla. 4th DCA 2003), we explained:The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117"18. | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed a fraud on the court which permeates the entire proceedings. | Can a trial court dismiss a plaintiff's entire case when the party perpetrates a fraud on the court which permeates the entire proceedings? | Pretrial Procedure - Memo # 7319 - C - SN.docx | ROSS-003290030-ROSS-003290031 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 6921 | Isaacs v. Am. Iron & Steel Co., 690 N.W.2d 373 | 307A+552 | John Isaacs contends that the district court erred in denying relief under section 302A.751 (2002) by dismissing, as moot, his claim that the July 2002 election of directors violated American Iron's bylaws. The issue of whether a cause of action is moot is a legal issue, which we review de novo. In re McCaskill, 603 N.W.2d 326, 327 (Minn.1999). Generally, an issue may be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. State v. Rud, 359 N.W.2d 573, 576 (Minn.1984). | Issue generally may be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. | Will an issue be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief? | 035363.docx | LEGALEASE-00146024-LEGALEASE-00146025 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6922 | Comm'r Of Prob. v. Adams, 65 Mass. App. Ct. 725 | 307A+563 | In this case, vacating the 209A order against Adams is insufficient to protect the integrity of the courts and does not send an appropriate message to the public. Vacating the order leaves a record of the order in the system. See St.1992, c. 188, " 7. Not only does this leave a permanent mark against Adams, but it also leaves, in perpetuity, a record of a fraudulently obtained court order. Although labels such as "dismissed" or "closed" are applied to records in the system, no explanation is provided as to why the order was dismissed or the case closed. Many vacated 209A orders are vacated because of the victim's failure to prosecute. See Vaccaro v. Vaccaro, 425 Mass. at 158 n. 5, 680 N.E.2d 55. Law enforcement officials will not be notified that the order was vacated because it was obtained by fraud on the court. Rather, they may presume it was vacated because of the victim's failure to prosecute or because of insufficient evidence. The perpetuation of a fraud amounts to a defiling of the court itself when law enforcement officials rely on inaccurate information produced by the court. See Winthrop Corp. v. Lowenthal, 29 Mass.App.Ct. at 184, 558 N.E.2d 1138. | The perpetuation of a fraud on the court amounts to a defiling of the court itself when law enforcement officials rely on inaccurate information produced by the court. | Does the perpetuation of a fraud on the court amount to a defiling of the court itself when law enforcement officials rely on inaccurate information produced by the court? | 035387.docx | LEGALEASE-00145494-LEGALEASE-00145495 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6923 | Apostolis v. City of Seattle, 101 Wash. App. 300 | 307A+563 | CR 41(b) authorizes a trial court to dismiss an action for noncompliance with court orders. The court may impose such sanctions as it deems appropriate for unexcused violations of its scheduling orders. Dismissal is justified when a party acts in willful and deliberate disregard of reasonable and necessary court orders, the other party is prejudiced as a result, and the efficient administration of justice is impaired. Disregard of a court order without reasonable excuse or justification is deemed willful. | Dismissal of action is justified when a party acts in willful and deliberate disregard of reasonable and necessary court orders, the other party is prejudiced as a result, and the efficient administration of justice is impaired. CR 41(b). | "Is disregarding a trial court's order without reasonable excuse or justification deemed ""willful,"" for purposes of dismissing action as sanction for willful disregard of court order?" | 035463.docx | LEGALEASE-00145714-LEGALEASE-00145715 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 6924 | Ramey v. Haverty Furniture Companies, 993 So. 2d 1014 | 307A+682.1 | A trial court's decision concerning whether to dismiss a case for fraud on the court is subject to review under the abuse of discretion standard. Morgan, 816 So.2d at 253. We have, however, stated that in this context we apply "an abuse of discretion standard that is somewhat "narrowed." " Howard, 959 So.2d at 310 (quoting Jacob, 840 So.2d at 1168-69). This standard of review takes into account "the heightened clear-and-convincing-evidence standard regarding ... allegations of fraud." Howard, 959 So.2d at 312. For the trial court to properly exercise its discretion regarding dismissal of a case for fraud on the court, "it must have an evidentiary basis to make that decision." Howard, 959 So.2d at 312. "Trial court rulings are given less deference when" there is no evidentiary hearing and the trial court's decision is "based on the same cold document record that is before the reviewing court." Jacob, 840 So.2d at 1170. | For the trial court to properly exercise its discretion regarding dismissal of a case for fraud on the court, it must have an evidentiary basis to make that decision. | "For the trial court to properly exercise its discretion to dismiss a claim for fraud on the court, should there be an evidentiary basis to dismiss the case?" | Pretrial Procedure - Memo # 7401 - C - SHB.docx | ROSS-003289580-ROSS-003289581 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6925 | Medina v. Florida E. Coast Ry., L.L.C, 866 So. 2d 89 | 307A+563 | We recognize that a trial court has broad discretion when imposing sanctions arising from serious abuses of the judicial process. Tramel v. Bass, 672 So.2d 78, 82 (Fla. 1st DCA 1996). A trial court has the inherent authority to dismiss an action when it finds that a plaintiff has perpetrated a fraud on the court. Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998); Tri Star Invs., Inc. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981). However, due to the severity of dismissal as a sanction, it should only be employed in extreme circumstances, Cox, 706 So.2d at 46, and only after the plaintiff has been given fair notice and an opportunity to be heard. Sklandis v. Walgreen Co., 832 So.2d 942, 943 (Fla. 3d DCA 2002). | Due to the severity of dismissal as a sanction for a plaintiff's perpetration of a fraud on the court, it should only be employed in extreme circumstances, and only after the plaintiff has been given fair notice and an opportunity to be heard. | Should a sanction for a plaintiff's perpetration of a fraud on the court be employed only after the plaintiff has been given fair notice and an opportunity to be heard? | 035538.docx | LEGALEASE-00146252-LEGALEASE-00146253 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 6926 | Sheen v. The Time Inc. Magazine Co., 817 So. 2d 974 | 307A+590.1 | The case law interpreting rule 1.420(e) makes it clear that not every document filed in a case qualifies as record activity. See Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992); Otero v. Gastroenterology Group of South Florida, P.A., 710 So.2d 148, 149 (Fla. 3d DCA 1998); Heinz v. Watson, 615 So.2d 750 (Fla. 5th DCA 1993); Caldwell v. Mantei, 544 So.2d 252 (Fla. 2d DCA 1989); Boeing Co. v. Merchant, 397 So.2d 399, 402 (Fla. 5th DCA 1981). This is because for purposes of rule 1.420(e), "[r]ecord activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Toney, 600 So.2d at 1100. Under this definition of record activity, documents filed of record concerning discovery may, but do not always, constitute sufficient record activity. See Anthony v. Schmitt, 557 So.2d 656, 659 (Fla. 2d DCA 1990), approved by, Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991). | "Record activity" must be more than mere passive effort to keep the case on the docket, for purposes of rule governing dismissal of actions for failure to prosecute; the activity must constitute an affirmative act calculated to hasten the suit to judgment. West's F.S.A. RCP Rule 1.420(e). | Is a notice of deposition more than a mere passive effort to keep a suit on the docket? | 035580.docx | LEGALEASE-00146657-LEGALEASE-00146658 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 6927 | Gelb v. Miranda, 456 So. 2d 548 | 307A+590.1 | We are faced again with an interpretation of Florida Rule of Civil Procedure 1.420(e), which, for some reason, both counsel and trial judges appear to have trouble understanding. The interpretation is relatively simple. If sufficient record activity occurs during the one-year period preceding the motion to dismiss for failure to prosecute, then the motion should be denied. Collado v. C & C Cattle Co., 415 So.2d 901 (Fla. 3d DCA 1982); Florida East Coast Railway v. Russell, 398 So.2d 949 (Fla. 4th DCA), review denied, 411 So.2d 381 (Fla.1981); Biscayne Construction Co. v. Metropolitan Dade County, 388 So.2d 329 (Fla. 3d DCA 1980). | If sufficient record activity occurs during one-year period preceding motion to dismiss for failure to prosecute, then motion should be denied. West's F.S.A. RCP Rule 1.420(e). | "If sufficient record activity occurs during one-year period preceding motion to dismiss for failure to prosecute, should then the motion be denied?" | Pretrial Procedure - Memo # 7845 - C - TM.docx | ROSS-003286761-ROSS-003286762 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 6928 | Rainbow Ridge Resort v. Branch Banking & Tr. Co., 525 S.W.3d 252 | 307A+561.1 | In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief.See Ragsdale v. Hill, 37 Tenn.App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 1357, at 713"14 (3d ed. 2004). | For a motion to dismiss for failure to state a claim to be used as a vehicle to assert an affirmative defense, the applicability of the defense must clearly and unequivocally appear on the face of the complaint; in other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. Tenn. R. Civ. P. 12.02(6). | Can the plaintiff's own allegations in the complaint show that an affirmative defense exists which legally defeats the claim for relief? | 11385.docx | LEGALEASE-00094047-LEGALEASE-00094048 | SA, Sub | 0.16 | 0 | 0 | 1 | 1 | |
| 6929 | Leatherwood v. United Parcel Serv., 708 S.W.2d 396 | 413+2 | The benefits conferred by our Workers' Compensation Act are purely statutory, and the circumstances under which they are paid and the manner in which they are calculated depend solely upon statutory authority. T.C.A. " 50"6"101 et seq. (1983). | Benefits conferred by Workers' Compensation Act are purely statutory, and the circumstances under which they are paid and the manner in which they are calculated depends solely on statutory authority. T.C.A. S 50-6-101 et seq. | Does statutory authority solely determine the circumstances under which workers compensation benefits are paid and the manner in which they are calculated? | 048337.docx | LEGALEASE-00146649-LEGALEASE-00146650 | Condensed, SA | 0.07 | 0 | 1 | 0 | 1 | |
| 6930 | Patton v. Estate of Upchurch, 242 S.W.3d 781 | 307A+674 | Nevertheless, the Pattons argue that Ms. Albritton did not file a motion to dismiss; therefore, the Circuit Court did not have authority to dismiss their claim against her. However, Tennessee trial courts have the authority to dismiss a complaint sua sponte if such complaint fails to state a claim upon which relief may be granted, although such practice is not encouraged. Huckeby v. Spangler, 521 S.W.2d 568, 571 (Tenn.1975). Trial courts also have the authority to grant summary judgment sua sponte, but "only in rare cases and with meticulous care" when "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." Thomas v. Transport Ins. Co., 532 S.W.2d 263, 266 (Tenn.1976). | Trial courts have the authority to dismiss a complaint sua sponte if such complaint fails to state a claim upon which relief may be granted, although such practice is not encouraged. Rules Civ.Proc., Rule 12.02(6). | Does a trial court have authority to sua sponte dismiss a complaint with prejudice for failure to comply with orders of the court? | 10845.docx | LEGALEASE-00094325-LEGALEASE-00094326 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6931 | Stephen Slesinger v. Walt Disney Co., 155 Cal. App. 4th 736 | 307A+563 | Finally, contrary to SSI's contention, a court's exercise of inherent power to dismiss for misconduct need not be preceded by violation of a court order. The essential requirement is to calibrate the sanction to the wrong. Whether the misconduct violates a court order is relevant to the exercise of inherent power, but it does not define the boundary of the power. (See, e.g., Cummings, supra, 533 N.W.2d at p. 14 [witness tampering]; Aoude, supra, 892 F.2d at pp. 1118"1119 [fabrication of evidence and other acts constituting a "fraud on the court"].) The decision whether to exercise the inherent power to dismiss requires consideration of all relevant circumstances, including the nature of the misconduct (which must be deliberate and egregious, but may or may not violate a prior court order), the strong preference for adjudicating claims on the merits, the integrity of the court as an institution of justice, the effect of the misconduct on a fair resolution of the case, and the availability of other sanctions to cure the harm.19 (See, e.g., Aoude, supra, 892 F.2d 1115; Anheuser"Busch, supra, 69 F.3d at pp. 348"349.) We do not attempt to catalogue all the factors that must be considered in any particular case, except to emphasize that dismissal is always a drastic remedy to be employed only in the rarest of circumstances. We also do not attempt to catalogue the types of misconduct necessary to justify an exercise of the inherent power to dismiss, because "corrupt intent knows no stylistic boundaries." (Aoude, supra, 892 F.2d at p. 1118.) Rather, we hold only that when the plaintiff has engaged in misconduct during the course of the litigation that is deliberate, that is egregious, and that renders any remedy short of dismissal inadequate to preserve the fairness of the trial, the trial court has the inherent power to dismiss the action.20 Such an exercise of inherent authority is essential for every California court to remain " "a place where justice is judicially administered." " (Von Schmidt v. Widber | A court's exercise of inherent power to dismiss for misconduct need not be preceded by violation of a court order; the essential requirement is to calibrate the sanction to the wrong. | Should a court's exercise of inherent power to dismiss for misconduct not be preceded by violation of a court order? | Pretrial Procedure - Memo # 7043 - C - DA_58298.docx | ROSS-003282673-ROSS-003282675 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 6932 | S. Wine & Spirits of Illinois v. Steiner, 2014 IL App (1st) 123435 | 307A+561.1 | A section 2"619 motion admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim.Capeheart v. Terrell, 2013 IL App (1st) 122517, 11, 374 Ill.Dec. 810, 996 N.E.2d 257. The question on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. Id. We review a trial court's dismissal under section 2"619 of the Code de novo (Porter v. Decatur Memorial Hospital, 227 Ill.2d 343, 352, 317 Ill.Dec. 703, 882 N.E.2d 583 (2008)), noting that, even if the court dismissed on an improper ground, we may affirm the dismissal on any proper basis presented by the record. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill.2d 248, 262, 282 Ill.Dec. 815, 807 N.E.2d 439 (2004) | A motion to dismiss based on certain defects or defenses admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. S.H.A. 735 ILCS 5/2-619. | "Can a motion to dismiss based on certain defects or defenses, admit the legal sufficiency of the plaintiff's claim?" | 11044.docx | LEGALEASE-00094633-LEGALEASE-00094634 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 6933 | Avon Hardware Co. v. Ace Hardware Corp., 2013 IL App (1st) 130750 | 307A+561.1 | A dismissal under section 2"619 of the Code is proper where the plaintiff's claim against the defendant is barred by an affirmative matter which avoids the legal effect of or defeats the claim. Schrager v. Bailey, 2012 IL App (1st) 111943, 18, 362 Ill.Dec. 536, 973 N.E.2d 932 (stating an affirmative matter is akin to a defense, negating the cause of action). "[I]t is recognized that a section 2"619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732(1993). We review a dismissal under section 2"619 de novo. Schrager, 2012 IL App (1st) 111943, 16, 362 Ill.Dec. 536, 973 N.E.2d 932. | An involuntary dismissal is proper where the plaintiff's claim against the defendant is barred by an affirmative matter which avoids the legal effect of or defeats the claim. S.H.A. 735 ILCS 5/2-619. | "Will a dismissal, where the plaintiff's claim against the defendant is barred by an affirmative matter which avoids the legal effect of or defeats the claim, be proper?" | Pretrial Procedure - Memo # 7876 - C - ES.docx | ROSS-003286799-ROSS-003286800 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 6934 | Fox v. State, 179 Ind. App. 267 | 36+7 | As the authorities indicate, it is the proximity to the dwelling and the Use in connection therewith For family purposes and the carrying on of domestic employment that are of major importance in determining whether an area or building is to be considered within the "curtilage" (i. e., part or parcel) of the dwelling house. This comports with the view that first degree arson is an offense against the security of habitation, rather than property. Jones v. State (1904), 70 Ohio St. 36, 70 N.E. 952. | It is the proximity to the dwelling and the use and connection therewith for family purposes in the carrying on of domestic employment that are of major importance in determining whether an area or building is to be considered within the "curtilage" or "part or parcel" of the dwelling house for purposes of the arson statute. (Per Shields, J., with one Judge concurring specially.) IC 35-16-1-1 (1976 Ed.). | Is arson an offense against the security of the habitation? | 06341.docx | LEGALEASE-00078424-LEGALEASE-00078425 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |
| 6935 | United States v. Jannotti, 673 F.2d 578 | 63+3 | The district court stressed the concern expressed by both Schwartz and Jannotti that the project be "legal" and "legitimate". As the evidence shows, Schwartz expressed concern that the hotel was not to be used for immoral purposes, and Jannotti was concerned that the hotel was not to be used for gambling. While the defendants' statements may indicate their unwillingness to support the project if it were to be used for such illegal purposes, either because they were interested in Philadelphia's welfare or because such use would become a matter of public knowledge, they fail to negate the permissible inference that both men knew they were acting improperly in accepting money in return for their support and influence. As this court has previously held, it is neither material nor a defense to bribery that "had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." United States v. Labovitz, 251 F.2d 393, 394 (3d Cir. 1958). Judge Hastie, writing for the court, set forth the rationale for that holding: It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions. Therefore, society deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in official decision. Id. | It is neither material nor a defense to bribery that had there been no bribe, public official might, on the available data, lawfully and properly have made the very recommendation that the briber wanted him to make. | "Is it a defense to bribery that, had there been no bribe, the public official might have lawfully performed the defendant's requested action anyway?" | 012001.docx | LEGALEASE-00147642-LEGALEASE-00147643 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6936 | Brown v. Haight, 435 Pa. 12 | 260+73 | All these cases, while recognizing the principle that the lessee owns a fee interest in the gas and oil and in the land, do not state the extent of that fee interest. Therefore, none of these cases is support for the appellant's position. Smith v. Glen Alden Coal Co., 347 Pa. 290, 32 A.2d 227 (1943) and Shoemaker v. Lehigh Valley Coal Co., 16 Pa.Dist. & Co.R.2d 770 (1958), aff'd per curiam, 396 Pa. 100, 152 A.2d 477 (1959) both involve coal leases and both hold explicitly that a lessee's interest in a coal lease is a fee simple subject to a right of entry. Coal and oil and gas leases are traditionally interpreted differently because of the varied physical characteristics of the minerals involved. Even were this not so, we would not be persuaded by these cases because at issue in these cases was the problem whether the leases in question involved an interest in realty or personalty and not whether the leases were a fee simple determinable or subject to a condition subsequent. | Coal and gas and oil leases are traditionally interpreted differently because of varied physical characteristics of minerals involved. | Are coal and oil and gas leases traditionally interpreted differently because of the varied physical characteristics of the minerals involved? | 021572.docx | LEGALEASE-00147760-LEGALEASE-00147761 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 6937 | Sander v. Dow Chem. Co., 166 Ill. 2d 48 | 307A+690 | We also conclude that apart from Rule 219(c), a trial court, pursuant to its inherent authority, is empowered to dismiss a cause of action with prejudice for violations of court orders. This court has noted that a trial court's dismissal of a complaint with prejudice may be upheld on the basis of the court's inherent authority to control its docket. (Bejda v. SGL Industries, Inc. (1980), 82 Ill.2d 322, 328, 45 Ill.Dec. 113, 412 N.E.2d 464.) A court's power to dismiss for failure to prosecute a cause of action exists " "independent of any statute." " (Bejda, 82 Ill.2d at 329, 45 Ill.Dec. 113, 412 N.E.2d 464, quoting Epley v. Epley (1928), 328 Ill. 582, 585, 160 N.E. 113; see Village of Pawnee v. Knostman (1983), 115 Ill.App.3d 842, 849, 71 Ill.Dec. 393, 450 N.E.2d 1272, citing Bejda v. SGL Industries, Inc. (1980), 82 Ill.2d 322, 328, 45 Ill.Dec. 113, 412 N.E.2d 464.) The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets. See Nicholson v. Chicago Bar Association (1992), 233 Ill.App.3d 1040, 1045, 175 Ill.Dec. 118, 599 N.E.2d 1132. | Pursuant to its inherent authority, trial court is empowered to dismiss cause of action with prejudice for violations of court orders where record shows deliberate and continuing disregard for court's authority. | "Pursuant to its inherent authority, is a trial court empowered to dismiss a cause of action with prejudice for violations of court orders?" | 034971.docx | LEGALEASE-00147660-LEGALEASE-00147661 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6938 | Young v. Curgil, 358 So. 2d 58 | 307A+552 | The law is clear that a trial court has the inherent authority to dismiss actions based on fraud and collusion as well as to strike sham pleadings. Such a power is indispensible to the proper administration of justice because no litigant has a right to trifle with the courts. It is a power, however, which should be cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion or other similar wrongdoing. Rhea v. Hackney, 117 Fla. 62, 157 So. 190 (1934); Horjales v. Loeb, 291 So.2d 92 (Fla.3d DCA 1974); Parham v. Kohler, 134 So.2d 274 (Fla.3d DCA 1961). | Trial court has inherent authority to dismiss actions based on fraud and collusion as well as to strike sham pleadings; however, such power should be cautiously and sparingly exercised and only on the most blatant showing of fraud, pretense, collusion or other similar wrongdoing. | Does court have the authority to dismiss actions based on fraud and collusion and to strike sham pleadings? | 10886.docx | LEGALEASE-00094603-LEGALEASE-00094604 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 6939 | In re Estate of Zivin, 2015 IL App (1st) 150606 | 307A+686.1 | The coexecutors filed a motion for dismissal on the ground that because the school was not a trustee under the 1983 will, the school lacked standing to bring its own claim regarding the supposed trust. A section 2"619 motion to dismiss admits the legal sufficiency of the plaintiff's claim but asserts affirmative defenses or other matters that avoid or defeat the claim. Piser v. State Farm Mutual Automobile Insurance Co., 405 Ill.App.3d 341, 344, 345 Ill.Dec. 201, 938 N.E.2d 640, 646 (2010); 735 ILCS 5/2"619 (West 2012). Lack of standing is considered an affirmative defense within the meaning of section 2"619(a)(9). In re Estate of Schlenker, 209 Ill.2d 456, 461, 283 Ill.Dec. 707, 808 N.E.2d 995, 998 (2004); 735 ILCS 5/2"619(a)(9) (West 2012). | A motion for involuntary dismissal based upon certain defects or defenses admits the legal sufficiency of the plaintiff's claim but asserts affirmative defenses or other matters that avoid or defeat the claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss assert an affirmative defense or other matter that avoids or defeats the claim? | 035595.docx | LEGALEASE-00147549-LEGALEASE-00147550 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 6940 | Chin v. Meier, 235 Cal. App. 3d 1473 | 307A+590.1 | We hold that section 583.340 subdivision (c) tolling includes the aggregatetime a case is continued because of courtroom unavailability regardless of whether a reasonable time remains to bring the action to trial before the expiration of the five year limitation period. In the recent case of Rose v. Scott (1991) 233 Cal.App.3d 537, 541-542, 284 Cal.Rptr. 487, Division Three of the First District so held. We agree that the Law Revision Commission's comments compel this holding. A court-ordered continuance makes it impossibleor impractical for a plaintiff to proceed to trial. Such an occurrence is not reasonably within the plaintiffs control. (6 Witkin, Cal. Procedure (3d ed 1985) " 143, p. 447.) | Five-year period for compulsory civil trial is tolled by aggregate period of court ordered continuances based on courtroom unavailability, regardless of whether reasonable time remains to bring action to trial before expiration of limitation period. West's Ann.Cal.C.C.P. SS 583.310, 583.340, 583.340(c), 583.360. | Is the aggregate time which case is continued because of unavailability of courtroom included in a tolling period? | Pretrial Procedure - Memo # 7497 - C - RF_57535.docx | ROSS-003309004 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 6941 | Dick Poe Motors v. DaimlerChrysler Corp., 169 S.W.3d 478 | 307A+694 | Dismissal of a case with prejudice functions as a final determination on the merits. Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999) (per curiam). A dismissal for want of prosecution is not a trial on the merits, and therefore dismissal with prejudice is improper. Maldonado v. Puente, 694 S.W.2d 86, 92 (Tex.App.-San Antonio 1985, no writ). An order of dismissal for want of prosecution is not an adjudication of the rights of the parties; rather, it simply places the parties in the position they were in prior to filing the suit. Melton v. Ryander, 727 S.W.2d 299, 303 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). | An order of dismissal for want of prosecution is not an adjudication of the rights of the parties; rather, it simply places the parties in the position they were in prior to filing the suit. | "Should an order of dismissal for want of prosecution, place the parties in the position they were in prior to filing the suit?" | Pretrial Procedure - Memo # 7700 - C - NS.docx | ROSS-003313454-ROSS-003313455 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 6942 | Suckow v. Boone State Bank & Tr. Co., 314 N.W.2d 421 | 307A+46 | A comparison of the two classes of cases set out above makes it clear that dismissal is a discovery sanction generally used when a party has violated a trial court's order. See Zimmerman, 256 Iowa at 194-95, 125 N.W.2d at 825. When no trial court order has been disobeyed, a lesser sanction may be indicated. It was an abuse of discretion to dismiss plaintiffs' petition under this record. Therefore, the order dismissing the petition is reversed and the case remanded for further proceedings consistent with this opinion, including consideration of other appropriate discovery sanctions. R. E. Morris Investments, Inc., v. Lind, 304 N.W.2d 189, 192 (Iowa 1981). | Dismissal is a discovery sanction generally used when a party has violated a trial court's order, but when no court order has been disobeyed, a lesser sanction may be indicated. Rules Civ.Proc., Rule 134(d). | Is dismissal a discovery sanction generally used when a party has violated a trial court's order? | Pretrial Procedure - Memo # 7711 - C - DA.docx | ROSS-003286565-ROSS-003286566 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6943 | Trzop v. Hudson, 2015 IL App (1st) 150419 | 307A+561.1 | "A motion to dismiss, pursuant to section 2"619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006); Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). For a section 2"619 dismissal, our standard of review is de novo. Solaia Technology, 221 Ill.2d at 579, 304 Ill.Dec. 369, 852 N.E.2d 825. De novo review means that we will perform the same analysis a trial court would perform. Khan v. BDO Seidman, LLP, 408 Ill.App.3d 564, 578, 350 Ill.Dec. 63, 948 N.E.2d 132 (2011). "Under the de novo standard of review, this court owes no deference to the trial court." People v. Williams, 2013 IL App (1st) 111116, 377 Ill.Dec. 636, 2 N.E.3d 552 (citing Townsend v. Sears, Roebuck & Co., 227 Ill.2d 147, 154, 316 Ill.Dec. 505, 879 N.E.2d 893 (2007)). In ruling on a section 2"619 motion to dismiss, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. Van Meter v. Darien Park District, 207 Ill.2d 359, 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss based on certain defects or defenses admit the legal sufficiency of the complaint? | 036002.docx | LEGALEASE-00147302-LEGALEASE-00147303 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 6944 | Cartee v. Community Spirit Bank, 214 So. 3d 362 | 307A+46 | "In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Smith v. Wilcox County Board of Education, 365 So.2d [659] at 661 [ (Ala.1978) ]. See, e.g., Boazman v. Economics Laboratory, Inc., 537 F.2d 210 (5th Cir.1976); Pond v. Braniff Airways[, Inc.], 453 F.2d 347 (5th Cir.1972). Willful default or conduct is a conscious or intentional failure to act. Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95 (8th Cir.1971). "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct." | The interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default, or contumacious conduct by the plaintiff; "willful default" or conduct is a conscious or intentional failure to act, and is used in contradistinction to accidental or involuntary noncompliance. Rules Civ.Proc., Rule 41(b). | "Is ""willful default"" or conduct a conscious or intentional failure to act, and is it used in contradistinction to accidental or involuntary noncompliance?" | Pretrial Procedure - Memo # 7736 - C - NS.docx | ROSS-003313539-ROSS-003313540 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 6945 | Sutton v. Smith, 603 So. 2d 693 | 307A+685 | The appropriate procedure for resolving questions of personal jurisdiction was set out by the supreme court in Venetian Salami Company v. J.S. Parthenais, 554 So.2d 499 (Fla.1989). First, the trial court must determine whether the plaintiff has alleged sufficient jurisdictional facts to bring the action within the ambit of the section 48.193, Florida Statutes, the Florida long-arm statute. Assuming the plaintiff has alleged sufficient facts to bring the action within the ambit of that statute, the trial court must then determine whether the defendant has sufficient "minimum contacts" with Florida to satisfy due process requirements. The defendant may challenge the legal sufficiency of the allegations of the complaint or raise the contention of a lack of minimum contacts by filing a motion to dismiss, but must support his position by affidavit. | Defendant may challenge legal sufficiency of jurisdictional allegations of complaint or raise contention of lack of minimum contacts by filing motion to dismiss, but must support his position by affidavit; burden then shifts to plaintiff to show, by affidavit, basis upon which jurisdiction may be obtained; plaintiff may satisfy requirement by initially filing sworn complaint, provided allegations of complaint fairly meet contentions of defendant; if essential facts stated in the affidavits are not conflicting, trial court can resolve jurisdictional issue on basis of affidavits; however, if the essential facts are shown to be in direct conflict, trial court must hold an evidentiary hearing to resolve all disputed facts essential to determining jurisdictional issue. | Can the defendant challenge the legal sufficiency of the complaint? | 10398.docx | LEGALEASE-00095463-LEGALEASE-00095464 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 6946 | Andrews v. Marriott Int'l, 2016 IL App (1st) 122731 | 307A+561.1 | "The purpose of a section 2"619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation" (Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003)) and is "similar to a summary judgment motion because [it] " essentially amounts to a summary judgment procedure." " Peterson v. Randhava, 313 Ill.App.3d 1, 9, 246 Ill.Dec. 75, 729 N.E.2d 75 (2000) (quoting Malanowski v. Jabamoni, 293 Ill.App.3d 720, 724, 228 Ill.Dec. 34, 688 N.E.2d 732 (1997)). These types of motions are similar because in order to rule on them we must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." Raintree Homes, Inc. v. Village of Long Grove, 209 Ill.2d 248, 254, 282 Ill.Dec. 815, 807 N.E.2d 439 (2004). Misdesignation of a motion for summary judgment as a motion to dismiss is not fatal to the movant's right to prevail where the nonmoving party did not suffer any prejudice or unfair surprise due to the error. Peterson, 313 Ill.App.3d at 9, 246 Ill.Dec. 75, 729 N.E.2d 75. | The purpose of a motion for involuntary dismissal based upon certain defects or defenses is to dispose of issues of law and easily proved issues of fact at the outset of litigation and is similar to a summary judgment motion because it essentially amounts to a summary judgment procedure. S.H.A. 735 ILCS 5/2-619. | What is the purpose of a motion to dismiss based on certain defects or defenses? | 11259.docx | LEGALEASE-00094125-LEGALEASE-00094126 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6947 | Selective Ins. Co. of S.C. v. Cherrytree Companies, 2013 IL App (3d) 120959 | 307A+686.1 | A motion to dismiss brought pursuant to section 2"619 of the Code of Civil Procedure (735 ILCS 5/2"619 (West 2012)) admits the legal sufficiency of the complaint it attacks and asserts a defense that allegedly defeats the complaint's allegations. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts." Id. We review a section 2"619 dismissal under the de novo standard. Id. | A motion for involuntary dismissal based on certain defects or defenses admits the legal sufficiency of the complaint it attacks and asserts a defense that allegedly defeats the complaint's allegations. S.H.A. 735 ILCS 5/2-619. | "Can the legal sufficiency of the complaint be admitted under the ""involuntary dismissal based upon certain defects or defenses"" statute?" | 036067.docx | LEGALEASE-00147477-LEGALEASE-00147478 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6948 | Norflor Const. Corp. v. City of Gainesville, 512 So. 2d 266 | 307A+590.1 | Under issue one, appellants argue that a sua sponte order entered by the court on July 18, 1986, to advise of status of the case, and appellant's response to the order, along with a notice of change of counsel's address, were sufficient record activity to prevent dismissal. We find these arguments of appellants to be unavailing. In Harris v. Winn-Dixie Stores, Inc., 378 So.2d 90, 93 (Fla. 1st DCA 1979), this court stated that the test of sufficiency of the record activity offered to prevent dismissal is: "Activity of record of any party is sufficient if it is more than "a mere passive effort" and is an affirmative act directed toward disposition of the case." In Nelson v. Stonewall Insurance Company, 440 So.2d 664 (Fla. 1st DCA 1983), this court held that a sua sponte order to show cause why an action should not be dismissed for lack of prosecution is not record activity sufficient to preclude dismissal. Although Nelson was decided prior to the adoption of the amendment to Rule 2.085, Florida Rules of Judicial Administration, which requires trial judges to take charge of all cases at an early stage in the litigation, there is no authority or logical reason why the amendment to Rule 2.085 would affect the holding in Nelson. We find no significant difference between the order to advise of status in this case and the show cause order in Nelson; therefore, the order to advise of status is insufficient activity to preclude dismissal. | Activity of record of any party is sufficient to prevent dismissal of action for failure to prosecute if activity is more than a mere passive effort and is an affirmative act directed toward disposition of case. West's F.S.A. RCP Rule 1.420(e). | Is the activity of record of any party sufficient to prevent dismissal of action for failure to prosecute? | 036130.docx | LEGALEASE-00147980-LEGALEASE-00147981 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 6949 | Dempsey v. Johnson, 2016 IL App (1st) 153377 | 307A+561.1 | A section 2"619 motion admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. Capeheart v. Terrell, 2013 IL App (1st) 122517, 11, 374 Ill.Dec. 810, 996 N.E.2d 257. In reviewing a motion to dismiss under section 2"619, the court is obligated to construe the complaint and the evidentiary material submitted in support or in opposition, in a light most favorable to the plaintiff, and to accept as true all well-pleaded facts in the complaint. Porter v. Decatur Memorial Hospital, 227 Ill.2d 343, 352, 317 Ill.Dec. 703, 882 N.E.2d 583 (2008). Our review is de novo. Lutkauskas, 2015 IL 117090, 29, 390 Ill.Dec. 74, 28 N.E.3d 727. | A motion to dismiss based upon defects or defenses admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss based upon defects or defenses admit the legal sufficiency of the plaintiff's claim? | 036319.docx | LEGALEASE-00147626-LEGALEASE-00147627 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 6950 | In re Cty. Collector, 2016 IL App (3d) 150712 | 307A+561.1 | Under subsection (a)(9), the subsection that applies in this case, a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by other affirmative matter, which avoids the legal effect of or defeats the claim. 735 ILCS 5/2"619(a)(9) (West 2014).An "affirmative matter" is something in the nature of a defense that negates the cause of action completely. Van Meter, 207 Ill.2d at 367, 278 Ill.Dec. 555, 799 N.E.2d 273. In ruling upon a section 2"619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. Id. at 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273. On appeal, a dismissal pursuant to section 2"619 is reviewed de novo. Id. at 368, 278 Ill.Dec. 555, 799 N.E.2d 273. | An "affirmative matter" that would warrant involuntary dismissal of a claim, within the meaning of the statute authorizing involuntary dismissal based on certain defects or defenses, is something in the nature of a defense that negates the cause of action completely. S.H.A. 735 ILCS 5/2-619. | "Does affirmative matter"" mean something in the nature of a defense that negates the cause of action completely?" | 036328.docx | LEGALEASE-00147646-LEGALEASE-00147647 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 6951 | State v. Huggins, 103 Idaho 422 | 352H+98 | In Idaho, the crime of "assault with intent to commit rape" (I.C. s 18-907) is a lesser included offense of rape and, in prosecuting such an assault, the state must prove all elements of rape except penetration. State v. Garney, 45 Idaho 768, 772, 265 P. 668, 669 (1928); State v. Neil, 13 Idaho 539, 548, 90 P. 860, 862 (1907). Before 1977, I.C. s 18-6101 defined rape as "an act of sexual intercourse accomplished with a female not the wife of the perpetrator...." (Emphasis added.) In 1977 the Idaho legislature amended I.C. s 18-6101 by striking the language underlined above. In the same legislation a new section, I.C. s 18-6107, was enacted. It provides:No person shall be convicted of rape for any act or acts with that person's spouse, except as provided hereafter:1. A spouse has initiated legal proceedings for divorce or legal separation; or2. The spouses have voluntarily been living apart for one hundred eighty (180) days or more. | Crime of assault with intent to commit rape is lesser included offense of rape and, in prosecuting such an assault, state must prove all elements of rape except penetration. I.C. S 18-907. | Is assault with intent to commit rape a lesser included offense of rape? | 042944.docx | LEGALEASE-00147914-LEGALEASE-00147915 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6952 | Potter v. Arizona So. Coach Lines, 202 Cal. App. 3d 126 | 413+2 | Generally, a person who suffers a work-related injury must seek relief within the workers' compensation system, and all proceedings must be before the Workers' Compensation Appeals Board (WCAB). (Lab.Code, "" 3600, 3601, 5300.) The special forum of the WCAB operates under rules of procedure and evidence substantially different from those in the superior court, all of which are liberally construed in favor of the workers' claim. (Lab.Code, " 3202.) (Argonaut Ins. Co. v. Superior Court, supra, 164 Cal.App.3d 320, 323, 210 Cal.Rptr. 417.) The intent of this special forum is to compensate the worker quickly and its jurisdiction controls even though a worker might have a better claim against the employer in a civil action brought in superior court. (Ibid.; Everfield v. State Comp. Ins. Fund (1981) 115 Cal.App.3d 15, 19, 171 Cal.Rptr. 164.) Failure of the Legislature to include in the workers' compensation law an element of damages recoverable at common law cannot be corrected judicially. (Spratley v. Winchell Donut House, Inc. (1987) 188 Cal.App.3d 1408, 1414, 234 Cal.Rptr. 121.) | Generally, person who suffers work-related injury must seek relief within the workers' compensation system, and all proceedings must be before the Workers' Compensation Appeals Board, and failure of the Legislature to include in the Workers' Compensation Law an element of damages recoverable at common law cannot be corrected judicially. West's Ann.Cal.Labor Code SS 3202, 3600, 3601, 5300. | Does failure of the Legislature to include in the workers' compensation law an element of damages recoverable at common law be corrected judicially? | Workers Compensation - Memo #493 ANC.docx | ROSS-003300445-ROSS-003300446 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 6953 | Simon v. Pfizer Inc., 398 F.3d 765 | 231H+670 | The central inquiry, therefore, is whether Simon's claims sufficiently fit within the ESP's arbitration clauses such that arbitration should be required. With respect to Simon's ESP claims, this Court finds that they do and, thus, the District Court's decision denying Pfizer's motion to dismiss with respect to Simon's ESP claims must be overturned"a compulsory arbitration provision divests the District Court of jurisdiction over claims that seek benefits under an ERISA plan, such as the ESP. See United Steelworkers v. Mead Corp., 21 F.3d 128, 132"33 (6th Cir.1994) (refusing to consider the merits of a claim after determining the claim was within the scope of the parties' arbitration agreement) | Compulsory arbitration provision divests the district court of jurisdiction over claims that seek benefits under an ERISA plan. Employee Retirement Income Security Act of 1974, S 2 et seq., as amended, 29 U.S.C.A. S 1001 et seq. | Does a compulsory arbitration provision divest the District Courts jurisdiction over claims that seek benefits under an ERISA plan? | 007836.docx | LEGALEASE-00148871-LEGALEASE-00148872 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6954 | Lee v. Muller, 200 Ga. App. 139 | 83E+481 | "There are two methods for transfer of negotiable instruments"negotiation and assignment. 2 Anderson UCC 751, " 3"201:3. However, "(o)nly a negotiation, not an assignment, can constitute a transferee a "holder" of a negotiable instrument." 11 AmJur2d 337, Bills & Notes, " 312. "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement.... Negotiation "takes effect only when the indorsement is made...." OCGA " 11"3"201(3)." Bank of Danielsville v. Seagraves, 167 Ga.App. 135, 139, 305 S.E.2d 790 (1983); see also OCGA " 11"3"202. A transfer without an indorsement is an assignment, and, although the UCC does not prohibit the transfer of commercial paper without an indorsement, the assignee takes subject to any defense which could be raised against the maker. First Nat. Bank of Gwinnett v. Barrett, 141 Ga.App. 161, 233 S.E.2d 24 (1977); Tallahassee Bank & Trust Co. v. Raines, 125 Ga.App. 263 (1), 187 S.E.2d 320 (1972); accord Christie v. Bassford, 47 Ga.App. 94 (1), 169 S.E. 687 (1933). On the other hand, a holder in due course takes free of defenses of which the holder did not have notice. OCGA " 11"3"302(1)(c); Kemp Motor Sales v. Statham, 120 Ga.App. 515(1), 171 S.E.2d 389 (1969). | Transfer of negotiable instrument without indorsement is assignment, and although UCC does not prohibit transfer of commercial paper without indorsement, assignee takes subject to any defense which could be raised against makers. | Can an assignee take an assignment subject to any defense that could be raised against the maker or payee? | Bills and Notes -Memo 607 -DB_57855.docx | ROSS-003281682-ROSS-003281683 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 6955 | United States v. Terry, 707 F.3d 607 | 63+1(1) | The agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts. Rather, "it is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose." United States v. Abbey, 560 F.3d 513, 518 (6th Cir.2009); accord United States v. Jefferson, 674 F.3d 332, 358"59 (4th Cir.2012); Ryan v. United States, 688 F.3d 845, 852 (7th Cir.2012); United States v. Ganim, 510 F.3d 134, 147 (2d Cir.2007). | One element of bribery involving a public official is that the public official must agree that his official conduct will be controlled by the terms of the promise or the undertaking; this agreement must include a quid pro quo, the receipt of something of value in exchange for an official act, but the agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts, rather, it is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose. 18 U.S.C.A. S 201(b)(2). | Does the agreement between the public official and the person offering the bribe need to spell out which payments control which particular official acts? | Bribery - Memo #941- C-JL_57932.docx | ROSS-003294457-ROSS-003294458 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 6956 | McEneny v. Gerlach, 142 S.W.2d 1095 | 200+77(1) | Where a public road by prescription is established, as here, and abandonment is relied upon as a defense, it must be shown by clear and cogent proof that those who had a right to abandon it did so voluntarily and with a clear intention so to do. It is not dependent upon the acts of the owners but upon the acts and intention of the public. As stated in Johnson v. Rasmus, 237 Mo. 586, 592, 141 S.W. 590, 591, "in cases of the loss of the right to a public road, resulting from abandonment or vacation by the public, the result accrues from the acts and doings of the parties entitled to the highway, and not from the adversary or hostile possession of others." | In cases of the loss of the right to a public road, resulting from abandonment or vacation by the public, the result accrues from the acts and doings of those entitled to the highway, and not from the adversary or hostile possession of others. Mo.St.Ann. S 7839, p. 6738. | Does loss of right to a public road result from hostile possession? | 018652.docx | LEGALEASE-00148430-LEGALEASE-00148431 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 6957 | Fernald v. French, 121 Me. 4 | 48A+168(6) | In fact it should be declared as a rule of law, governing the movement of motor vehicles under the conditions and circumstances of the present case, that a car intending to cross the street in front of another car should so watch and time the movement of the other car as to reasonably insure itself of a safe passage, either in front or rear of such car even to the extent of stopping and waiting, if necessary. This is no new rule, but simply the application of a well-established principle to new conditions. | Automobile driver, intending to cross the street in front of another car, should so watch and time the movement of the other car as to reasonably assure himself of the safe passage, either in front or rear of such car, even to the extent of stopping and waiting if necessary. | Is a person intending to make a turn required to watch and time the movements of other cars? | 019054.docx | LEGALEASE-00148719-LEGALEASE-00148720 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 6958 | Mitchell v. Bass, 26 Tex. 372 | 59+20(1) | Another question is suggested by the examination of the record to which, as the case will be remanded for a new trial, it is thought proper to call the attention of the parties and their counsel. The original grants of labors one and two call for the "national road" as the boundary between them. The plaintiff claims that the space designated for the road remained vacant public land after the granting of the labors; and was subject to be appropriated by his certificate and patent. The controversy has been as to the existence of a vacancy between the labors. But if it be conceded that there was a space designated for a public highway which has ceased to be used as such, it may be a question whether the space so designated become vacant upon its disuse by the public. The established doctrine of the common law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. | The established doctrine of the common law is that a conveyance of lands bounded on a public highway carries with it the fee to the center of the road, and such is the legal construction of a grant, unless the inference that it was so intended is rebutted by the terms of the grant. | "Does a conveyance of land bounded on a public highway carry with it, the fee to the center of the road as part and parcel of the grant?" | 019073.docx | LEGALEASE-00149718-LEGALEASE-00149719 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 6959 | Mendoza v. Rast Produce Co., 140 Cal. App. 4th 1395 | 302+20 | When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations. (Adams v. Paul (1995) 11 Cal.4th 583, 593, 46 Cal.Rptr.2d 594, 904 P.2d 1205; Crowley v. Katleman (1994) 8 Cal.4th 666, 690"691, 34 Cal.Rptr.2d 386, 881 P.2d 1083 [factually and legally inconsistent theories allowed].) | When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations. | Does the modern practice allow the party to plead in the alternative and make inconsistent allegations? | Pleading - Memo 484 - RMM_58679.docx | ROSS-003293678-ROSS-003293679 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 6960 | Rogers v. Quiktrip Corp., 230 P.3d 853 | 307A+622 | When reviewing a trial court's dismissal of an action an appellate court examines the issues de novo. Motions to dismiss are generally viewed with disfavor. The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim. A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. | Purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim. | Is the purpose of a motion to dismiss to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim? | 036370.docx | LEGALEASE-00149285-LEGALEASE-00149286 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6961 | Park Ctr. Condo. Council v. Epps, 723 A.2d 1195 | 307A+590.1 | It is well settled that the dismissal of an action for want of prosecution rests within the sound discretion of the Court. Ayers v. D.F. Quillen & Sons, Inc., Del.Supr., 188 A.2d 510, 511 (1963) (citing Landes v. Wolf, Del.Supr., 96 A.2d 344, 345 (1953)). Rules like 41(b) and (e) are intended as a safeguard against delay and harassment. 9 Wright & Miller, Federal Practice and Procedure: Civil 2d. " 2370. Their purpose is to dispose of cases when necessary, not to allow parties to maintain a "faint spark of life in their litigation." Wilmington Trust Co. v. Barry, Del.Super., 397 A.2d 135, 138 (1979) (quoting Rovner v. Warner Bros. Pictures, Inc., E.D.Pa., 29 F.R.D. 488, 490 (1962)).Avoiding dismissal for "want of prosecution" requires more significant action than taking steps to delay or prevent trial. Barry, 397 A.2d at 138. A litigant must actively pursue a case from its inception through its resolution. | Avoiding dismissal for want of prosecution requires more significant action than taking steps to delay or prevent trial. Superior Court Civil Rule 41. | Does avoiding dismissal for want of prosecution require more significant action than taking steps to delay or prevent trial? | Pretrial Procedure - Memo # 7982 - C - SS_58344.docx | ROSS-003281797-ROSS-003281798 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 6962 | Lynda's Boutique v. Alexander, 96 S.W.3d 328 | 307A+581 | A trial court may dismiss a case pursuant to either its inherent power or Texas Rule of Civil Procedure 165a.1 Tex.R. Civ. P. 165a; Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999) (acknowledging that trial court has inherent power to dismiss if plaintiff fails to prosecute case with due diligence). However, before a trial court may dismiss a case under either the rule or its inherent authority, it must provide the plaintiff with notice and an opportunity to be heard. Tex.R. Civ. P. 165a(1); Villarreal, 994 S.W.2d at 630. Failure to provide adequate notice of the court's intention to dismiss for want of prosecution requires reversal. Villarreal, 994 S.W.2d at 630. | A trial court may dismiss a case pursuant to either its inherent power or in accordance with rule for want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Can a court dismiss a case pursuant to either its inherent power or in accordance with rule for want of prosecution? | 036502.docx | LEGALEASE-00149275-LEGALEASE-00149276 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 6963 | Andrews v. Marriott Int'l, 2016 IL App (1st) 122731 | 307A+685 | The circuit court dismissed plaintiff's complaint pursuant to section 2"619(a)(9) of the Code, which permits the involuntary dismissal of a claim where the claim asserted is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2010). Affirmative matter is "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 486, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). "Unless the affirmative matter is already apparent on the face of the complaint, the defendant must support the affirmative matter with an affidavit or with some other material that could be used to support a motion for summary judgment." Pleasant Hill Cemetery Ass'n v. Morefield, 2013 IL App (4th) 120645, 369 Ill.Dec. 478, 986 N.E.2d 791. Once a defendant has presented adequate affidavits or other evidence of support, " "the defendant [has] satisfie[d] the initial burden of going forward on the motion" " and the burden then shifts to the plaintiff who is required to establish that the affirmative matter is either unfounded or involves an issue of material fact. | To obtain involuntary dismissal of a claim on ground the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim, unless affirmative matter is already apparent on the face of a complaint, a defendant must support the affirmative matter with an affidavit or with some other material that could be used to support a motion for summary judgment. S.H.A. 735 ILCS 5/2-619(a)(9). | How should the defendant support affirmative matter and motion for summary judgment? | 036542.docx | LEGALEASE-00149299-LEGALEASE-00149300 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 6964 | Better Gov't Ass'n v. Illinois High Sch. Ass'n, 2016 IL App (1st) 151356 | 307A+561.1 | A section 2"619 motion to dismiss (735 ILCS 5/2"619 (West 2014)) admits the sufficiency of the plaintiff's complaint, but asserts a defense outside the complaint that defeats it. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. Specifically, a section 2"619(a)(9) motion, like the one filed by IHSA, permits the involuntary dismissal of the complaint where the claim is barred by an "other affirmative matter." 735 ILCS 5/2"619(a)(9) (West 2014). "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts [citation]." Patrick Engineering, Inc., 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. We review the granting of a section 2"619 motion to dismiss de novo. Id. | A motion for involuntary dismissal of the complaint based upon certain defects or defenses admits the sufficiency of the plaintiff's complaint, but asserts a defense outside the complaint that defeats it. S.H.A. 735 ILCS 5/2-619. | Will a motion for involuntary dismissal of the complaint based upon certain defects or defenses admit the sufficiency of the plaintiff's complaint? | 036553.docx | LEGALEASE-00149378-LEGALEASE-00149379 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 6965 | Christenbury Eye Ctr., P.A. v. Medflow, 802 S.E. 2d 888 | 307A+622 | We review a dismissal under Rule 12(b)(6) de novo, "view[ing] the allegations as true and ... in the light most favorable to the non-moving party." Kirby v. N.C. DOT, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016) (quoting Mangum v. Raleigh Bd. of Adjust., 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008)). Dismissal is proper when the complaint "fail[s] to state a claim upon which relief can be granted." Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 448, 781 S.E.2d 1, 7 (2015) (alteration in original) (quoting N.C.G.S. " 1A-1, Rule 12(b)(6) (2013)). "When the complaint on its face reveals that no law supports the claim ... or discloses facts that necessarily defeat the claim, dismissal is proper." Id. at 448, 781 S.E.2d at 8 (citing Wood v. Guilford County, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). | When the complaint on its face reveals that no law supports the claim or discloses facts that necessarily defeat the claim, dismissal is proper. N.C. R. Civ. P. 12(b)(6). | "When the complaint on its face reveals that no law supports the claim or discloses facts that necessarily defeat the claim, is dismissal proper?" | Pretrial Procedure - Memo # 8097 - C - NS_58430.docx | ROSS-003299308-ROSS-003299309 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 6966 | J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447 | 307A+622 | In reviewing a Rule 4:6"2(e) dismissal, we employ the same standard as that applied by the trial court. Donato v. Moldow, 374 N.J.Super. 475, 483, 865 A.2d 711 (App.Div.2005). Our review is limited to the "legal sufficiency of the facts alleged in the complaint." Id. at 482, 865 A.2d 711. We "assume the facts as asserted by plaintiff are true[,]" and we give the plaintiff "the benefit of all inferences that may be drawn [.]" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166, 876 A.2d 253 (2005) (quoting Velantzas v. Colgate"Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988)). Dismissal is appropriate only if "the complaint states no basis for relief and discovery would not provide one." Ibid. | Dismissal for failure to state a claim upon which relief can be granted is appropriate only if the complaint states no basis for relief and discovery would not provide one. N.J. Ct. R. 4:6-2(e). | Is a dismissal for failure to state a claim upon which relief can be granted appropriate only if the complaint states no basis for relief and discovery would not provide one? | 036645.docx | LEGALEASE-00149927-LEGALEASE-00149928 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6967 | Geigy Chem. Corp. v. Zuckerman, 106 R.I. 534 | 413+11 | The primary object of workmen's compensation is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings.The Compensation Act was intended to impose upon the employer the burden of taking care of the casualties occurring in his employment, thus preventing the injured employee from becoming a public charge. Rosa v. George A. Fuller Co., 74 R.I. 215, 60 A.2d 150.Workmen's compensation payments were never intended to provide general health and accident insurance or to afford full compensation for injuries suffered from one's employment. DeLallo v. Queen Dyeing Co., 73 R.I. 325, 56 A.2d 174. The Workmen's Compensation Act is humane legislation designed to afford a modicum of economic shelter to one who has sustained an industrial injury. | Workmen's compensation act was intended to impose upon employer burden of taking care of casualties occurring in his employment, thus preventing injured employee from becoming public charge, but compensation payments were never intended to provide general health and accident insurance or to afford full compensation for injuries suffered from one's employment. Gen.Laws 1956, S 28-33-1 et seq. | What did workmens compensation intend to do? | 048356.docx | LEGALEASE-00149994-LEGALEASE-00149995 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 6968 | Umbreit v. Quality Tool, 302 Minn. 376 | 413+2 | While it is true that the Workmen's Compensation Act is remedial and humanitarian in purpose and is to be given a liberal interpretation in favor of employees, it is also true that the rights and benefits granted rest solely upon, and are limited by, the statutes creating them. Berard v. LaCoe, 286 Minn. 375, 176 N.W.2d 74 (1970); Radzak v. Mercy Hospital, 291 Minn. 189, 190 N.W.2d 86 (1971); Schwartz v. Talmo, 295 Minn. 356, 205 N.W.2d 318 (1973); Tierney v. Tierney & Co., 176 Minn. 464, 223 N.W. 773 (1929); Peterson v. Thief River Falls Welding Co., 245 Minn. 212, 72 N.W.2d 75 (1955). As observed in the Tierney case, which we conclude controls our decision, the rights granted fall into two general categories, namely, rights granted to the employee to compensate him for his work-related injury or disability and rights granted to the employee's dependents when death results from a work-related injury. 176 Minn. 465, 223 N.W. 774. Permanent partial disability benefits fall within the former category. They are personal to the injured workman and are designed to compensate him for his loss of earning capacity. Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N.W.2d 365 (1973). In the case of scheduled disability benefits for loss of a bodily member under Minn.St. 176.101, loss of earning capacity is conclusively presumed regardless of the employee's ability to return to work at the same or greater earnings. Boquist v. Dayton-Hudson Corp., 297 Minn. 14, 209 N.W.2d 783 (1973). At the time of our decision in Tierney, payment of compensation for permanent partial disability was to be made at intervals approximating the disabled employee's wage payments. Minn.St.1971, s 176.021, subd. 3, quoted in footnote 2, requires a "lump sum payment" of such benefits "upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the | While Workmen's Compensation Act is remedial and humanitarian in purpose and is to be given liberal interpretation in favor of employees, rights and benefits granted rest solely upon and are limited by statutes creating them. M.S.A. S 176.011 et seq. | What is humanitarian about the Workmens Compensation Act? | 048448.docx | LEGALEASE-00149822-LEGALEASE-00149824 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 6969 | Cromwell v. Sac Cty., 96 U.S. 51 | 83E+573 | The plaintiff, therefore, holds the bonds and the subsequent coupons as his vendor held them, freed from all infirmities attending their original issue. Nor is he limited in his recovery upon them, or upon the other two bonds, as contended by counsel for the county, to the amount he paid his vendor. Clark had given full value for those he purchased, and could have recovered their amount from the county, and his right passed to his vendee. But, independently of the fact of such full payment, we are of opinion that a purchaser of a negotiable security before maturity, in cases where he is not personally chargeable with fraud, is entitled to recover its full amount against its maker, though he may have paid less than its par value, whatever may have been its original infirmity. We are aware of numerous decisions in conflict with this view of the law; but we think the sounder rule, and the one in consonance with the common understanding and usage of commerce, is that the purchaser, at whatever price, takes the benefit of the entire obligation of the maker. Public securities, and those of private corporations, are constantly fluctuating in price in the market, one day being above par and the next below it, and often passing within short periods from one-half of their nominal to their full value. Indeed, all sales of such securities are made with reference to prices current in the market, and not with reference to their par value. | A purchaser of a negotiable security before maturity who is not personally chargeable with fraud may recover its full amount against its maker though he may have paid less than its par value, whatever may have been its original infirmity. | Can a purchaser of a bond or note recover the full amount due? | 009692.docx | LEGALEASE-00150381-LEGALEASE-00150382 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 6970 | Knoll v. Bd. of Regents of Univ. of Nebraska, 258 Neb. 1 | 141E+1195 | Thus, the University could have foreseen various forms of student hazing on its property, even though FIJI failed to disclose the pledge sneak event, including typical fraternity abductions and the consequences that could reasonably be expected to result from such activities.As such, we conclude the University owes a landowner-invitee duty to students to take reasonable steps to protect against foreseeable acts of hazing, including student abduction on the University's property, and the harm that naturally flows therefrom.] | State university owes a landowner-invitee duty to students to take reasonable steps to protect against foreseeable acts of hazing, including student abduction on the university's property, and the harm that naturally flows therefrom. | Does a University a has duty to protect students from hazing? | Education - Memo #125 - C - KS.docx | LEGALEASE-00039898-LEGALEASE-00039899 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 6971 | Bilbrey v. Smithers, 937 S.W.2d 803 | 156+27(2) | "Where one recognizes another's title or is instrumental in another's acquiring title he is estopped to afterwards deny that title." Spicer v. Kimes, 25 Tenn.App. 247, 156 S.W.2d 334, 337 (1941). "The privies of a grantor or grantee are estopped to the same extent as the original parties to the deed." Id. Estoppel by deed applies where both parties were grantors or grantees, and also where one party was a grantor and the other was a grantee. In either case, an individual's property rights are being recognized by the other party or parties signing the deed. That recognition of rights cannot be taken back at a later time. | When one recognizes another's title or is instrumental in another's acquiring title he is estopped to afterwards deny that title, and privies of grantor or grantee are estopped to same extent as original parties to deed. | Are the privies of a grantor or grantee estopped to the same extent as the original parties to the deed? | 018006.docx | LEGALEASE-00150460-LEGALEASE-00150461 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6972 | State v. Goeson, 65 N.D. 706 | 83+63.15 | While it may not impose a tax on the property of those engaged in interstate commerce, yet the state may "impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon." Interstate Transit v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 381, 75 L. Ed. 953; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385. See, also, Pierce Oil Corp. v. Hopkins et al., 264 U. S. 137, 44 S. Ct. 251, 68 L. Ed. 593, where levy for roads is extended to tax on sales of gasoline. | State may impose on motor vehicles engaged exclusively in interstate commerce a charge as compensation for use of highways so long as charge is fair contribution to cost of construction and maintenance of highways and of regulation of traffic (Laws 1933, c. 162). | Can the State impose a tax on the property of those engaged in interstate commerce? | HIghways -Memo 271 - DB.docx | LEGALEASE-00039978-LEGALEASE-00039979 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 6973 | Reaves v. City of Corpus Christi, 518 S.W.3d 594 | 307A+622 | As to the second category noted by the Guillory court, we agree that when the plaintiff's own allegations, taken as true, trigger a clear legal bar to the plaintiff's claim, the cause of action has no basis in law. See 470 S.W.3d at 240. Dismissal is certainly appropriate when Texas has rejected the pleaded cause of action"or has rejected the viability of that action under the circumstances pleaded by the plaintiff. See id. | When the plaintiff's own allegations, taken as true, trigger a clear legal bar to the plaintiff's claim, the cause of action has no basis in law and is subject to dismissal. Tex. R. Civ. P. 91a. | "When the plaintiff's own allegations trigger a clear legal bar to the plaintiff's claim, does the cause of action have no basis in law?" | 036540.docx | LEGALEASE-00150482-LEGALEASE-00150483 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 6974 | JPMorgan Chase Bank, N.A. v. E.-W. Logistics, 2014 IL App (1st) 121111 | 307A+686.1 | An affirmative defense must allege facts with the same degree of specificity required to establish a cause of action. International Insurance Co. v. Sargent & Lundy, 242 Ill.App.3d 614, 630, 182 Ill.Dec. 308, 609 N.E.2d 842 (1993). As with all section 2"615 motions, a section 2"615 motion to dismiss affirmative defenses admits all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of those facts. Sargent & Lundy, 242 Ill.App.3d at 630"31, 182 Ill.Dec. 308, 609 N.E.2d 842. An affirmative defense should not be stricken where well-pleaded facts raise the possibility that the party asserting the defense will prevail. Sargent & Lundy, 242 Ill.App.3d at 631, 182 Ill.Dec. 308, 609 N.E.2d 842. A guaranty is a contract; therefore, we apply the standards governing the interpretation of contracts. T.C.T. Building Partnership v. Tandy Corp., 323 Ill.App.3d 114, 118, 256 Ill.Dec. 82, 751 N.E.2d 135 (2001). | A motion to dismiss affirmative defenses based on the pleadings admits all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of those facts. S.H.A. 735 ILCS 5/2-615. | Does a motion to dismiss pursuant to section 2615 have affirmative defenses based on the pleadings admit all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of those facts? | Pretrial Procedure - Memo # 8182 - C - SKG_58989.docx | ROSS-003281400-ROSS-003281401 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6975 | Lin v. Cty. of Sullivan, 100 A.D.3d 1076 | 307A+622 | We affirm. When ruling on a motion to dismiss pursuant to CPLR 3211(a)(7), it is well settled that "the criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one" (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 372 N.E.2d 17 [1977]; see Leon v. Martinez, 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ). | When ruling on a motion to dismiss for failure to state a cause of action, the criterion is whether the proponent of the pleading has a cause of action, not whether he or she has stated one. McKinney's CPLR 3211(a)(7). | "When ruling on a motion to dismiss for failure to state a cause of action, is the criterion whether the proponent of the pleading has a cause of action?" | Pretrial Procedure - Memo # 8217 - C - KBM_58792.docx | ROSS-003293916-ROSS-003293917 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 6976 | Arsenault v. Bhattacharya, 89 Mass. App. Ct. 804 | 307A+622 | Discussion. A motion to dismiss under Mass.R.Civ.P. 12(b)(6) "is concerned with the sufficiency of the pleadings." Bayless v. TTS Trio Corp., 474 Mass. 215, 223, 49 N.E.3d 217 (2016). "To survive a motion to dismiss, the facts alleged and the reasonable inferences drawn therefrom must "plausibly suggest ... an entitlement to relief." " Coghlin Elec. Contractors, Inc. v. Gilbane Bldg. Co., 472 Mass. 549, 554, 36 N.E.3d 505 (2015), quoting from Flagg v. AliMed, Inc., 466 Mass. 23, 26"27, 992 N.E.2d 354 (2013). "A court may grant the radical relief of dismissal only if the plaintiff can set forth no set of facts which would entitle her to relief." Coraccio v. Lowell Five Cents Sav. Bank, 415 Mass. 145, 147, 612 N.E.2d 650 (1993). "Dismissals on the basis of pleadings, before facts have been found, are discouraged." Fabrizio v. Quincy, 9 Mass.App.Ct. 733, 734, 404 N.E.2d 675 (1980). We review de novo the judge's allowance of the motion to dismiss. See Ryan, 82 Mass.App.Ct. at 635, 977 N.E.2d 64. | To survive a motion to dismiss, the facts alleged and the reasonable inferences drawn therefrom must plausibly suggest an entitlement to relief. | "To survive a motion to dismiss, the facts alleged must plausibly suggest, not merely be consistent with, an entitlement to relief?" | Pretrial Procedure - Memo # 8348 - C - VA_58860.docx | ROSS-003295225-ROSS-003295226 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 6977 | Walker v. Gowen Stores LLC, 322 Ga. App. 376 | 307A+622 | Gowen alleges that Fairley Cisco's unlawful scheme of rigging gas pumps and bribing state officials fatally damaged its businesses. Walker and Shave have not shown with certainty that Gowen would not be entitled to relief under any state of provable facts asserted in support of the allegations of the complaint. We therefore affirm. A motion to dismiss pursuant to OCGA " 9"11"12(b)(6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. State of Ga. v. Singh, 291 Ga. 525, 529(3), 731 S.E.2d 649 (2012) (citation omitted). "[A] complaint need not set forth a cause of action in order to withstand a motion to dismiss but need only to set forth a claim for relief." Koehler v. Massell, 229 Ga. 359, 361(1), 191 S.E.2d 830 (1972). In fact, a plaintiff may sue on one theory and recover on another so long as the complaint adequately states a claim for relief. | A complaint need not set forth a cause of action in order to withstand a motion to dismiss but need only set forth a claim for relief; in fact, a plaintiff may sue on one theory and recover on another so long as the complaint adequately states a claim for relief. West's Ga.Code Ann. S 9-11 12(b)(6). | Should a complaint not set forth a cause of action in order to withstand a motion to dismiss but need only set forth a claim for relief? | 037060.docx | LEGALEASE-00150404-LEGALEASE-00150405 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6978 | Moses v. Dirghangi, 430 S.W.3d 371 | 307A+622 | Ms. Moses' complaint was dismissed for failure to state a claim upon which relief can be granted. Accordingly, we will consider her appeal under the standard of review applicable to motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6). An essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial. Abshure v. Methodist Healthcare"Memphis Hosps., 325 S.W.3d 98, 103 (Tenn.2010). A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. Lanier v. Rains, 229 S.W.3d 656, 660 (Tenn.2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. See Riggs v. Burson, 941 S.W.2d 44, 47 (Tenn.1997). These motions are not favored and are rarely granted in light of the liberal pleading standards contained in the Tennessee Rules of Civil Procedure. Dobbs v. Guenther, 846 S.W.2d 270, 273 (Tenn.Ct.App.1992). Moreover, pleas or counts contained in a complaint will be given the effect required by their content, without regard to the name given them by the pleader. State By and Through Canale ex rel. Hall v. Minimum Salary Dept. of African Methodist Episcopal Church, Inc., 477 S.W.2d 11 (Tenn.1972). | A motion to dismiss a complaint for failure to state a claim upon which relief can be granted seeks only to determine whether the pleadings state a claim upon which relief can be granted, and challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. Rules Civ.Proc., Rule 12.02(6). | Does a motion to dismiss a complaint for failure to state a claim upon which relief can be granted test the legal sufficiency of the complaint? | Pretrial Procedure - Memo # 8542 - C - PC_59281.docx | ROSS-003279280-ROSS-003279282 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 6979 | Knox v. City of Orland, 4 Cal. 4th 132 | 268+405 | The characteristics of a special assessment are not in dispute. A special assessment is a " " "compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein...." " [Citation.]" (San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154, 161, 228 Cal.Rptr. 47, 720 P.2d 935.) In this regard, a special assessment is "levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement." (Solvang, supra, 112 Cal.App.3d at p. 554, 169 Cal.Rptr. 391.) "The rationale of special assessment is that the assessed property has received a special benefit over and above that received by the general public. The general public should not be required to pay for special benefits for the few, and the few specially benefited should not be subsidized by the general public. [Citation.]" (Id., at p. 552, 169 Cal.Rptr. 391.) Thus, "[a]lthough a special assessment is imposed through the same mechanism used to finance the cost of local government, in reality it is a compulsory charge to recoup the cost of a public improvement made for the special benefit of particular property." (Id., at p. 553, 169 Cal.Rptr. 391.) | "Special assessment" is a compulsory charge placed by the state upon real property within a predetermined district and made under express legislative authority for deferring in whole or in part the expense of a permanent public improvement therein, whereas a "tax" can be levied without reference to particular benefits to particular individuals or property. | What is special assessment for the purpose of taxation? | 045942.docx | LEGALEASE-00150492-LEGALEASE-00150493 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 6980 | E. E. Rivet & Sons v. Durand, 53 R.I. 48 | 8.30E+186 | It is apparent that the notation, "Due June 7, 1930," was placed there either through an error in computation or through ignorance of the statute (Gen. Laws 1923, c. 227, " 92) which made the note fall due June 6th. There is not the slightest evidence that the parties intended to make the note other than a note payable three months after its date. When a marginal notation, which does not purport to be a collateral agreement but only a restatement of the amount or date of the note, is in conflict with the terms in the main body thereof, it will be disregarded as being not a part of the note. Smith v. Smith, 1 R. I. 398, 53 Am. Dec. 652; Way v. Batchelder, 129 Mass. 361; Fisk v. McNeal, 23 Neb. 726, 37 N. W. 616, 8 Am. St. Rep. 162; Dark v. Middlebrook (Tex. Civ. App.) 45 S. W. 963; Norton on Bills & Notes, 108. | When marginal notation, which does not purport to be collateral agreement, but only restatement of amount or date of note, conflicts with terms in main body thereof, notation will be disregarded as not part of note. | Will marginal notation be regarded as part of a note if it conflicts with the terms of its main body? | 010161.docx | LEGALEASE-00151154-LEGALEASE-00151155 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6981 | Bunge Corp. v. Manufacturers Hanover Tr. Co., 65 Misc. 2d 829 | 172H+782 | A cashier's check is the primary obligation of the bank which issues it and constitutes its written promise to pay upon demand. It has been described as "a bill of exchange drawn by a bank upon itself, accepted in advance by the very act of issuance" (Matter of Bank of United States, 243 App.Div. 287, 291, 277 N.Y.S. 96, 100; Garden Check Cashing Service Inc. v. First National City Bank, 25 A.D.2d 137, 267 N.Y.S.2d 698, aff'd 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566). As the primary obligation of the bank which issues it, embodying the bank's written promise to pay upon demand, it is a negotiable instrument presumed to have been issued for value (Negotiable Instruments Law, Sections 20, 50). That presumption can not be overcome by evidence that the bank which drew the checks received no consideration therefor from the payee. Such proof is irrelevant. It provides no defense (Bobrick v. Second National Bank of Hoboken, 175 App.Div. 550, 162 N.Y.S. 147, aff'd 224 N.Y. 637, 121 N.E. 856). Moreover, defendant did receive consideration for its issuance of the checks by debiting Bergen's account as authorized by Bergen. That Manufacturers subsequently chose to reverse its entries is irrelevant, in the face of the delivery of the checks to Bunge. The checks having been issued and delivered to the payee, the transaction was a completed one so far as Bunge, the payee, was concerned. Bunge's rights could not be affected either by the failure of Manufacturers to charge the checks against Bergen's account or its subsequent reversal of the charges. Once the checks had been delivered, it was beyond the power of Allied, Bergen, or Manufacturers to stop them. They had become the primary obligations of Manufacturers. (Bobrick v. Second National Bank of Hoboken, supra). Manufacturers became primarily liable to Bunge upon delivery of the checks to Bunge, unless some act of Bunge relieved or precluded such liability. | "Cashier's check" is the primary obligation of the bank which issues it and constitutes its written promise to pay upon demand; it is a negotiable instrument presumed to have been issued for value. Uniform Commercial Code, SS 3-104, 3-408. | Is the primary obligation of the bank with regard to cashier's check which issues it constitutes its written promise to pay upon demand? | Bills and Notes- Memo 449-PR_59321.docx | ROSS-003280294-ROSS-003280295 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 22,876 | 9,079 |
| 6982 | Graham v. Warner, 82 Ga. App. 555 | 403+150) | The Uniform Warehouse Receipt Act does not require that an assignment of a negotiable warehouse receipt, in order to pass the title thereto, and to the property pledged, shall be written upon or attached to the receipt itself, but same may be by separate written transfer and assignment such a transfer and assignment is effective to pass the title to the property described in the receipt to the transferee. | Uniform Warehouse Receipt Act does not require that assignment of a negotiable warehouse receipt, in order to pass the title thereto, and to the property pledged, shall be written upon or attached to the receipt itself, but same may be by separate written transfer and assignment, and such a transfer and assignment passes title to property described in receipt to transferee. | Can the title to a note be transferred by a separate writing? | 010800.docx | LEGALEASE-00151164-LEGALEASE-00151165 | SA, Sub | 0.98 | 0 | | | | 1 |
| 6983 | Casavant v. Norwegian Cruise Line, Ltd., 63 Mass. App. Ct. 785 | 307A+554 | At the outset, we note that such a motion, predicated upon enforcement of a forum selection clause that would have alerted venue not properly in Florida, in legal effect tests venue change to such other forum. Rather, such a motion, is 'in legal effect a motion to dismiss for failure to state a claim assertable within the State of filing based on contractual limitations allegedly agreed to by the parties.' Accordingly, such a motion is properly pleaded under Mass.R.Civ.P. 12(b)(6). 366 Mass. 751 (1974). This is consistent with Federal practice wherein Fed.R.Civ.P. 12(b)(6) is the appropriate procedural rule for dismissal of motions predicated on forum selection clauses. See, e.g., LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 7 (1st Cir. 1984) (motion to dismiss based on forum selection clause was not one predicated upon jurisdiction or venue, but instead sought to enforce contractual stipulation; therefore, motion should be characterized brought under Rule 12(b)(6)); rather than under Fed.R.Civ.P. 12(b)(1) and 12 (b)(3)). Accord Doe v. Seascape Assn., 276 F.Supp.2d 222, 224 n.2 (D.Mass.2003). | A motion to dismiss, based on contractual forum-selection clause, is properly pleaded as a motion to dismiss for failure to state a claim. Mass.R.Civ.P. 12(b)(6), 43A M.G.L.A. | Is a motion to dismiss based on a contractual forum-selection clause properly pleaded as a motion to dismiss for failure to state a claim? | 037045.docx | LEGALEASE-00151068-LEGALEASE-00151069 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 6984 | Carter v. Community Spirit Bank, 214 So. 3d 382 | 307A+446 | The intent in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default, or contumacious conduct by the plaintiff. Smith v. Wilcox County Board of Education, 365 So.2d [redacted], 611 (Ala.1978)]. See, e.g., Boazman v. Economics Laboratory, Inc., 537 F.2d 210 (5th Cir.1976); Pond v. Braniff Airways, Inc., 453 F.2d 347 (5th Cir.1972). Willful default or conduct is a conscious or intentional failure to act. 'Willful' is distinguished from 'accidental' or 'involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct.'' | 'Can action be dismissed when there is a clear record of delay, willful default or contumacious conduct by the plaintiff;' 'willful default' or 'conduct is a conscious or intentional failure to act, and is used in contradistinction to accidental or involuntary noncompliance. Rules Civ.Proc., Rule 41(b). | 'Can action be dismissed when there is a clear record of delay, willful default or contumacious conduct of the plaintiff?' | Pretrial Procedure Memo # 8536 - C - TL_59578.docx | ROSS-003294201-ROSS-003294202 | SA, Sub | 0.49 | 0 | | | | 1 |
| 6985 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+622 | We review a trial court's order allowing a Rule 12(b)(6) motion to dismiss de novo. Leadman v. Lanoir, 179 N.C.App. 391, 384, 633 S.E.2d 711, 714 (2006). Our standard of review of an order allowing a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. In ruling upon such a motion, the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that plaintiff could prove no set of facts in support of the claim which would entitle him to relief. A complaint may be properly dismissed for the absence of law to support a claim of one kind, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts to which the right to any relief on the alleged claim, it will be dismissed. | If a complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim, it will be dismissed. Rules Civ.Proc., Rule 41(b). | Will a complaint be dismissed if it pleads facts which deny the right to any relief on the alleged claim? | 037320.docx | LEGALEASE-00150948-LEGALEASE-00150949 | Condensed, SA, Sub 0.79 | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 6986 | Wasser v. McClintock, 703 A.2d 726 | 307A+581 | Where a party files a petition for a judgment of non pros, that party is seeking equitable relief which is based on the equitable doctrine of laches, Jones-Barbins v. Sun Co., c.o. (banking...), 526 Pa. 132, 267 A.2d 587, 590 (1968). A court of common pleas has the inherent power to dismiss a case for lack of activity on the docket. Penn Piping, Inc. v. Insurance Company of North America, 529 Pa. 350, 355, 603 A.2d 1006, 1009 (1992), and the analysis for a judgment of non pros is the same whether the motion is brought by the defendant or whether it is brought sua sponte by the court. Muda v. Nocker Lumber, Inc., 443 Pa. Superior Ct. 483, 489, 662 A.2d 660, 662 (1995). | When party files petition for judgment of non pros, that party is seeking equitable doctrine of laches, when party files petition for judgment of non pros?' | 'Is a party seeking equitable relief when files a petition for judgment of non pros?' | Pretrial Procedure Memo #8539 - C - VA_59356.docx | ROSS-003296302-ROSS-003296303 | SA, Sub | 0.8 | 0 | | | | 1 |
| 6987 | A.F. Lusi Const. v. Rhode Island Convention Ctr. Auth., 934 A.2d 791 | 307A+624 | When reviewing the grant or denial of a Rule 12(b)(6) motion, this Court, applying the same standard as the trial justice, must 'assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party.' McKenna v. Williams, 874 A.2d 217, 225 (R.I. 2005) (quoting Estate of Sherman v. Almeida, 747 A.2d 470, 473 (R.I. 2000)). The "sole function of a motion to dismiss," we have stated, is 'to test the sufficiency of the complaint.' McKenna, 874 A.2d at 225 (quoting Rhode Island Affiliate, ACLU, Inc. v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989). To carry out this function, we 'examine the complaint to determine if plaintiffs are entitled to relief under any conceivable set of facts.' McKenna, 874 A.2d at 225. A motion to dismiss is proper if it is clear beyond a reasonable doubt that plaintiff will not be entitled to relief under any set of facts that could be proved to support the claim. Habib, 890 A.2d at 224. | The sole function of motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, whereby the court examines the complaint to determine if plaintiff is entitled to relief under any conceivable set of facts. Superior Court Rules Civ.Proc., Rule 12(b)(6). | 'Is the sole function of a motion to dismiss, to test the sufficiency of the complaint?' | 037362.docx | LEGALEASE-00151124-LEGALEASE-00151125 | SA, Sub | 0.69 | 0 | | | | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6988 | Nauru Phosphate Royalties v. Drago Daic Interests, 138 F.3d 160 | 25T+210 | Finally, that the arbitration award effectively binds Daic Trustee and M"666 preventing them from relitigating the breach of the Development Agreement works no injustice. While Daic Trustee and M"666 were not formal parties to the arbitration, they were parties to the agreement to arbitrate. Since the Promissory Note incorporated the Development Agreement by reference, the sweeping arbitration clause in the Development Agreement bound both Daic Trustee and M"666. Heinhuis v. Venture Assoc., Inc., 959 F.2d 551, 553"54 (5th Cir.1992) (holding that parties to an excess insurance policy, which incorporated by reference the underlying insurance policy, were bound by the arbitration clause contained in the underlying insurance policy). Indeed, in a letter dated February 9, 1995, Daic Trustee and M"666 attempted to enforce sections of the Development Agreement, other than Sections 3.7 and 5, against Nauru. An entity's attempt to enforce an agreement that contains an arbitration clause provides clear and unmistakable evidence that the entity regards itself bound by the arbitration clause. See Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 839 (7th Cir.1981); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757"58 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319"21 (4th Cir.1988); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984); Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976). | Entity's attempt to enforce agreement that contains arbitration clause provides clear and unmistakable evidence that entity regards itself bound by arbitration clause. | Does an entity's attempt to enforce an agreement that contains an arbitration clause provide evidence that the entity regards itself bound by the arbitration clause? | 007974.docx | LEGALEASE-00151437-LEGALEASE-00151438 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6989 | Kwalick v. Bosacco, 329 Pa. Super. 235 | 25T+182(2) | Defendant's first argument is that plaintiff's filing of the Complaint in Assumpsit constituted a waiver of his right to proceed to arbitration. However, a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right. Nuclear Installation Services Company v. Nuclear Corporation, 468 F.Supp. 1187 (D.C.PA.1979). Moreover, the mere filing of a complaint or an answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration. See Vespe Contracting Co. v. Anvan Corporation, 399 F.Supp. 516 (D.C.PA.1975). Thus, merely because plaintiff filed his Complaint in Assumpsit he is not automatically deemed to have waived his rights to proceed to binding arbitration as set forth in contract. In reviewing the facts of this case we note that plaintiff's request for arbitration, filed on June 14, 1977, was filed before any of the depositions which were ultimately taken had been held. We also note that defendant had been the party who began the taking of depositions and that he had participated fully in all of them. At the time plaintiff's request for arbitration was filed, the pleadings consisted only of plaintiff's Complaint and defendant's Answer, New Matter, and Counterclaim. Defendant did not raise Paragraph Eight of the contract as an affirmative defense until February 22, 1978 when he filed amended New Matter. We also note that, although plaintiff did file a Certificate of Readiness for Trial, he did so only after our Supreme Court had issued its "240 day" directive which had the effect of coercing plaintiff to file the certificate under pain of losing his cause of action for failure to do it. Under these circumstances we cannot hold that plaintiff waived his right to arbitration by filing his | Mere filing of a complaint or an answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration. | Does the filing of a complaint or answer without prejudice to the objecting party justify a finding of waiver? | Alternative Dispute Resolution - Memo 836 - RK_59521.docx | ROSS-003280587-ROSS-003280588 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 6990 | United States v. Nashville, C. & St. L. Ry., 249 F. 678 | 108H+8 | The declaration clearly seeks recovery of taxes on the ground that they are owing the United States by reason of untrue returns by the defendant with respect to expenses and depreciation. The word "false," when used in this connection in the statute, means "untrue" or "incorrect," and does not necessarily mean intentionally or fraudulently false. Eliot Nat. Bank v. Gill (D.C.) 210 Fed. 933, 939; Id., 218 Fed. 600, 602, 134 C.C.A. 358 (C.C.A. 1); National Bank v. Allen (C.C.A. 8) 223 Fed. 472, 478, 139 C.C.A. 20. It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, no duties or short duties have been paid (Meredith v. United States, 13 Pet. 486, 493, 10 L.Ed. 258; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L.Ed. 80; United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519; United States v. Chamberlin, 219 U.S. 250, 260, 31 Sup.Ct. 155, 55 L.Ed. 204); and thus that the government may recover a personal judgment for a tax, either in a sum certain or when readily reducible to certainty, whenever there exists a duty to pay, provided always another remedy has not been made exclusive (United States v. Chamberlin, supra, 219 U.S.at page 262, 31 Sup.Ct. 155, 55 L.Ed. 204; Stockwell v. United States, 13 Wall. 531, 542, et seq., 20 L.Ed. 491; and see Alaska Mining Co. v. Alaska (C.C.A. 9) 236 Fed. 64, 149 C.C.A. 274). | It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, the government has not received full payment of duties and excise taxes. | Does the common-law action of debt lie in favor of the government? | 014059.docx | LEGALEASE-00151518-LEGALEASE-00151519 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 6991 | Knisely v. Evans, 34 Ohio St. 158 | 108H+87 | Where a negotiable promissory note is transferred by indorsement, after maturity, the legal title is thereby vested in the indorsee; and, after such indorsement, the amount due on the note can not be garnished in the hands of the maker, whether he has notice of the transfer or not, as a debt due to the original holder.The original action was brought by Nathaniel W. Evans, the defendant in error, as indorsee of a promissory note, against Elias Knisely, the plaintiff in error, as maker of the note. The note was executed by Knisely on the 14th day of June, 1872, and was payable one day after date to Harrison P. Arnold, or order, for four hundred and four dollars and seventy cents.On the 20th of the same month the note was indorsed and delivered to Evans by the payee, Arnold. | Where a negotiable note is transferred by indorsement, after maturity, the legal title is thereby vested in the indorsee; and, after such indorsement, the amount due on the note cannot be garnished in the hands of the maker, whether he has notice of the transfer or not, as a debt due to the original holder. | Who is vested with the legal title of a negotiable promissory note? | 009814.docx | LEGALEASE-00151634-LEGALEASE-00151635 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6992 | Barrett v. JP Morgan Chase Bank, N.A., 445 F.3d 874 | 172H+1561 | The Truth in Lending Act, Pub.L. No. 90-321, 82 Stat. 146 (codified as amended at 15 U.S.C. " 1601, et seq.), "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms," Begala v. PNC Bank, Ohio, N. A., 163 F.3d 948, 950 '(6th Cir.1998). "[W]hen a loan made in a consumer credit transaction is secured by the borrower's principal dwelling," the Act permits the borrower to "rescind the loan agreement," Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), up to three business days after the transaction, see 15 U.S.C. " 1635(a). When the lender "fails to deliver certain forms or to disclose important terms accurately" to the borrower, the Act extends the borrower's right to rescind the transaction to three years. Beach, 523 U.S. at 411, 118 S.Ct. 1408. And when the Act permits borrowers to rescind "the transaction," 15 U.S.C. " 1635(a), it permits them not only to remove the security interest on their home but also to recover certain fees incurred in the transaction, id. " 1635(b). | When the Truth in Lending Act (TILA) permits borrowers to rescind the transaction, it permits them not only to remove the security interest on their home but also to recover certain fees incurred in the transaction. Truth in Lending Act, S 125(a, b), 15 U.S.C.A. S 1635(a, b). | Can the borrower remove a security interest and recover certain fees or charges when rescinding a transaction? | Consumer Credit - Memo 35 - RK_59567.docx | ROSS-003293482-ROSS-003293483 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 6993 | Perlmutter v. Four Star Dev. Assocs., 38 A.D.3d 1139 | 200+79.1 | Moreover, Supreme Court properly determined that Highway Law " 205(1) is not applicable. Highway Law " 205(1) provides that "[e]very highway that shall not have been opened and worked within six years from the time it shall have been dedicated to the use of the public, or laid out, shall cease to be a highway and shall be deemed abandoned as a right-of-way." Section 205(1) sets forth a six-year limitation on the life of an unused public easement; it does not apply where, as here, a town has acquired a fee to the land in question (see New York Cent. & Hudson R.R. Co. v. City of Buffalo, 200 N.Y. 113, 119, 93 N.E. 520 [1910]; Martin v. County of Delaware, 61 A.D.2d 1111, 1111, 403 N.Y.S.2d 580 [1978], lv. denied 45 N.Y.2d 711, 409 N.Y.S.2d 1030, 381 N.E.2d 617 [1978]; Town of Clarkstown v. Brent, 60 A.D.2d 627, 627, 400 N.Y.S.2d 165 [1977], lv. denied 44 N.Y.2d 654, 405 N.Y.S.2d 40, 376 N.E.2d 201 [1978]; Matter of Fusaro v. D'Angelo, 41 A.D.2d 567, 567"568, 340 N.Y.S.2d 233 [1973] ). Accordingly, inasmuch as Our Street is a public highway and "new use, consistent with its use as an open public street, must be tolerated by" the adjacent landowners, Supreme Court did not err in rejecting plaintiffs' challenge to defendant's use of the 50"foot portion of Our Street at issue to access its parking lot (Matter of McNair v. McNulty, 295 A.D.2d 515, 515, 744 N.Y.S.2d 438 [2002], lv. dismissed 99 N.Y.2d 552, 754 N.Y.S.2d 203, 784 N.E.2d 76 [2002], lv. denied 99 N.Y.2d 510, 760 N.Y.S.2d 101, 790 N.E.2d 275 [2003]; see Matter of Scoglio v. County of Suffolk, 85 N.Y.2d 709, 712, 628 N.Y.S.2d 230, 651 N.E.2d 1249 [1995] ). | Six-year limitation period on life of unused public easement for highway does not apply where town has acquired fee to land in question. McKinney's Highway Law S 205(1). | Does a limitation on the life of an unused public easement apply where a town has acquired a fee to the land in question? | Highways - Memo 299 - RK_59592.docx | ROSS-003319127-ROSS-003319129 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 6994 | Archangel Diamond Corp. v. Arkhangelskgeoldobycha, 94 P.3d 1208 | 307A+680 | We therefore conclude the Trinity analysis, which requires that the trial court resolve disputed factual issues involving subject matter jurisdiction under C.R.C.P. 12(b)(1), should apply to motions to dismiss for lack of personal jurisdiction under C.R.C.P. 12(b)(2). Applying that analysis, whether a court may properly assert personal jurisdiction over a party is a question of law that we review de novo. Union Pac. R.R. v. Equitas Ltd., 987 P.2d 954 (Colo.App.1999). But we review the trial court's determination of factual issues under a clearly erroneous standard. Trinity Broad. of Denver, Inc. v. City of Westminster, supra; see Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed.Cir.1998). | The same procedure for resolving factual disputes concerning subject matter jurisdiction applies to motions to dismiss for lack of personal jurisdiction. Rules Civ.Proc., Rule 12(b)(2). | Does the same procedure for resolving factual disputes concerning subject matter jurisdiction apply to motions to dismiss for lack of personal jurisdiction? | Pretrial Procedure - Memo # 8779 - C - SJ_59778.docx | ROSS-003283659-ROSS-003283660 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 6995 | U.S. v. Peralta-Sanchez, 847 F.3d 1124 | 92+3921 | In contrast, aliens who attempt to enter at an official port-of-entry and are detained by immigration officials have not "entered" the United States, even if they may be physically present in U.S. territory, because they have not crossed the border "free from official restraint." This is sometimes referred to as the "entry fiction." United States v. Argueta"Rosales, 819 F.3d 1149, 1162"68 (9th Cir. 2016) (Bybee, J., dissenting) (discussing the history of the official restraint doctrine); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213"15, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (referring to this "legal fiction"); United States v. Parga"Rosas, 238 F.3d 1209, 1213 (9th Cir. 2001). | Aliens who attempt to enter at an official port-of-entry and are detained by immigration officials have not "entered" the United States, and thus the Due Process Clause does not apply to those aliens, even if they may be physically present in United States territory, because they have not crossed the border free from official restraint; this is sometimes referred to as the "entry fiction." U.S. Const. Amend. 5. | Can a detained alien be deemed to have entered the United States? | 006864.docx | LEGALEASE-00152542-LEGALEASE-00152543 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 6996 | U.S. v. Peralta-Sanchez, 847 F.3d 1124 | 92+3921 | In contrast, aliens who attempt to enter at an official port-of-entry and are detained by immigration officials have not "entered" the United States, even if they may be physically present in U.S. territory, because they have not crossed the border "free from official restraint." This is sometimes referred to as the "entry fiction." United States v. Argueta"Rosales, 819 F.3d 1149, 1162"68 (9th Cir. 2016) (Bybee, J., dissenting) (discussing the history of the official restraint doctrine); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213"15, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (referring to this "legal fiction"); United States v. Parga"Rosas, 238 F.3d 1209, 1213 (9th Cir. 2001). | Aliens who attempt to enter at an official port-of-entry and are detained by immigration officials have not "entered" the United States, and thus the Due Process Clause does not apply to those aliens, even if they may be physically present in United States territory, because they have not crossed the border free from official restraint; this is sometimes referred to as the "entry fiction." U.S. Const. Amend. 5. | Can an alien be present in the United States yet be deemed not to have entered? | 006874.docx | LEGALEASE-00152552-LEGALEASE-00152553 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 6997 | Deutsche Bank Nat. Tr. Co. v. Monica, 131 A.D.3d 737 | 83E+426 | "[W]here [a] plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears special indorsement payable to the order of the plaintiff," such party is a holder of the note and entitled to enforce the instrument (Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d at 1376, 8 N.Y.S.3d 669; see Nationstar Mtge., LLC v. Davidson, 116 A.D.3d 1294, 1296, 983 N.Y.S.2d 705 [2014], lv. denied 24 N.Y.3d 905, 2014 WL 4637016 [2014]; see also Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989] ). Here, Battin's affidavit established that, prior to the commencement of the action, plaintiff possessed the underlying note indorsed in blank by AHMA (compare Bank of Am., N.A. v. Kyle, 129 A.D.3d at 1169, 13 N.Y.S.3d 253). Defendants, in turn, have failed to raise any question of fact as to whether plaintiff continued to retain possession. As such, we conclude that Supreme Court properly found that plaintiff had standing to bring the instant foreclosure action (see Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d at 361"362, 12 N.Y.S.3d 612, 34 N.E.3d 363; Nationstar Mtge., LLC v. Davidson, 116 A.D.3d at 1296, 983 N.Y.S.2d 705; HSBC Bank USA, N.A. v. Sage, 112 A.D.3d at 1127"1128, 977 N.Y.S. 2d 446). | Where a plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears special indorsement payable to the order of the plaintiff, such party is a holder of the note and entitled to enforce the instrument. | Is a holder of the note that contains an indorsement in blank entitled to enforce it? | Bills and Notes- Memo 1103- ANM_60029.docx | ROSS-003321850-ROSS-003321851 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 6998 | Enoch v. Brandon, 249 N.Y. 263 | 58+78 | Bond, to be negotiable, must contain unconditional promise to pay fixed sum, without anything requiring reference to another document to determine whether promise is modified or contingent. Negotiable Instruments Law, " 20. | Bond, to be negotiable, must contain unconditional promise to pay fixed sum, without anything requiring reference to another document to determine whether promise is modified or contingent. Negotiable Instruments Law, S 20. | When is a bond a negotiable instrument? | Bills and Notes-Memo 1027 - SB_60153.docx | ROSS-003311081 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 6999 | Rendler v. Corus Bank, 272 F.3d 992 | 172H+1322 | Rendler first argues that by failing to provide a single disclosure statement summarizing the combined annual percentage rate on both loans, Corus Bank violated the TILA's disclosure requirements. The TILA is a disclosure statute. It does not substantively regulate consumer credit but rather "requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." Valencia v. Anderson Bros. Ford, 617 F.2d 1278, 1282 (7th Cir.1980), rev'd on other grounds, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). The disclosures vary depending on the type of loan transaction.] | Truth in Lending Act (TILA) is a disclosure statute; it does not substantively regulate consumer credit but, rather, requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does TILA require the disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction? | 014040.docx | LEGALEASE-00152625-LEGALEASE-00152626 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 7000 | MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, 364 Ill. App. 3d 6 | 307A+683 | "The defendant has the burden of proving the affirmative defense relied upon in a section 2"619 motion, and such a motion should only be granted if the record establishes that no genuine issue of material fact exists." Streams Condominium No. 3 Ass'n v. Bosgraf, 219 Ill.App.3d 1010, 1013"14, 162 Ill.Dec. 607, 580 N.E.2d 570, 573 (1991). The fact that a complaint is filed after the running of the applicable statute of limitations is a valid reason for dismissal pursuant to section 2"619(a)(5). Riordan v. McIntosh, 319 Ill.App. 248, 48 N.E.2d 800 (1943); 735 ILCS 5/2"619(a)(5) (West 2004). The appellate standard of review applicable to section 2"619 dismissals is de novo. Lipinski, 325 Ill.App.3d at 1144, 259 Ill.Dec. 586, 759 N.E.2d at 69. | The defendant has the burden of proving the affirmative defense relied upon in a motion for involuntary dismissal based on certain defects or defenses, and such a motion should only be granted if the record establishes that no genuine issue of material fact exists. S.H.A. 735 ILCS 5/2-619. | Is dismissal appropriate where the record establishes that no genuine issue of material fact exists? | 037704.docx | LEGALEASE-00151988-LEGALEASE-00151989 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 7001 | Vogel v. Liberty Mut. Ins. Co., 214 Wis. 2d 443 | 307A+679 | A motion to dismiss tests the legal sufficiency of a complaint. See Anderson v. Continental Ins. Co., 85 Wis.2d 675, 683, 271 N.W.2d 368, 372 (1978). The issue is not whether the plaintiff can prove the case as pled, but whether the complaint is legally sufficient to state a claim upon which relief can be granted. See Scarpaci v. Milwaukee County, 96 Wis.2d 663, 669, 292 N.W.2d 816, 819 (1980). On a motion to dismiss, the facts pled are taken as true and inferences from the pleadings are construed in favor of the party against whom the motion is brought. | On motion to dismiss, facts pled are taken as true and inferences from pleadings are construed in favor of party against whom motion is brought. | "On motion to dismiss, are facts pled taken as true and inferences from pleadings are construed in favor of a party against whom motion is brought?" | Pretrial Procedure - Memo # 8808 - C - NE_59807.docx | ROSS-003293171-ROSS-003293172 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7002 | Munjoy Sporting & Athletic Club v. Dow, 755 A.2d 531 | 307A+561.1 | As to the third of Munjoy's claims, Dow asserted, as an affirmative defense, that he enjoyed qualified immunity. Contrary to Munjoy's contentions, immunities and other affirmative defenses "may be raised by a motion to dismiss if facts giving rise to the defense appear on the face of the complaint." Shaw v. Southern Aroostook Community Sch. Dist., 683 A.2d 502, 504 (Me.1996). Because Munjoy specifically sued Dow for "monetary damages pursuant to section 1983" arising from Dow's official actions, Dow's motion to dismiss may raise the immunity issue. See Andrews v. Department of Environmental Protection, 1998 ME 198, 11, 716 A.2d 212, 217. | Immunities and other affirmative defenses may be raised by a motion to dismiss, if facts giving rise to the defense appear on face of complaint. | Will immunities be raised by a motion to dismiss if facts giving rise to the defense appear on face of complaint? | 037814.docx | LEGALEASE-00152018-LEGALEASE-00152019 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7003 | Shulver v. Slocum, 566 So. 2d 1089 | 307A+581 | The concept of abandonment is not punitive in nature. Rather, the notion is one which is designed to discourage vexatious, harassing or frivolous lawsuits by preventing plaintiff from allowing such suits to linger indefinitely. The five year period designated by the legislature balances plaintiff's right to have his day in court as well as the right of the defendant to adequately defend himself. Dismissal of the lawsuit is the harshest of remedies. The law favors and justice requires that an action be maintained whenever possible so that the aggrieved party has had his day in court to which he is entitled. Chevron Oil Company v. Traigle, 436 So.2d 530 (La.1983); Michel v. Home Town Supermarket, Inc., 493 So.2d 142 (La.App. 5th Cir.1986), writ denied, 493 So.2d 1207 (La.1986), and King v. American Motorists Insurance Company, 295 So.2d 26 (La.App. 4th Cir.1974). | Law favors and justice requires that action be maintained whenever possible so that aggrieved party has had his day in court to which he is entitled. | Does justice require that action be maintained whenever possible so that aggrieved party has had his day in court to which he is entitled? | Pretrial Procedure - Memo # 9161 - C - MS_60105.docx | ROSS-003282111-ROSS-003282112 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7004 | Barthelmues v. Ives, 194 Misc. 13 | 21+8 | It has been long since held that the omission of a venue or the statement of an improper venue in an affidavit does not invalidate the oath or render the affidavit a nullity when it is shown by proof aliunde that it was duly administered by a proper officer within the jurisdiction. Fisher v. Bloomberg, 74 App.Div. 368, 77 N.Y.S. 541. And, where an affidavit was actually sworn to before the proper officer, but the officer administering the oath failed to certify the affidavit or to sign his name thereto, such omission does not render the affidavit fatally defective, but it may be corrected nunc pro tunc. Carmody Civil Practice, Vol. 1, Sec. 282, citing Sage v. Stafford, 42 App.Div. 449, 59 N.Y.S. 545; Fawcett v. Vary, 59 N.Y. 597. | The omission of a venue or the statement of an improper venue in an affidavit does not invalidate the oath or render the affidavit a nullity when it is shown by proof aliunde that it was duly administered by a proper officer within the jurisdiction. | Does omission of a venue or the statement of an improper venue in an affidavit render it null? | 006636.docx | LEGALEASE-00153229-LEGALEASE-00153230 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7005 | DeRouin v. Hinphy, 209 So. 2d 352 | 8.30E+282 | Negotiable promissory notes are defined in LSA-R.S. 7:184. We have no statutory definition of a non-negotiable promissory note. However the only distinguishing feature between a negotiable note and a non-negotiable note is that in order to be negotiable the note must be made payable "to order or to bearer" (or to maker and by him endorsed which is the equivalent of being made payable to "bearer"). Therefore if we strike from the definition of a negotiable promissory note as given in LSA-R.S. 7:184 all of the elements indicating negotiability we may define a non negotiable promissory note as being:"an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand, or at a fixed determinable future time, a sum certain in money"] | A "non-negotiable note" is an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand, or at a fixed determinable future time, a sum certain in money. LSA-R.S. 7:126. | What is a non-negotiable note? | 009916.docx | LEGALEASE-00153670-LEGALEASE-00153671 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7006 | Spencer Commercial Club v. Bartmess, 70 Ind. App. 294 | 156+31 | The owner of real estate attesting a deed made by a person having no title, if such owner knows the contents of such deed, will, by attesting it, be estopped from setting up his own title against the grantee and his privies. Devlin on Real Estate, " 1286a; Equitable, etc., Co. v. Lewman, 124 Ga. 190, 52 S. E. 599, 3 L. R. A. (N. S.) 879; Wakefield v. Brown, 38 Minn. 361, 37 N. W. 788, 8 Am. St. Rep. 671; Miller v. Bingham, 29 Vt. 82. | As the owner of real estate attesting a deed made by a person having no title, if such owner knows the contents of such deed, will, by attesting it, be estopped from setting up his own title against the grantee the equitable interest in land owned by a commercial club will pass by a direct conveyance executed by its officers, notwithstanding the conveyance was ineffectual to carry the legal title. | "Will the owner of land, by attesting a deed the contents of which he knows, made by a person who has no title, be estopped from asserting his title against the grantee and his privies?" | 018031.docx | LEGALEASE-00152902-LEGALEASE-00152903 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 7007 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525 | 200+181 | The present case does not come within the rule above stated. None of the occurrences described were of such a character as to convey notice to the railway compny, or to be known to any others than the witnesses themselves. Evidence of other similar occurrences on other occasions is not admissible for the purpose of raising a presumption that the particular accident in question happened, or that the place was defective and dangerous, or that the situation was of such a character that the occurrence resulting in the injury complained of might well have taken place. The facts are the only legitimate evidence of the injury, and of the manner and cause of the occurrence. Ramsey v. Road Co., 81 Ind. 394; Collins v. Inhabitants of Dorchester, 6 Cush. 396; Hubbard v. City of Concord, 35 N. H. 52; Maguire v. Railroad Co., 115 Mass. 239; Hawks v. Inhabitants of Charlemont, 110 Mass. 110; Blair v. Pelham, 118 Mass. 420. The case is parallel in principle with Hudson v. Railway Co., 59 Iowa, 581, 13 N. W. Rep. 735. In that case the plaintiff claimed damages for injuries occasioned to his horse resulting from defective planking at a railway crossing. The judgment of the lower court was reversed because a witness was permitted to testify that some time prior to the injury complained of a horse driven by him had got his foot between the plank and rail, at the same place where the plaintiff's horse was injured. We are aware of the fact that some contrariety exists in the decisions upon the point in question. In our opinion the rule above indicated is the one justified by the decisions of this court, and altogether the safer one upon principle. Patt. Ry. Acc. Law, 420. There is, in the present case, no open, visible connection between the evidentiary facts or independent occurrences out of which it is assumed certain presumptions arise, and the facts sought to be established by deduction from the evidentiary facts proved. This the law requires. The jury must not be left to decide the | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | "Will an object in the highway, in violation of statute make the owner liable for the damages ?" | Highways -Memo 350-SB_60744.docx | ROSS-003292802-ROSS-003292804 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 7008 | Jewett v. Gage, 55 Me. 538 | 200+181 | Where the plaintiff's minor daughter, with a suitable horse and carriage, and in the exercise of ordinary care, was travelling along a highway, and the horse, by becoming frightened at the looks of a hog owned by the defendant, and by him permitted to be in the highway without a keeper, occasioned an injury to the daughter and carriage,--Held, that the owner, or he who had control of the hog, was liable for the injury, although he did not know the hog was in the highway at the time of the injury. | The plaintiff's minor daughter, with a suitable horse and vehicle, and in the exercise of ordinary care, was traveling along a public highway, when the horse became frightened at the appearance of the defendant's hog, which was permitted to be in the highway without a keeper, and occasioned an injury to the daughter and the vehicle. Held, that the defendant was liable for the injury, whether he knew or not that the hog was there at the time. | Will an owner be liable for injuries caused by a horse/hog? | Highways -Memo 354-SB_60748.docx | ROSS-003309721-ROSS-003309723 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 7009 | Etiwan Fertilizer Co. v. Johns, 202 S.C. 29 | 302+359 | A sham answer is one good in form, but false in fact, and not pleaded in good faith; being a mere pretense, set up in bad faith and without color of fact. Bliss, Code Pl. Page 645 (note 162). The motion to strike out an answer as sham presents a question of fact to be determined by the Court upon affidavits, or in such manner as the Court may direct. Union Guano Co. v. Garrison, 130 S.C. 404, 126 S.E. 133; Germofert Mfg. Co. v. Castles, 97 S.C. 389, 81 S.E. 665; Bank v. Fripp, 101 S.C. 185, 85 S.E. 1070; Interstate Chemical Corp. v. Farmington, 100 S.C. 196, 84 S.E. 710. The plaintiff who moves to strike out an answer, good in form, as sham, is skating upon very thin ice, in view of the right of the defendant to have the issues of fact tried by a jury and not upon affidavits. The rule adopted by this Court is that the power will be very sparingly exercised, and only where the pleading is manifestly false, interposed to delay and defeat the plaintiff's action, and only in cases free from doubt. Burkhalter v. Townsend, 139 S.C. 324, 138 S.E. 34; Morris v. Lain, 172 S.C. 549, 174 S.E. 590; and Ransom v. Anderson, 9 S.C. 438. | A "sham answer", which may be stricken, is one good in form, but false in fact, and not pleaded in good faith, being a mere pretense, set up in bad faith and without color of fact. Code 1942, S 470. | "Is a sham answer one good in form, but false in fact, and not pleaded in good faith?" | 023710.docx | LEGALEASE-00153370-LEGALEASE-00153371 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7010 | Rector, Churchwardens & Vestrymen of the Church of the Holy Spirit, Nice, France, v. Cent. Hanover Bank & Tr. Co., 46 N.Y.S.2d 659 | 302+359 | The rule applicable to a motion to strike out allegations as sham is set forth with clarity in Purdy v. McGarity, 262 App.Div. 623, 625, 30 N.Y.S.2d 966, 970, as follows: "The rules relating to sham answers are simple. A sham answer is a false answer; the terms are synonymous. In fact a sham answer is one false in fact and not pleaded in good faith, though good in form, and one setting up new matter known by the defendant to be false. In order to authorize the court to strike out an answer as sham it must be false in the sense of being a mere pretense, set up in bad faith and without color of fact. On such a motion the falsity of the answer must be made clearly to appear. To warrant the court in concluding that a defense is false, not only must the plaintiff have a clear prima facie case, but the proof of falsity of the defense must be clear and decisive, if not overwhelming. If the allegations of a pleading are in any way material they ought not to be stricken out on motion, and the test of materiality is whether they tend to constitute a cause of action or defense; if they do, they are not irrelevant and ought not to be suppressed." | A "sham answer" is synonymous with a "false answer" and is one false in fact and not pleaded in good faith though good in form, and one setting up new matter known by defendant to be false, and to authorize court to strike out an answer as sham, it must be false in sense of being a mere pretense set up in bad faith and without color of fact and its falsity must clearly and decisively if not overwhelmingly appear and plaintiff must have a clear prima facie case. Rules of Civil Practice, rule 103. | Is a sham answer one setting up new matter known by the defendant to be false? | 023714.docx | LEGALEASE-00153443-LEGALEASE-00153444 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 7011 | Gordon v. Purdue Univ., 862 N.E.2d 1244 | 30+3282 | The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim under Ind. Trial Rule 12(B)(6) is de novo. Sims v. Beamer, 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. Id. "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Trail v. Boys & Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 134 (Ind.2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." Id. "A court should "accept[ ] as true the facts alleged in the complaint," and should not only "consider the pleadings in the light most favorable to the plaintiff," but also "draw every reasonable inference in favor of [the non-moving] party." " Id. (internal citations omitted). | When reviewing grant of motion to dismiss for failure to state a claim, appellate courts do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. Trial Procedure Rule 12(B)(6). | Does resolving a motion to dismiss for failure to state a claim involve only a question of law? | 038073.docx | LEGALEASE-00153285-LEGALEASE-00153286 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7012 | Riehle v. Riehle, 504 S.W.3d 7 | 30+3284 | The issue of whether a case should have been dismissed for failure to state a claim raises a question of law and is reviewed de novo. Fox v. Grayson, 317 S.W.3d 1 (Ky. 2010). | The issue of whether a case should have been dismissed for failure to state a claim raises a question of law and is reviewed de novo. | Does the issue of whether a case should have been dismissed for failure to state a claim raise a question of law and is reviewed de novo? | Pretrial Procedure - Memo # 8974 - C - PC_60570.docx | ROSS-003280046-ROSS-003280047 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |
| 7013 | Allen v. Clark Cty. Park Dist. Bd. of Comm'rs, 2016 IL App (4th) 150963 | 307A+681 | A section 2"615 motion to dismiss (735 ILCS 5/2"615 (West 2014)) challenges the legal sufficiency of a complaint based on defects apparent on its face. Reynolds v. Jimmy John's Enterprises, LLC, 370 Ill.Dec. 628, 988 N.E.2d 984, 2013 IL App (4th) 120139, 37. The critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. Id.In considering a section 2"615 motion to dismiss, the court shall consider "all facts apparent from the face of the complaint, including any attached exhibits." Hadley v. Doe, 2015 IL 118000, 29, 393 Ill.Dec. 348, 34 N.E.3d 549. A dismissal under section 2"615 is reviewed de novo. Id. | In considering a motion to dismiss with respect to pleadings, the court considers all facts apparent from the face of the complaint, including any attached exhibits. S.H.A. 735 ILCS 5/2-615. | "In considering a motion to dismiss with respect to pleadings, does the court consider all facts apparent from the face of the complaint, including any attached exhibits?" | 038226.docx | LEGALEASE-00153197-LEGALEASE-00153198 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7014 | Kaplan v. New York City Dep't of Health & Mental Hygiene, 142 A.D.3d 1050 | 307A+681 | The plaintiff does not have this burden. Rather, a contention that the behavior was a petty slight or trivial inconvenience constitutes an affirmative defense (see Williams v. New York City Hous. Auth., 61 A.D.3d 62, 80, 872 N.Y.S.2d 27), which should be raised in the defendants' answer, and does not lend itself to a pre-answer motion to dismiss (see Wilcox v. Newark Val. Cent. School Dist., 74 A.D.3d 1558, 1562, 904 N.Y.S.2d 523). A motion to dismiss merely addresses the adequacy of the pleading, and does not reach the substantive merits of a party's cause of action. "Therefore, whether the pleading will later survive a motion for summary judgment, or whether the party will ultimately prevail on the claims, is not relevant on a pre-discovery motion to dismiss" (Lieberman v. Green, 139 A.D.3d 815, 816, 32 N.Y.S.3d 239; see Tooma v. Grossbarth, 121 A.D.3d 1093, 1095"1096, 995 N.Y.S.2d 593; Endless Ocean, LLC v. Twomey, Latham, Shea, Kelley, Dubin & Quartararo, 113 A.D.3d 587, 589, 979 N.Y.S.2d 84). | Whether a pleading will later survive a motion for summary judgment, or whether the party will ultimately prevail on the claims, is not relevant on a pre-discovery motion to dismiss. McKinney's CPLR 3211(a)(7). | Whether a pleading will later survive a motion for summary judgment not relevant on a pre-discovery motion to dismiss? | Pretrial Procedure - Memo # 9058 - C - MS_60463.docx | ROSS-003294142-ROSS-003294143 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7015 | Airoulofski v. State, 922 P.2d 889 | 307A+581 | Alaska's Civil Rules contain two provisions by which cases may be dismissed for failure to prosecute. Rule 16.1(g) allows dismissal of dormant cases governed by the fast-track procedures of Rule 16.1. Under Rule 41(e), cases operating by standard civil procedures may be dismissed for want of prosecution. The Municipality's cross-appeal involves the interpretation of these rules; accordingly, this court exercises its own independent judgment. Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991) | Civil Rules contain two provisions by which cases may be dismissed for failure to prosecute; rules governing cases to which fast-track procedures are applicable allows dismissal of dormant cases, and cases operating by standard civil procedures may be dismissed for want of prosecution. Rules Civ.Proc., Rules 16.1(g), 41(e). | What rules allow for dismissal for failure to prosecute? | 038385.docx | LEGALEASE-00152838-LEGALEASE-00152839 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7016 | Park Ctr. Condo. Council v. Epps, 723 A.2d 1195 | 307A+581 | It is well settled that the dismissal of an action for want of prosecution rests within the sound discretion of the Court. Ayers v. D.F. Quillen & Sons, Inc., Del.Supr., 188 A.2d 510, 511 (1963) (citing Landes v. Wolf, Del.Supr., 96 A.2d 344, 345 (1953)). Rules like 41(b) and (e) are intended as a safeguard against delay and harassment. Wright & Miller, Federal Practice and Procedure: Civil 2d. " 2370.3 Their purpose is to dispose of cases when necessary, not to allow parties to maintain a "faint spark of life in their litigation." Wilmington Trust Co. v. Barry, Del.Super., 397 A.2d 135, 138 (1979) (quoting Rovner v. Warner Bros. Pictures, Inc., E.D.Pa., 29 F.R.D. 488, 490 (1962)). Avoiding dismissal for "want of prosecution" requires more significant action than taking steps to delay or prevent trial. Barry, 397 A.2d at 138. A litigant must actively pursue a case from its inception through its resolution.Purpose of rule allowing dismissal of case for failure to prosecute is to dispose of cases when necessary, not to allow parties to maintain a faint spark of life in their litigation.] | Purpose of rule allowing dismissal of case for failure to prosecute is to dispose of cases when necessary, not to allow parties to maintain a faint spark of life in their litigation. Superior Court Civil Rule 41. | "Is the purpose of rule allowing dismissal of case for failure to prosecute to dispose of cases, when necessary?" | 038391.docx | LEGALEASE-00152874-LEGALEASE-00152875 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 7017 | Conlen Grain & Mercantile v. Texas Grain Sorghum Producers Bd., 519 S.W.2d 620 | 371+2001 | 4 The refund option available to a producer who has paid the assessment presents a somewhat more difficult question, but we agree with appellants that the essential nature of the assessment is not altered thereby. A tax is a burden or charge imposed by the legislative power of the state upon persons or property to raise money for public purposes. See Clegg v. State, 42 Tex. 605; 1 Cooley on Taxation, 4th ed. 1924, s 1. When the state in the exercise of its power to raise revenue for public purposes exacts an enforced contribution of money to be expended by an agency of the state, the exaction must be regarded as a tax even though the taxpayer may obtain a refund upon request. Provision for refunding assessments to those who comply with refund requirements does not alter the fact that the payments are imposed upon and extracted from producers by governmental authority for a public purpose. The power of the state is used to deprive the producer of money, or the use of his money, for at least the time necessary to process an application for refund. It also appears that the primary purpose of the assessment is to raise revenue. We hold that assessments under Article 55c are taxes. | "Tax" is burden or charge imposed by legislative power of state upon persons or property to raise money for public purposes. Vernon's Ann.Civ.St. art. 55c. | Is a tax a burden imposed upon persons or property to raise money for public purposes? | 046031.docx | LEGALEASE-00153352-LEGALEASE-00153353 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7018 | United States v. 716 Cases, More or Less, etc., Del Comida Brand Tomatoes, 179 F.2d 174 | 178+5 | The test of adulteration within the meaning of the Act does not turn upon whether the article is non-injurious and fit for human consumption. The Act was not intended to be confined to misbranding and the addition of adulterated substances deleterious to the health of consumers. It provides protection to the consumer from "economic adulteration" by which less expensive ingredients are substituted, or the proportion of more expensive ingredients are diminished so as to make the commonly identified article inferior to that which the consumer would expect to receive when purchasing it, although not in itself deleterious. Federal Security Adm'r v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724, 158 A.L.R. 832; United States v. 36 Drums of Pop'n Oil, 5 Cir., 164 F.2d 250; United States v. 2 Bags, etc., 6 Cir., 147 F.2d 123. | Food, Drug and Cosmetic Act was not intended to be confined to misbranding, and the addition of adulterated substances deleterious to health of consumers, but provides for protection to consumer from economic adulteration by which less expensive ingredients are substituted or the proportion of more expensive ingredients are diminished so as to make the commonly identified article inferior to that which the consumer would expect to receive when purchasing it, although not in itself deleterious. Federal Food, Drug and Cosmetic Act, S 402(b)(2), 21 U.S.C.A. S 342(b)(2). | When is a product said to be economically adulterated? | Adulteration - Memo 1-_1DVZXgW2CG-TmjKhq5Cu6OBu-8kos05D_.docx | ROSS-000000100-ROSS-000000101 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 7019 | F.D.I.C. v. Wrapwell Corp., 922 F. Supp. 913 | 170A+2488 | This matter cannot be resolved on summary judgment: it presents a straight-forward dispute about crucial facts underlying defendants' sole remaining defense to plaintiff's suit. Although summary judgment is generally appropriate in the context of an action on a promissory note, it is not appropriate where a dispute such as this exists. Royal Bank of Canada v. Mahrle, 818 F.Supp. 60 (S.D.N.Y.1993). | Although summary judgment is generally appropriate in context of action on promissory note, it is not appropriate where dispute about crucial facts underlying defendant's sole remaining defense to suit exists. | Is summary judgment appropriate based on the evidence of the promissory note? | 008988.docx | LEGALEASE-00154421-LEGALEASE-00154422 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 7020 | Educ. Res. Inst. v. Soren, 85 A.D.3d 848 | 83E+484 | Pursuant to the terms of the promissory note, the provisions of the promissory note are to be governed by federal law and the law of the State of Ohio. "Under Ohio law, the right to enforce a note cannot be assigned but instead, the note must be negotiated in accord with Ohio's version of the Uniform Commercial Code. An attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note" (Bank of N.Y. v. Dobbs, 2009 Ohio 4742, 38). Pursuant to Ohio's version of the Uniform Commercial Code (hereinafter Ohio's UCC), "negotiation requires transfer of possession of the instrument and its indorsement by the holder" (R.C. " 1303.21[B] ). | Under Ohio law, the right to enforce a note cannot be assigned but instead, the note must be negotiated in accord with Ohio's version of the Uniform Commercial Code (UCC), and an attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note. Ohio R.C. S 1303.21(B). | Does the assignment of a note create a claim to ownership? | Bills and Notes - Memo 941 - RK_60802.docx | ROSS-003325879-ROSS-003325880 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 7021 | Rubio v. Capital One Bank, 613 F.3d 1195 | 172H+1342 | It is argued that this appeal should be remanded for factual development because "fixed" can also reasonably be interpreted to mean "not tied to an index." See Concurrence and Dissent at 1208"09. But it is precisely because reasonable consumers can interpret an ambiguous disclosure in more than one way that such a disclosure cannot be clear and conspicuous. See, e.g., Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803, 808 (7th Cir.2001). Furthermore, because TILA is liberally construed in favor of the consumer and strictly enforced against the creditor, Jackson, 890 F.2d at 120, any misleading ambiguity any disclosure that a reasonable person could read to mean something that is not accurate "should be resolved in favor of the consumer." Rossman, 280 F.3d at 394. | Because Truth in Lending Act (TILA) is liberally construed in favor of the consumer and strictly enforced against the creditor, any misleading ambiguity, that is, any disclosure that a reasonable person could read to mean something that is not accurate, should be resolved in favor of the consumer. Truth in Lending Act, S 127(c)(1)(A)(i)(I), 15 U.S.C.A. S 1637(c)(1)(A)(i)(I). | Is TILA liberally construed in favor of the consumer? | 013944.docx | LEGALEASE-00153923-LEGALEASE-00153924 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7022 | Bilnoski v. Pizza Inn, 858 S.W.2d 55 | 307A+581 | In his first point of error, Appellant maintains that the trial court abused its discretion in dismissing his case without first providing notice of its intent to dismiss. A trial court may dismiss a case for want of prosecution (1) when a party fails to appear at a hearing or at trial, (2) when the case has not been disposed of within the supreme court's guidelines, and (3) when a case has not been prosecuted with due diligence.City of Houston v. Thomas, 838 S.W.2d 296, 297 (Tex.App."Houston [1st Dist.] 1992, no writ). The trial court's authority to dismiss is derived both from Tex.R.Civ.P. 165 and its own inherent powers. City of Houston at 297. When an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. Hosey v. County of Victoria, 832 S.W.2d 701, 704 (Tex.App."Corpus Christi 1992, no writ). If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed. Id. The trial court is required to provide litigants with notice of its intent to dismiss. Id. at 705. | Trial court may dismiss case for want of prosecution when party fails to appear at hearing or at trial, when case has not been disposed of within Supreme Court's guidelines, and when case has not been prosecuted with due diligence; authority to dismiss is derived both from rules of civil procedure and from court's inherent powers. Vernon's Ann.Texas Rules Civ.Proc., Rule 165. | Can a court dismiss a case for want of prosecution when the case has not been prosecuted with due diligence? | 038754.docx | LEGALEASE-00154254-LEGALEASE-00154255 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7023 | Russell v. SNFA, 2013 IL 113909 | 106+35 | It is settled that the plaintiff has the burden to establish a prima facie basis to exercise personal jurisdiction over a nonresident defendant. Wiggen v. Wiggen, 2011 IL App (2d) 100982, 20, 352 Ill.Dec. 572, 954 N.E.2d 432. When, as here, the circuit court decides a jurisdictional question solely on documentary evidence, without an evidentiary hearing, our review is de novo. Any conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor, but the defendant may overcome plaintiff's prima facie case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction. | Any conflicts in the pleadings and affidavits regarding personal jurisdiction over a nonresident defendant must be resolved in the plaintiff's favor; but, the defendant may overcome plaintiff's prima facie case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction. | Should any conflicts in the pleadings and affidavits be resolved in the plaintiff's favor? | 038942.docx | LEGALEASE-00154439-LEGALEASE-00154440 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 7024 | Abate v. Fremont Inv. & Loan, 470 Mass. 821 | 307A+685 | Standard of review of a motion to dismiss in the "first step" of a try title action. In a typical case, a plaintiff is required to prove jurisdictional facts if those facts are challenged by an opposing party through evidence accompanying a motion to dismiss. Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 710"711, 808 N.E.2d 301 (2004) ("factual challenge" to subject matter jurisdiction, made through presentation of extrapleadings material, "gives no presumptive weight to the averments in the plaintiff's complaint, and requires the court to address the merits of the jurisdictional claim by resolving the factual disputes between the plaintiff and the defendants"). In Bevilacqua, 460 Mass. at 764 n. 2, 955 N.E.2d 884, we recognized some of the difficulties of applying the procedure and standards of rule 12(b)(1) or rule 12(b)(6) to try title actions. | In a typical case, a plaintiff is required to prove jurisdictional facts if those facts are challenged by an opposing party through evidence accompanying a motion to dismiss. | "In a typical case, is a plaintiff required to prove jurisdictional facts if those facts are challenged by an opposing party?" | Pretrial Procedure - Memo # 9556 - C - UG_61174.docx | ROSS-003295096-ROSS-003295097 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7025 | Long v. Cochran, 247 Ga. 483 | 307A+581 | A dismissal for want of prosecution based upon the non-appearance of the plaintiff is not warranted where plaintiff's counsel is present in his client's stead.See Elmer Fox, Westheimer & Co. v. B-X Corp., 146 Ga.App. 385, 386, 246 S.E.2d 413 (1978); Franks v. Reid, 128 Ga.App. 454, 197 S.E.2d 154 (1973); Johnston v. Dollar, 89 Ga.App. 876, 881, 81 S.E.2d 502 (1954). As appellant's absence at the time her case was called is the sole basis of the trial court's ruling, the judgment must be reversed. Although no transcript of the lower court proceedings appears in the record, "a proper determination of the issues in this case does not require an examination of the transcript of evidence from the lower court (see, e. g., Irby v. Christian, 130 Ga.App. 375(2), 203 S.E.2d 284 revd. on other grounds, 232 Ga. 384, 207 S.E.2d 23 ..." Burnett v. Pace, 151 Ga.App. 111, 112, 258 S.E.2d 765 (1979); Cook-Davis Furniture Co., Inc. v. Duskin, 134 Ga.App. 264, 267, 214 S.E.2d 565 (1975). The trial court's order is erroneous as a matter of law. See McAllister v. City of Jonesboro, 242 Ga. 95, 249 S.E.2d 565 (1978). | Dismissal for want of prosecution based upon non-appearance of plaintiff is not warranted where plaintiff's counsel is present in his client's stead. | Is dismissal for want of prosecution based upon non-appearance of the plaintiff warranted where plaintiffs counsel is present in his clients stead? | 038998.docx | LEGALEASE-00154793-LEGALEASE-00154794 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7026 | Geraty v. Carbona Prod. Co., 16 Ill. App. 3d 702 | 307A+581 | The law regarding a court's dismissal of a cause of action for want of prosecution is clear and well-established. A dismissal of a valid cause of action is error unless plaintiff has been guilty of inexcusable delay in prosecuting the suit. (Epley v. Epley (1928), 328 Ill. 582, 160 N.E. 113.) However, a reviewing court will not interfere with the order in the absence of a manifest abuse of discretion. Nowaczyk v. Welch (1969), 106 Ill.App.2d 453, 245 N.E.2d 894. | Dismissal of valid cause of action is error unless plaintiff has been guilty of inexcusable delay in prosecuting the suit. | Is dismissal of a valid cause of action error unless the plaintiff has been guilty of inexcusable delay in prosecuting the suit? | 039183.docx | LEGALEASE-00154771-LEGALEASE-00154772 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7027 | State ex rel. Hansen v. Schall, 126 Conn. 536 | 308+92(1) | The defendants' fundamental and final claim requiring consideration calls for the determination whether under No. 189 of the Special Acts of 1917, the plaintiff as an inhabitant of West Haven has the right to an inspection of the records by his agent who is a noninhabitant. "As a general proposition every person who is suijuris may appoint an agent for any purpose whatsoever; and this is no less true when he assumes to exercise a statutory right than it is in other cases." 2 Am.Jur. 19, " 11. Thus the general rule applicable to acts done under a statute, as much as to any other class of acts, is that "whatever a person may lawfully do, if acting in his own right and in his own behalf, he may lawfully delegate to an agent." 1 Mechem, on Agency, 2d Ed., " 80; Jackson & Co. v. Napper, L.R. 35 Ch.Div. 162, 172; Hawes v. White, 66 Me. 305, 306; Finnegan v. Lucy, 157 Mass. 439, 32 N.E. 656; McClanahan v. Breeding, 172 Ind. 457, 88 N.E. 695. However, "an authority which is conferred, or a duty which is created by statute, may, by the express terms or necessary effect of the act, be required to be performed by the person only who is named. the language of the statute, the end to be accomplished, or the evil to be remedied, may be such as to demand a personal execution." Mechem, supra, "" 124, 125. "In order to make out that a right conferred by statute is to be exercised personally, and not by an agent, you must find something in the act, either by way of express enactment or necessary implication, which limits the common law right of any person who is sui juris to appoint an agent to act on his behalf." Jackson & Co. v. Napper supra; and see Webb v. Ambler, 125 Conn. 543, 552, 7 A.2d 228. | A statute may require authority conferred or duty created thereby to be performed only by the person named therein, rather than by agent, if there is something in the statute either by express enactment or necessary implication, limiting the common law right of any person who is sui juris to appoint an agent to act in his behalf. | How is it determined if a right conferred by statute to an agent is to be exercised personally? | Principal and Agent - Memo 250 - KC_61130.docx | ROSS-003278424-ROSS-003278425 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 7028 | Standard Builders Supplies v. Gush, 206 A.D.2d 720 | 308+14(2) | Thus, there was a question of fact for Supreme Court to determine whether Hancox and other Stablegate employees were acting as agents for the Gushes in connection with the purchase of the furnishings. It is undisputed that an agency may be established by conduct, as well as by a written or oral contract (see, Heine v. Papp, 97 A.D.2d 929, 471 N.Y.S.2d 18). Further, an agency relationship established by conduct may create an agency of apparent authority, established by words or conduct of a principal communicated to a third party, if it gives rise to an apparent and reasonable basis by the third party that an agency has been created and the agent possesses the authority to enter into a transaction (see, Legal Aid Socy. of Northeastern N.Y. v. Economic Opportunity Commn. of Nassau County, 132 A.D.2d 113, 521 N.Y.S.2d 833; Lynch v. Lynch, 122 A.D.2d 572, 505 N.Y.S.2d 739, lv. denied 68 N.Y.2d 610, 508 N.Y.S.2d 1027, 501 N.E.2d 600). Such apparent authority may exist even if the principal did not actually subjectively intend to create an agency relationship, as long as the third party's reliance upon the principal's statement or conduct is reasonable (see, Hoysradt v. Nilles Ford"Mercury, 168 A.D.2d 824, 563 N.Y.S.2d 956). | Agency relationship established by conduct may create agency of apparent authority, established by words or conduct of principal communicated to third party, if it gives rise to apparent and reasonable basis by third party that agency has been created and agent possesses authority to enter into transaction. | How is an agency relationship established? | 041629.docx | LEGALEASE-00154623-LEGALEASE-00154624 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7029 | Matter of Sutton Investments, 46 N.C. App. 654 | 266+858 | The general rule of contract is that "(a)ll contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken." Yates v. Brown, 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969). Thus, where a note and a deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine the intent of the parties. Bank v. Belk, 41 N.C.App. 356, 255 S.E.2d 421, cert. denied 298 N.C. 293, 259 S.E.2d 911 (1979); see, Frye v. Crooks, 258 N.C. 199, 128 S.E.2d 257 (1962). Of course, if the language in the separate instruments defining the conditions upon which a power of sale may be exercised is contradictory, language in a deed of trust expressly limiting the exercise will govern. Worley v. Worley, 214 N.C. 311, 199 S.E. 82 (1938). | Where note and deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine intent of parties. | "When a note is executed and secured by a deed of trust, is the documents read and construed together as one contract?" | 009389.docx | LEGALEASE-00155466-LEGALEASE-00155467 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 7030 | Nat'l Westminster Bank USA v. Century Healthcare Corp., 885 F. Supp. 601 | 101+1058 | Lender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. See In re Prima Co., 98 F.2d 952, 965 (7th Cir.1938), cert. denied, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426 (1939) ("No doubt the debtor, because of its inability to meet its maturing obligations, acquiesced in Harris' recommendations [to install new management], but this we think is not sufficient to constitute domination of its will."). There is nothing inherently wrong with suggesting what course the debtor ought to follow. Unless the creditor has become, in effect, the alter ego of the debtor, he will not be held to an ethical duty in excess of the morals of the market place. In re Teltronics Services, Inc., 29 B.R. 139, 171 (Bankr.E.D.N.Y.1983). | Lender liability is predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own and was being used to further purposes of dominant corporation. | Is lender liability predicated on an unmistakable showing that subservient corporation in reality has no separate existence of its own? | Bills and Notes-Memo 1201-SB_61828.docx | ROSS-003283945-ROSS-003283946 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7031 | Nat'l Westminster Bank USA v. Century Healthcare Corp., 885 F. Supp. 601 | 101+1058 | Lender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. See In re Prima Co., 98 F.2d 952, 965 (7th Cir.1938), cert. denied, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426 (1939) ("No doubt the debtor, because of its inability to meet its maturing obligations, acquiesced in Harris' recommendations [to install new management], but this we think is not sufficient to constitute domination of its will."). There is nothing inherently wrong with suggesting what course the debtor ought to follow. Unless the creditor has become, in effect, the alter ego of the debtor, he will not be held to an ethical duty in excess of the morals of the market place. In re Teltronics Services, Inc., 29 B.R. 139, 171 (Bankr.E.D.N.Y.1983) | Lender liability is predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own and was being used to further purposes of dominant corporation. | Is lender liability predicated on an unmistakable showing that subservient corporation in reality has no independent existence of its own? | 010850.docx | LEGALEASE-00155716-LEGALEASE-00155717 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7032 | Patterson v. ITT Consumer Fin. Corp., 14 Cal. App. 4th 1659 | 95+1.11(1) | Two alternative analyses exist under California law for determining whether a contractual provision will be unenforceable because it is unconscionable. (Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 924, fn. 9, 216 Cal.Rptr. 345, 702 P.2d 503 ["Both [analytical] pathways should lead to the same result."].) The first model set out in Graham v. Scissor"Tail, Inc. (1981) 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 asks initially whether the contract is one of adhesion. (Id. at p. 819, 171 Cal.Rptr. 604, 623 P.2d 165.) Since a contract of adhesion is still fully enforceable, the inquiry then turns to whether enforcement should be denied. First, enforcement will be denied if the contract or provision falls outside the reasonable expectations of the weaker party. (Id. at p. 820, 171 Cal.Rptr. 604, 623 P.2d 165.) Second, enforcement will be denied even if it does fall within the reasonable expectations of the parties, but it is unduly oppressive or unconscionable. (Ibid.) | Under Graham model for determining whether contractual provision is unconscionable, court asks initially whether contract is one of adhesion; inquiry then turns to whether enforcement should be denied; first, enforcement will be denied if contract or provision falls outside reasonable expectations of weaker party; second, enforcement will be denied if it does fall within reasonable expectations of parties, but it is unduly oppressive or unconscionable. | Does a court's determination if a contract is unconscionable within a contracting party's reasonable expectations is based on its initial determination whether the contract is a contract of adhesion? | 013778.docx | LEGALEASE-00155285-LEGALEASE-00155286 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 7033 | Briosos v. Wells Fargo Bank, 737 F. Supp. 2d 1018 | 172H+1556 | As both parties recognize, there is a split of authority regarding whether " 1635(f) requires a borrower to file a rescission claim within three years after a transaction is consummated, or whether the borrower must only assert his right to rescission within that period. In support of its position, Defendant primarily relies on the Ninth Circuit's decision in Miguel v. Country Funding Corp., 309 F.3d 1161 (9th Cir.2002). In that case, the Ninth Circuit reviewed the Supreme Court's decision in Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), and held that " 1635(f) "is a statute of repose, depriving the courts of subject matter jurisdiction when a " 1635 claim is brought outside the three-year limitation period." Miguel, 309 F.3d at 1164. Accordingly, the Ninth Circuit determined that "[b]ecause [the plaintiff] did not attempt to rescind against the proper [creditor] within the three-year limitation period, her right to rescind [under " 1635] expired."] | Three year period governing Truth in Lending Act (TILA) rescission claims only required that borrower exercise his right to rescind within the three-year period; it did not require that he file a rescission claim within that period. Truth in Lending Act, S 125(f), 15 U.S.C.A. S 1635(f). | Does the three year limitation period governing TILA rescission claims require that the borrower file a rescission claim within the period? | 013789.docx | LEGALEASE-00155518-LEGALEASE-00155519 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 7034 | Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 | 172H+1536 | 15 U.S.C. s 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. s 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. See Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979). | Strict technical compliance with the Truth in Lending Act, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | "Does strict technical compliance, regardless of actual injury, promote the standardization of credit terms?" | Consumer Credit - Memo 206 - RK_61868.docx | ROSS-003296058-ROSS-003296059 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7035 | In re Lopez, 486 B.R. 221 | 172H+117 | The Debtors claim that the Defendants violated TILA and the MCCCDA by failing to provide the Debtors with a total of four Notices of Right to Cancel ("Notices") as required under those statutes. Even were the Debtors' claim not time barred, as the Defendants assert, the First Circuit Court of Appeals has now clarified that, so long as a borrower receives one Notice, the rescission period may not be extended under either statute. See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 216 (1st Cir.2012); Cromwell v. Countrywide Home Loans, Inc., 483 B.R. 36, 43"44 (D.Mass.2012). | So long as a borrower receives one notice of right to cancel, the rescission period may not be extended under either the Truth in Lending Act (TILA) or the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA). Consumer Credit Protection Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; M.G.L.A. c. 140D, S 10 et seq. | Does failing to provide the debtors with a total of four Notices of Right to Cancel amount to violation of Truth in Lending Act (TILA) and do not extend the rescission period? | 014047.docx | LEGALEASE-00155432-LEGALEASE-00155433 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 7036 | Com. v. Mulvey, 57 Mass. App. Ct. 579 | 129+107 | The public element of the offense is readily met in cases where the proscribed conduct takes place on public streets, see Commonwealth v. Mulero, 38 Mass.App.Ct. 963, 963"964, 650 N.E.2d 360 (1995); or by the side of a highway, see Commonwealth v. Bosk, 29 Mass.App.Ct. 904, 906"907, 556 N.E.2d 1055 (1990). It also may be satisfied where the disturbance takes place in a more secluded environment, but only if members of the public are likely to be affected. See Commonwealth v. Collins, 36 Mass.App.Ct. 25, 33, 627 N.E.2d 941 (1994) (disruption occurred in area of police station that was public place); Commonwealth v. LePore, 40 Mass.App.Ct. 543, 549, 666 N.E.2d 152 (1996) (voyeur's conduct, even though unseen by victim, occurred in public alley). Compare Commonwealth v. Blavackas, 11 Mass.App.Ct. 746, 747"750, 419 N.E.2d 856 (1981) (defendant's sexual solicitation and conduct should not have been prosecuted as disorderly conduct; regardless, public element was not met where acts took place in car parked fifty feet from street, up driveway and on lawn area of house). | "Public" element of offense of disorderly conduct may be satisfied if disturbance takes place in a more secluded environment than, for example, on public street or by side of highway, but only if members of the public are likely to be affected. M.G.L.A. c. 272, S 53. | Can the public element of an offense be satisfied only if members of the public are likely to be affected? | Disorderly Conduct-Memo 140- JK.docx | LEGALEASE-00044771-LEGALEASE-00044772 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7037 | Lindley v. McKnight, 349 S.W.3d 113 | 156+52(1) | As Lindley has recognized, "acceptance of benefits" is a species of quasi-estoppel. Lopez v. Mu"oz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex.2000); Duncan Land & Exploration, Inc. v. Littlepage, 984 S.W.2d 318, 330 (Tex.App.-Fort Worth 1998, pet. denied). Quasi-estoppel is an affirmative defense that precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. Clark v. Cotten Schmidt, L.L.P., 327 S.W.3d 765, 770 (Tex.App.-Fort Worth 2010, no pet.). The defense applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced or from which he accepted a benefit. Id.; Lopez, 22 S.W.3d at 864. Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. Clark, 327 S.W.3d at 770. | "Quasi-estoppel" is an affirmative defense that precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. | Is quasi-estoppel an affirmative defense that precludes a party from asserting a right inconsistent with a position previously taken? | 018089.docx | LEGALEASE-00155362-LEGALEASE-00155363 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7038 | Thorson v. W. Dev. Corp., 251 Cal. App. 2d 206 | 228+101(1) | In the early case of Brooks v. Forington, 117 Cal. 219, 220, 48 P. 1073, the Supreme Court held, "The relief "demanded in his complaint" is held to refer to the relief asked in the Prayer,"the feature of the pleading to which alone reference may be had in default cases to ascertain what relief the plaintiff seeks; * * *.' Thus the allegation contained in the body of their complaint may not cure a defect in the prayer (demand) of the complaint, and the jurisdiction of the trial court to enter the default judgment must be resolved solely by reference to that prayer. (Gudarov v. Hadjieff, supra, 38 Cal.2d 412, 416, 240 P.2d 621; Lee v. Ski Run Apartments Associates, 249 Cal.App.2d 293, 57 Cal.Rptr. 496.) | Allegation contained in body of complaint may not cure defect in prayer of complaint and jurisdiction of court to enter default judgment must be resolved solely by reference to that prayer. | Does the allegation contained in the body of a complaint cure a defect in the prayer? | Pleading - Memo 545 - RMM_61965.docx | ROSS-003293789-ROSS-003293790 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7039 | Glaser v. LeBus, 2012-NMSC-012 | 307A+681 | We review de novo the district court's grant of Appellees' motion to dismiss and for judgment on the pleadings. See Delfino v. Griffo, 2011"NMSC"015, 9, 150 N.M. 97, 257 P.3d 917. A motion to dismiss "tests the legal sufficiency of [a] plaintiff's complaint," and "should be granted only when it appears that the plaintiff is not entitled to recover under any facts provable under the complaint." Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. 706, 709, 845 P.2d 800, 803 (1992). A judgment on the pleadings is treated as a motion to dismiss when the district court considers matters contained solely within the pleadings. | A judgment on the pleadings is treated as a motion to dismiss when the district court considers matters contained solely within the pleadings. | Is a judgment on the pleadings treated as a motion to dismiss when the district court considers matters contained solely within the pleadings? | 039000.docx | LEGALEASE-00154813-LEGALEASE-00154814 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7040 | Parlen v. Golden State Sanwa Bank, 194 Cal. App. 3d 906 | 307A+581 | Mindless or needless overdiscovery results in overbilling of clients and contributes to the clogging of the courts. It should be discouraged not encouraged. Thus, whether formal discovery has been conducted is but one important factor in the "totality of the circumstances" to be considered in deciding whether to dismiss "for delay in prosecution." It must not be the only determinant nor should it be given undue emphasis in making the determination of excusable delay or good cause. | Whether formal discovery has been conducted is but one important factor in totality of circumstances to be considered in deciding whether to dismiss for delay in prosecution. | What is the important factor in totality of circumstances to be considered in deciding whether to dismiss for delay in prosecution? | 039041.docx | LEGALEASE-00154865-LEGALEASE-00154866 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 7041 | D'hondt v. Regents of Univ. of California, 153 Cal. App. 3d 723 | 307A+581 | The more compelling policy of favoring the resolution of a case on the merits will only prevail where the plaintiff makes some showing of excusable delay. (Ibid.) It is certainly reasonable to expect a greater showing of excuse as the case gets progressively older. (See Feingersh v. Lutheran Hospital Society (1977) 66 Cal.App.3d 406, 411, 136 Cal.Rptr. 155.). | While the policy underlying the statute providing for dismissal of actions for want of prosecution and failure to bring such actions to trial is less powerful than that which seeks to dispose of litigation on the merits, an alleged wrong, without more, is insufficient to undermine the policy of such statute; the more compelling policy of favoring the resolution of a case on the merits will only prevail where the plaintiff makes some showing of excusable delay. West's Ann.Cal.C.C.P. S 583(a). | Will the more compelling policy of favoring the resolution of a case on the merits prevail where the plaintiff makes some showing of excusable delay? | 039087.docx | LEGALEASE-00155195-LEGALEASE-00155196 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 7042 | Rumfelt v. Himes, 438 N.E.2d 980 | 307A+581 | Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution." The trial court may dismiss an action when a party fails to comply with the rules or when no action has been taken in a case for at least sixty days. Farinelli v. Campagna (1975) 166 Ind.App. 587, 338 N.E.2d 299. | Trial court may dismiss action when a party fails to comply with rules or when no action has been taken in case for at least 60 days. Trial Procedure Rule 41(E). | Can court dismiss action when a party fails to comply with rules or when no action has been taken in case for at least sixty days? | Pretrial Procedure - Memo # 9671 - C - TM_61572.docx | ROSS-003282621-ROSS-003282622 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7043 | City of Miami v. Dade Cty., 321 So. 2d 140 | 307A+581 | We agree that the primary purpose of the rule governing dismissals for failure to prosecute is to expedite the course of litigation and require litigants to keep the court dockets as nearly current as possible. We also take the view that it is incumbent on the courts to do likewise and we so interpret the language and intent of Rule 1.440(c). Reversed and remanded with directions to reinstate the cause. | Primary purpose of rule governing dismissal for failure to prosecute is to expedite course of litigation and require litigants to keep court dockets as nearly current as possible, and it is incumbent on courts to do likewise. 30 West's F.S.A. Rules of Civil Procedure, rules 1.440, 1.440(c). | What is the primary purpose of rule governing dismissal for failure to prosecute? | Pretrial Procedure - Memo # 9706 - C - VP_61976.docx | ROSS-003282300 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 7044 | Nicholson v. Ballard, 7 Wash. App. 230 | 307A+581 | The purpose of Civil Rule 41 are at least twofold: first, to protect litigants from dilatory counsel, and second, to prevent the cluttering of court records with unresolved and inactive litigation. Franks v. Douglas, 57 Wash.2d 583, 358 P.2d 969 (1961). To allow vacation of an order of dismissal under CR 41 would be contrary to the purposes for such a rule. To limit defendant to an appeal after trial is insufficient in this situation, as the whole purpose of the rule is to limit unnecessary delay and expense. | Purposes of rule governing dismissal of actions are to protect litigants from dilatory counsel and to prevent cluttering of court records with unresolved and inactive litigation. CR 41. | Is the purpose of rule governing dismissal of actions to prevent cluttering of court records with unresolved and inactive litigation? | 039194.docx | LEGALEASE-00154851-LEGALEASE-00154852 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 7045 | Coast to Coast Energy v. Gasarch, 149 A.D.3d 485 | 307A+684 | On a motion to dismiss pursuant to CPLR 3211(a)(8), the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction (see Fischbarg v. Doucet, 9 N.Y.3d 375, 381 n. 5, 849 N.Y.S.2d 501, 880 N.E.2d 22 [2007]; Copp v. Ramirez, 62 A.D.3d 23, 28, 874 N.Y.S.2d 52 [1st Dept.2009], lv. denied 12 N.Y.3d 711, 882 N.Y.S.2d 397, 909 N.E.2d 1235 [2009] ). Here, plaintiffs failed to carry their burden in pleading purposeful activities in New York by defendant John Wampler, allegedly a resident of Switzerland and Texas, sufficient to establish long-arm jurisdiction pursuant to CPLR 302(a)(1). | On a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction. McKinney's CPLR 3211(a)(8). | "On a motion to dismiss for lack of personal jurisdiction, does the plaintiff have the burden of presenting sufficient evidence?" | Pretrial Procedure - Memo # 9790 - C - SHB_61415.docx | ROSS-003281593-ROSS-003281594 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7046 | State of S.C. ex rel. Tindal v. Block, 717 F.2d 874 | 371+2002 | The deduction, however, is not a tax. The mere fact a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised. Head Money Cases, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884). The imposition of assessments have long been held to be a legitimate means of regulating commerce. See, e.g., Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). If regulation is the primary purpose of a statute, revenue raised under the statute will be considered a fee rather than a tax. United States v. Stangland, 242 F.2d 843, 848 (7th Cir.1957); Rodgers v. United States, 138 F.2d 992, 994 (6th Cir.1943). | Mere fact that a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised; if regulation is the primary purpose of a statute, revenue raised under the statute will be considered a fee rather than a tax. U.S.C.A. Const. Art. 1, S 7, cl. 1; U.S.C.A. Const. Art. 1, S 8, cl. 1. | Does the mere fact a statute raises revenue imprint upon it the characteristics of a law by which the taxing power is exercised? | 046110.docx | LEGALEASE-00155797-LEGALEASE-00155798 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 7047 | Gunby v. Yates, 214 Ga. 17 | 371+2002 | Whether there is any merit to this constitutional attack depends upon the answer to this question: Does the provision of section 8 of the amended act, authorizing the collection of one dollar for each marriage license sold, amount to a fee or compensation for services rendered, or rather is it a tax levied upon the sale of the marriage license? A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered. United States v. Butler, 279 U.S. 1, 61, 56 S.C. 312, 80 L.Ed. 477; Central Savings Bank in City of New York v. City of New York, 279 N.Y. 266, 18 N.E.2d 151, 121 A.L.R. 607; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 S.E.2d 744, 167 A.L.R. 1347; Pittsburgh Milk Co. v. City of Pittsburgh, 360 Pa. 360, 62 A.2d 49; Memphis Natural Gas Co. v. McCanless, 183 Tenn. 635, 194 S.W.2d 476. As a general rule, fees prescribed for public officers are not taxes but **551 compensation for particular services, unless the object and purpose of the charge is to provide general revenue rather than compensation for services rendered. Dickson v. Jefferson County Board of Education, 311 Ky. 781, 225 S.W.2d 672; State v. Montevallo Coal Mining Co., 29 Ala.App. 318, 197 So. 82. A fee is a charge fixed by law as compensation for a public officer, while a tax is a forced contribution to the public needs of government. Stewart v. Verde River Irrigation & Power District, 49 Ariz. 531, 68 P.2d 329. If a fee is required for a license to carry on a business and is intended to raise revenue, its exaction is an exercise of the power of taxation. Home Insurance Co. of New York v. City Council of Augusta, 50 Ga. 530; Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206(2), 56 S.E.2d 254. | A "tax" is an enforced contribution exacted pursuant to legislative authority for purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or service rendered by a public officer, which is a "fee." | Is tax a payment for a special privilege or a service rendered? | 046114.docx | LEGALEASE-00155809-LEGALEASE-00155810 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 7048 | Linahan v. Linahan, 131 Conn. 307 | 156+52(2) | The defendant also claims that the plaintiffs are guilty of laches and are estopped from taking the position that there was a trust which continued in existence until the death of James. There are no grounds whatsoever upon which the first claim could rest. The basis of an estoppel is unjust advantage which, if the principle were not applied, one person would be able to take of another; it rests upon "the misleading conduct of one party to the prejudice of the other." MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 548, 173 A. 783, 787. It is a fundamental rule as regards estoppel by conduct that the person claiming an estoppel "must show that he exercised due diligence to know the truth * * * and that he was destitute, not only of knowledge of the true state of things, "but also of any convenient or available means of acquiring such knowledge."' Weidemann v. Springfield Breweries Co., 78 Conn. 660, 664, 63 A. 162, 164; Graham v. Southington Bank & Trust Co., 99 Conn. 494, 509, 121 A. 812; Myers v. Burke, 120 Conn. 69, 76, 179 A. 88. As we have pointed out, James was from the beginning a participant in the manner in which the property was handled; he benefited substantially from the methods followed; and there is no suggestion in the record that he did not know as much about the various transactions as did the plaintiffs. Certainly his widow, who derives all her rights from him, cannot claim that they are estopped from maintaining that a trust was established and continued until January 1, 1940. 31 C.J.S., Estoppel, " 132, p. 399. | The basis of estoppel is unjust advantage which, if the principle were not applied, one person would be able to take of another, and it rests on misleading conduct of one party to the prejudice of the other. | Does estoppel rest on misleading conduct of one party to the prejudice of the other? | 017759.docx | LEGALEASE-00156026-LEGALEASE-00156027 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7049 | Lord v. Shaw, 665 P.2d 1288 | 302+34(2) | Specific averments in pleading are usually given precedence over general ones regarding the same matter. The specific averments are deemed to supplant, limit and control the general allegations. Hall v. Delvat, 95 Ariz. 286, 389 P.2d 692 (1964). The five causes of action referred to in the sixth cause of action limit and control the more general "course of conduct designed and calculated to cause [appellant] to suffer." Both by the choice of the verbs, "designed and calculated," and by the reference to the other five causes of action, appellant alleged a sixth cause of action which arises from the intentional torts of assault and battery. | Specific averments in pleading are usually given precedence over general ones regarding same matter; specific averments are deemed to supplant, limit, and control general allegations. | Are specific averments in pleading given precedence over general ones regarding the same matter? | 023801.docx | LEGALEASE-00156315-LEGALEASE-00156316 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7050 | Nelson v. Comm'r of Correction, 167 A.3d 952 | 307A+685 | We disagree with the petitioner that the assertions contained in his memorandum of law were on equal footing with the allegations contained in the habeas petition and, therefore, should have been taken as true and viewed in the light most favorable to the petitioner. It is clear that a memorandum of law is not a proper vehicle for supplementing the factual allegations in a complaint; see, e.g., Practice Book " 10"31 (party responding to motion to dismiss shall have thirty days to file "a memorandum of law in opposition and, where appropriate, supporting affidavits as to facts not apparent on the record " [emphasis added] ); Connecticut Independent Utility Workers, Local 12924 v. Dept. of Public Utility Control, 312 Conn. 265, 281, 92 A.3d 247 (2014) ("[T]o the extent that the plaintiffs contend that memoranda of law or exhibits submitted to the trial court cured any potential deficiencies in their allegations, they are mistaken.... | A memorandum of law is not a proper vehicle for supplementing the factual allegations in a complaint, for purposes of motion to dismiss. Conn. Practice Book S 10-31. | "Is a memorandum of law not a proper vehicle for supplementing the factual allegations in a complaint, for purposes of a motion to dismiss?" | 024513.docx | LEGALEASE-00156347-LEGALEASE-00156348 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7051 | Santucci v. Pearsall, 99 A.D.2d 775 | 307A+587 | Plaintiffs failed to comply with a 90-day notice served upon them pursuant to CPLR 3216. They also did not seek to extend the time to comply or to vacate the notice. In opposing the instant motion to dismiss, made in August, 1982, four months after service of the 90-day notice, plaintiffs failed to furnish an affidavit of merit. In light of the delay in filing the note of issue, such an affidavit was mandatory. Its omission necessitates the granting of this motion (see, e.g., LaBuda v. Brookhaven Mem. Hosp. Med. Center, App.Div., 469 N.Y.S.2d 112 [2d Dept.1983]; Savino v. Guido, 81 A.D.2d 860, 438 N.Y.S.2d 869). | Where plaintiffs failed to comply with 90-day notice served upon them pursuant to statute governing want of prosecution, did not seek to extend time to comply or vacate notice, and, in opposing motion to dismiss four months after service of 90-day notice, failed to furnish affidavit of merit, which, in light of delay in filing note of issue, was mandatory, action would be dismissed for failure to prosecute. McKinney's CPLR 3216. | "Should a plaintiff present an affidavit of merit, or its equivalent to defeat motion to dismiss?" | 024531.docx | LEGALEASE-00156220-LEGALEASE-00156221 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 7052 | Carl J. Herzog Found. v. Univ. of Bridgeport, 41 Conn. App. 790 | 307A+685 | A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. Barde v. Board of Trustees, 207 Conn. 59, 63, 539 A.2d 1000 (1988). A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits. Bradley's Appeal From Probate, 19 Conn.App. 456, 563 A.2d 1358 (1989). If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken. Weidenbacher v. Duclos, 234 Conn. 51, 54 n. 5, 661 A.2d 988 (1995). In this case there were no accompanying affidavits, no hearing was held and the defendant accepted the allegations of the plaintiff's complaint as true, for the purpose of the motion to dismiss only. There is no transcript and there are no exhibits. We, therefore, decide the appeal solely on the allegations of the plaintiff's complaint. | Motion to dismiss raises question whether jurisdictional flaw is apparent on record or by way of supporting affidavits. | Does a motion to dismiss raise a question whether jurisdictional flaw is apparent on record or by way of supporting affidavits? | Pretrial Procedure - Memo # 10179 - C - NC_61708.docx | ROSS-003295015-ROSS-003295016 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7053 | OHBA Corp. v. City of Carrollton, 203 S.W.3d 1 | 307A+690 | OHBA also asserts its lawsuit should not have been dismissed with prejudice. In general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect. See Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex.2004). The supreme court has determined that dismissal with prejudice is appropriate when a trial court lacks subject matter jurisdiction because of the sovereign immunity bar. Id.; Bell v. City of Grand Prairie, 160 S.W.3d 691, 695 (Tex.App.-Dallas 2005, no pet.). | Dismissal with prejudice is appropriate when trial court lacks subject matter jurisdiction because of sovereign immunity bar. | Is a dismissal with prejudice appropriate when trial court lacks subject matter jurisdiction because of a sovereign immunity bar? | Pretrial Procedure - Memo # 10357 - C - BP_62179.docx | ROSS-003295012 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7054 | Comm'n on Human Rights & Opportunities v. City of Torrington, 901 A.2d 46 | 307A+690 | A dismissal without prejudice "terminates litigation and the court's responsibilities, while leaving the door open for some new, future litigation." Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 104 (2d Cir.2005). "It is well established that a dismissal without prejudice has no res judicata effect on a subsequent claim." Camarano v. Irvin, 98 F.3d 44,47 (2d Cir.1996). | A dismissal without prejudice terminates litigation and the court's responsibilities, while leaving the door open for some new, future litigation. | "Does a dismissal without prejudice terminate litigation and the court's responsibilities, while leaving the door open for some new, future litigation?" | Pretrial Procedure - Memo # 10360 - C - BP_62085.docx | ROSS-003295302-ROSS-003295303 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 7055 | In re R.H., 313 Ga. App. 416 | 67+3 | R.H. also contends that there was insufficient evidence of intent to commit burglary. Indeed, "mere illegal entry alone does not satisfy all the elements of the crime of burglary; some evidence must also exist of an intent to commit a felony or, as in this case, a theft, separate and distinct from the unauthorized entry." (Citation omitted.) Westmoreland v. State, 281 Ga.App. 497, 499(2), 636 S.E.2d 692 (2006). "An intent to steal may be inferred when the evidence shows an unlawful entry into the building of another where valuable goods are stored or kept inside." (Punctuation and footnote omitted.) In the Interest of T.C., 310 Ga.App.482, 483, 714 S.E.2d 69 (2011). Here, the victim described valuable items that were missing from her residence, including $450 in cash, three DVD movies, and two video games. She also reported that her gaming system and video games had been disturbed. Moreover, R.H. was aware that items of value, specifically including the video games, were located inside the neighbor's residence. This evidence authorized the juvenile court, sitting as the trier of fact, to infer that R.H. entered the residence with the intent to commit a theft. Cf. id. ("The evidence that boxes had been ransacked, and that the [victim's] home was devoid of electronics, authorized the juvenile court, sitting as the trier of fact, to infer that [the juvenile] entered the residence with the intent to commit a theft but found nothing he wished to take."). | Mere illegal entry alone does not satisfy all the elements of the crime of burglary; some evidence must also exist of an intent to commit a felony or a theft, separate and distinct from the unauthorized entry. | Are unlawful entry and intent distinct elements of burglary? | 013094.docx | LEGALEASE-00156547-LEGALEASE-00156548 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7056 | Cotter v. Dias, 130 A.3d 164 | 307A+690 | Nevertheless, we concur with the First Circuit Court of Appeals that "[d]ismissal with prejudice "is a harsh sanction," which runs counter to our "strong policy favoring the disposition of cases on the merits." " Benjamin v. Aroostook Medical Center, Inc., 57 F.3d 101, 107 (1st Cir.1995) (quoting Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir.1971) and Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir.1977)). | Dismissal with prejudice is a harsh sanction which runs counter to courts' strong policy favoring the disposition of cases on the merits. Superior Court Rules Civ.Proc., Rule 41(b). | Is a dismissal with prejudice a harsh sanction which runs counter to courts' strong policy favoring the disposition of cases on the merits? | Pretrial Procedure - Memo # 10476 - C - KG_62750.docx | ROSS-003305647 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 7057 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 307A+581 | Motions for failure to prosecute are considered on a case-by-case basis. Id. (citing Am. Tel. & Tel., 720 So.2d at 181 (citing Wallace, 572 So.2d at 376)). "There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only "where the record shows the plaintiff has been guilty of dilatory or contumacious conduct." " Miss. Dep't of Human Servs., 830 So.2d at 632 (citing Watson, 493 So.2d at 1278). Finally, this Court also must consider whether lesser sanctions would suffice. Id. at 633 (citing Am. Tel. & Tel., 720 So.2d at 181"82). We also are "mindful of the fact that "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." " Hoffman v. Paracelsus Health Care Corp., 752 So.2d 1030, 1034 (Miss.1999) (citing Wallace, 572 So.2d at 376). | Dismissal with prejudice for want of prosecution is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. Rules Civ.Proc., Rule 41(b). | Is a dismissal with prejudice for want of prosecution an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim? | 024977.docx | LEGALEASE-00157403-LEGALEASE-00157404 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7058 | State Farm Fire & Cas. Co. v. Smith, 39 So. 3d 1172 | 307A+690 | However, in extreme circumstances, a trial court, pursuant to Rule 41(b), may dismiss with prejudice an action for failure to effect service after the 120-day window prescribed by Rule 4(b) has expired. See O'Rourke Bros. v. Nesbitt Burns, Inc., 201 F.3d 948, 953 (7th Cir.2000) (" "If the delay [in obtaining service] has been so long that it signifies failure to prosecute-or if the delay entails disobedience to an order to the court-then dismissal may be with prejudice under Rule 41(b)."" (quoting Powell v. Starwalt, 866 F.2d 964, 966 (7th Cir.1989))); 4B C. Wright and A. Miller, Federal Practice and Procedure " 1137 (3d ed.2002) (stating that, when service has not been perfected within the 120-day period and a district court has granted multiple extensions, "a district court may well have to decide between dismissing the plaintiff's action with prejudice under Federal Rule 41(b) and dismissing it without prejudice under Federal Rule 4(m)"); and Wagner v. Ashcroft, 214 F.R.D. 78 (N.D.N.Y.2003) (evaluating under both Rule 4(m) and Rule 41(b) whether an action should be dismissed when a greater than three-year period elapsed without the plaintiff perfecting service). | If a plaintiff fails to perfect service of process within 120 days, a trial court may dismiss the action without prejudice pursuant to the rule permitting a 120-day period for service of process; however, in extreme circumstances, a trial court may dismiss with prejudice an action for failure to effect service after the 120-day window has expired, pursuant to the rule permitting a dismissal of an action for the failure of the plaintiff to prosecute or comply with the rules of civil procedure. Rules Civ.Proc., Rules 4(b), 41(b). | Does failure to prosecute an action permit dismissal of the action without prejudice? | 025056.docx | LEGALEASE-00156727-LEGALEASE-00156728 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 7059 | Muirfield Vill.-Vernon Hills v. K. Reinke, Jr. & Co., 349 Ill. App. 3d 178 | 307A+624 | Defendants also complain that the allegations were conclusory and not factual. Defendants argue that the complaint sets out only a passing reference that abnormally high levels of mold and bacteria caused extensive damage to the personal effects of the Strains. Defendants argue that this is insufficient to allow the complaint to proceed. We agree. Plaintiffs' allegations are both conclusory and cursory. They do not allege sufficient facts to demonstrate that the economic loss rule should not apply. That said, however, this is an easily remedied defect. We note that a complaint should not be dismissed with prejudice unless it is apparent that no set of facts can be proved under the complaint that would entitle the plaintiff to relief. | A complaint should not be dismissed with prejudice unless it is apparent that no set of facts can be proved under the complaint that would entitle the plaintiff to relief. S.H.A. 735 ILCS 5/2-615. | Should a complaint not be dismissed with prejudice unless it is apparent that no set of facts can be proved under the complaint that would entitle the plaintiff to relief? | 025060.docx | LEGALEASE-00156749-LEGALEASE-00156750 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7060 | Chacon v. Jellison, 2003 WL 1560184 | 307A+690 | We conclude that when a plaintiff fails to appear for trial, the trial court may only dismiss the plaintiff's claims without prejudice; it may not render a take-nothing judgment based on a plaintiff's failure to appear at trial. See Tex.R. Civ. P. 165a(1); see also Herrera, 25 S.W.3d at 328. Thus, although the county court at law's dismissal of Chacon's action fell within his discretion, dismissing the action with prejudice did not. We modify the county court at law's judgment to reflect a dismissal without prejudice. Accordingly, we need not address the merits of Chacon's second issue. | When a plaintiff fails to appear for trial, the trial court may only dismiss the plaintiff's claims without prejudice; it may not render a take-nothing judgment based on a plaintiff's failure to appear at trial. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(1). | "When a plaintiff fails to appear for trial, can the trial court only dismiss the plaintiff's claims without prejudice?" | Pretrial Procedure - Memo # 10548 - C - KG_62446.docx | ROSS-003308662-ROSS-003308663 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 7061 | McConnell v. Attorney Gen. of Texas, 878 S.W.2d 281 | 307A+690 | A dismissal without prejudice means the claimant has the right to sue again on the same cause of action and prevents "the decree of dismissal from operating as a bar to a subsequent suit." | Dismissal without prejudice means that claimant has right to sue again on same cause of action and prevents decree of dismissal from operating as bar to subsequent suit. | Does a dismissal without prejudice mean a claimant has a right to sue again on the same cause of action? | 025099.docx | LEGALEASE-00156867-LEGALEASE-00156868 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |
| 7062 | Trent v. River Place, 179 N.C. App. 72 | 307A+693.1 | N.C. Gen.Stat. " 1A"1, Rule 41(b) (emphasis added). The Official Comment to the 1969 Amendment of Rule 41(b) states that an "objective in the rewriting of section 41(b) was to make clear that the court's power to dismiss on terms, that is, to condition the dismissal ... extends to all dismissals other than voluntary dismissals under section 41(a)." Id. However, "it is the burden of the party whose claim is being dismissed to convince the court that he deserves a second chance, and he should formally move the court that the dismissal be without prejudice." | It is the burden of the party whose claim is being dismissed to convince the court that he deserves a second chance, and he should formally move the court that the dismissal be without prejudice. Rules Civ.Proc., Rule 41(b), West's N.C.G.S.A. S 1A-1. | Is it the burden of the party whose claim is being dismissed to convince the court that he deserves a second chance? | Pretrial Procedure - Memo # 10597 - C - TJ_62634.docx | ROSS-003283166-ROSS-003283167 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 7063 | Thacker v. Bartlett, 785 N.E.2d 621 | 307A+693.1 | Res judicata is a doctrine that bars litigation of a claim after a final judgment has been rendered on a matter in a prior action involving the same claim between the same parties or their privies. Keybank Natl Assn v. Michael, 770 N.E.2d 369, 375 (Ind.Ct.App.2002), trans. denied. Four requirements must be satisfied for this doctrine to apply: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy decided in the former action must have been between the parties in the present suit or their privies. Id. at 375"76. A trial court entry sustaining a motion to dismiss that goes on to adjudge the case dismissed constitutes a final judgment. See Constantine v. City"County Council of Marion County, 267 Ind. 279, 280, 369 N.E.2d 636, 637 (1977); Parrett v. Lebamoff, 179 Ind.App. 25, 26, 383 N.E.2d 1107, 1108 (1979) | A trial court's entry sustaining a motion to dismiss that goes on to adjudge the case dismissed constitutes a final judgment. Trial Procedure Rule 12(B). | Does a trial court entry sustaining a motion to dismiss that goes on to adjudge the case dismissed constitute a final judgment? | 025170.docx | LEGALEASE-00157203-LEGALEASE-00157204 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7064 | Allstate Ins. Co. v. Anderson, 329 Ill. App. 3d 93 | 307A+693.1 | A dismissal for want of prosecution is ordinarily not a final order because of plaintiff's right to refile under section 13"217 of the Code of Civil Procedure. 735 ILCS 5/13"217 (West 2000); Marren Builders, Inc., v. Lampert, 307 Ill.App.3d 937, 941, 241 Ill.Dec. 256, 719 N.E.2d 117 (1999). When the time for refiling expires, the litigation is terminated and the order is final. S.C. Vaughan Oil Co. v. Caldwell, 181 Ill.2d 489, 502, 230 Ill.Dec. 209, 693 N.E.2d 338 (1998). But no authority has been cited that a final judgment may be dismissed for want of prosecution. In the case here, we find that the dismissal for want of prosecution had no effect because a final judgment had already been entered and there were no pending matters. | A dismissal for want of prosecution is ordinarily not a final order because of plaintiff's right to refile under Code of Civil Procedure; when the time for refiling expires, the litigation is terminated and the order is final. S.H.A. 735 ILCS 5/13-217. | Is a dismissal for want of prosecution ordinarily not a final order because of a plaintiff's right to refile under a Code of Civil Procedure? | Pretrial Procedure - Memo # 10614 - C - NS_63224.docx | ROSS-003297084-ROSS-003297085 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7065 | Paul Stanley Leasing Corp. v. Hoffman, 651 S.W.2d 440 | 307A+693.1 | The decision to either dismiss or abate an action is a matter ordinarily addressed to the sound judicial discretion of the trial court. Stein v. Lewisville Independent School District, 496 S.W.2d 737 (Tex.Civ.App."Fort Worth 1973, mand. overr.); City of Waco v. Texas Coffin Co., 472 S.W.2d 800 (Tex.Civ.App."Waco 1971, writ ref'd n.r.e.). The trial court in this case announced a dismissal of the case, but did not enter a written order to that effect. This ruling was not an abuse of discretion. Nevertheless, we must remand this case to the trial court with directions that it either enter a written order of dismissal without prejudice consistent with its prior ruling, or, after reconsideration, abate proceedings for a period of time sufficient to allow Stanley Leasing to obtain licensed counsel to represent it in that court. | Decision to either dismiss or abate action is ordinarily matter addressed to sound discretion of trial court. | Is the decision to either dismiss or abate action a matter ordinarily addressed to sound discretion of a trial court? | Pretrial Procedure - Memo # 10651 - C - BP_62464.docx | ROSS-003293015-ROSS-003293016 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7066 | Pender v. Pender, 634 S.W.2d 244 | 307A+693.1 | An order to dismiss terminates the litigation-the petition as well as the action-unless the decree directs a different effect. Hunt v. Dallmeyer, 517 S.W.2d 720, 723(1-3) (Mo.App.1974). An order to dismiss qualified by a grant of time to file an amended petition (or any other comparable decretal expression) signifies intention to dismiss the petition only, not the action. White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 123(14) (1949). The official entry on the motion to dismiss recites: "Motion to Modify filed on May 6, 1980, dismissed without prejudice for failure to verify and state cause of action." The effect is an unconditional and peremptory dismissal of the action as well as of the petition. | An order to dismiss qualified by a grant of time to file amended petition, or any other comparable decretal expression, signifies intention to dismiss the petition only, not the action. | Does an order to dismiss qualified by a grant of time to file amended petition signify an intention to dismiss the petition only? | Pretrial Procedure - Memo # 10656 - C - BP_62469.docx | ROSS-003279835-ROSS-003279836 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7067 | Epstein v. Chicago Bd. of Educ., 178 Ill. 2d 370 | 30+3200 | A dismissal of this type resembles the grant of a summary judgment motion. For that reason, the reviewing court conducts de novo review and considers whether "the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116"17, 189 Ill.Dec. 31, 619 N.E.2d 732. | Appeal from involuntary dismissal on ground that claim is barred by other affirmative matter avoiding legal effect of or defeating claim resembles grant of summary judgment motion and is likewise reviewed de novo; appellate court must consider whether existence of genuine issue of material fact should have precluded dismissal or, absent such issue of fact, whether dismissal is proper as matter of law. S.H.A. 735 ILCS 5/2-619(a)(9). | Can a court determine whether a genuine issue of material fact should preclude dismissal? | 025334.docx | LEGALEASE-00157073-LEGALEASE-00157074 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 7068 | Whitco Produce Co. v. Bonanza Int'l, 154 Ga. App. 92 | 289+437 | We affirm. The general rule is that a franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership relationship. Arthur Murray, Inc. v. Smith, 124 Ga.App. 51, 53, 183 S.E.2d 66. Thus in order to impose liability on the franchisor for the debts of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee (Folsom v. Miller, 102 Ga.App. 232, 116 S.E.2d 1); or (b) the franchisee is not a franchisee in fact but a mere agent or "alter ego" of the franchisor. Buchanan v. Canada Dry Corp., 138 Ga.App. 588, 226 S.E.2d 613. In this case there was absolutely no evidence that Bonanza made any representations to any person working for Whitco that it (Bonanza) would be liable for Biftec's obligations or was in any way related to Biftec's operations. At best there was evidence that the appearance and names on the two restaurants remained the same. The testimony of the vice president for operations of Bonanza, together with the franchise agreement entered into evidence, established that Biftec was not an agent or alter ego of Bonanza. Thus all that appeared to the trial court was that Biftec was a royalty franchisee of Bonanza. Moreover, where questions of agency arise, the denial of the relationship is a statement of fact when made by a party to the alleged relationship. Salters v. Pugmire Lincoln-Mercury, 124 Ga.App. 414, 184 S.E.2d 56. | Generally, franchise contract under which one operates a type of business on royalty basis does not create agency or partnership relationship. | Can an agency relationship be created by a franchise contract under which one operates a type of business on a royalty basis? | Principal and Agent - Memo 442 - RK_63562.docx | ROSS-003306311-ROSS-003306312 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 7069 | Bailey v. Worton, 752 So. 2d 470 | 308+1 | An agent is one who stands in the shoes of his principal; he is his principal's alter ego. An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by his authority. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do. 2 C.J.S. Agency " 1 c (1936). The most characteristic feature of an agent's employment is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities. First Jackson Securities Corp. v. B.F. Goodrich Company, 253 Miss. 519, 532-33, 176 So.2d 272, 278 (1965). | Most characteristic feature of an agent's employment is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities. | What is the most characteristic feature of an agent's employment? | 041820.docx | LEGALEASE-00157918-LEGALEASE-00157919 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7070 | Caterpillar v. Usinor Industeel, 393 F. Supp. 2d 659 | 308+1 | Under Illinois law,the test for agency is whether the alleged principal has the right to control the manner in which work is carried out by the alleged agent, and whether the alleged agent can affect the legal relationships of the principal. Chemtool, Inc. v. Lubrication Technologies, Inc., 148 F.3d 742, 744 (7th Cir.1998). Agency can arise when an agent has either "actual" or "apparent" authority to act on the principal's behalf. Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir.2000). The agent has actual authority when the principal's words or actions would lead a reasonable person in the agent's position to believe that he or she was so authorized. An agent has apparent authority to act on the principal's behalf in relation to a third party when the words or conduct of the principal would lead a reasonable person in the third party's position to believe that the principal had so authorized the agent. at 1065; Restatement (Second) of Agency " 27. Where an agent with such authority contracts with a third party on behalf of a disclosed principal, the agent does not become a party to the contract and is not liable upon it. Restatement (Second) of AgencyYYY " 320; see Joe & Dan Int'l Corp. v. U.S. Fidelity & Guar. Co., 178 Ill.App.3d 741, 747, 127 Ill.Dec. 830, 533 N.E.2d 912, 915 (1988) ("[I]t is obvious that an agent cannot be liable to a third party with whom he has contracted on his principal's behalf" where the agent had apparent authority). The principal, not the agent, is liable in such a situation. See Restatement (Second) of Agency " 144. | Under Illinois law, test for agency is whether alleged principal has right to control manner in which work is carried out by alleged agent, and whether alleged agent can affect legal relationships of principal. | Is the right to control the manner in which work is carried out by the agent a test of agency? | 041832.docx | LEGALEASE-00157954-LEGALEASE-00157955 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7071 | Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc., 476 F. Supp. 2d 414 | 308+1 | The principal's power to control the agent is an essential element of an agency relationship. In re Shulman Transport Enter., Inc., 744 F.2d 293, 295 (2d Cir.1984); Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs., 388 F.Supp.2d 292, 301 (S.D.N.Y.2005); E.B.A. Wholesale Corp., v. S.B. Mechanical Corp., 127 A.D.2d 737, 512 N.Y.S.2d 130, 131 (N.Y.App.Div.1987). "The essence of control in an agency sense is in the necessity of the consent of the principal on a given matter." Maung Ng We, 2000 WL 1159835, at 7. The principal's consent may be manifested by written or spoken words or any other conduct of the principal, directed at the agent in the case of actual authority, or at a third person in the case of apparent authority. See Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir.2003) (stating that actual authority "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act," while "apparent authority arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf" (quotations omitted)). Control alone is insufficient to establish the existence of an agency relationship, however. The agent's power to alter legal relations between the principal and third persons is also an essential element of the agency relationship. See Tip Top Farms, Inc. v. Dairylea Cooperative, Inc., 114 A.D.2d 12, 22, 497 N.Y.S.2d 99 (N.Y.App.Div.1985) (stating that, in addition to control, the agent must be "placed in a position to affect or alter the legal relations between the principal and third parties in matters within the scope of the agency"); see also Restatement " 12 ("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself."); 3 Am.Jur.2d | Under New York law, the agent's power to alter legal relations between the principal and third persons is an essential element of the agency relationship. | "Is the agents power to alter legal relations between the principal and third persons, an essential element of the agency relationship?" | Principal and Agent - Memo 571-SB_63587.docx | ROSS-003319133-ROSS-003319134 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 7072 | Dawson v. Sec'y of State, 274 Mich. App. 723 | 371+2002 | The distinction between a governmental "fee" and a tax is the subject of much caselaw. First, we consider cases addressing whether state fees are disguised taxes. "Whether a charge is a permissible fee or an illegal tax is a question of law." Westlake Transportation, Inc, supra at 611, 662 N.W.2d 784. "Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred." Id. at 612, 662 N.W.2d 784. " "[W]here revenue generated by a regulatory "fee" exceeds the cost of regulation, the "fee" is actually a tax in disguise." " Id. at 614, 662 N.W.2d 784 (citation omitted). "The test is whether the fee is proportional, not whether it is equal, to the amount required to support the services it regulates. We conclude that the Court of Claims did not clearly err in finding that the fees were not "wholly disproportionate." " Id. at 615, 662 N.W.2d 784 (citation omitted). Westlake Transportation, Inc upheld the state's annual fees of $100 for interstate and intrastate motor carriers under the Motor Carrier Act, MCL 475.1 et seq. Id. at 592, 662 N.W.2d 784. The Court held that the charges were regulatory fees, not unconstitutional taxes. Id. at 616, 662 N.W.2d 784. | Where revenue generated by a regulatory "fee" exceeds the cost of regulation, the "fee" is actually a tax in disguise; the test is whether the fee is proportional, not whether it is equal, to the amount required to support the services it regulates.(Per Wilder, P.J., with two justices concurring in part.) | "When determining whether a revenue is a fee or a tax, is whether the fee is proportional,the test?" | Taxation - Memo # 1050 - C - JL.docx | LEGALEASE-00047677-LEGALEASE-00047678 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7073 | People v. Peterson, 306 Ill. App. 3d 1091 | 3.77E+11 | The purpose of the intimidation statute is to prohibit the making of threats intended to compel a person to act against his will, and the gist of the offense is the exercise of improper influence"the making of a threat with the intent to coerce another. People v. Byrd, 285 Ill.App.3d 641, 647, 220 Ill.Dec. 650, 673 N.E.2d 1071 (1996); People v. Maldonado, 247 Ill.App.3d 149, 153, 187 Ill.Dec. 28, 617 N.E.2d 236 (1993). As used in the intimidation statute, the word "threat" implicitly requires that the expression, in its context, has a reasonable tendency to create apprehension that its originator will act according to its tenor. Byrd, 285 Ill.App.3d at 647, 220 Ill.Dec. 650, 673 N.E.2d 1071; Maldonado, 247 Ill.App.3d at 153"54, 187 Ill.Dec. 28, 617 N.E.2d 236. | As used in intimidation statute, word "threat" implicitly requires that expression, in its context, has reasonable tendency to create apprehension that its originator will act according to its tenor. S.H.A. 720 ILCS 5/12-6(a). | "As used in the intimidation statute, what does the word ""threat"" implicitly require?" | 046882.docx | LEGALEASE-00157702-LEGALEASE-00157703 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7074 | Sneed v. Beneficial Fin. Co. of Hawaii, 410 F. Supp. 1135 | 172H+1342 | Also, since this Court believes that the Truth in Lending Act takes as its starting point the protection of the borrower through a highly technical system of disclosure requirements, with the burden of compliance resting upon the lender, it necessarily believes that as a general principle all ambiguities in the disclosure instrument should be construed against the lender not only as the one upon whom the burden of compliance lies, but also as the one who drafted the disclosure statement in question. | As general principle, all ambiguities in disclosure instrument should be construed against lender not only as one upon whom burden of compliance with Truth in Lending Act lies, but also as one who drafted disclosure statement in question. Truth in Lending Act, S 129(a)(8) as amended 15 U.S.C.A. S 1639(a)(8). | Why should all ambiguities in TILA disclosure instrument be construed against the lender? | Consumer Credit - Memo 218-IS_64026.docx | ROSS-003296795 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 7075 | Jackson v. Carolina Hardwood Co., 120 N.C. App. 870 | 307A+622 | In response, defendant argues that the complaint should be dismissed because plaintiff's claims are barred under the doctrine of res judicata. Where the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim, the complaint may properly be dismissed by a motion under Rule 12(b)(6). Brown v. Brown, 21 N.C.App. 435, 437, 204 S.E.2d 534, 535 (1974). "Res judicata, or claim preclusion, prevents a party or one in privity with that party, from suing twice on the same claim or cause of action when a final judgment on the merits was entered in the first suit." State v. Lewis, 63 N.C.App. 98, 102, 303 S.E.2d 627, 630 (1983), aff'd, 311 N.C. 727, 319 S.E.2d 145 (1984). | Where complaint discloses unconditional affirmative defense which defeats claim asserted or pleads facts which deny right to any relief on alleged claim, complaint may properly be dismissed for failure to state claim upon which relief can be granted. Rules Civ.Proc., Rule 12(b)(6), G.S. S 1A-1. | Can a complaint be dismissed when it discloses unconditional affirmative defense? | 025468.docx | LEGALEASE-00158444-LEGALEASE-00158445 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 7076 | Charles L. Hardtke v. Katz, 813 S.W.2d 548 | 307A+699 | When, as here, there is a time limit on the court's jurisdiction, its order must be in writing, specific, and signed by the trial judge. Walker v. Harrison, 597 S.W.2d 913, 915 (Tex.1980). Once a judgment is signed, a second, inconsistent judgment in the same case does not automatically vacate the former judgment. The second judgment must show that the first judgment has been set aside; otherwise, the second judgment is a nullity. Mullins v. Thomas, 136 Tex. 215, 217, 150 S.W.2d 83, 84 (1941). | If time limit on court's jurisdiction exists, court's order reinstating case must be in writing, specific, and signed by trial judge; if judgment is signed, second inconsistent judgment in same case does not automatically vacate former judgment absent showing in second judgment that first judgment has been set aside. | "If time limit on court's jurisdiction exists, should a court's order reinstating case be in writing, specific, and signed by a trial judge?" | 025569.docx | LEGALEASE-00158182-LEGALEASE-00158183 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 7077 | Calaway v. Gardner, 525 S.W.2d 262 | 307A+699 | The record does not show that the movant here ever requested a setting within such time. If such a request had been made and called to the judge's attention, and if the judge had failed to set the case within the time limit, such failure would have been erroneous and reviewable. Failure of the judge to set a hearing on the motion within the thirty day period, when he was not asked to make such a setting, is not ground for reversal of his order denying the reinstatement. | If a request for setting motion to reinstate for hearing had been made and called to judge's attention, and if judge had failed to set the case within the time limit, such failure would have been erroneous and reviewable. Rules of Civil Procedure, rule 165a. | "If a judge had failed to set the case within the time limit, will such failure be erroneous and reviewable?" | Pretrial Procedure - Memo # 10880 - C - SB_63684.docx | ROSS-003305848-ROSS-003305849 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 7078 | Olson v. Olson, 453 S.W.3d 128 | 307A+581 | The only remaining argument for discussion is Tina's contention that the circuit court erred by dismissing her claim for alimony to the extent that the dismissal was with prejudice or functioned as a ruling on the merits. As we said earlier, a circuit court is authorized to dismiss a claim upon a party's failure to prosecute pursuant to Rule 41(b). Gore, supra., Such dismissals are ordinarily without prejudice, Wolford, supra. In the decree, the circuit court did not expressly dismiss the claim with prejudice. Therefore, we construe the court's decree as dismissing the claim for alimony without prejudice. We find no error on this point. | A circuit court is authorized to dismiss a claim upon a party's failure to prosecute; such dismissals are ordinarily without prejudice. Ark. R. Civ. P. 41(b). | Is a circuit court authorized to dismiss a claim upon a party's failure to prosecute and such dismissals are ordinarily without prejudice? | 025607.docx | LEGALEASE-00158532-LEGALEASE-00158533 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7079 | Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo, 987 So. 2d 989 | 307A+690 | Mississippi Rule of Civil Procedure 41(b) provides for the dismissal of a stale lawsuit for the failure of the plaintiff to prosecute the case. However, we are mindful that "the law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly." AT&T v. Days Inn, 720 So.2d 178, 180(12) (Miss.1998) (citing Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). A trial court's order of "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." Wallace v. Jones, 572 So.2d 371, 376 (Miss.1990). We review a trial court's dismissal pursuant to Rule 41(b) for failure to prosecute for abuse of discretion. AT&T, 720 So.2d at 180(12); Miss. Dep't of Human Servs. v. Guidry, 830 So.2d 628, 632(13) (Miss.2002). | A trial court's order of dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. | Is a dismissal with prejudice an extreme and harsh sanction which is reserved for the most egregious cases? | Pretrial Procedure - Memo # 10903 - C - PC_63901.docx | ROSS-003293870-ROSS-003293871 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7080 | Am.'s Favorite Chicken Co. v. Galvan, 897 S.W.2d 874 | 307A+693.1 | However, even though a court has no discretion not to grant a plaintiff's timely filed and proper motion for nonsuit, its issuance of a written order granting the motion, which dismisses the entire case, represents a written judgment entered of record regardless of whether an adjudication on the merits has occurred. See Felderhoff, 819 S.W.2d at 111; Harris County, 881 S.W.2d at 194"95. The judgment granting nonsuit becomes final thirty days after it is signed, when no motion for new trial is filed. Harris County, 881 S.W.2d at 194; Tex.R.Civ.P. 329b. At that point the trial court's plenary jurisdiction expires. | Judgment granting nonsuit becomes final thirty days after it is signed, when no motion for new trial is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 329b. | "Does a judgment granting a nonsuit become final, thirty days after it is signed, when no motion for new trial is filed?" | 025796.docx | LEGALEASE-00159174-LEGALEASE-00159175 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7081 | Stephens v. Stovall & Co., 184 Ga. App. 78 | 307A+674 | OCGA " 9-2-60(b) provides for automatic dismissal when no written order is taken for a period of five years. This is mandatory and dismissal is automatic and by operation of law. Any further action other than dismissal is a mere nullity. Bainbridge & Assoc. v. Johnson, 183 Ga.App. 784, 360 S.E.2d 273 (1987). | Statute providing for automatic dismissal when no written order is taken for a period of five years is mandatory and dismissal is automatic and by operation of law, and any further action other than dismissal is a mere nullity. O.C.G.A. S 9-2-60(b). | Is a statute providing for automatic dismissal when no written order is taken for a period of five years mandatory and dismissal automatic? | 025813.docx | LEGALEASE-00159160-LEGALEASE-00159161 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 7082 | Jasper v. Mays Mfg. Co., 139 S.W.2d 895 | 307A+693.1 | The sustaining of the defendants' several pleas in abatement to the suit of the Mays Manufacturing Company did not affect the right of the defendants to prosecute their cross-action against said company. It has been repeatedly held by our courts that where a plaintiff dismisses his suit, or where as here the court dismisses it, such dismissal will not deprive a defendant of his right to an adjudication on the merits of his cross-action theretofore filed and with respect to which the plaintiff is before the court. In such case the plaintiff simply assumes the defensive position and the defendant becomes the plaintiff on his cross-action. Cunningham v. Wheatly, 21 Tex. 184; Harris v. Schlinke, 95 Tex. 88, 65 S.W. 172; Barrier v. Lowery, 118 Tex. 227, 11 S.W.2d 298, 13 S.W.2d 688; 38 Tex.Jur. 411. | Dismissal of suit by plaintiff or by court does not deprive defendant of right to an adjudication on the merits of defendant's cross-action previously filed and with respect to which plaintiff is before court. | Does dismissal of a suit by a plaintiff or by court not deprive a defendant of a right to an adjudication on the merits of a defendant's cross-action previously filed? | 025885.docx | LEGALEASE-00158084-LEGALEASE-00158085 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7083 | McColgan v. Jones, Hubbard & Donnell, 11 Cal. 2d 243 | 30+339(3) | This contention is in conflict with a line of well-considered cases of our appellate courts, including this court. Brown v. Sterling Furniture Co., 175 Cal. 563, 166 P. 322; Commins v. Guaranty Oil Co., 29 Cal.App. App. 139, 154 P. 882; Henry v. Lingsweiler, 81 Cal.App. 142, 143, 253 P. 357; Bengel v. Traeger, 100 Cal.App. 526, 527, 280 P. 538; Lewis v. Hammond Lumber Co., 114 Cal.App. 390, 300 P. 49; Finch v. Ekstrom, 115 Cal.App. 381, 1 P.2d 516; Tromanhauser v. Grisemer, 123 Cal.App. 153, 11 P.2d 32, 33; 2 Cal.Jur. 402; 9 Cal.Jur. 565. Appellant's plea is, in effect, that said cases should be repudiated. By virtue of said cases it has become a settled rule of practice that an order granting a motion for nonsuit is effective for all purposes when entered in the clerk's minutes, and an appeal must be taken within sixty days from such entry. | An order granting a motion for nonsuit is effective for all purposes when entered in clerk's minutes, and an appeal must be taken within 60 days from entry thereof. Code Civ.Proc. S 581, as amended by St.1935, p. 1954. | Is an order granting a motion for nonsuit effective for all purposes when entered in a clerk's minutes? | 025890.docx | LEGALEASE-00158096-LEGALEASE-00158097 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7084 | Nelson v. Ryan, 222 A.D. 754 | 307A+693.1 | Order and judgment reversed upon the law and the facts, and new trial granted, costs to appellant to abide the event. We are of opinion that plaintiff presented a prima facie case. The dismissal was not upon the merits. A dismissal in an equity case, without findings of fact and conclusions of law, must be regarded as a nonsuit. Civil Practice Act, " 441; Stephenson v. Southerland, 150 App. Div. 275, 134 N. Y. S. 774; Ross v. Caywood, 162 N. Y. 259, 56 N. E. 629; Ware v. Dos Passos, 162 N. Y. 281, 56 N. E. 742; McNulty Bros. v. Offerman, 141 App. Div. 730, 126 N. Y. S. 755. If it be the intent to dismiss upon the merits, a decision must be made pursuant to section 440 of the Civil Practice Act. This rule is not changed by section 482 of the act. | Under Civil Practice Act, S 441, dismissal in an equity case, without findings of fact and conclusions of law, must be regarded as a nonsuit, since, if it be intended to dismiss on the merits, decision must be made under section 440, requiring findings of fact and conclusions of law, and this rule is not changed by section 482, providing that dismissal at close of evidence is a final determination on the merits. | "Under the Civil Practice Act should dismissal in an equity case, without findings of fact and conclusions of law, be regarded as a nonsuit?" | 025892.docx | LEGALEASE-00158098-LEGALEASE-00158099 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 7085 | Wilson v. Molda, 396 Ill. App. 3d 100 | 307A+561.1 | For a motion to be properly brought under section 2-619, the motion (1) must concern one of nine listed grounds; and (2) must be filed within the time for pleading. Wilson v. Molda, 396 Ill.App.3d 100, 105, 335 Ill.Dec. 352, 918 N.E.2d 1165 (2009); River Plaza Homeowner's Ass'n v. Healey, 389 Ill.App.3d 268, 275, 328 Ill.Dec. 592, 904 N.E.2d 1102 (2009). The Code provides that a section 2-619 may be brought on one of only nine listed grounds. 735 ILCS 5/2-619(a)(5) (West 2014). One of these grounds is that "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2014). Thus, the state defendants have satisfied the first requirement for a section 2-619 motion. | For a motion to be properly brought under statute governing involuntary dismissal based on certain defects or defenses, the motion must be filed within the time for pleading, and must concern one of nine listed grounds. S.H.A. 735 ILCS 5/2-619. | Should the motion concern one of the nine listed grounds for a motion to be properly brought under stature governing involuntary dismissal? | 025944.docx | LEGALEASE-00158258-LEGALEASE-00158259 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7086 | Draim v. Virtual Geosatellite Holdings, 631 F. Supp. 2d 32 | 231H+123 | Moreover, conceded or not, an employee, upon termination of her employment, may compete against her former employer. Restatement (Second) of the Law of Agency " 396(a) (1958) ("Unless otherwise agreed, after the termination of the agency, the agent: (a) has no duty not to compete with the principal").5 This is the law of the District of Columbia. United States Travel Agency, Inc. v. World"Wide Travel Service Corp., 235 A.2d 788, 789 (D.C.1967) ("An agent after termination of his employment, in the absence of an agreement to the contrary, may compete with his former principal ..."). Accord Group Assoc. Plans, Inc. v. Colquhoun, 466 F.2d 469, 474 (D.C.Cir.1972) (acknowledging "common law doctrine that permits an employee to compete with his former employer absent an express contractual provision to the contrary.") See Mercer Mgmt. Consulting Inc. v. Wilde, 920 F.Supp. 219, 233 (D.D.C.1996) (even while employed, an employee may make arrangements to compete with his principal provided no unfair acts are committed or injury done his principal); Riggs Inv. Mgmt. Corp. v. Columbia Partners, LLC, 966 F.Supp. 1250, 1265 (D.D.C.1997) (same). "Draim's post-termination activities therefore cannot serve as the basis for any claim of breach of an agent's fiduciary duty to his principal because Draim went to work for a competitor and in fact competed against Dr. Castiel."] | Former employee's post-termination activities of going to work for competitor and in fact competing against his former employer could not serve as basis for any claim of breach of agent's fiduciary duty to his principal under District of Columbia law. | Can post-termination activities serve as a basis for a claim of breach of an agents fiduciary duty to his principal? | 041957.docx | LEGALEASE-00159069-LEGALEASE-00159070 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 7087 | Wargel v. First Nat. Bank of Harrisburg, 121 Ill. App. 3d 730 | 308+1 | While the written agreement between Lincoln and the bank stated that the bank was not an agent of Lincoln, the legal relationship between the parties must be determined by analysis of their actual practices, and not merely by reference to the written agreement between them (Tansey v. Robinson (1960), 24 Ill.App.2d 227, 233-34, 164 N.E.2d 272.) An agent is generally defined as one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the principal, and to render an account (Mills v. State National Bank (1975), 28 Ill.App.3d 830, 834, 329 N.E.2d 255.) The test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability. (Kozasa v. Guardian Electric Manufacturing Co. (1981), 99 Ill.App.3d 669, 676, 54 Ill.Dec. 920, 425 N.E.2d 1137.) While the nature and extent of an agency are facts to be proved, these questions become ones of law where the evidence is not disputed. Farrell v. Lincoln National Bank (1974), 24 Ill.App.3d 142, 146, 320 N.E.2d 208. | Test of agency is existence of right to control method or manner of accomplishing a task by alleged agent, as well as agent's ability to subject principal to liability. | Is the right to control the method or manner of accomplishing a task a test of agency? | Principal and Agent - Memo 555 - RK_64013.docx | ROSS-003306552-ROSS-003306553 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7088 | In re Y.M., 207 Cal. App. 4th 892 | 360+18.43 | The "[p]ower to regulate immigration is unquestionably exclusively a federal power." (De Canas v. Bica (1976) 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43; In re Jose C. (2009) 45 Cal.4th 534, 550, 87 Cal.Rptr.3d 674, 198 P.3d 1087; In re Adolfo M. (1990) 225 Cal.App.3d 1225, 1232, 275 Cal.Rptr. 619.) The federal government has the exclusive authority to determine who should or should not be admitted into the country, and the conditions under which a legal immigrant may remain. "However, it does not follow that all state regulations touching on aliens are preempted." (Sturgeon v. Bratton (2009) 174 Cal.App.4th 1407, 1422, 95 Cal.Rptr.3d 718; In re Jose C., supra, 45 Cal.4th at p. 550, 87 Cal.Rptr.3d 674, 198 P.3d 1087.) "[T]he usual rules of statutory preemption analysis apply; state law will be displaced only when affirmative congressional action compels the conclusion it must be." (In re Jose C., supra, 45 Cal.4th at p. 550, 87 Cal.Rptr.3d 674, 198 P.3d 1087.) | The usual rules of statutory preemption analysis apply in the area of immigration; state law will be displaced only when affirmative congressional action compels the conclusion it must be. | Will state law be displaced when affirmative congressional action compels the conclusion it must be? | "Aliens, Immigration and Citizenship - Memo 115 - RK_64757.docx" | ROSS-003323332-ROSS-003323333 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7089 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+217 | Nevertheless, not every state enactment or action "which [may] in any way deal[ ] with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." (De Canas, supra, 424 U.S. at p. 355, 96 S.Ct. 933.) "[S]tanding alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." (Ibid., see also Takahashi v. Fish Comm'n (1948) 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 [states are granted no powers to determine "what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization"].) Thus, De Canas holds that a California statute prohibiting employers from knowingly employing aliens not lawfully residing in the United States was not preempted under the supremacy clause by the INA. (De Canas, at pp. 355"356, 96 S.Ct. 933.) | Standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain. | Is a determination of whether aliens should or should not be admitted into the country a regulation of immigration? | "Aliens, Immigration and Citizenship - Memo 134 - RK_64775.docx" | ROSS-003322888-ROSS-003322889 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7090 | League of United Latin Am. Citizens v. Wilson, 908 F. Supp. 755 | 3.16E+38 | In addition, subsection (b) is an impermissible immigration regulation because, unlike the statute at issue in De Canas, the classification of persons as (1) citizens; (2) lawfully admitted as a permanent resident or (3) lawfully admitted for a temporary period is not in any way tied to federal standards. Thus, the state has created its own scheme setting forth who is, and who is not, entitled to be in the United States. As discussed below, the INS's standards for who is and who is not deportable are entirely different from those set forth in subsection (b). See, e.g., 8 U.S.C. " 1251(a). As the Supreme Court held in De Canas, a state cannot, on its own, determine who is or is not entitled to be present in the United States. See De Canas, 424 U.S. at 355, 96 S.Ct. at 936. | Classification of persons as citizens, lawfully admitted as permanent resident and lawfully admitted for temporary period for public benefits eligibility under California initiative measure was impermissible scheme of immigration regulation by state, since it was not tied in any way to federal standards. Immigration and Nationality Act, S 241(a), 8 U.S.C.A. S 1251(a). | Is classification of persons under a state statute impermissible when it is not in any way tied to federal standards? | 006854.docx | LEGALEASE-00160472-LEGALEASE-00160473 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 7091 | In re Mario S., 38 Misc. 3d 444 | 24+179 | A minor or a juvenile who obtains SIJ status may become a naturalized United States citizen after five years"The SIJ provisions of the [Immigration and Naturalization Act] were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States. Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States" (Yeboah v. Department of Justice, 345 F.3d 216, 221 [3rd Cir.2003] ). "A minor who obtains SIJ status may become a naturalized United States citizen after five years" (In re Y.M., 207 Cal.App.4th 892, 915, 144 Cal.Rptr.3d 54, 71"72 [4th Dist.2012]; see also, Zheng v. Pogash, 416 F.Supp.2d 550, 554 [S.D.TX.2006]; B.F. v. Superior Court of Los Angeles County, 207 Cal.App.4th 621, 626, 143 Cal.Rptr.3d 730, 733 [2nd Dist.2012] ). | Minor who obtains special immigrant juvenile (SIJ) status may become a naturalized United States citizen after five years. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Can a minor who obtains Special Immigrant Juvenile (SIJ) status become a naturalized citizen after five years? | 006890.docx | LEGALEASE-00160114-LEGALEASE-00160115 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7092 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+340 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | Deportation hearing looks prospectively to alien's right to remain in country in future; past conduct is relevant only insofar as it may shed light on alien's right to remain. Immigration and Nationality Act, SS 241, 242(b), 8 U.S.C.A. SS 1251, 1252(b). | Is past conduct relevant to shed light on the alien or respondent's right to remain during deportation proceedings? | "Aliens, Immigration and Citizenship - Memo 92 - RK_64825.docx" | ROSS-003278818-ROSS-003278819 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 7093 | Torao Takahashi v. Fish & Game Comm'n, 334 U.S. 410 | 92+3000 | The protection of this section has been held to extend to aliens as well as to citizens. Consequently the section and the Fourteenth Amendment on which it rests in part protect "all persons' against state legislation bearing unequally upon them either because of alienage or color. See Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847. The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide "in any state" on an equality of legal privileges with all citizens under non-discriminatory laws. | The Fourteenth Amendment and laws adopted under its authority embody a general policy that all persons lawfully in the United States shall abide in any state on an equality of legal privileges with all citizens under nondiscriminatory laws. 42 U.S.C.A. S 1981; U.S.C.A.Const. Amend. 14. | Do aliens have a right to abide in any State in the Union on an equality of legal privileges with all citizens under nondiscriminatory laws? | 006970.docx | LEGALEASE-00160264-LEGALEASE-00160265 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 7094 | In re V.O.C. Analytical Labs., TIN: 5-9299 3905 | 8.30E+282 | A negotiable instrument is an unconditional promise to pay a fixed amount of money that may not contain any other promise, order, obligation, or power except as authorized by statute. Ameritrust Co., N.A. v. White, 73 F.3d 1553, 1559 (11th Cir.1996). | Under Florida law, "negotiable instrument" is unconditional promise to pay fixed amount of money, that may not contain any other promise, order, obligation, or power except as authorized by statute. West's F.S.A. S 673.1041(1). | Is a negotiable instrument an unconditional promise to pay a fixed amount of money? | Bills And Notes -Memo 54 - AM_64598.docx | ROSS-003295306-ROSS-003295307 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7095 | ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co., 349 Or. 117 | 217+1851 | Until the legislature repealed former ORS 736.005(1) in 1967, that statute defined "insurance" as a:"contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury."See Or. Laws 1967, ch. 359, " 704 (repealing former ORS 736.005(1)). London argues that that statute became part of each insurance contract it issued to Zidell before 1968 and that the statute functioned as a limitation on coverage, not as an exclusion. We read the former statute differently. | Statute, defining insurance as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event whereby the insured or his beneficiary suffers loss or injury, did not become part of all policies issued prior to its repeal or serve as a limitation on coverage. ORS 736.005(1) (Repealed). | How is insurance defined? | 019606.docx | LEGALEASE-00159683-LEGALEASE-00159684 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 7096 | Bourne v. Temple Univ. Hosp., 932 A.2d 114 | 307A+699 | "It is well-established that a motion to strike off a judgment of non pros challenges only defects appearing on the face of the record and that such a motion may not be granted if the record is self-sustaining." Additionally, the rule governing relief from judgment of non pros indicates in pertinent part: (b) If the relief sought includes the opening of the judgment, the petition shall allege facts showing that (1) the petition is timely filed; (2) there is a reasonable explanation or legitimate excuse for the inactivity or delay; and (3) there is a meritorious cause of action. Varner v. Classic Communities Corp., 890 A.2d 1068, 1072 (Pa.Super.2006) (citation and quotations omitted).4 See Pa.R.C.P. 3051 (relating to relief from judgment of non pros). Once a judgment of non pros has been entered, the burden rests on the plaintiff to demonstrate that there is good cause for reactivating the case.See Womer v. Hilliker, 589 Pa. 256, 908 A.2d 269 (2006). | Once a judgment of non pros has been entered, the burden rests on the plaintiff to demonstrate that there is good cause for reactivating the case. | "Once a judgment of non pros has been entered, does the burden rest on the plaintiff to demonstrate that there is good cause for reactivating the case?" | 039590.docx | LEGALEASE-00159517-LEGALEASE-00159518 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7097 | Kisch v. St. Vincent's Hosp. & Med. Ctr. of New York, 279 A.D.2d 341 | 307A+699 | Moreover, on the basis of this record, it is doubtful that the marking of the case off the calendar was a result of plaintiff's neglect. As all the parties agree, no one received notice of the July 1, 1996 conference which led to the court's action. The lack of fault or neglect on the part of plaintiff is an important consideration in determining whether the presumption of abandonment has been rebutted. (See, Hillegass v. Duffy, 148 A.D.2d 677, 680, 539 N.Y.S.2d 426.) | Lack of fault or neglect on part of plaintiff is an important consideration in determining whether presumption of abandonment has been rebutted, as will permit reinstatement to calendar of action which has been dismissed as abandoned. McKinney's CPLR 3404. | Is a lack of fault or neglect on part of a plaintiff an important consideration in determining whether a presumption of abandonment has been rebutted? | Pretrial Procedure - Memo 11178 - C - SN_64388.docx | ROSS-003279248-ROSS-003279249 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 7098 | Williams v. Cottle, 471 So. 2d 305 | 307A+699 | Although we agree that a lawsuit dismissed without prejudice pursuant to Code of Civil Procedure Article 933 can be reinstituted, it can not be revived by filing an amended and supplemental petition. It is necessary to file a new suit. Code of Civil Procedure Article 1673 provides that "[a] judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action." (Our emphasis.) | Although lawsuit dismissed without prejudice pursuant to Code of Civil Procedure Article 933 can be reinstituted, it cannot be revived by filing amended and supplemental petition; it is necessary to file a new suit. LSA-C.C.P. art. 933. | Can a lawsuit dismissed without prejudice pursuant to Code be reinstituted? | Pretrial Procedure - Memo 11201 - C - PB_64407.docx | ROSS-003279983 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 7099 | Brazinsky v. Brazinsky, 610 N.W.2d 707 | 307A+693.1 | A dismissal with prejudice is a final judgment that ends the case and leaves nothing further to be resolved between the parties. Foothills Meadow v. Myers, 832 P.2d 1097, 1098 (Colo.Ct.App.1992). After a judgment of dismissal with prejudice is entered, the district court has no jurisdiction over the subject matter of the case and is powerless to act further in the matter. Elwess v. Elwess, 73 N.M. 400, 389 P.2d 7, 9 (1964). | After a judgment of dismissal with prejudice is entered, the district court has no jurisdiction over the subject matter of the case and is powerless to act further in the matter. | "After a judgment of dismissal with prejudice is entered, does the district court have no jurisdiction over the subject matter of the case and is powerless to act further in the matter?" | Pretrial Procedure - Memo 11357 - C - SHB_64425.docx | ROSS-003296396-ROSS-003296397 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 7100 | McCoy v. Martinez, 480 S.W.3d 420 | 307A+561.1 | Official immunity is an affirmative defense that protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. Davis v. Lambert"St. Louis Intern. Airport, 193 S.W.3d 760, 763 (Mo. banc 2006). Dismissal based on an affirmative defense may be appropriate if the petition clearly establishes "on its face and without exception" that the claim is barred. Richardson v. City of St. Louis, 293 S.W.3d 133, 139 (Mo.App.E.D.2009) (quoting Int'l Plastics Dev., Inc. v. Monsanto Co., 433 S.W.2d 291, 294 (Mo. banc 1968)). "When determining the sufficiency of the allegations setting forth a defendant's affirmative defense, we may look to the responsive pleadings as a whole." Woods v. Ware, 471 S.W.3d 385, 391 (Mo.App.W.D.2015). | Dismissal based on an affirmative defense may be appropriate if the petition clearly establishes on its face and without exception that the claim is barred. | Will a dismissal be appropriate if the petition clearly establishes on its face and without exception that the claim is barred? | 039929.docx | LEGALEASE-00159597-LEGALEASE-00159598 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7101 | State ex rel. Hood v. Louisville Tire Ctr., 204 So. 3d 1250 | 307A+583 | lower court's dismissal of an action under Rule 41(b) is reviewed on appeal using the abuse-of-discretion standard. Manning v. King's Daughters Med. Ctr., 138 So.3d 109, 116 (Miss. 2014) (citing Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 192, 196 (Miss. 2010)). Undisputedly, "the law favors a trial of the issues on the merits, [so] a dismissal for lack of prosecution is employed reluctantly." Holder, 54 So. 3d at (quoting Miss. Dep't of Human Servs. v. Guidry, 830 So.2d 628, 632 (Miss. 2002)). However, as the Court has explained, "Rule 41(b) embodies the tenet that "any court of law or equity may exercise the power to dismiss for want of prosecution. This power, inherent to the courts, is necessary as a means to the orderly expedition of justice and the court's control of its own docket." " Hillman v. Weatherly, 14 So.3d 721, 726 (Miss. 2009) (quoting Cucos, Inc. v. McDaniel, 938 So.2d 238, 240 (Miss. 2006)). | Any court of law or equity may exercise the power to dismiss for want of prosecution; this power, inherent to the courts, is necessary as a means to the orderly expedition of justice and the court's control of its own docket. Miss. R. Civ. P. 41(b). | Can a court of law or equity exercise the power to dismiss for want of prosecution? | Pretrial Procedure - Memo 11675 - C - NC_64694.docx | ROSS-003282425-ROSS-003282426 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7102 | Boyd Bros. Transp. v. State Dep't of Revenue, 976 So. 2d 471 | 371+3603 | "The sales tax statutes apply to retail sales or purchases taking place within the state; the use tax statutes apply to goods purchased at retail outside of the state and brought into the state for use by the purchaser." State v. Marmon Indus., Inc., 456 So.2d 798, 800-01 (Ala.Civ.App.1984). "The use tax serves to equalize the burden of the sales tax and to prevent a person from avoiding the sales tax by purchasing goods outside the state." Ex parte Fleming Foods of Alabama, Inc., 648 So.2d at 578. | The sales tax statutes apply to retail sales or purchases taking place within the state; the use tax statutes apply to goods purchased at retail outside of the state and brought into the state for use by the purchaser. Code 1975, SS 40-23-1 et seq., 40-23-61. | Do the sales tax statutes apply to retail sales or purchases taking place within the state? | Taxation - Memo 1094 - C - SU_64501.docx | ROSS-003281895-ROSS-003281896 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7103 | Bd. of Cty. Comm'rs of Leavenworth Cty. v. McGraw Fertilizer Serv., 261 Kan. 901 | 371+3602 | The technique of applying definitions found in the Kansas Retailers' Sales Tax Act to the statutes regarding ad valorem property tax does not apply here. K.S.A.1996 Supp. 79"3602(g), of the Kansas Retailers' Sales Tax Act defines the term "selling price" as "the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer." Thus, for sales tax purposes, total cost includes freight and transportation charges from retailer to consumer. The sales tax is a tax on the privilege of engaging in the business of selling tangible personal property at retail in this state, and is levied on the gross receipts of sales transactions. | "Sales tax" is tax on privilege of engaging in business of selling tangible personal property at retail in state and is levied on gross receipts of sales transactions. | "Is ""sales tax"" a tax on privilege of engaging in business of selling tangible personal property?" | Taxation - Memo 1120 - C - NS_64522.docx | ROSS-003281841-ROSS-003281842 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7104 | Bank of Nova Scotia v. San Miguel, 214 F.2d 102 | 8.30E+11 | Nor can we agree with the plaintiff's contention that the draft was an inland bill of exchange, to be governed by New York law and, under that law, not requiring protest on dishonor. Under the conflict of laws rule of Puerto Rico the questions as to the execution, the interpretation and the validity of a negotiable instrument are to be determined by the law of the place where it is made. Royal Bank of Canada v. Balle, 1925, 33 P.R.R. 944. It has heretofore been assumed in the present case that the draft here in question was drawn in the Dominican Republic. Our previous opinion was based upon that premise, then undisputed. Upon the second trial, however, the plaintiff contended, as alleged in its amended complaint, that the draft was drawn in New York. The trial judge, nonetheless, ruled that it was a foreign bill drawn in the Dominican Republic. We are satisfied that this ruling was right. For, although the form of draft was signed by the defendant in New York and mailed by him from New York to the plaintiff's Trujillo City branch, it is clear that it was not complete or intended to be so when it was mailed. | Under the conflict of laws rule of Puerto Rico, the questions as to the execution, the interpretation and the validity of a negotiable instrument are to be determined by the law of the place where it is made. | "Should the questions as to the execution, interpretation and the validity of a negotiable instrument be determined by the law of the place where it is made?" | 009628.docx | LEGALEASE-00161213-LEGALEASE-00161214 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7105 | United States v. Kincaid-Chauncey, 556 F.3d 923 | 372+1014(10) | Thus, while the instructions stated that all a finding of guilt required was receipt of an item of value coupled with an intent to be influenced, the rest of the instructions prevented a conviction based on the type of legitimate "influence" that is necessary to the functioning of any political system. The district court did not use the words "quid pro quo," but the instructions, on the whole, adequately conveyed "the idea that "you get something and you give something." " Giles, 246 F.3d at 973. Because the instructions, taken as a whole, contained an implicit quid pro quo requirement, they adequately stated the elements of honest services fraud on a bribery theory. | Quid pro quo necessary for a bribery honest services fraud conviction need not be explicit, and the district court need not use the words "quid pro quo" when it instructs the jury so long as the essential idea of give-and-take is conveyed. 18 U.S.C.A. S 1343. | "For jury instruction, is there an intent to defraud when an individual fails to disclose a conflict of interest within the application of honest services fraud even when there is no demonstration of a quid pro quo?" | Bribery - Memo 1054 - C - AV_65543.docx | ROSS-003278442-ROSS-003278443 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 7106 | Lackey v. State, 116 Ga. App. 789 | 350H+1057 | The manifest purpose of Code Ann. s 27-2502 is merely to enforce those other provisions which fix the punishment for an offense, not to place limitations on the punishment otherwise prescribed by statute. Code Ann. s 26-5014a declares that a violator of that section "shall be punished by imprisonment in the penitentiary for not less than one year nor more than five years." It seems clear that Code Ann. s 26-5014a permits punishment by imprisonment for any length of time from 1 year to 5 years, including a fractional part of a year and measured by months, weeks or days as well as yours, within the minimum and maximum limits. Thus, "a specific number of years," according to the meaning of the legislature in Code Ann. s 27-2502, may be measured in months and include a fractional part of a year. See Allen v. People, 77 Ill. 484, 488; State v. Turner (Mo.), 123 S.W.2d 105. The verdict was not void or irregular for the reason that it assessed punishment by 18 months imprisonment in the penitentiary. | Statute declaring violator shall be punished by imprisonment in penitentiary for not less than one year nor more than five years permits punishment by imprisonment for any length of time from one year to five years including actual part of year measured by months, weeks or days within minimum and maximum limits. Code, S 26-5014a. | Can a prison term be measured in months and include a fractional part of a year when the law states the permitted range in terms of a specific number of whole years? | 012567.docx | LEGALEASE-00161473-LEGALEASE-00161474 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7107 | P.N. v. Greco, 282 F. Supp. 2d 221 | 141E+894 | In reviewing administrative decisions in IDEA cases, a district court applies a de novo standard to questions of law. L.M. ex rel. H.M. v. Evesham Tp. Bd. of Educ., 256 F.Supp.2d 290, 294"95 (D.N.J.2003) (citing Carlisle Area School v. Scott P., 62 F.3d 520, 528 (3d Cir.1995)). Administrative findings of fact are subject to a modified de novo standard of review as described by the Court of Appeals in S.H. v. State"Operated School Dist. of City of Newark, 336 F.3d 260 (3d Cir.2003). The ALJ made her determination as a matter of law on stipulated facts; accordingly, review of her decision is plenary. | In reviewing administrative decisions in Individuals with Disabilities Education Act (IDEA) cases, a district court is to apply a de novo standard to questions of law. Individuals with Disabilities Education Act, S 615(a), as amended, 20 U.S.C.A. S 1415(a). | "In reviewing administrative decisions in IDEA cases, can a district court apply a de novo standard to questions of law?" | 017225.docx | LEGALEASE-00161008-LEGALEASE-00161009 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 7108 | Sabatino v. Saint Aloysius Par., 280 N.J. Super. 185 | 141E+923 | The religion clauses embodied in the First Amendment to the Constitutionprovide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I, " 1. Although the religion clauses were originally intended to limit only actions by the federal government, the First Amendment has been extended to limit the action of state governments through the Due Process Clause of the Fourteenth Amendment. Everson v. Board of Educ., 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947); see also Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).[(Thus, both state and federal action may be restricted if they impinge upon FirstAmendment rights. Infringement of First Amendment rights may occur where civil courts interfere with a sectarian school's choice of principal. | Infringement of First Amendment rights may occur where civil courts interfere with sectarian school's choice of principal. U.S.C.A. Const.Amends. 1, 14. | Does infringement of First Amendment rights occur where civil courts interfere with a sectarian school choice? | Education - Memo 338 - C - KS_65186.docx | ROSS-003282195-ROSS-003282196 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7109 | Garbark v. Newman, 155 Neb. 188 | 343+1624(7) | Appellant Newman agrees that he promised to equip the car with bumper guards, speedometer, and windshield wipers at his expense. He denies he made any statement about the condition of the cylinder block of the car, or any other part of it. He asserts that the "Thirty day guarantee 50/50" was the only representation or warranty made to appellee. He says that the trial court erred in failing to find and determine that it was exclusive and since no defect in the car occurred or was discovered within 30 days of the date of the sale of it, except the battery failed and was replaced and the brakes required adjustment which was made, appellee had no cause of action against appellants. The finding of the district court that the condition of the car was misrepresented and that there had been a breach of warranty is sustained by evidence and is not contrary to law. Section 69"412, R.R.S.1943, provides in part: "Any affirmation of fact by the seller relating to the goods is an express warranty if the natural tendency of such affirmation is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." A positive statement or affirmation of a seller as to the condition of personal property made during negotiations for its sale indicating that he intended to be bound for the truth thereof, and which was so understood and relied upon by the other party to the negotiations, is an express warranty. McGuire v. Thompson, 152 Neb. 28, 40 N.W.2d 237; Long v. Carpenter, 154 Neb. 862, 50 N.W.2d 67. Appellee inquired of Newman if the block of the motor of the car had been cracked. His answer in the presence of appellee and a third party was a direct positive statement that it had not been cracked. He emphasized this statement with repetitious and extreme profanity apparently as added assurance that any doubt of appellee in that regard would be wholly dissipated. | A positive statement of seller as to condition of personal property made during negotiations for its sale indicating his intention to be bound for the truth thereof, and which was so understood and relied upon by other party, is an "express warranty". R.R.S.1943, S 69-412. | Does a seller's positive statement or affirmation constitute a warranty? | 018384.docx | LEGALEASE-00161787-LEGALEASE-00161788 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7110 | Hindin v. Samuel, 158 Pa. Super. 539 | 200+80 | In Pennsylvania it is well established that the title to property abutting on a public street extends to the center of that street. Scranton v. People's Coal Co., 256 Pa. 332, 100 A. 818. The public acquires an easement in the highway; the fee of the land remaining in the owner subject to the easement and the land may be used by the owner for any purpose not inconsistent with the easement acquired by the public. Duquesne Light Co. v. Duff, 251 Pa. 607, 97 A. 82. No person, corporation or individual has the right to make a special or exceptional use of the public highway not common to all citizens except by grant from the sovereign power. Owl Protective Co. v. Public Service Commission, 123 Pa.Super. 382, 187 A. 229; Philadelphia Co. v. Freeport Borough, 167 Pa. 279, 31 A. 571. As this Court stated in Philadelphia v. Teller, 50 Pa.Super. 260, at page 265: "The highways belong to the commonwealth in trust for the great body of the people, and he who claims a peculiar privilege to invade them must establish his right under some statute, or valid municipal regulation, ordained in pursuance of statutory authority. Livingston v. Wolf, 136 Pa. 519 [20 A. 551, 20 Am.St.Rep. 936]; Commonwealth v. Harris, 15 Phila. 10; Kopf v. Utter, 101 Pa. 27; Commonwealth v. Kembel, 30 Pa.Super. 199." | The highways belong to the commonwealth in trust for the people, and he who claims a peculiar privilege with respect to highways must establish his right under some statute or valid municipal regulation ordained in pursuance of statutory authority. | Do the highways belong to the commonwealth in trust for the great body of the people? | 018887.docx | LEGALEASE-00161819-LEGALEASE-00161820 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7111 | Shindler v. Marr & Associates, 695 S.W.2d 699 | 289+449 | In order to establish a partnership de facto, neither a written nor an oral agreement is essential; a partnership relation may be implied from the facts and circumstances surrounding the transaction. Freeman v. Huttig Sash & Door co., 105 Tex. 560, 153 S.W. 122 (1913); Cavazos v. Cavazos, 339 S.W.2d 224 (Tex.Civ.App."San Antonio 1960, writ ref'd n.r.e.). | In order to establish a partnership de facto, neither written nor oral agreement is essential; a partnership relation may be implied from facts and circumstances surrounding a transaction. | "In order to establish a partnership, is neither written nor an oral agreement is essential?" | 022664.docx | LEGALEASE-00161305-LEGALEASE-00161306 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 7112 | Watson v. Suggs, 313 S.C. 291 | 302+38.5 | At Trial, the court charged the law of trespass to try title, and noted the boundary line question was "incident to" the action to try title. Watson now claims the case presented no question of competing title, but instead, the sole issue was the location of the boundary between the two properties. However, there was no objection to the charge and the case was presented to the jury on the theory of trespass to try title. Furthermore, a review of Watson's complaint unequivocally establishes that the purpose in bringing this suit was to determine title to the disputed nineteen acre tract of land. One of the primary purposes of a written complaint is to appraise the opposite party of the nature and extent of the action against him, and only such matters as are clearly alleged in the complaint can be considered upon the trial of the case. McCullough v. The American Workman, 200 S.C. 84, 20 S.E.2d 640 (1942). We find that this action is in the nature of a trespass action to try title. | One of the primary purposes of written complaint is to apprise opposite party of nature and extent of action against him, and only such matters as are clearly alleged in complaint can be considered upon trial of case. | "Is appraising the opposite party of the nature and extent of the action, one of the functions of a written compliant?" | Pleading - Memo 615 - RMM_65800.docx | ROSS-003294648-ROSS-003294649 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7113 | Moran v. Rynar, 39 A.D.2d 718 | 307A+699 | In such cases, we have held that an attorney's neglect or inadvertent error should not deprive his client of his day in court; and that it is proper to save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect (see, e.g., Springer v. Marangio, 38 A.D.2d 852, 330 N.Y.S.2d 100 (2d Dept., dec. Feb. 22, 1972); Douglaston Estates v. Consolidated Edison Co., 39 A.D.2d 705, 332 N.Y.S.2d 403 (2d Dept., dec. herewith); cf. Dahlem v. Universal School Bus Leasing, 35 A.D.2d 992, 318 N.Y.S.2d 117, Supra). In accord with those determinations are statements in 4 Weinstein-Korn-Miller (par. 3216.04, pp. 32"201) and Practice Commentaries by Professor David D. Siegel on CPLR 3216 (McKinney's Cons.Laws of N.Y., Book 7B, vol. for CPLR 3201"3400, pp. 918"919). Thus, weinstein-Korn-Miller says this: "It must be borne in mind, moreover, that dismissal is a harsh penalty imposed on a client for his lawyer's failures; justified annoyance by the court at a lawyer's procrastinations should not be vented on the litigant with a meritorious claim by closing the courts to him. If the action has merit, lesser penalties for delay are warranted." | Neglect or inadvertent error of an attorney by reason of, inter alia, failure to file a note of issue should not deprive his client of his day in court; in such a case it is proper to save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect. CPLR 3216. | Should an attorney's neglect or inadvertent error not deprive his client of his day in court? | 039666.docx | LEGALEASE-00161180-LEGALEASE-00161181 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7114 | Cty. of Erie v. Peerless Heater Co., 660 A.2d 238 | 307A+697 | The entry of a judgment of non pros. and the denial of a motion to remove such a judgment are peculiarly within the discretion of the trial court. Pilon v. Bally Engineering Structures, 435 Pa.Superior Ct. 227, 645 A.2d 282 petition for allowance of appeal denied, 539 Pa. 680, 652 A.2d 1325 (1994). On appeal we will not reverse the trial court unless the law is overridden or misapplied, or the judgment exercised by the court is manifestly unreasonable or the result of partiality, prejudice, bias or ill will. Id. | Entry of judgment of non pros. and the denial of motion to remove such a judgment are peculiarly within discretion of trial court. | Is the entry of judgment of non pros. and the denial of a motion to remove such a judgment peculiarly within the discretion of a trial court? | Pretrial Procedure - Memo 11497 - C - DA.docx | LEGALEASE-00051058-LEGALEASE-00051059 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7115 | Brown v. Howeth Investments, 820 S.W.2d 900 | 307A+697 | The standard the trial court must apply in reviewing motions to reinstate is set out in Tex.R.Civ.P. 165a, which provides the court, shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. (Emphasis added.) Rule 165a mandates reinstatement if the court finds that the failure of the party or his attorney was not intentional or the result of conscious indifference. See, e.g., Wyatt v. Texas Oklahoma Express, Inc., 693 S.W.2d 731, 733 (Tex.App. Dallas 1985, no writ). The court order refusing to reinstate the plaintiff suit makes no statement regarding fault, but simply states that the court considered the motion to reinstate and denied it. | Reinstatement of suit dismissed for want of prosecution is mandated if failure of party or his attorney was not intentional or result of conscious indifference. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Is reinstatement of a suit dismissed for want of prosecution mandated if the failure of a party or his attorney was not intentional or a result of conscious indifference? | 040108.docx | LEGALEASE-00161251-LEGALEASE-00161252 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 7116 | Florida Nat. Org. for Women v. State, 832 So. 2d 911 | 307A+695 | Leave to amend a complaint "shall be given freely when justice so requires." Fla. R. Civ. P. 1.190(a). Thus, a trial court should grant leave to amend, rather than dismiss a complaint with prejudice, unless a party has abused the privilege to amend, an amendment would prejudice the opposing party, or the complaint is clearly not amendable. E.g., Bill Williams Air Conditioning & Heating, Inc. v. Haymarket Coop. Bank, 592 So.2d 302, 305 (Fla. 1st DCA 1991). This is true even if an amended complaint fails to state a cause of action. Bouldin v. Okaloosa County, 580 So.2d 205 (Fla. 1st DCA 1991). Further, a party that "may be able to allege additional facts to support its cause of action or support another cause of action under a different legal theory" should be allowed to amend a complaint. Obenschain v. Williams, 750 So.2d 771, 773 (Fla. 1st DCA 2000). | A trial court should grant leave to amend, rather than dismiss a complaint with prejudice, unless a party has abused the privilege to amend, an amendment would prejudice the opposing party, or the complaint is clearly not amendable; even if an amended complaint fails to state a cause of action. West's F.S.A. RCP Rule 1.190(a). | Should a court not dismiss a complaint without leave to amend unless the privilege of amendment has been abused? | Pretrial Procedure - Memo 11604 - C - SKG_65620.docx | ROSS-003280280-ROSS-003280281 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 7117 | Univ. of Houston v. Elthon, 9 S.W.3d 351 | 307A+695 | If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. Id. Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. Liberty Mut. Ins. Co., 874 S.W.2d at 739. | If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. | "If the petition fails to allege jurisdictional facts, does the plaintiff have a right to amend before the trial court dismisses the cause?" | 040263.docx | LEGALEASE-00160849-LEGALEASE-00160850 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 7118 | Gladstone v. Smith, 729 So. 2d 1002 | 307A+695 | A claim should not be dismissed with prejudice "without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." | Claim should not be dismissed with prejudice without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action. | Should a dismissal with prejudice not be ordered without giving a party offering defective pleading an opportunity to amend unless it is clear that the pleading cannot be amended? | 040268.docx | LEGALEASE-00160861-LEGALEASE-00160862 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |
| 7119 | Allied Prod. Co. v. Green, 175 Ga. App. 802 | 307A+695 | OCGA " 9-11-37(d)(1) empowers a trial court to require a party failing to respond to interrogatories to pay "the reasonable expenses, including attorney's fees, caused by the failure [to respond to the interrogatories]." (Emphasis supplied.) Not all expenses incurred by a party are regarded as costs. See Stone Mtn. Mem. Assn. v. Stone Mtn. Scenic R., 232 Ga. 92, 94, 205 S.E.2d 293 (1974). The Supreme Court has specifically held that "expenses in discovery are not taxed as costs..." City of Atlanta v. Intl. Assn. of Firefighters etc., 240 Ga. 24(4b), 239 S.E.2d 353 (1977). In light of the above authority, we conclude that a monetary sanction imposed under OCGA " 9-11-37(d) does not constitute a court cost which must be paid before a plaintiff refiles an action he previously dismissed. OCGA " 9-11-41(d). | Not all expenses incurred by party are regarded as costs which must be paid before plaintiff refiles action he previously dismissed. | Are all expenses incurred by a party regarded as costs which must be paid before a plaintiff refiles an action he previously dismissed? | 040338.docx | LEGALEASE-00161118-LEGALEASE-00161119 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7120 | Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., 832 A.2d 116 | 307A+679 | When considering a motion to dismiss a counterclaim under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court is to assume the truthfulness of all well-pleaded allegations of fact in the counterclaim. Although "all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true ... neither inferences nor conclusions of fact unsupported by allegations of specific facts ... are accepted as true." That is, "[a] trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in Plaintiff's favor unless they are reasonable inferences." | When considering a motion to dismiss a counterclaim under court of chancery rule for failure to state a claim upon which relief can be granted, the court is to assume the truthfulness of all well-pleaded allegations of fact in the counterclaim. Chancery Court Rule 12(b)(6). | Are all well-pleaded facts assumed to be true for purposes of determining whether a counterclaim fails to state a claim? | 040343.docx | LEGALEASE-00161130-LEGALEASE-00161131 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 7121 | People v. Kruger, 2015 IL App (4th) 131080 | 307A+583 | Under Illinois law, trial courts have the power to dismiss civil actions "for inexcusable delay and lack of diligence," which is referred to as a dismissal for want of prosecution. City of Crystal Lake v. Sak, 52 Ill.App.3d 684, 688, 10 Ill.Dec. 380, 367 N.E.2d 989, 993 (1977). Moreover, as previously stated, this court has held a trial court may dismiss a case for want of prosecution when the petitioner has failed to properly serve the opposing party within "a reasonable period of time." Powell, 2012 IL App (4th) 110168, 14, 364 Ill.Dec. 543, 976 N.E.2d 1106. The determination of whether or not to dismiss a case for want of prosecution is governed by the particular facts of the case and rests within the trial court's sound discretion. Department of Revenue v. Steinkopf, 160 Ill.App.3d 1008, 1018, 112 Ill.Dec. 407, 513 N.E.2d 1016, 1022 (1987). | The determination of whether or not to dismiss a case for want of prosecution is governed by the particular facts of the case and rests within the trial court's sound discretion. | Is the determination of whether or not to dismiss a case for want of prosecution governed by the particular facts of the case? | 040370.docx | LEGALEASE-00160509-LEGALEASE-00160510 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7122 | Barry v. Reeves, 47 So. 3d 689 | 307A+583 | The courts of this state have the inherent power to dismiss a case for want of prosecution, and a trial court may dismiss a case on that basis for the sake of expediting justice and controlling its own docket. Hill v. Ramsey, 3 So.3d 120, 122 (Miss.2009) (quoting Cucos, Inc. v. McDaniel, 938 So.2d 238, 240 (Miss.2006)). However, given the severity and finality of this sanction, which strips a litigant of his opportunity to pursue his cause of action, dismissal for failure to prosecute pursuant to Mississippi Rule of Civil Procedure 41(b) is "reserved for the most egregious cases." Hillman v. Weatherly, 14 So.3d 721, 726 (Miss.2009) (quoting Wallace v. Jones, 572 So.2d 371, 376 (Miss.1990)).1 A ruling dismissing the case with prejudice on this basis "will be affirmed only if there is a showing of a clear record of delay or contumacious conduct by the plaintiff, and where lesser sanctions would not serve the best interest of justice." Id. (citing Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181 (Miss.1998) (citing Rogers v. Kroger Co., 669 F.2d 317 (5th Cir.1982))) (emphasis added). "[C]ases "in which dismissals with prejudice have been affirmed on appeal illustrate that such a sanction is reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors." " Am. Tel. & Tel. Co., 720 So.2d at 181 (quoting Rogers, 669 F.2d at 320). | The courts of this state have the inherent power to dismiss a case for want of prosecution, and a trial court may dismiss a case on that basis for the sake of expediting justice and controlling its own docket. | Should the courts of the states have the inherent power to dismiss a case for want of prosecution? | Pretrial Procedure - Memo 11706 - C - SKG_65424.docx | ROSS-003278872-ROSS-003278873 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7123 | Spikes v. Neal, 792 So. 2d 571 | 307A+583 | Whether or not a party has shown good cause to keep the action pending is a discretionary decision by the trial court. Edgecumbe, 613 So.2d at 124. Our standard of review is whether the trial court abused its discretion. Id. As in Edgecumbe, we are unable to say that no reasonable persons could differ as to the propriety of the ruling by the trial court in this instance. Id. at 125; Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980)(describing test for determining abuse of discretion). | Whether or not a party has shown good cause to keep the action pending is a discretionary decision by the trial court. West's F.S.A. RCP Rule 1.420(e). | Is the question of whether or not a party has shown good cause to keep the action pending a discretionary decision by the trial court? | Pretrial Procedure - Memo 11753 - C - NS_65463.docx | ROSS-003282877-ROSS-003282878 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 7124 | Shook v. Gilmore & Tatge Mfg. Co., 951 S.W.2d 294 | 307A+583 | Before addressing Shook's one point of error claiming that the trial judge erred in finding that the failure of Shook's attorney to appear at the pretrial hearing was consciously indifferent, we must consider the appellees' reply point of error, which contends that the trial court's dismissal should be affirmed simply on the ground that Shook has not diligently prosecuted this case, pointing out that Shook has not claimed otherwise on appeal. The trial court's authority to dismiss for want of prosecution is derived both from the court's inherent power and from the Rules of Civil Procedure. Ozuna v. Southwest Bio"Clinical Lab., 766 S.W.2d 900, 901 (Tex.App."San Antonio 1989, writ denied); see Tex.R. Civ. P. 165a(4). The trial court has the inherent power to dismiss a suit if the case is not prosecuted with due diligence. See MacGregor v. Rich, 941 S.W.2d 74, 76 (Tex.1997); Clark v. Yarbrough, 900 S.W.2d 406, 408 (Tex.App."Texarkana 1995, writ denied); Austin v. Rosenberg, 740 S.W.2d 62, 64 (Tex.App."San Antonio 1987, writ denied). | Trial court's authority to dismiss suit for want of prosecution is derived from both court's inherent power and from Rules of Civil Procedure. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd. 4. | Is the court's authority to dismiss suit for want of prosecution derived from both court's inherent power and from Rules of Civil Procedure? | Pretrial Procedure - Memo 11760 - C - SB_65629.docx | ROSS-003309115-ROSS-003309116 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7125 | State v. Poe, 139 Idaho 885 | 3.77E+10 | In Virginia v. Black, 538 U.S. 343, """", 123 S.Ct. 1536, 1548, 155 L.Ed.2d 535, 552 (2003) (citations omitted), the United States Supreme Court held that true threats are not protected by the First Amendment, nor is intimidation when it is a type of true threat. "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need actually intend to carry out the threat. Rather, a prohibition of true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. | "Intimidation" in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. U.S.C.A. Const.Amend. 1. | What is intimidation in the constitutionally proscribable sense of the word? | "Threats, Stalking and Harassment - Memo 209- C - LB_65509.docx" | ROSS-003280358 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7126 | United States v. Whiffen, 121 F.3d 18 | 3.77E+11 | Other circuits, however, disagree with Twine. In United States v. DeAndino, 958 F.2d 146 (6th Cir.1992), for example, the Sixth Circuit concluded that " " 875(c) does not require specific intent in regard to the threat element of the offense, but only general intent." Id. at 150. Under a general intent standard, whether a communication is a "true threat" is determined objectively from all the surrounding facts and circumstances, rather than from the defendant's subjective purpose. A general intent standard has also been adopted by three other circuits. See United States v. Myers, 104 F.3d 76, 81 (5th Cir.1997), United States v. Himelwright, 42 F.3d 777, 782"83 (3d Cir.1994), United States v. Darby, 37 F.3d 1059, 1063"66 (4th Cir.1994), cert. denied, 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995). | Under general intent standard, whether communication is "true threat," for purposes of offense of transmitting threatening communications in interstate commerce is determined objectively from all surrounding facts and circumstances, rather than from defendant's subjective purpose. 18 U.S.C.A. S 875(c). | "Under a general intent standard, how is it determined whether a communication is a ""true threat""?" | 046952.docx | LEGALEASE-00160974-LEGALEASE-00160975 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7127 | People v. $8,450 U.S. Currency, 276 Ill. App. 3d 952 | 135H+25 | Despite this clear statutory language, the trial court relied on 1403 East Parham to find that the exemption applied. The trial court's reliance on 1403 East Parham was misplaced. First, that case pertained to the homestead exemption and based its analysis solely on the purpose of that exemption. (1403 East Parham, 251 Ill.App.3d at 201"04, 190 Ill.Dec. 573, 621 N.E.2d 1026.) Second, and more importantly, the analysis of 1403 East Parham is flawed. The court there stated that the object of the Forfeiture Act is to impose a civil penalty in addition to criminal penalties. (1403 East Parham, 251 Ill.App.3d at 202, 190 Ill.Dec. 573, 621 N.E.2d 1026.) However, despite its label as civil, a forfeiture is a punishment for double jeopardy purposes when its goal is either retribution or deterrence. | Despite its label as civil, forfeiture is "punishment" for double jeopardy purposes when its goal is either retribution or deterrence. U.S.C.A. Const.Amend. 5. | "Despite its label as civil, is forfeiture punishment for double jeopardy purposes when its goal is either retribution or deterrence?" | 014864.docx | LEGALEASE-00162178-LEGALEASE-00162179 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7128 | United States v. Singer, 785 F.2d 228 | 135H+97 | Where no verdict is reached, but the trial ends in mistrial, the double jeopardy clause also ordinarily does not preclude retrial. See, e.g., Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949) (retrial after hung jury does not implicate double jeopardy concerns). There is a narrow exception to this rule, however, when the defendant moves for and is granted a mistrial on the basis of deliberate prosecutorial or judicial misconduct. | There is narrow exception to rule that Fifth Amendment double jeopardy clause ordinarily does not preclude retrial where no verdict is reached but trial ends in mistrial, when defendant moves for and is granted mistrial on basis of deliberate prosecutorial or judicial misconduct. U.S.C.A. Const.Amend. 5. | Does a double jeopardy clause of the Fifth Amendment ordinarily not preclude retrial where no verdict is reached but a trial ends in mistrial? | Double Jeopardy - Memo 417 - C - TJ_66987.docx | ROSS-003296936 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 7129 | United States v. Candelaria-Silva, 166 F.3d 19 | 135H+25 | A completed civil forfeiture of property does not constitute "jeopardy" under the Double Jeopardy Clause, and does not bar the subsequent criminal prosecution and punishment of the defendant whose property was forfeited. See United States v. Ursery, 518 U.S. 267, 274, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (stating that the Supreme Court has consistently concluded that "the Clause does not apply to [civil forfeitures] because they do not impose punishment"). A fortiori, a civil forfeiture action that goes no further than a seizure, and never results in the entry of any civil forfeiture judgment cannot constitute jeopardy. Moreover, this Court has recognized that it is "perfectly proper" to begin a forfeiture action with a civil seizure, and then to convert the action to a criminal forfeiture once an indictment is returned. See United States v. Kingsley, 851 F.2d 16, 18 & n. 1 (1st Cir.1988). Indeed, that procedure is commonplace. | A completed civil forfeiture of property does not constitute "jeopardy" under the Double Jeopardy Clause, and does not bar the subsequent criminal prosecution and punishment of the defendant whose property was forfeited. U.S.C.A. Const.Amend. 5. | "Does a completed civil forfeiture of property not constitute ""jeopardy"" under the Double Jeopardy Clause?" | 016183.docx | LEGALEASE-00161912-LEGALEASE-00161913 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7130 | Benitez v. New York City Bd. of Educ., 73 N.Y.2d 650 | 141E+820 | The trial court erroneously instructed the jury that a school owes a student voluntarily competing in an interscholastic high school football game the more protective duty and standard of care of a prudent parent (compare, Pratt v. Robinson, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849; Lawes v. Board of Educ., 16 N.Y.2d 302, 305, 266 N.Y.S.2d 364, 213 N.E.2d 667; Hoose v. Drumm, 281 N.Y. 54, 57"58, 22 N.E.2d 233). In the context of wholly voluntary participation in intramural, interscholastic and other school-sponsored extracurricular athletic endeavors, we have required the exercise of the less demanding ordinary reasonable care standard (see, Scaduto v. State of New York, 86 A.D.2d 682, 683, 446 N.Y.S.2d 529, aff'd. 56 N.Y.2d 762, 452 N.Y.S.2d 21, 437 N.E.2d 281; Govel v. Board of Educ., 267 A.D. 621, 624, 48 N.Y.S.2d 299, aff'd. 293 N.Y. 928, 60 N.E.2d 133). | In action brought by high school football player against board of education and city public school athletic league for injuries sustained in football game, trial court improperly instructed jury that school owed student voluntarily competing in interscholastic high school football game more protective duty and standard of care of prudent parent; in context of wholly voluntary participation in intramural, interscholastic and other school-sponsored extracurricular athletic endeavors, less demanding ordinary reasonable care standard applied. | Are schools required to exercise reasonable care in the concept of participation in inatramural interscholastic athletic endeavors? | 017288.docx | LEGALEASE-00162156-LEGALEASE-00162157 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 7131 | Grand Rent A Car Corp. v. 20th Century Ins. Co., 25 Cal. App. 4th 1242 | 217+1001 | We first consider whether the car rental agreement constitutes insurance. "Ordinarily, where there is a risk of loss to which one party is subject based on contingent or future events and a contract which shifts that risk to another, together with a distribution of the risks among similarly situated persons, the contract is one of insurance." (Hertz Corp. v. Home Ins. Co. (1993) 14 Cal.App.4th 1071, 1077, 18 Cal.Rptr.2d 267; accord, Metropolitan Life Ins. Co. v. State Bd. of Equalization (1982) 32 Cal.3d 649, 654, 186 Cal.Rptr. 578, 652 P.2d 426.) A car rental agreement which contains a provision indemnifying the renter from liability to third persons, up to a specified limit, resulting from an accident which occurs while the rented vehicle is in use constitutes insurance. (Hertz Corp. v. Home Ins. Co., supra, 14 Cal.App.4th at pp. 1077"1078, 18 Cal.Rptr.2d 267; Nathanson v. Hertz Corp. (1986) 183 Cal.App.3d 78, 84, 227 Cal.Rptr. 799, disapproved on other grounds in Moradi"Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58; compare Transportation Guar. Co. v. Jellins (1946) 29 Cal.2d 242, 174 P.2d 625 [motor truck maintenance contracts in which maintenance company agreed to cause the trucks to be insured is not a contract of insurance]; Truta v. Avis Rent A Car System, Inc. (1987) 193 Cal.App.3d 802, 815, 238 Cal.Rptr. 806 [car rental agency's collision damage waiver is not an insurance agreement].) This is so even where the liability insurance/car rental agreement is effectuated by a certificate of self-insurance. (Nathanson v. Hertz Corp., supra, 183 Cal.App.3d at p. 85, 227 Cal.Rptr. 799.) | Car rental agreement which contains provision indemnifying renter from liability to third persons, up to specified limit, resulting from accident which occurs while rented vehicle is in use constitutes insurance and this is so even where liability insurance/car rental agreement is effectuated by certificate of self-insurance. | Are car rental agreements insurance? | 019512.docx | LEGALEASE-00162318-LEGALEASE-00162319 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7132 | Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424 | 260+79.1(2) | Under Louisiana law, the essential quality of an overriding oil and gas royalty is that of a real right to receive and collect a fraction or a percentage of the production of minerals, carved out of the mineral lessee's or the servitude owner's working interest in production, free of drilling and production costs. The Louisiana Supreme Court has explained that "[t]he lessor's royalty is distinguished from the mineral royalty and the overriding royalty. The former is the right to participate in the production of mineral from land or a servitude belonging to another, La.Rev.Stat. " 31:80, while the latter is carved out of the lessee's working interest in the lease." Frey v. Amoco Prod. Co., 603 So.2d 166, 171 n. 8 (La.1992); see Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc., 486 So.2d 129, 134 (La.Ct.App.1986) ("The overriding mineral royalty is a passive, non-cost bearing mineral interest carved out of the lessee's working interest and is dependent upon the continued existence of the mineral lease." (citing, inter alia, Fontenot v. Sun Oil Co., 257 La. 642, 243 So.2d 783 (1971)), rev'd on other grounds, 502 So.2d 1034 (La.1987)); Williams & Meyers, Manual of Oil & Gas Terms (2009) (defining an "overriding royalty" as "[a]n interest in oil and gas produced at the surface, free of the expense of production, and in addition to the usual landowner's royalty reserved to the lessor in an oil and gas lease"). | Under Louisiana law, the mineral lessor's royalty is distinguished from the mineral royalty and the overriding royalty; the former is the right to participate in the production of mineral from land or a servitude belonging to another, while the latter is carved out of the lessee's working interest in the lease. LSA-R.S. 31:80. | What is the distinction between the lessors royalty and the overriding royalty? | 021671.docx | LEGALEASE-00161922-LEGALEASE-00161923 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7133 | Wolf v. Murrane, 199 N.W.2d 90 | 289+553 | The general rule, in absence of a written agreement to the contrary, is that interest is not to be allowed on partnership assets until after a balance has been struck; however, interest may be charged under the circumstances of the case, if the equities require. McFarland v. McCormick, 114 Iowa 368, 370, 86 N.W. 369, 370; 60 Am.Jur.2d, Partnership, s 285, p. 187; 68 C.J.S. Partnership s 397, pp. 913"914. See also Engstrom v. Larson, 79 N.D. 188, 55 N.W.2d 579, 589. | Generally, in absence of a written agreement to the contrary, interest is not to be allowed on partnership assets until after a balance has been struck; however, interest may be charged under circumstances of case, if the equities require. | Is interest not allowed on partnership assets until after a balance has been struck? | 022704.docx | LEGALEASE-00162290-LEGALEASE-00162291 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7134 | In re Jose B., 303 Conn. 569 | 302+243 | We now agree with the concurring justice in In re Matthew F. that, "to the extent that these cases are inconstant, the better rule is set forth in Gurliacci." Id., at 708, 4 A.3d 248. Accordingly, we conclude that the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, not to the subject matter jurisdiction of the trial court. Id., at 710, 4 A.3d 248. This conclusion "is consistent with the rule that every presumption is to be indulged in favor of jurisdiction"; (internal quotation marks omitted) id., at 708, 4 A.3d 248; is "consistent with the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court"; (internal quotation marks omitted) id., at 709, 4 A.3d 248; by allowing the litigant, if possible, "to amend the complaint to correct the defect"; id.; and avoids the bizarre result that the failure to prove an essential fact at trial deprives the court of subject matter jurisdiction. Id. Moreover, as the present case shows, the purported distinction between "a tribunal's action [that] exceeds its statutory authority," which we have treated as implicating the tribunal's jurisdiction, and "a tribunal's action [that] misconstrues its statutory authority," which we have treated as involving the proper construction of the statute; Cantoni v. Xerox Corp., supra, 251 Conn. at 162, 740 A.2d 796; has proven illusory in practice. | The rule that the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, and not the trial court's subject matter jurisdiction, is consistent with the rule that every presumption is to be indulged in favor of jurisdiction and is consistent with the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court, by allowing the litigant, if possible, to amend thecomplaint to correct the defect, and it avoids the bizarre result that the failure to prove an essential fact at trial deprives the court of subject matter jurisdiction. | Does the failure to allege an essential fact under a particular statute go to the legal sufficiency of the complaint? | 023915.docx | LEGALEASE-00162364-LEGALEASE-00162365 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 7135 | Schwab v. Baribeau Implement Co., 163 Wis. 2d 208 | 307A+697 | Dismissal of a case for failure to prosecute is addressed to the sound discretion of the trial court, and we will affirm the court's action unless it is clearly shown that there was an abuse of discretion. Zeis v. Fruehauf Corp., 56 Wis.2d 486, 489, 202 N.W.2d 225, 226 (1972). The party seeking to set aside such a dismissal must show a "clear and justifiable excuse" for the delay in prosecution. Taylor v. State Hwy. Comm'n, 45 Wis.2d 490, 494, 173 N.W.2d 707, 711 (1970). Although dismissal is a harsh sanction, it is appropriate "in cases of egregious conduct by a claimant," Trispel v. Haefer, 89 Wis.2d 725, 732, 279 N.W.2d 242, 245 (1979) (quoting Wis.Stat.Ann. " 805.03 at 414 (1974)), in light of the " "duty" of trial courts ... to "refuse their aid to those who negligently or abusively fail to prosecute the actions which they commence." " Trispel, 89 Wis.2d at 733, 279 N.W.2d at 245 (quoting Smith v. Carter, 141 Wis. 181, 184, 122 N.W. 1035, 1036 (1910)). | Party seeking to set aside dismissal for failure to prosecute must show clear and justifiable excuse for delay in prosecution. W.S.A. 805.03. | Should a party seeking to set aside a dismissal for failure to prosecute show a clear and justifiable excuse for delay in prosecution? | 040571.docx | LEGALEASE-00162490-LEGALEASE-00162491 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7136 | Valley Peat & Humus v. Sunnylands, 398 Pa. Super. 400 | 307A+697 | We note that the second factor considered by a trial court when entertaining a petition to open a non pros judgment is akin to the following standard employed when entering the non pros judgment in the first instance: absence of a compelling reason for the delay. Further, when entering a non pros judgment or when granting a petition to open a non pros judgment, the trial court is bound to consider the prejudice to the adverse party. Prejudice to the adverse party is a requisite for the entry of a non pros judgment. In considering a petition to open, undue prejudice to the adverse party will prevent the granting of the petition to open: Seeing that the request to open a judgment of non pros is directed to the conscience of the court, the court is required to balance the equities and to deny the petition even where the elements coalesce if the granting of relief would cause undue hardship or prejudice to the opponents. | In considering petition to open non pros judgment, undue prejudice to adverse party will prevent granting of petition. | "In considering petition to open non pros judgment, will undue prejudice to an adverse party prevent granting of a petition?" | Pretrial Procedure - Memo 11817 - C - MS_66101.docx | ROSS-003279903-ROSS-003279904 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7137 | Cox v. Cox, 976 So. 2d 869 | 307A+583 | Rule 41(b) of the Mississippi Rules of Civil Procedure authorizes a defendant to move for the dismissal of an action "[f]or failure of the plaintiff to prosecute...." Miss. R. Civ. P. 41(b). The power to dismiss for failure to prosecute is granted not only by Rule 41(b), but is part of a trial court's inherent authority and is necessary for "the orderly expedition of justice and the court's control of its own docket." AT & T, 720 So.2d at 180 (quoting Wallace, 572 So.2d at 375; Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). | The power to dismiss for failure to prosecute is granted not only by rule, but is part of a trial court's inherent authority and is necessary for the orderly expedition of justice and the court's control of its own docket. Rules Civ.Proc., Rule 41(b). | Is the power to dismiss an action for want of prosecution a part of a court's inherent authority? | 040611.docx | LEGALEASE-00162500-LEGALEASE-00162501 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 7138 | Gray v. Rochester Gas & Elec. Corp., 97 A.D.2d 975 | 307A+622 | Under our liberal pleading rules a motion to dismiss should be denied if any cause of action may be discerned from the pleadings (see Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121); nevertheless, the allegations must be sufficient to give notice to the opposing party and to establish the material elements of the claim. Where, as here, a material element is lacking and the allegations make it difficult for defendant to answer, the complaint should be dismissed with leave to replead (see Taylor v. Sefcheck, 96 A.D.2d 1144, 467 N.Y.S.2d 452; Shapolsky v. Shapolsky, 22 A.D.2d 91, 253 N.Y.S.2d 816). Our determination should not be read as passing on the merits of plaintiffs' claim, but merely that inasmuch as it purports to state only a claim for breach of warranty, it is insufficient to apprise defendant of the elements of a claim on the purported third-party beneficiary theory so that it can frame an appropriate response (see Siegel, New York Practice, " 208). | Despite liberal pleading rules, where material element is lacking from complaint and allegations make it difficult for defendant to answer, complaint should be dismissed with leave to replead. | "Where a material element is lacking from a complaint and allegations make it difficult for a defendant to answer, should a complaint be dismissed with leave to replead?" | 040854.docx | LEGALEASE-00162578-LEGALEASE-00162579 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7139 | I-4 Commerce Ctr, Phase II, Unit I v. Orange Cty., 46 So. 3d 134 | 371+2002 | "User fees" are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common traits that distinguish them from taxes. The most significant of these traits are: 1) they are charged in exchange for a particular governmental service; and 2) the service provided benefits the party paying the fee in a manner not shared by other members of society. See City of Gainesville v. State, 863 So.2d 138, 144 (Fla.2003); State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994). | "User fees," which are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved, share common traits that distinguish them from taxes; the most significant of these traits are: (1) they are charged in exchange for a particular governmental service, and (2) the service provided benefits the party paying the fee in a manner not shared by other members of society. | Do fees share common traits that distinguish them from taxes? | Taxation - Memo 1011 - C - JL.docx | LEGALEASE-00052292-LEGALEASE-00052293 | SA, Sub | 0.22 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7140 | Cunningham v. Ferguson, 81 N.H. 380 | 8.30E+10 | The facts in relation to the transaction between the Securities Exchange Company and the defendant Mary C. Ferguson are the same as in the Couture case, except that an agent of the company called upon the defendant in Manchester, and she gave to him $1,000, and received from him a temporary receipt. A few days later the defendant received by mail from Boston the agreement, a copy of which appears in the statement of facts. The authority of the agent, as stated in the agreed facts, was limited to soliciting, receiving, and transmitting of funds. He had no authority to make any contract with the defendant, and did not attempt to do so. He simply gave her a temporary receipt which informed her that a regular receipt would be sent to her signed by the authorized officials of the company after the funds had been transmitted to it. The authorized officials were to accept the funds and issue the contract in Boston. The contract which was a promissory note was dated and made in Massachusetts, and was payable at the office of the company or at any bank. Such a transaction is a Massachusetts contract and governed by Massachusetts laws. Bank of Orange County v. Colby; Stevens v. Norris; Whitney v. Whiting--all above cited. "If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place." Orcutt v. Hough, 54 N. H. 472. | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern the construction of a note made payable at a particular place? | 009128.docx | LEGALEASE-00162821-LEGALEASE-00162822 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 7141 | Cunningham v. Ferguson, 81 N.H. 380 | 8.30E+10 | The facts in relation to the transaction between the Securities Exchange Company and the defendant Mary C. Ferguson are the same as in the Couture case, except that an agent of the company called upon the defendant in Manchester, and she gave to him $1,000, and received from him a temporary receipt. A few days later the defendant received by mail from Boston the agreement, a copy of which appears in the statement of facts. The authority of the agent, as stated in the agreed facts, was limited to soliciting, receiving, and transmitting of funds. He had no authority to make any contract with the defendant, and did not attempt to do so. He simply gave her a temporary receipt which informed her that a regular receipt would be sent to her signed by the authorized officials of the company after the funds had been transmitted to it. The authorized officials were to accept the funds and issue the contract in Boston. The contract which was a promissory note was dated and made in Massachusetts, and was payable at the office of the company or at any bank. Such a transaction is a Massachusetts contract and governed by Massachusetts laws. Bank of Orange County v. Colby; Stevens v. Norris; Whitney v. Whiting--all above cited."If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place." Orcutt v. Hough, 54 N. H. 472. | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern a note which is payable without naming any particular place? | 009136.docx | LEGALEASE-00162835-LEGALEASE-00162836 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7142 | Pyett v. Marsh Plywood Corp., 240 S.C. 56 | 413+50 | We are, of course, mindful that the basic purpose of the Workmen's Compensation Act is the inclusion of employees and not their exclusion. Yeomans v. Anheuser-Busch, Inc., 198 S.C. 65, 15 S.E.2d 833, 136 A.L.R. 894; Hopkins v. Darlington Veneer Co., 208 S.C. 307, 38 S.E.2d 4. Nevertheless, a construction should not be adopted that does violence to the specific provisions of the Act. | Basic purpose of Workmen's Compensation Act is inclusion, not exclusion, of employees, but construction should not be adopted that does violence to specific provisions. Code 1952, S 72-1 et seq. | "With the basic purpose of the Workmens Compensation Act being the inclusion of employers and employees, not their exclusion, should a construction be adopted that does violence to the Act?" | 048723.docx | LEGALEASE-00162705-LEGALEASE-00162706 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 7143 | Welch v. Home Two, 172 Vt. 632 | 413+186 | In essence, Welch attempts to preserve the option of collecting workers' compensation benefits from the subcontractor and suing the general contractor for negligence by application of a statutory employer "test" that would insulate a general contractor from the definition of "employer." We have long held that in determining whether an employer-employee relationship is covered by the Workers' Compensation Act, the language of the law "is all-embracing." Morrisseau v. Legac, 123 Vt. 70, 76, 181 A.2d 53, 57 (1962). The Workers' Compensation Act defines "employer" to include: the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed. 21 V.S.A. " 601(3). As we have previously stated, "[t]his language specifically and unambiguously covers multiple-employer business situations." Candido v. Polymers, Inc., 166 Vt. 15, 17, 687 A.2d 476, 478 (1996). | The language defining employer under the Workers' Compensation Act specifically and unambiguously covers multiple-employer business situations. 21 V.S.A. S 601(3). | Does the language in the Workers Compensation Act specifically and unambiguously cover multiple-employer business situations? | 048727.docx | LEGALEASE-00162701-LEGALEASE-00162702 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 7144 | State v. Stankevicius, 3 Conn. Cir. Ct. 580 | 135H+95.1 | The effect of an improper discharge of the jury is to acquit the defendant of the crime as to which the jury might have rendered a verdict if a mistrial had not been declared. The defendant was entitled, the jury having been impaneled and the trial thereby commenced, to a verdict, be it one of conviction or of acquittal, subject of course to the possibility of a mistrial if circumstances which might arise would justify the proper exercise of the court's discretion. Wharton, Criminal Law and Procedure s 141, and cases cited; see State v. Garvey, 42 Conn. 232, 233. | Effect of improper discharge of jury is to acquit defendant of crime as to which jury might have rendered a verdict if mistrial had not been declared. | Is the effect of an improper discharge of a jury is to acquit a defendant of a crime as to which a jury might have rendered a verdict if mistrial had not been declared? | Double Jeopardy - Memo 450 - C - SHB_66394.docx | ROSS-003280992-ROSS-003280993 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7145 | Cornell v. McDonald, 28 Vet. App. 297 | 34+136 | The Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress, and its jurisdiction is limited to review of Board decisions. 38 U.S.C. "" 7252(a) and 7266. The Board reviews adverse RO decisions affecting the provision of VA benefits and renders the final decision for the Secretary on all questions of law and fact. 38 U.S.C. " 511(a). "The Board is unable to act on a matter absent an appealable, binding RO decision," and in order for the RO decision to be effective proper notice is required. Sellers v. Shinseki, 25 Vet.App. 265, 274 (2012); see also 38 U.S.C. " 5104(a) (requiring the Secretary to provide notice of decisions affecting the provision of benefits under section 511). If the Board lacks subject matter jurisdiction, then so does the Court. Ledford v. West, 136 F.3d 776, 779 (Fed. Cir. 1998) (holding that the Court's "jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed"); Yi v. Principi, 15 Vet.App. 265, 267 (2001) ("The Court lacks appellate jurisdiction over any issue that cannot be the subject of a Board decision."). The Court could not have addressed the merits of this appeal without having jurisdiction to do so. The appellant raised jurisdictional concerns in an effort to obfuscate the problem she had by accepting payment for work that she did not do. See Posey v. Shinseki, 23 Vet.App. 406, 407 (2010) (holding that the Court "has an independent duty to determine its own jurisdiction"). | Board of Veterans' Appeals is unable to act on a matter absent an appealable, binding regional office (RO) decision, and in order for the RO decision to be effective proper notice is required. 38 U.S.C.A. S 5104(a). | "Is the Board of Veterans' Appeals unable to act on a matter absent an appealable, binding regional office (RO) decision?" | 008851.docx | LEGALEASE-00163914-LEGALEASE-00163915 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 7146 | Del Rosario v. Peake, 22 Vet. App. 399 | 34+136 | Preliminarily, we observe that the Federal Rules of Evidence generally "do not apply to proceedings before the Regional Office ..., the Board, or this Court." Bielby v. Brown, 7 Vet.App. 260, 267 (1994) (citing Flynn v. Brown, 6 Vet.App. 500, 503 (1994) (Rules of hearsay evidence do not apply to proceedings before the Board.)); see also Gabrielson v. Brown, 7 Vet.App. 36, 40 (1994) (recognizing that the Board's statutory duty to state the reasons or bases for its findings and conclusions serves a function similar to cross-examination in adversarial litigation). Although the Court has indeed noted that a "forfeiture action is an adversarial process initiated by the Secretary to protect the public fisc from false or fraudulent claims and it must be declared "beyond a reasonable doubt" ", Trilles, 13 Vet.App. at 326, we are not persuaded that the adversarial rules of evidence should nonetheless apply in this context. | The Federal Rules of Evidence generally do not apply to proceedings before the Regional Office (RO), the Board of Veterans Appeals, or the United States Court of Appeals for Veterans Claims. | "Do Federal Rules of Evidence apply to proceedings before the Regional Office (RO), the Board of Veterans Appeals, or the United States Court of Appeals for Veterans Claims?" | 008863.docx | LEGALEASE-00163936-LEGALEASE-00163937 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7147 | McCrady v. Oklahoma Dep't of Pub. Safety, 122 P.3d 473 | 231H+40(2) | The doctrine of employment-at-will is firmly embedded in the common law of Oklahoma. Collier v. Insignia Financial Group, 1999 OK 49, 981 P.2d 321, 323. Under the doctrine, an employee with an employment contract of indefinite duration is free to leave his or her employment for any reason or no reason without incurring liability to the employer, and the employer has the corresponding freedom to terminate the at-will employee for any reason or no reason without incurring liability to the employee. | Under the "employment-at-will doctrine," an employee with an employment contract of indefinite duration is free to leave his or her employment for any reason or no reason without incurring liability to the employer, and the employer has the corresponding freedom to terminate the at-will employee for any reason or no reason without incurring liability to the employee. | Is an at-will employee free to leave his employment without incurring liability to the employer? | 013562.docx | LEGALEASE-00164118-LEGALEASE-00164119 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |
| 7148 | Brewbaker v. State Bd. of Regents, 843 N.W.2d 466 | 135H+25 | The Double Jeopardy Clause prohibits multiple punishments for the same offense. Dressler v. Iowa Dep't of Transp., 542 N.W.2d 563, 565 (Iowa 1996). A civil penalty imposed after a criminal penalty will constitute multiple punishments in violation of the Double Jeopardy Clause when the sanction, as applied in the individual case, serves the goal of punishment. Id. However, if the civil sanction is remedial, the Double Jeopardy Clause is not violated. Id. | A civil penalty imposed after a criminal penalty will constitute multiple punishments in violation of the Double Jeopardy Clause when the sanction, as applied in the individual case, serves the goal of punishment; however, if the civil sanction is remedial, the Double Jeopardy Clause is not violated. U.S.C.A. Const.Amend. 5. | "Can criminal proceedings following the civil forfeiture of a vehicle constitute multiple punishments for the same offense, for purposes of double jeopardy?" | 015092.docx | LEGALEASE-00163737-LEGALEASE-00163738 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 7149 | Riley v. 1987 Station Wagon, 634 N.W.2d 434 | 135H+25 | Appellant contends that this forfeiture constitutes a second punishment and therefore violates the double jeopardy clauses of the United States and Minnesota constitutions. "[A] criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy only if the forfeiture constitutes punishment."City of Pine Springs v. One 1992 Harley Davidson, 555 N.W.2d 749, 750 (Minn.App.1996) (citation omitted).In determining whether a civil forfeiture constitutes "punishment" for double jeopardy purposes, we follow the two-step test set forth in United States v. Ursery, 518 U.S. 267, 277"78, 116 S.Ct. 2135, 2142, 135 L.Ed.2d 549 (1996). Lukkason v. 1993 Chevrolet Extended Cab Pickup, 590 N.W.2d 803, 807 (Minn.App.1999), review denied (Minn. May 18, 1999). | A criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy only if the forfeiture constitutes punishment. U.S.C.A. Const.Amend. 5; M.S.A. Const. Art. 1, S 7. | "Does criminal adjudication followed by a civil forfeiture, or vice versa, violate double jeopardy only if the forfeiture constitutes punishment?" | 015109.docx | LEGALEASE-00163776-LEGALEASE-00163777 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7150 | United States v. Brennick, 908 F. Supp. 1004 | 135H+25 | In sum, Halper teaches that an administrative penalty is punishment only where it cannot be reasonably related to the damages the government incurred in prosecuting the case. Kurth Ranch teaches that a taxation scheme is punishment if it moves so far from ordinary taxation so as to lose its character as a tax. Neither of those conditions obtain here. The penalty in this case is neither disproportional to the government's damages, nor is it a clearly punitive tax. Accordingly, it is not a punishment within the meaning of the Double Jeopardy Clause. See Thomas v. C.I.R., 62 F.3d 97, 99"101 (4th Cir.1995). | Administrative penalty is "punishment" for purposes of double jeopardy analysis only where it cannot be reasonably related to damages government incurred in prosecuting case. U.S.C.A. Const.Amend. 5. | "Is an administrative penalty a ""punishment"" for purposes of double jeopardy analysis only where it cannot be reasonably related to damages government incurred in prosecuting case?" | Double Jeopardy - Memo 247 - C - PB_66766.docx | ROSS-003308493-ROSS-003308494 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7151 | Brock v. State, 955 N.E.2d 195 | 135H+96 | A mistrial granted over the defendant's objection and in the absence of manifest necessity acts as an acquittal and bars reprosecution for the same offense.Jackson v. State, 925 N.E.2d 369, 373 (Ind.2010); Brown v. State, 703 N.E.2d 1010, 1015 (Ind.1998); Wright v. State, 593 N.E.2d 1192, 1196 (Ind.1992). Justice Story articulated the "manifest necessity" standard more than 185 years ago and it remains the law today:We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.... | A mistrial granted over the defendant's objection and in the absence of manifest necessity acts as an acquittal and bars reprosecution for the same offense. U.S.C.A. Const.Amend. 5. | Does a mistrial granted over the defendant's objection and in the absence of manifest necessity act as an acquittal and bars reprosecution for the same offense? | 015220.docx | LEGALEASE-00162935-LEGALEASE-00162936 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7152 | People v. Pau Luong, 180 Misc. 2d 953 | 135H+96 | Double jeopardy does not bar a second trial if the defendant consents to a mistrial. Consent may be either express or implied. If a defendant does not timely and explicitly object to a trial court's sua sponte declaration of mistrial, he or she will be held to have impliedly consented to the mistrial. See United States v. Palmer, 122 F.3d 215 (5th Cir.1997). | A defendant's consent to a mistrial, such as will remove the double jeopardy bar to a second trial, may be either express or implied. U.S.C.A. Const.Amend. 5. | "Can a defendant's consent to a mistrial, such as will remove the double jeopardy bar to a second trial, be either express or implied?" | Double Jeopardy - Memo 263 - C - MS_66577.docx | ROSS-003296670-ROSS-003296671 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 7153 | State v. Minnitt, 203 Ariz. 431 | 135H+96 | Nevertheless, the protections afforded by the double jeopardy clause are not absolute. As a general rule, if the defendant successfully moves for or consents to a mistrial, retrial is not barred on double jeopardy grounds. Dinitz, 424 U.S. at 607, 96 S.Ct. 1075; see also United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (double jeopardy principles "do not go so far as to compel society to so mobilize its decisionmaking resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error"); Kennedy, 456 U.S. at 672"73, 102 S.Ct. 2083 (the circumstances surrounding termination of the first trial dictate whether the double jeopardy clause bars retrial). The rationale for the rule permitting re-prosecution is that the defendant, either on his own motion or by his consent, has agreed to forego his right to a final determination by the first tribunal. Dinitz, 424 U.S. at 607"08, 96 S.Ct. 1075. | As a general rule, if a defendant successfully moves for or consents to a mistrial, retrial is not barred on double jeopardy grounds. U.S.C.A. Const.Amend. 5; A.R.S. Const. Art. 2, S 10. | "As a general rule, if a defendant successfully moves for or consents to a mistrial, is a retrial not barred on double jeopardy grounds?" | 015249.docx | LEGALEASE-00163121-LEGALEASE-00163122 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7154 | State v. Skelton, 77 S.W.3d 791 | 135H+99 | Lastly, we note that a defendant should be mindful of his duty to object whenever the trial court declares a mistrial or the state indicates an intention to retry him without his consent. An objection in the record may be crucial because a retrial is not barred by double jeopardy where a defendant consents to the termination of the trial, notwithstanding the lack of a manifest necessity for doing so. Mounce, 859 S.W.2d at 322 (citing Knight, 616 S.W.2d at 596). In Tennessee, a defendant who stands silent at a time when he could have objected to the action taken by the trial court may often be considered to have acquiesced in that particular course of action. Id. at 322"23. This rule prohibits a party from standing silent while the trial court commits an error in procedure, and then rely on that error to his or her own advantage at a later time. Id. It follows that "if an accused fails to object to the jury's discharge upon a defective verdict, he is viewed as having waived the right not to be put on trial again." Id. (citations omitted). | A retrial is not barred by double jeopardy where a defendant consents to the termination of the trial, notwithstanding the lack of a manifest necessity for doing so. U.S.C.A. Const.Amend. 5. | "Is a retrial not barred by double jeopardy where a defendant consents to the termination of the trial, notwithstanding the lack of a manifest necessity for doing so?" | 015255.docx | LEGALEASE-00163131-LEGALEASE-00163132 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7155 | State v. Tolliver, 839 S.W.2d 296 | 135H+96 | After a mistrial not requested by the defendant, but not objected to by him, do the state and federal double jeopardy clauses bar a second trial? This Court answers "no" and affirms defendant's conviction. | After mistrial not requested by defendant, but not objected to by him or her, state and federal double jeopardy clauses do not bar second trial. U.S.C.A. Const.Amend. 5; V.A.M.S. Const. Art. 1, S 19. | "After a mistrial not requested by defendant, but not objected to by him or her, do state and federal double jeopardy clauses not bar a second trial?" | Double Jeopardy - Memo 320 - C - TJ.docx | LEGALEASE-00053148-LEGALEASE-00053149 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 7156 | People v. Ball, 821 P.2d 905 | 135H+96 | A defendant motion for a mistrial generally operates as a waiver of his constitutional protection against retrial under the double jeopardy clause. United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); People v. Baca, 193 Colo. 9, 562 P.2d 411 (1977). | Defendant's motion for mistrial generally operates as waiver of constitutional protection against retrial under double jeopardy clause. U.S.C.A. Const.Amend. 5. | Does a defendant motion for mistrial generally operate as a waiver of constitutional protection against a retrial under a double jeopardy clause? | Double Jeopardy - Memo 333 - C - NE_66778.docx | ROSS-003283071-ROSS-003283072 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 7157 | People v. Henley, 182 N.W.2d 19 | 135H+95.1 | The people concede that jeopardy attached when the jury was impaneled and sworn. People v. Schepps (1925), 231 Mich. 260, 203 N.W. 882; People v. Tillard (1947), 318 Mich. 619, 29 N.W.2d 111; People v. Anglin (1967), 6 Mich.App. 666, 150 N.W.2d 532. Thereafter, a defendant is ordinarily entitled to have the trial proceed to its normal conclusion, I.e., verdict by the jury or judgment by the court. Discharge of the jury before that time without defendant's consent or without legal justification is equivalent to an acquittal and bars retrial. People v. Schepps, Supra; People v. Anglin, Supra. | Generally, defendant is entitled to have trial proceed to its normal conclusion, and discharge of jury before such time without defendant's consent or without legal justification is equivalent to acquittal and bars retrial. | Is discharge of jury before such time without defendant's consent or without legal justification equivalent to acquittal and bars retrial? | 015427.docx | LEGALEASE-00163597-LEGALEASE-00163598 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7158 | State v. Harrold, 626 S.W.2d 260 | 135H+95.1 | A defendant is placed in jeopardy in a jury trial when the jury has been properly impaneled and sworn. State v. Irving, 559 S.W.2d 301, 307 (Mo.App.1977), United States v. Aguiar, 610 F.2d 1296, 1301 (5th Cir. 1980). The double jeopardy clause ensures a defendant that he will suffer neither more than one punishment nor incessant prosecutions for the same breach of the law. It does not always exclude the possibility of a new trial after a mistrial has been declared, United States v. Leppo, 641 F.2d 149, 152 (3d Cir. 1981). As a rule, when a defendant asks for a mistrial, any constitutional bar to a retrial is eliminated. State v. Irving, supra, United States v. Enoch, 650 F.2d 115, 116 (6th Cir. 1981). Simple prosecutorial error, though it may account for the mistrial, will not commonly construct a basis for dismissal on account of double jeopardy. United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed. 543, 556 (1971), United States v. Fine, 644 F.2d 1018, 1022 (5th Cir. 1981). | Double jeopardy clause ensures defendant that he will not suffer more than one punishment or incessant prosecutions for same breach of law; it does not always exclude possibility of new trial after mistrial has been declared. U.S.C.A.Const.Amend. 5. | Does a double jeopardy clause ensure a defendant that he will not suffer more than one punishment or incessant prosecutions for a same breach of law? | Double Jeopardy - Memo 419 - C - SK_66989.docx | ROSS-003297912-ROSS-003297913 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7159 | State v. Berger, 235 N.W.2d 254 | 135H+95.1 | The double jeopardy clause does not prohibit retrial in every instance when the first trial has terminated prior to a verdict. State v. Allesi, supra, at 814. | Double jeopardy clause does not prohibit retrial in every instance when first trial has terminated prior to verdict. NDCC 29-01-07; Const. S 13; U.S.C.A.Const. Amends. 5, 14. | Does a double jeopardy clause not prohibit retrial in every instance when a first trial has terminated prior to verdict? | 015527.docx | LEGALEASE-00163669-LEGALEASE-00163670 | SA, Sub | 0.09 | 0 | 0 | 1 | 1 | |
| 7160 | United States v. Lofton, 776 F.2d 918 | 110+778(1) | More disturbing is the trial court's failure to instruct the jury on the Government's special burden when a heat of passion defense is raised: that the prosecution must prove beyond a reasonable doubt the absence of heat of passion in order to obtain a conviction for murder. Instruction 13 defines heat of passion and states that the Government must prove it beyond a reasonable doubt in order to secure a manslaughter conviction. This is insufficient to inform the jury that, to obtain a conviction for murder, the prosecution must prove beyond a reasonable doubt that Lofton did not act in the heat of passion. | Defendant in federal murder case who has sufficiently raised heat of passion defense is entitled to instructions informing jury of theory of defense and of government's duty to prove beyond a reasonable doubt absence of heat of passion in order to obtain murder conviction. | Does the government bear the burden of proving absence of heat of passion beyond a reasonable doubt? | 019399.docx | LEGALEASE-00164060-LEGALEASE-00164061 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 7161 | Knight v. Chicago Corp., 183 S.W.2d 666 | 260+79.1(0.5) | If the term "undivided interests' be given its broadest possible meaning, appellants' contention might be upheld. However, the restrictive provision relied upon by appellants is a restraint upon alienation and, when considered in connection with the second italicized clause of paragraph 8, would, according to appellants' contention, operate as a limitation or a condition subsequent supporting a forfeiture. Before such construction can be made effective the language employed in the lease must be so certain that it can be said beyond peradventure that the contracting parties intended to proscribe the type of agreement (the unitizing contracts) employed by the Richardson Petroleum Company is effecting the unitization of the tracts of land consolidated for gas development purposes. The words "pooling agreements," "unitizing contracts," or like specific terms were not employed in the provision prohibiting assignments of certain types of interests, although pooling or unitizing arrangements for oil and gas development purposes were well known to the Texas oil industry in 1940. The words actually used in the lease were, "Lessee shall not make assignments of undivided interests, overriding royalties or oil payments." These three classes of assignments mentioned are referred to by Professor Summers as per cent. interests. 3 Summers Oil and Gas, Perm. Ed., 327, " 556. According to Summers this type of assignment had its origin in the attempted development of oil and gas leases by persons of limited capital. A certain percentage of the lessee's interest would be sold in order to raise funds for drilling costs. We think the terms undivided interest, overriding royalties and oil payments have certain well defined meanings in Texas. All three types of interest are carved out of and constitute a part of the working interest created by an oil and gas lease. An overriding royalty is a certain percentage of the working interest which as between the lessee and the | An "oil payment" as used in mineral lease is similar to an "overriding royalty", except that interest of assignee ceases upon receiving a certain amount of money or value out of oil or gas produced from a certain percentage of the working interest. | How is an oil payment similar to an overriding royalty? | 021690.docx | LEGALEASE-00163309-LEGALEASE-00163310 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 7162 | Smith v. Korf, Diehl, Clayton & Cleverley, 329 N.W.2d 669 | 307A+697 | In considering discretionary reinstatement there is no requirement that a finding be made and entered of record prior to the automatic dismissal date. Such a requirement relates only to what is necessary for a plaintiff seeking beforehand to avoid the automatic dismissal. Under the record here we cannot find the trial court abused its discretion in reinstating the case. | In considering a discretionary reinstatement, there is no requirement that a finding be made and entered of record prior to the automatic dismissal date. | "In considering a discretionary reinstatement, is there no requirement that a finding be made and entered of record prior to the automatic dismissal date?" | Pretrial Procedure - Memo 12006 - C - DHA_67042.docx | ROSS-003279221-ROSS-003279222 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 7163 | McNeil v. Brewer, 242 Ill. App. 3d 463 | 307A+583 | The dismissal of an action for want of prosecution is within the sound discretion of the trial court and should not be disturbed unless there has been an abuse of that discretion. However, it is error to dismiss where a satisfactory explanation of the delay has been given and there has been no intentional or willful disregard of any directions of the court. In re Marriage of Dague (1985), 136 Ill.App.3d 297, 91 Ill.Dec. 40, 483 N.E.2d 322. | Dismissal of action for want of prosecution is within sound discretion of trial court and should not be disturbed unless there has been an abuse of discretion. | Is the dismissal of action for want of prosecution within sound discretion of trial court and not be disturbed unless there has been an abuse of discretion? | 040969.docx | LEGALEASE-00163288-LEGALEASE-00163289 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7164 | People v. Rogers, 92 A.D.3d 1151 | 352H+273 | For purposes of Penal Law article 130, a person is mentally disabled if he or she "suffers from a mental disease or defect which renders him or her incapable of appraising the nature of his or her conduct" (Penal Law " 130.00 [5] ). "The law does not presume that a person with mental retardation is unable to consent to sexual intercourse, and proof of incapacity must come from facts other than mental retardation alone" (People v. Cratsley, 86 N.Y.2d 81, 86, 629 N.Y.S.2d 992, 653 N.E.2d 1162 [1995] [citation omitted]; accord People v. Dean, 70 A.D.3d 1193, 1194, 894 N.Y.S.2d 596 [2010] ). A psychologist testified that he conducted an IQ test and sexual competency evaluation of the victim. Her IQ is 68, which classifies her as developmentally disabled. Although the victim was able to work with her mother on a paper route and obtain her GED, both of her parents and the psychologist testified that the victim had learning deficits. Regarding her knowledge and understanding of sexual activity and consequences, the psychologist concluded that the victim functioned at a preteen level and her limited understanding rendered her "vulnerable to being in situations that could compromise her safety and her physical well-being related to sex acts." The victim was unaware of her pregnancy even at the point when she went into labor. This was consistent with her statement to the psychologist that she "ha[d] no clue" what the typical signs of pregnancy are, even though his evaluation took place several months after she had given birth. The jury also heard and saw the victim when she testified, providing an opportunity to assess her mental capabilities and level of understanding. Giving deference to the jury's credibility determinations, the weight of the evidence supports the jury's finding that the victim was incapable of consenting to sex (compare People v. Cratsley, 86 N.Y.2d at 88, 629 N.Y.S.2d 992, 653 N.E.2d 1162 and People v. Dixon, 66 A.D.2d 971, 972"973, 412 N.Y.S.2d 42 [1978], | Law does not presume that person with mental retardation is unable to consent to sexual intercourse, and proof of incapacity must come from facts other than mental retardation alone. McKinney's Penal Law S 130.00(5). | Does the law presume that a person with mental retardation is unable to consent to sexual intercourse? | 043133.docx | LEGALEASE-00164076-LEGALEASE-00164077 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 7165 | Runcorn v. Shearer Lumber Prod., 107 Idaho 389 | 413+186 | The right-to-control test is relevant in determining whether the injured person is an employee covered by workmen's compensation, or whether the person is an independent contractor not entitled to workmen's compensation protection, Anderson v. Gailey, 97 Idaho 813, 555 P.2d 144 (1976). The right-to-control test may also be relevant if for some reason in a particular case a distinction must be made between a direct employer and a non-direct employer. In the present case the right-to-control test has no relevance since there is no dispute that Runcorn was an employee under the control of Atlas, his direct employer. However, under the expanded definition of "employer" in I.C. " 72"102(10), which was "designed to prevent an employer from avoiding liability under the workmen's compensation statutes by subcontracting the work to others" who may be irresponsible and not insure their employees, Adam v. Titan Equipment Supply Corp., 93 Idaho at 646, 470 P.2d at 411, an employee may have more than oneemployer.The definition includes the direct employer/subcontractor, a contractor over the subcontractor, and a qualifying proprietor or operator of a business over the contractor. This does not mean that the qualifying proprietor or operator is the statutory employer of the contractor and subcontractor; it does mean that the qualifying proprietor or operator is the "employer" of the contractor's and subcontractor's employees, and the contractor is also an "employer" of the subcontractor's employees. See I.C. " 72"216(1). In the present case, both Atlas as the direct employer and Shearer as the "proprietor or operator of the business there carried on," qualify as Runcorn's employers. I.C. " 72"102(10) | Workmen's compensation statutory definition of "employer" includes direct employer/subcontractor, a contractor over the subcontractor, and a qualifying proprietor or operator of the business over the contractor; qualifying proprietor or operator is the "employer" of the contractor's and subcontractor's employees, and contractor is also an "employer," of the subcontractor's employees. I.C. SS 72-102(10), 72-216(1). | "In workers compensation, are direct employers/contractors, contractors over subcontractors, and qualifying proprietors or operators of a business over contractors, employers?" | 048771.docx | LEGALEASE-00164158-LEGALEASE-00164159 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7166 | Contracting Nw. v. City of Fredericksburg, Iowa, 713 F.2d 382 | 25T+186 | In American Home Assurance Co. v. Vecco Concrete Construction Co., 629 F.2d 961 (4th Cir.1980), the Fourth Circuit was presented with this precise issue. In American Home Assurance, a general contractor on a waste water treatment plant construction project had subcontracted some of the work. The subcontractor was bonded. When the subcontractor defaulted, each party sued the other. In the end the general contractor was being sued by both the subcontractor and the bonding company. Although the general contractor only had an arbitration agreement with the subcontractor, the court also stayed the bonding company's litigation against the subcontractor and the contractor. This type of procedure makes eminent sense when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement. As the Fourth Circuit stated in American Home Assurance, "[w]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action." 629 F.2d at 964. Section 3 of the Arbitration Act, which permits a court to stay "any suit ... brought in any of the courts of the United States upon any issue referable to arbitration," is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act. 9 U.S.C. " 3 (emphasis added). In any event, the district court had the inherent power to grant the stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it. American Home Assurance Co., 629 F.2d at 964. Cf. Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d | District court had inherent power to grant stay pending arbitration in order to control its docket, conserve judicial resources, and provide for just determination of cases pending before it. 9 U.S.C.A. S 3. | Does the district court have the inherent power to grant the stay in an arbitration proceeding? | Alternative Dispute Resolution - Memo 884 - RK_67489.docx | ROSS-003293400-ROSS-003293402 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7167 | Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604 | 170A+1951.1 | Although the procedural rules governing federal civil litigation do not explicitly authorize a district court to set time limits for a trial, a district court has inherent power "to control cases before it," provided it exercises the power " "in a manner that is in harmony with the Federal Rules of Civil Procedure." " G. Heileman Brewing Co. v. Joseph Oat Corp., 871 F.2d 648, 652 (7th Cir.1989) (en banc) (quoting Landau & Cleary, Ltd. v. Hribar Trucking, Inc., 867 F.2d 996, 1002 (7th Cir.1989)). The rules repeatedly embody the principle that trials should be both fair and efficient. Thus, the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Similarly, the Federal Rules of Evidence "shall be construed to secure ... elimination of unjustifiable expense and delay." Fed.R.Evid. 102. More particularly, Fed.R.Evid. 403 allows judges to exclude even relevant evidence because of "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." | District court has inherent power to control cases before it, provided it exercises power in manner that is in harmony with Federal Rules of Civil Procedure. Fed.Rules Civ.Proc.Rule 1 et seq., 28 U.S.C.A. | Do district courts have to exercise their inherent powers in harmony with the Federal Rules of Civil Procedure? | 008125.docx | LEGALEASE-00165036-LEGALEASE-00165037 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7168 | People v. Pearson, 2003 WL 21001021 | 135H+30 | Appellant relies on People v. Mitchell (2000) 81 Cal.App.4th 132, 96 Cal.Rptr.2d 401 to support his contention that respondent should not be afforded the opportunity to retry the allegations of the strike priors. This court has examined the issue of whether an allegation of a strike prior may be retried following remand when the reviewing court has determined there was not sufficient evidence to sustain the trial court's true finding. In People v. Sotello (2002) 94 Cal.App.4th 1349, 115 Cal.Rptr.2d 118 we concluded that principles of double jeopardy, res judicata, or collateral estoppel do not bar retrial on an allegation of a strike prior. (Id. at pp. 1355"1356, 115 Cal.Rptr.2d 118.) In so concluding, we rejected the arguments set forth in Mitchell and followed the decision by Division Three of the Second District Court of Appeal in People v. Scott (2000) 85 Cal.App.4th 905, 102 Cal.Rptr.2d 622. | Principles of double jeopardy, res judicata, or collateral estoppel do not bar retrial on an allegation of a strike prior. U.S.C.A. Const.Amend. 5; West's Ann.Cal.Penal Code S 667. | "Do principles of double jeopardy, res judicata, or collateral estoppel, bar retrial on an allegation of a strike prior?" | 014979.docx | LEGALEASE-00164837-LEGALEASE-00164838 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7169 | State v. Guillaume, 293 Mont. 224 | 135H+30 | In arguing his position, Guillaume does not dispute that the weapon enhancement statute is constitutional on its face. Guillaume acknowledges that this Court has repeatedly held that Montana's weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. State v. Krantz (1990), 241 Mont. 501, 512, 788 P.2d 298, 305 (citing State v. Forsyth (1988), 233 Mont. 389, 423, 761 P.2d 363, 384; State v. Spurlock(1987), 225 Mont. 238, 241, 731 P.2d 1315, 1317; State v. Davison (1980), 188 Mont. 432, 445, 614 P.2d 489, 497). However, Guillaume argues that the weapon enhancement statute is unconstitutional as applied to him. | Weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. MCA 46-18-221. | Does weapon enhancement statute create a separate crime or element of a crime in violation of the protection against double jeopardy? | 014998.docx | LEGALEASE-00164621-LEGALEASE-00164622 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7170 | Mandell v. Bd. of Educ. of Syosset Cent. Sch. Dist., 243 A.D.2d 479 | 141E+741 | Determination that elementary school student violated school policy against possessing a weapon on school premises was supported by substantial evidence, indicating that principal found knife in the student's book bag and that student had shown the knife to other students while on school property. 23 It is well settled that an administrative determination is supported by substantial evidence when the evidence consists of "such relevant proof as a reasonable mind may accept as adequate to support a conclusion of ultimate fact" (People ex rel. Vega v. Smith, 66 N.Y.2d 130, 139, 495 N.Y.S.2d 332, 485 N.E.2d 997 (quoting 300 Gramatan Ave. Assoc. v. State Div. of Human Rights, 45 N.Y.2d 176, 180, 408 N.Y.S.2d 54, 379 N.E.2d 1183)). | Determination that elementary school student violated school policy against possessing a weapon on school premises was supported by substantial evidence, indicating that principal found knife in the student's book bag and that student had shown the knife to other students while on school property. | What constitutes a weapon under school districts' rule prohibiting the possession of weapons on school property? | Education - Memo 375 - C - HJ_67170.docx | ROSS-003284849-ROSS-003284850 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7171 | Caviezel v. Great Neck Pub. Sch., 814 F. Supp. 2d 209 | 141E+680(1) | Parents of minor child failed to demonstrate they had valid religious objection to vaccinations for child, as required to establish religious-based exemption from New York requirement that child be immunized before admission to public school. Parents primarily offered only general statements that they would present "additional" or "further" evidence in support of their religious objections at trial, and statements regarding child's alleged "prayer tattoos" and involvement in religious rituals, prayer, and meditation were not supported by sworn affidavit. N.Y.McKinney's Public Health Law " 2164(9). | Parents of minor child failed to demonstrate they had valid religious objection to vaccinations for child, as required to establish religious-based exemption from New York requirement that child be immunized before admission to public school; parents primarily offered only general statements that they would present "additional" or "further" evidence in support of their religious objections at trial, and statements regarding child's alleged "prayer tattoos" and involvement in religious rituals, prayer, and meditation were not supported by sworn affidavit. N.Y.McKinney's Public Health Law S 2164(9). | Are parents entitled to a religious exemption for not vaccinating their child? | 017322.docx | LEGALEASE-00164374-LEGALEASE-00164375 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 7172 | Parole Comm'n v. Lockett, 620 So. 2d 153 | 92+2392 | For the reasons expressed, we find that the clemency process is derived solely from the constitution and is strictly an executive branch function, and that, consequently, the Legislature, by statute, may neither preempt nor overrule the clemency rules without violating the separation of powers doctrine expressly set forth in article II, section 3, of the Florida Constitution. | Clemency process is strictly executive branch function and derives solely from Constitution, and legislature may not by statute preempt or overrule clemency rules without violating separation of powers doctrine. West's F.S.A. Const. Art. 2, S 3; Art. 4, S 8. | Is the clemency power derived from the constitution? | 021789.docx | LEGALEASE-00164921-LEGALEASE-00164922 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 7173 | Walck v. Edmondson, 472 F.3d 1227 | 135H+99 | We turn now to the merits of Ms. Walck's double jeopardy claim. The State maintains that no double jeopardy violation is occurring or will occur because there is no evidence of "impropriety on the part of the State or the trial judge," Aplt. Br. at 41, the state trial judge's "manifest necessity" determination is entitled to great deference, and the doctrine of "one continuing jeopardy" applies in this case. | A state trial judge's manifest necessity determination, in the context of a double jeopardy claim, is entitled to great deference. U.S.C.A. Const.Amend. 5. | "Is a state trial judge's manifest necessity determination, in the context of a double jeopardy claim, entitled to great deference?" | 041008.docx | LEGALEASE-00164287-LEGALEASE-00164288 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7174 | Commonwealth v. Ball, 146 A.3d 755 | 135H+1 | Although a trial de novo typically means that a case starts again "from the beginning," it cannot be interpreted to allow for a second prosecution of an acquitted charge and remain faithful to the double jeopardy clauses. If that was the case, then the Rule necessarily would be unconstitutional because it would permit double jeopardy without a valid waiver. The double jeopardy clauses of the United States and Pennsylvania Constitutions do not allow a rule of procedure to vitiate a constitutional right, especially sub silentio. | The Double Jeopardy Clauses of the United States and Pennsylvania Constitutions do not allow a rule of procedure to vitiate a constitutional right, especially sub silentio. U.S. Const. Amend. 5; Pa. Const. art. 1, S 10. | Does the double jeopardy clause allow a rule of procedure to vitiate a constitutional right? | 041038.docx | LEGALEASE-00164435-LEGALEASE-00164436 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7175 | Aboye v. United States, 121 A.3d 1245 | 3.77E+10 | "A person is guilty of the offense of threats under D.C.Code " 22"407 if he or she: (1) uttered words to another person, (2) those words "were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer," and (3) he or she "intended to utter the words that constitute the threat.""An ordinary hearer is "one aware of all the surrounding circumstances, including what the actual hearer knew." Whether a particular statement constitutes a threat is a question of fact. Especially because the answer to that question may turn on nuance and context, the determination of the trier of fact is entitled to substantial deference. | A person is guilty of the offense of threats to do bodily harm if he or she: (1) uttered words to another person, (2) those words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer, and (3) he or she intended to utter the words that constitute the threat. D.C. Official Code, 2001 Ed. S 22-407. | When is a person guilty of the offense of threats to do bodily harm? | 047043.docx | LEGALEASE-00164529-LEGALEASE-00164530 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 7176 | State v. Triplett, 355 S.W.3d 543 | 135H+59 | The double jeopardy clause does not render the dismissal a final judgment. Double jeopardy is not an issue as to a new charge because the motion hearing was a pre-trial hearing as to the sufficiency of the evidence to warrant the admission of any evidence resulting from the arrest. See " 547.200.2; Burns, 994 S.W.2d at 942"43. In a court-tried case, jeopardy attaches once evidence has been presented as to the merits of the issue of guilt. State v. Connell, 326 S.W.3d 865, 867 (Mo.App.2010); State v. Jarvis, 809 S.W.2d 460, 461 (Mo.App.1991). "If the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach." Smothers, 297 S.W.3d at 632. Here, the trial court never began to hear evidence regarding the question of Triplett's guilt. | In a court-tried case, jeopardy attaches once evidence has been presented as to the merits of the issue of guilt; however, if the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach. U.S.C.A. Const.Amend. 5. | Will jeopardy attach if the proceeding is designed to hear the accused's defenses or objections before trial? | Double Jeopardy - Memo 1021 - C - KG_67736.docx | ROSS-003293626-ROSS-003293627 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 7177 | Kopp v. Fischer, 811 F. Supp. 2d 696 | 135H+59 | In a nonjury trial (such as Petitioner's), Double Jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) ("In a nonjury trial, jeopardy attaches when the court begins to hear evidence.") (citing McCarthy v. Zerbst, 85 F.2d 640, 642 (10th Cir.), cert. denied, 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450 (1936); Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." United States v. Marchese, 46 F.3d 1020, 1022 (10th Cir.1995) (quotation omitted.). | In a nonjury trial, jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made. U.S.C.A. Const.Amend. 5. | Will jeopardy attach when the court begins to hear evidence from which a factual determination of guilt or innocence can be made? | Double Jeopardy - Memo 1027 - C - KG_67742.docx | ROSS-003297448-ROSS-003297449 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7178 | People v. Cabrera, 402 Ill. App. 3d 440 | 135H+59 | To determine whether a subsequent prosecution would violate a defendant's right to avoid being placed in double jeopardy, a reviewing court must initially determine whether jeopardy "attached" in the first proceeding. Bellmyer, 199 Ill.2d at 537"38, 264 Ill.Dec. 687, 771 N.E.2d 391. There are three settings in which jeopardy may attach: (1) at a jury trial when the jury is empaneled and sworn; (2) at a bench trial when the first witness is sworn and the court begins to hear evidence; and (3) at a guilty plea hearing "when the guilty plea is accepted by the trial court." Bellmyer, 199 Ill.2d at 538, 264 Ill.Dec. 687, 771 N.E.2d 391. The defendant contends the constitutional rule against double jeopardy barred the subsequent trial on the offenses the State nol-prossed and the armed robbery charge to which the defendant pleaded guilty, but which was rejected and vacated by the circuit court. We address each contention separately. | There are three settings in which jeopardy may attach: (1) at a jury trial when the jury is empaneled and sworn; (2) at a bench trial when the first witness is sworn and the court begins to hear evidence; and (3) at a guilty plea hearing when the guilty plea is accepted by the trial court. U.S.C.A. Const.Amend. 5; S.H.A. Const. Art. 1, S 10. | What would be the three settings in which jeopardy may attach? | 014676.docx | LEGALEASE-00165671-LEGALEASE-00165672 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 7179 | Ex parte Benson, 459 S.W.3d 67 | 135H+30 | The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This provision, codifying what is known as the protection against double jeopardy, has been made applicable to the States by the Fourteenth Amendment. The protection against double jeopardy includes the protection against multiple punishments. In the multiple-punishment context, the double-jeopardy clause prevents a court from prescribing greater punishment than the legislature intended. | In the multiple-punishment context, the double jeopardy clause prevents a court from prescribing greater punishment than the legislature intended. U.S. Const. Amend. 5. | Does the Double Jeopardy Clause prevent a court from prescribing greater punishment than the legislature intended in the multiple-punishment context? | 014836.docx | LEGALEASE-00166064-LEGALEASE-00166065 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7180 | Epperson v. Com., 197 S.W.3d 46 | 135H+30 | Epperson claims that the reuse of the burglary and robbery convictions as aggravating circumstances denied him his right to be free from double jeopardy. The issue presented at this time is admittedly unpreserved. Nevertheless, Epperson urges this Court to revisit earlier decisions. Again, we decline the invitation. Bowling v. Commonwealth, supra, held that simply because the aggravating circumstance duplicates one of the underlying offenses, it does not mean that the defendant is being punished twice for the same offense. | Simply because the aggravating circumstance duplicates one of the underlying offenses, it does not mean that defendant is being punished twice for the same offense, in violation of double jeopardy. U.S.C.A. Const.Amend. 5. | "Does it mean that defendant is being punished twice for the same offense, in violation of double jeopardy, if the aggravating circumstance duplicates one of the underlying offenses?" | Double Jeopardy - Memo 1182 - C - BP_67746.docx | ROSS-003278664-ROSS-003278665 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 7181 | R.J.W. v. State, 910 So. 2d 357 | 135H+100.1 | When the court announced that it was granting the motion for judgment of dismissal, it did not indicate that it was deferring ruling or that its ruling was tentative. If a motion is made by either party, the rule expressly requires that the court enter an order dismissing the petition for insufficiency of evidence where the State fails to establish a prima facie case. Here, by statute and rule, the trial court is empowered to act as factfinder and adjudicator, but not revisit an acquittal, even if wrongly entered. An acquittal bars the prosecution from seeking "another opportunity to supply evidence that it failed to muster" in the first place. Burks v. United States, 437 U.S. 1, 12, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). A second bite at the apple in the same proceeding, as in the case before us, is similarly insupportable. | An acquittal bars the prosecution from seeking another opportunity to supply evidence that it failed to muster in the first place. | Does an acquittal bar the prosecution from seeking another opportunity to supply evidence that it failed to muster in the first place? | 016047.docx | LEGALEASE-00165795-LEGALEASE-00165796 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7182 | State v. Winstead, 552 N.W.2d 651 | 135H+100.1 | The protections afforded under the Double Jeopardy Clause stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. Schiro v. Farley, 510 U.S. 222, 229, 114 S.Ct. 783, 788"89, 127 L.Ed.2d 47, 56 (1994). When a defendant has been acquitted, the Double Jeopardy Clause guarantees that the State is not permitted to make repeated attempts to convict him. Id. Where there is "no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." United States v. Wilson, 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232, 242 (1975). | When defendant has been acquitted, double jeopardy clause guarantees that state is not permitted to make repeated attempts to convict him. U.S.C.A. Const.Amend. 5. | "When a defendant has been acquitted, does a double jeopardy clause guarantee that a state is not permitted to make repeated attempts to convict him?" | 016171.docx | LEGALEASE-00165924-LEGALEASE-00165925 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7183 | Martin v. Com., 170 S.W.3d 374 | 135H+96 | The double jeopardy rule is that a motion for mistrial by a defendant removes the double jeopardy bar to retrial. However, there exists a limited exception where this bar will not be removed. The exception allows double jeopardy to bar retrial where the prosecutor's conduct intended to provoke the defendant into moving for a mistrial. "[T]he conduct giving rise to the order of mistrial [must be] precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court." | Double jeopardy rule is that a motion for mistrial by a defendant removes the double jeopardy bar to retrial, but there exists a limited exception where this bar will not be removed; the exception allows double jeopardy to bar retrial where the prosecutor's conduct intended to provoke the defendant into moving for a mistrial. U.S.C.A. Const.Amend. 5. | "The double jeopardy rule is that a motion for mistrial by a defendant removes the double jeopardy bar to retrial, however, does there exist a limited exception where this bar will not be removed?" | Double Jeopardy - Memo 755 - C - SKG_67760.docx | ROSS-003282493-ROSS-003282494 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 7184 | Cornish v. State, 272 Md. 312 | 135H+99 | Where the effect of a mistrial is "(h)arassment of an accused by successive prosecutions," a retrial is barred, Downum v. United States, supra, 372 U.S. at 736, 83 S.Ct. at 1034; Gori v. United States, supra, 367 U.S. at 369, 81 S.Ct. 1523. A second trial was not allowed where the trial judge declared a mistrial because continuation of the trial was not consistent with the court's convenience, Commonwealth v. Wideman, 453 Pa. 119, 306 A.2d 894 (1973). And a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem, United States v. Jorn, supra; United States v. Beasley, supra; United States v. Kin Ping Cheung, supra; United States v. Tinney, 473 F.2d 1085 (3d Cir. 1973), cert. denied, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973). | Retrial is barred by Fifth Amendment where reasonable alternatives to mistrial, such as continuance, are feasible and could cure the problem. U.S.C.A.Const. Amend. 5. | "Is a retrial barred by the Fifth Amendment where reasonable alternatives to mistrial, such as continuance, are feasible and could cure the problem?" | 016230.docx | LEGALEASE-00165549-LEGALEASE-00165550 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7185 | Henderson v. Wright, 533 F. Supp. 1373 | 135H+95.1 | The accused may again be tried if the state can demonstrate a "high degree" of necessity for the earlier mistrial. Id. at 506, 98 S.Ct. at 830-831. The "strictest scrutiny" is required in cases where the mistrial is granted at the request of the prosecutor "in order to buttress weaknesses in his evidence," id. at 507, 98 S.Ct. at 831. "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." Id. at 509, 98 S.Ct. at 832. "Great deference" must be accorded the declaration of a mistrial in such circumstances, provided the decision was not taken for reasons "unrelated to the trial problem." Id. at 510, 98 S.Ct. at 832-833. | "Strictest scrutiny" is required in cases where mistrial is granted at request of prosecutor in order to buttress weaknesses in his evidence. | "Is ""strictest scrutiny"" required in cases where mistrial is granted at request of a prosecutor in order to buttress weaknesses in his evidence?" | 016238.docx | LEGALEASE-00165559-LEGALEASE-00165560 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7186 | United States v. Markus, 604 F. Supp. 736 | 135H+100.1 | Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984), quoting Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It is the scope of the first such protection that is here implicated. That scope is particularly broad; its proscription absolute. See generally United States v. DiFrancesco, 449 U.S. 117, 127"30, 101 S.Ct. 426, 432"34, 66 L.Ed.2d 328 (1980). Thus, acquittals are final, even if "based upon an egregiously erroneous foundation,"Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978), quoting Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962), or if inconsistent with other aspects of a jury's verdict. United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984). | Acquittals are final, even if based upon egregiously erroneous foundation or if inconsistent with other aspects of jury's verdict. U.S.C.A. Const.Amend. 5. | "Are acquittals final, even if based upon egregiously erroneous foundation or if inconsistent with other aspects of jury's verdict?" | 016289.docx | LEGALEASE-00165613-LEGALEASE-00165614 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7187 | People v. Anderson, 117 Cal. App. Supp. 763 | 135H+100.1 | To decide how a trial judge's action should be characterized, the reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."26 There is an acquittal and retrial is impermissible when the judge "evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction." | There is an acquittal and retrial is impermissible where judge evaluated government's evidence and determined that it was legally insufficient to sustain conviction. M.C.L.A.Const. Art. 1, S 15; U.S.C.A.Const. Amend. 5. | Is there an acquittal and retrial is impermissible where a judge evaluated a government's evidence and determined that it was legally insufficient to sustain conviction? | Double Jeopardy - Memo 820 - C - DHA_67937.docx | ROSS-003296189-ROSS-003296190 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 7188 | People v. Nix, 453 Mich. 619 | 135H+103 | To be sure, the judge did not say that he was directing a verdict, and no formal judgment of acquittal was entered. The determination of what the judge did, however, does not turn on how the judge characterizes his actions. "[T]he trial judge's characterization of his own actions cannot control the classification of the action." What constitutes an "acquittal" is not controlled by the form of the judge's action. To decide how a trial judge's action should be characterized, the reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."There is an acquittal and retrial is impermissible when the judge "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction". | In determining whether ruling of trial judge actually represents resolution, correct or not, of some or all of factual elements of offense, such that ruling constitutes acquittal and double jeopardy bars retrial, phrase "correct or not," refers to all aspects of trial court's ultimate legal decision, including even cases where trial court is factually wrong with respect to whether particular factor is element of charged offense, not to factual truth of prosecution's evidence. U.S.C.A. Const.Amend. 5. | Is there an acquittal and retrial is impermissible where a judge evaluated a government's evidence and determined that it was legally insufficient to sustain conviction? | 016320.docx | LEGALEASE-00165643-LEGALEASE-00165644 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 7189 | State v. Gill, 187 W. Va. 136 | 135H+1 | The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, Conner v. Griffith, 160 W.Va. 680, 238 S.E.2d 529 (1977). | The double jeopardy clause of the West Virginia Constitution provides immunity from further prosecution where court having jurisdiction has acquitted accused, protects against second prosecution for same offense after conviction, and prohibits multiple punishments for same offense. Const. Art. 3, S 5. | What are the protections double jeopardy clause provide against? | 016437.docx | LEGALEASE-00165233-LEGALEASE-00165234 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7190 | Oregon v. Kennedy, 456 U.S. 667 | 135H+1 | The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. United States v. Jorn, 400 U.S. 470, 483-484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971) (plurality opinion); Wade v. Hunter, 336 U.S., at 689, 69 S.Ct., at 837. If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." Ibid. | Double jeopardy clause does not offer a guaranty to the defendant that the state will vindicate its societal interest in enforcement of the criminal laws in one proceeding. U.S.C.A.Const.Amend. 5. | Does the Double Jeopardy Clause guarantee the state's interest in enforcing the criminal laws against a defendant will be vindicated in a single trial? | 016447.docx | LEGALEASE-00165243-LEGALEASE-00165244 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7191 | State v. Eggleston, 164 Wash. 2d 61 | 135H+51 | The Fifth Amendment provides, "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." Washington's declaration of rights similarly indicates, "[n]o person shall ... be twice put in jeopardy for the same offense." Wash. Const. art. I, " 9. Washington's double jeopardy clause is coextensive with the federal double jeopardy clause and "is given the same interpretation the Supreme Court gives to the Fifth Amendment." State v. Gocken, 127 Wash.2d 95, 107, 896 P.2d 1267 (1995). Both double jeopardy clauses "bar[ ] trial if three elements are met: (a) jeopardy previously attached, (b) jeopardy previously terminated, and (c) the defendant is again in jeopardy "for the same offense." " State v. Corrado, 81 Wash.App. 640, 645, 915 P.2d 1121 (1996) (footnotes omitted). | Federal and state double jeopardy clauses bar trial if three elements are met: (1) jeopardy previously attached, (2) jeopardy previously terminated, and (3) the defendant is again in jeopardy for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Do State and federal Double Jeopardy Clauses bar trial if three elements are met? | 016503.docx | LEGALEASE-00165319-LEGALEASE-00165320 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7192 | State v. Hall, 162 Wash. 2d 901 | 135H+1 | Although this case is unique in its facts, the cases cited in Hall briefs do demonstrate the basic principles of the constitutional protection against double jeopardy. We begin with the basic understanding that the constitutional protection against double jeopardy is an individual right which, as a general proposition, is invoked by the defendant seeking protection against retrial. See Oregon v. Kennedy, 456 U.S. 667, 681"82, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) ("The Double Jeopardy Clause represents a constitutional policy of finality for the defendant benefit in criminal proceedings." (Stevens, J., concurring)). | The constitutional protection against double jeopardy is an individual right which, as a general proposition, is invoked by a defendant seeking protection against retrial. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | "Is the constitutional protection against double jeopardy which is an individual right as a general proposition, invoked by a defendant seeking protection against retrial?" | Double Jeopardy - Memo 928 - C - NE_67717.docx | ROSS-003278967-ROSS-003278968 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 7193 | State v. George, 160 Wash. 2d 727 | 135H+1 | The double jeopardy clauses of the federal and state constitutions prohibit the State from twice putting a defendant on trial for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, 9; United States v. DiFrancesco, 449 U.S. 117, 129"30, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); In re Pers. Restraint of Percer, 150 Wash.2d 41, 48, 75 P.3d 488 (2003). The two clauses are essentially identical and afford the same protections. State v. Linton, 156 Wash.2d 777, 782"83 n. 3, 783, 132 P.3d 127 (2006). | The Double Jeopardy Clauses of the federal and state Constitutions prohibit the state from twice putting a defendant on trial for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Does the Double Jeopardy Clauses of the federal and state Constitutions prohibit the state from twice putting a defendant on trial for the same offense? | 016570.docx | LEGALEASE-00165387-LEGALEASE-00165388 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 7194 | State v. Francois, 926 So. 2d 744 | 135H+1 | The Fifth Amendment to the United States Constitution and Article 1, " 15 of the Louisiana Constitution of 1974 prohibit placing a person twice in jeopardy of life or limb for the same offense. La.Code Crim.P. art. 591. Double jeopardy protects an accused not only from a second prosecution for the same offense but also multiple punishments for the same criminal act. State v. Murray, 00-1258 (La.9/18/01), 799 So.2d 453. | "Double jeopardy" protects an accused not only from a second prosecution for the same offense but also multiple punishments for the same criminal act. U.S.C.A. Const.Amend. 5. | "Does ""Double jeopardy"" protect an accused not only from a second prosecution for the same offense but also multiple punishments for the same criminal act?" | Double Jeopardy - Memo 948 - C - KS.docx | LEGALEASE-00055642-LEGALEASE-00055643 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 7195 | United States v. Beltz, 385 F.3d 1158 | 135H+1 | The Fifth Amendment provides that "No person shall.be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The double jeopardy clause protects against multiple punishments for the same offense and prevents imposition of greater punishment than authorized by Congress. Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). One type of analysis used by the Supreme Court to ascertain the extent of punishment Congress intended in its criminal legislation is to examine the statutory elements of the offenses charged, and it concluded in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that multiple punishments are permitted for separate convictions when each requires an element of proof that the other does not. | Double Jeopardy Clause protects against multiple punishments for the same offense and prevents imposition of greater punishment than authorized by Congress. U.S.C.A. Const.Amend. 5. | Does the double Jeopardy Clause protect against multiple punishments for the same offense and prevent imposition of greater punishment than authorized by Congress? | 016601.docx | LEGALEASE-00165417-LEGALEASE-00165418 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7196 | State v. Baker, 160 A.3d 559 | 135H+59 | The Fifth Amendment to the United States Constitution provides that "[n]o person shall be ... subject for the same offence to be twice put in jeopardy of life or limb." The constitutional prohibition on double jeopardy applies to the States through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). "In a jury trial, the Double Jeopardy Clause generally bars the retrial of a criminal defendant for the same offense once a jury has been empaneled and sworn." Simmons, 436 Md. at 213, 81 A.3d 383. "When a mistrial is granted over the objection of the defendant, double jeopardy principles will not bar a retrial if there exists "manifest necessity" for the mistrial." Id. If, however, the mistrial was not manifestly necessary, then the trial judge abused her discretion in declaring the mistrial, and retrial is barred by double jeopardy principles. Hubbard v. State, 395 Md. 73, 89, 909 A.2d 270 (2006). | In a jury trial, the Double Jeopardy Clause generally bars the retrial of a criminal defendant for the same offense once a jury has been empaneled and sworn. U.S. Const. Amend. 5. | Will the double jeopardy clause bar the retrial of a criminal defendant for the same offense once a jury has been empaneled and sworn? | Double Jeopardy - Memo 967 - C - SN_67841.docx | ROSS-003294410-ROSS-003294411 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7197 | Hill Behan Lumber Co. v. Irving Fed. Sav. & Loan Ass'n, 121 Ill. App. 3d 511 | 307A+624 | We note that Hill Behan's first amended complaint failed to allege that the sworn statement was submitted to CT & T as agent for Irving and the owner, thereby excusing the 90-day notice requirement as to Irving. Since the first amended complaint failed to allege service of the 90-day notice, the trial court properly determined that it failed to state a cause of action as against Irving. (Vanderlaan v. Berry Construction Co. (1970), 119 Ill.App.2d 142, 255 N.E.2d 615.) However, it is well established that a cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated. (Dinn Oil Co. v. Hanover Insurance Co. (1967), 87 Ill.App.2d 206, 230 N.E.2d 702.) Here, in view of the terms of the escrow agreement, it is not apparent that even after amendment no cause of action can be stated as against Irving. Accordingly, we find the trial court erred in denying Hill Behan leave to file a second amended complaint to add CT & T, as escrow trustee, as a party defendant and to set forth facts alleging the existence of an agency relationship between CT & T, Irving and the owners. | A cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated. | When should a court dismiss a cause of action when leave to amend is sought? | Pretrial Procedure - Memo 12025 - C - TM_68449.docx | ROSS-003294193-ROSS-003294194 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7198 | In re Ecco Drilling Co., Ltd., 390 B.R. 221 | 349A+10 | Zwirn contends that the difficulty in distinguishing true leases from disguised security interests should be properly resolved by giving credence to the parties' freedom to contract, their expressed intentions, and the resulting self-characterization of these documents as financing leases. However, under revised " 1"201(37) applicable to this dispute, the intention of the parties has been abandoned as a proper tool by which to distinguish a true lease from a disguised security interest and replaced by an evaluation of the economic structure of the particular transaction. As recognized in Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.), 349 F.3d 711 (3d Cir.2003):... the New York U.C.C. no longer looks to the intent of the drafting parties to determine whether a transfer is a lease or a security agreement. Specifically, the 1992 version of " 1"201(37) directed courts to determine "[w]hether a lease is intended as security"; this language was amended in 1995 to read "whether a transaction creates a lease or security interest." In this way, the reference to the parties' intent was explicitly omitted. | Under New York law, intention of parties is not proper tool by which to distinguish true lease from disguised security agreement; rather, court must evaluate economic structure of particular transaction. | Is intention of parties not a proper tool by which to distinguish a true lease from a disguised security agreement? | 042791.docx | LEGALEASE-00166000-LEGALEASE-00166001 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7199 | In re Am. Eagle Coatings, 353 B.R. 656 | 349A+10 | Missouri state law on the issue is not abundantly clear but cases in a similar context indicate that the Court should look at the totality of the circumstances of the transaction. It also appears that the actual substance of the transaction controls, rather than its form. Missouri cases look at the intent of the parties which can be determined from a consideration of the entire instrument, and the circumstances under which it was made. See Abberton v. Stephens, 747 S.W.2d 334 (Mo.Ct.App.1988) (deed vs. equitable mortgage); Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coen & Co., 154 S.W.3d 432 (Mo.Ct.App.2005) (lease vs. license). Missouri cases in the UCC context also use a functional approach in distinguishing leases from secured credit with respect to personal property. It has been held that the pivotal factor in determining whether an instrument is a true lease or security agreement is whether or not the lessee has an absolute obligation to purchase the property. See In re Hoskins, 266 B.R. 154 (Bankr.W.D.Mo.2001) and cases cited therein. In that case the court held that under state law the focus should still be on the "economic realities" of the transaction. Id. at 161 | Under Missouri law, in determining whether lease is true lease or disguised financing arrangement, courts look at the intent of the parties which can be determined from a consideration of the entire instrument, and the circumstances under which the instrument was made. | "In determining whether a lease is a true lease or disguised financing arrangement, courts look at the intent of the parties which can be determined from a consideration of the entire instrument?" | 042803.docx | LEGALEASE-00166026-LEGALEASE-00166027 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 7200 | In re Parker, 363 B.R. 769 | 349A+10 | Having determined that the agreements at issue are not security agreements under the initial bright line test, the Court must exam the facts of these cases to determine the nature of the agreements. See id. In Barnhill and subsequent decisions, the Court has set forth a list of factors that it exams to determine whether a rental agreement is a true lease or a security agreement. In adopting " 1"201(37)(B), the South Carolina legislature determined that some of the factors previously considered by this Court and other courts should not be applicable to such determinations. See e.g., In re Barnhill, 189 B.R. at 613.3 The revisions to " 1"201(37) reassert "the significance of residual value as the touchstone of the common law definition of true leases." See Gregory J. Naples, A Review and Analysis of the New Article 2A, 93 Com. L.J. 342, 349 (1988). If there is no reversionary interest or if the reversionary interest is insignificant, the transaction is a sale rather than a lease. See 4 JAMES S. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code " 30"3 (4th ed.2002). In light of the revisions to " 1"201(37)(A), other courts have considered the following factors: 1) whether the lease is terminable at will by the lessee; 2) whether the lessor has a duty to repair; 3) whether lessee is compelled to purchase the goods at the termination of the lease; 4) whether mandatory payments due under the lease are equal to or greater than the value of the leased goods; and 5) whether the useful life of the leased property exceeds the term of the lease. See Meeks 210 B.R. at 1010; In re Johnson, 203 B.R. 498, 503 (Bankr.S.D.Ga.1996). The Court finds that this non-exclusive list of factors provides a good indication as to whether Creditors retain a meaningful reversionary interest in the goods leased. | Under South Carolina law, once bankruptcy court determined that alleged consumer rental-purchase agreements were not security agreements under initial bright line test, court then had to examine facts of each case to determine nature of agreements, as true leases or disguised security agreements. S.C.Code 1976, S 36-1-201(37). | "Once a bankruptcy court determine that alleged consumer rental-purchase agreements are not security agreements, should a court then examine facts of each case?" | 042807.docx | LEGALEASE-00166028-LEGALEASE-00166029 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7201 | People v. Haller, 174 Cal. App. 4th 1080 | 135H+5.1 | In considering the harshness of the penalty, we take into consideration that defendant is a repeat offender whom the Legislature may punish more severely than it punishes a first-time offender. (Ewing, supra, 538 U.S. at pp. 24"26, 123 S.Ct. at pp. 1187"1188, 155 L.Ed.2d at pp. 119"120.) Yet we also have in mind that, because the penalty is imposed for the current offenses, the focus must be on the seriousness of these offenses. (Witte v. United States (1995) 515 U.S. 389, 402"403, 115 S.Ct. 2199, 2207"2208, 132 L.Ed.2d 351, 366; Carmony, supra, 127 Cal.App.4th at p. 1079, 26 Cal.Rptr.3d 365.) "Past offenses do not themselves justify imposition of an enhanced sentence for the current offense. [Citation.] The double jeopardy clause prohibits successive punishment for the same offense. [Citations.]The policy of the clause therefore circumscribes the relevance of recidivism. [Citations.] To the extent the "punishment greatly exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offenses." [Citation.]" (Carmony, supra, 127 Cal.App.4th at p. 1080, 26 Cal.Rptr.3d 365.) | The double jeopardy clause prohibits successive punishment for the same offense; the policy of the clause therefore circumscribes the relevance of recidivism. U.S.C.A. Const.Amend. 5. | Does the double jeopardy clause prohibits successive punishment for the same offense and the policy of the clause therefore circumscribes the relevance of recidivism? | 014891.docx | LEGALEASE-00166230-LEGALEASE-00166231 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7202 | United States v. Capozzi, 723 F.3d 720 | 135H+98 | The standard of manifest necessity cannot "be applied mechanically or without attention to the particular problem confronting the trial judge." Washington, 434 U.S. at 506, 98 S.Ct. 824. The Supreme Court in Washington "established a "sliding scale of scrutiny" for determining whether manifest necessity existed."Colvin v. Sheets, 598 F.3d 242, 253 (6th Cir.2010). As we have explained: "The strictest scrutiny applies when the mistrial is based on prosecutorial or judicial misconduct. At the other end, great deference or special respect is due when the mistrial is based on a deadlocked jury." Id. (internal quotation marks and citations omitted). | A sliding scale of scrutiny applies for determining whether manifest necessity for mistrial existed, as would preclude double jeopardy bar to retrial, with the strictest scrutiny applying when the mistrial is based on prosecutorial or judicial misconduct; at the other end, great deference or special respect is due when the mistrial is based on a deadlocked jury. U.S.C.A. Const.Amend. 5. | Does a sliding scale of scrutiny apply for determining whether manifest necessity for mistrial existed? | 015916.docx | LEGALEASE-00166277-LEGALEASE-00166278 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 7203 | Com. v. Kelly, 797 A.2d 925 | 110+867.20 | Presently, Appellants contend that the manifest necessity required for the sua sponte declaration of a mistrial did not exist in this case. Consequently, Appellants assert that the trial judge abused his discretion in sua sponte granting a mistrial in their cases, and the double jeopardy provisions of the United States and Pennsylvania Constitutions would be violated by compelling them to undergo a second trial in this matter. It is within a trial judge's discretion to declare a mistrial sua sponte upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. Commonwealth v. Leister, 712 A.2d 332, 334 (Pa.Super.1998), (citing Commonwealth v. Gains, 383 Pa.Super. 208, 556 A.2d 870 (1989)); Pa.R.Crim.P. 1118(b) (amended and renumbered as Rule 605, effective April 1, 2001). Where there exists manifest necessity for a trial judge to declare a mistrial sua sponte, neither the Fifth Amendment to the United States Constitution, nor Article I, " 10 of the Pennsylvania Constitution will bar retrial. Leister, 712 A.2d at 335, (citing Commonwealth ex rel. Walton v. Aytch, 466 Pa. 172, 352 A.2d 4 (1976)). | It is within a trial judge's discretion to declare a mistrial sua sponte upon the showing of manifest necessity, and absent an abuse of that discretion, appellate court will not disturb his or her decision. Rules Crim.Proc., Rule 605, 42 Pa.C.S.A. | Is the manifest necessity standard applicable when determining whether double jeopardy attaches following a trial court's sua sponte declaration of mistrial? | Double Jeopardy - Memo 628 - C - MS.docx | LEGALEASE-00055992-LEGALEASE-00055993 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7204 | United States v. Basciano, 599 F.3d 184 | 135H+5.1 | The Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This Double Jeopardy Clause protects against both multiple punishments and successive prosecutions for the same offense, regardless of whether a first prosecution resulted in conviction or acquittal.See Schiro v. Farley, 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994). In the case of successive prosecutions, the critical inquiry is whether the offenses are "the same in fact and in law." United States v. Estrada, 320 F.3d at 180. | Double Jeopardy Clause protects against both multiple punishments and successive prosecutions for the same offense, regardless of whether a first prosecution resulted in conviction or acquittal. U.S.C.A. Const.Amend. 5. | Does double Jeopardy Clause protect against both multiple punishments and successive prosecutions for same offense? | 015962.docx | LEGALEASE-00166319-LEGALEASE-00166320 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 7205 | State v. Gallegos, 149 N.M. 704 | 135H+5.1 | The double jeopardy clause of both the federal and state constitutions affords three levels of protection to a criminal defendant. ""It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."" Swafford v. State, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Defendant has been convicted three times of violating the same conspiracy statute, and therefore this is a multiple punishment case. | The double jeopardy clause of the federal and New Mexico constitutions affords three levels of protection to a criminal defendant: it protects against a second prosecution for the same offense after acquittal, it protects against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's NMSA Const. Art. 2, S 15. | How is a criminal defendant protected by double jeopardy clause? | 015992.docx | LEGALEASE-00166347-LEGALEASE-00166348 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 7206 | DePuy Synthes Sales v. Globus Med., 259 F. Supp. 3d 225 | 13+27(1) | The courts agree that dismissals under the gist of the action doctrine should take care not to preclude a party's right to plead claims in the alternative, USG Ins. Services, Inc. v. Bacon, No. 16-01024, 2016 WL 6901332, at (W.D. Pa. Nov. 22, 2016). | Under Pennsylvania law, dismissal under gist of the action doctrine should take care not to preclude party's right to plead claims in alternative. | Should dismissal under gist of the action doctrine take care not to preclude party's right to plead claims in alternative? | Action - Memo 949 - C _1nPkBPfPLSrwKTvsb2kb6Vf6YGgTm1M_g.docx | ROSS-000000027 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 7207 | JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II, 508 S.W.3d 391 | 272+463 | We disagree. The Texas Supreme Court has rejected a formulation of the economic loss rule that "says you can never recover economic damages for a tort claim." Sharyland Water Supply Corp. v. City of Alton, 354 S.W.3d 407, 418 (Tex.2011). In determining whether the plaintiff may recover on a tort theory, it is instructive to examine the nature of the plaintiff's loss. DeLanney, 809 S.W.2d at 494. When the only loss or damage is to the subject matter of the contract, the plaintiff's claim will only sound in contract. Id. In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. See Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."). In other words, the economic loss rule precludes recovery of economic losses in negligence when the loss is the subject matter of a contract between the parties. Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 285 (Tex.App."Houston [14th Dist.] 2000, no pet.). | In operation, the "economic loss" rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence; in other words, the economic loss rule precludes recovery of economic losses in negligence when the loss is the subject matter of a contract between the parties. | "When the only loss or damage is to the subject matter of the contract, is the plaintiff's action ordinarily on the contract?" | Action - Memo 957 - C _1ef4gSTAzhl3V0AzSh4P_Px3wgyZMrT1j.docx | ROSS-000000041-ROSS-000000042 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7208 | Stewart v. Screen Gems-EMI Music, 81 F. Supp. 3d 938 | 13+27(1) | Every contract contains an implied-in-law covenant of good faith and fair dealing. Foley v. Interactive Data Corp., 47 Cal.3d 654, 683"84, 254 Cal.Rptr. 211, 765 P.2d 373, (1988). "Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1393, 272 Cal.Rptr. 387 (1990) (citations, quotations, and alterations omitted). "The precise nature and extent of the duty imposed will depend on the contractual purposes." Id. (citation, quotation marks, and alterations omitted). In addition, actions for breach of the implied covenant are generally limited to contract damages. Foley, 47 Cal.3d at 683"84, 254 Cal.Rptr. 211, 765 P.2d 373 (holding that compensation for breach of the covenant of good faith and fair dealing, in all contexts outside of insurance contracts, "has almost always been limited to contract rather than tort remedies"). | Under California law, actions for breach of the implied covenant of good faith and fair dealing are generally limited to contract damages. | Are actions for breach of the implied covenant of good faith and fair dealing generally limited to contract damages? | Action - Memo 968 - C _1f-zim3ndCrB416ZavO4__kLb1rxcvMUP.docx | ROSS-000000061-ROSS-000000062 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 7209 | Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080 | 217+3541 | An insurance company that, for example, slandered or assaulted an insured in the course of a claims dispute would not be immune from tort liability. Many jurisdictions that disallow bad faith torts still allow other types of torts arising from the mishandling of claims. These torts may include many forms of fraud, invasion of privacy, intentional or negligent infliction of emotional distress, negligence, and conspiracy. See Couch on Insurance, supra note 6, at " 204:7. Although we reject the broad claim of bad faith as a viable tort, a cause of action that could be considered a tort independent of contract performance is a viable claim, even in the insurance context. As has been said, the injury to the plaintiff must be "an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." Tate v. Aetna Cas. & Sur. Co., 149 Ga.App. 123, 124, 253 S.E.2d 775, 777 (1979) (internal citation omitted). | A cause of action that could be considered a tort independent of contract performance is a viable claim in the insurance context, if the injury to the insured is an independent injury over and above the mere disappointment of the insured's hope to receive his contracted-for benefit. | Is a cause of action that could be considered a tort independent of contract performance a viable claim in the insurance context? | Action - Memo 984 - C _1lP6reNqSOO78UFDj3hEsAw3N0Nd8wGOB.docx | ROSS-000000092-ROSS-000000093 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7210 | In re CRIIMI MAE, 251 B.R. 796 | 349A+10 | The court must consider the whole of the contract in determining whether it expresses such an unambiguous intent within its four corners. Kass v. Kass, 91 N.Y.2d 554, 566"567, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998) (entire document reveals parties' object and purpose); Williams Press, supra, 37 N.Y.2d 434, 440, 373 N.Y.S.2d 72, 335 N.E.2d 299 (entire agreement must be considered); Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 347, 126 N.E.2d 271 (1955) (same). | While unequivocal statement of parties' intent that transaction be treated as absolute conveyance of securities with promise to repurchase, rather than as secured loan, was not vitiated or made equivocal by protective provision that dealt with parties' rights should the transaction be deemed a loan, neither was this statement of intent controlling in determining nature of transaction under New York law; rather, court had to consider contract as whole, to determine whether it expressed such an unambiguous intent within its four corners. | "Does a court have to consider a contract as whole, to determine whether it expressed such an unambiguous intent within its four corners?" | Secured Transactions - Memo 111 - C - DHA.docx | LEGALEASE-00056454-LEGALEASE-00056455 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 7211 | In re Eagle Enterprises, 237 B.R. 269 | 349A+10 | Pennsylvania law expressly provides that a "lease" transaction in which the "lessee" cannot terminate the "lease" during its term but may thereafter become the owner of the "leased" goods for no additional or nominal addition consideration does not create a lease, but rather creates a security interest. See 13 Pa.C.S.A. " 1201. Under Pennsylvania law, the type of security interest created by the contracts between appellant and the debtors was a purchase money security interest. See 13 Pa.C.S.A. " 9107. The transaction falls into none of the exceptions to the general rule that a financing statement must be filed to perfect all security interests. See 13 Pa.C.S.A. " 9302(a). | Under Pennsylvania law, "lease" transaction in which "lessee" cannot terminate "lease" during its term, but may thereafter become owner of "leased" goods for no additional or nominal additional consideration, does not create lease, but rather a security interest. 13 Pa.C.S.A. S 1201. | Is lease a transaction in which a lessee cannot terminate a lease during its term? | 042659.docx | LEGALEASE-00166965-LEGALEASE-00166966 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 7212 | In re Lunan Family Restaurants, 194 B.R. 429 | 349A+10 | Labeling an agreement a "lease" does not make it one. Whether a "lease" is bona fide or merely a financing agreement depends upon the circumstances of each case.The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a "lease." | Distinction between true lease and financing transaction is based upon economic substance of transaction and not, for example, upon locus of title, form of transaction or fact that transaction is denominated as "lease." | Is the distinction between a true lease and financing transaction based upon economic substance of transaction? | 042671.docx | LEGALEASE-00167003-LEGALEASE-00167004 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 7213 | S.C. Rentals v. Arthur, 187 B.R. 502 | 349A+10 | The intent of the parties governs the determination of whether a putative lease represents a security agreement under South Carolina law. S.C.Code Ann. " 36"1"201(37) (Law.Co-op.1976).2 Barnhill held that under section 36"1"201(37) of the South Carolina Uniform Commercial Code, "[t]he parties' characterization of the agreement is not controlling, the court should instead apply an objective standard to the facts of each case to determine "the true relationships and economic realities created by the agreement." " | Intent of parties governs determination of whether putative consumer lease represents security agreement under South Carolina law. | Does intent of parties govern determination of whether a putative consumer lease represents a security agreement? | Secured Transactions - Memo 138 - C - CK_68741.docx | ROSS-003279582 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7214 | LMV Leasing v. Conlin, 805 P.2d 189 | 349A+10 | In determining whether the undisputed facts of a case entitle the movant to judgment as a matter of law, this court gives no deference to the trial court's conclusions of law, which are reviewed for correctness. Blue Cross & Blue Shield v. State, 779 P.2d 634, 636 (Utah 1989); see also Bonham v. Morgan, 788 P.2d 497, 499 (Utah 1989) (summary judgment is, by definition, a conclusion of law that is accorded no deference by appellate courts); Daniels v. Deseret Fed. Sav. & Loan Ass'n, 771 P.2d 1100 (Utah Ct.App.1989).Likewise, the interpretation of an unambiguous contract is a question of law which does not require any particular deference to the trial court's interpretation of the contract. Village Inn Apartments v. State Farm Fire and Casualty Co., 790 P.2d 581, 582 (Utah Ct.App.1990). We similarly view the determination of whether an agreement is a lease or a secured sales agreement as a question of law when our analysis is based upon the language of the agreement itself and not upon extrinsic evidence. Kimball v. Campbell, 699 P.2d 714, 716 (Utah 1985). | Determination of whether agreement is lease or secured sales agreement is question of law when analysis is based upon a language of agreement itself and not upon extrinsic evidence. | On what is the determination of whether an agreement is a lease or secured sales agreement is a question of law when analysis based? | 042720.docx | LEGALEASE-00166737-LEGALEASE-00166738 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7215 | In re Taylor, 209 B.R. 482 | 349A+10 | In any analysis under " 1"201(37), the intent of the parties is no longer the primary consideration. Rather, the focus is on the "economic realities" of the transaction. Meeks at 4; In re Lerch, 147 B.R. 455, 460 (Bankr.C.D.Ill.1992); William D. Hawkland et al, Article 9: Secured Transactions; Sales of Accounts, Contract Rights and Chattel Paper " 9"102:04 (1996). Under this approach, the lease will be construed as a security interest as a matter of law if the debtor cannot terminate the lease and one of the enumerated requirements is satisfied. Lerch at 460. If the Court determines that the transaction is not a disguised security agreement per se, it must then look at the specific facts of the case to determine whether the "economics of the transaction" suggest such a result. | Under Illinois statute governing determination of whether transaction creates lease or security interest, lease will be construed as security interest as matter of law if debtor cannot terminate lease and one of the enumerated requirements is satisfied. S.H.A. 810 ILCS 5/1-201(37). | Will a lease be construed as a security interest as matter of law if a debtor cannot terminate a lease and one of the enumerated requirements is satisfied? | 042730.docx | LEGALEASE-00166749-LEGALEASE-00166750 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7216 | In re Double G Trucking of the Arklatex, 432 B.R. 789 | 349A+10 | The question of whether the lessor retained a meaningful residual interest may be determined by examining the specific circumstances surrounding two elements: an option to purchase for nominal or no consideration and any provision for the lessee's acquisition of equity in the goods. Addison v. Burnett, 41 Cal.App.4th 1288, 49 Cal.Rptr.2d 132 (1996)(quoting In re Zaleha, 159 B.R. 581, 585 (Bankr.D.Idaho 1993) and citing In re Bumgardner, 183 B.R. 224, 228 (Bankr.D.Idaho 1995)). In the instant case, the contract specifically denies the Debtor-in-possession an option to purchase. Thus, only the second element is implicated. The fact that a lessee has acquired an equity in the property is important in proving a disguised sale because it "suggests the lessor did not expect the return of the leased goods." In re Zaleha, 159 B.R. at 585. | That a lessee has acquired equity in leased property is important in proving that a transaction is a disguised sale, rather than true lease, since it suggests that the lessor did not expect the return of the leased goods. | Is that a lessee has acquired equity in a leased property important in proving that a transaction is a disguised sale? | 042847.docx | LEGALEASE-00166567-LEGALEASE-00166568 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 7217 | In re APB Online, 259 B.R. 812 | 349A+10 | The first test compares the option price, not to the actual fair market value at the time the option is exercised, but to what the parties thought the fair market value would be on the exercise date when they entered into the lease.6 Orix Credit Alliance, Inc. v. Pappas, 946 F.2d at 1262; In re Marhoefer Packing Co., 674 F.2d at 1144"45. A lease stating that the lessee may purchase the equipment at the fair market value, determined at the time that the option is exercised, gives rise to an inference that the option price is not nominal. Jahn v. M.W. Kellogg Co. (In re Celeryvale Transp., Inc.), 822 F.2d 16, 18 (6th Cir.1987); In re Edison Bros. Stores, Inc., 207 B.R. at 810; In re The Answer"The Elegant Large Size Discounter, Inc., 115 B.R. 465, 468 (Bankr.S.D.N.Y.1990). | Under Connecticut law, lease stating that lessee may purchase leased equipment at fair market value, determined at time that the option is exercised, gives rise to inference that option price is not nominal; however, this inference may be rebutted, for purpose of establishing that lease is not in fact "lease" but disguised "security agreement," by proof that parties expected fair market value at end of lease term to be negligible. C.G.S.A. S 42a-1-201(37). | What gives rise to an inference that an option price is not nominal? | 042888.docx | LEGALEASE-00167101-LEGALEASE-00167102 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 7218 | State v. City of Hudson, 231 Minn. 127 | 371+2311 | "Exemption" of public property from taxation involves an exercise of the state's governmental power with respect to its internal economy. What is denominated an Exemption from taxation of public property used for public purposes is in fact nothing more than a declaration of Immunity therefrom which would exist in the absence of a provision for exemption. Exemption from taxation of privately owned property is a public grant in the nature of a favor justifiable upon grounds of public policy. Immunity from taxation is an attribute of sovereignty, and, because such is its nature, it is presumed that the sovereign would not tax itself. As held in Foster v. City of Duluth, 120 Minn. 484, 140 N.W. 129, 48 L.R.A.,N.S., 707, there is a clear distinction between Exemption and Immunity, in that Exemption from taxation involves the supposition that the property so exempted otherwise would be subject to taxation, and Immunity from taxation involves the thought that, absent a constitutional or statutory provision for exemption, the property would not be subject to taxation because of its public nature. | Exemption of public property from taxation involves an exercise of the state's governmental power with respect to its internal economy. | Does the exemption of public property from taxation involve an exercise of the state's governmental power with respect to its internal economy? | 046531.docx | LEGALEASE-00166763-LEGALEASE-00166764 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7219 | Brown v. Bd. of Ed., Whitesboro Cent. Sch. Dist., 110 Misc. 2d 164 | 371+2016 | This Court cannot agree with the contention of the plaintiffs. The State Legislature may delegate its taxing power provided such delegation specifies the types of taxes which may be imposed thereunder and provide for their review. Education Law, Section 2023 complies with the constitutional mandate of Article XVI, Section 1. | State legislature may delegate its taxing power, provided such delegation specifies the types of taxes which may be imposed thereunder and provide for their review. Education Law S 2023; Const. Art. 16, S 1. | Should the state legislature delegating its taxing power specify the types of taxes which may be imposed thereunder and provide for their review? | 046588.docx | LEGALEASE-00166617-LEGALEASE-00166618 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 7220 | Dostal's Inc. v. Wright, 129 Vt. 322 | 371+2016 | It is certainly the law that delegation of authority from the legislature to the commissioner of taxes can validly take place only when associated with fixed limits on its exercise. The setting of a primary standard by the legislature is an essential prerequisite to the exercise of regulatory authority by an administrative body or officer. State v. Auclair, 110 Vt. 147, 163, 4 A.2d 107. A review of this area of the tax law is therefore in order. | Delegation of authority from legislature to commissioner of taxes can validly take place only when associated with fixed limits on its exercise. | Can the delegation of authority from legislature to commissioner of taxes validly take place when associated with fixed limits on its exercise? | 046608.docx | LEGALEASE-00166693-LEGALEASE-00166694 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7221 | State v. Houston & T.C. Ry. Co., 209 S.W. 820 | 371+2016 | In the construction of any grant of taxing power to any county or district by the Legislature, the rule is that it should be construed with strictness, the presumption being that the Legislature has granted in clear terms all it intended to grant. | The grant of taxing power to any county or district by the Legislature should be construed with strictness, the presumption being that the Legislature has granted in clear terms all it intended to grant. | Should the grant of taxing power to any county or district by the Legislature be construed with strictness under the presumption that the Legislature has granted in clear terms all it intended to grant? | Taxation - Memo 1372 - C - SCG_68659.docx | ROSS-003292006 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |
| 7222 | Bank of Am., N.A. v. Diamond Fin., 88 Mass. App. Ct. 564 | 366+1 | In addition, "[t]he court must also examine the actions of the subrogee." Id. at 331, 701 N.E.2d 331. "The subrogee's behavior is an important consideration that the court must balance in its equitable analysis of the interests of both mortgages." Id. at 332, 701 N.E.2d 331. However, the subrogee's negligence or lack of diligence does not bar recovery and is only a material consideration when the intervening lienholder has been prejudiced. See ibid. | In determining whether equitable subrogation applied, the subrogee's behavior is an important consideration that the court must balance in its equitable analysis of the interests. | Is a subrogee's behavior an important consideration that the court must balance in its equitable analysis of interests in determining whether equitable subrogation applies? | 07791.docx | LEGALEASE-00081908-LEGALEASE-00081909 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7223 | Day Cruises Mar., L.L.C v. Christus Spohn Health Sys., 267 S.W.3d 42 | 366+1 | Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." First Nat'l Bank of Houston v. Ackerman, 70 Tex. 315, 8 S.W. 45, 47 (1888); see also Murray v. Cadle Co., 257 S.W.3d 291, 299 (Tex.App.-Dallas 2008, no pet. h.). Equitable subrogation, unlike contractual subrogation, "does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007).The rationale for this rule is that the insured would otherwise recover twice, a result that "the law refuses to sanction." Ortiz v. Great S. Fire & Cas. Ins. Co., 587 S.W.2d 818, 820 (Tex.Civ.App.-Amarillo 1979), rev'd on other grounds, 597 S.W.2d 342 (Tex.1980). The burden is on the party claiming equitable subrogation to establish he is entitled to it. Monk v. Dallas Brake & Clutch Serv. Co., 697 S.W.2d 780, 782 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). | Equitable subrogation, unlike contractual subrogation, does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | Does equitable subrogation depend on a contract? | 05104.docx | LEGALEASE-00083751-LEGALEASE-00083752 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7224 | Wal-Mart Stores v. Blackford, 264 Ga. 612 | 249+19 | In addition to the requirements that the criminal prosecution be carried on maliciously and without probable cause, a malicious prosecution plaintiff must also prove damage as an element of the tort. And while an innocent person prosecuted with malice and without probable cause has suffered damage for which the tort provides redress, conversely, a person who has been arrested for a crime which he committed has suffered no harm. Thus, although evidence of actual guilt is irrelevant in determining the existence of probable cause, such evidence is admissible in defense of the action to show that the plaintiff, who is in fact guilty, has suffered no damage as a result of the arrest. Accordingly, we hold that the question certified by the Eleventh Circuit is to be answered as follows: In a suit alleging malicious prosecution that was dismissed by the court without trial, evidence of guilt in fact of the accused is admissible as a defense to the damage element of the tort and, if so proved, is a bar to recovery. | In suit alleging malicious prosecution that was dismissed by court without trial, evidence of guilt in fact of accused is admissible as defense to damage element of tort and, if established, is bar to recovery. O.C.G.A. S 51-7-40. | Is the evidence of guilt or innocence admissible in a malicious prosecution action? | 05061.docx | LEGALEASE-00083755-LEGALEASE-00083756 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7225 | In re Goodman Indus., 21 B.R. 512 | 366+7(1) | The doctrine of subrogation applies when an entity, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter. See 10 Williston on Contracts s 1265, at 844 (3rd ed. 1967); Restatement of Security s 141, Comment a, at 383-84. The Trustee paid Realty's debt to SCC. In equity, where a guarantor is required to pay the obligation of the principal debtor on a note, the guarantor becomes subrogated to the rights of the creditor against the debtor. See Fisk v. Bower, 227 Mass. 315, 319, 116 N.E. 568 (1917); Wall v. Mason, 102 Mass. 313, 316 (1869). | In equity, where a guarantor is required to pay the obligation of the principal debtor on a note, the guarantor becomes subrogated to the rights of the creditor against the debtor. | "Does the guarantor become subrogated to the rights of the creditor against the debtor in equity, where the guarantor is required to pay the obligation of the principal debtor on a note? " | 05629.docx | LEGALEASE-00084282-LEGALEASE-00084283 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 7226 | Fleming v. Barnett Bank of E. Polk Cty., 490 So. 2d 126 | 307A+590.1 | The trial court concluded that it had the inherent authority to dismiss the action for lack of due diligence under Shalabey v. Memorial Hospital of the South Broward Hospital District, 253 So.2d 712 (Fla. 4th DCA 1971). Inherent authority to dismiss an action for lack of due diligence no longer exists. See, American Salvage & Jobbing Co., Inc. v. Salomon, 367 So.2d 716 (Fla. 3d DCA 1979). There is an exception to the extent that it is authorized by Florida Rule of Civil Procedure 1.420(e). However, under that exception the parties are entitled to reasonable notice by the court of its proposed action. Here the trial court did not act on its own motion and the matter was heard upon the defendant's premature motion and notice. The concern which prompted our en banc hearing is the principle that record activity sufficient to preclude dismissal must be an affirmative act that is reasonably calculated to hasten the suit to judgment. Harris v. Winn Dixie Stores, Inc., 378 So.2d 90 (Fla. 1st DCA 1979). A motion to dismiss for failure to prosecute which is premature does not fall within this category, it does not achieve the termination of the litigation and, for purposes of the rule, the premature motion is a nullity. We therefore recede from the statement in Johnson v. Mortgage Investors of Washington, supra, that a prematurely-filed motion to dismiss for lack of prosecution constitutes record activity. Accordingly, we reverse and direct that the case be reinstated. | A prematurely filed motion to dismiss for lack of prosecution does not constitute record activity sufficient to preclude dismissal on that ground; receding from Johnson v. Mortgage Investors of Washington, 410 So.2d 541 (Fla. 2 DCA). | Does a prematurely filed motion to dismiss for lack of prosecution constitute a record activity sufficient to preclude dismissal on that ground? | 11291.docx | LEGALEASE-00094493-LEGALEASE-00094494 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7227 | Trzop v. Hudson, 2015 IL App (1st) 150419 | 307A+561.1 | "A motion to dismiss, pursuant to section 2"619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006); Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). For a section 2"619 dismissal, our standard of review is de novo. Solaia Technology, 221 Ill.2d at 579, 304 Ill.Dec. 369, 852 N.E.2d 825. De novo review means that we will perform the same analysis a trial court would perform. Khan v. BDO Seidman, LLP, 408 Ill.App.3d 564, 578, 350 Ill.Dec. 63, 948 N.E.2d 132 (2011). "Under the de novo standard of review, this court owes no deference to the trial court." People v. Williams, 2013 IL App (1st) 111116, 377 Ill.Dec. 636, 2 N.E.3d 552 (citing Townsend v. Sears, Roebuck & Co., 227 Ill.2d 147, 154, 316 Ill.Dec. 505, 879 N.E.2d 893 (2007)). In ruling on a section 2"619 motion to dismiss, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. Van Meter v. Darien Park District, 207 Ill.2d 359, 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. S.H.A. 735 ILCS 5/2-619. | Will a motion for involuntary dismissal based upon certain defects or defenses admit the sufficiency of the complaint? | 11239.docx | LEGALEASE-00094705-LEGALEASE-00094706 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7228 | Cooper v. MRM Inv. Co., 367 F.3d 493 | 25T+134(1) | 9 U.S.C. " 2 (emphasis added); see also 9 U.S.C. " 1 (excepting some disputes arising out of employment in interstate transportation). Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements. See Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citations omitted); Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Fazio v. Lehman Bros., Inc., 340 F.3d 386, 393"94 (6th Cir.2003). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Garrett v. Hooters"Toledo, 295 F.Supp.2d 774, 779 (N.D.Ohio 2003) (citing Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1014 (6th Cir.2003) (internal citation omitted)). | Generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements under Federal Arbitration Act (FAA). 9 U.S.C.A. S 2. | Do contract law defenses invalidate an arbitration agreement? | Alternative Dispute Resolution - Memo 223 - RK.docx | ROSS-003284514-ROSS-003284515 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7229 | Westwind Acquisition Co. LLC v. Universal Weather & Aviation, 668 F. Supp. 2d 749 | 366+1 | Generally speaking, unjust enrichment requires that a party knowingly obtained a benefit under circumstances which render it inequitable for that party to retain such benefit without paying fair value for it. See Raymond, Colesar, Glaspy & Huss, P.C., v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir.1992). Equitable subrogation allows one who has discharged another's debt to succeed to the rights and position of the satisfied creditor. See Am.Jur.2d Subrogation " 5. Both doctrines are founded in equity and require inequitable or unjust conduct by the party against whom they are being asserted. Raymond, 961 F.2d at 491. The facts of this case do not support either theory's application, as there is no evidence to support the claim that plaintiffs benefitted unjustly or acted inequitably with respect to the conduct underlying this case. Indeed, plaintiffs state, and defendant does not dispute, that plaintiffs paid or were credited for all amounts owed under their contracts with IJM. Thus, far from acting inequitably, plaintiffs have met their obligation to IJM for aircraft fueling and servicing payments. Accordingly, far from being unjustly enriched, plaintiffs paid for what they received. In these circumstances, therefore, allowing quantum meruit recovery against plaintiffs here would effectively force them to pay twice for fuel and services for which they have already paid once. Such a result would plainly be unjust and inequitable as to plaintiffs, given that plaintiffs acted neither inequitably nor unjustly. Accordingly, plaintiffs are entitled to summary judgment on Count 2 of defendant's counterclaim. | Under Texas law, both unjust enrichment and equitable subrogation doctrines are founded in equity and require inequitable or unjust conduct by the party against whom they are being asserted. | Are both unjust enrichment and equitable subrogation doctrines founded in equity and require inequitable or unjust conduct by the party against whom they are being asserted? | 043650.docx | LEGALEASE-00121090-LEGALEASE-00121091 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7230 | Onstad v. Wright, 54 S.W.3d 799 | 93+20 | This situation, however, is different than a complaint about the improper admission of evidence. A motion in limine will not preserve error to the admission of inadmissible evidence. An order on a motion in limine, however, is an action taken by the trial court in the exercise of its control over proceedings before that court. When a trial court issues an order granting such a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same. Noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. Heidelberg v. State, 36 S.W.3d 668, 673 n. 3 (Tex.App."Houston [14th Dist.] 2001, no pet. h.); see Harnett v. State, 38 S.W.3d 650, 655 (Tex.App."Austin 2000, pet. ref'd) (citing Brazzell v. State, 481 S.W.2d 130, 131 (Tex.Crim.App.1972)); see also Weidner, 14 S.W.3d 353; Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ) (holding in civil case trial court may strike a party's pleadings as a sanction for violation of an order in limine if the circumstances warrant). The violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation lie with the trial court. See Brazzell, 481 S.W.2d at 131. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. Lewis v. State, 627 S.W.2d 492, 494 (Tex.App."Houston [1st Dist.] 1981, no pet.). | If its order on a motion in limine has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. | "If its order on a motion in limine has been violated, may the trial court apply the sanctions of contempt or take other appropriate action?" | 032394.docx | LEGALEASE-00122791-LEGALEASE-00122792 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7231 | Loftus v. Primero Mining Corp., 230 F. Supp. 3d 1209 | 221+342 | First, Plaintiffs appear to request that Court to reevaluate the propriety of the SAT's ruling as to whether Primero complied with the transfer pricing rules. The Court declines to do so. "The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Mujica v. Occidental Petroleum Corp., 381 F.Supp.2d 1164, 1171 (C.D. Cal. 2005) (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)); see also Roe v. Unocal, 70 F.Supp.2d 1073, 1076 (C.D. Cal. 1999) ("The act of state doctrine precludes a court of the United States from considering a plaintiff's claims where either the claims or the defenses asserted would require the court to determine that a foreign sovereign's official acts performed in its own territory were invalid."). Thus, where, as here, a Mexican governmental body has already reached a decision as to whether Primero's transfer pricing complied with Mexican law, this Court should not reevaluate the foreign government's decision. See Unocal, 70 F.Supp.2d at 1082 (finding the act of state doctrine applied where the plaintiff's "allegations turn[ed] on the effect of an official act by an authorized representative of a foreign sovereign"); see also Tiangang Sun v. China Petroleum & Chem. Corp. Ltd., No. CV 13-05355 BRO, 2014 WL 11279466, at (C.D. Cal. Apr. 15, 2014) ("The Court will not rule on the legality of an "official act of a foreign sovereign state performed within its own territory." " (quoting W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., 493 U.S. 400, 405"06, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990))). | The act of state doctrine in its traditional formulation precludes courts from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory. | "Does the ""Act of state doctrine"" require acts of foreign sovereigns taken within their own jurisdictions be deemed valid? " | 020280.docx | LEGALEASE-00123619-LEGALEASE-00123621 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7232 | Bailey, Vaught, Robertson & Co. v. Remington Investments, 888 S.W.2d 860 | 83E+347 | Article Three of the Texas Business and Commerce Code sets out the requisites for the negotiability of an instrument. See Tex.Bus. & Com.Code Ann. " 3.104 (Tex.UCC) (Vernon 1968); Hinckley v. Eggers, 587 S.W.2d 448, 450 (Tex.Civ.App."Dallas 1979, writ ref'd n.r.e.). A negotiable instrument, such as a note, is a writing signed by the maker, containing an "unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer." See Tex.Bus. & Com.Code Ann. " 3.104. A variable-rate promissory note with an interest rate that is determined by reference to a bank's published prime rate is a promise to pay a sum certain and, if it meets the other requirements of negotiability, is a negotiable instrument. See Tex.Bus. & Com.Code Ann. " 3.104; Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 797 (Tex.1992). However, the term "bank's published prime rate" includes "only those rates which are public, either known to or readily ascertainable by any interested person." Amberboy, 831 S.W.2d at 797"98. | Even a variable-rate promissory note with interest rate that is determined by reference to bank's published prime rate is promise to pay a "sum certain" which, if it meets other requirements of negotiability, qualifies as negotiable instrument. V.T.C.A., Bus. & C. S 3.104. | Is a note with a variable interest rate tied to the prime rate a negotiable instrument? | 010660.docx | LEGALEASE-00126410-LEGALEASE-00126411 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7233 | Am. Liberty Ins. Co. v. AmSouth Bank, 825 | 366+7(1) | These statutes are broadly written; they transfer to a surety all of the rights and remedies of the creditor that are even incidentally related to the underlying debt. In other words, if a creditor had a right or remedy that is in some concrete way related to the transactions surrounding the underlying debt, which the creditor might have pursued in order to seek reimbursement of indebted funds that are not recovered, a surety that pays the underlying debt would be allowed to pursue that right or remedy in order to seek reimbursement. | Subrogation statutes transfer to a surety all rights and remedies of the creditor that are even incidentally related to the underlying debt paid by the surety; thus, if a creditor had a right or remedy that is in some concrete way related to the transactions surrounding the underlying debt and that the creditor might have pursued in order to seek reimbursement of indebted funds that are not recovered, a surety that pays the underlying debt would be allowed to pursue that right or remedy in order to seek reimbursement. Code 1975, SS 8-3-2, 8-3-11. | Do subrogation statutes transfer to a surety all rights and remedies of the creditor that are even incidentally related to the underlying debt paid by the surety? | Subrogation - Memo # 708 - C - SA.docx | ROSS-003327555-ROSS-003327556 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |
| 7234 | Brandon v. State, 233 Ala. 1 | 79+6 | That the circuit court, criminal division, of Jefferson county may not be embarrassed in the transaction of its business, we deem it proper to observe, that section 6723, subsec. 2, of the Code, creates the office of deputy clerk of the circuit court, to be appointed by the clerk, requires such deputies to take the official oath, "with full power to transact all business of such clerks." The power to appoint is not limited to one, but as many may be appointed as are necessary. Code 1923, " 6723. | Under statute creating office of deputy clerk of circuit court, to be appointed by clerk and requiring such deputies to take official oath with full power to transact all business of clerks, such power to appoint is not limited to one, but as many may be appointed as are necessary. Code 1923, S 6723, subsec. 2. | Do circuit clerks have the power to appoint deputy clerks? | 013377.docx | LEGALEASE-00130185-LEGALEASE-00130186 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 7235 | Wallick v. First State Bank of Farmington, 532 S.W.2d 520 | 307A+720 | It is within the sound discretion of the trial court to grant or refuse a continuance after permitting an amendment to the pleadings during the course of the trial. Simon v. S. S. Kresge Co., 103 S.W.2d 523 (Mo.App.1937) (2). That discretion is neither an absolute nor arbitrary discretion. Missouri Public Service Company v. Argenbright, 457 S.W.2d 777 (Mo.1970). Defendant contends that the amendment rendered obsolete its prior defense and that new defenses would have been asserted had a continuance been granted. ". . . (t)he fact that a defense is rendered obsolete by an amendment is not a ground of prejudice and . . . the real test is whether additional proof or additional witnesses for which a party is not prepared would be required to meet the new allegations . . ." Derboven v. Stockton, 490 S.W.2d 301 (Mo.App.1972) (4). Defendant states that records of the bank and lumber company were necessary to defend this new issue. The bank records were available and testified to by Sebastian. Mr. Jennings and Sebastian were both called as witnesses after the amendment and there is no showing that they were not fully prepared to testify on all facets of the transaction. | It is within the sound discretion of trial court to grant or refuse a continuance after permitting an amendment to pleadings during the course of trial, but such discretion is neither an absolute nor arbitrary discretion. | Is it within the sound discretion of trial court to grant or refuse a continuance after permitting an amendment to pleadings during the course of trial? | Pretrial Procedure - Memo # 4385 - C - DHA.docx | ROSS-003291121-ROSS-003291122 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 7236 | Goehring v. Superior Court (Bernier), 62 Cal. App. 4th 894 | 307A+36.1 | The trial court should be given the opportunity to rule on this issue.A plaintiff is generally entitled to conduct discovery with regard to a jurisdictional issue before a court rules on a motion to quash. (See Mihlon v. Superior Court, supra, 169 Cal.App.3d at p. 711, 215 Cal.Rptr. 442.)The granting of a discovery request "lies in the discretion of the trial court, whose ruling will not be disturbed in the absence of manifest abuse." (Beckman v. Thompson (1992) 4 Cal.App.4th 481, 487, 6 Cal.Rptr.2d 60.) Under the circumstances, the trial court should be provided the opportunity to exercise its discretion to determine whether jurisdictional discovery pertaining to petitioners would be appropriate in this case. | Plaintiff is generally entitled to conduct discovery with regard to jurisdiction issue before court rules on motion to quash. | Is a plaintiff generally entitled to conduct discovery with regard to jurisdiction issue before court rules on motion to quash? | Pretrial Procedure - Memo # 5011 - C - PC.docx | ROSS-003289213-ROSS-003289214 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7237 | Garvin v. Jennerson, 20 Kan. 371 | 378+9(1.5) | It is assigned as error, that the deposition of a material witness on the part of defendant in error was read upon the trial against the objection of plaintiff in error in violation of section 361 of the civil code, which provides, that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." The trial of the case commenced at 9 o'clock A. M. of November 12th 1875; and the deposition was filed in the court at 11 o'clock A. M. of the 11th of November. This assignment of error must be sustained, because the statute requiring at least one day before the day of trial, means one clear day; and both the day on which the deposition was filed and the day of the trial must be excluded. With this construction the deposition ought not to have been read. Dougherty v. Porter, 18 Kas. 206; Walsh, Trustee, v. Boyle, 30 Md. 266; O'Connor v. Towns, 1 Texas, 107. | Under Civ.Code, S 361, providing that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial," one entire day must elapse between the day of filing and the day of trial. To properly compute the time within such statute, both the day of filing and the day of trial should be excluded. | Must every deposition intended to be read in evidence on the trial be filed at least one day before the day of trial? | 032284.docx | LEGALEASE-00139660-LEGALEASE-00139662 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7238 | In re Dissolution of Marriage of Leverock & Hamby, 23 So. 3d 424 | 307A+483 | We find that it was unnecessary for the Pendletons to petition the chancellor to deem the requests for admission admitted. Consequently, the chancellor was in error for denying the request as being untimely filed. According to Mississippi Rule of Civil Procedure 36(a), a "matter is admitted unless, within thirty days after service of the request .. the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Thus, a judge does not have the discretion to deem the matter admitted, because a request is conclusively established upon a party's failure to answer within thirty days, or such time as the judge has determined appropriate. Miss. R. Civ. P. 36(b). The trial court, may, however, permit withdrawal or amendment of the admission. Id. Rule 36 is to be applied as written, but "it is not intended to be applied in Draconian fashion. If the Rule may sometimes seem harsh in its application, the harshness may be ameliorated by the trial court's power to grant amendments or withdrawals of admissions in proper circumstances." DeBlanc v. Stancil, 814 So.2d 796, 801"02 (Miss.2002). The rule was intended to be used as a means to determine which facts are not in dispute, not as a way to avoid adjudication of contested issues. Id. | A judge does not have the discretion to deem a matter admitted, because a request for admissions is conclusively established upon a party's failure to answer within thirty days, or such time as the judge has determined appropriate; the trial court, may, however, permit withdrawal or amendment of the admission. Rules Civ.Proc., Rule 36. | Is an admission conclusive in the action as to the party making it and absent leave of court to amend or withdraw the admission? | 029147.docx | LEGALEASE-00139839-LEGALEASE-00139840 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7239 | Kneeland v. Adm'r, Unemployment Comp. Act, 138 Conn. 630 | 392T+579 | A pension is a "stated allowance or stipend made * * * in consideration of past services or of the surrender of rights or emoluments, to one retired from service." Webster's New International Dictionary (2d Ed.). It is not wages as that word is used in our Unemployment Compensation Act. Wages are there defined as "all remuneration for employment." Cum.Sup.1951, " 1324b. When a man is retired, his employment cases. Anything paid to him on account of his retirement is not remuneration for employment. A pension is, however, closely akin to wages in at least three particulars. It consists of payments made by or provided by an employer. Although it is not paid in direct compensation for services rendered currently, it is paid in consideration of services rendered in the past. Hooker v. Hoey, D.C., 27 F.Supp. 489, 490, affirmed 2 Cir., 107 F.2d 1016. It serves the same purpose as wages to the recipient in that it helps him to meet the expense of living. Price v. Society for Savings, 64 Conn. 362, 366, 30 A. 139. It is a substitute for the wages which the employee has lost by reason of the loss of his job. The payment of a pension, therefore, comes within the plain meaning of the words of the statute. It is a payment made "by way of compensation for loss of wages'. | A "pension" is a stated allowance or stipend made in consideration of past services or of surrender of rights or emoluments to one retired from service, and is not wages as that word is used in Unemployment Compensation Act provision wherein wages are defined as remuneration for employment. Social Security Act, 42 U.S.C.A. S 301 et seq.; Gen.St. 1949, S 7508. | Is a pension a wage? | 022790.docx | LEGALEASE-00140550-LEGALEASE-00140551 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7240 | Micro-Spy v. Small, 9 A.D.3d 122 | 307A+560 | 4 Commencement of an action with a summons and complaint is preferable to commencement with a summons with notice (see Siegel, N.Y. Prac. " 60, at 81"82 [3d ed.] ). If a complaint is inadequate, it may be amended (see CPLR 3025). However, if a summons without a complaint contains an inadequate notice of the nature of the action and the relief demanded, the inadequate notice is grounds to dismiss the action (see Scaringi v. Elizabeth Broome Realty Corp., 191 A.D.2d 223, 594 N.Y.S.2d 242; Drummer v. Valeron Corp., 154 A.D.2d 897, 546 N.Y.S.2d 52). A summons dismissed for failure to comply with the notice requirements of CPLR 305(b) is "jurisdictionally defective" and cannot be amended (Wells v. Mount Sinai Hosp. & Med. Ctr., 196 A.D.2d 749, 602 N.Y.S.2d 45; see Kaplan v. Manoli, 64 N.Y.2d 849, 487 N.Y.S.2d 323, 476 N.E.2d 649; Frerk v. Mercy Hosp., 63 N.Y.2d 635, 479 N.Y.S.2d 519, 468 N.E.2d 701; Wilber Nat. Bank v. F & A Inc., 301 A.D.2d 706, 753 N.Y.S.2d 209). Further, if the plaintiff's summons is dismissed for failure to comply with CPLR 305(b) the six-month extension for commencement of a new action pursuant to CPLR 205(a) is not available (see Parker v. Mack, 61 N.Y.2d 114, 472 N.Y.S.2d 882, 460 N.E.2d 1316; Farkas v. Tarrytown Lbr., 133 A.D.2d 251, 519 N.Y.S.2d 49). | If summons without complaint contains inadequate notice of nature of action and relief demanded, inadequate notice is grounds to dismiss action. McKinney's CPLR 305(b). | "If summons without complaint contains inadequate notice of nature of action and relief demanded, is inadequate notice grounds to dismiss the action?" | 034011.docx | LEGALEASE-00144705-LEGALEASE-00144706 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7241 | Abrain v. Pereira, 336 Mass. 460 | 124+82 | The release and assignment was under seal. It manifested an intention to transfer Perry's interest in the account to his sister. Even if without actual consideration, it became irrevocable upon its delivery to the administrator's attorney, who, we infer, received it for the estate and the assignee, Juliana. See O'Gasapian v. Danielson, 284 Mass. 27, 31-32, 187 N.E. 107, 89 A.L.R. 1159; Geffen v. Paletz, 312 Mass. 48, 52, 43 N.E.2d 133; Restatement: Contracts, " 158(1), (2); Williston, Contracts (Rev. ed.) "" 217, 438A-440, especially at page 1280. See also Sloan v. Breeden, 233 Mass. 418, 419, 124 N.E. 31. Compare Abbruzise v. Sposata, 306 Mass. 151, 153, 27 N.E.2d 722. No subsidiary facts found appear to be inconsistent with the probate judge's ultimate findings (see Colby v. Callahan, 311 Mass. 727, 729, 42 N.E.2d 801) and no such facts would give any basis whatsoever for the conclusion that there was any mutual mistake of fact or of law which would support rescission or reformation of the release or that it was obtained by fraud. The release and assignment having been executed by Perry, he "had the burden of proving facts showing his right to rescind it." Barletta v. New York, New Haven & Hartford Railroad, 297 Mass. 275, 27. | Where savings bank account stood at intestate's death in name of decedent as trustee for his sister, and intestate's brother, who was among the heirs, prepared release and assignment of his interest in account under seal, even though release and assignment were without actual consideration, assignment became irrevocable upon its delivery to administrator's attorney, who received it for estate and sister. | Can assignment of note and mortgage under seal held valid and irrevocable by assignor even without consideration? | 010597.docx | LEGALEASE-00148384-LEGALEASE-00148385 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7242 | Knoll v. Bd. of Regents of Univ. of Nebraska, 258 Neb. 1 | 141E+1195 | Thus, the University could have foreseen various forms of student hazing on its property, even though FIJI failed to disclose the pledge sneak event, including typical fraternity abductions and the consequences that could reasonably be expected to result from such activities.As such, we conclude the University owes a landowner-invitee duty to students to take reasonable steps to protect against foreseeable acts of hazing, including student abduction on the University's property, and the harm that naturally flows therefrom. | State university owes a landowner-invitee duty to students to take reasonable steps to protect against foreseeable acts of hazing, including student abduction on the university's property, and the harm that naturally flows therefrom. | Does a University has a duty to protect students from hazing? | 017039.docx | LEGALEASE-00150260-LEGALEASE-00150261 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7243 | Burckhardt v. Gen. Am. Life Ins. Co., 534 S.W.2d 57 | 302+20 | This appeal emanates from a judgment of the trial court dismissing plaintiff's petition for failure to state a claim for which relief can be had. The trial court's ruling on a motion of this nature is ordinarily confined to the face of the petition and any exhibits referred to and incorporated therein by attaching the exhibits to the petition. McDonough v. Aylward, 500 S.W.2d 721, 722(1) (Mo.1973) Rule 55.33 and Rule 55.14. A party may plead in the alternative or hypothetically, either in one count or in separate counts, and when two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims as he has whether based on legal or equitable grounds or on both. Rule 55.12. | Party may plead in alternative or hypothetically, either in one count or in separate counts, and when two or more statements are made in alternative and one of them if made independently would be sufficient, pleading is not made insufficient by insufficiency of one or more of alternative statements. | "Can a party plead in the alternative or hypothetically, either in one count or in separate counts? " | 023658.docx | LEGALEASE-00150486-LEGALEASE-00150487 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7244 | State v. C.S., 275 Or. App. 126 | 3.77E+13 | By its terms, the menacing statute prohibits "word or conduct" that is intended to place others in fear of "imminent" serious physical injury. Because the victim's subjective state of mind is not a defined element of the offense, the standard is whether a "reasonable person" would have been placed in the requisite state of fear. State v. Anderson, 56 Or.App. 12, 15, 641 P.2d 40 (1982); see also Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report " 95, 96 (July 1970) (" "Physical menace" implies such conduct as would cause fear to a reasonable man. The standard to be applied is an objective one. Obviously empty threats to inflict serious injury are not so harmful as to deserve criminal sanction.") | Under the menacing statute, because the victim's subjective state of mind is not a defined element of the offense, the standard is whether a reasonable person would have been placed in the requisite state of fear. West's Or.Rev. Stat. Ann. S 163.190. | Is the victims subjective state of mind an element of the offense under the menacing statute? | 046732.docx | LEGALEASE-00153515-LEGALEASE-00153516 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7245 | Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 | 172H+1536 | 15 U.S.C. s 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. s 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. See Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979). | Strict technical compliance with the Truth in Lending Act, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does the strict technical compliance with credit terms regardless of actual injury benefit all borrowers? | 013803.docx | LEGALEASE-00155645-LEGALEASE-00155646 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7246 | Kaplan v. Gaskill, 108 Neb. 455 | 413+101 | The next question presented is whether or not the employment was in the usual course of the regular trade, business, profession, occupation or vocation of such employer. The statute provides that the act "shall apply * * * to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer" (Laws 1917, c. 85, " 1), and further provides that the act "shall not be construed to include any person whose employment * * * is not in the usual course of the trade, business, profession or occupation of his employer" (Laws 1917, c. 85, " 4, subd. 3). | The provision of the Workmen's Compensation Act that it shall apply to every employer employing one or more employees in a regular trade, business, profession or vocation of such employer does not contemplate that a person can be engaged in only one regular business but he may be engaged in several. Laws 1917, c. 85, S 1. | "Does the Act apply to employees in the regular trade, business, profession or vocation of an employer?" | 048644.docx | LEGALEASE-00158212-LEGALEASE-00158213 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 7247 | Mansfield v. State, 29 A.3d 569 | 135H+59 | A prosecution commences when jeopardy attaches. See Blondes v. State, 273 Md. 435, 444, 330 A.2d 169, 173 (1975) quoting United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971). Jeopardy, it is well settled, attaches when the defendant has been "put to trial before the trier of the facts, whether the trier be a jury or a judge," and thereby "subjected to the risk of conviction." Serfass v. United States, 420 U.S. 377, 388"392, 95 S.Ct. 1055, 1062 "1065, 43 L.Ed.2d 265, 274"275 (1975). Indeed, that is said to be "the basic test of initial jeopardy." Daff v. State, 317 Md. 678, 688, 566 A.2d 120, 125 (1989), citing Serfass, supra. In Maryland, jeopardy, generally, attaches at a bench trial "when the judge begins to hear or receive evidence." See In re Kevin, 402 Md. 624, 636, 938 A.2d 826, 833 (2008); In re Bennett, 301 Md. 517, 524, 483 A.2d 1242, 1245 (1984); Blondes v. State, 273 Md. 435, 444, 330 A.2d 169, 174 (1975) See also Daff, in which, explicating Serfass, 420 U.S. at 388, 95 S.Ct. at 1062, 43 L.Ed.2d at 274, we said: "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence." 317 Md. at 688, 566 A.2d at 125. | Jeopardy attaches, for purposes of the prohibition on double jeopardy, when the defendant has been put to trial before the trier of the facts, whether the trier be a jury or a judge, and thereby subjected to the risk of conviction. U.S.C.A. Const.Amend. 5. | Will jeopardy attach when the defendant is put to trial before the trier of facts and subjected to the risk of conviction? | 014653.docx | LEGALEASE-00165463-LEGALEASE-00165464 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 7248 | Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080 | 217+3541 | An insurance company that, for example, slandered or assaulted an insured in the course of a claims dispute would not be immune from tort liability. Many jurisdictions that disallow bad faith torts still allow other types of torts arising from the mishandling of claims. These torts may include many forms of fraud, invasion of privacy, intentional or negligent infliction of emotional distress, negligence, and conspiracy. See Couch on Insurance, supra note 6, at " 204:7. Although we reject the broad claim of bad faith as a viable tort, a cause of action that could be considered a tort independent of contract performance is a viable claim, even in the insurance context. As has been said, the injury to the plaintiff must be "an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." Tate v. Aetna Cas. & Sur. Co., 149 Ga.App. 123, 124, 253 S.E.2d 775, 777 (1979) (internal citation omitted). | A cause of action that could be considered a tort independent of contract performance is a viable claim in the insurance context, if the injury to the insured is an independent injury over and above the mere disappointment of the insured's hope to receive his contracted-for benefit. | MEMORANDUM # 9841. QuestionIs a cause of action that could be considered a tort independent of contract performance a viable claim in the insurance context? | 006459.docx | LEGALEASE-00166923-LEGALEASE-00166924 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7249 | Barthelmues v. Ives, 194 Misc. 13 | 21+8 | It has been long since held that the omission of a venue or the statement of an improper venue in an affidavit does not invalidate the oath or render the affidavit a nullity when it is shown by proof aliunde that it was duly administered by a proper officer within the jurisdiction. Fisher v. Bloomberg, 74 App.Div. 368, 77 N.Y.S. 541. And, where an affidavit was actually sworn to before the proper officer, but the officer administering the oath failed to certify the affidavit or to sign his name thereto, such omission does not render the affidavit fatally defective, but it may be corrected nunc pro tunc. Carmody Civil Practice, Vol. 1, Sec. 282, citing Sage v. Stafford, 42 App.Div. 449, 59 N.Y.S. 545; Fawcett v. Vary, 59 N.Y. 597. | The omission of a venue or the statement of an improper venue in an affidavit does not invalidate the oath or render the affidavit a nullity when it is shown by proof aliunde that it was duly administered by a proper officer within the jurisdiction. | Does omission of a venuenor the or the statement of an improper venue is an affidavit render it null? | Affidavits - Memo 55 - _1V0cSei4rJBOi-I3dD947CNoLW2OHAlzw.docx | ROSS-000000207-ROSS-000000208 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 7250 | Rufo v. Simpson, 86 Cal. App. 4th 573 | 307A+3 | On appeal Simpson contends, "Of course, the Plaintiffs were well aware as of the commencement of the trial that Fuhrman would not appear at the trial and that therefore, Simpson would have to rely exclusively on his former testimony at the criminal trial." This contention is contradicted by the trial court's findings. The court found, consistent with the record during the earlier pretrial proceedings, that as late as October 1996 there still existed the possibility Fuhrman would appear voluntarily and testify. A ruling on a pretrial motion in limine is necessarily tentative because subsequent evidentiary developments may change the context. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1174, 36 Cal.Rptr.2d 235, 885 P.2d 1 [in limine ruling is necessarily tentative because trial court retains discretion to make a different ruling as the evidence unfolds]; People v. Morris (1991) 53 Cal.3d 152, 189"190, 279 Cal.Rptr. 720, 807 P.2d 949 [subsequent events in trial may change the context and require a renewed objection].) Ordinarily the opponent of evidence need not object until the evidence is introduced. A pretrial motion in limine is merely an additional protective device for the opponent of the evidence, to prevent the proponent from even mentioning potentially prejudicial evidence to the jury. (Abbett Electric Corp. v. Sullwold (1987) 193 Cal.App.3d 708, 715, 238 Cal.Rptr. 496.) Simpson's argument that the failure to make an earlier motion in limine waives raising the objection later in the trial turns that rule on its head. Simpson appears to rely on a theory of equitable estoppel, but the record here does not support it. As the trial court found, plaintiffs did not mislead Simpson's counsel that they had no objection under Evidence Code section 1292. Simpson's counsel could not reasonably rely on plaintiff's mere failure to make a motion in limine at the early pretrial stage, before it was even determined whether Fuhrman might actually appear in court. Simpson did not suffer any significant | A ruling on a pretrial motion in limine is necessarily tentative because subsequent evidentiary developments may change the context. | Is a ruling on a pretrial motion in limine necessarily tentative because subsequent evidentiary developments may change the context? | Pretrial Procedure - Memo # 303 - C - CRB.docx | ROSS-003282495-ROSS-003282497 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 7251 | Colafranceschi v. Briley, 159 Idaho 31 | 307A+622 | "When considering a 12(b)(6) motion, we look only to the pleadings to determine whether a claim for relief has been stated." Allied Bail Bonds, Inc. v. Cnty. of Kootenai, 151 Idaho 405, 409, 258 P.3d 340, 344 (2011). "A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle [the plaintiff] to relief." " Taylor v. Maile, 142 Idaho 253, 257, 127 P.3d 156, 160 (2005) (quoting Gardner v. Hollifield, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975)). On review, this Court draws all reasonable inferences in favor of the non-moving party. Hoffer, 151 Idaho at 402, 257 P.3d at 1228; see also Allied Bail Bonds, Inc., 151 Idaho at 409, 258 P.3d at 344. | When considering a motion to dismiss for failure to state a claim upon which relief could be granted, the court looks only to the pleadings to determine whether a claim for relief has been stated. Rules Civ.Proc., Rule 12(b)(6). | "When considering a motion to dismiss for failure to state a claim upon which relief could be granted, does the court look only to the pleadings to determine whether a claim for relief has been stated?" | Pretrial Procedure - Memo # 8187 - C - SJ_58762.docx | ROSS-003283040-ROSS-003283041 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 7252 | Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183 | 184+3 | Stone contends that the court of civil appeals incorrectly affirmed the trial court's action in instructing a verdict against Stone in favor of Lipner and Lawyers Title Agency on Stone's cause of action for fraud. The court of civil appeals correctly stated the general rule regarding the elements of actionable fraud: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury. Oilwell Division, United States Steel Corporation v. Fryer, 493 S.W.2d 487 (Tex.1973); Wilson v. Jones, 45 S.W.2d 572 (Tex.Com.App.1932, holding approved). | Actionable fraud requires that material representation was made, that it was false, that when made speaker knew it was false or made it recklessly without any knowledge of truth and as a positive assertion, that speaker made it with intention that it should be acted upon, and that party acted in reliance upon it and thereby suffered injury. | What are the elements of actionable fraud? | Exchange of Property - Memo 12 - RK.docx | ROSS-003283819-ROSS-003283820 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7253 | Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365 | 237+120(2) | Having decided that the lower default standard applies, the court will examine whether plaintiff's evidence satisfies it and thereby precludes summary judgment. Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts on the definition of common law malice for purposes of awarding punitive damages. Sprague, 656 A.2d at 922 (citing Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747"748 (1984)); DiSalle, 544 A.2d at 1369 (same). Common law malice "involves conduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others ... conduct which is malicious, wanton, reckless, willful, or oppressive...." "17 DiSalle, 544 A.2d at 1364 (quoting Restatement (Second) of Torts " 908(2)); see also Sprague, 656 A.2d at 923 (approving jury charge that conduct is sufficiently outrageous if it shows reckless indifference to the "interest of others"). | Under Pennsylvania law, common law "malice" required for recovery of punitive damages in a defamation action involves conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others, meaning conduct which is malicious, wanton, reckless, willful, or oppressive. Restatement (Second) of Torts S 908(2). | What is by common law malice? | Libel and Slander - Memo 74 - RK.docx | ROSS-003284075-ROSS-003284076 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7254 | Ball v. Rao, 48 S.W.3d 332 | 30+3209 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet.) The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App."Houston [14th Dist.] 2000, no pet.); Enserch Corp., 977 S.W.2d at 757. The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court and we, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court, and the court of appeals will not reverse such sanctions absent a clear abuse of discretion. | Is the imposition of sanctions for violations of orders in limine left to the sound discretion of the trial court? | Pretrial Procedure - Memo # 838 - C - VA.docx | ROSS-003285129-ROSS-003285130 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7255 | Tesoro Petroleum Corp. v. Nabors Drilling USA, 106 S.W.3d 118 | 366+35 | A contractual right to indemnity should be determined in the same fashion as other contractual rights-as a matter of law. Fisk, 888 S.W.2d at 815. A liability insurer for an oil well driller or operator does not waive its right to subrogation to its insured's claims against the other party for matters beyond the scope of the indemnity agreement between those parties. See Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 355 (Tex.2000) (a waiver of subrogation by an oil well operator or drilling contractor for liabilities assumed under the contract does not waive the insurer's right to subrogation to enforce the indemnity agreement). The parties to the indemnity agreement must look to their own contract to determine what subrogation rights they may insist that the other party require its insurers to waive. Id. at 356-57. [(Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. See id. at 356. | Where a party to an indemnity contract relating to an oil and gas well is not contractually obligated to enforce a waiver of subrogation, the other party cannot insist that it assert a waiver of subrogation. | "Wherea party to an indemnity contract is not contractually obligated to enforce a waiver of subrogation, can the other party insist that it assert a waiver of subrogation?" | Subrogation - Memo # 1212 - C - SN.docx | ROSS-003285397-ROSS-003285398 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7256 | DeLuna v. Burciaga, 223 Ill. 2d 49 | 307A+561.1 | A motion to dismiss, pursuant to section 2"619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. Borowiec v. Gateway 2000, Inc., 209 Ill.2d 376, 413, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004). Section 2"619 motions present a question of law, and we review rulings thereon de novo. Borowiec, 209 Ill.2d at 413, 283 Ill.Dec. 669, 808 N.E.2d 957. | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. S.H.A. 735 ILCS 5/2-619. | Can a motion to dismiss base upon certain defects or defenses admit the legal sufficiency of all well-pleaded facts? | Pretrial Procedure - Memo # 7673 - C - KG.docx | ROSS-003286478-ROSS-003286479 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 7257 | Epstein v. Chicago Bd. of Educ., 178 Ill. 2d 370 | 307A+561.1 | The "affirmative matter" asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. | "Affirmative matter" asserted by defendant must be apparent on face of complaint or supported by affidavits or certain other evidentiary materials, for purpose of motion for involuntary dismissal on ground that claim asserted against defendant is barred by other "affirmative matter" avoiding legal effect of or defeating the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Should affirmative matter must be apparent on face of complaint or supported by affidavits or other evidentiary materials in order to dismiss a complaint? | Pretrial Procedure - Memo # 7682 - C - VA.docx | ROSS-003286502-ROSS-003286504 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 7258 | Hurd v. Monsanto Co., 908 F. Supp. 604 | 413+1 | In Indiana, two related statutory schemes compensate individuals who suffer work-related harm. First, the WCA provides compensation for personal injury or death by accident arising out of and in the course of employment. I.C. " 22-3-1-1 et seq. (Burns 1992) The second, the ODA, provides compensation for disablement or death by an occupational disease arising out of and in the course of employment. [.C. " 22-3-7-2 (Burns 1992). Although related, the statutes are distinct: whereas the former addresses "personal injur[ies] or death" caused "by accident," " 22-3-2-2, the latter addresses "disablement or death" caused "by an occupational disease." " 22-3-7-2; see generally Buford v. American Telephone & Telegraph, 881 F.2d 432, 433-34 (7th Cir. | Indiana Workmen's Compensation Act provides compensation for personal injury or death by accident arising out of and in course of employment, and Indiana's Occupational Disease Act provides compensation for disablement or death by occupational disease arising out of and in course of employment. West's A.I.C. 22-3-1-1 et seq., 22-3-7-2. | Does the workmen's compensation act provide compensation for personal injury or death by accident arising out of and in the course of employment? | Workers Compensation - Memo #64 ANC.docx | ROSS-003287138-ROSS-003287139 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 7259 | Brand v. Butts, 242 A.D. 149 | 307A+91 | The rationale of depositions taken pursuant to statute is founded in the old chancery practice relating to a bill of discovery, entitling the party, as it has been quaintly expressed, "to sift the conscience of his adversary." 8 R. C. L. 1131. Under the Code of Civil Procedure, parties ordinarily were not subject to examination before trial, and one desiring to examine his adversary was required to prove circumstances justifying such procedure. The practice relative to the taking to testimony by deposition under the Code of Civil Procedure and the Civil Practice Act is entirely dissimilar. In this respect the latter act has wrought a radical change. The intent and purpose of the Civil Practice Act was to simplify the practice and to abolish the innumerable technical requirements of the Code of Civil Procedure and the general rules of practice. This legislation is remedial and should be liberally construed in furtherance of justice and to effectuate its provisions. | Rationale of depositions, taken pursuant to statute, is an old chancery practice relating to bill of discovery, entitling party to sift his adversary's conscience. Civil Practice Act, S 288. | Is the rationale of depositions an old chancery practice relating to a bill of discovery? | Pretrial Procedure - Memo # 4788 - C - BP.docx | ROSS-003287815-ROSS-003287816 | Condensed, Order, SA, Sub | 0.81 | 1 | 1 | 1 | 1 | 1 |
| 7260 | Kala Investments v. Sklar, 538 So. 2d 909 | 366+1 | In our view, the doctrine of equitable subrogation provides the avenue for Kala to seek recompense for the settlement money it paid to the plaintiffs. "Equitable" subrogation is a creature of equity which was developed to afford relief "when one person has satisfied the obligations of another and equity compels that the person discharging the debt stand in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." Eastern National Bank v. Glendale Federal Savings and Loan Association, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987). The policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge. Id. See United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394 (1928). The doctrine is then a part of the universe usually spoken of as being inhabited by only indemnity or contribution. | Policy behind doctrine of equitable subrogation is to prevent unjust enrichment by assuring that person who in equity and good conscience is responsible for debt is ultimately answerable for its discharge. | Is the prevention of unjust enrichment the policy behind the doctrine of equitable subrogation? | Subrogation - Memo 997 - C- CAT.docx | ROSS-003288095-ROSS-003288096 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7261 | Chenango Cty. Nat. Bank & Tr. Co. of Norwich v. Lyon, 190 Misc. 358 | 307A+91 | Great liberality is permitted in the examination of an adverse party before trial. This is particularly so when the party sought to be examined stands in a fiduciary capacity. Oshinsky v. Gumberg, 188 App.Div. 23, 176 N.Y.S. 406; Colonial Trust Co. v. Alexander et al., 251 App.Div. 856, 296 N.Y.S. 918. Plaintiff seeks judicial approval of its acts in relation to which the examination is sought. The defendant Harold S. Lyon claims an interest in the remainder of said trust fund, and the plaintiff seeks to bind him in this action as to its various transactions in the administration of the fund. It is clear that under such circumstances the defendant Harold S. Lyon is entitled to the examination sought. | Great liberality is permitted in the examination of an adverse party before trial particularly when the party sought to be examined stands in a fiduciary capacity. | Is great liberality permitted in the examination of an adverse party before trial particularly when the party sought to be examined stands in a fiduciary capacity? | Pretrial Procedure - Memo # 4492 - C - KG.docx | ROSS-003291749-ROSS-003291750 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7262 | McCormick v. Bd. of Cty. Comm'rs of Shawnee Cty., 272 Kan. 627 | 228+183 | Under K.S.A. 60"212(b)(6), a defendant may move for dismissal for failure to state a claim upon which relief can be granted. Procedurally, such a motion "shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60"256 and amendments thereto." In the absence of an understandable statement by McCormick that Long's actions were outside the scope of her employment, we hold that Long is entitled to dismissal of the state tort law claims under the discretionary function exception to the KTCA. | A defendant may move for dismissal for failure to state a claim upon which relief can be granted; procedurally, such a motion shall be treated as one for summary judgment and disposed of as provided in statute governing summary judgment motions. Rules Civ.Proc., K.S.A. 60-212(b)(6), 60-256. | When can a motion be treated as one for summary judgement? | Pretrial Procedure - Memo # 10795 - C - NS_63662.docx | ROSS-003294254-ROSS-003294255 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 7263 | State v. Fowler, 197 N.C. App. 1 | 135H+1 | "The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gardner, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense." State v. Crocker, 239 N.C. 446, 449, 80 S.E.2d 243, 245 (1954). This principle of double jeopardy, or former jeopardy, "benefits the individual defendants by providing repose; by eliminating unwarranted embarrassment, expense, and anxiety; and by limiting the potential for government harassment." Brunson, 327 N.C. at 249, 393 S.E.2d at 864. "It benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. The objective is to allow the prosecution one complete opportunity to convict a defendant in a fair trial." Id. | The objective the principle of double jeopardy, or former jeopardy, is to allow the prosecution one complete opportunity to convict a defendant in a fair trial. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, S 19. | "The objective the principle of double jeopardy, or former jeopardy, is to allow the prosecution one complete opportunity to convict a defendant in a fair trial?" | Double Jeopardy - Memo 916 - C - SHB_67705.docx | ROSS-003294641-ROSS-003294642 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7264 | Breaker v. U.S., 977 F.Supp.2d 921 | 411+7 | An issue is not ripe for review absent a "showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged [action], and that the injury would be redressed by the relief requested." Wersal v. Sexton, 674 F.3d 1010, 1018 (8th Cir.2012). Before a party can challenge an action by the Forest Service in federal court, it must exhaust administrative remedies. Friends of the Norbeck v. United States Forest Serv., 661 F.3d 969, 974 (8th Cir.2011) (citing 7 U.S.C. " 6912(e) as codifying the judicial doctrine of exhaustion). Special use permit determinations by the Forest Service are reviewable by this Court. See KOLA, Inc. v. United States, 882 F.2d 361, 364 (9th Cir.1989) (noting that "the Regional Forester's decision to issue a special use permit is subject to judicial review where review involves an inquiry into whether the proper factors were considered by the Forestry Service"). | Before a party can challenge an action by the United States Forest Service (USFS) in federal court, it must exhaust administrative remedies. Department of Agriculture Reorganization Act of 1994, S 212(e), 7 U.S.C.A. S 6912(e). | Does a party have to exhaust administrative remedies before it can challenge an action by the United States Forest Service (USFS) in federal court? | Woods and Forests - Memo 3 - KC_62519.docx | ROSS-003296977-ROSS-003296978 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7265 | Burke v. United States, 85 F. Supp. 93 | 34+58(3) | The Courts have adopted, since World War I, the principle that the Act of Congress authorizing National Service Life Insurance should be liberally construed in favor of the insured soldier, and to carry out his intention. See McClure v. U.S., 9 Cir., 95 F.2d 744 and Meisner v. U.S., D.C., 295 F. 866. In the recent cases decided on the question of construing the term "loco parentis' the same liberal attitude is manifest. In Zazove v. U.S., 7 Cir., 156 F.2d 24, the soldier did not enter the household of the person claiming in loco parentis until after he had reached twenty-one years of age. The Circuit Court, nevertheless, found claimant to be in loco parentis, saying 156 F.2d at page 26: "Did Congress use the words in loco parentis as descriptive words, or did it use the words with the common-law limitation upon them, namely, that the relationship could not exist unless the insured were a minor? We find no limitation in the words of Congress. We think they were used as descriptive words and were not to be restricted to the "stick in the bark" legal connotations usually attached at common law.' | Act authorizing national service life insurance should be liberally construed in favor of insured soldier and to carry out his intention. National Service Life Insurance Act of 1940, S 601 et seq., 38 U.S.C.A. S 801 et seq. | Should the act authorizing National Service Life Insurance be liberally construed in favor of insured soldiers and to carry out his intention? | Armed Services - Memo 299 - RK_57608.docx | ROSS-003297006-ROSS-003297007 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7266 | State Bar of California v. Statile, 168 Cal. App. 4th 650 | 366+1 | "Subrogation, a legal fiction, is broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer. Stated another way, it is a substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities." (73 Am.Jur.2d (2001) Subrogation, " 1, pp. 541"542, fns. omitted.) " "Statutory subrogation," as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction." (Id. at pp. 544"545, 216 Cal.Rptr. 367, 702 P.2d 525, fns. omitted.) " "The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source." " (Board of Administration v. Glover (1983) 34 Cal.3d 906, 915, 196 Cal.Rptr. 330, 671 P.2d 834, quoting Ventura County Employees' Retirement Association v. Pope (1978) 87 Cal.App.3d 938, 952, 151 Cal.Rptr. 695.) "The "true nature of subrogation" is that " "it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. | Statutory subrogation arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction. | Does statutory subrogation arise by an act of the legislature that vests a right of subrogation with a party or category of parties? | Subrogation - Memo 281 - KG.docx | ROSS-003297147-ROSS-003297149 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7267 | Stephens v. Stovall & Co., 184 Ga. App. 78 | 307A+674 | OCGA " 9-2-60(b) provides for automatic dismissal when no written order is taken for a period of five years. This is mandatory and dismissal is automatic and by operation of law. Any further action other than dismissal is a mere nullity. Bainbridge & Assoc. v. Johnson, 183 Ga.App. 784, 360 S.E.2d 273 (1987). | Statute providing for automatic dismissal when no written order is taken for a period of five years is mandatory and dismissal is automatic and by operation of law, and any further action other than dismissal is a mere nullity. O.C.G.A. S 9-2-60(b). | Is a statute providing for automatic dismissal when no written order is taken for a period of five years mandatory and dismissal is automatic? | Pretrial Procedure - Memo # 11015 - C - TM_64132.docx | ROSS-003297248-ROSS-003297249 | Condensed, SA | 0.19 | 0 | 1 | 0 | 1 | |
| 7268 | Mahler v. Szucs, 135 Wash. 2d 398 | 366+1 | All of the parties have argued subrogation principles resolve the issues in these cases. Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. Ronald C. Horn, Subrogation in Insurance Theory and Practice 3 (1964). Two law review commentators have referred to this allocation rationale as stemming from "the moralistic basis of tort law as it has developed in our system." Spencer L. Kimball & Don A. Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841, 841 1962). "The general purpose of subrogation is to facilitate placement of the financial consequences of loss on the party primarily responsible in law for such loss." Horn, supra, at 24. | "Subrogation" is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility; it seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. | "Does the equitable doctrine of subrogation seek to impose responsibility for a loss on a party who, in equity and good conscience, should bear it? " | Subrogation - Memo 217 - RM C.docx | ROSS-003297790-ROSS-003297791 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 7269 | Soto v. Sea-Rd. Int'l, 942 S.W.2d 67 | 50+1 | The basic elements of bailment are: (1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. Yoakum Grain, Inc. v. Energy Indus., Inc., 511 S.W.2d 95, 98 (Tex.Civ.App."Corpus Christi 1974, no writ); 8A Tex. Jur.3d Bailments " 3 (1995). Soto contests only the third element requiring the formation of a contract. | Basic elements of bailment are: delivery of personal property by one person to another in trust for specific purpose; acceptance of such delivery; express or implied contract that the trust will be carried out; and understanding under terms of contract that property will be returned to transferor or dealt with as transferor directs. | What are the elements of a bailment? | Bailment - Memo 3 - JS.docx | ROSS-003299585-ROSS-003299586 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 7270 | Howard Univ. v. Roberts-Williams, 37 A.3d 896 | 113+3 | With respect to contract issues relating to the jury instructions, we are mindful of the following principles. " "[C]ourts should not invade, and only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning." " Allworth v. Howard Univ., 890 A.2d 194, 202 (D.C.2006) (quoting Brown v. George Washington Univ., 802 A.2d 382, 385 (D.C.2002)). However, " "[t]he principle of academic freedom does not preclude [the court] from vindicating the contractual rights of a plaintiff who has been denied tenure in breach of an employment contract." " Id. (second alteration in original). "[I]f the meaning of a contract is so clear that reasonable [persons] could reach but one conclusion or no extrinsic evidence is necessary to determine the contract's meaning, then contract interpretation is a matter for the court." Howard Univ. v. Best, 484 A.2d 958, 966"67 (D.C.1984) (Best I ). But, "[t]he objective view of contract interpretation adopted in this jurisdiction requires, in the context of University employment contracts, that the custom and practice of the University be taken into account in determining what were the reasonable expectations of persons in the position of the contracting parties." Brown, supra, 802 A.2d at 386 (internal quotation marks omitted). In that regard, university contracts "are to be read [ ] by reference to the norms of conduct and expectations founded upon them in a particular manner, unlike, to some degree, contracts made in the ordinary course of doing business." Id. (internal quotation marks omitted). "In order for a custom and practice to be binding on the parties to a transaction, it must be proved that the custom is definite, uniform, and well known, and it must be established by clear and satisfactory evidence." Howard Univ. v. Best, 547 A.2d 144, 151 (D.C.1988) (Best II ) | In order for a custom and practice to be binding on the parties to a transaction, it must be proved that the custom is definite, uniform, and well known, and it must be established by clear and satisfactory evidence. | What must be proved in order for a custom and practice to be binding on the parties to a transaction? | Customs & Usage - Memo 11 - JS.docx | ROSS-003299795-ROSS-003299796 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 7271 | In re Flamingo 55, 378 B.R. 893 | 366+1 | In short, subrogation is essentially an equitable assignment of a claim, made without regard to whether the claim assigned has actually been discharged at law. It "does not spring from contract although it may be confirmed or qualified by contract. [I]t is a rule that the law adopts to compel the eventual satisfaction of an obligation by the one who ought to pay it." Restatement (Third) of Suretyship and Guar. " 27, cmt. a (1996). | Subrogation is essentially an equitable assignment of a claim, made without regard to whether the claim assigned has actually been discharged at law. | "Is subrogation essentially an equitable assignment of a claim, made without regard to whether the claim assigned has actually been discharged at law?" | Subrogation - Memo # 532 - C - NO.docx | ROSS-003308672-ROSS-003308673 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7272 | In re Bill Heard Enterprises, 423 B.R. 771 | 366+1 | The overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment. If this goal is not accomplished, the doctrine should not be applied. See, e.g., Casstevens v. Smith, 269 S.W.3d 222, 228 (Tex.App.2008) (refusing to apply equitable subrogation where it would not prevent unjust enrichment). The rights asserted by Alphera also must be weighed against the competing equities in this case and viewed from a perspective of what Alphera as the entity seeking subrogation could have done differently in this case. " "Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities." " In re Hutchins, 400 B.R. 403, 414 (Bankr.D.Vt.2009) (quoting Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co., 132 Vt. 341, 318 A.2d 659, 661"62 (1974)). | Overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment; if this goal is not accomplished, the doctrine should not be applied. | "Should the overall fairness of applying equitable subrogation be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment?" | Subrogation - Memo 290 - RM C.docx | ROSS-003309081-ROSS-003309082 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7273 | Presswood v. Welsh, 271 Ga. App. 459 | 307A+3 | Whatever the parties may speculate as to the effect of the passenger's testimony as to her suit against them, two principles rule here. First, "[t]he interest of a witness in the result or outcome of a case may always be considered by the jury in passing upon the credibility of the witness." (Citation omitted.) Ayers v. Nichols, 136 Ga.App. 532(1), 221 S.E.2d 835 (1975); see also OCGA " 24-4-4. Second, when disputed evidence is admissible for any reason, a trial court does not abuse its discretion in denying a motion in limine and admitting it. Hand v. Pettitt, 258 Ga.App. 170, 173(1)(b), 573 S.E.2d 421 (2002) (no error in denying motion in limine regarding parties' prior and subsequent difficulties concerning use of road). | When disputed evidence is admissible for any reason, a trial court does not abuse its discretion in denying a motion in limine and admitting it. | "When disputed evidence is admissible for any reason, does a trial court abuse its discretion in denying a motion in limine and admitting it?" | Pretrial Procedure - Memo # 18 - C - KA.docx | ROSS-003311599-ROSS-003311600 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7274 | Doe v. Exxon Mobil Corp., 69 F. Supp. 3d 75 | 221+342 | The type of official act that implicates the act of state doctrine is that which is "by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity." McKesson, 672 F.3d at 1073. An illustrative list of such public acts includes "pass[ing] a law, issu[ing] an edict or decree, or engag[ing] in formal governmental action taking [plaintiff's] property." Id. at 1074. In the context of military operations, the Supreme Court has invoked the act of state doctrine in cases where challenged actions by foreign militaries were taken pursuant to official orders. See Oetjen v. Cent. Leather Co., 246 U.S. 297, 300"01, 303"04, 38 S.Ct. 309, 62 L.Ed. 726 (1918) (stating that the actions of a "duly commissioned military commander" were "not subject to reexamination and modification by the courts of this country" in a suit to declare the commander's seizure of plaintiff's property invalid); Underhill v. Hernandez, 168 U.S. 250, 251, 253"54, 18 S.Ct. 83, 42 L.Ed. 456 (1897) (holding suit for damages arising from plaintiffs military detention not subject to adjudication because the acts were those of a military commander representing a foreign government and were, therefore, acts of the government itself). | Type of official act that implicates the act of state doctrine is that which is by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity. | Is the type of official act that implicates the act of state doctrine that which is by its nature distinctly sovereign? | International Law - Memo # 103 - C - LK.docx | ROSS-003321989-ROSS-003321991 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7275 | Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A., 388 P.3d 226 | 307A+690 | We have stated that "[t]he duty rests upon the plaintiff to use diligence and to expedite his case to a final determination." Moore v. Cherry, 90 Nev. 390, 395, 528 P.2d 1018, 1021 (1974). However, "[b]ecause the law favors trial on the merits, dismissal with prejudice may not be warranted where delay is justified by the circumstances of the case." Home Sav. Ass'n v. Aetna Cas. & Sur. Co., 109 Nev. 558, 563, 854 P.2d 851, 854 (1993). | Because the law favors trial on the merits, dismissal with prejudice may not be warranted where delay in bringing the case to trial is justified by the circumstances of the case. Nev. R. Civ. P. 41(e). | "Because the law favors trial on the merits, can dismissal with prejudice not be warranted where delay in bringing the case to trial is justified by the circumstances of the case? " | Pretrial Procedure - Memo # 10450 - C - KG_62598.docx | ROSS-003322571-ROSS-003322572 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 7276 | Explore Info. Servs. v. Court Info. Sys., 636 N.W.2d 50 | 307A+2 | Because it was ruling on an application to adjudicate law points, the district court was limited to the uncontroverted facts found in the pleadings. See Reynolds v. Nowotny, 213 N.W.2d 648, 651 (Iowa 1973). The court could not consider the facts Explore presented in its rule 179(b) motion, because it could not have considered them in conjunction with its initial ruling on Explore's rule 116 application. A rule 179(b) motion was not the proper vehicle to challenge the adjudication of law points ruling. That ruling was a final order which could only be challenged by an appeal filed within the time limits of Iowa Rule of Appellate Procedure 5(a). We must accordingly sustain the motion to dismiss and dismiss the appeal as untimely. | In ruling on an application to adjudicate law points, the district court is limited to the uncontroverted facts found in the pleadings. Rules Civ.Proc., Rule 116. | "In ruling on an application to adjudicate law points, is the district court limited to the uncontroverted facts found in the pleadings? " | Pretrial Procedure - Memo # 2 - RM C.docx | ROSS-003323030-ROSS-003323031 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7277 | Greer v. Buzgheia, 141 Cal. App. 4th 1150 | 307A+3 | Trial judges enjoy " "broad authority" " over the admission and exclusion of evidence. (Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal.App.3d 272, 288, 245 Cal.Rptr. 873.) The motion in limine is not expressly authorized by statute, but is within the trial court's " "inherent power to entertain and grant." [Citation.] "The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial." [Citation.] Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the "obviously futile attempt to "unring the bell." " " (Ibid.) | A motion in limine is not expressly authorized by statute, but is within the trial court's inherent power to entertain and grant. | Is a motion in limine expressly authorized by statute and not within the trial court's inherent power to entertain and grant? | Pretrial Proceedure - Memo # 43 - C - TJ.docx | ROSS-003323899-ROSS-003323901 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7278 | Rawson v. City of Omaha, 212 Neb. 159 | 366+1 | In the case of Cagle, Inc. v. Sammons, 198 Neb. 595, 602, 254 N.W.2d 398, 403 (1977), we recognized the doctrine of equitable subrogation, writing: " "The doctrine of subrogation includes every instance in which one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability." Sheridan v. Dudden Implement, Inc., 174 Neb. 578, 119 N.W.2d 64 (1962). The doctrine applies where a party is compelled to pay the debt of a third person to protect his own rights or interest, or to save his own property. Luikart v. Buck, 131 Neb. 866, 270 N.W. 495 (1936); 73 Am.Jur.2d, Subrogation, " 11, p. 605. The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract and no general rule can be laid down which will afford a test for its application in all cases. The facts and circumstances of each case determine whether the doctrine is applicable. Rapp v. Rapp, 173 Neb. 136, 112 N.W.2d 777 (1962); Jones v. Rhodes, 162 Neb. 169, 75 N.W.2d 616 (1956); Equitable Life Assurance Society of the United States v. Person, 135 Neb. 800, 284 N.W. 260 (1939)." | Doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. | Is the doctrine of equitable subrogation applied to serve ends of justice and to do equity in a particular case under consideration? | Subrogation - Memo 126 - VP C.docx | ROSS-003324011-ROSS-003324012 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7279 | Marshall v. Wait, 628 F.2d 1255 | 216+2 | An industry's history of regulation is a relevant factor in determining the constitutionality of subjecting its operators to nonconsensual warrantless searches; for some it is the critical factor. See, e. g., Colonnade Catering Corp. v. United States, supra (liquor industry); United States v. Raub, slip op. p. 3332 (9th Cir. May 22, 1980). Of perhaps equal importance is the pervasiveness of federal regulation and the public interest in enforcement. As the Supreme Court noted in upholding a warrantless inspection of a pawn shop operator federally licensed to deal in sporting weapons:"Federal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders. . . . Large interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in a traceable manner and makes possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms."United States v. Biswell, supra, 406 U.S. at 315, 316, 92 S.Ct. at 1596. | An industry's history of regulation is a relevant factor in determining constitutionality of subjecting its operators to nonconsensual warrantless searches; of perhaps equal importance is the pervasiveness of federal regulation and the public interest in enforcement. Federal Mine Safety and Health Amendments Act of 1977, S 103, 30 U.S.C.A. S 813. | Is an industry's history of regulation a relevant factor in determining the constitutionality of subjecting its operators to nonconsensual warrantless searches? | Inspection - Memo 6 - SH.docx | ROSS-003324784-ROSS-003324785 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 7280 | Employers Health Ins. v. Gen. Cas. Co. of Wisconsin, 161 Wis. 2d 937 | 366+1 | Subrogation derives, in part, from the equitable doctrine of preventing unjust enrichment and placing the loss ultimately on the wrongdoers. Cunningham, 121 Wis.2d at 444, 360 N.W.2d 33; American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142 (1971). The right to subrogation "arises, not as a direct legal consequence of the contract of the parties, but rather as a matter of doing justice after a balancing of the equities .. [T]he agreement is merely a consideration-although an important consideration-in determining whether subrogation is appropriate." Rock River Lumber v. Universal Mortg. Corp., 82 Wis.2d 235, 242, 262 N.W.2d 114 (1978) Subrogation is permitted only when "the rights of those seeking subrogation have greater equity than the rights of those who oppose it." First National Bank of Columbus v. Hansen, 84 Wis.2d 422, 429, 267 N.W.2d 367 (1978). The right to subrogation arises "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." American Ins. Co., 51 Wis.2d at 351, 187 N.W.2d 142. | Equitable subrogation is permitted only when rights of those seeking subrogation have greater equity than rights of those who oppose it; right to subrogation arises when person other than mere volunteer pays debt which in equity and good conscience should be satisfied by another. | Is subrogation based on equity and permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it? | Subrogation - Memo 263 - AP.docx | ROSS-003326526-ROSS-003326527 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7281 | Gunby v. Yates, 214 Ga. 17 | 371+2002 | Whether there is any merit to this constitutional attack depends upon the answer to this question: Does the provision of section 8 of the amended act, authorizing the collection of one dollar for each marriage license sold, amount to a fee or compensation for services rendered, or rather is it a tax levied upon the sale of the marriage license? A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered. United States v. Butler, 279 U.S. 1, 61, 56 S.C. 312, 80 L.Ed. 477; Central Savings Bank in City of New York v. City of New York, 279 N.Y. 266, 18 N.E.2d 151, 121 A.L.R. 607; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 S.E.2d 744, 167 A.L.R. 1347; Pittsburgh Milk Co. v. City of Pittsburgh, 360 Pa. 360, 62 A.2d 49; Memphis Natural Gas Co. v. McCanless, 183 Tenn. 635, 194 476. As a general rule, fees prescribed for public officers are not taxes but compensation for particular services, unless the object and purpose of the charge is to provide general revenue rather than compensation for services rendered. Dickson v. Jefferson County Board of Education, 311 Ky. 781, 225 672; State v. Montevallo Coal Mining Co., 29 Ala.App. 318, 197 So. 82. A fee is a charge fixed by law as compensation for a public officer, while a tax is a forced contribution to the public needs of government. Stewart v. Verde River Irrigation & Power District, 49 Ariz. 531, 68 P.2d 329. If a fee is required for a license to carry on a business and is intended to raise revenue, its exaction is an exercise of the power of taxation. Home Insurance Co. ofNew York v. City Council of Augusta, 50 Ga. 530; Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206(2), 56 S.E.2d 254. | A "tax" is an enforced contribution exacted pursuant to legislative authority for purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or service rendered by a public officer, which is a "fee." | Are taxes payments for a special privilege or a special service rendered? | Taxation - Memo # 114 - C - CK.docx | ROSS-003327272-ROSS-003327274 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7282 | Adams v. Reed, 138 Idaho 36 | 307A+44.1 | As to the ineffectiveness of lesser sanctions, the district court found that duringthe hearings of October 30, 2000 and March 19, 2001, the Adamses were specifically warnedthat failure to comply with discovery could result in dismissal, and they were admonished toimmediately respond to outstanding discovery requests. As noted above, we presume this findingto be supported by the unavailable hearing transcripts. According to Ashby, explicit warningsare among the lesser sanctions that are appropriate before imposition of the drasticsanction of dismissal. | Explicit warnings that action will be dismissed are among lesser sanctions that are appropriate before imposition of drastic sanction of dismissal for failure to comply with discovery orders or pretrial orders, and for failure to seasonably supplement responses to discovery. | Are explicit warnings that action will be dismissed among lesser sanctions that are appropriate before imposition of drastic sanction of dismissal for failure to comply with discovery orders or pretrial orders? | Pretrial Procedure - Memo # 6567 - C - KG.docx | ROSS-003331813-ROSS-003331815 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 7283 | In re Wead, 38 B.R. 658 | 51+2235 | The record clearly indicates that the debtors filed this second Chapter 11 petition for reorganization on March 30, 1984, while the first Chapter 11 bankruptcy case was pending; and that the first case was pending at the time of the hearing on the motion to dismiss the second case. To the extent possible, the Court has compared the list of creditors in each case and concluded that the two cases affect essentially the same debts and creditors.Furthermore, each case is based upon a Chapter 11 petition which was voluntarily filed by the debtors. It is generally accepted that the pendency of one bankruptcy case precludes a consideration of a second case filed by the same debtor(s) and involving the same debts. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). Although the Freshman case was decided upon early bankruptcy law, the principles affirmed by the Supreme Court are based upon solid tenants of non-bankruptcy law. Freshman, supra, at 123, 46 S.Ct. at 42. A recent decision of the United States District Court for the Western District of Pennsylvania has determined that the Freshman decision is still good law and has been relied upon in other recent bankruptcy cases. Prudential Insurance Co. of America v. Colony Square, 29 B.R. 432, 436 (W.D.Penn.1983). Rather than dismiss the second bankruptcy case outright, the Court in Colony Square transferred the matter to the Bankruptcy Court for the Northern District of Georgia where the first reorganization case was still pending, for further consideration of the motion to dismiss. | Bankruptcy Court would not entertain or consider a second Chapter 11 petition involving the same debtors and essentially the same debts where the first case was still pending, where debtors did not present any basis upon which the findings and conclusions in first case could be reconsidered, and where there remained no reasonable likelihood of reorganization, and where the creditors would continue to be prejudiced by operation of second bankruptcy case, which was not filed in good faith. Bankr.Code, 11 U.S.C.A. S 1101 et seq. | Does the pendency of one bankruptcy case preclude a consideration of a second case filed by the same debtors involving the same debts? | 000001.docx | LEGALEASE-00115606-LEGALEASE-00115607 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 7284 | Mendoza v. Perez, 754 F.3d 1002 | 15A+1221 | The Department of Labor alternatively argues the TEGLs are exempt from notice and comment procedures because they are "rules of agency organization, procedure, or practice." 5 U.S.C. " 553(b). "Procedural rules," the general label for rules falling under this exemption, are "primarily directed toward improving the efficient and effective operations of an agency, not toward a determination of the rights [or] interests of affected parties."Batterton, 648 F.2d at 702 n. 34. Congress provided this exemption from the normal rulemaking procedures "to ensure that agencies retain latitude in organizing their internal operations." Id. at 707. Procedural rules "do not themselves alter the rights or interests of parties, although [they] may alter the manner in which the parties present themselves or their viewpoints to the agency." Id. "[T]he distinction between substantive and procedural rules is one of degree depending upon whether the substantive effect is sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." EPIC, 653 F.3d at 5"6. Those policies are "to serve the need for public participation in agency decision making and to ensure the agency has all pertinent information before it when making a decision." Id. at 6. The exception for procedural rules is narrowly construed, id., and cannot be applied "where the agency action trenches on substantial private rights and interests," Batterton, 648 F.2d at 708. | Procedural rules exempt from notice and comment procedures under the Administrative Procedure Act (APA) are primarily directed toward improving the efficient and effective operations of an agency, not toward a determination of the rights or interests of affected parties; procedural rules do not themselves alter the rights or interests of parties, although they may alter the manner in which the parties present themselves or their viewpoints to the agency. 5 U.S.C.A. S 553(b). | Are procedural rules directed toward improving the efficient operations of an agency? | 000031.docx | LEGALEASE-00115410-LEGALEASE-00115411 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7285 | Janiga v. Questar Capital Corp., 615 F.3d 735 | 25T+100 | Janiga finally argues that the Seventh Amendment bars arbitration. But that argument proves much too much; parties are entitled to opt in a contract for an alternative method of dispute resolution that involves neither courts nor juries. That is implicit in any arbitration agreement. Here there is more: the plain language of the contract includes an express waiver of the right to a jury trial, and we uphold such waivers even in form contracts. See, e.g., Sherwood v. Marquette Transp. Co., 587 F.3d 841, 842 (7th Cir.2009). The district court therefore should order arbitration between Janiga and Questar. | Parties are entitled to opt in a contract for an alternative method of dispute resolution that involves neither courts nor juries. | Can parties opt into a contract for an alternative method of dispute resolution that involves neither courts nor juries? | 03620.docx | LEGALEASE-00077161-LEGALEASE-00077162 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7286 | J & B Slurry Seal Co. v. Mid S. Aviation, 88 N.C. App. 1 | 38+31 | The language of the subrogation receipt specifically "assigns" plaintiff's claims to the same "extent" the Insurer is "subrogated" to those claims, i.e., to the extent of Insurer's $600,900 payment. The law of subrogation therefore sheds considerable light on the extent to which the claims have been assigned. Subrogation is an equitable remedy in which one steps into the place of another and takes over the right to claim monetary damages to the extent that the other could have, while an assignment is the formal transfer of property or property rights. Payne v. Buffalo Reinsurance Co., 69 N.C.App. 551, 554, 317 S.E.2d 408, 410 (1984). In effect, the insurer's subrogation is itself an assignment implied by equity to reimburse the insurer "to the extent" the insurer's payments have discharged the tortfeasor's primary liability to the insured. See Shambley v. Jobe-Blackley Plumbing and Heating Co., 264 N.C. 456, 458, 142 S.E.2d 18, 20 (1965). | "Subrogation" is equitable remedy in which one steps into place of another and takes over right to claim monetary damages to extent that other could have, while "assignment" is formal transfer of property or property rights. | Does formal transfer of property or property rights constitute assignment? | 000094.docx | LEGALEASE-00115543-LEGALEASE-00115544 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7287 | Julka v. U.S. Bank National Association, 516 S.W.3d 84 | 195+1 | Julka asks that we determine his personal obligations under the guaranty agreement. "A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform." Wasserberg v. Flooring Servs. of Tex., LLC, 376 S.W.3d 202, 205 (Tex. App."Houston [14th Dist.] 2012, no pet.); see also Elsey/Honeycutt Ward Sur./Ins. Agency, Inc. v. Nat'l Loan Invs., L.P., No. 01"93"00060"CV, 1993 WL 322734, at *3 (Tex. App."Houston [1st Dist.] Aug. 26, 1993, writ denied) (not designated for publication) (explaining that, because guarantor may be called on to perform once primary obligor has failed to perform, guaranty would not create any additional protection and would therefore be meaningless if primary debtor is found to be exclusive party liable under it). | A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. | How does a guaranty create a secondary obligation on the guarantor? | 000162.docx | LEGALEASE-00115420-LEGALEASE-00115421 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7288 | Fin. Freedom Sr. Funding Corp. v. Horrocks, 294 S.W.3d 749 | 315+131 | Generally, a life estate is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life. Eversole v. Williams, 943 S.W.2d 141, 143 (Tex.App.-Houston [1st Dist.] 1997, no writ). While no particular form of words is necessary to create a life estate, the words used must clearly express the grantor's intent to create a life estate. See Miller v. Wilson, 888 S.W.2d 158, 161 (Tex.App.-El Paso 1994, writ denied). Here, appellant argues, without citing any legal authority addressing a deed of trust, that Mullane granted Johansen a life estate through the above referenced language in the Deeds of Trust, documents drafted by appellant, not Mullane. In making this argument, appellant mistakes the purpose of a deed of a trust. The purpose of a deed of trust is to secure to a lender the repayment of a borrower's debt. Sonny Arnold, Inc. v. Sentry Sav. Assoc., 615 S.W.2d 333, 339 (Tex.Civ.App.-Amarillo, 1981) aff'd 633 S.W.2d 811 (Tex.1982). To accomplish this purpose, a deed of trust creates only a lien on property and does not constitute a conveyance of the property. Sandel v. Burney, 714 S.W.2d 40, 41 (Tex.App.-San Antonio 1986, no writ). We hold that, as a matter of law, the Deeds of Trust did not create a life estate in Johansen. | A "life estate " is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life. | How are life estates created? | 000233.docx | LEGALEASE-00115454-LEGALEASE-00115456 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7289 | Baker v. Baker, 274 S.W.2d 322 | 92+3974 | Proceeding to the merits of this appeal, we immediately agree with defendant that it is clear, from a long line of Missouri cases, that reasonable notice and an opportunity to be heard (if defendant so desired) were prerequisites to lawful modification of the original decree. Many years ago our Supreme Court said in State v. Sutton, 232 Mo. 244, 134 S.W. 663, that "This Court has heretofore refused to sanction the practice of trial courts in changing or modifying final judgments, even during the same term at which they were entered, without notice to the litigants whose interests are affected, but who are no longer in court"; and, the same statement has been repeated with approval in Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656, 29 S.W.2d 126, 128; In re Zartman's Adoption, 334 Mo. 237, 65 S.W.2d 951, 956, and Hoppe, Inc., v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 350, 23 A.L.R.2d 846. That Supreme Court Rule 3.25 is silent as to notice does not permit us to conclude, as plaintiff would have us do, that no notice of intended action thereunder need be given [cf. In re Waters' Estate, Mo.App., 153 S.W.2d 774, 776(6)], for "the requirement of reasonable notice goes deeper than that." "In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice"" "a prerequisite to the lawful exercise of the court's power"" "basic in simple fundamental justice." Hoppe, Inc., v. St. Louis Public Service Co., supra, 235 S.W.2d loc. cit. 349, 350, 351. However, from the record and briefs before us, it is plain that this is not a case in which the judgment has been modified with no prior notice to the party to be affected adversely, but that the gist of defendant's complaint is rather that the "one hour's notice" to his counsel was not "reasonable notice." Since the requirement imposed by "reasonable notice" is flexible and | Reasonable notice to litigant, where there exists even possibility of action adverse to his interests, is deemed to be of essence of fairness and justice and is prerequisite to lawful exercise of court's power. | What is a prerequisite to the lawful exercise of the courts power? | 000264.docx | LEGALEASE-00115552-LEGALEASE-00115554 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 7290 | Chaplin v. Sanders, 100 Wash. 2d 853 | 20+1 | The doctrine of adverse possession was formulated at law for the purpose of, among others, assuring maximum utilization of land, encouraging the rejection of stale claims and, most importantly, quieting titles. 7 R. Powell, Real Property" 1012[3] (1982); C. Callahan, Adverse Possession 91"94 (1961). Because the doctrine was formulated at law and not at equity, it was originally intended to protect both those who knowingly appropriated the land of others and those who honestly entered and held possession in full belief that the land was their own. R. Powell, at " 1013 [2]; C. Callahan, at 49"50; 3 Am.Jur.2d Advancements " 104 (1962). Thus, when the original purpose of the adverse possession doctrine is considered, it becomes apparent that the claimant's motive in possessing the land is irrelevant and no inquiry should be made into his guilt or innocence. Accord, Springer v. Durette, 217 Or. 196, 342 P.2d 132 (1959); Agers v. Reynolds, 306 S.W.2d 506 (Mo.1957); Fulton v. Rapp, 59 Ohio Law Abs. 105, 98 N.E.2d 430 (1950); see also Stoebuck, The Law of Adverse Possession in Washington, 35 Wash.L.Rev. 53, 76"80 (1960). | Doctrine of adverse possession was formulated at law for the purpose of, among others, assuring maximum utilization of land, encouraging rejection of stale claims, and, most importantly, quieting titles. | What purpose does the doctrine of adverse possession serve? | 003859.docx | LEGALEASE-00115845-LEGALEASE-00115846 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7291 | Marquette Nat. Bank v. B.J. Dodge Fiat, 131 Ill. App. 3d 356 | 21+18 | However, even if we were to ignore considerations of waiver, Chrysler Credit's argument would nevertheless fail. While it is generally true that well-alleged facts within an affidavit must be taken as true when they are not contradicted by counter-affidavit (Kutner v. DeMassa (1981), 96 Ill.App.3d 243, 248, 51 Ill.Dec. 723, 421 N.E.2d 231; Denton Enterprises, Inc. v. Illinois State Toll Highway Authority (1979), 77 Ill.App.3d 495, 507, 32 Ill.Dec. 921, 396 N.E.2d 34), that rule is typically applied, by virtue of Supreme Court Rule 191(a) (87 Ill.2d R. 191(a) ), only to affidavits in proceedings under sections 2-1005, 2-619, and 2-301(b) of the Code of Civil Procedure (Ill.Rev.Stat.1983, ch. 110, pars. 2-1005, 2-619, 2-301) and does not apply to affidavits filed in conjunction with all other types of civil proceedings. (People v. Frieder (1980), 90 Ill.App.3d 116, 121, 45 Ill.Dec. 954, 413 N.E.2d 432.) Here, there is no issue as to summary judgment, involuntary dismissal, or jurisdiction over the person so as to invoke the requirements of Rule 191(a). Nonetheless, an examination of Koester's affidavit shows that the portion on which Chrysler Credit relies does not state facts but rather merely states a general conclusion without reference to specific underlying facts, personally known to Koester, to support that conclusion. The trial court is not required to accept as true conclusions in an affidavit unsupported by facts which is submitted as evidence. | Although well-alleged facts within affidavit submitted as evidence must be taken as true when they are not contradicted by counteraffidavit, rule is typically applied only to affidavits in certain proceedings and does not apply to affidavits filed in conjunction with other types of civil proceedings. S.H.A. ch. 110, PP 2-301(b), 2-619, 2-1005; ch. 110A, P 191(a). | Can courts accept an affidavit as true if it is uncontradicted by counter-affidavits or other evidentiary materials? | Affidavits- Memo 18 - ANG.docx | LEGALEASE-00000880-LEGALEASE-00000881 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7292 | State v. Lotono, 62 W. Va. 310 | 181+10 | Our statute (Code 1899, c. 146, " 5 [Code 1906, " 4289]) provides: "If a person forge any writing other than such as is mentioned in the first and third sections of this chapter, to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be confined in the penitentiary not less than two nor more than ten years." Forgery is the false and fraudulent making or altering of an instrument which would, if genuine, apparently impose a legal liability on another or change his legal liability to his prejudice. Clark, Cr. L. "" 11, 112; Turnipseed v. State, 45 Fla. 110, 33 South. 851, and cases cited; 2 Bishop, New Cr. L. "" 573, 577; Burgess v. Blake, 86 Am. St. Rep. 86, note, and cases cited; State v. Briggs, 34 Vt. 501. An alteration in an instrument, to amount to forgery according to the authorities cited, must be such as to make it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing.It follows that an immaterial change-a change which, if true, would not affect the legal liability of the parties in an action on the instrument-would not amount to forgery. 1 Bish. Cr. L. " 572; State v. Poindexter, 23 W. Va. 805. The test is the legal effect of the change or alteration, not whether some one may be misled or deceived by the paper. Here the only change was in what are called in some cases the "marginal figures," which, while they might mislead one who should fail to observe the body of the instrument, could not change or affect the legal status of the parties, or tend in legal effect to prejudice another's rights. The alteration of the check in this case did not deceive the bank, and its legal effect was not changed. The materiality of the alteration is a question of law for the court, upon the admissibility of the altered instrument in evidence; and, the alteration being shown, nothing remains for the jury to pass upon. Manufacturing | An alteration in an instrument, to constitute forgery, must be of a material part thereof, and a material alteration of an instrument is one which makes it speak a language different in legal effect from that which it originally spoke, or which carries with it some change in the rights, interests, or obligations of the parties to the writing. | Does an alteration in relation to negotiable instrument affect the rights of the parties involved? | 003936.docx | LEGALEASE-00115937-LEGALEASE-00115938 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7293 | Upjohn Co. v. United States, 449 U.S. 383 | 311H+106 | Federal Rule of Evidence 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The attorney"client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence " 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer"client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"). Admittedly complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual; but this Court has assumed that the privilege applies when the client is a corporation. | Purpose of attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in observance of law and administration of justice. Fed.Rules Evid. Rule 501, 28 U.S.C.A. | Is attorney-client privilege a matter of common law? | 005317.docx | LEGALEASE-00116102-LEGALEASE-00116103 | Condensed, Order, SA | 0.88 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7294 | WorldCrisa Corp. v. Armstrong, 129 F.3d 71 | 25T+210 | In accordance with the strong federal policy in favor of arbitration, Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 19 (2d Cir.1995), the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir.1987) (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). Likewise, close questions as to whether a waiver of arbitration has occurred are to be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983). Arbitration is essentially contractual, however, and parties may not be forced into arbitration if that was not their true agreement. Collins & Aikman Prod. Co., 58 F.3d at 19. If an arbitration clause is narrowly worded and the dispute concerns a matter collateral to the contract calling for arbitration, "a court should test the presumption [of arbitrability] by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction...." Id. at 23.Finally, "[i]f the allegations underlying the claims "touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987). | If arbitration clause is narrowly worded and dispute concerns matter collateral to contract calling for arbitration, court should test presumption of arbitrability by reviewing allegations underlying dispute and by asking whether claim alleged implicates issues of contract construction. | Can parties be forced to arbitration if that was not their true agreement? | 003764.docx | LEGALEASE-00116168-LEGALEASE-00116170 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7295 | Powerhouse Wholesale Elec. Supply v. Spartan Bldg. Corp., 525 So. 2d 1216 | 38+31 | La.R.S. 9:3101 through 9:3111 is not to be considered as the exclusive method of assigning accounts receivable, but instead provides an additional method for doing so. However, if the parties file a notice of assignment, then the Act shall provide the exclusive method by which the assignee may perfect a security interest in those accounts receivable assigned. La.R.S. 9:3109.A "perfected security interest" is defined in the Act as an assignment of accounts receivable effective against third persons. La.R.S. 9:3101(7). Third parties are not affected by an assignment of accounts receivable until the filing of the notice of assignment in the manner prescribed by the Act. La.R.S. 9:3102. Section 3103 of the Act provides a sample written form for the notice of assignment. It requires only that the form of notice used be "substantially" as stated in the statute. The sample form includes a general description of the accounts assigned. La.R.S. 9:3103. As stated above, however, filing of the notice merely renders the assignment effective against third parties. Moreover, it is effective whether or not any debtor(s) of the account are notified of or consent to the assignment. La.R.S. 9:3102. | Assignment of Accounts Receivable Act is not the exclusive method of assigning accounts receivable, but provides an additional method for doing so, but if the parties file a notice of assignment, the Act shall provide the exclusive method by which the assignee may perfect a security interest in the accounts receivable assigned. LSA-R.S. 9:3101-9:3111. | Does the Assignment of Accounts Receivable Act establish an exclusive system of perfecting assignments of accounts receivable? | 05008.docx | LEGALEASE-00078128-LEGALEASE-00078129 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 7296 | Steelcase Inc. v. Haworth, 954 F. Supp. 1195 | 311H+168 | The foregoing opinions of the Federal Circuit persuade me that the scope of waiver of the attorney-client privilege must be broad enough to illuminate the issues found relevant by the Federal Circuit, but no broader. Certainly, a defendant asserting an advice-of-counsel defense must be deemed to have waived the privilege as to all communications between counsel and client concerning the subject matter of the opinion. Because of the centrality of the opinion letter itself under Federal Circuit analysis, the opinion must be produced in its entirety, without redaction. If the opinion happens to contain irrelevant information, production of that information is a consequence of defendant's decision to waive the privilege. Likewise, the privilege must be deemed waived concerning all documents in the client's hands that refer or relate to counsel's opinion or represent information relayed to counsel as a basis for the opinion. Furthermore, the privilege is waived as to all information provided by the client to the attorney, regarding the subject matter of the opinion. In this regard, the scope of the waiver is "broad," to the extent that it is necessary to shed complete light upon the alleged infringer's state of mind. By the same token, the scope of the waiver appears narrow, as it pertains to the attorney's state of mind. Especially irrelevant is discovery addressed to the "legal correctness" of the opinion. See Ortho, 959 F.2d at 944. | In patent infringement case in which alleged infringer relies on advice-of-counsel defense, attorney-client privilege must be deemed waived concerning all documents in client's hands that refer or relate to counsel's opinion or represent information related to counsel as basis for opinion; furthermore, privilege is waived as to all information provided by client to attorney, regarding subject matter of opinion. | When does an attorney-client privilege be deemed waived? | Privileged Communications and Confidentiality - Memo 9 - VP.docx | LEGALEASE-00001615-LEGALEASE-00001616 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7297 | Royal Caribbean Cruises, Ltd. v. Bryan Cox, 137 So. 3d 1157 | 16+1.20(4) | Here, the trial court awarded attorney's fees pursuant to section 768.79, Florida's offer of judgment statute. This substantive state law mandates an attorney's fee award to the prevailing party upon that party's compliance with the statute's requirements when the non-prevailing party has rejected an offer of judgment. See Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 79-80 (Fla. 2012) (holding that section 768.79 is substantive for both constitutional and conflict of law purposes). "[S]tate courts may entertain maritime causes of action and may apply state law to supplement federal maritime law if the state law does not conflict with federal law or interfere with uniformity. . . . State law will not apply if: (1) the state law is found to conflict with substantive maritime law, or (2) the state law affects remedies peculiar to maritime law. In other words, states may apply state law to supplement maritime law if that application does not flatly contradict maritime law." Zareno, 712 So. 2d at 793. See also Carlisle, 953 So. 2d at 464; Frango v. Royal Caribbean Cruises, Ltd., 891 So. 2d 1208, 1210 (Fla. 3d DCA 2005). | State law will not apply to a maritime cause of action in state court if: (1) the state law is found to conflict with substantive maritime law, or (2) the state law affects remedies peculiar to maritime law; in other words, states may apply state law to supplement maritime law if that application does not flatly contradict maritime law. | Can courts apply state law in admiralty cases? | 06314.docx | LEGALEASE-00078400-LEGALEASE-00078402 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7298 | Coleman v. State Med. Bd. of Ohio, 2007-Ohio-5007 | 146+4 | After an analysis of the statute and the relevant case law, this Court finds that implicit in these elements is the requirement that the State present proof beyond a reasonable doubt to establish the specific person or corporation that owned the embezzled money. A conviction for embezzlement requires proof of the identity of the corporation or private person whose goods and money the accused has embezzled. Bunkley v. State, 495 So.2d 1, 3"4 (Miss.1986). Proof as to ownership of the money and the extent of the agency relationship which existed are essential to distinguishing embezzlement from larceny. See Jackson v. State, 211 Miss. 828, 832, 52 So.2d 914, 915 (1951). | A conviction for embezzlement requires proof of the identity of the corporation or private person whose goods and money the accused has embezzled; proof as to ownership of the money and the extent of the agency relationship which existed are essential to distinguishing embezzlement from larceny. | How is larceny distinguished from embezzlement? | 004306.docx | LEGALEASE-00116429-LEGALEASE-00116431 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 7299 | People ex rel. Dep't of Transp. v. Dry Canyon Enterprises, 211 Cal. App. 4th 486 | 192+1 | Although there is no single acceptable method of valuing goodwill (Muller, supra, 36 Cal.3d at p. 271, fn. 7, 203 Cal.Rptr. 772, 681 P.2d 1340), the methodologies used to value goodwill are by and large based on a business's profitability (id., at p. 268, 203 Cal.Rptr. 772, 681 P.2d 1340; Community Dev. Comm. v. Asaro (1989) 212 Cal.App.3d 1297, 1302, 261 Cal.Rptr. 231; People ex rel. Dept. of Trans. v. Leslie (1997) 55 Cal.App.4th 918, 922"923, 64 Cal.Rptr.2d 252; Attisha, supra, 128 Cal.App.4th at p. 363, 27 Cal.Rptr.3d 126). The predominance of profit-based yardsticks is a function of what goodwill represents. Goodwill is the amount by which a business's overall value exceeds the value of its constituent assets, often due to a recognizable brand name, a sterling reputation, or an ideal location.(Attisha, supra, at p. 367, 27 Cal.Rptr.3d 126 [defining "goodwill" as "the amount a willing buyer would pay for a going concern above the book value of the assets"].) Regardless of the cause, however, goodwill almost always translates into a business's profitability. Experts, in turn, look to profitability as a gauge for valuing goodwill. | "Goodwill" is the amount by which a business's overall value exceeds the value of its constituent assets, often due to a recognizable brand name, a sterling reputation, or an ideal location. | "Are ideal location, reputation, and brand name elements of Goodwill?" | Goodwill - Memo 12 - ANG..docx | LEGALEASE-00002161-LEGALEASE-00002163 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7300 | Harris v. City of Santa Monica, 56 Cal. 4th 203 | 302+1 | However, "[n]o error or defect in a pleading is to be regarded unless it affects substantial rights." (Buxbom v. Smith (1944) 23 Cal.2d 535, 542, 145 P.2d 305, citing Code Civ. Proc., " 475.) The primary function of a pleading is to give the other party notice so that it may prepare its case (Leet v. Union Pac. R.R. Co. (1944) 25 Cal.2d 605, 619, 155 P.2d 42), and a defect in a pleading that otherwise properly notifies a party cannot be said to affect substantial rights. This principle is consistent with the rule that leave to amend a pleading should be liberally granted as long as there is no timeliness problem under a statute of limitations or prejudice to the opposing party. (Kolani v. Gluska (1998) 64 Cal.App.4th 402, 412, 75 Cal.Rptr.2d 257; see also 5 Witkin, Cal. Procedure, supra, Pleading, " 1194, pp. 625"627.) | The primary function of a pleading is to give the other party notice so that it may prepare its case, and a defect in a pleading that otherwise properly notifies a party cannot be said to affect substantial rights. | Is giving notice to the other party the primary function of pleading? | Pleading - Memo 8 - VP.docx | ROSS-003298144-ROSS-003298146 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7301 | People v. Nazary, 191 Cal. App. 4th 727 | 146+11(1) | As for embezzlement, such offense "is the fraudulent appropriation of property by a person to whom it has been entrusted." (" 503.) A conviction for embezzlement "requires conversion of trusted funds coupled with the intent to defraud. [Citations.] An intent to deprive the rightful owner of possession even temporarily is sufficient and it is no defense that the perpetrator intended to restore the property nor that the property was never "applied to the embezzler's personal use or benefit."[Citations.]" (In re Basinger (1988) 45 Cal.3d 1348, 1363"1364, 249 Cal.Rptr. 110, 756 P.2d 833.) "The crime of embezzlement requires the existence of a "relation of trust and confidence," similar to a fiduciary relationship, between the victim and the perpetrator." (People v. Wooten (1996) 44 Cal.App.4th 1834, 1845, 52 Cal.Rptr.2d 765.) Embezzlement by an employee requires evidence that the property came into the control of the "clerk, agent or servant" by virtue of his employment. (" 508; People v. Sprado (1925) 72 Cal.App. 582, 237 P. 1087.) ""The gist of the offense is the appropriation to one's own use of property held by him for devotion to a specified purpose other than his own enjoyment of it." [Citation.]" (People v. Creath (1995) 31 Cal.App.4th 312, 318, 37 Cal.Rptr.2d 336.) | Conviction for embezzlement requires conversion of trusted funds coupled with the intent to defraud; an intent to deprive the rightful owner of possession even temporarily is sufficient. West's Ann.Cal.Penal Code S 503. | Is intent to deprive rightful owner of possession sufficient to support a claim for embezzlement? | 07387.docx | LEGALEASE-00079059-LEGALEASE-00079061 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7302 | Kawaauhau v. Geiger, 523 U.S. 57 | 272+201 | The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts " 8A, Comment a, p. 15 (1964) (emphasis added). | "Intentional" torts, as distinguished from negligent or reckless torts, generally require that actor intended consequences of act, not simply act itself. Restatement (Second) of Torts S 8A comment. | Does intentional tort generally require proving that the actor intend the consequences of an act? | Negligence - Memo 13 - VP.docx | ROSS-003298639-ROSS-003298640 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7303 | Yancey v. Lea, 354 N.C. 48 | 272+273 | It is clear from the foregoing language of this Court that the difference between ordinary negligence and gross negligence is substantial. As this Court has stated:An analysis of our decisions impels the conclusion that this Court, in references to gross negligence, has used that term in the sense of wanton conduct. Negligence, a failure to use due care, be it slight or extreme, connotes inadvertence. Wantonness, on the other hand, connotes intentional wrongdoing. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.Hinson, 244 N.C. at 28, 92 S.E.2d at 397 (emphasis added).Thus, the difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional. Brewer, 279 N.C. at 297, 182 S.E.2d at 350. | Difference between negligence and gross negligence is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others; an act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others, but an act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional. | Is there a substantial difference between ordinary negligence and gross negligence? | 004810.docx | LEGALEASE-00116841-LEGALEASE-00116842 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 7304 | State v. Matthews, 143 Tenn. 463 | 146+1 | We are of the opinion that said language does not constitute the charge of larceny. We think it was intended as a part of the charge of embezzlement, but was unnecessary to constitute said charge, and must therefore be treated as mere surplusage. The offense of embezzlement is purely statutory. The object of the statute was to meet and obviate the defects in the law of larceny, and to protect employers against the frauds of those in whom confidence is reposed, and when the element of confidence does not exist, there can be no such thing as embezzlement. If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him.A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass. Trespass is essential to constitute the offense of larceny. 3 Shannon's Tennessee Cases, 754; Johnson v. State, 9 Baxt. 281. | If money or property goes into the possession of an employer before it goes into the possession of his employee, the employee's criminal taking and appropriation of it does not constitute embezzlement, but larceny, "embezzlement" being the fraudulent appropriation of such property as the statute makes the subject of embezzlement under the circumstances in the statute by the person embezzling to the injury of the owner, the money or property coming directly from a third person into the hands of the employee in the course of his employment and being appropriated by him, while trespass, which is impossible where a servant takes his master's property from a third person, is essential to constitute the offense of larceny. | Does the statute require that the embezzled property be entrusted to the accused directly by the master? | 004997.docx | LEGALEASE-00116946-LEGALEASE-00116947 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 7305 | United States v. Keen, 676 F.3d 981 | 146+14 | Because Mr. Keen's argument turns on an interpretation of the term "agent" that is unsupported by the plain language of " 666, we reject it. The statute defines an "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. " 666(d)(1). Nowhere does the statutory text either mention or imply an additional qualifying requirement that the person be authorized to act specifically with respect to the entity's funds. Rather, this is something Mr. Keen urges us to read into the statute in order to contain its broad scope for prosecuting fraud and corruption within entities that receive federal assistance funds. To be sure, Mr. Keen points out that the Fifth Circuit adopted a similar interpretation of the term "agent" in United States v. Phillips, 219 F.3d 404 (5th Cir.2000). However, absent the need to avoid absurd consequences, we generally may not reinterpret the plain meaning of a statute. United States v. Brown, 333 U.S. 18, 27, 68 S.Ct. 376, 381, 92 L.Ed. 442 (1948). And because Mr. Keen has not shown how any absurd consequence would result from applying the plain text of the statute, we must decline to read into the definition of "agent" a requirement that the person be authorized to act with respect to the entity's funds. Instead, we conclude that to qualify as an agent of an entity, an individual need only be authorized to act on behalf of that entity. | Statute prohibiting local government agents from fraudulently obtaining property from an organization receiving federal funds does not require that the agent be a person authorized to act with respect to those funds. 18 U.S.C.A. S 666(d)(1). | Does the statute prohibiting local government agents from fraudulently obtaining property from an organization receiving federal funds require that the agent be a person authorized to act with respect to those funds? | 005001.docx | LEGALEASE-00116995-LEGALEASE-00116996 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 7306 | Hall v. Great Nat. Lloyds, 154 Tex. 200 | 146+9 | We find in the decisions of the Court of Criminal Appeals a distinction between "custody" and "possession" in regard to the offense of theft. This rule is a well recognized one, and is thus stated in that well known and generally accepted authority-Branch's Annotated Penal Code, as follows:"Sec. 2473-Theft by Clerk or Servant. If property is put in the custody of a servant by the master, his possession is not adverse to that of his master, and if, without the consent of the master and with the intent to deprive the master of the value of the property the servant fraudulently converts it to his own use, he is guilty of theft. Cobletz v. State, 36 Tex. 353; Livingston v. State, 38 Tex.Cr.R. 535, 43 S.W. 1008; Crook v. State, 39 Tex.Cr.R. 252, 45 S.W. 720; Zysman v. State, 42 Tex.Cr.R. 432, 60 S.W. 669." | Servant's possession of property put in his custody by master is not adverse to that of master, and servant's fraudulent conversion of such property to his own use, without master's consent and with servant's intent to deprive master of value of the property, constitutes "theft" under theft policy. Vernon's Ann.P.C. art. 1534. | Is a servants fraudulent conversion of property put in his custody by the master theft? | Embezzlement - Memo 31 - RK.docx | LEGALEASE-00002985-LEGALEASE-00002986 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7307 | Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 | 25T+113 | Appellant first suggests that the Court of Appeal's construction of the choice-of-law clause was in effect a finding that appellant had "waived" its "federally guaranteed right to compel arbitration of the parties' dispute," a waiver whose validity must be judged by reference to federal rather than state law. Id., at 17, 30"36. This argument fundamentally misconceives the nature of the rights created by the FAA. The Act was designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," Byrd, supra, 470 U.S., at 219"220, 105 S.Ct., at 1241"1242, and place such agreements " "upon the same footing as other contracts," " Scherk v. Alberto"Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). Section 2 of the Act therefore declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. " 2, and " 4 allows a party to such an arbitration agreement to "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." | Federal Arbitration Act was designed to overrule judiciary's long-standing refusal to enforce agreements to arbitrate and place such agreements upon same footing as other contracts, but Act does not confer right to compel arbitration of any dispute at any time; Act confers only right to obtain order directing arbitration proceeding in manner provided for by parties' agreement. 9 U.S.C.A. SS 2, 4. | How does Federal Arbitration Act (FAA) help to enforce agreements to arbitrate? | 004881.docx | LEGALEASE-00117141-LEGALEASE-00117143 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7308 | Monsanto Co. v. Pollution Control Bd., 67 Ill. 2d 276 | 149E+678 | Section 35 of the Environmental Protection Act gives the Board authority to decide if a regulation imposes an arbitrary or unreasonable hardship on an individual polluter. If the Board finds such hardship, it may then grant a variance. This decision is essentially quasi-judicial, and, as such, must be supported by a written opinion with specific findings which are entitled to a presumption that they are prima facie true and correct (Ill.Rev.Stat.1975, ch. 110, par. 274). Nonetheless, if the factual determinations of the Board, or of any administrative agency, are contrary to the manifest weight of the evidence, the reviewing court is empowered to reverse the agency's findings. Kerr v. Police Board (1974), 59 Ill.2d 140, 319 N.E.2d 478; Davern v. Civil Service Com. (1970), 47 Ill.2d 469, 269 N.E.2d 713. | If Pollution Control Board finds that a regulation imposes an arbitrary or unreasonable hardship on an individual polluter, Board may grant a variance; such a decision is essentially quasi-judicial and, as such, must be supported by written opinion with specific findings which are entitled to presumption that they are prima facie true and correct. S.H.A. ch. 110, S 274 ch. 1111/2, S 1035. | Can the Pollution Control Board grant a variance if a regulation imposes an arbitrary or unreasonable hardship on an individual polluter under Section 35 of the Environmental Protection Act? | Environmental Law - Memo 70 - RK.docx | ROSS-003289178-ROSS-003289179 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 7309 | Herman Grant Co. v. Washington, 214 So. 3d 266 | 401+2 | "The venue statute does not allow the "piling" of acts or events to establish venue. It specifically requires a substantial alleged act, omission, or injury-causing event to have happened in a particular jurisdiction in order for venue to be proper there." Med. Assurance Co. of Miss. v. Myers, 956 So.2d 213, 219 (Miss. 2007) (emphasis added). The location where the accident giving rise to this suit occurred is in Laurel, Mississippi, which is in the Second Judicial District of Jones County. The Complaint specifically alleged that Bradford and Washington were injured when the weigh pod system broke loose and fell on them at Dunn Road Builder's plant in Laurel, Mississippi. Therefore, under Section 11"11"3(1)(a)(i) of the venue statute, venue is proper in the Second Judicial District of Jones County. The First Judicial District of Jasper County is not among the permissible venues that Bradford and Washington could select for this action under Section 11"11"3(1)(a)(i). | The venue statute does not allow the piling of acts or events to establish venue, but rather, specifically requires a substantial alleged act, omission, or injury-causing event to have happened in a particular jurisdiction in order for venue to be proper there. Miss. Code Ann. S 11-11-3. | Must actions in a specific location be substantial to establish venue? | 005185.docx | LEGALEASE-00117270-LEGALEASE-00117271 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7310 | Avery v. Powell, 806 F. Supp. 7 | 98+21 | Although convicted prisoners do not forfeit all constitutional rights upon conviction, their rights are subject to restrictions and limitations due to the fact of confinement and the legitimate goals and policies of the penal institution. Bell, 441 U.S. at 545"46, 99 S.Ct. at 1877"78; Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 129, 97 S.Ct. 2532, 2540, 53 L.Ed.2d 629 (1977). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of prisoners. Bell, 441 U.S. at 546, 99 S.Ct. at 1878. | Although convicted prisoners do not forfeit all constitutional rights upon conviction, their rights are subject to restrictions and limitations due to fact of confinement and legitimate goals and policies of penal institution. | Do convicted prisoners forfeit all of their constitutional rights? | Convicts- Memo 06 - JS.docx | ROSS-003283413-ROSS-003283414 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7311 | Envtl. Prot. Agency v. Pollution Control Bd., 37 Ill. App. 3d 519 | 149E+685 | The Agency here contends that the instant application was for a development permit and not for an operating permit. A development permit is deemed granted only if the Agency fails to act upon an application for such a permit within 90 days of its submission to the Agency, while an operating permit is deemed granted if the application is not acted upon within 45 days. Since the Agency here denied the City's application 74 days after it was submitted, the Agency acted within the time period allowed for a development permit, but not for an operating permit. We believe, however, that petitioner has waived this issue since it did not raise the argument in the proceedings before the Board. Where a party has presented his case to an administrative agency upon a certain and definite theory, it will not be permitted to change in court and prevail upon another theory and issue not advanced to the agency. Robert S. Abbott Publishing Co. v. Annunzio, 414 Ill. 559, 112 N.E.2d 101 (1953). In the instant case, the Agency objected to the City's motion to dismiss only on the grounds that it was not timely filed and that it went to the merits of the complaint which should not be dismissed at the pleading stage. The Agency did not assert that the application was for a development permit. Indeed the Agency's complaint alleged that the City had violated the Environmental Protection Act (Ill.Rev.Stat.1975, ch. 111 1/2, par. 1021(e)), and the Board's Solid Waste Rules, in particular Rule 202(b)(1), because it had failed to obtain an operating permit. Petitioner asserts that the issue of whether the permit was deemed granted was first recognized by the Board in its opinion and order dismissing the complaint. Yet the City had advanced this argument in its motion to dismiss. The Agency failed to respond to this point, choosing to rely upon a procedural argument in opposition to the City's motion. Although the Board denied the city's motion as moot, this was the only logical | Order of Pollution Control Board granting city a permit to operate a sanitary landfill on ground that Environmental Protection Agency had failed to act upon permit application within 45 days of its submission was subject to being reversed only if it could be said that Board's implicit finding that city had applied for an operating permit was based upon insufficient or incredible evidence or was arbitrary and capricious. S.H.A. ch. 110, S 274; ch. 1111/212, SS 1021(e), 1041. | Is a development permit deemed granted if the Environmental Protection Agency (Agency) fails to act upon an application within 90 days of its submission? | 005043.docx | LEGALEASE-00117283-LEGALEASE-00117284 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7312 | Hurley v. Port Blakely Tree Farms L.P., 182 Wash. App. 753 | 386+1 | "Trespass occurs when a person intentionally or negligently intrudes onto or into the property of another." Jackass Mt. Ranch, Inc. v. South Columbia Basin Irr. Dist., 175 Wash.App. 374, 401, 305 P.3d 1108 (2013) (citing Borden v. City of Olympia, 113 Wash.App. 359, 373, 53 P.3d 1020 (2002)). " "Negligent trespass' requires proof of negligence (duty, breach, injury, and proximate cause)." Pruitt v. Douglas County, 116 Wash.App. 547, 554, 66 P.3d 1111 (2003) (quoting Gaines v. Pierce County, 66 Wash.App. 715, 719"20, 834 P.2d 631 (1992)). "To establish intentional trespass, a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." Wallace v. Lewis County, 134 Wash.App. 1, 15, 137 P.3d 101 (2006) (citing Bradley, 104 Wash.2d at 692"93, 709 P.2d 782). | To establish intentional trespass, a plaintiff must show: (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages. | When does intentional trespass occur? | 000693.docx | LEGALEASE-00117519-LEGALEASE-00117520 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7313 | Bacus v. Lake Cty., 138 Mont. 69 | 92+2407 | However, the appellant does have a valid argument in another respect. When the legislature confers authority upon an administrative agency it must lay down the policy or reasons behind the statute and also prescribe standards and guides for the grant of power which has been made to the administrative agency. The rule has been stated as follows:"The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe, a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad, its attempt to delegate is a nullity. | When legislature confers authority on an administrative agency it must lay down policy or reasons behind statute and also prescribe standards and guards for grant of power which has been made to administrative agency. | What must the legislature do to lawfully confer authority upon an administrative agency? | 000325.docx | LEGALEASE-00117677-LEGALEASE-00117679 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7314 | O'Neal v. United States, 140 F.2d 908 | 92+2420 | Other contentions require only a brief discussion. Since it is not unconstitutional for Congress to invest the President with the power of allocation, it follows that the express provision giving him authority in turn to delegate these powers to other administrative boards or officials is valid. Kiyoshi Hirabayashi v. United States, supra. | Since it is not unconstitutional for Congress to invest President with power of allocation of critical materials and supplies, the express provision giving him authority in turn to delegate these powers to other administrative boards or officials is valid. Emergency Price Control Act of 1942, S 201(b), 50 U.S.C.A.App. S 921(b). | Is it unconstitutional for Congress to invest the President with the power of allocation? | Administrative Law - Memo 52 - RK.docx | ROSS-003283499-ROSS-003283500 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |
| 7315 | State v. Harvell, 45 N.C. App. 243 | 207+1 | A father violates G.S. 14-178 and by reason thereof is guilty of the statutory felony of incest if he has sexual intercourse, either habitual or in a single instance, with a woman or girl whom he knows to be his daughter. State v. Vincent, 278 N.C. 63, 178 S.E.2d 608 (1971). There was positive testimony that the defendant, Tina's father, while living with her in the relationship of father and daughter, had sexual intercourse with her. We hold the evidence was sufficient in both the case of second degree rape and incest to carry the cases to the jury. Defendant's assignments of error are overruled | A father is guilty of statutory felony of incest if he has sexual intercourse, either habitual or a single instance, with a woman or girl whom he knows to be his daughter. G.S. S 14-178. | Does a single act of sexual intercourse between a father and his daughter amount to incest? | 000437.docx | LEGALEASE-00117760-LEGALEASE-00117761 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 7316 | Toscano v. Delgado, 506 S.W.2d 317 | 20+85(1) | A grantor who remains in possession of property after he has delivered a deed to such property will ordinarily be presumed to be holding the land in subordination to the rights of his grantees, rather than adversely to such grantees' rights. Hemming v. Zimmerschitte, 4 Tex. 159 (1849); Petty v. Dunn, 419 S.W.2d 417 (Tex.Civ.App."Tyler 1967, writ ref'd n.r.e.). | A grantor who remains in possession of property after he has delivered a deed to such property will ordinarily be presumed to be holding the land in subordination to the rights of his grantees, rather than adversely to such grantees' rights. Vernon's Ann.Civ.St. art. 5510. | Does a grantor who remains in possession of property after he has delivered the deed to such property hold such property adversely? | 000530.docx | LEGALEASE-00117619-LEGALEASE-00117620 | SA, Sub | 0.25 | 0 | 0 | 1 | 1 | |
| 7317 | Ayissi-Etoh v. Fannie Mae, 712 F.3d 572 | 237+1 | To meet the requirements for defamation under D.C. law, a plaintiff must prove (i) that he was the subject of a false and defamatory statement; (ii) that the statement was published to a third party; (iii) that publishing the statement was at least negligent; and (iv) that the plaintiff suffered either actual or legal harm. See Crowley v. North American Telecommunications Association, 691 A.2d 1169, 1173 n. 2 (D.C.1997). | Under District of Columbia law, to meet the requirements for defamation, a plaintiff must prove (1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm. | Is harm a necessary element of a defamation claim? | 000561.docx | LEGALEASE-00117658-LEGALEASE-00117659 | Condensed, SA | 0.2 | 0 | 1 | 0 | 1 | |
| 7318 | Hayes v. Irwin, 541 F. Supp. 397 | 289+408 | These provisions, however, are not exhaustive of what may create a partnership between two persons. Given the variety of relationships that have been deemed to be partnerships, it is difficult, if not impossible, to formulate an all-encompassing definition of partnership. Generally speaking, a partnership is a voluntary agreement between two or more persons to contribute their money, property, or skill to the operation of a joint business or common enterprise for their common benefit and to divide the profits and bear the losses in certain proportions. See Floyd v. Kicklighter, 139 Ga. 133, 76 S.E. 1011 (1912); Escoe v. Johnson, 110 Ga.App. 252, 138 S.E.2d 330 (1964); Russell v. Strain, 69 Ga.App. 654, 26 S.E.2d 460 (1943). A partnership may be created for a single venture or enterprise. An agreement to form a partnership need not be in writing, for the true determinant of a partnership is the objective intent of the parties involved. The language which is used is a primary factor in determining the intent of the parties with respect to any agreement, and when ascertained, it will prevail over all other considerations. Chalkley v. Ward, 119 Ga.App. 227, 166 S.E.2d 748 (1969). See also Kennedy v. Thruway Service City, Inc., 133 Ga.App. 858, 212 S.E.2d 492 (1975). | "Partnership" is a voluntary agreement between two or more persons to contribute their money, property, or skill to the operation of a joint business or common enterprise for their common benefit and to divide the profits and bear the losses in certain proportions. Ga.Code, SS 75-101, 75-102. | Is a partnership voluntary in nature? | Partnership - Memo 26 - JS.docx | ROSS-003310880-ROSS-003310882 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7319 | Snyder v. Callaghan, 168 W. Va. 265 | 233+524 | The theory of "cropper" or "halfer" law on which the respondent relies is sanctioned in states such as Virginia, North Carolina and South Carolina, see, e. g., Clark v. Harry, supra; Denton v. Strickland, 48 N.C. (3 Jones) 61 (1855); J. W. Green Co. v. Turbeville, 263 S.C. 456, 210 S.E.2d 743 (1974) but is not favored in this jurisdiction. See Wilson v. Riffle, 87 W.Va. 160, 104 S.E. 285 (1920). Generally, the law will imply a tenancy whenever there is ownership of the land on one hand and occupation by permission on the other. Hanks v. Price, 73 Va. (32 Gratt.) 107 (1879). The relation of landlord and tenant may be proved by very slight evidence, including the payment of rent, Virginia Mining & Import Co. v. Hoover, 82 Va. 449, 4 S.E. 689 (1886), but neither actual payment of rent nor an express contract to pay it is essential to the existence of a tenancy. Hanks v. Price, supra. Nor is it necessary that rent be paid in money; if it is paid in kind, it is rent in contemplation of law. Harvey Coal & Coke Co. v. Dillon, 59 W.Va. 605, 53 S.E. 928 (1905). | Relation of landlord and tenant may be proved by very slight evidence, including payment of rent, but neither actual payment of rent nor express contract to pay it is essential to existence of tenancy. | Could the relationship between the landlord and tenant be proved upon slight evidence? | Landlord and Tenant - Memo 42 - ANG.docx | ROSS-003285372-ROSS-003285373 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7320 | Stowe v. Fritzie Hotels, 44 Cal. 2d 416 | 213+8 | The chief distinction between a tenant and a lodger lies in the character of possession. A "tenant" has exclusive legal possession of premises and is responsible for their care and condition. A "lodger" has only the right to use the premises, subject to the landlord's retention of control and right of access to them. To make one a tenant, as respects an owner's liability for injuries sustained by occupant on the premises, he must have exclusive possession and control. Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947, 954; see also 64 Yale Law Journal 391-411. When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys to them, a person renting such a room is a lodger and not a tenant. Fox v. Windemere Hotel Apartment Co., 30 Cal.App. 162, 165, 157 P. 820. The word "apartment" in its usual and ordinary connotation signifies that its occupant acquires exclusive possession and is a tenant rather than a roomer. Washington Realty Co. v. Harding, D.C.Mun.App., 45 A.2d 785, 786. | Chief distinction between "tenant" and "lodger" lies in character of possession, and tenant has exclusive legal possession of premises and is responsible for their care and condition, whereas lodger has only right to use premises, subject to landlord's retention of control and right of access to them. | What is the distinction between a tenant and a lodger? | 000820.docx | LEGALEASE-00117952-LEGALEASE-00117954 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7321 | Robert Lawrence Co. v. Devonshire Fabrics, 271 F.2d 402 | 25T+113 | Finally, an doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars. Such policy has been consistently reiterated by the federal courts and we think it deserves to be heartily endorsed. See Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583; Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., supra, 2 Cir., 126 F.2d 978; Signal-Stat Corp. v. Local 475, 2 Cir., 1956, 235 F.2d 298, certiorari denied 1957, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428. See also Wabash R. Co. v. American Refrigerator Transit Co., 8 Cir., 1925, 7 F.2d 335, 351, certioari denied 1926, 270 U.S. 643, 46 S.Ct. 208, 70 L.Ed. 776. | Any doubts as to construction of Arbitration Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with original intention of parties and to help ease congestion of court calendars. 9 U.S.C.A. SS 2, 3. | Is arbitration a means to ease court congestion? | 001038.docx | LEGALEASE-00118039-LEGALEASE-00118040 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7322 | State of Nev. ex rel. Dep't of Ins. v. Contract Servs. Network, 873 F. Supp. 385 | 231H+1 | The Court finds that Bechtel is inapposite to this case. Unlike Bechtel, this case involves Nevada's industrial insurance law applied equally to all employers. Further, the Court finds that it has no effect on the bargaining process. This Court finds that Metropolitan Life applies to this case. States possess broad authority under the police power to regulate employment relationships in order to protect workers within the state. De Canas v. Bica, 424 U.S. 351, 356, 96 S.Ct. 933, 936"37, 47 L.Ed.2d 43 (1976). As a result, the Court finds that the NLRA does not preempt Nevada's Industrial Insurance Act. The fact that Nevada allows only two methods to comply with industrial insurance requirements does not mandate a different result. | States possess broad authority under police power to regulate employment relationship in order to protect workers within state. | Do states possess broad authority under police power to regulate employment relationship within the state? | 001361.docx | LEGALEASE-00117823-LEGALEASE-00117824 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7323 | Wilson v. C.I.R., 161 F.2d 661 | 289+421 | "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." | Generally, a "partnership" is created when persons join together their money, goods, labor, or skill for purpose of carrying on a trade, profession, or business, and when there is a community of interest in profits and losses. | "Are money, property, skill and labor required in a partnership?" | 022188.docx | LEGALEASE-00117785-LEGALEASE-00117786 | Condensed, SA | 0.05 | 0 | 1 | 0 | 1 | |
| 7324 | Ross v. Waters, 332 Ga. App. 623 | 401+2 | Under Georgia law, for the purpose of venue, a domestic corporation is deemed to reside in the county where its registered office or principal office is maintained, as shown by the records of the Secretary of State. OCGA " 14"2"510(b)(1). In tort actions, venue will also lie in the county where the cause of action arose, provided the corporation has an office and transacts business in that county. OCGA " 14"2"510(b)(3). "[T]he determination of venue must be based upon the facts as they exist at the time that suit is initiated, not as the facts may have existed at some previous point in time." (Citations omitted.) Savannah Laundry & Machinery Co. v. Owenby, 186 Ga.App. 130, 131, 366 S.E.2d 787 (1988). | The determination of venue must be based upon the facts as they exist at the time that suit is initiated, not as the facts may have existed at some previous point in time. | Is the determination of venue based on facts as they exist at the time the suit is initiated or that may have existed at some point in time? | Venue - Memo 32 - TH.docx | ROSS-003297170-ROSS-003297171 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 7325 | Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians, 471 U.S. 845 | 170B+2306 | The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a "federal question" under " 1331.Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action "arising under" federal law within the meaning of " 1331. The District Court correctly concluded that a federal court may determine under " 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction. | Question of whether Indian tribal court retained the power to compel non Indian property owner to submit to civil jurisdiction of tribal court in personal injury action was one to be answered by reference to federal law and, therefore, action for injunctive relief against a tribal court's exercise of jurisdiction was one "arising under" federal law over which federal district court had jurisdiction. 28 U.S.C.A. S 1331. | Which law regulates a tribes right to exercise authority over non Indians? | 019423.docx | LEGALEASE-00118237-LEGALEASE-00118238 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7326 | Merrion v. Jicarilla Apache Tribe, 455 U.S. 130 | 209+223 | Thus, the views of the three federal branches of government, as well as general principles of taxation, confirm that Indian tribes enjoy authority to finance their governmental services through taxation of non-Indians who benefit from those services. Indeed, the conception of Indian sovereignty that this Court has consistently reaffirmed permits no other conclusion. As we observed in United States v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710, 711, 42 L.Ed.2d 706 (1975), "Indian tribes within "Indian country" are a good deal more than "private, voluntary organizations." " They "are unique aggregations possessing attributes of sovereignty over both their members and their territory." Ibid. See, e.g., Worcester v. Georgia, 6 Pet. 515, 557, 8 L.Ed. 483 (1832); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation, 231 F.2d 89, 92, 99 (CA8 1956); Crabtree v. Madden, 54 F. 426, 428-429 (CA8 1893); Cohen, The Spanish Origin of Indian Rights in the Law of the United States, in The Legal Conscience 230, 234 (L. Cohen ed. 1960). Adhering to this understanding, we conclude that the Tribe's authority to tax non-Indians who conduct business on the reservation does not simply derive from the Tribe's power to exclude such persons, but is an inherent power necessary to tribal self-government and territorial management. | Indian tribe's authority to tax non-Indians who conduct business on reservation does not simply derive from tribe's power to exclude such persons, but is inherent power necessary to tribal self-government and territorial management. Indian Reorganization Act, § 16, 25 U.S.C.A. § 476. | Does an Indian tribe have inherent power to impose a tax? | 019427.docx | LEGALEASE-00118257-LEGALEASE-00118258 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7327 | Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463 | 209+110 | We agree with the Court of Appeals to the extent that its opinion rejects the first two of these arguments and reflects a judgment that Chapter 36 must be sustained against an Equal Protection Clause attack if the classifications it employs "rationally furthe[r] the purpose identified by the State." Massachusetts Bd. of Retirement v. Murgia, supra, at 314, 96 S.Ct., at 2567. It is settled that "the unique legal status of Indian tribes under federal law" permits the Federal Government to enact legislation singling out tribal Indians, legislation that might otherwise be constitutionally offensive. Morton v. Mancari, 417 U.S. 535, 551"552, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290. States do not enjoy this same unique relationship with Indians, but Chapter 36 is not simply another state law. It was enacted in response to a federal measure explicitly designed to readjust the allocation of jurisdiction over Indians. The jurisdiction permitted under Chapter 36 is, as we have found, within the scope of the authorization of Pub.L. 280. And many of the classifications made by Chapter 36 are also made by Pub.L. 280. Indeed, classifications based on tribal status and land tenure inhere in many of the decisions of this Court involving jurisdictional controversies between tribal Indians and the States, see, e. g., United States v. McBratney, 104 U.S. 621, 26 L.Ed. 869. For these reasons, we find the argument that such classifications are "suspect" an untenable one. The contention that Chapter 36 abridges a "fundamental right" is also untenable. It is well established that Congress, in the exercise of its plenary power over Indian affairs, may restrict the retained sovereign powers of the Indian tribes. See, e. g., United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303. In enacting Chapter 36, Washington was legislating under explicit authority granted by Congress in the exercise of that federal power | Unique legal status of Indian tribes under federal law permits the federal government to enact legislation singling out tribal Indians, which might otherwise be constitutionally offensive, but states do not enjoy the same unique relationship with Indians. U.S.C.A.Const. Amend. 14. | What is the status of Indian nations or tribes? | Indians - Memo 3 - JS.docx | LEGALEASE-00005593-LEGALEASE-00005595 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7328 | Chiriboga v. State Farm Mut. Auto. Ins. Co., 96 S.W.3d 673 | 401+40 | Texas's venue scheme divides venue into categories, including "general," "mandatory," and "permissive." Mandatory provisions trump permissive ones. See Wichita County v. Hart, 917 S.W.2d 779, 781 (Tex.1996); Allison v. Fire Ins. Exchg., 98 S.W.3d 227, 242 (Austin 2002, no pet. h.). Plaintiffs are accorded the right to choose venue first; as long as suit is initially filed in a county of proper venue (i.e., the county is at least a permissive venue and no mandatory provision applies), the plaintiff's venue choice cannot be disturbed. Wilson v. Tex. Parks & Wildlife Dep't, 886 S.W.2d 259, 261 (Tex.1994). However, if the county to which transfer is sought is a county of mandatory venue, then it is reversible error to deny a transfer. Hart, 917 S.W.2d at 781. On the other hand, if the dispute is between two counties of permissive venue, transferring the case is improper. Wilson, 886 S.W.2d at 262. In cases involving disputes over permissive venue, the entire record is reviewed for any probative evidence that venue was proper in the original county of suit. Id. | Plaintiffs are accorded right to choose venue first; as long as suit is initially filed in county of proper venue, that is, the county is at least a permissive venue and no mandatory provision applies, plaintiff's venue choice cannot be disturbed. | Does a plaintiff have the right to choose venue? | Venue - Memo 27 - TH.docx | ROSS-003281634-ROSS-003281636 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7329 | Oleen v. Oleen, 15 Utah 2d 326 | 228+822(3) | In Sampsell v. Holt, the father of the child sought to have a Nevada divorce decree which granted his former wife sole custody of their child changed so that he would be able to have its custody part of the time, was granted such change. This court upheld the jurisdiction of the trial court to change the custody award made in another state upon a showing of altered circumstances since the award was made in the foreign state and the best interest and welfare of the child justified such change. We there pointed out that in child custody cases the binding effect of a custody award of a foreign state is limited to the date and circumstances of its rendition. Child custody cases are highly equitable in character and the controlling factor in such cases is usually the best interest and welfare of the child. The policy that full faith and credit be given the decrees of other states is not a controlling factor where conditions arising subsequent to the foreign decree justify a change. | Policy that full faith and credit be given to decrees of other states is not controlling factor in child custody case where conditions arising subsequent to foreign decree justify change of custody. | What is the controlling factor in child custody cases? | Child Custody - Memo 6 - ANG.docx | ROSS-003298591-ROSS-003298592 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7330 | N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 362 U.S. 274 | 231H+1018 | Basic to the right guaranteed to employees in s 7 to form, join or assist labor organizations, is the right to engage in concerted activities to persuade other employees to join for their mutual aid and protection. Indeed, even before the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. s 101 et seq., and the Wagner Act, 49 Stat. 449, this Court recognized a right in unions to "use all lawful propaganda to enlarge their membership." American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189. However, the Taft-Hartley Act added another right of employees also guaranteed protection, namely, the right to refrain from joining a union, except as that right might be affected by an agreement authorized in s 8(a) (3).Thus tension exists between the two rights of employees protected by s 7"their right to form, join or assist labor organizations, and their right to refrain from doing so. This tension is necessarily quite real when a union employs economic weapons to organize employees who do not want to join the union. The Board held here that peaceful picketing is not lawfully employed as an economic weapon to further self-organization if its objective is "recognitional." The Board stated: "Because the object of the Union's picketing in this case was to force the Company to commit an act prohibited by the statute itself (that is, to recognize and contract with the Local although it was not the chosen representative of a majority of the Curtis Bros. employees) and directly to deprive the employees of a right expressly guaranteed to them by the same Act, there is no occasion here to balance conflicting interests or rights." 119 N.L.R.B. 232, 238.8 It therefore found no justification for the threat to the employees' job security which was thought to be inherent in the economic pressure directed against the employer by the picketing. It was this threat which was said to taint peaceful picketing as unlawful conduct to "restrain or | Basic to the right guaranteed to employees to form, join, or assist labor organizations, is the right to engage in concerted activities to persuade other employees to join for their mutual aid and protection. National Labor Relations Act, S 7 as amended by National Labor Relations Act, 1947, S 101, 29 U.S.C.A. S 157. | "Does an employee have a right to form, join, or assist labor organizations?" | 001407.docx | LEGALEASE-00118526-LEGALEASE-00118527 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7331 | Simpson v. Laytart, 962 S.W.2d 392 | 313+176 | Abuse of process differs from malicious prosecution in that malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification. Abuse of process, however, consists of "the employment of legal process for some other purpose than that which it was intended by the law to effect." Raine v. Drasin, Ky., 621 S.W.2d 895 (1981); Flynn v. Songer, Ky., 399 S.W.2d 491 (1966) | Abuse of process differs from malicious prosecution, in that malicious prosecution consists of commencing action or causing process to issue maliciously or without justification, while abuse of process consists of employment of legal process for some other purpose than that which it was intended by the law to effect. | How is an action for malicious prosecution distinguished from an action for abuse of process? | 001487.docx | LEGALEASE-00118601-LEGALEASE-00118602 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 7332 | Terada v. Eli Lilly & Co., 2015 IL App (5th) 140170 | 401+2 | The sole issue before us is whether venue is proper in St. Clair County under the second prong of section 2"101 of the Code, which is referred to as the transactional prong. Determining whether venue is proper under the transactional prong requires us to consider two key variables: the nature of the cause of action and the place where the cause of action springs into existence. Boxdorfer v. DaimlerChrysler Corp., 339 Ill.App.3d 335, 344, 274 Ill.Dec. 15, 790 N.E.2d 391 (2003). | Determining whether venue is proper under the transactional prong of venue statute, stating that venue is proper in the county in which the transaction or some part thereof occurred out of which cause of action arose, requires the court to consider two key variables: the nature of the cause of action and the place where the cause of action springs into existence. S.H.A. 735 ILCS 5/2-101. | What are the factors that determine whether venue is proper under the transactional prong? | Venue - Memo 33 - RM.docx | ROSS-003297884-ROSS-003297885 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 7333 | Lake Cty. Riverboat L.P. ex rel. FRGP v. Illinois Gaming Bd., 313 Ill. App. 3d 943 | 401+2 | Under transactional venue principles, two dependent variables must be analyzed to determine whether a particular venue is proper. Those variables are (1) the nature of the cause of action and (2) the place where the cause of action springs into existence. Guthrie v. Montana Department of Health & Environmental Sciences, 172 Mont. 142, 147, 561 P.2d 913, 916 (1977). The place where a transaction or some part thereof occurs causing an action to spring into existence is the place where "any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving" as part of the cause of action. People ex rel. Carpentier v. Lange, 8 Ill.2d 437, 441, 134 N.E.2d 266 (1956). This is generally the place where the parties' direct dealings occurred while in an adversarial position or where events occurred that altered the parties' legal relationship. Williams, 139 Ill.2d at 69, 150 Ill.Dec. 578, 563 N.E.2d 465. | Under transactional venue principles, two dependent variables must be analyzed to determine whether a particular venue is proper: (1) the nature of the cause of action and (2) the place where the cause of action springs into existence. | What are the factors that determine whether venue is proper under the transactional prong? | 001516.docx | LEGALEASE-00118464-LEGALEASE-00118465 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7334 | Pendergast v. Meade Elec. Co., 2013 IL App (1st) 121317 | 401+17 | However, the plaintiff's choice of forum is not entitled to such deference in all cases. Dawdy, 207 Ill.2d at 173, 278 Ill.Dec. 92, 797 N.E.2d 687. When a plaintiff chooses to litigate his cause of action in his home forum or in the forum in which his accident or injury occurred, it is reasonable to assume that the forum was chosen for reasons of convenience. Dawdy, 207 Ill.2d at 173, 278 Ill.Dec. 92, 797 N.E.2d 687. However, when the plaintiff is foreign to his chosen forum or the events that gave rise to the litigation did not occur in that forum, that assumption is less reasonable and his choice is afforded less deference. Dawdy, 207 Ill.2d at 173"74, 278 Ill.Dec. 92, 797 N.E.2d 687. In fact, our supreme court has said that under those circumstances, it is instead reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, which is disfavored. Dawdy, 207 Ill.2d at 174, 278 Ill.Dec. 92, 797 N.E.2d 687. | When a plaintiff chooses to litigate his cause of action in his home forum or in the forum in which his accident or injury occurred, it is reasonable to assume that the forum was chosen for reasons of convenience; however, when the plaintiff is foreign to his chosen forum or the events that gave rise to the litigation did not occur in that forum, that assumption is less reasonable and his choice is afforded less deference. S.H.A. 735 ILCS 5/2-101. | Does a plaintiffs choice of forum deserve less deference when the plaintiff is foreign to his chosen forum? | Venue - Memo 44 - RM.docx | ROSS-003283580-ROSS-003283582 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 7335 | Asplundh Tree Expert Co. v. Bates, 71 F.3d 592 | 25T+113 | The arbitration clause of the second employment agreement requires arbitration of "all claims, disputes and other matters in question arising out of or relating to this agreement or the breach hereof." Section 2 of the Arbitration Act, 9 U.S.C. " 2, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Id. at 24, 25, 103 S.Ct. at 941, 941"942 | Section of the Federal Arbitration Act providing for the validity and irrevocability of agreements to arbitrate is congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. 9 U.S.C.A. S 2. | Does the Federal Arbitration Act (FAA) favor arbitration agreements if state policies to the contrary exist? | 001699.docx | LEGALEASE-00118743-LEGALEASE-00118744 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7336 | Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161 | 209+245 | Pursuant to 28 U.S.C. " 2401(a), with few exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Civil actions include legal claims, equitable claims, and mixed claims. See Spannaus v. Dep't of Justice, 824 F.2d 52, 55 (D.C.Cir.1987). This general six-year statute of limitations, unlike an ordinary statute of limitation, "is a jurisdictional condition attached to the government's waiver of sovereign immunity." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir.2006) (quoting Spannaus v. Dep't of Justice, 824 F.2d at 55); 14 C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. " 3654, at 307"13 (3d ed. 1998) ("[A]n action against the government may be brought only in the particular court designated in the consent statute and within the time limits set out in the applicable statute, which means that a statute of limitations defense cannot be waived by the government[.]")(footnotes omitted).7 Because of the United States' sovereign immunity and because the United States may be sued only upon express congressional authorization, statutes of limitations and other limitations and conditions upon authorizations to sue are strictly construed; exceptions are not implied. See Thompson v. Dugan, 427 F.Supp. 342, 344 (E.D.Pa.1977). This six-year statute of limitations has been applied in civil actions against the United States brought by members of an Indian tribe under provisions of the General Allotment Act. See Christensen v. United States, 755 F.2d 705, 707"08 (9th Cir.1985) (holding that the six-year statute of limitations barred an action seeking monetary and injunctive relief against United States based on BIA's failure to provide access to Indian land allotment). When a claim by Indians to enforce property rights is based on federal common law, however, there is no applicable federal statute of limitations. See Oneida | When a claim by Indians to enforce property rights is based on federal common law, there is no applicable federal statute of limitations. | Is there a federal statute of limitations when a claim by Indians to enforce property rights is based on federal common law? | Indians - Memo 23 - TH.doc | LEGALEASE-00006247- LEGALEASE-00006248 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 7337 | Franklin Prescriptions v. The New York Times Co., 267 F. Supp. 2d 425 | 237+1.6 | The interest in reputation has been described as a "valuable asset in one's business or profession." Fitzpatrick v. Milky Way Prods., Inc., 537 F.Supp. 165, 171 (E.D.Pa.1982). Therefore, it does not strain logic that "the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by the defamatory publication." Id.; see also Osby v. A & E Tel. Networks, No. Civ.A.96"7347, 1997 WL 338855, at 3 (E.D.Pa. June 17, 1997) (explaining that the state where a plaintiff is domiciled is generally the state with a greater interest). Moreover, when a person claims that the defamation occurred by an aggregate communication, i.e. across multiple states, "the state of most significant relationship will usually be the state where the person was domiciled at the time...." Restatement (Second) Conflict of Laws " 150(2) (1971); Osby, 1997 WL 338855, at 3. | When person claims that defamation occurred by aggregate communication, i.e. across multiple states, state of most significant relationship, for purposes of Pennsylvania choice of law rules, will usually be state where person was domiciled at time. Restatement (Second) Conflict of Laws S 150(2). | What is aggregate communication in defamation? | 13360.docx | LEGALEASE-00081426- LEGALEASE-00081427 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7338 | Dep't of Transp. v. Webster, 230 N.C. App. 468 | 148+2.1 | Defendants contend that the trial court erred in not considering the effects of increased traffic on Rescue Lane. Although "[t]he state must compensate for property rights taken by eminent domain[,] damages resulting from the exercise of the police power are noncompensable." Barnes v. N.C. State Highway Comm'n, 257 N.C. 507, 514, 126 S.E.2d 732, 738 (1962) (citations and quotations omitted). | Although the state must compensate for property rights taken by eminent domain, damages resulting from the exercise of the police power are noncompensable. | Are damages resulting from the exercise of police power under eminent domain compensable? | 001539.docx | LEGALEASE-00118992- LEGALEASE-00118993 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 7339 | Highlanders v. Olsan, 77 Cal. App. 3d 690 | 30+3807 | Another principle which is applicable here is that, in construing the pleading under attack, both the trial court and the appellate court may consider the impact of information of which judicial notice has been taken. (Contractor's etc. Assn. v. Cal. Comp. Ins. Co. (1957) 48 Cal.2d 71, 75, 307 P.2d 626.) The appellate court may adopt a construction of judicially noticed material contrary to that which the trial court found persuasive. (Chas. L. Harney, Inc. v. State of California (1963) 217 Cal.App.2d 77, 31 Cal.Rptr. 524.) | In construing pleading to which demurrer has been filed, both trial court and appellate court may consider impact of information of which judicial notice has been taken and appellate court may adopt construction of judicially noticed material contrary to that which trial court found persuasive. | Are matters judicially noticed considered in construing pleadings? | 001585.docx | LEGALEASE-00119057- LEGALEASE-00119058 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 7340 | Peoples Energy Corp. v. Illinois Commerce Comm'n, 142 Ill. App. 3d 917 | 317A+101 | The mere fact that the thing sold by a company is water or gas or electricity or telephone service, such as are ordinarily sold by public utility companies, does not of itself render the seller a public utility. Mississippi River Fuel Corp. v. Illinois Commerce Commission (1953), 1 Ill.2d 509, 516, 116 N.E.2d 394, 398. In Mississippi River Fuel Corp., the court stated:A public utility implies a public use of an article, product or service, carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service to serve the public and treat all persons alike, without discrimination. * * * When once determined to be a public utility under the statute the company must furnish all who apply, and the service it furnishes must be without discrimination and without delay.1 Ill.2d 509, 516, 116 N.E.2d 394, 398. | Mere fact that thing sold by company is water or gas or electricity or telephone service, such as are ordinarily sold by public utility companies, does not itself render the seller a "public utility." | "Does the fact that a company sells heat, cold, water, electricity or any of the various other things usually sold by public utilities make an enterprise a public utility?" | 001596.docx | LEGALEASE-00118961- LEGALEASE-00118962 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7341 | Illinois Highway Transp. Co. v. Hantel, 323 Ill. App. 364 | 317A+101 | The weight and trend of authority in Illinois holds that a common carrier is one who undertakes for the public to transport from place to place such persons or the goods of such persons as choose to employ him for hire. Transformer Corp. of America v. Hinchcliff, 279 Ill.App. 152; Rathbun v. Ocean Acc. & Guar. Corp., Ltd., supra; McCusker v. Curtiss Wright Flying Service Inc., 269 Ill.App. 502; Beatrice Creamery Co. v. Fisher, supra. Concerning the further question and first assignment by the appellant of error on the part of the Chancellor below in holding under the factual situation presented that the busses operated by appellees were of a class not subject to the jurisdiction of the Illinois Commerce Commission under the provisions of the Illinois Utilities Act, the statute (Sec. 55a, par. 57, Public Utilities Act, Ct. 111 2/3, Ill.Rev.Stat.1943) relating to the operation of motor vehicles "along or upon any public street or highway in this State" applies to the "carriage of passengers for hire, indiscriminately accepting and discharging such persons as may offer themselves for transportation, along the course on which such vehicle is operated * * *." One of the recognized tests to be applied to the prevailing facts is whether or not the carrier serves all of the public alike, who apply to him for carriage. This distinction is thoroughly discussed in the case of Rathbun v. Ocean Acc. & Guar. Corp., Ltd., supra, and the authorities cited therein. In the case of Austin Bros. Transfer Co. v. Bloom, 316 Ill. 435, 147 N.E. 387, 388 a discussion of the distinction between private carriers and public or common carriers and what constitutes a public utility is set forth in succinct language. There, the question of whether or not a taxicab operator could lawfully furnish service to all members of the public who applied along a fixed route between Centralia and Sandoval, Illinois, in competition with a duly certificated company, without first having procured a Certificate of Convenience and Necessity | Whether a given business or industry is a "public utility" depends upon the public character of the business or service rendered which makes its regulation a matter of public consequence and concern because it affects the whole community. | Is the operation of an entity as a public utility determined by the character of the business in which it is engaged? | 001600.docx | LEGALEASE-00119010-LEGALEASE-00119012 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 7342 | Ying Li v. City of New York, 246 F. Supp. 3d 578 | 249+20 | As an initial matter, the Court notes that probable cause for malicious prosecution is different from probable cause for false arrest. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999) ("The defendants seem to conflate probable cause to arrest with probable cause to believe that [the plaintiff] could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim...."). For a malicious prosecution claim, probable cause to prosecute consists of "facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (citing Colon v. City of New York, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (N.Y. 1983)). Probable cause to prosecute is evaluated "in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." Drummond v. Castro, 522 F.Supp.2d 667, 677"78 (S.D.N.Y. 2007) (citations and quotation marks omitted). | For a malicious prosecution claim under New York law, probable cause to prosecute consists of facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty. | What constitute probable cause in a malicious prosecution claim? | 001803.docx | LEGALEASE-00118926-LEGALEASE-00118927 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7343 | Hill v. Trend Carpet, 154 Ga. App. 446 | 249+24(7) | "In an action to recover damages for an alleged malicious criminal prosecution, the plaintiff carries the burden of proving not only that such prosecution was maliciously carried on, but also that it was carried on without any probable cause." Darnell v. Shirley, 31 Ga.App. 764(1), 122 S.E. 252 (1924). See Code s 105-801. The grand jury's return of the indictment against the plaintiff is prima facie but not conclusive evidence that probable cause existed for the prosecution. Darnell v. Shirley, supra, at 765(7)(a), 122 S.E. 252. In addition, the defendant put forth considerable evidence indicating that the plaintiff played a central role in the conspiracy. The plaintiff offered nothing to rebut this evidence of probable cause. He merely offered an explanation for his conduct which was consistent with his innocence. It is undisputed, however, that his first attempt at such an explanation occurred when he took the witness stand at his criminal trial. Thus, all the information available to the defendant at the inception of that trial pointed to the plaintiff's guilt, and there is nothing which would support an inference that the defendant acted out of malice at any state of the investigation or prosecution. For these reasons, we hold that the trial court was correct in directing a verdict for the defendant. Accord, Morgan v. Mize, 118 Ga.App. 534(3), 164 S.E.2d 565 (1968); Brown v. Scott, 151 Ga.App. 366(3), 259 S.E.2d 642 (1979) | In an action to recover damages for an alleged malicious criminal prosecution, grand jury's return of indictment against plaintiff is prima facie but not conclusive evidence that probable cause existed for the prosecution. | "Is grand jury indictment a conclusive evidence of probable cause in a claim of malicious prosecution, in a criminal proceeding?" | 001817.docx | LEGALEASE-00118938-LEGALEASE-00118940 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7344 | Allison v. Dilsaver, 387 S.W.2d 206 | 289+408 | The first point for discussion is whether there was in fact a partnership or joint venture between the parties. The referee concluded as a matter of law that no partnership was formed between the plaintiff and defendant, and consequently that there was no partnership to which to account. We consider such a conclusion to be wholly unrealistic. Indeed, both parties seem to assume in this court that there was either a partnership or joint venture between the plaintiff and defendant; both of them argue their points in such terms. The two types of associated enterprise are, to be sure, very similar. A partnership is defined by statute simply as "an association of two or more persons to carry on as co-owners a business for profit," Sect. 358.060(1), and judicially as a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions. Van Hoose v. Smith, 355 Mo. 799, 803, 198 S.W.2d 23, 26[2]. A joint venture is defined as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge. Scott v. Kempland, Mo., 264 S.W.2d 349, 354[1]; Fish v. Fish, Mo.App., 307 S.W.2d 46, 49[2, 3]. Of the two kinds of business association, it is generally recognized that the joint venture is the more informal, and that a contract for a joint venture may be implied without any showing of a specific or formal agreement. Fish v. Fish, supra, 307 S.W.2d at 50, and cases cited note 5. It has been noted that the two forms of enterprise have many common characteristics, and that they are governed by similar, if not identical, rules of law. Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, 116[13"15]. Where the participants in the association jointly purchase goods or other property in a particular instance for resale, with a view to dividing the profits arising | Partnership is defined judicially as contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide profits and bear loss in certain proportions. Section 358.060, subd. 1 RSMo 1959, V.A.M.S. | How many people does it take to form a partnership? | 002300.docx | LEGALEASE-00119156-LEGALEASE-00119157 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 7345 | Ralph v. State Dep't of Nat. Res., 171 Wash. App. 262 | 401+4 | "The nature of a claim for relief is determined by the facts alleged in the complaint and as adduced thereunder, and by the relief requested."In rem proceedings are local in nature, whereas a transitory action is one which at common law may be tried wherever personal service can be obtained. Ralph asserts that because he seeks only monetary damages, his claims are transitory and King County is an appropriate venue. He relies on McLeod v. Ellis, Washington State Bank v. Medalia Healthcare LLC, and Silver Surprize, Inc. v. Sunshine Mining Co. | In rem proceedings are local in nature, whereas a transitory action is one which at common law may be tried wherever personal service can be obtained. | Can transitory actions be tried wherever personal service can be obtained? | Venue - Memo 52-ANG.docx | ROSS-003284529-ROSS-003284530 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7346 | Rosebud Enterprises v. Idaho Pub. Utilities Comm'n, 128 Idaho 609 | 145+1 | Congress passed PURPA in 1978 in response to the prevailing energy crisis. Its purpose was to encourage the promotion and development of renewable energy technologies as alternatives to fossil fuels and the construction of new generating facilities by electric utilities. Section 210 of PURPA requires that electric utilities offer to purchase power produced by cogenerators or small power producers that obtain qualifying facility (QF) status under section 201. 16 U.S.C. " 824a-3(a)(2). However, under PURPA section 210(b) the rate to be paid for such power is not to exceed the "incremental cost to the utility of alternative electric energy." Id. at " 824a-3(b), (d). | Purpose of Public Utility Regulatory Policies Act (PURPA) was to encourage promotion and development of renewable energy technologies as alternatives to fossil fuels and construction of new generating facilities by electric utilities. Public Utility Regulatory Policies Act of 1978, S 2 et seq., 16 U.S.C.A. S 2601 et seq. | What is the purpose of Public Utility Regulatory Act? | Electricity - Memo 10 - JS.docx | ROSS-003303054-ROSS-003303055 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 7347 | Merlo v. Pub. Serv. Co. of N. Illinois, 381 Ill. 300 | 145+14(1) | It is fundamental that plaintiffs could recover only by proof of the specific charges of negligence in their complaint and that it must further appear that such negligence proximately contributed to or caused the deaths for which damages are sought. It is also fundamental that proof of negligence consists in showing a duty to the person injured, a breach of that duty, and an injury proximately resulting from such breach. Here the duty charged against the Public Service Company was its failure "properly to insulate, guard and protect said wires with a durable insulation and not allow the same to be or become bare and unprotected, and in a sagging condition on said poles." The negligence charged against it was that it did not properly insulate, guard and protect said wires, and "wilfully and negligently permitted said wires to be and become bare and unprotected in places, and in a sagging condition on said poles, and to remain in this condition on said date and for a long time prior thereto, although it knew or by the exercise of reasonable care should have known of said condition, and should have known that in case persons in the public street there should come in contact with said wires, they were likely to be injured or killed." The question then to be determined first is, did defendant Public Service Company owe a duty to decedents to insulate said wires and not allow them to become bare and unprotected and in a sagging condition on said poles? This court, in the case of Austin v. Public Service Company of Northern Illinois, 299 Ill. 112, 132 N.E. 458, 460, 17 A.L.R. 795, in discussing the duty as to the required care in the transmission and distribution of electric current, said: "Electricity is a silent, deadly, and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. With the advance of civilization electricity has become a necessity, and in order to make it useful to man it must be carried from place to place. The | Persons engaged in transmission of electricity are not "insurers" of safety of public, but they are bound to know the dangers incident to handling electricity and to guard against such dangers by exercise of care commensurate with them. | Are persons engaged in the transmission of electricity insurers of the safety of the public? | Electricity - Memo 25 - RK.docx | ROSS-003296958-ROSS-003296962 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7348 | Glade v. Dietert, 156 Tex. 382 | 386+12 | Respondents insist that both the City and Glade were trespassers in wrongfully entering upon their property, causing the damage complained of. Conceding the correctness of this allegation, this would not render the contractor liable because until the property of respondent was taken and appropriated they occupied the position of an adjoining landowner. Essentially there is no difference so far as the liability of the contractor is concerned. A trespass was committed in Russell v. General Construction Co., Tex.Civ.App., 59 S.W.2d 1109, writ refused, also in Muskatell v. Queen City Construction Co.; Newton Auto Salvage Co. v. Herrick; Blair v. Waldo and others, supra. To constitute a trespass "entry upon another's land need not be in person, but may be made by causing or permitting a thing to cross the boundary of the premises." 87 C.J.S., Trespass, s 13. | To constitute trespass, entry upon another's land need not be in person, but may be made by causing or permitting a thing to cross boundary of premises. | Can a person be held liable for trespass if they cause or permit a thing to cross the boundary of a property? | 002328.docx | LEGALEASE-00119204-LEGALEASE-00119205 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7349 | People v. Sims, 32 Cal. 3d 468 | 15A+1458 | In seeking to determine whether a DSS fair hearing decision may have collateral estoppel effect, this court also finds appropriate guidance in United States v. Utah Constr. Co. (1966) 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642. There, the United States Supreme Court stated: "Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. [Fn. omitted.]" (Id., at pp. 421"422, 86 S.Ct. at 1560.) Collateral estoppel may be applied to decisions made by administrative agencies "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate ...." (Id., at p. 422, 86 S.Ct. at 1560, emphasis added.) This standard formulated by the Supreme Court is sound, and it comports with the public policy underlying the collateral estoppel doctrine "of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.]" (Bernhard v. Bank of America (1942) 19 Cal.2d 807, 811, 122 P.2d 892.) | Collateral estoppel may be applied to decisions made by administrative agencies when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. | Is the doctrine of collateral estoppel applicable to administrative proceedings? | 002359.docx | LEGALEASE-00119436-LEGALEASE-00119437 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7350 | Gary Van Zeeland Talent v. Sandas, 84 Wis. 2d 202 | 231H+123 | The same thing could have been done by Sandas in the present case. The list was readily reproducible. The tenor of the Van Zeeland brief on this appeal reveals that much of Van Zeeland's concern is not over the utility of the customer list to Sandas or over the deprivation of the exclusive use of that list by Van Zeeland, but rather the concern that Sandas, in the course of his employment, had acquired such expertise and know-how in the placement of musical groups as to make him a significant competitor. Much of the Van Zeeland brief is concerned with the fact that Sandas came to Van Zeeland as a twenty-one-year-old impoverished cookware salesman but has now left the organization after having been trained by Van Zeeland to such an extent that he is an expert in talent placement. The law, however, does not protect against that type of unfairness, if unfairness it be. Rather, it encourages the mobility of workers; and so long as a departing employee takes with him no more than his experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse. Abbott, supra, 33 Wis.2d at 463, 147 N.W.2d 529; Annot., 28 A.L.R.3d 7, sec. 4 (1969) | Law encourages mobility of workers; so long as departing employee takes with him no more than his experience and intellectual development which has ensued while being trained by employer, and no trade secrets or processes are wrongfully appropriated by employee, law affords employer no recourse in regard to a former employee's subsequent competition against employer. | Do state laws favor the mobility of workers? | 001432.docx | LEGALEASE-00119460-LEGALEASE-00119461 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7351 | Conti v. United States, 291 F.3d 1334 | 148+2.1 | As the Court of Federal Claims recognized, this court has developed a two-part test to evaluate claims that a governmental regulation constitutes a taking of private property without just compensation. See M & J Coal, 47 F.3d at 1153"54; Karuk Tribe v. Ammon, 209 F.3d 1366, 1374 (Fed.Cir.2000). First, a court must evaluate whether the claimant has established a "property interest" for purposes of the Fifth Amendment. See M & J Coal, 47 F.3d at 1154. Second, once a court has determined that a property interest exists, it must determine whether a taking occurred. In that regard, we have stated that "it is often important to determine at the outset whether a particular claimed taking was "categorical" or not." Rith Energy, Inc. v. United States, 247 F.3d 1355, 1362 (Fed.Cir.2001). A categorical taking has been defined as one in which "all economically viable use, i.e., all economic value has been taken by the regulatory imposition." Palm Beach Isles Assocs. v. United States, 231 F.3d 1354, 1357 (Fed.Cir.2000). A categorical taking is distinct from a taking "that is the consequence of a regulatory imposition that prohibits or restricts only some of the use that would otherwise be available to the property owner but leaves the property owner with substantial economic use." Id. When a taking is determined to be non-categorical, the court must embark on a fact-based inquiry in which it applies the standard promulgated by the Supreme Court in Penn Central to evaluate whether the governmental action at issue constituted a cognizable taking of the property interest at issue. Rith Energy, 247 F.3d at 1362. The Penn Central analysis involves "several factors that have particular significance." 438 U.S. at 124. Those factors are the character of the governmental action, the economic impact of the action on the claimant, and the extent to which the action has interfered with the claimant's distinct, investment-backed expectations. Id. However, if a claimant fails | A "categorical taking," which is defined as one in which all economically viable use has been taken by the regulatory imposition, is distinct from a taking that is the consequence of a regulatory imposition that prohibits or restricts only some of the use that would otherwise be available to the property owner but leaves the property owner with substantial economic use. U.S.C.A. Const.Amend. 5. | What does the term categorical taking encompass? | 002407.docx | LEGALEASE-00119508-LEGALEASE-00119509 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7352 | Warren Tr. v. United States, 107 Fed. Cl. 533 | 148+2.1 | A noncategorical taking "fall[s] short of eliminating all economically beneficial use of property." Consumers Energy Co. v. United States, 84 Fed.Cl. 152, 156 (2008) (citing Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)). A noncategorical taking is the "consequence of a regulatory imposition that prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use...." Palm Beach, 231 F.3d at 1357. "Where a regulation places limitation on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors...." Palazzolo, 533 U.S. at 617, 121 S.Ct. 2448 (citing Penn Cent., 438 U.S. at 124, 98 S.Ct. 2646). The Supreme Court in Penn Central extrapolated from prior decisions "factors that have particular significance," namely: (1) the economic impact of the regulation on the plaintiff; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. 438 U.S. at 124, 98 S.Ct. 2646; see also Lingle, 544 U.S. at 540, 125 S.Ct. 2074 (stating that the Penn Central inquiry "turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests"). Such a test for regulatory takings requires a comparison of "the value that has been taken from the property with the value that remains in the property...." Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). While the Supreme Court's regulatory takings jurisprudence "cannot be characterized as unified," courts "aim [] to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." | A "noncategorical taking" of property effected through regulation falls short of eliminating all economically beneficial use of property, and is the consequence of a regulatory imposition that prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use. U.S. Const. Amend. 5. | What is a non-categorical taking? | 002409.docx | LEGALEASE-00119510-LEGALEASE-00119512 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7353 | Ziober v. BLB Res., 839 F.3d 814 | 25T+121 | Our analysis begins with more than three decades of Supreme Court precedent recognizing the "liberal federal policy favoring arbitration agreements," as established by the Federal Arbitration Act (FAA). Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also CompuCredit Corp. v. Greenwood, """U.S. """", 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012). That pro-arbitration policy extends to arbitration agreements in the employment contracts of non-transportation workers. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The FAA requires courts to " "rigorously enforce" arbitration agreements according to their terms," including agreements to arbitrate claims arising under federal statutes. Am. Express Co. v. Italian Colors Rest., """ U.S. """", 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)); see also CompuCredit, 132 S.Ct. at 669. Section 3 of the FAA specifically directs federal district courts to stay proceedings and compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. " 3. | The Federal Arbitration Act (FAA) requires courts to rigorously enforce arbitration agreements according to their terms, including agreements to arbitrate claims arising under federal statutes. 9 U.S.C.A. S 3. | Does the Federal Arbitration Act require courts to enforce arbitration agreements according to their terms? | Alternative Dispute Resolution - Memo 267 - RK.docx | ROSS-003301667-ROSS-003301668 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7354 | Picard v. Credit Sols., 564 F.3d 1249 | 25T+114 | The FAA creates a strong federal policy in favor of arbitration. See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir.2003). The FAA "provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause." " Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003) (citing Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987)). Accordingly, courts "rigorously enforce" arbitration agreements. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir.2004) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). | Federal Arbitration Act (FAA) provides for enforcement of arbitration agreements within full reach of the Commerce Clause. U.S.C.A. Const. Art. 1, S 8, cl. 3; 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause? | 002777.docx | LEGALEASE-00119712-LEGALEASE-00119713 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7355 | Crook v. Sheehan Enterprises, 740 S.W.2d 333 | 386+10 | Trespass is the unauthorized entry by a person upon the land of another, regardless of the degree of force used, even if no damage is done, or the injury is slight. Mawson v. Vess Beverage Co., 173 S.W.2d 606, 612 (Mo.App.1943). Plainly, plaintiffs' evidence, if believed, establishes that defendant trespassed on plaintiffs' land. Defendant, however, has persuaded the circuit court that the pertinent issue is not whether defendant trespassed on plaintiffs' land but whether defendant trespassed on plaintiffs' sewer line. Citing Cover v. Phillips Pipe Line Company, 454 S.W.2d 507 (Mo.1970), defendant asserts one cannot be held liable in trespass for damage to a pipeline unless it is established he knew or should have known of the pipline's existence and location. Cover, however, dealt with one who was lawfully on the land when he struck an underground pipeline with a bulldozer. The jury in the present case has determined defendant was not lawfully on plaintiffs' land when its employee damaged plaintiffs' sewer line. Cover, therefore, is factually inapposite. | "Trespass" is unauthorized entry by person upon land of another, regardless of degree of force used, even if no damage is done, or injury is slight. | "Can every unauthorized entry be a trespass, regardless of degree of force used?" | 002962.docx | LEGALEASE-00119809-LEGALEASE-00119810 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7356 | Arakelian v. Omnicare, 735 F. Supp. 2d 22 | 231H+7 | With respect to employment contracts, "the matters of performance and breach are to be determined by the law of the place of performance, or, in the alternative, by the law of the state having the most significant contacts with the matter in dispute." Tischmann v. ITT/Sheraton Corp., 882 F.Supp. 1358, 1366 (S.D.N.Y.1995) (quoting Frishberg v. Esprit de Corp., 778 F.Supp. 793, 801 (S.D.N.Y.1991)); see Peters v. MCI Telecomms. Corp., 685 F.Supp. 411, 412 (S.D.N.Y.1988). At bottom, "when making a choice of law determination in contract cases, the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which gain relevancy in defining State interest are those which relate to the particular law in conflict." Caribbean Const. Servs. & Assocs. v. Zurich Ins. Co., 267 A.D.2d 81, 83, 700 N.Y.S.2d 129 (N.Y.App. Div. 1st Dep't 1999); see Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599, 607"08 (2d Cir.2001) | With respect to employment contracts, matters of performance and breach are to be determined by the law of the place of performance, or, in the alternative, by the law of the state having the most significant contacts with the matter in dispute. | "With respect to employment contracts, does the matters of performance and breach are to be determined by the law of the place of performance?" | 003269.docx | LEGALEASE-00119567-LEGALEASE-00119568 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7357 | Nussbaum v. Mortg. Serv. Am. Co., 913 F. Supp. 1548 | 172H+77 | Florida Statute " 665.074(1) expressly authorizes savings and loan associations to charge borrowers for reasonable expenses incurred in making real estate loans, including "taxes or charges imposed upon or in connection with the making and recording of any loan." Fla.Stat. " 665.074(1). Florida Statute " 687.12(1) extends the provisions of " 665.074 to all lenders licensed under Florida law, including mortgage companies. See, South Pointe Development Co. v. Capital Bank, 573 So.2d 939, 940 (Fla.Dist.Ct.App.1991). Taken together, these Florida statutes, by their plain language, permit lenders to pass on Florida's intangible tax to borrowers. Florida's intangible tax, therefor, comes under yet another TILA exclusion to the finance charge definition. | Lenders are permitted to pass Florida's intangible tax on to borrowers, in light of statutes authorizing lenders to charge borrowers for reasonable expenses incurred in making real estate loans, including taxes or charges imposed upon or in connection with making and recording of any loan. West's F.S.A. S 687.12(1); F.S.1990 Supp. S 665.074(1). | Can loan agreements permit recovery of reasonable expenses? | Consumer Credit- Memo 10 - MS.docx | LEGALEASE-00008524-LEGALEASE-00008525 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 7358 | Rhodes v. Smithers, 939 F. Supp. 1256 | 249+21(2) | With respect to the advice of counsel defense, the West Virginia Supreme Court of Appeals has stated that "A suit, action or proceeding, prosecuted in good faith, and on advice of reputable counsel obtained after a fair and accurate disclosure to counsel of the facts on which advice is sought, may not serve as the basis of an action for malicious prosecution." Hunter v. Beckley Newspapers Corp., Syl.Pt. 5, 129 W.Va. 302, 40 S.E.2d 332 (1946). Thus, the defense is applicable where the evidence discloses that the attorney consulted had the benefit of all pertinent information, believed it sufficient to support the prosecution, and defendant acted in reliance on counsel's advice. Truman v. Fidelity & Casualty Co. of N.Y., 146 W.Va. 707, 123 S.E.2d 59, 70"71 (1961). The defense operates regardless of whether the advice was obtained from private counsel or a public prosecutor. See id. 123 S.E.2d at 71. | Under West Virginia law, defense of advice of counsel is applicable in action for malicious prosecution where evidence discloses that attorney consulted had benefit of all pertinent information, believed it sufficient to support prosecution, and defendant acted in reliance on counsel's advice. | When does the advice of counsel defense apply to a malicious prosecution claim? | Malicious Prosecution - Memo 58 - JS.docx | LEGALEASE-00008628-LEGALEASE-00008629 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 7359 | In re Trampush, 552 B.R. 817 | 366+1 | Subrogation is an equitable doctrine intended to "avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." Rock River Lumber Corp. v. Universal Mortg. Corp., 82 Wis.2d 235, 262 N.W.2d 114, 116 (1978). Equitable subrogation for advances made to a debtor depends on one of three conditions: (1) the lender was secondarily liable, (2) the lender loaned money to protect his own interests, or (3) there was an agreement that the lender was to have security on the debt. Id. at 117. Subrogation is applied or denied on equitable principles. The object is to do "substantial justice independent of form or contract relation between the parties." Id. | Under Wisconsin law, subrogation is an equitable doctrine intended to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another. | "What is the doctrine of ""subrogation""?" | Subrogation - Memo 31 - VP.docx | ROSS-003298046-ROSS-003298047 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7360 | Bekele v. Lyft, 199 F. Supp. 3d 284 | 170B+3053 | To determine whether a valid agreement to arbitrate exists, federal courts generally "apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); see also Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir.2005) (explaining that "principles of state contract law control the determination of whether a valid agreement to arbitrate exists"). Under Massachusetts law, the formation of a contract requires a definite offer, acceptance, and consideration. Vadnais v. NSK Steering Sys. Am., Inc., 675 F.Supp.2d 205, 207 (D.Mass.2009). Formation of a contract is judged by the objective conduct of the parties, rather than their subjective intent. Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass.App.Ct. 582, 596 n. 35, 864 N.E.2d 518 (2007). A contract may be binding on an employee in the context of an at-will employment relationship even if the agreement is not express and in writing. See, e.g., Ellerbee v. Gamestop, Inc., 604 F.Supp.2d 349, 354 (D.Mass.2009) (citing O'Brien v. New England Tel. Co., 422 Mass. 686, 691, 664 N.E.2d 843 (1996)). An employee's "continued employment [may] constitute[ ] adequate consideration for the contract." Id. (citing O'Brien, 422 Mass. at 691, 664 N.E.2d 843). | To determine whether a valid agreement to arbitrate exists, federal courts generally apply ordinary state-law principles that govern the formation of contracts. | Which principles of law do courts apply to determine validity of arbitration agreement? | 002653.docx | LEGALEASE-00120043-LEGALEASE-00120044 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7361 | Kelly v. Exxon Corp., 35 Md. App. 272 | 249+24(6) | Exxon concedes that the termination of the criminal proceeding against Kelly by way of nolle prosequi was sufficient to permit Kelly to file an action for malicious prosecution. Norvell v. Safeway Stores, Inc., 212 Md. 14, 128 A.2d 591 (1957). It is undisputed that dismissal by a magistrate at a preliminary hearing is prima facie evidence of a want of probable cause while acquittal after a trial is not. Banks v. Montgomery Ward & Company, Inc., supra. More difficult to ascertain is what the effect is, if any, of a nolle prosequi in the determination of the issue of probable cause. Exxon argues that the trial court erred when it instructed the jury as follows:In considering whether or not there was a lack of probable cause in this case for the bringing of a larceny charge against the plaintiff by the defendants, the fact that the charges against the defendants were nol prossed by the prosecution may be considered as evidence of want of probable cause. It does not mean it is; it just may be considered as evidence of probable cause along with other elements in the case.' | Dismissal by a magistrate at a preliminary hearing is prima facie evidence of want of probable cause for prosecution while acquittal after a trial is not. | Is dismissal of charges at a preliminary hearing prima facie evidence of want of probable cause for a malicious prosecution action? | Malicious Prosecution - Memo 67 - JS.docx | ROSS-003283770-ROSS-003283771 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 7362 | Craycroft v. Pippin, 245 S.W.3d 804 | 249+24(6) | We believe the circuit court erred by concluding that the district court's prior finding of probable cause at the preliminary hearing per se and conclusively established the existence of probable cause barring the instant malicious prosecution action. Rather, we hold that a prior finding of probable cause at a preliminary hearing merely raises a rebuttable presumption that probable cause exists in the defense of a malicious prosecution action. See Dean v. Noel, 24 Ky.L.Rptr. 969, 70 S.W. 406 (1902); 52 Am.Jur. 2D Malicious Prosecution " 62 (2000); cf. Davidson v. Castner"Knott Dry Goods Co., Inc., 202 S.W.3d 597 (Ky.App.2006)(holding that indictment by grand jury raises a rebuttable presumption of probable cause). Simply stated, a prior finding of probable cause at a preliminary hearing only raises a presumption that may be rebutted by evidence. As such, the circuit court erroneously concluded that the district court's prior finding of probable cause at the preliminary hearing in Action No. 03"CR"0611 was conclusive as a matter of law upon the issue of the existence of probable cause. 54 C.J.S. Malicious Prosecution " 31 (2005). Upon remand, the circuit court should reconsider its decision regarding the existence of probable cause and, in so doing, should consider the district court's prior finding of probable cause as raising a rebuttable presumption of the existence of probable cause. To the extent there is other evidence on this issue, the circuit court must consider same before rendering a decision. | A prior finding of probable cause in criminal court preliminary hearing raises, in a malicious prosecution action, only a presumption of probable cause, which may be rebutted by evidence. | Does a prior finding of probable cause in a preliminary hearing create only a rebuttable presumption of probable cause in a malicious prosecution claim? | Malicious Prosecution - Memo 68 - JS.docx | ROSS-003283938-ROSS-003283939 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 7363 | Sanderson v. Heath Mesa Homeowners Ass'n, 183 P.3d 679 | 386+3 | The elements of the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property. Public Serv. Co. v. Van Wyk, 27 P.3d 377, 389 (Colo.2001). "A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property." Hoery, 64 P.3d at 217. | A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property. | "Can a landowner who sets in motion a force which, in the usual course of events, damages the property of another, be held liable for trespass?" | Trespass - Memo 71 - TH.docx | ROSS-003288596-ROSS-003288597 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7364 | Golden Years Homestead v. Buckland, 557 F.3d 457 | 249+31 | Nor was the entry of summary judgment on the state-law claims substantively improper. Under Indiana law, "[t]he elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." Crosson v. Berry, 829 N.E.2d 184, 189 (Ind.Ct.App.2005). Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances. F.W. Woolworth Co. v. Anderson, 471 N.E.2d 1249, 1254 (Ind.Ct.App.1985). | Malice, as required to establish a malicious prosecution claim, under Indiana law, may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances. | Can evidence of personal animosity show the malice required for malicious prosecution? | 003360.docx | LEGALEASE-00120256-LEGALEASE-00120257 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7365 | Ying Li v. City of New York, 246 F. Supp. 3d 578 | 249+35(1) | Furthermore, "New York law does not require a malicious prosecution *608 plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence." Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004) (citing Smith"Hunter v. Harvey, 95 N.Y.2d 191, 195"96, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)). "[A]ny final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action," Smith"Hunter, 95 N.Y.2d at 195"96, 712 N.Y.S.2d 438, 734 N.E.2d 750, unless the disposition was "inconsistent with the innocence of the accused," Cantalino v. Danner, 96 N.Y.2d 391, 396, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001). See Rothstein, 373 F.3d at 275 (discussing New York Law regarding the favorable termination element and citing to both Smith"Hunter, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750, and Cantalino, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164); see also Stampf v. Long Island R. Co., 761 F.3d 192, 201 (2d Cir. 2014) (applying Smith"Hunter, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)) | Under New York law, any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action, unless the disposition was inconsistent with the innocence of the accused. | When does the termination of a case qualify as a favorable termination for purposes of a malicious prosecution action? | 003368.docx | LEGALEASE-00120242-LEGALEASE-00120243 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7366 | Garris v. Governing Bd. of S.C. Reinsurance Facility, 333 S.C. 432 | 15A+1062 | In the absence of any statutory or other controlling provision, the common-law rule that a majority of a whole board is necessary to constitute a quorum applies, and the board may do no valid act in the absence of a quorum. Prosser v. Seaboard Air Line R. Co., 216 S.C. 33, 44, 56 S.E.2d 591, 595 (1949); Gaskin v. Jones, 198 S.C. 508, 513, 18 S.E.2d 454, 456 (1942). A member who recuses himself or is disqualified to participate in a matter due to a conflict of interest, bias, or other good cause may not be counted for purposes of a quorum at the meeting where the board acts upon the matter. Talbot v. James, 259 S.C. 73, 82, 190 S.E.2d 759, 764 (1972); King v. New Jersey Racing Comm'n, 103 N.J. 412, 511 A.2d 615, 618 (N.J.1986). | In the absence of any statutory or other controlling provision, the common-law rule that a majority of a whole administrative board is necessary to constitute a quorum applies, and the board may do no valid act in the absence of a quorum. | Is a majority of a whole administrative board necessary to constitute a quorum? | 002986.docx | LEGALEASE-00120498-LEGALEASE-00120499 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7367 | In re Zalewski's Estate, 177 Misc. 384 | 221+176 | It is a familiar principle of law that foreign consular representatives are deemed international attorneys in fact for their nationals (The Bello Corrunes, 6 Wheat. 152, 158, 5 L.Ed. 229; Butler: N. Y. Surrogate Law & Practice " 1751), but whereas it has been held that irrespective of the terms of any specific treaty, and solely by virtue of their offices, they possess authority to guard the property of their respective nationals (Rocca v. Thompson, 223 U.S. 317, 331, 32 S.Ct. 207, 56 L.Ed. 453; Matter of D'Adamo's Estate, 212 N.Y. 214, 223, 106 N.E. 81, L.R.A.1915D, 373), they, like the usual variety of attorneys in fact, must be able to point to some express authorization to warrant their exercise of more extensive powers. Such additional authority, if conferred, must be found in the treaties between their governments and that of the United States. | Foreign consular representatives, like usual attorneys-in-fact, must point to some express authorization to warrant their exercise of more extensive powers in acting for their nationals than their authority by virtue of their offices to guard the property of their nationals, and such additional authority, if conferred, must be found in treaties between foreign government and United States government. | Are foreign consular representatives deemed international attorneys in fact for their nationals? | 003024.docx | LEGALEASE-00120539-LEGALEASE-00120540 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 7368 | Alabama Power Co. v. Cullman Cty. Elec. Membership Corp., 234 Ala. 396 | 317A+111 | A corporation organized under general laws applicable to all corporations may set out a purpose and have the power to engage in the utility business, but not be a utility until it engaged in such service or holds itself out to do so. Hinds County Water Co. v. Scanlon, 159 Miss. 757, 132 So. 567; Allen v. Railroad Commission, 179 Cal. 68, 175 P. 466, 8 A.L.R. 249, note, page 286. | A corporation organized under general laws applicable to all corporations may set out a purpose and have the power to engage in utility business, but not be a utility, until it engages in such service or holds itself out to do so. | "When is a corporation, organized under the general laws applicable to all corporations, having the power to engage in the utility business a utility?" | 003489.docx | LEGALEASE-00120315-LEGALEASE-00120316 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 7369 | Rowley Plastering Co. v. Marvin Gardens Dev. Corp., 180 Ariz. 212 | 366+1 | Rowley contends that under the doctrine of equitable subrogation it is entitled to restitution for its payment to plaintiff. The doctrine of equitable subrogation is founded upon principles of equity; its purpose is to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it. Kilpatrick v. Superior Ct., 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970). "As now applied, it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." Id. at 423, 466 P.2d at 28 (quoting Fenly v. Revell, 170 Kan. 705, 228 P.2d 905, 908-09 (1951)). Equitable subrogation is used to enforce restitution in order to prevent unjust enrichment. Id. | Doctrine of equitable subrogation is founded upon principles of equity; its purpose is to compel ultimate payment of debt by one who in justice and good conscience ought to pay it, and it is broad enough to include every instance in which one person, not acting as mere volunteer or intruder, pays debt for which another is primarily liable. | Can equitable subrogation be used to enforce restitution? | 003576.docx | LEGALEASE-00120372-LEGALEASE-00120373 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7370 | Goedmakers v. Goedmakers, 520 So. 2d 575 | 401+4 | There can be no doubt that this is the correct construction and application of section 47.011. Although the venue statute gives plaintiffs the right to sue in any of three specific forums, that right is subject to the limitations of the common law distinctions between local and transitory actions. | Venue statute gives plaintiff the right to sue in any of three specific forums but that right is subject to the limitation of the common-law distinctions between local and transitory actions. West's F.S.A. S 47.011. | Are venue statutes subject to the limitations of common law distinctions between local and transitory actions? | Venue - Memo 64-RK.docx | ROSS-003302256-ROSS-003302257 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 7371 | State Farm Lloyds v. Rathgeber, 453 S.W.3d 87 | 148+2.2 | Starting with Hope, the Supreme Court began focusing this inquiry not on the precise methodology through which a rate is formulated, but on a rate order's "end result":It is not theory but the impact of the rate order that counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry ... is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.Thus, as far as constitutional takings principles are concerned, a governmental ratemaker "[i]s not bound to the use of any single formula or combination of formulae in determining rates." | As far as constitutional takings principles are concerned, a governmental ratemaker is not bound to the use of any single formula or combination of formulae in determining rates. U.S.C.A. Const.Amend. 5; Tex. Const. art. 1, S 17(a). | Are governmental rate makers bound to use any single formula or combination of formulae in determining rates in takings? | 003093.docx | LEGALEASE-00120685-LEGALEASE-00120686 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7372 | In re Plant Insulation Co., 485 B.R. 203 | 148+2.5 | As an initial matter, Appellants' Fifth Amendment and Due Process concerns may be dismissed with relative ease. Generally, of course, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." United States v. Security Indus. Bank, 459 U.S. 70, 75, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). As the Bankruptcy Court noted, however, the exercise of the bankruptcy power also routinely impairs contractual obligations and other rights that do not rise to the level of an enforceable interest in specific property for Fifth Amendment or Due Process purposes. See, e.g., Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 188, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) ("The subject of "bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property"); Sec. Indus. Bank, 459 U.S. at 80, 103 S.Ct. 407 (citing Hanover, 186 U.S. at 188, 22 S.Ct. 857) ("The government nonetheless contends that bankruptcy statutes are usually construed to apply to preexisting rights. This statement is unobjectionable in the context of traditional contract rights ..."); Lyon v. Agusta S.P.A., 252 F.3d 1078, 1085"86 (9th Cir.2001) (quoting Grimesy v. Huff, 876 F.2d 738, 743"44 (9th Cir.1989)) ("a cause of action is a "species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained" "). | Generally, bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. U.S.C.A. Const.Amend. 5. | Is the bankruptcy power subject to the Fifth Amendment's prohibition against taking private property without compensation? | 003125.docx | LEGALEASE-00120787-LEGALEASE-00120788 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7373 | William J. Templeman Co. v. Liberty Mut. Ins. Co., 316 Ill. App. 3d 379 | 249+34 | Similarly in the case at bar, even if the facts alleged in the motion for sanctions support an action for malicious prosecution, a court considering a Rule 137 motion for sanctions lacks jurisdiction to adjudicate a claim for malicious prosecution in the absence of an independent complaint framing that cause of action. The circuit court does not have jurisdiction to adjudicate an issue not presented to it through proper pleadings. See Ligon v. Williams, 264 Ill.App.3d 701, 707, 202 Ill.Dec. 94, 637 N.E.2d 633, 638 (1994) ("the circuit court's jurisdiction, while plenary, is not boundless, and where no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue sua sponte "); Zygmuntowicz, 306 Ill.App.3d at 184, 239 Ill.Dec. 246, 713 N.E.2d at 779 ("The filing of a complaint or petition operates to invoke the court's authority to exercise its jurisdiction"); accord, In re Marriage of Fox, 191 Ill.App.3d 514, 520, 138 Ill.Dec. 841, 548 N.E.2d 71, 75 (1989). The plaintiffs never presented any pleadings seeking relief for malicious prosecution. Rather the allegations at issue are contained in a Rule 137 motion for sanctions, which is not a pleading. See In re Marriage of Sutherland, 251 Ill.App.3d 411, 413, 190 Ill.Dec. 695, 622 N.E.2d 105, 107 (1993) ("A motion is an application for a ruling or an order in a pending case. * * * A pleading, in contrast, consists of a party's formal allegations of his claims or defenses"). Nor was there any possibility that the Rule 137 motion for sanctions could potentially be transformed into an action for malicious prosecution because the adjudication of such an action requires the termination of the underlying proceeding. "It is well settled that "the termination of a prior proceeding in favor of the plaintiff * * * is an essential element in a cause of action for malicious prosecution which must be factually set forth in the complaint." " Executive Commercial Services, Ltd. v. Daskalakis, 74 Ill.App.3d 760, 766, 31 Ill.Dec. 58, 393 | Termination of a prior proceeding in favor of the plaintiff is an essential element in a cause of action for malicious prosecution, which must be factually set forth in the complaint. | Is it necessary to factually allege favorable termination of prior action in a malicious prosecution action? | Malicious Prosecution - Memo 93 - AKA.docx | ROSS-003301631-ROSS-003301633 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 7374 | Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 418 Pa. Super. 178 | 302+214(4) | In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. Ohio Casualty Group Ins. Co. v. Argonaut Ins. Co., 92 Pa.Cmwlth. 560, 500 A.2d 191 (1985). A preliminary objection should be sustained only where it appears with certainty that, upon the facts averred, the law will not allow the plaintiff to recover. International Union of Operating Engineers, Local No. 66, AFL-CIO v. Linesville Construction Co., 457 Pa. 220, 322 A.2d 353 (1974). | In reviewing preliminary objections, only facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | "In reviewing preliminary objections, when are facts considered as true?" | Pleading - Memo 97 - RK.docx | ROSS-003284372-ROSS-003284373 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 7375 | Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 418 Pa. Super. 178 | 302+214(4) | In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. Ohio Casualty Group Ins. Co. v. Argonaut Ins. Co., 92 Pa.Cmwlth. 560, 500 A.2d 191 (1985). A preliminary objection should be sustained only where it appears with certainty that, upon the facts averred, the law will not allow the plaintiff to recover. International Union of Operating Engineers, Local No. 66, AFL-CIO v. Linesville Construction Co., 457 Pa. 220, 322 A.2d 353 (1974). | In reviewing preliminary objections, only facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. | Should preliminary objections be sustained only if they are clear and free from doubt? | 003483.docx | LEGALEASE-00120882-LEGALEASE-00120883 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 7376 | In re New Hampshire Pub. Utilities Comm'n Statewide Elec. Util. Restructuring Plan, 143 N.H. 233 | 317A+211 | Because, as the parties agreed, the Governor and attorney general could not bind the State without legislative approval, the rate agreement required the State to seek legislation to make it "an enforceable obligation of the State." Consistent with the rate agreement, the legislature enacted RSA chapter 362"C (enabling statute), which authorized the PUC to determine whether implementation of the rate agreement would be consistent with the public good, and whether the rates for electric service to be established as part of the reorganization were just and reasonable. RSA 362"C:3 (1995); Re Northeast Utilities, 75 N.H.P.U.C. at 401; Appeal of Richards, 134 N.H. at 161, 590 A.2d at 594. The bankruptcy court's approval of the reorganization plan was conditioned on the PUC's acceptance of the rate agreement. | Statute requiring Public Utilities Commission (PUC) to comply with rate agreement between state and business trust and registered public utility holding company resolving electric utility's bankruptcy reorganization proceeding and involving merger of company and utility and statute on restructuring of electric generation services and rates could be interpreted consistently such that when PUC determined whether, and to what extent, utility could recover stranded costs under restructuring statute, PUC was required to consider any existing state obligations to provide recovery of deferred assets under rate agreement and rate compliance statute; however, in accord with legislature's intent concerning restructuring statute, PUC's stranded costs award to utility would be determined by discretionary standard in restructuring statute. RSA 362-C:6, 374-F:2, subd. 4, 374-F:4, subds. 5, 6. | Has the legislature authorized the Public Utility Commission (PUC) to inquire into whether the rates for electric service are just and reasonable? | 003510.docx | LEGALEASE-00120725-LEGALEASE-00120726 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7377 | Home Builders Ass'n of Metro. Denver v. Pub. Utilities Comm'n of State of Colo., 720 P.2d 552 | 317A+102 | Before addressing the specific issues raised on appeal, it is appropriate to examine the standards applicable to judicial review of PUC decisions. The State Administrative Procedure Act governs the actions of the PUC subject to the following exceptions: a special statutory provision of the Public Utilities Law expressly made applicable to the actions of the PUC will control over the general provisions of the State Administrative Procedure Act, and any provision of the Public Utilities Law directly conflicting with the State Administrative Procedure Act will also govern. " 24"4"107, 10 C.R.S. (1982); " 40"6"101(1), 17 C.R.S. (1984). Section 24"4"106(7), 10 C.R.S. (1982), of the State Administrative Procedure Act sets forth the general standards for judicial review of agency action:If the court finds no error, it shall affirm the agency action. If it finds that the agency action is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law, then the court shall hold unlawful and set aside the agency action .... In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party. In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established. | Special statutory provision of the Public Utilities Law expressly made applicable to the actions of the Public Utilities Commission will control over the general provisions of the State Administrative Procedure Act, as will any provision of the Public Utilities Law directly conflicting with the Administrative Procedure Act. C.R.S. 24-4-107, 40-6-101(1). | Does the State Administrative Procedure Act govern the actions of the PUC? | 003514.docx | LEGALEASE-00120886-LEGALEASE-00120887 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7378 | Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., 321 S.W.3d 168 | 148+2.1 | In its pleadings, Four Seasons also asserts a regulatory takings claim. A compensable regulatory taking can occur when a governmental unit imposes restrictions that either deny a property owner all economically viable use of its property or unreasonably interfere with the owner's right to use and enjoy the property. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex.1998); Taub v. City of Deer Park, 882 S.W.2d 824, 826 (Tex.1994). | A compensable regulatory taking can occur when a governmental unit imposes restrictions that either deny a property owner all economically viable use of its property or unreasonably interfere with the owner's right to use and enjoy the property. Vernon's Ann.Texas Const. Art. 1, S 17. | When does a compensable regulatory taking occur under the takings law? | 017366.docx | LEGALEASE-00120971-LEGALEASE-00120972 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 7379 | Owens v. Green, 400 Ill. 380 | 302+8(3) | Seeking a reversal, plaintiffs make and argue numerous contentions. Of these, the general contention that plaintiffs' final pleading sufficiently charges a conspiracy on the part of defendants will be first considered. The complaint, in general terms, charges those defendants who are public officials with unfair, fraudulent and dishonest actions. It abounds in charges that various defendants conspired with one another, but without setting forth adequate facts to make out a conspiracy. In the first place, the presumption obtains that the transactions assailed by plaintiffs are fair and honest and that the actions of the defendant public officials were made in good faith and with honest motives. Racine Fuel Co. v. Rawlins, 377 Ill. 375, 36 N.E.2d 710; Chicago Park Dist. v. R. E. Herczel & Co., 373 Ill. 325, 26 N.E.2d 119; Tribune Co. v. Thompson, 342 Ill. 503, 174 N.E. 561. It is not enough to merely use the terms "fraud" or "fraudulently" for the adequate reason that the unexplained use of these terms alleges nothing. When used, as here, they are generally deemed expletives-words of abuse. Dean v. Kellogg, 394 Ill. 495, 68 N.E.2d 898; Anderson v. Anderson, 339 Ill. 400, 171 N.E. 504. An allegation of conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion and is not good pleading. These general words, unsupported by facts, are, at best, mere vituperation. People ex rel. Parker v. Board of Appeals, 367 Ill. 559, 12 N.E.2d 666; Tribune Co. v. Thompson, 342 Ill. 503, 174 N.E. 561; Doose v. Doose, 300 Ill. 134, 133 N.E. 49. Referring to particular allegations of the complaint, we observe that plaintiffs allege that the Courts Building Corporation gave to the Director of the Department of Finance an option to purchase the Burnham Building for $4,850,000. The insuperable difficulty with allegations relative to what plaintiffs choose to call an option is that the | An allegation of conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion. | Is a general charge that a party acted fraudulently a conclusion? | Pleading - Memo 117 - RMM.docx | ROSS-003283441-ROSS-003283444 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 7380 | In re Olson, 355 B.R. 649 | 366+27 | Pursuant to this standard, the court accepts as true all allegations in the Plaintiffs' proposed Amended Complaint. Nevertheless, the Plaintiffs have not stated any facts to support a finding by the court that they may step into the shoes of the Debtor's former spouse through equitable subrogation in order to properly maintain an action under " 523(a)(15). Tennessee courts define subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Bankers Trust Co. v. Collins, 124 S.W.3d 576, 579 (Tenn.Ct.App.2003) (quoting Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn.1999)). "A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of statute ("statutory subrogation")." Blankenship, 5 S.W.3d at 650."Equitable [or legal] subrogation is a "legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." " Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 415 F.3d 487, 494 (6th Cir.2005) (quoting Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735, 747 (6th Cir.2005)); see also Amos v. Cent. Coal Co., 38 Tenn.App. 626, 277 S.W.2d 457, 462 (Ct.App.1954). | Under Tennessee law, a right of subrogation may arise by contract, that is, "conventional subrogation," by application of equitable principles of law, that is, "legal subrogation," or by application of statute, that is, "statutory subrogation." | May a right of subrogation arise by contract by application of equitable principles of law or by application of statute? | 043604.docx | LEGALEASE-00121007-LEGALEASE-00121008 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7381 | Hosszu v. Barrett, 202 F. Supp. 3d 1101 | 92+2161 | "[T]o survive [a] motion to dismiss, [a plaintiff] must not only establish that the [statements] about which [she] complain[s] are reasonably capable of sustaining a defamatory meaning, [she] must also show that they are notmerecomment within the ambit of the FirstAmendment."Knievel v. ESPN, 393 F.3d 1068, 1073"74 (9th Cir.2005) (internal citation omitted). "Although defamation is primarily governed by state law, the FirstAmendment safeguards for freedom of speech and press limit state law." Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir.1995). "The scope of constitutional protection extends to statements of opinion on matters of public concern that do not contain or imply a provable factual assertion." Id. (citing Milkovich v. Lorain J. Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). Because "expressions of "opinion" may often imply an assertion of objective fact," there is no "wholesale defamation exemption for anything that might be labeled "opinion." " Milkovich, 497 U.S. at 18, 110 S.Ct. 2695. For example, "[i]f a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." Id. " "Simply couching such statements in terms of opinion does not dispel [the false, defamatory] implications' because a speaker may still imply "a knowledge of facts which lead to the [defamatory] conclusion." " Partington v. Bugliosi, 56 F.3d 1147, 1152"53 (9th Cir.1995) (quoting Milkovich, 497 U.S. at 19, 110 S.Ct. 2695). | To survive a motion to dismiss, a plaintiff bringing a defamation claim must not only establish that the statements about which she complains are reasonably capable of sustaining a defamatory meaning, she must also show that they are not mere comment within the ambit of the First Amendment. U.S. Const. Amend. 1; Fed. R. Civ. P. 12(b)(6). | How can a plaintiff survive a motion to dismiss a defamation claim? | 021044.docx | LEGALEASE-00121651-LEGALEASE-00121652 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7382 | City of Akron v. Pub. Utilities Comm'n, 149 Ohio St. 347 | 317A+102 | Undoubtedly the legislative branch of the state government may confer upon the Public Utilities Commission the powers here sought to be exercised. See Section 624"3 et seq., General Code, and particularly Sections 614"3, 614"8, 614"15, 614"27 and 614"32. The latter section provides in part as follows:"The commission shall have power, when deemed by it necessary to prevent injury to the business or interests of the public or any public utility of this state in case of any emergency to be judged by the commission, to temporarily alter, amend, or with the consent of the public utility concerned suspend any existing rates, schedules or order relating to or affecting any public utility or part of any public utility in this state." | Statutes providing in part that Public Utilities Commission shall have power to alter or suspend any existing rates, schedules, or order relating to or affecting any public utility is valid delegation of police power and authorizes commission in emergency situations to adopt and promulgate temporary rules and regulations, affecting existing contracts of utilities, in protection of health, safety, and welfare of public. Gen.Code, SS 614-3 et seq., 614-8, 614-15, 614-27, 614-32. | "Does the Public Utilities Commission have the authority to suspend, alter or amend the rates charged by the public utilities on the customers?" | 042585.docx | LEGALEASE-00121100-LEGALEASE-00121101 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 7383 | State Coll. Borough Auth. v. Pennsylvania Pub. Util. Comm'n, 152 Pa. Super. 363 | 317A+113 | Section 301 (as amended by Act of March 21, 1939, P.L. 10, No. 11, " 2, 66 P.S. " 1141), provides: "Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the commission: Provided, That only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility." (Italics supplied). Section 2 (15) provides: ""Municipal Corporation" means all cities, boroughs, towns, townships, or counties of this Commonwealth, and also any public corporation, authority, or body whatsoever created or organized under any law of this Commonwealth for the purpose of rendering any service similar to that of a public utility." | The statutory proviso that only public utility service rendered by municipal corporation or operating agency thereof beyond its corporate limits shall be subject to regulation and control by Public Utility Commission as to rates gives commission regulatory jurisdiction over public utility service of both municipalities and municipal authorities beyond municipalities' corporate limits, in view of statutory definition of "municipal corporation" as including "municipal authority". 17 P.S. SS 281-283; 53 P.S. SS 2900f et seq., 2900k(a), 2099l, 2900n; 66 P.S. SS 1102(15), 1102(17), 1141, 1144. | Does Section 301 of the Public Utility Law provide that the rates of public utilities should be subject to the Public Utilities Commission (PUC)? | 042616.docx | LEGALEASE-00121755-LEGALEASE-00121756 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 7384 | In re Stone & Webster, 373 B.R. 353 | 366+1 | The U.S. Supreme Court has summarized the equitable doctrine of subrogation as follows: "[O]ne who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." American Surety Co. v. Bethlehem Nat'l Bank, 314 U.S. 314, 317, 62 S.Ct. 226, 86 L.Ed. 241 (1941). As an equitable doctrine, subrogation should only be applied in the " "exercise of a proper equitable discretion, with a due regard for the legal and equitable rights of others." " McAlister v. Sentry Ins. Co., Civ. No. 91"1701, 1991 WL 102973, at , 1991 U.S. Dist. LEXIS 7945, at (E.D. Pa. June 11, 1991) (quoting Am. Surety Co. of New York v. Bethlehem National Bank of Bethlehem, 116 F.2d 75, 76 (3d Cir.1940), rev'd on other grounds, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941)). | As equitable doctrine, subrogation should be applied only in the exercise of a proper equitable discretion, with due regard for legal and equitable rights of others. | "As equitable doctrine, should subrogation be applied only in the exercise of a proper equitable discretion, with due regard for legal and equitable rights of others?" | Subrogation - Memo # 464 - C - SA.docx | ROSS-003309382-ROSS-003309383 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7385 | Messner v. Am. Union Ins. Co., 119 S.W.3d 642 | 366+27 | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, Metmor Fin., Inc. v. Landoll Corp., 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955). Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract." Id. at 503"04[9]. This means, inter alia, that contract provisions waiving subrogation rights are valid and enforceable. Disabled Veterans Trust v. Porterfield Const., Inc., 996 S.W.2d 548, 552[2] (Mo.App.1999). | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, the right to invoke the doctrine of subrogation may be contractual. | Is advancement of justice and prevention of injustice the goal of the doctrine of equitable subrogation? | Subrogation - Memo # 505 - C - NO.docx | ROSS-003325230-ROSS-003325231 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 7386 | New Hampshire Ins. Co. v. Kansas Power & Light Co., 212 Kan. 456 | 217+3513(2) | Once an obligation to pay the loss was established it was not necessary for the plaintiffs to prove a written contract for subrogation. The right of subrogation of an insurer arises by operation of law without regard to whether there is any provision in the insurance policy or any writing declaring such right; it is a creature of equity and does not spring from contract. See, United States Fidelity & Guaranty Co. v. First State Bank, 208 Kan. 738, 494 P.2d 1149, and cases cited therein. See also, Aetna Life Ins. Co. v. Moses, 287 U.S. 530, 53 S.Ct. 231, 77 L.Ed. 477; City Stores Co. v. Lerner Shops of District of Columbia, Inc., 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969); and Travelers Insurance Co. v. Graye, 358 Mass. 238, 263 N.E.2d 442. | Right of subrogation of insurer arises by operation of law without regard to whether there is any provision in insurance policy or any writing declaring such right; it is creature of equity and does not spring from contract. | Is the right of subrogation based on a contract or an equitable right that arises by operation of law? | 043868.docx | LEGALEASE-00121431-LEGALEASE-00121432 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7387 | XL Specialty Ins. Co. v. Com., Dep't of Transp., 47 Va. App. 424 | 366+1 | When statutory language abrogating sovereign immunity in other instances is compared with Code 33.1"192.1, it is clear that there is no waiver of sovereign immunity in the instant case where the claim is not based on a direct contract between the Commonwealth and the claimant but is rather equitable in nature. "The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties." Aetna Life Insurance Co. v. Middleport, 124 U.S. 534, 550, 8 S.Ct. 625, 630, 31 L.Ed. 537 (1888) (citation omitted). Code 2.2"4364(E) grants a right: "a contractor may bring an action." (Emphasis added). The Virginia Tort Claims Act proclaims the liability of the Commonwealth: "the Commonwealth shall be liable for claims." Code 8.01"195.3 (emphasis added). | The right of subrogation is not founded on contract; it is a creation of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is the right of subrogation founded on contract or a creation of equity? | 043870.docx | LEGALEASE-00121442-LEGALEASE-00121443 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7388 | N. Am. Ins. Co. v. Kemper Nat. Ins. Co., 325 Ill. App. 3d 477 | 366+2 | North American next argues that it is entitled to be repaid for the money it spent based upon the doctrine of equitable subrogation. " Subrogation has been defined as the substitution of another person in the place of a claimant whose rights he succeeds in relation to the debt or claim asserted which has been paid by him involuntarily." Bost v. Paulson's Enterprises, Inc., 36 Ill.App.3d 135, 139, 343 N.E.2d 168, 172 (1976). The right of subrogation may be grounded in equity and may also be founded upon an express or implied agreement. State Farm General Insurance Co. v. Stewart, 288 Ill.App.3d 678, 686, 224 Ill.Dec. 310, 681 N.E.2d 625, 630 (1997). The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. Bost, 36 Ill.App.3d at 139, 343 N.E.2d 168. When an innocent party voluntarily makes a payment for which another is liable, the right of subrogation exists as a matter of law and independent of contract. See generally Bost, 36 Ill.App.3d 135, 343 N.E.2d 168. Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 319, 173 Ill.Dec. 648, 597 N.E.2d 622, 624 (1992). The prerequisites to subrogation are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party. State Farm, 288 Ill.App.3d at 686"87, 224 Ill.Dec. 310, 681 N.E.2d 625. | The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. | Can the right of subrogation be grounded in equity and also be founded upon an express or implied agreement? | Subrogation - Memo # 695 - C - SA.docx | ROSS-003287232-ROSS-003287233 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7389 | Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814 | 366+1 | Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Behlen Mfg. Co. v. First Nat'l Bank of Englewood, 28 Colo.App. 300, 472 P.2d 703, 707 (1970) (quoting D.W. Jaquays & Co. v. First Sec. Bank, 101 Ariz. 301, 419 P.2d 85, 88 (1966)). Although subrogation can occur by contract, equitable subrogation is an equitable principle that allows "a party secondarily liable who has paid the debt of the party who is primarily liable [to] institute a recovery action in order to be made whole." Mid"Century Ins. Co. v. Travelers Indem. Co., 982 P.2d 310, 315 (Colo.1999) (citing 16 George J. Couch, Cyclopedia of Insurance Law " 61:20 (Mark S. Rhodes ed., 2d ed.1983)). | Although subrogation can occur by contract, equitable subrogation is an equitable principle that allows a party secondarily liable who has paid the debt of the party who is primarily liable to institute a recovery action in order to be made whole. | Does a subrogation right secure the repayment of a secondarily liable party? | 044097.docx | LEGALEASE-00121689-LEGALEASE-00121690 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7390 | In re Mr. R's Prepared Foods, 251 B.R. 24 | 366+7(1) | It is generally held that in equity when one standing in such a relation (guarantor) pays he is, at least as against the debtor primarily liable, subrogated to all the rights and remedies of the creditor, and this even without a formal assignment of the debt or judgment. Thus, [the guarantor] is subrogated to all the rights of the bank, including the right to the debt itself, and has the same priority with respect to the perfected security interest as that of the bank." First Nat'l Bank of Sikeston, Missouri v. Jefferson Sales & Distrib., Inc., 341 F.Supp. 659, 672 (S.D.Miss.1971), aff'd 460 F.2d 1059 (5th Cir.1972) (applying U.C.C. " 9"504(5), which is enacted in Connecticut as Conn.Gen.Stat. " 42a"9"504(5)). T & B's purchase of the note and receipt of the Bank's security interest, therefore, left the debtor's other creditors in the same positions they would have been in had the Bank collected the indebtedness directly from Rotanelli under his guaranty. The court concludes that the T & B's conduct in relation to the acquisition of the Bank's security interest neither conferred an unfair advantage upon it, nor inflicted any harm upon other creditors. Accordingly, the objectors have not established colorable grounds for equitable subordination of T & B's secured claim. | It is generally held that, when guarantor honors his guarantee by paying debt, he is, at least as against the debtor primarily liable, subrogated to all the rights and remedies of creditor, even without formal assignment of debt or judgment. | Does the doctrine of equitable subrogation give a guarantor the right to be subrogated to any and all rights that a creditor or subrogor has against the debtor? | 044132.docx | LEGALEASE-00121776-LEGALEASE-00121777 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7391 | Am. Safety Equip. Corp. v. J. P. Maguire & Co., 391 F.2d 821 | 25T+121 | We now come to the merits of the district court orders, which stayed the declaratory judgment actions and required ASE to proceed to arbitration on all disputes with Hickok and Maguire, including the validity of the License Agreement. The basic issue was aptly phrased by this court fifteen years ago in Wilko v. Swan, 201 F.2d 439, 444 (2d Cir. 1953):We think that the remedy a statute provides for violation of the statutory right it creates may be sought not only in any "court of competent jurisdiction" but also in any other competent tribunal, such as arbitration, unless the right itself is of a character inappropriate for enforcement by arbitration * * *. The question before us is whether the statutory right ASE seeks to enforce is "of a character inappropriate for enforcement by arbitration." This is a difficult issue, not often litigated. Wilko v. Swan, supra, was reversed by the Supreme Court in the leading decision on this subject. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case, a purchaser of securities brought an action under the Securities Act of 1933; he had signed a margin agreement which provided for arbitration of any controversy between the customer and the brokerage firm. The question was whether plaintiff was required to submit his claim to arbitration. This court held (2-1) that he was. The Supreme Court reversed (7-2), construing the non-waiver provision in the Securities Act to forbid bargaining away any rights under the Act, including choice of forum. | The remedy a statute provides for violation of the statutory right it creates may be sought, not only in any court of competent jurisdiction, but also in any other competent tribunal, such as arbitration, unless right itself is of a character inappropriate for enforcement by arbitration. 9 U.S.C.A. SS 2-4, 6. | When can parties choose arbitration for violations of statutory rights? | 007080.docx | LEGALEASE-00122424-LEGALEASE-00122425 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 7392 | State v. Dyson, 220 So. 3d 785 | 203+527 | We find that when considered in a light most favorable to the prosecution, the evidence sufficiently supported the verdict of second degree murder. Moreover, we find that the evidence presented negated the possibility of misidentification. The direct and circumstantial evidence put Defendant at the scene of the crime at the time the crime was committed. As noted above, a single eyewitness's testimony that a perpetrator was at the scene of the crime was sufficient to establish that he was there. While it was circumstantial that Defendant killed the victim, Defendant was seen with a gun in his hand a minute before the shots were fired. He was the only person standing at the top of the steps which led down to the ground floor. The victim was the only person on the steps a minute before the shots were fired. Also, as Defendant admits, the mixed, partial DNA located in the gloves left behind on the steps after the shooting that could not exclude Defendant from having contact with the gloves was circumstantial evidence. However, considering the direct evidence of his immediate presence and the circumstantial evidence tending to show that he was the one who pulled the trigger, it was reasonable that the jury concluded Defendant was the shooter. Furthermore, considering that Defendant shot the victim five times with a firearm, it was reasonable for the jury to conclude beyond a reasonable doubt that Defendant had the specific intent to kill or inflict great bodily harm. The discharge of a firearm at close range aimed at a person indicates a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-305 (La. 11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). | The discharge of a firearm at close range aimed at a person indicates a specific intent to kill or inflict great bodily harm upon that person. | Is the discharge of a firearm at close range aimed at a person considered to be an intent to kill or murder? | Homicide - Memo 133 - RK.docx | ROSS-003286341-ROSS-003286342 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 7393 | Norman v. Bozeman, 605 So.2d 1210 | 289+525 | Pursuant to Ala.Code 1975, " 10"8"70(b), "[p]roperty is presumed to be partnership property if it is purchased with partnership funds even though the title or other interest is acquired in the name of an individual partner or partners."While it is true that the law presumes that property purchased with partnership funds is partnership property, the mere use of partnership funds does not necessarily make the property the property of the partnership; the question becomes one of intention"whether the particular circumstances of the case indicate that the property acquired with partnership funds was intended to be partnership property. " "Whether [property] belongs to a firm or to one of the individuals composing it,"when the title is in his name, and not in that of the firm,"must be solved by what appears to have been the intention of the parties. Prima facie, ownership is where the muniment of title places it, but if by all the circumstances attending the transaction,"which may be shown by parol, if there is no written evidence,"it is made to appear, that in the intention of the parties, it was purchased for and was treated as partnership property, that presumption of ownership arising from the face of the deed will be overcome, and the property will be treated as belonging to the partnership." "Strother v. Strother,, 436 So.2d 847 (Ala.1983) (quoting Goldthwaite v. Janney, 102 Ala. 431, 438, 15 So. 560, 560 (1894)) | While law presumes that property purchased with partnership funds is partnership property, mere use of partnership funds does not necessarily make property the property of the partnership; question becomes one of intention: whether particular circumstances of case indicate that property acquired with partnership funds was intended to be partnership property. | Is property acquired with partnership funds a partnership property? | 021867.docx | LEGALEASE-00122528-LEGALEASE-00122529 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7394 | Krengiel v. Lissner Corp., 250 Ill. App. 3d 288 | 30+204(1) | A motion in limine is an interlocutory order and remains subject to reconsideration by the court throughout the trial. (Reid, 224 Ill.App.3d at 822, 167 Ill.Dec. 541, 587 N.E.2d 1156; Romanek"Golub & Co. v. Anvan Hotel Corp. (1988), 168 Ill.App.3d 1031, 1040, 119 Ill.Dec. 482, 522 N.E.2d 1341.) Consequently, a party whose motion in limine has been denied must object when the challenged evidence is presented at trial in order to preserve the issue for review, and the failure to raise such an objection constitutes a waiver of the issue on appeal. People v. Pantoja (1992), 231 Ill.App.3d 351, 354, 172 Ill.Dec. 926, 596 N.E.2d 205; Reid, 224 Ill.App.3d at 822, 167 Ill.Dec. 541, 587 N.E.2d 1156; Romanek"Golub & Co., 168 Ill.App.3d at 1040, 119 Ill.Dec. 482, 522 N.E.2d 1341. | Party whose motion in limine has been denied must object when the challenged evidence is presented at trial in order to preserve issue for review, and failure to raise such objection constitutes waiver of issue on appeal. | Is a trial court's ruling on a motion in limine interlocutory and subject to change during the course of trial? | Pretrial Procedure - Memo # 394 - C - NE.docx | LEGALEASE-00012141-LEGALEASE-00012142 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7395 | Jones v. Rallos, 384 Ill. App. 3d 73 | 307A+3 | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. Schuler v. Mid"Central Cardiology, 313 Ill.App.3d 326, 333"34, 246 Ill.Dec. 163, 729 N.E.2d 536 (2000). Thus, to preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court. Sinclair v. Berlin, 325 Ill.App.3d 458, 471, 259 Ill.Dec. 319, 758 N.E.2d 442 (2001). Failure to make such offer of proof results in waiver of the issue on appeal. Sinclair, 325 Ill.App.3d at 471, 259 Ill.Dec. 319, 758 N.E.2d 442. | A ruling on a motion in limine is a determination addressing an admissibility of evidence issue likely to arise at trial and is subject to reconsideration. | Is a ruling on a motion in limine an admissibility determination that is likely to arise at trial and is subject to reconsideration? | Pretrial Procedure - Memo # 407 - C - SS.docx | ROSS-003284819-ROSS-003284820 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 7396 | One Bluff Drive v. K.A.P., 330 Ga. App. 45 | 307A+3 | Finally, the appellants contend the trial court erred by denying their motion in limine to exclude testimony or evidence of KAP's "total costs" of performing the contract. We review the trial court's decisions on the admissibility of evidence, including a denial of a motion in limine, for an abuse of discretion. Forsyth County v. Martin, 279 Ga. 215, 221(3), 610 S.E.2d 512 (2005); Toler v. Ga. Dept. of Transp., 328 Ga.App. 144, 145, 761 S.E.2d 550 (2014). And motions in limine should only be granted with great care and when there is no circumstance under which the evidence at issue could be admissible at trial:By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care. | By its very nature, grant of motion in limine excluding evidence suggests that there is no circumstance under which evidence under scrutiny is likely to be admissible at trial, and in light of that absolute, grant of motion in limine excluding evidence is judicial power which must be exercised with great care. | Is a motion in limine properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial? | Pretrial Procedure - Memo # 401 - C - SN.docx | ROSS-003324668-ROSS-003324669 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7397 | Jefferson v. Lyon Sheet Metal Works, 376 S.W.3d 37 | 307A+3 | As an initial matter, plaintiff's use of motions in limine to preclude Lyon from presenting its defense at trial was improper. This is not the function of a motion in limine. "Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory." Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.App.1994). "It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial." Id. However, a motion in limine "is not a substitute for a summary judgment motion." Id. "Nor should it "ordinarily [be] employed to choke off an entire claim or defense." " Id. (quoting Lewis v. Buena Vista Mutual Ins. Ass'n, 183 N.W.2d 198, 201 (Iowa 1971)). Therefore, the trial court procedurally erred in granting plaintiff's motions in limine to preclude Lyon from litigating a defense at trial. | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory; it is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Is a motion in limine used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory? | Pretrial Procedure - Memo # 418 - C - SB.docx | ROSS-003282899-ROSS-003282901 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7398 | Cannon v. William Chevrolet/Geo, 341 Ill. App. 3d 674 | 307A+3 | Even were we to consider whether the trial court correctly ruled on the motions in limine, we find that defendants' arguments lack merit. One of defendants' motions sought to bar Cannon from mentioning at trial that she was refused any repairs on her vehicle because she failed to give proper notice of her warranty claims. While they argue that the trial court should have dismissed the claims at the motion in limine stage as a matter of law, defendants misunderstand the purpose of such a motion. Motions in limine are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on evidentiary matters outside the presence of the jury. People v. Owen, 299 Ill.App.3d 818, 822, 233 Ill. Dec. 900, 701 N.E.2d 1174, 1177 (1998). It is improper to file a dispositive motion seeking the dismissal of a claim as a motion in limine where it forecloses the opportunity of the opposing party to adequately respond to the motion. See Silverstein v. Brander, 317 Ill.App.3d 1000, 1005-06, 251 Ill. Dec. 276, 740 N.E.2d 357, 361 (2000). Additionally, with regard to the motion in limine on the issue of rescission, defendants sought a ruling on an election of remedies, arguing inconsistent jury instructions, rather than a ruling on an evidentiary matter. Accordingly, the motions were not the proper vehicle for the relief sought by defendants. | Motions in limine are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on evidentiary matters outside the presence of the jury. | Are motions in limine designed to obtain rulings on dispositive matters or are they designed to obtain rulings on evidentiary matters outside the presence of the jury? | 027928.docx | LEGALEASE-00121922-LEGALEASE-00121923 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7399 | Brokamp v. Mercy Hosp. Anderson, 132 Ohio App. 3d 850 | 307A+3 | A motion in limine "is a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of an evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted." The power to grant a motion in limine lies within the sound discretion of the trial court. | "Motion in limine" is a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of an evidentiary issue; in virtually all circumstances, finality does not attach when the motion is granted. | Does finality attach when a motion in limine is granted? | 028025.docx | LEGALEASE-00122078-LEGALEASE-00122079 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 7400 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | A motion in limine provides a vehicle for requesting guidance from the trial court prior to trial regarding an evidentiary question which the court may provide, at its discretion, to aid the parties in formulating their trial strategy. Pullum v. Robinette, 174 S.W.3d 124, 136 n. 12 (Tenn.Ct.App.2004) (quoting United States v. Luce, 713 F.2d 1236, 1239 (6th Cir.1983)); see also Jones v. Stotts, 59 F.3d 143, 146 (10th Cir.1995); Hunt v. K"Mart Corp., 294 Mont. 444, 981 P.2d 275, 278 (1999); see also McCormick on Evidence " 52, at 255"58 (Kenneth S. Brouned., 6th ed. 2006) ("McCormick on Evidence "); Neil P. Cohen et al., Tennessee Law of Evidence " 1.03[4][f), at 1"20 to 1"21 (5th ed. 2005) ("Tennessee Law of Evidence "). It enables the trial court, prior to trial, to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial. Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir.1997); Forsyth County v. Martin, 279 Ga. 215, 610 S.E.2d 512, 518 (2005). It is, essentially, a substitute for an evidentiary objection at trial. Premium Cigars Int'l, Ltd. v. Farmer"Butler"Leavitt Ins. Agency, 208 Ariz. 557, 96 P.3d 555, 570 (Ct.App.2004). | A "motion in limine" provides a vehicle for requesting guidance from the trial court prior to trial regarding an evidentiary question which the court may provide, at its discretion, to aid the parties in formulating their trial strategy. | "Does a ""motion in limine"" enable a trial court, prior to trial, to exclude anticipated evidence that would clearly be inadmissible for any purpose at trial?" | Pretrial Procedure - Memo # 446 - C - NE.docx | LEGALEASE-00012287-LEGALEASE-00012288 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7401 | Indiana & Michigan Elec. Co. v. City of Anderson, 176 Ind. App. 410 | 145+1 | Even if Ind.Code 8-1-13-18(b) requires PSC approval for a municipality's encroachment upon REMC territory, the statute does not apply to a private investor owned utility. Montgomery Light & Power Co. v. Town of Linden (1940), 217 Ind. 471, 29 N.E.2d 209. Nor does such differing treatment violate the equal protection provision of our Constitution. | Fact that statute requiring Public Service Commission approval for municipality's encroachment upon rural electric membership corporation's service territory does not apply to private investor-owned utility does not violate equal protection provision of State Constitution, since nature of rural electric membership corporations and generally rural character of territories served by such corporations constitutes rational basis upon which legislature could act; fact that private investor-owned utility is not entitled to preferential treatment afforded by such statute does not deny equal protection. Const. art. 1, S 23; IC 8-1-13-18(b) (1976 Ed.). | Is the Public Service Commissions (PSC) approval required for a municipalitys encroachment upon Rural Electric Membership Act (REMA)? | Public Utilities - 317A - 102 - Memo 98 - AM - 10.17.2017.docx | ROSS-003310569-ROSS-003310570 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 7402 | Wolfswinkel v. Gesink, 180 N.W.2d 452 | 272+460 | There must be actual loss to the interest of another before a cause of action accrues. Generally, the wrong or negligence of the party charged gives in itself no right of action to anyone. The injury is traceable to the original wrongful or negligent act, but until this act produces injury to claimant's interest by way of loss or damage, no cause of action accrues. Chrischilles v. Griswold, supra, 260 Iowa 453, 459, 461, 150 N.W.2d 94, 99; Andersen v. National Presto Industries, 257 Iowa 911, 916, 135 N.W.2d 639, 641; Prosser, Law of Torts, 3rd Ed., page 146; Austin v. Fulton Insurance Company, Alaska, 444 P.2d 536, 539; Mansfield v. Federal Services Finance Corporation, 99 N.H. 352, 111 A.2d 322, 324; Spurlin v. Paul Brown Agency, Inc., 80 N.M. 306, 454 P.2d 963, 964. The last three cited authorities involve actions for failure to furnish insurance coverage and hold the statute of limitations begins to run only from the date of loss or actual damage. | There must be actual loss to the interest of another before a cause of action accrues; generally, the wrong or negligence of the party charged gives in itself no right of action to anyone until act produces injury to claimant's interest by way of loss or damage. | Should there be an actual loss to the interest of another before a cause of action accrues? | 005492.docx | LEGALEASE-00123799-LEGALEASE-00123800 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7403 | Matter of Swift, 129 F.3d 792 | 13+61 | "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." Swift's causes of action are for negligence and breach of fiduciary duty based upon negligence. Damages are an essential element of each of these theories. Therefore, some form of legal injury must occur before these causes of action accrue. But, it is not necessary to know immediately the type and extent of that injury. All that is needed is a specific and concrete risk of harm to the party's interest. These rules are well-established. Recent cases applying these rules have muddied the waters, however. The basic problem is that the issue of accrual of a cause of action rarely occurs apart from the issue of when the statute of limitations begins to run for a particular cause of action. These are two separate and distinct issues aimed at very different problems. | Under Texas law, accrual of cause of action means right to institute and maintain suit, and whenever one person may sue another, cause of action has accrued. | Does accrual of cause of action mean right to institute and maintain suit? | 005584.docx | LEGALEASE-00123919-LEGALEASE-00123920 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7404 | Luling Oil & Gas Co. v. Humble Oil & Ref. Co., 144 Tex. 475 | 13+61 | "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." Port Arthur Rice Milling Co. v. Beaumont Rice Mills et al., 105 Tex. 514, 143 S.W. 926. Under the contract in suit Luling had the right to examine at any reasonable time all records of the joint account which was to be accurately kept by Humble, including the right to inspect the wells and the production records and reports. It cannot be doubted that upon Humble's failure to allow an inspection of its records or of the wells at any reasonable time Luling had the right to compel Humble to do so. Moreover, upon Humble's failure to pay whatever sum was due under the contract within the time specified, Luling had the right to compel Humble to pay through a suit in court. These elementary principles make it clear, we think, that while Luling has designated its suit as one for a general accounting, it is not such a suit as would come within the purview of Section 3 of Article 5527, but rather comes under one founded upon a contract in writing. In this situation the statute of limitation begins to run at the time when a suit could be commenced upon the claim asserted.Port Arthur Rice Milling Company case, supra. | The "accrual of a cause of action" means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has "accrued". | Does accrual of cause of action mean right to institute and maintain suit? | Action - Memo # 158 - C CS.docx | LEGALEASE-00012566-LEGALEASE-00012567 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7405 | Band's Refuse Removal v. Borough of Fair Lawn, 62 N.J. Super. 522 | 13+61 | But even if the amended complaint (third count) be deemed to relate back to the filing of the original complaint, the proceeding seeking review of the validity of the contract was not instituted until more than six months after the alleged accrual of plaintiff's right to attack the contract. Plaintiff's cause of action on the contract, if indeed it had a right to bring any, accrued when the contract was executed, and the limitations period therefore ran from that date. Generally, a cause of action is deemed to accrue when facts exist which authorized one party to maintain an action against another. Marini v. Wana(que,) 37 N.J.Super. 32, 38, 116 A.2d 813 (App.Div.1955). The contract was awarded after public advertising and at a public meeting. Plaintiff, a scavenger collecting garbage in Fair Lawn at the time, knew or should have known of the municipal action. | Generally, a cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another. | Is a cause of action deemed to accrue when facts exist which authorize one party to maintain an action against another? | Action - Memo # 166 - C CS.docx | ROSS-003326399-ROSS-003326400 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7406 | In re Lather's Estate, 215 Wis. 151 | 13+61 | In considering this question in Re Estate of Hanlin, 133 Wis. 140, at page 145, 113 N. W. 411, 413, 17 L. R. A. (N. S.) 1189, 126 Am. St. Rep. 938, this court quoted from 19 Am. & Eng. Ency. of Law (2d Ed.) 193, as follows: "A cause of action does not accrue until the party owning it is entitled to begin and prosecute an action thereon; it accrues at the moment when he has a legal right to sue on it and no earlier." After that quotation, the court said: "That covers the whole subject. Nothing can be gained by multiplying words in respect to it. Manifestly, a statute of limitations does not bear on a right until there is a right of action; a judicial remedy of some sort which the owner of that right can invoke to vindicate it. So, as said, the unfailing test is to decide upon the precise point of time when the owner of the right could have instituted a suit to enforce it and prosecute the same to a successful result." | A cause of action does not accrue until the party owning it is entitled to begin and prosecute an action thereon; it accrues at the moment when he has a legal right to sue on it and no earlier. | "Does a cause of action ""accrue"" before the party owning it is entitled to begin and prosecute action thereon?" | 005634.docx | LEGALEASE-00124029-LEGALEASE-00124030 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7407 | Congregation Jeshuat Israel v. Congregation Shearith Israel, 186 F. Supp. 3d 158 | 75+7 | Although a charitable trust must benefit the public at large, oftentimes "the settlor directs that his bounty be distributed among a class or group," which serves as the "conduit through which the settlor desires the public benefits to flow." Id. " 365 at 45. In other words, charitable trusts often work through a conduit, who uses the trust's assets to further the trust's purpose. Sometimes, courts colloquially refer to these conduits as "'beneficiaries', although it is more accurate to say that the real beneficiary is the public or community and the persons involved are merely instrumentalities through which the community benefits flow." Id. " 363 at 28. In Rhode Island, the party that directly benefits from a charitable trust is considered the holder of the beneficial interest in the trust, and is colloquially referred to as the "beneficiary." See Webster v. Wiggin, 19 R.I. 73, 31 A. 824, 827"28 (1895) ("[T]he beneficiaries [of charitable trusts] are a succession of persons, in each of whom the beneficial interest vests from time to time, in the future, to remote ages."); Bogert " 411 at 3. | Although a charitable trust must benefit the public at large, oftentimes the settlor directs that his bounty be distributed among a class or group, which serves as the conduit through which the settlor desires the public benefits to flow. | Should beneficiaries of charitable trust be the public at large? | 013344.docx | LEGALEASE-00122685-LEGALEASE-00122686 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7408 | United States v. Felix-Gutierrez, 940 F.2d 1200 | 221+134 | Prior to giving extraterritorial effect to any penal statute, we must consider whether extraterritorial application would violate international law. Thomas, 893 F.2d at 1069; Chua Han Mow, 730 F.2d at 1311. The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles: territorial, national, protective, universality, and passive personality. Chua Han Mow, 730 F.2d at 1312.As one commentator stated, "[R]ules of extraterritorial jurisdiction historically have been governed by the twin principles of sovereignty over national territory and sovereignty over national citizens, with a view to what alternatively has been called "comity," "fairness," "justice," "reasonableness," or, more directly, "the balancing of national interests." " Note, Constructing the State Extraterritorially: Jurisdictional Discourse, the National Interest, and Transnational Norms, 103 Harv.L.Rev. 1273, 1280 (1990) (footnote omitted). | Law of nations permits exercise of criminal jurisdiction by nation under five general principles: territorial, national, protective, universality, and passive personality. | What are the five general principles under which the law of nations permits the exercise of criminal jurisdiction? | International Law - Memo # 22 - C - LK.docx | ROSS-003297480-ROSS-003297481 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7409 | Provincial Gov't of Marinduque v. Placer Dome, 582 F.3d 1083 | 221+342 | "[E]ven though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application." Id. at 409, 110 S.Ct. 701 (citing Sabbatino, 376 U.S. at 428, 84 S.Ct. 923). The Supreme Court discussed three such policies in Sabbatino:[1][T]he greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it.. [2][T]he less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches. [3]The balance of relevant considerations may also be shifted if the government which perpetrated the challenged act of state is no longer in existence. Sabbatino, 376 U.S. at 428, 84 S.Ct. 923; see also W.S. Kirkpatrick, 493 U.S. at 409, 110 S.Ct. 701. | Even though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application. | Can the policies underlying the act of state doctrine justify its application? | International Law - Memo # 241 - C - CRB.docx | ROSS-003309908-ROSS-003309909 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7410 | Canada S. Ry. Co. v. Gebhard, 109 U.S. 527 | 221+140 | That the laws of a country have no extraterritorial force is an axiom of international jurisprudence, but things done in one country under the authority of law may be of binding effect in another country. The obligor of the bonds and coupons here sued on was a corporation created for a public purpose; that is to say, to build, maintain, and work a railway in Canada. It had its corporate home in Canada, and was subject to the exclusive legislative authority of the Dominion parliament. It had no power to borrow money or incur debts except for completing, maintaining, and working its railway. The bonds taken by the defendants in error showed on their face that they were part of a series amounting in the aggregate to a very large sum of money, and that they were secured by a trust mortgage on the railway of the company, its lands, tolls, revenues, etc. In this way the defendants in error, when they bought their bonds, were, in legal effect, informed that they were entering into contract relations, not only with a foreign corporation created for a public purpose, and carrying on its business within a foreign jurisdiction, but with the holders of other bonds of the same series, who were relying equally with themselves for their ultimate security on a mortgage of property devoted to a public use, situated entirely within the territory of a foreign government. A corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," (Bank of Augusta v. Earle, 13 Pet. 588,) though it may do business in all places where its charter allows and the local laws do not forbid. Railroad v. Koontz, 104 U. S. 12. But wherever it goes for business it carries its charter, as that is the law of its existence, (Relf v. Rundle, 103 U. S. 226,) and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those | A person dealing with a foreign corporation impliedly subjects himself to such laws of the foreign government under which the corporation was organized affecting the powers and obligations of the corporation as the known and established policy of such government authorizes. | What laws of a foreign government does a person who deals with a foreign corporation impliedly subject himself to? | 020130.docx | LEGALEASE-00122893-LEGALEASE-00122895 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7411 | Du Daobin v. Cisco Sys., 2 F. Supp. 3d 717 | 221+342 | The act of state doctrine is premised on the principle that "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (quoting Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897)). The doctrine is "a consequence of domestic separation of powers, reflecting "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs". W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) (quoting Sabbatino, 376 U.S. at 423, 84 S.Ct. 923). "The doctrine's purpose is to prevent judicial pronouncements that would disrupt this country's foreign relations." Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji, 834 F.Supp. 167, 171 (E.D.Va.1993) aff'd, 32 F.3d 77 (4th Cir.1994) (citing Sabbatino, 376 U.S. at 428, 84 S.Ct. 923). | The act of state doctrine's purpose is to prevent judicial pronouncements that would disrupt the foreign relations of the United States. | Is the purpose of the act of state doctrine to prevent judicial pronouncements that would disrupt foreign relations of the United States? | 020388.docx | LEGALEASE-00123752-LEGALEASE-00123753 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 7412 | George Lawrence v. Brodie, 302 Mass. 557 | 302+8(5) | The plaintiff contends, however, that, apart from the question whether a constructive trust can be made out, and that although it might sue Brodie in an action at law for the goods furnished "during operation and bring trustee process' against Donovan, nevertheless the springs which the plaintiff furnished for the original "inventory" to the value of $701.63 "was a sale by the plaintiff to Brodie and was by the agreement with Donovan to have been furnished as part payment for Brodie's stock in the corporation." The allegations of the bill are identical, in so far as the plaintiff is concerned, as to the transactions relating to the furnishing of the springs and also of the merchandise. In both instances, according to the bill, the plaintiff furnished the materials to Donovan at the direction of Brodie and charged their value to the corporation. We see no distinction or difference between these transactions, in so far as the plaintiff's right to recover for the value of the merchandise is concerned. But the plaintiff contends that, inasmuch as the springs were furnished under the agreement by which Brodie was to receive stock of the proposed corporation, and inasmuch as Donovan failed and refused to organize the corporation as he had agreed, Brodie's remedy against Donovan is for breach of contract, and that such a claim cannot be reached by trustee process. It is true that the bill recites that Donovan promised to pay Brodie for the merchandise, as distinguished from the springs, "and is indebted to the defendant Brodie for said sum and for $701.63 for the original inventory * * *." It is also true that a general averment that a defendant owes a plaintiff is a mere statement of a conclusion of law from facts previously stated, is not an allegation of a distinct substantive fact, and is not admitted on demurrer. Millard v. Baldwin, 3 Gray 484, 486; Hollis v. Richardson, 13 Gray 392; Foss v. Lowell Five Cents Savings Bank, 111 Mass. 285, 287. But in the case of | A general averment that a defendant owes a plaintiff is a mere statement of a conclusion of law from facts previously stated and is not an allegation of a distinct substantive fact and is not admitted on demurrer. | Is an averment that the defendant owes the plaintiff admitted on demurrer? | 022947.docx | LEGALEASE-00123543-LEGALEASE-00123544 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 7413 | Allied Prop. & Cas. Ins. Co. v. Good, 919 N.E.2d 144 | 307A+3 | We begin with the purpose of an order in limine. A ruling on a motion in limine is not final on the admissibility of evidence and instead is designed to prevent mention of prejudicial material to the jury before the trial court has had the opportunity to consider its admissibility. Brown v. Terre Haute Reg'l Hosp., 537 N.E.2d 54, 59 (Ind.Ct.App.1989). One consequence of this is that the ruling granting or denying a motion in limine is not available as a ground for reversal. Id. The second consequence is that error based upon the subsequent admission of evidence must be predicated upon timely and proper objection when the evidence is offered at trial. Id. That is not to say that a party who violates an order in limine may do so with impunity. Id. The sanction is within the discretion of the trial court and under appropriate circumstances might extend to declaration of a mistrial and/or punishment for contempt. | A ruling on a motion in limine is not final on the admissibility of evidence and instead is designed to prevent mention of prejudicial material to the jury before the trial court has had the opportunity to consider its admissibility. | Are motions in limine designed to produce a trial without the introduction of prejudicial material? | 024200.docx | LEGALEASE-00123101-LEGALEASE-00123102 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7414 | Woods v. Schmitt, 439 N.W.2d 855 | 307A+2 | An application for separate adjudication of law points is properly considered only when the questions of law arise from uncontroverted facts which appear in the pleadings. Thompson, 346 N.W.2d at 7. Our review of the motions and accompanying briefs indicate that the facts concerning liability and damages relied upon by the parties in asserting the various theories of recovery were in dispute at that time. The motions should have been denied. At trial, plaintiffs attacked the restrictions on their proof of damages. The court relented. Contrary to its earlier ruling, it informed all of the parties that evidence would be admissible on these matters and that it would decide at the conclusion of the trial which damages would be submitted to the jury for consideration. Donohue and Johnson objected, claiming that the earlier ruling defined the law of the case and the court could not subsequently change its ruing. The trial court, however, correctly altered it course by correcting its own error. | Application for separate adjudication of law points is properly considered only when questions of law arise from uncontroverted facts that appear in pleadings. Rules Civ.Proc., Rule 105. | Is an application for separate adjudication of law points considered only when questions of law arise from uncontroverted pleadings? | 031778.docx | LEGALEASE-00124113-LEGALEASE-00124114 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7415 | Heidelberg v. State, 36 S.W.3d 668 | 110+632(4) | We pause here to note that Theising did not violate appellant's motion in limine. When a trial court issues an order granting such a motion, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same.Noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. See Harnett v. State, 38 S.W.3d 650, 651 (TexApp."Austin 2000) (citing Brazzell v. State, 481 S.W.2d 130, 131 (Tex.Crim.App.1972)). See also Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ) (holding in civil case trial court may strike a party's pleadings as a sanction for violation of an order in limine if the circumstances warrant); Weidner v. Sanchez, 14 S.W.3d 353 (Tex.App."Houston [14th Dist.] 2000, n.w.h.). Therefore, Theising was presumably informed of the order granting appellant's motion in limine and, pursuant to that order, neither the State, nor Theising broached the subject of extraneous offenses on direct examination. However, on cross-examination, appellant broached the subject, albeit inadvertently, when he asked Theising to read her notes. | When a trial court issues an order granting a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same. | "When the trial court grants a motion in limine, does the opposing party have a duty to comply with the ruling and instruct the witnesses to do so as well?" | 032255.docx | LEGALEASE-00122873-LEGALEASE-00122874 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 7416 | Chicago Exhibitors Corp. v. Jeepers! of Illinois, 376 Ill. App. 3d 599 | 307A+3 | A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence," and, generally, this "court will not disturb the trial court's ruling on a motion in limine absent a clear abuse of discretion." Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001), citing People v. Williams, 188 Ill.2d 365, 369, 242 Ill.Dec. 260, 721 N.E.2d 539 (1999). "However, a trial court must exercise its discretion within the bounds of the law." Beehn, 321 Ill.App.3d at 680, 254 Ill.Dec. 598, 747 N.E.2d 1010. Where a trial court's exercise of discretion relies on an erroneous conclusion of law, as the Swentos claim, our review is de novo. Beehn, 321 Ill.App.3d at 680"81, 254 Ill.Dec. 598, 747 N.E.2d 1010. | A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence, and, generally, the Appellate Court will not disturb the trial court's ruling on a motion in limine absent a clear abuse of discretion. | Does a trial court has the inherent power to deny or grant a motion in limine? | 038254.docx | LEGALEASE-00124165-LEGALEASE-00124166 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 7417 | Junkins v. Branstad, 448 N.W.2d 480 | 307A+2 | Application for Adjudication of Law Points and Motion for Summary Judgment. An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. Kriv v. Northwestern Sec. Co., 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power. | Application for adjudication of law points and motion for summary judgment are appropriate only when issue in question should be decided by court as matter of law rather than presented to fact finder. | When is the application for adjudication of law points and motion for summary judgment appropriate? | Pretrial Procedure - Memo 344 - TH.docx | ROSS-003313106-ROSS-003313107 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 7418 | Shark v. Thompson, 373 N.W.2d 859 | 307A+3 | Shark contends that the court erred in granting a motion in limine in a case tried to the court without a jury. A motion in limine is a procedural tool used to ensure that potentially prejudicial evidentiary matters are not discussed in the presence of the jury. It can serve no useful purpose in a nonjury case. Although we disapprove of the procedure employed to exclude the evidence, Shark has not shown that he was harmed by the use of the wrong procedure. If the evidence was properly excludable, erroneous use of a motion in limine to exclude it is not reversible error. | "Motion in limine" is a procedural tool used to insure that potentially prejudicial evidentiary matters are not discussed in presence of jury. | Is a motion in limine a procedural tool to ensure that potentially prejudicial evidentiary matters are not discussed in the presence of the jury? | 041163.docx | LEGALEASE-00124071-LEGALEASE-00124072 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7419 | Woods v. SunTrust Bank, 81 So. 3d 357 | 30+3209 | "The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that decision will not be overturned on appeal unless the trial court exceeds the limits of its discretion." Guthery v. Persall, 26 So.3d 1250, 1254 (Ala.Civ.App.2009) (citing Ex parte Jackson, 836 So.2d 979, 985 (Ala.2002)). Because the excluded testimony and evidence concerning the telephone calls at issue were not relevant to Woods's claim of invasion of privacy, the trial court did not exceed the limits of its discretion when it granted SunTrust's motion in limine. | The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that decision will not be overturned on appeal unless the trial court exceeds the limits of its discretion. | When will a decision to grant or deny a motion in limine be overturned on appeal? | Pretrial Procedure - Memo 376 - RK.docx | ROSS-003288049-ROSS-003288050 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 7420 | Murray v. Payne, 437 So. 2d 47 | 366+7(1) | Under the above circumstances, accommodation parties do have the right to proceed against the maker for a deficiency. The law provides: (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it. (2) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party. Miss.Code Ann. " 75-3-415 (Supp.1982). Payne and Flanagan are sureties, and because they are sureties they are accommodation parties. A surety's right of subrogation, recognized by the above statute, is his equitable right to assert the rights of the creditor against the debtor. Upon payment, the surety is said to "stand in the shoes" of the creditor. | A surety's right of subrogation, recognized by statute, is his equitable right to assert rights of creditor against debtor; upon payment, surety is said to "stand in the shoes" of the creditor. Code 1972, S 75-3-415. | "Is a surety's right of subrogation, recognized by statute, or his equitable right to assert rights of a creditor against a debtor?" | Subrogation - Memo # 966 - C - MLS.docx | ROSS-003289668-ROSS-003289669 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 7421 | ADP Marshall v. Noresco, 710 F. Supp. 2d 197 | 366+1 | Subrogation is intended to reimburse a party compelled to discharge a debt owed by another party. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136"37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). Although subrogation may originate from a contractual agreement, " "[i]t is a creature of equity; it is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." " Pearlman v. Reliance Ins. Co., 371 U.S. at 137 n. 12, 83 S.Ct. 232. "Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement .. there are few doctrines better established that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Id. at 137, 83 S.Ct. at 235. See U.S. Fidelity & Guar. Co. v. Rhode Island, 53 R.I. 397, 167 A. 143, 146 (1933) ("A surety which has to pay out money as surety on a building contractor's bond is entitled to be subrogated to the rights of the contractor in any balance due him."). Conversely, claims by owners/obligees under a payment bond are not favored by caselaw. See, e.g., Fed. Ins. Co. v. Maine Yankee Atomic Power Co., 183 F.Supp.2d 76, (D.Me.2001) (collecting cases); Am. Mfrs. Mut. Ins. Co. v. Sherborn Meadows, 2008 WL 5396479 (D.Mass. Dec. 22, 2008) (unpublished decision). | Although subrogation may originate from a contractual agreement, it is a creature of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is subrogation independent of any contractual relations between the parties? | 044344.docx | LEGALEASE-00123399-LEGALEASE-00123400 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7422 | Jo Ann Howard & Assocs., P.C. v. Cassity, 868 F.3d 637 | 13+4 | Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and in pari delicto defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. Walker v. James, 337 Mo. 750, 85 S.W.2d 876, 885 (1935). The in pari delicto defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses. | Under Missouri law, "in pari delicto defense" provides that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | What is it called if a cause of action rests on an illegal act? | Action - Memo # 346.docx | ROSS-003298042-ROSS-003298043 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7423 | Onwukwe v. Ike, 137 S.W.3d 159 | 30+5 | A restricted appeal need not be sought prior to seeking bill of review relief when the former is not available. Hesser, 842 S.W.2d at 765"66. Restricted appeal is only available when (1) it is brought within six months after the trial court signs the judgment, (2) by a party to the suit, (3) who did not participate in the "actual trial," and (4) the error complained of is apparent from the face of the record. Tex.R.App. P. 30; Brown v. Brookshires Grocery Store, 10 S.W.3d 351, 353 (Tex.App.-Dallas 1999, pet. denied). | "Restricted appeal" is only available when (1) it is brought within six months after the trial court signs the judgment, (2) by a party to the suit, (3) who did not participate in the actual trial, and (4) the error complained of is apparent from the face of the record. Rules App.Proc., Rule 30. | When is a restricted appeal available? | 008154.docx | LEGALEASE-00125084-LEGALEASE-00125085 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 7424 | Granite Beach Holdings v. State ex rel. Dep't of Nat. Res., 103 Wash. App. 186 | 148+266 | The term "inverse condemnation" is used to describe an action alleging a governmental taking, brought to recover the value of property that has been appropriated in fact, but with no formal exercise of power. Bodin v. City of Stanwood, 79 Wash.App. 313, 320, 901 P.2d 1065 (1995), aff'd, 130 Wash.2d 726, 927 P.2d 240 (1996). An action for inverse condemnation must be based upon an injury to a right in private property and not merely a privilege. Billington Builders Supply, Inc. v. City of Yakima, 14 Wash.App. 674, 677, 544 P.2d 138 (1975). There can be no inverse condemnation if no property right exists. Orion Corp. v. State, 109 Wash.2d 621, 641"42, 747 P.2d 1062 (1987). | An action for inverse condemnation must be based upon an injury to a right in private property, and not merely a privilege. West's RCWA Const. Art. 1, S 16. | Should an action for inverse condemnation be based upon an injury to a right in private property and not merely a privilege? | 017493.docx | LEGALEASE-00124178-LEGALEASE-00124179 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7425 | Libyan Am. Oil Co. v. Socialist People's Libyan Arab Jamahiriya, 482 F. Supp. 1175 | 221+342 | Had that question been brought before this Court initially, the Court could not have ordered the parties to submit to arbitration because in so doing it would have been compelled to rule on the validity of the Libyan nationalization law. That law by its terms abrogated the concessions entirely and vested exclusive determination of any compensation in a special committee provided for in the same law. The practice that counsels this judicial abstention from passing on the effectiveness of the acts of foreign sovereigns is termed the act of state doctrine. It finds its classic American expression in the Supreme Court case of Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897). | Practice counseling judicial abstention from passing on effectiveness of acts of foreign sovereigns is termed the "act of state doctrine." | Is the practice of judicial abstention from passing on effectiveness of acts of foreign sovereigns termed the act of state doctrine? | International Law - Memo 601 - TH.docx | ROSS-003298834-ROSS-003298836 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7426 | Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516 | 221+342 | The Supreme Court has been quite careful to avoid the creation of "an inflexible and all-encompassing rule" to govern the application of the doctrine; "the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches." Sabbatino, 376 U.S. at 428, 84 S.Ct. at 940. The doctrine demands a case-by-case analysis of the extent to which in the context of a particular dispute separation of powers concerns are implicated. Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 316 n. 38 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).This analysis must always be tempered by common sense. See Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co., 392 F.2d 706, 715 (5th Cir.), cert. denied, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). The doctrine does not necessarily "preclude judicial resolution of all commercial consequences" that result from acts of foreign sovereigns performed within their own borders. Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1380"81 (5th Cir.1980). But, obviously, where the taking is wholly accomplished within the foreign sovereign's territory, "it would be an affront to such foreign government for courts of the United States to hold that such act was a nullity." Tabacalera, 392 F.2d at 715. Furthermore, under such circumstances, the court's decision would almost surely be disregarded within the borders of the foreign state. | The "act of state" doctrine demands case-by-case analysis of extent to which, in context of particular dispute, separation of powers concerns are implicated. | Does the act of state doctrine demand case-by-case analysis of extent to which separation of powers concerns are implicated? | International Law - Memo 605 - TH.docx | ROSS-003301924-ROSS-003301926 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 7427 | Geophysical Serv. v. TGS-NOPEC Geophysical Co., 850 F.3d 785 | 221+342 | The act of state doctrine "limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts." The doctrine applies to bar an action when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." Though seemingly international in character, the doctrine is founded in concerns of domestic separation of powers, "reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." "Act of state issues only arise when a court must decide"that is, when the outcome of the case turns upon"the effect of official action by a foreign sovereign." It can apply "even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act." | "Act of state doctrine" limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts, and thus the doctrine applies to bar an action when the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory, but the doctrine can apply even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act. | Does the act of state doctrine limit for prudential rather than jurisdictional reasons? | International Law - Memo # 29 - C - LK.docx | ROSS-003325950-ROSS-003325951 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7428 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221+342 | The Liu and Xia Plaintiffs argue that because their conduct violated customary standards of international law and/or jus cogens norms, their acts cannot be deemed to be official acts of the state, and thus the act of state doctrine cannot be invoked. As with the parallel argument made with respect to the FSIA immunity of individual officials, however, this argument is not supported by case law. Whether the acts of individual officials are attributable to the foreign state so as to constitute acts of state turns not on international law, but on domestic law and policy of the foreign state. | Whether the acts of individual officials are attributable to the foreign state so as to constitute acts of state turns not on international law, but on domestic law and policy of the foreign state. | Does the question of whether the acts of individual officials are attributable to the foreign state so as to constitute acts of state not on international law? | International Law - Memo # 301 - C - ES.docx | ROSS-003324377-ROSS-003324378 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7429 | United States v. Cardales, 168 F.3d 548 | 221+330 | To satisfy due process, our application of the MDLEA must not be arbitrary or fundamentally unfair. See Davis, 905 F.2d at 248-49; see also Martinez-Hidalgo, 993 F.2d at 1056. In determining whether due process is satisfied, we are guided by principles of international law. See Davis, 905 F.2d at 249 n. 2. Under the "territorial principle" of international law, a "state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state." United States v. Robinson, 843 F.2d 1, 4 (1st Cir.1988). In Robinson, we decided that the United States had jurisdiction over a Panamanian vessel stopped over 500 miles off shore because the Panamanian government authorized the United States to apply U.S. law to the persons on board the vessel. See id. (recognizing informal authorization as valid agreement for purposes of territorial principle, and affirming conviction under 21 U.S.C. " 955a, statutory precursor to MDLEA). In this case, the Venezuelan government authorized the United States to apply United States law to the persons on board the CORSICA. Therefore, jurisdiction in this case is consistent with the territorial principle of international law. | Under the "territorial principle" of international law, a state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state. | "Under the territorial principle of international law, does a state have jurisdiction to prescribe and enforce a rule of law in the territory of another state?" | International Law - Memo # 825 - C - ANC.docx | ROSS-003297757-ROSS-003297758 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7430 | Bandes v. Harlow & Jones, 852 F.2d 661 | 221+342 | At the outset, we must address the district court's conclusion that the act of state doctrine does not bar judicial resolution of the dispute. The touchstone of the doctrine is the principle of comity between nations-courts in one country should avoid inquiries respecting the validity of the acts executed by a foreign sovereign within its territory. The Supreme Court stated more than ninety years ago in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897): Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves. | Touchstone of act of state doctrine is principle of comity between nations; courts in one country should avoid inquiries respecting validity of acts executed by foreign sovereign within its territory. | Is a touchstone of the act of state doctrine a principle of comity between nations? | International Law - Memo # 828 - C - ANC.docx | ROSS-003324100-ROSS-003324102 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7431 | United States v. Vetco Inc., 691 F.2d 1281 | 221+361 | Courts must balance competing interests in determining whether foreign illegality ought to preclude enforcement of an IRS summons. The result in each case will turn on the particular circumstances. In re Westinghouse Electric Corp. Uranium Contracts Litigation, 563 F.2d 992, 997 (10th Cir. 1977); In re Grand Jury Proceedings, 532 F.2d at 407; Trade Development Bank v. Continental Insurance Co., 469 F.2d 35, 41 (2d Cir. 1972); In re Uranium Antitrust Litigation, 480 F.Supp. 1138, 1145 (N.D.Ill.1979); Restatement (Second) of Foreign Relations Law of the United States " 39 (1965). See also Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 613-15 (9th Cir. 1976); Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1297 (3d Cir. 1979).8. | Courts must balance competing interests in determining whether enforcement of an Internal Revenue Service summons should be precluded by illegality, under foreign law, of compliance, and factors to be considered in balancing process are essentially those set forth in Restatement of foreign relations law. 26 U.S.C.A. S 7852(d). | Must courts balance competing interests in determining whether enforcement of a summons should be precluded by illegality? | 020987.docx | LEGALEASE-00124388-LEGALEASE-00124389 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 7432 | Chapman v. Hubbard Woods Motors, 351 Ill. App. 3d 99 | 30+3328 | Assuming, arguendo, that we were to address the merits of this issue, we recognize that a trial court has broad discretion to grant or deny a motion in limine, and as such, we will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. City of Quincy v. Diamond Construction Co., 327 Ill.App.3d 338, 342"43, 261 Ill.Dec. 141, 762 N.E.2d 710, 714 (2002). In addition, a trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is also reviewed under the abuse of discretion standard.Prairie v. Snow Valley Health Resources, Inc., 324 Ill.App.3d 568, 576, 258 Ill.Dec. 202, 755 N.E.2d 1021, 1029 (2001). | Trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is also reviewed under the abuse of discretion standard. | Is the trial courts discretion to grant or deny a motion in limine reviewed under the same standard as an opinion of adequate disclosure? | 038474.docx | LEGALEASE-00124495-LEGALEASE-00124496 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7433 | Smith v. Polsky, 796 S.E.2d 354 | 307A+3 | A motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling. Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Indus. Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. | A "motion in limine" seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. | Does a motion in limine seek pretrial determination of the admissibility of evidence proposed to be introduced at trial? | Pretrial Procedures-Memo #259 -C-MLS.docx | ROSS-003314911-ROSS-003314912 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7434 | Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211 | 317A+111 | A regulatory agency's rate-making authority authorizes it to approve a tariff's provision limiting liability, because a limitation on liability is an inherent part of the rate the utility charges for its services. See Western Union, 256 U.S. at 571, 41 S.Ct. 584; Southwestern Sugar & Molasses Co. v. River Terminals Corp., 360 U.S. 411, 417"18, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1958). And, because regulatory agencies have this authority, we have applied the filed-rate doctrine to hold that a tariff provision that limits liability for economic damages arising from a utility's negligence is reasonable. See Auchan, 995 S.W.2d at 672"75. In Auchan, we considered several factors the PUC has applied to conclude that a tariff can reasonably limit liability for economic damages. 995 S.W.2d at 673"75; see also Tex. Pub. Util. Comm'n, Application of CP & L Co. for Approval of Tariff Amendment, Docket No. 3198, 7 Tex. P.U.C. Bull. 53, 57"61 (June 22, 1981). We determined that a tariff's limitation on liability for economic damages is reasonable because a utility: (1) must provide nondiscriminatory service to all customers within its area; (2) must maintain uniform rates and reduce costs; (3) cannot accurately estimate its exposure to damages or efficiently insure against risks; (4) cannot increase rates for all customers based on losses one specific class of customers incurs; and (5) must comply with PUC regulations. Auchan, 995 S.W.2d at 673"75. | A regulatory agency's rate-making authority authorizes it to approve a tariff's provision limiting liability, because a limitation on liability is an inherent part of the rate the utility charges for its services. | Is the limitation on liability an inherent part of the rate a utility charges for its services? | 042270.docx | LEGALEASE-00124406-LEGALEASE-00124408 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7435 | Rural Elec. Co. v. State Bd. of Equalization, 57 Wyo. 451 | 371+3666 | In order that an owner of an electric plant may be said to be a public utility, his or its property must be devoted to public use. Stoehr v. Natatorium Co., 34 Idaho 217, 200 P. 132; Story v. Richardson, 186 Cal. 162, 198 P. 1057, 18 A.L.R. 750; 51 C.J. 5. And it has been held that such dedication will not be presumed without evidence of unequivocal intention. Stoehr v. Natatorium Co., supra; Southern Ohio Power Co. v. Public Util. Comm., 110 Ohio St. 246, 143 N.E. 700, 34 A.L.R. 171; Allen v. Railroad Comm., 179 Cal. 68, 175 P. 466, 8 A.L.R. 249. Still that intention may be shown by the circumstances in a case. The facts govern. It does not, as will appear later, solely depend upon the wishes and the declarations of the owner. This much, doubtless, is true, that an owner of such a plant must at least have undertaken to actually engage in business and supply at least some of his commodity to some of the public. That has been done in this case. Supplying electricity has long been, and now is universally recognized as a service in which the public may be interested, and which, accordingly, may be impressed with a public character, in the absence of countervailing reasons. Wyman on Public Service Corporations, Sec. 243. It has been held that the "mere purchase, transmission, and sale of electric energy, a commercial product, without more, contains no indication of public service." State ex rel. v. Baker, 320 Mo. 1146, 9 S.W.2d 589, 592; Southern Ohio Power Co. v. Public Util. Comm., supra. That may be conceded, still it would seem that the character of service may be taken into consideration when additional facts exist. The sale and furnishing of lumber, for instance, stands on a different footing from the sale and furnishing of electricity under certain conditions. We may infer a public service in the one case when we would not in the other. See 51 C.J. 5. It has been held that the number of customers is not a criterion. Dairymen's Co-op. Sales Ass'n v. Public Ser. | The dedication of an electric plant to public use, so as to constitute the owner of the plant a "public utility", will not be presumed without evidence of unequivocal intention, but that intention may be shown by the circumstances and does not depend solely on the wishes and declarations of the owner. | Is the dedication of the property of a corporation to public use presumed without evidence of unequivocal intention? | 042295.docx | LEGALEASE-00125406-LEGALEASE-00125408 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 7436 | Lloyd Wood Const. Co. v. Con-Serv, 285 Ala. 409 | 366+7(1) | As to subrogation rights, a surety does not stand in the shoes of the debtor whose performance he assured; rather he takes the position of the creditor who has been satisfied by the surety. United States Fidelity and Guaranty Co. v. First National Bank, 224 Ala. 375, 140 So. 755 (1932); Alabama-Tennessee Nat. Gas Co. v. Lehman-Hoge & Scott, D.C., 122 F.Supp. 314 (1954). As we said in United States Fidelity & Guaranty Co. v. Yeilding Bros. Co. Dept Stores, 225 Ala. 307, 143 So. 176 (1932): "If a surety or guarantor of a debt pays that debt, it is not a payment so far as to extinguish it against the principal debtor. But the surety or guarantor thus paying it becomes subrogated to the rights and remedies of the creditor for its enforcement, even without an assignment. | As to subrogation rights, a surety does not stand in shoes of debtor whose performance he assured; rather, he takes position of creditor who has been satisfied by surety. | "As to subrogation rights, does a surety stand in the shoes of a debtor whose performance he assured?" | 044383.docx | LEGALEASE-00125532-LEGALEASE-00125533 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7437 | State v. Bennett, 307 Conn. 758 | 203+527 | "In order to be convicted under our murder statute, the defendant must possess the specific intent to cause the death of the victim.... To act intentionally, the defendant must have had the conscious objective to cause the death of the victim.... Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available.... Therefore, intent is often inferred from conduct ... and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom....Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) State v. Robertson, supra, 254 Conn. at 783"84, 760 A.2d 82. | In order to be convicted under murder statute, the defendant must possess the specific intent to cause the death of the victim. | Should the defendant possess the specific intent to cause the death of the victim in order to be convicted under murder statute? | 019359.docx | LEGALEASE-00125614-LEGALEASE-00125615 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7438 | Greer v. Skyway Broad. Co., 256 N.C. 382 | 237+7(6) | Any written or spoken words or pictures falsely imputing that a person is guilty of the crime of rape or robbery are actionable per se, because these crimes involve moral turpitude. Penner v. Elliott, 225 N.C. 33, 33 S.E.2d 124; 33 Am.Jur., Libel and Slander, sec. 33; 53 C.J.S., Libel and Slander s 63, p. 110, robbery, s 72, p. 121, rape. | Any written or spoken words or pictures falsely imputing that one is guilty of crime of rape or robbery are actionable per se, as charging crimes involving moral turpitude. | Are words that falsely impute that a person is guilty of the crime of robbery actionable per se? | 021112.docx | LEGALEASE-00125650-LEGALEASE-00125651 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7439 | Wall v. City of Durham, 41 N.C. App. 649 | 317A+111 | A public utility, whether publicly or privately owned, may not unreasonably discriminate in the distribution of its services or the establishment of rates. Dale v. City of Morganton, 270 N.C. 567, 155 S.E.2d 136 (1967); Town of Taylorsville v. Modern Cleaners, 34 N.C.App. 146, 237 S.E.2d 484 (1977). Numerous cases have recognized the rule that the statutory authority of a city to fix and enforce rates for public services furnished by it and to classify its customers is not a license to discriminate among customers of essentially the same character and services. In State ex rel. Utilities Commission v. Mead Corp., 238 N.C. 451, 462, 78 S.E.2d 290, 298 (1953), our Supreme Court stated: "There must be substantial differences in service or conditions to justify difference in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service." In 12 McQuillan, Municipal Corporations s 35.37b, at 485-86 (3d ed. 1970), the general rule is stated as follows:A municipality has the right to classify consumers under reasonable classifications based upon such factors as the cost of service, the purpose for which the service or the product is received, the quantity or the amount received, the different character of the service furnished, the time of its use or any other matter which presents a substantial difference as a ground of distinction. | Public utility, whether publicly or privately owned, may not unreasonably discriminate in distribution of its services or establishment of rates. G.S. SS 160A-312, 160A-314(a). | Can a publicly or privately owned public utility discriminate in the distribution of its services or establishment of rates? | 042316.docx | LEGALEASE-00125677-LEGALEASE-00125678 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7440 | Pub. Serv. Comm'n v. Jamaica Water Supply Co., 54 A.D.2d 10 | 317A+111 | In our opinion the general mandate of the Public Service Law to assure safe and adequate service at just and reasonable rates (Public Service Law, s 89"b, subd. 1; s 89"c, subd. 4; s 89"j) necessarily implies the power to control the disbursement of funds as dividends. The fact that dividends are ordinarily solely a matter of corporate affairs does not insulate them from having an impact on rates and service. The solvency of a public utility is clearly related to its status as an organization capable of providing the public service for which it was franchised. | General mandate of Public Service Commission to assure safe and adequate service by just and reasonable rates necessarily implies the power to control disbursements of funds as dividends; solvency of a public utility is clearly related to its capability to provide the public service for which it was franchised. Public Service Law SS 89-b, subd. 1, 89-c, subd. 4, 89-j. | What is the general mandate of the Public Service Law? | Public Utilities - Memo 166 - AM.docx | ROSS-003313657-ROSS-003313658 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 7441 | State v. Penn, 45 N.C. App. 551 | 352H+100(2) | The defendant assigns as error the court's charge that the jury could find the defendant guilty of assault with intent to commit rape if they found the victim had not reached her twelfth birthday when the indictment did not charge that the victim was under twelve years of age. Defendant was charged under former G.S. 14-22 (now repealed) with assault with intent to commit rape. Although the words of this statute did not make a difference as to assaults upon females who were under twelve years of age as did the statute in regard to rape, it has been held that G.S. 14-22 is a lesser included offense of G.S. 14-21. A person may be convicted of assault with intent to commit rape without proving he intended to gratify his passion notwithstanding any resistance on the part of his intended victim if the State proves the victim was under twelve years of age. See State v. Hartsell, 272 N.C. 710, 158 S.E.2d 785 (1967). An indictment may charge an assault with intent to commit rape as in the case subjudice or an assault with intent to commit rape on a female under twelve years of age. In the case sub judice the defendant was not charged with an assault to commit rape upon a female under twelve years of age and it was error for the court to submit the case to the jury on that charge. See State v. Carter, 265 N.C. 626, 144 S.E.2d 826 (1965); State v. Lucas, 267 N.C. 304, 148 S.E.2d 130 (1966). | If the state proves that the victim was under 12 years of age, a defendant may be convicted of assault with intent to commit rape without proving he intended to gratify his passion notwithstanding any resistance on the part of his intended victim. G.S. SS 14-21, 14-22 (Repealed). | When can a person be convicted of assault with intent to commit rape? | Sex Offence - Memo 35 - BP.docx | LEGALEASE-00015652-LEGALEASE-00015653 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7442 | Biosafe-One v. Hawks, 639 F. Supp. 2d 358 | 386+6 | Plaintiffs claim defendants' theft of their intellectual property constitutes trespass to chattels. To prevail on a claim of trespass to chattels, plaintiffs must prove the following four elements: (1) defendants acted with intent, (2) to physically interfere with (3) plaintiffs' lawful possession, and (4) harm resulted. See Sweeney v. Bruckner Plaza Assoc. LP, No. 23941/00, 21 Misc.3d 1129(A), 2004 WL 5644706, at , 2004 N.Y. Misc. LEXIS 3172, at (N.Y.Sup.Ct. July 12, 2004). As to the intent element, "the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result." Sch. of Visual Arts v. Kuprewicz, 3 Misc.3d 278, 771 N.Y.S.2d 804, 808 (N.Y.Sup.Ct.2003). Here, there is no evidence from which a reasonable jury could conclude that defendants acted "with the intention of interfering" with plaintiffs' property. The only evidence in the record suggests that defendants' copying of plaintiffs' website was inadvertent, not intentional. Biosafe"One, Inc., 524 F.Supp.2d at 460"61; see also Hawks Dep. at 15"17; Skierkowski Dep. at 32"34. Accordingly, this claim is dismissed. | Under New York law, to prevail on a claim of trespass to chattels, plaintiffs must prove the following four elements: (1) defendants acted with intent, (2) to physically interfere with (3) plaintiffs' lawful possession, and (4) harm resulted. | What has to be proven to prevail on a claim of trespass to chattels? | 047169.docx | LEGALEASE-00125758-LEGALEASE-00125759 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7443 | Hecht v. Components Int'l, 22 Misc. 3d 360 | 372+1341 | Interference with information stored on a computer may give rise to trespass to chattel if plaintiff is dispossessed of the information or the information is impaired as to its condition, quality or value. Davidoff v. Davidoff, 12 Misc.3d 1162(A) , 2006 WL 1479558 (Sup.Ct. N.Y. Co.2006). See also, Elektra Entertainment Grp., Inc. v. Santangelo, 2008 WL 4452393 at (S.D.N.Y. Oct. 1, 2008); and School of Visual Arts v. Kuprewicz, 3 Misc.3d 278, 281, 771 N.Y.S.2d 804 (Sup.Ct. N.Y.Co.2003). | Interference with information stored on a computer may give rise to trespass to chattel if plaintiff is dispossessed of the information or the information is impaired as to its condition, quality, or value. Restatement (Second) of Torts S 217 et seq. | Can interference with information stored on a computer give rise to a trespass to chattel claim? | 047183.docx | LEGALEASE-00125786-LEGALEASE-00125787 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 7444 | Register.com v. Verio, 126 F. Supp. 2d 238 | 386+6 | The standard for trespass to chattels in New York is based upon the standard set forth in the Restatement of Torts: One who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent, even though such use is not a conversion. | Under New York law, one who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent, even though such use is not a conversion. Restatement (Second) of Torts, S 256. | When can someone who uses a chattel with the consent of another become subject to liability in trespass? | Trespass - Memo 177 - RK.docx | ROSS-003287112-ROSS-003287113 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7445 | Foremost Ins. Co. v. Pub. Serv. Comm'n of Missouri, 985 S.W.2d 793 | 386+2 | Although the case law concerning this common law tort is sparse, trespass to chattels involves intentional conduct on the part of one person which interferes with the use of personal property in the possession of another without justification. 2 Mo. Tort Law, " 21.19 (MoBar 2d ed.1990). A trespass to a chattel may be committed by intentionally intermeddling with a chattel in the possession of another, and the intention required is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act. Cover v. Phillips Pipe Line Co., 454 S.W.2d 507, 512 (Mo.1970). | Trespass to a chattel may be committed by intentionally intermeddling with a chattel in the possession of another, and the intention required is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act. | Does the tort of trespass to chattel require intentional conduct? | 047232.docx | LEGALEASE-00125832-LEGALEASE-00125833 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 7446 | Thurston Motor Lines v. Gen. Motors Corp., 258 N.C. 323 | 241+43 | "In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, C.J.S. Limitations of Actions s 109; 34 Am.Jur. Limitation of Actions s 113; Shearin v. Lloyd, 246 N.C. 363, 367, 98 S.E.2d 508. Plaintiff contends its cause of action did not accrue until September 9, 1955, when the truck-tractor was damaged by fire; and that this action was instituted within three years, to wit, on September 8, 1958. Defendants contend plaintiff's cause of action, if any, accrued in the latter part of June, 1955, when the truck-tractor was sold and delivered to plaintiff, and is barred by the three-year statute of limitations."It is a firmly established rule that with certain exceptions, such as in the cases of covenants and indemnity contracts, the occurrence of an act or omission, whether it is a breach of contract or of duty, whereby one sustains a direct injury, however slight, starts the statute of limitations running against the right to maintain an action. It is sufficient if nominal damages are recoverable for the breach or for the wrong, and it is unimportant that the actual or substantial damage is not discovered or does not occur until later. However, it is well settled that where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries resulting therefrom only from the time actual damage ensues." 34 Am.Jur. Limitation of Actions s 115; 54 C.J.S. Limitations of Actions s 168. | In general cause or right of action accrues, so as to start running of statute of limitations, as soon as right to institute and maintain a suit arises. | Does a cause of action accrue as soon as the right to institute and maintain a suit arises? | 005742.docx | LEGALEASE-00126265-LEGALEASE-00126266 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7447 | Webster v. Rushing, 316 So. 2d 111 | 302+87 | Article 1005, in addition to listing certain affirmative defenses which must be specially pleaded, contains the omnibus recital "and any other matter constituting an affirmative defense." (Emphasis added.) Thus, the listing of the named affirmative defenses in this article are merely illustrative. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. In the instant case, the defense that plaintiff was not a registered loan broker and was thus precluded from recovering under the contract raises a new issue which, assuming the allegations of plaintiff's petition to be true, would defeat plaintiff's claim on the merits. Hence, it was clearly an affirmative defense which was required to be specially pleaded. | Affirmative defense raises new matter which, assuming allegations in petition to be true, constitutes defense to action and will have effect of defeating plaintiff's demand on its merits. LSA-C.C.P. arts. 1003, 1005; LSA-R.S. 13:3601(2). | Will an affirmative defense have the effect of defeating the plaintiffs demand on merits? | Pleading - Memo 177 - RMM.docx | ROSS-003290232-ROSS-003290233 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7448 | Greer v. Buzgheia, 141 Cal. App. 4th 1150 | 307A+3 | Trial judges enjoy " 'broad authority' " over the admission and exclusion of evidence. (Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal.App.3d 272, 288, 245 Cal.Rptr. 873.) The motion in limine is not expressly authorized by statute, but is within the trial court's " 'inherent power to entertain and grant.' [Citation.] 'The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial.' [Citation.] Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the 'obviously futile attempt to "unring the bell." ' " (Ibid.) | A motion in limine is not expressly authorized by statute, but is within the trial court's inherent power to entertain and grant. | Is a motion in limine expressly authorized by statute or is it within the trial courts inherent power to entertain and grant such motions? | Pretrial Procedure - Memo # 865 - C - TJ.docx | ROSS-003286852-ROSS-003286854 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7449 | CMS Energy Corp. v. Attorney Gen., 190 Mich. App. 220 | 317A+111 | The PSC is a creature of the Legislature, and all of its authority must be found in statutory enactments. Union Carbide Corp. v. Public Service Comm, 431 Mich. 135, 146, 428 N.W.2d 322 (1988); Huron Portland Cement Co. v. Public Service Comm., 351 Mich. 255, 262, 88 N.W.2d 492 (1958). The PSC has authority to fix and regulate reasonable rates. However, the PSC is not the owner of a regulated utility's property, and the PSC is not clothed with the general power of management incident to ownership. Union Carbide, supra 431 Mich. at 148"149, 428 N.W.2d 322. | Public Service Commission had authority to fix and regulate reasonable rates, but it is not owner of regulated utility's property, and is not clothed with general power of management incident to ownership. | Is the Public Service Commission (PSC) clothed with the general power of management incident to ownership? | 042358.docx | LEGALEASE-00125933-LEGALEASE-00125934 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 7450 | CompuServe Inc. v. Cyber Promotions, 962 F. Supp. 1015 | 386+6 | A plaintiff can sustain an action for trespass to chattels, as opposed to an action for conversion, without showing a substantial interference with its right to possession of that chattel. Thrifty"Tel, Inc., 46 Cal.App.4th at 1567, 54 Cal.Rptr.2d 468 (quoting Zaslow v. Kroenert, 29 Cal.2d 541, 176 P.2d 1 (Cal.1946)). Harm to the personal property or diminution of its quality, condition, or value as a result of defendants' use can also be the predicate for liability. Restatement " 218(b). | Plaintiff can sustain action for trespass to chattels, as opposed to action for conversion, without showing a substantial interference with its right to possession of that chattel. | Can an action for trespass to chattels be sustained without showing a substantial interference with the right to possession? | Trespass - Memo 187 - RK.docx | ROSS-003285481-ROSS-003285482 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7451 | Morrow v. First Interstate Bank of Oregon, N.A., 118 Or. App. 164 | 386+6 | Plaintiff alleges an intentional tort, trespass to chattels, which has been described as the "little brother of conversion." Prosser and Keeton on Torts 86 (5th ed 1984). It allows recovery "for interferences with the possession of chattels which are not sufficiently important to be classed as conversion * * *." Prosser and Keeton on Torts at 85. In contrast to conversion, in which the interference with the chattel is so great that the actor can justly be required to pay its full value, Laursen v. Morris, 103 Or.App. 538, 543, 799 P.2d 648 (1990), rev. den. 311 Or. 150 (1991), the gist of the lesser claim of trespass to chattels is the disturbance of the plaintiff's possession. Swank v. Elwert, 55 Or. 487, 496, 105 P. 901 (1910). We conclude that the interest in avoiding the temporary disturbance of one's right to possession is not of sufficient importance to merit protection when the only damage claimed is emotional. Accord Flowers v. Bank of America, 67 Or.App. 791, 794, 679 P.2d 1385, rev. den. 297 Or. 601, 687 P.2d 795 (1984). Accordingly, the trial court did not err in dismissing the claim for trespass to chattels. | In contrast to conversion, in which the interference with the chattel is so great that the actor can justly be required to pay its full value, the gist of the lesser claim of trespass to chattels is the disturbance of the plaintiff's possession. | Is trespass to chattels a lesser claim than the tort of conversion? | 047243.docx | LEGALEASE-00126047-LEGALEASE-00126048 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7452 | Westinghouse Elec. Supply Co. v. Brookley, 176 Neb. 807 | 13+61 | The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief. See, Bend v. Marsh, 145 Neb. 780, 18 N.W.2d 106; Dewey v. Deway, 163 Neb. 296, 79 N.W.2d 578, 579; Fraser v. Temple, 173 Neb. 367, 113 N.W.2d 319. | Whether at law or in equity, cause of action arises only when aggrieved party has right to apply to proper tribunal for relief. | Does cause of action arise only when aggrieved party has right to apply to proper tribunal for relief? | 005705.docx | LEGALEASE-00126469-LEGALEASE-00126470 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7453 | Evans v. Mason, 82 Ariz. 40 | 241+49(2) | Appellant next asserts that this action is barred by the Statute of Limitations, section 29-203, subsection 1, A.C.A. 1939; section 12-543, A.R.S.1956. The recovery here is not based upon the actual oral agreement but upon a promise which the law implies to pay the reasonable value of the services rendered. The cause of action under such circumstances does not arise until the termination of such services. Gold v. Killeen, supra; Burr v. Floyd, supra; Leoni v. Delany, 83 Cal.App.2d 303, 188 P.2d 765, 189 P.2d 517. The facts reflect that Soledad continued to serve the decedent in, at least, a part-time capacity until her death, and that no compensation was to be paid therefor until that time. It is therefore evidence that the cause of action here involved arose at the instant of decedent's demise. As a consequence we find that no part of the period of service was barred by the Statute of Limitations. | Cause of action for reasonable value of services rendered under deceased's unenforceable oral contract to pay for services by will was based on implied contract and did not arise until termination of services. | Will the cause of action arise where the recovery is not based upon the actual oral agreement but upon a promise which the law implies to pay the reasonable value of the services rendered? | 005713.docx | LEGALEASE-00126497-LEGALEASE-00126498 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 7454 | In re Dow Corning Corp., 287 B.R. 396 | 51+2164.1 | The Australian Claimants further argue that the Court is without jurisdiction to enjoin suits in Australia against Dow Australia. It is noted that the Australian Claimants raised this argument before the Sixth Circuit. The Sixth Circuit's Opinion remanded the matter for further factual findings on the appropriateness of the release. Therefore, the Sixth Circuit implicitly overruled the Australian Claimants' argument that the release was illegal for lack of jurisdiction. (See, United Distribution Cos. v. F.E.R.C., 88 F.3d 1105, 1148 (D.C.Cir.1996)(a remand for further proceedings on a specific issue implicitly rejects a lower court's jurisdiction over issues not remanded)). The Court agrees that generally, there is a presumption against extraterritorial application of United States law as argued by the Australian Claimants. However, in the bankruptcy context, that presumption does not apply if ignoring the bankruptcy court orders would have "substantial effects within the United States." In re Simon, 153 F.3d 991, 997 (9th Cir.1998). As noted previously, Dow Australia is contributing cash and insurance assets to the Joint Plan and Dow Australia has filed a contribution claim against the Debtor. If the Australian Claimants were allowed to pursue their claims against Dow Australia, the Debtor would lose Dow Australia's contribution and would also have to defend its products in the Australian courts. | While there is presumption against extraterritorial application of United States law, that presumption does not apply in bankruptcy, if ignoring the bankruptcy court's orders would have substantial effects within United States. | "While there is presumption against extraterritorial application of United States law, does that presumption apply in bankruptcy?" | 005720.docx | LEGALEASE-00126536-LEGALEASE-00126537 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7455 | Dewey v. Dewey, 163 Neb. 296 | 13+61 | This court has held that: 'The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief.' Bend v. Marsh, 145 Neb. 780, 18 N.W.2d 106, 107. | Whether at law or in equity, cause of action arises when, and only when, the aggrieved party has the right to apply to the proper tribunal for relief. | "Does cause of action arise when, and only when, the aggrieved party has the right to apply to the proper tribunal for relief?" | Action - Memo # 255- C - KA.docx | ROSS-003311720 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 7456 | Coconino Cty. v. Lewis, 76 Ariz. 88 | 79+1 | From the historical background of these constitutional amendments and the purpose that prompted them, it is clear that the use of the term "members of a court" was never intended to include the clerk of the court. It is true that a court is sometimes spoken of as an organization which might include the clerk and other officers of the court as was stated in Peterson v. Speakman, 49 Ariz. 342, 66 P.2d 1023; but these assistants are not members of the court as that term is used in the constitution. The clerk's office is essentially ministerial and not judicial.His duties are to keep the records, enter judgments and orders as directed by the court, issue process, and otherwise perform the clerical work required by the statute and required by the court to keep its records. 14 C.J.S., Clerks of Courts, " 1. When the constitution under discussion speaks of members of the court, it means the judicial officers of the court. | The office of clerk of court, whose duties are to keep records, enter judgments and orders as directed by court, issue process, and otherwise perform clerical work required by statute and required by court to keep its records, is essentially ministerial and not judicial. | What are the duties of a court clerk? | 013467.docx | LEGALEASE-00126790-LEGALEASE-00126791 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7457 | Cott Index Co. v. Jagneaux, 685 So. 2d 656 | 79+1 | The office of the clerk of court is similar to the office of the sheriff in that it is an office operated by an elected official who derives his/her authority from the Louisiana Constitution. (Sheriff"La. Const. art. V, " 27; Clerk"La. Const. art. V, " 28.) The office of the clerk of court has no legal status and is simply the functional organization by and through which the clerk of court carries out his/her official duties. As with the office of the sheriff, it is not sui juris, it does not have the capacity to enter into contracts, nor can it be a legal party to litigation.Instead, it is the clerk, as the office holder, who enters into contracts and who is the party to litigation. Extrapolating from this, we find that Cott Index contracted with Kempf as the office holder and not with the St. Landry Parish Clerk of Court's Office. Since Cott Index contracted with Kempf as the Clerk of Court, the terms of the contract were not binding upon Jagneaux as the Clerk of Court. To hold otherwise would allow an unscrupulous out-going office holder to bind the incoming office holder thereby undermining the will of the people. | Office of clerk of parish court has no legal status and is simply functional organization by and through which clerk of court carries out his/her official duties; it is clerk, as office holder, who enters into contracts and who is party to litigation. LSA-Const. Art. 5, S 28. | Does a clerk of the court enter into contracts and become party to litigation? | 013477.docx | LEGALEASE-00126800-LEGALEASE-00126801 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7458 | State ex rel. Yancey v. Hyde, 121 Ind. 20 | 316P+144 | Section 5152, Rev. St., fixed the term of office of the state inspector of oils at two years; and as section 1868, Acts 1889, (Elliott's Supp.,) refers to the former act for the duties and emoluments of said officer, we are inclined to the opinion that it still governs as to the term of his office, as no term is fixed by the later act. As all the officers provided for in the present constitution were made elective by the qualified voters, which is in this respect radically different from the provisions of the old constitution, and in view of the fact that soon after the adoption of the present instrument other state offices were created and made elective, we must presume that it was and is the spirit and intention of the present constitution that all such offices as relate to the public at large, either district or state, are elective, and that, when a vacancy occurs, the executive departments may appoint and commission until the next following general election, at which time the people may elect an incumbent to said office. The complaint fails to allege that the governor of the state had theretofore appointed and commissioned the relator to fill the said vacancy in said office, and is, for that reason, technically bad. The said office being a state office, the legislature could not delegate the power to some other state officer to appoint and commission the relator, though that officer may have been duly appointed and commissioned. In so far as the act of the legislature seeks to deprive the executive of the state of his constitutional prerogative to fill by appointment vacancies in the offices named in said act of February 26, 1889, it is unconstitutional and void. The said act may antagonize another provision of the constitution, but, as the question is ignored in the briefs of counsel, we have not considered it. We refer to section 16, art. 4, of the constitution. Because of the absence of an averment in the complaint that the relator had been appointed by, and held a commission from, the governor of the | Rev.St. S 5152, fixed the term of office of the state inspector of oils at two years. Acts 1889 (Elliott's supp.), S 1868, abolishes this office, and creates that of inspector of mineral oils, and refers to the former act for his duties and emoluments. It makes no provisions as to his term of office. Held, that the earlier provision still governs as to his term of office. | What is the term office of an oil inspector? | 019488.docx | LEGALEASE-00126511-LEGALEASE-00126512 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7459 | Flacke v. Onondaga Landfill Sys., 127 Misc. 2d 984 | 216+5 | Warrants are ordinarily required for an administrative search of private commercial premises. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. An exception exists, however, where the government authorizes routine10 inspections of a pervasively, or closely, regulated industry. Donovan v. Dewey, supra; United States v. Biswell, supra. In effect, where, as here, warrantless and unannounced inspections are necessary for effective enforcement of such a regulatory scheme, a valid statute may serve as a substitute for the warrant. Donovan v. Dewey, supra, 452 U.S. at p. 603, 101 S.Ct. at 2540; 1 LaFave and Israel, Criminal Procedure, " 3.9(c), pp. 322"323. | Where warrantless and unannounced inspections are necessary for effective enforcement of regulatory scheme, valid statute may serve as substitute for warrant. | "Can a statute serve as a valid substitute for a warrant, where warrantless and unannounced inspections are necessary?" | 019496.docx | LEGALEASE-00126605-LEGALEASE-00126606 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7460 | Ridley Twp. v. Pennsylvania Pub. Util. Comm'n, 172 Pa. Super. 472 | 317A+111 | The obligation imposed upon the Commission to exercise its powers and discretion reasonably applies as well to patrons and the public as to the utilities. The Commission operates on a two-way street. "The primary object of the publice service laws is not to establish a monopoly or to guarantee the security of investment in public service corporations, but first and at all times to serve the interests of the public". Hoffman v. Public Service Comm., 99 Pa.Super. 417, 429. (Emphasis added.) | The obligation of the Public Utility Commission to exercise its powers and discretion reasonably applies to the patrons of the utility as well as the utility, but the primary object of public service laws is at all times to serve the interests of the public, and not to establish a monopoly or guarantee the security of investment in public service corporations. | Is the primary object of public service laws to guarantee the security of investment in public service corporations? | 042349.docx | LEGALEASE-00126414-LEGALEASE-00126415 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7461 | Wilhite v. Pub. Serv. Comm'n, 150 W. Va. 747 | 317A+113 | Great stress is placed by the Commission on the answers by Wilhite to Interrogatories 30 and 31, wherein Wilhite stated that no excess volume of gas was anticipated at the present time other than that sufficient to meet the requirements of the contracts with Union Carbide and Pittsburgh Plate Glass Company and that no excess volume of gas was anticipated at the present time to furnish any persons, firms or corporations at any place upon any terms or conditions. The Commission stated in its final order that these answers "seem rather feeble". The fact remains that at the present time Wilhite furnishes a supply of gas under contract only to the Pittsburgh Plate Glass Company and Union Carbide and has no excess volume at the present time and none is anticipated. The excess volume was inserted into this case at the hearing when one of the commissioners gratuitously asked what the supply would be under an 800 pound pressure and the witness, a vice president of Consolidated, replied 55,000 Mcf. There was no evidence that any such pressure would be used in supplying gas through Wilhite's pipeline. The only evidence with regard to the supply of gas by Wilhite was that it would be supplied at a pressure of below 100 pounds to the square inch "up-stream" and would carry 4,000 to 7,000 Mcf per day. The Commission found, from these statements that no excess volume of gas was anticipated at the present time other than to meet the requirements under the contracts with the two companies concerned, that this implied a holding out to serve the public and therefore constituted Wilhite a public utility. This finding is not supported by such evidence and the law applicable thereto. Llano, Inc. v. Southern Union Gas Company, 75 N.M. 7, 399 P.2d 646. The Llano case is quite similar to the one at bar. Llano entered into an agreement to buy gas from one concern and sell it to an industrial concern. It then built a 28-mile pipeline to transport the gas from the | Mere fact that a product which is usually dispensed by or sold by a utility to the public is being furnished does not make every person, firm or corporation selling such product a public utility; if such product is sold under private contract and the seller does not hold himself out to sell such product to the public or render some service to the public he is not a "public utility". Code, 24-1-1. | Does the mere fact of selling things ordinarily sold by public utilities render the seller a public utility? | 042403.docx | LEGALEASE-00126665-LEGALEASE-00126667 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 7462 | Application of Crusader Coach Lines, 213 Neb. 53 | 317A+113 | "The issue of public convenience and necessity is ordinarily one of fact and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission." Id. at 512, 315 N.W.2d at 633. | Issue of public convenience and necessity is ordinarily one of fact and where there is evidence in record to sustain Public Service Commission's order, the Supreme Court cannot say that it is unreasonable and arbitrary. | Is the issue of public convenience and necessity one of fact? | Public Utilities - Memo 206 - AM.docx | ROSS-003286929-ROSS-003286930 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 7463 | DeLong v. Hampton Envelope Co., 149 S.W.3d 549 | 413+1 | With regard to Claimant's motion for frivolous appeal and sanctions, we find that, based on the substantial and competent evidence in the record, Employer's continuing failure to provide Claimant with a prosthesis is without reasonable grounds. Moreover, the cost of providing the prosthesis might have been less than the cost incurred by the parties to litigate Employer's appeals to the Commission and to this Court. Employer's delay of over two-and-one-half years in providing Claimant with the needed prosthesis and corresponding treatment was not only without reasonable grounds, but also, undoubtedly, has been a psychological detriment to Claimant. Additionally, we remind Employer that the purpose of the Act is to make an injured employee whole and to restore the employee's ability to work, either at the job the employee had when injured or a different one. We also note that without the workers' compensation statutes, employees would sue their employers for treatment made necessary by work-related injuries. Worker's compensation serves a dual role in that it provides employees with treatment for work-related injuries and protects employers from multiple lawsuits by employees and imposes monetary restrictions on awards.Here, Claimant suffered a work-related injury for which the authorized treating doctor prescribed treatment, and Employer has a statutory duty to provide that treatment. In light of the prior proceedings before the ALJ and the Commission, Employer could not have concluded in good faith that we would reverse the Commission's award. See Wieda v. Stupp Bros., Inc., 52 S.W.3d 602, 603 (Mo.App. E.D.2001). Therefore, we grant Claimant's motion for sanctions for frivolous appeal, pursuant to Rule 84.19, in the amount of $10,000 assessed against Employer. | Workers' compensation serves a dual role in that it provides employees with treatment for work-related injuries and protects employers from multiple lawsuits by employees and imposes monetary restrictions on awards. | Does workers' compensation serve a dual role? | 048585.docx | LEGALEASE-00126690-LEGALEASE-00126691 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7464 | Cent. Carolina Developers v. Moore Water & Sewer Auth., 148 N.C. App. 564 | 148+266 | Plaintiff first claims the inverse condemnation action against: MOWASA should not have been dismissed. "Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so." Smith v. City of Charlotte, 79 N.C.App. 517, 521, 339 S.E.2d 844, 847 (1986). The remedy for inverse condemnation lies under N.C. Gen.Stat. " 40A-51(a) which states: If property has been taken by an act or omission of a condemnor listed in G.S. 40A-3(b) or (c) and no complaint containing a declaration of taking has been filed the owner of the property, may initiate an action to seek compensation for the taking. The action may be initiated within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later. | Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so. | What forces a governmental body to exercise its power of condemnation even though it may have no desire to do so? | Eminent Domain - Memo 306 - GP.docx | ROSS-003298600-ROSS-003298602 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7465 | Samuel J. Lansberry v. Pennsylvania Pub. Util. Comm'n, 66 Pa. Cmwlth. 381 | 70+8 | An important distinction, however, exists between these two approaches; namely, those cases (the first line) where the applicant proposes services identical to those already existing, and those cases (the second line) in which an applicant proposes a service or services different from existing ones. See Byerly; Gettysburg Tours.This distinction has dictated that, where the proposed services are different, inadequacy of existing service need not necessarily be established in order to secure a certificate of public convenience. Rather, proof of public necessity for the service alone may support the certificate. See Gettysburg Tours; Pennsylvania Railroad. But, where the proposed services are identical to existing services, a showing of inadequacy is required. See Byerly; L. P. Transportation; Reeder; Modern Transfer. | Where proposed common carrier services are different, inadequacy of existing service need not necessarily be established to secure a certificate of public convenience and necessity and proof of public necessity alone may support the certificate, but where the proposed services are identical to existing services, a showing of inadequacy is required. 66 Pa.C.S.A. SS 1103, 1103(a). | Should an applicant establish inadequacy of an existing service to secure a certificate of public convenience if the proposed service is different from the existing service? | 042195.docx | LEGALEASE-00127001-LEGALEASE-00127002 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7466 | Wolters v. Am. Republic Ins. Co., 149 N.H. 599 | 366+41(6) | The doctrine of subrogation has its origins in equity. See Dimick v. Lewis, 127 N.H. 141, 145, 497 A.2d 1221 (1985). A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. Moulton v. Groveton Papers Co., 114 N.H. 505, 510, 323 A.2d 906 (1974); see also 16 L. Russ & T. Segalla, Couch on Insurance 3d " 222:6, at 222-27 (2000). The doctrine of subrogation presupposes the payment of a debt by a party secondarily liable therefor, who thereby acquires an equitable right to be reimbursed by the principal debtor and for the purpose of making this right effective is invested with all the rights which the creditor had against him (the principal debtor). DeLellis v. Burke, 134 N.H. 607, 611, 598 A.2d 203 (1991) (quotation omitted). The purpose behind subrogation "is to place the responsibility where it ultimately should rest by compelling payment by the one who in good conscience ought to pay it." Security Fence Co. v. Association, 101 N.H. 190, 192, 136 A.2d 910 (1957) (quotation omitted). "It also prevents the insured from recouping a windfall double recovery." Cunningham v. Metropolitan Life Ins. Co., 121 Wis.2d 437, 360 N.W.2d 33, 36 (1985). "In any subrogation case, the burden of proving entitlement is on [the] subrogee, which generally includes proof of: [t]he existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement." Russ & Segalla, supra " 222:7. It is undisputed that the plaintiff's health insurance policy contains no provision allowing for reimbursement or subrogation. Nor does the defendant contend that it is entitled to reimbursement or subrogation by the operation of a statute. Rather, it contends that under New Hampshire law, it is entitled to reimbursement and subrogation through equitable principles. The issue of whether an insurer can be equitably subrogated to its insured's rights, absent a contractual provision, is a question of first | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally must prove the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | "Is the burden of proving entitlement on the subrogee, which generally includes proof of the existence and applicability of the equitable principle?" | Subrogation - Memo # 984 - C - SK.docx | ROSS-003300537-ROSS-003300539 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 7467 | Hornor v. Hanks, 22 Ark. 572 | 150+187 | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained. And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | The right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill; and if he has a good cause of action, which had not then accrued, the bill cannot be maintained: And it would seem that a court of chancery would not allow a defendant to modify the relief to which the plaintiff was entitled when the suit was begun, by setting up as a defense a change of circumstances produced by the use of legal process or remedies after he is brought into court: So, if the defendant has a judgment against the plaintiff when the bill is filed, his case is not strengthened by a subsequent sale and purchase of the property in dispute under such judgment. | Must the right of a plaintiff be adjudicated upon as it existed at time of filing his bill? | Action - Memo # 681 - C KG.docx | ROSS-003313400-ROSS-003313401 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 7468 | Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696 | 106+100(1) | The Court in Thorpe, however, observed that exceptions to the general rule that a court is to apply a law in effect at the time it renders its decision "had been made to prevent manifest injustice," citing Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). Although the precise category of cases to which this exception applies has not been clearly delineated, the Court in Schooner Peggy suggested that such injustice could result "in mere private cases between individuals," and implored the courts to "struggle hard against a construction which will, by a retrospective operation, affect the rights of parties." 1 Cranch, at 110, 2 L.Ed. 49. We perceive no such threat of manifest injustice present in this case. We decline, accordingly, to categorize it as an exception to Thorpe's general rule. | An exception to the general rule that a court is to apply the law in effect at the time it renders its decision has been made to prevent manifest injustice; such injustice could result in mere private cases between individuals. | Should a court apply the law in effect at the time it renders its decision as the general rule? | 006043.docx | LEGALEASE-00127448-LEGALEASE-00127449 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 7469 | Multiplex Concrete Mach. Co. v. Saxer, 310 Mich. 243 | 13+65 | The present situation was brought about as the result of plaintiffs motion to dismiss defendant's cross-declaration, claim of set-off and recoupment, on the ground that such issue could not be tried in a replevin action. As a result, the issues now joined in the replevin action are narrowed down to whether plaintiff is entitled to possession of the property, and damages for unlawful detention. The rights and liabilities of the parties under the original sales contract cannot be adjudicated in the replevin case. Nor can the validity of plaintiffs foreclosure under the chattel mortgage and removal of the property to Ohio be adjudicated in the replevin case. As to that, the issue in replevin is determined upon the facts as they were at the beginning of the suit. Cass v. Gunnison, 58 Mich. 108, 25 N.W. 52; Aber v. Bratton, supra, 60 Mich. 357, 27 N.W. 564. Evidence of the disposition of the mortgaged property after replevin by the mortgagee is immaterial, in a replevin action, the rights of the parties being fixed by the situation at the time the writ was issued. Rosenfield v. Case, 87 Mich. 295, 49 N.W. 630. | Evidence of disposition of mortgaged property after replevin by mortgagee is immaterial in replevin action, the rights of the parties being fixed by situation at time the writ was issued. | Is evidence of the disposition of mortgaged property after replevin by mortgagee immaterial in a replevin action? | Action - Memo # 774 - C SK.docx | ROSS-003303401-ROSS-003303402 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7470 | Mem'l Hosp. v. Heckler, 706 F.2d 1130 | 13+65 | First, we consider whether the court should apply section 106, which was not yet in effect at the time this litigation was instigated. We agree with the Sixth Circuit that section 106 applies to appeals that were pending when it was enacted. Harper-Grace Hospitals v. Schweiker, 691 F.2d 808, 811 (6th Cir.1982). A court should apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.\| Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); United States v. Schooner Peggy, 5 U.S. (1 Cranch) 102, 109 (1801) ("if subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed...."). Therefore, as to this appeal, Presbyterian Hospital of Dallas v. Schweiker, 638 F.2d 1381 (5th Cir.), cert. denied, 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), which allowed Medicare reimbursement for Hill-Burton costs, is not controlling. | A court should apply the law in effect at time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. | Should the court apply the law in effect at time of the decision? | Action - Memo # 860 - C PC.docx | ROSS-003312766-ROSS-003312767 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7471 | Fraser v. Wright, 54 R.I. 422 | 302+78 | A respondent who answers must set up every ground and circumstance on which he intends to rely as a defense, either entire or partial, and defenses not set up are deemed waived. 21 C. J. 471. | Answer must set up every ground and circumstance on which defendant intends to rely as defense, either entire or partial, and defenses not set up are waived. | Should a defendant who answers must set up every ground and circumstance on which he intends to rely as a defense? | Action - Memo # 862 - C PC.docx | ROSS-003284919 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7472 | State Mut. Life Assur. Co. of Worcester, Mass. v. Heine, 141 F.2d 741 | 13+63 | The courts have concurrent jurisdiction in equity and at law, and equitable defenses are available to a law action, but laches is a defense at law only when a plaintiff is seeking to enforce some equitable right, and where enforcement lies within the conscience of the Chancellor. Unless equitable relief is sought by the plaintiff, the statute of limitation fixes the limit and establishes the applicable principle. Vansant's Executrix v. Gardner's Executrix, 240 Ky. 318, 42 S.W.2d 300; Holmes v. Clark, 274 Ky. 349, 118 S.W.2d 758; Dwiggins v. Howard, 247 Ky, 746, 57 S.W.2d 649; Poynter v. Smith, 290 Ky. 169, 160 S.W.2d 380; Hospelhorn v. Circle City Coal Company, 6 Cir., 117 F.2d 166. | The courts have concurrent jurisdiction in equity and at law and equitable defenses are available to a law action, but laches is a defense at law only when a plaintiff is seeking to enforce some equitable right and where enforcement lies within the conscience of the chancellor. | Do the courts have concurrent jurisdiction in equity and at law? | 006270.docx | LEGALEASE-00127911-LEGALEASE-00127913 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7473 | Edward Balf Co. v. Town of E. Granby, 152 Conn. 319 | 13+65 | t is the plaintiff's claim that since the ordinance in effect when this action was commenced was invalid, no subsequent readoption, however valid, could affect this pending action. It is true that the legislature is presumed to intend that statutes affecting substantive rights do not affect pending actions unless a contrary intent appears. Reese v. Reese, 136 Conn. 191, 194, 70 A.2d 123. In general, that rule also applies to municipal ordinances. See MacKenzie v. Town Planning & Zoning Commission, 149 Conn. 678, 683, 183 A.2d 619. On the other hand, in the case of actions praying for a declaratory judgment or injunctive relief, since the remedy sought is prospective, the right to such relief is determined by the situation which has developed at the time of trial and not by that existing at the time the action was begun. | Right to relief in action for declaratory judgment or injunction, since remedy sought is prospective, is determined by situation which has developed at time of trial, not by that existing at time action was begun. | "In action for declaratory judgment, should the rights be determined upon the facts in existence when the case is tried?" | 006304.docx | LEGALEASE-00127830-LEGALEASE-00127831 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7474 | People v. Boguszewski, 220 Ill. App. 3d 85 | 67+9(0.5) | To sustain a conviction for burglary, the State is required to prove either that the defendant entered the building without authority and with the intent to commit a felony or theft, or that she remained within the building without authority and with the intent to commit a felony or theft. (Ill.Rev.Stat.1989, ch. 38, par. 19-1(a); People v. Vallero (3rd Dist., 1978), 61 Ill.App.3d 413, 19 Ill. Dec. 48, 378 N.E.2d 549.) The intent element of burglary may be established circumstantially, but must be proved beyond a reasonable doubt. People v. Obrochta (2nd Dist., 1986), 149 Ill. App.3d 944, 102 Ill. Dec. 958, 500 N.E.2d 1059. | To sustain conviction for burglary, State must prove either that defendant entered building without authority and with intent to commit felony or theft, or that she remained within building without authority and with intent to commit felony or theft. | What must the State prove to sustain a conviction for burglary? | Burglary - Memo 4 - RK.docx | ROSS-003303538-ROSS-003303540 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7475 | Boulanger v. Town of Old Lyme, 51 Conn. Supp. 636 | 148+2.1 | ur Supreme Court has recognized that the actions of a zoning body may constitute an unconstitutional taking through inverse condemnation. See Cumberland Farms, Inc. v. Groton, 262 Conn. 45, 62"63, 808 A.2d 1107 (2002). "[A] regulatory taking"also known as inverse condemnation"occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." (Internal quotation marks omitted.) Id., at 47 n. 2, 808 A.2d 1107. "[A] plaintiff in an inverse condemnation action seeks to demonstrate that the action of a zoning board of appeals resulted in a taking that, in turn, gives rise to a constitutional right to compensation.... A plaintiff who brings an inverse condemnation action may vindicate that right in the Superior Court, where the court hears evidence, finds facts and determines whether the action of a zoning board amounts to a practical confiscation.... If so, the court also determines what compensation is due." (Citations omitted.) Id., at 63, 808 A.2d 1107. "The determination of whether a particular property has been taken by inverse condemnation must be made on the specific facts of the individual case." Melillo v. New Haven, 249 Conn. 138, 148"49, 732 A.2d 133 (1999). "The word taken in article first, " 11 of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain.... Although property may be taken without any actual appropriation or physical intrusion ... there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose ... as where the economic utilization of the land is, for all practical purposes, destroyed.... A constitutional taking | Although property may be taken without any actual appropriation or physical intrusion, there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose, as where the economic utilization of the land is, for all practical purposes, destroyed. C.G.S.A. Const. Art. 1, S 11. | What does the word taken imply under the taking laws? | 017701.docx | LEGALEASE-00127549-LEGALEASE-00127550 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 7476 | Feigenbaum v. Guaracini, 402 N.J. Super. 7 | 366+38 | Subrogation rights may be created in three different ways: "(1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002) (citing Culver, supra, 115 N.J. at 456, 559 A.2d 400). The doctrine of equitable subrogation should not be imposed " "where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application." " Culver, supra, 115 N.J. at 456, 559 A.2d 400. Equitable subrogation may only be imposed "if the cause is just and enforcement is consonant with right and justice." Standard Acc. Ins., supra, 15 N.J. at 173, 104 A.2d 288. | The doctrine of equitable subrogation should not be imposed where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application. | Should the doctrine of equitable subrogation be imposed where its enforcement would be inconsistent with the terms of a contract? | Subrogation - Memo # 1255 - C - TM.docx | ROSS-003287046-ROSS-003287048 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7477 | First Tr. Co. of Lincoln v. Airedale Ranch & Cattle Co., 136 Neb. 521 | 13+65 | "Differing from the rule in actions on the law side of the court, which limits the judgment to the facts as they existed at the commencement of the action, when the action is in equity, relief will be administered as the nature of the case and the facts, as they exist at the close of the litigation, demand." Russell, Hardware & Implement Mfg. Co. v. Utica, Drop Forge & Tool Co., 195 N.Y. 54, 87 N.E. 788. | When an action is in equity, relief will be administered as the nature of the case and the facts, as they exist at the close of the litigation, demand, rather than as in actions at law where judgment is limited to the facts as they existed at the commencement of the action. | "When an action is in equity, will relief be administered as the nature of the case and the facts demand?" | 005974.docx | LEGALEASE-00128182-LEGALEASE-00128183 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7478 | Propst v. Bd. of Educ. Lands & Funds, 156 Neb. 226 | 13+65 | This case was commenced on December 21, 1951. A lease on the school land described in the renewal lease automatically secured by William Propst by virtue of the 1947 act was advertised and sold to him as the highest and best bidder at public auction by appellee on January 17, 1952. He made a bonus bid of $6,200. He thereafter made application to appellee for a lease of the land, and paid his bid and the rental for six months. His bid was accepted, and a lease for a 12-year term from January 1, 1952, was issued to, accepted, and retained by him. He made no effort to have the court by order in this case delay or postpone the sale proceedings until the case could be heard and decided. On the contrary he, with full knowledge of all the facts, concurred and assisted in, and became the beneficiary of the sale of the lease on the land, the identical thing he was by this action asking the court to prevent. His conduct was inconsistent to a degree sufficient to defeat the granting by the court of the relief he asked. At the time of the trial of the case he was, as is shown by the evidence, the lessee of the land for a 12-year term commencing on January 1, 1952. The relief granted in an equity case is generally what the facts and law require at the time the decree is rendered. Stocker v. Wells, 150 Neb. 51, 33 N.W.2d 445; Drake v. Morrow, 140 Neb. 258, 299 N.W. 545. The remedy by injunction is generally preventive, prohibitory, or protective, and equity will not usually issue an injunction when the act complained of has been committed and the injury has been done. Conrad v. Kaup, 137 Neb. 900, 291 N.W. 687; Elson v. Schmidt, 136 Neb. 778, 287 N.W. 196. | Relief granted in equity is generally what nature of the case, facts, and law require at time decree is rendered, not at beginning of litigation. | "Is relief granted in equity generally what nature of the case, facts, and law require at time decree is rendered?" | 005988.docx | LEGALEASE-00128278-LEGALEASE-00128280 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 7479 | United States v. Hawaii Cty., 473 F. Supp. 261 | 13+65 | As a general principle, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), United States v. Fresno Unified School District, 592 F.2d 1088, 1093 (9th Cir. 1979). A court's considerations "relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 US. at 717, 94 S.Ct. at 2019. In Fresno Unified School District, the Court of Appeals for the Ninth Circuit applied the considerations enunciated in Bradley in holding that the provisions of an executive order issued after suit was filed could be applied retrospectively to confer standing on the United States Attorney General to sue under Title VII. | Generally, a court is to apply a law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. | Should a court apply a law as it exists at the time of a decision? | Action - Memo # 732 - C ES.docx | ROSS-003326787-ROSS-003326788 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7480 | Water Res. Comm'n v. Connecticut Sand & Stone Corp., 170 Conn. 27 | 13+65 | It is true that in the usual case where injunctive relief is sought a court will grant such relief only in light of the situation as the court finds it to exist at the time of trial. Jones v. Foote, 165 Conn. 516, 521, 338 A.2d 467. It is also true, however, that in the usual case it is the court which determines the existence of facts which justify the extraordinary remedy of injunctive relief. That is not the situation in the present cases. | In usual case in which injunctive relief is sought it is court which determines existence of facts which justify extraordinary remedy of injunctive relief, and thus court will usually grant such relief only in light of situation as court finds it to exist at time of trial. | Can a court grant injunctive relief in light of the situation as the court finds it to exist at the time of trial? | 006096.docx | LEGALEASE-00128116-LEGALEASE-00128117 | Order, SA | 0.39 | 1 | 0 | 0 | 1 | |
| 7481 | Rohm & Haas Co. v. Permutit Co., 114 F. Supp. 846 | 13+65 | The general rule of law is that a plaintiff's right to recovery depends upon his right at the inception of the suit and the non-existence of a cause of action when the suit is brought is a fatal defect which cannot be cured by the accrual of a cause of action pending suit. | A plaintiff's right to recovery depends upon his right at inception of suit and non-existence of cause of action when suit is brought is a fatal defect which cannot be cured by accrual of cause of action pending suit. | Does a plaintiff's right to recovery depend upon his right at the inception of the suit? | 006121.docx | LEGALEASE-00128306-LEGALEASE-00128307 | Condensed, SA | 0.21 | 0 | 1 | 0 | 1 | |
| 7482 | Frankfurt v. D.C., 65 A.2d 197 | 13+65 | The amended information on which the prosecution was had charged the offense had been committed "on or about the first day of July 1947 and divers other days between that date and the 28th day of April" 1948. Appellant moved to quash the information and such motion was overruled. She contends that the "device or arrangement" could only have existed at the time the landlord and tenant suit was filed against McCarthy and that the offense being laid between the dates mentioned, defendant was not reasonably informed of the charge the Government was making. The contention is without merit. We have recently held that in a possessory action the rights of the parties and the condition of plaintiff's claim are to be tested by the facts as they existed on the day the suit was filed. This, however, is a criminal prosecution in which the Government alleged a device or arrangement by which the landlord was seeking to evade the Rent Act. In the very nature of things such an offense would not necessarily be reflected in a single act or limited to a single day. A series of acts or a planned course of conduct might be expected to be revealed. Therefore the information was not faulty merely because it spreads the dates between the time appellant purchased the property and the time of the final act"the renting of the apartment to the new tenant. | In a possessory action to recover rented premises, rights of the parties and condition of plaintiff's claim are to be tested by the facts as they existed on the date the suit was filed. | "In a possessory action to recover rented premises, are the rights of the parties and condition of plaintiff's claim to be tested?" | 006140.docx | LEGALEASE-00128477-LEGALEASE-00128478 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7483 | E. M. Loew's Enterprises v. Int'l All. of Theatrical Stage Emp., 127 Conn. 415 | 13+65 | However that may be, injunctions fall within the field of equitable remedies and not equitable rights; they are necessarily prospective in their operation. An action for an injunction being equitable, whether or not a plaintiff is entitled to relief is determined, not by the situation existing when it is begun, but by that which is developed at the trial.Woodbridge v. Pratt & Whitney Co., 69 Conn. 304, 334, 37 A. 688; Mackey v. Dobrucki, 116 Conn. 666, 671, 166 A. 393. In an action seeking an injunction, we said: "In equitable proceedings, any events occurring after their institution may be pleaded and proved which go to show where the equity of the case lies at the time of the final hearing." Duessel v. Proch, 78 Conn. 343, 350, 62 A. 152, 155, 3 L.R.A.,N.S., 854. This is so thoroughly established a principle of law that any person bringing an action to secure an injunction must be considered to know it just as he is presumed to know that statutory changes in procedure, made after the action is brought, may affect it. There is no injustice in such a situation in applying to a pending case a change in the law such as that made by the statute now in question, and hence the presumption that the legislature did not intend that it apply is without basis. In this very case the plaintiff seeks to secure relief upon the ground that the strike to which the picketing was an incident had terminated since the bringing of the action, and we can see no material difference between the making the granting of relief dependent upon a factual situation changed since the action was begun and one making it dependent upon a changed legal situation. In Sherman v. Abeles, 265 N.Y. 383, 389, 193 N.E. 241, 95 A.L.R. 1384, an action seeking an injunction under the National Industrial Recovery Act, 48 Stat. 195, the court applied the provisions of a code for the motion picture industry which had not become effective until after the action was brought. | An action for an "injunction" being equitable, whether a plaintiff is entitled to relief is determined not by the situation existing when action was begun, but by that which has developed at the trial, since injunctions fall within the field of "equitable remedies", and not "equitable rights", and are necessarily prospective in their operation. | "An action for an ""injunction"" being equitable, is the question of whether a plaintiff is entitled to relief determined by that which has developed at the trial?" | 006148.docx | LEGALEASE-00128505-LEGALEASE-00128507 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 7484 | Baker & Taylor v. AlphaCraze.Com Corp., 602 F.3d 486 | 25T+182(1) | It is well-accepted that although the presumption in favor of arbitration is strong, "the obligation to arbitrate nevertheless remains a creature of contract." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir.2001); see also Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362, 369 (2d Cir.2003). The Federal Arbitration Act's " "proarbitration policy does not operate without regard to the wishes of the contracting parties." " Opals on Ice Lingerie, 320 F.3d at 369 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)); see also MBNA Amer. Bank, N.A. v. Boata, 283 Conn. 381, 926 A.2d 1035, 1040 (2007). Moreover, "[t]here is ... nothing irrevocable about an agreement to arbitrate." 1 Larry E. Edmonson, Domke on Commercial Arbitration " 23:2, at 23-2 (3d ed.2009) (internal quotation marks omitted) [hereinafter "Domke on Commercial Arbitration"]. "Both of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." Id. | There is nothing irrevocable about agreement to arbitrate; both parties may abandon this method of settling their differences, and under variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration. | Can parties to arbitration agreements abandon arbitration? | 007252.docx | LEGALEASE-00128653-LEGALEASE-00128655 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7485 | Bertelsen v. Cooney, 213 F.2d 275 | 92+2501 | Petitioner concedes, as indeed he must in the light of the adjudicated cases, that under Art. 1, sec. 8, of the Constitution, Congress has the power to raise and support armies, to maintain a Navy, and to draft personnel for service therein. This power exists in peace time as well as in war. The power is plenary. It is not for the judiciary to review the legislative branch on the question of what military strength is necessary for the safety of the Nation, nor how the forces shall be raised, nor of what elements they shall be composed. These matters are confided to Congress and its agencies. United States ex rel. Goodman v. Hearn, 5 Cir., 153 F.2d 186; United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; United States v. Henderson, 7 Cir., 180 F.2d 711; United States v. Cornell, D.C., 36 F.Supp. 81; Warren v. United States, 10 Cir., 177 F.2d 596; Bronemann v. United States, 8 Cir., 138 F.2d 333. | The power of Congress, under the Constitution, to raise and support Armies, to maintain a Navy, and to draft personnel for service therein, exists in peacetime as well as in war, and is plenary, and it is not for the judiciary to review the legislative branch on question of what military strength is necessary for safety of Nation, nor as to how the forces shall be raised, nor of what elements they shall be composed. Universal Military Training and Service Act, S 4(i) (1, 2) as amended 50 U.S.C.A.Appendix, S 454(i) (2); U.S.C.A.Const. art. 1, S 8; Amends. 5, 13. | Do the courts have the power to review the legislative branch on its power to raise and support armies? | 008322.docx | LEGALEASE-00128608-LEGALEASE-00128609 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 7486 | Parker v. Levy, 417 U.S. 733 | 92+4251 | (c) Because of the factors differentiating military from civilian society, Congress is permitted to legislate with greater breadth and flexibility when prescribing rules for the former than when prescribing rules for the latter, and the proper standard of review for a vagueness challenge to Code articles is the standard that applies to criminal statutes regulating economic affairs, and that standard was met here, since appellee could have had no reasonable doubt that his statements urging Negro enlisted men not to go to Vietnam if ordered to do so was both "unbecoming an officer and gentleman" and "to the prejudice of good order and discipline in the armed forces," in violation of Arts. 133 and 134, respectively. Pp. 2561"2562. | Where army officer could have had no reasonable doubt that his statements urging Negro enlisted men not to go to Vietnam if ordered to do so were both "unbecoming an officer and gentleman" and "to the prejudice of good order and discipline of the armed forces," the general articles of Uniform Code of Military Justice which authorize court-martial for conduct unbecoming an officer and a gentleman and similar treatment for disorders and neglects to prejudice of good order and discipline were not unconstitutionally invalid as applied to the captain. U.S.C.A.Const. Amend. 5; 10 U.S.C.A. SS 933, 934. | Is Congress permitted to legislate with both greater breadth and with greater flexibilitywhen military regulation is at issue? | 008340.docx | LEGALEASE-00128622-LEGALEASE-00128623 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7487 | Robinson v. Boyd, 288 Ga. 53 | 307A+501 | Prior to 2003, the right to take a unilateral voluntary dismissal generally ran until the plaintiff rested his case; now the right expires at the swearing of the first witness. See OCGA " 9"11"41(a)(1)(A). The Hobbs Court was aware of the potential unfairness of the longstanding rule, which was emphasized by the Court of Appeals in that case, see 209 Ga.App. at 857, 434 S.E.2d 748, but was compelled by the statutory text and precedent to follow the rule. Robinson and Eckerd essentially ask us to rewrite an unambiguous statute; the Legislature may do so if it chooses but this Court may not. See State v. Fielden, 280 Ga. 444, 448, 629 S.E.2d 252 (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes."). The General Assembly is presumably aware of the time periods established by its statutes, including the renewal statute, the five-year rule, and the various statutes of limitation, as well as our longstanding precedent. As we have explained, the renewal provision gives "a plaintiff an opportunity to escape from an "untenable position" and relitigate the case, and thus there is no "bad-faith exception" to the right to dismiss and later relitigate, despite inconvenience and irritation to the defendant." Lakes v. Marriott Corp., 264 Ga. 475, 476, 448 S.E.2d 203 (1994) (citation omitted). Robinson and Eckerd's arguments are therefore properly directed to the General Assembly. | There is no "bad-faith exception" to the right to dismiss and later relitigate in a renewal action, despite inconvenience and irritation to the defendant. West's Ga.Code Ann. S 9-2-61(a). | "Is there no ""bad-faith exception"" to the right to dismiss and later relitigate in a renewal action, despite inconvenience and irritation to the defendant?" | Pretrial Procedure - Memo # 936 - C - NS.docx | ROSS-003286179-ROSS-003286181 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7488 | Baca v. Hoover, Bax & Shearer, 823 S.W.2d 734 | 307A+508 | Tex.R.Civ.P. 162 provides that a plaintiff has an absolute right to take a nonsuit before resting its case against the defendant, provided that the defendant does not have a pending claim for affirmative relief. Johnson v. Harless, 651 S.W.2d 259, 260 (Tex.1983) (per curiam); Weaver v. Jock, 717 S.W.2d 654, 657 (Tex.App."Waco 1986, writ ref'd n.r.e.). A "claim for affirmative relief" must be a pleading that states facts showing a cause of action independent of the plaintiff's claim. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (per curiam); Progressive Ins. Co. v. Hartman, 788 S.W.2d 424, 426 (Tex.App."Dallas 1990, no writ); Weaver, 717 S.W.2d at 657. Such a claim allows the defendant to recover benefits, compensation, or relief even though the plaintiff has abandoned his cause of action or failed to establish it. Weaver, 717 S.W.2d at 657. If the defendant is doing nothing more than resisting the plaintiff's recovery, the pleading cannot be construed as requesting affirmative relief. Lipsey v. Lipsey, 660 S.W.2d 149, 151 (Tex.App."Waco 1983, no writ). Whether a pleading is an affirmative claim for relief is determined by the facts alleged and not by the name given the plea or by the form of the prayer for relief. Progressive Ins. Co., 788 S.W.2d at 426. A claim is "pending" from the time it has been filed until it is finally and conclusively disposed of. Tri"M Erectors, Inc. v. Clearwater Constructors, Inc., 788 S.W.2d 906, 908 (Tex.App."Austin 1990, writ denied). | Whether defendant's pleading is affirmative claim for relief, so as not to allow plaintiff to take nonsuit, is determined by facts alleged and not by name given plea or by form of prayer for relief. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is the determination whether a pleading is an affirmative claim for relief is made on the facts alleged or by the form of the prayer for relief? | 038987.docx | LEGALEASE-00128197-LEGALEASE-00128198 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7489 | Glencoe v. Neue Sentimental Film AG, 168 Cal. App. 4th 874 | 307A+501 | At respondent's request, the court dismissed the action with prejudice as to appellant, while appellant's motion for judgment was pending. (See Code Civ. Proc., " 581, subd. (e).) Appellant argues this should not be deemed a voluntary dismissal. But, as the court explained in D & J, Inc. v. Ferro Corp. (1986) 176 Cal.App.3d 1191, 1194, 222 Cal.Rptr. 656: "It is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one. Rather, the key is the plaintiff's role, if any, in bringing it about." The dismissal in this case, having been entered at respondent's request, is voluntary. (Id. at p. 1193, 222 Cal.Rptr. 656.) Thus there is no prevailing party for purposes of recovering attorney fees and costs incurred in defending the contract action under section 1717. (See Santisas v. Goodin (1998) 17 Cal.4th 599, 617, 71 Cal.Rptr.2d 830, 951 P.2d 399.) | It is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one; rather, the key is the plaintiff's role, if any, in bringing it about. | "Is it the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one or is the plaintiff's role in bringing it about, the key?" | 039517.docx | LEGALEASE-00128436-LEGALEASE-00128437 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7490 | Rokeby-Johnson v. Aquatronics Int'l, 159 Cal. App. 3d 1076 | 217+3526(10) | In subrogation litigation California follows the doctrine of superior equities. When a surety seeks recovery against a third person in weighing the equities, which includes consideration of the negligence of its insured and the third person, the burden is upon the surety to establish its superior equity. (Meyers v. Bank of America, etc. Ass'n, 11 Cal.2d 92, 103, 77 P.2d 1084.) Underwriters in its opening brief has suggested that Aquatronics' remedy should be against NSI for indemnification should Underwriters prevail in its suit against Aquatronics. Not only would this provide a windfall to Underwriters who took the benefit of the premiums and now declines to suffer the loss, but is suggesting that NSI, its insured, should or may be liable to stand the loss that it had insured against. We fail to see how the doctrine of subrogation comes to the aid of Underwriters in this situation. | When surety seeks recovery against third persons in weighing equities, which includes consideration of negligence of its insured and third persons, burden is upon surety to establish its superior equity. | "Under the doctrine of superior equities, does the surety has the burden to establish its superior equity in seeking recovery against a third party?" | 043163.docx | LEGALEASE-00128521-LEGALEASE-00128522 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7491 | Allstate Indem. Co. v. ADT LLC, 110 F. Supp. 3d 856 | 366+35 | Allstate does not contend that the waiver is unconscionable or against public policy, but that it is unenforceable because Allstate has alleged "willful and wanton" misconduct, and "[e]xculpatory provisions are not enforceable in cases of willful and wanton conduct." (R. 16, Pl.'s Resp. 4"5.) Allstate cites two decisions in support of its argument, Oelze v. Score Sports Venture, LLC, 401 Ill.App.3d 110, 339 Ill.Dec. 596, 927 N.E.2d 137 (2010), and Cat Iron, Inc. v. Bodine Environmental Services, No. 10 CV 2102, 2010 WL 3767986 (C.D.Ill. Sept. 28, 2010). Oelze and Cat Iron, however, are distinguishable because they involved exculpatory provisions, not subrogation waivers. As the Bastian and Hartford courts explained, subrogation waivers are not true exculpatory provisions. They merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated. Bastian, 635 F.Supp. at 203"05; Hartford, 122 Ill.Dec. 204, 526 N.E.2d at 466. Plaintiff fails to cite any decisions applying Illinois law in which the court refused to enforce a subrogation waiver where willful and wanton misconduct was alleged. | Under Illinois law, subrogation waivers are not true exculpatory provisions, but, rather, they merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated. | Are waivers of subrogation exculpatory provisions? | 043198.docx | LEGALEASE-00128519-LEGALEASE-00128520 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7492 | Frago v. Sage, 737 S.W.2d 482 | 366+41(6) | Subrogation originated as a common law doctrine. Kroeker v. State Farm Mutual Automobile Insurance Co., 466 S.W.2d 105, 110 (Mo.App.1971). Its aim is to advance justice and to prevent injustice. Street v. Lincoln National Life Insurance Company, 347 S.W.2d 455 (Mo.App.1961). Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it. Id. It also extends to persons who pay a debt in self-protection upon the premise they may suffer loss if the obligation is not satisfied or discharged. Quality Wood Chips, Inc. v. Adolphsen, 636 S.W.2d 94, 97 (Mo.App.1982). However, it does not extend to one who voluntarily discharges the debt. Loman v. Harrelson, 437 S.W.2d 123 (Mo.App.1968). The doctrine only exists against a party who is primarily liable and not one secondarily liable. Quality Wood Chips at 97. The burden is placed upon the party seeking subrogation to substantiate by clear and convincing evidence that as between himself and another party, the other party, in equity, should endure the loss. Street at 459. | Burden is placed upon party seeking subrogation to substantiate by clear and convincing evidence that, as between himself at another party, the other party, in equity, should endure the loss. | Should a party seeking equitable subrogation prove by clear and convincing evidence that equity requires another party to bear the loss? | 043330.docx | LEGALEASE-00128163-LEGALEASE-00128164 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7493 | Box v. Ameritrust Texas, N.A., 810 F. Supp. 776 | 401+5.1 | Texas courts have held that this section must be strictly construed, and that it only applies where suit is clearly within one of the categories set out therein. Scarth v. First Bank & Trust Co., 711 S.W.2d 140 (Tex.App.-Amarillo 1986, no writ). Further, courts have held that this section does not govern "where title to land was involved only incidentally or secondarily, but only where the title to the land is the 'dominant purpose' of the lawsuit." Id.; Stiba v. Bowers, 756 S.W.2d 835, 839 (Tex.App.-Corpus Christi 1988, no writ). The dominant purposes of the lawsuit is a question of law for the court. Evans v. Speed, 339 S.W.2d 257 (Tex.Civ.App.-Fort Worth 1960, writ dism'd w.o.j.). The Court must ascertain the dominant purpose solely from the face of the plaintiff's complaint, including the facts alleged, the rights asserted, and the relief requested therein. Stiba, 756 S.W.2d at 839. | Determining whether title to land is "dominant purpose" of suit so as to render Texas "local action" statute applicable is a question of law for the court, and court must ascertain dominant purpose solely from the face of plaintiff's complaint, including the facts alleged, the rights asserted, and the relief requested. V.T.C.A., Civil Practice & Remedies Code S 15.011. | Is the dominant purpose of a lawsuit a question of fact or a question of law? | Venue - Memo 111 - RK.docx | ROSS-003286927-ROSS-003286928 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 7494 | Holder v. Indus. Comm'n of Arizona, 125 Ariz. 366 | 413+5 | The underlying thrust of Workmen's Compensation law was to relieve the individual workman and his dependents from the loss sustained by industrial injuries and place the burden upon industry as a whole. Hannon v. Industrial Commission, 9 Ariz.App. 231, 451 P.2d 44 (1969). The theory is to compensate the workman for financial loss and loss of earning capacity. Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Inspiration Consolidated Copper Co. v. Smith, 78 Ariz. 355, 280 P.2d 273 (1955), and thus prevent him and his dependents from becoming public charges. Powell v. Industrial Commission, 104 Ariz. 257, 451 P.2d 37 (1969). However, the Workmen's Compensation laws were not intended to provide general health and accident insurance coverage or life insurance coverage. Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612 (1950). | The underlying thrust of Workmen's Compensation Law was to relieve individual workman and his dependents from loss sustained by industrial injury and place burden upon industry as a whole; the theory is to compensate workman for financial loss and loss of earning capacity and thus prevent him and his dependents from becoming public charges, but the Workmen's Compensation Laws were not intended to provide general health and accident insurance coverage or life insurance coverage. A.R.S. S 23-901 et seq. | Is workers' compensation laws enacted to place the burden of industrial injury and death on industry? | 048547.docx | LEGALEASE-00128705-LEGALEASE-00128706 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 7495 | Serna v. Webster, 908 S.W.2d 487 | 30+5 | The requirements for bringing an appeal by writ of error are: (1) the appeal must be brought within six months after the judgment was signed; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error must be apparent from the face of the record. General Elec. Co. v. Falcon Ridge Apts., Joint Venture, 811 S.W.2d 942, 943 (Tex.1991); Stubbs v. Stubbs, 685 S.W.2d 643, 644 (Tex.1985); Brown v. McLennan County Children's Protective Servs., 627 S.W.2d 390, 392 (Tex.1982). Each of these elements is mandatory and jurisdictional. Robertson v. Hide-A-Way Lake Club, Inc., 856 S.W.2d 841, 843 (Tex.App.-Tyler 1993, no writ). | To bring appeal by writ of error, appeal must be brought within six months after judgment was signed, by party to suit who did not participate in actual trial, and error must be apparent from face of record. | What are the requirements for bringing an appeal by writ of error? | Appeal and error - Memo 48 - RK.docx | ROSS-003312554-ROSS-003312555 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 7496 | United States v. Holmes, 387 F.2d 781 | 34+1 | In Badger v. United States, 322 F.2d 902 (9 Cir., 1963), cert. den. 376 U.S. 914 (1964), a Jehovah Witness had been classified 1-O. He argued that compulsory civilian duty in peacetime violates the prohibition of involuntary servitude in the Thirteenth Amendment. In rejecting the defendant's argument, the Court quoted from its earlier decision in Howze v. United States, 272 F.2d 146, 148 (9 Cir., 'The appellant also urges that the Thirteenth Amendment to the Constitution prohibits a civilian labor draft in peacetime, absent a national emergency. He mis-states the case. Compulsory civilian labor does not stand alone, but it is the alternative to compulsory military service. It is not a punishment, but is instead a means for preserving discipline and morale in the armed forces. The power of Congress to raise armies and to take effective measures to preserve their efficiency, is not limited by either the Thirteenth Amendment or the absence of a military emergency.' | Power of Congress to raise armies and to take effective measures to preserve their efficiency is not limited by either the Thirteenth Amendment or the absence of military emergency. Universal Military Training and Service Act, S 12, 50 U.S.C.A. App. S 462; U.S.C.A.Const. Amend. 13. | Is the power of congress to raise armies limited by the thirteenth amendment? | Armed Forces - Memo 18 - RK.docx | ROSS-003287296-ROSS-003287297 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7497 | Comer v. Micor, 436 F.3d 1098 | 25T+141 | We turn, then, to the single issue that was briefed and argued by the parties: whether the arbitration agreements apply to Comer's ERISA claim against Smith Barney. In Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185 (9th Cir.1986), we explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Id. at 1187-88. Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995). In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 195 (3d Cir.2001). | Nonsignatories of arbitration agreement may be bound by agreement under ordinary contract and agency principles, including: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. | Can nonsignatories of arbitration agreements be bound by the agreement under ordinary contract and agency principles? | Alternative Dispute Resolution - Memo 504 - RK.docx | ROSS-003300449-ROSS-003300450 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 7498 | Bank Leumi Tr. Co. of New York v. Bally's Park Place, 528 F. Supp. 349 | 172H+574(1) | Furthermore, although the death of the maker of a check or note does not terminate his liability, it does revoke the authority of the payee to collect from the drawee-bank and relegates the payee to the status of a general creditor of the estate of the deceased. InreKolben'sEstate, 203Misc. 1012, 1014, 120N.Y.S.2d812 (N.Y.Sur.Ct.1953); In re Greene's Estate, 47 Misc.2d 140, 143, 261 N.Y.S.2d 977 (N.Y.Sur.Ct.1965). The U.C.C. provides a similar result. New York U.C.C. s 4-405(1). "Under 4-405(1) a bank's authority to handle items on its customer's account terminates when the bank learns that he has died ...." White & Summers, Uniform Commercial Code at 665 (2d ed. 1980). Bally's, therefore, had no right to collect the check from Bank Leumi once it knew Brinker had died. On this additional ground, Bank Leumi may recover for its mistaken payment. | Under New York law, although death of maker of check or note does not terminate his liability, it does revoke authority of payee to collect from drawee-bank and relegates payee to status of general creditor of estate of the deceased. McKinney's N.Y. Uniform Commercial Code S 4-405(1). | Does the death of the maker of a check or instrument terminate his liability? | 009393.docx | LEGALEASE-00129187-LEGALEASE-00129188 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7499 | Silverstein v. Exciting Fashions, 281 A.D. 854 | 302+8(11) | The complaint does not allege ultimate facts showing that plaintiff is the legal or equitable owner of stock of the defendant corporation. Such an action may only be prosecuted in the right of the corporation. The naked allegation that plaintiff is the "beneficial owner" of stock is insufficient without allegations of ultimate fact to sustain such a conclusory allegation, especially where it is alleged that the stock involved is held in the name of an undisclosed nominee. Miller v. Miller, 256 App.Div. 846, 9 N.Y.S.2d 448, affirmed 280 N.Y. 716, 21 N.E.2d 212 and cases cited therein. | In stockholders' derivative action, naked allegation in complaint that plaintiff was beneficial owner of stock was insufficient without allegation of ultimate fact to sustain such allegation, especially in view of fact that it was alleged that stock was held in name of undisclosed nominee. Rules of Civil Practice, rule 106, subds. 2, 4. | "Is an allegation that plaintiff is the beneficial owner of stock, an allegation of ultimate fact?" | Pleading - Memo 221 - RMM.docx | LEGALEASE-00019209-LEGALEASE-00019210 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 7500 | Bobillot v. Clackamas Cty., 181 Or. 30 | 307A+501 | Most jurisdictions in this country have statutes governing the granting of voluntary nonsuits and dismissals. These statutes generally limit or modify but do not abolish the common-law doctrine and, since they are in derogation of the common law, must be strictly construed. Ordinarily they will not be extended to include cases not within their express terms. 27 C.J.S., Dismissal and Nonsuit, " 8, p. 161; 17 Am.Jur., " 23, p. 70; State v. Lupton, 163 Md. 180, 189, 161 A. 393. | Statutes governing voluntary nonsuits, if they are in derogation of the common law, must be strictly construed and ordinarily they will not be extended to include cases not within their express terms. | Can a statute prohibiting the dismissal of an action after final submission of the case be extended to prohibit the dismissal of a case not falling within its express terms? | 025072.docx | LEGALEASE-00129384-LEGALEASE-00129385 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 7501 | Brown v. Garcia, 2 Misc. 3d 915 | 307A+501 | A motion for leave to discontinue litigation, pursuant to CPLR 3217, is addressed to the sound discretion of the court (see, Tucker v. Tucker, 55 N.Y.2d 378, 383, 449 N.Y.S.2d 683, 434 N.E.2d 1050). Generally, a party cannot be compelled to litigate a claim and, absent special circumstances, a motion for leave to discontinue should be granted (see, Tucker v. Tucker, supra; Shaffer v. Best Farms No. 3, 107 A.D.2d 745, 484 N.Y.S.2d 107; National Bank v. Brook Shopping Centers, 105 A.D.2d 734, 481 N.Y.S.2d 169). A plaintiff should be permitted to discontinue the action at any time "unless substantial rights have accrued or his adversary's rights would be prejudiced thereby" (see, Louis R. Shapiro, Inc. v. Milspemes Corp., 20 A.D.2d 857, 248 N.Y.S.2d 85). | Generally, a party cannot be compelled to litigate a claim and, absent special circumstances, a motion for leave to discontinue should be granted. McKinney's CPLR 3217. | Can a party be compelled to litigate a claim and should a motion for leave to discontinue be granted absent special circumstances? | Pretrial Procedure - Memo # 1291 - C - PB.docx | ROSS-003287727-ROSS-003287728 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7502 | MacDermot v. Grant, 181 Cal. 332 | 307A+501 | Under the provisions of subdivision 2, an action may be dismissed by either party upon the written consent of the other. Conceding that an action may be thus dismissed at any time before judgment, the fact remains that in the case at bar no effective written consent on the part of appellant to the attempted dismissal by Flora Proctor, Mary Crawford, and Alfred MacDermot was ever filed. It is true that a stipulation was filed consenting to the dismissal and signed by appellant personally and that oral consent was given by appellant's attorney, who was not, however, his attorney of record.But it is well settled that the written consent referred to in the Code provision now under consideration is wholly ineffective unless it is signed by the attorney of record of the consenting party.Commissioners v. Younger, 29 Cal. 149, 87 Am. Dec. 164, quoted with approval in Boca, etc., Co. v. Superior Court, 150 Cal. 153, 156, 88 Pac. 718. | The written consent to dismissal of the action by plaintiff, referred to in Code Civ.Proc. S 581, subd. 2 (West's Ann.Code Civ.Proc.), is wholly ineffective unless signed by the attorney of record of the consenting party. | Is the written consent to dismissal of the action by a plaintiff wholly ineffective unless signed by the attorney of record of the consenting party? | 026246.docx | LEGALEASE-00129287-LEGALEASE-00129288 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7503 | Granda v. State Farm Mut. Ins. Co., 935 So. 2d 698 | 48A+290 | A motorist has a duty to control an automobile and to maintain a proper lookout. Bieber, 764 So.2d at 991. The roadway and shoulder of the highway are intended for vehicular use by statutory definitions; however, a roadside ditch is not so intended. See Capone v. Ormet Corporation, 01-0060 (La.App. Ist Cir.6/21/02), 822 So.2d 684, 693, writ denied, 02-2379 (La.11/22/02), 829 So.2d 1051. A roadside ditch is constructed and maintained for the purpose of draining the highway. Because the roadside ditch is intended for drainage and not vehicular use, there was no duty on the part of BellSouth to construct or maintain the utility pole located on the back slope of the ditch in such a way that it did not pose an unreasonable risk of danger for vehicles in the ditch. Rogers v. Parish of East Baton Rouge, 577 So.2d 1068, 1072 (La.App. Ist Cir.), writ denied, 580 So.2d 925 (La.1991); see Capone, 822 So.2d 684, 702-03. A utility company has no general obligation to guard against rare exigencies such as an out-of-control vehicle leaving a traveled roadway. Bieber, 764 So.2d at 991-92. Therefore, the granting of BellSouth's motion for summary judgment on the basis that it did not owe a duty to the Grandas was appropriate. | A utility company has no general obligation to guard against rare exigencies such as an out-of-control vehicle leaving a traveled roadway. | Does a utility company have an obligation to guard against rare exigencies like an out-of-control vehicle leaving a traveled roadway? | Public Utilities - Memo 255 - AM.docx | ROSS-003288186-ROSS-003288187 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7504 | (N G) v. United States, 94 Fed. Cl. 375 | 258A+526 | Command influence may be found to exist if a reasonable citizen, knowing all of the facts of a given case, would believe the military justice system to be unfair and, as such, lose confidence in the entire system. United States v. Lawson, 33 M.J. 946, 950 (N.M.C.M.R.1991). The mere appearance of command influence is sufficient. United States v. Stoneman, 57 M.J. 35, 42"43 (U.S. Armed Forces 2002). Although generally applied to military judicial proceedings, such as a court-martial, this principle also is applied to administrative hearings, e.g., Werking v. United States, 4 Cl.Ct. 101, 105 (1983), and it must be raised during the administrative proceedings in order to be reviewed by this court, see Murakami, 398 F.3d at 1354 | Command influence may be found to exist if a reasonable citizen, knowing all of the facts of a given case, would believe the military justice system to be unfair and, as such, lose confidence in the entire system; the mere appearance of command influence is sufficient. | When does command influence exist? | 008414.docx | LEGALEASE-00130079-LEGALEASE-00130080 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 7505 | Rutledge v. Workman, 175 W. Va. 375 | 79+6 | The clerk of a circuit court of this State is subject to the overall administrative control and direction of the West Virginia Supreme Court of Appeals through the Chief Justice and the Administrative Director of the Supreme Court of Appeals and, thereafter, is subject to the day-to-day supervision of the Chief Circuit Judge of the circuit in which the clerk serves. Furthermore, the circuit clerk has an obligation of the utmost good faith in her dealings with all judges of a circuit court, and any decision to hire, fire, promote, demote, or transfer any and all personnel in the office of the circuit clerk that have any responsibility whatsoever within the judicial system must be made with that obligation firmly in mind. A circuit clerk who fails to live up to this obligation may be removed from office pursuant to W.Va.Code 6-6-7 [1923]. When there is conflict among or between judges of a circuit court concerning the proper way for a circuit clerk to dispatch her duties, the judgment and discretion of the chief circuit judge controls. | Circuit judge had complete control of deputy clerk assigned to her court and circuit clerk could be removed from office under statute governing clerk's conduct, Code, 6-6-7, for failing to comply in utmost good faith with directions of circuit court as to transfer of deputy clerk. | Can a circuit court clerk be removed from office for failing to comply in the utmost good faith with the directions of the circuit court? | 013375.docx | LEGALEASE-00130183-LEGALEASE-00130184 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7506 | Whaley v. Whitaker Bank, 254 S.W.3d 825 | 307A+506.1 | CR 41.01(1) does not address whether a motion to dismiss that is treated as a motion for summary judgment terminates a plaintiff's right to voluntarily dismiss its complaint. To date, Kentucky courts have not yet addressed the issue. The Kentucky Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure ("Fed. R. Civ.Pro."). See West v. Goldstein, 830 S.W.2d 379, 384 (Ky.1992). But in interpreting the corresponding federal rule, there is some disagreement among the Federal Circuit Courts on this issue. Many of the Federal Circuits seem to view the interplay between Rule 41 and Rules 12 and 56 as barring voluntary dismissal where the defendant has spent considerable time and effort in litigation. Some courts have viewed a filed motion to dismiss as a pending motion for summary judgment solely because the defendant has attached supporting affidavits or documents outside the pleadings not excluded by the court. See Wilson"Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir.1991). In these circumstances, if the district court accepts and considers the affidavits relevant to the motion to dismiss for failure to state a claim, the motion to dismiss is converted to a motion for summary judgment and prevents voluntary dismissal. Id.; see also Manze v. State Farm Ins. Co., 817 F.2d 1062, 1066 (3rd Cir.1987) (stating that where a defendant "intend[s] a Rule 56 motion by its motion to dismiss," or where court "treats it as such," voluntary dismissal right barred). | Under rule providing that plaintiff's right to voluntarily dismiss action unilaterally and without prejudice is limited to time before service by adverse party of answer or motion for summary judgment, motion to dismiss for failure to state a claim that is treated as motion for summary judgment does not terminate plaintiff's right to voluntarily dismiss its complaint. Rules Civ.Proc., Rules 12.02, 41.01(1). | Does a motion to dismiss terminate a plaintiff's right to voluntarily dismiss the action unless the motion to dismiss is converted into a motion for a summary judgment? | 026175.docx | LEGALEASE-00129780-LEGALEASE-00129782 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7507 | Jones v. Ayers, 212 Cal. App. 2d 646 | 307A+742.1 | Much is said in the briefs about the question of agency of one defendant for another and whether it, though an issue drawn by the pleadings, was eliminated by silence of the pre-trial order with respect to it. As appears from the foregoing analysis of this case the question of agency has no significance anywhere except in the matter of Rudy entrusting the car to Tom. That act, according to the Souza case, supra (last paragraph of opinion, 22 Cal.2d page 461, 139 P.2d page 648), made Tom his agent. Of course, that was a legal implication drawn by the court. The pre-trial hearing and order are intended to facilitate the trial, not to impair or impede it. We think that it is unnecessary where an issue has been stated in its larger aspect in the pre-trial order for the court to then enumerate its constituent elements as issues still in the case. Here, one of the "issues of fact and law remaining in dispute" was stated as "[n]egligence, if any," of Rudolph Bowers. In the joint statement of counsel which was incorporated into the court's order it was also stated that "[p]laintiff contends that defendants Donald Alan Story, Thomas Ayers and Rudolph Bowers were negligent and that their negligence was a proximate cause of her damage. | Pre-trial hearing and order are intended to facilitate, not to impair or impede, trial and where an issue has been stated in its larger aspect in pre-trial order it is not necessary for court to enumerate its constituent elements as issues still in case. | What do the pre-trial hearings and order intend to facilitate? | 026258.docx | LEGALEASE-00129819-LEGALEASE-00129820 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7508 | Brandenburger v. Puller, 266 Mo. 534 | 307A+501 | This is a substantial epitome of respondents' authorities, and, as seen, they do not sustain their contention. Ordinarily, a party has the legal right, at any time, to dismiss his suit upon such terms, and under such conditions, as he sees fit, and, under the authorities, it cannot be doubted that the agreement of a person, legally in a position to contest a will, to refrain from opposing its establishment, is a sufficient consideration to support a promise to pay. By such forbearance the proponents of the will gain its establishment, in so far as the threatened contestant is concerned, and he, in turn, surrenders the power secured to him by law to protect rights which he believes exist, and which he otherwise might have legally established. We know of no rule of public policy which requires a person to contest his ancestor's sanity, or to continue a costly suit to the depletion of his own funds and those of the estate after his own rights have been conceded and secured. It is true that in this state it has been held a contestant cannot dismiss his suit in a will contest until due proof of the execution of the will has been made (Hogan v. Hinchey, 195 Mo. 527, 94 S. W. 522), but this does not preclude the parties, in the absence of fraud, even though some are exacting and dissatisfied, from agreeing upon the proof or conceding its sufficiency, and thus avoiding the expense and trouble of litigation. The primary purpose of this law is, not to encourage litigation, but to prevent fraud in the establishment and probate of wills. Such a ruling, if bearing it has upon this subject, only tends to emphasize the right of one contestant to compromise and settle his own claims. This ruling prevents only and both the institution of contest suits within the statutory period by one person and his compromise thereof to the detriment and injustice of others who have refrained from filing suits because of the one instituted and the establishment of wills without due proof thereof. As was done in this | Ordinarily a party has the legal right at any time to dismiss his suit upon such terms and under such conditions as he sees fit. | "Does a party has the legal right, at any time, to dismiss his suit upon such terms and conditions, as he sees fit?" | Pretrial Procedure - Memo # 1340 - C - TJ.docx | ROSS-003287753-ROSS-003287755 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 7509 | Daube v. Kuppenheimer, 195 Ill. App. 99 | 307A+501 | In practice, the decision of the court upon a motion for a peremptory instruction is usually announced to counsel before the instruction is, in fact, read or given to the jury; and this practice is certainly in accord with the principle announced in the cases above cited. In the present case, however, the court orally instructed the jury to find a verdict in the same sentence in which he announced his decision upon the motion for an instructed verdict, without giving the plaintiffs counsel any opportunity whatever to move for a nonsuit until after the instruction had been orally pronounced. It is conceded by defendant's counsel that if the trial judge had not actually instructed the jury to sign a verdict, but had merely announced his intention to do so, and stated the reasons that prompted him so to do, the plaintiff's right to a nonsuit would not have been barred if exercised before the formal instruction was pronounced. [{The right to take a nonsuit is a substantial right, and ought not to be taken away without giving the plaintiff some opportunity to exercise that right. To hold that the plaintiff's right was barred merely because the peremptory instruction was pronounced in the same breath with the announcement of the court's decision upon the motion for an instructed verdict, would be, in effect, to deprive the plaintiff of any right of election, and, in our opinion, would give more effect to mere form than to substance. If, as was held in the cases above cited, the statute was intended to secure to a plaintiff not only the right of knowing the whole of the evidence in the case, but also of having the benefit of the arguments of opposite counsel and the law of the case as given by the court, so that he may (then) judiciously determine whether or not to take a nonsuit, then it follows that he cannot be deprived of that right until he has had an opportunity to make his election after he is advised of the court's views as to the law of the case. The important and essential thing is that the plaintiff shall | Right to take nonsuit is substantial right and ought not to be taken away without giving plaintiff some opportunity to exercise it. | Does the right to take nonsuit a substantial right and should not to be taken away without giving the plaintiff some opportunity to exercise that right? | Pretrial Procedure - Memo # 1341 - C - TJ.docx | ROSS-003299616-ROSS-003299617 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 7510 | Hodge v. Myers, 255 S.C. 542 | 307A+742.1 | This is the first time our court has been called upon to interpret Rule 43. The following, taken from 88 C.J.S. Trial s 17(2) (1955), is relevant to the powers of the pretrial judge and to the purposes of the pretrial conference: 'The purposes of pretrial conferences are to expedite trials or shorten the actual period of trial, to narrow or simplify the issues, to eliminate the doing of useless things and to facilitate the attainment of justice between the parties. Pretrial conferences are designed to prevent surprise and eliminate maneuvering; to encourage the settlement of cases in advance of the formal trial; to limit the issues for trial to those not disposed of by admissions or agreements of counsel; to avoid unnecessary proof of facts at the trial; to avoid the evil of submitting a complicated case to the jury in such a manner as to be incomprehensible to the jury; to compel the factual truth in the controversy short of invading the private, separate counsel of the parties; to amend the pleadings where necessary or to dispose of possible amendments of the pleadings; to obtain agreements concerning material evidence; to procure the presentation and identification of papers, documents, and exhibits of various kinds in advance of the formal trial; to determine the number of expert witnesses; and, in general, to do whatever may be reasonably necessary to facilitate and shorten the formal trial.' | The purposes of pretrial conferences are to expedite trials or shorten the actual period of trial, to narrow or simplify the issue, to eliminate the doing of useless things, and to facilitate the attainment of justice between the parties. Circuit Court Rules, rule 43. | Is pretrial practice designed to facilitate attainment of justice between parties? | Pretrial Procedure - Memo # 1348 - C - TJ.docx | ROSS-003287032-ROSS-003287033 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7511 | Peoples City Bank v. John Hancock Mut. Life Ins. Co., 353 Pa. 123 | 307A+22 | In Whetsel v. Shaw, 343 Pa. 182, 22 A.2d 751, it was held that the remedy afforded by the Act of February 27, 1798, 3 Sm. L. 303, 28 P.S. " 61, is not available for the production of documents prior to trial; the inadequacy of that remedy may be illustrated by Henderson & Son v. F. H. Smith Co., 304 Pa. 97, 155 A. 430. Process by subpoena duces tecum is inadequate for the bank's purposes for the same reason and also because the insurance company's home office is not in this state. While the rules for pre-trial conference provide a method of simplifying issues, and controlling trial procedure, there is nothing to indicate that they were intended to displace the bill of discovery; they do not provide for the compulsory disclosure of evidence by the opposing party under oath"one of the essentials of discovery. "A bill of discovery in aid of an action at law is favored in equity, and will be allowed if a more convenient remedy, even though there be a similar process at law." Compton v. International Harvester Co., 297 Pa. 462, 147 A. 93, 95. | The rules for pretrial conference provide for a method of simplifying issues and controlling trial procedure, but they were not intended to displace the bill of discovery. Rules of Civil Procedure, rule 212, 12 P.S.Appendix, 17 P.S. SS 282, 283. | Do the rules for pretrial conference provide for a method of simplifying issues and controlling trial procedure? | 026292.docx | LEGALEASE-00129721-LEGALEASE-00129722 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 7512 | King v. Zimmerman, 266 Mont. 54 | 307A+743 | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order.Zimmerman, 854 P.2d at 342. In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | "Is the purpose of the pretrial order to prevent surprise, simplify the issues, and permit the parties to prepare for trial?" | 026313.docx | LEGALEASE-00129783-LEGALEASE-00129784 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7513 | Pulse v. Hill, 217 Cal. App. 2d 301 | 307A+743 | Rule 210(c), California Rules of Court, relating to pretrial conferences, provides in part that counsel shall submit to the pretrial conference judge a: 'written statement of the factual and legal contentions to be made as to the issues remaining in dispute.' The factual and legal contentions of the parties and the issues remaining in dispute are then carried over into the pretrial conference order, and the order controls subsequent proceedings unless modified at or before trial. (California Rules of Court, 214(1); 216.) The principal purposes of pretrial are to find out what the lawsuit is about, to simplify and define the issues to be litigated, and to determine how the trial may proceed most expeditiously. It is also to give notice of matters not necessarily revealed by the pleadings where such matters may be issues in the case. Where, as here, a party knows he must rely upon an estoppel to overcome affirmative matters of defense pleaded in the answer, it is his duty to raise this issue in the pretrial conference, and thus give notice to his opponent that this issue is to be litigated in the case. Since respondent did not raise the issue of estoppel at pretrial, and appellant had no notice of it, and no opportunity to prepare his own evidence to meet it, the claimed estoppel cannot be relied upon to support the judgment. To hold otherwise would not be in accord with either the letter or the spirit of the California Rules of Court relating to pretrial conferences. (Dell 'Orto v. Dell 'Orto, 166 Cal.App.2d 825, 831, 334 P.2d 97; Knowles v. Robinson, 214 A.C.A. 632, 29 Cal.Rptr. 525.) If upon retrial, respondent wishes to pursue the issue of estoppel he may do so by appropriate motion to modify the pretrial conference order (California Rules of Court, 216), and if this issue is permitted to remain in the case, appellant will have proper notice of the charge he must meet, and an opportunity to present his evidence in rebuttal. | Principal purposes of pretrial are to find out what lawsuit is about, to simplify and define issues, to determine how trial may proceed most expeditiously and to give notice of matters not necessarily revealed by pleadings where such matters may be issues in case. Cal.Rules of Court, rules 210(c), 214(1), 216. | What is principal purpose of pretrial? | Pretrial Procedure - Memo # 1411 - C - UG.docx | ROSS-003286149-ROSS-003286150 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7514 | Muller v. Brailofsky, 179 Misc. 2d 634 | 307A+742.1 | Preliminary conferences serve another useful function not frequently mentioned in the cases. Too often, cases are permitted to remain in the Supreme Court even though the injuries or damages allegedly sustained do not meet the jurisdictional requirement and the insurance policy limits by a carrier do not exceed $20,000 or $30,000. A preliminary conference thus permits the Court to make the necessary inquiries of counsel at an early stage of the litigation and to decide which cases ought to remain in Supreme Court and which matters should be referred to the Civil Court of the City of New York pursuant to CPLR " 325(d). The Court, therefore, on its own motion, sets this matter for a preliminary conference to be held on February 11, 1999, at 9:30 A.M., in Room 1117. In the present case, counsel put a case on a trial calendar without any discovery, when it is this Court"and not counsel"who should control the calendar. | Useful function of preliminary conference is to permit Supreme Court to make the necessary inquiries of counsel at an early stage of the litigation, and to decide which cases ought to remain in Supreme Court, and which matters should be referred to Civil Court. | What is the useful function of a preliminary conference? | Pretrial Procedure - Memo # 1570 - C - TM.docx | LEGALEASE-00019954-LEGALEASE-00019955 | Condensed, Order, SA | 0.72 | 1 | 1 | 0 | 1 | 1 |
| 7515 | A.T. ex rel. T.T. v. Cohen, 445 N.J. Super. 300 | 307A+517.1 | The decision whether to dismiss a matter without prejudice under Rule 4:37"1(b) lies within the judge's sound discretion. Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J.Super. 254, 258, 581 A.2d 1372 (App.Div.1990). "In exercising that discretion, the court is chiefly required to protect "the rights of the defendant." " Shulas v. Estabrook, 385 N.J.Super. 91, 97, 895 A.2d 1234 (App.Div.2006) (quoting Burke v. Cent. R. Co., 42 N.J.Super. 387, 397, 126 A.2d 903 (App.Div.1956)). In Shulas, supra, 385 N.J.Super. at 101"02, 895 A.2d 1234, we instructed that "an examination into the propriety of a voluntary dismissal without prejudice requires an investigation into the reasons why the order was sought as well as the actions or inactions of the parties that preceded its entry." | In exercising the discretion afforded the court in the rule authorizing a voluntary dismissal of an action by an order of the court, the court is chiefly required to protect the rights of the defendant. N.J. Ct. R. 4:37-1(b). | "In exercising the discretion afforded the court in the rule authorizing a voluntary dismissal of an action by an order of the court, is the court chiefly required to protect the rights of the defendant?" | Pretrial Procedure - Memo # 2489 - C - PC.docx | LEGALEASE-00020046-LEGALEASE-00020047 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7516 | Beckham v. William Bayley Co., 655 F. Supp. 288 | 25T+143 | The parties' failure to use phrases or terms ordinarily included in an arbitration clause is evidence that they did not agree to arbitrate all the issues arising out of their business relationship. See Bell Canada, 563 F.Supp. at 639 (that parties did not use the standard or a similar broad clause but tailored a provision applicable only in a clearly defined situation is forceful evidence of their purpose to limit the arbitrable issues). See also AT & T Technologies, 475 U.S. at """", 106 S.Ct. at 1420 (issue in case is whether, because of express exclusion or other forceful exclusion, the dispute is not subject to the arbitration clause). | Parties' failure to use phrases or terms ordinarily included in arbitration clause is evidence that they did not agree to arbitrate all issues arising out of their business relationship. 9 U.S.C.A. S 1 et seq. | What do courts infer when the parties fail to use phrases or terms ordinarily included in an arbitration clause? | 007415.docx | LEGALEASE-00131376-LEGALEASE-00131377 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7517 | Caribbean S.S. Co., S. A. v. Sonmez Denizcilik Ve Ticaret A. S., 598 F.2d 1264 | 25T+143 | The cargo owner's claim has already been held to be non-arbitrable by Judge Brieant. And we agree with appellant when it argues that an assignee of a claim takes it with whatever limitations it had in the hands of the assignor. In this case, that means that the charterer cannot force the shipowner to arbitrate the cargo owner's claim against the shipowner. One cannot make an arbitrable claim out of a non-arbitrable one by assigning it to a person having a broad "any dispute" arbitration contract with the party against whom the claim lies, at least in the absence of evidence showing that the parties to the arbitration contract intended sucha result. | One cannot make arbitrable claim out of nonarbitrable one by assigning it to person having broad "any dispute" arbitration contract with party against whom the claim lies, at least in absence of evidence showing that parties to arbitration contract intended such a result. | Can a party make an arbitrable claim out of a nonarbitrable agreement by assigning it to another? | Alternative Dispute Resolution - Memo 558 - RK.docx | ROSS-003286541-ROSS-003286542 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 7518 | People v. Kwok, 63 Cal. App. 4th 1236 | 67+2 | Here, appellant's entries into Desli's residence may be said to constitute a "course of conduct" in a broad sense because the first entry was intended at least in part to facilitate the crimes committed nine days later. But it is clearly a "course of conduct divisible in time," consisting of separate offenses which may therefore be separately punished. (See People v. Beamon, supra, 8 Cal.3d at p. 639, fn. 11, 105 Cal. 681, 504 P.2d 905; In re William S., supra, 208 Cal.App.3d at pp. 318-319, 256 Cal.Rptr. 64; People v. Williams, supra, 201 Cal.App.3d at p. 442, 247 Cal.Rptr. 200; People v. Gopal, supra, 171 Cal.App.3d at p. 550, 217 Cal.Rptr. 487.) Moreover, each entry into the residence created a separate and distinct risk of violent confrontation. Laws against burglary are primarily designed not to deter trespass or the supporting theft or felony intended by the burglar, but rather "'... to forestall the germination of a situation dangerous to personal safety.' " (People v. Gauze (1975) 15 Cal.3d 709, 715, 125 Cal.Rptr. 773, 542 P.2d 1365, quoting People v. Lewis (1969) 274 Cal.App.2d 912, 920, 79 Cal.Rptr. 650; People v. Statler (1985) 174 Cal.App.3d 46, 54, 219 Cal.Rptr. 713.) Because appellant entered the house on two separate occasions nine days apart, the factual situation here is distinguishable from the scenario in which a burglar makes repeated entries in rapid succession. (See In re William S., supra, 208 Cal.App.3d at p. 317, 256 Cal.Rptr. 64; People v. Escobar (1992) 7 Cal.App.4th at 1430, 1437, 9 Cal.Rptr.2d 770.) | Laws against burglary are primarily designed not to deter trespass or the supporting theft or felony intended by burglar but rather to forestall germination of situation dangerous to personal safety. | Is the burglary statute primarily designed to deter trespass? | Burglary - Memo 24 - RK.docx | ROSS-003327191-ROSS-003327193 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7519 | Webb v. Jorns, 530 S.W.2d 847 | 307A+501 | The court denied plaintiffs' motion for non-suit. Because of this they claim reversible error. By T.R.C.P. 164, "Non-Suit", a plaintiff may take a non-suit in a jury case at any time before the jury has retired to consider its verdict. By inherent authority of the court in the exercise of its discretion it might thereafter allow the taking of non-suit up to the point in time when the jury's verdict has been accepted. Albert v. Albert, 377 S.W.2d 772 (San Antonio, Tex.Civ.App., 1964, writ ref., n.r.e.). Here the verdict had been returned but was not yet accepted. Anyway the motion for non-suit was made after the jury retired to consider its verdict and this was the time by which plaintiffs must have moved for non-suit if they were to be entitled to it as a matter of right. | Statute providing that a plaintiff may take a nonsuit in a jury case at any time before the jury has retired to consider its verdict is not unconstitutional. Rules of Civil Procedure, rule 164. | Is a statute providing that a plaintiff may take a nonsuit in a jury case at any time before the jury has retired to consider its verdict unconstitutional? | 026066.docx | LEGALEASE-00130677-LEGALEASE-00130678 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7520 | Am. Tr. Co. v. Bloom, 148 S.C. 386 | 307A+501 | We think that his honor should have granted the motion for a voluntary nonsuit, which the plaintiff's counsel had a right to move for at any time before the rendition of the verdict, unless the defendant would have been deprived of some right thereby, which does not appear. Having failed to do so, he was entirely right in granting the new trial. | Plaintiff may move for voluntary nonsuit any time before verdict, unless defendant is thereby deprived of some right. | "May a plaintiff move for a voluntary nonsuit any time before a verdict, unless a defendant is thereby deprived of some right?" | 026080.docx | LEGALEASE-00130896-LEGALEASE-00130897 | Condensed, Order, SA | 0.66 | 1 | 1 | 0 | 1 | 1 |
| 7521 | Harris Cty. Appraisal Dist. v. Wittig, 881 S.W.2d 193 | 307A+501 | A plaintiff has an absolute right to a non-suit of its case at the moment the plaintiff files the motion with the clerk or makes a motion in open court. BHP Pet. Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990); Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Tex.R.Civ.P. 162. The trial court loses its plenary power 30 days after it signs the order granting the non-suit (if no motion for new trial is filed), or 75 days after it signs the order (if a motion for new trial is filed). It is the order granting the non-suit, not the filing of the non-suit, that triggers the appellate deadlines. | Plaintiff has absolute right to nonsuit of its case at moment plaintiff files motion with clerk or makes motion in open court. | Does a plaintiff have an absolute right to nonsuit of its case at a moment a plaintiff files a motion with a clerk or makes a motion in open court? | 026086.docx | LEGALEASE-00131016-LEGALEASE-00131018 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7522 | Fields Bros. Gen. Contractors v. Ruecksties, 288 Ga. App. 674 | 307A+747.1 | "A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues." In the consolidated pretrial order in this case, the Rueckstieses claimed that "the Defendants breached the contract" and specifically alleged that "[t]he residence has numerous serious structural deficiencies and other construction-related deficiencies." Construing the pretrial order liberally, we find that the pretrial order fairly raised the issue of negligent construction and the extent of Timmy Fields's involvement. As a general rule, there is implied in every contract for work or services a duty to perform it skilfully, carefully, diligently, and in a workmanlike manner. The law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession. | A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues. | Is a pre-trial order to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues? | Pretrial Procedure - Memo # 1425 - C - VA.docx | ROSS-003300523-ROSS-003300526 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7523 | Casey v. Casey, 2 Root 269 | 307A+501 | A plaintiff may discharge an action in his name, brought upon a note, notwithstanding said note is assigned, and the plaintiff insolvent. | A plaintiff may discharge an action in his name, brought upon a note, notwithstanding he is insolvent, and said note is assigned. | "Can a plaintiff discharge an action in his name, brought upon a note, notwithstanding he is insolvent and said note is assigned?" | Pretrial Procedure - Memo # 1445 - C - PC.docx | ROSS-003326641-ROSS-003326642 | Order, SA | 0.06 | 1 | 0 | 0 | 1 | |
| 7524 | In re Big Horn River Sys., 2004 WY 21, 85 P.3d 981 | 307A+747.1 | For our judicial system to operate efficiently, courts must have authority to establish scheduling orders governing litigation before them. Ekberg v. Sharp, 2003 WY 123, 76 P.3d 1250, (Wyo.2003). A court's finding thata filing fails to meet the deadlines established by such orders is within the sound exercise of its discretion. Id. We find no abuse of discretion in the district court's conclusion that the Stutzmans' petition was untimely under its Phase III procedures. | For the judicial system to operate efficiently, courts must have authority to establish scheduling orders governing litigation before them. | "For the judicial system to operate efficiently, should courts have the authority to establish scheduling orders governing litigation before them?" | Pretrial Procedure - Memo # 1668 - C - SHS.docx | ROSS-003301377-ROSS-003301378 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 7525 | Whitehawk v. Clark, 238 Mont. 14 | 307A+742.1 | The purpose of the pretrial order is to prevent surprise, simplify issues and permit counsel to prepare for trial on the basis of the pretrial order. Workman v. McIntryre (1980), 190 Mont. 5, 617 P.2d 1281. This Court has held that the party may not raise an issue on appeal which deviated from those stated in the pretrial order. Morse v. Cremer (1982), 200 Mont. 71, 647 P.2d 358. Under these two premises, it appears reasonable for defendant to have assumed that the issue of liability under the statute would not arise at trial. | Purpose of pretrial order is to prevent surprise, simplify issues and permit counsel to prepare for trial on basis of pretrial order. | "Can pretrial order prevent surprise, simplify issues and permit counsel to prepare for trial on basis of pretrial order?" | Pretrial Procedure - Memo # 1713 - C - MS.docx | ROSS-003287209-ROSS-003287210 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7526 | Bump v. Firemens Ins. Co. of Newark, N.J., 221 Neb. 678 | 307A+750 | In their second assignment of error, Bumps assail the trial court's eliminating the second cause of action alleged in their petition. The record fails to disclose the precise procedural scalpel used to excise the second cause of action from Bumps' petition. Assuming that the allegations of the second cause of action did state facts sufficient to constitute a cause of action, the trial court, nevertheless, removed from trial any issue raised by the second cause of action. Pretrial conferences are conducted to simplify and narrow issues presented in a case. Priest v. McConnell, 219 Neb. 328, 363 N.W.2d 173 (1985). Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. See Olson v. England, 206 Neb. 256, 292 N.W.2d 48 (1980). Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. See Marotta v. Iroquois Realty Co., 412 N.E.2d 797 (Ind.App.1980). In Hasenauer v. Durbin, 216 Neb. 714, 719, 346 N.W.2d 695, 698 (1984), we stated: The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. | Pretrial conferences are conducted to simplify and narrow issues presented in a case, and issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. | Does issues specified at a pretrial conference control the course of an action and constitute the issues on which the case is tried? | 026882.docx | LEGALEASE-00130309-LEGALEASE-00130310 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7527 | Hensley's Adm'rs v. Lytle, 5 Tex. 497 | 307A+718 | In the case of Hipp v. Bissel (3 Tex. R.) the judgment of the District Court was reversed because of the improper refusal of a continuance. In that case there had been a strict and literal compliance with the requirements of the statute. But in the present case there has not been such compliance. The affidavit does not state that the party has used due diligence to obtain the testimony of the witness. It admits that the witness had not been subp"naed, but seeks to excuse the non-observance of this ordinary diligence by setting forth the circumstances which had induced the belief on the part of the affiant that the witness would be present at the trial. The facts stated, however, in our opinion, do not constitute that diligence which the law requires. It has provided parties with the process of the court by subp"na, and in case of its non-observance, attachment to enforce the attendance of witnesses; and where a party has omitted to employ the means provided by the law when practicable, the omission will in general be fatal to his application. If he elects to employ other means than those providedby law, it will be at his peril. Accordingly it is held that where a party neglects to subp"na a witness and relies on his promise to attend, his non-attendance will not be a cause of continuance. (Anthon, 198; 1 Rep. Con. Ct., 198.) An exception to this rule has been allowed where an attorney of the court was a witness and promised to attend, (2 Dall. R., 183,) and also where a material witness is absent whose attendance could not be procured by subp"na, the cause of whose inability to attend is such that an attachment for contempt would not be issued against him for failing to obey a subp"na. (2 Scam. R., 454.) But the present case does not come within these exceptions, and we are of opinion that there was no error in refusing a continuance. | The law has provided parties with process, by subpoena, and, in case of non-observance, attachment, to enforce the attendance of witnesses; and where a party has omitted to employ the means provided by the law, when practicable, the omission will, in general, be fatal to an application for a continuance. | "Where a party elects to employ other means than those provided by law to assure that witness appears to testify at trial, will it be at his peril?" | 026906.docx | LEGALEASE-00130583-LEGALEASE-00130584 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7528 | In re W.D.W., 173 S.W.3d 607 | 307A+39 | Rule 194 of the rules of civil procedure governs the disclosure of information about testifying experts and their reports. See Tex.R. Civ. P. 194.2(f). The purpose of rule 194 requiring pretrial disclosure of expertwitnesses is to give the opposing party sufficient information about the expert'sopinions to prepare for cross-examination of the expert and to present rebuttal evidence from its own experts. See Exxon Corp. v. W. Tex. Gathering Co., 868 S.W.2d 299, 304 (Tex.1993); Miller v. Kennedy & Minshew, Prof'l Corp., 142 S.W.3d 325, 348 (Tex.App.-Fort Worth 2003, pet. denied) . | The purpose of rule requiring pretrial disclosure of expert witnesses is to give the opposing party sufficient information about the expert's opinions to prepare for cross-examination of the expert and to present rebuttal evidence from its own experts. Vernon's Ann.Texas Rules Civ.Proc., Rule 194.2. | What is the purpose of pretrial disclosure rule with regard to expert witness and experts opinions? | 026966.docx | LEGALEASE-00131183-LEGALEASE-00131184 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 7529 | Wilhelm v. Mustafa, 243 Mich. App. 478 | 307A+749.1 | Moreover, we do not believe that the trial court abused its discretion in refusing to enter a default against defendant or otherwise preclude him from presenting a defense. Among the several reasons the court gave for not entering a default against defendant was that plaintiff waived her right to raise the procedural issue by failing to include it in the final pretrial order. A party may waive or forfeit an issue by failing to raise it in a timely manner. Greathouse v. Rhodes, 242 Mich.App. 221, 231, 618 N.W.2d 106 (2000). "In determining whether an issue or right is forfeited or waived because it was not timely asserted, our courts have considered both the diligence of the movant and the prejudice the nonmovant will sustain." Id. at 232, 618 N.W.2d 106. | Party may waive or forfeit an issue by failing to raise it in a timely manner in the final pretrial order. | Can a party waive or forfeit an issue by failing to raise it in a timely manner and to include it in the final pretrial order? | 026993.docx | LEGALEASE-00131258-LEGALEASE-00131259 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7530 | Cooper v. Rosser, 232 Ga. 597 | 307A+750 | A pre-trial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues. Where the question of precluding issues is raised the matter is within the discretion of the trial judge. Where, as here, there can be no viable claim of surprise or unfairness in the court's consideration of the issue involved in the ruling, we will not conclude that the court abused its discretion under the pre-trial order in making the ruling to which Cooper objects. See 6 Wright & Miller, Federal Practice and Procedure: Civil s 1527, pp. 608-609 (1971); 3 Moore'sFederal Practice, s 16.19, p. 1132 (1974). Indeed, a pre-trial order will be deemed modified to conform to evidence admitted without objection. 1A Barron & Holtzoff, Federal Practice and Procedure, s 473, pp. 850-851 (1960). | Pretrial order should be liberally construed to allow consideration of all questions fairly within ambit of contested issues and where question of precluding issues is raised, matter is within discretion of trial judge. Code, S 81A-116. | Is preclusion of issues by the pretrial order within the discretion of the trial court? | 027022.docx | LEGALEASE-00130891-LEGALEASE-00130892 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7531 | Itron v. Consert Inc., 109 A.3d 583 | 307A+749.1 | "Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial." Id. (citations omitted). "[A] court also may relieve counsel from any statement or stipulation made during a conference in order to prevent injustice."[] Id. There is nothing unique or unprecedented about the ability of a court to make a pretrial determination that a particular fact has been admitted or is not legitimately subject to dispute. Courts make such determinations when evaluating whether "there is NO genuine issue" as to a particular fact for purposes of summary judgment. See Ch. Ct. R. 56(c). In addressing a motion for summary judgment, the court shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy.... Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly. Ch. Ct. R. 56(d). | A court also may relieve counsel from any statement or stipulation made during a pretrial conference in order to prevent injustice. | Can a court relieve counsel from any statement or stipulation made during a pretrial conference in order to prevent injustice? | Pretrial Procedure - Memo # 1817 - C - SB.docx | ROSS-003314697-ROSS-003314698 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7532 | Fink v. Thompson, 70 N.Y.S.2d 226 | 307A+12 | Defendant Mertens objects to the discovery and inspection on the ground that the application therefor is required to be made by way of order to show cause. The objection cannot be sustained. Where, as here, a motion for discovery and inspection is made at the same time as a motion for an examination before trial, Civil Practice Act, " 324 and Rules of Civil Practice, rule 140 do not apply. See Saper v. National Bank of Far Rockaway, 265 App.Div. 941, 38 N.Y.S.2d 425. | Where a motion for discovery and inspection is made at the same time as a motion for an examination before trial, the statute and rule relating to discovery do not apply. Civil Practice Act, S 324; Rules of Civil Practice, rule 140. | Do the rule of civil practice dealing with an application for discovery apply where a motion for discovery and inspection accompanies a motion for examination of the defendant before trial? | 027347.docx | LEGALEASE-00130441-LEGALEASE-00130442 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 7533 | In re Sears, Roebuck & Co., 146 S.W.3d 328 | 307A+331 | However, though some requested documents may be relevant, a discovery request may still be overbroad as phrased or impose an unreasonable expense. Under Tex.R. Civ. P. 192.4, the trial court must limit the discovery methods permitted by the Rules if the court determines that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" or the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." | Although some requested documents may be relevant, a discovery request may still be overbroad as phrased or impose an unreasonable expense. Vernon's Ann.Texas Rules Civ.Proc., Rule 192.4. | "Although some requested documents may be relevant, may a discovery request still be overbroad as phrased or impose an unreasonable expense?" | 027387.docx | LEGALEASE-00130984-LEGALEASE-00130985 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7534 | Klinghoffer v. Barasch, 4 Cal. App. 3d 258 | 307A+502 | In a case coming within this statute, where no affirmative relief has been sought in the pleadings, the privilege of dismissing belongs to the plaintiff, and may be exercised by him without the knowledge of the parties or the consent of the court. (Wilson v. Los Angeles County Civil Service Comm., 126 Cal.App.2d 679, 273 P.2d 34.) | Where no affirmative relief has been sought in the pleadings, privilege of dismissing belongs to plaintiff, and may be exercised by him without knowledge of parties or consent of court. West's Ann.Code Civ.Proc. SS 387, 581, subds. 1, 5. | "Where no affirmative relief has been sought in the pleadings, does the privilege of dismissing belong to a plaintiff?" | 027406.docx | LEGALEASE-00131225-LEGALEASE-00131226 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 7535 | Dean v. Lehman, 143 Wash. 2d 12 | 371+2001 | It is beyond dispute that article VII, section 1 applies only to taxes. Anything other than a tax is beyond the provision's scope. The term "tax" has been defined by this court as, an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities [and i]t is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. | A "tax" is an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities; it is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. | What is a tax in the strictest sense of the word? | Taxation - Memo # 121 - C - CK.docx | LEGALEASE-00021092-LEGALEASE-00021093 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 7536 | NetJets Aviation v. Guillory, 207 Cal. App. 4th 26 | 371+2013 | "Every system of taxation consists of two parts: (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection. The former is a legislative function; the latter is mere machinery, and is delegable to other than governmental agencies. [Citation.] The legislative powers include the selection of the property to be taxed, the determination of the basis for the measurement of the tax, and the definition of the purpose for which the tax shall be levied. [Citation.] On the other hand, powers which are not legislative include the power to value property for taxation pursuant to fixed rules, the power to extend, assess, and collect the taxes, and the power to perform any of the innumerable details of computation, appraisement, and adjustment. [Citation.]" (Gadd v. McGuire (1924) 69 Cal.App. 347, 364"365, 231 P. 754.). | Every system of taxation consists of two parts, which are (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection; the former is a legislative function, while the latter is mere machinery, and is delegable to other than governmental agencies. | Are the steps taken for tax assessment and collection a part of every system of taxation? | Taxation - Memo # 198 - C - SU.docx | ROSS-003288250-ROSS-003288252 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 7537 | Krumpelman v. Louisville & Jefferson Cty. Metro. Sewer Dist., 314 S.W.2d 557 | 371+2060 | We agree with Mortgagee that it is very generally held that special assessments or special taxes to pay for local improvements are not taxes in the ordinary or strict sense of the term. See Gosnell v. City of Louisville, 104 Ky. 201, 46 S.W. 722; and Kilgus v. Trustees of the Church Home for Females, 94 Ky. 439, 22 S.W. 750. In practice, and as usually understood, there is a clear distinction between taxes and special assessments. The latter are local burdens laid on property made for a public purpose, but fixed in amount once and for all time with reference to the special benefit which such property derives from the cost of the project, while taxes are generally held to be a rate or duty levied each year for purposes of general revenue, regardless of the direct benefit accruing to the person or property taxed. See Dressman v. Farmers' & Traders' Nat. Bank of Covington, 100 Ky. 571, 38 S.W.1052, 36 L.R.A. 121; and 63 C.J.S. Municipal Corporations " 1290b, page 1026. | "Taxes" are distinguishable from "special assessments" in that taxes are generally a rate or duty levied each year for purposes of general revenue, regardless of benefit to the taxpayer, while special assessments are local burdens laid on property, for a public purpose, but in a fixed amount and once for all time with reference to a special benefit. | Is tax a general revenue measure? | Taxation - Memo # 34 - C - KBM.docx | LEGALEASE-00021204-LEGALEASE-00021205 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7538 | Weisblat v. City of San Diego, 176 Cal. App. 4th 1022 | 371+2002 | In Sinclair Paint, the California Supreme Court set forth general guidelines for determining whether "taxes" are involved in particular situations and pointed out that "whether impositions are "taxes' or "fees' is a question of law for the appellate courts to decide on independent review of the facts." (Sinclair Paint, supra, 15 Cal.4th at p. 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350.) The high court began by explaining the "blurr[y]" distinction between taxes and fees:"The cases recognize that "tax" has no fixed meaning, and that the distinction between taxes and fees is frequently "blurred," taking on different meanings in different contexts. [Citations.] In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.] Most taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other government benefits or privileges. [Citations.]" (Ibid., italics added; but see Pajaro Valley Water Management Agency v. Amrhein (2007) 150 Cal.App.4th 1364, 1381, 59 Cal.Rptr.3d 484 (Pajaro Valley ) [describing the Sinclair Paint distinction between a tax and a fee as a false dichotomy].) | Levy imposed by city on rental property owners to recover costs associated with processing applications and renewals for business tax certificates and rental unit business tax certificates was imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted, and thus, the levy was a tax, subject to constitutionally required voter approval limitations, rather than a fee; to the extent the courtesy billing notices conferred the benefit of assisting business owners in avoiding late payment penalties, such benefit was merely incidental to the payment collection function of those notices. West's Ann.Cal. Const. Art. 13C, S 2. | Are taxes imposed for revenue purposes rather than in return for a specific benefit conferred or privilege granted? | Taxation - Memo # 52 - C - SS.docx | LEGALEASE-00021248-LEGALEASE-00021249 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 7539 | In re Bethlehem Steel Corp., 390 B.R. 784 | 25T+143 | In JLM Industries, Inc. v. Stolt"Nielsen SA, 387 F.3d 163, 167 (2d Cir.2004), the Second Circuit held that a clause submitting for arbitration "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" was a broad form clause. The clauses at issue in these adversary proceedings require arbitration of "[a]ny and all differences and disputes, of whatsoever nature arising out of this charter." Adv. No. 03"92536, ECF Doc. # 31, Exh. A, Adv. No. 03"92538, ECF Doc. # 31, Exh. A, Adv. No. 03"09315, ECF Doc. # 27, Exh. A. As this is the exact language of the clause in JLM that the Second Circuit held to be broad, the clauses in these four adversary proceedings should also be treated as broad form clauses. Therefore, under the Collins decision there is "a presumption of arbitrability." Collins, 58 F.3d at 23. However, even with a broad form clause, if the claims present "no questions in respect of the parties' rights and obligations under [the agreements]," they are outside the purview of the arbitration clause and are not arbitrable. Id. | Even with broad form arbitration clause, if claims present no questions in respect of parties' rights and obligations under agreements, they are outside purview of arbitration clause and are not arbitrable. | Can claims be arbitrable if they do not present questions in respect to the rights and obligations under the agreement? | Alternative Dispute Resolution - Memo 564 - RK.docx | ROSS-003287251-ROSS-003287252 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7540 | S. Bay Boston Mgmt. v. Unite Here, Local 26, 587 F.3d 35 | 231H+1546(1) | Here, both prongs are satisfied. First, the parties' dispute stems from their inability to arrive at a satisfactory collective bargaining agreement during the negotiations required by the Agreement. And second, the arbitration and expiration clauses specifically, and the Agreement generally, provide no reason to believe that post-expiration arbitration was negated. Indeed, the Agreement expressly contemplates that ninety days will pass after Union recognition before any collective bargaining disputes become arbitrable, without reference or regard to whether the Agreement might otherwise expire in the interim. The district court thus correctly determined that the arbitration clause remained in force with respect to any dispute relating to the parties' initial round of collective bargaining and properly compelled arbitration. | Although neutrality agreement, executed by hotel and union to prescribe procedures for union organization at hotel, had expired, arbitration clause contained in agreement survived, as required to compel hotel to arbitrate dispute relating to parties' initial round of collective bargaining, since dispute stemmed from parties' inability to arrive at satisfactory collective bargaining agreement (CBA) during negotiations required by neutrality agreement, and arbitration and expiration clauses specifically, and agreement generally, provided no reason to conclude that post-expiration arbitration was negated. | What is the two prong analysis which governs post-expiration arbitrability of disputes? | 007462.docx | LEGALEASE-00132381-LEGALEASE-00132382 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 7541 | Becker v. Rice, 827 F. Supp. 589 | 78+1128 | Finding this to be an area in which "Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life and has established a comprehensive internal system of justice to regulate military life," Chappell, 462 U.S. at 302, 103 S.Ct. at 2367, the court finds that it may not sit in plenary review of the National Guard's decision to terminate the plaintiff's civilian employment as a federal technician. As the court may not hear plaintiff's claim that she was wrongfully discharged from her military duty with the National Guard, and discharge from her federal technician position is mandatory upon termination from the Guard with an appeal only to the Adjunct General, the court finds that it may afford the plaintiff no judicial relief on her " 1983 claims. | Claim under S 1983 by former member of Air National Guard arising out of discharge from civilian employment as federal technician was nonjusticiable, since Congress exercised plenary constitutional authority over military, and court thus could not sit in plenary review of decision; employee was employee of United States, was required to be member of National Guard in order to hold position, was required to be separated from employment upon termination of military status, and had no right to appeal beyond adjunct general or jurisdiction concerned. 42 U.S.C.A. S 1983; 32 U.S.C.A. SS 709(b), (e)(1, 5), 709(d). | Can civilian courts sit in plenary review over intra service military disputes? | 008908.docx | LEGALEASE-00132423-LEGALEASE-00132424 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 7542 | United States v. Buenrostro, 781 F.3d 864 | 63+1(1) | The $5,000 element of " 666 pertains to "the subject matter of the bribe," which "must be valued at $5,000 or more." United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011). In other words, the " "business' or "transaction" sought to be influenced must have a value of $5,000 or more." Id., quoting 18 U.S.C. " 666(a)(2). In this case the business or transaction sought to be influenced"the subject matter of the bribe"was the fictional pharmaceutical dispensing contract. | The $5,000 element of federal bribery statute pertains to subject matter of bribe, which must be valued at $5,000 or more; in other words, the business or transaction sought to be influenced must have a value of $5,000 or more. 18 U.S.C.A. S 666(a)(2). | "Under the bribery statute, must the business or transaction sought to be influenced have a value of $5,000 or more?" | Bribery - Memo #120 - C - JL.docx | ROSS-003287367-ROSS-003287368 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 7543 | United States v. Wright, 665 F.3d 560 | 63+1(1) | We thus turn to the definition of honest services fraud. The bribery theory, whichis the only theory left standing to convict for honest services fraud in our case,3 "requires a quid pro quo," United States v. Kemp, 500 F.3d 257, 281 (3d Cir.2007), that is, "a specific intent to give or receive something of value in exchange for an official act." United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999) (emphasis in original). (The Supreme Court has contrasted bribery with a gratuity, which is "merely a reward for some future act that the public official will take[,] and may already have determined to take[,] or for a past act that he has already taken." Id. at 405, 119 S.Ct. 1402.) The bribery theory does not require that each quid, or item of value, be linked to a specific quo, or official act. Rather, a bribe may come in the form of a "stream of benefits." United States v. Bryant, 655 F.3d 232, 240-41 (3d Cir.2011). The public official need not even perform the official acts if he stood ready to do so having intended to accept a bribe. Id. Intent is the determinant. ""The key to whether a gift constitutes a bribe is whether the parties intendedfor the benefit to be made in exchange for some official action; [indeed,] the government need not prove that each gift was provided with the intent to prompt a specific official act." Kemp, 500 F.3d at 282. | The key to whether a gift constitutes a bribe, as would support honest services fraud conviction, is whether the parties intended for the benefit to be made in exchange for some official action; the government need not prove that each gift was provided with the intent to prompt a specific official act. 18 U.S.C.A. S 1346. | When does a gift constitute a bribe? | Bribery - Memo #127 - C - LB.docx | ROSS-003300614-ROSS-003300615 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7544 | Coley v. N. Carolina Nat. Bank, 41 N.C. App. 121 | 302+8(15) | We think plaintiffs have failed to allege the circumstances constituting fraud with sufficient particularity, and that the trial judge properly granted defendant's Rule 12(b)(6) motion. At most, plaintiffs' complaint alleges that the Bank misrepresented that a material condition of the contract had been performed and that plaintiffs reasonably relied on this misrepresentation to their detriment. The fatal deficiency in plaintiffs' allegations is that the complaint contains no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations to the plaintiffs. The defendant North Carolina National Bank is a corporation; Ipso facto, any fraudulent misrepresentations attributable to it would necessarily have been made by natural persons acting as its agents. It is not sufficient to conclusorily allege that a corporation made fraudulent misrepresentations; the pleader in such a situation must allege specifically the individuals who made the misrepresentations of material fact, the time the alleged misstatements were made, and the place or occasion at which they were made. It would be manifestly unfair to require a corporation to attempt to defend an action for fraud without being informed as to which of its officers, agents, or employees purportedly made the misrepresentations, as well as to all of the facts and circumstances surrounding the transaction. Because no such facts are alleged in the plaintiffs' complaint, it was properly dismissed for failure to state a claim upon which relief may be granted. | To sufficiently plead fraudulent misrepresentation, it is not sufficient to conclusively allege that corporation made fraudulent misrepresentations; pleader in such situation must allege specifically the individuals who made the misrepresentations of material fact, time the alleged misstatements were made, and place or occasion at which they were made. Rules of Civil Procedure, rule 9(b), G.S. S 1A-1. | Is it sufficient to conclusorily allege that a corporation made fraudulent misrepresentations? | Pleading - Memo 270 - RMM.docx | ROSS-003285976-ROSS-003285977 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7545 | Brousseau v. Jarrett, 73 Cal. App. 3d 864 | 302+8(15) | It is unnecessary for us to determine whether the second count alleges facts showing the noncontractual obligation required by section 3294. We need not reach that issue because the second count's conclusory characterization of defendant's conduct as intentional, wilful and fraudulent is a patently insufficient statement of "oppression, fraud, or malice, express or implied," within the meaning of section 3294. (See, G. D. Searle & Co. v. Superior Court (1975) 49 Cal.App.3d 22, 27-32, 122 Cal.Rptr. 218; Witkin, Pleading, s 272, pp. 1944-1946; cf. Richardson v. Employers Liab. Assur. Corp. (1972) 25 Cal.App.3d 232, 244-246, 102 Cal.Rptr. 547; Roth v. Shell Oil Co. (1960) 185 Cal. App.2d 676, 681-682, 8 Cal.Rptr. 514.) | Complaint's conclusory characterization of defendant physician's conduct as intentional, wilful and fraudulent was patently insufficient statement of "oppression, fraud, or malice, express or implied" within meaning of statute authorizing recovery of punitive damages. West's Ann.Civ.Code, S 3294. | "Is the conclusory characterization of conduct as intentional, willful, and fraudulent sufficient?" | Pleading - Memo 271 - RMM.docx | ROSS-003301084-ROSS-003301085 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 7546 | Nentwig v. United Indus., 256 Mont. 134 | 307A+750 | Nentwig correctly points out that failure to raise an issue in the pretrial order may result in a waiver. Har"Win, Inc. v. Consolidated Grain & Barge Co. (5th Cir.1986), 794 F.2d 985; Miles v. Tennessee River Pulp & Paper Co. (11th Cir.1989), 862 F.2d 1525. The purpose of the pretrial order is to prevent surprise, simplify the issues, and permit the parties to prepare for trial. Bache v. Gilden (1992), 252 Mont. 178, 181"82, 827 P.2d 817, 819. However, this Court said in Bell v. Richards (1987), 228 Mont. 215, 217, 741 P.2d 788, 790, that the pretrial order "should be liberally construed to permit any issues at trial that are "embraced within its language." " (Quoting Miller v. Safeco Title Ins. Co. (9th Cir.1985), 758 F.2d 364, 368.) But the theory or issue must be at least implicitly included in the pretrial order. United States v. First Nat'l Bank of Circle (9th Cir.1981), 652 F.2d 882, 886; ACORN v. City of Phoenix (9th Cir.1986), 798 F.2d 1260, 1272. | While pretrial order should be liberally construed to permit any issues at trial that are embraced within its language, theory or issue must be at least implicitly included in the pretrial order. | How should a pretrial order be construed and should the theory or issue so construed be at least implicitly included in it? | Pretrial Procedure - Memo # 1793 - C - SPB.docx | ROSS-003301453-ROSS-003301454 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7547 | In re Thompson's Estate, 416 Pa. 249 | 307A+28 | Since we are remanding this matter for further proceedings and since it is inevitable that, either for the preparation of pleadings or the preparation for and trial of the cause, further attempts at discovery will be made, it may not be amiss to point out that, since there is a pending action, the Orphans' Court has the power to enforce discovery sought in an appropriate manner. (20 P.S. " 2080.742; Sup.Ct.O.C. Rules, Section 3, Rule 6; Cole v. Wells, 406 Pa. 81, 91, 177 A.2d 77). Nothing in this opinion shall be construed as a bar to the allowance of discovery if the matters sought are relevant to the issue of the cause. While 'fishing expeditions' are not to be countenanced under the guise of discovery, requests for discovery must be considered with liberality as the rule rather than the exception. | While "fishing expeditions" are not to be countenanced under guise of discovery, requests for discovery must be considered with liberality as the rule rather than the exception. 20 P.S. S 2080.742; Orphans' Court Rules, S 3, rule 6. | "While ""fishing expeditions"" are not to be countenanced under guise of discovery, must requests for discovery be considered with liberality as the rule rather than the exception?" | Pretrial Procedure - Memo # 1929 - C - PB.docx | ROSS-003301291-ROSS-003301292 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7548 | Bixler by Bixler v. J.C. Penney Co., 376 N.W.2d 209 | 307A+723.1 | Counsel for the Bixlers also opposed the motions for summary judgment by asserting that he had "been allowed no discovery" and that it had therefore been impossible for the Bixlers to use the fabric mills' pattern libraries to aid in identification of the manufacturer. In his affidavit he also stated that he had had no opportunity to test the veracity of the respondents' affidavits. For these reasons, the Bixlers argue that summary judgment was prematurely granted. [(While the counsel's affidavit does not constitute a formal motion for a continuance, under Rule 56.06, Minn.R.Civ.P., a trial court may grant a continuance to permit further discovery even absent such a formal motion. Continuances should be liberally granted under Rule 56.06, especially when the party seeking more time is doing so because of insufficient time to conduct discovery. Rice v. Perl, 320 N.W.2d 407, 412 (Minn.1982); accord 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d " 2741 (1983). In deciding whether a continuance should be granted to allow more time for discovery, a court should focus on two issues: first, whether the party seeking time is acting from a good faith belief that material facts will be discovered, or is merely engaged in a "fishing expedition," and, second, whether the party has been diligent in seeking discovery prior to bringing the motion. Rice, 320 N.W.2d at412. | A trial court may grant a continuance under rule (48 M.S.A., Rules Civ.Proc., Rule 56.06) to permit further discovery even in absence of a formal motion, and, in making its determination, should focus on whether party seeking more time is acting from a good-faith belief that material facts will be discovered, or is merely engaged in a fishing expedition, and whether party has been previously diligent in seeking discovery. | Can a trial court grant a continuance under a rule to permit further discovery even in absence of a formal motion? | Pretrial Procedure - Memo # 2109 - C - SK.docx | ROSS-003288101-ROSS-003288102 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7549 | Haddock v. J & J Roofing Co., 700 P.2d 935 | 307A+749.1 | The purpose of discovery and pre-trial procedure rules is to eliminate secrets and surprises at trial, simplify the issues, and lead to fair and just settlements without having to go to trial. Crist v. Goody, 31 Colo.App. 496, 507 P.2d 478 (1972). A pre-trial order, if not objected to, controls the introduction of evidence at trial. Great West Food Packers, Inc. v. Longmont Foods Co., 636 P.2d 1331 (Colo.App.1981); C.R.C.P. 16(c); First Judicial District Rule 23(h). [(Where a party fails to comply with the pre-trial order, the trial court has broad discretion in determining the sanctions to be imposed. Great Western Sugar Co. v. Northern Natural Gas Co., 661 P.2d 684 (Colo.App.1982) affd sub nom., KN Energy, Inc. v. Great Western Sugar Co., 698 P.2d 769 (1985); C.R.C.P. 16(d). | Where party fails to comply with pretrial order, trial court has broad discretion in determining sanctions to be imposed. | "Where a party fails to comply with the pretrial order, does a trial court has broad discretion in determining the sanctions to be imposed?" | Pretrial Procedure - Memo # 2122 - C - ES.docx | ROSS-003300835-ROSS-003300836 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7550 | Halpern v. Gunn, 57 A.2d 741 | 307A+501 | We think it is clear that plaintiff's appeal cannot be entertained. Under the long-established practice in this jurisdiction a voluntary nonsuit by plaintiff is a withdrawal or abandonment of his case, with costs adjudged against him, with no adjudication on the merits, and with the right to file a new action. It leaves the situation as though suit had never been filed. | "Voluntary nonsuit" by plaintiff is a withdrawal or abandonment of his case with costs adjudged against him, with no adjudication on the merits, and with the right to file a new action, leaving the situation as though action had never been filed. | Does a nonsuit leave the situation as if the suit had never been filed? | Pretrial Procedure - Memo # 2217 - C - KA.docx | ROSS-003327892-ROSS-003327893 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 7551 | Whitmore v. Mut. Life Ins. Co. of N. Y., 122 Vt. 328 | 307A+749.1 | A pretrial conference in the court below resulted in an order that the questions to be determined in the trial of the cause were to be decided under the laws of the State of Illinois. The pretrial order states that the issues of fact to be determined relate to the answers given on questions No. 2 and No. 4 on the application for insurance. These issues, three in number, are: (1) did the agent of the insured fill out the check marks in answer to questions No. 2 and No. 4; (2) if he did, did he then know from the insured that the insured had been hospitalized within a two-year period prior to the date of the application; it being conceded by the plaintiff that the insured had been hospitalized within the two-year period about which inquiry was made in the application, and (3) if the agent filled the blanks with knowledge of the hospitalization did such action on his part waive the disability conceded by the plaintiff and in doing so bind the company. Our rule on procedure is that the subsequent course of action in the trial of a cause is controlled by agreement or admissions made at the pretrial conference. 12 V.S.A. App. II R. 3A. In re Cartmell's Estate, 120 Vt. 234, 238, 138 A.2d 592. | Subsequent course of action in trial of a cause is controlled by agreement or admission made at pretrial conference. County Court Rules, rule 3A. | Is a subsequent course of action in a trial of a cause controlled by agreement or admission made at a pretrial conference? | Pretrial Procedure - Memo # 2287 - C - SK.docx | ROSS-003314893-ROSS-003314894 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7552 | Dance v. Manning, 207 N.C. App. 520 | 307A+517.1 | In her brief, plaintiff argues further that the trial court's denial of the admission of Attorney Tarver "is in effect a revocation of her admission" since she had previously filed another lawsuit arising from the same events and in which Attorney Tarver was admitted to practice pro hac vice. However, here plaintiff had filed a voluntary dismissal of her first lawsuit; Goldston dealt with the removal of counsel in ongoing litigation where the counsel was properly admitted at the inception of his representation in that same lawsuit. 326 N.C. at 727, 392 S.E.2d at 737. When a plaintiff files a voluntary dismissal, ""it [is] as if the suit had never been filed." " Barham v. Hawk, 165 N.C.App. 708, 719, 600 S.E.2d 1, 8 (2004) (quoting Tompkins v. Log Systems, Inc., 96 N.C.App. 333, 335, 385 S.E.2d 545, 547 (1989), disc. review denied, 326 N.C. 366, 389 S.E.2d 819 (1990)). Any orders entered in the first lawsuit have no relevance to the newly filed lawsuit, as the dismissal ""carries down with it previous rulings and orders in the case." " Id. (quoting Gibbs v. Carolina Power & Light Co., 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965)). | Any orders entered in a first, voluntarily dismissed lawsuit have no relevance to the newly filed lawsuit, as the dismissal carries down with it previous rulings and orders in the case. | Do orders entered in the first lawsuit have relevance to the newly filed lawsuit as the dismissal carries down with it previous rulings and orders in the case? | Pretrial Procedure - Memo # 2313 - C - NS.docx | ROSS-003301665-ROSS-003301666 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7553 | Wynder v. Lonergan, 153 Ind. App. 92 | 307A+749.1 | A pre-trial order stipulation is conclusive upon the parties and the judicial tribunal unless the stipulation is withdrawn, amended or supplemented as provided by Indiana Rules of Procedure. Rule TR. 15(B) and Rule TR. 16(I-J). Bruggner v. Shaffer (1965), 138 Ind.App. 183, 187, 210 N.E.2d 439. See also Schreiber v. Rickert (1943), 114 Ind.App. 55, 58, 50 N.E.2d 879. The trial court did not commit error when it sustained Lonergan's objection to the additional medical bills. | Pretrial order stipulation is conclusive on the parties and court unless stipulation is withdrawn, amended or supplemented as provided by rules. Rules TR. 15(B), 16(I, J) (Rules of Civil Procedure), IC 1971, 34-5-1-1, Rules 15(b), 16(i, j). | "Is a pretrial order stipulation conclusive on the parties and court unless stipulation is withdrawn, amended or supplemented as provided by rules?" | 027877.docx | LEGALEASE-00131975-LEGALEASE-00131976 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 7554 | Davis v. Hebert, 105 Conn. App. 736 | 307A+517.1 | : It is well established that "[a] judgment rendered may be opened after the four month limitation [set forth in General Statutes " 52"212a and Practice Book " 17"43] if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake." (Internal quotation marks omitted.) Richards v. Richards, 78 Conn.App. 734, 739, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). This court has concluded that withdrawals are analogous to final judgments. See Sicaras v. Hartford, 44 Conn.App. 771, 775"79, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). As such, " 52"212a and its exceptions for fraud, lack of actual consent and mutual mistake apply to restoring cases to the docket as well as to opening final judgments. See id., at 778, 692 A.2d 1290. | The withdrawal of an action is analogous to a final judgment, for purposes of rule that a judgment rendered may be opened after the four-month limitations period for opening a judgment, if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake, and thus, the four-month limitations period, and its exceptions for fraud, lack of actual consent, and mutual mistake, apply to restoring cases to the docket. C.G.S.A. S 52-212a; Practice Book 1998, S 17-43. | Is the withdrawal of an action analogous to a final judgment? | Pretrial Procedure - Memo # 2408 - C - ES.docx | ROSS-003313535-ROSS-003313536 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 7555 | Lakes v. Marriott Corp., 264 Ga. .475 | 307A+517.1 | In the present case, appellants were in an apparently untenable position when they filed their voluntary dismissal in that the record, as it stood then, entitled appellees to judgment pursuant to Turner, supra. As in Bailey and in Muhanna, however, there had been no announcement of an adverse ruling. We hold that appellants cannot be charged, under those circumstances, with knowledge of the actual outcome of the case and that the voluntary dismissal was, therefore, effective. Since the dismissal deprived the trial court of jurisdiction over the case and left the parties in the same position as if the suit had never been filed, the trial court had no authority to enter judgment for appellees in the original suit (Smith v. Memorial Medical Ctr., Inc., 208 Ga.App. 26, 430 S.E.2d 57 (1993)) or in the refiled suit. Bailey, supra. It follows that the affirmance of those judgments by the Court of Appeals was likewise error. | Plaintiffs' voluntary dismissal of original action following issuance of arbitration award in favor of defendants deprived superior court of jurisdiction over case and left parties in same position as if suit had never been filed and, therefore, superior court had no authority to enter judgment for defendants in original suit or in refiled suit. O.C.G.A. S 9-11-41(a). | "Does voluntary dismissal of action operate to divest the trial court of jurisdiction, after which the court has no authority to enter additional orders?" | 028096.docx | LEGALEASE-00132258-LEGALEASE-00132259 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7556 | United States v. Brewster, 506 F.2d 62 | 63+1(1) | The requisite intent to constitute accepting a bribe is to accept a thing of value "corruptly" under section (c)(1); the comparable intent under the gratuity section (g) is to accept a thing of value "otherwise than as provided by law for the proper discharge of official duty." On the face of the statute the two comparative clauses are not equivalents. Congress did not use the same language in defining criminal intent for the two offenses. "Corruptly" bespeaks a higher degree of criminal knowledge and purpose than does "otherwise than as provided by law for the proper discharge of official duty." It appears entirely possible that a public official could accept a thing of value "otherwise than as provided by law for the proper discharge of official duty," and at the same time not do it "corruptly." Congress obviously wished to prohibit public officials accepting things of value with either degree of criminal intent; it did so, but it legislated a difference in the requisite criminal intent and correspondingly in the penalties attached. | The requisite intent to constitute acceptance of bribe by a public official in return for being influenced in his performance of any official act is to accept a thing of value "corruptly" while the comparable intent necessary to constitute accepting an illegal gratuity is to accept a thing of value otherwise than as provided by law for the proper discharge of official duty. 18 U.S.C.A. S 201(c)(1), (g). | What is the difference between the requisite intent to constitute acceptance of bribe and a gratuity? | 011367.docx | LEGALEASE-00133226-LEGALEASE-00133227 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 7557 | United States v. Lynch, 807 F. Supp. 2d 224 | 63+1(1) | The Kemp court went on to clarify that the critical element of a bribery charge is the exchange language, distinguishing between a bribe, which necessarily involves a quid pro quo, and a mere attempt to curry favor, which does not. Id. at 282. The Court ruled that in proving the existence of bribes, "the government need not prove that each gift was provided with the intent to prompt a specific act" and that a bribe occurs where "payments [are] made, with the intent to retain the official's services on an "as needed" basis, so that where the opportunity presents itself the official will take specified actions on the payor's behalf." Id. at 282 (citations omitted) (emphasis added). However, the court contrasted this from noncriminal "gratuities" for past or future actions and "noncriminal gifts extended to a public official merely to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future." Id. at 281 (quotation marks omitted) (emphasis added). The critical holding of Kemp is that bribery requires a specific intent to perform a quid pro quo. Id. While this intended exchange need not be made explicit between the parties, see United States v. Antico, 275 F.3d 245, 257 (3d Cir.2001), the Government must allege and prove some facts from which a jury can infer that there was a specific intent to perform an exchange. See, e.g., United States v. Mariano, 316 Fed.Appx. 99, 102 (3d Cir.2008). | Bribery requires a specific intent to perform a quid pro quo, and while this intended exchange need not be made explicit between the parties, the Government must allege and prove some facts from which a jury can infer that there was a specific intent to perform an exchange. | How can a jury infer that there was a specific intent to perform an exchange in a bribery case? | Bribery - Memo #262 - C-JL.docx | ROSS-003327669-ROSS-003327670 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7558 | Moreland v. State, 304 Ga. App. 468 | 63+1(1) | Even assuming, without deciding, that the legislature intended OCGA " 16"10"2(a)(1) to apply to police officers and prosecutors, "[p]ayment for the services of a confidential informant is a long-established practice and cannot constitute a violation of the bribery statute even if the parties contemplated testimony by the paid informant." (Citations omitted.) United States v. Jackson, 213 F.3d 1269, 1289 (10th Cir. 2000) (construing federal bribery statute), vacated and remanded on other grounds, Jackson v. U.S., 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000). The evidence established that McCormick and Weaver were offered leniency, and Weaver was paid cash, in exchange for their assistance in drug investigations by the LaGrange police, only a portion of which involved the controlled buys with Moreland. "Although the parties may have contemplated [that McCormick and Weaver] would testify upon the completion of the investigation, [there is no evidence that they were] paid in exchange for [their] testimony." Id. | State's payment for the services of a confidential informant is a long-established practice and cannot constitute a violation of the bribery statute even if the parties contemplated testimony by the paid informant. West's Ga.Code Ann. S 16-10-2(a)(1). | Can the state's payment for the services of a confidential informant constitute a violation of the bribery statute? | 011404.docx | LEGALEASE-00133209-LEGALEASE-00133210 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 7559 | United States v. Abbey, 560 F.3d 513 | 91+168 | So the proper approach here is to hew to the statute's language: an official violates " 666 if he "corruptly" accepts (or gives, or conspires to give) something of value "intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5000 or more." 18 U.S.C. " 666. The district court's jury instructions were not improper for failing to include a requirement that the government prove a direct link from some specific payment to a promise of some specific official act. Instead, the jury was only required to find what it did"that Abbey accepted property with the corrupt intent to use his official influence in Rizzo's favor. | In order to convict the defendant of conspiracy to bribe a public official and corrupt solicitation of a bribe by a public official, based on his receipt, while employed as a city administrator, of a subdivision lot from a land developer, the government was not required to prove a direct link from the defendant's receipt of the lot to a promise of some specific official act, but instead, the government was only required to prove that the defendant accepted the property with the corrupt intent to use his official influence in the developer's favor. 18 U.S.C.A. SS 371, 666. | "In order to convict the defendant of corrupt solicitation of a bribe, does the government have to prove a direct link from some specific payment to a promise of some specific official act?" | Bribery - Memo #307 - C-JL.docx | ROSS-003326245-ROSS-003326246 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 7560 | Doe v. Doe, 122 Md. App. 295 | 184+44 | Mr. Doe's complaint did not state with specificity the representations Ms. Doe allegedly made. He merely asserted that she falsely promised Mr. Doe that he could rely on her stockholdings for retirement. He did not describe the stockholdings, nor did he state how much money he would have invested had he not relied on Ms. Doe's alleged promise. Because Mr. Doe did not allege in any detail the specifics of the statement, we are unable to determine if he reasonably relied on the statement. Mr. Doe did not allege how much the 401(k) would have been worth had he not foresworn contributing to it, thus he did not sufficiently allege damages. "Characterizations of acts or conduct, no matter how often or how strongly adjectively asserted are, without supporting statements of fact, conclusions of law or expressions of opinion." Greenbelt Homes, Inc. v. Board of Educ., 248 Md. 350, 360, 237 A.2d 18 (1968). Because Mr. Doe did not provide any supporting facts, we conclude that he failed to state a cause of action for fraud with regard to his 401(k) plan. Furthermore, "[a]llegations of fraud or characterizations of acts, conduct or transactions as fraudulent ... without alleging facts which make them such, are conclusions of law insufficient to state a cause of action." Id. | Allegations of fraud or characterizations of acts, conduct or transactions as fraudulent, without alleging facts which make them such, are conclusions of law insufficient to state a cause of action. | "Are characterizations of acts, without alleging facts, conclusions of law?" | Pleading - Memo 277 - RMM.docx | LEGALEASE-00022622-LEGALEASE-00022623 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7561 | Succession of Guidry v. Bank of Terrebonne & Tr. Co., 193 So. 2d 543 | 302+8(15) | Our review of plaintiff's petition discloses that in consequence it alleges the Bank acted in bad faith in accepting the Gilmore note as security for the Guidry loan. It seems obvious such averment was intended to refute the prima facia presumption that defendant Bank was a holder in due course of the Gilmore note. An allegation of fraud or bad faith, however, is merely a conclusion of law necessitating averment of clear and definite facts and circumstances which, if established by competent evidence, support the conclusion advanced. State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772. | Allegation of fraud or bad faith is merely a conclusion of law necessitating averment of clear and definite facts and circumstances which, if established by competent evidence, support allegation. | Is an allegation of bad faith a mere conclusion of law? | 023236.docx | LEGALEASE-00132762-LEGALEASE-00132763 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7562 | Goodman v. Kennedy, 18 Cal. 3d 335 | 302+40 | Finally we consider whether plaintiffs should be given an opportunity to amend their pleadings to allege, if they can, facts sufficient to cure the defects in their attempts to state causes of action for fraud. (See Code Civ.Proc., s 472c.) We conclude that the trial court did not abuse its discretion in sustaining the demurrer to the third amended complaint without leave to amend. "Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. (Temescal Water Co. v. Dept. of Public Works (1955) 44 Cal.2d 90, 107, 280 P.2d 1.) . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. (Filice v. Boccardo (1962) 210 Cal.App.2d 843, 847, 26 Cal.Rptr. 789; Starbird v. Lane (1962) 203 Cal.App.2d 247, 262, 21 Cal.Rptr. 280; Schultz v. Steinberg (1960) 182 Cal.App.2d 134, 140, 5 Cal.Rptr. 890.) Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. (Saint v. Saint (1932) 120 Cal.App. 15, 23"24, 7 P.2d 374.)" (Cooper v. Leslie Salt Co., supra, 70 Cal.2d 627, 636, 75 Cal.Rptr. 766, 772, 451 P.2d 406, 412.) | It is generally an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect in the pleading can be cured by amendment. West's Ann.Code Civ.Proc. S 472c. | QuestionIs it an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment? | Pleading - Memo 282 - RMM.docx | LEGALEASE-00022633-LEGALEASE-00022634 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7563 | Stilwell v. Stilwell S. Walls, 711 So. 2d 103 | 307A+749.1 | Stilwell had no previous discovery violations and the factual circumstances of surgery, illness, and death, together with the ambiguous language of the order granting Stilwell's motion for continuance, all show Stilwell's failure to comply was something short of the willful regard, deliberate callousness, or bad faith required to support the severe sanction of striking a party's pleadings. See Mercer v. Raine, 443 So.2d 944 (Fla.1983); Kelley v. Schmidt, 613 So.2d 918 (Fla. 5th DCA 1993). The trial court's authority to impose sanctions for failure to comply with a pretrial order "is not unbridled; the sanction imposed must be commensurate with the offense." Id. at 920 (citing Insua v. World Wide Air, Inc., 582 So.2d 102 (Fla. 2d DCA 1991)). A reasonable accommodation would have been a second continuation of the trial and the imposition of less severe sanctions. As frustrated as SSW was by the delay, Stilwell's interpretation of the court's order granting continuance was reasonable. That, plus Stilwell's compelling personal circumstances, do not demonstrate the contemptuous attitude that must exist as a prerequisite to imposition of this most severe sanction. | Trial court's authority to impose sanction for failure to comply with pretrial order is not unbridled, and sanction imposed must be commensurate with the offense. | Is the Trial court's authority to impose sanction for failure to comply with pretrial order unbridled? | Pretrial Procedure - Memo # 1896 - C - VP.docx | ROSS-003287812-ROSS-003287814 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7564 | Jones v. John's Cmty. Hosp., 624 S.W.2d 330 | 307A+718 | The granting of a continuance rests within the sound discretion of the trial judge. Hernandez v. Heldenfels, Tex., 374 S.W.2d 196. Mere absence of a party does not automatically entitle him to a continuance. Erback v. Donald, Tex.Civ.App. (Ft. Worth) writ ref'd WOM, 170 S.W.2d 289. While the absence of a material witness is "sufficient cause" for granting the motion, that is true only if proper diligence has been used to procure the testimony of the witness. Fritsch v. J. M. English Truck Line, Inc., 161 Tex. 168, 246 S.W.2d 856; Middleton v. Vaughn, supra; Alexander v. Alexander, Tex.Civ.App. (Waco) Er.Dism'd, 540 S.W.2d 502. Furthermore, a motion for continuance may be properly denied if the motion fails to show that by the exercise of reasonable diligence a party's testimony could not have been made available by taking his deposition. Erback v. Donald, supra. Finally, the denial of a continuance will not be erroneous if the motion shows the absent party may never be able to attend the trial or where the motion does not show the party failed to fully testify in her deposition. Shannon v. Marchbanks, 35 Tex.Civ.App. 615, writ ref'd, 80 S.W. 860; Marsh v. Williams, Tex.Civ.App. (Beaumont) writ ref'd WOM, 154 S.W.2d 201. See also Hooks v. Brown, Tex.Civ.App. (Austin) NRE, 348 S.W.2d 104. | Absence of material witness is "sufficient cause" for granting motion for continuance only if proper diligence has been used to procure testimony of witness. Vernon's Ann.Rules Civ.Proc., Rules 251, 252. | "Is the absence of a material witness sufficient cause for continuance, but only if proper diligence has been used to procure testimony of such witness?" | 027185.docx | LEGALEASE-00132834-LEGALEASE-00132835 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7565 | Contreras By & Through Contreras v. Carbon Cty. Sch. Dist. No. 1, 843 P.2d 589 | 30+3311 | We have stated that a trial court has discretion to waive the requirements contained in its pretrial orders. Oukrop v. Wasserburger, 755 P.2d 233, 236-38 (Wyo.1988); Caldwell v. Yamaha Motor Co., Ltd., 648 P.2d 519, 527 (Wyo.1982); Ford Motor Co. v. Kuhbacher, 518 P.2d 1255, 1260 (Wyo.1974).We will not overturn the trial court's ruling excusing a failure to observe its pretrial order unless there has been an abuse of discretion. Kuhbacher, 518 P.2d at 1260. We hold that there was no abuse of discretion in this instance. The trial court could choose to hear, in the interest of judicial economy, an untimely dispositive motion. While it is a better practice for the court to adhere to its scheduling orders, we cannot say that appellants were unfairly prejudiced or that a manifest injustice was committed by the trial court's consideration of appellees' motion for partial summary judgment. Kuhbacher, 518 P.2d at 1260. | Trial court has discretion to waive requirements contained in its pretrial orders, and ruling which excuses failure to observe pretrial order will not be overturned on appeal unless there has been abuse of discretion. | Will a ruling which excuses failure to observe pretrial order be overturned on appeal unless there has been an abuse of discretion? | Pretrial Procedure - Memo # 2149 - C - SN.docx | ROSS-003286497-ROSS-003286498 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7566 | Dodd v. Steele, 114 N.C. App. 632 | 102+2 | Furthermore, neither the dismissal of a case nor the filing of an appeal deprives the trial court of jurisdiction to hear Rule 11 motions.Bryson v. Sullivan, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992) ( "Dismissal does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated"); Overcash v. Blue Cross & Blue Shield of N.C., 94 N.C.App. 602, 617, 381 S.E.2d 330, 340 (1989) (filing a notice of appeal does not deprive the trial court of jurisdiction to hear Rule 11 motions for sanctions).Valdese's motion for sanctions, therefore, was also properly before the trial court. | Neither dismissal of case nor filing of appeal deprives trial court of jurisdiction to hear Rule 11 motions. Rules Civ.Proc., Rule 11, G.S. S 1A-1. | Does the dismissal of a case or the filing of an appeal deprive the trial court of jurisdiction to hear Rule 11 motions? | 027995.docx | LEGALEASE-00133334-LEGALEASE-00133335 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7567 | Straub v. Smith, No. 31955, 2006 WL 1982878 | 102+196 | A stipulated dismissal with prejudice, entered before trial, acts as a final judgment just as if the parties had proceeded to trial. See Kawai Farms, Inc. v. Longstreet, 121 Idaho 610, 613"14, 826 P.2d 1322, 1325"26 (1992) (where the Idaho Supreme Court determined the doctrine of res judicata applied to a voluntary dismissal with prejudice just as if it were a final judgment). Collateral issues that do not go to the merits of an action, including requests for costs and attorney fees, can be determined by the district court after termination or dismissal of the action. Inland Group of Companies, Inc. v. Obendorff, 131 Idaho 473, 475, 959 P.2d 454, 456 (1998); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 394, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359, 374 (1990) (final judgment does not eliminate a court's jurisdiction to hear collateral issues). | Collateral issues that do not go to the merits of an action, including requests for costs and attorney fees, can be determined by the district court after termination or dismissal of the action. | Can collateral issues that do not go to the merits of an action be determined by the district court after termination or dismissal of the action? | 028131.docx | LEGALEASE-00132596-LEGALEASE-00132597 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7568 | Larson v. Karagan, 979 N.E.2d 655 | 307A+486 | However, a party who made admissions by failing to respond may move to withdraw those admissions pursuant to T.R. 36(B). Id. The trial court may grant a motion to withdraw admissions if it determines: (1) withdrawal or amendment will subserve the presentation of the merits, and (2) prejudice in maintaining the action or defense will not result to the party that obtained the admission. Id. The party seeking withdrawal has the burden of demonstrating the presentation of the merits will be subserved by withdrawal, and the party who obtained the admissions has the burden of demonstrating it will be prejudiced if the trial court permits withdrawal. Id.; T.R. 36(B). Even if both of these conditions are satisfied, the rule does not compel the trial court to grant a request to withdraw admissions; rather, the court may, in its discretion, permit withdrawal. Peters, 709 N.E.2d at 54"55. We will reverse the grant or denial of a motion to withdraw admissions only for an abuse of discretion. Id. at 55. | The party seeking to withdraw admissions has the burden of demonstrating the presentation of the merits will be subserved by withdrawal, and the party who obtained the admissions has the burden of demonstrating it will be prejudiced if the trial court permits withdrawal. Trial Procedure Rule 36(B). | Does the party seeking to withdraw admissions have the burden of demonstrating the presentation of the merits will be subserved by withdrawal? | Pretrial Procedure - Memo # 2576 - C - ES.docx | ROSS-003288314-ROSS-003288315 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7569 | Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853 | 307A+517.1 | In Texas, our general rule is that plaintiffs have the right to take a nonsuit at any time until they introduce all evidence other than rebuttal evidence. Aetna Casualty & Surety Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993); Tex.R.Civ.P. 162. Such a nonsuit may have the effect of vitiating earlier interlocutory orders. See Ault v. Mulanax, 724 S.W.2d 824, 828 (Tex.App."Texarkana 1986, orig. proceeding). A decision on the merits, such as a summary judgment, however, is not vitiated. See Mainland Savings Ass'n v. Wilson, 545 S.W.2d 491, 493 (Tex.Civ.App."Houston [1st Dist.] 1976, no writ). This includes partial summary judgments. | While nonsuit by plaintiff may have effect of vitiating earlier interlocutory orders, decision on the merits such as summary judgment is not vitiated; such rule includes partial summary judgments. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "While nonsuit by a plaintiff may have an effect of vitiating earlier interlocutory orders, is the decision on the merits such as summary judgment not vitiated?" | Pretrial Procedure - Memo # 2677 - C - SKG.docx | ROSS-003288117-ROSS-003288118 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7570 | Turner v. Mize, 280 Ga. App. 256 | 307A+486 | Pursuant to the two-prong test set forth by OCGA " 9"11"36(b), the trial court may permit the withdrawal of admissions "[ (1) ] when the presentation of the merits of the action will be subserved thereby and [ (2) ] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." The burden as to the first prong is on the movant seeking to withdraw the admissions, and the burden as to the second prong is on the nonmovant/respondent. Intersouth Properties v. Contractor Exchange, 199 Ga.App. 726, 727(1), 405 S.E.2d 764 (1991). "The first prong of the test is not perfunctorily satisfied ... and the desire to have a trial, standing alone, is not sufficient to satisfy the test." Id. at 727"728(1), 405 S.E.2d 764. "If the burden of proof on the subject matter of the request for admission is on the requestor, the movant is required to show the admitted request either can be refuted by admissible evidence having a modicum of credibility or is incredible on its face, and the denial is not offered solely for purposes of delay." Id. at 728(1), 405 S.E.2d 764. If the movant fails to make the required showing to satisfy the first prong of the test, then the trial court is authorized to deny the motion to withdraw the admissions. | If a movant to withdraw or amend admissions that have resulted from failure to answer or object to requests for admission fails to make the required showing to satisfy the first prong of the test, that presentation of the merits of the action will be subserved by withdrawal or amendment, then the trial court is authorized to deny the motion to withdraw the admissions. West's Ga.Code Ann. S 9-11-36(b). | "In order to satisfy the first prong of the two-part test for withdrawing or amending admissions, must the moving party show that the presentation of the merits of the case will be subserved by allowing the withdrawal or amendment?" | 028411.docx | LEGALEASE-00132960-LEGALEASE-00132961 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7571 | Nelson v. QHG of S.C. Inc., 354 S.C. 290 | 307A+517.1 | Under Rule 41(a)(1)(A), SCRCP, a plaintiff may dismiss an action without leave of court before the defendant files an answer or motion for summary judgment. Burry & Son Homebuilders, Inc. v. Ford, 310 S.C. 529, 426 S.E.2d 313 (1992); In re Morrison, 321 S.C. 370, 373, 468 S.E.2d 651, 652"53 (1996) ("[U]nder the plain language of paragraph (a)(1), a plaintiff has an unconditional right to voluntarily dismiss an action any time before an answer or motion for summary judgment has been served."). Unless otherwise stated in the notice of dismissal or stipulation, the voluntary dismissal of an action by a plaintiff with the consent of the opposing party is without prejudice. Gamble v. State, 298 S.C. 176, 379 S.E.2d 118 (1989). Generally, a plaintiff is entitled to a voluntary non-suit without prejudice as a matter of right unless the defendant shows legal prejudice or important issues of public policy are present. Burry & Son Homebuilders, 310 S.C. at 531, 426 S.E.2d at 314; Bowen & Smoot v. Plumlee, 301 S.C. 262, 391 S.E.2d 558 (1990); Prime Med. Corp. v. First Med. Corp., 291 S.C. 296, 353 S.E.2d 294 (Ct.App.1987). | Unless otherwise stated in the notice of dismissal or stipulation, the voluntary dismissal of an action by a plaintiff with the consent of the opposing party is without prejudice. Rules Civ.Proc., Rule 41(a)(1)(A). | Is the voluntary dismissal of an action by a plaintiff with the consent of the opposing party without prejudice? | Pretrial Procedure - Memo # 2810 - C - BP.docx | ROSS-003301089-ROSS-003301090 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7572 | Grosch v. Tunica Cty., Mississippi, 569 F. Supp. 2d 676 | 386+7 | "The difference between trespass to chattels and conversion is primarily one of degree. Trespass to chattels in modern tort law involves interference or damage that is of a less serious or substantial nature. Conversion claims involve substantial interference or damage. Otherwise the elements are the same. Conversion is by far the more important of the two torts." Encyclopedia of Mississippi Law, " 41:77. To prevail on a claim of trespass to chattels, a plaintiff "must establish that there has been an unauthorized interference with his possession of personal property, or an unauthorized use of his personal property." Awad v. United States, 2001 WL 741638 (N.D.Miss.2001). "If the interference is of such a substantial nature that the defendant can justly be compelled to pay the entire value of the chattel, the plaintiff's remedy is an action for conversion." Encyclopedia of Mississippi Law, " 41:78. "[T]here is a conversion only when there is an "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." While intent is necessary, it need not be the intent of a wrongdoer." Wilson v. General Motors Acceptance Corp., 883 So.2d 56, 68 (Miss.2004). | Under Mississippi law, difference between trespass to chattels and conversion is primarily one of degree; trespass to chattels involves interference or damage that is of less serious or substantial nature, but conversion claims involve substantial interference or damage. | Is the difference between trespass to chattels and conversion primarily one of degree? | Trespass - Memo 229 - RK.docx | ROSS-003290625-ROSS-003290626 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7573 | Johnson v. Gen. Motors Corp., 199 Kan. 720 | 413+1 | When, after payments have been made for at least six months, application for lump sum redemption is made, it is essentially a request to change the character of the award in the light of then-existing conditions. Inherently, the employer-respondent has an interest in the award, and in the light of the end sought to be achieved by the workmen's compensation act, there is a public interest as well. Conceivably a change in award could have far-reaching consequences and in a very real sense of the word could constitute a new award. The right to review and modification of an award (44-528) as well as entitlement to medical treatment (44-510) are affected. Thus redemption terminates rights and liabilities on both sides. Such an award is to be made (except under 44-529 where security is doubtful) only after a determination "it is for the better interest" of the injured employee or his dependents. Some type of hearing on the matter is clearly contemplated, and this has always been the custom and practice. The question to be determined is one of fact, namely, Is a lump sum redemption for the better interest of the claimant? Therefore, we think the director performs more than a mere administrative function in this duty. He considers past and present facts as disclosed by an evidentiary hearing. Certainly this is in the nature of a judicial function, and one for which appellate review is appropriate. | The employer has interest in workmen's compensation award, and in light of end sought to be achieved by Workmen's Compensation Act, there is public interest as well. K.S.A. 44-531. | "Does the employer have an interest in the workmens compensation award and is there a public interest as well, in light of the end sought to be achieved by the Workmens Compensation Act?" | 047850.docx | LEGALEASE-00132882-LEGALEASE-00132883 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7574 | Rosser v. Terminix Int'l Co., 143 Ohio App. 3d 157 | 307A+517.1 | The initial issue that must be decided in this case is how to characterize the trial court's conditional order of dismissal. The Rossers contend that the first case was dismissed under Civ.R. 41(A)(1). This rule allows any civil plaintiff to dismiss a case at any time before trial simply by filing a notice of dismissal, unless the defendant has initiated a counterclaim that cannot be independently maintained. Unless otherwise agreed, this type of dismissal is without prejudice the first time the plaintiff chooses to dismiss the case. It is well-settled law in Ohio that "a dismissal without prejudice leaves the parties as if no action had been brought at all." And, generally, as a result, rulings and orders preceding the voluntary dismissal are essentially eradicated and therefore have no res judicata effect. | Generally, rulings and orders preceding a voluntary dismissal are essentially eradicated and therefore have no res judicata effect. Rules Civ.Proc., Rule 41(A)(1). | Are rulings and orders preceding a voluntary dismissal essentially eradicated and therefore have no res judicata effect? | 028273.docx | LEGALEASE-00133636-LEGALEASE-00133637 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7575 | U.S. v. 52 Drums Maple Syrup, 110 F.2d 914 | 180+48(7) | During the trial the claimant strenuously insisted that the statute above mentioned did not apply to these seizures because if any of the syrup contained more lead when received by the claimant than the statute permitted all the excess in each instance would have been removed by the claimant before it sold or otherwise disposed of the syrup. Its intention so to do was established with emphasis when the court permitted the claimant to show at great length the care that it always exercised to make its products pure and the cooperation it gave the agency of the government charged with the administration of the Pure Food and Drugs Act. If the statute did not apply to the interstate shipment of food which, though adulterated, was to be made pure within the statutory meaning before being otherwise disposed of in any way, the claimant not only presented an adequate defense but undoubtedly proved affirmatively that the libels were unfounded. But that was a wholly false issue. The intended use to which adulterated food is to be put after it has been shipped in interstate commerce is immaterial on the question of the government's right to forfeit because of such shipment. United States v. Thirteen Crates of Frozen Eggs, D.C., 208 F. 950; Affirmed, 2 Cir., 215 F. 584; Hipolite Egg Co., v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364. The introduction of a comparatively large amount of evidence in support of this false issue to show that the syrup was to be deleaded before any part of it was used as a food served to create an atmosphere so permeated with the general idea of the claimant's business rectitude that it is not at all unlikely that the condemnation proceedings were made to assume the nature of an unjust prosecution. | The intended use to which adulterated food is to be put after it has been shipped in interstate commerce is immaterial on the question of the government's right to forfeit because of such shipment. Pure Food and Drug Act S 7, subd. 5, and S 10, 21 U.S.C.A. S 8, subd. 5, and S 14. | Do the government has a right to forfeit adulterated food or drug after it has been shipped in interstate commerce? | 006535.docx | LEGALEASE-00133914-LEGALEASE-00133915 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7576 | Doe v. Garrett, 903 F.2d 1455 | 92+4242 | The Navy's refusal to reenlist Doe in the NRCR program does not impinge on any constitutionally-protected property interest. It is well established that a military officer's expectation of continued military employment does not rise to the level of a property interest unless it is rooted in some statute, regulation, or contract. Sims v. Fox, 505 F.2d 857, 860"62 (5th Cir.1974) (en banc ), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); accord Alberico v. United States, 783 F.2d 1024, 1026"27 (Fed.Cir.1986). In this case, as we have noted in Part I, the applicable military regulations in effect since April 1987 specifically exclude Doe from eligibility for the NRCR program because of his HIV-positive status. More generally, the Navy's regulations governing the NRCR program, as set forth in Naval Military Personnel Command Instruction 1001.1B, provide that assignments to the NRCR program are for temporary periods of 180 days, one year, or two years, that retention beyond the initial period "is not implied or guaranteed," and that the NRCR program "is not a career program." Assignments and reassignments to the program are made by the Commander of the Naval Military Personnel Command from among applicants meeting a detailed list of requirements; nothing in the regulations suggests any vested right or assurance that any applicant will be accepted into the program. To the contrary, the regulations specifically warn that even incumbent NRCR officers "may be non-continued ... in accordance with the needs of the Naval Reserve Recruiting Program." Courts have rejected claimed property interests even in cases involving outright discharge from career positions in the military. See Sims, 505 F.2d at 858"60; Alberico, 783 F.2d at 1026"27. Accordingly, Doe's claim to a property interest in prospective reassignment to the NRCR program is devoid of merit. | Military officer's expectation of continued military employment does not rise to level of property interest unless it is rooted in some statute, regulation, or contract. U.S.C.A. Const.Amend. 5. | Does a military officer's expectation of continued military employment rise to level of property interest? | 008426.docx | LEGALEASE-00133883-LEGALEASE-00133884 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 7577 | Chapin v. Webb, 701 F. Supp. 970 | 34+3(1) | To the extent a military regulation is mandatory, it will be enforced by the courts. Ornato v. Hoffman, 546 F.2d 10, 13 (2d Cir.1976); see Smith v. Resor, 406 F.2d 141, 146 (2d Cir.1969) (military must observe own procedures). Thus, were petitioner correct that the NMPM requires the separation of personnel suffering from personality disorders, then his claim"that the Navy's recognition of his illness obliges it to discharge him"would be subject to judicial review. However, where a matter is "committed to agency discretion" by statute or regulations which do not mandate action, the agency's exercise of that discretion is not subject to judicial review. See Ornato, 546 F.2d at 13"14; Smith, 406 F.2d at 145; United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 n. 2 (2d Cir.1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); cf. 5 U.S.C. " 701(a)(2). | To extent military regulation is mandatory, it will be enforced by courts; however, where matter is committed to discretion by statute or regulations which do not mandate action, exercise of that discretion is not subject to judicial review. | When a matter is committed to discretion by statute or regulations which do not mandate action is the exercise of that discretion subject to judicial review? | 008973.docx | LEGALEASE-00133732-LEGALEASE-00133733 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7578 | City of San Antonio v. Fetzer, 241 S.W. 1034 | 92+2437 | The Legislature may delegate to municipal corporations the control of the streets of such municipalities, and when the power is so delegated the local governing body (the board of city commissioners in the case of the city of San Antonio) may exercise that power to the same extent and for the same purposes as the Legislature could do.The power of the city in exercising such control is limited only by the Constitution and general laws of the state, and its acts thereunder will be upheld unless in contravention of some provision of the Constitution or general laws. Section 5, art. 11, State Constitution; article 1096d, Vernon's Statutes. But neither the Legislature nor the city commissioners has the power to take away or unreasonably abridge, the natural rights of the citizen to the use of the streets in the manner and for the purposes we have set forth above. | The Legislature may delegate the control of city streets to municipal corporations, the local governing bodies of which may then exercise such power to the same extent and for the same purposes as the Legislature could. | Does the legislature have the power to delegate the control of the streets to the municipal corporation? | 019321.docx | LEGALEASE-00133766-LEGALEASE-00133767 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7579 | Taylor v. Bd. of Ed. of Cabell Cty., 152 W. Va. 761 | 296+2 | The general rule, supported by the clear weight of authority, is that a pension granted by a public authority is not a contractual obligation but is a gratuitous allowance, in the continuance of which the 154 pensioner has no vested right, and accordingly, the pension is terminable or alterable at the will of the grantor. Densmore v. County Court of Mercer County, 106 W.Va. 317, 145 S.E. 641; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657; Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; United States v. Teller, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352; MacFarland v. Bieber, 32 App.D.C. 513; Raines v. Board of Trustees of Illinois State Teachers' Pension and Retirement Fund, 365 Ill. 610, 7 N.E.2d 489; Dodge v. Board of Education of City of Chicago, 364 Ill. 547, 5 N.E.2d 84, affirmed, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; 768 People ex rel. Donovan v. Retirement Board of Policemen's Annuity and Benefit Fund, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; State ex rel. Parker v. Board of Education of City of Topeka, 155 Kan. 754, 129 P.2d 265; Foley v. City of Springfield, 328 Mass. 59, 102 N.E.2d 89; Brown v. City of Highland Park, 320 Mich. 108, 30 N.W.2d 798; Gibbs v. Minneapolis Fire Department Relief Association, 125 Minn. 174, 145 N.W. 1075, 37 Ann.Cas.1915C, 749; State ex rel Phillip v. Public School Retirement System of City of Saint Louis, 364 Mo. 395, 262 S.W.2d 569; McFeely v. Pension Commission of City of Hoboken, 8 N.J.Super. 575, 73 A.2d 757; Laden v. Daly, 132 N.J.L. 440, 40 A.2d 780, affirmed, 133 N.J.L. 314, 44 A.2d 212; Moran v. Firemen's and Policemen's Pension Fund Commission of Jersey City, 20 N.J.Misc. 479, 28 A.2d 885; Dillon v. Wentz, 227 N.C. 117, 41 S.E.2d 202; City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997; In re Snyder, 93 Wash. 59, 160 P. 12, 3 A.L.R. 1230, affirmed, 248 U.S. 539, 39 S.Ct. 67, 63 L.Ed. 410. | General rule is that pension granted by public authority is not contractual obligation but is gratuitous allowance, in continuance of which pensioner has no vested right, and, accordingly, pension is terminable or alterable at will of grantor. | Is pension granted by public authorities a contractual obligation? | Pension - Memo 6 - MS.docx | ROSS-003290559-ROSS-003290561 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7580 | In re Marriage of Brown, 15 Cal. 3d 838 | 134+712 | Upon reconsideration of this issue, we have concluded that French v. French should be overruled and that the subsequent decisions which rely on that precedent should be disapproved. As we shall explain, the French rule cannot stand because non- vested pension rights are not an expectancy but a contingent interest in property; furthermore, the French rule compels and inequitable division of rights acquired through community effort. Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding. | Pension rights, whether or not vested, represent property interest, and to extent that such rights derive from employment during coverture, they comprise community asset subject to division in dissolution proceedings; overruling French v. French, 17 Cal.2d 775, 112 P.2d 235. | Does a pension right represent a property interest? | Pension - Memo 7 - MS.docx | ROSS-003318598-ROSS-003318600 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 7581 | Magsalin v. Chace, 255 Ga. App. 146 | 313+48 | OCGA " 9-2-61(a) provides that a plaintiff may refile an action she previously dismissed within the original applicable statute of limitation or within six months after the dismissal, whichever is later.A renewed lawsuit under OCGA " 9-2-61(a) is an action de novo; therefore, the procedural requirements of filing a new complaint and perfecting service ... must be met anew. Diligence in perfecting service ... in a [renewal] action ... must be measured from the time of filing the renewed suit. [Because] service of the renewal action in this case was not perfected within the six-month renewal period, [Magsalin] would have the burden of showing that [s]he acted in a reasonable and diligent manner in attempting to ensure that proper service was made as quickly as possible. | The lawsuit that has been renewed after having been discontinued or dismissed by plaintiff is an action de novo; therefore, the procedural requirements for filing new complaints and perfecting service must be met anew. O.C.G.A. S 9-2-61(a). | Is the lawsuit that has been renewed after having been discontinued or dismissed by plaintiff an action de novo? | 028439.docx | LEGALEASE-00134064-LEGALEASE-00134065 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 7582 | Time Warner v. Gonzalez, 441 S.W.3d 661 | 307A+486 | Ordinarily, the burden of showing good cause and no undue prejudice lies with the party seeking withdrawal of deemed admissions. Boulet v. State, 189 S.W.3d 833, 836 (Tex.App.-Houston [1st Dist.] 2006, no pet.). When the due process concerns recognized in Wheeler are implicated, however, the Texas Supreme Court has stated that the burden lies with the summary judgment movant. Marino, 355 S.W.3d at 634. Because the party moving for summary judgment based on deemed admissions would logically be the party opposing withdrawal of those admissions, we read Marino to place the burden on the party opposing withdrawal. This is consistent with other forms of discovery sanctions, where the burden of proving bad faith rests with the party seeking sanctions. GTE Commc'ns Sys. Corp. v. Tanner, 856 S.W.2d 725, 731 (Tex.1993) (orig. proceeding); Dike v. Peltier Chevrolet, Inc., 343 S.W.3d 179, 184 (Tex.App.-Texarkana 2011, no pet.). Accordingly, we hold that Gonzalez had the burden of proving that Time Warner acted with bad faith or callous disregard. | Ordinarily, the burden of showing good cause and no undue prejudice lies with the party seeking withdrawal of deemed admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | Does the burden of showing good cause lie with the party seeking withdrawal of deemed admissions? | Pretrial Procedure - Memo # 2934 - C - NC.docx | ROSS-003290328-ROSS-003290330 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7583 | Costello v. Zavodnik, 55 N.E.3d 348 | 307A+486 | Furthermore, allowing Costello to withdraw his admissions would not prejudice Zavodnik in maintaining his action on the merits. As used in Rule 36(B), the word ""prejudice" does not mean that the party who has obtained the admissions will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case." Corby v. Swank, 670 N.E.2d 1322, 1326 (Ind.Ct.App.1996). Here, Zavodnik would suffer no such detriment. The matter has not yet been set for trial, Zavodnik still has time to prepare his case, and there is no evidence that he has relied on Costello's admissions in a way that would impair his ability to prepare his case. The fact that Zavodnik would have to spend time and money preparing his case does not constitute "prejudice"; he would simply be in the same position as most other civil plaintiffs in Indiana, having to marshal the evidence in his favor and prove his case in court. | As used in rule allowing withdrawal of admissions when party opposing withdrawal cannot demonstrate prejudice, the word "prejudice" does not mean that the party who has obtained the admissions will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case. Trial Procedure Rule 36(B). | Does prejudice mean that the obtaining party has suffered a detriment in the preparation of his case? | Pretrial Procedure - Memo # 3041 - C - SKG.docx | LEGALEASE-00024341-LEGALEASE-00024342 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 7584 | Wal-Mart Stores v. Deggs, 968 S.W.2d 354 | 307A+486 | Undue prejudice bars withdrawal of deemed admissions. Tex.R. Civ. P. 169(2); Stelly, 927 S.W.2d at 622. Delay of trial is considered a factor in determining prejudice against a party. See North River Ins. Co. v. Greene, 824 S.W.2d 697, 701 (Tex.App."El Paso 1992, writ denied). But here, Deggs had deposed Smith and therefore was not dependent on the deemed admissions for developing her theory of the case. Thus, the plaintiff would not have been unduly prejudiced if the deemed admissions were withdrawn. | In considering motion to withdraw deemed admissions, delay of trial is factor in determining prejudice against a nonmoving party. Vernon's Ann.Texas Rules Civ.Proc., Rule 169, subd. 2. | "In considering a motion to withdraw deemed admissions, is delay of trial a factor in determining prejudice against a nonmoving party?" | 029013.docx | LEGALEASE-00134068-LEGALEASE-00134069 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7585 | State ex rel. Rosen v. Smith, 241 S.W.3d 431 | 307A+517.1 | In non-jury cases, a plaintiff may voluntarily dismiss his or her suit without a court order at any time prior to the introduction of evidence at trial. Rule 67.02(a)(2).Once a plaintiff does so, "it is as if the suit were never brought." Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo.App. E.D.1992).The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity. Id. The court loses jurisdiction as of the date of dismissal. Id. at 81. This is so despite the fact the opposing party had motions pending at the time the dismissal was filed. See Atteberry v. Hannibal Regional Hosp., 875 S.W.2d 171, 173 (Mo.App. E.D.1994). | In non-jury cases, plaintiff may voluntarily dismiss his suit without a court order at any time prior to the introduction of evidence at trial, and, once plaintiff has done so, it is as if the suit were never brought. V.A.M.R. 67.02(a)(2). | "Once a plaintiff has voluntarily dismissed an action, is it as if the suit had never been filed?" | 029037.docx | LEGALEASE-00134250-LEGALEASE-00134251 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7586 | Wagy v. Brown, 24 Cal. App. 4th 1 | 307A+485 | Section 2033, subdivision (o ) authorizes the court to award costs including attorney fees incurred by a party in proving any matter where the proof is necessitated by an opposing party's denial of a request for admissions. It provides in relevant part: "[i]f a party fails to admit the truth of any matter when requested to do so under this section, and if the party requesting that admission thereafter proves the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." (Emphasis added.)" "Proof" is the establishment by evidence of a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid.Code, " 190.) Given this definition, preparation for trial or arbitration is not the equivalent of proving the truth of a matter so as to authorize an award of attorney fees under section 2033, subdivision (o ). Expenses are recoverable only where the party requesting the admission "proves the truth of that matter," not where that party merely prepares to do so. Plaintiff is not entitled to attorney fees under the statute and the trial court erred in awarding them. | Preparation for trial or arbitration is not equivalent of proving truth of matter so as to authorize award of attorney fees under statute authorizing such award for costs incurred by party in proving any matter where proof is necessitated by opposing party's denial of request for admission; expenses are recoverable only where party requesting admission proves truth of matter, not where party merely prepares to do so. West's Ann.Cal.C.C.P S 2033, subd. (o ). | Is preparation for trial or arbitration equivalent of proving truth of matter so as to authorize award of attorney fees? | 030021.docx | LEGALEASE-00134848-LEGALEASE-00134849 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7587 | Kohl v. United States, 226 F.2d 381 | 371+2001 | tax on a transfer but rather a direct tax on proceeds without apportionment, as required by Article I, " 2, Clause 3 and Article I, " 9, Clause 4 of the Constitution. A tax imposed on property or the income therefrom only by reason of its ownership is direct. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 578, 580, 15 S.Ct. 673, 39 L.Ed. 759. Such taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon the happening of an event such as an exchange or transmission of property. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; see also Chase nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Scholey v. Rew, 23 Wall. 331, 90 U.S. 331, 23 L.Ed. 99; Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. | Direct taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon happening of an event, such as an exchange or transmission of property. U.S.C.A. Const. art. 1, SS 2, 9. | Do direct taxes bear directly upon persons? | 045019.docx | LEGALEASE-00134469-LEGALEASE-00134470 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7588 | Xerox Corp. v. Cty. of Orange, 66 Cal. App. 3d 746 | 371+3602 | In support of its contention that sales tax is not a part of the price, appellant argues that "the amount of sales tax that a seller may collect from a buyer" is not known until the price itself has been agreed upon, and therefore it is not a part of the purchase price. This argument ignores the fact that the sales tax is an excise tax imposed upon the retailer for the "privilege of selling tangible personal property at retail." (Rev. & Tax.Code, s 6051.) The state sales tax is "not a tax on the sale or because of the sale but . . . an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales." (City of Pomona v. State Bd. of Equalization, 53 Cal.2d 305, 309, 1 Cal.Rptr. 489, 491, 347 P.2d 904, 906, citing Livingston Rock & Gravel Co. v. De Salvo, 136 Cal.App.2d 156, 160, 288 P.2d 317; see also National Ice, etc., Co. v. Pacific F. Exp. Co., 11 Cal.2d 283, 289, 79 P.2d 380; Graham Bros., Inc. v. Los Angeles, 6 Cal.App.2d 203, 44 P.2d 452; People v. Herbert's of Los angeles, Inc., 3 Cal.App.2d 482, 483"484, 39 P.2d 829.) The law imposes a tax at a fixed rate upon the gross receipts and not on the individual sales, and the fact that the law authorizes a bookkeeping method to compute the amount of the tax separately from the sales price does not change the character of the tax. (Roth Drug, Inc. v. Johnson, 13 Cal.App.2d 720, 737, 57 P.2d 1022.) Neither does the fact that the fund, out of which the retailer pays the tax, has been collected from the consumers make the tax a tax on the consumer. The retailer, though authorized to collect the tax from his consumers, is not required to do so. Therefore, "The tax being a direct obligation of the retailer and, so far as the consumer is concerned, A part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer." (Emphasis added.) (Western Lithograph Co. v. State Bd. of Equalization, 11 Cal.2d 156, 164, 78 P.2d 731, 735.). | Sales tax law imposes a tax at a fixed rate upon the gross receipts and not on the individual sales, and fact that law authorizes a bookkeeping method to compute the amount of tax separately from the sales price does not change the character of the tax. West's Ann.Rev. & Tax.Code, S 6051. | Can bookkeeping change the nature or incidence of a tax? | 045043.docx | LEGALEASE-00134310-LEGALEASE-00134311 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7589 | Anderson v. Miller Scrap Iron Co., 169 Wis. 106 | 413+1 | It is true that the liability of the employer at common law was that of a wrongdoer, and therefore tortious in its nature. It is also true that for that liability the Workmen's Compensation Act has substituted another liability. It does not necessarily follow, however, that the principles applicable to torts should be applied to the liabilities of the employer under the act. The liability of the employer under the act is not based upon any wrongful conduct or negligent act of the employer. However blameless the employer may be, he is nevertheless liable if the employ" be injured and he bring himself within the terms of the act. | The Workmen's Compensation Act has substituted another liability in the place of the employer's common-law liability in tort; but it does not necessarily follow that the principles applicable to torts should be applied to this new liability. | Has the Workmens Compensation Act substituted another liability in the place of the employers common-law liability in tort? | 047995.docx | LEGALEASE-00134859-LEGALEASE-00134860 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7590 | Com. v. Clarke, 311 Pa. Super. 446 | 63+1(1) | The crime of bribery is committed once the offer is made to confer a benefit or when the benefit, as here, is conferred, on a public official to cause that official to violate his legal duty. Under the section of the Crimes Code proscribing bribery in official and political matters, once the offer to confer the proscribed benefit, or once an agreement is made, the crime is complete. There need be no waiting for the benefit to actually be conferred. See Commonwealth v. Ohle, 291 Pa.Superior Ct. 110, 435 A.2d 592, 596 (1981). See also, Commonwealth v. Weselyk, 268 Pa.Superior Ct. 569, 408 A.2d 1149 (1979) | Under section of crimes code proscribing bribery in official and political matters, once offer to confer proscribed benefit or agreement is made, the crime is complete, and there need be no waiting for benefit to actually be conferred. 18 Pa.C.S.A. SS 4701, 4701(a)(3). | "Under section of crimes code proscribing bribery in official and political matters, when is the crime complete?" | Bribery - Memo #480 - C-JL.docx | ROSS-003305047-ROSS-003305048 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7591 | Hobbs v. Arthur, 264 Ga. 359 | 307A+517.1 | The original suit is void if service was never perfected, since the filing of a complaint without perfecting service does not constitute a pending suit. Patterson, supra at 804, 374 S.E.2d 737; Hilton v. Maddox, Bishop, Hayton etc., 125 Ga.App. 423(1), 188 S.E.2d 167 (1972). A suit is also void and incapable of renewal under OCGA " 9-2-61(a) if there has been a judicial determination that dismissal is authorized. However, unless and until the trial court enters an order dismissing a valid action, it is merely voidable and not void. | Suit is void and, thus, incapable of renewal, if service was never perfected, as filing of complaint without perfecting service is not pending suit. O.C.G.A. S 9-2-61(a). | "Is a suit void and incapable of renewal, if service was never perfected, as filing of complaint without perfecting service is not pending suit?" | 028544.docx | LEGALEASE-00135260-LEGALEASE-00135261 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7592 | D. & J. Mineral & Min. v. Wilson, 456 So. 2d 1099 | 388+6(1) | It is the contention of appellant that the judge abused his discretion in denying continuance on the day of trial and denying a new trial thereafter. Placing the position of appellant (actually that of his counsel) in its most simple form, it is that because of his reliance upon a custom of procedure at the bar in Walker County, he should be excused for failing to notify his client of a case setting and to keep track of the status of his case. In considering this position, the court is immediately faced by the prevailing rule that a litigant, usually through an attorney, has responsibility for keeping track of his case and knowing its status. Generally, the court owes no duty to notify a party of the setting of a case or to continue a case because of the absence of a party or other engagements of his attorney. Knight v. Davis, 356 So.2d 156 (Ala.1978). This court takes judicial note that the different bars and judicial circuits, even different judges, establish methods and customs of handling court business such as publishing court dockets, granting continuances and giving notice to attorneys. However, such customs and methods are not court rules and are constantly subject to change and variation depending upon circumstances. | Generally, court owes no duty to notify party of setting of case or to continue case because of absence of party or other engagements of his attorney. | Does a court owe duty to notify party of setting of case or to continue case because of absence of party or other engagements of his attorney? | 029536.docx | LEGALEASE-00135274-LEGALEASE-00135275 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7593 | Kotter v. Kotter, 2009 UT App 60 | 307A+483 | While we recognize the harsh result rule 36 imposes on Wife, we also must observe the rule's intent: to facilitate discovery, see Langeland, 952 P.2d at 1061. See also Whitaker, 699 P.2d at 685"86 (reversing judgment where pro se defendants  neither responded to plaintiff's requests for admissions within thirty days nor moved to withdraw or amend the admissions). "The penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of rule 36 should not lightly escape the consequences of the rule." Langeland, 952 P.2d at 1061. | Under the rule requiring that requests for admissions are deemed admitted if not timely responded to, the penalty for delay or abuse is intentionally harsh, and parties who fail to comply with the procedural requirements of the rule should not lightly escape the consequences of the rule. Rules Civ.Proc., Rule 36. | Will parties who fail to comply with the procedural requirements of admissions escape the consequences of the rule? | 029556.docx | LEGALEASE-00135405-LEGALEASE-00135406 | Order, SA | 0.46 | 1 | 0 | 0 | 1 | |
| 7594 | TBF Fin. v. Stone, 213 S.W.3d 231 | 307A+483 | A party who fails to respond to requests for admissions admits those matters. No further sanction is necessary or available to the proponent, who instead can use the admissions in dispositive motions or at trial, and a court must consider such admissions in deciding a motion for a directed verdict. Lee v. Ofield, 847 S.W.2d 99, 101 (Mo.App.1992). Such admissions, like admissions in pleadings, eliminate any need to further prove such matters. Rhodes v. Blair, 919 S.W.2d 561, 564 (Mo.App.1996). Rhodes similarly involved a defendant who did not answer Rule 59 requests nor seek judicial relief from the resulting admissions, which plaintiffs presented to the trial court as part of their case. We ruled that those admissions conclusively established plaintiffs' claim and the defendant's liability therefor, which in turn compelled us to reverse the defendant's judgment as against the weight of the evidence and remand for further proceedings. Id. at 564"65.The same reasoning applies here. A defendant named Johnnie Stone was sued and served. Defense counsel entered an appearance for "Defendant Johnnie Stone." The Rule 59 admissions offered by Plaintiff established at least a prima facie case against "Defendant Johnnie Stone," and eliminated Plaintiff's need to further prove such matters. Rhodes, 919 S.W.2d at 564. The trial court's error prejudiced Plaintiff, which necessitates a new trial at which Plaintiff's other points are unlikely to recur. | Admissions by party to civil action by failure to respond to request for admissions, like admissions in pleadings, eliminate any need to further prove such matters. V.A.M.R. 59.01. | "Do admissions by the party to a civil action by failure to respond to a request for admissions, like admissions in pleadings, eliminate any need to further prove such matters?" | 029669.docx | LEGALEASE-00134931-LEGALEASE-00134932 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7595 | Norrell v. Giles, 343 Ark. 504 | 307A+483 | In interpreting Rule 36, this court has consistently held that when a party fails to timely answer requests for admission, or otherwise fails to object to them, the requested matters are deemed admitted. See, e.g., Borg"Warner Acceptance Corp. v. Kesterson, 288 Ark. 611, 708 S.W.2d 606 (1986); Womack v. Horton, 283 Ark. 227, 674 S.W.2d 935 (1984); Beck v. Merritt, 280 Ark. 331, 657 S.W.2d 549 (1983); Barnett Restaurant Supply, Inc. v. Vance, 279 Ark. 222, 650 S.W.2d 568 (1983). Appellant does not deny that he failed to timely answer the requests for admission, nor does he challenge the propriety of the trial court's determination that the matters were then deemed admitted under Rule 36. Instead, he argues that those deemed admissions lost their effectiveness upon his being granted a voluntary dismissal without prejudice, pursuant to Rule 41(a). We agree. | When a party fails to timely answer requests for admission, or otherwise fails to object to them, the requested matters are deemed admitted. Rules Civ.Proc., Rule 36(a). | "When a party fails to timely answer requests for admission, or otherwise fails to object to them, are the requested matters deemed admitted?" | Pretrial Procedure - Memo # 3624 - C - KBM.docx | ROSS-003305155-ROSS-003305156 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7596 | Reynolds Aluminum Bldg. Prod. Co. v. Leonard, 395 Mass. 255 | 307A+483 | Effect of the admissions. Under Dist.Mun.Cts.R.Civ.P. 36 (1975), Reynolds' failure to respond to the Leonards' request for admissions conclusively established the truth of those admissions for this case. This remains true regardless of the importance of the matters thus deemed to be admitted. See Rome v. United States, 450 F.Supp. 378, 383 (D.C.1978), aff'd, 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980). See also Wang Laboratories, Inc. v. Docktor Pet Centers, Inc., 12 Mass.App.Ct. 213, 214, 422 N.E.2d 805 (1981) (admitted matter the basis of plaintiff's affirmative case); Equal Employment Opportunity Comm'n v. Baby Prods. Co., 89 F.R.D. 129, 132 (E.D.Mich.1981) (admitted matter sufficient basis for granting summary judgment). | Under Dist./Mun.Cts.R.Civ.P.Rule 36, 43A M.G.L.A., failure to respond to request for admissions conclusively established truth of admissions for the instant case, regardless of importance of matters thus deemed admitted. | Does failure to respond to a request for admissions conclusively establish the truth of admissions for the instant case? | 030041.docx | LEGALEASE-00134923-LEGALEASE-00134924 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7597 | Becker v. Walton, 884 N.W.2d 737 | 307A+485 | A hearing on a motion for expenses pursuant to " 6"337(c) is a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case. See Salazar v. Scotts Bluff Cty., 266 Neb. 444, 665 N.W.2d 659 (2003). The appellate court reviewing a decision on a motion for expenses is to concern itself solely with the evidence established and produced at that hearing. Id. The determination of an appropriate sanction under " 6"337(c) rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. See id. Once the party making a motion for sanctions proves the truth of the matter previously denied and that reasonable expenses were incurred in doing so, the burden then shifts to the nonmoving party to prove, by a preponderance of the evidence, one of the four exceptions enumerated in the discovery rule. Id. | A hearing on a motion for expenses for a party's failure to admit is a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case. Neb. Discovery R. 6-337(c). | "Is a hearing on a motion for expenses pursuant to discovery rule, a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case?" | Pretrial Procedure - Memo # 3813 - C - DA.docx | ROSS-003291716-ROSS-003291717 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7598 | Entron v. Callais Cablevision, 307 So. 2d 787 | 307A+483 | Failure to answer according to Article 1496, above, does not per se result in requests for admissions being deemed an admission of the truth of the facts sought to be established. In Voisin v. Luke, 249 La. 796, 191 So.2d 503, this issue was dealt with in detail by the Supreme Court. In essence the court noted that the statute is designed to expedite trial of cases and minimize the expense of litigation. The purpose of the provision is to require admission of matters that should be admitted, or which will not be disputed at the trial, and thus eliminate the need to prove unconstroverted facts. The device may not be applied to a controverted legal issue which goes to the heart of the merits of a case. In Voisin, above, the court also noted that an untimely answer should never automatically result in an admission because the suppression of the real facts might well result from such a rule. | Failure to answer request for admission within 15-day statutory period does not per se result in the request for admissions being deemed an admission of truth of the facts sought to be established; device may not be applied to controverted legal issues which go to heart of merits of case. LSA-C.C.P. art. 1496. | Does failure to answer per se result in requests for admissions being deemed an admission of the truth of the facts sought to be established? | 030197.docx | LEGALEASE-00135934-LEGALEASE-00135935 | Condensed, Order, SA | 0.65 | 1 | 1 | 0 | 1 | 1 |
| 7599 | Capitol Novelty Co. v. Evatt, 145 Ohio St. 205 | 371+2010 | The taxpayer's contentions as to benefits were answered, as follows, by the Supreme Court of the United States in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 522, 57 S.Ct. 868, 878, 81 L.Ed. 1245, 109, A.L.R. 1327: "A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. See Cincinnati Soap Co. v. United States, supra [301 U.S. 308, 57 S.Ct. 764, 81 L.Ed. 1122]. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government-that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. Thomas v. Gay, 169 U.S. 264, 280, 18 S.Ct. 340, 42 L.Ed. 740. This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him. Cincinnati Soap Co. v. United States, supra; Carley & Hamilton v. Snook, supra, 281 U.S. 66, 72, 50 S.Ct. 204, 206, 74 L.Ed. 704, 68 A.L.R. 194; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 268, 53 S.Ct. 345, 350, 77 L.Ed. 730, 87 A.L.R. 1191; see Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 203, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493." | Benefits derived from expenditure of public moneys need not be apportioned to the burdens of taxpayer and payment of tax may not be resisted on ground that it is not expended for purposes peculiarly beneficial to taxpayer. Const. art. 1, S 2; art. 12, S 2; U.S.C.A. Const.Amend. 14. | Does the Constitution require the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer? | 045240.docx | LEGALEASE-00135031-LEGALEASE-00135032 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7600 | Fabick & Co. v. Schaffner, 492 S.W.2d 737 | 371+2001 | The legislative purpose in the 1965 amendments to change the state sales tax from a transaction tax to a gross receipts tax could hardly have been more clearly expressed. s 144.021 clearly states that the tax is imposed upon the privilege of selling at retail, with the "primary tax burden upon the seller," who is required to remit tax at three per cent of his gross receipts. The provision of s 144.080 3. which spelled out that the prior tax was "a tax upon the sale" was repealed. The nomenclature of "sales tax" was retained, but as the court pointed out in Lawyers' Association of St. Louis v. City of St. Louis, 294 S.W.2d 676, 682(8) (Mo.App.1956), "the name, purpose, designation or character given by the legislative body to a particular tax in the statute or ordinance imposing it is not conclusive upon the Court in determining the nature or purpose of the exaction." | Name, purpose, designation or character given by legislative body to particular tax in statute or ordinance imposing it is not conclusive upon court in determining nature or purpose of exaction. | Is the designation made by legislature given some weight in determining the nature of tax? | 045259.docx | LEGALEASE-00135159-LEGALEASE-00135160 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7601 | Decker v. Wheeler, 331 F. Supp. 347 | 34+5(4) | The foregoing makes abundantly clear that the Board was considering religion in its orthodox sense. Nowhere in the plaintiff's file or in the findings of the Appeals Board is there any evidence that would support a finding that plaintiff's belief is not an essential part of a religious faith. It is not necessary that the religious belief lead inexorably to conscientious objection. It is sufficient that one have faith and by reason of that faith is opposed to participation in all wars. Bates v. Commander, 413 F.2d 475 (1st Cir. 1969); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968). | To qualify for conscientious objection discharge, it is not necessary that religious belief lead inexorably to conscientious objection; it is sufficient that one have faith and by reason of that faith is opposed to participation in all wars. | Is it necessary that religious belief lead inexorably to conscientious objection to qualify for conscientious objection discharge? | 008487.docx | LEGALEASE-00137018-LEGALEASE-00137019 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 7602 | United States v. Bonito, 57 F.3d 167 | 63+14 | Because it told the jury that the bribe had to be made "with the purpose ... of accomplishing ... an ... end," this instruction made clear that the corrupt agreement, offer or payment must precede the official act to be influenced or rewarded. It then accurately tracked the statutory language as an example. No more was required. Cf. United States v. Medley, 913 F.2d 1248, 1261 (7th Cir.1990) (failure to use the word "corrupt" not plain error where jury was told that defendant must have accepted or agreed to accept payment intending to be influenced or rewarded in his official conduct). | Instruction stating that bribe had to be made "with the purpose . . . of accomplishing . . . an . . . end" was sufficient to satisfy requirement that bribe be "corrupt", for purposes of federal statute proscribing bribery of officials of public and private entities receiving federal funds, as it made clear that corrupt agreement, offer or payment must precede official act to be influenced or rewarded. 18 U.S.C.A. S 666(a)(2). | What language satisfies the requirement that a bribe be corrupt in jury instructions? | 011327.docx | LEGALEASE-00136909-LEGALEASE-00136910 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7603 | Etheridge Motors v. Haynie, 103 Ga. App. 676 | 302+8(21) | 2. (a) Unless the petition affirmatively shows otherwise that the person charged with having actual knowledge of a certain condition does not in fact possess such knowledge, an allegation that a party knew or had notice of a certain state of facts is not demurrable as a conclusion. Warner Bros. Pictures v. Stanley, 56 Ga.App. 85(6), 192 S.E. 300. Special demurrers 13, 14, 25, 27, 34 and 40, attacking paragraphs of the petition which allege certain facts to be within the knowledge of the defendant, were properly overruled. | Unless petition affirmatively shows otherwise that person charged with having actual knowledge of a certain condition does not in fact possess such knowledge, an allegation that he knew or had knowledge of a certain state of facts is not demurrable as a conclusion. | "Is the allegation that a party knew certain facts, a conclusion?" | 023330.docx | LEGALEASE-00136322-LEGALEASE-00136323 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 7604 | In re the Marriage of Perkal, 77 Cal. App. 3d 413 | 307A+716 | Apart from the mathematics involved in this time sequence (which would seemingly obviate the need for a continuance) and more importantly, it is fundamental that conflicts in an attorney's schedule must be brought to the court's attention promptly if such conflicts are to be considered as adequate grounds for continuance. Under the present circumstances the trial court was justified in its refusal to grant the request. | Conflicts in attorney's schedule must be brought to court's attention promptly if such conflicts are to be considered as adequate grounds for continuance. | Can conflicts in attorney's schedule be brought to a court's attention promptly if such conflicts are to be considered as adequate grounds for continuance? | Pretrial Procedure - Memo # 3406 - C - SKG.docx | ROSS-003290789-ROSS-003290790 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 7605 | Karat Enterprises v. Marriott Corp, 196 Ga. App. 769 | 307A+483 | A request for admissions necessitates a written answer or objection signed by the party or his attorney. Hilton Hotels Corp. v. Withrow Travel Svc., 150 Ga.App. 435, 258 S.E.2d 59 (1979). Otherwise the request's subject matter is admitted. Thompson v. Berman, 147 Ga.App. 740(1), 250 S.E.2d 190 (1978). The absence of timely answers conclusively establishes, as judicial admissions, the facts referred to in the request. Stone v. Lenox Enterprises, 176 Ga.App. 696, 697(1), 337 S.E.2d 451 (1985); Albitus v. Farmers & Merchants Bank, 159 Ga.App. 406, 407(1), 283 S.E.2d 632 (1981). The burden is on the one failing to answer to take the initiative and file a motion under OCGA " 9"11"36(b) to withdraw or amend the admissions. | Burden is on one failing to answer request for admissions to take initiative and file motion to withdraw or amend admissions. O.C.G.A. S 9-11-36(b). | Is the burden on one failing to answer request for admissions to take initiative and file motion to withdraw or amend admissions? | 029930.docx | LEGALEASE-00136037-LEGALEASE-00136038 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7606 | Bruenderman v. Bruenderman, 220 So. 3d 204 | 307A+723.1 | Here, Ty subpoenaed Anna's psychiatrist for a deposition one week prior to trial and did not request a continuance to allow him time to attempt to obtain those records. Though the chancery court ruled that Ty could pursue Anna's records, he did not, nor did Ty ever move to compel the production of those records. It is well established that the burden is on the movant to request a continuance to pursue discovery matters, and failure to do so constitutes waiver. Ford Motor Co. v. Tennin, 960 So.2d 379, 394"95 (Miss. 2007); see also generally URCCC 4.04; M.R.C.P. 37. | Burden is on the movant to request a continuance to pursue discovery matters, and failure to do so constitutes waiver. URCCC 4.04; Miss. R. Civ. P. 37. | "Is the burden on the movant to request a continuance to pursue discovery matters, and failure to do so constitutes waiver?" | 029999.docx | LEGALEASE-00136766-LEGALEASE-00136767 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7607 | Jones v. Gillen, 504 So. 2d 575 | 307A+480 | Admissions may be used to establish uncontradicted facts or controversial issues which constitute the crux of the matter in litigation. Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976); Remondet v. Reserve Nat. Ins. Co., 433 So.2d 792 (La.App. 5 Cir.1983), writ denied, 441 So.2d 216 (La.1983). When the party receiving the request for admissions fails to respond to the request by any means, the fact is deemed admitted. Succession of Rock v. Allstate Life Ins. Co., supra; Remondet v. Reserve Nat. Ins. Co., supra. However, in Succession of Rock, the Louisiana Supreme Court pointed out that the codal articles do not require a party to utilize a particular form to respond to the request. In Voisin v. Luke, 249 La. 796, 191 So.2d 503 (1966), the Court considered verified exceptions filed prior to the answer appropriate answers to the request. When the answers have been filed late, however, the courts in O'Regan, III v. Labat, 379 So.2d 78 (La.App. 4 Cir.1980), and D.H. Holmes Co., Ltd. v. Dronet, 432 So.2d 1135 (La.App. 3 Cir.1983), stated the penalty attaching to the failure to file within the prescribed period should not result in a per se or automatic admission of fact. In those decisions, the courts erroneously relied upon a statement made by Voisin to the effect that the device should not be applied to a controverted legal issue going to the heart of the case. That statement was rejected as a rule of law by the Louisiana Supreme Court in Succession of Rock decided ten years later. | Admissions may be used to establish uncontradicted facts or controversial issues which constitute crux of matter in litigation, and when party receiving request for admissions fails to respond to it by any means, fact is deemed admitted. | Can admissions be used to establish uncontradicted facts or controversial issues which constitute the crux of the matter in litigation? | 030218.docx | LEGALEASE-00136264-LEGALEASE-00136265 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7608 | Bray v. Miller, 397 S.W.2d 103 | 307A+723.1 | It is well settled by the decisions of the courts of Texas that a trial judge does not abuse his discretion in overruling a motion for continuance based on the absence of a witness when the allegations of the motion are nothing more than mere conclusions of the pleader and do not allege the specific facts to which the absent witness would testify. The statements contained in Paragraph II of the motion, copied above, to the effect that "Mrs. Clayton L. Bray was a witness to the alleged misrepresentations on the part of Defendants, and it is necessary for her to testify thereto", and that "her testimony is essential to Plaintiff for the reason that she is a grantee of a deed, together with Plaintiff, which deed, together with certain representations concerning the property which is the subject matter of said deed, is the basis of the suit herein" are nothing more than broad conclusions and not statements of specific facts as to what the absent witness would testify to if present. | Trial judge does not abuse his discretion in overruling motion for continuance based on absence of witness when allegations of motion are nothing more than mere conclusions of pleader and do not allege specific facts to which absent witness could testify. Rules of Civil Procedure, rules 251, 252. | "Is an application for a continuance, which failed to show any reason for not taking the deposition of an absent witness, properly overruled?" | 030290.docx | LEGALEASE-00136806-LEGALEASE-00136807 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7609 | Bator v. Hungarian Commercial Bank of Pest, 194 Misc. 232 | 307A+69.1 | Upon an application of this nature, the Court has discretionery power to determine whether the testimony of witnesses outside the state shall be taken under open commission on oral examination, rather than upon written interrogatories. The reasons underlying this rule are tersely and admirably stated in Deery v. Byrne, 1st Dept., 120 App.Div. 6, 104 N.Y.S. 836, 838, as follows: "When it becomes necessary to take the testimony of a witness without the state, it is apparent that the class of commission to be issued must rest in judicial discretion, to be exercised according to the particular facts presented. There is less likelihood that a witness will testify falsely if examined orally than if examined on written interrogatories; and, if he should, it is more likely that a cross-examination orally will be effective than if it be confined to written interrogatories."An even fuller discussion of the rule is to be found in the case of Frounfelker v. Delaware L. & W. R. Co., 81 App.Div. 67, 80 N.Y.S. 701, also in the 1st Dept. | Upon an application to take testimony of witnesses outside the state, court has discretion to determine whether testimony should be taken under open commission or oral examination rather than upon written interrogatories. Civil Practice Act, SS 288, 292, 301, 302. | Does a trial court have the discretion to direct whether the interrogatories should be written or oral? | Pretrial Procedure - Memo # 4359 - C - AC.docx | LEGALEASE-00026733-LEGALEASE-00026735 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7610 | Glisson v. Carlin, 204 A.2d 285 | 307A+69.1 | By the very nature of that portion of the order permitting the taking of the oral deposition on payment of costs to the plaintiff, we conclude that it is not before us now and, in fact, may be ignored with impunity by the parties because it is utterly void. Pa.R.C.P. 4003(a)(2) provides that a deposition by written interrogatories for use at trial may be taken of a witness more than one hundred miles from the courthouse as a matter of right, the only requirement being due notice to the opposing party of parties.The right to take the deposition of such witnesses by written interrogatories may be abrogated only when the court exercises its discretion to order the taking of the deposition by oral examination under the provisions of Pa.R.C.P. 4003(a)(2), which provides generally for oral examination; Pa.R.C.P. 4004(e), which provides that the court may order that the deposition not be taken by oral examination; and Pa.R.C.P. 4008, which provides for the imposition of reasonable costs if such depositions are to be taken by oral examination. However, the court may not act under these rules unless a proper motion is made by a party; for each 338 of the three rules cited above contain the words "upon motion." No motion has been made by any party in this case to take the deposition of Stephans by oral examination. Obviously the defendants do not wish that such a motion be made and the plaintiff also does not wish to make such a motion because he does not want the costs imposed on him. See Goodrich-Amram Civil Practice, " 4004(e)-1. Plaintiff's motion amounts to little more than a suggestion to the court, whose order rises no higher than another suggestion, without legal effect, that the deposition be taken by oral examination, although the order striking the interrogatories is mandatory | Right to take deposition of witness more than 100 miles from courthouse by written interrogatories may be abrogated only when court exercises its discretion to order taking of deposition by oral examination. Pa.R.C.P. Nos. 4003(a) (2), 4004(e), 4008, 12 P.S.Appendix. | Does a trial court have the discretion to direct whether the interrogatories should be written or oral? | 030798.docx | LEGALEASE-00136659-LEGALEASE-00136661 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7611 | Wimberly v. Derby Cycle Corp., 56 Cal. App. 4th 618 | 307A+477.1 | "Where certain facts exist which the responding party does not intend to contest at trial, the proper time to admit and permit those facts to be established is during pretrial discovery. [Citation.] In the event, however, that the defendant denies a request for admission submitted by the plaintiff, he cannot be forced to admit the fact prior to trial despite its obvious truth. [Citation.]" (Smith v. Circle P Ranch Co. (1978) 87 Cal.App.3d 267, 273, 150 Cal.Rptr. 828.) Section 2033, subdivision (o) thus provides in part:"If a party fails to admit the ... truth of any matter when requested to do so under this section, and if the party requesting that admission thereafter proves the ... truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make this order unless it finds that (1) an objection to the request was sustained or a response to it was waived ... (2) the admission sought was of no substantial importance, (3) the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter, or (4) there was other good reason for the failure to admit." | If defendant denies a request for admission submitted by plaintiff, he cannot be forced to admit the fact prior to trial despite its obvious truth. | "Can a defendant be forced to admit the fact prior to trial, despite its obvious truth?" | 030815.docx | LEGALEASE-00136848-LEGALEASE-00136849 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 7612 | Kerner v. Superior Court, 206 Cal. App. 4th 84 | 307A+36.1 | The purpose of this requirement is to protect defendants' financial privacy and prevent defendants from being pressured into settling nonmeritorious cases in order to avoid disclosure of their financial information. (Jabro v. Superior Court (2002) 95 Cal.App.4th 754, 757, 115 Cal.Rptr.2d 843 (Jabro ).) | The purpose of the requirement for a court order for discovery of a defendant's net worth to support a claim for punitive damages is to protect defendants' financial privacy and prevent defendants from being pressured into settling nonmeritorious cases in order avoid disclosure of their financial information. West's Ann.Cal.Civ.Code S 3294(c). | What is the purpose of the requirement for a court order for discovery of a defendant's net worth? | 031183.docx | LEGALEASE-00137020-LEGALEASE-00137021 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 7613 | Arthur v. Sexton Dental Clinic, 368 S.C. 326 | 307A+747.1 | Initially, we reject Appellants' contention that Judge Brogdon was required to hold a hearing on the issuance of the scheduling order. Our review of the above-cited rules of civil procedure reveals that the decision of whether to conduct a hearing is a matter left to the discretion of the trial judge. This interpretation of the rules is supported by analysis of Rule 16 of the Federal Rules of Civil Procedure, a rule that is similar to our state court rule. Rule 16, SCRCP editor's note ("This Rule 16 is similar to the Federal Rule" with limited exceptions.). Specifically, secondary authority has stated that a scheduling conference is not mandatory and the issuance of a scheduling order does not require formal communication. See 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 1522.1 (2d ed. Supp. 2005) (analyzing Rule 16, FRCP, and stating, "A scheduling conference may be requested by the judge or the parties, but it is not mandatory. Indeed, Rule 16(b) specifically provides that if the request for a conference is not made within 120 days after the action is filed, the scheduling order will be issued without a conference, although after some communication with the parties. That communication may be very informal. As explained in the Advisory Committee Note, the scheduling order may be issued after consultation with the parties by telephone or mail, rather than in person."). | Decision whether to conduct a hearing on the issuance of the scheduling order is a matter left to the discretion of the trial judge. | Is the decision whether to conduct a hearing on the issuance of the scheduling order a matter left to the discretion of the judge? | Pretrial Procedure - Memo # 4749 - C - NS.docx | ROSS-003305222-ROSS-003305223 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7614 | Vellanti v. United States, 119 Fed. Cl. 570 | 34+13(1) | Under the Military Pay Act, 37 U.S.C. " 204, "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service." The Act "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." Holley v. United States, 124 F.3d 1462, 1465 (Fed.Cir.1997) (quoting Sanders v. United States, 594 F.2d 804, 810 (Ct.Cl.1979) (en banc)). Accordingly, the Military Pay Act "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." Antonellis v. United States, 723 F.3d 1328, 1331 (Fed.Cir.2013) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed.Cir.2004)). | The Military Pay Act confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service. 37 U.S.C.A. S 204. | Does the Military Pay Act confer on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service? | 008570.docx | LEGALEASE-00137856-LEGALEASE-00137857 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7615 | Otten v. Works, 516 S.W.2d 291 | 8.30E+74 | A check on the face of which appears the word "loan" is an instrument containing the contract of the payee to repay the money borrowed. The payee by endorsing the check assumes the obligation of the loan and the check becomes written evidence of the contract to repay. Thus the Article 5527 V. A.T.S. (the Four-Year Statute of Limitations) is applicable; not Article 5526 V.A.T.S. (the Two-Year Statute of Limitations). Hester & Wise v. Chinn, Tex.Civ.App. (Galveston) NWH, 162 S.W.2d 450; Naylor v. Gutteridge, Tex.Civ.App., (Austin) NRE, 430 S.W.2d 726; Leaverton v. Sunset Motor Lines, Tex.Civ.App., (Amarillo) NWH, 322 S.W.2d 295; Amarillo Nat. Bank v. Liston, Tex.Civ.App., (Amarillo) NRE, 464 S.W.2d 395; International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729. | Check on the face of which appears the word "loan" is an instrument containing the contract of the payee to repay the money borrowed. | "Does a check, on the face of which the word loan appears, constitute an instrument containing a contract to repay the money borrowed?" | Bills and Notes Memo 320- GP.docx | ROSS-003303815-ROSS-003303816 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7616 | People v. Charles, 61 N.Y.2d 321 | 63+1(1) | Defendant's first point on this appeal, and the point on which the Justices at the Appellate Division disagreed, is that the statute prohibits solicitation or receipt of money to influence his judgment or action and that because he did not have the authority in his job to affect the disposition of Villafana's tickets, he could not have been guilty of bribe receiving in the second degree. The statute defines the crime as follows: "A public servant is guilty of bribe receiving in the second degree when he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." (Penal Law, " 200.10.) The proof necessary to establish the crime must show, at a minimum, that a public servant solicited or agreed to accept a benefit from another person upon an agreement or understanding that his action as a public servant would thereby be influenced. The statute requires no act beyond the agreement or understanding, however, and defendant's inability to influence the disposition of traffic tickets did not necessarily remove his conduct from that proscribed by it (see People v. Chapman, 13 N.Y.2d 97, 242 N.Y.S.2d 200, 192 N.E.2d 160). If the briber sought to affect his judgment or action in his capacity as a public servant and within the "colorable" authority of the public position he held at the time of the bribe offer, the crime was committed. The decisions hold that "colorable" authority exists when a bribe is offered to a public official "to act corruptly in a matter to which he bears some official relation, though the act itself may be technically beyond his official powers or duties" (People v. Lafaro, 250 N.Y. 336, 342, 165 N.E. 518; see People v. Herskowitz, 41 N.Y.2d 1094, 396 N.Y.S.2d 356, 364 N.E.2d 1127).Manifestly, as a clerk in the courts, defendant came within this rule and his conduct constituted a crime although he did not | "Colorable" authority exists when bribe is offered to public official to act corruptly in matter to which he bears some official relation, though act itself may be technically beyond his official powers or duties. McKinney's Penal Law S 200.10. | "When does ""colorable authority"" exist for purposes of bribery of a public official?" | 011848.docx | LEGALEASE-00137567-LEGALEASE-00137568 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7617 | State v. Pigques, 310 S.W.2d 942 | 67+9(2) | Entry is an essential element of the crime of burglary as understood at common law and as defined by our statute, Section 560.070, supra. Literally, "entry" is the act of going into the place after a breach has been effected, but the word has a broader significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. 9 Am.Jur., Burglary, " 16, p. 249. An entry of a building, that is, an entry (with intent to steal) of the space within the building, is necessary to a completed crime of burglary; but any entry, however slight (by and part of the body), procured by breaking, with intent to steal (or to commit another crime therein, as the charge may be) is sufficient. Vol. 2, Anderson, Wharton's Criminal Law and Procedure (1957), " 421, pp. 42"43. (But we bear in mind that the consummation of the intent to steal is not necessary to complete the crime of burglary. State v. Shipman, 354 Mo. 265, 189 S.W.2d 273; State v. Farris, Mo.Sup., 243 S.W.2d 983. | Entry of space within building with intent to steal is necessary to completed crime of burglary, but any entry, however slight, by any part of the body, procured by breaking, with intent to steal or to commit another crime therein, is sufficient. Section 560.070 RSMo 1949, V.A.M.S. | Is entry necessary for burglary? | 012702.docx | LEGALEASE-00137438-LEGALEASE-00137440 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7618 | Crawford v. State, 44 Ala. 382 | 67+23 | The statute defining burglary in this State is in these words: "Any person who, either in the night or day time, with intent to steal, or to commit a felony, breaks into and enters a dwelling-house, or any building within the curtilege of the dwelling-house, though not forming a part thereof; or into any shop, store, warehouse, or other building, in which any goods, merchandise, or other valuable thing, is kept for use, sale, or deposit, is guilty of burglary." --Rev. Code, " 3695. | Code, S 3695, provides that one breaking and entering any shop, store, warehouse, or other building, where goods, merchandise or other valuable thing is kept for use, sale, or deposit, with intent to steal, is guilty of burglary. Held, that an indictment charging accused with breaking and entering a shop, but omitting to state that any goods, merchandise, or other valuable thing was there kept for use, sale, or deposit, was insufficient. | Does breaking and entering into a warehouse constitute burglary? | Burglary - Memo 158 - JS.docx | ROSS-003290450-ROSS-003290452 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 7619 | State v. Flannagan, 67 Ind. 140 | 279+19 | The inevitable inference from that provision of the statute is, that a turnpike company has no right to maintain a toll-gate upon a part of its road so remaining out of repair for an unreasonable time, and that if such company shall persist in maintaining a toll-gate upon a part of its road over which its right to collect tolls on such part has ceased, such toll-gate becomes an obstruction upon its road, and liable to be abated as a public nuisance. | The inevitable inference from section 1 of the act of March 5th, 1879, 1 R.S.1876, p. 671, is, that a turnpike company has no right to maintain a toll-gate upon a part of its road which has remained out of repair for an unreasonable time; and that if such company persists in maintaining a toll gate upon any part of its road so remaining out of repair, such toll-gate becomes an obstruction which may be abated as a public nuisance. | Can a toll gate erected on a public highway be abated as nuisance? | 019215.docx | LEGALEASE-00137854-LEGALEASE-00137855 | Condensed, Order, SA, Sub | 0.04 | 1 | 1 | 1 | 1 | 1 |
| 7620 | Holz v. Lyles, 287 Ala. 280 | 200+158 | There is evidence that Magnolia Street is no more than a trial and that its status is obscured by the lapse of time. But one maintaining a continuing public nuisance cannot defend against a suit to abate the nuisance because of lapse of time, and such rule applies to obstruction of public highways, of detriment to the public."Alabama Great Southern R. Co. v. Denton, Supra. | Rule that one maintaining a continuing public nuisance cannot defend against a suit to abate the nuisance because of lapse of time applies to obstruction of public highways. | Can one continuing public nuisance defend against a suit to abate the nuisance because of lapse of time? | Highways -Memo 63 - PR.docx | ROSS-003290493-ROSS-003290494 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7621 | Ross v. Conco Quarry, 543 S.W.2d 568 | 200+77(9) | A preliminary word about the first order of vacation and the first review proceeding in the circuit court seems appropriate. The county court's record shows on its face that the court issued its first order without obtaining a report from the county highway engineer, as required by s 228.070. Therefore, the first order was absolutely void. Morris v. Karr, 342 Mo. 179, 183"184, 114 S.W.2d 962, 964"965(3)(4) (1938); Burrows v. County Court of Carter County, 308 S.W.2d 299, 301(1) (Mo.App.1957); Tummons v. Stokes, 274 s,.w. 528, 529(2) (Mo.App.1925), cert. quashed, State ex rel. Tummons v. Cox, 313 Mo. 672, 680, 282 S.W. 694, 695"696(5) (banc 1926). Whether one considers s 49.230 or s 228.120(2) as prescribing the proper or exclusive method of procedure, the circuit court's jurisdiction was appellate, not original jurisdiction. s 478.070(4); and see State ex rel. Board of Registration for the Healing Arts v. Elliott, 387 S.W.2d 489, 492"493(2, 3) (Mo. banc 1965). In this state, appellate courts acquire no jurisdiction on appeal from a void order except jurisdiction to determine the invalidity of the order or judgment appealed from and dismiss the appeal. Kansas City Sanitary Co. v. Laclede County, 307 Mo. 10, 14"15, 269 S.W. 395, 397(2)(3) (banc 1925); In re Moore's Estate, 354 Mo. 240, 249, 189 S.W.2d 229, 234"235(6) (1945); Morris v. Karr,114 S.W.2d at 965(4). Inasmuch as the county court's first order was void on its face, the circuit court might properly have dismissed the appeal or petition for review of the first order, but it could do no more. The circuit court did not dismiss the petition for review; it expressly and in terms assumed jurisdiction and remanded the case, which was in itself an exercise of appellate judicial authority. See Durwood v. Dubinsky, 361 S.W.2d 779, 783(1) (Mo.1962). We therefore conclude that to the time the county court commenced the hearing which led to the second order of vacation the whole proceeding was a nullity. | Where county court order which purportedly vacated public road was void for failure to comply with statutory requirement of obtaining a report from county highway engineer, county court had never validly exercised its authority up to time second hearing was begun; however, its action in resuming the hearing, after remand from the circuit court for preparation of a record, receiving further evidence, and entering a new order had effect of vacating and abrogating the first, void order; and, furthermore, county court was at liberty to consider petition for vacation as if the first, void order had never been entered. Sections 228.070, 228.110, 228.120, subd. 2 RSMo 1969, V.A.M.S. | Does the failure to obtain report from county highway engineer render an order vacating a road void? | Highways-Memo 78-ANM.docx | ROSS-003329843-ROSS-003329844 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7622 | Merrick v. Britton, 26 Ark. 496 | 307A+723.1 | hat a party came to a trial unprepared to make out his case or establish his defense, has not even the appearance of a valid excuse. It is true, that sometimes no amount of diligence or effort will suffice to arrange all the details and procure everything needful for the trial. But injury need not for that reason be sustained. Courts are extremely indulgent and liberal in granting continuances, and they are seldom or never appealed to in vain in proper cases.It is therefore incumbent upon a party, if for any good cause he finds himself unprepared to go on, to state the circumstances to the court and move a postponement of his case. If he fails to do so, he waives his want of preparation, and all right after to object. | Where a party, for any good cause, is unprepared to go to trial, and fails by motion to postpone or continue, to show the fact to the court, at the proper time, he waives his want of preparation, and all right to afterwards object. | Does a party waives all his right to object if he fails to move a postponement of his case for any good cause he finds himself unprepared to go on? | 030855.docx | LEGALEASE-00137240-LEGALEASE-00137241 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 7623 | Fredricksen v. Bethlehem Steel Co, 17 F.R.D. 307 | 307A+91 | In his letter memorandum of March 11, 1955, plaintiff's counsel seems to make the point that since defendant defaulted in complying with the interrogatories, or in objecting to them, it waived its rights. While this may be technically correct, the general rule in the State courts appears to be that the party seeking discovery, or examinations, must show the propriety thereof. Even the case of Cary v. Hardy, D.C., 1 F.R.D. 355, cited by plaintiff required the party propounding the interrogatories to show the propriety of the unanswered questions if at least some were answered, viz.: "there would be no question if a portion of the interrogatories were answered, some objected to and answers withheld, if done within the ten days'. The defendant herein followed such procedure, excepting that it did not act within the ten-day period. | General rule in state courts is that party seeking discovery or examinations must show propriety thereof. | Is the rule in state courts that the party seeking discovery or examinations must show propriety thereof? | Pretrial Procedure - Memo # 4469 - C - SK.docx | ROSS-003331146-ROSS-003331147 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7624 | George v. Wiseman, 98 F.2d 923 | 307A+720 | Error is assigned upon the action of the court in allowing plaintiff to file her supplemental petition during the trial in which she sought recovery for the two sums of currency aggregating $19,200; and in denying defendant a continuance after the pleading had been filed. Defendant testified that there was a package in the deposit box which contained $15,000 in currency; that he placed it in the sack with the securities and took it to the residence and thence upstairs; that plaintiff directed him to take everything out of the sack except the securities and to bring them downstairs to her; that he did so, leaving the currency upstairs; that she later inquired how much it was; that he told her, and she expressly made a gift of it to him; that on a different occasion she told him there was some money in a corset upstairs and made a gift of it to him; that he found the money sewed in the corset, took it out, and learned that it amounted to $4,250. She testified that she never gave the money to him and did not know that he had taken it until he so testified; and her counsel stated to the court that they first learned of its existence and that defendant had taken it when he testified about it. The supplemental pleading merely increased the amount for which recovery was sought. As already indicated, defendant had testified fully in respect to the circumstances in which he acquired possession of the money; and there is no indication that the contents of the pleading took him by surprise, or that he was unprepared to meet it, or that he could produce additional evidence if granted a continuance. The matter of permitting an amendment during the trial, and of allowing or denying a continuance as the result rests in the sound discretion of the trial court; and its action will not be disturbed on appeal unless there was an abuse of discretion. No abuse of discretion occurred in this instance. The court was within the appropriate exercise of its discretion. The contention is without merit. | The matter of permitting an amendment during the trial, and of thereafter allowing or denying a continuance, rests in the District Court's sound discretion, the exercise of which will not be disturbed on appeal except for an abuse thereof. | Does the matter of permitting an amendment during the trial rest in the District Court's sound discretion? | Pretrial Procedure - Memo # 4649 - C - VA.docx | ROSS-003291096-ROSS-003291098 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7625 | Chapmond v. Fryar, 559 S.W.2d 931 | 307A+720 | The appellant moved for continuance when the trial court permitted the amended answer to stand. This motion was denied. Both parties announced ready for trial except for the procedural disagreement. A trial court may grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial. Ark.Stat.Ann. 27-1402 (Repl. 1962). The court, after listening to arguments of counsel, decided the appellant's attorney knew his case and could proceed without prejudice. Again, we cannot say the trial court clearly abused its discretion. | A trial court may grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial. | Can a trial court grant a continuance after pleadings are amended if satisfied the adverse party could not be ready for trial? | 031311.docx | LEGALEASE-00137452-LEGALEASE-00137453 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7626 | Kenney v. Providence Gas Co., 118 R.I. 134 | 307A+720 | Having found no express or implied consent to the trial on the failure-to-warn theory, we are still confronted with the last portion of Rule 15(b) which provides that when an objection is made to the introduction of evidence on the ground that it is outside the pleadings, " the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." In the event the objecting party needs time to meet such new evidence, the trial justice may grant a continuance. In discussing the federal counterpart to our rule, Wright and Miller have observed that to justify the exclusion of the evidence, the objecting party must be seriously disadvantaged. Mere allegations of surprise, not substantiated by the facts, will not suffice. Absent a showing of extreme prejudice, a trial justice should permit the proposed amendment and allow the evidence. To do otherwise may constitute an abuse of discretion warranting reversal. 6 Wright & Miller, Federal Practice and Procedure; Civil s 1495 at 478-80 (1971 ed.). | In the event the party objecting to amendment of pleadings needs time to meet new evidence, trial judge may grant a continuance. Rules of Civil Procedure, rule 15. | Will a trial justice grant a continuance in the event the objecting party needs time to meet new evidence? | Pretrial Procedure - Memo # 4677 - C - PC.docx | ROSS-003291761-ROSS-003291762 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 7627 | Dixon v. Coffey, 161 Neb. 487 | 302+239(2) | "Likewise, it was held in Westrope v. Anderson, 98 Neb. 57, 151 N.W. 955: "Amendments of pleading should be allowed whenever such amendments appear to be "in furtherance of justice." When such amendments make a continuance necessary, or otherwise increase the costs, such terms should be imposed as are just under the circumstances." | Amendments of pleadings should be allowed whenever amendments appear to be in furtherance of justice, and when such amendments make a continuance necessary, or otherwise increase the costs, such terms should be imposed as are just under the circumstances. R.R.S.1943, S 25-852. | "When the trial judge in the furtherance of justice permit necessary amendments to the pleadings, should it appear necessary in the furtherance of justice to grant a continuance?" | 031348.docx | LEGALEASE-00137357-LEGALEASE-00137358 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 7628 | Foster v. Foster, 149 S.W.3d 575 | 307A+713 | The trial court has the power to grant a continuance "[f]or good cause shown." Rule 65.01. The grant or denial of such a continuance is largely within the trial court's discretion. Seabaugh v. Milde Farms, Inc., 816 S.W.2d 202, 207 (Mo. banc 1991). This is true even in cases where the request for a continuance is based upon a party's illness. In re Marriage of Frankel, 550 S.W.2d 896, 898 (Mo.App.1977). Only if we find that the trial court acted arbitrarily or capriciously will we find that the trial court abused its discretion. Harris v. Desisto, 932 S.W.2d 435, 439 (Mo.App. W.D.1996). When reviewing the trial court's decision for such an abuse of discretion, we give the trial court's decision "every favorable intendment." Id. "The denial of a continuance is rarely reversible error." Id. Reversal is warranted only in extreme cases where the party requesting the continuance is clearly free of any dereliction. Id. | The grant or denial of continuance for good cause shown is largely within the trial court's discretion; this is true even in cases where the request for a continuance is based upon a party's illness. V.A.M.R. 65.01. | Will the plaintiff be granted subsequent continuance based on illness? | 031396.docx | LEGALEASE-00137233-LEGALEASE-00137234 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 7629 | In re Carter's Will, 193 A.D. 355 | 307A+91 | It is clear, from a reading of the opinion of the learned surrogate in disposing of this motion, that he would have granted the contestant a measure of the relief asked, if he had not felt that he was controlled by the decision of the court in People ex rel. Lewis v. Fowler, 189 App. Div. 335, 178 N. Y. Supp. 500. While the order involved in that case has since been affirmed in the Court of Appeals (229 N. Y. 84, 127 N. E. 793), the discussion of the court practically overrules the decision made as to the question of power, and holds that under the provisions of section 2770 of the Code of Civil Procedure the surrogate is authorized to grant the same rights which are provided in the sections of the Code invoked by the appellant. The modern rule is quite liberal in granting the right to examine a party before trial. It is now the established doctrine that""Where the moving papers comply with the statute the party is entitled to the order as a matter of law." Whitley v. Speed, 171 App. Div. 102, 104, 156 N. Y. Supp. 973, 975, and authorities there cited. | It is the established rule that a party is entitled as a matter of law to an order of examination of adverse party before trial, where the moving papers comply with the statute. | Is it the established rule that a party is entitled as a matter of law to an order of examination of adverse party before trial? | 031429.docx | LEGALEASE-00137345-LEGALEASE-00137346 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7630 | Parsons v. Moss, 171 Misc. 828 | 307A+91 | These considerations, persuasive as they seem, are not controlling. The term "necessary" as used in the statute does not mean indispensable. Civil Practice Act, " 288. "In passing it should be noted that the word "necessary," does not mean "absolutely necessary" or "indispensable," but is used in the sense of "needful," a signification attributable to the word well recognized in the law.' Terry v. Ross Heater & Mfg. Co., 180 App.Div. 714, 717, 167 N.Y.S. 747, 750; Reiss v. Ballard Realty & Mortg. Corporation, 150 Misc. 34, 36, 269 N.Y.S. 631. The examination is not to be refused solely because the plaintiff or others have knowledge of the occurrence. "The fact that the moving party may be able to establish by other proof the matters sought to be elicited by the examination does not require the denial of the application." Bailowitz v. Independent Congregation Wisdom of Man of Plinsk, 153 Misc. 306, 274 N.Y.S. 639, 640; concerning knowledge of the party seeking the examination, Wood v. American Locomotive Co., 250 App.Div. 816, 294 N.Y.S. 200; Matza v. Monks, 245 App.Div. 732, 280 N.Y.S. 147; concerning knowledge of others, Green v. Selznick, 220 App.Div. 12, 221 N.Y.S. 63; Payne v. Chatham & Phenix National Bank & Trust Co., 132 Misc. 531, 532, 229 N.Y.S. 563. | The term "necessary" as used in statute regarding examination of adverse party before trial does not mean "indispensable" or "absolutely necessary" but is used in the sense of "needful." Civil Practice Act, S 288. | Does the term necessary as used in statute regarding an examination of an adverse party before trial not mean indispensable? | Pretrial Procedure - Memo # 4754 - C - SN.docx | ROSS-003291200-ROSS-003291201 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7631 | In re NHC--Nashville Fire Litig., 293 S.W.3d 547 | 307A+91 | The definition of public or judicial records described in Ballard must be contrasted with unfiled discovery. Unlike filed discovery, pretrial depositions, interrogatories, and other discovery materials not filed with the court "are not public components of a civil trial." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); see also Ballard, 924 S.W.2d at 661"62. The Rhinehart Court explained: [P]retrial depositions and interrogatories ... were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information. | Unlike filed discovery, pretrial depositions, interrogatories, and other discovery materials not filed with the court are not public components of a civil trial. | "Are pretrial depositions, interrogatories, and other discovery materials not filed with the court not public components of a civil trial?" | 031500.docx | LEGALEASE-00137176-LEGALEASE-00137177 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7632 | Woodward v. Heritage Const. Co., 887 N.E.2d 994 | 307A+747.1 | "[T]he purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and .., once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice." Hamlin v. Sourwine, 666 N.E.2d 404, 409 (Ind.Ct.App.1996) (citing T.R. 16(J)). In considering whether to permit a modification of the pretrial order, the trial court considers both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. Daub v. Daub, 629 N.E.2d 873, 875 (Ind.Ct.App.1994), trans. denied. The court may also consider the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or willfulness in failing to comply with the court's existing order. Id. The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been submitted in a list of witnesses and exhibits is committed to the discretion of the trial court. Id. "Although we recognize the binding effect of a pretrial order, this does not mean that it must be rigidly and pointlessly adhered to at trial." Rust"Oleum Corp. v. Fitz, 801 N.E.2d 754, 758 (Ind.Ct.App.2004) (citing Whisman v. Fawcett, 470 N.E.2d 73, 76 (Ind.1984)), trans. denied. | The purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and, once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice. Trial Procedure Rule 16(J). | What is the purpose of a pre-trial order? | 031939.docx | LEGALEASE-00138020-LEGALEASE-00138021 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7633 | People v. Baker, 20 N.Y.3d 354 | 129+106 | Under Penal Law " 240.20(3), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture." The offense has existed in one form or another for more than a century and has spawned a significant body of case law. As is clear from the precedent, critical to a charge of disorderly conduct is a finding that defendant's disruptive statements and behavior were of a public rather than an individual dimension. This requirement stems from the mens rea component, which requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk). Thus, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem" (People v. Weaver, 16 N.Y.3d 123, 128, 919 N.Y.S.2d 99, 944 N.E.2d 634 [2011] [internal quotation marks and citation omitted] ). | A person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem. McKinney's Penal Law S 240.20(3). | Does the law hold a person guilty of disorderly conduct when his acts affect public? | 014407.docx | LEGALEASE-00138344-LEGALEASE-00138345 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7634 | State v. Quandt, 234 Neb. 402 | 48A+15 | The record implies that Quandt was engaged in public construction and, in the absence of a statutory definition, that by virtue of its use in such activity the scraper was "cost-saving equipment." The controlling question thus becomes: When may qualified overwidth and overweight equipment be moved over "dustless-surfaced state highways" without a permit? The answer provided by " 39"6,181(1) is: when the movement is temporary and necessary for "access to points on such highways." The obvious objective of the exemption is to permit the movement of qualified equipment from one situs to another by the most expeditious route. In that context, "access to points on [dustless-surfaced] highways" means that if there is no other route available, one may move the qualified equipment over a dustless-surfaced highway. The remaining relevant language of the exemption limits the movement to that which is temporary and necessary for a reasonable distance. In the absence of any statutory definition and barring any constitutional infirmity, what is temporary and what constitutes a reasonable distance must be determined from the facts at issue. Here, Quandt demonstrated that no alternative route was available. Therefore, it cannot be said that the evidence proves beyond a reasonable doubt that Quandt violated either " 39"6,177 or " 39"6,180. | Qualified overwidth and overweight equipment may be moved over "dustless-surfaced state highways" without permit when movement is temporary and necessary for "access to points on such highways"; in such context, "access to points on" dustless-surfaced highways means that, if there is no other route available, one may move qualified equipment over dustless-surfaced highway for reasonable distance. Neb.Rev.St. SS 39-6,177, 39-6,177(2)(f), 39-6,180, 39-6,181(1). | When can overweight equipment or machinery moved on a highway without penalty or permit? | Highways-Memo 120-ANM.docx | ROSS-003304095-ROSS-003304096 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 7635 | Bell v. Nat'l Life & Acc. Ins. Co., 41 Ala. App. 94 | 302+9 | This contention is without merit. "It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support the conclusion. Birmingham Ry., Light & Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 81, Ann.Cas.1916A, 543. It is only "mere conclusions' or "bald conclusions," without supporting facts which are objectionable in pleading.' Roberts v. State ex rel. Cooper, 253 Ala. 565, 46 So.2d 5, 7; See also White v. State, 253 Ala. 645, 46 So.2d 413; Preston v. LaSalle Apartments, 241 Ala. 540, 3 So.2d 411; Poole v. William Penn Fire Ins. Co., 264 Ala. 62, 84 So.2d 333; Sauls v. Leath, 213 Ala. 664, 106 So. 133. The pleas were not subject to the ground of demurrer insisted upon in brief. | It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support such conclusion, and it is only "mere conclusions" or "bald conclusions" without supporting facts which are objectionable in pleading. | "Are only mere conclusions or bald conclusions without supporting facts, objectionable in pleading?" | 023403.docx | LEGALEASE-00138638-LEGALEASE-00138639 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 7636 | Colonial Tr. Co. v. Alexander, 251 A.D. 856 | 307A+91 | The right to the examination is largely in the discretion of the court (Public National Bank v. National City Bank, 261 N.Y. 316, 185 N.W. 395); nor is that right dependent as a matter of law upon the purpose or necessity of using the adverse party's testimony to establish the applicant's cause or defense (Id.). The existence of a fiduciary relationship between the adverse party and the applicant justifies an exception to the general rule that such an examination may be had only to enable the applicant to prove his cause or defense. Oshinsky v. Gumberg, 188 App.Div. 23, 176 N.Y.S. 406. The respondents, who are infant beneficiaries of the trust, are entitled to have the rules relaxed rather than restricted. The technical rules relating to examinations before trial are not adhered to in cases involving a fiduciary relationship. Whitman v. Keiley, 58 App.Div. 92, 95, 68 N.Y.S. 551. | Technical rules relating to examinations before trial are not adhered to in cases involving fiduciary relationship, such as where applicants are infant beneficiaries of trust. Civil Practice Act, S 288. | Are technical rules relating to examinations before trial not adhered to in cases involving a fiduciary relationship? | 031086.docx | LEGALEASE-00138335-LEGALEASE-00138337 | Order, SA | 0.77 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7637 | In re Bump's Estate, 171 Kan. 442 | 307A+725 | In our opinion the first part of the contention may not be sustained. There is no dispute that the petition of Welshans and Bauman was set for hearing on January 26, 1949, and that notice of such hearing was given; that on the day the hearing was set, it was orally continued to March 2, 1949, and when that day arrived the hearing was continued indefinitely. In the early case of Gray v. Ulrich, 8 Kan. 112, it was held: "It is improper, after a case has been continued, to set aside the continuance and dispose of the case in the absence of one party and on the application and in favor of the other." (Syl. 2.) There is no doubt that under the law ordinarily a continuance is not a matter of right, but may be on such conditions as the court may impose, a phase not presently before us. If a continuance is to a day certain, that day controls. But in the absence of an express stipulation a general order of continuance is treated as postponing the cause to the next term of the court. See 12 Am.Jur. 479; 17 C.J.S., Continuances, " 102, page 268. It is true that under our probate code terms are abolished. G.S.1949, 59"211. Giving that consideration, a continuance generally and not to a fixed day, could only mean that the matter to be heard could not be heard in the absence of a mutual agreement of all parties to be present, or of some notice served by one side on the other and of compulsive nature. Our probate code contains many provisions for the giving of notice to adverse parties and it is inherent therein that unless notice is expressly not to be had, that it must be had unless waived. The general rule that a party to an action, upon whom service of process has been had, must take notice of subsequent proceedings, is not applicable to such a situation as is presently under consideration. Where, as here, an indefinite continuance was had, one party, without notice to or consent from the other, could not go into court in the absence of the other and obtain, in effect, a resetting of the | If a continuance is to a day certain, that day controls, but, in absence of express stipulation, a general order of continuance is treated as postponing cause to next term of court. | "Is an order of continuance treated as postponing cause to next term of court, in absence of express stipulation?" | Pretrial Procedure - Memo # 4853 - C - NS.docx | ROSS-003290816-ROSS-003290817 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 7638 | Garrett v. Kerney, 107 Md. 501 | 307A+74 | Code Pub.Gen.Laws, art. 35, " 17, relating to depositions taken ex parte, provides that they shall be admitted "as if the same had been taken under a commission as prescribed in the preceding section," and "be treated in all respects as if taken under a commission regularly issued," etc. The preceding section requires that "interrogatories be proposed or exhibited." Held, that interrogatories should be returned and filed with ex parte depositions. Although we do not deem it necessary to pass on the questions raised as to the testimony taken in Ireland, we do not want to be understood as approving of the form used for such depositions, under section 17 of article 35 of the Code of Public General Laws, when taken ex parte. No interrogatories were returned or filed with the notary so far as his return shows, and the court has no means of knowing whether leading questions were asked, or how the examination was conducted. It is certainly a very dangerous practice when there is no appearance for one side, and does not seem to be contemplated by the statute, which provides that such depositions shall be admissible as evidence "as if the same had been taken under a commission as prescribed in the preceding section," and to "be treated in all respects as if taken under a commission regularly issued by said court and shall be subject to the like exceptions as testimony taken under commission." | Code Pub.Gen.Laws, art. 35, S 17, relating to depositions taken ex parte, provides that they shall be admitted "as if the same had been taken under a commission as prescribed in the preceding section," and "be treated in all respects as if taken under a commission regularly issued," etc. The preceding section requires that "interrogatories be proposed or exhibited." Held, that interrogatories should be returned and filed with ex parte depositions. | "Shall depositions taken ex parte be admitted ""as if the same had been taken under a commission as prescribed in the preceding section""?" | Pretrial Procedure - Memo # 4864 - C - TM.docx | ROSS-003290818-ROSS-003290819 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7639 | Wiler v. Firestone Tire & Rubber Co., 95 Cal. App. 3d 621 | 307A+726 | The trial court could reasonably conclude that after a lengthy continuance, a further continuance was an unnecessary delay. | Trial court could reasonably conclude that, after a lengthy continuance to obtain evidence, further continuance was an unnecessary delay, despite the plaintiffs' contention that some evidence favorable to them might be developed in the course of federal administrative proceedings. | Will the court reasonably conclude that after a lengthy continuance to obtain evidence further continuance was an unnecessary delay despite the plaintiffs' contention that some evidence might be favorable? | 031694.docx | LEGALEASE-00138418-LEGALEASE-00138419 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 7640 | Palmisano v. Toth, 624 A.2d 314 | 307A+36.1 | If the motion to strike is denied, then the plaintiff may proceed to seek discovery relating to the wealth or ability of the defendant to respond to a punitive-damage award insofar as such evidence may be relevant to a determination of the amount adequate to deter the defendant from similar activities in the future. If the motion to strike is granted, then no discovery will be permitted on the issue of the defendant's ability to respond to punitive damages. | If motion to strike claim for punitive damages is granted, then no discovery will be permitted on issue of defendant's ability to respond to punitive damages. | "If a motion to strike a claim for punitive damages is granted, will discovery be permitted on issue of a defendant's ability to respond to punitive damages?" | 032067.docx | LEGALEASE-00138474-LEGALEASE-00138476 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 7641 | Canal Oil Co. v. Nat'l Oil Co., 19 Cal. App. 2d 524 | 307A+717.1 | It is true that liberality should be exercised in granting postponements of trials to obtain the presence of material evidence and to prevent miscarriages of justice, but, in the interest of expediting litigation to prevent injustice and to procure orderly procedure, the granting or denial of a continuance will not be disturbed on appeal except for an abuse of discretion on the part of the trial judge. Ross v. Thirlwall, 101 Cal.App. 411, 418, 281 P. 714; 13 C.J. 123, " 4. | Liberality should be exercised in granting postponements of trials to obtain presence of material evidence and to prevent miscarriages of justice. West's Ann.Code Civ.Proc. S 595, as amended by St.1933, p. 1873. | Should liberality be exercised in granting postponements or continuances of trial to obtain material evidence and to prevent miscarriage of justice? | Pretrial Procedure - Memo # 2014 - C - DA.docx | ROSS-003302760 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 7642 | Brake v. Murphy, 693 So. 2d 663 | 307A+725 | Under Flea Market USA, Inc. v. Cohen, 490 So.2d 210 (Fla. 3d DCA 1986) there is no abuse of discretion in conditioning an eve of trial continuance on payment of attorney's fees caused by delay. Here, however, the amount to be paid, $1000, was not determined based on any evidence of the costs incurred due to the delay. Also, in Flea Market USA it was the party seeking the delay, not counsel, who was ordered to pay the costs associated with the continuance. Thus we conclude that under the instant circumstances that part of the order granting a continuance which levied a $1000 fine cannot stand. | Trial court does not abuse its discretion in conditioning eve of trial continuance on payment of attorney fees caused by delay. | Will a court be abusing its discretion in conditioning eve of trial continuance on payment of attorney fees caused by delay? | 031550.docx | LEGALEASE-00139195-LEGALEASE-00139196 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7643 | Mihlon v. Superior Court, 169 Cal. App. 3d 703 | 307A+36.1 | Resolution of the question of personal jurisdiction must be accomplished under certain evidentiary rules. First, when jurisdiction is challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that "minimum contacts" exist between defendant and the forum state to justify imposition of personal jurisdiction. (Shearer v. Superior Court (1977) 70 Cal.App.3d 424, 430, 138 Cal.Rptr. 824.) The plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden. (1880 Corp. v. Superior Court (1962) 57 Cal.2d 840, 843, 22 Cal.Rptr. 209, 371 P.2d 985.). Second, an unverified complaint has no evidentiary value in determination of personal jurisdiction (Sheard v. Superior Court (1974) 40 Cal.App.3d 207, 212, 114 Cal.Rptr. 743), but such pleading has limited cognizable significance as "a material fact, in that it defines the cause of action, the nature of which has some bearing upon the decision whether it is fair and reasonable to require the nonresident parties to appear and defend in this state. But the pleader has no burden of proving the truth of the allegations constituting the causes of action in order to justify the exercise of jurisdiction over nonresident parties." (Lundgren v. Superior Court (1980) 111 Cal.App.3d 477, 485, 168 Cal.Rptr. 717.) The plaintiff need only present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." Fourth, where there is conflict between the declarations of the parties, the explicit and implicit resolution thereof by the trial court may not be reevaluated on appellate review. (446 Griffith Co. v. San Diego Col. for Women (1955) 45 Cal.2d 501, 508, 289 P.2d 476.) Finally, we are not permitted to consider evidence that was not before the trial court. (6 Witkin, Cal Procedure (2d ed. 1971) Appeal,218, 219, pp. 4208, 4209.) | Plaintiff has right to conduct discovery with regard to issue of jurisdiction to develop facts necessary to sustain burden of demonstrating that minimum contacts exist between defendant and forum state. | Does a plaintiff have the right to conduct discovery with regard to an issue of jurisdiction to develop facts necessary to sustain a burden of demonstrating that minimum contacts exist? | Pretrial Procedure - Memo # 5008 - C - NE.docx | ROSS-003289422-ROSS-003289423 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 7644 | O'Dell v. Freightliner Corp., 10 Cal. App. 4th 645 | 307A+502 | First, the plaintiff in a lawsuit has an absolute right to dismiss. (Code Civil Proc., " 581, subd. (b)(1).) Neither the clerk nor the trial court has any discretion in the matter. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, " 67, pp. 378"379.) Numerous cases note that voluntary dismissal of a lawsuit terminates the trial court's jurisdiction over the matter. (Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc. (1988) 202 Cal.App.3d 921, 931, 249 Cal.Rptr. 175; Associated Convalescent Enterprises v. Carl Marks & Co., Inc. (1973) 33 Cal.App.3d 116, 120, 108 Cal.Rptr. 782.) (But see, Basinger v. Rogers & Wells (1990) 220 Cal.App.3d 16, 21"22, 269 Cal.Rptr. 332 [which notes the breadth of this statement must be limited so as to except the trial court's retention of jurisdiction to vacate the dismissal upon motion of a party pursuant to Code of Civil Procedure section 473].) | Plaintiff in lawsuit has absolute right to dismiss, and neither clerk nor trial court has any discretion in matter. West's Ann.Cal.C.C.P. S 581, subd. (b)(1). | Do a plaintiff in a lawsuit has an absolute right to dismiss and does the clerk or the trial court has any discretion in the matter? | 032213.docx | LEGALEASE-00139051-LEGALEASE-00139052 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7645 | Paskert v. United States, 20 Cl. Ct. 65 | 34+5(7) | A promotion selection board is required to consider a military officer's service record on a fair and equitable basis. See Sanders, 219 Ct.Cl. at 302, 594 F.2d at 814; King v. United States, 19 Cl.Ct. 703, 705 (Cl.Ct.1990). Secretaries of the military, acting through correction boards such as the ABCMR, may correct an error or remove an injustice to ensure that a serviceman's record accurately portrays his military career. 10 U.S.C. " 1552(a) (1988); Murphy v. United States, 16 Cl.Ct. 385, 392 (1989). A correction board acts in violation of this mandate, and thus arbitrarily and capriciously, if it does not correct an injustice that is clearly and convincingly presented in the record. See Sanders, 219 Ct.Cl. at 301"03, 594 F.2d at 813"14; Sharadowski v. United States, 200 Ct.Cl. 488, 489, 471 F.2d 627, 628 (1973); Duhon v. United States, 198 Ct.Cl. 564, 570, 461 F.2d 1278, 1281 (1972); King, 19 Cl.Ct. at 705. | Secretaries of the military, acting through correction board such as the Army Board for the Correction of Military Records (ABCMR), may correct an error or remove an injustice to ensure that the serviceman's record accurately portrays his military career. 10 U.S.C.A. S 1552(a). | Is the Army Board for Correction of Military Records (ABCMR) required to erase injustice and compensate service members? | Armed Services - Memo 171 - JS.docx | ROSS-003287080-ROSS-003287081 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7646 | Sargisson v. United States, 913 F.2d 918 | 34+11(1) | The Secretary of the Air Force is authorized to release reserve officers from active duty under 10 U.S.C. " 681(a) (1970): "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." The statute does not place any procedural or substantive limitations on the Secretary's discretion. Woodward v. United States, 871 F.2d 1068, 1071 (Fed.Cir.1989). Nevertheless, once the Secretary promulgated regulations and instructions and made them the basis for Sargisson's release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all. See Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) ("Since ... the Secretary gratuitously decided to give a reason, ... he was obligated to conform to the procedural standards he had formulated ... for the dismissal of employees on [those] grounds," citing Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)); see also Voge v. United States, 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ..."); Borgford v. United States, 208 Ct.Cl. 1040, 1041 (1976) ("in establishing the career reserve system, designating particular grounds on which such career reservists may be released from extended active duty ... and specifying one of those grounds ... as the reason for plaintiff's release from active duty, the Air Force limited its otherwise plenary discretion under 10 U.S.C. " 681(a), so that plaintiff is entitled to appropriate judicial review of the specific ground given for her release"). | Secretary of Air Force was required to follow his own regulations in deciding whether to release Air Force reserve officer from active duty, even if Secretary had not been compelled to promulgate regulations and statute under which Secretary proceeded did not itself place any procedural or substantive limitations on Secretary's decision. 10 U.S.C.A. S 681(a). | Is the Secretary of Navy's statutory authority to release a reserve officer from active duty subject to any procedural or substantive limitation? | 008574.docx | LEGALEASE-00139534-LEGALEASE-00139535 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7647 | Evans v. United States, 504 U.S. 255 | 164T+24(1) | We reject petitioner's criticism of the instruction, and conclude that it satisfies the quid pro quo requirement of McCormick v. United States, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), because the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the quid pro quo is not an element of the offense. We also reject petitioner's contention that an affirmative step is an element of the offense of extortion "under color of official right" and need be included in the instruction.As we explained above, our construction of the statute is informed by the common-law tradition from which the term of art was drawn and understood. We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts. | Offense of extortion under color of official right in violation of Hobbs Act is completed at time when public official receives payment in return for his agreement to perform specific official acts, and fulfillment of the quid pro quo is not an element of offense. 18 U.S.C.A. S 1951. | Is the fulfillment of the quid pro quo an element of the offense of bribery? | 011125.docx | LEGALEASE-00139632-LEGALEASE-00139633 | Order, SA, Sub | 0.69 | 1 | 0 | 1 | 1 | 1 |
| 7648 | Marin v. Exxon Mobil Corp., 2009-2368 | 260+92.10 | In our view, the duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code by virtue of our holding in Castex, and it certainly exists under the Civil Code.21 The holding in Castex merely recognized that in absence of unreasonableness or excessiveness, the lessee has the duty to restore the surface minus normal wear and tear. Where the lessee has operated unreasonably or excessively, as in this case, the lessee has additional obligations, e.g., the obligation to correct the damage due to the unreasonable or excessive operations. However, that does not necessarily mean that the lessee has a duty to restore the land to its pre-lease condition, particularly where, unlike dredged canals, subsurface contamination is not overt and cannot be considered "wear and tear." Castex explained that in determining what constitutes necessary "wear and tear" in a particular case, "it is useful to consider the character of the specific rights granted in the lease" to consider whether the lessor consented to the particular activities. 893 So.2d at 800. The damage caused by Exxon's unreasonable operations was the contamination of the soil, and it is clear plaintiffs did not consent to this contamination. Therefore, Exxon's additional restoration duty is the duty to correct the contamination. The lower courts both correctly recognized this point and held that remediation to 29B standards satisfied the Castex requirements. | Lessee does not necessarily have duty to restore land to its pre-lease condition, particularly where, unlike dredged canals, subsurface contamination is not overt and cannot be considered wear and tear. | Does a lessee have a duty to restore the land to its pre-lease condition? | Mines and Minerals - Memo #63 - C - CSS.docx | ROSS-003301929-ROSS-003301930 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 7649 | Marrs v. R.R. Comm'n, 142 Tex. 293 | 260+92.13 | Under the settled law of this State oil and gas form a part and parcel of the land wherein they tarry and belong to the owner of such land or his assigns (31 Tex.Jur. 518; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A. 1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769; Hager v. Stakes, 116 Tex. 453, 294 S.W. 835); and such owner has the right to mine such minerals subject to the conservation laws of this State. Every owner or lessee is entitled to a fair chance to recover the oil or gas in or under his land, or their equivalent in kind, and any denial of such fair chance amounts to confiscation.Gulf Land Co. v. Atlantic Ref. Co., 134 Tex. 59, 131 S.W.2d 73; Railroad Commission of Texas et al. v. Gulf Production Co., 134 Tex. 122, 125, 132 S.W.2d 254. | Every landowner or oil and gas lessee is entitled to fair chance to recover oil or gas in or under his land, or their equivalent in kind, and any denial of such chance amounts to "confiscation". | Is every owner or lessee of land entitled to a fair chance to recover the oil and gas in or uder his land? | 021650.docx | LEGALEASE-00139365-LEGALEASE-00139366 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7650 | Life Care Centers of America v. Charles Town Associates Ltd. Partnership, 79 F.3d 496 | 289+1145 | The modus operandi of limited partnerships is an important reason why the "aggregate" theory of partnerships is not always applicable in this context. Limited partnerships are business organizations in which the limited partners are precluded by law from participating in the operation of the partnership. See generally Revised Uniform Limited Partnership Act (1975). In exchange for their abstention from participating in the management of the business, the law provides limited investors with limited liability for the debts of the partnership. Id. The operations of the business of the limited partnership are left to the general partner, who, unlike the limited partners, is personally liable for the operation of the partnership. Id. A general partner accepts this unlimited form of liability as a trade-off for the limited partners' investment in the partnership's business. Thus, in a typical situation, a general partner acts much like the management of a corporation, while the involvement of the limited partners is comparable to the shareholders of a corporation. In fact, the general partner has the primary responsibility of making the business successful in order to provide a satisfactory return for the partnership, including its limited partners. By contrast, the role of the limited partners is very passive, in that it consists of an investment in the partnership with the expectation of obtaining a profitable return. See Klebanow v. New York Produce Exchange, 344 F.2d 294, 297 (2nd Cir.1965) (Friendly, J.) ("[A] limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and have on demand true and full information of all things affecting the partnership...."). Not surprisingly, an alternative approach to partnerships"one which views them as "entities" with lives that are independent of their partners rather than mere "aggregates" of | "Limited partnerships" are business organizations in which limited partners are precluded by law from participating in operation of partnership; in exchange for their abstention from participating in management of business, law provides limitedinvestors with limited liability for debts of partnership. | Can a limited partner participate in the management of the business and have limited liability for the debts of the partnership at the same time? | 022301.docx | LEGALEASE-00139536-LEGALEASE-00139537 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 7651 | Raven v. Panama Canal Co., 583 F.2d 169 | 92+3072 | Plaintiff also argues that the Equal Protection Clause of the United States Constitution requires extension of all Privacy Act rights to Panamanian employees of the Canal Zone Government. We cannot accept the plaintiff's argument. The United States Supreme Court has recognized that Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the Equal Protection clause. A legitimate distinction exists between citizens and aliens to warrant different treatment. Mathews v. Diaz, 426 U.S. 67, 78-79, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). | Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the equal protection clause. U.S.C.A.Const. Amend. 14. | Is an Act of Congress that treats aliens differently than citizens considered invidious? | "Aliens, Immigration and Citizenship - Memo 13 - RK.docx" | ROSS-003287009-ROSS-003287011 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7652 | Barham v. Grant, 185 Ga. 601 | 200+77(3) | The county authorities cannot lawfully discontinue a public road, either in whole or in part, except in the manner provided by law, after application, and notice of registration in the proper office. Code, " 95-207;Jones v. Williams, 70 Ga. 704(2); Hamilton v. Cooper, 149 Ga. 669, 671, 101 S.E. 909; Shellnut v. Carroll County, 30 Ga.App. 200, 117 S.E. 333; Wellmaker v. Lamar County Advisory Board, 43 Ga.App.816, 160 S.E. 708.The abandonment of a public highway by mere nonuser does not work a forfeiture of the right to its use. Jones v. Williams, Compare Kelsoe v. Oglethorpe, 120 Ga. 951, 48 S.E. 366, 102 Am.St.Rep. 138. | County authorities cannot lawfully discontinue a public road, either in whole or in part, except in manner provided by law, after application and notice of registration in proper office. Code 1933, S 95-207. | Can county authorities lawfully discontinue a public road? | 018659.docx | LEGALEASE-00140586-LEGALEASE-00140587 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7653 | Taylor v. Bd. of Ed. of Cabell Cty., 152 W. Va. 761 | 296+2 | The general rule, supported by the clear weight of authority, is that a pension granted by a public authority is not a contractual obligation but is a gratuitous allowance, in the continuance of which the pensioner has no vested right, and accordingly, the pension is terminable or alterable at the will of the grantor. Densmore v. County Court of Mercer County, 106 W.Va. 317, 145 S.E. 641; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657; Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; United States v. Teller, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352; MacFarland v. Bieber, 32 App.D.C. 513; Raines v. Board of Trustees of Illinois State Teachers' Pension and Retirement Fund, 365 Ill. 610, 7 N.E.2d 489; Dodge v. Board of Education of City of Chicago, 364 Ill. 547, 5 N.E.2d 84, affirmed, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; People ex rel. Donovan v. Retirement Board of Policemen's Annuity and Benefit Fund, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; State ex rel. Parker v. Board of Education of City of Topeka, 155 Kan. 754, 129 P.2d 265; Foley v. City of Springfield, 328 Mass. 59, 102 N.E.2d 89; Brown v. City of Highland Park, 320 Mich. 108, 30 N.W.2d 798; Gibbs v. Minneapolis Fire Department Relief Association, 125 Minn. 174, 145 N.W. 1075, 37 Ann.Cas.1915C, 749; State ex rel Phillip v. Public School Retirement System of City of Saint Louis, 364 Mo. 395, 262 S.W.2d 569; McFeely v. Pension Commission of City of Hoboken, 8 N.J.Super. 575, 73 A.2d 757; Laden v. Daly, 132 N.J.L. 440, 40 A.2d 780, affirmed, 133 N.J.L. 314, 44 A.2d 212; Moran v. Firemen's and Policemen's Pension Fund Commission of Jersey City, 20 N.J.Misc. 479, 28 A.2d 885; Dillon v. Wentz, 227 N.C. 117, 41 S.E.2d 202; City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997; In re Snyder, 93 Wash. 59, 160 P. 12, 3 A.L.R. 1230, affirmed, 248 U.S. 539, 39 S.Ct. 67, 63 L.Ed. 410. | General rule is that pension granted by public authority is not contractual obligation but is gratuitous allowance, in continuance of which pensioner has no vested right, and, accordingly, pension is terminable or alterable at will of grantor. | Is pension granted by public authority or is it a contractual obligation? | Pension - Memo 19 - SB.docx | ROSS-003289018-ROSS-003289019 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7654 | Reynolds v. Reynolds, 14 Cal. App. 2d 481 | 307A+69.1 | In the present case the defendant objected to the plaintiff taking his own deposition by written interrogatories, and sought to cross-examine him upon oral cross-examination. The deposition-interrogatory procedure outlined in " 38"2101 of the 1959 act clearly contemplates that such deposition, if admissible in evidence, would be admissible only "against any party who was present or represented at the taking of the deposition or who had due notice thereof," the purpose of notice being to afford the opposing party the opportunity to be present or be represented by counsel when the testimony is taken before the officer appointed by the court. In " 38"2105 (b) it is provided that after notice is served for the taking of a deposition by oral examination, the court in which the action is pending may order that the deposition not be taken, or that it be taken at some place other than that designated in the notice, or that it may be taken only on written interrogatories, "or that the examination shall be held with no one present except the parties to the action and their officers or counsel." (Italics ours.) It is clear from this provision, in connection with other provisions of the discovery mechanism of the adopted Federal Rules, that when a deposition is taken upon written interrogatories, the opposing party or his counsel have the right to be present. The exclusion of the defendant and her counsel from the taking of the deposition of the plaintiff on written interrogatories would void the procedure, if otherwise valid. This is true under the Federal discovery rules and the ruling in Smith v. Morrison-Knudsen Company, Inc., supra. | When a deposition is taken upon written interrogatories, opposing party or his counsel have right to be present, and exclusion of defendant and her counsel from taking of deposition of plaintiff on written interrogatories voided the procedure, even if it were otherwise valid. Code, S 38-2101. | Do the exclusion of defendant and a counsel from taking of deposition of plaintiff on written interrogatories make void the procedure even if it were otherwise valid? | 029127.docx | LEGALEASE-00139701-LEGALEASE-00139702 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7655 | Bulwinkle v. Cramer, 30 S.C. 153 | 307A+74 | This exception, we think, is too general. It is remedied, however, by the second and third, in which are found the specifications under this general exception, to-wit: That it did not appear that said deposition was reduced to writing by the officer who took the same, or by the said witness in said officer's presence, and by no other person; and, second, that it did not appear that the officer taking the deposition retained it in his own hands until he delivered it into court, or that said deposition, together with a certificate of the reasons for taking it, was by said officer sealed up and directed to said court, and forwarded to said court by mail or express. It is true the act of 1883 requires that the deposition shall be reduced to writing, etc., as mentioned in specification 1; but there is nothing in the act which prescribes the mode of authenticating, or of making it appear to the court that this requirement has been complied with. | Where a deposition is received by mail or express, under the seal of the officer, it is not necessary to show, before it can be read that the requirement that the officer shall retain it in his hands until delivered to court was complied with. | "Where a deposition is received by mail or express, is it not necessary to show, before it can be read that the requirement that the officer shall retain it in his hands until delivered to court?" | 032368.docx | LEGALEASE-00140197-LEGALEASE-00140198 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7656 | Young v. Mackall, 4 Md. 362 | 307A+74 | Where proof is taken under an order of court requiring notice, it must appear upon the face of the return that the place and day designated in the notice have been complied with. Where a commission is silent as to the time and place of its execution, the notice governs in these particulars, and it is just as requisite the return should show a compliance with the terms of the notice as to place and day, as if they had been designated in the commission. To establish the right of a party to the use of a commission, it is incumbent on him to show that its execution has been in compliance with its terms; such is the condition on which it is granted and on which only it can, apart from consent of parties, be made available. Under the act of 1832, ch. 302, a general exception to the admissibility of the evidence or the competency of the witness, brings before the court the whole question of admissibility. | Where a commission is silent as to the time and place of its execution, the notice governs in these particulars, and it is just as requisite the return should show a compliance with the terms of the notice as to place and day, as if they had been designated in the commission. | "Where a commission is silent as to the time and place of its execution, does the notice govern in these particulars?" | Pretrial Procedure - Memo # 5571 - C - SK.docx | ROSS-003287992-ROSS-003287993 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7657 | Finks v. Middleton, 795 S.E.2d 789 | 13+13 | "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." Fuller v. Easley, 145 N.C.App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted). "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the pleadings." Harris v. Matthews, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). | Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a motion to dismiss for lack of jurisdiction. N.C. R. Civ. P. 12(b)(1). | "Is standing, which is properly challenged by motion to dismiss, a necessary prerequisite to a court's proper exercise of subject matter jurisdiction?" | 032874.docx | LEGALEASE-00140013-LEGALEASE-00140014 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 7658 | Messner v. Am. Union Ins. Co., 119 S.W.3d 642 | 366+35 | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, Metmor Fin., Inc. v. Landoll Corp., 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955). Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract." Id. at 503"04[9].This means, inter alia, that contract provisions waiving subrogation rights are valid and enforceable. Disabled Veterans Trust v. Porterfield Const., Inc., 996 S.W.2d 548, 552[2] (Mo.App.1999). | Subrogation based upon the common law, i.e., legal subrogation, is not an option where it would be inconsistent with the terms of the contract; thus, contract provisions waiving subrogation rights are valid and enforceable. | Is subrogation or equitable subrogation applicable where its enforcement would be inconsistent with the terms of a contract? | 043555.docx | LEGALEASE-00139987-LEGALEASE-00139988 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 7659 | Bidart Bros. v. California Apple Comm'n, 73 F.3d 925 | 170B+2036 | The San Juan Cellular test calls for the consideration of three primary factors in determining whether an assessment is a tax: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. These factors address the Congressional policies behind the TIA more appropriately than the Frozen Food Test. Applying these factors to the Apple Commission assessment demonstrates that the assessment is not a tax under the TIA. | Three primary factors for determining whether assessment is "tax" under Tax Injunction Act (TIA) include: entity that imposes assessment; parties upon whom assessment is imposed; and whether assessment is expended for general public purposes, or used for regulation or benefit of parties upon whom assessment is imposed. 28 U.S.C.A. S 1341. | Is San Juan Cellular test used to determine whether an assessment is a tax? | Taxation - Memo # 130 - C - CK.docx | ROSS-003318454-ROSS-003318455 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 7660 | United States v. Michelson, 165 F.2d 732 | 110+29(5.5) | We think that Congress, as is lawfully may, provided that to "offer" a bribe and to "give" a bribe are two distinct crimes even when parts of a single transaction, since the one (to "give") involves an element which the other (to "offer") does not. The test, as stated in Morgan v. Devine, 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153, is whether "separate acts have been committed with the requisite criminal intent." The present case does not meet that test. Kratter, the principal government witness, testified as follows: On July 17, 1946, in New York City, defendant offered him a bribe of $5,000, and he told defendant he would take it. Defendant then said that, when he had the money, he would telephone Kratter. On July 26, defendant, on the telephone, told Kratter that he had the money and wanted to meet Kratter to give it to him. | The test of whether single transaction includes distinct offenses of offering and of giving bribe is whether separate acts have been committed with requisite criminal intent. Cr.Code, S 39, 18 U.S.C.A. S 201. | What is the test to determine whether a single transaction involves the distinct offenses of offering and giving a bribe? | 012069.docx | LEGALEASE-00140782-LEGALEASE-00140783 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7661 | People v. Bac Tran, 80 N.Y.2d 170 | 63+1(1) | We thus resolve the open statutory interpretation question by defining the disjunctive word "understanding" as at least a unilateral perception or belief by a perpetrator that the "public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced" (Penal Law " 200.00). This does not at all, as the dissent misconstrues it, "hinge" on some "mens rea of the bribe-receiver" (dissenting opn., at 181, at 851 of 589 N.Y.S.2d, at 956 of 603 N.E.2d). | "Understanding" which supports bribery conviction, is at least a unilateral perception or belief by a perpetrator that the public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will be influenced. McKinney's Penal Law S 200.00. | "What does the ""understanding,"" which supports a bribery conviction refer to?" | 012160.docx | LEGALEASE-00141983-LEGALEASE-00141984 | Order, SA, Sub | 0.45 | 1 | 0 | 1 | 1 | 1 |
| 7662 | Marler v. Moultrie-Shelby Farm Serv., 11 Ill. App. 3d 204 | 113+3 | A custom or usage to become binding upon the parties must have antiquity as well as uniformity and universality and have continued for a sufficient length of time that the parties must have contracted in relation to it. (F. B. Miller Agency v. Home Insurance Co., 276 Ill.App. 418, 427.) It should generally be established by more than one witness so as to raise a presumption that others knew it or should have known it. (Traff v. Fabro, 337 Ill.App. 83, 84 N.E.2d 874.) The evidence of the plaintiff is wholly insufficient to establish that it was the custom to sleeve the pipe. (Hardman v. Helene Curtis Industries, 48 Ill.App.2d 42, 198 N.E.2d 681: Wilke Metal Products, Inc. v. David Architectural Metals, Inc., 92 Ill.App.2d 265, 236 N.E.2d 303.) Under these circumstances, we find it difficult to find any evidence to support a duty on the defendant to maintain the line or any evidence to establish a custom followed at the *208 time of the installation with reference to sleeving or wrapping a copper pipe when it goes through a foundation from which a duty would arise. It is pure speculation. Thus the trial court correctly directed a verdict on the issue of installation. | To become binding upon parties, custom or usage must have antiquity, uniformity and universality and must have continued for sufficient length of time that parties must have contracted in relation to it. | "In order for a custom or usage to be binding, must it have antiquity, uniformity and universality?" | 014130.docx | LEGALEASE-00141718-LEGALEASE-00141719 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7663 | Gerseta Corp. v. Silk Ass'n of Am., 220 A.D. 293 | 113+3 | 12 As to customs and usages, it has been said that custom is such usage as has acquired the force of law. 17 C. J. 446; Walls v. Bailey, 49 N. Y. 464, 10 Am. Rep. 407. It is that length of usage which has become law. 1 Bouvier, Law Dict. [Rawle's 3d Rev.] 742. The essential elements of a custom or usage are: "It must be ancient, certain, uniform, compulsory, consistent, general, continued, notorious, reasonable, and not in contravention of law or public policy, and acquiesced in." 17 C. J. 449. I also find that "a custom must be compulsory and not left with each one's option to obey it." 17 C. J. 453. Further, "it must be acquiesced in by all the persons acting within the scope of its operations." 17 C. J. 467. In the case of Sipperly v. Stewart, 50 Barb. 62, the court, at page 68, said: "A custom, in order to become a part of a contract, must be so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual, uniform and not varying, general and not personal, and known to the parties." Again, in the case of Rickerson v. Hartford Fire Insurance Co., 149 N. Y. 307, at page 316, 43 N. E. 856, 859, the court said: "Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others." Also, in the case of McDonald v. Acker, Merrall & Condit Co., 192 App. Div. 123, at page 126, 182 N. Y. S. 607, 609, the court said: "A general custom is established only by proof of instances and not by characterization or generalizations made by witnesses." If the petitioner by refusing to arbitrate has not violated any rule, custom or by-law of the association, or has not done anything prejudicial to the best interests of the association, then it is entitled to be reinstated in its membership. | The essential elements of "custom" or "usage" are that it must be ancient, certain, uniform, compulsory, consistent, general, continued, notorious, reasonable, not a contravention of law or public policy, and acquiesced in by persons acting within the scope of its operations. | What are the essential elements of custom and usage? | Customs & Usage - Memo 137 - RK.docx | ROSS-003287392-ROSS-003287393 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 7664 | Rosenberg Bros. & Co. v. U.S. Shipping Bd. Emergency Fleet Corp., 7 F.2d 893 | 113+19(3) | It is elementary that a custom or usage, to be binding, must be definite, uniform, and well known. Furthermore, it must be established by clear and satisfactory evidence, so that it may be justly presumed that the parties had reference to it in making their contract. Bowling v. Harrison, 47 U.S. (6 How.) 248, 12 L.Ed. 425; The Gualala (C.C.A. 9) 178 F. 402, 102 C.C.A. 548.It must, in addition, be shown to be long-established, reasonable, and generally acquiesced in (Sweet v. Leach, 6 Ill.App. 212); requirements which are sustained by all of the authorities (3 Jones on Evidence, " 462). If the proof leaves it uncertain, either as to the fact or as to its effect on the matter with which it is related, it is void. United States Shipping Board Emergency Fleet Corporation v. Levensaler, 290 F. 297, 53 App.D.C. 322. | Custom or usage, to be binding, must be definite, uniform, and well known, and be established by clear and satisfactory evidence, and shown to be long-established, reasonable, and generally acquiesced in. | Must a custom or usage be generally acquiesced to in order to be binding? | 014146.docx | LEGALEASE-00141736-LEGALEASE-00141737 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7665 | Tate-Jones & Co. v. Union Elec. Steel Co., 281 Pa. 448 | 113+3 | Without proof, the appellant asserts such understanding exists, when the word in question has been employed as here, in referring to the purchase of machinery. "Where a word with a special meaning or a trade phrase appears in a contract, it is competent, if justice so requires, to introduce evidence to show the real sense in which such word or words were used, or, in a proper case, that they have a generally known fixed trade significance. * * * But where a word has a common or generally accepted ordinary meaning it is supposed to have been so intended, unless it be plain from the context or is properly made to appear that the word was used in some other sense." Roylance Co. v. Descalzi, 243 Pa. 180, 183, 90 A. 55, 56. Before a usage may be denominated a custom, and bind those in the trade or business to which it refers, the meaning ascribed must be shown to be certain, continuous, uniform and notorious.Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181, 120 A. 116. No effort was made in the present case to prove any special understanding given by the trade to the word in question, such as here suggested. The court below, therefore, properly held the cost of operation not to be a question for consideration. | For usage to become custom, binding those in trade or business to which it refers, meaning ascribed to word must be shown to be certain, continuous, uniform, and notorious. | "For usage to become custom, must the meaning ascribed to a word be shown to be certain?" | 014147.docx | LEGALEASE-00141738-LEGALEASE-00141739 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 7666 | Heistand v. Bateman, 41 Colo. 20 | 113+3 | There is testimony to the effect that it was the custom of a considerable number of dealers in articles generally purchased by tourists to pay hackmen a commission on goods sold to tourists whom they brought to their stores, and that such sales were usually small; but it does not appear from the testimony that a commission of 10 per cent. was ever paid on sales exceeding $75, or possibly, in one or two instances, $200, and that on those in excess of that sum the amount paid depended upon special agreement. Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be uniform, notorious, and reasonable. Savage v. Pelton, 1 Colo. App. 148, 27 Pac. 948; Leach v. Perkins, 17 Me. 462, 35 Am. Dec. 268. The testimony, as applied to the facts of this case, wholly fails to establish these essential requisites of a custom which entitles the plaintiff to recover the commission sued for. As above stated, it was to the effect that dealers engaged in the same line of business in Manitou as defendant appear to have been in the habit of paying 10 per cent. commission to hack drivers on sales made to tourists brought to their stores, where such sales were in the amount usually made to such persons; that such sales were ordinarily in small amounts, or in the sum of a few dollars each; that in a few instances this commission had been paid on sales amounting to $75 and $200, but above the latter sum, and usually the former, the amount of commission paid was the subject of special agreement. This is far from establishing a custom to pay 10 per cent. commission upon a sale in the sum of several thousand dollars, or upon purchases by tourists far in excess of the usual amount made by them. | Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be uniform, notorious, and reasonable. | When can custom or usage relating to a particular business be used to determine the rights of parties? | 014175.docx | LEGALEASE-00141829-LEGALEASE-00141830 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7667 | Phillips Petroleum Co. v. Lujan, 951 F.2d 257 | 260+5.1(5) | Defendants were not asserting a claim for underpayment of royalties. Had they been, plaintiff might have very well been able to assert a statute of limitations defense. See 28 U.S.C. " 2415 (six-year statute of limitations on "action for money damages brought by the United States ... which is founded upon any contract). Rather, defendants were merely ordering plaintiff to provide records. Such an order is well within defendants' authority under the lease agreements and under the pertinent statutes and regulations governing the management of royalty payments. | Oil and gas leases for federal and Indian lands, as well as federal statutes and regulations governing payment of royalties on such leases, authorized federal authorities to obtain from lessee records that were more than six years old, even though there was statutory six-year limitations on maintaining records and on actions to collect royalty payments; officials were not asserting claim for nonpayment of royalties, leases required lessee to permit authorities to inspect all records without time limitation, and statute required lessee to make available for inspection and duplication "the appropriate records" without time limitation. Federal Oil and Gas Royalty Management Act of 1982, S 103(b), 30 U.S.C.A. S 1713(b); 28 U.S.C.A. S 2415. | Is a defendants order for the plaintiff to provide records within the defendants authority under the lease agreement and under the pertinent statues and regulations governing the management of royalty payments? | 021156.docx | LEGALEASE-00140851-LEGALEASE-00140852 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 7668 | LaSalle Nat. Bank v. City of Highland Park, 344 Ill. App. 3d 259 | 302+8(1) | Next, given that the lots should be treated as a single parcel, we must next consider whether plaintiffs' claim constituted a takings claim. Because plaintiffs' complaint was dismissed pursuant to a section 2-615 motion, the question before this court is whether their claims set forth a cause of action upon which relief could be granted. Illinois is a fact-pleading state. Adkins v. Sarah Bush Lincoln Health Center, 129 Ill.2d 497, 518, 136 Ill.Dec. 47, 544 N.E.2d 733 (1989). Accordingly, a pleader is required to set out the ultimate facts that support his or her cause of action, and legal conclusions unsupported by allegations of specific facts are insufficient. In re Petition for Annexation of Certain Property to the Village of Plainfield, Illinois, 267 Ill.App.3d 313, 317, 204 Ill.Dec. 801, 642 N.E.2d 502 (1994). | Illinois is a fact-pleading state; accordingly, a pleader is required to set out the ultimate facts that support his or her cause of action, and legal conclusions unsupported by allegations of specific facts are insufficient. | Is the pleader required to set out ultimate facts that support his or her cause of action? | Pleading - Memo 397 - RMM.docx | ROSS-003301127-ROSS-003301128 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 7669 | Youssef v. Jones, 77 Ohio App. 3d 500 | 307A+485 | The function of Civ.R. 36(A) is to narrow the issues for trial to genuinely disputed issues. St. Paul Fire & Marine Ins. Co. v. Battle (1975), 44 Ohio App.2d 261, 269, 73 O.O.2d 291, 295, 337 N.E.2d 806, 813. Therefore, unless the responding party objects to the request, the request must be answered. When the responding party justifiably believes that the matter requested to be admitted is a disputable issue, the responding party's only option is to deny the matter on that basis. Even if the requesting party is then able to prove the matter requested to be admitted, the responding party should not be charged for the cost of proving that issue under Civ.R. 37(C) since his denial based on a belief that the matter was disputable was a good reason for not admitting the matter. See 8 Wright & Miller, supra, at 715-717, Section 2256. See, also, Itskin v. Restaurant Food Supply Co. (1982), 7 Ohio App.3d 127, 130, 7 OBR 161, 163, 454 N.E.2d 583, 587. | Even if requesting party is able to prove matter requested to be admitted, responding party should not be charged for cost of proving issue, since denial based on belief that matter was disputable is good reason for not admitting matter. Rules Civ.Proc., Rules 36(A), 37(C); R.C. S 2335.06. | "Should a party who unjustifiably fails to admit the truth of a matter requested, pay petitioning party ""the reasonable expenses incurred in making that proof?" | Pretrial Procedure - Memo # 4306 - C - KBM.docx | LEGALEASE-00031136-LEGALEASE-00031137 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7670 | Black & White Cab Co. v. Doville, 221 Ark. 66 | 307A+713 | The granting of a continuance is within the sound discretion of the trial court; and it is not an abuse of discretion to refuse to continue a cause on account of the absence of a witness when there appears no reasonable assurance of finding the witness. See Old American Ins. Co. v. Hartsell, 176 Ark. 666, 4 S.W.2d 25;, 146 S.W. 855. See also West's Ark. Digest, Continuance, k22. | The granting of a continuance is within the sound discretion of the trial court, and it is not an abuse of discretion to refuse to continue a cause on account of the absence of a witness when there appears no reasonable assurance of finding that witness. | Will a refusal of continuance on ground of absence of witnesses be an abuse of discretion? | 032189.docx | LEGALEASE-00141547-LEGALEASE-00141548 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 7671 | Rachac v. Spencer, 49 Minn. 235 | 307A+74 | Gen.St.1878, c. 73, " 36 (M.S.A. "" 597.01, 597.02), authorizes the deposition of a person in another state to be taken before any officer authorized to administer an oath. Section 37 (M.S.A. "" 597.03, 597.07, 597.08, 597.10) provides that the officer shall annex to the deposition a certificate "under his hand and official seal," if he have one, stating what office he held when the deposition was taken, that he was authorized to administer oaths, and as to the giving of notice, etc. Section 39 (M.S.A. " 597.13) declares that "no informality, error, or defect in any proceeding under this statute shall be sufficient ground for excluding the deposition, unless the party making objection thereto shall make it appear to the satisfaction of the court" that the officer was not authorized to administer an oath, or that such party was by such informality, etc., precluded from appearing, etc. Held, that the omission of the official seal to the certificate of authentication of a deposition taken before a notary public in another state is an informality merely, under section 39 (M.S.A. " 597.13), and not alone sufficient to warrant the rejection of the deposition on the trial. | Gen.St.1878, c. 73, S 36 (M.S.A. SS 597.01, 597.02), authorizes the deposition of a person in another state to be taken before any officer authorized to administer an oath. Section 37 (M.S.A. SS 597.03, 597.07, 597.08, 597.10) provides that the officer shall annex to the deposition a certificate "under his hand and official seal," if he have one, stating what office he held when the deposition was taken, that he was authorized to administer oaths, and as to the giving of notice, etc. Section 39 (M.S.A. S 597.13) declares that "no informality, error, or defect in any proceeding under this statute shall be sufficient ground for excluding the deposition, unless the party making objection thereto shall make it appear to the satisfaction of the court" that the officer was not authorized to administer an oath, or that such party was by such informality, etc., precluded from appearing, etc. Held, that the omission of the official seal to the certificate of authentication of a deposition taken before a notary public in another state is an informality merely, under section 39 (M.S.A. S 597.13), and not alone sufficient to warrant the rejection of the deposition on the trial. | Does the statute authorize the deposition of a person in another state to be taken before any officer authorized to administer an oath? | Pretrial Procedure - Memo # 5430 - C - KG.docx | ROSS-003314867-ROSS-003314868 | Condensed, Order, SA | 0.01 | 1 | 1 | 0 | 1 | 1 |
| 7672 | R.C. Const. Co. v. Nat'l Office Sys., 622 So. 2d 1253 | 307A+679 | The challenge to personal jurisdiction is controlled by Rule 12, Mississippi Rules of Civil Procedure. Jones v. Chandler, 592 So.2d 966, 969 (Miss.1991). That determination of personal jurisdiction "proceeds wholly apart from any thought of the (de)merits of the plaintiff's claim." Id. at 971. The existence of any defense is a matter separate and apart from amenability to personal jurisdiction. Jones, 592 So.2d at 971. The question of personal jurisdiction initially turns on the well-pleaded allegations of the complaint. Id. at 972. On a motion to dismiss for lack of personal jurisdiction, all allegations of the complaint, together with reasonable inferences flowing therefrom, are accepted as true. Mandel v. James Graham Brown Foundation, Inc., 375 So.2d 1017, 1019 (Miss.1979). | On motion to dismiss for lack of personal jurisdiction, all allegations of complaint, together with reasonable inferences flowing therefrom, are accepted as true. | "On a motion to dismiss for lack of personal jurisdiction, are all allegations of the complaint accepted as true?" | Pretrial Procedure - Memo # 5727 - C - CK.docx | ROSS-003289428-ROSS-003289429 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7673 | Cabanne v. Walker, 31 Mo. 274 | 307A+74 | The rule requiring depositions taken in another cause to be filed before they are read, may be dispensed with when the ends of justice require it. When the evidence would operate as a surprise, the rule should not be suspended, except on terms which would not work injustice; but if the evidence is merely cumulative and will not surprise, the rule may be dispensed with. | The rule requiring depositions taken in another cause to be filed before they are read may be dispensed with when the ends of justice require it. When the evidence would operate as a surprise, the rule should not be suspended, except on terms which would not work injustice; but if the evidence is merely cumulative, and will not surprise, the rule may be dispensed with. | Can the rule requiring depositions taken in another cause to be filed before they are read be dispensed with when the ends of justice require it? | 033377.docx | LEGALEASE-00141051-LEGALEASE-00141052 | Condensed, Order, SA | 0 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7674 | In re Knight's Estate, 31 Wash. 2d 813 | 371+3302 | An inheritance tax, like any other tax, is a legal imposition exclusively of statutory origin and consequently, any liability for payment thereof must be found in the statute, or else it does not exist. Bente v. Bugbee, 103 N.J.L. 608, 137 A. 552, 58 A.L.R. 1137.The statute which designates the kind or classes of property subject to inheritance tax is " 1, p. 534, chapter 184, Laws of 1945, Rem.Supp.1945, " 11201, the applicable portion of which reads as follows:"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass [1] by will or [2] by the statutes of inheritance of this or any other state or [3] by deed, grant, sale or gift made in contemplation of the death of the grantor, or donor, or [4] by deed, grant or sale or gift made or intended to take effect in possession or in enjoyment after death of the grantor or donor, to any person in trust or otherwise, or [5] by a transfer in trust or otherwise, under which the grantor or donor has retained for his life or for any period not ascertainable without reference to his death, or for any period which does not in fact end before his death, the possession or enjoyment of any part of the property shall, for the use of the state, be subject to a tax measured by the full value of the entire property." (Italics and Arabic numerals appearing in this quotation have been added.). | An inheritance tax, like any other tax, is a legal imposition exclusively of statutory origin and, consequently, any liability for payment thereof must be found in the statute, or else it does not exist. Rem.Supp.1945, S 11201. | Is tax a legal imposition exclusively of statutory origin? | 045165.docx | LEGALEASE-00141057-LEGALEASE-00141058 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7675 | Jenkins v. Weyerhaeuser Co., 143 Wash. App. 246 | 413+2084 | "The IIA is the product of a compromise between employers and workers. Under the IIA, employers accepted limited liability for claims that might not have been compensable under the common law. In exchange, workers forfeited common law remedies." Cowlitz Stud Co. v. Clevenger, 157 Wash.2d 569, 572, 141 P.3d 1 (2006) (citation omitted). RCW 51.04.010 articulates this compromise, stating that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." In addition, we liberally construe the IIA "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. "All doubts about the meaning of the [IIA] must be resolved in favor of workers." Heidy, 147 Wash.2d at 86, 51 P.3d 793. | Under the Industrial Insurance Act (IIA), which is the product of a compromise between employers and workers, employers accepted limited liability for claims that might not have been compensable under the common law and, in exchange, workers forfeited common law remedies. West's RCWA 51.04.010 et seq. | "Under the Industrial Insurance Act, what did the employers accept and what did the workers forfeit?" | 048089.docx | LEGALEASE-00140770-LEGALEASE-00140771 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7676 | Piersall v. Winter, 507 F. Supp. 2d 23 | 34+36 | Under the Uniform Code of Military Justice, military commanders can punish service personnel through judicial proceedings"taking the form of general, special, or summary courts martial"or by imposing non-judicial punishment ("NJP"). See generally Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); Middendorf v. Henry, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). NJP is referred to as "captain's mast" or "mast" in the sea services, as "office hours" in the Marine Corps, and as "Article 15" in the Army and Air Force, after the article of the UCMJ that governs NJP. 10 U.S.C. " 815. For most purposes, NJP is deemed an administrative rather than criminal proceeding. See, e.g., Cappella v. United States, 224 Ct.Cl. 162, 624 F.2d 976 (1980). | Under the Uniform Code of Military Justice, military commanders can punish service personnel through judicial proceedings-taking the form of general, special, or summary courts martial-or by imposing non-judicial punishment ("NJP"). 10 U.S.C.A. S 815. | Can military commanders punish service personnel through judicial proceedings? | 008618.docx | LEGALEASE-00142181-LEGALEASE-00142182 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7677 | United States v. O'Brien, 994 F. Supp. 2d 167 | 63+13 | Defendants rely on an exception to the bribery statute, set forth in " 666(c). That section provides that "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. " 666(c). Congress enacted that provision in order to avoid the section's "possible application to acceptable commercial and business practices." United States v. Cornier"Ortiz, 361 F.3d 29, 33 (1st Cir.2004) (quoting H.R.Rep. No. 99"797, at 30 (1986), reprinted in 1986 U.S.C.C.A.N. 6138, 6153).Generally, whether wages are "bona fide" and paid "in the usual course of business" are questions of fact for the jury. United States v. Dwyer, 238 Fed.Appx. 631, 647"48 (1st Cir.2007) (unpublished); see Cornier"Ortiz, 361 F.3d at 36. | Generally, in a bribery case, whether wages are bona fide and paid in the usual course of business are questions of fact for the jury. 18 U.S.C.A. S 666(c). | "In relation to an exception to bribery statute, the question whether wages are bona fide and paid in the usual course of business are questions of fact for the jury?" | 011614.docx | LEGALEASE-00142853-LEGALEASE-00142854 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7678 | Miller v. R.R. Comm'n of Tex., 185 S.W.2d 223 | 260+92.32(1) | The average density of the eight times surrounding area, as compared to a given area, has never been accepted as a conclusive criterion on the issue of drainage and confiscation. It is at most but evidentiary and can give no vested right in a given producer to drill a given tract to such density. Its value as evidence on a confiscation issue is necessarily dependent upon at least three factors: 1. The size of the eight times area; 2. The location of the wells in such area; and 3. Whether such wells cause local uncompensated drainage as between the adjacent tracts in the area. Obviously, if in a given area delineated by a circle, the major portion of the total number of wells within it are located in a single segment, composing for example only 1/4 of the circle, mere numbers would afford no reliable criteria of density for the entire area. Hence density based purely on numbers in an overall area may or may not be of value on the issue of drainage to or from a given tract Further, density within such eight times area as a criterion has been applied only *226 to instances of local drainage, and not to regional migration in the field as a whole. | On application for additional oil well permits as excepting to spacing rule 37 average density of wells in eight times area surrounding given tract is not conclusive criterion on issue of drainage and confiscation and gives particular producer no vested right to drill particular tract to such density, but is at most evidentiary, and its value as evidence depends on size of eight times area, location of wells therein, and whether such wells cause local uncompensated drainage as between adjacent tracts in area, not regional migration in field as whole. | Is the average density of the eight times surrounding area a conclusive criterion on the issue of drainage and confiscation? | 021247.docx | LEGALEASE-00143284-LEGALEASE-00143285 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 7679 | Sun Operating Ltd. P'ship v. Oatman, 911 S.W.2d 749 | 260+49 | When the surface is separated from the minerals, adverse possession of mineral rights is accomplished by drilling and producing for the statutory period of time. | When surface is separated from minerals, adverse possession of mineral rights is accomplished by drilling and producing for statutory period of time. | "When the surface is separate from the minerals, may adverse possession be accomplished by drilling and producing for the statutory period of time?" | Mines and Minerals - Memo #202 - C - CSS.docx | ROSS-003288919 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7680 | Chandler v. Illinois Cent. R. Co., 207 Ill. 2d 331 | 302+11 | Although a complaint is deficient when it fails to allege the facts necessary for recovery, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. Carriage Way West, Inc., 88 Ill.2d at 308, 58 Ill.Dec. 754, 430 N.E.2d 1005, quoting Board of Education of the Kankakee School District No. 111 v. Kankakee Federation of Teachers Local No. 886, 46 Ill.2d 439, 446"47, 264 N.E.2d 18 (1970). Allegations of law or conclusions are not required and are, indeed, improper. Illinois Graphics, 159 Ill.2d at 489, 203 Ill.Dec. 463, 639 N.E.2d 1282. The Code of Civil Procedure specifically recognizes that no complaint is bad in substance which reasonably informs the defendant of the nature of the claim that he or she is called upon to meet. See 735 ILCS 5/2"612(b) (West 2000). | Although a complaint is deficient when it fails to allege the facts necessary for recovery, the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts. | Is a complaint deficient when it fails to allege the facts necessary for the plaintiff to recover? | Pleading - Memo 410 - RMM.docx | ROSS-003301133-ROSS-003301134 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7681 | Drumm Corp. v. Wright, 326 Ga. App. 41 | 106+32.5(2) | "A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction." (Citation and footnote omitted.) Sol Melia, SA v. Brown, 301 Ga.App. 760, 760"761, 688 S.E.2d 675 (2009). Drumm, as the defendant moving to dismiss, bears the burden of proving lack of jurisdiction. Id. And "to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence." (Citation omitted.) Yukon Partners, Inc. v. Lodge Keeper Group, 258 Ga.App. 1, 2, 572 S.E.2d 647 (2002). | To the extent that defendant's evidence alleging lack of personal jurisdiction controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. | Does a defendant who files a motion to dismiss for lack of personal jurisdiction have the burden of proving lack of jurisdiction? | 032937.docx | LEGALEASE-00143580-LEGALEASE-00143581 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7682 | Fire Ass'n of Philadelphia v. Masterson, 83 S.W. 49 | 307A+74 | The deposition of the witness A.G. McMahan was not rendered inadmissible by reason of the fact that when it was offered the witness had been sworn and was present in court and under the rule. It was discretionary with the trial judge to admit the deposition, even though the witness was present. Schmick v. Noel, 64 Tex. 408; O'Connor v. Andrews, 81 Tex. 37, 16 S.W. 628. The fact that the deposition was not marked "Filed" by the clerk did not furnish any reason for its exclusion. It had been duly taken and returned and placed among the papers of the case. | The fact that a deposition was not marked "Filed" by the clerk did not furnish any reason for its exclusion, it having been duly taken and returned and placed among the papers in the case. | "Does the fact that the deposition was not marked ""Filed"" by the clerk furnish any reason for its exclusion?" | 032997.docx | LEGALEASE-00143005-LEGALEASE-00143006 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7683 | Roman Catholic Diocese of Jackson v. Morrison, 905 So. 2d 1213 | 307A+554 | The first question presented is whether the First Amendment deprives our civil courts of subject matter jurisdiction over the causes of action alleged by the Morrisons against a religious institution. Attacks on jurisdiction pursuant to Miss. R. Civ. P. 12(b)(1) are either facial or factual. A facial attack alleges the court lacks jurisdiction as a matter of law, regardless of the determination of factual disputes. A factual attack requires resolution by the trial court of one or more factual disputes in order to determine subject matter jurisdiction. After deciding disputed issues of material fact, the trial court then must accept as true all undisputed well-pled factual allegations of the plaintiff's complaint and proceed to decide the jurisdictional question. | Attacks via a motion to dismiss based on lack of subject matter jurisdiction are either facial or factual; a "facial attack" alleges the court lacks jurisdiction as a matter of law, regardless of the determination of factual disputes, whereas a "factual attack" requires resolution by the trial court of one or more factual disputes in order to determine subject matter jurisdiction. Rules Civ.Proc., Rule 12(b)(1). | Are attacks on jurisdiction facial or factual? | 033020.docx | LEGALEASE-00143544-LEGALEASE-00143545 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 7684 | Johnston v. Johnston, 825 N.E.2d 958 | 106+32.5(2) | Furthermore, a challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. In either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. However, the defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. Id. at 1231. | Challenge to personal jurisdiction may be raised either as affirmative defense in answer to complaint, or in motion to dismiss. | "Can a challenge to personal jurisdiction be raised either as affirmative defense in answer to complaint, or in motion to dismiss?" | Pretrial Procedure - Memo # 5785 - C - SS.docx | ROSS-003304817-ROSS-003304818 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7685 | Wallingford v. Trinity Universal Ins. Co., 253 S.W.3d 720 | 307A+554 | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. Lacy v. Bassett, 132 S.W.3d 119, 122 (Tex.App.Houston [14th Dist.] 2004, no pet.), citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). Whether a court has subject matter jurisdiction is a question of law which we review de novo. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004). | A motion to dismiss based on the absence of subject matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss due to a lack of subject-matter jurisdiction the functional equivalent of a plea to the jurisdiction? | 033447.docx | LEGALEASE-00143019-LEGALEASE-00143020 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7686 | Venetian Salami Co. v. Parthenais, 554 So. 2d 499 | 106+32.5(2) | Our task does not end here because there must be a disposition of the instant case. With one notable exception, previous decisions of the district courts of appeal have outlined the procedure to be followed in cases such as this. Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Fla.R.Civ.P. 1.070(i); Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43 (Fla. 1st DCA 1986). By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. Elmex Corp. v. Atlantic Fed. Savings & Loan Ass'n, 325 So.2d 58 (Fla.4th DCA 1976). A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. Elmex Corp. In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed. However, the question remains with respect to what should be done if the relevant facts set forth in the respective affidavits are in direct conflict. There is no Florida decision on this question, and the instant case highlights the dilemma. | Plaintiff may seek to obtain jurisdiction over nonresident defendant by pleading the basis for service in the language of the statute, without pleading supporting facts; defendant's filing of motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise legal sufficiency of the pleadings and, defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. West's F.S.A. S 48.193; West's F.S.A. RCP Rule 1.070(i). | "If only the motion to dismiss for lack of personal jurisdiction is filed, then does the defendant merely raise the legal sufficiency of the pleadings?" | 033455.docx | LEGALEASE-00143120-LEGALEASE-00143121 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7687 | Verploegh v. Gagliano, 396 Ill. App. 3d 1041 | 307A+560 | The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13"217 of the Code of Civil Procedure." Ill. S. Ct. R. 103(b), (eff. July 4, 2007). The plaintiff has the burden to prove reasonable diligence to obtain service of process. Segal v. Sacco, 136 Ill.2d 282, 286, 144 Ill.Dec. 360, 555 N.E.2d 719, 720 (1990). We review a decision to grant a motion to dismiss pursuant to Supreme Court Rule 103(b) for an abuse of discretion. Segal, 136 Ill.2d at 286, 144 Ill.Dec. 360, 555 N.E.2d at 720. | In response to motion to dismiss, the plaintiff has the burden to prove reasonable diligence to obtain service of process. Sup.Ct.Rules, Rule 103(b). | Does a plaintiff have the burden to prove reasonable diligence to obtain service of process in response to a motion to dismiss? | 033791.docx | LEGALEASE-00142126-LEGALEASE-00142127 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7688 | Maddox v. Stone, 174 Md. App. 489 | 307A+746 | That is not to say that trial counsel and litigants are free to treat scheduling orders as mere suggestions or imprecise guidelines for trial preparation. Scheduling orders must be given respect as orders of the circuit court, and the court may, under appropriate circumstances, impose sanctions upon parties who fail to comply with the deadlines in scheduling orders.Although the Maryland Rules do not prescribe any sanctions for failure to strictly adhere to all time limits imposed by a Rule 2"504 scheduling order, there is inherent power for the courts to "enforce their scheduling orders through the threat and imposition of sanctions." Manzano, supra, 347 Md. at 29, 698 A.2d 531. | Scheduling orders must be given respect as orders of the circuit court, and the court may, under appropriate circumstances, impose sanctions upon parties who fail to comply with the deadlines in scheduling orders. Md.Rule 2-504. | Should scheduling orders be given respect as orders of the circuit court? | 033899.docx | LEGALEASE-00142276-LEGALEASE-00142277 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7689 | O'Hara v. City of Hattiesburg, 222 So. 3d 314 | 307A+560 | However, the circuit court dismissed the complaint for insufficient service of process on March 2, 2015, only a little over three weeks after the complaint was filed. Rule 4(h) provides that a plaintiff has 120 days in which to serve the defendant. "[U]ntil that 120"day period has expired, any attempt to seek dismissal on the grounds of defective service clearly would be premature." McGinnis v. Shalala, 2 F.3d 548, 551 (5th Cir. 1993) (applying then"Federal Rule of Civil Procedure 4(j), subsequently relettered as Rule 4(m)); accord State Farm Fire & Cas. Co. v. Smith, 39 So.3d 1172, 1174 (Ala. Civ. App. 2009) (applying Alabama Rule of Civil Procedure 4(b) and holding that a trial court cannot dismiss a complaint for insufficient service within the 120"day period permitted for service). | Trial court's order dismissing pedestrian's negligence case against city, for injuries sustained when street suddenly caved in, was premature, given that court dismissed the complaint for insufficient service of process only a little over three weeks after the complaint was filed and rule provided that a plaintiff had 120 days in which to serve the defendant. Miss. R. Civ. P. 4(h). | "Can an action be dismissed for insufficient service before the expiration of a 120-day period, under the rule permitting the period for service of process?" | 033929.docx | LEGALEASE-00142380-LEGALEASE-00142381 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 7690 | Kim v. Magnotta, 249 Conn. 94 | 307A+560 | "Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss." Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53, 459 A.2d 503 (1983); see Knipple v. Viking Communications Ltd., 236 Conn. 602, 606, 674 A.2d 426 (1996). In this case, the defendant challenged the plaintiffs' claims for relief by filing an answer and affirmative defenses. As a result of his failure to file a motion to dismiss and his unconditional participation in the stipulated judgment, the defendant waived any challenge to the court's exercise of personal jurisdiction. Practice Book " 10"32. | Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss. | "Because a lack of personal jurisdiction can be waived by the defendant, do the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss?" | 034417.docx | LEGALEASE-00143590-LEGALEASE-00143591 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7691 | Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249 | 371+2005 | Appellant objects that the tax violates the Fourteenth Amendment, in that it is levied as a charge for the use of the highways which appellant does not use. But the levy is a tax, not a toll or charge for use of the highways (see Carley & Hamilton v. Snook, 281 U.S. 66, 50 S.Ct. 204, 74 L.Ed. 704, 68 A.L.R. 194), and the constitutional power to levy taxes does not depend upon the enjoyment by the taxpayer of any special benefit from the use of the funds raised by taxation. Carley & Hamilton v. Snook, supra; St. Louis & Southwestern R. Co. v. Nattin, 277 U.S. 157, 159, 48 S.Ct. 438, 72 L.Ed. 830. The allegations of the bill showing that a heavier burden of taxation is imposed upon railroads than upon common carriers by motorbus, examined in the light of the applicable statutes of the state, fall short of alleging a discrimination forbidden by either the commerce clause or the Fourteenth Amendment. | Taxing power does not depend upon taxpayer's enjoyment of any special benefit from use of funds raised by taxation. U.S.C.A. Const.Amend. 14. | Does the taxing power depend upon taxpayer's enjoyment of benefit from use of funds raised by taxation? | 045585.docx | LEGALEASE-00142441-LEGALEASE-00142442 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7692 | Twp. of Holmdel v. New Jersey Highway Auth., 190 N.J. 74 | 371+2060 | We begin our analysis with a review of the basic legal principles relevant to governmental tax immunities. All real property within New Jersey is subject to taxation, N.J.S.A. 54:4"1, unless expressly exempted by the Legislature, see N.J. Const. art. VIII, " 1, 2 (authorizing legislative tax exemptions). Judicial interpretation of statutory tax exemptions is governed by principles of general statutory construction. Walter Reade, Inc. v. Dennis, 36 N.J. 435, 440, 177 A.2d 752 (1962). Thus, when interpreting a statutory tax exemption, the "Legislature's intent is the paramount goal .. and, generally, the best indicator of that intent is the statutory language." DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039; see also Walter Reade, supra, 36 N.J. at 441, 177 A.2d 752 ("[T]he decision turn[s] upon the intention of the Legislature in the statute creating the agency and providing for the exemption."). | All real property within New Jersey is subject to taxation unless expressly exempted by the Legislature. N.J.S.A. Const. Art. 8, S 1, par. 2; N.J.S.A. 54:4-1. | Is all real property within state subject to taxation unless expressly exempted by the Legislature? | Taxation - Memo # 720 - C - KBM.docx | LEGALEASE-00033281-LEGALEASE-00033282 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7693 | Gulf States Underwriters of Louisiana v. Bennett, 260 Ga. App. 699 | 413+2 | Furthermore, the policy does not constitute a substitute workers' compensation policy. "The Workers' Compensation Act constitutes a complete code of laws upon the subject, and the recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits." | Workers' Compensation Act constitutes complete code of laws upon subject, and recoverability of workers' compensation benefits is strictly matter of statutory construction, because there is no common law right to such benefits. West's Ga.Code Ann. S 34-9-1 et seq. | Is the Workers Compensation Act a complete code of laws? | Workers Compensation - Memo #392 ANC.docx | ROSS-003288999 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7694 | Merrill Lynch, Pierce, Fenner & Smith v. Salvano, 999 F.2d 211 | 25T+156 | Salvano and Coon contend that the Federal Arbitration Act (FAA)"and the Illinois Arbitration Act, to the extent it applies"required the district court to deny the TRO request. We agree with Merrill Lynch, however, that the weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel. See, e.g., Sauer"Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348, 351"52 (7th Cir.1983), cert. denied, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47"51 (1st Cir.1986); Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1052"53 (2d Cir.1990); Roso"Lino Beverage Distributors, Inc. v. Coca"Cola Bottling Co., 749 F.2d 124, 125 (2d Cir.1984); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir.1985). But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286, 1291"92 (8th Cir.1984) (stating that a district court abused its discretion in granting injunctive relief in an arbitrable dispute).In Sauer"Getriebe, this court ordered the district court to enjoin the defendant's actions pending arbitration where the plaintiff satisfied the requisites for obtaining such relief under the four usual factors justifying injunctions. 715 F.2d at 351. That test examines whether the plaintiff will otherwise have an adequate remedy at law, whether the threatened injury to the plaintiff outweighs the threatened harm of the injunction, whether the plaintiff has at least a reasonable likelihood of success on the merits and whether the granting of a preliminary injunction will disserve the public interest. Wesley"Jessen Division of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir.1983). Though Salvano and Coon argue that Sauer"Getriebe is distinguishable from the present case on several grounds, the subsequent circuit cases reaching like results reinforce | Federal district courts may issue preliminary injunctive relief in disputes that are ultimately to be resolved by arbitration panel. | Does a district court have the power to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel? | 007670.docx | LEGALEASE-00144690-LEGALEASE-00144692 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 7695 | Davis v. United States, 47 Ct. Cl. 195 | 34+26 | Plaintiff was paid both salary and expenses traveling from the United States to Cavite, and it is therefore only reasonable for him to expect, when he entered the public service, that he would be paid for the time and necessary traveling expenses incurred in returning to the United States.In view of the fact that the practice of the Navy Department had been to order a paymaster's clerk, upon the completion of his duty abroad, to proceed to his home in the United States, his appointment should not be considered as revoked until his arrival in the United States, and this custom was complied with by the Navy Department in this case. | In view of the fact that the practice of the Navy Department has been to order a paymaster's clerk, upon the completion of his duty abroad, to proceed to his home in the United States, his appointment should not be considered as revoked until his arrival in the United States. | Is a paymaster's clerk entitled to be returned to his home at the expense of the Government before being discharged? | 008655.docx | LEGALEASE-00144590-LEGALEASE-00144591 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 7696 | United States v. Anderson, 517 F.3d 953 | 350H+653(4) | We begin with the calculation of the base offense level. The district court applied the bribery provisions of " 2C1.1 to Anderson's conduct; Anderson believes that it should have applied the gratuity provisions of " 2C1.2. Convictions under " 666 and " 1343 call for the application of either " 2C1.1 or " 2C1.2, whichever is most appropriate or most specifically covers the offense conduct. See United States v. Agostino, 132 F.3d 1183, 1195 (7th Cir.1997); U.S.S.G. " 2C1.7(c)(4) (2003). The question here is simply whether Anderson's conduct was "more akin" to a gratuity or to a bribe. See Agostino, 132 F.3d at 1195. Unlike a gratuity, a bribe is a payment made with "a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official action." See U.S.S.G. " 2C1.1 cmt. background. Thus, we have distinguished bribes from gratuities as follows: "If the payer's intent is to influence or affect future actions, then the payment is a bribe. If, on the other hand, the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity." Agostino, 132 F.3d at 1195. In this case, it is clear that Anderson was attempting to influence the future actions of a public official. | If the payer's intent is to influence or affect future actions, then the payment is a "bribe," within the meaning of the Sentencing Guidelines; if, on the other hand, the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a "gratuity." U.S.S.G. SS 2C1.1, 2C1.2, 18 U.S.C.A. | "When a payor intends to influence an official's future actions, what does the payment constitute?" | 012236.docx | LEGALEASE-00143911-LEGALEASE-00143912 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 7697 | United States v. Collins, 78 F.3d 1021 | 164T+22 | For purposes of the Hobbs Act, extortion by wrongful use of fear encompasses threats of economic loss. United States v. Dischner, 974 F.2d 1502, 1517 (9th Cir.1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993); United States v. Stodola, 953 F.2d 266, 271 (7th Cir.), cert. denied, 506 U.S. 834, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). The fear need not be the product of the defendant's actions. "It is enough if the fear exists and the defendant intentionally exploits it." United States v. Williams, 952 F.2d 1504, 1513"14 (6th Cir.1991). Bribery, on the other hand, is not within the reach of the Hobbs Act. United States v. Capo, 817 F.2d 947, 954 (2nd Cir.1987). A classic example of bribery is made out where the " 'victims' faced no increased risk if they did not pay, but, rather, stood only to improve their lots by paying defendants...." Capo, 817 F.2d at 954. | For purposes of Hobbs Act, fear connected with threats of economic loss need not be the product of defendant's actions. 18 U.S.C.A. S 1951. | "For the purposes of the Hobbs Act, does the fear connected with threats of economic loss need to be the product of the defendant's actions?" | Bribery - Memo #849 - C - LB.docx | ROSS-003290965-ROSS-003290966 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7698 | NCNB Texas Nat. Bank, N.A. v. West, 631 So. 2d 212 | 260+47 | Alabama determines ownership of oil and gas under the nonownership theory, which recognizes the migratory nature of oil and gas and requires actual possession to establish ownership. Sun Oil Co. v. Oswell, 258 Ala. 326, 332, 62 So.2d 783, 787 (1953); 1 H. Williams and C. Meyers, Oil and Gas Law " 203.1 at 34 (1988); Farnell, supra, 33 Ala.L.Rev. at 523.11 The owner of property containing gas has the right to reduce the gas to possession or to sever the gas rights by conveyance. The nonownership theory of gas ownership, because it recognizes the migratory nature of oil and gas, requires actual possession to establish ownership of the resource, and the right held by the landowner is "the right to reduce the oil and gas to possession or to sever this right for economic consideration." Id. | "Nonownership" theory of gas ownership, because it recognizes migratory nature of oil and gas, requires actual possession to establish ownership of resource, and right held by landowner is right to reduce oil and gas to possession or to sever right for economic consideration. | Does the non-ownership theory recognize the migratory nature of oil and gas and require actual possession to establish ownership? | 021371.docx | LEGALEASE-00144073-LEGALEASE-00144074 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7699 | In re Marriage of Peck, 242 Ariz. 345, 395 P.3d 734 | 307A+554 | "The requirement that a nexus exist between a defendant's activities in the forum state and a plaintiff's cause of action provides the key to exercising specific jurisdiction." Williams, 199 Ariz. 1, 11, 13 P.3d at 283. In other words, a petitioner's claim must result from " "alleged injuries that arise out of or relate to [the defendant's] activities' in the forum state." Id. quoting Burger King, 471 U.S. at 472, 105 S.Ct. 2174; see also Rollin v. William V. Frankel & Co, Inc., 196 Ariz. 350, 14, 996 P.2d 1254, 1258 (App. 2000) (same). If the petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, dismissal is warranted. In re Consol. Zicam Prod., 212 Ariz. 85, 11, 127 P.3d at 908. The focus of the analysis is "the relationship between the defendant, the forum, and the litigation." Williams, 199 Ariz. 1,11, 13 P.3d at 283. | If the petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, dismissal based on lack of jurisdiction is warranted. | "If a petitioner's claim and the non-resident defendant's forum-related activities are not sufficiently connected, is dismissal based on lack of jurisdiction warranted?" | Pretrial Procedure - Memo # 5690 - C - MS.docx | ROSS-003288926-ROSS-003288927 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7700 | Laflamme v. Goodwin, 911 N.E.2d 660 | 106+35 | A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. Johnston v. Johnston, 825 N.E.2d 958 (Ind.Ct.App.2005). In either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. Id. The defendant, however, bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. Id. | A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss, and in either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. | Can a challenge to personal jurisdiction be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss? | 033041.docx | LEGALEASE-00143792-LEGALEASE-00143793 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 7701 | Gray v. Winthrop, 115 Fla. 721 | 371+2288 | Subject only to applicable and controlling federal law, state taxation is authorized, limited, and regulated by the state Constitution and by statutes enacted thereunder. The state Constitution may itself designate or may authorize statutory designations of classes of property that shall be taxed or that shall be exempt from taxation when organic property rights secured by the Federal Constitution are not thereby violated. See 61 C. J. 384; Arkansas Sou. R. Co. v. Louisiana & A. R. Co., 218 U. S. 431, 31 S. Ct. 56, 54 L. Ed. 1097; Gilman v. City of Sheboygan, 2 Black (67 U. S.) 510, 17 L. Ed. 305 (state power reserved). A denial of the equal protection of the laws is not involved in these cases. | State taxation is authorized, limited, and regulated by state Constitution and statutes enacted thereunder, subject only to applicable and controlling federal law, and state Constitution may designate or authorize statutory designations of classes of property exempt from taxation when organic property rights, secured by Federal Constitution, are not thereby violated. | Can state constitution designate or authorize statutory designations of classes of property? | 033708.docx | LEGALEASE-00144393-LEGALEASE-00144394 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 7702 | Campion v. Angier, 16 Tex. 93 | 307A+726 | The affidavit, on a second application for a continuance on the ground of the absence of a material witness, must state that there are not other witnesses in attendance by whom the defendant can prove the same facts, or, in the words of the statute, "that the testimony cannot be obtained from any other source."The correct practice doubtless is, in no case to revise the judgment of the court refusing a continuance, unless the party asking a reversal on that ground has reserved the point by a bill of exceptions. [20 Tex. 536; 25 Tex. 53; 29 Tex. 191.] | The application for a second continuance because a material witness was absent should state that no other witness is in attendance by whom the defendant could prove the same facts, or, in the words of the statute, "that the testimony cannot be obtained from any other source." | "To meet the requirements of the statute for a second application for continuance, is it required to allege that the testimony to be elicited from the witnesses could not be procured from any other source?" | 034029.docx | LEGALEASE-00144625-LEGALEASE-00144626 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 7703 | Chacha v. Transp. USA, 78 So. 3d 727 | 307A+583 | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed "a fraud on the court which permeates the entire proceedings." See McKnight v. Evancheck, 907 So.2d 699, 700 (Fla. 4th DCA 2005). In Arzuman v. Saud, 843 So.2d 950 (Fla. 4th DCA 2003), we explained: The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117"18. Id. at 952 (quoting Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998)). | A trial court has the inherent authority to dismiss a plaintiff's entire case when there is clear and convincing evidence that the plaintiff has committed a fraud on the court which permeates the entire proceedings. | Does a trial court have the inherent authority to dismiss a suit when the plaintiff commits a fraud on the court? | 034491.docx | LEGALEASE-00144157-LEGALEASE-00144158 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 7704 | Clapper v. Oregon State Police, 228 Or. App. 172 | 307A+552 | The question remains whether defendant was entitled to judgment as a matter of law. As we conclude above, by the time of trial, plaintiff had received all of the records that he had requested. A ruling by the court would have had no effect on the rights of either party. The case was therefore moot. Kay v. David Douglas Sch. Dist. No. 40, 303 Or. 574, 738 P.2d 1389 (1987), cert. den., 484 U.S. 1032, 108 S.Ct. 740, 98 L.Ed.2d 775 (1988). Where a case becomes moot, dismissal is the appropriate disposition, and, "[t]ypically, when a judgment dismisses the complaint, the defending party is considered the prevailing party." Brennan v. La Tourelle Apartments, 184 Or.App. 235, 243, 56 P.3d 423 (2002). Defendant was therefore entitled to judgment as a matter of law. The court did not err in granting its motion for summary judgment. | Where a case becomes moot, dismissal is the appropriate disposition, and, typically, when a judgment dismisses the complaint, the defending party is considered the prevailing party. | Is dismissal the appropriate disposition where a case becomes moot and is the defending party considered the prevailing party when the complaint is dismissed? | Pretrial Procedure - Memo # 6956 - C - SKG.docx | ROSS-003289928-ROSS-003289929 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7705 | Dixie Fuel Co. v. Comm'r of Soc. Sec., 171 F.3d 1052 | 307A+552 | Equally importantly, Eastern Enterprises did not address the issue that Dixie Fuel asks us to decide here. Eastern Enterprises held that the Coal Act's retroactive allocation of beneficiaries, as applied to Eastern, violates the Takings Clause of the Fifth Amendment. Eastern Enterprises, 118 S.Ct. at 2153. Dixie Fuel seeks not only to void the assignments already made to it, but to enjoin the SSA from making any new assignments, not because such assignments might violate the Fifth Amendment, but because the Coal Act does not permit the SSA to make any assignments at all after October 1, 1993. The defendant who seeks to have a case dismissed as moot must demonstrate that "there is no reasonable expectation that the alleged wrongs will be repeated," Blinder, Robinson & Co., 692 F.2d at 106"07 (citing United States v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). Although the SSA conceded that these particular assignments to Dixie Fuel were void under Eastern Enterprises, it did not concede that it may not or would not again assign beneficiaries to Dixie Fuel. Therefore, the case is not moot and we may reach the merits of the appeal. | Defendant who seeks to have a case dismissed as moot must demonstrate that there is no reasonable expectation that the alleged wrongs will be repeated. | "Should a defendant who seeks to have a case dismissed as moot, demonstrate that there is no reasonable expectation that the alleged wrongs will be repeated?" | Pretrial Procedure - Memo # 7122 - C - VA_57795.docx | ROSS-003294189-ROSS-003294190 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7706 | Wheeling, P. & C. Transp. Co. v. City of Wheeling, 99 U.S. 273 | 371+2005 | Neither imposts nor duties on imports or exports can be levied by a State, except what may be absolutely necessary for executing its inspection laws, nor can a State levy any duty of tonnage without the consent of Congress. State power of taxation is doubtless very comprehensive; but it is not without limits, as appears from what has already been remarked, to which it may be added, that State tax laws cannot restrain the action of the national authority, nor can they abridge the operation of any law which Congress may constitutionally pass. They may extend to every object of value not excepted as aforesaid, within the sovereignty of the State; but they cannot reach the means and instruments of the Federal government, nor the administration of justice in the Federal courts, nor the collection of the public revenue, nor interfere with any constitutional regulation of Congress. | The state tax laws cannot restrain the action of the national authority nor can they abridge the operation of any law which Congress may constitutionally pass. | Can the state laws restrain the action of the national authority which Congress may constitutionally pass? | 045745.docx | LEGALEASE-00144367-LEGALEASE-00144368 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7707 | Commonwealth v. Union Pac. R. Co., 214 Ky. 339 | 371+2005 | A personal tax may be imposed upon all domiciled within the territories of the state, whether he be a citizen, an alien, or even a corporation. This tax, as well said in the case of State v. Ross, 23 N. J. Law, 517, is:"The burden imposed by government upon its own citizens for the benefits which that government affords by its protection and its laws." | Personal tax may be imposed on all domiciled within territories of state, whether he be citizen, alien, or corporation. | "Can personal tax be imposed on all domiciled within the territories of state irrespective of whether he is a citizen, alien, or corporation?" | 045767.docx | LEGALEASE-00144476-LEGALEASE-00144477 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 7708 | United Computer Sys. v. AT & T Corp., 298 F.3d 756 | 25T+182(1) | The corporate defendants also argue that UCS waived its right to arbitrate by requesting a jury trial. In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts. See Hoffman Const. Co. v. Active Erectors, 969 F.2d 796, 798"99 (9th Cir.1992). The first two prongs of this test are satisfied by UCS's state court complaint, requesting a declaratory judgment with respect to the rights and obligations of the parties under the Agreement's arbitration clause, but also requesting a jury trial and $16 million in damages. In addition, the filing of this lawsuit by UCS, rather than paying the $2,000 administrative fee to the California AAA to commence Arbitration IV, is also inconsistent with the terms of the arbitration clause. | Arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts. | When are arbitration rights subject to constructive waiver? | Alternative Dispute Resolution - Memo 738 - RK.docx | ROSS-003288688-ROSS-003288690 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7709 | Whitehall Oil Co. v. Heard, 197 So. 2d 672 | 260+55(1) | Thus, for instance, a landowner cannot create a single servitude or mineral royalty right on two or more non-contiguous tracts; and if this is attempted by a single instrument, there are nevertheless as many servitudes or royalty interests as there are non-contiguous tracts of land. Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73; Calhoun v. Ardis, 174 La. 420, 141 So. 15; Lee v. Giauque, 154 La. 491, 97 So. 669. On the other hand, there is no limitation in the area or configuration of a contiguous mineral interest. Gulf Oil Corp. v. Clement, 239 La. 144, 118 So.2d 361; Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844 (80,000 acres). | A landowner cannot create a single servitude or mineral royalty right on two or more noncontiguous tracts, and if this is attempted by a single instrument, there are nevertheless as many servitudes or royalty interests as there are noncontiguous tracts of land. | Can a single mineral servitude be created on two or more noncontiguous tracts of land? | 021465.docx | LEGALEASE-00146153-LEGALEASE-00146154 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 7710 | Herrington v. Martinez, 45 F. Supp. 543 | 260+12 | For an individual to avail himself of the right to locate a mining claim under one of the above statutes, citizenship of the United States, or a declaration of intention to become such is a prerequisite. The judicial construction of these sections by the United States Supreme Court and the Supreme Court of California indicates that such qualifications are merely directory as against everyone except the sovereign authority of the government concerned. The leading case of Manuel v. Wulff, 152 U.S. 505, 14 S.Ct. 651, 38 L.Ed. 532, is frequently cited as authority for the proposition of law that the ownership of a mining claim by an alien is subject to question in regard to his citizenship by the government alone. Therein a mining claim was conveyed by deed to an alien by a qualified locator. Unquestionable title was procured by the grantor and the only question was whether such title devolved upon the alien grantee. The grantee's title was voidable and not void, the court held. Under the present facts, the defendant, Becker, an alien, was the original locator, and aside from the question of his right to the mining claims in dispute by reason of his alienage, consummation of title therein was duly secured. | Provisions of federal and California statutes requiring one locating mining claim to be a citizen of the United States or to have filed declaration of intention to become a citizen are merely "directory" as against everyone except the sovereign authority of the government, and ownership of mining claim by alien is subject to question in regard to his citizenship by the government alone. 30 U.S.C.A. S 22; Civ.Code Cal. S 1426. | Is the ownership of a mining claim by an alien subject to question in regard to his citizenship by the United States government alone? | 021509.docx | LEGALEASE-00145064-LEGALEASE-00145065 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7711 | Bowes v. Perkins, 169 Misc. 624 | 296+2 | The discretionary power vested in this Court by the provisions of " 793 of the Civil Practice Act when read in the light of the foregoing authorities convinces me, and I do so hold, that the moneys derived by Mr. Perkins from the Federal Agency at Bath, N. Y. in the form of monthly salary are properly before this Court for consideration in determining whether I should order the Judgment-Debtor, Mr. Perkins, to pay to the Judgment-Creditor, Mr. Bowes, or apply on his judgment, in installments, any portion thereof. The obvious purpose of the pension which the Judgment-Debtor receives is: "to promote the comfort of the soldier; to secure to him the bounty of the government, free from the claims of creditors; and to insure him and his family a safe, although modest, maintenance so long as their needs required it." (Italics mine.) Yates County National Bank v. Carpenter, 119 N.Y. 550, 555, 23 N.Y. 1108, 1109, 7 L.R.A. 557, 16 Am.St.Rep. 855. | The purpose of soldier's pension is to promote the soldier's comfort, to secure to him the bounty of the government free from the claims of creditors, and to insure him and his family a safe, although modest, maintenance so long as their needs require it. | What is the purpose of a soldiers pension? | 022813.docx | LEGALEASE-00145415-LEGALEASE-00145416 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7712 | Rodriguez v. Yenawine, 556 S.W.2d 410 | 302+11 | Texas courts have upheld the pleading when the technical elements of a cause of action, without allegations of ultimate facts to be proved, were alleged in the petition. Pleadings have been held sufficient alleging "failure to keep a proper lookout," that "defendant is liable to plaintiff under the doctrine of discovered peril," and that defendant "failed to exercise the means then and there at his command to avert said collision." Andrews v. Daniel, 240 S.W.2d 1018, 1020 (Tex.Civ.App. Austin 1951, writ dism'd). Similarly, the pleading alone of "failure to keep a proper lookout" was upheld because, the court reasoned, plaintiff pleaded the facts as far as he could and because the pleading was sufficient to allow development of facts which showed the particulars. Panhandle & Santa Fe Ry. Co. v. Dean, 269 S.W.2d 439, 441 (Tex.Civ.App. El Paso 1954, writ ref'd n. r. e.). | Pleading may be upheld when technical elements of cause of action, without allegations of ultimate facts to be proved, are alleged in petition. Rules of Civil Procedure, rules 45, 47. | "Should pleadings be upheld when technical elements of cause of action, without allegations of ultimate facts to be proved, are alleged?" | 023547.docx | LEGALEASE-00145591-LEGALEASE-00145592 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7713 | Peterson v. McCawley, 135 Idaho 282 | 307A+746 | For purposes of this appeal, we will accept the district court's view that the deadline for the status reports was June 23, 1999, and that the Petersons' report was therefore eight days late.1 IDAHO RULE OF CIVIl proCedure 16(a) empowers trial courts to fashion pretrial orders for efficient case management. Fish Haven Resort, Inc. v. Arnold, 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991). Permissible sanctions include those outlined in Rule 37(b)(2) for violation of discovery orders, and the imposition of sanctions under Rule 16(i) is subject to the same standards as sanctions for discovery violations. See Fish Haven Resort, supra. The use of such sanctions is discretionary with the trial court. Ashby v. Western Council, Lumber Production and Indus. Workers, 117 Idaho 684, 686, 791 P.2d 434, 436 (1990); Southern Idaho Prod. Credit Ass'n v. Astorquia, 113 Idaho 526, 528, 746 P.2d 985, 987 (1987); Devault v. Steven L. Herndon, a Prof'l Ass'n, 107 Idaho 1, 2, 684 P.2d 978, 979 (1984); Kleine v. Fred Meyer, Inc., 124 Idaho 44, 47, 855 P.2d 881, 884 (Ct.App.1992); Fish Haven Resort, Inc., supra. | Permissible sanctions for failing to obey a pretrial scheduling order include those outlined in discovery rule for violation of discovery orders, and the imposition of sanctions subject to the same standards as sanctions for discovery violations; use of such sanctions is discretionary with the trial court. Rules Civ.Proc., Rules 16(i), 37(b)(2). | Do permissible sanctions for failing to obey a pretrial scheduling order include those outlined in discovery rule for violation of discovery orders? | 034074.docx | LEGALEASE-00145218-LEGALEASE-00145219 | Condensed, Order, SA | 0.69 | 1 | 1 | 0 | 1 | 1 |
| 7714 | Beasley v. Girten, 61 So. 2d 179 | 307A+746 | The court unquestionably has power to discipline counsel for refusal or failure to meet the requirements of the rule. Such refusal may warrant a citation for contempt or a lesser degree of punishment, but it is our view that the major punishment for such delicts should ordinarily be imposed on counsel rather than on the litigant.Dismissal "with prejudice" in effect disposes of the case, not for any dereliction on the part of the litigant, but on the part of his counsel. We are not unmindful of the rule that counsel is the litigant's agent and that his acts are the acts of the principal, but since the rule is primarily for the governance of counsel, dismissal "with prejudice" would in effect punish the litigant instead of his counsel. Although persistent refusal to attend might, in the interest of justice, require a dismissal without prejudice, we think for the reasons given that such dismissal upon the first infraction is too severe. | The court has power to discipline counsel for refusal or failure to attend pre-trial conference, and such refusal may warrant a citation for contempt or a lesser degree of punishment. Rules of Common Law, rule 16, 30 F.S.A.; Equity Rules, rule 77, 31 F.S.A. | Does the court have power to discipline counsel for refusal or failure to attend pre-trial conference? | 034106.docx | LEGALEASE-00145332-LEGALEASE-00145333 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7715 | Stephen Slesinger v. Walt Disney Co., 155 Cal. App. 4th 736 | 307A+552 | Past California decisions have affirmed dismissals as an exercise of inherent power in two situations. First, because delay in prosecution interferes with the orderly process of litigation and may make a fair trial unlikely, California courts have inherent power to dismiss civil cases for unreasonable, inexcusable delay in prosecution. (People v. Jefferds (1899) 126 Cal. 296, 300"301, 58 P. 704; Karras v. Western Title Ins. Co. (1969) 270 Cal.App.2d 753, 757, 76 Cal.Rptr. 141.) Second, because courts should hear only actual disputes, and should prevent harassment of defendants, California courts possess the inherent authority to dismiss cases that are fraudulent or "vexatious." (Estate of King (1953) 121 Cal.App.2d 765, 774"775, 264 P.2d 586; Cunha v. Anglo California Nat. Bank (1939) 34 Cal.App.2d 383, 388"389, 93 P.2d 572.) | Because courts should hear only actual disputes, and should prevent harassment of defendants, California courts possess the inherent authority to dismiss cases that are fraudulent or vexatious. | Does a court possess the inherent authority to dismiss cases that are fraudulent or vexatious? | 034168.docx | LEGALEASE-00145511-LEGALEASE-00145512 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7716 | State ex rel. Gaylor v. Goodenow, 125 Ohio St. 3d 407 | 13+6 | Respondents argue that this mandamus complaint should be dismissed as moot because the electrical-systems contract has already been awarded to another contractor. A " "case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome." " Los Angeles Cty. v. Davis (1979), 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642, quoting Powell v. McCormack (1969), 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491. "It is not the duty of the court to answer moot questions, and when, pending proceedings in this court, an event occurs, without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition." Miner v. Witt (1910), 82 Ohio St. 237, 92 N.E. 21, syllabus. | It is not the duty of a court to answer moot questions, and when, pending proceedings, an event occurs, without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the action. | Is it the duty of a court to answer moot questions? | 034688.docx | LEGALEASE-00145700-LEGALEASE-00145701 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7717 | Kessler v. Lauretz, 39 Cal. App. 3d 441 | 307A+552 | The trial court appropriately dismissed the complaint as sham. A court has inherent power by summary means to prevent an abuse of its process and peremptorily to dispose of sham causes of action. (Estate of King, 121 Cal.App.2d 765, 774, 264 P.2d 586.) To establish the artifice of a complaint, a court may take judicial notice of other judicial proceedings and of allegations in other pleadings. (Byrne v. Harvey, 211 Cal.App.2d 92, 106"107, 111"112, 27 Cal.Rptr. 110; Lee v. Hensley, 103 Cal.App.2d 697, 709, 230 P.2d 159.) | Court has inherent power by summary means to prevent abuse of its process and peremptorily to dispose of sham causes of action. | Does court have power to prevent abuse of its process and peremptorily to dispose of sham causes of action? | 034718.docx | LEGALEASE-00146262-LEGALEASE-00146263 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 7718 | Comm'r Of Prob. v. Adams, 65 Mass. App. Ct. 725 | 307A+563 | A court must be sufficiently empowered in order to prevent fraud on the court, because allowing the court to be manipulated by fraud poses a danger to its authority. See Rockdale Mgmt. Co. v. Shawmut Bank, N.A., supra; Gray v. Commissioner of Rev., supra. Thus, the Supreme Judicial Court has held that "[w]hen a fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct." Rockdale Mgmt. Co. v. Shawmut Bank, N.A., supra. | A court must be sufficiently empowered in order to prevent fraud on the court, because allowing the court to be manipulated by fraud poses a danger to its authority. | Should a court be sufficiently empowered in order to prevent fraud on the court because allowing the court to be manipulated by fraud poses a danger to its authority? | 034752.docx | LEGALEASE-00145124-LEGALEASE-00145125 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 7719 | Farrell v. Theriault, 464 A.2d 188 | 307A+724 | In this case, defense counsel failed to include in the record on appeal a copy of his motion for a continuance and the supporting affidavit thereto. It is imperative that counsel for an appellant include in the record all matters upon which he intends to rely. See 2 Field, McKusick and Wroth, Maine Civil Practice, " 74.2, p. 198 (2d ed. 1970). Statements in the appellant's brief are not evidence of alleged facts, when such facts if part of the record below have not been incorporated in the contents of the record on appeal. As stated in State v. Curtis, supra, at 255, the law has long required that the party requesting a continuance make known to the presiding justice substantial reasons why the granting of the continuance would serve to further justice. The record does indicate that trial counsel's York County jury trial date and his hearing on the instant motion for summary judgment had been set for the same day, November 3, 1982, sufficiently in advance to permit counsel to take some action with the court to protect himself against the potential conflict. The presiding justice was presented with no facts, so far as this record is concerned, which excused the defendant from complying with the court's order that any motion for a continuance in the case be filed at the latest on November 1, 1982, nor was he given any substantial reason whereby justice would be advanced by the grant of the continuance. | Party requesting continuance must make known to presiding justice substantial reasons why granting of continuance would serve to further justice. Rules Civ.Proc., Rule 40(b). | Should a party seeking a continuance make known to the presiding justice substantial reasons why granting the continuance would serve to further justice? | Pretrial Procedure - Memo # 6997 - C - KI.docx | ROSS-003302930-ROSS-003302931 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 7720 | Wright v. Allen, 611 So. 2d 23 | 307A+551 | The challenged order did not provide any explanation for the dismissal. On appeal the appellees contend that dismissal was appropriate pursuant to Florida Rule of Civil Procedure 1.420(b), as a sanction for the appellant's failure to obtain new counsel within the time allowed in the court's order. While this ultimate sanction may be appropriate in aggravated situations, see e.g., Johnson v. Landmark First National Bank, 415 So.2d 161 (Fla. 4th DCA 1982), this generally requires a deliberate and insubordinate disregard of the court's authority, so as to amount to a willful abuse of the process. See El Mundo Supermarket, Inc. v. Michelsa Supermarket, Inc., 388 So.2d 324 (Fla. 3d DCA 1980); In re: Estate of Ulm, 345 So.2d 1099 (Fla. 2d DCA 1977). Although there may be some question as to whether the pro se appellant's failure to obtain new counsel would constitute such willful abuse, we find it unnecessary to resolve this question in the present appeal. In Commonwealth Federal Savings & Loan Ass'n. v. Tubero, 569 So.2d 1271 (Fla.1990), the supreme court held that a trial court must make specific written findings reflecting the deliberate or willful nature of the conduct in order to impose such a sanction of dismissal. See also, Carillon Corp. v. Devick, 554 So.2d 630 (Fla. 4th DCA 1989). These findings were not made in the present case, and the dismissal is thus not a proper exercise of the court's authority under rule 1.420(b). | Ultimate sanction of dismissal may be appropriate in aggravated situations, but this generally requires deliberate and insubordinate disregard of court's authority, so as to amount to willful abuse of the process. West's F.S.A. RCP Rule 1.420(b). | Can the ultimate sanction of dismissal be appropriate in aggravated situations? | 034832.docx | LEGALEASE-00146102-LEGALEASE-00146103 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7721 | Morgan v. Campbell, 816 So. 2d 251 | 307A+690 | This court has held that a trial court has the inherent authority to dismiss an action as a sanction when the plaintiff has perpetrated a fraud on the court. See Tri Star Invs. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981). This power exists because "no litigant has a right to trifle with the courts." Id. However, because of the consequences of such a dismissal, this sanction should be imposed only on a "clear showing of fraud, pretense, collusion, or similar wrongdoing." Id. | Because of the consequences of a dismissal with prejudice, this sanction should be imposed only on a clear showing of fraud, pretense, collusion, or similar wrongdoing. | "Because of the consequences of a dismissal with prejudice, should this sanction be imposed only on a clear showing of fraud, pretense, collusion, or similar wrongdoing?" | Pretrial Procedure - Memo # 7007 - C - SK.docx | ROSS-003331857-ROSS-003331858 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 7722 | State ex rel. DeSelm v. Jordan, 296 S.W.3d 530 | 307A+552 | The trial court dismissed the plaintiffs' complaint in this action upon its determination that the issues raised by the pleadings were moot and that there remained no continuing justiciable controversy. A case must maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot. State ex rel. Cunningham v. Farr, No. M2006"00676"COA"R3"CV, 2007 WL 1515144 (Tenn. Ct.App. M.S., filed May 23, 2007). | A case must maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot. | Should a case maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot? | 034951.docx | LEGALEASE-00146166-LEGALEASE-00146167 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 7723 | Gilbert v. Eckerd Corp. of Florida, 34 So. 3d 773 | 307A+563 | The mere conflict between discovery depositions, interrogatories and records disclosed during the discovery process should not warrant dismissal. See Ramey, 993 So.2d at 1021-22 (Altenbernd, J., concurring). Factual inconsistencies or even false statements are better managed through the use of impeachment or other discovery sanctions. See Ruiz, 859 So.2d at 576. | The mere conflict between discovery depositions, interrogatories and records disclosed during the discovery process should not warrant dismissal on the basis of fraud on the court. | "Should the mere conflict between discovery depositions, interrogatories and records disclosed during the discovery process not warrant dismissal on the basis of fraud on the court?" | Pretrial Procedure - Memo # 7150 - C - DHA.docx | ROSS-003289961-ROSS-003289962 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7724 | Bogan v. Byrom, 151 So. 2d 718 | 307A+563 | The power of the court to enforce its lawful orders is inherent. And, it is settled in this State that the court has the right and power to order a litigant to perform some act, procedural in character, and upon his failure or refusal to do so, to dismiss his suit. LSA-C.C.P. Article 933; St. Charles St. R. Co. v. Fidelity & Deposit Co. of Maryland, 109 La. 491, 33 So. 574; Succession of McMahon, 143 La. 644, 79 So. 175; Succession of Grover, 49 La.Ann. 1050, 22 So. 313; Curtis v. Jordan, 110 La. 429, 34 So. 591; Neal v. Hall, supra; La Fleur v. Dupuis, supra. | The court has the right and power to order a litigant to perform some act, procedural in character, and, upon his failure or refusal to do so, to dismiss his suit. LSA-C.C.P. art. 933. | "Can a court order a litigant to perform some action, procedural in character, and on his refusal to do so dismiss the suit?" | 035143.docx | LEGALEASE-00146136-LEGALEASE-00146137 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7725 | State v. Fattorusso, 228 So. 2d 630 | 307A+563 | We recognize the inherent right of the trial court to dismiss an action because of non-compliance with its orders in the interests of the orderly administration of justice.Dismissal of an action with prejudice is a drastic punishment and should not be invoked except in those cases where the actions of the party shows a deliberate and contumacious disregard of the court's authority. | Trial court has inherent right to dismiss an action because of noncompliance with its orders in interests of orderly administration of justice. | Does a trial court have an inherent right to dismiss an action because of noncompliance with its orders in interests of orderly administration of justice? | Pretrial Procedure - Memo # 7247 - C - DHA.docx | ROSS-003316994-ROSS-003316995 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 7726 | Paul v. Smith, Gambrell & Russell, 323 Ga. App. 447 | 307A+590.1 | "OCGA "" 9"2"60(b) and 9"11"41(e) are the statutory embodiment of the "five-year rule." Together, they provide for the automatic dismissal of any action filed in a Georgia court of record when "no written order is taken for a period of five years[.]" " Zepp v. Brannen, 283 Ga. 395, 396, 658 S.E.2d 567 (2008). The five-year rule is "a reasonable procedural rule" that serves "the dual purpose of preventing court records from becoming cluttered by unresolved and inactive litigation and of protecting litigants from dilatory counsel." (Citation and punctuation omitted.) Brown v. Kroger Co., 278 Ga. 65, 68, 597 S.E.2d 382 (2004). These Code sections are mandatory, and dismissal occurs by operation of law. Republic Claims Svc. Co. v. Hoyal, 264 Ga. 127, 128, 441 S.E.2d 755 (1994); Roberts v. Eayrs, 297 Ga.App. 821, 822(2), 678 S.E.2d 535 (2009). We apply a bright-line rule for determining whether an order is sufficient to reset the five-year clock. Windsor v. City of Atlanta, 287 Ga. 334, 336(2), 695 S.E.2d 576 (2010). " [I]n order to toll the running of the five-year period that results in automatic dismissal for non-action, an order must be written, signed by the trial judge, and properly entered in the records of the trial court by filing it with the clerk." (Citation and punctuation omitted.) Id. | In order to toll the running of the five-year period that results in automatic dismissal for non-action, an order must be written, signed by the trial judge, and properly entered in the records of the trial court by filing it with the clerk. (Per Miller, J., with two judges concurring in judgment.) West's Ga.Code Ann. SS 9-2-60(b), 9-11-41(e). | Are statutes providing for the dismissal of an action if no written order is taken for five years mandatory? | 035253.docx | LEGALEASE-00145969-LEGALEASE-00145970 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7727 | Flores v. Georgeson, 191 Cal. App. 4th 881 | 307A+552 | The appellate court in Shieh did not purport to apply section 391.7 in accordance with its terms; indeed, the court expressly noted that in the "ordinary" case, the statute only prohibits new litigation filed in propria persona. (In re Shieh, supra, 17 Cal.App.4th at p. 1167, 21 Cal.Rptr.2d 886.) A court has inherent power, upon a sufficient factual showing, to dismiss an action "shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process." (Muller v. Tanner (1969) 2 Cal.App.3d 438, 443, 82 Cal.Rptr. 734, quoting from Lincoln v. Didak (1958) 162 Cal.App.2d 625, 629"630, 328 P.2d 498.) That power, exercised after a hearing and upon sufficient factual showing, is a different power than the virtually ministerial power granted by section 391.7, subdivision (c). | A court has inherent power, upon a sufficient factual showing, to dismiss an action shown to be sham, fictitious or without merit in order to prevent abuse of the judicial process. | Do courts have inherent power to dismiss a case which is collusive? | 035275.docx | LEGALEASE-00146018-LEGALEASE-00146019 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7728 | Stewart v. Butler, 27 Misc. 708 | 307A+552 | This is an action for ejectment. The defendants move--First, that the plaintiff's attorneys be required to produce and file written evidence of their authority to commence this action; and, secondly, that the complaint be dismissed, because the action is vexatious and clearly without merit, and not brought in good faith, but solely as an endeavor to extract money from the defendants as the price of peace, and because of the irresponsibility of the plaintiff. So far as the first branch of the motion is concerned, it is expressly authorized by sections 1512 and 1513 of the Code of Civil Procedure, and must be granted, the plaintiff's proceedings being stayed until such authority is produced. | A complaint may be dismissed on motion, where the litigation is vexatious, clearly without merit, and not brought in good faith; plaintiff being an insolvent. | "Can a complaint of an insolvent plaintiff be dismissed on motion where litigation is vexatious, clearly without merit, and not brought in good faith?" | 035283.docx | LEGALEASE-00145490-LEGALEASE-00145491 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 7729 | Goodman v. Goodman, 165 S.W.3d 499 | 307A+563 | A defendant may seek to have a civil action involuntarily dismissed for failure of the plaintiff to comply with "any order of the court." Rule 67.03. Dismissal of a motion to modify maintenance is not proper solely on the basis that an arrearage in payments exists. Laffey, 72 S.W.3d at 150. There must be evidence presented, demonstrating "the party making the motion to modify had the ability to comply with the maintenance order." Id. | A defendant may seek to have a civil action involuntarily dismissed for failure of the plaintiff to comply with any order of the court. V.A.M.R. 67.03. | Can a defendant seek to have a civil action involuntarily dismissed for failure of the plaintiff to comply with any order of the court? | 035444.docx | LEGALEASE-00145246-LEGALEASE-00145247 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 7730 | Reichert v. Union Fid. Life Ins. Co., 360 N.W.2d 664 | 307A+563 | An action may be dismissed with prejudice for a failure to prosecute, or for noncompliance with the Rules of Civil Procedure, or with an order of the court. Minn.R.Civ.P. 41.02(1). The determination of whether to dismiss is within the discretion of the trial court. Scherer v. Hanson, 270 N.W.2d 23 (Minn.1978). The supreme court, however, has noted that dismissal runs contrary to the primary objective of the law, which is to dispose of cases on their merits. Firoved v. General Motors Corp., 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). The primary factor to be considered is the prejudicial effect on the parties of such an order, or its denial. Id. | An action may be dismissed with prejudice for failure to prosecute, for noncompliance with the rules of civil procedure, or with an order of the court. 48 M.S.A., Rules Civ.Proc., Rule 41.02(1). | "Can an action be dismissed with prejudice for failure to prosecute, for noncompliance with the rules of civil procedure, or with an order of the court?" | Pretrial Procedure - Memo # 7382 - C - ES.docx | ROSS-003302140 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7731 | Solak v. Sarowitz, 153 A.3d 729 | 307A+561.1 | Defendants argue that the Complaint should be dismissed because plaintiff has come to Court with unclean hands on the theory that his "only possible motivation for this lawsuit" is to facilitate a future violation of Paylocity's exclusive-forum bylaw. It is inappropriate to dismiss a complaint based on an affirmative defense unless "plaintiff can prove no set of facts to avoid it:" | It is inappropriate to dismiss a complaint based on an affirmative defense unless the plaintiff can prove no set of facts to avoid it. | Would it be appropriate to dismiss a complaint based on an affirmative defense unless the plaintiff can prove no set of facts to avoid it? | Pretrial Procedure - Memo # 7924 - C - MS.docx | LEGALEASE-00036257-LEGALEASE-00036258 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7732 | Hagan v. Fairfield, 16 Cal. Rptr. 14 | 307A+552 | While a court has inherent power to dismiss an action when it is shown to be sham, fictitious or without merit, to the end that there shall be no abuse of the judicial process (Lincoln v. Didak, 162 Cal.App.2d 625, 629, 328 P.2d 498), it is apparent that in this case it was not proper to grant the motion to dismiss. Nothing in the declaration of Mr. Fairfield filed in support of that motion justifies such action. We are aware of the waste of the time and effort of a trial court, already heavily burdened, which flows from the institution of a series of actions or proceedings which spring from the same body of claims. But to the extent to which various actions may be consolidated (see Jud Whitehead Heater Co. v. Obler, 111 Cal.App.2d 861, 866"867, 245 P.2d 608), such waste may be avoided. See Bartholomew v. Bartholomew, 56 Cal.App.2d 216, 224"225, 132 P.2d 297. | Court has inherent power to dismiss action shown to be sham, fictitious, or without merit, so that there shall be no abuse of judicial process. | Does a court have inherent power to dismiss an action which is clearly shown to be sham and without merit? | Pretrial Procedure - Memo # 7932 - C - KG.docx | ROSS-003330546-ROSS-003330547 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7733 | Nw. Nat. Gas Co. v. Clark Cty., 98 Wash. 2d 739 | 371+2005 | Finally, Northwest claims that the Department's valuation and the resulting taxation by the State exceed constitutional limitations. State taxation of property not within the state violates both the interstate commerce clause and the due process clause. Norfolk & W. Ry. v. Missouri State Tax Comm'n, 390 U.S. 317, 325, 88 S.Ct. 995, 1000, 19 L.Ed.2d 1201 (1968). Yet the state may attempt to tax the intangible "going-concern" value, as well as the value of the tangible assets, within the state. Norfolk & Western, at 323"24, 88 S.Ct. at 1000. This is what the State has attempted to do in the present situation by its consideration of revenues and volume sold. | State may attempt to tax the intangible "going-concern" value as well as value of tangible assets of an interstate business within the state. | "Can the state attempt to tax the intangible ""going-concern"" value as well as value of tangible assets of an interstate business within the state?" | 11421.docx | LEGALEASE-00094701-LEGALEASE-00094702 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7734 | State v. Clement Nat. Bank, 84 Vt. 167 | 371+2005 | The arguments of counsel are based in part upon certain undisputed propositions. The taxing power of the state extends to all persons and property within its jurisdiction not protected therefrom by federal supremacy. Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558; Catlin v. Hull, 21 Vt. 152. National banks are instrumentalities of the federal government, and as such are necessarily under the paramount authority of the United States. Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700; Hawley v. Hurd, 72 Vt. 122, 47 Atl. 401, 52 L. R. A. 195, 82 Am. St. Rep. 922. There can be no state taxation of a national bank without the consent of Congress. Mercantile, etc., Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895. The only taxation permitted is upon the real estate of the bank and its shares of stock as the property of its stockholders, and this does not authorize a taxation of the bank's franchise in lieu of the taxation of shares. Owensboro National Bank v. Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850. A "franchise tax" is a tax upon the privilege of doing business under corporate organization; and the tax of 7/10 of 1 per cent. upon the average amount of deposits, imposed upon the savings institutions of this state by sections 744 and 745 of the Public Statutes, is a franchise tax. State v. Bradford Savings Bank, 71 Vt. 234, 44 Atl. 349; State v. Franklin County Savings Bank, 74 Vt. 246, 52 Atl. 1069. The provision of the federal Constitution which secures to all the equal protection of the laws does not prevent a classification of property for the purposes of taxation, but it requires that the classification be based on some distinction which bears a just relation to the purpose of the enactment. Magoun v. Illinois, etc., Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; State v. Hoyt, 71 Vt. 59, 42 Atl. 973. | The taxing power of the state extends to all persons and property within its jurisdiction, not protected therefrom by federal supremacy. | Is the taxing power of the state extending to all persons and property within its jurisdiction protected by federal supremacy? | 045885.docx | LEGALEASE-00146311-LEGALEASE-00146312 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 7735 | In re McKennan's Estate, 25 S.D. 369 | 371+2005 | Historically considered, it is enough to say that long before the establishment of the Constitution of this state what were known as "probate fees," "death dues," "inheritance taxes," and "succession taxes" were generally recognized as proper and lawful sources of revenue. In fact, it must be conceded as thoroughly established that there is vested in the state, through its Legislature, absolute power over all matters of taxation, save and except as the power of such Legislature may be restricted by the people through the Constitution, or by some power delegated to the federal government. Without such restrictions there would be no limit whatever upon methods of taxation either in relation to the classes of property or other objects of taxation, the classification of such objects of taxation, the rates levied, or any of the matters becoming vital in view of the constitutional provisions, state and federal. In re Watson, 17 S. D. 486, 97 N. W. 463; State, etc., v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218. | There is vested in the state, through the Legislature, absolute power over all matters of taxation, except as the power may be restricted by the state Constitution, or by some power delegated to the federal government. | "Does the state have absolute power over all matters of taxation, except for the powers that may be restricted by the state Constitution?" | 045889.docx | LEGALEASE-00146315-LEGALEASE-00146316 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7736 | Denisen v. Milwaukee Mut. Ins. Co., 360 N.W.2d 448 | 413+1 | The Minnesota workers' compensation law establishes an exclusive system of compensation in all but certain designated employments for injuries which result in disability or death to employees and which arise out of and in the course of their employment. Minn.Stat. " 176.031 (1982). | Minnesota workers' compensation law establishes an exclusive system of compensation in all but certain designated employments for injuries which result in disability or death to employees and which arise out of and in course of their employment. M.S.A. S 176.031. | Is the workers compensation an exclusive system of compensation for injuries to the employees? | 047762.docx | LEGALEASE-00145240-LEGALEASE-00145241 | Condensed, SA | 0.07 | 0 | 1 | 0 | 1 | |
| 7737 | Cty. of La Crosse v. Wisconsin Employment Relations Comm'n, 182 Wis. 2d 15 | 413+1 | The Worker's Compensation Act (Act) represents the legislative compromise between the interests of employers, employees and the public in resolving compensation disputes regarding work-related physical or mental harms arising in our industrial society. Henning v. General Motors Assembly Division, 143 Wis.2d 1, 11, 419 N.W.2d 551 (1988); State v. Labor & Industrial Review Commn, 136 Wis.2d 281, 286"87, 401 N.W.2d 585 (1987); Jenkins v. Sabourin, 104 Wis.2d 309, 322, 311 N.W.2d 600 (1981). | Workers' Compensation Act represents legislative compromise between interests of employers, employees and public in resolving compensation disputes regarding work-related physical or mental harms arising in industrial society. W.S.A. 102.01 et seq. | What does the Workers Compensation Act represent? | 048230.docx | LEGALEASE-00145527-LEGALEASE-00145528 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 7738 | Mendoza v. Monmouth Recycling Corp., 288 N.J. Super. 240 | 413+2 | Workers' compensation, however, rests upon quite different predicates. The conceptual basis of the workers' compensation system is the substitution of the statutory remedy for a common-law right of action, the statutory remedy becoming an integral component of the contract of employment. | Conceptual basis of workers' compensation system is substitution of statutory remedy for common-law right of action, with statutory remedy becoming integral component of contract of employment. | Is the conceptual basis of workers compensation the substitution of a statutory remedy for common law? | 048240.docx | LEGALEASE-00145549-LEGALEASE-00145550 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7739 | Travelers Ins. Co. v. Sitko, 496 So. 2d 920 | 413+2 | We begin our analysis with the premise that workers' compensation is purely a creature of statute. All rights and liabilities under the system are created by chapter 440, Florida Statutes, as is the deputy's power to hear and determine issues in a workers' compensation case. If the deputy has jurisdiction over a potential party to a workers' compensation action, that jurisdiction must also stem from the statute. In this case the parties could cite no authority, nor have we found any, for the deputy's jurisdiction over Travelers, a third-party insurer having no connection to claimant's employer's workers' compensation coverage. Although section 440.25(2), Florida Statutes (1983), allows notice to "any other person other than the claimant whom the division considers an interested party," it does not define the term "interested party." Section 440.25(3)(b) allows only the claimant and the employer to give evidence at a hearing. As we interpret it, the statutory scheme contemplates that, at least in the usual case, only the employer/carrier and the claimant will be "interested parties." In any event we hold, for the reasons stated below, that the deputy did not have jurisdiction to decide the issue of FIGA's liability or lack thereof to Travelers under section 631.54(3), and we need not reach the question of the deputy's possible jurisdiction over Travelers had a different issue been involved. We note, however, that where there is no obvious statutory authority for the deputy's exercise of jurisdiction over a proposed party, the basis for the deputy's jurisdiction should be discussed in the order. | Workers' compensation is purely creature of statute, and rights and liabilities under system, and deputy's power to hear and determine issues in workers' compensation cases must stem from statute. West's F.S.A. S 440.01 et seq. | Does the statute confer deputy his power to hear and determine issues in a workers compensation case? | 11482.docx | LEGALEASE-00094555-LEGALEASE-00094556 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 7740 | DeLuna v. Burciaga, 223 Ill. 2d 49 | 307A+561.1 | A motion to dismiss, pursuant to section 2"619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. Borowiec v. Gateway 2000, Inc., 209 Ill.2d 376, 413, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004). Section 2"619 motions present a question of law, and we review rulings thereon de novo. Borowiec, 209 Ill.2d at 413, 283 Ill.Dec. 669, 808 N.E.2d 957. | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. S.H.A. 735 ILCS 5/2-619. | Can a motion to dismiss based on defect or defense admit the legal sufficiency of the complaint? | 036309.docx | LEGALEASE-00146688-LEGALEASE-00146689 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 7741 | Jewett v. Gage, 55 Me. 538 | 200+181 | It appears, that, on August 29, 1865, the plaintiff's daughter, with a suitable horse and vehicle, and in the exercise of ordinary care, was travelling in and along a public highway in the vicinity of the defendant's house, when an animal, called by various names, such as hog, sow, swine, and, by the classical counsel for the plaintiff, "monstrum horrendum," aged, of large size, filthy, unclean by the Levitical, and prohibited from running at large in the streets by the statute law, suddenly arose from the gutter, frightened the horse, and caused the damage for the recovery of which this suit is brought.It is contended, by the defendant's counsel, that such animals have the right to run in the highway when accompanied by a keeper. It may be so, but such is not this case. There was no keeper, and, besides, the hog was not in transitu. It is a mistaken idea that animals prohibited by statute from running at large without a keeper, if with a keeper, can be turned into the highway for the purpose of grazing, or swine recubans to wallow in the mire by the road-side. The case of Stackpole v. Healey, 16 Mass., 31, is full and conclusive upon this point. | The plaintiff's minor daughter, with a suitable horse and vehicle, and in the exercise of ordinary care, was traveling along a public highway, when the horse became frightened at the appearance of the defendant's hog, which was permitted to be in the highway without a keeper, and occasioned an injury to the daughter and the vehicle. Held, that the defendant was liable for the injury, whether he knew or not that the hog was there at the time. | Would the owner of the hog be liable if the horse is frightened by the hog in the highway and causes injuries? | 018634.docx | LEGALEASE-00147823-LEGALEASE-00147824 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7742 | Wheeler v. Hager, 293 Mass. 534 | 296+7 | A special examiner, attached to the Veterans' Administration, may "make special examinations into the merits' of pension claims, "whether pending or adjudicated," may investigate "any suspected attempt to defraud the United States in or affecting the administration of any laws relative to pensions," and has "power to administer oaths and take affidavits and depositions." U.S.C. title 38 "" 121, 122 (38 U.S.C.A. "" 121, 122), Act of July 3, 1930, c. 863, "" 1, 2, 46 U.S.Stat. at Large, 1016; Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441. A witness may be compelled to testify before such an examiner. U.S.C. title 38, " 124 (38 U.S.C.A. " 124), Act of July 3, 1930, c. 863, "" 1, 2, 46 U.S.Stat. at Large, 1016; In re Gross (C.C.) 78 F. 107 | Witness may be compelled to testify before special examiner attached to Veterans' Administration to make special examination into merits of pension claims. R.S. SS 474, 4744; Act July 25, 1882, SS 2, 3, 22 Stat. 175; Act March 3, 1891, S 3, 26 Stat. 1083; Act July 3, 1930, SS 1, 2, 46 Stat. 1016. | Can a witness be compelled to testify regarding merits of pension claims? | 022848.docx | LEGALEASE-00147850-LEGALEASE-00147851 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 7743 | Bushnell v. Thompson, 133 Neb. 115 | 307A+563 | The rule is well established that failure or refusal of plaintiff to comply with a proper order of the court may be valid ground for dismissal of the action.Section 20-601 Comp.St.1929, authorizes dismissal of an action by the court for disobedience by the plaintiff of an order concerning the proceedings in the action. | The failure or refusal of plaintiff to comply with proper order of court may be valid ground for dismissal of action. Comp.St.1929, S 20-601. | Can the failure or refusal of a plaintiff to comply with a proper order of court be valid ground for dismissal of action? | 034965.docx | LEGALEASE-00147652-LEGALEASE-00147653 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 7744 | El-Zoobi v. United Airlines, 2016 IL App (1st) 150813 | 307A+686.1 | A section 2"619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006). An affirmative matter is one which completely negates the cause of action. Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). When ruling on a section 2"619 motion, the court construes the pleadings in the light most favorable to the nonmoving party and the motion should only be granted if there is no set of facts that would support a cause of action. Reynolds v. Jimmy John's Enterprises, LLC, 2013 IL App (4th) 120139, 31, 370 Ill.Dec. 628, 988 N.E.2d 984. Section 2"619 motions present questions of law, which we review de novo. Id. | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss assert an affirmative defense or other matter that avoids or defeats the claim? | Pretrial Procedure - Memo # 7479 - C - SKG_57519.docx | ROSS-003282252-ROSS-003282253 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7745 | Weaver v. The Ctr. Bus., 578 So. 2d 427 | 307A+590.1 | Under the prior version of rule 1.420(e), the test used to be, for record as well as nonrecord activity, whether it moved the cause forward towards ultimate resolution. Musselman Steel Fabricators, Inc. v. Radziwon, 263 So.2d 221 (Fla.1972); Duggar v. Quality Dev. Corp., 350 So.2d 816 (Fla. 2d DCA 1977); Whitney v. Whitney, 241 So.2d 436 (Fla. 2d DCA 1970), cert. denied, 245 So.2d 88 (Fla.1971). But, the amendment to the rule in 1976 laid down a "bright line" for record activity. Almost any discovery effort filed of record (unless patently repetitious) will preclude dismissal and a court can no longer inquire how well it advances the cause. Philips v. Marshall Berwick Chevrolet, Inc., 467 So.2d 1068 (Fla. 4th DCA 1985). | Almost any discovery effort filed of record will preclude dismissal for failure to prosecute, unless effort is patently repetitious; court will no longer inquire how well effort advances cause. West's F.S.A. RCP Rule 1.420(e). | Are discovery efforts sufficient to preclude dismissal unless they are patently repetitious? | 035599.docx | LEGALEASE-00147567-LEGALEASE-00147568 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 7746 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+622 | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed. | If a complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim, it will be dismissed. Rules Civ.Proc., Rule 12(b)(6). | What happens if a complaint pleads facts which deny the right to any relief on the alleged claim? | 11013.docx | LEGALEASE-00094583-LEGALEASE-00094584 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 7747 | Jones v. Vowell, 258 S.W.3d 383 | 307A+581 | Upon reviewing the parties' briefs and arguments, we agree with appellant that the trial court abused its discretion and that the dismissal of her case violated due process as well as Ark. R. Civ. P. 41(b). Rule 41(b) permits involuntary dismissal "in any case in which there has been a failure of the plaintiff to comply with these rules or any order of court or in which there has been no action shown on the record for the past 12 months...." The availability of dismissal for "inaction" or failure to prosecute is a tool for trial courts to dispose of cases "filed and forgotten." Prof. Adjustment Bureau, Inc. v. Strong, 275 Ark. 249, 251, 629 S.W.2d 284, 285 (1982). | The availability of dismissal for inaction or failure to prosecute is a tool for trial courts to dispose of cases "filed and forgotten." Rules Civ.Proc., Rule 41(b). | "Is the rule governing dismissal of a suit for failure to prosecute, a tool for trial courts to dispose of cases filed and forgotten?" | 11022.docx | LEGALEASE-00094475-LEGALEASE-00094476 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7748 | Goldberg v. Brooks, 409 Ill. App. 3d 106 | 307A+685 | In this case, Brooks' affidavit states that the bus duty is not part of the assigned duties of a teacher's assistant. However, she was paid additional money for the bus duty. Brooks also states it was her responsibility to supervise the students and to report any problems or unusual incidents to the principal. Similarly, Bradley merely passed the complaints from Brooks and a parent up the internal chain to Allen. Goldberg submitted no counteraffidavit or evidence creating a genuine issue of material fact on this issue. While affirmative matter must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. Harris v. News"Sun, 269 Ill.App.3d 648, 651, 206 Ill.Dec. 876, 646 N.E.2d 8 (1995). Accordingly, we conclude that Brooks and Bradley were immunized for providing information within the scope of their public employment. | While affirmative matter in motion for involuntary dismissal must be more than evidence offered to refute a well-pleaded fact, if facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. S.H.A. 735 ILCS 5/2-619. | When can the court accept the facts in the affidavit as true? | 11058.docx | LEGALEASE-00094143-LEGALEASE-00094144 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7749 | Fillmore v. Walker, 2013 IL App (4th) 120533 | 307A+561.1 | Generally, it is true that, if a defendant has an affirmative defense, the defendant must plead it as an affirmative defense (735 ILCS 5/2"602, 2"613(d) (West 2008)) on pain of forfeiting it. Haake v. Board of Education for Glenbard Township High School District 87, 399 Ill.App.3d 121, 140, 338 Ill.Dec. 800, 925 N.E.2d 297 (2010); Carlson v. City Construction Co., 239 Ill.App.3d 211, 243, 179 Ill.Dec. 568, 606 N.E.2d 400 (1992). Case law, however, recognizes an exception to that rule. If the affirmative defense already is apparent on the face of the complaint, the defendant need not plead the affirmative defense as an affirmative defense but instead may challenge the legal sufficiency of the complaint, pursuant to section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2008)). People ex rel. Casey v. Health & Hospitals Governing Comm'n, 69 Ill.2d 108, 113"14, 12 Ill.Dec. 695, 370 N.E.2d 499 (1977); R & B Kapital Development, LLC v. North Shore Community Bank & Trust Co., 358 Ill.App.3d 912, 921, 295 Ill.Dec. 95, 832 N.E.2d 246 (2005); Senese v. Climatemp, Inc., 222 Ill.App.3d 302, 317, 164 Ill.Dec. 236, 582 N.E.2d 1180 (1991) (the affirmative defense of laches can be raised in a section 2"615 motion for dismissal if "(1) an unreasonable delay appears on the face of the pleading, (2) no sufficient excuse for the delay appears or is pleaded, and (3) the motion specifically points out the defect"). | If an affirmative defense already is apparent on the face of the complaint, the defendant need not plead the affirmative defense as an affirmative defense but instead may challenge the legal sufficiency of the complaint. S.H.A. 735 ILCS 5/2-615. | Would the defendant plead the affirmative defense if an affirmative defense is apparent on the face of the complaint? | Pretrial Procedure - Memo # 7697 - C - KBM.docx | ROSS-003299994-ROSS-003299996 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7750 | O'Callaghan v. Satherlie, 2015 IL App (1st) 142152 | 307A+561.1 | We first address their contention that we must reverse the dismissal of this action because the motion to dismiss was improperly filed under section 2"615, rather than section 2"619. A motion to dismiss under section 2"615 challenges a complaint's legal sufficiency based on defects apparent on the face of the complaint. Khan, 2012 IL 112219, 47, 365 Ill.Dec. 517, 978 N.E.2d 1020. In ruling on a section 2"615 motion to dismiss, the court must accept all well-pleaded facts, as well as any reasonable inferences to be drawn therefrom, as true. Id. The court can also consider judicial admissions in the record and matters of which the court is entitled to take judicial notice. K. Miller Construction Co. v. McGinnis, 238 Ill.2d 284, 291, 345 Ill.Dec. 32, 938 N.E.2d 471 (2010). As a result, a defendant may properly raise an affirmative defense in a section 2"615 motion if the defense is apparent from the face of the complaint. Id. at 292, 345 Ill.Dec. 32, 938 N.E.2d 471; R & B Kapital Development, LLC, v. North Shore Community Bank & Trust Co., 358 Ill.App.3d 912, 921, 295 Ill.Dec. 95, 832 N.E.2d 246 (2005). Similarly, although a defendant generally must plead an affirmative defense or face forfeiture, a defendant need not do so and instead may raise the affirmative defense in a section 2"615 motion if the affirmative defense is apparent from the face of the complaint. Fillmore v. Walker, 2013 IL App (4th) 120533, 28, 372 Ill.Dec. 33, 991 N.E.2d 340 | Although a defendant generally must plead an affirmative defense or face forfeiture, a defendant need not do so and instead may raise the affirmative defense in a motion to dismiss on the pleadings if the affirmative defense is apparent from the face of the complaint. S.H.A. 735 ILCS 5/2-615. | Would the defendant plead the affirmative defense if an affirmative defense is apparent on the face of the complaint? | 10321.docx | LEGALEASE-00095601-LEGALEASE-00095603 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7751 | Fillmore v. Walker, 2013 IL App (4th) 120533 | 307A+561.1 | Generally, it is true that, if a defendant has an affirmative defense, the defendant must plead it as an affirmative defense (735 ILCS 5/2"602, 2"613(d) (West 2008)) on pain of forfeiting it. Haake v. Board of Education for Glenbard Township High School District 87, 399 Ill.App.3d 121, 140, 338 Ill.Dec. 800, 925 N.E.2d 297 (2010); Carlson v. City Construction Co., 239 Ill.App.3d 211, 243, 179 Ill.Dec. 568, 606 N.E.2d 400 (1992). Case law, however, recognizes an exception to that rule. If the affirmative defense already is apparent on the face of the complaint, the defendant need not plead the affirmative defense as an affirmative defense but instead may challenge the legal sufficiency of the complaint, pursuant to section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2008)). People ex rel. Casey v. Health & Hospitals Governing Comm'n, 69 Ill.2d 108, 113"14, 12 Ill.Dec. 695, 370 N.E.2d 499 (1977); R & B Kapital Development, LLC v. North Shore Community Bank & Trust Co., 358 Ill.App.3d 912, 921, 295 Ill.Dec. 95, 832 N.E.2d 246 (2005); Senese v. Climatemp, Inc., 222 Ill.App.3d 302, 317, 164 Ill.Dec. 236, 582 N.E.2d 1180 (1991) (the affirmative defense of laches can be raised in a section 2"615 motion for dismissal if "(1) an unreasonable delay appears on the face of the pleading, (2) no sufficient excuse for the delay appears or is pleaded, and (3) the motion specifically points out the defect"). | If an affirmative defense already is apparent on the face of the complaint, the defendant need not plead the affirmative defense as an affirmative defense but instead may challenge the legal sufficiency of the complaint. S.H.A. 735 ILCS 5/2-615. | What will the defendant need to do if an affirmative defense is apparent on the face of the complaint? | Pretrial Procedure - Memo # 7733 - C - KBM.docx | ROSS-003286613-ROSS-003286614 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 7752 | Schroeder v. RGIS, 2013 IL App (1st) 122483 | 307A+561.1 | We note initially that defendant filed its motion pursuant to section 2"619.1 of the Code, which allows for combined motions to dismiss. 735 ILCS 5/2"619.1 (West 2010). Due to our ultimate conclusion in this case, we need not address defendant's argument, brought pursuant to section 2"615 of the Code (735 ILCS 5/2"615 (West 2010)), that plaintiff failed to state a claim upon which relief can be granted. A motion to dismiss brought pursuant to section 2"619(a)(9) of the Code allows for the involuntary dismissal of a complaint when the "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2010). When proceeding under section 2"619 of the Code, the legal sufficiency of the complaint is admitted. | When proceeding under Code of Civil Procedure section allowing dismissal of complaint when claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim, the legal sufficiency of the complaint is admitted. S.H.A. 735 ILCS 5/2-619. | When will the legal sufficiency of the complaint be admitted? | 11210.docx | LEGALEASE-00094097-LEGALEASE-00094098 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7753 | Trzop v. Hudson, 2015 IL App (1st) 150419 | 307A+561.1 | "A motion to dismiss, pursuant to section 2"619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006); Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). For a section 2"619 dismissal, our standard of review is de novo. Solaia Technology, 221 Ill.2d at 579, 304 Ill.Dec. 369, 852 N.E.2d 825. De novo review means that we will perform the same analysis a trial court would perform. Khan v. BDO Seidman, LLP, 408 Ill.App.3d 564, 578, 350 Ill.Dec. 63, 948 N.E.2d 132 (2011). "Under the de novo standard of review, this court owes no deference to the trial court." People v. Williams, 2013 IL App (1st) 111116, 377 Ill.Dec. 636, 2 N.E.3d 552 (citing Townsend v. Sears, Roebuck & Co., 227 Ill.2d 147, 154, 316 Ill.Dec. 505, 879 N.E.2d 893 (2007)). In ruling on a section 2"619 motion to dismiss, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. Van Meter v. Darien Park District, 207 Ill.2d 359, 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim. S.H.A. 735 ILCS 5/2-619. | Will a motion for involuntary dismissal based on an affirmative matter admit the legal sufficiency of the complaint? | 11216.docx | LEGALEASE-00094297-LEGALEASE-00094298 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7754 | Grosso v. HSBC Bank USA, N.A., 195 So. 3d 393 | 266+1798 | On appeal, the Borrower urges this court to hold that closing the case for lack of record activity was equivalent to dismissing an action for failure to prosecute under Florida Rule of Civil Procedure 1.420(e). Under the Rule, before dismissing an action for failure to prosecute, the court is required to provide notice so the parties have the opportunity to "re-commence prosecution of the action to avert dismissal." In re Amendments to The Florida Rules of Civil Procedure (Two Year Cycle), 917 So.2d 176, 182 (Fla.2005) (Bell, J., concurring). | Trial court, after foreclosure action against borrower was voluntarily dismissed and reopened when borrower filed motion for costs, was not required to provide notice so parties had opportunity to re-commence prosecution before deeming borrower's motion abandoned and closing case; borrower's request was "motion" and was not "action" under rule regarding dismissal for failure to prosecute. West's F.S.A. RCP Rules 1.100(b), 1.420(d, e). | "Is the court required to provide notice so the parties have the opportunity to re-commence prosecution of the action to avert dismissal, before dismissing an action for failure to prosecute?" | 036112.docx | LEGALEASE-00148046-LEGALEASE-00148047 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 7755 | Scharlin v. Broward Cty. Prop. Appraisal Adjustment Bd., 500 So. 2d 345 | 307A+590.1 | We reject the appellees' contention that the date of service determines the time of the last record activity. It is the date of filing that commences and concludes the running of the one-year period. See Collado v. C & C Cattle Co., 415 So.2d 901 (Fla. 3d DCA 1982); Florida East Coast Railway Co. v. Russell, 398 So.2d 949 (Fla. 4th DCA), rev. denied, 411 So.2d 381 (Fla.1981). | It is date of filing that commences and concludes running of one-year period without record activity required for dismissal for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | Is it the date of filing that commences and concludes a running of the one-year period without record activity required for dismissal for failure to prosecute? | 036213.docx | LEGALEASE-00147521-LEGALEASE-00147522 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 7756 | Vaswani v. Ganobsek, 402 So. 2d 1350 | 307A+681 | Viewing the case as it is framed by the pleadings, the relevant question is whether the court in ruling on a motion to dismiss the complaint could properly consider the affirmative defense of res judicata when the defense did not appear on the face of the complaint. We answered this question in the negative in Frank v. Campbell Property Management, Inc., 351 So.2d 364 (Fla. 4th DCA 1977). The law is well-settled that on a motion to dismiss a trial court must look solely to the allegations of the complaint. Id. If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such defense can be considered on a motion to dismiss. Fla.R.Civ.P. 1.110(d). Otherwise an affirmative defense may not be considered on a motion to dismiss a complaint. Temples v. Florida Industrial Construction Co., Inc., 310 So.2d 326 (Fla.2d DCA 1975). | On motion to dismiss trial court must look solely to allegations of complaint; thus, if face of complaint contains allegations which demonstrate existence of affirmative defense, such defense can be considered on motion to dismiss, otherwise, affirmative defense may not be considered on motion to dismiss complaint. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.110(d). | When will a defense be considered on a motion to dismiss? | 036230.docx | LEGALEASE-00147588-LEGALEASE-00147589 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7757 | People v. O'Brien, 130 Cal. 1 | 352H+395 | On this state of the record, the court instructed the jury that "the law presumes a woman to be chaste until the contrary is shown"; and further instructed them in effect that they might find on this presumption against the declarations of any number of witnesses that did not produce conviction in their minds. The instruction was based on the supposed authority of People v. Kehoe, as reported in 55 Pac. 912, where such language is used. But the passage does not occur in the opinion as reported in 123 Cal. 229; and it must be presumed the omission was intentional. Code Civ. Proc. " 1875. That there may be an inference of the chastity of a woman by the jury, and that the jury, in the absence of evidence to the contrary, should so infer, must be admitted. Id. "" 1958, 1960. But a presumption, by which in our Code is meant a presumption of law, is a different thing. In the former case the jury are the exclusive judges of the weight and validity of the inference; in the latter, they are bound by the presumption unless controverted by other evidence. Id. " 1961. Whether, in any case, there is a legal presumption, as opposed to an inference, of the previous chastity of a woman, need not be determined; but, as against the presumption of the innocence of one accused of crime, there can be no such presumption. "There cannot be two presumptions in a criminal case. The accused is presumed to be innocent until his guilt is established beyond a reasonable doubt." People v. Douglass, 100 Cal. 6, 34 Pac. 490; Same v. Strassman, 112 Cal. 687, 45 Pac. 3; Hunter v. Hunter, 111 Cal. 261, 43 Pac. 756, 31 L. R. A. 411. Accordingly in People v. Krusick, 93 Cal. 74, 28 Pac. 794, a substantially similar instruction was held to be erroneous; and in Same v. Roderigas, 49 Cal. 11, it is said, referring to the fact of previous chaste character: "It is not a presumption of mere law to be indulged against the counter presumption of the innocence of the prisoner on trial upon a charge of | Where there was evidence tending to prove the prosecutrix, in a prosecution for rape, had been unchaste, and also tending to prove specific acts of unchastity, an instruction that the law presumes a woman to be chaste until the contrary is shown, and that on this presumption they might find the prosecutrix of chaste character, even against the declarations of any number of witnesses which did not produce conviction in their minds, was improper, since, while the jury might infer her chastity as a matter of fact, a presumption of law to that effect conflicts with the controlling presumption of defendant's innocence. | Is a complaining rape witness presumed to be of chaste character? | 042948.docx | LEGALEASE-00147922-LEGALEASE-00147923 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7758 | McDevitt & St. Co. v. Trammell, 193 Ga. App. 646 | 413+1086 | Central to disposition of this appeal is whether the State Board of Workers' Compensation has authority to remit a case to the superior court, without appeal by a party. Workers' compensation law is statutory in origin and procedure, Continental Ins. Co. v. McDaniel, 118 Ga.App. 344, 345, 163 S.E.2d 923, and " "[t]he [full board] is an administrative body and it possesses only the jurisdiction, power, and authority granted to it by the legislature." Robinson v. Zurich Ins. Co., 131 Ga.App. 795, 796 (207 SE2d 209)." McGinty v. Alfred Simpson & Co., 188 Ga.App. 718, 719-720, 374 S.E.2d 217. | Workers' compensation law is statutory in origin and procedure, and the State Board of Workers' Compensation possesses only the jurisdiction, power, and authority granted to it by the legislature. | "Is the full board under the workers compensation law an administrative body that possesses only the jurisdiction, power, and authority granted to it by the legislature?" | 11462.docx | LEGALEASE-00094479-LEGALEASE-00094480 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7759 | U S v. Levine, 129 F.2d 745 | 63+3 | It has several times been held that the bribed employee need not be one invested with the power of final decision, "But that he was one within the class charged with making preliminary investigation" is enough. Whitney v. United States, supra, 99 F.2d at page 330. It has been recognized that "final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice." Sears v. United States, supra, 264 F. at page 261. See, also, United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930. Surely the avoidance of the investigation upon which final action would depend in as much included as would be falsification of the facts elicited from the investigation. | Under statute prohibiting federal officials from accepting bribes, bribed employee need not be one invested with the power of final decision, it being sufficient if he is one within class charged with making preliminary investigation. Cr.Code S 117, 18 U.S.C.A. S 202. | "For purposes of a conviction under the federal anti-bribery statute, does the bribed individual need to be the one invested with the power of final decision?" | 012446.docx | LEGALEASE-00148276-LEGALEASE-00148277 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 7760 | State v. Kouba, 319 N.W.2d 161 | 200+167 | The next issue which we will address is whether or not Mr. Kouba has an inalienable right to drive on the highways of North Dakota. We have consistently held that no such right exists. We have recognized the importance of the driving privilege in our society today, but we have said that the privilege cannot be granted without limitations as to its continuance. Asbridge v. North Dakota State Highway Commissioner, 291 N.W.2d 739. The use of the public highways is not an absolute right which everyone has, and of which a person cannot be deprived; it is instead a privilege which a person enjoys subject to the control of the State in its valid exercise of its police power. (Timm v. State, 110 N.W.2d 359) | Use of public highways is not absolute right which everyone has, and of which person cannot be deprived; it is instead a privilege which person enjoys subject to control of the state in its valid exercise of its police power. | Is right to use the public highways an absolute right? | Highways -Memo 250-IS_57966.docx | ROSS-003319148-ROSS-003319149 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 7761 | Palmer v. Crews, 203 Miss. 806 | 260+79.1(2) | In the outset, it is to be conceded that a royalty is an interest in real estate, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom. But the question here is whether or not the use of the term "all my royalties' by this testator in his will would encompass the leases of oil, gas and other minerals which he owned outright, and the minerals in place which he had acquired by deed. | A "royalty" is an interest in real estate entitling the royalty owner to a share in the production of oil, gas or other minerals therefrom. | "Is a royalty an interest in real estate entitling the royalty owner to a share in the production of oil, gas, or other minerals?" | Mines and Minerals - Memo #318 - C - CSS_57769.docx | ROSS-003285050 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7762 | Saul v. Cahan, 153 A.D.3d 947 | 184+7 | The Supreme Court properly granted that branch of Cahan's motion which was to dismiss the cause of action to recover damages for breach of fiduciary duty for failure to state a cause of action. "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" (Rut v. Young Adult Inst., Inc., 74 A.D.3d 776, 777, 901 N.Y.S.2d 715; see Litvinoff v. Wright, 150 A.D.3d 714, 54 N.Y.S.3d 22; Stortini v. Pollis, 138 A.D.3d 977, 978"979, 31 N.Y.S.3d 90; Deblinger v. Sani"Pine Prods. Co., Inc., 107 A.D.3d 659, 660, 967 N.Y.S.2d 394 ). "A cause of action sounding in breach of fiduciary duty must be pleaded with particularity under CPLR 3016(b)" (Swartz v. Swartz, 145 A.D.3d 818, 823, 44 N.Y.S.3d 452; see Deblinger v. Sani"Pine Prods. Co., Inc., 107 A.D.3d at 660, 967 N.Y.S.2d 394). | The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. | "Is the existence of a fiduciary relationship, an element of a cause of action to recover damages for breach of fiduciary duty?" | 023594.docx | LEGALEASE-00148193-LEGALEASE-00148194 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7763 | Jefferson Apartments v. Mauceri, 52 Misc. 3d 1012 | 302+18 | The branch of the motion which is to dismiss the thirteenth cause of action, to wit, fraud, is denied. "The elements of a cause of action sounding in fraud are a material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages" (Mitchell v. Diji, 134 A.D.3d 779, 780, 22 N.Y.S.3d 464 [2015], citing Introna v. Huntington Learning Ctrs., Inc., 78 A.D.3d 896, 898, 911 N.Y.S.2d 442 [2010]; see, Fromowitz v. W. Park Assoc., Inc., 106 A.D.3d 950, 951, 965 N.Y.S.2d 597 [2013] ). In order to plead a prima facie case of fraud, a plaintiff must allege each of the elements of fraud with particularity and must support each element with an allegation of fact (see, CPLR 3016[b]; Lanzi v. Brooks, 54 A.D.2d 1057, 388 N.Y.S.2d 946 [1976], aff'd, 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 [1977], motion to amend the remittitur granted, 43 N.Y.2d 947, 403 N.Y.S.2d 896, 374 N.E.2d 1247 [1978] ). This requirement "should not be confused with unassailable proof of fraud," and "may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct" (Pludeman v. Northern Leasing Sys., Inc., 10 N.Y.3d 486, 492, 860 N.Y.S.2d 422, 890 N.E.2d 184 [2008]; see, Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 [2009] ). | In order to plead a prima facie case of fraud, a plaintiff must allege each of the elements of fraud with particularity and must support each element with an allegation of fact. McKinney's CPLR 3016(b). | Should a plaintiff allege each of the elements of fraud to plead a prima facie case of fraud? | 023604.docx | LEGALEASE-00148532-LEGALEASE-00148533 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 7764 | Bertrand v. State ex rel. Dep't of Transp. & Dev., 838 So. 2d 136 | 307A+590.1 | The July 8, 1999 and December 7, 1999 filings by DOTD removing and enrolling counsel are not considered formal steps in the prosecution of the suit although they appear of record. Brown v. City of Shreveport Urban Dev., 34,657 (La.App. 2 Cir. 5/9/01), 786 So.2d 253. Thus, in the period between the May 6, 1998 Article 1313 certificate filed by DOTD and the March 15, 2002 interrogatories filed by Ms. Bertrand, there were no steps taken in the prosecution of Ms. Bertrand's claim would interrupt the three-year prescriptive period. Additionally, any step taken by a plaintiff after the three-year period has run is ineffective to prevent a judgment of dismissal from being granted. Clark, 785 So.2d 779. Therefore, Ms. Bertrand cannot claim any benefit from the March 15, 2002 filing. We find that Ms. Bertrand failed to establish that she had not abandoned her claim and, therefore, find no merit in her third assignment of error. | Any step taken by plaintiff after three-year abandonment period has run is ineffective to prevent judgment of dismissal from being granted. LSA-C.C.P. art. 561, subd. A(1). | Is any step taken by a plaintiff after three-year abandonment period has run ineffective to prevent judgment of dismissal from being granted? | Pretrial Procedure - Memo # 7792 - C - SK_57816.docx | ROSS-003294406-ROSS-003294407 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7765 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564 | 307A+581 | To succeed in a motion to dismiss for failure to prosecute, the movant must prove the plaintiff has unusually or unreasonably delayed prosecution. Lake Meredith Reservoir Co., 698 P.2d at 1344. Once unreasonable delay is established, the plaintiff must show mitigating circumstances or a reasonable for the delay; "however, an unusual delay in prosecution justifies an exercise of the trial court's discretion in dismissing an action." Id. | To succeed in a motion to dismiss for failure to prosecute, the movant must prove the plaintiff has unusually or unreasonably delayed prosecution. | "Should a movant prove that plaintiff has unusually or unreasonably delayed prosecution, to succeed in a motion to dismiss for failure to prosecute?" | Pretrial Procedure - Memo # 8003 - C - DHA_58359.docx | ROSS-003320115-ROSS-003320116 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7766 | Carlisle v. U.S., 83 U.S. 147 | 384+1 | By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives. It may be an absolute and permanent obligation, or it may be a qualified and temporary one. The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. The alien, whilst domiciled in the country, owes a local and temporary allegiance, which continues during the period of his residence. | A citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | When does a citizen or subject owe an absolute and permanent allegiance to his government or sovereign? | 047125.docx | LEGALEASE-00148851-LEGALEASE-00148852 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7767 | Kirschner v. Conklin, 40 Conn. 77 | 83E+470 | In the case of Church v. Barlow, 9 Pick., 547, the court held that the relative rights and duties of parties who indorsed a promissory note for the accommodation of the maker are the same as in the case of a business note, so that the notice of the dishonor of such accommodation note having been given, a subsequent endorser who takes up the note may recover of a prior indorser the whole amount paid, and not merely a contribution as in the case of sureties.The doctrine of this case is fully sustained by the following authorities: Shaw v. Knox, 98 Mass., 214; M'Donald v. Magruder, 3 Peters, 470; Wood v. Repold, 3 Harris & J., 125; Brown v. Mott, 7 Johns., 361; Clapp v. Rice, 13 Gray, 403; Howe v. Merrill, 5 Cush., 88; Talcott v. Cogswell, 3 Day, 512; Johnson v. Crane, 16 N. Hamp., 68. | A subsequent indorser of a promissory note, who pays it, may recover of a prior indorser the whole amount paid, and not merely a contribution, as in the case of sureties. | Can a subsequent endorser or indorser of a promissory note recover the whole amount paid from a prior indorser? | 009688.docx | LEGALEASE-00149758-LEGALEASE-00149759 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7768 | Odum v. D.C., 565 A.2d 302 | 396+1 | In Kinoy v. District of Columbia, supra, the United States Court of Appeals for the District of Columbia Circuit made clear that a conviction under the quoted portion of " 22-1107 requires both "congregat [ing] and assembl[ing]" and the commission of one of the additional acts set forth (e.g., "engag[ing] in loud and boisterous talking" or "crowd[ing], obstruct[ing], or incommod[ing]"). The court distinguished these enumerated acts from others set forth later in the statute, as to which there is no predicate requirement of congregating and assembling. 130 U.S.App.D.C. at 295 n.8, 400 F.2d at 766 n.8. The court also appended to its decision, expressing "substantial agreement" with, an unpublished opinion by Judge Murphy of the Superior Court holding that conviction under the unlawful assembly portion of " 22-1107 requires the conjunction of an assembly (by three or more persons) for an unlawful purpose and one of the enumerated disorderly acts. Judge Murphy in turn had relied on an earlier opinion of the United States Court of Appeals holding-in the specific context of a charge of unlawful assembly and incommoding the free use of a sidewalk-that both concerted presence for an unlawful purpose and the commission of a listed "overt" act are necessary for conviction under the statute. 400 F.2d at 770, quoting Hunter v. District of Columbia, 47 App.D.C. 406, 409 (1918). Thus, as Kinoy and Hunter make apparent, appellant's conviction for unlawful assembly required proof of two things: (1) "the presence of three or more persons acting in concert for an unlawful purpose," Kinoy, supra, 130 U.S.App.D.C. at 299, 400 F.2d at 770; and (2) commission of the act of incommoding alleged in the information. In light of those decisions, we cannot accept the trial court's analysis uncoupling the elements of unlawful assembly and incommoding. | Conviction for unlawful assembly for purpose of incommoding free use of driveway required both proof of presence of three or more persons acting in concert for unlawful purpose and proof of commission of act of incommoding. D.C.Code 1981, S 22-1107. | Does conviction for unlawfully assembly require the presence of three or more persons acting in concert for an unlawful purpose? | 014438.docx | LEGALEASE-00149599-LEGALEASE-00149600 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 7769 | Riddle v. State Highway Comm'n, 184 Kan. 603 | 200+165 | The legislature has plenary power over highways and their use may be limited, controlled and regulated in the exercise of the police power whenever necessary to promote the safety and general welfare of the people(State ex rel. Arn v. State Commission of Revenue and Taxation, 163 Kan. 240, 247, 181 P.2d 532; 25 Am.Jur., Highways, "" 253, 254, pp. 544, 545; State v. Atkin, 64 Kan. 174, 67 P. 519, 97 Am.St.Rep. 343, affirmed Atkin v. State of Kansas, 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148; 40 C.J.S. Highways " 232 pp. 240-244). Thus, the regulation of traffic under the police power includes such things as prohibiting left turns, prescrbing one-way traffic (prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways (State Highway Commission v. Burk , 200 Or. at page 230, 265 P.2d at page 792). | Legislature has plenary power over highways and their use may be limited, controlled and regulated in the exercise of police power whenever necessary to promote the safety and general welfare of the people. | Can there be limitation or exception on the plenary power of the legislature over highways? | 019276.docx | LEGALEASE-00149485-LEGALEASE-00149486 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7770 | Temple v. Guideone Specialty Mut. Ins. Co., 330 S.W.3d 318 | 307A+581 | A dismissal for want of prosecution is not intended to be an adjudication of the merits of the case or the rights of the parties; it merely returns the parties to the position that they were in before suit was filed. In rendering judgment dismissing a lawsuit for want of prosecution, a trial court must refrain from rendering judgment on the merits of the lawsuit. If the order dismissing for want of prosecution purports to make any disposition on the merits, it is error. Accordingly, we hold that the inclusion of the Mother Hubbard clause and the allocation of costs in the instant case was error. We sustain the church's third issue and modify the trial court's judgment to delete the allocation of costs in favor of Guideone and the phrase, "All relief not expressly granted herein is denied." | A dismissal for want of prosecution is not intended to be an adjudication of the merits of the case or the rights of the parties; it merely returns the parties to the position that they were in before suit was filed. | "Is a dismissal for want of prosecution, intended to be an adjudication of the merits of the case or the rights of the parties?" | Pretrial Procedure - Memo # 7999 - C - DHA_58355.docx | ROSS-003296789-ROSS-003296790 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7771 | Smith v. Kowalski, 223 Mich. App. 610 | 30+3809(1) | Summary disposition is proper under MCR 2.116(C)(7) for a claim that is barred because of immunity granted by law. When reviewing a grant of summary disposition on the ground that the claim is barred by governmental immunity, this Court considers all documentary evidence submitted by the parties. Codd v. Wayne Co., 210 Mich.App. 133, 134, 537 N.W.2d 453 (1995). All well-pleaded allegations are accepted as true and construed in favor of the nonmoving party. Id. To survive a motion for summary disposition, brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity. Codd supra at 134"135, 537 N.W.2d 453. | When reviewing grant of summary disposition on ground that claim is barred by governmental immunity, Court of Appeals considers all documentary evidence submitted by the parties. MCR 2.116(C)(7). | Is summary disposition appropriate if a claim is barred because of immunity granted by law? | 036721.docx | LEGALEASE-00149998-LEGALEASE-00149999 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 7772 | Pac. R. Co. v. Maguire, 87 U.S. 36 | 371+2286 | The right of taxation is a sovereign right, and presumptively belongs to the State in regard to every species of property and to an unlimited extent. The right may be waived in particular instances, but this can only be done by a clear expression of the legislative will. The cases of Tomlinson v. Branch,1 and Tomlinson v. Jessup,2 in this court, and many others referred to in those cases, show that when a contract of exemption from taxation is thus established it is binding upon the State, and the action of the State in the passage of laws violating its terms will not be sustained.3 The principles of law are sufficiently settled. The real question arises upon their application to the facts of the case. | The right of taxation is a sovereign right and presumptively belongs to the state in regard to every species of property and to an unlimited extent but may be waived in particular instances by a clear expression of the legislative will. | Is the right of taxation a sovereign right of states? | 045907.docx | LEGALEASE-00149291-LEGALEASE-00149292 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 7773 | Bilodeau v. Oliver Stores Inc., 116 N.H. 83 | 413+2190 | The rights and remedies under RSA ch. 281 are purely statutory. The nature and extent of compensation to the injured employee as well as the extent and manner by which a compensation payor can be reimbursed is governed by the express statutory language and that which can be fairly implied therefrom. Hagerty v. Great American Ind. Co., 106 N.H. 425, 427, 213 A.2d 424, 425 (1965). | Nature and extent of compensation to injured employee as well as the extent and manner by which a compensation payor can be reimbursed is governed by the express statutory language and that which can be fairly implied therefrom. RSA 281:1 et seq., 281:14. | What is the nature and extent of compensation to an injured employee governed by? | 048362.docx | LEGALEASE-00149183-LEGALEASE-00149184 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7774 | Cantwell v. State of Connecticut, 310 U.S. 296 | 129+109 | The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious. Equally obvious is it that a state may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions. Here we have a situation analogous to a conviction under a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application | The state has power to prevent or punish when clear and present danger of riot, disorder, interference with traffic upon public streets, or other immediate threat to public safety, peace or order, appears, but state may not unduly suppress free communication of views, religious or other, under guise of conserving desirable conditions. | "Can the state unduly suppress free communication of views, religious or other, under guise of conserving desirable conditions?" | 014337.docx | LEGALEASE-00150714-LEGALEASE-00150715 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 7775 | City of Cleveland v. Egeland, 26 Ohio App. 3d 83 | 129+108 | While the defendants explained their conscientious motives for their conduct, they did not rebut the city's evidence that they violated this ordinance. While they may have considered their actions most reasonable, their conduct served no "lawful and reasonable purpose." (Emphasis added.) One who voluntarily lies in the street with knowledge that he will thereby divert traffic and without a legal privilege to do so is not acting in a "lawful" manner. See R.C. 4511.74. | One who voluntarily lies in street with knowledge that he will thereby divert traffic and without legal privilege to do so is not acting in lawful manner. R.C. S 4511.74. | Whether a person who lays on the street with knowledge that he will divert traffic acts in lawful manner? | 014339.docx | LEGALEASE-00150746-LEGALEASE-00150747 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7776 | Haegert v. McMullan, 953 N.E.2d 1223 | 141E+1160 | "[C]omplaints made by a current student pursuant to a university anti-harassment policy are protected by an absolute privilege and cannot serve as the basis for civil liability to a person who is the subject of the complaint." Hartman v. Keri, 883 N.E.2d 774, 775 (Ind.2008). We believe that it would not be a difficult stretch to find in the present case that a complaint made by a faculty member against another faculty member pursuant to a university's no-tolerance harassment policy is protected by an absolute privilege and cannot serve as the basis for civil liability to a person who is the subject of the complaint. | Complaints made by a current student pursuant to a university anti-harassment policy are protected by an absolute privilege and cannot serve as the basis for civil liability to a person who is the subject of the complaint. | Are complaints made by students protected by an absolute privilege? | 017042.docx | LEGALEASE-00150718-LEGALEASE-00150719 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7777 | K's Merch. Mart v. Northgate Ltd. P'ship, 359 Ill. App. 3d 1137 | 156+14 | A party who executes an estoppel certificate should not be allowed to raise claims of which it knew or should have known at the time the certificate was executed. A party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist. On the other hand, an adverse party may not use an estoppel certificate as a device to make undisclosed changes to the lease. Those who prepare estoppel certificates should be encouraged to make specific reference to known items of dispute, not rely on all-encompassing language of waiver. | A party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist. | Is a party who executes an estoppel certificate that there are no defaults under a duty to inquire and determine what claims exist? | 017984.docx | LEGALEASE-00150612-LEGALEASE-00150613 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7778 | Kruse v. Schieve, 61 Wis. 2d 421 | 302+20 | However, in the case before us, we have an admitted commingling of three different theories of the case in a single cause of action in a single complaint. We do not have three causes of action so that demurrers to two could be sustained, demurrer to the third overruled and the matter proceed to trial. The commingling of theories is in effect an allegation of alternative theories in a single count. Such allegations are construed as pleading only the least, rather than the greatest allegation, and are fatally defective if the least allegation does not state a cause of action. The defendant is entitled to answer or respond to a complaint that alleges solely negligence of the corporate officer, acting in the capacity of a coemployee, for failing to exercise ordinary care, under the circumstances, to a fellow employee under common-law negligence principles. We doubt that a motion to make more definite and certain can make one poached egg out of three eggs so completely scrambled. So we reverse the trial court overruling of the demurrer of defendant Schieve. Instead, we grant defendant's demurrer, with leave granted to the plaintiffs in this action to plead over and file an amended complaint. | Allegations of alternative theories in a single count are construed as pleading only the least, rather than the greatest allegation, and are fatally defective if the least delegation does not state a cause of action. | Are allegations of alternative theories in a single count construed as pleading only the least? | 023652.docx | LEGALEASE-00150206-LEGALEASE-00150207 | Order, SA, Sub | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 7779 | Woods v. D.C., 63 A.3d 551 | 307A+622 | To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim. Chamberlain v. American Honda Fin. Corp., 931 A.2d 1018, 1023 (D.C.2007). This court reviews de novo an order granting a motion to dismiss. Id. at 1022. The court "accepts the allegations in the complaint as true and views all facts and draws all reasonable inferences in favor of the plaintiff ." Hillbroom v. PricewaterhouseCoopers LLP, 17 A.3d 566, 572 (D.C.2011). | To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim. | "To survive a motion to dismiss, should a plaintiff's complaint set forth sufficient information to outline the elements of his claim?" | 036684.docx | LEGALEASE-00150312-LEGALEASE-00150313 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7780 | Lowery v. Lowery, 654 So. 2d 1218 | 307A+533 | We must again note that a motion to dismiss is not to be used as a substitute for a motion for judgment on the pleadings or a motion for summary judgment. Mettler, Inc. v. Ellen Tracy, Inc., 648 So.2d 253, 255 (Fla. 2d DCA 1994); Holland v. Anheuser Busch, Inc., 643 So.2d 621 (Fla. 2d DCA 1994). A motion to dismiss is designed to test the legal sufficiency of a complaint, not to determine issues of fact. | Motion to dismiss is not to be used as substitute for motion for judgment on the pleadings or motion for summary judgment; motion to dismiss is designed to test legal sufficiency of complaint but not to determine issues of fact. | Is the purpose of a motion to dismiss is to test the legal sufficiency of a complaint and not to determine factual issues? | Pretrial Procedure - Memo # 8352 - C - KI.docx | LEGALEASE-00040224-LEGALEASE-00040225 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7781 | Enriquez v. Livingston, 400 S.W.3d 610 | 307A+583 | A trial court has authority to dismiss a case for want of prosecution either (1) under Rule 165a of the Texas Rules of Civil Procedure (for failure to appear for any hearing or trial or for failure to dispose of the case within the time standards promulgated by the supreme court under its administrative rules), or (2) under the court's inherent power under the common law. Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). Whichever source of authority the court uses, the plaintiff must be provided with "notice and an opportunity to be heard." Id. A failure to provide adequate notice of the court's intent to dismiss for want of prosecution requires reversal. Id. The central question as to this issue is what constitutes "adequate notice." | Dismissal of inmate's action against Department of Criminal Justice officials, for allegedly refusing him access to adequate medical treatment, was not based on Civil Procedure Rule, governing dismissal for want of prosecution, but, rather, on the trial court's inherent power to dismiss a suit for want of prosecution, and accordingly, the notice of dismissal did not need to satisfy the specific requirements of Rule, but, rather, merely needed to be adequate to satisfy due process; dismissal notice did not reference Civil Procedure Rule, and in the dismissal notice, there was no mention of a requirement to appear for any hearing or any mention of a failure to abide by the time standards in the Supreme Court's administrative rules, and court's dismissal order recited that the case was pending for fifteen months without service of citation or filing of answer. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | What sources does the court's authority to dismiss for want of prosecution stem from? | 036969.docx | LEGALEASE-00150292-LEGALEASE-00150293 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 7782 | Dobroslavic v. Bexar Appraisal Dist., 397 S.W.3d 725 | 307A+583 | A trial court's authority to dismiss for want of prosecution has two sources: Rule 165a of the Texas Rules of Civil Procedure and the trial court's inherent power. Scoville v. Shaffer, 9 S.W.3d 201, 203 (Tex.App.-San Antonio 1999, no pet.). First, under Rule 165a, a trial court may dismiss on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," Tex.R. Civ. P. 165a(1), or when a case is "not disposed of within the time standards promulgated by the Supreme Court.." Tex.R. Civ. P. 165a(2). Second, under the common law, the trial court has the inherent power to dismiss when a plaintiff fails to prosecute his case with due diligence. Scoville, 9 S.W.3d at 203. This authority stems from the trial court's power to maintain and control its docket. Maida v. Fire Ins. Exch., 990 S.W.2d 836, 839 (Tex.App.-Fort Worth 1999, no pet.). | Plaintiffs received adequate notice of trial court's intent to dismiss for want of prosecution either under the rules of civil procedure for failure to comply with time standards established by the Texas Supreme Court or under the trial court's inherent authority, where the trial court clerk's notice did not make dismissal contingent on plaintiffs' failure to make an announcement, and the notice expressly stated that plaintiffs' case had been "on file for an extended period of time," that it had "not been prosecuted," that "the court (was) of the opinion that in accordance with the Supreme Court guidelines" the case should be "specially set for dismissal," and that the case would be dismissed "unless good and sufficient cause" was "shown for (its) retention on the docket." Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(2). | What sources does the court's authority to dismiss for want of prosecution stem from? | Pretrial Procedure - Memo # 8363 - C - BP.docx | LEGALEASE-00040244-LEGALEASE-00040245 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 7783 | Prompt Air v. Firewall Forward, 303 Ill. App. 3d 126 | 307A+561.1 | Section 2-619(a)(9) of the Code permits a defendant to seek an order of dismissal based upon evidentiary material establishing that the claim asserted against it is barred by "affirmative matter" avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(9) (West 1996). However, in the context of section 2-619(a)(9), "affirmative matter" must be something more than evidence offered to refute the allegations contained in the complaint, which allegations must be taken as true for the purposes of a motion to dismiss. Bucci v. Rustin, 227 Ill.App.3d 779, 782, 169 Ill.Dec. 810, 592 N.E.2d 297 (1992); Cioni v. Gearhart, 201 Ill.App.3d 853, 856, 147 Ill.Dec. 321, 559 N.E.2d 494 (1990). | "Affirmative matter", within meaning of statute allowing defendant to seek dismissal of an action because it is barred by other affirmative matter avoiding the legal effect of or defeating the claim, must be something more than evidence offered to refute a well-pleaded fact in the complaint, which allegations must be taken as true for purposes of a motion to dismiss. S.H.A. 735 ILCS 5/2-619(a)(9). | Should an affirmative matter be something more than evidence offered to refute a material fact alleged in the complaint? | Pretrial Procedure - Memo # 8531 - C - PC_59210.docx | ROSS-003292392-ROSS-003292393 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 7784 | Lavoie v. Int'l Paper Co., 403 A.2d 1186 | 413+2 | Also in Scott's Case, supra, this Court pointed out at 117 Me. 443, 104 A. 794 that the rights of a party under the Workers' Compensation Act are purely statutory. Unless a claimant can be clearly said to come under the provisions of the statute, he cannot take. We find nothing in the Act as it now exists on the basis of amendments which have been made of it since the decision in Scott's Case in 1918, which would indicate that the Legislature intended to enlarge the meaning of the word "Family" under the Workers' Compensation Act to include a woman with whom a deceased employee was living in a union not solemnized by formal marriage. The decision in Scott's Case that a woman with whom a deceased employee was living in a union not solemnized by marriage cannot be a dependent within the meaning of Workmen's Compensation Act (now Workers' Compensation Act) remains unchanged. We must hold that although we disagree with the Commission's rationale, its decision as to the rights of Ms. York is correct. | Rights of party under Workers' Compensation Act are purely statutory; unless a claimant can be clearly said to come under provisions of statute, he cannot take. 39 M.R.S.A. S 1 et seq. | Should a claimant under the Workers' Compensation Act come under the provisions of the statute to take up the compensation? | 048418.docx | LEGALEASE-00150112-LEGALEASE-00150113 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 7785 | Brown v. Eubank, 443 S.W.2d 386 | 25T+169 | The general rule is that either party may revoke a common law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. 6 C.J.S. Arbitration and Award s 33, p. 173; 6 Tex.Jur.2d, Arbitration and Award, s 22, p. 58; Tejas Dev. Co. v. McGough Bros., 165 F.2d 276 (5th Cir. 1947); Deep South Oil Co. of Texas v. Texas Gas Corp., 328 S.W.2d 897, 906 (Tex.Civ.App., Beaumont 1959, writ ref'd n.r.e.). | The general rule is that either party may revoke a common-law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. | Can parties revoke the submission to arbitration before an award is made? | 007943.docx | LEGALEASE-00151406-LEGALEASE-00151407 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 7786 | Wm. B. Thompson & Co. v. Sporl, 160 La. 352 | 83E+451 | In Snell et al. v. Union Sawmill Co. et al., 159 La. 608, 105 So. 729, we said emphatically: "Signatures to obligations are not mere ornaments," citing Boullt v. Sarpy, 30 La. Ann. 494, 495; and Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281; also, Murphy v. Russey, 117 La. 390, 399, 41 So. 692. And parties who sign negotiable instruments, or other solemn obligations, must expect to be held liable according to the tenor thereof. | Parties who sign negotiable instruments or other solemn obligations must expect to be held according to tenor thereof. | Are signatures to obligations not mere ornaments and those who sign such negotiable instruments or other solemn obligations must be expected to be held liable according to the tenor thereof? | 010448.docx | LEGALEASE-00150946-LEGALEASE-00150947 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7787 | Drury Chesterfield v. Muehlheausler, 347 S.W.3d 107 | 371+2515 | Section 137.115.1 requires the county assessor to "annually assess all realproperty, including any new construction and improvements to real property, and possessory interests in real property at the percent of its true value in money," set forth in a subsection of the same statute. "True value" is never an absolute figure, but is merely an estimate of the fair market value on the valuation date. St. Joe Minerals Corp. v. State Tax Comm'n of Mo., 854 S.W.2d 526, 529 (Mo.App. E.D.1993). "Fair market value typically is defined as the price which the property would bring when offered for sale by a willing seller who is notobligated to sell, and purchased by a willing buyer who is not compelled to buy." Id. | "True value," for purposes of annual tax assessments, is never an absolute figure, but is merely an estimate of the fair market value on the valuation date; "fair market value" typically is defined as the price which the property would bring when offered for sale by a willing seller who is not obligated to sell, and purchased by a willing buyer who is not compelled to buy. V.A.M.S. S 137.115(1). | What is fair market value of a property? | Exchange Of Property - Memo 45 - KK_59237.docx | ROSS-003285351-ROSS-003285352 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7788 | Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 81 N.E.3d 782 | 30+3285 | Standard. In reviewing the allowance of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), we proceed de novo and consider the same pleadings as the motion judge. Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist., 461 Mass. 366, 373, 961 N.E.2d 83 (2012). In so doing, we accept as true all factual allegations in the complaint and draw any reasonable inferences therefrom in the plaintiffs' favor. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223, 950 N.E.2d 853 (2011). "The ultimate inquiry is whether the plaintiffs alleged such facts, adequately detailed, so as to plausibly suggest an entitlement to relief." Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass.App.Ct. 282, 288, 962 N.E.2d 221 (2012). | In reviewing the allowance of a motion to dismiss for failure to state a claim, the ultimate inquiry is whether the plaintiffs alleged such facts, adequately detailed, so as to plausibly suggest an entitlement to relief. Mass. R. Civ. P. 12(b)(6). | What is the ultimate inquiry on a motion to dismiss for failure to state a claim? | 037266.docx | LEGALEASE-00150846-LEGALEASE-00150847 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 7789 | Keener v. Harrod, 2 Md. 63 | 308+92(1) | To bind the principal, the act must be done in the exercise, and within the limits of, the power delegated; and whenever a party undertakes to do an act, as the agent of another, if he does not possess any authority therefor from the principal, or exceeds his powers, he will be personally responsible to the person with whom he is dealing. Story on Agency, secs. 261, 264. Keener was employed to sell this property, but it nowhere appears that he had any authority to employ, in the name of the owners, any person to assist him in making the sale, or to procure a purchaser. If a man charged to render a particular service, engages another to aid him, it by no means follows, that he can do so, at the expense of his employers, without their consent. His own letter, set out in the record, shows, that he had no authority so to charge the owners, and that he expected to compensate the plaintiffs, by dividing his own commission with them. If he entered into the agreement in confidence that his principals would sanction it, he might have made his liability depend on their acquiescence. This, however, was not done, and he must meet the consequences. | To bind the principal, the act of the agent must be in the exercise and within the limits of the power delegated; and whenever a party does an act, as the agent of another, in excess of his powers or authority, he is personally responsible. | Does the liability of the principal depend on whether the act of the agent was done within the limits of the powers delegated? | 041428.docx | LEGALEASE-00151178-LEGALEASE-00151179 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7790 | Janvey v. Alguire, 847 F.3d 231 | 25T+182(2) | The defendants advance two theories of equitable estoppel, both of which are inapplicable. The "intertwined claims" theory governs motions to compel arbitration when a signatory-plaintiff brings an action against a nonsignatory-defendant asserting claims dependent on a contract that includes an arbitration agreement that the defendant did not sign. Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527"28 (5th Cir. 2000). It does not govern the present case, where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff. Bridas, 345 F.3d at 361. The "direct benefits" theory of equitable estoppel "prevents a nonsignatory from knowingly exploiting an agreement containing the arbitration clause." Graves v. BP Am., Inc., 568 F.3d 221, 223 (5th Cir. 2009). That is, "a nonsignatory cannot sue under an agreement while at the same time avoiding its arbitration clause." Id. This theory is inapplicable here because the Receiver does not seek to enforce the various contracts containing the arbitration agreements; rather, he seeks to unwind them and reclaim the benefits fraudulently distributed to the defendants under the contracts. | Under "direct benefits theory" of equitable estoppel, a nonsignatory cannot sue under an agreement while at the same time avoiding its arbitration clause. | Can a non-signatory sue under an agreement while at the same time avoid its arbitration clause under the direct benefits theory of equitable estoppel? | 008035.docx | LEGALEASE-00151510-LEGALEASE-00151511 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 7791 | Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739 | 25T+183 | The claim for relief in Orban's demand for arbitration asked for a declaration of its rights and an award of damages arising out of its contract with Newman, and Orban's counsel made it clear at the outset of the arbitration proceedings that Orban's claim did not depend upon the existence of a joint venture. The arbitrators may have believed that there was no joint venture and found appellant liable as principal. The fact that the demand named appellant and Angeles "co-venturers" would not bar the arbitrators from reaching such conclusion. Any doubts about the scope of the submission agreement should be resolved in favor of coverage. Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 390 (2d Cir. 1972). The language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings. Keystone Printed Specialties Co. v. Scranton Printing Pressmen and Assistants Union No. 119, 386 F.Supp. 416, 422 (M.D.Pa.1974), aff'd., 517 F.2d 1398 (3d Cir. 1975); American Bosch Arma Corp. v. International Union of Electrical, Radio and Machine Workers, AFL-CIO, Local 794, 243 F.Supp. 493, 494 (N.D.Miss.1965). The arbitration proceeded without objection by appellant, the corporation against whom the demand was made, and appellant must now be deemed to have acquiesced in the form of the submission. See United Buying Service International Corp. v. United Buying Service of Northeastern New York, Inc., 38 A.D.2d 75, 79-80, 327 N.Y.S.2d 7 (N.Y.Sup.Ct.1971), aff'd., 30 N.Y.2d 822, 344 N.Y.S.2d 911, 286 N.E.2d 284 (1972). The award should not now be overturned because of the possibility that the demand for arbitration incorrectly described appellant's legal status. See Philippine Bulk Shipping Inc. v. International Minerals & Chemical Corp., 376 F.Supp. 654, 656 (S.D.N.Y.1973). | Language of arbitration demands should not be subjected to same strict standards of construction that would be applied in formal court proceedings. | Is the language of arbitration subject to the same strict standards of construction that would applied in formal court proceedings? | Alternative Dispute Resolution - Memo 848 - RK_59533.docx | ROSS-003307649-ROSS-003307650 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7792 | Mills v. Scott, 99 U.S. 25 | 108H+8 | The proportion of the indebtedness with which the stockholder is to be charged can be ascertained only upon taking an account of the debts and stock of the bank, and a court of equity is the proper tribunal to bring before it all necessary parties for that purpose. But by the law of the State, as declared by its highest tribunal, an action for debt will lie where the amount of the bank's outstanding indebtedness and the number of shares held by the stockholder can be stated. In such cases, the extent of the latter's liability is fixed, and the amount with which he should be charged is a matter of mere arithmetical calculation. Actions for debt will always lie where the amount sought to be recovered is certain, or can be ascertained from fixed data by computation. Here the declaration states the number of shares of the capital stock of the bank to be twenty thousand, and that one thousand were held by the deceased. His liability, therefore, was fixed at one-twentieth of the entire indebtedness of the bank on the bills issued by it, which is averred to be $800,000. The only recovery, therefore, which the declaration permitted was for $40,000, and not for $100,000, which the jury found. This error in the record is not specifically pointed out in the brief of counsel fot the defendant, who was not present at the argument; but it is evident that it was at the erroneous apportionment of the indebtedness to the estate of the deceased that he aimed, when insisting that the remedy of the plaintiff should have been by a bill in equity, and not in this form of action. | Actions for debt will always lie where the amount sought to be recovered is certain or can be ascertained from fixed data by computation. | "Will an action for debt lie where the amount sought to be recovered is certain, or can be ascertained from fixed data by computation?" | 014061.docx | LEGALEASE-00151520-LEGALEASE-00151522 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7793 | Ellsworth v. U.S. Bank, N.A., 908 F. Supp. 2d 1063 | 294+87(1) | The voluntary payment doctrine is an affirmative defense that bars the recovery of money that was voluntarily paid with knowledge of the facts. See Steinman v. Malamed, 185 Cal.App.4th 1550, 1557, 111 Cal.Rptr.3d 304 (2010); Stern v. AT & T Mobility Corp., No. CV 05"8842, 2008 WL 4382796, at *9 (C.D.Cal. Aug. 22, 2008); Am. Oil Serv. v. Hope Oil Co., 194 Cal.App.2d 581, 586, 15 Cal.Rptr. 209 (1961); Western Gulf Oil Co. v. Title Ins. & Tr. Co., 92 Cal.App.2d 257, 266, 206 P.2d 643 (1949). "Paymentsof illegal claims enforced by duress, coercion or compulsion, when the payor has no other adequate remedy to avoid it, will be deemed to have been made involuntarily and may be recovered, but the payment must have been enforced by coercion and there must have been no other adequate means available to prevent the loss." Western Gulf Oil, 92 Cal.App.2d at 265, 206 P.2d 643. "Duress for this purpose is shown "where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, [and thus] he may recover it." " Steinman, 185 Cal.App.4th at 1558, 111 Cal.Rptr.3d 304 (quoting Western Gulf Oil, 92 Cal.App.2d at 266, 206 P.2d 643). | Under California law, payments of illegal claims enforced by duress, coercion, or compulsion, when the payor has no other adequate remedy to avoid it, will be deemed to have been made involuntarily and may be recovered, but the payment must have been enforced by coercion and there must have been no other adequate means available to prevent the loss. | When is a payment deemed to be involuntary? | 010708.docx | LEGALEASE-00152602-LEGALEASE-00152604 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 7794 | Cleveland, C., C. & I. Ry. Co. v. Wynant, 114 Ind. 525 | 200+181 | The present case does not come within the rule above stated. None of the occurrences described were of such a character as to convey notice to the railway compny, or to be known to any others than the witnesses themselves. Evidence of other similar occurrences on other occasions is not admissible for the purpose of raising a presumption that the particular accident in question happened, or that the place was defective and dangerous, or that the situation was of such a character that the occurrence resulting in the injury complained of might well have taken place. The facts are the only legitimate evidence of the injury, and of the manner and cause of the occurrence. Ramsey v. Road Co., 81 Ind. 394; Collins v. Inhabitants of Dorchester, 6 Cush. 396; Hubbard v. City of Concord, 35 N. H. 52; Maguire v. Railroad Co., 115 Mass. 239; Hawks v. Inhabitants of Charlemont, 110 Mass. 110; Blair v. Pelham, 118 Mass. 420. The case is parallel in principle with Hudson v. Railway Co., 59 Iowa, 581, 13 N. W. Rep. 735. In that case the plaintiff claimed damages for injuries occasioned to his horse resulting from defective planking at a railway crossing. The judgment of the lower court was reversed because a witness was permitted to testify that some time prior to the injury complained of a horse driven by him had got his foot between the plank and rail, at the same place where the plaintiff's horse was injured. We are aware of the fact that some contrariety exists in the decisions upon the point in question. In our opinion the rule above indicated is the one justified by the decisions of this court, and altogether the safer one upon principle. Patt. Ry. Acc. Law, 420. There is, in the present case, no open, visible connection between the evidentiary facts or independent occurrences out of which it is assumed certain presumptions arise, and the facts sought to be established by deduction from the evidentiary facts proved. This the law requires. The jury must not be left to decide the | The mere fact that an object is in a highway in violation of the statute does not necessarily make the owner liable for damages resulting from fright which the object may have occasioned to horses, but there must have been some natural causative connection between the violation of the statute and the frightening of the horses. | Will the object of the highway in violation of statute make the owner liable? | Highways -Memo 348-SB_60199.docx | ROSS-003320997-ROSS-003320999 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7795 | Hampton v. Metro. Water Reclamation Dist. of Greater Chicago, 2016 IL 119861 | 307A+622 | Having established that in some circumstances temporary flooding can constitute a taking, the court is now faced with the question of whether plaintiffs sufficiently alleged a violation of the Illinois takings clause. " "When this court accepts an appeal involving a question of law identified under Rule 308, interests of judicial economy and the need to reach an equitable result oblige us to go beyond the question of law presented and consider the propriety of the order that gave rise to the appeal." " Townsend v. Sears, Roebuck & Co., 227 Ill.2d 147, 153, 316 Ill.Dec. 505, 879 N.E.2d 893 (2007) (quoting Bright v. Dicke, 166 Ill.2d 204, 208, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995)). "Determining whether there has been an actionable taking is a question of law," which this court reviews de novo. ProLogis, 236 Ill.2d at 77, 337 Ill.Dec. 726, 923 N.E.2d 285. The District challenged plaintiffs' takings clause claim by filing a motion to dismiss. "The critical inquiry in determining whether a pleading should be dismissed is whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." Sorrells v. City of Macomb, 2015 IL App (3d) 140763, 22, 398 Ill.Dec. 424, 44 N.E.3d 453 (citing Kanerva v. Weems, 2014 IL 115811, 33, 383 Ill.Dec. 107, 13 N.E.3d 1228). | The critical inquiry in determining whether a pleading should be dismissed is whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. | What is the critical inquiry in deciding a motion to dismiss on the pleadings? | 037567.docx | LEGALEASE-00152378-LEGALEASE-00152379 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7796 | Malecek v. Williams, 804 S.E.2d 592 | 307A+561.1 | This Court reviews the grant of a Rule 12(b)(6) motion to dismiss de novo. State v. Berger, 368 N.C. 633, 639, 781 S.E.2d 248, 252 (2016). A Rule 12(b)(6) motion "is properly granted where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery." Lupton v. Blue Cross & Blue Shield of N.C., 139 N.C. App. 421, 424, 533 S.E.2d 270, 272 (2000). Because the courts cannot permit a plaintiff to pursue a cause of action that is unconstitutional on its face, Dr. Williams's facial challenge to these common law torts is an appropriate subject for a Rule 12(b)(6) motion. | A motion to dismiss for failure to state a claim is properly granted where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery. N.C. R. Civ. P. 12(b)(6). | Can a motion to dismiss be granted where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery? | 037864.docx | LEGALEASE-00152138-LEGALEASE-00152139 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 7797 | Jacobowitz v. Leak, 19 A.D.3d 453 | 307A+561.1 | However, the Supreme Court erred in denying that branch of the plaintiff's motion which was to strike the defendant's two affirmative defenses. In his first affirmative defense, the defendant asserted that he was never served with the summons in this case. Since the defendant failed to move to dismiss on the ground that he was never served with a summons within 60 days of serving his answer, he waived this defense (see CPLR 3211[e]; Dimond v. Verdon, 5 A.D.3d 718, 719, 773 N.Y.S.2d 603). In his second affirmative defense, the defendant asserted that "the complaint is defective on its face."We can only presume that the defendant intended this as an assertion that the complaint failed to state a cause of action. Such an affirmative defense must be raised by motion and cannot be interposed in an answer (see CPLR 3211(a)(7); Citibank, N.A. v. Walker, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48; Sagevick v. Sanchez, 228 A.D.2d 488, 489, 644 N.Y.S.2d 318; Guglielmo v. Roosevelt Hosp. Staff Hous. Co., 222 A.D.2d 403, 404, 635 N.Y.S.2d 42). | Affirmative defense that complaint failed to state cause of action must be raised by motion, and cannot be interposed in an answer. McKinney's CPLR 3211(a), par. 7. | Can an affirmative defense that complaint failed to state cause of action be interposed in an answer? | Pretrial Procedure - Memo # 8852 - C - MS_59849.docx | ROSS-003294720-ROSS-003294721 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7798 | Multivest Properties v. Hughes, 671 N.E.2d 199 | 307A+581 | S.C.R. 10(A) provides that "[i]f the plaintiff fails to appear at the time and place specified for the trial, or for any continuance thereof, the court may dismiss the action without prejudice." The rule further provides that "[i]f the claim is refiled and the plaintiff again fails to appear such claim may be dismissed with prejudice." As we noted in Wood v. Zeigler Building Materials, Inc., 436 N.E.2d 1168, 1170 (Ind.Ct.App.1982), the rule is quite specific. "Dismissal with prejudice is contemplated only when the plaintiff again fails to appear after the claim has been refiled." Id. | Rule governing dismissal of action for failure to appear is quite specific, and contemplates dismissal with prejudice only when plaintiff again fails to appear after claim has been refiled. Small Claims Rule 10(A). | Does the rule governing dismissal of action for failure to appear contemplate dismissal with prejudice when plaintiff again fails to appear after claim has been refiled? | Pretrial Procedure - Memo # 8866 - C - DA_59863.docx | ROSS-003280812-ROSS-003280813 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7799 | Lake Meredith Reservoir Co. v. Amity Mut. Irr. Co., 698 P.2d 1340 | 307A+584 | The decision whether to dismiss an action because of the plaintiff's failure to prosecute lies within the sound discretion of the trial court. Rudd v. Rogerson, 152 Colo. 370, 374, 381 P.2d 995, 998 (1963); Cervi v. Town of Greenwood Village, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961); BA Leasing Corp. v. Board of Assessment Appeals, 653 P.2d 80, 81 (Colo.App.1982). The burden is upon the plaintiff to prosecute a case in due course without unusual or unreasonable delay. Cervi v. Town of Greenwood Village, 147 Colo. at 193, 362 P.2d at 1052; Johnson v. Westland Theatres, Inc., 117 Colo. 346, 349, 187 P.2d 932, 933 (1947); BA Leasing Corp. v. Board of Assessment Appeals, 653 P.2d at 81. When evaluating a motion to dismiss for failure to prosecute, a trial court must bear in mind that courts "exist primarily to afford a forum to settle litigable matters between disputing parties." Mizar v. Jones, 157 Colo. 535, 537, 403 P.2d 767, 769 (1965). In the absence of a showing by the plaintiff of mitigating circumstances or a reasonable excuse for the delay, however, an unusual delay in prosecution justifies an exercise of the trial court's discretion in dismissing an action. Rudd v. Rogerson, 152 Colo. at 374, 381 P.2d at 998; Yampa Valley Coal Co. v. Velotta, 83 Colo. 235, 263 P. 717 (1928); BA Leasing Corp. v. Board of Assessment Appeals, 653 P.2d 80 (Colo.App.1982). | In absence of showing by plaintiff of mitigating circumstances or reasonable excuse for delay, unusual delay in prosecution justifies exercise of trial court's discretion in dismissing action. Rules Civ.Proc., Rule 41(b)(1, 2). | Does unusual delay in prosecuting action justify dismissal with prejudice? | 038355.docx | LEGALEASE-00152728-LEGALEASE-00152729 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 7800 | Trina Solar US v. JRC-Servs. LLC, 229 F. Supp. 3d 176 | 308+96 | "It is black letter law that an agent binds his principal when he enters into a contract within the scope of his authority." Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc., 241 F.Supp.2d 246, 260 (S.D.N.Y. 2002) (citing British American & Eastern Co. v. Wirth Ltd., 592 F.2d 75, 80 (2d Cir. 1979)). An agent may have either actual or apparent authority. Actual authority, which may be express or implied, "exists when an agent has the power "to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him." " Id. (quoting Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996)). | Under New York law, actual authority, which may be express or implied, to act on behalf of a principal, exists when an agent has the power to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him. | Does authority exist when an agent has the power to do an act on account of the principal? | 041509.docx | LEGALEASE-00152655-LEGALEASE-00152656 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7801 | Chambers v. McCollum, 47 Idaho 74 | 92+2419 | Permitting the state board of land commissioners to fix the salary of a deputy state forester whose appointment may be recommended by the state forester, as provided in the last paragraph of section 1 of the act, is contended by appellant to be an unlawful delegation of legislative authority. The Legislature in this instance has properly exercised its right in designating by whom such appointment may be made. Elliott v. McCrea, 23 Idaho, 524, 528, 130 P. 785; 12 C. J. 846. The power of making the appointment being unquestioned, the right to fix the salary of such officer by the body making the appointment is incidental. It would be illogical to hold that the right to make the appointment did not carry with it the authority to provide for compensation, and to do so would result in a nullification of the act in this respect. | Section permitting land commissioners to fix salary of deputy state forester, appointed on recommendation of forester, held not void as delegating legislative power (Forestry Law, S 1). | Is permitting the state board of land commissioners to fix the salary of the deputy state forester an unlawful delegation of legislative authority? | 047604.docx | LEGALEASE-00152534-LEGALEASE-00152535 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 7802 | Caesars Riverboat Casino v. Kephart, 903 N.E.2d 117 | 307A+680 | A motion to dismiss under Trial Rule 12(B)(6) tests only the legal sufficiency of the complaint, not the facts supporting it. Thompson v. Hays, 867 N.E.2d 654, 656 (Ind.Ct.App.2007), trans. denied. The court may only look to the complaint and may not look to other evidence in the record. Id. A motion to dismiss should be granted only if "facts alleged in the complaint are incapable of supporting relief under any set of circumstances."Godby v. Whitehead, 837 N.E.2d 146, 149 (Ind.Ct.App.2005), trans. denied. We will review a trial court's ruling on a motion to dismiss de novo. Thompson, 867 N.E.2d at 656. | A motion to dismiss for alleging facts incapable of supporting relief under any set of circumstances tests only the legal sufficiency of the complaint, not the facts supporting it. Trial Procedure Rule 12(B)(6). | "Does a motion to dismiss for alleging facts incapable of supporting relief under any set of circumstances test only the legal sufficiency of the complaint, not the facts supporting it?" | 038117.docx | LEGALEASE-00153513-LEGALEASE-00153514 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7803 | Davidson v. Iona-McGregor Fire Prot. & Rescue Dist., 674 So. 2d 858 | 307A+680 | A motion to dismiss is designed to test the legal sufficiency of a complaint, not to determine fact issues. | A motion to dismiss for failure to state a claim is designed to test legal sufficiency of a complaint, not to determine fact issues. | "Is a motion to dismiss for failure to state a claim designed to test legal sufficiency of a complaint, not to determine fact issues?" | 038207.docx | LEGALEASE-00153171-LEGALEASE-00153172 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 7804 | FYM Clinical Lab. v. Perales, 147 A.D.2d 840 | 307A+679 | Petitioner argues that dismissal of the petition was improper prior to joinder of issue. We note that Supreme Court did not treat the motion as one for summary judgment upon proper notice to the parties (see, CPLR 3211 [c]; Matter of Board of Educ., Lakeland Cent. School Dist. of Shrub Oak v. State Educ. Dept., 116 A.D.2d 939, 941, 498 N.Y.S.2d 516). Thus, Supreme Court, in ruling on the motion to dismiss on objection in point of law, should have considered only the petition, taking the allegations therein as true and ignoring opposing affidavits, and our review is limited accordingly (id., at 940"941, 498 N.Y.S.2d 516). | Lower court, in ruling on motion to dismiss on objection in point of law, should have only considered petition, taking allegations therein as true and ignoring opposing affidavits, where lower court did not treat motion as one for summary judgment. McKinney's CPLR 3211(c). | "On a pre-answer motion to dismiss an objection in point of law, can only the petition be considered?" | 038302.docx | LEGALEASE-00152872-LEGALEASE-00152873 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |
| 7805 | Value Rent-A-Car v. Grace, 794 So. 2d 619 | 307A+561.1 | This court reviews the trial court's decision granting a motion to dismiss de novo. Ruiz v. Brink's Home Sec., Inc., 777 So.2d 1062 (Fla. 2d DCA 2001). On review of a trial court's order granting a motion to dismiss, this court may look only to the four corners of the complaint. Id. at 1064. An affirmative defense may serve as a basis for a motion to dismiss only if the defense appears within the four corners of the complaint. Randles v. Moore, 780 So.2d 158 (Fla. 2d DCA 2001). However, "if the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of [an] affirmative defense." Vause, 687 So.2d at 261. | An affirmative defense may serve as a basis for a motion to dismiss only if the defense appears within the four corners of the complaint. | Does an affirmative defense serve as a basis for a motion to dismiss only if the defense appears within the four corners of the complaint? | Pretrial Procedure - Memo # 9189 - C - PC_60498.docx | ROSS-003281424-ROSS-003281425 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7806 | Webb v. Damisch, 362 Ill. App. 3d 1032 | 307A+531 | A motion to dismiss under section 2"619 "allows for a threshold disposition of questions of law and easily proven issues of fact." Mio v. Alberto"Culver, 306 Ill.App.3d 822, 824, 239 Ill.Dec. 864, 715 N.E.2d 309 (1999). Under section 2"619, a motion to dismiss should be granted if after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted. Mio, 306 Ill.App.3d at 825, 239 Ill.Dec. 864, 715 N.E.2d 309. This process does not require the trial court to weigh facts or determine credibility and as a result, this court does not defer to the trial court's judgment. Mio, 306 Ill.App.3d at 825, 239 Ill.Dec. 864, 715 N.E.2d 309. | A motion to dismiss under section providing for dismissal of complaint based on defects or defenses which avoid or defeat claims allows for a threshold disposition of questions of law and easily proven issues of fact. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss allow for a threshold disposition of questions of law and easily proven issues of fact? | Pretrial Procedure - Memo # 9225 - C - MS_60579.docx | ROSS-003291863-ROSS-003291864 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 7807 | Cultum v. Heritage House Realtors, 103 Wash. 2d 623 | 308+57 | It is the duty of an agent to obey all reasonable instructions and directions given by the principal and to adhere faithfully to them in all cases where they ought properly to be applied and in which they can be obeyed by the exercise of reasonable and diligent care. 3 Am.Jur.2d Agency " 206 (1962). | An agent has the duty to obey all reasonable instructions and directions given by the principal and to adhere faithfully to those instructions in all cases where they ought to be properly applied and in which they can be obeyed by the exercise of reasonable and diligent care. | Is an agent bound to obey all the reasonable duties given to him by the principal? | 041312.docx | LEGALEASE-00153187-LEGALEASE-00153188 | Order, SA, Sub | 0.08 | 1 | 0 | 1 | 1 | 1 |
| 7808 | Churchill v. Mayo, 224 S.W.3d 340 | 21+9 | The trial court also sustained Mayo's objection that Evelyn did not swear that the statements in the affidavit were "true and correct." An affidavit that does not state that the facts recited are true, but is based on personal knowledge and is subscribed to and sworn before a notary public, is not defective. Fed. Fin. Co. v. Delgado, 1 S.W.3d 181, 184 (Tex.App.-Corpus Christi 1999, no pet.); Goggin v. Grimes, 969 S.W.2d 135, 138 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Here, the affidavit meets these requirements, and the trial court abused its discretion in ruling to the contrary | An affidavit that does not state that the facts recited are true, but is based on personal knowledge and is subscribed to and sworn before a notary public, is not defective. | "Is an affidavit, which is based on personal knowledge and sworn to before a notary effective even if it does not state that the facts recited are true?" | Affidavits - Memo 63 - _1eQEUUxER3Z--_anqvAuMJ3_0JLE6sD-1.docx | ROSS-000000224-ROSS-000000225 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 7809 | Porter v. Huie, 94 Ark. 333 | 83E+461 | Where, before delivery of a promissory note, several persons successively indorsed their names on the back of it, in blank, as between the indorsers, in the absence of agreement to the contrary, the first indorser, who pays the note, has no recourse against the other indorsers, as the legal effect of the signing is to subject the indorsers as to each other in the order they indorse. | Where, before delivery of a promissory note, several persons successively indorsed their names on the back of it, in blank, as between the indorsers, in the absence of agreement to the contrary, the first indorser, who pays the note, has no recourse against the other indorsers, as the legal effect of the signing is to subject the indorsers as to each other in the order they indorse. | What is the liability of successive indorsers? | 009986.docx | LEGALEASE-00154687-LEGALEASE-00154688 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7810 | Rodash v. AIB Mortg. Co., 16 F.3d 1142 | 172H+1322 | Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers. Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir.1984). The Act ensures a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace. Congress intended the statute to create a system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, we liberally construe its language in favor of the consumer. McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir.1978). Accord Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3rd Cir.1990). Additionally, creditors must strictly comply with TILA's requirements. Shroder, 729 F.2d at 1380 (The creditor's disclosures must be in "the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z. Liability will flow from even minute deviations from requirements."). Moreover, the consumer may sue for enforcement even if she is not actually deceived or harmed. Zamarippa v. Cy's Car Sales, 674 F.2d 877, 879 (11th Cir.1982) ("An objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers."). | Congress intended Truth in Lending Act (TILA) to create system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, Court of Appeals liberally construes language in favor of consumer. Truth in Lending Act, $ 102 et seq., 15 U.S.C.A. $ 1601 et seq. | How does Truth in Lending Act (TILA) favour the consumers or the borrowers? | 013700.docx | LEGALEASE-00154366-LEGALEASE-00154367 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7811 | Schwen v. Kaye, 155 Cal. App. 3d 949 | 156+35 | Civil Code section 1106 has as its genesis the common law doctrine of estoppel by deed. That doctrine generally precludes a grantor of real property from asserting, as against the grantee, any right or title in derogation of the deed. (6A Powell, The Law of Real Property (1982) " 927, p. 84"112.) The policy behind the doctrine is to protect an unwitting grantee who relies upon the good title of the grantor when the latter does not possess legal or perfect title to the property. (Ibid at p. 84"111; (Cecil v. Gray (1915) 170 Cal. 137, 140, 148 P. 935; Younger v. Moore (1909) 155 Cal. 767, 774, 103 P. 221; Warburton v. Kieferle (1955) 135 Cal.App.2d 278, 284, 287 P.2d 1.) (See 2 Miller and Starr, Current Law of California Real Estate (1977) Deeds, " 14.56, p. 587.) | Doctrine of estoppel by deed generally precludes grantor of real property from asserting, as against grantee, any right or title in derogation of deed; policy behind doctrine is to protect unwitting grantee who relies upon good title of grantor when latter does not possess legal or perfect title to property. | Does the doctrine of estoppel by deed preclude a grantor of real property from asserting any right in derogation of the deed? | 018047.docx | LEGALEASE-00153842-LEGALEASE-00153843 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 7812 | Butler v. City of Eupora, 725 So. 2d 158 | 156+62.3 | Mississippi recognizes the doctrine of after-acquired title in certain circumstances. Miss.Code Ann. " 89"1"39 (1991); Mills v. Damson Oil Corp., 437 So.2d 1005 (Miss.1983); Buchanan v. Stinson, 335 So.2d 912 (Miss.1976). While "the after-acquired title doctrine is founded upon premises of equitable estoppel," Buchanan, 335 So.2d at 913, "it is also a well-established rule in Mississippi that the doctrine of equitable estoppel cannot be applied against the state or its counties where the acts of their officers were unauthorized." Oktibbeha County Board of Education v. Town of Sturgis, 531 So.2d 585, 589 (Miss.1988). If a grantor having no title to land purports to convey it by a warranty deed, he will be estopped to show that at the time of the deed he had no title to convey. If he later acquires the title, his after-acquired title will pass to the grantee without further conveyance by way of estoppel. See William E. Burby, Handbook of the Law of Real Property " 128 (3d ed.1965). | While after-acquired title doctrine is founded upon premises of equitable estoppel, doctrine of equitable estoppel cannot be applied against state or its counties where acts of their officers were unauthorized. Code 1972, $ 89-1-39; Rules App.Proc., Rule 8(c). | Is the after-acquired title doctrine founded upon premises of equitable estoppel? | 018049.docx | LEGALEASE-00153853-LEGALEASE-00153854 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 7813 | Thormodsgard v. Wayne Twp. Bd. of Sup'rs, 310 N.W.2d 157 | 200+79.1 | This Court has held that vacation or abandonment of a legally established public way can only occur by some lawful method. Abandonment of a section line right-of-way cannot be established solely by evidence that the highway has never been open, improved, or traveled. Costain v. Turner County, 72 S.D. 427, 36 N.W.2d 382 (1949); Pederson v. Canton Township, 72 S.D. 332, 34 N.W.2d 172 (1949). The appropriate governing board must act affirmatively to vacate or abandon a section line right-of-way. Pederson, supra; Keen v. Board of Supervisors of Fairview Township, 8 S.D. 558, 67 N.W. 623 (1896). The burden of proof is on the one obstructing a lawfully established public way to show vacation or abandonment. Aasland v. County of Yankton, 280 N.W.2d 666 (S.D.1979); Haley v. City of Rapid City, 269 N.W.2d 398 (S.D.1978); Lowe v. East Sioux Falls Quarry, 25 S.D. 393, 126 N.W. 609 (1910). | Abandonment of section line right-of-way cannot be established solely by evidence that highway has never been open, improved or traveled, but rather, appropriate governing board must act affirmatively to vacate or abandon section line right-of-way. SDCL 31-3-1, 31-18-1. | "Can the abandonment of a section line right-of-way be established by evidence that the highway has never been open, improved, or traveled?" | Highways - Memo 4 - KK_61210.docx | ROSS-003292961-ROSS-003292962 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7814 | Rodgers v. Whitley, 282 Ill. App. 3d 741 | 307A+680 | In considering and reviewing a section 2"615 motion to dismiss, all well-pleaded facts must be taken as true and considered in the light most favorable to the plaintiffs. Ziemba v. Mierzwa, 142 Ill.2d 42, 46, 153 Ill.Dec. 259, 260, 566 N.E.2d 1365, 1366 (1991). | In considering and reviewing motion to dismiss, all well-pleaded facts must be taken as true and considered in light most favorable to plaintiffs. S.H.A. 735 ILCS 5/2-615. | "In considering and reviewing motion to dismiss, should all well-pleaded facts be taken as true and considered in a light most favorable to plaintiffs?" | Pretrial Procedure - Memo # 9315 - C - VA_60894.docx | ROSS-003278393-ROSS-003278394 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 7815 | Chen v. Lowe, 521 S.W.3d 587 | 307A+681 | We do not find this argument persuasive. A review of the circuit court's order indicates that the court considered matters outside of the pleadings. A trial court "may properly consider matters outside of the pleadings in making its decision [on a motion to dismiss]. However, reliance on matters outside the pleadings by the court effectively converts a motion to dismiss into a motion for summary judgment." D.F. Bailey, Inc. v. GRW Eng'rs, Inc., 350 S.W.3d 818, 820-21 (Ky. App. 2011) (citing McCray v. City of Lake Louisvilla, 332 S.W.2d 837, 840 (Ky. 1960); CR 12.02). | A trial court may properly consider matters outside of the pleadings in making its decision on a motion to dismiss. | Can a trial court properly consider matters outside of the pleadings in making its decision on a motion to dismiss? | Pretrial Procedure - Memo # 9317 - C - PB_60896.docx | ROSS-003293868-ROSS-003293869 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 7816 | Yellam v. Woerner, 77 Wash. 2d 604 | 307A+581 | An action on appeal is a pending action. State v. Tugwell, 19 Wash. 238, 52 P. 1056, 43 L.R.A. 717 (1898); Haynes v. Seattle, 87 Wash. 375, 151 P. 789 (1915). The rule providing for dismissal for want of prosecution is punitive or administrative in nature and every reasonable opportunity should be afforded to permit the parties to reach the merits of the controversy. Franks v. Douglas, 57 Wash.2d 583, 358 P.2d 969 (1961); State ex rel. Witting v. Superior Court, 56 Wash.2d 117, 351 P.2d 409 (1960); 4L. Orland, Wash.Prac. 86 (2d ed. 1968). We perceive no manifest injustice which would result from applying CR 41(b)(1) to the present case, particularly in view of the fact that the former rule was modified to further procedural fairness. | Rule providing for dismissal for want of prosecution is punitive or administrative in nature and every reasonable opportunity should be afforded to permit the parties to reach the merits of the controversy. CR 41(b) (1), (b) (2) (C). | Are dismissals for want of prosecution punitive or administrative in nature? | 038790.docx | LEGALEASE-00154008-LEGALEASE-00154009 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7817 | Petroleum Ref. Co. v. McGlothlin, 429 S.W.2d 676 | 307A+582 | It is now established law that a court has the right to dismiss a suit for failure to prosecute it with due diligence, despite the fact that the party whose suit is dismissed had no intention to abandon the case and hoped to settle it. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 88. | A court has right to dismiss suit for failure to prosecute it with due diligence, despite fact that party whose suit is dismissed had no intention to abandon case and hoped to settle it. | Can a court dismiss a case for want of prosecution even when the plaintiff states that he never intended to abandon suit and that he is currently ready for trial? | 038814.docx | LEGALEASE-00154093-LEGALEASE-00154094 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 7818 | Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv., 2016 IL App (1st) 151659 | 307A+685 | On a motion to dismiss pursuant to section 2"619(a)(9) of the Code, the defendant, as the movant, "has the burden of proof on the motion, and the concomitant burden of going forward." 4 Richard A. Michael, Illinois Practice " 41:8, at 481 (2d ed.2011). "When a motion to dismiss is based on facts not apparent from the face of the complaint, the movant must support its motion with affidavits or other evidence." City of Springfield v. West Koke Mill Development Corp., 312 Ill.App.3d 900, 908, 245 Ill.Dec. 699, 728 N.E.2d 781 (2000); Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993); see also Hollingshead v. A.G. Edwards & Sons, Inc., 396 Ill.App.3d 1095, 1101"02, 336 Ill.Dec. 664, 920 N.E.2d 1254 (2009) ("By presenting an affidavit supporting the basis for the motion, the defendant satisfies the initial burden of going forward."). | When a motion to dismiss is based on facts not apparent from the face of the complaint, the movant must support its motion with affidavits or other evidence. S.H.A. 735 ILCS 5/2-619. | "When a motion to dismiss is based on facts not apparent from the face of the complaint, should the movant support its motion with affidavits or other evidence?" | Pretrial Procedure - Memo # 9536 - C - SHB_61123.docx | ROSS-003296010-ROSS-003296011 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7819 | Burton v. Dominion Nuclear Connecticut, 129 Conn. App. 203 | 307A+678 | "[A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken." (Citation omitted.) Golodner v. Women's Center of Southeastern Connecticut, Inc., 281 Conn. 819, 826, 917 A.2d 959 (2007). "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) Fairfax Properties, Inc. v. Lyons, 72 Conn.App. 426, 432, 806 A.2d 535 (2002); see also Lawton v. Weiner, 91 Conn.App. 698, 705"706, 882 A.2d 151 (2005) (hearing required only when motion to dismiss raises genuine issue of material fact). | A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts; if a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken. | Does a motion to dismiss admit all facts well pleaded and invokes any record that accompanies the motion? | Pretrial Procedure - Memo # 9539 - C - NS_61126.docx | ROSS-003280015-ROSS-003280016 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 7820 | Callaghan v. Vill. of Clarendon Hills, 401 Ill. App. 3d 287 | 307A+686.1 | The defendant bears the burden of proof of the affirmative matter. Springfield Heating & Air Conditioning, Inc. v. 3947"55 King Drive At Oakwood, LLC, 387 Ill.App.3d 906, 909, 327 Ill.Dec. 245, 901 N.E.2d 978 (2009). If the defendant satisfies its initial burden of proof, the burden shifts to the plaintiff to show that "the defense is unfounded or requires the resolution of an essential element of material fact before it is proven." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). In order to refute evidentiary facts contained in the defendant's supporting affidavits, the plaintiff must provide a counteraffidavit. Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732. If the plaintiff fails to provide a counteraffidavit to challenge the facts alleged in the defendant's supporting affidavits, the facts of the defendant's affidavits are deemed admitted. Zedella v. Gibson, 165 Ill.2d 181, 185, 209 Ill.Dec. 27, 650 N.E.2d 1000 (1995). | If the plaintiff fails to provide a counteraffidavit to challenge the facts alleged in the defendant's supporting affidavits on a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the facts of the defendant's affidavits are deemed admitted. S.H.A. 735 ILCS 5/2-619(a)(9). | "If the plaintiff fails to provide a counter affidavit to challenge the facts alleged in the defendant's supporting affidavits, are the facts of the defendant's affidavits deemed admitted?" | Pretrial Procedure - Memo # 9895 - C - SKG_61806.docx | ROSS-003280429-ROSS-003280430 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 7821 | Acme Oil v. Vasatka, 465 So. 2d 1314 | 308+131 | An agent can contract for insurance so as to bind his company if he has the real or apparent authority to do so, and the insurer is bound by the acts of its agent if they are within the scope of his apparent authority and the insured is not aware of any limitation thereon. No special inquiry into the powers of the agent need be made unless the insured should have reason to do so. An agent possesses powers conferred on him by his principal, or such as third parties are entitled to assume he possesses under the circumstances. Russell v. Eckert, 195 So.2d 617 (Fla. 2d DCA 1967). Here, Brickner's past dealings with Martin had all involved State Farm. Brickner knew Martin was an exclusive State Farm agent and Martin conceded Brickner was never informed that policies might be written for other companies or entities. Martin expressed doubts that State Farm would write the policy but never informed Brickner it would not and led Brickner to reasonably believe he was covered, despite knowing he was not. Under these circumstances, Brickner was entitled to assume that Martin had procured a State Farm policy which was in force. Martin's actions in allowing Brickner to believe this bound State Farm notwithstanding its contention that it knew nothing of Martin's acts. The actions of an agent performing within the scope of his real or apparent authority are binding upon his principal, regardless of whether the principal had knowledge of the agent's action. Fidelity & Casualty Co. of New York v. Britt, 393 So.2d 41 (Fla. 3d DCA 1981). | The actions of an agent performing within scope of his real or apparent authority are binding upon his principal, regardless of whether principal had knowledge of the agent's action. | Can an act of an agent performed within the scope of his real or apparent authority bind the principal? | 041529.docx | LEGALEASE-00154095-LEGALEASE-00154096 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 7822 | Gerasta v. Hibernia Nat. Bank, 411 F. Supp. 176 | 172H+1323 | In determining whether a particular transaction is exempt, "the purpose of the transaction or extension of credit is controlling" and not the property which is the subject of the security interest involved. Sapenter v. Dreyco Incorporated, 326 F.Supp. 871, 874 (E.D.La.), aff'd, 450 F.2d 941 (5 Cir.), cert. denied, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1971). We find that the plaintiffs obtained a loan from Hibernia and entered into a contractual agreement with Building Materials for the purpose of repairing and/or improving their intended residence, prior to occupancy. The transaction was not one for "business or commercial purposes' and, therefore, was not exempt from the provisions of the Act. | In determining whether particular transaction is exempt from federal Consumer Credit Protection Act as one for "business or commercial purposes," purpose of transaction or extension of credit is controlling, and not property which is subject of the security interest involved. Truth in Lending Act, SS 102, 103(h), 104(1) as amended 15 U.S.C.A. SS 1601, 1602(h), 1603(1); Truth in Lending Regulations, Regulation Z, S 226.2(k), 15 U.S.C.A. following section 1700. | Is the property which is the subject of a security interest controlling in determining whether a transaction is exempt? | 013723.docx | LEGALEASE-00155751-LEGALEASE-00155753 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7823 | Beaudry v. TeleCheck Services , 579 F.3d 702 | 172H+1649 | Courts have reached a like conclusion in considering other statutes that contain similar statutory damages provisions. "[A]ny actual damage[s] sustained by [a consumer] as a result of [a] failure" to comply with the Fair Debt Collection Protection Act are available as an alternative to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit. See Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir.2007) (noting that the availability of statutory damages under the Fair Debt Collection Protection Act, see 15 U.S.C. " 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"). In considering a claim that the anti-wiretapping provisions of 18 U.S.C. " 2520 had been violated, the Seventh Circuit reasoned that, because the statute permits the recovery of "actual damages ... or statutory damages of not less than $50 and not more than $500," 18 U.S.C. " 2520(c)(1)(A), "the plaintiff need not prove any actual harm," Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir.1998). We have reached the same conclusion when construing the Truth in Lending Act, 15 U.S.C. " 1640(a), which allows recovery of "any actual damage sustained ... as a result of the failure" or "twice the amount of any finance charge," see Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800 (6th Cir.1996) (holding that a consumer did not need to show that she "suffered actual monetary damages" or that she "was actually misled or deceived" in order to prevail on a TILA claim for statutory damages and attorney's fees); accord Edwards v. Your Credit, Inc., 148 F.3d 427, 441 (5th Cir.1998); see also Martinez v. Shinn, 992 F.2d 997 (9th Cir.1993) (reaching the same conclusion with respect to the Migrant and Seasonal Agricultural Worker Protection Act, which allows the recovery of "actual damages, or statutory damages," 29 U.S.C. " 1854(c)(1)). | Any actual damages sustained by a consumer as a result of a failure to comply with the Fair Debt Collection Practices Act are available as an alternative to the recovery of statutory damages. Fair Debt Collection Practices Act, S 813(a), 15 U.S.C.A. S 1692k(a). | Can statutory damages be recovered under the Fair Debt Collection Protection Act (FDCPA) if the consumer has suffered no actual damages? | Consumer Credit - Memo 178 - RK_61840.docx | ROSS-003323453-ROSS-003323455 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7824 | Beaudry v. TeleCheck Services , 579 F.3d 702 | 172H+1649 | Courts have reached a like conclusion in considering other statutes that contain similar statutory damages provisions. "[A]ny actual damage[s] sustained by [a consumer] as a result of [a] failure" to comply with the Fair Debt Collection Protection Act are available as an alternative to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit. See Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir.2007) (noting that the availability of statutory damages under the Fair Debt Collection Protection Act, see 15 U.S.C. " 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"). In considering a claim that the anti-wiretapping provisions of 18 U.S.C. " 2520 had been violated, the Seventh Circuit reasoned that, because the statute permits the recovery of "actual damages ... or statutory damages of not less than $50 and not more than $500," 18 U.S.C. " 2520(c)(1)(A), "the plaintiff need not prove any actual harm," Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir.1998). We have reached the same conclusion when construing the Truth in Lending Act, 15 U.S.C. " 1640(a), which allows recovery of "any actual damage sustained ... as a result of the failure" or "twice the amount of any finance charge," see Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800 (6th Cir.1996) (holding that a consumer did not need to show that she "suffered actual monetary damages" or that she "was actually misled or deceived" in order to prevail on a TILA claim for statutory damages and attorney's fees); accord Edwards v. Your Credit, Inc., 148 F.3d 427, 441 (5th Cir.1998); see also Martinez v. Shinn, 992 F.2d 997 (9th Cir.1993) (reaching the same conclusion with respect to the Migrant and Seasonal Agricultural Worker Protection Act, which allows the recovery of "actual damages, or statutory damages," 29 U.S.C. " | Any actual damages sustained by a consumer as a result of a failure to comply with the Fair Debt Collection Practices Act are available as an alternative to the recovery of statutory damages. Fair Debt Collection Practices Act, S 813(a), 15 U.S.C.A. S 1692k(a). | Does a consumer have to suffer actual damages to recover statutory damages under the Fair Debt Collection Protection Act (FDCPA)? | 013737.docx | LEGALEASE-00155738-LEGALEASE-00155740 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7825 | LVNV Funding v. Mavaega, 527 S.W.3d 128 | 172H+1345 | Under TILA, "a creditor is required to send periodic statements to a debtor at the end of each billing cycle where there is an outstanding balance or where a finance charge was imposed." Kirk v. Lvnv Funding LLC, No. 14-00516-CV-W-DW, 2014 WL 12540481, a (W.D. Mo. Oct. 29, 2014) (citing 15 U.S.C. section 1637(b)). The creditor may be relieved of that requirement, however, if one of four circumstances exists: (1) the creditor deems the account uncollectible; (2) delinquency collection proceedings have been instituted; (3) the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; or (4) furnishing the statement would violate federal law. 12 C.F.R. section 226.5(b)(2)(i). | Under the Truth In Lending Act (TILA), a creditor is required to send periodic statements to a debtor at the end of each billing cycle where there is an outstanding balance or where a finance charge was imposed. Truth in Lending Act S 127, 15 U.S.C.A. S 1637(b). | Should a creditor send periodic statements to debtor where a finance charge was imposed? | 013914.docx | LEGALEASE-00155156-LEGALEASE-00155157 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7826 | Powers v. St. John's Univ. Sch. of Law, 25 N.Y.3d 210 | 141E+1203(3) | Courts have a "restricted role" in reviewing determinations of colleges and universities (Maas v. Cornell Univ., 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966 [1999] [internal quotation marks omitted] ). A determination will not be disturbed unless a school acts arbitrarily and not in the exercise of its honest discretion, it fails to abide by its own rules (Matter of Harris v. Trustees of Columbia Univ. in City of N.Y., 62 N.Y.2d 956, 959, 479 N.Y.S.2d 216, 468 N.E.2d 54 [1984], rev'g for reasons stated in dissenting op. of Kassal, J., 98 A.D.2d 58, 67"73, 470 N.Y.S.2d 368 [1983] ) or imposes a penalty so excessive that it shocks one's sense of fairness (Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 N.Y.2d 222, 234, 356 N.Y.S.2d 833, 313 N.E.2d 321 [1974] ). None of those factors is present here. | A disciplinary determination of a college or university will not be disturbed unless it acts arbitrarily and not in the exercise of its honest discretion, it fails to abide by its own rules, or it imposes a penalty so excessive that it shocks one's sense of fairness. | Do courts have a restricted role in reviewing determinations of colleges and universities? | 017110.docx | LEGALEASE-00155279-LEGALEASE-00155280 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7827 | Forney 921 Lot Dev. Partners I v. Paul Taylor Homes, Ltd., 349 S.W.3d 258 | 156+52(1) | Quasi-estoppel (estoppel by contract) is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd., 817 S.W.2d 160, 164 (Tex.App.-Houston [14th Dist.] 1991, no writ). It is a long-standing doctrine applied to preclude contradictory positions: it precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex.2000); see Schauer v. Von Schauer, 138 S.W. 145, 149"50 (Tex.Civ.App.-Austin 1911, writ ref'd) ("Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim or conduct to the prejudice of another."). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced. Lopez, 22 S.W.3d at 864; Atkinson Gas Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex.App.-Corpus Christi 1994, writ denied); Vessels v. Anschutz Corp., 823 S.W.2d 762, 765"66 (Tex.App.-Texarkana 1992, writ denied). Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. Steubner Realty 19, Ltd., 817 S.W.2d at 164. | "Quasi-estoppel," or "estoppel by contract," is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. | "Is quasi-estoppel applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits?" | 018085.docx | LEGALEASE-00155352-LEGALEASE-00155353 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 7828 | H.R.B. v. J.L.G., 913 S.W.2d 92 | 30+3889 | In determining when a statute of limitations begins running, "[d]amage is ascertainable when the fact of damage "can be discovered or made known," not when a plaintiff actually discovers injury or wrongful conduct.... When damage is ascertainable is an objective determination." Sheehan v. Sheehan, 901 S.W.2d 57, 58"59 (Mo.banc 1995) (citations omitted). If the statute of limitations is raised as an affirmative defense, the trial court may not dismiss unless it is clearly established, on the petition's face and without exception, that the action is barred. Id. at 59. In reviewing the dismissal of a petition, reviewing courts must allow the pleading its broadest intendment, treating all facts alleged as true and construing the petition's allegations favorably to the plaintiff. Id. | In reviewing dismissal of petition, reviewing courts must allow pleading its broadest intendment, treating all facts alleged as true and construing petition's allegations favorably to plaintiff. | Does a review of dismissal of a petition allow pleadings their broadest intendment? | 024459.docx | LEGALEASE-00155849-LEGALEASE-00155850 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 7829 | Chevron Oil Co. v. Traigle, 436 So. 2d 530 | 307A+581 | Without passing on the validity of the Melancon dicta for any action by the defendant short of submission of the case for decision, we conclude that submission of an abandoned case for decision effects a waiver of the right to have the suit dismissed because of want of prosecution under article 561 of the Code of Civil Procedure. The concept of abandonment is not punitive in nature. The notion is one which is designed to discourage vexatious, harrasing or frivolous suits by preventing the plaintiff from allowing such suits to linger indefinitely. | Submission of abandoned case for decision effects waiver of right to have suit dismissed for want of prosecution. LSA-C.C.P. art. 561. | Does submission of abandoned case for decision effect waiver of right to have suit dismissed for want of prosecution? | 039093.docx | LEGALEASE-00155203-LEGALEASE-00155204 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 7830 | Rovello v. Orofino Realty Co., 40 N.Y.2d 633 | 307A+682.1 | On the other hand, affidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims (see e.g., Kelly v. Bank of Buffalo, 32 A.D.2d 875, 302 N.Y.S.2d 60; Raimondi v. Fedeli, 30 A.D.2d 802, 291 N.Y.S.2d 900). Modern pleading rules are "designed to focus attention on whether the pleader has a cause of action rather than on whether he has properly stated one" (6 Carmody-Wait, 2d, N.Y.Prac., s 38:19; see Kelly v. Bank of Buffalo, 32 A.D.2d 875, 302 N.Y.S.2d 60, Supra). In sum, in instances in which a motion to dismiss made under CPLR 3211 (subd. (a), par. 7) is not converted to a summary judgment motion, affidavits may be received for a limited purpose only, serving normally to remedy defects in the complaint, although there may be instances in which a submission by plaintiff will conclusively establish that he has no cause of action. It seems that after the amendment of 1973 affidavits submitted by the defendant will seldom if ever warrant the relief he seeks unless too the affidavits establish conclusively that plaintiff has no cause of action. | Affidavits received on unconverted motion to dismiss for failure to state cause of action are not to be examined for purpose of determining whether there is evidentiary support for the pleading, but may be used freely to preserve inartfully pleaded, but potentially meritorious, claims. CPLR 3211, 3211(a), (a), par. 7, (c), 3212. | "Can affidavits be used freely to preserve inartfully pleaded, but potentially meritorious, claims?" | Pretrial Procedure - Memo # 9860 - C - MS_61454.docx | ROSS-003285003-ROSS-003285004 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7831 | Seip v. Rogers Raw Materials Fund, 408 Ill. App. 3d 434 | 307A+685 | We note that the December 2005 redemption values, and subsequent disbursements, were derived from affidavits provided by Goodman. These values were never said to be objectionable and plaintiffs never filed a counteraffidavit. As we have held before, facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit must be taken as true for purposes of the motion. Atkinson v. Affronti, 369 Ill.App.3d 828, 835, 308 Ill.Dec. 186, 861 N.E.2d 251 (2006). Nevertheless, plaintiffs argue that account statements prepared by Beeland subsequent to November 2005 contradict Goodman's affidavit. The account statements indicate that the Seips' interest totaled $1,798,646.83 and the Ridleys' interest totaled $544,652.54, and plaintiffs argue that those amounts were what they were entitled to in December 2005. Plaintiffs, however, again fail to acknowledge that the vast majority of assets was under bankruptcy protection and inaccessible. | Facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit must be taken as true for purposes of the motion. | Should facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit be taken as true for purposes of the motion? | 039408.docx | LEGALEASE-00155578-LEGALEASE-00155579 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7832 | Jones v. Bank of Chapel Hill, 214 N.C. 794 | 308+92(1) | 5 In Tiffany on Agency, Chap. VIII, p. 180, it is held: "The principal is liable upon a contract duly made by his agent with a third person-(1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. "Apparent authority," as the term is used in the foregoing section, includes authority to do whatever is usual and necessary to carry into effect the principal power conferred upon the agent and to transact the business which he is employed to transact; and the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has not notice. (At p. 181). The principal may be estopped to deny that a person is his agent or that his agent has acted within the scope of his authority." | A principal is liable on agent's contracts, made within scope of agent's actual authority, or his apparent authority, unless third person has notice that agent is exceeding actual authority, and on agent's contracts ratified by the principal. | When is a principal liable upon a contract made by his agent with a third person? | Principal and Agent - Memo 337 - RK.docx | LEGALEASE-00045500-LEGALEASE-00045501 | Order, SA, Sub | 0.76 | 1 | 0 | 1 | 1 | 1 |
| 7833 | Branscum v. Am. Cmty. Mut. Ins. Co., 984 P.2d 675 | 308+92(1) | As a general rule, the acts performed or statements by an agent within the scope of real or apparent authority are binding on the principal regardless whether the principal has actual knowledge of the agent's act. Life Investors Insurance Co. v. Smith, 833 P.2d 864 (Colo.App.1992). However, if an insured has a copy of his or her insurance policy, an oral misrepresentation which contradicts the express terms of the policy will not be imputed to the insurance company. This is because the insured, under these circumstances, is presumed to have knowledge of the restrictions stated in the policy. Pete's Satire, Inc. v. Commercial Union Insurance Co., 698 P.2d 1388 (Colo.App.1985), aff'd sub nom. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc., 739 P.2d 239 (Colo.1987). | As a general rule, the acts performed or statements by an agent within the scope of real or apparent authority are binding on the principal regardless of whether the principal has actual knowledge of the agent's act. | Is the principal bound regardless of having actual knowledge of agents act? | Principal and Agent - Memo 346 - RK_61934.docx | ROSS-003294699-ROSS-003294700 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7834 | People v. Schupper, 140 P.3d 293 | 3.77E+16 | Section 18"8"306 clearly prohibits a person from using deceit or threats of violence or economic reprisal to influence a public servant's actions. People v. Janousek, 871 P.2d 1189 (Colo.1994). The critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action. People v. Norman, 703 P.2d 1261 (Colo.1985). Applying statutory construction rules, the Colorado Supreme Court noted that "deceit" is not defined in the statute but is a term of common usage such that people of ordinary intelligence need not guess at its meaning. The court therefore referred to the dictionary definition of "deceit" as "any trick, collusion, contrivance, false representation, or underhand practice used to defraud another." People v. Janousek, supra, 871 P.2d at 1196 (quoting Webster's Third New International Dictionary 584 (1986) ) | The critical elements of attempt to influence a public servant are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action. West's C.R.S.A. S 18-8-306. | What are the critical elements of attempt to influence a public servant? | 046773.docx | LEGALEASE-00155170-LEGALEASE-00155171 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 7835 | Gwinn v. State, 201 Ind. 420 | 21+9 | The appellant contends that, since the affidavit for the search warrant was made on information and belief, the search warrant was therefore issued without probable cause, and that the search was void and in violation of section 11, art. 1, Const. (section 63, Burns' 1926), and the evidence obtained thereby was inadmissible, citing Wallace v. State (1927) 199 Ind. 317, 157 N. E. 657, and State v. Blystone (1928) 200 Ind. -, 162 N. E. 233. These cases do not hold that, because an affidavit is made on information and belief, any search warrant issued thereon is issued without probable cause and is void, but they hold that the search warrant is invalid when it is based "wholly only and solely" upon an affidavit on information and belief, and "not upon any other additional facts or information whatever." Probable cause for issuing the search warrant may be shown to the issuing magistrate either by positive allegation of facts in the affidavit or by sworn testimony.] | Probable cause for issuing search warrant may be shown by positive allegations of facts in affidavit or by sworn testimony. | Can probable cause for issuing search warrant be shown by positive allegations or by sworn testimony? | Affidavits - Memo 82 - _1bNghHeASfVt0YWQacmhlj0mC_ayPEWJp.docx | ROSS-000000258-ROSS-000000259 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 7836 | Temple v. Baker, 125 Pa. 634 | 83E+428 | On the whole case we conclude the plaintiffs, the payees, are not entitled to judgment on the special verdict, for the following reasons: The irregular or anomalous indorsement of Temple imposed upon him the liabilities of second indorser, and did not make him liable to the payees. His indorsement cannot be turned into a contract to guaranty payment of the note by parol testimony, because of the statute of frauds. The words, "Credit the drawer," imply no promise or undertaking on the part of him who uses them, but are a direction to all persons to whom the note may be presented to treat with the drawer as the owner, notwithstanding the apparent title of the indorsee. This was the question on which the case turned in the court below, and the only one involved which was not well settled by our own cases. It is apparent that the application of these principles to this case leaves the plaintiff nothing upon which to stand, and the judgment is therefore reversed. | The words "Credit the drawer," written on the face of a note by an indorser, imply no promise or undertaking on his part, but are merely a direction to all persons to whom the note may be presented to treat with the maker as the owner, notwithstanding the apparent title of the indorsee. | Do the words Credit the drawer imply an undertaking? | 010740.docx | LEGALEASE-00156395-LEGALEASE-00156396 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7837 | Epperson v. State of Ark., 393 U.S. 97 | 92+1342 | There is and can be no doubt that the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma. In Everson v. Board of Education, this Court, in upholding a state law to provide free bus service to school children, including those attending parochial schools, said: "Neither (a State nor the Federal Government) can pass laws which aid one religion, aid all religions, or prefer one religion over another." 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947). | The First Amendment does not permit a state to require that teaching and learning be tailored to principles or prohibitions of any religious sect or dogma. U.S.C.A.Const. Amend. 1. | Does the First Amendment permit the State to require that teaching and learning be tailored to the principles or prohibitions of any religion? | 016816.docx | LEGALEASE-00156052-LEGALEASE-00156053 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7838 | Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., 115 A.D.3d 128 | 307A+685 | On the other hand, the motion may be used to dispose of an action in which the plaintiff identified a cognizable cause of action but failed to assert a material allegation necessary to support the cause of action. As to the latter, the Court of Appeals has made clear that a defendant can submit evidence in support of the motion attacking a well-pleaded cognizable claim (see Rovello, 40 N.Y.2d 633, 389 N.Y.S.2d 314, 357 N.E.2d 970; Guggenheimer, 43 N.Y.2d 268, 401 N.Y.S.2d 182, 372 N.E.2d 17; see also Board of Managers of Fairways at N. Hills Condominiums v. Fairways at N. Hills, 150 A.D.2d 32, 545 N.Y.S.2d 343 [2d Dept.1989] ). | A defendant can submit evidence in support of a motion to dismiss for failure to state a cause of action, which attacks a well-pleaded cognizable claim. McKinney's CPLR 3211(a)(7). | "Can a defendant submit evidence in support of a motion to dismiss for failure to state a cause of action, which attacks a well-pleaded cognizable claim?" | 024491.docx | LEGALEASE-00156034-LEGALEASE-00156035 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 7839 | Simmons v. McSimmons, 261 A.D.2d 547 | 307A+685 | Moreover, where, as here, the moving party contributed to the delay, a motion to dismiss may be denied without requiring an affidavit of merit (see, Schoenhals v. Kissing Bridge Corp., 96 A.D.2d 710, 465 N.Y.S.2d 498). In any event, the petitioner submitted a verified petition, which was the equivalent of an affidavit of merit (see, CPLR 105[u] ), along with deposition testimony and other documents, which were sufficient to establish that she had a meritorious claim (see, Dick v. Samaritan Hospital, 115 A.D.2d 917, 496 N.Y.S.2d 814, supra; Gibson v. D'Avanzo, 99 A.D.2d 766, 472 N.Y.S.2d 12). Under these circumstances, the Supreme Court did not improvidently exercise its discretion by denying the motion to dismiss the petition. | Where moving party contributed to the delay, a motion to dismiss for failure to prosecute may be denied without requiring an affidavit of merit. McKinney's CPLR 3216(e). | "Where moving party contributed to the delay, can a motion to dismiss be denied without requiring an affidavit of merit?" | 024535.docx | LEGALEASE-00156232-LEGALEASE-00156233 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7840 | Ground Improvement Techniques v. Merchants Bonding Co., 707 So. 2d 1138 | 401+68 | It is incumbent upon the parties to submit affidavits or other evidence that will shed the necessary light on the issue of the convenience of the parties and witnesses and the interest of justice. Id. at 837 (Cope, J., concurring in part and dissenting in part). Based upon the rationale of the cases interpreting section 47.122, Florida Statutes and the language of the new Rule 1.061, it appears that the procedure to be followed under the forum non conveniens rule is the same as the procedure to be followed under the forum non conveniens statute. To be clear: any defendant seeking dismissal of a suit based upon Rule 1.061 forum non conveniens must support the motion by affidavit or other evidence offered under oath. Similarly, if the issue of Rule 1.061 forum non conveniens is raised by the court, the decision to dismiss must be supported by similar record evidence. | Any defendant seeking dismissal of suit based upon forum non conveniens must support motion by affidavit or other evidence offered under oath; only exception would be where complaint itself shows on its face that transfer is warranted. West's F.S.A. S 47.122; West's F.S.A. RCP Rule 1.061. | Is the procedure to be followed under the forum non conveniens rule the same as the procedure to be followed under the forum non conveniens statute? | 024549.docx | LEGALEASE-00156096-LEGALEASE-00156097 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7841 | Carl J. Herzog Found. v. Univ. of Bridgeport, 41 Conn. App. 790 | 307A+687 | A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. Barde v. Board of Trustees, 207 Conn. 59, 63, 539 A.2d 1000 (1988). A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits. Bradley's Appeal From Probate, 19 Conn.App. 456, 563 A.2d 1358 (1989). If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken. Weidenbacher v. Duclos, 234 Conn. 51, 54 n. 5, 661 A.2d 988 (1995). In this case there were no accompanying affidavits, no hearing was held and the defendant accepted the allegations of the plaintiff's complaint as true, for the purpose of the motion to dismiss only. There is no transcript and there are no exhibits. We, therefore, decide the appeal solely on the allegations of the plaintiff's complaint. | Motion to dismiss admits all facts well pleaded and invokes any record that accompanies motion, including supporting affidavits that contain undisputed facts. | Does a motion to dismiss admit all facts well pleaded and invokes any record that accompanies a motion? | 024577.docx | LEGALEASE-00155972-LEGALEASE-00155973 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7842 | Cornelius v. Benefield, 168 So. 3d 1028 | 307A+690 | "Rule 41(b) dismissals with prejudice will be affirmed only upon a showing of "a clear record of delay or contumacious conduct by the plaintiff[.]" " Am. Tel., 720 So.2d at 181 (13) (quoting Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)). "What constitutes failure to prosecute depends on the facts of the particular case." Id. at (12). Although other factors are typically present when a dismissal with prejudice is upheld, "delay alone may be sufficient[.]" Holder, 54 So.3d at 201 (34). | Although other factors are typically present when a dismissal with prejudice for failure to prosecute is upheld, delay alone may be sufficient. (Per Carlton, J., with four judges concurring and one judge concurring in result.) Rules Civ.Proc., Rule 41(b). | "Although other factors are typically present when a dismissal with prejudice for failure to prosecute is upheld, can delay alone be sufficient?" | Pretrial Procedure - Memo # 10258 - C - SN_61763.docx | ROSS-003281510-ROSS-003281511 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 7843 | DaCosta v. Trade-Winds Envtl. Restoration, 61 A.D.3d 627 | 307A+685 | However, the plaintiff sufficiently alleged the third cause of action to recover damages under the theory of strict liability. On a motion to dismiss pursuant to CPLR 3211(a)(7), the court may consider affidavits submitted by the plaintiff to remedy any defects in the complaint (see Leon v. Martinez, 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 638 N.E.2d 511; Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 635"636, 389 N.Y.S.2d 314, 357 N.E.2d 970; Meyer v. Guinta, 262 A.D.2d 463, 464, 692 N.Y.S.2d 159). The plaintiff alleged that the decontamination process was abnormally dangerous in that it involved the use of chemicals and other toxic substances that were extremely hazardous and harmful to personal property, particularly electronic equipment like that in her recording studio. Although the plaintiff could not state the precise chemicals or toxic substances used, the Health and Safety Plan, which was attached to the complaint and which described the proposed decontamination procedure, indicated that certain decontamination methods other than a buffered bleach solution, which were not discussed with the plaintiff, could be used. Accordingly, dismissal of the strict liability cause of action was premature (see CPLR 3211[d]; Cantor v. Levine, 115 A.D.2d 453, 454, 495 N.Y.S.2d 690). | On a motion to dismiss for failure to state a cause of action, the court may consider affidavits submitted by the plaintiff to remedy any defects in the complaint. McKinney's CPLR 3211(a)(7). | "When considering a motion to dismiss, can a court freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint?" | Pretrial Procedure - Memo # 9903 - C - RF_62115.docx | ROSS-003282254-ROSS-003282255 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7844 | State v. Collie, 108 Ohio App. 3d 580 | 3.77E+10 | Generally, under the menacing laws, the state does not need to prove the offender's ability to carry out the threat or any movement toward carrying it out. State v. Schwartz (1991), 77 Ohio App.3d 484, 602 N.E.2d 671; State v. Roberts (Sept. 26, 1990), Hamilton App. No. C"890639, unreported, 1990 WL 410625; Committee Comment to R.C. 2903.22(A). Collie was charged with a violation of R.C. 2919.25(C), which provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Unlike the menacing laws, this provision of the domestic violence statute contains the element of "imminence." "Imminent" means "threatening to occur immediately." Webster's Second International Dictionary (1959) 1245. | Generally, under menacing laws, state does not need to prove offender's ability to carry out threats or any movement toward carrying it out. R.C. SS 2903.21, 2903.22. | "Under menacing laws, does the state need to prove the offender's ability to carry out threats?" | Threats - Memo #112 - C - LB_62108.docx | ROSS-003294475-ROSS-003294476 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7845 | Spence v. Spence, 368 S.C. 106 | 307A+690 | Dismissal of a case "without prejudice" means a plaintiff may reassert her complaint by curing defects that led to the dismissal. In contrast, dismissal of a complaint "with prejudice" is intended to bar relitigation of the same claim. Collins v. Sigmon, 299 S.C. 464, 467, 385 S.E.2d 835, 837 (1989). | Dismissal of a case "without prejudice" means a plaintiff may reassert her complaint by curing defects that led to the dismissal. | "Does a dismissal of a case ""without prejudice"" mean a plaintiff can reassert her complaint by curing defects that led to the dismissal?" | Pretrial Procedure - Memo # 10523 - C - BP_62423.docx | ROSS-003292340-ROSS-003292341 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 7846 | Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130 | 371+2002 | To determine whether a particular charge is a "fee" or a "tax," the general inquiry is to assess whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." See Collins Holding Corp. v. Jasper County, 123 F.3d 797, 800 (4th Cir.1997). To aid this analysis, courts have developed a three-part test that looks to different factors: (1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge. See San Juan Cellular Telephone Co. v. Public Service Comm'n, 967 F.2d 683, 685 (1st Cir.1992); see also Bidart Bros. v. California Apple Comm'n, 73 F.3d 925, 931 (9th Cir.1996). | To determine whether a particular charge is a "fee" or a "tax," the general inquiry is to assess whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." | What is the general inquiry to determine whether a particular charge is a fee or a tax? | 046143.docx | LEGALEASE-00156450-LEGALEASE-00156451 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 7847 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+489 | Instruments that are not negotiable, such as the note here, may, like negotiable instruments, be transferred by assignment. Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, 567 S.W.2d 710 (Mo.App.1978). The assignee of a note that is not negotiable, however, takes it subject to all defenses the maker may have against the note prior to notice of the assignment. [7]. | Instruments that are not negotiable may, like negotiable instruments, be transferred by assignment, but the assignee of note that is not negotiable takes it subject to all defenses the maker may have against note prior to notice of assignment. V.A.M.S. S 400.3-202(3). | Does an assignee of a nonnegotiable instrument take it subject to all defenses that the maker has against the instrument prior to notice of the assignment? | Bills and Notes - Memo 1246 - RK.docx | LEGALEASE-00046476-LEGALEASE-00046477 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 7848 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+481 | We have already seen in Kaw Valley State Bank & Trust, 567 S.W.2d 710, that the owner of a note that is not negotiable may transfer his interest therein by assignment. An earlier case, Sauter v. Leveridge, 103 Mo. 615, 15 S.W. 981 (1891), reached the same result. There, the owner-payee of two notes that were past maturity, and thus no longer negotiable, assigned the notes to another. The assignment was by separate instrument, the notes themselves being lost. Judgment for the assignee against the maker was affirmed. It is thus established in Missouri that even though a note does not possess the quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another. Any language, however informal, if it shows the intention of the owner of a chose in action to transfer it, and sufficiently identifies the subject matter, is sufficient to vest the property therein in the assignee. Greater Kansas City Baptist and Community Hospital Association, Inc. v. Businessmen's Assurance Co., 585 S.W.2d 118, 119[1] (Mo.App.1979); Halvorson v. Commerce Trust Co., 222 S.W. 897, 898 (Mo.App.1920). | Even though note does not possess quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another, and any language, however informal, if it shows intention of owner of chose in action to transfer it, and sufficiently identifies subject matter, is sufficient to vest property therein in assignee. | Is the intention of the owner sufficient to identify the subject matter? | Bills and Notes - Memo 1248 - RK_62538.docx | ROSS-003293941-ROSS-003293942 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7849 | Eakin v. Citizens' State Bank, 67 Kan. 338 | 8.30E+114 | Eakin sued the Citizens' State Bank of Ness City upon its promise, by a telegram dated September 21, 1901, to pay a check upon it for $130 given him by Howder & Hall on June 3, 1901. The district court sustained a demurrer to the petition upon the ground that, under the provisions of section 9 of chapter 14 (running section 548) of the General Statutes of 1901, such an action would not lie, except in favor of one who received the check for a valuable consideration upon the faith of the acceptance. This section and the one preceding it, to which it makes reference, read as follows:"Sec. 8. No person within this state shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent."Sec. 9. If such acceptance be written on paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration." | A bank check is a bill of exchange, within Gen.St.1901, c. 14, S 9, providing that an acceptance of a bill of exchange, written on paper other than the bill, shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration. | Should an acceptance of a bill of exchange be written on paper other than the bill itself? | Bills and Notes - Memo 27 - AM_63331.docx | ROSS-003280515-ROSS-003280516 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7850 | Greer v. Carter Oil Co., 373 Ill. 168 | 156+52(1) | The evidence shows that Mark Greer acquired title from the owner, Mrs. Shaw, in 1933. The deed was not recorded. The Carter Oil Company lease from Mrs. Shaw was made in May and recorded in June, 1936. In May, 1937, and May, 1938, rental of $14.30 was paid the grantor, Mrs. Shaw, by depositing it in the bank at St. Elmo. The first producing well in this territory was brought in in January, 1938. The tax records show payment by Mrs. Shaw for the years 1934, 1935, 1936 and 1937. There was nothing to indicate appellants claimed prior rights until July, 1938, when the deeds were recorded. The suit to cancel the leases was started in October, 1938. A serious question was thus raised as to the validity of the oil lease. If the contention of appellants was right it was absolutely void. If, during the remaining seven months of the lease, appellees produced a well, they would be liable to account for the oil produced as though they were trespassers. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332. If they brought in a dry hole they might be liable for damages for destroying the market value of the leasehold. It was extremely hazardous for appellee, the Carter Oil Company, to move in any direction until the litigation was settled and it, of course, could not control the duration of the litigation. This situation was brought about by the grantor of both appellants and appellees, namely, Bennie Irey Shaw. It could have been avoided had appellants placed their deeds of record and given notice to the world of their rights. Under these conditions, does the principle of estoppel apply to give appellees a reasonable additional period beyond the term of their lease in which to exercise their right to drill. As affecting oil and gas leases, this is a new proposition in Illinois but the general principle is recognized. In Mills v. Graves, 38 Ill. 455, 87 Am.Dec. 314, an estoppel is defined to be an impediment or bar to the assertion of a right of action arising by means of a man's own act or | "Estoppel" is an impediment or bar to the assertion of a right of action arising by means of one's own act, or where he is forbidden to speak against his own act, and extends to and binds privies in blood, privies in estate, and privies in law. | "Is an estoppel an impediment to the assertion of a right, arising as a result of a man's own act?" | 017825.docx | LEGALEASE-00156803-LEGALEASE-00156804 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 7851 | State ex rel. Koster v. Morningland of the Ozarks, 384 S.W.3d 346 | 302+367(2) | Appellant's third argument challenges the failure to identify the cheese to be destroyed. While Missouri is a fact-pleading state, Whipple v. Allen, 324 S.W.3d 447, 449 (Mo.App. E.D.2010), a motion for a more definite statement inherently concedes a cause of action and a motion to dismiss is a more appropriate vehicle in contesting the sufficiency of a petition. Where the requested clarification requires information most likely known to the moving party, this Court has upheld the lower court's denial of a motion for a more definite statement. In Glidewell, the defendant challenged the trial court's refusal to grant a motion for a more definite statement. Glidewell, 923 S.W.2d at 951"52. In that case, a physician at the defendant hospital failed to correctly diagnose the plaintiff with colorectal cancer, which eventually led to the death of the plaintiff. Id. at 944. The trial court dismissed the defendant's motion for a more definite statement targeting the allegation the physician was an employee of the hospital. Id. at 951"52. | While Missouri is a fact-pleading state, a motion for a more definite statement inherently concedes a cause of action, and a motion to dismiss is a more appropriate vehicle in contesting the sufficiency of a petition. V.A.M.R. 55.27(d). | Does a motion for a more definite statement inherently concede a cause of action? | Pretrial Procedure - Memo # 10593 - C - KG_62630.docx | ROSS-003279850-ROSS-003279851 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 7852 | In re Frost Nat. Bank, 103 S.W.3d 647 | 307A+693.1 | A plaintiff right to dismiss his suit exists from the moment a written motion is filed or an oral motion is made in open court, unless the defendant has, prior to that time, filed pleadings seeking affirmative relief. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982); Zimmerman v. Ottis, 941 S.W.2d 259, 261 (Tex.App. Corpus Christi 1996, orig. proceeding); Rosenthal v. Ottis, 865 S.W.2d 525, 527 (Tex.App. Corpus Christi 1993, orig. proceeding). The trial court loses its plenary power thirty days after it signs an order granting the non-suit, or seventy-five days after it signs an order if a motion for new trial is filed. Harris County Appraisal Dist. v. Wittig, 881 S.W.2d 193, 194 (Tex.App. Houston 1st Dist. 1994, no pet.). | The trial court loses its plenary power 30 days after it signs an order granting non-suit, or 75 days after it signs an order if a motion for new trial is filed. | Does the trial court lose its plenary power 30 days after it signs an order granting non-suit? | Pretrial Procedure - Memo # 10605 - C - NE_62641.docx | ROSS-003292116-ROSS-003292117 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7853 | Massey v. Davis, 650 S.W.2d 551 | 307A+693.1 | This court's prior holding in Atoka, Inc. v. Thornton, 566 S.W.2d 686 (Tex.Civ.App."Eastland 1978, no writ), is expressly overruled insofar as it holds that an order of dismissal for want of prosecution also disposes of the cross action by implication. The rule of North East Independent School District v. Aldridge, 400 S.W.2d 893 (Tex.1966), is not applicable to orders of dismissal for want of prosecution where the case is not "regularly set for a conventional trial on the merits." 400 S.W.2d at 897. See also Schlipf v. Exxon Corporation, 644 S.W.2d 453 (Tex.1982), 4 McDonald, Texas Civil Practice secs. 17.18 and 17.19 (Rev.1971), Annotation, 48 American Law Reports 2d 748 (1956). | An order of dismissal for want of prosecution does not also dispose of a cross action by implication; overruling Atoka, Inc. v. Thornton, 566 S.W.2d 686. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does an order of dismissal for want of prosecution dispose of a cross action by implication? | Pretrial Procedure - Memo # 10652 - C - BP_62465.docx | ROSS-003280259-ROSS-003280260 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 7854 | Hicks v. Oxford, 113 Ga. App. 593 | 307A+693.1 | The effect of a nonsuit is to abruptly terminate the whole case, putting the plaintiff out of court and leaving him at liberty to bring it again. There is no such thing as a partial nonsuit. Talbotton R. Co. v. Gibson, 106 Ga. 229, 237, 32 S.E. 151; Southern States Exploring &c. Syndicate v. McManus, 113 Ga. 982(4), 39 S.E. 480; White v. Boyd, 58 Ga.App. 219, 227, 198 S.E. 81; Jones v. Britt, 75 Ga.App. 142, 146, 42 S.E.2d 648. Accordingly, the judgment purporting to grant a nonsuit as to certain paragraphs of the plaintiff's one count petition will be treated as having granted a nonsuit as to the entire case, since the paragraphs referred to in the order related to virtually all of the substance of the plaintiff's complaint. The subsequent announcement of the plaintiff to the effect that he would take a nonsuit as to the rest of his case was therefore without legal significance. | Effect of a nonsuit is to promptly terminate the whole case, putting plaintiff out of court and leaving him at liberty to bring it again. | "Is the effect of a nonsuit to promptly terminate the whole case, putting a plaintiff out of court and leaving him at liberty to bring it again?" | 025293.docx | LEGALEASE-00156987-LEGALEASE-00156988 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7855 | Fisher v. Eckert, 94 Cal. App. 2d 890 | 307A+693.1 | A dismissal of an action with prejudice is a final decision of the action and has the effect of terminating it and the rights of the parties are affected by it and in effect it is a final judgment in favor of defendants and defendants are entitled to recover their costs. Sec. 1032, C.C.P.; Spreckels v. Spreckels, 172 Cal. 789, 158 P. 543; Whitaker v. Moran, 23 Cal.App. 758, 139 P. 901; 9 Cal.Jur. 524, secs. 16"17. Entry in the minutes of a dismissal by the court constitutes sufficient entry of the judgment. Colby v. Pierce, 17 Cal.App.2d 612, 62 P.2d 778; Consolidated Construction Co. v. Pacific Electric Ry. Co., 184 Cal. 244, 193 P. 238; King v. Superior Court, 12 Cal.App.2d 501, 56 P.2d 268; Gwinn v. Ryan, 33 Cal.2d 436, 202 P.2d 51. | A dismissal of an action with prejudice is a final decision of the action and has the effect of terminating it and rights of the parties are affected by it to extent that it is "final judgment" in favor of defendants and defendants are entitled to recover costs. Code Civ.Proc. $ 1032. | Is a dismissal of an action with prejudice a final decision of the action and has the effect of terminating it? | 025315.docx | LEGALEASE-00157040-LEGALEASE-00157041 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 7856 | J.D. ex rel. Scipio-Derrick v. Davy, 415 N.J. Super. 375 | 307A+622 | "Where, however, it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is appropriate." County of Warren v. State, 409 N.J.Super. 495, 503, 978 A.2d 312 (App.Div.2009), certif. denied, 201 N.J. 153, 988 A.2d 1176, cert. denied, sub. nom. Shope v. N.J., """ U.S. """", 130 S.Ct. 3508, """ L.Ed.2d """" (2010). If dismissal is warranted, it should usually be without prejudice. Printing Mart"Morristown, supra, 116 N.J. at 772, 563 A.2d 31. However, when an equal protection challenge fails to state a claim, our courts have not hesitated to dismiss the complaint with prejudice. See, e.g., Sojourner A. v. N.J. Dep't of Human Servs., 177 N.J. 318, 324, 828 A.2d 306 (2003); Felicioni v. Admin. Office of Courts, 404 N.J.Super. 382, 391, 961 A.2d 1207 (App.Div.2008); Stubaus, supra, 339 N.J.Super. at 63, 770 A.2d 1222. Appellate review of the grant of a motion to dismiss is de novo. County of Warren, supra, 409 N.J.Super. at 504, 978 A.2d 312. | If dismissal for failure to state a claim is warranted, it should usually be without prejudice; however, when an equal protection challenge fails to state a claim, courts do not hesitate to dismiss the complaint with prejudice. N.J.S.A. Const. Art. 1, par. 1; R. 4:6-2(e). | "When an equal protection challenge fails to state a claim, do courts not hesitate to dismiss the complaint with prejudice?" | 025613.docx | LEGALEASE-00157624-LEGALEASE-00157625 | Order, SA, Sub | 0.73 | 1 | 0 | 1 | 1 | 1 |
| 7857 | Franck v. Farmers New World Life Ins. Co., 445 F. Supp. 2d 954 | 308+1 | Mrs. Franck responds that even if the policy's terms required delivery of the policy to Mr. Franck in order for it to be enforceable, delivery of the policy to Radwanski was constructive delivery of the policy to Mr. Franck. She contends that Radwanski was a "dual agent" of Farmers and Mr. Franck because he completed the policy applications and submitted other necessary documents to help Mr. Franck obtain coverage. Under Illinois law, unless the facts clearly show that an intermediary is an agent of the insured, whether an intermediary is an agent for the insurer or the insured is a question of fact. Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 264 (7th Cir.1986). Illinois courts analyze four factors to determine whether an intermediary is an agent for a party: (1) who first set the intermediary in motion; (2) who could control his action; (3) who was to pay him; (4) and whose interests he was there to protect. See Krause v. Pekin Life Ins. Co., 194 Ill.App.3d 798, 805, 551 N.E.2d 395, 399, 141 Ill.Dec. 402, 406 (Ill.App.Ct.1990). Here, taking the facts in the light most favorable to Mrs. Franck, there is evidence that Radwanski was serving as a dual agent for Farmers and Mr. Franck. Mr. Franck first set Radwanski in motion by contacting him to obtain quotes, though he was doing so in response to a letter sent by Farmers advertising its insurance offerings. Mr. Franck had previously used Radwanski as a broker to obtain other Farmers' policies, but Radwanski had an ongoing relationship with Farmers in selling other Farmers' policies. Both Mr. Franck and Farmers could control Radwanski's actions; both gave Radwanski orders to carry out. Radwanski was paid by commissions from Farmers, and not by Radwanski, but did not have a salary from Farmers. Finally, Radwanski acted to protect both parties' interests in the transaction. | Under Illinois law, four factors to determine whether an intermediary is an agent for a party: (1) who first set the intermediary in motion; (2) who could control his action; (3) who was to pay him; (4) and whose interests he was there to protect. | What are the factors used to determine whether an intermediary is an agent? | Principal and Agent - Memo 426 - RK_63546.docx | ROSS-003307774-ROSS-003307775 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7858 | Ritter v. BJC Barnes Jewish Christian Health Sys., 987 S.W.2d 377 | 308+1 | Ritter next argues that BJC is vicariously liable for the acts that caused Mr. Ritter's injuries. The following elements are required to create an agency relationship sufficient to establish vicarious liability: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent must be subject to the principal's control. Wray by and through Wray v. Samuel U. Rodgers' Community Health Center, 901 S.W.2d 167, 170 (Mo.App. W.D.1995). "[T]he touchstone is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act." J.M. v. Shell Oil Company, 922 S.W.2d at 764. In order to find BJC vicariously liable for the acts of Christian Hospital, the control or right to control must relate to the "physical activities of [Christian Hospital] or to the details of the manner in which the work is done by [Christian Hospital]." | The following elements are required to create an agency relationship sufficient to establish vicarious liability: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent must be subject to the principal's control. | How is vicarious liability established? | 042068.docx | LEGALEASE-00157856-LEGALEASE-00157857 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7859 | Sykes v. State, 578 N.W.2d 807 | 3.77E+11 | The terroristic threat statute, under which Sykes was charged, provides that an individual is guilty of a felony if he or she threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another or * * * to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience * * *. Minn.Stat. " 609.713, subd. 1 (1996). This section requires that the "defendant utter the threat with the purpose of terrorizing another." State v. Schweppe, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). "Purpose in this context means aim, objective, or intention [and][t]errorize means to cause extreme fear by use of violence or threats." Id. (citations omitted). The effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent. Id. at 401, 237 N.W.2d at 614. "Intent * * * is a subjective state of mind usually established only by reasonable inference from surrounding circumstances." Id. | Under statute prohibiting making of terroristic threats, threat made for "purpose" of terrorizing another means aim, objective, or intention and "terrorize" means to cause extreme fear by use of violence or threats. M.S.A. $ 609.713, subd. 1. | "Under the statute prohibiting the making of terroristic threats, what does a threat made for ""purpose"" of terrorizing another mean?" | "Threats, Stalking and Harassment - Memo #146 - C - LB_63321.docx" | ROSS-003281129-ROSS-003281130 | Condensed, Order, SA, Sub | 0.77 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7860 | Morris v. Ohio Cas. Ins. Co., 35 Ohio St. 3d 45 | 83E+501 | R.C. 1301.01(QQ) provides that an " "[u]nauthorized" signature or indorsement [is] one made without actual, implied, or apparent authority and includes a forgery." Further, R.C. 1303.40(A) provides that an " unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value." Thus, an unauthorized signature does not operate as the signature of the named payee and, accordingly, may not act to pass title to an instrument or relieve the drawer of his obligation to pay the payee. | Unauthorized signature does not operate as signature of named payee, and, accordingly may not act to pass title to instrument or relieve drawer of his obligation to pay payee. R.C. SS 1301.01(QQ), 1303.40(A). | Is a drawer of an instrument relieved of his obligation to pay the payee in cases where the signature on the instrument is unauthorized? | Bills and Notes-Memo 967- JK_63528.docx | ROSS-003282827-ROSS-003282828 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 7861 | Bernardo v. Anello, 61 Ohio App. 3d 453 | 83E+501 | R.C. 1303.40(A) provides that an unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value. Hence, an unauthorized signature does not operate as the signature of the named payee and accordingly may not act to pass title to an instrument or relieve the drawer of his obligation to pay the payee. Morris, supra, at 50, 517 N.E.2d at 909. | Unauthorized signature does not operate as signature of named payee and accordingly may not act to pass title to instrument or relieve drawer of his or her obligation to pay payee. R.C. S 1303.40(A). | Is a drawer of an instrument relieved of his obligation to pay the payee in cases where the signature on the instrument is unauthorized? | 010974.docx | LEGALEASE-00158230-LEGALEASE-00158231 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7862 | Lee v. Skidmore, 49 Ohio App. 2d 347 | 83E+503 | Thus, the statute creates an absolute right to recover in favor of the plaintiff upon proof that the draft was paid on a forged endorsement, as the defendant claims it paid the face amount thereof. Gast v. American Cas. Co. (1968), 99 N.J.Super. 538, 240 A.2d 682. | Statute dealing with conversion of an instrument on the basis of forged endorsement creates an absolute right to recover in favor of payee upon proof that the draft was paid on a forged endorsement where the drawer-drawee claims that it paid the face amount thereof. R.C. S 1303.55. | Can the owner of a draft recover upon proof that the draft was paid over a forged endorsement? | 010976.docx | LEGALEASE-00158232-LEGALEASE-00158233 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 7863 | Rodgers v. RAB Investments, Ltd., 816 S.W.2d 543 | 289+924 | Every partner has the inherent power to dissolve a partnership even though the dissolution would violate the partnership agreement. Karrick v. Hannaman, 168 U.S. 328, 334"35, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897); Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 667 (1st Cir.1984); Woodruff v. Bryant, 558 S.W.2d 535, 539 (Tex.Civ.App."Corpus Christi 1977, writ ref'd n.r.e.). | Every partner has inherent power to dissolve partnership even though dissolution would violate partnership agreement; dissolution may breach partnership contract, but it may be accomplished nonetheless. | Does every partner have inherent power to dissolve a partnership even when the dissolution would violate the partnership agreement? | 021802.docx | LEGALEASE-00158548-LEGALEASE-00158549 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 7864 | Conrad v. Buck, 21 W.Va. 396 | 289+928 | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. (p. 407.) | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | Does the assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts lead to dissolution of partnership? | Partnership - Memo 507 - GP_63820.docx | ROSS-003283503-ROSS-003283504 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 7865 | Penrod Drilling Co. v. Silvertooth, 144 S.W.2d 335 | 289+818 | While the record shows that the new partners of Penrod Drilling Company, said three trust estates, did not assume the existing liabilities against said partnership, in the absence of an agreement to do so, the law is well settled that an incoming partner takes only a partnership interest in the partnership property subject to trusts, equities, charges and liens existing against it. Reese v. Carey Bros., Tex.Civ.App., 286 S.W. 307; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S.W. 122, Ann.Cas. 1916E, 446; 32 Tex.Jur. 467; 47 Corpus Juris 1029. | An incoming partner takes only partnership interest in the partnership property subject to trusts, equities, charges, and liens existing against it. | "Does the incoming partner take only a partnership interest in the partnership property subject to trusts, equities, charges and liens against it?" | Partnership - Memo 510 - GP_63823.docx | ROSS-003294053 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 7866 | Kohlenberger v. Tyson's Foods, 256 Ark. 584 | 302+17 | Appellant admits that the complaint alleges notification of breach of warranty. Consequently, appellant argues there was no basis for the recovery of special, incidental or consequential damages prayed for in the complaint. This argument brings us to a consideration, first, of the damages recoverable for a breach of warranty and, then, of the right to recovery of special, incidental and consequential damages in the light of the facts alleged and those not alleged. In passing, however, we must say that appellee's positive, but unsupported, assertion that Kohlenberger's default bars it from raising these questions is without merit. A default admits only those facts alleged in the complaint and if they are insufficient to support the judgment, it will be reversed. Arkansas Bond Co. v. Harton, 191 Ark. 665, 87 S.W.2d 52; Wilson v. Overturf, 157 Ark. 385, 248 S.W. 898; Thompson v. Hickman, 164 Ark. 469, 262 S.W. 20. Although it is unnecessary that a complaint set out the evidence relied upon or a history of transactions leading up to the essential facts, it is necessary that substantive or issuable facts be alleged, and conclusions stated cannot be considered on default. Strange v. Bodcaw Lbr. Co., 79 Ark. 490, 96 S.W. 152, 116 Am.St.Rep. 92; Arkansas Bond Co. v. Harton, supra; Wood v. Drainage District No. 2, 110 Ark. 416, 161 S.W. 1057; Thompson v. Hickman, supra. The facts constituting the cause of action must be averred by stating them in direct and positive allegations, and not by way of argument, inference or belief. Wilson v. Overturf, supra. | Facts constituting cause of action must be averred by stating them in direct and positive allegations, and not by way of argument, inference or belief. | "Should facts constituting the cause of action be averred by way of argument, inference or belief?" | Pleading - Memo 575 - RMM_64346.docx | ROSS-003293140-ROSS-003293141 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 7867 | Conte v. R & A Food Servs., 644 So. 2d 133 | 307A+561.1 | We recognize that Florida Rule of Civil Procedure 1.110(d) permits a pleader to raise an affirmative defense appearing on the face of a complaint as a basis of a motion to dismiss for failure to state a cause of action. E.g., Timmins v. Firestone, 283 So.2d 63 (Fla. 4th DCA 1973). When considering a motion to dismiss, however, a trial court is confined to a review of the allegations of a complaint and may not consider defenses which do not appear on its face. E.g., Ehmann v. Florida Nat'l Bank at Ocala, 515 So.2d 1063 (Fla. 5th DCA 1987). | Pleader may raise affirmative defense appearing on face of complaint as basis of motion to dismiss for failure to state cause of action. West's F.S.A. RCP Rule 1.110(d). | Can a pleader raise affirmative defense appearing on face of complaint? | 025419.docx | LEGALEASE-00158044-LEGALEASE-00158045 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 7868 | Lehnig v. Bornhop, 859 S.W.2d 271 | 307A+561.1 | The statute of limitations is an affirmative defense. Rule 55.08; Schwartz v. Lawson, 797 S.W.2d 828, 835 (Mo.App.1990). When the petition does not show on its face that it is barred by limitations, a motion to dismiss should not be sustained. Miller v. Larson, 712 S.W.2d 56, 58 (Mo.App.1986). For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by plaintiffs' pleadings. McLeod v. Marion Laboratories, Inc., 600 S.W.2d 656, 657 (Mo.App.1980). | For affirmative defense to be sustained upon bare motion to dismiss, defense must be irrefutably established by plaintiffs' pleadings. | Should defense be irrefutably established by plaintiffs' pleadings for affirmative defense to be sustained upon bare motion to dismiss? | 025430.docx | LEGALEASE-00158124-LEGALEASE-00158125 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7869 | Anthony v. Tidwell, 560 S.W.2d 908 | 307A+682.1 | It is not necessary for the defendant to submit evidence in support of his motion when the facts on which he relies to defeat plaintiff's claim are admitted by the plaintiff in his complaint. White v. Padgett, 475 F.2d 79 (5th Cir. 1973); Berry v. Chrysler Corp., 150 F.2d 1002 (6th Cir. 1945); 5 Wright and Miller, Federal Practice and Procedure s 1357 at 605 et seq. Compare Hixson v. Stickley, 493 S.W.2d 471 (Tenn.1973) and Carrier v. Knapp, 442 F.2d 422 (3d Cir. 1971), where the basis of the defense did not appear clearly in the complaint. | Complaint is subject to dismissal for failure to state claim if affirmative defense clearly and unequivocally appears on face of complaint; it is not necessary for defendant to submit evidence in support of motion to dismiss when facts on which he relies to defeat plaintiff's claim are admitted by plaintiff in his complaint. Rules of Civil Procedure, rule 12.02(6). | Will the defendant have to submit evidence in support of motion to dismiss when facts are admitted by plaintiff in his complaint? | Pretrial Procedure - Memo # 10791 - C - NS_63658.docx | ROSS-003281144-ROSS-003281145 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 7870 | Johnson v. Sepulveda, 178 S.W.3d 117 | 30+211 | Additionally, there is no showing in the record appellant requested a hearing on his motion in the trial court. "Clearly before trial court error can be found in the failure to set a hearing on a motion to reinstate the movant must request a hearing." | Before trial court error can be found in the failure to set an oral hearing on a motion to reinstate after a civil suit was dismissed for want of prosecution, the movant must request an oral hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | "Before a trial court error can be found in the failure to set a hearing on a motion to reinstate, should the movant request a hearing ?" | Pretrial Procedure - Memo # 10818 - C - PC.docx | LEGALEASE-00048223-LEGALEASE-00048224 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 7871 | Kharrubi v. Bd. of Educ. of City of New York, 133 A.D.2d 457 | 307A+699 | On a motion to vacate a dismissal pursuant to CPLR 3404, an affidavit of merit must be submitted by a party with personal knowledge of the facts. An attorney's affirmation is hearsay and insufficient (see, Fluman v. TSS Dept. Stores, 100 A.D.2d 838, 473 N.Y.S.2d 835). Here the petitioner's affidavit incorporated the statements in her attorney's affirmation, and both documents merely stated in conclusory terms that the petitioner has a meritorious claim. Even if this court were to look to the allegations in the petition, they lack sufficient detail to show that the petitioner's claims have merit. | On motion to vacate dismissal for failure to prosecute, affidavit of merit must be submitted by party with personal knowledge of facts; attorney's affirmation is hearsay and insufficient. | "On motion to vacate dismissal for failure to prosecute, should an affidavit of merit be submitted by a party with personal knowledge of facts?" | Pretrial Procedure - Memo # 10870 - C - KS_63888.docx | ROSS-003295039-ROSS-003295040 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 7872 | Conway v. Castro, 321 S.W.3d 558 | 307A+690 | See Tex. Civ. Prac. & Rem.Code Ann. "" 14.001"14.014 (Vernon 2002). A court may dismiss a suit brought pursuant to that chapter before or after process is served if the court finds that the claim is frivolous or malicious. Id. at " 14.003(a)(2). In determining whether a claim is frivolous or malicious, the statute provides that the court may consider whether (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. Id. at " 14.003(b). Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999). | Dismissal of an inmate's litigation claim with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. V.T.C.A., Civil Practice & Remedies Code S 14.003(a). | Does a dismissal of an inmate's litigation claim with prejudice constitute an adjudication on the merits and operate as if the case had been fully tried and decided? | Pretrial Procedure - Memo # 10893 - C - RF_63892.docx | ROSS-003280352-ROSS-003280353 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7873 | Mullins v. Estelle High Sec. Unit, 111 S.W.3d 268 | 307A+690 | Lastly, we note the trial court dismissed Mullins' claim with prejudice. Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991). A dismissal with prejudice will have full res judicata and collateral estoppel effects. See Barr v. Resolution Trust Corp., 837 S.W.2d 627, 630"31 (Tex.1992). Generally, the proper remedy, when a court lacks subject matter jurisdiction, is to dismiss the case without prejudice. See Bell v. State Dep't of Highways & Pub. Transp., 945 S.W.2d 292, 295 (Tex.App.-Houston [1st Dist.] 1997, writ denied) (discussing remedies for a plea to the jurisdiction); see Trahan, 981 S.W.2d at 723. If it appears that frivolous allegations "could be remedied through more specific pleadings, a court of appeals should consider whether the district court abused its discretion by dismissing the complaint with prejudice." Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (holding that, when inmate's error can be remedied, dismissal with prejudice is improper); Thomas v. Skinner, 54 S.W.3d 845, 847 (Tex.App.-Corpus Christi 2001, pet. denied) (dismissal with prejudice for failure to comply with Chapter 14 improper if plaintiff's failure can be remedied); see Trahan, 981 S.W.2d at 723 (dismissal with prejudice improper for suit dismissed as frivolous under Chapter 14). We are not prepared to say Mullins has no other possible cause of action against Appellees arising out of the same facts. Therefore, the proper judgment is dismissal without prejudice. | The proper remedy, when a trial court lacks subject matter jurisdiction, is to dismiss the case without prejudice. | "Is the proper remedy, when a trial court lacks subject matter jurisdiction, to dismiss the case without prejudice?" | Pretrial Procedure - Memo # 10924 - C - TM_63422.docx | ROSS-003283425-ROSS-003283426 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 7874 | Jones v. Jones, 16-536 (La. App. 5 Cir. 4/26/17), 220 So. 3d 855 | 307A+693.1 | Furthermore, the filling of the first suit did not serve to extend the time for filing of the second suit on the same grounds, since peremption cannot be renounced, interrupted or suspended. The filing of the first suit on September 9, 2010 had no effect on the timing of the filing of the second suit. "When a suit is dismissed under Article 561(A)(3) of the Louisiana Code of Civil Procedure, the dismissal is "without prejudice" [.]" Walker v. Archer, 16-0171 (La.App. 4 Cir. 10/05/16), 203 So.3d 330, 334. A dismissal without prejudice, or non-suit, merely "restores matters to the status occupied before the suit and leaves the party free to again come into court with his complaint." Id., citing Neal v. Hall, 28 So.2d 131, 133 (La. App. 2 Cir. 1946). It does not prevent the plaintiff from bringing another suit for the same cause of action; however, the timeliness of the second suit must be determined "as if no suit had been theretofore brought." Id., citing Losch v. Greco, 173 La. 223, 136 So. 572, 573"574 (La. 1931). Applying these precepts, we find that the trial court did not err in finding that this suit was untimely and in granting the exceptions of peremption | A dismissal of suit as abandoned does not prevent the plaintiff from bringing another suit for the same cause of action; however, the timeliness of the second suit must be determined as if no suit had been theretofore brought. La. Code Civ. Proc. Ann. art. 561. | Does a dismissal of suit as abandoned not prevent the plaintiff from bringing another suit for the same cause of action? | 025691.docx | LEGALEASE-00158300-LEGALEASE-00158301 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7875 | Ricketts v. Ricketts, 113 S.W.3d 255 | 307A+693.1 | "When we review the circuit court's granting of a motion to dismiss, we deem the facts that are properly pleaded to be true and draw all reasonable inferences that can be deduced from them fairly." Wells v. Wells, 998 S.W.2d 165, 166 (Mo.App. W.D.1999). "[W]e review the petition to determine whether it invokes principles of substantive law and whether the facts alleged, if proven, would entitle the plaintiff to relief." In re Swearingen, 42 S.W.3d 741, 746 (Mo.App. W.D.2001). When the court does not state a reason for its dismissal, "we presume that dismissal was based on the grounds stated in each motion to dismiss and will affirm if dismissal was appropriate on any ground supported by the motions." Duvall v. Lawrence, 86 S.W.3d 74, 78 (Mo.App. E.D.2002). "It also follows, of necessity, that if the motion stated no ground on which a dismissal of any of the petition counts could be predicated or if the motion did not seek that relief, then the dismissal was not effective as to those counts." Molasky v. Brown, 720 S.W.2d 412, 414 (Mo.App. W.D.1986). | If the motion to dismiss stated no ground on which a dismissal of any of plaintiff's petition counts could be predicated or if the motion did not seek that relief, then the dismissal is not effective as to those counts. | "If the motion to dismiss stated no ground on which a dismissal of any of plaintiff's petition counts could be predicated or if the motion did not seek that relief, then is the dismissal not effective as to those counts?" | Pretrial Procedure - Memo # 10984 - C - DHA_64107.docx | ROSS-003280858-ROSS-003280859 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 7876 | Crofts v. Court of Civil Appeals for Eighth Supreme Judicial Dist., 362 S.W.2d 101 | 307A+694 | We think that the Court of Civil Appeals was mistaken in assuming that an order giving Mrs. Autry possession could be considered ancillary to and a ministerial act flowing from the order of dismissal. It is elementary that a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought. White v. White, 70 R.I. 48, 36 A.2d 661, 151 A.L.R. 1374; Bryan v. Smith, 7 Cir., 174 F.2d 212, 11 A.L.R.2d 1402; see 17 Am.Jur. 158, Dismissal, Discontinuance, and Nonsuit, s 86. | A dismissal is not an adjudication of the rights of the parties and merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought. | Is a dismissal not an adjudication of the rights of the parties and merely places the parties in the position they were in before the court's jurisdiction was invoked? | Pretrial Procedure - Memo # 10992 - C - NS_64115.docx | ROSS-003308204-ROSS-003308205 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7877 | Stacey O v. Donald P, 137 A.D.2d 965 | 307A+693.1 | To determine whether Family Court properly denied the motion to vacate the order dismissing the second petition, we must first decide whether Family Court correctly gave res judicata effect to the dismissal of the first petition. A court has discretion to specify whether its order dismissing a claim is to have res judicata effect (see, CPLR 5013, 3216[a] ). Even where a dismissal is specifically "on the merits" or "with prejudice", the circumstances must warrant barring the litigant from further pursuit of his claim in order for those phrases to be given preclusive effect ( see, Art Guild Gallery v. Charmack, 107 A.D.2d 777, 484 N.Y.S.2d 614; see also, 5 Weinstein"Korn"Miller, NY Civ Prac 5011.11, 5013.02). | Court has discretion to specify whether its order dismissing a claim is to have res judicata effect. McKinney's CPLR 3216(a), 5013. | Does a court have discretion to specify whether its order dismissing a claim is to have a res judicata effect? | 025811.docx | LEGALEASE-00159162-LEGALEASE-00159163 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 7878 | Household Fin. Corp. v. Avery, 476 S.W.2d 165 | 307A+561.1 | We bear in mind that the petition was dismissed on defendants' bald motion to dismiss, that technical forms of pleading are not required, Rule 55.05, and that a petition should be held good as against a general motion to dismiss for failure to state a claim upon which relief can be granted if the averments of the petition, liberally construed, invoke substantive principles of law which entitle the plaintiff to relief. Mathews v. Pratt, Mo., 367 S.W.2d 632, 634(1"3); Slicer v. W. J. Menefee Const. Co., Mo., 270 S.W.2d 778, 780(1); Zuber v. Clarkson Const. Co., 363 Mo. 352, 355, 251 S.W.2d 52, 54(1). Nevertheless, a pleader may literally plead himself out of court, and when facts constituting a defense affirmatively appear upon the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer. Stone v. Cook, 179 Mo. 534, 548, 78 S.W. 801, 804; 41 Am.Jur. Pleading, s 212, p. 443. As the same principle is put by the Federal courts, a petition may be dismissed on motion if it is clearly without merit, and this lack of merit may consist of pleaded facts which will necessarily defeat the claim. DeLoach v. Crowley's Inc., 5 Cir., 128 F.2d 378, 380(5); Camero v. Kostos, D.C. New Jersey, 253 F.Supp. 331, 338(8); 2A Moore's Federal Practice, 12.08, p. 2271 (2d ed. 1968). | When facts constituting defense affirmatively appear on face of petition, defense may be interposed by motion to dismiss without necessity of specific motion or answer. V.A.M.R. Civil Rules 55.05, 55.33. | Will the defense be interposed by motion to dismiss without the necessity of a specific motion or answer? | Pretrial Procedure - Memo # 11087 - C - KS_63743.docx | ROSS-003284894-ROSS-003284895 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 7879 | Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189 | 241+180(7) | "[A] Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (citations omitted). "Next, the standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading." Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055, 1058 (Ala.1981) (citations omitted). | The standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading. | What is the standard for granting a motion to dismiss an affirmative defense? | Pretrial Procedure - Memo # 11103 - C - MS_63760.docx | ROSS-003280840-ROSS-003280841 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 7880 | Braggs v. Jim Skinner Ford, 396 So. 2d 1055 | 241+180(7) | "A motion to dismiss for failure to state a claim under Rule 12(b)(6), ARCP, should seldom be granted and is properly granted only when it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief." Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899, 901 (Ala.1979). Here, it does not appear beyond doubt that Braggs could not prove any set of facts entitling her to relief. Next, the standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading. Sims v. Lewis, 374 So.2d 298 (Ala.1979); Browning v. City of Gadsden, 359 So.2d 361 (Ala.1978); Wright & Miller, Federal Practice and Procedure, Civil & 1357, at 605 (1969). | Standard for granting motion to dismiss based upon expiration of statute of limitations is whether existence of affirmative defense appears clearly on face of pleading. | What is the standard for granting a motion to dismiss an affirmative defense? | 025970.docx | LEGALEASE-00158334-LEGALEASE-00158335 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 7881 | Caywood v. Gossett, 382 Ill. App. 3d 124 | 307A+561.1 | A motion under section 2"619 of the Code admits the legal sufficiency of the well-pleaded factual allegations of a complaint (Neppl v. Murphy, 316 Ill.App.3d 581, 584, 249 Ill.Dec. 736, 736 N.E.2d 1174 (2000)); however, it allows for dismissal when the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim. Builders Bank v. Barry Finkel & Associates, 339 Ill.App.3d 1, 6, 273 Ill.Dec. 888, 790 N.E.2d 30 (2003); 735 ILCS 5/2"619(a)(9) (West 2006). In ruling on a motion to dismiss under section 2"619, the trial court may consider pleadings, depositions, and affidavits. | Dismissal of complaint is allowed when the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Can a complaint be dismissed when the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim? | 025979.docx | LEGALEASE-00158354-LEGALEASE-00158355 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7882 | Jones v. Bank of Chapel Hill, 214 N.C. 794 | 308+92(1) | In Tiffany on Agency, Chap. VIII, p. 180, it is held: "The principal is liable upon a contract duly made by his agent with a third person-(1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. "Apparent authority," as the term is used in the foregoing section, includes authority to do whatever is usual and necessary to carry into effect the principal power conferred upon the agent and to transact the business which he is employed to transact; and the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has not notice. (At p. 181). The principal may be estopped to deny that a person is his agent or that his agent has acted within the scope of his authority." | A principal is liable on agent's contracts, made within scope of agent's actual authority, or his apparent authority, unless third person has notice that agent is exceeding actual authority, and on agent's contracts ratified by the principal. | When will a principal be held liable on an unauthorized contract made by his agent with a third person? | 041673.docx | LEGALEASE-00158924-LEGALEASE-00158925 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 7883 | Potter v. Harvey, 30 Iowa 502 | 308+92(1) | It would serve no useful purpose to copy herein at length the other instructions given and refused. We may say, in answer to the objections made in argument, that it may be true, as a general proposition of law, that, if the purchaser of property, who relied upon the representations of the seller, shall receive and pay for it without objection, after he knows that the representations were false, he would be estopped from afterward claiming damage for such false representations. But, if his contract was made through an agent, and the principal was ignorant of the false representations having been made, although he knew the facts showing them false, the rule would have no just application. | While the general rule is recognized that, if the purchaser of property, who, it is claimed, relied upon the representations of the seller, shall receive and pay for it after he has learned that such representations were false, he will be estopped from afterward claiming damages on account of such false representations; it is, nevertheless, held, that this rule has no just application, if the contract was made by an agent of the purchaser, and the principal was ignorant of the false representations having been made, although he knew the facts showing their falsity. | Is a person whoknows that the representations of seller were false estopped from afterward claiming damage for such false representations? | Principal and Agent - Memo 409 - RK.docx | LEGALEASE-00048786-LEGALEASE-00048787 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 7884 | Smith v. Foodmaker, 928 S.W.2d 683 | 308+3(2) | "The general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists." Cislaw v. Southland Corp., 4 Cal.App.4th 1284, 1288, 6 Cal.Rptr.2d 386, 388 (1992). "The question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee." Kuchta, 21 Cal.App.3d at 547, 98 Cal.Rptr. at 590. "Mere licensing of trade names does not create agency relationships either ostensible or actual." Beck v. Arthur Murray, Inc., 245 Cal.App.2d 976, 981, 54 Cal.Rptr. 328, 331 (1966). California courts have found an agency relationship where the franchisor has retained controls beyond those necessary to protect and maintain its trademark, trade name, and good will and where it has retained control over the day-to-day operation of the franchise. Nichols, 248 Cal.App.2d at 613"14, 56 Cal.Rptr. at 731. | General rule under California law is that where franchise agreement gives franchisor right of complete or substantial control over franchisee, agency relationship exists. | Do franchise agreements establish a principal-agent relationship between the franchisee and franchisor when the franchisor has the right of complete or substantial control over the franchisee? | 041884.docx | LEGALEASE-00159015-LEGALEASE-00159016 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 7885 | Thomas v. Ross & Hardies, 9 F. Supp. 2d 547 | 308+92(1) | Under basic agency law, a principal is liable for torts committed by its agent if the agent acts with apparent authority. See American Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 565"66, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). This is true even if the agent's act of fraud is committed solely to benefit the agent. See id. 456 U.S. at 566, 102 S.Ct. 1935. The general rule of partnership liability is that a partner is an agent for the partnership, and a partnership is liable for the wrongful acts of its partners committed in the ordinary course of the business of the partnership. See Revised Uniform Partnership Act "" 301, 305 (1994); Md.Code Ann. Corps. & Ass'ns " 9"305 (Supp.1997); see also 59A Am.Jur.2d Partnership " 650 (1987). With fraud claims, it is especially appropriate to hold a partnership liable when it benefited from the fraudulent acts of its partner. See 59A Am.Jur.2d Partnership " 670. | Under basic agency law, principal is liable for torts committed by its agent if agent acts with apparent authority, and this is true even if agent's act of fraud is committed solely to benefit agent. | Is the Principal liable for fraud committed by an agent to solely benefit the agent? | 042033.docx | LEGALEASE-00159142-LEGALEASE-00159143 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 7886 | H.S.P. v. J.K., 223 N.J. 196 | 24+179 | The process for obtaining SIJ status is " "a unique hybrid procedure that directs the collaboration of state and federal systems." " In re Marisol N.H., 115 A.D.3d 185, 188, 979 N.Y.S.2d 643 (N.Y.App.Div.2014) (quoting In re Hei Ting C., 109 A.D.3d 100, 104, 969 N.Y.S.2d 150 (N.Y.2013)); E.C.D. v. P.D.R.D. 114 So.3d 33, 36 (Ala.Civ.App.2012) (explaining that SIJ statute creates "a special circumstance "where a state juvenile court is charged with addressing an issue relevant only to federal immigration law." " (quoting In re J.J.X.C., 318 Ga.App. 420, 734 S.E.2d 120, 124 (2012))). The child"or another individual acting on his or her behalf"must first petition for " "an order from a state juvenile court making findings that the juvenile satisfies certain criteria." " | The process for obtaining special immigrant juvenile (SIJ) status is a unique hybrid procedure that directs the collaboration of state and federal systems. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Does the procedure for obtaining Special Immigrant Juvenile (SIJ) status involve the collaboration of state and federal systems? | "Aliens, Immigration and Citizenship - Memo 103 - RK_64745.docx" | ROSS-003307267-ROSS-003307268 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7887 | In re Adoption of Jason K., 41 Misc. 3d 885 | 24+268 | It has been observed that "[b]y including restrictions on intent in the definition of some nonimmigrant classes, Congress must have meant aliens to be barred from these classes if their real purpose in coming to the United States was to immigrate permanently. Moreover, since a nonimmigrant alien who does not maintain the conditions attached to his status can be deported, it is also clear that Congress intended that, in the absence of an adjustment of status ... non-immigrants in restricted classes who sought to establish domicile would be deported" (Elkins, 435 U.S. at 665"666, 98 S.Ct. 1338 [internal citation omitted] ). In that regard, 8 USC " 1227 provides that "[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable" (8 USC " 1227[a][1][C][i] ). | Since a nonimmigrant alien who does not maintain the conditions attached to his status can be deported, Congress must have intended that, in the absence of an adjustment of status, nonimmigrants in restricted classes will be deported if they seek to establish domicile. Immigration and Nationality Act, S 237(a)(1)(C)(i), 8 U.S.C.A. S 1227(a)(1)(C)(i). | Can a nonimmigrant alien who does not maintain the conditions attached to his status be deported? | "Aliens, Immigration and Citizenship - Memo 113 - RK_64755.docx" | ROSS-003280401-ROSS-003280402 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7888 | Bologna v. City & Cty. of San Francisco, 192 Cal. App. 4th 429 | 268+727 | Enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, title 8 United States Code section 1373(a) invalidates all restrictions on the voluntary exchange of immigration information between federal, state and local government entities and officials and federal immigration authorities. It provides: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." Plaintiffs' claim that title 8 United States Code section 1373(a) provides a basis for liability under Government Code section 816.5 and Evidence Code section 669 fails for the same reason as their Health and Safety Code section 11369 claim"the federal statute was not designed or intended to prevent the type of harm that plaintiffs suffered. | An incident in which an illegal immigrant fatally shot three motorists who were stopped in traffic was not the particular kind of injury that Congress sought to prevent by enacting the statute invalidating all restrictions on the voluntary exchange of immigration information between government officials and immigration authorities, and thus no statutory cause of action was available to motorists' family members against city based on negligence per se or a public entity's violation of a mandatory duty, for city's "sanctuary" policy of shielding immigrants from deportation. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, S 642(a), 8 U.S.C.A. S 1373(a); West's Ann.Cal.Evid.Code S 669; West's Ann.Cal.Gov.Code S 815.6. | Can a state or local governmental entity or official prohibit or restrict any governmental entity or official from sending federal immigration authorities information regarding the immigration status of any individual? | 006840.docx | LEGALEASE-00160390-LEGALEASE-00160391 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 7889 | In re Mario S., 38 Misc. 3d 444 | 24+179 | Accordingly, under the current SIJ provisions enacted in 2008, in order "[t]o be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. The child must have been declared dependent upon a state juvenile court ... [a]nd the juvenile court must have made two additional findings: (1) that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence" (J.J.X.C. at 424, 734 S.E.2d 120 [internal citations omitted]; see also, Y.M. at 915, 144 Cal.Rptr.3d 54; Erick M. at 346"347, 820 N.W.2d 639; B.F. at 626, 143 Cal.Rptr.3d 730; Trudy"Ann W. at 795, 901 N.Y.S.2d 296; Matter of Emma M., 74 A.D.3d 968, 969, 902 N.Y.S.2d 651 [2010]; Jisun L. at 511, 905 N.Y.S.2d 633; Alamgir A. at 939, 917 N.Y.S.2d 309; Matter of Sing W.C., 83 A.D.3d 84, 86, 920 N.Y.S.2d 135 [2011]; Matter of Mohamed B., 83 A.D.3d 829, 830"831, 921 N.Y.S.2d 145 [2011] ). | Under the current special immigrant juvenile (SIJ) provisions of the Immigration and Nationality Act (INA), in order to be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried, he or she must have been declared dependent upon a state juvenile court, and the juvenile court must have made two additional findings: (1) that reunification with one or both of the alien's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law, and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Is it required than an alien be under the age of 21 in order to be eligible for Special Immigrant Juvenile (SIJ) status? | "Aliens, Immigration and Citizenship - Memo 59 - RK_64793.docx" | ROSS-003305825-ROSS-003305826 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 7890 | In re Mario S., 38 Misc. 3d 444 | 24+179 | Accordingly, under the current SIJ provisions enacted in 2008, in order "[t]o be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. The child must have been declared dependent upon a state juvenile court ... [a]nd the juvenile court must have made two additional findings: (1) that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence" (J.J.X.C. at 424, 734 S.E.2d 120 [internal citations omitted]; see also, Y.M. at 915, 144 Cal.Rptr.3d 54; Erick M. at 346"347, 820 N.W.2d 639; B.F. at 626, 143 Cal.Rptr.3d 730; Trudy"Ann W. at 795, 901 N.Y.S.2d 296; Matter of Emma M., 74 A.D.3d 968, 969, 902 N.Y.S.2d 651 [2010]; Jisun L. at 511, 905 N.Y.S.2d 633; Alamgir A. at 939, 917 N.Y.S.2d 309; Matter of Sing W.C., 83 A.D.3d 84, 86, 920 N.Y.S.2d 135 [2011]; Matter of Mohamed B., 83 A.D.3d 829, 830"831, 921 N.Y.S.2d 145 [2011] ). | Under the current special immigrant juvenile (SIJ) provisions of the Immigration and Nationality Act (INA), in order to be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried, he or she must have been declared dependent upon a state juvenile court, and the juvenile court must have made two additional findings: (1) that reunification with one or both of the alien's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law, and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Does an alien have to be unmarried in order to be eligible for Special Immigrant Juvenile (SIJ) status? | "Aliens, Immigration and Citizenship - Memo 61 - RK_64795.docx" | ROSS-003294130-ROSS-003294131 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 7891 | Leonhard v. Eley, 151 F.2d 409 | 24+120 | Aliens residing in the United States, so long as they are permitted by the government to remain therein, are entitled generally, with respect to the rights of person and property and to their civil and criminal responsibility, to the safeguards of the Constitution and to the protection of our laws. However, they may exercise only such political rights as are conferred upon them by law. Their duties and obligations, so long as they reside in the United States, do not differ materially from those of native-born or naturalized citizens. Equally with such citizens, for the rights and privileges they enjoy, they owe allegiance to our country, obedience to our laws, except those immediately relating to citizenship, contribution to the support of our governments, state and national;3 and in war, they share equally with our citizens the calamities which befall our country; and their services may be required for its defense and their lives may be periled for maintaining its rights and vindicating its honor. | Aliens permitted to reside in the United States are generally entitled to constitutional safeguards and the protection of the laws so far as personal and property rights, and civil and criminal responsibility are concerned, but they may exercise only such political rights as are conferred upon them by law. | Do the duties and obligations of aliens differ from those of native-born or naturalized citizens? | "Aliens, Immigration and Citizenship - Memo 69 - RK_64803.docx" | ROSS-003281990-ROSS-003281992 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7892 | CSX Transp. v. Dir., Div. of Taxation, 393 N.J. Super. 235 | 371+2233 | The RFT is a franchise tax, which differs from a property tax, and is similar to taxes that are often called "business privilege taxes"; it is a "type of excise tax, namely a form of taxation not laid directly upon persons or property." Werner Mach. Co. v. Dir. of Div. of Taxation, 17 N.J. 121, 125, 110 A.2d 89 (1954), aff'd, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956). "Franchise taxes are of two types, organization taxes, i.e., fees imposed upon the grant of corporate powers, and excises levied periodically, usually annually, upon the franchise or privilege of corporations to do business in the State." Id. at 126, 110 A.2d 89. A "franchise tax" is "[a] tax imposed on the privilege of carrying on a business ([especially] as a corporation), [usually] measured by the business's income." Black's Law Dictionary 1470 (7th ed. 1999). | Franchise taxes are of two types, organization taxes, i.e., fees imposed upon the grant of corporate powers, and excises levied periodically, usually annually, upon the franchise or privilege of corporations to do business in the State. | What are the different types of franchise taxes? | Franchise - Memo 53 - ANG_64643.docx | ROSS-003285596-ROSS-003285597 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7893 | Rodgers v. RAB Investments, Ltd., 816 S.W.2d 543 | 289+924 | Every partner has the inherent power to dissolve a partnership even though the dissolution would violate the partnership agreement. Karrick v. Hannaman, 168 U.S. 328, 334"35, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897); Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 667 (1st Cir.1984); Woodruff v. Bryant, 558 S.W.2d 535, 539 (Tex.Civ.App."Corpus Christi 1977, writ ref'd n.r.e.). The dissolution may breach the partnership contract, but it may be accomplished nonetheless. Karrick, 168 U.S. at 335, 18 S.Ct. at 138; Woodruff, 558 S.W.2d at 539; McCollum v. McCollum, 67 S.W.2d 1055, 1056 (Tex.Civ.App."San Antonio 1934, no writ). A partner always has the power, although perhaps not the legal right, to dissolve the partnership. Woodruff, 558 S.W.2d at 539; Collins v. Lewis, 283 S.W.2d 258, 261 (Tex.Civ.App."Galveston 1955, writ ref'd n.r.e.); McCollum, 67 S.W.2d at 1056. No partner has to continue in a partnership against his will. Infusaid, 739 F.2d at 667. | Every partner has inherent power to dissolve partnership even though dissolution would violate partnership agreement; dissolution may breach partnership contract, but it may be accomplished nonetheless. | Does every partner have the inherent power to dissolve a partnership even when the dissolution would violate the partnership agreement? | Partnership - Memo 503 - SB_64863.docx | ROSS-003282781-ROSS-003282782 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 7894 | Conrad v. Buck, 21 W.Va. 396 | 289+928 | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. (p. 407.) | The assignment by one partner of all his interest in the partnership and its property to trustees for the payment of debts operates, ipso facto, as a dissolution of partnership. | Does the assignment by one partner of all his interest in the partnership and its property to the trustees for the payment of debts lead to the dissolution of partnership? | 022600.docx | LEGALEASE-00160126-LEGALEASE-00160127 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 7895 | Household Fin. Corp. v. Avery, 476 S.W.2d 165 | 307A+561.1 | Nevertheless, a pleader may literally plead himself out of court, and when facts constituting a defense affirmatively appear upon the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer. Stone v. Cook, 179 Mo. 534, 548, 78 S.W. 801, 804; 41 Am.Jur. Pleading, s 212, p. 443. As the same principle is put by the Federal courts, a petition may be dismissed on motion if it is clearly without merit, and this lack of merit may consist of pleaded facts which will necessarily defeat the claim. DeLoach v. Crowley's Inc., 5 Cir., 128 F.2d 378, 380(5); Camero v. Kostos, D.C. New Jersey, 253 F.Supp. 331, 338(8); 2A Moore's Federal Practice, 12.08, p. 2271 (2d ed. 1968). | When facts constituting defense affirmatively appear on face of petition, defense may be interposed by motion to dismiss without necessity of specific motion or answer. V.A.M.R. Civil Rules 55.05, 55.33. | When can a defense be interposed by motion to dismiss without necessity of specific motion or answer? | 039582.docx | LEGALEASE-00159481-LEGALEASE-00159482 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 7896 | Hatcher v. TDCJ-Institutional Div., 232 S.W.3d 921 | 307A+699 | "If an order dismissing a case does not state the grounds on which it was granted, the party seeking reinstatement must negate all possible grounds for dismissal." Id. (citing Shook v. Gilmore & Tatge Mfg. Co., Inc., 951 S.W.2d 294, 296 (Tex.App.-Waco 1997, pet. denied)). | If an order dismissing a case does not state the grounds on which it was granted, the party seeking reinstatement must negate all possible grounds for dismissal. | "If an order dismissing a case does not state the grounds on which it was granted, should the party seeking reinstatement negate all possible grounds for dismissal?" | 039589.docx | LEGALEASE-00159511-LEGALEASE-00159512 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 7897 | Cichorek v. Cosgrove, 47 A.D.2d 883 | 307A+699 | "In such cases, we have held that an attorney's neglect or inadvertent error should not deprive his client of his day in court; and that it is proper to save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect. (Citing cases.)" (Moran v. Rynar, 39 A.D.2d 718, 719, 332 N.Y.S.2d 138, 141.). | An attorney's neglect or inadvertent error should not deprive his client of his day in court, and it is proper to save action for client while imposing upon attorney, personally, a penalty for his neglect. | Should neglect or inadvertent error of an attorney deprive his client of his day in court? | 040003.docx | LEGALEASE-00160489-LEGALEASE-00160490 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 7898 | Saldana v. Hinojosa, 517 S.W.3d 239 | 307A+583 | A trial court has authority to dismiss for want of prosecution based on two sources. Dobroslavic, 397 S.W.3d at 728. The first source of authority is found in Rule 165a of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 165a; Dobroslavic, 397 S.W.3d at 728. The second source is based on the trial court's inherent power. Dobroslavic, 397 S.W.3d at 728. Rule 165a provides that a trial court may dismiss for want of prosecution: (1) if a party seeking affirmative relief fails to appear for any hearing or trial of which he had notice; or (2) when a case has not been disposed of pursuant to the time standards promulgated by the Texas Supreme Court. Tex. R. Civ. P. 165a; Dobroslavic, 397 S.W.3d at 728"29. Under common law, a trial court has inherent power to dismiss when a plaintiff fails to prosecute his case with due diligence. Dobroslavic, 397 S.W.3d at 729. This power arises from a trial court's power to control its docket. Id. | Under common law, a trial court has inherent power to dismiss when a plaintiff fails to prosecute his case with due diligence. | Does a court have the inherent power to dismiss when a plaintiff fails to prosecute his case with due diligence? | 040349.docx | LEGALEASE-00160433-LEGALEASE-00160434 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7899 | Columbia Gulf Transmission Co. v. Bridges, 2008-1006 (La. App. 1 Cir. 6/25/09) | 371+3602 | A sales tax is a single-stage tax on consumer spending that applies to final sales in Louisiana for personal use and consumption. The sales tax is a tax imposed on the buyer's use or consumption of the item sold, that is passed on to the buyer or consumer through the addition of the sales tax to the purchase price. Word of Life Christian Center, 936 So.2d at 1233. The state sales tax is levied at a fixed rate based on the sales price of each item or article of tangible personal property when the property is sold at retail in Louisiana. LSA"R.S. 47:302(A). | The "sales tax" is a tax imposed on the buyer's use or consumption of the item sold, that is passed on to the buyer or consumer through the addition of the sales tax to the purchase price. LSA-R.S. 47:302(A). | "Is a ""sales tax"" a tax imposed on the buyer's use or consumption of the item sold, that is passed on to the buyer or consumer?" | 046213.docx | LEGALEASE-00159801-LEGALEASE-00159802 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 7900 | Baker v. Forest Pres. Dist. of Cook Cty., 2015 IL App (1st) 141157 | 411+7 | We next address the statutory construction of the District Act. When interpreting a statute, the primary function of this court is to ascertain and give effect to the intent of the legislature. Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board, 165 Ill.2d 80, 87, 208 Ill.Dec. 313, 649 N.E.2d 369 (1995). Additionally, "[a] court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." Schultz v. Illinois Farmers Insurance Co., 237 Ill.2d 391, 408, 341 Ill.Dec. 429, 930 N.E.2d 943 (2010) (citing Madison Two Associates v. Pappas, 227 Ill.2d 474, 495, 318 Ill.Dec. 587, 884 N.E.2d 142 (2008)). Special districts, like the FPD, are creations of the legislature and the "[s]tatutes granting power to them are to be strictly construed and their powers are not to be enlarged by construction." Forest Preserve District v. Jirsa, 336 Ill. 624, 628, 168 N.E. 690 (1929); Ill. Const., 1970, art. VII " 8. | Special districts, like a county's Forest Preserve District (FPD), are creations of the Legislature and the statutes granting power to them are to be strictly construed and their powers are not to be enlarged by construction. S.H.A. Const. Art. 7, S 8. | Are Forest Preserve District (FPD) creations of the legislature and should the statutes granting power to them be strictly construed? | Woods and Forest - Memo 8 - ANM_64526.docx | ROSS-003291867-ROSS-003291868 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7901 | Bolton v. Great Atl. & Pac. Tea Co., 245 So. 2d 452 | 413+105 | Several applicable principles of law are well established in our jurisprudence. The operation of a retail grocery store is not listed as a hazardous business in LSA-R.S. 23:1035 and is not hazardous per se. Boggs v. Great Atlantic & Pacific Tea Co., 125 So .2d 419 (La.App.3rd Cir. 1960); Pinchera v. Great Atlantic & Pacific Tea Co., 206 So.2d 793 (La.App.2d Cir. 1968). Although a business is not hazardous per se, an employee is nevertheless covered by the workmen's compensation act where he is regularly exposed to or frequently brought in contact with a hazardous feature of the business. Luce v. New Hotel Monteleone, 234 La. 1075, 102 So.2d 461 (1958); Mercer v. Sears Roebuck & Co., 155 So.2d 112, 122 (La.App.3rd Cir. 1963). Such an employee is covered regardless of whether the injury resulted from hazardous or non-hazardous features of his employment. Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303; Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App.3rd Cir. 1960). | Although business is not hazardous per se, employee is covered by Workmen's Compensation Act when he is regularly exposed to or frequently brought in contact with hazardous feature of the business. LSA-R.S. 23:1035. | "If a business is not hazardous per se, is an employee covered by the workmens compensation act?" | 048681.docx | LEGALEASE-00160160-LEGALEASE-00160161 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 7902 | Peretzman v. Borochoff, 58 Ga. App. 838 | 8.30E+10 | 345 "Any plea which impeaches the original validity, or declares any subsequent extinguishment of the contract, must be governed by the law of the place where the contract was made. Thus, infancy, coverture, tender, or payment, or discharge by insolvent laws, if a valid defense by the lex loci contractus, will be a valid defense everywhere." Vol. 2, Daniel on Negotiable Instruments, 7th Ed., 1114, " 1023 "The place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain. Thus, the law of the place where a bill or note is written, signed, or dated does not necessarily control it but the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or, as has been said, where the last act essential to its completion was done, so that, where a note was executed in one State but not completed until accepted in another State, it is made in that other State. | A bill or note is controlled, not necessarily by the law of the place where it is written, signed, or dated, but by the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or where the last act essential to its completion was done. | What law controls a bill? | Bills and Notes -Memo 1387- JK_66287.docx | ROSS-003305547-ROSS-003305548 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 7903 | State v. One 1990 Chevrolet Corvette VIN: 1G1YY3388L5111488, 695 A.2d 502 | 135H+25 | The Court in Ursery applied a two part test to consider whether the civil forfeiture proceedings in that case were part of that rare breed of case so sufficiently punitive as to amount to a criminal prosecution for double jeopardy analysis. | Civil forfeiture is sufficiently punitive to amount to criminal prosecution for purpose of double jeopardy analysis if either: legislative intention was that proceeding was to be criminal in nature; or proceeding is so punitive in fact as to persuade reviewing court that it may not legitimately be viewed as civil in nature despite contrary legislative intent. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 7. | Is civil forfeiture sufficiently punitive to amount to criminal prosecution for a purpose of double jeopardy analysis? | 015236.docx | LEGALEASE-00160606-LEGALEASE-00160607 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 7904 | Clark v. Jesuit High Sch. of New Orleans, 572 So. 2d 830 | 141E+934 | For a school to be strictly liable for injuries caused by a dangerous or hazardous condition on its premises, the school authority must have had actual or constructive knowledge of the unreasonably hazardous condition. Laneheart v. Orleans Parish School Board, 524 So.2d 138 (La.App. 4th Cir.1988). In the instant case, there is no dispute that Jesuit personnel had no actual knowledge of the gun being kept by Rene Pagan on the school premises. Plaintiff contends, however, that a question of fact exists as to Jesuit's constructive knowledge. | For school to be strictly liable for injuries caused by dangerous or hazardous condition on its premises, school authority must have had actual or constructive knowledge of unreasonably hazardous condition. | Schools has to have actual or constructive knowledge of the unreasonably hazardous conditions for it to be liable? | Education - Memo 344 - C - KS_65192.docx | ROSS-003293642-ROSS-003293643 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 7905 | Haven Homes v. Raritan Twp., 19 N.J. 239 | 268+663(1) | And the same learned jurist, in an earlier case, held it to be established principle that "the owner of land bounded on a street or highway, is presumed to own the soil in front of his lot to the middle of the street, subject to the easement of the public highway." Glasby v. Morris,18 N.J.Eq. 72 (Ch.1866). Nothing short "of an intention expressed In ipsis verbis, to "exclude" the soil of the highway, can exclude it.' Salter v. Jonas, 39 N.J.L. 469 (E. & A. 1877). There, Chief Justice Beasley said:"In our practice, in the conveyance of lots bounded by streets, the prevailing belief is, that the street to its centre is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs, as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several particles of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots, and it is of no value separated from them. It would rarely occur that the vendee of a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. In my own experience, I have never known such an intention to exist, and it is safe to say that whenever it does exist, the conditions of the case are peculiar. And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance, that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title." | The owner of land bounded on street or highway is presumed to own soil in front of his lot to middle of street, subject to easement of public highway, and nothing short of intention expressed in ipsis verbis, to exclude soil of highway, can exclude it. | Is the owner of land bounded on a street or highway presumed to own the soil in front of his lot to the middle of the street? | Highways - Memo 396 - RK_66325.docx | ROSS-003310310-ROSS-003310311 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7906 | Antenucci v. Hartford Roman Catholic Diocesan Corp., 142 Conn. 349 | 200+83 | The plaintiffs also maintain that the cemetery cannot be increased in size by the use of land, acquired for the purpose, on the opposite side of a public highway. An abutting owner is presumed under the law of this state, no evidence having been offered to the contrary, to own the fee of the land to the center of the highway. Therefore, as to the land within the limits of the highway, an abutting owner has all rights not incompatible with the public easement. Allen v. Mussen, 129 Conn. 151, 155, 26 A.2d 776; State v. Muolo, 119 Conn. 323, 326, 176 A. 401. "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all of the acts necessary to keep it in repair." Peck v. Smith, 1 Conn. 103, 132; Newton v. New York, N.H. & H.R. Co., 72 Conn. 420, 426, 44 A. 813. The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner of the land in the same manner as before the highway was established, subject to the easement. Peck v. Smith, supra. The adjoining proprietors have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement. Knothe v. Zinzer, 96 Conn. 709, 713, 115 A. 477; Peck v. Smith, supra, 1 Conn. 146. | Owners of property adjoining highway have right to every use and profit which can be derived from it consistent with easement of public, and soil of highway descends to heirs and passes to grantees as an appurtenant to land adjoining, and whenever highway is discontinued, adjoining proprietors hold land discharged of easement. | Do adjoining proprietors hold the land discharged of an easement when a highway is discontinued? | 018817.docx | LEGALEASE-00161645-LEGALEASE-00161646 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7907 | Wayne v. Staples, 135 Cal. App. 4th 466 | 217+1712 | Insurance Code section 22 defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Section 22 has been interpreted as requiring two elements: shifting one party's risk of loss to another party and distributing that risk among similarly situated persons. (AFG, supra, 114 Cal.App.4th at p. 851, 7 Cal.Rptr.3d 912; Truta, supra, 193 Cal.App.3d at p. 812, 238 Cal.Rptr. 806.) The mere fact a contract involves shifting and distributing risk of loss, however, " "does not necessarily mean the agreement constitutes an insurance contract for purposes of statutory regulation.""(Title Ins. Co. v. State Bd. of Equalization (1992) 4 Cal.4th 715, 726, 14 Cal.Rptr.2d 822, 842 P.2d 121; Sweatman v. Department of Veterans Affairs (2001) 25 Cal.4th 62, 74, 104 Cal.Rptr.2d 602, 18 P.3d 29.) Thus, the Court of Appeal in Truta held the collision damage waivers offered by car rental companies were not insurance because "[t]he principal object and purpose of the transaction before us, the elements which gives the transaction its distinctive character, is the rental of an automobile. | The mere fact a contract involves shifting and distributing risk of loss does not necessarily mean the agreement constitutes an insurance contract for purposes of statutory regulation. West's Ann.Cal.Ins.Code S 22. | Do all contracts involving risk shifting and risk distribution constitutes an insurance contract? | 019630.docx | LEGALEASE-00161551-LEGALEASE-00161552 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 7908 | MacKintosh-Hemphill Int'l v. Gulf & W., 451 Pa. Super. 385 | 307A+697 | A request to open a judgment of non pros is by way of grace and not of right and its grant or refusal is peculiarly a matter for the [lower] court's discretion. We are loathe to reverse the exercise of the court's equitable powers unless an abuse of discretion is clearly evident. Before a petition to open a judgment of non pros may be granted, the moving party must 1) promptly file a petition to open, 2) present a reasonable explanation or excuse for the default or delay that precipitated the non pros, and 3) establish that there are sufficient facts to support a cause of action. | Request to open judgment of non pros is by way of grace and not of right, and its grant or refusal is peculiarly a matter for lower court's discretion. | Is a request to open judgment of non pros by way of grace and not of right? | Pretrial Procedure - Memo 11488 - C - KI_65586.docx | ROSS-003322892-ROSS-003322893 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 7909 | Clark v. Yarbrough, 900 S.W.2d 406 | 307A+697 | The reinstatement provisions of Rule 165a(3) apply only to dismissals for failure to appear at trial or a hearing. Id. at 901"03. Whether the party's conduct was intentional or the result of conscious indifference is a question of fact to be determined by the trial court in its discretion. Price v. Firestone Tire & Rubber Co., 700 S.W.2d 730, 733 (Tex.App."Dallas 1985, no writ). Once the finding is made, the rule's language is mandatory. Id. A trial court's denial of a reinstatement motion is addressed to the sound discretion of the trial court, and a reviewing court will not disturb it absent a showing of abuse. Levermann v. Cartall, 715 S.W.2d 728, 729 (Tex.App."Texarkana 1986, writ ref'd n.r.e. | The reinstatement provisions of statute covering dismissal of cases for want of prosecution apply only to dismissals for failure to appear at trial or hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd. 3. | Does the reinstatement provision of statute covering dismissal of cases for want of prosecution apply only to dismissals for failure to appear at a trial or hearing? | 040074.docx | LEGALEASE-00160626-LEGALEASE-00160627 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 7910 | Higginbotham v. Morris, 749 So. 2d 840 | 307A+695 | It is only when the grounds of the objection cannot be so removed, or when the plaintiff fails to comply with an order to amend, that an action is to be dismissed. We also observe that the remedy for sustaining an exception of vagueness is to give the other party an opportunity to amend. Such amendment is not prohibited to the extent that the amendment simply makes the allegations of the petition more specific, rather than adding new allegations of irregularities. Compare Burch v. McClendon, 123 So.2d 636 (La.App. 1 st Cir.1960), with Smart v. Curry, 456 So.2d 630 (La.App. 1 st Cir.1984), writ denied, 454 So.2d 127 (La.1984). | An action is to be dismissed for failure to state a cause of action only when the grounds of the objection cannot be removed or when the plaintiff fails to comply with an order to amend. LSA-C.C.P. art. 934. | Is an action to be dismissed for failure to state a cause of action only when the grounds of the objection cannot be removed or when the plaintiff fails to comply with an order to amend? | Pretrial Procedure - Memo 11617 - C - TJ_65354.docx | ROSS-003294776 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 7911 | Jackson v. Hous. Auth. of New Orleans, 478 So. 2d 911 | 302+34(1) | Amendment of a suit after dismissal or final judgment should not be permitted. Nevertheless, pleadings should be liberally construed so as to give the pleader an opportunity to present his evidence and to achieve substantial justice. La.C.Civ.Pr. art. 865; Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La.1973). | Amendment of suit after dismissal or final judgment should not be permitted; nevertheless, pleadings should be liberally construed so as to give pleader opportunity to present his evidence and to achieve substantial justice. LSA-C.C.P. art. 865. | Should pleadings be liberally construed so as to give pleader opportunity to present his evidence and to achieve substantial justice? | Pretrial Procedure - Memo 11667 - C - KI_65404.docx | ROSS-003279576-ROSS-003279577 | Condensed, SA | 0.25 | 0 | 1 | 0 | 1 | |
| 7912 | Friends of Everglades v. Bd. of Cty. Comm'rs of Monroe Cty., 456 So. 2d 904 | 307A+695 | It is a well settled rule that if the facts in a complaint appear amenable to amendment, a dismissal without leave to amend may result in an abuse of discretion. See Townsend v. Ward, 429 So.2d 404, 406 (Fla. 1st DCA 1983). | If facts in complaint appear amenable to amendment, dismissal without leave to amend may result in an abuse of discretion. | "If facts in complaint appear amenable to amendment, can dismissal without leave to amend result in an abuse of discretion?" | 040346.docx | LEGALEASE-00161140-LEGALEASE-00161141 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7913 | Wheeler v. Eftink, 507 S.W.3d 598 | 307A+583 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. Shirrell v. Missouri Edison Co., 535 S.W.2d 446, 448 (Mo. banc 1976). We acknowledge the trial court is in a superior position to determine who caused the delay and if such delay was prejudicial to the defendant. State ex rel. Missouri Highway & Transp. Comm'n v. Moulder, 726 S.W.2d 812, 813 (Mo. App. S.D. 1987) (explaining that the trial court has "intimate knowledge of all aspects of the case[.]"). Accordingly, we give great deference to the trial court, and its dismissal will not be disturbed unless we find an abuse of discretion. Shirrell, 535 S.W.2d at 448. We presume the trial court's ruling is correct, and the appellant bears the burden of showing the court abused its discretion. Id. at 449. | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | Does the court have the inherent power to dismiss a case for failure to prosecute with due diligence? | Pretrial Procedure - Memo 11686 - C - SJ_64704.docx | ROSS-003294480-ROSS-003294481 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 7914 | Bobbin v. Sail the Sounds, 153 Conn. App. 716 | 307A+583 | Practice Book " 14"3(a) permits a trial court to dismiss an action with costs if a party fails to prosecute the action with reasonable diligence. "The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court." Nickerson v. Gachim, 183 Conn. 413, 415, 439 A.2d 379 (1981), overruled in part on other grounds by Morelli v. Manpower, Inc., 226 Conn. 831, 834, 628 A.2d 1311 (1993). "Under [" 14"3], the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the "reasonable" section of the diligence spectrum." Jaconski v. AMF, Inc., 208 Conn. 230, 234, 543 A.2d 728 (1988). Courts must remain mindful, however, that "[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible"; Snow v. Calise, 174 Conn. 567, 574, 392 A.2d 440 (1978); and that "[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) Millbrook Owners Assn., Inc. v. Hamilton Standard, 257 Conn. 1, 16, 776 A.2d 1115 (2001). | The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the trial court. Practice Book 1998, S 14-3(a). | Is the ultimate determination regarding a motion to dismiss for lack of diligence within the sound discretion of the trial court? | Pretrial Procedure - Memo 11689 - C - SJ_65410.docx | ROSS-003281624-ROSS-003281625 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 7915 | Bus. Servs. of Am. II v. WaferTech LLC, 245 P.3d 257 | 307A+583 | Alternatively, WaferTech argues that the July 2006 order indicating a "satisfaction" in April 2005, when viewed together with BSA's former counsel's May 2008 notice of intent to withdraw, evidence BSA's dilatoriness removing the present case from the confines of CR 41(b)(1). We disagree. A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented. Foss Mar., 107 Wash.App. at 674, 27 P.3d 1228 (quoting Thorp Meats, 110 Wash.2d at 166"67, 750 P.2d 1251). In Thorp Meats, our Supreme Court explained that where CR 41(b)(1) applies, a trial court has inherent authority to dismiss an action for want of prosecution only "[w]here dilatoriness of a type not described by CR 41(b)(1) is involved." 110 Wash.2d at 169, 750 P.2d 1251. " "Dilatoriness of a type not described by CR 41(b)(1)" refers to unacceptable litigation practices other than mere inaction, whatever the duration." Wallace v. Evans, 131 Wash.2d 572, 577, 934 P.2d 662 (1997) (emphasis added). Here, the partial satisfaction, order for return of exhibits, and notice of intent to withdraw are all related to the affirmed judgments against BSA, not to the outstanding lien claim, and therefore do not evidence dilatoriness beyond mere inaction. | A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented. | Does the court of general jurisdiction have the inherent power to dismiss actions for lack of prosecution? | Pretrial Procedure - Memo 11704 - C - SKG_65423.docx | ROSS-003282439-ROSS-003282440 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 7916 | State ex rel. Nixon v. Summit Inv. Co., 186 S.W.3d 428 | 307A+583 | Peet v. Randolph, 103 S.W.3d 872, 877 (Mo.App.2003) (quoting Laurie v. Ezard, 595 S.W.2d 336, 338 (Mo.App.1980)). "The court's discretion to dismiss a case for failure to prosecute "is not a mental discretion, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to serve the ends of substantial justice." " Id. (quoting Laurie, 595 S.W.2d at 337). "As a matter of policy Missouri law favors the disposition of cases upon the merits, when possible." Id. "This is because "the purpose of all courts is to do justice, and justice is best served when all litigants have a chance to be heard." " Id. (quoting Laurie, 595 S.W.2d at 337). | The court's discretion to dismiss a case for failure to prosecute is not a mental discretion, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to serve the ends of substantial justice. | Is the court's discretion to dismiss a case for failure to prosecute a mental discretion? | Pretrial Procedure - Memo 11741 - C - TJ.docx | LEGALEASE-00051423-LEGALEASE-00051424 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 7917 | Foss Mar. Co. v. City of Seattle, 107 Wash. App. 669 | 307A+583 | The City argues that, notwithstanding CR 41(b), the trial court here had inherent authority to dismiss the case. But a trial court's inherent powers to dismiss come into play only if CR 41 does not apply: "A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented." Snohomish County v. Thorp Meats, 110 Wash.2d 163, 166-67, 750 P.2d 1251 (1988) (footnote omitted). In Thorp Meats, the Supreme Court explained that a trial court has inherent authority to dismiss an action for want of prosecution only "[w]here dilatoriness of a type not described by CR 41(b)(1) is involved." 110 Wash.2d at 169, 750 P.2d 1251. " "Dilatoriness of a type not described by CR 41(b)(1)" refers to unacceptable litigation practices other than mere inaction, whatever the duration." Wallace v. Evans, 131 Wash.2d 572, 577, 934 P.2d 662 (1997) (quoting Thorp Meats, 110 Wash.2d at 169, 750 P.2d 1251). | A court of general jurisdiction has the inherent power to dismiss actions for lack of prosecution, but only when no court rule or statute governs the circumstances presented. CR 41(b)(1). | Does a court of general jurisdiction have the inherent power to dismiss actions for lack of prosecution? | Pretrial Procedure - Memo 11752 - C - NS_65462.docx | ROSS-003322639-ROSS-003322640 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7918 | Bowman v. Slade, 501 So. 2d 1236 | 307A+697 | As a general rule, Alabama cases have held that a party, whether represented by counsel or acting pro se, has a duty to follow the status of his own case, and no duty rests upon either the court or opposing parties to advise that party of his trial date. See, Wetzel v. Birmingham Electric Co., 250 Ala. 267, 33 So.2d 882 (1948). Additionally, Alabama courts have held that even where it is customary for the circuit clerk to notify parties not represented by counsel of their trial date, a party's reliance upon such custom is unjustified and may warrant the dismissal of his case upon his failure to appear for trial. See, Irvin v. Ford, 255 Ala. 27, 49 So.2d 915 (1951). Finally, we note that the dismissal of a party's case and the subsequent refusal to set aside the dismissal for want of prosecution rests largely within the sound discretion of the trial court. See, Knight v. Davis, 356 So.2d 156 (Ala.1978). | Dismissal of party's case and subsequent refusal to set aside dismissal for want of prosecution rests largely within sound discretion of trial court. | Is the dismissal for want of prosecution a matter within the discretion of trial court? | 040509.docx | LEGALEASE-00161369-LEGALEASE-00161370 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7919 | Coven v. Heatley, 715 S.W.2d 739 | 307A+583 | Coven argues, second, that the district court abused its discretion by dismissing the suit after she had fully complied with the local rules of the Travis County district courts governing procedures for reinstating cases. The order of dismissal, however, was based on appellee's motion, not on the district court's procedures under the local rules. A court has inherent power to dismiss a lawsuit for failure to prosecute with due diligence, separate and apart from statutory or rule authority. Veterans' Land Bd. v. Williams, 543 S.W.2d 89 (Tex.1976); Coven v. Dailey, supra ; Tex.R.Civ.P.Ann. 165a(3) (Supp.1986). | Court has inherent power to dismiss lawsuit for failure to prosecute with due diligence, separate and apart from statutory or rule authority. | Does the court have inherent power to dismiss lawsuit for failure to prosecute with due diligence? | 040534.docx | LEGALEASE-00161561-LEGALEASE-00161562 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7920 | Peretzman v. Borochoff, 58 Ga. App. 838 | 8.30E+10 | 345 "Any plea which impeaches the original validity, or declares any subsequent extinguishment of the contract, must be governed by the law of the place where the contract was made. Thus, infancy, coverture, tender, or payment, or discharge by insolvent laws, if a valid defense by the lex loci contractus, will be a valid defense everywhere." Vol. 2, Daniel on Negotiable Instruments, 7th Ed., 1114, " 1023 "The place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain. Thus, the law of the place where a bill or note is written, signed, or dated does not necessarily control it but the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or, as has been said, where the last act essential to its completion was done, so that, where a note was executed in one State but not completed until accepted in another State, it is made in that other State. A note drawn and dated in Maryland, but delivered in New York, in payment of goods there purchased, or money loaned, is payable in and governed by the laws of New York. And if a note be dated and signed in blank in Virginia, and sent to Maryland, and there filled up and negotiated, it is a Maryland, and not a Virginia note. In a Maine case, it appeared that a husband and wife executed a note in Massachusetts, the wife being surety for her husband, and the husband delivered it by mail to the payee in Maine. By law of Massachusetts the wife could not bind herself, but in Maine a married woman could contract for any lawful purpose. The law of Maine was held to apply, and the wife held liable." 2, Daniel on Negotiable Instruments, 7th Ed., 1110, " 1017. | A bill or note is controlled, not necessarily by the law of the place where it is written, signed, or dated, but by the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or where the last act essential to its completion was done. | Which law controls a note? | 009175.docx | LEGALEASE-00162668-LEGALEASE-00162669 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 7921 | Little v. State Indus. Comm'n, 1936 OK 817 | 181+1 | A forgery statute is "aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." LaFave & Scott, Handbook on Criminal Law, p. 671 (1972). This purpose underlies not only the prohibition against forging a false instrument but also that against possessing or uttering such an instrument. Perkins, Criminal Law, pp. 339-40 (2d ed. 1969). It would be anomalous for the legislature to prohibit the possession of a false instrument with intent to utter but not the tendering or offering of it. The actual tendering of a forged instrument, whether the instrument is accepted or not, is more harmful to public confidence in the genuineness of documents than is the possession of the instrument with intent to utter. | Forgery statute is aimed primarily at safeguarding confidence in genuineness of documents relied upon in commercial and business activity; such purpose underlies not only prohibition against forging false instrument but also against possessing or uttering such an instrument. W.S.A. 943.38. | Is forgery primarily aimed at safeguarding confidence in the genuineness of documents used in commercial and business activities? | Forgery - Memo 40 - SNJ_65934.docx | ROSS-003278690-ROSS-003278691 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 7922 | United States v. Barrett, 837 F.2d 933 | 181+2 | On appeal defendant contends that the later and more specific enactment of 18 U.S.C. " 510, which treats the forgery of a treasury check written for $500 or less as a misdemeanor, supersedes and, insofar as it applies to treasury checks, repeals by implication the earlier and more general provisions of 18 U.S.C. " 495, which treats all forgeries of written instruments as felonies. Following the lead of four other circuits, we reject defendant's argument and affirm. See United States v. Cavada, 821 F.2d 1046 (5th Cir.), cert. denied, 484 U.S. 932, 108 S.Ct. 304, 98 L.Ed.2d 262 (1987); Edwards v. United States, 814 F.2d 486 (7th Cir.1987); United States v. Jackson, 805 F.2d 457 (2d Cir.1986) (rejecting claim of implied repeal of " 495 by 18 U.S.C. " 641 and discussing extensively the relationship between "" 495 and 510), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); United States v. Edmonson, 792 F.2d 1492 (9th Cir.1986), cert. denied, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). | Statute treating forgery of treasury check written for $500 or less as a misdemeanor did not repeal by implication general federal statute treating all forgeries of written instruments as felonies. 18 U.S.C.A. SS 495, 510. | "Has the specific enactment of 18 U.S.C. 510, implicitly repealed 18 U.S.C. 495, which treats all forgeries of written instruments as felonies?" | 018458.docx | LEGALEASE-00161906-LEGALEASE-00161907 | Condensed, Order, SA, Sub | 0.78 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7923 | AAA Disposal Sys. v. Aetna Cas. & Sur. Co., 355 Ill. App. 3d 275 | 217+1001 | An insurance policy is " "[a] contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event and is applicable only to some contingency or act to occur in [the] future." " (Emphasis omitted.) Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 103, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992), quoting Black's Law Dictionary 721 (5th ed.1979). If the insured knows or has reason to know, when it purchases a comprehensive general liability policy, that there is a substantial probability that it will suffer a loss, the risk ceases to be contingent and becomes a probable or known loss that will not be covered by the policy. Liberty Mutual, 154 Ill.2d at 103, 180 Ill.Dec. 691, 607 N.E.2d 1204. | An "insurance policy" is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event and is applicable only to some contingency or act to occur in the future. | What kinds of acts are insurance policies applicable to? | 019636.docx | LEGALEASE-00161970-LEGALEASE-00161971 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 7924 | Simpson v. State, 26 Wash. App. 687 | 302+34(1) | It is true that if the exemption statute were held unconstitutional, the use tax statute would remain unchallenged and future use taxpayers would simply have no exemption to claim. But plaintiffs clearly raised the issue of constitutionality in their pleadings. We do not think plaintiffs should be denied a hearing on that issue merely because the pleadings were in the form of a refund request. Pleadings are to be construed liberally; if a complaint states facts entitling the plaintiff to some relief it is immaterial by what name the action is called. See, e.g., Christensen v. Swedish Hosp., 59 Wash.2d 545, 368 P.2d 897 (1962). We may affirm or reverse the summary judgment of the trial court based on our own resolution of the constitutional issues. See Sarruf v. Miller, 90 Wash.2d 880, 586 P.2d 466 (1978). | Pleadings are to be construed liberally; if complaint states facts entitling plaintiff to some relief it is immaterial by what name action is called. | "If a complaint states facts entitling the plaintiff to some relief, is it immaterial by what name the action is called?" | 023903.docx | LEGALEASE-00162548-LEGALEASE-00162549 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7925 | Ellett v. Ellett, 35 Va. App. 97 | 30+3895 | On appeal, we will sustain the demurrer if the husband's complaint, considered in the light most favorable to the husband, fails to state a valid cause of action. McDermott v. Reynolds, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000). In conducting our review, we consider as true the facts alleged in husband's complaint as well as the reasonable inferences that can be drawn from such facts. Id. | Appellate court will sustain demurrer if the plaintiff's complaint, considered in light most favorable to plaintiff, fails to state a valid cause of action, and in conducting its review, the court considers as true facts alleged in complaint, as well as reasonable inferences that can be drawn from such facts. | "Will a demurrer be sustained if the complaint, considered in the light most favorable to the plaintiff, fails to state a valid cause of action?" | Pleading - Memo 631-RMM_66431.docx | ROSS-003292352-ROSS-003292353 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 7926 | Williams Studio Div. of Photography by Tallas v. Nationwide Mut. Fire Ins. Co., 380 Pa. Super. 1 | 307A+697 | The legal effect of the entry of a judgment of non pros is not such as to preclude a plaintiff who suffers such a judgment from instituting another suit on the same cause of action provided, however, that the second suit is brought within the period of the statute of limitations. Gordon-Stuart Ltd. v. Allen Shops, Inc., 239 Pa.Super. 35, 361 A.2d 770 (1976); Bucci v. Detroit Fire and Marine Insurance Co., 109 Pa.Super. 167, 167 A. 425 (1933). Appellants, of course have not done so. At the time the judgment of non pros was entered in the prior case, the applicable statute of limitations had long since expired. (emphasis added) | After satisfying proper criteria, plaintiff may open judgment of non pros and institute another suit based on same cause of action. Rules Civ.Proc., Rule 1037, 42 Pa.C.S.A. | "After satisfying proper criteria, can a plaintiff open judgment of non pros and institute another suit based on a same cause of action?" | 040595.docx | LEGALEASE-00162338-LEGALEASE-00162339 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7927 | Chrysler Fin. Servs. Americas v. Benjamin, 325 Ga. App. 579 | 30+3206 | At the outset, we note that a trial court's order of dismissal for failure to prosecute is discretionary and "is subject to appellate review for abuse of discretion."And we will not substitute our judgment for the trial court's judgment when "there is no obvious abuse of discretion." With these guiding principles in mind, we turn now to Chrysler FSA's claims of error. | A trial court's order of dismissal for failure to prosecute is discretionary and is subject to appellate review for abuse of discretion. | Is a court's order of dismissal for failure to prosecute discretionary and subject to appellate review for abuse of discretion? | 040609.docx | LEGALEASE-00162498-LEGALEASE-00162499 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 7928 | Silva v. City Of Attleboro, 454 Mass. 165 | 371+2002 | In distinguishing fees from taxes, we have noted that fees tend to share common traits. Fees, unlike taxes, "are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner "not shared by other members of society." " Emerson College, supra, quoting National Cable Television Ass'n v. United States, 415 U.S. 336, 341, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Fees "are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge." Emerson College, supra at 424"425, 462 N.E.2d 1098. Finally, the charges "are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." Id. at 425, 462 N.E.2d 1098. | In distinguishing fees from taxes, fees, unlike taxes, are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society. | "In distinguishing fees with taxes, do fees benefit the party in a manner not shared by other members of society?" | 046169.docx | LEGALEASE-00162456-LEGALEASE-00162457 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7929 | Briggs v. Latham, 36 Kan. 255 | 8.30E+12 | The findings of fact are unquestioned here, and must govern in the decision of the case. The only question presented for determination is whether the indorsement of the notes by defendant is an Illinois or a Missouri contract. The notes were never protested, nor did the defendant ever receive notice of their non-payment, and this was her defense. Under the laws of Illinois, no protest or notice was necessary to fix the liability of the defendant as indorser, but the laws of Missouri, like our own, require protest and notice. We think that the law of Missouri must control. The indorsement was written by the defendant upon the back of the notes at her residence in Illinois, where she placed them in the hands of her husband for negotiation. This act did not operate to transfer the notes, nor did it complete the contract of indorsement. In Edwards on Notes and Bills, " 403, it is said that "the indorsement of a note or bill is not completed until the instrument is delivered to the indorsee, or put under his legal control. Indeed, it is not at all material when or for what purpose the indorsement is written, since it is the delivery of the paper properly indorsed that operates as a contract of indorsement." Daniel, Neg. Inst. " 868; 2 Pars. Bills & N. 327. The mere circumstance that the defendant wrote her name on the notes in Illinois is therefore unimportant. They were placed in the hands of her husband to be negotiated and sold not at any particular place, nor to any particular person, but were to be disposed of by him wherever and to whomso ever he could. He carried them to Missouri, where he sold and delivered them to Dunbar. Until that time the notes were in the control of the defendant, and the transfer or contract of indorsement was not completed till then. The indorsement is a separate and substantive contract, and is not necessarily controlled either by the place of payment named in the notes, or by the residence of the indorser. The general rule is that contracts of | The indorsement of a promissory note is a separate and substantive contract, and the general rule is that contracts of this character are to be construed, and their effect determined, according to the laws of the state in which they are made, unless it appears that they are to be performed in or according to the laws of another state. | "Are contracts to be construed, and their effect determined, according to the laws of the state in which they are made?" | Bills and Notes - Memo 1371 - RK_66272.docx | ROSS-003308652-ROSS-003308653 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7930 | Blake v. Weiden, 291 N.Y. 134 | 83E+481 | In our view, the better rule is that when there has been a purported indorsement of the whole instrument, in separate parts to two or more transferees, the purported indorsees take legal title to their several shares and may sue together, or any one or more may sue, provided all the other indorsees are brought in as parties. (In the case before us defendant did bring in the other two indorsees, alleging without contradiction that they had refused to join with him.) | When there has been a purported indorsement of a whole negotiable instrument in separate parts to two or more transferees, such transferees take legal title to their several shares and may sue together or any one or more may sue provided the other transferees are brought in as parties. Negotiable Instruments Law, S 62. | Can an indorsee sue individually when there are two or more indorsees to an instrument? | 009309.docx | LEGALEASE-00162929-LEGALEASE-00162930 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 7931 | English v. Brigman, 225 N.C. 402 | 79+5 | Whatever may be the status of English as a de jure officer, and upon this it is not within the scope of our review to pass, we have no doubt, upon the facts presented and applicable principles of law, he was, at the time of issuing the summons in this case, de facto Clerk of the Superior Court of Madison County, acting under color of his original appointment under authority of the cited statute, and is in the actual discharge of the duties of the office, with his right to incumbency not adversely determined in any competent judicial proceeding.As such de facto officer his acts, of the nature involved in this motion, have a recognized validity in law, growing out of public necessity, and cannot be collaterally attacked. 43 Am.Jur., Public Officers, ss. 470, 471; Berry v. Payne, 219 N.C. 171, and cases cited page 177, 13 S.E.2d 217 | Acting clerk of superior court, who was appointed when regular clerk was given military leave, and who, acting under color of his original appointment, was in actual discharge of duties of office with his right to incumbency not adversely determined in any competent judicial proceeding, was a "de facto officer" and his official acts could not be collaterally attacked. Pub.Laws 1941, c. 121; Const. art. 4, S 29. | Are the acts of a de facto clerk valid? | 013553.docx | LEGALEASE-00164108-LEGALEASE-00164109 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 7932 | Reich v. Lopez, 858 F.3d 55 | 135+2 | General jurisdiction over an individual comports with due process in the forum where he is "at home," meaning the place of "domicile." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (per curiam). Owning property in a forum does not alone establish domicile. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile."United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004). In an "exceptional case," an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere. Daimler AG v. Bauman, """ U.S. """", 134 S.Ct. 746, 761 n.19, 187 L.Ed.2d 624 (2014), but the Second Circuit has yet to find such a case | Owning property in forum does not alone establish domicile; one may have more than one residence in different parts of country or world, but person may have only one domicile. | "Can one have more than one residence in different parts of country or world, but a person may have only one domicile?" | 014546.docx | LEGALEASE-00164172-LEGALEASE-00164173 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 7933 | State v. Salas, 400 P.3d 251 | 135H+30 | The State cites various cases, including State v. Linam, 1979-NMSC-004, 93 N.M. 307, 600 P.2d 253; State v. Aragon, 1993-NMSC-054, 116 N.M. 267, 861 P.2d 948; and State v. Freed, 1996-NMCA-044, 121 N.M. 569, 915 P.2d 325, for the general principle that double jeopardy protections do not apply to habitual offender proceedings. We agree that "double jeopardy [protections] generally [do] not apply in ... habitual offender proceedings" because the proceedings do not have "the hallmarks of a trial of guilt or innocence[.]" Aragon, 1993-NMSC-054, 11, 13, 116 N.M. 267, 861 P.2d 948. | Double jeopardy protections generally do not apply in habitual offender proceedings because the proceedings do not have the hallmarks of a trial of guilt or innocence. U.S. Const. Amend. 5. | Do double jeopardy protections apply in habitual offender proceedings because the proceedings do not have the hallmarks of a trial of guilt or innocence? | Double Jeopardy - Memo 1107 - C - KG_68012.docx | ROSS-003294688 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 7934 | People v. Brandon, 40 Cal. App. 4th 1172 | 135H+96 | Although the right to request a mistrial or proceed to a conclusion with the same jury is a fundamental right, the law does not require that it be personally waived by an accused, nor does the law require that an accused be admonished concerning the nature of the right. (People v. Allen (1980) 110 Cal.App.3d 698, 704, 168 Cal.Rptr. 227; United States v. Dinitz (1976) 424 U.S. 600, 610, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267.) Accordingly, trial counsel had the right to make that decision as a matter of trial tactics (People v. Moore (1983) 140 Cal.App.3d 508, 512"514, 189 Cal.Rptr. 487) even over appellant's objection. (See In re Horton (1991) 54 Cal.3d 82, 95, 284 Cal.Rptr. 305, 813 P.2d 1335 [if the right in question has not been determined to be one which requires admonishment and express waiver, it may be waived by counsel, even over the defendant's objection].) Therefore, counsel's request for mistrial is deemed to be appellant's consent. | Although right to request mistrial or proceed to conclusion with same jury is fundamental right, law does not require that it be personally waived by accused nor does law require that accused be admonished concerning nature of right. | Is the right to request mistrial or proceed to conclusion with same jury a fundamental right? | 015294.docx | LEGALEASE-00162939-LEGALEASE-00162940 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 7935 | United States v. Bauman, 887 F.2d 546 | 135H+96 | With little difficulty, we conclude that Bauman's double jeopardy appeal is without merit in this case for the simple reason that he requested the mistrial. As noted previously, a motion by a defendant for a mistrial usually removes any barrier standing in the way of reprosecution under Dinitz. His argument that his motion for a mistrial was "a last resort" and that he really wanted a severance or a continuance is unpersuasive. | Defendant who requested mistrial could be retried on same charges without violating double jeopardy, despite defendant's claim that mistrial motion was "a last resort" and that he really wanted severance or continuance. U.S.C.A. Const.Amend. 5. | "Can a defendant who requested mistrial be retried on the same charges without violating double jeopardy, despite a defendant's claim that a mistrial motion was ""a last resort""?" | 015375.docx | LEGALEASE-00163066-LEGALEASE-00163067 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 7936 | Torres v. State, 614 S.W.2d 436 | 135H+96 | In addition, the State argues that the appellant impliedly consented to be retried because he failed to object to the court's declaration of a mistrial. Consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. United States v. Gori, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); United States v. Smith, 621 F.2d 350 (9th Cir. 1980); United States v. Rich, 589 F.2d 1025 (10th Cir. 1978). But before a failure to object constitutes an implied consent to a mistrial, a defendant must be given an adequate opportunity to object to the court's motion.See United States v. Gori, supra; United States v. Smith, supra; United States v. Goldstein, 479 F.2d 1061 (2d Cir. 1973); United States v. Goldman, 439 F.Supp. 358 (D.C.N.Y.1977). | Before failure to object to declaration of mistrial constitutes implied consent to mistrial, defendant must be given adequate opportunity to object to court's motion. U.S.C.A.Const. Amend. 5. | "Before a failure to object to mistrial constitutes an implied consent to mistrial, should a defendant have been given adequate opportunity to object?" | Double Jeopardy - Memo 351 - C - MS_66629.docx | ROSS-003280713-ROSS-003280714 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7937 | State v. Tolliver, 839 S.W.2d 296 | 135H+96 | The courts have long explored the boundaries of the double jeopardy clause. See United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Generally, the double jeopardy clause bars retrial if a judge grants a mistrial without the defendant's request or consent. United States v. Jorn, 400 U.S. 470, 479"481, 91 S.Ct. 547, 554"55, 27 L.Ed.2d 543 (1971); City of Smithville v. Summers, 690 S.W.2d 850, 854 (Mo.App.1985). Where such a mistrial is declared, the defendant's "valued right" to have the trial completed by a particular tribunal is implicated. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). This right is subject to long-recognized exceptions permitting retrial: where there is a "manifest necessity" for the declaration of the mistrial, Oregon v. Kennedy, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982), or where the "ends of public justice" would otherwise be defeated, Illinois v. Somerville, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). | Generally, double jeopardy clause of Fifth Amendment bars retrial if judge grants mistrial without defendant's request or consent. U.S.C.A. Const.Amend. 5. | "If the trial court declares a mistrial without the defendant's request for or consent to a mistrial, does the double jeopardy clause bar retrial of the defendant?" | 015436.docx | LEGALEASE-00163739-LEGALEASE-00163740 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 7938 | United States v. Jorn, 400 U.S. 470 | 135H+96 | But it is also clear that recognition that the defendant can be reprosecuted for the same offense after successful appeal does not compel the conclusion that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching. For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal., 484, 91 S. Ct. 547, 556"57, 27 L. Ed. 2d 543 (1971) | Where judge, acting without defendant's consent, aborts proceeding, defendant has been deprived of his valued right to have his trial completed by particular tribunal. (Per Mr. Justice Harlan, three justices concurring and two justices concurring in judgment.) | "When the trial judge sua sponte, over defendant's objection, declares a mistrial, is the defendant deprived of his valued right to have his trial completed by a particular tribunal?" | 015463.docx | LEGALEASE-00163543-LEGALEASE-00163544 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 7939 | State v. Berger, 235 N.W.2d 254 | 135H+95.1 | The double jeopardy clause does not prohibit retrial in every instance when the first trial has terminated prior to a verdict. State v. Allesi, supra, at 814.The United States Supreme Court, in Wade v. Hunter, 336 U.S. 684 at 688, 69 S.Ct. 834 at 837, 9o L.Ed. 974 (1949), stated:"The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." | Double jeopardy clause does not prohibit retrial in every instance when first trial has terminated prior to verdict. NDCC 29-01-07; Const. S 13; U.S.C.A.Const. Amends. 5, 14. | Does double jeopardy not prohibit retrial in every instance when a first trial has terminated prior to verdict? | 015553.docx | LEGALEASE-00163741-LEGALEASE-00163742 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7940 | State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509 | 260+79.1(2) | Under some of the definitions of royalty and bonus the oil payment appears to be royalty; under others it appears to be bonus. The opinion in Indiana Natural Gas & Oil Co. v. Stewart, 45 Ind.App. 554, 90 N.E. 384, 386, thus defines royalty, quoting from Webster's Dictionary: "The word "royalty" generally has reference to "a share of the product or profit reserved by the owner for permitting another to use the property." " This definition has often been quoted. Curlee v. Anderson & Patterson, Tex.Civ.App., 235 S.W. 622, 624; Hill v. Roberts, Tex.Civ.App., 284 S.W. 246, 249; O'Fiel v. Brooks, Tex.Civ.App., 98 S.W.2d 266, 269. An oil payment reserved by a lessor comes within the broad terms of this definition. We believe, however, that a definition more nearly fitting what is ordinarily meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease. Associate Justice Greenwood, when discussing the oil and gas royalty in Sheffield v. Hogg, 124 Tex. 290, 298, 77 S.W.2d 1021, 1024, 80 S.W.2d 741, describes it as the right to a portion of the proceeds or profit "throughout the duration of a determinable fee." The continuance of the royalty throughout the life of the lease is made the basis for drawing a distinction between bonus and royalty in Geller v. Smith, 130 Cal.App. 485, 20 P.2d 102, 104, where the term "bonus" as applied to an oil and gas lease is thus defined: "A sum of money paid by a lessee to the lessor in consideration for the execution of a lease, as distinguished from the return or royalty reserved by the lessor to be paid by the lessee through the term of the lease." (Our italics) | A "bonus" as applied to an oil and gas lease is a sum of money paid by lessee in consideration for execution of lease as distinguished from a "return" or "royalty" reserved by the lessor which must be paid by the lessee throughout the term of the lease. | Is a distinction between a bonus and a royalty that royalties are paid through the term of the lease? | Mines and Minerals - Memo 344 - C - ML_66669.docx | ROSS-003292800-ROSS-003292801 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 7941 | Hayes v. Vill. of Middleburgh, 140 A.D.3d 1359 | 307A+697 | We affirm. "At any scheduled call of a calendar or at any conference, .. [i]f the defendant appears but the plaintiff does not, the judge may dismiss the action" (22 NYCRR 202.27[b]; see Bank of N.Y. v. Castillo, 120 A.D.3d 598, 599, 991 N.Y.S.2d 446 [2014] ). "In order to vacate a dismissal pursuant to 22 NYCRR 202.27, [a] plaintiff [is] required to demonstrate a reasonable excuse for [his or her] failure to appear and a potentially meritorious cause of action"(Bank of N.Y. v. Mohammed, 130 A.D.3d 1419, 1420, 14 N.Y.S.3d 783 [2015] [citations omitted]; see Foley Inc. v. Metropolis Superstructures, Inc., 130 A.D.3d 680, 680, 11 N.Y.S.3d 873 [2015] ). | In order to vacate a dismissal for failure to appear, a plaintiff is required to demonstrate a reasonable excuse for his or her failure to appear and a potentially meritorious cause of action. N.Y.Ct.Rules, S 202.27(a). | In order to vacate a dismissal for failure to prosecute is a plaintiff required to demonstrate a justifiable excuse for her default? | Pretrial Procedure - Memo 11894 - C - SHB.docx | LEGALEASE-00053584-LEGALEASE-00053585 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7942 | Davidson v. American Laundry Mach. Div., Martin Sales, McGraw-Edison Co., 431 N.E.2d 546 | 307A+690 | We cannot agree with the Davidsons that simply because the court did not state that the dismissals pursuant to Trial Rule 41(E) were "with prejudice" they, as a matter of law, were "without prejudice." We agree with McGraw that the Rules clearly specify that the exact opposite shall be the case. Thus, dismissals for failure to prosecute an action are dismissals with prejudice unless otherwise provided by the court's order, 3 W. Harvey, Indiana Practice s 41.5 (1970), and if the dismissal is set aside as provided by Trial Rule 60(B) then it is properly done only after notice and a hearing. State ex rel. AAFCO v. Lake Superior Court, (1975) 263 Ind. 233, 328 N.E.2d 733; Gemmer v. Diehl, (1980) Ind.App., 411 N.E.2d 1248, trans. denied; School City of Gary v. Continental Electric Co., (1973) 158 Ind.App. 132, 301 N.E.2d 803, trans. denied | Dismissal for failure to prosecute action was dismissal with prejudice where it was not otherwise provided by trial court's order and order setting aside dismissal without granting defendant notice and hearing was invalid. Trial Procedure Rules 41, 41(B, E, F), 60(B). | "Is a dismissal for failure to prosecute a dismissal with prejudice, unless a trial court provides otherwise?" | 040771.docx | LEGALEASE-00163661-LEGALEASE-00163662 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7943 | In re Commercial Money Ctr., 350 B.R. 465 | 349A+10 | NetBank argues that the issue on this appeal is "not whether [Debtor] was relieved of the risks of owning the Leases" but "whether [Debtor] continued at risk with regard to NetBank." (Emphasis added.) This is too narrow a reading of the transactions and of Woodson and the other cases cited above. For purposes of determining whether a transaction is a sale or a loan, one useful factor is who is economically at risk. Under the transaction terms described above, it is Debtor, not NetBank, which is contractually allocated the risk of loss if, for example, a larger number of lessees default than expected, | For purposes of determining whether a transaction is a sale or a loan for security, one useful factor is who is economically at risk. | "For purposes of determining whether a transaction is a sale or a loan for security, is one useful factor who is economically at risk?" | 042816.docx | LEGALEASE-00164022-LEGALEASE-00164023 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 7944 | Price v. Drexel Burnham Lambert, 791 F.2d 1156 | 25T+182(2) | Nevertheless, the right to arbitration, like any contractual right, may be waived. Miller Brewing Co. v. Fort Worth Distributing Co., Inc. (FWDC), 781 F.2d 494, 497 (5th Cir.1986); Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex), 767 F.2d 1140, 1150 (5th Cir.1985). Although "[t]he burden on one seeking to prove a waiver of arbitration is a heavy one," Sibley v. Tandy Corp., 543 F.2d 540, 542 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." Miller Brewing, 781 F.2d at 497 (footnote omitted). As this court noted in E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas, 559 F.2d 268 (5th Cir.1977), | Although burden on one seeking to prove waiver of arbitration is a heavy one, waiver will be found when party seeking arbitration substantially invokes judicial process to the detriment or prejudice of the other party. | Is there a heavy burden of proof on one seeking to prove a waiver of arbitration? | 008093.docx | LEGALEASE-00165073-LEGALEASE-00165074 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7945 | Sterling Fin. Inv. Grp. v. Hammer, 393 F.3d 1223 | 25T+184 | We begin our discussion with section 4 of the Federal Arbitration Act, which provides that: A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. 9 U.S.C. " 4 (emphasis added). Despite Hammer's assertion that a federal court may only review an arbitration proceeding after it has concluded, the plain language of the statute indicates otherwise. We therefore hold that a federal district court, pursuant to 9 U.S.C. " 4, has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators. | Pursuant to section of the Federal Arbitration Act (FAA), a federal district court has jurisdiction to enforce a forum selection clause in a valid arbitration agreement where that clause has been disregarded by the arbitrators. 9 U.S.C.A. S 4. | Do courts have the jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators? | 008129.docx | LEGALEASE-00165040-LEGALEASE-00165042 | Condensed, Order, SA | 0.8 | 1 | 1 | 0 | 1 | 1 |
| 7946 | State v. Manatau, 2014 UT 7 | 135H+59 | In the present proceeding, there is no question that at the time the trial judge declared a mistrial, jeopardy had attached. The jury had been sworn and empaneled the previous day. Further, the record is clear that Mr. Manatau did not consent to the retrial; both Mr. Manatau and the State objected to the mistrial. Therefore, only legal necessity could preclude the mistrial from operating as an acquittal. | At the time the trial judge declared a mistrial, jeopardy had attached, for double jeopardy purposes, since jury had been sworn and empaneled the previous day. U.S.C.A. Const.Amend. 5; West's U.C.A. Const. Art. 1, S 12. | Will a jeopardy be attached when the judge declares a mistrial since jury had been sworn and empaneled the previous day? | 014607.docx | LEGALEASE-00165173-LEGALEASE-00165174 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 7947 | State v. Picot, 724 So. 2d 236 | 135H+30 | In State v. Johnson, 432 So.2d 815 (La.1983), the Court held that the defendant could be tried again on the multiple bill, even though the State failed to prove his identity as the perpetrator of the prior crimes. In Johnson, the Court noted: "Defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction." Id. at 817. The Habitual Offender Law creates no independent offense, but rather prescribes the conditions under which there is an enhanced penalty for the current offense and does not violate constitutional prohibitions against double jeopardy. State v. Boatner, 304 So.2d 661 (La.1974). | Habitual Offender Law creates no independent offense, but rather prescribes conditions under which there is enhanced penalty for current offense, and does not violate constitutional prohibitions against double jeopardy. U.S.C.A. Const.Amend. 5. | Does Habitual Offender Law create no independent offense? | Double Jeopardy - Memo 1226 - C - SS_67363.docx | ROSS-003281857-ROSS-003281858 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 7948 | United States v. Rohde, 159 F.3d 1298 | 135H+30 | For double jeopardy purposes, the consideration of related but uncharged criminal conduct in calculating a sentence, or the enhancement of a sentence for obstructing justice by failing to appear at a hearing, do not constitute "punishment." See Witte v. United States, 515 U.S. 389, 399, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); United States v. Hawley, 93 F.3d 682, 688 (10th Cir.1996). Rohde notes differences between those sentencing calculations and a sentence enhancement for obstructing justice by perjury. | For double jeopardy purposes, the consideration of related but uncharged criminal conduct in calculating a sentence, or the enhancement of a sentence for obstructing justice by failing to appear at a hearing, do not constitute "punishment." U.S.C.A. Const.Amend. 5. | What do not constitute as punishment for double jeopardy purposes? | Double Jeopardy - Memo 1229 - C - SS_67366.docx | ROSS-003294217-ROSS-003294218 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 7949 | Thomas v. Eighth Judicial Dist. Court in & for Cty. of Clark, 402 P.3d 619 | 135H+1 | See Arizona v. Washington, 434 U.S. 497, 503"04, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (noting that a second prosecution "increases the financial and emotional burden on the accused, [and] prolongs the period in which he [or she] is stigmatized by an unresolved accusation of wrongdoing"); see also United States v. DiFrancesco, 449 U.S. 117, 128, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (noting that reprosecution allows the government to "gain [ ] advantage from what it learns at the first trial about the strengths of the defense" and its own weaknesses). Similarly, the interest in the finality of judgments contemplates "the importance to the defendant of being able, once and for all, to conclude his confrontation with society." United States v. Jorn, 400 U.S. 470, 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). | With respect to double jeopardy, the interest in the finality of judgments contemplates the importance to the defendant of being able, once and for all, to conclude his confrontation with society. U.S. Const. Amend. 5; Nev. Const. art. 1, S 8. | "Does the interest in the finality of judgments contemplate the importance to the defendant of being able, once and for all, to conclude his confrontation with society, with respect to double jeopardy?" | 016367.docx | LEGALEASE-00165133-LEGALEASE-00165134 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7950 | Fields v. Palmdale Sch. Dist., 427 F.3d 1197 | 92+4391 | There is no fundamental due process right of parents to be the exclusive provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it. U.S.C.A. Const.Amend. 14. We agree, and hold that there is no fundamental right of parents to be the exclusive provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it. We also hold that parents have no due process or privacy right to override the determinations of public schools as to the information to which their children will be exposed while enrolled as students. Finally, we hold that the defendants' actions were rationally related to a legitimate state purpose. | There is no fundamental due process right of parents to be the exclusive provider of information regarding sexual matters to their children, either independent of their right to direct the upbringing and education of their children or encompassed by it. U.S.C.A. Const.Amend. 14. | Do parents have a constitutional right to teach their children about sexual matters? | 017309.docx | LEGALEASE-00164347-LEGALEASE-00164348 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 7951 | In re Lunan Family Restaurants, 194 B.R. 429 | 233+531 | Labeling an agreement a "lease" does not make it one. Whether a "lease" is bona fide or merely a financing agreement depends upon the circumstances of each case.The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a "lease." The fact that the lessee, upon compliance with the terms of the lease, becomes or has the option to become the owner of the leased property for no additional consideration indicates that the transaction is a financing lease or lease intended as security. In such cases, the lessor has no substantial interest in the leased property at the expiration of the lease term. In addition, the fact that the lessee assumes and discharges substantially all the risks and obligations ordinarily attributed to the outright ownership of the property is more indicative of a financing transaction than of a true lease.S.Rep. No. 989, 95th Cong., 2d Sess. 64 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5850 quoted in In re KAR Dev. Assocs., L.P., 180 B.R. 629, 635 n. 8 (D.Kan.1995); see also International Trade, 936 F.2d 744; Moreggia, 852 F.2d 1179; Matter of Tak Broadcasting Corp., 137 B.R. 728, 732 (W.D.Wis.1992). A "lease" is not a bona fide lease when it imposes obligations and confers rights significantly different from those arising out of the ordinary landlord/tenant relationship. In re PCH Assocs, 804 F.2d 193, 200 (2d Cir.1986). There is a rebuttable presumption, however, that what is labeled or denominated a lease is in fact a bona fide lease absent compelling factors to the contrary. Id. Thus, the burden of proving whether or not the lease is bona fide rests with BAI. BAI met its burden on this issue. | Lease is not bona fide lease when it imposes obligations and confers rights significantly different from those arising out of ordinary landlord-tenant relationship. | Is a lease a bona fide lease if it imposes obligations and confers rights significantly different from those arising from the landlord tenant relationship? | 021020.docx | LEGALEASE-00164979-LEGALEASE-00164980 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7952 | Davis v. Zoning Bd. of Adjustment of City of La Porte, 853 S.W.2d 650 | 307A+583 | A trial court has both the inherent power and authority under rule 165a to dismiss a lawsuit for the party's failure to prosecute it with due diligence.Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex.1976). However, a trial court's authority to dismiss cases for want of prosecution does not confer upon it the authority to adjudicate and deny the merits of the dismissed claim. Gracey v. West, 422 S.W.2d 913, 917 (Tex.1968); Lum v. Lacy, 616 S.W.2d 260, 261 (Tex.Civ.App."Houston [1st Dist.] 1981, no writ) ("a judgment on the merits should not be made until the plaintiff has had his day in court"). | Trial court has inherent authority to dismiss lawsuit for party's failure to prosecute it with due diligence, even without statutory or rule authority. | Does the trial court have inherent power and authority to dismiss lawsuit for party's failure to prosecute suit with due diligence? | Pretrial Procedure - Memo 12103 - C - PB.docx | LEGALEASE-00054505-LEGALEASE-00054506 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7953 | Cox v. Cox, 976 So. 2d 869 | 307A+583 | Rule 41(b) of the Mississippi Rules of Civil Procedure authorizes a defendant to move for the dismissal of an action "[f]or failure of the plaintiff to prosecute…." Miss. R. Civ. P. 41(b). The power to dismiss for failure to prosecute is granted not only by Rule 41(b), but is part of a trial court's inherent authority and is necessary for "the orderly expedition of justice and the court's control of its own docket." AT & T, 720 So.2d at 180 (quoting Wallace, 572 So.2d at 375; Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). What constitutes failure to prosecute is considered on a case-by-case basis. AT & T, 720 So.2d at 181 (citing Wallace, 572 So.2d at 376). In AT & T, this Court set forth considerations to be weighed in determining whether to affirm a dismissal with prejudice under Rule 41(b): (1) whether there was a "a clear record of delay or contumacious conduct by the plaintiff"; (2) whether lesser sanctions may have better served the interests of justice; and (3) the existence of other "aggravating factors." AT & T, 720 So.2d at 181 (citing Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)). | The power to dismiss for failure to prosecute is granted not only by rule, but is part of a trial court's inherent authority and is necessary for the orderly expedition of justice and the court's control of its own docket. Rules Civ.Proc., Rule 41(b). | Is it a court's inherent authority to dismiss an action for plaintiff's failure to prosecute? | 041058.docx | LEGALEASE-00164541-LEGALEASE-00164542 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 7954 | Pelfrey v. Oconee Cty., 207 S.C. 433 | 413+230 | The following is from the opinion in Yeomans v. Anheuser-Busch, Inc., 198 S.C. 65, 15 S.E.2d 833, 835, 136 A.L.R. 894: "It was also said in the last mentioned decision of this Court, the Ham case (Ham v. Mullins Lumber Co., 193 S.C. 66, 7 S.E.2d 712), that the basic purpose of the Compensation Act is the inclusion of employers and employees, and not their exclusion; and we add that doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion." This statement of principle may properly be paraphrased and it said, as follows: Where employer and employee are subject to the compensation act, as here (a county and its sheriff's clerk), an injured employee should not be excluded from the benefits of the law upon the ground that the accident did not arise out of and in the course of his employment when there is substantial doubt (arising from the proven facts) of the propriety of such conclusion. And the conclusion is mainly, at least, one of fact, as to which the finding by the Industrial Commission is final if there be any supporting evidence. Certainly here there was, in view of the facts which have been stated. Liberal construction of this beneficient, remedial law, to which this Court is committed, requires for its fruition liberal application to doubtful facts. Claims should not be denied upon technicalities. | The basic purpose of the Compensation Act is the inclusion of employers and employees and not their exclusion, and doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion. | "Under the Compensation Act, should doubts of jurisdiction be resolved in favor of inclusion rather than exclusion?" | 048573.docx | LEGALEASE-00164647-LEGALEASE-00164648 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7955 | Probst v. S. Stevedoring Co., 379 F.2d 763 | 413+186 | Additionally, some have suggested that since the purpose of statutes imposing a secondary liability of some character upon the general employer or general contractor for injuries to employees of subcontractors is to encourage employers in the subordinate levels to secure the necessary insurance, the rule which permits recovery against the general contractor where the subcontractor has obtained insurance, but which would be prohibited where the subcontractor obtained none, collides directly with the statutory policy. See 2 Larson, Workmen's Compensation, " 72.31 at p. 176 (1952). This approach carries little conviction under the Longshoremen's Act. Congress did not leave it to hierarchical inducement to assure that every employer subject to the Act becomes bound by, and qualified under, the Act. By express definition the Act covers every "employer any of whose employees are employed in maritime employment, in whole or in part,," " 902(4). This includes the subcontractor. Every employer is made liable for and required to secure the payment of compensation to his employees. " 904 (note 9, supra). To secure, as " 904 requires, payment of compensation, the employer must either obtain and keep in force approved insurance coverage or qualify as a self insurer under applicable regulations. " 932. Payment of compensation benefits, " 914, furnishing medical services, " 907, and making reports, " 930, are automatically required of the employer under severe sanctions. "" 918, 930. See Atlantic & , gulf Stevedores, Inc. v. Donovan, 5 Cir., 1960, 274 F.2d 794, 1960 AMC 1311, rehearing denied, 279 F.2d 75; cf. Employers Liab. Assur. Corp. v. Donovan, 5 Cir., 1960, 279 F.2d 76, cert. denied, 364 U.S. 884, 81 S.Ct. 165, 5 L.Ed.2d 105. And finally to cap it all, an employer failing to secure payment of compensation is guilty of a misdemeanor and subject to fine and imprisonment. " 938. | In enacting Longshoremen's Act Congress did not leave it to hierarchical inducement to insure that every employer subject to Act becomes bound by, and qualified under, the Act, and the express definition of Act which covers every employer any of whose employees are employed in maritime employment, in whole or in part, includes subcontractors. Longshoremen's and Harbor Workers' Compensation Act, SS 2(4), 4, 7, 14, 18, 30, 32, 37, 38, 33 U.S.C.A. SS 902(4), 904, 907, 914, 918, 930, 932, 937, 938. | "Under the Act, did Congress leave it to hierarchical inducement to assure that every employer subject to the Act becomes bound by, and qualified under, the Act?" | Workers' Compensation Memo 756 - C - ANC_67253.docx | ROSS-003294658-ROSS-003294659 | Condensed, Order, SA, Sub | 0.74 | 1 | 1 | 1 | 1 | 1 |
| 7956 | Emmons v. State, 847 N.E.2d 1035 | 135H+59 | In a bench trial, jeopardy attaches when the court begins to hear evidence. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); State v. Proctor, 471 N.E.2d 707, 707 (Ind.Ct.App.1984) (citing Serfass ). Under Indiana statute, jeopardy will also attach in a bench trial when witnesses are sworn. See Ind.Code " 35"41"4"3(a)(2) (barring re-prosecution if former prosecution terminated after first witness sworn in bench trial); State v. Erlewein, 755 N.E.2d 700, 707 (Ind.Ct.App.2001) (citing Ind.Code " 35"41"4"3). At Emmons' first proceeding, the witnesses were sworn but no evidence was heard. Thus, under Serfass and Proctor, jeopardy had not yet attached. Although under the statute jeopardy attached because witnesses had been sworn, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). See also Ind.Code " 35"41"4"3(a)(2) (listing six exceptions to rule barring re-prosecution after first witness sworn in bench trial). | The conclusion that jeopardy has attached at a bench trial after a witness has been sworn begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial. U.S.C.A. Const.Amend. 5; West's A.I.C. Const. Art. 1, S 14; West's A.I.C. 35-41-4-3(a)(2). | Will the conclusion that jeopardy attached begin the inquiry if double jeopardy clause bars retrial? | Double Jeopardy - Memo 1051 - C - BP_67873.docx | ROSS-003293841-ROSS-003293843 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 7957 | State v. Munoz, 11 Neb. App. 266 | 135H+59 | The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and of article I, " 12, of the Nebraska Constitution protects " " "an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." " " State v. Falcon, 260 Neb. 119, 124-25, 615 N.W.2d 436, 440 (2000) (quoting State v. Bostwick, 222 Neb. 631, 385 N.W.2d 906 (1986), and Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). Under Neb. Const. art. I, & 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt or innocence of the defendant. State v. Falcon, supra. | Under Nebraska Constitution, jeopardy attaches when judge, hearing case without jury, begins to hear evidence as to guilt or innocence of defendant. Const. Art. 1, S 12. | Is jeopardy attached when judge begins to hear evidence as to guilt or innocence of defendant? | Double Jeopardy - Memo 1081 - C - TM_67987.docx | ROSS-003280951-ROSS-003280952 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7958 | State v. Feliciano, 62 Haw. 637 | 135H+100.1 | The rule adopted by the United States Supreme Court and other jurisdictions, and incorporated in HRS s 701-110(1)5 is that a defendant who has been convicted of a lesser included offense than that charged is deemed to have been acquitted of the greater charge. Thus a defendant may not be retried for any offense of which he has been acquitted, whether expressly or impliedly, notwithstanding a subsequent reversal of the judgment on appeal. Price v. Georgia, 398 U.S. 323, 328-29, 90 S.Ct. 1757, 1760-1761, 26 L.Ed.2d 300 (1970); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Bunnell v. Superior Court of Santa Clara County, 13 Cal.3d 592, 531 P.2d 1086, 1092, 119 Cal.Rptr. 302 (1975). See, e. g., State v. Pia, 55 Haw. 14, 18, 514 P.2d 580 (1973); Annot. 61 A.L.R.2d 1141; Commentary to HRS s 701-110; 4 Wharton's Criminal Procedure, s 590 (12th ed. C. Torcia 1976). | Defendant may not be retried for any offense of which he has been acquitted, whether expressly or impliedly by conviction for lesser included offense, notwithstanding subsequent reversal of judgment on appeal. | "Can a defendant not be retried for any offense of which he has been acquitted, whether expressly or impliedly?" | Double Jeopardy - Memo 484 - C - TJ_68263.docx | ROSS-003293587-ROSS-003293588 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 7959 | Sorum v. State, 526 S.W.3d 50 | 135H+1 | The Fifth Amendment to the United States Constitution provides that no person shall be twice put in jeopardy of life or limb for the same offense. Hughes v. State, 347 Ark. 696, 66 S.W.3d 645 (2002). Arkansas's Constitution is similar. Ark. Const. article 2, " 8. When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. However, the defendant may not be convicted of more than one offense if one offense is included in the other offense. Ark. Code Ann. " 5"1"110(a)(1). An offense is included in an offense charged if the offense is established by proof of the same or less than all of the elements required to establish the commission of the offense charged. Ark. Code Ann. " 5"1"110(b)(1). | The Fifth Amendment to the United States Constitution provides that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. Amend. 5. | Does the law provide that no person shall be twice put in jeopardy of life or limb for the same offense? | 016074.docx | LEGALEASE-00165821-LEGALEASE-00165822 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7960 | State v. Worthington, 582 S.W.2d 286 | 135H+100.1 | To support the defense of double jeopardy it must be shown that a person has been subjected to a prosecution for the same offense after a prior acquittal for that offense. State v. Cline, 477 S.W.2d 91, 94(3) (Mo.1972). The offenses proscribed by s 563.230 and s 563.160 are separate and distinct crimes. " The Subject matter of the two statutes Differ, as do the essential elements of the offense involved." State v. Oswald, 306 S.W.2d 559, 562(6) (Mo.1957). While it is true that where one commits acts within these sections at the same time and place, the State is put to an election as to which will form the basis for a prosecution, State v. Oswald,supra; however, such person may be charged and tried under each statute where the offenses are committed at different times and places, as is the situation now before this Court. Defendant's Point V is ruled against him. | To support defense of double jeopardy, it must be shown that person has been subjected to prosecution for same offense after prior acquittal for that offense. U.S.C.A.Const. Amend. 5. | "To support defense of double jeopardy, should it be shown that a person has been subjected to a prosecution for a same offense after prior acquittal for that offense?" | Double Jeopardy - Memo 826 - C - DHA_67943.docx | ROSS-003293823-ROSS-003293824 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 7961 | Kleigman v. Justices of Supreme Court, Kings Cty., 285 A.D.2d 646 | 135H+99 | Generally, double jeopardy will bar retrial when a mistrial is granted over the defendant's objection, or without his or her consent, unless the mistrial is granted "as the product of manifest necessity" (Matter of Davis v. Brown, 87 N.Y.2d 626, 630, 641 N.Y.S.2d 819, 664 N.E.2d 884; see, People v. Ferguson, 67 N.Y.2d 383, 388, 502 N.Y.S.2d 972, 494 N.E.2d 77; Matter of Enright v. Siedlecki, 59 N.Y.2d 195, 199"200, 464 N.Y.S.2d 418, 451 N.E.2d 176; Matter of Rubenfeld v. Appelman, 230 A.D.2d 911, 646 N.Y.S.2d 879; Matter of Cohen v. Hanophy, 210 A.D.2d 327, 620 N.Y.S.2d 293). In determining whether such manifest necessity exists, there must be a high degree of necessity before concluding that a mistrial is appropriate, i.e., the reasons underlying the grant of a mistrial must be "necessitous, actual and substantial" (Matter of Enright v. Siedlecki, supra, at 200, 464 N.Y.S.2d 418, 451 N.E.2d 176; see also, United States v. Klein, 582 F.2d 186, 190"191, cert. denied 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38). | Generally, double jeopardy will bar retrial when a mistrial is granted over the defendant's objection, or without his or her consent, unless the mistrial is granted as the product of manifest necessity; in determining whether such manifest necessity exists, there must be a high degree of necessity before concluding that a mistrial is appropriate, the reasons underlying the grant of a mistrial must be necessitous, actual and substantial. U.S.C.A. Const.Amend. 5. | "Is a ""high degree"" of necessity sufficient to conclude that a mistrial is appropriate?" | 016353.docx | LEGALEASE-00165728-LEGALEASE-00165729 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 7962 | State v. Flenoy, 968 S.W.2d 141 | 135H+1 | The United States Constitution's double jeopardy clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." The clause contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense. State v. Snider, 869 S.W.2d 188, 195 (Mo.App.1993). The protection applies only to multiple punishments or prosecutions for the "same offence." Multiple convictions are permissible if the defendant has in law and in fact committed separate crimes. Id. | United States Constitution's Fifth Amendment Double Jeopardy Clause contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for same offense after either acquittal or conviction, and (b) protection from multiple punishments for same offense. U.S.C.A. Const.Amend. 5. | What are the two distinct protections given to a criminal defendant by the double jeopardy clause? | 016477.docx | LEGALEASE-00165281-LEGALEASE-00165282 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 7963 | State v. Bitzas, 164 A.3d 1091 | 135H+59 | We make clear that the issue of double-jeopardy is not addressed by this decision. We nevertheless make the following brief comments. It is well-settled that "jeopardy attaches to a defendant when he [or she] is put on trial in a court of competent jurisdiction upon a valid indictment and a jury is impaneled and sworn to determine the issue of his guilt or innocence of the crime charged." Allah, supra, 170 N.J. at 280, 787 A.2d 887. But not every mistrial implicates the double jeopardy clauses of the Fifth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), or Article I, Paragraph 11 of the New Jersey Constitution. | Jeopardy attaches to a defendant when he or she is put on trial in a court of competent jurisdiction upon a valid indictment and a jury is impaneled and sworn to determine the issue of his or her guilt or innocence of the crime charged. U.S. Const. Amends. 5, 14; N.J. Const. art. 1, par. 11. | When would jeopardy attach to a defendant? | Double Jeopardy - Memo 966 - C - SN_67840.docx | ROSS-003295055-ROSS-003295056 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 7964 | St. Louis Univ. v. Duncan, 97 F. Supp. 3d 1106 | 141E+1234 | Private university violated section of Higher Education Act requiring participating institutions, during calculation of financial aid awards under federal Pell Grant program, to conduct individualized, case-by-case analysis before exercising their discretion to adjust statutory formula for calculating a family's expected contribution to student's education expenses based on family's net income and assets to account for student's special circumstances, where university implemented policy treating categories of expenses, including medical and dental expenses, as per se special circumstances warranting adjustments to students' expected family contributions.Higher Education Act of 1965, "" 401(b), 479A(a), 20 U.S.C.A. "" 1070a(b), 1087tt(a). Section 1087tt(a) expresses the unambiguous congressional intent that financial aid administrators must satisfy certain conditions precedent before adjusting the statutory need analysis formula for an individual student. Specifically, financial aid administrators are not permitted to deviate from the statutory formula in the absence of "special circumstances." 20 U.S.C. " 1087tt(a) (1994). The definition of "special circumstances" is not left to the unbridled discretion of administrators but is limited to "conditions that differentiate an individual student from a class of students rather than conditions that exist across a class of students." Id. And these special circumstances must be determined on a "case-by-case basis" and substantiated by "adequate documentation." Id. | Private university violated section of Higher Education Act requiring participating institutions, during calculation of financial aid awards under federal Pell Grant program, to conduct individualized, case-by-case analysis before exercising their discretion to adjust statutory formula for calculating a family's expected contribution to student's education expenses based on family's net income and assets to account for student's special circumstances, where university implemented policy treatingcategories of expenses, including medical and dental expenses, as per se special circumstances warranting adjustments to students' expected family contributions. Higher Education Act of 1965, SS 401(b), 479A(a), 20 U.S.C.A. SS 1070a(b), 1087tt(a). | Can financial aid administrators adjust the statutory need analysis formula for an individual student under the Higher Education Act? | 017159.docx | LEGALEASE-00166074-LEGALEASE-00166075 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 7965 | Lamka v. KeyBank, 250 Or. App. 486 | 307A+695 | Reading ORCP 23 A and ORCP 21 A together, we conclude that a party may amend a complaint once as a matter of right before a responsive pleading is served, even if the court has dismissed the complaint. It is only if the trial court grants a motion to dismiss after the plaintiff has already filed an amended complaint or the defendant has filed a responsive pleading, that, under ORCP 21 A, the plaintiff must file a motion for leave to file an amended complaint. See Caldeen Construction v. Kemp, 248 Or.App. 82, 90, 273 P.3d 174 (2012) (holding that the trial court abused its discretion in denying plaintiff's motion to amend the complaint under ORCP 21 A).7 Thus, the trial court erred in refusing to allow plaintiff to file an amended complaint as a matter of right. | A party may amend a complaint once as a matter of right before a responsive pleading is served, even if the court has dismissed the complaint; it is only if the trial court grants a motion to dismiss after the plaintiff has already filed an amended complaint or the defendant has filed a responsive pleading, that the plaintiff must file a motion for leave to file an amended complaint. Rules Civ.Proc., Rules 21, 23. | "Can a party amend a complaint once as a matter of right before a responsive pleading is served, even if the court has dismissed the complaint?" | Pretrial Procedure - Memo 12023 - C - TM_68447.docx | ROSS-003285696-ROSS-003285697 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7966 | In re Welch, 511 B.R. 99 | 38+72 | The Court must review the entire Purchase Agreement to determine whether the transaction was an absolute assignment. State Mut. Life Assurance Co. of Am. v. Deer Creek Park, 612 F.2d 259, 266 (6th Cir.1979) ("The scope of an assignment is gathered from the instrument as a whole and no single clause is dispositive."). Having reviewed the entire Purchase Agreement, the Court finds as a matter of law that Welch made an absolute assignment of a portion of her interest in the WC proceeds. | Court must review the parties' entire agreement to determine whether transaction is absolute assignment or grant of security interest. | Should a court review the parties' entire agreement to determine whether a transaction is an absolute assignment or grant of security interest? | 042675.docx | LEGALEASE-00165706-LEGALEASE-00165707 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7967 | Gen. Elec. Capital Corp. v. FPL Serv. Corp., 986 F. Supp. 2d 1029 | 50+2 | "[T]o determine whether the lease agreement is properly considered a finance lease or a secured transaction, we must first consider whether the agreement retained or created a security interest." Id. at 74 (citing C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC, 784 N.W.2d 753, 757 (Iowa 2010)). "If so, the agreement cannot qualify as a lease or a finance lease because an agreement retaining or creating a security interest is specifically excluded from the definition of a lease." Id. (citing Iowa Code " 554.13103(1)(j)). Iowa Code " 554.1203 governs whether a contract in the form of a lease actually creates a lease or a security interest. | Under Iowa law, if a lease agreement retains or creates a security interest, the agreement cannot qualify as a lease or a finance lease because an agreement retaining or creating a security interest is specifically excluded from the statutory definition of a lease. I.C.A. S 554.13103(1)(j). | "If a lease agreement retains or creates a security interest, can the agreement qualify as a lease or a finance lease because an agreement retaining or creating a security interest is specifically excluded from the statutory definition of a lease?" | Secured Transactions - Memo 18 - C - VA_67961.docx | ROSS-003284668 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 7968 | In re Brankle Brokerage & Leasing, 394 B.R. 906 | 349A+10 | N.C. Gen.Stat. Ann. " 25"1"203 begins by stating the governing principle that whether a particular transaction "creates a lease or security interest is determined by the facts of each case." N.C. Gen.Stat. Ann. " 25"1"203(a). This is a change from the previous version of " 1"201(37), where the issue turned on what the parties had intended. The result of this change it is to make the determination a much more objective one, based upon the economic realities of the transaction, rather than on the more obscure intent of the parties. See, Pillowtex, 349 F.3d at 721"722; In re Ecco Drilling Company, Ltd., 390 B.R. 221, 226 (Bankr.E.D.Tex.2008); Grubbs Construction Co., 319 B.R. at 715; In re Charles, 278 B.R. 216, 222 (Bankr.D.Kan.2002). The second part of the section, 1"203(b), lays out a bright-line test or per se rule which, if satisfied, mandates the conclusion that the agreement constitutes a security interest, rather than a lease, as a matter of law. Pillowtex, 349 F.3d at 717; Ecco Drilling, 390 B.R. at 227. | Under North Carolina law, courts distinguish between leases and security agreements based upon economic realities of transaction, rather than on the more obscure intent of parties. West's N.C.G.S.A. S 25-1-203. | "Do courts distinguish between leases and security agreements based upon economic realities of a transaction, rather than on the more obscure intent of parties?" | 042782.docx | LEGALEASE-00165987-LEGALEASE-00165988 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7969 | People v. Leske, 957 P.2d 1030 | 135H+30 | A statutory penalty enhancement provision, or "penalty enhancer," is not a substantive element of the charged offense for purposes of double jeopardy and merger analysis. See, e.g., Armintrout, 864 P.2d at 580 ("[A] sentence enhancement provision is not an element of the offense charged."); Henderson, 810 P.2d at 1064 (same). A statutory provision is a penalty enhancer if its proof, while raising the felony level of an offense, is not necessarily required to secure a conviction. | Statutory penalty enhancement provision, or penalty enhancer, is not substantive element of charged offense for purposes of double jeopardy and merger analysis. U.S.C.A. Const.Amend. 5; West's Const. Art. 2, S 18. | Is a penalty enhancer a substantive element of the charged offense for purposes of double jeopardy analysis | Double Jeopardy - Memo 1167 - C - SHB.docx | LEGALEASE-00055851-LEGALEASE-00055852 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 7970 | State ex rel. Canterbury v. Paul, 205 W. Va. 665 | 135H+25 | As costs are not punishment or part of the penalty for committing a crime, constitutional double jeopardy protections do not apply. In Lindsey v. Dykes, 129 Fla. 65, 175 So. 792 (1937), the defendant was convicted of and sentenced for driving under the influence of alcohol. He was fined and ordered to pay the costs of prosecution; however, the judgment did not sufficiently designate the amount of costs to be recovered. The defendant paid the fine but failed to pay the costs which the clerk assessed against him. The Supreme Court of Florida held that since the judgment as entered did not sufficiently designate the amount of the costs to be recovered, the court could enter a nunc pro tunc order designating the amount of costs to be collected in order to comply with the statute which required that the costs of prosecution be included in the judgment rendered against a convicted person. | As court costs are not punishment or part of the penalty for committing a crime, constitutional double jeopardy protections do not apply. U.S.C.A. Const.Amend. 5; Code, 59-2-11. | "As court costs are not punishment or part of the penalty for committing a crime, do constitutional double jeopardy protections not apply?" | Double Jeopardy - Memo 523 - C - DHA_68302.docx | ROSS-003283281-ROSS-003283282 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 7971 | Cooper v. State, 2017 WL 5623582 | 135H+99 | Where a trial court declares a mistrial sua sponte or at the request of the prosecution, the mistrial must be the result of "manifest necessity" for the defendant to be subject to retrial. Thomason v. State, 620 So.2d 1234, 1237 (Fla.1993). However, where a defendant requests a mistrial, the general rule is that the manifest necessity standard is inapplicable and double jeopardy is not a bar to reprosecution, even where the motion is necessitated by prosecutorial error, United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), provided that the prosecutor's actions giving rise to the motion are not done intentionally so as to provoke the defendant into requesting a mistrial. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982); Thomason, 620 So.2d at 1237; State v. Butler, 528 So.2d 1344, 1345 (Fla. 2d DCA 1988); Duncan v. State, 525 So.2d 938, 940"41 (Fla. 3d DCA 1988). Here, the record supports the trial judge's finding that while the misstatement was error, the testimony was not intentionally elicited, thus not preventing a retrial here on double jeopardy grounds. | Where a trial court declares a mistrial sua sponte or at the request of the prosecution, the mistrial must be the result of "manifest necessity" for the defendant to be subject to retrial. U.S.C.A. Const.Amend. 5. | Is the manifest necessity standard applicable when determining whether double jeopardy attaches following a trial court's sua sponte declaration of mistrial? | 015928.docx | LEGALEASE-00166289-LEGALEASE-00166290 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7972 | Bergen Cty. v. Borough of Paramus, 158 N.J. Super. 512 | 371+2392 | Tax exemption statutes based on the personal status of the owner rather than on the use to which the property is put are barred by the tax article of our Constitution which provides that "Property shall be assessed for taxation under general laws and by uniform rules." N.J.Const. (1947), Art. VIII, s I, par. 1(a). N.J. Turnpike Auth. v. Washington Tp., supra, 16 N.J. at 44-45, 106 A.2d 4. Because "(a)ny impairment of the taxing power affects the lifeblood of government claims for tax exemption have to stand scrutiny to show that they serve a public purpose." Id. at 44, 106 A.2d at 7. The burden of proof rests upon the one asserting a tax exemption to establish the right. Jamouneau v. Division of Tax Appeals, supra, 2 N.J. at 330, 66 A.2d 534. | Because any impairment of taxing power affects lifeblood of government, claims for tax exemption have to stand scrutiny and show that they serve public purpose; burden of proof rests upon one asserting tax exemption to establish right. | Should claims for tax exemption stand scrutiny to show that they serve a public purpose? | Taxation - Memo 1286 - C - MV_68465.docx | ROSS-003279466-ROSS-003279467 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7973 | Lawrence v. Commodity Futures Trading Comm'n, 759 F.2d 767 | 83H+1 | Lawrence does not dispute these facts. Instead he argues that his conduct was merely negligent. For purposes of the Act, however, it is well settled that:[i]f a person 1) intentionally does an act which is prohibited,"irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is willful.Flaxman v. CFTC, 697 F.2d 782, 787 (7th Cir.1983) (quoting Goodman v. Benson, 286 F.2d 896, 900 (7th Cir.1961) ). To establish willfulness, the Commission only needed to show that Lawrence's ongoing failure to act was intentional as opposed to accidental. Proof of an evil motive is unnecessary. See Hinkle Northwest, Inc. v. SEC, 641 F.2d 1304, 1307"08 (9th Cir.1981) (quoting Nees v. SEC, 414 F.2d 211, 221 (9th Cir.1969) ). We agree with the Commission that Lawrence's inaction was willful | For purposes of Commodity Exchange Act, if person intentionally does act which is prohibited, irrespective of evil motive or reliance on erroneous advice, or acts with careless disregard of statutory requirements, violation is willful. Commodity Exchange Act, SS 1-23, as amended, 7 U.S.C.A. SS 1-26. | "In order to prove a willful violation of Commodity Exchange Act, must the evil motive of the defendant be proved?" | 013611.docx | LEGALEASE-00167069-LEGALEASE-00167070 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 7974 | Com. v. Williams, 373 Pa. Super. 270 | 135H+95.1 | As indicated above, where there has been a declaration of a mistrial reprosecution may be barred by the double jeopardy clause. Commonwealth v. Bolden, supra. Although in some circumstances an individual may be retried following a mistrial, due to the clause's policy of prohibiting multiple trials, retrial is "only grudgingly allowed," United States v. Wilson, 420 U.S. at 343, 95 S.Ct. at 1022, and is limited to cases in which the defendant consented to the mistrial or the declaration of a mistrial was "manifestly necessary." Bolden, supra. 373 A.2d at 101. One such case is where there is a discharge of the jury after they are found to be "hopelessly deadlocked."Commonwealth v. Mehmeti, 501 Pa. 589, 462 A.2d 657 (1983). In instances of a deadlocked jury, the jury may be discharged without prejudice to the Commonwealth to try the accused again on the same charges. It is perhaps less certain whether the Commonwealth can continue to refile charges upon consecutive "hung juries." | Retrial following mistrial is permitted only in cases where defendant has consented to mistrial or where declaration of mistrial is manifestly necessary, as where there is a discharge of the jury after they have found to be hopelessly deadlocked. | Is retrial following mistrial permitted where there is a discharge of the jury after they have found to be hopelessly deadlocked? | 015780.docx | LEGALEASE-00166498-LEGALEASE-00166499 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 7975 | In re QDS Components, 292 B.R. 313 | 349A+10 | The "key issue [the Court must determine] is "whether the lessor retains a meaningful residual interest" at the end of the lease term." In re Bumgardner, 183 B.R. at 224, 228 (Bankr.D.Idaho 1995) (quoting In re Zaleha, 159 B.R. 581, 585 (Bankr.D.Idaho 1993)); Addison, 41 Cal.App.4th at 1295, 49 Cal.Rptr.2d at 136 ("If ... a security interest [is] not conclusively found to exist ...., the court must then resort to an examination of the facts of the case to determine whether the lessor has retained a "meaningful residual interest" in the goods." (quoting Zaleha, 159 B.R. at 585)); White & Summers, " 30"3, at 30 ("Once a court concludes that a lease is not terminable and none of the conditions (a)"(d) of the [second] paragraph of 1"201(37) has been met, ... [it] must then answer whether the lessor retained a reversionary interest. If there is a meaningful reversionary interest"either an up-side right or a down-side risk"the parties have signed a lease, not a security agreement. If there is no reversionary interest, the parties have signed a security agreement, not a lease."). | Under California law, once court determines that purported lease is not disguised security agreement as matter of law, as failing to satisfy bright-line statutory test, court must examine all of the facts and circumstances of case to determine whether the agreement in question is lease or security agreement, with the key issue being whether lessor retains meaningful residual interest at end of lease term. West's Ann.Cal.Com.Code S 1201(36). | Is an issue whether a lessor maintains a meaningful residual interest at the end of lease term? | 042692.docx | LEGALEASE-00167097-LEGALEASE-00167098 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 7976 | Metro Riverboat Assocs. v. Louisiana Gaming Control Bd., 797 So. 2d 656 | 188+206(1) | The LAPA sets forth procedures to be followed by state administrative agencies, boards, and other entities, including the Louisiana Gaming Control Board. La. R.S. 49:951(2). The LAPA was not intended to supersede the more specific provisions of other administrative acts, such as the Louisiana Gaming Control Law. Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). Rather, it was intended to create procedures in those instances where none exist. Id. The Louisiana Gaming Control Law itself states that hearings and appeals from decisions of the board should be handled in accordance with the provisions of the LAPA. La. R.S. 27:25(B); La. R.S. 27:89. The LAPA provides that judicial review is available when there is a "final decision or order in an adjudication proceeding." La. R.S. 49:964(A)(1). Interpreting La. R.S. 27:26 and La. R.S. 27:89 in conjunction with the LAPA to limit appeals to final decisions or orders of the board resulting from adjudications eliminates the potential constitutional problems and the absurd results caused by a literal interpretation. We therefore conclude that appeals may only be taken from a final decision or order of the board in an adjudication proceeding. | The Louisiana Administrative Procedure Act (LAPA) was not intended to supersede the more specific provisions of other administrative acts, such as the Louisiana Gaming Control Law; rather, it was intended to create procedures in those instances where none exist. LSA-R.S. 27:1 et seq., 49:950 et seq. | Do provisions of the Administrative Procedure Act supersede the more specific provisions of other administrative Acts? | 04771.docx | LEGALEASE-00077108-LEGALEASE-00077109 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 7977 | In re Brown, 226 B.R. 39 | 366+1 | The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt."This equitable doctrine, which has as its goal the advancement of justice and the prevention of injustice, is used "only in extreme cases bordering on if not reaching the level of fraud." In fact, under common law the doctrine of equitable subrogation was applied to relieve "one compelled to pay a debt which ought to have been paid by another," therefore, the payor was "entitled to exercise all of the remedies which the creditor possessed against that other." There are no allegations of fraud or misrepresentation in this case. Nor does Chase maintain that it was "compelled" to execute the refinancing agreement. Moreover, in Missouri, a lender is not entitled to equitable subrogation if it bears any responsibility for the status of its lien. As stated above, Chase could have conditioned the transfer of funds to Greentree upon Greentree's release of the lien. Or, Chase could have accepted an assignment of Greentree's debt upon the same contractual terms. But Chase chose to negotiate a new contract. | Doctrine of equitable subrogation, which has as its goal the advancement of justice and the prevention of injustice, is used only in extreme cases bordering on, if not reaching, level of fraud. | Is equitable subrogation a remedy allowed in extreme cases bordering or if not reaching the level of fraud? | 05102.docx | LEGALEASE-00083701-LEGALEASE-00083702 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7978 | Friends of P.S. v. Jewish Home Lifecare, 146 A.D.3d 576 | 149E+578 | In arriving at its conclusions, "[a]n agency may rely on consultants to conduct the analyses that support their environmental review of proposed projects [citations omitted]. The choice between conflicting expert testimony rests in the discretion of the administrative agency" (Matter of Brooklyn Bridge Park Legal Defense Fund, Inc. v. New York State Urban Dev. Corp., 50 A.D.3d 1029, 1031, 856 N.Y.S.2d 235 [2d Dept.2008], lv. denied 10 N.Y.3d 714, 862 N.Y.S.2d 335, 892 N.E.2d 401 [2008] [citations omitted]; Matter of DeFeo v. Zoning Bd. of Appeals of Town of Bedford, 137 A.D.3d 1123, 1127, 28 N.Y.S.3d 111 [2d Dept.2016]; Matter of Thorne v. Village of Millbrook Planning Bd., 83 A.D.3d 723, 725"726, 920 N.Y.S.2d 369 [2d Dept.2011], lv. denied 17 N.Y.3d 711, 2011 WL 4389157 [2011] ). | In arriving at conclusions under State Environmental Quality Review Act (SEQRA), an agency may rely on consultants to conduct the analyses that support their environmental review of proposed projects. 6 NYCRR 617.9(b)(5)(v). | "When conducting an environmental review of a project, may an agency rely on consultants to conduct analyses, and exercise discretion when considering conflicting expert testimony? " | 00449.docx | LEGALEASE-00086914-LEGALEASE-00086916 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 7979 | Rose v. Rose, 526 N.E.2d 231 | 307A+501 | Generally, dismissals should be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit. Levin and Sons, Inc. v. Mathys (1980), Ind.App., 409 N.E.2d 1195, 1198. The purpose of the rule pertaining to the voluntary dismissal of an action was to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage in the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights. See Harvey Aluminum, Inc. v. American Cyanamid Co. (2nd Cir.1953), 203 F.2d 105, 107, cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383; Stevenson v. United States (D.Tenn.1961), 197 F.Supp. 355, 357; Toulmin v. Industrial Metal Protectives, Inc. (D.Del.1955), 135 F.Supp. 925, 927. | Generally, voluntary dismissal should be allowed unless defendant will suffer some legal prejudice other than mere prospect of second suit. Trial Procedure Rule 41(A, C). | Should voluntary dismissal be allowed unless a defendant will suffer some legal prejudice other than a mere prospect of a second suit? | 03677.docx | LEGALEASE-00088136-LEGALEASE-00088137 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 7980 | Odyssey Marine Exploration v. Unidentified Shipwrecked Vessel, 657 F.3d 1159 | 16+1(1) | Although federal courts have the exclusive power to adjudicate in rem suits against a vessel, that power is dependent on the court's jurisdiction over the res, the property named as the defendant. R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 964 (4th Cir.1999) (citing Pennoyer v. Neff, 95 U.S. 714, 724, 24 L.Ed. 565 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). "Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world."Haver, 171 F.3d at 964. Therefore, when a party files an in rem complaint, the court issues a warrant for the arrest of the res and the res remains in the court's custody for the remainder of the proceedings. Crimson Yachts v. Betty Lyn II Motor Yacht, 603 F.3d 864, 868 (11th Cir.2010); see also United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th Cir.1992) ("No in rem suit can be maintained without a valid arrest of the res by the marshal.") | Although federal courts have the exclusive power to adjudicate in rem suits against a vessel, that power is dependent on the court's jurisdiction over the res, the property named as the defendant. | Do federal courts have the exclusive power to adjudicate in rem suits against a vessel? | 10473.docx | LEGALEASE-00089321-LEGALEASE-00089323 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 7981 | Rhodehouse v. CVS Pharmacy, 151 A.D.3d 771 | 307A+581 | "A court may not dismiss an action based on neglect to prosecute unless the statutory preconditions to dismissal, as articulated in CPLR 3216, are met" (Patel v. MBG Dev., Inc., 41 A.D.3d 682, 682, 839 N.Y.S.2d 122; see Baczkowski v. Collins Constr. Co., 89 N.Y.2d 499, 503, 655 N.Y.S.2d 848, 678 N.E.2d 460). Effective January 1, 2015, the Legislature amended, in several significant respects, the statutory preconditions to dismissal under CPLR 3216. One such precondition is that where a written demand to resume prosecution of the action and to serve and file a note of issue within 90 days after receipt of such demand is served by the court, as here, "the demand shall set forth the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation" (CPLR 3216[b][3] ). Here, the certification order did not set forth any specific conduct constituting neglect by the plaintiff. | A court may not dismiss an action based on neglect to prosecute unless the statutory preconditions to dismissal are met. McKinney's CPLR 3216. | Can a court dismiss an action based on neglect to prosecute unless the statutory preconditions to dismissal are met? | 11034.docx | LEGALEASE-00094277-LEGALEASE-00094278 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 7982 | Ctr. Developers v. S. Tr. Ins. Co., 275 Ga. App. 622 S.E.2d 31 | 307A+590.1 | A review of these cases makes it clear that by the plain language of " 9-2-60(b) an order need not advance or resolve litigation, grant or deny affirmative relief, or be obtained by a particular party, as opposed to a party, in order to toll the running of the five-year period. Cf. Beck v. Dean, supra at 145, 338 S.E.2d 693 (an order is "generally a judgment or conclusion of a court by which affirmative relief is granted or denied").This is not to say that every directive signed by a trial court that is made or may be deemed part of the record is an order within the meaning of " 9-2-60(b). The primary purpose of the statute is to protect litigants from dilatory counsel, Swint, 219 Ga. [at 534(3), 134 S.E.2d 595]. Accordingly, an order as contemplated by the statute is an order entered by a court in response to a motion initiated by a party. | An order need not advance or resolve litigation, grant or deny affirmative relief, or be obtained by a particular party in order to toll the running of the five-year period after which an action in which no written order has been entered will be automatically dismissed. West's Ga.Code Ann. S 9-2-60(b). | Should an order not advance or resolve litigation in order to toll a running of a statute? | 11054.docx | LEGALEASE-00094797-LEGALEASE-00094798 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 7983 | Oshana v. FCL Builders, 2013 IL App (1st) 120851 | 307A+561.1 | On appeal, FCL argues that the circuit court erred in determining that res judicata applied to FCL's breach of counterclaim against Suburban. The issue of whether a claim is barred by res judicata comprises a question of law, which is subject to de novo review by this court. Agolf, LLC v. Village of Arlington Heights, 409 Ill.App.3d 211, 218, 349 Ill.Dec. 627, 946 N.E.2d 1123 (2011). Furthermore, a section 2"619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. IFC Credit Corp. v. Magnetic Technologies, Ltd., 368 Ill.App.3d 898, 900, 307 Ill.Dec. 76, 859 N.E.2d 76 (2006). We review a section 2"619 dismissal de novo. Id | A motion for involuntary dismissal based on certain defects or defenses admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. S.H.A. 735 ILCS 5/2-619. | "Can a motion for involuntary dismissal raise defects, defenses, or other affirmative matters that defeat the claim? " | 10226.docx | LEGALEASE-00095014-LEGALEASE-00095015 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7984 | Van Meter v. Darien Park Dist., 207 Ill. 2d 359 | 307A+561.1 | The purpose of a section 2"619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. Zedella v. Gibson, 165 Ill.2d 181, 185, 209 Ill.Dec. 27, 650 N.E.2d 1000 (1995). Specifically, section 2"619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 1998). An " "affirmative matter," in a section 2"619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely." Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 486, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). The moving party thus admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. | Party that moves for involuntary dismissal of action based on an affirmative matter admits legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Can the moving party admit the legal sufficiency of the complaint in a motion to dismiss based on defect or defense? | 10234.docx | LEGALEASE-00095499-LEGALEASE-00095500 | Condensed, Order, SA, Sub | 0.73 | 1 | 1 | 1 | 1 | 1 |
| 7985 | Cristino v. Bur. of Workers' Comp., 2012-Ohio-4420 | 307A+561.1 | Having addressed Cristino's claim for breach of fiduciary duty, we now turn to his claim for fraud. The trial court found that the state's discretionary immunity prevented Cristino from stating a claim for fraud. Immunity is an affirmative defense. BCL Ents., Inc. v. Ohio Dept. of Liquor Control, 77 Ohio St.3d 467, 471, 675 N.E.2d 1 (1997); Pottenger v. Ohio Dept. of Transp., 10th Dist. No. 88AP"832, 1989 WL 147998 (Dec. 7, 1989). Because affirmative defenses typically rely on matters outside the complaint, they normally cannot be raised in a Civ.R. 12(B)(6) motion. Reasoner v. Columbus, 10th Dist. No. 02AP"831, 2003-Ohio-670, 2003 WL 321551, 12. If, however, the existence of an affirmative defense is obvious from the face of the complaint, a court may grant a Civ.R. 12(B)(6) motion on the basis of the affirmative defense. Id.; Bucey v. Carlisle, 1st Dist. No. C"090252, 2010-Ohio-2262, 2010 WL 2018376, 9 (holding that a complaint must bear " "conclusive evidence" " that an action is barred by the affirmative defense); Altier v. Valentic, 11th Dist. No. 2003"G"2521, 2004-Ohio-5641, 2004 WL 2376265, 31, quoting Loyer v. Turner, 129 Ohio App.3d 33, 35, 716 N.E.2d 1193 (6th Dist.1998) (requiring the affirmative defense to be " "obvious from the face of the complaint itself" "). | If the existence of an affirmative defense is obvious from the face of the complaint, a court may grant a motion to dismiss for failure to state a claim on the basis of the affirmative defense; however, in so ruling, a court must exercise caution because complaints need not anticipate and attempt to plead around defenses. Rules Civ.Proc., Rule 12(B)(6). | "If the existence of an affirmative defense is obvious from the face of the complaint, will a court grant motion to dismiss on the basis of the affirmative defense? " | 09628.docx | LEGALEASE-00096306-LEGALEASE-00096307 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 7986 | Smith v. DeLoach, 556 So. 2d 786 | 307A+590.1 | We agree with the trial court that the taking of depositions is nonrecord activity. Further, the mere fact that a notice of deposition schedules the taking of a deposition for a future date does not assure that the deposition will be taken. It does not result in activity in the record on the future date. If rule 1.420(e) was interpreted, or amended, so that the scheduling of future discovery created record activity on the future compliance date, parties could frustrate the rule by setting depositions or other discovery at various times in the distant future. Our decision is consistent with dicta in Norflor Construction Corp. v. City of Gainesville, 512 So.2d 266 (Fla. 1st DCA 1987), review denied, 520 So.2d 585 (Fla.1988). | Mere fact that notice of deposition schedules taking of deposition for future date does not assure that deposition will be taken and does not result in activity in record on the future date, for purposes of rule providing for dismissal for failure to prosecute when it appears on face of record that no activity has occurred for one year. West's F.S.A. RCP Rule 1.420(e). | Does the mere fact that a notice of deposition schedules the taking of a deposition for a future date not assure the deposition will be taken? | 09824.docx | LEGALEASE-00096316-LEGALEASE-00096317 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 7987 | Burns v. California Fair Plan, 152 Cal. App. 4th 646 | 217+1000 | "Insurance is a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss. It is a contract of indemnity. ["] "This principle underlies the contract, and it can never, without violence to its essence and spirit, be made by the assured a source of profit, its sole purpose being to guarantee against loss or damage." [Citation.]" (Davis v. Phoenix Ins. Co., supra, 111 Cal. at p. 415, 43 P. 1115.) If an insured's interest "extends to the whole of the subject matter of the property," the insured may recover up to the value of the property, subject to any policy limitation. (Ibid.) However, if the interest of the insured is less than the whole of the property, "his right is limited, not by the value of the property, but by the value of his interest. The very meaning of the term "indemnity " excludes all idea of profit to the insured." (Ibid.) To permit a recovery for more than the value of the insured's interest "would greatly tend to the destruction of like property under like circumstances, and open the door and tempt men to enter therein for fraudulent purposes." (Id. at p. 416, 43 P. 1115.) | The indemnity principle underlies the insurance contract, and it can never, without violence to its essence and spirit, be made by the assured a source of profit, its sole purpose being to guarantee against loss or damage. | What is the underlying principle in all insurance contracts? | 000204.docx | LEGALEASE-00115443-LEGALEASE-00115445 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 7988 | Peachtree Dev. Co. v. Paul, 67 Ohio St. 2d 345 | 15A+1057 | In resolving the foregoing issues, we are mindful of the test which this court has articulated in unravelling the legislative-administrative dichotomy: "The test for determining whether the action of the legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." Donnelly v. Fairview Park (1968), 13 Ohio St.2d 1, 233 N.E.2d 500, paragraph two of the syllabus. | Test for determining whether action of legislative body is legislative or administrative is whether action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence. | How is it determined whether an action of a legislative body is legislative or administrative? | Administrative Law - Memo 161 - RK.docx | ROSS-003311073-ROSS-003311074 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 7989 | Transmission Access Policy Study Grp. v. F.E.R.C., 225 F.3d 667 | 145+11.3(4) | Dalton charges that, even if the FPA permits FERC to impose involuntary wheeling generally, the open access requirement of Order 888 causes rather than remedies discrimination, and therefore violates FPA " 206(a)'s express requirement that FERC act against undue discrimination. Specifically, Dalton and the other non-jurisdictional owners of the Georgia ITS facilities invested millions of dollars in those facilities in order to use the facilities each owns and receive reciprocal open access transmission services from the other owners. Under the Open Access Transmission Tariff (OATT), other customers do not have to make such investments to use the Georgia ITS facilities. FERC responds that Order 888 does not unduly discriminate between old and new customers of integrated transmission systems like the Georgia ITS; and that if Dalton has evidence that the tariff results in undue discrimination in its individual circumstances, Dalton remains free to file a petition under FPA " 206 for redress, and FERC will consider its claim. | Provision, in Federal Energy Regulatory Commission (FERC) order imposing open access requirements on owners of electric transmission lines, that FERC will serve as the primary forum for resolution of stranded cost claims which result from state unbundling of retail sales, when retail customers take advantage of state-ordered retail wheeling to reach new generation suppliers, but only when the appropriate state regulatory commission lacks authority to do so, did not sanction arbitrary and capricious differences in transmission rates, in violation of the FPA, given FERC's wide discretion to determine what constitutes "just and reasonable rates" and "undue discrimination," as well as the unusual circumstances created by an industry change as fundamental as the open access requirement, and given that it is state-ordered wheeling that most directly causes retail costs to become stranded. Federal Power Act, SS 201(b)(1), (f), 206, as amended, 16 U.S.C.A. SS 824(b)(1), (f), 824e. | Are electricity orders imposing open access requirements as to electric transmission lines valid? | 002827.docx | LEGALEASE-00119939-LEGALEASE-00119941 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7990 | Celaya v. Stewart, 691 F. Supp. 2d 1046 | 203+1051(2) | In making her decision, the state trial court relied on Rule 404(a) and 405(b). Character evidence is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except if it is offered by an accused in a homicide case to show that the alleged victim was the first aggressor. Rule 404(a)(2). Character evidence may only be offered by specific instances of conduct in a case in which character or a trait of character of a person is an essential element of a charge, claim, or defense. Rule 405(b). The violent or aggressive character of the victim is neither an element of the homicide offense nor self-defense, except for a claim of self-defense where the defendant personally observed the victim's violent character or it was made known to him prior to the homicide. State v. Jackson, 94 Ariz. 117, 121, 382 P.2d 229 (1963). Then the evidence is admitted because it has a bearing on the defendant's state of mind and the reasonableness of his belief that deadly force was necessary when it was used. State v. Williams, 141 Ariz. 127, 685 P.2d 764, 767 (Ariz.App.1984) (citations omitted). Because the defendant admittedly did not know of the alleged violent or aggressive character of the victim, the trial court precluded the defense witnesses under Rule 404(a) and 405 (b). | Under Arizona law, the violent or aggressive character of a homicide victim is neither an element of the homicide offense nor self-defense, except for a claim of self-defense where the defendant personally observed the victim's violent character or it was made known to him prior to the homicide; in that case, the evidence is admitted because it has a bearing on the defendant's state of mind and the reasonableness of his belief that deadly force was necessary when it was used. 17A A.R.S. Rules of Evid., Rules 404(a), 405(b). | Can the aggressive character of the victim be considered as an element of self-defense? | 003164.docx | LEGALEASE-00120780-LEGALEASE-00120781 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 7991 | People v. Stevenson, 12 N.E.3d 179 | 110+632(4) | A motion in limine can be a "powerful" and "potentially dangerous" weapon because it requests to restrict evidence. Reidelberger v. Highland Body Shop, Inc., 83 Ill.2d 545, 550, 48 Ill.Dec. 237, 416 N.E.2d 268, 271 (1981). Because a ruling on the motion can restrict evidence, the motion must be specific and allow the court and the parties to understand what evidence is at issue. See Lockett v. Bi"State Transit Authority, 94 Ill.2d 66, 76, 67 Ill.Dec. 830, 445 N.E.2d 310, 315 (1983). While oral motions in limine are permitted, a written motion should be used whenever complicated or sensitive evidence is at issue. This allows the movant to carefully identify the evidence sought to be excluded and articulate his or her argument in support. A written motion prevents confusion and misunderstanding by defining the evidence at issue and capturing the movant's arguments. See Compton v. Ubilluz, 353 Ill.App.3d 863, 871, 289 Ill.Dec. 271, 819 N.E.2d 767, 776 (2004). If nothing else, a written motion allows the parties and court to refer to a fixed version of the movant's request. | While oral motions in limine are permitted, a written motion should be used whenever complicated or sensitive evidence is at issue; this allows the movant to carefully identify the evidence sought to be excluded and articulate his or her argument in support, and prevents confusion and misunderstanding by defining the evidence at issue and capturing the movant's arguments. | "To prevent confusion and misunderstanding during trial, should the motion in limine be in writing?" | 038184.docx | LEGALEASE-00126185-LEGALEASE-00126186 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 7992 | City of Blue Springs, Mo. v. Cent. Dev. Ass'n, 684 S.W.2d 44 | 317A+113 | The evidence was CWC had made a proposal to a water supply district, and as CWC's letter of October 12, 1982 to the Public Service Commission stated, the proposal was with the "intent" to enter into a contract in 1983, contingent on an agreement on price. The contract was blank as to amount of water to be supplied and price. The order of the commission recited CWC, "proposed to render service to the public." The commission further noted " 393.170 RSMo which requires application by the company to obtain a certificate of public convenience and necessity to dispense water to the public. As of June 1982 when CWC sought to issue stock, and July 19, 1982 when that attempt was denied because of no certificate, CWC could not dispense water to the public. CWC had no means to either mine or treat water from the aquifer. Presumably the attempt to sell stock was to raise money for that purpose. The requirements, which CWC had not met, for an applicant to construct a facility and to be granted a service area are contained in 4 CSR 24"2.060. As of October 12, 1982 when the blank proposed contract was submitted by CWC to the commission, it had neither the power nor the duty to supply water on a public basis. The granting of a certificate of convenience and necessity is a mandate of the utility's duty to serve all persons in the franchise area it has undertaken to serve. State ex rel Harline v. Public Service Commission of Missouri, 343 S.W.2d 177, 182 (Mo.App.1960). The timing and the attempts to obtain such authority (that was never obtained) makes certain CWC had no pre-existing public duty. Nothing was in place, or even close to being put in place when the city passed the ordinances to obtain a water supply. | Granting of certificate of convenience and necessity is mandate of utility's duty to serve all persons in franchise area it has undertaken to serve. | Is granting a certificate of convenience and necessity a mandate of the utilitys duty to serve all the people in the franchise area it has undertaken to serve? | 042406.docx | LEGALEASE-00126680-LEGALEASE-00126681 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 7993 | Baltia Air Lines v. CIBC Oppenheimer Corp., 273 A.D.2d 55 | 307A+501 | We reject plaintiffs remaining arguments concerning the legal sufficiency of thecomplaint. We note that plaintiff has failed to identify any breach by Hornblower of itsunderwriting agreement with plaintiff that could support a cause of action against Oppenheimer for tortious interference with contract (see, e.g., Snyder v. Sony Music Entertainment, 252 A.D.2d 294, 299, 684 N.Y.S.2d 235). With regard to plaintiffs arguments concerning the Securities Exchange Act of 1934, as amended (15 USC "" 78a et seq.) (the Exchange Act), anyclaim for violation of the Exchange Act is subject to the exclusive jurisdiction of the Federal courts (see, 15 USC " 78aa), and plaintiff's argument that the provision of the clearing agreement barring enforcement by third parties is void as contrary to the Exchange Act is unsupported by citation of any provision of the Act or regulations promulgated thereunder inconsistent with such contractual provision. Finally, plaintiff's motion to discontinue the action without prejudice was correctly denied, since such relief was plainly sought in order to avoid an adverse decision on the merits (see, NBN Broadcasting v. Sheridan Broadcasting Networks, 240 A.D.2d 319, 659 N.Y.S.2d 262. | Motion to discontinue action without prejudice was properly denied where relief was sought to avoid an adverse decision on merits. McKinney's CPLR 3217(b). | Is a motion to discontinue action properly denied if such a relief was sought in order to avoid an adverse decision on the merits? | Pre-trial Procedure - Memo # 1047 - C - KG.docx | ROSS-003301118-ROSS-003301119 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7994 | A.T. ex rel. T.T. v. Cohen, 445 N.J. Super. 300 | 307A+517.1 | The decision whether to dismiss a matter without prejudice under Rule 4:37"1(b) lies within the judge's sound discretion. Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J.Super. 254, 258, 581 A.2d 1372 (App.Div.1990). "In exercising that discretion, the court is chiefly required to protect "the rights of the defendant." " Shulas v. Estabrook, 385 N.J.Super. 91, 97, 895 A.2d 1234 (App.Div.2006) (quoting Burke v. Cent. R. Co., 42 N.J.Super. 387, 397, 126 A.2d 903 (App.Div.1956)). In Shulas, supra, 385 N.J.Super. at 101"02, 895 A.2d 1234, we instructed that "an examination into the propriety of a voluntary dismissal without prejudice requires an investigation into the reasons why the order was sought as well as the actions or inactions of the parties that preceded its entry." | In exercising the discretion afforded the court in the rule authorizing a voluntary dismissal of an action by an order of the court, the court is chiefly required to protect the rights of the defendant. N.J. Ct. R. 4:37-1(b). | "n exercising the discretion afforded the court in the rule authorizing a voluntary dismissal of an action by an order of the court, is the court chiefly required to protect the rights of the defendant?" | 028045.docx | LEGALEASE-00130048-LEGALEASE-00130049 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 7995 | Barratt Am. Inc. v. City of Rancho Cucamonga, 37 Cal. 4th 685 | 371+2001 | Barratt sought declaratory relief under section 53728, asking the trial court to impose a penalty on the City for collecting and retaining "special taxes" without voter approval. Section 53728"a part of Proposition 62 ("" 53720"53730)"provides that property tax revenues allocated to the local government be reduced by one dollar for each dollar of revenue attributable to an unauthorized "special tax." "Special taxes" "those imposed for specific purposes (" 53721)"must be approved by a two-thirds vote of the voters. (" 53722.) "In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.]" (Sinclair Paint Co. v. State Bd. of Equalization (1997) 15 Cal.4th 866, 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350 (Sinclair Paint Co.).). | In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. | Are taxes imposed for revenue purposes rather than in return for a specific benefit conferred or privilege granted? | 045356.docx | LEGALEASE-00130665-LEGALEASE-00130666 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 7996 | Whitmore v. Mut. Life Ins. Co. of N. Y., 122 Vt. 328 | 307A+749.1 | A pretrial conference in the court below resulted in an order that the questions to be determined in the trial of the cause were to be decided under the laws of the State of Illinois.The pretrial order states that the issues of fact to be determined relate to the answers given on questions No. 2 and No. 4 on the application for insurance. These issues, three in number, are: (1) did the agent of the insured fill out the check marks in answer to questions No. 2 and No. 4; (2) if he did, did he then know from the insured that the insured had been hospitalized within a two-year period prior to the date of the application; it being conceded by the plaintiff that the insured had been hospitalized within the two-year period about which inquiry was made in the application, and (3) if the agent filled the blanks with knowledge of the hospitalization did such action on his part waive the disability conceded by the plaintiff and in doing so bind the company. Our rule on procedure is that the subsequent course of action in the trial of a cause is controlled by agreement or admissions made at the pretrial conference. 12 V.S.A. App. II R. 3A. In re Cartmell's Estate, 120 Vt. 234, 238, 138 A.2d 592. | Subsequent course of action in trial of a cause is controlled by agreement or admission made at pretrial conference. County Court Rules, rule 3A. | Is a subsequent course of action in trial of case controlled by agreement or admissions made at a pretrial conference? | 028088.docx | LEGALEASE-00132218-LEGALEASE-00132219 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 7997 | n re Bennett (Tex. 1997) 960 S.W.2d 3 | 307A+517.1 | Generally, plaintiffs have the right under Tex.R. Civ. P. 162 to take a nonsuit at any time until they have introduced all evidence other than rebuttal evidence. See Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854 (Tex.1995); Aetna Cas. & Sur. Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993). Such a nonsuit may have the effect of vitiating earlier interlocutory orders and of precluding further action by the trial court, with some notable exceptions. See Hyundai, 892 S.W.2d at 854"55 (holding that once a trial court announces a decision on a motion for partial summary judgment, that claim is no longer subject to the plaintiff's right to nonsuit); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (stating that the rule recognizing a plaintiff's right to nonsuit should not be confused with the rule recognizing the power of a court to grant injunctive relief to prevent a multiplicity of groundless suits).However, the signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires. Appellate timetables do not run from the date a nonsuit is filed, but rather from the date the trial court signs an order of dismissal. See Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex.1995) ( "The appellate timetable does not commence to run other than by a signed, written order, even when the signing of such an order is purely ministerial."); see also Shadowbrook Apartments v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Tex.R. Civ. P. 329b(d). | Signing of order dismissing case, not filing of notice of nonsuit, determines when trial court's plenary power expires. Vernon%22s Ann.Texas Rules Civ.Proc., Rule 162. | Is the signing of an order dismissing a case the starting point for determining when a trial court's plenary power expires? | Pretrial Procedure - Memo # 2688 - C - TM.docx | ROSS-003288342-ROSS-003288344 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 7998 | Goodman v. Kennedy, 18 Cal. 3d 335 | 302+40 | Finally we consider whether plaintiffs should be given an opportunity to amend their pleadings to allege, if they can, facts sufficient to cure the defects in their attempts to state causes of action for fraud. (See Code Civ.Proc., s 472c.) We conclude that the trial court did not abuse its discretion in sustaining the demurrer to the third amended complaint without leave to amend. "Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. (Temescal Water Co. v. Dept. of Public Works (1955) 44 Cal.2d 90, 107, 280 P.2d 1.) . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. (Filice v. Boccardo (1962) 210 Cal.App.2d 843, 847, 26 Cal.Rptr. 789; Starbird v. Lane (1962) 203 Cal.App.2d 247, 262, 21 Cal.Rptr. 280; Schultz v. Steinberg (1960) 182 Cal.App.2d 134, 140, 5 Cal.Rptr. 890.) Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. (Saint v. Saint (1932) 120 Cal.App. 15, 23"24, 7 P.2d 374.)" (Cooper v. Leslie Salt Co., supra, 70 Cal.2d 627, 636, 75 Cal.Rptr. 766, 772, 451 P.2d 406, 412.) | It is generally an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect in the pleading can be cured by amendment. West's Ann.Code Civ.Proc. S 472c. | Is it an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment? | 023241.docx | LEGALEASE-00132943-LEGALEASE-00132944 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 7999 | Arens v. United States, 24 Cl. Ct. 407 | 34+3(1) | This court believes it should give great deference to the military when reviewing matters which impinge upon military affairs and national defense. Orloff v. Willoughby, 345 U.S. 83, 93"94, 73 S.Ct. 534, 539"40, 97 L.Ed. 842, reh'g denied, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953). This court does not understand the role of the court to be to order promotions or to substitute its judgment for that of the military in the area of personnel matters, absent a clear violation of the Constitution or applicable law which mandates the promotion. Orloff v. Willoughby, 345 U.S. at 90, 73 S.Ct. at 538; Voge v. United States, 844 F.2d 776, 783 (Fed.Cir.1988), cert. denied, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). The Constitution rests the power of appointment (and, therefore, also the authority to promote) in the appropriate military officials within the Executive Branch of government, not in the Judicial Branch. Orloff v. Willoughby, 345 U.S. at 90, 73 S.Ct. at 538; Maier v. Orr, 754 F.2d 973, 983, reh'g denied, 758 F.2d 1578 (Fed.Cir.1985). | Claims Court will give great deference to military when reviewing matters which impinge upon military affairs and national defense. | Does the court accord great deference to military when reviewing matters which impinge upon military affairs and national defense? | 008968.docx | LEGALEASE-00133723-LEGALEASE-00133725 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8000 | Marshall v. Vise, 767 S.W.2d 699 | 307A+483 | Unanswered requests for admissions are automatically deemed admitted, unless the court on motion permits their withdrawal or amendment.TEX.R.CIV.P. 169. An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. See Shaw v. Natl County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App. Houston 1st Dist. 1986, no writ). We have held, however, that a party relying upon an opponent pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex.1983). | Unanswered requests for admissions are automatically deemed admitted, unless court on motion permits there withdrawal or amendment. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Are unanswered requests for admissions deemed admitted, unless the court on motion permits their withdrawal or amendment?" | 028850.docx | LEGALEASE-00134519-LEGALEASE-00134520 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8001 | Ballard v. United States, 430 A.2d 483 | 211+1597 | Thus the elements necessary to establish what has traditionally been known as the offense of common law rape are (1) sexual intercourse with a female, (2) committed forcibly and against her will, while the elements required to establish the offense of carnal knowledge or statutory rape are (1) sexual intercourse with a female child, (2) under the age of sixteen regardless of whether force was used or assent given. In either case corroboration is necessary where the complainant is found to be an "immature female." Arnold v. United States, D.C.App., 358 A.2d 335 (1976) (en banc). Although the proscription against rape and carnal knowledge are contained in the same statute, which generally protects against illicit sexual behavior, they are intended to serve different purposes. The prohibition against common law rape is to protect females capable of giving consent (i. e., sixteen years old and above) from forcible sexual intercourse, cf. Commonwealth v. Goldenberg, 338 Mass. 377, 384, 155 N.E.2d 187, 191-92, cert. denied, 359 U.S. 1001, 79 S.Ct. 1143, 3 L.Ed.2d 1032 (1959) ("(t)he essence of the crime (of rape) is ... the injury and outrage to the feelings of the woman by the forceful penetration of her person."), while the statutory proscription against carnal knowledge is intended to protect females below the age of sixteen, regardless of the use of force or consent, from any sexual relationship. In re W.E.P., D.C.App., 318 A.2d 286, 290 (1974). As a result of the different statutory purposes served by s 22-2801 carnal knowledge cannot be viewed as a lesser included offense of rape. See United States v. Whitaker, 144 U.S.App.D.C. 344, 349, 447 F.2d 314, 319 (1971) (in order to justify submitting to the jury an instruction as a lesser included offense "there must be an "inherent" relationship between the greater and lesser offenses, i. e., they must relate to the protection of the same interests ...") (emphasis added). | Elements required to establish offense of carnal knowledge or statutory rape are sexual intercourse with a female child under age of 16 regardless of whether force was used or assent given. D.C.C.E. S 22-2801. | Is carnal knowledge an element of rape? | Sex Offence - Memo 50 - SB.docx | ROSS-003290924-ROSS-003290926 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 8002 | Lothspeich v. Sam Fong, 6 Haw. App. 118 | 307A+36.1 | A general limitation on the right of discovery is that the information sought must be "relevant to the subject matter involved in the pending action." Rule 26(b)(1), HRCP (1981). Another general rule is that a defendant in a pending action may not be required before judgment to give information concerning his assets, as such information is not relevant to the subject matter. Ranney-Brown Distributors, Inc. v. Barwick, 75 F.R.D. 3 (D.Ct.Ohio 1977); 23 Am.Jur.2d Depositions and Discovery " 40 (1983). | A defendant in a pending action may not be required before judgment to give information concerning his assets, as such information is not relevant to the subject matter. | Can a defendant in a pending action not be required before judgment to give information concerning his assets as such information is not relevant? | Pretrial Procedure - Memo # 4849 - C - ES.docx | ROSS-003290814-ROSS-003290815 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 8003 | Laflamme v. Goodwin, 911 N.E.2d 660 | 106+35 | A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. Johnston v. Johnston, 825 N.E.2d 958 (Ind.Ct.App.2005). In either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. Id. The defendant, however, bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. Id. | A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss, and in either case, once the party contesting jurisdiction challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. | Can a challenge to personal jurisdiction be raised either as an affirmative defense in the answer or in a motion to dismiss for lack of jurisdiction over the person? | 032839.docx | LEGALEASE-00139901-LEGALEASE-00139902 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 8004 | Gestetner Holdings, PLC v. Nashua Corp., 784 F. Supp. 78 | 25T+143 | Chung makes it clear that where claims may be understood to raise an arbitrable issue, arbitration must be compelled, even if the claims can also be characterized another way. Here, the question is not even close. Gestetner's objections are objections to the Closing Date Net Book Value. Section 1.5 of the Purchase Agreement certainly may be understood to make such objections arbitrable. Section 1.5(b) provides that disputes over Gestetner's objections are to be submitted to Peat Marwick and in no way limits the nature of objections Gestetner may bring. Thus, not only may Gestetner's objections be understood to be arbitrable, but also Gestetner's objections appear, after facial consideration, to be clearly within the scope of the arbitration agreement, notwithstanding Nashua's attempt to portray them otherwise. Here, as in Chung, respondent's arguments relate to the merits of Gestetner's objections"whether they are defective under the Purchase Agreement itself"and are thus more appropriately brought before the arbitrator. | Where claims may be understood to raise an arbitrable issue, arbitration must be compelled even if claims can also be characterized another way. | Do courts compel arbitration when claims raise an arbitrable issue even if the claims can also be characterized another way? | 007499.docx | LEGALEASE-00143159-LEGALEASE-00143160 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8005 | State v. James W., 87 Conn. App. 494 | 110+474.4(4) | Issues of credibility typically are determinative in child sexual abuse prosecutions. This is so because "in sex crime cases generally, and in child molestation cases in particular, the offense often is committed surreptitiously, in the absence of any neutral witnesses." State v. Merriam, Conn. 617, 669, 835 A.2d 895 (2003). Generally, an expert witness may not express an opinion as to an ultimate issue to be decided by the trier of fact. Conn.Code Evid. " 7"3(a). An expert witness may not testify concerning the credibility of another witness or of a particular victim. See State v. Toccaline, 258 Conn. 542, 550 n. 10, 783 A.2d 450 (2001). While an expert witness is precluded from testifying with regard to the credibility of a complaining victim, he or she may nevertheless testify concerning issues that may bear on a logical assessment of a victim's credibility, particularly in cases where a minor is the alleged victim of sexual abuse. "[T]he consequences of the unique trauma experienced by minor victims of sexual abuse are matters beyond the understanding of the average person." State v. Spigarolo, 210 Conn. 359, 378, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Our law recognizes that expert testimony concerning certain behavior patterns of minor victims of sexual abuse in general may assist the jury in assessing the credibility of a particular complaining victim. In certain circumstances, such testimony has been deemed admissible on this ground. Id. | Expert testimony concerning certain behavior patterns of minor victims of sexual abuse in general may assist the jury in assessing the credibility of a particular complaining victim. | Can experts in child sexual abuse cases comment on victims credibility? | 043078.docx | LEGALEASE-00143404-LEGALEASE-00143405 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8006 | Rutten v. Wood, 79 N.D. 436 | 200+80 | The general rule as to the fee title to highways is stated in 25 Am.Jur. page 426, Highways, Section 132, as follows:"In the absence of a statute expressly providing for the acquisition of the fee, or of a deed from the owner expressly conveying the fee, when a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner."This is the rule in this state. Donovan v. Allert, 11 N.D. 289, 91 N.W. 441, 58 L.R.A. 775; Northern Pacific Railway Company v. Lake, 10 N.D. 541, 88 N.W. 461; Gram Construction Company v. Minneapolis, St. P. & S. S. M. Railway Company, 36 N.D. 164, 161 N.W. 732; Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 145 A.L.R. 1343. | When highway is established, the public, in absence of a statute expressly providing for acquisition of fee, merely acquires an easement of passage, the fee title remaining in landowner. | Does the fee title remain in the landowner when a public highway is established? | 018829.docx | LEGALEASE-00161753-LEGALEASE-00161754 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 8007 | Com. v. Duncan, 239 Pa. Super. 539 | 3.77E+06 | With the enactment of 18 Pa.C.S. s 2709, our legislature has sought to prohibit such conduct, including speech, which is not Constitutionally protected and which is intended to alarm or seriously annoy another person. The purpose of the legislature, undoubtedly, was to extend to the Individual the protections which have long been afforded the general public under disorderly conduct and breach of the peace statutes. The legislature has sought to prevent, not the initial impact of unwelcome intrusions upon privacy, but rather Repeated assaults on individual privacy interests. In inviting the prosecutrix to engage in lewd and illegal1 activity, appellant in the case before us was not expressing social or political beliefs or ideas or engaging in any legitimate conduct; in pressuring the young lady with his repeated suggestions, appellant was going beyond communication to invade a substantial privacy interest in an intolerable manner. | In enacting harassment statute, legislature sought to prohibit such conduct, including speech, which is not constitutionally protected and which is intended to alarm or seriously annoy another person; legislature's purpose was to extend to the individual the protections which have long been afforded the general public under disorderly conduct and breach of the peace statutes and to prevent, not the initial impact of unwelcome intrusions upon privacy, but rather repeated assaults on individual privacy interests. (Per Van der Voort, J., with two Judges concurring and one Judge concurring in result.) 18 Pa.C.S.A. S 2709; U.S.C.A.Const. Amend. 1. | What conduct did the legislature intend to prohibit by enacting the harassment statute? | 046983.docx | LEGALEASE-00162713-LEGALEASE-00162714 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 8008 | Feuchter v. Bazurto, 22 Ariz. App. 427 | 228+185.2(4) | Appellant would maintain that this statement was sufficient to warrant a denial of a motion for summary judgment. However, it is elementary that an opponent to a motion for summary judgment does not raise an issue of fact by merely stating in his affidavit that an issue of fact exists, but rather he must show that evidence is available which would justify a trial of that issue. Schock v. Jacka, 105 Ariz. 131, 460 P.2d 185 (1969); Crocker v. Crocker, 103 Ariz. 497, 446 P.2d 226 (1968). An affidavit in opposition to a motion for summary judgment without showing something in support of the denial is of no more effect than denials contained in an answer as they do not create a genuine issue as to any material facts. Gibraltar Escrow Company v. Thomas J. Grosso Investment, Inc., 4 Ariz.App. 490, 421 P.2d 923 (1966). An affidavit which is a mere statement of conclusions will not support a motion for summary judgment. Madsen v. Fisk, 5 Ariz.App. 65, 423 P.2d 141 (1967). An affidavit filed in response to a motion for summary judgment must be affirmative and present sufficient material to show that there is a triable issue of material fact. Perez v. Tomberlin, 86 Ariz. 66, 340 P.2d 982 (1959). A ruling granting a motion for summary judgment is presumed to be correct. Mozes v. Daru, 4 Ariz.App. 385, 420 P.2d 957 (1966). | Opponent to a motion for summary judgment does not raise an issue of fact by merely stating in his affidavit that an issue of fact exists, but rather he must show that evidence is available which would justify a trial of that issue. | Is it fundamental that the affidavit present sufficient materials to show that there is a triable issue of material fact? | Affidavits - Memo 81 - _1RKRRLZNIMYTOxeQqb7-jIPH5kjSCkZa9.docx | ROSS-000000256-ROSS-000000257 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8009 | Cirillo v. Slomin's Inc., 196 Misc. 2d 922 | 307A+679 | In ruling upon a motion to dismiss, the Court must accept the facts alleged as true and accord plaintiffs the benefit of every possible favorable inference. Leon v. Martinez, 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511. The Complaint is to be construed liberally. The court may not address the merits of the complaint or any of its factual allegations, but must determine only whether the alleged facts fit within any cognizable legal theory. Id.; P.T. Bank Central Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 754 N.Y.S.2d 245. "Dismissal is warranted only if the documentary evidence conclusively establishes a defense to the asserted claims as a matter of law ... [T]he criterion is whether the proponent of a pleading has a cause of action, not whether he has stated one." Leon v. Martinez, supra, at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511; see also Steiner v. Lazzaro & Gregory, P.C., 271 A.D.2d 596, 706 N.Y.S.2d 157. | In ruling upon a motion to dismiss, the Court must accept the facts alleged as true and accord plaintiffs the benefit of every possible favorable inference. McKinney's CPLR 3211. | "In ruling upon a motion to dismiss, can the court not address the merits of the complaint or any of its factual allegations?" | Pretrial Procedure - Memo # 8787 - C - NS_59786.docx | ROSS-003280320-ROSS-003280322 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8010 | Com. v. Ferrer, 283 Pa. Super. 21 | 3.77E+11 | While appellant's brief makes no specific argument concerning the scienter requirement for terroristic threats, it appears to raise a general claim of insufficiency of evidence. We have therefore reviewed the evidence with respect to this element also, and we find it sufficient to establish either of the possible alternatives in this case, an intent to terrorize or reckless disregard of the risk of causing terror. The threat made here was of the same nature as the threats found sufficient to establish an intent to terrorize beyond a reasonable doubt in Commonwealth v. Ashford, supra "-Pa.Super. at "-, 407 A.2d at 1330. The threats in that case were repeated, whereas here there was only one, but "even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce." | Even a single verbal threat may be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce. 18 Pa.C.S.A. S 2706. | Can a single verbal threat be made in way as to support the inference that the actor intended to terrorize or coerce? | "Threats, Stalking, and Harassment - Memo #17 - C - LB_58573.docx" | ROSS-003281416-ROSS-003281417 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8011 | Sullivan v. Bd. of Cty. Comm'rs of Arapahoe Cty., 692 P.2d 1106 | 15A+1705 | The Board's action in reviewing the discharge of Deputy Toney was quasi-judicial in nature. Quasi-judicial actions "involve the determination of juridical facts on which the impact of a law upon an individual depends," Shoenberg Farms v. People ex rel. Swisher, 166 Colo. 199, 209, 444 P.2d 277, 282 (1968), and the general test "is to consider whether the function in question involves the exercise of discretion and requires notice and hearing." Van Pelt v. State Board for Community Colleges, 195 Colo. 316, 320, 577 P.2d 765, 768 (1978). In general, quasi-judicial proceedings involve a determination of rights and liabilities with reference to past or present facts. City & County of Denver v. Eggert, 647 P.2d 216 (Colo.1982). An examination of the applicable provisions of the policy manual leads us to conclude that the actions of the Board concerning the sheriff were quasi-judicial in nature. | Quasi-judicial actions, which must be filed within 30 days from final action taken by an inferior tribunal in order to be within subject matter jurisdiction of district court, involve the determination of juridical facts on which the impact of a law upon an individual depends and, in addition to a consideration of whether the function in question involves the exercise of discretion and requires notice and hearing, involve a determination of rights and liabilities with reference to past or present facts. Rules Civ.Proc., Rules 106, 106(a)(4), (b). | How is it determined whether an action of an authority is quasi-judicial in nature? | Administrative Law - Memo 155 - RK.docx | ROSS-003282652-ROSS-003282654 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 8012 | Mahler v. Szucs, 135 Wash. 2d 398 | 366+1 | All of the parties have argued subrogation principles resolve the issues in these cases. Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. Ronald C. Horn, Subrogation in Insurance Theory and Practice 3 (1964). Two law review commentators have referred to this allocation rationale as stemming from "the moralistic basis of tort law as it has developed in our system." Spencer L. Kimball & Don A. Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841, 1962). "The general purpose of subrogation is to facilitate placement of the financial consequences of loss on the party primarily responsible in law for such loss." Horn, supra, at 24. | "Subrogation" is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility; it seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. | What is the purpose of Subrogation? | Subrogation - Memo 186 - ANG C.docx | ROSS-003284093-ROSS-003284095 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8013 | Ambrogio v. Beaver Rd. Assocs., 267 Conn. 148 | 307A+3 | "[T]he motion in limine ... has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." (Internal quotation marks omitted.) State v. Pharr, 44 Conn.App. 561, 581, 691 A.2d 1081 (1997). Accordingly, a party, through a motion in limine, may implore the court to decide a question of law; see Sheiman v. Sheiman, 72 Conn.App. 193, 201, 804 A.2d 983 (2002) (affirming trial court's ruling on motion in limine precluding testimony from treating psychiatrist as privileged); as well as some preliminary questions of fact. See State v. Kelly, 256 Conn. 23, 42, 770 A.2d 908 (2001) ("[w]hether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge" [internal quotation marks omitted]). Although broad, the discretion of a trial judge must yield to a litigant's "constitutional right to have factual issues resolved by the jury." Mather v. Griffin Hospital, 207 Conn. 125, 138, 540 A.2d 666 (1988). By its explicit terms, the defendant's motion in limine posited solely a question of law. Specifically, the motion sought to preclude evidence of lost profits on the legal premise that "[l]ost business and loss of business opportunities are not included in the measure of damages for the breach of a construction contract." (Emphasis added.) Indeed, the notation on the face of the motion reads, "Oral Argument Requested, Testimony Not Required," thus demonstrating that the defendant intended to present the trial court with a question of law only. Consistent with this understanding, no evidence was presented at the hearing on the motion in limine and the trial court's memorandum of decision is devoid of any factual findings establishing that lost profits were not contemplated by | A party, through a motion in limine, may implore the court to decide a question of law, as well as some preliminary questions of fact. | " Can a party, through a motion in limine, implore the court to decide a question of law, as well as some preliminary questions of fact? " | PreTrial Procedure - Memo - 72 - C - SK.docx | ROSS-003284376-ROSS-003284377 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8014 | Rivas v. Napolitano, 714 F.3d 1108 | 221+189 | Federal courts are generally without power to review the actions of consular officials. Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir.1986). However, at least two exceptions to this rule exist. First, a court has jurisdiction to review a consular official's actions "when [the] suit challenges the authority of the consul to take or fail to take an action as opposed to a decision within the consul's discretion." Patel v. Reno, 134 F.3d 929, 931"32 (9th Cir.1997). Second, the court has jurisdiction to review a consular official's actions when "a U.S. citizen's constitutional rights are alleged to have been violated by the denial of a visa to a foreigner" without a "facially legitimate and bona fide reason" for the denial. Bustamante v. Mukasey, 531 F.3d 1059, 1060 (9th Cir.2008). | A federal court has jurisdiction to review a consular official's actions when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision within the consul's discretion. | When does a federal court has jurisdiction to review consular officials actions? | Ambassadors and Consuls - Memo 29 - SH.docx | ROSS-003285159-ROSS-003285160 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8015 | Iragorri v. United Techs. Corp., 274 F.3d 65 | 170B+2973 | The rule is not so abrupt or arbitrary. One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit. Consider for example a hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District but not in New Jersey. It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant. This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear. A plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction over the defendant, if by moving to another district, she can be confident of bringing the defendant before the court. In many circumstances, it will be far more convenient for a U.S. resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides. It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications. We thus understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the | Deference given to plaintiff's choice of forum, when court rules on forum non conveniens dismissal motion, is not limited only to situations in which plaintiff sues in plaintiff's home district, as one of factors that necessarily affects plaintiff's choice of forum is need to sue in place where defendant is amenable to suit; where United States resident leaves his or her home district to sue in district where defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on defendant, especially if defendant's amenability to suit in plaintiff's home district is unclear. | Does the need to sue in a place where the defendant is amenable to suit affect a plaintiffs choice of forum? | Venue - Memo 39 - RM.docx | ROSS-003285655-ROSS-003285657 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 8016 | Flores v. Workmen's Comp. Appeals Bd., 36 Cal. App. 3d 388 | 413+1 | We have concluded that the answer to this question is in the negative. First, the board's decision, to the extent that it sets a precedent which would require an employee who has sustained a compensable industrial injury to submit to surgical treatment furnished through a county welfare department, contravenes the public policy of this state. Experience teaches us that innumerable good faith disputes can and do arise as to the cause, nature and extent of alleged industrial injuries. Experience also teaches us that a large segment of the working population is not sufficiently affluent to attain and to pay for adequate medical aid from personal financial resources. To hold that workmen who incur industrial injuries and are in need of medical or surgical treatment and do not have the financial ability to obtain such treatment must resort to public welfare or risk the loss of further medical aid and disability pyaments from their employers would either compel the injured workman to forego the prompt treatment to which he is entitled or would foist upon the general public, in the first instance, a responsibility the California Legislature has declared belongs to industry. As was said in Union Iron Wks. v. Industrial Acc. Com., 190 Cal. 33, 39, 210 P. 410, 413: 'The underlying principle upon which the Workmen's Compensation Act rests is, as its title indicates, the providing of compensation to an employee for injuries resulting from his employment. It emanates from the economic thought that personal injury losses incident to an industry is a part of the costs of production, to be borne, just as the depreciation and replacement of a machine is borne, by the industry itself, which compensation will be included in the cost of the product of the industry. (Western Indemnity Co. v. Pillsbury, 170 Cal. 686 151 P. 398.)' | The underlying principle upon which the Workmen's Compensation Act rests is providing of compensation to employee for injuries resulting from his employment; industry being made to bear burden as part of cost of production. | What underlying principle does the Workmen's Compensation Act rest upon? | Workers Compensation - Memo #157 ANC.docx | ROSS-003288376-ROSS-003288377 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 8017 | Madera Production Co. v. Atlantic Richfield Co., 107 S.W.3d 652 | 401+5.1 | An action seeking royalty and overriding royalty in minerals is considered a suit on real property interests for the purpose of fixing venue in suits for recovery of such interests or damages thereto. Parker v. Petro"Lewis Corp., 663 S.W.2d 905 (Tex.App.-San Antonio 1983, no writ). A suit seeking net profits interest based on ownership of land is also an interest in land. T"Vestco Litt"Vada v. Lu"Cal One Oil Co., 651 S.W.2d 284, 292 (Tex.App.-Austin 1983, writ ref'd n.r.e.). A suit over the ownership of proceeds from mineral interests must be filed in the county in which the real property is located even though the cause of action is for a declaratory judgment over monies. Hill v. Enerlex, Inc., 969 S.W.2d 120 (Tex.App.-Eastland 1998). An option to purchase land creates an interest in land. Hitchcock Props. v. Levering, 776 S.W.2d 236, 238"39 (Tex.App.-Houston [1st Dist.] 1976); see generally 1 Arthur Linton Corbin, Corbin on Contracts " 272 (1950) (discussing how options to purchase land create an interest in land). | Actions seeking royalties and overriding royalties in minerals are considered suits on real property interests, meaning they must be filed where the property is located. V.T.C.A., Civil Practice & Remedies Code S 15.011. | Is an action seeking royalty and overriding royalty in minerals considered a suit on real property interests that must be filed where the property is located? | Venue - Memo 91 - JS.docx | ROSS-003288953-ROSS-003288954 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8018 | Howard Univ. v. Metro. Campus Police Officer's Union, 512 F.3d 716 | 25T+112 | First, arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. See United Indus. Workers, 987 F.2d at 168 ("Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim"). | Arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. | "If a party submits to arbitration without objecting to the arbitrator's jurisdiction, does he consent to the arbitration? " | Alternative Dispute Resolution - Memo 106 - JS.docx | ROSS-003289610-ROSS-003289612 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 8019 | Cooney v. Osgood Mach., 81 N.Y.2d 66 | 413+1 | The general scheme of workers' compensation acts is that an employerregardless of culpability is required to make specified payments to an injured employeeand in exchange, the law immunizes the employer from further liability. Immunity "is part of the quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, [it] is relieved of the prospect of large damage verdicts" (2A Larsen, Workmen's Compensation Law "65.11 [1993] ). | General scheme of workers' compensation acts is that an employer, regardless of culpability, is required to make specified payments to injured employee, and in exchange, law immunizes employer from further liability. | What is the general scheme of the workers' compensation act? | Workers Compensation - Memo #100 ANC.docx | ROSS-003290656-ROSS-003290657 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8020 | Eldridge v. Felec Servs., 920 F.2d 1434 | 413+1 | The Alaska Workers' Compensation Act reflects a state policy for "providing, inthe most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obliged to provide." Searfus v. Northern Gas Co., 472 P.2d 966, 969 (Alaska 1970). The Act creates substantial rights and duties which apply to all employment relationships and may not be waived by any employee. Alaska Stat. "" 23.30.020, 23.30.245(b). The employer's failure tocomply with the provisions of the Act may result in civil and criminal penalties. Alaska Stat. "" 23.30.075, 23.30.085. | Alaska Workers' Compensation Act creates substantial rights and duties which apply to all employment relationships and may not be waived by any employee. AS 23.30.005 et seq. | Does the Workers' Compensation Act create substantial rights and duties which apply to all employment relationships and which cannot be waived by any employee? | Workers Compensation - Memo #110 ANC.docx | ROSS-003290660-ROSS-003290661 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8021 | Anchor Cas. Co. v. Wise, 172 Kan. 539 | 413+1834 | While it is true the Matlock case, supra, is not precisely in point with the question before us in that there it was conceded the employment and injury were within the Workmen's Compensation Act, nevertheless we think the general rules there announced are sound and have application to the question here presented. No attempt will be made to review all that was said in that decision, but it is sufficient to say the rule is well-settled that the Workmen's Compensation Act establishes a procedure of its own; that such procedure furnishes a remedy which is substantial, complete and exclusive in compensation cases; that the Commissioner is compelled to hear all evidence on all points and on all branches of the case in order that the district court may exercise its right and duty on appeal, and that until this has been done and a ruling made the case is only partly heard and the appeal to the district court is ineffectual. Nowhere in the record before us is it alleged that the question of the Commissioner's jurisdiction to hear this claim has ever been presented to that official for his determination. And yet, the practical effect of the lower court's ruling is to usurp his prerogative in that respect. | The workmen's compensation commissioner must hear all evidence on all points and on all branches of case in order that district court may exercise its right and duty on appeal, and until that has been done and ruling been made, an appeal to district court is ineffectual. G.S.1949, 20-301. | "Does the workmens compensation act establish a procedure of its own, and do such procedures furnish a remedy which is substantial, complete, and exclusive in compensation cases? " | Workers Compensation - Memo #220 ANC.docx | ROSS-003291321-ROSS-003291322 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 8022 | State v. Cheek, 361 P.3d 679 | 135H+59 | While the argument is a bit confusing, to the extent Defendant intends to argue that trial counsel should have made a merger argument before trial, Defendant misunderstands the law. "Courts apply the merger doctrine as one means of alleviating the concern of double jeopardy that a defendant should not be punished twice for the same crime." State v. Lopez, 2004 UT App 410, 8, 103 P.3d 153. However, "[t]he merger doctrine does not apply before trial because the double jeopardy protections attach only when an accused is put on trial ... and a jury has been sworn and impaneled." Id. (omission in original) (citation and internal quotation marks omitted). Therefore, "the protections provided by the merger doctrine are not applicable before trial." Id. "The trial court cannot assess whether ... one charge merges into another until the prosecution has presented its case and the jury has convicted the defendant of multiple charges." Id. Thus, trial counsel was not ineffective for failing to make a pretrial motion to merge the charges. See id. 9. | The merger doctrine does not apply before trial, because the double jeopardy protections attach only when an accused is put on trial and a jury has been sworn and impaneled. U.S.C.A. Const.Amend. 5. | Do the double jeopardy protections attach only when an accused is put on trial and a jury has been sworn and impaneled? | Double Jeopardy - Memo 980 - C - PB_67570.docx | ROSS-003295990-ROSS-003295991 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8023 | Haire v. Smith, Currie & Hancock LLP, 925 F. Supp. 2d 126 | 360+18.15 | The FAA is clearly relevant to this case. Arbitration agreements relating to interstate commerce, regardless of whether the challenge is brought in state or federal court, are governed by the FAA. See Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447"48, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. See Preston v. Ferrer, 552 U.S. 346, 360"63, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). | To the extent there are conflicts between state arbitration law and the Federal Arbitration Act (FAA) that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. 9 U.S.C.A. S 1 et seq. | Does the FAA pre-empt state law when state arbitration laws contravene the pro-arbitration policies embodied in the FAA? | Alternative Dispute Resolution - Memo 321 - RK.docx | ROSS-003296557-ROSS-003296559 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8024 | Am. Sterling Bank v. Johnny Mgmt. LV, 126 Nev. 423 | 366+1 | When the material facts of a case are undisputed, the effects of the application of a legal doctrine to those facts are a question of law that this court reviews de novo. Banegas v. SIIS, 117 Nev. 222, 224, 19 P.3d 245, 247 (2001). This same standard applies in the context of an appellate court's review of equitable subrogation. Hicks v. Londre, 125 P.3d 452, 455 (Colo.2005). This standard allows an appellate court "to independently review the question of whether the doctrine of equitable subrogation applies to the circumstances present in [a particular] case." However, equitable subrogation is also an equitable remedy that requires the court to balance the equities based on the facts and circumstances of each particular case. Murray v. Cadle Co., 257 S.W.3d 291. Subrogation's purpose is to "grant an equitable result between the parties." Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law 10.6, at 26 (5th ed.2007). This court has expressly stated that district courts have full discretion to fashion and grant equitable remedies, Bedore v. Familian, 122 Nev. 5, 11"12 & n. 21, 125 P.3d 1168, 1172 & n. 21 (2006), and we will review a district court's decision granting or denying an equitable remedy for abuse of discretion. See Douglas Disposal Inc. v. Wee Haul, LLC., 123 Nev. 552, 557, 170 P.3d 508, 512 (2007) (reviewing a request for injunctive relief under an abuse of discretion standard); Jacoby v. Jacoby, 100 P.3d 852, 855 (Wyo.2004) (noting that trial courts have broad discretion to grant equitable relief)." "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." " " Nolan v. State, 122 Nev. 363, 376, 132 P.3d 564, 572 (2006) (quoting Crawford v. State, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (quoting Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001))). | Equitable subrogation is an equitable remedy that requires a court to balance the equities based on the facts and circumstances of each particular case. | Does equitable subrogation requires court to balance the equities based on the facts and circumstances of each particular case? | Subrogation - Memo 207 - RM C.docx | ROSS-003297328-ROSS-003297330 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8025 | Szymczak v. Holland Cmty. Hosp., 187 Mich. App. 142 | 92+2752 | We next turn to the fund's argument that the amendment as applied violates theContract Clause, U.S. Const., art. I, " 10; Mich. Const.1963, art. 1, " 10. The fund asserts that any legislative amendment changing the fund's responsibility for reimbursement is an unconstitutional infringement upon existing vested rights. However, the Supreme Court has repeatedly held that benefits and liabilities arising out of the workers' compensation statute do not create rights protected by the Contract Clause. Romein v. General Motors Corp., 436 Mich. 515, 533, 462 N.W.2d 555 (1990); Selk v. Detroit Plastic Products, 419 Mich 1, 12, 345 N.W.2d 184 (1984); Lahti v. Fosterling, 357 Mich. 578, 99 N.W.2d 490 (1959). | Benefits and liabilities arising out of workers' compensation statute do not create rights protected by contract clause of Federal or State Constitutions. U.S.C.A. Const. Art. 1, S 10, cl. 1; M.C.L.A. Const. Art. 1, S 10. | Do the benefits and liabilities arising out of a workers' compensation statute create rights protected by the contract clause of the constitution? | Workers Compensation - Memo #109 ANC.docx | ROSS-003302033-ROSS-003302034 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8026 | Cruzan v. Smith, 41 Ind. 288 | 308+147(3) | The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority before dealing with him. If this is neglected, such person will deal at his peril, and the principal will not be bound by any act which exceeds the particular authority given." | The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority, before dealing with him. If this be neglected, such person will deal at his peril, and the principal will not be bound by an act which exceeds the particular authority given. | Is it the duty of every person who deals with special agent to ascertain extent of agent's authority before dealing with him? | Principal and Agent - Memo 108 - KC_60258.docx | ROSS-003307271 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 8027 | Caterpillar v. Usinor Industeel, 393 F. Supp. 2d 659 | 308+1 | Under Illinois law, the test for agency is whether the alleged principal has the right to control the manner in which work is carried out by the alleged agent, and whether the alleged agent can affect the legal relationships of the principal. Chemtool, Inc. v. Lubrication Technologies, Inc., 148 F.3d 742, 744 (7th Cir.1998). Agency can arise when an agent has either "actual" or "apparent" authority to act on the principal's behalf. Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir.2000). The agent has actual authority when the principal's words or actions would lead a reasonable person in the agent's position to believe that he or she was so authorized. An agent has apparent authority to act on the principal's behalf in relation to a third party when the words or conduct of the principal would lead a reasonable person in the third party's position to believe that the principal had so authorized the agent. at 1065; Restatement (Second) of Agency " 27. Where an agent with such authority contracts with a third party on behalf of a disclosed principal, the agent does not become a party to the contract and is not liable upon it. Restatement (Second) of AgencyYYY " 320; see Joe & Dan Int'l Corp. v. U.S. Fidelity & Guar. Co., 178 Ill.App.3d 741, 747, 127 Ill.Dec. 830, 533 N.E.2d 912, 915 (1988) ("[I]t is obvious that an agent cannot be liable to a third party with whom he has contracted on his principal's behalf" where the agent had apparent authority). The principal, not the agent, is liable in such a situation. See Restatement (Second) of Agency " 144. | Under Illinois law, test for agency is whether alleged principal has right to control manner in which work is carried out by alleged agent, and whether alleged agent can affect legal relationships of principal. | Is the right to control the manner in which work is carried out by the agent a test of ageny? | Principal and Agent - Memo 449 - RK_63569.docx | ROSS-003309388-ROSS-003309389 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8028 | Shamrock Oil & Gas Corp. v. Price, 364 S.W.2d 260 | 13+61 | By the expression "the cause of action or a part thereof accrued" means the right to institute and maintain suit and whenever one person may sue another a cause of action has accrued. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716. | Phrase "cause of action or a part thereof accrued" means right to institute and maintain the suit, and, whenever one person may sue another, a cause of action has accrued. | "What does the phrase ""cause of action or a part thereof accrued"" mean?" | Action - Memo # 164 - C CS.docx | ROSS-003310348-ROSS-003310349 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 8029 | Eckert Int'l v. Gov't of Sovereign Democratic Republic of Fiji, 834 F. Supp. 167 | 221+342 | Fiji fares no better in its attempt to invoke the act of state doctrine. Under that doctrine, courts may not sit in judgment of a sovereign state's public acts performed within that state's boundaries. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (precluding American courts from inquiring into the validity of Cuban expropriation decree); Underhill v. Fernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) (shielding Venezuelan military commander from liability for wrongs inflicted against American citizen during Venezuelan revolution). The doctrine's purpose is to prevent judicial pronouncements that would disrupt this country's foreign relations. Sabbatino, 376 U.S. at 428, 84 S.Ct. at 940; see also Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). | Purpose of act of state doctrine is to prevent judicial pronouncements that would disrupt foreign relations of United States. | Is the act of state doctrine's purpose to prevent judicial pronouncements that would disrupt the foreign relations of the United States? | International Law - Memo # 364 - MC.docx | ROSS-003312473-ROSS-003312474 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 8030 | Thornton v. Dean, 19 S.C. 583 | 219+28 | But be this as it may, if the isolated fact that the note was made "payable at Bridgewater, North Carolina" must, without regard to the actual intention of the parties, be regarded as conclusive evidence that the parties contracted with reference to the North Carolina law, we think there was no error of law in the decree of the Circuit judge. There has been some confusion and conflicting opinions on the subject, but we think it now settled by authority and sustained by reason, that in such cases there is an exception as to the interest on a debt when it is expressly stipulated in the contract. Without incumbering this opinion with a review of the authorities upon the subject, we are content to take the doctrine as laid down in the case of Peck v. Mayo, 14 Vt. 33, and cited in a note in Kent, supra, where, after full discussion, it was decided as follows: (1.) "If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country. (2.) If the contract stipulate generally for interest without fixing the rate, it shall be the rate of interest at the place of payment. (3.) If no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment," &c. | If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country; if the contract stipulate generally for interest without fixing the rate, it should be the rate of interest at the place of payment; if no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment. | Can the parties stipulate to the rate of interest when a contract is entered into in one state to be performed in another? | Bills and Notes - Memo 1296 - RK_66201.docx | ROSS-003319896-ROSS-003319897 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8031 | S. Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17 | 366+1 | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. Welch, supra; Courtney v. Birdsong, 246 Ark. 162, 437 S.W.2d 238. A right of subrogation may also arise from statute. See, e.g., Ark.Code Ann. " 23"89"101(Repl.2004). | A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. | How do subrogation rights arise? | Subrogation - Memo 202 - RM C.docx | ROSS-003324493-ROSS-003324494 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8032 | ACE Am. Ins. Co. v. Sandberg, Phoenix & Von Gontard, PC., 900 F. Supp. 2d 887 | 366+1 | In broad terms, subrogation is the substitution of a person or entity in place of a creditor to whose rights he succeeds in relation to a debt. A subrogated insurer stands in the shoes of the insured, inheriting the rights of the insured and subject to any defenses a third party would have against the insured. 16 Couch on Insurance " 222:5 (3rd edition). A distinction often is made between conventional (or "contractual") subrogation and legal (also referred to as "common law" or "equitable") subrogation. Legal subrogation arises by operation of law, while conventional subrogation arises by convention or the contract of the parties. "Otherwise stated, the insurer's right to subrogation may rest either upon the operation of law, arising upon the fact of payment made by the insurer, or upon the contract between the insurer and the insured expressly providing for subrogation." 16 Couch on Insurance " 222:20 (3rd edition). | In broad terms, "subrogation" is the substitution of a person or entity in place of a creditor to whose rights he succeeds in relation to a debt. | Is subrogation the substitution of a person in place of a creditor to whose rights he succeeds in relation to a debt? | Subrogation - Memo 225 - VG C.docx | ROSS-003326375-ROSS-003326378 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8033 | Hoke ex rel. Reidenbach v. Elizabethtown Area Sch. Dist., 833 A.2d 304 | 1.41E+31 | It is true that a court is not supposed to be a "super" school board and substitute its own judgment for that of the school district; therefore, in the absence of a gross abuse of discretion, courts will not second-guess school policies. Flynn-Scarcella v. Pocono Mountain School District, 745 A.2d 117 (Pa.Cmwlth.2000). However, courts can intervene if schools act outside their statutory authority. Giacomucci. A mandatory preliminary injunction interfering with a school board's discretion is proper where the action is based on a misconception of the law. Save Our School v. Colonial School District, 156 Pa.Cmwlth. 671, 628 A.2d 1210 (1993). Because that is this case, we affirm. | A court is not supposed to be a "super" school board and substitute its own judgment for that of the school district, and therefore, in the absence of a gross abuse of discretion, courts will not second-guess school policies; however, courts can intervene if schools act outside their statutory authority. | "Can a court act as a ""super"" school board and substitute its own judgment for that of the school district?" | Education - Memo # 23 - C - SU.docx | ROSS-003326460-ROSS-003326461 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8034 | Nadeau v. Nadeau, 10 Haw. App. 111 | 307A+717.1 | A request for a continuance based on the unavailability of a crucial witness may properly be denied (1) when the requesting party could have obtained the testimony of the crucial witness in the form of a deposition or (2) when the denial is not prejudicial. 9 Wright and Miller, Federal Practice and Procedure: Civil " 2352 (1971). | Request for continuance based on unavailability of crucial witness may be denied when requesting party could have obtained testimony of crucial witness in form of deposition or when denial is not prejudicial. | Should a request for continuance based on unavailability of crucial witness be denied? | Pretrial Procedure - Memo # 1744 - C - NS.docx | ROSS-003328415-ROSS-003328416 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |
| 8035 | Peck v. Jenness, 48 U.S. 612 | 106+475(1) | It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they date to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of Kennedy v. The Earl of Cassilis, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the Court of Sessions of Scotland, which, on more mature reflection, he dissolved; because it was admitted, if the Court of Chancery could in that way restrain proceedings in an independent foreign tribunal, the Court of Sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum. | Where jurisdiction of court and plaintiff's right to prosecute his suit therein, have once attached, such right cannot be arrested or taken away by proceedings in another court. | "Where a court of the United States has acquired jurisdiction by the commencement of a suit, can the right of the plaintiff to prosecute his suit in that court be taken away by any proceedings in another court?" | 000007.docx | LEGALEASE-00115540-LEGALEASE-00115542 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8036 | Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 458 B.R. 87 | 9+4 | Under New York law, an accounting is a cause of action that seeks "an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due." DiTolla v. Doral Dental IPA of New York, LLC, 469 F.3d 271, 275 (2d Cir.2006) (internal quotations omitted). Its purpose is to "help sort out what assets are involved [and] enable the parties to meaningfully pursue their respective claims concerning their private or business arrangement." Wesselmann v. Int'l. Images, 259 A.D.2d 448, 687 N.Y.S.2d 339 (N.Y.App.Div.1999) (finding that where the parties shared a close working relationship, an accounting is appropriate to determine what assets are involved). It is not necessary to "identify a particular asset or fund of money in the defendant's possession." DiTolla, 469 F.3d at 275 (internal quotations omitted). But it is necessary to establish the "existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." Palazzo v. Palazzo, 121 A.D.2d 261, 503 N.Y.S.2d 381 (N.Y.App.Div.1986); see Akkaya v. Prime Time Transp., Inc., 45 A.D.3d 616, 845 N.Y.S.2d 827, 828 (N.Y.App.Div.2007); 1 N.Y. Jur.2d Accounts and Accounting " 34 (2011) (finding a fiduciary relationship between the parties and wrongdoing by the defendant to be "essential elements of an equity complaint where an accounting is demanded"). | To state claim for accounting under New York law, it is not necessary to identify a particular asset or fund of money in defendant's possession, but it is necessary to establish the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest. | Is it necessary to establish a fiduciary relationship for a claim of accounting? | Account - Memo 4 - VP__1D56KWU30zzK-BiGAhMu_VQCSeDQjo11u.docx | ROSS-000000001-ROSS-000000002 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8037 | Penn Cent. Transp. Co. v. Martin, 170 Ind. App. 519 | 20+13 | In order to establish title by adverse possession, Martin had to show that such possession was (1) actual, (2) visible, (3) open and notorious, (4) exclusive, (5) under claim of ownership, (6) hostile, and (7) continuous for the statutory period. Longabaugh v. Johnson (1975), Ind.App., 321 N.E.2d 865, 868 (transfer denied); Cooper v. Tarpley (1942), 112 Ind.App. 1, 7, 41 N.E.2d 640, 642; Abel v. Love (1924), 81 Ind.App. 328, 336, 143 N.E. 515. In addition, an adverse possessor must show that he paid all taxes falling due on the land during the period he claims to have possessed such land adversely. IC 1971, 32-1-20-1 (Burns Code Ed.). | In order to establish title by adverse possession, adverse claimant must show that such possession was actual, visible, open and notorious, exclusive, under claim of ownership, hostile and continuous for the statutory period and in addition that the adverse claimant paid all taxes falling due on the land during the period he possessed such land adversely. IC 1971, 32-1-20-1. | What requirements need to be fulfilled in order to claim a title under adverse possession? | Adverse Possession - Memo 8 - RM.docx | LEGALEASE-00000088-LEGALEASE-00000090 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 8038 | People v. Mau, 377 Ill. 199 | 181+1 | Common law forgery is defined in Bishop's New Criminal Law, volume 2, paragraph 523, as follows: "Forgery, at the common law, is the false making or materially altering, with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. * * * Reduced to the briefer expression, "Forgery is the fraudulent making of a false writing, which, if genuine, would be apparently of some legal efficacy."' But in paragraph 584 the learned author, under the title "Making in one's own name a false writing to defraud," says: "1. How in England.-Coke says that forgery "is properly taken when the act is done in the name of another person." Yet he also lays down the further doctrine, which seems to rest on ancient adjudication, and which the English commissioners affirmed in their report of 1840, that, as expressed by the latter, "An offender may be guilty of a false making of an instrument although he sign and execute it in his own name, in case it be false in any material part, and calculated to induce another to give credit to it as genuine and authentic, when it is false and deceptive. This happens where one, having conveyed land, afterwards for the purpose of fraud executes an instrument purporting to be a prior conveyance of the same land. Here the instrument is designed to obtain credit by deception, as purporting to have been made at a time earlier than the true time of its execution."' Regina v. Ritson, L.R. 1 Cr.Cas. 200, 1859. This is found in paragraph 585:" In just principle,-this sort of writing is as distinctly false as any falsely purporting to be signed by a third person. In the illustrative case before us, it is in genuine legal form, and it falsely professes to have created a title which ousts the true owner. Thus is covered the whole idea of forgery. Therefore there is no ground for rejecting the doctrine of the English books as it appeared in them when our country was settled. Looking into them for authority we find it | At common law "forgery" is the false making or materially altering with intent to defraud of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. | Does false making fall within the ambit of common law forgery? | Forgery - Memo 12 - RM_18mvExhUFS3Q6umi9Qd8PaL4oSojI3oqA.docx | ROSS-000076035-ROSS-000076038 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 8039 | Rutland v. Georgia Power Co., 286 Ga. App. 14 | 277+3 | Constitutional due process of law includes notice and hearing as a matter of right where one's property interests are involved. [Cit.]" Hamilton v. Edwards, 245 Ga. 810, 811, 267 S.E.2d 246 (1980).The law recognizes that notice can be either express, implied or constructive. Express notice embraces not only knowledge but also that which is communicated by direct information. Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it. Implied notice is that notice which is inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if inquiry were followed up with due diligence, would lead him directly to the knowledge of the main fact. [Cits.]Id. at 811-12, 267 S.E.2d 246. | "Implied notice" is that notice which is inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if inquiry were followed up with due diligence, would lead him directly to the knowledge of the main fact. | What are the kinds of notices recognized by law? | Notice - Memo 3 - VP.docx | ROSS-003284554-ROSS-003284555 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 8040 | E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187 | 25T+141 | Sandvik AB v. Advent International Corp., 220 F.3d 99, 104"05 (3d Cir.2000) (internal citations omitted). The liberal policy "favoring arbitration agreements ... is at bottom a policy guaranteeing the enforcement of private contractual arrangements," id., and under the FAA, "a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute." Bel"Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir.1999) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.") | The liberal policy favoring arbitration agreements is at bottom a policy guaranteeing the enforcement of private contractual arrangements, and under the Federal Arbitration Act (FAA), a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute. 9 U.S.C.A. S 1 et seq. | Do courts have authority to mandate arbitration? | 003739.docx | LEGALEASE-00115738-LEGALEASE-00115739 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 8041 | Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061 | 25T+143 | Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement.See Webb, 89 F.3d at 258; Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754 (5th Cir.1993); Midwest Mechanical Contractors v. Commonwealth Const. Co., 801 F.2d 748, 750 (5th Cir.1986). We review de novo the grant or denial of a motion to compel arbitration. See Webb v. Investacorp, Inc., 89 F.3d 252, 257 (5th Cir.1996). | Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement. | What are the factors to be considered for determining whether the parties agree to arbitrate the dispute? | 003741.docx | LEGALEASE-00115725-LEGALEASE-00115727 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 8042 | Booth v. Hume Pub., 902 F.2d 925 | 25T+111 | The Federal Arbitration Act's provision for confirmation of arbitration awards is similar in nature and purpose to the Georgia proceeding for confirmation of nonjudicial sales. Like the Georgia proceeding, a confirmation of an arbitration award is intended to be summary in nature. Our circuit has noted that "[t]he purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." O.R. Securities v. Professional Planning Associates, 857 F.2d 742, 745"46 (11th Cir.1988) (quoting Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1179 (11th Cir.1981)). See also Diapulse Corp. of America v. Carba, Ltd., 626 F.2d 1108, 1110 (2d Cir.1980) (citing Wilko v. Swan, 346 U.S. 427, 431"32, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953)). | Purpose of Federal Arbitration Act is to relieve congestion in courts and to provide parties with alternative method for dispute resolution that would be speedier and less costly than litigation. 9 U.S.C.A. S 1 et seq. | What is the purpose of the Federal Arbitration Act? | 004150.docx | LEGALEASE-00115643-LEGALEASE-00115644 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8043 | Int'l Longshoremen's Ass'n, AFL-CIO v. W. Gulf Mar. Ass'n, 594 F. Supp. 670 | 25T+251 | While it is true that "parties contracting for arbitration must be content with its informalities,"see Western Canada Steamship Co. Ltd. v. Cia De Nav. San Leonardo Anglo Canadian Shipping Co., Ltd., 105 F.Supp. 452, 453 (S.D.N.Y.1952), the procedures followed cannot be so informal or chaotic that a court called upon to confirm an award has no real assurance that an award in fact was made. The significance of what in fact occurred under the EHP's unique procedure is for the EHP in the first instance to determine with a full appreciation of all the facts and circumstances. | Parties contracting for arbitration must be content with its informalities, but procedures followed cannot be so informal or chaotic that court called upon to confirm award has no real assurance that award in fact was made, and significance of what in fact occurred under unique procedure of arbitration panel was for arbitration panel in the first instance to determine with full appreciation of all facts and circumstances. 9 U.S.C.A. S 10(d). | "When parties opt for arbitration, should they be content with its informalities?" | 004191.docx | LEGALEASE-00115594-LEGALEASE-00115596 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 8044 | Commerce Tr. Co. v. Air 1st Aviation Companies, 366 Ill. App. 3d 135 | 21+18 | Although the court and the parties discussed the Dead"Man's Act issue, the court did not rule on the motion to exclude Robbins' testimony. It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. People v. Flynn, 341 Ill.App.3d 813, 821"22, 275 Ill.Dec. 296, 792 N.E.2d 527, 535 (2003). Plaintiffs did not obtain a ruling on the motion to strike portions of Robbins' affidavit, either during the hearing on the motion to dismiss or during the court's extensive oral ruling on the motion to dismiss some three weeks later. Where, as here, a party moves to strike an affidavit, its failure to obtain a ruling on its motion to strike operates as a waiver of the objections to the affidavit. Woolums v. Huss, 323 Ill.App.3d 628, 633, 257 Ill.Dec. 39, 752 N.E.2d 1219, 1224 (2001). | Where a party moves to strike an affidavit, its failure to obtain a ruling on its motion to strike operates as a waiver of the objections to the affidavit. | "When a party moves to strike an affidavit, will its failure to obtain a ruling on its motion to strike operate as a waiver of the objections to the affidavit?" | 003885.docx | LEGALEASE-00115976-LEGALEASE-00115977 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8045 | Gooch v. United States, 297 U.S. 124 | 361+1318 | The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation. And, while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view. United States v. Hartwell, 6 Wall. 385, 395, 18 L.Ed. 830; Johnson v. Southern Pacific Co., 196 U.S. 1"17, 18, 25 S.Ct. 158, 49 L.Ed. 363; United States v. Bitty, 208 U.S. 393, 402, 28 S.Ct. 396, 52 L.Ed. 543; United States v. Mescall, 215 U.S. 26"31, 32, 30 S.Ct. 19, 54 L.Ed. 77. | That penal statutes are narrowly construed does not require rejection of sense of words best harmonizing with context and end in view. | Are penal statutes construed in that sense of the words which best harmonizes with the context and its end purpose? | 003940.docx | LEGALEASE-00115952-LEGALEASE-00115953 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 8046 | Curtis v. Hollenbeck, 92 Ill.App. 34 | 315+133 | All the circumstances appearing in the evidence tend to show that this was by mutual consent, because Curtis never objected to or questioned it.An actual and continued change of possession by mutual consent of the parties amounts to a surrender of the life estate. | An actual and continued change of possession by mutual consent of the parties amounts to a surrender of a life estate. | Can an actual and continued change of possession by mutual consent of the parties amount to a surrender of the life estate? | Life Estate - Memo 13-JS.docx | ROSS-003297359-ROSS-003297360 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8047 | Stephens Boat Company v. Barge ORR 1, 791 F. Supp. 145 | 16+1(0.5) | Moreover, even if the Barge had embarked upon a short voyage before its completion, the outcome would be the same: the additional equipment that Stephens Boat installed was "necessary to outfit the new vessel for its intended purpose," and, as a consequence, the contract providing for the installation of that equipment was "merely preliminary to [its] use as an instrumentality of commerce and navigation." B & B Salvage & Rigging, Inc. v. M/V NORTH BEND, 548 F.Supp. 123, 124 (E.D.Mo.1982). A contract that falls outside the admiralty jurisdiction of the United States cannot give rise to a maritime lien. See E.S. Binnings, Inc. v. M/V SAUDI RIYADH, 815 F.2d 660 (11th Cir.1987). Thus, Stephens Boat's only right against the barge is a state-created lien of a maritime nature under La.Civ.Code art. 3237, rather than a maritime lien. | Contract that falls outside admiralty jurisdiction of United States cannot give rise to maritime lien. | "Can a contract, that falls outside the admiralty jurisdiction of the United States, give rise to a maritime lien?" | Admiralty Law - Memo 10 - JS.docx | ROSS-003312510-ROSS-003312512 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8048 | Gateway Western Railway Company v. American River Transportation Company, 887 F. Supp. 201 | 82+137 | In admiralty, the maxim for computing damages in a collision case is restitutio in integrumor restoration to the previous condition.The Baltimore, 75 U.S. (8 Wall) 377, 385, 19 L.Ed. 463 (1869). In the case of two vessels colliding, if a vessel is a total loss, the standard measure of damages is the market value of the ship plus interest and freight pending her salvage value. THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, " 13"5 (1987). | In case of two vessels colliding, if vessel is total loss, standard measure of damages is market value of ship plus interest in freight pending salvage value. | How are damages measured when two vessels collide? | Admiralty Law - Memo 11 - JS.docx | LEGALEASE-00001472-LEGALEASE-00001474 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8049 | Signal International LLC v. Miss. DOT, 579 F.3d 478 | 219+39(2.25) | MDOT claims that the district court should have awarded it prejudgment interest. The district court did not mention prejudgment interest in its findings of fact and conclusions of law or in its judgment. "[I]n maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198, 204 (5th Cir. 1995); see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196, 115 S. Ct. 2091, 132 L. Ed. 2d 148 (1995) ("By compensating for the loss of use of money due as damages from the time the claim accrues until judgment is entered, an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred." (quotation marks and citations omitted)). We review for clear error the district court's factual determination of the existence of peculiar circumstances, while we review for abuse of discretion the district court's exercise of the discretion to deny prejudgment interest that accompanies the existence of any peculiar circumstance. Corpus Christi Oil & Gas, 71 F.3d at 204. In Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724, 730 (5th Cir. 1980), we held that "[i]f the trial court does not make any mention of prejudgment interest in its judgment or its findings of fact and conclusions of law, then it is . . . difficult to infer that the trial court has found peculiar circumstances and decided to exercise the discretion that those circumstances create." We, nonetheless, "may make that inference, and [are] especially likely to do so when the record clearly discloses peculiar circumstances." Id. If the record discloses no peculiar circumstances, "we have reversed the judgment of the district court insofar as it fails to award prejudgment interest" and either modify the | In maritime cases, award of prejudgment interest is the rule, rather than the exception, and trial court has discretion to deny prejudgment interest only where peculiar circumstances would make award inequitable. | Can a court deny prejudgment interest in admiralty case? | 004114.docx | LEGALEASE-00116215-LEGALEASE-00116217 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8050 | Scherk v. Alberto-Culver Co., 417 U.S. 506 | 25T+251 | An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a "parochial concept that all disputes must be resolved under our laws and in our courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." Id., at 9, 92 S.Ct., at 1912. | Agreement to arbitrate before specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only situs of suit but also procedure to be used in resolving dispute. | Is arbitration clause a specialized kind of forum selection clause? | 004205.docx | LEGALEASE-00116274-LEGALEASE-00116276 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 8051 | Ne. Concerned Citizens v. City of Hickory, 143 N.C. App. 272 | 118A+300 | A zoning ordinance may be challenged by an action for declaratory judgment, Taylor v. City of Raleigh, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976), or by writ of certiorari, N.C.G.S. " 160A-388(e) (1999).A party seeking to challenge a zoning ordinance, however, must have standing to bring such a challenge. Standing exists to challenge a zoning ordinance by a declaratory judgment action when the plaintiff "has a specific personal and legal interest in the subject matter affected by the zoning ordinance and ... is directly and adversely affected thereby." Taylor, 290 N.C. at 620, 227 S.E.2d at 583.Similarly, standing exists to challenge a zoning ordinance by writ of certiorari when the plaintiff is an "aggrieved party," N.C.G.S. " 160A-388(e), i.e., the plaintiff will suffer damages "distinct from the rest of the community" as a result of the zoning ordinance, Heery v. Zoning Board of Adjustment, 61 N.C.App. 612, 614, 300 S.E.2d 869, 870 (1983). Further, when a plaintiff seeks to challenge a zoning ordinance by a writ of certiorari, the plaintiff must allege special damages in its complaint. Id.; Village Creek Prop. Owners' Ass'n, Inc. v. Town of Edenton, 135 N.C.App. 482, 485-86, 520 S.E.2d 793, 795-96 (1999). It thus follows a corporation has standing to challenge a zoning ordinance in a declaratory judgment action if the corporation has a specific legal interest directly and adversely affected by the zoning ordinance; and a corporation has standing to challenge a zoning ordinance by writ of certiorari if the corporation is an "aggrieved party" under section 160A-388(e). Additionally, a corporation has standing to challenge a zoning ordinance in a declaratory judgment action if all of the members/shareholders of the corporation have a specific legal interest directly and adversely affected by the zoning ordinance; and a corporation has standing to challenge a zoning ordinance by writ of certiorari if all of the members/shareholders of the corporation are | Corporation has standing to challenge zoning ordinance in declaratory judgment action if corporation has a specific legal interest directly and adversely affected by zoning ordinance, and corporation has standing to challenge zoning ordinance by writ of certiorari if corporation is an aggrieved party. G.S. S 160A-388(e). | Can a zoning ordinance be challenged by certiorari? | Zoning and Planning - Memo 22 - JS.docx | LEGALEASE-00001863-LEGALEASE-00001865 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 8052 | United States v. Bajakajian, 524 U.S. 321 | 174+1.3 | The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. See Austin v. United States, 509 U.S., at 622"623, 113 S.Ct., at 2812 (noting Court of Appeals' statement that " "the government is exacting too high a penalty in relation to the offense committed" "); Alexander v. United States, 509 U.S. 544, 559, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993) ("It is in the light of the extensive criminal activities which petitioner apparently conducted ... that the question whether the forfeiture was "excessive" must be considered"). Until today, however, we have not articulated a standard for determining whether a punitive forfeiture is constitutionally excessive. We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.The text and history of the Excessive Fines Clause demonstrate the centrality of proportionality to the excessiveness inquiry; nonetheless, they provide little guidance as to how disproportional a punitive forfeiture must be to the gravity of an offense in order to be "excessive." Excessive means surpassing the usual, the proper, or a normal measure of proportion. See 1 N. Webster, American Dictionary of the English Language (1828) (defining excessive as "beyond the common measure or proportion"); S. Johnson, A Dictionary of the English Language 680 (4th ed. 1773) ("[b]eyond the common proportion"). The constitutional question that we address, however, is just how proportional to a criminal offense a fine must be, and the text of the Excessive Fines Clause does not answer it. | A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. U.S.C.A. Const.Amend. 8. | Does a punitive forfeiture violate the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense under the Eighth Amendment? | Fines - Memo 3 - RK.docx | ROSS-003284679-ROSS-003284681 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 8053 | In re Cobham, 551 B.R. 181 | 51+3376(5) | Defalcation" is an intentional breach of trust and misappropriation of funds. Bullock v. BankChampaign, N.A., """ U.S. """", 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). The required "intent" element may be shown by either knowledge of, or gross recklessness in regard to, the improper nature of the relevant fiduciary behavior. Id. at 1759"60. Defalcation carries a different meaning than the other behaviors listed in " 523(a)(4): embezzlement, larceny, and fraud. See generally 11 U.S.C. " 523(a)(4). Typically, embezzlement requires conversion, larceny requires carrying away another's property, and fraud requires a false statement. Bullock, 133 S.Ct. at 1760. By contrast, "defalcation" "can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." Id. Rather, "defalcation" requires only a "nonfraudulent breach[ ] of fiduciary duty." Id. | "Defalcation" differs from the other terms in dischargeability exception in that defalcation, unlike embezzlement, larceny or fraud, can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity; "defalcation" requires only a nonfraudulent breach of fiduciary duty. 11 U.S.C.A. S 523(a)(4). | Does defalcation encompass a breach of fiduciary obligation? | 004302.docx | LEGALEASE-00116444-LEGALEASE-00116445 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8054 | In re Cobham, 551 B.R. 181 | 51+3376(5) | "Defalcation" is an intentional breach of trust and misappropriation of funds. Bullock v. BankChampaign, N.A., """ U.S. """", 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). The required "intent" element may be shown by either knowledge of, or gross recklessness in regard to, the improper nature of the relevant fiduciary behavior. Id. at 1759"60. Defalcation carries a different meaning than the other behaviors listed in " 523(a)(4): embezzlement, larceny, and fraud. See generally 11 U.S.C. " 523(a)(4). Typically, embezzlement requires conversion, larceny requires carrying away another's property, and fraud requires a false statement. Bullock, 133 S.Ct. at 1760. By contrast, "defalcation" "can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." Id. Rather, "defalcation" requires only a "nonfraudulent breach[ ] of fiduciary duty." Id. | "Defalcation" differs from the other terms in dischargeability exception in that defalcation, unlike embezzlement, larceny or fraud, can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity; "defalcation" requires only a nonfraudulent breach of fiduciary duty. 11 U.S.C.A. S 523(a)(4). | Can defalcation be used to refer to nonfraudulent breaches of fiduciary duty? | 004636.docx | LEGALEASE-00116745-LEGALEASE-00116746 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8055 | In re Belfry, 862 F.2d 661 | 51+3375 | The car was to be delivered on April 15, 1981. It was not. Belfry had already spent the $19,500.00 for purposes largely unrelated to restoring the BMW. As an initial matter, it seems fairly well settled that absent Cardozo's alleged "understanding," Belfry's use of the funds would not be embezzlement. See In re Kalmar, 18 B.R. 343, 345 (Bankr.E.D.Pa.1982). Payment of a contract price in exchange for the recipient to undertake an obligation of future performance transfers ownership of the money to the recipient. See In re Schultz, 46 B.R. at 889"90. One cannot embezzle one's own property. See id | Creditor's "understanding" that debtor would use money to restore car was insufficient to establish embezzlement exception to discharge for debt arising from debtor's use of money for purposes unrelated to the restoration; payment of contract price in exchange for recipient to undertake obligation of future performance transfers ownership of money to recipient, and debtor's obligation to deliver restored car could be fully performed without regard to how debtor used the money. Bankr.Code, 11 U.S.C.A. S 525(a)(4). | Can a person embezzle from himself or his own property? | 004321.docx | LEGALEASE-00116473-LEGALEASE-00116474 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 8056 | Stephentown Concerned Citizens v. Herrick, 223 A.D.2d 862 | 1.49E+17 | Turning to the merits, we agree with Supreme Court that Troy Sand failed to submit a timely and sufficient renewal application so as to permit continued mining operations. Under State Administrative Procedure Act " 401(2), a licensee's existing license does not expire as long as the licensee "has made timely and sufficient application" for renewal. DEC's regulations track the statute (see, 6 NYCRR 621.13[i] ) and specifically provide that applications to renew permits must be submitted no less than 30 days prior to the expiration of the existing permit (6 NYCRR 621.13[a] ). The regulations also state that "[t]hese deadlines apply unless otherwise stated as a special condition of the permit" (6 NYCRR 621.13[a] ). It is true that DEC may treat a renewal or modification request as a new application where the application is not timely or sufficient (6 NYCRR 621.13[e][4] ) or even as a renewal request (see, Matter of Scenic Hudson v. Jorling, 183 A.D.2d 258, 262, 589 N.Y.S.2d 700). However, there is no authority for the proposition that an applicant making such an untimely request may continue its operations in the interim. Neither State Administrative Procedure Act " 401(2) nor DEC's own regulations support such a proposition. | It is within discretion of Department of Environmental Conservation (DEC) to treat a late permit application as either a new application, or as a renewal request of a previously authorized action. N.Y.Comp.Codes R. & Regs. title 6, S 621.13(e)(4). | Can the DEC treat an untimely renewal or modification application for a permit as a new application? | Environmental Law - Memo 35 - AKA.doc | LEGALEASE-00002130-LEGALEASE-00002131 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8057 | Murray v. Bateman, 315 Mass. 113 | 192+1 | The master states that it is difficult to ascertain the value of the good will, and he made two attempts to do so. The master reports that, in view of the conditions existing in the shipbuilding industry and conditions that might possibly exist for the next five years, he did not deem it unreasonable to find that the school would continue for two years, that the fees collected would amount to $16,000 and the expenses to $1,000, leaving the future net earnings as $15,000, and that the plaintiff's share would amount to $3,750. What the master started to ascertain was the value of the good will, but what he was actually endeavoring to ascertain was the amount of the anticipatory profits that the plaintiff would have received if the school continued for two years and the plaintiff had remained as a partner during that period. The value of the good will of a going business depends to some extent upon the earnings that the business has made. Barden Cream & Milk Co. v. Mooney, 305 Mass. 545, 26 N.E.2d 324; Commissioner of Corporations and Taxation v. Ford Motor Co., 308 Mass. 558, 33 N.E.2d 318, 139 A.L.R. 936, but the value of the good will is not the sum total of the profits that might be obtained in the future. Good will is generally understood to mean the advantage that accrues to a business on account of its name, location and reputation, which tends to enable it to retain the patronage of its old customers. Moore v. Rawson, 199 Mass. 493, 85 N.E. 586; Gaines v. Hake, 247 Mass. 88, 141 N.E. 509; Ruggiero v. Salomone, 248 Mass. 237, 142 N.E. 764; Martin v. Jablonski, 253 Mass. 451, 149 N.E. 156 | "Good will" is generally understood to mean the advantages that accrue to a business on account of its name, location, and reputation, which tends to enable it to retain the patronage of its old customers. | "Is goodwill an advantage on the business as a result of name, location and reputation?" | 004402.docx | LEGALEASE-00116570-LEGALEASE-00116572 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 8058 | State v. Hatton, 985 So. 2d 709 | 92+966 | Defendant raised the issue of the constitutionality of La. R.S. 14:81.3 before the trial court in a Motion to Quash. Raising the constitutional issue in a motion has been deemed sufficient to satisfy the purpose of the three step analysis required to properly assert a constitutional challenge. See Vallo v. Gayle Oil Co., 94"1238, p. 8 (La.11/30/94), 646 So.2d 859, 865. Moreover, we recently recognized that a motion raising the constitutionality and the grounds therefor are sufficient to satisfy the three step analysis for raising a constitutional challenge. State v. Granger, 07"2285, p. 3 (La.5/21/08), 982 So.2d 779 (finding that defendant's Motion to Reconsider was a proper procedural device for challenging the constitutionality of a statute). Therefore, defendant satisfied the first two steps of the analysis by setting forth the constitutional challenge in a pleading, the Motion to Quash, before the trial court. | Defendant satisfied the first two steps of the analysis for challenging the constitutionality of a statute, by setting forth the constitutional challenge in a pleading, a motion to quash, before the trial court. | Is a motion to quash the proper method to challenge the constitutionality of a statute? | 004455.docx | LEGALEASE-00116582-LEGALEASE-00116583 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8059 | Metro. Printing Co. v. O'Neill, 148 A.D. 885 | 302+34(4) | Irrespective of the question as to whether the denials in the answer raise an issue, I am clearly of the opinion that the separate defense pleaded constitutes, if true, a good defense. Pleadings are to be liberally construed, to the end that the court, upon a trial, may get at the merits of a controversy and do justice to the parties. Formerly it was the rule to construe a doubtful pleading most strongly against the pleader; but this rule no longer prevails. | The rule that a doubtful pleading should be construed most strongly against the pleader no longer prevails; but pleadings are to be liberally construed, to the end that the court, upon a trial, may get at the merits of a controversy and do justice to the parties. | Should pleadings be liberally construed? | 004462.docx | LEGALEASE-00116614-LEGALEASE-00116615 | Order, SA | 0.43 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8060 | Cty. Council of Prince George's Cty. v. Brandywine Enterprises, 350 Md. 339 | 414+1006 | The Regional District Act, Maryland Code (1957, 1997 Repl.Vol., 1997 Supp.), Art. 28, "" 1-101 through 8-127, is the exclusive source of zoning authority in those areas of Prince George's County which it covers. Prince George's County v. Maryland-Nat'l Capital Park and Planning Comm'n, 269 Md. 202, 225-236, 306 A.2d 223, 226, cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973). See also Montgomery County v. Revere, 341 Md. 366, 383-384, 671 A.2d 1, 9-10 (1996); Mossburg v. Montgomery County, 329 Md. 494, 502, 620 A.2d 886, 890 (1993).The Regional District Act authorizes the County Council to sit as a district council in zoning matters, and, when it does so, it is acting as an administrative agency, Montgomery County v. Revere, supra, 341 Md. at 384, 671 A.2d at 10. In Prince George's County, pursuant to " 8-110(a) of the Act, a zoning hearing examiner initially decides applications for special exceptions. Section 8-110(a)(3) goes on to provide that "in Prince George's County the district council shall provide for the appeal of decisions of the zoning hearing examiner in special exception and variance cases to the district council." | The Regional District Act is the exclusive source of zoning authority in those areas of county which it covers. Code 1957, Art. 28, SS 1-101 to 8-127. | Is Regional District Act considered to be the exclusive source of zoning authority? | 004476.docx | LEGALEASE-00116680-LEGALEASE-00116681 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 8061 | Citizens Utilities Co. v. Illinois Pollution Control Bd., 9 Ill. App. 3d 158 | 1.49E+15 | Variance proceedings are governed by Title IX of the Environmental Protection Act (Ill.Rev.Stat.1971, ch. 111 1/2, pars. 1035-1038). Section 36(a) provides that in granting a variance the Board may impose "such conditions as the policies of this Act may require. * * * " We believe that the plain meaning of this language is that conditions only attach to the grant of the variance.Thus if a petitioner considers the conditions too onerous and therefore decides not to proceed with the variance, the conditions may not be enforced. Section 37 provides that, if a haring is held on the petition for a variance, sections 32 and 33(a) under the enforcement title of the Act govern the procedure for the hearing. We do not believe that this reference to sections 32 and 33(a) for procedural guidelines incorporates the right to issue unconditionally binding orders in variance proceedings. After a proper hearing, section 33(a) authorizes the Board to issue and enter such final order or make such final determination as it shall deem appropriate under the circumstances.Consistent with section 36, any such order rendered at the conclusion of a variance hearing allowing the petition could only impose conditions on the grant of the variance, which would not be binding until the petitioner accepts the variance upon the terms imposed. | Under statute providing that Pollution Control Board may, in granting variance, impose such conditions as policies of Environmental Protection Act might require, conditions only attach to grant of variance, and are not binding until applicant accepts variance upon terms imposed. S.H.A. ch. 1111/212, SS 1001 et seq., 1031, 1032, 1033(a), 1036, 1036(a), 1037. | Can conditions be imposed by the board for granting a variance under the Environment Protection Act? | 004558.docx | LEGALEASE-00116529-LEGALEASE-00116530 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 8062 | Michigan Dep't of Envtl. Quality v. U.S. E.P.A., 318 F.3d 705 | 1.49E+17 | We hold that the Board's interpretation and application of " 124.19(a) in this case was not an abuse of discretion. Instead of explaining to the Board why the Region's detailed responses to its comments were clearly erroneous, Michigan simply repackaged its comments and the EPA's response as unmediated appendices to its petition to the Board. This does not satisfy the burden of showing entitlement to review. Although the EPA "has the discretion to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it," Spitzer, 173 F.3d at 415 n. 3, its decision not to relax or modify its rule in this case was not an abuse of discretion. Nor can we agree with petitioners' contention that the Board's rule that the unmediated resubmission of comments and subsequent responses will not satisfy " 123.19(a) is "hidden." The rule has been stated and restated throughout Board decisions. As a result, we will not review on the merits the petitioners' challenge to the EPA's authority to issue the permit, both as a matter of final permit action or as a matter of interlocutory procedural action reviewable only upon review of the final agency action under " 1369(b)(1)(F). See 5 U.S.C. " 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). | The Environmental Protection Agency (EPA) has the discretion to relax or modify its procedural rules, adopted for the orderly transaction of business before it, when in a given case the ends of justice require it. 40 C.F.R. S 124.19. | Can an agency relax or modify its procedural rules in order to meet the ends of justice? | 004560.docx | LEGALEASE-00116531-LEGALEASE-00116533 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 8063 | State v. Lamy, 158 N.H. 511 | 203+503 | Eighteen states, including New Hampshire, retain some form of the born alive rule. Under the rule as it survives today, "If the child is born alive, despite an attack upon it and an injury to the mother while it was in the mother's womb, and the child thereafter dies as a result of the prenatal injury, a homicide has been committed." 2 C. Torcia, Wharton's Criminal Law " 116, at 140 (15th ed.1994). | Under the "born alive rule," if the child is born alive, despite an attack upon it and an injury to the mother while it was in the mother's womb, and the child thereafter dies as a result of the prenatal injury, a homicide has been committed. | "Is it considered a homicide when a child, who was born alive, dies from injuries inflicted before birth?" | 004574.docx | LEGALEASE-00116565-LEGALEASE-00116566 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8064 | Tire Jockey Serv. v. Com., Dep't of Envtl. Prot., 591 Pa. 73 | 1.49E+19 | The matter for decision is not simple. Before proceeding to the legal principles at issue, it is valuable to note the rudiments of environmental administration in the Commonwealth. The administrative structure that governs environmental regulation in Pennsylvania consists of three independent, yet inter-related branches: the EQB, the DEP and the EHB. The EQB in essence is the administrative legislative branch, which is responsible for "developing a master environmental plan for the Commonwealth," and formulating, adopting and promulgating rules and regulations for the DEP. 71 P.S. " 510"20. The EQB consists of various representatives from Commonwealth agencies, with the secretary of the DEP acting as chairperson. 71 P.S. " 180"1. Concerning the SWMA, the EQB has the power and duty to "adopt the rules, regulations, criteria and standards of the [DEP] to accomplish the purposes and to carry out the provisions" of the SWMA. 35 P.S. " 6018.105. The DEP is the "executive branch, assigned various duties to implement and enforce environmental statutes and regulations." N. Am. Refractories, 791 A.2d at 462. See, e.g., 35 P.S. " 6018.104 (powers and duties of DEP under SWMA). The EHB is the administrative judicial branch, which has the power and duty to "hold hearings and issue adjudications ... on orders, permits, licenses or decisions of the [DEP]." 35 P.S. " 7514(a). See also 35 P.S. 6018.108 (powers and duties of EHB under SWMA). | The Environmental Hearing Board is the judicial branch of the administrative structure that governs environmental regulation in Commonwealth; it has the power and duty to hold hearings and issue adjudications on orders, permits, licenses or decisionsof the Department of Environmental Protection. 35 P.S. S 7514(a). | "Is the Environmental Hearing Board (EHB) an administrative, judicial branch that adjudicates on the orders of the Department of Environmental Protection (DEP)?" | Environmental Law - Memo 45 - AKA.doc | LEGALEASE-00002499-LEGALEASE-00002500 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 8065 | Pivar v. Graduate Sch. of Figurative Art of the New York Acad. of Art, 290 A.D.2d 212 | 50+1 | A "[b]ailment does not necessarily and always, though generally, depend upon a contractual relation. It is the element of lawful possession, however created, and duty to account or the thing as the property of another that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not." (Foulke v. New York Consolicated R.R. Co., 228 N.Y. 269, 275 [127 N.E. 237].) A bailment "may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty or ability of the recipient to effect the purpose contemplated by the absolute owner." (Phelps v. People, 72 N.Y. 334, 358.) A bailment "may be created by operation of law. It is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. It makes no difference whether the thing be intrusted to a person by the owner or by another. Taking lawful possession without present intent to appropriate creates a bailment". | A bailment may be created by operation of law; it is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. | Does lawful possession of property create a bailment? | 004621.docx | LEGALEASE-00116824-LEGALEASE-00116825 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8066 | Christensen v. Hoover, 643 P.2d 525 | 50+12 | The very nature of a bailment relationship implies a confidence and trust involving the exercise of some degree of care to protect the subject of the bailment from loss, damage, or destruction. See, e.g., Johnson v. Lane, 524 S.W.2d 361 (Tex.Civ.App.1975); Gargano v. Venezio, 38 N.J.Super. 127, 118 A.2d 78 (1955); Kegan v. Park Bank of St. Joseph, 320 Mo. 623, 8 S.W.2d 858 (1928). In our view, even a gratuitous bailee must exercise reasonable care to protect the bailor's property, i.e., that which a person of common prudence would use under the circumstances. Accord, Koennecke v. Waxwing Cedar Products, Ltd., 273 Or. 639, 543 P.2d 669 (1975); Kegan v. Park Bank of St. Joseph, supra. Consequently, where a landlord has assumed control and possession of a tenant's personal property after a writ of restitution has been executed, the landlord is liable to the tenant for ordinary negligence for failing to use reasonable care, considering all the circumstances, to prevent damage to the tenant's property. | Even a gratuitous bailee must exercise reasonable care to protect bailor's property, i.e., that which a person of common prudence would use under the circumstances. | Does a gratuitous bailee have any duty to protect the bailors property? | Bailment - Memo 25 - ANG.docx | ROSS-003325829-ROSS-003325830 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8067 | Landon v. Kroll Lab. Specialists, 91 A.D.3d 79 | 272+321 | In this regard "[p]rofessionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties" (Sommer v. Federal Signal Corp., 79 N.Y.2d at 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365; see Glanzer v. Shepard, 233 N.Y. 236, 239, 135 N.E. 275; Rich v. New York Cent. & Hudson Riv. R.R. Co., 87 N.Y. at 399). "In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care" (Sommer v. Federal Signal Corp., 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365; see Bullmore v. Ernst & Young Cayman Is., 45 A.D.3d 461, 463, 846. | Professionals, common carriers, and bailees may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties. | Is a bailee subject to tort liability for his failure to exercise reasonable care? | Bailment - Memo 42 - RK.docx | ROSS-003315536-ROSS-003315537 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8068 | State v. Matthews, 143 Tenn. 463 | 146+1 | We are of the opinion that said language does not constitute the charge of larceny. We think it was intended as a part of the charge of embezzlement, but was unnecessary to constitute said charge, and must therefore be treated as mere surplusage. The offense of embezzlement is purely statutory. The object of the statute was to meet and obviate the defects in the law of larceny, and to protect employers against the frauds of those in whom confidence is reposed, and when the element of confidence does not exist, there can be no such thing as embezzlement. If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him.A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass. Trespass is essential to constitute the offense of larceny. 3 Shannon's Tennessee Cases, 754; Johnson v. State, 9 Baxt. 281. | If money or property goes into the possession of an employer before it goes into the possession of his employee, the employee's criminal taking and appropriation of it does not constitute embezzlement, but larceny, "embezzlement" being the fraudulent appropriation of such property as the statute makes the subject of embezzlement under the circumstances in the statute by the person embezzling to the injury of the owner, the money or property coming directly from a third person into the hands of the employee in the course of his employment and being appropriated by him, while trespass, which is impossible where a servant takes his master's property from a third person, is essential to constitute the offense of larceny. | Must embezzled property be entrusted to the accused directly by the master? | Embezzlement - Memo 36 - RK.docx | LEGALEASE-00002977-LEGALEASE-00002978 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 8069 | Wark v. United States, 269 F.3d 1185 | 272+234 | The Warks also argue that the Forest Service is responsible under the assumed duty (or good samaritan) doctrine because it entered into the Forest Road Agreement with Dolores County. Under the assumed duty doctrine, "a party may assume duties of care by voluntarily undertaking to render a service."Jefferson County Sch. Dist. R-1 v. Justus, 725 P.2d 767, 770 (Colo. 1987). When a party assumes duties, that party is liable for physical harm resulting from the failure to exercise reasonable care. Id. (citing Resatement (Second) of Torts " 323 (1965)). | Under the assumed duty doctrine, or good Samaritan, doctrine, a party may assume duties of care to support a negligence action by voluntarily undertaking to render a service; when a party assumes duties, that party is liable for physical harm resulting from the failure to exercise reasonable care. | "Under the assumed duty doctrine, when does a person become liable for negligence?" | 005147.docx | LEGALEASE-00117015-LEGALEASE-00117016 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 8070 | Chorpenning v. United States, 11 Ct. Cl. 625 | 25T+112 | A submission is a contract, by which parties agree to refer matters which are in dispute, difference, or doubt between them, to be finally decided by the award of judges named by the parties, and called arbitrators. (Morse on Arbitration, 36.) And in order to clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy.(Gordon v. United States, 7 Wall., 188.) An arbitrament and award which concludes one party only is certainly an anomaly in the law. (Ibid.) | To clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by his decision of the matter in controversy. An arbitrament which concludes only one of the parties would be an anomaly in the law. | Does a person get authority of an arbitrator without mutual agreement between the parties? | 005221.docx | LEGALEASE-00116882-LEGALEASE-00116883 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 8071 | Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362 | 25T+112 | The Supreme Court has stated that the Federal Arbitration Act (FAA) "is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But it is also true that "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). "Arbitration under the Act is a matter of consent, not coercion." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (emphasis added). Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. | The Federal Arbitration Act's (FAA) proarbitration policy does not operate without regard to the wishes of the contracting parties. 9 U.S.C.A. S 1 et seq. | Does the proarbitration policy of Federal Arbitration Act (FAA) operate against the wishes of the contracting parties? | Alternative Dispute Resolution - Memo 116 - JS.docx | ROSS-003283713-ROSS-003283715 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8072 | Birdsboro & Birdsboro Mun. Auth. v. Dep't of Envtl. Prot., 795 A.2d 444 | 1.49E+19 | Petitioners' first argue that Mr. Getty's testimony regarding water loss in Phase 2 went uncontested and that therefore the EHB erred by not finding as fact that water loss will occur. Additionally, petitioners argue that the EHB erred by not adequately explaining why Mr. Getty's testimony was not credited over Mr. Peffer's. It is axiomatic that "[q]uestions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact finding agency, and are not usually matters for a reviewing court." Pennsylvania Game Comm'n v. Dep't of Envtl. Res., et al., 97 Pa.Cmwlth. 78, 509 A.2d 877, 880 (1986). Petitioners fail to recognize that we do not accept invitations to reevaluate evidence and credibility determinations. Even assuming arguendo that Mr. Getty's testimony was not contradicted, the EHB is not under an obligation to accept it.7 See Feldbauer v. Dep't of Pub. Welfare, 106 Pa.Cmwlth. 87, 525 A.2d 837, 839 (1987). Additionally, the EHB need not provide specific reasons for finding one witness credible over another. See Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.), 666 A.2d 383, 385 (Pa.Cmwlth.1995) | Environmental Hearing Board (EHB) need not provide specific reasons for finding one witness credible over another. | Does the Environmental Hearing Board (EHB) need to provide specific reasons for finding one witness credible over the other? | 005016.docx | LEGALEASE-00117208-LEGALEASE-00117209 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8073 | Sunoco v. Dep't of Envtl. Prot., 865 A.2d 960 | 1.49E+19 | As the Department points out, the EHB found Kulp to be a credible witness and accepted his explanation of the development and theory behind the Department's selection of the 50% reduction figure. It is within the sole province of the EHB, as fact finder, to make all determinations regarding matters of credibility and evidentiary weight. Birdsboro and Birdsboro Mun. Auth. v. Department of Environmental Protection, 795 A.2d 444 (Pa.Cmwlth.2002). Further, this Court does not "accept invitations to reevaluate evidence and credibility determinations." Id. at 447. "Additionally, the EHB need not provide specific reasons for finding one witness credible over another." Id. at 447"448. | It is within the sole province of the Environmental Hearing Board, as fact finder, to make all determinations regarding matters of credibility and evidentiary weight. | "Does the Environmental Hearing Board (EHB), as the fact finder, make all the determinations of credibility and evidentiary weight?" | Environmental Law - Memo 64 - RK.docx | ROSS-003284077-ROSS-003284078 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8074 | State v. Miniken, 100 Wash. App. 925 | 350H+228 | "When an offender has completed the requirements of the sentence, the secretary of the department or the secretary's designee shall notify the sentencing court, which shall discharge the offender and provide the offender with a certificate of discharge." RCW 9.94A.220(1). A certificate of discharge has the effect of restoring all civil rights lost by operation of law as the result of conviction as well as terminating the sentencing court's jurisdiction to enforce the requirements of the sentence. RCW 9.94A.220(3); State v. Johnson, 54 Wash.App. 489, 491, 774 P.2d 526 (1989). | Certificate of discharge issued after convicted offender has completed the requirements of his sentence has the effect of restoring all civil rights lost by operation of law as the result of the conviction, as well as terminating the sentencing court's jurisdiction to enforce the requirements of the sentence. West's RCWA 9.94A.220(1, 3). | What are the effects of a certificate of discharge? | 000394.docx | LEGALEASE-00117424-LEGALEASE-00117425 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 8075 | Barnett v. Lewis, 194 Ga. 203 | 233+660 | The amended petition seeks injunctive relief and cancellation of a deed. Both constitute disputes of the title of defendants Lewis and George. The entire amended petition immediately encounters the long-established and well-recognized principle of law found in the Code, " 61"107, which declares: "The tenant may not dispute his landlord's title not attorn to another claimant while in possession." This rule estops the tenant from disputing his landlord's title so long as he is in possession. It does not prevent him from attacking the title of his former landlord, but requires as a prerequisite to such attack that he surrender possession. Newton v. Roe &Beckom, 33 Ga. 163(3). In Ronaldson v. Tabor, 43 Ga. 230, it was said: "No principle of the law is of more solid and comprehensive justice than this"none which invokes a stricter and more rigid enforcement at the hands of Courts. The tenant, or his assignee, upon every principle of justice and law, must not attorn to another nor set up in himself a title in conflict with his landlord's while in possession of his property." The petition contains an admission by the plaintiff that in 1940 he recognized defendants Lewis and George as the owners of the land involved; and that he executed to r which he entered, unless his entry was induced by the fraud of the landlord, or by a mistake in the execution of the lease, or unless the lease was made for purposes in violation of law. The fact that the lease is void, or that the lessor had no title whatever, or that the title was really in the lessee, and he was ignorant of the fact when the lease was made, will not change the rule." Under the rule just quoted the tenant may attack his landlord's title while still in possession, if he was induced to enter as tenant by fraud of the landlord, or by a mistake in the execution of the lease, or if the lease was made for a purpose in violation of law. The amended petition here shows no mistake in the executioin of the rent note, no purpose in making the note which was a violation of | Admission by plaintiff in petition that he executed a rent note to defendants for realty when plaintiff was in possession of realty, after defendants purchased realty at sale held under execution, and that plaintiff had since remained in possession, established conclusively the relationship of "landlord and tenant," so as to "estop" plaintiff from asserting title without having surrendered possession. Code, S 61-107. | Can a tenant dispute the title of his landlord? | 005092.docx | LEGALEASE-00117347-LEGALEASE-00117349 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 8076 | State v. Akers, 328 S.W.2d 31 | 207+1 | The defendant asserts that the court erred in failing to instruct the jury on "common assault and molestation", apparently meaning the crimes described in Sections 559.220 and 563.160 RSMo 1949, V.A.M.S., respectively. We have previously stated all the pertinent evidence. Section 556.220 authorizes a conviction in any degree of an offense inferior to that charged, and section 556.230 authorizes a conviction of any offense which is necessarily included in that charged against the defendant. The offenses of common assault under section 559.220 and molesting a minor with immoral intent under section 563.160 are not lesser degrees or included in the crime of incest under section 563.220 with which the defendant was charged and convicted. The court did not err in failing to instruct the jury with respect to the offenses stated in his motion. State v. Drake, Mo., 298 S.W.2d 374, 377[10]; State v. Villinger, Mo., 237 S.W.2d 132, 135[8, 9]; State v. Hancock, 320 Mo. 327, 7 S.W.2d 273, 274[2]; State v. Davidson, 73 Mo. 428. | Offenses of common assault and molesting minor with immoral intent are not lesser degrees of or included in crime of incest. Sections 556.220, 556.230, 559.220, 563.160, 563.220 RSMo 1949, V.A.M.S. | Are the offences of common assault and molestation of minors included under incest? | 000445.docx | LEGALEASE-00117452-LEGALEASE-00117454 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 8077 | Wilen v. Falkenstein, 191 S.W.3d 791 | 386+12 | In his first issue, Wilen argues that Falkenstein failed to introduce legally and factually sufficient evidence to prove all the elements necessary to establish a trespass to real property. Trespass to real property occurs when a person enters another's land without consent. See Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 833 (Tex.App.-Dallas 2000, no pet.). To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. See generally Stone Res., Inc. v. Barnett, 661 S.W.2d 148, 151 (Tex.App.-Houston [1st Dist.] 1983, no writ). Concerning the intent element of the tort, trespass requires only proof of interference with the right of possession of real property; the only relevant intent is that of the actor to enter the property. Accord Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827 (Tex.1997). The actor's subjective intent or awareness of the property's ownership is irrelevant. Id.; see, e.g., McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ ref'd) (holding that "every unauthorized entry upon land of another is a trespass" even if no damage is done and "the intent or motive prompting the trespass is immaterial"). | Concerning the intent element of the tort, trespass requires only proof of interference with the right of possession of real property, and the only relevant intent is that of the actor to enter the property or to aid, assist, advise, or encourage another to enter the property; the actor's subjective intent or awareness of the property's ownership is irrelevant. | Does the element of intent need to be proven to establish trespass? | 000699.docx | LEGALEASE-00117525-LEGALEASE-00117526 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8078 | In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65 | 386+2 | To prevail on a trespass claim under New York law, a plaintiff must show an "interference with [its] right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1361 (2d Cir.1989) (citing Ivancic v. Olmstead, 66 N.Y.2d 349, 352, 497 N.Y.S.2d 326, 488 N.E.2d 72 (1985)). "[W]hile the trespasser, to be liable, need not intend or expect the damaging consequence of his intrusion, he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or [what] he does so negligently as to amount to willfulness." Phillips v. Sun Oil Co., 307 N.Y. 328, 331, 121 N.E.2d 249 (1954). In a trespass case involving the "underground movement of noxious fluids," a plaintiff must show that the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage [of the pollutant] from defendant's to plaintiff's land." Id. | To be liable under New York, a trespasser is not required to have intended or expected the damaging consequence of its intrusion, but it must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what it willfully does, or what he does so negligently as to amount to willfulness. | Is a trespasser required to intend to trespass to be held liable? | 000742.docx | LEGALEASE-00117511-LEGALEASE-00117512 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8079 | State v. Torres, 66 Haw. 281 | 110+21 | That the offense at issue includes a mental element and the establishment of Incest demands a showing that the defendant acted intentionally are undisputable; for it is a felony defined by the Penal Code and no legislative purpose to impose absolute liability for the offense or any of its elements clearly appears. See note 3 supra; see also State v. Rushing, 62 Haw. 102, 105, 612 P.2d 103, 106 (1980).The question posed for decision here, however, is whether the indictment charging a violation of HRS " 707"741 must also contain an allegation of a specific intent to commit the proscribed act. The State argues Incest is a general intent crime and the absence of an express averment that the act was intentionally or knowingly committed did not render Count I of the indictment deficient in any way. The defendant asserts the omission was fatal because a recent amendment of HRS " 707"700(7) transmuted the crime to one where a wrongful intent must be explicitly charged. But we are not convinced the redefinition of "sexual intercourse" in 1980 had the claimed effect. | Where the offense charged is a felony defined by the penal code and no legislative purpose to impose absolute liability for the offense or any of its elements clearly appears, its establishment requires a showing that the defendant acted intentionally. | Is intent a necessary element to show that a crime of incest has been committed? | 000476.docx | LEGALEASE-00117738-LEGALEASE-00117739 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8080 | In re Bayside Marina, 282 B.R. 285 | 233+646 | In order to fix the amount that the Debtor still owes to purchase the Property, the Court must determine whether the monthly use and occupation payments made by the Debtor are to be credited to the sale price or whether these payments are meant to cover the Debtor's use and occupation from June 30, 1998 to the present. In general, when a landlord and tenant enter into contract for the sale of real property, or the tenant exercises an option to purchase real property pursuant to a lease, the relationship between the parties is converted to that of vendor and vendee and the landlord-tenant relationship "merges" with the vendor-vendee relationship. Barbarita v. Shilling, 111 A.D.2d 200, 201, 489 N.Y.S.2d 86 (2d Dep't 1985). Consequently, where merger has occurred and the lessor/lessee relationship is extinguished, the former landlord may not bring summary proceedings against the lessee for failure to pay rent during the time period between entry of the contract of sale and actual closing. N.Y.Jur.2d. Landlord and Tenant " 696 (1999). Generally, this practice is appropriate because the parties have created a new relationship which precludes either party from enforcing rights based on the prior relationship of landlord and tenant. | Under New York law, when landlord and tenant enter into a contract for sale of property, or when tenant exercises an option to purchase property under lease, relationship between parties is generally converted to that of vendor and vendee, and landlord-tenant relationship merges with vendor-vendee relationship. | Do the vendor and vendee share the relation of a landlord-tenant? | 000518.docx | LEGALEASE-00117629-LEGALEASE-00117630 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 8081 | Carter v. Butts Cty., Ga., 821 F.3d 1310 | 266+2055(1) | It is true that under Georgia law, "[w]here former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance." Steed v. Fed. Nat'l Mortg. Corp., 301 Ga.App. 801, 689 S.E.2d 843, 848 (2009). When this occurs, a landlord-tenant relationship exists between the legal title holder and a tenant at sufferance, and dispossessory procedures set forth in O.C.G.A. " 44"7"50 provide the exclusive method by which a landlord may evict the tenant. Steed, 689 S.E.2d at 848. | Where former owners of real property remain in possession after a foreclosure sale, they become tenants at sufferance; when this occurs, a landlord-tenant relationship exists between the legal title holder and tenant at sufferance, and statutory dispossessory procedures provide the exclusive method by which landlord may evict. West's Ga.Code Ann. S 44-7-50. | What is the exclusive method available to a landlord to evict a tenant? | 000525.docx | LEGALEASE-00117961-LEGALEASE-00117962 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 8082 | State v. Raley, 100 Ohio App. 75 | 384+1 | It is said that sedition and treason against the United States are matters within the jurisdiction of the United States and beyond the jurisdiction of the individual states. We think it is also implied that there is no such thing as sedition or treason against an individual state. We cannot agree with either of these claims. Sedition and treason against the United States as a sovereign entity are necessarily offenses also against every sovereign state of the federal Union. Their relation to one another is fixed by the United States Constitution, which, by its terms, makes the United States government, within its domain, paramount. However, it leaves the states paramount sovereigns in all governmental matters not transferred to the United States government. It does not create hostile sovereignties, or sovereignties joined together in a loose confed eracy. It creates " an indestructible Union, composed of indestructible states." While each should be on guard to protect its own domain, it should be equally on guard to see that the others should be secure in their respective domains. | Sedition and treason against the United States as a sovereign entity are necessarily offenses also against every sovereign state of the federal union. U.S.C.A.Const. art. 4, S 2; 18 U.S.C.A. S 2385; R.C. SS 103.31-103.38, 103.34. | Is treason against the United States as a sovereign entity necessarily an offense against every sovereign state of the federal Union? | 000878.docx | LEGALEASE-00117834-LEGALEASE-00117835 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8083 | Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., 369 F.3d 645 | 25T+113 | The federal policy favoring the liberal enforcement of arbitration clauses (as discussed above) applies with particular force in international disputes. See Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 638"40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Smith/Enron, 198 F.3d at 92. The Porto Alegre action, filed 31 days after GEMS"IT filed a notice and request for arbitration with the IACAC, was a tactic to evade arbitration. As Mr. Werlang, Tecnimed's president, stated in his affidavit, Tecnimed initiated the Porto Alegre action "to avoid being dragged into an arbitration process that GE had no right to force upon it." | Federal policy favoring liberal enforcement of arbitration clauses applies with particular force in international disputes. | Does federal policy favoring the liberal enforcement of arbitration clauses apply in international disputes? | Alternative Dispute Resolution - Memo 156 - RK.docx | ROSS-003297404-ROSS-003297406 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8084 | Weaver v. Florida Power & Light Co., 172 F.3d 771 | 25T+113 | The difficulty in this case arises because the proceeding to be enjoined is not a judicial proceeding but an arbitration. Remedies available through arbitration certainly are not remedies "at law" in the technical sense. We are compelled to treat such remedies as remedies at law, however, because of the Federal Arbitration Act, 9 U.S.C. "" 1"16 (1994). The Act"by ensuring the enforceability of contractual arbitration provisions and subjecting the resulting arbitrations to only a very limited degree of judicial review"embodies a federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). That policy rules out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), a competence that extends to deciding issues of waiver, res judicata, and other defenses that challenge whether a matter should be arbitrated at all. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24"25, 103 S.Ct. at 941. Consequently, we conclude that a remedy available through arbitration, if adequate, constitutes an adequate remedy at law such that equitable relief is improper. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 37 (1st Cir.1986); Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson, 574 F.Supp. 1472, 1479 (E.D.Mo.1983). | Federal Arbitration Act (FAA), by ensuring the enforceability of contractual arbitration provisions and subjecting the resulting arbitrations to only a very limited degree of judicial review, embodies a federal policy favoring arbitration, and that policy rules out any judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals. 9 U.S.C.A. SS 1-16. | What amount of judicial review do contractual arbitration provisions enforced under the Federal Arbitration Act receive? | 001023.docx | LEGALEASE-00118024-LEGALEASE-00118025 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 8085 | Cooper v. MRM Inv. Co., 367 F.3d 493 | 25T+134(1) | 9 U.S.C. " 2 (emphasis added); see also 9 U.S.C. " 1 (excepting some disputes arising out of employment in interstate transportation). Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements. See Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citations omitted); Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Fazio v. Lehman Bros., Inc., 340 F.3d 386, 393"94 (6th Cir.2003). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Garrett v. Hooters"Toledo, 295 F.Supp.2d 774, 779 (N.D.Ohio 2003) (citing Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1014 (6th Cir.2003) (internal citation omitted)). | Generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements under Federal Arbitration Act (FAA). 9 U.S.C.A. S 2. | Do courts consider the federal policy favoring arbitration when applying state law? | 001127.docx | LEGALEASE-00118369-LEGALEASE-00118371 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8086 | Kuehner v. Dickinson & Co., 84 F.3d 316 | 25T+113 | The FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. The FAA not only reversed the judicial hostility to the enforcement of arbitration contracts, but also created a rule of contract construction favoring arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24"25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (FAA manifests a "liberal federal policy favoring arbitration agreements"); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). | Federal Arbitration Act (FAA) not only reversed judicial hostility to enforcement of arbitration contracts, but also created rule of contract construction favoring arbitration. 9 U.S.C.A. S 1 et seq. | Did the Federal Arbitration Act (FAA) create rules of contract construction favoring arbitration? | Alternative Dispute Resolution - Memo 193 - RK.docx | LEGALEASE-00005465-LEGALEASE-00005466 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 8087 | Settos v. Springfield, Ohio, Local No. 352 of Int'l All. of Moving Picture Operators of U.S. & Canada, 43 N.E.2d 893 | 92+1114 | In Crosby v. Rath, 136 Ohio St. 352, on page 354, 25 N.E.2d 934, at page 935, opinion by the court, it is stated that the controlling question is whether the evidence discloses the existence of a legitimate trade dispute. The court in speaking of the case of LaFrance, etc., Co. v. Brotherhood of Electrical Workers, 108 Ohio St. 61, 140 N.E 899, later referred to in the case of State ex rel. v. Office Building Commission, 125 Ohio St. 301, 181 N.E. 129, 80 A.L.R. 1376, states: "Of course, as already indicated in the factual statement, it is not even contended that in the instant case there is any dispute whatsoever between the plaintiff and her employees, as in the LaFrance case, supra. On the contrary, the only dispute in the instant case is between the plaintiff and the defendants with whom the plaintiff's employees have no connection. The thing upon which the defendants are insisting is that the plaintiff discharge her employees unless they become members of one of the defendant unions. There is no reason or convincing authority, sustaining the contention of the defendants that they have the right to engage in picketing or boycotting under such circumstances." The Court quotes with approval certain Indiana cases to the effect: "The right to contract, the right to do business and the right to labor freely and without restraint are all constitutional rights equally sacred, and the privilege of free speech cannot be used to the exclusion of other constitutional rights nor as an excuse for unlawful activities in interference with another's business." | The right to contract, the right to do business, and the right to labor freely and without restraint are all constitutional rights, and the privilege of free speech cannot be used as an excuse for unlawful activities in interfering with another's business. | Is the right to labor freely and without restraint a constitutional right? | Labor and Employment - Memo 18 - VP.docx | ROSS-003287782-ROSS-003287783 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8088 | F.E.R.C. v. Elec. Power Supply Ass'n, 136 S. Ct. 760 | 145+1 | The FPA delegates responsibility to FERC to regulate the interstate wholesale market for electricity"both wholesale rates and the panoply of rules and practices affecting them. As noted earlier, the Act establishes a scheme for federal regulation of "the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. " 824(b)(1); see supra, at 767. Under the statute, "[a]ll rates and charges made, demanded, or received by any public utility for or in connection with" interstate wholesale sales "shall be just and reasonable"; so too shall "all rules and regulations affecting or pertaining to such rates or charges." " 824d(a). And if FERC sees a violation of that standard, it must take remedial action. More specifically, whenever the Commission "shall find that any rate [or] charge""or "any rule, regulation, practice, or contract affecting such rate [or] charge""is "unjust [or] unreasonable," then the Commission "shall determine the just and reasonable rate, charge[,] rule, regulation, practice or contract" and impose "the same by order." " 824e(a). That means FERC has the authority"and, indeed, the duty"to ensure that rules or practices "affecting" wholesale rates are just and reasonable. | Federal Energy Regulatory Commission (FERC) has the authority under the FPA, and, indeed, the duty, to ensure that rules or practices affecting wholesale electricity rates are just and reasonable. Federal Power Act, SS 205(da), 206(a), 16 U.S.C.A. SS 824d(a), 824e(a). | Does Federal Energy Regulatory Commission have the duty to ensure that rules or practices affecting wholesale electricity rates are just and reasonable? | Electricity - Memo 3 - RM.docx | ROSS-003285057-ROSS-003285058 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 8089 | Moore v. Com., Dep't of Envtl. Res., 660 A.2d 677 | 148+2.1 | In order to find a de facto taking, a court must consider whether a governmental entity, clothed with the power of eminent domain, has by its conduct substantially deprived the property owner of the use and enjoyment of the property. Conroy-Prugh Glass Co. v. Department of Transportation, 456 Pa. 384, 321 A.2d 598 (1974); Elser v. Department of Transportation, ---Pa.Commonwealth Ct. ----, 651 A.2d 567 (1994). | To find de facto taking, court must consider whether governmental entity, clothed with power of eminent domain, has by its conduct substantially deprived property owner of use and enjoyment of property. | What is a de facto taking? | 001446.docx | LEGALEASE-00118596-LEGALEASE-00118597 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 8090 | Brakke v. Iowa Dep't of Nat. Res., 897 N.W.2d 522 | 148+2.1 | Overview of regulatory takings theories. The classic government taking requiring compensation is a direct appropriation of physical property, "or the functional equivalent of "a practical ouster of [the owner's] possession."" Lucas, 505 U.S. at 1014, 112 S.Ct. at 2892 (alteration in original) (quoting Transp. Co. v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336 (1878)). A regulatory taking, on the other hand, occurs when a regulation becomes so burdensome that its effect is "tantamount to a direct appropriation or ouster." Lingle, 544 U.S. at 537, 125 S.Ct. at 2081; Penn. Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) (recognizing regulatory takings for the first time); see also Easter Lake Estates, Inc. v. Polk County, 444 N.W.2d 72, 75 (Iowa 1989) ("[G]overnment action that substantially deprives a person of the use of property, in whole or in part, may be a compensable taking."). This case focuses solely on regulatory takings. | The classic government taking requiring compensation is a direct appropriation of physical property, or the functional equivalent of a practical ouster of the owner's possession. U.S. Const. Amend. 5; Iowa Const. art. 1, S 18. | Is a taking requiring just compensation a direct appropriation of physical property? | Eminent Domain -Memo 57- VP.docx | ROSS-003284440-ROSS-003284441 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8091 | Compucom Sys. v. Getronics Fin. Holdings B.V., 635 F. Supp. 2d 371 | 25T+113 | If two parties enter into a valid agreement and a specific dispute falls within the scope of an arbitration clause in that agreement, public policy favors the enforcement of the arbitration clause. In the case at bar, it is not disputed that the parties entered into a valid arbitration agreement when they executed the Agreement. Therefore, the court must first determine whether the arbitration clause in the Agreement is broad or narrow. | If two parties enter into a valid agreement and a specific dispute falls within the scope of an arbitration clause in that agreement, public policy favors the enforcement of the arbitration clause. | When does public policy favor the enforcement of the arbitration clause? | 001711.docx | LEGALEASE-00118755-LEGALEASE-00118756 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 8092 | Grider v. City of Auburn, 628 F. Supp. 2d 1322 | 249+7 | The Griders also bring claims of malicious prosecution against Officer Carver and Fire Inspector Massey and false arrest against Massey. Because the federal claims of malicious prosecution required the Griders to prove the elements of such a claim under Alabama law, the Griders have established those elements with respect to Carver's 2005 bribery charge but not with respect to Massey's October 2006 citation. Moreover, the Griders cannot maintain a state-law claim of malicious prosecution based on the November 2005 citations, which were nolle prosequied in January 2006. Alabama courts allow claims for malicious prosecution when a citation is issued that forces a defendant to appear in court to defend against a criminal charge, even if no formal arrest was made. Sears, Roebuck & Co. v. Alexander, 252 Ala. 122, 124"25, 39 So.2d 570 (Ala.1949). However, as noted earlier, the Griders have simply not put forward any competent evidence that Massey lacked probable cause in issuing the citations. In fact, Patrick Grider admitted in his deposition that he "had no idea" if Skybar was over its occupancy numbers at the time of the November 18 and 19 citations. Defs.' Reply (Doc. 116) at 25"26. | Alabama courts allow claims for malicious prosecution when a citation is issued that forces a defendant to appear in court to defend against a criminal charge, even if no formal arrest was made. | When will the courts allow a malicious prosecution claim? | 001840.docx | LEGALEASE-00118694-LEGALEASE-00118695 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8093 | Quebedeaux v. Dow Chem. Co., 820 So. 2d 542 | 231H+40(1) | The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. Cf. Anderson v. Douglas & Lomason Co., 540 N.W.2d 277, 281 (Iowa 1995) ("[T]he doctrine of employment at-will is merely a gap-filler, a judicially created presumption utilized when parties to an employment contract are silent as to duration."). This default rule is contained in LSA-C.C. art. 2747. | When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. LSA-C.C. art. 2747. | When the employer and employee are silent on the terms of an employment contract does the civil code provides any default rule of employment-at-will? | Labor and Employment - Memo 38 - VP.docx | ROSS-003284216-ROSS-003284217 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8094 | Poseidon Dev. v. Woodland Lane Estates, 152 Cal. App. 4th 1106 | 302+216(1) | " "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." " (Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort (2001) 91 Cal.App.4th 875, 882, 110 Cal.Rptr.2d 877.) "In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed." (Joslin v. H.A.S. Ins. Brokerage (1986) 184 Cal.App.3d 369, 374, 228 Cal.Rptr. 878.) A court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading. (Columbia Casualty Co. v. Northwestern Nat. Ins. Co. (1991) 231 Cal.App.3d 457, 468"469, 282 Cal.Rptr. 389.) This includes recorded deeds. (Maryland Casualty Co. v. Reeder (1990) 221 Cal.App.3d 961, 977, 270 Cal.Rptr. 719.) | A court determining the sufficiency of a complaint against demurrer may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading; this includes recorded deeds. | Are matters judicially noticed considered in determining the sufficiency of a complaint? | 001583.docx | LEGALEASE-00119055-LEGALEASE-00119056 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 8095 | First Assembly of God v. Texas Utilities Elec. Co., 52 S.W.3d 482 | 317A+101 | Appellant contends T.U. owed appellant the following duties: (1) a duty of ordinary care in a manner that would prevent electricity from causing damages to the church's real and personal property; (2) a duty to exercise reasonably prudent and ordinary care in the repair and/or replacement of the transformers, electric meter, and related equipment outside of the church; and (3) a duty to notify the church and/or Council before restoring electrical power. Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. W. Tex. Utils. v. Renner, 53 S.W.2d 451, 453"54 (Tex. Comm'n App.1932, holding approved); Tex. Cities Gas Co. v. Dickens, 140 Tex. 433, 438, 168 S.W.2d 208, 210 (1943). This "commensurate with the danger" standard does not impose a higher duty of care; rather, it more fully defines what is ordinary care under the facts presented. Renner, 53 S.W.2d at 453"54. Texas courts examine the language of the tariff to determine if a duty exists. Texaco, Inc. v. Cent. Power & Light Co., 955 S.W.2d 373, 377"78 (Tex.App."San Antonio 1997, pet. denied); Cent. Power & Light Co. v. Romero, 948 S.W.2d 764, 766"67 (Tex.App."San Antonio 1996, writ denied). | Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. | Should the duty to exercise ordinary and reasonable care of the public utility commensurate with the danger? | Public utilities - Memo 2- RM.docx | ROSS-003282003-ROSS-003282004 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8096 | Jones v. United States, 846 F.3d 1343 | 209+124 | We reject Jones's argument that limiting the bad men provision to criminal wrongdoing fails to read the 1868 Treaty in the way the Indian leaders would have understood it. In interpreting a treaty, we "attempt to determine what the parties meant by the treaty[, but w]e stop short of varying its terms to meet alleged injustices." Northwestern Band of Shoshone Indians, 324 U.S. at 353, 65 S.Ct. 690. Even if the Ute leaders may not have appreciated the complex distinction between American civil and criminal law, we may not interpret the 1868 Treaty in a way that the United States would not reasonably have agreed to adopt at the time of the signing. In other words, the extent of our interpretive deference to the perspective of the Native leaders cannot extend past the meeting of the minds between the parties. See Confederated Bands of Ute Indians v. United States, 330 U.S. 169, 179, 67 S.Ct. 650, 91 L.Ed. 823 (1947) ("While it has long been the rule that a treaty with Indians is to be construed so as to carry out the Government's obligations in accordance with the fair understanding of the Indians, we cannot, under the guise of interpretation ... rewrite congressional acts so as to make them mean something they obviously were not intended to mean."); South Carolina v. Catawba Indian Tribe, 476 U.S. 498, 506, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) ("The canon of construction regarding the resolution of ambiguities in favor of Indians, however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress."). We therefore hold that only wrongs that could give rise to arrest and potential criminal prosecution are cognizable under the 1868 Treaty's bad men provision. | In interpreting an Indian treaty, the court attempts to determine what the parties meant by the treaty, but stops short of varying its terms to meet alleged injustices. | "In interpreting Indian treaties, does a court attempt to determine what the parties meant by the treaty?" | 001787.docx | LEGALEASE-00118848-LEGALEASE-00118850 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 8097 | Robinson v. McPherson, 602 So. 2d 352 | 249+24(2) | The mere fact that the plaintiff in a malicious prosecution action arising from a criminal charge was acquitted of the charge does not prove that there was no probable cause to believe him guilty at the time the warrant was issued. S.S. Kresge Co. v. Ruby, 348 So.2d 484 (Ala.1977). | Mere fact that plaintiff in malicious prosecution action arising from criminal charge was acquitted of charge does not prove that there was no probable cause to believe him guilty at time warrant was issued. | Does acquittal evidence a lack of probable cause in malicious prosecution claim? | 001813.docx | LEGALEASE-00118947-LEGALEASE-00118948 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 8098 | Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756 | 25T+114 | Nelson does not argue on appeal that all mandatory arbitration agreements are unenforceable under the ADA. Instead, he argues that he may be required to arbitrate his claims under the ADA only if he "knowingly and voluntarily" agreed to waive his right to a judicial forum. Just as Congress may entirely preclude a waiver of the plaintiff's statutory rights, it may create other more limited restrictions on the enforcement of arbitration agreements. Kuehner, 84 F.3d at 319. In Lai, we held that it was "apparent from the text and legislative history of Title VII" that Congress had required "at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." Lai, 42 F.3d at 1304. In the case before us, the parties agree that the waiver analysis set forth in Lai applies equally in the context of the ADA. They are correct. Just as a knowing agreement to arbitrate disputes covered by the act is required by Title VII, so too a knowing agreement is required under the ADA | Just as Congress may entirely preclude waiver of plaintiff's right to judicial forum in which to enforce statutory rights, it may create other more limited restrictions on enforcement of arbitration agreements. | Can congress create restrictions on the enforcement of arbitration agreements? | 002125.docx | LEGALEASE-00119085-LEGALEASE-00119086 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8099 | In re Payton Const. Corp., 399 B.R. 352 | 25T+121 | The Supreme Court has provided the beginning of an answer to that question:Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes. | Congressional intent to preclude waiver of judicial remedies for statutory rights at issue may be deduced, for purpose of denying motion to compel arbitration of statutory claims, from statute's text or legislative history, or from inherent conflict between arbitration and statute's underlying purpose. 9 U.S.C.A. S 1 et seq. | How do courts deduce Congressional intent? | Alternative Dispute Resolution - Memo 244 - RK.docx | ROSS-003286077-ROSS-003286078 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 8100 | Sutherland v. Ernst & Young LLP, 726 F.3d 290 | 25T+121 | 9 U.S.C. " 2. In analyzing this provision of the FAA, the Supreme Court has remarked on several occasions that it establishes " "a liberal federal policy favoring arbitration agreements," " CompuCredit Corp. v. Greenwood, """ U.S. """", 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), and that arbitration agreements should be enforced according to their terms "unless the FAA's mandate has been "overridden by a contrary congressional command," " id. (quoting Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). In American Express Co. v. Italian Colors Restaurant, """ U.S. """", 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), the Court recently reminded lower courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." Id. at 2309 (internal quotation marks and citations omitted; emphasis and brackets in original). | The Federal Arbitration Act (FAA) establishes a liberal federal policy favoring arbitration agreements, and arbitration agreements should be enforced according to their terms unless the FAA's mandate has been overridden by a contrary congressional command. 9 U.S.C.A. S 2. | Do the courts enforce arbitration agreements according to their terms? | 002173.docx | LEGALEASE-00119133-LEGALEASE-00119134 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 8101 | Denton Cty. Elec. Co-op. v. Hackett, 368 S.W.3d 765 | 145+2.1 | Hackett also contends that CoServ owes and breached statutory duties to its members under utilities code sections 161.070 and 161.072. CoServ argues that the ECCA does not confer an express private right of action on Hackett, giving her no standing to sue under the ECCA. | Under the Electric Cooperative Corporation Act (ECCA), a member of an electric cooperative does not have a private right of action against the cooperative for breach of statutory duty. V.T.C.A., Utilities Code SS 161.070, 161.072. | Does a member of an electric cooperative have a private right of action against the cooperative for breach of statutory duty under the Electric Cooperative Corporation Act? | Electricity - Memo 15 - RK.docx | ROSS-003323498-ROSS-003323500 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 8102 | Matter of Anthony M., 63 N.Y.2d 270 | 203+507 | For criminal liability to attach, a defendant's actions must have been an actual contributory cause of death, in the sense that they "forged a link in the chain of causes which actually brought about the death" (People v. Stewart, 40 N.Y.2d 692, 697, 389 N.Y.S.2d 804, 358 N.E.2d 487). "An obscure or a merely probable connection between an assault and death will, as in every case of alleged crime, require acquittal of the charge of any degree of homicide" (People v. Brengard, 265 N.Y. 100, 108, 191 N.E. 850). A defendant's acts need not be the sole cause of death; where the necessary causative link is established, other causes, such as a victim's preexisting condition, will not relieve the defendant of responsibility for homicide (see People v. Kane, 213 N.Y. 260, 273, 107 N.E. 655). By the same token, death need not follow on the heels of injury. Even an intervening, independent agency will not exonerate defendant unless "the death is solely attributable to the secondary agency, and not at all induced by the primary one" (People v. Kane, 213 N.Y. 260, 270, 107 N.E. 655, supra ). An injury may trigger immediate measurable deterioration and a gradual process of dying for which defendant is responsible (People v. Brengard, 265 N.Y. 100, 104"105, 191 N.E. 850, supra; see, also, People v. Roberts, 73 A.D.2d 954, 424 N.Y.S.2d 13), but that is not to say that a victim who evidences no immediate decline cannot just as surely have been set by defendant's acts on a certain course to deat.. | A defendant's acts need not be the sole cause of a crime victim's death for criminal liability to attach for that death; where the necessary causative link is established, other causes, such as a victim's preexisting condition, will not relieve defendant of responsibility for homicide. | Do the defendant's acts needs to be the sole cause of death in homicide? | 002247.docx | LEGALEASE-00119307-LEGALEASE-00119308 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8103 | Marks One Car Rental v. Auto Club Grp. Ins. Co., 55 F. Supp. 3d 977 | 237+41 | Defendants argue that plaintiffs' defamation claim must be dismissed because any statements they made about plaintiffs are subject to the shared-interest privilege. The question of whether a privilege applies is a question of law. Lawrence v. Fox, 357 Mich. 134, 139"40, 97 N.W.2d 719, 722 (1959). As explained in Zanley v. Hyde,Where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice. | Under Michigan law governing defamation, where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice. | What is a privileged communication? | 002283.docx | LEGALEASE-00119278-LEGALEASE-00119279 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 8104 | Garner v. Kovalak, 817 N.E.2d 311 | 386+2 | In order to be liable for a trespass on land ..., it is necessary only that the actor intentionally be upon any part of the land in question. It is not necessary that he intend to invade the possessor's interest in the exclusive possession of his land and, therefore, that he know his entry to be an intrusion. The intention which is required to make the actor liable under the rule stated in this Section is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. | The intention which is required to make the actor liable for trespass on land is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. | Should an actor know that he is not entitled to enter a certain piece of land or property to commit trespass? | 002320.docx | LEGALEASE-00119181-LEGALEASE-00119182 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8105 | MacKennan v. Jay Bern Realty Co., 30 A.D.2d 679 | 386+56 | We subscribe to the principle that, in order to recover punitive damages for a trespass on real property, a plaintiff has the burden of proving (1) actual malice, which involves an intentional wrongdoing, or (2) such conduct as may be deemed to be tantamount to a wanton and wilful or a reckless disregard of plaintiff's rights (cf. La Bruno v. Lawrence, 64 N.J.Super. 570, 166 A.2d 822; Powers v. Manhattan Ry. Co., 120 N.Y. 178, 24 N.E. 295). The court below charged the jury that plaintiff must show malice in that appellant had knowledge of plaintiff's rights and intended to interfere therewith, but failed to include the prerequisite of wanton and wilful disregard of plaintiff's rights. Implicit in the jury's verdict is a finding, consistent with said charge, that appellant had such knowledge and intended to interfere with plaintiff's rights. In our opinion, this finding was contrary to the weight of the evidence. | To recover punitive damages for trespass on realty, plaintiff must prove actual malice, which involves intentional wrongdoing, or such conduct as may be deemed tantamount to wanton and willful or reckless disregard of plaintiff's rights. | When is the issue of willful trespass to realty of significance? | 002334.docx | LEGALEASE-00119216-LEGALEASE-00119217 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 8106 | Brand v. Mathis & Assocs., 15 S.W.3d 403 | 386+47 | In our review of the pleadings, we observe that Plaintiffs did not expressly plead statutory trespass under either section 537.340 (trespass on realty-treble damages); or section 537.360 (trespass on realty-single damage). "[A] party cannot recover for a cause of action not pleaded." Clay v. Missouri Highway and Transp. Comm'n., 951 S.W.2d 617, 631 (Mo.App.1997). "Under common law, a trespass is the unlawful entry on another man's ground causing damage, however slight." Porter v. Fitch, 727 S.W.2d 161, 164 (Mo.App.1987); see also Muir, 945 S.W.2d at 35. "A trespasser is liable for all damages proximately caused by his trespass, whether or not he acted in good faith and with reasonable care, or whether he acted in ignorance of plaintiff's rights, or under mistake of fact or law." Crook v. Sheehan Enters., Inc., 740 S.W.2d 333, 336 (Mo.App.1987); see Griesenauer v. Emsco Corp., 399 S.W.2d 147, 151 (Mo.App.1965). Although statutory trespass under either sections 537.340 or 537.360 was not expressly pleaded by Plaintiff, nevertheless, cases interpreting how measures of damages are determined under these statutes have rational and relevant application to the instant case. See parallel discussion in Hunter Land & Dev. Co. v. Caruthersville S. & H. Co., 223 Mo.App. 132, 9 S.W.2d 531, 533 (1928)("while the action for treble damages may be a separate and distinct cause of action from the common-law action of trespass or trover, the line of demarcation is fine, and they all belong to the same general classification"); see also Porter, 727 S.W.2d at 164. Indeed, section 537.340, the treble damage statute, has been held not to take away the common law right of action for trespass. State ex rel. Smith v. Greene, 494 S.W.2d 55, 58"59 (Mo. banc 1973). | Trespasser is liable for all damages proximately caused by his trespass, whether or not he acted in good faith and with reasonable care, or whether he acted in ignorance of plaintiff's rights, or under mistake of fact or law. | Can a trespasser be held liable for all damages proximately caused by his trespass? | 002336.docx | LEGALEASE-00119218-LEGALEASE-00119219 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8107 | Presbyterian Child Welfare Agency of Buckhorn, Kentucky v. Nelson Cty. Bd. of Adjustment, 185 F. Supp. 2d 716 | 15A+1058 | Nor does the 1998 BOZA hearing bar the FHAA claim. In University of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) the Supreme Court held that "when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state courts." Under Kentucky law, the decisions of administrative agencies acting in that capacity are entitled to the same res judicata effect as judgments of a court. Godbey v. University Hospital of the Albert B. Chandler Medical Center, Inc., 975 S.W.2d 104, 105 (1998). In the Sixth Circuit a state administrative agency's fact finding determinations are entitled to preclusive effect in a subsequent federal action where: (1) the agency acted in a judicial capacity; (2) the agency's decision has preclusive effect under state law; and (3) the federal action litigates issues determined by the agency. Nelson v. Jefferson County, 863 F.2d 18, 19 (6th Cir.1988). An agency acts in a judicial capacity when it hears evidence, gives parties an opportunity to brief and argue their versions of the facts, and gives parties an opportunity to seek court review of these findings. Id. | An administrative agency acts in a judicial capacity when it hears evidence, gives parties an opportunity to brief and argue their versions of the facts, and gives parties an opportunity to seek court review of these findings. | When is an administrative agency said to have acted in judicial capacity? | 002348.docx | LEGALEASE-00119425-LEGALEASE-00119426 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8108 | Ex parte Trombley, 31 Cal. 2d 801 | 231H+2526 | We return to the question whether an employer, who, having the ability to pay, intentionally refuses to pay wages he knows are due, perpetrates a "fraud" within the meaning of the provision which excepts "cases of fraud" from the prohibition against imprisonment for debt. The historical background of section 15 of article I and similar constitutional guaranties of other states clearly shows that the provisions were adopted to protect the poor but honest debtor who is unable to pay his debts, and were not intended to shield a dishonest man who takes an unconscionable advantage of another. (I Debates and Proceedings of the Constitutional Convention, 1878-1879, 265-268; Code Civ.Proc. s 715; Gault v. Gault, 112 N.J.Eq. 41, 163 A. 139; see Clark v. State, 171 Ind. 104, 51 N.E. 984, 16 Ann.Cas. 1229.) It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due. (In re Ballestra, 173 Cal. 657, 658, 161 P. 120; In re Moffett, 19 Cal.App.2d 7, 19, 64 P.2d 1190; Moore v. Indian Spring etc. Min. Co., 37 Cal.App. 370, 379, 174 P. 378; see (1928) 41 Harv.L.Rev. 786-790.) An employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which prejudices the rights of his employee. Such conduct amounts to a "case of fraud" within the meaning of the exception to the constitutional prohibition and may be punished by statute. | An employer who knows that wages are due, has ability to pay them and still refuses to pay them acts against good morals and fair dealings and necessarily intentionally does an act which prejudices rights of his employee and such conduct amounts to a "case of fraud" within exception to constitutional prohibition against imprisonment for debt and may be punished by statute. Labor Code, S 216(a); Const. art. 1, S 15. | Are wages ordinary debts? | 003248.docx | LEGALEASE-00119196-LEGALEASE-00119198 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8109 | Walton Elec. Membership Corp. v. Snyder, 270 Ga. 62 | 145+8.1(1) | A tort may lie, even when a contract exists, when a public duty also exists. See Viney, supra; Bulmer v. Southern Bell &c. Co., 170 Ga.App. 659, 659-660, 317 S.E.2d 893 (1984).An EMC is a business of a public nature designed to meet a public necessity, in the same manner as is a gas company. See Lawrence v. Atlanta Gas-Light Co., 49 Ga.App. 444, 447(1), 176 S.E. 75 (1934). The statutory scheme giving rise to EMCs is similar to the grant of a franchise from the state to operate a utility for the benefit of the citizenry, and this grant imposes a duty to the public. See Freeman v. Macon Gas &c. Co., 126 Ga. 843, 845-846, 56 S.E. 61 (1906). Thus, this duty may provide a basis for tort liability even when a contract exists for the provision of electric service. Accordingly, the tort of wrongful termination of utilities has been recognized.3 See Freeman, supra; Southern Bell &c. Co. v. Earle, 118 Ga. 506, 510-511(5), 45 S.E. 319 (1903); Hunnicutt v. Ga. Power Co., 168 Ga.App. 525, 309 S.E.2d 862 (1983); Lawrence, supra.Walton also argues that, because its customers are also its members who ultimately control the corporation, an EMC should not be liable for wrongful termination in the same manner as a for-profit corporation might be. Such a distinction does not demand a shield from tort liability. An EMC is also possessed of a public duty, and as such, an action in tort for wrongful termination of utilities will lie. | The statutory scheme giving rise to electric membership corporations (EMC) is similar to the grant of a franchise from the state to operate a utility for the benefit of the citizenry, and this grant imposes a duty to the public. | What duties does an Electric Membership Corporation owe to the public? | 002367.docx | LEGALEASE-00119468-LEGALEASE-00119470 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8110 | City of Austin v. Liberty Mut. Ins., 431 S.W.3d 817 | 148+2.1 | For similar reasons, appellees' allegations likewise do not support their assertion that the property was damaged for public use, another requirement for a valid inverse-condemnation claim. As an initial matter, we observe that when there is no intent or substantial certainty of damage as a result of government conduct, it is difficult to conceive how the property could be said to have been taken or damaged for public use. See Jennings, 142 S.W.3d at 313"14 (when government did not desire property to be damaged, takings liability arises only if government knows that damage is substantially certain to result). On appeal, the public use asserted by appellees is "power transmission." But appellees do not allege or explain how the damage to their property advanced that purpose. It is self-evident that the fire was not the substantially certain result of the City's mere provision of electric power, nor was it necessary that it occur in order for the City to provide power to its residents. When property damage is an unintended result of the government's act or policy, it cannot be said that the property was "taken or damaged for public use." Id. at 313 (citing Texas Highway Dep't v. Weber, 147 Tex. 628, 219 S.W.2d 70, 71 (1949), and Steele v. City of Houston, 603 S.W.2d 786, 791"92 (Tex.1980)). Unless it was substantially certain to occur, the fact that some property ultimately suffered harm as a result of the City's power-transmission activities undertaken for the benefit of the public does not mean that the property was damaged in order to effectuate that public benefit. See Weber, 219 S.W.2d at 71 (property is "damaged for public use" when governmental entity is aware that its actions will necessarily cause physical damage to private property yet determines that benefit to public outweighs harm caused to that property). | When property damage is an unintended result of the government's act or policy, it cannot be said that the property was taken or damaged for public use. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, S 17. | "When property damage is an unintended result of the government's act or policy, can it be said that the property was taken or damaged for public use?" | 00775.docx | LEGALEASE-00081576-LEGALEASE-00081577 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8111 | State v. Green, 182 Wash. App. 133 | 110+26 | The corpus delicti principle requires that the State prove that some crime actually occurred, which for a homicide involves establishing (1) the fact of death, and (2) a causal connection between the death and a criminal act. State v. Aten, 130 Wash.2d 640, 655, 927 P.2d 210 (1996). And under the corpus delicti rule, the "defendant's incriminating statement alone is not sufficient to establish that a crime took place." State v. Brockob, 159 Wash.2d 311, 328, 150 P.3d 59 (2006). "[T]he State must present evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred." Brockob, 159 Wash.2d at 328, 150 P.3d 59 (emphasis omitted). The purpose of the rule is to prevent a defendant from being unjustly convicted based on an uncorroborated confession. State v. Dow, 168 Wash.2d 243, 249, 227 P.3d 1278 (2010). | The corpus delicti principle requires that the State prove that some crime actually occurred, which for a homicide involves establishing (1) the fact of death, and (2) a causal connection between the death and a criminal act. | Is fact of death an element of corpus delicti? | 001923.docx | LEGALEASE-00119607-LEGALEASE-00119608 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8112 | Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117 | 25T+114 | Bendelac contends that the FAA does not apply in this case. He acknowledges that there is a basis of federal jurisdiction, namely diversity of citizenship, but maintains that the Erie doctrine mandates that the New York arbitration statute be invoked when federal jurisdiction is predicated on diversity. This is a strange contention because diversity jurisdiction serves as a basis for invoking the provisions of the FAA, not as a ground for invoking the application of a state arbitration statute. See Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 703 (2d Cir.1985), cert. denied, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986); Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19 (2d Cir.1962); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 408"09 (2d Cir.1959). The FAA applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983), and when the contract calling for arbitration "evidenc[es] a transaction involving interstate commerce." 9 U.S.C. " 2. That the first requirement is met here is not called into question. Nor could Bendelac dispute the interstate nature of the transactions at issue: "[They] involved Venezuelan investors, a New York financial institution and the purchase and sale of securities on a national exchange." 752 F.Supp. at 155; see also Willis v. Shearson/American Express, Inc., 569 F.Supp. 821, 823 (M.D.N.C.1983); Corey v. New York Stock Exchange, 493 F.Supp. 51, 54 (W.D.Mich.1980), aff'd, 691 F.2d 1205 (6th Cir.1982). Therefore, the Barbiers properly invoked the provisions of the FAA to confirm the arbitral award. | Federal Arbitration Act (FAA) applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction, and when contract calling for arbitration evidences transaction involving interstate commerce. 9 U.S.C.A. S 2. | Does the Federal Arbitration Act (FAA) apply when there is diversity jurisdiction? | 002769.docx | LEGALEASE-00119704-LEGALEASE-00119705 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8113 | Am. Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490 | 25T+114 | Congress enacted the FAA in order to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." Id. at 25, 111 S.Ct. 1647; see also 9 U.S.C. " 4. With regard to uninsured motorist coverage, " 83-11-109 provides that "[n]o such endorsement or provisions shall contain a provision requiring arbitration of any claim arising under any such endorsement or provisions." Although federal law ordinarily preempts conflicting state law, the McCarran-Ferguson Act provides a narrow exception to this rule for state laws governing the insurance industry. Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 590 (5th Cir.1998). The McCarran-Ferguson Act provides in pertinent part that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. " 1012(b). | Purpose of the Federal Arbitration Act (FAA) is to reverse the longstanding judicial hostility to arbitration agreements that existed at English common law, as was adopted by American courts, and to place arbitration agreements upon the same footing as other contracts. 9 U.S.C.A. S 1 et seq. | What was the purpose of enacting the Federal Arbitration Act? | Alternative Dispute Resolution - Memo 277 - RK.docx | ROSS-003285564-ROSS-003285565 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8114 | S.F. v. Arkansas Dep't of Health & Human Servs., 101 Ark. App. 236 | 249+21(2) | Appellants argue on appeal that the trial court erred in refusing to accept their advice-of-counsel defense and ask us to reverse that decision and to modify the circuit court's order accordingly. They cite no cases in the context of juvenile proceedings to support this argument but contend that the advice-of-counsel defense, as applied in malicious-prosecution and criminal cases, should apply here. In malicious-prosecution cases, the advice-of-counsel defense applies if the parties have made a full disclosure of all relevant facts to competent counsel and have acted in bona fide reliance thereon. Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, 324 Ark. 361, 922 S.W.2d 327 (1996). In criminal cases, the defense may apply if the person has fully disclosed all material facts to his attorney before seeking advice and has actually relied on his counsel's advice in the good-faith belief that his conduct was legal. Covey v. U.S., 377 F.3d 903 (8th Cir.2004). We decline to apply the defense in this case. First, appellants did not have an attorney-client relationship with the attorney representing the biological parents. Further, the trial court's order made no finding as to any level of intent on appellants' part, which was appropriate given that a finding of dependency-neglect does not require a showing of mens rea. An advice-of-counsel defense is not recognized in juvenile proceedings, in which the touchstone is the juvenile's best interest, not the defendant's intention. See Ark.Code Ann. " 9"27"302 (Supp.2007). Because the juvenile code focuses on the effect of the parents' actions on the child, an attorney's advice to the parents is not relevant to whether the child is dependent-neglected. Even the most well-intentioned behavior, if it threatens the child's well-being, can result in an adjudication of dependency-neglect. | In malicious prosecution cases, the advice-of-counsel defense applies if the parties have made a full disclosure of all relevant facts to competent counsel and have acted in bona fide reliance thereon. | When does the advice of counsel defense apply to a malicious prosecution claim? | 002920.docx | LEGALEASE-00119813-LEGALEASE-00119814 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8115 | Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 | 360+18.46 | This argument-that a State's establishment of minimum substantive labor standards undercuts collective bargaining-was considered and rejected in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). That case involved a state law requiring that minimum mental health benefits be provided under certain health insurance policies. Appellants there presented the same argument that appellant makes in this case: "[B]ecause Congress intended to leave the choice of terms in collective-bargaining agreements to the free play of economic forces, ... mandated-benefit laws should be pre-empted by the NLRA." Id., at 748, 105 S.Ct., at 2394. The Court held, however, that the NLRA is concerned with ensuring an equitable bargaining process, not with the substantive terms that may emerge from such bargaining. "The evil Congress was addressing thus was entirely unrelated to local or federal regulation establishing minimum terms of employment." Id., at 754, 105 S.Ct., at 2397. Such regulation provides protections *21 to individual union and nonunion workers alike, and thus "neither encourage[s] nor discourage[s] the collective-bargaining processes that are the subject of the NLRA." Id., at 755, 105 S.Ct., at 2397. Furthermore, pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State. As a result, held the Court: "When a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act." Id., at 757, 105 S.Ct., at 2398. It is true that the Maine statute gives employees something for which they otherwise might have to bargain. That is true, however, with regard to any state law that substantively regulates employment conditions. Both employers and employees come to the bargaining table with rights under state law that form a " | Pre-emption should not be lightly inferred under National Labor Relations Act in area of substantive labor standards, inasmuch as establishment of labor standards falls within traditional police power of the state. National Labor Relations Act, SS 7, 8, as amended, 29 U.S.C.A. SS 157, 158. | Is pre-emption of employment standards within the traditional police power of the state that should not be lightly inferred? | 003276.docx | LEGALEASE-00119585-LEGALEASE-00119587 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 8116 | Espinal v. Nw. Airlines, 90 F.3d 1452 | 231H+965 | Congress enacted the RLA, which was extended to cover the airline industry in1936, "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Norris, 512 U.S. at """", 114 S.Ct. at 2243 (citing Atchison, Topeka & Santa Fe Ry. v. Buell, 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987)). In order to realize this goal, the RLA provides for mandatory arbitration of two classes of disputes. Id. (citing 45 U.S.C. " 151a). The first class, "major" disputes, involve disputes over "the formation of collective bargaining agreements or efforts to secure them." Id. at """", 114 S.Ct. at 2244 (quoting Consolidated Rail Corp. v.Railway Labor Executives' Ass'n, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989)). The other class of disputes, "minor" disputes, "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. (quoting Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co., 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957)). | Congress enacted RLA, which was extended to cover airline industry in 1936, to promote stability in labor-management relations by providing comprehensive framework for resolving labor disputes. Railway Labor Act, S 1 et seq., 45 U.S.C.A. S 151 et seq. | What was the Congress' purpose in passing the Railway Labor Act (RLA)? | 003279.docx | LEGALEASE-00119588-LEGALEASE-00119589 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 8117 | First Mercury Ins. Co. v. Great Divide Ins. Co., 241 F. Supp | 366+1 | However, even if the Court were to address Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, the claim would fail. Plaintiff brings this cause of action under an "equitable subrogation" theory. "Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." Maryland, 81 Cal.App.4th at 1088"89, 97 Cal.Rptr.2d 374. To succeed on an equitable subrogation theory, Plaintiff must satisfy the following elements:(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the [plaintiff] insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. Transcon. Ins. Co. v. Ins. Co. of State of Pennsylvania, 148 Cal.App.4th 1296, 1305, 56 Cal.Rptr.3d 491 (2007) (quoting Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1292, 77 Cal.Rptr.2d 296 (1998)). The second element of the above test requires that the "claimed loss [be] one for | The aim of equitable subrogation under California law is to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor. | What is the aim of equitable subrogation? | 002596.docx | LEGALEASE-00119981-LEGALEASE-00119982 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8118 | Commercial Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford, 526 F. Supp. 2d 424 | 25T+116 | Because one of the companies comprising Commercial Risk is a citizen of Bermuda, Security seeks confirmation of the Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. "" 201"208, as well as under the Federal Arbitration Act (the "FAA"), 9 U.S.C. "" 1"16. Under the Convention, which applies to arbitration proceedings held in this country involving at least one party that is not a United States citizen, an arbitration award must be confirmed except where the court finds one of the grounds for refusal of recognition or enforcement specified in the Convention. See 9 U.S.C. " 207; Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir.2007) (noting that "the burden [on the party opposing enforcement of an arbitral award] is a heavy one, as the showing required to avoid summary confirmance is high") (quoting Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir.2005)); Yusuf Ahmed Alghanim v. Toys "R" Us, 126 F.3d 15, 19 (2d Cir.1997) (stating that "[u]nder the Convention, the district court's role in reviewing a foreign arbitral award is strictly limited"). Similarly, pursuant to the FAA, confirmation of arbitral awards is required unless the party seeking to vacate establishes any of the limited exceptions provided by the statute or case law. See Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir.2005) (stating that an "arbitration decision must be confirmed if there is any basis for upholding the decision and "[i]f there is even a barely colorable justification for the outcome reached" ") (citation omitted). However, because the arbitration occurred in the United States, the Award as to the Commercial Risk Bermuda company is also governed by the FAA provisions applicable to domestic arbitration awards. See Zeiler, 500 F.3d at 164. | Arbitration that occurred in United States with one party that was not United States citizen was governed by Federal Arbitration Act (FAA) provisions applicable to domestic arbitration awards as well as Convention on Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C.A. SS 1 et seq., 201 et seq. | What law governs arbitration proceedings held in America involving at least one party that is not a United States citizen? | 002684.docx | LEGALEASE-00120133-LEGALEASE-00120134 | Condensed, Order, SA, Sub | 0.84 | 1 | 1 | 1 | 1 | 1 |
| 8119 | In re Steven Windsor, 201 B.R. 133 | 233+930 | Under common law, abandonment is deemed to have occurred "when a tenant voluntarily relinquishes or vacates the leased premises with the intention to terminate contractual rights to exclusive possession and control of the premises." 49 Am.Jur.2d, Landlord and Tenant, " 250, at 239 (1995); see also tenBraak v. Waffle Shops, Inc., 542 F.2d 919, 924 n. 5 (C.A.4 1976) ("As a general rule, an "abandonment" of a lease occurs when the lessee leaves the premises vacant with the avowed intention not to pay rent"). Thus, to constitute abandonment of the premises, one must demonstrate absolute vacation of the premises, and a clear intent not to pay rent or to be bound by the lease. tenBraak, 542 F.2d at 924 n. 5; see also Nehi Bottling Co., Inc. v. All"American Bottling Corp., 8 F.3d 157, 162"63 (C.A.4 1993) (applying Virginia law). | Under common law, "abandonment" is deemed to have occurred when tenant voluntarily relinquishes or vacates the leased premises with intention to terminate contractual rights to exclusive possession and control of the premises; thus, to constitute abandonment of the premises, one must demonstrate absolute vacation of the premises, and clear intent not to pay rent or to be bound by the lease. | Does abandonment of leased premises require the element of voluntary relinquishment? | 002737.docx | LEGALEASE-00120226-LEGALEASE-00120227 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 8120 | Jo-Mark Sand & Gravel Co. v. Pantanella, 139 Conn. 598 | 238+44(2) | The pivotal question in this case is whether the agreement between the parties was a lease of the land or a grant of a right or license to go upon it and remove sand, stone and gravel. "A lease is more than a mere license; it is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense." Branch v. Doane, 17 Conn. 402, 411; Loomis v. G. F. Heublein & Bros., 91 Conn. 146, 150, 99 A. 483; 1 Tiffany, Real Property (3d Ed.) " 79; 51 C.J.S., Landlord and Tenant, " 202, p. 806. The agreement conferred a right known technically as a profit a prendre. Pierce v. Keator, 70 N.Y. 419, 421; Payne v. Sheets, 75 Vt. 335, 345, 55 A. 656; Baker v. Kenney, 145 Iowa 638, 642, 124 N.W. 901; see Gateward's Case, 6 Co.Rep. 59b, 77 Eng.Rep. 344, 10 Eng.Rul.Cas. 245 and note, 249; 28 C.J.S., Easements, " 3, p. 632. A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. Carroll v. Cooney, 116 Conn. 112, 115, 163 A. 599; see Bieluczyk v. Crown Petroleum Corporation, 134 Conn. 461, 468, 58 A.2d 380; 1 Underhill, Landlord & Tenant, " 173; 32 Am.Jur. 30. | A "lease" is more than a mere license; it is a contract for possession and profits of lands and tenements on one side, and recompense of grant or other income on the other, or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return or other recompense. | Is a lease more than a mere license? | 002751.docx | LEGALEASE-00120240-LEGALEASE-00120241 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8121 | Santana v. Georgia Power Co., 269 Ga. 127 | 92+3751 | Appellants also argue that the HVSA is unconstitutional in that it denies them equal protection of the law because it gives a special privilege to owners and operators of high-voltage lines by absolving them of liability while not affording the same privilege to any other businesses that are involved in the delivery of dangerous or hazardous products. "[A] claimant wishing to assert an equal protection claim " ... must establish that he is similarly situated to members of the class who are treated differently from him." [Cit.] If that point cannot be established, there is no need to continue with an equal protection analysis. [Cit.]" Lowe v. State, 267 Ga. 754(1), 482 S.E.2d 344 (1997). Since appellants are members of neither class as to which they contend there is disparate treatment by the HVSA, they cannot establish the threshold requirement for an equal protection claim and the trial court was correct in rejecting the claim. | Injured workers were not in either protected or disfavored class under High-Voltage Safety Act (HVSA) and, thus could not establish that HVSA violated equal protection by giving special privilege to owners and operators of high-voltage lines when it absolved them of liability if they did not receive notice of work being done nearby, while not affording same privilege to any other businesses involved in delivery of dangerous or hazardous products. U.S.C.A. Const.Amend. 14; O.C.G.A. SS 46-3-34(b), 46-3-39(a). | What is the purpose of the High-Voltage Safety Act? | Electricity - Memo 43 - SAS.docx | ROSS-003284817-ROSS-003284818 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 8122 | People v. Knapp, 15 Ill. 2d 450 | 207+4 | The gravamen of the crime of incest, as of sodomy, is the unlawful carnal knowledge of the body; and where the unlawful carnal knowledge of the body, even though abnormal and perverted, is coupled with the relationship of father and daughter, it is within the incest statute here involved, and it is incest, even though the carnal knowledge is of a sort to invoke the statutory definition of a crime against nature. | Statute defining crime of incest of father with daughter does not limit guilt to actual sexual intercourse between father and daughter and includes unlawful carnal knowledge of the body even though abnormal and perverted and even though the carnal knowledge is of a sort to invoke the statutory definition of a crime against nature. S.H.A. ch. 38, S 374. | Is carnal knowledge an element of the crime of incest? | Incest - Memo 78 - RK.docx | ROSS-003297695 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8123 | Mercer v. State, 83 Fla. 555 | 207+10 | The indictment sufficiently charges the offense of incest under our statute. It charges that on a day certain the defendant in the county of Hardee and state of Florida "did have sexual intercourse with Fannie Mercer; that the said Fannie Mercer was then and there the own daughter of said Lewis Mercer, and the said Lewis Mercer was then and there the own father of the said Fannie Mercer." See section 5414, Rev. Gen. Stats.1920; Brown v. State, 42 Fla. 184, 27 South. 869; McCaskill v. State, 55 Fla. 117, 45 South. 843. It is in the discretion of the court to allow a plea of not guilty to be withdrawn in order to plead in abatement. See Savage v. State, 18 Fla. 909; Adams v. State, 28 Fla. 511, 10 South. 106; Knight v. State, 44 Fla. 94, 32 South. 110. A plea of not guilty is a waiver of the right to plead in abatement in a criminal case. See Hodge v. State, 29 Fla. 500, 10 South. 556. | An indictment, charging that the defendant did, on a day certain in a county named of the state of Florida, have sexual intercourse with a certain person named, and that such person was then and there the own daughter of the defendant and he was then and there the own father of the person named, sufficiently charges the offense of incest under the statute. | "Is a person sufficiently charged with incest when the indictment lists the date, county, and time when he carnally knew a family member?" | 003210.docx | LEGALEASE-00120568-LEGALEASE-00120569 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8124 | Dangerfield v. WAVY Broad., 228 F. Supp. 3d 696 | 237+123(2) | Defendants argue that the broadcast report that Plaintiff was "arrested" is not an actionable statement of defamation because, while it may be false, it is not defamatory. Defs.' Opening Br. 8. In addition to being false, a statement must be defamatory in order to be actionable. Chapin, 993 F.2d at 1092. Unlike falsity, "[t]he question [of] whether a statement is capable of having a defamatorymeaning is a question of law to be decided by the court." Hatfill v. N.Y. Times Co., 416 F.3d 320, 330 (4th Cir. 2005) (citing Yeagle v. Collegiate Times, 255 Va. 293, 497 S.E.2d 136, 138 (1998)). The Court may determine either (1) that a statement is defamatory as a matter of law ("per se defamatory"), or (2) that a statement is capable of a defamatorymeaning, with the jury ultimately determining whether the statement harmed the Plaintiff's reputation. See id. A false statement that is either defamatory per se or capable of a defamatorymeaning and that harmed the Plaintiff's reputation is an actionable statement of defamation. Chapin, 993 F.2d at 1092. | Under Virginia law, a court may determine either (1) that a statement is defamatory as a matter of law, i.e., "per se defamatory", or (2) that a statement is capable of a defamatory meaning, with the jury ultimately determining whether the statement harmed the plaintiff's reputation. | What is the role of the Court and jury in determining the defamatory meaning of a statement? | 003294.docx | LEGALEASE-00120579-LEGALEASE-00120581 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8125 | Houston v. Bank of Am. Fed. Sav. Bank, 119 Nev. 485 | 266+1376 | The third approach, the view adopted by section 7.6 of the Restatement (Third) of Property: Mortgages, disregards actual or constructive notice if the junior lien holder is not prejudiced. Under the Restatement, a mortgagee will be subrogated when it pays the entire loan of another as long as the mortgagee "was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate." Because the Restatement approach is the most persuasive, we adopt the view expressed by it. | The Supreme Court would adopt subsection in Restatement (Third) of Property: Mortgages, providing that a lender who pays off a prior note succeeds to the prior lender's priority lien position and, thus, is equitably subrogated to the former lender's priority lien position, as long as the lender was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged and if subrogation will not materially prejudice the holders of intervening interests in the real estate. Restatement (Third) of Property (Mortgages) S 7.6(b)(4). | What is the scope of Restatement Approach to subrogation? | 003584.docx | LEGALEASE-00120390-LEGALEASE-00120391 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 8126 | In re Monaco, 514 B.R. 477 | 366+1 | Like Tag, SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff...." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Under Texas law, the general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. | Is the general purpose of equitable subrogation to prevent unjust enrichment of the debtor that owed the debt being paid? | Subrogation - Memo 74 - ANG C.docx | ROSS-003285615-ROSS-003285616 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 8127 | Goedmakers v. Goedmakers, 520 So. 2d 575 | 401+4 | Clearly, many in personam actions involve real property. However, the presence of real property as an issue does not make it a local action. Whether or not the action is local or transitory depends upon the underlying major question in the case. Lakeland Ideal Farm & Drainage District v. Mitchell, 97 Fla. 890, 122 So. 516 (1929). As the Fourth District explained in Sales v. Berzin, 212 So.2d 23, 24 (Fla. 4th DCA 1968), when a plaintiff seeks to compel a change in the title to real property, the local action rule requires the suit to be brought in the county where the land is situated. However, when the suit is merely for payment of money, such as the purchase price of the property, there is no "property in litigation" and the third alternative location specified in the venue statute is not available to the plaintiff. Id. at 25. See also Coon v. Abner, 246 So.2d 143 (Fla. 3d DCA 1971) (in suit for cancellation of note on real property located in Dade County, venue proper in Orange County where note was executed and made payable, not in Dade County); Royal v. Parado, 462 So.2d 849 (Fla. 1st DCA 1985) (action for rescission or cancellation of contract for sale or exchange of land is transitory, not local action required to be brought where the land is located); Jutagir v. Marlin, 453 So.2d 503 (Fla. 3d DCA 1984) (complaint to rescind agreement to sell land to which there was counterclaim for specific performance is purely an in personam action and not a local action which had to be heard where the land was located); St. Laurent v. Resort Marketing Associates, Inc., 399 So.2d 362 (Fla. 2d DCA 1981) (in suit for breach of sales marketing agreement for sale of ownership units at condominium resort located in Monroe County, no property in litigation, as such). | Fact that in personam action involves real property does not make it a local action for venue purposes; whether action is local or transitory depends upon the underlying major question in the case. West's F.S.A. S 47.011. | "In the case of in personam actions, does the presence of real property as an issue make it a local action?" | Venue - Memo 65 - RK.docx | ROSS-003289314-ROSS-003289316 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8128 | Goedmakers v. Goedmakers, 520 So. 2d 575 | 401+4 | Clearly, many in personam actions involve real property. However, the presence of real property as an issue does not make it a local action. Whether or not the action is local or transitory depends upon the underlying major question in the case. Lakeland Ideal Farm & Drainage District v. Mitchell, 97 Fla. 890, 122 So. 516 (1929). As the Fourth District explained in Sales v. Berzin, 212 So.2d 23, 24 (Fla. 4th DCA 1968), when a plaintiff seeks to compel a change in the title to real property, the local action rule requires the suit to be brought in the county where the land is situated. However, when the suit is merely for payment of money, such as the purchase price of the property, there is no "property in litigation" and the third alternative location specified in the venue statute is not available to the plaintiff. Id. at 25. See also Coon v. Abner, 246 So.2d 143 (Fla. 3d DCA 1971) (in suit for cancellation of note on real property located in Dade County, venue proper in Orange County where note was executed and made payable, not in Dade County); Royal v. Parado, 462 So.2d 849 (Fla. 1st DCA 1985) (action for rescission or cancellation of contract for sale or exchange of land is transitory, not local action required to be brought where the land is located); Jutagir v. Marlin, 453 So.2d 503 (Fla. 3d DCA 1984) (complaint to rescind agreement to sell land to which there was counterclaim for specific performance is purely an in personam action and not a local action which had to be heard where the land was located); St. Laurent v. Resort Marketing Associates, Inc., 399 So.2d 362 (Fla. 2d DCA 1981) (in suit for breach of sales marketing agreement for sale of ownership units at condominium resort located in Monroe County, no property in litigation, as such). | Fact that in personam action involves real property does not make it a local action for venue purposes; whether action is local or transitory depends upon the underlying major question in the case. West's F.S.A. S 47.011. | "n the case of in personam actions, does the presence of real property as an issue make it a local action?" | Venue - Memo 65 - RK.docx | LEGALEASE-00010351-LEGALEASE-00010353 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8129 | Nueces Cty. Water Improvement Dist. No. 1 v. Spring, 162 S.W.2d 155 | 317A+101 | Appellee admittedly desires to use his property for the purpose of maintaining a dog and cat hospital. Such use is neither illegal nor violative of any rule of public policy. This being true, appellant was not justified in its refusal to deliver water to appellee. It is well settled that "a public utility corporation can not refuse to render the service which it is authorized by its charter (or by law) to furnish, because of some collateral matter not related to that service." Annotations 55 A.L.R. 771; Allen v. Park Place Water, Light & Power Co., Tex.Civ.App., 266 S.W. 219; Ten Broek v. Miller, 240 Mich. 667, 216 N.W. 385, 55 A.L.R. 768. | A public utility corporation cannot refuse to render the service which it is authorized by its charter or by law to furnish, because of some collateral matter not related to that service. | Can a public utility corporation refuse to render the service authorized by its charter to furnish? | 002516.docx | LEGALEASE-00120793-LEGALEASE-00120794 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 8130 | Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia, 307 S.W.3d 243 | 148+266 | We do not believe this instruction was erroneously given. "[A] verdict-directing instruction must hypothesize and require a finding of all the elements essential in law to establish the proposition upon which the verdict is based." Matta v. Welcher, 387 S.W.2d 265, 273"74 (Mo.App.1965). An action for inverse condemnation arising from nuisance requires a showing of notice and unreasonable operation. Basham, 257 S.W.3d at 654. "Injury, damage, and causation are essential elements required for recovery on the basis of nuisance." Christ v. Metro. St. Louis Sewer Dist., 287 S.W.3d 709, 711"12 (Mo.App. E.D.2009). The second paragraph of the instruction required the jury to find the City had notice of a deficiency, the third required a finding of unreasonable operation of the sewer system after notice, the fourth required the jury to find the unreasonable operation caused injury to Rader, and the fifth required the jury to find the injury resulted in Rader's damages. Consequently, the instruction required the jury to find in favor of Rader on each element of its case. | An action for inverse condemnation arising from nuisance requires a showing of notice and unreasonable operation; and injury, damage, and causation are essential elements required for recovery on the basis of nuisance. | What are the elements of an inverse condemnation action based on nuisance? | Eminent Domain - Memo 143 - RK.docx | ROSS-003281903-ROSS-003281904 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8131 | Native Am. Arts v. Bundy-Howard, 168 F. Supp. 2d 905 | 209+129 | And even if that view were considered to contain some punitive element in terms of the compensation of private injury alone, in this instance Congress also intended to address and deter the overall harm to the public caused by counterfeit Indian products: Here the Act's legislative history confirms its purposes of (1) protecting Indian artists from unfair competition from counterfeiters and (2) protecting consumers from unknowingly purchasing imitation products (H.R.Rep. No. 101"400(I) and 101"400(II), 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6382, 6382"84 and 6391, 6391"94).Relatedly, the Act was also intended to protect and preserve an important aspect of Native American culture (see 136 Cong.Rec. H8291"01, H8293 (1990)). | The Indian Arts and Crafts Act (IACA) has purposes of (1) protecting Indian artists from unfair competition from counterfeiters and (2) protecting consumers from unknowingly purchasing imitation products. 25 U.S.C.A. S 305e. | Does Indian Arts and Crafts Act (IACA) protect consumers from purchasing misrepresented products? | 003228.docx | LEGALEASE-00120727-LEGALEASE-00120728 | Condensed, Order, SA, Sub | 0.7 | 1 | 1 | 1 | 1 | 1 |
| 8132 | Booker v. Special Sch. Dist. No. 1, Minneapolis, Minn., 585 F.2d 347 | 209+130 | There is no question that in certain contexts separate classification and treatment of Indians as a race are constitutionally permissible in the light of the unique status of Indians in this country, and in the light of history and policy. In addition to the vast number of federal statutes that deal with Indians as Indians See such opinions as United States v. Antelope, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); Moe v. Confederated Tribes, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); Fisher v. Dist. Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). | In certain contexts, separate classification and treatment of Indians as a race is constitutionally permissible in the light of unique status of Indians in the country and in light of history and policy. | Is separate classification and treatment of Indians as a race constitutionally permissible? | Indians - Memo 47 - BP.docx | LEGALEASE-00010441-LEGALEASE-00010442 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8133 | Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc., 504 F.3d 189 | 237+5 | False statements are defamatory per se if they relate to a profession, occupation, or official station in which the plaintiff was employed. See Saunders v. VanPelt, 497 A.2d 1121, 1124"25 (Me.1985). In such cases, malice is implied as a matter of law, and a plaintiff may recover a compensatory award without proving special damages. Farrell v. Kramer, 159 Me. 387, 193 A.2d 560, 562 (1963). Per se defamation may not be actionable, however, if it is privileged. See Bearce v. Bass, 88 Me. 521, 34 A. 411, 413 (1896). "A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered speech." Lester v. Powers, 596 A.2d 65, 69 (Me.1991). | Under Maine law, malice is implied as matter of law if defamatory statements relate to plaintiff's profession, occupation, or official station, and plaintiff may recover compensatory award without proving special damages. | When is malice implied in an action for defamation? | 003340.docx | LEGALEASE-00120819-LEGALEASE-00120820 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8134 | Rothschild v. World-Wide Automobiles Corp., 24 A.D.2d 861 | 302+8(3) | Order, entered on or about July 22, 1965, herein appealed from, unanimously reversed, on the law, and the complaint as to appellant dismissed, with $30 costs and disbursements to the appellant. In the unverified complaint the 4th, 5th, 8th and 9th causes deal solely with appellant Dretzin. Many of the allegations of the first cause of action are incorporated by reference in these causes. It is alleged that Dretzin willfully interfered with and induced a breach of contract, that he induced others to conspire in restraint of trade, and that he willfully and maliciously engaged in certain acts contrary to public policy. Dretzin was a stockholder of defendants World-Wide Automobiles Corporation (World-Wide) and Queensboro Motors, Inc. (Queensboro) and it is alleged in the complaint that he was an officer and director of both corporations. Basically, plaintiff complains that by reason of Dretzin's actions he was not given an automobile dealership by World-Wide in certain territory but was offered such opportunity in a more distant area. The initial territory would have been competitive with both World-Wide and Queensboro. The general principle is that when an officer or director acts on behalf of a corporation and within the scope of his authority, such director or officer "may not be held liable where his corporation has been allegedly induced by him to violate its contractual obligation" unless his activity involves separate tortious acts (Greyhound Corp. v. Commercial Casualty Ins. Co., 259 App.Div. 317 at 319, 19 N.Y.S.2d 239 at 241; A. S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371). There must be the intentional doing of the alleged wrongful act, in this case a claimed interference with contractual rights, without "legal or social justification" (Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1). Moreover, mere conclusory allegations of a conspiracy without a showing of unlawful or wrongful acts by Dretzin do not create a cause | Mere conclusory allegations of conspiracy without showing of unlawful or wrongful acts by defendant do not create cause of action. | Do allegations of a conspiracy without a showing of wrongful or unlawful acts create a cause of action? | 003465.docx | LEGALEASE-00120870-LEGALEASE-00120872 | Condensed, SA, Sub | 0.96 | 0 | 1 | 1 | 1 | 1 |
| 8135 | Estate of Swift v. Ne. Hosp. of Philadelphia, 456 Pa. Super. 330 | 302+48 | In this Commonwealth, the pleadings must define the issues and thus every act or performance essential to that end must be set forth in the complaint. Santiago v. Pennsylvania National Mutual Casualty Insurance Co., 418 Pa.Super. 178, 185, 613 A.2d 1235, 1238 (1992). The purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the causes of action from a pleading of facts which obscurely support the claim. Krajsa v. Keypunch, Inc., 424 Pa.Super. 230, 236, 622 A.2d 355, 357 (1993). | Pleadings must define the issues, and thus every act or performance essential to that end must be set forth in complaint. | Should a complaint set forth every act or performance essential to define the issues? | Pleading - Memo 96 - RK.docx | ROSS-003310559-ROSS-003310561 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8136 | Navajo Nation v. Urban Outfitters, 191 F. Supp. 3d 1238 | 209+129 | In the context of federal statutes, like the IACA, courts must construe such statutes "liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." Ramah Navajo Chapter v. Lujan, 112 F.3d 1455, 1461 (10th Cir.1997). "[T]he legislative judgment [of Congress] should not be disturbed as long "[a]s the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians....' "Delaware Tribal Business Committee v. Weeks, 430 U.S. 73, 75, 97 S.Ct. 911, 51 L.Ed.2d 173, (1977) (quotingMorton v. Mancari, 417 U.S. 535, 555, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). See alsoNative American Arts, Inc. v. Contract Specialties, Inc., 754 F.Supp.2d 386, 393 (R.I. 2010) (determining that IACA subsection illustrating "Indian" products not vague and overbroad in violation of First Amendment). | In the context of federal statutes, like the Indian Arts and Crafts Act (IACA), courts must construe such statutes liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit. 25 U.S.C.A. S 305 et seq. | Will the courts construe the statutes liberally in favor of the Indians Tribes? | 003226.docx | LEGALEASE-00120721-LEGALEASE-00120722 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8137 | Lundell Mfg. Co. v. Am. Broad. Companies, 98 F.3d 351 | 237+48(1) | In determining whether an individual should be considered a limited public figure, we must focus our attention on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Gertz, 418 U.S. at 352, 94 S.Ct. at 3013. By so doing, we then can determine whether the individual has voluntarily and purposefully injected himself into that controversy in an attempt to influence the resolution of the controversy. Id. at 345, 94 S.Ct. at 3009"10. | In determining whether individual should be considered limited public figure for purpose of defamation action, Court of Appeals must focus its attention on nature and extent of individual's participation in particular controversy giving rise to defamation, and by so doing, determine whether individual has voluntarily and purposefully injected himself into that controversy in attempt to influence resolution of controversy. | How can an individual be determined to be a public figure? | 003344.docx | LEGALEASE-00120823-LEGALEASE-00120824 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 8138 | Aaron v. Dausch, 313 Ill. App. 524 | 302+8(3) | There seems to be a further question that was before the court and that is whether a fiduciary relationship is created when one becomes a trustee in a trust deed. In determining whether such facts are alleged to show a fiduciary relationship, it is necessary to consider what situation creates a fiduciary relationship. In the first place the trustee named in a trust deed acts for both the mortgagor and the bondholders, and until default it is the trustee for the mortgagor. From an examination of the counter"claim we find the allegations that in August, 1928, some of the cross"defendants named were stockholders, employees, officers and directors in charge of the supervision and management of the Schiff Trust & Savings Bank; that the bank was then in the business of making real estate loans secured by trust deeds on property, in which trust deeds the said Bank was named as trustee; and that on August 14, 1928, cross"plaintiff negotiated a loan through said bank, and signed and executed a trust deed conveying her premises as indicated in this opinion to said bank as trustee to secure the payment of certain notes or bonds executed by her at the request of the bank, its agents and employees. It is contended by counter"plaintiff that those allegations are direct and of sufficient nature under the law to create a fiduciary relationship, because until default the bank, acting through its officers, which is named as trustee in the trust deed, was the trustee for the mortgagor who is the cross"plaintiff in this case. Cross"plaintiff in her counter"claim repeatedly alleged the motives and purposes with which various acts, otherwise lawful, were done. Such allegations would seem to be only conclusions, and subject to condemnation by the general rule that a mere averment that an act was done with a certain purpose or intent, without a statement of the facts showing such purpose or intent, is a conclusion of law. It is essential that the facts and circumstances, which constitute the | Generally, a mere averment that an act was done with a certain purpose or intent, without a statement of the facts showing such purpose or intent, is a "conclusion of law". | "Are statements of purpose or intent without facts showing such purpose or intent, conclusions of law?" | Pleading - Memo 100 - RK.docx | LEGALEASE-00010755-LEGALEASE-00010756 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8139 | Norkin v. U. S. Fire Ins. Co., 237 Cal. App. 2d 435 | 302+8(15) | Initially it is to be noted that "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (Hannon v. Madden, 214 Cal. 251, 267, 5 P.2d 4, 11.)"The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i. e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' (2 Witkin, Summary of California Law, p. 1372.) It is not necessary to consider whether plaintiff has sufficiently pleaded the latter four elements of fraud, for it is clear that he has not sufficiently alleged the first element, namely, a false representation. | Fraud must be pleaded in specific language descriptive of the acts relied upon to constitute fraud, and it is not sufficient to allege fraud in general terms or terms amounting to mere conclusions. | Is it sufficient to allege fraud in general terms? | 003472.docx | LEGALEASE-00120933-LEGALEASE-00120934 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 8140 | Ileto v. Glock, 565 F.3d 1126 | 92+3952 | Plaintiffs also argue that greater scrutiny is required because they have a vested property right in their accrued state-law causes of action. Plaintiffs' premise is incorrect: "We have squarely held that although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." Lyon, 252 F.3d at 1086 (emphasis and internal quotation marks omitted); see also Fields v. Legacy Health Sys., 413 F.3d 943, 956 (9th Cir.2005) ("Causes of action are a species of property protected by the Fourteenth Amendment's Due Process Clause. However, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." (citation, internal quotation marks, and emphasis omitted)); Austin v. City of Bisbee, 855 F.2d 1429, 1435 (9th Cir.1988) (explaining that, although a cause of action is a species of property, "it is inchoate and affords no definite or enforceable property right until reduced to final judgment" (internal quotation marks omitted)). | Although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained. U.S.C.A. Const.Amend. 14. | Does a party's property right in any cause of action vest until a final unreviewable judgment is obtained? | 017381.docx | LEGALEASE-00120963-LEGALEASE-00120964 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 8141 | State v. Vickens, 186 Mo. 103 | 231H+2556 | This prosecution is based upon an alleged violation of the factory inspection law of 1901, approved April 17, 1901 (Laws Mo. 1901, pp. 197, 198). By said act it is provided that the Governor shall appoint a state factory inspector, who is authorized to appoint from time to time seven assistants, and to divide the state into districts, and assign one inspector to each district; and each inspector is required to make two inspections each year of all factories, and for each inspection such inspector is required to collect $1 as an inspection fee, and all such fees are required to be paid into the state treasury. The failure to pay the fee for the inspection made May 6, 1902, is the ground of this prosecution. The information, though somewhat inartistically drawn, follows the statute, and is sufficient. The objections to the law are that it "violates sections 3 and 4 of article 10 of the Missouri Constitution, in that it imposes a burden of taxation for the maintaining of the inspection department upon one class of citizens, and discriminates against said class; second, that they provide for the taking of money and liberty from manufacturers without due process of law, and deny to them the equal protection of the laws; third, that they vest judicial powers in the factory inspector; fourth, that they are a delegation of legislative power to the factory inspector; fifth, that they discriminate against city manufacturers, and place greater burdens upon them than upon country manufacturers; sixth, that they are in violation of the fourteenth amendment to the Constitution of the United States, in that they deprive defendant of his liberty without due process of law, and deny him the equal protection of the law." | Laws 1901, pp. 197, 198, directing the Governor to appoint a state factory inspector, who is authorized to appoint assistants, who are required to make two inspections in each year of all factories in the state, and to collect an inspection fee of $1, to be paid into the state treasury, is a valid exercise of the police power. | Are inspection fees required to be paid into the state treasury? | Inspection - Memo 23 - SH.docx | ROSS-003325491-ROSS-003325493 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 8142 | Glenwood TV v. Ratner, 103 A.D.2d 322 | 349+79 | To be sure, there are limitations. "Unbridled" administrative discretion will not do (see Donovan v. Dewey, 452 U.S. 594, 599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262, supra; Marshall v. Barlow's, Inc., 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305, supra ). The propriety of a warrantless administrative inspection scheme is measured by a balancing of enforcement goals and needs against the privacy and regulatory guarantees within the statutory framework (Marshall v. Barlow's, Inc., supra ). Inasmuch as the inspections here were limited to required records and the licensees' public areas, the statutory safeguards were sufficient to protect their legitimate privacy concerns (see, e.g., United States ex rel. Terraciano v. Montanye, 493 F.2d 682, supra ). | Propriety of warrantless administrative inspection scheme is measured by balancing of enforcement goals and needs against privacy and regulatory guarantees within statutory framework. U.S.C.A. Const.Amend. 4. | How is the propriety of a warrantless administrative inspection scheme measured? | Inspection - Memo 24 - SH.docx | ROSS-003302387-ROSS-003302388 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 8143 | Grunwald v. McCall, 2014 Ark. App. 596 | 307A+3 | First, the issue of whether the court erred by taking judicial notice of an expert witness's prior testimony is not preserved for our review. Grunwald had filed a motion in limine on this point, but failed to obtain a ruling. When the court declines to rule on a motion in limine, it is necessary for counsel to make a specific objection during the trial. Massengale v. State, 319 Ark. 743, 894 S.W.2d 594 (1995). Because she failed to object at trial, we cannot consider her argument. Travis Lumber Co. v. Deichman, 2009 Ark. 299, 319 S.W.3d 239. | When the court declines to rule on a motion in limine, it is necessary for counsel to make a specific objection during the trial. | "When the court declines to rule on a motion in limine, is it necessary for counsel to make a specific objection during the trial?" | Pretrial Procedure - Memo # 135 - C - ES.docx | ROSS-003297363-ROSS-003297364 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8144 | People v. Hancock, 2014 IL App (4th) 131069 | 307A+3 | With the issue thus circumscribed, we have even greater difficulty finding an abuse of discretion. If the ruling is only provisional and made "in a vacuum" (Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 205, 169 Ill.Dec. 200, 591 N.E.2d 80 (1992)), it is difficult to condemn it as arbitrary and unreasonable. No actual prejudice is inflicted by the denial of a motion in limine, in itself, because the ruling "is always subject to reconsideration during trial." People v. Drum, 321 Ill.App.3d 1005, 1008, 254 Ill.Dec. 898, 748 N.E.2d 344 (2001). Perhaps that is why the supreme court has held: "The denial of a motion in limine does not in itself preserve an objection to disputed evidence that is introduced later at trial. When a motion in limine is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review." (Internal quotation marks omitted.) Simmons v. Garces, 198 Ill.2d 541, 569, 261 Ill.Dec. 471, 763 N.E.2d 720 (2002). In other words, for appellate purposes, the denial of a motion in limine is a nonevent, considering that the motion serves merely as the preview of an objection that must be made during the trial, in response to some particular evidence that the opposing party offers. | No actual prejudice is inflicted by the denial of a motion in limine, in itself, because the ruling is always subject to reconsideration during trial. | "Is actual prejudice inflicted by the denial of a motion in limine, in itself, because the ruling is always subject to reconsideration during trial?" | Pretrial Procedure - Memo # 136 - C - ES.docx | ROSS-003297192-ROSS-003297193 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8145 | People v. Carpenter, 385 Ill. App. 3d 156 | 30+3209 | This question of construction occurs within the context of defendant's petition to rescind and motion in limine. Generally, a trial court's decision to grant a motion in limine will not be reversed on appeal unless the trial court abused its discretion. People v. Claudio, 371 Ill.App.3d 1067, 1069, 309 Ill.Dec. 713, 864 N.E.2d 954 (2007). Where the issue on appeal is purely a question of law, however, our review is de novo. Claudio, 371 Ill.App.3d at 1069, 309 Ill.Dec. 713, 864 N.E.2d 954. The same is true regarding the trial court's decision granting defendant's petition to rescind the summary suspension of his license: our review is de novo. See People v. Aleliunaite, 379 Ill.App.3d 975, 980, 319 Ill.Dec. 192, 885 N.E.2d 463 (2008) ("Although we generally reverse a trialcourt's ruling on a petition to rescind a defendant's summary suspension only if that finding is against the manifest weight of the evidence [citation], our review here is de novo, as the facts are not in dispute" and the issue presented is a question of law). | Generally, a trial court's decision to grant a motion in limine will not be reversed on appeal unless the trial court abused its discretion; however, where the issue on appeal is purely a question of law, appellate court's review is de novo. | Does a trial judge have discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused? | 027689.docx | LEGALEASE-00121245-LEGALEASE-00121246 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8146 | Patterson v. Douglas Women's Ctr., P.C., 258 Ga. 803 | 241+130(5) | We have held that this statute is remedial and is to be construed liberally. The "privilege" of dismissal and renewal does not apply to cases decided on their merits or to void cases, but does allow renewal if the previous action was merely voidable. See generally Cutliffe v. Pryse, 187 Ga. 51, 54, 200 S.E. 124 (1938); Keramidas v. Dept. of Human Resources, 147 Ga.App. 820, 821, 250 S.E.2d 560 (1978). | "Privilege" of dismissal of cause of action and renewal, pursuant to statute providing for renewal of actions within six months of their dismissal, does not apply to cases decided on their merits or void cases, but does allow renewal if previous action was merely voidable. O.C.G.A. S 9-2-61. | Does the privilege of dismissal and renewal apply to cases decided on their merits or to void cases? | Pretrial Procedure - Memo # 5 - C - SU.docx | ROSS-003302529-ROSS-003302530 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 8147 | State Farm Mut. Auto. Ins. Co. v. Illinois Farmers Ins. Co., 368 Ill. App. 3d 914 | 208+20 | Indemnification involves an entity pursuing its rights in its own name, while subrogation involves a subrogee succeeding to another's right to payment. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill.2d 307, 316, 290 Ill.Dec. 218, 821 N.E.2d 269 (2004). Indemnification and subrogation are devices that are used to place the entire burden for a loss on the party that is ultimately liable for it. Home Insurance, 213 Ill.2d at 316, 290 Ill.Dec. 218, 821 N.E.2d 269, citing 15 Couch on Insurance " 217:5 (rev.2004). Conversely, in the context of insurance law, contribution is an equitable principle permitting one coinsurer that has paid the total loss or a greater than its share of the loss to be reimbursed from other insurers liable for the same loss. Home Insurance, 213 Ill.2d at 316, 290 Ill.Dec. 218, 821 N.E.2d 269, citing Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 322, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998); Royal Globe Insurance Co. v. Aetna Insurance Co., 82 Ill.App.3d 1003, 1005, 38 Ill.Dec. 449, 403 N.E.2d 680 (1980), and 15 Couch on Insurance " 217:5 (rev.2004). According to the Home case, contribution applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests and the same risks. Home Insurance, 213 Ill.2d at 316, 290 Ill.Dec. 218, 821 N.E.2d 269, citing Royal Globe Insurance, 82 Ill.App.3d at 1005, 38 Ill.Dec. 449, 403 N.E.2d 680. Home Insurance holds that the remedies of contribution and indemnity are mutually exclusive and contribution is prohibited where a party has a right to indemnity. Home Insurance, 213 Ill.2d at 316, 290 Ill.Dec. 218, 821 N.E.2d 269, citing 18 C.J.S. Contribution " 26, at 30 (1990). | "Indemnification" involves an entity pursuing its rights in its own name, while "subrogation" involves a subrogee succeeding to another's right to payment. | "Does indemnification involve an entity pursuing its rights in its own name, while subrogation involves a subrogee succeeding to another's right to payment?" | 043683.docx | LEGALEASE-00121276-LEGALEASE-00121277 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8148 | Bennett Truck Transp. v. Williams Bros. Const., 256 S.W.3d 730 | 366+1 | We agree that Bennett is entitled to attempt to prove its equitable subrogation theory. Bennett paid full damages to the property owner as an insurer, and thus it should not be precluded from pursuing equitable subrogation as a matter of course without examining the facts of the case. See Ward, 231 F.3d at 139"40 (holding that because common carriers are insurers and insurers have subrogation rights, common carriers have subrogation rights). Williams Brothers asserts that common carriers are not truly insurers because they can avoid liability in some circumstances. See Travelers Ins. Co., 498 S.W.2d at 445; Mo. Pac. R.R., 380 S.W.2d at 707. That common carriers may have different avenues to avoid liability does not negate that they are generally liable for any property damage during transit, regardless of their own negligence. See Mo. Pac. R.R., 380 S.W.2d at 707. Williams Brothers asserts that Bennett's driver was likely negligent and thus, Williams Brothers "is no more "primarily liable" than Bennett and its driver." As discussed above, Williams Brothers's negligence is in dispute, and as Bennett points out, Bennett's negligence or lack thereof is a fact issue for the jury. Equitable subrogation is an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation. See Murray, 257 S.W.3d at 296, 2008 WL 1838014, (stating that "each case turns on its own facts when the issue is one of purely equitable subrogation" and that factors to consider in balancing the equities include "the negligence of the party claiming subrogation"); see also Providence Inst. for Savs. v. Sims, 441 S.W.2d 516, 519 (Tex.1969) (noting that a factor of "some importance" in assessing equitable subrogation is "[n]egligence on the part of one seeking subrogation").Further, a party is not entitled to equitable subrogation if it pays a debt for which it was primarily liable. See Mid"Continent, 236 | Equitable subrogation is an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation. | "Is equitable subrogation an equitable remedy that involves balancing of all the equities in the circumstances, including any negligence of the party seeking subrogation?" | 043781.docx | LEGALEASE-00121659-LEGALEASE-00121661 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8149 | Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307 | 208+20 | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. 15 Couch on Insurance 3d " 217:5 (rev.2004). Indemnification differs from subrogation in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment. 15 Couch on Insurance 3d " 217:5 (rev.2004). | "Indemnification" differs from "subrogation" in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment. | "Does indemnification differ from subrogation in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment?" | Subrogation - Memo # 612 - C - SA.docx | ROSS-003283716-ROSS-003283717 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 8150 | JPMorgan Chase Bank v. Cook, 318 F. Supp. 2d 159 | 366+7(1) | Equitable subrogation essentially provides that the guarantor of another's obligation may seek reimbursement from the obligor. It is relevant in the context of standby letters of credit, such as the Letter of Credit at issue here, because a standby letter of credit resembles, in some ways, a guarantee for another's loan. That is because a beneficiary of a standby letter of credit (here, Private Bank) may normally draw on the letter of credit issued by the issuer (here, JPM) only after a third party (here, Cook) defaults on a loan. See Carol Ruth, Inc. v. Provident Life and Accident Ins. Co., Dkt. No. 90 Civ. 2400(SWK)(LB), 1995 WL 130530 (S.D.N.Y. March 24, 1995). In such cases, issuers have sought to recover, not from the party that requested the letter of credit, but from the defaulting borrower. Courts grappling with this issue in the absence of a controlling statute have generally found that equitable subrogation does not apply to this situation because guarantees and letters of credit remain distinct in that an issuer's obligation under a letter of credit is primary, whereas a guarantor's obligation is secondary. Unlike a guarantor, who becomes subject to liability only if the borrower fails to fulfill its obligation to the borrower's creditor, an issuer of a letter of credit has a primary contractual obligation to the beneficiary, which is independent of the relationship between the beneficiary and its customer. See generally id. Thus, "[h]aving paid its own debt, as it has contractually undertaken to do, the issuer "cannot then step into the shoes of the creditor to seek subrogation, reimbursement or contribution from the [beneficiary's customer]." " Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co., 968 F.2d 357 (3d Cir.1992), quoting In re Kaiser Steel, 89 B.R. 150, 153 (Bankr.D.Colo.B.R.1988). | "Equitable subrogation" essentially provides that the guarantor of another's obligation may seek reimbursement from the obligor. | Does equitable subrogation essentially provide that the guarantor of another's obligation may seek reimbursement from the obligor? | 044005.docx | LEGALEASE-00121384-LEGALEASE-00121385 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8151 | Nat'l Am. Ins. Co. v. United States, 498 F.3d 1301 | 366+8 | Subsequent opinions of the Court of Claims and this court have reaffirmed, either explicitly or implicitly, the decision in United States Fidelity & Guaranty. See Dependable Ins. Co. v. United States, 846 F.2d 65, 67 (Fed.Cir.1988); Balboa, 775 F.2d at 1161; United Elec. Corp. v. United States, 227 Ct.Cl. 236, 647 F.2d 1082, 1083"86 (1981); Great Am. Ins. Co. v. United States, 203 Ct.Cl. 592, 492 F.2d 821, 828 (1974). In particular, in Balboa, under facts similar to the present case, we held that a payment bond surety could sue the United States for damages occasioned when the government made progress payments to a contractor, despite having been notified by the surety that it had made payments to subcontractors and materialmen and that payment should not be made without the surety's consent. 775 F.2d at 1163 ("[W]e hold that both the Claims Court and this court have jurisdiction to hear the claim of a Miller Act [payment bond] surety against the United States for funds allegedly improperly disbursed to a contractor."). Accordingly, it has been well-established that a payment bond surety that discharges a contractor's obligation to pay a subcontractor is equitably subrogated to the rights of both the contractor and subcontractor. | A payment bond surety that discharges a contractor's obligation to pay a subcontractor is equitably subrogated to the rights of both the contractor and subcontractor. | Is a payment bond surety that discharges a contractor's obligation to pay a subcontractor equitably subrogated to the rights of both the contractor and subcontractor? | Subrogation - Memo # 717 - C - NO.docx | ROSS-003323365-ROSS-003323367 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8152 | Kramer v. Mid-City Tr. & Sav. Bank, 225 Ill. App. 575 | 8.30E+66 | Where the drawer and drawee are the same person, then under section 129 of the Negotiable Instruments Act the holder may treat the instrument either as bill of exchange or a promissory note. The drafts in question were drawn by Mannie Goldstein. He was plaintiffs' recognized agent to purchase the potatoes, and authorized by them to draw on them to pay for the same. The drafts seem to have been cashed by the Charlevoix bank upon knowledge of the relation of the parties to the draft. In such a case it has been held that the draft is equivalent to one drawn by the principal upon himself and need not be accepted by the drawee to bind it under the Negotiable Instruments Act. (Artesia First Nat. Bank v. Home Ins. Co. of New York, 16 N. M. 66, 113 Pac. 815.) | Where the drawer and drawee are the same person, the holder may treat the instrument either as a bill of exchange or as a promissory note, under statute. S.H.A. ch. 98, S 151. | Does the holder have an option to treat the instrument as bill of exchange or promissory note when the drawer and drawee are same persons? | 018315.docx | LEGALEASE-00122270-LEGALEASE-00122272 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 8153 | Com. v. Hawkins, 549 Pa. 352 | 203+908 | In first degree murder cases, the Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation. 18 Pa.C.S. " 2502(d); Commonwealth v. Mitchell, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). When there is no direct evidence of intent to kill, the fact-finder may glean the necessary intent from the act itself and from all surrounding circumstances. Commonwealth v. Meredith, 490 Pa. 303, 311, 416 A.2d 481, 485 (1980). Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another. Id. Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder. See Commonwealth v. Simmons, 541 Pa. 211, 227"28, 662 A.2d 621, 628"29 (1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996) (evidence of manual strangulation of victim sufficient to establish specific intent required for first-degree murder). | Specific intent to kill can be proven where defendant knowingly applies deadly force to another person. 18 Pa.C.S.A. S 2502(d). | Can specific intent to kill be proven where the defendant knowingly applies deadly force to the person of another? | 019335.docx | LEGALEASE-00122454-LEGALEASE-00122455 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 8154 | Givens v. Sellars, 273 N.C. 44 | 302+189 | The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom. Furthermore, pleadings challenged by a demurrer are to be construed liberally with a view to substantial justice between the parties. G.S. 1"127. G.S. 1"151. McKinley v. Hinnant, 242 N.C. 245, 87 S.E.2d 568.' Jacobs v. State Highway Commission, 254 N.C. 200, 118 S.E.2d 416. "The facts alleged, but not the pleader's legal conclusions, are deemed admitted when the sufficiency of the complaint is tested by demurrer." Gillispie v. Goodyear Service Stores, 258 N.C. 487, 128 S.E.2d 762. But if the complaint merely alleges conclusions, it is demurrable. Broadway v. Town of Asheboro, 250 N.C. 232, 108 S.E.2d 441. On the other hand, "if in any portion of it or to any extent it presents facts sufficient to constitute a cause of action the pleading will stand * * *." Snotherly v. Jenrette, 232 N.C. 605, 61 S.E.2d 708. See also Cannon v. City of Wilmington, 242 N.C. 711, 89 S.E.2d 595. | Office of a demurrer is to test sufficiency of a pleading, admitting, for the purpose, truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom. | Does a demurrer test the sufficiency of a pleading? | Pleading - Memo 135 - RMM.docx | ROSS-003284937-ROSS-003284938 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8155 | Furlough v. Union Pac. R.R. Co., 766 So. 2d. 751 | 307A+3 | Motions in limine provide both plaintiffs and defendants with a vehicle to have evidentiary issues decided prior to trial. Such motions are not governed by any particular rules on timing or substance and no deadline was set for the filing of such motions in this case. In fact, Plaintiffs filed a motion in limine on the day trial began. The trial court has great discretion in its consideration of motions in limine; and we find no abuse of that discretion in its entertaining the motion filed by UP on August 20, 1998. | Motions in limine provide both plaintiffs and defendants with a vehicle to have evidentiary issues decided prior to trial. | Do motions in limine provide both plaintiffs and defendants with a vehicle to have evidentiary issues decided prior to trial? | Pretrial Procedure - Memo # 155 - C - CRB.docx | ROSS-003295171-ROSS-003295172 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8156 | City of Mission Hills v. Sexton, 284 Kan. 414 | 307A+3 | The specific basis for the plea for new trial relates to alleged violations of orders in limine entered after consideration of the Sextons' five in limine motions. Courts employ " "a two-part test to evaluate alleged violations of a motion in limine: (1) Was there a violation of the order in limine and (2) if the order in limine is violated, did the testimony substantially prejudice the defendant? The burden is on the [party alleging a violation of the order in limine] to show substantial prejudice." [Citations omitted.]" State v. Gleason, 277 Kan. 624, 640, 88 P.3d 218 (2004). | Courts employ a two-part test to evaluate alleged violations of a motion in limine: (1) whether there was a violation of the order in limine and (2) if the order in limine was violated, whether the testimony substantially prejudiced the defendant. | Do courts employ a two-part test to evaluate alleged violations of a motion in limine? | Pretrial Procedure - Memo # 169 - C - AP.docx | ROSS-003285244-ROSS-003285245 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8157 | Dep't of Transp. v. Wallace Enterprises, 234 Ga. App. 1 | 307A+3 | Divisions 1 through 4 control adversely to DOT so that the trial court properly denied the motion in limine. "A motion in limine is a pretrial method of determining the admissibility of evidence, as a party may secure a pretrial ruling on the admissibility of evidence or a ruling prohibiting any reference to certain evidence until its admissibility can be assessed in the context of the trial as it unfolds. [Cit.] By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). Here, the trial judge wisely exercised restraint in denying such motion under the circumstances of this case. | Grant of motion in limine excluding evidence is judicial power which must be exercised with great care. | Is the grant of motion in limine excluding evidence a judicial power which must be exercised with great care? | Pretrial Procedure - Memo # 178 - C - CRB.docx | ROSS-003295784-ROSS-003295786 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8158 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82 | 307A+3 | The next issue raised by the appellants is the trial court's limitation of their questioning of Benchmark's employees at trial. They contend that it was error for the trial court to grant Benchmark's motion in limine barring them from questioning Benchmark employees regarding their opinions on the basis that those opinions were not properly disclosed. We conclude that this argument by appellants is essentially waived and ultimately fails to support their motion for a new trial. A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. Todd W. Musburger, Ltd. v. Meier, 394 Ill.App.3d 781, 801"02, 333 Ill.Dec. 383, 914 N.E.2d 1195 (2009). | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | Will a decision on a motion in limine be disturbed absent an abuse of discretion? | 024260.docx | LEGALEASE-00122251-LEGALEASE-00122252 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8159 | City of Livermore v. Baca, 205 Cal. App. 4th 1460 | 307A+3 | "In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial." (Amtower v. Photon Dynamics, Inc. (2008) 158 Cal.App.4th 1582, 1593, 71 Cal.Rptr.3d 361.) As case law recognizes, however, motions in limine also can function as "an objection to any and all evidence on the grounds [the] pleadings [are] fatally defective" for failure "to state a cause of action." (Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 27, 61 Cal.Rptr.2d 518.) In such cases, the in limine motion "operate[s] as a general demurrer to [the] complaints or a motion for judgment on the pleadings." (Ibid.; see Amtower v. Photon Dynamics, Inc., at p. 1593, 71 Cal.Rptr.3d 361.) "Alternatively," where such motions are granted "at the outset of trial with reference to evidence already produced in discovery, they may be viewed as the functional equivalent of an order sustaining a demurrer to the evidence, or nonsuit." (Edwards v. Centex Real Estate Corp. at p. 27, 61 Cal.Rptr.2d 518.) | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are in limine motions designed to decide difficult evidentiary issues in advance of trial? | Pretrial Procedure - Memo # 416 - C - SB.docx | ROSS-003325194-ROSS-003325195 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8160 | Cunningham v. Millers Gen. Ins. Co., 227 Ill. App. 3d 201 | 307A+3 | Orders in limine are potentially dangerous, but such orders are interlocutory, and remain subject to reconsideration by the court throughout the trial. (Romanek-Golub & Co. v. Anvan Hotel Corp. (1988), 168 Ill.App.3d 1031, 1040, 119 Ill.Dec. 482, 488, 522 N.E.2d 1341, 1347; Ely v. National Super Markets, Inc. (1986), 149 Ill.App.3d 752, 760, 102 Ill.Dec. 498, 504, 500 N.E.2d 120, 126.) A court should make whatever correction or interpretation of an in limine order is necessary during the trial. (Crawford County State Bank v. Grady (1987), 161 Ill.App.3d 332, 341, 112 Ill.Dec. 869, 875, 514 N.E.2d 532, 538.) Where the evidence could be prejudicial, an order granting a motion in limine may be safer than an order denying it; the evidence will then be kept out until it is clear it should be admitted. Sometimes it may be appropriate not to allow comment on questionable evidence during opening statements. Still, a court should carefully analyze a motion in limine when the motion is first presented. Changed rulings destroy the desired certainty and clarity of an in limine order. It is a mistake for a court to continually shift its ruling as different evidence is presented, and never reach a firm decision. (Reidelberger, 83 Ill.2d at 551-52, 48 Ill.Dec. at 241, 416 N.E.2d at 272.) Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. Reidelberger, 83 Ill.2d at 553, 48 Ill.Dec. at 241, 416 N.E.2d at 272. | Purpose of in limine order is to exclude inadmissible evidence, not to create trap which results in new trial if court in retrospect determines rule was violated. | Is the purpose of an order in limine to exclude inadmissible evidence? | Pretrial Procedure - Memo # 88 - JTB.docx | ROSS-003310631-ROSS-003310632 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8161 | Chacon v. Jones-Schilds, 904 N.E.2d 286 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). "The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence." Id. We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. Safe Auto Ins. Co. v. Am. Family Mut. Ins. Co., 890 N.E.2d 737, 741 (Ind.Ct.App.2008). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or it misinterprets the law. Id. | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting of a motion in limine an adjunct of the inherent power of trial courts to admit and exclude evidence? | Pretrial Procedure - Memo # 12 - C - KA.docx | ROSS-003308831-ROSS-003308832 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8162 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | In addition to the Hyundai defendants' failure to renew their objections to the evidence they now insist was erroneously introduced, there is an even more basic reason to uphold the trial court's denial of the Hyundai defendants' motion in limine. A motion in limine is not the proper vehicle to use to attempt to preclude a claim or defense. It is not equivalent to or a substitute for a motion to dismiss or a motion for summary judgment. | A motion in limine is not the proper vehicle by which to attempt to preclude a claim or defense; it is not equivalent to, or a substitute for, a motion to dismiss or a motion for summary judgment. | Should a motion in limine be used as a vehicle to preclude a claim or defense or as a substitute for a motion for summary judgment? | Pretrial Procedure - Memo # 13 - C - KA.docx | ROSS-003299422-ROSS-003299423 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8163 | Lambert v. Coonrod, 2012 IL App (4th) 110518 | 30+3209 | "A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused." Swick v. Liautaud, 169 Ill.2d 504, 521, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1246 (1996). To the extent plaintiffs' argument requires the construction of a statute or rule of evidence, it presents a question of statutory interpretation, which we review de novo. McFatridge v. Madigan, 2011 IL App (4th) 100936, 357 Ill.Dec. 212, 218"19, 962 N.E.2d 1113, 1119"20; see also In re Storment, 203 Ill.2d 378, 390, 272 Ill.Dec. 129, 786 N.E.2d 963, 970 (2002) (stating the interpretation of a rule is reviewed de novo ). In construing a statute, the fundamental rule "is to ascertain and give effect to the legislature's intent." Nowak v. City of Country Club Hills, 2011 IL 111838, 354 Ill.Dec. 825, 958 N.E.2d 1021, 1023. "The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning." Snyder v. Heidelberger, 2011 IL 111052, 352 Ill.Dec. 176, 953 N.E.2d 415, 420"21. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Does a trial judge have discretion in granting a motion in limine? | Pretrial Procedure - Memo # 23 - C - KA.docx | ROSS-003298270-ROSS-003298271 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8164 | Cannon v. William Chevrolet/Geo, 341 Ill. App. 3d 674 | 307A+3 | Furthermore, when a motion in limine is made, the trial judge has broad discretion to grant or deny the motion or choose not to entertain the motion at all. Schuler v. Mid-Central Cardiology, 313 Ill.App.3d 326, 334, 246 Ill. Dec. 163, 729 N.E.2d 536, 543 (2000). The motion pertaining to notice was unsubstantiated with any evidence that Cannon failed to provide proper notice. On appeal, defendants cite to Cannon's deposition testimony as evidence in support of their contention. However, that evidence was not presented to the trial court during the hearing on the motion in limine. The trial court therefore properly reserved its ruling on the motion to allow Cannon an opportunity to present her evidence of notice to the jury as a question of fact. The court specifically stated that "if there's no substantive evidence to set forth that there has been any notice that can be substantiated in any form then this will be granted. If not, it will be denied.". | When a motion in limine is made, the trial judge has broad discretion to grant or deny the motion or choose not to entertain the motion at all. | Does the trial judge have broad discretion to grant or deny the motion or choose not to entertain the motion at all when a motion in limine is made? | Pretrial Procedure - Memo # 243 - C - ANC.docx | ROSS-003325022-ROSS-003325024 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 8165 | Am. Petroleum Prod. v. Mom & Pop Stores, 231 Ga. App. 1 | 307A+3 | The trial court did not err in denying American's motion in limine to exclude evidence of American's overcharges after March 31, 1993. "By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). Furthermore, the "[a]dmission of evidence is within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion. Evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence." (Citations and punctuation omitted.) Martin v. Williams, 215 Ga.App. 649, 651(3), 451 S.E.2d 822 (1994). | Grant of motion in limine excluding evidence is judicial power which must be exercised with great care. | Is the grant of a motion in limine excluding evidence a judicial power which must be exercised with great care? | Pretrial Procedure - Memo # 335 - C - SS.docx | ROSS-003296310-ROSS-003296311 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8166 | Elliott v. State, 215 S.W.3d 88 | 307A+3 | The State argues that Elliott has not preserved this point for appeal. "A ruling in limine is interlocutory only and is subject to change during the course of the trial." State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992). "[A]dditional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence.Therefore, an objection must be made at trial when the evidence is offered or the reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon." State v. Evans, 639 S.W.2d 820, 822 (Mo.1982) (internal citation omitted). | A ruling in limine is interlocutory only and is subject to change during the course of the trial; additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence, therefore, an objection must be made at trial when the evidence is offered or the reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon. | Is a pre-trial ruling excluding evidence an interlocutory decision subject to change during trial? | 030742.docx | LEGALEASE-00122217-LEGALEASE-00122218 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 8167 | Drago v. Tishman Const. Corp. of New York, 4 Misc. 3d 354 | 307A+3 | In either instance, a moving party must interpose a motion in limine seeking a preliminary order excluding the introduction of anticipated evidence. A motion in limine challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence (State of New York v. Metz, 241 A.D.2d 192, 198, 671 N.Y.S.2d 79 [1st Dept.1998] ). | A "motion in limine" challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence. | "Does a motion in limine challenge evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence?" | Pretrial Proceedure - Memo # 47 - C - TJ.docx | ROSS-003325487-ROSS-003325488 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 8168 | Hocking Valley Ry. Co. v. Cluster Coal & Feed Co., 97 Ohio St. 140 | 317A+102 | Section 579, General Code (as amended by 101 Ohio Laws, p. 173) provides that if the Public Utilities Commission finds in favor of a claimant, it shall certify its findings to the clerk of the court of common pleas of the county in which the claimant resides, or where the railroad or any of its offices are maintained. | Gen.Code, S 580, as amended by 101 Ohio Laws, p. 173, authorizing clerk of common pleas to enter findings of public utilities commission as judgment, does not confer judicial power on him in violation of Const. art. 4, S 1. | Can the Public Utilities Commission authorize the clerk of the court of common pleas to enter such finding of the Commission as a judgment? | 042219.docx | LEGALEASE-00122532-LEGALEASE-00122533 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 8169 | LeRoy v. Marquette Nat. Bank of Minneapolis, 277 N.W.2d 351 | 366+31(3) | After finding defendant trustees to be sureties, the trial court properly applied the equitable principles that a surety is entitled to be subrogated to the rights of the creditor upon payment of the debt and to equitable assignment of the security. See, Morris v. Blossom, 181 Minn. 71, 231 N.W. 397 (1930); Lumbermen's Ins. Co. v. Sprague, 59 Minn. 208, 60 N.W. 1101 (1894); Knoblauch v. Foglesong, 37 Minn. 320, 33 N.W. 865 (1887); Torp v. Gulseth, 37 Minn. 135, 33 N.W. 550 (1887). | A surety is entitled to be subrogated to rights of creditor upon payment of debt and to equitable assignment of security. M.S.A. S 336.3-415 comment. | Is a surety entitled to be subrogated to the rights of a creditor upon payment of debt and to equitable assignment of security? | Subrogation - Memo # 742 - C - SA.docx | ROSS-003287386-ROSS-003287387 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8170 | Benschoter v. First Nat. Bank of Lawrence, 218 Kan. 144 | 366+7(1) | The question remains whether the appellee Kuhn Company, the party that physically repossessed the equipment, was subrogated to the rights of the bank and thus able to take advantage of the protection given self-help repossession by 84-9-503, supra. After making the August 9, 1972, payment, Kuhn Company, as guarantor of the note and security agreement became subrogated to the rights of the bank as a secured party. The Uniform Commercial Code provides that a guarantor is also a surety. (L.1975, ch. 514, s 2(40) (K.S.A. 84-1-201(40)). The code also provides: "A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. . . ." (L.1975, ch. 514, s 34(5) (K.S.A. 84-9-504(5)).) | After making payment on promissory note, guarantor of promissory note and security agreement became subrogated to rights of bank as a secured party. K.S.A. 84-1-201(40), 84-9-504(5). | "After making payment on promissory note, does a guarantor of a promissory note and security agreement become subrogated to the rights of a bank as a secured party?" | Subrogation - Memo # 897 - C - VA.docx | ROSS-003285314-ROSS-003285315 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8171 | Am. Gen. Life & Acc. Ins. Co. v. Edwards, 76 So. 3d 183 | 13+61 | The Mississippi Supreme Court and this Court have long recognized that "a cause of action "accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." Forman v. Miss. Publishers Corp., 195 Miss. 90, 14 So.2d 344, 346 (1943). In order to become an enforceable tort claim, proof of the following four elements must be present: duty, breach of duty, causation, and actual damage. Bullard v. Guardian Life Ins. Co. of America, 941 So.2d 812, 815 (11) (Miss.2006). It is not vested until all four elements are present. Further, "[i]n the absence of damage, no litigable event arose."Fletcher v. Lyles, 999 So.2d 1271, 1277 (23) (Miss.2009) (quoting Bullard, 941 So.2d at 815 (9)). | A cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. | "Does a cause of action accrue when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested?" | 005426.docx | LEGALEASE-00122651-LEGALEASE-00122652 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8172 | Van Hoof v. Van Hoof, 997 So. 2d 278 | 13+61 | A cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time. See Leberte, 773 So.2d at 444 n. Because Gaynell's representations to the trial court indicated that the tort claims she filed on behalf of the estate with regard to the Lord Abbett IRA accrued before Rowena died, she invited the trial court to conclude that those claims did not survive Rowena's death but, instead, were barred by " 6"5"462. Gaynell cannot now argue that those claims related to the Lord Abbett IRA accrued only after Rowena died and therefore survived her death. See Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala.2003) ("The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. "A party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled the trial court."). | A cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time. | Does a cause of action accrue at the time the complained-of action first gives rise to injury? | Action - Memo # 90 - C - NO.docx | ROSS-003298044-ROSS-003298045 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8173 | Edlux Const. Corp. v. State, 252 A.D. 373 | 241+46(1) | A cause of action accrues and the statute of limitations begins to run when a contract is breached [Northrop v. Hill, 57 N.Y. 351, 15 Am.Rep. 501], or when one omits the performance of an obligation [Utica Bank v. Childs, 6 Cow. 238; Argall v. Bryant, 3 N.Y.Super.Ct. (1 Sandf.) 98; Campbell v. Culver, 56 App.Div. 591, 67 N.Y.S. 469], although damages may not accrue until a later date. But, the statute of limitations does not begin to run until there is opportunity to enforce the obligation. Civil Practice Act, art. 2, " 10 et seq. There is not one law for the sovereign and another for the subject (People v. Stephens, 71 N.Y. 527, 549), and a cause of action came into being in this case when the contract was breached by the state. "Therefore, a breach of its contract by the state creates a valid cause of action. Immunity of the state from suit merely prevents its enforcement. When, however, the state confers upon a court jurisdiction to hear and determine all claims against it, or all claims of a particular class, the situation in that court is the same as if the claim were against a private individual or corporation." Quayle v. State of New York, 192 N.Y. 47, 50, 84 N.E. 583, 584. When the Quayle Case was decided, the present last sentence of section 12 of the Court of Claims Act (formerly Code Civ.Proc. " 264, as added by Laws 1897, c. 36) read, "But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination," and it was determined that the remedy of a claimant whose claim under an express contract had been audited and rejected by the comptroller was by certiorari to review his determination. After that decision the following words were added to the sentence (chapter 519, Laws 1908), "except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer." The comptroller is the general auditor of the State (People ex rel. Grannis v. Roberts, 163 N.Y. 70, 57 N.E. | A cause of action "accrues," and the statute of limitations begins to run, when a contract is breached or when one omits the performance of an obligation even though damages may not accrue until a later date. Civil Practice Act, S 10 et seq. | Does a breach of contract cause of action accrue at the time of breach? | 005444.docx | LEGALEASE-00122833-LEGALEASE-00122835 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 8174 | Krusi v. S.J. Amoroso Constr. Co., 81 Cal. App. 4th 995 | 13+61 | We do, however, wholeheartedly embrace its second, involving the issue of accrual of a cause of action, a principle also articulated in Vaughn. It is clear that a cause of action for damage to real property accrues when the defendant's act causes "immediate and permanent injury" to the property or, to put it another way, when there is "[a]ctual and appreciable harm" to the property. (CAMSI IV v. Hunter Technology Corp., supra, 230 Cal.App.3d at p. 1534, 282 Cal.Rptr. 80.) In the current flurry of asbestos-related cases, many have been litigated involving alleged injuries to real property. The leading case of that sort in this district makes clear that a cause of action for asbestos-related injury to real property accrues when "damage" or "physical injury to property" occurs. (San Francisco Unified School Dist. v. W.R. Grace & Co. (1995) 37 Cal.App.4th 1318, 1327, 1329, 44 Cal.Rptr.2d 305.) This rule is, of course, simply a corollary of the general rule regarding accrual of causes of action. (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, "" 467"468.) We are aware of no reason why it should not apply, as the Keru court applied it, to actions alleging negligence in the design, engineering, or construction of buildings. | Cause of action for damage to real property accrues when the defendant's act causes immediate and permanent injury to the property or, put it another way, when there is actual and appreciable harm to the property. | "Does a cause of action for negligence in the design, engineering, or construction of buildings accrue when damage or physical injury to property occurs?" | 005500.docx | LEGALEASE-00123803-LEGALEASE-00123804 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8175 | Shamrock Oil & Gas Corp. v. Price, 364 S.W.2d 260 | 13+61 | By the expression "the cause of action or a part thereof accrued" means the right to institute and maintain suit and whenever one person may sue another a cause of action has accrued. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716. | Phrase "cause of action or a part thereof accrued" means right to institute and maintain the suit, and, whenever one person may sue another, a cause of action has accrued. | "Does a cause of action ""accrue"" when a suit may be maintained thereon?" | 005518.docx | LEGALEASE-00123826-LEGALEASE-00123827 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8176 | Marini v. Borough of Wanaque, 37 N.J. Super. 32 | 13+61 | The general problem of determining when a citizen circumstanced like plaintiff has been aggrieved by allegedly unlawful governmental action is not free from difficulty. On the present application the inquiry has two facets: (1) Where the wrongful action has a number of overt manifestations, which of them mature the right? (2) To what extent does the plaintiff's ignorance of the wrong toll the running of the period of limitations? It has been held that each official step in the course of an illegal program has capacity to invoke the remedy of Certiorari without the necessity of awaiting specific damage or tangible manifestations. Public Service Railway Co. v. Camden, 95 N.J.L. 190, 112 A. 421 (E. & A. 1920). There can be no doubt that if the issuance of the building permit was legally unwarranted, a wrong remediable by Certiorari took place at once. McGhee v. Mayor and Council of Borough of Tenafly, 126 N.J.L. 390, 19 A.2d 800 (Sup.Ct.1941). And generally a cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another. 1 %.J.s. a/ctions, s 124, p. 1386; Tortorello v. Reinfeld, 6 N.J. 58, 65, 77 A.2d 240 (1950). If plaintiff's cause accrued on February 8, 1954, when the building permit issued, he is obviously barred by the rule of court cited. To meet this difficulty it is suggested: (a) plaintiff neither knew nor was subject to imputed notice of the issuance of the permit; action against another. 1 C.J.S. Actions, the issuance of the certificate of occupancy which did not occur until April 30. We proceed to a consideration of these points. | Generally a cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another. | Does a cause of action accrue when facts exist which authorize one party to maintain an action against another? | Action - Memo # 152 - C CS.docx | ROSS-003298538-ROSS-003298540 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8177 | New York Times Co. v. Conner, 291 F.2d 492 | 13+61 | It is thus seen that substituted service is provided for under the Louisiana statute if the cause of action either results from or is related to the acts performed in that state; whereas the Alabama statute provides that substituted service can be had only if the cause of action sued on accrued from the doing of such business or the performing of such work or service. We think this difference is decisive of the case before us. Practically every decision with which we are familiar has construed the word "accrue" in connection with the accruing of a cause of action as meaning becoming complete so that the aggrieved party can begin and prosecute such action. See 1 Words and Phrases, Accrue: Accrued, p. 582. This is the Alabama rule. In LaRue v. C. G. Kershaw Contracting Co., 177 Ala. 441, 59 So. 155, 156, the Alabama Supreme Court said: "Cause of action accrues as soon as the party aggrieved is entitled to begin and prosecute such action." In Provident Life & Accident Ins. Co. v. Heidelberg, 154 So. 809, 811, the Alabama Supreme Court used this same language, as it did also in Esslinger v. Spragins, 236 Ala. 508, 183 So. 401, 405. No materially different definition has been adopted in any court opinion pointed out to us. | Under Alabama law, "accrue," in connection with accruing of cause of action, means becoming complete so that aggrieved party can begin and prosecute such action. | "Does ""accrue,"" in connection with accruing of cause of action, mean becoming complete so that aggrieved party can begin and prosecute such action?" | 005599.docx | LEGALEASE-00123986-LEGALEASE-00123987 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8178 | Silvestrone v. Edell, 721 So. 2d 1173 | 241+55(3) | After reviewing this section, we agree with the reasoning of the Second District Court of Appeal that when a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment. To be specific, we hold that the statute of limitations does not commence to run until the final judgment becomes final. | When a malpractice action is predicated on errors or omissions committed in the course of litigation, and that litigation proceeds to judgment, the statute of limitations does not commence to run until the litigation is concluded by final judgment, that is, until the final judgment becomes final. West's F.S.A. S 95.11(4)(a). | Does a cause of action for legal malpractice in the litigation context accrue before the litigation is concluded by final judgment? | 005846.docx | LEGALEASE-00123245-LEGALEASE-00123246 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 8179 | Ferrellgas v. Edward A. Smith, P.C., 190 S.W.3d 615 | 241+2(1) | Section 516.100 not only determines when a cause of action accrues but also where it accrues for the purpose of determining whether the borrowing statute applies. Id. at 95. "A cause of action accrues when and originates where damages are sustained and are capable of ascertainment." Id. (quoting Elmore v. Owens"Illinois, Inc., 673 S.W.2d 434, 436 (Mo. banc 1984)). | A cause of action accrues when, and originates where, damages are sustained and are capable of ascertainment, for the purpose of determining whether the borrowing statute applies, such that a cause of action is subject to another state's statute of limitations. V.A.M.S. SS 516.100, 516.190. | Does a cause of action accrue when damages are sustained and capable of ascertainment? | Action- Memo # 80 - C - LK.docx | ROSS-003322760-ROSS-003322761 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 8180 | In re Joe Sipala & Son Nursery Corp., 214 B.R. 281 | 83E+521 | The Defendant argues that it is a holder in due course of the said checks. Pursuant to UCC " 3"302(1), a holder of a negotiable instrument is a holder in due course if it meets the following conditions:1. a holder;2. of a negotiable instrument;3. who took it for value;4. in good faith; and5. without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of another. Further, a payee of a check may be a holder in due course. N.Y. UCC " 3"302(2) (McKinney 1993). | Holder of negotiable instrument is "holder in due course" if it meets these conditions: (1) holder, (2) of negotiable instrument, (3) who took it for value, (4) in good faith, and (5) without notice that it is overdue or has been dishonored or of any defense against or claim to it on part of another. N.Y.McKinney's Uniform Commercial Code S 3-302(1). | "Under the US Law, who is a holder in due course?" | Bills And Notes - Negotiability - Memo 30-AM.docx | ROSS-003283826-ROSS-003283828 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 8181 | United States v. Dimora, 750 F.3d 619 | 63+1(1) | Gabor and Dimora both claim that the court failed to instruct the jury sufficientlyon the difference between gifts given in friendship and bribes given in exchange for official acts.No error occurred. The jurors heard that "effort[s] to buy favor or generalized goodwill" do notnecessarily amount to bribery, that official acts may come in the guise of formal and informalinfluence, and that gifts exchanged solely to cultivate friendship are not bribes. R. 1044 at 48-51.[(On the other side of the coin, the jurors heard that bribery and kickbacks involve "theintent to .. exchange .. money or other thing[s] of value in return for official action." Id. at49. These instructions fairly trace the line between permissible gifts and impermissible bribes.See United States v. Terry, 707 F.3d 607, 612-14 (6th Cir.2013). | Bribery and kickbacks involve the intent to exchange money or other things of value in return for official action. | Do bribery and kickbacks involve the intent to exchange money or other things of value in return for official action? | Bribery - Memo # 21 - C-ANC.docx | ROSS-003283570-ROSS-003283571 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8182 | Klein v. May Stern & Co., 144 Pa. Super. 470 | 308+73 | A more recent statement of the rule, consistent with the application of the principle in the cases in this State, appears thus in Restatement, Agency, " 406: "Unless otherwise agreed, an agent is responsible to the principal for the conduct of a subagent with reference to the principal's affairs entrusted to the subagent, as the agent is for his own conduct. ***" And in " 5 "subagent" is defined as "a person to whom the agent delegates as his agent, the performance of an act for the principal which the agent has been empowered to perform through his own representative." In the comment following each of the above sections it is indicated that liability for the acts of a subagent is imposed on the principal only by his express or implied agreement or by the usages or customs of the business, even though it is contemplated by the parties that the acts will be performed through representatives of the agent. The same principle is thus stated in 2 Mechem on Agency, " 333: "The agent, having undertaken to transact the business of his principal, employs a sub-agent on his own account to assist him in what he has undertaken to do, even though he does so with the consent of the principal, he does so at his own risk and there is no privity between the sub-agent and the principal. The sub-agent, is therefore, the agent of the agent only." (Italics added.) See also Barnard v. Coffin, 141 Mass. 37, 6 N.E. 364, 55 Am.Rep. 443. The fact that defendant was a corporation which of necessity must act through natural persons as its agents or employees, does not in itself amount to an implied agreement to assume liability for the acts of the sub-agent. When a corporation is made the agent of another the relation between it and the agents or instrumentalities through which it acts is as one being, or artificial person, in the performance of its engagement, and involves no delegation of powers. 14a C.J. " 2141; 19 C.J.S., Corporations, " 953. | Liability for acts of a subagent is imposed on principal only by his express or implied agreement or by the usages or customs of the business, even though it is contemplated by the parties that acts will be performed through representatives of the agent. | "Where it is usual custom of trade to employ a subagent, is it presumed that a principal consented to the appointment of a subagent by its agent?" | 014222.docx | LEGALEASE-00122572-LEGALEASE-00122574 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8183 | Weidner v. State, Dep't of Transp. & Pub. Facilities, 860 P.2d 1205 | 148+2.1 | Weidner makes the further argument that a prescriptive easement allows the State to take private property without just compensation in violation of the takings clauses of the federal and Alaska constitutions. This argument misunderstands the nature and operation of a prescriptive easement. The theory of prescriptive easement does not grant the State affirmative authority to take property without just compensation. Rather, the prescriptive period"as with any statute of limitations"requires a private landowner to bring an inverse condemnation action for public use of private property within a specified period of time. At the expiration of the prescriptive period, the landowner's right to bring suit is extinguished, effectively vesting property rights in the adverse user. In the present case, Weidner's claim for just compensation has been extinguished by expiration of the prescriptive period. Thus, as Weidner's predecessors had a right to just compensation for the State's unauthorized use of their land which they failed to assert in a timely manner, Weidner too is barred from bringing suit. | Theory of prescriptive easement does not grant state affirmative authority to take property without just compensation. Const. Art. 1, S 18; U.S.C.A. Const.Amend. 5. | Does the theory of prescriptive easement grant the State affirmative authority to take property without just compensation? | Eminent Domain - Memo 218 - GP.docx | ROSS-003284263-ROSS-003284264 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8184 | Doe v. Exxon Mobil Corp., 69 F. Supp. 3d 75 | 221+351 | Building off of the Supreme Court's dictum in Sosa and the rule of international law referred to in the European Commission's brief, some courts of appeals have begun to recognize that plaintiffs may be required to exhaust domestic remedies before bringing claims for violations of international law under the ATS. See Sarei v. Rio Tinto, PLC, 550 F.3d 822, 829"30 (9th Cir.2008) (en banc plurality op.); Abelesz v. Magyar Nemzeti Bank, 692 F.3d 661, 679"81 (7th Cir.2012). An essential element of this exhaustion requirement is that there be effective, non-futile remedies available in the alternative, local forum. Sarei, 550 F.3d at 830. It is the defendant's burden to "plead and justify an exhaustion requirement, including the availability of local remedies." Id. at 832. | Essential element of any requirement that a plaintiff exhaust domestic remedies before bringing a suit in foreign courts for violations of customary international law is that there be effective, non-futile remedies available in the alternative, local forum. | "Is an essential element of the exhaustion requirement that there be effective, non-futile remedies available in the alternative, local forum?" | International Law - Memo # 105 - C - LK.docx | ROSS-003298753-ROSS-003298754 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 8185 | United States v. Sum of $70,990,605, 991 F. Supp. 2d 154 | 221+387 | The act of state doctrine "applies when the relief sought or the defense interposed would require a court in the United States to declare invalid the official act of a foreign sovereign performed within its boundaries." United States v. One Gulfstream G"V Jet Aircraft, 941 F.Supp.2d 1, 11 (D.D.C.2013) (citing W.S. Kirkpatrick & Co., Inc. v. Envtl., Tectonics Corp., Int'l, 493 U.S. 400, 409, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). However, as is explained above, the plaintiff's requested relief would not require that any official Afghan act be declared invalid because a determination of guilt or innocence is not dispositive of whether the defendant assets should be civilly forfeited under United States' law. Second, the Afghanistan Executive Order would not need to be declared invalid because it determined that "Mr. Shadman [was] not guilty under Afghan law," Claimants' Mot. to Dismiss at 33, not whether the defendant assets are subject to forfeiture under United States' law. Finally, the claimants argue that the Afghanistan government asserted exclusive jurisdiction, but the exhibits they cite do not explicitly claim exclusive authority to adjudicate this in rem civil forfeiture. See Claimants' Mot. to Dismiss, Ex. 26 ("[I]t is an authority of the courts of the IRA"); id. ("[A]ddressing the issue is an authority of the courts of Afghanistan."). At best, Afghanistan appears to be stating that it has jurisdiction, but the document does not discuss exclusive jurisdiction or rule out concurrent jurisdiction. "[T]he party raising the [act of state doctrine as a] defense bears the burden to affirmatively show that an act of state has occurred," Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, Civil Action No. 11"1735(RLW), 971 F.Supp.2d 49, 61"62, 2013 WL 5290126, at (D.D.C. Sept. 20, 2013), and the claimants have failed to do so here. | The party raising the act of state doctrine as a defense bears the burden to affirmatively show that an act of state has occurred. | Does the party raising the act of state doctrine as a defense bear the burden to affirmatively show that an act of state has occurred? | International Law - Memo # 83 - C - LK.docx | ROSS-003310670-ROSS-003310672 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8186 | Hourani v. Mirtchev, 796 F.3d 1 | 221+342 | The "text of the Constitution does not require the act of state doctrine." Banco Nacional, 376 U.S. at 423, 84 S.Ct. 923. Instead, the doctrine "expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals in the international sphere." Id. As such, it operates as a rule of judicial restraint in decision making, not a jurisdictional limitation like the political question doctrine. See supra 8"9; see also World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1161 (D.C.Cir.2002); In re Papandreou, 139 F.3d 247, 256 (D.C.Cir.1998) (The Act of State doctrine "is a substantive rule of law" that applies only after jurisdiction is established.). | The act of state doctrine operates as a rule of judicial restraint in decisionmaking, not a jurisdictional limitation like the political question doctrine. | "Does the act of state doctrine operate as a rule of judicial restraint in decision making, not a jurisdictional limitation like the political question doctrine?" | 019902.docx | LEGALEASE-00123605-LEGALEASE-00123606 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8187 | In re Philippine Nat'l. Bank, 397 F.3d 768 | 221+342 | The class plaintiffs next argue that the act of state doctrine is inapplicable because the judgment of the Philippine Supreme Court did not concern matters within its own territory. Generally, the act of state doctrine applies to official acts of foreign sovereigns "performed within [their] own territory." Credit Suisse, 130 F.3d at 1346 (internal quotations omitted).The act of the Philippine Supreme Court was not wholly external, however. Its judgment, which the district court declared invalid, was issued in the Philippines and much of its force upon the Philippine Bank arose from the fact that the Bank is a Philippine corporation. It is also arguable whether the bank accounts have a specific locus in Singapore, although they apparently were carried on the books of bank branches there. See Callejo v. Bancomer, S.A, 764 F.2d 1101, 1121"25 (5th Cir.1985) (discussing differing theories of situs of intangibles). Even if we assume for purposes of decision that the assets were located in Singapore, we conclude that this fact does not preclude treatment of the Philippine judgment as an act of state in the extraordinary circumstances of this case. "[T]he [act of state] doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations." Tchacosh Co. v. Rockwell Int'l Corp., 766 F.2d 1333, 1337 (9th Cir.1985). Thus, even when an act of a foreign state affects property outside of its territory, "the considerations underlying the act of state doctrine may still be present." Callejo, 764 F.2d at 1121 n. 29. Because the Republic's "interest in the [enforcement of its laws does not] end at its borders," id., the fact that the escrow funds were deposited in Singapore does not preclude the application of the act of state doctrine. The underlying governmental interest of the Republic supports treatment of the judgment as an act of state. | Generally, act of state doctrine applies to official acts of foreign sovereigns performed within their own territory. | "Generally, do act of state doctrine apply to official acts of foreign sovereigns performed within their own territory?" | 020022.docx | LEGALEASE-00123494-LEGALEASE-00123495 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 8188 | In re Adoption of Doe, 58 A.D.3d 186 | 221+342 | The doctrine is primarily premised on the principle of separation of powers; because the Executive is charged with conducting foreign relations, the Judiciary should not unnecessarily interfere with that power by sitting in judgment on the acts of a foreign sovereign. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). The doctrine "requires that the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Intl., 493 U.S. 400, 409, 110 S.Ct. 701, 707, 107 L.Ed.2d 816, 825 (1990). This makes practical sense: "When another country's act has come to complete fruition within its dominion, it would be a waste of judicial resources for courts of the United States to condemn the result." Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 666 (2d Cir. 1988) (courts in one country should avoid inquiries respecting the validity of the acts executed by a foreign sovereign within its own territory). By contrast, "the foreign sovereign is acting beyond its enforcement capacity when it involves itself within our nation's jurisdiction." Id. | The act of state doctrine requires that the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid. | Does the act of state doctrine require acts of foreign sovereigns taken within their own jurisdiction to be deemed valid? | International Law - Memo # 214 - C - MLS.docx | ROSS-003301332-ROSS-003301333 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8189 | Films by Jove v. Berov, 341 F. Supp. 2d 199 | 221+342 | Comity is applied more broadly than the act of state doctrine. If the act of state doctrine applies only to acts of a foreign state committed within its own territory, comity, on the other hand, can generally relate to extraterritorial effects of a foreign legal system. Allied Bank Int'l, 757 F.2d at 522. But see Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198 (1918) (stating that comity has been "fertile in suggesting a discretion unregulated by general principles"). | Comity is applied more broadly than act of state doctrine; while doctrine applies only to acts of foreign state committed within its own territory, comity can generally relate to extraterritorial effects of foreign legal system. | Is comity applied more broadly than the act of state doctrine? | International Law - Memo # 221 - C - MLS.docx | ROSS-003324982-ROSS-003324983 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8190 | Loftus v. Primero Mining Corp., 230 F. Supp. 3d 1209 | 221+342 | First, Plaintiffs appear to request that Court to reevaluate the propriety of the SAT's ruling as to whether Primero complied with the transfer pricing rules. The Court declines to do so. "The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Mujica v. Occidental Petroleum Corp., 381 F.Supp.2d 1164, 1171 (C.D. Cal. 2005) (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)); see also Roe v. Unocal, 70 F.Supp.2d 1073, 1076 (C.D. Cal. 1999) ("The act of state doctrine precludes a court of the United States from considering a plaintiff's claims where either the claims or the defenses asserted would require the court to determine that a foreign sovereign's official acts performed in its own territory were invalid."). Thus, where, as here, a Mexican governmental body has already reached a decision as to whether Primero's transfer pricing complied with Mexican law, this Court should not reevaluate the foreign government's decision. See Unocal, 70 F.Supp.2d at 1082 (finding the act of state doctrine applied where the plaintiff's "allegations turn[ed] on the effect of an official act by an authorized representative of a foreign sovereign"); see also Tiangang Sun v. China Petroleum & Chem. Corp. Ltd., No. CV 13-05355 BRO, 2014 WL 11279466, at (C.D. Cal. Apr. 15, 2014) ("The Court will not rule on the legality of an "official act of a foreign sovereign state performed within its own territory." " (quoting W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., 493 U.S. 400, 405"06, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990))). | The act of state doctrine in its traditional formulation precludes courts from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory. | What does the Act of State doctrine do in its traditional formulation? | International Law - Memo # 310 - C - SHS.docx | ROSS-003288467-ROSS-003288469 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8191 | Faysound Ltd. v. Walter Fuller Aircraft Sales, 748 F. Supp. 1365 | 221+342 | To qualify as an act of state, it is necessary to prove that the act "occurred as a result of a considered policy determination by a government to give effect to its political and public interest"matters that would have significant impact on American foreign relations." Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1295 (3rd Cir.1979). The Court in Mannington Mills refused to grant "act of state" status to a foreign sovereign's grant of a patent. Similarly, a foreign judicial judgment in a case involving private litigants does not rise to the status of an act of state. Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 607"08 (9th Cir.1976). Nor does a party's initiation of foreign judicial proceedings amount to an act of state. Dominicus Americana Bohio v. Gulf & Western, 473 F.Supp. 680, 689 (S.D.N.Y.1979). And as the Supreme Court stressed in Alfred Dunhill of London, supra, a foreign naval officer's operation of the foreign sovereign's ship on behalf of the sovereign does not give rise to an act of state. 425 U.S. at 693"64, 96 S.Ct. at 1860"61. | Foreign judicial judgment in case involving private litigants does not rise to status of act of state; nor does party's initiation of foreign judicial proceedings. | Does foreign judicial judgment in a case involving private litigants rise to the status of an act of state? | 020262.docx | LEGALEASE-00124109-LEGALEASE-00124110 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8192 | Lafontant v. Aristide, 844 F. Supp. 128 | 221+153 | The immunity extends only to the person the United States government acknowledges as the official head-of-state. Recognition of a government and its officers is the exclusive function of the Executive Branch. Whether the recognized head-of-state has de facto control of the government is irrelevant; the courts must defer to the Executive determination. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410, 84 S.Ct. 923, 931, 11 L.Ed.2d 804 (1964) (Act of State doctrine premised on Executive Branch's recognition of state in question). Presidential decisions to recognize a government are binding on the courts, and the courts must give them legal effect. United States v. Pink, 315 U.S. 203, 230, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942) (Executive Branch's determination that recognition of Soviet Union required settlement of claims is binding on the courts). | Whether recognized head-of-state has de facto control of government is irrelevant to issue of head-of-state immunity; courts must defer to executive determination. | Should courts defer to executive determination of whether a recognized head-of-state has de facto control of government? | 020392.docx | LEGALEASE-00123758-LEGALEASE-00123759 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 8193 | Alberswerth v. Alberswerth, 184 S.W.3d 81 | 307A+3 | The Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine were similar. Both the Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine sought to prevent Dr. Mays from rendering an expert opinion or testifying. Both motions also cited the same reasons for the request"namely, that Dr. Mays was not timely disclosed as an expert witness. In essence, the motions were identical, with different labels. "In limine" is defined as "in or at the beginning" and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation. Rhodes v. Blair, 919 S.W.2d 561, 563 (Mo.App. S.D.1996). When objecting at trial to the admission of the medical records, Ms. Alberswerth objected because the issue of the admissibility of the medical records "was previously addressed and covered in the Motion in Limine that was argued in this case." She, too, referred to the Motion to Strike Expert Witness Opinion and Testimony as a motion in limine. The Motion to Strike Expert Witness Opinion and Testimony was also a motion in limine. | "In limine" is defined as in or at the beginning and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation. | Is in limine defined as in or at the beginning and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation? | Pretrial Procedure - Memo # 144 - C - CRB.docx | ROSS-003289462-ROSS-003289463 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8194 | Appel v. LePage, 135 Idaho 133 | 307A+3 | Trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine. This Court will not disturb a trial court's discretion absent a clear showing of abuse. See State v. Gray, 129 Idaho 784, 791, 932 P.2d 907, 914 (Ct.App.1997). When reviewing an exercise of discretion on appeal this Court inquires as to: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer bounds of such discretion and consistently with legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. | Trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine. | Do trial courts have broad discretion in determining the admissibility of evidence in cases before them and ruling on motions in limine? | Pretrial Procedure - Memo # 212 - C - CRB.docx | ROSS-003302815-ROSS-003302817 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8195 | Rondout Elec. v. Dover Union Free Sch. Dist., 304 A.D.2d 808 | 30+93 | Contrary to the dissent's unsupported assertion, Dover's motion was the functional equivalent of a motion for partial summary judgment dismissing the complaint insofar as it sought damages in an amount in excess of the damages pleaded in the plaintiff's initial notice of claim (see Downtown Art Co. v. Zimmerman, 232 A.D.2d 270, 648 N.Y.S.2d 101). The dissent points out that a motion in limine is an inappropriate substitute for a motion for summary judgment; we do not dispute that.The point is, however, that when a party misuses a motion in limine as the procedural equivalent of a motion for partial summary judgment, and the court decides that motion, resulting in an order that limits the issues to be tried, that order is appealable. An order deciding such a motion clearly involves the merits of the controversy (see CPLR 5701[a][2][iv] ) and affects a substantial right (CPLR 5701[a][2] [v] ) and thus is appealable (see Marshall v. 130 N. Bedford Rd. Mount Kisco Corp., 277 A.D.2d 432, 717 N.Y.S.2d 227; see also Campaign for Fiscal Equity v. State of New York, 271 A.D.2d 379, 707 N.Y.S.2d 94; Qian v. Dugan, 256 A.D.2d 782, 681 N.Y.S.2d 408). | Although styled as motion in limine, ruling on school district's motion seeking to limit the amount of contractor's recovery to amount identified in its original notice of claim was appealable; motion was the functional equivalent of a motion for partial summary judgment dismissing the complaint insofar as it sought damages in an amount in excess of the damages pleaded in the initial notice of claim. McKinney's CPLR 5701(a), par. 2 (iv, v). | Is a motion in limine an inappropriate substitute for a motion for summary judgment? | 028699.docx | LEGALEASE-00123015-LEGALEASE-00123016 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 8196 | Butler ex rel. Estate of Butler v. Kokomo Rehab. Hosp., 744 N.E.2d 1041 | 307A+3 | The grant or denial of a pretrial motion on evidentiary issues is within the sound discretion of the trial court. Hopper v. Carey, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), trans. denied. The granting of such a motion is an adjunct of the trial court's inherent power to admit and exclude evidence. The standard of review for admissibility of evidence issues is abuse of discretion. "An abuse of discretion occurs only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court." Medical and Professional Collection Services, Inc. v. Bush, 734 N.E.2d 626, 631 (Ind.Ct.App.2000). Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice. Hopper, 716 N.E.2d at 570. | Grant or denial of pretrial motion on evidentiary issues is within the sound discretion of the trial court. | Is the grant or denial of pretrial motion on evidentiary issues within the sound discretion of the trial court? | Pretrial Procedure - Memo # 295 - C - NC.docx | ROSS-003324749-ROSS-003324750 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8197 | Hopper v. Carey, 716 N.E.2d 566 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Jones v. State, 163 Ind.App. 454, 324 N.E.2d 828, 832 (1975). The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. City of Indianapolis on Behalf of Dept. of Metropolitan Development v. Heeter, 171 Ind.App. 119, 355 N.E.2d 429, 439 (1976). It must be noted that ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. Id. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. Id. The standard of review for admissibility of evidence issues is abuse of discretion. Timberlake v. State, 690 N.E.2d 243, 255 (Ind.1997), cert. denied, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Even if a trial court errs in a ruling on the admissibility of evidence, we will only reverse if the error is inconsistent with substantial justice. | Granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is granting of a motion in limine an adjunct of the inherent power of trial courts to admit and exclude evidence? | Pretrial Procedure - Memo # 318 - C - ANC.docx | ROSS-003315213-ROSS-003315214 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8198 | Forsyth Cty. v. Martin, 279 Ga. 215 | 307A+3 | A motion in limine is a pretrial method of determining the admissibility of evidence. By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). A trial court's ruling on a motion in limine is reviewed for abuse of discretion. See Johnson v. State, 275 Ga. 650(3), 571 S.E.2d 782 (2002); Presswood v. Welsh, 271 Ga.App. 459, 461(3), 610 S.E.2d 113 (2005). Inasmuch as all the documents at issue are evidence that the County had an ownership interest in the dam and the ownership of the dam was an issue in the case at bar when the motion in limine was decided and the evidence admitted, we cannot say the trial court abused its discretion in refusing to exclude the evidence. Moreover, if any of the trial court's rulings concerning evidence that went to the ownership of the dam was erroneous, that error was rendered harmless by the trial court's direction of a verdict against the County on the issue of the dam's ownership. See Division 1, supra. | A "motion in limine" is a pretrial method of determining the admissibility of evidence; by its very nature, the grant of a motion in limine suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. | "By its very nature, does the grant of a motion in limine suggest that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial?" | 029222.docx | LEGALEASE-00123087-LEGALEASE-00123089 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8199 | Westfield Ins. Companies v. Econ. Fire & Cas. Co., 623 N.W.2d 871 | 30+3134 | Moreover, an appeal challenging the district court's "adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings." Mortensen v. Heritage Mut. Ins. Co., 590 N.W.2d 35, 38 (Iowa 1999); see Iowa R. Civ. P. 116. As such, our standard of review for an adjudication of law points is on errors at law. Iowa R.App. P. 4; Mortensen, 590 N.W.2d at 38. A party need not move to amend this ruling to be able to challenge it on appeal. Iowa R. Civ. P. 179(b). We have previously held that when the adjudication of law points determines the ruling on a motion for directed verdict, the former ruling may be reviewed on appeal of the latter. Powell v. Khodari-Intergreen Co., 334 N.W.2d 127, 130-31 (Iowa 1983). The same is true when the adverse adjudication of law points ruling is the basis for the grant of a motion for summary judgment. Caniglia v. Lary, 366 N.W.2d 548, 549-50 (Iowa 1985). When the summary judgment motion is not decided on a discussion of the presence or absence of material issues, but based solely on a former adjudication of law points, review on appeal of the prior ruling is unavoidable. Id.; Powell, 334 N.W.2d at 130. | An appeal challenging the district court's adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings. | Are adjudication of law points confined to a determination of legal matters on uncontroverted pleadings? | 031813.docx | LEGALEASE-00124128-LEGALEASE-00124129 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8200 | Owens-Corning Fiberglas Corp. v. Am. Centennial Ins. Co., 74 Ohio Misc. 2d 263 | 307A+3 | A motion in limine is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." Rinehart v. Toledo Blade Co. (1985), 21 Ohio App.3d 274, 278, 21 OBR 345, 349, 487 N.E.2d 920, 924. In Riverside Methodist Hosp. Assn. v. Guthrie (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 358, 444 N.E.2d 1358, 1361, the court of appeals set forth the required two-step procedure: | Motion in limine is designed to avoid injection into trial of potentially prejudicial matter which is not relevant and is inadmissible. | Is a motion in limine designed to avoid injection into trial of potentially prejudicial matter which is not relevant and is inadmissible? | Pretrial Procedure - Memo # 539 - C - CRB.docx | ROSS-003297808-ROSS-003297809 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8201 | Bernal v. Lindholm, 133 Ohio App. 3d 163 | 307A+3 | Prior to the commencement of trial, the trial court denied appellant's request to allow Frank or Wortman to testify. This court does not directly review the rulings on motions in limine. A pretrial ruling on such a motion is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. State v. Grubb (1986), 28 Ohio St.3d 199, 201"202, 28 OBR 285, 287"289, 503 N.E.2d 142, 145"146; McCabe/Marra Co. v. Dover (1995), 100 Ohio App.3d 139, 160, 652 N.E.2d 236, 249"250. The denial of a motion in limine does not preserve any error for review. State v. Hill (1996), 75 Ohio St.3d 195, 202"203, 661 N.E.2d 1068, 1077"1078. As stated in Grubb. | A pretrial ruling on motion in limine is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. | Is a pretrial ruling on a motion in limine a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial? | Pretrial Procedure - Memo # 942 - C - MLS.docx | ROSS-003281973-ROSS-003281974 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8202 | Montz v. Hill-Mont Land Co., 329 N.W.2d 657 | 307A+2 | An application for separate adjudication of law points is properly considered only when the questions of law arise from uncontroverted pleadings. The application is inappropriate when material facts are disputed. M & W Farm Service Co. v. Callison, 285 N.W.2d 271, 274 (Iowa 1979). If the pleadings reveal fact issues with respect to the law points, disposition under rule 105 is inappropriate unless the parties stipulate the facts. Andersen Construction Co. of Council Bluffs v. National Bank of Des Moines, 262 N.W.2d 563, 564-65 (Iowa 1978). | An application for separate adjudication of law points is properly considered only when questions of law arise from uncontroverted pleadings, and is inappropriate when material facts are disputed. Rules Civ.Proc., Rule 105. | When is the application for separate adjudication of law points properly considered? | Pretrial Procedure - Memo 348 - TH.docx | ROSS-003326139-ROSS-003326140 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 8203 | Buck's Serv. Station v. Dep't of Transp., 259 Ga. 825 | 148+219 | We affirm the Court of Appeals' holding that DOT could not use a motion in limine to test its contention that Buck's Service Station's evidence of consequential damages was insufficient. A motion in limine, which seeks to prevent the introduction of evidence, is not an appropriate vehicle to test the sufficiency of that evidence. | Motion in limine, which seeks to prevent introduction of evidence, was not appropriate vehicle in condemnation action for state to test sufficiency of evidence of consequential damages suffered by condemnee. | Is a motion in limine which seeks to prevent the introduction of evidence an appropriate vehicle to test the sufficiency of that evidence? | Pretrial Procedure - Memo 364 - RK.docx | ROSS-003310181-ROSS-003310182 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 8204 | City of Washington v. Pub. Serv. Comm'n, 190 Ind. 105 | 317A+121 | Companies "to supply any city or village with water" were authorized to be incorporated under the general law for incorporating manufacturing and mining companies. R. S. 1881, " 3851 et seq. And there was nothing whatever in the statutes in force at that time which suggested a purpose on the part of the Legislature expressly to authorize the city to enter into a binding contract fixing the price at which a water company that it might "authorize *** to construct waterworks" should furnish water to the city. So that this case is not controlled by those decisions by which it has been held that the state was bound by the contract of a municipal corporation, where it had expressly authorized the municipality to make a contract which fixed rates to be charged for a public service during a term of years; but it is controlled so far as the question of rate-making is concerned, by the many cases which have held that a mere grant of power to consent that a public utility company shall use the city streets does not include power to make a contract that such company shall be exempt from further regulation of its charges, or any of them. Winfied v. Public Service Commission, 187 Ind. 53, 61, 118 N. E. 531; Home Telephone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Milwaukee Elect. R., etc., Co. v. Railroad Com., 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254. | Increase by Public Service Commission of hydrant rates to be paid by city to water company on the company's surrender of its franchise, under Burns' Ann.St.1914, S 10052a et seq. (Burns' Ann.St. S 54-105), held not to impair the obligation of a contract between the company and the city fixing the rate to be paid, in violation of the state and the United States Constitutions; such contract having been entered into subject to the police power of the state to regulate the charges of a public utility company. | Does a contract with a public utility company for fixing and regulation of rates include the power to exempt itself from further regulation of its charges? | 042221.docx | LEGALEASE-00122552-LEGALEASE-00122553 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 8205 | Sabre v. Rutland R. Co., 86 Vt. 347 | 317A+141 | We consider that under the law of 1906 the Railroad Commission, now legally known as the Public Service Commission, by virtue of the act of 1908 (Laws 1908, No. 116), is an administrative body clothed in some respects with functions of a judicial nature, quasi judicial functions they may be called, authorized in the exercise of the police power to make rules and regulations required by the public safety and convenience, and to determine facts upon which existing laws shall operate. In a sense it has auxiliary, or subordinate, legislative powers; for, while the supreme legislative power cannot be delegated, there are many powers so far legislative that they may properly be exercised by the Legislature, which may, nevertheless, be delegated. The law in its general features is not open to the objection that it conflicts with the provision of our Constitution as to the distribution of the powers of government. The functions of an administrative officer or body may be to a large extent judicial and regulative in character. State v. Howard, 83 Vt. 6, 74 Atl. 392; State v. Harrington, 68 Vt. 622, 636, 35 Atl. 515, 34 L. R. A. 100; Morgan v. Deverennes, 86 Vt. 137, 83 Atl. 660; Lock's Appeal, 72 Pa. 491, 13 Am. Rep. 716, 723; State v. Corvallis, 59 Or. 450, 117 Pac. 980; Michigan Central R. Co. v. Michigan R. Comms., 160 Mich. 355, 361, 125 N. W. 549; R. R. Comm. Cases, 116 U. S. 336, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; Minn., St. Paul, etc., Railway Co. v. R. Comms., 136 Wis. 146, 162, 116 N. W. 905, 911, 17 L. R. A. (N. S.) 821. The provision for keeping the departments of government separate does not mean an absolute separation of functions; for, if it did, it would really mean that we are to have no government, whereas our Constitution was ordained for the establishment of efficient government. The proposition is obvious, but we cite some cases. In re Trustees, etc., v. Saratoga, etc., Co., 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713; Atlantic Coast Line v. N. C. Corporation | Under Laws 1906, No. 126, and Laws 1908, No. 116, the Board of Railroad Commissioners, known as the Public Service Commission, is an administrative body clothed with some quasi judicial functions, and also having auxiliary or subordinate legislative powers. | Is the Public Service Commission (PSC) an administrative body exercising quasi-judicial functions? | 042231.docx | LEGALEASE-00122751-LEGALEASE-00122752 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 8206 | Kapil v. Ass'n of Pennsylvania State Coll. & Univ. Faculties, 504 Pa. 92 | 241+43 | The true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion. 51 Am.Jur.2d, Limitation of Actions " 107 (1970). | True test for determining when cause of action arises or accrues is to establish time when plaintiff could have first maintained cause of action to a successful conclusion. | Does a cause of action arise when one can first maintain an action to a successful conclusion? | Action - Memo # 220 - C - NO.docx | ROSS-003301599-ROSS-003301600 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8207 | Anchor Packing Co. v. Grimshaw, 115 Md. App. 134 | 13+61 | Application of the statutory cap is triggered when "the cause of action arises." Armstrong II, 326 Md. at 121, 604 A.2d 47. In Armstrong II, the Court held that a "cause of action arises" under the statutory cap set forth in C.J. " 11"108(b) when it first comes into existence, as distinguished from when a cause of action accrues. Id. at 121, 604 A.2d 47. A cause of action accrues when a plaintiff ascertains or should have ascertained "the nature and cause of his injury."Id. (citing Harig v. Johns"Manville Products Corp., 284 Md. 70, 83, 394 A.2d 299 (1978)); see also Fetzer v. Wood, 211 Ill.App.3d 70, 155 Ill.Dec. 626, 569 N.E.2d 1237, 1243 (1991) ("Logic dictates that a plaintiff cannot bring a cause of action until he knows or reasonably should know of his injury, and also knows or reasonably should know that the injury was caused by the wrongful acts of another. However, that does not mean that the plaintiff does not have an existing cause of action of which he is unaware."). A cause of action arises in a negligence or strict liability case "when facts exist to support each element." Id. at 121, 604 A.2d 47. In a negligence case the injury would be the last element to come into existence. Id. Therefore, in the instant case, as in Armstrong II, appellees' noneconomic injuries award should be reduced under " 11"108 only if their "injuries" came into existence on or after July 1, 1986. Id. at 122, 604 A.2d 47. | Cause of action arises in negligence or strict liability case when facts exist to support each element. | Does cause of action arise in negligence or strict liability case when facts exist to support each element? | Action - Memo # 228 - C - NO.docx | ROSS-003284102-ROSS-003284104 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8208 | Jo Ann Howard & Assocs., P.C. v. Cassity, 868 F.3d 637 | 13+4 | Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and in pari delicto defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. Walker v. James, 337 Mo. 750, 85 S.W.2d 876, 885 (1935). The in pari delicto defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses. | Under Missouri law, "in pari delicto defense" provides that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | What is the pari delicto defense? | Action - Memo # 348.docx | ROSS-003324893-ROSS-003324894 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8209 | Sarhank Grp. v. Oracle Corp., 404 F.3d 657 | 25T+130 | Under American law, whether a party has consented to arbitrate is an issue to be decided by the Court in which enforcement of an award is sought. An agreement to arbitrate must be voluntarily made, and the Court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators. First Options, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (The arbitrability of a dispute's merits depends on whether a party has agreed to arbitration, and the issue of whether arbitrability is decided by the arbitrator depends on whether the parties agreed to submit this issue.); at 943 ("If... the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."). As arbitrability is not arbitrable in the absence of the parties' agreement, the district court was required to determine whether Oracle had agreed to arbitrate. | Agreement to arbitrate must be voluntarily made, and the court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators. | Can agreements to arbitrate be made voluntarily? | 007148.docx | LEGALEASE-00125547-LEGALEASE-00125548 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8210 | Brown v. St. Paul Travelers Companies, 559 F. Supp. 2d 288 | 25T+132 | In Gonzalez, the court held that the plaintiff was subject to the company's arbitration policy, distributed to employees along with a copy of the company's handbook, despite the fact that the plaintiff did not sign the required receipt form. See Gonzalez, 1999 WL 595632. The court found that the plaintiff assumed the obligation to arbitrate when, having been advised that the arbitration policy was a condition of continued employment, he continued his employment with the company past the effective date of the policy. Id.; see also Genesco, 815 F.2d at 846 (finding that plaintiff agreed to arbitrate with defendant under both signed and unsigned agreements); Bishop v. Smith Barney, Inc., 1998 WL 50210, (S.D.N.Y. February 6, 1998) (holding that unsigned arbitration agreement was binding under the FAA and indicating that plaintiff's conduct demonstrated an obligation to arbitrate). Here, while there is no signed acknowledgment of plaintiff's receipt of the handbook, the arbitration policy is a written policy, plaintiff was advised that compliance with the arbitration policy was a condition of continued employment, she was advised that it was her responsibility to "read and understand" all of the company policies including the arbitration policy, and she continued her employment with defendant. "[W]hen an arbitration policy is a condition of employment, ... an employee "will be deemed to have accepted" an arbitration agreement when she continues to work after the promulgation of the arbitration policy." Beletsis v. Credit Suisse First Boston, Corp., 2002 WL 2031610, (S.D.N.Y. September 4, 2002) (citing Chanchani v. Salomon/Smith Barney, Inc., 2001 WL 204214, (S.D.N.Y. March 1, 2001)). Plaintiff's statement, that she has no recollection or record of receiving the employee handbook and arbitration policy, despite the fact that it was distributed on at least six occasions during her employment, is thus not sufficient to raise a genuine issue of material | When arbitration policy is condition of employment, employee will be deemed to have accepted arbitration agreement when she continues to work after arbitration policy's promulgation. 9 U.S.C.A. S 3. | Will an employee be deemed to have accepted an arbitration agreement when she continues to work after the promulgation of the arbitration policy if an arbitration policy is a condition of employment? | 007162.docx | LEGALEASE-00125559-LEGALEASE-00125560 | Condensed, Order, SA | 0.9 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8211 | Bank Leumi Tr. Co. of New York v. Bally's Park Place, 528 F. Supp. 349 | 172H+574(1) | Furthermore, although the death of the maker of a check or note does not terminate his liability, it does revoke the authority of the payee to collect from the drawee-bank and relegates the payee to the status of a general creditor of the estate of the deceased. In re Kolben's Estate, 203 Misc. 1012, 1014, 120 N.Y.S.2d 812 (N.Y.Sur.Ct.1953); InreGreene'sEstate, 47Misc.2d140, 143, 261N.Y.S.2d977 (N.Y.Sur.Ct.1965). The U.C.C. provides a similar result. New York U.C.C. s 4-405(1). "Under 4-405(1) a bank's authority to handle items on its customer's account terminates when the bank learns that he has died ...." White & Summers, Uniform Commercial Code at 665 (2d ed. 1980). Bally's, therefore, had no right to collect the check from Bank Leumi once it knew Brinker had died. On this additional ground, Bank Leumi may recover for its mistaken payment. | Under New York law, although death of maker of check or note does not terminate his liability, it does revoke authority of payee to collect from drawee-bank and relegates payee to status of general creditor of estate of the deceased. McKinney's N.Y. Uniform Commercial Code S 4-405(1). | Does the death of the maker or drawer terminate his liability upon the instrument? | Bills and Notes - Memo 39 - DB VP.docx | ROSS-003302189-ROSS-003302190 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 8212 | Hollywood v. Broward Cty., 431 So. 2d 606 | 414+1382(4) | From City of Dunedin, Wald, and Admiral Development, we discern the general legal principle that reasonable dedication or impact fee requirements are permissible so long as they offset needs sufficiently attributable to the subdivision and so long as the funds collected are sufficiently earmarked for the substantial benefit of the subdivision residents. In order to satisfy these requirements, the local government must demonstrate a reasonable connection, or rational nexus, between the need for additional capital facilities and the growth in population generated by the subdivision. In addition, the government must show a reasonable connection, or rational nexus, between the expenditures of the funds collected and the benefits accruing to the subdivision. In order to satisfy this latter requirement, the ordinance must specifically earmark the funds collected for use in acquiring capital facilities to benefit the new residents. The developer, of course, can attempt to refute the government's showing by offering additional evidence. | For dedication or impact fees to be valid, local government must demonstrate reasonable connection, or rational nexus, between need for additional capital facilities and growth in population by subdivision and reasonable connection, or rational nexus, between expenditures of funds collected and benefits accruing to subdivision. | What are required to determine by the court while applying the dual rational nexus test? | 017516.docx | LEGALEASE-00124775-LEGALEASE-00124776 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8213 | Yahoo! v. La Ligue Contre Le Racisme et L'Antisemitisme, 169 F. Supp. 2d 1181 | 221+162 | No legal judgment has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. 28 U.S.C. " 1738. However, the United States Constitution and implementing legislation require that full faith and credit be given to judgments of sister states, territories, and possessions of the United States. U.S. Const. art. IV, "" 1, cl. 1; 28 U.S.C. " 1738. The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by "the comity of nations." Hilton v. Guyot, 159 U.S. 113, 163, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." Hilton, 159 U.S. at 163"64, 16 S.Ct. 139 (1895). United States courts generally recognize foreign judgments and decrees unless enforcement would be prejudicial or contrary to the country's interests. Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir.1971) cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); Laker Airways v. Sabena Belgian World Airlines, 731 F.2d 909, 931 (D.C.Cir.1984) ( "[T]he court is not required to give effect to foreign judicial proceedings grounded on policies which do violence to its own fundamental interests."); Tahan v. Hodgson, 662 F.2d 862, 864 (D.C.Cir.1981) ("[R]equirements for enforcement of a foreign judgment expressed in Hilton are that .. the original claim not violate American public policy .. that it not be repugnant to fundamental notions of what is decent and just in the State where enforcement is sought."). | Extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by the comity of nations; comity is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. | "Is comity neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will, upon the other?" | 020156.docx | LEGALEASE-00124747-LEGALEASE-00124748 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8214 | Volodarskiy v. Delta Air Lines, 987 F. Supp. 2d 784 | 221+162 | Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.." Hilton v. Guyot, 159 U.S. 113, 163"64, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity concerns are particularly relevant when there are parallel proceedings in domestic and foreign courts. See In re Rimsat, Ltd., 98 F.3d 956, 963 (7th Cir.1996) ( "Comity is a doctrine of adjustment, not a mandate for inaction. In the case of parallel inconsistent proceedings in domestic and foreign courts, one must yield.."). | Comity is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. | "Is comity neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will, upon the other?" | International Law - Memo # 277 - C - KI.docx | LEGALEASE-00014405-LEGALEASE-00014406 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8215 | Riggs Nat. Corp. & Subsidiaries v. C.I.R., 163 F.3d 1363 | 221+342 | Riggs Bank primarily relies on the act of state doctrine. The doctrine directs United States courts to refrain from deciding a case when the outcome turns upon the legality or illegality (whether as a matter of U.S., foreign, or international law) of official action by a foreign sovereign performed within its own territory. W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., 493 U.S. 400, 406, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). It stems from separation of powers concerns; it reflects " "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs." Id. at 404, 110 S.Ct. 701 (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)); see generally restatement (Third) of the Foreign Relations Law of the United States " 443 cmt. a (1986). | "Act of state doctrine" directs United States courts to refrain from deciding case when outcome turns upon legality or illegality, whether as matter of United States, foreign, or international law, of official action by foreign sovereign performed within its own territory. | Does the act of state doctrine direct United States courts to refrain from deciding a case when the outcome turns upon the legality or illegality of official action by a foreign sovereign performed within its own territory? | International Law - Memo # 284 - C - ES.docx | ROSS-003282527-ROSS-003282529 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8216 | Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 | 221+151 | Like foreign sovereign immunity, head of state immunity is a matter of grace and comity, rather than a matter of right. Lafontant v. Aristide, 844 F.Supp. at 132, citing Hilton v. Guyot, 159 U.S. 113, 163"164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Only individuals whom the United States recognizes as legitimate heads of state qualify; whether an individual qualifies as a head of state is a decision committed exclusively to the political branches and the judiciary is bound by their determinations. Id. at 132"133, citing Sabbatino, 376 U.S. at 410. See also United States v. Noriega, 746 F.Supp. 1506 (S.D.Fla.1990); United States v. Pink, 315 U.S. 203, 230, 62 S.Ct. 552, 86 L.Ed. 796 (1942). | Like foreign sovereign immunity, head of state immunity is matter of grace and comity, rather than matter of right. | "Like foreign sovereign immunity, is head of state immunity a matter of grace and comity, rather than matter of, right?" | 020317.docx | LEGALEASE-00124453-LEGALEASE-00124454 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8217 | Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 971 F. Supp. 2d 49 | 221+387 | The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). This doctrine "is applicable when "the relief sought or the defense interposed would require a court in the United States to declare invalid the official act of a foreign sovereign performed within" its boundaries." World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1164 (D.C.Cir.2002) (internal brackets omitted) (quoting W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). The doctrine is to be interpreted and applied in accordance with the policy interests of "international comity, respect for the sovereignty of other nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." W.S. Kirkpatrick, 493 U.S. at 408, 110 S.Ct. 701; Nemariam v. Fed. Democratic Republic of Ethiopia, 491 F.3d 470, 477 n. 7 (D.C.Cir.2007). However, the party raising the defense bears the burden to affirmatively show that an act of state has occurred and "that no bar to the doctrine is applicable under the factual circumstances." Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1534 (D.C.Cir.1984) (en banc), judgment vacated on other grounds, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985). | The party raising the act of state doctrine as a defense bears the burden to affirmatively show that an act of state has occurred and that no bar to the doctrine is applicable under the factual circumstances. | Does the party invoking the act of state doctrine have the burden of establishing factual predicate for doctrine's applicability? | 020833.docx | LEGALEASE-00125000-LEGALEASE-00125001 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 8218 | In re Grand Jury Proceedings, Doe No. 700, 817 F.2d 1108 | 221+151 | We turn first to the contention that Mr. Marcos is entitled to immunity from process as a former head of state and that Mrs. Marcos is entitled to immunity as the wife of a former head of state. Head-of-state immunity is a doctrine of customary international law. Generally speaking, the doctrine maintains that a head of state is immune from the jurisdiction of a foreign state's courts, at least as to authorized official acts taken while the ruler is in power. See, e.g., Kilroy v. Windsor (Prince Charles, The Prince of Wales), Civ. No. C"78"291 (N.D.Ohio 1978), excerpted in 1978 Dig.U.S.Prac.Int'l L. 641"43; Chong Boon Kim v. Kim Yong Shik (Hawaii Cir.Ct.1963), excerpted in 58 Am.J.Int'l L. 186"87 (1964); Hatch v. Baez, 7 Hun. 596 (N.Y.Sup.Ct.1876). Like the related doctrine of sovereign immunity, the rationale of head-of-state immunity is to promote comity among nations by ensuring that leaders can perform their duties without being subject to detention, arrest or embarrassment in a foreign country's legal system. See generally Note, Resolving the Confusion Over Head of State Immunity; The Defined Rights of Kings, 86 Colum.L.Rev. 169, 171"79 (1986). | Under the head-of-state immunity doctrine, head of state is immune from jurisdiction of foreign state's courts, at least as to authorized official acts taken while ruler is in power. | "Under the head-of-state immunity doctrine, is ahead of state is immune from jurisdiction of foreign state's courts?" | 020875.docx | LEGALEASE-00124474-LEGALEASE-00124475 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 8219 | In re Vitamin C Antitrust Litig., 584 F. Supp. 2d 546 | 221+342 | he act of state doctrine derives from both separation of powers and respect for the sovereignty of other nations. It holds that the courts of one nation may not sit in judgment of the public acts of another sovereign within its own borders. See Republic of Austria v. Altmann, 541 U.S. 677, 700, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). The reasons for the doctrine were outlined by the Supreme Court over a century ago:Every sovereign state is bound to respect the independence of every other sovereign state and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). Thus, any censure of another country's acts within its own territory is reserved to diplomatic channels and does not come within the purview of the courts. See Oetjen v. Central Leather Co., 246 U.S. 297, 304, 38 S.Ct. 309, 62 L.Ed. 726 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." (internal quotation marks omitted)). The Supreme Court has built upon the foundations of the act of state doctrine to note that, in the context of adjudicating the legality of expropriations by a foreign state, "[p]iecemeal dispositions of this sort involving the probability of affront to another state could seriously interfere with negotiations being carried on by the Executive Branch and might prevent or render less favorable the terms of an agreement that could otherwise be reached." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 432, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Thus, the act of state doctrine is aimed at reserving for the executive branch | Any censure of another country's acts within its own territory is reserved to diplomatic channels and does not come within the purview of the courts. | Is censure of another country's acts within its own territory reserved to diplomatic channels instead of the courts? | International Law - Memo 586 - TH.docx | ROSS-003288904-ROSS-003288906 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8220 | Barragan v. Banco BCH, 188 Cal. App. 3d 283 | 221+342 | Because the act of state doctrine is merely an issue preclusion device (Arango v. Guzman Travel Advisors Corp., supra, 621 F.2d at p. 1380; National American Corp. v. Fed. Rep. of Nigeria, supra, 448 F.Supp. at p. 640), it does not affect the power of the court to enter a default judgment. Here the court had jurisdiction to proceed after the entry of the default to award a judgment adverse to the bank. In effect the bank's contention seeks to transmute an argument on the merits to one of jurisdiction. It is exactly because the court legitimately exercised its power to proceed by default which prevents the bank from doing so. Accordingly we do not address the merits of this defense and the applicability of the act of state doctrine to the false imprisonment cause of action. | Act of state doctrine, being merely issue preclusion device, did not affect power of court to enter default judgment. | Does the act of state doctrine affect the power of the court to enter default judgment? | 020902.docx | LEGALEASE-00124575-LEGALEASE-00124576 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8221 | Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F. Supp. 92 | 221+342 | Congress has thus legislated a judicial "presumption" with respect to the foreign relations demands of a limited category of act of state cases. As a matter of record, even this narrow presumption did not conform to the realities of executive judgment. The executive strenuously opposed the enactment of the legislation, and it became law only as a rider to the Foreign Assistance Act-which is why the provision is called the "Sabbatino Amendment."In any event, this exception is by its terms extremely narrow, and in all other cases the act of state doctrine remains the law of the land. The legislation has been strictly construed, and courts have continued to rely upon act of state in cases deemed not precisely fitting the statutory language.See French v. Banco Nacional de Cuba, 23 N.Y.2d 46, 295 N.Y.S.2d 433, 242 N.E.2d 704 (1968) (no confiscation or taking, and no claim of right to property); F. Palicio y Compania, S.A. v. Brush, 256 F.Supp. 481 (S.D.N.Y.1966), aff'd, 375 F.2d 1011 (2nd Cir. 1967) (no violation of international law). Plaintiffs' assertion that the Amendment in effect pulled the rug out from under the act of state doctrine in all cases is groundless. | The exception to act of state doctrine contained in Sabbatino Amendment is by its terms extremely narrow, and in all other cases the act of state doctrine remains the law of the land. 22 U.S.C.A. S 2370(e) (2). | Is the exception to the act of state doctrine contained in the Sabbatino Amendment by its terms extremely narrow? | 020918.docx | LEGALEASE-00124444-LEGALEASE-00124446 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 8222 | Chisholm & Co. v. Bank of Jamaica, 643 F. Supp. 1393 | 221+342 | Defendants also claim that this action is nevertheless barred under the act of state doctrine. The act of state doctrine requires that a court, after exercising jurisdiction, nevertheless decline to decide the merits of a case if in doing so it would need to judge the validity of the public acts of a sovereign state performed within its own territory. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Thus, under the act of state doctrine, a Court must analyze the conduct not only of the Defendant itself, but also of the government behind it. | Under act of state doctrine, court must analyze conduct not only of defendant itself, but also of government behind it, in determining whether doctrine requires that court, after exercising jurisdiction, decline to decide merits of case on ground it would lead to judging validity of public acts of sovereign state performed within its own territory. | "Under the act of state doctrine, must a court analyze conduct not only of the defendant itself but also of the government behind it?" | 020951.docx | LEGALEASE-00124499-LEGALEASE-00124500 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 8223 | United States v. Sum of $70,990,605, 234 F. Supp. 3d 212 | 221+342 | Under the act of state doctrine, federal and state courts in the United States must "presume the validity of an "official act of a foreign sovereign performed within its own territory." " Republic of Austria v. Altmann, 541 U.S. 677, 713, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (quoting W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp. 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). The doctrine applies when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." Kirkpatrick, 493 U.S. at 405, 110 S.Ct. 701. Neither a statute nor the "text of the Constitution [requires] the act of state doctrine." Banco National de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Rather, "its continuing vitality depends on its capacity to reflect the proper distribution of the functions between the judicial and political branches of the Government on matters bearing upon foreign affairs." Id. at 427"28, 84 S.Ct. 923. "As such, it operates as a rule of judicial restraint in decisionmaking, not [as] a jurisdictional limitation like the political question doctrine," Hourani v. Mirtchev, 796 F.3d 1, 12 (D.C. Cir. 2015), or as "some vague doctrine of abstention," Kirkpatrick, 493 U.S. at 406, 110 S.Ct. 701. | The act of state doctrine, under which federal and state courts in the United States must presume the validity of an official act of a foreign sovereign performed within its own territory, applies only when a court must decide, that is, when the outcome of the case turns upon, the effect of official action by a foreign sovereign. | "Under act-of-state doctrine, does a court presume validity of foreign state's laws within that state's territory?" | International Law-Memo # 765 - C - SU.docx | ROSS-003312852-ROSS-003312854 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 8224 | In re Commitment of Kelley, 2012 IL App (1st) 110240 | 307A+3 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. People v. Nelson, 235 Ill.2d 386, 420, 337 Ill.Dec. 479, 922 N.E.2d 1056 (2009). An abuse of discretion occurs only when the trial court's ruling is "arbitrary, fanciful, or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) People v. Santos, 211 Ill.2d 395, 401, 286 Ill.Dec. 102, 813 N.E.2d 159 (2004). | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | Is a ruling on a motion in limine a matter within the discretion of the trial court that will not be reversed absent an abuse of that discretion? | Pretrial Procedure - Memo # 417 - C - SSB.docx | ROSS-003310645-ROSS-003310646 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8225 | Amtower v. Photon Dynamics, 158 Cal. App. 4th 1582 | 307A+3 | In spite of the obvious drawbacks to the use of in limine motions to dispose of a claim, trial courts do have the inherent power to use them in this way. (Lucas v. County of Los Angeles (1996) 47 Cal.App.4th 277, 284"285, 54 Cal.Rptr.2d 655; see also Coshow v. City of Escondido, supra, 132 Cal.App.4th at pp. 701"702, 34 Cal.Rptr.3d 19; cf. Atkinson v. Elk Corp., supra, 109 Cal.App.4th 739, 748"749, 135 Cal.Rptr.2d 433 [finding the court's nonsuit before opening statement to be "irregular" but not prejudicial]; and see Code Civ. Proc., " 128.) Courts have inherent power, separate from any statutory authority, to control the litigation before them and to adopt any suitable method of practice, even if the method is not specified by statute or by the Rules of Court. (Bauguess v. Paine (1978) 22 Cal.3d 626, 636"637, 150 Cal.Rptr. 461, 586 P.2d 942; Tide Water Assoc. Oil Co. v. Superior Court (1955) 43 Cal.2d 815, 825, 279 P.2d 35; Citizens Utilities Co. v. Superior Court (1963) 59 Cal.2d 805, 812"813, 31 Cal.Rptr. 316, 382 P.2d 356.) But when the trial court utilizes the in limine process to dispose of a case or cause of action for evidentiary reasons, we review the result as we would the grant of a motion for nonsuit after opening statement, keeping in mind that the grant of such a motion is not favored, that a key consideration is that the nonmoving party has had a full and fair opportunity to state all the facts in its favor, and that all inferences and conflicts in the evidence must be viewed most favorably to the nonmoving party. | In spite of the drawbacks to the use of in limine motions to dispose of a claim, trial courts have the inherent power to use them in this way. West's Ann.Cal.C.C.P. S 128. | "Despite the drawbacks to the use of in limine motions to dispose of a claim, do trial courts have the inherent power to use them?" | Pretrial Procedure - Memo # 422 - C - SSB.docx | ROSS-003325889-ROSS-003325890 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8226 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82 | 307A+3 | The next issue raised by the appellants is the trial court's limitation of their questioning of Benchmark's employees at trial. They contend that it was error for the trial court to grant Benchmark's motion in limine barring them from questioning Benchmark employees regarding their opinions on the basis that those opinions were not properly disclosed. We conclude that this argument by appellants is essentially waived and ultimately fails to support their motion for a new trial. A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. Todd W. Musburger, Ltd. v. Meier, 394 Ill.App.3d 781, 801"02, 333 Ill.Dec. 383, 914 N.E.2d 1195 (2009). | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | "Are rulings on evidence motions, such as motions in limine, left undisturbed on review absent an abuse of discretion?" | 024315.docx | LEGALEASE-00125022-LEGALEASE-00125023 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 8227 | Amtower v. Photon Dynamics, 158 Cal. App. 4th 1582 | 307A+3 | Strictly speaking, Photon's motion was not an in limine motion. In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. " "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence [ (3d. ed.1986) ], supra, " 2011 at p. 1969.)"The advantage of such motions is to avoid the obviously futile attempt to unring the bell in the event a motion to strike is granted in the proceedings before the jury." (Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 337[, 145 Cal.Rptr. 47].)" " (Kelly v. New West Federal Savings (1996) 49 Cal.App.4th 659, 669, 56 Cal.Rptr.2d 803.) What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure. It has become increasingly common, however, for litigants to utilize in limine motions for this purpose. | In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. | Are motions in limine designed to decide difficult evidentiary issues in advance of trial? | 024326.docx | LEGALEASE-00125109-LEGALEASE-00125110 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8228 | Junkins v. Branstad, 448 N.W.2d 480 | 307A+2 | Application for Adjudication of Law Points and Motion for Summary Judgment. An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. Kriv v. Northwestern Sec. Co., 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power. | Application for adjudication of law points and motion for summary judgment are appropriate only when issue in question should be decided by court as matter of law rather than presented to fact finder. | Is the application for adjudication of law points a matter of law? | 024334.docx | LEGALEASE-00125168-LEGALEASE-00125169 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 8229 | Enbridge Energy (Illinois) v. Kuerth,150519, 69 N.E.3d 287 | 30+3361 | Generally, evidentiary motions, such as motions in limine, are directed to the trial court's sound discretion, and reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion. In re Leona W., 228 Ill.2d 439, 460, 320 Ill.Dec. 855, 888 N.E.2d 72, 83 (2008). "The threshold for finding an abuse of discretion is high." Id. "A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that that no reasonable [person] would take the view adopted by the court." Id. | Generally, evidentiary motions, such as motions in limine, are directed to the trial court's sound discretion, and reviewing courts will not disturb a trial court's evidentiary rulings absent an abuse of discretion. | Is an evidentiary ruling on a motion in limine left to the sound discretion of the trial judge and only reversed upon a clear showing of an abuse of discretion? | Pretrial Procedure - Memo # 429 - C - SSB.docx | ROSS-003297945-ROSS-003297946 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8230 | Kirk v. Ford Motor Co., 141 Idaho 697 | 307A+3 | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. Gunter v. Murphy's Lounge, LLC, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005)(citing Lanham v. Idaho Power Co., 130 Idaho 486, 492, 943 P.2d 912, 918 (1997)). If the trial court decides to wait and hear the actual foundation laid before determining whether to admit or exclude evidence, the moving party is required to continue to object as the evidence is presented. Id. (citing State v. Hester, 114 Idaho 688, 760 P.2d 27 (1988)); Karlson, 140 Idaho at 565, 97 P.3d at 432. The purpose behind this rule is that: [A] motion in limine is based on an alleged or anticipated factual scenario, [and] without the benefit of all the other actual evidence which will be admitted at trial, the trial judge will not always be able to make an informed decision regarding the admissibility of the evidence prior to the time the evidence is actually presented at trial. Hester, 114 Idaho at 699, 760 P.2d at 38. If, however, the trial court unqualifiedly rules on the admissibility of evidence prior to trial no further objection is required to preserve the issue for appeal. Id. at 700, 760 P.2d at 39 (citing Davidson v. Beco Corp., 112 Idaho 560, 733 P.2d 781 (Ct.App.1986) rev'd and aff'd Davidson, 114 Idaho 107, 753 P.2d 1253 (1987)). | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | "When presented with a motion in limine, does a trial court have the authority to deny the motion and wait until trial to determine if the evidence should be excluded?" | Pretrial Procedure - Memo # 442 - C - HAM.docx | ROSS-003285229-ROSS-003285230 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8231 | Montz v. Hill-Mont Land Co., 329 N.W.2d 657 | 307A+2 | An application for separate adjudication of law points is properly considered only when the questions of law arise from uncontroverted pleadings. The application is inappropriate when material facts are disputed. M & W Farm Service Co. v. Callison, 285 N.W.2d 271, 274 (Iowa 1979). If the pleadings reveal fact issues with respect to the law points, disposition under rule 105 is inappropriate unless the parties stipulate the facts. Andersen Construction Co. of Council Bluffs v. National Bank of Des Moines, 262 N.W.2d 563, 564-65 (Iowa 1978). The relevant pleadings in the present case consist of a petition and answer; the parties did not enter into a stipulation of facts. From the face of these pleadings we can glean allegations but few uncontroverted facts. | An application for separate adjudication of law points is properly considered only when questions of law arise from uncontroverted pleadings, and is inappropriate when material facts are disputed. Rules Civ.Proc., Rule 105. | When is an application for separate adjudication of law points properly considered? | 031742.docx | LEGALEASE-00125330-LEGALEASE-00125332 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8232 | Bailey v. Chicago, B. & Q.R. Co., 179 N.W.2d 560 | 388+9(1) | Finally, by proceeding to trial on the merits, absent any request for a ruling on their application, plaintiffs must be deemed to have waived any right to later complain. See in that regard Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85; In re Estate of Coleman, 238 Iowa 768, 770, 28 N.W.2d 500; 89 C.J.S. Trial s 658, page 501; 5 Am.Jur.2d, Appeal and Error, sections 557, page 40, and 562, page 42. Further discussion of this issue will serve no useful purpose. | Plaintiff who proceeded to trial on merits without requesting ruling on application for adjudication of law points waived any right to later complain. 58 I.C.A. Rules of Civil Procedure, rule 105. | "If the plaintiff proceeded to trial on the merits, and absent any request for a ruling on the application of the merits, is the plaintiff deemed to have waived any right to later complain?" | 031876.docx | LEGALEASE-00125244-LEGALEASE-00125245 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8233 | Ball v. Rao, 48 S.W.3d 332 | 307A+3 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet.) The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App."Houston [14th Dist.] 2000, no pet.); Enserch Corp., 977 S.W.2d at 757. The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court and we, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | The purpose of a motion in limine is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. | Is the purpose of a motion in limine to prevent parties from introducing prejudicial evidence in front of the jury? | Pretrial Procedure - Memo # 839 - C - VA.docx | ROSS-003284562-ROSS-003284563 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8234 | Pullum v. Robinette, 174 S.W.3d 124 | 307A+3 | State courts may make pre-introduction rulings on evidence that are conditional or provisional in nature, and, where such conditions do not occur at trial, may change an earlier ruling regarding the admissibility of the evidence. See, e.g., State v. Bray, 669 S.W.2d 684, 687 (Tenn.Crim.App.1983). We know of no authority suggesting a trial court could not change an in limine ruling for other reasons in the exercise of sound discretion. | Courts may make pre-introduction rulings on evidence that are conditional or provisional in nature, and, where such conditions do not occur at trial, may change an earlier ruling regarding the admissibility of the evidence. | Can the courts change an earlier ruling regarding the admissibility of evidence? | Pretrial Procedure - Memo # 925 - C - TJ.docx | ROSS-003326769 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 8235 | Teleconnect Co. v. US W. Commc'ns, 508 N.W.2d 644 | 317A+111 | The filed tariff doctrine conclusively presumes that both a utility and its customers know the contents and effects of published tariffs. Maislin Indus., U.S. v. Primary Steel, Inc., 497 U.S. 116, 127 n. 9, 110 S.Ct. 2759, 2766 n. 9, 111 L.Ed.2d 94, 109 n. 9 (1990); Missouri Pac. R.R. v. Rutledge Oil Co., 669 F.2d 557, 559 (8th Cir.1982). Under IowaCode section 476.5, just as under the Interstate Commerce Act and other statutes that establish a tariff system to replace private contracting, neither the customer's ignorance nor the utility's misquotation of the applicable tariff provides refuge from the terms of the tariff. See Maislin,497 U.S. at 120, 110 S.Ct. at 2763, 111 L.Ed.2d at 104. | "Filed tariff doctrine" conclusively presumes that both utility and its customer know contents and effects of published tariffs. | Does the filed tariff doctrine conclusively presume that the utility and its customers know the content and effects of published tariffs? | Public Utilities - Memo 152 - AM.docx | ROSS-003290293-ROSS-003290294 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8236 | Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland, 164 F. Supp. 3d 1330 | 366+1 | mount to the clerk. The Wyoming Supreme Court discussed conventional subrogation and stated as follows:Conventional subrogation, which can take effect only by agreement, is synonymous with assignment. Northern Utilities Division of K N Energy, Inc. v. Town of Evansville, 822 P.2d 829, 836 (Wyo.1991). Subrogation is defined as being " 'the substitution of another person in the place of a creditor, so that the person in whose favor [the subrogation] is exercised succeeds to the rights of the creditor in relation to the debt.' " Commercial Union Insurance Company v. Postin, 610 P.2d 984, 986 (Wyo.1980) (quoting Criss v. Folger Drilling Company, 195 Kan. 552, 407 P.2d 497, 500 (1965)). "[I]n Wyoming, causes of action for damage or injury to persons and property survive and are assignable, and consequently can be the subject of a claim for conventional subrogation." Northern Utilities Division of K N Energy, Inc., 822 P.2d at 837. Likewise, a judgment creditor may assign his rights in the judgment to a third party. 47 Am.Jur.2d Judgments " 1011 (1995).The assignment of a part of a debt transfers an equitable interest in that part of the debt to the assignee. 6 Am.Jur.2d Assignments " 81 (1963). In order to prevent the debtor from paying the assignor, the assignee must give the debtor notice that the assignment has been made. See id. "The general rule is that if the debtor pays the assignor after notice of a partial assignment of the debt, [the debtor] may be held liable in equity by the assignee." Id. at 262. See also Independent National Bank v. Westmoor Electric, Inc., 164 Ariz. 567, 571, 795 P.2d 210, 214 (Ct.App.1990); Mid"States Sales Company, Inc. v. Mountain Empire Dairymen's *739 Association, Inc., 741 P.2d 342, 347 (Colo.Ct.App.1987).In this case, Hodges and State Farm received notice that Stilson had assigned a part of her claim against Hodges to Allstate because Allstate had paid Stilson's medical expenses. After receiving the assignment notice, Hodges and State Farm were | In Wyoming, causes of action for damage or injury to persons and property survive and are assignable, and consequently can be the subject of a claim for conventional subrogation. | Is the assignment of a cause of action for personal injury subject to a subrogation claim? | 044318.docx | LEGALEASE-00125010-LEGALEASE-00125011 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8237 | Paulus v. Lawyers Sur. Corp., 625 S.W.2d 843 | 366+7(1) | In her tenth point of error, appellant maintains the trial court erred in rendering judgment in favor of appellee for the payment of fees and costs incurred by Snell as a result of appellant's alleged mismanagement of the estate of Claude Neal Paulus, deceased. Snell had filed an annual account in the probate court seeking recovery of attorneys' fees and expenses incurred as a result of appellant's alleged mismanagement of the estate. On April 10, 1979, the court granted Snell recovery of those expenses from appellant and her surety, appellee. Snell repeatedly demanded payment from appellant. These demands proving fruitless, Snell sought and received reimbursement from appellee. Appellant contends the payment pursuant to the trial court's order of April 10, 1979, from which no appeal was taken, was voluntary and that the order was not a final adjudication. Appellant asserts, therefore, appellee should have waited until the order was final and sought execution of same prior to making the payment to Snell. In addition, appellant contends error in the award of fees due to the appellate court's reversing the judgment of the trial court in the main action and rendering that the estate take nothing against appellant and her surety. Appellant entered into a surety bond contract with appellee which required her to reimburse appellee should it become liable on its bond. Where a surety pays the debt of a principal, it may sue in assumpsit or on the debt and is subrogated to the rights of the creditor it paid. Highlands Cable Television, Inc. v. Wong, 547 S.W.2d 324, 326 (Tex.Civ.App.-Austin 1977, writ ref'd n.r.e.). The record indicates appellee paid sums pursuant to the order of April 10, 1979 as required by its bond obligation, incurred costs as a result of that obligation, and has not been reimbursed for these expenditures. An appeal in a probate matter is authorized if it is taken from a decision, order, decree, or judgment which finally disposes and is conclusive of an issue or disputed | Where surety pays debt of principal, it may sue in assumpsit or on debt and is subrogated to rights of creditor it paid. | When a surety pays the debt of a principal may it sue in assumpsit or on debt and is it subrogated to rights of the creditor it paid? | 044354.docx | LEGALEASE-00125503-LEGALEASE-00125505 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 8238 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818 | 366+1 | Here, the question is whether an excess insurer who pays a third-party claim on behalf of its insured after a primary insurer refuses in bad faith to settle the claim has a right to subrogation to obtain the amount paid from the primary insurer. A right to equitable subrogation belongs to "one, not a volunteer, who pays another's debt, to recover the amount paid, which in good conscience should be paid by the one primarily responsible for the loss." Id. at 74 (quoting 4 New Appleman Law of Liability Ins. sec. 42.01 (2012)). Scottsdale paid $1 million to settle the claim against Wells Trucking. Scottsdale did not do so as a volunteer but because it was obligated to do so under its policy with Wells Trucking. See id. at 75. | A right to equitable subrogation belongs to one, not a volunteer, who pays another's debt, to recover the amount paid, which in good conscience should be paid by the one primarily responsible for the loss. | Does a right to equitable subrogation belong a volunteer? | Subrogation - Memo 983 - C- CAT.docx | ROSS-003283093-ROSS-003283094 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 8239 | Pennsylvania Pub. Util. Comm'n v. Philadelphia Elec. Co., 501 Pa. 153 | 317A+111 | It is well established that, absent express legislative authority, the PUC is powerless to interfere with the general management decisions of public utility companies. Swarthmore Borough v. Public Service Commission, 277 Pa. 472, 478, 121 A. 488, 489-490 (1923). The Public Utility Code does not expressly grant the PUC general authority over the siting and construction of all utility plants. Nor does it require PUC approval for expansion of all facilities, the discretion of the company's management over such matters being generally beyond the PUC's power to supersede. Duquesne Light Co. v. Upper St. Clair Township, 377 Pa. 323, 337, 105 A.2d 287, 293 (1954). Even the PUC concedes that it is without power to order that construction of Limerick 2 be ceased, an order which the PUC did not issue here. PECO contends that, through the refusal to approve securities funding the project, the PUC is attempting to exert indirectly a power that has not been bestowed directly or by necessary implication. Delaware River Joint Toll Bridge Commission v. Carver, 399 Pa. 545, 550, 160 A.2d 425, 428 (1960). We disagree, and, for the reasons that follow, believe the PUC's action to be directly authorized by the securities registration provision of the Public Utility Code. | Absent express legislative authority, the Public Utility Commission is powerless to interfere with the general management decisions of public utility companies. | Does the Public Utilities Commission have the power to interfere with the general management decisions of the public utilities without express legislative authority? | Public Utilities - Memo 161 - AM.docx | ROSS-003298765-ROSS-003298766 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8240 | State v. Craig, 498 S.W.3d 459 | 211+1597 | Craig also contends that he cannot be found guilty of attempted statutory rape in the first degree because he did not communicate with any minor or law enforcement officer masquerading as a minor. "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." (" 566.032, RSMo Cum. Supp. 2013). As is the case with the enticement statute, the statutory rape statute is subject to the general attempt statute. State v. Smith, 330 S.W.3d 548, 555 (Mo.App. 2010). "Attempted statutory rape in the first degree occurs where a subject, with the purpose of committing the offense, takes a substantial step towards having "sexual intercourse with another person who is less than fourteen years old." " Id. It is no defense that the attempted offense was factually or legally impossible of commission if the offense could have been committed had the attendant circumstances been as the defendant believed them to be. Id.; " 564.011.2. | Attempted statutory rape in the first degree occurs where a subject, with the purpose of committing the offense, takes a substantial step towards having sexual intercourse with another person who is less than fourteen years old. Mo. Ann. Stat. SS 564.011, 566.032. | Will it become statutory rape if one had sexual intercourse with a person less than fourteen years old? | 042920.docx | LEGALEASE-00125704-LEGALEASE-00125705 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8241 | Omnibus Int'l v. AT & T, 111 S.W.3d 818 | 386+7 | Texas classifies an interference with a chattel that "compels the defendant to pay the full value of the thing with which he has interfered" as conversion; but, if the interference with a chattel does not require the defendant to pay full value, it "may constitute trespass to chattels." Prosser & Keeton on Torts " 14, at 85"86 (5th ed.1984). To interfere wrongfully with the use or possession of property is a trespass to chattels. Jarvis v. S.W. Bell Tel. Co., 432 S.W.2d 189, 191 (Tex.Civ.App.-Houston [14th Dist.] 1968, no writ). For liability to attach, causing actual damage to the property or depriving the owner of its use for a substantial period must accompany the wrongful interference. Zapata v. Ford Motor Credit Co., 615 S.W.2d 198, 201 (Tex.1981). | For liability for trespass to chattels to attach, the wrongful interference must either be accompanied by actual damage to the property or deprive the owner of its use for a substantial period. | Is actual damage to the property required for an owner to be entitled to damages for trespass to chattels? | 047191.docx | LEGALEASE-00125792-LEGALEASE-00125793 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8242 | People v. Pettis, 104 Ill. App. 3d 275 | 386+6 | Section 21-2 of the Illinois Criminal Code defines the offense of criminal trespass to a vehicle. It states:"Whoever knowingly and without authority enters any vehicle, aircraft or watercraft or any part thereof of another without his consent * * *." (Ill.Rev.Stat.1979, ch. 38, par. 21-2.)Knowledge is an essential element of this criminal offense, and therefore, the State is required to prove that the defendant knowingly entered the vehicle of another without his consent. People v. Bunch (1976), 36 Ill.App.3d 235, 237-238, 343 N.E.2d 575. | Knowledge is an essential element of criminal trespass to a vehicle, and therefore, the state is required to prove that defendant knowingly entered vehicle of another without his consent. S.H.A. ch. 38, P 21-2; U.S.C.A.Const.Amend. 6. | Is knowledge an element of criminal trespass to a vehicle? | Trespass - Memo 203 - RK.docx | ROSS-003303939-ROSS-003303940 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 8243 | Chittenholm v. Giffin, 357 Pa. 616 | 13+61 | The account, upon which the action is based, was stated on November 23, 1932, the only payment made thereon was on September 16, 1937, and suit was not brought until December 21, 1944. However, the account stated and agreed to by the parties specifically provided that plaintiff was not to be paid until the 'dwelling is sold'. The dwelling was never sold. It is well settled that it is the breach of duty that gives rise to the cause of action, and also starts the running of the statute of limitations. Ebbert v. Plymouth Oil Co., 348 Pa. 129, 34 A.2d 493, and cases cited. However, the statute generally does not begin running against the enforcement of a contract depending upon a condition precedent until such condition has been performed. Tonkin v. Baum, 114 Pa. 414, 7 A. 185. Where, as here, the time for doing an act, necessarily precedent to bringing suit is indefinite, the law allows only a reasonable time. Tasin v. Bastress, 268 Pa. 85, 110 A. 744. | It is the breach of duty that gives rise to the cause of action and also starts the running of statute of limitations. | Is it the breach of duty that gives rise to the cause of action and also starts the running of statute of limitations? | Action - Memo # 136 - C - NE.docx | ROSS-003299713-ROSS-003299714 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8244 | Konecny v. United States, 388 F.2d 59 | 13+61 | The issue decided by the District Court and now being reviewed by us is when did Konecny's right of action first accrue? This Circuit has held that "generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another" Great American Ins. Co. v. Louis Lesser Enterprises, Inc.,353 F.2d 997, 1001 (8 Cir. 1965). "A cause of action accrues at the time when an action thereon can be commenced." Pettibone v. Cook County, Minn., 120 F.2d 850, 854 (8 Cir. 1941). This is in accord with the general rule expressed in 54 C.J.S. Limitations of Actions " 109, that a cause of action accrues as soon as the right to institute and maintain a suit arises. | Generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another. | Does a cause of action accrue when facts exist which enable one party to maintain an action against another? | 005363.docx | LEGALEASE-00126149-LEGALEASE-00126150 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8245 | Preite v. Charles of the Ritz Grp., Ltd. Pension Plan, 471 F. Supp. 2d 1271 | 241+66(6) | Employee benefits claims accrue when participants become aware of the facts necessary to make their claims, such as when their application for benefits is denied. Burks v. American Cast Iron Pipe Co., 212 F.3d 1333, 1336 (11th Cir.2000). "A cause of action accrues when the events upon which it is based occur, but in the context of an ERISA claim, a cause of action does not become an enforceable demand until a claim is denied." Hoover, 286 F.Supp.2d at 1333 (citing Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 361 (5th Cir.1981)). | A cause of action accrues when the events upon which it is based occur, but in the context of an ERISA claim, a cause of action does not become an enforceable demand until a claim is denied. Employee Retirement Income Security Act of 1974, S 502(a), 29 U.S.C.A. S 1132(a). | Does a cause of action accrue when the events upon which it is based occur? | 005462.docx | LEGALEASE-00126250-LEGALEASE-00126251 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8246 | Luling Oil & Gas Co. v. Humble Oil & Ref. Co., 144 Tex. 475 | 13+61 | The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. Port Arthur Rice Milling Co. v. Beaumont Rice Mills et al., 105 Tex. 514, 143 S.W. 926. Under the contract in suit Luling had the right to examine at any reasonable time all records of the joint account which was to be accurately kept by Humble, including the right to inspect the wells and the production records and reports. It cannot be doubted that upon Humble's failure to allow an inspection of its records or of the wells at any reasonable time Luling had the right to compel Humble to do so. Moreover, upon Humble's failure to pay whatever sum was due under the contract within the time specified, Luling had the right to compel Humble to pay through a suit in court. These elementary principles make it clear, we think, that while Luling has designated its suit as one for a general accounting, it is not such a suit as would come within the purview of Section 3 of Article 5527, but rather comes under one founded upon a contract in writing. In this situation the statute of limitation begins to run at the time when a suit could be commenced upon the claim asserted. Port Arthur Rice Milling Company case, supra. | The "accrual of a cause of action" means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has "accrued". | "Does the ""accrual of a cause of action"" gives the right to institute and maintain a suit?" | Action memo# 301 C-PC.docx | ROSS-003311850-ROSS-003311851 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 8247 | Thune v. United States, 41 Fed. Cl. 49 | 148+2.1 | Two factors relevant here serve to distinguish takings from torts. First, "takings result only from authorized acts of government officials." Earnest v. United States, 33 Fed.Cl. 341, 344 (1995); Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802-03 (Fed.Cir. "Challenges to the propriety or lawfulness of government actions sound in tort." Bernaugh v. United States, 38 Fed.Cl. 538, 543 (1997). Second, to state a taking claim, plaintiff must allege that there was "an intent on the part of the defendant to take plaintiffs property or an intention to do an act the natural consequence of which was to take [his] property." Columbia Basin Orchard v. United States, 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955). The property loss "must have been the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." Id. "An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort." Id. at 452, 132 F.Supp. at 710. Thus, "the probability and foreseeability of the damage is a primary determinative element in whether a taking or a tort occurred." Baird v. United States, 5 Cl.Ct. 324, 330 (1984). | To constitute a "taking," property loss must have been the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action; an accidental or negligent impairment of the value of property is not a "taking," but, at most, a tort; thus, the probability and foreseeability of the damage is a primary determinative element in whether a taking or a tort occurred. | Is an accidental or negligent impairment of the value of private property a taking? | Eminent Domain - Memo 264 - GP.docx | ROSS-003298577-ROSS-003298578 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8248 | United States v. Bredimus, 234 F. Supp. 2d 639 | 221+392 | As an initial matter, the court disagrees with Bredimus's characterization of the issue. Congress has the power to regulate the conduct of American citizens beyond the territorial boundaries of the United States. See Steele v. Bulova Watch Co., 344 U.S. 280, 282, 73 S.Ct. 252, 97 L.Ed. 319 (1952); see also United States v. Perez-Herrera, 610 F.2d 289, 289 (Sth Cir.1980); United States v. Columba-Colella, 604 F.2d 356, 358 (Sth Cir.1979); United States v. Mitchell, 553 F.2d 996, 1001 (Sth Cir.1977). Moreover, Congress has the authority to attach extraterritorial effect to its penal enactments. See United States v. Baker, 609 F.2d 134, 136 (Sth Cir.1980). Accordingly, the resolution of the jurisdictional issue in this case depends not on Congress's authority to pass the statute, but instead on whether on whether Congress intended the statute to be applied extraterritorially. See Steele, 344 U.S. at 282-83, 73 S.Ct. 252; see also Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Baker, 609). | Congress has power to regulate conduct of American citizens beyond the territorial boundaries of the United States. | Does Congress have power to regulate conduct of American citizens beyond the territorial boundaries of the United States? | International Law - Memo # 798 - C - RY.docx | ROSS-003286607-ROSS-003286608 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8249 | United States v. Belfast, 611 F.3d 783 | 221+391 | Emmanuel, for his part, is bound by the Torture Act, a valid congressional enactment. The Supreme Court made clear long ago that an absent United States citizen is nonetheless "personally bound to take notice of the laws [of the United States] that are applicable to him and to obey them." Blackmer v. United States, 284 U.S. 421, 438, 52 S.Ct. 252, 76 L.Ed. 375 (1932). Emmanuel was a United States citizen at all relevant times-when the Torture Act was passed and when he committed all of the acts for which he was convicted. As such, he is bound by United States law "made applicable to him in a foreign country." Id. at 436, 52 ".Ct. 252. "For disobedience to its laws through conduct abroad, he was subject topunishment in the courts of the United States." Id. Thus, there was nothing improper about application of the Torture Act to Emmanuel's conduct in Liberia before that country signed theCAT. | An absent United States citizen is personally bound to take notice of the laws of the United States that are applicable to him and to obey them. | Is an absent United States citizen personally bound to take notice of the laws of the United States that are applicable to him and obey them? | International Law- Memo # 842- C - NC.docx | ROSS-003298659-ROSS-003298661 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8250 | Greer v. Buzgheia, 141 Cal. App. 4th 1150 | 307A+3 | Trial judges enjoy " 'broad authority' " over the admission and exclusion of evidence. (Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal.App.3d 272, 288, 245 Cal.Rptr. 873.) The motion in limine is not expressly authorized by statute, but is within the trial court's " 'inherent power to entertain and grant.' [Citation.] 'The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial.' [Citation.] Its purpose is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the 'obviously futile attempt to "unring the bell." ' " (Ibid.) | The purpose of a motion in limine is to avoid the unfairness caused by the presentation of prejudicial or objectionable evidence to the jury, and the obviously futile attempt to "unring the bell." | "Is the purpose of a motion in limine to avoid the obviously futile attempt to ""unring the bell""?" | Pretrial Procedure - Memo # 866 - C - TJ.docx | ROSS-003330708-ROSS-003330709 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8251 | Lambert v. Coonrod, 2012 IL App (4th) 110518 | 30+3209 | "A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused." Swick v. Liautaud, 169 Ill.2d 504, 521, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1246 (1996). To the extent plaintiffs' argument requires the construction of a statute or rule of evidence, it presents a question of statutory interpretation, which we review de novo. McFatridge v. Madigan, 2011 IL App (4th) 100936, 357 Ill.Dec. 212, 218"19, 962 N.E.2d 1113, 1119"20; see also In re Storment, 203 Ill.2d 378, 390, 272 Ill.Dec. 129, 786 N.E.2d 963, 970 (2002) (stating the interpretation of a rule is reviewed de novo ). In construing a statute, the fundamental rule "is to ascertain and give effect to the legislature's intent." Nowak v. City of Country Club Hills, 2011 IL 111838, 354 Ill.Dec. 825, 958 N.E.2d 1021, 1023. "The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning." Snyder v. Heidelberger, 2011 IL 111052, 352 Ill.Dec. 176, 953 N.E.2d 415, 420"21. | A trial judge has discretion in granting a motion in limine and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused. | Is the granting of a motion in limine left to the sound discretion of the trial judge? | 037947.docx | LEGALEASE-00126097-LEGALEASE-00126098 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8252 | Intel Corp. v. Hamidi, 30 Cal. 4th 1342 | 386+7 | Intel relies on language in the eBay decision suggesting that unauthorized use of another's chattel is actionable even without any showing of injury: "Even if, as [defendant] BE argues, its searches use only a small amount of eBay's computer system capacity, BE has nonetheless deprived eBay of the ability to use that portion of its personal property for its own purposes. The law recognizes no such right to use another's personal property." (eBay, supra, 100 F.Supp.2d at p. 1071.) But as the eBay court went on immediately to find that the defendant's conduct, if widely replicated, would likely impair the functioning of the plaintiff's system (id. at pp. 1071"1072), we do not read the quoted remarks as expressing the court's complete view of the issue. In isolation, moreover, they would not be a correct statement of California or general American law on this point. While one may have no right temporarily to use another's personal property, such use is actionable as a trespass only if it "has proximately caused injury." (Thrifty"Tel, supra, 46 Cal.App.4th at p. 1566, 54 Cal.Rptr.2d 468.) "[I]n the absence of any actual damage the action will not lie." (Prosser & Keeton, Torts, supra, " 14, p. 87.) Short of dispossession, personal injury, or physical damage (not present here), intermeddling is actionable only if "the chattel is impaired as to its condition, quality, or value, or ["] ... the possessor is deprived of the use of the chattel for a substantial time." (Rest.2d Torts, " 218, pars. (b), (c).) In particular, an actionable deprivation of use "must be for a time so substantial that it is possible to estimate the loss caused thereby. A mere momentary or theoretical deprivation of use is not sufficient unless there is a dispossession...." (Id., com. i, p. 423.) That Hamidi's messages temporarily used some portion of the Intel computers' processors or storage is, therefore, not enough; Intel must, but does not, demonstrate some measurable loss from the use of its computer system. | Short of dispossession, personal injury, or physical damage, intermeddling is actionable as trespass to chattels only if the chattel is impaired as to its condition, quality, or value, or the possessor is deprived of the use of the chattel for a substantial time. Restatement (Second) of Torts S 218. | Can trespass to chattel be actionable if the chattel is impaired? | 047144.docx | LEGALEASE-00125946-LEGALEASE-00125947 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8253 | Miller v. CitiMortgage, 970 F. Supp. 2d 568 | 386+6 | To recover for trespass to personalty, Plaintiff must prove that Defendant, with or without the use of force, unlawfully injured or interfered with the possession Plaintiff's personal property. See Mountain States Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432, 436, 341 S.W.2d 148, 150 (1960). Plaintiff makes no allegations that Defendant injured or interfered with her possession of personal property. And she makes no real effort to defend this claim in her response. See Dkt. No. 28 at 23. | Under Texas law, to recover for trespass to personalty, plaintiff must prove that defendant, with or without the use of force, unlawfully injured or interfered with the possession plaintiff's personal property. | What must a plaintiff prove to recover for trespass to personalty? | 047435.docx | LEGALEASE-00125890-LEGALEASE-00125891 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8254 | Porter v. Ogden, Newell & Welch, 241 F.3d 1334 | 13+61 | Under Florida law, "generally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990). When a plaintiff bases a malpractice action on errors committed in the course of litigation, and the litigation proceeds to judgment, the redressable harm is not established until final judgment is rendered. See Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). The present case, however, does not involve litigation malpractice, but transactional malpractice. The district court construed Florida law as stating that in a transactional malpractice case, redressable harm is not established until the documents or legal items fail to achieve their designated purpose. | Under Florida law, cause of action for negligence generally does not accrue until (1) existence of redressable harm or injury has been established, and (2) injured party knows or should know either of injury or of negligent act. | When does a cause of action for negligence accrue under law? | 005567.docx | LEGALEASE-00126593-LEGALEASE-00126594 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8255 | W. Am. Ins. Co. v. Sal E. Lobianco & Son Co., 69 Ill. 2d 126 | 241+55(1) | This is a tort action. The amended complaint alleges the duty of the particular defendant to exercise due care in the performance of his work, specific negligence and the fire and damage resulting therefrom, as well as due care on the part of the Snellbakers, whose cause of action plaintiffs, as subrogees, assert. It seems well established that a cause of action based on tort accrues only when all elements are present duty, breach and resulting injury or damage. (McClure v. Hoopeston Gas & Electric Co. (1922), 303 Ill. 89, 96, 135 N.E. 43.) But "(t)here can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose." Schmidt v. Merchants Despatch Transportation Co. (1936), 270 N.Y. 287, 300, 200 N.E. 824, 827. | Cause of action based on tort accrues only when elements of duty, breach, and resulting injury or damage are present. | "Is duty, breach, and resulting injury or damage essential elements for a tort cause of action to accrue?" | 005685.docx | LEGALEASE-00126618-LEGALEASE-00126619 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8256 | City of New York v. State, 138 Misc. 2d 768 | 13+61 | As these cases also establish, a claimant's cause of action does not accrue until it possesses the legal right to be paid and to enforce its right to payment in court. It follows that where, by contract or by statute, the State's obligation to pay is conditioned upon an audit, no suit can be brought by a claimant until the official charged with making the audit has done so and has formally rejected all or some part of the claim. Moreover, where the audit is to be performed by a particular official, here the State Comptroller, neither an opinion of the Attorney-General nor a rejection by some other branch of the State government triggers the running of the statutory period within which to initiate litigation (see Reuter v. Town of Babylon, supra; Terry Contr. v. State of New York, 27 A.D.2d 499, 280 N.Y.S.2d 450, Supra; Tilden Constr. Corp. v. State of New York, 30 A.D.2d 612, 289 N.Y.S.2d 1020, Supra). | Claimant's cause of action does not accrue until it possesses the legal right to be paid and to enforce its right to payment in court. | Does a claimant's cause of action accrue until it possesses the legal right to be paid and to enforce its right to payment in court? | 005755.docx | LEGALEASE-00126611-LEGALEASE-00126612 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 8257 | Jones v. Young, 539 S.W.2d 901 | 13+61 | A right of action accrues, as a general rule, whenever facts come into existence which give rise to a cause of action. Condor Petroleum Co. v. Greene, 164 S.W.2d 713 (Tex.Civ.App.1942, writ ref'd). The facts here clearly show that a cause of action accrued when Young and Jones cashed the certificates, if the certificates belonged to Mrs. Black's estate as alleged. Under these facts, the trial judge had ample grounds for his conclusion that appellants' suit against Young and Jones was barred by the two year statute of limitations. | A right of action accrues, as a general rule, whenever facts come into existence which give rise to the cause of action. | Does a right of action accrue whenever facts come into existence which give rise to the cause of action? | 005757.docx | LEGALEASE-00126601-LEGALEASE-00126602 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8258 | Mem'l Hosp. v. Heckler, 706 F.2d 1130 | 13+65 | Third, the hospitals, relying upon United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), argue that Congress may not "prescribe rules of decision" in matters that are in litigation, particularly where a lower court judgment has been entered against the Government. Although Klein contains language questioning the power of Congress to "prescribe a rule of decision to the Judicial Department of the Government in cases pending before it," 80 U.S. at 146, its holding invalidated legislation which both dictated to the judiciary how to resolve factual questions and interfered with the President's pardon power. In American International Group, Inc. v. Islamic Republic of Iran, 657 F.2d 430, 442 (D.C.Cir.1981), the court stated that Klein should not be read as casting doubt on the principle "that the courts are obligated to apply law (otherwise valid) as they find it at the time of final judgment, including, when a case is on review, the time of appellate judgment." Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation. See, e.g., 149 Madison Ave. Corp. v. Asselta, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947) modifying 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), (Supreme Court modified its own judgment to allow a district court to consider a defense created by Congress after the Supreme Court's judgment, but during the time for rehearing); Electronic Data Systems v. Social Security Organization, 651 F.2d 1007, 1011 (5th Cir.1981); De Rodulfa v. United States, 461 F.2d 1240, 1250 (D.C.Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). Although there may be constitutional problems with legislation purporting to disturb final judgments that have conferred vested rights, the district court judgment in this case, still pending on appeal, was not final. See De Rodulfa v. United States, 461 F.2d at 1252-53. Congress specifically provided in section 106 that Hill-Burton costs | Until appellate rights are exhausted, even an otherwise valid judgment may be negated by supervening legislation. | "Until appellate rights are exhausted, may even an otherwise valid judgment be negated by supervening legislation?" | 005952.docx | LEGALEASE-00126671-LEGALEASE-00126673 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 8259 | James v. Adams, 16 W. Va. 245 | 13+61 | The plaintiffs in this case could not on the evidence recover on the common counts, as after the refusal of the defendant to accept the goods they re-sold them; and if they had not, they could not have recovered on the common counts till the expiration of the credit on which the goods were sold, if they could then. See Hogedom v. Leigh, 6 Taun. (1 E. C. L.) 344; Laman v. Duvall, 9 Ad. & E. (N. S.) 1030; Aubal v. Levy, 10 Bing. 376. A special action based on the refusal of the defendant to accept and pay for the goods is the only proper action in such a case, as is presented by the evidence in this case. See Girard v. Taggart, 5 Serg & R. 32; Boyd &c. v. Lett, 1 Man. Gr. & S. (50 E. C. L. R.) 222. | An action for damages for failure to accept and pay for property agreed to be purchased by a special contract may be brought when defendant refuses to accept the goods and repudiates the contract, before the time has elapsed in which, under the special contract, he was to pay the balance due thereunder. | Can an action for damages for failure to accept and pay for property agreed to be purchased by a special contract be brought when defendant refuses to accept the goods and repudiates the contract? | 006368.docx | LEGALEASE-00126430-LEGALEASE-00126431 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 8260 | Ellis v. Henderson, 204 F.2d 173 | 92+4001 | A fortiori, what is termed a "conclusive presumption", in most instances is actually a rule of substantive law. U.S. v. Provident Trust Co., 291 U.S. 272, 283, 54 S.Ct. 389, 78 L.Ed. 793; U.S. v. Jones, 9 Cir., 176 F.2d 278, 288. In re Jones' Estate, 110 Vt. 438, 8 A.2d 631, 128 A.L.R. 704, 709; 9 Wigmore on Evidence (3rd ed. 1940) Sec. 2492; 20 Am.Jur., Evidence, 160. A "conclusive presumption" as a rule of evidence without logical basis might be constitutionally invalid, but if the rule of substantive law would be constitutional, the form of words used in stating the rule is immaterial. This served the vital aspect of the purpose of the Negotiable Instruments Act as held in City of New Port Richey v. Fidelity & Deposit Co. of Maryland, 5 Cir., 105 F.2d 348, 351, 123 A.L.R. 1352; 20 Am.Jur.Evidence, 10. | Although "conclusive presumption" as rule of evidence without logical basis might be constitutionally invalid, if the rule of substantive law so created would be constitutional, the form of words used in stating the rule is immaterial. | What is a conclusive presumption in the rule of evidence under the Negotiable Instruments Act? | 010986.docx | LEGALEASE-00126745-LEGALEASE-00126746 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8261 | Quirk v. Town of New Boston, 140 N.H. 124 | 148+2.1 | In the present case, we find no compelling reason to view the perimeter as a discrete segment of the campground. That the plaintiff has never treated the perimeter of his campground as distinct from the interior supports this finding. "At least where an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking, because the aggregate must be viewed in its entirety." Andrus v. Allard, 444 U.S. 51, 65-66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979); see Penn Central Transp. Co., 438 U.S. at 130-31, 98 S.Ct. at 2662 | Where landowner possesses full bundle of property rights, destruction of one strand of bundle is not taking, as aggregate must be viewed in its entirety. Const. Pt. 1, Art. 12. | "Where an owner possesses a full bundle of property rights, is the destruction of one strand of the bundle a taking?" | 017637.docx | LEGALEASE-00126696-LEGALEASE-00126697 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8262 | Application of Schroetlin, 210 Neb. 508 | 317A+194 | The issue of public convenience and necessity is ordinarily one of fact and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission. If there is evidence to sustain the finding of the commission, this court cannot intervene. Ace Gas, Inc. v. Peake, Inc., 184 Neb. 448, 168 N.W.2d 373 (1969). In the case at bar there is evidence in the record to support the finding of the commission. | The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly within the determination of the Public Service Commission and, if there is evidence to sustain the finding of the Commission, the Supreme Court cannot intervene. | "Is the determination of what is consistent with the public interest, or public convenience and necessity peculiarly for the Public Service Commission?" | Public Utilities - Memo 207 - AM.docx | ROSS-003300221-ROSS-003300222 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 8263 | Wilcon v. Travelers Indem. Co., 654 F.2d 976 | 366+7(1) | When Travelers completed the Waveland project upon the default of the Combined Corporation and pursuant to its bond obligations, Travelers became subrogated to all of the rights and remedies of the Combined Corporation against defaulting subcontractors. See, e. g., American National Insurance Co. v. United States Fidelity & Guaranty Co., 215 So.2d 245, 250 (Miss.1968). Wilcon does not dispute this legal conclusion, but argues instead that the Combined Corporation had no rights against Wilcon. If that is so, Travelers cannot benefit from subrogation, for that doctrine affords Travelers no greater rights than those of the Combined Corporation, whose legal position it is taking. See, e. g., Anderson v. Anderson, 100 So.2d 852 (Miss. 1958). | When surety completed construction project upon default of combined corporation and pursuant to its bond obligations, the surety became subrogated to all rights and remedies of the combined corporation against defaulting subcontractors, and the evidence presented was more than sufficient to support a finding that the combined corporation did not "properly and in good faith" release plaintiff, as a subcontractor, from its obligations. | Does a surety become subrogated to all rights and remedies of the combined corporation against defaulting subcontractors? | Subrogation - Memo # 648 - C - SA.docx | ROSS-003287066-ROSS-003287067 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 8264 | In re iPhone Application Litig., 844 F. Supp. 2d 1040 | 386+7 | D. Plaintiffs, on behalf of both the Geolocation and iDevice Classes, assert a claim for trespass against all Defendants. Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1350"51, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003). In cases of interference with possession of personal property not amounting to conversion, "the owner has a cause of action for trespass or case [sic], and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use." Id. at 1351, 1 Cal.Rptr.3d 32, 71 P.3d 296 (internal quotations and citations omitted). "[W]hile a harmless use or touching of personal property may be a technical trespass (see Rest.2d Torts, " 217), an interference (not amounting to dispossession) is not actionable, under modern California and broader American law, without a showing of harm." Id. Even where injunctive relief is sought, "the plaintiff must ordinarily show that the defendant's wrongful acts threaten to cause irreparable injuries, ones that cannot be adequately compensated in damages." Id. at 1352, 1 Cal.Rptr.3d 32, 71 P.3d 296 (citing 5 Witkin, Cal. Procedure (4th ed.1997) Pleading, " 782, p. 239.). | While a harmless use or touching of personal property may be a technical trespass, an interference not amounting to dispossession is not actionable, under California law, without a showing of harm; even where injunctive relief is sought, the plaintiff must ordinarily show that the defendant's wrongful acts threaten to cause irreparable injuries, ones that cannot be adequately compensated in damages. | "Can an interference, not amounting to dispossession, be actionable as trespass to chattels?" | 047277.docx | LEGALEASE-00126422-LEGALEASE-00126423 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8265 | Neely v. Johnson-Barksdale Co., 194 Miss. 529 | 366+41(6) | The rules as to the admissibility of evidence applicable in civil actions generally apply to proceedings to enforce subrogation, 60 C.J. p. 836; and while the matters above mentioned as regards oral proof might become material in the application of the statute of limitations and as to whether the three-year statute would apply against the subrogee, they do not in this case bear upon the matter of the acquisition of his rights as subrogee. | The rules of admissibility of evidence applicable in civil actions generally apply to proceedings to enforce subrogation. | Do the rules of admissibility of evidence applicable in civil actions generally apply to proceedings to enforce subrogation? | Subrogation - Memo # 1100 - C - VP.docx | ROSS-003286293-ROSS-003286295 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8266 | Turner v. Hunt, 131 Tex. 492 | 13+63 | The question is not strictly one of delay in instituting suit after the accrual of the cause of action, which is usually determinable by the period of limitation fixed by statute. Here the delay is in asserting the right by making selection of the particular acre. Turner waited nearly nine years and a half to select the one acre and gave no explanation of the delay. In Dull v. Blum, 68 Tex. 299, 301, 4 S.W. 489, it was held that a similar right was lost by an unexplained delay of twenty years in making choice of the land. It is our opinion that Turner's delay,alittle less than ten years, though long and unexplained, cannot be held sufficient to defeat his right because the facts as to the effects of the delay have not been developed. Except in case of extreme delay like that in Dull v. Blum, supra, delay, which works no injury or no disadvantage to another, is not such laches as will bar a right. Coleman v. Zapp, 105 Tex. 491, 496, 151 S.W. 1040; Ross' Estate v. Abrams, Tex.Civ.App., 239 S.W. 705, 709; Abrams v. Ross' Estate, Tex.Com.App., 250 1019; Tomahagen v. Sarber, Tex.Civ.App., 29 S.W.2d 438; Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502; 27 Tex.Jur. p. 29, " 12. It is said in Terry v. Prairie Oil & Gas Company, 5 Cir., 83 F.2d 843, that the plea of laches is not controlled by mere passage of time and always presents a question of fact. | Except in case of extreme delay, a delay which works no injury or no disadvantage to another is not such "laches" as will bar a right. | "Except in case of extreme delay, is a delay which works no injury or no disadvantage to another not such laches as will bar a right?" | Action - Memo # 647 - C KA.docx | ROSS-003325282-ROSS-003325283 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8267 | Castonguay v. Plourde, 46 Conn. App. 251 | 212+1009 | The defendants claim that the injury to them resulting from the injunction is greatly disproportionate to the injury of which the plaintiffs complain. The granting of an injunction rests within the sound discretion of the trial court and "[i]n exercising its discretion, the court ... may consider and balance the injury complained of with that which will result from interference by injunction. Moore v. Serafin, 163 Conn. 1, 6, 301 A.2d 238 (1972); see also Berin v. Olson, supra, 183 Conn. at 343, 439 A.2d 357. "The relief granted must be compatible with the equities of the case." Walton v. New Hartford, 223 Conn. 155, 167, 612 A.2d 1153 (1992); see Moore v. Serafin, supra, at 5, 301 A.2d 238; Crabtree v. Coyle, 19 Conn.App. 208, 211, 561 A.2d 455 (1989). The action of the trial court will not be disturbed unless it constitutes an abuse of discretion. See Anderson v. Latimer Point Management Corp., supra, 208 Conn. at 262, 545 A.2d 525; Crabtree v. Coyle, supra, at 211, 561 A.2d 455. | Granting of injunction rests within sound discretion of trial court and, in exercising its discretion, court may consider and balance injury complained of with that which will result from interference by injunction. | Is the granting of injunction within the sound discretion of the court? | 005875.docx | LEGALEASE-00127450-LEGALEASE-00127452 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8268 | Bourbeau v. Jonathan Woodner Co., 549 F. Supp. 2d 78 | 13+65 | Woodner asserts that all of ERC's claims must be dismissed, but offers no explanation for this assertion. See Def.'s Reply at 2 n. 2. Because Woodner cites"among other cases"Tatum v. Townsend, 61 A.2d 478 (D.C.1948). the Court assumes that Woodner has in mind the proposition that a "[p]laintiff's right to any recovery depend[s] upon its right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect, which cannot be cured by the accrual of a cause pending suit." Tatum v. Townsend, 61 A.2d at 480 (internal quotation marks and citation omitted). The proposition is correct but inapplicable; the Court is permitting ERC to pursue claims based on events that (allegedly) occurred after ERC was reinstated and before it filed suit. | Plaintiff's right to any recovery depends upon its right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect, which cannot be cured by the accrual of a cause pending suit. | "If plaintiff has no valid cause of action on facts existing at the time of filing suit, can a defect be remedied by accrual of cause while suit is pending?" | 005913.docx | LEGALEASE-00127704-LEGALEASE-00127705 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 8269 | Quaker Oats Co. v. City of New York, 295 N.Y. 527 | 30+4619 | Turning to the case at hand, it is our conclusion that the local provision is inconsistent with the requirements of the Federal law, for, as we view it, the city forbids to interstate commerce what the government has authorized. In reaching that decision, we consider the Federal law, not as it read at the trial, but as it reads today in its amended form (Civil Practice Act, s 344-a subd. A, par. 5; see Graybar Electric Co. v. New Amsterdam Casualty Co., 292 N.Y. 246, 250, 54 N.E.2d 811, 812), since rights and other legal relations are to be determined as of the time they are declared. As amended, the pertinent portion of the regulation provides (Code Fed.Reg.Supp.1945, tit. 9, s 268.12 subd. (c)): "(c) Dog food or other animal food prepared in whole or in part, from materials derived from cattle, sheep, swine, goats, or horses, shall be distinguished from articles of human food, so as to avoid the distribution of such animal food as human food. To accomplish this, labeling of hermetically sealed, conventional retail size containers as, for example, "dog food" will be considered sufficient. If not in such containers, the product must not only be properly identified, but it must be of such character or so treated (denatured or decharacterized) as to be readily distinguishable from an article of human food. Dog food shall not be represented as being a human food.' (Emphasis supplied.) | In determining whether New York city ordinance requiring the "decharacterization" of horseflesh in the manner and with materials satisfactory to the Department of Health is inconsistent with federal regulation in that city forbids to interstate commerce that which the federal government had authorized, the federal regulation was considered as it read at time of appeal and not as read at trial, since rights and other legal relations are to be determined as of the time they are declared. Civil Practice Act, s 344-a, subd. A, par. 5; Code Regulation Supp.1945, tit. 9, s 268.12, subd. (c); New York City Charter 1936, s 558, subd. d; Administrative Code, s 564-6.0. | Are rights to be determined as of the time they are declared? | Action - Memo # 686 - C SHS.docx | ROSS-003284845-ROSS-003284846 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 8270 | Werber v. Atkinson, 84 A.2d 111 | 13+65 | A plaintiff's right to recover depends upon his right at the inception of the suit, and the non-existence of a cause of action when the siut was begun is a fatal defect which can not be cured by the accrual of a cause of action pending suit. If a plaintiff at the time he files his complaint has no cause of action, he can not by amendment or supplemental complaint introduce a cause of action that accrues thereafter even though it arises out of the same transaction that is the subject of the original complaint. A suit which is prematurely brought can not be maintained, even if the cause of action has accrued by the time the cause is called for trial, nor can an amended petition in such a case set up a cause of action which has not accrued at the time the original petition was filed. A complaint in a suit at law can not properly be amended to embrace a cause of action arising since the suit was begun. An amendment dates back to the time of the filing of the original complaint. In cases thus prematurely brought, the proper procedure is to dismiss the action without prejudice to the bringing of another action when the cause of action actually accrues. | A plaintiff's right to recover depends upon his right at inception of suit, and nonexistence of a cause of action when suit was begun is a fatal defect which cannot be cured by accrual of a cause of action pending suit. | Does a plaintiff's right to recover depend upon his right at inception of the suit? | 005964.docx | LEGALEASE-00127959-LEGALEASE-00127960 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8271 | Water Res. Comm'n v. Connecticut Sand & Stone Corp., 170 Conn. 27 | 13+65 | It is true that in the usual case where injunctive relief is sought a court will grant such relief only in light of the situation as the court finds it to exist at the time of trial. Jones v. Foote, 165 Conn. 516, 521, 338 A.2d 467. It is also true, however, that in the usual case it is the court which determines the existence of facts which justify the extraordinary remedy of injunctive relief. That is not the situation in the present cases. | In usual case in which injunctive relief is sought it is court which determines existence of facts which justify extraordinary remedy of injunctive relief, and thus court will usually grant such relief only in light of situation as court finds it to exist at time of trial. | Will a court grant relief only in light of the situation as the court finds it to exist at the time of trial? | 006049.docx | LEGALEASE-00127476-LEGALEASE-00127477 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 8272 | Erwin v. Lee Lumber Co., 163 La. 191 | 13+63 | On the subject of laches and stale demands, we quote the following:"Where a suitor, before proceeding, permits such a lapse of time that the evidence has become obscured or lost, relief will be denied because of the difficulty of doing justice. A specific application of the general rule just stated is in the refusal of the courts to afford relief to one who has lain idly by until the important witnesses to the transaction involved have died. Sometimes the rule is stated with less positiveness that equity looks with disfavor on such suits, or that such a demand must be established with more than reasonable certainty." 16 Cyc.pp. 163, 164.For these reasons, defendant's plea of prescription of one year should be sustained. It is therefore so ordered, and it is further ordered that the judgment appealed from be and it is hereby avoided, and plaintiff's suit is dismissed at his cost. | Relief will be denied where suitor, before proceedings, permits lapse of time, so that evidence becomes obscure or lost. | "Will relief be denied where suitor, before proceedings, permits lapse of time, so that evidence becomes obscure or lost?" | Action - Memo # 790 - C SB.docx | ROSS-003289915-ROSS-003289916 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8273 | Belden v. Sherburne, 27 La. Ann. 305 | 13+63 | Where a statute authorizes an action and prescribes the delay within which it must be instituted, suit must be filed within this delay or the action, if excepted to, will be dismissed. The act does not fix the period within ten days after the State Returning Board shall have finished the can vass; it says the suit must be brought "within ten days after the election." Here the suit was not filed until nearly sixty days after the election. | Where a statute authorizes an action, and prescribes the delay within which it must be instituted, suit must be filed within that delay, or the action, if excepted to, will be dismissed. | "Where a statute authorizes an action, and prescribes the delay within which it must be instituted, must the suit be filed within that delay?" | Action - Memo # 866 - C KBM.docx | ROSS-003285838 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8274 | Riddlesbarger v. Hartford Ins. Co., 74 U.S. 386 | 13+63 | The objection to the condition is founded upon the notion that the limitation it prescribes contravenes the policy of the statute of limitations. This notion arises from a misconception of the nature and object of statutes of this character. They do not confer any right of action. They are enacted to restrict the period within which the right, otherwise unlimited, might be asserted. They are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. The policy of these statutes is to encourage promptitude in the prosecution of remedies. They prescribe what is supposed to be a reasonable period for this purpose, but there is nothing in their language or object which inhibits parties from stipulating for a shorter period within which to assert their respective claims. It is clearly for the interest of insurance companies that the extent of losses sustained by them should be speedily ascertained, and it is equally for the interest of the assured that the loss should be speedily adjusted and paid. The conditions in policies requiring notice of the loss to be given, and proofs of the amount to be furnished the insurers within certain prescribed periods, must be strictly complied with to enable the assured to recover. And it is not perceived that the condition under consideration stands upon any different footing. The contract of insurance is a voluntary one, and the insurers have a right to designate the terms upon which they will | The lapse of years without any attempt to enforce a demand creates a presumption against its original validity or that it has ceased to subsist and presumption is made by statutes of limitation a positive bar. | Does the lapse of years without any attempt to enforce a demand create a presumption against its original validity? | Action - Memo # 867 - C KBM.docx | ROSS-003284920-ROSS-003284922 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 8275 | Lyerly v. Yeadon, 199 S.C. 363 | 13+63 | We find the following statement on this question in the case of Thomas v. MacNeill, 138 S.C. 86, 135 S.E. 643, 645: "While lapse of time is an important element, the better view-though there are cases apparently holding the contrary-is that mere delay in enforcing a demand, in the absence of a bar by statutory limitation or of other circumstances tending to render the demand inequitable, will not bar relief. A long lapse of time, however, especially when taken with other circumstances, may create a presumption that a valid right never existed; or that if it existed it has been satisfied, or lost by abandonment, waiver, acquiescence, or equitable estoppel." | A long lapse of time before commencing action considered with other circumstances may create a presumption that a valid right never existed, or that if it existed it has been satisfied or lost by abandonment, waiver, acquiescence or equitable estoppel. | Does the lapse of years without any attempt to enforce a demand create a presumption against its original validity? | 006230.docx | LEGALEASE-00127333-LEGALEASE-00127334 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 8276 | Edward Balf Co. v. Town of E. Granby, 152 Conn. 319 | 13+65 | It is the plaintiff's claim that since the ordinance in effect when this action was commenced was invalid, no subsequent readoption, however valid, could affect this pending action. It is true that the legislature is presumed to intend that statutes affecting substantive rights do not affect pending actions unless a contrary intent appears. Reese v. Reese, 136 Conn. 191, 194, 70 A.2d 123. In general, that rule also applies to municipal ordinances. See MacKenzie v. Town Planning & Zoning Commission, 149 Conn. 678, 683, 183 A.2d 619. On the other hand, in the case of actions praying for a declaratory judgment or injunctive relief, since the remedy sought is prospective, the right to such relief is determined by the situation which has developed at the time of trial and not by that existing at the time the action was begun. Holt v. Wissinger, 145 Conn. 106, 115, 139 A.2d 353; Town of Newington v. Mazzoccoli, 133 Conn. 146, 150, 48 A.2d 729. | Right to relief in action for declaratory judgment or injunction, since remedy sought is prospective, is determined by situation which has developed at time of trial, not by that existing at time action was begun. | Does the court grant equitable relief only on the situation as it exists at the time of trial? | 006298.docx | LEGALEASE-00127931-LEGALEASE-00127932 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8277 | Bowles v. Senderowitz, 65 F. Supp. 548 | 402+1200 | Plaintiff's right to recover in this action must be predicated upon facts in existence at the time the complaint was filed. County Court of Marion County, West Virginia, v. United States, 53 Ct.Cl. 120. Since the rights of the parties must be determined on facts existing at the inception of the suit, American Agricultural Chemical Co. v. Moore, D.C., 17 F.2d 196, the court cannot adjudicate, in this action, rights which accrued, or which are based on facts which occurred subsequent to the commencement of the action. Kontovich v. United States, 6 Cir., 99 F.2d 661. The non-existence of a cause of action when suit is commenced is fatal, and the defect cannot be cured by the happening of events thereafter which create or mature a good cause of action. American Bonding & Trust Co. v. Gibson County, supra; County Court of Marion County, West Virginia, v. United States, supra. Where the action has thus been prematurely brought, the suit should be dismissed. City of Trinidad v. Hokasona, 8 Cir., 178 F. 438. | Price Administrator's right to recover treble damages from manufacturers, under Emergency Price Control Act, for selling shorts at prices allegedly in excess of maximum prices determined under price regulations, was required to be predicated on facts in existence at time complaint was filed, and District Court could not adjudicate rights which accrued, or which were based on facts that occurred subsequent to commencement of action. Emergency Price Control Act of 1942, S 205(e) as amended by Stabilization Extension Act 1944, S 108(b), 50 U.S.C.A.Appendix S 925(e). | Can a plaintiff recover without the existence of the facts which constituted his cause of action at the time of the lawsuit? | 006300.docx | LEGALEASE-00127907-LEGALEASE-00127908 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8278 | Lucas v. Gund, 450 F. Supp. 2d 1125 | 25T+134(6) | Agreements which incorporate the rules of a third-party organization without providing the employee with those rules at the time of signing can be procedurally unconscionable if the employee is not provided a copy of the rules upon signing the agreement. See, e.g., Fitz, 13 Cal.Rptr.3d at 101; Harper v. Ultimo, 113 Cal.App.4th 1402, 7 Cal.Rptr.3d 418, 422"23 (Ct.App.2003). However, in those cases, the decisions seem to be based on the additional fact that the rules were not fair to the weaker party. For example, in Harper, the arbitration agreement between a merchant and a customer incorporated the rules of the Better Business Bureau. Harper, 7 Cal.Rptr.3d at 422. This was unfair because by not being given a copy of the BBB rules, the customer was not made aware that those rules severely limited his available remedies. Id. In Fitz, as in this case, the rules at issue were the AAA rules. Fitz, 13 Cal.Rptr.3d at 101. The employee in Fitz was also not given a copy of those rules upon signing the arbitration agreement. Id. However, in Fitz, the problem was not just that the employee was not given a copy of the AAA rules, but that the AAA rules conflicted with unfair provisions in the arbitration agreement. Id. The provisions included in the Fitz arbitration agreement unreasonably limited discovery, and the court pointed out that the employer "should not be relieved of the effect of an unlawful provision it inserted in the [arbitration agreement] due to the serendipity that the AAA rules provide otherwise." Id. | Arbitration agreements signed by employees, which incorporate the rules of a third-party organization, can be procedurally unconscionable under California law if the employee is not provided a copy of the rules upon signing the agreement. | Are agreements which incorporate the rules of a third-party organization without providing employees with those rules at the time of signing procedurally unconscionable? | 007209.docx | LEGALEASE-00127388-LEGALEASE-00127389 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 8279 | Stark v. Indep. Sch. Dist. No. 640, 938 F. Supp. 544 | 1.41E+31 | In this case, the Court has been asked to determine whether the opening and operation of the Vesta school violates the Establishment Clause. In making this determination, a court must recognize that the states and local school boards are afforded comprehensive powers and substantial discretion in the operation of public schools. Edwards v. Aguillard, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). See also Pratt v. Independent School District No. 831, 670 F.2d 771, 775 (8th Cir.1982). A court must also recognize that it is within the school board's discretion to determine the most appropriate curriculum that is most suitable for the students, as well as the teaching methods and educational tools to be used. Pratt, 670 F.2d at 775. However, in exercising its broad discretion, the School District is nonetheless bound by the proscriptions of the Establishment Clause. When circumstances arise that directly and sharply implicate constitutional values, a court must intervene. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). | When circumstances in public schools arise that directly and sharply implicate constitutional values, court must intervene. | "When circumstances arise in public schools that directly and sharply implicate constitutional values, should the court intervene?" | Education - Memo # 51 - C - SU.docx | ROSS-003299986-ROSS-003299988 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8280 | In re V. Pangori & Sons, 53 B.R. 711 | 309+185 | Likewise, we hold that the surety's rights of equitable subrogation and reimbursement do not come within the purview of the Uniform Commercial Code. Rights of subrogation and reimbursement, "although growing out of a contractual setting and ofttimes articulated by a contract, do not depend for their existence on a grant in the contract, but are created by law to avoid injustice. Therefore, subrogation rights are not 'security interests' within the meaning of Article 9." Canter v. Schlager, supra, 267 N.E.2d 492, 8 U.C.C.Rep. 932, 935; American Oil Co. v. L.A. Davidson, Inc., 95 Mich.App. 358, 290 N.W.2d 144 (1980); see also Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49, 2 U.C.C.Rep. 348 (1965). | Surety's rights of equitable subrogation and reimbursement did not come within purview of Uniform Commercial Code. | Does a surety's rights of equitable subrogation and reimbursement come within the purview of the Uniform Commercial Code (UCC)? | Subrogation - Memo # 1211 - C - AP.docx | ROSS-003300486-ROSS-003300487 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8281 | Jones v. Aetna Cas. & Sur. Co., 26 Cal. App. 4th 1717 | 366+41(6) | " 'A subrogation as applied to an insurer is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid. [Citation.]' " (Parsons Manufacturing Corp. v. Superior Court, supra, 156 Cal.App.3d at p. 1158, 203 Cal.Rptr. 419, citing Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 864, 131 Cal.Rptr. 211.) An insurer's right to subrogation is governed by equitable principles. (Parsons Manufacturing Corp. v. Superior Court, supra, 156 Cal.App.3d at p. 1158, 203 Cal.Rptr. 419, citing Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 865, 131 Cal.Rptr. 211.) Under the doctrine of superior equities, followed in California, the burden is upon the surety to establish its superior equity in seeking recovery against a third party. (Rokeby-Johnson v. Aquatronics International, Inc., supra, 159 Cal.App.3d at p. 1084, 206 Cal.Rptr. 232.) For example, in the Liberty Mutual opinion, the Court of Appeal, in holding the insurer had no right of subrogation, considered the commercial expectation of the sublessees in paying the insurance premium and the windfall to the insurer in the event subrogation was permitted. (Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 865, 131 Cal.Rptr. 211.) The Liberty Mutual court denied subrogation against the sublessee as the sublessee was an implied-in-law coinsured under the insurance policy. (Ibid.) | Under doctrine of superior equities, pertaining to right of subrogation, burden is upon surety to establish its superior equity in seeking recovery against third party. | Is burden upon the surety to establish its superior equity in seeking recovery against a third party under the doctrine of superior equities? | Subrogation - Memo # 1234 - C - CK.docx | ROSS-003326815-ROSS-003326816 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8282 | Mountain States Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432 | 386+1 | 'The gist of trespass to personalty is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force.' 'Destruction of, or injury to, personal property, regardless of negligence, may be a trespass.' 87 C.J.S. Trespass ss 8, 9, p. 962. See, Carter v. Haynes, Tex.Civ.App. 1925, 269 S.W. 216, loc. cit. 219. | The gist of "trespass" to personalty is an injury to, or interference with, possession, unlawfully, with or without exercise of physical force, and destruction of, or injury to, personal property, regardless of negligence, may be a "trespass". | Can trespass to personalty be committed without the exercise of physical force? | Trespass - Memo 219 - RK.docx | ROSS-003313351-ROSS-003313352 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8283 | Rodgers v. United States, 158 F. Supp. 670 | 13+65 | Thus the question of injunction is determined by facts existing at the time of trial and not at the time suit was instituted, Andersen v. Shipowner's Ass'n of the Pacific Coast, 9 Cir., 1929, 31 F.2d 539, 543. For example, a law passed after a decree by a lower court "must be given effect in deciding the appeal, since the case involves only relief by injunction, and this operates wholly in futuro. Duplex Printing Press Co. v. Deering, 254 U.S. 443, 464, 41 S.Ct. 172, 65 L.Ed. 349." Texas Co. v. Brown, 1921, 258 U.S. 466, 474, 42 S.Ct. 375, 378, 66 L.Ed. 721. And if an adequate remedy at law should become available after the bill for injunction since equity will not exercise jurisdiction since an action for injunctive relief speaks as of the date of its decree, Tilbrook v. Forrestal, D.C.D.C.1946, 65 F.Supp. 1, 4. | If an adequate remedy at law becomes available after bill for injunction is filed, equity will not exercise jurisdiction since an action for injunctive relief speaks as of the date of alleged decree. | Does an action for injunctive relief speak as of the date of its decree? | 005972.docx | LEGALEASE-00128161-LEGALEASE-00128162 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8284 | Woodruff v. City of Chicago, 326 Ill. App. 577 | 302+274 | The facts with respect to Jefferson street are substantially the same, except that in 1942 the street as widened was fully paved and improved with money allocated from the motor fuel tax fund. Plaintiff insists that his action being one at law, a defense arising after the institution of the suit is unavailable. In the case of Boss v. District of Columbia, supra, where right to recover assessments was denied, defendant was permitted to show the completion of the improvement after the institution of the suit. Plaintiff's action is for money had and received, which is of an equitable nature. In equity matters arising subsequently to the institution of the suit are available under supplemental pleadings to plaintiff and defendant. In People ex rel. Horejs v. Stedronsky, 321 Ill.App. 310, 52 N.E.2d 823, a mandamus proceeding to compel payment of salaries of firemen and policemen of the Town of Cicero, where judgment was entered directing payment of salaries accruing after institution of the suit, we said: 'By section 39 of the Civil Practice Act (Ill.Rev.Stat.1941, chap. 110, par. 163) supplemental pleadings, setting up matters which have arisen after the original pleadings have been filed, may be filed within a reasonable time by either party by leave of court and upon terms. This provision makes the general rules of chancery as to supplemental bills applicable to actions at law (McCaskill, Illinois Civil Practice Act Annotated, section 39), and therefore upon proper pleading permits judgments to be entered upon facts existing at the time of hearing of actions at law instead of at the time of the commencement of the suit, as under the former practice.' | In equity, matters arising subsequently to the institution of the suit are available under supplemental pleadings to plaintiff and defendant. S.H.A. ch. 110, § 39. | "In equity, are matters arising subsequent to the institution of the suit available under supplemental pleadings to plaintiff and defendant?" | Action - Memo # 802 - C RY.docx | ROSS-003284899-ROSS-003284900 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 8285 | Int'l Photo Recording Machines v. Microstat Corp., 269 A.D. 485 | 13+65 | The trial court assumed to determine the purely legal questions involved on the theory that the protection of the right to a jury trial was unnecessary in this case because there were no fact issues for a jury to decide. We are unable to concur in this view. Plaintiff in its complaint merely asked for reformation of the contract and for such moneys as would be due and unpaid if the reformation were granted. It did not plead a cause of action for damages at law under the contract as it was written. Had it done so, defendant would then have been afforded an opportunity of making answer to such a complaint and thereafter contesting the issues thus raised. If, as asserted by defendant, the contract is ambiguous, then evidence of the intent of the contracting parties must be heard and that issue of fact determined by a jury. St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 35, 36, 138 N.E. 495"497. It is also argued that there may be a question as to due performance of the contract by plaintiff and that there may be other defenses or counterclaims available to defendant which were not presented by the pleadings or litigated upon the trial. It is also to be noted that in an action at law, plaintiff may recover only for claims existing at the commencement of the action (Boissevain v. Boissevain, 252 N.Y. 178, 181, 169 N.E. 130, 131), whereas in equity the court renders judgment as of the date of trial. After failure of the equitable cause of action, judgment here was rendered upon a legal theory for an amount which could not have been recovered if the action had been one at law. Defendant did not have its day in court upon the precise question which the judgment appealed from has decided. "Parties go to court to try the issues made by the pleadings, and courts have no right impromptu to make new issues for them, on the trial, to their surprise or prejudice, or found judgments on grounds not put in issue, and distinctly and fairly | In an action at law, plaintiff may recover only for claims existing at the commencement of the action whereas in equity the court renders judgment as of the date of trial. | "In an action at law, can a plaintiff recover only for claims existing at the commencement of the action?" | 006117.docx | LEGALEASE-00128253-LEGALEASE-00128254 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8286 | Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 | 25T+137 | There is no merit to respondent's contention that because it falls within the class for whose benefit the statutes specified in the counter claims were passed, but the arbitration clause at issue does not mention these statutes or statutes in general, the clause cannot be properly read to contemplate arbitration of these statutory claims. There is no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims. Nor is there any reason to depart from the federal policy favoring arbitration where a party bound by an arbitration agreement raises claims founded on statutory rights. Pp. 3353"3355. | There is no warrant in the Arbitration Act (9 U.S.C.A. § 1 et seq.) for implying in every contract within its ken a presumption against arbitration of statutory claims. | Is there a warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims? | 007266.docx | LEGALEASE-00128667-LEGALEASE-00128669 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8287 | Tabb Lakes v. United States, 26 Cl. Ct. 1334 | 148+277 | Defendant argues, as an initial matter, that because plaintiff failed to remain within the framework of the permitting process, plaintiff's claim is not ripe, and should be dismissed. Although it is indisputable that in order to state a claim for a permanent regulatory taking, plaintiff must have applied for and been denied a permit, Riverside Bayview Homes, 474 U.S. at 127, 106 S.Ct. at 459, "denial of a permit may not be essential to a temporary taking claim...." Dufau v. United States, 22 Cl.Ct. 156, 163 (1990), aff'd, 940 F.2d 677 (Fed.Cir.1991) (Table). | Although in order to state a claim for permanent regulatory taking, plaintiff must have applied for, and been denied, a permit, denial of a permit may not be essential to temporary taking claim. U.S.C.A. Const.Amend. 5. | Is denial of a permit essential to a temporary taking claim? | 017717.docx | LEGALEASE-00128127-LEGALEASE-00128128 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8288 | Juhnke v. Evangelical Lutheran Good Samaritan Soc., 6 Kan. App. 2d 744 | 307A+742.1 | Plaintiff contends that K.S.A. 60-216 requires the trial court to hold a pretrial conference upon request of either party. That statute reads:"In any action, the court shall on the request of either party, or may in its discretion without such request, direct the attorneys for the parties to appear before it for a conference ...."Plaintiff contends that a second pretrial conference was required since the first trial judge obligated himself to decide the issue of the proper standard of care for a nursing home prior to trial. A review of the record reveals that the pretrial order does not specifically indicate that the trial court would make a decision on this issue prior to the commencement of the trial. Under the facts of this case, it is our determination that the failure of the trial court to hold a second pretrial conference and to resolve the issue of proper standard of care was not an abuse of discretion. The primary purpose of K.S.A. 60-216 is to establish the legal issues that will be tried during the course of the trial and to resolve as many questions as possible at that time. | Primary purpose of pretrial conference is to establish legal issues which will be tried during course of trial and resolve as many questions as possible at that time; as practical matter, many issues of law should not be decided until such time as some evidence has been presented which would give trial court basis upon which to rule. Rules Civ.Proc., K.S.A. 60-216. | What is the primary purpose of pretrial conference and how is it established during the course of trial? | 026524.docx | LEGALEASE-00128571-LEGALEASE-00128572 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8289 | Water & Wastewater Bd. of City of Madison v. Anderson, 850 So. 2d 1230 | 317A+114 | Anderson correctly argued to the trial court, and now argues to this Court, that "[a] public utility is obligated to serve all members of the public that it holds itself out to serve, fairly and without discrimination." Miller v. Hillview Water Works Project, Inc., 273 Ala. 267, 271, 139 So.2d 337, 339 (1962). However, after the Water Board limited its service area in 1996, it no longer held itself out to serve potential customers outside the Madison city limits except under certain specified circumstances. As stated previously, Anderson did not file a formal application for service until 1999. Further, as this Court stated in Miller, "[t]here are ... conditions precedent to the obligation of a public utility to serve any particular applicant. The applicant must submit to such reasonable conditions as the utility sees fit to impose." 273 Ala. at 271, 139 So.2d at 340. The Water Board's adoption of a new service area is also entitled to a presumption of validity, Water Works Board of Birmingham v. Barnes, 448 So.2d 296 (Ala.1983)(water board's creation of a rate schedule was a legislative act and should have been presumed valid by the trial court); Marshall Durbin & Co. v. Jasper Utils. Bd., 437 So.2d 1014, 1018 (Ala.1983)("Thus, the actions of the [Jasper Utilities] Board, when it acts in its legislative capacity to promulgate rates, as when it takes other legislative actions, are attended with a presumption of validity."), overruled on other grounds, Ex parte Waterjet Systems, Inc., 758 So.2d 505 (Ala.1999). The Water Board's submissions concerning the policies underlying the annexation requirement show a reasonable rationale for the requirement-protecting the purity of its sources for groundwater. Moreover, Anderson has failed to show that the Water Board's policy of requiring annexation of property contiguous to Madison's city limits had been applied in an arbitrary or discriminatory manner with regard to him as compared with any other person or entity. Miller, supra. Accordingly, | There are conditions precedent to obligation of public utility to serve any particular applicant; applicant must submit to such reasonable conditions as utility sees fit to impose. | Should an applicant submit to such reasonable conditions as the utility sees fit to impose? | 042491.docx | LEGALEASE-00128377-LEGALEASE-00128378 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8290 | Turner v. Ohio Bell Tel. Co., 118 Ohio St. 3d 215 | 200+88 | Nevertheless, utility companies do not enjoy unfettered discretion in the placement of their poles within the right-of-way, for they are required to obtain approval from the owner of the right-of-way. R.C. 4939.03, 5515.01, and 5547.04. The appropriate public authority presumably will consider many of the factors in the Eight District's reasonableness test when deciding whether to approve a pole location. In ruling against a vehicular passenger who sustained injuries when her right arm struck a roadside rural mailbox, we relied in large part on the fact that the placement of the mailbox substantially complied with the requirements of the Post Office Department. Black v. Berea (1941), 137 Ohio St. 611, 19 0.0. 427, 32 N.E.2d 1, paragraph one of the syllabus. Placement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public. | Utility companies do not enjoy unfettered discretion in the placement of their poles within the right-of-way of road, for they are required to obtain approval from the owner of the right-of-way. R.C. SS 4939.03, 5515.01, 5547.04. | Do utility companies enjoy unfettered discretion in the placement of the poles within the right-of-way? | Public Utilities - Memo 243 - AM.docx | ROSS-003286259-ROSS-003286260 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 8291 | Messner v. Am. Union Ins. Co., 119 S.W.3d 642 | 366+35 | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, Metmor Fin., Inc. v. Landoll Corp., 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955). Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract." Id. at 503"04[9]. This means, inter alia, that contract provisions waiving subrogation rights are valid and enforceable. Disabled Veterans Trust v. Porterfield Const., Inc., 996 S.W.2d 548, 552[2] (Mo.App.1999). | Subrogation based upon the common law, i.e., legal subrogation, is not an option where it would be inconsistent with the terms of the contract; thus, contract provisions waiving subrogation rights are valid and enforceable. | Can you contractually waive common law subrogation rights? | 043202.docx | LEGALEASE-00128535-LEGALEASE-00128536 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8292 | Indus. Risk Insurers v. Garlock Equip. Co., 576 So. 2d 652 | 217+3522 | We believe that Escambia Electric stands for the general rule that an owner does not retain subrogation rights against a negligent contractor or subcontractor, when the owner's builder's risk insurance policy contains a "waiver of subrogation" clause. In this case, such a "waiver of subrogation" clause is incorporated by reference in Seyforth's subcontract with McDevitt & Street. The purpose of a waiver of subrogation clause is to require one party to the contract to provide property insurance for all of the parties.Board of Education v. Valden Associates, Inc., 46 N.Y.2d 653, 416 N.Y.S.2d 202, 389 N.E.2d 798 (1979). | Purpose of waiver of subrogation clause is to require one party to contract to provide property insurance for all parties. | Is the purpose of a waiver of subrogation clause meant to require one party to contract to provide property insurance for all parties? | 043226.docx | LEGALEASE-00128399-LEGALEASE-00128400 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8293 | Halpin v. Frankenberger, 231 Kan. 344 | 366+7(1) | Ordinarily the rights and obligations of a guarantor are established by the contract of guaranty. The same is true of the rights and obligations among co-guarantors. Absent agreement, it is clear that one co-guarantor has a common law right to contribution from his co- guarantors. It is also generally recognized that when a guarantor pays the principal's debt, the guarantor becomes subrogated to the rights of the creditor in seeking total reimbursement from the principal debtor, or contribution from his co-guarantor. Subrogation, as the term is defined, contemplates one person stepping into the shoes of another. As applied to a guarantor, it implies that the guarantor takes the place of, or inures to all of the rights of the creditor. | "Subrogation" contemplates one person stepping into shoes of another; as applied to guarantor, it implies that guarantor takes place of, or inures to all of rights of creditor. | Does subrogation contemplate one person stepping into the shoes of another? | Subrogation - Memo # 1074 - C - KG.docx | ROSS-003299762-ROSS-003299763 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 8294 | Messner v. Am. Union Ins. Co., 119 S.W.3d 642 | 366+35 | Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, Metmor Fin., Inc. v. Landoll Corp., 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." Anison v. Rice, 282 S.W.2d 497, 503 (Mo.1955). Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract." Id. at 503"04[9]. This means, inter alia, that contract provisions waiving subrogation rights are valid and enforceable. Disabled Veterans Trust v. Porterfield Const., Inc., 996 S.W.2d 548, 552[2] (Mo.App.1999). | Subrogation based upon the common law, i.e., legal subrogation, is not an option where it would be inconsistent with the terms of the contract; thus, contract provisions waiving subrogation rights are valid and enforceable. | Is subrogation based upon the common law an option where it would be inconsistent with the terms of the contract? | Subrogation - Memo # 1090 - C - VP.docx | ROSS-003300435-ROSS-003300438 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8295 | Gerow v. Sinay, 28 Misc. 3d 990 | 366+41(6) | As the movant on the equitable subrogation claim, U.S. Bank must establish all elements of the doctrine, including a lack of knowledge concerning another lien on the property. If Mortgage Lenders knew about the Gerow mortgage and failed to protect itself, it cannot seek the benefits of equitable subrogation. It is the same burden that U.S. Bank seeks to impose upon plaintiffs to establish that they were bona fide purchasers"only here the U.S. Bank must establish prima facie that Mortgage Lenders lacked any knowledge of the Gerow lien. | The movant on a equitable subrogation claim must establish all elements of the doctrine, including a lack of knowledge concerning another lien on the property. | Should the movant on an equitable subrogation claim establish all elements of the doctrine? | 043354.docx | LEGALEASE-00128209-LEGALEASE-00128210 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8296 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19 | 366+41(6) | Generally,the doctrine of subrogation has its origins in equity. A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. The doctrine of subrogation presupposes the payment of a debt by a party secondarily liable therefor, who thereby acquires an equitable right to be reimbursed by the principal debtor and for the purpose of making this right effective is invested with all the rights which the creditor had against him (the principal debtor). The purpose behind subrogation is to place the responsibility where it ultimately should rest by compelling payment by the one who in good conscience ought to pay it. It also prevents [individuals] from recouping a windfall.... In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of: the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement.Wolters v. Am. Republic Ins. Co., 149 N.H. 599, 601, 827 A.2d 197 (2003) (quotations, citations and brackets omitted). Claims for subrogation are generally made against a wrongdoer, but need not necessarily be limited to such an individual. 73 Am.Jur.2d Subrogation " 2 (2001). | In any subrogation case, the burden of proving entitlement is on the subrogee, which generally includes proof of the existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement. | "Is the burden of proving entitlement on the subrogee, in a subrogation case?" | 043359.docx | LEGALEASE-00128230-LEGALEASE-00128231 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8297 | Spear & Co. v. Chem. Corn Exch. Bank, 148 N.Y.S.2d 296 | 13+65 | Here there exists a bona fide dispute as to plaintiff's obligation under the indenture with regard to the net proceeds realized upon the March sale. Plaintiff has proceeded in compliance with the explicit terms of the indenture to make "provision for" taxes attributable thereto (an accounting method of common use). The complaint states definitely that this will not be affected by subsequent events in 1955. Even if that turns out not to be so, since the action cannot in any event and will not be tried before 1956, the trial court's decision will be based upon the complete facts of the 1955 tax year. In an equity action the decree, of course, is accommodated to the facts shown as existing at time of trial rather than at time of complaint. Essentially this is a present dispute though it may be affected by a future event, which, however, is itself determinable prior to trial. The question, open at the moment, is one of fact only; involving a possible change merely in computation, and even that question will be closed at the trial. | In an equity action, the decree is accommodated to the facts shown as existing at time of trial, rather than at time of complaint. | "In an equity action, is the decree accommodated to the facts shown as existing at the time of trial, rather than at the time of complaint?" | 006177.docx | LEGALEASE-00128709-LEGALEASE-00128710 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8298 | Pagano v. Pagano, 207 Misc. 474 | 13+65 | Judgment shall therefore be renderd for plaintiffs. The nature and extent of the decree, however, requires some thought and discussion. It is clear that a court of equity should administer such relief as the exigencies of the case demand at the close of the trial. The court should render such decree as equity and good conscience requires under the circumstances as presented at the time of the trial. See, Smith v. Bouton, 221 App.Div. 317, 223 N.Y.S. 164, and cases cited therein. Also, Hoffman v. T. J. Ronan Co., Inc., 275 App.Div. 57, 60, 87 N.Y.S.2d 585, 588. | Court of Equity should adminster such relief as exigencies of case demand at close of trial and should render such decree as equity and good conscience require under the circumstances as presented at time of trial. | Should a court of equity render decree as equity and good conscience requires under the circumstances as presented at the time of the trial? | 006185.docx | LEGALEASE-00128739-LEGALEASE-00128740 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8299 | C. Itoh & Co. (Am.) Inc. v. Jordan Int'l Co., 552 F.2d 1228 | 25T+137 | Accordingly, we find that the "supplementary terms" contemplated by Section 2-207(3) are limited to those supplied by the standardized "gap-filler" provisions of Article Two. See, e. g., Section 2-308(a) ("Unless otherwise agreed . . . the place for delivery of goods is the seller's place of business or if he has none his residence"); Section 2-309(1) ("The time for shipment or delivery or any other action under a contract if not . . . agreed upon shall be a reasonable time"); Section 2-310(a) ( "Unless otherwise agreed . . . payment is due at the time and place at which the buyer is to receive the goods even though the place of shipment is the place of delivery"). Since provision for arbitration is not a necessary or missing term which would be supplied by one of the Code's "gap-filler" provisions unless agreed upon by the contracting parties, there is no arbitration term in the Section 2-207(3) contract which was created by the conduct of Jordan and Itoh in proceeding to perform even though no contract had been established by their exchange of writings. | Disputed additional terms on which the writings of the parties do not agree and which are thus excluded under the Uniform Commercial Code from contract arising from conduct of the parties cannot be brought back into the contract under the guise of "supplementary terms"; "supplementary terms" contemplated by the Code in such a situation are limited to those supplied by the standardized "gap-filler" provisions of the sales article of the Code, and do not include provision for arbitration. U.C.C. SS 2-207(3), 2-308(a), 2-309(1), 2-310(a). | Are supplementary terms limited to those supplied by standardized gap-filler provisions? | 007288.docx | LEGALEASE-00128842-LEGALEASE-00128844 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 8300 | In re No Place Like Home, 559 B.R. 863 | 25T+140 | Bankruptcy courts possess broad discretion to grant a motion for relief from the stay and to compel arbitration if there is an underlying written agreement/provision to arbitrate and, if doing so, would be helpful and assist the bankruptcy court in exercising its bankruptcy jurisdiction. Compare Fed. R. Bankr. P. 9019(c) (2016). Under the FAA, an arbitration provision is severable from the remainder of the contract, such that its validity is subject to initial court determination; but if the arbitration provision is valid, the validity of the remainder of the contract is left for the arbitrator to decide. Nitro"Lift Technologies, LLC v. Howard, """ U.S. """", 133 S.Ct. 500, 503, 184 L.Ed.2d 328 (2012) (per curium) (citations omitted); see also Buckeye, 546 U.S. at 446, 126 S.Ct. 1204; Compare Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (holding that an arbitrator, not a federal or state court, will resolve questions concerning validity in the first instance when parties agree to arbitrate all disputes arising under their contract). "A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d. Cir. 2005). Arbitration is mandatory pursuant to NPLH's "Independent Contractor Agreement," which states: Arbitration. Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Memphis, TN in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof, provided however that the Company shall not be required to arbitrate of any action by Contractor which would entitle Company to seek relief under paragraph 7 or 8 of this Agreement. | Under the Federal Arbitration Act (FAA), an arbitration provision is severable from the remainder of the contract, such that its validity is subject to initial court determination, but if the arbitration provision is valid, the validity of the remainder of the contract is left for the arbitrator to decide. 9 U.S.C.A. S 1 et seq. | Can an arbitrator decide on the validity of the remainder of a contract if the court finds that the severed arbitration provision is valid? | 007291.docx | LEGALEASE-00128845-LEGALEASE-00128846 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8301 | Bradley v. Milliken, 484 F.2d 215 | 1.41E+38 | As held by the District Court, it is well established under the Constitution and laws of Michigan that the public school system is a State function and that local school districts are instrumentalities of the State created for administrative convenience. | The public school system is a state function and local school districts are instrumentalities of the state created for administrative convenience. M.C.L.A.Const.1963, art. 8, S 2. | Is the public school system a state function and local school districts instrumentalities of the state created for administrative convenience? | 016932.docx | LEGALEASE-00128787-LEGALEASE-00128788 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 8302 | Bd. of Regents of Kentucky Cmty. & Tech. Coll. Sys. v. Farrell, 443 S.W.3d 12 | 1.41E+19 | The circuit court labored under the misapprehension that KSB, KSD, and ATC institutions qualified as "common schools." They do not. "Common schools," as the term is used in the Kentucky Constitution, means a "school taught in a district laid out by authority of the school laws, under the control of trustees elected under those laws, by a teacher qualified according to law to teach." Hodgkin v. Board for Louisville & Jefferson County Children's Home, 242 S.W.2d 1008, 1010 (Ky.1951); see also Kentucky Revised Statutes (KRS) 158.030(1), providing in relevant part:No school shall be deemed a "common school" or receive support from public taxation unless the school is taught by a certified teacher for a minimum school term as defined by KRS 158.070 and every child residing in the district who satisfies the age requirements of this section has had the privilege of attending it.(Emphasis added.). | "Common schools," as the term is used in the Kentucky Constitution, means a school taught in a district laid out by authority of the school laws, under the control of trustees elected under those laws, by a teacher qualified according to law to teach. Const. S 183. | What does common schools mean? | 016948.docx | LEGALEASE-00128827-LEGALEASE-00128828 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8303 | Fed. Way Sch. Dist. No. 210 v. State, 167 Wash. 2d 514 | 141E+653 | Statutes are presumed constitutional, and the burden is on the party challenging the statute to prove its unconstitutionality. Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000). This court has long held that article IX, section 2 imposes upon the State a fundamental duty to create a common school system.13 Tunstall, 141 Wash.2d at 221, 5 P.3d 691. We have previously elaborated on what such a system must consist of. "Uniform" means that "every child shall have the same advantages and be subject to the same discipline as every other child." Sch. Dist. No. 20 v. Bryan, 51 Wash. 498, 502, 99 P. 28 (1909). | "Uniform," under provision of state constitution stating that legislature shall provide for a general and uniform system of public schools, means that every child shall have the same advantages and be subject to the same discipline as every other child. West's RCWA Const. Art. 9, S 2. | "Does the term uniform, under the provision of state constitution mean that every child shall have the same advantages and be subject to the same discipline as every other child?" | Education - Memo # 70 - C - SU.docx | LEGALEASE-00018641-LEGALEASE-00018642 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 8304 | Singh v. Becher, 249 A.D.2d 154 | 266+1643 | Moreover, the motion court misconstrued the gravamen of plaintiffs complaint. Plaintiff seeks to impose a constructive trust on the assignment of a mortgage, not on the real property. A "mortgage is generally considered to be personal property" (77 N.Y.Jur.2d, Mortgages, " 3, at 375), and the assignment of an existing mortgage, rather than the execution of a new mortgage or the foreclosure of an existing mortgage, would not affect the underlying real property. As such, CPLR 507 does not require this action to be prosecuted in Schenectady County (cf., 5303 Realty Corp. v.O & Y Equity Corp., 64 N.Y.2d 313, 322-323, 486 N.Y.S.2d 877, 476 N.E.2d 276). | Mortgage is generally considered to be personal property, and assignment of existing mortgage, rather than execution of new mortgage or foreclosure of existing mortgage, would not affect underlying real property for venue purposes. McKinney's CPLR 507. | Are mortgages generally considered to be personal property? | Venue - Memo 102 - RK.docx | ROSS-003300377-ROSS-003300378 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8305 | McGillis v. Aida Eng'g, 161 Mich. App. 370 | 413+1 | Every employer subject to the Workers' Disability Compensation Act is liable for compensation awarded to its injured employees. The recovery of benefits under the act is the employee's exclusive remedy against the employer. M.C.L. " 418.131; M.S.A. " 17.237(131). M.C.L. " 418.611; M.S.A. " 17.237(611) mandates that each employer subject to the act shall secure the payment of compensation by one of three prescribed methods. The three methods are: (1) becoming an authorized self-insurer; (2) insuring with an authorized insurer; or (3) insuring with the accident fund. Employers who do not comply with " 611 are not allowed any exemption otherwise allowed by statute upon the enforcement of an award of compensation, and the officers and directors of corporate employers are held liable for that part of the compensation award unsatisfied after execution against the corporation. M.C.L. " 418.647; M.S.A. " 17.237(647). | Every employer subject to Workers' Disability Compensation Act is liable for compensation awarded to its injured employees. M.C.L.A. S 418.101 et seq. | Is every employer that is subject to the workers disability compensation act liable for compensation awarded to its injured employees? | 047741.docx | LEGALEASE-00128749-LEGALEASE-00128750 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8306 | Geochem Labs. v. Brown & Ruth Labs., 689 S.W.2d 288 | 302+228.23 | It is well settled that when special exceptions are sustained, the pleader has two options: (1) he may, as a matter of right, amend his petition, or (2) he may refuse to amend and thereby test the validity of the ruling on appeal. Davis v. Quality Pest Control, 641 S.W.2d 324, 328 (Tex.App."Houston [14th Dist.] 1982, writ ref'd n.r.e.). If the pleader refuses to amend his pleading, the trial court may by further order either strike the objectionable portion of the pleading, see Ship Ahoy, Inc., v. Whalen, 347 S.W.2d 662, 663 (Tex.Civ.App."Houston 1961, no writ), or dismiss the suit if the remaining allegations in the petition fail to state a cause of action. Farias v. Besteiro, 453 S.W.2d 314, 317 (Tex.Civ.App."Corpus Christi 1970, writ ref'd n.r.e.); see also 3 R. McDonald, Texas Civil Practice in District and County Courts sec. 10.14.5 (rev.1983). | When special exceptions are sustained, pleader has two options, to wit, he may, as matter of right, amend his petition, or he may refuse to amend and thereby test validity of ruling on appeal; if pleader refuses to amend his pleading, trial court may by further order either strike objectionable portion of pleading, or dismiss if remaining allegations in petition fail to state cause of action. | What options does the pleader have when special exceptions are sustained? | 008171.docx | LEGALEASE-00129053-LEGALEASE-00129054 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 8307 | State ex rel. Moore v. Lawson, 105 Idaho 164 | 30+338(1) | Our Supreme Court has plenary authority under Art. 5, " 9, of the Idaho Constitution to "review upon appeal, any decision of the district courts." However, we view our appellate jurisdiction as being limited to those cases in which appeals have been timely filed under rules promulgated by the Supreme Court. We again conclude that we lack jurisdiction to consider the Platts' appeal insofar as it relates to the judgment filed June 19, 1980. The petition for rehearing is denied. | Appellate jurisdiction of the Court of Appeals is limited to those cases in which appeals have been timely filed under rules promulgated by the Supreme Court. | Is appellate jurisdiction limited to those cases in which appeals have been timely filed under rules promulgated by the Supreme Court? | Appeal and error - Memo 51 - RK.docx | ROSS-003286567-ROSS-003286568 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8308 | In re James B., 109 Cal. App. 4th 862 | 67+4 | The requirement of locking as an element of vehicular burglary has been interpreted to mean "that where a defendant "used no pressure," "broke no seal," and "disengaged no mechanism that could reasonably be called a lock," he is not guilty of auto burglary. [Citations.]" (In re Young K., supra, 49 Cal.App.4th at p. 864, 57 Cal.Rptr.2d 12.) Therefore, "because auto burglary can be committed only by entering a locked vehicle without the owner's consent, it is only accomplished by altering the vehicle's physical condition; at worst, by smashing a window, at best, by illegally unlocking it. These extremes, as well as other possible types of forcible entries, necessarily involve unlawfully altering the vehicle's locked state." (People v. Mooney (1983) 145 Cal.App.3d 502, 505, 193 Cal.Rptr. 381.) | Because auto burglary can be committed only by entering a locked vehicle without the owner's consent, it is only accomplished by altering the vehicle's physical condition; at worst, by smashing a window, at best, by illegally unlocking it. West's Ann.Cal.Penal Code S 459. | How is auto burglary committed? | 013209.docx | LEGALEASE-00129630-LEGALEASE-00129631 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8309 | Wall v. State Bd. of Edn., 29 N.E.3d 1024 | 141E+452(1) | The Department initiated the action when it issued Wall the March 4, 2013 notice. See Sowald at 343, 603 N.E.2d 1017 (letter initiated the matter in controversy because it notified the nursing home of decertification and the notice led directly to the formal evidentiary hearing). At the time Wall was issued the March 4, 2013 notice, the Department had Wall's criminal conviction as evidence that she engaged in conduct unbecoming a teacher in violation of R.C. 3319.13(B)(1). A misdemeanor conviction can serve as the basis to revoke a teaching license for conduct unbecoming to the teacher's position. See, e.g., Freisthler, 2002-Ohio-4941, 2002 WL 31114955, at; Cleveland Hts. v. Lewis, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, (Lundberg Stratton, J., concurring). A reasonable person, knowledgeable in the area of law could believe that Wall's November 25, 2011 conduct and subsequent misdemeanor conviction is conduct unbecoming a teacher in violation of R.C. 3319.13(B)(1)"that is, it is reasonable to believe that the Department could establish a nexus between Wall's conduct on November 25, 2011 and her fitness to teach. Therefore, the Department was substantially justified in initiating the disciplinary action against Wall. Compare Penix at (the Board was substantially justified in initiating the charge against Penix because she failed to provide a copy of her work file); Malik v. State Med. Bd., 10th Dist. Franklin No. 88AP"741, 1989 WL 112346, (Sept. 28, 1989) (the Board was substantially justified in initiating the action because the original charge had merit). | A misdemeanor conviction can serve as the basis to revoke a teaching license for conduct unbecoming to the teacher's position. R.C. S 3319.13(B)(1). | Can a misdemeanor conviction serve as the basis to revoke a teaching license for conduct unbecoming to the teacher's position? | 016966.docx | LEGALEASE-00129259-LEGALEASE-00129260 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 8310 | S. Sutter v. LJ Sutter Partners, 193 Cal. App. 4th 634 | 307A+501 | "In common law, a retraxit was "a voluntary renunciation by plaintiff in open court of his suit and cause thereof, and by it plaintiff forever loses his action." [Citations.] In California, the same effect is now accomplished by a dismissal with prejudice. [Citations.]" (Morris v. Blank (2001) 94 Cal.App.4th 823, 828, 114 Cal.Rptr.2d 672.). Applying direct estoppel here does not convert South Sutter's voluntary dismissal of Sutter I without prejudice into a dismissal with prejudice. Because no judgment was entered on the merits of the Sutter I complaint, South Sutter was free to file a second complaint. In addition, applying direct estoppel to the first prong of the anti-SLAPP motion does not bar South Sutter from prevailing on its claim. It simply subjects it to an earlier showing of proof, somewhat akin to a summary judgment motion, than would otherwise be required. There is no retraxit here. | In common law, a "retraxit" was "a voluntary renunciation by plaintiff in open court of his suit and cause thereof, and by it plaintiff forever loses his action," and in California, the same effect is now accomplished by a dismissal with prejudice. | What is a retraxit in common law? | Pretrial Procedure - Memo # 1000 - C - SK.docx | LEGALEASE-00019238-LEGALEASE-00019239 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8311 | City of Palos Heights v. Vill. of Worth, 29 Ill. App. 3d 746 | 307A+501 | Plaintiffs' interpretation of section 52(1) as to the discretion of the trial court before a trial or hearing has begun is erroneous. The trial court is clearly vested with discretion to fix such terms after trial or hearing has begun, but it does not follow that the court has the same discretion prior thereto. Upon proper notice and payment of costs, a plaintiff has an absolute right to dismiss his action before a trial or hearing has begun, and the trial court has no discretion to interfere with the exercise of that right.(Gilbert-Hodgman, Inc. v. Chi. Thoroughbred Ent. (1974), 17 Ill.App.3d 460, 308 N.E.2d 164; Bernick v. Chicago Title & Trust Co. (1945), 325 Ill.App. 495, 60 N.E.2d 442.) It therefore follows that if the trial court cannot fix terms to the detriment of a plaintiff as to a voluntary non-suit before a trial or hearing has begun, neither can it fix terms for a voluntary non-suit to the detriment of a defendant. Clearly, the trial court would have been without authority to impose any such terms upon the defendant Village of Worth in a dismissal order entered before the commencement of a trial or hearing. | Upon proper notice of payment of costs, plaintiff has absolute right to dismiss his action before trial or hearing has begun and trial court has no discretion to interfere with exercise of that right. S.H.A. ch. 110, SS 52, 52(1). | Does a plaintiff have an absolute right to dismiss an action? | 024858.docx | LEGALEASE-00129556-LEGALEASE-00129557 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8312 | Barbara v. Billelo, 212 La. 937 | 307A+501 | It is the settled jurisprudence of this court that a plaintiff may discontinue his suit at any time prior to the rendition of judgment "unless thereby some acquired right of the defendant would be impaired." Davis v. Young, 35 La.Ann. 739. See, also, Lanusse's Syndics v. Pimpienella, 4 Mart., N.S., La., 439; Adams v. Lewis, 7 Mart., N.S., La., 400, 405; Broussard v. Duhamel, 4 La. 366; Smalley v. Lawrence, 9 Rob., La., 210, 213; McDonogh v. Dutillet, 3 La.Ann. 660; Donnell v. Parrott, 10 La.Ann. 703; Barrow v. Robichaux, 15 La.Ann. 70; Barron v. Jacobs, 38 La.Ann. 370; Meyers & Co. v. Birotte, 41 La.Ann. 745, 6 So. 607; State ex rel. Gondran v. Rost, 48 La.Ann. 455, 19 So. 256; Thompson v. McCausland, 136 La. 774, 67 So. 826; State v. Howell, supra; Person v. Person, 172 La. 740, 135 So. 225; and Rives v. Starcke, 195 La. 378, 196 So. 657. And while this right to discontinue the suit has been expressly granted the plaintiff by Article 491 of the Code of Practice, this same right has been accorded a defendant filing a reconventional demand (Suberville v. Adams, 47 La.Ann. 68, 16 So. 652) and a defendant called in warranty. Broussard v. Duhamel, 4 La. 366. The reason therefor is that although a reconventional demand is usually contained in the defendant's answer, it is not deemed to be a part thereof. It enjoys the status of an independent suit and, as such, is subject to all of the rules of pleading relative to the petition, the defendant, quoad the reconventional demand, becoming the plaintiff in this separate cause of action and the plaintiff in the original suit becoming the defendant. McDonough v. Copeland, 9 La. 308; Coxe v. Downs, 9 Rob., La., 133; McMasters v. Palmer, 4 La.Ann. 381; Powell v. Graves, 14 La.Ann. 860; Bayly & Pond v. Stacey & Poland, 30 La.Ann. 1210; Davis v. Young, supra; Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869; Senseley v. First Nat. Life Ins. Co., 205 La. 61, 16 So.2d 906; Woodward-Wight & Co. v. Haas, La.App., 149 So. 161. (Italics ours.) | A plaintiff may discontinue his suit any time prior to rendition of judgment unless thereby some acquired right of defendant would be impaired and though such right to discontinue is granted by the Code, the same right has been accorded to a defendant filing a reconventional demand and to defendant called in warranty, because, though a reconventional demand is usually contained in defendant's answer, it is not deemed to be a part thereof but enjoys status of independent suit subject to all rules of pleading relative to petition. Code Prac. art. 491. | Can a plaintiff discontinue his suit at any time prior to rendition of judgment? | Pre-trial Procedure - Memo # 1050 - C - KG.docx | LEGALEASE-00019312-LEGALEASE-00019314 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 8313 | Crane v. Leclere, 204 Iowa 1037 | 307A+501 | It further appears from the foregoing record that the defendant, upon its own application, was given ten days to file a brief, and that appellee was given ten days following to file a brief. The statute prohibiting the dismissal of an action after final submission of the case is in derogation of the common law, and it will not be extended so as to prohibit the dismissal of a case not falling within its express terms. 18 C. J. 1155. "Within the rule that the plaintiff cannot dismiss or take a nonsuit after final submission, it has been said that 'a submission is final only when nothing remains to be done to render it complete.' | Statute prohibiting dismissal of action after final submission will not be extended to include cases not within its express terms. | Can a statute prohibiting the dismissal of an action after final submission of the case be extended to prohibit the dismissal of a case not falling within its express terms? | Pre-trial Procedure - Memo # 1055 - C - KG.docx | ROSS-003327923-ROSS-003327924 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8314 | Moseley v. Behringer, 184 S.W.3d 829 | 307A+501 | The granting of a nonsuit is a ministerial act. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (orig.proceeding) (interpreting rule 164, rule 162's predecessor, and granting mandamus relief). "A plaintiff's right thereto exists from the moment a written motion is filed or an oral motion is made in open court unless the defendant has, prior to that time, filed pleadings seeking affirmative relief." Id. A trial court therefore has no discretion but to grant the nonsuit unless the defendant has previously sought affirmative relief. Id.; see also In re Martinez, 77 S.W.3d 462, 464 (Tex.App.-Corpus Christi 2002, orig. proceeding); In re Bridges, 28 S.W.3d 191, 195 (Tex.App.-Fort Worth, 2000, orig. proceeding). "[I]n the ordinary case, absent special statutory provisions, a plaintiff has an absolute right to take a nonsuit." Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991) (orig.proceeding). | In the ordinary case, absent special statutory provisions, plaintiff has an absolute right to take a nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "In the ordinary case, absent special statutory provisions, does a plaintiff have an absolute right to take a nonsuit?" | 025160.docx | LEGALEASE-00129560-LEGALEASE-00129561 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8315 | Arciniega v. Bank of San Bernardino, 52 Cal. App. 4th 213 | 336H+105 | In rationalizing its affirmance, Roybal observed, " "[a] dismissal with prejudice by plaintiff of its action is a bar to a subsequent action on the same cause; otherwise there would be no meaning to the "with prejudice" feature...." " It is a final judgment in favor of defendants ... [citation.].(Roybal v. University Ford, supra, 207 Cal.App.3d at pp. 1085"1086, 255 Cal.Rptr. 469.) Continuing, " "a request for dismissal with prejudice operates as a retraxit and bars a new action...."[Citation.]" (Id. at p. 1086, 255 Cal.Rptr. 469, italics in original.) Continuing further, " "A retraxit differs from a nonsuit, in that the one is negative, and the other positive: the nonsuit is a default and neglect of the plaintiff, and therefore he is allowed to begin his suit again, upon payment of costs; but a retraxit is an open and voluntary renunciation of his suit, in court, and by this he for[ ]ever loses his action." (3 Blackstone, Commentaries 296.) "A retraxit has always been deemed a judgment on the merits against the plaintiff, estopping him from subsequently maintaining an action for the cause renounced." (2 Freeman, A Treatise of the Law of Judgments (1925) 757, p. 1595.)" (Ibid.). | Difference between "retraxit" and "nonsuit" is that nonsuit is plaintiff's default and neglect, and he is thus allowed to bring suit again, upon payment of costs; conversely, retraxit is open and voluntary renunciation of suit in court, by which plaintiff forever loses his action. | "Is ""retraxit"" an open, voluntary renunciation of a claim in court?" | 025559.docx | LEGALEASE-00129342-LEGALEASE-00129343 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8316 | Cook v. Lichtblau, 176 So. 2d 523 | 307A+501 | We reject both arguments and hold that under Florida R.C.P. 1.35, as amended, a plaintiff may not terminate an action as a matter of right by taking a nonsuit whether voluntary or involuntary under prior Florida practice. We think the Supreme Court originally recognized that both types of nonsuit constitute, in effect, dismissals at the instance of plaintiffs which could not be permitted to be taken as a matter of right consistent with the provisions of Florida Common Law Rule 35 and Florida R.C.P. 1.35(a).22 Further, we do not attach great significance to the fact that the exception was added to subdivision (b), nor to the fact that it followed the "not provided for" phrase. We think the exception was inserted for the purpose of temporarily preserving non-suits of both types and that it was subsequently deleted for the purpose of abolishing both types. Assuming arguendo that the Supreme Court initially sought to preserve the "involuntary" type of nonsuit, the effect of the 1962 revision was no abolish that type of nonsuit too. While the purpose in deleting the "not provided for" phrase is not entirely clear, we think the purpose may well have been to indicate that, until the new practice is thoroughly understood, erroneously taken or erroneously allowed nonsuits should be construed as ineffectual attempts to terminate actions or as dismissals without prejudice, rather than as adverse adjudications on the merits, i. e., dismissals with prejudice. Our conclusion is fortified, among others, by the following considerations: (1) The limitation upon the right of plaintiffs to terminate actions contained in Florida R.C.P. 1.35(a), as amended, cannot reasonably be enforced so long as the practice exists of plaintiffs taking nonsuits as a matter of right, whether voluntary or "involuntary;" (2) A rule prohibiting voluntary nonsuits as a matter of right but permitting "involuntary" non-suits as a matter of right also could not reasonably be enforced; (3) The statutory practice of permitting plaintiffs | Plaintiff may not terminate action as matter of right by taking nonsuit whether voluntary or involuntary. 30 F.S.A. Rules of Civil Procedure, rule 1.35. | Can a plaintiff terminate action as matter of right by taking nonsuit whether voluntary or involuntary? | 026029.docx | LEGALEASE-00129386-LEGALEASE-00129387 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 8317 | Wright v. Desate, 292 Ill. App. 3d 952 | 307A+501 | In this appeal, we are asked to determine whether Supreme Court Rule 219(e) (Official Reports Advance Sheet No. 20 (Sept. 27, 1995), R. 219(e), effective Jan. 1, 1996) limits the plaintiff's right to a voluntary dismissal when the plaintiff voluntarily dismisses a suit to avoid the impact of discovery sanctions. We are also asked to determine whether the written order set forth the reason for the sanction with sufficient detail to satisfy Supreme Court Rule 219(c)(Official Reports Advance Sheet No. 20 (Sept. 27, 1995), R. 219(c), effective Jan. 1, 1996) when it gave no specific reason for barring the witnesses' testimony. We hold that Supreme Court Rule 219(e) permits a voluntary dismissal even when the dismissal is prompted by discovery sanctions.We also hold that when considered in concert with the record, the written sanction order satisfies the statutory requirements of specificity under Rule 219(c). Accordingly, we affirm. | Supreme Court rule permits voluntarily dismissal of case even when plaintiff's purpose for doing so is to avoid impact of discovery order. Sup.Ct.Rules, Rule 219(e). | Does a Supreme Court rule permit voluntarily dismissal of a case even when a plaintiff's purpose for doing so is to avoid impact of a discovery order? | 026047.docx | LEGALEASE-00129473-LEGALEASE-00129475 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 8318 | Carter v. Clegg, 557 So. 2d 1187 | 307A+501 | When considering whether a dismissal should be granted, the trial courtmust consider the effects the action will have on the defendant and other plaintiffs, if there are any.] [] Moreover, the trial court must assure fairness and protection for those affected by the dismissal. Since a dismissal under 41(a) is without prejudice, unless the order states otherwise, a trial court should grant a voluntary dismissal unless some legal prejudice occurs. See, Shepherd, 502 So.2d at 1191; Smith, 477 So.2d at 230. | When considering whether to grant voluntary dismissal, trial court must consider effect action will have on defendant and other plaintiffs, if there are any; moreover, court must assure fairness and protection for those affected by dismissal. Rules Civ.Proc., Rule 41. | "When considering whether to grant voluntary dismissal, should a trial court consider the effect an action will have on a defendant and other plaintiffs, if there are any?" | Pretrial Procedure - Memo # 1267 - C - PC.docx | ROSS-003287717-ROSS-003287718 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 8319 | Grafton v. Ohio Edison Co., 1996-Ohio-336, 77 Ohio St. 3d 102 | 317A+114 | The Miller Act focuses upon protecting existing utility customers from having their service terminated without commission approval. E. Ohio Gas Co. v. Cleveland (1922), 106 Ohio St. 489, 508-509, 140 N_E. 410, 416. This protection extends to situations where the utility franchise has expired (Lake Shore Elec. Ry. Co. v. State ex rel. Martin [1932], 125 Ohio St. 81, 180 N.E. 540) and even where the service was provided without any franchise contract (Wear, supra, 128 Ohio St. 95, 190 N.E. 224). However, the Miller Act does not create any right in a public utility to expand its customer base after its franchise expires to serve unknown, future customers inside a municipality that has created and is operating its own municipal utility. State ex rel. Toledo Edison, supra, 76 Ohio St.3d at 517, 668 N.E.2d at 506-507. | Miller Act protection of existing utility customers from having their service terminated at instance of municipality without approval of Public Utilities Commission of Ohio (PUCO) extends to situations where utility franchise has expired, and even where service was provided without any franchise contract. R.C. SS 4905.20, 4905.21. | Does the Miller Act focus on protecting the existing utility customers from the termination of the utility services without commission approval? | Public Utilities - Memo 250 - AM.docx | ROSS-003301131-ROSS-003301132 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8320 | Lachmar v. Trunkline LNG Co., 753 F.2d 8 | 38+107 | Under New York law, made applicable by the parties, the assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so. Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395, 402, 165 N.Y.S.2d 498, 144 N.E.2d 387 (1957). Included among the duties to which this rule has reference is the duty to arbitrate. Matter of Kaufman, 272 A.D. 578, 581"82, 74 N.Y.S.2d 23 (1st Dep't 1947). Marad did not assume Lachmar's duty to arbitrate. Indeed, in the event of default in the guaranteed obligations or any related agreement, the Secretary of Commerce has the statutory right to "take such action against the obligor or any other parties liable thereunder that, in his discretion, may be required to protect the interests of the United States." 46 U.S.C. " 1275(e). Marad was neither a necessary nor indispensable party to the arbitration. | Under New York law, assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so. | Is an assignee of rights under a bilateral contract bound to perform the assignor's duties under the contract? | Alternative Dispute Resolution - Memo 507 - RK.docx | LEGALEASE-00019552-LEGALEASE-00019553 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8321 | The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528 | 25T+182(1) | The New York arbitration clause in the voyage charter applies only to disputes "between Owners and Charterers" and as we have discussed, the term "Owners" in the voyage charter refers to IBN as the disponent owner, not to Precious Flowers as the vessel owner. "Arbitration agreements apply to nonsignatories only in rare circumstances." Where "some written agreement to arbitrate" exists, federal courts have recognized "[s]ix theories for binding a nonsignatory to an arbitration agreement ...: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." The Rice Company's argument, generously construed, urges three of these theories. By alleging that Precious Flowers bound itself to the charter party by allowing IBN to sign the bill of lading incorporating the voyage charter terms on its behalf, The Rice Company alleges a combination of incorporation by reference and agency. As we will explain, it also alleges that because the vessel "benefits from any defenses contained in the bill of lading," Precious Flowers is estopped from arguing that it is not subject to the arbitration clause incorporated into the bill of ladin | Where some written agreement to arbitrate exists, federal courts recognize six theories for binding a nonsignatory to an arbitration agreement: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. | Can arbitration agreements apply to nonsignatories? | 007355.docx | LEGALEASE-00130212-LEGALEASE-00130213 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8322 | Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 | 25T+143 | The importance of the private damages remedy, however, does not compel the conclusion that it may not be sought outside an American court. Notwithstanding its important incidental policing function, the treble-damages cause of action conferred on private parties by " 4 of the Clayton Act, 15 U.S.C. " 15, and pursued by Soler here by way of its third counterclaim, seeks primarily to enable an injured competitor to gain compensation for that injury. "Section 4 ... is in essence a remedial provision. It provides treble damages to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws....' Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing, as we also have frequently observed.... It nevertheless is true that the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485"486, 97 S.Ct. 690, 695"696, 50 L.Ed.2d 701 (1977). | Importance of private damages remedy in antitrust dispute does not compel conclusion that resolution may not be sought outside an American court by means of arbitration. | Does the importance of the private damages remedy compel the conclusion that it may not be sought outside an American court? | 007380.docx | LEGALEASE-00130241-LEGALEASE-00130242 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8323 | DuBray v. Warner Bros. Records, 236 A.D.2d 312 | 307A+501 | Plaintiffs correctly state that courts are generally reluctant to compel a party to litigate and, in the exercise of discretion, will grant a motion for discontinuance absent compelling circumstances or particular prejudice to defendants (Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050; see also, Matter of Baby Boy C., 84 N.Y.2d 91, 99, 615 N.Y.S.2d 318, 638 N.E.2d 963). It is also true, however, that a motion for discontinuance should not be used to circumvent an order of the court (Schultz v. Kobus, 15 A.D.2d 382, 384, 224 N.Y.S.2d 372), or to enable plaintiffs to "do indirectly what they are not permitted to do directly" (Katz v. Austin, 271 App.Div. 217, 218, 62 N.Y.S.2d 912, lv denied 271 App.Div. 773, 64 N.Y.S.2d 926; but see, De Laurentis v. Bercowitz, 27 A.D.2d 869, 277 N.Y.S.2d 728). This is precisely what plaintiffs appear to be doing in their admitted attempt to revive their claims under New York State law in the courts of another State. The courts of New York State have determined that New York law does not apply and that South Dakota law does; plaintiffs seek a second chance to persuade a South Dakota court to reach precisely the opposite conclusion. | Motion for discontinuance should not be used to circumvent order of court or to enable plaintiffs to do indirectly what they are not permitted to do directly. | Can a motion for discontinuance be used to circumvent an order of the court or to enable plaintiffs to do indirectly what they are not permitted to do directly? | 026054.docx | LEGALEASE-00129719-LEGALEASE-00129720 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8324 | Rooth v. Kusel, 278 Ill. App. 152 | 307A+501 | The question for consideration is whether or not complainant had a right to dismiss her bill before Ulrich had intervened and became a party to the suit. It has long been the settled rule in this State with some exceptions, that a complainant can dismiss his bill at any time. Among these exceptions is where a bill is filed on behalf of the complainant and others, and such others have intervened and have been made parties complainant. Counsel for Ulrich insists that by the service of notice before the suit was dismissed, he had secured rights which entitled him to have the order of dismissal vacated and to continue the proceedings on his own behalf. | A complainant can dismiss his bill at any time, except where a bill is filed on behalf of complainant and others, and such others have intervened and have been made parties complainant. | "Can a complainant dismiss his bill at any time, except where a bill is filed on behalf of complainant and others, and such others have intervened and have been made parties complainant?" | 026146.docx | LEGALEASE-00130083-LEGALEASE-00130084 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 8325 | Earl v. Winne, 34 N.J. Super. 605 | 307A+749.1 | At the trial the plaintiff was limited to proofs of these issues and was not permitted, on motion after opening to the jury on the issues stated in the pretrial order, to amend the order to include the additional issue whether the indictment was kept open to induce or extort from the plaintiff releases of civil rights of action against the defendant. Such an amendment, creating a new issue at such time, after the issues had been settled by agreement of the parties at the pretrial conference, would have constituted a manifest injustice to the defendant, where such issues were pleaded in the complaint but excluded from the issues for trial by the pretrial order. [(The pretrial order supersedes the pleadings when inconsistent therewith and controls the subsequent course of action unless modified at or before the trial or during the trial to prevent manifest injustice. R.R. 4:29-1, 4:15-2; Altana v. McCabe, 132 N.J.L. 12, 38 A.2d 192, Sup.Ct.1944; Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 104 A.2d 662 (1954). Therefore the cause of action for malicious abuse of process was tried on the issues delineated in the pretrial order. | The pretrial order supersedes the pleadings when inconsistent therewith and controls subsequent course of action unless modified at or before the trial or during trial to prevent manifest injustice. R.R. 4:29-1. | Does a pretrial order supersede pleadings inconsistent therewith? | Pretrial Procedure - Memo # 2502 - C - RY.docx | ROSS-003300102-ROSS-003300103 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8326 | State v. Edmonds, 323 Conn. 34 | 399+1 | It is undisputed that, prior to the time the officers entered the lot to question the defendant, he did not make any suspicious statements or nervous gestures. He was just standing outside at night. It is well established that the fact that a citizen chooses to stand outside at the dinner hour, in a neighbourhood plagued by crime, does not warrant any reasonable and articulable suspicion that he himself is engaged in criminal activity. See State v. Santos, 267 Conn. 495, 508-509, 838 A.2d 981 (2004) (presence of individual in high crime area at night not sufficient to justify seizure), abrogated on other grounds by State v. Burroughs, 288 Conn. 836, 844 n. 5, 955 A.2d 43 (2008); State v.Hammond, 257 Conn. 610, 625, 778 A.2d 108 (2001) (relying on United States v. Gray, 213 F.3d 998, 1001 [ (8th Cir.2000) ], for proposition that standing on street in high crime area before 10 p.m. in cold weather insufficient to justify Terry stop); see also United States v. Blair, 524 F.3d 740, 751 (6th Cir.2008) (10:30 p.m. is "not late enough to arouse suspicion of criminal activity," even in high crime area); People v. Bower, 24 Cal.3d 638, 645, 597 P.2d 115, 156 Cal.Rptr. 856 (1979) (time of 8:37 p.m., "while falling during darkness in winter, is simply not a late or unusual hour nor one from which any inference of criminality may be drawn'); People v. Bower, supra, at 645, 156 Cal.Rptr. 856, 597 P.2d 115 (cautioning that "high crime area justification is easily subject to abuse" [internal quotation marks omitted] ); Commonwealth v. Helme, supra, 399 Mass. at 298, 302, 503 N.E.2d 1287 (stop not justified where defendant's car was parked with interior lights on and engine running at 12:30 a.m. in parking lot outside pub that was open for business). Compare 4 W. LaFave, supra, at " 9.5(e), pp. 691-92 (not suspicious for individual to stand outside residential or commercial establishment in evening), with id., at p. 688 n. 180 (listing cases finding reasonable | Suspect's standing in a private parking lot for a few seconds does not constitute loitering, particularly without any indication that suspect is engaged in otherwise improper conduct or has been asked to leave the premises. | Does standing in a private parking lot constitute loitering? | Vagrancy - Memo 8 - JS.docx | ROSS-003317644-ROSS-003317645 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 8327 | Ballay v. Legg Mason Wood Walker, 878 F.2d 729 | 25T+143 | An agreement to arbitrate is simply a contract, fashioned by the parties according to their intentions. Although the Federal Arbitration Act establishes a presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire. See Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, --, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (Federal Arbitration Act "does not require parties to arbitrate when they have not agreed to do so ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement"). [] Plaintiffs argue that the specific agreement between them and Legg Mason explicitly excluded from compulsory arbitration claims arising under the federal securities laws. Therefore, they argue, notwithstanding the Supreme Court's decision in Rodriguez DeQuijas upholding arbitration of Securities Act claims, arbitration of plaintiffs' Securities Act claims was properly denied because those claims were outside the scope of their agreement. | Although Federal Arbitration Act establishes presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire. 9 U.S.C.A. SS 1-15. | Does the Federal Arbitration Act (FAA) prevent parties from agreeing to exclude matters from arbitration? | Alternative Dispute Resolution - Memo 552 - RK.docx | ROSS-003299997-ROSS-003299999 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8328 | Hersman v. Fleming Companies, 19 F. Supp. 2d 1282 | 25T+143 | The key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations. See Gregory, 83 F.3d at 384-85 (compelling arbitration of tort claims which depended on a buyer's "failure to fulfill its perceived obligations" in connection with a stock purchase agreement). Often the issue has arisen in the context of whether nonsignatories to an arbitration agreement were equitably estopped from avoiding arbitration because of the absence of a written agreement with the party seeking to compel arbitration. Several courts have compelled arbitration in such circumstances, finding that the plaintiffs' claims were "intimately founded in and intertwined with the underlying contract obligations." McBro Planning & Develop. v. Triangle Elect. Const., 741 F.2d 342, 344 (11th Cir. (quoting Hughes Masonry Co. v. Greater Clark County School Bldg. Corp., 659 F.2d 836, 841 n. 9 (7th Cir.1981)); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757-58 (11th Cir.1993); Dunn Construction Company v. Sugar Beach Condominium Ass'n, Inc., 760 F.Supp. 1479, 1484 (S.D.Ala.1991). But see Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530, 1536 (M.D.Ala.1997) ("What matters is that none of the duties the plaintiffs are claiming that Waverlee breached arose under and were assigned to it by the sales agreements ... which are the sole agreements governed by an arbitration clause here."); Ex parte Isbell; Isbell v. Southern Energy Homes, Inc., 708 So.2d 571, 578 (Ala.1997). | Key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations. | What key element determines if tort claims are subject to an arbitration provision? | Alternative Dispute Resolution - Memo 563 - RK.docx | ROSS-003286543-ROSS-003286544 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8329 | United States v. Alfisi, 308 F.3d 144 | 63+1(1) | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be "a specific intent to give ... something of value in exchange for an official act." Sun-Diamond Growers, 526 U.S. at 404-05, 119 S.Ct. 1402 (emphasis in original). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. See United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The element of a quid pro quo or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment be a reward for a past official act or made in the hope of obtaining general good will in the payee's performance of official acts off in the future. See Sun-Diamond Growers, 526 U.S. at 405, 119 S.Ct. 1402; Biaggi, 909 F.2d at 684-85; Myers, 692 F.2d at 841. | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be a specific intent to give something of value in exchange for an official act. 18 U.S.C.A. S 201(b)(1)(A). | What is the corrupt intent required by the bribery statute? | 011087.docx | LEGALEASE-00130447-LEGALEASE-00130448 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8330 | State v. Hankins, 376 So. 2d 285 | 67+2 | The gravamen of the offense of burglary, whether of a conveyance or otherwise, is a nonconsensual entry with the intent to commit an offense within; the purpose of the statute is to punish an invasion of the possessory property rights of another in structures and conveyances. Presley v. State, 61 Fla. 46, 48, 54 So. 367, 368 (1911); Holzapfel v. State, 120 So.2d 195, 197 (Fla. 3rd DCA 1960) (cert. denied, State v. Holzapfel, 125 So.2d 877 (Fla.1960)); Vazquez v. State, 350 So.2d 1094 (Fla. 3rd DCA 1977) (cert. denied, State v. Vazquez, 360 So.2d 1250 (Fla.1978)). The definition of "entering a conveyance" in Section 810.011(2) does not obviate the necessity for alleging facts in support of an intent to commit an offense therein. Dalby, supra. | Gravamen of offense of burglary, whether of a conveyance or otherwise, is a nonconsensual entry with intent to commit offense within; purpose of burglary statute is to punish invasion of possessory property rights of another in structures and conveyances. West's F.S.A. S 810.02(1). | What is the gravamen of burglary? | Burglary - Memo 26 - RK.docx | ROSS-003314134-ROSS-003314136 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 8331 | People v. Watson, 24 Ill. App. 3d 237 | 67+12 | The defendant maintains he was not proven guilty beyond a reasonable doubt. In order to sustain a conviction for possession of burglarytools, the State must prove that the defendant possessed tools adapted and designed for breaking and entering and that they were possessed with knowledge of their character and with the intent to commit a felony or theft.The required intent must ordinarily be shown by circumstantial evidence in the absence of a confession. People v. Faginkrantz, 21 Ill.2d 75, 79"80, 171 N.E.2d 5 (1960); Ill.Rev.Stat.1971, ch. 38, s 19"2. | In order to sustain conviction for possession of burglary tools, State must prove that defendant possessed tools adapted and designed for breaking and entering and that they were possessed with knowledge of their character and with intent to commit felony or theft. | Can intent be proved by circumstantial evidence for the charge of possession of burglars tools? | 013306.docx | LEGALEASE-00131350-LEGALEASE-00131351 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 8332 | Farris v. U. S. Fid. & Guar. Co., 273 Or. 628 | 307A+532 | Except in instances of dismissal for lack of prosecution, there is no statutory authorization for judgments or orders of dismissal in law actions. The statutory scheme in Deady's Code and at present indicates that in equity the correct terminology is "dismissal" and in law the correct terminology is "nonsuit," voluntary and involuntary. ORS 18.210 applies to equity and provides: "A decree dismissing a suit may be given against the plaintiff in any of the cases specified in subsections (1), (2) and (3) of ORS 18.230 (the nonsuit section), except the last clause of such subsection (3). Such decree is a determination of the suit, but shall not have the effect to bar another suit for the same cause, or any part thereof." ORS 18.250 provides:"When a judgment of nonsuit is given, the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause." | Except in instances of dismissal for lack of prosecution, there is no statutory authorization for judgments or orders of dismissal in law actions; statutory scheme indicates that, in equity, the correct terminology is dismissal and, in law, the correct terminology is nonsuit, voluntary or involuntary. ORS 18.210, 18.250. | "Except in instances of dismissal for lack of prosecution, is there a statutory authorization for judgments or orders of a dismissal in law actions?" | 026064.docx | LEGALEASE-00130641-LEGALEASE-00130642 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8333 | Ferber v. Brueckl, 322 Mo. 892 | 307A+501 | We have these further observations to make, however: It should be borne in mind that a discontinuance, generally speaking, is a failure to continue the case regularly from day to day and from term to term from the commencement of the suit until final judgment. Discontinuance results where there is a necessity of continuance to be promptly entered. The word "continuance" is defined by the lexicographers as an admission of postponement of action pending in court to a subsequent day or another term. It is not absolutely necessary to enter a continuance in every particular case; a general continuance of all cases undisposed of at the end of the term will prevent a discontinuance. It is only necessary that no disposition has been made of the case, and, where the cases undisposed of at the end of the term are continued by a general order, there is no discontinuance in any sense of the word. A voluntary discontinuance is a voluntary action on the part of plaintiff whereby his case goes out of court without a decision on the merits. Now, there can be no discontinuance, or, strictly speaking, involuntary discontinuance, where all cases on the docket are continued at the end of the term as being undisposed of. It may be that a litigant may not have a special order of continuance appearing of record of his particular case, and, if he had not sued out an alias summons, his case would still stand continued, if all the cases are continued by the court to the next term. | "Voluntary discontinuance" is voluntary action by plaintiff, whereby his case goes out of court without decision on merits. | "Is a ""voluntary discontinuance"" a voluntary action by a plaintiff, whereby his case goes out of court without a decision on merits?" | Pretrial Procedure - Memo # 1214 - C - MS.docx | ROSS-003286060-ROSS-003286061 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 8334 | Rumph v. Rister, 211 Ga. 312 | 307A+501 | The plaintiff in any action, in any court, may dismiss his action either in vacation or term time, if he shall not thereby prejudice any right of the defendant'. Code, " 3-510; Daniel v. Etheredge, 194 Ga. 860, 22 S.E.2d 807; Fender v. Hendley, 196 Ga. 512, 514, 26 S.E.2d 887; Spence v. Dyal, 202 Ga. 739, 44 S.E.2d 658; Trusco Finance Co. v. McGee, 206 Ga. 382, 57 S.E.2d 184. | Plaintiff in any action, in any court,may dismiss his action either in vacation or term time, if he shall not thereby prejudice any right of defendant. Code, S 3-510. | May a plaintiff in any action dismiss his action either in vacation or term time? | Pretrial Procedure - Memo # 1235 - C - UG.docx | ROSS-003327457 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 8335 | Butler v. Nat'l Live Stock Ins. Co., 200 Ill. App. 280 | 307A+501 | The plea states nothing as to the place of residence of the beneficial plaintiffs. The policy declared upon is for $1,500 and it showed that the beneficial plaintiffs held a mortgage upon said horse for $1,800 and that they are entitled to the entire amount of the policy if a recovery is had. The nominal plaintiff cannot arrest or discontinue the suit except on a failure of the beneficial plaintiff to secure him against liability for costs. Sumner v. Sleeth, 87 Ill. 500. The statute provides that if the nominal plaintiff dies, the suit does not abate nor survive to the legal heirs or representatives of the nominal plaintiff. The defendant may establish a set-off against the beneficial plaintiff. Rothschild v. Bruscke, 131 Ill. 265. If the beneficial plaintiff is a nonresident of the State, he can be compelled to give security for costs. Smith v. Robinson, 11 Ill. 119. The beneficial plaintiff may obtain a change of venue. Jenkins v. Pope, 93 Ill. 27. The beneficial plaintiff is a party to the suit. Boynton v. Phelps, 52 Ill. 210. In these and other cases he is called the real party plaintiff. The plea said nothing as to the residence of the beneficial plaintiffs. Section 7 of the Practice Act (J. & A. 8544) is as follows. | A nominal plaintiff cannot arrest or discontinue a suit except on failure of beneficial plaintiff to secure him against liability for costs. | Can a nominal plaintiff arrest or discontinue a suit except on failure of beneficial plaintiff to secure him against liability for costs? | Pretrial Procedure - Memo # 1238 - C - UG.docx | ROSS-003286981-ROSS-003286982 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8336 | Zanca v. Exhibition Contractors Co., 614 So. 2d 325 | 307A+747.1 | Pursuant to the provisions of La.C.C.P. art. 1551, a court has wide discretion to provide for implementation of a pre-trial order and to insure that the terms of the pre-trial order are enforced. The purpose of having a pre-trial order was explained in Gilcrease v. Gilcrease, 438 So.2d 658, 662 (La.App. 2 Cir.1983), writ denied, 442 So.2d 461 (La.1983), wherein our brethren of the Second Circuit stated: La.C.C.P. Art. 1551 outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice.... (cites omitted.) This need for an orderly disposition is particularly important in worker's compensation cases where the claimant has allegedly suffered injuries for which compensation may be sorely needed to offset lost income during a period of unemployment. For this reason, the same considerations underlying cases before a district court judge apply in worker's compensation cases. | Trial court has wide discretion to provide for implementation of pretrial order and to insure the terms of pretrial order are enforced. LSA-C.C.P. art. 1551. | Does the trial court have wide discretion to provide for implementation of pretrial order and to insure the terms of pretrial order are enforced? | Pretrial Procedure - Memo # 1585 - C - SB.docx | ROSS-003314057-ROSS-003314058 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8337 | Nentwig v. United Indus., 256 Mont. 134 | 307A+747.1 | Nentwig correctly points out that failure to raise an issue in the pretrial order may result in a waiver. Har-Win, Inc. v. Consolidated Grain & Barge Co. (5th Cir.1986), 794 F.2d 985; Miles v. Tennessee River Pulp & Paper Co. (11th Cir.1989), 862 F.2d 1525. The purpose of the pretrial order is to prevent surprise, simplify the issues, and permit the parties to prepare for trial. Bache v. Gilden (1992), 252 Mont. 178, 181-82, 827 P.2d 817, 819. However, this Court said in Bell v. Richards (1987), 228 Mont. 215, 217, 741 P.2d 788, 790, that the pretrial order "should be liberally construed to permit any issues at trial that are "embraced within its language.' " (Quoting Miller v. Safeco Title Ins. Co. (9th Cir.1985), 758 F.2d 364, 368.) But the theory or issue must be at least implicitly included in the pretrial order. United States v. First Nat'l Bank of Circle (9th Cir.1981), 652 F.2d 882, 886; ACORN v. City of Phoenix (9th Cir.1986), 798 F.2d 1260, 1272. | Purpose of pretrial order is to prevent surprise, simplify issues, and permit parties to prepare for trial. | "Is the purpose of a pretrial order to prevent surprise, simplify issues, and permit parties to prepare for trial?" | Pretrial Procedure - Memo # 1586 - C - SB.docx | ROSS-003286230-ROSS-003286231 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8338 | Norton Farms v. Anadarko Petroleum Corp., 32 Kan. App. 2d 899 | 307A+742.1 | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. See Herrell v. Maddux, 217 Kan. 192, 194- 95, 535 P.2d 935 (1975); Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970); Trimble, Administrator v. Coleman Co., Inc., 200 Kan. 350, 437 P.2d 219 (1968). Under these circumstances, we conclude that the district court did not abuse its discretion in denying the motion to amend the pretrial order. | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. | What is the essential purpose of a pretrial conference procedure? | Pretrial Procedure - Memo # 1647 - C - PB.docx | ROSS-003287679-ROSS-003287680 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 8339 | State ex rel. State Comp. Mut. Ins. Fund v. Berg, 279 Mont. 161 | 307A+743 | A party must set forth affirmatively any statute of limitations defense in pleading to a preceding pleading. Rule 8(c), M.R.Civ.P. A pretrial order entered pursuant to Rule 16(e), M.R.Civ.P., however, governs and controls the subsequent course of the lawsuit unless modified by a subsequent order. See Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; Naftco Leasing Ltd. v. Finalco, Inc. (1992), 254 Mont. 89, 93, 835 P.2d 728, 731. The purpose of pretrial orders is to prevent surprise, simplify the issues and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342 (citing Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 617 P.2d 1281). Failure to raise an issue or theory in the pretrial order may result in a waiver of that issue or theory. Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 138, 845 P.2d 99, 102. | Purpose of pretrial orders is to prevent surprise, simplify issues and permit counsel to prepare case for trial on basis of pretrial order. Rules Civ.Proc., Rule 16(e). | Is permitting counsel to prepare case for trial on basis of pretrial order the purpose of pretrial orders? | Pretrial Procedure - Memo # 1698 - C - DA.docx | ROSS-003287710-ROSS-003287711 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8340 | Velez v. Tuma, 283 Mich. App. 396 | 307A+749.1 | On January 26, 2004, plaintiff did file this case against defendant only. A pretrial order entered by the trial court on June 27, 2005, stated: "All dispositive dispositions and motions in limine are due by 10/01/05. Motions filed after that date will not be considered." On October 11, 2006"over a year after all dispositive motions were due"defendant filed his motion for summary disposition challenging, for the first time, the sufficiency of plaintiff's notice of intent that had been filed five years and seven months earlier. Noting the lengthy history of this case, as well as the deadline for motions set by a pretrial order, the trial court refused to hear the motion. Defendant does not address in what manner this decision allegedly constituted an abuse of discretion. See Kemerko Clawson, LLC v. RxIV Inc., 269 Mich.App. 347, 349, 711 N.W.2d 801 (2005). Under MCR 2.401(B)(2), a trial court has the authority to set deadlines for the filing of motions. The trial court also has the discretion to decline to consider motions filed after the deadline. Kemerko, supra. Defendant has not addressed and, thus has not established, grounds for reversal of the trial court's discretionary decision to decline to consider his very tardy motion for summary disposition. Thus, this issue is without merit. | A trial court has the authority to set deadlines in pretrial order for the filing of motions, and trial court also has the discretion to decline to consider motions filed after the deadline. MCR 2.401(B)(2). | Does a trial court have the authority to set deadlines in pretrial order for the filing of motions? | 026849.docx | LEGALEASE-00130887-LEGALEASE-00130888 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8341 | Kallgren v. Chadwick, 134 N.H. 110 | 307A+747.1 | In the instant case, however, there was no surprise which left the plaintiff unable to establish the underlying facts of his case. The record clearly shows that the plaintiff did not rely on the stipulated facts, but entered his case in chief with all the relevant facts regarding the fall. We note in passing, however, that the purpose of the pretrial statement is to apprise the parties and the court, unambiguously and accurately, of all uncontested and contested facts. The defendants' reference to "alleged" facts in the uncontested facts section of the pretrial statement could potentially be misunderstood. Although we find no prejudice to the defendant in this particular instance, we take this opportunity to note an attorney's duty to submit properly completed pretrial statements. | Purpose of pretrial statement is to apprise parties and court, unambiguously and accurately, of all uncontested and contested facts. | "Is the purpose of a pretrial statement to apprise parties and the court, unambiguously and accurately, of all uncontested and contested facts?" | Pretrial Procedure - Memo # 1786 - SKG.docx | ROSS-003286353-ROSS-003286354 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8342 | Parker v. S. Farm Bureau Cas. Ins. Co., 326 Ark. 1073 | 30+3315 | Parker is correct in his assertion that in cases where the appellant is relegated to having to prove his claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. Marrow v. State Farm Ins. Co., 264 Ark. 227, 570 S.W.2d 607 (1978). We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. Id. The goal of discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. Id. | Where party is relegated to having to prove his claim by documents, papers, and letters kept by opposing party, scope of discovery should be broader; that factor is to be considered in deciding whether there has been abuse of discretion in denying discovery request. | "Where party is relegated to having to prove his claim by documents, papers, and letters kept by opposing party, should the scope of discovery be broader?" | Pretrial Procedure - Memo # 2019 - C - SKG.docx | ROSS-003301541-ROSS-003301542 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8343 | Citizens' Tr. Co. of Utica v. R. Prescott & Son, 221 A.D. 420 | 307A+331 | The notice recites that plaintiff will be required to produce on the examination certain records, books, documents, and securities, and with it there was also served a subpoena duces tecum for their production. This portion of the notice was stricken out by the justice before whom the motion was heard, who also vacated and set aside the subpoena. The correctness of this decision is not seriously questioned by appellant nor do we think it can be. Section 288 of the Civil Practice Act and title 15 of the Rules of Civil Practice, under the authority of which the proceeding is taken, go no further than to provide for the taking of necessary and material testimony of parties and witnesses. Proceedings for the discovery of books, documents, other papers, and property are separate and apart from that for examination of parties and witnesses. Civil Practice Act, " 296; Civil Practice Act, " 322 et seq.; Rules of Civil Practice, 140 et seq.; New York City Car Advertising Co. v. E. Regensburg & Sons, 205 App. Div. 705, 200 N. Y. S. 152. | Under Civil Practice Act, SS 288, 296, 322 et seq., and Rules of Civil Practice, rules 120-133, 140 et seq., proceedings for discovery of books, documents, other papers and property are separate and apart from proceedings for examination of parties and witnesses. | "Are proceedings for discovery of books, documents, other papers and property separate and apart from proceedings for examination of parties and witnesses?" | Pretrial Procedure - Memo # 2041 - C - VP.docx | ROSS-003287345-ROSS-003287346 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 8344 | People ex rel. v. W. Mfrs.' Mut. Ins. Co., 40 Ill. App. 428 | 307A+331 | Nakedly, by itself, that section is broad enough to confer upon the courts the power to compel the production of the books, but it does not require the courts to exercise the power in all cases, even if they are in form civil cases. "As a rule exposition statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the Legislature intended to make any innovation upon the common law further than the case absolutely required." Smith v. Laatsch, 114 Ill. 271, quoted there from Potter's Dwarris on Statutes. The design of the statute was to "obviate the necessity of a bill of discovery, seeking the same end." Lester v. People, 23 N. E. Rep. 387. | Generally exposition statutes are to be construed in reference to the principles of the common law, since it is not to be presumed that the legislature intended to make any innovation on the common law further than the case absolutely required. | Are exposition statutes to be construed in reference to the principles of the common law? | Pretrial Procedure - Memo # 2072- C - KG.docx | ROSS-003288084-ROSS-003288086 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8345 | Stringer v. Packaging Corp. of Am., 351 Ill. App. 3d 1135 | 307A+331 | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. Shimanovsky, 181 Ill.2d at 121"22, 229 Ill.Dec. 513, 692 N.E.2d at 290. In a strict-products-liability case, the preservation of the allegedly defective product is important to both the proof and the defense of the case. Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co., 262 Ill.App.3d 636, 641, 199 Ill.Dec. 965, 634 N.E.2d 1319, 1323 (1994); see American Family Insurance Co. v. Village Pontiac"GMC, Inc., 223 Ill.App.3d 624, 627, 166 Ill.Dec. 93, 585 N.E.2d 1115, 1118 (1992) (the physical object in the same condition as it was immediately following an accident may be far more instructive and persuasive to a jury than oral descriptions or photographs). However, if evidence is destroyed, altered, or lost, a defendant is not automatically entitled to a specific sanction. Shimanovsky, 181 Ill.2d at 127, 229 Ill.Dec. 513, 692 N.E.2d at 292. Instead, the trial court should consider the particular factual circumstances of the case to determine what, if any, sanction is appropriate. Shimanovsky, 181 Ill.2d at 127, 229 Ill.Dec. 513, 692 N.E.2d at 292"93. An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. Shimanovsky, 181 Ill.2d at 123, 229 Ill.Dec. 513, 692 N.E.2d at 291. | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Do potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence? | 027391.docx | LEGALEASE-00131054-LEGALEASE-00131055 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8346 | Econ. Fire & Cas. Co. v. Warren, 71 Ill. App. 3d 625 | 307A+715 | The defendants final argument is that the trial court erred in denying William Warren's motion for a continuance. Trial courts have broad discretion in granting or denying motions for continuances, and unless there is a manifest abuse of discretion or a palpable injustice apparent in the record on appeal, the judgment of the lower court will not be disturbed. (Needy v. Sparks (1977), 51 Ill.App.3d 350, 9 Ill.Dec. 70, 366 N.E.2d 327.) A motion for a continuance on the ground of ill health of one of two party defendants is insufficient where there is no showing that his absence from trial jeopardized his case. (Westlake v. Moffitt (1975), 30 Ill.App.3d 597, 334 N.E.2d 198.) Here, the record shows that the plaintiff accepted the defendant William Warren's stipulation that he knew nothing about the source of the fire and that he had no discussion with his wife about it. The trial court found that the presence of William Warren was not necessary to properly defend the cause. We cannot disagree with this assessment. | Motion for continuance on ground of ill health of one of two party defendants is insufficient if there is no showing that party's absence from trial jeopardized his case. | Is a motion for continuance insufficient where there is no showing that absence of witness would jeopardize case? | 027402.docx | LEGALEASE-00131203-LEGALEASE-00131204 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8347 | Black & White Cabs of St. Louis v. Smith, 370 S.W.2d 669 | 307A+352 | The purpose of Civil Rule 58.01 is to make relevant, non-privileged documents, papers and records in possession of one party available to the other, and thus to expedite the trial of cases. Civil Rule 57.01(b) describes the scope of the examination at the taking of a deposition, and by reference is to be read in conjunction with the provisions of Rule 58.01 and controls the scope of discovery and production of documents, papers and records called for under said Rule 58.01. Therefore, the right of discovery under Rule 58.01 is as broad as the scope of examination permitted by Rule 57.01(b). The right of discovery, therefore, under Rule 58.01 is limited to matter not privileged which is relevant to the contract involved in the instant action, with the proviso, that the fact that the material sought to be inspected will be inadmissible at the trial is no ground for objection if the matter sought to be discovered appears reasonably calculated to lead to the discovery of admissible evidence. Therefore, it is encumbent on the trial court to find, before it grants the discovery, that the matter sought to be produced and inspected is relevant to the contract in this action and appears reasonably calculated to lead to the discovery of admissible evidence. Documents and records that would not aid in the discovery of admissible evidence are not within the scope of the examination permitted under subdivision (b) of Rule 57.01. | Purpose of rule authorizing discovery is to make relevant, nonprivileged documents, papers and records in possession of one party available to the other, but the right of discovery is limited to matter not privileged but relevant to subject matter of the litigation. V.A.M.R. Civil Rules 57.01(b), 58.01. | Is the purpose of a statute with respect to production of documents to make relevant and nonprivileged documents in the possession of one party available to the other? | Pretrial Procedure - Memo # 2179 - C - AP.docx | LEGALEASE-00021032-LEGALEASE-00021033 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8348 | Linton v. Jones, 462 S.W.2d 636 | 30+3239 | It is a well settled rule that the matter of granting or refusing a continuance is generally addressed to the sound discretion of the trial court, and the order of the trial court will not be disturbed on appeal unless there was an abuse of discretion. Rules 251, 252, Texas Rules of Civil Procedure; Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963); Foster v. Texas Department of Public Safety, 443 S.W.2d 66 (Tex.Civ.App., San Antonio, 1969, n.w.h.). | Matter of granting or refusing a continuance is generally addressed to sound discretion of trial court, and an order of the trial court will not be disturbed on appeal unless there was an abuse of discretion. Rules of Civil Procedure, rules 251, 252. | Is a motion for continuance for want of testimony addressed to the trial court's sound discretion? | Pretrial Procedure - Memo # 2185 - C - AP.docx | ROSS-003300863-ROSS-003300864 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 8349 | Seibert v. Sears, Roebuck & Co., 45 Cal. App. 3d 1 | 307A+749.1 | This transformation came about, however, with the concurrence and participation of the parties at the pretrial conference and later. Although the complaints sought the recovery of money and injunctive relief only, they necessarily challenged the validity of the previous balance method under the Unruh Act; as the issues were joined by the various answers, the existence of a "controversy" on this subject was made to appear. In any event, a pretrial conference order controls the subsequent course of an action even where it is inconsistent with the pleadings therein (4 Witkin, Procedure (op. cit. supra) Trial, s 66, pp. 2902"2903), and the present record clearly indicates that the liability phase of the consolidated actions was tried upon the theory that a declaratory judgment would result. (See Id., s 70, p. 2906.) For all these reasons, the court properly tried the seven cases as actions for declaratory relief and properly entered a declaratory judgment. | Pretrial conference order controls subsequent course of an action even where it is inconsistent with pleadings therein. | Does a pretrial conference order control a subsequent course of an action even where it is inconsistent with pleadings therein? | 027537.docx | LEGALEASE-00130861-LEGALEASE-00130862 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8350 | Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519 | 220+3064 | A tax on going without health insurance does not fall within any recognized category of direct tax. It is not a capitation. Capitations are taxes paid by every person, "without regard to property, profession, or any other circumstance." Hylton, supra, at 175 (opinion of Chase, J.) (emphasis altered). The whole point of the shared responsibility payment is that it is triggered by specific circumstances-earning a certain amount of income but not obtaining health insurance. The payment is also plainly not a tax on the ownership of land or personal property. The shared responsibility payment is thus not a direct tax that must be apportioned among the several States. | The shared responsibility payment, a tax imposed under the Patient Protection and Affordable Care Act (PPACA) on those without health insurance, was not a "direct tax," within the meaning of the Direct Tax Clause, which requires a direct tax to be apportioned so that each State pays in proportion to its population; it was not a tax paid by every person, without regard to property, profession, or any other circumstance, because the whole point of the shared responsibility payment was that it is triggered by specific circumstances, i.e., earning a certain amount of income but not obtaining health insurance, nor was the shared responsibility payment a tax on the ownership of land or personal property. U.S.C.A. Const. Art. 1, S 9, cl. 4; 26 U.S.C.A. S 5000A(b). | What are capitations under the taxation law? | Taxation - Memo # 110 - C - CK.docx | ROSS-003300248-ROSS-003300249 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 8351 | Grace v. St. Louis Cty., No. ED94746, 2011 WL 1660653 | 371+2001 | Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs." Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 875 (Mo. banc 1960) (quotations omitted). "Taxes are not payments for a special privilege or a special service rendered." Leggett, 342 S.W.2d at 875 (quotations omitted). "Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes, unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures, rather than compensation of public officers for particular services rendered." Id. (internal quotations omitted); see also President Riverboat Casino-Missouri, Inc., v. Missouri Gaming Commission, 13 635, 638 (Mo. banc 2000) (Supreme Court found admission fees gambling boat operators paid directly to the State, which were deposited into the State's general revenue fund, were taxes under definition in Leggett ). | "Taxes" are proportional contributions imposed by the state upon individuals for the support of government and for all public needs; taxes are not payments for a special privilege or a special service rendered. | Are taxes proportional contributions imposed by the state upon individuals for the support of government and for all public needs? | Taxation - Memo # 113 - C - CK.docx | ROSS-003290518-ROSS-003290519 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8352 | Taylor v. Gehner, 329 Mo. 511 | 371+2001 | : Taxes are proportional contributions imposed by the state upon individuals for the support of government and for all public needs. The power to tax is no granted by the Constitution; it is inherent in the Legislature. There are no restrictions or lmitations upon the power, except such as are expressly imposed by the State and Federal Constitutions. Section 33, article 6 of the Constituton does not fall within that category. It was never designed or intended to be a limitation upon the taxing power. These propositions are so obvious that elaboration is unnecessary . | "Taxes" are proportional contributions imposed by the state upon individuals for the support of government and for all public needs. | Are taxes proportional contributions imposed by the state upon individuals for the support of government and for all public needs? | 044607.docx | LEGALEASE-00131066-LEGALEASE-00131067 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8353 | Weisblat v. City of San Diego, 176 Cal. App. 4th 1022 | 371+2001 | Proposition 218 defines a "special tax" as "any tax imposed for specific purposes," even if the proceeds are placed into a general fund. (Art. 13C, " 1, subd. (d); see Bay Area Cellular, supra, 162 Cal.App.4th at p. 696, 75 Cal. 839.) "[A] tax is special whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which [the] revenues may be spent." (City of Roseville, supra, 106 Cal.App.4th at p. 1185, 132 Cal.Rptr.2d 1.) Under Proposition 218, "[n]o local government may impose, extend, or increase any special tax" until the matter is "submitted to the electorate and approved by a two-thirds vote." (Art. 13C, " 2, subd. (d).) Under Proposition 218, "[c]ertain kinds of impositions for specific purposes, however, are treated not as special taxes subject to the voter approval requirements but as fees not subject to those requirements." (Bay Area Cellular, supra, 162 Cal.App.4th at p. 693, 75 Cal.Rptr.3d 839; see also " 50076 (discussed, ante ).) | A tax is a "special tax" whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which the revenues may be spent. | "Is a tax a ""special tax"" whenever expenditure of its revenues is limited to specific purposes?" | Taxation - Memo # 116 - C - CK.docx | ROSS-003314602-ROSS-003314603 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8354 | NetJets Aviation v. Guillory, 207 Cal. App. 4th 26 | 371+2013 | "Every system of taxation consists of two parts: (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection. The former is a legislative function; the latter is mere machinery, and is delegable to other than governmental agencies. [Citation.] The legislative powers include the selection of the property to be taxed, the determination of the basis for the measurement of the tax, and the definition of the purpose for which the tax shall be levied. [Citation.] On the other hand, powers which are not legislative include the power to value property for taxation pursuant to fixed rules, the power to extend, assess, and collect the taxes, and the power to perform any of the innumerable details of computation, appraisement, and adjustment. [Citation.]" (Gadd v. McGuire (1924) 69 Cal.App. 347, 364"365, 231 P. 754.). | Every system of taxation consists of two parts, which are (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection; the former is a legislative function, while the latter is mere machinery, and is delegable to other than governmental agencies. | "Are elements which enter into the imposition of tax, a part of every system of taxation?" | 044771.docx | LEGALEASE-00131008-LEGALEASE-00131009 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8355 | In re Olde Florida Investments, Ltd., 272 B.R. 779 | 371+2001 | While the interpretation and construction of the term "tax" by Florida courts is not governing, it is illustrative. Florida courts long recognize the distinction between taxes and special assessments as set forth in the case of Klemm v. Davenport, 100 Fla. 627, 129 So. 904 (1930). In Klemm, the Florida Supreme Court stated: A "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A "special assessment" is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that a portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially. | Under Florida law, a "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. | Is tax a burden imposed by a sovereign right? | Taxation - Memo # 80 - C - SU.docx | ROSS-003301985-ROSS-003301986 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8356 | City of Orlando v. State, 67 So. 2d 673 | 268+438 | We think it plain, under the rule laid down in the above cited cases, that obligations secured solely by special assessments do not come within the prohibition of Article IX, Section 6 of our Constitution, since, historically, a pledge of special assessments has never been considered to be a "pledge of the taxing power." Cooley on Taxation (3rd Ed.), Vol. 2, p. 1153. Certainly the law in this state is settled that "an ad valorem tax and special assessment, though cognate in immaterial respects, are inherently different in their controlling aspects'. Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 908, 70 A.L.R. 156. "A "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A "special assessment" is like a tax in that it is an enforced contribution from the property owner but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially.' 100 Fla. at page 631, 129 So. at page 907. See also Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629; Whisnant v. Stringfellow, Fla., 50 So.2d 885. | A "special assessment" is an enforced contribution imposed upon theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of property against which it is imposed as a result of improvement made with proceeds of special assessment. | Is tax a burden imposed by a sovereign right? | 045821.docx | LEGALEASE-00130489-LEGALEASE-00130490 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8357 | Clean Water Coal. v. The M Resort, 127 Nev. 301 | 371+2001 | This court has not addressed whether user fees collected for capital improvement projects and sewer services are transformed into a tax through a subsequent law directing their transfer into the State's general fund, but it has addressed the issue of whether an ordinance exacting a fee from subdivision contractors for purposes of supporting county school capital improvements was properly characterized as a regulatory measure or a tax. Douglas Co. Contractors v. Douglas Co., 112 Nev. 1452, 1459, 929 P.2d 253, 257 (1996). In that case, looking at the ordinance's "true purpose" to determine whether it was regulatory or revenue-raising, the court reasoned that the ordinance that implemented the "fair share cost" (FSC) program was being utilized to benefit the entire county rather than the new subdivision against which the fee was assessed. Id. It then concluded that "any regulatory features of the FSC are incidental to its true purpose"to raise revenue to finance construction benefitting the County at large and not simply the subdivision at issue." Id. Since the FSC was "clothed with the indicia of a tax rather than a regulatory measure," this court held that the FSC program was an impermissible tax. Id. at 1459, 929 P.2d at 257"58. In so doing, this court explained that " "when it appears from the Act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure." " Id. at 1457, 229 P.2d at 256 (quoting Eastern Diversified v. Montgomery County, 319 Md. 45, 570 A.2d 850, 854 (1990)). | When it appears from a legislative act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a "revenue measure." | "Is the enactment a ""revenue measure"" when it appears from a legislative act itself that revenue is its main objective, and the amount of the tax supports that theory?" | 046096.docx | LEGALEASE-00130723-LEGALEASE-00130725 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8358 | Rehart v. Clark, 448 F.2d 170 | 34+2 | Not only does Section 5539(a) authorize extension of enlistment agreements under regulations prescribed by the Secretary of the Navy with the approval of the President, but Section 6011 of Title 10, United States Code, also provides specifically: "United States Navy Regulations shall be issued by the Secretary of the Navy with the approval of the President." The regulations so issued have the force of law. Cafeteria & Restaurant Workers Union, Local 473, A. F.L.-C.I.O. v. McElroy, 367 U.S. 886, 81 S.Ct. 1473, 6 L.Ed.2d 1230 (1961). | United States navy regulations issued by Secretary of Navy with approval of President have force of law. 10 U.S.C.A. SS 5539(a), 6011. | Will United States Navy regulations issued by the Secretary of the Navy with approval of President have the force of law? | 008888.docx | LEGALEASE-00132401-LEGALEASE-00132402 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 8359 | Standard Oil Co. of California v. Johnson, 316 U.S. 481 | 34+28(1) | On July 25, 1895, the Secretary of War, under authority of Congressional enactments3 promulgated regulations providing for the establishment of post exchanges.4 These regulations have since been amended from time to time and the exchange has become a regular feature of Army posts. That the establishment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for authorized War Department regulations have the force of law. | That the establishment and control of army post exchanges have been in accordance with War Department regulations, rather than specific statutory directions, does not alter their status as "arms of the government", since authorized War Department regulations have the force of "law". Act July 15, 1870, 16 Stat. 315, 319; Act March 1, 1875, 18 Stat. 337. | Do War Department regulations have the force of law? | 008899.docx | LEGALEASE-00132413-LEGALEASE-00132414 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 8360 | Thomas v. United States, 122 Fed. Cl. 53 | 34+3(1) | In arguing that the Army Corps' actions were arbitrary, capricious, and not based on law, Mr. Thomas must overcome a high hurdle. "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993). The plaintiff bears the burden of overcoming the " "strong, but rebuttable, presumption" that the military discharges its duties "correctly, lawfully, and in good faith." " Bernard v. United States, 59 Fed.Cl. 497, 501 (quoting Hary v. United States, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980) (citations omitted)), aff'd, 98 Fed.Appx. 860 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); see *69 also Spellissy v. United States, 103 Fed.Cl. 274, 283 (2012); Boyle v. United States, 101 Fed.Cl. 592, 596 (2011) (citing Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003)). | Military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs. | Are military administrators presumed to act lawfully and in good faith? | 008910.docx | LEGALEASE-00132429-LEGALEASE-00132430 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8361 | Smith v. United States, 114 Fed. Cl. 691 | 34+5(8) | The court may review a military decision when the plaintiff argues that the military did not comply with a governing statute or regulation. See Roth v. United States, 378 F.3d 1371, 1385 (Fed.Cir.2004). But, plaintiff's claim must be justiciable. That is, it must be within the competency of the court to decide the issue, and there must be "tests or standards" that inform the court of the measure against which the conduct of the military is to be evaluated. See Murphy v. United States, 993 F.2d 871, 873 (Fed.Cir. (citing Sargisson v. United States, 913 F.2d 918, 922 (Fed.Cir.1990)). | Court of Federal Claims may review a military decision when the plaintiff argues that the military did not comply with a governing statute or regulation; however, plaintiff's claim must be "justiciable," that is, it must be within the competency of the court to decide the issue, and there must be tests or standards that inform the court of the measure against which the conduct of the military is to be evaluated. | Can courts review military decisions when the military did not comply with a governing statute or regulation? | Armed Services - Memo 70 - RK.docx | ROSS-003287322-ROSS-003287323 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 8362 | Eisenhuth v. United States, 59 Fed. Cl. 460 | 34+3(1) | The Federal Circuit has stated that "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." Adkins v. United States, 68 F.3d 1317, 1322 (Fed.Cir.1995); see also Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service."); Murphy v. United States, 993 F.2d 871, 874 (Fed.Cir.1993) ( "[T]he merits of the Air Force's decision to release [this officer] from active duty are beyond judicial reach."). Although the court cannot review "the merits of a decision committed wholly to the discretion of the military," it may review "a challenge to the particular procedure followed in rendering a military decision." Adkins, 68 F.3d at 1323; see also Murphy, 993 F.2d at 873 (stating that a court may determine whether the procedures followed comport with the statutory or regulatory standard). The case law informs that "military administrators [are presumed to] "discharge their duties correctly, lawfully, and in good faith." " King v. United States, 19 Cl.Ct. 703, 705 (quoting Sanders v. United States, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979)) aff'd, 918 F.2d 186 (Fed.Cir.1990) (unpublished table decision). | Although the Court of Federal Claims cannot review the merits of a decision committed wholly to the discretion of the military, it may review a challenge to the particular procedure followed in rendering a military decision. | Can the merits of a decision committed wholly to the discretion of the military be subjected to judicial review? | 008923.docx | LEGALEASE-00132443-LEGALEASE-00132444 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8363 | Allen v. Devon Energy Holdings, 367 S.W.3d 355 | 289+1145 | Partners in a general partnership owe each other a fiduciary duty. M.R. Champion v. Mizell, 904 S.W.2d 617, 618 (Tex.1995); Gregan, 355 S.W.3d at 227"28. Similarly, a general partner in a limited partnership owes a fiduciary duty to the limited partners because of its control over the entity. Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.); Johnson v. J. Hiram Moore, Ltd., 763 S.W.2d 496, 499 (Tex.App.-Austin 1988, writ denied); McBeth v. Carpenter, 565 F.3d 171, 177 (5th Cir.2009); see also In re Harwood, 637 F.3d 615, 621 (5th Cir.2011) ("under Texas law, "the issue of control has always been the critical fact looked to by the courts' in determining whether to impose fiduciary responsibilities on individuals ...") (quoting Matter of Bennett, 989 F.2d 779, 789 (5th Cir.1993), opinion amended on reh'g, No. 91"1059, 1993 WL 268299 (5th Cir. July 15, 1993)). And we recently concluded that when a limited partner exercises control over the entity's operating affairs, he will also owe a fiduciary duty to the other limited partners. Strebel v. Wimberly, """ S.W.3d """", """", 2012 WL 112253 (Tex.App.-Houston [1st Dist.] 2012). While a limited partner does not normally owe a fiduciary duty, such a duty "spring[s] into existence when a limited partner ... wearing a different hat, exerts operating control over the affairs of the limited partnership." Id. at """". | While a limited partner does not normally owe a fiduciary duty, such a duty springs into existence when a limited partner, wearing a different hat, exerts operating control over the affairs of the limited partnership. | Does a limited partner owe a fiduciary duty in the partnership? | 022203.docx | LEGALEASE-00132473-LEGALEASE-00132474 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 8364 | Stroock & Stroock & Lavan v. Beltramini, 157 A.D.2d 590 | 302+236(1) | In this action to recover legal fees, defendant sought leave to interpose a defense asserting lack of personal jurisdiction and counterclaims for legal malpractice and abuse of process. While, as Supreme Court recognized, leave to amend a pleading is freely granted as a matter of discretion in the absence of prejudice or surprise (Loomis v. Civetta Corinno Constr. Corp., 54 N.Y.2d 18, 444 N.Y.S.2d 571, 429 N.E.2d 90; Fahey v. County of Ontario, 44 N.Y.2d 934, 408 N.Y.S.2d 314, 380 N.E.2d 146) leave may not be granted where the amended pleading plainly fails to state a cause of action and, thus, lacks merit (Thomas Crimmins Contracting Co. v. City of New York, 74 N.Y.2d 166, 544 N.Y.S.2d 580, 542 N.E.2d 1097; Daniels v. Empire-Orr, Inc., 151 A.D.2d 370, 542 N.Y.S.2d 614). | Leave to amend a pleading is freely granted as matter of discretion in the absence of prejudice or surprise, but leave may not be granted where the amended pleading fails to state a cause of action. | Will leave to amend be denied where the pleading fails to state a cause of action? | Pleading - Memo 266 - RMM.docx | ROSS-003287402-ROSS-003287403 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 8365 | DiSanto v. City of Warrenville, 59 Ill. App. 3d 931 | 184+50 | The allegations in this count primarily reduce to a charge that the city paid an excessive price but no claim of bribery or self dealing is made. It is axiomatic, of course, that general conclusions of fraud are not sufficient in a pleading and that fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. (See, e. g., Carroll v. Caldwell, 12 Ill.2d 487, 494, 147 N.E.2d 69 (1958); Browning v. Heritage Insurance Co., 33 Ill.App.3d 943, 948, 338 N.E.2d 912 (1975) .) It is true that inadequacy of consideration when very gross can amount in itself to a proof of fraud. (Schwarz v. Reznick, 257 Ill. 479, 485, 100 N.E. 900 (1913).) However, on the basis of the allegations in the complaint we conclude that facts are not pleaded from which fraud is the necessary or probable inference since the disparity of price between that suggested by the city's management consultant and that actually offered by the city is not so gross as to give rise to a reasonable inference of fraud. | General conclusions of fraud are not sufficient in a pleading and fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. | Must fraud be shown from allegations of facts from which it is a necessary or probable inference? | 023214.docx | LEGALEASE-00132031-LEGALEASE-00132032 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8366 | Stringer v. Packaging Corp. of Am., 351 Ill. App. 3d 1135 | 307A+331 | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. Shimanovsky, 181 Ill.2d at 121"22, 229 Ill.Dec. 513, 692 N.E.2d at 290. In a strict-products-liability case, the preservation of the allegedly defective product is important to both the proof and the defense of the case. Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co., 262 Ill.App.3d 636, 641, 199 Ill.Dec. 965, 634 N.E.2d 1319, 1323 (1994); see American Family Insurance Co. v. Village Pontiac"GMC, Inc., 223 Ill.App.3d 624, 627, 166 Ill.Dec. 93, 585 N.E.2d 1115, 1118 (1992) (the physical object in the same condition as it was immediately following an accident may be far more instructive and persuasive to a jury than oral descriptions or photographs). However, if evidence is destroyed, altered, or lost, a defendant is not automatically entitled to a specific sanction. Shimanovsky, 181 Ill.2d at 127, 229 Ill.Dec. 513, 692 N.E.2d at 292. Instead, the trial court should consider the particular factual circumstances of the case to determine what, if any, sanction is appropriate. Shimanovsky, 181 Ill.2d at 127, 229 Ill.Dec. 513, 692 N.E.2d at 292"93. An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. Shimanovsky, 181 Ill.2d at 123, 229 Ill.Dec. 513, 692 N.E.2d at 291. | Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence. | Does a potential litigant have a duty to take reasonable measures to preserve the integrity of relevant and material evidence? | 027414.docx | LEGALEASE-00131528-LEGALEASE-00131529 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8367 | Yeager v. Schulze, Phillips & Chase, 173 Ohio App. 3d 466 | 307A+517.1 | Although case No. 2005-Ohio-0299 is not before us on appeal, the trial courtnever dismissed the case, and therefore, Yeager's voluntary dismissal, filed on November 23, 2005, was effective. A plaintiff has an absolute right to file one dismissal under Civ.R. 41(A)(1)(a), and when the plaintiff does so, the case is dismissed without prejudice, unless otherwise indicated, and the trial court is divested of jurisdiction. See Olynyk v. Scoles, 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254. As discussed above, Yeager filed his complaint in case No. 2005-CV-0299 within the applicable statute of limitations. Once he dismissed the case pursuant to Civ.R. 41(A)(1)(a), the saving statute allowed him an additional year from the date of dismissal in which to refile his complaint, which he did, in case No. 2006-Accordingly, the trial court erred when it granted appellees' motion to dismiss anddismissed Yeager's case with prejudice. | A plaintiff has an absolute right to file one voluntary dismissal under applicable rule, and when the plaintiff does so, the case is dismissed without prejudice, unless otherwise indicated, and the trial court is divested of jurisdiction. Rules Civ.Proc., Rule 41(A)(1)(a). | "Are court-ordered voluntary dismissals unless otherwise stated, without prejudice?" | Pretrial Procedure - Memo # 2244 - C - SKG.docx | ROSS-003287438-ROSS-003287439 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8368 | Trent v. Franco, 253 Ga. App. 104 | 307A+517.1 | The trial court granted Franco's motion to dismiss Trent's renewal action because of the alleged failure to effect proper service of the original complaint on her mother as required by OCGA 9"11"4 (d) (3). In that regard, the renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits. The "privilege" of dismissal and renewal does not apply to cases decided on their merits or to void cases, but does allow renewal if the previous action was merely voidable. The original suit is void if service was never perfected, since the filing of a complaint without perfecting service does not constitute a pending suit. A suit is also void and incapable of renewal under OCGA 9"2"61(a) if there has been a judicial determination that dismissal is authorized. However, unless and until the trial court enters an order dismissing a valid action, it is merely voidable and not void. | The renewal statute is remedial in nature, and it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits. O.C.G.A. S 9-2-61. | Is the renewal statute construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits? | 027751.docx | LEGALEASE-00131969-LEGALEASE-00131970 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8369 | Dye, v. Missouri Dep't of Soc. Servs., 476 S.W.3d 359 | 307A+517.1 | Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court anytime ... [i]n cases tried without a jury, prior to the introduction of evidence at the trial." "A voluntary dismissal is effective on the date it is filed with the court." State ex rel. Frets v. Moore, 291 S.W.3d 805, 812 (Mo.App.S.D.2009) (internal citation omitted). "Consequently, a trial court loses jurisdiction to enter any subsequent orders regarding the dismissed action." Id. "The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity." Id. Thus, the dispositive question presented in this case is whether the Appellants' motion to dismiss was filed "prior to the introduction of evidence at the trial." We conclude that it was not. | After a voluntary dismissal is filed, the circuit court may take no further steps as to the dismissed action, and any step attempted is viewed as a nullity. Mo. Sup. Ct. R. 67.02(a). | "After a voluntary dismissal is filed, may the circuit court take no further steps as to the dismissed action, and any step attempted is viewed as a nullity?" | Pretrial Procedure - Memo # 2340 - C - KG.docx | LEGALEASE-00021897-LEGALEASE-00021898 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8370 | Gallagher Bassett Servs. v. Phillips, 991 So. 2d 697 | 307A+517.1 | Gallagher does not address Greene; thus, it offers no reason why the result should be different under these facts. Rule 41(a)(1), Ala. R. Civ. P., provides, in pertinent part: "Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of this state, an action may be dismissed by the plaintiff without order of court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action." (Emphasis added.) "Rule 41(a)(1) affords the trial court no discretion." Ex parte Sealy, L.L.C., 904 So.2d 1230, 1235 (Ala.2004). " "The entry of such a stipulation of dismissal is effective automatically and does not require judicial approval." " Hammond v. Brooks, 516 So.2d 614, 616 (Ala.1987) (quoting First Nat'l Bank of Toms River, N.J. v. Marine City, Inc., 411 F.2d 674 (3d Cir.1969)) (emphasis added). " "[T]he effect of a voluntary dismissal ... is to render the proceedings a nullity and leave the parties as if the action had never been brought." " Ex parte Sealy, 904 So.2d at 1236 (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir.1977))(emphasis added). | The effect of a voluntary dismissal of an action is to render the proceedings a nullity and leave the parties as if the action had never been brought. Rules Civ.Proc., Rule 41(a)(1). | Is the effect of a voluntary dismissal of an action to render the proceedings a nullity and leave the parties as if the action had never been brought? | Pretrial Procedure - Memo # 2351 - C - KG.docx | ROSS-003327953-ROSS-003327954 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8371 | Atkins v. Atkins, 177 Cal. App. 2d 207 | 307A+749.1 | The pretrial order when filed becomes part of the record and controls the subsequent course of the case, even where inconsistent with the pleadings, unless modified. Rule 8.8. We do not believe that it was intended that the pretrial order should do away with the power of the trial court to permit amendments to conform to the proof.Justice may sometimes require that the effect of a pretrial order be not so restrictive even when the order is not modified. Such was the holding in Solomon v. Goldberg, 11 N.J.Super. 69, 78 A.2d 118. Here there is substantial evidence to support the trial court's finding and the judgment that the plaintiffs transferred the property in question as security for an indebtedness due defendant. The testimony given by the appellant himself would and does amply support such a finding. Under such conditions it may not be said that he has been misled or prejudiced. Under appellant's contention respondents should not have been allowed to change their theory to one which the evidence showed they should have adopted in the first instance. In Sand v. Concrete Service Co., 176 Cal.App.2d 169, 1 Cal.Rptr. 247, at page 259, the court said:"* * * In thus arguing we believe that appellants take too narrow a view of the function of the trial court. The basic purpose of our legal system is to do justice between the parties under established legal principles. The trial judge should be more than an umpire deciding which party has succeeded under the ground rules fixed by opposing counsel for the playing of a game. If he reaches the conclusion from the evidence that an attorney for one party has misconceived the basic rights of his client under the facts which he finds to be true he has not only the right, but the duty, to decide the case in accordance with such findings. All that fairness requires is that the new theory, which the judge decides is the correct one, be disclosed to the opposing party so that he may have a full opportunity to meet it. * | Pretrial order determining issues did not do away with power of trial court to permit amendments to conform to proof. | Does a pretrial order determining issues do away with power of a trial court to permit amendments to conform to proof? | 027802.docx | LEGALEASE-00132008-LEGALEASE-00132009 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 8372 | De Stackelberg v. Lamb Transp. Co., 168 Cal. App. 2d 174 | 307A+749.1 | These arguments are unavailing in the instant case for two reasons. In the first place, Robinson was clearly identified and designated as a party defendant in the consolidated actions by the terms of the pre-trial conference order, which is a part of the record herein. The pre-trial conference order supersedes the pleadings to the extent of any inconsistencies and controls the subsequent course of the case. Rules for the Superior Courts, rule 8.8; Baird v. Hodson, 161 Cal.App.2d 687, 327 P.2d 215. In the second place, the complaints of all four plaintiffs named Robinson and stated primary causes of action against him; two of them joined him as a defendant. Certainly he was a proper party, and it would seem unquestionable that Lamb could have compelled his joinder as a "conditionally necessary party" under the provisions of section 389 of the Code of Civil Procedure. | Pre-trial conference order supersedes the pleadings to the extent of any inconsistencies and controls the subsequent course of the case. Superior Court Rules, rule 8.8. | Does a pre-trial conference order supersede the pleadings to the extent of any inconsistencies and controls the subsequent course of the case? | 027806.docx | LEGALEASE-00131723-LEGALEASE-00131724 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8373 | Mack v. Union Pac. R. Co., 2012 Ark. App. 115 | 307A+517.1 | In the case at bar, the second dismissal was not on Mack's motion. The record establishes that Mack did not file a motion for nonsuit in the Arkansas case. No order of nonsuit was entered by the trial court. A nonsuit is not effective upon filing; a court order is necessary to grant a nonsuit and the judgment or decree must be entered to be effective. Blaylock v. Shearson Lehman Bros., 330 Ark. 620, 624, 954 S.W.2d 939, 941 (1997); Ark. R. Civ. P. 41(a)(1). Union Pacific requested the dismissal based on Mack's defective summons and his failure to timely serve a corrected summons. The trial court orally granted Union Pacific's motion to dismiss on these grounds, and the trial court's second order expressly stated that it was granting Union Pacific's motion to dismiss. Because one of the two dismissals at issue in this case was on the motion of Union Pacific, neither Rule 41(a) nor the written-stipulation exception found in Rule 41(a) apply. | A nonsuit is not effective upon filing; a court order is necessary to grant a nonsuit and the judgment or decree must be entered to be effective. | Is a court order necessary to grant a nonsuit and the judgment or decree must be entered to be effective? | 027832.docx | LEGALEASE-00131925-LEGALEASE-00131926 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 8374 | 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 | 371+2001 | Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. Richard R. Powell, Powell on Real Property, " 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in general. Id. at " 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. Ibid. Lastly, the benefit must be certain rather than speculative, although it may arise in the future. Ibid. These salient features of the special assessment are codified by statute. N.J.S.A. 40:56-1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. See, e.g. Meglino v. Township Comm. of Eaglewood, 103 N.J. 144, 510 A.2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 259 A.2d 218 (1969) (addressing special assessment for sewer); City of Paterson v. Fargo Realty, Inc., 174 N.J.Super. 178, 415 A.2d 1210 App.Div.1980) (involving demolition of nuisance. | Traditionally, differences between assessment and tax include: assessment supports local improvements, while tax finances general operations; assessment is one-time charge, while tax is annual; and assessment requires that benefit be direct, while tax requires no such direct benefit. | "Is assessment a one-time charge, while tax is annual?" | Taxation - Memo # 145 - C - KBM.docx | ROSS-003288422-ROSS-003288423 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8375 | City of San Antonio v. San Antonio Indep. Sch. Dist., 683 S.W.2d 67 | 371+2001 | The City's second point of error is that the trial court erred in failing to limit " 48's application solely to the "in lieu of taxes" component of the utility's payments to the City. In its counterpoint, SAISD argues that all of the component payments made pursuant to the indenture are "in lieu of taxes" because if the City did not receive those payments, it would have to raise the money it derives from them by taxation. The City rebuts this contention by presenting numerous sources of City revenues, the payments from which are not considered taxes. Indeed, such was the holding in Bexar County v. City of San Antonio, 352 S.W.2d 905 (Tex.Civ.App."San Antonio 1962, writ dism'd), where this Court expressly held that sewer charge revenues which render a profit to the City were not taxes. Id. at 908. The mere fact that revenues are put into a general fund and used for public purposes, as were the payments in the case at hand, does not necessarily make them taxes. | Mere fact that revenues are put into a general fund and used for public purposes does not necessarily make them "taxes." | "Does the fact that revenues are put into a general fund and used for public purposes make them ""taxes""?" | 044936.docx | LEGALEASE-00131991-LEGALEASE-00131992 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8376 | Wetzel Cty. Solid Waste Auth. v. W. Virginia Div. of Nat. Res., 195 W. Va. 1 | 371+2002 | When determining whether an assessment is a tax or a fee, courts generally analyze the primary purpose of both the assessment and the provision it is said to violate. See Union Pacific Railroad Co. v. Public Utility Comm'n, 899 F.2d 854, 858 (9th Cir.1990); San Juan Cellular Telephone Co. v. Public Service Comm'n, 967 F.2d 683, 685 (1st Cir.1992). As this Court has held: "The character of a tax is determined not by its label but by analyzing its operation and effect." Syllabus point 2, City of Fairmont v. Pitrolo Pontiac-Cadillac, 172 W.Va. 505, 308 S.E.2d 527 (1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984). Therefore, it is difficult to categorize an assessment as a fee or a tax because the courts have not adopted universal definitions of these terms. See, e.g., State ex rel. Petroleum Underground Storage Tank Release Compensation Bd. v. Withrow, 62 Ohio St.3d 111, 579 N.E.2d 705, 710 (1991) ("It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words "tax" and "fee" arise."); 71 Am.Jur.2d State and Local Taxation " 15 (1973) ("The distinction between a fee and tax is one that is not always observed with nicety in judicial decisions[.]"). | Character of tax is determined not by its label but by analyzing its operation and effect and, thus, it is difficult to categorize assessment as fee or tax, as courts have not adopted universal definitions of those terms. | Is the character of a tax determined by analyzing its operation and effect? | Taxation - Memo # 302 - C - CK.docx | ROSS-003301770-ROSS-003301771 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8377 | Multnomah Cty. v. Luihn, 180 Or. 528 | 371+2001 | The state welfare commission claims that the law has delegated to it such a fact-finding function. Assuming, without deciding, that such a function may properly be delegated to an appointed administrative body, to the detriment of powers theretofore lawfully delegated to the elected governing bodies of the counties (cf. City of Portland v. Welch, 154 Or. 286, 302, 305, 59 P.2d 228), we do not find anywhere in the law any yardstick or standard whatever for the guidance of the commission in the performance of the mandatory authority which it claims. Need alone (while it may be morally very persuasive) is not in itself absolutely dterminative of the duty to tax. Taxation proceeds "upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; and that for those means it has the right to compel all citizens and property within its limits to contribute".51 Am.Jur., Taxation, section 9, note 12. While it may be presumed that the state legislature might make a direct and definite levy of taxes for a public purpose, and impose upon the counties a mandate to collect such taxes, in the levy of non-mandatory taxes the governing bodies of the counties may be depended upon to exercise discretion as to how much to raise for each necessary public purpose, and will educate their discretion by a balancing of many factors, including the amount of money which it is lawfully permissible to raise and the relative urgency and public benefit of the various objects sought to be provider for. The wisdom of making the levy of taxes a legislative function is apparent, and the danger to the commonwealth of permitting such a vast power to be lodged in an administrative officer or body is, or should be, manifest. The fact-finding function which the state welfare commission claims to have been vested in it apparently consists in an unrestricted determination of the gross amount which it deems to be necessary to be expended for public | Taxation proceeds upon the theory that the existence of government is a necessity, that it cannot continue without means to pay its expenses, and that for those means it has the right to compel all citizens and property within its limits to contribute. | What theory does taxation proceed upon? | 045063.docx | LEGALEASE-00132124-LEGALEASE-00132127 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8378 | Blizek v. Eagle Signal Co., 164 N.W.2d 84 | 413+1 | One of the major functions of our Workmen's Compensation Act is to provide prompt payment to a covered employee in the event of injury arising out of and in the course of employment. Such an award is necessitated by the statute upon the occurrence of a specific injury and is to be made in strict accordance with the payment schedule provided therefor. For such injuries the statute does not purport to repose discretionary power in the industrial commissioner. | One major function of Workmen's Compensation Act is to provide prompt payment to a covered employee in the event of injury arising out of and in the course of employment. I.C.A. S 85.34, subd. 2(c, f, g, u). | What is one major function of the Workmens Compensation Act? | 047839.docx | LEGALEASE-00131783-LEGALEASE-00131784 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8379 | Smith v. Lannert, 429 S.W.2d 8 | 413+2084 | The Missouri Workmen's Compensation Act is substitutional and the exclusive remedy for injuries arising out of and sustained in the course of the employment. Sheets v. Hill Bros. Distributors, Inc., Mo., 379 S.W.2d 514. Bettendorf-Rapp contends the trial court's ruling with regard to its motion for directed verdict offered at the close of all the evidence was erroneous for the reason plaintiff's remedy must be by the way of workmen's compensation proceedings. | The Workmen's Compensation Act is substitutional and the exclusive remedy for injuries arising out of and sustained in the course of employment. | Is the Workmens Compensation Act both a substitutional and the exclusive remedy for injuries arising out of and sustained in the course of employment? | 047843.docx | LEGALEASE-00131795-LEGALEASE-00131796 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8380 | United States v. Hawkins, 37 F. Supp. 3d 964 | 63+1(1) | But, as Peleti teaches, it was not necessary to prove that the defendants took any specific action to make their transactions with Haleem "corrupt." Thus, as the jury instructions stated, the defendant could be found guilty regardless whether they "had the power to or did perform the act for which [they were] promised or which [they] agreed to receive something of value." See 7th Cir. Pattern Jury Instr. Cr. at 179146 (2012). Accepting or agreeing to accept a payment for the performance of official government duties is bribery, whether or not the recipient ultimately "earns" the bribe by taking official action; "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." United States v. Brewster, 408 U.S. 501, 526, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) (" 201 bribery). Nor does it matter that the defendants did not have the ability, individually or jointly, to secure the property tax reductions; since no action is required, ability is not necessary. In any event, and as discussed further below, these defendants plainly had the ability to initiate and influence the process (and did so); the jury's verdict cannot be impeached on the basis that lack of ability shows lack of intent. See United States v. Gee, 432 U.S. F.3d 713, 715 (7th Cir.2005) (defendant's argument "confuses influence with power to act unilaterally"). | Accepting or agreeing to accept a payment for the performance of official government duties is bribery, whether or not the recipient ultimately earns the bribe by taking official action; acceptance of the bribe is the violation of the statute, not performance of the illegal promise. | "In bribery prosecution, does the government need to show that the defendant fulfilled the illegal bargain?" | 011174.docx | LEGALEASE-00132548-LEGALEASE-00132549 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8381 | United States v. Ollison, 555 F.3d 152 | 146+21 | Ollison's argument is in tension with the plain language of the statute, which states that "the term "agent" ... in the case of an organization or government, includes a servant or employee. ..." See 18 U.S.C. " 666(d)(1) (emphasis added). The statute itself does not distinguish between "high-level" and "low-level" employees. Cf. Salinas v. United States, 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("The statute's plain language fails to provide any basis for limiting " 666(a)(1)(B) to bribes affecting federal funds."). When construing " 666 in the past, we have consistently applied the statute in accordance with its plain language. See Westmoreland, 841 F.2d at 576. Furthermore, if we were inclined to carve out an exception for "low-level employees," it would create a circuit split. United States v. Sotomayor"Vazquez, 249 F.3d 1, 10 (1st Cir.2001) ("[Section] 666 has been given a wide scope, to include all employees "from the lowest clerk to the highest administrator." ") (quoting United States v. Brann, 990 F.2d 98, 101 (3d Cir.1993)). | Plain language of statute prohibiting theft or bribery by agent of organization receiving federal funds does not distinguish between "high-level" and "low-level" employees. 18 U.S.C.A. S 666(a)(1), (d)(1). | Does the statute prohibiting theft or bribery by agent of organization receiving federal funds distinguish between high-level and low-level employees? | 011375.docx | LEGALEASE-00133287-LEGALEASE-00133288 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8382 | Wisniewski v. Clary, 46 Cal. App. 3d 499 | 307A+747.1 | We believe that the trial court in this case possessed the inherent power to require by policy that plaintiffs be physically present at the mandatory settlement conference. A court may not compel a litigant to settle a case, but it may direct him to engage personally in settlement negotiations, provided the conditions for such negotiations are otherwise reasonable. The fact that it may not force a party to be personally present at the trial of a civil action (see 1 Witkin, op. cit., Jurisdiction, s 123, pp. 652"653) does not mean that it may not command his attendance in person at a mandatory settlement conference. A civil trial may proceed expeditiously without the presence of a party, but, as noted earlier, the presence of all parties personally at settlement negotiations enhances their chances of success. For this reason we regard the inconsistent language found in Silvagni, supra, and repeated in Taylor, supra, as being overly broad. | Although court may not compel a litigant to settle a case, it may direct him to engage personally in settlement negotiations, provided that conditions for such negotiations are otherwise reasonable. Cal. Rules of Court, rule 207.5. | Can a court direct a litigant to engage personally in a settlement negotiation? | Pretrial Procedure - Memo # 1873 - C - VP.docx | ROSS-003287287-ROSS-003287288 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8383 | Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544 | 307A+331 | Our inquiry must begin by determining whether, and in what circumstances, a duty to preserve evidence arises. See Pirrone v. Boston, 364 Mass. 403, 413 n. 13, 305 N.E.2d 96 (1973) ("there need be a remedy only where there is an enforceable duty"). Whether to recognize a duty is a matter of policy, and "the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Luoni v. Berube, 431 Mass. 729, 735, 729 N.E.2d 1108 (2000), quoting W.L. Prosser & W.P. Keeton, Torts " 53, at 358-359 (5th ed.1984). | Whether to recognize a duty to preserve evidence is a matter of policy, and the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists. | Is the question of whether to recognize a duty to preserve evidence a matter of policy? | 027197.docx | LEGALEASE-00133046-LEGALEASE-00133047 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8384 | Powers v. Prof'l Rodeo Cowboys Ass'n, 832 P.2d 1099 | 307A+517.1 | The right to a voluntary dismissal without prejudice is not absolute. Rather, it is within the sound discretion of the trial court. Zagano v. Fordham University, 900 F.2d 12 (2d Cir.1990). The request for dismissal under C.R.C.P. 41(a)(2) generally should be granted unless a dismissal would result in legal prejudice to the defendant. Tillery v. District Court, supra (citing several federal and state cases); see 5 Moore's Federal Practice " 41.05(1) (1991) (dismissal should in most cases be granted "unless the result would be to legally harm the defendant"). | Request for voluntary dismissal without prejudice generally should be granted unless dismissal would result in legal prejudice to defendant. Rules Civ.Proc., Rule 41(a)(2). | Should a request for voluntary dismissal without prejudice generally be granted unless a dismissal would result in legal prejudice to a defendant? | 027605.docx | LEGALEASE-00132712-LEGALEASE-00132713 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8385 | Gen. Agents Ins. Co. of Am. v. El Naggar, 340 S.W.3d 552 | 307A+517.1 | A nonsuit does not vitiate a decision on the merits, including a partial summary judgment, unless the decision on the merits is set aside by the trial court. Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854"55 (Tex.1995) (per curiam). "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit." Id. at 855. This reasoning is rooted in the doctrines of res judicata and collateral estoppel, which "promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation" of matters that have already been decided. In re Team Rocket, L.P., 256 S.W.3d 257, 260 (Tex.2008) (orig. proceeding) (quoting Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.1994)). | A nonsuit does not vitiate a decision on the merits unless the decision on the merits is set aside by the trial court; once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Is a decision on the merits, including a summary judgment in the defendant's favor, vitiated by a nonsuit by the plaintiff?" | Pretrial Procedure - Memo # 2295 - C - SK.docx | ROSS-003288182-ROSS-003288183 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 8386 | Richter v. Prairie Farms Dairy, 2016 IL 119518 | 30+78(4) | We cannot accept this contention. The circuit court granted plaintiffs' motion for a voluntary dismissal of Richter I pursuant to section 2"1009 of the Code of Civil Procedure (735 ILCS 5/2"1009 (West 2010)). A voluntary dismissal pursuant to section 2"1009 terminates the entire action and renders immediately appealable all final orders entered therein that were not previously appealable. Hudson, 228 Ill.2d at 468, 321 Ill.Dec. 306, 889 N.E.2d 210; Dubina v. Mesirow Realty Development, Inc., 178 Ill.2d 496, 503, 227 Ill.Dec. 389, 687 N.E.2d 871 (1997). However, this court's decisions in Rein and Hudson explained that res judicata prohibits a litigant from using section 2"1009 to split claims into multiple actions or suits. Hudson, 228 Ill.2d at 471"72, 321 Ill.Dec. 306, 889 N.E.2d 210; Rein, 172 Ill.2d at 339, 216 Ill.Dec. 642, 665 N.E.2d 1199. In Rein, this court cautioned that a plaintiff's statutory right to a voluntary dismissal within the limitations period (735 ILCS 5/13"217 (West 2010)) does not "automatically immunize a plaintiff against the bar of res judicata or other legitimate defenses a defendant may assert in response to refiling of voluntarily dismissed counts." Rein, 172 Ill.2d at 342"43, 216 Ill.Dec. 642, 665 N.E.2d 1199. In Hudson, this court explained: "Rein thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a res judicata defense." (Emphasis added.) Hudson, 228 Ill.2d at 473, 321 Ill.Dec. 306, 889 N.E.2d 210. | A voluntary dismissal terminates the entire action and renders immediately appealable all final orders entered therein that were not previously appealable. S.H.A. 735 ILCS 5/2-1009. | Does a voluntary dismissal terminate an action in its entirety and render all final orders immediately appealable? | Pretrial Procedure - Memo # 2296 - C - SK.docx | ROSS-003287457-ROSS-003287458 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8387 | Cyr v. Cote, 396 A.2d 1013 | 307A+749.1 | Were the jury trial issue determined solely on the basis of the pleadings, any party who desired a jury trial would be able to obtain one by simply injecting a legal issue into a complaint or answer. We are not implying that counsel would knowingly violate M.R.Civ.P. 11; rather, many claims which appear viable at the pleading stage are for a variety of reasons no longer extant by the time of the pre-trial conference. Thus, the pre-trial order supersedes the pleadings, Beck v. Sampson, 158 Me. 502, 186 A.2d 783 (1962), specifies the legal theories upon which the parties are proceeding, and formulates the issues to be tried. Atkins v. Atkins, Me., 376 A.2d 856 (1977). Accordingly, we hold that where the issues raised by the pleadings have been modified by a pre-trial order, the order and not the pleadings controls the jury trial question. See Craig v. Hamilton, 213 Kan. 665, 518 P.2d 539 (1974). | Where issues raised by pleadings have been modified by a pretrial order, order and not pleadings controls question of whether litigants have right to jury trial. M.R.S.A.Const. art. 1, S 20. | "Where the issues raised by the pleadings have been modified by a pretrial order, is the order and not the pleadings that control the question of whether litigants have right to a jury trial?" | 027717.docx | LEGALEASE-00132820-LEGALEASE-00132821 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8388 | Evans v. Dreyfuss Bros., 971 A.2d 179 | 307A+693.1 | The trial court's April 23, 2007 order lifted the stay imposed in the July 7, 2006 order, and dismissed Ms. Evans' case "without prejudice," just as she had requested. "[A] dismissal without prejudice "renders the proceedings a nullity and leaves the parties as if the action had never been brought." " Hence, the trial court's April 23, 2007 order may be interpreted as a final order in the sense that there is nothing more for the trial court to do when confronted with the unwillingness of either party to comply with the court's order and to proceed to arbitration. Or, the April 23, 2007 order may be interpreted as a non-final, non-appealable order which has not resolved the merits of Ms. Evans' complaint against Tenacity, but which gives her the option of proceeding to arbitration, as the settlement agreement requires as a matter of law, or filing another lawsuit and starting the process again. We need not pause to determine which of these interpretations is appropriate here because under either interpretation, we would affirm the trial court's order. | A "dismissal without prejudice" renders the proceedings a nullity and leaves the parties as if the action had never been brought. | "Does a ""dismissal without prejudice"" render the proceedings a nullity and leaves the parties as if the action had never been brought?" | 027953.docx | LEGALEASE-00132858-LEGALEASE-00132859 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8389 | Dafco v. Reynolds, 9 Ohio App. 3d 4 | 307A+749.1 | Plaintiffs' reliance upon the case of Sexton v. Sugar Creek Packing Co. (1973), 38 Ohio App.2d 32, 311 N.E.2d 535 [67 O.O.2d 187], is not well-founded. In Sexton, it was held that before sanctions can be enforced pursuant to Civ.R. 37 for violation of a pretrial order, an order must be properly announced and formally entered in the case. That holding is correct, but it has no application to sanctions for failure to attend a properly noticed deposition without obtaining a protective order, as contemplated by Civ.R. 37(D). Sexton makes no reference to Civ.R. 37(D), did not involve a Civ.R. 37(D) default, and is not applicable. | Before sanctions can be enforced for violation of a pretrial order, order must be properly announced and formally entered in case. Rules Civ.Proc., Rules 37, 37(D). | "Before sanctions can be enforced for violation of a pretrial order, must an order be properly announced and formally entered in case?" | 027957.docx | LEGALEASE-00132873-LEGALEASE-00132874 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 8390 | Lewis v. City of Savannah, 336 Ga. App. 126 | 307A+693.1 | Under Georgia law, the unqualified dismissal of a case terminates the action, divests the trial court of jurisdiction to take further action in the case, and renders all orders entered after the dismissal a mere nullity. See Montgomery, 322 Ga.App. at 560(1), 745 S.E.2d 778; Gallagher v. Fiderion Group, LLC, 300 Ga.App. 434, 436(1), 685 S.E.2d 387 (2009); Cotton v. Surrency, 277 Ga.App. 158, 626 S.E.2d 148 (2006). Furthermore, upon dismissal of the case, all prior orders that were entered in the case are superseded and can no longer be enforced against the parties. See Montgomery, 322 Ga.App. at 560(1), 745 S.E.2d 778; Gallagher, 300 Ga.App. at 436(1), 685 S.E.2d 387. Thus, the dismissal of a case divests the court of jurisdiction to consider a subsequent contempt motion and precludes the court from finding a party in contempt of an order previously entered in that case. See Montgomery, 322 Ga.App. at 560"561(1), 745 S.E.2d 778; Gallagher, 300 Ga.App. at 436"437(1), 685 S.E.2d 387. See also Knapp v. Cross, 279 Ga.App. 632, 637(3), 632 S.E.2d 157 (2006) (holding that party could not be held in contempt for violating an order that was no longer in effect). | The unqualified dismissal of a case terminates the action, divests the trial court of jurisdiction to take further action in the case, and renders all orders entered after the dismissal a mere nullity. | Does the dismissal of a lawsuit generally deprive the trial court of jurisdiction to take further action in a case? | 027991.docx | LEGALEASE-00133281-LEGALEASE-00133282 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8391 | Simmons v. Patrick, 211 Cal. App. 2d 383 | 307A+749.1 | The next challenged finding relates to the allowance of an offset of $11,226 representing merchandise transferred to plaintiff. It is contended that there is a variance between the pleading and proof as to the time of such transfer, that there is no conclusion of law with respect thereto, and the claimed offset was not made a part of the pre-trial order. There is merit to none of these contentions. It is statutory law that, "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code of Civ.Proc. " 469.) There has been no showing of any prejudice. Furthermore, the evidence relating to the offset was received either without objection or without proper grounds for the objection interposed, and leave to amend (to conform to proof) could have been granted. Second, the trial court in Finding X expressly found that the offset existed and by its conclusion of law (No. V) in effect concluded that the offset was allowable. Certainly a reversal is not warranted on the ground asserted. (Cal.Const., Art. VI, " 4 1/2.) Finally, with respect to the pre-trial order, there is some merit to plaintiff's position. But sometimes it is required that the effect of a pretrial order be not so restrictive that the power of a trial court to do justice between the parties is completely abrogated. (Atkins v. Atkins, 177 Cal.App.2d 207, 2 Cal.Rptr. 104.) The present pre-trial order states that one of the ultimate issues of fact is the determination of the amount due upon the subject note. As mentioned above, also, the evidence was received without any proper objection. Under all the circumstances, no prejudice appears | The effect of a pre-trial order should not be so restricted that power of trial court to do justice between parties is completely abrogated. | Should the effect of a pre-trial order be so restricted that power of a trial court to do justice between parties is completely abrogated? | 028066.docx | LEGALEASE-00133418-LEGALEASE-00133419 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 8392 | Himmelfarb v. Allain, 380 S.W.3d 35 | 307A+517.1 | Pursuant to Tennessee Rule of Civil Procedure 41.01(2), a voluntary dismissal is an adjudication on the merits of the case only if the order states that it is an adjudication on the merits, or if the plaintiff has twice previously voluntarily dismissed actions based on or including the same claim. Although those jurisdictions following the Restatement (Second) approach are concerned that plaintiffs will be able to harass defendants by continuously filing and dismissing lawsuits, the language of our Rule 41 limits plaintiffs to two voluntary nonsuits. The Restatement (Second) approach would be at odds with the liberal use of voluntary nonsuits within the framework of Tennessee Rule of Civil Procedure 41.01. | A voluntary dismissal is an adjudication on the merits of the case only if the order states that it is an adjudication on the merits or if the plaintiff has twice previously voluntarily dismissed actions based on or including the same claim. Rules Civ.Proc., Rule 41.01(2). | When can a voluntary dismissal be adjudication on the merits of the case? | Pretrial Procedure - Memo # 2534 - C - PB.docx | ROSS-003288297-ROSS-003288298 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8393 | Moore v. Pate, 112 N.C. App. 833 | 307A+517.1 | Plaintiff has also asserted that he is saved by Judge Farmer's entry of an order when the case appeared on the clean up calendar. Seeing that no order had been entered closing the file, Judge Farmer ordered that the case be dismissed without prejudice. Although it is certainly the better practice to require the filing of a notice of dismissal or some other action to close the file, no official action is necessary. 2 Wilson, " 41-2. Once a party takes a voluntary dismissal no action by the court is necessary to give the dismissal effect. Carter v. Clowers, 102 N.C.App. 247, 401 S.E.2d 662 (1991). In fact, once a party takes a voluntary dismissal no valid order can be entered thereafter except as to collateral matters. See Collins v. Collins, 18 N.C.App. 45, 196 S.E.2d 282 (1973). Therefore, when Judge Farmer came upon this matter on the cleanup calendar he had no authority to enter any further orders. The matter had already been dismissed by plaintiff and that dismissal was effective upon its announcement. We are not persuaded by plaintiff's argument that since the rules do not specifically mandate that his dismissal was with prejudice, then the general rule applies and his dismissal was without prejudice. If we were to accept plaintiff's argument then we would return to the chaos the drafters sought to prevent when Rule 41 was amended. See N.C.G.S. " 1A-1, Rule 41 comment. Rules are made to be followed and plaintiff will not be allowed to prevail when he failed to take his dismissal at the proper time and in the proper manner. The judgment of the trial court is hereby | Once party takes voluntary dismissal, no valid order can be entered thereafter except as to collateral matters. Rules Civ.Proc., Rule 41(a)(1, 2), G.S. S 1A-1. | "Once a party takes a voluntary dismissal, can a valid order be entered thereafter except as to collateral matters?" | 028214.docx | LEGALEASE-00133261-LEGALEASE-00133262 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 8394 | Doe v. Duke Univ., 118 N.C. App. 406 | 307A+517.1 | Once a party voluntarily dismisses her action pursuant to N.C.Gen.Stat. " 1A-1, Rule 41(a)(1) (1990), "it [is] as if the suit had never been filed," Tompkins v. Log Sys., Inc., 96 N.C.App. 333, 335, 385 S.E.2d 545, 547 (1989), disc. rev. denied, 326 N.C. 366, 389 S.E.2d 819 (1990), and the dismissal "carries down with it previous rulings and orders in the case." Gibbs v. Light Co., 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965) (quoting 11 A.L.R.2d 1407, 1411). Therefore, because plaintiff has entered a dismissal in her action for claim and delivery of the implants, her present argument in this Court that the trial court erred in entering the protective order concerning possession of the implants is moot, and we need not consider it. See Walker v. Walker, 59 N.C.App. 485, 489, 297 S.E.2d 125, 128 (1982). Because the protective order was nullified by plaintiff's dismissal, it is vacated and remanded. On remand, the trial judge shall enter an order directing that possession of the implants be returned to defendant. | When party voluntarily dismisses action, it is as if suit had never been filed, and dismissal carries down with it previous rulings and orders in case. Rules Civ.Proc., Rule 41(a)(1), G.S. S 1A-1. | When a party voluntarily dismisses an action will a dismissal carries down with it previous rulings and orders in case? | Pretrial Procedure - Memo # 2674 - C - SKG.docx | ROSS-003288115-ROSS-003288116 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 8395 | State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs., 100 Ohio App. 3d 592 | 307A+517.1 | A voluntary dismissal is effective upon filing, and no further entry by the court is necessary to trigger the end of the litigation. Civ.R. 41(A)(1); Goldstein, 50 Ohio App.3d at 7, 552 N.E.2d at 231; Clay Hyder Trucking Lines, Inc. v. Riley (1984), 16 Ohio App.3d 224, 16 OBR 240, 475 N.E.2d 183; Frysinger v. Leech (1983), 10 Ohio App.3d 150, 10 OBR 202, 460 N.E.2d 1161. The filing of a voluntary dismissal immediately divests the trial court of jurisdiction to go forward in the matter. Sturm, 63 Ohio St.3d at 676, 590 N.E.2d at 1217"1218; State ex rel. Hunt v. Thompson (1992), 63 Ohio St.3d 182, 586 N.E.2d 107; Goldstein, 50 Ohio App.3d at 5"7, 552 N.E.2d at 229"232. | Voluntary dismissal is effective upon filing, and no further entry by court is necessary to trigger end of litigation. Rules Civ.Proc., Rule 41(A)(1). | "Is voluntary dismissal effective upon filing, and no further entry by court is necessary to trigger the end of litigation?" | Pretrial Procedure - Memo # 2675 - C - SKG.docx | ROSS-003286700-ROSS-003286701 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8396 | In re Bennett (Tex. 1997) 960 S.W.2d 3 | 307A+517.1 | However, the signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires. Appellate timetables do not run from the date a nonsuit is filed, but rather from the date the trial court signs an order of dismissal. See Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex.1995) ( "The appellate timetable does not commence to run other than by a signed, written order, even when the signing of such an order is purely ministerial."); see also Shadowbrook Apartments v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Tex.R. Civ. P. 329b(d). | Signing of order dismissing case, not filing of notice of nonsuit, determines when trial court's plenary power expires. Vernon%22s Ann.Texas Rules Civ.Proc., Rule 162. | Does the filing of notice of nonsuit determine when a trial court's plenary power expires? | 028393.docx | LEGALEASE-00132888-LEGALEASE-00132889 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 8397 | Sanford v. Dudley, 196 So. 3d 1106 | 307A+486 | While Rule 36 is to be applied as written, it is not intended to be applied in Draconian fashion. If the Rule may sometimes seem harsh in its application, the harshness may be ameliorated by the trial court's power to grant amendments or withdrawals of admissions in proper circumstances." DeBlanc, 814 So.2d at 801"02 . For the trial court to exercise its discretion to permit withdrawal, the party seeking to withdraw an admission must first file a motion requesting that relief. See Ross v. Wallack, 188 So.3d 597, 600"01 ("" 10"11) (Miss.Ct.App.2015) (citing Montgomery v. Stribling, 115 So.3d 823, 828, 831 (Miss.Ct.App.2012)). If such a motion is filed, "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." M.R.C.P. 36(b). | For the trial court to exercise its discretion to permit withdrawal of admission, the party seeking to withdraw an admission must first file a motion requesting that relief. Rules Civ.Proc., Rule 36. | Should a party who is seeking to withdraw deemed admissions file a proper motion for relief? | 028407.docx | LEGALEASE-00132941-LEGALEASE-00132942 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8398 | Stroman v. Tautenhahn, 465 S.W.3d 715 | 307A+517.1 | A plaintiff may nonsuit at any time before introducing all of the plaintiff's evidence other than rebuttal evidence. Tex.R. Civ. P. 162. No court order is required. Id.; see also Epps v. Fowler, 351 S.W.3d 862, 868 (Tex.2011). A nonsuit terminates a case from the moment the notice of nonsuit is filed. Tex.R. Civ. P. 162; Epps, 351 S.W.3d at 868. A plaintiff's nonsuit does not affect an opponent's pending claims for affirmative relief, attorney's fees, or sanctions. See id.; Epps, 351 S.W.3d at 868. | A plaintiff's nonsuit does not affect an opponent's pending claims for affirmative relief, attorney fees, or sanctions. Tex. R. Civ. P. 162. | "Does a plaintiff's nonsuit affect an opponent's pending claims for affirmative relief, attorney fees, or sanctions?" | Pretrial Procedure - Memo # 2821 - C - SB.docx | ROSS-003314540-ROSS-003314541 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8399 | Hurst v. Capital Cities Media, 323 Ill. App. 3d 812 | 307A+517.1 | Despite the potential for harsh results, the law is clear in this area. A statute adjudged to be unconstitutional affords no protection to those who acted under it. The effect of enacting an unconstitutional act is to leave the law in force as it was before the enactment of the unconstitutional act. Therefore, the provisions of section 13"217 (735 ILCS 5/13"217 (West 1994)) (before the 1995 amendments) are applicable in the present action. Accordingly, a plaintiff is permitted one, and only one, refiling of an action, even though the applicable statute of limitations has not expired. See Flesner, 145 Ill.2d at 254, 164 Ill.Dec. 157, 582 N.E.2d at 721; Timberlake v. Illini Hospital, 175 Ill.2d 159, 164, 221 Ill.Dec. 831, 676 N.E.2d 634, 636"37 (1997). | A plaintiff is permitted one, and only one, refiling of an action, even though the applicable statute of limitations has not expired. S.H.A. 735 ILCS 5/13-217. | "Is a plaintiff permitted one, and only one, refiling of an action, even though the applicable statute of limitations has not expired?" | 028623.docx | LEGALEASE-00133020-LEGALEASE-00133021 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8400 | Polansky v. Berenji, 393 S.W.3d 362 | 307A+506.1 | Although the nonsuit immediately renders the merits of the case moot, the trial court need not immediately dismiss the suit when notice of nonsuit is filed. Id. Rule 162 provides that the plaintiff's right to nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk." Tex.R. Civ. P. 162; see also University of Tex. Med. Branch, 195 S.W.3d at 100. A claim for affirmative relief must allege a cause of action-independent of the plaintiff's claim-upon which the claimant could recover compensation or relief even if the plaintiff abandons or is unable to establish his cause of action. University of Tex. Med. Branch, 195 S.W.3d at 101. In addition, a dismissal "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal." Tex.R. Civ. P. 162. | Although the nonsuit immediately renders the merits of the case moot, the trial court need not immediately dismiss the suit when notice of nonsuit is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Should a trial court immediately dismiss the suit when notice of nonsuit is filed? | 028635.docx | LEGALEASE-00133064-LEGALEASE-00133065 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8401 | In re iPhone Application Litig., 844 F. Supp. 2d 1040 | 386+7 | An action for trespass arises "when [the trespass] actually did, or threatened to, interfere with the intended functioning of the system, as by significantly reducing its available memory and processing power." Id. at 1356, 1 Cal.Rptr.3d 32, 71 P.3d 296 (emphasis added). Similarly, "intermeddling is actionable only if "the chattel is impaired as to its condition, quality, or value or ... the possessor is deprived of the use of the chattel for a substantial time." " Plaintiffs, on behalf of the Geolocation Class, allege that Apple's creation of location history files and app software components "consumed portions of the cache and/or gigabytes of memory on their devices." Similarly, Plaintiffs, on behalf of the iDevice Class, allege that the apps provided by the Mobile Industry Defendants have taken up valuable bandwidth and storage space on their iDevices and Defendants' conduct has subsequently shortened the battery life of the iDevice. While these allegations conceivably constitute a harm, they do not plausibly establish a significant reduction in service constituting an interference with the intended functioning of the system, which is necessary to establish a cause of action for trespass. As Hamidi demonstrates, trespass without harm, "by reason of the impairment of the property or the loss of use," is not actionable. Hamidi, 30 Cal.4th at 1351, 1 Cal.Rptr.3d 32, 71 P.3d 296. Accordingly, Defendants' motions to dismiss Plaintiffs' eighth cause of action for trespass are GRANTED. The motions to dismiss are granted with prejudice, for the reasons set forth in Section III.D. | Under California law, an action for trespass of a computer system arises when the trespass actually did, or threatened to, interfere with the intended functioning of the system, as by significantly reducing its available memory and processing power. | Does an action for trespass arise when the trespass interfered with the intended functioning of a computer system? | 047324.docx | LEGALEASE-00133364-LEGALEASE-00133365 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8402 | Renshaw v. U. S. Pipe & Foundry Co., 30 N.J. 458 | 413+1 | It has been frequently and appropriately said that the basic purpose of workmen's compensation is "to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense." Morris v. Hermann Forwarding Co., 18 N.J. 195, 197-198, 113 A.2d 513, 514 (1955). The New Jersey theory is that liability or its extent is not based on the impairment or loss of earning power, but rather the loss ensuing from personal injury as it detracts from the former efficiency of the workmen's body or its members in the ordinary pursuits of life. Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108, 111, 194 A. 294 (E. & A.1937). | The basic purpose of workmen's compensation is to shoulder on industry the expense incident to the hazards of industry, to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense. | What is the basic purpose of workmens compensation? | 047901.docx | LEGALEASE-00133154-LEGALEASE-00133155 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8403 | Lewis v. Horace Mann Ins. Co., 410 F. Supp. 2d 640 | 307A+517.1 | In addition, under Ohio law, a voluntary dismissal, otherwise than on the merits, leaves the parties in the same position as if the action had never been commenced. Cent. Mut. Ins. Co. v. Bradford"White Co., 35 Ohio App.3d 26, 519 N.E.2d 422, 424 (1987) (citations omitted). Accordingly, in Ohio, "[w]here an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata." DeVille Photography Inc. v. Bowers, 169 Ohio St. 267, 159 N.E.2d 443, 447 (1959) (citations omitted); see also Cent. Mut. Ins. Co., 519 N.E.2d at 424 ("Under Ohio law, the dismissal of an action without prejudice, whether voluntary or involuntary, dissolves all orders rendered by the trial court during the pendency of the action.") Thus, the "[p]laintiff then remains free to commence another action against the defendant raising the same issues." Hall v. Gibson Greetings, Inc., 971 F.Supp. 1162, 1165 (N.D.Ohio 1997) (relying on Board of Health v. City of St. Bernard, 19 Ohio St.2d 49, 249 N.E.2d 888 (1969); Cent. Mut. Ins. Co., 519 N.E.2d at 424.). | Under Ohio law, a voluntary dismissal, otherwise than on the merits, leaves the parties in the same position as if the action had never been commenced. | "Does a voluntary dismissal, otherwise than on the merits, leave the parties in the same position as if the action had never been commenced?" | 028265.docx | LEGALEASE-00133638-LEGALEASE-00133639 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8404 | Perpich v. Dep't of Def., 496 U.S. 334 | 259+1 | This view of the constitutional issue was presupposed by our decision in the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918). Although the Governor is correct in pointing out that those cases were decided in the context of an actual war, the reasoning in our opinion was not so limited. After expressly noting that the 1916 Act had incorporated members of the National Guard into the National Army, the Court held that the Militia Clauses do not constrain the powers of Congress "to provide for the common Defence," to "raise and support Armies," to "make Rules for the Government and Regulation of the land and naval Forces," or to enact such laws as "shall be necessary and proper" for executing those powers. Id., at 375, 377, 381"384, 38 S.Ct., at 160, 161, 162"163. The Court instead held that, far from being a limitation on those powers, the Militia Clauses are"as the constitutional text plainly indicates"additional grants of power to Congress. | Militia Clauses of the United States Constitution do not constrain powers of Congress to provide for the common defense, raise and support armies, make rules for governance of Armed Forces, and enact necessary and proper laws for such purposes but in fact provide additional grants of power to Congress. U.S.C.A. Const. Art. 1, S 8, cls. 15, 16. | Does the Militia Clause suppress the powers of the Congress? | 008402.docx | LEGALEASE-00133800-LEGALEASE-00133801 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8405 | Ward v. United States, 133 Fed. Cl. 418 | 34+102 | The VA lacks the authority to determine whether or not a soldier is fit for duty, a determination that falls exclusively within the purview of the armed forces.Watson v. United States, 113 Fed.Cl. 615, 642 (2013). VA decisions are "not determinative of the issues involved in military disability retirement cases." Lord v. United States, 2 Cl.Ct. 749, 754 (1983); see also Bennett v. United States, 200 Ct.Cl. 635, 643"44 (1973) (per curiam) (noting that VA ratings are not indicative of a soldier's fitness for duty, and therefore are not "determinative of the issues involved in a disability retirement determination by the military"); Dzialo v. United States, 5 Cl.Ct. 554, 565 (1984) (recognizing that according to a "long line of decisions," VA ratings are "in no way determinative on the issue of [a] plaintiff's eligibility for disability retirement pay"). | Department of Veterans Affairs (VA) lacks the authority to determine whether or not a soldier is fit for duty, a determination that falls exclusively within the purview of the armed forces. | Does the Department of Veterans Affairs (VA) have the authority to determine whether or not a soldier is fit for duty? | 008406.docx | LEGALEASE-00133808-LEGALEASE-00133809 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8406 | Doe v. United States, 132 F.3d 1430 | 34+5(1) | Judicial review of an administrative decision to discharge a military officer is limited. When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference. See Orloff v. Willoughby, 345 U.S. 83, 90, 73 S.Ct. 534, 538"39, 97 L.Ed. 842 (1953); Maier v. Orr, 754 F.2d 973, 984 (Fed.Cir.1985). That being said, "men and women in the Armed Forces do not leave constitutional safeguards and judicial protection behind when they enter the military service." Weiss v. United States, 510 U.S. 163, 194, 114 S.Ct. 752, 769, 127 L.Ed.2d 1 (1994) (Ginsburg, J., concurring). However, to prevail, a plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Sanders v. United States, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979) (citations omitted). | Men and women in armed forces do not leave constitutional safeguards and judicial protection behind when they enter military service. | Do men and women leave behind constitutional safeguards when they enter military services? | 008419.docx | LEGALEASE-00133826-LEGALEASE-00133827 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8407 | Wells Fargo Bank, Nat. Ass'n v. Voorhees, 194 So.3d 448 | 307A+486 | It appears the trial court was under the false impression that it was required to uphold its three prior rulings denying Wells Fargo relief from technical admissions. But rule 1.370(b) gives the court the flexibility to change a ruling or permit a party to amend or withdraw admissions. And because the record evidence here is contrary to those admissions and Voorhees failed to show prejudice, we conclude that the trial court abused its discretion in denying Wells Fargo relief from technical admissions. Accordingly, we reverse the final order of involuntary dismissal and remand for a trial on the merits. | Rule allowing withdrawal of admissions gives the court the flexibility to change a ruling or permit a party to amend or withdraw admissions. West's F.S.A. RCP Rule 1.370(b). | Does a rule allowing withdrawal of admissions give the court the flexibility to change a ruling or permit a party to amend or withdraw admissions? | Pretrial Procedure - Memo # 2646 - C - SN.docx | ROSS-003290285-ROSS-003290286 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 8408 | Kraffert v. Shea Homes, No. D036923, 2002 WL 44262 | 307A+517.1 | Shea Homes argues that it is entitled to recover fees in accordance with the contract provision because there is no substantive difference between a dismissal without prejudice and a judgment of dismissal. It contends that, even if it had sought a judgment of dismissal, the clerk of the court might have rejected it. Suffice it to say that this is pure speculation. Further, regardless of whether a judgment is entered, a dismissal without prejudice is not a final adjudication because it does not preclude the plaintiff from refiling her claims in another action. (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 784, 176 Cal.Rptr. 104, 632 P.2d 217.) For this reason, a dismissal of an action without prejudice does not achieve the same result for the defendant as a "final judgment." (Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 686, fn. 34, 186 Cal.Rptr. 589, 652 P.2d 437.) | A dismissal without prejudice is not a final adjudication, because it does not preclude the plaintiff from refiling her claims in another action. | Is a dismissal without prejudice a final adjudication because it does not preclude the plaintiff from refiling the claims in another action? | 028663.docx | LEGALEASE-00133840-LEGALEASE-00133841 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8409 | Brandt v. Joseph F. Gordon Architect, 998 P.2d 587 | 307A+517.1 | Similar to Hutchison, we find a party against whom a summary judgment is sustained can no longer, as a matter of right, dismiss his claim without prejudice. The decision is effectively final for that party and he must appeal to the trial court's discretion. | Party against whom a summary judgment is sustained can no longer, as a matter of right, dismiss his claim without prejudice; the decision is effectively final for that party and he must appeal to the trial court's discretion. 12 Okl.St.Ann. S 683. | "Can a party against whom a summary judgment is sustained no longer, as a matter of right, dismiss his claim without prejudice?" | 028672.docx | LEGALEASE-00133856-LEGALEASE-00133857 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |
| 8410 | Philadelphia Ass'n for relief of Disabled Firemen v. Wood, 39 Pa. 73 | 371+2001 | We have said this is not a tax. It does not profess to be. It has none of the forms of taxation in the mode of its collection. And if it were called a tax, it could not be one; for a name arbitrarily given cannot change its nature. A tax is an imposition for the supply of the public treasury, and not for the supply of individuals or private corporations, however benevolent they may be. It is the legislative power that is vested in the legislature, and of course this includes tax legislation; and this means the making of laws that are to furnish the measure of every man's duty in support of the public burdens, and the means of enforcing it. Certainly it is not plain that, in either form or substance, this is tax legislation. If it is a mere requisition that one class of men shall pay their money to another class, it is no legislation at all. | Tax legislation means the making of laws that are to furnish the measure of every man's duty in support of the public burdens and the means of enforcing it. | "Does a 'tax law'" define the measure of every man's duty in support of public burdens?" | Taxation - Memo # 387 - C - KBM.docx | ROSS-003290165-ROSS-003290166 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8411 | Bd. of Comm'rs of Montgomery Cty. v. Allen, 175 Kan. 460 | 371+2411 | In the first place, it is elementary that the entire matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. Equitable Life Assurance Society of United States v. Hobbs, 155 Kan. 534, 127 P.2d 477; Magnolia and Shell cases, infra, and Ray v. Board of County Com'rs, 173 Kan. 859, 252 P.2d 899 . | The entire matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. | "Is the entire matter of taxation, including the levy and collection of taxes, statutory and does not exist apart from statute?" | 045119.docx | LEGALEASE-00133904-LEGALEASE-00133905 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8412 | Gilbert v. United States, 165 F.3d 470 | 259+1 | The Act does not apply to members of the National Guard unless they have been called into "federal service." Until called into such service, members of the National Guard remain state, rather than federal officers. Perpich v. Dep't of Defense, 496 U.S. 334, 345, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990) ("unless and until ordered to active duty in the Army, [Guardsmen] retained their status as members of a separate State Guard unit"). Thus, "[e]xcept when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States." United States v. Dern, 74 F.2d 485, 487 (D.C.Cir.1934). "Guardsmen do not become part of the Army itself," as pointed out in United States v. Hutchings, 127 F.3d 1255, 1258 (10th Cir.1997), "until such time as they may be ordered into active federal duty by an official acting under a grant of statutory authority from Congress." Only when "that triggering event occurs [does] a Guardsman become[ ] a part of the Army and lose[ ] his status as a state serviceman." Id. See generally, Steven B. Rich, The National Guard, Drug Interdiction and Counterdrug Activities and Posse Comitatus: The Meaning and Implications of "in Federal Service," 1994 Army Law. 16. | National Guardsmen do not become part of the Army itself, until such time as they may be ordered into active federal duty by an official acting under a grant of statutory authority from Congress; only when that triggering event occurs does a Guardsman become a part of the Army and lose his status as a state serviceman. | Do National Guardsmen become a part of the army itself? | 008443.docx | LEGALEASE-00133973-LEGALEASE-00133975 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8413 | Davis v. Christy, 8 Mo. 569 | 83E+440 | The question is, whether Christy had a right to recover under this state of facts? It seems well settled, that the statute concerning Bonds and Notes makes the assignee the legal owner of the instrument assigned, and consequently, that it is erroneous to institute a suit in the name of the obligee or payee after an assignment. Jeffers v. Oliver, 5 Mo. R. 434.a That statute also gives the maker of a note, or obligor of a bond, a right of set-off against the assignee. It is not pretended that Foster, in making the assignment to Christy, acted as the agent of Holden; if he did, he failed to execute his power in such a manner as to bind or affect Holden. It is said the cancellation of the assignment by Holden re-vested the legal ownership of the bond in Foster. We cannot see on what principle such a consequence follows from the cancellation of the assignment. It does not appear that the cancellation was made with any such motive, for it was done without the knowledge or consent of Foster, but with a view to destroy the evidence of the fact that Holden had been the legal owner. The law will not permit a cancellation to be made when the interests of the obligee may be affected by it. If the obligee's right of set-off would exist against the assignee, notwithstanding the cancellation of the assignment, yet the proof of the facts necessary to entitle him to it is rendered more difficult. The case of Drummond v. Fletcher, 2 Wash., is not like the present. No evidence of the cancellation of the assignment was given by the party, and the question was one of variance between the proof and declaration. The objection was, that a cancellation was made, without proving the fact. The circumstances attending this transaction are suspicious. Holden takes the bond and retains it for some six months, and then, instead of assigning it immediately to Christy, as he might have done, he cancels the assignment made to himself, not with the assent of Foster, or with a view to give him any interest in the bond, | The holder of a note, whether negotiable or not, may strike out blank indorsements, but not indorsements in full, which confer a legal title to the instrument. | Can a holder of a note strike out indorsements in full which confer a legal title to the instrument? | 009433.docx | LEGALEASE-00134119-LEGALEASE-00134120 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 8414 | Auch v. Andres, 289 Mich. 206 | 83E+679 | The general rule is, that renewal notes given in lieu of others past due, upon which no payment has been made, is not payment of the original notes, even though the original notes are surrendered. Molsons Bank v. Berman, 224 Mich. 606, 195 N.W. 75, 35 A.L.R. 1289; McMorran v. Murphy, 68 Mich. 246, 36 N.W. 60; Gladwin State Bank v. Dow, 212 Mich. 521, 180 N.W. 601, 13 A.L.R. 1233; Allen v. Hillman, 215 Mich. 312, 183 N.W. 936; Klingensmith v. Clow& Sons, 270 Mich. 460, 259 N.W. 312. Plaintiff still has all the rights which George W. Auch had at the time the original notes were given. The original notes were given subsequent to the execution of the mortgage, but prior to its being filed. The mortgage is void as to Cuckovich. Fearey v. Cummings, 41 Mich. 376, 1 N.W. 946; Kennedy v. Dawson, 96 Mich. 79, 55 N.W. 616; Marine Savings Bank v. Norton, 160 Mich. 614, 125 N.W. 754; Ransom & Randolph Co. v. Moore, 272 Mich. 31, 261 N.W. 128; Timmer v. Talbot, D. C., 19 F.Supp. 687; Cutler v. Huston, 158 U.S. 423, 15 S.Ct. 868, 39 L.Ed. 1040. | Generally, renewal notes given in lieu of others past-due upon which no payment has been made is not "payment" of original notes, even though original notes are surrendered. | "Can renewal notes given in lieu of others past due, upon which no payment was made, be treated as payment of the original notes?" | 009472.docx | LEGALEASE-00134377-LEGALEASE-00134378 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8415 | Le v. Kilpatrick, 112 S.W.3d 631 | 307A+517.1 | As a general rule, a nonsuit vitiates prior interlocutory orders. See In re Bennett, 960 S.W.2d 35, 38 (Tex.1997); Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854"55 (Tex.1995). However, Le points out that a trial court's venue determination and any decision on the merits, such as a summary judgment or partial summary judgment, are not vitiated by a nonsuit. Consequently, Le suggests that, by analogy, the trial court's denial of the special appearances in the case at hand may not be vitiated by the nonsuit and therefore Le's appeal is not moot. | A trial court's venue determination, and any decision on the merits, such as a summary judgment or partial summary judgment, are not vitiated by a nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Are a trial court's venue determination, and any decision on the merits, such as a summary judgment or partial summary judgment, vitiated by a nonsuit?" | 028457.docx | LEGALEASE-00134312-LEGALEASE-00134313 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8416 | City of Muncie v. Peters, 709 N.E.2d 50 | 307A+486 | However, the party who has been deemed to have made those admissions may make a motion for withdrawal of those admissions to the trial court pursuant to T.R. 36(B). Id. at 888"89. The trial court cannot grant a motion to withdraw admissions unless it determines both (1) that withdrawal or amendment will subserve the presentation of the merits, and (2) that prejudice in maintaining the action or defense will not result to the party obtaining the admission. Id. at 889. The party seeking withdrawal has the burden of demonstrating that the presentation of the merits will be subserved by withdrawal, and the party who has obtained the admissions has the burden of demonstrating that it will be prejudiced if the trial court permits withdrawal. T.R. 36(B); Corby, 670 N.E.2d at 1326. Further, even if both of these conditions are satisfied, the rule does not compel the trial court to grant a request to withdrawal admissions; rather, the court may, in its discretion, permit withdrawal. General Motors, 573 N.E.2d at 889. We will reverse the grant or denial of a motion to withdraw admissions only for an abuse of discretion.Snell v. Snell, 581 N.E.2d 463 (Ind.Ct.App.1991); Eads v. Hill, 563 N.E.2d 625 (Ind.Ct.App.1990). | Even if the conditions for withdrawal of admissions are satisfied, the court is not compelled to grant withdrawal; rather, the court may, in its discretion, permit withdrawal. Trial Procedure Rule 36(B). | "Even if the conditions for withdrawal of admissions are satisfied, is the court compelled to grant withdrawal?" | 028924.docx | LEGALEASE-00134314-LEGALEASE-00134315 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 8417 | Texas Employers' Ins. Ass'n v. Bragg, 670 S.W.2d 712 | 307A+482.1 | The trial court has broad discretion in refusing or granting a motion of the non-answering party to permit the filing of an answer or denial to a request for admissions after the time therefor has expired. The ruling made by the trial court in the exercise of that discretion in either situation will be set aside only upon a showing of a clear abuse. Meyer v. Tunks, 360 S.W.2d 518 (Tex.1962); Mathes v. Kelton, 565 S.W.2d 78 (Tex.Civ.App."Amarillo 1977, affirmed on other grounds 569 S.W.2d 876 (Tex.1978); Schindler v. AG Aero Distributors, Inc., 502 S.W.2d 581 (Tex.Civ.App."Corpus Christi 1973, no writ). In order to avoid the consequences of a failure to answer, the party must show legal or equitable excuses for his failure to answer. Mathes at p. 81; Burnett v. Cory Corp., 352 S.W.2d 502 (Tex.Civ.App."Dallas 1961, writ ref'd n.r.e.). In the absence of a motion to permit a late filing of an answer, there can be no complaint of the action of the trial court in entering its order decreeing that the request for admissions be deemed admitted. Mathes at p. 81; Hill v. Caparino, 370 S.W.2d 760 (Tex.Civ.App."Houston 1963, no writ). No motion to deem unanswered requests for admissions admitted must be filed. Packer v. First Texas Savings Association of Dallas, 567 S.W.2d 574 (Tex.Civ.App."Eastland 1978, writ ref'd n.r.e.). Furthermore, in Elkins v. Jones, 613 S.W.2d 533 (Tex.Civ.App."Austin 1981, no writ), the Austin Court of Appeals held: When appellant did not answer the request for admissions or move for more time to answer, they were deemed admitted by operation of Rule 169. This is so whether or not the district court signed an order deeming the request admitted. Elkins at p. 534. See also Agristor Credit Corp. v. Donahoe, 568 S.W.2d 422 (Tex.Civ.App."Waco 1978, writ ref'd n.r.e.) | In order to avoid consequences of failure to answer request for admissions, party must show legal or equitable excuses for his failure to answer. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "To establish good cause for withdrawal of deemed admissions, must a party show a legal or equitable excuses for his failure to answer?" | 029045.docx | LEGALEASE-00134278-LEGALEASE-00134279 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8418 | Diversified Commc'ns v. Godard, 549 A.2d 362 | 307A+483 | Although the District Court could on motion have permitted withdrawal or amendment of the deemed admissions if there were no showing of prejudice to the plaintiff, see Rule 36(b), the defendant made no such motion. Since the District Court was therefore never asked to exercise the discretion it possesses under the Rule, we have no occasion to review whether there was an abuse of discretion. | On proper motion, trial court can permit withdrawal or amendment of deemed admissions if there is no showing of prejudice to other party. Rules Civ.Proc., Rule 36(b). | "On proper motion, can a trial court permit withdrawal or amendment of deemed admissions if there is no showing of prejudice to the other party?" | Pretrial Procedure - Memo # 3501 - C - ES.docx | ROSS-003289745-ROSS-003289746 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8419 | Stone v. Lenox Enterprises, 176 Ga. App. 696 | 307A+483 | As explained in Albitus, supra, in both form and substance an admission under the code discovery procedure is comparable to an admission in pleadings or stipulation of facts. As such it is generally regarded as a judicial admission rather than an evidentiary admission. A judicial admission, is conclusive unless allowed to be withdrawn by the court; an evidentiary admission is not conclusive but may be contradicted or explained. "[W]here answers to requests for admission were in fact filed after expiration of the statutory time, but without permission for late filing and where there was no motion seeking permission to withdraw the admissions resulting from the failure to timely respond, the answers could not be considered by the trial court in ruling on a motion for summary judgment." Albitus v. Farmers etc. Bank, supra at 408(1), 283 S.E.2d 632. Here, the substitution of answers to interrogatories is not proper response to requests for admissions nor of countervailing influence on the admissions. | Admission by failing to respond to requests for admissions is comparable to an admission in pleadings or stipulation of facts so as to be generally regarded as a "judicial admission" rather than an evidentiary admission, and a judicial admission is conclusive unless allowed to be withdrawn by court, while evidentiary admission is not conclusive but may be contradicted or explained. O.C.G.A. SS 9-11-36, 9-11-36(a)(2). | Is admission by failing to respond to requests for admissions comparable to an admission in pleadings or stipulation of facts so as to be generally regarded as a judicial admission? | Pretrial Procedure - Memo # 3780 - C - MS.docx | ROSS-003291018-ROSS-003291019 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8420 | Lawyers' Ass'n of St. Louis v. City of St. Louis, 294 S.W.2d 676 | 268+959 | Turning to the disputed ordinance, it states that it is "an ordinance levying and imposing an earnings tax for general revenue purposes of one half of one percent on salaries, wages, commissions and other compensation earned after August 31, 1952." (Emphasis ours.) We recognize that the name, purpose, designation or character given by the legislative body to a particular tax in the statute or ordinance imposing it is not conclusive upon the Court in determining the nature or purpose of the exaction. Yet it is entitled to due weight and consideration. In the final analysis it is for the Court to determine the purpose, nature and effect of a particular tax, regardless of its apparent legislative designation. 84 C.J.S., Taxation, " 1; 51 Am.Jur., Taxation, Sec. 28; Carter Carburetor Corporation v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438; Cummins v. Kansas City Public Service Co. (en Banc) 334 Mo. 672, 66 S.W.2d 920. | The name, purpose, designation or character given by legislative body to particular tax in statute or ordinance imposing it is not conclusive on court in determining nature or purpose of exaction, though entitled to due weight and consideration; determination of purpose, nature and effect of tax being for court in final analysis, regardless of its apparent legislative designation. | "Is a legislative declaration that a tax shall be of a particular character, conclusive?" | 045050.docx | LEGALEASE-00134175-LEGALEASE-00134177 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8421 | Mercer v. Rockwell Int'l Corp., 24 F. Supp. 2d 735 | 386+10 | For our purposes, the Restatement requires three basic elements for a negligent trespass: (1) the defendant must have breached its duty of due care (negligence); (2) defendant caused a thing to enter the land of plaintiff and (3) the thing's presence causes harm to the land. The Court has already found Defendant negligent as a matter of law, so the first requirement is met. The more difficult and interesting question is whether Plaintiffs have demonstrated an entry onto their land which caused harm. | Under Kentucky law, three basic elements for negligent trespass are that (1) defendant must have breached its duty of due care, (2) defendant must have caused a thing to enter land of plaintiff and (3) the thing's presence must have caused harm to the land. Restatement (Second) of Torts S 165. | What are the elements of negligent trespass? | Trespass - Memo 249 - JS.docx | ROSS-003291314 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 8422 | Rojas v. TK Commc'ns, 87 F.3d 745 | 25T+257 | Rojas' claim that the employment agreement is an unconscionable contract of adhesion is an attack on the formation of the contract generally, not an attack on the arbitration clause itself. Because her claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that her claims be heard by an arbitrator. See R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir.1992). | Former employee's claim that employment agreement was an unconscionable contract of adhesion was an attack on formation of contract generally, not an attack on arbitration clause contained in agreement; therefore, because claim related to entire agreement, rather than just arbitration clause, Federal Arbitration Act (FAA) required that claim be heard by arbitrator. 9 U.S.C.A. S 1 et seq. | "When a claim relates to the entire agreement, rather than just the arbitration clause, does the Federal Arbitration Act (FAA) require the claim be heard by an arbitrator?" | 007547.docx | LEGALEASE-00135805-LEGALEASE-00135806 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 8423 | Wisconsin v. Ho-Chunk Nation, 564 F. Supp. 2d 856 | 25T+151 | Counts 3, 5 and 6 fall precisely within the parameters of the arbitration provision because all three relate to an alleged breach of the compact for failure to make required payments and therefore constitute disputes regarding interpretation and enforcement of the compact. Count 4 and the Nation's related counterclaims invoke the statutory obligation to negotiate in good faith imposed by 25 U.S.C. 2710(d)(7)(B), suggesting that the claims may not involve the interpretation or enforcement of the compact, but rather are separate statutory claims. However, paragraphs 15(A) and (B) of the second amendment adopt and incorporate the identical obligation that the parties "shall negotiate in good faith to reach agreement on substitute provisions," thereby incorporating the statutory obligation into the compact. As a result, the claims for failure to negotiate in good faith are equally contractual and statutory and are subject to arbitration. The fact that such a claim may also be a separate federal cause of action does not override the parties' agreement to arbitrate the issue. Butler Manufacturing, 336 F.3d at 634. | Fact that a claim may be a separate federal cause of action does not override the parties' agreement to arbitrate the issue. | "Whether an arbitration claim, which is a separate federal cause of action, would override the parties agreement to arbitrate the issue?" | 007560.docx | LEGALEASE-00135841-LEGALEASE-00135842 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8424 | United States v. Schaffer, 183 F.3d 833 | 63+1(1) | The two provisions additionally differ in their temporal focus. Bribery is entirely future-oriented, while gratuities can be either forward or backward looking. See Campbell, 684 F.2d at 148. In other words, whereas bribery involves the present giving, promise, or demand of something in return for some action in the future, an unlawful gratuity can take one of three forms. First, a gratuity can take the form of a reward for past action-i.e. for a performed official act. See, e.g.,id. at 148-50 (illegal gratuity where construction company moved the household goods of a judge who had suspended hundreds of its traffic tickets). Second, a gratuity can be intended to entice a public official who has already staked out a position favorable to the giver to maintain that position. See Sun-Diamond, --- U.S. at ----, 119 S.Ct. at 1408 (postulating scenario of gift to Department of Justice antitrust appointee who had publicly indicated support of the giving company's pending merger because of anticipated continued future support). Finally, a gratuity can be given with the intent to induce a public official to propose, take, or shy away from some future official act. See, e.g.,United States v. Sawyer, 85 F.3d 713 (1st Cir.1996) (gifts to legislators who had ability to affect company's ongoing legislative concerns constitute unlawful gratuities under analogously worded Massachusetts statute). This third category would additionally encompass gifts given in the hope that, when the particular official actions move to the forefront, the public official will listen hard to, and hopefully be swayed by, the giver's proposals, suggestions, and/or concerns. | Under federal bribery statute, bribery involves present giving, promise, or demand of something in return for some action in the future, while an unlawful gratuity can take one of three forms: gratuity can take form of reward for past action, gratuity can be intended to entice public official who has already staked out position favorable to giver to maintain that position, and gratuity can be given with intent to induce public official to propose, take, or shy away from some future official act, which would encompass gifts given in hope that, when particular official actions move to forefront, public official will listen hard to, and hopefully be swayed by, giver's proposals, suggestions, and/or concerns. 18 U.S.C.A. S 201(b), (c)(1)(A). | "Can a gratuity in violation of a statute be provided for a past, present or future action?" | 011593.docx | LEGALEASE-00135043-LEGALEASE-00135044 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 8425 | People v. Trowers, 215 Ill. App. 3d 862 | 63+1(1) | Defendant contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that he physically tendered to any police officer any of the money contained in the shoe box. However, the word "tender" as used in the statute has been held to include the mere offer or promise made with the requisite intent. The act of offering or promising the tender of a prohibited commodity or act is sufficient to constitute the completed offense of bribery. People v. Brandsetter (1982), 103 Ill.App.3d 259, 269, 58 Ill.Dec. 699, 706"07, 430 N.E.2d 731, 738"39. | Act of offering or promising tender of prohibited commodity or act is sufficient to constitute completed offense of bribery. S.H.A. ch. 38, P 33-1(a). | Is act of offering or promising tender of prohibited commodity or act sufficient to constitute completed offense of bribery? | Bribery - Memo #477 - C-JL.docx | ROSS-003316218-ROSS-003316219 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8426 | In re James B., 109 Cal. App. 4th 862 | 67+2 | Therefore, "[w]e must use a liberal and commonsense approach to ascertain if a particular act constitutes a vehicle burglary within the confines of Penal Code section 459. [Citation.] This criminal statute is to be construed flexibly in light of the legislative objective to make it more serious to break into the interior sections of locked cars than merely stealing from them. [Citations.]" (People v. Allen, supra, 86 Cal.App.4th at pp. 915"916, 103 Cal.Rptr.2d 626.) | Automobile burglary statute is to be construed flexibly in light of the legislative objective to make it more serious to break into the interior sections of locked cars than merely stealing from them. West's Ann.Cal.Penal Code S 459. | How is the automobile burglary statute construed? | Burglary - Memo 125 - JS.docx | ROSS-003290436-ROSS-003290437 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 8427 | First Interstate Bank of Texas, N.A. v. Burns, 951 S.W.2d 237 | 307A+716 | We do not interpret the statute as imposing either requirement. The italicized language modifies only the type of case eligible for continuance. That is, a case may be continued if the party applying for the continuance is represented by an attorney who (1) is a member of the legislature and (2) will participate or does participate in the session. Nothing in the statute requires that the hearing date to be continued fall within the dates of the legislative session. In fact, the statute clearly contemplates reprieving legislators from settings for thirty days beyond the legislative session. See id. Consequently, that the hearing was set for a date after the legislature had adjourned does not render the statute inapplicable. | Case may be continued, pursuant to legislative continuance statute, if party applying for continuance is represented by attorney who is member of legislature and will participate or does participate in the legislative session; nothing in statute requires that hearing date to be continued fall within dates of the session. V.T.C.A., Civil Practice & Remedies Code S 30.003(b). | Can a case be continued if the party applying for continuance is represented by an attorney who is a member of the legislature and will participate or does participate in the legislative session? | 029215.docx | LEGALEASE-00135145-LEGALEASE-00135146 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8428 | Siggelkow v. Siggelkow, 643 P.2d 985 | 307A+716 | In the present case, Walter received notice on June 13 that the final divorce hearing was scheduled to begin on August 11. Notwithstanding such notice, Walter waited until the last minute to hire an attorney. No evidence is presented to excuse this delay in obtaining a new attorney. Prejudice resulting from a party's lack of diligence in securing an attorney does not afford a basis to obtain a continuance. See Maynard v. Bullis, 99 Cal.App.2d 805, 222 P.2d 685, 686 (1950); Benson v. Benson, 204 P.2d at 319. Moreover, since the challenge to the judge resulted in a postponement from August 11 to September 3, Walter's new attorney had adequate opportunity to prepare the case. In our view, the court's decision to proceed as scheduled did not deprive Walter of the right to present his case. We conclude, therefore, that the denial of the motion for continuance was not an abuse of discretion. | Prejudice resulting from a party's lack of diligence in securing an attorney does not afford a basis to obtain continuance. | Does prejudice resulting from a party's lack of diligence in securing an attorney afford a basis to obtain continuance? | 029251.docx | LEGALEASE-00135551-LEGALEASE-00135552 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8429 | In re Posadas USA, 100 S.W.3d 254 | 307A+716 | The trial court has wide discretion in granting or denying a motion for continuance. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex.1986). When the ground for a continuance is withdrawal of counsel, the movant must show that the lack of counsel is not due to their own fault or negligence. Id. When an attorney is permitted to withdraw, the trial court must give the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial. Id. | When the ground for a continuance is withdrawal of counsel, the movant must show that the lack of counsel is not due to movant's own fault or negligence. | "When the ground for a continuance is withdrawal of counsel, must the movant show that the lack of counsel is not due to movant's own fault or negligence?" | 029307.docx | LEGALEASE-00135284-LEGALEASE-00135285 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8430 | Withrow v. Withrow, 278 Ga. 525 | 307A+716 | Counsel never moved for a continuance due to the conflicts, a need for further discovery, or on any other basis. SurgiJet v. Hicks, 236 Ga.App. 80, 82(4), 511 S.E.2d 194 (1999); Atlanta West Enterprises v. Cobb County Bank, supra. Moreover, "the absence of a [party's] counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. [Cit.]" Davis v. Barnes, 158 Ga.App. 89, 90, 279 S.E.2d 330 (1981). See also Cotton States Life Ins. Co. v. Edwards, 74 Ga. 220(1) (1884); Lewis v. Dairyland Ins. Co., 169 Ga.App. 265(1), 312 S.E.2d 165 (1983). Although a continuance was not requested in this case, the trial court did postpone the case until the afternoon, and we find no abuse of discretion in the trial court's refusal to delay the commencement of trial any further. Davis v. Barnes, supra. | The absence of a party's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. | "Is the absence of a party's counsel, without leave, to attend proceedings in other courts no ground for continuance or postponement?" | 029336.docx | LEGALEASE-00135952-LEGALEASE-00135953 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8431 | Brooks v. Am. Broad. Co., 179 Cal. App. 3d 500 | 307A+485 | We first consider the factors which may properly be considered in determining whether a requested admission is "of substantial importance." Federal courts considering the issue have generally found a request for admission to have been of substantial importance when the matter requested for admission was central to disposition of the case. (See Campbell v. Spectrum Automation Co. (6th Cir.1979) 601 F.2d 246, 253 ["The admission sought ... was clearly of substantial importance since it was dispositive of [plaintiff's] claim...."]; Bradshaw v. Thompson (6th Cir.1972) 454 F.2d 75, 81; Boyle v. Leviton Mfg. Co. (S.D.Ind.1981) 94 F.R.D. 33, 36 ["[T]he requested admissions were dispositive of the lawsuit as indicated by the summary judgment."].) We agree with this view. Although circumstances may occur in some future case where a request for admission might be of substantial importance even though it is not at least partially outcome determinative, as a general rule a request for admission should have at least some direct relationship to one of the central issues in the case, i.e., an issue which, if not proven, would have altered the results in the case. | In order for request for admission to be of "substantial importance" so as to warrant imposing expenses of proving truth of requested admission upon party denying admission under S 2034(c), request should have at least some direct relationship to a central issue in case, i.e., an issue which, if not proven, will alter results in case. West's Ann.Cal.C.C.P. S 2034(c). | Should a request for admission have at least some direct relationship to one of the central issues in the case? | Pretrial Procedure - Memo # 3483 - C - NS.docx | ROSS-003317810-ROSS-003317811 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 8432 | Ordonez v. Solorio, 480 S.W.3d 56 | 307A+483 | Thus, to be "served" the request for admissions was required to be mailed to Ordonez or to his attorney of record. Solorio did neither. The request for admissions was mailed to attorney McMenamy before he became an attorney of record for Ordonez. McMenamy did not become Ordonez's attorney of record until he filed Ordonez's original answer seven months later. Service on an attorney before that attorney becomes the party's attorney of record is not valid service under Rule 21a, and a request for admissions so served is neither properly served under Rule 198.1 nor deemed admitted under Rule 198.2(c). See White v. Tricontinental Leasing Corp., 760 S.W.2d 23, 24"25 (Tex.App."Dallas 1988, no writ) (request for admissions served on attorney during the time period he was not an attorney of record was not properly deemed admitted under the predecessor rule to Rule 198) | Service on an attorney before that attorney becomes the party's attorney of record is not valid service, and a request for admissions so served is neither properly served nor deemed admitted. Tex. R. Civ. P. 21a, 198.1, 198.2(c). | Is service on an attorney before that attorney becomes the party's attorney of record not valid service? | Pretrial Procedure - Memo # 3490 - C - NS.docx | ROSS-003303228-ROSS-003303229 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 8433 | Shankle v. Shankle, 289 N.C. 473 | 307A+716 | Although in Abernethy v. Trust Co., supra, the motion to continue involved the presence of the party plaintiff at her trial, its rationale may be equally applicable to the absence of the party's attorney. In this regard, the general rule is that an attorney's withdrawal on the eve of the trial of a civil case is not Ipso facto grounds for a continuance. See Annot.;"Withdrawal or discharge of counsel in civil case as a ground for continuance," 48 A.L.R.2d 1155 (1956); 17 C.J.S. Continuances s 23 (1963). In accordance with the established principles hereinbefore outlined, the decision whether to grant a continuance because the moving party's attorney has withdrawn from the case on the day of trial rests in the trial judge's discretion, to be exercised after he has determined from the facts and circumstances of the particular case, whether immediate trial or continuance will best serve the ends of justice. | General rule is that attorney's withdrawal on eve of trial of civil case is not ipso facto grounds for continuance. Rules of Civil Procedure, rule 40(b), G.S. S 1A-1. | Is an attorney's withdrawal on the eve of trial of civil case not ipso facto grounds for continuance? | 029628.docx | LEGALEASE-00135014-LEGALEASE-00135015 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8434 | Grynberg v. Karlin, 134 P.3d 563 | 307A+483 | When a party fails to respond in a timely way to a request for admission, it admits the relevant subject matter of the request. Lionelle v. S.E. Colo. Water Conservancy Dist., 676 P.2d 1162, 1167 (Colo.1984); Cox v. Pearl Inv. Co., 168 Colo. 67, 72, 450 P.2d 60, 62 (1969); Engel v. Engel, 902 P.2d 442, 446 (Colo.App.1995). These admissions may then be used to support a summary judgment. See Lionelle v. S.E. Colo. Water Conservancy Dist., supra; Cox v. Pearl Inv. Co., supra; see also Trautman & Shreve, Inc. v. Mead & Mount Constr. Co., 163 Colo. 308, 430 P.2d 474 (1967). | When a party fails to respond in a timely way to a request for admissions, thus admitting the relevant subject matter of the request, these admissions may then be used to support a summary judgment. Rules Civ.Proc., Rule 36. | "When a party fails to respond in a timely way to a request for admission, does it admit the relevant subject matter of the request?" | Pretrial Procedure - Memo # 3561 - C - KG.docx | ROSS-003289772-ROSS-003289773 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8435 | Tavakolian v. Agio Corp., 304 Ga. App. 660 | 307A+483 | In order "[t]o affirm a grant of summary judgment, it must affirmatively appear from the record that no question of material fact exists and [that] the moving party is entitled to judgment as a matter of law." In the case at bar, the trial court's order was based on a finding that H.T. never denied or responded in any way to the two sets of requests for admissions served upon him. To be sure, "a party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests." But the record does not support the finding that H.T. failed to respond to the request for admissions that were served with the complaint on January 6, 2008. Rather, the record shows that on February 5, 2008, H.T. filed an answer, including an "answer to requests for interrogatories, admissions and notice to produce," in addition to a USCR 5.2 certificate indicating that he had served his discovery responses. | A party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests. | Does a party's failure to timely respond to requests for admission conclusively establish as a matter of law each of the matters addressed in the requests? | 029824.docx | LEGALEASE-00135540-LEGALEASE-00135542 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8436 | E. Haven Builders Supply v. Fanton, 80 Conn. App. 734 | 307A+483 | The request for admissions is an instrument of discovery. Requests for admissions are governed by Practice Book 13-22 through 13-25. Section 13-23 (a) mandates in relevant part that "each matter of which an admission is requested is admitted unless, within thirty days after the filing of the notice required by Section 13-22 (b), or within such shorter or longer time as the judicial authority may allow, the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." A party response to a request for admissions is binding as a judicial admission unless the judicial authority permits withdrawal or amendment. See Practice Book 13-24; see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.1988) 2.3.3, p. 22. Similarly, a failure to respond timely to a request for admissions "means that the matters sought to be answered were conclusively admitted." E. Stephenson, Connecticut Civil Procedure (3d Ed.2002) 124 (e), p. 121. Once a response has been filed, the party who has requested the admission may file a motion to determine the sufficiency of the answer or objection. See Practice Book 13-23 (b). | A failure to respond timely to a request for admissions means that the matters sought to be answered were conclusively admitted. Practice Book 1998, S 13-22 et seq. | Does a failure to respond timely to a request for admissions mean that the matters sought to be answered were conclusively admitted? | 029884.docx | LEGALEASE-00135254-LEGALEASE-00135255 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8437 | Schleimer v. Winter, 2002 WL 120561 | 307A+485 | A party moving for costs of proof under Code of Civil Procedure section 2033, subdivision (o) must provide evidence supporting the amount requested, as with any other discovery sanction. (Code Civ. Proc., " 2023, subd. (c); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) 8:1413.1, p. 8G"38.) The trial court must exercise its discretion to determine whether the amount of attorney fees requested is reasonable. (Garcia v. Hyster Co. (1994) 28 Cal.App.4th 724, 737, 34 Cal.Rptr.2d 283.) If the trial court determines that the amount requested is unreasonable, it must determine and award a reasonable amount. (Id. at pp. 737"738, 34 Cal.Rptr.2d 283.). | In ruling on motion for costs of proof, trial court must exercise its discretion to determine whether amount of attorney fees requested is reasonable, and if trial court determines that amount requested is unreasonable, it must determine and award a reasonable amount. West's Ann.Cal. C.C.P. S 2023, subd. 3, 2033. | Should court exercise its discretion to determine whether amount of attorney fees requested is reasonable? | Pretrial Procedure - Memo # 3823 - C - DA.docx | LEGALEASE-00025668-LEGALEASE-00025669 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8438 | Dolgencorp of Texas v. Lerma, 241 S.W.3d 584 | 307A+716 | In this context, rules 251 and 253 of the Texas Rules of Civil Procedure provide a remedy, via motion for continuance, through which Dollar General's counsel could have resolved his conflicting settings. Counsel for Dollar General could have filed a motion for continuance seeking to reset the February 26 setting but chose not to do so. Harrison testified he was too busy with a major trial and did not have time to file a motion for continuance; however, he also testified that there were 12 other attorneys in his firm, including Sachitano, who could have filed a motion for continuance. In fact, Sachitano testified he was available to appear and present a request for continuance. Sachitano did not appear because Harrison instructed him not to. Generally, absence of counsel is not good cause for a continuance. Tex.R. Civ. P. 253; Rehabilitation Facility v. Cooper, 962 S.W.2d 151, 155"56 (Tex.App.-Austin 1998, no pet). The court does, however, have discretion to allow a continuance if good cause is shown. See Rehabilitation Facility, 962 S.W.2d at 155. Again, Dollar General failed to seek this remedy. | Although absence of counsel is generally not good cause for a continuance, the court has discretion to allow a continuance if good cause is shown. Vernon's Ann.Texas Rules Civ.Proc., Rule 253. | "Although absence of counsel is generally not good cause for a continuance, does the court have discretion to allow a continuance if good cause is shown?" | 030124.docx | LEGALEASE-00135963-LEGALEASE-00135964 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 8439 | Smith v. Home Indem. Co., 683 S.W.2d 559 | 307A+482.1 | Before considering the points of error raised on this appeal, we deem it necessary to comment on the effect of appellant's unanswered requests for admissions, some sixteen admissions having been deemed by the court because of his failure to answer. Smith erroneously argues that his deposition testimony contradicts his deemed admissions, thereby creating a fact question. Such is just not the case. TEX.R.CIV.P. 169 specifically states in part that any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission. Smith totally ignored the requests for admissions and they went unanswered, without a motion to extend time for answering, or any other limiting motion, right up through the trial of this case. Neither did he move the court to withdraw or amend the admissions after they had been deemed by the court. Admissions, once made or deemed by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits. Henke Grain Co. v. Keenan, 658 S.W.2d 343, 347 (Tex.App."Corpus Christi 1983, no writ); American Title Company v. Smith, 445 S.W.2d 807, 809 (Tex.Civ.App."Houston [1st Dist.] 1969, no writ). Where a party fails to respond to a request for admissions, "he will be precluded from offering summary judgment proof contradictory to those admissions." Henke, 658 S.W.2d at 347. | If a party fails to respond to a request for admissions, he will be precluded from offering summary judgment proof contradictory to them. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Where a party fails to respond to a request for admissions, will he be precluded from offering summary judgment proof contradictory to those admissions?" | 030458.docx | LEGALEASE-00135978-LEGALEASE-00135979 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8440 | United States v. Jennings, 160 F.3d 1006 | 63+11 | Direct evidence of intent is unnecessary, however. To prove bribery under " 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. See United States v. Massey, 89 F.3d 1433, 1439 (11th Cir.1996); United States v. Biaggi, 909 F.2d 662, 684 (2d Cir.1990). Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. See Arthur, 544 F.2d at 734. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. See id. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." Id. (internal quotation omitted). Thus, all that must be shown is that payments were made with the intent of securing a specific type of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. See id. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action. | Government is not required to prove an expressed intention or agreement to engage in a quid pro quo in order to prove bribery of public official; such an intent may be established by circumstantial evidence. 18 U.S.C.A. S 201(b)(1)(A). | Is direct evidence of intent necessary to prove bribery of a public official? | 011703.docx | LEGALEASE-00136634-LEGALEASE-00136635 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8441 | United States v. Dunlap, 17 F. Supp. 2d 1183 | 63+1(1) | It would be wholly inconsistent with this congressionally authorized practice of plea agreements that provide leniency to defendants in exchange for cooperation to hold that Congress intended to criminalize such agreements in 18 U.S.C. " 201(c). For these reasons, this court holds that the agreements made with the government's witnesses did not violate the anti-gratuity statute. These agreements were within the express authority granted by the Congress in the rules and statutes cited herein and consistent with official policy established by the Attorney General of the United States and the United States Sentencing Commission. It is, therefore,ORDERED that the motions to suppress are denied. | In passing anti-gratuity statute, which prohibits giving, promising or offering of anything of value in exchange for testimony, Congress did not intend to criminalize Congressionally authorized practice of plea agreements that provide leniency to witnesses in exchange for their testimony. 18 U.S.C.A. SS 201(c)(2, 3), 3553(e); U.S.S.G. S 5K1.1, 18 U.S.C.A.; Fed.Rules Cr.Proc.Rules 11(e), 35(b), 18 U.S.C.A. | Did the Congress intend to criminalize plea agreements that provide leniency to witnesses in exchange for their testimony? | 011749.docx | LEGALEASE-00136320-LEGALEASE-00136321 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 8442 | People v. Salemme, 2 Cal. App. 4th 775 | 67+15 | For reasons which follow, we conclude that a person who enters a structure enumerated in Penal Code section 459 with the intent to commitanyfelony is guilty of burglary except when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the entrant's felonious intent. Since neither condition was satisfied in this case, defendant's alleged entry constituted burglary even though the act may have posed no physical danger to the victim who had invited defendant in to purchase securities from him. | Person who enters a structure enumerated in burglary statute with intent to commit a felony therein is guilty of burglary, unless he has unconditional possessory right to enter as occupant of that structure, or unless he is invited in by occupant, who knows of and endorses his felonious intent. West's Ann.Cal.Penal Code SS 459, 460. | Does entry into a structure with intent to commit any felony constitute burglary? | 012682.docx | LEGALEASE-00136032-LEGALEASE-00136034 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 8443 | Canada S. Ry. Co. v. Gebhard, 109 U.S. 527 | 221+321 | That the laws of a country have no extraterritorial force is an axiom of international jurisprudence, but things done in one country under the authority of law may be of binding effect in another country. The obligor of the bonds and coupons here sued on was a corporation created for a public purpose; that is to say, to build, maintain, and work a railway in Canada. It had its corporate home in Canada, and was subject to the exclusive legislative authority of the Dominion parliament. It had no power to borrow money or incur debts except for completing, maintaining, and working its railway. The bonds taken by the defendants in error showed on their face that they were part of a series amounting in the aggregate to a very large sum of money, and that they were secured by a trust mortgage on the railway of the company, its lands, tolls, revenues, etc. In this way the defendants in error, when they bought their bonds, were, in legal effect, informed that they were entering into contract relations, not only with a foreign corporation created for a public purpose, and carrying on its business within a foreign jurisdiction, but with the holders of other bonds of the same series, who were relying equally with themselves for their ultimate security on a mortgage of property devoted to a public use, situated entirely within the territory of a foreign government. A corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," (Bank of Augusta v. Earle, 13 Pet. 588,) though it may do business in all places where its charter allows and the local laws do not forbid. Railroad v. Koontz, 104 U. S. 12. But wherever it goes for business it carries its charter, as that is the law of its existence, (Relf v. Rundle, 103 U. S. 226,) and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those | While the laws of a country have no extra-territorial force, things done in one country under authority of law may be of binding effect in another country. | "While the laws of a country have no extra-territorial force, can things done in one country or acts of a foreign government under the authority of law be of binding effect in another country?" | 020690.docx | LEGALEASE-00136483-LEGALEASE-00136485 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8444 | In re D.E.G., 228 N.C. App. 381 | 307A+716 | Parents have a right to counsel in all proceedings dedicated to the termination of parental rights." In re L.C., I.C., L.C., 181 N.C.App. 278, 282, 638 S.E.2d 638, 641 (citation and quotations omitted), disc. review denied, 361 N.C. 354, 646 S.E.2d 114 (2007); see also N.C. Gen.Stat. " 7B"1101.1. The right to counsel in a termination of parental rights proceeding includes the right to the effective assistance of counsel. In re Dj.L., D.L. & S.L., 184 N.C.App. 76, 84, 646 S.E.2d 134, 140 (2007) (citation omitted). After making an appearance in a particular case, an attorney may not cease representing his or her client in the absence of "(1) justifiable cause, (2) reasonable notice [to the client], and (3) the permission of the court." Smith v. Bryant, 264 N.C. 208, 211, 141 S.E.2d 303, 305 (1965) (citation omitted). "The determination of counsel's motion to withdraw is within the discretion of the trial court, and thus we can reverse the trial court's decision only for abuse of discretion." Benton v. Mintz, 97 N.C.App. 583, 587, 389 S.E.2d 410, 412 (1990) (citation omitted). However, "[w]here an attorney has given his client no prior notice of an intent to withdraw, the trial judge has no discretion" and "must grant the party affected a reasonable continuance or deny the attorney's motion for withdrawal." Williams and Michael v. Kennamer, 71 N.C.App. 215, 217, 321 S.E.2d 514, 516 (1984). As a result, before allowing an attorney to withdraw or relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court must inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected. In re S.N.W., 204 N.C.App. 556, 561, 698 S.E.2d 76, 79 (2010). | Where attorney has given his client no prior notice of intent to withdraw as counsel, trial judge has no discretion and must grant party affected reasonable continuance or deny attorney's motion for withdrawal. | Does the withdrawal of an attorney not give the client an absolute right to a continuance? | 029440.docx | LEGALEASE-00136398-LEGALEASE-00136400 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8445 | Richey v. Richey, 704 So. 2d 343 | 307A+716 | La.Code Civ.P. art. 1601 provides that "a continuance may be granted in any case if there is good ground therefor." Often, when a litigant's lawyer withdraws at or near trial, that litigant may be entitled to a continuance to employ another attorney. However, the trial court's discretion in this area is great, and the decision to deny such a requested continuance will not be disturbed absent a clear showing of abuse. Id. Shelley had nearly two months after her attorney withdrew to find new representation. She provided no explanation for her failure to do so. The record shows that 12 continuances had already been granted during the course of the proceedings: four to John, six to Shelley, and two by joint stipulation. The trial judge expressed his concern for his docket and the need of the parties to resolve the issues being presented. We find no abuse in the trial court's decision to deny the continuance | Often, when litigant's lawyer withdraws at or near trial, that litigant may be entitled to continuance to employ another attorney. LSA-C.C.P. art. 1601. | "When litigant's lawyer withdraws at or near trial, is that litigant entitled to continuance to employ another attorney?" | 029488.docx | LEGALEASE-00136570-LEGALEASE-00136572 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8446 | First Nat. Bank v. Edwards, 81 S.W. 541 | 307A+69.1 | When interrogatories are crossed, either party may use the depositions on the trial, and the defendant cannot object to answers to his questions, though detrimental to his interest. This rule, we think, does not apply to incompetent evidence, and therefore hold that the action of the court in excluding other testimony complained of was correct. | The rule that, when interrogatories are crossed, either party may use the deposition, and defendant cannot object to answers to his questions, does not apply to incompetent evidence. | "When interrogatories are crossed, may either party use the deposition, and defendant cannot object to answers to his questions?" | 029983.docx | LEGALEASE-00136648-LEGALEASE-00136649 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 8447 | Bryant v. Kimmons, 430 S.W.2d 73 | 307A+480 | The rule is firmly established that admissions directed to one defendant, whether answered, or admitted by reason of failure to answer, are not evidence against other defendants in the same case. Sanchez v. Caroland, 274 S.W.2d 114 (Tex.Civ.App., Fort Worth, no writ); Talbott v. Hogg, 298 S.W.2d 883 (Tex.Civ.App., Amarillo, writ dsmd.); Richards Oil Co. v. W S Luckie Inc., 391 S.W.2d 135 (Tex.Civ.App., Austin, writ ref. n.r.e.); Davis v. Coastal States Petrochemical Co., 405 S.W.2d 854 (Tex.Civ.App., Houston, no writ). Only the defendant against whom the evidence is tendered, or someone having authority from him, can make such an admission against his interest. Talbott v. Hogg and Sanchez v. Caroland, supra. | Requests for admissions directed to one defendant, whether answered, or admitted by reason of failure to answer, are not evidence against other defendants in same case. | "Are admissions directed to one defendant, whether answered, or admitted by reason of failure to answer, evidence against other defendants in the same case?" | Pretrial Procedure - Memo # 3943 - C - RF.docx | ROSS-003291044-ROSS-003291045 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8448 | Harris v. Powell, 56 Mo. App. 24 | 307A+723.1 | This action was begun before a justice for a medical bill for $37. Before the trial, defendant tendered $10.95, being $7 admitted to be due, and $3.95 costs at time of tender. This was refused by plaintiff who recovered judgment before another justice on change of venue, and subsequently on appeal recovered judgment in the circuit court. Plaintiff also refused to accept the tender in the circuit court. From this judgment defendant appeals. On the trial in the circuit court there was an application for continuance on account of an absent witness. It, however, failed to show any reason for not taking the deposition of such witness, and was therefore properly overruled.. | An application for a continuance, which failed to show any reason for not taking the deposition of an absent witness, was properly overruled. | "Is an application for a continuance, which failed to show any reason for not taking the deposition of an absent witness, properly overruled?" | Pretrial Procedure - Memo # 3998 - C - KBM.docx | ROSS-003304083-ROSS-003304084 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8449 | Condos v. Associated Transports, 453 S.W.2d 682 | 307A+719 | The handwritten interlineation of the words "including future knee surgery" into the petition at the time of trial, out of the hearing or knowledge of the jury should not be the determining factor in finding prejudicial error. It is clear that upon request the trial court would have allowed the amendment to the petition at the time of trial, since it admitted the evidence as being within the scope of the pleadings and since there was no surprise. This would have been within the discretion of the trial court and no error would now be present, even under the theory of the appellant. This was not done. However, Civil Rule 55.54 V.A.M.R., also allows amendment of the pleadings to conform them to the evidence and this may be done even after judgment is entered and over the objection of the other party. Dressler v. Louvier, Mo., 1966, 408 S.W.2d 852, Johnson v. Flex-O-Lite Mfg. Corp., Mo., 1958, 314 S.W.2d 75, 83(9). Pleadings may be considered to be amended to conform to the proof under the rule even when the amendment is not in fact made. LaPlant v. E. I. Du Pont De Nemours & Co., Mo.App., 1961, 346 S.W.2d 231, 241; Knight v. Swift & Co., Mo., 1960, 338 S.W.2d 795, 800(8); Bowers v. Spinaio, Mo.App., 1967, 421 S.W.2d 790; Heald v. Erganian, Mo., 1964, 377 S.W.2d 431. The rule also provides: "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action would be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." Assuming a remand and amendment as above, on retrial the same evidence as admitted in this case would be submitted under the same instruction to a jury unaware of the status of the pleadings. In this case there was no prejudice to defendant in | Where surprise is actually present, or where additional time is needed to meet additional evidence under amendment of pleadings to conform to proof, parties can be protected by granting of continuances. V.A.M.R. Civil Rule 55.54. | "Where surprise is actually present, can parties be protected by granting of continuances?" | 030298.docx | LEGALEASE-00136864-LEGALEASE-00136865 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 8450 | Hamilton v. Dismukes, 53 Tex. Civ. App. 129 | 307A+723.1 | When the case was called for trial appellant moved to continue for the purpose of obtaining the testimony of the witness Marsh. From the recitations in said motion it would appear that the testimony of this witness was material, but there was no affirmative statement in said motion that such testimony was material. It further appears from the record that the suit was filed on the 15th of June, 1906, and that defendant's original answer was filed on the 20th of August next thereafter, and his amended answer on the 17th of September, 1907, and that on November 18, 1907, on the call of the docket for announcements, defendant announced ready for trial. His interrogatories to the witness Marsh had not then been filed with the clerk, nor had notice, time, and commission been waived by the plaintiff, nor had plaintiff crossed the same. On the day after defendant's announcement plaintiff did make waiver and crossed said interrogatories. The case was called for trial and tried on the 23d of November, 1907. We think the motion was properly overruled, first, because in our judgment there was a total lack of diligence shown to obtain the testimony of said witness, who it seems from the motion resided in McLennan county, Tex. Besides this, said motion was fatally defective because there was no affirmative allegation therein that the testimony sought was in fact material. This is specifically required by article 1278, Sayles' Ann. Civ. St. 1897. In Patton v. Williams, 35 Tex. Civ. App. 129, 79 S. W. 357, the exact question with reference to the necessity of the allegation that the testimony is material was considered and determined adversely to the contention of appellant. This assignment will therefore be overruled. | A motion for a continuance because of an absent witness is fatally defective, where there is no affirmative allegation specially required by Sayles' Ann.Civ.St. 1897, art. 1278, Vernon's Ann.Civ.St. art. 2168, that the testimony sought is in fact material. | Is a motion for a continuance fatally defective because of no affirmative allegation that the testimony sought was material? | Pretrial Procedure - Memo # 4047 - C - KG.docx | ROSS-003317966-ROSS-003317967 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8451 | Whaley v. Cooper, 82 Ga. 72 | 307A+723.1 | There was no error in overruling the motion to set aside the judgment in this case. It was a matter within the discretion of the court, and we do not think the court in this case abused that discretion. If the plaintiff in error had a good ground of continuance at the term at which the verdict was rendered against him on the notes, and the court refused to continue, he should have filed his bill of exceptions at that term, and should not have waited until the next term of court, and then moved to set aside the verdict. | A party aggrieved by the denial of a continuance at the term at which verdict is rendered should file a bill of exceptions at that term, instead of moving at the next term to set aside the verdict, and such motion is addressed to the discretion of the court. | Should a party aggrieved by the denial of a continuance at the term at which verdict is rendered file a bill of exceptions at that term? | 030383.docx | LEGALEASE-00136706-LEGALEASE-00136707 | Order, SA | 0.51 | 1 | 0 | 0 | 1 | |
| 8452 | Roob v. Von Beregshasy, 866 S.W.2d 765 | 307A+723.1 | The only proof presented by appellant is his verified motion for continuance, which states that he did not receive the notice until September 9. Appellee filed no response to the motion for continuance. Where a first motion for continuance is in substantial compliance with the rule and is not controverted, this Court must accept the statements in the motion as true. Verkin v. Southwest Center One, Ltd., 784 S.W.2d 92, 94 (Tex.App."Houston [1st Dist.] 1989, writ denied). The trial court has no discretion to reject uncontroverted facts set out by a party in a sworn motion for continuance. Id. If we accept as true appellant's statement that he received neither a copy of the motion for summary judgment nor notice of the summary judgment hearing on September 9, then appellant received only 14"days notice of the hearing. The rule requires 21"days notice. Cronen, 835 S.W.2d at 208; Tex.R.Civ.P. 166a(c). | Trial court has no discretion to reject uncontroverted facts set out by party in a sworn motion for continuance. | Does a trial court have no discretion to reject uncontroverted facts set out by a party in a sworn motion for continuance? | 030438.docx | LEGALEASE-00136277-LEGALEASE-00136278 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8453 | Thongchoom v. Graco Children's Prod., 117 Wash. App. 299 | 307A+723.1 | "A continuance is not justified if the party fails to support the request with an explanation of the evidence to be obtained through additional discovery." Molsness v. City of Walla Walla, 84 Wash.App. 393, 400"01, 928 P.2d 1108 (1996). The motion to compel does not include an explanation of what evidence they would have obtained with the additional discovery. It was merely an assertion that the materials requested in the interrogatories and requests for production were in the scope of discovery because they related to Graco's knowledge. The motion to compel was nothing more than the Thongchooms' understanding of the information they were seeking from Graco. They had no knowledge that any of the information would be favorable to their case. A continuance would not have been justified. | A continuance is not justified if the party fails to support the request with an explanation of the evidence to be obtained through additional discovery. CR 56(f). | Is continuance justified if a party fails to support request with explanation of evidence to be obtained through additional discovery? | 030803.docx | LEGALEASE-00136714-LEGALEASE-00136715 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8454 | Southland Amusements & Vending v. Rourk, 143 N.C. App. 88 | 307A+477.1 | Likewise, we find Town of Chapel Hill v. Burchette, 100 N.C.App. 157, 394 S.E.2d 698 (1990) controlling. Like defendant at bar, defendants Burchette were served Requests for Admissions "on the issue of [the property's lack of] record means of egress or ingress." Id. at 162, 394 S.E.2d at 701. Because defendants Burchette failed to respond "within 30 days after service," this Court held that "[b]y failing to respond to plaintiff's request for admissions, defendants [Burchette] allowed the lack of access to be judicially established." Id. "Litigants in this state are required to respond to pleadings, interrogatories and requests for admission with timely, good faith answers." WXQR Marine Broadcasting Corp. v. JAI, Inc., 83 N.C.App. 520, 521, 350 S.E.2d 912, 913 (1986). Therefore, we conclude that the present plaintiff did not waive its right to the deemed admissions, and the trial court properly concluded that "withdrawal or amendment of the deemed admissions would prejudice plaintiff in maintaining [its] action on the merits." | Litigants are required to respond to pleadings, interrogatories, and requests for admission with timely, good faith answers. | "Are litigants required to respond to pleadings, interrogatories, and requests for admission with timely, good faith answers?" | 030809.docx | LEGALEASE-00136785-LEGALEASE-00136786 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8455 | Barr Hotel Co. v. Lloyd MacKeown Buick Co., 104 Ohio App. 69 | 307A+725 | We cannot agree with lessee's contention that the court erred in refusing to grant lessee more than a two-days continuance, for even though Section 1923.08, Revised Code, permits a continuance of eight days, the eight days therein provided for is merely the maximum continuance which may be allowed without bond, and, within that time, the length of continuance is still within the discretion of the trial court. | The eight days permitted by statute for continuance of action is merely the maximum period of continuance which may be allowed without bond, and within that period, length of continuance is within discretion of trial court. R.C. S 1923.08. | What is the maximum period of continuance that can be allowed without bond? | 030830.docx | LEGALEASE-00136926-LEGALEASE-00136927 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 8456 | Latz v. Castricone, 13 Misc. 2d 119 | 307A+91 | Section 288 of the Civil Practice Act provides for the examination of a witness before trial where the person's evidence is material and necessary, and "special circumstances render it proper that his deposition should be taken." These words should be construed liberally, so that where the ends of justice and the orderly procedure upon the trial make it advisable, such an examination should be held. Mayer v. New York Canners, Inc., 4th Dept., 217 App.Div. 202, 203, 216 N.Y.S. 568, 569. This court retains a continuous power to direct a further examination of a party of a witness, even though a previous examination has been completed or Rose v. Rose, 282 App.Div. 1028, 126 N.Y.S.2d 337. Such examination may properly include the identity of individuals with whom the deceased, John E. McFarlane, dealt, or employed, in the work involved (Morris v. E. A. Laboratories, Inc., 263 App.Div. 540, 541, 33 N.Y.S.2d 464, 465), particularly where the witness is closely related to the facts involved, or is hostile, unwilling or reluctant (Peyton v. Coulson, 190 Misc. 754, 756, 74 N.Y.S.2d 730, 732), or is the only person who can testify to such facts (McMahon v. Hayes-73rd Corporation, 197 Misc. 318, 98 N.Y.S.2d 84), or is a party's wife (Bloch v. Ballin, Sup., 54 N.Y.S.2d 205, 206); or a party's husband (Price v. Taylor, Sup., 140 N.Y.S.2d 302, 303). | Words of Civil Practice Act section should be liberally construed, so that where ends of justice and orderly procedure upon trial make it advisable, examination of witness before trial should be held. Civil Practice Act, S 288. | Should there be great liberality in examinations of an adverse party before trial? | 031172.docx | LEGALEASE-00137008-LEGALEASE-00137009 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |
| 8457 | Decesare v. Lembert, 144 Cal. App. 3d 20 | 307A+725 | A court faced with a motion for continuance is not limited to taxable costs in awarding costs as a condition under Code of Civil Procedure section 1024.(Fraser v. Fraser, supra, 39 Cal.App. 467, 470, 179 P. 427.) | A court faced with motion for continuance is not limited to taxable costs in awarding costs as condition under Code of Civil Procedure section providing, inter alia, that when application is made to postpone trial, payment of costs occasioned by postponement may be imposed as condition of granting same. West's Ann.Cal.C.C.P. S 1024. | "Is a court faced with motion for continuance, limited to taxable costs in awarding costs?" | 031463.docx | LEGALEASE-00137028-LEGALEASE-00137030 | Order, SA | 0.37 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8458 | McKenna v. Wallis, 344 F.2d 432 | 260+5.1(5) | Prior to 1920, lands of the United States containing deposits of coal, phosphate, sodium, oil, oil shale, and gas were open to location and acquisition of title. Congress, by its mining laws, provided that claims might be "located" on these lands on the performance of certain conditions. Congress also made provision for issuing patents for claims located under the mining laws. See Wilbur v. United States ex rel. Krushnic, 1930, 280 U.S. 306, 314, 50 S.Ct. 103, 74 L.Ed. 445. When the location of a mining claim was perfected under the law, it had the effect of a grant by the United States of the right of present and exclusive possession. The claim was property in the fullest sense of that term and might be sold, transferred, mortgaged, and inherited without infringing any right or title of the United States. The right of the owner was taxable by the state and was "real property" subject to the lien of a judgment recovered against the owner in a state or territorial court. See id. at 316, 50 S.Ct. 103. However, the Mineral Leasing Act of 1920 effected a complete change of policy in respect of the disposition of lands containing deposits of coal, phosphate, sodium, potassium, oil, oil shale, or gas. Such lands were no longer to be open to location and acquisition of title, but only to lease. Id. at 314, 50 S.Ct. 103 (dictum). A mineral lease does not give the lessee anything approaching the full ownership of a fee patentee, nor does it convey an unencumbered estate in the minerals. Boesche v. Udall, 1963, 373 U.S. 472, 478, 83 S.Ct. 1373, 1376, 10 L.Ed.2d 491 (dictum) (Secretary has authority to cancel lease granted in violation of Act and regulations promulgated thereunder). In the latter case, the Supreme Court stated that, "Unlike a land patent, which divests the Government of title, Congress under the Mineral Leasing Act has not only reserved to the United States the fee interest in the leased land, but has also subjected the lease to exacting restrictions and continuing | Mineral lease of public domain land from United States does not give lessee anything approaching full ownership of fee patentee nor does it convey unencumbered estate in minerals. Mineral Lands Leasing Act, S 1 et seq. as amended 30 U.S.C.A. S 181 et seq. | Does a mineral lease give the lessee full ownership of a fee patentee? | 021228.docx | LEGALEASE-00137975-LEGALEASE-00137977 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 8459 | People v. Northbrook Sports Club, 53 Ill. App. 3d 331 | 302+9 | By dismissing the complaint with prejudice, the court here in effect declared that even construing all facts well-pleaded as true, they did not constitute a cause of action for which there would be a remedy. We disagree. While the complaint did allege the conclusion of the "unreasonableness" of the interference with the life and lawful activities of the residents of the area, it also alleged the supporting facts that the Gun Club has allowed the emission of sound beyond its boundaries for a certain period of time, that the sounds interfere with legitimate recreational activities, offend the senses, endanger the emotional and physical health of residents and depress property values. Whether such disturbances should in fact be characterized as unreasonable and a violation of the statute or a common law nuisance would remain to be determined by the evidence presented at trial. But since "allegations of legal conclusions and allegations of evidence constitute merely formal defects and not defects of substance" (Browning v. Heritage Insurance Co. (1975), 33 Ill.App.3d 943, 947, 338 N.E.2d 912, 915), a conclusory allegation does not impair the informational function or sufficiency of the pleading. Consequently, we find that the complaint alleged facts sufficient to state a cause of action and was improperly dismissed. In light of our decision, we find it unnecessary to consider the propriety of the court's refusal to grant the plaintiff's motion to vacate the dismissal and for leave to file an amended complaint. | Allegations of legal conclusions and allegations of evidence constitute merely formal defects and not defects of substance in pleadings; thus conclusory allegation does not impair informational function or sufficiency of pleading. S.H.A. ch. 110, SS 1-94, 33(1, 3), 42(2). | Are allegations of legal conclusions and allegations of evidence merely formal defects? | 023365.docx | LEGALEASE-00137260-LEGALEASE-00137261 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8460 | Gardner, Sager & Co. v. O'Connell, 7 La. Ann. 453 | 307A+716 | Under the circumstances presented, the absence of defendants' counsel, when the cause was called for trial, was not a sufficient ground for its continuance. The defendant was assisted by counsel, and he had no evidence which should have produced a different result if his counsel had been present. | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel, and had no evidence which would have produced a different result if his counsel had been present. | "Is the absence of counsel not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present?" | 030145.docx | LEGALEASE-00137351-LEGALEASE-00137352 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 8461 | Miller v. Ritchie, 45 Ohio St. 3d 222 | 307A+723.1 | Miller also argues that the trial court erred in proceeding to trial without ascertaining whether Miller was prejudiced by the late filing of the Ritchies' counterclaim.A trial court is not obligated to sua sponte ascertain whether a party needs more time to prepare for trial. Miller did not move for continuance at this point. Thus he waived his right to a review of the trial court's action. Moreover, the record indicates Miller was not prejudiced by the late filing of the counterclaim. He had nearly three months from the filing of the counterclaim to the date of trial to prepare a defense. | Trial court is not obligated sua sponte to ascertain whether party needs more time to prepare for trial. | Is a trial court obligated sua sponte to ascertain whether a party needs more time to prepare for trial? | 030514.docx | LEGALEASE-00137258-LEGALEASE-00137259 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8462 | Hatton v. Chem-Haulers, 393 So. 2d 950 | 307A+483 | Whether the failure to respond admits the matter contained in the request for admissions is discretionary with the trial court. This Court has stated in Evans v. Insurance Co. of North America, 349 So.2d 1099 (Ala.1977):That such discretion exists under Rule 36(b) is established not only by the language of that rule the court may permit withdrawal or amendment when the presentation of the merits of the action will be sub served thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits but by the feder | Whether failure to respond admits matter contained in request for admissions is discretionary with trial court. Rules of Civil Procedure, Rule 36(a, b). | Is the question of whether failure to respond admits matter contained in request for admissions discretionary with a trial court? | 030531.docx | LEGALEASE-00137487-LEGALEASE-00137488 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8463 | United Auto. Ins. Co. v. W. Hollywood Pain & Rehab. Ctr., 162 So. 3d 98 | 307A+486 | The county court erroneously relied on Farish v. Lum's, Inc., 267 So.2d 325 (Fla.1972), which applied a prior version of Florida Rule of Civil Procedure 1.370. The rule was substantially amended and liberalized some forty years ago, in 1972. The liberalized version of the rule does not require a showing of excusable neglect to permit relief from a technical admission. See Wilson v. Dep't of Admin., Div. of Ret., 538 So.2d 139 (Fla. 4th DCA 1989); Love v. Allis"Chalmers Corp., 362 So.2d 1037 (Fla. 4th DCA 1978). If the adverse party is not prejudiced, relief may be granted for mere inadvertence. Wilson, 538 So.2d at 141. The liberal standard of the amended rule "favors amendment in most cases in order to allow disposition on the merits." Ramos v. Growing Together, Inc., 672 So.2d 103, 104 (Fla. 4th DCA 1996). "The use of admissions obtained through a technicality should not form a basis to preclude adjudication of a legitimate claim." Sterling v. City of W. Palm Beach, 595 So.2d 284, 285 (Fla. 4th DCA 1992). | The liberal standard for relief from technical admissions favors amendment in most cases in order to allow disposition on the merits. West's F.S.A. RCP Rule 1.370. | Does the liberal standard for relief from technical admissions favor amendment in most cases in order to allow disposition on the merits? | 030535.docx | LEGALEASE-00137531-LEGALEASE-00137532 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 8464 | Gulf, C. & S.F. Ry. Co. v. Flake, 1882 WL 9032 | 307A+723.1 | Continuance with reference to service of citation. In determining the correctness of the ruling of the trial court upon an application for a continuance otherwise apparently good upon its face, the question of diligence, where the subp"na has not been executed, would depend very much upon the time when defendant was cited, with reference to the date of the issuance of his subp"na for the absent witness; and the date of the service of citation should be shown in order to enable this court to determine this question satisfactorily.] | In an application for continuance on the ground of absent witnesses, the date of the subpoena issued for him should be shown, so as to enable the appellate court to determine the correctness of the ruling, which depends on whether due diligence was shown in attempting to procure his attendance. | "In an application for continuance on the ground of absent witnesses, should the date of the subpoena issued for him be shown?" | 030578.docx | LEGALEASE-00137886-LEGALEASE-00137887 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 8465 | Tracy v. Dean Witter Reynolds, 185 F.R.D. 303 | 170A+1272.1 | Obviously, some discovery is necessary prior to a determination of class certification. National Organization for Women v. Sperry Rand Corp., 88 F.R.D. 272, 276 (D.Conn.1980); see also, East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405"06, 97 S.Ct. 1891, 1897"98, 52 L.Ed.2d 453 (1977). However, the recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court. National Organization for Women, 88 F.R.D. at 277; Chateau de Ville Productions, Inc. v. Tams"Witmark Music Library, Inc., 586 F.2d 962, 966 (2d Cir.1978). The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant. National Organization for Women, 88 F.R.D. at 277. "Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." Id. | Discovery which is permitted in aid of class action certification should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of class action rule, yet not so broad that the discovery efforts present an undue burden to the defendant. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A. | Is precertification discovery not to be used as a weapon? | Pretrial Procedure - Memo # 4592 - C - KG.docx | ROSS-003331493-ROSS-003331494 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8466 | Breaux v. Laird, 230 La. 221 | 307A+720 | It is well settled in our jurisprudence that amendments to pleadings should be permitted where they tend to further justice, cause no injury and are without prejudice to the right of the other party. Should the other party plead suprise, he may obtain time to prepare adequate defense. Our modern-day tendency is to relax the technical rules of pleading in order to arrive at the truth, afford a litigant his day in court and avoid a miscarriage of justice. This court has consistently recognized the right of the plaintiff to amend his petition with the leave of court, after issue joined, provided the amendment did not assert a demand different from the relief first sought or change the substance of the demand. Code of Practice Article 419; Coleman v. Continental Bank & Trust Co., 139 La. 1078, 72 So. 742; Ruiz v. American Trading Co. of New Orleans, 167 La. 28, 118 So. 597; Seale v. Stephens, 210 La. 1068, 29 So.2d 65; Messersmith v. Messersmith, La., 86 So.2d 169. | Amendments to pleading should be permitted where they tend to further justice, cause no injury, and are without prejudice to the right of the other party, and, if the other party pleads surprise, he may obtain time to prepare adequate defense. | "Should amendments to pleading be permitted where they tend to further justice, cause no injury, and are without prejudice to the right of the other party?" | 031366.docx | LEGALEASE-00137607-LEGALEASE-00137608 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8467 | Slattery v. Parsons, 17 N.Y.S.2d 6 | 307A+91 | With this contention the court is not in accord. The fact that the information may be obtained from other sources does not deprive the applicant of his right to examine the adverse party concerning such matters. Green v. Selznick, 4th Dep't. 1927, 220 App.Div. 12, 221 N.Y.S. 63; Parsons v. Moss, 1939, 171 Misc. 828, 13 N.Y.S.2d 865, Gold, J.; Bailowitz v. Independent Congregation Wisdom of Man of Plinsk, 2nd Dep't., 153 Misc. 306, 274 N.Y.S. 639. Although the basis of liability was somewhat different in Hillick v. E. W. Edwards & Son, Supreme Court, Oswego County, 1932, 143 Misc. 277, 256 N.Y.S. 313, the decision and reasons therefor are apropos here. In that case the question involved the use by the plaintiff of a hair removing preparation which was alleged to contain ingredients that were poisonous and dangerous to human life. The court permitted such an examination, saying, 143 Misc. at page 282, 256 N.Y.S. at page 320: "While it may be argued that the plaintiff has had the cream in question analyzed, and accordingly has knowledge of any poisonous content thereof, the fact of such knowledge on the part of the plaintiff is no defense to an application on the plaintiff's behalf to take the testimony of an adverse party. Green v. Selznick, supra." | Fact that information sought by examination of adverse party before trial may be obtained from other sources does not deprive the applicant of his right to the examination. Civil Practice Act, S 288. | Does the fact that the information may be obtained from other sources deprive the applicant of his right to examine the adverse party concerning such matters? | 031374.docx | LEGALEASE-00137670-LEGALEASE-00137671 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8468 | Slatten v. City of Chicago, 12 Ill. App. 3d 808 | 307A+63 | Clearly the Supreme Court rules authorize both evidence and discovery depositions, and do not set a time within which discovery must be completed. It follows that defendant had a right to take plaintiff's discovery deposition unless defendant did not exercise due diligence in seeking the deposition. One year before the case was assigned for trial, defendant sought to take plaintiff's discovery deposition. Thereafter, plaintiff secured a continuance, failed to appear on the rescheduled date, and engaged in court actions, which effectively avoided plaintiff's appearance. In fact, approximately two and one-half months prior to the trial date, plaintiff appeared in Chicago for a physical examination. At the time, plaintiff did not advise defendant of her presence notwithstanding the aforesaid order of September 16, 1969. It is also to be noted that on June 22, 1970, in the colloquy between the trial court and counsel, at which time defendant requested the 60-day continuance, plaintiff's counsel did not mention that plaintiff had been in Chicago on April 4, 1970, and did not mention that she had been examined by a doctor who not only would testify for the plaintiff, but whose name and address had not been previously furnished to the defendant. | Supreme Court Rules authorize both evidence and discovery depositions and do not set a time within which discovery must be completed. Supreme Court Rules, rule 201, S.H.A. ch. 110A, S 201. | Does any rules authorize both evidence and discovery depositions without setting a time within which discovery must be completed? | Pretrial Procedure - Memo # 4693 - C - SS.docx | ROSS-003291103-ROSS-003291104 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8469 | Boeck v. Smith, 85 A.D. 575 | 307A+331 | The plaintiff has united in his application three specific things: First, an examination of the defendants to enable him to properly frame his complaint; second, an inspection of the books and papers of the defendants; third, an examination of witnesses, not parties to the action, for the purpose of perpetuating their testimony. The plaintiff in his affidavit sets up facts showing his knowledge of a perfect cause of action against the defendants. The only thing of which he is ignorant is the exact amount which he is entitled to recover. As, however, there is no rule of pleading which requires him to state the specific amount which he deems himself entitled to recover, with accuracy, an examination is evidently not needed where such is the sole purpose. Tayler v. American Ribbon Co., 38 App. Div. 144, 56 N. Y. Supp. 667; Stanton v. Friedman, 47 App. Div. 621, 67 N. Y. Supp. 291. The subject-matter of the action may present a complicated series of accounts, from which is to be derived the amount to which the plaintiff is entitled; and where the dealings between the parties are of such a character that the amount which the plaintiff is entitled to recover may not be even approximately stated, under such circumstances, dependent upon the facts of the particular case, an examination may be had. Such is the case of Matter of The Erie Malleable Iron Co., 90 Hun, 62, 35 N. Y. Supp. 597. But where the amount of plaintiff's demand may be stated with approximate accuracy, and such demand is not complicated with other matters, an examination will not be ordered. The proceeding for the inspection of books and papers is required to be commenced by petition (Code Civ. Proc. " 805), and it cannot be joined with an order for the examination of a party before trial. Bloodgood v. Slayback, 62 App. Div. 315, 71 N. Y. Supp. 809. In the case of a corporation, the inspection may be had with the examination, pursuant to the provisions of section 872, subd. 7, Code Civ. Proc. Such was the | Under Code Civ.Proc. S 805, authorizing discovery of books and papers, and providing that to entitle a party to procure such a discovery or inspection he must present a petition praying therefor, etc., a proceeding for the inspection of books and papers cannot be joined with a motion for an order for the examination of a party before trial. | Can a proceeding for the inspection of books and papers be commenced by petition and joined with an order for the examination of a party before trial? | 031382.docx | LEGALEASE-00137836-LEGALEASE-00137837 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8470 | Green v. Spriggs, 930 So. 2d 1052 | 307A+747.1 | La.C.C.P. art. 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the items of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. The pretrial order controls the subsequent course of action, though it can be modified at trial to prevent substantial injustice. Vernon v. Wade Correctional Center, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684. The trier of fact is given broad discretion to determine whether to modify a pretrial order. This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Absent an abuse of discretion, the trier of fact's decision will be upheld. Vernon v. Wade Correctional Center, supra. | Law gives court wide discretion to provide for implementation of a pretrial order and to insure that the items of the pretrial order are enforced. LSA-C.C.P. art. 1551. | Does law give courts wide discretion to provide for implementation of a pretrial order? | Pretrial Procedure - Memo # 4722 - C - NS.docx | ROSS-003332183-ROSS-003332184 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8471 | Blum v. Rosenbaum, 87 Misc. 292 | 307A+91 | I do not think that the order appealed from is in any way in conflict with the principles laid down in the opinion in the case of Kornbluth v. Isaacs, 149 App. Div. 108, 133 N. Y. Supp. 737. In that case the plaintiffs had brought an action for fraud, which the defendants denied under oath; yet in spite of this denial under oath, and the presumption that the defendants would not testify in court in contradiction of their denial under oath, I denied the motion to vacate an order for the examination of the defendants before trial. In my opinion in that case I attempted to review the earlier decisions of the various appellate courts, and there stated: "A review of these decisions, however, discloses that the courts still regard the right of examination of an adverse party before trial as a substantial right, which should not be denied if it is made in good faith and for the purpose of obtaining testimony, though it should be denied if the order is sought for some ulterior purpose." It would therefore appear that, where a party has complied with all the requirements of the Code in moving for such an order, the order should not be vacated if the court can reasonably hold that the application was made in good faith. | The right of examination of an adverse party before trial should not be denied, if made in good faith to obtain testimony, and in compliance with the Code requirements. | "Should the right of examination of an adverse party before trial not be denied, if made in good faith to obtain testimony?" | Pretrial Procedure - Memo # 4737 - C - AP.docx | ROSS-003290777-ROSS-003290778 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8472 | Whitehawk v. Clark, 238 Mont. 14 | 307A+742.1 | The purpose of the pretrial order is to prevent surprise, simplify issues and permit counsel to prepare for trial on the basis of the pretrial order. Workman v. McIntryre (1980), 190 Mont. 5, 617 P.2d 1281. This Court has held that the party may not raise an issue on appeal which deviated from those stated in the pretrial order.Morse v. Cremer (1982), 200 Mont. 71, 647 P.2d 358. Under these two premises, it appears reasonable for defendant to have assumed that the issue of liability under the statute would not arise at trial. | Purpose of pretrial order is to prevent surprise, simplify issues and permit counsel to prepare for trial on basis of pretrial order. | "Are the purposes of the pretrial order to prevent surprise, simplify the issues, and permit the parties to prepare for trial?" | 031537.docx | LEGALEASE-00137308-LEGALEASE-00137309 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8473 | Schaeffer v. Marienthal, 17 Ohio St. 183 | 307A+723.1 | Where, under the statutory provision in that behalf, a cause is set down for trial on its merits, after reversal of the judgment of a justice of a peace therein, it is well settled that error will not lie until after the final disposition of the case. Kelly v. Hunter, 12 Ohio, 216; Wright, 418. But where a cause is remanded for further proceedings under the code, the practice, so far as we know has always been to allow a proceeding in error at any time after the rendition of the judgment of reversal, and without regard to the further proceedings below. See 4 Ohio St. 483, 586, 354, and 3 Ib. 445.The alleged inconvenience arising from this practice can be obviated by a continuance of the case below until the proceeding in error is terminated, and then dismissing it or proceeding in it, according to the final result in the reviewing court. | Where cause is remanded for further proceedings under the code, a proceeding in error may be allowed at any time after rendition of judgment of reversal, and alleged inconvenience arising from that practice can be obviated by a continuance of the case below until the proceeding in error is terminated. | "Where cause is remanded for further proceedings under the code, may a proceeding in error be allowed at any time after rendition of judgment of reversal?" | Pretrial Procedure - Memo # 5033 - C - NC.docx | ROSS-003290857 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8474 | Ocean Accident & Guarantee Corp. v. Indus. Comm'n of Arizona, 32 Ariz. 275 | 413+2 | Almost from the adoption of this act it appeared both to workmen and employers in the state of Arizona that the system of compensation for industrial injuries was inadequate and unsatisfactory, and after many attempts to agree on a new law satisfactory to all parties, in 1925 the Legislature submitted to the people an amendment to the Constitution of Arizona, and at the same session adopted chapter 83, Session Laws of that year, as the Compensation Act, to become effective in case the amendment carried. This act, so far at least as the employer is concerned, is compulsory in its nature; he has no option as to whether he shall accept or reject it, and the whole language both of the constitutional amendment authorizing it and of the act itself shows clearly that they were based, not on the old theory of contract between the parties, but upon the inherent right of the state, recognized by the Supreme Court of the United States in the cases above cited, by virtue of its police power to establish certain rules regulating the status of employer and employee. We therefore hold that the present Arizona Workmen's Compensation Act is neither elective nor contractual in its nature, but, on the contrary, that it rests upon the police power to regulate the status of employer and employee within the state of Arizona, and that no contract, express or implied, made within or without the state of Arizona, unless expressly so authorized by our law, can of itself affect the rights and duties of such status. It is governed, so far as this subject is concerned, solely by the provisions of the Arizona statutes, and nothing else. The right of Goodson to recover compensation so far as the Arizona tribunals are concerned, therefore, was governed by the Workmen's Compensation Act of Arizona, and the California statute would apply only in so far as the Arizona statute expressly allowed it to do so. | Workmen's Compensation Act, A.R.S. S 23-901 et seq. is neither elective nor contractual, but rests on police power to regulate status of employer and employee. | Does the workmens compensation statute rest upon the police power to regulate the status of employers and employees? | Workers Compensation - Memo #223 ANC.docx | ROSS-003290989-ROSS-003290991 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 8475 | Rogers v. Harris, 138 Cal. App. 2d 1 | 83E+670 | It is the generally accepted rule, in accordance with the settled law of contracts, that where a marginal notation is placed upon a promissory note by the maker before he signs the note with the intention of making the marginal notation a part of the contract is becomes a substantive part of the note to which it is so affixed. See the notes in 13 A.L.R. 251 and 155 A.L.R. 218. Following this general rule it is held by a substantial majority of the courts which have considered the question that a notation placed on the note by the maker before signing it with the intention of changing the time of payment shown in the body of the note becomes a part of the contract and is effective to fix the time of payment according to the terms of such notation.Baucom v. Friend, D.C.Mun.App., 52 A.2d 123; Banking Commission v. Townsend, 243 Wis. 329, 10 N.W.2d 110; Whittier v. First Nat. Bank of Sterling, 73 Colo. 153, 214 P. 536; Weaver v. Weaver, Tex.Civ.App., 171 S.W.2d 898; Citizens' Nat. Bank of Towanda v. Piollet, 126 Pa. 194, 17 A. 603, 4 L.R.A. 190; Black v. Epstein, 93 Mo.App. 459, 67 S.W. 736; Alden v. Camden Anchor-Rockland Mach. Co., 107 Me. 508, 78 A. 977; Franklin Savings Institution v. Reed, 125 Mass. 365; Wheelock v. Freeman, 13 Pick., Mass., 165; Heywood v. Perrin, 10 Pick., Mass. 228; Johnson v. Heagan, 23 Me. 329; Blake v. Coleman, 22 Wis. 415; notes 155 A.L.R. at pages 225"226 and 13 A.L.R. at pages 263"265. There are cases in some jurisdictions which refuse to follow this rule. See the cases to this effect collected in 155 A.L.R. at pages 226"227 and 13 A.L.R. 265. We are satisfied however that the better rule, and the one comporting both with common sense and the law of contracts, is that where, as in the case before us, the maker before signing the note, with the express intention of modifying the date of payment contained in the body of the instrument, endorses on the note a notation which is sufficient to accomplish that purpose, such notation must be construed as a part of | A notation placed on a note by the maker before signing it with the intention of changing the time of payment shown in the body of the note becomes a part of the contract and is effective to fix the time of payment according to the terms of such notation. | Would the time of payment written in the marginal notation of the instrument be considered a part of it? | 009407.docx | LEGALEASE-00138848-LEGALEASE-00138849 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8476 | Bank Leumi Tr. Co. of New York v. Bally's Park Place, 528 F. Supp. 349 | 172H+574(1) | Furthermore, although the death of the maker of a check or note does not terminate his liability, it does revoke the authority of the payee to collect from the drawee-bank and relegates the payee to the status of a general creditor of the estate of the deceased. InreKolben'sEstate, 203Misc. 1012, 1014, 120N.Y.S.2d812 (N.Y.Sur.Ct.1953); In re Greene's Estate, 47 Misc.2d 140, 143, 261 N.Y.S.2d 977 (N.Y.Sur.Ct.1965). The U.C.C. provides a similar result. New York U.C.C. s 4-405(1). "Under 4-405(1) a bank's authority to handle items on its customer's account terminates when the bank learns that he has died ...." White & Summers, Uniform Commercial Code at 665 (2d ed. 1980). Bally's, therefore, had no right to collect the check from Bank Leumi once it knew Brinker had died. On this additional ground, Bank Leumi may recover for its mistaken payment. | Under New York law, although death of maker of check or note does not terminate his liability, it does revoke authority of payee to collect from drawee-bank and relegates payee to status of general creditor of estate of the deceased. McKinney's N.Y. Uniform Commercial Code S 4-405(1). | When does the holder or payee acquire the status of a general creditor? | Bills and Notes -Memo 191 -DB.docx | ROSS-003317302-ROSS-003317303 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8477 | Bloom v. State, 22 Ill. Ct. Cl. 582 | 48A+284 | It has been well established, and this Court, as well as other courts, have held many times that the state is not an insurer of those traveling upon the highway; and that, where people are aware of a condition, such as in this case, they should use care and caution, and drive with that degree of care and caution, which an ordinarily prudent person would use under the same or similar circumstances. | The state is not an insurer of those traveling upon the highway, and, where travelers are aware of a dangerous condition, they should use such care and caution in driving, as an ordinarily prudent person would use under the same or similar circumstances. | Is the state an insurer of those travelling upon its highways? | Highways -Memo 128 - GP.docx | ROSS-003303963-ROSS-003303964 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8478 | Tom Green Cty. v. Moody, 116 Tex. 299 | 200+121 | The case of Fallbrook Irrigation District v. Bradley, 164 U. S. 176, 177, 17 S. Ct. 56, 41 L. Ed. 369, is decisive of the proposition that the Legislature has full discretion to adopt the method of taxing all properties in a county at assessed values for the cost of a highway to be improved within the county. | Legislature has full discretion to adopt method of taxing all properties in county at assessed values for cost of highway to be improved within it. | Can the legislature tax the properties in a county for the cost of a highway to be improved within the county? | 018983.docx | LEGALEASE-00138720-LEGALEASE-00138721 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 8479 | Ayr-Way Stores v. Chitwood, 261 Ind. 86 | 307A+720 | Even without amendment to the pleadings, the trial of the issues of strict liability and implied warranty would have proceeded absent any objection from the defendants on the grounds that the offered evidence was outside the pleadings. No such objection to evidence was made here. It is when a party objects to evidence because it is outside the issues raised by the pleadings that the question of the utility of a continuance arises. | It is when a party objects to evidence because it is outside the issues raised by pleadings that question of utility of a continuance arises. | Is it when a party objects to evidence because it is outside the issues raised by pleadings that a question of utility of a continuance arises? | Pretrial Procedure - Memo # 4388 - C - CK.docx | ROSS-003318025-ROSS-003318026 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 8480 | Shankle v. Shankle, 289 N.C. 473 | 307A+725 | Further, before ruling on a motion to continue the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice. The rule has been well stated as follows:"In passing on the motion the trial court must pass on the grounds urged in support of it, and also on the question whether the moving party has acted with diligence and in good faith. In reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record, although . . . it may take into consideration facts within its judicial knowledge. . . . The motion should be granted where nothing in the record controverts a sufficient showing made by the moving party, but since motions for continuance are generally addressed to the sound discretion of the trial court . . . a denial of the motion is not an abuse of discretion where the evidence introduced on the motion for a continuance is conflicting or insufficient. . . . The chief consideration to be weighed in passing upon the application is whether the grant or denial of a continuance will be in furtherance of substantial justice. | Before ruling on motion to continue, judge should hear evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice. Rules of Civil Procedure, rule 40(b), G.S. S 1A-1. | Should a judge hear the evidence pro and con before ruling on a motion to continue? | 030883.docx | LEGALEASE-00138784-LEGALEASE-00138785 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8481 | Stroup v. Career Acad., 38 Wis. 2d 284 | 307A+91 | The order did deny the motion to dismiss the action for want of personal jurisdiction but "without prejudice." The trial court was of the opinion that inasmuch as the defect did not appear in the service of the summons the question of jurisdiction should await the discovery examination and the service and filing of the complaint. However, discovery examination of a party, whether in aid of pleading or otherwise, is an assumption and exercise of personal jurisdiction over the party. | Discovery examination of a party, whether in aid of pleading or otherwise, is an assumption and exercise of personal jurisdiction over the party. | "Is discovery examination of a party, whether in aid of pleading or otherwise, an assumption and exercise of personal jurisdiction over the party?" | 030920.docx | LEGALEASE-00138934-LEGALEASE-00138935 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 8482 | Lawson v. Kurtzhals, 792 N.W.2d 251 | 307A+36.1 | The importance of the information sought is not disputed. "A party defending a claim is clearly entitled upon appropriate pretrial request to be informed of the amount of the claim." Gordon v. Noel, 356 N.W.2d 559, 564 (Iowa 1984). This includes discovery of amounts claimed for separate elements of damages. Id. | A party defending a claim is clearly entitled upon appropriate pretrial request to be informed of the amount of the claim; this includes discovery of amounts claimed for separate elements of damages. | Is a party defending a claim clearly entitled upon appropriate pretrial request to be informed of the amount of the claim? | Pretrial Procedure - Memo # 4543 - C - SS.docx | ROSS-003290070-ROSS-003290071 | Condensed, SA | 0.36 | 0 | 1 | 0 | 1 | |
| 8483 | Brown v. Daisy Mfg. Co., 129 A.D.2d 995 | 307A+36.1 | Plaintiffs' use of the adjective "all" does not render their request impermissible per se; it is the subject of the request that defines whether the request is specific (Stevens v. Metropolitan Suburban Bus Auth., 117 A.D.2d 733, 734, 498 N.Y.S.2d 459). Discovery of similar subsequent accidents is permissible because such proof may be admissible at trial to establish the existence of a defect (Carnibucci v. Marlin Firearms Co., 51 A.D.2d 1067, 380 N.Y.S.2d 807). | Discovery of similar subsequent accidents was permissible where such proof could be admissible at trial to establish existence of a defect. | Is the discovery of a similar subsequent accident permissible as such proof may be admissible at trial to establish the existence of a defect? | Pretrial Procedure - Memo # 4827 - C - ES.docx | ROSS-003331240-ROSS-003331241 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8484 | Maliades v. Maliades, 31 Misc. 2d 944 | 307A+172 | The plaintiff is entitled to examine the defendant concerning allegations in the complaint which she must prove and which are controverted by a general denial. (Pierce v. Morris, 192 App.Div. 502, 505, 182 N.Y.S. 132, 135; see also Israelson v. Gersing, 234 App.Div. 706, 251 N.Y.S. 969; Royce v. Ziegfeld, 224 App.Div. 651, 229 N.Y.S. 22.) The fact that plaintiff may have knowledge of these facts is no reason to refuse such an examination. (Haire v. Title Guarantee & Trust Co., 249 App.Div. 786, 292 N.Y.S. 256; McGrath v. Blumenthal, 220 App.Div. 781, 222 N.Y.S. 140.) | A plaintiff is entitled to examine defendant concerning allegations in complaint which plaintiff must prove and which are controverted by a general denial and fact that plaintiff may have knowledge of such facts is no reason to refuse examination. | Is a party entitled to examine the other party concerning allegations in the complaint or answer which the party must prove and which are controverted by a general denial? | Pretrial Procedure - Memo # 4835 - C - SB.docx | ROSS-003290810-ROSS-003290811 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 8485 | Arcata Graphics Co. v. Heidelberg Harris, 874 S.W.2d 15 | 307A+723.1 | When the trial court grants a motion to amend, the opposing party must request a continuance if it believes it has been prejudiced. Allstate Ins. Co. v. Fox, 1990 WL 8058 at *12 (Tenn.App. 6 Feb. 1990). If a continuance is not requested, the party against whom the amendment was granted may not complain on appeal. Id. | When trial court grants motion to amend, opposing party must request continuance if it believes it has been prejudiced; if continuance is not requested, party against whom amendment was granted may not complain on appeal. Rules Civ.Proc., Rule 15.01. | "If a continuance is not requested, can the party against whom the amendment was granted later complain on appeal?" | Pretrial Procedure - Memo # 4837 - C - SHS.docx | ROSS-003291777-ROSS-003291778 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 8486 | Bielawski v. Edgewater Recreation, 177 A.D.2d 1060 | 307A+36.1 | Defendants, however, should be afforded the opportunity to conduct discovery with respect to the allegations raised by the amendment to the bills of particulars (see, Risucci v. Homayoon, 122 A.D.2d 260, 505 N.Y.S.2d 176; Bernas v. Kepner, 36 A.D.2d 58, 319 N.Y.S.2d 283; Maasch v. Edward Corning Co., 29 A.D.2d 774, 287 N.Y.S.2d 116; De Veaux v. Wide World Photos, 20 A.D.2d 787, 248 N.Y.S.2d 166). | Defendant should be afforded opportunity to conduct discovery with respect to allegations raised by amendment to bills of particulars. | Should a defendant be afforded an opportunity to conduct discovery with respect to the allegations raised by an amendment to the bills of particulars? | 031649.docx | LEGALEASE-00138636-LEGALEASE-00138637 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8487 | Salzano v. N. Jersey Media Grp., 403 N.J. Super. 403 | 307A+36.1 | We lastly observe with regard to any future application to dismiss that the judge should be mindful that evidence of actual malice, which may often require examination of the defendant's state of mind, is not always available to a plaintiff. Accordingly, upon the filing of an amended complaint and the anticipated renewal of a motion for dismissal or a motion for summary judgment, not only should the judge consider whether the pleading sufficiently alleges actual malice and the assertion of all relevant details that Salzano may have access to in that regard, but also the fact that information regarding defendants' state of mind is not always accessible to a defamation plaintiff absent discovery. See Standridge v. Ramey, 323 N.J.Super. 538, 547, 733 A.2d 1197 (App.Div.1999); see also Hutchinson v. Proxmire, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411, 422 n. 9 (1979) (recognizing that "proof of "actual malice" calls a defendant's state of mind into question ..., and does not readily lend itself to summary disposition"); Costello, supra, 136 N.J. at 615, 643 A.2d 1012 (observing that "[b]ecause the issue of a defendant's state of mind "does not readily lend itself to summary disposition," courts are wary of disposing of cases involving actual malice through summary judgment"). | Information regarding defendants' state of mind is not always accessible to a defamation plaintiff absent discovery. | Is information regarding defendants state of mind not always accessible to a defamation plaintiff absent discovery? | 031983.docx | LEGALEASE-00138132-LEGALEASE-00138134 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 8488 | Smith v. Klein, 23 Ohio App. 3d 146 | 307A+36.1 | Obviously, then, it is essential for a plaintiff to be able to discover what the defendant said, if he is to bear his burden of proving actual malice. However, a plaintiff cannot possibly bear such a burden if his efforts at discovery are unjustifiably hindered and obstructed by defense counsel. Therefore, this court must turn its attention to the second assignment of error, which pertains to appellant motion to compel discovery. | It is essential for a plaintiff to be able to discover what defendant said, if he is to bear his burden of proving actual malice in making of allegedly defamatory statements. | "Is it essential for a plaintiff to be able to discover what a defendant said, if he is to bear his burden of proving actual malice?" | 032018.docx | LEGALEASE-00138260-LEGALEASE-00138261 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8489 | State Highway Comm'n of Mississippi v. Havard, 508 So. 2d 1099 | 307A+36.1 | There can be no doubt that comparable sales to be used by either party in an eminent domain proceeding are properly subjects of discovery-provided the rules on discovery are correctly employed. See, e.g., State of New Jersey, By The Commissioner of Transportation v. Siris, 191 N.J.Super. 261, 466 A.2d 96, (N.J.1983); Ex Parte Shepperd, 513 S.W.2d 813, 817 (Tex.1974); State Ex Rel. Dept. of Transportation v. Harvey, 680 S.W.2d 792 (Tenn.1984); South Carolina State Highway Dept. v. Booker, 260 S.C. 245, 195 S.E.2d 615, 622 (1973). | Comparable sales to be used by either party in eminent domain proceeding are properly subjects of discovery. | Are comparable sales to be used by either party in eminent domain proceeding properly subjects of discovery? | 032044.docx | LEGALEASE-00138342-LEGALEASE-00138343 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8490 | Grp. Health Plan v. BJC Health Sys., 30 S.W.3d 198 | 307A+36.1 | Under Missouri law, then, all information relating to the Unity Arbitration is regarded as part of settlement negotiations and is not discoverable unless it is "otherwise discoverable or obtainable." See, State ex rel. Webster v. Douglas Toyota III, Inc., 830 S.W.2d 491, 495 (Mo.App. S.D.1992). Appellant argued in the proceedings below that the materials sought are "otherwise discoverable" under Missouri law and that settlement negotiations are discoverable, though not necessarily later admissible as to the truth of statements made in the course of negotiations. See The Thermos Co. and Nippon Sanso Corp. v. Starbucks Corp. and Pacific Market, Inc., 1998 WL 781120 at (N.D.Ill. Nov.3, 1998); and Glaxo, Inc. v. Torphram, Inc., 1996 WL 411487 at (N.D.Ill.1996). | All information relating to arbitration is regarded as part of settlement negotiations and is not discoverable unless it is "otherwise discoverable or obtainable." V.A.M.S. S 435.014, subd. 2. | "Is all information relating to arbitration regarded as part of settlement negotiations and is not discoverable unless it is ""otherwise discoverable or obtainable""?" | 032073.docx | LEGALEASE-00138484-LEGALEASE-00138485 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8491 | Wilkin v. Tadlock, 110 Cal. App. 2d 156 | 307A+725 | There seems to be little doubt that under the construction given to section 1024 by our appellate courts, a trial court, as a condition of granting a continuance, is not limited to the costs ordinarily taxable after a case has been tried. The rule is well stated in 5 Cal.Jur., section 29, page 1007, as follows: "The court is not limited to requiring a payment of the taxable costs as a condition of postponing the trial, but is at liberty to exercise a reasonable discretion for the purpose of compensating the opposing party for the expenses incurred in preparing for the trial. Hence in certain instances costs have included reporter's fee, transportation and hotel bills of witnesses and reporter, witnesses' fees, and the fees of all the jurors in attendance." | A trial court, as condition of granting continuance, is not limited to costs ordinarily taxable after case has been tried, but can exercise reasonable discretion for purpose of compensating opposing party for expenses incurred in preparing for trial, including reporter's fee, transportation and hotel bills of witnesses and reporter, witnesses' fees, and fees of all jurors in attendance. West's Ann.Code Civ.Proc. S 1024. | "Is a court limited to costs ordinarily taxable after case has been tried, as a condition of granting continuance?" | Pretrial Procedure - Memo # 5128 - C - NS.docx | ROSS-003305245-ROSS-003305246 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 8492 | United States v. Fernandez, 722 F.3d 1 | 63+1(1) | The Supreme Court explained the distinction between bribes and illegal gratuities in United States v. Sun"Diamond Growers of California, 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999): The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo"a specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken.Id. at 404"05, 119 S.Ct. 1402 (third emphasis added) (construing the general federal bribery and gratuity statute, 18 U.S.C. "201); see also United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir.1993) (noting in a " 666 case that "[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a quid pro quo "). As the Eighth Circuit has noted, "[t]he core difference between a bribe and a gratuity is not the time the illegal payment is made, but the quid pro quo, or the agreement to exchange [a thing of value] for official action." United States v. Griffin, 154 F.3d 762, 764 (8th Cir.1998). Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe. | Although the timing of the payment may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the agreement to make or receive a payment may: one cannot agree to perform an act in exchange for payment when that act has already been performed. | Can a gratuity for a past act be distinguished from a bribe? | 011885.docx | LEGALEASE-00139325-LEGALEASE-00139326 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8493 | Joyner v. State, 267 Ga. App. 309 | 67+3 | The requisite intent necessary for commission of burglary, pursuant to OCGA " 16-7-1(a), need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises. Moreover, intent may be inferred from, and usually of necessity must be proved by, circumstantial evidence. Whether the circumstantial evidence adduced at trial was sufficient to prove the requisite intent necessary for each count of burglary was a question of fact for the factfinder. | The requisite intent necessary for commission of burglary need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises; moreover, intent may be inferred from, and usually of necessity must be proved by, circumstantial evidence. West's Ga.Code Ann. S 16-7-1(a). | Does intent for burglary need to be formed at the precise moment of entry? | Burglary - Memo 199 - KNR.docx | ROSS-003329241-ROSS-003329242 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 8494 | Lunsford v. Morris, 746 S.W.2d 471 | 115+181 | At issue in this mandamus proceeding is whether a defendant's net worth is subject to pre-trial discovery. We hold that such information is relevant to the issue of punitive or, as they are sometimes called, exemplary damages and therefore discoverable under Tex.R.Civ.P. 166b(2). Consequently, we conditionally grant relators' petition for writ of mandamus. | Civil defendant's net worth is relevant to issue of punitive or exemplary damages, and therefore, discoverable. Vernon's Ann.Texas Rules Civ.Proc., Rule 166b, subd. 2. | "Is a civil defendant's net worth relevant to the issue of punitive or exemplary damages, and therefore, discoverable?" | 031883.docx | LEGALEASE-00139231-LEGALEASE-00139232 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 8495 | Long v. Magnolia Petroleum Co., 166 Neb. 410 | 388+9(1) | The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at the trial. See, McDonald v. Bowles, 9 Cir., 152 F.2d 741; Jenkins v. Devine Foods, Inc., 3 N.J. 450, 70 A.2d 736, 22 A.L.R.2d 593; Hensgen Bros., Inc., v. Grip, 13 N.J.Super. 105, 80 A.2d 207. The participants in a pretrial conference must adhere to the spirit of that procedure and are held to have waived questions not there presented. See, Jenkins v. Devine Foods, Inc., supra; Hensgen Bros., Inc., v. Grip, supra. | The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at trial. Rules of Supreme Court, Pre-Trial Procedure Rule 2. | Is one of the purpose of pretrial conference is to avoid unnecessary proof of facts at the trial? | 032632.docx | LEGALEASE-00139085-LEGALEASE-00139086 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 8496 | Cook v. Nacogdoches Anesthesia Grp., L.L.P., 167 S.W.3d 476 | 307A+501 | A plaintiff may take a nonsuit at anytime before the trial court grants a summary judgment. Leon Springs Gas Co. v. Rest. Equip. Leasing Co., 961 S.W.2d 574, 577 (Tex.App.-San Antonio 1997, no pet.); Taliaferro v. Smith, 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ). The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. See Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991); BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990). A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. Greenberg, 640 S.W.2d at 872. The granting of a nonsuit is merely a ministerial act. Id. The plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. Millard, 800 S.W.2d at 840. | A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. | Does a plaintiff's right to a nonsuit exist from the time the plaintiff files a motion for nonsuit or asks for one in open court? | Pretrial Procedure - Memo # 5504 - C - SB.docx | ROSS-003301447-ROSS-003301448 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8497 | Sutherland v. Shoemaker, 6 Neb. App. 157 | 307A+501 | Section 25"601 provides in part that "[a]n action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court." Additionally, "[i]t is well settled in Nebraska that a plaintiff may dismiss his action without prejudice as a matter of right at any time before final submission. It is a statutory right and not a matter of judicial grace or discretion." Koll v. Stanton"Pilger Drainage Dist., 207 Neb. 425, 426, 299 N.W.2d 435, 436 (1980) (construing " 25"601(1)). | Plaintiff may dismiss his action without prejudice as matter of right at any time before final submission; it is a statutory right and not a matter of judicial grace or discretion. Neb.Rev.St. S 25-601. | Is the right of a plaintiff to voluntary dismissal ia matter of judicial grace or discretion? | Pretrial Procedure - Memo # 5508 - C - NC.docx | ROSS-003289555-ROSS-003289556 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8498 | McDonough v. Widnall, 891 F. Supp. 1439 | 34+7(1) | Likewise, federal courts tread lightly in military promotion actions. The President of the United States commissions all military officers. 10 U.S.C. " 531(a). The President alone is authorized to appoint officers in grades up to and including that of colonel. Id. It is "a matter of discretion within the province of the President as Commander in Chief" to grant commissions to military officers. Orloff v. Willoughby, 345 U.S. 83, 90, 73 S.Ct. 534, 538"39, 97 L.Ed. 842 (1953). Indeed, courts "have never assumed by any process to control the appointing power either in civilian or military positions." Id. | It is matter of discretion within province of President as Commander in Chief to grant commissions to military officers. | Is it a matter of discretion within province of President as Commander in Chief to grant commissions to military officers? | 008542.docx | LEGALEASE-00139628-LEGALEASE-00139629 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8499 | Neville v. Brewster, 163 Tex. 155 | 307A+69.1 | Relators advance several grounds for their conclusion that the court's order is unauthorized and void. They first say that the Texas Rules of Civil Procedure cannot be construed so as to require a nonparty witness to produce his private records for copying or for any other purpose. In other words, they seem to take the position that the term "produce" would not even comprehend an examination of the records by the attorneys for the respondents-defendants. This interpretation would render "the order to produce" wholly useless and accomplish nothing. The production of the documents is required for the purpose of examination and if the documents may be examined then under proper safeguards there is no apparent reason why they may not be copied. | Production of documents in connection with taking of depositions is required for purpose of examination, and documents may under proper safeguards also be copied. Rules of Civil Procedure, rules 167, 186a, 186b, 189, 737. | "Is the production of documents in connection with taking of depositions required for the purpose of examination, and documents may under proper safeguards also be copied?" | Pretrial Procedure - Memo # 3194 - C - SB.docx | ROSS-003302071-ROSS-003302072 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 8500 | Ex parte Puccio, 923 So. 2d 1069 | 307A+673 | At the hearing on the motion to dismiss, the trial court indicated that dismissal would be premature because the Grants had not had ample opportunity to fully investigate their claims. Puccio argues that the trial court's characterization of a Rule 12(b)(2), Ala. R. Civ. P., motion as premature eviscerates the intent of Rule 12(b), which, he says, requires a motion to dismiss for lack of personal jurisdiction to be filed at this stage of the proceedings.8 He argues that requiring a defendant to raise the threshold defense of lack of personal jurisdiction early in the proceedings ensures that the trial court has personal jurisdiction over the defendant before it addresses the merits of the case. However, even though a defendant timely files a motion to dismiss, a plaintiff may be entitled to discovery solely on the issue of personal jurisdiction raised in the motion to dismiss.See generally Ex parte Covington Pike Dodge, Inc., supra; Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala.2003). Thus, we cannot say that the trial court erred in concluding that it would be premature to grant the motion to dismiss at this stage in the proceedings. | Even though a defendant timely files a motion to dismiss, a plaintiff may be entitled to discovery solely on the issue of personal jurisdiction raised in the motion to dismiss. | Can a plaintiff be entitled to discovery on the issue of personal jurisdiction? | 031165.docx | LEGALEASE-00139563-LEGALEASE-00139565 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8501 | Bishop v. Hilliard, 227 Ill. 382 | 307A+74 | It is not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions, but they may be produced in court at hearing and the notary's official character there be established. The defendant offered in evidence before the master certain depositions, to which complainant objected upon the ground that they were not accompanied by commissions to or certificates of the official character of the officer before whom they were taken, as required by statute. We have held that, where the certificate does not accompany the deposition, it may be produced in court at the hearing and the official character of the notary then and there established, and that the true construction of the statute only requires that the official character of the officer taking the deposition should be established before it is read in evidence. Scott v. Bassett, 186 Ill. 98, 57 N. E. 835. Before the case was considered by the master the proper certificates were obtained and accompanied the deposition upon the hearing before the chancellor. | It is not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions, but they may be produced in court at hearing and the notary's official character there be established. | Is it not necessary that certificates of the official character of the officer before whom depositions are taken accompany the depositions? | 032263.docx | LEGALEASE-00139416-LEGALEASE-00139417 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 8502 | Am. Sur. Co. of New York v. Bethlehem Nat. Bank of Bethlehem, Pa., 314 U.S. 314 | 366+32 | Here the surety was compelled to pay to the Commonwealth $68,500 which ought to have been paid by the bank. Of course it succeeds to the Commonwealth's right to receive payment of $68,500 from the bank"and in no event can the surety receive more. But as a means of enforcing this right the Commonwealth was entitled to share in all future dividends on the basis of its original claim of $135,000. Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640. Succeeding to the creditor's right, the surety also succeeds to the creditor's means for enforcing it. The surety is a special kind of secured creditor. For its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay. Of course, this right can be availed of only by a surety alert in discharging its duty, Jenkins v. National Surety Co., 277 U.S. 258, 267, 48 S.Ct. 445, 446, 72 L.Ed. 874, and one not guilty of inequitable conduct, United States v. Ryder, 110 U.S. 729, 737, 4 S.Ct. 196, 199, 28 L.Ed. 308. In other respects a right of subrogation is as much in the nature of a security as is a mortgage. | A surety is a special kind of "secured creditor" since its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay. | Is a suretys claim against the principal secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay? | Subrogation - Memo # 1104 - C - SK.docx | ROSS-003316625-ROSS-003316626 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8503 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+489 | Instruments that are not negotiable, such as the note here, may, like negotiable instruments, be transferred by assignment. Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, 567 S.W.2d 710 (Mo.App.1978). The assignee of a note that is not negotiable, however, takes it subject to all defenses the maker may have against the note prior to notice of the assignment. | Instruments that are not negotiable may, like negotiable instruments, be transferred by assignment, but the assignee of note that is not negotiable takes it subject to all defenses the maker may have against note prior to notice of assignment. V.A.M.S. S 400.3-202(3). | Can the assignee of note that is not negotiable takes it subject to all defenses the maker may have against note prior to notice of assignment? | 010437.docx | LEGALEASE-00140394-LEGALEASE-00140395 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 8504 | People ex rel. Vance v. Ross, 275 Ill. 70 | 200+121 | The right to levy a hard road tax is not inherent in the voters of a township. The power and authority to levy such a tax is granted by act of the Legislature, and this power must be strictly construed. The only power conferred upon the voters of a town to impose a tax for hard roads is found in the Road and Bridge Act of 1913. By section 108 of that act it is provided that on petition of a certain per cent. of the landowners who are legal voters of the town, addressed to the town clerk in counties under township organization or to the district clerk of road districts in counties not under township organization, the clerk shall, when giving notice of the time and place of holding the next annual town meeting or road district election, also give notice that a vote will be taken for or against an annual tax in the township or road district for the purpose of constructing and maintaining hard roads. The section provides that the petition shall state the location and route of the proposed road, and also the annual rate per cent., not exceeding $1 on each $100, and the number of years, not exceeding five, for which said tax shall be levied. It further provides that if in any such petition a special election shall be requested for such purpose it shall be called in the manner provided for in the act. Section 110 provides that if the result of the election shall be in favor of a special tax, it shall be the duty of the commissioners of highways or towns or road districts to levy an annual tax in accordance with the vote, and certify the same to the county clerk; that the county clerk shall cause such levy to be extended on the tax books for the current year and for each succeeding year, as stated in the certificate, provided the length of time to which the special tax levied shall continue shall not exceed five years. Nowhere in the act is any power or authority given to the voters of a town to impose such a special tax to begin in the future. On the other hand, the language of the act plainly indicates that the town shall be | The power to levy a hard road tax is not inherent in the voters of a township, but is granted by act of the Legislature, and must be strictly construed. | Is the power to levy a road tax of a township granted by act of the Legislature? | 018990.docx | LEGALEASE-00140294-LEGALEASE-00140296 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 8505 | People ex rel. Schmulbach v. Louisville & N. R. Co., 404 Ill. 381 | 200+121 | The power of the commissioner of highways to impose a tax is limited, must be strictly construed, and must be exercised in accordance with those provisions of the statute designed for the protection of the taxpayer. Such provisions are mandatory and a disregard of them renders the tax illegal. People ex rel. Heaton v. Illinois Central Railroad Company, 295 Ill. 408, 129 N.E. 66; People ex rel. Rea v. Wabash Railroad Company, 296 Ill. 527, 129 N.E. 826. In People ex rel. Ricker v. Chicago, Milwaukee and St. Paul Railway Company, 310 Il11. 508, 142 N.E. 167, it was held that a favorable vote on the proposition to authorize the county board to levy an additional tax for five years did not levy the tax but merely authorized the board to levy a tax in addition to taxes otherwise authorized by law. The same is true of the election here, and neither the election nor the statutes under which it was held, empowers the county clerk to extend the taxes at a rate other than duly certified by the highway commissioner and approved by the board of supervisors. The tax here, to the extent that it exceeded the rate of 16.5 cents, was illegally extended. | The power of the Commissioner of Highways to impose a tax is limited, must be strictly construed and must be exercised in accordance with those provisions of statute designed for protection of taxpayer. S.H.A. ch. 121, SS 62, 62a, 62b, 62c. | Is the power of the Commissioner of Highways to impose a tax limited? | 018995.docx | LEGALEASE-00140321-LEGALEASE-00140322 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8506 | State ex rel. Holton v. City of Tampa, 119 Fla. 556 | 268+220(9) | Pension statutes are to be liberally construed, and it is true that under particular circumstances the right to a pension may become a vested one after it has entered into a contract of employment pursuant to which an employee has continued in the service to which pension rights have attached as a part of the compensation agreed to be paid in consideration of the whole term of service rendered up until the date of retirement. Aitken v. Roche, 48 Cal. App. 753, 192 P. 464, supra. We think that in this case the right of Holton to a pension became a vested one by reason of his having fully performed all that he was required to do under the terms of his employment as a condition precedent to his having a pension allowed to him on his "application" for retirement as a "member" of the Tampa Fire Department. So any statute undertaking to entirely deprive him of his pension rights, or to so diminish the amount of his pension as to make it merely one in name only, would be plainly unconstitutional as a deprivation of Bolton's vested right to receive continued compensation in the form of a pension agreed to be paid to him, not as an ex-member of the Tampa Fire Department, but as a "retired" fireman who is by law still retained in service as a "member" of the fire department in his retired status. O'Dea v. Cook, 176 Cal. 659, 169 P. 366. | Right to pension may become vested after it has entered into contract of employment pursuant to which employee has continued in service to which pension rights have attached as part of compensation to be paid in consideration of whole term of servicerendered up to date of retirement. | Should the grant of pension be liberally construed? | 022801.docx | LEGALEASE-00140566-LEGALEASE-00140567 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8507 | In re Lipsky, 460 S.W.3d 579 | 302+11 | Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. See Tex. R. Civ. P. 45 & 47. Even the omission of an element is not fatal if the cause of action "may be reasonably inferred from what is specifically stated." Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex.1993). Moreover, under notice pleading, a plaintiff is not required to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." Paramount Pipe & Supply Co. v. Muhr, 749 S.W.2d 491, 494"95 (Tex.1988). But the TCPA requires that on motion the plaintiff present "clear and specific evidence" of "each essential element." | Under notice pleading, a plaintiff is not required to set out in his pleadings the evidence upon which he relies to establish his asserted cause of action. Tex. R. Civ. P. 45, 47. | Should the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action? | Pleading - Memo 372 - RMM.docx | ROSS-003288530-ROSS-003288531 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8508 | Bowen v. Robinson, 227 S.W.3d 86 | 302+18 | We conclude that Robinson's petition was sufficient to give Bowen notice that the cause of action was for breach of an oral agreement with Bowen to construct a barge canal. The object and purpose of pleading is to give fair and adequate notice to the party being sued of the nature of the cause of action asserted against him. Castleberry v. Goolsby Bldg. Corp., 617 S.W.2d 665, 666 (Tex.1981). "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." Roark v. Allen, 633 S.W.2d 804, 810 (Tex.1982). The test of fair notice is "whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." State Fid. Mortg. Co. v. Varner, 740 S.W.2d 477, 479 (Tex.App.-Houston [1st Dist.] 1987, writ denied) (citation omitted). The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. Id. at 480. In his live petition, Robinson asserted a claim entitled "Breach of Contract"Partnership," which provided,8. ROY B. ROBINSON brings this cause of action for breach of contract against MAX BOWEN, individually and d/b/a MAX BOWEN ENTERPRISES and respectfully shows the Court as follows.9. At the specific request, instance and urging of MAX BOWEN, a partnership was created and formed by and between MAX BOWEN, individually and d/b/a MAX BOWEN ENTERPRISES and ROY B. ROBINSON. As a result of that partnership, ROY B. ROBINSON acquired real, beneficial and present interests in all property contributed to the partnership including real property. In April 2002, MAX BOWEN, sought to unilaterally terminate the partnership by evicting ROY B. ROBINSON from partnership property and denying the existence of a partnership any contractual agreement with ROY B. ROBINSON. | The fair notice requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. | Does the fair notice pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity? | Pleading - Memo 377 - RMM.docx | ROSS-003301116-ROSS-003301117 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8509 | Deutsche Bank Nat. Tr. Co. v. McGurk, 206 Cal. App. 4th 201 | 307A+517.1 | Had McGurk's belief been correct"that is to say, had New Century not assigned its interest in the deed of trust to Deutsche Bank prior to its dismissal"the effect of the ultimate judgment quieting title in McGurkon New Century would be easy to determine. "A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. [Citations.] When an action is wilfully dismissed by the plaintiff against one or more of several defendants the effect is the same as if the action had been originally brought against the remaining defendants." (Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 761, 157 P.2d 868.) "After such dismissal the defendant is a stranger to the action." (Ibid.) The quiet title statutes are clear that a quiet title judgment does not bind a nonparty whose interest was of record prior to the filing of the lis pendens (Code Civ. Proc., " 764.045, subd. (a)), nor does it bind a nonparty whose interest was actually known to the plaintiff at the time of the lis pendens (Code Civ. Proc., " 764.045, subd. (b)). As the result of its voluntary dismissal, New Century became a nonparty to the quiet title action. New Century's interest was both of record and known to McGurk prior to filing her lis pendens. Thus, under both subdivisions of Code of Civil Procedure section 764.045, the quiet title judgment could not have bound it. | When an action is wilfully dismissed by the plaintiff against one or more of several defendants the effect is the same as if the action had been originally brought against the remaining defendants. | "When an action is wilfully dismissed by a plaintiff against one or more of several defendants, is the effect same as if the action had been originally brought against only the remaining defendants?" | Pretrial Procedure - Memo # 2392 - C - KS.docx | ROSS-003301173-ROSS-003301174 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8510 | Anna McNally, v. Chapin, 197 A.D. 792 | 307A+74 | It has repeatedly been held in this state that the failure of a witness to read or subscribe his deposition after it has been reduced to writing necessitates its rejection upon objection made. 13 Cyc. 939; 18 Corpus Juris, " 239; Faith v. Ulster & Delaware R. R. Co., 70 App. Div. 303, 75 N. Y. Supp. 420; Foster v. Bullock, 12 Hun, 200; Lowther v. Sullivan, 63 Misc. Rep. 51, 116 N. Y. Supp. 588. The same rule has been recognized in other jurisdictions. Winooskie Turnpike Co. v. Ridley, 8 Vt. 404, 30 Am. Dec. 476; Zehner v. Lehigh Coal & Navigation Co., 187 Pa. 487, 41 Atl. 464, 67 Am. St. Rep. 586, in which the court emphasized the importance of strict observance of such requirements; Arnold v. Kearney (C. C.) 29 Fed. 820; Bell v. Chambers, 38 Ala. 660. | Under Code Civ.Proc. S 901, subd. 2, failure of witness to read or subscribe his deposition after it has been reduced to writing necessitates its rejection on objection made. | Does the failure of a witness to read or subscribe his deposition after it has been reduced to writing necessitate its rejection on an objection made? | Pretrial Procedure - Memo # 5353 - C - SN.docx | ROSS-003291308-ROSS-003291309 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8511 | Bird v. Halsy, 87 F. 671 | 307A+74 | It is further objected by counsel for the plaintiff that the exhibits sent by the commissioner to the clerk are not properly certified. We have seen how the exhibits are described in the depositions, and how they are indorsed. An examination of the signature of the commissioner attached to the depositions and the indorsements of the exhibits shows that they were made by the same hand, and are the signatures of the same person. The court knows of no formal certificate necessary to be attached to an exhibit in order to make it a part of the deposition in which reference is made to it. These exhibits are so described in the depositions, and are so marked by the commissioner as such exhibits that the description and marks unmistakably establish their identity. And this is sufficient. That the whole of a deposition may be suppressed on the ground that a witness has refused to answer a material question is well established. In Sturm v. Insurance Co., 63 N.Y. 87, the court of appeals of New York said: "It may be taken as a rule that, where a party is deprived of the benefit of the cross-examination of a witness by the act of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means other than the act of God, the act of the party himself, or some cause to which he assented, that the testimony given on the examination in chief may not be read. People v. Cole, 43 N.Y. 508; Smith v. Griffith, 3 Hill, 333. See Forrest v. Kissam, 7 Hill, 465. And the rule may be applied to the examination of a witness on commission, or conditionally out of court, in case the party desiring the benefit of a cross-examination has not been present or represented at the taking of the testimony, and had no opportunity to push his cross-examination, or to know of the refusal of the witness to testify, or of other like misconduct of the witness. Smith v. Griffith, supra. But where the party is present at the examination of the witness in person or by counsel, and is thus fully apprised of the facts | No formal certificate is necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them. If the indorsements of the examining commissioner on the exhibits and depositions be made by the same person, and the exhibits are so described and marked by the commissioner that their identity is unmistakably established, this is sufficient. | Is no formal certificate necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them? | Pretrial Procedure - Memo # 5398 - C - SJ.docx | ROSS-003302779-ROSS-003302780 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8512 | Accelerated Christian Educ. v. Oracle Corp., 925 S.W.2d 66 | 307A+554 | In Barnette v. United Research Co., 823 S.W.2d 368, 369 (Tex.App."Dallas 1991, writ denied), we upheld the trial court's order dismissing the plaintiff's claims because of a forum selection clause. Other courts have upheld motions to dismiss that had as their basis forum selection clauses. See Busse v. Pacific Cattle Feeding Fund # 1, Ltd., 896 S.W.2d 807, 812"13 (Tex.App."Texarkana 1995, writ denied) (using motion to dismiss to challenge venue based on forum selection clause); Greenwood v. Tillamook Country Smoker, Inc., 857 S.W.2d 654, 657 (Tex.App."Houston [1st Dist.] 1993, no writ) (same); Pozero v. Alfa Travel, Inc., 856 S.W.2d 243, 244 (Tex.App."San Antonio 1993, no writ) (same). We conclude that a motion to dismiss is a proper mechanism to enforce a forum selection clause that selects another state as the proper forum for litigation. We overrule Accelerated's sixth point of error. | Motion to dismiss is proper mechanism to enforce forum selection clause that selects another state as proper forum for litigation. | Is a motion to dismiss the proper procedural mechanism for enforcing a forum selection clause that selects another state as proper forum for litigation? | 032739.docx | LEGALEASE-00139705-LEGALEASE-00139706 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8513 | Hascall v. Williams, 2013 IL App (4th) 121131 | 307A+531 | Section 2"619(a)(9) of the Code provides a defendant may file a motion for dismissal of the action on the grounds "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2010). Section 2"619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation.Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273, 278 (2003). | Purpose of a motion for involuntary dismissal is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation. S.H.A. 735 ILCS 5/2-619(a). | What is the purpose of statute governing motion for involuntary dismissal? | 033276.docx | LEGALEASE-00140714-LEGALEASE-00140715 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 8514 | Feigenbaum v. Guaracini, 402 N.J. Super. 7 | 366+38 | Subrogation rights may be created in three different ways: "(1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002) (citing Culver, supra, 115 N.J. at 456, 559 A.2d 400). The doctrine of equitable subrogation should not be imposed " "where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application." " Culver, supra, 115 N.J. at 456, 559 A.2d 400 (quoting Ganger v. Moffett, 8 N.J. 73, 80, 83 A.2d 769 (1951)). Equitable subrogation may only be imposed "if the cause is just and enforcement is consonant with right and justice." Standard Acc. Ins., supra, 15 N.J. at 173, 104 A.2d 288. | The doctrine of equitable subrogation should not be imposed where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application. | Is subrogation or equitable subrogation applicable where its enforcement would be inconsistent with the terms of a contract? | Subrogation - Memo # 1260 - C - SJ.docx | ROSS-003289651-ROSS-003289652 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8515 | 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 | 371+2001 | Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. Richard R. Powell, Powell on Real Property, " 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in general. Id. at " 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. Ibid. Lastly, the benefit must be certain rather than speculative, although it may arise in the future. Ibid. These salient features of the special assessment are codified by statute. N.J.S.A. 40:56"1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. See, e.g. Meglino v. Township Comm. of Eaglewood, 103 N.J. 144, 510 A.2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 259 A.2d 218 (1969) (addressing special assessment for sewer); City of Paterson v. Fargo Realty, Inc., 174 N.J.Super. 178, 415 A.2d 1210 (App.Div.1980) (involving demolition of nuisance). | Traditionally, differences between assessment and tax include: assessment supports local improvements, while tax finances general operations; assessment is one-time charge, while tax is annual; and assessment requires that benefit be direct, while tax requires no such direct benefit. | "Does assessment require that the benefit be direct, while a tax requires no such direct benefit?" | 044669.docx | LEGALEASE-00140159-LEGALEASE-00140160 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8516 | DRB No. 24 v. City of Minneapolis, 976 F. Supp. 2d 1079 | 170B+2036 | The TIA prohibits federal courts from exercising jurisdiction over certain claims involving state taxation. The TIA provides:The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in state courts.28 U.S.C. " 1341. Whether an assessment constitutes a "tax" for the purpose of the TIA or a fee is a question of federal law and the court is not required to rely on a municipalities' characterization of the assessment. Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1382 (8th Cir.1997) (citing Wright v. McClain, 835 F.2d 143, 144 (6th Cir.1987)). To determine whether an assessment or levy is a tax, "the court must look to the purpose underlying the premium." Marigold Foods, Inc. v. Redalen, 834 F.Supp. 1163, 1166 (D.Minn.1993). "Premiums primarily imposed for revenue-raising purposes are considered to be taxes." Id. (citation omitted). "Premiums imposed for regulatory or punitive purposes, even though they may also raise revenue, generally are not considered taxes." Id. (citation omitted). | Assessments primarily imposed for revenue-raising purposes are considered to be "taxes," for purposes of the federal Tax Injunction Act (TIA), which prohibits federal courts from exercising jurisdiction over certain claims involving state taxation, while assessments imposed for regulatory or punitive purposes, even though they may also raise revenue, generally are not considered taxes. 28 U.S.C.A. S 1341. | "Are premiums imposed by state primarily for revenue-raising purposes considered to be ""taxes""?" | Taxation - Memo # 245 - C - NA.docx | ROSS-003290137-ROSS-003290138 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 8517 | U S v. Levine, 129 F.2d 745 | 63+3 | Finding defendant to be one of the persons contemplated by the section, we have but to determine whether he received the bribe in order to have his decision or action influenced on any matter coming before him in his official capacity. The services he proposed to perform in return for the money were to make available to Sheffield certain records from his office and to use his influence to stave off investigations and re-audits of the Sheffield accounts. Whether the disclosure of the records of the Administrator would alone be enough we need not decide. The case was not thus broadly submitted to the jury. The judge charged that, " * * * while the indictment charges the defendant with accepting money and promises for the purpose and with the intent to have his decision or action influenced on matters which by law were brought before him for action or decision, if you find there were no such matters for the defendant to decide on or act on, then the charge of bribery under this statute has not been established." We think it clear that the proof of defendant's intent to be influenced by the money and of his promises to prevent investigations which would otherwise be made was sufficient to support the verdict under this charge. It has several times been held that the bribed employee need not be one invested with the power of final decision, "But that he was one within the class charged with making preliminary investigation" is enough. Whitney v. United States, supra, 99 F.2d at page 330. It has been recognized that "final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice." Sears v. United States, supra, 264 F. at page 261. See, also, United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930. Surely the avoidance of the investigation upon which final action would depend in as much included as would be falsification of the facts elicited from the investigation. | Under statute prohibiting federal officials from accepting bribes, bribed employee need not be one invested with the power of final decision, it being sufficient if he is one within class charged with making preliminary investigation. Cr.Code S 117, 18 U.S.C.A. S 202. | "In a bribery case, does the bribed employee need to be one invested with the power of final decision?" | Bribery - Memo #697 - C-JL.docx | ROSS-003302325-ROSS-003302326 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 8518 | Com. v. Hayes, 311 Mass. 21 | 63+1(1) | A gift or gratuity will not support an indictment for soliciting or accepting a bribe unless the thing requested or accepted was something of value to the person seeking or obtaining it. The acceptance of the order by the motor company was followed by the execution of a conditional sales contract by the purchaser and resulted in the payment of a commission to Hayes. The conduct of Hayes would justify a finding that he considered the order as valuable to him and could be found to be a gratuity within the statute. | A gift or gratuity will not support an indictment for soliciting or accepting a bribe unless the thing accepted or requested was something of value to the person seeking or obtaining it. G.L.(Ter.Ed.) c. 268, S 8 (M.G.L.A.). | Under what condition will a gift or gratuity support an indictment for soliciting or accepting a bribe? | Bribery - Memo #731 - C-JL.DOCX | ROSS-003300733 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 8519 | People v. Vollmann, 73 Cal. App. 2d 769 | 63+1(1) | "The offer or solicitation of a bribe need not be stated in express language as such; it is sufficient that the words used carried the import of a bribe and were evidently intended to bear that meaning. * * *" 11 C.J.S., Bribery, " 2, p. 843. Further, "It is permissible to show the various steps taken by accused in committing the crime, including preliminary negotiations * * *." 11 C.J.S., supra, Bribery, " 14, p. 871. | The offer or solicitation of a bribe need not be stated in express language as such, it being sufficient that words used carry import of bribe and were evidently intended to bear that meaning. Pen.Code, S 68. | Should offer or solicitation of a bribe be stated in express language? | Bribery - Memo #740 - C-JL.DOCX | ROSS-003287295 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8520 | United States v. Frega, 179 F.3d 793 | 63+6(1) | Frega argues that the indictment should have been dismissed as facially invalid because it failed to identify specific decisions or acts that he corruptly intended to influence by his financial generosity to the judges. The indictment charged that the payments and benefits Frega provided to the judges were intended to influence Adams and Malkus in their handling of Frega's cases in general. Prior to trial, the court denied defense counsels' motions to dismiss the indictment for facial invalidity. | Under California law, bribery conviction did not require link between a particular thing of value and a specific official act that was influenced or intended to be influenced, so indictment charging violation of Racketeer Influenced and Corrupt Organizations Act (RICO), based on predicate acts of bribery, was not facially invalid for failing to identify specific decisions or acts to be influenced. 18 U.S.C.A. S 1962(c); West's Ann.Cal.Penal Code SS 92, 93. | Is indictment charging bribery facially invalid for failing to identify specific decisions or acts to be influenced? | 012121.docx | LEGALEASE-00141138-LEGALEASE-00141139 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 8521 | Myers v. Lape, 101 Ill. App. 182 | 200+181 | The law places no prescription as to the size or color of a man's horse to entitle him to the use of the public roads. Of course, if a horse is vicious or mischievous, so as to make it dangerous to ride or drive him among other horses, the duty of keeping him under control rests upon the owner and he takes him upon the high way at his peril. But the mere fact that the horse is small, or of unusual color, does not preclude him from using it on the highway, even though some other horse may become frightened at it. | The law does not prescribe the size or color of a horse to entitle the owner to the use of the public roads and the mere fact that a horse is small or of unusual color does not preclude the owner from using it on the highway, even though some other horse may become frightened at it. | Does the horse being small or of unusual color preclude the owner from using it on the highway? | Highways -Memo 204-IS.docx | ROSS-003291050-ROSS-003291051 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 8522 | Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 255 F. Supp. 3d 101 | 260+5.1(1) | The Mineral Leasing Act was enacted by Congress in 1920 "to promote wise development of [the nation's] natural resources and to obtain for the public a reasonable financial return on assets that "belong" to the public." Devon Energy Corp. v. Kempthorne, 551 F.3d 1030, 1033 (D.C. Cir. 2008) (quoting California Co. v. Udall, 296 F.2d 384, 388 (D.C. Cir. 1961)). It permits "appropriate agency head[s]" to grant "[r]ights-of-way through any Federal lands ... for pipeline purposes for the transportation of oil ... to any applicant possessing" the requisite statutory qualifications. See 30 U.S.C. " 185(a). | The Mineral Leasing Act (MLA) was enacted by Congress to promote wise development of the nation's natural resources and to obtain for the public a reasonable financial return on assets that belong to the public. 30 U.S.C.A. S 185. | What was the Mineral Leasing Act intending to promote? | 021209.docx | LEGALEASE-00141930-LEGALEASE-00141932 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 8523 | Gage v. R.R. Comm'n, 582 S.W.2d 410 | 260+92.50 | We are further of the opinion that any difficulty in delineating a field boundary as expressed by finding 7 does not authorize the commission to consolidate separate reservoirs for proration purposes where such authority does not otherwise exist. While we are appreciative of the enormous regulatory and technological problems that confront the commission in the Atoka Conglomerate, it is settled that separate and distinct "common reservoirs" cannot be consolidated into a single field for administrative convenience in prorating the area. Railroad Commission v. Graford Oil Corp., supra at 950; See Railroad Commission v. Shell Oil Co., 380 S.W.2d 556, 559 (Tex.1964); Benz-Stoddard v. Aluminum Co. of America, 368 S.W.2d 94, 97 (Tex.1963). | Separate and distinct common reservoirs cannot be consolidated into a single field for administrative convenience in prorating the area. V.T.C.A., Natural Resources Code SS 85.055, 86.081. | Can separate and distinct common reservoirs be consolidated into a single field for administrative convenience in prorating the area? | 021658.docx | LEGALEASE-00140869-LEGALEASE-00140870 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8524 | Alpha Sch. Bus Co. v. Wagner, 391 Ill. App. 3d 722 | 302+236(1) | As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. Cantrell v. Wendling, 249 Ill.App.3d 1093, 1095, 189 Ill.Dec. 350, 620 N.E.2d 9 (1993). The right to amend a complaint, however, is not absolute. Strickland v. Communications & Cable of Chicago, Inc., 304 Ill.App.3d 679, 686, 237 Ill.Dec. 632, 710 N.E.2d 55 (1999). A trial court should consider the following factors in deciding whether to allow an amendment: (1) whether the proposed amendment would cure defective pleadings; (2) whether other parties would sustain prejudice or surprise because of the proposed amendment; (3) the timeliness of the proposed amendment; and (4) whether there were earlier opportunities to amend. Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill.2d 263, 273, 166 Ill.Dec. 882, 586 N.E.2d 1211 (1992). We will not reverse a trial court's denial of leave to amend absent a clear abuse of discretion. Loyola Academy, 146 Ill.2d at 273"74, 166 Ill.Dec. 882, 586 N.E.2d 1211. | As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. | Should a trial court exercise its discretion liberally in favor of allowing amendments to pleadings? | 023456.docx | LEGALEASE-00141238-LEGALEASE-00141239 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8525 | Graco Robotics v. Oaklawn Bank, 914 S.W.2d 633 | 307A+483 | Requested admissions are deemed admitted unless, within thirty days after service of the request, the party to whom the request is directed serves a written answer or objection. Tex.R.Civ.P. 169(1). The court may permit withdrawal of deemed admissions on a showing of good cause if it finds that the party relying on the deemed admissions will not be unduly prejudiced and that presentation of the merits of the action will be subserved thereby. Id. | Requested admissions are deemed admitted unless, within 30 days after service of request, party to whom request is directed serves written answer or objection. Vernon's Ann.Texas Rules Civ.Proc., Rule 169, subd. 1. | Are requests for admission neither answered nor objected within 30 days deemed admitted? | 030605.docx | LEGALEASE-00141093-LEGALEASE-00141094 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 8526 | I-CA Enterprises v. Palram Americas, 185 Cal. Rptr. 3d 24 | 307A+36.1 | Thus, the statute makes it clear that a party desiring discovery of a defendant's financial information must bring a motion in order to obtain such information. Then, the trial court must determine whether the plaintiff has established a "substantial probability" of prevailing on the claim for punitive damages. (Civ. Code " 3295, subd. (c).) "In this context, a "substantial probability" of prevailing on a claim for punitive damages means that it is "very likely" that the plaintiff will prevail on such a claim or there is a " "strong likelihood" " that the plaintiff will prevail on such a claim." (Kerner, supra, 206 Cal.App.4th at p. 120, 141 Cal.Rptr.3d 504.). | A "substantial probability" of prevailing on a claim for punitive damages, as required for a court order permitting pretrial discovery of the defendant's financial condition, means that it is "very likely" that the plaintiff will prevail on such a claim or there is a "strong likelihood" that the plaintiff will prevail on such a claim. Cal. Civ. Code S 3295(c). | "Does a ""substantial probability"" of prevailing on a claim for punitive damages mean that it is ""very likely"" that the plaintiff will prevail on such a claim or there is a ""strong likelihood"" that the plaintiff will prevail on such a claim?" | 031578.docx | LEGALEASE-00141158-LEGALEASE-00141159 | Order, SA | 0.45 | 1 | 0 | 0 | 1 | |
| 8527 | Thomas v. Beckley Music & Elec. Co., 146 W. Va. 764 | 388+26 | What has been said in regard to a continuance applies to and necessarily controls the question relating to a motion for a postponement of the trial to a later day of the term. In Thorn v. Tetrick, 93 W.Va. 455, 116 S.E. 762, we held: "3. The rule governing continuances applies to motions to postpone to a later day, but courts will sometimes more readily exercise their discretion to postpone than to continue the case for the term." See Jones v. Berry, 130 W.Va. 189, 45 S.E.2d 1; Howard v. Commonwealth, 174 Va. 417, 4 S.E.2d 757. | Rule governing continuances applies to motions to postpone to later date but courts will sometimes more readily exercise their discretion to postpone than to continue case for term. | Can courts sometimes exercise their discretion to postpone than to continue the case for the term? | Pretrial Procedure - Memo # 5142 - C - AP.docx | ROSS-003302693-ROSS-003302694 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 8528 | Al Parker Buick Co. v. Touchy, 788 S.W.2d 129 | 307A+36.1 | Information regarding net worth is discoverable "in cases in which punitive or exemplary damages may be awarded." Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.1988). Relator argues that because Schirra's pleadings do not support her request for exemplary damages, evidence of relator's net worth is not "reasonably calculated to lead to the discovery of admissible evidence," and is therefore irrelevant information outside the scope of discovery. Tex.R.Civ.P. 166b(2)(a). | Information regarding net worth is discoverable in cases in which punitive or exemplary damages may be awarded. | Is information regarding net worth discoverable in cases in which punitive or exemplary damages may be awarded? | 032114.docx | LEGALEASE-00141270-LEGALEASE-00141271 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8529 | Blakeslee v. Rossman, 44 Wis. 550 | 307A+74 | The second error relates to the admission in evidence of the deposition of George C. Farnham. The deposition was taken before a notary public in Minnesota, under the provisions of chapter 68, Laws of 1872. The objection to the deposition is, that the notary failed to set out in his certificate, in extenso, the oath which was administered to the witness. It is claimed that the law requires this to be done. The statute relating to this matter prescribes that the person whose deposition is taken, "shall be first duly sworn or affirmed to testify to the whole truth and nothing but the truth;" and that the officer shall accompany the deposition with "his certificate, showing the time and place of taking the same, who was present at the taking thereof, and who examined and cross-examined the witness, the oath that was administered to the witness," etc. The notary did annex to the deposition his certificate, stating, among other things, "that, previous to the commencement of the examination of the said George C. Farnham as a witness in the said action, he was duly sworn by me as such notary, to testify the truth, the whole truth, and nothing but the truth, relative to the said cause." We think this certificate contains all that was essential relative to the oath. Besides, it appears from the certificate that both parties appeared by counsel before the notary, and took part in the examination of the witness. Under these circumstances, we think there was no error in admitting the deposition in evidence. | A certificate to a deposition taken in another state stating that the witness was sworn by the officer to testify to the truth, the whole truth, and nothing but the truth, is sufficient under Act 1872, c. 68. | "Is a certificate to a deposition taken in another state stating that the witness was sworn by the officer to testify to the truth, the whole truth, and nothing but the truth, admissible?" | 032566.docx | LEGALEASE-00141700-LEGALEASE-00141701 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 8530 | Gay v. Kendig, 2 Rob. (LA) 472 | 307A+726 | The case had been continued twice on the same showing, and we think that to be entitled to a third continuance on the same ground, the defendant should have shown, that he had used, every time, such diligence as to satisfy the court that it was absolutely impossible to procure the evidence, and that there was really a prospect of obtaining the testimony. On the third application, he should have shown extraordinary diligence, as well as the real importance and materiality of the testimony. Not having done so, we are satisfied that the continuance was properly refused. 17 La. 151. 19 Ib. 298. | To obtain a third continuance on the ground of the absence of the same witness, the materiality of the testimony must be shown, and such extraordinary diligence as to satisfy the court that it was absolutely impossible to procure the evidence. | "Will a third continuance be entitled when the defendant shows that he had used, every time, such diligence as to satisfy the court that it was absolutely impossible to procure the evidence?" | Pretrial Procedure - Memo # 6096 - C - DHA.docx | ROSS-003288188-ROSS-003288189 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 8531 | High Point Surplus Co. v. Pleasants, 264 N.C. 650 | 104+24 | It will be observed that the ordinance regulating and restricting plaintiff's business is not an ordinance initiated and promulgated by the City of Raleigh pursuant to its own power and authority; it is an ordinance adopted by the County of Wake pursuant to the statute avove set out. The distinction is vital and important. The power and authority of municipalities and of counties to legislate and maek ordinances and regulations are not derived from the same statute and laws"a fact which apparently is not generally understood, or is overlooked. Neither counties nor municipalities have any inherent legislative powers. Counties are instrumentalities and agencies of the State government and are subject to its legislative control; they possess only such powers and delegated authority as the General Assembly may deem fit to confer upon them. Ramsey v. Comrs. of Cleveland, 246 N.C. 647, 100 S.E.2d 55; Martin v. Board of Comrs. of Wake County, 208 N.C. 354, 180 S.E. 777. A municipal corporation is a creature of the General Assembly, has no inherent powers, and can exercise only such powers as are expressly conferred by the General Assembly and such as are necessarily implied by those expressly given. State v. McGee, 237 N.C. 633, 75 S.E.2d 783. | Counties are instrumentalities and agencies of state government and are subject to its legislative control, and possess only such powers and delegated authority as General Assembly may deem fit to confer upon them. | To what extent does the state's possession of inherent power to tax be exercised? | 045392.docx | LEGALEASE-00141529-LEGALEASE-00141530 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8532 | Hoechst Celanese Corp. v. Franchise Tax Bd., 25 Cal. 4th 508 | 371+2005 | In limiting a state's taxing power, courts "are guided by the basic principle that the State's power to tax an individual's or corporation's activities is justified by the "protection, opportunities and benefits' the State confers on those activities." (Allied"Signal, supra, 504 U.S. at p. 778, 112 S.Ct. 2251, quoting Wisconsin v. J.C. Penney Co. (1940) 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267.) Thus, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." (Miller Bros. Co. v. Maryland (1954) 347 U.S. 340, 344"345, 74 S.Ct. 535, 98 L.Ed. 744.) Corporate income "earned in the course of activities unrelated to [corporate activities in the taxing] State" is not includible in any apportionment formula. (Mobil Oil Corp. v. Comr. of Taxes of Vermont (1980) 445 U.S. 425, 439, 100 S.Ct. 1223, 63 L.Ed.2d 510.) The rationale behind this limitation is self-evident: "In a Union of 50 States, to permit each State to tax activities outside its borders would have drastic consequences for the national economy, as businesses could be subjected to severe multiple taxation." (Allied"Signal, supra, 504 U.S. at pp. 777"778, 112 S.Ct. 2251.). | The state's power to tax an individual's or corporation's activities is justified by the protection, opportunities, and benefits the state confers on those activities. | "Is the state's power to tax an individual's or corporation's activities justified by the protection, opportunities, and benefits the state confers on those activities?" | 045414.docx | LEGALEASE-00141600-LEGALEASE-00141601 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8533 | Bullock v. Marathon Oil Co., 798 S.W.2d 353 | 371+2005 | We find the argument to be without merit. First, we agree with Marathon that inherent in the power to tax is the state's freedom to select the subjects of taxation. Bullock v. Texas Monthly, 731 S.W.2d 160 (Tex.App.1987, writ ref'd n.r.e.), rev'd on other grounds, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). The legislature's selection of the subjects of taxation is presumed to rest on a rational basis if any facts would support that basis. Carmichael v. Southern Coal Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); Texas Monthly, 731 S.W.2d at 163. The party attacking the tax has the burden to show discrimination by negating every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). | Legislature's selection of subjects for taxation is to be presumed to rest on rational basis if any facts would support that basis. | Does the legislatures selection of subjects for taxation presumed to rest on rational basis if any facts would support that basis? | Taxation - Memo # 593 - C - NC.docx | ROSS-003330664-ROSS-003330665 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8534 | Lang v. Nissan N. Am., 170 S.W.3d 564 | 413+2 | Further, recognizing hedonic damages as a basis for recovering benefits would run counter to the exclusive-remedy principle which reinforces the policy balance of workers' compensation law. One of the fundamental purposes of workers' compensation law is to compensate employees for work-related injuries irrespective of fault. See Tenn.Code Ann. " 50"6"103(a) (1999). However, in exchange for no-fault recovery, employees have limited recovery and relinquish certain common-law rights of action against their employers which they might otherwise have had. A delicate compromise between the interests of employers and employees thus lies at the heart of workers' compensation law. See Clanton v. Cain"Sloan Co., 677 S.W.2d 441, 443 (Tenn.1984). In order to preserve this balance, workers' compensation law "constitutes a complete substitute for previous remedies in tort on the part of an employee." Liberty Mut. Ins. Co. v. Stevenson, 212 Tenn. 178, 368 S.W.2d 760, 762 (1963). Consequently, with few exceptions workers' compensation law is the exclusive remedy for the work-related injuries which fall under its scope. See Tenn.Code Ann. " 50"6"108(a) (1999); Liberty Mut. Ins. Co., 368 S.W.2d at 762. "The delicately balanced quid pro quo imposing no-fault liability in exchange for immunity from tort claims and limits on the amount of workers' compensation liability becomes illusory without a viable exclusive remedy rule." Joseph H. King, Jr., The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer, 55 Tenn. L.Rev. 405, 411"12 (1988). | Workers' compensation law constitutes a complete substitute for previous remedies in tort on the part of an employee. | Does the workers compensation law constitute a complete substitute for previous remedies in tort on the part of an employee? | 048124.docx | LEGALEASE-00141382-LEGALEASE-00141383 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 8535 | McDowell v. Jackson Energy RECC, 84 S.W.3d 71 | 413+2 | McDowell does not specify precisely how KRS 342.730(4) discriminates against her to the extent that she has been denied her constitutional right to equal protection under the law. U.S. Const. amend. XIV; Ky. Const. " 3. She makes a general claim that the statute is "unfair," that "[t]he executive and legislative branches of Government in the state of Kentucky have abandoned injured workers," and that "[i]t is the duty of the judicial branch to stand up for the rights of the citizens of Kentucky." Fairness, however, is an aspect of public policy reserved to the legislature. Our task is not to determine whether a statute is unfair but whether it is unconstitutional. As noted in Williams v. Eastern Coal Corp., Ky., 952 S.W.2d 696 (1997), "[w]orkers' compensation is a creature of statute," and "[w]hen an employer and employee submit themselves to the provisions of the act, their rights and liabilities are henceforth to be measured by the terms of the act." | Workers' compensation is a creature of statute, and when an employer and employee submit themselves to the provisions of the Workers' Compensation Act, their rights and liabilities are henceforth to be measured by the terms of the Act. KRS 342.0011 et seq. | Is workers compensation a creature of statute and when an employer and employee submit themselves to the provisions of the Act? | 048160.docx | LEGALEASE-00142041-LEGALEASE-00142042 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8536 | Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90 | 25T+151 | The Act thus establishes a clear and explicit system for resolution of disputes arising under the Act. This dispute resolution system parallels the tiers of authority established by the Act. Under the substantive provisions of the Act, a blind person must apply for a license from a state agency. The state agency then applies to a federal agency for placement of the licensee. Similarly, under the dispute resolution scheme, a blind licensee must first apply to the state licensing agency before filing a complaint with the Secretary. As under the substantive provisions of the Act, a state licensing agency has direct resort to the Secretary under the dispute resolution system. Most telling as to Congress' intent, however, is its statement that an arbitration decision "shall be subject to appeal and review as a final agency action." 20 U.S.C. " 107d"2(a). In contrast to de novo review, judicial review of final agency action is "severely circumscribed," requiring a reviewing court to determine whether a decision is within the ambit of the agency's discretion and supported by the record. Process Gas Consumers Group v. U.S. Department of Agriculture, 694 F.2d 728, 740 (D.C.Cir.1981), cert. denied, 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 807 (1983); see Citizens to Preserve Overton Park, supra, 401 U.S. at 416, 91 S.Ct. at 824 ("[T]he ultimate standard of review is a narrow one."). It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek de novo determination in federal court. Surely Congress contemplated that disputes between state agencies and government agencies could involve contract awards, such as the one at issue here. Congress nevertheless set up an arbitration scheme instead of authorizing direct resort to federal court. As Justice Brandeis stated the "well settled" rule: "where a statute | Where Congress has created arbitration scheme as administrative method for enforcing statutory right, there is strong presumption that it is exclusive. | Is there a strong presumption of exclusivity when Congress creates an arbitration scheme for enforcing a statutory right? | 007630.docx | LEGALEASE-00143317-LEGALEASE-00143319 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 8537 | Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023 | 25T+155 | Generally, when a complaint sets forth a combination of claims the arbitrable claims should be severed from the nonarbitrable ones and the district court should stay judicial proceedings as to the arbitrable claims, thereby allowing arbitration to proceed. Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir.1979). An exception to this rule exists, however, when the arbitrable and nonarbitrable claims are so related that severance is "impractical if not impossible." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1172 (11th Cir.1982); Sawyer, supra, 642 F.2d at 793; Sibley v. Tandy Corp., supra, 543 F.2d at 543. When arbitrable and nonarbitrable claims are "inextricably intertwined," the rule in this circuit is that the district court should deny arbitration as to the arbitrable claims in order to protect the jurisdiction of the federal court and avoid any possible preclusive effect. Id. | When arbitrable and nonarbitrable claims are inextricably intertwined, the district court should deny arbitration as to the arbitrable claims in order to protect the jurisdiction of federal court and avoid any possible preclusive effect. | Do courts deny arbitration when arbitrable and non arbitrable claims are inextricably intertwined? | 007639.docx | LEGALEASE-00143357-LEGALEASE-00143358 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8538 | Danieli & C. Officine Meccaniche S.p.A. v. Morgan Constr. Co., 190 F. Supp. 2d 148 | 25T+156 | The principle underlying the authority of a district court to preserve the status quo pending arbitration is the moving party's right to retain its remedies during such proceedings. See Teradyne, 797 F.2d at 51. Requiring Morgan to transfer to Danieli Italy possession of the bearings in exchange for a bond in the full amount of the putative judgment in the Pennsylvania lawsuit would not require this Court to resolve the merits of any arbitrable dispute but rather would safeguard Morgan's remedy pending arbitration. DiMercurio, 202 F.3d at 77 (arbitration agreements do not divest courts of jurisdiction but simply prevent them from resolving the merits of arbitrable disputes). | Principle underlying authority of a district court to preserve status quo pending arbitration is moving party's right to retain its remedies during such proceedings. | Do courts have jurisdiction to preserve the status quo of a pending arbitration dispute? | Alternative Dispute Resolution - Memo 671 - RK.docx | ROSS-003288441-ROSS-003288442 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 8539 | United States v. Kincaid-Chauncey, 556 F.3d 923 | 372+1014(10) | 18 U.S.C. " 1343. For decades, federal prosecutors have used " 1343, as well as the substantially similar mail fraud statute, 18 U.S.C. " 1341, to develop a theory of "honest services fraud." Honest services fraud occurs when an employee deprives his employer of its right to have its affairs conducted "free from deceit, fraud, dishonesty, conflict of interest, and self-enrichment," and consistent with the employee's fiduciary duties to the employer. United States v. Woodward, 149 F.3d 46, 54 (1st Cir.1998). In cases involving public officials, the theory relies on the idea that "a public official acts as "trustee for the citizens and the State ... and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty" to them." United States v. Silvano, 812 F.2d 754, 759 (1st Cir.1987) (quoting United States v. Mandel, 591 F.2d 1347, 1363 (4th Cir.1979)). | Honest services fraud occurs when an employee deprives his employer of its right to have its affairs conducted free from deceit, fraud, dishonesty, conflict of interest, and self-enrichment, and consistent with the employee's fiduciary duties to the employer. 18 U.S.C.A. S 1343. | What is honest services fraud? | Bribery - Memo #188 - C-EB.docx | ROSS-003329091-ROSS-003329092 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8540 | United States v. Robinson, 663 F.3d 265 | 63+1(1) | We acknowledge the cautionary effect of the Supreme Court's decision in Skilling v. United States, """ U.S. """", 130 S.Ct. 2896, 2931, 177 L.Ed.2d 619 (2010), which limited the reach of the honest-services fraud statute, 18 U.S.C. " 1346, to bribes and kickbacks in schemes aimed at corrupting the intangible right of honest services. We acknowledge as well that the broad language in " 666(a) leaves the boundaries of the offense somewhat ambiguous. But no more so than the circumscribed version of the honest-services fraud offense after Skilling. We need not determine the outer limits of the " 666(a) offense to decide this case. We agree with our sister circuits that the language of the business or transaction clause in " 666(a) is broad enough to include bribes offered to influence the intangible business or transactions of a federally funded organization, such as the law-enforcement "business" of a police department that receives federal funds. | Language of business or transaction clause in federal-funds bribery statute is broad enough to include bribes offered to influence intangible business or transactions of federally funded organization, such as law-enforcement "business" of police department that receives federal funds. 18 U.S.C.A. S 666(a). | Does bribery include items that are intangible? | 011395.docx | LEGALEASE-00143153-LEGALEASE-00143154 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8541 | State v. Ventola, 122 Conn. 635 | 297+13 | The principal contention of the appellant is that no violation of the statute was shown because it did not appear that the accused was endeavoring to procure Riolino to testify falsely, and numerous cases are quoted arising under statutes prohibiting perjury. Our statute, however, is much more comprehensive. It is a combination of two statutes passed in 1877 and 1895, respectively. Public Acts 1877, chap. 4; Public Acts 1895, chap. 132. In its present form, it prohibits the giving or offering of anything to a person summoned or who may be used as a witness in any civil or criminal proceeding, or any person summoned to give a deposition, with the intent to delay, influence, or hinder him. It is unnecessary that the thing offered or given is to induce a witness to testify falsely. It is sufficient if it were given with intent to influence his testimony or conduct. In the common acceptation of the term, the verb "influence" means to "alter," "move," "sway," or "affect." Webster's New International Dictionary (2d Ed.) p. 1276. If the promise or payment were made with the intent to affect the testimony or conduct of the prospective witness so that he would thereby be induced to testify more or less favorably to a party than he otherwise would have done, an intent to influence within the meaning of the statute exists. | To constitute violation of statute penalizing gift or offer of anything to prospective witness with intent to influence his testimony, offer or gift need not be made to induce him to testify falsely, but promise or payment, made to induce him to testify more or less favorably to party than he otherwise would, is made with "intent to influence" within statute; "influence" commonly meaning to alter, move, sway, or affect. Gen.St.1930, S 6168. | "In bribery, is it necessary that the thing offered or given is to induce a witness to testify falsely or is it sufficient if it were given with intent to influence his testimony or conduct?" | 011591.docx | LEGALEASE-00142668-LEGALEASE-00142669 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 8542 | Dixson v. United States, 465 U.S. 482 | 63+1(2) | To determine whether any particular individual falls within this category, the proper inquiry is not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official federal responsibilities. Persons who hold such positions are public officials within the meaning of section 201 and liable for prosecution under the federal bribery statute. | Legislative history of federal bribery statute, including Congress' longstanding commitment to a broadly drafted statute, its desire to continue that tradition when it adopted present language of statute in 1962 revision of federal conflicts of interest and bribery statutes, and its awareness of federal judiciary's interpretation of phrase "acting for or on behalf of the United States" in earlier federal bribery statutes to have a broad jurisdictional reach, establishes that Congress never intended bribery statute's open-ended definition of "public official" to be restricted to persons in a formal employment or agency relationship with Government; rather, proper inquiry is whether person occupies position of public trust with official federal responsibilities. 18 U.S.C.A. SS 201, 201(a). | "According to federal bribery statute, does a public official need to have contractual relationship with the federal government?" | Bribery - Memo #790 - C-JL.docx | LEGALEASE-00032114-LEGALEASE-00032115 | Order, SA | 0.41 | 1 | 0 | 0 | 1 | |
| 8543 | Colorado Interstate Gas Co. v. Sears, 362 S.W.2d 396 | 260+92.26 | In Williams the Court stated the law governing the granting of exceptions under Rule 37 to prevent confiscation of property as follows:"The basic right of every landowner, including small tract owners, is to a fair chance to recover the oil and gas in and under his land, or their equivalents in kind. Gulf Land Co. v. Atlantic Refining Co., [134 Tex. 59, 131 S.W.2d 73], cited just above. This means that the owners and lessees of some small tracts are entitled to a well on their tracts as a matter of law because there is no other way to give them a fair chance to recover the oil and gas under their land. Stanolind Oil & Gas Co. v. Railroad Commission, [96 S.W.2d 664], cited just above. But they must first prove confiscation or waste. | Owners and lessees of small tracts are entitled to oil and gas well on their tracts as matter of law where there is no other way to give them fair chance to recover oil and gas under their land. | are the owners and lessees of some small tracts entitled to a well on their tracts? | 021239.docx | LEGALEASE-00143278-LEGALEASE-00143279 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8544 | Udall v. Tallman, 380 U.S. 1 | 260+5.1(2) | The Mineral Leasing Act of 1920, 41 Stat. 437, 30 U.S.C. s 181 et seq. (1958 ed.), gave the Secretary of the Interior broad power to issue oil and gas leases on public lands not within any known geological structure of a producing oil and gas field. Although the Act directed that if a lease was issued on such a tract, it had to be issued to the first qualified applicant, it left the Secretary discretion to refuse to issue any lease at all on a given tract. United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148. The Act excluded from its application certain designated lands, but did not exclude lands within wildlife refuge areas. | The Mineral Leasing Act of 1920, although directing that if oil and gas lease is issued on tract it must be issued to first qualified applicant, left discretion to Secretary of Interior to refuse to issue any lease at all on a given tract. Mineral Lands Leasing Act S 1 et seq. as amended 30 U.S.C.A. S 181 et seq. | Did the Mineral Leasing Act of 1920 give the Secretary of the Interior broad power to issue oil and gas leases on public lands? | 021251.docx | LEGALEASE-00143252-LEGALEASE-00143253 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 8545 | Union Producing Co. v. Pittman, 245 Miss. 427 | 260+122 | Appellants assert, and appellees admit, that a grant or reservation of minerals gives to the mineral owner the incidental rights of entering and occupying the lands involved, and making such use of the surface thereof as is reasonably necessary to explore, mine, remove and market the minerals therein and thereunder. McNeese v. Renner et al., 197 Miss. 203, 21 So.2d 7. This Court has set out the rule clearly in the case of Gulf Refining Company v. Davis, 224 Miss. 464, 80 So.2d 467, in which we said: "Now "a grant or reservation of mines or minerals gives to the mineral owner the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals." 58 C.J.S., Mines and Minerals, " 159b, p. 332. See also " 159c, p. 334 thereof, as follows: "A mineral owner, in the absence of additional rights expressly conveyed or reserved, is limited to as much of the surface and such uses thereof as are reasonably necessary properly to mine and carry away the minerals."' We therefore recognize that in the absence of further rights expressly conveyed or reserved, the rights of owners of minerals are limited to so much of the surface and such use thereof as is reasonably necessary to properly mine and carry away the minerals. These rights are also subject to the limitations that the mineral owner does not use the surface in such a way as unnecessarily to destroy or injure it. The right to remove minerals by the usual or customary method of mining exists, even though the surface of the ground may be wholly destroyed as a result thereof. The owner of the surface and the owner of the minerals should have due regard for each other and should exercise that degree of care and use which is a just consideration for rights of the other. The owner of the surface of the land has the right to enjoy the land free from annoyance, except such as reasonably arises from the opening, exploitation, mining, | In absence of further rights expressly conveyed or reserved, rights of owners of minerals are limited to so much of surface and such use thereof as is reasonably necessary to properly mine and carry away minerals; these rights are also subject to limitations that mineral owner does not use surface in such a way as necessarily to destroy or injure it; the right to remove minerals by usual or customary method of mining exists, even though surface of ground may be wholly destroyed as result thereof. | What are mineral estate owners rights limited to? | Mines and Minerals - Memo # 84 - C - EB.docx | ROSS-003291068-ROSS-003291070 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8546 | Gilberton Contracting Co. v. Hook, 255 F. Supp. 687 | 315+36 | The well established law of Pennsylvania is that culm or refuse severed from its original place is personal property, Gilberton Coal Co. v. Schuster, 403 Pa. 226, 229, 169 A.2d 44 (1961), which may be abandoned when deposited on the land of another with the intention of abandoning it. Fidelity Philadelphia Trust Co. v. Lehigh Valley Coal Co., 294 Pa. 47, 67, 143 A. 474 (1928). "When considering the question of abandonment, the nature of the property, and the conduct of the one who claims it, must be given due weight." Llewellyn, et al., v. Philadelphia & Reading C. & I. Co., 308 Pa. 497, 502, 162 A. 429, 430 (1932). The intention to abandon must coalesce with external acts giving effect to such intention, which generally presents a question of fact for the factfinder. *694 United National Gas Co. v. James Brothers, 325 Pa. 469, 473, 191 A. 12 (1937). Mere non-user of the property does not constitute abandonment. MacCurdy v. Lindey et al.,349 Pa. 655, 658, 37 A.2d 514 (1944). | Under Pennsylvania law, culm or refuse severed from its original place is personal property which may be abandoned when deposited on land of another with intention of abandoning it. | Is culm or refuse severed from its original place personal property? | 021398.docx | LEGALEASE-00143470-LEGALEASE-00143471 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8547 | BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59 | 260+49 | "A mineral estate, even when severed from the surface estate, may be adversely possessed under the various statutes of limitations," so long as the statutory requirements are met. | A mineral estate, even when severed from the surface estate, may be adversely possessed under the various statutes of limitations, so long as the statutory requirements are met. V.T.C.A., Civil Practice & Remedies Code S 16.021(1). | "Can a mineral estate, even when severed from the surface estate, be adversely possessed?" | 021403.docx | LEGALEASE-00143502-LEGALEASE-00143503 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 8548 | Buxbom v. Smith, 23 Cal. 2d 535 | 302+34(1) | While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms. Rogers v. Duhart, 97 Cal. 500, 32 P. 570; Menefee v. Oxnam, 42 Cal.App. 81, 183 P. 379; Masero v. Bessolo, 87 Cal.App. 262, 262 P. 61. Since the enactment of section 452 of the Code of Civil Procedure in 1872, it has been generally recognized that in the construction of a pleading for the purpose of determining its effect. "its allegations must be liberally construed, with a view to substantial justice between the parties." In re Estate of Wickersham, 153 Cal. 603, 96 P. 311; Mix v. Yoakum, 200 Cal. 681, 254 P. 557; Terry Trading Corp. v. Barsky, 210 Cal. 428, 292 P. 474; Von Schrader v. Milton, 96 Cal.App. 192, 273 P. 1074. | In the construction of a pleading for purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice between the parties. Code Civ.Proc. SS 452, 475, 580; Const. art. 6, S 41/212. | Should allegations in a pleading be liberally construed for the purpose of determining its effect? | 023478.docx | LEGALEASE-00142288-LEGALEASE-00142289 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 8549 | Rabkin v. Philip A. Hunt Chem. Corp., 498 A.2d 1099 | 307A+622 | On a motion to dismiss for failure to state a claim it must appear with a reasonable certainty that a plaintiff would not be entitled to the relief sought under any set of facts which could be proven to support the action. Harman v. Masoneilan International, Inc., Del.Supr., 442 A.2d 487, 502 (1982). A complaint need only give general notice of the claim asserted and will not be dismissed unless it is clearly without merit, either as a matter of law or fact. Michelson v. Duncan, Del.Supr., 407 A.2d 211, 217 (1979); Delaware State Troopers Lodge, etc. v. O'Rourke, Del.Ch., 403 A.2d 1109, 1110 (1979). | Complaint need only to give general notice of claim asserted and will not be dismissed unless it is clearly without merit, either as matter of law or as fact. | Must the complaint only give a general notice of the claim asserted? | 023494.docx | LEGALEASE-00143001-LEGALEASE-00143002 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8550 | Wolfe v. Underwood, 97 Ala. 375 | 307A+74 | This is the second time this cause has been before this court. In September, 1890, the respondents demurred to the petition, which demurrer was overruled, and an appeal was taken. The court reversed the said decretal order, and held that the demurrer should have been sustained, on the ground that Mrs. Underwood sued by her next friend, when she should have sued in her own right. 8 South. Rep. 774. After the remandment of the cause the petition was amended so as to conform to the opinion of this court. To the petition, as amended, the respondents again demurred, assigning as grounds for demurrer that the petition was defective, in that it does not make the heirs of J. H. Edwards, deceased, parties, and on the further ground that the petition does not show that the petitioners constitute a majority of the stockholders holding, three fourths of the stock. On February 17, 1890, this demurrer was overruled. On February 28, 1891, the petition was again amended, so as to aver that the will of Edwards was admitted to probate, and letters testamentary were granted to Arthur Smith, as administrator, nominated in the will, by the probate court of Autauga county, instead of Jefferson county, as originally averred in the petition. To the petition, as thus amended, there was no demurrer filed, but the respondent J. B. Wolfe answered, denying generally all the averments of the petition. The depositions of the petitioners' witnesses, as first taken, were suppressed, and leave granted to retake them. They were retaken, and, at the hearing, it was discovered that the certificate of the depositions was defective, in not setting out the particular way in which the depositions were taken. On motion of the petitioners, the commissioner was allowed, upon showing made by him by affidavit in open court, to amend the certificate so as to make it speak the truth. This was objected to by the defendant J. B. Wolfe, and, upon the hearing, motions were made by him to suppress the depositions | Where the certificate of the commissioner is defective in not setting out the particular way in which a deposition was taken, it may, by leave of court, be amended in open court by the commissioner. | "Where the certificate of the commissioner is defective in not setting out the particular way in which a deposition was taken, can it be amended in an open court by the commissioner?" | Pretrial Procedure - Memo # 5410 - C - KG.docx | ROSS-003328402-ROSS-003328403 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 8551 | Nussear v. Arnold, 1825 WL 2019 | 307A+74 | It is a sufficient execution of a commission to take depositions, if the commissioners annex their names to the depositions, and the envelope is sealed. It is sufficient if the name of the county appear in the margin of the deposition, to be one of those to which the commissioner was directed, if it be an ex parte commission. Where a commission is directed to several commissioners, residing in different counties, or either of them, one may take depositions in one of the counties named, though he do not reside there. It is not an objection to the reading a deposition in evidence, that when the party objecting inquired for it, before the trial, of the prothonotary, he answered, it was returned, though it appears, it was then in the possession of the opposite counsel, who had taken it out of the office; but, it seems, it would be a good ground for a continuance of the cause. | It is a sufficient execution if the commissioners annex their names to the depositions and the envelope be sealed and it is enough that the name of the county where it is executed appears on the margin. | Is it a sufficient execution if the commissioners annex their names to the depositions and the envelope be sealed and that the name of the county where it is executed appears on the margin? | Pretrial Procedure - Memo # 5514 - C - SK.docx | ROSS-003314897-ROSS-003314898 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 8552 | First Horizon Merch. Servs. v. Wellspring Capital Mgmt., 166 P.3d 166 | 307A+36.1 | "The regulation of pretrial discovery on the issue of personal jurisdiction, including the denial of discovery, is within the trial court's discretion ." Wenz v. Nat'l Westminster Bank, PLC, 91 P.3d 467, 469 (Colo.App.2004). On review, we will not disturb a discovery ruling absent an abuse of discretion. An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. Wenz v. Nat'l Westminster Bank, PLC, supra, 91 P.3d at 469. | The regulation of pretrial discovery on the issue of personal jurisdiction, including the denial of discovery, is within the trial court's discretion. | Is the regulation of pretrial discovery on the issue of personal jurisdiction within the trial court's discretion? | 032655.docx | LEGALEASE-00143311-LEGALEASE-00143312 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8553 | U.S. Bank, Nat. Ass'n v. Schaeffer, 160 Conn. App. 138 | 307A+554 | "Because the issue of standing implicates subject matter jurisdiction, it may be a proper basis for granting a motion to dismiss.. The standard of review for a court's decision on a motion to dismiss is well settled.. [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo.. When a .. court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.. In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.. The motion to dismiss .. admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; internal quotation marks omitted.) Electrical Contractors, Inc. v. Dept. of Education, 303 Conn. 402, 413, 35 A.3d 188 (2012). | Because the issue of standing implicates subject matter jurisdiction, it may be a basis for granting a motion to dismiss. | "Because the issue of standing implicates subject matter jurisdiction, may it be a basis for granting a motion to dismiss?" | 033265.docx | LEGALEASE-00142555-LEGALEASE-00142556 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8554 | McGrath v. VRA I Ltd. P'ship, 244 S.W.3d 220 | 307A+684 | A motion to dismiss should be granted where it appears, by a preponderance of the evidence, that the circuit court lacks subject matter jurisdiction.Howell v. Lone Star Industries, Inc., 44 S.W.3d 874, 877 (Mo.App. E.D.2001). The movant bears the burden of proving the court lacks jurisdiction. Id. | A motion to dismiss should be granted where it appears, by a preponderance of the evidence, that the circuit court lacks subject matter jurisdiction. | Should a motion to dismiss be granted where it appears that the circuit court lacks subject matter jurisdiction? | 033441.docx | LEGALEASE-00142963-LEGALEASE-00142964 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 8555 | Voltz v. Dyess, 148 So. 3d 425 | 307A+560 | We hold, therefore, that a trial court is required to give plaintiffs at least14 days' notice before dismissing an action against a defendant on whom service was not effected. See Rule 4(b), Ala. R. Civ. P.; Moffett, 909 So.2d at 826 ("[T]he trial court is required to give the plaintiff 14 days' notice before it dismisses an action against the defendants on whom service was not effected." (emphasis added)); and Moore, 60 So.3d at 933 ("[T]he text of the rule does require notice of a dismissal for a failure to timely serve a defendant."). | A trial court is required to give plaintiffs at least 14 days' notice before dismissing an action against a defendant on whom service was not effected. Rules Civ.Proc., Rule 4(b). | Is a trial court required to give plaintiffs at least 14 days' notice before dismissing an action? | Pretrial Procedure - Memo # 6238 - C - NS.docx | ROSS-003329611-ROSS-003329612 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8556 | Vopalka v. Abraham, 260 Neb. 737 | 307A+560 | The full text of " 25"217 reads as follows: "An action is commenced on the date the petition is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the petition was filed." Whether the language of " 25"217 is self-executing is an issue of statutory interpretation. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. R.J. Miller, Inc. v. Harrington, 260 Neb. 471, 618 N.W.2d 460 (2000). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. Sharkey v. Board of Regents, 260 Neb. 166, 615 N.W.2d 889 (2000). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. Sack v. State, 259 Neb. 463, 610 N.W.2d 385 (2000). | Negligence action in which defendants were not served within six months of filing of petition was dismissed by operation of law, pursuant to statute requiring dismissal without prejudice of unserved petitions. Neb.Rev.St. S 25-217. | Will an action stand dismissed without prejudice as to any defendant not served within six months from the date the petition was filed? | 033736.docx | LEGALEASE-00143081-LEGALEASE-00143082 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8557 | Taylor v. Mazda Motor of Am., 934 So. 2d 518 | 307A+746 | A trial court's decision to impose sanctions is discretionary and the imposition of sanctions necessarily requires wrongdoing by the party being sanctioned. See Mercer v. Raine, 443 So.2d 944 (Fla.1983). Here, the trial judge struck the plaintiff's only two witnesses as a sanction for not making them readily available for deposition before the pre-trial conference in accord with the pre-trial order. While under some circumstances, it is within a trial judge's discretion to impose sanctions for violations of orders relating to the pre-trial conference, see First Republic Corp. v. Hayes, 431 So.2d 624, 626 (Fla. 3d DCA 1983), and cases cited, the issue, as in First Republic, is whether the sanction was appropriate under the circumstances in the present case. We conclude that it was not. The sanction must be commensurate with the offense.See Progressive Consumers Ins. Co. v. Deco Nat'l Stone, Inc., 827 So.2d 336 (Fla. 3d DCA 2002) (striking primary witness for plaintiff and directing verdict for defendant out of proportion to magnitude of alleged offense for failure to include name on formal witness list); Kamhi v. Waterview Towers Condo. Ass'n, 793 So.2d 1033 (Fla. 4th DCA 2001) (order prohibiting defendant from, among other things, presenting testimony at trial too severe where no findings of deliberate disregard of trial court's pre-trial order). Moreover, a litigant should not be punished for fault on the part of her counsel by such a severe sanction as striking her witnesses for non-compliance. | A litigant should not be punished for fault on the part of her counsel by such a severe sanction as striking her witnesses for non-compliance with a pre-trial order. | Should a litigant not be punished for fault on the part of her counsel by such a severe sanction as striking her witnesses for non-compliance with a pre-trial order? | 033910.docx | LEGALEASE-00142236-LEGALEASE-00142237 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8558 | State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 268 Neb. 439 | 307A+535 | Under " 25"217, a case stands dismissed "as to any defendant not served within six months from the date the petition was filed." We read the expression "any defendant" to mean that dismissal is indicated as to that defendant who is "not served" but not all defendants in the action. See Webster's Third New International Dictionary of the English Language, Unabridged 97 (1993) (defining "any" as "one or some indiscriminately of whatever kind"). Referring to the underlying action, it is agreed that State Farm had appeared in the underlying action and that although Campbell was not served, dismissal of State Farm was not warranted under " 25"217. Because the district court believed that the underlying action stood dismissed, it reasoned that there was no justiciable controversy among or between the parties in the declaratory judgment action and dismissed the instant declaratory judgment case. The district court's reasoning was flawed. | The expression "any defendant" in statute stating that a case stands dismissed as to any defendant not served within six months from the date the petition was filed means that dismissal is indicated as to that defendant who is not served, but not all defendants in the action. Neb.Rev.St. S 25-217. | "Do the words any defendant"" in a statute requiring dismissal of an action mean the dismissal is indicated only as to the defendant who is not served?" | Pretrial Procedure - Memo # 6396 - C - PB.docx | ROSS-003289189-ROSS-003289190 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8559 | Arbogast v. City of St. Louis, 285 S.W.3d 790 | 307A+554 | Dismissal for lack of subject-matter jurisdiction is appropriate when it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction. Missouri Soybean Association v. Missouri Clean Water Commission, 102 S.W.3d 10, 22 (Mo. banc 2003); Rule 55.27(g)(3).2 The quantum of proof necessary is not high; it must only appear by a preponderance of the evidence that the court is without jurisdiction. Missouri Soybean Association, 102 S.W.3d at 22. | Dismissal for lack of subject-matter jurisdiction is appropriate when it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction. V.A.M.R. 55.27(g)(3). | "Is a dismissal for lack of subject-matter jurisdiction appropriate when it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction?" | Pretrial Procedure - Memo # 6419 - C - BP.docx | ROSS-003289886-ROSS-003289887 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 8560 | Annexation Ordinance F-2008-15 v. City of Evansville, 955 N.E.2d 769 | 307A+552 | On appeal, the Remonstrators contend that the trial court erred in denying their challenge to the proposed annexation of certain parcels by the City. The City, however, argues that the Remonstrators' appeal should be dismissed as moot because the annexation has become effective, making the annexed parcels part of the City, and, as such, there is no effective relief that this court can render to the Remonstrators. The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. A.D. v. State, 736 N.E.2d 1274, 1276 (Ind.Ct.App.2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. Id. The existence of an actual controversy is an essential requisite to appellate jurisdiction. Bremen Public Schools v. Varab, 496 N.E.2d 125, 126 (Ind.Ct.App.1986). Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. A.D., 736 N.E.2d at 1276. Nevertheless, this public interest exception may only be invoked upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur in a context which will continue to evade review. Haggerty v. Bloomington Bd. of Public Safety, 474 N.E.2d 114, 116 (Ind.Ct.App.1985). | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. | Will the case be dismissed if a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved? | 034198.docx | LEGALEASE-00143183-LEGALEASE-00143184 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8561 | Mbakpuo v. Ekeanyanwu, 738 A.2d 776 | 307A+746 | Under Super. Ct. Civ. R. 16(e)(5),11 "[a] trial court has broad discretion .. in refusing to admit evidence which was required to be disclosed in a pretrial statement .." Cooper v. Safeway Stores, Inc., 629 A.2d 31, 35 (D.C.1993). We find no abuse of that discretion here. Mr. Mbakpuo was fully aware that Mr. Agiliga was representing the other two appellees, as well as himself. Permitting Mbakpuo to call Agiliga to the stand, without prior notice that he intended to do so, would have needlessly interrupted and prolonged the proceedings. Ekeanyanwu and Anyaibe, who were surely not prepared for such a contingency, would have been obliged either to hire outside counsel or to prepare themselves to act as counsel during the testimony of Mr. Agiliga. In addition, Mr. Mbakpuo told the court that his purpose in calling Agiliga was to lay a foundation for the introduction of certain records which allegedly would have shown that the appellees were associated with him before 1993. Even if he had been successful in this attempt, thereby casting doubt on appellees' statement that they had "never" been associated with him, the evidence would not have directly challenged appellees' basic allegation that Mbakpuo used their names without their consent in 1993 and 1994. On this record we hold that the trial court did not abuse its discretion in precluding Mr. Mbakpuo from calling Mr. Agiliga to the stand. | Trial court has broad discretion in refusing to admit evidence which was required to be disclosed in pretrial statement. Civil Rule 16(e)(5). | Does a trial court have broad discretion in refusing to admit evidence which was required to be disclosed in a pretrial statement? | 034277.docx | LEGALEASE-00143206-LEGALEASE-00143207 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 8562 | Gray v. Bryant, 189 N.C. App. 527 | 307A+552 | Defendant presents one issue for this Court's review: Whether the trial court erred in dismissing his complaint as frivolous. A claim "is frivolous if "a proponent can present no rational argument based upon the evidence or law in support of [it]." " Rhyne v. K-Mart Corp., 149 N.C.App. 672, 689, 562 S.E.2d 82, 94 (2002) (alteration in original) (quoting Black's Law Dictionary 668 (6th ed.1990)), affirmed, 358 N.C. 160, 594 S.E.2d 1 (2004). In determining whether a complaint is frivolous, the standard is not the same as in a ruling on a motion under Rule 12(b)(6). Richards v. State's Attorneys Office, 40 F.Supp.2d 534, 536 (D.Vt.1999). Instead, we " "look with a far more forgiving eye" in examining whether a claim rests on a meritless legal theory." Id. (citation omitted). We review such dismissals for abuse of discretion. N.C. Gen.Stat. " 1-110. | A claim is frivolous, so as to require its dismissal, if a proponent can present no rational argument based upon the evidence or law in support of it. | "Is a claim frivolous, if a proponent can present no rational argument based upon the evidence or law in support of it?" | Pretrial Procedure - Memo # 6670 - C - ES.docx | ROSS-003289309-ROSS-003289310 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8563 | Commonwealth Edison Co. v. State, 189 Mont. 191 | 371+2005 | The taxing power of the state is an essential power of its sovereignty. Weston v. City Council of Charleston (1829), 27 U.S. 449, 466 (2 Peters 449), 7 L.Ed. 481. This power cannot be set aside or limited on weightless statements that a federal policy is being substantially frustrated. | The state's taxing power cannot be set aside or limited on weightless statements that federal policy is being frustrated. | Can the state's taxing power be set aside or limited on weightless statements that federal policy is being frustrated? | Taxation - Memo # 503 - C - NS.docx | ROSS-003289706 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8564 | Cal-Roof Wholesale v. State Tax Comm'n, 242 Or. 435 | 371+2005 | The application of Public Law 86"272 is not predicated upon judicial distinction between inter or intra-state activities. The constitutional power of Congress to regulate inter-state commerce carries with it the power to regulate state taxation of intra-state activities if such tax affects inter-state commerce. See cases cited in Smith Kline & French Laboratories v. State Tax Comm., supra. Paragraph (2) of the 1959 federal statute prohibits state income taxation of the precise business activities which the U. S. Supreme Court in 1917 held intra-state in nature. Cheney Brothers Co. v. Com. of Massachusetts, 246 U.S. 147, 153, 38 S.Ct. 295, 62 L.Ed. 632. | Constitutional power of Congress to regulate interstate commerce carries with it power to regulate state taxation of intrastate activities if such tax affects interstate commerce. Interstate Commerce Tax Act, S 101, 15 U.S.C.A. S 381. | Does the constitutional power of Congress to regulate interstate commerce carries with it power to regulate state taxation of intrastate activities? | Taxation - Memo # 517 - C - SHB.docx | ROSS-003302268-ROSS-003302269 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8565 | Revenue Cabinet v. Estate of Field, 864 S.W.2d 930 | 371+3302 | Ad valorem taxes are clearly distinguishable from inheritance taxes: the former are direct taxes on property based upon the value of the property, while the latter are taxes imposed not on property, but upon the privilege or right of succession thereto. Because this is a case involving an inheritance, or excise tax, Section 172A, which limits the applicability of Sections 171, 172 and 174 and which deals exclusively with ad valorem taxes, simply does not apply. | "Ad valorem taxes" are direct taxes on property based upon value of property, while "inheritance taxes" are imposed not on property, but upon privilege or right of succession thereto. | Are inheritance taxes imposed not upon property but upon privilege or right of succession thereto? | 045570.docx | LEGALEASE-00142225-LEGALEASE-00142226 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 8566 | Gutierrez v. Dold Foods, 40 Kan. App. 2d 1135 | 413+2 | The availability of workers compensation benefits to injured employees arises under statutes, not under the court-made common law.The Kansas Legislature, like those of other states, has enacted a system under which employees lose the right to sue their employers for most on-the-job injuries but gain guaranteed compensation under workers compensation laws. We must begin our analysis, as we do in any case governed by a statute, with the specific words chosen by the legislature. | The availability of workers compensation benefits to injured employees arises under statutes, not under the court-made common law. West's K.S.A. 44-501 et seq. | "Does the availability of workers compensation benefits to injured employees arise under statutes, and not under the court-made common law?" | 048044.docx | LEGALEASE-00143353-LEGALEASE-00143354 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8567 | Richard v. Missouri Dep't of Corr., 162 S.W.3d 35 | 413+2 | The Missouri Workers' Compensation Law "is entirely a creature of statute." Simpson v. Saunchegrow Constr., 965 S.W.2d 899, 903 (Mo.App.1998), overruled on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 226 (Mo. banc 2003). This court is guided by the general rules of statutory construction in interpreting it. See id | Workers' compensation law is entirely a creature of statute, and court is guided by the general rules of statutory construction in interpreting it. | "Is workers compensation law entirely a creature of statute, and what is the court guided by when interpreting it?" | 048138.docx | LEGALEASE-00142094-LEGALEASE-00142095 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 8568 | Clean Sweep Prof'l Parking Lot Maint. v. Talley, 267 Va. 210 | 413+2 | The rights and remedies provided in the Act are exclusive of all other rights and remedies of an employee or his estate at common law or otherwise. Peck v. Safway Steel Prods., Inc., 262 Va. 522, 525, 551 S.E.2d 328, 329 (2001). | The rights and remedies provided in the Workers' Compensation Act are exclusive of all other rights and remedies of an employee or his estate at common law or otherwise. West's V.C.A. S 65.2-309, subd. A. | Are the rights and remedies provided in the Workers Compensation Act exclusive of all other rights and remedies of an employee or his estate at common law or otherwise? | Workers Compensation - Memo #389 ANC.docx | ROSS-003303821 | SA, Sub | 0.11 | 0 | 0 | 1 | 1 | |
| 8569 | Manion v. Nagin, 2003 WL 21459680 | 25T+156 | In a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is "qualifying contractual language" which permits it. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286, 1292 (8th Cir.1984). This approach is consistent with the plain meaning of the FAA and the "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Id. (citations omitted). A key issue in the case before the court is whether the Agreement has such "qualifying contractual language." | In a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is qualifying contractual language which permits it, that is, language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute. 9 U.S.C.A. S 1 et seq. | Can courts grant injunctive relief for an agreement that does not contain a qualifying contractual language? | 007666.docx | LEGALEASE-00144686-LEGALEASE-00144687 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8570 | Ortho Pharm. Corp. v. Amgen, 882 F.2d 806 | 25T+156 | Therefore, we hold that a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied. This court has consistently identified four factors that a court must consider in ascertaining the propriety of a preliminary injunction: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo; (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. See Constructors Assoc. of Western Pennsylvania v. Kreps, 573 F.2d 811, 814"15 (3d Cir.1978); see also A.L.K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir.1971). Absent an error of law or serious mistake in the consideration of proof, the district court's decision will be reversed only for an abuse of discretion. Constructors Assoc. of Western Penn. v. Kreps, 573 F.2d at 815. A reviewing court will find an abuse of discretion only when the district court has committed a "clear error of judgment," not simply because that reviewing court, applying the law to the facts of the case, could arguably reach a different result. See Hohe v. Casey, 868 F.2d 69, 70 (3d Cir.1989). When reviewing the grant of a preliminary injunction, we accord deference to the judgment of the district court "because of the infinite variety of situations which may confront it." A.L.K. Corp. v. Columbia Pictures, 440 F.2d at 763. | District court has authority to grant injunctive relief in arbitrable dispute, provided that traditional prerequisites for such relief are satisfied. | Do courts have the authority to grant injunctive relief in an arbitrable dispute without satisfying the traditional prerequisites for such relief? | 007680.docx | LEGALEASE-00144739-LEGALEASE-00144740 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 8571 | Marie v. Allied Home Mortg. Corp., 402 F.3d 1 | 25T+182(1) | We reaffirm that an employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate. Our holding here is in accord with the few cases elsewhere to discuss this issue. See, e.g., Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222"23 (11th Cir.2000); Gonzalez v. GE Group Adm'rs, Inc., 321 F.Supp.2d 165, 171"72 (D.Mass.2004). | An employer cannot waive its right to arbitration by failing to raise the arbitration defense with the Equal Employment Opportunity Commission (EEOC) or by failing to initiate arbitration during the pendency of the EEOC proceedings. 9 U.S.C.A. S 1 et seq. | Can an employer waive its right to arbitration by failing to raise the arbitration defense with the Equal Employment Opportunity Commission (EEOC)? | 007728.docx | LEGALEASE-00144938-LEGALEASE-00144939 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 8572 | Youngs v. Am. Nutrition, 537 F.3d 1135 | 25T+182(1) | Moreover, even if we were to assume that the arbitrator did not decide the Youngs/Behnken Controversy, we would still hold that the majority shareholders have failed to carry their burden of proof that the arbitrator exceeded his authority by failing to decide that matter. Although we assume that the Agreement gave the majority the right to have the Youngs/Behnken Controversy resolved by the arbitrator, a party may waive the contractual right. See, e.g., Ormsbee Development, 668 F.2d at 1147, 1153. "There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case and usually calls for a finding by the trier of the facts." Id. at 1153. If the majority shareholders did not provide any evidence to the arbitrator to support their claims regarding the Youngs/Behnken Controversy, then they waived their arbitration rights. | There is no set rule as to what constitutes a waiver or abandonment of arbitration agreement; question depends on facts of each case and usually calls for finding by trier of facts. | Is there a set of rules to determine what constitutes a waiver or abandonment of an arbitration agreement? | 007733.docx | LEGALEASE-00144951-LEGALEASE-00144952 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8573 | Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 | 25T+182(1) | A nonsignatory is estopped from refusing to comply with an arbitration clause "when it receives a "direct benefit" from a contract containing an arbitration clause." American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir.1999) (citing Thomson"CSF, 64 F.3d at 778"79); Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir.1993) (holding nonsignatory bound to arbitrate when it knew of the arbitration agreement and "knowingly accepted the benefits of" that agreement); cf. Hughes Masonry Co., 659 F.2d at 838"39 ("[I]t would be manifestly inequitable to permit Hughes to both claim that J.A. [a nonsignatory] is liable to Hughes for its failure to perform the contractual duties described in the [arbitration agreement] and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause."). | A nonsignatory is equitably estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause. | Can a nonsignatory be estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause? | Alternative Dispute Resolution - Memo 713 - RK.docx | ROSS-003300517-ROSS-003300518 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8574 | United States v. Coyne, 4 F.3d 100 | 63+14 | Coyne first challenges the jury charge on the bribery and extortion counts. The district court instructed the jury that the government must prove beyond a reasonable doubt that "the defendant accepted or solicited the thing of value, at least in part, for or because of his conduct or intending to be influenced in connection with any business or transaction of Albany County." Coyne argues that the use of the phrase "at least in part" in the jury charge for Counts I"III, V and VII was error. However, in United States v. Biaggi, 909 F.2d 662, 683 (2d Cir.1990), cert. denied, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991), we noted that there could be dual purposes for payments, stating that a "valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability." The charge was entirely appropriate in light of Coyne's argument that he was motivated by friendship. | Instruction that government had to prove beyond reasonable doubt that county executive accepted or solicited thing of value, at least in part, for or because of his conduct or intent to be influenced in connection with county business was proper in trial on charges under federal bribery statute and Hobbs Act; there could be dual purposes for payments to county executive and valid purpose that partially motivates transaction did not insulate participants from criminal liability. 18 U.S.C.A. SS 2, 371, 666(a)(1)(B), (a)(2), 1951; 18 U.S.C.(1982 Ed.Supp.II) S 666(b, c). | "When there are dual purposes for payments, does a valid purpose that partially motivates the transaction insulate the defendant from criminal liability?" | 011408.docx | LEGALEASE-00143762-LEGALEASE-00143763 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 8575 | United States v. Dischner, 974 F.2d 1502 | 63+1(1) | First, their facial challenge is unavailing. As discussed in connection with the RICO counts, a facial challenge is permitted when the statute restricts first amendment freedoms, or reaches "a substantial amount of constitutionally protected conduct." Kolender, 461 U.S. at 358 n. 8, 103 S.Ct. at 1859 n. 8 (quoting Flipside, 455 U.S. at 494, 102 S.Ct. at 1191). The bribery statute does not infringe first amendment freedoms, and it neither chills, nor is intended to chill, constitutionally protected activity. Therefore, Dischner and Mathisen may only challenge the statute as vague as applied to their specific conduct. Chapman, 500 U.S. at """", 111 S.Ct. at 1929; Schwartzmiller, 752 F.2d at 1346. | Alaska commercial bribe receiving statute did not infringe First Amendment freedoms as it neither chilled nor was intended to chill constitutionally protected activity; therefore, defendants charged with violation of statute could only challenge statute as unconstitutionally vague as applied to their specific conduct. U.S.C.A. Const.Amend. 1; AS 11.46.660. | Does the bribery statute infringe or violate the First Amendment? | Bribery - Memo #473 - C-JL.docx | ROSS-003288847-ROSS-003288848 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8576 | United States v. Kelley, 461 F.3d 817 | 164T+22 | Under the "fear of economic harm" theory, the defendant receives payment from the victim because the victim believes that the defendant can exercise his or her power to the victim's economic detriment. "The fear need not be the product of the defendant's actions. "It is enough if the fear exists and the defendant intentionally exploits it." " Id. at 1030 (quoting United States v. Williams, 952 F.2d 1504, 1513"14 (6th Cir.1991)). Private citizens can also be convicted under the "fear of economic harm" theory. See id. Vallecorsa had good reason to fear that the Kelleys would use their influence over his company's multi-million dollar airport contracts to cause him harm. Kelley held authority over all of American International's Detroit Metro Airport contracts. In fact, when Vallecorsa fired Kelley in 2002, he lost his largest airport contract within a month. Finally, the government also showed that there was a de minimis connection to interstate commerce; that the defendants knew of the conspiracy and intended to join it; and that they participated in it. | Under the fear of economic harm theory for conviction under Hobbs Act, the defendant receives payment from the victim because the victim believes that the defendant can exercise his or her power to the victim's economic detriment; fear need not be the product of the defendant's actions, it is enough if the fear exists and the defendant intentionally exploits it. 18 U.S.C.A. S 1951. | What must the prosecution prove the defendant received from the victim under the fear of economic harm theory for a conviction under the Hobbs Act? | 012252.docx | LEGALEASE-00144969-LEGALEASE-00144970 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 8577 | Hansman v. State, 679 So. 2d 1216 | 67+29 | Burglary is defined as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Consent to enter the premises is an affirmative defense to burglary. State v. Hicks, 421 So.2d 510 (Fla.1982). The defendant has the burden of initially offering evidence to establish the defense, but after he does so the burden then shifts to the state to disprove the defense beyond a reasonable doubt. Coleman v. State, 592 So.2d 300 (Fla. 2d DCA 1991), Wright v. State, 442 So.2d 1058 (Fla. 1st DCA 1983), rev. denied, 450 So.2d 489 (Fla.1984). | Defendant has burden of initially offering evidence to establish defense of consent to enter premises in burglary prosecution, but after he does so burden shifts to state to disprove defense beyond reasonable doubt. West's F.S.A. S 810.02(1). | Does a defendant have the burden of proof regarding a consent defense in burglary? | 012908.docx | LEGALEASE-00144870-LEGALEASE-00144873 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8578 | Glantz v. Chicago, B. & Q.R. Co., 90 Neb. 606 | 113+6 | Evidence that a certain course is "generally" and "usually" pursued in a particular manner is sufficient to establish a custom. It is not essential to show that the "particular manner" is never deviated from. | Evidence that a certain course is "generally" and "usually" pursued in a particular manner is sufficient to establish a custom and it is not necessary to show that the particular manner is never deviated from. | May evidence that a certain course is generally and usually pursued in a particular manner be sufficient to establish a custom? | 014231.docx | LEGALEASE-00144924-LEGALEASE-00144925 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 8579 | Hysaw v. Dawkins, 483 S.W.3d 1 | 260+79.1(2) | Royalty interests may be conveyed or reserved "as a fixed fraction of total production" (fractional royalty interest) or "as a fraction of the total royalty interest" (fraction of royalty interest). Luckel, 819 S.W.2d at 464. A fractional royalty interest conveys a fixed share of production and "remains constant regardless of the amount of royalty contained in a subsequently negotiated oil and gas lease." | A "fractional royalty interest" in a mineral estate conveys a fixed share of production and remains constant regardless of the amount of royalty contained in a subsequently negotiated oil and gas lease; in comparison, a "fraction of royalty interest," as a percentage of production, varies in accordance with the size of the landowner's royalty in a mineral lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in the lease. | Can royalty interests be conveyed as a fractional royalty? | 021500.docx | LEGALEASE-00145037-LEGALEASE-00145038 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |
| 8580 | John Slaughter Co. v. King Lumber Co., 79 S.C. 338 | 307A+74 | The second exception charges error in the admission of testimony de bene esse of E. M. Dunning and E. M. Cook, because neither the certificate of the officer nor the deposition shows that the testimony was reduced to writing by the officer or by the witness in his presence, and because the same was not read over to the witness before it was signed by him. The notary public, W. J. Gibson, before whom the testimony was taken, certified: The foregoing witnesses were examined before me at my office. I further certify that the testimony of each witness was read over to him before the same was subscribed to." Since the testimony was taken before the officer and read over to the witnesses before they signed it, the provisions of the statute were substantially carried out. If the officer's certificate means that he took the testimony in typewriting himself, the case falls within the ruling above. If the certificate means that a stenographer in the strict sense took down the testimony in shorthand and transcribed into typewriting and the same was read over to the witness before signing, the case falls squarely within the letter of the proviso. If the certificate means that someone took the testimony before the officer upon a typewriter directly from the witness and the testimony was read over to the witness before signing, the case falls, if not within the letter of the statute, certainly within its purpose and meaning and is substantial compliance. Where a notary taking a deposition certified that the witnesses were examined before him at his office, and that the testimony of each witness was read over to him before the deposition was subscribed by the witness, the certificate showed a substantial compliance with 23 St. at Large, p. 1072. | Where a notary taking a deposition certified that the witnesses were examined before him at his office, and that the testimony of each witness was read over to him before the deposition was subscribed by the witness, the certificate showed a substantial compliance with 23 St. at Large, p. 1072. | "Does a statement in the commissioner's certificate that the witnesses ""testified as set down"" show a substantial compliance with the statutory requisition?" | 032667.docx | LEGALEASE-00144405-LEGALEASE-00144406 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 8581 | Emmett v. Briggs, 21 N.J.L. 53 | 307A+74 | Such deposition must be filed with the Clerk of the Supreme Court before the same, or a copy thereof can be read on the trial (except now by Rev. Stat. 962, " 11, when not taken more than five days before trial of the cause.) | A deposition must be filed with the clerk of the court before it, or a copy, can be read on the trial, except, under Rev.St. p. 962, S 11, it was not taken more than five days before the trial of the cause. | "Must a deposition be filed with the clerk of the court before it, or a copy, can be read on the trial?" | 033222.docx | LEGALEASE-00144613-LEGALEASE-00144614 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 8582 | PSI Res. v. MB Fin. Bank, Nat. Ass'n, 2016 IL App (1st) 152204 | 307A+531 | On appeal, plaintiff asks us to review whether the circuit court erred in granting defendant's motion to dismiss brought under section 2"619(a)(5) of the Code. Section 2"619(a)(5) provides that a defendant may file a motion for dismissal when an action has not been commenced within the time limited by law (735 ILCS 5/ 2"619(a)(5) (West 2012)). Section 2"619 is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. Turner v. 1212 S. Michigan Partnership, 355 Ill.App.3d 885, 891, 291 Ill.Dec. 476, 823 N.E.2d 1062 (2005) (quoting Davis v. Chicago Police Board, 268 Ill.App.3d 851, 854, 206 Ill.Dec. 269, 645 N.E.2d 274 (1994)). A motion to dismiss under section 2"619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect.Janda v. United States Cellular Corp., 2011 IL App (1st) 103552, 83, 356 Ill.Dec. 329, 961 N.E.2d 425 (citing DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006)). | A motion to dismiss based upon defects or defenses is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. S.H.A. 735 ILCS 5/2-619. | Is the purpose of a motion to dismiss based upon certain defects or defenses to dispose of easily proved issues of fact at the outset of the litigation? | 033228.docx | LEGALEASE-00144556-LEGALEASE-00144557 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8583 | Milot v. Dep't of Transp., 318 Mich. App. 272 | 307A+554 | This Court reviews de novo the trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). Rowland v. Washtenaw Co. Rd. Comm., 477 Mich. 197, 202, 731 N.W.2d 41 (2007). A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law. Odom v. Wayne Co., 482 Mich. 459, 466, 760 N.W.2d 217 (2008). If reasonable minds could not differ on the legal effects of the facts, it is a question of law whether governmental immunity bars a plaintiff's claim. Snead v. John Carlo, Inc., 294 Mich.App. 343, 354, 813 N.W.2d 294 (2011). | A defendant is entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law. MCR 2.116(C)(7). | Is a defendant entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law? | 033233.docx | LEGALEASE-00144478-LEGALEASE-00144479 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8584 | Cadet-Duval v. Gursim Holding, 147 A.D.3d 718 | 307A+560 | However, the Supreme Court erred in directing the dismissal of the complaint insofar as asserted against Gursim and the Bawas with prejudice. Dismissals for pleading deficiencies or for failure to timely serve process are not on the merits and are without prejudice (see Komolov v. Segal, 96 A.D.3d 513, 947 N.Y.S.2d 14; Avins v. Federation Empl. & Guidance Serv., Inc., 67 A.D.3d 505, 889 N.Y.S.2d 34; CPLR 306[b] ). | Dismissals for pleading deficiencies or for failure to timely serve process are not on the merits and are without prejudice. McKinney's CPLR 306(b). | Are dismissals for pleading deficiencies or for failure to timely serve process not on the merits and are without prejudice? | 033574.docx | LEGALEASE-00143721-LEGALEASE-00143722 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 8585 | In re Estate of Whittaker, 261 S.W.3d 615 | 13+13 | Determining whether a party has standing is a threshold issue. Executive Bd. of Missouri Baptist Convention v. Carnahan, 170 S.W.3d 437, 445 (Mo.App. W.D.2005). When a party lacks standing, a court has no jurisdiction to grant the relief requested and the case must be dismissed. Healthcare Services of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 612 (Mo. banc 2006); Sherwood Nat'l Educ. Ass'n v. Sherwood"Cass R"VIII Sch. Dist., 168 S.W.3d 456, 462 (Mo.App. W.D.2005). We review the issue of standing de novo. Columbia Sussex Corp. v. Missouri Gaming Com'n, 197 S.W.3d 137, 140"41 (Mo.App. W.D.2006). | When a party lacks standing, a court has no jurisdiction to grant the relief requested and the case must be dismissed. | "When a party lacks standing, does a court have jurisdiction to grant the relief requested and the case must be dismissed?" | Pretrial Procedure - Memo # 6246 - C - BP.docx | ROSS-003302599-ROSS-003302600 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 8586 | Coppola v. Coppola, 243 Conn. 657 | 307A+560 | As a preliminary matter, we note that the requirement of " 52"46a to return process in civil actions to the clerk of the Superior Court at least six days before the return date8 is mandatory and failure to comply with its requirements renders the proceeding voidable, rather than void, and subject to abatement. Rogozinski v. American Food Service Equipment Corp., 211 Conn. 431, 433, 559 A.2d 1110 (1989). "[O]nce an action has been brought by service of process on the defendant, a trial court may thereafter dismiss the action for failure to return the service of process within the mandated time period."Rana v. Ritacco, 236 Conn. 330, 339, 672 A.2d 946 (1996). | Once action has been brought by service of process on defendant, trial court may thereafter dismiss action for failure to return service of process within mandated time period. C.G.S.A. S 52-46a. | "Although an action can be commenced through the service of process for statute of limitations purposes, is the action subject to dismissal if the plaintiff fails to return that service in a timely manner?" | 033999.docx | LEGALEASE-00144699-LEGALEASE-00144700 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8587 | PRA III v. Gonzalez, 54 A.D.3d 917 | 307A+560 | Moreover, the plaintiff presented, with its motion papers, and without explanation, a second, competing affidavit of service describing the service of a summons and complaint upon the defendant. Comparison of the original affidavit of service, referable to the service of the summons with notice, with this second affidavit, raises an issue as to propriety of service that cannot be resolved either on a motion to dismiss the complaint or on a subsequent motion for summary judgment. Thus, the Supreme Court properly denied that branch of the defendant's motion which was to dismiss the complaint on the ground that the summons with notice was improperly served upon him, but erred in granting that branch of the plaintiff's motion which was for summary judgment dismissing the defendant's counterclaim, which is based on his allegation that the plaintiff procured false affidavits of service in order to obtain a judgment against him (see Schroeder v. City of New York, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255; Carrasco v. Klein, 381 F.Supp. 782; United States v. Barr, 295 F.Supp. 889, 891; cf. Williams v. Williams, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 246 N.E.2d 333). | Issue as to propriety of service could not be resolved either on motion to dismiss complaint or on subsequent motion for summary judgment. | Can an issue as to propriety of service be resolved either on a motion to dismiss the complaint or on a subsequent motion for summary judgment? | Pretrial Procedure - Memo # 6481 - C - SK.docx | ROSS-003328803-ROSS-003328804 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8588 | Morriss-Buick Co. v. Davis, 59 S.W.2d 937 | 307A+726 | It is an elementary rule of law that a motion for continuance, which is not the first application, rests within the sound discretion of the trial court; accordingly, the trial court exercised that discretion and overruled the application. This court would not be warranted in setting aside the order of the court thereon unless an abuse of the discretion was clearly shown, which we think was not done in this case. | Granting or refusing motion for continuance, which is not first application, rests within trial court's sound discretion. | "Will the granting or refusing of motion for continuance, other than first application, rest within trial court's sound discretion?" | 034432.docx | LEGALEASE-00143700-LEGALEASE-00143701 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 8589 | JVA Enterprises, I v. Prentice, 48 So. 3d 109 | 307A+563 | "Because "dismissal sounds the death knell of the lawsuit," courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious.' " Arzuman, 843 So.2d at 952 (citations omitted). While a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction "only in extreme circumstances." Id. | While a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction only in extreme circumstances. | "Although a trial court has discretion to dismiss an action for fraud on the court, should it exercise this severe sanction only in extreme circumstances?" | 034477.docx | LEGALEASE-00143939-LEGALEASE-00143940 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 8590 | First Republic Corp. of Am. v. Hayes, 431 So. 2d 624 | 307A+746 | 224 So.2d at 788. See also Norge Laundry Co. v. Prestridge, 335 So.2d 300 (Fla.lst DCA 1976), cert. denied, 344 So.2d 326 (Fla.1977). From these decisions, we conclude that the trial court is authorized to impose appropriate sanctions for violations of orders relating to the pretrial conference. | Trial court is authorized to impose appropriate sanctions for violations of orders relating to pretrial conference. West's F.S.A. RCP Rule 1.200(b). | Is a trial court authorized to impose appropriate sanctions for violations of orders relating to a pretrial conference? | Pretrial Procedure - Memo # 6850 - C - ES.docx | ROSS-003302871-ROSS-003302872 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 8591 | Daily Press v. Com., 285 Va. 447 | 307A+552 | Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist:Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law.... Only real controversies and existing rights are entitled to invoke the exercise of their powers. | Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. | Will a case be dismissed as moot if there is no actual controversy? | 034606.docx | LEGALEASE-00144063-LEGALEASE-00144064 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8592 | Metro Transp. Co. v. Pennsylvania Pub. Util. Comm'n, 128 Pa. Cmwlth. 223 | 307A+552 | In Pennsylvania, to avoid dismissal for mootness, an actual case or controversy must exist at all stages of the administrative or judicial process. Pennsylvania Liquor Control Board v. Dentici, 117 Pa. Commonwealth Ct. 70, 542 A.2d 229 (1988). Furthermore, when a litigant lacks a necessary stake in the outcome, or when the court or agency is not able to grant effective relief, a case will be dismissed as moot. Al Hamilton Contracting Co. v. Department of Environmental Resources, 90 Pa. Commonwealth Ct. 228, 494 A.2d 516 (1985). Although a case is apparently moot, dismissal is not an absolute. If the issue raised is of a recurring nature, is of important public interest, or is capable of repeatedly avoiding review, the case will not be dismissed.Wilkes Barre Area Vocational School v. Greater Nanticoke Area School District, 115 Pa. Commonwealth Ct. 73, 539 A.2d 902 (1988). | Although case is apparently moot, dismissal is not an absolute, if the issue raised is of recurring nature, is of important public interest, or is capable of repeatedly avoiding review, case will not be dismissed. | Will a case be dismissed as moot if question involved possesses sufficient public importance to warrant decision? | 034737.docx | LEGALEASE-00145011-LEGALEASE-00145012 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 8593 | Lifeguard Corp. v. U.S. Home Corp., 429 So. 2d 94 | 307A+563 | While a trial court clearly has the power to dismiss a case as a sanction for the plaintiff's failure to comply with a court order, e.g., Surrency v. Winn & Lovett Grocery Co., 160 Fla. 294, 34 So.2d 564 (1948); Ramos v. Sanchez, 375 So.2d 51 (Fla. 2d DCA 1979), dismissal is a drastic remedy which should be used only in extreme situations. Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 888 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968), quoted in Travelers Insurance Co. v. Rodriguez, 357 So.2d 464 (Fla. 2d DCA 1978). | While a trial court clearly has power to dismiss a case as a sanction for plaintiff's failure to comply with a court order, dismissal is a drastic remedy which should be used only in extreme situations. | Is dismissal a drastic remedy which should be used only in extreme situations? | Pretrial Procedure - Memo # 7112 - C - RF_57786.docx | ROSS-003295676-ROSS-003295677 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 8594 | Lowery v. Campbell, 185 N.C. App. 659 | 413+2 | This Court previously has stated that "[a]lthough [the Declaratory Judgment Act] is not applicable to claims under the Workmen's Compensation Act, it is applicable to construction of insurance contracts and in determining the extent of coverage." Insurance Co. v. Curry, 28 N.C.App. 286, 289, 221 S.E.2d 75, 78 (1976) (citing Cox v. Transportation Co., 259 N.C. 38, 129 S.E.2d 589 (1963); Insurance Co. v. Simmons, Inc., 258 N.C. 69, 128 S.E.2d 19 (1962)). "The [Workers' Compensation Act] does not take away common law rights that are unrelated to the employer-employee relationship." N.C. Chiropractic Assoc., 89 N.C.App. at 6, 365 S.E.2d at 315 (citation omitted). By initiating the declaratory judgment action, plaintiff merely sought a determination as to his rights as a third-party beneficiary under the alleged contract between Locklear and Campbell. Because this contract is distinct from the employer-employee relationship, the superior court retained subject matter jurisdiction over plaintiff's claim. | The Workers' Compensation Act does not take away common law rights that are unrelated to the employer-employee relationship. West's N.C.G.S.A. § 97-1 et seq. | Does the Workers Compensation Act take away any common law rights that are unrelated to the employer-employee relationship? | Workers Compensation - Memo #346 ANC.docx | ROSS-003288976-ROSS-003288977 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8595 | Thomas v. Giant Food, 174 Md. App. 103 | 413+2 | Workers' compensation benefits are a creature of statute, however, and when the controlling enactments are clear, they must guide the outcome. As the evolution and legislative history of LE section 9-602 discloses, when the General Assembly has intended to make dual or multiple employments a factor in determining benefits, it has done so by fashioning exceptions to the basic formula for calculating a worker's "average weekly wage." None of the exceptions apply here, however. | Workers' compensation benefits are a creature of statute, and when the controlling enactments are clear, they must guide the outcome. West's Ann.Md.Code, Labor and Employment, § 9-101 et seq. | "Are workers compensation benefits a creature of statute, and when the controlling enactments are clear, must they guide the outcome?" | 048076.docx | LEGALEASE-00144225-LEGALEASE-00144226 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 8596 | One Beacon Ins. Co. v. Hughes, 269 Ga. App. 390 | 413+2 | In construing the statutes at issue, we note that the Workers' Compensation Act constitutes a complete code of laws on the subject, and the entitlement to workers' compensation benefits is strictly a matter of statutory construction because there is no common law right to such benefits. Further, a primary rule of statutory construction is that the courts must try to ascertain the purpose and intent of the legislature and then try to construe the law to implement that intent. | The Workers' Compensation Act constitutes a complete code of laws on the subject, and the entitlement to workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits. West's Ga.Code Ann. § 34-9-1 et seq. | " In workers compensation, what is strictly a matter of statutory construction?" | Workers Compensation - Memo #428 ANC.docx | LEGALEASE-00034818-LEGALEASE-00034819 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 8597 | Dixson v. United States, 465 U.S. 482 | 63+1(2) | Congress's long-standing commitment to a broadly-drafted federal bribery statute, its expressed desire to continue that tradition with the 1962 revisions, its affirmative adoption of the language at issue in this case, and the House Report's endorsement of the Second Circuit's reasoning in Levine, combine to persuade us that Congress never intended section 201(a)'s open-ended definition of "public official" to be given the cramped reading proposed by petitioners. We agree with the Government that section 201(a) has been accurately characterized as a "comprehensive statute applicable to all persons performing activities for or on behalf of the United States," whatever the form of delegation of authority.To determine whether any particular individual falls within this category, the proper inquiry is not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official federal responsibilities. Persons who hold such positions are public officials within the meaning of section 201 and liable for prosecution under the federal bribery statute. | Legislative history of federal bribery statute, including Congress' longstanding commitment to a broadly drafted statute, its desire to continue that tradition when it adopted present language of statute in 1962 revision of federal conflicts of interest and bribery statutes, and its awareness of federal judiciary's interpretation of phrase "acting for or on behalf of the United States" in earlier federal bribery statutes to have a broad jurisdictional reach, establishes that Congress never intended bribery statute's open-ended definition of "public official" to be restricted to persons in a formal employment or agency relationship with Government; rather, proper inquiry is whether person occupies position of public trust with official federal responsibilities. 18 U.S.C.A. §§ 201, 201(a). | What is a public official for the federal government? | 011140.docx | LEGALEASE-00146040-LEGALEASE-00146041 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 8598 | United States v. Orenuga, 430 F.3d 1158 | 110+1139 | Whether the District Court properly instructed the jury on the standard for bribery presents a question of law that we review de novo. See United States v. DeFries, 129 F.3d 1293, 1303 (D.C.Cir.1997) (per curiam). Our job is to " "determine whether, taken as a whole, [the instructions] accurately state the governing law." " Id. at 1304 (quoting United States v. Washington, 106 F.3d 983, 1002 (D.C.Cir.1997) (per curiam)) (alteration in DeFries ). We find here that they do. | Whether a district court properly instructed the jury on the standard for bribery presents a question of law that is reviewed de novo. 18 U.S.C.A. § 201(b)(2)(A). | What should be the review standard on whether a district court properly instructed the jury on the standard for bribery? | 012293.docx | LEGALEASE-00145391-LEGALEASE-00145392 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8599 | Consolidation Coal Co. v. White, 2005 PA Super 155, 875 A.2d 318 | 260+47 | Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. Hetrick v. Apollo Gas Company, 415 Pa.Super. 189, 608 A.2d 1074, 1077 (1992). Because these estates are severable, different owners may hold title to separate and distinct estates in the same land. Id. "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." Smith v. Glen Alden Coal Co., 347 Pa. 290, 304, 32 A.2d 227, 235 (1943) (citing Graff Furnace Co. v. Scranton Coal Co., 244 Pa. 592, 91 A. 508 (1914)). In Pennsylvania, this servitude of subjacent support is, as noted above, a severable estate in land and is sometimes referred to in this Commonwealth as the "third" estate. Id. See Jones v. Wagner, 66 Pa. 429, 434 (1870) (adopting the English Common Law rule concerning subjacent support and recognizing this right as a "third estate" in land in Pennsylvania). | Because surface, mineral and right to subjacent support estates are severable, different owners may hold title to separate and distinct estates in the same land. | "Are there three discrete estates in land, the surface estate, the mineral estate, and the right to subjacent support?" | 021449.docx | LEGALEASE-00146065-LEGALEASE-00146066 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8600 | Elick v. Champlin Petroleum Co., 697 S.W.2d 1 | 260+55(1) | In considering the reservation in the light of these principles, it must be noted that the owner of a mineral estate possesses a bundle of interests which can be separated, conveyed or reserved upon any terms as the mineral owner deems proper.Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544 (1937); Martin v. Snuggs, 302 S.W.2d 676, 678 (Tex.Civ.App."Fort Worth 1957, writ ref'd n.r.e.). These mineral rights consist of the rights to participate in bonuses, rentals and royalties; the exclusive right to enter the premises for the purpose of drilling; and the right to execute oil, gas and mineral leases. See 1 H. Williams & C. Meyers, Oil and Gas Law " 302 at 447 (1959). The mineral rights conveyed and those retained are disclosed by an analysis of the provisions of the reservation. | Owner of mineral estate possesses bundle of interests which can be separated, conveyed, or reserved upon any terms mineral owner deems proper. | "Does the owner of a mineral estate possess a bundle of interests which can be separated, conveyed or reserved?" | 021463.docx | LEGALEASE-00146140-LEGALEASE-00146141 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8601 | State ex rel. Hocker v. Nolte, 330 Mo. 299 | 296+2 | The provision in section 7547, R. S. 1929, in so far as it relates to the "relief and compensation of members of the police force injured in person * * * in the discharge of their duties, and the families of the officers or men killed while in such discharge of duty," is, in the very nature of it, a provision for the payment of a pension to police officers injured in the discharge of their duties, and the families of police officers killed in the discharge of their duties. "In the eye of the law, a pension is: 'A stated allowance out of the public treasury granted by government to an individual, or to his representatives, for his valuable services to the country, or in compensation for loss or damage sustained by him in the public service'? Bl. L. Dict. (2d Ed.) tit. 'pension." State ex rel. v. Kimmel, 256 Mo. loc. cit. 631, 165 S. W. 1067, loc. cit. 1072. | "Pension" is stated allowance granted by government to individual or his representative for valuable service or for loss sustained in public service. V.A.M.S. S 84.170. | Is pension an allowance granted out of public treasury to an individual or his representative for valuable service or for loss sustained in public service? | Pension - Memo 43 - MS.docx | ROSS-003302709-ROSS-003302710 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8602 | Thompson v. Dart, 746 S.W.2d 821 | 302+228.23 | The trial court has broad discretion in ruling on special exceptions to the pleadings and the court's ruling on the exceptions will not be reversed on appeal absent a showing of an abuse of discretion resulting in injury. Rodriguez v. Yenawine, 556 S.W.2d 410, 413 (Tex.Civ.App."Austin 1977, no writ); see Yeatman v. Nelms, 345 S.W.2d 351, 352 (Tex.Civ.App."Eastland 1961, no writ). When the trial court has sustained special exceptions to the pleadings, the pleader has the right to amend to meet the exceptions or refuse to amend and test the validity of the ruling on appeal. Rodriguez v. Yenawine, 556 S.W.2d at 413. | When trial court has sustained special exceptions to pleadings, pleader has right to amend to meet exceptions or refuse to amend and test validity of ruling on appeal. | "When special exceptions to the pleadings are sustained, can the pleader amend to meet the exceptions?" | 023549.docx | LEGALEASE-00145669-LEGALEASE-00145670 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8603 | Walbridge v. Kibbee, 20 Vt. 543 | 307A+74 | The objection, that the deposition, in the caption and certificate, describes the plaintiff as Henry F. Walbridge, has been too often overruled, to be now brought in doubt. An initial letter is not to be regarded as any part of a man name, and especially, when one name is given in full. Isaacs, Admr, v. Wiley et al., 12 Vt. 674. | An initial letter is not to be regarded as any part of a man's name, in the caption of a deposition, if one name be given in full. | "Is an initial letter not to be regarded as any part of a man name, in the caption of a deposition, if one name be given in full?" | Pretrial Procedure - Memo # 5831 - C - NE.docx | ROSS-003302948-ROSS-003302949 | Order, SA | 0.61 | 1 | 0 | 0 | 1 | |
| 8604 | Alvarez v. Alvarez, 638 So. 2d 153 | 307A+746 | The facts of this case are very similar to the facts considered bythis court in Insua v. World Wide Air, Inc., 582 So.2d 102 (Fla. 2d DCA 1991). Therethis court recognized that Florida Rule of Civil Procedure 1.200(c) authorizes atrial court to impose sanctions upon a party for failure to attend a pretrial conference.Such sanctions include the striking of pleadings.]] In Insua, this court repeated its previousstatement that when a party fails to comply with a pretrial order, the sanction imposed must becommensurate with the offense. The rule followed by this court is that the imposition of the mostsevere sanctions contemplated by the rules should be reserved for those occasions where theviolation is flagrant, persistent, willful or otherwise aggravated. We have pointed out that thereare many alternatives available to the trial court in securing proper respect for and compliancewith its orders, short of imposing the most severe sanctions. | Sanctions which court may impose for failure to attend pretrial conference include striking of the pleadings. West's F.S.A. RCP Rule 1.200(c). | Can sanctions which a court can impose for failure to attend pretrial conference include striking of the pleadings? | Pretrial Procedure - Memo # 6565 - C - DHA.docx | ROSS-003316233-ROSS-003316234 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8605 | Chamberlain v. Farm Bureau Mut. Ins. Co., 36 Kan. App. 2d 163 | 307A+556.1 | Our courts do not make decisions on moot questions or abstract propositions. In re Appeal of Colorado Interstate Gas Co., 270 Kan. 303, 305, 14 P.3d 1099 (2000). To have standing to assert her claims, Chamberlain must assert that she has a personal stake in the outcome of the case so as to justify court action to resolve the matter. See Varney Business Services, Inc. v. Pottroff, 275 Kan. 20, 30, 59 P.3d 1003 (2002). Further, standing is an issue that can be raised during the course of litigation whenever a claim becomes moot. See Rodarte v. Kansas Dept. of Transportation, 30 Kan.App.2d 172, 183, 39 P.3d 675, rev. denied 274 Kan. 1113 (2002). If Chamberlain no longer has an individual claim, she has no standing to prosecute a class action case. See Winters v. Kansas Hospital Service Ass'n, Inc., 1 Kan.App.2d 64, 67, 562 P.2d 98 (1977). She cannot represent a class in which she is not a member. If Chamberlain's claims became moot before the ruling on her class certification motion, both her individual and class action claims must be dismissed. See Steele v. Security Benefit Life Ins. Co., 226 Kan. 631, 636"37, 602 P.2d 1305 (1979) | If plaintiff's claims became moot before the ruling on class certification motion, both individual and class action claims must be dismissed. | Will an individual and a class action claim be dismissed if plaintiff's claims became moot before the ruling on class certification motion? | Pretrial Procedure - Memo # 6677 - C - NS.docx | ROSS-003330281-ROSS-003330282 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8606 | Ader v. Temple Ner Tamid, 339 So. 2d 268 | 307A+552 | Petitioner also contends that the trial court erred in striking as sham certain denials found in his answer. In order for a pleading to be stricken as "sham" pursuant to Fla.R.Civ.P. 1.150(a) we have stated that the pleading must appeal clearly false, as a mere pretense set up in bad faith, and without color of fact. Sapienza v. Karland, Inc., 154 So.2d 204 (Fla.3d DCA 1963). In light of this rule and based upon the pleadings in this case, we do not feel that the trial court was justified in striking the denials as sham. | In order for a pleading to be stricken as "sham," pleading must appear clearly false, as a mere pretense set up in bad faith and without color of fact. 30 West's F.S.A. Rules of Civil Procedure, rule 1.150(a). | "In order for a pleading to be stricken as sham, should the pleading be clearly false?" | Pretrial Procedure - Memo # 6963 - C - DHA.docx | ROSS-003289919-ROSS-003289920 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 8607 | In re Kile, 326 S.W.3d 538 | 30+781(1) | "A threshold question in any appellate review of a controversy is the mootness of the controversy." Armstrong v. Elmore, 990 S.W.2d 62, 64 (Mo.App.1999). "Because mootness implicates the justiciability of a case, an appellate court may dismiss a case for mootness sua sponte." Id. | A threshold question in any appellate review of a controversy is the mootness of the controversy; because mootness implicates the justiciability of a case, an appellate court may dismiss a case for mootness sua sponte. | Does mootness implicate justiciability and can the courts dismiss a case for mootness sua sponte? | 034762.docx | LEGALEASE-00145206-LEGALEASE-00145207 | Condensed, SA | 0.22 | 0 | 1 | 0 | 1 | |
| 8608 | Andrews v. Palmas De Majorca Condo., 898 So. 2d 1066 | 307A+563 | The sanction of dismissal with prejudice due to fraud upon the court has long been an available remedy for a party's misconduct in the litigation process. It has been held that "a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." See Metro. Dade County v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999). Dismissal is an available remedy for knowingly submitting forged or altered documents with the intent to deceive the court. Bob Montgomery Real Estate v. Djokic, 858 So.2d 371, 372 (Fla. 4th DCA 2003). | Sanction of dismissal with prejudice due to fraud upon court has long been available remedy for party's misconduct in litigation process; party who has been guilty of fraud or misconduct in prosecution or defense of civil proceeding should not be permitted to continue to employ very institution it has subverted to achieve her ends. | Is dismissal an available remedy for knowingly submitting forged or altered documents with the intent to deceive? | 034815.docx | LEGALEASE-00145897-LEGALEASE-00145898 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 8609 | Capaci v. Folmar Kenner, 43 So. 3d 1229 | 307A+581 | The determination of whether a party's conduct was willful or contumacious is within the trial court's discretion. "Because the trial judge is in the best position to assess the conduct of the plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court." Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d at 341 (citing Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 947 (9th Cir.1976), and Von Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F.2d 1047, 1051 (9th Cir.1971)). However, the dismissal of a party's claim with prejudice is a drastic sanction that should be used only in extreme situations. Burdeshaw v. White, 585 So.2d at 847. Further, " "[d]ismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal." " Hosey v. Lowery, 911 So.2d at 17 (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989)). | Dismissal of a party's claim with prejudice pursuant to rule permitting involuntary dismissal for failure of plaintiff to prosecute or to comply with rules or any order of court is a drastic sanction that should be used only in extreme situations. Rules Civ.Proc., Rule 41(b). | Is dismissal of a party's claim with prejudice pursuant to rule permitting involuntary dismissal a drastic sanction that should be used only in extreme situations? | 10810.docx | LEGALEASE-00094226-LEGALEASE-00094227 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 8610 | Pilz v. Thibodeau, 293 Ga. App. 532 | 307A+590.1 | 1. The defendants contend the trial court erred in denying their motion to dismiss the plaintiffs' complaint pursuant to the five-year dismissal rule, which is codified in OCGA "" 9-2-60(b) and 9-11-41(e). OCGA " 9-2-60(b) states as follows: "Any action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff." This provision is "mandatory and dismissal occurs by operation of law. In order to break the running of the five-year dormancy period[,] the order has to be in writing, signed and entered." (Citations omitted.) Loftin v. Prudential Property, etc. Ins. Co., 193 Ga.App. 514, 388 S.E.2d 525 (1989). | In order to break the running of the five-year dormancy period under statute automatically dismissing an action in which no written order has been taken for five years, the order has to be in writing, signed, and entered. West's Ga.Code Ann. S 9-2-60(b). | "In order to break the running of the five-year dormancy period under a statute automatically dismissing an action, does the order have to be in writing, signed, and entered?" | Pretrial Procedure - Memo # 7204 - C - ES.docx | ROSS-003288602-ROSS-003288603 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 8611 | Metro Transp. Co. v. Pennsylvania Pub. Util. Comm'n, 128 Pa. Cmwlth. 223 | 307A+552 | In Pennsylvania, to avoid dismissal for mootness, an actual case or controversy must exist at all stages of the administrative or judicial process. Pennsylvania Liquor Control Board v. Dentici, 117 Pa. Commonwealth Ct. 70, 542 A.2d 229 (1988). Furthermore, when a litigant lacks a necessary stake in the outcome, or when the court or agency is not able to grant effective relief, a case will be dismissed as moot. Al Hamilton Contracting Co. v. Department of Environmental Resources, 90 Pa. Commonwealth Ct. 228, 494 A.2d 516 (1985). Although a case is apparently moot, dismissal is not an absolute. If the issue raised is of a recurring nature, is of important public interest, or is capable of repeatedly avoiding review, the case will not be dismissed. Wilkes Barre Area Vocational School v. Greater Nanticoke Area School District, 115 Pa. Commonwealth Ct. 73, 539 A.2d 902 (1988). | When litigant lacks necessary stake in outcome, or when court or agency is not able to grant effective relief, a case will be dismissed as moot. | Can a case be dismissed as moot when litigant lacks necessary stake in outcome? | 035198.docx | LEGALEASE-00145776-LEGALEASE-00145777 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8612 | Edwards, Jr. v. Chrysler Motor Co., 984 So. 2d 85 | 307A+590.1 | Next, we address whether the trial court correctly dismissed the individual claim on the basis of abandonment. Louisiana Code of Civil Procedure article 561 provides that an action is abandoned when the parties fail to take any step in its defense in the trial court for a period of three years. The jurisprudence makes it clear that article La. C.C.P. 561 requires three things: (1) that a party take some "step" in the prosecution or defense of the action; (2) that it be done in the trial court and, with the exception of on the record of the suit; and (3) that it be taken within three years of the last step taken by either party. James v. Formosa Plastics Corporation of Louisiana, 2001"2056, p. 4 (La.4/3/02), 813 So.2d 335, 338. A party takes a "step" when he takes formal action before the court intended to hasten the matter to judgment. Id. | Party takes a "step" in the prosecution or defense of an action, as necessary to avoid abandonment of action, when he takes formal action before the court intended to hasten the matter to judgment. LSA-C.C.P. art. 561. | "Does a party take a ""step"" in the prosecution or defense of an action when he takes formal action before the court intended to hasten the matter to judgment?" | 035251.docx | LEGALEASE-00145967-LEGALEASE-00145968 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8613 | State ex rel. AG Processing v. Pub. Serv. Comm'n, 276 S.W.3d 303 | 13+6 | A case is moot if the decision would have "no practical effect upon an existent controversy." State ex rel. County of Jackson v. Mo. Pub. Serv. Comm'n, 985 S.W.2d 400, 403 (Mo.App.1999). When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed. State ex rel. Chastain v. City of Kansas City, 968 S.W.2d 232, 237 (Mo.App.1998). Aquila says the Consumers' filing of the new petition in the circuit court following the PSC's denial of the rehearing applications is such an event. They claim that a ruling by this court is unnecessary, because "the circuit court is already doing ... that which it would be compelled to do if appellants are successful in this appeal," i.e., determining whether the PSC's orders are "lawful and reasonable." See section 386.510. | When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is "moot" and generally should be dismissed. | Will a case be moot when an event occurs that makes a court's decision unnecessary? | 035320.docx | LEGALEASE-00146287-LEGALEASE-00146288 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8614 | Romine v. Romine, 100 N.M. 403 | 307A+552 | Respondent argues that NMSA 1978, Section 37"2"4, regarding the abatement of actions upon the death of a party, applies to divorce proceedings. The statute provides that no action pending in any court shall abate by the death of a party, except those actions specified. The specified actions do not include divorce. However, this is not a question of abatement but rather one of jurisdiction. Petitioner sought a dissolution of her marriage with respondent. Respondent's death dissolved the marital relationship, rendering the questions presented in petitioner's suit moot. An action is properly dismissed if the issues therein become moot, leaving the court without jurisdiction. Mowrer v. Rusk, 95 N.M. 48, 618 P.2d 886 (1980). As the Supreme Court of the United States has stated, "no power can dissolve a marriage which has already been dissolved by act of God." Bell v. Bell, 181 U.S. 175, 178, 21 S.Ct. 551, 553, 45 L.Ed. 804 (1901). The trial court properly dismissed respondent's motion for entry of a divorce decree nunc pro tunc. | An action is properly dismissed if the issues therein become moot, leaving the court without jurisdiction. | "Is an action properly dismissed if the issues therein become moot, leaving the court without jurisdiction?" | 035354.docx | LEGALEASE-00145926-LEGALEASE-00145927 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8615 | Travelers Indem. Co. v. P.R. Mallory & Co., 772 N.E.2d 479 | 307A+552 | In Indiana, a case is deemed moot when no effective relief can be rendered to the parties before the court. A.D. v. State, 736 N.E.2d 1274 (Ind.Ct.App.2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. Id. Unlike our federal counterparts under Article III of the United States Constitution, Indiana appellate courts' jurisdiction is not limited under the Indiana Constitution to actual cases and controversies. Id. Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. Id. Cases that fit within this exception typically are those containing issues that are likely to recur. Id. | When dispositive issue in case has been resolved in such a way as to render it unnecessary to decide question involved, case will be dismissed. | Will a case be dismissed when dispositive issue in case has been resolved in such a way as to render it unnecessary to decide question involved? | 035400.docx | LEGALEASE-00145603-LEGALEASE-00145604 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8616 | Briscoe v. Goodmark Corp., 130 S.W.3d 160 | 307A+723.1 | A continuance shall not be granted except for sufficient cause, supported by affidavit, or by consent of the parties, or by operation of law. Tex.R. Civ. P. 251. Mere absence of a party does not automatically entitle him to a continuance. Vickery v. Vickery, 999 S.W.2d 342, 363 (Tex.1999); Humphrey v. Ahlschlager, 778 S.W.2d 480, 483 (Tex.App.-Dallas 1989, no writ); Brown v. Brown, 599 S.W.2d 135, 137 (Tex.Civ.App.-Corpus Christi 1980, no writ). A motion for continuance based on an absent party must contain some prognosis as to when or if the witness will ever be able to testify.Humphrey, 778 S.W.2d at 483. | A motion for continuance of the trial, based on a witness being absent for medical reasons, must contain some medical prognosis as to when or if the witness will ever be able to testify. | "Should a motion for continuance of the trial, based on an absent party contain some prognosis as to when or if the witness will ever be able to testify?" | 035425.docx | LEGALEASE-00145128-LEGALEASE-00145129 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 8617 | Simmons v. Shimek, 139 Ill. App. 3d 927 | 307A+563 | Supreme Court Rule 219(c) allows for the dismissal of an action as a sanction for failure to comply with discovery. (87 Ill.2d R. 219(c).) Generally, a cause of action will be dismissed as a sanction only where the dismissed party has shown a deliberate and wilful disregard of the court's authority. (White v. Henrotin Hospital Corp. (1st Dist., 1979), 78 Ill.App.3d 1025, 34 Ill.Dec. 349, 398 N.E.2d 24.) The imposition of sanctions for noncompliance with discovery rests within the trial court's discretion. Gallo v. Henke (2nd Dist., 1982), 107 Ill.App.3d 21, 62 Ill.Dec. 766, 436 N.E.2d 1068. | Generally, a cause of action will be dismissed as a sanction only where dismissed party has shown a deliberate and willful disregard of court's authority. S.H.A. ch. 110A, P 219(c). | Will a cause of action be dismissed as a sanction only where dismissed party has shown a deliberate and willful disregard of court's authority? | 035434.docx | LEGALEASE-00145186-LEGALEASE-00145187 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8618 | Andrews v. Palmas De Majorca Condo., 898 So. 2d 1066 | 307A+563 | Dismissal is an available remedy for knowingly submitting forged or altered documents with the intent to deceive the court. Bob Montgomery Real Estate v. Djokic, 858 So.2d 371, 372 (Fla. 4th DCA 2003). | Dismissal is available remedy for knowingly submitting forged or altered documents with intent to deceive court. | Is dismissal an available remedy for knowingly submitting forged or altered documents with intent to deceive court? | Pretrial Procedure - Memo # 7369 - C - SB.docx | ROSS-003290048 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 8619 | Gilbert v. Eckerd Corp. of Florida, 34 So. 3d 773 | 307A+563 | There is "no rule, statute, or case" that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed. Bologna v. Schlanger, 995 So.2d 526, 532 (Fla. 5th DCA 2008) (Thompson, J., dissenting); see McKnight v. Evancheck, 907 So.2d 699, 701 (Fla. 4th DCA 2005) (suggesting that an evidentiary hearing is not necessary on a motion to dismiss for fraud where neither party requests such a hearing); Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997). | There is no rule, statute, or case that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed; the better practice is for the trial court to conduct an evidentiary hearing on the motion and make specific findings. | "Is there no rule, statute, or case that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed?" | 035438.docx | LEGALEASE-00145202-LEGALEASE-00145203 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 8620 | Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co., 119 Wis. 2d 34 | 307A+563 | While it is true that dismissal for noncompliance with pretrial orders is appropriate only in cases of egregious conduct by a claimant, Trispel v. Haefer, 89 Wis.2d 725, 732, 279 N.W.2d 242, 245 (1979), the party attempting to show that such a dismissal is an abuse of discretion must demonstrate "a clear and justifiable excuse" for the delay in prosecuting the case or for the failure to comply with procedure statutes under sec. 805.03, Stats. Id. at 733, 279 N.W.2d at 245. Englewood's "excuses" for its conduct have failed to persuade both the trial court and this court. | Party attempting to show that dismissal for failure to comply with pretrial orders is abuse of discretion must demonstrate a clear and justifiable excuse for delay or for failure to comply with procedure statutes. W.S.A. 804.12(2, 4), 805.03. | Is dismissal for noncompliance with pretrial orders appropriate only in cases of egregious conduct? | Pretrial Procedure - Memo # 7385 - C - ES.docx | ROSS-003304945-ROSS-003304946 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8621 | Gambino v. Standard Fire Ins. Co., 12-474 (La. App. 5 Cir. 2/21/13) | 307A+590.1 | "Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment." Louisiana Dept. of Transp. & Dev. v. Oilfield Heavy Haulers, L.L.C., 2011"0912 at p. 5, 79 So.3d at 982. | Because dismissal is the harshest of remedies, any reasonable doubt about abandonment of the suit should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. LSA-C.C.P. art. 561. | "Because dismissal is the harshest of remedies, should any reasonable doubt about abandonment of the suit should be resolved in favor of allowing the prosecution?" | Pretrial Procedure - Memo # 7398 - C - RF.docx | ROSS-003288686-ROSS-003288687 | SA, Sub | 0.25 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8622 | Muller v. Tanner, 2 Cal. App. 3d 438 | 13+68 | The plaintiff has not raised any contention which would defeat this exercise of the trial court's inherent power. On appeal he echoes the arguments against the validity of the vexatious litigant provisions which have been considered and disposed of in the opinion filed this day in the companion action (1 Civ. 25984, Cal.App., 82 Cal.Rptr. 738). The fact that plaintiff secured an attorney to lend his name to the subsequently filed complaint avails him naught. The provisions of the vexatious litigant statute, which the court acted to protect in this action, do not preclude a stay or dismissal because an attorney is used in the action in which the motion is made. (See, Code Civ.Proc., s 391, subds. (a) and (b) and s 391.1; and Comment, The Vexatious Litigant (1966) 54 Cal.L.Rev. 1769, 1782, fn. 58.) Therefore, the use of an attorney in this case should not deprive the court of the power to protect itself from abuse of the judicial process. | Vexatious litigant statute does not preclude stay or dismissal because attorney represents party in action in which motion is made. West's Ann.Code Civ.Proc. SS 391(a, b), 391.1. | Does vexatious litigant statute preclude stay or dismissal because attorney represents party in action in which motion is made? | 035530.docx | LEGALEASE-00146079-LEGALEASE-00146080 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8623 | Argence v. Box Opportunities, 95 So. 3d 539 | 13+70 | This article makes it clear that a party must take the action to move a case to final disposition, not the trial judge. We can find no jurisprudence, and Argence cites none, that states that the rendition of a judgment by a trial judge interrupts the three-year abandonment period. Further, a motion to enroll as counsel of record is not a step in the prosecution of a case. London Livery, Ltd. v. Brinks, 08"0230, p. 3 (La.App. 4 Cir. 12/10/08), 3 So.3d 13, 15, citing Brumfield v. McElwee, 07"0548, p. 2 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 237. | Article of code of civil procedure governing dismissal of a case on ground of abandonment makes it clear that a party must take the action to move a case to final disposition, not the trial judge. LSA-C.C.P. art. 561. | Should a party or the trial judge take the action to move a case to final disposition? | Pretrial Procedure - Memo # 7465 - C - KS.docx | ROSS-003290072-ROSS-003290073 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 8624 | Prosser v. Grant, 224 Ga. App. 6 | 307A+590.1 | Further, "an order as contemplated by [the five-year rule of OCGA " 9"2"60(b) or " 9"11"41(e) ] is an order entered by a court in response to a motion initiated by a party. Housekeeping orders entered on the court's own motion, such as an order entered by the court removing a case from an active trial calendar because of its age or a pretrial calendar which contains a specific order directed at the attorneys and parties in all cases listed on such calendar, are not initiated by a party and would not toll the statute." Dept. of Transp., supra at 221, 443 S.E.2d 610. | "Order" as contemplated by five-year mandatory dismissal rule is an order entered by a court in response to a motion initiated by a party; housekeeping orders entered on the court's own motion, such as an order entered by the court removing a case from an active trial calendar because of its age or a pretrial calendar which contains a specific order directed at the attorneys and parties in all cases listed on such calendar, are not initiated by a party and do not toll the statute. O.C.G.A. SS 9-2-60(b), 9-11-41(e). | "Is ""order"" as contemplated by a five-year mandatory dismissal rule an order entered by a court in response to a motion initiated by a party?" | 035574.docx | LEGALEASE-00146643-LEGALEASE-00146644 | Condensed, SA | 0.08 | 0 | 1 | 0 | 1 | |
| 8625 | Clark v. State Farm Mut. Auto. Ins. Co., 769 So. 2d 176 | 307A+590.1 | Any step taken by a party after the period for abandonment has accrued is ineffective to prevent a judgment of dismissal on grounds of abandonment. Middleton v. Middleton, 526 So.2d 859 (La.App. 2d Cir.1988). La. C.C.P. art. 561 requires that any action in prosecution or defense of a suit, except for discovery, must be filed in the record. In the case sub judice, Mr. Clark claims that State Farm's unconditional tender was an action in defense of the suit. It was not filed in the record, however, until June 15, 1999, after the three-year period for abandonment had run and should not have been considered. | Any step taken by a party after the period for abandonment has accrued is ineffective to prevent a judgment of dismissal on grounds of abandonment. LSA-C.C.P. art. 561. | Is any step taken by a party after the period for abandonment has accrued ineffective to prevent a judgment of dismissal on grounds of abandonment? | Pretrial Procedure - Memo # 7468 - C - DHA.docx | ROSS-003331880-ROSS-003331881 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8626 | Garland v. City of Delray Beach, 685 So. 2d 1392 | 307A+590.1 | In Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992), the supreme court expounded on Eastern Elevator stating that record activity "must advance a case toward resolution." The filing of a status report is not sufficient record activity to preclude dismissal for failure to prosecute. Id. A motion for mediation conference is likewise not sufficient record activity unless there is some follow-up activity intended to move the case along. Heinz v. Watson, 615 So.2d 750, 753 (Fla. 5th DCA 1993). | Motion for mediation conference is not sufficient record activity to preclude dismissal for failure to prosecute unless there is some follow-up activity intended to move case along. West's F.S.A. RCP Rule 1.420(e). | Is a motion for mediation conference not sufficient record activity to preclude a dismissal for failure to prosecute? | 036292.docx | LEGALEASE-00146655-LEGALEASE-00146656 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 8627 | Stewart Dry Goods Co. v. Lewis, 7 F. Supp. 438 | 371+2005 | It should always be remembered that the power of the state to tax for public purposes within its constitutional sphere is as unlimited as is the power of the national government within its sphere, except for the equality clause of the Fourteenth Amendment. | Power of state to tax for public purposes within its constitutional sphere is as unlimited as power of national government within its sphere except for equality clause of Federal Constitution. Const.Amend. 14. | Is the state's power to tax for public purposes as unlimited as the power of national government? | 11402.docx | LEGALEASE-00094141-LEGALEASE-00094142 | Condensed, SA | 0.18 | 0 | 1 | 0 | 1 | |
| 8628 | Atlas Powder Co. v. Goodloe, 131 Tenn. 490 | 371+2005 | The power of Congress over interstate commerce is supreme under the federal Constitution. It is well settled that the levying of taxes by a state which will impede, interfere, or burden such commerce between the states, is invalid.Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031; Norfolk & Western R. R. v. Pa., 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394, 396; Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Corson v. Maryland, 120 U. S. 502, 7 Sup. Ct. 655, 30 L. Ed. 699; Welton v. Mo., 91 U. S. 275, 23 L. Ed. 347; Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678. | The power of Congress over interstate commerce is supreme, and the levying of taxes by a state which impedes or burdens such commerce is invalid. | Is the power of Congress over interstate commerce supreme and the levying of taxes by a state which impedes or burdens such commerce invalid? | Taxation - Memo # 824 - C - MS.docx | ROSS-003290150-ROSS-003290151 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8629 | Chappy v. Labor & Indus. Review Comm'n, 128 Wis. 2d 318 | 413+2 | Worker's compensation statutes are economic regulations by which the legislature has balanced competing societal interests as a matter of public policy. Mulder v. Acme-Cleveland Corp., 95 Wis.2d 173, 180, 290 N.W.2d 276, 280 (1980). Worker's compensation is wholly statutory and questions regarding what should properly be the public policy should be determined by the legislature, not the courts. Larson v. DILHR, 76 Wis.2d 595, 621, 252 N.W.2d 33, 45 (1977). The overall objectives of worker's compensation statutes are to protect injured employees and those who depend on such employees for support. Id. at 615, 252 N.W.2d at 42. | Worker's compensation is wholly statutory and questions regarding what should properly be public policy should be determined by legislature, not courts. | "For workers compensation, is it the legislature or the courts that determine the questions regarding what should properly be the public policy?" | Workers Compensation - Memo #510 ANC.docx | ROSS-003287030-ROSS-003287031 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 8630 | Perry v. Transamerica Ins. Grp., 703 S.W.2d 151 | 413+2 | We have determined that insofar as reported cases are concerned, this is a case of first impression in this state. Stated another way, the question is whether plaintiff has a cause of action. The benefits conferred by the Workers' Compensation Act are purely statutory, and the circumstances under which they are paid and the manner in which they are calculated depend solely upon statutory authority. As stated in Noe v. Travelers Insurance Co., 172 Cal.App.2d 731, 342 P.2d 976, 977 (1959): Workmen's compensation contemplates a substitution of the contractual rights and obligations which normally flow between worker and employer with a complete and exclusive statutory scheme based not upon contract but upon status. The relationship of employer and employee itself generates the rights and obligations; the legislation describes the content and extent of those rights and obligations. | Benefits conferred by Workers' Compensation Act (T.C.A. S 50-6-101 et seq.), are purely statutory, and circumstances under which they are paid and manner in which they are calculated depend solely upon statutory authority. | Would the benefits conferred by the Workers Compensation Act be described as purely statutory? | Workers Compensation - Memo #513 ANC.docx | ROSS-003289031-ROSS-003289032 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8631 | Theriot v. Damson Drilling Corp., 471 So. 2d 757 | 413+2 | While the plaintiffs' argument that their newly created action for consortium, service and society is theirs and, not the injured worker's action, may seem attractive, the principle has been rejected long ago. As is well understood, the typical worker's compensation law, of which Louisiana's statute is one, is a compromise of legal rights for the purpose of arriving at a socially desirable result of a compromise nature. There is no need to trace here the give and take nature of the legislation. To allow the claim of plaintiffs would make a serious inroad into the essential nature of the worker's compensation scheme. | Worker's Compensation Law is compromise of legal rights for purpose of arriving at socially desirable result of a compromise nature. LSA-R.S. 23:1021-23:2001. | Is workers compensation a compromise of legal rights for the purpose of arriving at a socially desirable result? | 048346.docx | LEGALEASE-00146380-LEGALEASE-00146381 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8632 | Thomas v. N. Telecom, 157 F. Supp. 2d 627 | 413+9 | Under the North Carolina Workers Compensation Act ("the Act") employees automatically receive compensation for injury or death by accident "arising out of and in the course of ... employment." N.C. Gen.Stat. " 97"3. In exchange for the certainty of receiving this benefit, however, "the employee and his dependents give up their common law right to sue the employer for negligence." Pleasant v. Johnson, 312 N.C. 710, 712, 325 S.E.2d 244, 246"47 (1985). Defendant argues that Plaintiff's claim of negligent infliction of emotional distress is barred by the exclusivity provision of the Act, North Carolina General Statute Section 97"10.1. The court disagrees. In Hogan, the North Carolina Court of Appeals held that an intentional infliction claim was not barred by the Act's exclusivity provision. See Hogan, 79 N.C.App. at 490, 340 S.E.2d at 121. The Hogan court reasoned that the emotional distress suffered by the plaintiff fell outside the range of injuries covered by the Act, and therefore the exclusivity provision did not apply. The same rationale applies to Plaintiff's negligent infliction claim based on racial discrimination. Any emotional distress suffered by Plaintiff does not fall within the scope of injuries covered by the Act. As a result, Plaintiff's negligent infliction claim is not barred by the Act. | In exchange for the certainty of receiving a benefit under the North Carolina Workers Compensation Act, the employee and his dependents give up their common law right to sue the employer for negligence. N.C.G.S. S 97-3. | What do the employees and their dependents give for compensation? | 048348.docx | LEGALEASE-00146390-LEGALEASE-00146391 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8633 | Distefano v. State Farm Mut. Auto. Ins. Co., 846 So. 2d 572 | 307A+563 | The standard of review for a trial court's imposition of sanctions is abuse of discretion. Baker v. Myers Tractor Servs., Inc., 765 So.2d 149, 150 (Fla. 1st DCA 2000). "A trial judge has the inherent authority to dismiss actions based on fraud and collusion." Young v. Curgil, 358 So.2d 58, 59 (Fla. 3d DCA 1978). However, this power of dismissal should be used "cautiously and sparingly," and "only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing." Id. (citations omitted); Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002). The party alleging fraudulent behavior must prove such by clear and convincing evidence. Century Props., Inc. v. Machtinger, 448 So.2d 570, 573 (Fla. 2d DCA 1984) (citation omitted). Fraud occurs when it can be demonstrated, "clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). When a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction. Desimone v. Old Dominion Ins. Co., 740 So.2d 1233, 1234 (Fla. 4th DCA 1999). | Trial court's power of dismissal should be used cautiously and sparingly, and only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing. | "Can sanction of dismissal be imposed only on a clear showing of fraud, pretense, collusion, or similar wrongdoing?" | 10025.docx | LEGALEASE-00095535-LEGALEASE-00095536 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8634 | Brock v. Kaiser Found. Hosps., 10 Cal. App. 4th 1790 | 307A+590.1 | As we stated with respect to Lockhart"Mummery, reasonable diligence in arbitration proceedings has no bearing on the action at law stayed pending those proceedings; the stay on proceedings stays the five-year period as well until the conclusion of the arbitration proceedings. We therefore disagree with Boutwell on this issue as well. | Reasonable diligence in arbitration proceedings has no bearing on stay of action at law pending those proceedings; stay of proceedings stays five-year period for bringing action at law as well until conclusion of arbitration proceedings. West's Ann.Cal.C.C.P. S 583.340(a-c). | Does the reasonable diligence in arbitration proceedings have no bearing on a stay of action at law pending those proceedings? | 034922.docx | LEGALEASE-00146784-LEGALEASE-00146785 | Order, SA | 0.18 | 1 | 0 | 0 | 1 | |
| 8635 | Martin v. Garon, 172 So. 2d 751 | 307A+563 | The last paragraph of LSA-C.C.P. art. 933 provides:"When the grounds of the other objections pleaded in the dilatory exception may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court; and the suit shall be dismissed only for a noncompliance with this order.' The jurisprudence of Louisiana is also to the effect that the court has the power to enforce its lawful orders and to order a litigant to perform some act, procedural in character, and upon failure to do so, to dismiss his suit. Bogan v. Byrom, supra; La Fleur v. Dupuis, supra; Neal v. Hall, supra. | Court has power to enforce its lawful orders and to order litigant to perform some procedural act, and to dismiss suit upon his failure to do so. | Does a court have power to enforce its lawful orders and to order litigant to perform some procedural act? | Pretrial Procedure - Memo # 7054 - C - SB_58308.docx | ROSS-003295592-ROSS-003295593 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8636 | Chavez v. U S, 74 F.2d 508 | 34+57 | Policies of war risk insurance are contractual obligations of the United States, yet they confer no right of action on this insured or his beneficiary independently of the sovereign will. Lynch v. United States, 292 U.S. 571, 64 F.Ct. 840, 78 L.Ed. 1434; McLaughlin v. United States (C.C.A. 10) 74 F.(2d) 506, decided December 12, 1934. Consent to sue the United States on contracts of war risk insurance has been granted by Congress, but such consent is conditioned upon the filing of a written claim for insurance benefits, and a "denial of the claim by the director or some one acting in his name on an appeal to the director." Section 4, Act of July 3, 1930, which amended section 19, World War Veterans' Act, 1924 (38 USCA 445). | War risk insurance policies are contractual obligations of United States, but confer no right of action on insured or his beneficiary independently of sovereign will. World War Veterans' Act of 1924, S 19, as amended by Act July 3, 1930, S 4, 38 U.S.C.A. S 445. | Do war risk insurance policies confer a right of action on an insured or his beneficiary? | Armed Services - Memo 296 - JK_57604.docx | ROSS-003291986-ROSS-003291987 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8637 | Roberson v. United States, 208 F.2d 166 | 34+20.10(2) | It is not the province of the court or jury to weigh the evidence on which the local board classified the registrant. The judicial inquiry is limited to the question whether there is any factual basis for the classification. If so, the inquiry is at an end, and the classification is conclusive in prosecutions under Section 12. It is only when there is no factual basis for the local board's classification that it loses jurisdiction to order an induction and the registrant is justified in refusing to obey it. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Annett v. United States, 10 Cir., 205 F.2d 689; Head v. United States, 10 Cir., 199 F.2d 337. But in no event is classification a jury question. Cox v. United States, supra; Head v. United States, supra. | Only where there is no factual basis for local board's classification of draft registrant is the registrant justified in refusing to obey order of induction. Selective Service Act of 1948, S 12, 50 U.S.C.A.Appendix, S 462. | Is the registrant justified in refusing to obey the order of induction when there is no factual basis for local board's classification? | 008747.docx | LEGALEASE-00147986-LEGALEASE-00147987 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8638 | Smith v. Glen Alden Coal Co., 347 Pa. 290 | 260+55(6) | It is well recognized in Pennsylvania that there may be three estates in land, namely, coal, surface, and right of support, so that one person may own the coal, another the surface, and the third the right of support. Charnetski v. Miner's Mills Coal Min. Co., 270 Pa. 459, 113 A. 683. "In the absence of express waiver * * * [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support." Penman v. Jones, 256 Pa. 416, 422, 100 A. 1043, 1044. "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate."Graff Furnace Co. v. Scranton Coal Co., 244 Pa. 592, 91 A. 508, 509. This servitude of support is an estate in land, sometimes referred to in this commonwealth as "the third estate". See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321, and Appeal of Fifth Mut. Bldg. Soc., 317 Pa. 161, at page 168, 176 A. 494. | An owner of estate in minerals separated from surface of land owes servitude of sufficient support to superincumbent estate, and such servitude is "estate in land" sometimes referred to as "third estate". | Does the owner of the mineral estate owe a servitude of sufficient support to the superincumbent estate? | 021549.docx | LEGALEASE-00147728-LEGALEASE-00147729 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8639 | In re Campbell's Estate, 195 Misc. 520 | 296+10 | Pension payments to guardians of incompetent veterans vests title in the ward and discharges the obligation of the United States with respect thereto. Spicer v. Smith, 288 U.S. 430, 53 S.Ct. 415, 77 L.Ed. 875, 84 A.L.R. 1525. However, a pensioner has no vested legal right to his pension; pensions are the bounties of the government which Congress has the right to give, withhold, distribute or recall, at its discretion. 7 A.L.R. 1657, and cases cited therein; Abbott v. Morgenthau, 68 App.D.C. 83, 93 F.2d 242, 245, certiorari denied 303 U.S. 638, 58 S.Ct. 526, 82 L.Ed. 1098. Pension payments must be made and accepted in exact conformity with the terms of the grant, and subject to all of the limitations, conditions and exceptions therein contained. Donnelly v. U. S., 17 Ct.Cl. 105, 108. | Pension payments to guardians of incompetent veterans vest title in the ward and discharge the obligation of the United States with respect thereto but a pensioner has no vested legal right to his "pension", which is a bounty of the government which congress has the right to give, withhold, distribute or recall at is discretion. | Do pension payments to the guardians of incompetent veterans vest title in the ward? | Pension - Memo 68 - JK_57654.docx | ROSS-003280589-ROSS-003280590 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 8640 | Sommer v. Maharaj, 451 Mass. 615 | 307A+563 | The Superior Court has, as the fund defendants, the receiver, and Sommer suggest, the inherent power to enforce its own orders, "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11 (1st Cir.1985), cert. denied, 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986), quoting Link v. Wabash R.R., 370 U.S. 626, 630"631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). It has long been understood that courts have the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821). See, e.g., John's Insulation, Inc. v. L. Addison & Assoc., Inc., 156 F.3d 101, 108 (1st Cir.1998) (discussing court's inherent power to impose sanctions beyond authority granted by Federal Rules of Civil Procedure). That power, to "be exercised with restraint and discretion," Chambers v. NASCO, Inc., supra at 44, 111 S.Ct. 2123, includes dismissal of a lawsuit, when justified by a party's extreme conduct. | A court's inherent power, to be exercised with restraint and discretion, includes dismissal of a lawsuit, when justified by a party's extreme conduct. | "Does a court's inherent power, to be exercised with restraint and discretion, include dismissal of a lawsuit?" | 10877.docx | LEGALEASE-00094465-LEGALEASE-00094466 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8641 | Heard v. McCabe, 130 Ark. 185 | 307A+552 | The only remaining question is whether or not a circuit court has the power to dismiss an action which is shown to be without merit, and brought for vexatious purposes. The court in which an action is brought has that power if the facts just stated constitute grounds for abatement or dismissal. The fact that an action is brought through bad motive or for vexatious purposes is not sufficient to justify a dismissal, but where, in addition to that, it is shown that the cause is without merit and is brought solely for the purpose of harassing and annoying the person sued, then it may be dismissed by the court, for such conduct constitutes an abuse of the privilege of having adjudication of asserted rights. 14 Cyc. 432. This principle was recognized in Turrentine v. St. L. S. W. Ry. Co., 96 Ark. 181, 131 S. W. 337, and Floyd v. Skillern, 121 Ark. 454, 181 S. W. 298. In the Turrentine Case, supra, after holding that it was error for the trial court to dismiss an action solely on the ground that plaintiff had not paid the costs of a former action, we said: "We do not mean to say that it is beyond the power of a trial court to dismiss an action found to have been instituted not in good faith, but vexatiously, for the purpose of harassing and annoying the adversary party. This would be an abuse of process, which the court could correct by dismissal of the action." | Although bad motive is not alone sufficient to justify a dismissal, if cause is without merit, and was brought solely to harass and annoy defendant, it may be dismissed. | "Will a cause be dismissed if it is without merit, and was brought solely to harass and annoy defendant?" | Pretrial Procedure - Memo # 7301 - C - BP.docx | ROSS-003286135-ROSS-003286136 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8642 | McKnight v. Evancheck, 907 So. 2d 699 | 307A+563 | The trial court may dismiss a plaintiff's entire case when the " "party perpetrates a fraud on the court which permeates the entire proceedings." " Vieira v. Doe, 813 So.2d 1030, 1031 (Fla. 4th DCA 2002) (quoting Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997)). "The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." " Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003) (quoting Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998)). "Because "dismissal sounds the "death knell of the lawsuit," courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." " Id. (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). While a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction "only in extreme circumstances." Id. | While a trial court has discretion to dismiss an action for fraud on the court, it should exercise this severe sanction only in extreme circumstances. | Should a trial court exercise its discretion of severe sanction to dismiss an action for fraud on the court only in extreme circumstances? | 10909.docx | LEGALEASE-00094075-LEGALEASE-00094076 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8643 | Scottsdale Ins. Co. v. Lakeside Cmty. Comm., 2016 IL App (1st) 141845 | 307A+686.1 | A motion to dismiss based on section 2"619 admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. Mount Mansfield Insurance Group, Inc. v. American International Group, Inc., 372 Ill.App.3d 388, 392, 310 Ill.Dec. 200, 865 N.E.2d 524 (2007). In particular, section 2"619(a)(5) permits the circuit court to dismiss a cause of action if was not commenced within the time limited by law. We review a section 2"619 order of dismissal de novo. Porter v. Decatur Memorial Hospital, 227 Ill.2d 343, 352, 317 Ill.Dec. 703, 882 N.E.2d 583 (2008) | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the complaint, but asserts that the claim is defeated based on certain defects, defenses, or other affirmative matter. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss assert an affirmative matter which defeats the claim? | 10160.docx | LEGALEASE-00095632-LEGALEASE-00095633 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 8644 | Doe v. Univ. of Chicago Med. Ctr., 2015 IL App (1st) 133735 | 307A+686.1 | But there are critical differences between a section 2"619 motion and a motion for summary judgment. Most importantly, a party may not rely solely on her complaint to oppose a properly-supported motion for summary judgment. Forsberg v. Edward Hospital & Health Services, 389 Ill.App.3d 434, 441, 329 Ill.Dec. 531, 906 N.E.2d 729 (2009). In contrast, as we have noted above, a section 2"619 motion admits the allegations of the complaint, as well as admitting that the complaint states a viable cause of action. Patrick Engineering, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318; Sandholm, 2012 IL 111443, 356 Ill.Dec. 733, 962 N.E.2d 418. If defendant's evidence in support of a section 2"619(a)(9) motion does nothing more than refute the well-pleaded allegations of the complaint, the complaint trumps that evidence, and dismissal is improper. Smith, 231 Ill.2d at 121, 324 Ill.Dec. 446, 896 N.E.2d 232. "Section 2"619(a)(9) is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based "mini-trial" on whether plaintiff can support his allegations." Reynolds, 2013 IL App (4th) 120139, 370 Ill.Dec. 628, 988 N.E.2d 984. | While a motion for involuntary dismissal and a motion for summary judgment share similarities and may, in certain circumstances, be functionally equivalent, there are critical differences between the two; most importantly, a party may not rely solely on her complaint to oppose a properly-supported motion for summary judgment, while a motion for involuntary dismissal admits allegations of complaint, as well as admitting that complaint states a viable cause of action. S.H.A. 735 ILCS 5/2-619. | Can a party solely rely on her complaint to oppose a properly-supported motion for summary judgment? | Pretrial Procedure - Memo # 7557 - C - DA_57545.docx | ROSS-003294668-ROSS-003294669 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 8645 | Wheeler v. Eftink, 507 S.W.3d 598 | 307A+581 | Missouri law requires a plaintiff to promptly secure service against a defendant and advance his cause of action with due diligence. Stephens v. Dunn, 453 S.W.3d 241, 254 (Mo. App. S.D. 2014) (citing Atkinson v. Be"Mac Transport, Inc. 595 S.W.2d 26, 28 (Mo. App. E.D. 1980)). Here, Plaintiff must show that the trial court abused its discretion in dismissing his cause, with prejudice, based on Plaintiff's failure to diligently prosecute his claim against Defendant for an automobile accident that occurred on March 3, 2006.3 Peet, 103 S.W.3d at 876. A fair test of whether a trial court abused its discretion in dismissing a case for failure to prosecute with due diligence is whether the plaintiff had a reasonable opportunity to resolve the matter at trial. Branson Hills Associates, L.P. v. First Am. Title Ins. Co., 258 S.W.3d 568, 573 (Mo. App. S.D. 2008). Mere delay in prosecution is insufficient to justify dismissal. West Central Concrete, LLC v. Reeves, 310 S.W.3d 778, 783 (Mo. App. W.D. 2010). There must be some evidence that the delay was unnecessary to justify a trial court's dismissal for failure to prosecute. Townsend v. Union Pacific R. Co., 968 S.W.2d 767, 770 (Mo. App. E.D. 1998). | Mere delay in prosecution is insufficient to justify dismissal of a case for failure to prosecute with due diligence; there must be some evidence that the delay was unnecessary to justify a trial court's dismissal for failure to prosecute. | Is mere delay in prosecution insufficient to justify dismissal of a case for failure to prosecute with due diligence? | 10274.docx | LEGALEASE-00095381-LEGALEASE-00095382 | Order, SA | 0.82 | 1 | 0 | 0 | 1 | |
| 8646 | Marschall v. Water-Boggan Int'l, 401 So. 2d 1157 | 307A+590.1 | Florida Rule of Civil Procedure 1.420(e) provides that: All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court or otherwise has occurred for a period of one year shall be dismissed by the court on its own motion .... By the terms of the rule, an "order of court" constitutes record activity. The computation of time for dismissal of actions is determined by calculating the time between the date of filing the last affirmative act and the date of the filing of the motion to dismiss or abate for failure to proceed according to the mandate of the rule. Florida East Coast Railway Company v. Southern Sanitation Service, 392 So.2d 355 (Fla. 4th DCA 1981); Ace Delivery Service, Inc. v. Pickett, 274 So.2d 15 (Fla.2d DCA 1973). | Order requiring service of process and return of alias summonses and substituted service constituted "record activity;" thus, order dismissing action was improper in light of fact that this "record activity" occurred during one year period preceding motion for dismissal for want of prosecution. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.420(e). | "By terms of a rule allowing dismissal of complaint for want of prosecution, does an ""order of court"" constitute ""record activity""?" | 11128.docx | LEGALEASE-00094689-LEGALEASE-00094690 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8647 | Sheen v. The Time Inc. Magazine Co., 817 So. 2d 974 | 307A+590.1 | The case law interpreting rule 1.420(e) makes it clear that not every document filed in a case qualifies as record activity. See Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992); Otero v. Gastroenterology Group of South Florida, P.A., 710 So.2d 148, 149 (Fla. 3d DCA 1998); Heinz v. Watson, 615 So.2d 750 (Fla. 5th DCA 1993); Caldwell v. Mantei, 544 So.2d 252 (Fla. 2d DCA 1989); Boeing Co. v. Merchant, 397 So.2d 399, 402 (Fla. 5th DCA 1981). This is because for purposes of rule 1.420(e), "[r]ecord activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Toney, 600 So.2d at 1100. Under this definition of record activity, documents filed of record concerning discovery may, but do not always, constitute sufficient record activity. See Anthony v. Schmitt, 557 So.2d 656, 659 (Fla. 2d DCA 1990), approved by, Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991). | Documents filed of record concerning discovery may, but do not always, constitute "record activity" sufficient to avoid dismissal for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | "Can documents filed of record concerning discovery constitute ""record activity"" sufficient to avoid dismissal for failure to prosecute?" | 11307.docx | LEGALEASE-00094516-LEGALEASE-00094517 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8648 | Com. v. Weber, 549 Pa. 430 | 352H+228 | "The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity." Johnson, 536 Pa. at 158, 638 A.2d at 942 (citation omitted). The Rape Shield Law applies to evidence concerning a victim's abortion because it necessarily implicates past sexual conduct. The application of the Rape Shield Law to evidence of an abortion does not foreclose any possibility that the evidence will be admitted at trial, however, as we have recognized that evidence of sexual acts involving the victim may be admissible in some instances. | Rape Shield Law applies to evidence concerning victim's abortion because it necessarily implicates past sexual conduct. 18 Pa.C.S.A. S 3104. | Is a victims abortion evidence of past sexual conduct under rape shield law? | 042952.docx | LEGALEASE-00147929-LEGALEASE-00147930 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8649 | Bazanes v. State, 310 S.W.3d 32 | 352H+190 | The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. See McKenzie, 617 S.W.2d at 216; Connell v. State, 233 S.W.3d 460, 467 (Tex.App.-Fort Worth 2007, no pet.); see also Tex.Code Crim. Proc. Ann. art. 38.07 (Vernon 2005) (providing that conviction for indecency with a child is supportable by uncorroborated testimony of victim if victim reported offense to another within one year of offense). An oral expression of intent is not required; the conduct itself is sufficient to infer intent. Connell, 233 S.W.3d at 467 (citing C.F. v. State, 897 S.W.2d 464, 472 (Tex.App.-El Paso 1995, no writ)). Additionally, a complainant's testimony alone is sufficient to support a conviction for indecency with a child. Id. at 466 (citing Tex.Code Crim. Proc. Ann. art. 38.07; Garcia v. State, 563 S.W.2d 925, 928 (Tex.Crim.App.1978)). | The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. V.T.C.A., Penal Code S 21.11(a)(1). | Can the specific intent required for the offense of indecency with a child be inferred from a defendant's conduct? | 042971.docx | LEGALEASE-00147960-LEGALEASE-00147961 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8650 | Arkwright Mut. Ins. Co. v. Garrett & W., 790 F. Supp. 1386 | 413+2 | The workers' compensation laws shield employers from unlimited liability for torts against employees. In exchange, employers give up some of the defenses to workers' suits which were available to them at common law, such as assumption of risk. In other words, employers' duties to their employees are not defined by the act providing for worker's compensation; rather, they have tort duties to their employees ab initio. The Act simply permits them to satisfy those duties by making worker's compensation payments. | Under Illinois law, employers' duties to their employees are not defined by Workers' Compensation Act but, rather, they have tort duties to their employees ab initio and Act simply permits them to satisfy those duties by making worker's compensation payments. Ill.S.H.A. ch. 48, P 138.1 et seq. | Does the Workers Compensation Act define employers duties to their employees? | 11444.docx | LEGALEASE-00094041-LEGALEASE-00094042 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 8651 | Brown v. Eubank, 443 S.W.2d 386 | 25T+169 | The general rule is that either party may revoke a common law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. 6 C.J.S. Arbitration and Award s 33, p. 173; 6 Tex.Jur.2d, Arbitration and Award, s 22, p. 58; Tejas Dev. Co. v. McGough Bros., 165 F.2d 276 (5th Cir. 1947); Deep South Oil Co. of Texas v. Texas Gas Corp., 328 S.W.2d 897, 906 (Tex.Civ.App., Beaumont 1959, writ ref'd n.r.e.). | The general rule is that either party may revoke a common-law submission to arbitration at any time before an award has been made, leaving to the aggrieved party his action for damages for breach of contract. | What is the remedy for the aggrieved party if the submission to arbitration is revoked? | 007853.docx | LEGALEASE-00148890-LEGALEASE-00148892 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 8652 | Rapp v. Manufacturers Tr. Co., 15 Misc. 2d 332 | 83E+406 | As to the check dated June 21, 1957, it will be noted that this check does not bear the endorsement of the payee but bears the endorsement only of Holiday Pool Co., Inc. While a check may be transferred without written endorsement and such transfer vests in the transferee such title as the transferor had (Negotiable Instruments Law " 79; Manufacturers Trust Co. v. Lafayette National Bank of Brooklyn in New York, supra), nevertheless, it has been held that a bank's payment of a depositor's check without the payee's endorsement established prima facie misappropriation of the depositor's funds, and the burden was then on the bank of proving payment to the proper party. City Trust Co. v. Botting, 139 Misc. 684, 248 N.Y.S. 204.The plaintiff may not recover on the two checks dated June 17, 1957 but is entitled to a decision in his favor on the check dated June 21, 1957. | A check may be transferred without written endorsement, and such transfer vests in transferee such title as transferor had. Negotiable Instrument Law, S 79. | "Can a check be transferred without written endorsement, and such transfer vests in transferee the title as transferor had?" | 010590.docx | LEGALEASE-00148326-LEGALEASE-00148327 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8653 | People v. Wilson, 11 Cal. App. 4th 1483 | 67+6 | We conclude that it is the element of habitation, not the nature of the structure that elevates the crime of burglary to first degree. An "inhabited dwelling house," as referenced in section 460, subd. (a), must be defined as a person's actual place of abode, regardless of the material of which it is built. Applying that conclusion to the instant case, we find that the tent at issue herein, having four sides and a roof and being inhabited by Pray and Parsons and used for sleeping and storage of their possessions, is a dwelling house, for purposes of section 460, subd. (a). | "Inhabited dwelling house," within meaning of statute elevating crime of burglary to first degree when burglary is of "inhabited dwelling house," must be defined as person's actual place of abode, regardless of material of which it is built. West's Ann.Cal.Penal Code S 460(a). | What are inhabited dwelling houses in the context of burglary? | Burglary - Memo 259 - RK_58143.docx | ROSS-003320705-ROSS-003320706 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 8654 | Layhew v. Dixon, 527 S.W.2d 739 | 156+3(1) | None of the federal pleadings were sworn to, and they represent no more than the statements of position of the parties to that action. While it is true that parties may not change positions which they have asserted in litigation, judicial estoppels are not favored and ordinarily do not arise out of mere unsworn pleadings. See Sturkie v. Bottoms, 203 Tenn. 237, 310 S.W.2d 451 (1958). | While parties may not change positions which they have asserted in litigation, judicial estoppels are not favored and ordinarily do not arise out of mere unsworn pleadings. | Are judicial estoppels not favored and do they not ordinarily arise out of mere unsworn pleadings? | 017773.docx | LEGALEASE-00149033-LEGALEASE-00149034 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8655 | Alyeska Pipeline Serv. Co. v. Anderson, 629 P.2d 512 | 260+17(1) | To be valid under the provisions of 30 U.S.C.A. s 22, a mining claim must be one for "valuable mineral deposits." Two complementary tests have been developed for determination of whether minerals are valuable: the prudent person test and the marketability test. See United States v. Coleman, 390 U.S. 599, 601-03, 88 S.Ct. 1327, 1329-1331, 20 L.Ed.2d 170, 174-75 (1968). These tests "are not distinct standards but are complementary in that the latter is a refinement of the former." Id. at 603, 88 S.Ct. at 1330, 20 L.Ed.2d at 175. Basically, the prudent person test requires that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." The marketability test requires that "it must be shown that the mineral can be "extracted, removed and marketed at a profit." " | Tests which have been developed for determining whether minerals are valuable, prudent person and marketability test, are not distinct standards but are complementary in that latter is refinement of former; basically, prudent person test requires that person of ordinary prudence would be justified in further expenditure of his labor and means, with reasonable prospect of success, in developing valuable mine, and marketability test requires that it must be shown that minerals can be extracted, removed and marketed at profit. | "To determine whether minerals are valuable, what must the marketability test show?" | Mines and Minerals - Memo # 22 - C - EB.docx | LEGALEASE-00038394-LEGALEASE-00038395 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 8656 | New Mexico & Arizona Land Co. v. Elkins, 137 F. Supp. 767 | 260+55(5) | Uranium and thorium being minerals within the scientific, geological and practical meanings, would certainly constitute minerals within the purview of the reserving clause "all oil, gas and minerals'. We have left only the problem as to whether such minerals must have been known, or were supposed to have been on or under the premises in question, at the time the deeds were executed, in order for the reservation to be effective at this time. | Uranium and thorium being "minerals" within scientific, geological and practical meanings constitute minerals within purview of a reservation clause in a deed of "all oil, gas and minerals". | Will uranium and thorium constitute minerals within the purview of the reserving clause? | Mines and Minerals - Memo #267 - C - CSS_57987.docx | ROSS-003293376-ROSS-003293377 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 8657 | Smith v. Moore, 172 Colo. 440 | 260+55(6) | This court has held that when the surface and mineral estates have been severed, the owner of the mineral estate may remove the underlying minerals but must support the surface and cannot destroy the surface by strip mining. Barker v. Mintz, 73 Colo. 262, 215 P. 534. While the right to damage or destroy the surface may clearly be a subject for reservation, the rule of construction of a reservation of the minerals in a deed of conveyance is not to imply a right to injure or destroy the surface unless the right to do so is made clear and expressed in terms so plain as to admit of no doubt. Evans Fuel Co. v. Leyda, 77 Colo. 356, 236 P. 1023. | When surface and mineral estates have been severed the owner of mineral estate may remove underlying materials but must support the surface and cannot destroy the surface by strip mining. | May the owner of the mineral estate remove the underlying minerals but must support the surface? | Mines and Minerals - Memo #276 - C - CSS.docx | LEGALEASE-00038438-LEGALEASE-00038439 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8658 | Pane v. City of Danbury, 267 Conn. 669 | 302+34(1) | Even if we read the substitute complaint to assert that the alleged FOIA violations constituted an invasion of the plaintiff's privacy per se, the plaintiff could not prevail. As Perkins recognized, in order to establish a cause of action for invasion of privacy, a plaintiff must allege that the disclosure of the information " "(a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." " Id., at 172, 635 A.2d 783. The plaintiff's substitute complaint made no such allegations. We are mindful that, "[u]nder modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action ... and that pleadings should be read broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) Sauerwein v. Bell, 17 Conn.App. 697, 709, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989). That does not mean, however, that the trial court is obligated to read into pleadings factual allegations that simply are not there or to substitute a cognizable legal theory that the facts, as pleaded, might conceivably support for the noncognizable theory that was actually pleaded | Under modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action, and pleadings should be read broadly and realistically, rather than narrowly and technically; however, trial court is not obligated to read into pleadings factual allegations that simply are not there or to substitute a cognizable legal theory that the facts, as pleaded, might conceivably support for the noncognizable theory that was actually pleaded. | "Should pleadings be read broadly and realistically, rather than narrowly and technically?" | 023598.docx | LEGALEASE-00148392-LEGALEASE-00148393 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 8659 | Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo, 987 So. 2d 989 | 307A+690 | Mississippi Rule of Civil Procedure 41(b) provides for the dismissal of a stale lawsuit for the failure of the plaintiff to prosecute the case. However, we are mindful that "the law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly." AT&T v. Days Inn, 720 So.2d 178, 180( 12) (Miss.1998) (citing Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). A trial court's order of "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." Wallace v. Jones, 572 So.2d 371, 376 (Miss.1990). We review a trial court's dismissal pursuant to Rule 41(b) for failure to prosecute for abuse of discretion. AT&T, 720 So.2d at 180( 12); Miss. Dep't of Human Servs. v. Guidry, 830 So.2d 628, 632( 13) (Miss.2002). | A trial court's order of dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. | Is dismissal with prejudice for failure to prosecute or to comply with a court orders a harsh remedy to be utilized only in extreme situations? | 035071.docx | LEGALEASE-00148438-LEGALEASE-00148439 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 8660 | Czarobski v. Lata, 227 Ill. 2d 364 | 307A+679 | A motion for involuntary dismissal under section 2"619 admits the legal sufficiency of the plaintiff's claim but asserts "affirmative matter" outside of the pleading that defeats the claim. Wallace v. Smyth, 203 Ill.2d 441, 447, 272 Ill.Dec. 146, 786 N.E.2d 980 (2002); 735 ILCS 5/2"619(a)(9) (West 2006). The purpose of a section 2"619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). Invocation of the merger doctrine is an affirmative matter properly raised in a section 2"619 motion. See Neppl v. Murphy, 316 Ill.App.3d 581, 585"86, 249 Ill.Dec. 736, 736 N.E.2d 1174 (2000). When ruling on such a motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. Van Meter, 207 Ill.2d at 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273. On appeal from a section 2"619 motion, the reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116"17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). Our review proceeds de novo. Van Meter, 207 Ill.2d at 368, 278 Ill.Dec. 555, 799 N.E.2d 273. | When ruling on a motion for involuntary dismissal based upon certain defects or defenses, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. S.H.A. 735 ILCS 5/2-619. | Will the court construe the pleadings and supporting documents in favor of the nonmoving party in a motion to dismiss? | Pretrial Procedure - Memo # 7599 - C - SU_57807.docx | ROSS-003283168-ROSS-003283169 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8661 | Toler v. Rapid Am., 190 S.W.3d 348 | 307A+584 | However, with this said, dismissal of a case pursuant to CR 41.02 or CR 77.02 "should be resorted to only in the most extreme cases" and we must "carefully scrutinize the trial court's exercise of discretion in doing so." Polk v. Wimsatt, 689 S.W.2d 363, 364"65 (Ky.App.1985). The rule permitting a court to involuntarily dismiss an action "envisions a consciousness and intentional failure to comply with the provisions thereof." Baltimore & Ohio Railroad Co. v. Carrier, 426 S.W.2d 938, 940 (Ky.1968). Since the result is harsh, "the propriety of the invocation of the Rule must be examined in regard to the conduct of the party against whom it is invoked." Id. at 941. Moreover, it is incumbent on the trial court to consider each case "in light of the particular circumstances involved; length of time alone is not the test of diligence." Gill v. Gill, 455 S.W.2d 545, 546 (Ky.1970). In addition, the court should determine whether less drastic measures would remedy the situation, especially where there is no prejudice to the party requesting dismissal. See Polk, 689 S.W.2d at 364"65. | It is incumbent on the trial court, in considering dismissal of cases due to want of prosecution, to consider each case in light of the particular circumstances involved; length of time alone is not the test of diligence. Rules Civ.Proc., Rules 41.02, 77.02. | Is it incumbent upon the court to consider each case in light of the particular circumstances involved? | Pretrial Procedure - Memo # 8002 - C - SKG_58358.docx | ROSS-003278348-ROSS-003278349 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 8662 | State ex rel. Div. of Admin., Office of Cmty. Dev. v. Tujague, 193 So. 3d 223 | 307A+581 | Because dismissal is the harshest of punishments, the law favors and justice requires that an action be maintained whenever possible so that the aggrieved party has his day in court. Thus, any action or step taken to move the case toward judgment should be considered. Wilkerson, 152 So.3d at 974. The intention of Article 561 is not to dismiss suits as abandoned based on technicalities. Bell v. Louisiana State Police, 13"0863 (La.App. 1 Cir. 12/23/14), 168 So.3d 518, 525, writ denied, 15"0160 (La.4/10/15), 163 So.3d 815. If the plaintiff has clearly demonstrated before the court during the prescribed period that it does not intend to abandon its lawsuit, dismissal is not warranted. Wilkerson, 152 So.3d at 974. | If the plaintiff has clearly demonstrated before the court during the prescribed period that it does not intend to abandon its lawsuit, dismissal is not warranted. LSA-C.C.P. art. 561. | Is a dismissal warranted if the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon his lawsuit? | 036425.docx | LEGALEASE-00149039-LEGALEASE-00149040 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8663 | Carista v. Valuck, 394 P.3d 253 | 307A+622 | After Pharmacy filed its motion to dismiss pursuant to 12 O.S.2011, 2012 (B) (6), Carista replied with evidence in the form of a report by one Michael Burton, a "Pharm D." from Spring, Texas. This report contained both evidence regarding generally accepted dosages and legal conclusions regarding the duty and liability of Pharmacy. Notably, Carista did not ask to amend her petition to add any of these factual allegations. The purpose of a motion to dismiss is to test the legal sufficiency of a petition, not to engage in an evidentiary contest of facts. Tuffy, 2009 OK 4, 212 P.3d 1158. This unsworn report therefore was irrelevant to the dismissal inquiry. | The purpose of a motion to dismiss is to test the legal sufficiency of a petition, not to engage in an evidentiary contest of facts. 12 Okla. Stat. Ann. S 2012(B)(6). | "Is the purpose of a motion to dismiss to test the legal sufficiency of a petition, not to engage in an evidentiary contest of facts?" | Pretrial Procedure - Memo # 8106 - C - NE_58439.docx | ROSS-003305695-ROSS-003305696 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 8664 | Carlisle v. U.S., 83 U.S. 147 | 384+1 | By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives. It may be an absolute and permanent obligation, or it may be a qualified and temporary one. The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. The alien, whilst domiciled in the country, owes a local and temporary allegiance, which continues during the period of his residence. | A citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. | Does a citizen owe an absolute and permanent allegiance to his government or his sovereign? | 047136.docx | LEGALEASE-00148853-LEGALEASE-00148854 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8665 | Quinn v. Clayton Const. Co., 111 S.W.3d 428 | 413+6 | An employee who sustains an injury through an accident arising out of and in the course of employment is provided certain compensation without having to prove fault on the employer's part and without being subject to common-law defenses. Gunnett v. Girardier Building and Realty Co., 70 S.W.3d 632, 636 (Mo.App. E.D.2002). In exchange for definite compensation for all work-connected injuries, employees forgo their rights to sue their employers for negligence and to obtain the common-law measure of damages in cases where fault could be shown. Id. Missouri's workers' compensation law does not, however, take away an employee's right to bring a common-law action against negligent third parties. Id. | Under exclusive remedy concept in workers' compensation setting, employee who sustains injury through accident arising out of, and in the course of, employment is provided certain compensation without having to prove fault on employer's part and without being subject to common-law defenses; in exchange for definite compensation for all work-connected injuries, employees forgo their rights to sue their employers for negligence and to obtain common-law measure of damages in cases where fault could be shown. V.A.M.S. S 287.120, subd. 2. | "When an injury is sustained in the course of employment, what happens to an employers common law defenses?" | 048391.docx | LEGALEASE-00148264-LEGALEASE-00148265 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 8666 | First Nat. Bank of Farmersville v. Greenville Nat. Bank, 84 Tex. 40 | 8.30E+52 | The word "payable" is a descriptive word, meaning "capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable," (Webst. Dict.;) and "to pay" means "to discharge one's obligation to another." If the obligation be to deliver specific articles or packages of money left on deposit, although the obligation arises from an express promise, this would not, although reduced to writing, constitute a promissory note; nor would a like promise, coupled with an acknowledgment of the deposit of such things, constitute a certificate of deposit; but, if the obligation be to pay a certain sum of money absolutely, the maker of the instrument so obligated to pay ought to be held to have promised to pay when he executes such an instrument as that before us would be if the words "in cks." were not in it. | The word "payable" is a descriptive word meaning capable of being paid, suitable to be paid, admitting or demanding payment justly due, legally enforcible, and "to pay" means to discharge one's obligation to another if the obligation be to deliver specific articles or a package of money left on deposit although the obligation arises from an express promise this would not although reduced to writing constitute a promissory note or a certificate of deposit. | What does the word payable means? | Bills and Notes- Memo 661-IS_58065.docx | ROSS-003281350-ROSS-003281351 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 8667 | Meadow Brook Nat. Bank v. Recile, 302 F. Supp. 62 | 83E+462 | It is, of course, clear that the holder of a negotiable promissory note is not required to proceed against the defaulting maker or the security on the note prior to instituting suit against an endorser who is primarily liable on the note. Atkins v. Dixie Fair Co., 135 La. 622, 65 So. 762 (La.1914); Succession of Gravolet, 193 So. 218 (La.App.1940); Continental Bk. & Tr. Co. v. Bouterie, 169 So. 812 (La.App.1936). If, as pointed out above, the endorser is required to pay the note, he is entitled to recourse against the maker. And if the note was secured, the endorser then succeeds to the rights of the holder against the security. | Holder of negotiable promissory note need not proceed against defaulting maker or security on note before suing endorser who is primarily liable. | Can a holder or drawer of a promissory note proceed against defaulting maker or security on note before suing endorser who is primarily liable? | Bills and Notes- Memo 703-ANM_58592.docx | ROSS-003319102 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8668 | Secy. of Veterans Affairs v. Leonhardt, 2015-Ohio-931 | 83E+426 | Accordingly, the VA proved by a preponderance of the evidence that it was entitled to recover under the lost note. First, the VA established that it was in possession of the note and entitled to enforce it when the note was lost because it was the holder of the note. See R.C. 1303.31(A)(1) (a person entitled to enforce an instrument is a holder of that instrument). "A "holder" includes a person who is in possession of an instrument payable to bearer." (Emphasis added.) HSBC Mtge. Servs., Inc. v. Watson, 3d Dist. Paulding No. 11"14"03, 2015-Ohio-221, 2015 WL 308259, " 25, citing BAC Home Loans Servicing, L.P. v. Haas, 3d Dist. Marion No. 9"13"40, 2014-Ohio-438, 2014 WL 538668, " 27, citing U.S. Bank, N.A. v. Kamal, 7th Dist. Mahoning No. 12 MA 189, 2013-Ohio-5380, 2013 WL 6500128, " 18 and R.C. 1301.01(T)(1)(a).8 "A "blank indorsement" is "an indorsement that is made by the holder of the instrument that is not a special indorsement." "9Watson at " 25, citing R.C. 1303.25(B). " "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." " Id., citing R.C. 1303.25(B) and Wells Fargo Bank, N.A. v. Byers, 10th Dist. Franklin No. 13AP"767, 2014-Ohio-3303, 2014 WL 3740328, " 14 ("A blank indorsement makes the instrument payable to the bearer pursuant to R.C 1303.25(B)."). | When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed. R.C. S 1303.25(B). | Can an instrument become payable to bearer when indorsed in blank and negotiated by transfer of possession alone? | 010964.docx | LEGALEASE-00149473-LEGALEASE-00149474 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8669 | Mystic Color Lab v. Auctions Worldwide, 284 Conn. 408 | 50+23 | A debtor-creditor relationship arises from a debt owed by one party to another. The debt owed arises from an obligation, often contractual, on the part of the debtor, not from a preexisting property interest of the creditor. See Black's Law Dictionary (6th Ed.1990) (defining debt as "[a] sum of money due by certain and express agreement" and "[a] specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment"). In contrast, "[a] relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions.... In *420 bailment, the owner or bailor has a general property [interest] in the goods bailed.... The bailee, on the other hand, has mere possession of items left in its care pursuant to the bailment." (Citations omitted; internal quotation marks omitted). B.A. Ballou & Co. v. Citytrust, 218 Conn. 749, 753, 591 A.2d 126 (1991). A bailment therefore contemplates redelivery of goods entrusted to the bailee, whereas a debtor-creditor relationship contemplates the payment of an obligation defined by agreement between the parties. | A bailment contemplates redelivery of goods entrusted to the bailee, whereas a debtor-creditor relationship contemplates the payment of an obligation defined by agreement between the parties. | Does a debtor-creditor relationship contemplate the payment of an obligation defined by agreement between the parties? | 014049.docx | LEGALEASE-00149849-LEGALEASE-00149850 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8670 | Riddle v. State Highway Comm'n, 184 Kan. 603 | 200+165 | The legislature has plenary power over highways and it is well settled that their use may be limited, controlled and regulated in the exercise of the police power whenever necessary to promote the safety and general welfare of the people (State ex rel. Arn v. State Commission of Revenue and Taxation, 163 Kan. 240, 247, 181 P.2d 532; 25 Am.Jur., Highways, "" 253, 254, pp. 544, 545; State v. Atkin, 64 Kan. 174, 67 P. 519, 97 Am.St.Rep. 343, affirmed Atkin v. State of Kansas, 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148; 40 C.J.S. Highways " 232 pp. 240-244). Thus, the regulation of traffic under the police power includes such things as prohibiting left turns, prescrbing one-way traffic (prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways (State Highway Commission v. Burk supra, 200 Or. at page 230, 265 P.2d at page 792). | Legislature has plenary power over highways and their use may be limited, controlled and regulated in the exercise of police power whenever necessary to promote the safety and general welfare of the people. | Does the Legislature have plenary power over highways? | 019274.docx | LEGALEASE-00149957-LEGALEASE-00149958 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8671 | Barnett Bank of E. Polk Cty. v. Fleming, 508 So. 2d 718 | 307A+590.1 | Accordingly, we hold that a motion to dismiss for lack of prosecution pursuant to Rule 1.420(e), whether initiated by the court or a party, cannot be deemed "record activity" sufficient to defeat dismissal of the case for lack of prosecution. | Motion to dismiss for lack of prosecution, whether initiated by court or a party, cannot be deemed "record activity" sufficient to defeat dismissal of case for lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | Is filing of a motion to dismiss for lack of prosecution considered a record activity precluding dismissal? | 036332.docx | LEGALEASE-00149261-LEGALEASE-00149262 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |
| 8672 | Poola v. Howard Univ., 147 A.3d 267 | 307A+622 | Although this standard "does not require detailed factual allegations," it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; factual allegations must be enough to raise a right to relief above the speculative level. Id. at 678, 129 S.Ct. 1937 (internal quotation marks omitted). But at the pleading stage, the plaintiff's burden "is not onerous." Equal Rights Ctr., 110 A.3d at 603. If a complaint's factual allegations are sufficient, "the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." Doe v. Bernabei & Wachtel, PLLC, 116 A.3d 1262, 1266 (D.C.2015) (internal quotation marks omitted) | Although the standard used for a motion to dismiss for failure to state a claim on which relief can be granted does not require detailed factual allegations, it does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation; factual allegations must be enough to raise a right to relief above the speculative level. D.C. Super. Ct. R. Civ. P. 12(b)(6). | "Does the standard demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation?" | Pretrial Procedure - Memo # 7971 - C - SS_58333.docx | ROSS-003281586-ROSS-003281587 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 8673 | Ray v. Greer, 212 N.C. App. 358 | 307A+581 | Dismissal is the most severe sanction available to the court in a civil case. See Daniels [v. Montgomery Mut. Ins. Co.], 81 N.C.App. [600,] 604, 344 S.E.2d [847,] 849 [1986)]. An underlying purpose of the judicial system is to decide cases on their merits, not dismiss parties' causes of action for mere procedural violations. See Jones v. Stone, 52 N.C.App. 502, 505, 279 S.E.2d 13, 15, disc. rev. denied, 304 N.C. 195, 285 S.E.2d 99 (1981) (holding that the trial court correctly refused to grant a motion to dismiss for failure to prosecute); Green v. Eure, Secretary of State, 18 N.C.App. 671, 672, 197 S.E.2d 599, 600 (1973) (holding that the trial court erred in dismissing plaintiff's action for failure to prosecute). In accord with this purpose, claims should be involuntarily dismissed only when lesser sanctions are not appropriate to remedy the procedural violation. See Daniels, 81 N.C.App. at 604, 344 S.E.2d at 849; Harris v. Maready, 311 N.C. 536, 551, 319 S.E.2d 912, 922 (1984). | Claims should be involuntarily dismissed for failure to prosecute or violation of court order only when lesser sanctions are not appropriate to remedy the procedural violation. Rules Civ.Proc., Rule 41(b), West's N.C.G.S.A. S 1A-1. | Should claims be involuntarily dismissed for failure to prosecute or violation of court order when lesser sanctions are not appropriate to remedy the procedural violation? | 036459.docx | LEGALEASE-00149135-LEGALEASE-00149136 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8674 | 3V v. JTS Enterprises, 40 S.W.3d 533 | 307A+581 | We are of the opinion that the notice of intent to dismiss for failure to file a final order falls within the second and third categories, which entail the authority to dismiss when a case is not prosecuted within the supreme court's guidelines and the court's inherent power to dismiss for failure to prosecute. Diligent prosecution includes not only diligent prosecution to the time of trial, but also diligence thereafter in procuring a final judgment or other final order. This goal of bringing a case through trial and to its ultimate conclusion is evident from the supreme court's own time standards which declare that a civil jury case must be disposed of within 18 months from the appearance date. See tex.R.Jud.Admin. 6. Thus, in Texas, we are concerned not only with diligence to trial but also diligence to a conclusion of the case. In this case, the very specific notice from the court satisfies this goal and at the same time informs the party exactly what it must do for the case to be retained. So, in principle, we find no fault with this notice because we conclude that it is subsumed within the category of dismissals for failure to prosecute. We choose not to, and see no reason to, penalize the court for using more specific, rather than less specific language. However, this leads us to the second question, whether the court, in this particular case, could dismiss for 3V's failure to file a final order. | Diligent prosecution includes not only diligent prosecution to the time of trial, but also diligence thereafter in procuring a final judgment or other final order. | "Does diligent prosecution include only diligent prosecution to the time of trial, or also diligence thereafter in procuring a final judgment or other final order?" | Pretrial Procedure - Memo # 8094 - C - SKG_58427.docx | ROSS-003305887-ROSS-003305888 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8675 | Quality Envtl. Processes v. Energy Dev. Corp., 218 So. 3d 1045 | 13+70 | A "step" is a formal action before the court intended to hasten the suit towards judgment or is the taking of formal discovery. A step by one party prevents abandonment as to all of the parties, even though they are not solidarily liable. DOTD v. Oilfield Heavy Haulers, 79 So.3d at 981. Our jurisprudence has uniformly held Article 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. DOTD v. Oilfield Heavy Haulers, 79 So.3d at 981"82. The purpose of La. C.C.P. art. 561 is to dismiss actions which have been abandoned, and the article provides for dismissal of those cases in which a plaintiff's inaction during a legislatively ordained period has clearly demonstrated his abandonment of the case. | The purpose of statute on abandonment of actions is to dismiss actions which have been abandoned, and the statute provides for dismissal of those cases in which a plaintiff's inaction during a legislatively ordained period has clearly demonstrated his abandonment of the case. La. Code Civ. Proc. Ann. art. 561. | Should an action be dismissed for abandonment when a plaintiff's inaction has clearly demonstrated his intent to abandon the action? | 036604.docx | LEGALEASE-00149445-LEGALEASE-00149446 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8676 | Nat'l Amusement Co. v. Wisconsin Dep't of Taxation, 41 Wis. 2d 261 | 371+2027 | It would appear that the following rule is also applicable to this case:a tax cannot be imposed without clear and express language for the purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax. " City of Plymouth v. Elsner (1965), 28 Wis.2d 102, 106, 135 N.W.2d 799, 802; and Wadhams Oil Co. v. State (1933), 210 Wis. 448, 459, 245 N.W. 646, 246 N.W. 687. | Tax cannot be imposed without clear and express language for that purpose and if ambiguity and doubt exist, it must be resolved in favor of person upon whom tax is sought to imposed. | Can a tax be imposed without clear and express language? | Taxation - Memo # 844 - C - JL_58472.docx | ROSS-003293329-ROSS-003293330 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 8677 | Bigbee v. State, 173 Ind. App. 462 | 234+46 | We hold that the amount written upon the face of a negotiable bearer instrument is competent evidence relating to its value. See, Tillery v. State (1968) 44 Ala.App. 369, 209 So.2d 432; Felkner v. State (1958) 218 Md. 300, 146 A.2d 424; State v. McClellan (1909) 82 Vt. 361, 73 A. 993; 52(A) C.J.S. Larceny s 60(2); 50 Am.Jur.2d Larceny, s 46. Cf. People v. Marques (1974) 184 Colo. 262, 520 P.2d 113. | Amount written upon face of a negotiable bearer instrument is competent evidence relating to its value in a prosecution of a defendant for theft of property worth $100 or more. IC 26-1-3-409 (1976 Ed.). | Is the amount written upon the face of a negotiable bearer instrument is competent evidence relating to its value? | 010381.docx | LEGALEASE-00150734-LEGALEASE-00150735 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 8678 | Com., Dep't of Pub. Welfare v. Sch. Dist. of Philadelphia, 49 Pa. Cmwlth. 316 | 156+85 | While the Board uses "equitable" and "promissory" estoppel as synonymous terms, in law they are not. A promissory estoppel rests upon the promise to do something in the future, whereas an equitable estoppel rests upon a statement of a present fact. Langer v. Superior Steel Corp., 105 Pa.Super. 579, 161 A. 571 (1932). Of more importance, however, is the fact that an estoppel does not Create A cause of action at law and, unless a plaintiff can first show a cause of action, estoppel will not supply one for him in an action at law. City of Pittsburgh v. Commercial Casualty Insurance Co., 106 Pa.Super. 254, 161 A. 630 (1932). | Promissory estoppel rests on promise to do something in the future, whereas equitable estoppel rests on a statement of a present fact. | "Does a promissory estoppel rest upon the promise to do something in the future, whereas an equitable estoppel rests upon a statement of present fact?" | Estoppel - Memo #32 - C - CSS_59021.docx | ROSS-003281262-ROSS-003281263 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8679 | McGuire v. Stein's Gift & Garden Ctr., 178 Wis. 2d 379 | 272+1616 | Third, the trial court concluded that res ipsa loquitur cannot apply where differing acts of negligence are alleged against multiple defendants. This is not the law. Specific negligence and res ipsa loquitur may be pled in the alternative; likewise, evidence tending to show specific acts of negligence will not automatically foreclose dependence on the doctrine Utica, 50 Wis.2d at 439, 184 N.W.2d at 69; Lecander v. Billmeyer, 171 Wis.2d 593, 603-04, 492 N.W.2d 167, 171 (Ct.App.1992). In short, specific acts of negligence and res ipsa loquitur are not per se mutually exclusive. This is so whether the claims be asserted against a single defendant or multiple defendants. | Although specific negligence and res ipsa loquitur may be pled in alternative and evidence tending to show specific acts of negligence will not automatically foreclose dependence on doctrine, res ipsa loquitur is unnecessary and its application redundant where the evidence provides full and complete explanation of event should jury choose to accept it. | Can specific negligence and res ipsa loquitur be plead in the alternative? | 023660.docx | LEGALEASE-00150520-LEGALEASE-00150521 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8680 | Laurence v. Atzenhoffer Chevrolet, 281 F. Supp. 2d 898 | 170A+675.1 | Atzenhoffer next contends that Laurence's inclusion of a claim of age discrimination precludes Laurence's ability to bring a claim under Sabine Pilot. The Court disagrees. Atzenhoffer correctly states that a plaintiff must allege that his refusal to commit an illegal act was the sole cause of his termination in order to state a claim under Sabine Pilot. Thus, it appears inconsistent to allow a plaintiff to plead both a Sabine Pilot claim and an alternative theory of wrongful discharge, such as age discrimination. However, Federal Rule of Civil Procedure 8 provides that "a party may ... state as many separate claims or defenses as the party has regardless of consistency." Fed.R.Civ.P. 8(e)(2). Although parties are barred from recovering damages based on mutually exclusive theories, see Robertson v. Bell Helicopter Textron, 32 F.3d 948, 952"53 (5th Cir.1994) (affirming a district court's dismissal of a plaintiff's Sabine Pilot claim after the plaintiff received a judgment in his favor on his retaliation claim), parties can properly plead alternative, inconsistent theories of liability and can properly argue alternative claims to the jury. See Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 674 (5th Cir.2003); Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781, 801 (5th Cir.1973), overruled on other grounds in Valdes v. Leisure Resource Group, Inc., 810 F.2d 1345, 1350 n. 3 (5th Cir.1987); see also Scott v. District of Columbia, 101 F.3d 748, 753 (D.C.Cir.1996) (citing Fredonia for the proposition that a party can argue mutually inconsistent theories of liability to a jury). Until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories. Therefore, while Laurence will only be able to succeed on one of his inconsistent theories of liability, his Sabine Pilot claim is not invalidated by the assertion of any inconsistent claims within the same pleading. | Although parties are barred from recovering damages based on mutually exclusive theories, parties can properly plead alternative, inconsistent theories of liability and can properly argue alternative claims to jury. Fed.Rules Civ.Proc.Rule 8(e)(2), 28 U.S.C.A. | Can a party plead alternative and inconsistent theories? | 023662.docx | LEGALEASE-00150568-LEGALEASE-00150569 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 8681 | Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo, 987 So. 2d 989 | 307A+581 | We cannot uphold a trial court's dismissal with prejudice based upon Rule 41(b) unless there is a "clear record of delay or contumacious conduct by the plaintiff ... and where lesser sanctions would not serve the best interests of justice." AT&T, 720 So.2d at 181(13) (ellipses omitted) (adopting the standard of dismissals with prejudice from the Fifth Circuit) (citing Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)); Guidry, 830 So.2d at 633(14). An affirmance of a dismissal with prejudice usually occurs when clear delay or contumacious conduct has been shown, and there is at least one other aggravating factor warranting the harshest of sanctions. AT&T, 720 So.2d at 181(13) (citing Rogers, 669 F.2d at 320). Aggravating factors supportive of a dismissal with prejudice are (1) delay caused by the plaintiff personally, (2) delay causing prejudice to the defendant, and (3) delay resulting from intentional conduct. Id. | Aggravating factors supportive of a trial court's dismissal with prejudice for want of prosecution are: (1) delay caused by the plaintiff personally; (2) delay causing prejudice to the defendant; and (3) delay resulting from intentional conduct. Rules Civ.Proc., Rule 41(b). | "Should it be considered whether the delay was the result of intentional conduct, when ruling on a motion to dismiss a complaint with prejudice due to want of prosecution?" | 036514.docx | LEGALEASE-00150080-LEGALEASE-00150081 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8682 | Lone Star Casino Corp. v. Full House Resorts, 796 So. 2d 1031 | 307A+584 | In Mississippi there is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct. American Tel. and Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 179 (Miss.1998). Dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and is reserved for the most egregious cases, usually where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors as set forth in Rogers v. Kroger Company, 669 F.2d 317 (5th Cir.1982). American Tel. and Tel. Co., 720 So.2d at 180. | There is no set time limit on prosecution of action once it has been filed, and dismissal for failure to prosecute will be upheld only where record shows that plaintiff has been guilty of dilatory or contumacious conduct. Rules Civ. Proc., Rule 41(b). | Is there a set time limit on prosecution of action once it has been filed? | Pretrial Procedure - Memo # 8069 - C - PB_58746.docx | ROSS-003285410-ROSS-003285411 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 8683 | Benjamin Jenkins v. Lawson, 781 So. 2d 893 | 307A+581 | Abandonment is not a punitive measure it is designed to discouragefrivolous lawsuits by preventing plaintiffs from letting them linger indefinitely. Shulver v. Slocum, 566 So.2d 1089, 1091 (La.App. 2d Cir.1990). Accordingly, unless a party to the action takes a step in the prosecution or defense of the action within three years from the time the laststep was taken by either party, the case can be dismissed on the basis of abandonment. A step in the prosecution or defense of an action occurs whenever a party takes a formal action that is intended to hasten the matter to judgment. Chevron Oil Co. v. Traigle, 436 So.2d 530, 532 (La. However, while the law does favor granting an aggrieved party his day in court, forthe following reasons we find that the interrogatories sent to Ms. Jenkins by Dr. Comb counsel failed to constitute a step in the defense of the action. | Abandonment is not a punitive measure, but is designed to discourage frivolous lawsuits by preventing plaintiffs from letting them linger indefinitely. LSA-C.C.P. art. 561. | Is abandonment designed to discourage frivolous lawsuits by preventing plaintiffs from letting them linger indefinitely? | Pretrial Procedure - Memo # 8075 - C - NE_58969.docx | ROSS-003295757-ROSS-003295758 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8684 | J.D. ex rel. Scipio-Derrick v. Davy, 415 N.J. Super. 375 | 307A+622 | The procedural posture in which this case comes to us is from the granting of the State's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 4:6"2(e). Such motions should be granted "in only the rarest of instances" and after meticulous and indulgent examination of the complaint. Printing Mart"Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772, 563 A.2d 31 (1989). "Where, however, it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is appropriate." County of Warren v. State, 409 N.J.Super. 495, 503, 978 A.2d 312 (App.Div.2009), certif. denied, 201 N.J. 153, 988 A.2d 1176, cert. denied, sub. nom. Shope v. N.J., """ U.S. """", 130 S.Ct. 3508, """ L.Ed.2d """" (2010). If dismissal is warranted, it should usually be without prejudice. Printing Mart"Morristown, supra, 116 N.J. at 772, 563 A.2d 31. However, when an equal protection challenge fails to state a claim, our courts have not hesitated to dismiss the complaint with prejudice. See, e.g., Sojourner A. v. N.J. Dep't of Human Servs., 177 N.J. 318, 324, 828 A.2d 306 (2003); Felicioni v. Admin. Office of Courts, 404 N.J.Super. 382, 391, 961 A.2d 1207 (App.Div.2008); Stubaus, supra, 339 N.J.Super. at 63, 770 A.2d 1222. Appellate review of the grant of a motion to dismiss is de novo. County of Warren, supra, 409 N.J.Super. at 504, 978 A.2d 312. | A motion to dismiss for failure to state a claim should be granted in only the rarest of instances and after meticulous and indulgent examination of the complaint; where, however, it is clear that the complaint states no basis for relief and that discovery would not provide one, dismissal of the complaint is appropriate. R. 4:6-2(e). | Can motions to dismiss for failure to state a claim upon which relief be granted should be granted in only the rarest of instances? | Pretrial Procedure - Memo # 8078 - C - RY_58972.docx | ROSS-003295025-ROSS-003295026 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8685 | Lone Star Casino Corp. v. Full House Resorts, 796 So. 2d 1031 | 307A+584 | In Mississippi there is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct.American Tel. and Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 179 (Miss.1998). Dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and is reserved for the most egregious cases, usually where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors as set forth in Rogers v. Kroger Company, 669 F.2d 317 (5th Cir.1982). American Tel. and Tel. Co., 720 So.2d at 180. These aggravating factors have been held to specifically include the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct. Id. Following these standards, the question for this Court is whether the conduct of Lone Star can be said to clearly constitute dilatory or contumacious conduct. | There is no set time limit on prosecution of action once it has been filed, and dismissal for failure to prosecute will be upheld only where record shows that plaintiff has been guilty of dilatory or contumacious conduct. Rules Civ. Proc., Rule 41(b). | Is there is no set time limit on the prosecution of an action once it has been filed? | 036812.docx | LEGALEASE-00150142-LEGALEASE-00150143 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8686 | Total Auctions & Real Estate v. S. Dakota Dep't of Revenue & Regulation, 888 N.W.2d 577 | 307A+622 | We review the dismissal of a complaint for failure to state a claim de novo. Nooney v. StubHub, Inc., 2015 S.D. 102, 9, 873 N.W.2d 497, 499. "We ... accept the material allegations as true and construe them in a light most favorable to the pleader to determine whether the allegations allow relief." Sisney v. Best Inc., 2008 S.D. 70, 8, 754 N.W.2d 804, 809. "A complaint need only contain a short plain statement of the claim showing the pleader is entitled to relief and a demand for judgment for the relief to which the pleader deems himself entitled." Nooney, 2015 S.D. 102, 9, 873 N.W.2d at 499 (citing SDCL 15"6"8(a); Gruhlke v. Sioux Empire Fed. Credit Union, Inc., 2008 S.D. 89, 17, 756 N.W.2d 399, 409). Detailed factual allegations are not required, but the complaint "must contain more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Id. (citing Gruhlke, 2008 S.D. 89, 17, 756 N.W.2d at 409). Ultimately, "where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(5) is appropriate." Sisney v. State, 2008 S.D. 71, 8, 754 N.W.2d 639, 643. | Ultimately, where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal for failure to state a claim is appropriate. SDCL S 15-6-12(b)(5). | "Where the allegations show on the face of the complaint there is some insuperable bar to relief, is dismissal for failure to state a claim appropriate?" | 036828.docx | LEGALEASE-00150300-LEGALEASE-00150301 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8687 | Cent. Nebraska Pub. Power & Irr. Dist. v. N. Platte Nat. Res. Dist., 280 Neb. 533 | 307A+679 | And the failure to allege particular facts supporting its claimed injuries is also fatal to Central's broader allegations that the ground water use permitted by the NRD is causing the "destruction of Lake McConaughy" and "unreasonably causing harm to Central, and to all of the uses described in the [petition]." This is a legal conclusion more than a factual allegation. For purposes of a motion to dismiss, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. A court is not obliged to accept as true a legal conclusion couched as a factual allegation. A pleader's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions. Nor does a pleading suffice if it tenders naked assertion, devoid of further factual enhancement. | On a motion to dismiss for failure to state a claim, a court is not obliged to accept as true a legal conclusion couched as a factual allegation. | "For purposes of a motion to dismiss, is a court obliged to accept as true a legal conclusion couched as a factual allegation?" | 037049.docx | LEGALEASE-00150377-LEGALEASE-00150378 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8688 | Stephens v. Bay Med. Ctr., 742 So. 2d 297 | 307A+581 | Dismissal for failure to prosecute in the present case would not serve the purpose for which Florida Rule of Civil Procedure 1.420(e) exists. The rule is "designed to relieve the judiciary of concern for inactive litigation." See H.G. Smith v. St. George Island Gulf Beaches, Inc., 343 So.2d 847 (Fla. 1st DCA 1976). | Rule governing dismissal for failure to prosecute is designed to relieve the judiciary of concern for inactive litigation. West's F.S.A. RCP Rule 1.420(e). | "Is the rule governing dismissal for failure to prosecute, designed to relieve the judiciary of concern for inactive litigation?" | 037097.docx | LEGALEASE-00150710-LEGALEASE-00150711 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 8689 | Klickitat Cty. v. Columbia River Gorge Comm'n, 770 F. Supp. 1419 | 149E+575 | It is clear to the court that the Forest Service does not have to prepare an Environmental Impact Statement (EIS) or an Environmental Assessment (EA) in their preparation of the draft management plan. They are specifically exempted from these obligations under 16 U.S.C. 544o(f)(1). Although the plaintiffs originally took the position that notwithstanding the exemption from NEPA, the Forest Service still had to prepare an EIS under the NFMA, they now concede that under the terms of the Gorge Act, an EIS is not required under either NFMA or NEPA. | Under terms of Columbia Gorge National Scenic Area Act, Forest Service was not required to prepare an environmental impact statement or an environmental assessment under either the National Forest Management Act (NFMA) or the National Environmental Policy Act (NEPA) in its preparation of draft management plan nor did the Service have to conduct a study of alternatives under NEPA or NFMA. Columbia River Gorge National Scenic Area Act, S 17(f)(1), 16 U.S.C.A. S 544o (f)(1); National Environmental Policy Act of 1969, S 102, 42 U.S.C.A. S 4332. | Is the Forest Service require to prepare an Environmental Impact Statement (EIS) or an Environmental Assessment (EA) in their preparation of the draft management plan? | Woods and Forest - Memo 27 - ANM_59076.docx | ROSS-003282918-ROSS-003282919 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 8690 | Arbaugh v. Procter & Gamble Mfg. Co., 80 Cal. App. 3d 500 | 413+2142.20 | The reason for distinguishing such cases is not difficult to discern. In most third party suits, the employee has also made a claim for workers' compensation benefits from his employer, which benefits figure prominently in the determination of how damages should be allocated among the respective parties. Workers' compensation benefits are the product of a statutory system of employer liability not dependent upon proof of fault. (Cal.Const., art. 14, s 4.) With certain exceptions not here relevant, an injured employee's only remedy against his employer is a claim for workers' compensation; thus, the employer is generally immune from tort liability. (Lab.Code, s 3601, subd. (a).) Furthermore, unless there is a written agreement to the contrary, an employer is not obligated to indemnify a third party who has been found liable to an employee who was injured as the result of the joint negligence of the employer and the third party. (Lab.Code, s 3864.) The adoption of comparative negligence in Li did not alter this last rule. (E. B. Wills Co. v. Superior Court (1976) 56 Cal.App.3d 650, 128 Cal.Rptr. 541.) | Unless there is a written agreement to contrary, an employer covered by workmen's compensation is not obligated to indemnify a third party who has been found liable to employee injured as a result of the joint negligence of the employer and the third party. West's Ann.Labor Code, SS 3601(a), 3864. | Is a claim for workers' compensation an injured employee's only remedy against his employer? | 048422.docx | LEGALEASE-00150162-LEGALEASE-00150163 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8691 | Bueker v. Madison Cty., 2016 IL 120024 | 307A+679 | Plaintiffs' claim against RLI was dismissed pursuant to section 2"615 of the Code (735 ILCS 5/2"615 (West 2014)). A section 2"615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). Our review of an order granting or denying a section 2"615 motion to dismiss is de novo. Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. The allegations of the complaint will be construed in the light most favorable to the plaintiff, and a cause of action should not be dismissed "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." Marshall, 222 Ill.2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048. | In reviewing the sufficiency of a complaint, courts accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. | "In reviewing the sufficiency of a complaint, do courts accept as true all well-pleaded facts and all reasonable inferences that can be drawn from those facts?" | Pretrial Procedure - Memo # 8453 - C - TJ_59152.docx | ROSS-003280356-ROSS-003280357 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 8692 | Crowell v. Cox, 525 S.W.3d 578 | 307A+679 | We review the grant of a motion to dismiss de novo and will affirm the dismissal on any meritorious ground stated in the motion. Vogt v. Emmons, 158 S.W.3d 243, 247 (Mo. App. 2005). In reviewing the petition to determine if it states a claim, we accept the allegations in the petition as true and grant the plaintiffs all reasonable inferences from those allegations. Campbell v. Cty. Comm'n of Franklin Cty., 453 S.W.3d 762, 767 (Mo. banc 2015). We do not weigh the factual allegations to determine their credibility or persuasiveness. Bromwell v. Nixon, 361 S.W.3d 393, 398 (Mo. banc 2012). Rather, we review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Id. (citation omitted) | In addressing a motion to dismiss for failure to state a claim, the circuit court is to review the petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. | "In reviewing the petition to determine if it states a claim, do courts accept the allegations in the petition as true?" | 037210.docx | LEGALEASE-00150908-LEGALEASE-00150909 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8693 | Belcher Ctr. LLC v. Belcher Ctr., 883 So. 2d 338 | 307A+561.1 | When considering an order granting a motion to dismiss, the de novo standard of review applies. Al-Hakim v. Holder, 787 So.2d 939, 941 (Fla. 2d DCA 2001). On a motion to dismiss for failure to state a cause of action, a trial court is confined to the four corners of the complaint, and the material allegations of the complaint must be taken as true. Davidson v. Iona-McGregor Fire Prot. & Rescue Dist., 674 So.2d 858, 859 (Fla. 2d DCA 1996). If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. Value Rent-A-Car, Inc. v. Grace, 794 So.2d 619, 621 (Fla. 2d DCA 2001). | If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. | Is the court required to consider matters outside of the four corners of the complaint? | 037268.docx | LEGALEASE-00150828-LEGALEASE-00150829 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 8694 | Whetstone v. Sooter, 325 Ill. App. 3d 225 | 307A+561.1 | The purpose of a section 2-619 motion to dismiss is to provide a means to dispose of issues of law or easily proved issues of fact. Noesges v. Servicemaster Co., 233 Ill.App.3d 158, 162, 174 Ill.Dec. 240, 598 N.E.2d 437 (1992). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim. Joseph v. Collis, 272 Ill.App.3d 200, 206, 208 Ill.Dec. 604, 649 N.E.2d 964 (1995). The motion should be granted if, after construing the documents in support and in opposition to the motion in the light most favorable to the nonmoving party, there are no disputed issues of material fact. Noesges, 233 Ill.App.3d at 162, 174 Ill.Dec. 240, 598 N.E.2d 437. A reviewing court is not required to defer to the trial court's judgment on a motion to dismiss and will review the matter de novo. T & S Signs, Inc. v. Village of Wadsworth, 261 Ill.App.3d 1080, 1084, 199 Ill.Dec. 467, 634 N.E.2d 306 (1994). | Motion for an involuntary dismissal based upon defects in pleading or certain defenses should be granted if, after construing the documents in support and in opposition to the motion in the light most favorable to the nonmoving party, there are no disputed issues of material fact. S.H.A. 735 ILCS 5/2-619. | Should a motion for an involuntary dismissal be granted if there are no disputed issues of material fact? | Pretrial Procedure - Memo # 8533 - C - TJ_59212.docx | ROSS-003323637-ROSS-003323638 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8695 | Louzoun v. Moss, 139 A.D.3d 680 | 307A+622 | "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages but for the lawyer's negligence" (Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d at 442, 835 N.Y.S.2d 534, 867 N.E.2d 385; see Keness v. Feldman, Kramer & Monaco, P.C., 105 A.D.3d 812, 813, 963 N.Y.S.2d 313; Marino v. Lipsitz, Green, Fahringer, Roll, Salibury & Cambria LLP, 87 A.D.3d at 566, 928 N.Y.S.2d 462; Wray v. Mallilo & Grossman, 54 A.D.3d 328, 329, 863 N.Y.S.2d 228). "[A] plaintiff must plead and prove actual, ascertainable damages as a result of an attorney's negligence" (Dempster v. Liotti, 86 A.D.3d at 177, 924 N.Y.S.2d 484; see Wray v. Mallilo & Grossman,54 A.D.3d at 329, 863 N.Y.S.2d 228; Marino v. Lipsitz, Green, Fahringer, Roll, Salibury & Cambria LLP, 87 A.D.3d at 566, 928 N.Y.S.2d 462). "Conclusory allegations of damages or injuries predicated on speculation cannot suffice for a malpractice action, and dismissal is warranted where the allegations in the complaint are merely conclusory and speculative" (Bua v. Purcell & Ingrao, P.C., 99 A.D.3d 843, 848, 952 N.Y.S.2d 592 [citations omitted]; see Financial Servs. Veh. Trust v. Saad, 137 A.D.3d 849, 27 N.Y.S.3d 584; Dempster v. Liotti, 86 A.D.3d at 177, 924 N.Y.S.2d 484; Hashmi v. Messiha, 65 A.D.3d 1193, 1195, 886 N.Y.S.2d 712; Riback v. Margulis, 43 A.D.3d 1023, 1023, 842 N.Y.S.2d 54). | Conclusory allegations of damages or injuries predicated on speculation cannot suffice for legal malpractice action, and dismissal is warranted where the allegations in the complaint are merely conclusory and speculative. | Can conclusory allegations of damages or injuries predicated on speculation suffice for a malpractice action? | Pretrial Procedure - Memo # 8560 - C - KG_59357.docx | ROSS-003326274-ROSS-003326275 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8696 | Nicholos v. Cashelard Rest., 249 A.D.2d 187 | 307A+581 | A case that has been marked off or stricken from the calendar and has not been restored within one year is deemed abandoned under CPLR 3404 (see, Weiss v. City of New York, 247 A.D.2d 239, 669 N.Y.S.2d 33; Syndicate Build. Corp. v. Lorber, 193 A.D.2d 506, 507, 597 N.Y.S.2d 372). However, the presumption of abandonment may be rebutted by proof of litigation actually in progress (Syndicate Bldg. Corp. v. Lorber, supra at 507, 597 N.Y.S.2d 372; Rodriguez v. Middle Atl. Auto Leasing, 122 A.D.2d 720, 721, 511 N.Y.S.2d 595, appeal dismissed 69 N.Y.2d 874, 514 N.Y.S.2d 723, 507 N.E.2d 317). | Case that has been marked off or stricken from the calendar and has not been restored within one year is deemed abandoned; however, the presumption of abandonment may be rebutted by proof of litigation actually in progress. McKinney's CPLR 3404. | "Is a case that has been marked off or stricken from the calendar and has not been restored within one year, deemed abandoned?" | 037398.docx | LEGALEASE-00151270-LEGALEASE-00151271 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8697 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326 | 308+92(1) | It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. These facts are necessarily inquirable into by a Court and jury; and this inquiry is not confined to written instruments, (to which alone the principle contended for could apply,) but to any act with, or without writting, within the scope of the power or confidence reposed in the agent; as, for instance, in the case of money credited in the books of a teller, or proved to have been deposited with him, though he omits to credit it. | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | Does the liability of the principal depend on whether the act of the agent was done within the limits of the powers delegated? | Principal and Agent - Memo 167 - KC_59449.docx | ROSS-003279099-ROSS-003279100 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 8698 | Clark v. Fry, 8 Ohio St. 358 | 231H+3030 | Where the relation of master and servant, or that of principal and agent, exists, there is no difficulty in ascertaining the rule of liability, and the ground upon which it rests, in case of an injury done by the servant or agent while in the exercise of his employment. The liability of the master to answer for the conduct of his servant, or that of the principal for the conduct of his agent, is founded on the superintendence and control which the master is supposed to exercise over his servant, or the principal over his agent. 1 Bla. Com. 431. By the civil law, that liability was confined to the person standing in the relation of paterfamilias to the person doing the injury. And although by the common law, the rule of liability has been extended to cases where the agent is not a mere domestic, yet the principle and the reason upon which it rests is the same. This rule of respondeat superior, as its terms import, arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, whether between principal and agent or master and servant, and is co-extensive with it, and ceases where the relation itself ceases to exist. It is founded on the power of control and direction which the superior has a right to exercise, and which, for the safety of other persons, he is bound to exercise over the acts of his subordinates, and in strict analogy to the liability ex contractu upon the maxim qui facit per alium facit per se. The direct coincidence and coexistence of the rule of respondeat superior with the relation to which it belongs, is an unvarying test of its application. Quarman v. Burnett et al., 6 M. and W. 497. | The rule of respondeat superior, as its terms import, arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, whether between principal and agent, or master and servant, is coextensive with it, and ceases where the relation itself ceases. | Does the rule of respondeat superior cease when the relation ceases? | 041455.docx | LEGALEASE-00151254-LEGALEASE-00151255 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8699 | Watkins Strategy & Res. Grp. v. WLC, 433 F. Supp. 2d 778 | 118A+276 | Alternatively, Watkins Strategy urges that even if the Court can consider a parallel federal court action when analyzing the first Trejo factor, the first-to-file rule should preclude dismissal of this case. The first-to-file rule is generally applicable where two cases with substantially overlapping issues are pending in two federal courts. Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir.1999). Under the rule, the court where the earlier filed action is lodged is the preferred forum. Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir.1997). However, an exception to the general rule arises "where a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant." Am. Reliable Ins. Co. v. Arrington, 269 F.Supp.2d 758, 760 (S.D.Miss.2003) (Lee, C.J.).Watkins Strategy has admitted that it filed the Mississippi action anticipating that Learning Together would file suit in North Carolina. Therefore, the exception to the first-to-file rule recognized in Arrington applies in this case and thereby precludes application of the rule. | An exception to the first-to-file rule arises where a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant, and a party need not demonstrate "compelling circumstances" under this exception. | Is there an exception to the first filed rule when a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant? | 008033.docx | LEGALEASE-00151508-LEGALEASE-00151509 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8700 | Doe v. Brown Univ., 210 F. Supp. 3d 310 | 141E+1166 | However, "[b]ecause contracts for private education have unique qualities, we must construe them in a manner that leaves the school administration broad discretion to meet its educational and doctrinal responsibilities." Gorman v. St. Raphael Acad., 853 A.2d 28, 34 (R.I. 2004); see also Schaer v. Brandeis Univ., 432 Mass. 474, 735 N.E.2d 373, 381 (2000) ("[C]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities. ... "A college must have broad discretion in determining appropriate sanctions for violations of its policies." " (quoting Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 445 N.E.2d 136, 139 (1983))).Therefore, the rules set out in a university's handbook are "enforceable as long as [they are] not against public policy or law." Gorman, 853 A.2d at 39. A rule "violates public policy only if it is: "[1] injurious to the interests of the public, [2] interferes with the public welfare or safety, [3] is unconscionable; or [4] tends to injustice or oppression." " Id. (quoting City of Warwick v. Boeng Corp., 472 A.2d 1214, 1218 (R.I. 1984)). Courts may also "provid[e] a judicial remedy to members of private voluntary organizations aggrieved by the arbitrary and capricious application of otherwise reasonable rules by the officers of those organizations." King v. Grand Chapter of Rhode Island Order of E. Star, 919 A.2d 991, 998 (R.I. 2007). | Under Rhode Island law, because contracts for private education have unique qualities, courts must construe them in a manner that leaves the school administration broad discretion to meet its educational and doctrinal responsibilities. | Does a college have broad discretion to meet its educational and doctrinal responsibilities? | 016705.docx | LEGALEASE-00151473-LEGALEASE-00151475 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8701 | Triangle Candy Co. v. United States, 144 F.2d 195 | 18+12 | This is an appeal by defendants and appellants, Triangle Candy Company, a corporation, and Bernard G. Kennepohl, from judgments rendered against them after appellants were found guilty on six counts of violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. " 331(a) prohibiting "the introduction into or delivery for introduction into interstate commerce of any food, drug, device or cosmetic that is adulterated or misbranded. | Evidence supports District Court's judgment finding defendants guilty of violating Federal Food, Drug, and Cosmetic Act by introducing into interstate commerce candy physically adulterated with filth or manufactured under conditions proscribed by such act. Federal Food, Drug, and Cosmetic Act, SS 301(a), 402(a) (3, 4), 21 U.S.C.A. SS 331(a), 342(a) (3, 4). | "Is there an act that prohibits the introduction of any food, drug, device or cosmetic into interstate commerce making it adulterated?" | Adulteration- Memo 64-S_1U45Ue6HTcre7sv0CSQMpbR46nODWzzac.doc | ROSS-000000150-ROSS-000000151 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8702 | Waters v. Waters, 498 S.W.2d 236 | 83E+401 | A promissory note can lawfully be transferred without a written assignment or an endorsement of the legal owner and holder thereof. 11 Am.Jur. 2d, Bills and Notes, secs. 369 and 373; First National Bank in Dallas v. Lampman, 442 S.W.2d 858 (Tex.Civ.App., Eastland, 1969, writ ref., n.r.e.); West v. Citizens State Bank of Wheeler, 140 S.W.2d 868 (Tex.Civ.App., Amarillo, 1940, dismissed, judgment correct); Security Nat. Bank v. Morgan, 245 S.W. 455 (Tex.Civ.App., Dallas, 1922, writ ref.). It has been held under the old "negotiable instrument act," that an endorsement on note by payee or writing attached thereto was unnecessary to vest title thereto in the owner and holder. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951); Warren v. Schawe, 163 S.W.2d 415 (Tex.Civ.App., Austin, 1942, writ ref.); Goodrich v. First Nat. Bank in Hemphill, 70 S.W.2d 609 (Tex.Civ.App., Beaumont, 1934, writ ref.); Clark v. Gurley, 48 Tex.Civ.App., 274, 106 S.W. 394 (1907, n.w.h.). The "negotiable instrument act" was repealed and is now a part of the "Business and Commercial Code." Under Sec. 3.201, Vol. 2, Business and Commerce Code, V.T.C.A., which deals with "transfer" and "right to endorsement," is found this statement. | A promissory note can lawfully be transferred without a written assignment or an endorsement of the legal owner and holder thereof. V.T.C.A., Bus. & C. S 3.201(c). | Can a promissory note be transferred without a written assignment or endorsement of the legal owner and holder? | Bills and Notes - Memo 632 - RK_59536.docx | ROSS-003284291-ROSS-003284292 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 8703 | Thatcher v. Merriam, 121 Utah 191 | 83E+408 | Referring now to plaintiffs' second point, that the instrument of assignment was ineffective because of retention of possession of the note and deed of trust by Livingston, it appears that that contention is opposed to the great weight of authority and cannot be reconciled with the views expressed by this court in the case of Johnson v. Beickey, 64 Utah 43, 228 P. 189, 191. In that case a note had been pledged by the payee to a bank to secure a debt of the payee. He thereafter excuted and delivered to another party, to whom he was indebted, a writing by which he assigned all his right in the note. Before the note was collected by the bank, a garnishment was served upon it, by which a third creditor of the payee attempted to attach his interest in the note. There was a surplus of proceeds of the note, above the amount owing the bank, and the suit was between the garnishing creditor and the assignee named in the assignment. It was contended there, as here, that the assignment by a separate writing without delivery of the instrument was inoperative. This court held otherwise, quoting with approval the following from 8 Cyc. p. 383: "Like an ordinary chose in action, a bill or note may be transferred by assignment or by mere delivery with the usual incidents of such a transfer, and this rule is not changed by the negotiable instrument law. It may be formal or informal; it may be by a separate instrument, or in the absence of a statute to the contrary, by parol." (Italics added.) See to same effect 8 C.J. 383, " 568; 10 C.J.S., Bills and Notes, " 227, p. 719. | Like an ordinary chose in action a bill or note may be transferred by assignment or by mere delivery with usual incidents of such a transfer, notwithstanding the Negotiable Instrument Law. U.S.C.A. 1943, 61-1-17, 61-1-33, 61-4-1. | Can a note be transferred like an ordinary chose in action? | Bills and Notes - Memo 938 - RK_59640.docx | ROSS-003278972-ROSS-003278973 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8704 | Ward v. Stanford, 443 S.W.3d 334 | 8.30E+282 | A promissory note is a negotiable instrument if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer. A note is non-negotiable, however, if another instrument must be examined to determine the rights and obligations under the note. See Tex. Bus. & Com.Code Ann. " 3.106(a) (West Supp.2013); FFP Mktg. Co., 169 S.W.3d at 408"09. | A promissory note is a negotiable instrument if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer; a note is non-negotiable, however, if another instrument must be examined to determine the rights and obligations under the note. | When is a promissory note a negotiable instrument ? | Bills and Notes-Memo 1025 - SB_60151.docx | ROSS-003295065 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 8705 | First Pyramid Life Ins. Co. of Am. v. Reed, 247 Ark. 1003 | 200+29(1) | Arkansas Statutes Annotated s 76"902 (Repl. 1957) requires that a petition to open a county road be signed by at least 10 freeholders of the county. This is a proceeding provided by Ark.Stat.Ann. ss 76"901"915 (Repl. 1957) (parts of Act 26 of 1871, as amended). The county court can only acquire jurisdiction of a proceeding under these sections when there is strict compliance with the requirements of the act relating to the signing of the petition. Rust v. Kocourek, 130 Ark. 39, 196 S.W. 938; Polk v. Road Improvement District No. 2, 123 Ark. 334, 185 S.W. 453; Howard v. State, 47 Ark. 431, 440, 2 S.W. 331. Since this was not the case here, neither the county court, the circuit court, nor this court has jurisdiction to pass upon the merits of the case. | County court can acquire jurisdiction of statutory proceeding to open county road only when there is strict compliance with requirements of statutes relating to signing of petition. Ark.Stats. SS 76-901 to 76-915, 76-902. | When can a county court acquire jurisdiction of a proceeding regarding a petition to open a county road? | 018746.docx | LEGALEASE-00151662-LEGALEASE-00151663 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8706 | Pac. Ins. Co. v. Botelho, 891 So. 2d 587 | 307A+561.1 | The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000). Unlike a motion for summary judgment, when ruling on a motion to dismiss, "[a] court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations." Barbado, 758 So.2d at 1174; see also Patriotcom, Inc. v. Vega, 821 So.2d 1261 (Fla. 4th DCA 2002). Further, a motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. Ramos v. Mast, 789 So.2d 1226 (Fla. 4th DCA 2001); Beach Roundhouse Town Corp. v. Skinner, 356 So.2d 881 (Fla. 3d DCA 1978). | A motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. | Can a motion to dismiss be granted based on an affirmative defense unless the defense appears upon the face of a pleading? | 037437.docx | LEGALEASE-00151723-LEGALEASE-00151724 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8707 | Sarkis v. Pafford Oil Co., 697 So. 2d 524 | 30+3284 | We begin our analysis with a statement of the applicable standards in the trial court and in this court. When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the allegations of a complaint as true. Snow v. Byron, 580 So.2d 238 (Fla. 1st DCA 1991); Shahid v. Campbell, 552 So.2d 321 (Fla. 1st DCA 1989). Likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint. Higgs v. Florida Department of Corrections, 647 So.2d 962 (Fla. 1st DCA 1995); McKinney"Green Inc. v. Davis, 606 So.2d 393 (Fla. 1st DCA 1992). Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review. | Because issue of whether complaint is sufficient to state cause of action is issue of law, ruling on motion to dismiss for failure to state cause of action is reviewable on appeal by de novo standard of review. | "Is whether a complaint is sufficient to state a cause of action an issue of law, on motion to dismiss?" | Pretrial Procedure - Memo # 8781 - C - SJ.docx | LEGALEASE-00041572-LEGALEASE-00041573 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8708 | U.S. v. Parga-Rosas, 238 F.3d 1209 | 24+794 | Even though it need not be pled, "entry" may nevertheless become an important element of proof that an alien has been "found in" the United States in some cases, primarily those involving an apprehension at the border. In such cases, the alien may physically be present in the United States yet be deemed not to have "entered" if he is still under official restraint at the time he is found. This stems from the legal fiction that entry is not accomplished until a person is free from official restraint. Thus, "[a]n alien's mere physical presence on United States soil ... is insufficient to convict him of being found in the United States in violation of 8 U.S.C. " 1326. Rather, the government must also establish that the alien entered the United States free from official restraint at the time officials discovered or apprehended him." United States v. Ruiz"Lopez, 234 F.3d 445, 448 (9th Cir.2000) (citations omitted). Pacheco"Medina perfectly illustrates the principle. Video surveillance detected Pacheco climbing a fence at the border. An agent responded immediately, Pacheco started to run, and he was captured within a few yards. He was prosecuted for a "found in" offense. But, as we explained, for him "[t]he bad news was that, because he was never free from official restraint, he did not get in. The good news was that, because he was never free from official restraint, he did not commit the crime of being found in the United States." 212 F.3d at 1166. For this reason, the evidence was insufficient to convict. See also Ruiz"Lopez, 234 F.3d at 449 (reversing for insufficiency of the evidence to prove that alien was free *1214 from official restraint during border encounter). | Even though it need not be pled, "entry" may become important element of proof in prosecution for being deported alien "found in" United States, primarily in those cases involving apprehension at border. Immigration and Nationality Act, S 276, 8 U.S.C.A. S 1326. | Can an alien be present in the United States yet be deemed not to have entered? | "Aliens, Immigration and Citizenship - Memo 39 - RK_60126.docx" | ROSS-003308574-ROSS-003308575 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 8709 | Eby v. Reb Realty, 495 F.2d 646 | 172H+1322 | The Truth in Lending Act is a remedial statute designed as much as possible to permit borrowers to make informed judgments about the use of credit. To effectuate this congressional purpose requires that the Act's terms be liberally construed. See N.C.Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir.), cert. denied 414 U.S. 827, 94 S.Ct. 38 L.Ed.2d 61 (1973); Gardner & North Roofing & Siding Corp. v. Board of Governors, 150 U.S. App.D.C. 329, 464 F.2d 838, 841 (1972). | Truth in Lending Act is remedial statute designed as much as possible to permit borrowers to make informed judgments about use of credit, and as such should be liberally construed. Truth in Lending Act, SS 1-145, 15 U.S.C.A. SS 1601-1665. | Is the Truth in Lending Act be liberally construed? | Consumer Credit - Memo 132-IS_59669.docx | ROSS-003308754-ROSS-003308755 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 8710 | Andrews v. Chevy Chase Bank, 545 F.3d 570 | 172H+1552 | Rescinding a loan transaction under TILA " "requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement." " Handy v. Anchor Mortgage Corp., 464 F.3d 760, 765 (7th Cir.2006) (quoting Barrett v. JP Morgan Chase Bank, N.A., 445 F.3d 874, 877 (6th Cir.2006)). TILA rescission is therefore considered a purely personal remedy. See, e.g., McKenna, 475 F.3d at 424"25; James, 621 F.2d at 731; LaLiberte, 53 Cal.Rptr.3d at 750"51. It is intended to operate privately, at least initially, "with the creditor and debtor working out the logistics of a given rescission." McKenna, 475 F.3d at 421; see also Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.2005). Section 1635 sets forth certain deadlines and duties that apply to the creditor upon receipt of a notice of rescission from the debtor (e.g., return of earnest money, down payment, or other payments, and initiating the termination of the security interest); the statute, in turn, specifies the duties that apply to the debtor (e.g., tendering return of the property or its reasonable value). See " 1635(b). These procedures apply "except when otherwise ordered by a court," making it clear that when disagreements over the particulars of a given rescission arise, the court may tailor the remedy to the circumstances. | Truth in Lending Act (TILA) rescission is a purely personal remedy intended to operate privately, at least initially, with the creditor and debtor working out the logistics of a given rescission. Truth in Lending Act, S 125, 15 U.S.C.A. S 1635. | Is rescission a purely personal remedy intended to operate privately? | 013841.docx | LEGALEASE-00152433-LEGALEASE-00152434 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 8711 | Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114 | 172H+1341 | TILA entrusts the Federal Reserve Board with implementation of the Act, and the agency has imposed "even more precise" disclosure requirements via Regulation Z. Virachack v. Univ. Ford, 410 F.3d 579, 581 (9th Cir.2005); see also Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 238, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004) ("Congress has expressly delegated to the Board the authority to prescribe regulations containing "such classifications, differentiations, or other provisions' as, in the judgment of the Board, "are necessary or proper to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." " (quoting 15 U.S.C. " 1604(a))) (alteration in original). Courts must defer to the decisions of the Federal Reserve Board and cannot apply "[t]he concept of "meaningful disclosure" that animates TILA ... in the abstract." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); see also Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) ("[A]bsent some obvious repugnance to the statute, ... [Regulation Z] should be accepted by the courts, as should the Board's interpretation of its own regulation."). | Courts must defer to the decisions of the Federal Reserve Board with respect to TILA's disclosure requirements and cannot apply the concept of meaningful disclosure that animates TILA in the abstract. Truth in Lending Act, S 105(a), 15 U.S.C.A. S 1604(a). | Can courts apply the concept of meaningful disclosure that animates TILA in the abstract? | Consumer Credit -Memo 98-SB.docx | LEGALEASE-00041892-LEGALEASE-00041893 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8712 | Davis v. Wayne Cty. Court, 38 W. Va. 104 | 316H+187 | In the case of List v. City of Wheeling, 7 W. Va. 501, Judge Haymond, in construing section 8, art. 10, of the constitution, holds that "it was not intended to and does not in any wise interfere with or prevent the levying, collecting, and expenditure of taxes annually by authority of law by the proper legal authorities of the counties, and to do and cause to be done whatever is necessary for that purpose, including the making and causing to be made contracts touching the disbursement of the taxes levied and collected annually and the like, and all this without a vote being taken." This construction has been since approved in the cases of Brannon v. County Court, 33 W. Va. 789, 11 S. E. 34, and Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S.E. 279. In the latter case it was held that the "term "indebtedness' includes every kind of indebtedness, no matter in what manner created, or voluntarily brought about." The constitution plainly forbids the contraction of any debt for any purpose "unless all questions connected with the same shall have been first submitted to a vote of the people, and have received three"fifths of all the votes cast for and against the same;" and it must be presumed that the legislature had this provision of the constitution in mind when it passed the law before quoted, and expected the county court, before creating any indebtedness under it, to comply with the constitutional requirements. The county court may expend the current revenues and accrued funds, and make contracts looking to that end, as that which the court may have the means of paying, either in the treasury or by the current fiscal levy, is not the contraction of debt within the meaning of the constitution, but is merely the appropriation and application of the annual income of the county to the legitimate purposes for which it was accumulated and levied. But where the county authorities attempt to or do bind, without a proper vote of the people, the levies of future years in any manner or for | A county court cannot bind the levies of future years to pay for improvements on roads and bridges without first submitting all questions in relation thereto to a vote of the people, as required by Const. art. 10, S 8; and a contractor is charged with notice of the limitation of the county court's powers, and, if he works under an unauthorized contract of payment out of levies of future years, he cannot recover in an action of assumpsit, or compel the court by mandamus to lay a levy for payment thereof, even though the court has issued certificates, orders, or evidences of debt. | Can county authorities bind the levies of future years to pay for improvements? | 018763.docx | LEGALEASE-00152515-LEGALEASE-00152516 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8713 | Norfolk & W. Ry. Co. v. Gee, 104 Va. 806 | 320+305(1) | In Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496, where numerous cases are cited and the question quite fully discussed, the horse of a traveler took fright at a small barrel mounted on wheels, which the owners of the property through which the highway ran were using in whitewashing their fences, and which they moved from time to time as the work progressed. They left it standing covered over with a white cloth, and having a shovel projecting a short distance above the top, all day Sunday on one side of the beaten highway track. In an action for damages thus caused it was held that unless there was something of an unusual or extraordinary character in the structure and appearance of the apparatus, which would naturally tend to frighten horses of ordinary gentleness and training, it was not negligence to use it; and its reasonable use for no longer a time than was naturally required on the highway in whitewashing the fence of defendants would not subject them to liability, although some horses might and did take fright at seeing it. | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | "Can liability be subjective if one uses apparatus of an unusual, and extraordinary character in a highway, and if it frightens the horse?" | 019130.docx | LEGALEASE-00152637-LEGALEASE-00152638 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 8714 | Adams v. USAA Cas. Ins. Co., 317 S.W.3d 66 | 307A+680 | We next consider the court's ruling as to Plaintiffs' conspiracy-to-commit fraud count, treating it as a grant of a motion to dismiss. George Ward Builders, Inc., 157 S.W.3d at 646. A motion to dismiss for failure to state a claim upon which relief can be granted is a challenge to the sufficiency of the petition. Chochorowski, 295 S.W.3d at 197. Upon review, we assume all pleaded facts are true, giving the pleadings their broadest intendment and construing all allegations favorable to the plaintiff. Id. It is not our function to weigh the allegations to determine their credibility or persuasiveness. Id. Rather, we review the petition almost academically to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that could be brought in the case. Id. Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. Id. | Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. | Is a determination of factual questions or whether the party is entitled to relief on the merits not appropriate on a motion to dismiss? | Pretrial Procedure - Memo # 8756 - C - TJ_59760.docx | ROSS-003279719-ROSS-003279720 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8715 | Schaffner v. 514 W. Grant Place Condo. Ass'n, 324 Ill. App. 3d 1033 | 307A+680 | Whether the evidence of mutual mistake is sufficient is decided at trial, not at the motion to dismiss stage. See Ballard, 90 Ill.App.3d at 16, 45 Ill.Dec. 485, 412 N.E.2d 1067. Defendants at trial must prove, by clear and convincing evidence, the existence of the mutual mistake. LaSalle National Bank v. 850 DeWitt Condominium Association, 257 Ill.App.3d 540, 543, 196 Ill.Dec. 159, 629 N.E.2d 704 (1994). | Whether the evidence of mutual mistake is sufficient for reformation of the instrument is decided at trial, not at the motion to dismiss stage. | "Is whether the evidence of mutual mistake is sufficient for reformation of the instrument decided at trial, not at the motion to dismiss stage?" | 037759.docx | LEGALEASE-00151891-LEGALEASE-00151892 | Order, SA | 0.65 | 1 | 0 | 0 | 1 | |
| 8716 | Murillo v. Page, 294 Ill. App. 3d 860 | 307A+680 | A review of a motion to dismiss requires this court to determine whether a complaint, when viewed in the light most favorable to plaintiff, alleges sufficient facts to establish a cause of action upon which relief may be granted. Bivin v. Wright, 275 Ill.App.3d 899, 212 Ill.Dec. 287, 656 N.E.2d 1121 (1995). A decision on a motion to dismiss is a matter of discretion for the trial court, and a complaint should not be dismissed unless it clearly appears that no set of facts can be proved which entitles plaintiff to recover. Bivin, 275 Ill.App.3d at 902, 212 Ill.Dec. 287, 656 N.E.2d 1121. All well-pleaded facts and inferences drawn therefrom are accepted as true when a motion to dismiss on the pleadings is allowed. Webb v. Lane, 222 Ill.App.3d 322, 164 Ill.Dec. 761, 583 N.E.2d 677 (1991). Further, a reviewing court may affirm a lower court's judgment on any basis warranted by the record regardless of whether it was relied on by the trial court. Heepke v. Heepke Farms, Inc., 271 Ill.App.3d 935, 208 Ill.Dec. 598, 649 N.E.2d 958 (1995). | All well-pleaded facts and inferences drawn therefrom are accepted as true when motion to dismiss on pleadings is allowed. | Are all well-pleaded facts and inferences drawn therefrom accepted as true when a motion to dismiss on pleadings is allowed? | Pretrial Procedure - Memo # 8806 - C - NS_59805.docx | ROSS-003298304-ROSS-003298305 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8717 | Dakota Cheese v. Taylor, 525 N.W.2d 713 | 307A+581 | Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. Opp, 458 N.W.2d at 356; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Bradbury, 129 N.W.2d at 542. Fourth, the plaintiff has the burden to proceed with the action. Du-Al Mfg. Co., 444 N.W.2d at 56; Schwartzle, 429 N.W.2d at 71; Duncan, 382 N.W.2d at 427; Simkins, 192 N.W.2d at 732; Potts, 72 N.W.2d at 925. The defendant need only meet the plaintiff step by step. Holmoe, 403 N.W.2d at 31. | Mere passage of time is not proper test to determine whether delay in prosecution warrants dismissal. | Is mere passage of time the proper test to determine whether delay in prosecution warrants dismissal? | 037835.docx | LEGALEASE-00152069-LEGALEASE-00152070 | Order, SA | 0.82 | 1 | 0 | 0 | 1 | |
| 8718 | State, ex rel. Dep't of Labor & Indus. Servs. v. Hill, 118 Idaho 278 | 307A+581 | We next examine Hill's contention that the magistrate erred by denying her motion to dismiss for lack of prosecution. A motion to dismiss for lack of prosecution under I.R.C.P. 41(b) is addressed to the sound discretion of the trial court. The magistrate's determination will not be disturbed absent a showing of abuse of discretion. Rudy"Mai Farms v. Peterson, 109 Idaho 116, 705 P.2d 1071 (Ct.App.1985). A judge should consider the length of delay occasioned by the failure to prosecute; the justification, if any, for such delay; and the resultant prejudice. Grant v. City of Twin Falls, 113 Idaho 604, 746 P.2d 1063 (Ct.App.1988) (review denied). In this case, the magistrate held that Hill failed to demonstrate any prejudice resulting from the delay. The magistrate also noted that Hill filed the motion only after the case, having lain dormant for some time, had been reactivated by the Department in filing its motion for summary judgment. We conclude that there was no abuse of discretion under these circumstances. | In considering motion to dismiss for lack of prosecution, judge should consider length of delay occasioned by failure to prosecute, justification, if any, for such delay, and resultant prejudice. Rules Civ.Proc., Rule 41(b). | "Should court consider length of delay, justification, if any, for delay, and extent of any resultant prejudice in deciding whether to dismiss case for failure to prosecute?" | 038323.docx | LEGALEASE-00152662-LEGALEASE-00152663 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8719 | Hidden Brook Air v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246 | 308+99 | An agent's authority may be actual or apparent. Actual authority exists when an agent has the power "to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him." Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir.1996) (quoting Restatement (Second) of Agency " 7 cmt. a (1958)). Actual authority may be express or implied. The distinction between express and implied actual authority turns on the nature of the representation by which the principal delegates authority to that agent. Express authority is "[a]uthority distinctly, plainly expressed, orally or in writing." Nationwide Life Ins. Co. v. Hearst/ABC"Viacom Entm't Servs., 1996 WL 263008, at *8 (S.D.N.Y. May 17, 1996) (quoting Black's Law Dictionary 521 (5th ed.1979)), while implied authority exists "when verbal or other acts by a principal reasonably give the appearance of authority to the agent." 99 Commercial St., Inc. v. Goldberg, 811 F.Supp. 900, 906 (S.D.N.Y.1993). In addition, as Judge Weinfeld explained, under New York law,"Implied authority" has also been defined as "a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." The general rule in New York with regard to implied authority is that "an agent employed to do an act is deemed authorized to do it in the manner in which business entrusted to him is usually done." | "Actual authority" exists when an agent has the power to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him. Restatement (Second) of Agency S 7 comment. | Does authority exist when an agent has the power to conduct a transaction on account of principals manifestation? | 041511.docx | LEGALEASE-00152672-LEGALEASE-00152673 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8720 | Envtl. Prot. Info. Ctr. v. Johnson, 170 Cal. App. 3d 604 | 411+5 | By petition for writ of mandate, appellants unsuccessfully challenged the approval of a timber harvesting plan by the California Department of Forestry.1 The harvesting plan authorized the logging of a 75-acre grove of old-growth redwoods, some of which are over a thousand years old. The redwood grove is situated in the Lost Coast wilderness area of Mendocino County near the Sinkyone Wilderness State Park and is alleged to be among the last remaining four percent of the original stands of California virgin redwood. The grove includes a Native American archaeological site thought to have been once inhabited by members of the Sinkyone nation. We hold that the provisions of the California Environmental Quality Act (CEQA) (" 21000 et seq.) apply to the Forest Practice Act and its regulation of the timber harvesting industry. We further hold that since fundamental provisions of both acts were not followed, the timber harvesting plan was not approved in the manner prescribed by law. Accordingly, we reverse the order denying the petition for writ of mandate. | Provisions of California Environmental Quality Act (West's Ann.Cal.Pub.Res.Code S 21000 et seq.) apply to Forest Practices Act (West's Ann.Cal.Pub.Res.Code S 4511 et seq.) and its regulation of timber harvesting industry. | Is the timber harvesting industry subject to regulation under the California Environmental Quality Act (CEQA)? | 047612.docx | LEGALEASE-00152538-LEGALEASE-00152539 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8721 | United States v. Lemons, 67 F. Supp. 985 | 83E+585 | Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 W.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo. App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651 . | Under Missouri law, a note which is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, is inoperative and void, whether the holder is an innocent or guilty purchaser. Mo.R.S.A. S 3039. | Is a forged note void? | 009920.docx | LEGALEASE-00153678-LEGALEASE-00153679 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8722 | Fatpipe v. State, 2012 Ark. 248 | 307A+679 | In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. Downing v. Lawrence Hall Nursing Ctr., 2010 Ark. 175, 369 S.W.3d 8. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. Henry v. Cont'l Cas. Co., 2011 Ark. 224, 381 S.W.3d 802. However, when a complaint is dismissed on a question of law, this court conducts a de novo review. Id. | In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. | "In testing the sufficiency of a complaint on a motion to dismiss, should all reasonable inferences be resolved in favor of the complaint?" | Pretrial Procedure - Memo # 8955 - C - DA_60408.docx | ROSS-003293956 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8723 | Roa v. Roa, 200 N.J. 555 | 307A+675 | This case comes to us upon the grant of defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. R. 4:6"2(e). Such a motion must be based on the pleadings themselves. Here the motion was based upon evidence, including certifications, outside of the pleadings. We therefore view the record in a light most favorable to the non-moving party, which is the standard applicable to summary judgment. See R. 4:6"2 ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46...."). Further, because the motion was filed prior to an answer and before the completion of discovery, we derive the facts from the complaint and from the certifications supporting and opposing the motion. | A motion to dismiss the complaint for failure to state a claim upon which relief can be granted must be based on the pleadings themselves. R. 4:6-2(e). | Is a motion to dismiss for failure to state a claim upon which relief can be granted based on the pleadings? | 038257.docx | LEGALEASE-00153718-LEGALEASE-00153719 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 8724 | Stabler v. Stabler, 326 S.W.3d 561 | 307A+681 | Evidence outside the pleadings cannot serve as the basis for granting a motion to dismiss, including a motion to dismiss for lack of standing. Breeden v. Hueser, 273 S.W.3d 1, 15 (Mo.App. W.D.2008). After reviewing the record, including the trial court's order, we find nothing that overcomes the presumption that the trial judge knew and properly applied the law. Evergreen Nat'l Corp. v. Carr, 129 S.W.3d 492, 497 (Mo.App. S.D.2004). The trial court did not reference the Trust document in its order and did not specify the reasons for its decision that Appellant lacked standing. Therefore, we will presume the trial judge considered only the evidence that a proper application of the law would permit him to consider. Appellant's first point is therefore denied. | Evidence outside the pleadings cannot serve as the basis for granting a motion to dismiss, including a motion to dismiss for lack of standing. | "Can the evidence outside the pleadings serve as the basis for granting a motion to dismiss, including a motion to dismiss for lack of standing?" | Pretrial Procedure - Memo # 9125 - C - NS_60467.docx | ROSS-003282387-ROSS-003282388 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8725 | London v. Adams, 1998 S.D. 41 | 307A+581 | Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. Opp, 458 N.W.2d at 356; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Bradbury, 129 N.W.2d at 542. | Mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. SDCL 15-6-41(b), 15-11-11. | Is mere passage of time the proper test to determine whether the delay in prosecution warrants dismissal? | Pretrial Procedure - Memo # 9184 - C - SN_60494.docx | ROSS-003281404-ROSS-003281405 | Order, SA | 0.47 | 1 | 0 | 0 | 1 | |
| 8726 | Bentonville Ice & Cold Storage Co. v. Anderson, 186 Ark. 473 | 308+63(1) | The evidence fails to disclose what had been the custom regarding the sale of apples during the time appellee had done business with the appellant or what was the financial responsibility of Zimmerman, the buyer, known to the appellant, or which, in the exercise of ordinary care, it should have known. Neither was there any express direction given the appellant as to how the apples should be sold. In the absence of any proof of custom or of the express direction of the owner, an agent must be reasonably diligent and exercise reasonable care in the selection of responsible purchasers and sell the commodity for its fair value or market price for cash, or upon a reasonable term of credit, and exercise reasonable diligence in collecting the purchase money when intrusted with the collection and promptly account to the owner for all money and property which has come into its hands during, and by virtue, of the agency. Ark. Fertilizer Co. v. Banks, 95 Ark. 86, 128 S. W. 566. Of course, an agent is bound to make sales in accordance with the express direction of the owner, Sledge & Norfleet Co. v. Mann, 166 Ark. 358, 266 S. W. 264, and is liable for any damage resulting from a failure to obey the direction of the owner or for failure to exercise proper care in the absence of such direction. Houston Rice Co. v. Reeves, 179 Ark. 700, 17 S.W.(2d) 884; Marks v. F. G. Barton Cotton Co., 170 Ark. 637, 280 S. W. 674. | Agent is liable for damages resulting from failure to obey principal's direction in making sale, or failure to exercise proper care in absence of such direction. | Is an agent bound to make sales in accordance with the express direction of the owner and is liable for any damage resulting from a failure to obey the direction of the owner? | Principal Agent-Memo 34- AM_60522.docx | ROSS-003279338-ROSS-003279339 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 8727 | Moore v. Scott, 759 S.W.2d 827 | 308+41(2) | We now turn to the problem of revocation before the time specified within the grant. The power specifically provides that "in no case is [it] to terminate before the 31st day of December,1989." As indicated, the partition suit was filed on August 7, 1987. We, therefore, must consider the revocation of a naked power in violation of a provision of the instrument. We have heretofore alluded to the fact that such revocation is permissible subject to a possible response in damages. That rule is stated, in relevant part, as follows: REVOCATION OR RENUNCIATION Authority terminates if the principal or the agent manifests to the other dissent to its continuance.a. Such termination by act of the principal is revocation; by act of the agent, it is renunciation.b. Power to revoke or renounce. The principal has power to revoke and the agent has power to renounce, although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable. A statement in a contract that the authority cannot be terminated by either party is effective only to create liability for its wrongful termination. | Principal has power to revoke naked power of attorney and agent has power to renounce, although doing so is in violation of contract between the parties and although authority is expressed to be irrevocable; statement in contract that authority cannot be terminated by either party is effective only to create liability for its wrongful termination. | Does the agent have the power to renounce? | 041410.docx | LEGALEASE-00153672-LEGALEASE-00153673 | Order, SA | 0.69 | 1 | 0 | 0 | 1 | |
| 8728 | Exec. Aircraft Consulting v. City of Newton, 252 Kan. 421 | 371+2001 | Thus, a tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary"an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered. | A "tax" is a forced contribution to raise revenue for maintenance of governmental services offered to general public. | Is tax a forced contribution to raise revenue for the maintenance of governmental services offered to the general public? | 046016.docx | LEGALEASE-00153309-LEGALEASE-00153310 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8729 | City of Tullahoma v. Bedford Cty., 938 S.W.2d 408 | 371+2001 | The Court of Appeals held that the "local privilege tax is not in conflict with state mandated "fees," which are not in the same category as taxes." Whether the charge for depositing waste in a landfill is a tax or a fee, even though denominated a tax, is determined by its purpose. A tax is a revenue raising measure levied for the purpose of paying the government's general debts and liabilities. Memphis Retail Liquor Dealers' Ass'n v. City of Memphis, 547 S.W.2d 244, 245"46 (Tenn.1977). See City of Knoxville v. Lee, 159 Tenn. 619, 623, 21 S.W.2d 628, 629"30 (1929); 16 Eugene McQuillin, The Law of Municipal Corporations " 44.02 (rev.3d ed. 1994). A fee is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee. Memphis Retail Liquor Dealers' Ass'n v. City of Memphis, 547 S.W.2d at 246; Solid Waste Authority v. Division of Natural Resources, 195 W.Va. 1, 462 S.E.2d 349, 353"54 (1995); Brewster v. City of Pocatello, 115 Idaho 502, 768 P.2d 765, 768 (1988); Crocker v. Finley, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346, 1349"50 (1984); Emerson College v. City of Boston, 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984). | "Tax" is revenue raising measure levied for purpose of paying government's general debts and liabilities. | Is a tax a revenue raising measure levied for the purpose of paying the government's general debts and liabilities? | 046056.docx | LEGALEASE-00153449-LEGALEASE-00153450 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 8730 | In re Heritage Org., 354 B.R. 407 | 8.30E+193 | Ambiguity is a question of law for the Court to decide. Coker v. Coker, 650 S.W.2d 391. In determining whether an instrument is ambiguous, the Court is to "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a different or technical sense." Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118. In other words, the parties' views about the meaning of the instrument are not relevant to the Court's analysis"the question is whether the instrument itself can be given a certain or definite legal meaning or interpretation by the Court. National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517 ("If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Parol evidence is not admissible for the purpose of creating an ambiguity") (citations omitted); Kelley"Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462 ("An ambiguity does not arise ... merely because the parties advance conflicting contract interpretations"); Coker, 650 S.W.2d at 393 ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law"). | In determining whether a negotiable instrument is ambiguous under Texas law, court is to give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a different or technical sense. | How do courts treat ambiguity in instruments? | 008998.docx | LEGALEASE-00154709-LEGALEASE-00154710 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8731 | Rey v. Simpson, 63 U.S. 341 | 83E+454 | When a promissory note, made payable to a particular person or order, as in this case, is first endorsed by a third person, such third person is held to be an original promissor, guarantor, or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker, and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered as a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name there at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor. But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then be liable only as a second endorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such endorsers. | When a note payable to a particular person or order is first endorsed by a third person, such third person is held to be an original promissor, guarantor or endorser according to the nature of the transaction and the understanding of the parties at the time the transaction took place. | Who is an original promissor? | Bills and Notes - Memo 852 - RK_61297.docx | ROSS-003280471-ROSS-003280472 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8732 | Powers v. Wallis, 258 S.W.2d 360 | 156+19 | Appellants' contention that they were entitled to an instructed verdict because at the time Wallis, as guardian, executed the deed to Boucher conveying the mineral interest involved, he owned an undivided one-half interest therein and that even though the deed was invalid as a guardian's deed, it was, nevertheless, sufficient to convey the interest Wallis owned, under the doctrine of estoppel by deed. We do not agree with this contention. The deed from Wallis to Boucher was not based on a valid consideration. In order that a covenant work an estoppel, it must be contained in a deed that is good and valid in law as well as equity. | Where deed by guardian of mineral interest of ward was not based on a valid consideration, deed was not sufficient to convey mineral interest owned by guardian personally, under doctrine of estoppel by deed, since in order that a covenant work an estoppel, it must be contained in a deed that is good and valid in law as well as in equity. | "In order to work an estoppel, must a covenant be contained in a valid deed?" | 018058.docx | LEGALEASE-00153889-LEGALEASE-00153890 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 8733 | Shedden v. Anadarko E. & P. Co., 635 Pa. 381, 136 A.3d 485 | 156+52(1) | Appellants' sole basis for arguing that the doctrine of estoppel by deed should not apply is their contention that, because Anadarko paid a reduced bonus upon learning of the Baxters' 1894 reservation of one-half of the oil and gas rights to the Property, Anadarko failed to demonstrate detrimental reliance. However, unlike the doctrine of equitable estoppel, we find that the doctrine estoppel by deed does not require detrimental reliance. The doctrine of equitable estoppelprevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity. | The doctrine of equitable estoppel prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. | Does equitable estoppel prevent one from doing an act differently from the manner in which another was induced to expect? | 018068.docx | LEGALEASE-00154233-LEGALEASE-00154234 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8734 | Advance Telecom Process LLC v. DSFederal, 224 Md. App. 164 | 307A+681 | We begin with Advance's suggestion that the court's consideration of the Teaming Agreement converted the motion to dismiss into a motion for summary judgment. We agree, as a general proposition, that where matters outside of the allegations in the complaint and any exhibits incorporated in it are considered by the trial court, a motion to dismiss generally will be treated as one for summary judgment. See, e.g., Worsham v. Ehrlich, 181 Md.App. 711, 722, 957 A.2d 161 (The trial court has "discretion to convert a motion to dismiss to a motion for summary judgment by considering matters outside the pleading."), cert. denied, 406 Md. 747, 962 A.2d 373 (2008). Where, however, a document such as the Teaming Agreement merely supplements the allegations of the complaint, and the document is not controverted, consideration of the document does not convert the motion into one for summary judgment. | Trial court's consideration of teaming agreement did not convert motion to dismiss for failure to state a claim into motion for summary judgment in contractual dispute between contractors, where agreement merely supplemented the allegations of the complaint, and the agreement was not controverted. | "Where a document merely supplements the allegations of the complaint, does consideration of the document not convert a motion to dismiss into one for summary judgment?" | Pretrial Procedure - Memo # 9331 - C - VA_60909.docx | ROSS-003294597-ROSS-003294598 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 8735 | Gold v. Rowland, 296 Conn. 186 | 307A+687 | We begin our analysis with the appropriate standard of review. "The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo.... When a ... court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." | A motion to dismiss for lack of jurisdiction admits all facts which are well pleaded, invokes the existing record, and must be decided upon that alone. | Does a motion to dismiss invoke the existing record and must be decided upon that alone? | Pretrial Procedure - Memo # 9341 - C - TJ_60919.docx | ROSS-003280069 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8736 | Lee v. Friedman, 637 N.E.2d 1318 | 307A+581 | Lee claims that dismissal is never appropriate without entry of a lesser sanction first. She cites cases which deal with T.R. 37, with the failure to comply with a discovery order, or with cases which cite those cases. Currently, Indiana does not require trial courts to impose lesser sanctions before it applies the ultimate sanctions of default judgment or dismissal for violation of discovery orders. See Hood v. G.D.H. by Elliott (1992), Ind.App., 599 N.E.2d 237. Therefore, the cases Lee cites on this issue are not dispositive of the matter. Rather, the court need not impose a sanction less severe than dismissal where the record of dilatory conduct is clear. See Pyramid Energy, Ltd. v. Heyl & Patterson, Inc. (7th Cir.1989), 869 F.2d 1058 (failure to comply with court order). | Trial court need not impose sanction less severe than dismissal where record of dilatory conduct is clear. | Does the court need to impose sanction less severe than dismissal where record of dilatory conduct is clear? | 038744.docx | LEGALEASE-00154302-LEGALEASE-00154304 | Order, SA | 0.86 | 1 | 0 | 0 | 1 | |
| 8737 | LaPrade v. Lehman, 490 A.2d 1151 | 307A+581 | In the exercise of its discretion under Rule 41(b), the trial court "should first resort to the wide range of lesser sanctions which it may impose." Garces v. Bradley, 299 A.2d 142, 144 (D.C.1973); see Taylor, 407 A.2d at 590.Alternative sanctions include dismissal without prejudice, an assessment of the defendant's costs and reasonable fees against the plaintiff, or a finding that plaintiff's lawyer is in contempt of court and the imposition of a fine. | In the exercise of its discretion to dismiss an action with prejudice, trial court should first resort to lesser, alternative sanctions which it may impose, including dismissal without prejudice, assessment of defendant's costs and reasonable fees against plaintiff, or a finding that plaintiff's lawyer is in contempt of court and imposition of a fine. Civil Rule 41(b). | "Should the court first resort to lesser, alternative sanctions in the exercise of its discretion to dismiss an action with prejudice?" | 038822.docx | LEGALEASE-00154127-LEGALEASE-00154128 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 8738 | State ex rel. Missouri Highway & Transp. Comm'n v. Kersey, 663 S.W.2d 364 | 307A+581 | In deciding whether to order dismissal for failure to prosecute, a trial court may consider not only the length of delay, but attendant circumstances. Schreck v. Parker, 388 S.W.2d 538, 541 (Mo.App.1965); State ex rel. State Highway Commission v. Milnes, 573 S.W.2d 727, 728 (Mo.App.1978). A fair test is whether the excepting party (here, appellant) had a reasonable opportunity to bring its exceptions to trial. Milnes, 573 S.W.2d at 728. | In deciding whether to order dismissal for failure to prosecute, trial court may consider not only length of delay, but attendant circumstances; a fair test is whether the excepting party had a reasonable opportunity to bring its exceptions to trial. | What should a court consider in deciding whether to order dismissal for failure to prosecute? | Pretrial Procedure - Memo # 9479 - C - TJ_61090.docx | ROSS-003281455-ROSS-003281456 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 8739 | Shackleton v. Neil, 207 Mont. 96 | 307A+581 | Failure to prosecute is not a complicated concept. It simply means that a plaintiff has failed to exercise due diligence in bringing his case to a conclusion. Rule 41(b), M.R.Civ.P., establishes that a defendant can move for involuntary dismissal for this reason. The rule provides in part: "Involuntary dismissal"effect thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him...." (Emphasis added.) | "Failure to prosecute" means that a plaintiff has failed to exercise due diligence in bringing his case to a conclusion. Rules Civ.Proc., Rule 41(b). | "Does ""failure to prosecute"" mean that a plaintiff has failed to exercise due diligence in bringing his case to a conclusion?" | Pretrial Procedure - Memo # 9480 - C - TJ_61091.docx | ROSS-003284682-ROSS-003284683 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8740 | Cohutta Mills v. Bunch, 166 Ga. App. 395 | 307A+581 | An order of dismissal for failure to appear is discretionary with the trial court and is not subject to review by this court in the absence of an abuse of that discretion. Moreover, a dismissal for such reason should not be based solely on the absence of a party, but should be taken only after a full consideration of all circumstances. Spyropoulos v. Linard Estate, 243 Ga. 518, 519, 255 S.E.2d 40; Maolud v. Keller, 153 Ga.App. 268, 265 S.E.2d 86. A party or his counsel is chargeable with notice that his case, when ripe for trial, may be called for trial at any time during the term of court and even out of its regular order on the docket, in the court's discretion provided it is placed on a calendar duly prepared and notice given of the same. Grindle v. Eubanks, 152 Ga.App. 58, 59(1), 262 S.E.2d 235. | A dismissal for failure to appear should not be based solely on absence of a party, but should be taken only after a full consideration of all circumstances. | Should a dismissal for failure to appear be based solely on absence of a party or be taken only after a full consideration of all circumstances? | Pretrial Procedure - Memo # 9486 - C - TM_61097.docx | ROSS-003281914-ROSS-003281915 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8741 | Gams v. Houghton, 884 N.W.2d 611 | 307A+587 | We agree that the defendant does not need to take any action for Rule 5.04(a) to operate and that a case is automatically "deemed"4 dismissed with prejudice upon failure to file, or obtain a stipulation, within the 1"year deadline in the rule. We do not agree, however, that Rule 5.04(a) thereafter precludes the district court from taking action, such as the action that occurred here, in the event a party files a case with the court after the deadline has expired. In this case, the district court entered an order dismissing the action, which as noted above, falls within the scope of Rule 60.02. But even in the absence of an order, a dismissal by operation of law under Rule 5.04(a) would still be a "proceeding" and so would fall within the coverage of Rule 60.02. See State v. Hohenwald, 815 N.W.2d 823, 830 (Minn.2012) ("The word "proceedings' generally refers to "the course of procedure in a judicial action or in a suit in litigation"..."). In short, although judicial action is not needed for the dismissal in Rule 5.04(a) to occur, the rule does not foreclose judicial action following a belated filing and the absence of judicial action does not make Rule 60.02 inapplicable. | Although judicial action is not needed for the dismissal in rule setting forth one-year filing period for action to occur, the rule does not foreclose judicial action following a belated filing and the absence of judicial action does not make rule governing relief from final judgment, order, or proceeding inapplicable. 48 M.S.A., Rules Civ.Proc., Rules 5.04(a), 60.02. | Is judicial action needed for dismissal to occur per rule? | 038906.docx | LEGALEASE-00154370-LEGALEASE-00154371 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 8742 | HSBC Bank USA, Nat. Ass'n v. Grella, 145 A.D.3d 669 | 307A+587 | Contrary to the plaintiff's contention, the defendant did not waive the right to seek dismissal of the complaint pursuant to CPLR 3215(c) by moving to vacate her default and for leave to serve a late answer. "The mere fact that the legislative intent underlying CPLR 3215(c) was to prevent the plaintiffs from unreasonably delaying the determination of an action, does not foreclose the possibility that a defendant may waive the right to seek a dismissal pursuant to the section by his or her conduct" (Myers v. Slutsky, 139 A.D.2d 709, 710, 527 N.Y.S.2d 464). A defendant may waive the right to seek a dismissal pursuant to CPLR 3215(c) by serving an answer or taking "any other steps which may be viewed as a formal or informal appearance" (id. at 711, 527 N.Y.S.2d 464; see De Lourdes Torres v. Jones, 26 N.Y.3d 742, 772, 27 N.Y.S.3d 468, 47 N.E.3d 747; HSBC Bank USA v. Lugo, 127 A.D.3d 502, 503, 9 N.Y.S.3d 6; Hodson v. Vinnie's Farm Mkt., 103 A.D.3d 549, 959 N.Y.S.2d 440). | A defendant may waive the right to seek a dismissal pursuant to the rule that requires a court to dismiss a complaint as abandoned if the plaintiff fails to seek the entry of a judgment within one year of a default by serving an answer or taking any other steps which may be viewed as a formal or informal appearance. McKinney's CPLR 3215(c). | Can a defendant waive the right to seek a dismissal? | Pretrial Procedure - Memo # 9529 - C - PC_61117.docx | ROSS-003278331-ROSS-003278332 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 8743 | Brown v. Knowles, 307 P.3d 915 | 307A+622 | Did the corporation in this case have a legal claim against Brown as of the commencement of its bankruptcy case? In re Educators Group Health Trust explained the proper framework for determining whether a claim belongs to a creditor of the corporation or to the corporation's bankruptcy estate, holding that claims alleging "direct injury" to creditors belonged to creditors, but claims alleging injury to the corporation and only derivative injury to creditors belonged to the bankruptcy estate. And this is the correct analysis under Alaska law: In Alaska if a plaintiff fails to assert a legal injury entitling the plaintiff to relief, the plaintiff has no legal claim and the suit must be dismissed. | If a plaintiff fails to assert a legal injury entitling the plaintiff to relief, the plaintiff has no legal claim and the suit must be dismissed. | "If a plaintiff fails to assert a legal injury entitling the plaintiff to relief, does the plaintiff have no legal claim and the suit must be dismissed?" | Pretrial Procedure - Memo # 9567 - C - PB_61182.docx | ROSS-003297264-ROSS-003297265 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8744 | Foy v. Hunter, 106 N.C. App. 614 | 46H+1236 | Furthermore, a trial court may enter sanctions when the plaintiff or his attorney violates a rule of civil procedure or a court order. Harris v. Maready, 311 N.C. 536, 551, 319 S.E.2d 912, 922 (1984) ( Rule 8(a)(2)); Rivenbark v. Southmark Corp., 93 N.C.App. 414, 420, 378 S.E.2d 196, 200 (1989) (court order). The sanctions may be entered against either the represented party or the attorney, even when the attorney is solely responsible for the delay or violation. | Trial court may enter sanctions when plaintiff or his attorney violates rule of civil procedure or court order. | Can court enter sanctions when plaintiff or his attorney violates rule of civil procedure or court order? | 039030.docx | LEGALEASE-00154811-LEGALEASE-00154812 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 8745 | United States v. McNeil, 228 F. Supp. 3d 809 | 377E+12(1) | Section 875(c) provides, "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. " 875(c). In short, conviction requires proof that "(1) the defendant transmitted something, (2) the thing transmitted was a threat to injure the person of another, and (3) the transmission was in interstate or foreign commerce." Elonis v. United States, """ U.S. """", 135 S.Ct. 2001, 2014, 192 L.Ed.2d 1 (2015) (Alito, J., concurring in part and dissenting in part). Negligent threat is insufficient; transmission of "a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," is sufficient.3 Elonis at 2012. | Conviction for making threatening communications requires proof that (1) the defendant transmitted something, (2) the thing transmitted was a threat to injure the person of another, and (3) the transmission was in interstate or foreign commerce. 18 U.S.C.A. S 875(c). | What does a conviction under 875(c) for making threatening communications require proof of? | 046750.docx | LEGALEASE-00154575-LEGALEASE-00154576 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8746 | United States v. Hayes, 762 F.3d 1300 | 350H+651 | In imposing sentence, a district court may not presume that the range produced by application of the Sentencing Guidelines is reasonable, see Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), and must consider the factors set out in 18 U.S.C. " 3553(a). These are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most efficient manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range [as set forth in the Sentencing Guidelines] ...; (5) any pertinent policy statement ... issued by the Sentencing Commission....; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. " 3553(a). | In imposing sentence, district court may not presume that the range produced by application of the Sentencing Guidelines is reasonable, and must consider the statutory sentencing factors. 18 U.S.C.A. S 3553(a). | Can the court presume that the sentencing range produced by the Sentencing Guidelines is reasonable? | Bribery - Memo #1005 - C - ML_61331.docx | ROSS-003278910-ROSS-003278912 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8747 | Gerasta v. Hibernia Nat. Bank, 411 F. Supp. 176 | 172H+1323 | In determining whether a particular transaction is exempt, "the purpose of the transaction or extension of credit is controlling" and not the property which is the subject of the security interest involved. Sapenter v. Dreyco Incorporated, 326 F.Supp. 871, 874 (E.D.La.), aff'd, 450 F.2d 941 (5 Cir.), cert. denied, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1971). We find that the plaintiffs obtained a loan from Hibernia and entered into a contractual agreement with Building Materials for the purpose of repairing and/or improving their intended residence, prior to occupancy.24 The transaction was not one for "business or commercial purposes' and, therefore, was not exempt from the provisions of the Act. | In determining whether particular transaction is exempt from federal Consumer Credit Protection Act as one for "business or commercial purposes," purpose of transaction or extension of credit is controlling, and not property which is subject of the security interest involved. Truth in Lending Act, SS 102, 103(h), 104(1) as amended 15 U.S.C.A. SS 1601, 1602(h), 1603(1); Truth in Lending Regulations, Regulation Z, S 226.2(k), 15 U.S.C.A. following section 1700. | Is the purpose of a transaction or an extension of credit controlling in determining whether a transaction is exempt? | 013720.docx | LEGALEASE-00155748-LEGALEASE-00155750 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 8748 | Haas v. Falmouth Fin., 783 F. Supp. 2d 801 | 172H+1561 | Yet, the purported exercise of the TILA rescission right does not automatically cause rescission to occur. As the Fourth Circuit noted in American Mortgage Network, Inc. v. Shelton, 486 F.3d 815 (4th Cir.2007), because "[t]he equitable goal of rescission under TILA is to restore the parties to the "status quo ante," " the borrower seeking rescission must be able to tender the borrowed funds back to the lender to obtain rescission. (citing Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir.2003)). Of course, to meet this obligation, plaintiffs seeking rescission frequently allege that they would be able to meet their tender obligation if they are allowed to sell the property after rescission is ordered and tender the proceeds. See, e.g., Taylor v. Deutsche Bank Nat'l Trust Co., 2010 WL 4103305, at, 2010 U.S. Dist. LEXIS 110499, at (E.D.Va. Oct. 18, 2010); Hudson v. Bank of Am., N.A., 2010 WL 2365588, at, 2010 U.S. Dist. LEXIS 57909, at (E.D.Va. June 11, 2010). While courts are entitled to alter the timing of tender to provide some flexibility to the parties, it is critical that a court, in adjudicating a rescission claim, not order the lender to release its security interest in the debtor's property"thereby converting the lender into an unsecured creditor"without being "assured" that the debtor will be able to repay the borrowed funds. Proceeding otherwise would "offend[ ] traditional notions of equity. And if a plaintiff is unable to demonstrate an ability to meet the tender obligation, a court has the discretion to dismiss the rescission claim without reaching the merits of the underlying TILA violations.; accord Yamamoto, 329 F.3d at 1173. | The purported exercise of the TILA rescission right does not automatically cause rescission to occur; rather, because the equitable goal of rescission under TILA is to restore the parties to the status quo ante, the borrower seeking rescission must be able to tender the borrowed funds back to the lender to obtain rescission. Truth in Lending Act, S 125(a), 15 U.S.C.A. S 1635(a). | What is the equitable goal of rescission under TILA? | Consumer Credit - Memo 183 - RK_61845.docx | ROSS-003282934-ROSS-003282935 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8749 | Sherzer v. Homestar Mortg. Servs., 849 F. Supp. 2d 501 | 172H+1556 | Plaintiffs argue that the facts of their case are distinguishable from those of Williams. Plaintiffs point out that they, unlike the plaintiffs in Williams, commenced suit within one year of sending their notice of rescission. This argument misses the point. The holding of Williams is that suit must be brought within three years of consummation of the loan. [A]ny claim for rescission under " 1635(f) must be filed within the three year period. It may be that an obligor may invoke the right to rescission by mere notice. Mere invocation without more, however, will not preserve the right beyond the three-year period. Rather, consistent with " 1635(f), a legal action to enforce the right must be filed within the three-year period or the right will be "completely extinguishe[d]." | Mortgagors were required to file legal action to enforce their right to rescind mortgage loan under Truth in Lending Act (TILA) within statutory three-year period or right would be completely extinguished, regardless of whether mortgagors filed their rescission claim within one year of sending their notice of rescission to mortgage lender. Truth in Lending Act, S 125(f), 15 U.S.C.A. S 1635(f). | Is the right to rescind completely extinguished if the legal action to enforce the right is not filed within the three-year period? | Consumer Credit - Memo 196 - RK_61858.docx | ROSS-003292868-ROSS-003292869 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 8750 | Beach v. Great W. Bank, 692 So. 2d 146 | 172H+1556 | As a general rule, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Therefore, despite the Beaches' assertion that section 1635(f) should not be given its plain meaning, we read that section as unambiguously expressing Congress's intent to extinguish the statutory right of rescission three years after the transaction's closing. | Truth-in-Lending Act (TILA) rescission provision unambiguously expresses Congress's intent to extinguish statutory right of rescission three years after transaction's closing. Truth in Lending Act, S 125(f), as amended, 15 U.S.C.A. S 1635(f). | Did Congress intend to extinguish the statutory right of rescission three years after a transaction's closing? | 013791.docx | LEGALEASE-00155520-LEGALEASE-00155521 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 8751 | Tucker v. Fayetteville State Univ., 238 N.C. App. 188 | 141E+1000 | "Any party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision[.]" N.C. Gen.Stat. " 150B"43 (2013). The actions of the University of North Carolina and its constituent institutions are subject to the judicial review procedures of N.C. Gen.Stat. " 150B"43. Huang v. N.C. State University, 107 N.C.App. 710, 713, 421 S.E.2d 812, 814 (1992). Since FSU is a constituent institution of the University of North Carolina pursuant to N.C. Gen.Stat. " 116"4 (2013), any action taken is subject to specific review procedures. "Because no statutory administrative remedies are made available to employees of the University [of North Carolina], those who have grievances with the University have available only those administrative remedies provided by the rules and regulations of the University and must exhaust those remedies before having access to the courts." Huang, 107 N.C.App. at 713"14, 421 S.E.2d at 814. "Therefore, before a party may ask the courts for relief from a University decision: (1) the person must be aggrieved; (2) there must be a contested case; and (3) the administrative remedies provided by the University must be exhausted." Id. at 714, 421 S.E.2d at 814. Additionally, "the complaint should be carefully scrutinized to ensure that the claim for relief is not inserted for the sole purpose of avoiding the exhaustion rule." Id. at 715, 421 S.E.2d at 816 (citation omitted). | Before a party may ask the courts for relief from state university decision: (1) the person must be aggrieved; (2) there must be a contested case; and (3) the administrative remedies provided by the university must be exhausted. West's N.C.G.S.A. S 150B-43. | Can a party ask the courts for relief from a university decision? | 017125.docx | LEGALEASE-00155315-LEGALEASE-00155317 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8752 | Brekke v. THM Biomedical, 683 N.W.2d 771 | 156+52(1) | Equitable estoppel is a "doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." Northern Petrochemical Co. v. U.S. Fire Ins. Co., 277 N.W.2d 408, 410 (Minn.1979). In order to invoke equitable estoppel, the following elements must be shown:1. There must be conduct acts, language or silence amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. | Equitable estoppel is a doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights. | Is equitable estoppel addressed to the discretion of the court? | 017736.docx | LEGALEASE-00155532-LEGALEASE-00155533 | Order, SA | 0.87 | 1 | 0 | 0 | 1 | |
| 8753 | Barker v. Francis, 741 P.2d 548 | 322H+644 | Finally, the Doctors challenge the validity of the contract claiming it is void due to Barker's failure to perform in a timely manner. Time is of the essence in land contracts only if it can be shown that the parties so intended. This can be demonstrated in two ways. First, the contract can explicitly state that time is of the essence, See Century 21 All Western Real Estate v. Webb, 645 P.2d 52, 55 (Utah 1982), or it can include language that requires a forfeiture of the deposit or an avoidance of the contract if the deadline is not met. Cahoon v. Cahoon, 641 P.2d 140, 144 (Utah 1982); Huck v. Hayes, 560 P.2d 1124, 1126 (Utah 1977). Second, the circumstances surrounding the transaction can imply that "the parties intended timeliness of performance to be of paramount concern." Cahoon, 641 P.2d at 144. A closing date alone in a contract for the sale or exchange of land does not make time of the essence. See id.; Huck, 560 P.2d at 1126. | Time is of the essence in land contracts only if it can be shown that parties so intended, and this can be demonstrated if contract explicitly states that time is of the essence or includes language that requires forfeiture of deposit or avoidance of contract if deadline is not met or circumstances surrounding transaction imply that parties intended timeliness of performance to be of paramount concern. | Is time the essence of land contracts? | Exchange of Property - Memo 8 - AM_61552.docx | ROSS-003294975-ROSS-003294976 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 8754 | Robbins v. Delta Wire Rope, 196 So. 3d 700 | 307A+690 | Therefore, the trial court properly sustained Grosse Tete's lis pendens exception as to Swivel's petition of intervention in the Louisiana action. However, we find that the trial court erred in dismissing Swivel's petition of intervention with prejudice. The function of a declinatory exception is to decline the jurisdiction of the court, but it does not tend to defeat the action. La. Code Civ. P. art. 923; Dupre v. Floyd, 2002"0153, p. 3 (La.App. 1 Cir. 12/20/02), 845 So.2d 370, 371. Hence, a dismissal with prejudice is generally contrary to the underlying rationale of a declinatory exception, since such an exception should not defeat the action. Id. Moreover, Article 532 only provides for a stay of the proceedings.1 Thus, we affirm the trial court's grant of Grosse Tete's lis pendens exception, but we amend the judgment to provide that Swivel's intervention is stayed until the Texas action is either "discontinued or final judgment has been rendered." La. Code Civ. P. art. 532. | A dismissal with prejudice is generally contrary to the underlying rationale of a declinatory exception, since such an exception should not defeat the action. LSA-C.C.P. art. 923. | "Is a dismissal with prejudice generally contrary to the underlying rationale of a declinatory exception, since such an exception should not defeat the action?" | 024619.docx | LEGALEASE-00155831-LEGALEASE-00155832 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8755 | Dakota Cheese v. Taylor, 525 N.W.2d 713 | 307A+581 | Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. Opp, 458 N.W.2d at 356; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Bradbury, 129 N.W.2d at 542. | Mere passage of time is not proper test to determine whether delay in prosecution warrants dismissal. | Is a mere passage of time a proper test to determine whether delay in prosecution warrants dismissal? | 039014.docx | LEGALEASE-00155074-LEGALEASE-00155075 | Order, SA | 0.61 | 1 | 0 | 0 | 1 | |
| 8756 | Hosey v. County of Victoria, 832 S.W.2d 701 | 307A+581 | Finally, when the court asserts its inherent power to dismiss a case, the test to be applied in determining whether the case was properly dismissed is whether the case was prosecuted with due diligence. Bard v. Frank B. Hall & Co., 767 S.W.2d 839, 843 (Tex.App."San Antonio 1989, writ denied); Phillips v. Welch, 749 S.W.2d 286, 288 (Tex.App."Fort Worth 1988, no writ). | When court asserts its inherent power to dismiss a case, test to be applied in determining whether the case was properly dismissed is whether the case was prosecuted with due diligence, and factors to be considered are the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and excuses for any delays. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd. 2. | What is the test to be applied by court in determining whether the case was properly dismissed? | 039035.docx | LEGALEASE-00154825-LEGALEASE-00154826 | Condensed, SA | 0.12 | 0 | 1 | 0 | 1 | |
| 8757 | Reichert v. Union Fid. Life Ins. Co., 360 N.W.2d 664 | 307A+581 | Under extraordinary circumstances, however, dismissal for lack of prosecution may be justified even though no prejudice to the defendant is shown. Id. at 283, 152 N.W.2d at 368. The court in Firoved recognized that defendants are entitled to the weight of the policy which seeks to prevent unreasonable delays even in the absence of a showing of particular prejudice. | Under extraordinary circumstances, dismissal of an action for lack of prosecution may be justified even though no prejudice to defendant is shown. | Can dismissal of an action for lack of prosecution be justified even though no prejudice to defendant is shown? | 039070.docx | LEGALEASE-00155086-LEGALEASE-00155087 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 8758 | State v. Madore, 96 Conn. App. 271 | 106+78 | First, the court did not violate the defendant's right to a trial by an impartial jury when it consolidated the two cases. The defendant argues that the legislature has exclusive authority to govern the power of the courts in the area of administration, practice and procedure. On the contrary, the court's inherent power permits it to regulate such matters and is not dependent on any act of the legislature. "[C]ourts have a necessary inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and to facilitate the administration of justice as they deem necessary." | Courts have a necessary inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and to facilitate the administration of justice as they deem necessary. | Does power to prescribe rules of procedure to facilitate administration of justice inheres in the court function? | 039076.docx | LEGALEASE-00155092-LEGALEASE-00155093 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8759 | Wilson v. Edwards, 202 So. 3d 275 | 307A+552 | The trial court is required to give a liberal construction to pro se section 1983 complaints, and we review a trial court's conclusion that a complaint is frivolous for abuse of discretion. Duncan v. Johnson, 14 So.3d 760, 763 (Miss.Ct.App.2009). However, "[t]he power to dismiss a frivolous complaint is distinct from a trial court's authority to dismiss for failure to state a claim under Rule 12(b)(6)." Id. A trial court has the authority to dismiss a claim based on an indisputably meritless legal theory, as well as the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. | The trial court's power to dismiss a frivolous complaint is distinct from a trial court's authority to dismiss such a complaint for failure to state a claim. Miss. R. Civ. P. 12(b)(6). | Is the power to dismiss a frivolous complaint distinct from a trial court's authority to dismiss such a complaint for failure to state a claim? | Pretrial Procedure - Memo # 9683 - C - DA_61584.docx | ROSS-003280673-ROSS-003280674 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8760 | Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187 | 307A+679 | Where the court decides the motion only on the documentary evidence, the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion.3 Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir.2004); Oaklawn, 959 F.2d at 174. A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. See Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1272 (Colo.2002). Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir.1998); Ten Mile, 810 F.2d at 1524. Similar to the court's role in addressing a motion for summary judgment, a court addressing a 12(b)(2) motion on documentary evidence alone acts as a "data collector" and not a factfinder. Foster"Miller, 46 F.3d at 145; see Leidy's, 811 P.2d at 39.Accordingly, the allegations in the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor. Foster"Miller, 46 F.3d at 145; Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir.1984); Leidy's, 811 P.2d at 40. | Similar to the court's role in addressing a motion for summary judgment, a court addressing a motion to dismiss for lack of personal jurisdiction on documentary evidence alone acts as a data collector and not a factfinder; accordingly, the allegations in the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor. Rules Civ.Proc., Rule 12(b)(2). | "Does ""documentary evidence"" consist of the allegations in the complaint along with any affidavits and any other evidence submitted by the parties?" | 039269.docx | LEGALEASE-00154839-LEGALEASE-00154840 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 8761 | Butler v. Standard Life Ins. Co. of the S., 232 Ala. 238 | 308+92(1) | It is declared that a principal who selects and duly appoints an agent to act for him must bear the responsibilities and suffer loss for the misconduct or failure of such agent to adequately represent the principal within the terms of that agency. Massachusetts Mut. Life Ins. Co. v. Crenshaw, 186 Ala. 460, 65 So. 65; 2 C.J. p. 879. General authorities collecting the decisions on agency and proof thereof are Roberts & Sons v. Williams et al., 198 Ala. 290, 73 So. 502; Langham et al. v. Jackson, Superintendent of Banks, 211 Ala. 416, 100 So. 757; Fulton v. Sword Medicine Co., 145 Ala. 331, 40 So. 393; Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8. | Principal selecting agent must bear responsibilities and suffer loss for misconduct or failure of agent to adequately represent him within terms of agency. | Does the principal bear the responsibilities and suffer loss for the misconduct of an agent he appoints? | Principal and Agent - Memo 336 - RK_61924.docx | ROSS-003305659-ROSS-003305660 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8762 | United States v. Nishnianidze, 342 F.3d 6 | 377E+12(2) | "True threats" are not protected by the First Amendment. United States v. Fulmer, 108 F.3d 1486, 1492"93 (1st Cir.1997). A defendant may be convicted for making a threat if "he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." Fulmer, 108 F.3d at 1491; see also United States v. Whiffen, 121 F.3d 18, 21 (1st Cir.1997) (applying Fulmer to " 875(c)). While the fact-finder may consider other evidence, including the effect of the statement on the recipient, the ultimate standard is an objective one"whether a reasonable person would understand the statement to be threatening. Fulmer, 108 F.3d at 1491. Nishnianidze asserts that the judge improperly instructed the jury to consider the recipient's state of mind when determining whether a threat was made. | While the fact-finder may consider other evidence, including the effect of the statement on the recipient, the ultimate standard for determining whether a statement is a "threat" is an objective one, whether a reasonable person would understand the statement to be threatening. 18 U.S.C.A. S 875(b, c). | "What is the ultimate standard for determining whether a statement is a ""threat""?" | 046764.docx | LEGALEASE-00155166-LEGALEASE-00155167 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 8763 | Doe v. Salisbury Univ., 107 F. Supp. 3d 481 | 92+4205 | Under Plaintiff's theory"where a school would lack authority to investigate or discipline a former student for conduct that allegedly occurred while the former student was enrolled"it would be impossible for the school to ever revoke a graduate's degree. But courts have held that schools hold inherent authority to revoke degrees based on academic or disciplinary infractions that occurred while a former student was enrolled, as long as the school could show good cause and after due process. See Goodreau v. Rector and Visitors of Univ. of Va., 116 F.Supp.2d 694,702"03 (W.D.Va.2000) (finding that the University of Virginia held an implied power to revoke a graduate's degree where the graduate had stolen money during the time he was enrolled at the school); Waliga v. Bd. of Trs. of Kent State Univ., 22 Ohio St.3d 55, 488 N.E.2d 850, 850, 852 (1986) (finding that Kent State University had "inherent authority to revoke an improperly awarded degree" where the school discovered discrepancies in a graduate's academic records). Plaintiff does not cite to any statutory or contractual provision that expressly defeats SU's implied power to control its own records. Therefore, the Court holds that SU is well within its authority to investigate allegations of disciplinary infractions that occurred on campus, and while Plaintiff was enrolled as a student. | Schools hold an implied power to control school records and to revoke credentials conferred upon students, e.g., degrees, credits, etc., where such actions are in response to a former student's conduct that occurred during the student's enrollment, and as long as the school acts with good cause and after due process, a former student's withdrawal or graduation from school does not end or obviate the relationship, nor does it permanently vest a former student's status with the school. U.S.C.A.Const.Amend. 14. | Do schools hold inherent authority to revoke degrees base on academic or disciplinary infractions as long as it could show good cause and due process? | 016848.docx | LEGALEASE-00156323-LEGALEASE-00156324 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 8764 | B & F Slosman v. Sonopress, 148 N.C. App. 81 | 156+52(1) | In contrast, plaintiff, in this case, asserts that defendant, in occupying the entire plant, received benefits it would have received under a written lease. However, unlike Brooks, defendant did not execute a written agreement. Such a construction as plaintiff contends would conflict with the essential purpose of quasi-estoppel, which is to prevent a party from benefitting by taking two clearly inconsistent positions. See Carolina Medicorp v. Bd. of Trustees of the State Medical Plan, 118 N.C.App. 485, 492, 456 S.E.2d 116, 120 (1995). Here, defendant argues that the parties were only in the process of negotiating a lease for additional space. The fact that defendant occupied the additional space during the negotiation process and agreed to pay a monthly rent does not result in defendant's taking two inconsistent positions. See Kent v. Humphries, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981)(holding when a tenant enters into possession under an invalid lease and tenders rent which is accepted by the landlord, a periodic tenancy is created and the period of the tenancy is determined by the interval between rental payments). Thus, we find no merit in plaintiff's quasi-estoppel argument. | The essential purpose of quasi-estoppel is to prevent a party from benefitting by taking two clearly inconsistent positions. | Is the essential purpose of quasi-estoppel to prevent a party from benefitting by taking two clearly inconsistent positions? | 017749.docx | LEGALEASE-00155898-LEGALEASE-00155899 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8765 | Couchman v. Cardona, 471 S.W.3d 20 | 307A+690 | A motion to dismiss with prejudice under this chapter is a sanction meant "to deter meritless claims and bring them quickly to an end." CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc., 390 S.W.3d 299, 301 (Tex.2013). A motion to dismiss with prejudice, then, is a motion for sanctions relief. See id. at 300"01. A motion to dismiss with prejudice survives a nonsuit filed by a plaintiff. See id. at 300. Even after a dismissal without prejudice is entered following a plaintiff's nonsuit, the party seeking dismissal with prejudice can appeal the denial of the sanctions relief. See id. at 301. | A motion to dismiss with prejudice is a sanction meant to deter meritless claims and bring them quickly to an end. | Is a motion to dismiss with prejudice a sanction meant to deter meritless claims and bring them quickly to an end? | Pretrial Procedure - Memo # 10230 - C - TJ_61735.docx | ROSS-003281803-ROSS-003281804 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8766 | Palm v. 2800 Lake Shore Drive Condo. Ass'n, 2014 IL App (1st) 111290 | 307A+690 | "Where there is no adjudication on the merits, a dismissal should be granted without prejudice, as opposed to granting dismissal with prejudice. [Citation.] The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. [Citation.] Conversely, "a dismissal with prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim." " (Emphases in original.) Johnson, 268 Ill.App.3d at 418, 206 Ill.Dec. 34, 644 N.E.2d 802 (quoting Rogaris v. Oliver, 246 Ill.App.3d 876, 881, 186 Ill.Dec. 814, 617 N.E.2d 53 (1993)). | A dismissal with prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim. | Does a dismissal with prejudice constitute an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim? | 024665.docx | LEGALEASE-00155922-LEGALEASE-00155923 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 8767 | Rogaris v. Oliver, 246 Ill. App. 3d 876 | 336H+117 | Plaintiffs attempt to distinguish this case from O'Connell and Gibellina, contending that their motion for voluntary dismissal with prejudice cannot be compared to a motion under section 2"1009. Plaintiffs assert that the reasoning employed in those cases should not be applied here because the filing of their motion did not constitute an abuse of the right to voluntarily dismiss and refile. Yet, a dismissal with prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim. Black's Law Dictionary 469 (6th ed. 1990); Van Slambrouck v. Marshall Field & Co. (1981), 98 Ill.App.3d 485, 487, 53 Ill.Dec. 888, 424 N.E.2d 679. | "Dismissal with prejudice" constitutes adjudication on merits which bars plaintiff from maintaining another action on same claim. | Does a dismissal with prejudice constitute an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim? | Pretrial Procedure - Memo # 10249 - C - SHB_61754.docx | ROSS-003282023-ROSS-003282024 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 8768 | Pulte Home Corp. v. Parex, 174 Md. App. 681 | 307A+622 | A trial court has discretion to dismiss a claim with prejudice if it fails to state a claim that could afford relief. See Md. Rule 2"322(b)(2). See, e.g., Porterfield v. Mascari II, Inc., 374 Md. 402, 414, 823 A.2d 590 (2003); Heist v. E. Sav. Bank, FSB, 165 Md.App. 144, 148, 884 A.2d 1224 (2005). In light of the extensive history of litigation between the parties and, given that the dismissed count was from the Second Amended Complaint in this case and that the complaint that initiated the case was filed nearly five months earlier, we believe that the court properly exercised its discretion by dismissing the breach of express warranties claim with prejudice. | A trial court has discretion to dismiss a claim with prejudice if it fails to state a claim that could afford relief. Md.Rule 2-322(b)(2). | Does a trial court have discretion to dismiss a claim with prejudice if it fails to state a claim that could afford relief? | 024729.docx | LEGALEASE-00156108-LEGALEASE-00156109 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8769 | Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666 | 228+181(6) | At the outset, it is clear that the second motion justice erred in granting summary judgment on plaintiffs' breach of contract claim. Lack of subject matter jurisdiction over a particular claim is not appropriate grounds for granting summary judgment. | Lack of subject matter jurisdiction over a particular claim is not appropriate grounds for granting summary judgment; rather, the court's lack of subject matter jurisdiction, at most, should result in a dismissal on the action without prejudice. | Is lack of subject matter jurisdiction over a particular claim not appropriate grounds for granting summary judgment? | Pretrial Procedure - Memo # 10371 - C - NC_62096.docx | ROSS-003293878 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 8770 | Memphis Retail Liquor Dealers' Ass'n v. City of Memphis, 547 S.W.2d 244 | 371+2002 | Before proceeding to the remainder of plaintiffs' contentions, we must first determine whether or not the inspection fee is actually what it purports to be, or is in reality a tax. In Tennessee, taxes are distinguished from fees by the objectives for which they are imposed. If the imposition is primarily for the purpose of raising revenue, it is a tax; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a fee. City of Chattanooga v. Veatch, 202 Tenn. 338, 304 S.W.2d 326 (1956); Wright v. Town of Camden, 195 Tenn. 295, 259 S.W.2d 529 (1953); S. E. Greyhound Lines v. Knoxville, 181 Tenn. 622, 184 S.W.2d 4 (1944). | If an imposition is primarily for the purpose of raising revenue, it is a "tax"; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a "fee." | "s an imposition a tax, if its purpose is for the regulation of some activity under the police power of the governing authority?" | Taxation - Memo # 986 - C - JL.docx | LEGALEASE-00046116-LEGALEASE-00046117 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8771 | Bullis v. State, 83 Nev. 175 | 67+19 | The crime for which the defendants were charged and convicted is burglary not larceny. The allegation of the intent to commit larceny is simply an element of the crime of burglary. State v. Patchen, 36 Nev. 510, 517, 137 P. 406 (1913); Harris v. Commonwealth, 185 Va. 26, 37 S.E.2d 868, 871 (Va.1946). Since the primary concern in a burglary indictment is with the unlawful entry, the intended felony or theft need not therein be described with the same specificity that might be required in charging the offense of larceny or another felony. People v. Peck, 29 Ill.2d 480, 194 N.E.2d 245, 247 (1963); Register v. State, 237 Miss. 14, 112 So.2d 523, 524 (1959); People v. Smith, 86 Cal. 238, 24 P. 988 (1890). (See Howard v. Sheriff of Clark County, 83 Nev. 150, 425 P.2d 596, filed March 31, 1967.) | Primary concern in burglary indictment is with the unlawful entry, and intended felony or theft need not be described with same specificity that might be required in charging offense of larceny or another felony. N.R.S. 205.060, 205.220, 205.240. | What is the primary concern in an indictment for burglary? | Burglary - Memo 292 - RK_62294.docx | ROSS-003280966-ROSS-003280967 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 8772 | People v. Escalante, 256 Ill. App. 3d 239 | 67+41(3) | "[A] defendant may be convicted of burglary when the evidence shows that he knowingly and without authority enters a motor vehicle with the intent to steal, and this may be proven by circumstantial evidence and the inferences that may be drawn from that evidence." (People v. Tucker (1989), 186 Ill.App.3d 683, 692, 134 Ill.Dec. 458, 542 N.E.2d 804.) Ann Davies testified that on March 10, 1990, Stewart Davies left with a 1984 or 1985 Pontiac Firebird to go to the Ace Hardware store. When he left, the radar detector was in the car. The radar detector was small enough to fit in a pocket. When he returned the car several hours later, the radar detector was gone. Ann Davies also testified that she did not know defendant and that he did not have the authority to enter the Firebird, nor would Stewart Davies have allowed anyone to enter the car. Moorhouse saw defendant walk up to a car parked in the Ace Hardware parking lot, remove something, and put it into his pocket. Officer Buck testified that he talked to Davies and Moorhouse, and then he investigated a Pontiac Firebird. | Defendant may be convicted of burglary if evidence shows that he knowingly and without authority entered motor vehicle with intent to steal which may be proven by circumstantial evidence and inferences that may be drawn from that evidence. | Can circumstantial evidence establish lack of authority to enter? | 013110.docx | LEGALEASE-00156561-LEGALEASE-00156562 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8773 | State v. Eastlack, 180 Ariz. 243 | 67+10 | A burglary is first degree burglary if the perpetrator is armed. A.R.S. " 13"1508. Defendant argues that he was not armed. He correctly notes the principle that " "a weapon or dangerous instrument obtained by a burglar during the course of a burglary and held as loot or stolen goods [does] not by itself "arm" the burglar within the meaning of the Arizona first-degree statute.' " State v. Williams, 154 Ariz. 366, 368, 742 P.2d 1352, 1354 (1987) (quoting State v. Harris, 151 Ariz. 236, 238, 727 P.2d 14, 16 (1986)). The gun used in the burglary of the Sherrill home had been stolen in defendant's earlier burglary of house No. 2. | Weapon or dangerous instrument obtained by burglar during course of burglary and held as loot or stolen goods does not by itself render burglar "armed" within meaning of first-degree burglary statute. A.R.S. S 13-1508. | Does obtaining a weapon as loot during a burglary arm a burglar? | 013168.docx | LEGALEASE-00156579-LEGALEASE-00156580 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8774 | City of Spokane v. Spokane Police Guild, 87 Wash. 2d 457 | 371+2002 | In addition, if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed. Rodgers v. United States, 138 F.2d 992, 994 (6th Cir. 1943); Scott v. Donnelly, 133 N.W.2d 418, 423 (N.D.1965); Starker v. Scott, 183 Or. 10, 15"16, 190 P.2d 532 (1948); State v. Jackman, 60 Wis.2d 700, 707"08, 211 N.E.2d 480 (1973). The primary purpose of RCW 41.56 is clearly regulatory. RCW 41.56.430 states: | If primary purpose of legislation is regulation rather than raising revenue, such legislation cannot be classified as a tax even if a burden or charge is imposed. | "Where the primary purpose of legislation is regulation rather than raising revenue, can the legislation be classified as a tax?" | Taxation - Memo # 998 - C - JL_62499.docx | ROSS-003280441-ROSS-003280442 | Order, SA | 0.67 | 1 | 0 | 0 | 1 | |
| 8775 | In re Porterfield, 331 B.R. 480 | 349A+10 | Bankruptcy Courts analyzing state statutes similar to Florida's Rental Purchase Agreement Act have held that rental-purchase agreements are "true leases" and not security agreements and fall within 11 U.S.C. " 365 which governs executory contracts and leases. See In re Rembert, 293 B.R. 664, 667 (Bankr.M.D.Pa.2003) (finding that the rent-to-own agreement was a lease under Pennsylvania's Rental"Purchase Agreement Act); In re Osborne, 170 B.R. 367, 370 (Bankr.M.D.Tenn.1994) (holding that rent-to-own contracts were leases under the Tennessee Rental"Purchase Agreement Act). Other bankruptcy courts have held that rental-purchase agreements are neither true leases nor security agreements, but are peculiar creatures of consumer financing sufficiently executory to fall within 11 U.S.C. " 365. See In re Knowles, 253 B.R. 412, 416 (Bankr.E.D.Ky.2000). | Rental-purchase agreement, within meaning of Florida's Rental Purchase Agreement Act, pursuant to which Chapter 13 debtor "leased" certain household property for automatically renewing one-month terms with option to buy, was not in nature of disguised "security agreement," under which lessor had mere security interest that could be stripped down to value of this household property, but was true "unexpired lease," that debtor had to assume or reject in accordance with bankruptcy statute governing debtor's executory contracts and unexpired leases. 11 U.S.C.A. S 365; West's F.S.A. S 559.9232(2)(e, f). | Are rental purchase agreements true leases or security agreements? | Consumer Credit - Memo 21-AM_62558.docx | ROSS-003278461-ROSS-003278462 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 8776 | USLIFE Corp. v. U.S. Life Ins. Co., 560 F. Supp. 1302 | 156+52(1) | The doctrine of judicial estoppel is an equitable principle which generally operates to preclude a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. See generally 1B Moore's Federal Practice " 0.405[8] (1982). Judicial estoppel is distinct from equitable estoppel, which may also be applied to prevent a party from contradicting a position taken in a prior judicial proceeding. See Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895). Equitable estoppel focuses on the relationship between the parties to the prior litigation, and it applies where one of the parties has detrimentally relied upon the position taken by the other party in the earlier proceeding. See Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982). Where prejudicial reliance upon the factual assertions of the opposing party has occurred, that party will be estopped from subsequently arguing a contrary position. | Equitable estoppel focuses on relationship between parties to prior litigation, and applies where one of parties has detrimentally relied upon position taken by other party in earlier proceeding. | Does equitable estoppel focus on the relationship between parties to the prior litigation? | 017803.docx | LEGALEASE-00156713-LEGALEASE-00156714 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 8777 | Tusino v. Zoning Bd. of Appeals of Douglas, 90 Mass. App. Ct. 89 | 307A+690 | A dismissal for lack of subject matter jurisdiction, such as we have here, is ordinarily without prejudice because it is "typically not an adjudication on the merits." Abate v. Fremont Inv. & Loan, 470 Mass. 821, 836, 26 N.E.3d 695 (2015). That said, as a practical matter, the underlying order in the zoning appeal is final. Tusino was required (but failed) to file notice of his appeal within ten days of the final judgment, which entered on March 31, 2015.4 Dist./Mun.Cts. Appellate Division Appeal Rule 4(a) (2013). Although the trial court has discretion to extend the time upon a showing of "excusable neglect or other good reason, ... in no event shall the court permit the filing of a notice of appeal later than 180 days after entry of the judgment or post-judgment order of which appeal is sought." Dist./ Mun.Cts. Appellate Division Appeal Rule 4(c). | A dismissal for lack of subject matter jurisdiction is ordinarily without prejudice because it is typically not an adjudication on the merits. | Is a dismissal for lack of subject matter jurisdiction ordinarily without prejudice because it is typically not an adjudication on the merits? | Pretrial Procedure - Memo # 10462 - C - DA_64150.docx | ROSS-003292410-ROSS-003292411 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8778 | Texas Tech Univ. Health Scis. Ctr. v. Lucero, 234 S.W.3d 158 | 307A+554 | In Issue Two, Tech contends that there was no waiver of sovereign immunity because Lucero's claims are based on the non-use of personal property. When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction and dismissal with prejudice is proper. Sepulveda v. County of El Paso, 170 S.W.3d 605, 610 (Tex.App.-El Paso 2005, pet. denied); City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex.App.-Austin 1998, no pet.). Subject matter jurisdiction is a legal question which we review de novo. Sepulveda, 170 S.W.3d at 610; City of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App.-Fort Worth 1999, pet.dism'd w.o.j.).The Statute As a state agency, Tech is immune from suit unless that immunity is waived. The Tort Claims Act does not waive sovereign immunity for all negligence claims against governmental units. Texas Department of Criminal Justice v. Miller, 51 S.W.3d 583, 588 (Tex.2001). Relevant to this case, the Act provides that a governmental unit in the state is liable for: Personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. | When a lawsuit is barred by sovereign immunity, the trial court lacks subject-matter jurisdiction, and dismissal with prejudice is proper. | "When a claim is barred by sovereign immunity, does the trial court lack subject-matter jurisdiction and dismissal with prejudice is proper?" | 024957.docx | LEGALEASE-00157241-LEGALEASE-00157242 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 8779 | Crooked Creek, III v. City of Greenwood, 352 Ark. 465 | 307A+690 | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. Hicks v. Allstate Ins. Co., 304 Ark. 101, 799 S.W.2d 809 (1990); (quoting Union Indem. Co. v. Benton County Lumber Co., 179 Ark. 752, 18 S.W.2d 327 (1929)). The words "with prejudice," when used in an order of dismissal, "have a definite and well known meaning; they indicate that the controversy is thereby concluded." Harris v. Moye's Estate, 211 Ark. 765, 767, 202 S.W.2d 360 (1947). | Words "with prejudice," when used in an order of dismissal, have a definite and well known meaning; they indicate that the controversy is thereby concluded. | "Do the words ""with prejudice,"" when used in an order of dismissal indicate that the controversy is thereby concluded?" | 025067.docx | LEGALEASE-00156785-LEGALEASE-00156786 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8780 | Pitruzello v. Muro, 70 Conn. App. 309 | 307A+693.1 | The defendant filed motions to dismiss the third party complaints pursuant to Practice Book 10-30. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. A ruling on a motion to dismiss is neither a ruling on the merits of the action nor a test of whether the complaint states a cause of action. Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted; internal quotation marks omitted.) Olson v. Accessory Controls & Equipment Corp., 54 Conn.App. 506, 515, 735 A.2d 881 (1999), aff'd, 254 Conn. 145, 757 A.2d 14 (2000). The defendant alleged that it is incorporated and has its place of business in California. It further alleged that it has no formal presence in Connecticut, has no offices or employees here, is not licensed as a foreign corporation or other business entity here, and owns no real property here. It denied the plaintiff allegation that it had solicited business or had committed a tort in this state | A ruling on a motion to dismiss is neither a ruling on the merits of the action nor a test of whether the complaint states a cause of action. Practice Book 1998, S 10-30. | Is a ruling on a motion to dismiss neither a ruling on the merits of the action nor a test of whether the complaint states a cause of action? | 025176.docx | LEGALEASE-00157237-LEGALEASE-00157238 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8781 | Thibodeaux v. Ferrellgas Inc., 717 So. 2d 668 | 307A+693.1 | Under Article 1039, if an incidental demand has been pled prior to the motion by the plaintiff in the principal action to dismiss the principal action, a subsequent dismissal of the principal action does not affect the incidental action, which must be tried and decided independently of the principal action. Empiregas filed its incidental demands against Ferrellgas on August 27, 1996. It was more than two months later on November 4, 1996, that plaintiffs dismissed Ferrellgas from the lawsuit. Until a judgment dismissing a suit is filed, the proceeding is still pending even if the parties have settled the matter. Jordan v. Sutton, 491 So.2d 743 (La.App. 1 Cir.1986). Under the plain language of Article 1039, Ferrellgas' dismissal does not affect Empiregas' incidental demands. Consequently, the rulings of the trial court and this court on this issue were not inconsistent with prior rulings nor did they declare the "Mary Carter" agreement to be void and invalid as against public policy. | Until a judgment dismissing a suit is filed, the proceeding is still pending even if the parties have settled the matter. | "Until a judgment dismissing a suit is filed, is the proceeding still pending even if the parties have settled the matter?" | 025200.docx | LEGALEASE-00157275-LEGALEASE-00157276 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8782 | Hunt v. Dallmeyer, 517 S.W.2d 720 | 307A+693.1 | An action itself is dismissed only when a court sustains a motion to dismiss a petition without stating anything in the order that the action is to continue.White v. Sievers, supra at 123(15). When the trial court here granted plaintiff additional time to amend his petition, its order thereby expressly prevented any final judgment or dismissal with prejudice at that time. Bailey v. Williams, 326 S.W.2d 115, 120(5) (Mo.1959). Therefore, even though plaintiff in this case did not file another amended petition, the court's order granting the motions to dismiss could not become a final judgment until August 10, 1973. The court's order did not become a final order for purposes of appeal until thirty days later, on September 9, 1973. Rule 81.05. Plaintiff then had ten days from this date in which to file a notice of appeal. Rule 81.04. The notice of appeal, filed September 6, 1973, was timely. Therefore, defendants' motion to dismiss plaintiff's appeal is denied. | Action itself is dismissed only when court sustains motion to dismiss petition without stating anything in order that action is to continue. | Is an action itself dismissed only when court sustains motion to dismiss petition without stating anything in order that action is to continue? | 025265.docx | LEGALEASE-00156887-LEGALEASE-00156888 | Order, SA | 0.86 | 1 | 0 | 0 | 1 | |
| 8783 | Mongeon v. Burkebile, 79 N.D. 234 | 307A+517.1 | We now come to the question of whether the county court erred in making its order in this proceeding holding that its former order of January 17, 1950, dismissing the petition of Margaret Mongeon, proponent of the olographic will, was res adjudicata and confirming that former order. The dismissal of an action or proceeding "with prejudice" commonly implies not only the termination of the particular action or proceeding then before the court but also the right of action upon which it is based. Pueblo de Taos v. Archuleta, 10 Cir., 64 F.2d 807; Mars v. McDougal, 10 Cir., 40 F.2d 247; Noakes v. Noakes, 290 Mich. 231, 287 N.W. 445; Mayflower Industries v. Thor Corp., 17 N.J.Super. 505, 86 A.2d 293; Maib v. Maryland Casualty Co., 17 Wash.2d 47, 135 P.2d 71; 17 Am.Jur., Dismissal and Discontinuance, Section 78; Annotation 149 A.L.R. 625. | Dismissal of action or proceeding with prejudice commonly implies not only termination of particular action or proceeding then before court but also right of action upon which it is based. | Does a dismissal of action or proceeding with prejudice commonly imply termination of a particular action or proceeding then before court? | 025309.docx | LEGALEASE-00157032-LEGALEASE-00157033 | Order, SA | 0.78 | 1 | 0 | 0 | 1 | |
| 8784 | Brock v. Harris, 34 Ala. App. 593 | 307A+693.1 | No such consequence attached to a discontinuance or a nonsuit. Our statute as to two nonsuits being equivalent to a verdict against the party suffering them is therefore in derogation of the common law and to be strictly construed. The statute does not, by its terms, bar a suit because of prior discontinuances, regardless of the number of such discontinuances | The statute providing that two non-suits are equivalent to verdict against party suffering them is in derogation of the common law, and is to be strictly construed. Code 1940, Tit. 7, S 254. | Is the statute providing that two non-suits are equivalent to verdict against party suffering them in derogation of the common law? | 025317.docx | LEGALEASE-00157042-LEGALEASE-00157043 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 8785 | Hickman v. Ritchey Coal Co., 252 Ill. App. 560 | 307A+693.1 | The court did not err in denying the motion to set aside the order of August 1, 1927, which vacated and set aside the $5,000 judgment. The judgment was set aside at the same term at which it was rendered and the judgment had been rendered at a time when the cause had been dismissed for want of prosecution. Upon the dismissal of a suit the parties are out of court, and no further proceedings are authorized until the judgment of dismissal is vacated and the cause reinstated. Goodrich v. Huntington, 11 Ill. 646; Chicago Title & Trust Co. v. Tilton, 256 Ill. 97. | Upon dismissal of suit, parties are out of court and no further proceedings are authorized until judgment of dismissal is vacated and cause reinstated. | "Upon dismissal of suit, are parties out of court and are no further proceedings authorized until judgment of dismissal is vacated and cause reinstated?" | Pretrial Procedure - Memo # 10698 - C - SN_62677.docx | ROSS-003294426-ROSS-003294427 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8786 | Cornelius v. CJ Morrill, 302 S.W.3d 176 | 307A+675 | However, "a pleader may literally plead himself out of court, and when facts constituting a defense appear affirmatively on the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer." Freeman v. Leader Nat. Ins. Co., 58 S.W.3d 590, 597 (Mo.App.2001). A motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably established by the pleadings. St. Louis University v. Hesselberg Drug Co., 35 S.W.3d 451, 454 (Mo.App.2000). The petition may not be dismissed unless it establishes " "on its face without exception" " that the defense applies. K.G., 918 S.W.2d at 797 (quoting Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc 1995)); D.A.N., 218 S.W.3d at 458. Prior arbitration of the dispute is a bar to a legal action on the same dispute. Masonic Temple Association of St. Louis v. Farrar, 422 S.W.2d 95, 109 (Mo.App.1967). | A pleader may literally plead himself out of court, and when facts constituting a defense appear affirmatively on the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer. | Can a pleader plead himself out of court? | Pretrial Procedure - Memo # 10709 - C - KS_62685.docx | ROSS-003294664-ROSS-003294665 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8787 | HICA Educ. Loan Corp. ex rel. Sallie Mae v. Fielding, 953 So. 2d 1261 | 307A+581 | "In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff. Smith v. Wilcox County Board of Education, 365 So.2d at 661. See, e.g., Boazman v. Economics Laboratory, Inc., 537 F.2d 210 (5th Cir.1976); Pond v. Braniff Airways[, Inc.], 453 F.2d 347 (5th Cir.1972). Willful default or conduct is a conscious or intentional failure to act. Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95 (8th Cir.1971). "Willful" is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct." | Willful default or conduct warranting dismissal for want of prosecution is a conscious or intentional failure to act; willful is used in contradistinction to accidental or involuntary noncompliance, and no wrongful motive or intent is necessary to show willful conduct. | Is willful default a conscious or intentional failure to act? | Pretrial Procedure - Memo # 10714 - C - SK_63250.docx | ROSS-003311266-ROSS-003311267 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 8788 | Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, 149 A.D.3d 127 | 307A+622 | Pursuant to CPLR 3211(a)(7), a motion to dismiss for failure to state a cause of action lies if the pleading is defective on its face. When a motion attacks the pleading on its face, the allegations of the pleading are deemed to be true (see Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121 [1st Dept.1964] ). More than the pleading will be deemed to allege whatever may be implied from its statements by reasonable intention (id. at 65, 248 N.Y.S.2d 121). The is entitled to every favorable inference that might be drawn (Westhill Exports v. Pope, 12 N.Y.2d 491, 496, 240 N.Y.S.2d 961, 191 N.E.2d 447 [1963] ). Hence, to succeed on a CPLR 3211(a)(7) motion to dismiss, the moving party "must convince the court that nothing the plaintiff can reasonably be expected to prove would help; that the plaintiff just doesn't have a claim" (Siegel, New York Pract. " 265 at 462 [5th ed. 2011]; accord John R. Higgitt, CPLR 3211(a)(1) and (a)(7) Dismissal Motions"Pitfalls and Pointers, 83 NY ST BJ 32, 33"34 [Nov./ Dec.2011] ). | A motion to dismiss for failure to state a cause of action lies if the pleading is defective on its face. McKinney's CPLR 3211(a)(7). | Does a motion to dismiss for failure to state a cause of action lie if the pleading is defective on its face? | Pretrial Procedure - Memo # 10715 - C - SK_63251.docx | ROSS-003296463-ROSS-003296464 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8789 | Reid v. Spazio, 970 A.2d 176 | 307A+561.1 | In ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings. Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate. | Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate when deciding a motion todismiss for failure to state a claim upon which relief can be granted. Chancery Court Rule 12(b)(6). | Can the dismissal of a complaint based upon an affirmative defense be appropriate? | Pretrial Procedure - Memo # 10731 - C - KG.docx | LEGALEASE-00047297-LEGALEASE-00047298 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 8790 | McLeod v. Marion Labs., 600 S.W.2d 656 | 307A+561.1 | For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading. Fiandaca v. Niehaus, 570 S.W.2d 714, 717 (Mo.App.1978); International Plastics Development, Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo. banc 1968). This is but the corollary of the accepted rule that the burden of proof of an affirmative defense rests upon the one asserting the defense. | For affirmative defense to be sustained upon bare motion to dismiss, defense must be irrefutably established by plaintiff's pleading. V.A.M.R. Civil Rule 55.27(a)(1). | Should defenses be established by pleadings for affirmative defense to be sustained upon bare motion to dismiss? | Pretrial Procedure - Memo # 10739 - C - KI_63394.docx | ROSS-003280210-ROSS-003280211 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 8791 | Gagliano v. Advanced Specialty Care, P.C., 167 Conn. App. 826 | 308+1 | "Some of the factors listed by the Second Restatement of Agency in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work ... and the method of paying the agent.... In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal.... Finally, the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." (Citations omitted; internal quotation marks omitted.) Beckenstein v. Potter & Carrier, Inc., 191 Conn. 120, 133"34, 464 A.2d 6 (1983). "The burden of proving agency is on the party asserting its existence." New England Whalers Hockey Club v. Nair, 1 Conn.App. 680, 683, 474 A.2d 810 (1984). | Labels used by the parties in referring to their relationship are not determinative as to agency; rather, a court must look to the operative terms of their agreement or understanding. | Are the labels used by the parties in referring to their agency relationship determinative? | 041804.docx | LEGALEASE-00157928-LEGALEASE-00157929 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8792 | Tall v. Comcast of Potomac, 729 F. Supp. 2d 342 | 231H+23 | " "[A]n agency relationship results when one person authorizes another to act on his [or her] behalf subject to his [or her] control, and the other consents to do so." " Henderson v. Charles E. Smith Mgmt., Inc., 567 A.2d 59, 62 (D.C.1989) (quoting Smith v. Jenkins, 452 A.2d 333, 335 (D.C.1982)) (second and third alterations in Smith). In other words, "the court must look for evidence of the parties' consent to establish a principal-agent relationship," and "for evidence that the activities of the agent are subject to the principal's control." "Relevant factors "include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." " Jackson, 944 A.2d at 1097 (quoting Judah v. Reiner, 744 A.2d 1037, 1040 (D.C.2000)). | Under District of Columbia law, in determining whether an agency relationship exists, the court must look for evidence of the parties' consent to establish a principal-agent relationship, and for evidence that the activities of the agent are subject to the principal's control; relevant factors include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, and (5) whether the work is part of the regular business of the employer. | Should the court look for evidence of the parties' consent to establish a principal-agent relationship? | Principal and Agent - Memo 452 - RK_63572.docx | ROSS-003278799-ROSS-003278800 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 8793 | Mobil Oil Corp. v. Linear Films, 718 F. Supp. 260 | 308+1 | Stinnes Interoil v. Petrokey (quoting Lowendahl v. Baltimore & Ohio R.R. Co., 247 A.D. 144, 287 N.Y.S. 62, 74 (N.Y.App.Div.), aff'd, 272 N.Y. 360, 6 N.E.2d 56 (1936)). See also Phoenix Canada Oil v. Texaco, 842 F.2d at 1476"77. The pure agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside of the limited agency setting. Phoenix Canada Oil v. Texaco, 842 F.2d at 1477"78. Complete or general domination and control of the agent by the principal is not required. See also supra note 10 and accompanying text. | Pure agency relationship may develop between two corporations whether the two are parent and subsidiary or completely unrelated outside of limited agency setting since complete or general domination and control of agent by principal is not required. | Can agency relationship develop if the two separate corporations are parent and subsidiary? | Principal and Agent - Memo 461- PR_63475.docx | ROSS-003292416-ROSS-003292417 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8794 | Travelers Ins. Co. v. Handleman Co., 797 F. Supp. 579 | 308+1 | In Connecticut, the existence of an agency relationship is a questionof fact. Cohen v. Meola, 184 Conn. 218, 439 A.2d 966, 967 (1981). To establish the existence of a principal and agent relationship, Connecticut law requires:1. Manifestation by the principal that the agent will act for him;2. Acceptance of the undertaking by the agent;3. Understanding by the parties that the principal is in control.Beckenstein v. Potter, 191 Conn. 120, 464 A.2d 6, 13"14 (1983). | Under Connecticut law, existence of agency relationship is question of fact which requires manifestation by principal that agent will act for him, acceptance of undertaking by agent, and understanding by parties that principal is in control. | Is the existence of an agency relationship a question of fact? | Principal and Agent - Memo 488 - KK_62691.docx | ROSS-003321908-ROSS-003321909 | Order, SA | 0.49 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8795 | White v. Revco Disc. Drug Centers, 33 S.W.3d 713 | 308+14(1) | Having decided that this case should be resolved with reference to Tennessee agency law, it may be necessary to review the relevant principles of agency. In its broadest sense, the concept of agency "includes every relation in which one person acts for or represents another." Kerney v. Aetna Cas. & Sur. Co., 648 S.W.2d 247, 253 (Tenn.Ct.App.1982). An agency relationship does not require an explicit agreement, contract, or understanding between the parties, Warren v. Estate of Kirk, 954 S.W.2d 722, 725 (Tenn.1997), and when "the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create one or not." Harben v. Hutton, 739 S.W.2d 602, 606 (Tenn.Ct.App.1987); see also Smith v. Tennessee Coach Co., 183 Tenn. 676, 680"81, 194 S.W.2d 867, 869 (1946). Whether an agency exists "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." McCay v. Mitchell, 62 Tenn.App. 424, 434, 463 S.W.2d 710, 715 (1970). | An agency relationship does not require an explicit agreement, contract, or understanding between the parties, and when the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create one or not. | Does an agency relationship require an explicit agreement or contract? | Principal and Agent - Memo 509 - KK_63287.docx | ROSS-003320848-ROSS-003320849 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8796 | Bd. of Overseers of The Bar v. Lee, 422 A.2d 998 | 371+2002 | The common distinction between taxes and license fees is that taxes are primarily intended to raise revenue while license fees are part of a regulatory program and are intended to cover costs of administering such a program under the police power of government. City of Philadelphia v. Southeastern Pennsylvania Transportation Authority, 8 Pa.Cmwlth. 280, 287, 303 A.2d 247, 251 (1973). The test is the purpose of the assessment and not its effect. Beckendorff v. Harris-Galveston Coastal Subsidence District, 558 S.W.2d 75, 79 (Tex.Civ.App., 1977). | Taxes are primarily intended to raise revenue while license fees are part of a regulatory program and are intended to cover costs of administering such a program under police power of government; test for distinguishing between taxes and license fees relates to the purpose of the assessment and not its effect. | "If a fee is part of a regulatory program, is such fee taxes or license fees?" | 044514.docx | LEGALEASE-00157349-LEGALEASE-00157350 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 8797 | City of Philadelphia v. Se. Pennsylvania Transp. Auth., 8 Pa. Cmwlth. 280 | 371+2002 | Prior case law provides the guide lines under which we are to make a distinction on whether a levy in such an ordinance is a tax or a true license fee. The common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while license fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government. | Common distinction between taxes and license fees is that "taxes" are revenue-producing measures authorized under taxing power of government; while "license fees" are regulatory measures intended to cover costs of administering regulatory scheme authorized under police power of government. | What is the common distinction between taxes and license fees? | Taxation - Memo # 1016 - C - JL_63294.docx | ROSS-003281611-ROSS-003281612 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 8798 | State v. Phelps, 266 Kan. 185 | 3.77E+34 | We are satisfied the proper test on the intimidation or aggravated intimidation charges is the reasonable person test. The fact that Palmer is a seasoned trial lawyer and a brave man does not affect the test; a frail, timid person, who sees every act of another person as a threat, would be subject to the same standard as Palmer. The proper test to determine the reaction of an alleged victim in an intimidation or aggravated intimidation charge is objective, not subjective, i.e., that of a reasonable person. There are exceptions to this rule, such as where the perpetrator has knowledge of a particular vulnerability of the victim and then acts with full knowledge of the victim's vulnerability. | Proper test to determine the reaction of an alleged victim in an intimidation or aggravated intimidation charge is objective, not subjective, i.e., that of a reasonable person; there are exceptions to this rule, such as where the perpetrator has knowledge of a particular vulnerability of the victim and then acts with full knowledge of the victim's vulnerability. | What is the proper test to determine the reaction of an alleged victim in an intimidation charge? | Threats - Memo #161 - C - LB_62716.docx | ROSS-003293785-ROSS-003293786 | Order, SA | 0.48 | 1 | 0 | 0 | 1 | |
| 8799 | Com. v. Sholley, 432 Mass. 721 | 3.77E+11 | The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered. Rather, the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances. For example, in Commonwealth v. Elliffe, 47 Mass.App.Ct. 580, 582, 714 N.E.2d 835 (1999), the victim had brought parental kidnapping charges against her former husband. As the kidnapping case was progressing, the victim claimed that the defendant had come to her house, assaulted her, and told her in an angry voice, "Drop the charges." Id. at 581"582, 714 N.E.2d 835. The defendant argued that there was nothing threatening in the words, "Drop the charges." Id. at 583, 714 N.E.2d 835. Noting that the words were to be viewed "in the context of the actions and demeanor which accompanied them," the Appeals Court held that the evidence was sufficient to make out a case of threatening to commit a crime. Id. at 582, 714 N.E.2d 835. Similarly, in Commonwealth v. Strahan, 39 Mass.App.Ct. 928, 657 N.E.2d 234 (1995), the defendant, a known environmental activist who had been protesting whale-watching excursions, was asked by the ship's mate to step down off the gangplank of a whale-watching boat. The defendant replied that he was "assessing the enemy" and that he was "just looking for, for a place to put a hole in the boat." Id. at 929, 657 N.E.2d 234. The Appeals Court rejected the defendant's technical "parsing" of his words, opining that the words should not be "taken in isolation from his other statements and the context in which they were made." Id. See Commonwealth v. DeVincent, 358 Mass. 592, 595, 266 N.E.2d 314 (1971) (in prosecution of attempted extortion, issue whether defendant's statement constituted threat of bodily injury not governed by "the dictionary definition of the words used" or by their meaning "in the abstract" but rather was to be viewed in light of "the circumstances | Assessment whether the defendant made a threat, for purposes of charge of threatening to commit a crime, is not confined to a technical analysis of the precise words uttered; rather, the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances. M.G.L.A. c. 275, S 2. | Is the assessment of whether the defendant made a threat confined to a technical analysis of the precise words uttered? | "Threats, Stalking and Harassment - Memo #136 - C - LB_63314.docx" | ROSS-003298552-ROSS-003298553 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 8800 | Caldwell v. Caldwell, 55 So. 2d 258 | 413+102 | The Workmen's Compensation Law, LSA-RS 23:1021 et seq., applies only to persons "performing services arising out of and incidental to his employment", etc. Employment means, of course, an engagement or contract to perform or render some sort of service to the one to whom such service is due. Injuries sustained by the person thus bound, and not of a character otherwise that warrants their exclusion from the purview of the Act, are compensable. | "Employment" within workmen's compensation law, means an engagement or contract to perform or render some sort of service to one to whom such service is due and injuries sustained by person thus bound, and not of a character otherwise that warrants their exclusion from purview of compensation act, are compensable. LSA-R.S. 23:1021 et seq. | "In workmens compensation, does employment mean an engagement or contract to perform or render some sort of service to one to whom such service is due?" | 047701.docx | LEGALEASE-00157648-LEGALEASE-00157649 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8801 | Bonhiver v. State Bank of Clearing, 29 Ill. App. 3d 794 | 83E+481 | It is our opinion that a time certificate of deposit is transferable by assignment. (See State Bank v. Central Mercantile Bank (1928), 246 N.Y. 428, 162 N.E. 475.) The bank's obligation is to pay the payee or assignee, and the assignee stands in no better position than his assignor when demand for payment is made. (People's Sav. Bk. v. Smith (1930), 210 Iowa 136, 230 N.W. 565.) The courts of this State have often held that an assignment of a promissory note may not be effected through a separate instrument. (Barrett et al. v. Hinckley (1888), 124 Ill. 32, 14 N.E. 863; Bouton v. Cameron (1903), 205 Ill. 50, 68 N.E. 800.) And the legislature has provided specifically that promissory notes shall be assignable "by endorsement thereon." (Ill.Rev.Stat.1971, ch. 98, pars. 1 and 2.) | A nonnegotiable time certificate of deposit is transferable by assignment; the bank's obligation is to pay the payee or assignee but the assignee stands in no better position than his assignor when demand for payment is made. | Does an assignee stand in a better position than his assignor? | Bills and Notes - Memo 1424 - RK.docx | LEGALEASE-00047823-LEGALEASE-00047824 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8802 | Osgood's Adm'rs v. Artt, 17 F. 575 | 83E+416 | As a general rule the legal title to negotiable paper, payable to order, passes, according to the law-merchant, only by the payee's indorsement on the security itself. The only established exception to this rule is where the indorsement is made on a piece of paper, so attached to the original instrument as, in effect, to become part thereof, or be incorporated into it. This addition is called, in the adjudged cases and elementary treatises, an allonge. That device had its origin in cases where the back of the instrument had been covered with indorsements, or writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a piece of paper, attached in the manner indicated, would now be deemed sufficient to pass the legal title, although there may have been, in fact, room for it on the original instrument. | As a general rule the legal title to negotiable paper payable to order passes only by the payee's indorsement on the security itself, or on a piece of paper so attached to the original instrument as, in effect, to become a part of it or incorporated into it. | "Does legal title to negotiable paper, payable to order, passes only by payees indorsement on the security?" | 010892.docx | LEGALEASE-00158536-LEGALEASE-00158537 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8803 | Heiden v. Beuttler, 11 F.Supp. 290 | 289+957 | A partnership is dissolved by the death of one of its partners, and, as a general rule, a liquidating surviving partner of a firm dissolved by the death of one of its partners cannot make a note in the name of the firm binding the copartnership for a pre-existing debt. However, the giving of a new note for a pre-existing indebtedness of a partnership by the surviving member of a firm does not cancel the original indebtedness, unless it was the intention of the parties to do so, as in the case of Van Valkenburgh v. Bradley, 14 Iowa, 108. But such a transaction merely extends the time of the payment of the original indebtedness, and perhaps adds the renewed obligation of the surviving partner individually for the payment of such a note. | Generally, liquidating surviving partner of firm dissolved by death of one partner cannot make a note in name of firm binding copartnership for pre-existing debt, but giving of new note for pre-existing indebtedness of partnership by surviving member does not cancel original indebtedness, unless it was intention of parties to do so. | Does a surviving partner have power to make a note in the name of the firm? | Partnership - Memo 520 - GP_64060.docx | ROSS-003295000-ROSS-003295001 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8804 | Ankeny v. Lockheed Missiles & Space Co., 88 Cal. App. 3d 531 | 302+192(2) | Plaintiff's complaint is also uncertain. In the complaint, he alleges conclusions of law such as "tortiously caused" and "conspired to tortiously cause" acts of an unspecified nature which somehow caused plaintiff to be passed over for promotion and deprived of stewardship in his union. It is settled law that a pleading must allege facts and not conclusions, and that material facts must be alleged directly and not by way of recital. (Vilardo v. County of Sacramento (1942) 54 Cal.App.2d 413, 418-419, 129 P.2d 165.) Also, in pleading, the essential facts upon which a determination of the controversy depends should be stated with clearness and precision so that nothing is left to surmise. (Philbrook v. Randall (1924) 195 Cal. 95, 103, 231 P. 739.) Those recitals, references to, or allegations of material facts which are left to surmise are subject to special demurrer for uncertainty. (Bernstein v. Piller (1950) 98 Cal.App.2d 441, 443-444, 220 P.2d 558.) Such conclusionary allegations as are noted above, without facts to support them, are ambiguous. Plaintiff argues only that defendant complains of insufficient facts, not uncertainty. However, examination of the pleading with reference to these points shows the allegations to be ambiguous, hence uncertain. We conclude, therefore, that the trial court was also correct in sustaining the special demurrer to plaintiff's complaint. | In pleading, the essential facts upon which a determination of the controversy depends should be stated with clearness and precision so that nothing is left to surmise; recitals, references to, or allegations of material facts which are left to surmise are subject to special demurrer for uncertainty. | Should the essential facts upon which a determination of the controversy depends be stated with clearness and precision? | 023829.docx | LEGALEASE-00158713-LEGALEASE-00158714 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8805 | City of Clearwater v. U.S. Steel Corp., 469 So. 2d 915 | 307A+562 | The city contends that United States Steel did not properly raise the defense of res judicata in its motion to dismiss. We disagree. The city is correct in arguing that the issue of res judicata is an affirmative defense, and affirmative defenses cannot be raised in a motion to dismiss unless the allegations of a prior pleading in the case demonstrate their existence. Ecological Science Corp. v. Boca Ciega Sanitary District, 317 So.2d 857 (Fla. 2d DCA 1975); Temples v. Florida Industrial Construction Co., Inc., 310 So.2d 326 (Fla. 2d DCA 1975). In considering a motion to dismiss, the court must confine itself solely to the allegations within the four corners of the complaint. | Res judicata is an affirmative defense and affirmative defenses cannot be raised in a motion to dismiss unless the allegations of a prior pleading in the case demonstrate their existence. | Can affirmative defenses be raised in motion to dismiss if allegations of complaint demonstrate their existence? | 025396.docx | LEGALEASE-00158604-LEGALEASE-00158605 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8806 | McLeod v. Marion Labs., 600 S.W.2d 656 | 307A+561.1 | For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading. Fiandaca v. Niehaus, 570 S.W.2d 714, 717 (Mo.App.1978); International Plastics Development, Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo. banc 1968). This is but the corollary of the accepted rule that the burden of proof of an affirmative defense rests upon the one asserting the defense. | For affirmative defense to be sustained upon bare motion to dismiss, defense must be irrefutably established by plaintiff's pleading. V.A.M.R. Civil Rule 55.27(a)(1). | Should affirmative defense be established by plaintiff's pleading to be sustained upon bare motion to dismiss? | 025453.docx | LEGALEASE-00158346-LEGALEASE-00158347 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 8807 | Anthony v. Tidwell, 560 S.W.2d 908 | 307A+682.1 | The majority of the Court of Appeals held that an affirmative defense, such as the statute of frauds, may not be raised by a motion to dismiss for failure to state a claim upon which relief can be granted under T.R.Civ.P. 12.02(6), but may only be raised in the defendant's answer, or by subsequent motion supported by affidavits. In this the Court of Appeals was in error. A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint. | Complaint is subject to dismissal for failure to state claim if affirmative defense clearly and unequivocally appears on face of complaint; it is not necessary for defendant to submit evidence in support of motion to dismiss when facts on which he relies to defeat plaintiff's claim are admitted by plaintiff in his complaint. Rules of Civil Procedure, rule 12.02(6). | Will a complaint be dismissed if affirmative defense clearly and unequivocally appears on face of complaint? | Pretrial Procedure - Memo # 10790 - C - NS_63657.docx | ROSS-003293089-ROSS-003293090 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8808 | Kenley v. Quintana Petroleum Corp., 931 S.W.2d 318 | 307A+699 | In determining if the court erred, we will uphold the ruling on a motion to reinstate absent a showing that the court abused its discretion. Goff v. Branch, 821 S.W.2d 732, 733 (Tex.App."San Antonio 1991, writ denied); Bard v. Frank B. Hall & Co., 767 S.W.2d 839, 843 (Tex.App."San Antonio 1989, writ denied). The party requesting reinstatement has the burden to bring forth a record establishing that reinstatement was required. Bard, 767 S.W.2d at 845. An affidavit or other competent evidence is required to affirmatively show that no notice was received. Bruneio v. Bruneio, 890 S.W.2d 150, 155 (Tex.App."Corpus Christi 1994, no writ); Welborn"Hosler v. Hosler, 870 S.W.2d 323, 328 (Tex.App."Houston [14th Dist.] 1994, no writ). | Party requesting reinstatement following dismissal for want of prosecution has burden to bring forth record establishing that reinstatement was required; affidavit or other competent evidence is required to affirmatively show that no notice was received. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does a party requesting reinstatement following dismissal for want of prosecution have a burden to bring forth a record establishing that reinstatement was required? | 025549.docx | LEGALEASE-00158560-LEGALEASE-00158561 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 8809 | Archer v. Tudor Const. Co., 649 So. 2d 1251 | 307A+581 | The express language of the article allows the court to decide whether the dismissal is with or without prejudice. In deciding whether to dismiss with or without prejudice pursuant to LSA-C.C.P. Art. 1672(A), a trial court is afforded great discretion.As recognized by the First Circuit in Malter v. McKinney, 310 So.2d 696, 698 (La.App. 1st Cir.1975):The trial judge is much more familiar with the conditions and requirements of his trial docket than are we. We have no doubt that contribution to his decision to dismiss with prejudice were considerations respecting the condition of his docket, fairness not only to both these parties but also to other litigants in his court, and the needs of an orderly and prompt administration of justice. | In deciding whether to dismiss action with or without prejudice, for plaintiff's failure to appear on day set for trial, trial court is afforded great discretion. LSA-C.C.P. art. 1672, subd. A. | "In deciding whether the dismissal is with or without prejudice, is a trial court afforded great discretion as the trial judge is more familiar with the conditions and requirements of his trial docket?" | 025665.docx | LEGALEASE-00158114-LEGALEASE-00158115 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 8810 | Crooked Creek, III v. City of Greenwood, 352 Ark. 465 | 307A+690 | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. Hicks v. Allstate Ins. Co., 304 Ark. 101, 799 S.W.2d 809 (1990); (quoting Union Indem. Co. v. Benton County Lumber Co., 179 Ark. 752, 18 S.W.2d 327 (1929)). The words "with prejudice," when used in an order of dismissal, "have a definite and well known meaning; they indicate that the controversy is thereby concluded." Harris v. Moye's Estate, 211 Ark. 765, 767, 202 S.W.2d 360 (1947). | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | "Where a dismissal is with prejudice, is it conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff?" | 025681.docx | LEGALEASE-00158218-LEGALEASE-00158219 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 8811 | State of New Mexico Uninsured Employers' Fund v. Gallegos, 395 P.3d 533 | 307A+693.1 | As this Court has explained, "[w]hen a case is dismissed without prejudice for failure to prosecute, the dismissal operates to leave the parties as if no action has been brought at all." Foster v. Sun Healthcare Grp., Inc., 2012"NMCA"072, 284 P.3d 389. In order to bring a dismissed action back before the district court, a party must first do one of two things. One option is to revive the prior action pursuant to an applicable rule, such as Rule 1-041(E)(2), see Bankers Trust Co. of Cal. v. Baca, 2007"NMCA"019, 141 N.M. 127, 151 P.3d 88 (explaining that "[a]n action that is dismissed without prejudice under Rule 1-041(E)(2) cannot proceed except by leave of the court granted for good cause shown on a motion for reinstatement"7), or Rule 1-060(B), see Kinder Morgan CO2 Co., 2009"NMCA"019,145 N.M. 579, 203 P.3d 110 (illustrating that, under certain circumstances, Rule 1-060(B)(1) may provide an alternative path to reinstatement where a party has failed to timely file a Rule 1-041(E)(2) motion to reinstate). See also Meiboom, 2000"NMSC"004, 19, 128 N.M. 536, 994 P.2d 1154 (noting that Rule 1-060(B)(6) provides courts with "equitable powers to grant relief from final judgment" and "requires only that the motion be filed within a "reasonable time" "). Alternatively, a party may file a new cause of action if the statute of limitations has not run. See Bankers Trust Co. of Cal., 2007"NMCA"019, 141 N.M. 127, 151 P.3d 88 (explaining that a party whose cause of action is dismissed for failure to prosecute is not precluded from "instituting a second action with a new complaint, as long as the applicable statute of limitations has not run"). | When a case is dismissed without prejudice for failure to prosecute, the dismissal operates to leave the parties as if no action has been brought at all. | "When a case is dismissed without prejudice for failure to prosecute, does the dismissal operate to leave the parties as if no action has been brought at all?" | 025693.docx | LEGALEASE-00158302-LEGALEASE-00158303 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 8812 | ATM Ltd. v. Caporicci Footwear Ltd., Corp., 867 So. 2d 413 | 307A+693.1 | We do not, however, agree with the contention that the judgment is infirm on the ground that the trial court lost jurisdiction over the cause as a whole when it entered an order of dismissal pursuant to Florida Rule of Civil Procedure 1.070(j) some two years before the judgment. It is true that, after the final dismissal of a claim or complaint, either with or without prejudice, the trial court is without further "case jurisdiction" and cannot render a judgment of any kind in the case. See Capital Bank v. Knuck, 537 So.2d 697 (Fla. 3d DCA 1989); Derma Lift Salon, Inc. v. Swanko, 419 So.2d 1180 (Fla. 3d DCA 1982); 1 Fla. Jur.2d Actions " 220 (1997). This rule does not apply here, however because the cited order, which states that the cause "shall stand dismissed" in the absence of an appropriate "motion showing good cause" why "service was not effectuated"1 is not a final order under this doctrine. | After the final dismissal of a claim or complaint, either with or without prejudice, the trial court is without further case jurisdiction and cannot render a judgment of any kind in the case. | Can a trial court render a judgment after the final dismissal of a claim or complaint? | 025759.docx | LEGALEASE-00158733-LEGALEASE-00158734 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8813 | Crow v. Giebelhaus, 241 Neb. 4 | 307A+693.1 | A court's dismissal of an action after a demurrer has been sustained to a petition and a plaintiff declines to replead is a final order. See, Balfany v. Balfany, 239 Neb. 391, 476 N.W.2d 681 (1991); Bert Cattle Co. v. Warren, 238 Neb. 638, 471 N.W.2d 764 (1991). | Court's dismissal of action after demurrer has been sustained to petition and plaintiff declines to replead is final order. | "Is a court's dismissal of action after demurrer has been sustained to petition and plaintiff declined to replead, a final order?" | Pretrial Procedure - Memo # 11006 - C - SKG_64126.docx | ROSS-003292676-ROSS-003292677 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8814 | Elder v. Robins, 7 Ill. App. 3d 657 | 307A+693.1 | Lastly, it is our conclusion that dismissal of a case with prejudice is not legally the quivalent of dismissing a case because the cause of action has been satisfied. The general rule is as stated by respondent that a dismissal with prejudice has the same effect as if the case had been completely tried on its merits resulting in judgment adverse to plaintiff. In re Estate of Crane, 343 Ill.App. 327, 99 N.E.2d 204 and Bank of America Nat. Trust and Savings Assn. v. Jorjorian, 303 Ill.App. 184, 24 N.E.2d 896. The cases cited by respondent however apply the rule only in favor of the named defendant (In re Estate of Crane, supra) or to somebody claiming through him such as a surety (Bank of America Nat. Trust & Savings Assn. v. Jorjorian, supra). In the case at bar the third party co-defendants are jointly and severally responsible and a judgment in favor or against one would be no bar to an action against the other. | Dismissal with prejudice has same effect as if case had been completely tried on its merits resulting in judgment adverse to plaintiff. | Does a dismissal with prejudice have the same effect as if a case had been completely tried on its merits resulting in judgment adverse to a plaintiff? | 025831.docx | LEGALEASE-00158490-LEGALEASE-00158491 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8815 | Bank of Am., N.A. v. 414 Midland Ave. Assocs., 78 A.D.3d 746 | 307A+561.1 | The appellants contend that discovery may reveal facts now unknown to them which would allow them to plead new facts in support of the legal conclusions they assert. However, where affirmative defenses "merely plead conclusions of law without any supporting facts," the affirmative defenses should be dismissed pursuant to CPLR 3211(b) (Fireman's Fund Ins. Co. v. Farrell, 57 A.D.3d 721, 723, 869 N.Y.S.2d 597). | Affirmative defense which merely pleads conclusions of law without any supporting facts should be dismissed. McKinney's CPLR 3211(b). | Should affirmative defense which merely pleads conclusions of law without any supporting facts be dismissed? | 025911.docx | LEGALEASE-00158142-LEGALEASE-00158143 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8816 | Fuller Family Holdings v. N. Tr. Co., 371 Ill. App. 3d 605 | 30+3893 | An action will be dismissed under section 2"619 of the Code if, after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted. Webb v. Damisch, 362 Ill.App.3d 1032, 1037, 299 Ill.Dec. 401, 842 N.E.2d 140 (2005). A section 2"619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. Cohen v. McDonald's Corp., 347 Ill.App.3d 627, 632, 283 Ill.Dec. 451, 808 N.E.2d 1 (2004). In reviewing the grant of a motion to dismiss under section 2"619, this court accepts as true the well-pled allegations of the plaintiff's complaint and the evidentiary facts in a defendant's supporting affidavit which have not been refuted in a counteraffidavit of the plaintiff. | In reviewing the grant of a motion to dismiss based on defects or defenses which avoid or defeat claims, the Appellate Court accepts as true the well-pled allegations of the plaintiff's complaint and the evidentiary facts in a defendant's supporting affidavit which have not been refuted in a counteraffidavit of the plaintiff. S.H.A. 735 ILCS 5/2-619. | When will a court accept well pleaded allegations as true? | Pretrial Procedure - Memo # 11094 - C - KS_63832.docx | ROSS-003293817-ROSS-003293818 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 8817 | McKay v. Kusper, 252 Ill. App. 3d 450 | 307A+561.1 | Dismissal of an action under Section 2"619(a)(9) is proper where the motion, supported by affidavit, includes defenses that defeat a cause of action completely. (Koester v. Weber, Cohn & Riley, Inc. (1989), 193 Ill.App.3d 1045, 140 Ill.Dec. 879, 550 N.E.2d 1004.) Moreover, when facts within an affidavit are not contradicted by counter affidavit, they must be taken as true. Galich v. Catholic Bishop of Chicago (1979), 75 Ill.App.3d 538, 31 Ill.Dec. 370, 394 N.E.2d 572. | Dismissal of action under statute governing involuntary dismissal on ground that claim is barred by other affirmative matter avoiding legal effect of or defeating claim is proper when motion, supported by affidavit, includes defenses that defeat cause of action completely. Ill.Rev.Stat.1991, ch. 110, P 2-619(a)(9). | Will a dismissal of action be proper when motion supported by affidavit includes defenses that defeat cause of action completely? | 039547.docx | LEGALEASE-00159206-LEGALEASE-00159207 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 8818 | Livesley v. Lasalette, 28 Wis. 38 | 308+92(1) | It is well settled that the declarations of the agent, to bind or be admissible against the principal, must be made at the time of the act or transaction by the agent, and constitute a part of the res gest"; or, if not so made, that they must be authorized by the principal. Mil. and Miss. R. R. Co., v. Finney, 10 Wis., 391. The defendant Peter Lasallette was acting as the agent of his wife, the defendant Christina, in the affair of the alleged purchase of the hops in payment of the note and mortgage. His declarations or statements at that time as to the hops being received in payment were admissible against the defendant Mrs. Lasallette, but not his declarations or statements made afterwards, unless it was shown that Mrs. Lasallette authorized them. The court below ruled, however, as appears from the record, that his declarations subsequently made to the witness Harris were admissible, and might be read as evidence against her, although it was not shown that she either knew of or assented to such declarations. To this objection and exception were taken by counsel in her behalf. We think the ruling and decision of the court clearly erroneous. The power and capacity of a husband when acting as the agent of his wife are no greater than if he were acting as the agent of any other person. It will not do to say, because he is her husband, that he is authorized to admit away the legal rights of his wife in a business or transaction where he once acted as her agent. The rule in such cases must be that which governs in all others, and the declarations of the husband here ought not to have been received as evidence against the wife, but only against himself | The declarations of an agent, not made at the time of the transaction so as to constitute a part of the res gestae, and not authorized by the principal, are not binding upon the latter; and this rule applies where a husband acts as agent of his wife. | Do declarations made by an agent at the time of an act constitute a part of the res gest to bind the principal? | 041669.docx | LEGALEASE-00158922-LEGALEASE-00158923 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8819 | Simpson v. Compagnie Nationale Air France, 42 Ill. 2d 496 | 308+3(1) | The characteristics differentiating between a "broker" and an "agent" are clearly set out in City of Chicago v. Barnett, 404 Ill. 136, 142, 88 N.E.2d 477, 481. The court there said: "A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, (citation) whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance." | A "broker", as distinguished from an agent, sustains no fixed and permanent employment by or in relation to any principal, but holds himself out for employment by public generally, his employment being that of special agent for single object, whereas "agent" sustains fixed and permanent relation to his principal and owes permanent and continued allegiance. | How is a broker distinguished from an agent? | Principal and Agent - Memo 390 - RK_63948.docx | ROSS-003306718-ROSS-003306719 | Order, SA | 0.4 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8820 | McAfee v. Agilysys, 316 S.W.3d 820 | 308+1 | McAfee alleged the fiduciary relationship arose because "Agilysys agreed to act as McAfee's agent to ... arrange for Barrister (or some other party) to provide the work required to fulfill Extended Warranties." An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. Townsend v. Univ. Hosp.-Univ. of Colo., 83 S.W.3d 913, 921 (Tex.App.-Texarkana 2002, pet. denied); see Berge v. Columbus Cmty. Cable Access, 136 Ohio App.3d 281, 736 N.E.2d 517, 531 (1999). The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. Townsend, 83 S.W.3d at 921; see Berge, 736 N.E.2d at 531. | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | "Is right to control, the critical element of agency relationship?" | Principal and Agent - Memo 470-PR_63793.docx | ROSS-003323494-ROSS-003323495 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8821 | In re IFS Fin. Corp., 417 B.R. 419 | 308+1 | Based on Luis de la Pena's control over his sisters' account, the Court finds that Luis de la Pena was his sisters' agent for the purposes of the account. "Under Texas Law, agency is a legal relationship created by the express or implied agreement between the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's control." Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 269 (5th Cir.1980). A leading authority on agency has described a principal-agent relationship as follows:There is no particular mode or method which must be adhered to in order to create or establish agency. Regardless of the terms used by the parties, or by what name the transaction is designated, if the facts fairly disclose that one party is acting for or representing another, by the latter's authority the agency exists.Williston On Contracts, " 35:1 (4th ed.1999) (citing Restatement (Second) of AgencyY " 15, (2nd ed.1958)); Smith v. Matias (In re IFS Financial Corp.), 2008 WL 2778845, at 13 (Bankr.S.D.Tex. July 15, 2008). | Under Texas Law, "agency" is a legal relationship created by the express or implied agreement between the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's control. | Is an agent subject to the principal's control? | Principal and Agent - Memo 546 - RK_64004.docx | ROSS-003310273-ROSS-003310274 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8822 | Johnson v. Owens, 629 S.W.2d 873 | 308+1 | An essential element of proof of agency is that the alleged principal has both the right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the task. New Terminal Warehouse Corp. v. Wilson, 589 S.W.2d 465 (Tex.Civ.App.-Houston (14th Dist.) 1979, writ ref'd. n.r.e. per curiam, 605 S.W.2d 855, Tex. 1980). | An essential element of proof of agency is that alleged principal has both right to assign agent's task and to control means and details of process by which agent will accomplish the task. | Is the right to assign the agents task an essential element of agency? | Principal and Agent - Memo 586 - RK_64020.docx | ROSS-003309928-ROSS-003309929 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 8823 | In re Pedro J.C., 154 Conn. App. 517 | 24+179 | The state juvenile court must base its decision on state law, not on policy considerations or a desire to determine worthy candidates for citizenship. See Leslie H. v. Superior Court, 224 Cal.App.4th 340, 344, 168 Cal.Rptr.3d 729 (2014). Further, the juvenile court must not concern itself with whether the "juvenile's application constitutes a potential abuse or misuse of the [SIJS] provisions...." Matter of Mario S., supra, 38 Misc.3d at 456, 954 N.Y.S.2d 843. After a juvenile court makes the required preliminary findings, they do not automatically confer any immigration status on SIJS applicants. The findings are one step in the application process. USCIS determines whether the applicant meets the requirements for SIJS under federal law, and its decision whether to grant SIJS is discretionary. See 8 U.S.C. " 1101(a)(27)(J)(iii) (Supp.2011). | The juvenile court, when considering making a special immigrant juvenile status (SIJS) eligibility finding due to neglect, must not concern itself with whether the juvenile's application constitutes a potential abuse or misuse of the SIJS provisions. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Should a juvenile court be concerned with whether the juvenile application constitutes a potential misuse of SIJS provisions? | "Aliens, Immigration and Citizenship - Memo 147 - RK_64785.docx" | ROSS-003279376-ROSS-003279377 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 8824 | Majlinger v. Cassino Contracting Corp., 25 A.D.3d 14 | 24+102 | The defendants in this case contend that the plaintiff, as an undocumented alien, is not entitled to recover lost wages because such a remedy is preempted by federal immigration policy, as expressed in the IRCA and the Hoffman decision. When Congress enacts a statute "touching the rights, privileges, obligations or burdens of aliens as such ... the statute is the supreme law of the land" (Hines v. Davidowitz, 312 U.S. 52, 63, 61 S.Ct. 399, 85 L.Ed. 581; see U.S. Const., art. I, " 8[4]; Nyquist v. Mauclet, 432 U.S. 1, 10, 97 S.Ct. 2120, 53 L.Ed.2d 63 ["Control over immigration and naturalization is entrusted exclusively to the Federal Government, and a State has no power to interfere"] ). Under the Supremacy Clause (U.S. Const., art. VI, " 2), Congress is empowered to preempt state law. "In the absence of explicit statutory language signaling an intent to pre-empt [a court may] infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation ... or where the state law at issue conflicts with federal law" (Northwest Cent. Pipeline Corp. v. State Corp. Commn. of Kansas, 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 [citations omitted]). | When Congress enacts a statute touching the rights, privileges, obligations or burdens of aliens as such, the statute is the supreme law of the land. | Does a statute enacted by Congress touching on the rights & privileges of aliens becomes the supreme law of the land? | "Aliens, Immigration and Citizenship - Memo 70 - RK_64804.docx" | ROSS-003297165-ROSS-003297166 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8825 | Arizona v. United States, 567 U.S. 387 | 360+18.43 | Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders. If " 3 of the Arizona statute were valid, every State could give itself independent authority to prosecute federal registration violations, "diminish[ing] the [Federal Government]'s control over enforcement" and "detract[ing] from the "integrated scheme of regulation" created by Congress." Wisconsin Dept. of Industry v. Gould Inc., 475 U.S. 282, 288"289, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986). Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field (like the field of alien registration) that has been occupied by federal law. See California v. Zook, 336 U.S. 725, 730"731, 733, 69 S.Ct. 841, 93 L.Ed. 1005 (1949); see also In re Loney, 134 U.S. 372, 375"376, 10 S.Ct. 584, 33 L.Ed. 949 (1890) (States may not impose their own punishment for perjury in federal courts). | Even if State may make violation of federal law a crime in some instances, it cannot do so in field, like field of alien registration, that has been occupied by federal law. U.S.C.A. Const. Art. 6, cl. 2. | Can a state make a violation of federal law a crime in a field that has been occupied by federal law? | "Aliens, Immigration and Citizenship - Memo 90 - RK_64823.docx" | ROSS-003297581-ROSS-003297582 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8826 | Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv., 2016 IL App (1st) 151659 | 217+1712 | The cases described above represent the common understanding of what constitutes "insurance" versus "self-insurance." The term "insurance," or an "insurance contract," generally refers to a policy issued by an authorized and licensed insurance company whose primary business is to assume certain risks of loss of its insureds, in exchange for the payment of a "premium." "Self-insurance," by contrast, is defined as " "the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." " See Fellhauer v. Alhorn, 361 Ill.App.3d 792, 796, 297 Ill.Dec. 646, 838 N.E.2d 133 (2005) (quoting American Nurses Ass'n v. Passaic General Hospital, 192 N.J.Super. 486, 471 A.2d 66, 69 (N.J.Super.Ct.App.Div.1984)). Unlike an insurance policy holder, a self-insuring municipality " "bears all risks itself, and settlements or awards are paid directly from government coffers." " State Farm Mutual Automobile Insurance Co., 2011 IL App (2d) 100580, " 37, 352 Ill.Dec. 891, 955 N.E.2d 67 (quoting Antiporek, 114 Ill.2d at 250, 102 Ill.Dec. 294, 499 N.E.2d 1307). | The terms "insurance" or "insurance contract" generally refer to a policy issued by an authorized and licensed insurance company whose primary business is to assume certain risks of loss of its insureds, in exchange for the payment of a premium. | What is an insurance contract? | 019564.docx | LEGALEASE-00159252-LEGALEASE-00159253 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8827 | Metzger v. Breeze Corps., 37 F. Supp. 693 | 170A+631 | If the causes of action in the third-party complaint have been created by Sections 11 and 12 of the Securities Act of 193310, which fixes a time within which the action must be brought as an essential element of the right to sue , that is, if the complaint could be so limited, the motion of Clarence K. Pistell should prevail. However, the Federal Rules of Civil Procedure for District Courts are based on the theory of a rather general form of pleading, they enjoin simplicity, conciseness and directness and technical forms are eschewed. The requirement of consistency is done away with and inconsistent claims are allowed. All refinements of pleading are subordinated to one aim: The achievement of substantial justice. Courts are urgently charged to interpret pleadings in that spirit | The Federal rules are based on the theory of a rather general form of pleading and enjoin simplicity, conciseness and directness, while eschewing technical forms. Fed.Rules Civ.Proc., rule 8(e)(1,2), (f), 28 U.S.C.A. | Are the Federal Rules of Civil Procedure based on the theory of a rather general form of pleading? | 023846.docx | LEGALEASE-00159393-LEGALEASE-00159394 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8828 | Dorin v. Occidental Life Ins. Co. of Cal., 132 Ill. App. 2d 387 | 302+354 | Defenses which are in their nature factual rather than legal do not constitute grounds for a motion to dismiss, but must be set forth in an answer to the plaintiff's pleading. Vrooman v. Hawbaker, 387 Ill. 428, 56 N.E.2d 623. The trial court properly denied defendant's motion to dismiss. | Defenses which are in their nature factual rather than legal do not constitute grounds for a motion to dismiss, but must be set forth in an answer to plaintiff's pleading. | Can defenses which are factual set forth in an answer to plaintiff's pleading? | 039585.docx | LEGALEASE-00159493-LEGALEASE-00159494 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 8829 | Andrews v. Stanton, 198 S.W.3d 4 | 307A+697 | A trial court has plenary power to reinstate a case within thirty days of dismissal for want of prosecution. Tex.R.Civ.P. 165a(3), (4); In re Garcia, 94 S.W.3d 832, 833 (Tex.App.-Corpus Christi 2002, orig. proceeding). A timely filed verified motion to reinstate extends plenary power like a motion for new trial does. Tex.R.Civ.P. 165a(3), (4); McConnell v. May, 800 S.W.2d 194 (Tex.1990); Garcia, 94 S.W.3d at 833. An unverified motion does not extend the trial court's plenary power nor the time in which to perfect an appeal. Butts v. Capitol City Nursing Home, Inc., 705 S.W.2d 696, 697 (Tex.1986); 3V, Inc. v. JTS Enterprises, Inc., 40 S.W.3d 533, 538 (Tex.App.-Houston [14th Dist.] 2000, no pet.). | A trial court has plenary power to reinstate a case within 30 days of dismissal for want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3, 4). | Does a trial court have plenary power to reinstate a case within 30 days of dismissal for want of prosecution? | 039766.docx | LEGALEASE-00159331-LEGALEASE-00159332 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 8830 | Stephens v. Messick, 2002 PA Super 117 | 307A+581 | It is significant that the initial entry of a judgment of non pros and a subsequent request for relief from a judgment of non pros are governed by different standards. It is helpful to review them here together with their applicable standards of appellate review. | Initial entry of a judgment of non pros and a subsequent request for relief from a judgment of non pros are governed by different standards. | Are an initial entry of a judgment of non pros and a subsequent request for relief from a judgment of non pros governed by different standards? | 039785.docx | LEGALEASE-00159358-LEGALEASE-00159359 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 8831 | Olson v. Accessory Controls & Equip. Corp., 54 Conn. App. 506 | 307A+694 | "A ruling on a motion to dismiss is neither a ruling on the merits of the action nor a test of whether the complaint states a cause of action. Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 306-307, 635 A.2d 843 (1993). | Ruling on motion to dismiss is neither a ruling on the merits of the action, nor a test of whether the complaint states a cause of action. | "Is a ruling on a motion to dismiss neither a ruling on the merits of the action, nor a test of whether the complaint states a cause of action?" | 039865.docx | LEGALEASE-00159638-LEGALEASE-00159639 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 8832 | Monterey Bay Military Hous. v. Pinnacle Monterey LLC, 116 F. Supp. 3d 1010 | 308+33 | The authority granted to the Clark Managers is broad. Moreover, given that revocation is not an "adjustment" to the terms of the PMAs, and given the breadth of the exception to the "adjustment" Major Decision, it is clear that the CPMB and CPCMC members intended that there would be little hindrance to the Clark Manager's management of CPMB's and CPCMC's "business" as managing member of MBMH and CMC. Indeed, the PMAs themselves provide that AMSC can rely on the direction or consent of the Clark Manager as the act of the Owner. Monterey PMA. As such, if AMSC is directed to vacate the premises by the Clark Manager for CPMB and CPCMC, the PMAs instruct AMSC that that is the act of the Owner. Of course, the parties are well aware that the statutory power of a principal to revoke an agency is "independent and distinguishable from a contractual right" to terminate that relationship. "If the exercise of the statutory revocation power is contractually unjustified, damages may be in order." In that respect, the Pinnacle Managers' financial interests in the PMAs are still protected. | Under California law, the statutory power of a principal to revoke an agency is independent and distinguishable from a contractual right to terminate that relationship. Cal. Civ. Code S 2356. | Is the statutory power of a principal to revoke an agency is independent and distinguishable from a contractual right to terminate the relationship? | 041289.docx | LEGALEASE-00159501-LEGALEASE-00159502 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8833 | Menard Inc. v. Dep't of Treasury, 302 Mich. App. 467 | 371+3602 | Pursuant to MCL 205.52(1) of the GSTA, business persons engaged in making sales at retail must pay an annual tax for the privilege of engaging in business in this state. World Book, Inc. v. Dep't of Treasury, 459 Mich. 403, 407, 590 N.W.2d 293 (1999). The sales tax is imposed directly on the seller, but the seller may transfer it directly to the consumer at the point of sale. Id. at 408, 590 N.W.2d 293. The bad debt provision of the GSTA allows "bad debts to be deducted from the gross proceeds used to calculate tax liability." Id. at 406, 590 N.W.2d 293. Specifically, the bad debt provision "allows taxpayers to recover overpayment when expected sales proceeds are not received." DaimlerChrysler, 271 Mich.App. at 626, 723 N.W.2d 569. | Pursuant to the General Sales Tax Act (GSTA), business persons engaged in making sales at retail must pay an annual tax for the privilege of engaging in business in this state. M.C.L.A. S 205.52(1). | Is the sales tax imposed on the retailer for the privilege of engaging in the business of making retail sales? | 046191.docx | LEGALEASE-00159748-LEGALEASE-00159749 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8834 | In re Lee's Estate, 17 Misc. 2d 575 | 294+67(1) | The rule is well settled that the unexplained delivery of a check by one person to another does not raise any inference that it was given as a loan. On the contrary, the presumption is that it was given in discharge of an obligation rather than in the creation of a new one (Nay v. Curley, 113 N.Y. 575, 577, 21 N.E. 698, 699; Koehler v. Adler, 78 N.Y. 287, 291; Poucher v. Scott, 33 Hun 223, 228, affirmed 98 N.Y. 422, 424; Matter of Bakri's Estate, Sur., 109 N.Y.S.2d 654). Here, however, the objectant's case does not rest solely upon the delivery of the $2,000 check. The record shows that the objectant had an account with a brokerage firm, that the decedent told the broker to sell out the objectant's holdings and to send her the proceeds. The broker called the objectant to verify the decedent's authority to give such instruction and the objectant confirmed the instructions. She told the broker that she would give the decedent another check. The assets in the account were sold and a check was mailed by the broker to the objectant. The decedent thereupon brought to the broker a new check in the sum of $2,000 and opened an account in his name. | The unexplained delivery of a check by one person to another does not raise any inference that it was given as a loan but the presumption is that it was given in discharge of an obligation rather than in creation of a new one. | Does unexplained delivery of a check raise a presumption that it was given in payment of a debt? | 010481.docx | LEGALEASE-00161134-LEGALEASE-00161135 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8835 | United States v. Denogean, 79 F.3d 1010 | 135H+25 | In the instant case we hold that Defendant has waived her double jeopardy argument by failing to raise it below. Moreover, no miscarriage of justice will result because, under our precedent, Defendant can demonstrate no error, and hence, no plain error. Thus, under the law of this circuit, which we apply to pending appeals, Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), a defendant's failure to judicially contest a civil forfeitureaction is fatal to her double jeopardy challenge to a subsequent criminal proceeding. | Defendant's failure to judicially contest civil forfeiture action is fatal to double jeopardy challenge to subsequent criminal proceeding. U.S.C.A. Const.Amend. 5. | Is a defendant's failure to contest civil forfeiture action fatal to a double jeopardy challenge? | Double Jeopardy - Memo 40 - C - KI_65141.docx | ROSS-003281210 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8836 | State v. Storer, 368 S.W.3d 293 | 135H+95.1 | Subsection 4 of section 56.087 expressly provides that "double jeopardy attaches" for the purpose of this statute "when the jury has been impaneled and sworn." Applying that definition yields the clear result that a dismissal filed after the jury has been impaneled and sworn is with prejudice unless the "defendant has consented to having the case dismissed without prejudice." | Dismissal filed after a jury has been impaneled and sworn is with prejudice, pursuant to statute, unless the defendant has consented to having the case dismissed without prejudice. V.A.M.S. S 56.087(2, 4). | "Is a dismissal filed after a jury has been impaneled and sworn is with prejudice, unless the defendant has consented to having the case dismissed without prejudice?" | Double Jeopardy - Memo 64 - C - SJ_65164.docx | ROSS-003284180-ROSS-003284181 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 8837 | In re Marcus B., 95 A.D.3d 15 | 135H+96 | The Double Jeopardy Clauses in the Fifth Amendment to the United States Constitution and in article I, " 6 of the New York Constitution protect an accused against multiple prosecutions for the same offense. People v. Ferguson, 67 N.Y.2d 383, 387, 494 N.E.2d 77, 80, 502 N.Y.S.2d 972, 975 (1986). This protection applies to respondents in juvenile delinquency cases. See Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Double Jeopardy Clause limits the instances in which a mistrial can be declared without a criminal defendant's consent because the defendant possesses a "valued right to have his trial completed by a particular tribunal." Hall v. Potoker, 49 N.Y.2d 501, 505, 427 N.Y.S.2d 211, 214, 403 N.E.2d 1210, 1212 (1980) (internal quotation marks omitted) | Double Jeopardy Clause limits instances in which mistrial can be declared without criminal defendant's consent. U.S.C.A. Const.Amend. 5; McKinney's Const. Art. 1, S 6. | Does the Double Jeopardy Clause limit instances in which a mistrial can be declared without a criminal defendant's consent? | 015978.docx | LEGALEASE-00160773-LEGALEASE-00160774 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8838 | Peasley v. White, 129 Me. 450 | 200+177 | The driver of an automobile, encountering a fog, is not bound as a matter of law to stop and wait for the fog to lift in order to escape the charge of negligence. It is common knowledge that the fogs from the sea and of the inland are usually penetrable to the eye, and, while visibility may be low, if the driver proceeds with due care, progress may be made through them with reasonable safety. The degree of care to be exercised must vary with conditions of fog, of roadway, and of traffic. The type, size, and power of the car may be of greater or less importance. It is impossible to enumerate all factors involved, but it has been well said that the duty of the driver of a car in a fog, is: "He must, however, exercise a degree of care consistent with the existing conditions." Cole v. Wilson, 127 Me. 316, 143 A. 178, 179. | Automobile driver encountering fog is not bound as matter of law to stop and wait for fog to lift to escape charge of negligence. | Is the driver of an automobile required to stop and wait for fog to lift in order to escape the charge of negligence? | Highways - Memo 391 - RK_66321.docx | ROSS-003319760-ROSS-003319761 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8839 | Barclay v. Howell's Lessee, 31 U.S. 498 | 200+83 | By the common law, the fee in the soil remains in the original owner, where a public road is made upon it, but the use of the road is in the public. The owner parts with this use only; for if the road should be vacated by the public, he resumes the exclusive possession of the ground; and while it is used as a high-way, he is entitled to the timber and grass which may grow upon the surface, and to all minerals which may be found below it. He may bring an action of trespass against any one who obstructs the road. | By the common law, the fee in the soil over which a public road passes remains in the original owner. If the road is vacated by the public, he resumes the exclusive possession. While it is used as a highway, the timber and grass upon its surface, and the minerals below it, are his; and he may maintain trespass against any one obstructing such road. | "Does the fee in the soil where a public road is made upon it, but the use of the road is in the public, remain in the original owner under the common law?" | 018827.docx | LEGALEASE-00161651-LEGALEASE-00161652 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 8840 | Roberts v. Mississippi State Highway Comm'n, 309 So. 2d 156 | 200+182 | The regulation of vehicle and load weights is a long-recognized and long-used method of maintaining and preserving the state highways. According to language in the case of Whitworth v. Mississippi State Highway Commission, 203 Miss. 94, 33 So.2d 612 (1948), not only construction, but also maintenance, is a legitimate end of the eminent domain powers of the state highway commission. The Court said: "Code 1942, Sections 8023, 8038 (now Miss.Code Ann. ss 65-1-19 and 65-1-47 (1972)), authorizes the Commission "to obtain and pay for rights of way, " and to this end "may condemn . . . or acquire by gift or purchase lands containing road building materials . . . to condemn or to acquire by gift or purchase lands necessary for the safety and convenience of traffic." The extent of authority in the cited sections contemplates *160 the acquisition of rights of way to the end that a highway system may be constructed and maintained. That it may so acquire "land or other property" is to be interpreted in the light of a means by which it may attain its ordained end, to wit, that such lands "be necessary for a state highway, system."" 203 Miss. at 106, 33 So.2d at 613. | Regulation of vehicle and load weights is long-recognized and long-used method of maintaining and preserving state's highways. Code 1972, S 65-1-47. | Is the regulation of vehicle and load weights a long-recognized and long-used method of maintaining and preserving the state highways? | Highways - Memo 450 - RK_66350.docx | ROSS-003311046-ROSS-003311047 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8841 | Garrett v. Koepke, 569 S.W.2d 568 | 289+1105 | Appellees admit that they had failed to file a certificate of limited partnership as required by Tex.Rev.Civ.Stat.Ann. art. 6132a (Vernon 1970). Appellants contend, therefore, that appellees are liable for the debt sued upon as general partners. We cannot agree with this contention. We see no logical reason to strip appellees of their limited liability under their partnership agreement merely because they failed to comply with art. 6132a. The purpose of the filing requirements under the act is to provide notice to third persons dealing with the partnership of the essential features of the partnership arrangement. | Section of Uniform Limited Partnership Act, which requires filing with Secretary of State a certificate setting forth certain information pertaining to limited partnership, has purpose to provide notice to third persons dealing with partnership of essential features of partnership arrangement. Vernon's Ann.Civ.St. art. 6132a, S 1 et seq. | "Is the certificate which is filed during the formation of partnership, filed to give third persons notice of the essential features of the limited partnership?" | Partnership - Memo 561 - GP_65233.docx | ROSS-003280610-ROSS-003280611 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 8842 | McErlean v. Union Nat. Bank of Chicago, 90 Ill. App. 3d 1141 | 307A+699 | Both parties agree that McErlean was denied leave to amend his first amended complaint, although no explicit mention of the denial was made in the trial court's order. The record contains no transcript of the hearing on the motion. No second amended complaint was tendered for the court's consideration effectuating a cure of the defects in the first amended complaint. The trial court cannot be held to have abused its discretion in denying McErlean's leave to amend under these circumstances. (Volvo of America Corp. v. Gibson (1980), 83 Ill.App.3d 487, 39 Ill.Dec. 22, 404 N.E.2d 406.) Further, leave to amend is properly denied where, as here, it is apparent that plaintiff will be unable to plead a viable cause of action. People ex rel. Council 19 v. Egan (1977), 52 Ill.App.3d 1042, 1045, 10 Ill.Dec. 886, 368 N.E.2d 481. | Leave to amend is properly denied where it is apparent that plaintiff will be unable to plead viable cause of action. | Is leave to amend properly denied where it is apparent that a plaintiff will be unable to plead a viable cause of action? | 039664.docx | LEGALEASE-00160949-LEGALEASE-00160950 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 8843 | Inserra v. Porto, 33 A.D.2d 1092 | 228+143(2) | It has long been the rule that to permit a defaulting party to prevail upon a motion to vacate, he must present facts showing a justifiable excuse for the default as well as a meritorious defense (Hurley v. Reoux, 29 A.D.2d 789, 287 N.Y.S.2d 163; Community Nat. Bank v. Mon-Ami Corp., 23 A.D.2d 511, 255 N.Y.S.2d 116). While it may be held under the peculiar circumstances here present, that the neglect of defendant's attorney was excusable (cf. Wall v. Bennett, 33 A.D.2d 827, 305 N.Y.S.2d 728 (dec. December 4, 1969); Becker Wrecking & Salvage Corp. v. Pinebrook Const. Corp., 22 A.D.2d 976, 254 N.Y.S.2d 747), we are unable to grant the requested relief since no affidavit of merit has been supplied (Roach v. County of Albany, 30 A.D.2d 885, 291 N.Y.S.2d 497, affd. on rearg., 31 A.D.2d 681, 295 N.Y.S.2d 791; Monette v. Bonsall, 29 A.D.2d 839, 287 N.Y.S.2d 342) | To prevail on motion to vacate default, movant must present facts showing a justifiable excuse for default as well as a meritorious defense. | "On a motion by a defaulting party to vacate order of dismissal, should he show a justifiable excuse for the default and present evidentiary facts establishing that he has a meritorious cause of action?" | 040007.docx | LEGALEASE-00160519-LEGALEASE-00160520 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8844 | Mississippi Rice Growers Ass'n (A. A. L.) v. Pigott, 191 So. 2d 399 | 307A+699 | We are of the opinion that a trial court can reinstate any case during that term of court, or change any order entered at that term of court, for any reason satisfactory to the court without notice to the adverse party. | Trial court can reinstate any case during that term of court, or change any order entered at that term of court, for any reason satisfactory to court without notice to adverse party. | Can a court reinstate a case without notice to adverse party during its term in which it was dismissed? | 040013.docx | LEGALEASE-00160717-LEGALEASE-00160718 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 8845 | McClure v. Landis, 959 S.W.2d 679 | 307A+697 | Proof of accident or mistake negates the intent or conscious indifference for which reinstatement or a new trial will be denied. See id. at 468. To establish a right to a new trial, one must show "some excuse," not necessarily a good excuse, for failing to comply with a judicial requirement. Gotcher v. Barnett, 757 S.W.2d 398, 401 (Tex.App."Houston [14th Dist.] 1988, no writ); see also Craddock, 133 S.W.2d at 125. A party moving for a new trial may support his position by affidavits attached to the motion and by evidence. In Evans, the trial judge was held to have abused his discretion by refusing a new trial when the record did not controvert movant's affidavit statement regarding his mistaken belief as to a trial date. | Proof of accident or mistake negates intent or conscious indifference for which reinstatement after dismissal for want of prosecution or equitable motion for new trial will be denied. | Will the court deny reinstatement or new trial when proof of accident or mistake negates intent or conscious indifference? | 040045.docx | LEGALEASE-00161450-LEGALEASE-00161451 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 8846 | Pontiac Lodge No. 294, A.F. & A.M. v. Dept of Revenue, 243 Ill. App. 3d 186 | 307A+697 | The circuit court docket further showed an entry of June 14, 1988, purporting to dismiss the administrative review. However, the entry was scratched out, and a handwritten entry indicated the order of dismissal was vacated because Pontiac Lodge had made a sufficient filing on June 14, 1988. The record indicated both sides had been dilatory before the circuit court. Even when the pleading involved is a criminal complaint, the circuit court has reasonable discretion in determining whether to reinstate such a complaint after it has been dismissed for want of prosecution. (People v. Brown (1968), 39 Ill.2d 307, 311, 235 N.E.2d 562, 565.). That discretion was not breached here. | Circuit court has reasonable discretion in determining whether to reinstate complaint after it has been dismissed for want of prosecution. | Does a circuit court have reasonable discretion in determining whether to reinstate a complaint after it has been dismissed for want of prosecution? | Pretrial Procedure - Memo 11519 - C - NE_65334.docx | ROSS-003292744-ROSS-003292745 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8847 | Bristol Co., LP v. Osman, 190 P.3d 752 | 307A+695 | The doctrine of futility justifies denying the amendment when the amendment would not survive a motion to dismiss, merely restates the same facts as the original complaint, or reasserts a claim already dismissed by the trial court. Benton, 56 P.3d at 86"87. "The trial court does not abuse its discretion when it denies a motion to amend which is futile." Conrad v. Imatani, 724 P.2d 89, 94 (Colo.App.1986). However, the trial court should allow amendment of the complaint when it will cure a deficiency that otherwise would justify dismissal. Smith v. Mills, 123 Colo. 11, 14, 225 P.2d 483, 485 (1950). | A trial court should allow amendment of a complaint when it will cure a deficiency that otherwise would justify dismissal. | Should a trial court allow amendment of a complaint when it will cure a deficiency that otherwise would justify dismissal? | 040204.docx | LEGALEASE-00161483-LEGALEASE-00161484 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8848 | Caruso, Caruso & Branda, P.C. v. Hirsch, 41 A.D.3d 407 | 307A+695 | Leave to amend a pleading shall be freely given absent prejudice or surprise resulting directly from the delay (see CPLR 3025b). However, when a proposed amendment "is palpably insufficient as a matter of law or is totally devoid of merit," leave will be denied (Norman v. Ferrara, 107 A.D.2d 739, 740, 484 N.Y.S.2d 600; see Ricca v. Valenti, 24 A.D.3d 647, 648, 807 N.Y.S.2d 123). | On motion to dismiss, when a proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit, leave to amend will be denied. McKinney's CPLR 3025(b). | "When a proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit, will leave to amend be denied?" | Pretrial Procedure - Memo 11585 - C - NE_65603.docx | ROSS-003293885-ROSS-003293886 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8849 | In re Cty. Collector of Lake Cty., 343 Ill. App. 3d 363 | 307A+695 | Petitioners also argue that the trial court erred in making the dismissal with prejudice. A trial court should dismiss a complaint with prejudice under section 2"615 of the Code only if it is clearly apparent that the plaintiffs can prove no set of facts that will entitle them to recover. Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 488, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). The decision to deny leave to amend is within the sound discretion of the trial court. Cantrell v. Wendling, 249 Ill.App.3d 1093, 1095, 189 Ill.Dec. 350, 620 N.E.2d 9 (1993); see also Clemons v. Mechanical Devices Co., 202 Ill.2d 344, 351, 269 Ill.Dec. 882, 781 N.E.2d 1072 (2002). However, the trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments. Cantrell, 249 Ill.App.3d at 1095"96, 189 Ill.Dec. 350, 620 N.E.2d 9. Generally, the trial court should give a plaintiff at least one opportunity to cure the defects in his or her complaint. See Cantrell, 249 Ill.App.3d at 1095"96, 189 Ill.Dec. 350, 620 N.E.2d 9. | Generally, the trial court should give a plaintiff at least one opportunity to cure the defects in his or her complaint before dismissing complaint. | Should the trial court give a plaintiff at least one opportunity to cure the defects in his or her complaint before dismissing? | 040240.docx | LEGALEASE-00161673-LEGALEASE-00161674 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 8850 | Olin Corp. v. Coastal Water Auth., 849 S.W.2d 852 | 307A+695 | The striking of a condemnee's objections to a condemnation award is equivalent to a dismissal for want of prosecution. Stuart v. Harris County Flood Control Dist., 537 S.W.2d 352, 354 (Tex.Civ.App."Houston [14th Dist.] 1976, writ ref'd n.r.e.). Ordinarily, a litigant may refile an action that has been dismissed for want of prosecution, since the merits of the action remain undecided. Rizk v. Mayad, 603 S.W.2d 773, 775 (Tex.1980); Thomas, 838 S.W.2d at 298. However, a trial court's striking of objections to a condemnation award and entry of a final judgment acts as a decision on the merits, and prevents the objecting party from refiling. Thus, we note at the outset that because of the unique nature of a condemnation lawsuit, the striking of objections to an award has more drastic consequences than an ordinary dismissal without prejudice. | Ordinarily, litigant may refile action that has been dismissed for want of prosecution, since merits of action remain undecided. | "Can a litigant refile an action that has been dismissed for want of prosecution, since merits of action remain undecided?" | 040319.docx | LEGALEASE-00161064-LEGALEASE-00161065 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8851 | Hoots v. Pryor, 106 N.C. App. 397 | 307A+695 | A dismissal under Rule 12(b)(6) operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice. N.C.R.Civ.P. 41(b) (1990); Johnson v. Bollinger, 86 N.C.App. 1, 356 S.E.2d 378 (1987). In the case sub judice the trial judge did not so indicate and the dismissal is thus with prejudice. While a motion to dismiss under Rule 12(b)(6) does not terminate a party's unconditional right to amend pursuant to Rule 15(a), the entry of a dismissal under Rule 12(b)(6) does terminate that right. Id. at 7, 356 S.E.2d at 382 (citing federal cases). | While motion to dismiss for failure to state claim does not terminate party's unconditional right to amend pursuant to rules, entering of dismissal for failure to state claim does terminate that right. Rules Civ.Proc., Rules 12(b)(6), 15(a), G.S. S 1A-1. | "While motion to dismiss for failure to state claim does not terminate party's unconditional right to amend pursuant to rules, does entering of dismissal for failure to state claim terminate that right?" | 040326.docx | LEGALEASE-00161082-LEGALEASE-00161083 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 8852 | State ex rel. Dawson v. Superior Court of Kittitas Cty., 16 Wash. 2d 300 | 307A+583 | A court of general jurisdiction has the inherent power to dismiss pending actions if they are not diligently prosecuted, and it is its duty to do so in the orderly administration of justice. The dismissal of an action for want of prosecution, in the absence of statute or rule of court creating the power and guiding its action, is in the discretion of the court. As a general rule, the discretion of the court cannot be controlled by madamus. As rule III of the general rules of practice does not involve any element of discretion, we have held that mandamus will lie. State ex rel. Lyle v. Superior Court, supra. This is why. we have, in this case, concluded to treat this proceeding as one of certiorari and not one of mandamus | The dismissal of an action for want of prosecution, in absence of statute or court rule creating the power and guiding its action, is in discretion of trial court. | Is the dismissal of an action for want of prosecution in the discretion of the court in the absence of a guiding statute or rule of court? | 040387.docx | LEGALEASE-00160570-LEGALEASE-00160571 | Order, SA | 0.78 | 1 | 0 | 0 | 1 | |
| 8853 | Streu v. City of Colorado Springs ex rel. Colorado Springs Utilities, 239 P.3d 1264 | 307A+583 | The decision to dismiss an action for failure to prosecute lies within the sound discretion of the water court. Lake Meredith Reservoir Co., 698 P.2d at 1344. We review the water court's dismissal under an abuse-of-discretion standard. Cornelius, 202 P.3d at 569 ("A trial court's decision to dismiss for failure to prosecute .. should not be overturned absent proof of the court's abuse of that discretion."); see also Lake Meredith Reservoir Co., 698 P.2d at 1344. Under this standard, we reverse a trial court's determination only if it was "manifestly arbitrary, unreasonable, or unfair." People v. Ibarra, 849 P.2d 33, 38 (Colo.1993). It is not necessary that we agree with the trial court's decision. In re Bueno, 248 B.R. 581, 582"83 (D.Colo.2000) (explaining that under an abuse-of-discretion standard the trial court's reason "need not be one that is agreeable to the reviewing court"). The trial court's decision simply must not "exceed[ ] the bounds of the rationally available choices." Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't, 533 F.3d 1183, 1186 (10th Cir.2008). | The decision to dismiss an action for failure to prosecute lies within the sound discretion of the water court. | Does the decision to dismiss an action for failure to prosecute lie within the sound discretion of the water court? | Pretrial Procedure - Memo 11707 - C - SKG_65425.docx | ROSS-003280332-ROSS-003280333 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 8854 | Espinoza v. 373-381 Park Ave. S., 68 A.D.3d 532 | 307A+583 | The nature and degree of the penalty to be imposed on a motion to dismiss for want of prosecution is a matter of discretion with the court (Palmenta v. Columbia Univ., 266 A.D.2d 90, 91, 698 N.Y.S.2d 657 1999). CPLR 3216 is an "extremely forgiving" rule that "never requires, but merely authorizes, the Supreme Court to dismiss a plaintiff action based on the plaintiff unreasonable neglect to proceed" (Davis v. Goodsell, 6 A.D.3d 382, 383, 774 N.Y.S.2d 568 2004). It prohibits dismissal on this ground whenever the plaintiff can show justifiable excuse for the delay and merit to the action (see CPLR 3216e; Di Simone v. Good Samaritan Hosp., 100 N.Y.2d 632, 768 N.Y.S.2d 735, 800 N.E.2d 1102 2003). | The nature and degree of the penalty to be imposed on a motion to dismiss for want of prosecution is a matter of discretion with the court. | Is the nature and degree of the penalty to be imposed on a motion to dismiss for want of prosecution a matter of discretion with the court? | Pretrial Procedure - Memo 11713 - C - NE_65431.docx | ROSS-003279094-ROSS-003279095 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8855 | Waldorf Inv. Co. v. Farris, 918 S.W.2d 915 | 30+3206 | In their final point, Plaintiffs challenge the dismissal of Counts II and III of their petition pursuant to Defendants' motion to dismiss for failure to prosecute. Dismissal for failure to prosecute is a matter within the trial court's discretion which will be reversed only upon an abuse of discretion. Belleville v. Director of Revenue, 825 S.W.2d 623, 624 (Mo. banc 1992). An abuse of judicial discretion occurs when the trial court's ruling is against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. at 624"25. If reasonable persons can differ about the propriety of the action taken, then it cannot be said that the trial court abused its discretion. Shirrell v. Missouri Edison Co., 535 S.W.2d 446, 448 (Mo. banc 1976). | Dismissal for failure to prosecute is matter within trial court's discretion which will be reversed only upon abuse of discretion. | Is the dismissal for failure to prosecute a matter within trial court's discretion which will be reversed only upon abuse of discretion? | 040513.docx | LEGALEASE-00161377-LEGALEASE-00161378 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8856 | Clark v. Yarbrough, 900 S.W.2d 406 | 307A+583 | A trial court has the authority to dismiss a case for want of prosecution pursuant to Rule 165a or its inherent powers. Ozuna v. Southwest Bio"Clinical Lab., 766 S.W.2d 900, 901 (Tex.App."San Antonio 1989, writ denied). A court may dismiss a case for want of prosecution if the party seeking relief fails to appear for any hearing or trial of which the party had notice, Rule 165a(1); for noncompliance with time standards, Rule 165a(2); or for lack of due diligence, Rule 165a(4). The different kinds of dismissals are cumulative and independent. Id. In the case of a failure to appear, the clerk must send notice of the intention to dismiss and the date and place of the dismissal hearing to each attorney of record and to each party not represented by an attorney and whose address is shown on the docket or in the file papers by posting same in the United States Postal Service. Rule 165a(1). | Trial court has authority to dismiss case for want of prosecution pursuant to statutory or inherent powers. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does the court have authority to dismiss case for want of prosecution pursuant to statutory or inherent powers? | 040517.docx | LEGALEASE-00161383-LEGALEASE-00161384 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |
| 8857 | Omaha Nat. Bank of Omaha v. Mullenax, 211 Neb. 830 | 307A+599 | The remaining issue is whether or not the dismissal of the original quiet title action for lack of prosecution was proper. While dismissal on such grounds is generally within the discretion of the trial court, it is apparent from the record that the failure to prosecute the underlying quiet title action, at least in the later stages, was due to an extended effort to end the litigation by enforcing the alleged settlement agreement. While reliance on the Simmons case may have been overly enthusiastic, the record does not establish that the delay was entirely due to the plaintiffs alone. In our view the record does not justify the dismissal of the quiet title action in the present case. | Where failure to prosecute underlying action, at least in later stages, was due to extended efforts to end litigation by enforcing alleged settlement agreement and record did not establish that delay was entirely due to plaintiffs alone, record did not justify dismissal of action for lack of prosecution. | Is a dismissal for lack of prosecution generally within discretion of trial court? | 040554.docx | LEGALEASE-00160893-LEGALEASE-00160894 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 8858 | Sellers v. Foster, 199 S.W.3d 385 | 307A+583 | A trial court has authority to dismiss a case for want of prosecution under either rule 165a of the Texas Rules of Civil Procedure or the court's inherent power to maintain and control its docket. See Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999); Maida, 990 S.W.2d at 839. A trial court may dismiss under rule 165a on the "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," or when a case is "not disposed of within time standards promulgated by the Supreme Court." Tex.R. Civ. P. 165a(1)-(2); Villarreal, 994 S.W.2d at 630. In addition, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. Villarreal, 994 S.W.2d at 631; State v. Rotello, 671 S.W.2d 507, 508"09 (Tex.1984); Herrera, 2005 WL 1048109. | A trial court has authority to dismiss a case for want of prosecution under either rule regarding such dismissals or the court's inherent power to maintain and control its docket. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does a trial court have authority to dismiss a case for want of prosecution? | 040633.docx | LEGALEASE-00161615-LEGALEASE-00161616 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 8859 | State v. Bird, 161 N.H. 31 | 3.77E+38 | Whether the defendant's belief was reasonable is determined by an objective standard. See State v. Cunningham, 159 N.H. 103, 107, 977 A.2d 506 (2009) (construing comparable language in statute concerning use of force by correctional officers). A belief that is unreasonable, even though honest, will not support the defense. Id. | Whether the defendant's belief in the need to use non-deadly force to terminate the commission of a criminal trespass was reasonable as a defense to charge of criminal threatening is determined by an objective standard; a belief that is unreasonable,even though honest, will not support the defense. | Under the objective standard may an honest yet unreasonable belief support the defense? | 046931.docx | LEGALEASE-00161060-LEGALEASE-00161061 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 8860 | Adams v. Hicks Co., 149 So. 242 | 413+105 | "It seems to be well settled, however, under the jurisprudence, that the Compensation Law only applies: (1) To those businesses specially named in the act; (2) those that have elected to come under the terms of the act; and (3) those determined in advance by the courts to be of a hazardous nature. See section 1, subsec. 3 of Act No. 20 of 1914; also, Smith v. Marine Oil Company, 10 La. App. 674, 121 So. 782. | Compensation Law only applies to businesses specially named therein, those electing to come under its terms, and those determined hazardous in advance by courts. Act No. 20 of 1914, S 1, subsec. 3, LSA-R.S. 23:1035. | Does the Compensation law apply to those businesses determined in advance by the courts to be of a hazardous nature? | Workers' Compensation Memo 693 - C - ANC_65526.docx | ROSS-003280279 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 8861 | Evans v. Anderson, 78 Ill. 558 | 8.30E+10 | It is true, the note does not, on its face, purport to have been made in the State of Indiana, yet, it so appears by the plea, and the fact is not denied. The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under them. Stacy, Admr. v. Baker, 1 Scam. 417; Holbrook et al. v. Vibbard et al. 2 ib. 465; Roundtree, Admr. v. Baker, Admr. 52 Ill. 241; Bradshaw v. Newman, Breese (2d Ed.), 133; Humphreys v. Collier et al..297. | The existing laws of the state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | Do the existing laws of a State at the time of making a note form a portion of the contract? | Bills and Notes - Memo 1335 - RK_66238.docx | ROSS-003282483 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8862 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 83E+433(1) | See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am.Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942). | Every endorsement, accommodation or otherwise, is essentially original contract, equivalent to new note or bill in favor of holder, and accommodation paper is governed by same rules as other paper. | "Is every endorsement, accommodation or otherwise, essentially a contract?" | Bills and Notes - Memo 1348 - RK_66251.docx | ROSS-003308912-ROSS-003308913 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8863 | United States v. One 1989, 23 Foot, Wellcraft Motor Vessel, Puerto Rico Registration No. PR 2855GG, 910 F. Supp. 46 | 135H+25 | In conclusion, we believe that the strength of the arguments tilts the balance in favor of the position that drug proceeds are the functional equivalent of contraband and, therefore, we will follow United States v. One Assortment of 89 Firearms, supra, in holding that the civil forfeiture of drug proceeds is a remedial sanction that does not constitute punishment for double jeopardy purposes. | Civil forfeiture of drug proceeds is a remedial sanction that does not constitute punishment for double jeopardy purposes. U.S.C.A. Const.Amend. 5; Comprehensive Drug Abuse Prevention and Control Act of 1970, S 511(a)(6), 21 U.S.C.A. S 881(a)(6). | Is civil forfeiture of drug proceeds a remedial sanction that does not constitute punishment for double jeopardy purposes? | Double Jeopardy - Memo 114 - C - BP_65893.docx | ROSS-003281855-ROSS-003281856 | SA, Sub | 0.38 | 0 | 0 | 1 | 1 | |
| 8864 | United States v. Vega, 72 F.3d 507 | 135H+25 | Where the civil forfeiture settles without a hearing, it follows that jeopardy does not attach until the district court accepts the settlement. But see United States v. Barton, 46 F.3d 51, 52 (9th Cir.1995) (court stated in dicta that the earliest that jeopardy attaches to a civil forfeiture action is when defendant files answer to forfeiture complaint). Early argues that because the government initiated the forfeiture case before bringing criminal charges, the forfeiture should bar any further punishment in the criminal case. | Where civil forfeiture settles without hearing, jeopardy does not attach until district court accepts settlement. U.S.C.A. Const.Amend. 5. | "Where civil forfeiture settles without hearing, does jeopardy not attach until a district court accepts settlement?" | 014904.docx | LEGALEASE-00162198-LEGALEASE-00162199 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8865 | United States v. Lara-Ramirez, 519 F.3d 76 | 135H+96 | A defendant may waive his right to avoid double jeopardy by consenting to a mistrial; ordinarily, the prosecution may then proceed with a new trial. United States v. Toribio-Lugo, 376 F.3d 33, 38 (1st Cir.2004). However, when a mistrial is declared without the defendant's consent, the permissibility of a new trial depends upon the "manifest necessity" for the mistrial declaration. United States v. DiPietro, 936 F.2d 6, 9 (1st Cir.1991). | A defendant may waive his right to avoid double jeopardy by consenting to a mistrial; ordinarily, the prosecution may then proceed with a new trial. U.S.C.A. Const.Amend. 5. | Can a defendant waive his right to avoid double jeopardy by consenting to a mistrial? | Double Jeopardy - Memo 127 - C - NC_65906.docx | ROSS-003281704 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 8866 | United States v. Westoff, 653 F.2d 1047 | 135H+95.1 | The conceptual contours of the former jeopardy defense may not be crystaline. Within those contours, however, reprosecution is permissible after a conviction has been reversed on an appeal in light of errors committed in the trial. United States v. Ball, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). Also within those contours, reprosecution is precluded where the defendant has been acquitted, even by implication, of the offense sought to be reprosecuted. Green, 355 U.S. at 189-91, 78 S.Ct. at 224-25. In determining the constitutionality of a retrial after a mistrial, the test is whether all the circumstances of the case, not abstract formulae, warrant mistrial and retrial. Hunter, 336 U.S. at 691, 69 S.Ct. at 838. | In determining constitutionality of retrial after mistrial, test is whether all circumstances of case, not abstract formulae, warrant mistrial and retrial. U.S.C.A.Const. Amend. 5. | "In determining constitutionality of retrial after mistrial, is the test whether all circumstances of a case, not abstract formulae, warrant mistrial and retrial?" | Double Jeopardy - Memo 421 - C - SK_66991.docx | ROSS-003292247-ROSS-003292248 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8867 | Zeller v. Donegal Sch. Dist. Bd. of Ed., 517 F.2d 600 | 141E+735 | In making our carefully considered value judgment that recognizes limits to redressable allegations of constitutionally-protected personal liberty by public school students, we are persuaded that we cannot arrogate to the federal courts the interpretation of the "conflicting ideals" of student liberty and school regulation in the context of students' hair. The very nature of the school system, public and private, requires that student liberties and freedom may not be absolute. The faculty must prescribe curriculum; the administration must assign faculty, promulgate rules for the conducting of courses and extracurricular activities, and set standards for grading, promoting and graduating. As the Supreme Court said recently in reversing the Eighth Circuit's finding of a substantive due process violation in a related school rights context. | Very nature of the school system, public and private, requires that student liberties and freedom may not be absolute. (Per Aldisert, Circuit Judge, with three Judges concurring and one Judge concurring in dismissal of complaint.) | "Do the very nature of the school system, public and private, requires that student liberties and freedom may not be absolute?" | 017280.docx | LEGALEASE-00162146-LEGALEASE-00162147 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8868 | Asshauer v. Wells Fargo Foothill, 263 S.W.3d 468 | 289+1174 | Therefore, in a limited partnership, the general partner is always liable for the debts and obligations of the partnership. Pinebrook Props., Ltd., 77 S.W.3d at 499.As such, alter ego or piercing the corporate veil is inapplicable with regard to a partnership because there is no veil that needs piercing, even when dealing with a limited partnership, because the general partner, as noted, is always liable for the debts and obligations of the partnership to third parties. Id. at 500. Thus, we conclude appellants attempts to confer standing on the court by pleading alter ego or corporate veil piercing fail. | In a limited partnership, a general partner is always liable for the partnership's debts and obligations; therefore, alter ego or piercing the corporate veil is inapplicable with regard to a partnership because no "veil" needs "piercing." Vernon's Ann.Texas Civ.St. art. 6132a-1. | Is the theory of alter ego or the piercing the corporate veil applicable to partnerships? | Partnership - Memo 577 - SNP_65955.docx | ROSS-003280186-ROSS-003280187 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8869 | Morrison v. Labor and Indus. Relations Com'n, 23 S.W.3d 902 | 289+421 | "Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors." Arnold, 934 S.W.2d at 630. While Mr. Morrison did have an active role in operating and managing Mighty Maids, Inc. and IHC, there is no proof that Mr. Morrison intended to or did in fact share in the profits, or agree to accept the losses and liabilities generated by either corporation. In fact, the record would suggest otherwise. His role in the business is more consistent with being the sole officer and manager of the corporations' business than being a partner with the corporate entities. The money Mr. Morrison received from the corporations was in the form of a paycheck, just as team members who cleaned homes received. He reported that income as salary and wages on his personal income tax returns. He did not include any corporate dividends on his returns, and more importantly did not take advantage of the losses incurred by the business by reporting them as partnership losses on his personal return. The payment of wages, even if from the profits of the business, is not prima facie evidence that a partnership exists. " 358.070(4)(b), RSMo (1994); Nesler, 703 S.W.2d at 525. | Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors. | Is right to a voice in management of the partnership business an indicia of a partnership relationship? | Partnership - Memo 581 - SNP_65959.docx | ROSS-003306949-ROSS-003306950 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8870 | Barrett v. City of Margate, 743 So. 2d 1160 | 307A+695 | In the history of jurisprudence, pro se litigants have frequently been granted leniency in technical matters. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Dismissing an action with prejudice due to defective pleading is not proper unless the plaintiff has been given an opportunity to amend. See Kairalla v. John D. & Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988) (citations omitted). Notwithstanding the fundamental principle of allowing pro se litigants procedural latitude, a practice effected to ensure access to the courts for all citizens, pro se litigants are not immune from the rules of procedure. | Dismissing an action with prejudice due to defective pleading is not proper unless the plaintiff has been given an opportunity to amend. | Is dismissing an action with prejudice due to defective pleading proper without giving the plaintiff an opportunity to amend? | Pretrial Procedure - Memo 11532 - C - NS_65970.docx | ROSS-003280665-ROSS-003280666 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8871 | Enriquez v. Livingston, 400 S.W.3d 610 | 307A+697 | In light of these requirements, it would be unnecessary and illogical to place the burden on the movant to obtain a setting for an oral hearing on such a motion or somehow directly communicate to the judge his desire for an oral hearing. Accordingly, we hold that a timely and properly verified motion to reinstate requires the trial court to hold an oral hearing on the motion without regard to whether the movant obtains a setting, prepares and files a fiat, sends a letter to the trial judge, or otherwise requests an oral hearing by some communication directly to the trial court. In the present case, therefore, the trial court abused its discretion when it denied Enriquez's motion to reinstate without an oral hearing. We sustain Enriquez's third issue. | Burden is on the judge to set an oral hearing on a motion to reinstate plaintiff's case which was dismissed for want of prosecution; upon receiving a copy of a motion to reinstate from the court clerk, a trial judge knows, by virtue of the express language of Civil Procedure Rule governing dismissal and reinstatement of cases, that he is required-without discretion-to set the motion for an oral hearing and notify the parties of the date, time, and place of the hearing, and thus, it is unnecessary and illogical to place the burden on the movant to obtain a setting for an oral hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | Does the timely and properly verified motion to reinstate case which has been dismissed for want of prosecution require the trial court to hold an oral hearing on the motion? | 040555.docx | LEGALEASE-00162376-LEGALEASE-00162377 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 8872 | Miller v. Kossey, 802 S.W.2d 873 | 307A+583 | One of the fundamental powers possessed by a trial court is the power to dismiss a case when a litigant refuses to prosecute the case. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957). The review of a dismissal for failure to prosecute invokes the inquiry whether the court abused its discretion. Id. When Miller refused to prosecute her alleged common law actions, the court could only dismiss the actions, Burger v. Young, 78 Tex. 656, 15 S.W. 107 (1890), and, accordingly, did not abuse its discretion in doing so. Miller's second point of error is overruled. | One of fundamental powers possessed by trial court is power to dismiss case when litigant refuses to prosecute case. | Is one of the fundamental powers possessed by trial court is the power to dismiss case when litigant refuses to prosecute case? | 040901.docx | LEGALEASE-00162592-LEGALEASE-00162593 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 8873 | City of Philadelphia v. Pennsylvania Pub. Util. Comm'n, 676 A.2d 1298 | 371+2001 | The allocation of the costs of maintaining a highway-roadway crossing by the PUC is simply a determination of how those who benefit from the crossing will incur costs they would have had at common law and is not a tax or fee. The classic tax is "imposed by a legislature upon many, or all citizens ... raises money, contributed to a general fund, and spent for the benefit of the entire community". San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico, 967 F.2d 683 (1st Cir.1992). A tax is an "enforced contribution to provide for the support of government". United States v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931). Where a charge is imposed by a state or municipality not in its capacity as a sovereign but rather under a voluntary, contractual relationship, it has been held not to be a tax. United States v. City of Columbia, Missouri, 914 F.2d 151, 156 (8th Cir.1990). | Classic "tax" is imposed by legislature upon many or all citizens, raises money, contributed to general fund, and spent for benefit of entire community. | Is a classic tax imposed by a legislature upon all citizens? | Taxation - Memo 1029 - C - JL_66474.docx | ROSS-003280989-ROSS-003280990 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8874 | State of Wisconsin v. J.C. Penney Co., 311 U.S. 435 | 371+2008 | Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. "Taxable event", "jurisdiction to tax", "business situs', "extraterritoriality", are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction. | The fact that a tax is contingent on events brought to pass without a state does not destroy the link between such a tax and transactions within a state for which the tax is an exaction. | Does the fact that a tax is contingent upon events brought to pass without a state destroy the nexus between such a tax and transactions? | 046382.docx | LEGALEASE-00162095-LEGALEASE-00162096 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8875 | Cunningham v. Ferguson, 81 N.H. 380 | 8.30E+10 | "If a note is made payable at a particular place, the law of the place where it is thus made payable will govern its construction; but a note made and dated in a particular place will be deemed to be a note of that place and governed by the law of that country, whether it is expressly made payable there or is payable generally without naming any particular place." Orcutt v. Hough, 54 N. H. 472. | Law of particular place where a note is made governs its construction, but a note made and dated in a particular place will be deemed to be a note of that place and governed by law of that country, whether it is expressly made payable there or is payable generally without naming any particular place. | Which law will govern when a note is payable at a particular place? | Bills and Notes - Memo 1318 - RK_66223.docx | ROSS-003320965-ROSS-003320966 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 8876 | Floyd v. Logisticare, 255 Ga. App. 702 | 30+3634 | Dismissal of an action for failure of the plaintiff to prosecute does not operate as an adjudication on the merits.Such a dismissal is discretionary and is subject to appellate review for abuse of discretion. Likewise, the denial of a motion to reinstate a dismissed action is discretionary. | Dismissal of an action for failure of the plaintiff to prosecute is discretionary and is subject to appellate review for abuse of discretion; likewise, the denial of a motion to reinstate a dismissed action is discretionary. | Is a dismissal of an action for failure of the plaintiff to prosecute discretionary and is subject to appellate review for abuse of discretion? | Pretrial Procedure - Memo 12158 - C - RF_67582.docx | ROSS-003293838 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 8877 | Smith v. Thirty-Seventh Judicial Circuit of Missouri, 847 S.W.2d 755 | 413+186 | Reinforcing the specific language of " 105.800, the general principles of law in workers' compensation indicate Smith can be a state employee. In workers' compensation law, the "one making the appointment and receiving the services necessarily stands in the correlative relation of employer." Maltz v. Jackoway"Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 911 (1934). The right to control the employee is the "test often applied" to determine the employer, and the element "most frequently referred to." Lawson v. Lawson, 415 S.W.2d 313, 319 (Mo.App.1967); Cates, 727 S.W.2d at 906. "[T]he framers of the [workers' compensation] act had in mind the law of master and servant and the relationship, duties, rights, and limitations arising out of the same. The relationship is bottomed upon services ... to be rendered by the servant ... to the other ... and is peculiarly characterized by right of control vested in the latter." Maltz, 82 S.W.2d at 912. Based on traditional workers' compensation law, Smith can be a state employee. | In workers' compensation law, one making appointment and receiving services necessarily stands in correlative relation of employer; right to control employee determines employer status. V.A.M.S. SS 105.800, 287.120, subd. 1. | "In Workers Compensation, who stands as, or is determined to be, the employer?" | 048738.docx | LEGALEASE-00162689-LEGALEASE-00162690 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8878 | People v. Zendano, 31 Misc. 2d 145 | 135H+104 | Once a trial has progressed to the point where a Jury has been accepted by both sides and testimony commences to be heard before a Court of competent jurisdiction upon a proper indictment, the defendant is in jeopardy and there is no doubt but what an improper conclusion of that trial prior to a verdict is tantamount to an acquittal and that he cannot again be tried for the same offense. However, it is likewise well-recognized that if a trial is necessarily brought to a conclusion properly before the rendition of a verdict, this is no indication of acquittal, nor is it double jeopardy for the defendant to be tried again. The question to be determined is whether the Trial Court properly ordered a mistrial upon the defendant motion for the same. | If trial is necessarily brought to conclusion properly before rendition of verdict, this is no indication of acquittal, nor is it double jeopardy for defendant to be tried again. | "If trial is necessarily brought to conclusion properly before rendition of a verdict, is this no indication of acquittal?" | 015585.docx | LEGALEASE-00162887-LEGALEASE-00162888 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8879 | United States v. McGrory, 63 F.2d 697 | 34+68 | The physician, however, does not state that at any time prior to 1930 while plaintiff was working, often overtime, and was earning from $1,000 to $1,200 a year, that he was totally disabled or that he was totally disabled at the expiration of his policy of war risk insurance. He merely says a progressive disease began and incapacitated him while in the service, though to what extent, during the time his policy was in force, he does not say, but concludes that, at the time of his examination in 1932, the plaintiff would never be able to work again. That he received the injury during his service, which, after 10 years, has now resulted in permanent and total disability, is not sufficient to permit recovery under his policy of insurance, which expired not later than October 5, 1919. | Injury resulting in permanent total disability after expiration of war risk policy will not permit recovery thereon. | Does injury resulting in permanent total disability after the expiration of a war risk policy permit recovery? | 008849.docx | LEGALEASE-00163926-LEGALEASE-00163927 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8880 | In re Gray, 179 Cal. App. 4th 1189 | 79+6 | "The clerk of the superior court shall attend each session of the superior court...." (Gov.Code, " 69841.) "This duty is generally performed by a deputy or courtroom clerk." (2 Witkin, Cal. Procedure (5th ed. 2008) Courts, " 360, p. 461, citing People v. Ramirez, supra, 112 Cal.App. at p. 510, 297 P. 51.) Thus, " "every courtroom in which a deputy county clerk is assigned under the law is just as much a part of the county clerk's office as if the partitions were removed and it was in fact a part of one room." " (Andrews v. Metzner (1927) 83 Cal.App. 764, 770, 257 P. 203, quoting Keller v. Gerber (1920) 49 Cal.App. 515, 518, 193 P. 809.) Consequently, years ago it was observed that " "as a matter of common practice, papers are filed with the clerk in the courtroom or in the judge's chambers, as well as at the principal office of the county clerk." " (People v. Hale (1957) 156 Cal.App.2d 478, 480, 319 P.2d 660, quoting People v. Ramirez, supra, 112 Cal.App. at p. 510, 297 P. 51.) | Every courtroom in which a deputy county clerk is assigned under the law is just as much a part of the county clerk's office as if the partitions were removed and it was in fact a part of one room. West's Ann.Cal.Gov.Code S 69841. | Is every courtroom in which a deputy county clerk is assigned a part of the county clerk's office? | 013558.docx | LEGALEASE-00164114-LEGALEASE-00164115 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 8881 | U.S. Commodity Futures Trading Comm'n v. Kratville, 796 F.3d 873 | 83H+2 | "In order to establish liability for fraud, CFTC had the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." CFTC v. R.J. Fitzgerald & Co., Inc., 310 F.3d 1321, 1328 (11th Cir.2002) (citations omitted). "In applying these various elements to the present case, we are guided by the principle that the CEA is a remedial statute that serves the crucial purpose of protecting the innocent individual investor"who may know little about the intricacies and complexities of the commodities market"from being misled or deceived." Id. at 1329 (citing R & W Technical Servs., Ltd. v. CFTC, 205 F.3d 165, 173 (5th Cir.2000)). The question is whether the "undisputed facts demonstrate fraud and deception as a matter of law." Id. | Commodity Exchange Act (CEA) is a remedial statute that serves the crucial purpose of protecting the innocent individual investor, who may know little about the intricacies and complexities of the commodities market, from being misled or deceived. 7 U.S.C.A. S 1 et seq. | What is the legislative purpose of the Commodity Exchange Act (CEA)? | 013622.docx | LEGALEASE-00164194-LEGALEASE-00164195 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8882 | Lawrence v. Commodity Futures Trading Comm'n, 759 F.2d 767 | 83H+12 | Flaxman v. CFTC, 697 F.2d 782, 787 (7th Cir.1983) (quoting Goodman v. Benson, 286 F.2d 896, 900 (7th Cir.1961) ). To establish willfulness, the Commission only needed to show that Lawrence's ongoing failure to act was intentional as opposed to accidental. Proof of an evil motive is unnecessary. See Hinkle Northwest, Inc. v. SEC, 641 F.2d 1304, 1307"08 (9th Cir.1981) (quoting Nees v. SEC, 414 F.2d 211, 221 (9th Cir.1969) ). We agree with the Commission that Lawrence's inaction was willful. | To establish willfulness of violation of Commodities Exchange Act, Commodity Future Trading Commission was only required to show that petitioner's ongoing failure to act was intentional as opposed to accidental; proof of evil motive was unnecessary. Commodity Exchange Act, SS 1-23, as amended, 7 U.S.C.A. SS 1-26. | "For purposes of the Commodity Exchange Act, does the Commission have to prove an evil motive to establish willfulness?" | 013664.docx | LEGALEASE-00164156-LEGALEASE-00164157 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8883 | Ex parte Hayes, 931 S.W.2d 721 | 135H+59 | A jury is not selected as the trier of fact, and a defendant is not placed in jeopardy of a conviction until the jury has been impaneled. A Texas jury is considered impaneled only after "all twelve jurors (plus any alternates) have been qualified and accepted and the jury, as a whole, is given the requisite oath." Rousseau v. State, 824 S.W.2d 579, 581 (Tex.Crim.App.1992), cert. denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Thus, the trial judge, not the attorneys, selects the jury only after ensuring that its members are qualified, accepted by the parties in the case, and all its members are sworn.6 Therefore, we hold that Hayes's prosecution is not jeopardy barred because the jury was never impaneled in the prior proceeding. | For purposes of state constitutional double jeopardy prohibition, jury is considered "impaneled" only after all twelve jurors, plus any alternates, have been qualified and accepted and jury, as a whole, is given requisite oath. Vernon's Ann.Texas Const. Art. 1, S 14. | "Is a jury considered impaneled after twelve jurors, who are qualified and accepted, give a requisite oath?" | 014812.docx | LEGALEASE-00163960-LEGALEASE-00163961 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 8884 | United States v. Leyland, 277 F.3d 628 | 135H+25 | Even if we were to reach the merits of Leyland's argument, we agree with the district court that United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) mandates the outcome. In Ursery, the Supreme Court found that the civil forfeiture of assets does not constitute criminal punishment. Ursery, 518 U.S. at 287-88, 116 S.Ct. 2135. Thus a criminal prosecution following a civil forfeiture is not considered a second punishment for double jeopardy purposes. | A criminal prosecution following a civil forfeiture is not considered a second punishment for double jeopardy purposes. U.S.C.A. Const.Amend. 5. | Is a criminal prosecution following a civil forfeiture not considered a second punishment for double jeopardy purposes? | Double Jeopardy - Memo 193 - C - SK_66944.docx | ROSS-003280933-ROSS-003280934 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 8885 | United States v. Cueto, 964 F. Supp. 1395 | 180+27 | Moreover, even if some types of civil actions commenced by the government could be considered punishment for double jeopardy purposes, it certainly does not follow that all civil forfeiture actions also raise double jeopardy concerns. While civil penalties are designed to be a form of liquidated damages for the harms suffered by the government, see e.g. Rex Trailer Co. v. United States, 350 U.S. 148, 153"54, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956) (upholding the constitutionality of an alternative "liquidated damages" remedy allowing for the recovery and retention of fraudulently obtained government property under the Surplus Property Act of 1944), civil forfeitures are designed primarily to disgorge the fruits of an illegal action and compensate the government for any of its costs. | Civil forfeitures are designed primarily to disgorge fruits of an illegal action and compensate government for any of its costs; in other words, civil forfeiture statutes, while having certain punitive aspects, serve very important nonpunitive goals, so that forfeiture action will not necessary constitute punishment for purposes of double jeopardy clause. U.S.C.A. Const.Amend. 5. | Are civil forfeitures designed primarily to disgorge fruits of an illegal action and compensate government for any of its costs? | 015141.docx | LEGALEASE-00163453-LEGALEASE-00163454 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 8886 | United States v. Doyer, 907 F. Supp. 1519 | 135H+25 | Jeopardy attaches in a civil forfeiture proceeding when evidence is first presented to the trier of fact. United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.1994) (citing Crist v. Bretz, 437 U.S. 28, 32"36, 98 S.Ct. 2156, 2158"59, 57 L.Ed.2d 24 (1978)), cert. denied, """ U.S. """", 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). Jeopardy does not attach when the defendant does not make a claim and thus, does not become a party to the forfeiture. Id. Further, there is no jeopardy when there is no trial and the property sought to be forfeited is in fact forfeited without opposition. | For double jeopardy purposes, jeopardy attaches in civil forfeiture proceeding when evidence is first presented to the trier of fact. U.S.C.A. Const.Amend. 5. | "For double jeopardy purposes, does jeopardy attach in a civil forfeiture proceeding when evidence is first presented to the trier of fact?" | Double Jeopardy - Memo 239 - C - PB_66758.docx | ROSS-003297051-ROSS-003297052 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8887 | United States v. Palmer, 122 F.3d 215 | 135H+96 | A criminal defendant's right to see his case through to completion by the initial jury is not absolute, however. United States v. Bauman, 887 F.2d 546, 549 (5th Cir.1989), cert. denied, 493 U.S. 1077, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990). When a criminal defendant consents to a mistrial before the jury reaches a verdict, double jeopardy will not bar a reprosecution. Id. at 549. This consent can either be express or implied. If a defendant does not timely and explicitly object to a trial court's sua sponte declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding. United States v. Nichols, 977 F.2d 972, 974 (5th Cir.1992), cert. denied, 510 U.S. 833, 114 S.Ct. 106, 126 L.Ed.2d 72 (1993). | When defendant consents to mistrial before jury reaches verdict, double jeopardy will not bar reprosecution; thus consent can either be express or implied. U.S.C.A. Const.Amend. 5. | "Can a defendant's consent to a mistrial, such as will remove the double jeopardy bar to a second trial, be either express or implied?" | 015222.docx | LEGALEASE-00162959-LEGALEASE-00162960 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8888 | Com. v. Deloney, 20 S.W.3d 471 | 135H+96 | As a general rule, a mistrial granted on the defendant's motion removes any double jeopardy bar to a retrial. Stamps v. Commonwealth, Ky., 648 S.W.2d 868 (1983); Silverburg v. Commonwealth, Ky., 587 S.W.2d 241 (1979). In United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), a narrow exception to this rule was recognized "where "bad-faith conduct by judge or prosecutor," threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant." Id. at 611, 96 S.Ct. 1075, 1081 (citations omitted). | As a general rule, a mistrial granted on the defendant's motion removes any double jeopardy bar to a retrial. U.S.C.A. Const.Amend. 5. | "As a general rule, does a mistrial granted on the defendant's motion remove any double jeopardy bar to a retrial?" | Double Jeopardy - Memo 290 - C - KG_66975.docx | ROSS-003278422-ROSS-003278423 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8889 | Kemph v. Com., 17 Va. App. 335 | 135H+97 | Thus, although jeopardy attaches in a criminal case once the jury is sworn, there are circumstances in which the trial court may abort the proceedings and the defendant can be re-tried without violating the double jeopardy clause of the Fifth Amendment. When the defendant's actions cause the mistrial, or when a mistrial is declared at the defendant's behest, he is not permitted to claim the protection of the double jeopardy bar. United States v. Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 1080-81, 47 L.Ed.2d 267 (1976). However, when a defendant requests a mistrial because of intentional prosecutorial misconduct, the double jeopardy bar will apply. The Commonwealth cannot use its own misconduct to gain an advantage any more than can the defendant. | When defendant requests mistrial due to intentional prosecutorial misconduct, double jeopardy bar will apply; Commonwealth cannot use its own misconduct to gain advantage any more than can defendant. U.S.C.A. Const.Amend. 5. | Can a commonwealth use its own misconduct to gain an advantage by forcing a defendant to request mistrial? | 015283.docx | LEGALEASE-00162895-LEGALEASE-00162896 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8890 | United States v. Gonzalez, 248 F.3d 1201 | 135H+95.1 | The general rule is that the Double Jeopardy Clause does not bar retrial where a defendant moves successfully for a mistrial. A narrow exception exists where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (emphasis added); United States v. Poe, 713 F.2d 579, 583 (10th Cir.1983). | As a general rule, the Double Jeopardy Clause does not bar retrial where a defendant moves successfully for a mistrial. U.S.C.A. Const.Amend. 5. | "As a general rule, does the Double Jeopardy Clause not bar retrial where a defendant moves successfully for a mistrial?" | Double Jeopardy - Memo 388 - C - RF_66798.docx | ROSS-003280868-ROSS-003280869 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8891 | People v. Elmore, 59 Cal. 4th 121 | 203+530 | The Penal Code defines express malice as "a deliberate intention unlawfully to take away the life of a fellow creature." (" 188.) In Christian S., we explained that this "inartful language" means the defendant must intend to act unlawfully, or in other words, have a " "wrongful intent." " (Christian S., supra, 7 Cal.4th at p. 778, 30 Cal.Rptr.2d 33, 872 P.2d 574.) We rejected the argument that malice turns on whether the killing is deemed lawful, without regard to the defendant's intent. (Id. at pp. 778"779, 30 Cal.Rptr.2d 33, 872 P.2d 574.) However, the defendant need not intend to break the law or commit a crime. Rather, malice requires an intent to kill that is "unlawful" because the law deems it so. " "The adverb "unlawfully" in the express malice definition means simply that there is no justification, excuse, or mitigation for the killing recognized by the law." " (People v. Saille (1991) 54 Cal.3d 1103, 1115, 2 Cal.Rptr.2d 364, 820 P.2d 588.) | The adverb "unlawfully" in the express malice definition means simply that there is no justification, excuse, or mitigation for the killing recognized by the law. West's Ann.Cal.Penal Code S 188. | Does the adverb unlawfully in the express malice definition mean that there is no justification for killing recognized by the law? | 019403.docx | LEGALEASE-00164030-LEGALEASE-00164031 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8892 | Gerbig v. White Motor Credit Corp., 165 Mich. App. 372 | 30+3635 | On appeal plaintiffs contend the trial court abused its discretion by denying the motion to reinstate the claim. The reinstatement of a cause of action dismissed for no progress is within the discretion of the trial court and its determination will not be disturbed absent an abuse of discretion. See Heaney v. Verson Allsteel Press Co., Inc., 64 Mich.App. 597, 236 N.W.2d 155 (1975). Plaintiffs argue that since they provided good cause for reinstatement of their action, the trial court abused its discretion. | Reinstatement of cause of action dismissed for no progress is within discretion of trial court and its determination will not be disturbed absent abuse of discretion. | Is it within the trial courts discretion to dismiss the reinstatement of a cause of action for no progress? | 040752.docx | LEGALEASE-00163313-LEGALEASE-00163314 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 8893 | Wigglesworth v. Mauldin, 195 Ariz. 432 | 307A+695 | Before the trial court grants a Rule 12(b)(6) motion to dismiss, the non-moving party should be given an opportunity to amend the complaint if such an amendment cures its defects. See Sun World Corp. v. Pennysaver, Inc., 130 Ariz. 585, 589, 637 P.2d 1088, 1092 (App.1981). Wigglesworth claims that the wording of the trial court's order of January 21, 1999 dismissing the complaint "leads to a reasonable inference that a more carefully drafted complaint would have satisfied the requirement for complaint that ha[s] stated a claim for relief." However, the court's order simply states: "The Court, having reviewed the pleadings, grants the motion to dismiss. The Court finds that the complaint does not state a claim upon which relief may be granted. The complaint is dismissed with prejudice." | Before the trial court grants motion to dismiss for failure to state claim, non-moving party should be given opportunity to amend complaint if such amendment cures its defects. 16 A.R.S. Rules Civ.Proc., Rule 12(b), subd. 6. | "If requested, should the non-moving party be given an opportunity to amend the complaint if such an amendment cures its defects?" | 040800.docx | LEGALEASE-00163851-LEGALEASE-00163852 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 8894 | Torres v. Rios, 869 S.W.2d 555 | 307A+583 | A trial court is expressly vested with the authority to dismiss a cause for want of prosecution under our rules of procedure. See Tex.R.Civ.P. 165a. The same authority exists pursuant to the court's inherent powers. State v. Rotello, 671 S.W.2d 507, 508"09 (Tex.1984). Despite the evidence in the record relating to appellant's failure to file the case overview and failure to produce discovery responses, it is clear from the language of both the original dismissal order and the order denying reinstatement that the court was dismissing pursuant to Rule 165a, for counsel's failure to appear at the conference. | Trial court has authority to dismiss cause for want of prosecution pursuant to court's inherent powers as well as under rules of procedure. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does the trial court have authority to dismiss cause for want of prosecution pursuant to court's inherent powers? | 040950.docx | LEGALEASE-00163255-LEGALEASE-00163256 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 8895 | Davis v. Zoning Bd. of Adjustment of City of La Porte, 853 S.W.2d 650 | 307A+583 | The order dismissing appellee states "... [appellants] have failed to obtain service of a writ of certiorari and invoke jurisdiction of this Court in the timely fashion contemplated by " 211.011 of the Texas Local Government Code." A trial court has the inherent authority to dismiss a lawsuit for a party's failure to prosecute it with due diligence. Veterans' Land Board v. Williams, 543 S.W.2d 89, 90 (Tex.1976) (per curiam). A court has the authority to dismiss a suit for failure to prosecute it with due diligence even without statutory or rule authority. Id. Dismissal of a suit for want of prosecution is within the trial court's judicial discretion, subject to review only upon a clear showing of abuse. Id. | Trial court has inherent authority to dismiss lawsuit for party's failure to prosecute it with due diligence, even without statutory or rule authority. | Does the trial court have inherent authority to dismiss lawsuit for party's failure to prosecute it with due diligence? | 040967.docx | LEGALEASE-00163286-LEGALEASE-00163287 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 8896 | In re Interest of Jeffrey K., 273 Neb. 239 | 3.77E+05 | In determining that Nebraska's stalking statutes must be construed objectively when considering the experience of the victim, we are aware that the language of the stalking statutes in other states differs from that of Nebraska and that some states apply a subjective standard, such that under these statutes, it must be shown that the victim was actually placed in fear by the perpetrator's actions. See 2 Wayne R. LaFave, Substantive Criminal Law " 16.4(d) and n. 110 (2d ed.2003). Nevertheless, given the language of Nebraska's stalking statutes and the purpose announced by the Legislature for enacting the statutes, we conclude that an objective construction is appropriate and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. Compare U.S. v. Smith, 973 F.2d 603, 604 (8th Cir.1992) (stating, in appeal involving crime of bank robbery, that "[i]ntimidation is conduct "reasonably calculated to put another in fear," " and "[u]nder this test "the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute an intimidation to an ordinary, reasonable person," " quoting U.S. v. Higdon, 832 F.2d 312 (5th Cir.1987)). | Given the language of stalking statute, an objective construction is appropriate, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. Neb.Rev.St. S 28-311.02. | On what basis should a stalking victim's experience resulting from the perpetrator's conduct be assessed? | "Threats, Stalking and Harassment - Memo 230 - C - LB_66836.docx" | ROSS-003280645-ROSS-003280647 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8897 | In re Latimer, 489 B.R. 844 | 25T+179 | Under Alabama law, a nonsignatory to a contract containing an arbitration provision may be compelled to arbitrate his claims against a signatory to the contract if the nonsignatory is a third-party beneficiary of the contract; or under an equitable estoppel theory if the nonsignatory is asserting legal claims to enforce rights or obtain benefits that depend on the existence of the contract that contains the arbitration agreement. Custom Performance, Inc. v. Dawson, 57 So.3d at 97"98. Also, under the doctrine of intertwining claims, "a nonsignatory to an arbitration agreement may compel a signatory to arbitrate claims "where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim." " Id. at 99 (quoting Conseco Fin. Corp. v. Sharman, 828 So.2d 890, 893 (Ala.2001) (citing Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524 (Ala.2001))). | Under Alabama law, nonsignatory to arbitration agreement may compel signatory to arbitrate claims, pursuant to doctrine of intertwining claims, if arbitrable and nonarbitrable claims are so closely related that party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of related claim. | Can arbitration be compelled under the doctrine of intertwining? | Alternative Dispute Resolution - Memo 853 - RK_67458.docx | ROSS-003279613-ROSS-003279614 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 8898 | U.S. Commodity Futures Trading Comm'n v. Reed, 481 F. Supp. 2d 1190 | 83H+2 | Defendant nevertheless asserts that even if the statute is interpreted to prohibit only "knowingly" false and misleading reports, it is still overbroad in that it criminalizes "any communication of any known false or misleading information that may "affect or tend to affect the price of any commodity ...," " regardless of whether the speaker intended to affect commodity prices. D & R at 17. The CFTC responds that the statute's prohibition against the knowing dissemination of knowingly false or misleading information into interstate commerce is not overbroad because it does not criminalize otherwise innocent conduct. I agree with the CFTC and note that, knowingly false statements "do not enjoy constitutional protection." Garrison v. Louisiana, 379 U.S. 64, 74"76, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); see also Illinois ex rel. Madigan v. Telemarketing Assoc., 538 U.S. 600, 617, 123 S.Ct. 1829, 155 L.Ed.2d 793 (2003). | Commodity Exchange Act (CEA) section which criminalized knowing delivery of "false or misleading or knowingly inaccurate reports" was not unconstitutionally overbroad because it allegedly criminalized otherwise innocent conduct, regardless of whether the speaker intended to affect commodity prices; knowingly false statements did not enjoy constitutional protection. Commodity Exchange Act, S 9(a)(2), 7 U.S.C.A. S 13(a)(2). | Is the provision of the Commodities Exchange Act (CEA) that prohibits against the knowing dissemination of knowingly false information unconstitutionally overbroad? | 013626.docx | LEGALEASE-00164232-LEGALEASE-00164233 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 8899 | People v. Saiz, 2003 WL 190796 | 135H+30 | Double jeopardy principles do not bar a retrial of the prior conviction as a strike. The Monge decisions concluded that double jeopardy does not apply to a noncapital sentencing proceeding to determine the truth of a prior conviction as a strike. However, at a retrial of the prior conviction, if any, the prosecution must present additional evidence to obtain a different result. | Double jeopardy did not bar a retrial of prior conviction as a strike under Three Strikes law; double jeopardy did not apply to a noncapital sentencing proceeding to determine the truth of a prior conviction as a strike, but the prosecution was required to present additional evidence to obtain a different result. U.S.C.A. Const.Amend. 5; West's Ann.Cal.Penal Code S 245, 667. | Does double jeopardy apply to a noncapital sentencing proceeding to determine the truth of a prior conviction as a strike? | 014991.docx | LEGALEASE-00164851-LEGALEASE-00164852 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 8900 | In re Gutierrez, 526 B.R. 449 | 349A+10 | In other words, "[t]he first part of the test looks at whether the lessee may terminate the agreement during its term". In re Gateway Ethanol, L.L.C., 415 B.R. 486, 499 (Bankr.D.Kan.2009). "The second part looks at what are referred to as the Residual Value Factors. If the lessee may not terminate the lease during its term and any one of the Residual Value Factors is present, the transaction is a sale without consideration of any other facts and circumstances." Id. "If one or more of the residual value factors is found to exist with respect to a non-terminable "lease" agreement, then it is a disguised security agreement as a matter of law." In re UNI Imaging Holdings, LLC, 423 B.R. at 416. | If lessee may not terminate lease during its term and any one of residual value factors is present, the transaction is a sale without consideration of any other facts and circumstances. | When is a transaction a sale without consideration of any other facts and circumstances? | 015053.docx | LEGALEASE-00164246-LEGALEASE-00164247 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8901 | Blythe v. Com., 222 Va. 722 | 135H+5.1 | The constitutional provision concerning double jeopardy embodies three guarantees: "(1) "It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense." "Illinois v. Vitale, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980), quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Because both the defendant's convictions occurred in a single trial, only the third guarantee, viz., that against multiple punishments, is pertinent to resolution of the present appeal. Turner v. Commonwealth, 221 Va. 513, 529, 273 S.E.2d 36, 46-47 (1980). | Constitutional provision concerning double jeopardy embodies three guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. U.S.C.A.Const.Amend. 5. | What does the constitutional provision concerning double jeopardy guarantee? | 016394.docx | LEGALEASE-00165191-LEGALEASE-00165192 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 8902 | State v. Thacker, 157 So. 3d 798 | 135H+1 | "The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense." State v. Grace, 10"1222, p. 14 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823, writ denied, 11"961 (La.10/21/11), 73 So.3d 382. The Defendant fails to set forth which of his convictions are for the same offense or for which offense he received multiple punishments. For these reasons, we find that this assignment of error lacks merit. | The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, S 15. | Do the constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction? | Double Jeopardy - Memo 860 - C - NS_67649.docx | ROSS-003297546-ROSS-003297547 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 8903 | State v. Villanueva-Gonzalez, 180 Wash. 2d 975 | 135H+5.1 | The principle of double jeopardy prevents a person from being "twice put in jeopardy for the same offense." Wash. Const. art. I, " 9.The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense. Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). It is that last principle"that a person cannot receive multiple punishments for the same offense"that we grapple with today. | The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Does double jeopardy mean that a person cannot be prosecuted for the same offense after being acquitted? | 016404.docx | LEGALEASE-00165201-LEGALEASE-00165202 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8904 | State v. Baca, 1997-NMSC-018 | 135H+59 | The federal Double Jeopardy Clause and New Mexico law adequately protect a magistrate court defendant from prosecutorial abuse of double jeopardy protections. Constitutional jeopardy attaches in a jury trial when a jury is impaneled and sworn to hear a case and in a bench trial when the trial judge first starts hearing evidence. State v. Nunez, 2000"NMSC"013, 28, 129 N.M. 63, 2 P.3d 264. Accordingly, our Rules of Criminal Procedure for the Magistrate Courts limit the State's discretion in filing a voluntary dismissal of its case without prejudice "prior to the commencement of the trial." Rule 6"506A(A)(1); see State v. Heinsen, 2005"NMSC"035, 25, 138 N.M. 441, 121 P.3d 1040(affirming long-established New Mexico law that "the State has wide discretion to dismiss a criminal case in magistrate court by filing a nolle prosequi and reinstating charges in district court," which has concurrent jurisdiction over the case). But once jeopardy attaches, the State does not have the discretion to dismiss the case and refile it. If the State fails to dismiss its case before jeopardy attaches, "the State is obliged to follow the course of proceedings it initiated in magistrate court." State v. Heinsen, 2004"NMCA"110, 24, 136 N.M. 295, 97 P.3d 627, aff'd, 2005"NMSC"035, 23, 25, 30, 138 N.M. 441, 121 P.3d 1040 (emphasizing, on appeal in this Court, the responsibilities of our district courts "to prevent the State from using the dismissal for purposes of delay or to circumvent the rules" and generally to ensure that "the defendant's due process rights are not unduly infringed"). Defendant has pointed to no example in New Mexico cases or any other data to indicate that our district courts are failing to fulfill that responsibility. | Constitutional jeopardy attaches, under both state and federal law, in a jury trial when a jury is impaneled and sworn to hear a case and in a bench trial when the trial judge first starts hearing evidence. U.S.C.A. Const.Amend. 6; West's NMSA Const. Art. 2, S 15. | Will a constitutional jeopardy be attached when the judge first starts hearing evidence? | 016659.docx | LEGALEASE-00165117-LEGALEASE-00165118 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 8905 | Monroe Cty. Bd. of Educ. v. K.B., 62 So. 3d 513 | 92+4209(3) | Provision of student handbook prohibiting students from using or possessing alcohol at school or at a school function was ambiguous and vague in violation of due-process rights of student who consumed alcohol prior to attending school prom. U.S.C.A. Const.Amend. 14. The student handbook simply did not address the question of whether students should have known that drinking alcohol before arriving at school or a school function constituted "use" of alcohol, which would trigger disciplinary measures, including suspension and placement in an alternative school, which was how student was disciplined. | Provision of student handbook prohibiting students from using or possessing alcohol at school or at a school function was ambiguous and vague in violation of due-process rights of student who consumed alcohol prior to attending school prom; the student handbook simply did not address the question of whether students should have known that drinking alcohol before arriving at school or a school function constituted "use" of alcohol, which would trigger disciplinary measures, including suspension and placement in an alternative school, which was how student was disciplined. U.S.C.A. Const.Amend. 14. | Are students denied due process when they are penalized for violating a code of student conduct and the code is unconstitutionally ambiguous and vague? | 017305.docx | LEGALEASE-00164343-LEGALEASE-00164344 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 8906 | Morris v. Friedman, 663 So. 2d 19 | 156+54 | Analysis of Morris' claim under a theory of equitable estoppel yields the same result. This Court has defined equitable estoppel as "the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." John Bailey Contractor v. State, Dept. of Transp. & Dev., 439 So.2d 1055, 1059 (La.1983) (quoting American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967)). This Court has further held that the three elements required for application of equitable estoppel are: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. Id. at 1059"60. However, a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Id. at 1060. Further, estoppels are not favored in our law, and properly apply only as to representations of fact. | Party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. | "Can a party having the means readily availabe and conveniently available to determine the true facts, but who fails to do so, claim estoppel?" | 018276.docx | LEGALEASE-00164433-LEGALEASE-00164434 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 8907 | In re Estate of Snook, 272 Kan. 1256 | 156+52.15 | Equitable estoppel is the effect of the voluntary conduct of a party whereby it is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party seeking to invoke equitable estoppel must show that the acts, representations, admissions, or silence of another party, when it had a duty to speak, induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction. | There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved, and estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction. | Will estoppel be deemed to arise from facts which are subject to more than one construction? | Estoppel - Memo 317 - C - CSS_67199.docx | ROSS-003283005-ROSS-003283006 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8908 | Bogenberger v. Pi Kappa Alpha Corp., 2016 IL App (1st) 150128 | 302+68 | We recognize that a number of allegations in the complaint are made "upon information and belief." "Where facts of necessity are within defendant's knowledge and not within plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient." Yuretich v. Sole, 259 Ill.App.3d 311, 313, 197 Ill.Dec. 545, 631 N.E.2d 767 (1994). This court has acknowledged that " "[a]n allegation made on information and belief is not equivalent to an allegation of relevant fact" [citation], but at the pleading stage a plaintiff will not have the benefit of discovery tools" to discern certain facts. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, " 40, 364 Ill.Dec. 40, 976 N.E.2d 318. However, plaintiff will have knowledge of how he learned of the facts alleged upon information and belief, and the complaint therefore should allege how those facts were discovered. Id. Here, plaintiff's counsel attached an affidavit to the complaint stating that the allegations made " "upon information and belief" are based on [his] reading of various summary reports, recorded witness statements and media reports." The affidavit also states that due to pending criminal proceedings, counsel does not have access to certain defendants and unindicted witnesses requiring him to allege certain facts and conduct as "presently unknown." The use of "upon information and belief" in plaintiff's complaint here does not render the allegations insufficient under section 2"615. | An allegation made on information and belief is not equivalent to an allegation of relevant fact, but at the pleading stage a plaintiff will not have the benefit of discovery tools to discern certain facts. | Is an allegation made on information and belief equivalent to an allegation of relevant fact? | 023982.docx | LEGALEASE-00164900-LEGALEASE-00164901 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 8909 | In re Strickland, 2002 WL 58482 | 307A+699 | A trial judge has plenary power to reinstate a case within 30 days of dismissal for want of prosecution. Tex.R. Civ. P. 165a(3), (4); Neese v. Wray, 893 S.W.2d 169, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). A verified reinstatement motion filed within 30 days of dismissal extends plenary power for the same amount of time as would a properly filed new trial motion. Tex.R. Civ. P. 165a(3); McConnell, 800 S.W.2d at 194; Dardari v. Texas Commerce Nat'l Bank Ass'n, 961 S.W.2d 466, 469 (Tex.App.-Houston [1st Dist.] 1997, no writ). | A trial judge has plenary power to reinstate a case within 30 days of dismissal for want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3, 4). | Does a trial judge have plenary power to reinstate a case within 30 days of dismissal for want of prosecution? | Pretrial Procedure - Memo 12160 - C - RF_67584.docx | ROSS-003294418-ROSS-003294419 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8910 | Sanchez v. United States, 919 A.2d 1148 | 135H+99 | Retrial of a criminal defendant after a mistrial over his objection and unsupported by "manifest necessity" violates double jeopardy. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The trial judge here, after being informed by the Assistant United States Attorney mid-trial that appellant, a juvenile, had been mistakenly indicted for a crime that did not subject him to adult prosecution, declared a mistrial in the belief that the court no longer had jurisdiction to proceed to verdict, hence that a mistrial was necessary. | Retrial of a criminal defendant after a mistrial over his objection and unsupported by manifest necessity violates double jeopardy. U.S.C.A. Const.Amend. 5. | Does retrial of a criminal defendant after a mistrial over his objection and unsupported by manifest necessity violate double jeopardy? | Pretrial Procedure - Memo 12174 - C - TM_67211.docx | ROSS-003282962-ROSS-003282963 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 8911 | The Bernard Grp. v. New Hope Alternative Therapy Research, 153 Ohio App. 3d 393 | 307A+583 | We recognize that a trial court's decision to dismiss a case for lack of prosecution rests within its sound discretion.Chalendar v. Ohio Dept. of Rehab. & Corr., Franklin App. No. 02AP"567, 2003-Ohio-39, 2003 WL 68017. However, when a trial court dismisses a case for lack of prosecution and does not state that it is without prejudice, a party with valid claims is subjected to the harsh result of not being able to refile its action. In the instant matter, we regrettably recognize that The Bernard Group is barred from pursuing its claims. We caution trial courts in the future to recognize the importance of the wording of their dismissals and attorneys in recognizing the importance of pursuing and preserving their clients' claims. | A trial court's decision to dismiss a case for lack of prosecution rests within its sound discretion. | Does a trial court's decision to dismiss a case for lack of prosecution rest within its sound discretion? | Pretrial Procedure - Memo 12273 - C - PC_67609.docx | ROSS-003282005-ROSS-003282006 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 8912 | In re Gutierrez, 526 B.R. 449 | 349A+10 | "In determining whether an agreement constitutes a true lease or a disguised security agreement requires a two-step analysis. The first step involves the application of what has been called "the bright line test." The first element concerns the Debtor's right to terminate the agreement". In re UNI Imaging Holdings, LLC, 423 B.R. at 416. In other words, "[t]he first part of the test looks at whether the lessee may terminate the agreement during its term". In re Gateway Ethanol, L.L.C., 415 B.R. 486, 499 (Bankr.D.Kan.2009). "The second part looks at what are referred to as the Residual Value Factors. If the lessee may not terminate the lease during its term and any one of the Residual Value Factors is present, the transaction is a sale without consideration of any other facts and circumstances." Id. "If one or more of the residual value factors is found to exist with respect to a non-terminable "lease" agreement, then it is a disguised security agreement as a matter of law." In re UNI Imaging Holdings, LLC, 423 B.R. at 416. In the instant case, the Lease Agreement does not provide an explicit right for the Plaintiff to terminate it during the lease term. It then falls on the Plaintiff to establish any one of the "residual value factors", In re UNI Imaging Holdings, LLC, 423 B.R. at 416, set forth in 19 L.P.R.A. " 451(37). | Determining whether an agreement constitutes a true lease or a disguised security agreement requires a two-step analysis: the first part of the test looks at whether the lessee may terminate the agreement during its term, and the second part looks at residual value factors. | Does determining whether an agreement constitutes a true lease or a disguised security agreement require a two-step analysis? | 042833.docx | LEGALEASE-00164465-LEGALEASE-00164466 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 8913 | In re Bevis Co., 201 B.R. 923 | 349A+10 | As stated in both the present and former versions of " 1301.01(KK), the determination of whether an agreement is a true lease or intended as security is based on the facts and circumstances of each individual case. O.R.C. " 1301.01(KK). This reliance upon individual case circumstances has been adhered to by courts in Ohio applying " 1301.01(KK). See e.g., In re Estep, 173 B.R. 126, 129 (Bankr.N.D.Ohio 1994); In re Rose, 94 B.R. 103, 105 (Bankr.S.D.Ohio 1988). This same approach has been followed by the courts of other states as well. In re Lunan Family Restaurants, 194 B.R. 429, 450 (Bankr.N.D.Ill.1996) ("Whether the "lease" is bona fide or merely a financing agreement depends upon the circumstances of each case"); In re Zaleha, 159 B.R. 581, 583"584 (Bankr.D.Idaho 1993). | Under Ohio law, determination of whether agreement is true lease or intended as security is based on facts and circumstances of each individual case. Ohio R.C. S 1301.01(KK). | "Should the determination as to whether a purported lease is a true ""lease"" or ""security agreement"" be made on facts of each case?" | 042841.docx | LEGALEASE-00164521-LEGALEASE-00164522 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8914 | City of Egg Harbor City v. Cty. of Atl. Cty., 10 N.J. Tax 7 | 371+2311 | Exemptions from local property taxation are strictly construed, and the burden of proof is on the taxpayer claiming tax exemption to establish the asserted right. Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949). However, the requisite of use for public purpose is accorded a liberal construction when tax exemption is sought by a government body. City of Newark v. Essex Cty. Bd. of Taxation, 103 N.J.Super. 41, 246 A.2d 509 (Law Div.1968), mod. 54 N.J. 171, 254 A.2d 513 (1969). Such liberal construction, however, does not obviate the necessity of proving public ownership and use in accordance with N.J.S.A. 54:4-3.3 in order for the property to be exempt from local property taxation. | Requisite of use for public purpose is accorded liberal construction when tax exemption is sought by a government body. | How is a requisite of use for public purpose accorded when a tax exemption is sought by a government body? | 046472.docx | LEGALEASE-00164681-LEGALEASE-00164682 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 8915 | Marcus Hook Dev. Park v. Bd. of Assessment Appeals of Delaware Cty., 68 Pa. Cmwlth. 229 | 371+2311 | However, when publicly-owned land is not used for public purposes, the municipality or other public body can be, and indeed is, the taxpayer liable to pay the taxes. Moon Township Appeal, 425 Pa. 578, 229 A.2d 890 (1967); Pennsylvania Turnpike Commission v. County of Fulton, 195 Pa.Superior Ct. 517, 171 A.2d 882 (1961). | When publicly owned land is not used for public purposes, municipality or other public body can be, and indeed is, taxpayer liable to pay taxes. | "When a publicly owned land is not used for public purposes, does the municipality or other public body liable to pay taxes?" | Taxation - Memo 1267 - C - SS_67413.docx | ROSS-003278787-ROSS-003278788 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 8916 | McQuerrey v. Smith St. John Mfg. Co., 240 Mo. App. 720 | 413+186 | Sec. 3695 defines employee as "every person in the service of any employer, * * * under any contract of hire, express or implied, oral or written, or under any appointment or election, * * *." Sec. 3694(a) defines employer as "every person * * * using the service of another for pay". The phrase, "using the service of another for pay", means the right to control the means and manner of that service, as distinguished from the results of such service. Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918, 923; Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909. The compensation law was never designed to operate as accident insurance with blanket coverage as to any and all accidental injuries wherever and whenever received by an employee; to the contrary, it applies only to accidental injuries arising out of and in the course of the employment. The relationship of master and servant must exist in any case to make it compensable, and when that relationship ceases to exist, either temporarily or permanently, the liability of the employer for accidental injury to the employee ceases to exist. Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244, 246. | Under provision of Workmen's Compensation Law defining employer as every person "using the service of another for pay", the quoted phrase means the right of control means and manner of that service as distinguished from result of service. V.A.M.S. S 287.030. | "In the definition of employer, what does the phrase using the service of another for pay mean?" | 048567.docx | LEGALEASE-00164613-LEGALEASE-00164614 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8917 | Evans v. Bd. of Ed. of Hays, 178 Kan. 275 | 413+231 | It is also a general rule that a master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. Hurla v. Capper Publications, Inc., 149 Kan. 369, 87 P.2d 552; Houdek v. Gloyd, 152 Kan. 789, 794, 107 P.2d 751; Garner v. Martin, 155 Kan. 12, 122 P.2d 735. | A "servant" is a person employed by a master to perform service in latter's affairs and whose physical conduct in performance of the service is controlled or is subject to the right of control by the master. | Is a master a principle who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service? | 048797.docx | LEGALEASE-00164370-LEGALEASE-00164371 | Order, SA | 0.64 | 1 | 0 | 0 | 1 | |
| 8918 | Coccaro v. Herman Coal Co., 145 Pa. Super. 81 | 413+186 | We cannot alter the unequivocal language of the policy and thereby enlarge its scope. Topkis v. Rosenzweig, 333 Pa. 529, 5 A.2d 100. An employer as such is not entitled to compensation under the Act, Nirenstein v. Camp Colang, Inc., 111 Pa.Super. 72, 169 A. 404, and if it is the purpose to insure an employer while performing labor, that purpose must be indicated by the terms of the policy and unless the policy is written to cover employers, no liability is imposed on the carrier for injury to them. Lyle v. H. R. Lyle Cider & Vinegar Co., 243 N.Y. 257, 153 N.E. 67, 47 A.L.R. 840; Amish v. Amish et al., 209 App.Div. 337, 204 N.Y.S. 439. One cannot become an employee of himself and thus occupy the anomalous position of both employer and employee, defined by the Act as the equivalent of master and servant, 77 P.S. "" 21, 22. Kan. 406, 243 P. 1035. | Under compensation act, one cannot become an "employee" of himself and thus occupy the anomalous position of both "employer" and "employee" defined by act as the equivalent of "master" and "servant." 77 P.S. SS 21, 22. | Can one be an employee of himself and thus occupy the anomalous position of both employer and employee under the Act? | 048804.docx | LEGALEASE-00164677-LEGALEASE-00164678 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8919 | Emery v. Leavesly McCollum, 725 A.2d 807 | 413+187 | The Donaldson court explained that a contractor may be considered a statutory employer under two different sections of the workers' compensation law: 1) under " 302(a), a contractor may be considered a statutory employer of employees of a subcontractor if the subcontractor has not secured the payment of worker's compensation benefits and the contractor then paid the benefits, 77 P.S. " 461; or 2) under " 302(b), a contractor can be considered a statutory employer if it meets the McDonald test set forth above. 77 P.S. " 462. The Donaldson court held the contractor could not be a statutory employer under " 302(a) because it had not paid benefits. Donaldson, 596 A.2d at 276. However, the court then addressed whether the contractor could be a statutory employer under " 302(b) under the McDonald test. The Court then found that the contractor did not have actual control of the premises and, thus, did not meet all the elements of the McDonald test. Id. | General contractor can be "statutory employer," under workers' compensation law, if it meets either of these two requirements: (1)subcontractor has not secured payment of workers' compensation benefits and general contractor then paid the benefits; or (2)general contractor satisfies the McDonald test, meaning that general contractor is under contract with owner and premises are occupied by or under control of general contractor. 77 P.S. SS 461, 462. | What sections must be satisfied in order for a contractor to be deemed a statutory employer under workmens compensation? | 048835.docx | LEGALEASE-00164787-LEGALEASE-00164788 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 8920 | Kopp v. Fischer, 811 F. Supp. 2d 696 | 135H+59 | The Double Jeopardy Clause of the Fifth Amendment provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V; see also Benton v. Maryland, 395 U.S. 784, 784"85, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding that the Double Jeopardy Clause was incorporated against the states by way of the Due Process Clause of the Fourteenth Amendment). In a jury trial, jeopardy attaches once the jury has been empaneled and sworn, even though no evidence relating to the defendant's guilt or innocence has been introduced. Illinois v. Somerville, 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (citing Downum v. United States, 372 U.S. 734, 735"37, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)). | In a jury trial, jeopardy attaches once the jury has been empaneled and sworn, even though no evidence relating to the defendant's guilt or innocence has been introduced. U.S.C.A. Const.Amend. 5. | Will jeopardy attach when no evidence relating to the defendant's guilt or innocence has been introduced? | Double Jeopardy - Memo 1026 - C - KG_67741.docx | ROSS-003281969-ROSS-003281970 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8921 | Perez v. State, 266 Ga. App. 82 | 135H+99 | Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a valuable right under the Double Jeopardy Clause to be tried by the original impaneled jury. Pleas v. State, 268 Ga. 889, 890, 495 S.E.2d 4 (1998); Tubbs v. State, 276 Ga. 751, 754, 583 S.E.2d 853 (2003). When the trial court sua sponte interrupts the proceedings to declare a mistrial without the defendant's consent or over his objection, a retrial is nevertheless permissible if a manifest necessity existed for declaring the mistrial. Smith v. State, 263 Ga. 782, 783, 439 S.E.2d 483 (1994);A manifest necessity exists when the defendant's right to have the trial completed must be subordinated to the public interest in affording the prosecutor a fair opportunity to present evidence to an impartial jury, and "the ends of substantial justice cannot be attained without discontinuing the trial." (Citation and punctuation omitted.) Tubbs v. State, 276 Ga. at 754, 583 S.E.2d 853; Laster v. State, 268 Ga. 172, 173, 486 S.E.2d 153 (1997). | When the trial court sua sponte interrupts criminal proceedings to declare a mistrial without defendant's consent or over his objection, a retrial is nevertheless permissible, and defendant's right against double jeopardy is not violated, if a manifest necessity exists for declaring the mistrial. U.S.C.A. Const.Amend. 5. | Does jeopardy attach once a jury is impaneled to try the issue of guilt? | 014754.docx | LEGALEASE-00166008-LEGALEASE-00166009 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 8922 | Neff v. Com., 39 Va. App. 13 | 135H+59 | The double jeopardy provisions of the United States and Virginia Constitutions protect a criminal defendant from being prosecuted a second time for the same offense following an acquittal. Turner v. Commonwealth, 221 Va. 513, 529, 273 S.E.2d 36, 46 (1980), cert. denied, 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). A dismissal qualifies as an acquittal for double jeopardy purposes when it is granted pursuant to a factual, as opposed to a legal, defense. Johnson v. Commonwealth, 221 Va. 736, 743-44, 273 S.E.2d 784, 789 (1981). Furthermore, "[i]n a trial before a court without a jury the danger of conviction or jeopardy of an accused begins when the trial has reached the stage where the Commonwealth begins to introduce its testimony."Rosser v. Commonwealth, 159 Va. 1028, 1036, 167 S.E. 257, 259 (1933). In other words, "jeopardy begins after the accused has been indicted, arraigned and has pleaded, and the court has begun to hear the evidence." Id. at 1037, 167 S.E. at 259. Thus, as the Supreme Court noted in Martin v. Commonwealth, 242 Va. 1, 8, 406 S.E.2d 15, 18 (1991), "jeopardy attaches only after ... the first witness is sworn in a bench trial." | In a trial before a court without a jury the danger of conviction or jeopardy of an accused begins when the trial has reached the stage where the Commonwealth begins to introduce its testimony; in other words, jeopardy begins after the accused has been indicted, arraigned and has pleaded, and the court has begun to hear the evidence. U.S.C.A. Const.Amend. 5. | When does the danger of conviction or jeopardy of an accused begin in a trial without a jury? | Double Jeopardy - Memo 1079 - C - TM_67985.docx | ROSS-003294544-ROSS-003294545 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 8923 | Reyna-Abarca v. People, 390 P.3d 816 | 135H+30 | Thus, to determine whether punishments imposed by a court after a defendant's conviction are constitutionally proper, we must determine what punishments the legislature has authorized. See id. at 688, 100 S.Ct. 1432. If the legislature has not conferred specific authorization for multiple punishments, then double jeopardy principles preclude the imposition of multiple punishments.Woellhaf, 105 P.3d at 214. In this regard, the double jeopardy clauses embody the constitutional principle of separation of powers by ensuring that courts do not exceed their own authority by imposing multiple punishments not authorized by the legislature. See Whalen, 445 U.S. at 689, 100 S.Ct. 1432. | If the legislature has not conferred specific authorization for multiple punishments, then double jeopardy principles preclude the imposition of multiple punishments. U.S. Const. Amend. 5. | Do double jeopardy principles preclude the imposition of multiple punishments if the legislature has not conferred specific authorization for multiple punishments? | 014833.docx | LEGALEASE-00166060-LEGALEASE-00166061 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8924 | Dexter v. State, 959 N.E.2d 235 | 135H+109 | But retrial on a sentencing enhancement based on a prior conviction is permitted even where the enhancement is reversed because of insufficient evidence. See Monge v. California, 524 U.S. 721, 727"34, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); Jaramillo v. State, 823 N.E.2d 1187, 1191 (Ind.2005), cert. denied, 546 U.S. 1030, 126 S.Ct. 730, 163 L.Ed.2d 568 (2005). | Retrial on a sentencing enhancement based on a prior conviction is permitted even where the enhancement is reversed because of insufficient evidence. U.S.C.A. Const.Amend. 5. | Is retrial on a sentencing enhancement based on a prior conviction permitted even where the enhancement is reversed because of insufficient evidence? | 014859.docx | LEGALEASE-00166122-LEGALEASE-00166123 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 8925 | United States v. Luong, 393 F.3d 913 | 135H+30 | Le contends that he was already punished for the conduct relating to the overall Hobbs Act conspiracy charged in the Northern District and therefore is subject to multiple punishment for the same offense in the Eastern District. Relying on United States v. Koonce, 945 F.2d 1145 (10th Cir.1991), and United States v. McCormick, 992 F.2d 437 (2d Cir.1993), for the proposition that subsequent prosecution is precluded where conduct has already been used to determine a defendant offense level under the United States Sentencing Guidelines, Le posits that the sentencing judge in the Northern District action considered evidence of his role in the overall conspiracy to commit Hobbs Act robberies, including specifically the DFI robbery on January 20, 1996, and presumably sentenced him based on that evidence as well as his participation in other robberies that occurred elsewhere. However, this argument is foreclosed by Witte v. United States, 515 U.S. 389, 403-04, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), which held that punishment authorized by statute for a particular crime is "punishment only for the offense of conviction for purposes of the double jeopardy inquiry." See also United States v. Jernigan, 60 F.3d 562, 564-65 (9th Cir.1995) (holding that a defendant could be punished for failure to appear even though the same conduct was used to enhance his sentence for a prior conviction). | Punishment authorized by statute for a particular crime is punishment only for the offense of conviction for purposes of the double jeopardy inquiry. | Is punishment authorized by statute for a particular crime a punishment only for the offense of conviction for purposes of the double jeopardy inquiry? | Double Jeopardy - Memo 1190 - C - NE_67751.docx | ROSS-003294158-ROSS-003294159 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8926 | United States v. McGregor, 832 F. Supp. 2d 1332 | 135H+100.1 | The Double Jeopardy Clause, therefore, incorporates principles of collateral estoppel. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). As in civil litigation, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443, 90 S.Ct. 1189. If a jury "necessarily decided" a fact when it rendered a not-guilty verdict, issue preclusion prevents its relitigation. Yeager v. United States, 557 U.S. 110, 129 S.Ct. 2360, 2367, 174 L.Ed.2d 78 (2009). | If a jury necessarily decided a fact when it rendered a not-guilty verdict, issue preclusion, pursuant to the Double Jeopardy Clause, prevents its relitigation. U.S.C.A. Const.Amend. 5. | "If a jury necessarily decided a fact when it rendered a not-guilty verdict, does issue preclusion prevent its relitigation?" | Double Jeopardy - Memo 477 - C - TJ_68256.docx | ROSS-003294987-ROSS-003294988 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8927 | People v. Bright, 12 Cal. 4th 652 | 135H+98 | In contrast to greater and lesser degrees of an offense, a penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. Accordingly, a defendant's conviction of the underlying substantive offense does not (on double jeopardy grounds) bar further proceedings, such as retrial, on a penalty allegation. (See People v. Bryant, supra, 10 Cal.App.4th at pp. 1597"1598, 13 Cal.Rptr.2d 601.) Thus, the circumstance that the jury has returned a verdict on the underlying offense, but is unable to make a finding on the penalty allegation, does not constitute an "acquittal" of (or otherwise bar retrial of) the penalty allegation on the ground of double jeopardy. (People v. Guillen, supra, 25 Cal.App.4th 756, 762, 31 Cal.Rptr.2d 653; People v. Schulz (1992) 5 Cal.App.4th 563, 568"569, 7 Cal.Rptr.2d 269.) A mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. (Stone v. Superior Court, supra, 31 Cal.3d 503, 516, 183 Cal.Rptr. 647, 646 P.2d 809.). | Circumstance that jury has returned verdict on underlying offense, but is unable to make finding on penalty allegation, does not constitute an acquittal of, or otherwise bar retrial of, the penalty allegation on ground of double jeopardy. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | "Does a mistrial constitute a termination of jeopardy, and accordingly double jeopardy arises from the legal necessity of a mistrial?" | 016030.docx | LEGALEASE-00165757-LEGALEASE-00165758 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 8928 | United States v. Peoples, 360 F.3d 892 | 135H+100.1 | The Supreme Court has applied several double jeopardy principles in capital cases. The touchstone principle in capital sentencing proceedings is that jeopardy terminates and provides finality for the penalty phase if there is an acquittal of death.Sattazahn, 537 U.S. at 109, 123 S.Ct. 732. The mere imposition of a life sentence is not enough; there must be an affirmative choice by the jury not to impose a death sentence. Id. at 107, 123 S.Ct. 732. If the jury finds that the prosecutor failed to prove the aggravating circumstances and unanimously sentences the defendant to life in prison, it has acquitted him of death as a possible penalty. Rumsey, 467 U.S. at 210-11, 104 S.Ct. 2305. | In capital sentencing proceedings jeopardy terminates and provides finality for the penalty phase if there is an acquittal of death; if there has been no acquittal by judge or jury, defendant may again be subjected to penalty of death. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. S 3594. | "In capital sentencing proceedings, does jeopardy terminate and provides finality for the penalty phase if there is an acquittal of death?" | 016063.docx | LEGALEASE-00165809-LEGALEASE-00165810 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 8929 | State v. Smith, 166 A.3d 691 | 135H+1 | As a preliminary matter, we set forth the applicable standard of review and relevant legal principles that govern claims involving the constitutional right against double jeopardy. "A defendant's claim that a conviction violated his constitutional right against double jeopardy raises an issue of law; our review of such a claim is plenary.... The United States constitution contains the guarantee that [n]o person shall be ... subject for the same offense to be twice put in jeopardy of life or limb .... The fifth amendment's prohibition of double jeopardy applies to state prosecutions through the due process clause of the fourteenth amendment.... The double jeopardy clause protects against a second prosecution for the same offense following acquittal, a second prosecution for the same offense after conviction and multiple punishments for the same offense." | The Double Jeopardy Clause protects against a second prosecution for the same offense following acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. U.S. Const. Amend. 5. | "Does double jeopardy clause protect against a second prosecution for the same offense after conviction, and multiple punishments for the same offense?" | 016072.docx | LEGALEASE-00165819-LEGALEASE-00165820 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 8930 | State v. Santiago, 928 So. 2d 480 | 135H+97 | "The general rule is that when a mistrial is declared upon the defendant's motion jeopardy does not attach and the defendant may be retried." Rutherford v. State, 545 So.2d 853, 855 (Fla.1989) (citing McLendon v. State, 74 So.2d 656 (Fla.1954); State ex rel. Larkins v. Lewis, 54 So.2d 199 (Fla.1951)). "An exception occurs when the prosecution goads the defense into moving for a mistrial and gains an advantage from the retrial." Id. (citing Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). | General rule is that when a mistrial is declared upon a defendant's motion, jeopardy does not attach and the defendant may be retried; an exception occurs, however, when the prosecution goads the defense into moving for a mistrial and gains an advantage from the retrial. U.S.C.A. Const.Amend. 5. | "General rule is that when a mistrial is declared upon a defendant's motion, does jeopardy not attach and the defendant may be retried?" | Double Jeopardy - Memo 753 - C - SKG_67758.docx | ROSS-003282855-ROSS-003282856 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 8931 | United States v. Jose, 425 F.3d 1237 | 135H+100.1 | However, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry...." Illinois v. Somerville, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). The attachment of jeopardy is a necessary, though not sufficient, condition for applying the protections of the Double Jeopardy Clause. There must also be a jeopardy terminating event, most commonly an acquittal or a final judgment of conviction. See Sattazahn v. Pennsylvania, 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) ("Under this Clause, once a defendant is placed in jeopardy for an offense [i.e., jeopardy "attaches'], and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense.") (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); see also United States v. Byrne, 203 F.3d 671, 673 (9th Cir.2000) ("Jeopardy terminates when the jury reaches a verdict, or when the trial judge enters a final judgment of acquittal.") (citing Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962)). | After the attachment of jeopardy, there must be a jeopardy terminating event, most commonly an acquittal or a final judgment of conviction, in order for double jeopardy protections to apply to subsequent proceedings. U.S.C.A. Const.Amend. 5. | "After the attachment of jeopardy, should there be a jeopardy terminating event, most commonly an acquittal or a final judgment of conviction?" | Double Jeopardy - Memo 788 - C - SN_67793.docx | ROSS-003278500-ROSS-003278501 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 8932 | State v. Kirk, 64 Wash. App. 788 | 135H+1 | The Double Jeopardy Clause provides four related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984). | Double jeopardy clause protects against second prosecution for same offense after acquittal, protects against second prosecution for same offense after conviction, and protects against multiple punishments for same offense as well as protecting valued right to have trial completed by particular tribunal. U.S.C.A. Const.Amend. 5. | "Does double jeopardy protect against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction and against multiple punishments for the same offense?" | Double Jeopardy - Memo 951 - C - KS.docx | LEGALEASE-00055648-LEGALEASE-00055649 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8933 | State v. Taylor, 136 Ohio Misc. 2d 18 | 135H+1 | First, in the criminal context, the Fifth Amendment's Double Jeopardy Clause precludes successive prosecutions and successive punishments for the same criminal offense. United States v. Dixon (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556, citing North Carolina v. Pearce (1996), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. In the civil context, the doctrine of res judicata bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of a previous action decided on the merits. | The Fifth Amendment's Double Jeopardy Clause precludes successive prosecutions and successive punishments for the same criminal offense. U.S.C.A. Const.Amend. 5. | Does the Fifth Amendment's Double Jeopardy Clause preclude successive prosecutions and successive punishments for the same criminal offense? | Double Jeopardy - Memo 954 - C - KS_67828.docx | ROSS-003298769-ROSS-003298770 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 8934 | Willoughby v. State, 660 N.E.2d 570 | 210+407 | We have consistently ruled, in cases where dismissal occurs prior to jeopardy attaching, that there is no bar to refiling an information charging the same offense in identical terms. Burdine v. State (1987), Ind., 515 N.E.2d 1085, 1089-90; Johnson v. State (1969), 252 Ind. 79, 246 N.E.2d 181. In a jury trial, jeopardy attaches after the jury is empaneled and sworn. Ind.Code " 35-41-4-3. Jeopardy had not yet attached in Willoughby's second trial at the time the prosecutor dismissed the first information. The State, therefore, had authority to refile the charges against the Defendant. | After the first information was dismissed, trial court correctly allowed state to refile the charges of murder and to expand dates of the conspiracy to commit murder charge: jeopardy had not yet attached at time prosecutor dismissed the first information and therefore, state had authority to refile charges against defendant; although in the second information count charging defendant with conspiracy to commit murder expanded time frame of the conspiracy by 11 days, defendant did not demonstrate any prejudice, and same defenses available against first conspiracy charge were available against second. | Why would jeopardy not be attached when court dismissed charges against defendants? | Double Jeopardy - Memo 976 - C - PB_67848.docx | ROSS-003308483-ROSS-003308484 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |
| 8935 | In re Brankle Brokerage & Leasing, 394 B.R. 906 | 349A+10 | The court does not need to determine whether the agreement between Brankle Brokerage and Volvo Financial constitutes a security interest as a matter of law, under " 1"203(b), because it is clear that when the particular facts of the case are analyzed in light of the considerations of " 1"203(c), the economic realities of the transaction lead to the same conclusion. This part of the analysis requires the court to consider the overall import of the entire transaction, rather than particular bits and pieces of it. That is the purpose " 1"203(c) which, in essence, counsels that the presence of particular types of provisions in the agreement is not, by itself, sufficient to lead to conclusion that the agreement creates a security interest. N.C. Gen.Stat. Ann. " 25"1"203 ("a transaction ... does not create a security interest merely because...."). The central feature of a true lease is the reservation of an economically meaningful interest to the lessor at the end of the lease term. Ordinarily, this means two things: (1) at the outset of the lease did the parties expect the goods to retain some significant residual value at the end of the lease term; and (2) the lessor retains some entrepreneurial stake (either the possibility of gain or the risk of loss) in the value of the goods at the end of the lease term. 4 White & Summers, Uniform Commercial Code " 30"1, p. 15 (5th ed.2002). See also, Grubbs Construction, 319 B.R. at 715. | Under North Carolina law, central feature of true lease, as opposed to disguised security agreement, is reservation of economically meaningful interest to lessor at end of lease term. West's N.C.G.S.A. S 25-1-203. | Is the central feature of a true lease reservation of an economically meaningful interest to a lessor at the end of a lease term? | Secured Transactions - Memo 45 - C - PC_68074.docx | ROSS-003278711-ROSS-003278712 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 8936 | United States v. James, 737 F. Supp. 2d 1 | 135H+30 | Finally, the defendant argues that the Court relied upon a prior conviction in imposing his sentence, thereby subjecting him to double jeopardy, and that he cannot waive a double jeopardy claim. Def.'s Mot. at 9. Specifically, the defendant asserts that the application of the Career Offender provision of the Sentencing Guidelines violates the Double Jeopardy Clause of the Fifth Amendment. Def.'s Mem. at 4"5. But similar, if not identical, claims have been rejected by the Supreme Court, see Witte v. United States, 515 U.S. 389, 402"06, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) ("Because consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense."), and the District of Columbia Circuit, see United States v. Garrett, 959 F.2d 1005, 1009 (1992) (rejecting a claim that the Career Offender provision violates the Double Jeopardy Clause, as " "[t]he sentence as a ... habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one." " (quoting Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948))). Thus, Mr. Moore was not deficient for failing to raise this meritless claim. | Application of Career Offender provision of Sentencing Guidelines to defendant did not violate Double Jeopardy Clause. U.S.C.A. Const.Amends. 5, 6.; U.S.S.G. S 4B1.1, 18 U.S.C.A. | Does application of Career Offender provision of Sentencing Guidelines to defendant violate Double Jeopardy Clause? | 014869.docx | LEGALEASE-00166174-LEGALEASE-00166175 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8937 | Thomason v. State, 620 So. 2d 1234 | 110+867.23 | Because the right not to be subjected to double jeopardy is so important and because it is frustrated when a trial ends before a verdict is reached, the State bears a heavy burden in justifying a mistrial over the objection of a defendant. Arizona v. Washington, 434 U.S. at 505, 98 S.Ct. at 830. Doubt about whether the mistrial is appropriate is resolved "in favor of the liberty of the citizen." Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), (quoting United States v. Watson, 28 F.Cas. 499, 500-01 (D.C.S.D. N.Y.1868) (No. 16,651)). So.2d 530, 532 (Fla.1967). | State bears heavy burden in justifying mistrial over objection of defendant, and doubt about whether mistrial is appropriate is resolved in favor of the liberty of the citizen. U.S.C.A. Const.Amend. 5; West's F.S.A. Const. Art. 1, S 9. | "When a trial ends before a verdict is reached, does the State bear a heavy burden in justifying a mistrial over the objection of the defendant?" | 015641.docx | LEGALEASE-00166138-LEGALEASE-00166139 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 8938 | State v. Todd, 894 N.W.2d 255 | 135H+99 | In a case tried to a jury, jeopardy attaches when the jury is impaneled and sworn. However, a mistrial does not automatically terminate jeopardy, because " "a trial can be discontinued when particular circumstances manifest a necessity for doing so, and when failure to discontinue would defeat the ends of justice." " Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant. | Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant. U.S. Const. Amend. 5. | Does double jeopardy not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant? | 015894.docx | LEGALEASE-00166256-LEGALEASE-00166257 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 8939 | Boyd v. Boughton, 798 F.3d 490 | 135H+1 | As the Supreme Court has interpreted it, the Double Jeopardy Clause envisions three ways in which a defendant may be "twice put in jeopardy of life or limb": (1) a subsequent prosecution after an acquittal; (2) a subsequent prosecution after a conviction; and (3) being twice punished for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The type of jeopardy at issue in this case is the third, which we will refer to as the "multiple-punishment" line of cases. | Double Jeopardy Clause envisions three ways in which defendant may be "twice put in jeopardy of life or limb": (1) subsequent prosecution after acquittal; (2) subsequent prosecution after conviction; and (3) being twice punished for same offense. U.S.C.A. Const.Amend. 5. | What does double jeopardy clause envision? | 015972.docx | LEGALEASE-00166329-LEGALEASE-00166330 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8940 | First Louisiana Bank v. Morris & Dickson Co., 6 So. 3d 1047 | 13+27(1) | The applicable prescriptive period is determined by the character of the action disclosed in the pleadings. Johnson v. Ledoux, 42,090 (La.App.2d Cir.5/16/07), 957 So.2d 911, writ denied, 07"1482 (La.10/5/07), 964 So.2d 946, citing Starns v. Emmons, 538 So.2d 275 (La.1989). The nature of the basic underlying action determines the appropriate prescriptive period. Id., citing Fishbein v. LSU Health Sciences Center, 04"2482 (La.4/12/05), 898 So.2d 1260. The same actions or omissions may constitute breaches of general duties as well as contractual duties, giving rise to causes of actions in tort and contracts. In re St. Louis Encephalitis Outbreak in Ouachita Parish No. 01"4224 all cases, 41,250, et al, (La.App.2d Cir.9/1/06), 939 So.2d 563, writ denied, 06"2527 (La.12/15/06), 945 So.2d 694. Further, a plaintiff may assert both actions and is not required to plead the theory of his case. Id. | The same actions or omissions may constitute breaches of general duties as well as contractual duties, giving rise to causes of actions in tort and contracts. | Can the same actions or omissions constitute breaches of general duties as well as contractual duties? | Action - Memo 979 - C _1Ljg8PuC3GXZP-cWLoozZKvxhcp_V0M3F .docx | ROSS-000000082-ROSS-000000083 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 8941 | Lukkason v. 1993 Chevrolet Extended Cab Pickup, 590 N.W.2d 803 | 135H+25 | Finally, Lukkason argues that forfeiture of his vehicle is equivalent to an $11,534.923 criminal penalty, which violates both the Double Jeopardy and Excessive Fines Clauses of the Minnesota and United States Constitutions. Constitutional analysis of civil forfeiture under the Double Jeopardy Clause is separate and distinct from that under the Excessive Fines Clause. Ursery, 518 U.S. at 286"87, 116 S.Ct. at 2146"47.4 To determine whether a civil forfeiture constitutes "punishment" for double jeopardy purposes, courts follow the two-step test articulated in Ursery, 518 U.S. at 288, 116 S.Ct. at 2147. Under that test, courts must first examine the governing statute to determine whether forfeiture was intended to be, or by its nature, necessarily is, criminal and punitive rather than civil and remedial. | Constitutional analysis of civil forfeiture under the Double Jeopardy Clause is separate and distinct from that under the Excessive Fines Clause. U.S.C.A. Const.Amends. 5, 8; M.S.A. Const. Art. 1, SS 5, 7. | Is a constitutional analysis of civil forfeiture under the Double Jeopardy Clause separate and distinct from that under the Excessive Fines Clause? | 015722.docx | LEGALEASE-00166443-LEGALEASE-00166444 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 8942 | Owsley v. State, 769 N.E.2d 181 | 135H+100.1 | Griffin v. State, 717 N.E.2d 73, 84 (Ind.1999) (quoting Little v. State, 501 N.E.2d 412, 415 (Ind.1986) (in turn quoting United States v. Mespoulede, 597 F.2d 329, 330 (2nd. Cir.1979))), cert. denied, 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000). Here, because of the jury's irreconcilable verdicts, it is impossible to determine definitively what was "necessarily decided" in the first trial, and the State is not collaterally estopped from relitigating whether Owsley committed the overt act of providing Stallworth with cocaine in furtherance of the alleged conspiracy. A jury's acquittal absolutely bars retrial on that particular charge, however, even if the verdict was reached erroneously. See North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); Griffin, 717 N.E.2d at 77. Owsley, therefore, may only be retried on the conspiracy charge, but not on the possession or dealing charges. See DeSacia, 469 P.2d at 380-81. | A jury's acquittal absolutely bars retrial on that particular charge, even if the verdict was reached erroneously. | "Does a jury's acquittal absolutely bar retrial on that particular charge, even if the verdict was reached erroneously?" | Double Jeopardy - Memo 538 - C - KG_68317.docx | ROSS-003294595-ROSS-003294596 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8943 | State v. Soule, 794 A.2d 58 | 135H+105 | At the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for "the same offense." United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Thus "the Double Jeopardy Clause provides three related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." " Id. (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969)). The United States Supreme Court has held that collateral estoppel and the Double Jeopardy Clause bar subsequent relitigation of an issue on which a criminal defendant has been acquitted. Ashe v. Swenson, 397 U.S. 436, 444"447, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). | At the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for "the same offense," and thus, the Double Jeopardy Clause provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does the Double Jeopardy Clause provide three related protections? | Double Jeopardy - Memo 539 - C - KG_68318.docx | ROSS-003293933-ROSS-003293934 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 8944 | State v. Gerstmann, 198 N.J. Super. 175 | 135H+100.1 | It is axiomatic that an acquittal of criminal and quasi-criminal charges insulates the defendant from any further exposure to the criminal process based on the same conduct. That is the mandate of the Fifth Amendment. See State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980), explaining that: This clause guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187"88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), quoted in United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649 (1977). | Under Fifth Amendment prohibition of double jeopardy, acquittal of criminal or quasi-criminal charges insulates defendant from any further exposure to criminal process based on same conduct. U.S.C.A. Const.Amend. 5. | Does acquittal of criminal and quasi-criminal charges insulate a defendant from any further exposure to the criminal process based on the same conduct? | 015758.docx | LEGALEASE-00166478-LEGALEASE-00166479 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8945 | West v. Men's Focus Health Centers of Georgia, 251 Ga. App. 202 | 307A+695 | Several days after the dismissal, the Wests filed the present complaint seeking to renew their earlier action. OCGA " 9-2-61(a) generally allows the renewal of an action by filing a new complaint "within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later." The privilege of dismissal and renewal does not, however, apply to void cases, although renewal of actions which were merely voidable is allowed. Because Jennings Enterprises v. Carte held that actions filed in violation of a federal bankruptcy stay are considered void ab initio in Georgia, the trial court granted Men's Focus's motion to dismiss. | The privilege of dismissal and renewal of an action does not apply to void cases, although renewal of actions which were merely voidable is allowed. O.C.G.A. S 9-2-61(a). | "Does the privilege of dismissal and renewal of an action not apply to void cases, although renewal of actions which were merely voidable is allowed?" | Pretrial Procedure - Memo 12055 - C - KG_68731.docx | ROSS-003294430-ROSS-003294431 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 8946 | Woods Corp. Assocs. v. Signet Star Holdings, 910 F. Supp. 1019 | 349A+10 | An assignment is absolute if its precise language demonstrates an intent to immediately transfer the assignor rights and title. In re Winslow Center Assocs., 50 B.R. 679, 681"82 (E.D.Pa.1985) (applying New Jersey law). Determining what language creates an absolute assignment rather than a pledge for security depends on the precise wording of the assignment. | Under New Jersey law, determining what language creates absolute assignment rather than pledge for security depends on precise wording of the assignment. | Does determining what language creates an absolute assignment rather than a pledge for security depend on precise wording of the assignment? | 042683.docx | LEGALEASE-00167055-LEGALEASE-00167056 | Order, SA | 0.57 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8947 | In re JII Liquidating, 341 B.R. 256 | 349A+10 | Under the bright line, per se test set out in this portion of the statute, a contract will be construed as a security interest as a matter of law if the lessee cannot terminate the agreement and any one of the four specified requirements is satisfied. United Airlines, 416 F.3d at 616 (noting that "[t]his is the UCC's per se rule"); Buehne Farms, 321 B.R. at 242 (stating that "a security agreement is conclusively found to exist" upon satisfaction of the requirements of the statute); In re Beam, No. 97"82752, 1998 WL 34065623, at (Bankr.C.D.Ill. July 31, 1998) (applying New York law); Banterra Bank v. Subway Equip. Leasing Corp. (In re Taylor), 209 B.R. 482, 484 (Bankr.S.D.Ill.1997). | Under Illinois law, purported personal property lease will be construed as security agreement as matter of law, if lessee cannot terminate agreement, and if any one of four specific statutory requirements is satisfied. S.H.A. 810 ILCS 5/1-201(37). | "Will a purported personal property lease be construed as a security agreement as a matter of law, if a lessee cannot terminate an agreement?" | Secured Transactions - Memo 84 - C - TM_68706.docx | ROSS-003297033-ROSS-003297034 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 8948 | In re WorldCom, 339 B.R. 56 | 50+2 | Though the concepts expressed in " 1"201(37) are rather easily defined, the means to distinguish between them in a rigorous manner has often eluded the courts. See, e.g., Michael W. Gaines, Security Interests Under Article 2A: More Confusion in the Leasing Arena, 18 Stetson L.Rev. 69, 69 (Fall 1988) (noting "the plethora of litigation regarding lease agreements and leased equipment"); Edwin E. Huddleson, Old Wine in New Bottles: UCC Article 2A"Leases, 39 Ala. L.Rev. 615, 623"639 (1988) ("drawing [the distinction between true leases and security interests] has proved to be a difficult and frequently litigated problem"). As the leading treatise on the UCC has defined these concepts, "A lease involves payment for the temporary possession, use, and enjoyment of goods, with the expectation that the goods will be returned to the owner with some expected residual interest of value remaining at the end of the lease term. | For purposes of determining whether contractual agreement is properly characterized as lease or security arrangement, a "lease" involves payment for the temporary possession, use, and enjoyment of goods, with the expectation that the goods will be returned to the owner with some expected residual interest of value remaining at the end of the lease term, whereas a "security interest" is only an inchoate interest contingent on default and limited to the remaining secured debt. | "Does a ""lease"" involve payment for the temporary possession?" | 042869.docx | LEGALEASE-00167057-LEGALEASE-00167058 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 8949 | In re Our Secret, Ltd., 282 B.R. 697 | 349A+10 | The statute then qualifies this directive as signaled by the word "however," and sets out a two-part objective test that delineates factors which, if present, establish that an agreement is a security agreement no matter what the parties call it. NMSA 1978 " 55"1"201(37) (Cum.Supp.); see, also, PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet), 271 B.R. 1, 43 (Bankr.S.D.N.Y.2001) (finding that UCC " 201(37) implements an objective test "by setting out a bright line test whereby, as a matter of law, a transaction creates a security interest."). In contrast to the previous UCC security agreement test, which focused on the respective parties' intent, the focus of the new objective test is on the agreement's economic realities (hereinafter, the objective test will be referred to as the "economic realities test"). See, e.g., Id.; Hanes v. Vital Prod. Co. (In re Vital Prod. Co.), 210 B.R. 109, 112 (Bankr.N.D.Ohio 1997). | Under New Mexico law, in contrast to the previous Uniform Commercial Code (UCC) test for whether a transaction is a lease or a security agreement, which focused on the respective parties' intent, the focus of the new objective test is on the agreement's economic realities. NMSA 1978, S 55-1-201(37). | Is the focus of the new objective test on the agreement's economic realities? | Secured Transactions - Memo 94 - C - MS_68749.docx | ROSS-003292947-ROSS-003292948 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 8950 | Robb v. Nielson, 71 Idaho 222 | 371+2360 | It thus appears that there is nothing in any of the foregoing cases which supports plaintiff's contention that the legislature can waive the constitutional exemption from taxation of public property and voluntarily pay taxes thereon The often cited Utah case of State v. Armstrong, supra, presented a situation parallel in principle to the instant case. The constitution of Utah provides that "All property in the State, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Const.1895, art. 13, " 2. The legislature attempted to authorize counties to remit or abate certain taxes after their levy. | The legislature may not waive the constitutional exemption from taxation of public property and voluntarily pay taxes thereon. Const. art. 7, S 4. | Can the legislature waive the constitutional exemption from taxation of public property and voluntarily pay taxes thereon? | Taxation - Memo 1293 - C - SM_68507.docx | ROSS-003295780-ROSS-003295781 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8951 | Keesee v. Civil Dist. Bd. of Educ., 46 Tenn. 127 | 381+54 | The implication is irresistible, that the expression of the authority to delegate the power to the counties and towns, is an absolute exclusion of authority to delegate the power to any other agency, It is impossible to doubt that the Convention designated the counties and incorporated towns, and authorized the power to be conferred on them, for the reason that, without such designation, the power of taxation would be restricted to the Legislature only. The purpose of the 29th article was, to authorize the Legislature to confer the power of taxation on the counties and incorporated towns, and no other or further. | The implication is irresistible that the expression of the authority to delegate the power of taxation to the counties and towns, is an absolute exclusion of authority to delegate the power to any other agency. | Is expression of the authority to delegate the power of taxation to the counties and towns imply an absolute exclusion of authority to delegate the power to any other agency? | Taxation - Memo 1379 - C - MV_68666.docx | ROSS-003293769-ROSS-003293770 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8952 | Fallin v. City of Huntsville, 865 So. 2d 473 | 3.77E+23 | Therefore, we hold that a person commits the crime of harassment if, with the intent to harass, annoy, or alarm another person, he or she strikes, shoves, kicks, or otherwise touches that person or subjects him or her to physical contact; directs abusive or obscene language or makes an obscene gesture towards that person; or makes a threat against that person, verbally or nonverbally, with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety. Thus, we conclude that, in certain situations"i.e., where the words or actions are manifested in the form of a threat"a person may commit the crime of harassment even if the words do not rise to the level of "fighting words." We note that abusive or obscene language must still amount to "fighting words" in those situations where the language is merely offensive or distasteful, but does not constitute a threat. | In certain situations, i.e., where words or actions are manifested in form of threat, person may commit crime of harassment even if words do not rise to level of "fighting words." Code 1975, S 13A-11-8(a)(1) b. | "Can an individual commit the crime of harassment even if his words do not rise to the level of ""fighting words""?" | 046783.docx | LEGALEASE-00167360-LEGALEASE-00167361 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8953 | In re Wead, 38 B.R. 658 | 2+5 | The record clearly indicates that the debtors filed this second Chapter 11 petition for reorganization on March 30, 1984, while the first Chapter 11 bankruptcy case was pending; and that the first case was pending at the time of the hearing on the motion to dismiss the second case. To the extent possible, the Court has compared the list of creditors in each case and concluded that the two cases affect essentially the same debts and creditors. Furthermore, each case is based upon a Chapter 11 petition which was voluntarily filed by the debtors. It is generally accepted that the pendency of one bankruptcy case precludes a consideration of a second case filed by the same debtor(s) and involving the same debts. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). Although the Freshman case was decided upon early bankruptcy law, the principles affirmed by the Supreme Court are based upon solid tenants of non-bankruptcy law. Freshman, supra, at 123, 46 S.Ct. at 42. A recent decision of the United States District Court for the Western District of Pennsylvania has determined that the Freshman decision is still good law and has been relied upon in other recent bankruptcy cases. Prudential Insurance Co. of America v. Colony Square,29 B.R. 432, 436 (W.D.Penn.1983). Rather than dismiss the second bankruptcy case outright, the Court in Colony Square transferred the matter to the Bankruptcy Court for the Northern District of Georgia where the first reorganization case was still pending, for further consideration of the motion to dismiss. | Pendency of one bankruptcy case precludes a consideration of a second case filed by the same debtors and involving the same debts. | Does the pendency of one bankruptcy case preclude a consideration of a second case filed by the same debtors involving the same debts? | 04763.docx | LEGALEASE-00077119-LEGALEASE-00077120 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 8954 | Serenko v. Bright, 263 Cal. App. 2d 682 | 15A+1007 | Vehicle Code section 315, predecessor of section 14107 provided that all hearings should be conducted by the executive officer or other officers or employees of the Department designated by him, and should be governed insofar as practical by the rules of practice and procedure governing the trial of a civil action. In 1947 the Legislature authorized the Department to conduct formal hearings, distinguished informal hearings, and eliminated the requirement that judicial rules of civil procedure should control (Veh.Code, s 316) thus substituting traditional administrative principles of due process for judicial standards (Anderson v. Board of Dental Examiners of California, 27 Cal.App. 336, 149 P. 1006) and relieving the hearing officers, who at no time have been required to be attorneys, of the burden of applying strict judicial rules. The same year the Administrative Procedure Act was made applicable to those areas relating to formal hearings by the Department which were not otherwise specifically regulated. There is nothing in the history or in the present language of the pertinent Vehicle Code sections to suggest that there should be any change in the professional qualifications of the hearing officers, and the Vehicle Code does not distinguish those persons authorized to conduct informal hearings from those entitled to conduct formal hearings (Veh.Code, s 14107). Moreover,the Administrative Procedure Act itself is restricted in its application to implement only those functions of a state agency to which it is expressly "made applicable by the statutes relating to the particular agency," (Gov.Code, s 11501) and this restriction has been strictly construed by the courts. (Bertch v. Social Welfare Dept. of State of California, 45 Cal.2d 524, 527, 289 P.2d 485; Taliaferro v. Insurance Commission of State of California, 142 Cal.App.2d 487, 489, 298 P.2d 914.) | Restriction on Administrative Procedure Act to implementing only functions of state agency to which it is expressly made applicable by statutes relating to particular agency will be strictly construed. West's Ann.Gov.Code, S 11501. | Is Administrative Procedure Act construed strictly? | 04058.docx | LEGALEASE-00077231-LEGALEASE-00077232 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 8955 | Petition of Highway US-24, in Bloomfield Twp., Oakland Cty., 392 Mich. 159 | 1.49E+06 | It is most important to note that EPA does not, as both parties imply (Appellants' Brief, p. 23; Commission's Brief, p. 36), merely provide a separate Procedural route for protection of environmental quality, it also is a source of supplementary Substantive environmental law. See Sax and Conner, "Michigan's Environmental Protection Act of 1970: A Progress Report," 70 Mich.L.R. 1004, 1054"1064 (1972). | Environmental Protection Act of 1970 does not merely provide a separate procedural route for protection of environmental quality but also is a source of supplementary substantive environmental law. M.C.L.A. S 691.1201 et seq. | Does the Environment Protection Act merely provide a separate procedural route for protection of environmental quality? | 06352.docx | LEGALEASE-00078372-LEGALEASE-00078374 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 8956 | People ex rel. Scott v. Briceland, 65 Ill. 2d 485 | 1.49E+08 | We, therefore, hold that section 4(e) is unconstitutional to the extent that it authorizes the institution and prosecution of proceedings before the Pollution Control Board by an officer other than the Attorney General.Our decision does not render the Environmental Protection Act unconstitutional, however, as the provisions of the Act was severable. Ill.Rev.Stat.1975, ch. 111 1/2, par. 1051. | Environmental Protection Act is unconstitutional to extent that it authorizes institution and prosecution of proceedings before Pollution Control Board by an officer other than the Attorney General but, as provisions of the act are severable, the invalidity of such provision does not render the act unconstitutional. S.H.A.Const.1970, art. 5, SS 15, 16; art. 11, S 1 et seq.; S.H.A. ch. 1111/2, SS 1004(e), 1051. | Is Section 4(e) of the Environmental Protection Act unconstitutional? | 06354.docx | LEGALEASE-00078410-LEGALEASE-00078412 | Condensed, SA | 0.05 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8957 | Chime v. Peak Sec. Plus, 137 F. Supp. 3d 183 | 170A+172 | First, under Rule 23(a), the plaintiff must establish each of four requirements, often referred to as the criteria of numerosity, commonality, typicality, and adequacy. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Fed.R.Civ.P. 23(a). In Amchem, the Supreme Court set forth concisely the parameters of the Rule 23(a)19 inquiry: Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").521 U.S. at 613, 117 S.Ct. 2231. As the Supreme Court has recently emphasized, the question of certification will frequently overlap with the merits of the plaintiff's claims because class determination considerations are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Behrend, 133 S.Ct. at 1432 (quoting Dukes, 131 S.Ct. at 2551); see also In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir.2006) ("[C]areful examination of Eisen [v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ] reveals that there is no basis for thinking that a specific Rule 23 requirement need not be fully established just because it concerns, or even overlaps with, an aspect of the merits."), decision clarified on denial of reh'g, 483 F.3d 70 (2d Cir.2007). Thus, the Supreme Court reiterated that Rule 23(a) "does not set forth a mere pleading standard," but rather the party seeking class certification bears the burden of establishing the existence of all four Rule 23(a) requirements "in fact." Behrend, 133 S.Ct. at 1432 (quoting Dukes, 131 S.Ct. at 2551"52) (emphasis in original). The class certification question thus requires the court to "receive enough | Class certification rule does not set forth mere pleading standard, but rather party seeking class certification bears burden of establishing existence of all requirements for class certification in fact. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A. | Can pleadings satisfy a partys evidentiary burden for class certification? | 07411.docx | LEGALEASE-00079081-LEGALEASE-00079082 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 8958 | Red Lake Band v. United States, 17 Cl. Ct. 362 | 209+124 | In general, statutes must be interpreted in the context of their enactment. See Mountain States Telephone & Telegraph Co. v. Santa Ana, 472 U.S. 237, 252, 105 S.Ct. 2587, 2596, 86 L.Ed.2d 168 (1985). While substantial weight should be given to the interpretation of those charged with applying statutory provisions, id. at 254, 105 S.Ct. at 25, special considerations arise for the construction of provisions within agreements between the United States and Indian tribes. It is an established rule that ambiguous provisions in treaties and legislation ratifying agreements between the United States and Indian tribes must be interpreted in favor of the Indians. See Antoine v. Washington, 420 U.S. 194, 199"200, 95 S.Ct. 944, 948"948, 43 L.Ed.2d 129 (1975); Minnesota Chippewa Tribe, 11 Cl.Ct. at 239. This rule does not permit a construction that contradicts express statutory language or legislative history, however. DeCoteau v. District Court, 420 U.S. 425, 445, 95 S.Ct. 1082, 1093, 43 L.Ed.2d 300 (1975). With these principles in mind, the court reviews the legislative history underlying the Nelson Act in general and section 7 in particular. | Although ambiguous provisions in treaties and legislation ratifying agreements between United States and Indian tribes must be interpreted in favor of Indians, construction that contradicts express statutory language or legislative history is not permitted. | Are the ambiguous provisions in treaties ratifying agreements between the United States and Indian tribes construed against the Indians? | 05116.docx | LEGALEASE-00084216-LEGALEASE-00084217 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8959 | In re Schubert, 437 B.R. 787 | 366+1 | Equitable subrogation has often been applied in cases in which lenders have refinanced mortgages. In such cases, the court applies equitable subrogation under its equity power to correct technical document errors to honor evidence of a lender's intent to refinance a loan while equitably subrogated to the original loan date; and importantly because intervening creditors had notice of the earlier loan, and so are not prejudiced by equitable subrogation, but otherwise would be unjustly enriched. See, e.g., Bennett v. Westfall, 186 Md. 148, 152, 46 A.2d 358, 360 (1946)(mortgagee who released prior mortgage on property and thereafter recorded a new mortgage under mistake of fact that there was no mortgagee subsequent in priority to the first, was entitled to be subrogated to the date of recordation of his original mortgage). In short, subrogation "is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one, who in justice, equity and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment." Hill v. Cross Country Settlements, 402 Md. 281, 312, 936 A.2d 343, 362 (2007) (citations omitted). Accordingly, the Bankruptcy Court, as a court of equity, favors the liberal application of such principle where the facts support it and such application causes no harm to an intervening creditor. | Under Maryland law, equitable subrogation is designed to promote and accomplish justice, and is mode which equity adopts to compel ultimate payment of debt by one who, in justice, equity and good conscience, should pay it. | Is equitable subrogation designed to promote and accomplish justice? | 05162.docx | LEGALEASE-00084244-LEGALEASE-00084245 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8960 | Black River Assocs. v. Koehler, 126 Vt. 394 | 322H+1166 | There is no finding that the defendant had actual knowledge of the provisions of the plaintiff's agreement. Such notice is not essential. If Dion had sufficient facts concerning the plaintiff's interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose.Farmers Exchange v. Lowney Co., 95 Vt. 445, 450, 115 A. 507; Passumpsic Savings Bank v. First National Bank, 53 Vt. 82, 89 | If party who made down payment on realty subsequent to time original purchaser made down payment on same realty had sufficient facts concerning original purchaser's interest in the property to call upon him to inquire, such party was charged with notice of such facts as diligent inquiry would have disclosed. | When is a party charged with notice of such facts as diligent inquiry would disclose? | 05852.docx | LEGALEASE-00089200-LEGALEASE-00089201 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 8961 | State Farm Fire & Cas. Co. v. Smith, 39 So. 3d 1172 | 307A+690 | Accordingly, we conclude that Rule 4(b), Ala. R. Civ. P., allows 120 days for service of process and that an action may not be dismissed for insufficient service before the expiration of the 120-day period. In this case, the trial court granted Smith's motion to dismiss for insufficientservice only 77 days after the complaint had been filed. Therefore, the trial court erred in dismissing the action before the expiration of the 120-dayperiod. | If a plaintiff fails to perfect service of process within 120 days, a trial court may dismiss the action without prejudice pursuant to the rule permitting a 120-day period for service of process; however, in extreme circumstances, a trial court may dismiss with prejudice an action for failure to effect service after the 120-day window has expired, pursuant to the rule permitting a dismissal of an action for the failure of the plaintiff to prosecute or comply with the rules of civil procedure. Rules Civ.Proc., Rules 4(b), 41(b). | "Under the rule permitting a 120-day period for service of process, can an action not be dismissed for insufficient service before the expiration of the 120-day period?" | 05867.docx | LEGALEASE-00092624-LEGALEASE-00092625 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8962 | Peters v. Riggs, 2015 IL App (4th) 140043 | 307A+686.1 | "A section 2"619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim." Illinois Ass'n of Realtors v. Stermer, 2014 IL App (4th) 130079, 378 Ill.Dec. 887, 5 N.E.3d 267. "Section 2"619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation." Hascall v. Williams, 2013 IL App (4th) 121131, 375 Ill.Dec. 112, 996 N.E.2d 1168. Section 2"619(a)(9) of the Code provides for dismissal where "the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2012). | A motion for involuntary dismissal admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. S.H.A. 735 ILCS 5/2-619. | Will a motion for involuntary dismissal assert an affirmative defense or other matter that avoids or defeats the claim? | 10202.docx | LEGALEASE-00095207-LEGALEASE-00095208 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8963 | Cook v. Mack's Transfer & Storage, 291 S.C. 84 | 413+2 | The Workers' Compensation Act provides an exclusive system of compensation in derogation of common law rights and is not cumulative or supplemental thereto, but wholly substitutional. Caughman v. Columbia YMCA, 212 S.C. 337, 47 S.E.2d 788 (1948). The compensation afforded by the Act is statutory in character, and the right of any claimant thereto is dependent upon the terms and conditions of the statute. Owens v. Herndon, 252 S.C. 166, 165 S.E.2d 696 (1969); Young v. Hyman Motors, Inc., 199 S.C. 233, 19 S.E.2d 109 (1942). These include the procedures for adjudicating a compensation claim as well as the terms and conditions of substantive entitlement. | Right of any claimant to workers' compensation is dependent upon terms and conditions of Workers' Compensation Act, including procedures for adjudicating compensation claim as well as terms and conditions of substantive entitlement. Code 1976, SS 42-1-10 to 42-19-50. | "Is the right to compensation dependent upon, or judged by, the terms and conditions of the Act? " | 10664.docx | LEGALEASE-00095455-LEGALEASE-00095456 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 8964 | Hasty v. Namihira, 986 So. 2d 1036 | 307A+581 | We start with the dismissal under Rule 41(b). The supreme court has laid out three factors for us to consider during review of dismissals under Rule 41(b). They are: (1) whether the conduct of the plaintiff can be considered contumacious or dilatory; (2) whether lesser sanctions could be applied; and (3) other aggravating factors. Amer. Tel. and Tel. Co. v. Days Inn, 720 So.2d 178, 181-82 (Miss.1998). As to the first factor, nothing suggests that the Hastys' conduct was contumacious, but their conduct may certainly be said to be dilatory. Upon receipt of a clerk's notice that the case would be dismissed pursuant to Rule 41(d) for failure to prosecute in August 2003, the Hastys wrote a letter to the trial court suggesting that dismissal was not proper. In support of the case not being dismissed, the Hastys claimed: (1) that the attorney, who was handling the matter, had left the law firm and had just withdrawn from the case and (2) that most of the depositions had been completed. The Hastys also claimed that after they had the opportunity to depose one additional physician, the case would be ready for trial. | The factors for a court to consider during review of dismissals for failure to prosecute are: (1) whether the conduct of the plaintiff can be considered contumacious or dilatory; (2) whether lesser sanctions could be applied; and (3) other aggravating factors. Rules Civ.Proc., Rule 41(b). | What factors should the court look when analyzing whether dismissal for failure to prosecute is appropriate? | 09676.docx | LEGALEASE-00096187-LEGALEASE-00096188 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8965 | Rosa v. Hodges, 559 So. 2d 1289 | 307A+587 | We affirm the dismissal for lack of prosecution of this suit brought against Edward G. Hodges and Hodges Funeral Chapel, Inc. There had been no record activity in furtherance of the suit within one year prior to the filing of those defendants' motion to dismiss for lack of prosecution. See Carter v. DeCarion, 400 So.2d 521, 522 (Fla. 3d DCA 1981), review denied, 412 So.2d 464 (Fla.1982). No showing that good cause existed for the lack of prosecution was made in accordance with Florida Rule of Civil Procedure 1.420(e). See Koppers Co. v. Victoire Development Corp., 284 So.2d 193 (Fla.1973). | Case was properly dismissed for lack of prosecution, where there had been no record activity in furtherance of suit within one year prior to filing of motion to dismiss for lack of prosecution, and there was no showing that good cause existed for the lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | Does any record activity filed by a party or the court within the year prior to a motion to dismiss for failure to prosecute preclude dismissal? | 09800.docx | LEGALEASE-00096223-LEGALEASE-00096224 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 8966 | Dyer v. Gen. Motors Corp., 318 Mich. 216 | 413+1 | The right to compensation is a matter of law, fixed by the statute. Holloway v. Ideal Seating Co., 313 Mich. 267, 21 N.W.2d 125. It is not a right to be determined as a matter of compromise or in an effort to obtain an equitable result. Our affirmance of the award in the instant case is not based on either of the above grounds, but instead because our review satisfies us that the department, under the law of this State, made a proper award as against any objection raised on this appeal. The award is affirmed with costs to appellee. | The right to compensation under the compensation act is a matter of law fixed by the act, and is not a right to be determined by the Department of Labor and Industry as a matter of compromise or in an effort to obtain an equitable result. | "Is the right to compensation a matter of law fixed by the statute, or is it a right to be determined as a matter of compromise or an effort to obtain an equitable result? " | 05334.docx | LEGALEASE-00096672-LEGALEASE-00096673 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 8967 | Carnes v. Meador, 533 S.W.2d 365 | 253+892 | Although a spouse has the right to dispose of community property under his or her control under Tex. Family Code Ann. s 5.22 (Vernon 1973), he may not dispose of his spouse's interest in community funds if actual or constructive fraud exists. Without specific proof of fraudulent intent, Texas courts nevertheless have set aside any gift of community funds as a constructive fraud on the other spouse if the gift is capricious, excessive or arbitrary. Givens v. Girard Life Insurance Co., 480 S.W.2d 421 (Tex.Civ.App."Dallas 1972, writ ref'dn.r.e.). | Although a spouse has a right to dispose of community property under his or her control he may not dispose of his spouse's interest in community funds if actual constructive fraud exists. V.T.C.A., Family Code S 5.22. | Does a managing spouse have the right to dispose of community property? | 005127.docx | LEGALEASE-00117345-LEGALEASE-00117346 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 8968 | Twyford v. Weber, 220 N.W.2d 919 | 388+9(1) | It serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. The motion has the effect of advising the court and opposing counsel of the party's position on a particular matter and should effectively remove the problem when the argument is advanced by the offending party that the prejudicial evidence came in by sheer inadvertence. | A "motion in limine" has the effect of advising the court and opposing counsel of the party's position on a particular matter and should effectively remove the problem when the argument is advanced by the offending party that the prejudicial evidence came in by sheer inadvertence. | What useful purpose does a motion in limine serve? | 041171.docx | LEGALEASE-00124093-LEGALEASE-00124094 | Order, SA | 0.34 | 1 | 0 | 0 | 1 | |
| 8969 | Crane v. Richardson Bike Mart, 295 S.W.3d 1 | 13+61 | A thorough review of the record below establishes that the Appellants' cause of action accrued and existed prior to the bankruptcy filing. "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946); it is clear that the cause of action for personal injury was not listed on Schedule B of the bankruptcy case and worked to the detriment of the creditors; and the cause of action has not been abandoned to the debtors, by the Chapter 7 trustee in a bankruptcy order. | The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. | "Does a cause of action accrue when suit may be maintained thereon, for purposes of determining standing to sue?" | 005371.docx | LEGALEASE-00124591-LEGALEASE-00124592 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8970 | Torrico v. Int'l Bus. Machines Corp., 213 F. Supp. 2d 390 | 221+395 | Unquestionably, Congress has the authority to regulate the conduct of U.S. employers outside the territorial jurisdiction of the United States. See, e.g., EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("Aramco "); see also Restatement (Third) of Foreign Relations Law of the United States " 402(2) (a state has jurisdiction to legislate with respect to "the activities, interests, status, or relations of its nationals outside as well as within its territory"). Nevertheless, courts will "presume that Congress has not exercised this power"i.e., that statutes apply only to acts performed within United States territory"unless Congress manifests an intent to reach acts performed outside United States territory." United States v. Bin Laden, 92 F.Supp.2d 189, 193 (S.D.N.Y.2000); see Sale v. Haitian Centers Council, Inc., 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested."). We presume that legislation does not apply extraterritorially primarily "to protect against unintended clashes between our laws and those of other nations which could result in international discord." Aramco, 499 U.S. at 248, 111 S.Ct. 1227; see Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554, 557 (7th Cir.1985) ("The fear of outright collisions between domestic and foreign law"collisions both hard on the people caught in the cross-fire and a potential source of friction between the United States and foreign countries"lies behind the presumption against the extraterritorial application of federal statutes."). However, the presumption against extraterritoriality does not ordinarily apply where "the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States" or where "the conduct regulated by the government occurs within the United States." Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 | Congress has the authority to regulate the conduct of U.S. employers outside the territorial jurisdiction of the United States; nevertheless, courts will presume that Congress has not exercised this power, i.e., that statutes apply only to acts performed within United States territory, unless Congress manifests an intent to reach acts performed outside United States territory. Restatement (Third) of Foreign Relations Law of the United States S 402(2). | Does Congress have the authority to regulate the conduct of U.S. employers outside the territorial jurisdiction of the United States? | 020596.docx | LEGALEASE-00124918- LEGALEASE-00124919 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8971 | Way v. House, 315 S.W.3d 216 | 307A+501 | Appellants assume that the trial court denied the motion for nonsuit because it found that the Trust lacked standing. The record does not indicate whether the trial court addressed the Trust's standing, and we need not do so ourselves because the trial court's ruling can be supported on two other independent grounds. First, Tex.R. Civ. P. 162 allows a party to nonsuit its own cause of action; it does not authorize dismissing another party's claims. See Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31, 37 (Tex.2008) (parties have an absolute right to nonsuit their own claims, but not someone else's claims they are trying to avoid). Second, the Trust lacked capacity. See Ray Malooly Trust v. Juhl, 186 S.W.3d 568, 570 (Tex.2006) (the term "trust" does not refer to a separate legal entity but to the fiduciary relationship governing the trustee with respect to the trust property). Because a trust does not have capacity, any suits involving the trust must be brought by or against the trustee. Id. | While the rules of civil procedure allow a party to nonsuit its own cause of action, they do not authorize dismissing another party's claims. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "While the rules of civil procedure allow a party to nonsuit its own cause of action, do they authorize dismissing another party's claims?" | 038671.docx | LEGALEASE-00128232- LEGALEASE-00128233 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 8972 | Clouser v. Espy, 42 F.3d 1522 | 1.49E+46 | Miners filed suit against Secretary of Agriculture and officials of Forest Service and Department of Interior, seeking declaratory and injunctive relief allowing motorized access to mining claims located in national forests. The United States District Court for the District of Oregon, Malcolm F. Marsh, J., granted summary judgment in favor of government defendants. Appeal was taken. The Court of Appeals, Thelton E. Henderson, Chief District Judge, sitting by designation, held that: (1) Forest Service had statutory authority to regulate means of access to mining claims located within wilderness and other areas of national forests; (2) miners failed to exhaust their administrative remedies before seeking judicial review; and (3) Forest Service did not act arbitrarily or capriciously in determining that motorized access to mining claim in wilderness area was not essential or customarily used method. | Forest Service did not act arbitrarily and capriciously under Administrative Procedure Act (APA) in determining that motorized access to mining claim in wilderness area of national forest was not essential for operation of claim and not customarily used as required for approval of motorized access under Forest Service regulations; Forest Service examiner had used pack horse to carry same equipment to claim, and access trails had been closed to motorized traffic for over ten years so that they were returning to natural condition. 5 U.S.C.A. S 706(2)(A); 36 C.F.R. S 228.15(b, c) | Is the Forest Service authorized to interfere with mining claims? | 047576.docx | LEGALEASE-00129121- LEGALEASE-00129122 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 8973 | Croft v. Unemployment Comp. Bd. of Review, 662 A.2d 24 | 30+15 | Courts have allowed one appeal from multiple orders to be considered on the merits where the circumstances lead the reviewing court to the conclusion that the merits should be reached. General Electric Credit Corp.; Luzzi v. State Horse Racing Commission, 120 Pa.Commonwealth Ct. 215, 548 A.2d 659 (1988); see also McGuill v. Unemployment Compensation Board of Review, 105 Pa.Commonwealth Ct. 222, 523 A.2d 1194 (1987). An appellate court maintains the discretion to refrain from quashing a single appeal from several final orders. Miller v. Keystone Ins. Co., 402 Pa.Superior Ct. 213, 586 A.2d 936 (1991), reversed on other grounds, 535 Pa. 531, 636 A.2d 1109, cert. denied, 513 U.S. 875, 115 S.Ct. 202, 130 L.Ed.2d 132 (1994). Among the factors this Court may consider when refusing to quash a single appeal from multiple final orders is whether such course would serve the interests of judicial economy. Turtzer v. Unemployment Compensation Board of Review, 111 Pa.Commonwealth Ct. 549, 534 A.2d 848 (1987). | Appellate court maintains discretion to refrain from quashing a single appeal from several final orders. | Does an appellate court maintain discretion to refrain from quashing a single appeal from several final orders? | 008246.docx | LEGALEASE-00129494- LEGALEASE-00129495 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 8974 | Lachmar v. Trunkline LNG Co., 753 F.2d 8 | 38+107 | Under New York law, made applicable by the parties, the assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so. Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395, 402, 165 N.Y.S.2d 498, 144 N.E.2d 387 (1957). Included among the duties to which this rule has reference is the duty to arbitrate. Matter of Kaufman, 272 A.D. 578, 581"82, 74 N.Y.S.2d 23 (1st Dep't 1947). Marad did not assume Lachmar's duty to arbitrate. Indeed, in the event of default in the guaranteed obligations or any related agreement, the Secretary of Commerce has the statutory right to "take such action against the obligor or any other parties liable thereunder that, in his discretion, may be required to protect the interests of the United States." 46 U.S.C. " 1275(e). Marad was neither a necessary nor indispensable party to the arbitration | Under New York law, assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so. | "Whether an assignee of rights under a bilateral contract, bound to perform the assignor's duties under the contract?" | 007344.docx | LEGALEASE-00130201- LEGALEASE-00130202 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8975 | English v. Atlanta Transit Sys., 134 Ga. App. 621 | 307A+501 | The statute, Code Ann. s 81A-141(a) (Ga.L.1966, pp. 609, 653), allows the plaintiff to voluntarily dismiss, 'without order of court, by filing a written notice of dismissal at any time before verdict." (Emphases supplied.) The judge's denial of the plaintiff's attempted voluntary dismissal was apparently based upon the technicality that the plaintiff moved for dismissal, rather then gove notce of dismissal (the judge gave no specific reason for his ruling). Under the notice system of pleadings of the CPA, we think that the plaintiff's pleading was sufficiently definite so as to inform the court of her intention to voluntarily dismiss. See Woods v. Canady, 126 Ga.App. 389, 190 S.E.2d 920 and cits. This is especially so since Code Ann. s 81A-141(a) 'eliminates the provision that a voluntary dismissal cannot be had without an order of court,' Hospital Authority of Emanuel County v. Gray, 123 Ga.App. 415, 418, 181 S.E.2d 299, 301, which means that now the plaintiff is entitled to voluntary dismissal as a matter of right when he substantially complies with the statutory conditions. 'It has long been established in our law that the substance of a legal pleading determines its nature, not what it is denominated. S. S. Kresge Co. v. Carty, 120 Ga.App. 170, 176, 169 S.E.2d 735 and cit.' Nunnery v. Dept. of Transportation, 128 Ga.App. 221, 222, 196 S.E.2d 171. This court itself has used the terms 'motion' and 'notice' interchangeably with regard to the vehicle for voluntary dismissal. See Shonson v. Bottomy, 126 Ga.App. 691, 191 S.E.2d 618, supra. Just as '(s) uperadded, meaningless surplusage in a verdict may be disregarded and stricken,' McAfee v. Fickling & Walker Co., 123 Ga.App. 647, 649, 182 S.E.2d 146, 148 and cits., so can, and should, a motion for relief which requires merely notice and the exercise of no discretion by the trial judge, be treated as substantial compliance with the statutory provision for notice. | Plaintiff is entitled to voluntary dismissal as matter of right when he substantially complies with statutory conditions. Code, S 81A-141(a). | Is a plaintiff entitled to a voluntary dismissal as a matter of right when he substantially complies with statutory conditions? | Pretrial Procedure - Memo # 1233 - C - UG.docx | ROSS-003314608-ROSS-003314609 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 8976 | SurgiJet v. Hicks, 236 Ga. App. 80 | 307A+717.1 | "'A motion for a continuance based on an absent witness is addressed to the sound legal discretion of the trial court and no error will be assigned unless it appeares that the trial court abused that discretion in passing on the motion.' United Motor Freight Terminals v. Driver, 75 Ga.App. 571, 572, 44 S.E.2d 156 (1947). OCGA " 9-10-160 provides that all applications for continuances based upon the absence of a witness shall set forth eight different requirements. Where any one of these statutory requirements is not met, there is no abuse of the trial court's discretion to deny a continuance. Carroll v. Crawford, 218 Ga. 635, 129 S.E.2d 865 (1963) (construing an earlier version of OCGA " 9-10-160). One of the eight statutory requirements is that the absent witness does not reside outside of the state. OCGA " 9- 10-160(3). As [SurgiJet] readily admit[s] that [the absent witness] resided outside of Georgia, it was not error for the trial court to deny [SurgiJet's] request for a continuance." Tucker v. Signature Flight Support-Savannah, 219 Ga.App. 834, 835, 466 S.E.2d 694 (1996). We find no abuse of discretion in the trial court's denial of SurgiJet's motion for continuance. | A motion for a continuance based on an absent witness is addressed to the sound legal discretion of the trial court and no error will be assigned unless it appears that the trial court abused that discretion in passing on the motion. | How is a motion for discontinuance based on an absent witness addressed? | Pretrial Procedure - Memo # 1737 - C - NS.docx | ROSS-003314642-ROSS-003314643 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 8977 | Southstar Equity v. Lai Chau, 998 So. 2d 625 | 307A+749.1 | "Ultimate control over witness disclosure problems" is a matter that is left "to the broad discretion of the trial judge." Binger v. King Pest Control, 401 So.2d 1310, 1312 (Fla.1981). "A trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order." Id. at 1313. The responsibility for "the interpretation and enforcement of any pretrial order mandating witness disclosure" is "vested" in the trial court. | The responsibility for the interpretation and enforcement of any pretrial order mandating witness disclosure is vested in the trial court. | Is the responsibility for the interpretation and enforcement of any pretrial order mandating witness disclosure vested in the trial court? | 026930.docx | LEGALEASE-00130774-LEGALEASE-00130775 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 8978 | Zetune v. Jafif-Zetune, 774 S.W.2d 387 | 30+3239 | In the last point of error, Husband contends that the trial court erred in overruling his motion for continuance. We disagree. The granting or denial of a motion for continuance rests within the sound discretion of the trial court. Further, the trial court's denial of a motion for continuance will not be disturbed unless the record discloses a clear abuse of discretion. State v. Crank, 666 S.W.2d 91, 94 (Tex.1984), cert. denied, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66. | Granting or denial of motion for continuance rests within sound discretion of trial court; trial court's denial of motion for continuance will not be disturbed unless record discloses clear abuse of discretion. | "Is the denial of a request for a continuance to conduct discovery vested in the trial court's discretion, and can only be overturned if that discretion was abused?" | 027005.docx | LEGALEASE-00131284-LEGALEASE-00131285 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 8979 | Ashpole v. Millard, 778 S.W.2d 169 | 307A+517.1 | Once a case is voluntarily dismissed, however, no further action may be had in that cause. Gibson v. Gibson, 653 S.W.2d 646 (Tex.App. Waco 1983, no writ); see Greenberg v. Brookshire, 640 S.W.2d 870 (Tex.1982). Any further action must be taken by instituting a suit de novo, unless there is a successful motion to reinstate. U.S. Fidelity & Guar. Co. v. Beuhler, 597 S.W.2d at 524; Brown v. Nelms, 374 S.W.2d 917 (Tex.Civ.App.Fort Worth 1964, no writ). The time limits for filing motions to reinstate are prescribed by the rules of civil procedure and had expired long before the parties filed their agreed motion to seal the file in this case. Thus, no further action in the case could have been taken without reinstatement, and the time for reinstatement, as well as the trial court plenary power over its 1977 order of dismissal had long expired | Once case is voluntarily dismissed, no further action may be had in that cause and any further action must be taken by instituting suit de novo, unless there is successful motion to reinstate. | "Once a case is dismissed voluntarily, can further action be in a case by instituting suit de novo?" | 028333.docx | LEGALEASE-00132546-LEGALEASE-00132547 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 8980 | Tire Distributors v. Cobrae, 132 Cal. App. 4th 538 | 307A+517.1 | A plaintiff has the right to dismiss a defendant or an entire action without prejudice before the commencement of trial. (Code Civ. Proc., " 581, subds. (b), (c).) When a dismissal has properly been filed, the trial court loses jurisdiction to act in the case.The right to dismiss is not unlimited, however. In addition to certain statutory limitations on that right, others have evolved judicially. (Mossanen v. Monfared (2000) 77 Cal.App.4th 1402, 1408"1409, 92 Cal.Rptr.2d 459 (Mossanen ).) | When a voluntary dismissal has properly been filed by the plaintiff, the trial court loses jurisdiction to act in the case. West's Ann.Cal.C.C.P. S 581(b, c). | "When a voluntary dismissal has properly been filed by the plaintiff, does the trial court lose jurisdiction to act in the case?" | 028263.docx | LEGALEASE-00133620-LEGALEASE-00133621 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8981 | Cardiff Equities v. Superior Court, 166 Cal. App. 4th 1541 | 307A+517.1 | In Heritage, the appellate court concluded that where there is at least one overlapping issue in a controversy in which some claims are subject to arbitration and others are not, it was error for the trial court to deny a motion for stay of the court action. (Heritage, supra, 158 Cal.App.4th at pp. 1152"1153, 70 Cal.Rptr.3d 645.) Here, the trial court found the Partnership claims and the Guaranty claims to be "intertwined." Given that finding, had Cardiff not dismissed the entire Case No. 1, the stay would have been proper. However, the effect of dismissal is different from a severance. With limited exceptions inapplicable here, a voluntary dismissal deprives the court of subject matter jurisdiction and personal jurisdiction in that case. (Shapell Industries, Inc. v. Superior Court (2005) 132 Cal.App.4th 1101, 1108, 34 Cal.Rptr.3d 149.) A court cannot force a litigant to pursue claims it chooses to abandon. (Cf. Harris v. Billings (1993) 16 Cal.App.4th 1396, 1404, 20 Cal.Rptr.2d 718 [trial court's delay reduction, or "fast track" program did not affect a plaintiff's right to voluntarily dismiss an action, as "[t]he delay reduction program is concerned with the management and progress of cases currently in the court system, not with disputes which the parties wish to remove from the system"].) In light of the voluntary dismissal of Case No. 1, there was no basis upon which the trial court could stay Case No. 2. | With limited exceptions, a voluntary dismissal deprives the court of subject matter jurisdiction and personal jurisdiction in that case. West's Ann.Cal.C.C.P. S 581. | "With limited exceptions, does a voluntary dismissal deprive the court of subject matter jurisdiction and personal jurisdiction in that case?" | 028518.docx | LEGALEASE-00134974-LEGALEASE-00134975 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 8982 | P.J.s Concrete Pumping Serv. v. Nextel W. Corp., 345 Ill. App. 3d 992 | 287+35.33 | It has been recognized that a plaintiff bringing a class action suit need only allege a viable individual cause of action, indicate that the claim is being brought as a class action, and include factual allegations broad enough to establish the possible existence of a class action. Weiss v. Waterhouse Securities, Inc., 335 Ill.App.3d 875, 883, 269 Ill.Dec. 915, 781 N.E.2d 1105 (2002), appeal allowed, 203 Ill.2d 571, 273 Ill.Dec. 145, 788 N.E.2d 736 (2003); see also Hayna v. Arbys, Inc., 99 Ill.App.3d 700, 711, 55 Ill.Dec. 1, 425 N.E.2d 1174 (1981). We agree with this statement. Weiss relied on Arriola v. Time Insurance Co., 296 Ill.App.3d 303, 307, 230 Ill.Dec. 680, 694 N.E.2d 649 (1998), which stated that "the class action statute (735 ILCS 5/2"801 (West 1994)) makes no reference to any requirement that the facts establishing the class action prerequisites be pleaded." Class certification issues are typically factual and should be decided with the benefit of discovery. Weiss, 335 Ill.App.3d at 884, 269 Ill.Dec. 915, 781 N.E.2d 1105. | Plaintiff bringing a class action suit need only allege a viable individual cause of action, indicate that the claim is being brought as a class action, and include factual allegations broad enough to establish the possible existence of a class action. | Is the issue of class certification typically factual and should be decided with the benefit of discovery? | 031181.docx | LEGALEASE-00137016-LEGALEASE-00137017 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 8983 | Kerner v. Superior Court, 206 Cal. App. 4th 84 | 307A+36.1 | A trial court considering a motion to permit discovery of a defendant's financial condition must weigh the evidence submitted in support of and in opposition to the motion and determine whether the plaintiff has established a "substantial probability" (Civ.Code, " 3295, subd. (c)) of prevailing on a claim for punitive damages. (Jabro, supra, 95 Cal.App.4th at p. 758, 115 Cal.Rptr.2d 843.) In this context, a "substantial probability" of prevailing on a claim for punitive damages means that it is "very likely" that the plaintiff will prevail on such a claim or there is "a strong likelihood" that the plaintiff will prevail on such a claim. (Ibid.) | A "substantial probability" of prevailing on a claim for punitive damages, as required for discovery of a defendant's net worth, means that it is very likely that the plaintiff will prevail on such a claim or there is a strong likelihood that the plaintiff will prevail on such a claim. West's Ann.Cal.Civ.Code S 3295(c). | "oes a ""substantial probability"" of prevailing on a claim for punitive damages mean that it is very likely that the plaintiff will prevail on such a claim or there is a strong likelihood that the plaintiff will prevail on such a claim?" | 031232.docx | LEGALEASE-00137166-LEGALEASE-00137167 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 8984 | Lacy v. Bassett, 132 S.W.3d 119 | 302+104(1) | The Church's motion to dismiss is the functional equivalent of a plea to the jurisdiction. Anderson v. City of San Antonio, 120 S.W.3d 5, 7 (Tex.App.-San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction raises a question of law, which we review de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998). In deciding a plea to the jurisdiction, a court must not weigh the claims' merits and should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.2002). | "Plea to the jurisdiction" challenges the trial court's authority to determine the subject matter of a cause of action. | Is a motion to dismiss based on a lack of subject matter jurisdiction functionally equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action? | 033404.docx | LEGALEASE-00141525-LEGALEASE-00141526 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 8985 | State v. Lopez, 522 So. 2d 997 | 63+1(1) | In considering a Rule 3.190(c)(4) motion, the court must construe the facts in the light most favorable to the state. State v. Horton, 442 So.2d 408 (Fla. 2d DCA 1983); State v. McCray, 387 So.2d 559 (Fla. 2d DCA 1980). We agree with the state that the bribery statute prohibits any payment intended to influence the performance of any act by a public servant. The statute is violated even when a person pays for the doing of an act that the public servant is legally bound to do. State v. Saad, 429 So.2d 757 (Fla. 3d DCA 1983). Here, at the very least, Lopez intended to influence Ramirez's work habits. He wanted Ramirez to cooperate by appearing promptly to inspect and, perhaps, to wait while a code violation was corrected instead of rejecting the job and reinspecting at a later date. | Bribery statute prohibits any payment intended to influence performance of any act by public servant, even if person pays for doing of act the public servant is legally bound to do. West's F.S.A. S 838.015(1). | "If you pay someone with the intention of influencing the performance of their official acts, are you still guilty of bribery if said official acts were something the official was legally bound to do anyway? " | 012083.docx | LEGALEASE-00143562-LEGALEASE-00143563 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 8986 | Ollie v. Plano Indep. Sch. Dist., 383 S.W.3d 783 | 307A+554 | We, therefore, must determine whether Ollie was required to exhaust her administrative remedies prior to filing suit. Generally, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex.2002); Main Rehab. & Diagnostic Ctr., LLC v. Liberty Mut. Ins. Co., 376 S.W.3d 825, 828 (Tex.App.-Dallas 2012, no pet.). Until the claimant has exhausted applicable administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction.Subaru of Am., Inc., 84 S.W.3d at 221; Main Rehab. & Diagnostic Ctr., LLC, 376 S.W.3d 825. "Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant, rather, to provide an orderly procedure by which aggrieved parties may enforce those rights." Ysleta Indep. Sch. Dist. v. Griego, 170 S.W.3d 792, 795 (Tex.App.-El Paso 2005, pet. denied). | Until a claimant has exhausted applicable administrative remedies, a trial court lacks subject-matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. | "Does the trial court lack subject-matter jurisdiction until a party has satisfied the requirement to exhaust all administrative remedies, and must dismiss those claims without prejudice to refiling?" | 033026.docx | LEGALEASE-00143588-LEGALEASE-00143589 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8987 | Thompson ex rel. Harvey v. Cisson Const. Co., 377 S.C. 137 | 413+2 | In Petty, the North Carolina Supreme Court enunciated a rule that directly contravenes South Carolina's judicial policy of strictly construing workers' compensation statutes. Our workers' compensation law is a creature of statute, enacted in derogation of the common law, and we are bound to strictly construe its terms. Brown v. Bi"Lo, Inc., 354 S.C. 436, 438"39, 581 S.E.2d 836, 837 (2003). The language in section 42"9"60 bars compensation for death that is the result of a willful intention. "Willful intent" is the standard to be applied in South Carolina in determining whether a self-inflicted injury or death is compensable under section 42"9"60. We, therefore, decline to follow the majority of jurisdictions, including North Carolina, in embracing the "chain of causation" test. | Workers' compensation law is a creature of statute, enacted in derogation of the common law, and courts are bound to strictly construe its terms. Code 1976, S 42-1-100 et seq. | "Is workers compensation a creature of statute, enacted in derogation of common law, and how should its terms be construed?" | 048060.docx | LEGALEASE-00144069-LEGALEASE-00144070 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 8988 | Locker v. United Pharm. Grp., 46 So. 3d 1126 | 307A+679 | As we stated in Brewer v. Clerk of Circuit Court, Gadsden County: This court has explained the time-honored standard for evaluating a motion to dismiss for failure to state a cause of action: When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the allegations of the complaint as true. Likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint. Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review. | When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the allegations of the complaint as true; likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint. | "On a motion to dismiss an action, does a court accept allegations in complaint as true?" | Pretrial Procedure - Memo # 8947 - C - SKG_60400.docx | ROSS-003296260-ROSS-003296261 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 8989 | Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983 | 172H+55 | The California Legislature enacted the ASFA in 1961 with an operative date of January 1, 1962 to increase protection for the unsophisticated motor vehicle consumer and provide additional incentives to dealers to comply with the law. (Stats. 1961, ch. 1626, pp. 3534"3541; Cerra v. Blackstone (1985) 172 Cal.App.3d 604, 608, 218 Cal.Rptr. 15.) The ASFA serves to protect motor vehicle purchasers from abusive selling practices and excessive charges by requiring full disclosure of all items of cost. (Stasher v. Harger"Haldeman (1962) 58 Cal.2d 23, 29, 22 Cal.Rptr. 657, 372 P.2d 649 (Stasher )). Under the ASFA, every conditional sale contract must contain "in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness." (" 2981.9, the single document rule.) Conditional sale contracts must also contain all disclosures and notices required under section 2982, in addition to the disclosures required by Regulation Z. (" 2982.) | Backdated contract between car dealership and buyer violated single document rule, which required that single document contain all agreements of the buyer and seller with respect to the total cost and terms of payment for motor vehicle, although contract contained all of the agreements with respect to total cost and terms of payment; contract did not contain all of the agreements of buyer and seller regarding total cost and terms of payment once backdated contract was signed, there was no evidence on face of controlling legal documents that terms of the deal which the consumer signed actually changed after consumer took possession of car, and potential for abuse was obvious. West's Ann.Cal.Civ.Code S 2981.9. | Does Automobile Sales Finance Act (ASFA) require that promissory note or any other evidences of indebtedness to be contained in a single document? | 014016.docx | LEGALEASE-00154579-LEGALEASE-00154580 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 8990 | Griffin v. Phillips Petroleum Co., 139 S.W.2d 318 | 308+99 | The general principles involved are clearly and forcibly stated by Judge Wheeler in the case of McAlpin v. Cassidy, 17 Tex. 449, 450. It is there said, "Every agency carries with it, or includes in it, as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created, and none other. In this respect there is no distinction, whether the authority given to an agent is general or special, express or implied." It does not follow from the fact that McLaren was employed to transact certain business for appellee that he had the power to employ another to aid him in the transaction of the same business. Lipscomb et al. v. Houston & T. C. Ry. Co., 95 Tex. 5, 64 S.W. 923, 55 L.R.A. 869, 93 Am.St.Rep. 804 | Every agency carries with it all the powers which are necessary or proper as means to effectuate the purposes for which it was created, and in such respect there is no distinction, whether the authority given to an agent is general or special, express or implied. | What does an agency carry with it? | 041606.docx | LEGALEASE-00155599-LEGALEASE-00155600 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8991 | Memphis Retail Liquor Dealers' Ass'n v. City of Memphis, 547 S.W.2d 244 | 371+2002 | Before proceeding to the remainder of plaintiffs' contentions, we must firstdetermine whether or not the inspection fee is actually what it purports to be, or is in reality a tax. In Tennessee, taxes are distinguished from fees by the objectives for which they are imposed. If the imposition is primarily for the purpose of raising revenue, it is a tax; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a fee.[] City of Chattanooga v. Veatch, 202 Tenn. 338, 304 S.W.2d 326 (1956); Wright v. Town of Camden, 195 Tenn. 295, 259 S.W.2d 529 (1953); S. E. Greyhound Lines v. Knoxville, 181Tenn. 622, 184 S.W.2d 4 (1944). | If an imposition is primarily for the purpose of raising revenue, it is a "tax"; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a "fee." | "Is an imposition a tax, if its purpose is for the regulation of some activity under the police power of the governing authority?" | Taxation - Memo # 986 - C - JL_62130.docx | ROSS-003282066-ROSS-003282067 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 8992 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+423 | Nonetheless, several other factors significantly reduce the likely deterrent value of the exclusionary rule in a civil deportation proceeding. First, regardless of how the arrest is effected, deportation will still be possible when evidence not derived directly from the arrest is sufficient to support deportation. As the BIA has recognized, in many deportation proceedings "the sole matters necessary for the Government to establish are the respondent's identity and alienage"at which point the burden shifts to the respondent to prove the time, place and manner of entry." Matter of Sandoval, 17 I. & N.Dec., at 79. Since the person and identity of the respondent are not themselves suppressible, see supra, at 3485, the INS must prove only alienage, and that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, the original arrest. See Matter of Sandoval, supra, at 79; see, e.g., Avila"Gallegos v. INS, 525 F.2d 666 (CA2 1975). The INS's task is simplified in this regard by the civil nature of the proceeding. As Justice Brandeis stated: "Silence is often evidence of the most persuasive character.... [T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak.... A person arrested on the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing *1044 mute." United States ex rel. Bilokumsky v. Tod, 263 U.S., at 153"154, 44 S.Ct., at 55"56. | Since person and identity of alien are not themselves suppressible as fruit of an illegal arrest, Immigration and Naturalization Service must prove only alienage in a deportation proceeding and that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, original arrest. | Is the identity of a respondent suppressible in a civil proceeding? | 006965.docx | LEGALEASE-00160258-LEGALEASE-00160259 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8993 | Hillme v. Chastain, 75 S.W.3d 315 | 289+453 | The partnership agreement may be written, expressed orally, or implied from the acts and conduct of the parties. Morrison v. Labor & Indus. Relations Comm'n, 23 S.W.3d 902, 908 (Mo.App.2000). The intent of the parties is the primary factor for determining whether such a relationship exists. Binkley v. Palmer, 10 S.W.3d 166, 169 (Mo.App.1999).The required intent necessary to find a partnership existed "is not the intent to form a partnership, but the intent to enter a relationship which in law constitutes a partnership." Meyer, 949 S.W.2d at 82. | The required intent necessary to find the existence of a partnership is not the intent to form a partnership, but the intent to enter a relationship which in law constitutes a partnership. | "Is the required intent, necessary to find the existence of partnership, the intent to enter a relationship which in law constitutes a partnership and not the intent to form a partnership? " | Partnership - Memo 580 - SNP_65958.docx | ROSS-003294670-ROSS-003294671 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 8994 | Potomac Dev. Corp. v. D.C., 28 A.3d 531 | 302+42 | A court should be circumspect in assessing the sufficiency of a complaint in any case where the substantive legal standard requires a fact-intensive inquiry. See Hornstein v. Barry, 560 A.2d 530, 537"38 (D.C.1989) (en banc ) (noting that a limited record may make it "problematical" to resolve through summary judgment a de facto taking case in which "an ad hoc case by case inquiry is called for"). However, the pleading standards in Rule 8 contain no exception for complaints alleging a claim evaluated under a fact-intensive standard. See Iqbal, 129 S.Ct. at 1953 ("Our decision in Twombly expounded the pleading standard for "all civil actions ..." "). The ad hoc factual nature of the inquiries under Penn Central and the lack of an easy-to-apply formula do not mean that allegations of some delays in connection with a major public works project coupled with some economic harm suffice to state a delay-based taking claim. The plaintiff must still allege facts sufficient to support plausible inferences concerning both factors in a viable legal delay-based taking claim"extraordinary delay and severe economic harm. See Williams v. District of Columbia, 9 A.3d 484, 488 (D.C.2010) ( "To survive a motion to dismiss, a complaint must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist.") (citation and quotation omitted). | A court should be circumspect in assessing the sufficiency of a complaint in any case where the substantive legal standard requires a fact intensive inquiry. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A. | Should a court be circumspect in assessing the sufficiency of a complaint in a case where the substantive legal standard requires a fact-intensive inquiry? | Pleading - Memo 626-RMM_66426.docx | ROSS-003280050-ROSS-003280051 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 8995 | Robar v. Labuda, 84 A.D.3d 129 | 135H+59 | "The Double Jeopardy Clauses of the State and Federal Constitutions provide that the state may not prosecute a defendant twice for the same offense (see N.Y. Const., art. I, " 6; U.S. Const. 5th Amend)" (Matter of Rivera v. Firetog, 11 N.Y.3d 501, 506, 872 N.Y.S.2d 401, 900 N.E.2d 952 [2008], cert. denied U.S., 129 S.Ct. 2012, 173 L.Ed.2d 1105 [2009] ). Jeopardy attaches "when a jury is impaneled and sworn (see CPL 40.30[1][b] )" (id.) and encompasses "the defendant's right to be free from reprosecution if the first trial has not continued to conclusion" (People v. Baptiste, 72 N.Y.2d 356, 359, 533 N.Y.S.2d 853, 530 N.E.2d 377 [1988] ). "As a general principle, the People are entitled to only one opportunity to compel a defendant to stand trial" (Matter of Rivera v. Firetog, 11 N.Y.3d at 506, 872 N.Y.S.2d 401, 900 N.E.2d 952) because a "defendant possesses a "valued right" to have his [or her] trial completed by a particular tribunal on the first presentation of the evidence" (People v. Baptiste, 72 N.Y.2d at 359"360, 533 N.Y.S.2d 853, 530 N.E.2d 377; see Illinois v. Somerville, 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 [1973]; People v. Catten, 69 N.Y.2d 547, 557, 516 N.Y.S.2d 186, 508 N.E.2d 920 [1987] ). | Jeopardy attaches when a jury is impaneled and sworn and encompasses the defendant's right to be free from reprosecution if the first trial has not continued to conclusion. U.S.C.A. Const.Amend. 5; McKinney's Const. Art. 1, S 6; McKinney's CPL S 40.30(1)(b). | Does the jeopardy encompass the defendant's right to be free from reprosecution? | 014668.docx | LEGALEASE-00165663-LEGALEASE-00165664 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 8996 | In re Edison Bros. Stores, 207 B.R. 801 | 349A+10 | The question of whether a lease is intended as a security agreement is to be determined based upon the facts of each case. See International Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 751 (2d Cir.1991); In re Pan Am Corp., 130 B.R. 409, 413 (S.D.N.Y.1991); All Good Leasing Corp. v. Bimco Indus. Inc., 143 A.D.2d 788, 533 N.Y.S.2d 336, 337 (1988). Courts are required to examine the intent of the parties and the facts and circumstances which existed at the time the transaction was entered into. | Under New York law, question of whether lease is intended as security agreement is to be determined based upon facts of each case. N.Y.McKinney's Uniform Commercial Code S 1-201(37). | Is the question of whether a lease is intended as a security agreement to be determined based upon facts of each case? | 042735.docx | LEGALEASE-00166755-LEGALEASE-00166756 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 8997 | Mustang Prod. Co. v. Harrison, 94 F.3d 1382 | 209+225 | Mustang argues that Sac and Fox Nation does not apply because the issue in that case was a state's, rather than a tribe's, civil jurisdiction. We agree with the district court, however, that "[t]he issue is analogous"whether one government can tax citizens of another government engaging in activities on allotted lands." Mustang, 890 F.Supp. at 1001. "Indian tribes are "domestic dependent nations' that exercise inherent sovereign authority over their members and territories." Potawatomi Indian Tribe, 498 U.S. at 509, 111 S.Ct. at 909 (quoting Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). The sovereign authority of Indian tribes includes the inherent power to tax non-Indians who conduct business on tribal lands and who benefit from governmental services provided by the tribes. Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 137, 140"41, 102 S.Ct. 894, 901, 903"04, 71 L.Ed.2d 21 (1982). As discussed above, Indian tribes have jurisdiction over lands that are Indian country, and allotted lands constitute Indian country. See DeCoteau v. District County Court, 420 U.S. 425, 446, 95 S.Ct. 1082, 1094, 43 L.Ed.2d 300 (1975) (noting that allotments provide "an adequate fulcrum for tribal affairs" and that there is "exclusive tribal and federal jurisdiction" over allotted lands). Thus, we agree with the district court that the Tribes have "an inherent sovereign power to tax economic activities on their lands, and because the allotted lands are within their jurisdiction, the Tribes have the power to enact and enforce a severance tax on oil and gas production from allotted lands." Mustang, 890 F.Supp. at 1003. | Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories, including inherent power to tax non-Indians who conduct business on tribal lands and who benefit from governmental services provided by tribe. | Does an Indian tribe have inherent power to impose a tax? | Indians - Memo 12 - MS_62212.docx | ROSS-003278812-ROSS-003278813 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 8998 | WMC Mortg. Corp. v. Starkey, 200 S.W.3d 749 | 307A+583 | The trial court may dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence. See id. Lack of diligence need not amount to abandonment for a case to be properly dismissed. Id. Belated activity, such as requesting a trial setting, will not conclusively show that a case has been diligently prosecuted. Id. The trial court may consider the entire history of the case, including the length of time it has been on file, the extent of activity in the case, and the existence of reasonable excuses for delay. Id. No single factor is dispositive. Id. | The trial court may dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence. | Can a court dismiss a case for want of prosecution under its inherent power to control its docket if the case has not been prosecuted with diligence? | Pretrial Procedure - Memo 11737 - C - SHS_65451.docx | ROSS-003279460-ROSS-003279461 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 8999 | State v. Whorton, 225 Kan. 251 | 135H+100.1 | Finally we note a judgment of acquittal, correctly or incorrectly arrived at, terminates the prosecution, and the double jeopardy clause of the Fifth Amendment bars further proceedings against the defendant. United States v. Scott, 437 U.S. at 90, 98 S.Ct. at 2193, 57 L.Ed.2d at 74; Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Martin Linen Supply Co., 430 U.S. at 571, 97 S.Ct. 1349; Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); State v. Gustin, 212 Kan. at 479, 510 P.2d 1290. Therefore, we hold no appeal lies from a judgment of acquittal, and the issues raised by the state cannot be considered in this appeal. | A judgment of acquittal, correctly or incorrectly arrived at, terminates prosecution, and double jeopardy clause of Fifth Amendment bars further proceedings against defendant. U.S.C.A.Const. Amend. 5. | "Does a judgment of acquittal, correctly or incorrectly arrived at, terminate prosecution? " | Double Jeopardy - Memo 827 - C - DHA_67944.docx | ROSS-003279813-ROSS-003279814 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9000 | State v. Moore, 108 Ariz. 532 | 135H+95.1 | The issue resolves itself into whether under all the circumstances the trial judge acted in the exercise of sound discretion by declaring a mistrial. If he did, there is no double jeopardy and the defendant was properly tried. If he did not, the defendant should not have been retried. | If trial court acted in the exercise of sound discretion in declaring a mistrial, there was no double jeopardy and defendant was properly retried, but if trial court did not so act, defendant should not have been retried. U.S.C.A.Const. Amend. 14. | "If trial court acted in the exercise of sound discretion in declaring a mistrial, is there no double jeopardy? " | Double Jeopardy - Memo 368 - C - KG_66788.docx | ROSS-003280296-ROSS-003280297 | SA, Sub | 0.13 | 0 | 0 | 1 | 1 | |
| 9001 | United States v. Huang, 960 F.2d 1128 | 135H+96 | There is, however, an exception to this general principle. "Since one of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury empaneled to try him," Oregon v. Kennedy, 456 U.S. at 673, 102 S.Ct. at 2088, the fact that the defendant consented to the mistrial does not deprive him of double jeopardy protection if the mistrial was occasioned by conduct of the trial judge or the prosecutor that was "intended to provoke the defendant into moving for a mistrial," id. at 679, 102 S.Ct. at 2091; see United States v. Rivera, 802 F.2d at 599. The applicability of this exception turns squarely on the judge's or prosecutor's intent. Negligence, even if gross, is insufficient. | Fact that defendant consented to mistrial does not deprive him of double jeopardy protection if mistrial was occasioned by conduct of trial judge or prosecutor that was intended to provoke defendant into moving for mistrial; applicability of this exception turns squarely on judge's or prosecutor's intent, and negligence, even if gross, is insufficient. U.S.C.A. Const.Amend. 5. | "Does applicability of the exception turn squarely on a judge's or prosecutor's intent, and negligence, even if gross, is insufficient? " | Double Jeopardy - Memo 326 - C - TJ_66620.docx | ROSS-003281296 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 9002 | Feliciano v. Autozone, 142 Conn. App. 756 | 302+32.5(1) | Although, if we were to make similar assumptions, we would not disagree with the court's analysis on the merits of the motion for summary judgment regarding the plaintiff's sexual harassment claim, we do not think that the court should have engaged in such analysis. Practice Book " 10"3 states in relevant part: "(a) When any claim made in a complaint ... is grounded on a statute, the statute shall be specifically identified by its number...." "[A]lthough a plaintiff should plead a statute in a complaint ... failing to do so will not necessarily bar recovery as long as the [defendant is] sufficiently apprised of the applicable statute during the course of the proceedings." (Emphasis in original.) Spears v. Garcia, 66 Conn.App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). | Although a plaintiff should plead a statute in a complaint, failing to do so will not necessarily bar recovery as long as the defendant is sufficiently apprised of the applicable statute during the course of the proceedings. | Does failing to plead a statute in a complaint necessarily bar recovery? | Pleading - Memo 552 - RMM_61972.docx | ROSS-003283417-ROSS-003283418 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9003 | Swafford v. State, 421 N.E.2d 596 | 203+509 | Lest any confusion result, we recognize the following definition of death for purposes of the law of homicide: An individual who has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of total brain functions, is dead. A determination of death must be made in accordance with accepted medical standards. Compare, ABA, Report of the Committee of Medicine and Law, 11 Forum 300, 303 (1975); In re Welfare of Bowman, supra, adopting definition of National Conference of Commissioners on Uniform State Laws, Uniform Determination of Death Act (August 7, 1980 recommendation). This definition embraces both the traditional standard of death and the recent developments in medical science and technology. | For purposes of the law of homicide, "death" occurs when an individual has sustained either irreversible cessation of circulatory and respiratory functions or irreversible cessation of total brain functions; a determination of death must be made in accordance with accepted medical standards. IC 35-42-1-1(1) (1980 Supp.). | "Is death considered as an irreversible cessation of circulatory and respiratory functions, or irreversible cessation of total brain functions? " | Homicide - Memo 52 - JS.docx | ROSS-003283929-ROSS-003283930 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 9004 | Santana v. Henry, 12 So. 3d 843 | 307A+561.1 | In any event, we hold the trial court erred by dismissing Mr. Santana's petition for writ of habeas corpus on the basis of a technicality-an assumed pleading defect-that was not raised by the parties. It is not clear DOC would have defended in this fashion, left to its own devices. "A trial judge may not sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings." | A trial judge may not sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings. | Can a judge dismiss an action based on affirmative defenses not raised by proper pleadings? | Pretrial Procedure - Memo 11389 - C - DA_64443.docx | ROSS-003283936-ROSS-003283937 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9005 | Presswood v. Welsh, 271 Ga. App. 459 | 307A+3 | Whatever the parties may speculate as to the effect of the passenger's testimony as to her suit against them, two principles rule here. First, "[t]he interest of a witness in the result or outcome of a case may always be considered by the jury in passing upon the credibility of the witness." (Citation omitted.) Ayers v. Nichols, 136 Ga.App. 532(1), 221 S.E.2d 835 (1975); see also OCGA " 24-4-4. Second, when disputed evidence is admissible for any reason, a trial court does not abuse its discretion in denying a motion in limine and admitting it. Hand v. Pettitt, 258 Ga.App. 170, 173(1)(b), 573 S.E.2d 421 (2002) (no error in denying motion in limine regarding parties' prior and subsequent difficulties concerning use of road). | When disputed evidence is admissible for any reason, a trial court does not abuse its discretion in denying a motion in limine and admitting it. | Does a trial court abuse its discretion in denying a motion in limine and admitting disputed evidence? | Pretrial Procedure - Memo # 826 - C - KA.docx | ROSS-003284438-ROSS-003284439 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9006 | In re Travelstead, 227 B.R. 638 | 221+162 | Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa, 482 U.S. 522, 543, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987). "Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of "practice, convenience, and expediency" rather than of law." Pravin Banker Assocs. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir.1997) (quoting Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir.1971)). "And courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States." Id. (citing Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 522 (2d Cir.1985)). "[T]he threshold question in a comity analysis is whether there is in fact a true conflict between domestic and foreign law." Societe Nationale, 482 U.S. at 555, 107 S.Ct. at 2562 (1987) (Blackmun, J., concurring in part and dissenting in part). | Threshold question in comity analysis is whether there is in fact a true conflict between domestic and foreign law. | Is the threshold question in a comity analysis whether there is in fact a true conflict between domestic and foreign law? | International Law - Memo # 369 - MC.docx | ROSS-003284694-ROSS-003284695 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 9007 | Bhd. of Locomotive Firemen & Enginemen, Lodge 844 v. Kennecott Copper Corp. (Utah Copper Div.), 338 F.2d 224 | 231H+1549(2) | The Brotherhood's contention that the dispute in the case at bar is not one intended by the parties to be subject to grievance procedures is without merit for it is only by the most forceful evidence of purpose that such an exclusionary claim can prevail. International Union, UAW v. Cardwell Mfg. Co., 10 Cir., 304 F.2d 801. All doubts should be resolved in favor of arbitration and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409. And it makes no difference that the union is attempting to avoid rather than compel arbitration. Bonnot v. Congress of Independent Unions, Local 14, 8 Cir., 331 F.2d 355, 359. | All doubts should be resolved in favor of arbitration, and an order to arbitrate particular grievance should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Labor Management Relations Act of 1947, S 301, 29 U.S.C.A. S 185. | Can courts deny an order to arbitrate? | Alternative Dispute Resolution - Memo 95 - JS.docx | ROSS-003284868-ROSS-003284869 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 9008 | Halpern v. Gunn, 57 A.2d 741 | 307A+501 | We think it is clear that plaintiffs appeal cannot be entertained. Under the long-established practice in this jurisdiction a voluntary nonsuit by plaintiff is a withdrawal or abandonment of his case, with costs adjudged against him, with no adjudication on the merits, and with the right to file a new action. It leaves the situation as though suit had never been filed. | "Voluntary nonsuit" by plaintiff is a withdrawal or abandonment of his case with costs adjudged against him, with no adjudication on the merits, and with the right to file a new action, leaving the situation as though action had never been filed. | "Is ""voluntary nonsuit"" by a plaintiff a withdrawal or abandonment of his case with costs adjudged against him?" | Pretrial Procedure - Memo # 1185 - C - VA.docx | ROSS-003286052-ROSS-003286055 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 9009 | Bierman v. Hunter, 190 Md. App. 250 | 366+1 | Maryland recognizes three categories of subrogation: legal subrogation, conventional subrogation, and statutory subrogation. Hill v. Cross Country Settlements, LLC, 402 Md. 281, 311, 936 A.2d 343 (2007). Legal subrogation is the category at issue in the instant case, and "arises by operation of law when there is a debt or obligation owed by one person which another person, who is neither a volunteer nor an intermeddler, pays or discharges under such circumstances as in equity entitle him to reimbursement to prevent unjust enrichment." at 311"12, 936 A.2d 343 (internal quotations omitted). Subrogation thus involves the " "substitution of one person to the position of another, an obligee, whose claim he has satisfied." " at 312, 936 A.2d 343 (quoting G.E. Capital Mortgage Servs. v. Levenson, 338 Md. 227, 231, 657 A.2d 1170 (1995)). The substituted person, however, "can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor." at 313, 936 A.2d 343 (emphasis added) (internal quotations omitted). Accordingly, subrogation "requires an underlying and independent legal basis upon which [a party] may assert its claims." at 314, 936 A.2d 343. | Subrogation requires an underlying and independent legal basis upon which a party may assert its claims. | Does subrogation require an underlying and independent legal basis upon which a party may assert its claims? | Subrogation - Memo 379 - VP C.docx | ROSS-003288301-ROSS-003288302 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9010 | In re Falone, 464 Pa. 42 | 21+2 | That purpose would not be further served by requiring that the Attorney General also verify the petition; his signature on the petition is surely sufficient to render him responsible for the decision to seek immunity. Furthermore, as a general rule, affidavits must be executed by one who possesses personal knowledge of the facts alleged in the petition. See Pa.R.Crim.P. 304(c); Pa.R.Civ.P. 1024. It would be unrealistic to expect the Attorney General to possess personal knowledge of the details of "the nature of the investigation and the need for the immunization of the witness' (19 P.S. s 640.2) concerning investigations underway throughout the Commonwealth and all witnesses in those investigations. The more realistic expectation is that personal knowledge will be possessed by the Attorney General's subordinates who are actually involved in the conduct of the investigations, which knowledge, when related to the Attorney General, will enable him to make the decision whether immunity shall be sought. The Act, when liberally construed to effectuate its purposes, requires no more than that the petition and verification reflect this reality. | Generally, affidavits must be executed by one who possesses personal knowledge of facts alleged in petition. Pa.R.Crim.P., Rule 304(c); Pa.R.C.P. No. 1024, 42 Pa.C.S.A. | Should affidavits be executed by one who possesses personal knowledge of the facts alleged? | Affidavits - Memo 40 - SNJ_60837.docx | ROSS-003292369-ROSS-003292371 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9011 | Siculan v. Koukos, 74 A.D.3d 946 | 307A+746 | Contrary to the plaintiff's contention, the action was dismissed pursuant to 22 NYCRR 202.27(b) for counsel's failure to appear at a scheduled conference (see Chechen v. Spencer, 68 A.D.3d 801, 801"802, 889 N.Y.S.2d 474; Saunders v. Riverbay Corp., 17 A.D.3d 137, 138, 791 N.Y.S.2d 828). Indeed, counsel acknowledged as much before the Supreme Court (see DeRosario v. New York City Health & Hosps. Corp., 22 A.D.3d 270, 270"271, 802 N.Y.S.2d 406). Consequently, in order to vacate the dismissal of the action, the plaintiff was required to demonstrate a reasonable excuse for her failure to appear and a potentially meritorious cause of action (see e.g. Brooks v. Haidt, 30 A.D.3d 365, 815 N.Y.S.2d 735). | To vacate dismissal of personal injury action for failure of plaintiff's counsel to appear at a scheduled conference, plaintiff was required to demonstrate a reasonable excuse for the failure to appear and a potentially meritorious cause of action. N.Y.Ct.Rules, S 202.27(b). | "In order to vacate a dismissal for failure to appear, is a plaintiff required to demonstrate a reasonable excuse for his or her failure to appear? " | Pretrial Procedure - Memo 11255 - C - SHB_65272.docx | ROSS-003293321-ROSS-003293322 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9012 | Allen v. Titan Propane, 484 S.W.3d 902 | 307A+561.1 | Totally ignoring its burden to plead and prove an affirmative defense, Titan argues on appeal that in order to state a claim under section 323.060.5, the Allens were required to plead the absence of "the predicate facts that establish Titan's immunity pursuant to section 323.060.4." Then, without citation to the record or any supporting argument, Titan asserts that "[g]iven the posture of this case, Titan's statutory immunity pursuant to RSMo. " 323.060(4) is established." But Titan has failed to identify any factual allegations in the dismissed petition that support the application of the section 323.060.4 immunity affirmative defense. "For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading. This is but the corollary of the accepted rule that the burden of proof of an affirmative defense rests upon the one asserting the defense." McLeod v. Marion Labs., Inc., 600 S.W.2d 656, 657 (Mo.App.1980) (internal citations omitted). | For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading. | Should affirmative defense be established by plaintiff's pleading to be sustained upon bare motion to dismiss? | Pretrial Procedure - Memo # 10785 - C - NS_63652.docx | ROSS-003294626-ROSS-003294627 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9013 | In re Barney's Inc., 200 B.R. 527 | 366+7(1) | Plaintiffs argue that a " 105 injunction should issue because judgment in IOA's favor may create a large unsecured claim herein since under the law of subrogation the Pressmans can look to debtors to recover amounts they pay to IOA. The doctrine of equitable subrogation gives a guarantor the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor. See Natwest USA Credit Corp. v. Alco Standard Corp., 858 F.Supp. 401, 414 (S.D.N.Y.1994) (citing Thornton v. Syracuse Savings Bank, 961 F.2d 1042, 1046"47 (2d Cir.1992)); see also 63 N.Y.Jur.2d Guarantee and Suretyship " 428, at p. 566 (1987). That includes the right to assert any priority or special right of the subrogor. See Pandora Ind., Inc. v. Paramount Communications, Inc. (In re Wingspread Corp.), 145 B.R. 784, 791 (S.D.N.Y.1992), aff'd, 992 F.2d 319 (2d Cir.1993). Thus, even assuming, arguendo, IOA gets a summary judgment award in the State Court Action, the Pressmans cannot assert greater rights against debtors than IOA could have done. Debtors may raise the same claims or defenses against the Pressmans that they could have raised against IOA in contesting the validity or enforceability of IOA's direct claims. Fisher v. Outlet Co. (In re Denby Stores, Inc.), 86 B.R. 768, 781 (Bankr.S.D.N.Y.1988); Hartford Accident and Indemnity Co. v. Moraldo, 84 Misc.2d 1082, 1086, 375 N.Y.S.2d 973 (2d Dist.1975). In any event, the substitution of the Pressmans for IOA is no basis for imposing a " 105 injunction here. See In re Brentano's Inc., 36 B.R. 90, 92 (S.D.N.Y.1984). | Doctrine of equitable subrogation gives guarantor right to be subrogated to any and all rights that creditor or subrogor has against debtor, including right to assert any priority or special right of the subrogor. | Does the doctrine of equitable subrogation give a guarantor the right to be subrogated to any and all rights that a creditor or subrogor has against the debtor? | Subrogation - Memo # 732 - C - SU.docx | ROSS-003295141-ROSS-003295142 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9014 | Jaroszewski v. Flege, 297 S.W.3d 24 | 307A+581 | The plaintiffs argue that this "meritoriousness" factor should be analyzed only in terms of whether the plaintiff failed to state a claim; but if there is such a failure to state a claim, the defendant would more appropriately obtain dismissal under CR 12 (state equiv. of Fed.R.Civ.P. 12(b)(6)), rather than CR 41.02 (failure to prosecute). So, in a typical case, the meritorious nature of a plaintiff's claim may be difficult to assess and of minimal value because even a meritorious case may be dismissed under CR 41.02 if the totality of the circumstances shows that the plaintiff is not actively prosecuting the case. | Even a meritorious case may be dismissed for failure to prosecute, if the totality of the circumstances shows that the plaintiff is not actively prosecuting the case. Rules Civ.Proc., Rule 41.02. | "Can a meritorious case be dismissed for failure to prosecute, if the totality of the circumstances shows that the plaintiff is not actively prosecuting the case?" | Pretrial Procedure - Memo # 10721 - C - KG_63255.docx | ROSS-003296735-ROSS-003296736 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9015 | Universal Forest Prod. E. Div. v. Morris Forest Prod., 558 F. Supp. 2d 893 | 366+1 | Subrogation "is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142, 145 (Wis.1971). "Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it." First Nat'l Bank v. Hansen, 84 Wis.2d 422, 429, 267 N.W.2d 367, 370 (Wis.1978). "[T]he right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all." Fitzgerald v. Buffalo County, 264 Wis. 62, 63, 58 N.W.2d 457, 458 (Wis.1953). However, because " "equity does not lend itself to the application of black letter rules," subrogation "depends upon a just resolution of a dispute under a particular set of facts." " Petta v. ABC Ins. Co., 278 Wis.2d 251, 275, 692 N.W.2d 639, 651 (Wis.2005) (quoting Vogt v. Schroeder, 129 Wis.2d 3, 12, 383 N.W.2d 876, 879 (Wis.1986)). | Given that equity does not lend itself to the application of black letter rules, subrogation depends, under Wisconsin law, upon a just resolution of a dispute under a particular set of facts. | Does subrogation depend upon a just resolution of a dispute under a particular set of facts? | Subrogation - Memo 264 - ANG C.docx | ROSS-003297322-ROSS-003297323 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9016 | SurgiJet v. Hicks, 236 Ga. App. 80 | 307A+717.1 | "'A motion for a continuance based on an absent witness is addressed to the sound legal discretion of the trial court and no error will be assigned unless it appears that the trial court abused that discretion in passing on the motion.' United Motor Freight Terminals v. Driver, 75 Ga.App. 571, 572, 44 S.E.2d 156 (1947). OCGA " 9-10-160 provides that all applications for continuances based upon the absence of a witness shall set forth eight different requirements. Where any one of these statutory requirements is not met, there is no abuse of the trial court's discretion to deny a continuance.[] Carroll v. Crawford, 218 Ga. 635, 129 S.E.2d 865 (1963) (construing an earlier version of OCGA " 9-10-160). Oneof the eight statutory requirements is that the absent witness does not reside outside of the state. OCGA " 9-10-160(3). As [SurgiJet] readily admit[s] that [the absent witness] resided outside of Georgia, it was not error for the trial court to deny [SurgiJet's] request for a continuance." Tucker v. Signature Flight Support-Savannah, 219 Ga.App. 834, 835, 466 S.E.2d 694 (1996). We find no abuse of discretion in the trial court's denial of SurgiJet's motion for continuance. | Trial court does not abuse its discretion in denying motion for continuance based upon absence of a witness, where movant fails to meet one of eight statutory requirements for granting continuance. O.C.G.A. S 9-10-160. | Should all applications for continuances based upon the absence of a witness shall set forth eight different requirements? | Pretrial Procedure - Memo # 1738 - C - NS.docx | ROSS-003299789-ROSS-003299790 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9017 | Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 | 25T+141 | We therefore turn to the merits of ABS's estoppel argument. A party is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause. See Thomson"CSF, 64 F.3d at 778"79. ABS argues that the Owners received several direct benefits from the ICC, which incorporated the Request for Class Agreement's arbitration clause by reference. We agree with ABS that the Owners received such benefits, including (1) significantly lower insurance rates on the "Tag Heuer," and (2) the ability to sail under the French flag. In reaching the conclusion that the Owners had only received an indirect benefit from the ICC, the district court relied heavily on the erroneous assumption that it was Tencara's rather than the Owners' responsibility to register the vessel under the French flag. Whatever the situation might have been under the district court's incorrect assumption, it is patent that on the actual facts the Owners received direct benefits from the ICC. Without the ICC, registration would have been practically impossible. The Owners are hence required to arbitrate their claims against ABS. | Party is estopped from denying its obligation to arbitrate when it receives a direct benefit from a contract containing an arbitration clause. | Is a party estopped from denying its obligation to arbitrate when it receives a direct benefit from a contract containing an arbitration clause? | Alternative Dispute Resolution - Memo 517 - RK.docx | ROSS-003300661-ROSS-003300663 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 9018 | McDuffie v. ACandS, 781 So. 2d 628 | 307A+749.1 | The trial court also has the discretion to extend discovery deadlines and should do so in cases where it is necessary in order to prevent manifest injustice. The matter of whether to modify the pre-trial order is solely within the discretion of the trial judge. Absent an abuse of discretion, the decision of the trial judge will be upheld. In deciding whether to modify a pretrial order, a trial court must be ever mindful of the fact that the objective of our legal system is to render justice between the litigants upon the merits of the controversy rather than to defeat justice upon the basis of technicalities. Naylor, 423 So.2d at 683. There is no authority to limit severely a party's rights for the technical, though justifiable, violation of a pretrial order Neff v. Rose, supra. | There is no authority to limit severely a party's rights for the technical, though justifiable, violation of a pretrial order. LSA-C.C.P. art. 1551. | "Is there an authority to limit severely a party's rights for the technical, though justifiable, violation of a pretrial order? " | Pretrial Procedure - Memo # 1782 - SKG.docx | ROSS-003301238-ROSS-003301239 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9019 | Lobberecht v. Chendrasekhar, 728 N.W.2d 853 | 13+61 | In Iowa, a person has a legal interest in a cause of action when it accrues, and that occurs when "an aggrieved party has a right to institute and maintain a lawsuit." Dolezal v. Bockes, 602 N.W.2d 348, 351 (Iowa 1999). Here, we must determine when the plaintiffs' cause of action accrued to determine whether it is part of the bankruptcy estate. See In re Swift, 129 F.3d 792, 795 (5th Cir.1997) ("Our first task, then, is to determine whether Swift had a property interest in the causes of action against State Farm at the time he filed bankruptcy. Stated differently, we must determine whether Swift's causes of action had accrued."). The plaintiffs, relying on the statute-of-limitations provisions of Iowa Code section 614.1(9), contend that their cause of action for medical malpractice did not accrue until they knew, or should have known, they were injured. Section 614.1(9) provides that medical-malpractice cases must be brought within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, .. of the existence of [ ] the injury or death for which damages are sought in the action, whichever of the dates occurs first..The plaintiffs argue that their medical-malpractice claim could not have accrued as of the date they filed for bankruptcy because, as of that date, they did not know, and could not reasonably have known, of their injury. Unfortunately for the plaintiffs, the present case is not a statute-of-limitations case. The statute of limitations under section 614.1(9) determines when a cause of action is lost by passage of time. However, for bankruptcy purposes, the question is not when the cause of action was lost, but when it was acquired. In other words, could the plaintiffs have sued prior to May 28, 2003, the date they filed their bankruptcy petition? If so, the cause of action belonged to the trustee in bankruptcy and not the plaintiffs. | A person has a legal interest in a cause of action when it accrues, and that occurs when an aggrieved party has a right to institute and maintain a lawsuit. | Does a cause of action accrue when an aggrieved party has a right to institute and maintain a lawsuit? | Action - Memo # 123 - C CS.docx | ROSS-003301779-ROSS-003301781 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9020 | Bee Yang v. State, 805 N.W.2d 921 | 13+61 | Courts may hear a petition for postconviction relief beyond the limitations of Minn.Stat. " 590.01, subd. 4(a), if two conditions are met: first, the claim qualifies under an exception outlined in Minn.Stat. " 590.01, subd. 4(b); and second, the petition is filed "within two years of the date the claim arises." Minn.Stat. " 590.01, subd. 4(c); see also Rickert v. State, 795 N.W.2d 236, 242 (Minn.2011) (applying subdivision 4(c) two-year time limitation to a petition invoking the subdivision 4(b)(5) exception). "Claim" refers to an event that supports a right to relief under the asserted exception. See Rickert, 795 N.W.2d at 242. In a civil case, a claim arises when it can survive a motion to dismiss for failure to state a claim upon which relief can be granted. Herrmann v. McMenomy & Severson, 590 N.W.2d 641, 643 (Minn.1999).Thus, a claim under subdivision 4(b)(5) arises on the date of an event that establishes a right to relief in the interests of justice. | In a civil case, a claim arises when it can survive a motion to dismiss for failure to state a claim upon which relief can be granted. | Does a claim or cause of action arise when it can survive a motion to dismiss for failure to state a claim upon which relief can be granted? | Action - Memo # 87 - C - NO.docx | ROSS-003302179-ROSS-003302180 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9021 | Kerner v. Superior Court, 206 Cal. App. 4th 84 | 307A+36.1 | A trial court considering a motion to permit discovery of a defendant's financial condition must weigh the evidence submitted in support of and in opposition to the motion and determine whether the plaintiff has established a "substantial probability" (Civ.Code, " 3295, subd. (c)) of prevailing on a claim for punitive damages. (Jabro, supra, 95 Cal.App.4th at p. 758, 115 Cal.Rptr.2d 843.) In this context, a "substantial probability" of prevailing on a claim for punitive damages means that it is "very likely" that the plaintiff will prevail on such a claim or there is "a strong likelihood" that the plaintiff will prevail on such a claim. (Ibid.) | A "substantial probability" of prevailing on a claim for punitive damages, as required for discovery of a defendant's net worth, means that it is very likely that the plaintiff will prevail on such a claim or there is a strong likelihood that the plaintiff will prevail on such a claim. West's Ann.Cal.Civ.Code S 3295(c). | "Does a ""substantial probability"" of prevailing on a claim for punitive damages mean that it is very likely that the plaintiff will prevail on such a claim or there is a strong likelihood that the plaintiff will prevail on such a claim? " | Pretrial Procedure - Memo # 4595 - C - NS.docx | ROSS-003304223-ROSS-003304224 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9022 | Zurich Am. Ins. Co. v. S.-Owners Ins. Co., 248 F. Supp. 3d 1268 | 366+1 | In practice, subrogation entails "the substitution of one person in the place of another with reference to a lawful claim or right." W. Am. Ins. Co., 495 So.2d at 206 (quoting Boley, 72 So. at 645). In the insurance context, the insurer is "put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." Monte de Oca v. State Farm Fire & Cas. Co., 897 So.2d 471, 472 n.2 (Fla. 3d DCA 2004) (quotation and citation omitted). More specifically, "in a dispute between a primary and excess insurer arising from the payment of a claim by the excess insurer," Phoenix Ins. Co., 558 So.2d at 1050, "[t]hrough equitable subrogation, "the excess insurer "stands in the shoes' of the insured and succeeds to the rights and responsibilities that the insured would normally have against the primary insurer." " Mount Vernon Fire Ins. Co. v. Transcontinental Ins. Co., No. 8:07-cv-1593-T-24-EAJ, 2008 WL 2074427, at (M.D. Fla. May 15, 2008) (citations omitted); see also Galen Health Care, Inc. v. Am. Cas. Co. of Reading, 913 F.Supp. 1525, 1531 (M.D. Fla. 1996) ("Florida law recognizes a cause of action for equitable subrogation between primary and excess insurers arising from the payment of a claim by the excess insurers."); U.S. Fire Ins. Co. v. Morrison Assurance Co., 600 So.2d 1147, 1151 (Fla. 1st DCA 1992) (noting "that the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved.") | In practice, subrogation under Florida law entails the substitution of one person in the place of another with reference to a lawful claim or right. | "Is subrogation the substitution of one person in the place of another with reference to a lawful claim, or right?" | Subrogation - Memo 352 - SK.docx | ROSS-003310647-ROSS-003310648 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 9023 | Wasko v. Manella, 269 Conn. 527 | 366+1 | "The law has recognized two types of subrogation: conventional; and legal or equitable. 73 Am.Jur.2d 599, Subrogation " 2 (1974 and 1995 Sup.) .. Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid.. By contrast, [t]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. As now applied, the doctrine of [legal or] equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted; internal quotation marks omitted.) Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 370"71, 672 A.2d 939 (1996). | The right of legal or equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | Does equitable subrogation take place as a matter of equity? | Subrogation - Memo 293 - RM C.docx | ROSS-003311016-ROSS-003311018 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9024 | Roe v. Unocal Corp., 70 F. Supp. 2d 1073 | 221+342 | As noted above, where the policies underlying the doctrine militate against its application, the act of state doctrine should not apply, even to claims that a foreign government's actions are or were invalid. Kirkpatrick, 493 U.S. at 409, 110 S.Ct. 701 ("Sometimes, even though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application."). | Where policies underlying doctrine militate against its application, act of state doctrine should not apply, even to claims that foreign government's actions are or were invalid. | "Where the policies underlying doctrine militate against its application, should an act of state doctrine apply?" | International Law - Memo # 411 - C - MLS.docx | ROSS-003311941-ROSS-003311942 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 9025 | Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 | 172H+1536 | 15 U.S.C. s 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. s 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. See Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979). | Strict technical compliance with the Truth in Lending Act, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does the strict technical compliance of credit terms benefit just the individual claimant? | Consumer Credit - Memo 209 - RK_61871.docx | ROSS-003321384-ROSS-003321385 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 9026 | Cladd v. State, 398 So. 2d 442 | 67+7 | We reject the defendant's contention that the marriage relationship and the right of consortium deriving therefrom preclude the State from ever establishing the nonconsensual entry requisite to the crime of burglary and we disapprove the Third District's contrary ruling in Vazquez. Since burglary is an invasion of the possessory property rights of another, where premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with intent to commit an offense, the same as he can be guilty of larceny of his wife's separate property. In State v. Herndon, 158 Fla. 115, 27 So.2d 833 (1946), discussing a wife's separate property rights, we held that a husband could be charged with the larceny of his wife's separate property, and we explained:In a society like ours, where the wife owns and holds property in her own right, where she can direct the use of her personal property as she pleases, where she can engage in business and pursue a career, it would be contrary to every principle of reason to hold that a husband could ad lib appropriate her property. If the common-law rule was of force, the husband could collect his wife's pay check, he could direct its use, he could appropriate her separate property and direct the course of her career or business if she has one. We think it has not only been abrogated by law, it has been abrogated by custom, the very thing out of which the common law was derived. | In that burglary is an invasion of possessory property rights of another, where premises are in sole possession of wife, husband can be guilty of burglary if he makes nonconsensual entry into her premises with intent to commit offense. West's F.S.A. S 810.02. | Can a husband be charged with burglary of his wifes property? | Burglary - Memo 270 - RK_62273.docx | ROSS-003321763-ROSS-003321767 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9027 | In re Interest of Zylena R., 284 Neb. 834 | 209+134(4) | Under ICWA and NICWA, "Indian child" means any unmarried person who is under age 18 and is either (a) a member of an Indian tribe or (b) eligible for membership in a tribe as the biological child of a member of a tribe. Both Zylena and Adrionna meet that definition. If an Indian child resides or is domiciled within the reservation of a tribe, that tribe has exclusive jurisdiction over any child custody proceeding. But when an Indian child does not reside or is not domiciled on his or her tribe's reservation, as is the case here, state courts may exercise jurisdiction over the child concurrently with tribal courts. However, a state court must refer "any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child" to a tribal court if the tribe or either parent petitions for transfer, unless "good cause" is shown for the retention of state court jurisdiction. At a hearing on a petition to transfer a proceeding to tribal court, the party opposing the transfer has the burden of establishing that good cause not to transfer exists. The U.S. Supreme Court has characterized these provisions of ICWA as creating "concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation." | At a hearing on a petition to transfer a child protection proceeding to tribal court, the party opposing the transfer has the burden of establishing that good cause not to transfer exists. Indian Child Welfare Act of 1978, S 101(b), 25 U.S.C.A. S 1911(b). | Who has the burden to establish good cause not to transfer in a petition to transfer a proceeding to a tribal court? | Indians - Memo 62 - BP.docx | ROSS-003322230-ROSS-003322231 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9028 | Wasko v. Manella, 269 Conn. 527 | 366+1 | "The law has recognized two types of subrogation: conventional; and legal or equitable. 73 Am.Jur.2d 599, Subrogation " 2 (1974 and 1995 Sup.) .... Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid.... By contrast, [t]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.... The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.... As now applied, the doctrine of [legal or] equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted; internal quotation marks omitted.) Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 370"71, 672 A.2d 939 (1996). | The right of legal or equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | Does an equitable subrogation arise from contractual relationship between parties? | Subrogation - Memo 247 - VG C.docx | ROSS-003322278-ROSS-003322280 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9029 | In re Frankum, 399 B.R. 498 | 366+1 | Under a theory of equitable subrogation, a person who pays the debt of another may seek reimbursement to prevent unjust enrichment. In re Hall, 295 B.R. 877, 881 (Bankr.W.D.Ark.2003). To invoke the doctrine of equitable subrogation, five criteria must be met: (1) the party seeking subrogation must have made the payment to protect his own interest; (2) the party seeking subrogation must not have acted as a volunteer; (3) the party seeking subrogation must not have been primarily liable for the debt; (4) the party seeking subrogation must have paid off the entire debt; and (5) subrogation must not work injustice to the rights of others. In Re Flamingo 55, Inc., 378 B.R. 893, 919 (Bankr.D.Nev.2007). | Under a theory of "equitable subrogation," a person who pays the debt of another may seek reimbursement to prevent unjust enrichment. | Can a person who pays the debt of another seek reimbursement under a theory of equitable subrogation? | Subrogation - Memo 366 - KA.docx | ROSS-003325844-ROSS-003325846 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9030 | United States v. Portrait of Wally, 663 F. Supp. 2d 232 | 221+342 | As it did in Wally III, the Museum argues that the Act of State doctrine precludes adjudication of the present controversy. This doctrine bars U.S. courts from invalidating the public acts of foreign sovereigns within their own jurisdictions. See W.S. Kirkpatrick & Co. Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 409, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990); see also Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory."); Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897) ("Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory."). However, in determining whether the doctrine applies, courts must be mindful of their obligation "to decide cases and controversies properly presented to them." W.S. Kirkpatrick, 493 U.S. at 409, 110 S.Ct. 701. This in turn requires consideration of the policies underlying the Act of State doctrine and "whether, despite the doctrine's technical availability, it should nonetheless not be invoked." Id. The Museum bears the burden of showing that abstention is justified. Bigio v. Coca"Cola Co., 239 F.3d 440, 453 (2d Cir.2001). | "Act of State Doctrine" bars courts in the United States from invalidating the public acts of foreign sovereigns within their own jurisdictions. | Does the Act of State Doctrine bars courts in the United States from invalidating the public acts of foreign sovereigns within their own jurisdictions? | International Law - Memo # 76 - C - LK.docx | ROSS-003326266-ROSS-003326268 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9031 | Universal Forest Prod. E. Div. v. Morris Forest Prod., 558 F. Supp. 2d 893 | 366+1 | Saubrogation "is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142, 145 (Wis.1971). "Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it." First Nat'l Bank v. Hansen, 84 Wis.2d 422, 429, 267 N.W.2d 367, 370 (Wis.1978). "[T]he right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all." Fitzgerald v. Buffalo County, 264 Wis. 62, 63, 58 N.W.2d 457, 458 (Wis.1953). However, because " "equity does not lend itself to the application of black letter rules," subrogation "depends upon a just resolution of a dispute under a particular set of facts." " Petta v. ABC Ins. Co., 278 Wis.2d 251, 275, 692 N.W.2d 639, 651 (Wis.2005) (quoting Vogt v. Schroeder, 129 Wis.2d 3, 12, 383 N.W.2d 876, 879 (Wis.1986)). | Given that equity does not lend itself to the application of black letter rules, subrogation depends, under Wisconsin law, upon a just resolution of a dispute under a particular set of facts. | Do equity and subrogation depend upon a just resolution of a dispute under a particular set of facts? | Subrogation - Memo # 422 - C - SA.docx | ROSS-003329361-ROSS-003329362 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9032 | Malbco Holdings v. AMCO Ins. Co., 629 F. Supp. 2d 1185 | 366+1 | However, AMCO also has an even stronger equitable argument. The purpose of subrogation is to prevent unjust enrichment, discourage carelessness, and avoid a windfall gain to the subrogor. See Maine Bonding & Cas. Co. v. Centennial Ins. Co., 298 Or. 514, 520 n. 4, 693 P.2d 1296, 1300 n. 4 (1985). If Malbco retained its recovery from the contractor and also obtained insurance proceeds for damages under the Policy, then it would recover twice for the same damage and obtain a windfall gain. | The purpose of subrogation under Oregon law is to prevent unjust enrichment, discourage carelessness, and avoid a windfall gain to the subrogor. | "Is the purpose of subrogation to prevent unjust enrichment, discourage carelessness, and avoid a windfall gain to the subrogor?" | Subrogation - Memo 325 - TJ.docx | ROSS-003330288-ROSS-003330289 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9033 | Gregoire v. Enterprise Marine Services, 38 F. Supp. 3d 749 | 334+19(5) | In In re Dutile, 935 F.2d 61 (5th Cir.1991), the Fifth Circuit defined the parameters of removal jurisdiction in the context of saving to suitors clause cases. In that case, the Fifth Circuit found that general maritime law claims brought in a state court are not removable under Section 1333 and require both a jurisdictional basis independent of the federal court's admiralty jurisdiction and must meet the forum defendant rule under the removal statute, 28 U.S.C. " 1441(a) ("Section 1441(a)"). Id. The Dutilecourt reasoned that Section 1441(a) did not apply to admiralty matters, stating that "[e]mphatically, claims in admiralty, whether designated in rem or in personam, do notfall within this category." Id. at 63. Noting that Section 1441(a) was prefaced by the phrase, "Except as expressly provided by Act of Congress," the court found that Section 1441(b) offered an "express provision" limiting removal. Id. The court concluded that admiralty and general maritime law claims must fall within the category of "[a]ny other [civil] action" under Section 1441(b), and, as such, were removable only if no defendant was a resident of the forum state (the forum defendant rule). Id. Following its construction of Section 1441, the Fifth Circuit stated that "the practical effect ... is to prevent the removal of admiralty claims ... unless there is complete diversity of citizenship (predicated upon out-of-state defendants)."52 Unequivocally, the courtreached this conclusion by "constru[ing] the plain language of " 1441(b), read in conjunction with Romero," reiterating the notion that "Congress simply has not supplied the district courts with removal jurisdiction of admiralty claims absent diversity." Id. (emphasis added). | General maritime law claims are not removable under federal admiralty jurisdictional statute as part of the original jurisdiction of the court, and require an independent basis of jurisdiction. 28 U.S.C.A. SS 1333, 1441(a). | Are general maritime law claims brought in a state court removable? | 000042.docx | LEGALEASE-00115491-LEGALEASE-00115494 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9034 | Heaton v. City of Charlotte, 277 N.C. 506 | 414+1140 | A municipality has no inherent power to zone its territory and possesses only such power to zone as is delegated to it by the enabling statutes, G.S. s 160"172 Et seq. The authority to enact zoning ordinances is subject to the limitations imposed by the enabling statute and by the Constitution. These limitations forbid arbitrary and unduly discriminatory interference with property rights in the exercise of such power. Zopfi v. City of Wilmington, 273 N.C. 430, 160 S.E.2d 325. Thus, a zoning ordinance or an amendment thereto which is not adopted in accordance with the enabling statutes is invalid and ineffective. Kass v. Hedgpeth, 226 N.C. 405, 38 S.E.2d 164; Eldridge v. Mangum, 216 N.C. 532, 5 S.E.2d 721. However, a municipal zoning ordinance will be presumed to be valid, and the burden is on the complaining party to show it to be invalid. Zopfi v. City of Wilmington, supra;Helms v. City of Charlotte, 255 N.C. 647, 122 S.E.2d 81 | Municipality has no inherent power to zone its territory, and its authority is subject to limitations imposed by enabling statute and Constitution; zoning ordinance or amendment thereto which is not adopted in accordance with enabling statutes is invalid and ineffective. G.S. S 160-172 et seq. | Why are limitations imposed on the zoning power by the enabling statute? | Zoning and Planning - Memo 7 - RM.docx | LEGALEASE-00000313-LEGALEASE-00000314 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9035 | Adkins Ltd. P'ship v. O St. Mgmt., 56 A.3d 1159 | 25T+501 | But even assuming Adkins has not forfeited this argument, we do not believe it was improper for the trial court to instruct the appraiser to value the leased fee interest in the O Street property. Ordinarily, a trial court's role in reviewing an appraisal is limited, as is its role in reviewing arbitration awards. When the parties have agreed only for the appraisal of a specific thing and the contract does not provide for an appraiser to settle a particular dispute, however, an appraiser's role is more limited than the role of an arbitrator, i.e., the appraiser's task is "merely [that] of fixing value." Marceron v. Chevy Chase Servs., Inc., 258 F.2d 155, 158 & n. 4 (D.C.Cir.1958) (citing City of Omaha v. Omaha Water Co., 218 U.S. 180, 194, 30 S.Ct. 615, 54 L.Ed. 991 (1910)("An arbitration implies a difference, a dispute, and involves ordinarily a hearing and all thereby implied.... But when, as here, the parties had agreed that one should sell and the other buy a specific thing, and the price should be a valuation fixed by persons agreed upon, it cannot be said that there was any dispute or difference.Such an arrangement precludes or prevents difference, and is not intended to settle any which has arisen. This seems to be the distinction between an arbitration and an appraisement, though the first term is often used when the other is more appropriate.")). | Ordinarily, a trial court's role in reviewing an appraisal is limited, as is its role in reviewing arbitration awards; however, when the parties have agreed only for the appraisal of a specific thing and the contract does not provide for an appraiserto settle a particular dispute, an appraiser's role is more limited than the role of an arbitrator, i.e., the appraiser's task is merely that of fixing value. | What does the term arbitration imply? | Alternative Dispute Resolution - Memo 9 - JS.docx | LEGALEASE-00000366-LEGALEASE-00000367 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9036 | People v. Hole, 139 Cal. App. 3d 431 | 172H+1697 | Where a defendant attempts to pass a check in violation of Penal Code section 476a, the drawee bank is a "victim of the crime" regardless of whether of not it has suffered financial loss. ( People v. Superior Court (Abrahms) (1976) 55 Cal.App.3d 759, 770-772 [127 Cal.Rptr. 672].) | Where a defendant attempts to pass a "nonsufficient fund" check, drawee bank is a "victim of the crime," within meaning of "victim of the crime" exception to Right to Privacy Act, regardless of whether or not bank has suffered financial loss. West's Ann.Cal.Gov.Code SS 7470(d), 7471(c). | Will a drawee bank be considered as a victim of the crime when a defendant attempts to pass a check in violation of penal code? | Banks and Banking - Memo 2 - MS.docx | ROSS-003285408-ROSS-003285409 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 9037 | Britton v. Co-op Banking Grp., 916 F.2d 1405 | 25T+182(1) | The district court, relying on Van Ness Townhouses v. Mar Industries, Corp., 862 F.2d 754 (9th Cir.1988), held that Liebling had waived his right to arbitrate. A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof. Fisher, 791 F.2d at 694; Van Ness Townhouses, 862 F.2d at 758. We conclude that appellees failed to sustain this heavy burden. Van Ness is distinguishable on its facts. | Party seeking to prove waiver of right to arbitrate must demonstrate knowledge of existing right to compel arbitration, facts inconsistent with that existing right, and prejudice to the party opposing arbitration resulting from inconsistent acts; party arguing waiver of arbitration bears heavy burden of proof. | What are the factors to be established by a party seeking waiver of a right to arbitrate? | Alternative Dispute Resolution - Memo 122 - JS.docx | ROSS-003281839-ROSS-003281840 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 9038 | Lorber Indus. of California v. Los Angeles Printworks Corp., 803 F.2d 523 | 25T+112 | Arbitration, however favored by the courts and Congress, is a contractual right, and may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. Moruzzi v. Dynamics Corp. of America, 443 F.Supp. 332, 334 (S.D.N.Y.1977); see also Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 250, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977). Mark Fabrics has demonstrated no basis for asserting the right to compel Lorber to arbitrate its copyright infringement claims against Mark Fabrics. The district court's denial of Mark Fabrics' motion to stay proceedings and compel arbitration is affirmed. | Arbitration, however favored by courts and Congress, is a contractual right, and may not be invoked by one who is not a party to the agreement and who does not otherwise possess the right to compel arbitration. | Can one who is not a party to the agreement invoke contractual right? | Alternative Dispute Resolution - Memo 103 - JS.docx | ROSS-003281946-ROSS-003281947 | Order, SA | 0.69 | 1 | 0 | 0 | 1 | |
| 9039 | Nat'l Football League v. Alley, 624 F. Supp. 6 | 372+1445 | Assuming, without holding, that Florida's common law recognizes a right of publicity, the right is a personal one and may not be assigned to another entity. Consequently, these plaintiffs lack standing to bring a common law action on behalf of individual players. | Assuming that Florida recognizes common-law right of publicity, right is a personal one which may not be assigned to another entity, and thus National Football League and member club would lack standing to bring common-law action on behalf of individual football players in connection with unauthorized interception of satellite transmissions of live game broadcasts. | Can the right to publicity be assigned? | 003902.docx | LEGALEASE-00115928-LEGALEASE-00115929 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 9040 | Sec. First Nat. Bank v. Whittaker, 241 Cal. App. 2d 554 | 289+808 | Cirillo's interest in the partnership was his share of the profits and surplus; that interest was personal property (Corp.Code s 15026); that interest was assignable (Corp.Code s 15027), and its assignment transferred to the assignee the right to an accounting (Corp.Code s 15027(2);Chatten v. Martell, 166 Cal.App.2d 545, 333 P.2d 364). | Partner's interest in partnership was his share of profits and surplus, which interest was personal property and assignable, and postdissolution assignment transferred to assignee the right to an accounting. West's Ann.Corp.Code, SS 15026, 15027(2). | Is a partners right to the share in the profits and surplus of the partnership assignable? | 003923.docx | LEGALEASE-00115921-LEGALEASE-00115922 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 9041 | People v. Adkins, 236 A.D.2d 850 | 181+9 | The Penal Law requires that, in order to be guilty of the crime of forgery in the second degree, a person "with intent to defraud, deceive or injure another * * * falsely make[ ], complete[ ], or alter[ ] a written instrument which is or purports to be * * * [a] * * * commercial instrument" (Penal Law " 170.10[1] ). None of those requirements is present. Here, defendant did not falsely make the money order. The money order was made by the person who purchased it and who was authorized to make it. The money order was therefore authentic. Merely adding the name of the payee does not constitute forgery. Forgery is the "execution of an instrument which is not authentic. The distinction to be drawn is the difference between an instrument which is falsely made, and one that is made falsely" (People v. Cannarozzo, 62 A.D.2d 503, 504, 405 N.Y.S.2d 528, affd. 48 N.Y.2d 687, 421 N.Y.S.2d 882, 397 N.E.2d 394 for the reasons stated below; see, People v. Johnson, 88 A.D.2d 922, 450 N.Y.S.2d 560; People v. Miller, 79 A.D.2d 579, 434 N.Y.S.2d 33; cf., People v. Smith, 135 A.D.2d 1051, 522 N.Y.S.2d 987). As pointed out by the Court of Appeals in People v. Briggins, 50 N.Y.2d 302, 306, 428 N.Y.S.2d 909, 406 N.E.2d 766, "[t]he forged character of a document does not depend so much on whether it contains a falsehood, but on whether, on its face, it misrepresents its authenticity" (see, People v. Levitan, 49 N.Y.2d 87, 91, 424 N.Y.S.2d 179, 399 N.E.2d 1199; People v. Dunn, 185 A.D.2d 54, 59, 592 N.Y.S.2d 299, lv. denied 81 N.Y.2d 970, 598 N.Y.S.2d 771, 615 N.E.2d 228). | Defendant did not falsely make money order, within meaning of forgery statute, as money order was made by person who purchased it and who was authorized to make it, such that money order was authentic, and defendant merely added name of payee. McKinney's Penal Law S 170.10, subd. 1. | Does adding names of the payee to money order constitute forgery? | Forgery - Memo 21 - AKA.docx | ROSS-003289634-ROSS-003289635 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9042 | In re Eagle Creek Land Res., 149 A.D.3d 1324 | 315+72 | We are similarly unpersuaded by claimant's argument that Pomykacz's report was flawed due to his lack of emphasis on claimant's loss of exclusivity and the right to control its property. To be sure, "[u]nder the traditional conception of property, the most important of the various rights of an owner is the right of possession which includes the right to exclude others from occupying or using the space" (Seawall Assoc. v. City of New York, 74 N.Y.2d 92, 103, 544 N.Y.S.2d 542, 542 N.E.2d 1059 [1989], certs. denied 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 [1989]; see Matter of Smith v. Town of Mendon, 4 N.Y.3d 1, 11"12, 789 N.Y.S.2d 696, 822 N.E.2d 1214 [2004] ). Claimant's appeal to exclusivity relies on an incorrect premise that, pre-condemnation, it actually had the right to exclude others from its roads. In so assuming, claimant ignores the pre-existing UAE that ran along the Moscoe Road segment of the PAE and gave the public the right of access to the recreational area. Although the Toronto Dam Road portion of the PAE was not subject to any prior easement, as properly observed by Supreme Court, there was always an easement granting the public access to the recreational area, part of which was relocated to Toronto Dam Road to avoid having it run through the developed lots. In addition, all segments of the PAE were also subject to cross easements allowing access to any of the 480 owners, their families and guests throughout Chapin Estate. | Under the traditional conception of property, the most important of the various rights of an owner is the right of possession which includes the right to exclude others from occupying or using the space. | Do rights of a property owner include right to exclude others from using it? | Property - Memo 9 - ANG.docx | ROSS-003310847-ROSS-003310849 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9043 | Fuller v. Guthrie, 565 F.2d 259 | 25T+113 | We reach our result cognizant of the federal policy favoring arbitration, and accept the standard rule of construction that arbitration agreements are to be liberally construed. See, e. g. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 385 (2d Cir. 1961), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1962). But federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope. A decision to arbitrate must be consciously made, for, as we have recently noted,by agreeing to submit disputes to arbitration, a party relinquishes his courtroom rights, including that to subpoena witnesses, in favor of arbitration with all its well-known advantages and drawbacks. Parsons and Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier, 508 F.2d 969 (2d Cir. 1974). | Federal policy favors arbitration, and arbitration agreements are to be liberally construed; however, decision to arbitrate must be consciously made, since, by agreeing to submit disputes to arbitration, a party relinquishes his courtroom rights, including right to subpoena witnesses, in favor of arbitration with all of its well-known advantages and drawbacks. | Does a litigant initiating arbitration waive his right to a judicial forum? | Alternative Dispute Resolution - Memo 71- JS.docx | LEGALEASE-00001437- LEGALEASE-00001439 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 9044 | Larry Skowronek v. American Steam Ship Company, 505 F.3d 482 | 348+11(1) | Under United States maritime law, "maintenance" is the shipowner's duty to provide food and lodging to a seaman who becomes ill or injured while in the service of the ship. Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962). The right to maintenance is related to the right to cure, which is "care, including nursing and medical attention during such period as the duty continues." Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S. Ct. 651, 82 L. Ed. 993 (1938). The shipowner's duty to pay maintenance continues until either the seaman has recovered or his condition is declared permanent. Vella v. Ford Motor Co., 421 U.S. 1, 5, 95 S. Ct. 1381, 43 L. Ed. 2d 682 (1975). The duty exists irrespective of both whether the shipowner was negligent and whether the illness or injury is job-related. Id. at 4. Maintenance has traditionally been said to serve three purposes: "(1) to protect the poor and improvident seaman while ill in foreign ports, (2) to encourage shipowners to protect the seaman's safety and health while in service, and (3) to induce employment in the merchant marine."Gardiner v. Sea-Land Serv., Inc., 786 F.2d 943, 946 (9th Cir. 1986) (citing Vella, 421 U.S. at 3-4). | Under United States maritime law, "maintenance" is shipowner's duty to provide food and lodging to seaman who becomes ill or injured while in ship's service. | Is the payment made by a shipowner to a sick and injured sailor for food and lodging considered as maintenance? | 004057.docx | LEGALEASE-00116290- LEGALEASE-00116292 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 9045 | Heckers v. Fowler, 69 U.S. 123 | 25T+111 | Scope of the objection, however, does not directly involve the question of jurisdiction, but has respect to the mode of trial as substituting the report of a referee for the verdict of a jury. Circuit Courts, as well as all other Federal courts, have authority to make and establish all necessary rules for the orderly conducting business in the said courts, provided such rules are not repugnant to the laws of the United States. Practice of referring pending actions is coeval with the organization of our judicial system, and the defendants do not venture the suggestion that the practice is repugnant to any act of Congress. On the contrary, this court held, in the case of theAlexandria Canal Co. v. Swan, that a trial by arbitrators, appointed by the court, with the consent of both parties, was one of the modes of prosecuting a suit to judgment as well established and as fully warranted by law as a trial by jury, and, in the judgment of this court, there can be no doubt of the correctness of that proposition. | A trial by arbitrators, appointed by the court, with the consent of both parties, is one of the methods of prosecuting a suit to judgment, as well established and as fully warranted by law as a trial by jury. | Is trial by arbitrators a mode of prosecuting a suit to judgment? | Alternative Dispute Resolution - Memo 18 - JS.docx | ROSS-003283647-ROSS-003283649 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9046 | Dees v. Distenfield, 618 F. Supp. 123 | 25T+114 | At the same time, these cases give little consideration to the mandate and policy of the Federal Arbitration Act, 9 U.S.C. " 1 et seq. and appear to assume that arbitration proceedings are inadequate to protect an investor's rights. By enacting the Federal Arbitration Act, Congress sought to make arbitration agreements as enforceable as all other contracts.Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801 n. 12, 18 L.Ed.2d 1270 (1967).Congress intended to avoid the unnecessary expense and delay of litigation where parties had provided for the more efficient process of arbitration.Id. at 404, 87 S.Ct. at 1806; Cunningham v. Dean Witter Reynolds, Inc., 550 F.Supp. 578, 584 (E.D.Cal.1982).Moreover, arbitration under the Act "is intended to provide the parties to a dispute with a speedy and relatively inexpensive trial before specialists." Conticommodity Services Inc. v. Philipp & Lion, 613 F.2d 1222, 1224 (2d Cir.1980); New Process Steel Corp. v. Titan Industries Corp., 555 F.Supp. 1018, 1021 (S.D.Tex.1983). In this case, arbitration provides the parties with a neutral and expert determination of the dispute. Moreover, the Arbitration Act represents a strong public policy in favor of arbitration as an effective means of resolving disputes, Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Scherk v. Alberto-Culver Co., 417 U.S. 506, 511"12, 94 S.Ct. 2449, 2453"54, 41 L.Ed.2d 270 (1974). Absent an indication from Congress that arbitration of Rule 10b"5 claims should not be permitted, the unqualified policy favoring arbitration should be enforced. See Hagstrom v. Breutman, 572 F.Supp. 692, 699 (N.D.Ill.1983). | By enacting Federal Arbitration Act, Congress sought to make arbitration agreements as enforceable as all other contracts; Congress intended to avoid unnecessary expense and delay of litigation where parties had provided for more efficient process of arbitration. 9 U.S.C.A. S 1 et seq. | What is the purpose of Arbitration Act? | 06336.docx | LEGALEASE-00078397- LEGALEASE-00078399 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9047 | HotelesCondado Beach v. Union de Tronquistas de Puerto Rico, Local 901, 588 F. Supp. 679 | 25T+111 | It is clear from the circumstances of the case, that the presence of Mrs. Kimberly Flores' husband at the arbitration hearing was motivated by the desire to provide moral support while she testified regarding the offensive sexual conduct which she witnessed while a guest at the Hotel. Often, offensive conduct of a sexual nature is so distraughtful and shocking that the affected persons are reluctant to engage in a public elucidation of the events. Therefore, in light of the public interest in excising offensive conduct of a sexual nature which harms the privacy interest of a person, testimony from the affected persons should be procedurally encouraged, so long as no legitimate competing interest is unduly affected. This Court cannot see any legitimate justification for excluding her husband's presence in such a role. Arbitration proceedings are informal, flexible procedures in which the liberality of the norms of evidence is encouraged in order to afford the parties the amplest opportunity to arrive at the truth of the underlying matters. A collective bargaining agreement is a contract; it is to be more liberally construed than an agreement between private individuals. Peerless Pressed Metal Corp. v. Int'l Union of E., R. & M.W., 451 F.2d 19 (1st Cir.1971), cert. den., 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313. Certainly, as the witness' companion at the Hotel while the incident is alleged to have occurred, Mr. Flores is a person related to the incident with a valid claim to be present as an encouraging companion during his wife's testimony at the hearing. Furthermore, given the absence of any real possibility of collusion, the arbitrator's conduct in excluding the witness' husband, with the concomitant result of having her not testify, clearly frustrates the objectives of affording the parties the amplest opportunity to present their case. | Arbitration proceedings are informal, flexible procedures in which the liberality of the norms of evidence is encouraged to afford the parties the amplest opportunity to arrive at the truth of the underlying matters. | Is the arbitration process an informal and flexible procedure? | 004216.docx | LEGALEASE-00116285-LEGALEASE-00116286 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 9048 | Arkoosh v. Dean Witter & Co., 415 F. Supp. 535 | 25T+110 | The plaintiffs contend that the case of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), supports their position that a contractual waiver of due process rights in a commercial setting marked by the inequal bargaining position of the parties, and a standard form contract should preclude the enforcement of paragraph 16 of the Customer Agreement involved in this case. However, the Court is convinced that the differences between the circumstances in Fuentes and the situation in the present case far outweights the similarities. When a term in a standard form contract requires a weaker party to waive rights which seriously alter the weaker party's reasonable expectations under the contract, or frustrate or deny the weaker party's right to present his case, and receive a fair and impartial decision on its merits, courts must carefully scrutinize the transaction for evidence of overreaching and unconscionability. But, in the present case no such claim is made. To be sure the right to trial by jury is an important constitutional right. But the right is not of such a nature that its waiver in lieu of arbitration places either party under an unreasonable burden, or gives either party an unreasonable advantage. Cf. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Consequently, the Court simply cannot find that an agreement to arbitrate disputes before an independent and impartial private arbitrator, imposed by the terms of a standard form contract, is unconscionable and, therefore, unenforceable under the circumstances of this case. Since the Court has concluded that private arbitration is not an unconscionable substitute for trial by jury under the circumstances of this case, it shall not be necessary to conduct an evidentiary hearing to determine whether paragraph 16 was imposed upon the plaintiffs. | Right to trial by jury is important constitutional right, but is not of such nature that its waiver in lieu of arbitration places either party under unreasonable burden, or gives either party unreasonable advantage. U.S.C.A.Const. Amend. 7; 9 U.S.C.A. S 1 et seq. | Can a party waive the right to trial by jury in favor of the right to arbitrate? | Alternative Dispute Resolution - Memo 7 - JS.docx | LEGALEASE-00001579-LEGALEASE-00001581 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9049 | United States v. (Under Seal), 748 F.2d 871 | 311H+156 | Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, if those communications reveal confidential client communications. See Brinton v. Department of State, 636 F.2d 600, 603 (D.C. Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (the privilege applies to attorney-client communications originating from the attorney if the communication is based on confidential information provided by the client); Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir.1964) (exchange of memoranda containing confidential client communications between counsel for several clients summoned before grand jury did not abrogate privilege attaching to the memoranda); 8 Wigmore, Evidence " 2301 (McNaughten Rev.1961) ("It has never been questioned that the privilege protects communications to the attorney's clerks, and his other agents ... for rendering his services."). See generally Supreme Court Standard 503(b).5 However, the privilege protects only confidential client communications; that is, communications not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means. See Supreme Court Standard 503(a)(4). We have recently said thatthe "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] ... by the attorney as so intended." In determining whether it was to be reasonably "assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality. In Re Grand Jury Proceedings (John Doe), 727 F.2d 1352, 1356 (4th Cir.1984) (quoting United States v. Jones, 696 | Attorney-client privilege protects only confidential client communications; that is, communications not intended to be disclosed to third persons other than in the course of rendering legal services to client or transmitting communications by reasonably necessary means. | What protection is afforded under an attorney-client privilege? | Privileged Communications and Confidentiality - Memo 13 - VP.docx | LEGALEASE-00001601-LEGALEASE-00001603 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9050 | Houston v. Bd. of City Comm'rs of City of Wichita, 218 Kan. 323 | 414+1333(1) | Their second argument on arbitrariness is that the city commission was per se arbitrary in rejecting the recommendation of the planning commission. The argument misconceives the respective roles of the two bodies.". . . (T)he function of the planning commission is advisory only, its authority being limited to a study of the facts and submission of its recommendations to the governing body wherein authority to take final action lies." (Burke & McCaffrey, Inc. v. City of Merriam, 198 Kan. 325, 327, 424 P.2d 483, 485.)See also, Coughlin v. City of Topeka, 206 Kan. 552, 480 P.2d 91; Bodine v. City of Overland Park, 198 Kan. 371, 424 P.2d 513; Arkenberg v. City of Topeka, 197 Kan. 731, 421 P.2d 213; Waterstradt v. Board of Commissioners, 203 Kan. 317, 454 P.2d 445; and Creten v. Board of County Commissioners, 204 Kan. 782, 466 P.2d 263. As the trial court noted, the recommendation of the planning commission was directly contrary to the policy it had previously recommended and which had been approved by the governing body. The city commission was certainly entitled to conform to the previously adopted policy. | Function of planning commission is advisory only, its authority being limited to study of facts and submission of its recommendations to governing body wherein authority to take final action lies. K.S.A. 12-707. | Does the governing body have the final authority in zoning matters? | Zoning and Palnning - Memo 31 - JS.docx | LEGALEASE-00001861-LEGALEASE-00001862 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9051 | Love Terminal Partners v. United States, 126 Fed. Cl. 389 | 148+70 | The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). "The chief and one of the most valuable characteristics of the bundle of rights commonly called "property" is "the right to sole and exclusive possession"the right to exclude strangers, or for that matter friends, but especially the Government."" Mitchell Arms, Inc. v. United States, 7 F.3d 212, 215 (Fed.Cir.1993) (quoting Hendler v. United States, 952 F.2d 1364, 1374 (Fed.Cir.1991)). The Takings Clause does not prohibit the taking of property. Brown v. Legal Found. of Wash., 538 U.S. 216, 235, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). Rather, it proscribes a taking without just compensation. Id.; see also First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A., 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (providing that the Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking"). | The Takings Clause of Fifth Amendment was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. U.S. Const. Amend. 5. | What purpose does the taking or just compensation clause serve under the law? | Eminent Domain - Memo 10 - AKA.doc | LEGALEASE-00002109-LEGALEASE-00002110 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9052 | Illinois State Chamber of Commerce v. Pollution Control Bd., 177 Ill. App. 3d 923 | 1.49E+18 | When an administrative agency such as the Board exercises its rulemaking powers, it is performing a quasi-legislative function, and, therefore, it has no burden to support its conclusions with a given quantum of evidence. (Illinois State Chamber of Commerce v. Pollution Control Board (1977), 49 Ill.App.3d 954, 961, 7 Ill.Dec. 470, 364 N.E.2d 631; Shell Oil Co. v. Pollution Control Board (1976), 37 Ill.App.3d 264, 270"71, 346 N.E.2d 212; see also Central Illinois Light Co. v. Pollution Control Board (1987), 159 Ill.App.3d 389, 396"97, 110 Ill.Dec. 434, 511 N.E.2d 269.) The burden of establishing the invalidity of regulations promulgated by the Board is on the appellants, and that burden is very high. (Chamber of Commerce, 49 Ill.App.3d at 960, 7 Ill.Dec. 470, 364 N.E.2d 631.) Because administrative agencies are inherently more qualified to decide technical problems, this court, when reviewing administrative rules and regulations, may not invalidate a regulation unless it is clearly arbitrary, unreasonable or capricious. Central Illinois Light, 159 Ill.App.3d at 397, 110 Ill.Dec. 434, 511 N.E.2d 269; Shell Oil, 37 Ill.App.3d at 270"71, 346 N.E.2d 212. | When Pollution Control Board exercises its rule-making powers, it is performing a quasi-legislative function and has no burden to support its conclusions with a given quantum of evidence. | "Does an administrative agency, such as the Pollution Control Board, perform a quasi-legislative function while exercising its rule-making power?" | Environmental Law - Memo 44 - AKA.doc | LEGALEASE-00002151-LEGALEASE-00002153 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9053 | Matter of Marriage of Crosetto, 82 Wash. App. 545 | 192+1 | Five accounting methods are generally recognized, including straight capitalization, capitalization of excess earnings, the IRS variation of capitalized excess earnings, the market value method, and the buy/sell agreement method. Luckey, 73 Wash.App. at 206, 868 P.2d 189. This is not an exclusive list and one or more methods may be used in conjunction with the Fleege factors in determining value with the ultimate goal of achieving a fair and just evaluation of the existence and value of the professional's goodwill. Luckey, 73 Wash.App. at 206, 868 P.2d 189. The trial court must state on the record which factors and accounting method were used in arriving at its finding; failure to do so will deem the valuation to be unsupported by sufficient evidence, necessitating reversal and remand for proper findings. Hall, 103 Wash.2d at 247, 692 P.2d 175; Luckey 73 Wash.App. at 206, 868 P.2d 189. | One or more accounting methods may be used in conjunction with Fleege factors in determining value of professional goodwill with ultimate goal of achieving fair and just evaluation of existence and value of goodwill. | What are the different methods in valuing goodwill? | 004394.docx | LEGALEASE-00116534-LEGALEASE-00116535 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9054 | United States v. Bank of Montreal, 21 F. 236 | 220+4243 | Section 3407 defines a bank and banker as follows:Sec. 3407. "Every incorporated or other bank, and every person, firm, or company, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, shall be regarded as a bank, or as a banker. | A bank in Canada, which has established a branch in Chicago, must be held to carry on a banking business, within the provisions of Rev.St.U.S. S 3407, 12 U.S.C.A. S 561, defining a bank, and of section 3408, imposing a tax on capital employed; it having a place of business where credits were opened by the deposit of money, subject to be paid or remitted upon draft, check, or order, and where bills of exchange were issued and sold. | What are the substantive activities that occur at the place of business of a banker? | 004511.docx | LEGALEASE-00116458-LEGALEASE-00116459 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9055 | In re Wilkins' Will, 131 Misc. 188 | 172H+211 | A savings bank is entirely different from a commercial bank in its foundation, its place in the social structure, and in its methods of business. A savings bank is an institution for the accumulation of small sums, chiefly the savings of the poorer classes, organized by philanthropic movement, where the trustees give their services gratuitously, the state prescribing the classes of investments. The chief problem of a savings bank is the safe keeping of the funds.The commercial bank is one which receives deposits, makes discounts, and issues notes. They are lenders and borrowers. They may or may not pay interest on deposits subject to check. The law gives certain powers to commercial banks which are not invested in savings banks. Business banks are chartered by both the state and the nation. They may now serve as guardian, receiver, trustee. The depositor pays his debts by orders upon the bank in the form of checks. The savings banks adopt plans to restrain the depositor from making sudden calls for any considerable amount of his deposit. From a social point of view,the commercial bank plays an important part in supplementing the currency of the country. One feature of savings banks is that both their deposits and investments are as a rule of a more permanent character than those of commercial banks. A commercial bank at any time, without notice to the depositor, has the right to set off his deposits against any debt. Delano v. Equitable Trust Co., 110 Misc. Rep. 704, 181 N. Y. S. 852. The right to make application to the debt is determinable by the ordinary rules of law relating to the right of set-off. This is called a "banker's lien," being recognized in commercial law and being commercial usage. Morse on Banks (5th Ed.) " 334 | A "savings bank" is an institution for accumulation of small sums, chiefly savings of poorer classes, organized by philanthropic movement, where trustees give their services gratuitously, and state prescribes classes of investment. | How are saving banks different from commercial banks? | 004513.docx | LEGALEASE-00116460-LEGALEASE-00116462 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 9056 | Tucson Elec. Power Co. v. Adams, 134 Ariz. 396 | 148+1 | The law is abundantly clear that a public authority cannot contract away its right to eminent domain since such action would deprive that authority of a power essential to public welfare. 26 Am. Jur.2d Eminent Domain Sec. 17. | A public authority cannot contract away its right to eminent domain since such action would deprive that authority of a power essential to public welfare. | Can a public authority contract away its right to eminent domain? | Eminent Domain - Memo 12 - AKA.doc | LEGALEASE-00002341-LEGALEASE-00002342 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 9057 | Household Coal & Oil Distributors (Starck-Rawlings Div.) v. Sage, 57 Misc. 2d 428 | 302+1 | The primary function of any pleading is to give the defendant notice of the transactions or occurrences intended to be litigated and the material elements of plaintiff's cause of action (CPLR s 3013; Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121; Pernet v. Peabody Engineering Corp., 20 A.D.2d 781, 782, 248 N.Y.S.2d 132, 134). The fact that these requirements are recognized as being contained in indorsed complaints either by inference or by implication should not mislead us as to their actual existence. Consequently, the distinction between a statement as to the nature and substance of a cause of action (CCA s 902(a)(1)) and, notice of the transactions and occurrences to be litigated and the material elements of the cause of action (CPLR s 3013) is quantitative and not qualitative. | Primary function of any pleading is to give the defendant notice of transactions or occurrences intended to be litigated and material elements of plaintiff's cause of action. CPLR 3026. | Is giving notice to the other party the primary function of pleading? | 004854.docx | LEGALEASE-00116719-LEGALEASE-00116721 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9058 | Scarboro v. State, 207 Ga. 449 | 146+35 | "Embezzlement is a species of larceny" (Black's Law Dictionary, 3d ed., p. 653), and in prosecutions for the former offense, as in those for the latter, ownership of the property alleged to have been stolen is a necessary averment. 29 C.J.S., Embezzlement, " 8, p. 676. See also McKee v. State, 200 Ga. 563, 37 S.E.2d 700, and the authorities there cited. And since an allegation of ownership is a necessary averment in an indictment or presentment for embezzlement, it is an elementary principle of law, which needs no citation of authority, that it must be proved as laid. However, it is well settled that any legal interest in the property wrongfully converted, although less than the absolute title, will support an allegation of ownership.But there must be an actual legal interest, not a mere claim or expectation of interest. 25 Cyc. 91. To the same effect, see Robinson v. State, 1 Ga. 563; Wimbish v. State, 89 Ga. 294, 15 S.E. 325; Henry v. State, 110 Ga. 750, 36 S.E. 55, 78 Am.St.Rep. 137 | Any legal interest in the property wrongfully converted although less than absolute title will support an allegation of ownership in a prosecution for embezzlement but there must be an actual legal interest, and not a mere claim or expectation of interest. Code, S 26-2801. | Is it necessary that the title of one whose property is embezzled have an absolute ownership in the property? | 004989.docx | LEGALEASE-00116778-LEGALEASE-00116779 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9059 | Czerwinski v. Sunrise Point Condo., 540 So. 2d 199 | 233+1251 | A landlord generally has no duty to insure the safety of his tenants or to protect them from the criminal acts of third persons, Ten Assocs. v. McCutchen, 398 So.2d 860, 861 (Fla. 3d DCA), rev. denied, 411 So.2d 384 (Fla.1981), Highlands Ins. Co. v. Gilday, 398 So.2d 834 (Fla. 4th DCA), rev. denied, 411 So.2d 382 (Fla.1981), unless the criminal occurrence is reasonably foreseeable. Admiral's Port Condo. Ass'n, Inc. v. Feldman, 426 So.2d 1054 (Fla. 3d DCA) rev. denied, 434 So.2d 887 (Fla.1983). In determining whether a duty exists, the landlord's knowledge of prior crimes"against both persons and property"is relevant to the issue of foreseeability, even if the prior criminal acts are lesser crimes than the one committed against the plaintiff. Salerno v. Hard Fin. Corp., 521 So.2d 234 (Fla. 4th DCA 1988) (evidence of lesser crimes relevant to foreseeability of murder); Rosier v. Gainsville Inns Assocs., Ltd., 347 So.2d 1100 (Fla. 1st DCA 1977) (in determining foreseeability of violent crime, landlord's knowledge of illegal entries not involving violence is relevant evidence). | Landlord generally has no duty to insure the safety of his tenants or to protect them from the criminal acts of third persons unless the criminal occurrence is reasonably foreseeable. | Does the landlord have a general duty to protect a tenant from criminal attacks? | 005074.docx | LEGALEASE-00117228-LEGALEASE-00117230 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9060 | Lazarin v. Superior Court, 188 Cal. App. 4th 1560 | 15A+1057 | When a statute empowers an administrative agency to adopt regulations implementing the legislation, the agency acts in a "quasi-legislative" capacity, having been delegated the Legislature's lawmaking power. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 11, 78 Cal.Rptr.2d 1, 960 P.2d 1031.) Judicial review of quasi-legislative actions is limited to the determination whether the regulation is within the scope of the authority conferred and is reasonably necessary to effectuate the purpose of the statute under which it is enacted. (See id. at pp. 10"11, 78 Cal.Rptr.2d 1, 960 P.2d 1031; Woods v. Superior Court (1981) 28 Cal.3d 668, 679, 170 Cal.Rptr. 484, 620 P.2d 1032.) In deciding whether the regulation conflicts with its legislative mandate, however, the court does not defer to the agency's interpretation of the law under which the regulation issued, but rather exercises its own independent judgment. (See Kenneth Cole Productions, supra, 40 Cal.4th at pp. 1105"1106, fn. 7, 56 Cal.Rptr.3d 880, 155 P.3d 284["[w]hile the [agency's] construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute"]; Yamaha, at p. 11, fn. 4, 78 Cal.Rptr.2d 1, 960 P.2d 1031["[t]he court, not the agency, has "final responsibility for the interpretation of the law" under which the regulation was issued"]; see also California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 11, 270 Cal.Rptr. 796, 793 P.2d 2 [" " "[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations" " "].) | When a statute empowers an administrative agency to adopt regulations implementing the legislation, the agency acts in a "quasi-legislative" capacity, having been delegated the Legislature's lawmaking power. | Is adoption of a regulation by an administrative agency a quasi-legislative act? | 000380.docx | LEGALEASE-00117414-LEGALEASE-00117416 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 9061 | State v. Jones, 105 N.J. Super. 493 | 98+21 | As pointed out by Chief Justice Weintraub in his opinion for our Supreme Court in In re Buehrer, 50 N.J. 501, 236 A.2d 592 (1967),"(1) a contempt, in the court's discretion, may be prosecuted summarily, I.e., without indictment and without trial by jury as provided in R.R. 4:87"1 to 4, or as a crime under N.J.S.A. 2A:85"1; (2) in a summary prosecution for contempt the punishment may not exceed six months' imprisonment or a fine of $1,000 or both, subject to the provisions for probation in N.J.S.A. 2A:168"1 Et seq.; and (3) a summary conviction for contempt does not constitute a conviction within the meaning of statutes imposing disability or disqualification or otherwise discrediting an individual because of a prior conviction for "crime." (at p. 522, at p. 603 of 236 A.2d). | Summary conviction for contempt is not a "conviction" within statutes imposing disability or disqualification or otherwise discrediting an individual because of prior conviction for crime. | Is summary conviction for contempt a conviction within statutes imposing disability or disqualification? | 000388.docx | LEGALEASE-00117420-LEGALEASE-00117421 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9062 | Baruch v. Clark, 154 Idaho 732 | 253+838 | Idaho Code " 32"906(1) creates a presumption that all income earned from separate property acquired during marriage is community property unless expressly provided otherwise.The party challenging the classification of property acquired during marriage as community property has the burden of overcoming that presumption. Mark Wallace Dixson Irrevocable Trust, 147 Idaho at 124, 206 P.3d at 488; see also Weilmunster v. Weilmunster, 124 Idaho 227, 234, 858 P.2d 766, 773 (Ct.App.1993).However, "as a general rule, though not absolute, a so-called profit or gain from the sale of separate property occasioned by the natural enhancement in the value of such property constitutes part of the separate estate." Speer v. Quinlan, 96 Idaho 119, 127, 525 P.2d 314, 322 (1974). When it comes to valuing the enhancement of separate property, this Court has held that "[a]s a general rule, the natural enhancement of value of separate property during coverture does not constitute community property; however, to the extent an enhancement in value is due to the community efforts, labor, industry or funds, it falls into the community." Id. "[I]f community efforts and ability have been expended in the conduct of a separate property business, a proper inquiry ... is whether the community has received fair and adequate compensation for its labor." Id. at 128, 525 P.2d at 323. | As a general rule, though not absolute, a so-called profit or gain from the sale of separate property occasioned by the natural enhancement in the value of such property constitutes part of the separate estate. West's I.C.A. § 32-903. | Are profits from the sale of separate property during marriage considered as separate property? | Marriage and Cohabitation- Memo 42 - JS.docx | LEGALEASE-00004049-LEGALEASE-00004050 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9063 | Allred v. Harris, 14 Cal. App. 4th 1386 | 386+1 | As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. (See Loretto v. Teleprompter Manhattan CATV Corp. (1982) 458 U.S. 419, 435, 102 S.Ct. 3164, 3175, 73 L.Ed.2d 868.) An injunction is an appropriate remedy for a continuing trespass. (5 Witkin, Summary of Cal.Law (9th ed. 1988) Torts, " 605, pp. 704"705.) | As general rule, landowners and tenants have right to exclude persons from trespassing on private property; right to exclude persons is fundamental aspect of private property ownership. | Do landowners and tenants have a right to exclude persons from trespassing on private property? | Trespass - Memo 11 - RK.docx | ROSS-003311985-ROSS-003311986 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 9064 | Sprayberry Crossing P'ship v. Phenix Supply Co., 274 Ga. App. 364 | 386+1 | Sprayberry contends that the trial court erred in granting Phenix's motion for j.n.o.v. because there was sufficient evidence to show that Phenix's spilling of perc proximately caused harm to Sprayberry. A property owner may bring an action for nuisance and trespass against one who contaminates his property with a hazardous substance. These are tort claims, which require a showing of proximate cause. The existence of proximate cause is a question of fact for the jury, "except in palpable, clear, and indisputable cases." Proximate cause is not necessarily "the last act or cause, or the nearest act to the injury, but such act [that has] actively aided in producing the injury as a direct and existing cause." And, "[t]here may be more than one proximate cause of an injury." | Proximate cause sufficient to support a nuisance or trespass action is not necessarily the last act or cause, or the nearest act to the injury, but such act that has actively aided in producing the injury as a direct and existing cause; there may be more than one proximate cause of an injury. | Is there a need to establish proximate cause in nuisance and trespass claims? | 000721.docx | LEGALEASE-00117547-LEGALEASE-00117548 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9065 | In re Maynard, 155 N.H. 630 | 307A+19 | The decision to disallow pretrial discovery is within the sound discretion of the trial judge, and we will uphold it unless it is an unsustainable exercise of discretion. Bennett v. ITT Hartford Group, 150 N.H. 753, 760, 846 A.2d 560 (2004). As the husband correctly points out, the wife failed to comply with the discovery deadline and waited over a year to send the husband interrogatories. Second, the information sought in the wife's interrogatories related primarily to alimony, custody and child support. The wife is not contesting the court's rulings pertaining to either custody or child support on appeal, and we have already ruled on the issue of alimony. To the extent the wife's interrogatories sought information relevant to property distribution, we note that the wife was awarded almost sixty percent of the significant marital assets, which was what she requested at the final hearing. Moreover, she does not dispute the court's ruling with respect to property division on appeal. Thus, we cannot say that the court unsustainably exercised its discretion in denying her motion to compel. | The decision to disallow pretrial discovery is within the sound discretion of the trial judge, and the Supreme Court will uphold it unless it is an unsustainable exercise of discretion. | Are decisions concerning pretrial discovery within the sound discretion of the trial judge? | Pretrial Procedure - Memo 5 - JS.docx | ROSS-003324837-ROSS-003324838 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9066 | People v. Downer, 57 Cal. 2d 800 | 207+1 | (1) The crime of attempted incest is complete if the evidence is sufficient to show the concurrence of (a) the intent to commit such a crime, together with (b) direct, though ineffectual, acts done toward its commission. (Cf. People v. Camodeca, 52 Cal.2d 142, 145(1), 338 P.2d 903; People v. Gallardo, 41 Cal.2d 57, 66(12), 257 P.2d 29; People v. Thomas, 164 Cal.App.2d 571, 574(1), 331 P.2d 82.) | Crime of attempted incest is complete if the evidence is sufficient to show concurrence of intent to commit such a crime with direct though ineffectual acts toward its commission. | Is intent a necessary element to show that a crime of incest has been committed? | Incest - Memo 8 - TH.docx | LEGALEASE-00004414-LEGALEASE-00004415 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 9067 | Debord v. Mercy Health Sys. of Kansas, 860 F. Supp. 2d 1263 | 237+119 | "[D]amage to one's reputation is the essence and gravamen of an action for defamation." Gobin v. Globe Publishing Co., 232 Kan. 1, 6, 649 P.2d 1239 (1982). Damages recoverable for defamation cannot be presumed but must be proven. Hall v. Kansas Farm Bureau, 274 Kan. 263, 276, 50 P.3d 495 (2002). "Proof of such damages typically entails showing that persons were deterred from associating with the plaintiff, that the plaintiff's reputation had been lowered in the community, or that the plaintiff's profession suffered." Ali v. Douglas Cable Communications, 929 F.Supp. 1362 (D.Kan.1996). "[T]he plaintiff in an action for defamation must first offer proof of harm to reputation; any claim for mental anguish is "parasitic," and compensable only after damage to reputation has been established." Gobin, 232 Kan. at 7, 649 P.2d 1239. Evidence must permit the jury to determine what plaintiff's true reputation was in the community of his residence, and to determine whether the publication damaged that reputation. Id. Injury to one's personal sensitivities is insufficient to show harm to one's reputation. Id. | Under Kansas law, the plaintiff in an action for defamation must first offer proof of harm to reputation; any claim for mental anguish is parasitic, and compensable only after damage to reputation has been established. | Is proof of reputational harm a prerequisite to bring a defamation action? | 000566.docx | LEGALEASE-00117663-LEGALEASE-00117664 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9068 | Levinsky's v. Wal-Mart Stores, 127 F.3d 122 | 237+1 | The fourth principle that must be understood before we embark on our odyssey through the record is a restriction on defamation that Maine's jurisprudence hallows, though its constitutional credentials remain inscrutable. Simply put, Maine defamation law does not recognize liability without fault; rather, as a predicate to recovery, Maine requires a defamation plaintiff to show that the defendant acted at least negligently. See Lester v. Powers, 596 A.2d 65, 69 (Me.1991). | Maine defamation law does not recognize liability without fault; rather, as predicate to recovery, Maine requires defamation plaintiff to show that defendant acted at least negligently. | Is negligent defamation recognized by law? | 000559.docx | LEGALEASE-00117957-LEGALEASE-00117958 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 9069 | Fulgenzi v. PLIVA, 867 F. Supp. 2d 966 | 313A+114 | "In Ohio, three basic theories of liability exist "under which a claimant may assert a product liability action: (1) under the Ohio Product Liability Act; (2) negligence; and (3) breach of warranty." " Wimbush v. Wyeth, 619 F.3d 632, 636"37 (6th Cir.2010) (quoting Christopher M. Ernst, et al., Baldwin's Ohio Practice, Ohio Tort Law, " 6.1 (2009)). "The Ohio Products Liability Act defines a statutory product liability claim." Id. at 639 (citing Ohio Rev.Code " 2307.71(M)). | In Ohio, three basic theories of liability exist under which a claimant may assert a product liability action: (1) under the Ohio Product Liability Act (OPLA); (2) negligence; and (3) breach of warranty. Ohio R.C. S 2307.71. | Are there any theories of liability under which a claimant may assert a product liability action? | 000668.docx | LEGALEASE-00117868-LEGALEASE-00117869 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 9070 | People v. Boyer, 24 Ill. App. 3d 671 | 207+1 | The purpose of the statutes making incest a criminal offense is to prohibit sexual intercourse between those persons closely related, and thereby promote domestic peace and social policy. (42 C.J.S. Incest s 1.) This reasoning was expanded upon by the drafters of sections 11-10 and 11-11 of the Criminal Code in the Committee Comments to those sections:"(C)riminal concern for incest should be limited generally to situations involving either (1) abuse of family authority; or (2) the possibility of biological risk of genetically defective offspring." (S.H.A., ch. 38, s 11-10, Committee Comments at 437.) | Purpose of statutes making incest a criminal offense is to prohibit sexual intercourse between those persons closely related and thereby promote domestic peace and social policy; cultural traditions are basis for the prohibitions against incestuous conduct. S.H.A. ch. 38, SS 11-10, 11-10(c), 11-11, 11-11(b), 1005-8-1(b)(3, 4). | What is the purpose of incest statutes? | Incest - Memo 25 - ANG.docx | ROSS-003297318-ROSS-003297321 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 9071 | Erickson v. Pardus, 551 U.S. 89 | 170A+657.5(1) | The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). | A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Fed.Rules Civ.Proc.Rule 8(a)(2), (f), 28 U.S.C.A. | Are pro se complaints liberally construed? | 000851.docx | LEGALEASE-00117876-LEGALEASE-00117877 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 9072 | Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 | 25T+139 | "The issue of arbitrability, i.e., whether a particular dispute is covered by an arbitration clause, being a question of "interpretation and construction,"" is governed by federal law.Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 385 (2d Cir.1961). In deciding the question of arbitrability, the "federal policy [is] to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration." Metro Industrial Painting Corp. v. Terminal Construction Co., supra, 287 F.2d 382, 385 (2d Cir.1961). With this liberal federal policy in mind, we turn to an examination of the clause at issue in this case. | In deciding question of arbitrability, within meaning of the Arbitration Act, of a dispute under arbitration agreement concerning transactions relating to commerce, the federal policy is to construe liberally arbitration clauses and to find that they cover disputes reasonably contemplated by the language and to resolve doubts in favor of arbitration. 9 U.S.C.A. S 1 et seq. | How do courts construe the applicability of arbitration clauses to disputes? | 000984.docx | LEGALEASE-00117982-LEGALEASE-00117984 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9073 | Allen v. Regions Bank, 654 F. Supp. 2d 523 | 25T+113 | A two-step analysis is applied to determine whether a party may be compelled to arbitrate. Sherer v. Green Tree Serv., 548 F.3d 379, 381 (5th Cir.2008) (citing J.P. Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir.2007)). First, we ask if the party has agreed to arbitrate the dispute. Id. If so, we then ask if "any federal statute or policy renders the claims nonarbitrable." Id. (quoting Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 263 (5th Cir.2004)). That first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. Id. These questions are decided according to state law. Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir.2004) (quoting Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir.1996)). "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." Id. (citing Will"Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir.2003)); see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). "Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." Banc One, 367 F.3d at 429 (citations omitted). Neither party contends that a federal statute or policy precludes enforcement of the arbitration clause. Therefore, our analysis focuses on whether the parties have agreed to arbitrate the dispute. | While there is strong federal policy favoring arbitration, that policy does not apply to initial determination whether there is valid agreement to arbitrate. 9 U.S.C.A. S 4. | Does the strong federal policy favouring arbitration apply to the initial determination of whether there is a valid arbitration agreement? | 000997.docx | LEGALEASE-00117995-LEGALEASE-00117997 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 9074 | Banc One Acceptance Corp. v. Hill, 367 F.3d 426 | 25T+113 | The first step of the process entails determining "whether there is a valid agreement to arbitrate between the parties; and ... whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir.1996). These questions are decided according to state law. Id. While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate. Will"Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir.2003). Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration. Primerica Life, 304 F.3d at 471 (citing Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). | While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate; nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration. 9 U.S.C.A. S 4. | How does a court resolve ambiguities in an arbitration agreement? | 001003.docx | LEGALEASE-00118001-LEGALEASE-00118003 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9075 | Beltrami Enterprises v. Com., Dep't of Envtl. Res., 159 Pa. Cmwlth. 72 | 1.49E+20 | Section 17 of the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, as amended, 52 P.S. " 30.101, gives the DER the power of eminent domain. Section 4 of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. " 7514, specifically empowers the EHB to adjudicate disputes arising from orders issued by the DER. The EHB has the power to resolve both the procedural and substantive validity of actions by the DER. Charleston Township Municipal Authority v. Department of Environmental Resources, 29 Pa.Commonwealth Ct. 127, 370 A.2d 758 (1977). Thus, the sole question here is whether or not the Eminent Domain Code or the EHB can determine whether the DER's action was a taking, requiring compensation. | Environmental Hearing Board (EHB) has power to resolve both procedural and substantive validity of actions by Department of Environmental Resources (DER). 35 P.S. S 7514. | Does the Environmental Hearing Board (EHB) have the power to resolve the procedural and substantive validity of actions by the Department of Environmental Resources (DER)? | Environmental Law - Memo 83 - RK.docx | ROSS-003284461-ROSS-003284462 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 9076 | FMC Corp. v. Cyprus Foote Mineral Co., 899 F. Supp. 1477 | 231H+1 | Both FMC and Fickling have asserted important public interest. The protection extended to trade secrets fosters research and development and the improved products it elicits. The freedom of employees to sell their expertise to the highest and most congenial bidder is an important facet of individual liberty long-recognized by the law of North Carolina. Here the Court is required to balance those interests. On the facts of the case thus far the Court will not enjoin Fickling from working in his area of expertise simply because FMC thinks he might disclose its trade secrets. Like the North Carolina Court of Appeals, this Court agrees that "[a]n injunction [should] ... not be issued merely to allay the fears and apprehensions or to soothe the anxieties of a party. Nor will an injunction be issued to restrain one from doing that which he is not attempting to do." See Travenol, 30 N.C.App. at 696, 228 S.E.2d 478. | Freedom of employees to sell their expertise to highest and more congenial bidder is important facet of individual liberty long recognized by law of North Carolina. | Do employees have the freedom to sell their expertise to the highest and most congenial bidder? | Labor and Employment - Memo 9 - VP.docx | ROSS-003284100-ROSS-003284101 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9077 | In re Custody of ALD, 191 Wash. App. 474 | 76D+1 | Since the custody of a child is a fundamental, constitutional right, state interference is justified only if the State can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved. Custody of Smith, 137 Wash.2d at 15, 969 P.2d 21 (1998); In re Welfare of Sumey, 94 Wash.2d 757, 762, 621 P.2d 108 (1980). This standard is known as the strict scrutiny test. In re Parentage of C.A.M.A., 154 Wash.2d 52, 57, 109 P.3d 405 (2005). | Since the custody of a child is a fundamental, constitutional right, state interference is justified only if the State can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved; this standard is known as the strict scrutiny test. | Can the State interfere in the child custody rights? | 000888.docx | LEGALEASE-00118144-LEGALEASE-00118145 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 9078 | Ramsay v. Morrissette, 252 A.2d 509 | 233+1252 | On the merits, it is settled that a landlord's duty to those persons legally on the premises is to use reasonable care with respect to those portions of a building over which he retains control. Also, as a general rule, a landlord has no duty to protect a tenant, or a tenant's property, from criminal acts of third persons. Such a duty was found in Kendall v. Gore Properties, 98 U.S.App.D.C. 378, 236 F.2d 673 (1956), where the landlord's employee, alleged to be of unsound mind, strangled to death a tenant whose apartment he was painting. The negligence in Kendall, however, was the failure to make any investigation whatever of the employee before hiring him to work, without supervision, in the apartment of a young woman, living alone. The court did say that the tenant, under her lease, paid both for shelter and protection. It said further | Landlord's duty to those persons legally on premises is to use reasonable care with respect to those portions of building over which he retains control. | Does a landlord owe a duty to use reasonable care on premises he retains control over? | 001090.docx | LEGALEASE-00118136-LEGALEASE-00118137 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9079 | Becker v. Davis, 491 F.3d 1292 | 25T+112 | The first step in determining the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA") is "to determine whether the parties agreed to arbitrate the dispute." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir.2004) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)). While there is a liberal federal policy favoring arbitration agreements, "the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." Id. A party cannot be forced to arbitrate any dispute that the party has not agreed to submit to arbitration. See Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion ..."). | While there is liberal federal policy favoring arbitration agreements, Federal Arbitration Act's (FAA) strong proarbitration policy only applies to disputes that parties have agreed to arbitrate; party cannot be forced to arbitrate any dispute that party has not agreed to submit to arbitration. 9 U.S.C.A. S 1 et seq. | What kind of disputes does the proarbitration policy of the Federal Arbitration Act cover? | 001163.docx | LEGALEASE-00118403-LEGALEASE-00118405 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 9080 | Paladino v. Avnet Computer Techs., 134 F.3d 1054 | 25T+113 | Arbitration ordinarily brings hardships for litigants along with potential efficiency. Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of a strong federal policy favoring arbitration, these inherent weaknesses should not make an arbitration clause unenforceable. See Gilmer, 500 U.S. at 30"31, 111 S.Ct. at 1654"55 (listing disadvantages of arbitration that do not prevent its use).But see Cole, 105 F.3d at 1482 (taking lack of discovery into account to determine enforceability). But a clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII. It is not enforceable. | In light of strong federal policy favoring arbitration, hardships which arbitration brings for litigants, i.e., lack of discovery, evidentiary rules, jury, and meaningful right to further review, should not make arbitration clause unenforceable (Per special concurrence of Cox, Circuit Judge, for a majority of the Court). | What are the inherent weaknesses of arbitration? | 001180.docx | LEGALEASE-00118366-LEGALEASE-00118368 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 9081 | Collins & Aikman Prod. Co. v. Bldg. Sys., 58 F.3d 16 | 25T+113 | Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract. To implement this understanding, and "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," the Congress adopted the Federal Arbitration Act, 9 U.S.C. "" 1 et seq. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20, 105 S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985). That Act provides that a "written provision in ... a contract evidencing a transaction ... to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. | Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract; to implement this policy and to overrule the judiciary's longstanding refusal to enforce arbitration agreements, Congress adopted the Federal Arbitration Act. 9 U.S.C.A. S 1 et seq. | Why did the Congress adopt the Federal Arbitration Act? | 05339.docx | LEGALEASE-00080792-LEGALEASE-00080793 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 9082 | McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981 | 25T+113 | The Kilpatricks assert that the threshold question of whether the parties agreed to binding arbitration is purely a matter of contract to be determined according to state law. The Kilpatricks contend that if we construe the warranty according to Louisiana law, the federal policy favoring arbitration would not apply and that a state policy requiring that ambiguities in a document be resolved against the sophisticated drafter would control. The difficulty with this argument is that the Federal Arbitration Act (FAA), 9 U.S.C. " 2, declares that written agreements to arbitrate are enforceable when contained in a contract involving interstate commerce, see Allied"Bruce Terminix Companies, Inc. v. Dobson, """ U.S. """", 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), and the Kilpatricks' warranty certainly falls within this category. The Supreme Court has explained that, in construing an arbitration agreement within the scope of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 626 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). That is, the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and that body of federal law requires that, "in applying general state-law principles of contract interpretation to the interpretation of an agreement within the scope of the Act, ... due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Information Sciences, Inc. v. Stanford University, 489 U.S. 468, 475"76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989). We think that this "federal policy favoring | Federal policy favoring arbitration under Federal Arbitration Act (FAA) covers more than simply substantive scope of arbitration clause-whether claims were properly submitted to arbitration-and encompasses expectation that such procedures will be binding. 9 U.S.C.A. S 2. | Does federal policy cover more than the substantive scope of the arbitration clause? | 001200.docx | LEGALEASE-00118435-LEGALEASE-00118437 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 9083 | State ex rel. Helsel v. Bd. of Comm'rs of Cuyahoga Cty., 79 N.E.2d 698 | 148+1 | The issue here considered may be resolved by determining whether zoning restrictions of municipalities are effective to prevent a county from using property for the public purpose for which it has been taken under the power of eminent domain. The right of eminent domain comprehends the power to use, as well as the power to take. To suppose that zoning ordinances may limit or prevent the public use for which land is taken is to invest municipalities with power to restrict the exercise of the power of eminent domain. The nature of this power is defined in 29 C.J.S., Eminent Domain, " 2, p. 777, as follows:"Eminent domain is an inherent and necessary attribute of sovereignty, existing independently of constitutional provisions and superior to all property rights. "Again at page 779 of the same text it is stated:"Such right antedates constitutions and legislative enactments, and exists independently of constitutional sanction or provisions, which are only declaratory of previously existing universal law. The right can be denied or restricted only by fundamental law, and is "a right inherent in society," and superior to all property rights.' | The right of eminent domain antedates constitutions and legislative enactments, and exists independently of constitutional sanction or provisions, which are only declaratory of previously existing universal law, and the right can be denied or restricted only by fundamental law and is inherent in society and superior to all property rights. | Is the power of eminent domain a sovereign right? | 001267.docx | LEGALEASE-00118344-LEGALEASE-00118345 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9084 | In re Mineral Res. Int'l, 565 B.R. 684 | 241+55(1) | "Generally, a cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." However, there is an exception to this general rule under Utah law. In defamation cases, the one-year statute of limitations does not begin to run until the defamatory statement "is known or is reasonably discoverable by the plaintiff." But a statement in an aggregate publication"one that is distributed to multiple persons, such as a single edition of a book, newspaper, or magazine"is reasonably discoverable as a matter of law when it is first published and widely disseminated to the public. This is known as the "single publication rule," under which an "aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred." As the age of mass communication advanced, the single publication rule displaced the common law multiple publication rule, which provided that "each communication of a defamatory statement to a third person constituted a separate publication giving rise to a new cause of action." If that rule were applied to mass communications, it would result in several negative consequences, including "permit[ting] a multiplicity of actions, leading to potential harassment and excessive liability, and draining of judicial resources," as well as the "potential for endless retriggering of the statute of limitations." As a result, the single publication rule has been applied consistently to mass communications, including printed media and more modern forms of publication such as radio and television broadcasts. Over the past two decades, courts have begun to address whether it should be extended to the most ubiquitous modern form of publication"the Internet. | Under Utah law, pursuant to the common law "multiple publication rule," each communication of a defamatory statement to a third person constituted a separate publication giving rise to a new cause of action. | What is the multiple publication rule in defamation law? | 001321.docx | LEGALEASE-00118400-LEGALEASE-00118402 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 9085 | Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370 | 231H+1 | We turn then to the questions of where "public policy" may be found and how it may be recognized and articulated. As the expressions of our founders and those we have elected to our legislature, our state's constitution and statutes embody the public conscience of the people of this state. It is thus in furtherance of their interests to hold that an employer may not with impunity violate the dictates of public policy found in the provisions of our statutory and constitutional law. | Employer may not with impunity violate dictates of public policy found in provisions of statutory law, constitutional law, and common law. | Can an employer or an employee with impunity violate the dictates of public policy in the statutory or constitutional provisions? | 001367.docx | LEGALEASE-00118100-LEGALEASE-00118101 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9086 | Netherwood v. Am. Fed'n of State, Cty. & Mun. Employees, Local 1725, 53 Mass. App. Ct. 11 | 237+51(1) | Defamation. There was evidence sufficient to permit the jury to find that Tuttle was authorized by AFSCME to send the letter to and meet with Sayer. See Restatement (Second) of Agency " 254 (1958). However, when, as here, the "union acts for some arguably job-related reason and not out of pure social or political concerns, a "labor dispute" exists." See Tosti v. Ayik, 386 Mass. 721, 723, 437 N.E.2d 1062 (1982), quoting from Hasbrouck v. Sheet Metal Workers Local 232, 586 F.2d 691, 694 n. 3 (9th Cir.1978).The term "labor dispute" is to be "broadly and liberally construed," and "defamatory statements made in the context of a labor dispute are actionable only if made with knowledge of their falsity or with reckless disregard of the truth.... In other words, State courts may grant relief in such defamation actions only if the defamatory statements were made with actual malice, as defined in New York Times Co. v. Sullivan, 376 U.S. 254, 279-280 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964)." See Tosti v. Ayik, supra (internal citations and quotations omitted). | The term "labor dispute" is to be broadly and liberally construed, and defamatory statements made in the context of a labor dispute are actionable only if made with knowledge of their falsity or with reckless disregard of the truth; in other words, state courts may grant relief in such defamation actions only if the defamatory statements were made with actual malice. | How does the courts construe the term labor dispute? | 001383.docx | LEGALEASE-00118200-LEGALEASE-00118201 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 9087 | Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564 | 249+0.5 | We are referred to no case exactly in point. The tort of malicious prosecution is Sui generis. The tortious act is committed ordinarily by the filing of a criminal complaint with malice and without probable cause. "The Essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge." Earl v. Winne, 14 N.J. 119, 134, 101 A.2d 535, 543 (1953). Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. But the accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor. Ibid. In addition to the proof of the termination in his favor, "the plaintiff must adduce affirmative proof * * * tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt." Id., at p. 135, 101 A.2d, at p. 543. Thus, although a favorable termination of the criminal proceeding is a condition precedent to institution of the action, the "essence" of the tort is the wrongful conduct in making the criminal charge. Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination. Lowe v. Wartman, 47 N.J.L. 413, 1 A. 489 (Sup.Ct.1885); MacLaughlin v. Lehigh Valley R.R. Co., 93 N.J.L. 263, 108 A. 309 (Sup.Ct.1919); Kearney v. Mallon Suburban Motors, Inc., 23 N.J.Misc. 83, 41 A.2d 274 (Cir.Ct.1945), affirmed 135 N.J.L. 457, 52 A.2d 692 (E. & A.1947); Mayflower Industries v. Thor Corp., 15 N.J.Super. 139, 148, 83 A.2d 246 (Ch.Div.1951), affirmed 9 N.J. 605, 89 A.2d 242 (1952). | Although a favorable termination of the criminal proceeding is a condition precedent to the institution of action for malicious prosecution, the essence of the tort is the wrongful conduct in making the criminal charge. | What is the essence of a cause of action for malicious prosecution? | 001820.docx | LEGALEASE-00118204-LEGALEASE-00118205 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9088 | Indian Educators Fed'n Local 4524 of Am. Fed'n of Teachers, AFL-CIO v. Kempthorne, 541 F. Supp. 2d 257 | 209+109 | What is unique about this case, though, is that it involves American Indian law. "[T]he standard principles of statutory construction do not have their usual force in cases involving Indian law." Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). When construing statutes that address Indian law, the courts in this Circuit recognize that the Chevron principle of deference to administrative interpretations is subjugated by the "long-standing canon that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." " Albuquerque Indian Rights, 930 F.2d at 58 (quoting Blackfeet Tribe of Indians, 471 U.S. at 766, 105 S.Ct. 2399); see also Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1441 (D.C.Cir.1988). To be sure, the D.C. Circuit has noted that this canon has "special strength." Albuquerque Indian Rights, 930 F.2d at 59. This canon owes its strength in part to the "distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people." Seminole Nation v. United States, 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942). Thus, "[t]he Supreme Court has recognized that this "overriding duty" requires that where the Department of the Interior (specifically the BIA) has traditionally expressed one position to Congress and the Indian tribes, "it is essential that the legitimate expectations of ... Indians not be extinguished by what amounts to an unpublished ad hoc determination."" Albuquerque Indian Rights, 930 F.2d at 58. | Standard principles of statutory construction do not have their usual force in cases involving Indian law, but rather, when construing statutes that address Indian law, the Chevron principle of deference to administrative interpretations is subjugated by the long-standing canon that statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit. | Will the courts construe Indian law liberally? | Indians - Memo 1 - MS_62209.docx | ROSS-003279449-ROSS-003279451 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9089 | Bodi v. Shingle Springs Band of Miwok Indians, 832 F.3d 1011 | 209+235 | There are only two ways in which a tribe may lose its immunity from suit. Congress may abrogate tribal immunity, because, "[a]s dependents, the tribes are subject to plenary control by Congress." Bay Mills, 134 S.Ct. at 2030. Or, of relevance to this appeal, a tribe may itself waive immunity. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe (Potawatomi), 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). It is well settled that "a waiver of [tribal] sovereign immunity "cannot be implied but must be unequivocally expressed." " Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. 1670 (quoting United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). That expression must also manifest the tribe's intent to surrender immunity in "clear" and unmistakable terms. C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe, 532 U.S. 411, 418, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001) (quoting Potawatomi, 498 U.S. at 509, 111 S.Ct. 905). Thus, absent a clear and unequivocally expressed waiver by a tribe or congressional abrogation, "[s]uits against Indian tribes are ... barred." Potawatomi, 498 U.S. at 509, 111 S.Ct. 905; see also Bay Mills, 134 S.Ct. at 2030"31 ("[W]e have time and again treated the "doctrine of tribal immunity [as] settled law" and dismissed any suit against a tribe absent congressional authorization (or a waiver)." (second alteration in original) (quoting Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 756, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998))). | There are only two ways in which an Indian tribe may lose its immunity from suit: Congress may abrogate tribal immunity, because, as dependents, the tribes are subject to plenary control by Congress, or a tribe may itself waive immunity. | What are the instances in which an Indian tribe can lose its immunity from a suit? | 019460.docx | LEGALEASE-00118300-LEGALEASE-00118302 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9090 | Greenstone v. Klar, 69 N.Y.S.2d 548 | 289+408 | "A partnership is defined to be a contract of two or more persons, to place their money, effects, labor or skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions (3 Kent's Com. 23)." Pattison v. Blanchard, 5 N.Y. 186. | A "partnership" is a contract of two or more persons to place their money, effects, labor, or skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions. | Is it necessary for a business to be lawful to form a partnership? | Partnership - Memo 29 - JS_62228.docx | ROSS-003292705-ROSS-003292708 | SA, Sub | 0.22 | 0 | 0 | 1 | 1 | |
| 9091 | PPL Energyplus v. Nazarian, 974 F. Supp. 2d 790 | 145+11.3(1) | In response to the Attleboro decision, Congress enacted the Federal Power Act ("FPA") in 1935, which "closed the "Attleboro gap" by authorizing federal regulation of interstate, wholesale sales of electricity"the precise subject matter beyond the jurisdiction of the States in Attleboro." New York v. F.E.R.C., 535 U.S. 1, 20, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002). Specifically, the FPA gave the Federal Power Commission, the predecessor agency to FERC, jurisdiction over the regulation of interstate wholesale sales of electricity and of interstate transmissions of electric energy. See 16 U.S.C. " 824(a); New York, 535 U.S. at 20"21, 122 S.Ct. 1012. | Order by Maryland Public Service Commission (PSC) directing Maryland utilities to enter into contract for differences with generator involving construction of new generation facility regulated field that was occupied by Federal Power Act (FPA), which conferred on Federal Energy Regulatory Commission (FERC) exclusive jurisdiction over setting wholesale electric energy and capacity rates or prices, and thus was preempted by FPA and void under Supremacy Clause; order established price ultimately received by generator for its actual physical energy and capacity sales, and although Maryland retained traditional state authority to regulate development, location, and type of power plants within its borders, after generator physically came into existence and operation and participated in wholesale electric energy market, prices or rates received by generator in exchange for wholesale energy and capacity sales were within sole purview of federal government. U.S.C.A. Const. Art. 6, cl. 2; Federal Power Act, SS 205(e), 206(a), 16 U.S.C.A. SS 824d(e), 824e(a). | Is the jurisdiction of the Federal Energy Regulatory Commission (FERC) over the sale of electricity specifically confined to the wholesale market? | 000909.docx | LEGALEASE-00118609-LEGALEASE-00118611 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 9092 | United States v. May, 625 F.2d 186 | 146+27 | The point of both Morissette and Denmon, however, is that specific intent is a necessary element that must be alleged in the indictment; neither case required a particular verbal formula. In our view, the addition of the word "willfully" to the statutory language of "knowingly" is sufficient to convey the allegation that the defendant acted with specific intent. See O'Malley v. United States, 378 F.2d 401, 404 (1st Cir.), cert. denied, 389 U.S. 1008, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967) ("The words "willfully and knowingly" amply convey the necessary element of mens rea."). | Addition of word "willfully" to statutory language of "knowingly" in indictment alleging that defendant, a former adjutant general of Iowa National Guard, did willfully and knowingly embezzle and convert to his own use property and other things of value of United States was sufficient to convey necessary allegation that defendant acted with specific intent, even though defendant contended that indictment should have contained additional allegation that he acted "unlawfully." 18 U.S.C.A. S 641. | Do the words willfully and knowingly amply convey the necessary element of mens rea? | Embezzlement - Memo 50 - JS.docx | LEGALEASE-00005973-LEGALEASE-00005974 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 9093 | State v. Hughes, 118 N.C. App. 573 | 146+30 | An indictment is invalid if it does not allege all of the essential elements of the offense. State v. Johnson, 77 N.C.App. 583, 584, 335 S.E.2d 770, 771 (1985). An indictment for embezzlement must allege ownership of the property in a person, corporation or other legal entity able to own property. State v. Ellis, 33 N.C.App. 667, 669, 236 S.E.2d 299, 301 (1977). When proof of ownership at trial varies from the allegation of ownership in the indictment, the indictment is invalid. State v. Brown, 263 N.C. 786, 140 S.E.2d 413 (1965); State v. Stinson, 263 N.C. 283, 139 S.E.2d 558 (1965); State v. Vawter, 33 N.C.App. 131, 136, 234 S.E.2d 438, 441 (1977). | Indictment for embezzlement must allege ownership of property in a person, corporation or other legal entity able to own property. | "Should an indictment for embezzlement allege ownership of the property in a person, corporation or other legal entity able to own property?" | Embezzlement - Memo 59 - JS.docx | ROSS-003288497 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9094 | Church of Scientology Int'l v. Time Warner, 932 F. Supp. 589 | 237+32 | The libel-proof plaintiff doctrine reasons that when a particular plaintiff's reputation for a particular trait is sufficiently bad, further statements regarding that trait, even if false and made with malice, are not actionable because, as a matter of law, the plaintiff cannot be damaged in his reputation as to that trait. See, e.g., Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 303 (2d Cir.1986) (holding that plaintiff's reputation regarding adultery rendered him libel proof as to allegations of adultery, even though allegations related to a time period when plaintiff was no longer married, and hence was no longer committing adultery), cert. denied, 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); Cardillo v. Doubleday & Co., Inc., 518 F.2d 638, 639"40 (2d Cir.1975) (holding that plaintiff, a habitual criminal, was libel proof as to allegations of criminal activity at issue, because his existing reputation created by past indictments and convictions could not be worsened by the alleged false statements). | "Libel-proof plaintiff doctrine" reasons that when particular plaintiff's reputation for particular trait is sufficiently bad, further statements regarding that trait, even if false and made with malice, are not actionable because, as matter of law, plaintiff cannot be damaged in his reputation as to that trait. | What is libel proof plaintiff doctrine in defamation cases? | 001305.docx | LEGALEASE-00118488-LEGALEASE-00118489 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9095 | J.K. ex rel. Kaplan v. Minneapolis Pub. Sch. (Special Sch. Dist. No. 1), 849 F. Supp. 2d 865 | 237+23.1 | Because the District is not communicating any stigmatizing information in connection with J.K.'s transfer, J.K. would have to rely on the doctrine of defamation by "compelled self-publication" to show reputational harm. Under this doctrine, even if a defendant does not communicate a defamatory statement to anyone, "if a defamed person was in some way compelled to communicate the defamatory statement to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled, then the defendant could be held liable for the defamation." Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 886 (Minn.1986). | Under doctrine of "defamation by compelled self-publication," even if defendant does not communicate defamatory statement to anyone, if defamed person was in some way compelled to communicate defamatory statement to third person, and if it was foreseeable to defendant that defamed person would be so compelled, then defendant could be held liable for defamation. | What is compelled self-publication in defamation law? | 001324.docx | LEGALEASE-00118456-LEGALEASE-00118457 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 9096 | In re Mineral Res. Int'l, 565 B.R. 684 | 241+55(1) | TMR's remaining argument on summary judgment is that the alleged defamatory statements in this case were republished and that the republications occurred within the one-year statute of limitations. Republication "is an exception to the single publication rule," and it "occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition." When a statement is republished, the statute of limitations runs anew from the date of republication."In the traditional print context, the critical consideration is not whether the substance of the statement has changed. Instead, the key factor is whether the speaker intended to and does reach a new audience."Illustrative examples of republication include publishing a second edition of a book, publishing a paperback edition of a book originally published in hardcover, rebroadcasting a television show, or giving a motion picture a second run in theaters. | Under Utah law, "republication" of an allegedly defamatory statement is an exception to the single publication rule, and it occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition. | Is republication an exception to the single publication rule? | 001326.docx | LEGALEASE-00118460-LEGALEASE-00118461 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9097 | Matter of Bd. of Cty. Comm'rs of Cty. of Arapahoe, 891 P.2d 952 | 307A+2 | The purpose of Rule 56(h) is,to allow the court to address issues of law which are not dispositive of a claim (thus warranting summary judgment) but which nonetheless will have a significant impact upon the manner in which the litigation proceeds. [Resolving such issues] will enhance the ability of the parties to prepare for and realistically evaluate their cases ... and allow the parties and the court to eliminate significant uncertainties on the basis of briefs and argument, and to do so at a time when the determination is thought to be desirable by the parties. | Purpose of rule authorizing court to enter order determining question of law is to allow court to address issues of law which do not decide claim but will have significant impact on litigation. Rules Civ.Proc., Rule 56(h). | Is the purpose of a motion for a determination as to a question of law to allow the court to address issues of law which are not dispositive of a claim? | Pretrial Procedure - Memo 8 - JS.docx | ROSS-003297853-ROSS-003297854 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 9098 | Int'l Sound Technicians of Motion Picture Broad. & Amusement Indus. Local 695 of Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U.S. & Canada v. Superior Court In & For Los Angeles Cty., 141 Cal. App. 2d 23 | 92+1117(1) | Fullerton's right to work is a right guaranteed him by the federal Constitution as well as by the Constitution of this state. 14th Amendment, U.S.Const.; Cal.Const., art. 1, "" 1 and 13; Bautista v. Jones, 25 Cal.2d 746, 749, 155 P.2d 343; James v. Marinship Corp., 25 Cal.2d 721, 731, 733, 155 P.2d 329, 160 A.L.R. 900.This right to work is not an absolute one but may be limited by an agreement between a union, acting as bargaining agent for all employees, and the employer, that membership in the union be a condition to employment. The union, however, cannot, by such an agreement, effect a closed shop and at the same time maintain a closed union. Bautista v. Jones, supra; James v. Marinship Corp., supra. If it attempts so to do and thus deprives a person of employment, it commits an actionable wrong against him, Restatement, Torts, sec. 810. | Constitutional right to work is not an absolute right but may be limited by agreement between union, acting as bargaining agents for all employees, and employer, that membership in union be condition of employment, but if the union, by such agreement, procures closed shop and at same time maintains a closed union, and thereby deprives a person of employment, it commits an actionable wrong against him. National Labor Relations Act, SS 1 et seq., 7, 8(a)(3), (b)(1, 2), 10 as amended 29 U.S.C.A. SS 151 et seq., 157, 158(a)(3), (b)(1, 2), 160; U.S.C.A.Const. Amend. 14; West's Ann.Const. art. 1, SS 1, 13. | Is the right to work absolute? | Labor and Employment - Memo 23 - VP.docx | LEGALEASE-00006048-LEGALEASE-00006049 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 9099 | W. Side Sanitary Dist. v. Land Conservation & Dev. Comm'n, 289 Or. 393 | 1.49E+45 | A Health Division order finding a danger to public health is not an action "with respect to programs affecting land use" to which the legislature intended ORS 197.180(1) to apply. The "program" required of the Health Division by ORS 222.870 and 222.880 involves a single factfinding procedure. When the Health Division must determine whether a danger to public health exists in a territory, it is concerned with current public health conditions and not with future land use implications. Statewide planning goals are of no assistance in determining whether a health hazard exists in a territory. We conclude, therefore, that the legislature did not intend, in either ORS 197.180(1) or ORS 222.880, that the Health Division consider planning goals when it determines whether a health hazard presently exists in an area. | Determination which was made by the Health Division of the Department of Human Resources on receiving a copy of resolution proposing that territory be annexed to city and which was to effect that a danger to public health existed in territory because of conditions which were conducive to propagation of communicable or contagious disease-producing organisms was not made with regard to land use planning for future growth and development, but was made with regard to fundamental concern for public safety and public health and, hence, was not an action "with respect to programs affecting land use" to which statewide planning goals were applicable. ORS 197.180(1), 222.880. | Is a Health Division order finding a danger to public health an action to programs affecting land use as intended by the legislature? | 001470.docx | LEGALEASE-00118649-LEGALEASE-00118650 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9100 | Tompkins v. City of New York, 50 F. Supp. 3d 426 | 249+42 | Qualified immunity is a defense to malicious prosecution claims. See Betts v. Shearman, 751 F.3d 78, 83 (2d Cir.2014). A police officer has qualified immunity from a malicious prosecution claim if the officer had "arguable probable cause" to charge the plaintiff with the crimes at issue. Jean v. Montina, 412 Fed.Appx. 352, 354 (2d Cir.2011) (summary order). Arguable probable cause to charge exists if there was arguable probable cause to arrest the plaintiff for the crimes in question, and no "new information learned subsequent to [the] arrest" made it " "manifestly unreasonable for the defendant officer to charge the plaintiff" with [those crimes]." Id. (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 572 (2d Cir.1996) (brackets omitted)); see also Johnson v. Constantellis, 221 Fed.Appx. 48, 50 (2d Cir.2007) (summary order) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined "by the discovery of some intervening fact." " (quoting Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir.2003))). | A police officer has qualified immunity from a malicious prosecution claim if the officer had arguable probable cause to charge the plaintiff with the crimes at issue; arguable probable cause to charge exists if there was arguable probable cause to arrest the plaintiff for the crimes in question, and no new information learned subsequent to the arrest made it manifestly unreasonable for the defendant officer to charge the plaintiff with those crimes. U.S.C.A. Const.Amend. 4. | When can a police officer assert qualified immunity defense in a malicious prosecution claim? | Malicious Prosecution - Memo 35 - ANG.docx | ROSS-003297982-ROSS-003297984 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 9101 | Illaraza v. HOVENSA LLC, 73 F. Supp. 3d 588 | 249+56 | Moreover, even if HOVENSA had initiated proceedings against plaintiffs, there is no evidence that HOVENSA did so without probable cause""the sine qua non of malicious prosecution." See Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir.2001). A plaintiff who raises a malicious prosecution claim has the burden of showing a lack of probable cause. The defendant need not prove that it had probable cause in order to prevail. Id. | A plaintiff who raises a malicious prosecution claim under Virgin Islands law has the burden of showing a lack of probable cause, and the defendant need not prove that it had probable cause in order to prevail. Restatement (Second) of Torts S653 (1977). | Who has the burden to establish lack of probable cause in a malicious prosecution action? | 001499.docx | LEGALEASE-00118663-LEGALEASE-00118664 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 9102 | Pearce v. E.F. Hutton Grp., 828 F.2d 826 | 25T+139 | Arbitration is fundamentally a creature of contract. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Federal Arbitration Act makes written agreements to arbitrate "valid, irrevocable, and enforceable" on the same terms as other contracts. 9 U.S.C. " 2. Whereas doubts about the meaning of a contract are generally to be resolved by reference to the intention of the parties, the federal policy favoring arbitration counsels that doubts about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral process. Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The rationale for this policy is at its strongest where the arbitration will be governed by procedures specifically tailored to the context from which the agreement to arbitrate arises, and will be conducted by arbitrators who are expert in the norms and practices of the relevant industry. Labor arbitration is one such context. The arbitration system of the New York Stock Exchange is another. | Whereas doubts about meaning of contract are generally to be resolved by reference to intention of parties, federal policy favoring arbitration counsels that doubts about intended scope of agreement to arbitrate be resolved in favor of arbitral process; rationale for this policy is strongest where arbitration will be governed by procedures specifically tailored to context from which agreement to arbitrate arises, and will be conducted by arbitrators who are expert in norms and practices of relevant industry. | Under what circumstances is the policy favoring arbitration is strongest? | 001668.docx | LEGALEASE-00118712-LEGALEASE-00118714 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 9103 | KKW Enterprises v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42 | 25T+113 | Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements. See Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The Supreme Court has observed that " "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered." " Id. (quoting Dean Witter Reynolds v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) (alteration in original). In harmony with that purpose, the Act declares "a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). | Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements. 9 U.S.C.A. S 1 et seq. | How do courts begin their analysis of a partys challenge to the enforcement of an arbitration agreement? | 001681.docx | LEGALEASE-00118725-LEGALEASE-00118726 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9104 | Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646, 584 F.3d 513 | 25T+113 | The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute. Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. Kirleis, 560 F.3d at 160 (citing Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir.2005)); China Minmetals, 334 F.3d at 281. This determination applies equally in domestic and international arbitration contexts. China Minmetals, 334 F.3d at 282 (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 152"56 (3d Cir.2001)). | The strong federal policy favoring arbitration does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute. | Does the strong federal policy favoring arbitration lead to automatic submission of disputes to arbitration? | Alternative Dispute Resolution - Memo 220 - RK.docx | ROSS-003285150-ROSS-003285151 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9105 | Parisi v. Goldman, Sachs & Co., 710 F.3d 483 | 25T+113 | The Supreme Court has consistently interpreted the FAA as establishing a "federal policy favoring arbitration agreements." CompuCredit Corp. v. Greenwood, """ U.S. """", 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) (internal quotation marks omitted); see also AT&T Mobility LLC v. Concepcion, """ U.S. """", 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." CompuCredit, 132 S.Ct. at 669 (internal quotation marks omitted); see also Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Moreover, even claims arising under a statute designed to further important social policies may be arbitrated because "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Gilmer, 500 U.S. at 28, 111 S.Ct. 1647 (emphasis added). | The federal policy favoring arbitration agreements applies even when the claims at issue are federal statutory claims, unless the Federal Arbitration Act's (FAA) mandate has been overridden by a contrary congressional command. 9 U.S.C.A. S 1 et seq. | Can arbitration agreements be enforced when the claims at issue are federal statutory claims? | Alternative Dispute Resolution - Memo 225 - RK.docx | ROSS-003285021-ROSS-003285023 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9106 | Moore v. Sipes, 85 Ark. App. 15 | 196+1 | Appellant argues first that the probate court had no jurisdiction in this case because jurisdiction was either in juvenile court, by way of a dependency and neglect or a Family In Need of Services (FINS) proceeding, or in chancery court by way of a custody proceeding. We disagree. Since the implementation of Amendment 80, circuit court jurisdiction includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. See Amendment 80, " 19(B)(1); Administrative Order No. 14, "" 1(a) and (b), 344 Appx. 747"48 (2001). By statute, a circuit court is now vested with jurisdiction to appoint a guardian. See Ark.Code Ann. " 28"65"107(a) (Supp.2003). Therefore, the circuit court in this case had subject-matter jurisdiction. Further, this case is not necessarily, as appellant argues, better suited for a juvenile or chancery proceeding. Probate proceedings, as well as juvenile and chancery proceedings, often concern matters of child custody and parental rights. Custody suits and guardianship petitions involving minors are similar in that each may limit parental rights and may award custody based on the best interest of the child. See generally Robins v. Arkansas Social Servs., 273 Ark. 241, 617 S.W.2d 857 (1981). See also 4 Lynn Wardle, et al., Contemporary Family Law " 41.05 at 49 (1988) (stating that "when a guardianship proceeding is contested, the court must resolve the dispute according to the best interest of the proposed ward. In this, it is similar to custody after divorce.") Thus, custody determinations may be made in both types of cases. In numerous instances, our courts have made what amount to custody determinations involving minors in the context of a guardianship proceeding. See, e.g., Blunt v. Cartwright, 342 Ark. 662, 30 S.W.3d 737 (2000); Bennett v. McGough, 281 Ark. 414, 664 S.W.2d 476 (1984); Hooks v. Pratte, 53 Ark.App. 161, 920 S.W.2d 24 (1996); In re Guardianship of Markham, 32 | Custody suits and guardianship petitions involving minors are similar in that each may limit parental rights and may award custody based on the best interest of the child. | Are custody and guardianship matters involving minors similar? | Child Custody - Memo 8 - ANG.docx | ROSS-003282486-ROSS-003282488 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 9107 | Wiggins v. City of Burton, 291 Mich. App. 532 | 148+2.1 | We next conclude that there remained a genuine issue of material fact concerning whether the City's installation of the drain itself constituted a taking of private property without just compensation. Both the United States and Michigan constitutions prohibit the taking of private property for public use without just compensation. U.S. Const., Am. V; Const. 1963, art. 10, " 2; Dorman v. Clinton Twp., 269 Mich.App. 638, 645, 714 N.W.2d 350 (2006). However, "[n]o precise formula exists" for determining whether a governmental invasion or intrusion constitutes a taking of private property. Hinojosa v. Dep't of Natural Resources, 263 Mich.App. 537, 548, 688 N.W.2d 550 (2004). Instead, several factors must be considered. Id. "Further, a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." Id. It has been said that "[a] plaintiff alleging a de facto taking or inverse condemnation must prove "that the government's actions were a substantial cause of the decline of his property's value" and also "establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." " Id., quoting Heinrich v. Detroit, 90 Mich.App. 692, 700, 282 N.W.2d 448 (1979). "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property." Charles Murphy, MD, PC v. Detroit, 201 Mich.App. 54, 56, 506 N.W.2d 5 (1993). | While there is no exact formula to establish a de facto taking as required for inverse condemnation claim, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property. | Is there an exact formula to establish a de facto taking? | Eminent Domain -Memo 79-VP.docx | ROSS-003284321-ROSS-003284322 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9108 | Frith v. Sw. Ouachita Waterworks, 207 So. 3d 1121 | 106+136 | The manner in which plaintiffs couch their claims does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive. Daily Advertiser, supra. Furthermore, the fact that one party is a public utility does not consequentially divest the district court of original jurisdiction. Town of Sterlington v. Greater Ouachita Water Co., 49,315 (La. App. 2d Cir. 10/01/2014), 149 So.3d 952, writ denied, 14"2258 (La. 01/01/15), 157 So.3d 1111. However, that a party is a public utility makes La. Const. art. IV, " 21(B) possibly applicable. Id. | The fact that one party to an action is a public utility does not consequentially divest the district court of original jurisdiction. | Does the fact that one party is a public utility divest the district court of its original jurisdiction? | Public utilities - Memo 4- RM.docx | ROSS-003296623-ROSS-003296624 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9109 | Okkerse v. Howe, 521 Pa. 509 | 401+52(1) | Our Rules of Civil Procedure provide a plaintiff with options as to where to bring suit, and this Court has emphatically stated that the choice of forum by a plaintiff is entitled to weighty consideration. Walker v. Ohio River Co., 416 Pa. 149, 152, 205 A.2d 43, 43 (1964).Nevertheless, a plaintiff's choice of forum is not unassailable and the availability of a forum non conveniens challenge is a necessary counterbalance to insure fairness and practicality. See Ernest v. Fox Pool Corp., 341 Pa.Super. 71, 491 A.2d 154 (1985). Because, however, of the weight accorded to the plaintiff's original choice courts have held that he or she should not be deprived of the advantages presumed to come from that choice "unless the defendant clearly adduces facts that "either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience ... or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own private and public interest factors' [but] unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Reyno v. Piper Aircraft, Co., 630 F.2d 149, 159 (3d Cir.1980), citing Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) and Gulf Oil v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); cited with approval in Korn v. Marvin Fives Food Equipment, 362 Pa.Super. 559, 563, 524 A.2d 1380, 1384 (1987). | Plaintiff's choice of forum is not unassailable and availability of forum non conveniens challenge is necessary counterbalance to insure fairness and practicality. Rules Civ.Proc., Rule 1006, 42 Pa.C.S.A. | Is the doctrine of forum non conveniens a necessary counterbalance to insure fairness and practicality in choosing venue? | Venue - Memo 40 - RM.docx | ROSS-003324572-ROSS-003324574 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9110 | Kurtz v. City of Shrewsbury, 245 F.3d 753 | 249+30 | An action for malicious prosecution in Missouri must show that the prosecution lacked probable cause to survive summary judgment. See Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 807 (Mo.1984). Malicious prosecution also requires a showing that defendant's conduct was actuated by malice. Id. Legal malice is defined as any improper motive, and thus, a plaintiff must prove that a defendant initiated prosecution for purposes other than bringing an offender to justice. Id. | "Legal malice," showing of which is required to prevail on malicious prosecution claim under Missouri law, is defined as any improper motive, and thus, a plaintiff must prove that a defendant initiated prosecution for purposes other than bringing an offender to justice. | How is legal malice established in a malicious prosecution claim? | 001830.docx | LEGALEASE-00118824-LEGALEASE-00118825 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 9111 | Brown v. Hyatt Corp., 128 F. Supp. 2d 697 | 25T+114 | Conversely, when contracts are held to not involve a maritime transaction or interstate commerce, they do not fall within the ambit of the FAA. See, e.g., Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 200"02, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (employment contract where there was no showing that person was working "in" commerce, was producing goods for commerce, or was engaging in activity that affected commerce could not have its arbitration clause enforced under the FAA's predecessor, the United States Arbitration Act). Moreover, some contracts are specifically written out of the FAA's purview. See, e.g., Herring v. Delta Air Lines, Inc., 894 F.2d 1020, 1023 (9th Cir.1989) (airline pilots' claim that airline was required to arbitrate seniority dispute under FAA was erroneous because, inter alia, the statute specifically excludes from coverage "contracts of employment"); see also 9 U.S.C. " 1 (defining "marine transactions" and "commerce" and setting forth exceptions). | When contracts are held not to involve a maritime transaction or interstate commerce, they do not fall within the ambit of Federal Arbitration Act (FAA). 9 U.S.C.A. S 2. | Does the Federal Arbitration Act (FAA) apply to contracts which do not involve maritime transactions or interstate commerce? | 002122.docx | LEGALEASE-00119082-LEGALEASE-00119084 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9112 | Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265 | 83+80.5 | The Federal Arbitration Act, " 2, provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2 (emphasis added). | Use in Federal Arbitration Act section, making enforceable a written arbitration provision in a contract evidencing a transaction involving commerce, of the words "evidencing" and "involving" does not restrict Act's application so as to allow a state to apply its antiarbitration law or policy. 9 U.S.C.A. S 2. | Are written arbitration provisions in contracts involving commerce enforceable under the Federal Arbitration Act (FAA)? | 002127.docx | LEGALEASE-00119087-LEGALEASE-00119088 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 9113 | Baltin v. Alaron Trading Corp., 128 F.3d 1466 | 170B+2235 | Federal courts and state courts have concurrent jurisdiction to enforce the FAA. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983). As courts have long held, however, the FAA does not confer subject matter jurisdiction on federal courts.Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA. The Supreme Court has stated: The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. " 1331 or otherwise. Id. at 25 n. 32, 103 S.Ct. at 942 n. 32 | Federal Arbitration Act (FAA) does not confer subject matter jurisdiction on federal courts; instead, federal courts must have independent jurisdictional basis to entertain cases arising under FAA. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) grant an independent basis of jurisdiction to federal courts? | 002149.docx | LEGALEASE-00119109-LEGALEASE-00119110 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9114 | Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 | 393+524 | We believe the theory to be erroneous. It confuses the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action. It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened. He must, therefore, allege conduct which is "illegal" in the sense that the respondent suggests. If he does not, he has not stated a cause of action. This is true whether the conduct complained of is sovereign or individual. In a suit against an agency of the sovereign, as in any other suit, it is therefore necessary that the plaintiff claim an invasion of his recognized legal rights. If he does not do so, the suit must fail even if he alleges that the agent acted beyond statutory authority or unconstitutionally. But, in a suit against an agency of the sovereign, it is not sufficient that he make such a claim. Since the sovereign may not be sued, it must also appear that the action to be restrained or directed is not action of the sovereign. The mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title does not meet that requirement. True, it establishes a wrong to the plaintiff. But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented | To maintain an action for specific relief, plaintiff must claim an invasion of his legal rights, either past or present, but in a suit against an agent of the United States, such a claim alone is not sufficient to take the case out of sovereign immunity, and plaintiff, in addition, must allege facts establishing that agent of United States, in committing the wrong, was not exercising powers delegated to him by the United States. | Is it a prerequisite to the maintenance of any action for specific relief that the plaintiff claims an invasion of his legal rights? | 002034.docx | LEGALEASE-00119417-LEGALEASE-00119418 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 9115 | In re Gorchev, 275 B.R. 154 | 51+3374(9) | None of the three torts for which the Debtor was adjudicated liable required a showing that the injury was willful or malicious within the meaning of " 523(a)(6). With respect to the defamation count, the Plaintiff states that it was required to prove (1) that the Debtor published a false statement, (2) that the Debtor did not act reasonably in determining the truth or falsity of the statement before publishing it, (3) that the publication was to someone other than the Plaintiff, and (4) that the statement caused injury to the Plaintiff's good name and reputation. There was no requirement of intent to injure (as opposed to intent to do the act that caused injury), and there was no requirement of "conscious disregard of duty." In fact, it was not necessary to prove that the Debtor knew his act to be false, or even that he acted recklessly. Negligence in ascertaining truth or falsity is all that was required, and that is not enough to make the resulting injury malicious. Therefore, the judgment on the defamation count does not establish either willfulness or malice. | District court's judgment on defamation count of judgment creditor's action against Chapter 7 debtor did not establish either willfulness or malice, as required to preclude debtor from relitigating those issues in judgment creditor's subsequent nondischargeability proceeding; for judgment creditor to prove defamation, there was no requirement of intent to injure, as opposed to intent to do the act that caused injury, there was no requirement of "conscious disregard of duty," it was not necessary for judgment creditor to prove that debtor knew his act to be false, or even that he acted recklessly, but, instead, all that was required was negligence in ascertaining truth or falsity, and that was not enough to make the resulting injury "malicious." Bankr.Code, 11 U.S.C.A. S 523(a)(6). | Is intent to injure a required element of a defamation claim? | 002100.docx | LEGALEASE-00119412-LEGALEASE-00119414 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 9116 | Brooks v. State, 178 Miss. 575 | 203+1333 | In a homicide case, the corpus delicti is: "1st. The fact of the death of the deceased; and 2nd. The fact of the existence of criminal agency as the cause of the death." Pitts v. State, 43 Miss. 472; Perkins v. State, 160 Miss. 720, 135 So. 357. Whether the criminal agency employed renders the crime committed thereby murder or a lesser offense is no part of the corpus delicti, but is for the determination of the jury on all the evidence. | Whether criminal agency, employed to cause death, renders crime committed thereby murder or lesser offense is no part of corpus delicti, but is for jury to determine on all evidence. | Does corpus delicti consist of two facts? | 002242.docx | LEGALEASE-00119300-LEGALEASE-00119302 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9117 | People v. Baker, 20 N.Y.3d 354 | 207+5 | In construing a criminal statute, a defendant "must be given the benefit of every reasonable doubt as to whether the statute was applicable to him." (In re Zerbe, 60 Cal.2d 666, 668, 36 Cal.Rptr. 286, 288, 388 P.2d 182, 184, 10 A.L.R.3d 840.) The sanctions of Penal Code section 285 apply to sexual relations only when, pursuant to Civil Code section 59, the act occurs "between parents and children, ancestors and descendants of every degree, and between brothers and sisters Of the half as well as the whole blood, and between uncles and nieces." (Emphasis added.) The phrase, "of the half as well as the whole blood" obviously refers to brothers and sisters. It cannot be interpreted to also modify "uncles and nieces' for it is a well established rule of construction that "relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases." (People v. Ortiz, 86 Cal.App.2d Supp. 937, 938, 195 P.2d 82, 84; also e.g., County of Los Angeles v. Graves, 210 Cal. 21, 26, 290 P. 444; Grant v. Hopsher, 257 A.C.A. 414, 422, 64 Cal.Rptr. 892; City of Santa Barbara v. Maher, 25 Cal.App.2d 325, 327, 77 P.2d 306.) It follows that the Legislature by expressly including relationships between brothers and sisters of the half blood and not so specifying as to more distant relatives *47 has evinced the intention to exclude such persons from the prohibitions of the statute. (State v. Bartley, 304 Mo. 58, 63, 263 S.W. 95; cf. In re Hubbard, 62 Cal.2d 119, 126"127, 41 Cal.Rptr. 393, 396 P.2d 809.) | Incest statute applies only when act occurs between parents and children, ancestors and descendants of every degree, and between brothers and sisters of half as well as whole blood, and between uncles and nieces. West's Ann.Pen.Code, S 285; West's Ann.Civ.Code, S 59. | Do incest laws apply to descendants? | 002270.docx | LEGALEASE-00119268-LEGALEASE-00119269 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9118 | Baltimore Gas & Elec. Co. v. Flippo, 112 Md. App. 75 | 386+2 | BGE is only partially right in relying on Murphy-one can commit a trespass by entering, intruding, or encroaching on personal property, and no tortious intent, i.e., intent to trespass, is required in order for one to be a trespasser. What is required, however, is volition, i.e., a conscious intent to do the act that constitutes the entry upon someone else's real or personal property. An involuntary entry onto another's property is not a trespass. See, e.g., Young v. Vaughan, 6 Del. 331, 1 Houst. 331 (1857) (act must be a conscious one to constitute trespass); Edgarton v. H.P. Welch Co., 321 Mass. 603, 74 N.E.2d 674 (1947) (unintended intrusion upon land does not constitute trespass); Wisconsin Power & Light Co. v. Columbia County, 3 Wis.2d 1, 87 N.W.2d 279 (1958); McDermott v. Sway, 78 N.D. 521, 50 N.W.2d 235 (1951) (when there is no intentional act voluntarily done there is no trespass); Feiges v. Racine Dry Goods, 231 Wis. 270, 285 N.W. 799 (1939) (when there is no intentional act, there is no trespass); Socony-Vacuum Oil Co. v. Bailey, 202 Misc. 364, 109 N.Y.S.2d 799 (N.Y.Sup.1952) (trespass requires an intentional act); Hudson v. Peavey Oil Co., 279 Or. 3, 566 P.2d 175 (1977) (liability for trespass will not be imposed for an unintentional trespass unless it arises out of defendant's negligence or an ultrahazardous activity); Texas-New Mexico Pipeline Co. v. Allstate Constr., 70 N.M. 15, 369 P.2d 401 (1962) (the act must be more than voluntary-it must be intentional to make one liable for trespass); Mountain States Tel. & Tel Co. v. Horn Tower Constr. Co., 147 Colo. 166, 363 P.2d 175 (1961); Gallin v. Poulou, 140 Cal.App.2d 638, 295 P.2d 958 (1956) (no liability for trespass unless it is intentional); Baker v. Newcomb, 621 S.W.2d 535 (Mo.Ct.App.1981) (liability for trespass if intent exists to do act); General Tel. Co. v. Bi-Co Pavers, Inc., 514 S.W.2d 168 (Tex.Ct.App.1974) (trespass requires an intentional act); Randall v. Shelton, 293 S.W.2d 559 (Ky.1956) (trespass requires intent); | While person can commit a trespass by entering, intruding, or encroaching on property without tortious intent, i.e., intent to trespass, there must be volition, i.e., conscious intent to do the act that constitutes the entry upon someone else's property; involuntary entry onto another's property is not a trespass. | Can involuntary or accidental entries upon another's land qualify as trespass? | 002312.docx | LEGALEASE-00119174-LEGALEASE-00119175 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9119 | Philadelphia Newspapers v. Bd. of Review, 397 N.J. Super. 309 | 392T+6(3) | The New Jersey Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71 is a remedial act, the "primary objective of [which] ... is to provide a cushion for the workers of New Jersey "against the shocks and rigors' of unemployment." Carpet Remnant Warehouse v. N.J. Dep't of Labor, 125 N.J. 567, 581, 593 A.2d 1177 (1991) (quoting Provident Inst. for Sav. in Jersey City v. Div. of Employment Sec., 32 N.J. 585, 590, 161 A.2d 497 (1960)). At the center of the UCL is the employer-employee relationship."Because the statute is remedial, its provisions [are to be] construed liberally, permitting a statutory employer-employee relationship to be found even though that relationship may not satisfy common-law principles." Ibid. | Because the Unemployment Compensation Law (UCL) is remedial, its provisions are to be construed liberally, permitting a statutory employer-employee relationship to be found even though that relationship may not satisfy common-law principles. N.J.S.A. 43:21-1. | Are statutes governing the employer-employee relationship remedial in nature and must be liberally construed? | 003253.docx | LEGALEASE-00119214-LEGALEASE-00119215 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 9120 | Peabody v. Time Warner Cable, 59 Cal. 4th 662 | 231H+2251 | We apply settled principles when construing statutes and begin with the text. If it "is clear and unambiguous our inquiry ends." (Murphy v. Kenneth Cole Productions, Inc. (2007) 40 Cal.4th 1094, 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284 (Murphy ).) "[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees." (Ibid.; see Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, 1026"1027, 139 Cal.Rptr.3d 315, 273 P.3d 513 (Brinker ).) To that end, we narrowly construe exemptions against the employer, "and their application is limited to those employees plainly and unmistakably within their terms." (Nordquist v. McGraw"Hill Broadcasting Co. (1995) 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221; see Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 794"795, 85 Cal.Rptr.2d 844, 978 P.2d 2.) We employ these same principles to wage orders promulgated by the Industrial Welfare Commission (IWC).3 (Brinker, at p. 1027, 139 Cal.Rptr.3d 315, 273 P.3d 513.) | In construing statutes governing conditions of employment or wage orders promulgated by the Industrial Welfare Commission (IWC), courts narrowly construe exemptions against the employer, and their application is limited to those employees plainly and unmistakably within their terms. | Are statutes governing conditions of employment construed broadly in favor of protecting employees? | 003255.docx | LEGALEASE-00119225-LEGALEASE-00119227 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9121 | Commonwealth Edison Co. v. Illinois Commerce Comm'n, 2014 IL App (1st) 130302 | 145+11.3(1) | In establishing the rates that a public utility can charge its customers, the Commission considers the company's operating costs, rate base, and allowed rate of return. Commonwealth Edison Co. v. Illinois Commerce Commn., 322 Ill.App.3d 846, 849, 256 Ill.Dec. 143, 751 N.E.2d 196 (2001) (citing Citizens Utilities Company of Illinois, 124 Ill.2d at 200, 124 Ill.Dec. 529, 529 N.E.2d 510). | In establishing the rates that a public utility can charge its customers for electricity, the Commission considers the company's operating costs, rate base, and allowed rate of return. | How does the Commission establish the rates that a public utility can charge its customers? | Electricity - Memo 37 - RK.docx | ROSS-003329335-ROSS-003329337 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9122 | A & D Auto Sales v. United States, 748 F.3d 1142 | 148+2.1 | We turn next to the alleged economic impact of the government action. In order to establish a regulatory taking, a plaintiff must show that his property suffered a diminution in value or a deprivation of economically beneficial use. This is equally true under the categorical test of Lucas v. South Carolina Coastal Council and the Penn Central test. Lucas, 505 U.S. at 1015, 112 S.Ct. 2886 (plaintiff must show loss of "all economically beneficial or productive use"); Penn Cent., 438 U.S. at 124, 98 S.Ct. 2646 (court weighs "economic impact of the regulation on the claimant"); see also Brown, 538 U.S. at 240 n. 11, 123 S.Ct. 1406 ("[J]ust compensation for a net loss of zero is zero."). We have measured the diminution in value of the plaintiff's property by ""the change, if any, in the fair market value caused by the regulatory imposition," " where the alleged taking is permanent rather than temporary. Forest Props., Inc. v. United States, 177 F.3d 1360, 1367 (Fed.Cir.1999) (quoting Fla. Rock Indus., Inc. v. United States, 18 F.3d 1560, 1567 (Fed.Cir.1994)). "[I]f the regulatory action is not shown to have had a negative economic impact on the [plaintiff's] property, there is no regulatory taking." Hendler v. United States, 175 F.3d 1374, 1385 (Fed.Cir.1999). | In order to establish a regulatory taking, a plaintiff must show that his property suffered a diminution in value or a deprivation of economically beneficial use; this is equally true under the categorical test of Lucas v. South Carolina Coastal Council and the Penn Central test. U.S.C.A. Const.Amend. 5. | What must be shown by the plaintiff in order to establish a regulatory taking? | 002391.docx | LEGALEASE-00119492-LEGALEASE-00119493 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9123 | Walkenhorst v. State, Dep't of Roads, 253 Neb. 986 | 148+95 | In Leffelman v. City of Hartington, 173 Neb. 259, 262, 113 N.W.2d 107, 109 (1962), we referred to the proper measure of damages pursuant to article I, " 21, by stating: " " "The words, "or damaged," in Article I, section 21, of the Constitution of Nebraska, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property." ' " Thus, we recognized that it is the diminution in market value which establishes the damages under article I, " 21, and that "consequential damage" defines the kind of damage that is compensable under article I, " 21; it does not define the measure of damages. See, also, NJI2d Civ. 13.08 comment. We have consistently held that the damages in an eminent domain case are measured based on market value, whether it be fair market value of the property actually acquired or the decrease in market value of the remaining property. | Words "or damaged," in provision of State Constitution addressing damages for which condemnor is liable, includes all actual damages resulting from exercise of right of eminent domain which diminish market value of private property. Const. Art. 1, S 21. | What does the word damage include in relation to eminent domain? | Eminent Domain -Memo 94-VP.docx | ROSS-003283014-ROSS-003283017 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9124 | Westgate Recreation Ass'n v. Papio-Missouri River Nat. Res. Dist., 250 Neb. 10 | 148+133 | We agree that there are three generally accepted approaches used for the purpose of valuing real property in eminent domain cases: (1) the market data approach, or comparable sales method, which establishes value on the basis of recent comparable sales of similar properties; (2) the income, or capitalization of income, approach, which establishes value on the basis of what the property is producing or is capable of producing in income; and (3) the replacement or reproduction cost method, which establishes value upon what it would cost to acquire the land and erect equivalent structures, reduced by depreciation. Ellis v. City of Kansas City, 225 Kan. 168, 589 P.2d 552 (1979); Correia v. New Bedford Redevelopment Authority, 375 Mass. 360, 377 N.E.2d 909 (1978); Manchester Housing Auth. v. Reingold, 130 N.H. 598, 547 A.2d 219 (1988); 4 Nichols' The Law of Eminent Domain " 12C.01[3] (rev.3d ed.1995). Each of these approaches is but a method of analyzing data to arrive at the fair market value of the real property as a whole. Correia, supra.We also agree that the unit rule is applicable whenever the market data approach is employed, Ellis, supra, and that this rule requires that the value of improved property be considered as a whole, without the assignment of separate costs for the land and individual improvements, Dept. of Transp. v. First Bank, 260 Ill.App.3d 490, 197 Ill.Dec. 686, 631 N.E.2d 1145 (1992). See, Ellis, supra; Milwaukee & Sub. Transp. v. Milwaukee County, 82 Wis.2d 420, 263 N.W.2d 503 (1978); Alaska State Housing Authority v. DuPont, 439 P.2d 427 (Alaska 1968). | Unit rule for valuing property in condemnation case, requiring that the value of improved property be considered as a whole, without the assignment of separate costs for the land and individual improvements, is applicable only for the market data approach to valuation. | What is the requirement of unit rule under eminent domain? | 001910.docx | LEGALEASE-00119634-LEGALEASE-00119635 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9125 | Dep't of Transp. v. Rowe, 353 N.C. 671 | 148+146 | The Court of Appeals held that defendants did not receive just compensation because the statute allows the jury to consider "general benefits" when it calculates just compensation for a partial taking. "General benefits" are defined as increases in the value of land "which arise from the fulfillment of the public object which justified the taking [and] which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment." Kirkman v. State Highway Comm'n, 257 N.C. 428, 434, 126 S.E.2d 107, 112 (1962) (citations omitted); see also 3 Julius L. Sackman, Nichols on Eminent Domain " 8A.02[4][a] (rev.3d ed.2000). Examples include the rise in property value due to increased traffic flow, an aesthetic upgrading of a neighborhood, or more convenient parking. 3 Nichols on Eminent Domain " 8A.02 [4][a]. In contrast, "special benefits" are increases in the value of land "which arise from the peculiar relation of the land in question to the public improvement." Kirkman, 257 N.C. at 433, 126 S.E.2d at 112; see also 3 Nichols on Eminent Domain " 8A.02[4][b]. An example is the rise in property value due to newly acquired frontage on a public street. 3 Nichols on Eminent Domain " 8A.02[4][b] | "General benefits," which jury may consider when it calculates just compensation for a partial taking for construction of highway, are increases in value of land which arise from fulfillment of public object which justified the taking and which result from enjoyment of facilities provided by new public work and from increased general prosperity resulting from such enjoyment. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 19; G.S. S 136-112(1). | What are general benefits under taking? | 001915.docx | LEGALEASE-00119642-LEGALEASE-00119643 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9126 | Application of Borough of Saddle River, 71 N.J. 14 | 317A+101 | Petitioner argues that a scavenger's contract, filed with the PUC after it has been signed, constitutes a tariff in the sense intended by N.J.S.A. 40A:11"5(1)(f). We think, however, that there is a distinction between the terms "tariff" and "contract" as applied to public utilities. A tariff is a published schedule of rates, filed by a public utility, and thereafter, in the absence of successful challenge, applicable equally to all customers. Its application may or may not have been preceded by a rate-making hearing. As our Appellate Division has recently pointed out, such a tariff is not a mere contract. It is the law, and its provisions are binding on a customer whether he knows of them or not. Essex County Welfare Board v. New Jersey Bell Telephone Co., 126 N.J.Super. 417, 421"22, 315 A.2d 40 (App.Div.1974). A contract, on the other hand, is an agreement individually negotiated between a utility and a particular customer, with rates that may differ according to circumstances. The distinction was well expressed by Mr. Justice Harlan in United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra, 350 U.S. 332, 338"39, 76 S.Ct. 373, 378, 100 L.Ed. 373, 383"84 (1956):In construing the (Natural Gas) Act, we should bear in mind that it evinces no purpose to abrogate private rate contracts as such. To the contrary, by requiring contracts to be filed with the (Federal Power) Commission, the Act expressly recognizes that rates to particular customers may be set by individual contracts. In this respect, the Act is in marked contrast to the Interstate Commerce Act, which in effect precludes private rate agreements by its requirement that the rates to all shippers be uniform, a requirement which made unnecessary any provision for filing contracts. (Citations omitted) The Commission in its brief recognizes this basic difference between the two Acts and notes the differing natures of the industries which gave rise to it. The vast number of retail transactions of railroads made policing of individual transactions | A "tariff" is a published schedule of rates, filed by public utility, and thereafter, in absence of successful challenge, applicable equally to all customers; such a tariff is not mere contract, it is the law and its provisions are binding on customer whether he knows of them or not. | Is a tariff filed by a public utility applicable equally to all customers? | Public utilities - Memo 35 - RM.docx | ROSS-003284912-ROSS-003284914 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 9127 | Atkins Pickle Co. v. Burrough-Uerling-Brasuell Consulting Engineers, 275 Ark. 135 | 401+4 | Which allegation governs? We have no case in point, but the decisions elsewhere reach a common-sense result, that when a complaint asserts both local and transitory causes of action the venue is determined by the real character of the action, by its principal purpose or object, by the principal right being asserted. Haines v. Lamb, 206 Cal.App.2d 322, 24 Cal.Rptr. 146 (1962); McMullen v. McMullen, 122 So.2d 626 (Fla.App., 1960); Quinn v. Butler Bros., 167 Minn. 463, 209 N.W. 270 (1926); Bee County Coop. Assn. v. Dominy, 489 S.W.2d 418 (Tex.Civ.App., 1972); Lake v. Reid, 252 S.W.2d 978 (Tex.Civ.App., 1952); Fond du Lac Plaza v. H. C. Prange Co., 47 Wis.2d 593, 178 N.W.2d 67 (1970). The wisdom of the rule was shown in a child custody case in which the mother tried to establish venue in her own county by alleging that the father had committed a trespass on land in wrongfully taking the child from her possession. The appellate court affirmed the trial judge's conclusion that the trespass was only an incident to the mother's cause of action, not the basis for it. Boyd v. Crabb, 205 S.W.2d 606 (Tex.Civ.App., 1947). | When a complaint asserts both local and transitory causes of action, venue is determined by real character of the action, by its principal purpose or object, by the principal right being asserted. | How is venue determined when a transitory cause of action is combined with a local cause of action in a complaint? | 001992.docx | LEGALEASE-00119597-LEGALEASE-00119598 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9128 | State v. Nesbitt, 79 Idaho 1 | 200+7(2) | Prior to 1893 all roads used as such for a period of five years are defined as highways. Sec. 851, Rev.Stat. of 1887. Under the statute as now in effect, Sec. 40-103, I.C., and in effect so far as pertinent here since 1893, roads may be laid out and recorded as highways by order of the Board of Commissioners, and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the Board of Commissioners are highways. Where the public uses a highway or road for the statutory period of five years and it is worked and kept up at public expense, a highway is established by prescription. Recording of it as such by the Board of County Commissioners is not necessary. Meservey v. Gulliford, 14 Idaho 133, 93 P. 780. | Where the public uses a highway or road for statutory period of five years and it is worked and maintained at public expense, a highway is established by prescription without the necessity of highway being recorded as such by board of county commissioners. I.C. S 40-103. | "Does a road become a public road or a highway, if is used by the public for a period of five years, and is kept up or maintained at the expense of the public?" | Highways - Memo 2 - MS.docx | ROSS-003314840-ROSS-003314841 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9129 | Thormodsgard v. Wayne Twp. Bd. of Sup'rs, 310 N.W.2d 157 | 200+79.1 | This Court has held that vacation or abandonment of a legally established public way can only occur by some lawful method. Abandonment of a section line right-of-way cannot be established solely by evidence that the highway has never been open, improved, or traveled. Costain v. Turner County, 72 S.D. 427, 36 N.W.2d 382 (1949); Pederson v. Canton Township, 72 S.D. 332, 34 N.W.2d 172 (1949). The appropriate governing board must act affirmatively to vacate or abandon a section line right-of-way. Pederson, supra; Keen v. Board of Supervisors of Fairview Township, 8 S.D. 558, 67 N.W. 623 (1896). The burden of proof is on the one obstructing a lawfully established public way to show vacation or abandonment. Aasland v. County of Yankton, 280 N.W.2d 666 (S.D.1979); Haley v. City of Rapid City, 269 N.W.2d 398 (S.D.1978); Lowe v. East Sioux Falls Quarry, 25 S.D. 393, 126 N.W. 609 (1910). | Abandonment of section line right-of-way cannot be established solely by evidence that highway has never been open, improved or traveled, but rather, appropriate governing board must act affirmatively to vacate or abandon section line right-of-way. SDCL 31-3-1, 31-18-1. | Can the abandonment of a section line highway be established by evidence that the highway has never been open or improved? | Highways - Memo 4 - MS.docx | ROSS-003298170-ROSS-003298171 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9130 | Mercadante v. XE Servs., 78 F. Supp. 3d 131 | 25T+117 | Section 2 of the Federal Arbitration Act ("FAA") "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws." Haire, 925 F.2d at 130 (citing Preston v. Ferrer, 552 U.S. 346, 360"63, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent"A"Center, 561 U.S. at 70, 130 S.Ct. 2772. Under section 2, such an agreement is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. | To the extent there are conflicts between state arbitration law and the Federal Arbitration Act (FAA) that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. 9 U.S.C.A. S 2. | Which law prevails when there is a conflict between state arbitration law and the Federal Arbitration Act? | Alternative Dispute Resolution - Memo 282 - RK.docx | ROSS-003283266-ROSS-003283268 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9131 | Mawson v. Vess Beverage Co., 173 S.W.2d 606 | 386+14 | The general rule with respect to the unauthorized entry by a person upon the land of another is stated in 63 C.J. "Trespass," " 13(2), p. 895, as follows: "Every unauthorized entry is a trespass, regardless of the degree of force used, even if no damage is done, or the injury is slight * * *" | Every unauthorized entry is a "trespass", regardless of degree of force used, even if no damage is done, or the injury is slight. | "Can every unauthorized entry be a trespass, regardless of degree of force used?" | Trespass - Memo 81 - TH.docx | ROSS-003312679-ROSS-003312680 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 9132 | B.L. Harbert Int'l v. Hercules Steel Co., 441 F.3d 905 | 25T+114 | The laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less. This case is a good example of the poor loser problem and it provides us with an opportunity to discuss a potential solution. | Laudatory goals of Federal Arbitration Act (FAA) will be achieved only to extent that courts ensure arbitration is alternative to litigation, not additional layer in protracted contest. 9 U.S.C.A. S 1 et seq. | How do the courts ensure that the goals of the Federal Arbitration Act are achieved? | Alternative Dispute Resolution - Memo 276 - RK.docx | LEGALEASE-00008553-LEGALEASE-00008554 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 9133 | Salawy v. Ocean Towers Hous. Corp., 121 Cal. App. 4th 664 | 13+1 | The common understanding of an "action to enforce" is that it is a proceeding initiated by the filing of a claim. Thus, an action not only encompasses the complaint "but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with suit." (Nassif v. Municipal Court (1989) 214 Cal.App.3d 1294, 1298, 263 Cal.Rptr. 195; see Exxess Electronixx v. Heger Realty Corp., supra, 64 Cal.App.4th at p. 712, fn. 15, 75 Cal.Rptr.2d 376.) Section 22 of the Code of Civil Procedure defines an "action" as follows: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Section 30 of the Code of Civil Procedure provides: "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." | The common understanding of an "action to enforce" is that it is a proceeding initiated by the filing of a claim, and not only encompasses the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with suit. | "What does an ""action"" encompass?" | Action - Memo 28 - ANG.docx | ROSS-003296422-ROSS-003296423 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9134 | Rathbun v. Health Net of the Ne., 315 Conn. 674 | 366+1 | First consider common-law principles governing the doctrine of subrogation. "In its simplest form, subrogation allows a party who has paid a debt to step into the shoes of another (usually the debtee) to assume his or her legal rights against a third party to prevent that party's unjust enrichment.... The common-law doctrine of legal or equitable subrogation therefore enables an insurance company that has made a payment to its insured to substitute itself for the insured and to proceed against the responsible third party." (Citation omitted; internal quotation marks omitted.) Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc., 309 Conn. 449, 455, 72 A.3d 36 (2013). | In its simplest form, "subrogation" allows a party who has paid a debt to step into the shoes of another, usually the debtee, to assume his or her legal rights against a third party to prevent that party's unjust enrichment. | What does equitable subrogation allow? | 002534.docx | LEGALEASE-00119844-LEGALEASE-00119845 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 9135 | First Union Nat. Bank v. Nelkin, 354 N.J. Super. 557 | 366+1 | We first examine the principles underlying the doctrine of equitable subrogation. The doctrine, with its "equity underpinnings," is used " "to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." " Culver v. Ins. Co. of North America, 115 N.J. 451, 455"56, 559 A.2d 400 (1989) (quoting Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954)). Subrogation rights are created in three different ways: (1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it. Culver, supra, 115 N.J. at 456, 559 A.2d 400. | The doctrine of equitable subrogation, with its equity underpinnings, is used to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. | Does equitable subrogation compel the ultimate discharge of an obligation? | 002551.docx | LEGALEASE-00120032-LEGALEASE-00120033 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9136 | Wal-Mart Stores v. Helferich Patent Licensing, 51 F. Supp. 3d 713 | 25T+200 | "[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association ("AAA"), the parties incorporate the AAA's rules into the arbitration agreement." Dunston v. R.H. Love Galleries, Inc., No. 07 CV 5113, 2008 WL 2339564 (N.D. Ill. Jun. 4, 2008) (citing Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263, 1272 (7th Cir.1976)). While neither the Supreme Court nor the Seventh Circuit have resolved whether incorporation of the AAA Rules constitutes "clear and unmistakable" evidence that the parties intended the question of arbitrability to be decided by an arbitrator, other circuits have drawn this conclusion. See Fallo v. High"Tech Inst., 559 F.3d 874, 878 (8th Cir.2009) ( "Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules ... constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006); Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir.2005); Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir.2005); see also Haire v. Smith, Currie & Hancock LLP, 925 F.Supp.2d 126, 132 (D.D.C.2013) (collecting federal appellate and district court cases). Additionally, other courts in this District have agreed with the various appellate courts in other circuits and come to the same conclusion. See Corrigan v. Domestic Linen Supply Co., No. 12 C 0575, 2012 WL 2977262 (N.D.Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability." (citing Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc., No. 04 C 5829, 2004 WL 2931284 (N.D.Ill. Dec. 9, 2004))); Yellow Cab Affiliation, Inc. v. N.H. Ins. Co., No. 10"cv"6896, 2011 WL 307617 (N.D.Ill. Jan. 28, 2011) ("[T]he Court finds that by specifically incorporating the Commercial Arbitration Rules of the | Issue of arbitrability was for arbitrator, not court, to determine, in dispute between patent licensee and licensor in which licensee sought rescission of license agreement containing arbitration clause, and thus licensor's motion to compel arbitration of dispute pursuant to Federal Arbitration Act (FAA) would be granted; parties clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate licensee's disputes, including issues regarding rescission, by incorporating rules of the American Arbitration Association (AAA) into agreement. 9 U.S.C.A. S 4. | Does the incorporation of the AAA Rules in an arbitration agreement constitute the parties' intent to leave the question of arbitrability to an arbitrator? | Alternative Dispute Resolution - Memo 299 - RK.docx | ROSS-003298903-ROSS-003298905 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9137 | Springfield Twp. v. Pennsylvania Pub. Util. Comm'n, 676 A.2d 304 | 317A+120 | Section 1312 of the Code, 66 Pa.C.S. " 1312, authorizes PUC to order a public utility to refund the rates which were (1) unlawful, (2) unjust or unreasonable, or (3) in excess of the rates contained in the public utility's tariff. National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission, 76 Pa.Cmwlth. 102, 464 A.2d 546 (1983). The Township contends that PECO violated Section 1303 of the Code in failing to compute the bills for the DOT-installed street lights under the more advantageous SL-E rate and therefore must refund the difference of the GS and SL-E rates. The Township, as a complainant, has the burden of establishing all of the elements of PECO's alleged violation of Section 1303. Section 332(a) of the Code, 66 Pa.C.S. " 332(a). | Statute governing public utility refunds authorizes Public Utility Commission (PUC) to order public utility to refund rates which were unlawful, unjust or unreasonable, or in excess of rates contained in utility's tariff. 66 Pa.C.S.A. S 1312. | When may a Public Utility Commission order a public utility to refund rates? | Electricity - Memo 49 - RK.docx | ROSS-003281791-ROSS-003281792 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 9138 | Application of City of Lincoln, 174 Neb. 837 | 233+531 | "A lease is a species of contract for the possession and profits of land and tenements, either for life, or for a certain period of time, or during the pleasure of the parties; and the essential elements of a contract must be present." 51 C.J.S. Landlord and Tenant " 202b, p. 803. | "Lease" is species of contract for possession and profits of land and tenements, either for life, or for a certain period of time, or during pleasure of parties; and essential elements of contract must be present. | Is a lease a species of contract? | 002735.docx | LEGALEASE-00120224-LEGALEASE-00120225 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 9139 | Louisiana Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n, 866 F.3d 426 | 145+11.3(7) | We review FERC's orders under the Administrative Procedure Act's "arbitrary and capricious" standard. Sithe/Independence Power Partners, L.P. v. FERC, 165 F.3d 944, 948 (D.C. Cir. 1999). The "scope of review under [that] standard is narrow." Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). As we explained in LPSC when approving FERC's selection of the Bandwidth Remedy, "[T]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily ... to the fashioning of policies, remedies and sanctions." 522 F.3d at 393 (quoting Niagara Mohawk Power Corp. v. FPC, 379 F.2d 153, 159 (D.C. Cir. 1967)). Similarly, we owe FERC "great deference" in fashioning electricity rate design. FERC v. Elec. Power Supply Ass'n, """ U.S. """", 136 S.Ct. 760, 782, 193 L.Ed.2d 661 (2016), as revised (Jan. 28, 2016) (quoting Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1, 554 U.S. 527, 532, 128 S.Ct. 2733, 171 L.Ed.2d 607 (2008)). "A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." Id. Rather, we ask whether the agency has "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." Id. (quoting State Farm, 463 U.S. at 43, 103 S.Ct. 2856) (alterations omitted). | The court owes Federal Energy Regulatory Commission great deference in fashioning electricity rate design. | Does the court owe the Federal Energy Regulatory Commission great deference in fashioning electricity rate design? | 002849.docx | LEGALEASE-00119961-LEGALEASE-00119963 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 9140 | DeWitt v. D.C., 43 A.3d 291 | 249+24(5) | The District defendants argue that summary judgment on DeWitt's false imprisonment and malicious prosecution claims was warranted because "[p]robable cause to arrest and imprison DeWitt until trial and to prosecute him is established by DeWitt's conviction, even though the conviction was later set aside."The applicable principle, however, is that "a prior conviction, although set aside or reversed and followed by an acquittal, is conclusive evidence of the existence of probable cause, unless the conviction was procured by fraud, perjury or other corrupt means."Bumphus v. Smith, 189 A.2d 130, 131"32 (D.C.1963) (italics added, citations omitted). DeWitt alleged in his complaint that the defendants "erroneously testified" to the grand jury and at trial about eyewitness descriptions and photo identifications, manipulated a line-up identification and witness statements, beat and intimidated a witness (Christopher Hines) into implicating DeWitt in the murder, lost or withheld exculpatory information, and caused criminal proceedings to be instituted and continued against DeWitt, "even after [they] knew or reasonably should have known that no probable cause existed to support" the prosecution against him and his continuing detention. In his ruling after the IPA hearing, Judge Burgess made no findings confirmatory of those specific claims. Nevertheless, because DeWitt's allegations amount to claims of fraud or corruption, we decline to treat the fact of DeWitt's conviction as mandating a conclusion that there was probable cause for his imprisonment and prosecution. Rather, we go on to consider whether, leaving aside the evidence that DeWitt alleges was tainted by police misconduct and considering the evidence that was withheld, there was enough "reasonably trustworthy information ... to warrant a prudent man in believing that [DeWitt] had committed ... [the] offense." Beck, 379 U.S. at 91, 85 S.Ct. 223; cf. Sanders v. United States, 550 A.2d 343, 345 | Fact of plaintiff's conviction for second-degree murder and related crimes did not establish that there was probable cause to arrest as matter of law, as affirmative defense to plaintiff's claims of false imprisonment and malicious prosecution, in action against District of Columbia, detectives and others brought after convictions were vacated on his motion under Innocence Protection Act and he was granted new trial, in view of plaintiff's assertions that his arrest and conviction were obtained through erroneous testimony regarding eyewitness identifications, manipulation of line-up, and intimidation of witness who later implicated plaintiff in killing, and thus, that arrest, conviction and continued detention were obtained through fraud and corruption. D.C. Official Code, 2001 Ed. S 22-4135. | Does the subsequent reversal of conviction destroy the determination of probable cause in a malicious prosecution claim? | 002936.docx | LEGALEASE-00119842-LEGALEASE-00119843 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 9141 | Grayson v. City of Aurora, 157 F. Supp. 3d 725 | 249+32 | Regarding the Defendants' second challenge, "[m]alice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." Rodgers v. Peoples Gas, Light & Coke Co., 315 Ill.App.3d 340, 248 Ill.Dec. 160, 733 N.E.2d 835, 842 (2000). The lack of probable cause, alone, does not establish malice, "but the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes the inference." See id. The Defendants argue that because they created a photo lineup containing Adrian Moore and looked into a separate shooting that involved matching bullet casings from the Laundromat shooting, there is no evidence of malice. | Lack of probable cause, alone, does not establish malice, as element of malicious prosecution claim under Illinois law, but the trier of fact may infer malice from lack of probable cause if there is no other credible evidence which refutes the inference. | Can lack of probable cause alone infer malice for malicious prosecution? | Malicious Prosecution - Memo 77 - RK.docx | ROSS-003296544-ROSS-003296545 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9142 | In re King Faisal II's Estate, 23 Misc. 2d 300 | 221+180 | In view of the fact that the discovery order called upon the respondents to appear as witnesses and to be examined concerning their knowledge of property allegedly belonging to the deceased, it could not be said that the proceeding was in fact at this stage a suit against them or against their government. For this reason, the issue here must be decided upon the law applicable to the power of a local court to compel the attendance of a consular officer to appear as a witness in a matter pending before it. Consular officers, unlike members of embassy staffs, do not enjoy diplomatic immunity except as otherwise provided by treaty (Arcaya v. Paez, D.C., 145 F.Supp. 464, 466, affirmed 2 Cir., 244 F.2d 958 and cases there cited.) Local courts, however, cannot compel such an officer to disclose any information acquired by him in his official capacity nor is the compulsory production of official records of his government permissible. American League for a Free Palestine, Inc. v. Type Shipping Co. Inc., 202 Misc. 831, 119 N.Y.S.2d 860 affirmed 281 App.Div. 655, 117 N.Y.S.2d 655. See also 4 Hackworth "Digest of International Law", section 437 page 753. The principle is based upon comity and exists even in the absence of a treaty which, incidentally, is the case here as appears from letters to the petitioners' attorney from the Department of State under date of July 30, 1959 and February 4, 1960, stating that no such treaty has been concluded between the Republic of Iraq and the government of the United States. | Local courts cannot compel consular officer to disclose any information acquired by him in his official capacity and may not require compulsory production of official records of his government. | Can local courts compel a consul to disclose any information acquired by him in his official capacity? | 003005.docx | LEGALEASE-00120517-LEGALEASE-00120518 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 9143 | United States v. Kuznetsov, 442 F. Supp. 2d 102 | 221+179 | A court must consider a defendant's diplomatic status at the time of his arrest when determining the issue of diplomatic immunity. United States v. Al"Hamdi, 356 F.3d 564, 569 (4th Cir.2004). | A court must consider a defendant's diplomatic status at the time of his arrest when determining the issue of diplomatic immunity. | Should a court consider a defendants diplomatic status at the time of his arrest when determining the issue of diplomatic immunity? | 003026.docx | LEGALEASE-00120368-LEGALEASE-00120369 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 9144 | Louisiana Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n, 771 F.3d 903 | 145+11.3(1) | The bandwidth formula as laid out in Service Schedule MSS"3 of the System Agreement is the existing filed rate under the FPA. Second Bandwidth Decision, 761 F.3d at 555; Op. No. 514, 137 FERC " 61,029 at P 49 ("[FERC] already found the formula rate contained in Service Schedule MSS"3 to be just and reasonable when it approved that formula as being in compliance with Opinion No. 480. Because [FERC] has approved the formula, it is the filed rate...." (footnote omitted)); see also Pub. Utils. Comm'n of State of Cal. v. FERC, 254 F.3d 250, 254 & n. 3 (D.C.Cir.2001) ("[A] formula rate specifies the cost components that form the basis of the rates a utility charges its customers" and "the formula itself is the filed rate that provides sufficient notice to ratepayers."). Under the filed rate doctrine, "[t]he rate filed by the wholesale seller of electricity or fixed by FERC is the only lawful charge and deviation from it is not permitted upon any pretext." California ex rel. Lockyer v. FERC, 383 F.3d 1006, 1012 (9th Cir.2004) (internal quotation marks and alteration omitted); see also Montana"Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 251"52, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Not only must utilities adhere to the filed rate, but "[FERC] itself has no power to alter a rate retroactively." Ark. La. Gas Co. v. Hall, 453 U.S. 571, 578, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981). Even where FERC finds | Not only must utilities adhere to the filed rate, but Federal Energy Regulatory Commission (FERC) itself has no power to alter a rate retroactively; even where FERC finds an existing rate to be unjust and unreasonable under the Federal Power Act (FPA), its replacement rate applies only prospectively. Federal Power Act, S 201(a, b), 16 U.S.C.A. S 824(a, b). | Is the FERC authorized to permit retroactive adjustments to rates? | 003071.docx | LEGALEASE-00120307-LEGALEASE-00120308 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9145 | Starr Int'l Co. v. United States, 121 Fed. Cl. 428 | 148+2.2 | Ultimately, Starr must prove that it suffered some economic harm from the Government's taking or illegal exaction. In applying this standard, the Court must consider the value of the Plaintiff's property but for the challenged government actions. In other words, what would the value of Plaintiff's property have been if the Government had done nothing? Brown, 538 U.S. at 240"41, 123 S.Ct. 1406 (plaintiffs had lost nothing because they would not have received any interest even in the absence of a challenged government program). | In determining whether a plaintiff suffered some economic harm from the Government's taking or illegal exaction under the Fifth Amendment, the court must consider the value of the plaintiff's property but for the challenged government actions. U.S. Const. Amend. 5. | What must be considered by the court when looking into the economic harm from taking? | 003083.docx | LEGALEASE-00120341-LEGALEASE-00120342 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 9146 | Sailors v. Nixon-Jones Printing Co., 20 Ill.App. 509 | 289+425 | If there is no agreement, then if they deal with each other as partners, sharing losses and profits, their interest will be gathered from their acts, and they will be partners inter se. Collyer on Partnership, Sec. 2 and note. A mere community of interest in property will not make the owners partners. There must be an agreement for a joint venture and to share profits and losses; and in the absence of such a mutual agreement they are mere tenants in common of the property and the act of one will not bind the other. Chase v. Barrett, 4 Paige, 148; Niehoff et al. v. Dudley, 40 Ill. 406; Smith v. Knight, 71 Ill. 149. | Mere community of interest in property will not make the owners partners, in the absence of mutual agreement for joint venture and sharing of profits and losses. | Does a community of interest in property make the owners partners? | Partnership - Memo 86 - RK.docx | ROSS-003284096-ROSS-003284097 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9147 | Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818 | 366+1 | Here, the question is whether an excess insurer who pays a third-party claim on behalf of its insured after a primary insurer refuses in bad faith to settle the claim has a right to equitable subrogation to obtain the amount paid from the primary insurer. A right to equitable subrogation belongs to "one, not a volunteer, who pays another's debt, to recover the amount paid, which in good conscience should be paid by the one primarily responsible for the loss." Id. at 74 (quoting 4 New Appleman Law of Liability Ins. sec. 42.01 (2012)). Scottsdale paid $1 million to settle the claim against Wells Trucking. Scottsdale did not do so as a volunteer but because it was obligated to do so under its policy with Wells Trucking. See id. at 75. | A right to equitable subrogation belongs to one, not a volunteer, who pays another's debt, to recover the amount paid, which in good conscience should be paid by the one primarily responsible for the loss. | Who does a right to equitable subrogation belong to? | 003557.docx | LEGALEASE-00120366-LEGALEASE-00120367 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9148 | XL Specialty Ins. Co. v. Com., Dep't of Transp., 47 Va. App. 424 | 366+1 | When statutory language abrogating sovereign immunity in other instances is compared with Code " 33.1"192.1, it is clear that there is no waiver of sovereign immunity in the instant case where the claim is not based on a direct contract between the Commonwealth and the claimant but is rather equitable in nature. "The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties." Aetna Life Insurance Co. v. Middleport, 124 U.S. 534, 550, 8 S.Ct. 625, 630, 31 L.Ed. 537 (1888) (citation omitted).Code " 2.2"4364(E) grants a right: "a contractor may bring an action." (Emphasis added). The Virginia Tort Claims Act proclaims the liability of the Commonwealth: "the Commonwealth shall be liable for claims." Code " 8.01"195.3 (emphasis added). Administrative agencies are subject to suit in particular circumstances: "[a]ny person affected by and claiming the unlawfulness of any regulation ... shall have a right to the direct review thereof by an appropriate and timely court action." Code " 2.2"4026 (emphasis added). On the other hand, Code " 33.1"192.1 simply describes a procedure that must be followed: "[n]o suit or action shall be brought ... unless the claimant shall have exhausted the review process provided by " 33.1"386." | The right of subrogation is not founded on contract; it is a creation of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is equitable subrogation a creation of equity and administered in the furtherance of justice? | 003645.docx | LEGALEASE-00120443-LEGALEASE-00120445 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9149 | Sorge v. City of New York, 56 Misc. 2d 414 | 221+176 | Whether libel results in the course of the taking of the testimony is a question to be determined under the law of New York. Every proceeding before a competent court or magistrate in due course of law or administration of justice, which is to result in any determination or action on the part of such court or magistrate, is a judicial proceeding. Such results did occur here. The United States may give power to a Consul, and to the exercise of such power the Constitution does not apply (United States v. Archer, D.C., 51 F.Supp. 708). A foreign consulate is United States territory and the United States Government may confer on the Consul the power to administer the oath and the Consul thus becomes a magistrate as if he were acting for the United States (United States v. Archer, supra; 16 Amer.Juris., Diplomatic and Consular Officers, 969, s 18). | United States government may confer on foreign consul in United States territory power to administer oath and consul thus becomes magistrate as if he were acting for United States. | Does the United States have the authority to confer on a counsel the power to administer oaths? | Ambassadors and Consuls - Memo 26 - RK.docx | LEGALEASE-00010035-LEGALEASE-00010036 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9150 | Tri-City Const. Council v. Westfall, 127 Wash. App. 669 | 366+26 | Principles of natural justice give rise to the doctrine of equitable subrogation. Tilly v. Doe, 49 Wash.App. 727, 734, 746 P.2d 323 (1987). This means that we will require the party who should pay a debt to ultimately pay it. Mahler v. Szucs, 135 Wash.2d 398, 411, 957 P.2d 632, 966 P.2d 305 (1998); In re Liquidation of Farmers & Merchants State Bank of Nooksack, 175 Wash. 78, 85, 26 P.2d 631 (1933). But there is no absolute right of equitable subrogation. Farmers & Merchants State Bank, 175 Wash. at 86, 26 P.2d 631. It is, instead, based upon the circumstances of each case and the demands of justice for an equitable result. Id. at 85"86, 26 P.2d 631; Tilly, 49 Wash.App. at 734, 746 P.2d 323. And we will apply the doctrine liberally "in the interests of justice and equity." J.D. O'Malley & Co. v. Lewis, 176 Wash. 194, 201, 28 P.2d 283 (1934). " "[T]he doctrine as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." " Farmers & Merchants State Bank, 175 Wash. at 85"86, 26 P.2d 631 (quoting 25 R.C.L. 1322 et seq.). | The doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. | Is equitable subrogation applied broadly? | 003553.docx | LEGALEASE-00120355-LEGALEASE-00120356 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9151 | Brewer v. State, 341 P.3d 1107 | 148+2.2 | We agree with the analysis in TrinCo. Here, the superior court considered only whether the State's actions were taken within the context of its general police power.But a taking of private property does not escape application of the Takings Clause simply because it occurs in the course of the State's firefighting activities; to be noncompensable, the taking must be justified by the doctrine of necessity. The doctrine applies only if the State demonstrates the existence of "imminent danger and an actual emergency giving rise to actual necessity," an inquiry that is fact-specific.68 | A taking of private property does not escape application of the Takings Clause simply because it occurs in the course of the State's firefighting activities; to be noncompensable, the taking must be justified by the doctrine of necessity. Const. Art. 1, § 18. | To be non-compensable should the taking be justified by the doctrine of necessity? | 003091.docx | LEGALEASE-00120669-LEGALEASE-00120670 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9152 | Citibank, N.A. v. Barclays Bank, PLC, 28 F. Supp. 3d 174 | 148+13 | New York's statute providing for 9% prejudgment interest is not an unconstitutional taking. Barclays is correct that the state may not take the property of a private party to give it to another private party without a public purpose. See Kelo v. City of New London, 545 U.S. 469, 477, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). Here, however, as discussed above, there is a legitimate public purpose attached to New York's prejudgment interest statute. "Where legislation adjusting the benefits and burdens of economic life withstands due process review, "it would be surprising indeed to discover" that [the Legislature] had thereby committed an unconstitutional taking." In re Chateaugay Corp., 53 F.3d 478, 494 (2d Cir.1995) (quoting Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)). Therefore, Barclays has not shown that New York's statute providing for 9% prejudgment interest is unconstitutional on its face. | Under the Takings Clause, a state may not take the property of a private party to give it to another private party without a public purpose. U.S.C.A. Const.Amend. 5. | Can the state take the property of a private party to give it to another private party without a public purpose? | 003107.docx | LEGALEASE-00120695-LEGALEASE-00120696 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9153 | Navajo Nation v. Urban Outfitters, 191 F. Supp. 3d 1238 | 209+129 | As Judge Shadur indicated in Bundy"Howard, a second goal of the IACA is to protect consumers from purchasing misrepresented products. 168 F.Supp.2d at 914. See also 136 Cong. Rec. H8291"01 (statement of Del. Eni Faleomavaega); William J. Hapiuk, Jr., Of Kitsch and Kachinas: A Critical Analysis of the Indian Arts and Crafts Act of 1990, 53 Stan. L.R. 1009, 1020"21 (2001). Consumer protection statutes should be liberally construed in favor of the buyer. Elliott Industries Ltd. Partnership v. BP America Production Co., 407 F.3d 1091, 1118 (10th Cir. 2005); First Nat. Bancorp Inc. v. Alley, 76 F.Supp.3d 1261, 1264 (D.N.M. 2014). | A goal of the Indian Arts and Crafts Act (IACA) is to protect consumers from purchasing misrepresented products. 25 U.S.C.A. § 305. | Does Indian Arts and Crafts Act (IACA) protect consumers from purchasing misrepresented products? | Indians - Memo 45 - BP.docx | ROSS-003300823-ROSS-003300824 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9154 | Hurley v. Nw. Publications, 273 F. Supp. 967 | 237+51(5) | The qualified privilege accorded a publisher who accurately reports legal proceedings is lost if he is motivated by malice or acts from ulterior motives designed to injure. In cases involving public officials, it is said that malice cannot be deduced from the mere fact of publication alone unless it has been or can be established that the publication is made with the knowledge that the statements are false or are made with reckless disregard of whether or not such are false. New York Times Co. v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See also Goldwater v. Ginzburg et al, 261 F.Supp. 784 (S.D.N.Y.1966). The Restatement, Torts, Vol. 3, " 611 seems to adopt even a more stringent standard where the publication relates to official proceedings. It does not use the word "malice" but states in effect (thinking of it in terms of actual malice) that actual malice will be present only if a publication was either an inaccurate report of the proceedings or "made solely for the purpose of causing harm to the person defamed". To the court this seems a greater burden of proof on the part of one who claims to have been libeled than the standard set forth in the New York Times case. In either event, however, and whichever standard is adopted, plaintiffs in this case must prove actual malice or its equivalent in order to remove the cloak of privilege which insures to the defendant. If there be no genuine issue of fact on this question then defendant is entitled to a summary judgment even though the words be otherwise libelous per se if not privileged. | In cases involving public officials malice cannot be deduced from the mere fact of publication alone unless it has been or can be established that the publication is made with the knowledge that the statements are false or are made with reckless disregard of whether or not they are false. | Can malice arise from publication alone? | 003346.docx | LEGALEASE-00120825-LEGALEASE-00120826 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9155 | Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 418 Pa. Super. 178 | 302+218(1) | In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. Ohio Casualty Group Ins. Co. v. Argonaut Ins. Co., 92 Pa.Cmwlth. 560, 500 A.2d 191 (1985). A preliminary objection should be sustained only where it appears with certainty that, upon the facts averred, the law will not allow the plaintiff to recover.International Union of Operating Engineers, Local No. 66, AFL-CIO v. Linesville Construction Co., 457 Pa. 220, 322 A.2d 353 (1974). | Preliminary objections should be sustained only where it appears with certainty that, upon facts averred, the law will not allow plaintiff to recover. | Should a preliminary objection be sustained only where it appears with certainty that the law will not allow the plaintiff to recover? | 05071.docx | LEGALEASE-00083695-LEGALEASE-00083696 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9156 | Hayes v. Pittsgrove Twp. Bd. of Educ., 269 N.J. Super. 449 | 366+1 | Because the plaintiffs were not entitled to receive compensation for those expenses from the Board, it must follow that the Plan could not recover for those expenses from the Board. Subrogation is an equitable device intended to effectuate an obligation's ultimate discharge by the one who ought to pay it and thus to promote "essential justice" between the parties. Culver v. Insurance Co. of North America, 115 N.J. 451, 456, 559 A.2d 400 (1989).Because a subrogee's rights can rise no higher than those of the subrogor, Mayfair Fabrics v. Henley, 101 N.J.Super. 363, 244 A.2d 344 (Law Div.1968), the Plan cannot, through subrogation, effect a recovery which Angie's parents could not achieve. If it were allowed to succeed against the Board, it would stand in a better position than those from whom its claim flows. Such a result is fundamentally inconsistent with the nature of subrogation, as well as with the intent of N.J.S.A. 59:9"2(e). | Subrogation is equitable device intended to effectuate an obligation's ultimate discharge by the one who ought to pay it, and thus to promote essential justice between parties. | Does subrogation serve to promote essential justice between the parties? | 05075.docx | LEGALEASE-00083705-LEGALEASE-00083706 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9157 | ADP Marshall v. Noresco, 710 F. Supp. 2d 197 | 366+1 | Subrogation is intended to reimburse a party compelled to discharge a debt owed by another party. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136"37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). Although subrogation may originate from a contractual agreement, " "[i]t is a creature of equity; it is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." " Pearlman v. Reliance Ins. Co., 371 U.S. at 137 n. 12, 83 S.Ct. 232. "Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement .. there are few doctrines better established that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Id. at 137, 83 S.Ct. at 235. See U.S. Fidelity & Guar. Co. v. Rhode Island, 53 R.I. 397, 167 A. 143, 146 (1933) ("A surety which has to pay out money as surety on a building contractor's bond is entitled to be subrogated to the rights of the contractor in any balance due him."). Conversely, claims by owners/obligees under a payment bond are not favored by caselaw. See, e.g., Fed. Ins. Co. v. Maine Yankee Atomic Power Co., 183 F.Supp.2d 76, (D.Me.2001) (collecting cases); Am. Mfrs. Mut. Ins. Co. v. Sherborn Meadows, 2008 WL 5396479 (D.Mass. Dec. 22, 2008) (unpublished decision). | Although subrogation may originate from a contractual agreement, it is a creature of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is subrogation a creature of equity? | Subrogation - Memo 358 - NS.docx | ROSS-003285316-ROSS-003285317 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9158 | State, Bd. of Pub. Utilities v. Helen Kramer Sanitary Landfill, 171 N.J. Super. 500 | 317A+111 | None of the statute from which BPU's scope of jurisdiction must be derived expressly deals with the question of operating hours. Decisional law is silent and legislative history is not helpful. Nonetheless, we are not entirely adrift. We interpret the statutory grant of jurisdiction broadly to provide regulatory control reasonably associated with those aspects of BPU activity specifically within the agency's delegated authority. We do that to avoid compromising agency capacity to accomplish its assigned tasks. For example, BPU is given the task of insuring, or at least enhancing, the efficiency of solid waste collection and disposal. N.J.S.A. 48:13A-2. To that end, landfill operators must obtain a certificate of necessity and convenience as an essential prerequisite to their operation. N.J.S.A. 48:13A-6. Existing need and levels of performance in a given municipality or region must be known to the Board and public and within the former's control if it is to insure efficient rendition of collection and disposal services. In re Mason, 134 N.J.Super. 500, 342 A.2d 219 (App.Div.1975). Clearly, the Board's responsibility does not begin and end with rate regulation. A utility permitted operation under a certificate must be accountable to the Board for a certain level of performance. Such supervision clearly embraces hours of operation and changes thereto. The Board recognized this in its adoption of N.J.A.C. 14:11-7.2, which requires each utility to file with the Board tariffs applicable to its affected service area, and in N.J.A.C. 14:11-7.3, which requires the filed tariff to disclose the "standard terms and conditions governing service . . . ." Such rules are presumptively valid and the Landfill has not, in our view, met its burden of demonstrating their invalidity. See Bergen Cty. v. Public Util. Bd. Comm'rs, 137 N.J.Super. 448, 455, 349 A.2d 537 (App.Div.1975). Certainly, the Landfill failed to challenge these requirements when, in its filed tariff, it set forth in unequivocal terms the hours it would be | Courts interpret the statutory grant of jurisdiction to the State Board of Public Utilities broadly to provide regulatory control reasonably associated with those aspects of the Board's activities specifically within the agency's delegated authority. N.J.S.A. 48:13A-2, 6. | Are the powers concerning regulation of public utilities delegated to the Board of Public Utility Commissioners (BPU) broad? | Public Utilities - Memo 74 - AM.docx | LEGALEASE-00010873-LEGALEASE-00010875 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9159 | Peel v. Bramlett, 298 Ky. 20 | 249+62 | In annotations 37 A.L.R. 658 will be found a thorough discussion of this subject matter, and it is there stated that as a general rule, a publication containing an account of the prosecution of the plaintiff, without comment, is admissible in an action to recover damages for malicious prosecution. Publication of an arrest in a newspaper is a probable consequence of an arrest and such publication may be shown in evidence to aid the jury in estimating the damages. Grimes v. Greenblatt, 47 Colo. 495, 107 P. 1111, 19 Ann.Cas. 608. However, in the present case Miss Bramlett, the appellee, was permitted to read to the jury from the newspaper article not only the account of the charges and prosecution against her, but also certain comments and details, one sentence being: "A member of the jury said not guilty verdict was reached immediately," and also made reference to a number of character witnesses introduced in her behalf. The court should not have permitted the witness to have read to the jury from the newspaper publication further than to show that she was charged with the offense and prosecuted therefor. All comments and details were improper and prejudicial. | In action for malicious prosecution, newspaper publication of plaintiff's arrest and prosecution, without comment, is generally admissible in evidence to aid jury in estimating damages. | When are newspaper articles admissible in a malicious prosecution action? | Malicious Prosecution - Memo 108 - AKA.docx | ROSS-003283305-ROSS-003283307 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 9160 | Boyajian v. United States, 129 Fed. Cl. 336 | 23+3.3(1) | During the Great Depression, Congress established the Agricultural Marketing Agreement Act of 1937 ("AMAA") in order to help farmers obtain fair value for their agricultural productions. Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1358 (Fed. Cir. 2005) (citing Pescosolido v. Block, 765 F.2d 827, 828 (9th Cir. 1985)); 7 U.S.C. " 602 (2000). The AMAA directs the Secretary of Agriculture ("Secretary") to issue "marketing orders" which regulate the marketing and sale of agricultural commodities. 7. U.S.C. " 608c (2012). The Act allows the Secretary to "issue marketing orders, upon the request of the affected producers, regulating the sale and delivery of various commodities, including raisins, "in order to avoid unreasonable fluctuation in supplies and price." " Id. (citing Parker v. Brown, 317 U.S. 341, 368, 63 S.Ct. 307, 87 L.Ed. 315 (1943); Kyer v. United States, 369 F.2d 714, 716"17 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967); 7 U.S.C. "" 608c, 602(4) (2000)). | Congress established the Agricultural Marketing Agreement Act (AMAA) in order to help farmers obtain fair value for their agricultural productions. 7 U.S.C.A. S 601 et seq. | Why did Congress establish the Agricultural Marketing Agreement Act of 1937 (AMAA)? | 006749.docx | LEGALEASE-00121749-LEGALEASE-00121750 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9161 | Oak Springs Villas Homeowners Assn. v. Advanced Truss Sys., 206 Cal. App. 4th 1304 | 30+3.1 | We conclude that ATS has appealed from a nonappealable order and dismiss its appeal. A good faith settlement determination is a nonappealable interlocutory ruling and immediate review of the merits of that determination is obtainable only by a timely writ petition pursuant to Code of Civil Procedure, section 877.6. (Main Fiber Products, Inc. v. Morgan &Franz Ins. Agency (1999) 73 Cal.App.4th 1130, 1134, 87 Cal.Rptr.2d 108; Chernett v. Jacques (1988) 202 Cal.App.3d 69, 71, 248 Cal.Rptr. 63.) Subdivision (e) of section 877.6 provides: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow." ATS sought review outside of the 20-day time limit and, in any case, filed an appeal, not a writ petition. | A good faith settlement determination is a non-appealable interlocutory ruling and immediate review of the merits of that determination is obtainable only by a timely writ petition. West's Ann.Cal.C.C.P. S 877.6. | Is good faith settlement determination a non-appealable interlocutory ruling? | 008142.docx | LEGALEASE-00121628-LEGALEASE-00121629 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9162 | Tarrant Cty. v. English, 989 S.W.2d 368 | 148+2.1 | When private property is damaged or destroyed merely as the result of governmental employees' negligence, it is not taken or damaged for public use. See Weber, 219 S.W.2d at 71; see also City of Tyler v. Likes, 962 S.W.2d 489, 505 (Tex.1997). There is no "taking" unless the damage was authorized by the State in the exercise of its lawful authority or was necessarily incidental to the governmental action. See Dallas County Flood Control Dist. v. Benson, 157 Tex. 617, 306 S.W.2d 350, 351 (1957); Weber, 219 S.W.2d at 71. Mere negligence is not the lawful exercise of governmental authority. See State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 737 (1941). | When private property is damaged or destroyed merely as the result of governmental employees' negligence, it is not taken or damaged for public use. Vernon's Ann.Texas Const. Art. 1 S 17. | Is the property taken or damaged for public use when the negligence of a government employee damages or destroys private property? | 017412.docx | LEGALEASE-00121527-LEGALEASE-00121528 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9163 | People v. Auto. Transporters Welfare Fund, 34 Misc. 2d 907 | 216+2 | The defendant was not created by state authority and is not operating by virtue of any license issued to it. Legislative regulation of the recipients of special privileges from the states may include the imposition of cost of inspection (Charlotte, C. & A. Railroad Co. v. Gibbes, 142 U.S. 386, 12 S.Ct. 255, 35 L.Ed. 1051; Bronx Gas & Electric Co. v. Maltbie, 268 N.Y. 278, 197 N.E. 281). If authority exists to impose such a liability upon a defendant, engaged as this defendant is in interstate commerce, without license or permission of any kind from the State of New York, it could result in the imposition of the cost of inspection of the defendant's records by all of the 24 states in which the members of the constituent unions are resident. This would be an intolerable burden on the defendant, and an unwarranted burden on interstate commerce. The inspection in this instance, in fact, occurred in the State of Michigan, the domiciliary state of the fund. To the extent that the plaintiffs rely on Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, the court there stated "We do not reach the question of the validity of the inspection sections as they might be applied to appellant, but limit our consideration solely to what is presented on this record"the enforcement of the criminal provisions of the Code". The fact that the defendant is registered with the New York State Insurance Department is of no consequence, since under the Insurance Law the defendant is exempted from the licensing provisions of the Insurance Act. Such registration cannot support the claimed authority to impose inspection costs even though the federal statute in its regulatory provisions is more modest than the regulatory provisions contained in the state statute in relation to what may be done with respect to the information filed in the State of Michigan (Rice v. Santa Fe Elevator Corp., 331 U.S. 218). | Legislative regulation of recipients of special privileges from states may include imposition of costs of inspection. | Does legislative regulation of the recipients of special privileges from the states include the imposition of cost of inspection? | 019465.docx | LEGALEASE-00121119-LEGALEASE-00121120 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 9164 | Romanek-Golub & Co. v. Anvan Hotel Corp., 168 Ill. App. 3d 1031 | 307A+3 | A motion in limine merely presents an issue of admissibility of evidence which is likely to arise at trial, in a pretrial setting. As such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. (Beasley v. Huffman Mfg. Co. (1981), 97 Ill.App.3d 1, 5, 52 Ill.Dec. 560, 422 N.E.2d 241.) "When a motion in limine is made, the trial judge must exercise his discretion in granting the motion or in denying it, thereby leaving to the unsuccessful movant the procedure of specially objecting to the evidence when it is offered at trial." People v. McClain (1978), 60 Ill.App.3d 320, 324, 17 Ill.Dec. 628, 376 N.E.2d 774, citing Department of Public Works & Buildings v. Roehrig (1976), 45 Ill.App.3d 189, 195, 359 N.E.2d 752. | Motion in limine, like any other interlocutory order, remains subject to reconsideration by court throughout trial. | Is a motion in limine an interlocutory order and remains subject to reconsideration by the court throughout the trial? | 028062.docx | LEGALEASE-00121096-LEGALEASE-00121097 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9165 | In re Leona W., 228 Ill. 2d 439 | 30+3361 | Generally speaking, evidentiary motions, such as motions in limine, are directed to the trial court's discretion. A trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion. People v. Harvey, 211 Ill.2d 368, 392, 286 Ill.Dec. 124, 813 N.E.2d 181 (2004). The threshold for finding an abuse of discretion is high. A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable man would take the view adopted by the court. See Clayton v. County of Cook, 346 Ill.App.3d 367, 377, 281 Ill.Dec. 854, 805 N.E.2d 222 (2003). Moreover, even where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice affecting the outcome of the trial. Holston v. Sisters of the Third Order of St. Francis, 165 Ill.2d 150, 170"71, 209 Ill.Dec. 12, 650 N.E.2d 985 (1995). | Generally speaking, evidentiary motions, such as motions in limine, are directed to the trial court's discretion; a trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion. | "Are evidentiary motions, such as motions in limine, directed to the trial court's discretion?" | Pretrial Procedure - Memo # 26 - C - KI.docx | ROSS-003285704-ROSS-003285705 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9166 | State v. Terry, 89 N.J. Super. 445 | 352H+58 | Thus, it is not necessary for a female who is the victim of a forceful rape to orally express her lack of consent as long as the same is demonstrated by, or can be implied from, her acts and conduct. But it must be shown that she did, however, actually resist; passive resistance is not sufficient. | Rape victim need not orally express her lack of consent as long as lack of consent is demonstrated by or can be implied from her acts and conduct, but it must be shown that she did actually resist, passive resistance being insufficient. | Do rape victims required to express their lack of consent? | 042897.docx | LEGALEASE-00121338-LEGALEASE-00121339 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 9167 | Valora v. Pennsylvania Employees Benefit Tr. Fund, 595 Pa. 574 | 366+1 | A right to subrogation, then, may arise as a result of a contractual reservation or as a matter of equity, if no such specific reservation exists. When the subrogation claim arises out of a contract, Pennsylvania courts have long held that equitable principles continue to apply: "[S]ubrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect of policies of insurance is contractually declared." Roberts v. Fireman's Ins. Co. of Newark, N.J., 376 Pa. 99, 101 A.2d 747, 750 (1954) (citation omitted); see also Employers Mut. Liab. Ins. Co. of Wis. v. Melcher, 378 Pa. 598, 107 A.2d 874, 875-76 (1954) (subrogation claim is necessarily based on equities but is buttressed by existence of contractual right to subrogation); Cerankowski v. State Farm Mut. Auto. Ins. Co., 783 A.2d 343, 347 (Pa.Super.2001), alloc. denied, 568 Pa. 692, 796 A.2d 977 (2002) (even if contractually declared, right to subrogation is regarded as based upon and governed by equitable principles); Mellon Bank, N.A. v. Natl. Union Ins. Co. of Pittsburgh, PA, 768 A.2d 865, 871 (Pa.Super.2001) (in Pennsylvania, subrogation is equitable in nature, regardless of any applicable contractual language); Nationwide Mut. Ins. Co. v. Lehman, 743 A.2d 933, 941 (Pa.Super.1999) (right to subrogation governed by equity notwithstanding contractual right); Daley Sand v. W. Am. Ins. Co., 387 Pa.Super. 630, 564 A.2d 965, 970 (1989) (equitable nature of subrogation is not altered by contractual language regarding subrogation). Under this substantial precedent, the fact that appellant's right to subrogation stems from a contract does not render equitable considerations irrelevant. | A right to subrogation may arise as a result of a contractual reservation or as a matter of equity, if no such specific reservation exists. | "Could a right to subrogation arise as a result of a contractual reservation or as a matter of equity, if no such specific reservation exists?" | Subrogation - Memo # 485 - C - SA.docx | ROSS-003316526-ROSS-003316527 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9168 | Great Am. Ins. Co. v. Dover & Dixon, P.A., 402 F. Supp. 2d 1012 | 366+27 | Arkansas law no longer distinguishes between equitable (or legal) subrogation (which arises by application of principles of equity) and conventional subrogation (which arises from contract or the acts of the parties). See Franklin v. Healthsource of Arkansas, 328 Ark. 163, 167, 942 S.W.2d 837 (1997) ("[t]he same facts give rise to both legal and conventional subrogation."); Southern Farm Bureau Cas. Ins. Co. v. Tallant, 207S.W.3d 468, 2005 WL 914615 (Ark.2005). The cases relied upon by Plaintiffs in support of permitting an equitable subrogation claim here are distinguishable. Jurisdictions permitting such claims lack statutes similar to the one enacted in Arkansas. Further, even if other jurisdictions with similar privity requiring statutes permitting equitable subrogation claims existed, this Court would still predict, based upon the Arkansas case law in this area, that the Arkansas Supreme Court would refuse to recognize such claims. | Arkansas law does not distinguish between equitable, or legal, subrogation, which arises by application of principles of equity, and conventional subrogation. | Does law distinguish between equitable or legal subrogation which arises by application of principles of equity and conventional subrogation? | Subrogation - Memo # 525 - C - NO.docx | ROSS-003322026-ROSS-003322028 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9169 | Universal Forest Prod. E. Div. v. Morris Forest Prod., 558 F. Supp. 2d 893 | 366+1 | Subrogation "is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." American Ins. Co. v. City of Milwaukee, 51 Wis.2d 346, 351, 187 N.W.2d 142, 145 (Wis.1971). "Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it." First Nat'l Bank v. Hansen, 84 Wis.2d 422, 429, 267 N.W.2d 367, 370 (Wis.1978). "[T]he right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all." Fitzgerald v. Buffalo County, 264 Wis. 62, 63, 58 N.W.2d 457, 458 (Wis.1953). However, because " "equity does not lend itself to the application of black letter rules," subrogation "depends upon a just resolution of a dispute under a particular set of facts." " Petta v. ABC Ins. Co., 278 Wis.2d 251, 275, 692 N.W.2d 639, 651 (Wis.2005) (quoting Vogt v. Schroeder, 129 Wis.2d 3, 12, 383 N.W.2d 876, 879 (Wis.1986)). | Given that equity does not lend itself to the application of black letter rules, subrogation depends, under Wisconsin law, upon a just resolution of a dispute under a particular set of facts. | Is subrogation an equitable doctrine and depend upon a just resolution of a dispute under a particular set of facts? | Subrogation - Memo # 581 - ES.docx | ROSS-003286166-ROSS-003286167 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9170 | In re Barney's Inc., 200 B.R. 527 | 366+7(1) | Plaintiffs argue that a " 105 injunction should issue because judgment in IOA's favor may create a large unsecured claim herein since under the law of subrogation the Pressmans can look to debtors to recover amounts they pay to IOA. The doctrine of equitable subrogation gives a guarantor the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor. See Natwest USA Credit Corp. v. Alco Standard Corp., 858 F.Supp. 401, 414 (S.D.N.Y.1994) (citing Thornton v. Syracuse Savings Bank, 961 F.2d 1042, 1046"47 (2d Cir.1992)); see also 63 N.Y.Jur.2d Guarantee and Suretyship " 428, at p. 566 (1987). That includes the right to assert any priority or special right of the subrogor. See Pandora Ind., Inc. v. Paramount Communications, Inc. (In re Wingspread Corp.), 145 B.R. 784, 791 (S.D.N.Y.1992), aff'd, 992 F.2d 319 (2d Cir.1993). Thus, even assuming, arguendo, IOA gets a summary judgment award in the State Court Action, the Pressmans cannot assert greater rights against debtors than IOA could have done. Debtors may raise the same claims or defenses against the Pressmans that they could have raised against IOA in contesting the validity or enforceability of IOA's direct claims. Fisher v. Outlet Co. (In re Denby Stores, Inc.), 86 B.R. 768, 781 (Bankr.S.D.N.Y.1988); Hartford Accident and Indemnity Co. v. Moraldo, 84 Misc.2d 1082, 1086, 375 N.Y.S.2d 973 (2d Dist.1975). In any event, the substitution of the Pressmans for IOA is no basis for imposing a " 105 injunction here. See In re Brentano's Inc., 36 B.R. 90, 92 (S.D.N.Y.1984). | Doctrine of equitable subrogation gives guarantor right to be subrogated to any and all rights that creditor or subrogor has against debtor, including right to assert any priority or special right of the subrogor. | "Under the doctrine of equitable subrogation, does a guarantor have the right to be subrogated to any and all rights that a creditor or subrogor has against the debtor?" | Subrogation - Memo # 642 - C - SA.docx | ROSS-003324674-ROSS-003324675 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9171 | In re Waters, 419 B.R. 919 | 366+7(1) | The Court is persuaded that Plaintiff is the proper party to bring this nondischargeability action. A surety who pays the debt of his principal is subrogated to all the rights of the creditor. The surety may proceed immediately against his principal for the debt paid. O.C.G.A. "" 10"7"41,"56 (2009). | Under Georgia law, a surety who pays the debt of his principal is subrogated to all the rights of the creditor and may proceed immediately against his principal for the debt paid. West's Ga.Code Ann. S 10-7-41-56. | Is a surety who pays the debt of his principal subrogated to all the rights of the creditor and can the surety proceed immediately against his principal for the debt paid? | Subrogation - Memo # 676 - C - NO.docx | ROSS-003326611-ROSS-003326612 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 9172 | Casstevens v. Smith, 269 S.W.3d 222 | 366+41(1) | A right of subrogation is not a substantive, tangible thing of such nature that it can be seized and held independently of a judicial proceeding; it is a right of action only"that is, it must be established by a judicial proceeding. Downing v. Jeffrey, 173 S.W.2d 241, 246 (Tex.Civ.App."Galveston 1943, writ ref'd w.o.m.) (op. on reh'g). Here, even if Casstevens had proof of payment on behalf of the Carrolls, her equitable cause of action would be against the Carrolls, not the Smiths. We do not believe this unprosecuted, alleged cause of action that Casstevens may have against the Carrolls affects the title and ownership rights acquired by the Smiths. | A right of subrogation is not a substantive, tangible thing of such nature that it can be seized and held independently of a judicial proceeding; it is a right of action only, that is, it must be established by a judicial proceeding. | "Is a right of subrogation a right of action only, which must be established by a judicial proceeding?" | 044116.docx | LEGALEASE-00121731-LEGALEASE-00121732 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 9173 | Rockwell v. Allegheny Health, Educ. & Research Found., 19 F. Supp. 2d 401 | 237+6(1) | Moreover, not all of Donnelly's statements, as expressions of opinion, are clearly founded on disclosed facts. A simple non-actionable expression of opinion occurs when a person expresses a comment as to another's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence. Wolgin v. Smith, 1996 WL 745285, 3 (E.D.Pa.1996) (citing Restatement 2d Torts " 566, comment b). "Pure opinion" is based on disclosed facts and is non-actionable. Opinion that is not based on disclosed facts is "mixed opinion," comprising factual statements that surpass mere expressions of opinion. "Mixed opinion" implies the existence of undisclosed facts and is therefore actionable. | Under Pennsylvania law, simple non-actionable expression of opinion occurs when person expresses comment as to another's conduct, qualifications or character after either stating facts on which he bases his opinion or when both parties to communication know facts or assume their existence. | What are non actionable opinions? | Libel and Slander - Memo 190 - BP.docx | ROSS-003283153-ROSS-003283155 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9174 | Gillispie v. Goodyear Serv. Stores, 258 N.C. 487 | 302+48 | The facts alleged, but not the pleader's legal conclusions, are deemed admitted when the sufficiency of the complaint is tested by demurrer. Stamey v. Membership Corp., 247 N.C. 640, 645, 101 S.E.2d 814. "Where the complaint merely alleges conclusions and not facts, it fails to state a cause of action and is demurrable. G.S. s 1-127(6)"; Broadway v. Asheboro, 250 N.C. 232, 233, 108 S.E.2d 441, 443. However, it is well settled that a complaint must be fatally defective before it will be rejected as insufficient, and "if in any portion of it or to any extent it presents facts sufficient to constitute a cause of action the pleading will stand." (Our italics) Snotherly v. Jenrette, supra, 232 N.C. p. 608, 61 S.E.2d p. 711; Buchanan v. Smawley, 246 N.C. 592, 595, 99 S.E.2d 787. | A complaint must be fatally defective before it will be rejected as insufficient, and if any portion of it or to any extent it presents facts sufficient to constitute a cause of action the pleading will stand. G.S. S 1-127(6). | Should a complaint be fatally defective for rejecting it as insufficient? | 022940.docx | LEGALEASE-00122242-LEGALEASE-00122243 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 9175 | Taylor v. Bd. of Educ. of City of Chicago, 2014 IL App (1st) 123744 | 307A+3 | The decision of whether to grant a motion in limine rests within the sound discretion of the trial court and will not be disturbed on appeal unless that discretion is abused. Martinez v. Elias, 397 Ill.App.3d 460, 467, 337 Ill.Dec. 334, 922 N.E.2d 457 (2009). An abuse of discretion will be found only if the trial court's ruling was arbitrary, unreasonable, or ignored recognized principles of law, or if no other reasonable person would take the position adopted by the court. Schmitz v. Binette, 368 Ill.App.3d 447, 452, 306 Ill.Dec. 447, 857 N.E.2d 846 (2006). | Decision of whether to grant motion in limine rests within sound discretion of trial court and will not be disturbed on appeal unless that discretion is abused. | Is a denial of motion in limine within the sound discretion of trial judge? | 024095.docx | LEGALEASE-00121910-LEGALEASE-00121911 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9176 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82 | 307A+3 | The next issue raised by the appellants is the trial court's limitation of their questioning of Benchmark's employees at trial. They contend that it was error for the trial court to grant Benchmark's motion in limine barring them from questioning Benchmark employees regarding their opinions on the basis that those opinions were not properly disclosed. We conclude that this argument by appellants is essentially waived and ultimately fails to support their motion for a new trial. A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. Todd W. Musburger, Ltd. v. Meier, 394 Ill.App.3d 781, 801"02, 333 Ill.Dec. 383, 914 N.E.2d 1195 (2009) | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | Does the trial court have wide discretion when ruling on a motion in limine? | 024272.docx | LEGALEASE-00121989-LEGALEASE-00121990 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9177 | Perry v. Gulf Stream Coach, 871 N.E.2d 1038 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Hopper v. Carey, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), trans. denied. The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. Id. Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. Id. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. Id. The standard of review for admissibility of evidence issues is abuse of discretion. Id. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Bentley v. State, 846 N.E.2d 300, 304 (Ind.Ct.App.2006), trans. denied. | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the grant or denial of a motion in limine within the sound discretion of the trial court and is an adjunct of the power of trial courts to admit and exclude evidence? | 024398.docx | LEGALEASE-00122025-LEGALEASE-00122026 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9178 | Castaneda v. Texas Dep't of Protective & Regulatory Servs., 148 S.W.3d 509 | 30+4179 | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963); Trevino v. Texas Department of Protective and Regulatory Services, 893 S.W.2d 243, 249 (Tex.App.-Austin 1995, no writ). The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. Trevino, 893 S.W.2d at 249. Thus, the error, if any, relates to the discussion of this evidence during voir dire. | The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. | Does the grant or denial of a motion in limine have bearing on the ultimate admissibility of the evidence and will it be a reversible error? | Pretrial Proceedure - Memo # 37 - C - TJ.docx | ROSS-003288667-ROSS-003288668 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9179 | Moore v. Scott, 759 S.W.2d 827 | 308+41(2) | We now turn to the problem of revocation before the time specified within the grant. The power specifically provides that "in no case is [it] to terminate before the 31st day of December, 1989." As indicated, the partition suit was filed on August 7, 1987. We, therefore, must consider the revocation of a naked power in violation of a provision of the instrument. We have heretofore alluded to the fact that such revocation is permissible subject to a possible response in damages. That rule is stated, in relevant part, as follows:REVOCATION OR RENUNCIATIONAuthority terminates if the principal or the agent manifests to the other dissent to its continuance.a. Such termination by act of the principal is revocation; by act of the agent, it is renunciation.b. Power to revoke or renounce. The principal has power to revoke and the agent has power to renounce, although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable. A statement in a contract that the authority cannot be terminated by either party is effective only to create liability for its wrongful termination. | Principal has power to revoke naked power of attorney and agent has power to renounce, although doing so is in violation of contract between the parties and although authority is expressed to be irrevocable; statement in contract that authority cannot be terminated by either party is effective only to create liability for its wrongful termination. | Can Agency be terminated due to renunciation by an agent? | 041322.docx | LEGALEASE-00122291-LEGALEASE-00122292 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9180 | City of Chicago v. Alton R. Co., 355 Ill. 65 | 317A+102 | We have set out the argument of the railroad as to the first paragraph of section 57 of the Public Utilities Act, which section deals directly with railroads and contains the above mentioned "or other property." In their brief and argument counsel for the railroad made no reference to the specific apparatus, safety devices, and equipment, such as block signals and the like, and entirely overlooked the second paragraph of section 57. Our conclusion is that the language omitted from the first paragraph, coupled with the second paragraph, shows that the Legislature did not intend to confer upon the Commerce Commission exclusive control over all equipment and property owned by public utilities, and that cities and villages may exercise police power over such property as has no distinctive public utility feature or use where this control will not tend to defeat the objects of the Public Utilities Act. The purpose of the Public Utilities Act was to bring under the control of the public, for the common good, property applied to public use in which the public has an interest (Palmyra Telephone Co. v. Modesto Telephone Co., 336 Ill. 158, 167 N. E. 860), also to establish and to protect public utilities in their respective fields from destructive competition (Chicago Railways Co. v. Commerce Comm., 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938). The act contemplates actual supervision of every public utility, so that continuous, adequate, uniform, and satisfactory service shall be rendered to the public at reasonable rates and without discrimination. Roy v. Illinois Commerce Comm., 322 Ill. 452, 153 N. E. 648; Illinois Power & Light Corp. v. Commerce Comm., 320 Ill. 427, 151 N. E. 236. To effectually carry out the purpose of the Public Utilities Act, does not require us to hold that the Commerce Commission shall regulate buildings used or to be used in the future by the railroad or the elevators now in use by it, or to further hold that by implication these regulatory powers were repealed and | Purposes of Public Utilities Act were to bring under public control for common good property applied to public use in which public has interest and to establish and protect public utilities from destructive competition. S.H.A. ch. 1112/323, S 1 et seq. | Does the legislation concerning public utilities protect them from destructive competition? | 042213.docx | LEGALEASE-00122233-LEGALEASE-00122235 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 9181 | Ertel v. Radio Corp. of Am., 261 Ind. 573 | 366+7(1) | The issue is wheter Ertel, as guarantor of the note, became subrogated to the rights of Economy as a result of satisfying the debt owing from Delta to Economy. The general rule, firmly imbedded in Indiana law, is that a surety, upon satisfaction of a debt, is subrogated to all the rights which the creditor had against the principal debtor prior to satisfaction of the debt. Gerber v. Sharp (1880), 72 Ind. 553; Vonderahe v. Ortman (1958),128 Ind.App. 381, 146 N.E.2d 822, 147 N.E.2d 924; National Mut. Ins. Co. of Washington, D.C. v. Maryland Cas. Co. (1963), 136 Ind.App. 35, 187 N.E.2d 575. | Generally, a surety, upon satisfaction of a debt, is subrogated to all the rights which the creditor had against the principal debtor prior to satisfaction of the debt. | "Is a surety, upon satisfaction of a debt, subrogated to all the rights which the creditor had against the principal debtor prior to satisfaction of the debt?" | Subrogation - Memo # 902 - C - VA.docx | ROSS-003283132-ROSS-003283133 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9182 | Weast v. Arnold, 299 Md. 540 | 366+7(1) | It is well-settled that a surety who pays the debt for the principal obligor becomes subrogated to the rights of the creditor, including rights in the security. We said in Finance Co. v. United States Fidelity & Guaranty Co., 277 Md. 177, 182, 353 A.2d 249, 252 (1976) that "[s]ubrogation is a long-standing equitable doctrine in Maryland whereby one who is secondarily liable for a debt, and has paid it, stands in the place of the creditor ... and is entitled to the benefit of all the securities and remedies which could have been resorted to for the payment of the debt." See Blair v. Baker, 196 Md. 242, 76 A.2d 129 (1950); Embrey v. Embrey, 163 Md. 162, 161 A. 153 (1932); Wallace v. Jones, 110 Md. 143, 72 A. 769 (1909); Orem v. Wrightson, 51 Md. 34 (1879); Freaner v. Yingling, 37 Md. 491 (1873); Lawson v. Snyder, 1 Md. 71 (1851); Mullen, The Equitable Doctrine of Subrogation, 3 Md.L.Rev. 201, 218-20 (1939). For recent cases applying the principle, see LeRoy v. Marquette National Bank, 277 N.W.2d 351 (Minn.1979); Murray v. Payne, 437 So.2d 47 (Miss.1983); O'Hara v. First National Bank, 613 S.W.2d 306 (Tex.Civ.App.1980). And see generally 1 Bender's Uniform Commercial Code Service, P. Coogan, W. Hogan, D. Vagts & J. McDonnell, Secured Transactions under the Uniform Commercial Code " 5A.06 (1983); D. Dobbs, Handbook on the Law of Remedies at 250-52 (1973); 2A Hart & Willier, supra, " 13:29; L. Simpson, Handbook of the Law of Suretyship at 215-20 (1950); A. Stearns, The Law of Suretyship " 11.4 (Elder 5th ed. 1951); 10 S. Williston, A Treatise on the Law of Contracts " 1273 (Jaeger 3d ed. 1967). | Surety who pays the debt for a principal obligor becomes subrogated to the rights of the creditor including rights in the security. | "Does a surety, who pays for the principal obligators debt becomes subrogated to the rights of the creditor, including rights in security?" | Subrogation - Memo # 903 - C - VA.docx | ROSS-003310288-ROSS-003310289 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9183 | Am-Haul Carting v. Contractors Cas. & Sur. Co., 33 F. Supp. 2d 235 | 366+7(1) | While Contractors did on the eve of trial settle with a single claimant under the payment bond, it has yet to pay out a penny, or step in in any other way, in regard to its obligations under the performance bond which is the subject of this action. Under New York law, a surety's right of subrogation "becomes available when the surety company completes the work at a loss." See United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 36, 74 N.E.2d 226 (1947). This Contractors has not done. | Under New York law, a surety's right of subrogation under performance bond becomes available when the surety completes the work at a loss. | Does a surety's right of subrogation under performance bond become available when the surety completes the work at a loss? | Subrogation - Memo # 915 - C - CAR.docx | ROSS-003283888-ROSS-003283889 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9184 | Jeanes v. Bank of Am., N.A., 40 Kan. App. 2d 281 | 13+61 | To illustrate, Kansas courts generally observe the rule that a cause of action accrues as soon as the right to maintain a legal action arises. The test to determine when an action accrues is that point when a plaintiff could have first filed and prosecuted an action to a successful conclusion. Pancake House, Inc. v. Redmond, 239 Kan. 83, 87, 716 P.2d 575 (1986). The Pancake court recognized that depending upon the facts and circumstances of each case, at least four theories can apply in Kansas when determining the accrual of a cause of action for legal malpractice:"(1) The occurrence rule"the statute begins to run at the occurrence of the lawyer's negligent act or omission."(2) The damage rule"the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct. "(3) The discovery rule"the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney."(4) The continuous representation rule"the client's cause of action does not accrue until the attorney-client relationship is terminated." 239 Kan. at 87, 716 P.2d 575.For cases discussing all four points, see Annot., 32 A.L.R.4th 260; ABA/BNA Lawyers' Manual on Professional Conduct " 301:901 (1985); Mallen and Levit, Legal Malpractice " 388 et seq. (2d ed.1981). | Generally, a cause of action accrues as soon as the right to maintain a legal action arises; the test to determine when an action accrues is that point when a plaintiff could have first filed and prosecuted an action to a successful conclusion. | Does a cause of action accrue when the plaintiff could have first maintained the action to a successful conclusion? | 005430.docx | LEGALEASE-00122711-LEGALEASE-00122712 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9185 | Peroti v. Williams, 258 Md. 663 | 272+202 | At the close of all the evidence Judge Jones decided plaintiff had shown conclusively that defendant Pompey violated the "boulevard law," Code (1957, 1967 Repl.Vol.), article 66 1/2, section 233, and that this violation was a cause of the accident. There being no evidence of contributory negligence on plaintiff's part, Judge Jones ruled Pompey was negligent as a matter of law. Without deciding the question we shall assume this conclusion of Judge Jones was proper. If error exists it is in appellant's favor on this point and she has no right on appeal to complain. However, Judge Jones went further and in her formal verbal ruling granted plaintiff's motion for a directed verdict "that Pompey was liable." The clerk, in accordance with Maryland Rule 522 c, made a docket entry that read "verdict in favor of plaintiff against defendant Robert Lee Pompey under instruction of the court as to liability only" (emphasis supplied). We conclude this was error. In Richardson v. Boato, 207 Md. 301, 114 A.2d 49 (1955) there was a negligence action for injuries allegedly suffered in an automobile collision. The negligence of defendant was apparent, but there was sharp dispute over the extent and cause of plaintiff's injuries. Plaintiff requested an instruction by the court that "defendant was liable as a matter of law, leaving only the amount of damages for the jury" (emphasis supplied). We upheld the refusal of the trial court to give such an instruction. Judge (now Chief Judge) Hammond speaking for the Court in that case clearly delineated the distinction between negligence and liability. Even if the negligence of the defendant as a matter of law exists, this conclusion alone will not authorized the granting of a directed verdict in favor of the plaintiff on the question of liability. Liability is an obligation to pay, and arises only when all essential elements of an action are established. The basic elements necessary for a cause of action in negligence are a duty or obligation which the defendant is under to | The basic elements necessary for a cause of action in negligence are a duty or obligation which defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to plaintiff proximately resulting from that failure. | Does a cause of action arise when a liability or obligation is established? | 005527.docx | LEGALEASE-00123856-LEGALEASE-00123857 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 9186 | Kohler v. Barnes, 123 N.J. Super. 69 | 13+61 | Generally, a cause of action accrues when facts exist which entitle one party to maintain an action against another. Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J.Super. 522, 540, 163 A.2d 465 (App.Div.), modified 64 N.J.Super. 1, 165 A.2d 216 (App.Div.), certif. den. 33 N.J. 387, 164 A.2d 849 (1960); Marini v. Borough of Wanaque, 37 N.J.Super. 32, 38, 116 A.2d 813 (App.Div.1955). | Generally, cause of action accrues when facts exist which entitle one party to maintain an action against another. | Does a cause of action accrue when facts exist which entitle one party to maintain an action against another? | Action - Memo # 172 - C CS.docx | ROSS-003326357-ROSS-003326359 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9187 | Gen. Motors Acceptance Corp. v. Howard, 487 S.W.2d 708 | 13+61 | The accrual of a cause of action results when facts come into existence which entitle one to institute and maintain a suit. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1945); A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619, 621 (1939); Shamrock Oil and Gas Corporation v. Price, 364 S.W.2d 260, 262 (Tex.Civ.App., 1963, no writ). The accrual of a cause of action is not negated by a showing that it may be subject to defeat on the merits by an affirmative defense. Thus, false statements indicating that a plaintiff is bankrupt have been held to be libelous per se, even though a suit for damages therefor may be defeated on the merits by an affirmative defense of conditional privilege. Denton Publishing Company v. Boyd, 460 S.W.2d 881 (Tex.1970); Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896 (Tex.1970); Thorn v. Theo H. Blue Drilling, Inc., 472 S.W.2d 535 (Tex.Civ.App., 1971, no writ). The above cases indicate that malice is not an essential element of the original cause of action, although once the defendant establishes an affirmative defense of privilege, the burden is upon the plaintiff to show, if he can, that the privilege was lost because of malice. These defenses and counter-defenses go to the merits and often, as here, involve fact issues or mixed issues of law and fact. This Court held in Boyd, supra: "Privilege is an affirmative defense in the nature of confession and avoidance; and, except where the plaintiff's petition shows on its face that the alleged libelous publication is protected by a privilege, the defendant has the burden of proving that the publication is privileged. A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. 777 (1922); Dealers National Insurance Co. v. Rose, 396 S.W.2d 535 (Tex.Civ.App.1965, no writ) . . ." (460 S.W.2d at 884). | Cause of action accrues when facts come into existence which entitle one to institute and maintain a suit. | Does cause of action accrue when facts come into existence which entitle one to institute and maintain a suit? | 005617.docx | LEGALEASE-00124010-LEGALEASE-00124012 | Order, SA | 0.94 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9188 | Dep't of Banking v. McMullen, 134 Neb. 338 | 241+43 | If the statute provided a director's liability for the amount of the excessive loan, or the balance due thereon, instead of all damages actually suffered, plaintiff's contention might have merit, except that the statute would then be penal in character. The recovery under this statute is not limited to the amount of the excess loan or the balance still due thereon. There is no limitation except all damages actually suffered by the unlawful act. The statute gives to any person damaged""this includes a creditor""a right to a cause of action, and any such person, if damaged, had an immediate right to begin suit. The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief. When the cause of action accrues is a judicial question, and to determine it in any particular case is to settle a general rule of law for a class of cases which must be founded upon reason and justice. See 37 C.J. 810. We concede that there must be a wrong and damages as a consequence thereof, but the law cannot concede that no cause of action would arise until the damages could be exactly determined. The amount of damages recoverable may depend upon the damages incurred, but that does not toll the statute to await the accumulation thereof. In 37 C.J. 815, we find the statement: "Under the rule that an action for a breach of contract may be begun before substantial damage has been sustained, a right of action accrues and the statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained; nor does the subsequent accrual of additional damages resulting from the same breach afford a new cause of action so as to create a new period of limitation. Where the | As respects running of limitations, the "accrual of a cause of action" means the right to maintain and institute a suit, and, whenever one person may sue another, cause of action has accrued and the statute begins to run. | What is accrual of a cause of action? | 005781.docx | LEGALEASE-00122956-LEGALEASE-00122957 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 9189 | Colburn v. Wilson, 570 So. 2d 652 | 241+55(3) | The statutory limitations period does not begin to run until the cause of action accrues. Ramey v. Guyton, 394 So.2d 2 (Ala.1980). A cause of action accrues when the act complained of results in injury to the plaintiff. Guthrie v. Bio"Medical Laboratories, Inc., 442 So.2d 92 (Ala.1983). | Statutory limitations period in medical malpractice case does not begin to run until cause of action accrues, i.e., when acts complained of result in injury to plaintiff. Code 1975, S 6-5-482. | Does a cause of action accrue when the act complained of results in legal injury to the plaintiff? | 005826.docx | LEGALEASE-00123096-LEGALEASE-00123097 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 9190 | In re Carper's Estate, 67 A.D.2d 333 | 75+21(1) | The primary duty of the court is to find and implement the intention of the testator as it is manifested in the language of the will (Matter of Jones, 38 N.Y.2d 189, 379 N.Y.S.2d 55, 341 N.E.2d 565). Where gifts to charity are involved, several additional rules of construction are relevant. When a testator evinces a charitable intent, it will be given effect by application of liberal rules of construction (Matter of Nurse, 35 N.Y.2d 381, 362 N.Y.S.2d 441, 321 N.E.2d 537). Charitable trusts do not need the same degree of certainty as to the beneficiaries that other gifts do (Allen v. Stevens, 161 N.Y. 122, 55 N.E. 568), and a charitable gift should be sustained whenever possible under the cy pres doctrine in the light of the intention of the testator (Matter of Kirkbride, 261 App.Div. 853, 24 N.Y.S.2d 375). | Charitable trusts do not need the same degree of certainty as to the beneficiaries as other gifts do; a charitable gift should be sustained whenever possible under the cy pres doctrine in light of the intention of the testator. EPTL 8-1.1. | Do charitable trusts required some degree of certainty as to beneficiaries like other gifts do? | Charities - Memo 17 - JS.docx | ROSS-003285512-ROSS-003285513 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9191 | Hattler v. Schaefer, 25 Ariz. App. 579 | 113+1 | Appellants' argument that the Board of Regents may, through ordinances, delimit the authority the faculty may exercise in determining its department heads, but that the legislature has reposed governing authority in the faculty, inverts the source of authority. The statute clearly and simply recognizes governing authority in the Board of Regents and empowers that body to authorize a faculty voice in intra-collegiate government. Appellants also claim the right to select their own department head by virtue of 'the common law of the campus.' They contend that the practice of soliciting input from a department in searches for an acceptable department head has ripened, through custom and usage, into a right to compel appointment of their choice. Custom and usage is a contract term. It is used to interpret the words of a contract and to give effect to the intentions of the parties. Corbin on Contracts, Vol. 3, s 556(1960). It has no application here as contract rights are not involved. | Custom and usage is contract term and is used to interpret words of contract and give effect to intentions of parties; it therefore had no application in suit by university faculty members for determination as their right to elect department head. | May custom and usage be used to interpret words of contract and give effect to parties intent? | Customs & Usage - Memo 42 - TB.docx | ROSS-003291028-ROSS-003291029 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 9192 | Century Expl. New Orleans v. United States, 103 Fed. Cl. 70 | 148+2.5 | In a number of cases, the Court of Claims, the Federal Circuit, and this court have warned against "commingling takings compensation and contract damages[.]" See Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed.Cir.2001). In that regard, the Court of Claims has explained that the Takings Clause of the Fifth Amendment "has limited application to the relative rights in property of parties litigant which have been voluntarily created by contract." J.J. Henry Co. v. United States, 411 F.2d 1246, 1249 (Ct.Cl.1969). When a plaintiff possesses enforceable rights under a contract with the government, "interference with such contractual rights generally gives rise to a breach claim not a taking claim." Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct.Cl.1978). Notwithstanding those statements, however, the Federal Circuit has not held that plaintiffs coming before this court are categorically prohibited from raising a takings claim as well as a breach of contract claim in the same complaint, and pursuing both claims as alternative theories of recovery, although a takings claim might ultimately be barred for other reasons, such as a failure to demonstrate the existence of a property right protected by the Fifth Amendment. | When plaintiff possesses enforceable rights under contract with government, interference with such contractual rights generally gives rise to breach claim, not Fifth Amendment takings claim. U.S.C.A. Const.Amend. 5. | Does interference with contractual rights gives rise to a taking claim? | 017473.docx | LEGALEASE-00122904-LEGALEASE-00122905 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9193 | First Nat. City Bank v. Banco Nacional de Cuba, 406 U.S. 759 | 221+342 | Thus, both the act of state and sovereign immunity doctrines are judicially created to effectuate general notions of comity among nations and among the respective branches of the Federal Government. The history and the legal basis of the act of state doctrine are treated comprehensively in the Court's opinion in Sabbatino, supra. The Court there cited Chief Justice Fuller's "classic American statement" of the doctrine, found in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) :"Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." | The act of state doctrine precludes any review whatever of the acts of the government of one sovereign state done within its own territory by the courts of another sovereign State. (Per Mr. Justice Rehnquist with The Chief Justice and another Justice concurring and two Justices concurring in result.) | "Under the act of state doctrine, is every sovereign state bound to respect independence of every other sovereign state, and will courts of one country sit in judgment on acts of government of another which are done within its own territory?" | International Law - Memo # 262 - C - ANC.docx | ROSS-003283706-ROSS-003283707 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9194 | Russian Reinsurance Co. v. Stoddard, 211 A.D. 132 | 221+134 | Clearly enough, the general rule to be followed is that "acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government de facto." The doubt is only as to possible limitations upon the general rule, where the questioned acts or decrees of an unrecognized government were "just in operation and consistent with public policy," or where "limitations upon the general rule may be appropriate for the protection of one who has been the victim of spoliation though they would be refused to the spoliator or to others claiming under him," or where a body or group which has vindicated by the course of events its pretensions to sovereign power, but which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done.' We see no necessity or justice in the instant case for applying any exception to the general rule. To permit the acts and decrees of the Soviet R"gime to gain a validity quasi-governmental in this case would do "violence to fundamental principles of justice" and "to our own public policy." Our government has deliberately and persistently refused to recognize the present Russian Government because the existing R"gime there "is based upon the negation of every principle of honor and good faith, and every usage and convention, underlying the whole structure of international law, the negation, in short, of every principle upon which it is possible to base harmonious and trustful relations, whether of nations or of individuals." Russian Socialist Federated Soviet Republic v. Cibrario, 235 N. Y. 255, 264, 139 N. E. 259, 262. | As a general rule, acts or decrees to be ranked as governmental must proceed from some authority recognized as a government de facto. | "Do acts or decrees, to be ranked as governmental, proceed from some authority recognized as a government de facto?" | 020309.docx | LEGALEASE-00123392-LEGALEASE-00123393 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9195 | Fiscal Court of Pendleton Cty. v. Pendleton Cty. Bd. of Educ., 240 Ky. 589 | 250+167 | The answer in this case charges in a general way that the item included for the payment of the debt was for the purpose of paying an illegal indebtedness incurred in the preceding years by the board having expended more than the available revenue in violation of the law, and that the board had undertaken to obligate itself to pay this illegal debt. The attack is more indefinite and defective than the pleading referred to in the Breathitt County Case, supra, which was held insufficient to raise an issue. It is the settled rule in this jurisdiction that it is incumbent upon one challenging the validity of an indebtedness of a municipality or of a tax levy to pay an obligation to allege as well as prove facts showing its invalidity. Elliott County Fiscal Court v. Elliott County Board of Education, supra; King v. Christian County Board of Education, 229 Ky. 234, 16 S.W.(2d) 1053; Parsons v. Arnold, 235 Ky. 600, 31 S.W.(2d) 928. The pleading in this instance falls far short of compliance with that rule. | One challenging validity of indebtedness of municipality or of tax levy to pay obligation must allege as well as prove facts showing invalidity. | Should validity of indebtedness of a municipality be challenged by alleging facts? | 022951.docx | LEGALEASE-00123496-LEGALEASE-00123497 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9196 | Fiscal Court of Pendleton Cty. v. Pendleton Cty. Bd. of Educ., 240 Ky. 589 | 250+167 | The answer in this case charges in a general way that the item included for the payment of the debt was for the purpose of paying an illegal indebtedness incurred in the preceding years by the board having expended more than the available revenue in violation of the law, and that the board had undertaken to obligate itself to pay this illegal debt. The attack is more indefinite and defective than the pleading referred to in the Breathitt County Case, supra, which was held insufficient to raise an issue. It is the settled rule in this jurisdiction that it is incumbent upon one challenging the validity of an indebtedness of a municipality or of a tax levy to pay an obligation to allege as well as prove facts showing its invalidity. Elliott County Fiscal Court v. Elliott County Board of Education, supra; King v. Christian County Board of Education, 229 Ky. 234, 16 S.W.(2d) 1053; Parsons v. Arnold, 235 Ky. 600, 31 S.W.(2d) 928. The pleading in this instance falls far short of compliance with that rule. | One challenging validity of indebtedness of municipality or of tax levy to pay obligation must allege as well as prove facts showing invalidity. | Should an invalidity of a municipal tax levy be challenged by stating facts? | Pleading - Memo 140 - RMM.docx | ROSS-003297179-ROSS-003297180 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9197 | Keyes v. Nevada Gas Co., 55 Nev. 431 | 228+252(2) | Counsel for appellant makes two propositions as grounds for a reversal of the judgment. The first proposition is that the prayer of a complaint is not to be considered on general demurrer. Section 8594, N. C. L., states what a complaint must contain. It requires, among other things, that the complaint shall contain "a demand for the relief which the plaintiff claims. If the recovery of money or damages be demanded, the amount thereof shall be stated." Hence it appears that a complaint without a prayer for relief is incomplete. It is true, however, that the prayer for relief forms no part of the statement of the cause of action (Kingsbury v. Copren, 43 Nev. at page 454, 187 P. 728, 189 P. 676), and, when an answer is filed and a trial is had, judgment will be awarded in accordance with the facts pleaded and proven. But, where no answer is filed, the relief which may be granted is expressly limited by section 8792, N.C.L., to "the relief demanded in the complaint." Burling v. Goodman, 1 Nev. 314; Esden v. May, 36 Nev. 611, 135 P. 1185, 1187; Bliss, Code Pl. (3d Ed.) "" 160, 161; Kelly v. Downing, 42 N.Y. 71 | Complaint without prayer for relief is incomplete, but prayer for relief forms no part of statement of cause of action, and, when answer is filed and trial is had, judgment will be awarded in accordance with facts pleaded and proven, but, where no answer is filed, relief is limited to relief demanded in complaint. Comp.Laws 1929, SS 8594, 8792. | Is the prayer for relief a part of the cause of action? | 022969.docx | LEGALEASE-00123517-LEGALEASE-00123519 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9198 | Albersworth v. Albersworth, 184 S.W.3d 81 | 307A+3 | The trial court conditionally granted the Motion to Strike Expert Witness Opinion and Testimony, but denied the Motion in Limine. An in limine ruling is a preliminary expression of the court's opinion regarding the admissibility of the evidence at issue. Evans v. Wal-Mart Stores, Inc., 976 S.W.2d 582, 584 (Mo.App. E.D.1998). "The trial court is not bound by its in limine ruling and may admit the evidence when offered at trial." Id. Thus, an order sustaining a motion in limine and excluding evidence is an interlocutory order and is subject to change by the trial court during the course of the trial; the trial court is free to alter its pretrial ruling and admit the evidence. Smith v. Associated Natural Gas Co., 7 S.W.3d 530, 536 (Mo.App. S.D.1999); Choate v. Natvig, 952 S.W.2d 730, 733 (Mo.App. S.D.1997). The trial court Motion to Strike Expert Witness Opinion and Testimony was a motion in limine and the trial court could reverse its ruling at trial. | Trial court motion to strike expert witness opinion and testimony was motion in limine, and thus, trial court could reverse its ruling at trial. | Can a trial court reverse its ruling on motion to strike an expert witness as it is a motion in limine? | Pretrial Procedure - Memo # 150 - C - CRB.docx | LEGALEASE-00013601-LEGALEASE-00013602 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9199 | Smith v. Polsky, 796 S.E.2d 354 | 307A+3 | It is well established that [a] motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling.... Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Indus. Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. Id. | Trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature; therefore, trial court's ruling on a motion in limine is subject to modification during the course of the trial. | Is a trial court's ruling on a motion in limine final or rather interlocutory and subject to modification? | 024426.docx | LEGALEASE-00122746-LEGALEASE-00122748 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9200 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | A motion for partial summary judgment is an appropriate way to challenge a claim for punitive damages. Berenger v. Frink, 314 N.W.2d 388, 390 (Iowa 1982); Lundgren v. Eustermann, 370 N.W.2d 877, 882 (Minn.1985); see also Chapman v. Jones, No. M1999"02178"COA"R9"CV, 2000 WL 13793, at Tenn.Ct.App. Jan.10, 2000) (No Tenn. R.App. P. 11 application filed). Rather than testing Ms. Cook's punitive damage claim using a motion for summary judgment, the Hyundai defendants waited until approximately one week before trial to file their motion in limine whose purpose was to choke off Ms. Cook's punitive damage claim by preventing her from introducing the very evidence she would be required to present during the first phase of the trial to establish that she had a right to punitive damages. Had the trial court considered the motion in limine, it would have permitted the Hyundai defendants to skirt the notice and burden of persuasion requirements normally associated with summary judgment motions. The Hyundai defendants, however, did not press their motion in limine. Had they done so, the trial court would properly have denied it. | A motion for partial summary judgment, not a motion in limine, is an appropriate way to challenge a claim for punitive damages. | "Is a motion for partial summary judgment, not a motion in limine, an appropriate way to challenge a claim for punitive damages?" | Pretrial Procedure - Memo # 288 - C - CRB.docx | ROSS-003283593-ROSS-003283595 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 9201 | Powell v. Alan Young Homes, 251 Ga. App. 72 | 307A+3 | The trial court has an absolute right to refuse to decide on the admissibility of evidence .. prior to trial [and] may reserve ruling on the admissibility of evidence until it is offered during trial." Where the plaintiff fails to raise an objection to the evidence when it is presented, he forfeits his right to have the evidence excluded. Furthermore, "[e]xcept as otherwise provided in OCGA " 5-5-24(c), in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." | Trial court has an absolute right to refuse to decide on the admissibility of evidence prior to trial and may reserve ruling on the admissibility of evidence until it is offered during trial. | May the court reserve ruling on the admissibility of evidence until it is offered during trial? | Pretrial Procedure - Memo # 304 - C - CRB.docx | ROSS-003297353-ROSS-003297354 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9202 | Hopper v. Carey, 716 N.E.2d 566 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Jones v. State, 163 Ind.App. 454, 324 N.E.2d 828, 832 (1975). The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. City of Indianapolis on Behalf of Dept. of Metropolitan Development v. Heeter, 171 Ind.App. 119, 355 N.E.2d 429, 439 (1976). It must be noted that ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. Id. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. Id. The standard of review for admissibility of evidence issues is abuse of discretion. Timberlake v. State, 690 N.E.2d 243, 255 (Ind.1997), cert. denied, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Even if a trial court errs in a ruling on the admissibility of evidence, we will only reverse if the error is inconsistent with substantial justice. | Ordinarily, the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. | "Can the denial of a motion in limine cause error, the occurrence being the improper admission of items in evidence?" | Pretrial Procedure - Memo # 322 - C - ANC.docx | ROSS-003329574-ROSS-003329575 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9203 | State v. Evans, 196 Wash. App. 1075 (2016) | 110+1036.1(2) | The fact that the trial court sustained the pretrial motion in limine does not automatically result in a permanent exclusion of the references sought to be prohibited. The pretrial ruling is interlocutory only and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence. See State v. Riggs, 586 S.W.2d 447, 449 (Mo.App.1979). Therefore, an objection must be made at trial when the evidence is offered or the reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon. | Fact that trial court sustained pretrial motion in limine does not automatically result in permanent exclusion of the references sought to be prohibited, as pretrial ruling is interlocutory only and additional information produced at trial may prompt the trial court to alter the ruling and admit the evidence, and thus objection must be made at trial when the evidence is offered or reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon. | Does granting motion in limine automatically result in permanent exclusion of disputed evidence? | 029204.docx | LEGALEASE-00123083-LEGALEASE-00123084 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9204 | Bremmer v. Journal-Tribune Pub. Co., 247 Iowa 817 | 388+9(1) | Some procedural aspects of the case will be first considered. Defendant's contention the order overruling plaintiffs' motion to strike had the effect of an order under R.C.P. 105, and thus became the law of the case, is not well founded. An application to adjudicate law points under R.C.P. 105 is not technically a motion and the effect of a ruling or order thereon is not the same as the effect of an order on a motion assailing a pleading. See Litchford v. Iowa-Illinois Gas & Electric Co., 247 Iowa --, 75 N.W.2d 346. The order overruling plaintiffs' motion to strike was not an adjudication against plaintiffs as an order under R.C.P. 105 would have been. After the order was made plaintiffs filed a reply, as was their rights. See Ranslow v. U. S. Fidelity & Guaranty Co., 243 Iowa 731, 733, 734, 53 N.W.2d 247, 248, R.C.P. 73 and 104(c). Nor did the order become the law of the case which the trial court was required to follow. Had the proposition been properly presented to the trial court again, it could have made a contrary order. Kuiken v. Garrett, 243 Iowa 785, 790-793, 51 N.W.2d 149, 153, 154, 41 A.L.R.2d 1397. | An application to adjudicate law points under Rule of Civil Procedure is not technically a motion, and the effect of the ruling or order thereon is not the same as the effect of an order on a motion assailing a pleading. 58 I.C.A. Rules of Civil Procedure, rule 105. | Is an application to adjudicate law points under the Rules of Civil Procedure a motion? | 031840.docx | LEGALEASE-00124153-LEGALEASE-00124154 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9205 | Rosa v. Florida Power & Light Co., 636 So. 2d 60 | 307A+3 | Under these circumstances, we believe the motion in limine satisfies the Anthony test. A motion in limine is similar to a protective order in that it seeks to prohibit any reference to offending evidence at trial by first having its admissibility determined outside the presence of the jury. See 75 Am.Jur.2d Trial " 93. As such, it helps to shorten trial, simplify issues and reduce the possibility of mistrial, 75 Am.Jur.2d Trial " 94, and thereby moves the case toward a conclusion on the merits. See also de Richemont v. Osias, 516 So.2d 100 (Fla. 4th DCA 1987) (Letts, J., dissenting) (motion for protective order directed to interrogatories was sufficient meaningful activity to preclude dismissal for failure to prosecute). In addition, because the trial court had previously ordered that Mrs. Rosa was not required to answer the interrogatory concerning her religion, it was not bad faith for her to seek to have reference to her religious beliefs excluded at trial. | "Motion in limine" is similar to protective order, in that it seeks to prohibit any reference to offending evidence at trial by first having its admissibility determined outside presence of jury. | Is a motion for a protective order and a motion in limine functionally the same? | Pretrial Procedure - Memo # 526 - C - RY.docx | ROSS-003295334-ROSS-003295335 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 9206 | Ambrogio v. Beaver Rd. Assocs., 267 Conn. 148 | 307A+3 | "[T]he motion in limine ... has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." (Internal quotation marks omitted.) State v. Pharr, 44 Conn.App. 561, 581, 691 A.2d 1081 (1997). Accordingly, a party, through a motion in limine, may implore the court to decide a question of law; see Sheiman v. Sheiman, 72 Conn.App. 193, 201, 804 A.2d 983 (2002) (affirming trial court's ruling on motion in limine precluding testimony from treating psychiatrist as privileged); as well as some preliminary questions of fact.See State v. Kelly, 256 Conn. 23, 42, 770 A.2d 908 (2001) ("[w]hether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge" [internal quotation marks omitted]). Although broad, the discretion of a trial judge must yield to a litigant's "constitutional right to have factual issues resolved by the jury." Mather v. Griffin Hospital, 207 Conn. 125, 138, 540 A.2d 666 (1988).By its explicit terms, the defendant's motion in limine posited solely a question of law. Specifically, the motion sought to preclude evidence of lost profits on the legal premise that "[l]ost business and loss of business opportunities are not included in the measure of damages for the breach of a construction contract." (Emphasis added.) Indeed, the notation on the face of the motion reads, "Oral Argument Requested, Testimony Not Required," thus demonstrating that the defendant intended to present the trial court with a question of law only. Consistent with this understanding, no evidence was presented at the hearing on the motion in limine and the trial court's memorandum of decision is devoid of any factual findings establishing that lost profits were not contemplated by the parties at the time the | A party, through a motion in limine, may implore the court to decide a question of law, as well as some preliminary questions of fact. | "Can a party, through a motion in limine, implore the court to decide a preliminary question of fact?" | 038243.docx | LEGALEASE-00124159-LEGALEASE-00124160 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 9207 | In re Leona W., 228 Ill. 2d 439 | 30+3361 | Generally speaking, evidentiary motions, such as motions in limine, are directed to the trial court's discretion. A trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion. People v. Harvey, 211 Ill.2d 368, 392, 286 Ill.Dec. 124, 813 N.E.2d 181 (2004). The threshold for finding an abuse of discretion is high. A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable man would take the view adopted by the court. See Clayton v. County of Cook, 346 Ill.App.3d 367, 377, 281 Ill.Dec. 854, 805 N.E.2d 222 (2003). Moreover, even where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice affecting the outcome of the trial. Holston v. Sisters of the Third Order of St. Francis, 165 Ill.2d 150, 170"71, 209 Ill.Dec. 12, 650 N.E.2d 985 (1995). | Generally speaking, evidentiary motions, such as motions in limine, are directed to the trial court's discretion; a trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion. | Is a court's ruling on evidentiary motions such as motions in limine left to the court's discretion and subject to an abuse of that discretion standard? | 041115.docx | LEGALEASE-00123969-LEGALEASE-00123970 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9208 | Mark v. Agerter, 332 Ga. App. 775 S.E.2d 235 | 307A+3 | A denial of a motion in limine is reviewed for an abuse of discretion, and an abuse of discretion occurs when the trial court "misapplies the law." One Bluff Drive v. K.A.P., Inc., 330 Ga.App. 45, 51"52, 766 S.E.2d 508 (2014); Thomas v. State, 330 Ga.App. 67, 70, 766 S.E.2d 527 (2014). Because a motion in limine is a pretrial determination of the admissibility of evidence, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." Forsyth County v. Martin, 279 Ga. 215, 221(3), 610 S.E.2d 512 (2005). Irrelevant evidence that "does not bear directly or indirectly on the question being tried" should be excluded. CNL APF Partners v. DOT, 307 Ga.App. 511, 515, 705 S.E.2d 862 (2010); Housing Auth. of Macon v. Younis, 279 Ga.App. 599, 631 S.E.2d 802 (2006). A trial court errs in denying a motion in limine when there is "no circumstance under which the evidence at issue [is] likely to be admissible" at trial. Younis, 279 Ga.App. at 601, 631 S.E.2d 802. Here, the trial court abused its discretion when it misapplied the relevant law. | A trial court errs in denying a motion in limine when there is no circumstance under which the evidence at issue is likely to be admissible at trial. | Should a trial court deny a motion in limine when there is no circumstance under which the evidence at issue is likely to be admissible at trial? | 041177.docx | LEGALEASE-00124117-LEGALEASE-00124118 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9209 | Terex-Telelect v. Wade, 59 N.E.3d 298 | 30+3209 | The grant or denial of a motion in limine is within the sound discretion of the trial court and is an adjunct of the power of trial courts to admit and exclude evidence. Hopper v. Carey, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), trans. denied. Therefore, when reviewing a grant or denial of a motion in limine, we apply the standard of review for the admission of evidence, which is whether the trial court abused its discretion. Id. We will find that a trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). | When reviewing a grant or denial of a motion in limine, the Court of Appeals applies the standard of review for the admission of evidence, which is whether the trial court abused its discretion. | Is the grant or denial of a motion in limine within the sound discretion of the trial court? | Pretrial Procedure - Memo 380 - RK.docx | ROSS-003284008-ROSS-003284009 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9210 | Guski v. Raja, 409 Ill. App. 3d 686 | 307A+3 | A court's evidentiary rulings are unreviewable on appeal if they have not been properly preserved. Thornton v. Garcini, 237 Ill.2d 100, 106, 340 Ill.Dec. 557, 928 N.E.2d 804 (2009). When the court makes its ruling before trial pursuant to the parties' motion in limine, the rulings are interlocutory and remain subject to reconsideration by the court throughout the trial. Cetera v. DiFilippo, 404 Ill.App.3d 20, 40, 343 Ill.Dec. 182, 934 N.E.2d 506 (2010).Consequently, denial of the complaining party's pretrial motion to exclude evidence is not sufficient to preserve the issue for appeal. Simmons v. Garces, 198 Ill.2d 541, 569, 261 Ill.Dec. 471, 763 N.E.2d 720 (2002); Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. The complaining party must also make a contemporaneous objection at trial when the evidence is introduced to allow the court the opportunity to revisit its earlier ruling. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720. Failure to object at trial results in forfeiture of the issue on appeal. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720; Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. | When trial court makes its evidentiary rulings before trial pursuant to the parties' motions in limine, the rulings are interlocutory and remain subject to reconsideration by the court throughout the trial. | "Are rulings on motions in limine considered interlocutory in nature, and they remain subject to reconsideration at trial?" | 041206.docx | LEGALEASE-00122960-LEGALEASE-00122961 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9211 | State ex rel. City of Joplin v. Pub. Serv. Comm'n of State of Mo., 186 S.W.3d 290 | 317A+119.1 | When tariffs are superseded by subsequent tariffs that are filed and approved, the "superseded tariffs are generally considered moot and therefore not subject to consideration." State ex rel. Mo. Pub. Serv. Comm'n v. Fraas, 627 S.W.2d 882, 885 (Mo.App. W.D.1981). This is so because superseded tariffs cannot be corrected retroactively, id., and if funds paid under those Commission-approved tariffs are not segregated in a court registry pending the final outcome, there is no monetary relief that can be given to the party challenging the rates. Lightfoot v. City of Springfield, 361 Mo. 659, 236 S.W.2d 348, 353"54 (1951). | Superseded tariffs cannot be corrected retroactively, and if funds paid under those Public Service Commission-approved tariffs are not segregated in a court registry pending the final outcome, there is no monetary relief that can be given to the party challenging the rates. | Are tariffs generally considered moot if they are superseded by subsequent tariffs that are filed and approved? | 042256.docx | LEGALEASE-00123656-LEGALEASE-00123658 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9212 | In re Wetzler, 192 B.R. 109 | 366+7(1) | When a surety satisfies the debt of another, the surety acquires all rights that the original creditor had against the debtor. "There are few doctrines better established than that a surety who pays the debt of another is entitled to all rights of the person he paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136"37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962). See also Federal Land Bank of Baltimore v. Joynes, 179 Va. 394, 401, 18 S.E.2d 917, 920 (1942). Accord Lyon v. Campbell, 324 Md. 178, 182, 596 A.2d 1012, 1013"14 (1991); Levenson v. Capital Mortgage, 101 Md.App. 122, 132, 643 A.2d 505, 510 (1994). This principle is known as the doctrine of equitable subrogation. There is both legal and equitable subrogation. While one is grounded in law and the other in equity, both types arise through contract and place a party satisfying the debt of another in the shoes of the original creditor. Rinn v. First Union National Bank of Maryland, 176 B.R. 401, 407"408 (D.Md.1995), affirming sub nom., In re Advance Insulation & Supply, Inc., 176 B.R. 390 (Bankr.D.Md.1994) and citing Security Ins. Co. v. Mangan, 250 Md. 241, 242 A.2d 482, 485 (1968). While the terms surety and guarantor are not identical, equitable subrogation applies to both. Davis v. Wells, Fargo & Co., 104 U.S. 159, 169, 26 L.Ed. 686 (1881); Colonial Am. Nat. Bank v. Kosnoski, 617 F.2d 1025, 1029"30 (4th Cir.1980) (Murnaghan, J., dissenting opinion); Weitz v. Marram, 34 Md.App. 115, 121, 366 A.2d 86, 89 (1976) (citing Hooper v. Hooper, 81 Md. 155, 31 A. 508 (1895)). | Under Virginia's doctrine of "equitable subrogation," when surety satisfies debt of another, surety acquires all rights that original creditor had against debtor. | "Under the doctrine of ""equitable subrogation,"" when a surety satisfies debt of another, does the surety acquire all rights that the original creditor had against the debtor?" | Subrogation - Memo # 960 - C - MLS.docx | ROSS-003299293-ROSS-003299294 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9213 | In re Ryan N., 92 Cal. App. 4th 1359 | 368+3 | The crime at issue here is clearly different from solicitation in all but the most superficial respects. Although both involve some form of criminal suggestion or encouragement by the defendant to another person, there the similarity ends. By definition, the target of solicitation is necessarily a crime itself; indeed, by statute in California that target crime must be a serious felony. On the other hand, the target of the crime defined by section 401 is suicide, which by itself is not a crime at all. (In re Joseph G., supra, 34 Cal.3d at pp. 433"437, 194 Cal.Rptr. 163, 667 P.2d 1176.) Again, unlike criminal solicitation, the crime of aiding, advising or encouraging a suicide requires both a specific intent that another person commit suicide, and some direct, unequivocal action aimed at bringing the suicide about. (Donaldson v. Lungren, supra, 2 Cal.App.4th at p. 1625, 4 Cal.Rptr.2d 59; cf. People v. Swain, supra, 12 Cal.4th at p. 605, 49 Cal.Rptr.2d 390, 909 P.2d 994.) Finally, unlike solicitation, which is completed merely by giving a suggestion, encouragement or advice that a hypothetical crime be committed, regardless of what then transpires, the crime at issue requires the direct aiding, advising or encouraging of an actual, specific, overt act of suicide. (In re Joseph G., supra, 34 Cal.3d at p. 436, 194 Cal.Rptr. 163, 667 P.2d 1176; People v. Matlock, supra, 51 Cal.2d at p. 694, 336 P.2d 505; McCollum v. CBS, Inc., supra, 202 Cal.App.3d at p. 1007, 249 Cal.Rptr. 187.) In sum, the law of solicitation is distinguishable from the **636 crime at issue here, and does not provide guidance in this case. | Unlike criminal solicitation, the crime of "aiding, advising or encouraging a suicide" requires both a specific intent that another person commit suicide, and some direct, unequivocal action aimed at bringing the suicide about. West's Ann.Cal.Penal Code S 401. | What is meant by aiding a suicide? | 044467.docx | LEGALEASE-00122575-LEGALEASE-00122576 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 9214 | Hardee's Food Sys. v. Oreel, 32 F. Supp. 2d 342 | 13+61 | In his response to Hardee's motion, Oreel contends that the claims he asserts did not accrue until after the signing of the general release. Generally, a cause of action does not accrue until there has been a breach of duty which gives rise to the right to institute and maintain an action. See Pierson v. Buyher, 330 N.C. 182, 409 S.E.2d 903, 905"06 (1991). | Generally, a cause of action does not accrue until there has been a breach of duty which gives rise to the right to institute and maintain an action. | Does a cause of action accrue until there has been a breach of duty which gives rise to the right to institute and maintain an action? | Action - Memo # 222 - C - NO.docx | ROSS-003285507-ROSS-003285508 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 9215 | Jo Ann Howard & Assocs., P.C. v. Cassity, 868 F.3d 637 | 13+4 | Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and in pari delicto defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. Walker v. James, 337 Mo. 750, 85 S.W.2d 876, 885 (1935). The in pari delicto defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses. | Under Missouri law, "in pari delicto defense" provides that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | What does in pari delicto mean? | Action - Memo # 185 - C PHS.docx | ROSS-003288382-ROSS-003288384 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9216 | Jo Ann Howard & Assocs., P.C. v. Cassity, 868 F.3d 637 | 13+4 | Identifying the trust beneficiaries is important, because PNC raises defenses based on an assumption that NPS was the sole beneficiary. PNC contends that the district court erroneously struck its authorization and in pari delicto defenses before trial. The authorization defense applies when a beneficiary concurs in or assents to a breach of trust; such a beneficiary is said to have authorized the breach and cannot complain about it in a lawsuit. Walker v. James, 337 Mo. 750, 85 S.W.2d 876, 885 (1935). The in pari delicto defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). These defenses do not apply to innocent Missouri consumers who were to receive funeral services under a preneed contract, or to funeral homes who were to provide those services. Because the consumers and funeral homes were beneficiaries of the preneed trusts, the district court did not err in striking the defenses. | Under Missouri law, "in pari delicto defense" provides that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. | What needs to happen for a pari delicato defense? | Action - Memo # 349.docx | ROSS-003323635-ROSS-003323636 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9217 | Gingiss Int'l v. Bormet, 58 F.3d 328 | 25T+132 | The Bormets assert that the arbitrator exceeded his power because the arbitrator had no jurisdiction over them. 9 U.S.C. " 10(a)(4). The Bormets point out that they were not parties to the franchise agreement, and the Shareholder's and Officer's Agreement did not contain an arbitration clause. Only parties to an arbitration agreement can be compelled to arbitrate. Morrie Mages and Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402, 406 n. 1 (7th Cir.1990). The Shareholder's and Officer's Agreement incorporated the franchise agreement by reference and imposed on the Bormets all the obligations of H"K Formalwear under that agreement. Paragraph six of the Shareholder's and Officer's Agreement expressly incorporated the arbitration clause. Under federal law, a subcontract with a guarantor or surety may incorporate a duty to arbitrate by reference to an arbitration clause in a general contract. Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir.1985); Exchange Mut. Ins. Co. v. Haskell Co., 742 F.2d 274, 276 (6th Cir.1984). The Bormets therefore were obligated to arbitrate Gingiss' claims pursuant to the arbitration clause. | Under federal law, subcontract with guarantor or surety may incorporate duty to arbitrate by reference to arbitration clause in general contract. 9 U.S.C.A. S 10(a)(4). | Can a subcontract with a guarantor or surety incorporate a duty to arbitrate by reference to an arbitration clause? | Alternative Dispute Resolution - Memo 418 - RK.docx | ROSS-003289235-ROSS-003289236 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9218 | Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH, 840 F. Supp. 2d 703 | 25T+316 | 9 U.S.C. " 10(a). When a petitioner seeks to vacate an arbitral award pursuant to FAA " 10(a)(3) based on an evidentiary decision of the arbitrators, "except where fundamental fairness is violated" that decision "will not be opened up to evidentiary review." Rai v. Barclays Capital, Inc., 456 Fed.Appx. 8, 9, No. 10"3070"cv, 2011 WL 5176169 (2d Cir. Nov. 2, 2011) (quoting Tempo Shain, 120 F.3d at 20). With regard to " 10(a)(4), which applies when arbitrators "exceed[ ] their powers," the Second Circuit has "consistently accorded the narrowest of readings to the [FAA's] authorization to vacate awards [pursuant to " 10(a)(4) ], especially where that language has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir.2002) (quoting In re Andros Compania Maritima S.A., 579 F.2d 691, 703 (2d Cir.1978)). Thus, regardless of whether the arbitrators properly decided an issue, a court will not vacate an arbitral award under " 10(a)(4) unless the petitioner can show that the arbitrators lacked the authority to reach that issue. | Regardless of whether arbitrators properly decided an issue, a court will not vacate an arbitral award under Federal Arbitration Act (FAA) provision allowing vacatur when arbitrators exceeded their power, unless petitioner can show that arbitrators lacked authority to reach issue. 9 U.S.C.A. S 10(a)(4). | Can a court vacate an arbitration award because the arbitrator has exceeded his power? | 007166.docx | LEGALEASE-00125563-LEGALEASE-00125564 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 9219 | Wal-Mart Stores v. Helferich Patent Licensing, 51 F. Supp. 3d 713 | 25T+134(4) | The FAA is relevant to this case because the Agreement involves interstate commerce. See 9 U.S.C. " 2; Allied"Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273"77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that the FAA applies in federal court to diversity suits that relate to contracts involving interstate or international commerce). The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927. To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. See Preston v. Ferrer, 552 U.S. 346, 360"63, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). Generally, "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir.2001); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, "a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so." BEM I, L.L.C. v. Anthropologie Inc., No. 98 C 358, 2000 WL 1849574 (N.D.Ill. Dec. 15, 2000) (citation omitted); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63"64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[T]he best way to harmonize the choice-of-law provision with the arbitration provision is to read [the choice-of-law provision] to encompass substantive principles that [state] courts would apply, but not to include special rules limiting the authority of arbitrators."). Although the Agreement includes a choice of law provision | General choice of law provision in a contract will not extend to arbitration clause covered by the Federal Arbitration Act (FAA), absent specific evidence the parties intended it to do so. 9 U.S.C.A. S 1 et seq. | Does a general choice of law provision in a contract extend to an arbitration clause? | 007186.docx | LEGALEASE-00125581-LEGALEASE-00125583 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 9220 | People ex rel. Peters v. O'Connor, 311 Ill. App. 3d 753 | 148+2.1 | Eminent domain is defined as the right of a sovereign to condemn private property for public use and to "appropriate the ownership or possession of such property." Leonard v. Autocar Sales & Service Co., 392 Ill. 182, 64 N.E.2d 477 (1945). If, during the construction of a public improvement, earth material invades the real estate of another so as to destroy or impair its usefulness, that action by the sovereign qualifies as a "taking" even though the sovereign made no attempt to formally condemn it. Horn v. City of Chicago, 403 Ill. 549, 87 N.E.2d 642 (1949). To constitute a "taking" through eminent domain proceedings, there must be actual physical invasion of the property. Otherwise, the landowner has only an action at law for damages to the property. Luperini v. County of Du Page, 265 Ill.App.3d 84, 202 Ill.Dec. 528, 637 N.E.2d 1264 (1994). | To constitute a "taking" through eminent domain proceedings, there must be actual physical invasion of the property; otherwise, the landowner has only an action at law for damages to the property. | "If there is no actual physical invasion of the property, can the land owner claim for taking under the law?" | 017522.docx | LEGALEASE-00124906-LEGALEASE-00124907 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9221 | Sharon v. Time, 599 F. Supp. 538 | 221+351 | The act of state doctrine provides that a United States court "will refrain from examining the validity of an act of a foreign state by which that state has exercised its jurisdiction to give effect to its public interests." Restatement (Second) of Foreign Relations Law " 41 (1962). The doctrine is limited to laws, decrees, decisions, seizures, and other officially authorized "public acts." The acts to which the doctrine has been applied have been official attempts to implement public policy, and a fairly stringent degree of formality may be required in proving such an act, at least where it is alleged to have occurred with respect to a subject not normally controlled by public acts. Thus, in Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), the Supreme Court rejected the view that an act of state was established by a representation of counsel that an ordinary commercial obligation had been officially repudiated. The Court held that Cuba's mere refusal to pay the debt did not constitute a repudiation sufficient to trigger the act of state doctrine:No statute, decree, order, or resolution of the Cuban Government itself was offered in evidence indicating that Cuba had repudiated its obligations in general or any class thereof or that it had as a sovereign matter determined to confiscate the amounts due three foreign importers | Act of state doctrine is limited to laws, decrees, decisions, seizures, and other officially authorized public acts. | "Is the act of state doctrine limited to laws, decrees, decisions, seizures, and other officially authorized public acts?" | 020440.docx | LEGALEASE-00125201-LEGALEASE-00125202 | Order, SA, Sub | 0.92 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9222 | Shook v. Pearson, 99 Cal. App. 2d 348 | 302+204(1) | It is the general rule, as adopted by this court in Bacon v. Wahrhaftig, 97 Cal.App.2d 599, 218 P.2d 144, (hearing in the Supreme Court denied), that a demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection, citing Lord v. Garland, 27 Cal.2d 840, 853, 168 P.2d 5. It any count or cause of action in a complaint setting up several count or causes of action is good as against demurrer, a judgment of dismissal for insufficiency of the complaint cannot be sustained. Armstrong v. Adams, 102 Cal.App. 677, 283 P. 871. The ruling on the general demurrer as to the first count should be reversed. The same is true as to the second count pertaining to the general demurrer, insofar as it relates to the general damages claimed, unless plaintiff's refusal to further amend as to that count in respect to the claimed special damages would preclude such a ruling. The general rule is that when a plaintiff seeks the recovery of general damages in one count, the fact that he also seeks special damages does not preclude the recovery of general damages. Hamer v. Ellis, 40 Cal.App. 57, 180 P. 30; 8 Cal.Jur. 749, sec. 19. A defendant cannot be presumed to be aware of the special damage resulting from his act, and therefore, in order to prevent a surprise on him, this sort of damage must be specially set forth in the complaint, or the plaintiff will not be permitted to give evidence of it. 8 Cal.Jur. p. 889, sec. 127. And an allegation that by reason of the breaches of contract the party has suffered special damages in a named sum, is not enough. Judson Manufacturing Co. v. Lutge, 174 Cal. 566, 163 P. 1017; 8 Cal.Jur. 891, sec. 128. The facts as to special damages must be stated with particularity. The amount of such damages must be stated with particularity. The amount of such damages must be given, and the means of occasioning them must be set forth. When such damages depend on proof of different circumstances from the general damages, the grounds | If any count or cause of action in a complaint setting up several counts or causes of action is good as against demurrer, a judgment of dismissal for insufficiency of the complaint cannot be sustained. | Can the judgment of dismissal of a complaint for insufficiency be sustained if a cause of action in a complaint is good as against demurrer? | 022974.docx | LEGALEASE-00125372-LEGALEASE-00125373 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 9223 | Wal-Mart Stores v. Itz, 21 S.W.3d 456 | 302+48 | Wal"Mart initially contends that Itz failed to plead a cause of action for quid-pro-quo sexual harassment because she did not allege all the requisite elements. We disagree. It was only necessary that Itz state a "cause of action" in "plain and concise language." Tex.R. Civ. P. 45. A plaintiff states a cause of action sufficiently "by setting forth a sequence of occurrences that, if established, will demonstrate" a legal or equitable right of the plaintiff has been violated by the defendant either "personally or through one for whom the defendant is responsible," and when required by the substantive law, a statement that the "plaintiff suffered a resultant loss." 2 Texas Civil Practice " 8.24, at 215 (Diane M. Allen et al. eds., 1992 ed.). The court should uphold the petition where a cause of action may reasonably be inferred from what is specifically stated therein, even if an element of the action is not specifically alleged. See SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 354"55 (Tex.1995). | The court should uphold the petition where a cause of action may reasonably be inferred from what is specifically stated therein, even if an element of the action is not specifically alleged. Vernon's Ann.Texas Rules Civ.Proc., Rule 45. | Is a petition sufficient even if an element of the cause of action is not specifically alleged? | 022989.docx | LEGALEASE-00125409-LEGALEASE-00125410 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9224 | Hardy v. Cordero, 399 Ill. App. 3d 1126 | 307A+3 | "Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated." Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 206, 169 Ill.Dec. 200, 591 N.E.2d 80, 83 (1992), citing Reidelberger v. Highland Body Shop, Inc., 83 Ill.2d 545, 48 Ill.Dec. 237, 416 N.E.2d 268 (1981). "A motion to strike is required to preserve errors in the admission of evidence. [A] party opposing evidence waives any objection unless a motion to strike is made as soon [as] the objectionable nature of evidence becomes apparent." Netto v. Goldenberg, 266 Ill.App.3d 174, 178, 203 Ill.Dec. 798, 640 N.E.2d 948, 952 (1994). Plaintiff failed to object to, and never moved to strike, either nurse Rasche's or nurse Cordero's references to plaintiff's wishes to continue the IV. Plaintiff has forfeited the issue. | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. | Does a motion in limine exclude inadmissible evidence from trial? | 024295.docx | LEGALEASE-00124891-LEGALEASE-00124892 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9225 | City of Wichita v. Denton, 296 Kan. 244 | 307A+3 | In this case, the district court's grant of partial summary judgment led directly to its grant of the City's subsequent motion in limine, which excluded the testimony of Clear Channel's appraisal experts due to the court's conclusion that the factors on which the experts based their testimony"namely, the billboard structure and the advertising income"were not compensable in the eminent domain action. The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. State v. Abu"Fakher, 274 Kan. 584, 594, 56 P.3d 166 (2002). An order in limine should be granted if the trial court finds that two factors are present: (1) The questioned material or evidence would be inadmissible at a trial under the rules of evidence; and (2) the mere offer during trial concerning the material will likely prejudice the jury. State v. Horn, 278 Kan. 24, 37, 91 P.3d 517 (2004). | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. | Does the purpose of an order in limine include fair and impartial trial? | Pretrial Procedure - Memo # 612 - C - SSB.docx | ROSS-003312186-ROSS-003312187 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9226 | Oxford v. Carter, 216 Ga. 821 | 302+2 | In the construction of a statute, all laws in pari materia should be considered in order to ascertain the intention of the legislature. Harrison v. Walker, 1 Ga. 32. A statutory rule must be construed consistently with the whole system of pleading and practice of which it forms a part. McDougald v. Dougherty, 14 Ga. 674. | A statutory rule must be construed consistently with the whole system of pleading and practice of which it forms a part. | Should a statutory rule be construed consistently with the whole system of pleading and practice of which it forms a part? | 024441.docx | LEGALEASE-00125345-LEGALEASE-00125346 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9227 | Hopper v. Carey, 716 N.E.2d 566 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Jones v. State, 163 Ind.App. 454, 324 N.E.2d 828, 832 (1975). The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. City of Indianapolis on Behalf of Dept. of Metropolitan Development v. Heeter, 171 Ind.App. 119, 355 N.E.2d 429, 439 (1976). It must be noted that ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence.Id. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. Id. The standard of review for admissibility of evidence issues is abuse of discretion. Timberlake v. State, 690 N.E.2d 243, 255 (Ind.1997), cert. denied, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Even if a trial court errs in a ruling on the admissibility of evidence, we will only reverse if the error is inconsistent with substantial justice. | Granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the trial court's grant of a pretrial motion in limine an adjunct of its inherent authority to admit and exclude evidence? | Pretrial Procedure - Memo # 441 - C - HAM.docx | ROSS-003284349-ROSS-003284350 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9228 | Compton v. Ubilluz, 353 Ill. App. 3d 863 | 307A+3 | Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. Cunningham, 227 Ill.App.3d at 206, 169 Ill.Dec. 200, 591 N.E.2d 80. A new trial may be granted for a violation of an in limine order only if the order's prohibitions are specific, the violation is clear, and the violation deprived the moving party a fair trial. Kwon v. M.T.D. Products, Inc., 285 Ill.App.3d 192, 198, 220 Ill.Dec. 496, 673 N.E.2d 408 (1996). | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. | Is the purpose of an in limine order to exclude evidence that is inadmissable? | Pretrial Procedure - Memo # 834 - C - KA.docx | ROSS-003295035-ROSS-003295036 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9229 | In re Hamada, 291 F.3d 645 | 366+1 | There are various types of subrogation, most commonly categorized as "conventional" or "contractual" subrogation, "legal" or "equitable" subrogation, and statutory subrogation. "Conventional" or "contractual" subrogation rights arise from an express or implied agreement between the subrogor and subrogee. Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 626 (7th Cir.2001). "Equitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party "primarily liable" for the extinguished obligation." In re Air Crash Disaster, 86 F.3d 498, 549 (6th Cir.1996). The right of "legal" or "equitable" subrogation arose as a "creature of equity" and "is enforced solely for the purpose of accomplishing the ends of substantial justice." Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 302, 7 S.Ct. 482, 30 L.Ed. 595 (1887). Statutory subrogation, as one might expect, occurs by virtue of a right created by statute. See, e.g., Carter v. Derwinski, 987 F.2d 611, 614 (9th Cir.1993) (en banc). Far East alleges that it is subrogated to the Michelson non-dischargeability judgment by virtue of a right of statutory subrogation under the Bankruptcy Code and a right of equitable subrogation. | Right of legal (or equitable) subrogation arises as creature of equity and is enforced solely for purpose of accomplishing the ends of substantial justice. | Is subrogation enforced solely for the purpose of accomplishing the ends of substantial justice? | 044341.docx | LEGALEASE-00124989-LEGALEASE-00124991 | Order, SA, Sub | 0.88 | 1 | 0 | 1 | 1 | 1 |
| 9230 | Gen. Motors Acceptance Corp. v. Daniels, 303 Md. 254 | 309+139 | Ultimate liability rests upon the principal obligor rather than the surety, but the obligee has remedy against both. See Dixon v. Spencer, 59 Md. 246, 247-48 (1883). The surety, however, becomes subrogated to the rights of the obligee when the surety pays the debt for the principal obligor. See Weast v. Arnold, 299 Md. 540, 553, 474 A.2d 904, 911 (1984). With respect to notice of default, the surety is ordinarily held to know every default of his 260 principal because he is under a duty to make inquiry and ascertain whether the principal obligor is discharging the obligation resting on him. See L. Simpson, supra, " 41, at 165 ([It is generally not necessary for the creditor to notify the surety of the fact that the principal debtor is in default on his promise. It is the duty of the surety to the creditor to see that the debt is paid."). Consequently, the surety is ordinarily liable without notice. | With respect to notice of default, surety is ordinarily held to know every default of principal because he is under a duty to make inquiry and ascertain whether principal obligor is discharging obligation resting on him; consequently, surety is ordinarily liable without notice. | Does a surety become subrogated to the rights of an obligee when the surety pays debt for the principal obligor? | Subrogation - Memo 935 - RK.docx | ROSS-003295918-ROSS-003295920 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 9231 | Pucinski v. Cty. of Cook, 192 Ill. 2d 540 | 104+137 | These requirements were not met here. Although clerks of the circuit courts are nonjudicial officers of the judicial branch of state government and not employees of the counties (Ill. Const.1970, art. VI, " 18(b); County of Kane v. Carlson, 116 Ill.2d 186, 200, 107 Ill.Dec. 569, 507 N.E.2d 482 (1987)), responsibility for maintaining the clerks' offices belongs to the counties, not the state. The county boards provide the necessary rooms and office furniture for the clerks, and the cost is paid from the county treasuries. 705 ILCS 105/20 (West 1998). The county boards provide the clerks' compensation and the "amount necessary for clerk hire, stationery, fuel and other expenses." 705 ILCS 105/27.3 (West 1998). The county boards bear the expense of establishing and maintaining automated record keeping systems and document storage systems in the clerks' offices (705 ILCS 105/27.3a, 27.3c (West 1998)), and the clerks' offices are subject to annual audits by the county boards (705 ILCS 105/27.8 (West 1998)). | Although clerks of the circuit courts are nonjudicial officers of the judicial branch of state government, and not employees of the counties, responsibility for maintaining the clerks' offices belongs to the counties, not the state. S.H.A. Const. Art. 6, S 18(b); S.H.A. 705 ILCS 105/20, 27.3, 27.3a, 27.3c, 27.8. | Are clerks of the circuit courts employees of the counties? | 013413.docx | LEGALEASE-00125739-LEGALEASE-00125741 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9232 | People v. DiVincenzo, 183 Ill. 2d 239 | 203+657 | The basic difference between involuntary manslaughter and first degree murder is the mental state that accompanies the conduct resulting in the victim's death. Foster, 119 Ill.2d at 87, 115 Ill.Dec. 557, 518 N.E.2d 82. Involuntary manslaughter requires a less culpable mental state than first degree murder. Under section 9-1(a)(2) of the Criminal Code of 1961, a defendant commits first degree murder when he kills an individual without lawful justification and he knows that his acts create a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(2) (West 1994). In contrast, a defendant commits involuntary manslaughter when he performs acts that are likely to cause death or great bodily harm to another and he performs these acts recklessly. 720 ILCS 5/9-3(a) (West 1994). Recklessness is statutorily defined:"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) 720 ILCS 5/4-6 (West 1994) | Basic difference between involuntary manslaughter and first degree murder is the mental state that accompanies conduct resulting in victim's death; involuntary manslaughter requires less culpable mental state than first degree murder, since defendant commits first degree murder when he kills an individual without lawful justification and he knows that his acts create a strong probability of death or great bodily harm, but commits involuntary manslaughter when he recklessly performs acts that are likely to cause death or great bodily harm to another. S.H.A. 720 ILCS 5/9-1(a)(2), 9-3(a). | Is the difference between the murder and involuntary manslaughter considered to be the mental state of the defendant? | 019370.docx | LEGALEASE-00125718-LEGALEASE-00125719 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 9233 | Cole v. Pac. Tel. & Tel. Co., 112 Cal. App. 2d 416 | 317A+111 | The theory underlying these decisions is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, "its liability is and should be defined and limited." Correll v. Ohio Bell Telephone Company, supra. There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the Commission are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule. | Principle that public utilities, being strictly regulated in all operations with considerable curtailment of their rights and privileges, shall likewise be regulated and limited as to their liabilities, is neither harsh nor inequitable when considered in light of fact that rates as fixed by Public Utility Commission are established with such limitation of liabilities in mind, and that reasonable rates are in part dependent upon such a rule. | Should a public utility regulated in all operations with necessary curtailment of its rights be limited as to its liabilities? | Public Utilities - Memo 173 - AM.docx | ROSS-003286724-ROSS-003286725 | Order, SA, Sub | 0.33 | 1 | 0 | 1 | 1 | 1 |
| 9234 | Mountain States Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432 | 386+1 | 'The gist of trespass to personalty is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force.' 'Destruction of, or injury to, personal property, regardless of negligence, may be a trespass.' 87 C.J.S. Trespass ss 8, 9, p. 962. See, Carter v. Haynes, Tex.Civ.App. 1925, 269 S.W. 216, loc. cit. 219. | The gist of "trespass" to personalty is an injury to, or interference with, possession, unlawfully, with or without exercise of physical force, and destruction of, or injury to, personal property, regardless of negligence, may be a "trespass". | Does trespass to personalty require the exercise of physical force? | Trespass - Memo 184 - RK.docx | ROSS-003300312-ROSS-003300313 | Condensed, SA | 0.29 | 0 | 1 | 0 | 1 | |
| 9235 | United States v. Mosberg, 866 F. Supp. 2d 275 | 63+1(2) | Lastly, by relying on United States v. Zwick, 199 F.3d 672 (3d Cir.1999), Mosberg further argues that the Indictment must allege that the federal funds were received "by the entity for which the defendant was acting as an agent." 199 F.3d at 688. In his view, that the Indictment alleges that the Township received federal funds is insufficient -the Indictment must allege that the Planning Board received those funds in connection with the allegations that Montefusco acted as an agent for the Planning Board. Without going into a detailed analysis of the viability of Zwick, it is clear that a portion of that decision was overruled by Sabri v. United States, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), which held that section 666 does not "require proof of connection with federal money as an element of the offense."[] Sabri, 541 U.S. at 605, 124 S.Ct. 1941. | Statute governing bribery affecting federal funds does not require proof of connection with federal money as an element of the offense. 18 U.S.C.A. § 666. | "Does section 666, the statute governing bribery affecting federal funds, require proof of connection with federal money as an element of the offense?" | Bribery - Memo # 34 - C - SD.docx | ROSS-003299904-ROSS-003299905 | Order, SA, Sub | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 9236 | Webster v. Rushing, 316 So. 2d 111 | 302+87 | Article 1005, in addition to listing certain affirmative defenses which must be specially pleaded, contains the omnibus recital "and any other matter constituting an affirmative defense." (Emphasis added.) Thus, the listing of the named affirmative defenses in this article are merely illustrative. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. In the instant case, the defense that plaintiff was not a registered loan broker and was thus precluded from recovering under the contract raises a new issue which, assuming the allegations of plaintiff's petition to be true, would defeat plaintiff's claim on the merits. Hence, it was clearly an affirmative defense which was required to be specially pleaded. | Affirmative defense raises new matter which, assuming allegations in petition to be true, constitutes defense to action and will have effect of defeating plaintiff's demand on its merits. LSA-C.C.P. arts. 1003, 1005; LSA-R.S. 13:3601(2). | Does an affirmative defense raise a new matter? | Pleading - Memo 175 - RMM.docx | ROSS-003286825-ROSS-003286826 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 9237 | Dober v. Worrell, 401 So. 2d 1322 | 30+173(1) | In its opinion, the district court noted that "(t)here is considerable confusion among the authorities." We find conflict. See Forte v. Tripp & Skrip, 339 So.2d 698 (Fla.3d DCA 1976). We hold that failure to raise an affirmative defense before a trial court considering a motion for summary judgment precludes raising that issue for the first time on appeal. | Failure to raise an affirmative defense before a trial court considers a motion for summary judgment precludes raising that issue for first time on appeal. | Can an affirmative defense be raised for the first time on appeal? | 023042.docx | LEGALEASE-00126238-LEGALEASE-00126239 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 9238 | Ayala v. Lee, 215 Md. App. 457 | 307A+3 | An evidentiary ruling on a motion in limine "'is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion." Malik v. State, 152 Md.App. 305, 324, 831 A.2d 1101 (2003). The determination of relevancy and admission of evidence at trial is also reviewed for an abuse of discretion. Martin v. State, 364 Md. 692, 705, 775 A.2d 385 (2001). | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | Is the granting of a motion in limine left to the sound discretion of the trial judge? | Pretrial Procedure - Memo # 889 - C - KA.docx | ROSS-003327338-ROSS-003327339 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 9239 | Compton v. Ubilluz, 353 Ill. App. 3d 863 | 307A+3 | Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. Cunningham, 227 Ill.App.3d at 206, 169 Ill.Dec. 200, 591 N.E.2d 80. A new trial may be granted for a violation of an in limine order only if the order's prohibitions are specific, the violation is clear, and the violation deprived the moving party a fair trial. Kwon v. M.T.D. Products, Inc., 285 Ill. App.3d 192, 198, 220 Ill.Dec. 496, 673 N.E.2d 408 (1996). | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. | Is the purpose of an in limine order to exclude inadmissible evidence? | Pretrial Procedure - Memo # 892 - C - KA.docx | ROSS-003313110-ROSS-003313111 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9240 | Kiefer v. City of Idaho Falls, 49 Idaho 458 | 317A+112 | From these authorities and the expressions of this court in Feil v. C"ur d' Alene, 23 Idaho, 32, 129 P. 643, 43 L. R. A. (N. S.) 1095, while such expressions therein are only dicta, since they merely forecast the situation in case of municipal ownership, we believe it clear that, since municipally owned utilities are not under the jurisdiction of the Public Utilities Commission (C. S. " 2371), actions may be instituted in the courts by any person interested and affected thereby to test the reasonableness of their rates. Robbins v. Bangor Co., 100 Me. 496, 62 A. 136, 1 L. R. A. (N. S.) 963; Barnes Laundry v. Pittsburgh, 266 Pa. 24, 109 A. 535; Westerhoff v. Ephrata, 283 Pa. 71, 128 A. 656. | Since municipally owned utilities are not under jurisdiction of Public Utilities Commission, person affected thereby may sue in court to test reasonableness of rates (C.S. SS 2371, 3971, as amended by Laws 1927, c. 195). | Are municipally owned utilities regulated by the Public Utilities Commission (PUC)? | 042374.docx | LEGALEASE-00126187-LEGALEASE-00126188 | Order, SA, Sub | 0.68 | 1 | 0 | 1 | 1 | 1 |
| 9241 | Boumediene v. Bush, 553 U.S. 723 | 221+392 | Our basic charter cannot be contracted away like this. The Constitution grants Congress and the President the power to acquire, dispose of, and govern territory, not the power to decide when and where its terms apply. Even when the United States acts outside its borders, its powers are not "absolute and unlimited" but are subject "to such restrictions as are expressed in the Constitution." Murphy v. Ramsey, 114 U.S. 15, 44, 5 S.Ct. 747, 29 L.Ed. 47 (1885). Abstaining from questions involving formal sovereignty and territorial governance is one thing. To hold the political branches have the power to switch the Constitution on or off at will is quite another. The former position reflects this Court's recognition that certain matters requiring political judgments are best left to the political branches. The latter would permit a striking anomaly in our tripartite system of government, leading to a regime in which Congress and the President, not this Court, say "what the law is." Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60 (1803). | Even when the United States acts outside its borders, its powers are not absolute and unlimited but are subject to such restrictions as are expressed in its Constitution. | "When the United States acts outside its borders, are its powers absolute and unlimited?" | 005717.docx | LEGALEASE-00126517-LEGALEASE-00126519 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9242 | Comes v. Microsoft Corp., 775 N.W.2d 302 | 221+341 | Microsoft further suggests that if and when the class action is certified in Canada, discovery rules in British Columbia, Ontario, and Quebec may differ from discovery rules in Towa. In this context, Microsoft posits the Canadian plaintiffs' effort to gain unlimited access to the documents and data in the possession of the Iowa plaintiffs is calculated to circumvent more restrictive Canadian discovery rules. While we do not presume to interpret, and Microsoft has not cited, the law prevailing in British Columbia, Ontario, and Quebec on the proper scope of discovery in Canadian courts, Microsoft has not presented evidence tending to prove theCanadian plaintiffs are exploiting liberal discovery rules in Iowa in an effort to evade more restrictive Canadian rules. Further, the Ontario Superior Court has indicated that it is not offensive to Canadian discovery or evidentiary procedures for Canadian litigants to seek access to discovery materials produced in litigation in the United States. Vitapharm Canada Ltd. v. F. Hoffman-Laroche, Ltd., 11 C.P.R. (4th) 230, 6 C.P.C. (Sth) 245, [2001] O.J. No. 237, (Ont.S.C.J.) (affirmed on appeal, 18 C.P.R. (4th) 267, 20 C.P.C. (Sth) 65, [2002] O.J. No. 1400 (Ont.Div.Ct.)). Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts." Id. Denying the motion of Canadian defendants to prevent Canadian plaintiffs from intervening in litigation in the United States to gain access to discovery already produced in the U.S. action, the Ontario Superior Court concluded plaintiffs' request for access to discovery evidence [in the United States] which they believe necessary to prepare their case in Canada, a request made through means lawful in the United States, does not violate the rules and procedure of this court. There is no consequentialunfairness to the defendants in the Canadian class proceedings. | A Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts. | Will a Canadian court be reluctant to prevent someone from gathering evidence extraterritorially? | Action - Memo # 256 - C VP.docx | ROSS-003286275-ROSS-003286278 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 9243 | Abel v. Allen, 2002 ND 147 | 30+3234 | "Determining whena plaintiff's cause of action has accrued is generally a question of fact," Huber, 529 N.W.2d at 182, and a district court's determination "will not be overturned on appeal unless clearly erroneous," Jones v. Barnett, 2000 ND 207, 6, 619 N.W.2d 490. However, if "there is no dispute in the evidence about the facts, the question of whether the statute of limitations has run is for the court." Wells v. First Am. Bank West, 1999 ND 170, 9 7, 598 N.W.2d 834. See also American State Bank v. Sorenson, 539 N.W.2d 59, 62 (N.D.1995) ("Without a dispute of material fact, the trial court faced only a question of law on whether the statute of limitations barred the bank's claim."). | Determining when a plaintiff's cause of action has accrued is generally a question of fact, and a district court's determination will not be overturned on appeal unless clearly erroneous; however if there is no dispute in the evidence about the facts, the question of whether the statute of limitations has run is for the court. | Is the determination of when a cause of action accrues a question of fact? | Action memo# 298 C-PC.docx | ROSS-003312807-ROSS-003312808 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9244 | People v. Wigman, 2012 IL App (2d) 100736 | 110+577.8(2) | Second, the constructive-notice argument is equally worthless. It is abundantly clear that the circuit court clerk's office is not an arm of the State for purposes of filing documents purportedly intended to restart a speedy-trial term. People v. Dotson, 136 Ill.App.3d 356, 359, 91 Ill.Dec. 231, 483 N.E.2d 577 (1985). It is the State's Attorney who has the responsibility to commence and prosecute all actions that concern the people of the state or the county. People v. Pankey, 94 Ill.2d 12, 16, 67 Ill.Dec. 804, 445 N.E.2d 284 (1983). The constructive-notice theory that defendant proposes would require the prosecutor to monitor "the files and docket sheets in criminal cases on almost a continuous basis." People v. Jones, 84 Ill.2d 162, 169, 49 Ill.Dec. 287, 417 N.E.2d 1301 (1981). This argument was specifically rejected by the Illinois Supreme Court in Jones. Id. Likewise, in People v. Bonds, 401 Ill.App.3d 668, 341 Ill.Dec. 227, 930 N.E.2d 437 (2010), we followed Jones. Defendant's attempts to distinguish Jones and Bonds because those cases dealt with the demands themselves rather than notice of the defendants' whereabouts is disingenuous. The result would be the same because defendant's letter was supposedly intended to restart the term. As the courts in Jones and Bonds noted, "[t]o permit a defendant to invoke his statutory right to a speedy trial without notifying the prosecution would allow him to exploit the possibility that the State will unwittingly fail to bring him to trial within the prescribed period." Jones, 84 Ill.2d at 168, 49 Ill.Dec. 287, 417 N.E.2d 1301; Bonds, 401 Ill.App.3d at 672, 341 Ill.Dec. 227, 930 N.E.2d 437. We trust that in the future counsel will comply with the rules. | Circuit court clerk's office is not an arm of the State for purposes of filing documents purportedly intended to restart a statutory speedy-trial term; it is the State's Attorney who has the responsibility to commence and prosecute all actions that concern the people of the state or the county. S.H.A. 725 ILCS 5/103-5(b). | Is the office of clerk of a circuit court an arm of the state? | 013434.docx | LEGALEASE-00126762-LEGALEASE-00126763 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9245 | Villanazul v. City of Los Angeles, 37 Cal. 2d 718 | 106+58 | The fact that the Legislature created the office of deputy marshal and prescribed the duties and salary of the position does not fix the status of such a person as a state, rather than a county or city employee. The Legislature creates many and varied offices or positions of local government, with specified duties and salaries. See Const., Art. XI, s 5. The clerk of a city justice's court comes within this category but is an officer of the county government. McClung v. Johnson, supra. | Fact that the legislature created the office of deputy marshal of municipal court and prescribed the duties and salary of the position does not fix the status of such deputy marshal as a state rather than a county or city employee. Gen.Laws, Act 5238, SS 1 et seq., 7b, 25a (Gov.Code S 71080 et seq.); Const. art. 6, S 11. | Is a clerk of the justices court an employee of the court? | 013473.docx | LEGALEASE-00126796-LEGALEASE-00126797 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 9246 | Arizona Water Co. v. Arizona Corp. Comm'n, 217 Ariz. 652 | 405+2110 | Under the first-in-the-field doctrine, when additional or extended service is required in a field already serviced by an existing utility, that utility must be given the opportunity to demonstrate its willingness and ability to provide the new service. Fountain Water Dist. v. Ill. Commerce Comm'n, 291 Ill.App.3d 696, 225 Ill.Dec. 670, 684 N.E.2d 145, 150 (1997); see also 73B C.J.S. Public Utilities " 191 (2007). If the existing utility makes this demonstration, the CC & N must be issued to it rather than to a competitor. Chicago & W. Towns Rys, Inc. v. Ill. Commerce Comm'n, 383 Ill. 20, 48 N.E.2d 320, 324 (1943). The doctrine is "based on a consideration of the time and money expended by the pioneer in developing its business and rendering adequate service to the public and on the pioneer utility having taken the bitter with the sweet throughout the years of the development of the utility business in the area." Fountain Water Dist., 225 Ill.Dec. 670, 684 N.E.2d at 150.2 | Arizona does not recognize the "first-in-the-field doctrine" in regards to certificate of convenience and necessity (CC&N) issued to water companies by the Corporation Commission; under the doctrine when additional or extended service is required in a field already serviced by an existing utility that utility must be given the opportunity to demonstrate its willingness and ability to provide the new service, but serving the public interest is the controlling factor in decisions concerning service of water by water companies and application of the doctrine may not always serve the public's best interest, and a statute which grants a service provider the right of first refusal to extend its existing CC&N territory in specified situations already provides much of the reward underlying the doctrine. A.R.S. SS 40-281, 40-281(B). | When does the first-in-the-field doctrine apply in reference to a utility? | 042392.docx | LEGALEASE-00126426-LEGALEASE-00126427 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 9247 | Application of Overland Armored Exp. of Lincoln, 229 Neb. 524 | 317A+113 | Overland contends that there was sufficient evidence at the hearing to demonstrate that Overland is fit, willing, and able to perform the services of a common carrier. In its reply brief at 5, Overland states, "The burden of coming forward with evidence that Overland was not fit was on Wells Fargo once Overland demonstrated fitness. It was Wells Fargo who failed in its burden of proof." We do not agree. The burden of proof rests on the applicant for a certificate of public convenience and necessity to show that the applicant meets all the requirements of the statute. In re Application of Greyhound Lines, Inc., 209 Neb. 430, 308 N.W.2d 336 (1981). Neb.Rev.Stat. " 75-311 (Reissue 1986) provides, in part, that a qualified applicant must be "fit, willing, and able properly to perform the service proposed." To comply with that statute, the applicant must prove, in part, that the applicant is fit financially. | Burden of proof rests on applicant for certificate of public convenience and necessity to show that applicant meets all statutory requirements. Neb.Rev.St. S 75-311. | Is the burden of proof on the applicant for a certificate of public convenience and necessity to show that the applicant meets all the requirements of the statute? | Public Utilities - Memo 201 - AM.docx | ROSS-003300381-ROSS-003300382 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 9248 | Henry v. State, 295 Ga. App. 758 | 352H+119 | Henry's reliance upon Ritter is misplaced. Here, the trial court was authorized to find that the interviewing officers had not purposely misrepresented the victim's status. Henry was expressly informed during the interview that T.W. was pregnant and that she had alleged that he had raped her. Although forcible rape carries a higher penalty than that for statutory rape, the trial court was authorized to find that no promise, express or implied, was made to Henry that he would face a rape charge only if the investigation revealed he had committed forcible rape. Under Georgia law, "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." All citizens are presumed to know the law, and ignorance of the law excuses no one. Thus, the fact that Henry may have been ignorant of the statutory rape proscription did not, in and of itself, afford him any basis to claim that the police impermissibly tricked him into incriminating himself. Likewise, his complaint that T.W. deceived him about her age is unavailing. "With regard to statutory rape, the defendant's knowledge of the age of the female is not an essential element of the crime and therefore it is no defense that the accused reasonably believed that the prosecutrix was of the age of consent." Moreover, the principles underlying Ritter address "the behavior of the interrogator." Henry has thus shown nothing in Ritter requiring a ruling contrary to that made by the trial court. | Defendant's knowledge of the age of the female is not an essential element of the crime if statutory rape, and therefore it is no defense that the accused reasonably believed that the prosecutrix was of the age of consent. West's Ga.Code Ann. S 16-6-3(a). | Is knowledge of victims age an element in statutory rape? | Sex Offence - Memo 44 - SB.docx | LEGALEASE-00016665-LEGALEASE-00016666 | Order, SA, Sub | 0.85 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9249 | Romero v. Dep't Stores Nat'l Bank, 199 F. Supp. 3d 1256 | 386+7 | Plaintiff also argues that Plaintiff suffered "additional" injuries in fact sufficient for standing including "invasion of privacy," "trespass to chattels," and "lost time, aggravation, and distress." Invasion of privacy and trespass to chattels are torts, not injuries in and of themselves. Injury is merely an element of these claims.Moreover, with respect to a claim of trespass to chattels, the injury or damage must be with respect to the plaintiff's interest in the personal property, not to the plaintiff herself. Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1364, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003) ("[T]respass to chattels is not actionable if it does not involve actual or threatened injury to the personal property or to the possessor's legally protected interest in the personal property."). Here, Plaintiff does not allege or offer any evidence that Defendants' calls caused any damage to, or interfered with her interest in, her cell phone. Cf. id. at 1347, 1 Cal.Rptr.3d 32, 71 P.3d 296 ("[U]nder California law the tort [of trespass to chattels] does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself."). | With respect to a claim of trespass to chattels, the injury or damage claimed must be with respect to the plaintiff's interest in the personal property, not to the plaintiff herself. | Should the injury or damage claimed be with respect to the plaintiff's interest in the personal property in a claim of trespass to chattels? | 00549.docx | LEGALEASE-00085302-LEGALEASE-00085303 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 9250 | Shapiro v. Housewares Super Mart, 43 Misc. 2d 107 | 13+65 | The breach in this action is de minimis in character and was quickly cured without prejudice to the plaintiff mortgagee. An action to foreclose a mortgage is addressed to a Court of Equity, which mut determine the rights of the parties to the suit according to equity and good conscience. The rights are determined on the facts as they exist at the time of the decree and not at the inception of the suit. (Blomgren v. Tinton, 763 Corp., 18 A.D.2d 979, 238 N.Y.S.2d 435; 19 Am.Jur. Equity " 411, p. 283; Barker v. Salzenstein, 314 Ill. 226, 145 N.E. 355; Kosmerl v. Sevin, 295 Ill.App. 345, 15 N.E.2d 20). | Rights of parties in mortgage foreclosure action are determined on facts as they exist at time of foreclosure decree and not at time of inception of action. | Are rights of parties in a mortgage foreclosure action determined on facts as they exist at the time of foreclosure decree and not at the time of an inception of action? | 006236.docx | LEGALEASE-00127186-LEGALEASE-00127188 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 9251 | Devlin v. Bennett, 26 Conn. Supp. 102 | 316P+87 | Many principles of law relative to the powers of boards of education in Connecticut are well established. "A town board of education is an agency of the state in charge of education in the town, and broad powers are granted it by the legislature to that end." Board of Education v. Town of Ellington, 151 Conn. 1, 6, 193 A.2d 466, 469. "It is axiomatic that schools can be no better than the teachers employed in them.A board has the right to demand that a teacher know his subject and that he be capable of arousing and holding the interest of his pupils and maintaining discipline." Conley v. Board of Education, 143 Conn. 488, 497, 123 A.2d 747, 752. A board of education has the power to exercise a sound and reasonable discretion in carrying out its duties. Board of Education v. Town of Ellington, supra, 151 Conn. 10, 193 A.2d 466. | Board of education has right to demand that teacher know his subject and that he be capable of arousing and holding interest of his pupils and maintaining discipline. | Does a town board of education has the right to demand that a teacher know his subject? | 016862.docx | LEGALEASE-00127019-LEGALEASE-00127021 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9252 | Clare v. Florissant Water & Sanitation Dist., 879 P.2d 471 | 148+90 | Also, compensation ordinarily will not be due a property owner whose property has merely depreciated in value by governmental action. Similarly, incidental diminution of business profit is not generally regarded as an element of compensable damage in the absence of an authorizing statute. City of Northglenn v. Grynberg, supra; Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Authority, 183 Colo. 441, 517 P.2d 845 (1974). | Compensation ordinarily will not be due property owner whose property has merely depreciated in value by governmental action. West's C.R.S.A. Const. Art. 2, S 15. | Is compensation due a property owner whose property has merely depreciated in value by governmental action? | 017661.docx | LEGALEASE-00127007-LEGALEASE-00127008 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 9253 | Aram v. Schallenberger, 41 Cal. 449 | 200+158 | I think the demurrer to the complaint ought to have been sustained, on the ground that it shows no special damage to the plaintiffs. The road is alleged to be a public highway, and the action is to prevent an obstruction. No doubt a private individual may sue to prevent or abate a public nuisance; but he must always show some special damage to him in addition to that received by the public. The rule is plain, and has always, so far as I know, been adhered to; the questions most usually raised are as to the character of injury which will be considered a special injury to private individuals.In this case the only allegations which can be claimed to show special damage are, that plaintiffs each own tracts of land adjoining the alleged road, and have no other means of access to their lands except over and along said road. No special injury to their property is averred, and although, from the facts stated, we may conclude that the inconvenience to them will be greater than to the general public, it results simply from the more frequent occasion they may have to travel the road, and is of the same nature as would occur to any other person who might have occasion to use it. | Private individual cannot sue to prevent or abate nuisance, caused by obstructing public highway, without showing special damage in addition to that received by public. | When can a private party maintain an action to abate a public nuisance caused by obstructing a public highway? | 018676.docx | LEGALEASE-00127034-LEGALEASE-00127035 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 9254 | State ex rel. Burns v. Kelly, 89 Idaho 139 | 200+153.5 | As in California with its Department of Public Works, and in Oklahoma with its Highway Commission, Idaho's Board of highway directors is enpowered to regulate or prohibit erection or maintenance of unauthorized signs. I.C. " 40-120(18). This grant of authority carries with it the duty and power to determine what constitutes such an obstruction, and such a determination made by the Board is conclusive in the absence of a showing of arbitrary exercise of this authority or an abuse of discretion. In the instant case there is no showing of any such abuse of discretion. The judgment of the trial court is affirmed. | Statutory grant of authority to State Board of Highway Directors to regulate or prohibit erection or maintenance of unauthorized signs carries with it duty and power to determine what constitutes such obstruction, and such determination made by board is conclusive, in absence of showing of arbitrary exercise of authority or abuse of discretion. I.C. S 40-120(18). | Whose decision is conclusive in determining obstruction on the highway? | 018679.docx | LEGALEASE-00127013-LEGALEASE-00127014 | Order, SA, Sub | 0.41 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9255 | People v. Henderson, 138 Cal. App. 2d 505 | 200+158 | We do not doubt the correctness of the state's position. It is a well-settled principle of common law, which has frequently been embodied in statutory form, that a structure maintained upon a public roadway is unlawful (Commonwealth v. King, 54 Mass. 115; State v. Allen, 110 S.C. 278, 96 S.E. 401), and is a nuisance per se subject to abatement at the instance of proper authority. Vanderhurst v. Tholcke, 113 Cal. 147, 151, 45 P. 266, 35 L.R.A. 267; Hill v. City f Oxnard, 46 Cal.App. 624, 627, 189 P. 825; Marini v. Graham, 67 Cal. 130, 132, 7 P. 442; City of Emporia v. Humphrey, 132 Kan. 682, 297 P. 712, 715; Elliott on Roads and Streets, 4th Ed., sec. 828, p. 1026. It is no defense to an action based thereon that the structure is off the traveled part of the highway or that sufficient areas remain to allow public use of the right of way in the accustomed manner. Vanderhorst v. Tholcke, supra; City of Emporia v. Humphrey, supra; National Sign Co. v. Board of Com'rs, 126 Kan. 81, 266 P. 927; Commonwealth v. King, supra; State v. Kean, 69 N.H. 122, 45 A. 256, 48 L.R.A. 102; Robinson v. State, Tex.Cr.App., 44 S.W. 509, 510. Where the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of the right of way by the public, the owner of the fee is deemed to possess no greater rights then those who are strangers to the title. Bequette v. Patterson, 104 Cal. 282, 37 P. 917; Hall v. Kauffman, 106 Cal. 451, 39 P. 756; National Sign Co. v. Board of Commissioners, supra. Cf. Williams v. San Francisco & N. W.R. Co., 6 Cal.App. 715, 722, 93 P. 122. Independently of the statutory law, therefore, it would have been proper to enjoin the defendants from maintaining the shed on the state's right of way. The judgment is supportable upon this ground alone. | Under common law, a structure maintained on public roadway is unlawful and a nuisance per se subject to abatement at instance of proper authority. | Is structure maintained upon a public roadway a nuisance subject to abatement? | Highways-Memo 26-RM.docx | ROSS-003298625-ROSS-003298627 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 9256 | Larkin v. Howlett, 19 Ill. App. 3d 343 | 212+1546 | Furthermore, to establish a cause of action for injunctive relief plaintiffs must allege facts necessary to establish that their legal remedy is inadequate and that irreparable injury will result should injunctive relief not be granted. Consequently, allegations in a complaint that are conclusionary in those respects are insufficient. Schlicksup Drug Co., Inc. v. Schlicksup, 129 Ill.App.2d 181, 262 N.E.2d 713. The complaint in the instant case contains only general allegations of irreparable injury and an inadequate legal remedy and is, therefore, entirely conclusionary and inadequate to substantiate the granting of injunctive relief. | To establish a cause of action for injunctive relief, plaintiffs must allege facts necessary to establish that their legal remedy is inadequate and that irreparable injury will result should injunctive relief not be granted; consequently, allegations in a complaint that are conclusionary in those respects are insufficient. | Should facts be alleged for granting an injunction? | 023072.docx | LEGALEASE-00126900-LEGALEASE-00126901 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 9257 | Phoenix Mut. Life Ins. Co. v. Birkelund, 29 Cal. 2d 352 | 302+403(1) | Hilda contends that neither the doctrine of estoppel nor of laches can be operative as against her because of Lillian's failure to plead any such defense. It is true that the general rule is that one who relies upon estoppel or laches as a defense must plead facts constituting such estoppel or laches where, as here, there is an opportunity to do so (see Lucci v. United Credit & Collection Co. (1934), 220 Cal. 492, 497, 31 P.2d 369; Victor Oil Co. v. Drum (1920), 184 Cal. 226, 243, 193 P. 243; Mahana v. Echo Publishing Co. (1919), 181 Cal. 233, 236, 183 P. 800; Newhall v. Hatch (1901), 134 Cal. 269, 273, 66 P. 266, 55 L.R.A. 673), but, as recognized in the Victor Oil Co. case, supra, such rule does not apply where the facts appear on the face of the adversary's pleading. It is also true that "Mere delay in commencing an equitable proceeding without a showing of inequitable conduct or prejudice suffered thereby is not sufficient to bar the action" (Brownrigg v. DeFrees (1925), 196 Cal. 534, 538, 238 P. 714, 715) and that the averments above epitomized do not contain any allegation that Lillian parted with value in reliance upon her designation as beneficiary or her possession of the policy. But it does appear that there has been a change in circumstances and in the value of the property. Lillian and James did enter into a contract of marriage (this is alleged in the answer of Lillian and admittedly was known to Hilda at least as early as 1937) and, whether such marriage was valid or invalid, did live together as husband and wife; Lillian was named in 1932 as the primary beneficiary of the policy; premiums for some ten or eleven years were paid on the policy, adding to its value; and James is now deceased and not available as a witness to testify to the circumstances surrounding the change of beneficiary and the payment of premiums. The court specifically found that Lillian directly paid a portion ($271.20) of those premiums. We think, therefore, that while Lillian chose by her pleadings | The general rule is that one who relies upon estoppel or laches as a defense must plead facts constituting such estoppel or laches where there is an opportunity to do so, but such rule does not apply where the facts appear on the face of the adversary's pleading. | Should the defense of latches be plead with facts constituting such latches? | 023078.docx | LEGALEASE-00127032-LEGALEASE-00127033 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 9258 | Lewis ex rel. Houseworth v. Eisin, 2002 WL 337775 | 308+68 | The majority of cases hold that a travel agent who arranges vacation plans and therefore acts as more than a "ticket agent" is a special agent of the traveler for purposes of that transaction between the parties. Like every agent, the travel agent owes duties of service and due care to the principal. Missouri law thus provides that a travel agent who arranges travel accommodations is under a duty to disclose reasonably obtainable information that is material to the object of the agency unless that information is so clearly obvious and apparent to the traveler that the travel agent would not be negligent in failing to disclose it. Markland v. Travel Travel Southfield, Inc., 810 S.W.2d 81, 83 (Mo.App. E.D.1991); Stafford v. Intrav., Inc., 841 F.Supp. 284, 287 (E.D.Mo.1993); see also McCollum v. Friendly Hills Travel Center, 172 Cal.App.3d 83, 94, 217 Cal.Rptr. 919 (1985). | A travel agent who arranges travel accommodations is under a duty to disclose reasonably obtainable information that is material to the object of the agency unless that information is so clearly obvious and apparent to the traveler that the travel agent would not be negligent in failing to disclose it. | What are the obligations of a travel agent? | 041285.docx | LEGALEASE-00126846-LEGALEASE-00126847 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9259 | Pearlman v. Reliance Ins. Co., 371 U.S. 132 | 366+7(1) | Since there is no statute which expressly declares that a surety does acquire a property interest in a fund like this under the circumstances here, we must seek an answer in prior judicial decisions. Some of the relevant factors in determining the question are beyond dispute. Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise such as the surety here had. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule, widely applied in this country and generally known as the right of subrogation, was relied on by the Court of Appeals in this case. It seems rather plain that at least two prior decisions of this Court have held that there is a security interest in a withheld fund like this to which the surety is subrogated, unless, as is argued, the rule laid down in those cases has been changed by passage of the Miller Act or by our holding in the Munsey case. Those two cases are Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908). | Surety paying debt of another is, by doctrine generally known as "subrogation," entitled to all rights of person paid to enforce his right to be reimbursed. | Is a surety which pays the debt of another entitled to all rights of the person he paid to enforce his right to be reimbursed? | Subrogation - Memo # 1073 - C - KG.docx | ROSS-003317331-ROSS-003317332 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 9260 | Gerow v. Sinay, 28 Misc. 3d 990 | 366+41(6) | As the movant on the equitable subrogation claim, U.S. Bank must establish all elements of the doctrine, including a lack of knowledge concerning another lien on the property. If Mortgage Lenders knew about the Gerow mortgage and failed to protect itself, it cannot seek the benefits of equitable subrogation. It is the same burden that U.S. Bank seeks to impose upon plaintiffs to establish that they were bona fide purchasers"only here the U.S. Bank must establish prima facie that Mortgage Lenders lacked any knowledge of the Gerow lien. | The movant on a equitable subrogation claim must establish all elements of the doctrine, including a lack of knowledge concerning another lien on the property. | Is the movant required to establish all elements of an equitable subrogation claim? | 044274.docx | LEGALEASE-00126997-LEGALEASE-00126998 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9261 | In re New Hampshire Dep't of Health & Human Servs., 145 N.H. 211 | 413+52 | A compensable injury under the Workers' Compensation Law is defined as an "accidental injury or death arising out of and in the course of employment...." RSA 281-A:2, XI. The statute is remedial in nature, "designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination." Bilodeau v. Oliver Stores, Inc., 116 N.H. 83, 86, 352 A.2d 741, 743 (1976).Accordingly, "all reasonable doubts in the construction of the workers' compensation statutes will be liberally construed in a manner that favors the injured employee." Petition of Abbott, 139 N.H. 412, 416, 653 A.2d 1113, 1115 (1995). | Workers' compensation law is remedial in nature, designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination, and accordingly, all reasonable doubts in construction of workers' compensation law will be liberally construed in a manner that favors the injured employee. | Is the workers compensation law liberally construed in a manner that favors the injured employee? | 048136.docx | LEGALEASE-00126952-LEGALEASE-00126953 | Order, SA, Sub | 0.46 | 1 | 0 | 1 | 1 | 1 |
| 9262 | Szymczak v. Holland Cmty. Hosp., 187 Mich. App. 142 | 92+2752 | We next turn to the fund's argument that the amendment as applied violates the Contract Clause, U.S. Const., art. I, " 10; Mich. Const.1963, art. 1, " 10. The fund asserts that any legislative amendment changing the fund's responsibility for reimbursement is an unconstitutional infringement upon existing vested rights. However, the Supreme Court has repeatedly held that benefits and liabilities arising out of the workers' compensation statute do not create rights protected by the Contract Clause. Romein v. General Motors Corp., 436 Mich. 515, 533, 462 N.W.2d 555 (1990); Selk v. Detroit Plastic Products, 419 Mich 1, 12, 345 N.W.2d 184 (1984); Lahti v. Fosterling, 357 Mich. 578, 99 N.W.2d 490 (1959). | Benefits and liabilities arising out of workers' compensation statute do not create rights protected by contract clause of Federal or State Constitutions. U.S.C.A. Const. Art. 1, S 10, cl. 1; M.C.L.A. Const. Art. 1, S 10. | Do the benefits and liabilities in the workers compensation statute create rights protected by the Contract Clause? | 048225.docx | LEGALEASE-00126918-LEGALEASE-00126919 | Order, SA, Sub | 0.69 | 1 | 0 | 1 | 1 | 1 |
| 9263 | Wayne v. A.V.A. Vending, 52 S.W.3d 412 | 150+71(1) | However, even if laches applied appellee has not satisfied the elements established in City of Fort Worth and its progeny. In order to justify a defense of laches, the plaintiff must have unreasonably delayed in asserting his claim and the defendant must have detrimentally changed his position because of the delay. See City of Fort Worth, 388 S.W.2d at 403; see also Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex.1998); Federal Financial Co. v. Delgado, 1 S.W.3d 181, 186 (Tex.App."Corpus Christi 1999, no writ). | In order to justify a defense of laches, the plaintiff must have unreasonably delayed in asserting his claim and the defendant must have detrimentally changed his position because of the delay. | Does laches apply where a defendant did not contend that he had changed his position to his detriment due to delay in plaintiff bringing suit? | 005404.docx | LEGALEASE-00128000-LEGALEASE-00128001 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 9264 | Berkowitz v. Palm Springs La Quinta Dev. Co., 37 Cal. App. 2d 249 | 13+65 | It is thoroughly settled that plaintiff's cause of action must exist at the time he files his complaint and that the rights of the parties must be judged by the conditions existing at the time the action is commenced. 1 Cal.Jur. 377, and cases there cited. From the findings of the trial court it plainly appears that plaintiff agreed in writing to be bound by the action of the board of directors providing for the payment of his bonus by defendants in October, 1940. The trial court clearly was of the opinion that the sum of $8,300 was not due at the time of the commencement of the action, for it provided that this sum should not bear interest until after October 15, 1940, and stayed the issuance of execution thereon until the last-mentioned date. Defendant's contention that plaintiff's claim for the bonus and the dividend was prematurely brought must be sustained for it is apparent that the cause of action for these two items did not exist when the action was commenced. In Landis v. Morrissey, 69 Cal. 83, 87, 10 P. 258, such a contention is referred to as "a perfect defense". | Plaintiff's cause of action must exist at the time plaintiff files his complaint, and rights of parties must be judged by conditions existing at the time action is commenced. | Must a plaintiff's cause of action exist at the time plaintiff files his complaint? | 005889.docx | LEGALEASE-00127513-LEGALEASE-00127514 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 9265 | Davis v. Upshur Cty., 191 S.W.2d 524 | 13+65 | "Generally speaking, it is the condition of things at the time of the hearing of the suit, rather than that existing at its commencement, which is material, and which furnishes the basis for relief." | Generally, condition existing at time of hearing of suit, rather than that existing at its commencement, furnishes basis for injunctive relief. | Is it the condition of things at the time of the hearing rather than that existing at the time of the commencement of the suit which furnishes the basis for relief? | 005907.docx | LEGALEASE-00127650-LEGALEASE-00127651 | Order, SA, Sub | 0.28 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9266 | Werber v. Atkinson, 84 A.2d 111 | 132+40 | A plaintiff's right to recover depends upon his right at the inception of the suit, and the non-existence of a cause of action when the siut was begun is a fatal defect which can not be cured by the accrual of a cause of action pending suit. If a plaintiff at the time he files his complaint has no cause of action, he can not by amendment or supplemental complaint introduce a cause of action that accrues thereafter even though it arises out of the same transaction that is the subject of the original complaint. A suit which is prematurely brought can not be maintained, even if the cause of action has accrued by the time the cause is called for trial, nor can an amended petition in such a case set up a cause of action which has not accrued at the time the original petition was filed. A complaint in a suit at law can not properly be amended to embrace a cause of action arising since the suit was begun. An amendment dates back to the time of the filing of the original complaint. In cases thus prematurely brought, the proper procedure is to dismiss the action without prejudice to the bringing of another action when the cause of action actually accrues. | A suit which is prematurely brought cannot be maintained, even if cause of action has accrued by time cause is called for trial, nor can an amended petition in such a case set up a cause of action which has not accrued at time original petition was filed. | Can a suit which is prematurely brought be maintained? | 006033.docx | LEGALEASE-00127290-LEGALEASE-00127291 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9267 | Prator v. Caddo Parish, 888 So.2d 812 | 13+6 | Our sole concern in granting a writ in the instant case was whether a sufficiently justiciable controversy existed between the sheriff and the parish. Courts are without power to grant declaratory relief unless such a controversy exists. To avoid deciding abstract, hypothetical, or moot questions, courts require cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1171 (La.1987)(on rehearing). "These traditional notions of justiciability are rooted in our constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government." Perschall v. State, 96"0322, p. 15 (La.7/1/97), 697 So.2d 240, 251. Essential to the exercise of this state's power is the threshold requirement of a dispute, that is, "adverse parties with opposing claims ripe for judicial determination." Id. | To avoid deciding abstract, hypothetical, or moot questions, courts require cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. | Are the cases submitted for adjudication must ripe for decision? | 006088.docx | LEGALEASE-00127909-LEGALEASE-00127910 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9268 | Meagher v. Uintah Gas Co., 123 Utah 123 | 13+65 | Meagher, by amendment, properly was permitted to attack Stock's alleged interest by pleading title acquired four days after commencement of the action. This action and most of the pleadings were filed before we adopted the new rules. Without discussing what impact, if any, the rules would have, had the action been brought after their adoption, we can say generally that an entirely new and different cause may not be pleaded by reply. Nor could a plaintiff in a quiet title action assert title acquired after its commencement. But there are exceptions. Such title acquired after action begun, but before defendant pleads adversely, man be pleaded and proved in derogation of the defendant's adverse claim. We cannot view Meagher's claim of one-half interest alleged in his amended reply as a new or different cause. After reversal by this court, he conceded only half ownership in the originally pleaded whole. Meagher's action persists on the same theory, -one to quiet title. One may allege a greater and provealesser title, as is held generally and by this court, and we see no reason to disturb the rule because the lesser is pleaded by reply. Appellants' authorities seem confined to cases of clear departure, and not, as here, to cases where the theory persists but the quantum fo estate is reduced by amendment. | Generally, plaintiff in a quiet title action cannot assert title acquired after commencement of the action, but, where such title is acquired after action is begun but before defendant pleads adversely, such title may be pleaded and proved in derogation of defendant's adverse claim. | Can a plaintiff in a quiet title action assert title acquired after its commencement? | Action - Memo # 863 - C PC.docx | ROSS-003300017-ROSS-003300018 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |
| 9269 | Triangle Oil Co. v. City of New Orleans, 5 So. 2d 558 | 13+63 | In Corpus Juris, Vol. 21, Section 211, at page 210, is found the following:"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such delay in enforcing one's rights as works disadvantage to another." | "Laches" in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, and more specifically, it is inexcusable delay in asserting a right, an implied waiver arising from knowledge of existing conditions and an acquiescence in them, and is such delay in enforcing one's rights as works disadvantage to another. | "Is ""laches"" a neglect, for unreasonable and unexplained length of time, to do what in law should have been done earlier?" | 006257.docx | LEGALEASE-00127779-LEGALEASE-00127780 | SA, Sub | 0.12 | 0 | 0 | 1 | 1 | |
| 9270 | Brooks Bros. v. Brooks Clothing of Cal., 60 F. Supp. 442 | 13+65 | It is axiomatic that a court of equity must determine the issues before it as of the day of determination. The chancellor must adjudicate the equities as he finds them on the day in which he makes his decision. A change in conditions may, even if it does not call for total denial of relief, affect the quantum of relief. Nay, more, it may call for relief in the light of changed conditions which would not have been warranted before. | A court of equity must determine the issues before it as of the day of determination, and a change in conditions may, even if it does not call for total denial of relief, affect the quantum of relief. | Should a court of equity determine the issues before it as of the day of determination? | 006266.docx | LEGALEASE-00127816-LEGALEASE-00127817 | Order, SA, Sub | 0.54 | 1 | 0 | 1 | 1 | 1 |
| 9271 | State ex rel. Mott v. Bd. of Educ. of Darke Cty., 37 N.E.2d 660 | 13+65 | State ex rel. Apple v. Pence, 137 Ohio St. 569, 31 N.E.2d 841, 843, seems to us to be so nearly on all fours with the case at bar as to need nothing further than its citation. The question is thoroughly discussed and pertinent cases are cited and commented upon. The syllabus is to the effect that in exercising the extraordinary power of mandamus, a court should take into consideration the facts and conditions arising at the time it determines whether to issue a peremptory writ. This case arose in Shelby County decided by this Court. We quote from the decision of the Supreme Court: "The Court of Appeals held: "Plaintiff's rights must be determined as of February 11, 1939 [the day of filing the petition], and hence the subsequent action through which centralization was effected would not defeat the right." In so holding the court below erred'. | In exercising extraordinary power of mandamus, the court is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but rather it should take into consideration facts arising at time it determines whether to issue a peremptory writ. | Does the factual situation existing at the time of the issue governs in a mandamus proceeding? | 006296.docx | LEGALEASE-00127939-LEGALEASE-00127940 | Order, SA, Sub | 0.66 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9272 | Wisconsin v. Yoder, 406 U.S. 205 | 1.41E+30 | There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education. See, e.g., Pierce v. Society of Sisters, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). Providing public schools ranks at the very apex of the function of a State. Yet even this paramount responsibility was, in Pierce, made to yield to the right of parents to provide an equivalent education in a privately operated system. There the Court held that Oregon's statute compelling attendance in a public school from age eight to age 16 unreasonably interfered with the interest of parents in directing the rearing of their off-spring, including their education in church-operated schools. As that case suggests, the values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society. See also Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); cf. Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). Thus, a State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children so long as they, in the words of Pierce, "prepare (them) for additional obligations." 268 U.S., at 535, 45 S.Ct., at 573. | Having a high responsibility for the education of its citizens, a state has the power to impose reasonable regulations for the control and duration of basic education. | Does a state have power to impose reasonable regulations for the control and duration of basic education? | 016878.docx | LEGALEASE-00127442-LEGALEASE-00127444 | Order, SA, Sub | 0.9 | 1 | 0 | 1 | 1 | 1 |
| 9273 | Sanders v. Boykin, 192 N.C. 262 | 366+35 | Upon this principle of law, Thomas H. Boykin, having failed to have the mortgage assigned for his benefit, would lose his right of subrogation so far as the mortgage is concerned, but it appears from the record that the Bailey Banking Company had reduced its note of $14,090 to judgment in a proceeding to foreclose the mortgages securing same. When this judgment was rendered the note, as evidence of indebtedness, was extinguished by the higher evidence of record. Gibson v. Smith, 63 N. C. 103. In other words, the judgment merged the debt upon which it was rendered. The rule is thus expressed in Wayman v. Cochrane, 35 Ill. 152, quoted with approval by Ruffin, J., in Grant v. Burgwyn, 88 N. C. 99:"It is said that by judgment, the contract upon which it is based becomes entirely merged-loses all its validity-and ceases to be obligatory upon the parties.Its force and effect are wholly expended, and all remaining liability is transferred to the judgment, which then becomes the evidence, and the only evidence that can be used in a court, of the existence of the original debt." Applying this rule of law to the case under consideration, we hold that the cancellation of the mortgage after the debt had become merged in a judgment did not of itself destroy the right of subrogation. It does not appear from the record whether the judgment has been canceled or whether it has been assigned for the benefit of Thomas H. Boykin. Neither does the date or form of the judgment appear. | Cancellation of mortgage after debt had become merged in judgment held not of itself to destroy right of surety paying same to subrogation. | Does cancellation of mortgage after debt had become merged in judgment held not of itself to destroy right of surety paying same to subrogation? | 043388.docx | LEGALEASE-00127843-LEGALEASE-00127844 | Order, SA, Sub | 0.91 | 1 | 0 | 1 | 1 | 1 |
| 9274 | TX. C.C. v. Wilson/Barnes Gen. Contractors, 233 S.W.3d 562 | 217+3522 | Such a construction of the phrase "to be," however, cannot be obtained under our rules of contract construction. Although the dissent in Midwestern identified three "uses" of the phrase "to be," only one was given in interpreting the scope of paragraph 11.3.5. Under our rules, we cannot choose what meaning to give words, but must give them their plain meaning. Giving "to be" its plain meaning, we conclude waiver results if after final payment the owner intends to provide property insurance, the contract requires the owner to provide property insurance, or the owner provides property insurance in the future. Am. Heritage Dictionary 155 (4th ed.2000). That the word "is" could have been used instead does not change the plain meaning of the phrase. Nor does the language in paragraph 11.1.3 concerning the contractor's liability insurance that TX. C.C. maintains support its position that the meaning of "to be" is limited to "required." To the contrary, that language""required to remain in effect after final payment""by its plain meaning is self-limiting to that which is an obligation. Given the meaning of "to be," we conclude the parties intended subrogation claims to be waived if TX. C.C. provided insurance post-construction through a policy other than that insuring the project during construction. See Midwestern, 801 N.E.2d at 669 (concluding subrogation claim arising from proceeds paid under policy obtained post-construction waived under 1987 version of paragraph 11.3.5); Colonial Props. Realty Ltd. P'ship v. Lowder Constr. Co., 256 Ga.App. 106, 567 S.E.2d 389 (2002) (same). Although TX. C.C. was not required by the contract to provide post-construction insurance and no such intent can be gleaned from the contract itself, no dispute exists that TX. C.C. did in fact provide post-construction insurance beginning at least in 1999. As such, it waived its rights against Wilson/Barnes and Colorado Stone for damages resulting from the fire | Waiver of subrogation clause contained in construction contract between restaurant owner and general contractor, providing that "if after final payment property insurance is to be provided" owner waived all rights for damages caused by fire covered by this separate property insurance, was enforceable to preclude owner, as insured, from recovering proceeds insurer paid to owner for post-construction loss of restaurant due to fire resulting from faulty fireplace installed by subcontractor under property insurance policy owner voluntarily obtained after construction period and final payment, as phrase "to be" did not mean "required," and, thus, waiver resulted if, after final payment, owner intended to provide property insurance, contract required owner to provide such insurance, or owner provided such insurance in the future. | Does a waiver of subrogation require the owner to provide property insurance in the future? | 043455.docx | LEGALEASE-00127706-LEGALEASE-00127707 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9275 | Travelers Ins. Co. v. Hartford Acc. & Indem. Co., 222 Pa. Super. 546 | 366+35 | The court below is correct in citing our adherence to the time-honored principle that an injured party must consolidate into a single action against a wrongdoer all damages arising out of a tort. Fields v. Philadelphia Rapid Transit Co., 273 Pa. 282, 117 A. 59 (1922); Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., 116 Pa.Super. 231, 176 A. 82 (1935). As a subrogee derives his right to recovery from the injured party, the prohibition against splitting of actions is no less binding where the interest of a subrogee is involved. Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., supra; Spinelli v. Maxwell, 430 Pa. 478, 243 A.2d 425 (1968). The trial court is also correct in concluding that, despite language to the contrary in an early case, more recent precedents indicate that the right of subrogation is not self-executing once payment has been made to, or on behalf of, the legal plaintiff and notice has been given to the defendant; but that the subrogee must exercise "reasonable diligence" to protect its interest. Saber v. Supplee-Wills-Jones Milk Co., 181 Pa.Super. 167, 124 A.2d 620 (1956); Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., supra. | Right of subrogation is not self-executing once payment has been made to, or on behalf of, legal plaintiff, and notice has been given to defendant; subrogee must exercise reasonable diligence to protect his interest. | Is the right of subrogation self-executing? | 043502.docx | LEGALEASE-00127557-LEGALEASE-00127558 | Order, SA, Sub | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 9276 | Colonial Properties Realty Ltd. P'ship v. Lowder Const. Co., 256 Ga. App. 106 | 366+35 | First, Colonial argues that the subrogation clause cannot exculpate Lowder for acts of gross negligence. That is correct. "[Waiver of subrogation] clauses are intended to allows [sic] the parties to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance." "Exculpatory clauses .. are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence." However, exculpatory clauses do not relieve a party from liability for acts of gross negligence19 or wilful or wanton conduct. | Waiver-of-subrogation clauses are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence; however, such clauses do not relieve a party from liability for acts of gross negligence or wilful or wanton conduct. | "Are waiver-of-subrogation clauses valid, binding, and not void as against public policy when a business relieves itself from its own negligence?" | Subrogation - Memo # 1253 - C - SKG.docx | ROSS-003285414-ROSS-003285415 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |
| 9277 | Casper Oil Co. v. Evenson, 888 P.2d 221 | 413+771 | If temporary total disability benefits were dependent upon the employee's continued employment with the company, then the incentive to fire injured workers would be high. Worker's compensation legislation is not intended to encourage this result. The worker's compensation legislation places the risk of loss and injury on industry rather than on the individual employee. In re Jensen, 63 Wyo. 88, 178 P.2d 897, 900 (1947); see also, State ex rel. Wyoming Workers' Compensation Div. v. Medina, 770 P.2d 1104, 1107 (Wyo.1989) (noting Wyoming's history of construing worker's compensation legislation to benefit the worker and to favor coverage). Wyo.Stat. " 27"14"101(b) (1991 & Cum.Supp.1994) states that worker's compensation legislation is intended to "assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers * * *." Disallowing temporary total disability benefits because the company fired the injured worker will not result in the quick and efficient delivery of benefits. Casper Oil's proposed rule would place the risk of loss and injury on the individual employee rather than on industry. See, In re Jensen, 178 P.2d at 900. | Argument that workers' compensation claimant was barred from receiving benefits because he was discharged for misconduct was contrary to policy behind workers' compensation legislation; such barring of claimant from receiving benefits would give employers incentive to discharge injured workers, would not result in quick and efficient delivery of benefits, and would place risk of loss and injury on individual employee rather than on industry. | Does workers compensation place risks of loss and injury on the industry rather than on individual employees? | 048505.docx | LEGALEASE-00127426-LEGALEASE-00127428 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 9278 | Bradshaw v. Park, 29 Cal. App. 4th 1267 | 413+1 | In construing a statute, a court should ascertain the legislative intent in order to carry out the purpose of the law. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 387, 20 Cal.Rptr.2d 523, 853 P.2d 978.) The underpinnings of the workers' compensation system rest upon the employer's obligation to secure payment of workers' compensation. (Self"Insurers' Security Fund v. ESIS, Inc. (1988) 204 Cal.App.3d 1148, 1156, 251 Cal.Rptr. 693.) This statutory obligation begins with the inception of the status as employer and does not depend upon the making of a claim. (Ibid.) | Employer's statutory obligation to secure payment of workers' compensation begins with inception of status as employer and does not depend on making of claim. | "Does an employers statutory obligation to secure payment of workers compensation benefits begin with the inception of status as an employer, and not upon the making of a claim?" | 048516.docx | LEGALEASE-00127472-LEGALEASE-00127473 | Order, SA | 0.73 | 1 | 0 | 0 | 1 | |
| 9279 | Browar v. Paul Hardeman, 183 Cal. App. 2d 708 | 13+65 | Some months after Browar filed the complaint in his case, plaintiff Browar apparently made some arrangement with the plaintiff Krause so that the latter assigned to Browar a purported claim against Levin in the amount of $15,000. This seems to have been intended as a means of fortifying Browar's position in his suit against defendant. This part of the transaction took place after the complaint was filed, and without any supplemental complaint in the record. Plaintiff's cause of action must exist at the time he files his complaint and the rights of the parties must be judged by conditions existing at the time the action is commenced. Berkowitz v. Palm Springs, etc., 37 Cal.App.2d 249, 99 P.2d 372. | Plaintiff's cause of action must exist at time he files his complaint, and rights of parties must be judged by conditions existing at time action is commenced. | Is it a must that a plaintiff's cause of action existed at the time he files his complaint? | 006129.docx | LEGALEASE-00128360-LEGALEASE-00128361 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9280 | Stocker v. Wells, 150 Neb. 51 | 13+65 | The rule is: "The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered." Conrad v. Kaup, 137 Neb. 900, 291 N.W. 687, 688. | Relief ordinarily granted in equity is such as nature of case, the law, and facts demand, not at beginning of litigation, but at time decree is entered. R.S.1943, S 25-1925. | Is relief ordinarily granted in equity at the time a decree is entered? | 006146.docx | LEGALEASE-00128503-LEGALEASE-00128504 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 9281 | Baldauf v. Nitze, 261 F. Supp. 167 | 34+1 | Congress, by virtue of U.S. CONST, art. I, " 8, and the President, by virtue of U.S.Const. art. II, " 2, have correlative powers to promulgate rules for the government and regulation of the forces. Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 890, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). | Congress, by virtue of article of Constitution governing powers of Congress, and the president, by virtue of article of Constitution governing his appointing power, have correlative powers to promulgate rules for governing and regulating armed forces. U.S.C.A.Const. art. 1, S 8; art. 2, S 2. | Do Congress and the president have correlative powers to promulgate rules for governing and regulating the armed forces? | Armed Forces - Memo 21 - RK.docx | LEGALEASE-00018142-LEGALEASE-00018143 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 9282 | Harper v. Jones, 195 F.2d 705 | 34+1 | The President is authorized to make and publish regulations for the government of the army which shall be enforced and obeyed until altered or revoked by the same authority. 10 U.S.C.A. " 16. Pursuant to this statute, regulation 600-10 was promulgated and it granted authority to commanding officers to declare establishments and areas off limits to troops for the purpose of maintaining discipline and to safeguard the health and welfare of military personnel. We think it clear that the regulations gave the General, for the health and welfare of the troops under his command, power and authority to declare the establishment of the plaintiffs "off limits." | The President of the United States is authorized to make and publish regulations for government of army which shall be enforced and obeyed until altered or revoked by the same authority. 10 U.S.C.A. S 16. | Are the regulations made by the president for the government of the army to be enforced and obeyed until altered or revoked by the same authority? | 008326.docx | LEGALEASE-00128612-LEGALEASE-00128613 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9283 | Chicago & S. Air Lines v. Waterman S. S. Corp., 333 U.S. 103 | 34+1 | Congress may of course delegate very large grants of its power over foreign commerce to the President. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259. The President also possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs. For present purposes, the order draws vitality from either or both sources. Legislative and Executive powers are pooled obviously to the end that commercial strategic and diplomatic interests of the country may be coordinated and advanced without collision or deadlock between agencies. | Congress may delegate large grants of its power over foreign commerce to the President, whereas the President also possesses in his own right certain such powers conferred by constitution on him as Commander in Chief and as the nations organ in foreign affairs. | Does the president possess powers conferred by the Constitution on him as Commander-in-Chief and the nation's organ in foreign affairs? | 008330.docx | LEGALEASE-00128616-LEGALEASE-00128617 | Order, SA, Sub | 0.64 | 1 | 0 | 1 | 1 | 1 |
| 9284 | Wronke v. Marsh, 603 F. Supp. 407 | 34+2 | Although a district court's scope of review is limited where military decisions are involved, a court may review such decisions to insure that military regulations are followed. White v. Callaway, 501 F.2d 672, 674 (5th Cir.1974); Wells v. Commander of Third Battalion, 441 F.Supp. 336, 339 (E.D.Mo.1977). Where the meaning of a regulation is in question, the Army's own interpretation of its regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. See Harris v. Brown, 470 F.Supp. 250, 253 (W.D.Mo.1979) (citing U.S. v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)); see Hodges v. Callaway, 499 F.2d at 423 (Army ought to be primary authority for the interpretation of its own regulations). If the applicable regulations are interpreted by the Army in a reasonable manner, any charge of procedural irregularity must fail even though the petitioner may present another reasonable interpretation of the regulations. See Cunningham v. Hoffman, 420 F.Supp. 325, 328 (M.D.Tenn.1976). Thus where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for the interpretation of the military service. See McCourt v. Culkin, 473 F.Supp. 1247, 1250 n. 6 (E.D.Pa.1979) (citing Keister v. Resor, 462 F.2d 471 (3rd Cir.1972), cert. denied 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 151 (1972)). | Where meaning of army regulation is in question, Army's own interpretation of its regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. | Should the Army's interpretation of its regulations be given controlling weight when the meaning of the army regulation is in question? | Armed Forces - Memo 46 - RK.docx | ROSS-003300549-ROSS-003300550 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9285 | Dash v. Commanding Gen., Fort Jackson, S. C., 307 F. Supp. 849 | 34+28(1) | Despite the absence of any specific decisional authority on our specific issues, it would appear plain from the foregoing general principles that, within certain limits, the military establishment should have authority to restrict both the distribution of printed materials and the holding of public discussion meetings on post. The right to restrict, however, must no doubt be kept within reasonable bounds; it is not, and cannot be, a completely limitless power. And, however hesitant they may be to "intrude", Courts will be available to determine whether there is a reasonable basis for such restrictions as may be placed on the serviceman's right of free speech by the military establishment. | Within certain limits, military establishment has authority to restrict distribution of printed materials and holding of public discussion meetings on post, but right to restrict must be kept within reasonable bounds and courts may determine whether there is reasonable basis for restrictions. | Does the military have the authority to restrict distribution of printed materials? | 008359.docx | LEGALEASE-00128640-LEGALEASE-00128641 | Order, SA, Sub | 0.58 | 1 | 0 | 1 | 1 | 1 |
| 9286 | Travelers Ins. Co. v. Joachim, 315 S.W.3d 860 | 307A+501 | "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may ... take a non-suit, which shall be entered in the minutes. Notice of the ... non-suit shall be served ... on any party who has answered or who has been served with process without necessity of court order." Tex. R. Civ. P. 162. A party has an absolute right to file a nonsuit, and a trial court is without discretion to refuse an order dismissing a case because of a nonsuit unless collateral matters remain. See Villafani v. Trejo, 251 S.W.3d 466, 468-69 (Tex.2008); In re Bennett, 960 S.W.2d 35, 38 (Tex.1997) (per curiam); Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991). A nonsuit "extinguishes a case or controversy from 'the moment the motion is filed' or an oral motion is made in open court; the only requirement is 'the mere filing of the motion with the clerk of the court.' "Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.2006) (per curiam) (quoting Shadowbrook Apts. v. Abu- Ahmad, 783 S.W.2d 210, 211 (Tex.1990) (per curiam)). It renders the merits of the nonsuited case moot. See Villafani, 251 S.W.3d at 469 ("One unique effect of a nonsuit is that it can vitiate certain interlocutory orders, rendering them moot and unappealable."); Shultz, 195 S.W. 3d at 101 ("Although [Rule 162] permits motions for costs, attorney's fees, and sanctions to remain viable in the trial court, it does not forestall the non suit's effect of rendering the merits of the case moot."); Gen. Land Office v. OXY U.S.A., Inc., 789 S.W. 2d 569, 571 (Tex.1990) ("As a consequence of the trial court's granting the non suit, the temporary injunction ceased to exist and the appeal became moot.... It was not necessary for the trial court to enter such a separate order because when the underlying action was dismissed, the temporary injunction dissolved automatically.") (Citation omitted). | A party has an absolute right to file a nonsuit, and a trial court is without discretion to refuse an order dismissing a case because of a nonsuit unless collateral matters remain. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a party have an absolute right to file a nonsuit? | Pretrial Procedure - Memo # 946 - C - SK.docx | ROSS-003299670-ROSS-003299672 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9287 | Patterson v. Allstate Ins. Co., 884 So. 2d 178 | 307A+501 | In Florida, the right has been limited by Florida Rule of Civil Procedure 1.420(a) which gives plaintiffs the right to voluntarily dismiss their action at any time "before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court." Until the line drawn by this rule is crossed, the plaintiff's right to a voluntary dismissal is "absolute." Fears v. Lunsford, 314 So.2d 578 (Fla.1975)(allowing a voluntary dismissal when the motion was made after the trial court granted the defendant's motion for a directed verdict but before the directed verdict was announced to the jury); see also Ambory v. Ambory, 442 So.2d 1087 (Fla. 2d DCA 1983) (approving a voluntary dismissal when the motion was made after the trial court orally granted the defendant's motion to dismiss with prejudice but before the court entered a written order); Romar Int'l, Inc. v. Jim Rathman Chevrolet/Cadillac, Inc., 420 So.2d 346 (Fla. 5th DCA 1982) (approving a voluntary dismissal after the defendant moved for sanctions pursuant to Florida Rule of Civil Procedure 1.310(g)(1) because the plaintiff noticed a deposition and failed to attend); Bevan v. D'Alessandro, 395 So.2d 1285 (Fla. 2d DCA 1981) (approving a voluntary dismissal after the defendant moved to dismiss for failure to prosecute and the time had lapsed for the plaintiff to show cause why the action should not be dismissed). | Until the line drawn by rule limiting right to voluntarily dismiss action is crossed, the plaintiff's right to a voluntary dismissal is absolute. West's F.S.A. RCP Rule 1.420(a). | "Until the line drawn by rule limiting right to voluntarily dismiss action is crossed, is the plaintiff's right to a voluntary dismissal absolute?" | 039509.docx | LEGALEASE-00128425-LEGALEASE-00128426 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 9288 | Jones v. Aetna Cas. & Sur. Co., 26 Cal. App. 4th 1717 | 366+41(6) | " 'A subrogation as applied to an insurer is its right to be put in the position of itsinsured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid. [Citation.]' " (Parsons Manufacturing Corp. v. Superior Court, supra, 156 Cal.App.3d at p. 1158, 203 Cal.Rptr. 419, citing Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 864, 131 Cal.Rptr. 211.) An insurer's right to subrogation is governed by equitable principles. (Parsons Manufacturing Corp. v. Superior Court, supra, 156 Cal.App.3d at p. 1158, 203 Cal.Rptr. 419, citing Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 865, 131 Cal.Rptr. 211.) Under the doctrine of superior equities, followed in California, the burden is upon the surety to establish its superior equity in seeking recovery against a third party. (Rokeby-Johnson v. AquatronicsInternational, Inc., supra, 159 Cal.App.3d at p. 1084, 206 Cal.Rptr. 232.) For example, inthe Liberty Mutual opinion, the Court of Appeal, in holding the insurer had no right of subrogation, considered the commercial expectation of the sublessees in paying the insurance premium and the windfall to the insurer in the event subrogation was permitted. (Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., supra, 59 Cal.App.3d at p. 865, 131 Cal. 211.) The Liberty Mutual court denied subrogation against the sublessee as the sublessee was an implied-in-law coinsured under the insurance policy. (Ibid.) | Under doctrine of superior equities, pertaining to right of subrogation, burden is upon surety to establish its superior equity in seeking recovery against third party. | "Under the doctrine of superior equities, does the surety has the burden to establish its superior equity in seeking recovery against a third party?" | Subrogation - Memo # 1101 - C - SK.docx | ROSS-003286964-ROSS-003286965 | Order, SA, Sub | 0.89 | 1 | 0 | 1 | 1 | 1 |
| 9289 | Lyons v. Pool Co. of Texas, 781 So. 2d 569 | 16+1.20(2) | Neither this court nor the Louisiana legislature can adopt a rule that changes theapplicable law, where a conflict exists between federal maritime law and state law. Because Lyons' claims are, without contest, governed by federal maritime law, we must apply federal law to all claims for subrogation and indemnity. Fontenot, supra at 568. Because federal law and Louisiana law conflict regarding the enforcement of contracts of indemnity and waivers of subrogation under LSA-R.S.9:2780, we can not apply Louisiana law to invalidate the waiver of subrogation in the Time Charter agreement, when Tidewater's claim for subrogation is governed by federal maritime law. Rodrigue, supra at 248. The parties do not argue that the waiver is invalid under federal maritime law. Tidewater waived all rights of indemnity and subrogation against Amoco and its drilling contractor, Pool, in the Time Charter agreement. For these reason, the trial court erred in applying Louisiana law, voiding the waiver and awarding Tidewater damages against Pool. | Because federal law and Louisiana law conflicted regarding enforcement of contracts of indemnity and waivers of subrogation, Louisiana law could not apply to invalidate waiver of subrogation in time charter agreement, when claim for subrogation asserted by injured deckhand's employer/time charterer was governed by federal maritime law. LSA-R.S. 9:2780. | Does law prohibit waivers of subrogation? | Subrogation - Memo # 1032 - C - SHS.docx | ROSS-003286272-ROSS-003286274 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 9290 | Kaf-Kaf v. Rodless Decorations, 90 N.Y.2d 654 | 217+3522 | Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has causeda loss for which the insurer is bound to reimburse (see, Pennsylvania Gen. Ins. Co. v. Austin Powder Co., 68 N.Y.2d 465, 510 N.Y.S.2d 67, 502 N.E.2d 982). While parties to an agreement may waive their insurer's right of subrogation, a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears (see, S.S.D.W. Co. v. Brisk Waterproofing Co., 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097). | While parties to agreement may waive their insurer's right of subrogation, waiver of subrogation clause cannot be enforced beyond scope of specific context in which it appears. | Can a waiver of subrogation provision be enforced beyond the scope what appears in a contract? | Subrogation - Memo # 1053 - C - NS.docx | ROSS-003286803-ROSS-003286805 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9291 | Viacom Int'l v. Midtown Realty Co., 193 A.D.2d 45 | 217+3522 | New York courts have consistently held that a waiver of subrogation provision contained in a lease negotiated between two sophisticated parties in an arm's-length transaction which is valid and enforceable provided the intention of the parties is clearly and unequivocally expressed. (See, e.g., Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153, 397 N.Y.S.2d 602, 366 N.E.2d 263; Extaza of 34 St. v. City Stores Co., 62 N.Y.2d 919, 479 N.Y.S.2d 5, 467 N.E.2d 889.) Rather than exempting the parties from liability in violation of statutory proscription applicable to landlords and others in comparable relationships, such as caterers, owners and contractors, building service or maintenance contractors and architects, engineers and surveyors (see, General Obligations Law "" 5"322, 5"322.1, 5"323, 5"324), such clauses merely reflect their allocation of the risk of liability, as between themselves, to third parties through the device of insurance. (Hogeland v. Sibley, Lindsay & Curr, supra, at 160"161, 397 N.Y.S.2d 602, 366 N.E.2d 263; see, Brentano's, Inc. v. Charter Mgt. Corp., 46 A.D.2d 861, 361 N.Y.S.2d 665.) Such provisions, however, will not be enforced to impose a restriction on the subrogee's rights beyond the plain meaning of the waiver clause. (S.S.D.W. Co. v. Brisk Waterproofing Co., 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097.) As St. Paul recognized with respect to this particular clause, the waiver is limited to subrogation claims premised on tort liability. In all other respects, the parties' rights and obligations under the lease as to the various contingencies that might arise in such a relationship are clearly spelled out. | Waiver of subrogation provision in lease, which provided that lessee and building owner each "releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation," was limited to subrogation claims based on tort liability and did not encompass contract claims; thus, lessee's insurers were permitted to assert claim in subrogation based on building owner's breach of its contractual obligation to repair damaged leasehold improvements. | Is a waiver of subrogation provision in lease limited to subrogation claims based on tort liability and do not encompass contract claims? | Subrogation - Memo # 1094 - C - VP.docx | LEGALEASE-00018456-LEGALEASE-00018457 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9292 | Ins. Co. of N. Am. v. Borsdorff Servs., 225 A.D.2d 494 | 217+3522 | The lease provisions whereby the landlord and tenant agreed to obtain fire insurance policies with waiver of subrogation provisions barring one party's insurer from bringing a subrogation action against the other party to recover amounts paid out under the insurance policy, is valid and enforceable, as an allocation of risk provision, and thereby precludes this subrogation claim (see, Brentano's Inc. v. Charter Met. Corp., 46 A.D.2d 861, 361 N.Y.S.2d 665; Cidis v. Net Realty Holding Trust, 143 A.D.2d 720, 533 N.Y.S.2d 288). Contrary to plaintiffs argument that the waiver of subrogation provision was one-sided, both the landlord and the tenant agreed to procure insurance for their respective risks in the event ofa fire (cf., Graphic Arts Supply v. Raynor, 91 A.D.2d 827, 458 N.Y.S.2d 115). | Lease provisions stating agreement by landlord and tenant to obtain fire insurance policies with waiver of subrogation provisions barring action by insurers were valid and enforceable as allocation of risk provision, and, therefore, precluded subrogation action by insurer. | Are waiver of subrogation clauses valid and enforceable? | Subrogation - Memo # 1114 - C - ES.docx | ROSS-003317342-ROSS-003317344 | Order, SA, Sub | 0.66 | 1 | 0 | 1 | 1 | 1 |
| 9293 | In re Flamingo 55, 378 B.R. 893 | 366+41(6) | As a result, "California, along with other jurisdictions, has adopted the superior equities doctrine in all cases of equitable or conventional subrogation." State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal.App.4th 1098, 1109, 49 Cal.Rptr.3d 785, 792 (Ct.App.2006). The burden is upon the one seeking subrogation to establish its superior equity. Am. Alliance Ins. Co. v. Capital Nat'l Bank of Sacramento, 75 Cal.App.2d 787, 793, 171 P.2d 449, 452"453 (Ct.App.1946). | Under California law, for purposes of applying the superior equities doctrine, the burden is upon the one seeking subrogation to establish its superior equity. | "Is the burden upon the one seeking subrogation to establish its superior equity, for purposes of applying the superior equities doctrine?" | Subrogation - Memo # 1145 - C - RY.docx | ROSS-003286996-ROSS-003286997 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9294 | State ex rel. O'Connor v. Clay Cty., 226 Iowa 885 | 13+63 | Public policy in some cases does forbid the application of the doctrine of laches to the acts of an arm of the government through its representatives. This is for the protection of the public. But where two counties are the interested parties there is no good reason why public policy should require that the people of one be penalized for the laches of the representatives for the other. The law should, as far as possible, protect both, without preference to either. | Public policy in some cases forbids the application of the doctrine of laches to the acts of an arm of the government through its representatives. | Does public policy forbid the application of the doctrine of laches to the acts of an arm of the government through its representatives? | 006175.docx | LEGALEASE-00128692-LEGALEASE-00128693 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9295 | Crossan v. May, 68 Ind. 242 | 8.30E+72 | We are not willing to adopt a rule of construction that would lead to such uncertainty. The law ought to be, and such we think it is, that the purchaser of a note, when he buys it, may know whether it is governed by the law merchant or otherwise. This he could not know if, the question depended upon extrinsic facts not appearing on the face of the note. It seems to us, therefore, that, in order to place a note upon the footing of bills of exchange, it should show on its face that it is payable at or in a bank, and that, unless it does so, averment and proof that the place named for payment is a bank will not place the paper upon the footing of bills of exchange. | In order to place a note upon the footing of bills of exchange, it should show on its face that it is payable at or in a bank; and, unless it does so, averment and proof that the place named for payment is a bank, will not place the paper upon the footing of bills of exchange. | What is required for a note to be on the footing of bills of exchange? | 009339.docx | LEGALEASE-00128992-LEGALEASE-00128993 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 9296 | Beckman v. Farmer, 579 A.2d 618 | 289+945 | Cases cited earlier involving retention of legal fees received by former partners after dissolution for unfinished business of the partnership follow the sound rule that each partner has a clear duty to wind up unfinished business for the partnership's benefit. E.g., Ellerby, supra, 138 Ill.App.3d at 80"81, 92 Ill.Dec. at 605, 485 N.E.2d at 416; Rosenfeld, supra, 146 Cal.App.3d at 216"17, 194 Cal.Rptr. at 189"90. In completing unfinished business, each partner remains accountable as a fiduciary to the former partners, Resnick, supra, 49 Md.App. at 506"07, 434 A.2d at 587, and any diversion of benefits for the former partner's own personal or professional gain is also a breach of fiduciary duty. See Rosenfeld, supra, 146 Cal.App.3d at 217, 194 Cal.Rptr. at 190.41The present case thus involves no unheard-of "new tort," but rather a failure to observe the duties of loyalty and fair dealing that partners have been recognized to owe one another for centuries. | In completing unfinished business for partnership's benefit, each partner remains accountable as fiduciary to former partners, and any diversion of benefits for former partner's own personal or professional gain is breach of fiduciary duty. | Can a partner take action with respect to unfinished partnership business for personal gain? | 022034.docx | LEGALEASE-00128960-LEGALEASE-00128961 | Order, SA, Sub | 0.75 | 1 | 0 | 1 | 1 | 1 |
| 9297 | D & J v. Ferro Corp., 176 Cal. App. 3d 1191 | 307A+501 | A defendant dismissed from an action is entitled to costs as a matter of right. (Code Civ.Proc., " 1032.) The rule applies whether the dismissal is voluntary or involuntary. (International Industries, Inc. v. Olen (1978) 21 Cal.3d 218, 145 Cal.Rptr. 691, 577 P.2d 1031.) As a general rule, a dismissal ordered by the court is considered to be involuntary while one entered at the request of a party is voluntary. Only the former requires a "written order signed by the court [which, when] filed in the action [,] ... shall constitute [a] judgment[ ]...." (Code Civ.Proc., " 581d.) | Generally, a dismissal order by the court is considered to be involuntary while one entered at request of a party is voluntary; only the former requires a written order signed by the court. West's Ann.Cal.C.C.P. S 581(d). | Is a dismissal order by the court considered to be involuntary while one entered at the request of a party is voluntary? | Pretrial Proceedure - Memo # 1148 - C - TJ.docx | ROSS-003288399-ROSS-003288400 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9298 | Ex parte Nichols, 757 So. 2d 374 | 401+5.1 | The Nicholses first argue that Jefferson County is an improper venue because, they say, the subject matter of the action is real estate located in Winston County. Rule 82(b)(1)(B), Ala. R. Civ. P., provides that "if the subject matter of the action is real estate, whether or not exclusively, or if it is for recovery or possession thereof or trespass thereto, [the action must] be brought in the county where the real estate or a material portion thereof is situated." The Nicholses argue that the subject matter of PBI's action is real estate because the action seeks enforcement of a contract that involved the sale of real estate. This Court has held that the term "subject matter," as it is used in our venue statutes and rules, "refers to the nature of the cause of action and the nature of the relief sought." Ex parte Jim Walter Homes, Inc., 712 So.2d 733, 736 (Ala.1998). This Court has held that real property is not the subject matter of a personal-injury action seeking damages or injunctive relief in regard to claims arising from a real-estate transaction. See id. at 737 (holding that real estate was not the subject matter of the action where the plaintiffs sought to recover damages for negligence and fraud in connection with a land transaction); Ex parte AU Hotel, Ltd., 677 So.2d 1160, 1163 (Ala.1996) (holding that real estate was not the subject matter of the action where the plaintiff sought to recover damages for fraud and civil conspiracy, based on representations made in connection with a land transaction). If a complaint does not allege damage or harm to real estate or seek to affect the title to real estate, then real estate is not the subject matter of the action. See Ex parte AU Hotel, Ltd., 677 So.2d at 1163. | If a complaint does not allege damage or harm to real estate or seek to affect the title to real estate, then real estate is not the subject matter of the action, for purposes of venue. Rules Civ.Proc., Rule 82(b)(1)(B). | Can real estate be the subject matter of the action if the complaint does not allege damage or harm to real estate? | Venue - Memo 100 - RK.docx | ROSS-003329027-ROSS-003329028 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 9299 | Moore v. Dodge, 557 S.W.2d 594 | 401+5.1 | The facts necessary to establish venue in Hudspeth County and on which the Plaintiff had the burden of proof were: (1) that the nature of the suit concerned land as contemplated by Subdivision 14; and (2) that the land involved was located in Hudspeth County. Piazza v. Phillips, 153 Tex. 115, 264 S.W.2d 428 (1954); Cowden v. Cowden, 143 Tex. 446, 186 S.W.2d 69 (1945). Plaintiff alleged and the evidence showed that the land is situated in Hudspeth County, a fact conceded by the Defendants. The remaining dispute involves the nature of the suit brought by the Plaintiffs and in this regard it has been settled that where venue depends upon the nature of the suit, the venue will be determined by the nature of the principal right asserted in the plaintiff's petition and the relief sought therein. Brown v. Gulf Television Company, 157 Tex. 607, 306 S.W.2d 706 (1957). It remains for this Court to determine the nature of the suit solely from the facts alleged in the Plaintiff's petition, the rights asserted, and the relief sought. Renwar Oil Corporation v. Lancaster, 154 Tex. 311, 276 S.W.2d 774 (1955); Edgar v. Bartek, 507 S.W.2d 831 (Tex.Civ.App. Corpus Christi 1974, writ dism'd). It is the ultimate or dominant purpose of the suit which determines whether or not the suit falls under Subdivision 14. Morgan v. Box, 449 499 (Tex.Civ.App. Dallas 1969, no writ); Texaco, Inc. v. Gideon, 366 S.W.2d 628 (Tex.Civ.App. Austin 1963, no writ). The rule is also established that due to the mandatory nature of Subdivision 14, Courts have generally given this Subdivision a strict construction and have refused to apply the exception unless a suit is clearly within one or more of the four categories set out by the Subdivision. Bennett v. Langdeau, 362 S.W.2d 952 (Tex. Brown v. Gulf Television Company, supra; Smith v. Hall, 147 Tex. 634, 219 S.W.2d 441 (1949). | Courts have generally given strict construction to venue statute subdivision concerning lands, and have refused to apply the exception unless suit is clearly within one or more of four categories set out by such subdivision. Vernon's Ann.Civ.St. art. 1995, subd. 14. | How do the courts construe subdivision 14 of the mandatory venue statute? | Venue - Memo 110 - RK.docx | ROSS-003317648-ROSS-003317649 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9300 | 7 Utes Corp. v. Dist. Court In & For Eighth Judicial Dist. (Jackson Cty.), 702 P.2d 262 | 401+5.1 | In determining the proper venue for an action, the substance rather than the form of the action controls. Colorado National Bank v. District Court, 189 Colo. 522, 542 P.2d 853 (1975); City and County of Denver v. Glendale Water & Sanitation District, 152 Colo. 39, 380 P.2d 553 (1963). An action affecting real property is one in which "title, lien, injury, quality or possession" is at issue. Craft v. Stumpf, 115 Colo. 181, 182, 170 P.2d 779, 780 (1946); see Gordon Inv. Co. v. Jones, 123 Colo. 253, 227 P.2d 336 (1951); Jameson v. District Court, 115 Colo. 298, 172 P.2d 449 (1946). An action for damages alone is not one affecting real property. Craft v. Stumpf, 115 Colo. at 182, 170 P.2d at 780; see 77 Am.Jur.2d Venue " 11 (1975). | An action affecting real property for venue purposes is one in which title, lien, injury, quality or possession is at issue. Rules Civ.Proc., Rule 98(a). | "Does an action affect real property if its title, lien, injury, quality or possession is at issue?" | Venue - Memo 119 - RK.docx | ROSS-003329037-ROSS-003329039 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9301 | Kennedy v. QVC Network, 43 Conn. App. 851 | 30+5 | 4 In short, we find this case distinguishable from the independent proceedings that underlay both Lougee and Mongillo, and we find the intervenor cases irrelevant to this case. We discern no meaningful distinction between the appellant in the present case and the appellant in Bergeron, and we hold that where a nonparty is aggrieved by a ruling made in the context of an on-going action, that person's remedy is by writ of error rather than appeal. | Where nonparty is aggrieved by ruling made in context of on-going action, that person's remedy is by writ of error rather than appeal. | What remedy is available to a nonparty who is aggrieved by a ruling made in context of an on-going action? | Appeal and error - Memo 49 - RK.docx | ROSS-003300506-ROSS-003300507 | Order, SA, Sub | 0.7 | 1 | 0 | 1 | 1 | 1 |
| 9302 | Glazer v. Lehman Bros., 394 F.3d 444 | 25T+134(3) | In other words, a district court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." Id. at 403, 87 S.Ct. 1801. Thus, even if there was fraudulent inducement to sign the contract as a whole, by the terms of Sections 3 and 4 of the FAA, the arbitration clause is severable and will only be voided for some error in its making. Fazio v. Lehman Bros., Inc., 340 F.3d at 393. See also Ferro Corp. v. Garrison Indus., 142 F.3d 926, 933 (6th Cir.1998). | Even if there was fraudulent inducement to sign the contract as a whole, by the terms of the Federal Arbitration Act (FAA), the arbitration clause is severable and will only be voided for some error in its making. 9 U.S.C.A. SS 3, 4. | Are arbitration clauses severable if there is a fraudulent inducement to sign the contract? | 007324.docx | LEGALEASE-00129607-LEGALEASE-00129608 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9303 | Com. v. Harrison, 444 Pa. Super. 103 | 67+2 | After careful review of appellant's contention, we hold that it is meritless.Criminal trespass is not a lesser included offense of burglary. Commonwealth v. Carter, 482 Pa. 274, 276, 393 A.2d 660, 661 (1978); Commonwealth v. Franklin, 306 Pa.Super. 422, 429-30, 452 A.2d 797, 801 (1982). Knowledge is not an element of the crime of burglary, and "thus, one defending against a burglary charge would have no reason to establish that (albeit falsely), he believed his presence in a building or occupied structure was privileged or licensed." Commonwealth v. Carter, supra at 277, 393 A.2d at 661; Commonwealth v. Casella, 312 Pa.Super. 375, 376, 458 A.2d 1007, 1008 (1983); see Commonwealth v. Simpson, 316 Pa.Super. 115, 126, 462 A.2d 821, 826 (1983) (stating that the test for determining whether an offense is a lesser included offense is whether or not all of the key elements of the lesser offense are contained in the greater offense). Thus, it is appropriate that criminal trespass and burglary be indicted as separate offenses. Commonwealth v. Cadogan, 297 Pa.Super. 405, 409 n. 2, 443 A.2d 1185, 1187 n. 2 (1982). | Knowledge is not an element of crime of burglary, and thus, one defending against burglary charge would have no reason to establish that he believed his presence in building or occupied structure was privileged or licensed. 18 Pa.C.S.A. S 3502(a). | Is knowledge an element of burglary? | Burglary - Memo 55 - RK.docx | ROSS-003300192-ROSS-003300193 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9304 | People v. King, 80 N.E.3d 599 | 210+815 | Home invasion, in contrast to residential burglary, does not require that the defendant enter the dwelling place with the specific intent to commit a felony or theft inside the dwelling place. The only mental state that home invasion requires at the moment of entry is knowledge: i.e., the defendant knows that she is entering the dwelling place, and she knows or has reason to know that someone is present in the dwelling place. Residential burglary is not therefore a lesser included offense of home invasion, because residential burglary has anelement that home invasion lacks, namely, entering the residence or remaining in the residence with the intent to commit a felony or theft therein. See Miller, 238 Ill.2d at 166, 345Ill.Dec. 59, 938 N.E.2d 498. | The offense of residential burglary has an element that the offense of home invasion does not, and thus, residential burglary is not a lesser included offense of home invasion; the offense of residential burglary includes, at the moment of the unauthorized entry or the moment of the unauthorized remaining, an intent to commit therein a felony or theft. 720 Ill. Comp. Stat. Ann. 5/19-3(a), 5/19-6(a)(1). | Is residential burglary a lesser included offense of home invasion? | Burglary - Memo 67 - RK.docx | ROSS-003287256-ROSS-003287257 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 9305 | Maryland Dep't of Transp. v. Maddalone, 187 Md. App. 549 | 92+1947 | That inquiry, now commonly called the "Elrod"Branti" test, is implicated when an employee is "discharged allegedly for political patronage reasons." Newell v. Runnels, 407 Md. 578, 610, 967 A.2d 729 (2009). See also O'Leary v. Shipley, 313 Md. 189, 204, 545 A.2d 17 (1988). The Elrod Branti test ""is a narrow and somewhat rigid one ... and is aptly applied only to a set of facts that, as a threshold matter, show political patronage as the sole motive of discharge."" Newell, supra, at 614, 967 A.2d 729 (quoting O'Leary, supra, at 205, 545 A.2d 17) (emphasis in Newell). | The Elrod-Branti test for determining whether a termination of a public employee violated the employee's right to free speech under the First Amendment, implicated when a public employee is discharged allegedly for political patronage reasons, is a narrow and somewhat rigid one and is aptly applied only to a set of facts that, as a threshold matter, show political patronage as the sole motive of discharge. U.S.C.A. Const.Amend. 1. | Is the Elrod-Branti test a rigid one? | 013356.docx | LEGALEASE-00129675-LEGALEASE-00129676 | Order, SA, Sub | 0.24 | 1 | 0 | 1 | 1 | 1 |
| 9306 | Prudential Ins. Co. of Am. v. Stack, 60 F.2d 830 | 307A+501 | This is the practice in South Carolina, where, in the discretion of the trial judge, such nonsuit should be granted, and where the nonsuit will not work prejudice to the defendant or deny him some substantial right he has acquired in the cause. State v. Southern Ry., 82 S. C. 12, 62 S. E. 1116; Pee Dee River Lumber Co. v. Fountain, 90 S. C. 122, 72 S. E. 885; American Trust Co. v. Bloom, 148 S. C. 386, 146 S. E. 249. | In South Carolina, voluntary nonsuit should be granted, where nonsuit will not prejudice defendant or deny him some substantial right acquired in cause. | "Should a voluntary nonsuit be granted, where a nonsuit will not prejudice a defendant or deny him some substantial right acquired in a cause?" | 025539.docx | LEGALEASE-00129315-LEGALEASE-00129316 | Order, SA, Sub | 0.64 | 1 | 0 | 1 | 1 | 1 |
| 9307 | Ham v. Park, 110 Ohio App. 3d 803 | 307A+501 | Civ.R. 41(A) and 41(B) are two separate rules of dismissal, and are not meant to be construed together. Civ.R. 41(A) pertains to voluntary dismissals, whereas Civ.R. 41(B) applies to involuntary dismissals. | Provision of civil rule pertaining to voluntary dismissal is separate from, and not meant to be construed together with, portion of rule pertaining to involuntary dismissal. Rules Civ.Proc., Rule 41(A, B). | "s the provision of a civil rule pertaining to a voluntary dismissal separate from, and not meant to be construed together with, a portion of a rule pertaining to involuntary dismissal?" | Pretrial Procedure - Memo # 1166 - C - BP.docx | LEGALEASE-00019377-LEGALEASE-00019378 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 9308 | Baldwin v. Klanke, 877 S.W.2d 879 | 307A+501 | The granting of a non-suit is merely ministerial; a plaintiff's right to a non-suit of its own action exists at the moment a motion is filed or an oral motion is made in open court. Shadowbrook Apartments v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). A plaintiff may take a non-suit any time during the trial until it introduces all of its evidence, other than rebuttal evidence. O'Brien v. Stanzel, 603 S.W.2d 826, 828 (Tex.1980); Tex.R.Civ.P. 162. A plaintiff's right to take a non-suit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990); Strawder v. Thomas, 846 S.W.2d 51, 59 (Tex.App."Corpus Christi 1992, no writ); Baca v. Hoover, Bax & Shearer, 823 S.W.2d 734, 737 (Tex.App."Houston [14th Dist.] 1992, writ denied). | Granting of nonsuit is merely ministerial; plaintiff's right to nonsuit of its own action exists at moment motion is filed or oral motion is made in open court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a plaintiff's right to nonsuit of its own action exist at the moment that an action is filed? | 026195.docx | LEGALEASE-00129220-LEGALEASE-00129221 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9309 | Redfield v. United States, 27 Ct. Cl. 473 | 307A+501 | A suit brought without authority may be dismissed on motion of the plaintiff in person or on motion of defendants, because a judgment recovered in such suit would not be binding on the parties. But a suit brought with authority of the plaintiff must stand until tried on the issue raised or until dismissed in legal manner. The plaintiff himself can not dismiss his own suit until he has discharged his attorney with permission of the court, and when he has wrongfully brought several actions for the same cause he cannot elect which one he will prosecute. | The claimant himself can not dismiss his own suit until he has discharged his attorney with permission of the court; and when he has wrongfully brought several actions for the same cause, he can not elect which one he will prosecute. | Can the claimant himself dismiss his own suit until he has discharged his attorney with permission of the court? | 026215.docx | LEGALEASE-00129319-LEGALEASE-00129320 | Order, SA, Sub | 0.58 | 1 | 0 | 1 | 1 | 1 |
| 9310 | Koll v. Stanton-Pilger Drainage Dist., 207 Neb. 425 | 307A+506.1 | Neb.Rev.Stat. s 25-601 (Reissue 1979) provides, in part, that an action may be dismissed without prejudice to a future action by the plaintiffs before the final submission of the case to the jury, or to the court where the trial is by the court. It is well settled in Nebraska that a plaintiff may dismiss his action without prejudice as a matter of right at any time before final submission. It is a statutory right and not a matter of judicial grace or discretion. Gebhart v. Tri-State G. & T. Assn., 181 Neb. 457, 149 N.W.2d 41 (1967); Giesler v. City of Omaha, 175 Neb. 706, 123 N.W.2d 650 (1963). | Plaintiff may dismiss action without prejudice as matter of right at any time before final submission of case. Neb.Rev.St. S 25-601. | "Can a plaintiff, as a matter of right, dismiss his action without prejudice at any time before its final submission?" | 026240.docx | LEGALEASE-00129241-LEGALEASE-00129242 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9311 | Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 | 25T+141 | As to Stewart, the decision is quite straightforward. Under traditional agency theory, she is subject to contractual provisions to which MLPF & S is bound. Barrowclough, 752 F.2d at 938. Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. See, Arnold v. Arnold Corp., 920 F.2d 1269, 1281"82 (6th Cir.1990); Letizia v. Prudential Bache Securities, 802 F.2d 1185, 1187"88 (9th Cir.1986).] | Because principal is bound under terms of valid arbitration clause, its agents, employees, and representatives are also covered. | "When a principal is bound under the terms of a valid arbitration clause in a contract, are its agents, employees and representatives covered under such agreement?" | 007352.docx | LEGALEASE-00130209-LEGALEASE-00130211 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9312 | Kotche v. Cty. Bd. of Winnebago Cty., 87 Ill. App. 3d 1127 | 79+6 | The court found that the actions complained of were within the Board's budgetary and statutory authority. We do not agree. Section 27.3 of the Clerks of Courts Act (Ill.Rev.Stat.1977, ch. 25, par. 27.3) gives the Board the authority to appropriate funds for clerk hire, but does not empower the Board to control the hiring, firing, promotion, or compensation of the deputy clerks hired by the clerk of the circuit court pursuant to statute. (Ill.Rev.Stat.1977, ch. 25, par. 9). We deem it significant that Section 26 of "An Act to revise the law in relation to counties", (Ill.Rev.Stat.1977, ch. 34, par. 432) imposes the duty upon the Board "to provide reasonable and necessary expenses for the use of clerks of courts." (Emphasis added). The wording of the statute indicates that the clerks retain the authority to use the provided funds for the internal operation of their offices and the Board's grant of authority is limited to appropriation of necessary funds. We need not address here the rights of clerks who alleged that they cannot operate their offices on the funds provided, since no such allegation has been made. | Actions of county board in controlling hiring and firing and conditions of employment of employees of clerk of circuit court were not within the board's budgetary and statutory authority. S.H.A. ch. 25, SS 9, 27.3; ch. 34, S 432. | "Are county boards empowered to control the hiring, firing, promotion, or compensation of deputy clerks hired by the circuit court?" | 013386.docx | LEGALEASE-00130193-LEGALEASE-00130194 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9313 | Frear v. Lewis, 201 A.D. 660 | 307A+510 | It is, of course, well settled, as urged by counsel for defendants, that as a general rule a party who has commenced an action may discontinue as of right, and that his reasons for such discontinuance are not ordinarily of concern to the court. Andrewes v. Haas, 214 N. Y. 255, 258, 108 N. E. 423, 3 A. L. R. 458; Matter of Butler, 101 N. Y. 307, 4 N. E. 518; Valentine v. Valentine, 134 App. Div. 664, 119 N. Y. Supp. 426. The right to discontinue is, however, not absolute. It is necessary to obtain the consent and order of the court permitting the discontinuance, and the court has control over litigations on its calendar sufficient to prevent the consummation of any scheme that, under guise of settlement, will operate to cheat one of its officers out of his compensation for faithful service. Under such circumstances, it has been said the court "may properly withhold its aid from those who seek by furtive means to perpetrate a wrong under the cover of a compromise."National Exhibition Co. v. Crane, 167 N. Y. 505, 509, 60 N. E. 768, 769. | Though as a general rule the party commencing an action may discontinue as of right, regardless of his reasons therefor, the right to discontinue is not absolute; but it is necessary to obtain the consent and order of the court permitting a discontinuance, and the court can prevent the consummation of a scheme to defraud by means of such discontinuance. | Is the right to discontinue absolute and it is necessary to obtain the consent and order of the court permitting a discontinuance? | 026100.docx | LEGALEASE-00130127-LEGALEASE-00130128 | Order, SA, Sub | 0.66 | 1 | 0 | 1 | 1 | 1 |
| 9314 | State ex rel. Oklahoma Bar Ass'n v. Busch, 1998 OK 103 | 307A+747.1 | Pretrial order is a procedural tool that serves to ensure (a) the economical and efficient conduct of trial in every case and (b) the expeditious resolution of the merits without ambush or surprise. A well-crafted pretrial order makes specific the legal theories on which each party is proceeding and crystallizes the issues to be tried. The breach of rules for presenting testimonial and documentary evidence without some tenable legal ground brings about expected consequences that are not offensive to due process. A party's failure timely to submit a witness's name or an item of documentary evidence before the PRT deadline may result in the exclusion of omitted proof. The burden rests upon the adversely affected party to show a tenable legal ground for the party's inability earlier to identify the documentary and testimonial evidence intended to be offered in the hearings. | A well-crafted pretrial order makes specific the legal theories on which each party is proceeding and crystallizes the issues to be tried. | Does a well-crafted pretrial order make specific the legal theories on which each party is proceeding? | 026574.docx | LEGALEASE-00129942-LEGALEASE-00129943 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9315 | Nantahala Power & Light Co. v. Whiting Mfg. Co., 209 N.C. 560 | 307A+517.1 | At common law, a voluntary nonsuit was an abandonment of the cause by a plaintiff, who allowed judgment for costs to be entered against him by absenting himself or failing to answer when called upon to hear the verdict. 18 C.J. 1146; McKesson v. Mendenhall, 64 N.C. 502. It is a well-settled rule of procedure in this jurisdiction that a nonsuit may be taken at any time before verdict. McIntosh Prac. and Proc., " 628. And this right continues even after the jury has attempted to render a verdict, with some, but not all, of the issues answered, where the verdict is not accepted by the court and the jury is sent back with instructions to respond to the unanswered issues. Southern Cotton Oil Co. v. Shore, 171 N.C. 51, 52, 87 S.E. 938; Cahoon v. Brinkley, 168 N.C. 257, 84 S.E. 263. | At common law, a voluntary nonsuit was an abandonment of the cause by plaintiff, who allowed judgment for costs to be entered against him by absenting himself or failing to answer when called upon to hear the verdict. | "What is referred to as a ""voluntary nonsuit"" under the law?" | 026588.docx | LEGALEASE-00129897-LEGALEASE-00129898 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9316 | White v. Nance, 16 Ala. 345 | 307A+501 | If the suit had been dismissed, the defendant would have recovered cost, and the only effect of the judgment rendered on the verdict is, that it entitles the defendant to his cost. It is true, a suit at law may be carried on by one who is beneficially entitled to the money, in the name of him in whom is vested the legal title. Brazier v. Tarver, 4 Ala. 569--and a court of law will protect the rights of him beneficially interested, and will not permit the plaintiff to dismiss the suit, if the party entitled to the proceeds of the recovery will indemnify him against the cost to which he may be subjected. But the suits that may be thus prosecuted are those brought to recover a sum of money, and perhaps for a specific chattel, where the title is in one, but the beneficial interest is in another. In ejectment or trespass, to try title to land, we can look alone to the legal title, and no person can control the suit, except the plaintiff, even if another has an equitable interest in it. The plaintiff in this case had the right to control the suit as he saw proper. | The plaintiff in an action of ejectment or trespass to try the title may dismiss the suit whenever he thinks proper, and the fact that the beneficial interest in such suit is in another cannot affect his right to do so. | Can the plaintiff in an action of ejectment or trespass to try the title dismiss the suit whenever he thinks proper? | 026611.docx | LEGALEASE-00130028-LEGALEASE-00130029 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9317 | TC/Am. Monorail v. Custom Conveyor Corp., 822 N.W.2d 812 | 30+3208 | Custom Conveyor next challenges the district court's denial of its motion for commissions or letters rogatory to depose out-of-state witnesses who were unavailable for trial. The district court denied the request because it was made after the deadline for discovery in the court's scheduling order. District courts have "considerable discretion in granting or denying discovery requests." Erickson v. MacArthur, 414 N.W.2d 406, 407 (Minn.1987). "Absent a clear abuse of discretion, a [district] court's decision regarding discovery will not be disturbed." Id. Similarly, "[t]he district court has broad discretion to amend scheduling-order deadlines, and we review its decision for an abuse of discretion."Mercer v. Andersen, 715 N.W.2d 114, 123 (Minn.App.2006). | The district court has broad discretion to amend scheduling-order deadlines, and appellate court reviews its decision for an abuse of discretion. | "Does a district court have broad discretion to amend scheduling-order deadlines, and appellate courts review its decision for an abuse of discretion?" | 026687.docx | LEGALEASE-00129970-LEGALEASE-00129971 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9318 | Schowalter v. Washington Mut. Bank, 275 Ga. App. 182 | 307A+742.1 | To analyze this contention, we start with the premise that "[a] claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order." (Punctuation omitted.) Williams v. Safeway Ins. Co. The rationale is that the purpose of the pretrial order "is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the action is thereby narrowed to expedite the proceeding." (Punctuation omitted.) Id. Where a court excludes claims due to their omission from the pretrial order, we will reverse that ruling only if the trial court abused its discretion. Jamal v. Hussein. | Purpose of the pretrial order is to determine which of the claims pleaded will actually be tried; claims, issues, and evidence are limited by the order, and the course of the action is thereby narrowed to expedite the proceeding. | What is the purpose and course of action of a pre-trial order? | 026742.docx | LEGALEASE-00130255-LEGALEASE-00130256 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 9319 | Gunter v. Mersereau, 7 Or. App. 470 | 413+1 | Exclusion of domestic servants is common in compensation acts. The motivating philosophy behind workmen's compensation acts is that the loss arising from accidents in industry should be distributed between the employer and consumer as a cost of production. The domestic servant exception recognizes that the home owner, who receives no pecuniary profit from maintaining his home, should not be made to bear what would amount to the total burden of compensation protection. 1A Larson, Workmen's Compensation Law 891, s 50.25. See generally, ss 50.21-50.24. Weatherford v. Arter, 135 W.Va. 391, 395, 63 S.E.2d 572, 574 (1951). Convenience in administration of the Act has also been cited as a factor. See Carsten v. Dept. of Labor & Industries, 172 Wash. 51, 19 P.2d 133 (1933). Claimant's employment in defendant's home would seem to come within the general intent of the statutory exception | Motivating philosophy behind workmen's compensation acts is that loss arising from accidents in industry should be distributed between employer and consumer as cost of production. ORS 656.001 et seq. | What is the motivating philosophy behind workmens compensation acts? | 047833.docx | LEGALEASE-00130152-LEGALEASE-00130153 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9320 | Inetianbor v. CashCall, 768 F.3d 1346 | 25T+137 | Mr. Inetianbor's arbitration agreement is quite different. It evidences an intent to have a specific type of arbitration in a particular arbitral forum. The parties to the agreement we consider here have exercised their right to "structure their arbitration agreements as they see fit," by way of "choos[ing] who will resolve specific disputes" between them. See Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 683, 130 S.Ct. 1758, 1774, 176 L.Ed.2d 605 (2010) (quotation marks omitted)."It falls on courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." Id. at 684, 130 S.Ct. at 1774"75; see also Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1214 (11th Cir.2011) ("Even though there is a presumption in favor of arbitration, the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." (quotation and alteration marks omitted)). As a result, the only way to enforce the arbitration agreement "in accordance with the terms of the agreement," 9 U.S.C. " 4, is to compel arbitration before an authorized representative of the Tribe, as the integral forum selection provision requires. | It falls on courts and arbitrators to give effect to contractual limitations, in arbitration agreements, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties. 9 U.S.C.A. S 4. | Do courts and arbitrators give effect to contractual limitations? | 007423.docx | LEGALEASE-00131384-LEGALEASE-00131385 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9321 | United States v. Alfisi, 308 F.3d 144 | 63+1(1) | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be "a specific intent to give ... something of value in exchange for an official act." Sun-Diamond Growers, 526 U.S. at 404-05, 119 S.Ct. 1402 (emphasis in original). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. See United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The element of a quid pro quo or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment be a reward for a past official act or made in the hope of obtaining general good will in the payee's performance of official acts off in the future. See Sun-Diamond Growers, 526 U.S. at 405, 119 S.Ct. 1402; Biaggi, 909 F.2d at 684-85; Myers, 692 F.2d at 841. | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be a specific intent to give something of value in exchange for an official act. 18 U.S.C.A. S 201(b)(1)(A). | Does the briber statute require specific intent? | 011097.docx | LEGALEASE-00130543-LEGALEASE-00130545 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9322 | Hardwick v. State, 16 So. 3d 1045 | 67+12 | The state did not put on any evidence of forced entry, but only evidence that Hardwick carried wire cutters in order to cut copper tubing and electrical wiring inside a house under construction for the purpose of stealing it. The offense of possession of burglary tools requires proof that the defendant used or intended to use the tools in the course of unlawfully entering the premises of another, which is not satisfied by proof that the defendant intended to use the tools to commit an offense after entering the premises. See Calliar v. State, 760 So.2d 885 (Fla.1999) (quashing the conviction for possession of burglary tools because the evidence showed that the defendant entered through an open gate, and thus the state proved only that he possessed the tools with the intent to commit a theft inside and not that he intended to use the tools to get onto the premises). Accord Burke v. State, 672 So.2d 829 (Fla. 1st DCA 1995). | A conviction for possession of burglary tools requires proof that the defendant used or intended to use the tools in the course of unlawfully entering the premises of another, which is not satisfied by proof that the defendant intended to use the tools to commit an offense after entering the premises. | Does the crime of possession of burglary tools require intent to use them? | 013272.docx | LEGALEASE-00131337-LEGALEASE-00131338 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9323 | Hobby v. State, 480 S.W.2d 554 | 67+7 | Burglary is an offense against the possession rather than against the legal title or the possessor. The specific ownership of a building is not an essential element and title, as far as the law of burglary is concerned, follows the possession and possession constitutes sufficient ownership as against the burglar. Hindman v. State, 215 Tenn. 127, 384 S.W.2d 18; Anderson v. State, Tenn.Crim.App., 455 S.W.2d 630; Taylor v. State, Tenn.Crim.App., 455 S.W.2d 168. This assignment is overruled. | Specific ownership of building is not an essential element which needs to be proved in prosecution for burglary; title, as far as law of burglary is concerned, follows possession and possession constitutes sufficient ownership as against burglar. | Is specific ownership of the building involved an essential element of burglary? | Burglary - Memo 86 - JK.docx | ROSS-003287463-ROSS-003287464 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 9324 | Crawford Cty. v. Wisconsin Employment Relations Comm'n, 177 Wis. 2d 66 | 330+2.5 | As in Iowa County, the express powers of the register of deeds and the clerk of courts to appoint and discharge deputies are separate from those of the county. No authority is granted to the county to influence the appointment decision [in these instances]. In entering into a collective bargaining agreement, the county as a municipal employer may limit its own power with respect to [these deputy positions], but it could not put restrictions on the[ir] hiring ... because it was not within its power to begin with.... If [the union] were to prevail here, the [clerk of court's and register of deeds'] power to appoint [deputies] would be transferred to the county, a result totally in conflict with the statute[s]. Iowa County, 166 Wis.2d at 620"21, 480 N.W.2d at 502. | Express powers of register of deeds and clerk of circuit court to appoint and discharge deputies are separate from those of county. W.S.A. 59.38(1), 59.50. | Are the powers of the register of deeds and the clerk of the circuit court to appoint and discharge clerks separate from those of the county? | 013525.docx | LEGALEASE-00131254-LEGALEASE-00131255 | Order, SA, Sub | 0.8 | 1 | 0 | 1 | 1 | 1 |
| 9325 | Farmer v. Ben E. Keith Co., 886 S.W.2d 492 | 307A+501 | To be final and appealable, a summary judgment must dispose of all issues and parties in the lawsuit. Teer v. Duddlesten, 664 S.W.2d 702, 703 (Tex.1984). If the summary judgment does not dispose of all issues it is interlocutory, and an appellant can not properly appeal from it. A motion for dismissal ends the litigation by disposing of all outstanding issues and parties in the case. Greenberg v. Brookshire, 640 S.W.2d 870, 871"72 (Tex.1982). Abandonment of a cause of action serves the same result. See Tex.R.Civ.P. 162.2 A plaintiff has an absolute right to end the lawsuit unless the defendant has a claim for affirmative relief pending at the time the motion is filed. BHP Petroleum Co., Inc. v. Millard, 800 S.W.2d 838, 841 (Tex.1990); Progressive Ins. Companies v. Hartman, 788 S.W.2d 424, 427 (Tex.App."Dallas 1990, no writ); Tex.R.Civ.P. 162. The right to abandon an action exists at the moment the pleading is filed, and any granting of the abandonment, or dismissal, by the trial judge is merely ministerial. Shadowbrook Apartments v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Greenberg, 640 S.W.2d at 872. | Plaintiff's right to abandon action exists at moment pleading seeking to abandon action is filed and any granting of abandonment or dismissal by trial court is merely ministerial. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a plaintiffs right to abandon an action exist at the moment a pleading seeking to abandon the action is filed? | 026082.docx | LEGALEASE-00130925-LEGALEASE-00130926 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9326 | Mission Mun. Hosp. v. Bryant, 563 S.W.2d 293 | 307A+742.1 | The purpose of a pre-trial hearing is to aid the trialcourt in narrowing the issues and in disposing of other matters which may aid in the final disposition of the action. The trialcourt may, in a pre-trial conference, among other things, consider all dilatory pleas and all motions and exceptions relating to a suit pending; the necessity or desirability of amendments to the pleadings; the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof; and such other matters as may aid in the disposition of the action. "The court shall make an order which recites the action taken at the pre-trial conference, the amendments allowed to the pleadings, the time within which same may be filed, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice". Rule 166, T.R.C.P. Such an order was not made in the instant case. | The purpose of a pretrial hearing is to aid the trial court in narrowing the issues and in disposing of other matters which may aid in the final disposition of the action; in a pretrial conference, the trial court may consider all dilatory pleas and all motions and exceptions relating to a suit pending, the necessity or desirability of amendments to the pleadings, the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof and such other matters as may aid in disposition of the action. Rules of Civil Procedure, rule 166. | What is the purpose of a pretrial hearing and what may a trial court consider to aid in disposition of the action? | 026458.docx | LEGALEASE-00131141-LEGALEASE-00131142 | Order, SA, Sub | 0.49 | 1 | 0 | 1 | 1 | 1 |
| 9327 | Naughton v. Bankier, 114 Md. App. 641 | 307A+747.1 | Montgomery County has implemented the use of administrative schedulingorders pursuant to Maryland Rule 2-504. The purpose of the rule is two-fold: to maximize judicial efficiency and minimize judicial inefficiency. Though such orders are generally not unyieldingly rigid as extraordinary circumstances which warrant modification do occur, they serve to light the way down the corridors which pending cases will proceed. Indeed, while absolute compliance with scheduling orders is not always feasible from a practical standpoint, we think it quite reasonable for Maryland courts to demand at least substantial compliance, or, at the barest minimum, a good faith and earnest effort toward compliance. See Betz v. State, 99 Md.App. 60, 635 A.2d 77 (1994). | Purpose of rule governing administrative scheduling orders is to maximize judicial efficiency and minimize judicial inefficiency. Md.Rule 2-504. | Is the purpose of a rule governing administrative scheduling orders to maximize judicial efficiency and minimize judicial inefficiency? | Pretrial Procedure - Memo # 1456 - C - PC.docx | ROSS-003286175-ROSS-003286176 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 9328 | All. for Metro. Stability v. Metro. Council, 671 N.W.2d 905 | 307A+717.1 | A district court's decision to deny a motion for a continuance to conduct discovery is reviewed under an abuse-of-discretion standard. Cherne Contracting Corp. v. Wausau Ins. Cos., 572 N.W.2d 339, 346 (Minn. App.1997), review denied (Minn. Feb. 19, 1998). A transcript was not provided; therefore review is limited to whether the findings support the district court's conclusions of law. Bormann v. Bormann, 644 N.W.2d 478, 481 (Minn. App.2002). Generally, continuances should be liberally granted, particularly if the party seeking a continuance had insufficient time to complete discovery. Rice v. Perl, 320 N.W.2d 407, 412 (Minn.1982). In deciding whether such a continuance should be granted, the district court must address two issues: (1) whether the plaintiff has been diligent in obtaining or seeking discovery prior to its rule 56.06 motion, and (2) whether the plaintiff is seeking further discovery in the good faith belief that material facts will be uncovered or merely engaging in a fishing expedition. Id. | Generally, continuances should be liberally granted, particularly if the party seeking a continuance had insufficient time to complete discovery. | "Should continuances be liberally granted, particularly if the party seeking a continuance had insufficient time to complete discovery?" | Pretrial Procedure - Memo # 1669 - C - SHS.docx | ROSS-003287185-ROSS-003287187 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9329 | In re Advanced Powder Sols., 496 S.W.3d 838 | 307A+331 | A person has a duty to preserve evidence "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." Wal"Mart Stores, 106 S.W.3d at 722 (citing Nat'l Tank Co. v. Brotherton, 851 S.W.2d 193, 204 (Tex.1993)). A "substantial chance" of litigation "does not [mean] any particular statistical probability that litigation will occur; rather, it simply means that litigation is more than merely an abstract possibility or unwarranted fear." Nat'l Tank Co., 851 S.W.2d at 204 (citation and internal quotation marks omitted). When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises. Wal"Mart Stores, 106 S.W.3d at 722 (citing Nat'l Tank Co., 851 S.W.2d at 204). | A person has a duty to preserve evidence only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim. | Is a defendant under a duty to preserve evidence which it knows or reasonably should know is relevant to the action? | Pretrial Procedure - Memo # 1692 - C - BP.docx | LEGALEASE-00020666-LEGALEASE-00020667 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 9330 | Wenrich v. Employers Mut. Ins. Companies, 35 Kan. App. 2d 582 | 307A+749.1 | As the Wenrichs properly state, a pretrial order has the full force of other orders entered by the court and controls the subsequent course of litigation unless modified to prevent manifest injustice. See K.S.A. 60-216(e); Sampson v. Hunt, 233 Kan. 572, 578, 665 P.2d 743 (1983). In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. Sieben v. Sieben, 231 Kan. 372, 377, 646 P.2d 1036 (1982). | A pretrial order has the full force of other orders entered by the court and controls the subsequent course of litigation unless modified to prevent manifest injustice. K.S.A. 60-216(e). | Does a pretrial order have full force of other orders entered by the court? | Pretrial Procedure - Memo # 1716 - C - MS.docx | ROSS-003287723-ROSS-003287724 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 9331 | Segers v. State, 283 Ala. 694 | 110+596(1) | The testimony of the absent witness was cumulative to that of the other two confessed participants in the robbery that appellant was not present. There was no abuse of discretion and the trial court did not err in denying the motion for continuance. | Denial of motion for continuance on ground that one of admitted participants in robbery was not present and he would testify that defendant did not participate in robbery was not abuse of discretion where testimony of this absent witness was cumulative to that of two other confessed participants in robbery that defendant was not present. | Is it an abuse of discretion to deny a continuance when an absent witness' testimony would be merely cumulative? | 026904.docx | LEGALEASE-00130569-LEGALEASE-00130570 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 9332 | Hibbert v. Ransdell, 26 P.3d 721 | 307A+749.1 | We see no abuse of discretion by the trial court in denying the motion. As defendant pointed out to the trial court, the pretrial order did not include an issue on failure of informed consent. Further, the case had been tried largely on the issue of negligence, and the informed consent issue was not raised until the trial was nearly over and after defendant had already testified. In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | Should a pretrial order supersede pleadings and control the future course of the action? | Pretrial Procedure - Memo # 1763 - C - PC.docx | ROSS-003301436-ROSS-003301437 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 9333 | Cockrell v. Garton, 244 Neb. 359 | 307A+750 | Most cases concern themselves with the extent to which pretrial orders control the issues to be litigated. We have on numerous occasions affirmed the limiting of the issues at trial to those specified in the pretrial order and limiting the admission of evidence to the issues thus established. E.g., Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986); Olson v. England, 206 Neb. 256, 292 N.W.2d 48 (1980); Western Pipe & Supply, Inc. v. Heart Mountain Oil Co., Inc., 179 Neb. 858, 140 N.W.2d 813 (1966); Tober v. Hampton, 178 Neb. 858, 136 N.W.2d 194 (1965), overruled on other grounds, Royal Ind. Co. v. Aetna Cas. & Sur. Co., 193 Neb. 752, 229 N.W.2d 183 (1975); Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N.W.2d 245 (1958). But see Zavoral v. Pacific Intermountain Express, 181 Neb. 40, 146 N.W.2d 796 (1966) (notwithstanding the pretrial order and the plaintiff's failure to move for its vacation and modification, the trial court was obliged to instruct on the issues raised by the pleadings and the evidence, as to do otherwise would do violence to the issues raised by petition). | Issues at trial will generally be limited to those specified in pretrial order and admission of evidence will be limited to issues thus established. | Will issues at trial generally be limited to those specified in pretrial order and will admission of evidence be limited to issues thus established? | 027020.docx | LEGALEASE-00130877-LEGALEASE-00130878 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9334 | Ex parte Goodyear Tire & Rubber Co., 248 S.C. 412 | 307A+331 | The opinion in Easler, after quoting extensively from Lyon v. Manhattan Ry. Co., 142 N.Y. 298, 37 N.E. 113, 25 L.R.A. 402, to the effect that a physical examination of a party necessarily involves "an inquiry, by means of questions and answers, as to the cause, nature, character and extent of the disability. (D)isclosures such as ordinarily occur between patient and physician must necessarily accompany the inspection of the injured parts.", concluded: "The remedy provided by the Code for taking testimony before trial of the parties to the action in behalf of the adverse party is exclusive, and supersedes all remedies existing at the time of its adoption, as hereinbefore stated. There is no statutory provision in this state empowering the court to order the physical examination of such a party." According to the court's view, Easler involved an attempted examination of a party, the right to which was limited by the statute, not extending to a physical examination, and which was proscribed altogether unless pursued in the required manner, which was not done. The inspection of a chattel does not involve the taking of testimony before trial, for which the statute provides an exclusive remedy, nor does it involve questions and answers or verbal disclosures of any kind. The relief sought may not be equated to an examination of a party and it is not being pursued by an action to obtain discovery Under oath. Neither of the statutory proscriptions applies, nor does the statute provide any remedy in this field. It would be contradictory, and against the spirit and purpose of the statute, to hold that relief must be denied because the statutory remedy, which does not reach the case, has superseded the equitable remedy. | Inspection of a chattel does not involve the taking of testimony before trial, for which the statute allowing for discovery provides an exclusive remedy, nor does it involve questions and answers or verbal disclosures of any kind, and therefore discovery statute does not provide any remedy to obtain the inspection of a chattel. Code 1962, S 26-501. | Does an inspection of a chattel involve the taking of testimony before trial? | Pretrial Procedure - Memo # 2028 - C - SKG.docx | ROSS-003287855-ROSS-003287856 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9335 | Forman v. Fina Oil & Chem. Co., 858 S.W.2d 498 | 307A+717.1 | Plaintiff's motion for continuance was made on the ground of want of testimony. TEX.R.CIV.P. 252 states the requirements for requesting a continuance on the ground of want of testimony. Plaintiff's motion for continuance was in substantial compliance with Rule 252. However, mere compliance with Rule 252 does not guarantee that a continuance will be granted. The court in Fritsch v. J.M. English Truck Line, 151 Tex. 168, 246 S.W.2d 856, 858 (1952), stated: "There is nothing in the rules on continuance requiring the granting of a first motion [for continuance] merely because it is in statutory form." | Mere compliance with rule governing motion for continuance on ground of want of testimony does not guarantee that continuance will be granted. Vernon's Ann.Texas Rules Civ.Proc., Rule 252. | Does a mere compliance with the rule governing motion for continuance on the ground of want of testimony guarantee that a continuance will be granted? | 027383.docx | LEGALEASE-00130881-LEGALEASE-00130882 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9336 | Cotler v. Retail Credit Co., 18 A.D.2d 898 | 307A+93 | Order entered on December 11, 1962, granting reargument and upon such reargument denying motion for discovery and inspection in order to frame a complaint grounded on libel unanimously affirmed, on the law, the facts and in the exercise of discretion, with $20 costs and disbursements to defendant-respondent. plaintiffs have submitted their own affidavit reciting certain information allegedly furnished them by some unidentified member of their corporate insurance broker concerning the supposed contents of a confidential report furnished life insurance companies by defendant, which is an investigating and reporting agency. "A plaintiff seeking an examination of a defendant to frame a complaint must show his case has merit" (Kenerson v. Davis, 278 App.Div. 482, 485, 105 N.Y.S.2d 973, 976); and the affidavit of plaintiffs, unsupported by affidavits of other persons having information of the contents of the report, falls short of constituting such a showing. Plaintiffs may not secure an examination or discovery in order first to explore the feasibility of framing a complaint. It may be that plaintiffs can present under oath "facts which will fairly indicate some cause of action against the adverse party" (Stewart v. Socony Vacuum Oil Co., 3 A.D.2d 582, 583, 163 N.Y.S.2d 22, 24). This determination is therefore without prejudice to a renewal of the motion in the event plaintiffs can make a credible showing that they have suffered actionable wrong at the hands of defendant. | Plaintiffs may not secure an examination or discovery in order first to explore feasibility of framing a complaint. | Can plaintiffs secure an examination or discovery in order first to explore the feasibility of framing a complaint? | 027397.docx | LEGALEASE-00131122-LEGALEASE-00131124 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 9337 | Davis v. Osinuga, 330 Ga. App. 278 | 307A+717.1 | Under Georgia law, an application for a continuance based upon the absence of a witness shall set forth eight different requirements, including that "the applicant expects he will be able to procure the testimony of the witness at the next term of the court."OCGA " 9"10"160(6).4 This statute applies to expert witnesses as well as to fact witnesses. Carter v. Murphey, 241 Ga.App. 340, 342"344(1), 526 S.E.2d 149 (1999). "Where any one of [OCGA " 9"10"160's] requirements is not met, there is no abuse of the trial court's discretion to deny a continuance." (Citation omitted.) Tucker v. Signature Flight Support"Savannah, Inc., 219 Ga.App. 834, 835, 466 S.E.2d 694 (1996). Given that the Eldredges could not represent to the trial court that they could have Dr. Thrasher available to testify at the next term of court, the record shows that the Eldredges failed to meet the requirements of OCGA " 9"10"160. | Where any one of requirements of statute governing applications for continuances upon the ground of the absence of a witness is not met, there is no abuse of the trial court's discretion to deny a continuance. West's Ga.Code Ann. S 9-10-160. | "Where any one of requirements of statute governing applications for continuances, is not met, is there an abuse of the trial court's discretion to deny a continuance?" | 027505.docx | LEGALEASE-00130652-LEGALEASE-00130653 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 9338 | Siegel v. Kepa Homes Corp., 2000 Mass. App. Div. 170 | 363+17(1) | A pretrial conference report is designed to "define, simplify and limit the issues to be decided, reduce error, prevent surprise, promote judicial economy and encourage settlement." Slade v. Slade, 43 Mass.App.Ct. 376, 378, 682 N.E.2d 1385 (1997). The pretrial report narrows and simplifies issues for trial primarily through admissions or stipulations by counsel. Mitchell v. Walton Lunch Co., 305 Mass. 76, 80, 25 N.E.2d 151 (1939). It has long been settled in this Commonwealth, even prior to the promulgation of Mass. R. Civ. P. 16 which now governs pretrial reports, that trial should be confined to the issues disclosed in a pretrial report, and that the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Slade v. Slade, supra at 376, n. 13, 682 N.E.2d 1385. See Whitcomb v. Hearst Corp., 329 Mass. 193, 201, 107 N.E.2d 295 (1952); Lynch v. Kaufman, 329 Mass. 762, 105 N.E.2d 848 (1952); Donnelly v. Larkin, 327 Mass. 287, 295, 98 N.E.2d 280 (1951); DeLuca v. Cleary, 47 Mass.App.Ct. 50, 52, 710 N.E.2d 1027 (1999); Norton v. Vaughan, 13 Mass.App.Ct. 1075, 1076, 435 N.E.2d 634 (1982). The obvious rationale for the rule is the elimination of what resulted in this case; namely, unfair surprise to the court and opposing party by raising an issue for the first time mid-trial.2 The defendant did not argue in the trial court or before this Division that the stipulation should be vacated as "improvident or not conducive to justice." See Atlantic Pipe Corp. v. R.J. Longo Const. Co., 35 Mass.App.Ct. 459, 464"465, 622 N.E.2d 279 (1993). The stipulation that Kepa Homes built the plaintiffs' house thus remained binding, and the defendant cannot now disclaim its responsibility by suggesting that the wrong party was sued. | Trial should be confined to the issues disclosed in a pretrial report, and the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Rules Civ.Proc., Rule 16, 43A M.G.L.A. | Are the admissions or stipulations of counsel in pretrial conferences and memoranda binding on the parties? | Pretrial Procedure - Memo # 2178 - C - AP.docx | LEGALEASE-00021030-LEGALEASE-00021031 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 9339 | Linton v. Jones, 462 S.W.2d 636 | 30+3239 | It is a well settled rule that the matter of granting or refusing a continuance is generally addressed to the sound discretion of the trial court, and the order of the trial court will not be disturbed on appeal unless there was an abuse of discretion. Rules 251, 252, Texas Rules of Civil Procedure; Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963); Foster v. Texas Department of Public Safety, 443 S.W.2d 66 (Tex.Civ.App., San Antonio, 1969, n.w.h.). | Matter of granting or refusing a continuance is generally addressed to sound discretion of trial court, and an order of the trial court will not be disturbed on appeal unless there was an abuse of discretion. Rules of Civil Procedure, rules 251, 252. | Will an order granting or refusing the motion be disturbed on appeal? | Pretrial Procedure - Memo # 2186 - C - AP.docx | ROSS-003301397-ROSS-003301398 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9340 | City & Cty. of San Francisco v. Flying Dutchman Park, 122 Cal. App. 4th 74 | 371+2001 | No other method of taxing property per se is allowed in this state, other than the prescribed constitutional method. (Flynn v. San Francisco, supra, 18 Cal.2d 210, 115 P.2d 3; City of Oakland v. Digre, supra, 205 Cal.App.3d at p. 104, 252 Cal.Rptr. 99.) However, an important distinction is made between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property. It has long been recognized that a tax on the separate use of the property, known as an excise tax, is permissible, and does not constitute double taxation. (City of Berkeley v. Cukierman (1993) 14 Cal.App.4th 1331, 18 Cal.Rptr.2d 478.) "The mere fact that the state (or local authority) imposes one excise tax upon one activity does not prevent the state or local authority from imposing another excise tax upon the same privilege for the same period. (Fox etc. Corp. v. City of Bakersfield (1950) 36 Cal.2d 136, 140 [222 P.2d 879 [citation.) To put it another way, the constitutional prohibition against double taxation applies only to ad valorem property taxes, and property tax and excise tax can be imposed simultaneously. (Pesola v. City of Los Angeles (1975) 54 Cal.App.3d 479, [126 Cal.Rptr. 580 [citation.)" (City of Berkeley v. Cukierman, supra, 14 Cal.App.4th at pp. 1340-1341, 18 Cal. 478.). | A distinction is made between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property; a tax on the separate use of the property, known as an "excise tax," is permissible, and does not constitute double taxation. West's Ann.Cal. Const. Art. 13, S 1. | "Is there a distinction between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property?" | Taxation - Memo # 184 - C - SS.docx | ROSS-003286806-ROSS-003286807 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9341 | In re George, 361 F.3d 1157 | 371+2001 | A final award that is "the subject of a demand on the [Trust] Fund ... shall constitute a liquidated claim for damages against an employer." The terminology the state uses to define the money does not control the federal-bankruptcy-law question of whether the debt is discharged by bankruptcy. In United States v. Reorganized CF & I Fabricators of Utah, Inc., the Supreme Court held that even a federal statutory denotation of the amount as a "tax" did not make it a tax for bankruptcy discharge purposes. Federal courts apply a "functional examination" to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else. "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government," as distinguished from a penalty, which is "an exaction imposed by statute as punishment for an unlawful act." Even though the money in Reorganized CF & I Fabricators would go to the United States Treasury and was termed a"tax" in the federal statute imposing the obligation, it was not a "tax," and thus not an "excise tax," because it was in substance a 100% penalty on pension plan funding deficiencies. Reorganized CF & I Fabricators does not really give us an answer for this case, because the amount the Georges owe the Trust Fund is not so obviously penal. | "Tax" is a pecuniary burden laid upon individuals or property for the purpose of supporting the government, as distinguished from a "penalty," which is an exaction imposed by statute as punishment for an unlawful act. | How is a tax distinguished from a penalty? | 044760.docx | LEGALEASE-00130970-LEGALEASE-00130971 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9342 | In re S.W. Bach & Co., 425 B.R. 78 | 25T+143 | In JLM Industries, Inc. v. Stolt"Nielsen SA, 387 F.3d 163, 172 (2d Cir.2004), the Second Circuit held that a clause submitting to arbitration "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" was a broad form of clause. (Internal citations omitted). Similarly, in Mehler v. The Terminix International Co. L.P., 205 F.3d 44, 49 (2d Cir.2000), the Second Circuit determined that a clause referring to arbitration "any controversy or claim between [the parties] arising out of or relating to" an agreement was broad and justified a presumption of arbitrability. Still, "even with a broad form clause, if the claims present no questions in respect of the parties' rights and obligations under [the agreements], they are outside the purview of the arbitration clause and are not arbitrable." Bethlehem Steel, 390 B.R. at 790 (internal quotation marks and citation omitted). | Even with a broad form contractual arbitration clause, if claims present no questions in respect of parties' rights and obligations under contract, then they are outside purview of arbitration clause and are nonarbitrable. 9 U.S.C.A. S 1 et seq. | Can claims be arbitrable if they do not present questions in respect to the rights and obligations under the agreement? | 007460.docx | LEGALEASE-00132379-LEGALEASE-00132380 | Order, SA, Sub | 0.73 | 1 | 0 | 1 | 1 | 1 |
| 9343 | McDonough v. Stackley, 245 F. Supp. 3d 1 | 34+5(8) | The Secretary of the Navy is authorized to modify military records "when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. " 1552. The Navy carries out this function through the Board, which rules on petitions to correct military records. 32 C.F.R. " 723.1. A district court may review the decision of a military board of correction using "familiar principles of administrative law." Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989); see also Piersall v. Winter, 435 F.3d 319, 323-24 (D.C. Cir. 2006) (discussing the "well-settled rule that the decisions of boards for correction of military records are subject to review under the APA"). The court's role is limited: it must "determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." Kreis, 866 F.2d at 1511. | The court's role in reviewing the decision of a military board of correction is limited: it must determine only whether the Secretary's decision making process was deficient, not whether his decision was correct. | "In reviewing decisions of the Secretary of the Navy, should the courts consider whether the Secretary's decision making process was deficient or whether the decision was correct?" | Armed Services - Memo 62 - RK.docx | ROSS-003300761-ROSS-003300762 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 9344 | United States v. Rosario, 558 F. Supp. 2d 723 | 349+25.1 | The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Constitutional protections, including protections against unreasonable searches and seizures, apply to members of the active military just as they do to any other citizen. Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). | Constitutional protections, including protections against unreasonable searches and seizures, apply to members of the active military just as they do to any other citizen. U.S.C.A. Const.Amend. 4. | "Do constitutional protections, including protections against unreasonable searches and seizures, apply to members of the active military?" | 008925.docx | LEGALEASE-00132445-LEGALEASE-00132446 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9345 | United States v. Rendon, 607 F.3d 982 | 34+5(1) | Nonetheless, the Fourth Amendment protects members of the armed services from unreasonable searches and seizures, see Henson, 27 Fed.Cl. at 592"93, albeit with different standards than those that apply in the civilian context. The Supreme Court "has long recognized that the military is, by necessity, a specialized society separate from civilian society." Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Because "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian," Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), reasonable expectations of privacy in the military society will differ from those in the civilian society. Accordingly, "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." Parker, 417 U.S. at 758, 94 S.Ct. 2547; see also United States v. Grisby, 335 F.2d 652, 656 (4th Cir.1964) ("Different standards apply to military personnel, but that is not because the Constitution does not reach military courts but because military personnel are subject to military control and to military law"). | The Fourth Amendment protects members of the armed services from unreasonable searches and seizures, albeit with different standards than those that apply in the civilian context. U.S.C.A. Const.Amend. 4. | "Do constitutional protections, including protections against unreasonable searches and seizures, apply to members of the active military?" | Armed Services - Memo 73 - RK.docx | LEGALEASE-00021368-LEGALEASE-00021369 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9346 | Boone v. United States, 53 Fed. Cl. 731 | 34+5(1) | It is well settled that the "rights and benefits of a member of the military services, including pay and allowances, are defined by statute." Dock v. United States, 46 F.3d 1083, 1086 (Fed.Cir.1995). Accordingly, "common-law rules governing private contracts have no place in the area of military pay." Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). The relevant statutory language thus determines the validity of plaintiff's back pay claim under section 204(a) and section 206(a). The court addresses each statute in turn. | Rights and benefits of a member of the military services, including pay and allowances, are defined by statute, and thus common-law rules governing private contracts have no place in the area of military pay. | Do common-law employment and contract principles apply to military members? | 008927.docx | LEGALEASE-00132449-LEGALEASE-00132450 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 9347 | United States v. Dean, 647 F.2d 779 | 63+10 | We have little doubt that evidence of financial losses in appellant's business would have probative value in establishing a motive for the alleged bribery. Cf. United States v. King, 560 F.2d 122 (2d Cir.), cert. denied, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977) (business losses admitted in securities fraud case); United States v. Houlihan, 332 F.2d 8 (2d Cir.) (mail and wire fraud and interstate transportation of stolen securities), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964). But we think the government must also show some reasonable basis for inferring actual financial losses from the figures shown on the business' tax return. The income tax return summarizes appellant's financial condition over a one-year period of time which may give an arbitrarily limited picture of the financial health of a business. (For example, in this case a corporate loss of $123,474 in 1977 was followed by a profit of $209,672 in 1978.)24 The ability to withstand repeated losses may be a sign of financial strength rather than weakness. Finally, of course, the internal revenue laws may impose accounting rules very different than those normally used to determine the financial health of a corporation. All these factors tend to attenuate the connection between the business tax return and the financial status of appellant. Nevertheless, admission of the tax returns in this case may compel appellant, who is accused of crimes involving submission of false invoices, to put on evidence that he submitted a tax return that did not reflect his actual financial condition. The potential for confusing the jury on matters very prejudicial to appellant is apparent. Moreover, the record indicates that in this case the government could have established without using the tax returns the financial condition of appellant's business, for example, through the corporation's bank records or books. | Although evidence of financial losses in defendant's business would have probative value in establishing his motive for alleged bribery, whether to admit defendant's income tax returns in prosecution under Racketeer Influenced and Corrupt Organizations Act was for trial judge's discretion, considering whether government could establish financial condition without using tax returns, such as through corporation's bank records or books, and whether tax return was an accurate reflection of the business' actual financial condition. 18 U.S.C.A. SS 1962(c), 1963. | Does evidence of financial losses in business have probative value in establishing a motive for an alleged bribery? | Bribery - Memo #107 - C - LB.docx | ROSS-003286656-ROSS-003286657 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 9348 | People v. Wilson, 11 Cal. App. 4th 1483 | 67+6 | We conclude that it is the element of habitation, not the nature of the structure that elevates the crime of burglary to first degree. An "inhabited dwelling house," as referenced in section 460, subd. (a), must be defined as a person's actual place of abode, regardless of the material of which it is built. Applying that conclusion to the instant case, we find that the tent at issue herein, having four sides and a roof and being inhabited by Pray and Parsons and used for sleeping and storage of their possessions, is a dwelling house, for purposes of section 460, subd. (a). | "Inhabited dwelling house," within meaning of statute elevating crime of burglary to first degree when burglary is of "inhabited dwelling house," must be defined as person's actual place of abode, regardless of material of which it is built. West's Ann.Cal.Penal Code S 460(a). | What is an inhabited dwelling in the context of burglary? | Burglary - Memo 69 - RK.docx | LEGALEASE-00021472-LEGALEASE-00021473 | Order, SA, Sub | 0.51 | 1 | 0 | 1 | 1 | 1 |
| 9349 | Monaco v. New York Univ. Med. Ctr., 213 A.D.2d 167 | 302+233.1 | Instead, plaintiff alleges in the complaint that the defendants "should have known" the blood was potentially dangerous which, while it might support a claim of negligence, is inadequate to sustain a cause of action for fraud. While we are cognizant of the fact that leave to amend should be freely granted (CPLR 3025[b]), such leave should be denied where the proposed pleading fails to state a cause of action (Crimmins Contr. Co. v. City of New York, 74 N.Y.2d 166, 170, 544 N.Y.S.2d 580, 542 N.E.2d 1097; Stroock & Stroock & Lavan v. Beltramini, 157 A.D.2d 590, 591, 550 N.Y.S.2d 337). Such is the case herein. | While leave to amend should be freely granted, such leave should be denied where proposed pleading fails to state cause of action. McKinney's CPLR 3025(b). | Will leave to amend be denied where the pleading fails to state a cause of action? | 023210.docx | LEGALEASE-00131785-LEGALEASE-00131786 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 9350 | Arndt v. First Union Nat. Bank, 170 N.C. App. 518 | 307A+331 | "[T]o qualify for the adverse inference, the party requesting it must ordinarily show that the 'spoliator was on notice of the claim or potential claim at the time of the destruction.' " McLain, 137 N.C.App. at 187, 527 S.E.2d at 718 (quotation omitted). The obligation to preserve evidence may arise prior to the filing of a complaint where the opposing party is on notice that litigation is likely to be commenced. Id. (citation omitted). The evidence lost must be " pertinent" and "potentially supportive of plaintiff's allegations." Id. at 188, 527 S.E.2d at 718. Finally, "[t]he proponent of a 'missing document' inference need not offer direct evidence of a coverup to set the stage for the adverse inference. Circumstantial evidence will suffice." Id. at 186, 527 S.E.2d at 718 (citing Blinzler, 81 F.3d at 1159). | The obligation to preserve evidence may arise prior to the filing of a complaint where the opposing party is on notice that litigation is likely to be commenced, and the evidence lost must be pertinent and potentially supportive of plaintiff's allegations. | Does the obligation to preserve evidence arise prior to the filing of a complaint? | Pretrial Procedure - Memo # 1980 - C - SHB.docx | ROSS-003288055-ROSS-003288056 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9351 | Bob Eldridge Const. Co. v. Pioneer Materials, 235 Kan. 599 | 307A+749.1 | Appellant next argues that while the trial court granted the appellee's request to amend the pleadings to include a theory of recovery for quantum meruit, an actual amendmentwas never filed. Pursuant to K.S.A. 60-216, the trial court's pretrial order amends thepleadings and no other document need be filed. This issue is without merit. | Pursuant to statute, trial court's pretrial order amends pleadings, and no other document need be filed to accomplish amendment. Rules Civ.Proc., K.S.A. 60-216. | Will a trial court's pretrial order amend the pleadings and no other document need to be filed? | Pretrial Procedure - Memo # 2196 - C - DA.docx | ROSS-003301615-ROSS-003301616 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 9352 | Aerojet-Gen. Corp. v. Commercial Union Ins. Co., 155 Cal. App. 4th 132 | 307A+517.1 | "In common law, a retraxit was "a voluntary renunciation by plaintiff in open court of his suit and cause thereof, and by it plaintiff forever loses his action." [Citations.] In California, the same effect is now accomplished by a dismissal with prejudice. [Citations.]" (Morris v. Blank (2001) 94 Cal.App.4th 823, 828, 114 Cal.Rptr.2d 672.) The defense of retraxit has been subsumed into the doctrines of res judicata and collateral estoppel. (Id. at pp. 829"832, 114 Cal.Rptr.2d 672.) | Common law retraxit, i.e., a voluntary renunciation by plaintiff in open court of his suit and cause thereof by which plaintiff forever lost his action, is now accomplished by a dismissal with prejudice. | Is common law retraxit now accomplished by a dismissal with prejudice? | Pretrial Procedure - Memo # 2220 - C - KA.docx | ROSS-003286524-ROSS-003286525 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 9353 | Metro. Transit Sys. v. Barnette, 115 Ga. App. 17 | 307A+749.1 | A pre-trial order, limiting the issues for trial, controls the subsequent course of the action unless modified at the trial. Code Ann. s 81-1014. Dumas v. Beasley, 218 Ga. 349, 128 S.E.2d 59. | Pretrial order limiting issues for trial controls subsequent course of action unless modified at trial. Code, S 81-1014. | "Does a pretrial order, limiting issues for trial, controls the subsequent course of action unless modified at trial?" | Pretrial Procedure - Memo # 2238 - C - SKG.docx | ROSS-003288152-ROSS-003288153 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |
| 9354 | Ward v. Theret, 346 S.W.3d 672 | 307A+512 | In Texas, parties have an absolute right to non-suit their own claims for relief at any time during the litigation until they have introduced all evidence other than rebuttal evidence at trial. Tex.R.Civ.P. 162; Villafani v. Trejo, 251 S.W.3d 466, 468"69 (Tex.2008). A non-suit extinguishes a case or controversy from the moment the motion is filed, or an oral motion is made in open court. University of Texas Med. Branch at Galveston v. Estate of Blackmon, 195 S.W.3d 98, 100 (Tex.2006) (per curiam). Courts are limited by the mootness doctrine to deciding only cases in which an actual controversy exists. Lincoln Prop. Co. v. Kondos, 110 S.W.3d 712, 715 (Tex.App.-Dallas 2003, no pet.). Because Ms. Ward's claims against Ms. Theret were extinguished on November 16, 2007, by the notice of non-suit, Ms. Theret's plea to the jurisdiction was rendered moot. See Estate of Blackmon, 195 S.W.3d at 101. Accordingly, there was no plea to the jurisdiction pending at the time the trial court entered its final judgment. See Young v. Villegas, 231 S.W.3d 1, 6 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Issue One is overruled. | A non-suit extinguishes a case or controversy from the moment the motion is filed, or an oral motion is made in open court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a non-suit extinguish a case from the moment the motion is filed or an oral motion is made in open court? | Pretrial Procedure - Memo # 2246 - C - SKG.docx | LEGALEASE-00021783-LEGALEASE-00021784 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9355 | Dye, v. Missouri Dep't of Soc. Servs., 476 S.W.3d 359 | 307A+517.1 | Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court anytime ... [i]n cases tried without a jury, prior to the introduction of evidence at the trial." "A voluntary dismissal is effective on the date it is filed with the court." State ex rel. Frets v. Moore, 291 S.W.3d 805, 812 (Mo.App.S.D.2009) (internal citation omitted). "Consequently, a trial court loses jurisdiction to enter any subsequent orders regarding the dismissed action." Id. "The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity." Id. Thus, the dispositive question presented in this case is whether the Appellants' motion to dismiss was filed "prior to the introduction of evidence at the trial." We conclude that it was not. | A voluntary dismissal is effective on the date it is filed with the court; consequently, a trial court loses jurisdiction to enter any subsequent orders regarding the dismissed action. Mo. Sup. Ct. R. 67.02(a). | Do a trial court loses jurisdiction to enter any subsequent orders regarding the dismissed action? | Pretrial Procedure - Memo # 2339 - C - KG.docx | ROSS-003328471-ROSS-003328472 | Order, SA | 0.74 | 1 | 0 | 0 | 1 | |
| 9356 | Palace Expl. Co. v. Petroleum Dev. Co., 316 F.3d 1110 | 170A+1922 | Palace correctly points out that "[a]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." " Evans v. McDonald's Corp., 936 F.2d 1087, 1090"91 (10th Cir.1991) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure " 1219 at 194 (1990)). Consistent with this general rule is Federal Rule of Civil Procedure 16(e), which provides that a pretrial order controls "the subsequent course of the action unless modified by a subsequent order." Rule 16's purpose, however, is "to avoid surprise, not foment it." Wilson v. Muckala, 303 F.3d 1207, 1216 (10th Cir.2002).Claims raised for the first time in a pretrial order must be very carefully considered, to avoid deprivation of fair notice and to avoid "abuse by those who employ a sporting theory of justice." Id. at 1215. Therefore, we very cautiously examine whether the district court properly excluded evidence relating to Palace's claim for legal damages. | Purpose of rule providing that a pretrial order controls subsequent course of the action unless modified by a subsequent order is to avoid surprise, not foment it. Fed.Rules Civ.Proc.Rule 16, 28 U.S.C.A. | "Does a pretrial order set up contentions of the parties and is deemed to control subsequent course of case, unless modified at or before trial?" | 027804.docx | LEGALEASE-00131713-LEGALEASE-00131714 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |
| 9357 | State ex rel. Hummel v. Sadler, 771 N.E.2d 853 | 307A+517.1 | It is equally true, however, that despite a voluntary dismissal under Civ.R. 41(A)(1), a trial court may consider certain collateral issues not related to the merits of the action. See Cooter & Gell v. Hartmarx Corp. (1990), 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (trial court retains jurisdiction to determine Fed.R.Civ.P. 11 sanctions after the principal suit has been terminated); State ex rel. Corn v. Russo (2001), 90 Ohio St.3d 551, 556, 740 N.E.2d 265 ("court may consider the collateral issue of criminal contempt even after the underlying action is no longer pending"); Grossman v. Mathless & Mathless, C.P.A. (1993), 85 Ohio App.3d 525, 528, 620 N.E.2d 160 (trial court may entertain an R.C. 2323.51 motion to impose sanctions for frivolous conduct even though underlying case has been voluntarily dismissed). | Despite a voluntary dismissal, a trial court may consider certain collateral issues not related to the merits of the action. Rules Civ.Proc., Rule 41(A)(1). | Can trial courts consider collateral issues like criminal contempt and sanctions despite a voluntary dismissal? | 027869.docx | LEGALEASE-00132309-LEGALEASE-00132310 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 9358 | S. Pac. Co. v. Loden, 19 Ariz. App. 460 | 307A+749.1 | In addition, the purpose of the pretrial conference and subsequent pretrial order of the court is to simplify the issues after the parties have completed discovery. Loya v. Fong, 1 Ariz. App. 482, 404 P.2d 826 (1965); Calderon v. Calderon, 9 Ariz.App. 538, 454 P.2d 586 (1969). After a pretrial order is issued, it controls the subsequent course of the litigation, unless modified at trial. The issues are limited by the pretrial order. Loya v. Fong, supra. | After pretrial order is issued, it controls subsequent course of the litigation unless modified at trial, and issues are limited by the pretrial order. | "After a pretrial order is issued, does it control a subsequent course of the litigation unless modified at trial, and issues are limited by the pretrial order?" | Pretrial Procedure - Memo # 2388 - C - KS.docx | ROSS-003300067-ROSS-003300068 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9359 | Sicaras v. City of Hartford, 44 Conn. App. 771 | 307A+517.1 | Withdrawals are analogous to final judgments. "The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by " 52"80, is absolute and unconditional. Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket. Housing Authority of East Hartford v. Hird, 13 Conn.App. 150, 157, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988), quoting Lusas v. St. Patrick's Roman Catholic Church Corporation, 123 Conn. 166, 170, 193 A. 204 (1937)." (Internal quotation marks omitted.) H.G. Bass Associates, Inc. v. Ethan Allen, Inc., 26 Conn.App. 426, 431, 601 A.2d 1040 (1992); see also Baker v. Cordisco, 37 Conn.App. 515, 520, 657 A.2d 230 (1995). | Effect of plaintiff's withdrawal of action, so far as pendency of action is concerned, is strictly analogous to that presented after rendition of final judgment or erasure of case from docket. C.G.S.A. S 52-80. | Is the withdrawal of an action analogous to a final judgment? | 027912.docx | LEGALEASE-00132288-LEGALEASE-00132289 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9360 | Sandoval v. Daniels, 532 P.2d 759 | 307A+749.1 | The record does not contain any objection by plaintiffs' counsel to the pre-trial order and, therefore, the pre-trial order has the force and effect of a stipulation of the parties. Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229; See also Bates & Son, Inc. v. Great Western Railway Co., 158 Colo. 259, 406 P.2d 98. We are aware that the witness relied primarily upon the presence of the decedent's name on the x-rays to identify them, but the record also shows that, in a hearing in the trial court's chambers, he stated that he could utilize his knowledge of x-ray procedures and his own examination of the decedent to verify that the x-rays were those of the decedent. Thus, the witness offered a "reasonable identification" of the x-rays within the terms of the pre-trial order. | Where record does not contain objection by plaintiffs' counsel to pretrial order, such pretrial order has force and effect of stipulation of parties. | "Where a record does not contain objection by a plaintiffs' counsel to pretrial order, does such pretrial order have force and effect of stipulation of parties?" | Pretrial Procedure - Memo # 2526 - C - SB.docx | ROSS-003328752-ROSS-003328753 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9361 | Orbison v. Welsh, 242 Ind. 385 | 371+2750 | As was the case with the Toll Road Act, supra, nowhere in the instant statute is there any provision for the assessment of taxes. The payment of a tax is compulsory and not optional, and it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. Yourison, d. b. a., v. State of Del., p. b. r. (1927), 3 W.W.Harr. 577, 579, 33 Del. 577, 579, 140 A. 691, 692; Northern Counties Investment Trust v. Sears (1895), 30 Or. 388, 401, 41 P. 931, 935, 35 L.R.A. 188, 194. Under this statute the tolls, rentals, and fees are to be paid by the users of the port or its facilities, but this is merely compensation for the use of the property and the improvements of the port and can in no sense be considered a tax. | The payment of a tax is compulsory and not optional, and it entitles taxpayer to receive nothing in return, other than rights of government which are enjoyed by all citizens alike. | Does a tax entitle the taxpayer to the the rights of government which are enjoyed by all citizens? | 044659.docx | LEGALEASE-00131580-LEGALEASE-00131581 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9362 | 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 | 371+2001 | Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. Richard R. Powell, Powell on Real Property, " 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in general. Id. at " 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. Ibid. Lastly, the benefit must be certain rather than speculative, although it may arise in the future. Ibid. These salient features of the special assessment are codified by statute. N.J.S.A. 40:56-1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. See, e.g. Meglino v. Township Comm. of Eagleswood, 103 N.J. 144, 510 A.2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 259 A.2d 218 (1969) (addressing special assessment for sewer); City of Paterson v. Fargo Realty, Inc., 174 N.J.Super. 178, 415 A.2d 1210 (App.Div.1980) (involving demolition of nuisance). | Traditionally, differences between assessment and tax include: assessment supports local improvements, while tax finances general operations; assessment is one-time charge, while tax is annual; and assessment requires that benefit be direct, while tax requires no such direct benefit. | What do differences between assessment and tax include? | Taxation - Memo # 143 - C - KBM.docx | ROSS-003301692-ROSS-003301693 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 9363 | Sanford v. Walther., 467 S.W.3d 139 | 371+2763 | Taxes and interest are not the same. "Taxes are enforced contributions exacted pursuant to statutory authority."Miles v. Gordon, 234 Ark. 525, 529, 353 S.W.2d 157, 160 (1962). Interest is a charge for the use of tax money that the government was deprived of using due to late payment. See Jones v. United States, 371 F.2d 442, 450 (Ct. Cl. 1967); see also Owens v. Comm'r of Internal Revenue, 125 F.2d 210, 213 (10th Cir. 1942) (stating that interest is intended to compensate the government for delay in payment of the tax). Here, the "true character" of the exaction is to compensate the State for the delay in the payment of the tax. | Taxes and interest on tax delinquencies are not the same, for purposes of reviewing illegal exaction claims, in that taxes are enforced contributions exacted pursuant to statutory authority, whereas interest is a charge for the use of tax money that the government was deprived of using due to late payment. | Are interests on tax delinquencies a charge for the use of tax money that the government was deprived of using due to late payment? | 044681.docx | LEGALEASE-00131648-LEGALEASE-00131649 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 9364 | Sheehan v. Cent. Puget Sound Reg'l Transit Auth., 155 Wash. 2d 790 | 371+2061 | Appellants' final substantive argument relies on the characterization of the Authorities' vehicle taxes as ad valorem or property taxes. Appellants argue that the Authorities have implemented property taxes, not excise taxes, because the assessment is calculated as a percentage of vehicle value rather than the degree to which a resident uses the public roadways. Assuming the vehicle taxes are property taxes, Appellants maintain that those taxes are invalid because they violate the two prohibitions found in RCW 82.44.130 ("[n]o motor vehicle shall be listed and assessed for ad valorem taxation") and RCW 84.36.595(2) ("[m]otor vehicles ... are exempt from property taxation"). While Appellants are correct that property taxes on motor vehicles are invalid, they are incorrect in characterizing the Authorities' vehicle taxes as property taxes. | Motor vehicle excise taxes (MVETs), which were levied and collected annually at registration by regional transit and city monorail authorities, were valid excise taxes, not prohibited property or ad valorem taxes; although calculated as percentage of vehicle value, MVETs were levied upon privilege of relicensing vehicle for use on public roadways. West's RCWA 35.95A.080, 82.44.130, 84.36.595(2); West's RCWA 81.104.160(1) (1997). | "Is a tax on motor vehicle a ""property tax"" or an ""excise tax""?" | Taxation - Memo # 210 - C - KI.docx | ROSS-003287732-ROSS-003287734 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9365 | Gross v. Ocean Twp., 184 N.J. Super. 144 | 371+2001 | The essential characteristic of a tax is a compulsory contribution to the support of government, imposed upon individuals or property pursuant to legislative authority. See Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 309, 81 A.2d 485 (1951); In re Oshkosh Foundry Co., 28 F.Supp. 412, 414 (E.D.Wis.1939). Regulations requiring a license to engage in certain activity apply generally to all persons engaged in a particular business, trade, profession or calling, and the license fee is ordinarily aimed at defraying the expense fairly attributable to the cost of regulation. See Bellington v. East Windsor Tp., 17 N.J. 558, 564, 112 A.2d 268 (1955); N.J.S.A. 40:52"1 and N.J.S.A. 40:52"2. Here the township imposed no charge by way of a tax or license fee on all towers operating within the municipality. Towers were not required to submit a bid or to bid any minimum amount. Likewise, the regulatory aspects of the bid specifications were binding only on the successful bidder; all others could provide towing services in the township without regulation. In short, the township did not regulate the towing business generally. However, for the privilege of being called upon by the township to tow various vehicles, the successful bidder was required to accept the terms and specifications prescribed by the township. The township did not "tax" any towing company for the advantage of being called by the township police department to perform towing services for the township; it simply granted the privilege to the highest bidder. | Essential characteristic of a tax is a compulsory contribution to the support of government, imposed upon individuals or property pursuant to legislative authority. | Is tax imposed on individuals or property pursuant to a legislative authority? | 044842.docx | LEGALEASE-00131624-LEGALEASE-00131625 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9366 | Chicago & N. W. Transp. Co. v. Webster Cty. Bd. of Sup'rs, 880 F. Supp. 1290 | 371+2001 | The court therefore turns to a search for other criteria to determine what is a "tax." The court finds from a review of various authorities that the principle characteristics of a tax are that (1) it is enacted pursuant to legislative authority (2) to raise revenue (3) from similarly situated persons (4) for the benefit of the public. Indeed, the First Circuit Court of Appeals describes these characteristics as those of the "paradigmatic" or "classic" tax: The classic "tax" is imposed byalegislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. San Juan Cellular Telephone Co. v. Public Serv. Comm'n of Puerto Rico, 967 F.2d 683, 685 (1st Cir.1992); see also National Cable Television Ass'n, Inc. v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 376 (3d Cir.1978). The court will consider each of these characteristics in turn. | "Tax" enacted pursuant to legislative authority to raise revenue from similarly situated persons for the benefit of the public. | Is tax enacted to raise revenue from similarly situated persons for the benefit of the public? | Taxation - Memo # 273 - C - SS.docx | ROSS-003304065-ROSS-003304066 | Order, SA | 0.87 | 1 | 0 | 0 | 1 | |
| 9367 | Opinion of the Justices to the House of Representatives, 393 Mass. 1209 | 371+2001 | Question 1(a) asks whether the "assessment" imposed would be a "tax." We assume that the word "tax" is used in the broad sense of a revenue-raising exaction imposed through generally applicable rates to defray public expenses. P. Nichols, Taxation in Massachusetts 3"4, 15 (3d ed. 1938). To determine whether the monetary exaction to be imposed is a tax, we look to the proposed operation of the exaction. Emerson College v. Boston, 391 Mass. 415, 423"424, 462 N.E.2d 1098 (1984). Eaton, Crane & Pike Co. v. Commonwealth, 237 Mass. 523, 528, 130 N.E. 99 (1921). | To determine whether a monetary exaction to be imposed is a tax, Supreme Judicial Court looks to proposed operation of the exaction. | "Does the Supreme Judicial Court look to proposed operation of the exaction, to determine whether a monetary exaction to be imposed is a tax?" | 044938.docx | LEGALEASE-00131996-LEGALEASE-00131997 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9368 | United States v. Hines, 541 F.3d 833 | 63+1(1) | Hines's as-applied challenge fails, for the plain language of the statute does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds. See Sabri, 326 F.3d at 940"45. The Supreme Court upheld our interpretation of " 666 as Congress's attempt to preserve the integrity of federal funds by lessening the burden of federal prosecutors to prove what may be an impossible-to-trace, but very real, impact of local corruption on federal funds. See Sabri, 541 U.S. at 606"07, 124 S.Ct. 1941. That legitimate purpose and Congress's rational means of achieving it by eschewing a nexus requirement in the offense would be undermined if defendants such as Hines could require the government to establish such a nexus. See Gonzales v. Raich, 545 U.S. 1, 3, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (stating, in the context of legislation enacted pursuant to the Commerce Clause, that "where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class" (internal quotation and alteration omitted)). Thus, we reiterate our position on this issue and also point to those post-Sabri decisions that have declined to require any connection between federal funds and the activity that constitutes a violation of " 666. See, e.g., United States v. Caro"Muniz, 406 F.3d 22 (1st Cir.2005); United States v. Kranovich, 401 F.3d 1107 (9th Cir.2005); United States v. Spano, 401 F.3d 837 (7th Cir.2005); United States v. Mirikitani, 380 F.3d 1223 (9th Cir.2004). | No connection is required between federal funds and the activity that constitutes a violation of statute prohibiting accepting of bribes concerning program receiving federal funds. 18 U.S.C.A. S 666(a, b). | Does the statute prohibiting accepting of bribes concerning program receiving federal funds require a connection between federal funds and the activity that constitutes a violation? | Bribery - Memo #131 - C-CSS.docx | ROSS-003300616-ROSS-003300617 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9369 | Gottesman v. Toubin, 353 S.W.2d 294 | 289+760 | We are not unmindful of the general rule that a partnership fund is not subject to garnishment for the individual debt of a member of the firm, especially where the firm's assets are insufficient to satisfy its debts. Brown v. Cassidy-SouthwesternCommission Co., Tex.Civ.App.1920, 225 S.W. 833; Barrett v. Craft, Tex.Civ.App.1933, 57 S.W.2d 387; Farmers' Nat. Bank of Dublin v. Carmony, Tex.Civ.App.1933, 62 S.W.2d 1115. Such rule is inapplicable to the present case, in that the funds owing A. H. Toubin for his interest in the old dissolved firm, the affairs of which had evidently been wound up, are not subject to claims of creditors of the old firm since such claims has been satisfied as evidenced by the garnishee's admission of the exact amount due Toubin. The money belongs to A. H. Toubin. It does not constitute assets of the new partnership, and is not subject to claims of creditors of the new partnership. | Generally, partnership fund is not subject to garnishment for individual debt of member of firm, especially where firm's assets are insufficient to satisfy its debts. | Is a partnership fund subject to garnishment for the individual debt of a member of the firm? | Partnership - Memo 260 - RK.docx | ROSS-003290644-ROSS-003290645 | Order, SA | 0.82 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9370 | Cook v. Peacock, 154 S.W.2d 688 | 289+568(3) | The duties and responsibilities of a managing partner are in substance stated in Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 180, as follows: "It is the duty of the managing partner to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Where he has failed to keep accurate accounts, the burden rests upon him, as managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him. 47 C.J. 1245. Under the circumstances, C. L. Dial has the burden of showing the application of firm assets to the payment of firm debts, Marcum's Administrator v. Marcum, 154 Ky. 401, 157 S.W. 1101, and every reasonable presumption must be indulged against him. McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280. Doubt as to the validity of credits which he claims must be resolved against him. Kirwan v. Henry (Ky.) 16 S.W. 828; Navarro v. Lamana (Tex.Civ.App.) 179 S.W. 922. The duty of a partner in control of such a business is analogous to that of a trustee. Raymond v. Vaughn, 128 Ill. 256, 21 N.E. 566, 4 L.R.A. 440, 15 Am.St.Rep. 112. | A managing partner is bound to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. | Do managing partners have a duty to keep accurate books of account of all transactions relating to partnership affairs? | 022179.docx | LEGALEASE-00133580-LEGALEASE-00133581 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9371 | DiSanto v. City of Warrenville, 59 Ill. App. 3d 931 | 184+50 | The allegations in this count primarily reduce to a charge that the city paid an excessive price but no claim of bribery or self dealing is made. It is axiomatic, of course, that general conclusions of fraud are not sufficient in a pleading and that fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. (See, e. g., Carroll v. Caldwell, 12 Ill.2d 487, 494, 147 N.E.2d 69 (1958); Browning v. Heritage Insurance Co., 33 Ill.App.3d 943, 948, 338 N.E.2d 912 (1975).) It is true that inadequacy of consideration when very gross can amount in itself to a proof of fraud. (Schwarz v. Reznick, 257 Ill. 479, 485, 100 N.E. 900 (1913).) However, on the basis of the allegations in the complaint we conclude that facts are not pleaded from which fraud is the necessary or probable inference since the disparity of price between that suggested by the city's management consultant and that actually offered by the city is not so gross as to give rise to a reasonable inference of fraud. | General conclusions of fraud are not sufficient in a pleading and fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. | "Must fraud be shown by allegation of facts, and never presumed?" | Pleading - Memo 275 - RMM.docx | ROSS-003287624-ROSS-003287625 | Order, SA, Sub | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 9372 | Fahrbach v. Diamond Shamrock, 1996-NMSC-063, 24, 122 N.M. 543 | 307A+750 | Notice pleading is intended to be supplemented by discovery and other pretrial activity. Our rules of procedure anticipate clarification, development, and even, at least sometimes, simplification of the issues in the course of trial preparation. See United Nuclear Corp. v. General Atomic Co., 93 N.M. 105, 120, 597 P.2d 290, 305 (holding that "[p]arties are expected to disclose at a pre-trial hearing all the legal and factual issues which they intend to raise"), cert. denied, 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979). However, by the time of entry of the pretrial order, our rules contemplate that the issues to be tried will have been identified. "The principle is well established that a pretrial order, made and entered without objection, and to which no motion to modify has been made, 'controls the subsequent course of action.' " Blumenthal v. Concrete Constructors Co., 102 N.M. 125, 131, 692 P.2d 50, 56 (Ct.App.1984) (quoting NMSA 1978, Civ.P.R. 16 (Repl.Pamp.1980)). A pretrial order narrows the issues for trial, reveals the parties' real contentions, and eliminates unfair surprise. State ex rel. State Highway Dep't v. Branchau, 90 N.M. 496, 497, 565 P.2d 1013, 1014 (1977). Ordinarily, only those theories of liability contained in the pretrial order will be considered at trial. | Pretrial order narrows issues for trial, reveals parties' real contentions, and eliminates unfair surprise. | Does a Pretrial order narrow issues for trial and reveal parties' real contentions? | Pretrial Procedure - Memo # 1900 - C - VP.docx | ROSS-003286400-ROSS-003286402 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 9373 | King v. Thompkins, 186 Ga. App. 12 | 307A+749.1 | Defendants Trawick and Hughes argue the judgment against them should be reversed because they were never properly made parties to the action. Parties may be added to a lawsuit only by order of the court. OCGA " 9-11-21. The record shows plaintiff failed to obtain leave of the court to add defendants Trawick and Hughes. However, the record also shows this defense was not properly raised by defendants in the pretrial order. "A pretrial order limits the issues for trial to those not disposed of by admissions or agreements of counsel. The order, when entered, controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. OCGA " 9-11-16(b). If a claim or issue is omitted from the order, it is waived." (Cits. and punctuation omitted.) Long v. Marion, 257 Ga. 431, 433, 360 S.E.2d 255 (1987). This rule applies to the issue or defense of failure of the opposite party to obtain leave of court to add a party by amendment to an existing suit. Cf. CMT Investment Co. v. Automated Graphics Unlimited, 175 Ga.App. 353, 333 S.E.2d 196 (1985) (where defendant was found not to have waived his defense prior to trial of the case where no pretrial order was entered.) | Pretrial order controls subsequent course of action unless modified at trial to prevent manifest injustice; if claim or issue is omitted from pretrial order, it is waived. O.C.G.A. S 9-11-16(b). | Is an issue not raised in pretrial order treated as waived? | Pretrial Procedure - Memo # 1908 - C - SJ.docx | LEGALEASE-00022745-LEGALEASE-00022746 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 9374 | Clark v. Sipple, 10 Del. Ch. 51 | 307A+331 | For the complainant it was urged that in Chancery the complainant could by subp"na duces tecum obtain production before an examiner of the books, etc., of the mortgagee, with ampler opportunity to inspect them than if so produced at law. But in this there is a mistake. The production of a document in the possession of the adverse party cannot be compelled under a subp"na duces tecum in equity more than it can at law.Campbell v. Johnston, 3 Del. Ch. 94, 97. | The production of a document in the possession of an adverse party cannot be compelled by a subpoena duces tecum, any more in equity than at law. | "Can the production of a document in the possession of an adverse party be compelled by a subpoena duces tecum, any more in equity than at law?" | 027207.docx | LEGALEASE-00133132-LEGALEASE-00133133 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9375 | Pleasant v. Pleasant, 97 Md. App. 711 | 307A+331 | Appellant asserts that appellee could have used the trial court's subpoena power to obtain the desired information from the IRS and from his employer. Whether a Maryland court may reach the IRS and the District of Columbia is questionable. Moreover, appellant misunderstands the proper exercise of subpoena power. A subpoena is to be used to compel the attendance and testimony of witnesses, and production of documents at either a court proceeding or a deposition, and "shall not be used for any other purpose." Maryland Rule 2"510(a). Although a party may choose to depose the non-party holder of documents rather than utilize a request for production of documents, that option is not one that may be forced upon the party seeking discovery. Where documents are within the control of the party upon whom a request for production of documents has been made, that party must obtain and produce those documents. To hold otherwise would be to permit circumvention of the discovery process and create unnecessary expense. | If documents are within control of party upon whom request is made for production of documents, that party must obtain and produce those documents. | "If documents are within control of a party upon whom request is made for production of documents, can that party obtain and produce those documents?" | Pretrial Procedure - Memo # 1954 - C - VA.docx | ROSS-003287314-ROSS-003287315 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9376 | Epps v. Fowler, 351 S.W.3d 862 | 307A+517.1 | In Texas, plaintiffs may nonsuit at any time before introducing all of their evidence other than rebuttal evidence. Tex.R. Civ. P. 162. No court order is required. Id.; Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex.2010). A nonsuit terminates a case "from "the moment the motion is filed." " Joachim, 315 S.W.3d at 862 (quoting Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.2006) (per curiam)). At the same time, a nonsuit does not affect any pending claim for affirmative relief or motion for attorney's fees or sanctions. Id. at 863; Tex.R. Civ. P. 162. When a case is nonsuited without prejudice, res judicata does not bar relitigation of the same claims. Klein v. Dooley, 949 S.W.2d 307, 307 (Tex.1997). | A nonsuit does not affect any pending claim for affirmative relief or motion for attorney's fees or sanctions. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit affect any pending claim for affirmative relief or motion for attorney's fees or sanctions? | 027932.docx | LEGALEASE-00132929-LEGALEASE-00132930 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9377 | Univ. of Texas Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98 | 307A+517.1 | Under the Texas Rules of Civil Procedure, "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex. R. Civ. P. 162. Rule 162 applies in this case because Shultz filed the nonsuit while this matter was pending on interlocutory appeal from UTMB's pretrial plea to the jurisdiction. Under these circumstances, the nonsuit extinguishes a case or controversy from "the moment the motion is filed" or an oral motion is made in open court; the only requirement is "the mere filing of the motion with the clerk of the court." Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); see also Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). While the date on which the trial court signs an order dismissing the suit is the "starting point for determining when a trial court's plenary power expires," a nonsuit is effective when it is filed. In re Bennett, 960 S.W.2d 35, 38 (Tex.1997); Tex. R. Civ. P. 329b. The trial court generally has no discretion to refuse to dismiss the suit, and its order doing so is ministerial. In re Bennett, 960 S.W.2d at 38; Shadowbrook, 783 S.W.2d at 211. | When a nonsuit is filed while a matter was pending on interlocutory appeal from a pretrial plea to the jurisdiction, the nonsuit extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court; the only requirement is the mere filing of the motion with the clerk of the court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Is a non-suit effective from the moment the motion is filed, or an oral motion is made in open court?" | 028057.docx | LEGALEASE-00133405-LEGALEASE-00133407 | Order, SA, Sub | 0.7 | 1 | 0 | 1 | 1 | 1 |
| 9378 | Antisdel v. Ashby, 279 Va. 42 | 307A+501 | Initially, we find no merit in Antisdel's assertion that the defendants did not timely object to Antisdel's standing to bring a survival action. The defendants' failure to raise that objection in the second nonsuited action does not bar their present objection. A defendant is not limited in a new action to raising only the defenses asserted in a previously nonsuited action, because the new action stands independently of any prior nonsuited action. See Daniels v. Warden, 266 Va. 399, 402, 588 S.E.2d 382, 383 (2003); see also Winchester Homes, Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053, 1058 (4th Cir.1994) (applying Code " 8.01"380). | Defendant is not limited in a new action to raising only the defenses asserted in a previously nonsuited action; new action stands independently of any prior nonsuited action. | Is a defendant limited in a new action to raising only the defenses asserted in a previously nonsuited action? | Pretrial Procedure - Memo # 2508 - C - RY.docx | ROSS-003288285-ROSS-003288286 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9379 | K. King & G. Shuler Corp. v. King, 259 Cal. App. 2d 383 | 307A+749.1 | Conceding that defendant in her verified answer to plaintiff's first amended complaint and in her cross-complaint pleaded that she operated and conducted the business as the authorized agent, manager, or employee of Plaintiff Corporation; this is not to be held conclusively binding upon her. Plaintiff denied the allegation in defendant's cross-complaint. As set forth in the pretrial conference order, there was an issue as to whether during the period March 8, 1963 to July 31, 1963, defendant was an agent or employee of plaintiff to be resolved at trial. It was litigated at trial and evidence thereon produced. Issues set forth in a pretrial conference order supersede those raised by the pleadings and control the subsequent course of trial. (Hurd v. Paquin (1964) 229 Cal.App.2d 634, 636, 40 Cal.Rptr. 524; Feykert v. Hardy (1963) 213 Cal.App.2d 67, 74, 28 Cal.Rptr. 510; County of Kings v. Scott (1961) 190 Cal.App.2d 218, 225, 11 Cal.Rptr. 893.) If the pleadings and pretrial order be ambiguous but the issue litigated, the parties cannot thereafter claim that the issue was outside the issues of the case. (California Viking Sprinkler Co. v. Pacific Indem. Co. (1963), supra, 213 Cal.App.2d 844, 850"851, 29 Cal.Rptr. 194; cf. Breakers Holding Co. v. Josebra Co. (1954) 122 Cal.App.2d 741, 748, 265 P.2d 938.) | If pleadings and pre-trial order are ambiguous but issue is litigated, parties cannot thereafter claim that the issue was outside issues of case. | "If pleadings and pre-trial order are ambiguous but issue is litigated, can parties thereafter claim that the issue was outside issues of case?" | Pretrial Procedure - Memo # 2548 - C - ES.docx | ROSS-003300119-ROSS-003300120 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9380 | Golden Valley Disposal v. Jenkins Diesel Power, 183 S.W.3d 635 | 307A+517.1 | Golden Valley contends the dismissal of Case II with prejudice was erroneous because the factual predicate essential to the trial court's decision"the prior dismissal with prejudice of Case I"had never actually occurred. According to Golden Valley, it voluntarily dismissed Case I without prejudice just prior to the April 22nd hearing, thereby depriving the trial court of jurisdiction to dismiss that case with prejudice as a sanction for not complying with an order compelling discovery. It is well-settled that a Rule 67.02 voluntary dismissal is effective upon filing and divests the trial court of jurisdiction over the case. Kirby v. Gaub, 75 S.W.3d 916, 917 (Mo.App.2002). Consequently, any action taken by a trial court after a case is voluntarily dismissed is a nullity. Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 595 (Mo.App.2001). If a plaintiff attempts to voluntarily dismiss a case in a way not authorized by the rules of civil procedure, however, the purported dismissal is invalid and of no legal effect. Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96, 106 (Mo.App.2003). | A voluntary dismissal is effective upon filing and divests the trial court of jurisdiction over the case; consequently, any action taken by a trial court after a case is voluntarily dismissed is a nullity. V.A.M.R. 67.02. | Is a voluntary dismissal effective upon filing and divests the trial court of jurisdiction over the case? | Pretrial Procedure - Memo # 2553 - C - NS.docx | ROSS-003328768-ROSS-003328769 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9381 | Riley v. Med. Coll. of Ohio Hosp., 83 Ohio App. 3d 139 | 307A+517.1 | Upon a literal interpretation of the wording of Civ.R. 41(A)(1), for a notice of dismissal to operate as an adjudication upon the merits, both dismissals must have been a voluntary action made solely by the appellant. See McCormac, Ohio Civil Rules Practice (2 Ed.1992) 318, Section 13.03. | In order for dismissal to operate as adjudication upon merits, within meaning of double dismissal rule, dismissal must have been voluntary action made solely by plaintiff. Rules Civ.Proc., Rule 41(A)(1). | "In order for a dismissal to operate as adjudication upon merits, should a dismissal be a voluntary action made solely by a plaintiff?" | 028376.docx | LEGALEASE-00132758-LEGALEASE-00132759 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 9382 | D'Last Corp. v. Ugent, 288 Ill. App. 3d 216 | 307A+517.1 | For purposes of section 13-217, a complaint is said to be a refiling of a previously filed complaint if it contains the same cause of action as defined by res judicata principles. See Phillips v. Elrod, 135 Ill.App.3d 70, 88 Ill.Dec. 470, 478 N.E.2d 1078 (1985). In Phillips, the court held that a federal claim, which was premised on the same core of operative facts as the previously dismissed state claim, constituted the single refiling permitted under section 24 of the Limitations Act, the predecessor provision of section 13-217 of the Code. Accord Timberlake v. Illini Hospital, 277 Ill.App.3d 1041, 214 Ill.Dec. 700, 661 N.E.2d 1145 (1996), aff'd, 175 Ill.2d 159, 221 Ill.Dec. 831, 676 N.E.2d 634 (1997). See also Rodgers v. St. Mary's Hospital, 149 Ill.2d 302, 312, 173 Ill.Dec. 642, 647, 597 N.E.2d 616, 621 (1992) stating: "To determine whether causes of action are the same for res judicata purposes, Illinois courts have adopted two tests. [Citations.] The first is called the "same evidence" test. Under that test, res judicata bars a second suit if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions. [Citations.] The second test is the "transactional" approach, which considers whether both suits arise from the same transaction, incident, or factual situation. The transactional approach provides that " "the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." " Citations." | For purposes of statute permitting single refiling of action after voluntary dismissal, complaint constitutes a "refiling" of dismissed complaint if it contains the same cause of action as defined by res judicata principles. S.H.A. 735 ILCS 5/13-217. | "Does a complaint constitute a ""refiling"" of dismissed complaint if it contains the same cause of action as defined by res judicata principles?" | Pretrial Procedure - Memo # 2817 - C - SJ.docx | ROSS-003287628-ROSS-003287629 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 9383 | The Maskinonge, 63 F.2d 311 | 386+8 | Wrongful acts by the crews of the other Coast Guard vessels cannot render the seizure by the commanding officer of the 289 unlawful under the doctrine of trespass ab initio. It is only where an officer, by whom the property of a citizen is taken under the authority of law, abuses the authority vested in him that this doctrine applies, and not where wrongful acts are committed by others of their own volition, and not by the order, direction, or connivance of the seizing officer. | Doctrine of trespass ab initio applies only where officer taking citizen's property under authority of law abuses authority. | Can the doctrine of trespass ab initio apply when the officer taking citizen's property under authority of law abuses the authority? | 047338.docx | LEGALEASE-00133432-LEGALEASE-00133433 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 9384 | Parletto v. Indus. Comm'n, 140 Ohio St. 12 | 413+1 | The sole issue in a workmen's compensation case is the right of the claimant to participate or to continue to participate in the state insurance fund. Section 1465-90, General Code. | The sole issue in a compensation proceeding is right of claimant to participate or to continue to participate in state insurance fund. Gen.Code, § 1465-90. | Is the sole issue in a workers compensation proceeding whether the claimant has a right to participate or to continue to participate in a state insurance fund? | 047957.docx | LEGALEASE-00133372-LEGALEASE-00133373 | Order, SA | 0.14 | 1 | 0 | 0 | 1 | |
| 9385 | Khalsa v. Weinberger, 779 F.2d 1393 | 34+3(1) | In concluding that the Army's appearance regulations are not subject to judicial review, the district court erroneously dismissed the case for lack of subject matter jurisdiction. Rather, the doctrine of limited reviewability of certain military regulations and decisions is a matter of justiciability, analogous to the political questions doctrine.Although subject matter jurisdiction may indeed exist, the claim may prove unsuitable for review by a court acting in its traditional judicial role. The distinction between dismissal on the grounds that the federal courts lack subject matter jurisdiction and a decision that the plaintiff has not stated a claim to relief because of a prudential judgment that the military's decision should not be reviewed in a judicial forum is an important one. | Doctrine of limited reviewability of certain military regulations and decisions is matter of justiciability, analogous to political-questions doctrine. | "Is the doctrine of limited reviewability of certain military regulations and decisions a matter of justiciability, analogous to the political-questions doctrine?" | 008371.docx | LEGALEASE-00133684-LEGALEASE-00133685 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9386 | Kise v. Dep't of Military, 574 Pa. 528 | 259+3 | In its opinion in this case, the Commonwealth Court accurately described the National Guard as a state agency, under state control, and available for state service, yet as also an organization that is provided for by federal law, part of the armed services the United States, and subject to being called into federal service at any time. Accord Perpich, 496 U.S. at 345, 110 S.Ct. at 2425; Johnson v. Orr, 780 F.2d 386, 388 (3d Cir.1986). This blending of federal and state indicia results from the National Guard's grounding in both the Militia and the Armies Clauses of the United States Constitution, and is corollary to Congress' decision to incorporate the National Guard into a "total forces concept," designed to ensure national readiness for military conflict. See Dukakis v. United States Dep't of Def., 686 F.Supp. 30, 34 (D.Mass.1988) (quoting Frederick Bernays Wiener, The Militia Clause of the Constitution, 54 Harv. L.Rev.. 181, 208 (1940)). See generally Perpich, 496 U.S. at 346, 110 S.Ct. at 2425"26. Accordingly, the National Guard and its infrastructure are frequently referred to as hybrid in character. See, e.g., Johnson, 780 F.2d at 388; Williams v. Colorado Air Nat'l Guard, 821 P.2d 922, 923 (Colo.Ct.App.1991). | The National Guard is a state agency, under state control, and available for state service, yet also is an organization that is provided for by federal law, part of the armed services the United States, and subject to being called into federal service at any time. | Is the National Guard a component of the Army? | 008394.docx | LEGALEASE-00133792-LEGALEASE-00133793 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9387 | Boone v. United States, 53 Fed. Cl. 731 | 34+5(1) | It is well settled that the "rights and benefits of a member of the military services, including pay and allowances, are defined by statute." Dock v. United States, 46 F.3d 1083, 1086 (Fed.Cir.1995). Accordingly, "common-law rules governing private contracts have no place in the area of military pay." Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). The relevant statutory language thus determines the validity of plaintiff's back pay claim under section 204(a) and section 206(a). The court addresses each statute in turn. | Rights and benefits of a member of the military services, including pay and allowances, are defined by statute, and thus common-law rules governing private contracts have no place in the area of military pay. | Is employment of members of the military branches governed by contract? | 008410.docx | LEGALEASE-00133816-LEGALEASE-00133817 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 9388 | Moehl v. United States, 29 Fed. Cl. 249 | 34+5(1) | Count II of the complaint sounds in tort. Such claims are specifically excluded from the Tucker Act. 28 U.S.C. " 1491(a). Martin v. United States, 230 Ct.Cl. 887, 889, 1982 WL 25260 (1982). It is well settled that this court may not award punitive damages against the United States. Leesona Corp. v. United States, 599 F.2d 958, 969, 220 Ct.Cl. 234, cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Count III of the complaint alleges breach of contract and seeks compensation for consequential and compensatory damages. Military service is not governed by contract principles, absent specific authorization. A military member's right to pay and allowances is governed by statute and regulation. Bell v. United States, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). No statute mandates the payment of consequential damages in a military pay case. It is well settled that consequential damages are not recoverable in this court. Northern Helex Co. v. United States, 524 F.2d 707, 720"21, 207 Ct.Cl. 862 (Ct.Cl.1975), cert. denied, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976). | Military service is not governed by contract principles, absent specific authorization; military member's right to pay and allowances is governed by statute and regulation. | "Are the rights and benefits of a member of military services, including pay and allowances defined by the statute?" | 008417.docx | LEGALEASE-00133824-LEGALEASE-00133825 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9389 | Hanson v. Wyatt, 552 F.3d 1148 | 34+5(3) | "[T]o be reinstated as an officer of the [Army] National Guard, an officer must pursue remedies both within [the Army National Guard of the United States] and within the [Army] National Guard of his state." Penagaricano v. Llenza, 747 F.2d 55, 57 (1st Cir.1984), overruled in part on other grounds by Wright v. Park, 5 F.3d 586, 590"91 (1st Cir.1993). For the federal component of relief, the officer may seek review by a civilian Board for Correction of Military Records (BCMR) established for one of the Services. See 10 U.S.C. " 1552. As stated in 32 C.F.R. " 581.3(a), "[T]he policies and procedures for correction of military records by the Secretary of the Army, acting through the Army Board for Correction of Military Records (ABCMR)" are set forth in 32 C.F.R. " 581.3. The language "correction of military records" may be somewhat misleading, because the authority of BCMRs goes well beyond correcting paperwork. The ABCMR "can reinstate [the officer] in a comparable active federal reserve status, restore his pay and order compensatory back pay." Penagaricano, 747 F.2d at 57; see 10 U.S.C. " 1552(c); Christoffersen v. Washington State Air Nat'l Guard, 855 F.2d 1437, 1442 (9th Cir.1988); Thornton v. Coffey, 618 F.2d 686, 692"93 (10th Cir.1980). It cannot, however, "direct his reinstatement in the National Guard of the state." Penagaricano, 747 F.2d at 57. That would be a matter for the state adjutant general. | To be reinstated as an officer of the Army National Guard, an officer must pursue remedies both within the Army National Guard of the United States and within the Army National Guard of his state. 10 U.S.C.A. S 12213(b). | "To be reinstated as an officer of the Army National Guard, should an officer pursue remedies both within the Army National Guard of the United States and within the Army National Guard of his state?" | 008457.docx | LEGALEASE-00134135-LEGALEASE-00134136 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9390 | Jackson v. Lancaster, 213 Ala. 97 | 83E+413 | It is generally agreed that the indorsement of a note by one other than the payee or holder, whether before or after delivery, must be supported by a consideration, and that, if the indorsement is made subsequent to delivery, a new consideration is necessary, unless made pursuant to prior agreement. Any consideration which would support a simple contract, such as forbearance, extension of time, release of collateral, etc., will suffice. 8 C.J. p. 250, " 392; Code 1923, " 9053. And it may be for the benefit of a third person who is not a party to the paper. 8 C.J. p. 214, " 348. Appellee became an indorser for the accommodation of Gaddis, and would be liable to a subsequent transferee for value before maturity, "notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Code 1923, " 9055. But, as between the original parties, that is, appellee and the bank, the latter being fully advised of all the circumstances attending the indorsement, the bank, in whose right plaintiff as a statutory receiver brings this action, cannot, according to the decision in Hood v. Robbins, 98 Ala. 484, 13 So. 574, be regarded as an innocent purchaser for value-this for the reason, as a reading of the reported facts in connection with the opinion will show, that the court considered that a promise to postpone payment of a demand note is of no avail as a consideration, if the form of the note remains unchanged, that is, it remains a note payable on demand. According to the adjudication just cited, the indorser in such case, when sued by the original payee, has two defenses open to him, viz.: Want of consideration, and the statute of frauds. As long as that case stands, appellant cannot recover on the facts as they now appear. For aught now in evidence, this case and that, in essential respects, are as like as two peas in a pod, and the court, after consideration in conference, is of opinion that the Uniform Negotiable Instruments Law of 1909 (chapter | Indorsement of note by one other than payee or holder, whether before or after delivery, must be supported by consideration, and, if it is subsequent to delivery, new consideration is necessary, unless made pursuant to prior agreement. | Should an indorsement be supported by a consideration? | 009458.docx | LEGALEASE-00134228-LEGALEASE-00134229 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 9391 | Washington Loan & Tr. Co. v. United States, 134 F.2d 59 | 83E+503 | We need cite only a few to establish the rule, which is incorporated in the Negotiable Instruments Law (D.C. Code 1940, Sec. 28-124), that when a signature is forged it is wholly inoperative and gives no right to enforce payment, unless the party against whom it is sought to enforce the right is precluded from setting up the forgery.While most of the decided cases deal with parties in the relation of drawer anddrawee, which is not this case that is no reason for the application of a different rule. United States v. National Exchange Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006. | Where signature of payee of check is forged, it is inoperative and gives no right to enforce payment unless the party against whom writ is sought to enforce the right is precluded from setting up the forgery. D.C.Code 1940, S 28-124. | When a signature is forged will it give any right to enforce payment? | 009480.docx | LEGALEASE-00134528-LEGALEASE-00134529 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9392 | Wackeen v. Malis, 97 Cal. App. 4th 429 | 307A+517.1 | When a court has jurisdiction over the parties and subject matter of a suit, its jurisdiction continues until a final judgment is entered. (Riley v. Superior Court (1957) 49 Cal.2d 305, 309, 316 P.2d 956.) When there is a voluntary dismissal of an entire action, the court's jurisdiction over the parties and the subject matter terminates. (In re Casa de Valley View Owner's Assn. supra, 167 Cal.App.3d at p. 1192, 213 Cal.Rptr. 790.) In contrast, a dismissal by only some of the plaintiffs means the court is not divested of subject matter jurisdiction and the suit continues. (Ibid.) | When there is a voluntary dismissal of an entire action, the court's jurisdiction over the parties and subject matter terminates; in contrast, a dismissal by only some of the plaintiffs means the court is not divested of subject matter jurisdiction and the suit continues. | Does a dismissal by only some of the plaintiffs mean the court is not divested of subject matter jurisdiction and the suit continues? | Pretrial Procedure - Memo # 2714 - C - PC.docx | ROSS-003289513-ROSS-003289514 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 9393 | Rozek v. Christen, 153 Colo. 597 | 307A+61 | In 26A C.J.S. Depositions, " 4(b), p. 291, it is pointed out that one seeking to takedepositions must comply with the authorizing statute:"Statutory provisions for taking of depositions are generally considered in derogation of the common law, and, although they are to be liberally construed, such statutesmustbe strictly or substantiallycomplied with." | Statutory provisions for taking of depositions are generally considered in derogation of common law, and, although they are to be liberally construed, such statutes must be strictly or substantially complied with. Rules of Civil Procedure, rules 26, 27. | Should statutes respecting the taking of depositions be substantially complied with? | 028708.docx | LEGALEASE-00134133-LEGALEASE-00134134 | Order, SA, Sub | 0.29 | 1 | 0 | 1 | 1 | 1 |
| 9394 | Bourg Dry Dock & Serv. Co. v. Lombas Industries, 393 So. 2d 203 | 307A+749.1 | The trial court had issued a pretrial order in this case narrowing the issues. That order controls the subsequent course of action unless modified at the trial to prevent manifest injustice. The trial judge refused to modify his order. Much discretion is left to the trial judge in this matter. As was stated in Brown v. Hawkins, 244 So.2d 896, 899 (La.App. 1st Cir. 1971): An orderly disposition of each case and of the entire docket and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action." | Pretrial order controls subsequent course of action unless modified at trial to prevent manifest injustice; much discretion is left to trial judge in this matter. | Issue: Does a pretrial order controlled course of action unless modified to prevent manifest injustice? | Pretrial Procedure - Memo # 2986 - C - AP.docx | LEGALEASE-00024237-LEGALEASE-00024238 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9395 | Approximately $14,980.00 v. State, 261 S.W.3d 182 | 307A+486 | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. Steffan v. Steffan, 29 S.W.3d 627, 631 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, the trial court clearly abused its discretion by acting without reference to guiding rules or principles, or acted arbitrarily or unreasonably. Id. We also review the trial court's application of local court rules in deciding not to hear a motion rebutting the presumption of service of discovery requests under an abuse of discretion standard. See Approximately $1,589.00 v. State, 230 S.W.3d 871, 873 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that clear failure to correctly analyze or apply law constitutes an abuse of discretion). | The decision to allow or deny the withdrawal of deemed admissions lies within the broad discretion of the trial court. | Does a trial court have broad discretion to allow or deny the withdrawal of deemed admissions? | Pretrial Procedure - Memo # 2992 - C - AP.docx | ROSS-003303836-ROSS-003303837 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9396 | Barnes v. Clarkson, 2008 UT App 44 | 307A+486 | Under rule 36 (a) of the Utah Rules of Civil Procedure, after a party has been served with a request for admission, the matters therein will be deemed admitted if the receiving party does not respond to the requesting party with a written answer or objection addressing the matter within thirty days. See Utah R. Civ. P. 36 (a) (2). And ""the trial court does not have discretion to unilaterally disregard such admissions." " Langeland, 952 P.2d at 1060 (emphasis omitted) (quoting Jensen v. Pioneer Dodge Ctr., Inc., 702 P.2d 98, 100 (Utah 1985)). Rule 36(b), however, does permit the district court to allow withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Utah R. Civ. P. 36(b). Thus, "judicial discretion to allow withdrawal or amendment is permitted only after certain preliminary conditions have been met."Langeland, 952 P.2d at 1060. | Judicial discretion to allow withdrawal or amendment of admissions is permitted only after certain preliminary conditions set forth in discovery rule have been met. Rules Civ.Proc., Rule 36(b). | Is judicial discretion to allow withdrawal or amendment of admissions permitted only after certain preliminary conditions have been met? | 028840.docx | LEGALEASE-00134477-LEGALEASE-00134478 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9397 | Langeland v. Monarch Motors, 952 P.2d 1058 | 307A+486 | Id. at 70"71 (citation omitted). Additionally, Monarch quotes 10A Lawyers Edition, Federal Procedure " 26:591 (1994), that the "test of whether a party will be prejudiced by the withdrawal of an admission is whether the party is now any less able to obtain the evidence required to prove the matter which was admitted than he would have been at the time the admission was made." On this issue, we find the interpretation of the Federal Rule analogous to Utah Rule 36(b) to be logical and persuasive. | Mere necessity of proving matters formerly admitted does not constitute prejudice precluding amendment or withdrawal of answers to requests for admission; test is whether other party is now any less able to obtain the evidence required to prove the matter which was admitted than he would have been at the time the admission was made. Rules Civ.Proc., Rule 36(a). | What is the test to determine whether a party will be prejudiced by the withdrawal of an admission? | 028975.docx | LEGALEASE-00134724-LEGALEASE-00134725 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9398 | Corby v. Swank, 670 N.E.2d 1322 | 307A+486 | The party seeking withdrawal has the burden of demonstrating that the presentation of the merits will be subserved by withdrawal; however, the party who has obtained the admissions has the burden of demonstrating that it will be prejudiced if the trial court permits withdrawal. T.R. 36(B); Eads v. Hill (1990) Ind. App., 563 N.E.2d 625, 629, trans. denied; see also Royalty Vans, Inc. v. Hill Bros. Plumbing and Heating, Inc. (1993) Ind.App., 605 N.E.2d 1217, 1221, reh'g denied; Stewart v. Stewart (1987) Ind. App., 506 N.E.2d 1132, 1134; Liberty Mutual Ins. Co. v. Matuga (1984) Ind.App., 471 N.E.2d 737, 738. In this context, "prejudice" does not mean that the party who has obtained the admissions will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case. See Gary Mun. Airport Auth. v. Peters, supra, 550 N.E.2d at 831 (per Staton, J., with one judge concurring in result). For example, "prejudice" of this sort may be shown where the party obtaining the admission "is unable to produce key witnesses or present important evidence." Id. (citing Brook Village North Associates v. General Elec. Co. (1982) Ist Cir., 686 F.2d 66, 64 A.L.R.Fed. 730); see also General Motors Corp., supra, 573 N.E.2d at 889 (upholding trial court denial of motion to withdraw admissions where defendant seeking withdrawal had waited until only two months remained prior to trial to request withdrawal, which had effect of depriving plaintiff of three months time to develop proof). Unlessa trial court finds both that the presentation of the merits will be subserved by permitting withdrawal and that the party who has obtained the admissions will not suffer prejudice (as that term applies in T.R. 36), the trial court may not permit withdrawal. General Motors Corp., supra. When the trial court does find that both conditions have been satisfied, it may, in its discretion, permit withdrawal. Id.; Stewart, supra, 506 N.E.2d at 1134. | "Prejudice" from withdrawal of admission obtained by request for admissions does not mean that party who has obtained admission will lose benefit of it; rather, it means that party has suffered detriment in preparation of case. Trial Procedure Rule 36(B). | Does prejudice from withdrawal of admission obtained by request for admissions mean that a party who has obtained admission will lose benefit of it? | Pretrial Procedure - Memo # 3125 - C - MS.docx | ROSS-003290839-ROSS-003290840 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9399 | Winship v. Garguillo, 754 S.W.2d 360 | 34+34.5(5) | Appellant did not answer the requests for admissions. He was not present at the hearing on his application, and his absence is not explained in the appellate record. However, he did offer evidence at the hearing, by way of his affidavit and by way of stipulations by the parties as to what his testimony would be if he were present at the hearing, that would have disputed some of the facts in the requested admissions and also set up a meritorious defense. Unanswered requests for admissions are deemed admitted "without necessity of a court order" and any matter thus admitted is "conclusively established" as being true. Rule 169, Vernon's Tex.Rules Civ.Proc. Thus the facts admitted may not be contradicted by evidence at the trial. Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App."Houston [1st Dist.] 1986, no writ); Laycox v. Jaroma, Inc., 709 S.W.2d 2, 3 (Tex.App."Corpus Christi 1986, writ ref'd n.r.e.). | Failure by party who had filed application to have default judgment vacated pursuant to terms of Soldiers' and Sailors' Civil Relief Act, to answer opposing party's request for admissions, resulted in unanswered requests being deemed admitted without necessity of court order, and any matter thus admitted was preclusively established as being true. Soldiers' and Sailors' Civil Relief Act of 1940, S 200(4), 50 U.S.C.A.App. S 520(4); Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Upon failure to answer request to admit or deny genuineness of certain facts, are facts therein automatically deemed admitted?" | Pretrial Procedure - Memo # 3142 - C - VP.docx | ROSS-003291674-ROSS-003291675 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 9400 | Hampton v. City of Wichita, 192 Kan. 534 | 371+2001 | Under the authorities it may be stated that a tax is not a debt in the ordinary acceptation of that term, and consequently a civil action will not lie for its recovery, except in those cases where the statute expressly confers the right to bring such an action or where it impliedly confers such right by omitting all mention of any method for the collection of the tax. (Commissioners of Stafford County v. National Bank, 48 Kan. 561, 562, 30 P. 22.). | Tax is not "debt" and civil action will not lie for its recovery except where statute especially confers right to bring such action or where it impliedly confers such right by omitting all mention of any method for collection of tax. | Will a civil action lie for the recovery of a tax? | Taxation - Memo # 367 - C - SS.docx | ROSS-003291810-ROSS-003291811 | Order, SA | 0.48 | 1 | 0 | 0 | 1 | |
| 9401 | Bickett v. Countrymark Energy Res., 250 F. Supp. 3d 309 | 386+14 | Actions for damages to real property caused by another's negligence sound in trespass, not negligence. Wimmer, 733 S.W.2d at 760. Thus, Kentucky courts recognize negligent trespass as a cause of action. Rockwell Int'l Corp. v. Wilhite, 143 S.W.3d 604, 620 (Ky. App. 2003). The elements of negligent trespass are: "(1) the defendant must have breached its duty of care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff, and (3) the thing's presence causes harm to the land." Id. (citing Mercer v. Rockwell Int'l Corp., 24 F.Supp.2d 735, 740"41 (W.D. Ky. 1998)). A party seeking relief must show both a "negligent act or omission and legally cognizable damages." Alagia, Day, Trautwein & Smith v. Broadbent, 882 S.W.2d 121, 126 (Ky. 1994) (emphasis added). Consequently, "[w]ithout damages, there is no ripened claim." Meade Cty. Bank v. Wheatley, 910 S.W.2d 233, 235 (Ky. 1995). | A party seeking relief for negligent trespass under Kentucky law must show both a negligent act or omission and legally cognizable damages; consequently,without damages, there is no ripened claim. | What must a party seeking relief show for negligent trespass? | 047349.docx | LEGALEASE-00134754-LEGALEASE-00134755 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9402 | Town of Islip v. Datre, 245 F. Supp. 3d 397 | 386+10 | A "trespass" under New York law is "the interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 885 F.Supp. 410, 424 (E.D.N.Y. 1994). To state a trespass claim, a plaintiff must allege "an intentional entry onto the land of another without justification or permission," with "intent ... defined as intending the act which produces the unlawful intrusion, where the intrusion is an immediate or inevitable consequence of that act." Marone v. Kally, 109 A.D.3d 880, 882, 971 N.Y.S.2d 324 (N.Y. App. Div. 2013) (emphasis added). | Under New York law, "trespass" is interference with person's right to possession of real property either by unlawful act or lawful act performed in unlawful manner. | Can trespass be committed by performing a lawful act in an unlawful manner? | 047352.docx | LEGALEASE-00134836-LEGALEASE-00134837 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9403 | United States v. Irwin, 354 F.2d 192 | 63+1(1) | The awarding of gifts thus related to an employee's official acts in an evil in itself, even though the donor does not corruptly intend to influence the employee's official acts, because it tends, subtly or otherwise, to bring about preferential treatment by Government officials or employees, consciously or unconsciously, for those who give gifts as distinguished from those who do not. The preference may concern nothing more than fixing the time for a hearing or giving unusually prompt consideration to the application of a donor while earlier applications of non-donors are made to wait, even though there is no evidence that the donor sought the particular preference. Moreover, the behavior prohibited by " 201(f) embraces those cases in which all of the essential elements of the bribery offense (corrupt giving) stated in " 201(b) are present except for the element of specific intent to influence an official act or induce a public official to do or omit to do an act in violation of his lawful duty. The iniquity of the procuring of public officials, be it intentional or unintentional, is so fatally destructive to good government that a statute designed to remove the temptation for a public official to give preferment to one member of the public over another, by prohibiting all gifts "for or because of any official act," is a reasonable and proper means of insuring the integrity, fairness and impartiality of the administration of the law. It is clearly within the power of Congress to enact such a statute. | Awarding of gifts related to a government employee's official acts is an evil in itself under statute even though donor does not corruptly intend to influence employee's official acts. 18 U.S.C.A. S 201(f). | Is the awarding of gifts related to an employee's official acts an evil in itself? | 011497.docx | LEGALEASE-00135845-LEGALEASE-00135846 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |
| 9404 | United States v. Allen, 10 F.3d 405 | 63+1(1) | As the law has evolved, extortion "under color of official right" and bribery are really different sides of the same coin. "Extortion "under color of official right" equals the knowing receipt of bribes.... [I]t is extortion if the official knows that the bribe ... is motivated by a hope that it will influence him in the exercise of his office and if, knowing this, he accepts the bribe." United States v. Holzer, 816 F.2d 304, 311 (7th Cir.), vacated on other grounds, 484 U.S. 807, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987); see also Evans v. United States, 504 U.S. 255, """", 112 S.Ct. 1881, 1888, 119 L.Ed.2d 57 (1992) ("the wrongful acceptance of a bribe establishes all the inducement the [Hobbs Act] requires" for extortion under color of official right). Because of the realities of the American political system, and the fact that the Hobbs Act's language did not justify making commonly accepted political behavior criminal, the Supreme Court in McCormick added to this definition of extortion the requirement that the connection between the payment and the exercise of office"the quid pro quo"be explicit. Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the McCormick Court did in interpreting the Hobbs Act: absent some fairly explicit language otherwise, accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe. | Extortion under color of official right and bribery are really different sides of the same coin; extortion under color of official right equals the knowing receipt of bribes and it is extortion if the official knows that the bribe is motivated by a hope that it will influence him in the exercise of his office and if, knowing that, he accepts the bribe. | What is the relationship between extortion and bribery? | 011565.docx | LEGALEASE-00135303-LEGALEASE-00135304 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9405 | United States v. Muldoon, 931 F.2d 282 | 63+1(1) | The distinction between a bribe and an illegal gratuity is the difference in the intent of the person who gives the bribe. Compare 18 U.S.C. " 201(b) (bribery) with " 201(c) (gratuity). The distinction is slight, but it is apparent from the text of the statute. Proof of bribery requires a corrupt intent that is not required to show an illegal gratuity. Bribery requires proof that the payor acted corruptly with the intent of influencing any official act, influencing a public official to defraud the government, or to do or omit an act in violation of his official duties. " 201(b)(1)(A-C). The evidence must establish that the payor intended to receive some benefit in return for the payments. In contrast, an illegal gratuity is a payment made for an act by the recipient that might have been done without any payment. The proof need not show that the payor intended to exact action by the recipient, although it must show that the payor gave the gratuity because of the act. See United States v. Arthur, 544 F.2d 730, 733-36 (4th Cir.1976); United States v. Brewster, 506 F.2d 62, 72 (D.C.Cir.1974). Payment of an illegal gratuity is a lesser included offense of bribery within the meaning of Fed.R.Crim.P. 31(c). | Distinction between bribe and illegal gratuity is difference in intent of person who gives bribe; proof of bribery requires corrupt intent, which is not required to show illegal gratuity. 18 U.S.C.A. S 201(b), (b)(1)(A-C), (c); Fed.Rules Cr.Proc.Rule 31(c), 18 U.S.C.A. | How does the intent of the person who gives the bribe determine the conviction of bribery or illegal gratuity? | Bribery - Memo #479 - C-JL.docx | ROSS-003330969-ROSS-003330971 | Order, SA, Sub | 0.78 | 1 | 0 | 1 | 1 | 1 |
| 9406 | Rosenthal v. Nat'l Terrazzo Tile & Marble, 742 S.W.2d 55 | 307A+486 | The trial court has broad discretion in permitting the withdrawal of or amendment to admissions, and its ruling will be set aside only on a showing of clear abuse thereof. Crime Control, Inc. v. RMH"Oxford Joint Venture, 712 S.W.2d 550 (Tex.App."Houston [14th Dist.] 1986, no writ). There is no evidence before us, and on the basis of the reasons assigned, it would be impossible to find that the trial court abused its discretion in refusing to permit withdrawal of the admissions. Appellant's second point of error is overruled. | Trial court has broad discretion in permitting withdrawal of or amendment to admissions, and such ruling will be set aside only on showing of clear abuse of discretion. | Does a trial court have broad discretion to permit or deny the withdrawal of admissions? | 028767.docx | LEGALEASE-00135033-LEGALEASE-00135034 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 9407 | K-Mart Corp. v. Key, 160 Ga. App. 413 | 307A+716 | Although we understand the dilemma with which counsel is faced in a situation such as this, it is well settled that the absence of defendant's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. Bloodworth v. Caldwell, 150 Ga.App. 443, 444, 258 S.E.2d 64 (1979); Davis v. Barnes, 158 Ga.App. 89, 90, 279 S.E.2d 330 (1981); Rutledge v. State, 152 Ga.App. 755, 757, 264 S.E.2d 244 (1979). | Absence of defendant's counsel, without leave, to attend proceedings in other courts is no ground for continuance or for postponement. | "Is absence of counsel, without leave, to attend proceedings in other courts a ground for continuance or postponement?" | 029227.docx | LEGALEASE-00135217-LEGALEASE-00135218 | Order, SA, Sub | 0.7 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9408 | Withrow v. Withrow, 278 Ga. 525 | 307A+716 | Counsel never moved for a continuance due to the conflicts, a need for further discovery, or on any other basis. SurgiJet v. Hicks, 236 Ga.App. 80, 82(4), 511 S.E.2d 194 (1999); Atlanta West Enterprises v. Cobb County Bank, supra. Moreover, "[t]he absence of a [party's] counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. [Cit.]" Davis v. Barnes, 158 Ga.App. 89, 90, 279 S.E.2d 330 (1981). See also Cotton States Life Ins. Co. v. Edwards, 74 Ga. 220(1) (1884); Lewis v. Dairyland Ins. Co., 169 Ga.App. 265(1), 312 S.E.2d 165 (1983). Although a continuance was not requested in this case, the trial court did postpone the case until the afternoon, and we find no abuse of discretion in the trial court's refusal to delay the commencement of trial any further. Davis v. Barnes, supra. | The absence of a party's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement. | "Is absence of counsel, without leave, to attend proceedings in other courts a ground for continuance or postponement?" | Pretrial Procedure - Memo # 3262 - C - SS.docx | LEGALEASE-00025171-LEGALEASE-00025172 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9409 | Van Sickle v. Stroud, 467 S.W.2d 509 | 307A+716 | The cases holding that absence of counsel is grounds for a continuance uniformly require a showing of diligence and lack of fault by the complaining party.We find no such showing in the case at bar. Farmers' Gas Co. v. Calame, 262 S.W. 546 (Waco, Tex.Civ.App., 1924, no writ hist.); Counts v. Counts, 358 S.W.2d 192, supra; Strode v. Silverman, 217 S.W.2d 454, supra; and Davis v. Cox, 4 S.W.2d 1008, 1012 (Amarillo, Tex.Civ.App., 1928, writ dism.). In Davis the court succinctly states: "Litigants must exercise diligence in respect to pending litigation, and the plaintiff is charged with knowledge of all proceedings in the case. | Absence of counsel is ground for continuance only upon showing of diligence and lack of fault by complaining party. | Is the absence of counsel ground for a continuance only upon showing of diligence and lack of fault by a complaining party? | 029258.docx | LEGALEASE-00135734-LEGALEASE-00135735 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9410 | First Interstate Bank of Texas, N.A. v. Burns, 951 S.W.2d 237 | 307A+716 | Nothing in the legislative continuance statute requires a legislator to make a formal appearance in the lawsuit before seeking and receiving a continuance. The statute sets out the only requirements for the legislator to obtain a continuance; that is, the legislator need only file an affidavit declaring (1) an intent to participate actively in the case and (2) that the legislator has not taken the case just to obtain a continuance. " 30.003(e). An affidavit containing the requisite information constitutes proof of the necessity of the continuance; the affidavit need not be corroborated. " 30.003(d). Because the statute did not require Representative Thompson to appear three days before the arbitration hearing in order to obtain a continuance, we overrule point of error three. | Nothing in legislative continuance statute requires legislator to make formal appearance in lawsuit before seeking and receiving continuance. V.T.C.A., Civil Practice & Remedies Code S 30.003. | Does the legislative continuance statute require a legislator to make a formal appearance in the lawsuit before seeking and receiving a continuance? | Pretrial Procedure - Memo # 3335 - C - NS.docx | ROSS-003331306-ROSS-003331307 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9411 | Villegas v. Carter, 711 S.W.2d 624 | 307A+716 | The granting or denial of a motion for continuance is within the trial court's sound discretion. State v. Crank, 666 S.W.2d 91, 94 (Tex.1984); Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1963). The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. When the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence. State v. Crank, 666 S.W.2d at 94. Generally, when movants fail to comply with Tex.R.Civ.P. 251' s requirement that the motion for continuance be "supported by affidavit," we presume that the trial court did not abuse its discretion in denying the motion. Garcia v. Tex. Emp. Ins. Ass'n, 622 S.W.2d 626, 630 (Tex.App."Amarillo 1981, writ ref'd n.r.e.). It would be unrealistic, however, to apply this presumption to lay movants who without fault have their attorney withdrawn. Robinson v. Risinger, 548 S.W.2d 762, 765 (Tex.Civ.App."Tyler, 1977, writ ref'd n.r.e.). | Party moving for continuance must show that failure to obtain counsel for trial was not due to own fault or negligence, if ground for motion is withdrawal of counsel. Vernon's Ann.Texas Rules Civ.Proc., Rule 253. | "When the ground for the continuance is the withdrawal of counsel, should the movants show that the failure to be represented at trial was not due to their own fault or negligence?" | Pretrial Procedure - Memo # 3340 - C - NS.docx | ROSS-003317760-ROSS-003317761 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9412 | Dan-Cin Const. Co. v. Thrasher, 9 So. 3d 205 | 307A+483 | Generally, the courts have given full effect to Articles 1467 and 1468 when there has been a total lack of response to requests for admissions. Prestage v. Clark, 97"0524, p. 7 (La.App. 1 Cir. 12/28/98), 723 So.2d 1086, 1090, writ denied, 99"0234 (La.3/26/99), 739 So.2d 800; Vardaman v. Baker Center, Inc., 96"2611, p. 7 (La.App. 1 Cir. 3/13/98), 711 So.2d 727, 732. The language of Article 1467 is very clear; the matter is admitted unless a written answer or objection is served on the party making the request within the specified time after service of the request. Prestage, 97"0524 at p. 7, 723 So.2d at 1090; Vardaman, 96"2611 at p. 9, 711 So.2d at 732"33. However, Article 1467 is not a trap set for the litigant; it provides many options for the party on whom the request is served. For example, if the party cannot answer within the specified time, the court may allow additional time. See LSA"C.C.P. art. 1467; Prestage, 97"0524 at pp. 7"8, 723 So.2d at 1090. Additionally, a party against whom a fact has been deemed admitted has the opportunity to seek to have the fact withdrawn or amended. See LSA"C.C.P. art. 1468; Vardaman, 96"2611 at p. 9, 711 So.2d at 733. However, if a party fails to take any steps available to it, the fact is admitted and, according to Article 1468, is conclusively established. Vardaman, 96"2611 at p. 9, 711 So.2d at 733. | If a party fails to take any steps available to it, after having failed to respond to requests for admissions, the fact is admitted and is conclusively established. LSA-C.C.P. arts. 1466-1468. | "If a party fails to take any steps available to it, after having failed to respond to requests for admissions, is the fact admitted and is conclusively established?" | 029558.docx | LEGALEASE-00135409-LEGALEASE-00135410 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9413 | Alter v. Alter, 473 So. 2d 775 | 307A+716 | In a civil case an attorney's withdrawal does not give his client an absolute right to a continuance. A continuance under such circumstances is still a matter within the court's discretion. Grunewald v. Missouri Pacific Railroad Co., 331 F.2d 983 (8th Cir.1964).1 | In civil case, attorney's withdrawal does not give his client absolute right to continuance; continuance under such circumstances is still within court's discretion. | Does withdrawal of an attorney not give a client an absolute right to a continuance? | Pretrial Procedure - Memo # 3511 - C - NC.docx | ROSS-003290472-ROSS-003290473 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 9414 | Murphree v. Ziegelmair, 937 S.W.2d 493 | 307A+483 | It does not appear that the trial court conducted a hearing on liability. The finding of liability might have been based on requests for admissions that were deemed admitted when appellant failed to answer them. Unanswered requests are deemed admitted without the necessity of a court order once the answers are overdue.Tex.R.Civ.P. 169; Marshall v. Vise, 767 S.W.2d 699, 700 (Tex.1989); Barker v. Harrison, 752 S.W.2d 154, 155 (Tex.App."Houston [1st Dist.] 1988, writ dism'd w.o.j.). Since the admissions are not included in the record, however, we are unable to determine if they were sufficient to support the liability finding. | Unanswered requests for admissions are deemed admitted without necessity of court order once answers are overdue. Vernon's Ann.Texas Rules Civ.Proc., Rule 166. | Are unanswered requests for admissions deemed admitted without the necessity of a court order once answers are overdue? | 029716.docx | LEGALEASE-00135566-LEGALEASE-00135567 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9415 | Ex parte Browder, 373 S.W.2d 256 | 307A+716 | Art. 2168a, supra, requiring a court to continue a cause where a party or his attorney is a member of the legislature is recognized by the courts to be mandatory. Mora v. Ferguson, 145 Tex. 498, 199 S.W.2d 759; King v. State, 169 Tex.Cr.R. 556, 273 S.W.2d 72, 49 A.L.R.2d 1071. | Statute requiring court to continue cause where party or his attorney is member of Legislature is mandatory. Vernon's Ann.Civ.St. art. 2168a. | Is the statute requiring a court to continue cause where party or his attorney is member of Legislature mandatory? | Pretrial Procedure - Memo # 3642 - C - AP.docx | ROSS-003303299-ROSS-003303300 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 9416 | Dodd v. Cowgill, 85 Nev. 705 | 307A+716 | Whether a continuance in a civil action should be granted because of the illness of counsel or of a relative of counsel is a matter that is largely committed to the discretion of the trial judge. Davis v. Shigley,88 Ohio App. 423, 100 N.E.2d 261 (1950); Thomas v. Toppins, 206 Cal. 18, 272 P. 1042 (1928); In re Bollinger's Estate, 145 Cal. 751, 79 P. 427 (Cal. 1905); Volkering v. Allen, 96 Cal.App.2d 804, 216 P.2d 552 (1950); Annot.,67 A.L.R.2d 497 (1959). | Whether continuance in civil action should be granted because of illness of counsel or of a relative of counsel is a matter that is largely committed to discretion of trial judge. | Do courts grant continuance in civil action because of illness of counsel or of a relative of counsel? | 029844.docx | LEGALEASE-00135699-LEGALEASE-00135700 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 9417 | Baiye v. Gober, 254 Ga. App. 288 | 307A+483 | Unquestionably, the penalty for failing to answer or object to a request for admissions is admission of the subject matter of the request. But obviously a party cannot be subjected to this penalty unless the request has been filed and properly served. Therefore, for the trial court to have been authorized to award summary judgment to Gober based on Baiye and Deen's failure to respond to the request for admissions, it must have appeared without contradiction from the record then before the court that the request was filed and served on Baiye and Deen. Because the return of service by the special process server did not indicate that anything other than the summons and complaint were ultimately served, there was a material issue of fact on this question when the trial court ruled on Gober's motion for summary judgment.5 Under the present state of the record, a material issue of fact still exists. | Penalty for failing to answer or object to request for admissions is admission of subject matter of request; however, party cannot be subjected to this penalty unless request has been filed and properly served. O.C.G.A. S 9-11-36. | "Is the penalty for failing to answer or object to a request for admissions, admission of the subject matter of the request?" | Pretrial Procedure - Memo # 3681 - C - SKG.docx | ROSS-003290526-ROSS-003290527 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9418 | R.M. Dudley Const. Co. v. Dawson, 258 S.W.3d 694 | 307A+716 | In general, absence of counsel is not good cause for a continuance, but the trial court has the discretion to allow a continuance if good cause is shown. Tex.R. Civ. P. 253; see Rehabilitation Facility at Austin, Inc. v. Cooper, 962 S.W.2d 151, 155 (Tex.App."Austin 1998, no pet.) (citing State v. Crank, 666 S.W.2d 91, 94 (Tex.1984)). The record does not show the efforts, if any, taken by Dudley Construction's attorney to have the conflicting arbitration proceeding reset, nor does it adequately explain the arbitration's precedence over the December 5 jury trial setting for which notice was given on August 12. Furthermore, there is no explanation why the motion for continuance was filed after the pretrial and on the day before trial. | In general, absence of counsel is not good cause for a continuance, but the trial court has the discretion to allow a continuance if good cause is shown. Vernon's Ann.Texas Rules Civ.Proc., Rule 253. | "Is absence of counsel not good cause for a continuance, but the trial court has the discretion to allow a continuance if good cause is shown?" | 030120.docx | LEGALEASE-00135954-LEGALEASE-00135955 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9419 | Amalgamated Transit Union Local 587 v. State, 142 Wash. 27 | 371+2001 | Language in an initiative should be construed as the average informed voter voting on the initiative would read it. Brown, 139 Wash.2d at 28, 983 P.2d 608. As a noun, the term tax has as its common meaning a pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes : a forced contribution of wealth to meet the public needs of a government. Webster's Third New International Dictionary 2345 (1986). These definitions probably accord with the average informed voter's understanding of the term tax, and are consistent with the State's argument that tax means a compulsory charge for the support of government. This definition is also consistent with legal definitions offered by the Port Districts and Snohomish PUD. Tax means an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities [and it] is not a debt or contract in the ordinary sense but, it is an exaction in the strictest sense of the word. State ex rel. City of Seattle v. Dep't of Pub. Util. of Wash., 33 Wash.2d 896, 902, 207 P.2d 712 (1949). Tax is a pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority. Essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. (Citation omitted.) Black's Law Dictionary 1457 (6th ed.1990). | "Tax" means an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities; it is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. | What is a tax? | Taxation - Memo # 466 - C - KBM.docx | LEGALEASE-00025799-LEGALEASE-00025800 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9420 | Clay v. United States, 403 U.S. 698 | 34+20.6(3) | In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428. In applying these tests, the Selective Service System must be concerned with the registrant as an individual, not with its own interpretation of the dogma of the religious sect, if any, to which he may belong. United States v. Seeger, supra; Gillette v. United States, supra; Williams v. United States, 5 Cir., 216 F.2d 350, 352. | In order to qualify for classification as a conscientious objector, a registrant must show that he is conscientiously opposed to war in any form, that this opposition is based upon religious training and belief, and that the objection is sincere. Military Selective Service Act of 1967, S 6(j), 50 U.S.C.A. App. S 456(j). | How can a prima facie case for conscientious objection be established? | 008484.docx | LEGALEASE-00137006-LEGALEASE-00137007 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9421 | People v. Patillo, 386 Ill. 566 | 63+1(1) | Bribery, at common law and by statute, is the giving or receiving of anything of value or any valuable service or promise thereof, intended to influence any official in the discharge of a legal duty. People v. Peters, 265 Ill. 122, 106 N.E. 513, Ann.Cas.1916A, 813. The statute, in effect, declares that whoever corruptly, directly or indirectly, gives any money or thing of value to an officer, with intent to influence his act, in any matter which may be brought before him in his official capacity, or to perform any duty with partiality, the person so giving the money and the officer receiving the same with such intent and purpose, is deemed guilty of bribery. Ill.Rev.Stat.1941, chap. 38, par. 78, sec. 31, p. 1118. | "Bribery" at common law, and by statute, is the giving or receiving of anything of value or any valuable service or promise thereof, intended to influence any official in the discharge of a legal duty. Smith-Hurd Stats. c. 38, S 78. | How is bribery defined under the common law? | Bribery - Memo #423 - C-EB.docx | ROSS-003290113-ROSS-003290115 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9422 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Whether a payment is a bribe or an illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly," that is, with "corrupt intent." Under " 201 "corrupt intent" is the intent to receive a specific benefit in return for the payment. See Muldoon, 931 F.2d at 287; United States v. Duvall, 846 F.2d 966, 971 n. 6, 972 (5th Cir.1988); United States v. Irwin, 354 F.2d 192, 197 (2d Cir.1965). In other words, the payor of a bribe must intend to engage in " "some more or less specific quid pro quo" " with the official who receives the payment. Duvall, 846 F.2d at 972 (quoting United States v. Arthur, 544 F.2d 730, 734 (4th Cir.1976)); accord United States v. Sun-Diamond Growers of California, 138 F.3d 961, 966 (D.C.Cir.1998) (discussing the quid pro quo element of " 201(b) bribery), cert. granted in part, 525 U.S. 961, 119 S.Ct. 402, 142 L.Ed.2d 326 (1998) (No. 98-131), and cert. denied, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998) (No. 98-374); United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980) (same); cf. alsoUnited States v. Niederberger, 580 F.2d 63, 68 (3d Cir.1978)(explaining that under " 201 the intent to "corruptly" receive a payment means the intent to effectuate a quid pro quo); United States v. Strand, 574 F.2d 993, 995 (9th Cir.1978) (same). Accordingly, a good will gift to an official to foster a favorable business climate, given simply with the " "generalized hope or expectation of ultimate benefit on the part of the donor," " does not constitute a bribe. Johnson, 621 F.2d at 1076 (quoting Arthur, 544 F.2d at 734); cf. also United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993) ( "Vague expectations of some future benefit should not be sufficient to make a payment a bribe."). An illegal gratuity, on the other hand, is a payment made to an official concerning a specific official act (or omission) that the payor expected to occur in any event. No corrupt intent to influence official behavior is required. The payor simply | Whether a payment is a bribe or an illegal gratuity for purposes of statute prohibiting bribery of public officials and witnesses depends on the intent of the payor. 18 U.S.C.A. S 201(b)(1)(A), (c)(1)(A). | How should juries decide whether a payment is a bribe or an illegal gratuity for purposes of statute prohibiting bribery of public officials and witnesses? | Bribery - Memo #458 - C-JL.docx | ROSS-003302706-ROSS-003302708 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 9423 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Because the distinguishing factor between a bribe and an illegal gratuity is the intent behind the payment, the timing of the payment in relation to the official act for which it is made is (in theory) irrelevant. Cf. Griffin, 154 F.3d at 764. Bribes often are paid before the fact, but "it is only logical that in certain situations the bribe will not actually be conveyed until the act is done." United States v. Campbell, 684 F.2d 141, 148 (D.C.Cir.1982). By this same logic, illegal gratuities, which typically follow the act for which they are paid, may be conveyed before the occurrence of the act (so long as the payor believes the official has already committed himself to the action). See id.; Mariano, 983 F.2d at 1159. This can cause the distinction between bribes and illegal gratuities, which is clear in theory, to look somewhat hazy in real life. See United States v. Biaggi, 674 F.Supp. 86, 87-88 (E.D.N.Y.1987) (Weinstein, C.J.), aff'd, 853 F.2d 89 (2d Cir.1988). Without knowing the payor's intent, one cannot know whether the payment was a bribe or an illegal gratuity. Thus, without proof of corrupt intent on the payor's part, a bribery conviction is impossible. | For purposes of statute prohibiting bribery of public officials and witnesses, bribes often are paid before the fact, but in certain situations the bribe will not actually be conveyed until the act is done. 18 U.S.C.A. S 201(b)(1)(A). | "For purposes of statute prohibiting bribery of public officials and witnesses, would a bribe ever be conveyed until the act is done?" | 011745.docx | LEGALEASE-00136258-LEGALEASE-00136259 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9424 | United States v. Copeland, 143 F.3d 1439 | 63+1(1) | The scope of " 666, however, is not limitless; the statute clearly indicates that only those contractual relationships constituting some form of "Federal assistance" fall within the scope of the statute. 18 U.S.C. " 666(b); see Rooney, 986 F.2d at 34 (stating that "[t]he statute expressly equates "benefits' with "Federal assistance." "). Thus, organizations engaged in purely commercial transactions with the federal government are not subject to " 666. See United States v. Stewart, 727 F.Supp. 1068, 1072"73 (N.D.Tex.1989) (holding that defense contractor was not an organization within the scope of " 666 because it was engaged in purely commercial transactions with the government); see also Marmolejo, 89 F.3d at 1190; Rooney, 986 F.2d at 34"35.3 | Prime contractor for Department of Defense was not organization receiving benefits pursuant to a federal program, and persons offering property to contractor's agents, or agents accepting such property, thus were not subject to anti-bribery statute, notwithstanding that government provided contractor with detailed specifications for aircraft and that Congress annually appropriated specific sums for aircraft procurement, testing, and research and development; contractor received no form of federal assistance, and was not engaged in anything other than purely commercial transactions with government. 18 U.S.C.A. S 666(b). | Are organizations engaged in purely commercial transactions with federal government subject to 666(b) of the anti-bribery statute? | Bribery - Memo #469 - C-JL.docx | ROSS-003318553-ROSS-003318554 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 9425 | Cordero v. State, 132 Tex. Crim. 93 | 67+9(2) | "Entry" as employed in article 1389, P.C., defining burglary, and article 1391, defining burglary of a private residence at night "may be constituted by the discharge of fire-arms or other deadly missile into the house, with intent to injure any person therein." Article 1393, P.C.; Nalls v. State, 87 Tex.Cr.R. 83, 219 S.W. 473. | "Entry" within statute defining burglary and statute defining burglary of private residence at night can be constituted by discharge of firearms or other deadly missile into the house, with intent to injure any person therein (Vernon's Ann.P.C. arts. 1389, 1391, 1393). | Does entry in a burglary involve the discharge of firearms? | 012655.docx | LEGALEASE-00136314-LEGALEASE-00136315 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 9426 | Radio Picture Show Partnership v. Exclusive Intern. Pictures, 482 N.E.2d 1159 | 289+1187(2) | Contrary to the argument made by Radio, the limitation on liability in favor of a limited or special partner is a matter of defense so that it is not necessary for one suing a partnership to allege and prove its general or limited character. 68 C.J.S. Partnerships, Sec. 486, at 1038 (1950); Howard v. Gray's Warehouses, (1932) 242 Ky. 501, 46 S.W.2d 787; Henkel v. Heyman, (1878) 91 Ill. 96. Burden of proof follows the burden of pleading. T.R. 8(C). | Limitation on liability in favor of a limited or special partner is a matter of defense, so that it is not necessary for one suing a partnership to allege and prove its general and limited character. | Are limitations of liability in favor of a limited partner a matter of defense? | 022234.docx | LEGALEASE-00136329-LEGALEASE-00136330 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9427 | Nowaczyk v. Welch, 106 Ill. App. 2d 453 | 307A+716 | It would seem to be a matter of pure reasoning that if an attorney who has prepared a case for trial becomes ill and is unable to proceed with the trial, the court should grant him a continuance. In Jarvis v. Shacklock et al., 60 Ill. 378, the court said at page 379:"Illness of counsel would certainly be a good cause for continuance where the court can see that a fair trial is likely to be prevented by such illness, and the party moving for a continuance has shown no unreasonable carelessness."It has also been held in various cases from other jurisdictions that where an attorney is unexpectedly prevented by sickness from attending court, there is ample ground for postponing the trial. Turner v. Loomis, 146 Iowa 655, 125 N.W. 662; Pioneer Eng. Wks., Inc. v. McConnell, 123 Mont. 171, 212 P.2d 641; and Two Republics Oil & Gas Co. v. Reiser, 247 S.W. 910 (Tex.Civ.App.). | If attorney who has prepared case for trial becomes ill and is unable to proceed with trial, court should grant him a continuance. | "If attorney who has prepared for trial has become ill and unable to proceed, should the court grant continuance?" | 029348.docx | LEGALEASE-00136181-LEGALEASE-00136182 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9428 | Turner v. Loomis, 146 Iowa 655 | 307A+716 | That a party or his attorney is unexpectedly prevented from attending court by sickness furnishes ample ground for postponing the trial or for continuance is well settled in Brett v. Farr, 58 Iowa, 442, 10 N. W. 853; Rice v. Melendy, 36 Iowa, 166; Montgomery Co. v. American Emigrant Co., 47 Iowa, 91. The showing that the attorney could not safely leave home owing to illness was undisputed and in no wise impeached by the circumstance that he had suggested a continuance a few days previous. That he resided a hundred miles distant was not material, as the application was timely, and the situation would not have been different had he been in the county where the action was pending. The defendant was a nonresident of the state, represented by the one attorney only, and, as the latter's illness was unexpected, other arrangements to take care of the case at that term of court were practically impossible. The probability of recovery prior to the following term of court sufficiently appeared. See Lamar v. McDaniel, 78 Ga. 547, 3 S. E. 409. At the least, defendant was entitled to time within which to employ other counsel and for them to prepare the defense. To hold otherwise would lead to intolerable hardships. Vicksburg, S. & P. Ry. Co. v. Scott, 47 La. Ann. 706, 17 South. 249; Myers v. Trice, 86 Va. 835, 11 S. E. 428; 9 Cyc. 100; 4 Cyc. P. & P. 841. | The unexpected illness of counsel, preventing his attending court, furnishes ample ground for postponing the trial, or for a continuance. | "Does the unexpected illness of counsel, preventing his attending court, furnish ample ground for postponing the trial, or for a continuance?" | 029466.docx | LEGALEASE-00136479-LEGALEASE-00136480 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 9429 | Dover Corp. v. Perez, 587 S.W.2d 761 | 307A+716 | Rule 253, T.R.C.P., places the ruling on a motion for continuance based on the absence of counsel within the discretion of the trial court, and the ruling of the motion will be reversed only upon a showing of abuse of the court's discretion.Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.Sup. 1963).In Traders & General Ins. Co. v. Gray, 257 S.W.2d 327, 329 (Tex.Civ.App. Waco 1953, no writ), the Court explained the policy with regard to the denial of a continuance based upon the absence of counsel:". . . (N)o abuse of discretion is shown in the denial of a continuance based upon the absence of counsel, where another attorney represented the complaining party at the trial of the case and there is nothing to indicate that the complaining party was deprived of any defense by the absence of the original attorney or that it was not ably and fully represented by the attorney who tried the case."We find Dover was represented by able counsel in this case and after reading the entire record find that Dover was not deprived of an adequate defense. Moreover, we note as did the trial court, that had counsel in Mr. Hunt's firm begun preparing for this case when Mr. Hunt advised the court and parties of the possible conflict by letter dated December 29, 1977, then they would have had over three weeks to prepare for trial. Compare Kegans v. Williams, 214 S.W.2d 799 (Tex.Civ.App. Eastland 1948, writ ref'd n. r. e.). Dover's points 25 and 26 are overruled. | Ruling on motion for continuance based on absence of counsel is within discretion of trial court, and ruling on motion will be reversed only upon showing of court's discretion. Rules of Civil Procedure, rule 253. | Is a motion for continuance for absence of a defendants' counsel addressed for a trial court's discretion? | 029495.docx | LEGALEASE-00136609-LEGALEASE-00136610 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9430 | Baiye v. Gober, 254 Ga. App. 288 | 307A+483 | Unquestionably, the penalty for failing to answer or object to a request for admissions is admission of the subject matter of the request. But obviously a party cannot be subjected to this penalty unless the request has been filed and properly served. Therefore, for the trial court to have been authorized to award summary judgment to Gober based on Baiye and Deen's failure to respond to the request for admissions, it must have appeared without contradiction from the record then before the court that the request was filed and served on Baiye and Deen. Because the return of service by the special process server did not indicate that anything other than the summons and complaint were ultimately served, there was a material issue of fact on this question when the trial court ruled on Gober's motion for summary judgment. Under the present state of the record, a material issue of fact still exists. | Penalty for failing to answer or object to request for admissions is admission of subject matter of request; however, party cannot be subjected to this penalty unless request has been filed and properly served. O.C.G.A. S 9-11-36. | "Is a penalty for failing to answer or object to request for admissions, admission of the subject matter of request?" | Pretrial Procedure - Memo # 3867 - C - RY.docx | ROSS-003291030-ROSS-003291031 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9431 | Rhodes v. Blair, 919 S.W.2d 561 | 46H+1297 | Plaintiffs correctly point out that a party admits the matters contained in a request for admissions by failing to respond to it. Rule 59.01(a). Matters admitted pursuant to Rule 59.01 are conclusively established unless the court permits withdrawal or amendment of the admissions. Rule 59.01(c); Research Hosp. v. Williams, 651 S.W.2d 667, 669 (Mo.App.W.D.1983). Such admissions compare with admissions contained in pleadings and eliminate the need for further proof of those matters. Dana Commercial Credit Corp. v. Cukjati, 880 S.W.2d 612, 615 (Mo.App.S.D.1994); Killian Const. Co. v. Tri"City Const. Co., 693 S.W.2d 819, 827 (Mo.App.W.D.1985). See also N.R. v. A.D., 655 S.W.2d 733, 736 (Mo.App.E.D.1983). The consequences of failing to respond to requests for admissions apply even though, as here, the party appears pro se. Research Hosp. v. Williams, 651 S.W.2d at 669. | Consequences of failing to respond to requests for admissions apply even though party appears pro se. V.A.M.R. 59.01(a, c). | Do the consequences of failing to respond to requests for admissions apply even to a party appearing as pro se? | 030213.docx | LEGALEASE-00136192-LEGALEASE-00136193 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9432 | Jensen v. Pioneer Dodge Ctr., 702 P.2d 98 | 307A+483 | Rule 36(a) by its express terms embraces only requests for admissions of fact or the application of law to fact. Therefore, a request for an admission of a pure matter of law is improper, although a request for an admission of an ultimate fact or application of law to fact is proper. However, even if a request is objectionable, if a party fails to object and fails to respond to the request, that party should be held to have admitted the matter. Rule 36(b) so provides, except that the Rule also provides that the court may permit withdrawal or amendment of the admission when the presentation of the merits of the action will be subserved thereby. | Even if a request for an admission is objectionable, if a party fails to object and fails to respond to the request, that party should be held to have admitted the matter. Rules Civ.Proc., Rule 36(a, b). | "Even if a request for an admission is objectionable, if a party fails to object and fails to respond to the request, should that party be held to have admitted the matter?" | Pretrial Procedure - Memo # 4100 - C - KG.docx | ROSS-003305187-ROSS-003305188 | Order, SA | 0.69 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9433 | Christensen-Towne v. Dorey, 2002 ME 121 | 307A+723.1 | "A party seeking a continuance has the burden of showing sufficient grounds for granting the motion, and the ruling of the presiding justice is reviewable only for abuse of discretion." Provenzano v. Deloge, 2000 ME 149, 11, 755 A.2d 549, 551 (internal quotation marks omitted). The party requesting the continuance must establish a substantial reason why granting the continuance would further justice. Id. Even in the absence of a formal motion for a continuance, "the same discretionary principles should apply to a refusal to delay a proceeding." State v. Greenwald, 454 A.2d 827, 829 (Me.1982) (trial court refused to delay proceedings so defendant could locate a witness). | Even absent a formal motion for a continuance, the same discretionary principles should apply to a refusal to delay a proceeding. | "Even absent a formal motion for a continuance, should the same discretionary principles apply to a refusal to delay a proceeding?" | Pretrial Procedure - Memo # 4121 - C - SK.docx | ROSS-003331420-ROSS-003331421 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9434 | In re Marriage of Gallagher, 256 Ill. App. 3d 439 | 307A+723.1 | We first examine petitioner's contention that the trial court erred in denying her emergency motion for a continuance. There is no absolute right to a continuance for litigants. (Lipke v. Celotex Corp. (1987), 153 Ill.App.3d 498, 510, 106 Ill.Dec. 422, 505 N.E.2d 1213.) When a continuance is not requested until the day of the trial, Supreme Court Rule 231(f) (134 Ill.2d R. 231(f)) requires that an especially persuasive reason be given by the moving party because of the potential inconvenience to the witnesses, the parties and the court. (Sinram v. Nolan (1992), 227 Ill.App.3d 241, 243, 169 Ill.Dec. 248, 591 N.E.2d 128.) Moreover, a motion for a continuance based upon the illness of a party must be supported by competent medical testimony stating the nature of the illness and the reasons why that party is unable to attend or participate in the trial. (Needy v. Sparks (1977), 51 Ill.App.3d 350, 358, 9 Ill.Dec. 70, 366 N.E.2d 327.) "The decision to deny a motion for a continuance is within the sound discretion of the trial court and such decision will not be disturbed absent an abuse of discretion or unless palpable injustice appears in the record on appeal. [Citations.] A reviewing court must balance the prompt disposition of the case with the equally compelling interest in obtaining justice to determine whether an abuse of discretion occurred." O'Neill v. Brown (1993), 242 Ill.App.3d 334, 343, 182 Ill.Dec. 301, 609 N.E.2d 835. | When continuance is not requested until the day of trial, especially persuasive reason must be given by the moving party because of the potential inconvenience to the witnesses, the parties, and the court. Sup.Ct.Rules, Rule 231(f). | Does a continuance requested at the last minute be based on especially persuasive reasons? | 030796.docx | LEGALEASE-00136628-LEGALEASE-00136629 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9435 | Honig v. Fin. Corp. of Am., 6 Cal. App. 4th 960 | 307A+720 | In finding that the amendment should have been allowed, we are well aware of the purposes behind fast track, which we support. Matters should be promptly resolved. However, if an amendment is appropriate the trial court should continue the trial if necessary, even if the matter is on fast track. (Prudential"Bache Securities, Inc. v. Superior Court (1988) 201 Cal.App.3d 924, 925, 247 Cal.Rptr. 477; Laguna Auto Body v. Farmers Ins. Exchange (1991) 231 Cal.App.3d 481, 490, 282 Cal.Rptr. 530; cf. Miller v. Superior Court (1990) 221 Cal.App.3d 1200, 1206"1212, 270 Cal.Rptr. 766; Laborers' Internat. Union of North America v. El Dorado Landscape Co. (1989) 208 Cal.App.3d 993, 1000"1007, 256 Cal.Rptr. 632; Hock v. Superior Court (1990) 221 Cal.App.3d 670, 673"674, 270 Cal.Rptr. 579.) | If amendment to pleading is appropriate, trial court should continue trial if necessary, even if matter is on fast track. West's Ann.Cal.C.C.P. S 473; West's Ann.Cal.Gov.Code S 68600 et seq. | "If an amendment to pleading is appropriate, should a trial court continue trial if necessary, even if a matter is on fast track?" | Pretrial Procedure - Memo # 4396 - C - NS.docx | ROSS-003291747-ROSS-003291748 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 9436 | Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305 | 24+205 | It is important to note that a visa petition is not the same thing as a visa. An approved visa petition is merely a preliminary step in the visa application process. 1A Gordon & Rosenfeld, Immigration Law and Procedure " 3.5(j). It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States. Joseph v. Landon, 679 F.2d 113, 115 (7th Cir.1982); Amarante v. Rosenberg, 326 F.2d 58, 61 (9th Cir.1964). | Visa petition is not the same thing as a visa; approved visa petition is merely a preliminary step in the visa application and does not guarantee that the visa will be issued and does not grant the alien any right to remain in the United States. Immigration and Nationality Act, S 291, 8 U.S.C.A. S 1361. | Does the approval of a visa petition of an alien establish the right of permanent residency? | 007019.docx | LEGALEASE-00137590-LEGALEASE-00137591 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 9437 | Moore v. Moore, 484 S.W.3d 386 | 34+5(6) | Members of the Armed Forces who serve for a specified period may receive retired pay upon their retirement. Mansell v. Mansell, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). "Veterans who became disabled as a result of military service are eligible for disability benefits." Id.; see 38 U.S.C. "" 1110, 1131. The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired. Mansell, 490 U.S. at 583, 109 S.Ct. 2023; see 38 U.S.C. "" 1114, 1155. "In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he [or she] waives a corresponding amount of his military retired pay." Mansell, 490 U.S. at 583, 109 S.Ct. 2023. "Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retired pay in favor of disability benefits [can] increase their after-tax income." Id. at 583"84, 109 S.Ct. 2023 (citation omitted). | Members of the Armed Forces who serve for a specified period may receive retired pay upon their retirement. | Can members of the Armed Forces who serve for a specified period receive retired pay upon their retirement? | Armed Services - Memo 164 - JS.docx | ROSS-003289984-ROSS-003289985 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9438 | Schism v. United States, 316 F.3d 1259 | 34+5(6) | The doctrine that statutes are the exclusive source of law governing the compensation rights of members of the military for pensions as well as pay appears in Court opinions as early as 1856. In Walton v. Cotton, 60 U.S. 355, 357, 19 How. 355, 15 L.Ed. 658 (1856), the Court explained that to determine who qualifies as beneficiaries of a deceased revolutionary war captain's pension "the case turns upon the construction of [the] statutes" pertaining to the pensions and not upon any other source of law. This understanding also prevails in subsequent cases, with the Court quoting Walton as the source for the rule that only congressional acts determine compensation of soldiers. United States ex re. Burnett v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352 (1883) ("[military p]ensions are the bounties of the government, which [C]ongress has the right to give, withhold, distribute, or recall at its discretion"). See also Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657 (1895) (quoting the same rule as the basis for its analysis that statute, not contract law, governs the entire administration of military pensions, and further holding that statute supercedes even where third party agents have contracted independently with pension beneficiaries). While the post-Walton cases do not offer any independent justification for the doctrine, they are explicit about the statutory source for their decisions and the rejection of other legal bases in their analysis. | Principle that statutes are exclusive source of law governing compensation rights of members of military applies to pensions and hospitalization benefits as well as pay. | Are statutes the exclusive source of law governing compensation rights of members of the military? | 008504.docx | LEGALEASE-00137365-LEGALEASE-00137366 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9439 | United States v. Marmolejo, 89 F.3d 1185 | 63+1(2) | We must now determine whether these conjugal visits had a value of $5,000 or more. Again, we observe that the statute does not contain language "to indicate that "any transaction involving $5,000" means "any federally funded transaction involving $5,000" or "any transaction involving $5,000 of federal funds." " Westmoreland, 841 F.2d at 576. "[A]ny reference to federal funds is conspicuously absent from the operative provisions," allowing Congress to ensure the integrity of federal funds by protecting the integrity of the organizations that receive them. Id. at 577"78. The statute does not specifically require that the payor or the payee of the bribe value the transaction at $5,000.10 Instead, the $5,000 triggering provision ensures that the statute reaches acts of bribery involving transactions of substantial value. Id. at 578. To decide whether a transaction involving intangibles has a value of $5,000 or more, courts should look to traditional valuation methods. See Mongelli, 794 F.Supp. at 531. We conclude that the conjugal visits in this case did have a value which exceeded $5,000. We arrive at this estimate in the same way that an appraiser would value an asset"by looking at how much a person in the market would be willing to pay for them. Id.; see also Herman v. United States, 289 F.2d 362 (5th Cir.) (stating that to determine if the value of stolen property is $5,000 or more, as required in 18 U.S.C. " 2314, courts must look at "the price a willing buyer would pay a willing seller at the time and place the property was stolen"), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961); United States v. Seagraves, 265 F.2d 876 (3d Cir.1959) (stating that amount defendants paid for stolen property can form basis for expert's valuation of the property under 18 U.S.C. " 2314). Pursuant to the bribery transactions, Beltran was willing to pay Marmolejo $6,000 a month plus $1,000 for each visit. Therefore, the transactions between Beltran and Marmolejo | To determine whether transaction with government official that involves intangibles has value of $5,000 or more, as required to establish violation of bribery statute, courts should look to traditional valuation methods. 18 U.S.C.A. S 666(a)(1)(b). | "To determine the value of a transaction involving intangibles, must the court look to traditional valuation methods?" | Bribery - Memo #493 - C-CSS.docx | ROSS-003302717-ROSS-003302719 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9440 | United States v. Evans, 344 F.3d 1131 | 63+1(1) | 18 U.S.C. " 201(a)(1). "To determine whether any particular individual [is a public official], the proper inquiry is ... whether the person occupies a position of public trust with official federal responsibilities." Dixson v. United States, 465 U.S. 482, 104 S.Ct. 1172, 1180, 79 L.Ed.2d 458 (1984). | To determine whether any particular individual is public official, within meaning of gratuity statute, proper inquiry is whether person occupies position of public trust with official federal responsibilities. 18 U.S.C.A. S 201(a)(1). | Does a position of public trust with official federal responsibilities make someone a public official? | 011789.docx | LEGALEASE-00138007-LEGALEASE-00138008 | Order, SA, Sub | 0.22 | 1 | 0 | 1 | 1 | 1 |
| 9441 | People v. Moreno, 100 A.D.3d 435 | 316P+1053 | To establish the crime of official misconduct, the People had to prove that each defendant committed an act "relating to his office" that constituted an "unauthorized exercise of his official functions," that he knew the act was unauthorized, and that he acted with the intent to obtain a benefit (Penal Law " 195.00[1] ). An action taken by a public servant that is "completely unrelated to his [or her] position" is not "within the scope of [his or her] real or apparent authority" (People v. Rossi, 69 A.D.2d 778, 779, 415 N.Y.S.2d 21 [1st Dept. 1979], affd. 50 N.Y.2d 813, 430 N.Y.S.2d 49, 407 N.E.2d 1345 [1980] ). | Action taken by a public servant that is completely unrelated to his or her position cannot serve as the basis for a charge of official misconduct, as such action is not within the scope of his or her real or apparent authority. McKinney's Penal Law S 195.00(1). | Is an action completely unrelated to someone's position within the scope of his real or apparent authority? | 011824.docx | LEGALEASE-00137674-LEGALEASE-00137675 | Order, SA, Sub | 0.58 | 1 | 0 | 1 | 1 | 1 |
| 9442 | James L. Lester v Heyward McFaddon and Cameron Lumber Company, 288 F.Supp.735 | 48A+160(4) | Motorists have the duty of exercising ordinary or reasonable care to avoid injuring a pedestrian who is crossing a highway. The fact that a motorist, by statute, has the right of way over a pedestrian crossing a highway, does not relieve him of the duty to use reasonable care for the safety of such pedestrian, even though the statute requires a pedestrian on the highway to yield the right of way to the motorist. | Fact that motorist may have right of way over pedestrian does not relieve him of duty to use reasonable care for safety of such pedestrian even though statute may require pedestrian on highway to yield right-of-way to motorist. Code S.C.1962, SS 46-436, 46-442, 46-361, 46-363. | Is it the duty of motorist to exercise due care with regards to a pedestrian? | Highways -Memo 48 - AR.docx | ROSS-003329835-ROSS-003329836 | Order, SA | 0.33 | 1 | 0 | 0 | 1 | |
| 9443 | Moore v. Commissioners Court of McCulloch Cty., 239 S.W.2d 119 | 200+77(7) | In Boyd v. Dillard, County Judge, 151 S.W.2d 847, Ref. Want of Merit, the Court of Civil Appeals had before it the matter of ordering the reopening of a road which had been closed as a condition of acceptance by the State of conveyance of land on both sides of road for state park. The court held that, under Section 9, Article 608ld, Title 103, V.A.C.S., the Commissioners Court had greater authority for closing of roads than it had theretofore, etc. We, therefore, conclude that the Commissioners Court did not have the power and authority to enter the order closing the road and that the individuals did not have the authority to place the obstruction across the road so as to deny its use to the appellant, who owned land situated thereon. | County commissioners court had no jurisdiction or power to enter order closing a public road over protest of owner of land abutting on such road who had purchased his property in reliance on the road, thereby acquiring a property interest in the road which entitled him to its use free from obstruction or hindrance, and individuals had no authority under such order to place obstructions across the road so as to deny its use to owner of land abutting thereon. Vernon's Ann.Civ.St. art. 2351, subd. 3; art. 6702. | Does commissioners court power extend to closing a road? | Highways-Memo 75-ANM.docx | ROSS-003290621-ROSS-003290622 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9444 | Elliott v. Progressive Halcyon Ins. Co., 222 Or. App. 586 | 307A+485 | In contrast, the sanction available under ORCP 46 C bears no relationship to whether the party has prevailed. The rule's purpose is to reimburse a party for expenses incurred because of the need to prove facts that were unreasonably denied. Smo v. Black, 95 Or.App. 588, 591, 770 P.2d 925 (1989) (purpose of ORCP 46 C is to provide "reimbursements for the expenses necessitated by an unreasonable refusal to admit"); see Gottenberg v. Westinghouse Electric Corp., 142 Or.App. 70, 79, 919 P.2d 521 (1996). A party's entitlement under ORCP 46 C to reimbursement of its expenses depends on proof of the disputed facts and proof of the expenses necessitated by the other party's denial of those facts. The sanction is awarded by order and is thus exempt from the provisions of ORCP 68. ORCP 46 C; ORCP 68 C(1)(b). Thus, plaintiff contends, the attorney fees assessed as a sanction under ORCP 46 C are not attorney fees in the sense encompassed by ORCP 54 E(3), but merely a component of a party's expenses incurred in proving the unreasonably denied facts. | Purpose of rule providing that if a party fails to admit the genuineness of any document or the truth of any matter, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the party requesting the admissions may apply to the court for an order requiring the other party to pay the party requesting the admissions the reasonable expenses incurred in making that proof, including reasonable attorney's fees, is to reimburse a party for expenses incurred because of the need to prove facts that were unreasonably denied. Rules Civ.Proc., Rule 46C. | Is the purpose of ORCP 46 to reimburse a party for expenses incurred because of the need to prove facts that were unreasonably denied? | Pretrial Procedure - Memo # 3883 - C - BP.docx | ROSS-003303365-ROSS-003303366 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 9445 | Swanson's v. Scott, 578 S.W.2d 345 | 307A+723.1 | Defendant claims the trial court erred in denying an oral request for a continuance. The request for a continuance was not in writing as required by Rule 65.03 and contained no affidavit. In the absence of compliance with this rule, there can be no abuse of discretion in denying a continuance. Searles v. Searles, 495 S.W.2d 759 (Mo.App.1973). In the brief, defendant has argued the reasons submitted to the trial court for continuance that she had obtained an expert witness who was unable to be present and that she had been unable to obtain counsel. The record does not support those claims. The case was set pursuant to a written request for continuance in writing by the defendant, consented to by the plaintiff, and granted by the court on or about July 25, when the court advised her to obtain counsel. The case was filed originally in the magistrate court in October, 1973, and the defendant discharged her counsel two days before a default was rendered in the magistrate court and approximately six months elapsed after the magistrate court judgment before the setting of the circuit court. There is no basis to find that the trial court abused its discretion in failing to grant a continuance. | In absence of compliance with rule requiring that request for continuance be in writing, there can be no abuse of discretion in denying continuance. V.A.M.R. Civil Rule 65.03. | "In absence of compliance with a rule requiring that a request for continuance be in writing, can there be no abuse of discretion in denying continuance?" | 030521.docx | LEGALEASE-00137292-LEGALEASE-00137293 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 9446 | Carlson v. Withers, 16 Mass. App. Ct. 924 | 307A+483 | The plaintiff's argument regarding Mass.R.Civ.P. 36, 365 Mass. 795 (1974), is unavailing for several reasons. The judge was not compelled to find as fact those items contained in the plaintiff's requests, pursuant to rule 36, for admissions to which no response was made. Rule 36 provides a means to "define and limit the matters in controversy between the parties" (emphasis supplied). 8 Wright & Miller, Federal Practice and Procedure " 2252, at 704 (1970). A failure to respond to a request for admissions by a nonadversary party does not have the usual conclusive effect provided by the rule. Unless a party has a stake in the outcome of the litigation, there is no compulsion to respond. Cf. Haverhill v. DiBurro, 337 Mass. at 236, 148 N.E.2d 642 (intervention assures that the action will be "prosecuted with vigor"). Here there was no controversy between the plaintiff and defendants, and the party who did not respond had no interest in the outcome. Moreover, regardless of any conclusive force rule 36 otherwise may have, "the admission does not affect any party other than the one making it." Smith & Zobel, supra, " 36.9, at 402. Thus a party, here the intervener, is not bound by the admissions of a complaint coparty, and may, as was done here, introduce contradictory evidence. See 8 Wright & Miller, supra, " 2264, at 747. See Rafferty v. Sancta Maria Hosp., 5 Mass.App. 624, 628, 367 N.E.2d 856 (1977) ("intervenor in an action or proceeding is, for all intents and purposes, an original party"). | Failure to respond to request for admissions by a nonadversary party does not have usual conclusive effect provided by rule. Rules Civ.Proc., Rule 36, 43A M.G.L.A. | Does failure to respond to a request for admissions by a non-adversary party have usual conclusive effect provided by the rule? | 030537.docx | LEGALEASE-00137549-LEGALEASE-00137550 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9447 | Miller v. Marina Mercy Hosp., 157 Cal. App. 3d 765 | 307A+483 | To allow plaintiff to dismiss without prejudice after deemed admissions result from plaintiff's default would frustrate the purposes of section 2033 in several ways. Plaintiff would have the opportunity to refile the lawsuit at a cost of time and resources to the judicial system that the statute is intended to prevent. Refiling likewise burdens defendant, and removes the express benefit provided to the requesting party when the served party defaults. If the default is excusable, plaintiff is given an opportunity to admit or deny after the 473 hearing. But if the default is not excusable, the party must concede the admissions, no matter how damaging. A plaintiff whose default is not excusable would of course prefer to begin the suit anew, thus circumventing the statutory scheme. Finally, it should be noted that a defendant who defaults on requested admissions has no opportunity to wipe the slate clean unless his default is excusable. | If plaintiff's default in answering request for admissions is excusable, plaintiff is given opportunity to admit or deny after statutory hearing; but if default is not excusable, plaintiff must concede admissions no matter how damaging. West's Ann.Cal.C.C.P. SS 473, 2033. | "If a plaintiff's default in answering request for admissions is excusable, is the plaintiff given opportunity to admit or deny after a statutory hearing?" | Pretrial Procedure - Memo # 4172 - C - SKG.docx | ROSS-003291101-ROSS-003291102 | Order, SA | 0.71 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9448 | Durocher's Ice Cream v. Peirce Const. Co., 106 N.H. 293 | 307A+91 | The use of depositions and discovery as an integral part of pretrial procedure has been given a broad and liberal interpretation in this jurisdiction. Lincoln v. Langley, 99 N.H. 158, 106 A.2d 383; Reynolds v. Boston & Maine Transp. Company, 98 N.H. 251, 98 A.2d 157, 37 A.L.R.2d 1149. While it is impossible to state in advance the precepts of relevancy, it has been the policy in this state not to place any crippling limitations on the use of discovery and depositions. McDuffee v. Boston & Maine R. R., 102 N.H. 179, 152 A.2d 606, 74 A.L.R.2d 872. For the most part the necessary flexibility in controlling the breadth and scope of discovery and depositions has been left with the Presiding Judge of the trial court. Drake v. Bowles, 97 N.H. 471, 92 A.2d 161; Lefebvre v. Somersworth Co., 93 N.H. 354, 41 A.2d 924; State v. Cote, 95 N.H. 108, 58 A.2d 749. As was stated in Town of New Castle v. Rand, 101 N.H. 201, 202, 136 A.2d 914, we "have proceeded on the basic assumption that the orderly dispatch of judicial business is accomplished more efficiently where every plaintiff and every defendant is given adequate opportunity to properly prepare his case before trial.". | Use of depositions and discovery as integral part of pretrial procedure should be given broad and liberal interpretation, and no crippling limitations should be placed on their use. | Should the use of depositions and discovery as an integral part of pre-trial procedure be given broad and liberal interpretation? | Pretrial Procedure - Memo # 4462 - C - SKG.docx | ROSS-003291046-ROSS-003291047 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9449 | Flynn v. Royal Dev. Co., 54 N.Y.S.2d 585 | 307A+91 | The policy of the courts is to allow great latitude in permitting examinations before trial of the parties to an action. It is discretionary with the court to permit an examination of a party who has the entire burden of proof. A defedant may, in a proper case, examine a plaintiff where the answer contains no affirmative defense and only general denials. Public National Bank v. National City Bank, 261 N.Y. 316, 185 N.E. 395. | Where answer contains no affirmative defense and only general denials, defendant, in proper case, may examine plaintiff before trial. | "Where an answer contains no affirmative defense and only general denials, can a defendant examine a plaintiff before trial?" | 031043.docx | LEGALEASE-00138029-LEGALEASE-00138032 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9450 | Shields v. Burlington N. & Santa Fe Ry. Co., 353 Ill. App. 3d 506 | 307A+36.1 | Videotapes of a plaintiff in a personal injury suit include relevant, admissible substantive evidence concerning the extent of the plaintiff's injuries and continuing disability. As the federal court held, in a case Burlington cites:"[T]he weight of authority favors discoverability of surveillance information, principally because such information is probative of a critical issue in a personal injury case"the physical condition of the plaintiff. [Citations.] Disclosure of this information makes a trial "less a game of blind man's b[l]uff and more a fair contest," United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success. [Citation.] Discoverability of surveillance information will serve the collateral interests identified by other courts, including concerns for authenticity, encouraging settlement, and fairness." Wegner v. Cliff Viessman, Inc., 153 F.R.D. 154, 159 (N.D.Iowa 1994). | Weight of authority favors discoverability of surveillance information, principally because such information is probative of a critical issue in a personal injury case-the physical condition of the plaintiff. | Does the weight of authority favor discoverability of surveillance information? | 031236.docx | LEGALEASE-00137174-LEGALEASE-00137175 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9451 | Nelson v. Specialty Records, 11 Cal. App. 3d 126 | 307A+720 | It is the contemporary policy of the law to permit amendments to pleadings even at the commencement of trial so that the litigation may be fully tried, but an amendment is to be granted only if the trial court in the exercise of its discretion finds that it will subserve the interests of justice. If by such amendment, the opposing party requires time for preparation to meet a new issue, a continuance is to be allowed. (Code Civ.Proc. ss 473, 576.) The ruling of the trial judge will not be disturbed upon appeal absent a showing by appellant of a clear abuse of discretion. (Vogel v. Thrifty Drug Co. (1954) 43 Cal.2d 184, 188, 272 P.2d 1; Moss Estate Co. v. Adler (1953) 41 Cal.2d 581, 585, 261 P.2d 732; Plummer v. Superior Court (1963) 212 Cal.App.2d 841, 843, 28 Cal.Rptr. 294; 2 Witkin, Cal. Procedure (1954) Pleading, s 594, p. 1605.) We do not find an abuse of discretion under the circumstances of this case. | If, by permitting amendment to pleadings, opposing party requires time for preparation to meet new issue, continuance is to be allowed. West's Ann.Code Civ.Proc. SS 473, 576. | "If an opposing party requires time for preparation to meet a new issue, is continuance to be allowed?" | Pretrial Procedure - Memo # 4609 - C - CK.docx | ROSS-003291757-ROSS-003291758 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 9452 | Allen v. Rettig, 177 S.W. 215 | 307A+723.1 | The first assignment of error is based on the refusal of the court to continue the case on Allen's motion. In this there was no error. The motion to continue was not sufficient, in that it did not show the materiality of the testimony of either of the two witnesses. It did not state what Allen wanted to prove by Spender, nor in any way undertake to show that his evidence would be material on any issue. The motion stated that the testimony of Harris was material, in that he would testify that he was the agent and attorney for Rettig, and had the note sued on in his possession for settlement, and that he placed the note in the hands of Yarborough for settlement and payment, and that Yarborough received $150 of Allen and interest in 40 acres of land and delivered said note to Allen. The jury found the facts about as stated in the motion. The material issue tendered by Rettig on these facts was a want of authority of Harris and Yarborough to do more than collect the note. The motion did not allege that Harris would testify that he had authority from either Rettig or his wife to sell the note to Allen. The jury found that Allen knew the note had been turned over to Harris for collection only. Yarborough could have no greater authority to dispose of the note than Harris, from whom he got it. There was no fact material to any issue in the case stated in the motion, and the court was not in error in overruling it. | A motion for a continuance held insufficient where it did not show that either of the absent witnesses would testify to any facts material to the issues. | Is a motion for a continuance held insufficient where it does not show that either of the absent witnesses would testify to any facts material to the issues? | 031270.docx | LEGALEASE-00137270-LEGALEASE-00137271 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9453 | Castillo v. Ruggiero, 562 N.E.2d 446 | 307A+725 | The granting or denial of a continuance is within the discretion of the trial court. Chambers v. Public Service Co. of Indiana, Inc. (1976), 265 Ind. 336, 355 N.E.2d 781; Farm Bureau Mutual Insurance Co. v. Dercach (1983), Ind.App., 450 N.E.2d 537, trans. denied. Similarly, the decision to set aside a continuance is within the trial court discretion. Town of Portage v. Clifford (1970), 254 Ind. 443, 260 N.E.2d 566; Barner v. Bayless (1893), 134 Ind. 600, 605, 33 N.E. 907, 909. However, "once a continuance is granted, and the moving party led to rely on the order granting the continuance, the continuance may not be set aside if injustice will thereby be done to either party."Town of Portage, supra, 254 Ind. at 450, 260 N.E.2d at 571. | Once continuance is granted and moving party led to rely on order granting continuance, continuance may not be set aside if injustice will thereby be done to either party. | Can a continuance be set aside if any injustice is done to either party? | 031290.docx | LEGALEASE-00137392-LEGALEASE-00137393 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9454 | Gulf Ins. Co. v. Dunlop Tire & Rubber Corp., 584 S.W.2d 886 | 307A+725 | Appellants insist that they made a sufficient offer to do equity in their motion for new trial. That offer, in our opinion, came too late. The question of whether a continuance should be granted is to be judged in the light of the facts before the trial judge at the time the motion is presented. Sabelli v. Security Insurance Co. of New Haven, 372 S.W.2d 348, 350 (Tex.Civ.App. Austin 1963, writ ref'd n. r. e.). For reasons already explained, we hold that even though a party's failure to prepare for trial was not intentional or the result of conscious indifference, if he knows that the case has been called for trial, he has the duty to appear and present his grounds for postponement, and, if the postponement is denied, the judge's exercise of discretion in this respect must be reviewed on the facts presented to the judge at that time, not on such facts as may be presented later in a motion for new trial. | Question of whether a continuance should be granted is to be judged in light of facts before trial judge at time motion is presented. | "Is the question of whether a continuance should be granted, to be judged in light of facts, before a judge, at the time a motion is presented?" | Pretrial Procedure - Memo # 4641 - C - RF.docx | ROSS-003291170-ROSS-003291171 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9455 | Watson v. FHE Servs., 257 A.D.2d 618 | 157+219.50 | The Supreme Court erred in ordering the defendant to disclose records of repairs made to the elevator in which the plaintiff was allegedly injured, subsequent to the date of the subject accident. It is well settled that "[e]vidence of subsequent repairs is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control" (Cleland v. 60"02 Woodside Corp., 221 A.D.2d 307, 308, 633 N.Y.S.2d 529; see, Niemann v. Luca, 214 A.D.2d 658, 625 N.Y.S.2d 267; Klatz v. Armor El. Co., 93 A.D.2d 633, 462 N.Y.S.2d 677). In the instant case, there is no issue as to the maintenance and control of the elevator at issue. | Evidence of subsequent repairs is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control. | Is evidence of subsequent repairs not discoverable or admissible in a negligence case unless there is an issue of maintenance or control? | 031315.docx | LEGALEASE-00137950-LEGALEASE-00137951 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9456 | Jensen v. Pioneer Dodge Ctr., 702 P.2d 98 | 307A+483 | Rule 36(a) by its express terms embraces only requests for admissions of fact or the application of law to fact. Therefore, a request for an admission of a pure matter of law is improper, although a request for an admission of an ultimate fact or application of law to fact is proper. However, even if a request is objectionable, if a party fails to object and fails to respond to the request, that party should be held to have admitted the matter. Rule 36(b) so provides, except that the Rule also provides that the court may permit withdrawal or amendment of the admission when the presentation of the merits of the action will be subserved thereby. | Even if a request for an admission is objectionable, if a party fails to object and fails to respond to the request, that party should be held to have admitted the matter. Rules Civ.Proc., Rule 36(a, b). | "Even if a request for an admission is objectionable, if a party fails to object on the ground that the request is one to admit a legal conclusion, should that party be held to have admitted the matter?" | 031394.docx | LEGALEASE-00137193-LEGALEASE-00137194 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9457 | Manchenton v. Auto Leasing Corp., 135 N.H. 298 | 307A+91 | A deposition is defined as the testimony of a witness reduced to writing, under oath or affirmation, by oral examination or in response to written interrogatories, and with the opportunity of cross-examination. See Accident Indemnity Insurance Co. v. Feely, 279 Ala. 74, 181 So.2d 889, 891 (1966); State v. Lord, 42 N.M. 638, 660, 84 P.2d 80, 94 (1938). An affidavit is "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation." Mountain States Resources, Inc. v. Ehlert, 195 Mont. 496, 503, 636 P.2d 868, 872 (1981) (quoting State v. Knight, 219 Kan. 863, 867, 549 P.2d 1397, 1401 (1976)). The terms are dissimilar in that a deposition is generally taken with notice to the adverse party, and with an opportunity for cross-examination. See Arizona Real Estate Dept. v. Arizona Land T. & T. Co., 14 Ariz.App. 509, 511, 484 P.2d 662, 664 (1971). Additionally, depositions may be used as evidence at trial, see N.H.R.Ev. 804(b)(1), whereas affidavits are generally not admissible as independent evidence of material facts at trial, see N.H.R.Ev. 802; 3 Am.Jur.2d, Affidavits " 30, at 490 (1986). More important however, as the definitions above reveal, depositions are fundamentally similar to affidavits in that both are written statements, but see Super.Ct.R. 45 (permitting videotaped depositions), that are sworn to before an authorized officer. Thus, although the distinctions between a deposition and an affidavit are well defined, it is apparent that testimony given in the form of a deposition may also satisfy the definition of affidavit. See Chubbuck v. Beaty, 80 Kan. 789, 790, 104 P. 558, 559 (1909) (deposition was a verified, written declaration of a witness and therefore an affidavit). Here, the deposition of Mr. Kania consisted of a statement that was reduced to writing, sworn to, and made before a person having the authority to administer an oath. Accordingly, we hold that the | A "deposition" is defined as the testimony of a witness reduced to writing, under oath or affirmation, by oral examination or in response to written interrogatories, and with the opportunity of cross-examination. | Is a deposition defined as the testimony of a witness reduced to writing? | 031504.docx | LEGALEASE-00137199-LEGALEASE-00137200 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 9458 | Medford v. Superior Court, 140 Cal. App. 3d 236 | 102+175 | Finally, we consider whether the trial court's order is justified under section 1024 of the Code of Civil Procedure which gives the court discretion to impose "the payment of costs occasioned by the postponement" of the trial as a condition for the continuance. As we pointed out above, whether the landlord ever collects the rent and damages that had accrued at the time the continuance was granted is not affected by the granting of the continuance. Costs allowable under section 1024 are intended to compensate the other party for his expenses in preparing for trial on the appointed day. They may include transportation and hotel costs, attorneys fees, witness fees and jury fees. (4 Witkin, Cal. Procedure (2d ed.) Trial, " 29 and Supp. (1981) " 29.) But we have found no case which even remotely suggests that a continuance can be conditioned on depositing with the court the damages alleged by the plaintiff. | Costs allowable under section of Code of Civil Procedure giving court discretion to impose the "payment of costs occasioned by the postponement" of trial as condition for continuance include transportation and hotel costs, attorney fees, witness fees and jury fees. West's Ann.Cal.C.C.P. S 1024. | "Do costs allowable as condition for continuance include attorney fees, witness fees and jury fees?" | 031506.docx | LEGALEASE-00137203-LEGALEASE-00137205 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9459 | Davies v. Columbia Gas & Elec. Co., 68 N.E.2d 571 | 307A+1 | At common law there was no right to take the testimony of any witnesses before trial, and the only relief was by appeal to equity by means of a so-called bill of discovery. In such a case the necessity for securing the testimony or making the discovery must be first proved and equitable maxims satisfied, such, for instance, as "he who seeks equity must do equity." Hence any injustice in the plaintiff's case caused a denial of the relief sought, namely, the right to discover or take testimony. | At common law there was no right to take testimony of any witness before trial by deposition, and the only relief was by appeal to equity by means of a bill of discovery, in which case the necessity for securing the testimony or making the discovery was first required to be proved and equitable maxims satisfied. | "At common law, is there no right to take testimony of any witness before trial by deposition?" | 031519.docx | LEGALEASE-00137250-LEGALEASE-00137251 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9460 | Kenmore Estates v. Montrose Indus. Bank, 56 N.Y.S.2d 621 | 307A+93 | Our courts have adopted a liberal construction of the words "special circumstances', and in a case where the ends of justice and orderly procedure upon the trial make it advisable, an examination will be granted where under any reasonable construction it can be said that special circumstances exist. Mayer v. New York Canners, Inc., 217 App.Div. 202, 203, 216 N.Y.S. 568, 569; Bloede Co. v. J. P. Devine Co., 211 App.Div. 180, 183, 206 N.Y.S. 739, 742; Ettinger v. Commercial Travelers Mutual Accident Ass'n of America, 266 App.Div. 876, 43 N.Y.S.2d 29. So, in the present case, the court is of the opinion that the facts related above are such special circumstances as justify the granting of the present application. Gillette v. Warren, 175 Misc. 614, 23 N.Y.S.2d 828, affirmed 260 App.Div. 900, 23 N.Y.S.2d 847. | Where ends of justice and orderly procedure upon trial make it advisable, examination of witness before trial will be granted where under any reasonable construction it can be said that special circumstances exist. Civil Practice Act, S 296. | Will examination before trial be granted where special circumstances are presented? | 031521.docx | LEGALEASE-00137254-LEGALEASE-00137255 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |
| 9461 | Parodis v. Hearn Dep't Stores, 178 Misc. 191 | 307A+99 | It admits of no doubt, I think, that where there are two or more defendants the provisions dealing with examination of a party by an adverse party is not applicable to the examination of a defendant by his co-defendant. See Roberts v. Thompson, 3 How.Prac. 321; Redfield v. National Petroleum Corp., 211 App.Div. 152, 206 N.Y.S. 827. The rule is clearly stated in 18 Corpus Juris, 1084, as follows: "Co-defendants are not adversary parties within the meaning of a statute permitting an examination of the adverse party before trial, unless there are some rights to be adjusted between them in the action, as where a third person is made defendant to a counterclaim."See also 27 C.J.S., Discovery, " 27.Where there are two or more defendants, the statutory provisions dealing with examination of a party by an adverse party is not applicable to examination of a codefendant by his codefendant, since codefendants are not "adverse parties" within meaning of statute unless there are some rights to be adjusted between them in the action. | Where there are two or more defendants, the statutory provisions dealing with examination of a party by an adverse party is not applicable to examination of a codefendant by his codefendant, since codefendants are not "adverse parties" within meaning of statute unless there are some rights to be adjusted between them in the action. Civil Practice Act, S 288. | Does the code providing for the examination of an adverse party before trial not apply to the examination of a co-defendant? | 031526.docx | LEGALEASE-00137264-LEGALEASE-00137265 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 9462 | Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 295 Ill. App. 3d 828 | 307A+36.1 | Illinois Supreme Court Rule 187(b) provides: "Hearings on motions to dismiss or transfer the action under the doctrine of forum non conveniens shall be scheduled so as to allow the parties sufficient time to conduct discovery on issues of fact raised by such motions." 107 Ill.2d R. 187(b). This rule gives the trial court discretion on whether to allow discovery on forum non conveniens issues. See 107 Ill.2d R. 187, Committee Comments. | Trial court has discretion on whether to allow discovery on forum non conveniens issues. Sup.Ct.Rules, Rule 187(b). | Does the trial court have discretion on whether to allow discovery on forum non conveniens issues? | 031951.docx | LEGALEASE-00138060-LEGALEASE-00138061 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 9463 | Gowin v. Hazen Mem'l Hosp. Ass'n, 349 N.W.2d 4 | 307A+27.1 | Initially we note that a trial court has broad discretion in regard to the scope of discovery. Gerhardt v. D.L.K., 327 N.W.2d 113, 114 (N.D.1982). Gowin argued that the tax records were necessary to show whether or not the Hospital was financially sound. Pretrial discovery of a defendant's financial condition is generally not available to a plaintiff who seeks to recover only compensatory damages, as opposed to exemplary or punitive damages. See Doak v. Superior Court For County of Los Angeles, 257 Cal.App.2d 825, 65 Cal.Rptr. 193 (1968); Annot., 27 A.L.R.3d 1375 (1969). We agree with this concept. In view of the fact that Gowin's complaint seeks only compensatory damages, and the fact that the date set by the trial court for completion of discovery was almost a year and a half after our Court reversed and remanded this case, we conclude that the trial court did not abuse its discretion. | Pretrial discovery of defendant's financial condition is generally not available to plaintiff who seeks to recover only compensatory damages as opposed to exemplary or punitive damages. | Is a defendant's financial condition a proper subject of discovery on the issue of punitive damages? | 031963.docx | LEGALEASE-00138087-LEGALEASE-00138088 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9464 | Krichbaum v. U.S. Forest Serv., 973 F. Supp. 585 | 149E+689 | Krichbaum next claims in Count III that the Forest Service's failure to prepare an environmental impact statement violates 42 U.S.C. " 4332(2)(C). The Forest Service must prepare an environmental impact statement for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. " 4332(2)(C). If, however, the agency determines based on an EA that the action will have no significant impact, then the more expensive and detailed environmental impact statement is not required. See 40 C.F.R. "" 1508.9, 1508.13; Kelley, 844 F.Supp. at 1110"11. Having reviewed the EA, the court concludes that the Forest Service took the requisite "hard look" at the relevant environmental issues and that the 52"page EA with eight appendices contains the documentation and "reasoned elaboration required to support the agency's determination of no significant impact." See Town of Orangetown v. Gorsuch, 718 F.2d 29, 35 (2d Cir.1983) (holding court's role is to ensure that agency took ""hard look" at the environmental consequences" and "convincingly documented its" FONSI), cert. denied,465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 124 (1984). A FONSI is "a factual finding made by an agency with particular expertise in environmental matters," and the court may overrule the agency finding only if it was arbitrary, capricious or otherwise contrary to law. North Carolina v. Federal Aviation Administration, 957 F.2d 1125, 1128 (4th Cir.1992). The court finds that the FONSI and the decision not to prepare a full-blown environmental impact statement are not arbitrary or capricious, and the Forest Service is entitled to summary judgment on this count. | Finding of no significant impact (FONSI) pursuant to NEPA is factual finding made by agency with particular expertise in environmental matters, and court may overrule agency finding only if it was arbitrary, capricious or otherwise contrary to law. National Environmental Policy Act of 1969, S 102, 42 U.S.C.A. S 4332; 40 C.F.R. SS 1508.9, 1508.13. | What is Finding Of No Significant Impact (FONSI)? | Woods and Forests-Memo 52-ANM.docx | ROSS-003304785-ROSS-003304786 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9465 | Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Commerce, Purchase Directorate, 360 F.2d 103 | 170B+2787 | In Farr & Co. v, Cia Intercontinental de Navegacion, 243 F.2d 342 (2 Cir. 1957), this court held that in a suit under the Arbitration Act, where the parties had agreed to arbitrate and that "this submission may be made a rule of court by either party," by agreeing to arbitrate in New York a party "makes himself as amenable to suit as if he were physically present in New York." 243 F.2d at 347. Farr was followed in Orion S. & T. Co. v. Eastern States Petro. of Panama, 284 F.2d 419 (2 Cir. 1960), where the contract read, "for the purpose of enforcing awards this agreement shall be made a Rule of of Court." Although the suit was to compel arbitration, not to enforce an award, the court concluded that as in Farr the parties were as if physically present. We conclude that this states a rule of federal law, under the Arbitration Act. | Under Arbitration Act, if party agrees to arbitrate in a certain state he makes himself as amenable to suit as if he were physically present there. 9 U.S.C.A. S 4. | Can a party under the Arbitration Act who agrees to arbitrate in a certain state make himself as amenable to suit as if he were physically present there? | Alternative Dispute Resolution - Memo 642 - SB.docx | LEGALEASE-00027904-LEGALEASE-00027905 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9466 | Seaboard Airline R. Co. v. Stoddard, 82 Ga. App. 743 | 302+9 | The second ground of special demurrer is as follows: "Defendant demurs specially to the allegations contained in said petition as amended as a whole and particularly to the allegation contained in paragraph 7 of the petition as amended which alleges that the burns inflicted upon petitioner's late husband and his death were due solely and entirely to the negligence of the defendant, its agents, servants and employees, upon the ground that said allegation is a conclusion of the pleader, is contradictory, vague, indefinite, when considered together with other allegations in said paragraph and in said petition, and said allegation should therefore be stricken from the petition." Granting that the allegation so attacked is a conclusion of the pleader, we think that in this regard it is properly pleaded. "Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion." Southern States Portland Cement Co. v. Helms, 2 Ga.App. 308(1), 58 S.E. 524. This view is strengthened, we think, by what is said in the first division of this opinion regarding the general demurrer. As to the contention that such allegation is contradictory, vague, and indefinite when considered in connection with the other allegations of the paragraph and of the petition, the demurrer fails to point out wherein or how such allegations are so defective, and it is not apparent to us that they are. A special demurrer must put its finger on the exact point of weakness. A demurrer being a critic must itself be free from imperfections. Southern States Portland Cement Co. v. Helms, supra, 2 Ga.App. at pages 314, 315, 58 S.E. 524. | Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion. | Can legal results arising from the facts alleged be pleaded in general terms or in the form of a legal conclusion? | Pleading - Memo 355 - RMM.docx | ROSS-003290589-ROSS-003290590 | Order, SA, Sub | 0.93 | 1 | 0 | 1 | 1 | 1 |
| 9467 | Saliba v. Saliba, 202 Ga. 279 | 302+192(3) | The remaining grounds of special demurrer attack certain allegations of the petition as being mere conclusions of the pleader. We deem it unnecessary to deal specifically with each of these several grounds of special demurrer, as they are without merit. A conclusion in a pleading is not subject to special demurrer if the inference stated therein may be legitimately drawn from the special facts pleaded or from the exhibits attached to and made a part of the pleadings. Western & Atlantic Railroad v. Reed, 33 Ga.App. 396, 404, 126 S.E. 393. Considering the petition as a whole and the exhibits, the allegations attacked are not mere conclusions of the pleader and are not subject to the criticism lodged against them. Accordingly, the judge did not err in overruling them. | A conclusion in a pleading is not subject to special demurrer if the inference stated therein may be legitimately drawn from the special facts pleaded or from exhibits attached to and made part of pleadings. | Will a conclusion in a pleading be subject to special demurrer? | 023392.docx | LEGALEASE-00138358-LEGALEASE-00138359 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 9468 | Morgan v. City of Alvin, 175 S.W .3d 408 | 307A+724 | We construe appellant point of error to be a complaint that the trial court denied appellant motion for continuance. The motion was not supported by an affidavit. Rule 251 provides that a continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex.R. Civ. P. 251. General allegations in the motion are not sufficient; the motion or the affidavit must state specific reasons for the request. See Blake v. Lewis, 886 S.W.2d 404, 409 (Tex.App.-Houston 1st Dist. 1994, no writ). Granting or denying a motion for continuance is within the sound discretion of the trial court. If a motion for continuance is not verified or supported by affidavit, the appellate court will presume that the trial court did not abuse its discretion in denying the motion. Southwest Country Enters. Inc. v. Lucky Lady Oil Co., 991 S.W.2d 490, 493 (Tex.App. Fort Worth 1999, pet. denied). In this case, appellant did not support his motion for continuance with an affidavit. Therefore, we presume that the trial court did not abuse its discretion in denying the motion. Accordingly, we overrule appellant second point of error. | General allegations in motion for continuance are not sufficient; motion or affidavit must state specific reasons for request. Vernon's Ann.Texas Rules Civ.Proc., Rule 251. | Are general allegations in motion for continuance sufficient and the motion or affidavit must state specific reasons for a request? | 030597.docx | LEGALEASE-00138213-LEGALEASE-00138214 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9469 | In re Russo, 182 Misc. 632 | 307A+91 | It may well be that the issuance of the subpoena, extrinsically of the pending action, was motivated by a very understandable reason. The burden of establishing the possessory right to the money in question will rest upon trial in the pending action squarely upon the shoulders of the petitioner as plaintiff therein. This conclusion is manifested by the provisions of section 435"4.0, subdiv. b, of the Administrative Code of the City of New York. See also Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523. Ordinarily the right to examine an adverse party before trial is given only to that party who bears the affirmative burden upon an issue. In consequence of the foregoing rule of practice, an attempt by the respondent to obtain an examination before trial of plaintiff in the pending action as to the nature of plaintiff's claim therein would very probably have proved abortive. Respondent should not be allowed to circumvent the preclusive applicability of that rule by the course here sought to be pursued. A purely fishing expedition, even if collaterally conducted under the present guise, cannot be permitted. | Ordinarily the right to examine adverse party before trial is given only to that party who bears affirmative burden on such issue. | Is the right to examine the adverse party before trial given only to that party who bears an affirmative burden on such issue? | Pretrial Procedure - Memo # 4510 - C - NC.docx | ROSS-003331551-ROSS-003331552 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9470 | Wisegarver v. Yinger, 122 S.W. 925 | 307A+74 | There is reversible error shown by the thirty"ninth, fortieth, forty"first, and forty"second assignments of error. The first two assignments named complain of the action of the trial court in failing to sustain plaintiff's motion to quash the depositions of Mrs. McAuley and Mrs. Walton and M. E. Yinger, on the ground that the certificate of the notary indorsed on the envelopes, inclosing the depositions is not accompanied with an impression of his seal of office. Article 2284 of the statutes as amended (Laws 1907, p. 186, c. 91) states that the officer shall certify on the envelope inclosing depositions that he in person deposited the same in the mail for transmission, stating the date when, and the post office in which, the same is deposited for transmission. It is provided by article 3507 of the Revised Statutes of 1895 that every notary public shall provide a seal of office, and he shall authenticate all his official acts therewith. This last statute should be read in connection with the first. It is true that the first says that the officer shall certify, but it is clear from article 3507 that all of his official acts shall be authenticated by his seal of office. Indorsing the certificate upon the envelope is certainly an official act; it is one required and demanded by the law, and we know of no reason that can be given why the act of making the certificate in a case of this character would not be official. He does not do it as an individual, but it is solely as an official that he performs this service. | Under Rev.St.1895, art. 2284, Rules of Civil Procedure, rule 196, requiring the officer before whom depositions are taken to certify on the envelope inclosing the depositions that he in person deposited the same in the mail for transmission, etc., and article 3507, Vernon's Ann.Civ.St. art. 5960, providing that every notary public shall authenticate his official acts with his seal of office, the certificate of a notary on the envelope inclosing depositions must be authenticated by his official seal. | Is the officer before whom depositions are taken required to certify on the envelope inclosing the depositions that he in person deposited the same in the mail for transmission? | Pretrial Procedure - Memo # 4922 - C - SKG.docx | ROSS-003291158-ROSS-003291159 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9471 | Kasson State Bank v. Haugen, 410 N.W.2d 392 | 307A+716 | The trial court abused its discretion in refusing to allow this pro se litigant a continuance so that he could hire a lawyer and prepare a defense. A trial court has a duty to ensure fairness to a pro se litigant by allowing reasonable accommodation so long as there is no prejudice to the adverse party. Blair v. Maynard, 324 S.E.2d 391, 395-96 (W.Va.1984); see Liptak v. State ex rel. City of New Hope, 340 N.W.2d 366, 367 (Minn.Ct.App.1983) (all courts provide some latitude and consideration to pro se litigants); cf. Rice v. Perl, 320 N.W.2d 407 412 (Minn.1982) (continuances for discovery should be liberally granted to diligent parties acting in good faith). Haugen's undisputed testimony was that he did not learn of the summary judgment motion until he returned from a three-week absence the day before the hearing. Under the circumstances, he acted diligently in immediately telephoning the plaintiff to ask for a continuance and in making the motion for a continuance in open court the next day. | Court abused discretion in refusing to allow pro se litigant continuance so he could hire lawyer and prepare defense where party testified that he did not learn of summary judgment motion until return from three-week absence day before hearing, and he acted diligently in immediately telephoning plaintiff to ask for continuance and in making motion for continuance in open court next day. | Will the court abuse its discretion in refusing to grant pro se plaintiff's motion for continuance? | 031776.docx | LEGALEASE-00138491-LEGALEASE-00138492 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 9472 | Ohio Valley Mills v. Louisville Ry. Co., 168 Ky. 758 | 307A+74 | If, instead of referring to the deposition Young had given, counsel had asked him if on that day (giving the date) and at Mrs. Avey's office and in her presence he had said that his car was running at a speed of 3 or 4 miles an hour, can it be doubted that Mrs. Avey would be a competent witness to contradict Young in case he had made the statement attributed to him? And if Jones, who heard Young's statement while sitting in the stenographer's office, is competent to impeach Young, why is not the stenographer likewise competent? And if a witness can be impeached concerning unsworn statements, how can it be said that he cannot be impeached because he has sworn to the statement attributed to him, thus making it competent to contradict the unsworn statements of the witness, but not competent to contradict his sworn statements, for the purpose of affecting his credibility? The effect of the trial court's ruling was to prevent the plaintiff from contradicting Young in any way, because his deposition had not been filed. But section 585 of the Code only prohibits the reading of a deposition, which was not filed before the commencement of the trial; it does not prevent a party from proving any fact shown in a deposition not filed in time, or not filed at all, by any other method permitted by law. | Civ.Code Prac. S 585, does not prevent a party from proving any fact shown in a deposition not filed by any method permitted by law. | Does the provision under Civil Code of Practice prevent a party from proving any fact shown in a deposition not filed by any method permitted by law? | 031792.docx | LEGALEASE-00138242-LEGALEASE-00138243 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 9473 | City of Louisville v. Laufer, 140 Ky. 457 | 307A+74 | It appears that prior to the trial appellant took the deposition of appellee. While appellee was on the stand, appellant offered to introduce the deposition in evidence. The deposition, however, had not been filed with the papers in the case before the trial. In refusing to permit the deposition to be read the trial court simply followed the provisions of section 585 of the Civil Code of Practice, which provides: "No deposition shall be read on a trial, unless, before the commencement thereof, it be filed with the papers of the case." After the court refused to permit the deposition to be filed, appellant's counsel sought to impeach appellee by introducing the official stenographer, who reported the deposition in question, and attempted to prove by him that in giving the deposition referred to appellee made statements inconsistent with his testimony on the stand. As appellant did not lay a proper foundation for this impeaching testimony by asking appellee if, at a certain time and place, in the presence of certain people, he had not made certain statements, it follows that the court properly excluded the testimony sought to be introduced. The instructions given by the court are in the usual form, and properly presented the issues involved. | Where a deposition had not been filed before trial, the court properly refused to permit it to be read under Civ.Code Prac. S 585, declaring that no deposition shall be read on the trial unless, before the commencement thereof, it be filed in the case. | "Where a deposition has not been filed before trial, can the court properly refuse to permit it to be read?" | 031799.docx | LEGALEASE-00138362-LEGALEASE-00138363 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9474 | State ex rel. Ford v. Adolf, 724 S.W.2d 612 | 307A+36.1 | Past financial information can be relevant in determining current financial worth. Such information can serve as a monitor of the course and direction of assets and can provide a check on subjective statements of current net worth. | Past financial information can be relevant in determining current financial worth and thus may be discoverable in action seeking punitive damages. | Can past financial information be relevant in determining the current financial worth and thus may be discoverable in an action seeking punitive damages? | Pretrial Procedure - Memo # 5124 - C - ES.docx | ROSS-003291800-ROSS-003291801 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9475 | Wilson v. United States, 230 F.2d 521 | 63+1(2) | On these facts, we think, under the cited cases, Wilson clearly came within the group of persons who are covered by the terms of 18 U.S.C.A. " 202. It is immaterial either that he may not have had actual authority to carry out his commitments under the bribery scheme, or that he may have taken no affirmative action to perform his part of his corrupt bargain. | Where defendant was still an officer on active duty with the Army and was a close personal friend of the current insurance officer, defendant could be convicted of bribery in connection with the sale of life insurance to military personnel even though defendant was no longer directly in the chain of supervision of the regulation of insurance sales, where it was still within his practical power to influence the regulation thereof; it being immaterial that he had no actual authority to carry out his commitments under the bribery scheme, or that he may have taken no affirmative action to perform his part of his corrupt bargain. 18 U.S.C.A. S 202. | Does actual authority to carry out commitments under the bribery scheme matter for bribery? | Bribery - Memo #576 - C CSS.docx | ROSS-003290898-ROSS-003290899 | Condensed, Order, SA | 0.44 | 1 | 1 | 0 | 1 | 1 |
| 9476 | United States v. Fattah, 223 F. Supp. 3d 336 | 63+1(1) | Section 1346 provides that "a scheme or artifice to defraud," as used in " 1343, the wire fraud statute, "includes a scheme or artifice to deprive another of the intangible right of honest services." See 18 U.S.C. " 1346. The Supreme Court held in Skilling v. United States, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), that "" 1346 covers only bribery and kickback schemes." Id. at 367, 130 S.Ct. 2896. Under the bribery statute, 18 U.S.C. " 201, it is unlawful for a public official to accept anything of value in return for being influenced in the performance of an official act. A promise to perform an official act is sufficient to constitute a bribery offense if done in exchange for a thing of value, whether or not the official act ever occurs. See McDonnell v. United States, --- U.S. ----, 136 S.Ct. 2355, 2371, 195 L.Ed.2d 639 (2016). The Supreme Court in McDonnell reiterated: "Under this Court's precedents, a public official is not required to actually make a decision or take an action on a `question, matter, cause, suit, proceeding or controversy'; it is enough that the official agreed to do so." Id. An act to be official "must involve a formal exercise of governmental power" and be something specific and focused. See id. at 2372; United States v. Birdsall, 233 U.S. 223, 234, 34 S.Ct. 512, 58 L.Ed. 930 (1914). | Under the bribery statute, it is unlawful for a public official to accept anything of value in return for being influenced in the performance of an official act; a promise to perform an official act is sufficient to constitute a bribery offense if done in exchange for a thing of value, whether or not the official act ever occurs. 18 U.S.C.A. S 201. | Is a promise to perform an official act sufficient to constitute a bribe? | 012167.docx | LEGALEASE-00139193-LEGALEASE-00139194 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 9477 | Humphrey v. Ahlschlager, 778 S.W.2d 480 | 307A+723.1 | The granting of a continuance rests within the sound discretion of the trial court. Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1963). Mere absence of a party does not automatically entitle him to a continuance. Erback v. Donald, 170 S.W.2d 289, 291 (Tex.Civ.App."Fort Worth, writ ref'd w.o.m.). Also, the motion should contain some prognosis as to when or if the witness will ever be able to testify. Jones v. John's Community Hosp., 624 S.W.2d 330, 332 (Tex.App."Waco 1981, no writ). | Motion for continuance on ground of absence of party should contain some prognosis as to when or if witness will ever be able to testify. Vernon's Ann.Texas Rules Civ.Proc., Rule 252. | Should a motion for continuance on the ground of absence of a party contain some prognosis as to when or if witness will ever be able to testify? | Pretrial Procedure - Memo # 4323 - C - BP.docx | ROSS-003301250-ROSS-003301251 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 9478 | Anderson v. Am. Soc'y of Plastic & Reconstructive Surgeons, 807 P.2d 825 | 106+35 | The approach taken by the federal courts is motivated by concern for flexibility, judicial economy, and preservation of substantial rights. In the federal trial court's discretion, under rule 12 it may determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing. If it proceeds on documentary evidence alone (i.e., the first two methods), the plaintiff is only required to make a prima facie showing of personal jurisdiction. The plaintiff's factual allegations are accepted as true unless specifically controverted by the defendant's affidavits or by depositions, but any disputes in the documentary evidence are resolved in the plaintiff's favor. The trial court must not weigh the evidence unless a hearing is held. | Court may determine the issue of personal jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing; using the first two methods, plaintiff is only required to make a prima facie showing of personal jurisdiction, and plaintiff's factual allegations are accepted as true unless specifically controverted by the defendant's affidavits or by depositions, and any disputes in the documentary evidence are resolved in the plaintiff's favor. | "Can trial courts determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing?" | Pretrial Procedure - Memo # 5009 - C - NS.docx | ROSS-003329201-ROSS-003329202 | Order, SA, Sub | 0.39 | 1 | 0 | 1 | 1 | 1 |
| 9479 | W. Pipe & Supply v. Heart Mountain Oil Co., 179 Neb. 858 | 307A+742.1 | This appeal is perfected on behalf of defendants by counsel who took no part in the trial of the case. Defendants' brief raises some issues which may not be pertinent under the issues as defined by the pretrial limitation set out avove. In Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N.W.2d 245, this court held: "The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at the trial. "The participants in a pretrial conference must adhere to the spirit of that procedure and are held to have waived questions not there presented. | Purpose of pretrial conference is to simplify issues, amend pleadings when necessary, and avoid unnecessary proof of facts at trial. | Is one of the purpose of pretrial conference is to avoid unnecessary proof of facts at the trial? | Pretrial Procedure - Memo # 5502 - C - VP.docx | ROSS-003289553-ROSS-003289554 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9480 | Feres v. United States, 340 U.S. 135 | 393+941 | We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command. Accordingly, the judgments in the Feres and Jefferson cases are affirmed and that in the Griggs case is reversed. | The government is not liable under Tort Claims Act for injuries to servicemen arising out of or in course of activity incident to military service. 28 U.S.C.A. SS 1291, 1346, 1402, 1491, 1504, 2110, 2401, 2402, 2411, 2412, 2671-2680. | Can the government be held liable under the Tort Claims Act to a claimant sustaining injuries while in active military service? | 008514.docx | LEGALEASE-00139373-LEGALEASE-00139374 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 9481 | Cinciarelli v. Carter, 662 F.2d 73 | 34+11(1) | The armed services grant Standard Written Agreements to Reserve Officers pursuant to 10 U.S.C. ss 679-680 (1976). These agreements provide for definitive terms of active duty and ensure that the Reservist will not be released involuntarily except according to specified procedures, including a hearing before a board of officers. 10 U.S.C. ss 679(a), 680(a) (1976). In the absence of a SWAG, a Reservist may be released from active duty at any time, and such a change in status is committed to the sole discretion of the President or the Secretary of the appropriate armed service. See Abruzzo v. United States, 513 F.2d 608, 611 (Ct.Cl.1975); Woodward v. Moore, 451 F.2d 346, 347-48 (D.D.C.1978). | In absence of standard written agreement, armed service reservists may be released from active duty at any time, and such change in status is committed to sole discretion of president or secretary of appropriate armed service. 10 U.S.C.A. SS 679(a), 680(a), 681. | Can a reserve officer be released from active duty at any time? | 008576.docx | LEGALEASE-00139532-LEGALEASE-00139533 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9482 | In re Labrum & Doak, LLP, 237 B.R. 275 | 289+1175(6) | Limited partners surrender the right to participate in the conduct of the partnership's business in exchange for limited liability. See, e.g., 15 Pa.C.S.A. " 8523(b). See also Kenworthy v. Hargrove, 855 F.Supp. 101, 105 (E.D.Pa.1994); and In re Estate of Hall, 517 Pa. 115, 134, 535 A.2d 47, 56 (1987). If a limited partner participates in the control of the partnership's business, then the partner must be considered as a general partner and accordingly is subject to personal liability therefor. See H. Thompson, New Business Options in Pennsylvania: A Critical Analysis of the Pennsylvania Limited Liability Company and Limited Liability Partnership Act of 1994, 57 U.PITT.L.REV. 129, 177 (1994). | Under Pennsylvania law, if a limited partner participates in the control of the partnership's business, then the partner must be considered as a general partner and, accordingly, is subject to personal liability therefor. | Does a limited partner become similar to a general partner if he participates in the control of the partnership business? | Partnership - Memo 366 - SB.docx | ROSS-003289166-ROSS-003289167 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 9483 | P. Outcalt & Co. v. Burnet & Bros., 12 Ohio Dec.Reprint 207 | 289+1145 | Section 14 of the act to authorize and regulate limited partnerships, Swan 595, (sec. 3154, Rev. Stat.), provides that "A special partner may, from time to time, examine into the state and progress of the partnership concerns, and may advise as to their management; but he shall not transact any business on account of the partnership, nor be employed for that purpose as agent, or otherwise; if he shall interfere contrary to these provisions, he shall be deemed a general partner." | Where general partners of a firm organized under the act permitting limited partnerships abandoned the business and left the state without publishing notice of dissolution, leaving certain memoranda to be delivered to a special partner, showing liabilities of the concern and some assets, and also a date for certain property to be sold by him to liquidate the debts, his acts in selling the same and making the application of the proceeds was not such an interference with the affairs of the firm as to render him individually liable, under Rev.St. S 3154 (See Gen.Code, S 8051), providing that, if a special partner transact any business on account of the partnership, he shall be deemed a general partner. | When is a special partner deemed liable as a general partner? | 022327.docx | LEGALEASE-00139599-LEGALEASE-00139601 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 9484 | Earl v. Winne, 34 N.J. Super. 605 | 307A+749.1 | At the trial the plaintiff was limited to proofs of these issues and was not permitted, on motion after opening to the jury on the issues stated in the pretrial order, to amend the order to include the additional issue whether the indictment was kept open to induce or extort from the plaintiff releases of civil rights of action against the defendant. Such an amendment, creating a new issue at such time, after the issues had been settled by agreement of the parties at the pretrial conference, would have constituted a manifest injustice to the defendant, where such issues were pleaded in the complaint but excluded from the issues for trial by the pretrial order. The pretrial order supersedes the pleadings when inconsistent therewith and controls the subsequent course of action unless modified at or before the trial or during the trial to prevent manifest injustice. R.R. 4:29-1, 4:15-2; Altana v. McCabe, 132 N.J.L. 12, 38 A.2d 192, Sup.Ct.1944; Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 104 A.2d 662 (1954). Therefore the cause of action for malicious abuse of process was tried on the issues delineated in the pretrial order. | The pretrial order supersedes the pleadings when inconsistent therewith and controls subsequent course of action unless modified at or before the trial or during trial to prevent manifest injustice. R.R. 4:29-1. | Can a pretrial order supersede inconsistent pleadings? | Pretrial Procedure - Memo # 2265 - C - SN.docx | ROSS-003331604-ROSS-003331605 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9485 | Wieneke v. Chalmers, 8, 73 N.M. 8 | 307A+91 | Appellant first complains that the court abused its discretion in interrupting the trial so as to permit appellee to take appellant's deposition. We find no merit in this point. Rule 26(a) ( " 21"1"1(26)(a), N.M.S.A.1953) in no way limits the taking of depositions to any period prior to commencement of trial. The rule should be construed so as "to secure the just, speedy and inexpensive determination of every action," and if in the sound discretion of the trial judge a trial should be continued so as to permit additional discovery, particularly where the need results from a previous failaure to respond to efforts to take a deposition, the determination so made should not be reversed. National Bond Holders Corporation v. McClintic (C.C.A. 4, 1938) 99 F.2d 595. Whether a trial should be interrupted so as to permit further discovery must lie in the sound discretion of the trial judge. Knox v. Anderson (D.C.Hawaii 1957), 21 F.R.D. 97. True, more than two years elapsed after the case was filed before appellee employed New Mexico counsel. However, during most of this period appellant took no affirmative action to bring the case to trial. Within a reasonable time after local counsel entered the case, an effort was made to take appellant's deposition. This brought forth a motion to quash the taking of the deposition and, notwithstanding the motion had not been ruled upon on the date appellant was called upon to appear, the deposition was not taken. Although appellant subsequently answered written interrogatories, appellee still desired to take the deposition. In Salitan v. Carrillo, 69 N.M. 476, 368 P.2d 149, we recognized the advantages of the deposition method of discovery over the written interrogatory method in a quote from Worth v. Trans World Films (D.C.S.C.N.Y.1951), 11 F.R.D. 197, 198; that the right to take oral depositions is not foreclosed by first submitting written interrogatories which are answered; and that the discretion of the trial judge will not be | Rule allowing taking of depositions should be construed so as to secure the just, speedy and inexpensive determination of every action. Rules of Civil Procedure, rule 26(a). | "Should the rule allowing taking of depositions be construed so as to secure the just, speedy and inexpensive determination of every action?" | Pretrial Procedure - Memo # 4553 - C - SKG.docx | ROSS-003289180-ROSS-003289182 | Order, SA, Sub | 0.94 | 1 | 0 | 1 | 1 | 1 |
| 9486 | Field v. Tenney, 47 N.H. 513 | 307A+74 | A deposition will not be rejected because the initial letter of the middle name of one of the parties, in the address to the court, is mistaken, it appearing there was no such suit in that court. | A mistake in the initial letter of the middle name of one of the parties to a suit, in the direction of a deposition, is no ground for rejecting the deposition. | "Is a mistake in the initial letter of the middle name of one of the parties to a suit, in the direction of a deposition, no ground for rejecting the deposition?" | Pretrial Procedure - Memo # 5261 - C - SHS.docx | ROSS-003302217-ROSS-003302218 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 9487 | Downs v. Hawley, 112 Mass. 237 | 307A+74 | A deposition was returned to court in a sealed envelope, but the answers were not annexed either to the commission or to the interrogatories. Held, that the deposition was not to be rejected simply because the answers were not so annexed. | In the absence of any showing of fraud, the fact that the answers were not annexed to the commission nor to the interrogatories is no ground for the rejection of a deposition returned to court in a sealed envelope. | "n the absence of any showing of fraud, is the fact that the answers were not annexed to the commission nor to the interrogatories no ground for the rejection of a deposition?" | Pretrial Procedure - Memo # 5265 - C - SU.docx | LEGALEASE-00029408-LEGALEASE-00029409 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9488 | Classic Commercial Servs. v. Baldwin, 336 Ga. App. 183 | 307A+554 | As a rule, "the testimony of a party who offers [himself] as a witness in [his] own behalf at trial is to be construed most strongly against [him] when it is self-contradictory, vague or equivocal." (Citation and punctuation omitted.) Conrad v. Conrad, 278 Ga. 107, 110, 597 S.E.2d 369 (2004). This principle applies in the context of a motion to dismiss on jurisdictional grounds. Id. While Baldwin's second affidavit appears to be carefully crafted not to be patently inconsistent with his first affidavit, it is vague and equivocal as to whether he remained a resident of Georgia when the complaint was filed. See Chandler v. Gately, 119 Ga.App. 513, 520(3), 167 S.E.2d 697 (1969) ("Being peculiarly in a position to state fairly and definitely the facts which he professes to know, [a party testifying in his own favor] is under a duty of so stating them as to give a candid and intelligible account of what occurred."). Baldwin did not show that he had left his residence in Georgia and completed his move to North Carolina before 2014, and he "retained his domicile and legal residence in [Gwinnett County] until he succeeded in acquiring residence and domicile in [North Carolina]." Shirley v. State, 1 Ga.App. 143, 145, 57 S.E. 912 (1907) (where grand juror had sold his lands in Rabun County where he had resided, with the intent of moving to Habersham County, and he had loaded his household goods on a train with the intent of sending them there, but remained in Rabun County to look after a sawmill and some cattle, and stayed in a hotel in Rabun County when court was in session, he remained a citizen of Rabun County at the time of his service as a juror). In view of the foregoing, Baldwin did not show, through his written submissions, that he was no longer a resident of Georgia when the complaint was filed, and the trial court erred in so finding. | As a rule, the testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal, and this principle applies in the context of a motion to dismiss on jurisdictional grounds. | Is the testimony of a party who offers himself as a witness in his own behalf at trial to be construed most strongly against him when it is self-contradictory? | 032719.docx | LEGALEASE-00139641-LEGALEASE-00139643 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 9489 | Mathews v. Diaz, 426 U.S. 67 | 3.16E+38 | In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry. The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious." | Congress, which has broad power over immigration and naturalization and regularly makes rules regarding aliens that would be unacceptable if applied to citizens, has no constitutional duty to provide all aliens with the welfare benefits provided to citizens. Social Security Act, SS 1831 et seq., 1836(2) as amended 42 U.S.C.A. SS 1395j et seq., 1395o (2). | Can Congress make rules for aliens that would be unacceptable if applied to citizens? | "Aliens, Immigration and Citizenship - Memo 12 - RK.docx" | ROSS-003301889-ROSS-003301890 | SA, Sub | 0.25 | 0 | 0 | 1 | 1 | |
| 9490 | Pierce v. Indseth, 106 U.S. 546 | 8.30E+10 | In general, commercial paper executed in one state, and made payable in another, is governed by the laws of the state in which it is payable. | In general, commercial paper executed in one state, and made payable in another, is governed by the laws of the state in which it is payable. | "Is commercial paper executed in one state, and made payable in another, governed by the laws of the state in which it is payable?" | 009114.docx | LEGALEASE-00140348-LEGALEASE-00140349 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 9491 | Citizens Bank, Dallas v. Thornton & Co., 172 Ga. App. 490 | 172H+879 | Corporation brought action to recover amount of two checks allegedly converted by bank. The Superior Court, Paulding County, Fudger, J., entered judgment for corporation, the bank appealed, and the corporation cross-appealed, contending that the court erred in vacating jury's award of attorney fees based on the bank's alleged stubborn litigiousness in defending the claim. The Court of Appeals, Banke, P.J., held that: (1) endorsement "For Deposit Only" on one check was ineffective to transfer title to a third party; (2) jury was entitled to conclude from the evidence that endorsement "Confederate Insurance Agency," on one check, was unauthorized; (3) thus, verdict for corporation was authorized by the evidence; and (4) corporation was entitled to attorney fees based on bank's stubborn litigiousness in defending the claim. | Verdict for corporation in its action to recover amount of two checks allegedly converted by bank was authorized by the evidence, where one check was endorsed "For Deposit Only," which was clearly ineffective to transfer title to a third party, where there was evidence that endorsement "Confederate Insurance Agency," on the other check was unauthorized, and where there was no evidence that the bank acted in a commercially reasonable manner so as to establish a defense. O.C.G.A. SS 11-3-206(3), 11-3-419(3). | Can the indorsement of a check for deposit pass title? | 009532.docx | LEGALEASE-00140662-LEGALEASE-00140663 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 9492 | First Nat. Bank v. Lee Cty. Cotton Oil Co., 250 S.W. 313 | 8.30E+05 | It was clearly the intention of the Legislature, in passing the Uniform Negotiable Instruments Act, to cover the whole subject- matter relating to negotiable instruments; and that such act should supersede and repeal all laws then existing on the same subject, for in its caption it provided that the same was "an act to make uniform the law of negotiable instruments repealing all laws and parts of laws in conflict herewith." In its body (article 7, " 89, p. 200) it was provided that""Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." | It was clearly the intention of the Legislature in passing the Uniform Negotiable Instruments Act (Acts 36th Leg. (1919) c. 123 (Vernon's Ann.Civ.St. art. 5932 et seq.)), to cover the whole subject-matter relating to negotiable instruments and to supersede and repeal all laws then existing on the same subject. | What was the legislative intent behind the Uniform Negotiable Instruments Act? | Bills and Notes - Memo 566 - RK.docx | ROSS-003302213-ROSS-003302214 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 9493 | United States v. Lemons, 67 F. Supp. 985 | 8.30E+11 | Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 W.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo. App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651. | The law of the state in which a check or negotiable instrument is executed determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. | Does the law of the state in which a check or negotiable instrument is executed determine the validity of such instrument? | 010085.docx | LEGALEASE-00140229-LEGALEASE-00140230 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9494 | Hughes v. Tyler, 485 So. 2d 1026 | 8.30E+06 | Holder of promissory note sued to enforce surety's obligation. The Circuit Court, Leflore County, Gray Evans, J., entered order dismissing surety from his obligation, and holder of note appealed. The Supreme Court, Hawkins, J., held that: (1) Uniform Commercial Code applied to negotiable promissory note secured by real estate mortgage; (2) surety, as original maker of note, was entitled to protections of release provisions of applicable statute; and (3) holder of note, by executing partial release and subordination agreement, unreasonably impaired collateral thus releasing surety from obligation. | Uniform Commercial Code was applicable to negotiable promissory note secured by real estate mortgage. Code 1972, S 75-3-112. | Is Uniform Commercial Code applicable to negotiable notes secured by real estate mortgage? | Bills and Notes -Memo 433 -DB.docx | ROSS-003290851-ROSS-003290852 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9495 | Weil v. Black, 76 W. Va. 685 | 63+1(2) | It is no defense to an indictment for attempted bribery of a public officer that he was not a de jure officer; his official character cannot be thus collaterally assailed; it is sufficient that he was a de facto officer. | It is no defense to an indictment for attempted bribery of a public officer that he was not a de jure officer; his official character cannot be thus collaterally assailed; it is sufficient that he was a de facto officer. | Is it a defense to an indictment for attempted bribery of a public officer that the defendant is not a de jure officer? | Bribery - Memo #725 - C-JL.DOCX | ROSS-003300731-ROSS-003300732 | Condensed, SA | 0 | 0 | 1 | 0 | 1 | |
| 9496 | Barnes v. Kent, 292 Ala. 508 | 200+158 | Therefore, an individual may bring an action to abate the obstruction of a public road where he has suffered damages different in kind and degree from those suffered by the public in general. Holz v. Lyles, 287 Ala. 280, 251 So.2d 583; Ayers v. Stidham, 260 Ala. 390, 71 So.2d 95; Sandlin v. Blanchard, 250 Ala. 170, 33 So.2d 472. | Individual may bring action to abate obstruction of public road where he has suffered damages different in kind and degree from those suffered by public in general. Code of Ala., Tit. 7, SS 1084, 1086. | When can an individual bring an action to abate the obstruction of a public road? | 019114.docx | LEGALEASE-00139923-LEGALEASE-00139924 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 9497 | Elliott v. Oregon Int'l Mining Co., 60 Or. App. 474 | 260+2 | Congress further provided, however, that a mineral claimant has the legal right at all times to enter onto a patentee's land to prospect for, mine and remove minerals, subject only to a statutory duty not to damage crops, permanent improvements or the value of the land for grazing. 43 U.S.C. " 299; 30 U.S.C. " 54. By separating the surface estate from the mineral estate and reserving the right at all times to enter the land to prospect and mine for mineral deposits, a servitude is laid on the surface estate for the benefit of the mineral estates. Kinney-Coastal Oil Co. v. Kieffer, 277 U.S. 488, 504, 48 S.Ct. 580, 72 L.Ed. 961 (1928); United States v. Union Oil Co. of California, 549 F.2d 1277 (9th Cir.1977). Thus, "[t]he entire thrust of the surface entry [act] is to provide a means for access to these public minerals which is not subject to denial." (Emphasis added.) 10 Land and Water Law Review 1, 52 (1975); see 1 American Law of Mining "" 3.23"3.32. Moreover, Congress clearly recognized the mineral claimant's right to remove minerals by strip mining methods from land patented under the Act. 30 U.S.C. " 54; 1 American Law of Mining " 3.51A. | By Congress' separating surface estate of land granted by United States under Stock-Raising Homestead Act from mineral estate and reserving right at all times to enter land to prospect and mine for mineral deposits, servitude is laid on surface estate for benefit of mineral estate. Stock-Raising Homestead Act, SS 2, 9, 43 U.S.C. (1976 Ed.) SS 292, 299; 30 U.S.C.A. S 54. | Is servitude laid on the surface estate for the benefit of the mineral estates? | Mines and Minerals - Memo # 13 - C - EB.docx | ROSS-003287471-ROSS-003287472 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 9498 | Florida v. Wilkerson, 247 S.W.2d 678 | 289+548 | Respondents in their brief cite cases and other authorities to the effect that utmost good faith is required of partners in their relations with each other; that one is the confidential agent of the other and is required to make full disclosure of all material facts within his knowledge in relation to their partnership affairs. Some of the authorities cited are: Pomeroy v. Benton, 57 Mo. 531, same case as 77 Mo. 64; Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 120 A.L.R. 720, and Annotations, 120 A.L.R. 724. In the brief much was quoted from Pomeroy v. Benton, 57 Mo. 531. We approve the doctrine there announced. Such has been the generally accepted rule of law. | Utmost good faith is required of partners in their relations with each other and one partner is the confidential agent of the other and is required to make full disclosure of all material facts within his knowledge in relation to their partnership affairs. | Are partners confidential agents of each other? | 022291.docx | LEGALEASE-00140179-LEGALEASE-00140180 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |
| 9499 | Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887 | 302+228 | In addition, Auld did not specially except to Horizon's misidentification of the applicable statutory provision. When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader. See Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex.1993). An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment. See Cameron v. University of Houston, 598 S.W.2d 344, 345 (Tex.Civ.App."Houston [14 th Dist.] 1980, writ ref'd n.r.e.). Auld did not specially except to Horizon's pleading of the incorrect version of the statute; therefore, Horizon had no opportunity to correct it. Because we must construe Horizon's pleading in Horizon's favor, and because Horizon pleaded information specific enough to provide Auld with notice of its intent to rely on the punitive damages cap found in Chapter 41 of the Texas Civil Practice and Remedies Code, we conclude that the court of appeals did not err in affirming the trial court's application of section 41.007. | An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment. | Should an opposing party use special exceptions to identify and cure defects in pleadings? | 023440.docx | LEGALEASE-00140396-LEGALEASE-00140397 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9500 | Boyles v. Preston, 68 Conn. App. 596 | 228+74.1 | "The purpose of " 52"192a is to encourage pretrial resolution of disputes by allowing a plaintiff to make an offer and allowing a defendant to accept a reasonable offer of settlement to save the time and expense of trial. [I]n construing " 52"192a, we first note that its purpose is to encourage pretrial settlements and, consequently, to conserve judicial resources. [T]he strong public policy favoring the pretrial resolution of disputes is substantially furthered by encouraging defendants to accept reasonable offers of judgment. Section 52"192a encourages fair and reasonable compromise between litigants by penalizing a party that fails to accept a reasonable offer of settlement.... In other words, interest awarded under " 52"192a is solely related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources." (Citations omitted; internal quotation marks omitted.) Flynn v. Kaumeyer, 67 Conn.App. 100, 107, 787 A.2d 37 (2001). | The purpose of statute providing that a plaintiff seeking damages may before trial file a written "offer of judgment" signed by him or his attorney is to encourage pretrial resolution of disputes by allowing a plaintiff to make an offer and allowing a defendant to accept a reasonable offer of settlement to save the time and expense of trial; its purpose is to encourage pretrial settlements and, consequently, to conserve judicial resources. C.G.S.A. S 52-192a. | What is the purpose of 52192a concerning pretrial resolution of disputes? | 031342.docx | LEGALEASE-00140625-LEGALEASE-00140626 | Order, SA, Sub | 0.53 | 1 | 0 | 1 | 1 | 1 |
| 9501 | Miles v. Dep't of Treasury, 209 Ind. 172 | 371+2005 | The power to tax is inherent in, and essential to, the existence of the state, and may be exercised without limit upon property, occupations, and activities carried on within the state unless prohibited by state or Federal Constitutions. Union P. Railroad Co. v. Peniston (1873) 18 Wall. (85 U.S.) 5, 21 L.Ed. 787; Royall v. State of Virginia (1886) 116 U.S. 572, 6 S.Ct. 510, 29 L.Ed. 735; Bell's Gap R. Co. v. Pennsylvania (1890) 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; State Board of Tax Com'rs of Indiana v. Jackson (1931) 283 U.S. 527, 51 S.Ct. 540, 543, 75 L.Ed. 1248, 73 A.L.R. 1464. | State may exercise taxing power without limit upon property, occupations, and activities carried on within state, subject only to limitations of State and Federal Constitutions. | Can a states power to tax be exercised without limit? | 032374.docx | LEGALEASE-00140204-LEGALEASE-00140205 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9502 | Loveland v. Rowland, 361 S.W.2d 685 | 307A+74 | Rule 57.22 should not be considered to be an invitation to rewrite depositions on afterthoughts. It is intended to afford an opportunity to correct errors of the reporter in transcribing and also to permit a witness, who decides he gave a wrong answer, to have it corrected. If an answer is changed, the adequacy of the reasons stated and the determination of the truth of conflicting statements will be for the trier of the facts. Cases under the federal rule have held that "examination should not be considered finished if a witness seeks to recant his testimony or feels that to be "truthful" he must directly contradict the answers already given by him on most material points.' De Seversky v. Republic Aviation Corporation, D.C., 2 F.R.D. 113. In that case, the court required the witness after making such a change to appear for further examination saying "defendant then is entitled to examine him in the light of such answers to the same extent that they would have examined him had his new answers been first given." This procedure was followed in Colin v. Thompson, D.C., 16 F.R.D. 194; Turchan v. Bailey Meter Co., D.C., 21 F.R.D. 232; and Downing v. Gasser, 8 Terry 273, 47 Del. 273, 90 A.2d 651; see also 2A Barron and Holtzoff, Federal Practice and Procedure 261, Sec. 718; 4 Moore's Federal Practice 2053, Sec. 30.20. In the Colin case, changes made out of the presence of the notary were held invalid and the proper procedure thus stated: "[H]e must appear before the notary and request such changes in the "form or substance" of his answers as he desires made and must state his reasons for the changes. Whether his reasons are good or not will not impair his right to make the changes, if made in the way stated in Rule 30(e), but if those changes, when made, destroy the usefulness of the deposition (as those heretofore improperly made do), then the deposition will not have been finalized, and the plaintiff will be subject to further examination.' Since the other party has | If answers are changed on deposition, adequacy of reasons stated and determination of truth of conflicting statements are for trier. V.A.M.R. Civil Rule 57.22. | "If answers are changed on deposition, are the adequacy of reasons stated and determination of truth of conflicting statements for trier?" | Pretrial Procedure - Memo # 5338 - C - BP.docx | ROSS-003316262-ROSS-003316264 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 9503 | Beckett v. Gridley, 67 Minn. 37 | 307A+74 | The record in regard to the suppression of the deposition is as follows: "Plaintiff offered in evidence the deposition of James D. Beckett, taken pursuant to stipulation. Mr. Reynolds: "I move to suppress the deposition, on the ground that it does not contain the proper statutory certificate." Stipulation and deposition attached hereto. Which motion the court granted, and defendants excepted." Counsel for respondents, in his brief, contends that the stipulation was not offered in evidence, but it appears from the record that the stipulation and record were attached, and the notary public certifies that he took the testimony of the witness James D. Beckett, pursuant to the authority and requirements of said stipulation and the interrogations annexed and returned with it. We think it sufficiently appears that it was put in evidence at the time the motion was granted suppressing the deposition. By the stipulation, it is provided that the official character of Charles L. Norton as such notary public shall be sufficiently proven by his official seal and impression thereof affixed to or stamped upon his return thereto. That this was done sufficiently appears from the record, and all objections to said notary public were expressly waived by the terms of such stipulation, as well as to the issuing of a commission. If he was a notary public, he would be an officer authorized to administer oaths. The point, however, is made that the certificate or return of the notary did not state that the testimony of the witness was correctly read to him. That is true; but the return shows that the testimony was carefully read to the witness. Gen. St. 1894, " 5689, expressly provides that "the testimony of each witness, when completed, shall be carefully read over by the officer to him, whereupon he may add thereto or qualify the same if he may desire." The same section, however, provides that "such certificate shall be prima facie evidence of the matters therein stated, and may be substantially in the following form." | Gen.St.1894, S 5689 (M.S.A. SS 597.03, 597.07, 597.08, 597.10), provides that, where the testimony of a witness without the state is taken by deposition, it shall, when completed, be carefully read over to him by the officer taking the same, and thereupon the officer taking such deposition is required to make his return of certain matters regarding such deposition, and attach his certificate thereto, which certificate, it is provided, shall, among other matters, state substantially that such testimony was correctly read over to the witness by the officer before he signed the same. Held, that the certificate of a notary public to a deposition taken and returned by him, that the testimony of the witness was carefully read over to him by the notary public before it was signed by the witness, was in this respect a substantial and sufficient compliance with the law. | "Where the testimony of a witness without the state is taken by deposition, shall it be carefully read over to him by the officer taking the same?" | 032493.docx | LEGALEASE-00140584-LEGALEASE-00140585 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 9504 | Boyer v. Smith, 42 N.E.3d 505 | 307A+554 | After raising lack of personal jurisdiction as a defense in her answer, Attorney Cassidy sought a ruling on the issue as part of her motion for summary judgment1"and the trial court characterized its order as granting summary judgment. But summary judgment is ill-suited for jurisdictional challenges, which require courts to address a "threshold question concerning the court's power to act." Perry v. Stitzer Buick GMC, Inc., 637 N.E.2d 1282, 1286 (Ind.1994). The court has the power to "weigh the evidence to determine the existence of the requisite jurisdictional facts," id. at 1287, and to make findings to resolve factual disputes. Accordingly, a summary judgment motion attacking personal jurisdiction should be treated instead as a motion to dismiss under Trial Rule 12(B)(2)"just as we have held that subject-matter jurisdiction issues raised on summary judgment should be treated as a motion to dismiss under Rule 12(B)(1). Id. | A summary judgment motion attacking personal jurisdiction should be treated instead as a motion to dismiss for lack of jurisdiction over the person. Trial Procedure Rule 12(B)(2). | Should a summary judgment motion attacking personal jurisdiction be treated instead as a motion to dismiss for lack of jurisdiction over the person? | Pretrial Procedure - Memo # 5653 - C - DHA.docx | ROSS-003289395-ROSS-003289396 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 9505 | First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369 | 307A+683 | A trial court's decision regarding the exercise of personal jurisdiction over a defendant presents a question of law, which we review de novo with no presumption of correctness. State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 768 (Tenn.2013); Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645 (Tenn.2009). When considering a defendant's 12.02(2) motion, a trial court "must take all factual allegations in the plaintiff's complaint and supporting papers as true" and must "resolve all factual disputes in the plaintiff's favor." Sumatra, 403 S.W.3d at 739; see also Gordon, 300 S.W.3d at 644; Chenault v. Walker, 36 S.W.3d 45, 56 (Tenn.2001). However, the trial court is "not obligated to accept as true factual allegations ... that are controverted by more reliable evidence and plainly lack credibility." Sumatra, 403 S.W.3d at 735; see also Chenault, 36 S.W.3d at 56 (stating that a trial court is not obligated to take as true "conclusory allegations" or "farfetched inferences"). | When considering defendant's motion to dismiss for lack of personal jurisdiction, trial court is not obligated to accept as true factual allegations that are controverted by more reliable evidence and plainly lack credibility. Tenn. R. Civ. P. 12.02(2). | Is the trial court not obligated to accept as true factual allegations that are controverted? | 032860.docx | LEGALEASE-00139967-LEGALEASE-00139968 | Order, SA, Sub | 0.75 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9506 | Owsley v. Idaho Indus. Comm'n, 141 Idaho 129 | 307A+554 | The order of the district court dismissing the Claimants' action named two grounds under I.R.C.P. 12(b) for doing so: (1) "lack of jurisdiction over the subject matter" and (2) "failure to exhaust administrative remedies." The first issue, subject matter jurisdiction, is covered by 12(b)(1). When the district court found itself to lack "subject matter jurisdiction" it was reasoning that "the approval or nonapproval of a lump sum agreement, is committed by statute to the jurisdiction of the Industrial Commission and not this [district] court." The second issue, failure to exhaust administrative remedies, was based on the Claimants having gone to district court without completing the remaining steps of the Industrial Commission's administrative process. Failure to exhaust administrative remedies is a subset of errors of "subject matter jurisdiction," and can also be brought under a 12(b) (1) motion. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 1350 (2004) (stating that a "Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction also may be appropriate when the plaintiff has failed to exhaust administrative procedures that have been established ... as a prerequisite to his bringing suit."). Nonetheless, for ease of analysis the two issues will be treated separately here. | Failure to exhaust administrative remedies is a subset of errors of subject-matter jurisdiction and can be brought under a motion to dismiss for lack of subject-matter jurisdiction. Rules Civ.Proc., Rule 12(b)(1). | Is a failure to exhaust administrative remedies a subset of errors of subject-matter jurisdiction and can be brought under a motion to dismiss for lack of subject-matter jurisdiction? | 033247.docx | LEGALEASE-00140646-LEGALEASE-00140647 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 9507 | Loyola Marymount Univ. v. Los Angeles Unified Sch. Dist., 45 Cal. App. 4th 1256 | 371+2060 | An ad valorem tax on real property is a general tax levy which applies a given rate to the assessed value of all taxable property with a particular taxing district to pay for general expenditures and general improvements. (San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154, 162, 228 Cal.Rptr. 47, 720 P.2d 935.) Though the distinction between a tax and other exactments is blurred, taking on a different meaning in different contexts, one distinction has been made repeatedly: taxes are compulsory, but development fees are imposed only if a property owner elects to develop. (See ibid.; California Bldg. Industry Assn. v. Governing Bd. (1988) 206 Cal.App.3d 212, 236, 253 Cal.Rptr. 497; Russ Bldg. Partnership v. City and County of San Francisco (1987) 199 Cal.App.3d 1496, 1504, 246 Cal.Rptr. 21; Terminal Plaza Corp. v. City and County of San Francisco (1986) 177 Cal.App.3d 892, 907, 223 Cal.Rptr. 379.) School facilities fees promulgated by the Legislature under sections 65970 et seq. are not ad valorem property taxes. (Trent Meredith, Inc. v. City of Oxnard (1981) 114 Cal.App.3d 317, 328, 170 Cal.Rptr. 685.) | "Ad valorem tax" on real property is general tax levy which applies given rate to assessed value of all taxable property within particular taxing district to pay for general expenditures and general improvements. | Do general taxes include ad valorem property taxes? | Taxation - Memo # 135 - C - KBM.docx | ROSS-003302210-ROSS-003302212 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 9508 | N. Pole Corp. v. Vill. of E. Dundee, 263 Ill. App. 3d 327 | 371+2060 | It has long been settled in this State that a tax exacts contributions in return for the general welfare, whereas a special assessment is a charge levied against specific property in return for a particular benefit to that property. (People ex rel. Fisher v. Baltimore & Ohio R.R. Co. (1945), 390 Ill. 389, 391"92, 61 N.E.2d 382; DeClercq v. Barber Asphalt Paving Co. (1897), 167 Ill. 215, 218, 47 N.E. 367; Trustees of the Illinois & Michigan Canal v. City of Chicago (1851), 12 Ill. 403, 406"07.) This distinction is preserved in the language of the relevant portion of the Municipal Code, which speaks of a "specified improvement" to "the property benefited by the improvement" (65 ILCS 5/9"2"44 (West 1992)). The amusement ordinance cannot fairly be considered a special assessment; as the parties agree, it was never designed to exact a charge in return for a particular benefit to a specific property. As with the constitutional restrictions on the taxing power that we have already discussed, the statutory limitations on special assessments do not require that one who pays a tax for the general revenue receive a corresponding or proportionate benefit from the proceeds of that tax. | "Tax" exacts contributions in return for general welfare, whereas "special assessment" is charge levied against specific property in return for particular benefit to that property. S.H.A. 65 ILCS 5/9-2-45. | Does tax exacts contributions in return for general welfare? | 044860.docx | LEGALEASE-00140195-LEGALEASE-00140196 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9509 | Wiramal Corp. v. Dir. of Div. of Taxation, 36 N.J. 201 | 371+2005 | Petitioner's argument accepts the fact that companies performing different functions may be taxed at different rates, for it seeks the benefit of the statutory distinction between investment companies and other corporations. What petitioner overlooks, however, is that there may be an equally important distinction between an "investment company" as defined in the statute and a corporation which gains control of other corporations by investing in large blocks of the latter's securities. The Legislature may seek to discourage a certain type of business or activity and foster others. Allied Stores of Ohio, supra, 358 U.S. at p. 528, 79 S.Ct. at p. 441, 3 L.Ed.2d at p. 485; American Sugar Ref. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102 (1900); General Electric Co. v. Passaic, supra, 28 N.J. at p. 509, 147 A.2d 233; N.J. Rest. Ass'n v. Holderman, 24 N.J. 295, 301, 131 A.2d 773 (1957); State v. Garden State Racing Ass'n, 136 N.J.L. 173, 180, 54 A.2d 916 (E. & A.1947); Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129, 134, 28 A.2d 482 (1942), affirmed 130 N.J.L. 177, 32 A.2d 354 (E. & A. 1943). | Legislature may seek to discourage certain type of business or activity and foster others in tax laws. | Can Legislature seek to discourage certain type of business or activity and foster others in tax laws? | Taxation - Memo # 633 - C - CK.docx | ROSS-003302315-ROSS-003302316 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9510 | State ex rel. Green v. Gibson Circuit Court, 246 Ind. 446 | 386+11 | Addressing ourselves to the first of the above-mentioned propositions, we find it to be without merit. Traditionally, it has been held that an action for trespass quare clausum fregit (trespass to real estate) cannot be maintained for an invasion of a right of way or easement. Conner v. The President and Trustees of New Albany (1820), 1 Blackf. 88; 27 West's Ind.Law Ency., Trespass, " 1, p. 517; 52 Am.Jur., Trespass, " 28, p. 857; 87 C.J.S., Trespass, " 17, p. 969. This rule is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land. Heffelfinger v. Fulton (1900), 25 Ind.App. 33, 56 N.E. 688. Thus, since an action for trespass quare clausum fregit cannot be maintained for entry upon a right of way, the allegation in plaintiff's complaint that the defendants entered upon the plaintiff's right of way has no other legal effect than to show that the plaintiff had constructive possession of the pipe line at the time it was damaged by the defendants. Moreover, the wording of the plaintiff's complaint does not sustain the relator's contention that the action alleged is one for trespass to an easement since nowhere does the plaintiff allege in his complaint any damage to his right of way, nor does he ask damages for its invasion. | An action for trespass quare clausum fregit (trespass to real estate) cannot be maintained for invasion of right-of-way or easement. | Can an action for trespass quare clausum fregit (trespass to real estate) be maintained for an invasion of a right-of-way or easement? | 047420.docx | LEGALEASE-00140592-LEGALEASE-00140593 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 9511 | Barnes v. Mathis, 353 S.W.3d 760 | 386+12 | A similar inquiry must be made as to whether Mathis conclusively proved trespass. The jury answered "No" to the question: "Did H.E. "Buster" Barnes cause damage to Dr. Mathis'[s] land by trespassing on Dr. Lee Roy Mathis'[s] land?" Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters"or causes something to enter"another's property. See Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1, 11 n. 29 (Tex.2008); Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642, 645 (1956). "[E]very unauthorized entry upon land of another is a trespass even if no damage is done or injury is slight." Coastal Oil, 268 S.W.3d at 12 n. 36 (quoting McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ ref'd) (alteration in original)). As stated above, the parties agreed that Barnes's road initially caused water to enter Mathis's property. Mathis argues that this conclusively establishes trespass. | "Trespass to real property" is an unauthorized entry upon the land of another, and may occur when one enters, or causes something to enter, another's property. | "Can trespass occur when one enters, or causes something to enter, another's property?" | 047427.docx | LEGALEASE-00140604-LEGALEASE-00140605 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9512 | Weaks v. White, 479 S.W.3d 432 | 13+1 | Statutes may modify common law rules. Dugger v. Arredondo, 408 S.W.3d 825, 829 (Tex.2013). A statute may be interpreted as abrogating a principle of common law only when either the express terms of the statute or its necessary implications clearly indicate such an intent by the legislature. Bruce v. Jim Walters Homes, Inc., 943 S.W.2d 121, 122"23 (Tex.App."San Antonio 1997, pet. denied). Common law defenses may not be used to defeat claims brought under a statute that was not designed to be a codification of the common law. Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex.1980) (held that DTPA not designed to be codification of common law; DTPA was designed to provide consumers a cause of action for deceptive practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit); Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 264 (Tex.App."Corpus Christi 1987, writ ref'd n.r.e.) (op. on reh'g) (held that common law defense of contributory negligence cannot defeat insurance code claims). | Common law defenses may not be used to defeat claims brought under a statute that was not designed to be a codification of the common law. | Can common law defenses be used to defeat claims brought under a statute that was not designed to be a codification of the common law? | Action - Memo # 211 - C SHS.docx | ROSS-003288414-ROSS-003288415 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9513 | United States v. Heldt, 455 F.2d 488 | 34+20.5 | We hold that the nine previously postponed inductees were properly excluded from the court. A registrant whose induction is postponed is still under the authority of the original induction order and remains a part of the original call. United States v. Lane (9 Cir. 1971), 442 F.2d 415, 416. "When the postponement period terminates the board does not issue a new induction order . . . . [The] effect of a postponement is simply to delay the registrant's reporting date under the only induction order issued to him." Id. Since a postponed registrant remains a part of his original call, we conclude that they may not be used to satisfy the quota of the month in which they are delivered. | Nine previously postponed inductees were properly excluded from count for month in which defendant was called, since a registrant whose induction is postponed is still under the authority of the original induction order and remains a part of the original call, so that local board did not improperly accelerate induction of defendant by directing more men to report and were authorized by the State Director's call of 56 men, where 61 registrants, of which defendant was the 58th, were placed on the list, but nine of the 61 had been previously postponed. Military Selective Service Act, S 12, 50 U.S.C.A. App. S 462. | Is a registrant whose induction is postponed still under the authority of the original induction order and a part of the original call? | Armed Services - Memo 234 - TB.docx | ROSS-003287107 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 9514 | United States v. Rendon, 607 F.3d 982 | 349+40.1 | Surely, if the special needs doctrine were applicable to searches in the military, the special need for "security, military fitness, [and] good order and discipline," see Mil. R. Evid. 313(b), would provide an overwhelming justification for regular inspections. But the constitutional status and needs of the military demand more than the application of a balancing test, as called for by the special needs doctrine. See United States v. Jenkins, 986 F.2d 76, 78 (4th Cir.1993); see also U.S. Const. art. I, " 8, cl. 14. In Jenkins, we held that the validity of a search on a closed military base, conducted without particularized suspicion, does not "turn on the case-by-case application of a "special needs' or "exigent circumstances' balancing test. The case law makes clear that searches on closed military bases have long been exempt from the usual Fourth Amendment requirement of probable cause." Jenkins, 986 F.2d at 78. | Searches on closed military bases are exempt from the usual Fourth Amendment requirement of probable cause. U.S.C.A. Const.Amend. 4. | "Are searches, on closed military bases, exempt from the Fourth Amendment requirement of probable cause?" | 008637.docx | LEGALEASE-00141876-LEGALEASE-00141877 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9515 | Citizens & S. Nat. Bank v. Scheider, 139 Ga. App. 475 | 278+4 | The new note was given for an existing indebtedness, from the same principal to the same payee. "A new note given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a novation." Georgia National Bank v. Fry, 32 Ga.App. 695(1), 124 S.E. 542; Brooks v. Jackins, 38 Ga.App. 57(1), 142 S.E. 574. See also Motor Contract Division of Trusco Finance Co. v. Southern Cotton Oil Co., 76 Ga.App. 199, 202, 45 S.E.2d 291 and Northwest Acceptance Corp. v. Heinicke Instruments Co., 441 F.2d 887, 892 (5th CCA, 1971). | New note given in lieu of existing note between same parties and for same indebtedness, even at higher rate of interest and due at latter date is not given for new consideration and therefore does not constitute a novation. | What is the effect of a note given for an existing or same indebtedness? | 010263.docx | LEGALEASE-00141045-LEGALEASE-00141046 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9516 | United States v. Tomblin, 46 F.3d 1369 | 63+1(1) | Under the bribery statutes, the government must prove a quid pro quo, that is, that the official took money in return for an exercise of his official power. McCormick v. United States, 500 U.S. 257, 269"73, 111 S.Ct. 1807, 1815"16, 114 L.Ed.2d 307 (1991). In order to convict a briber, the government must prove that the accused intended to bribe the official. Intending to make a campaign contribution does not constitute bribery, even though many contributors hope that the official will act favorably because of their contributions. | Intending to make campaign contribution does not constitute bribery, even though many contributors hope that official will act favorably because of their contributions. 18 U.S.C.A. S 201. | "If an individual contributes to a campaign with the hopes that the official will act favourably because of the contribution, do his actions constitute bribery?" | 012156.docx | LEGALEASE-00141959-LEGALEASE-00141960 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 9517 | Nat'l Seed Co. v. Leavell, 202 Ky. 438 | 113+3 | Moreover, a custom, in order to become a part of the terms of a contract, must be fixed, definite, and certain, and known to the parties, or its existence must have been for such a length of time as to create the presumption that it was known. It was neither pleaded nor offered in evidence in this case that the alleged custom even had an existence in the neighborhood or vicinity of the place of the contract at the time it was made. The offered testimony was given two years and five months after the transaction sued on, and the rejected testimony only offered to prove its existence at that time. But even then there was nothing in the offered testimony to show the extent of the custom or its duration; and for those reasons also the rulings of the court complained of were proper. Clarke Case, supra; Clift v. Harp, 191 Ky. 295, 230 S. W. 52; Caldwell v. Dawson, 4 Metc. 121; Huston v. Peters, 1 Metc. 558; and Kendall v. Russell, 5 Dana, 501, 30 Am. Dec. 696. | A custom, in order to become a part of terms of a contract, must be fixed, definite, and certain and known to the parties, or its existence must have been for such a length of time as to create the presumption that it was known. | When will a custom have a presumption that it was known by the parties? | 014151.docx | LEGALEASE-00141742-LEGALEASE-00141743 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9518 | Strange v. Carrington, Patton & Co., 116 Ill. App. 410 | 113+3 | It was claimed by appellant that a custom existed at Monarch under which, upon a contract for the sale of grain to be delivered at a future time, the purchaser advanced a reasonable portion of the price of said grain before delivery and that such custom entered into the original contract, and it is urged that the peremptory instruction given by the court, excluded such issue from the consideration of the jury. To render evidence of a custom admissible, it must be shown that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it. The record fails to disclose evidence of any such custom at Monarch. Evidence of such custom at LeRoy was incompetent and objection to its proof was properly sustained. Furthermore, there is no evidence in the record that $2,000 was a reasonable sum to be advanced upon the contract of sale. | To render evidence of a custom admissible it must be shown that it was uniform, long established, generally acquiesced in, and so well known as to induce belief that parties contracted with reference thereto. | When is evidence of a custom admissible? | Customs & Usage - Memo 160 - RK.docx | ROSS-003288303 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9519 | Fischer v. First Nat. Bank, 55 Idaho 251 | 113+3 | Custom or usage relating to a particular business, in order to be available for the purpose of determining the rights of parties, must be reasonable, uniform, general as to the place or locality, and not contrary to law. Security Comm. & Sav. Bank of San Diego v. Southern Trust & Commerce Bank, 74 Cal. App. 734, 241 P. 945; Evans Fuel Co. v. Leyda, 77 Colo. 356, 236 P. 1023; Rugh v. Soleim, 92 Or. 329, 180 P. 930; Johns v. Jaycox, 67 Wash. 403, 121 P. 854, 39 L. R. A. (N. S.) 1151, Ann. Cas. 1913D, 471; Luckehe v. First Nat. Bank, supra; Nelson v. So. Pac. Co., 15 Utah, 325, 49 P. 644; 7 C. J. " 219, page 587; Bridgeport Bank v. Dyer, 19 Conn. 136; Marrett v. Isaac Brackett, 60 Me. 524; Renner v. Bank of Columbia, 9 Wheat. 581, 6 L. Ed. 166. | Custom or usage relating to particular business in order to be available for purpose of determining rights of parties must be reasonable, uniform, general as to place or locality, and not contrary to law. | Can parties use custom to contract when the custom is well known to them? | 014205.docx | LEGALEASE-00141892-LEGALEASE-00141893 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 9520 | Hattiesburg Realty Co. v. Mississippi State Highway Comm'n, 406 So. 2d 329 | 200+80 | Mississippi General Laws, Chapter 332, section 8 (1948), granted statutory authority to the Commission to acquire fee simple title to lands needed by it. This law in and of itself did not, ipso facto, vest fee simple title in the Commission to lands in which the Commission had only acquired easement rights for right-of-way purposes.If, after the passage of this legislation, the Commission should determine that fee simple title is now necessary in order for it to carry out its duties and responsibilities, then it would be necessary for the Commission to acquire fee simple title either by further purchase, gift, or condemnation proceedings against the property owner. | Statute granting statutory authority to State Highway Commission to acquire fee simple title to lands needed by it did not in and of itself, ipso facto, vest fee simple title in Commission to lands in which Commission had only acquired easement rights for right of way purposes. Laws 1948, c. 332, S 8. | Do statutes authorize the commission to acquire fee simple title to lands? | Highways -Memo 186 - DB.docx | ROSS-003328827-ROSS-003328828 | Order, SA, Sub | 0.55 | 1 | 0 | 1 | 1 | 1 |
| 9521 | Chang Hyun Moon v. Kang Jun Liu, 2015 IL App (1st) 143606 | 302+48 | Here, plaintiff makes bald assertions that defendants' conduct was "extreme and outrageous" and that defendants "intended to inflict severe emotional distress or * * * knew that there was a high probability that their conduct would do so." Illinois is a fact pleading jurisdiction, and a pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient. Welsh v. Commonwealth Edison Co., 306 Ill.App.3d 148, 155, 239 Ill.Dec. 148, 713 N.E.2d 679 (1999) (citing Knox College v. Celotex Corp., 88 Ill.2d 407, 423"27, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981)). Moreover, because claims alleging intentional infliction of emotional distress can be easily made, this court has indicated that such claims must be "specific, and detailed beyond what is normally considered permissible in pleading a tort action." McCaskill v. Barr, 92 Ill.App.3d 157, 158, 47 Ill.Dec. 211, 414 N.E.2d 1327 (1980). Because plaintiff has not provided any facts which would support his claims, his assertions as to these two elements are mere conclusions, which are insufficient to preclude dismissal. Doe v. Calumet City, 161 Ill.2d 374, 385, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994) ( "mere conclusions of law or fact unsupported by specific factual allegations in a complaint are disregarded on a motion to dismiss"), abrogated on other grounds by DeSmet v. County of Rock Island, 219 Ill.2d 497, 518, 302 Ill.Dec. 466, 848 N.E.2d 1030 (2006). | Illinois is a fact pleading jurisdiction, and a pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient. | "Is a pleading that merely paraphrases the elements of a cause of action in conclusory terms, sufficient?" | 023448.docx | LEGALEASE-00140905-LEGALEASE-00140906 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9522 | Tires 'N Tracks v. Dominic Fiordirosa Const. Co., 331 Ill. App. 3d 87 | 307A+477.1 | The failure to file a timely response to a request to admit facts"including the "ultimate" facts of a case"in accordance with the requirements of Rule 216(c) results in the admission of those facts. 134 Ill.2d R. 216(c); People v. Mindham, 253 Ill.App.3d 792, 797, 192 Ill.Dec. 680, 625 N.E.2d 835 (1993) (effect of ignoring request to admit is that matters contained in request automatically stand admitted); see generally Bright v. Dicke, 166 Ill.2d 204, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995). A response denying the facts that is neither timely nor sworn fails to comply with the rule. Johannsen v. General Foods Corp., 146 Ill.App.3d 296, 300, 99 Ill.Dec. 851, 496 N.E.2d 544 (1986). An admission pursuant to a request to admit operates as a judicial admission that is considered incontrovertible and has the effect of withdrawing a fact from contention. Mindham, 253 Ill.App.3d at 797, 192 Ill.Dec. 680, 625 N.E.2d 835. | A response to requests to admit denying the facts that is neither timely nor sworn fails to comply with admissions rule. Sup.Ct.Rules, Rule 216(c). | Does a response to requests to admit denying the facts that are neither timely nor sworn fails to comply with admissions rule? | 030726.docx | LEGALEASE-00141397-LEGALEASE-00141398 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9523 | Read v. Patterson, 79 Tenn. 430 | 307A+74 | The fifth and sixth are exceptions of the character of last named exception, and are untenable. The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate. | Neither the caption nor certificate need set forth the official character of the magistrate who takes a deposition, if his official character appears in his signature. | "Need neither the caption nor certificate set forth the official character of the magistrate who takes a deposition, if his official character appears in his signature?" | 032598.docx | LEGALEASE-00141388-LEGALEASE-00141390 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9524 | Oatman v. Andrew, 43 Vt. 466 | 307A+74 | The first question arising on the exceptions is on the admissibility of the deposition of Henry Corey. The magistrate certified: "The deponent being so aged and infirm in health as to render him unsuitable to attend the trial, is the cause of taking the deposition." The deposition had been used on a former trial, against the defendant's objection. Before it was offered for use in the court below on the last trial, the magistrate, without leave of court, had stricken out the second syllable from the word "unsuitable," leaving it ""unable," and appended a note to the caption, stating that he had made the alteration "on the suggestion that the word unsuitable was not precisely the word of the statute, and that the same should have been unable. I altered said word so as to read unable, which was my then opinion of the witness, at the time of taking the deposition." In this condition the deposition was admitted, against the defendant's exception. The statute allows a deposition to be taken and used when the deponent, "by reason of age, sickness or other bodily infirmity, is rendered incapable of traveling and appearing at court." The cause for taking the deposition, as originally certified, we do not regard as substantially the same cause stated in the statute. A magistrate might, frequently, certify that a person, by reason of age and infirmity of health, was unsuitable to attend the trial of the cause, when he would not certify that the deponent was thereby rendered incapable of traveling and appearing at court. The unsuitableness might arise from the condition of the deponent's mind when affected by age and infirmity of health. The statute contemplates only a physical incapacity arising from the same causes. As the caption originally stood, we hold the deposition should not have been admitted. | Under G.S.1863, c. 36, S 3, subd. 3, P.S. 1608, subd. 3, providing for the taking and use of depositions of a witness who by reason of age, sickness, or other infirmity is incapable of traveling and appearing at court, a certificate of the magistrate that by reason of age and infirmity the witness was unsuitable to attend trial is insufficient. | Is a certificate of the magistrate that by reason of age and infirmity the witness was unsuitable to attend trial insufficient? | 032605.docx | LEGALEASE-00141348-LEGALEASE-00141349 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 9525 | Edgefield Mfg. Co. v. Maryland Cas. Co., 78 S.C. 73 | 307A+74 | Testimony de bene esse taken in typewriting is good without a certificate of notary that it was written by the witness or read over to him.In taking testimony de bene esse typewriting is as any other writing. Stoddard v. Hill, 38 S. C. 390, 17 S. E. 138. Typewriting is common, and there is no presumption against its use by the officer or witness in reducing the testimony as required by the statute. Rule 12 of the circuit court (33 S. E. viii) lays down certain requirements as to the size and minimum weight of paper to be used for typewriting "original pleadings and other proceedings," and also as to initialing the pages. In a broad sense, the term "proceedings" used in the rule would embrace the taking of testimony de bene esse. The object of the rule is to prevent mistake or imposition, and, as to other pleadings and proceedings, there is no safeguard prescribed by statute. But the statute lays down with particularity the safeguards to be used for preserving the integrity of testimony taken de bene esse. | Testimony de bene esse taken in typewriting is good without a certificate of notary that it was written by the witness or read over to him. | Is testimony de bene esse taken in typewriting good without a certificate of notary? | 032617.docx | LEGALEASE-00141262-LEGALEASE-00141263 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9526 | Keating v. 68th & Paxton, 401 Ill. App. 3d 456 | 307A+554 | Before we address the substance of plaintiff's first argument, we must comment on a procedural aspect of this case. We acknowledge that ordinarily, a challenge to the circuit court's subject matter jurisdiction should be brought as a motion to dismiss pursuant to section 2"619 of the Code (735 ILCS 5/2"619(a)(1) (West 2006)). Scott Wetzel Services v. Regard, 271 Ill.App.3d 478, 481, 208 Ill.Dec. 98, 648 N.E.2d 1020 (1995). However, given the unique procedural posture of this case, we think that defendants' motion to strike under section 2"615 (735 ILCS 5/2"615 (West 2006)) was proper. | Ordinarily, a challenge to the circuit court's subject matter jurisdiction should be brought as a motion to dismiss. S.H.A. 735 ILCS 5/2-619(a)(1). | Should a challenge to the circuit court's subject matter jurisdiction be brought as a motion to dismiss? | Pretrial Procedure - Memo # 5981 - C - CK.docx | ROSS-003288142 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9527 | Maltas v. Maltas, 298 Conn. 354 | 228+818(6) | Practice Book " 10"30 provides in relevant part that "[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book " 10"31(a) provides further that "[t]he motion to dismiss shall be used to assert ... (2) lack of jurisdiction over the person...." Finally, Practice Book " 10"32 provides that "[a]ny claim of lack of jurisdiction over the person ... is waived if not raised by a motion to dismiss filed in the sequence provided in Sections 10"6 and 10"7 and within the time provided by Section 10"30." | Connecticut rules of practice requiring a defendant, who wishes to challenge personal jurisdiction, to file a motion to dismiss within 30 days of filing an appearance, applied only to a challenge to the jurisdiction of a Connecticut court, and therefore did not apply to a judgment debtor's challenge, as defendant in a judgment creditor's Connecticut action to domesticate a foreign default judgment entered in an Alaska court, to the Alaska court's personal jurisdiction over the judgment debtor. Practice Book 1998, SS 10-30, 10-31(a), 10-32. | Do the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss? | 033410.docx | LEGALEASE-00141616-LEGALEASE-00141617 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9528 | In re Peplinski's Estate, 155 Pa. Super. 564 | 268+405 | If we construe literally the words in the Act of 1941, 72 P.S. " 5878d""to the respective taxing authorities in proportion to their tax and municipal claims""they do not necessarily mean that taxes and municipal claims shall have the same status or rank and thus participate pro rata. Municipal claims are mentioned after taxes; and they are in a separate category from taxes. Although municipal liens are a species of taxation (Hammett v. Philadelphia, 65 Pa. 146, 150, 3 Am.Rep. 615; Erie v. Piece of Land, 339 Pa. 321, 327, 14 A.2d 428; City of Johnstown v. Dibert, 88 Pa.Super. 117, 121), they are not taxes in a strict sense of the word for two reasons: first, they are not assessed for governmental purposes, and, second, they are based on a theory of special benefit to the property against which the assessments are levied. "General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience, and for the additional benefit of private property holders. These differences have made it necessary to recognize taxation and local assessments as distinct subjects McMillan v. Tacoma, 26 Wash. 358, 67 P. 68, at page 69. | General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience and for additional benefit of private property holders. | Is there a difference between why general taxation and local assessments are enforced? | Taxation - Memo # 403 - C- NA.docx | ROSS-003290143-ROSS-003290145 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9529 | B-C Remedy Co. v. Unemployment Comp. Comm'n of N. C., 226 N.C. 52 | 371+2810 | The Constitution is infringed only when such action impairs the obligation of a contract or destroys a vested right, and these inhibitions are invoked when it is sought to enforce the restored remedy in invitum. The relation between the State and a taxpayer is not one of contract; and certainly the State has acquired no vested interest in appellee's money which it cannot waive by appropriate legislation. Even a private debtor may waive the bar of the statute by his own conduct, and in so far as constitutional limitations are concerned, the State certainly has as much freedom in that respect as an individual. | The relation between the state and a taxpayer is not one of contract, and the state acquires no vested interest in taxpayer's money which the state cannot waive by appropriate legislation. | Does the state acquire any vested interest in taxpayer's money which the state cannot waive by appropriate legislation? | 045163.docx | LEGALEASE-00141021-LEGALEASE-00141022 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9530 | Greene v. Franchise Tax Bd., 27 Cal. App. 3d 38 | 371+2005 | The liberal principles governing the construction of exemption statutes are not applicable to unpaid taxes (Estate of Ferarazza, Supra, 219 Cal. 668, 672, 28 P.2d 670). The power to levy and collect taxes is a vital, essential attribute of government without which it could not function (V. & T. Soc. v. County of L.A., 30 Cal.2d 426, 429, 182 P.2d 178). In exercising the power, the State acts in its sovereign, governmental capacity and is in no sense engaging in business (Douglas Aircraft Co. v. County of L.A., 137 Cal.App.2d 803, 806, 291 P.2d 85). Laws which tend to limit sovereignty are strictly construed in favor of the State. "A statute will not be construed to impair or limit the sovereign power of the state to act in its governmental capacity and perform its governmental functions in behalf of the public in general, Unless such intent clearly appears." (Emphasis added) (People v. Centr-O-Mart, 34 Cal.2d 702, 703"704, 214 P.2d 378, 379.) | In exercising power to levy and collect taxes, the state acts in its sovereign, governmental capacity and is in no sense engaging in business. | Is the state engaging in business in exercising its power to levy and collect tax? | 045394.docx | LEGALEASE-00141537-LEGALEASE-00141538 | Order, SA | 0.85 | 1 | 0 | 0 | 1 | |
| 9531 | Avco Fin. Servs. Consumer Disc. Co. One v. Taxation Div. Dir., 4 N.J. Tax 349 | 371+2005 | As the income sought to be taxed was not earned in New Jersey in the constitutional sense, that income bears no rational relationship to values connected with New Jersey. A state's taxing power must bear a fiscal relation to protection, opportunities and benefits afforded by the taxing state. Wisconsin v. J. C. Penney & Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). | A state's taxing power must bear a fiscal relation to protection, opportunities and benefits afforded by taxing state. | "Should a state's taxing power bear a fiscal relation to protection, opportunities and benefits afforded by taxing state?" | 045490.docx | LEGALEASE-00141760-LEGALEASE-00141761 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 9532 | McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33 | 371+2005 | Section 8, clause 3, article 1, of the Constitution declares that "Congress shall have Power To regulate Commerce with foreign Nations, and among the several States." In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. See Gibbons v. Ogden, 9 Wheat. 1, 187, 6 L.Ed. 23; South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185, 58 S.Ct. 510, 513, 82 L.Ed. 734. | A state in imposing taxes for state purposes is not exercising any power which the Constitution has conferred on Congress, and it is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred on Congress that the tax exceeds constitutional limitations. U.S.C.A.Const. art. 1, S 8, cl. 3. | When does tax exceed constitutional limitations? | Taxation - Memo # 625 - C - SB.docx | ROSS-003289757-ROSS-003289758 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 9533 | E.I. Du Pont De Nemours v. Eggleston, 264 Va. 13 | 413+2 | We begin our analysis of the issue presented in this appeal mindful of two principles to be applied when considering benefits and awards available under the Workers' Compensation Act, Code "" 65.2"100 through 1310 (the Act). First, "[t]he right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise."Winston v. City of Richmond, 196 Va. 403, 407, 83 S.E.2d 728, 731 (1954). Second, the Act is remedial legislation and should be liberally construed in favor of the injured employee. Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944). | The right to compensation under the workmen's compensation law is granted by statute, and in giving the right, the legislature had full power to prescribe the time and manner of its exercise. West's V.C.A. S 65.2-100 et seq. | "Since the right to compensation under the workmens compensation law is granted by statue, what power does the legislature have?" | 048163.docx | LEGALEASE-00142049-LEGALEASE-00142050 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9534 | Seed Holdings v. Jiffy Int'l AS, 5 F. Supp. 3d 565 | 25T+145 | The dispute over the propriety of adjustments for non-compliance with GAAP falls well within the scope of the arbitration clause. Section 2.8 imposes no explicit limits on the type of objections to the calculation of working capital that may be raised before the arbitrators. To the contrary, the provision calls for "any dispute" relating to the determination of actual closing working capital to be submitted to the IAs for binding determination. Reasonably interpreted, Section 2.8 therefore reflects the parties' intent to arbitrate all disputes relating to the parties' differences over the determination of actual closing working capital. See Talegen Holdings, 1998 WL 513066. | Sellers' claim that independent accountants (IAs) exceeded scope of their authority under arbitration provision in asset purchase agreement by relying on generally accepted accounting principles (GAAP), rather than "GAAP in accordance with the Sellers' past custom and practices," as provided in agreement, as accounting methodology in determining working capital adjustments to be awarded to buyers was subject to arbitration, where provision imposed no explicit limits on type of objections to calculation of working capital that may be raised before IAs, but instead called for "any dispute" relating to determination of actual closing working capital to be submitted to IAs for binding determination, and calculation of working capital for purpose of making purchase price adjustment necessarily entailed resolving proper accounting methodology to be used. 9 U.S.C.A. S 10(a)(4). | Does a dispute over the propriety of adjustments for non-compliance with accounting principles fall within the scope of an arbitration clause? | 007512.docx | LEGALEASE-00143178-LEGALEASE-00143180 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9535 | Frana v. Rollins, 59 S.D. 156 | 83E+410 | Plaintiffs asked for an instruction that a promissory note may be transferred without a written indorsement on the back, provided the person or bank acquiring title pays value and the note is delivered. This in accordance with section 1753, Rev. Code 1919; Piper v. Hagen, 33 S. D. 491, 146 N. W. 692; Harrisv. Esterbrook, 55S. D. 538, 226N. W. 751, 70A. L. R. 241. Instead of the foregoing, the jury was instructed that the evidence relating to the indorsement appearing on the note was only to be considered as bearing on when the Tabor bank purchased and acquired the note. Respondent contends that by appellants' failure to except to this instruction given, they conceded its correctness. White et al. v. Lynch, 50 S. D. 601, 211 N. W. 447. The entire correctness of the instructions given may be conceded, but it may yet have been error to refuse to give the instruction requested, for that instruction covered matter not covered by the instruction given. | Note may be transferred without written indorsement, provided person or bank acquiring title pays value and note is delivered (Rev. Code 1919, S 1753). | Can title be acquired by transfer absent an endorsement? | 009608.docx | LEGALEASE-00142674-LEGALEASE-00142675 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9536 | United States v. Cornier-Ortiz, 361 F.3d 29 | 63+1(1) | This interplay between the bona fide exception and the prohibition against "intentional misapplication" is sensible. As the Second Circuit has explained, the first four prohibitions of " 666(a)(1)(A), embezzlement, stealing, obtaining by fraud, and knowing conversion, "cover any possible taking of money for one's own use or benefit. Intentional misapplication, in order to avoid redundancy, must mean intentional misapplication for otherwise legitimate purposes; if it were for illegitimate purposes, it would be covered by [the first four] prohibitions ...." United States v. Urlacher, 979 F.2d 935, 938 (2nd Cir.1992). The prohibition against intentional misapplication covers the situation presented here: payments made for what was an underlying legitimate purpose but intentionally misapplied to undermine a conflict of interest prohibition. To hold that such payments were bona fide under " 666(c) would be inconsistent with " 666(a)(1)(A). | Payments made for what was an underlying legitimate purpose, but intentionally misapplied to undermine a conflict of interest prohibition, were not within "bona fide salary exception" of statute governing theft or bribery relating to programs receiving federal funds. 18 U.S.C.A. S 666. | Does the bona fide exception apply to intentional misapplication of payments for legitimate purposes? | Bribery - Memo #151- C-CSS.docx | ROSS-003287213-ROSS-003287214 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9537 | State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars, 144 W. Va. 137 | 63+1(1) | At common law, all forms of bribery, except bribery of a judge in connection with a cause pending before him, were misdemeanors punishable by fine and imprisonment. State ex rel. Workman v. Anderson, 89 W.Va. 1, 109 S.E. 782; People v. Peters, 265 Ill. 122, 106 N.E. 513, Ann.Cas.1916A, 813; 8 Am.Jur., Bribery, Section 5; 11 C.J.S. Bribery " 2 a; Bishop's New Criminal Law, Vol. 2, Section 87. The distinction between bribery and an attempt to bribe was of very little practical importance at common law, and the offer to bribe though unaccompanied by acceptance or delivery of the gift or reward was indictable and punishable the same as if there had been both acceptance and delivery. People v. Peters, 265 Ill. 122, 106 N.E. 513, Ann.Cas.1916A, 813; State v. Ellis, 33 N.J.L. 102, 97 Am.Dec. 707; Rudolph v. State, 128 Wis. 222, 107 N.W. 466, 116 Am.St.Rep. 32. | At common law, all forms of bribery, except bribery of a judge in connection with a cause pending before him, were misdemeanors punishable by fine and imprisonment. | Under common law are all forms of bribery misdemeanors punishable by fine and imprisonment? | 011535.docx | LEGALEASE-00142342-LEGALEASE-00142343 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9538 | United States v. McLean, 802 F.3d 1228 | 110+1137(3) | The government cites United States v. Briston, 192 Fed.Appx. 84 (3d Cir.2006), an unpublished Third Circuit case, in support of this proposition. In Briston, the Third Circuit considered whether the district court had improperly instructed a jury that particular funds were federal benefits, and reasoned that whether something constitutes a benefit is a question of law: The determination of whether funds provided under a specific federal program constitute "benefits" for the purpose of 18 U.S.C. " 666(b) neither requires nor allows a case-by-case factual inquiry by a jury. It is clear from our discussion above, and the Court's analysis in Fischer, that this is a statutory inquiry that requires a court to decipher congressional intent by analyzing the "program's structure, operation, and purpose." This is plainly a question of law, not an issue of fact for the jury. Id. at 88 (quoting Fischer, 529 U.S. at 681, 120 S.Ct. 1780) (internal citation omitted). | Doctrine of invited error precluded government from arguing on appeal in bribery prosecution that district court erred in submitting to jury question of whether item could be classified as "benefit" required to establish federal jurisdiction, wheregovernment's proposed jury instruction explained that jury had to find that city received benefits in excess of $10,000 under federal program involving some form of federal assistance, and, at hearing on defendant's motion for judgment of acquittal, urged district court not to disturb jury's factual determination. 18 U.S.C.A. S 666. | Should the determination of whether funds provided under a specific federal program constitute benefits requires a case-by-case factual inquiry by a jury? | 012059.docx | LEGALEASE-00142593-LEGALEASE-00142594 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 9539 | People v. Litt, 221 Cal. App. 2d 543 | 63+9 | The nature of the crime necessarily requires caution on the part of the perpetrator in making his unlawful proposition, thus, the rule is that the language of the one soliciting need not always be explicit either as to the promise or thing promised, and the inference of an offer to bribe may be drawn from suggestive language (People v. Cincilione, 17 Cal.App. 513, 120 P. 438); and his "intent may be gathered from the surrounding circumstances." (People v. Rissman, 154 Cal.App.2d 265, 275, 316 P.2d 60, 69; People v. Megladdery, 40 Cal.App.2d 748, 106 P.2d 84.) Here, however, proof of the intent of defendant to solicit Bryman to offer a bribe is uncontradicted"he told Dietrich it would cost Bryman a "bundle" to "fix" his ABC and criminal case; he told Bryman he could "take care" of "the whole thing" for $1,700; he told Dobrichan, whom he called at "City Hall" in Bryman's presence, that he had $1,700 from Bryman "for the whole thing"; and after his arrest defendant admitted that he told Dietrich "he would try to fix his (Bryman's) case," that he was in M'Goo's to "fix" Bryman's ABC and criminal case, and that he intended Bryman to think that his money would "take care" of it. | Inference of offer to bribe may be drawn from suggestive language, and the intent may be gathered from surrounding circumstances; language of one soliciting another to offer or join in offer of bribing may not be explicit either as to the promise or the thing promised. West's Ann.Pen.Code, S 653f. | Can a persons intent in committing bribery be gathered from the surrounding circumstances? | 012210.docx | LEGALEASE-00142286-LEGALEASE-00142287 | Order, SA, Sub | 0.75 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9540 | Tarr v. Timberwood Park Owners Ass'n Inc., 510 S.W.3d 725 | 108+52 | We also agree with Munson that the term "residence" "generally requires both physical presence and an intention to remain." Munson, 948 S.W.2d at 816. Thus, "[i]f a person comes to a place temporarily, without any intention of making that place his or her home, that place is not considered the person's residence." Id. at 817. Instead, those persons are using a home for transient purposes. Id. And, as in Munson, we draw a distinction between "residential" purposes and "transient" purposes. See id. at 816"17. One leasing his home to be used for transient purposes is not complying with the restrictive covenant that it be used solely for residential purposes. See also Benard v. Humble, 990 S.W.2d 929, 931"32 (Tex. App."Beaumont 1999, pet. denied) (holding that homeowner's short term rental of home violated deed restriction that home could be used only for "single-family residence purposes"). | One leasing his home to be used for transient purposes is not complying with the restrictive covenant that it be used solely for residential purposes. | Is the leasing of a home used for transient purposes not complying with the restrictive covenant that it be used solely for residential purposes? | Domicile - Memo # 8 - C - SA.docx | ROSS-003287442-ROSS-003287443 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9541 | Gulf Restoration Network v. Salazar, 683 F.3d 158 | 260+5.1(1) | Under OCSLA, as amended in 1978, the development of an offshore oil well must be pursued by a lease purchaser or mineral lessee in four distinct administrative stages. See Sec'y of the Interior v. California, 464 U.S. 312, 336"37, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). The four stages are: "(1) formulation of a five year leasing plan by the Department of the Interior; (2) lease sales; (3) exploration by the lessees; (4) development and production. Each stage involves separate regulatory review that may, but need not, conclude in the transfer to lease purchasers of rights to conduct additional activities on the OCS.And each stage includes specific requirements for consultation with Congress, between federal agencies, or with the States." Id. at 337, 104 S.Ct. 656. | Each stage of Outer Continental Shelf Lands Act (OCSLA) involves separate regulatory review that may, but need not, conclude in the transfer to lease purchasers of rights to conduct additional activities on the Outer Continental Shelf (OCS); and each stage includes specific requirements for consultation with Congress, between federal agencies, or with the States. Outer Continental Shelf Lands Act, SS 2-31, 43 U.S.C.A. SS 1331-1356a. | Does each stage of OCLA involve separate regulatory review? | 021235.docx | LEGALEASE-00143246-LEGALEASE-00143247 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 9542 | Langston v. Red Iron Drilling Co., 38 F. Supp. 136 | 260+97 | The partnership, having for its purpose the drilling of an oil well, is an ordinary partnership. From the case of Green v. Hawkins & Antoon, La. App., 144 So. 271, at page 273, we quote: "We quite agree with defendants' counsel that a partnership engaged in drilling oil and gas wells is not a commercial partnership, under article 2825 of the Civil Code, but is rather an ordinary partnership, under article 2826 of the Civil Code. Then, if it is an ordinary partnership, the partners are not bound in solido for the debts of the partnership, but the liability of each partner is limited to his virile share." | Where an individual and a corporation each owned one half interest in an oil lease and each paid half of labor and all costs of production and partnership was formed for purpose of drilling an oil well, an ordinary "partnership" existed and the partners were not bound in solido for the debts of the partnership but the liability of each partner was limited to his virile share. LSA-C.C. art. 2826. | Are partners in an ordinary partnership bound in solido or for his virile share? | 021312.docx | LEGALEASE-00142506-LEGALEASE-00142507 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 9543 | Pub. Lands for the People v. U.S. Dep't of Agric., 697 F.3d 1192 | 260+9 | Consistent with this statutory scheme, the Secretary of Agriculture "may adopt reasonable rules and regulations which do not impermissibly encroach upon the right to the use and enjoyment of ... claims for mining purposes." United States v. Weiss, 642 F.2d 296, 299 (9th Cir.1981). Indeed, "there can be no doubt that the Department of Agriculture possesses statutory authority to regulate activities related to mining"even in non-wilderness areas"in order to preserve the national forests." Clouser, 42 F.3d at 1530 (citing 16 U.S.C. " 551). The Secretary of Agriculture has the right to restrict motorized access to specified areas of the national forests, including mining claims. Id. (means of access "may be regulated by the Forest Service"). More specifically, we have upheld Forest Service decisions restricting the holders of mining claims to the use of pack animals or other non-motorized means to access their claims. Id. at 1536"38. Relatedly, we have rejected the contention that conduct "reasonably incident [al]" to mining could not be regulated. United States v. Doremus, 888 F.2d 630, 632"33 (9th Cir.1989). Our precedent thus confirms that the Forest Service has ample authority to restrict motor vehicle use within the ENF. | Under the Organic Administration Act, the Department of Agriculture possesses statutory authority to regulate activities related to mining, even in non-wilderness areas, in order to preserve the national forests. Lieu Lands Act, S 1, 16 U.S.C.A. S 551. | Does the Department of Agriculture possess statutory authority to regulate activities related to mining? | Mines and Minerals - Memo #171 - C - EB.docx | ROSS-003302577-ROSS-003302579 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9544 | Choctaw Lumber Co. v. Gilmore, 11 Okla. 462 | 289+519 | (3541) Sec. 27. The certificate filed with the clerk of the district court provided in section 3539 must be signed by the partners and acknowledged before some officer authorized to take acknowledgments of conveyances of real property. Persons doing business as partners, contrary to the provisions of this article, shall not maintain any action on or on account of any contracts made or transactions had in their partnership name in any court of this territory until they have first filed the certificate and made the publication herein required: provided, however, that if such partners shall at any time comply with the provisions of this article, then such partnership shall have the right to maintain an action in all such partnership contracts and transactions entered into prior as well as after such compliance with this article, and the disabilities heretofore imposed on partnerships by said article, for a failure to comply therewith, are hereby removed and made to conform to this section." | St.1893, SS 3539, 3541, 54 Okl.St.Ann. SS 81, 83, providing that a partnership transacting business under a fictitious name shall file a certificate with the clerk of the district court, giving the names of the parties in full, and publish the same, and that persons so doing business contrary to the act shall not maintain any action in their name, is mandatory; and the publication must be of four consecutive weeks before any action can be maintained in the courts. | Can a partnership maintain an action on any contract made in the partnership name before filing the certificate and making the required publication? | 022418.docx | LEGALEASE-00143392-LEGALEASE-00143393 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9545 | Xylem Dewatering Sols. v. Dir., Div. of Taxation, 30 N.J. Tax 41 | 371+2005 | ["The Constitution places limits on a State's power to tax value earned outside of its borders." Allied"Signal, Inc. v. Director, Div. of Taxation, 504 U.S. 768, 784, 112 S.Ct. 2251, 2261, 119 L.Ed.2d 533, 550 (1992). "Under both the Due Process and the Commerce Clauses the Constitution, a State may not, when imposing an income-based tax, "tax value earned outside its borders." " Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). Thus, the business income of a unitary business must be apportioned among all the jurisdictions in which it conducts business. See MeadWestvaco Corp. v. Illinois Dep't of Revenue, 553 U.S. 16, 24"25, 128 S.Ct. 1498, 1505, 170 L.Ed.2d 404, 412 (2008). "The Commerce Clause forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation." Id. at 24, 128 S.Ct. 1498. The gain on the sale of the corporation's assets, however, constituted nonoperational/nonbusiness income and was not "earned" as business income beyond the borders of New Jersey. The Constitution does not require that nonbusiness income be apportioned among the states. See Ala. Dep't of Revenue v. Kimberly"Clark Corp., 95 So.3d 820, 826 (Ala. Civ. App. 2012). | The federal constitution places limits on a State's power to tax value earned outside of its borders. | Does the federal constitution place limits on a State's power to tax value earned outside of its borders? | 032950.docx | LEGALEASE-00143476-LEGALEASE-00143477 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9546 | In re Gen. Motors Corp., 296 S.W.3d 813 | 307A+554 | Courts must and do have the power to dismiss lawsuits even when"particularly when"they lack jurisdiction over the subject matter of the suit. The issue in this case is, "Does the district court somehow divest itself of this power by entering an order of abatement rather than an order of dismissal?" If the court has the power to reconsider the abatement and reinstate the case, then the court must also have the power to reconsider the abatement and dismiss the case. This is true even though the court does not have the power to adjudicate the claims in the case. Once again, a court's action in dismissing a case for want of prosecution may or may not be error, but it is not a void act or a nullity simply because the case has been abated by the court. | Courts must and do have the power to dismiss lawsuits even when-particularly when-they lack jurisdiction over the subject matter of the suit. | Do courts have the power to dismiss lawsuits even when particularly when they lack jurisdiction over the subject matter of the suit? | Pretrial Procedure - Memo # 5795 - C - PC.docx | LEGALEASE-00032567-LEGALEASE-00032568 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9547 | In re Kaila B., 64 A.D.3d 647 | 307A+560 | A failure to comply with the statutory requirements regarding the manner or time of publication has been held to be a jurisdictional defect (see Caton v. Caton, 72 Misc.2d 544, 545, 339 N.Y.S.2d 92; Doheny v. Worden, 75 A.D. 47, 77 N.Y.S. 959). Accordingly, the Family Court should have granted that branch of the father's motion which was to dismiss the petitions for lack of personal jurisdiction and should have denied as academic that branch of the father's motion which was to transfer venue of the proceedings concerning the children Christopher B. and Ava B. from Westchester County to Kings County. | Failure to comply with statutory requirements regarding manner or time of service by publication is a jurisdictional defect requiring dismissal of petition. | Is failure to comply with statutory requirements regarding manner or time of service by publication a jurisdictional defect? | Pretrial Procedure - Memo # 6125 - C - CK.docx | ROSS-003304841 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9548 | Alldred v. Alldred, 132 Conn. App. 430 | 307A+560 | Because service of process implicates a court's personal jurisdiction, "an action commenced by ... improper service must be dismissed." (Internal quotation marks omitted.) Jimenez v. DeRosa, 109 Conn.App. 332, 338, 951 A.2d 632 (2008). The dispositive issue in this case is whether, in two postjudgment contempt actions brought against a plaintiff who no longer resides in this country, the defendant properly served the plaintiff by mailing copies of the pleadings to the plaintiff's counsel of record. The defendant appeals from the judgment of the trial court granting the plaintiff's motions to dismiss the defendant's contempt actions. We affirm the judgment of the court. | Because service of process implicates a court's personal jurisdiction, an action commenced by improper service must be dismissed. | "Because service of process implicates a court's personal jurisdiction, should an action commenced by improper service be dismissed?" | Pretrial Procedure - Memo # 6128 - C - ES.docx | ROSS-003316077 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9549 | Reeves v. Travelers Ins. Companies, 421 A.2d 47 | 307A+747.1 | In exercising its discretion under Rule 16(d) or 37(b)(2), the trial court must answer three questions: (1) whether to impose a sanction; (2) upon whom-party or counsel or both-to impose the sanction; and (3) what sanction to impose. The answers to those questions depend upon the circumstances of the particular case, viewed in the light of the functions intended to be served by sanctions. In addition to penalizing noncompliance with a court order and trying to remedy the effect of the noncompliance by compensating the innocent party for the costs incurred therefrom or by extracting compliance from the recalcitrant party, the sanction selected should also serve as a deterrent to similar conduct by the same offender or others. See Note, "The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions," 91 Harv.L.Rev. 1033, 1034 (1978). The ultimate goal of any pretrial sanction is to promote fair and efficient litigation, both in the pending case and in the court system generally. Faced with the increasingly heavy demands upon limited judicial resources, all courts are more conscious than ever of the necessity for strict enforcement of their procedural orders. Id. at 1055. An appellate court will not lightly overrule a trial court's judgmental choice of an appropriate sanction under Rule 16(d) or 37(b)(2). | In exercising its discretion under Rules of Civil Procedure governing sanctions to be imposed for failure to comply with discovery or failure to comply with pretrial order, trial court must consider whether to impose sanction, upon whom, party or counselor or both, to impose sanction, and what sanction to impose. Rules of Civil Procedure, Rules 16(d), 37(b)(2). | Will the answer whether to impose a sanction on the party or counsel and what sanction to impose for failure to comply with the requirements of the rule governing pretrial procedure depend upon the particular circumstances? | 033817.docx | LEGALEASE-00142516-LEGALEASE-00142517 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 9550 | Louisville & C. Ry. Co. v. L. Heilprin & Co., 95 Ill. App. 402 | 307A+74 | The depositions do not appear to have been ever returned to the justice of the peace who issued the dedimus, nor to have been ever used or filed in his court, or filed in the Circuit Court. So far as appears, they may have been delivered by the commissioner who took them, to the attorneys, and by them kept until trial. They were not sealed up, but open, when presented. No motion to suppress was necessary. Such a motion would have been inapt, for there was nothing returned to the court or in the files to be suppressed. The depositions should not have been admitted. Chapter 51, Secs. 30 and 31, R. S. | Where depositions were not returned to justice of peace who issued the dedimus and were not filed in circuit court and were not sealed up, but were open when presented, depositions were improperly admitted. Smith-Hurd Stats. c. 51, SS 30, 31. | "Where depositions are not returned to justice of peace who issued the dedimus and are not filed in circuit court, are those depositions improperly admitted?" | 033891.docx | LEGALEASE-00142248-LEGALEASE-00142249 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 9551 | Edmunds v. Kraner, 142 Idaho 867 | 307A+746 | A trial court has authority to sanction parties for non-compliance with pretrial orders, and sanctions may include those enumerated in I.R.C.P. 37(b)(2)(B), (C) and (D) for discovery violations. | A trial court has authority to sanction parties for non-compliance with pretrial orders, and sanctions may include those enumerated in the rules of civil procedure for discovery violations. Rules Civ.Proc., Rules 16(i), 37(b)(2)(B, C, D). | Can sanctions include those enumerated in the rules of civil procedure for discovery violations? | Pretrial Procedure - Memo # 6371 - C - MS.docx | ROSS-003289874-ROSS-003289875 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9552 | Texas Entm't Ass'n v. Combs, 431 S.W.3d 790 | 371+2801 | "The mandate that all taxes be equal and uniform requires only that all persons falling within the same class be taxed alike." Upjohn Co. v. Rylander, 38 S.W.3d 600, 609 (Tex.App"Austin 2000, pet. denied). "The requirements for equal protection under the United States Constitution and equal and uniform taxation under the Texas Constitution are substantially the same." Id. "We will uphold a tax classification unless it has no rational basis.... In reviewing taxation laws, we indulge a strong presumption of constitutional validity." Id. The state generally has "broad powers to impose and collect taxes, but [it] may not make classifications among taxpayers that are arbitrary, unreasonable, or capricious." Id. Thus, the classifications within the sexually-oriented-business tax must reasonably relate to the adverse secondary effects that the tax is intended to address. See In re Nestle USA, 387 S.W.3d at 621"22 . | The state generally has broad powers to impose and collect taxes, but it may not make classifications among taxpayers that are arbitrary, unreasonable, or capricious. Vernon's Ann.Texas Const. Art. 8, S 1. | Do states have broad powers to impose and collect taxes? | 045309.docx | LEGALEASE-00142660-LEGALEASE-00142661 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9553 | Maricopa Cty. v. Trustees of Arizona, F. & A. M., 52 Ariz. 329 | 371+2060 | Property taxes are not personal debts; they are enforced contributions to the state or taxing unit for protection and unless otherwise provided are collectible only from the property assessed. 26 R.C.L. 25, sec. 11. Under our statutes, taxes on personal property may be enforced as against the taxpayer general property but they are not made debts of the owner in the general sense of that word. The statutory procedure for their collection is therefore exclusive. Board of Commissioners of Ness County v. Hopper, 110 Kan. 501, 204 P. 536. Under Section 3081, supra, the proceedings to collect taxes on personal property when the taxpayer has insufficient realty to pay his taxes is by distraint and sale by the assessor. Under Section 3112 the method prescribed is by distraint and sale by the county treasurer. The whole context of both these sections refers to tangible personal property property that can be seen, seized and exhibited at public auction. | "Property taxes" are not personal "debts," but are enforced contributions to state or taxing unit for protection, and, unless otherwise provided, are collectible only from the property assessed. | "Are ""property taxes"" enforced contributions to state or taxing unit for protection?" | 045681.docx | LEGALEASE-00143087-LEGALEASE-00143088 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9554 | Mitsui & Co. (USA) v. C&H Refinery, 492 F. Supp. 115 | 25T+182(1) | The Court begins with the premise that "waiver is not favored and the facts must be viewed in light of the strong federal policy supporting international arbitration agreements." Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc., 572 F.2d 1328, 1330 (9th Cir. 1978). In order to find a waiver, the Court "must be convinced not only that the (party seeking arbitration) acted inconsistently with that arbitration right, but that (the objecting party) was prejudiced by this action." Id. | Waiver of right to arbitrate is not favored and facts must be viewed in light of strong federal policy supporting international arbitration agreement; in order to find waiver, court must be convinced not only that party seeking arbitration acted inconsistently with that arbitration right, but that objecting party was prejudiced by such action. | Does a court need to be convinced that the other party was prejudiced before it can find a waiver? | 007741.docx | LEGALEASE-00144989-LEGALEASE-00144990 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 9555 | Walker v. Chief Quarantine Officer, 69 F. Supp. 980 | 34+27(1) | It is true that a civilian employee serving in the field or at a military post is subject to the military regulations and the lawful orders of superiors, and this by reason of the statute set forth above. | A civilian employee serving in the field or at a military post is subject to the military regulations and the lawful orders of superior. Articles of War, art. 2(d), 10 U.S.C.A. S 802. | Are all civilian employees serving in the field or at a military post is subject to the lawful orders of superiors? | 008660.docx | LEGALEASE-00144635-LEGALEASE-00144636 | SA, Sub | 0.1 | 0 | 0 | 1 | 1 | |
| 9556 | United States v. McDonnell, 792 F.3d 478 | 63+1(1) | We observe, first, that the federal bribery statute, 18 U.S.C. " 201(b), from which the honest-services wire fraud statute draws meaning, criminalizes the act of "corruptly demand[ing], seek[ing], receiv [ing], accept[ing], or agree[ing] to receive or accept" a thing of value in return for influence. 18 U.S.C. " 201(b)(2). The solicitation or acceptance of the bribe completes the crime, regardless of whether the recipient completes, or even commences, the "official act" the bribe payor sought to influence. See Howard v. United States, 345 F.2d 126, 128 (1st Cir.1965) ("[I]t has been long established that the crime of bribery is complete upon the acceptance of a bribe regardless of whether or not improper action is thereafter taken."). The same is true of a Hobbs Act extortion charge. See Evans, 504 U.S. at 268, 112 S.Ct. 1881 (recognizing that the crime of extortion under color of official right is "completed at the time when the public official receives a payment in return for his agreement to perform specific official acts"); United States v. Loftus, 992 F.2d 793, 797 (8th Cir.1993). In either case, when prosecuting a bribe recipient, the Government need only prove that he or she solicited or accepted the bribe in return for performing, or being influenced in, some particular official act. Of importance, the consummation of an "official act" is "not an element of the offense." Evans, 504 U.S. at 268, 112 S.Ct. 1881. | When prosecuting a bribe recipient, Government need only prove that he or she solicited or accepted the bribe in return for performing, or being influenced in, some particular official act; consummation of an official act is not an element of the offense. | Is consummation of an official act an element of the crime of bribery? | 012212.docx | LEGALEASE-00143751-LEGALEASE-00143752 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9557 | United States v. Anderson, 517 F.3d 953 | 350H+653(4) | We begin with the calculation of the base offense level. The district court applied the bribery provisions of " 2C1.1 to Anderson's conduct; Anderson believes that it should have applied the gratuity provisions of " 2C1.2. Convictions under " 666 and " 1343 call for the application of either " 2C1.1 or " 2C1.2, whichever is most appropriate or most specifically covers the offense conduct. See United States v. Agostino, 132 F.3d 1183, 1195 (7th Cir.1997); U.S.S.G. " 2C1.7(c)(4) (2003). The question here is simply whether Anderson's conduct was "more akin" to a gratuity or to a bribe. See Agostino, 132 F.3d at 1195. Unlike a gratuity, a bribe is a payment made with "a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official action." See U.S.S.G. " 2C1.1 cmt. background. Thus, we have distinguished bribes from gratuities as follows: "If the payer's intent is to influence or affect future actions, then the payment is a bribe. If, on the other hand, the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a gratuity." Agostino, 132 F.3d at 1195. In this case, it is clear that Anderson was attempting to influence the future actions of a public official. | If the payer's intent is to influence or affect future actions, then the payment is a "bribe," within the meaning of the Sentencing Guidelines; if, on the other hand, the payer intends the money as a reward for actions the payee has already taken, or is already committed to take, then the payment is a "gratuity." U.S.S.G. SS 2C1.1, 2C1.2, 18 U.S.C.A. | "When a payor intends to reward an officials past conduct, what does the payment constitute?" | 012240.docx | LEGALEASE-00143921-LEGALEASE-00143922 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9558 | Carlson v. Dist. Court of City & Cty. of Denver, 116 Colo. 330 | 135+2 | In Lyons v. Egan, 110 Colo. 227, 132 P.2d 794, 798, we quoted with approval from Rapaljae & Lawrence's Dictionary the following: "The distinction between mere residence and domicile must be borne in mind. The former is used in law to denote that a person dwells in a given place; the latter is the legal home of a person, or that place where the law presumes that he has the intention of permanently residing although he may be absent from it." (Italics ours.) | "Residence" denotes that person dwells in a given place but "domicile" is person's legal home, or place where law presumes that he has intention of permanently residing although he may be absent from it. | "Does ""residence"" denote a place where a person dwells?" | 014484.docx | LEGALEASE-00144363-LEGALEASE-00144364 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9559 | In re Quinn's Estate, 283 Ill. App. 597 | 135+2 | The words "residence," "residing," "domicile," and similar words, while having different shades of meaning, are often used synonymously and it is almost uniformly held that when such words are used in statutes they are used synonymously and signify "legal residence," or "domicile," unless their meaning is limited either by express definition in the statute or by the context of the act. In Herron v. Passailaigue, 92 Fla. 818, 110 So. 539, the Supreme Court of Florida stated the rule in the following language, at p. 543:"The rule is well settled that the terms "residence," "residing," or equivalent terms, when used in statutes, or actions, or suits relating to taxation, right of suffrage, divorce, limitations of actions, and the like, are used in the sense of "legal residence"; that is to say, the place of domicile or permanent abode, as distinguished from temporary residence." | The words "residence," "residing," and "domicile," though having different shades of meaning, are often used synonymously, and where such words are used in statutes they are used synonymously and signify legal residence or domicile unless their meaning is limited by express definition or context. | Does residence take on shades of meaning according to the context in which it is found? | 014496.docx | LEGALEASE-00144433-LEGALEASE-00144434 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 9560 | Roesler v. Roesler, 396 S.C. 100 | 135+4(2) | The term "reside" as used in this section is "equivalent in substance to "domicile." " Gasque v. Gasque, 246 S.C. 423, 426, 143 S.E.2d 811, 812 (1965). Domicile "means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning." Id. "The true basis and foundation of domicile is the intention, the quo animo, of residence." Id. | "Domicile" means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning. | "Is a person's domicile a place to which whenever he is absent, he has the intention of returning?" | Domicile - Memo # 24 - C - SA.docx | ROSS-003288336-ROSS-003288337 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 9561 | Coyote Lake Ranch v. City of Lubbock, 498 S.W.3d 53 | 260+55(2) | Texas law has always recognized that a landowner may sever the mineral and surface estates and convey them separately. The severed mineral estate has the implied right to use as much of the surface estate as reasonably necessary to produce and remove minerals. As far back as 1862, we declared that this right was a "well established doctrine from the earliest days of the common law" and civil law. The right is born of a simple logic: "a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved." In the law of servitudes, the mineral estate is called "dominant" and the surface estate "servient", not because the mineral estate is in some sense superior, but because it receives the benefit of the implied right of use of the surface estate. | A landowner may sever the mineral and surface estates and convey them separately; the severed mineral estate has the implied right to use as much of the surface estate as reasonably necessary to produce and remove minerals. | Can the mineral estate use as much of the surface estate as reasonably necessary to produce and remove minerals? | Mines and Minerals - Memo #245 - C - CSS.docx | ROSS-003302611-ROSS-003302612 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9562 | Herrington v. Martinez, 45 F. Supp. 543 | 260+12 | For an individual to avail himself of the right to locate a mining claim under one of the above statutes, citizenship of the United States, or a declaration of intention to become such is a prerequisite. | Under federal and California statutes, citizenship in the United States or declaration of intention to become a citizen is a prerequisite to locating of mining claims. 30 U.S.C.A. S 22; Civ.Code Cal. S 1426. | "For an individual to avail himself of the right to locate a mining claim or purchase mineral deposits in lands belonging to the United States, is citizenship of the United States or declaration of intention to become such a prerequisite?" | 021501.docx | LEGALEASE-00145044-LEGALEASE-00145045 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 9563 | Bridges v. Ingram, 122 Colo. 501 | 302+49 | We are fully convinced that the Rules of Civil Procedure were intended to de-emphasize the theory of a "cause of action," and to place the emphasis upon the facts giving rise to the asserted claim. If sufficient notice concerning the transaction involved is afforded the adverse party, the theory of the pleader is not important. If, under the facts, the substantive law provided relief upon any "theory," the cause should proceed to judgment. This construction seems to be in harmony with the views expressed by members of the rules Revision Committee of the Colorado Bar Association concerning the purposes and intent of the Rules of Civil Procedure, as will appear from the statement thereof in Appendix D, vol. 1, '35 C.S.A., Rules of Civil Procedure. | If sufficient notice concerning transaction involved is afforded adverse party, theory of the pleader is not important. Rules of Civil Procedure, rules 1(a), 8(a), (f), 54(c). | Is the theory of the pleader important if the adverse party is afforded sufficient notice of the transaction involved? | Pleading - Memo 426 - RMM.docx | ROSS-003289266-ROSS-003289267 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 9564 | Abrons Family Practice & Urgent Care, PA v. N. Carolina Dep't of Health & Human Servs., 792 S.E.2d 528 | 307A+554 | Judicial review of the final decision of a State agency is governed by the Administrative Procedure Act (APA), N.C. Gen. Stat. " 150B"1 et seq., which applies to "both trial and appellate court review of administrative agency decisions." N.C. Dept. of Correction v. Myers, 120 N.C.App. 437, 440, 462 S.E.2d 824, 826 (1995). N.C. Gen. Stat. " 150B"43 (2015) states in relevant part that "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article[.]" "An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." Johnson v. Univ. of N.C., 202 N.C.App. 355, 357, 688 S.E.2d 546, 548 (2010) (internal quotations omitted). "[T]he exhaustion requirement may be excused if the administrative remedy would be futile or inadequate." Justice for Animals, Inc. v. Robeson Cty., 164 N.C.App. 366, 372, 595 S.E.2d 773, 777 (2004) (citing Huang v. N.C. State University, 107 N.C.App. 710, 715, 421 S.E.2d 812, 815 (1992)). | An action is properly dismissed for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies. N.C. Gen. Stat. Ann. S 150B-43; N.C. R. Civ. P. S 1A-1. | Does a party's failure to exhaust administrative remedies permit a court to dismiss the action for lack of subject matter jurisdiction? | 032920.docx | LEGALEASE-00143743-LEGALEASE-00143744 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 9565 | Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371 | 228+498 | If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities'. Id., 10 Wheat. page 199, 6 L.Ed. 300. See, also, Skillern's Executors v. May's Executors, 6 Cranch 267, 3 L.Ed. 220; Des Moines Navigation Co. v. Iowa Homestead Co., 123 U.S. 552, 557, 559, 8 S.Ct. 217, 219, 220, 31 L.Ed. 202; Dowell v. Applegate, 152 U.S. 327, 340, 14 S.Ct. 611, 616, 38 L.Ed. 463; Evers v. Watson, 156 U.S. 527, 533, 15 S.Ct. 430, 432, 39 L.Ed. 520; *377 Cutler v. Huston, 158 U.S. 423, 430, 431, 15 S.Ct. 868, 870, 871, 39 L.Ed. 1040. This rule applies equally to the decrees of the District Court sitting in bankruptcy, that is, purporting to act under a statute of Congress passed in the exercise of the bankruptcy power. The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. Stoll v. Gottlieb, 305 U.S. 165, 171, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104. | A federal District Court sitting in bankruptcy has authority to pass upon its own jurisdiction, and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. | Does a court have the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it do not have jurisdiction? | 033105.docx | LEGALEASE-00144077-LEGALEASE-00144078 | Order, SA, Sub | 0.8 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9566 | Humphries v. McCraw, 5 Ark. 61 | 307A+74 | This brings us to the question of the admissibility of the evidence of McKee. The principal objection relates to the jurat, and certificate being taken before and by a justice of the peace, who, it is alleged, was not acting in his own township. The mere administering of the oath was not necessarily a judicial act, coming within the question of the power of the justice to adjudicate. It is the mere executing of a commission, directed to the justice. And if the law sanctioned the directing of the commission to a private commissioner (as is the case in many of the States), then any freeholder, or other person, authorized by the statutory regulation, might execute the commission and administer the oath. Although a justice of the peace is not authorized to act judicially, in the hearing and determining of causes, in a civil proceeding, beyond their respective townships, yet we apprehend that they may administer oaths, or certify depositions anywhere within the limits of their respective counties. We can, therefore, see no error in the admission of the depositions. | Justices of the peace may administer oaths or certify depositions anywhere within their respective counties. | Can justices of the peace administer oaths or certify depositions anywhere within their respective counties? | 033116.docx | LEGALEASE-00144217-LEGALEASE-00144218 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 9567 | Tubiolo v. Abundant Life Church, 167 N.C. App. 324 | 307A+681 | The appropriate standard of review in this case is de novo. Emory, 165N.C.App. at """", 598 S.E.2d at 669. In considering a motion to dismiss for lack of subject matter jurisdiction, it is appropriate for the court to consider and weigh matters outside of the pleadings. Tart v. Walker, 38 N.C.App. 500, 502, 248 S.E.2d 736, 737 (1978). Plaintiffs' complaint asserts three bases for their claim that defendant improperly terminated their membership: (1) the grounds stated in the termination letter were not accurate; (2) the persons purporting to terminate their membership were without authority to take that action; and (3) the termination was not conducted in a fair and reasonable manner and in good faith as required by N.C. Gen.Stat. " 55A"6"31(a). | In considering a motion to dismiss for lack of subject matter jurisdiction, it is appropriate for the court to consider and weigh matters outside of the pleadings. Rules Civ.Proc., Rule 12(b)(1), West's N.C.G.S.A. S 1A-1. | Can the district court appropriately consider materials outside the pleadings in considering a motion to dismiss for lack of subject-matter jurisdiction? | 033204.docx | LEGALEASE-00144979-LEGALEASE-00144980 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9568 | O'Hara v. City of Hattiesburg, 222 So. 3d 314 | 307A+560 | However, the circuit court dismissed the complaint for insufficient service of process on March 2, 2015, only a little over three weeks after the complaint was filed. Rule 4(h) provides that a plaintiff has 120 days in which to serve the defendant. "[U]ntil that 120"day period has expired, any attempt to seek dismissal on the grounds of defective service clearly would be premature." McGinnis v. Shalala, 2 F.3d 548, 551 (5th Cir. 1993) (applying then"Federal Rule of Civil Procedure 4(j), subsequently relettered as Rule 4(m)); accord State Farm Fire & Cas. Co. v. Smith, 39 So.3d 1172, 1174 (Ala. Civ. App. 2009) (applying Alabama Rule of Civil Procedure 4(b) and holding that a trial court cannot dismiss a complaint for insufficient service within the 120"day period permitted for service). | Until statutory 120-day period for serving defendant has expired, any attempt to seek dismissal on the grounds of defective service is premature. Miss. R. Civ. P. 4(h). | "Until the statutory 120 day period for serving a defendant has expired, is any attempt to seek dismissal on the grounds of defective service premature?" | 033537.docx | LEGALEASE-00143619-LEGALEASE-00143620 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9569 | Davis v. Urquiza, 233 N.C. App. 462 | 307A+560 | "We review de novo the grant of a motion to dismiss." Lea v. Grier, 156 N.C.App. 503, 507, 577 S.E.2d 411, 414 (2003). Where there is no valid service of process, the court lacks jurisdiction over a defendant, and a motion to dismiss pursuant to Rule 12(b) should be granted. Sink v. Easter, 284 N.C. 555, 561, 202 S.E.2d 138, 143 (1974). | Where there is no valid service of process, the court lacks jurisdiction over a defendant, and a motion to dismiss should be granted. Rules Civ.Proc., Rule 12(b), West's N.C.G.S.A. S 1A-1. | "Where there is no valid service of process, does the court lack jurisdiction over a defendant, and a motion to dismiss should be granted?" | Pretrial Procedure - Memo # 6132 - C - NS.docx | ROSS-003318352-ROSS-003318353 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 9570 | Johnston v. Ethyl Corp., 683 F. Supp. 1059 | 170A+1837.1 | A dismissal without prejudice under Rule 4(j) is intended to leave the plaintiff in the same position as if the action had never been filed. 4A Wright & Miller, Federal Practice and Procedure section 1137, p. 399 (1987); Hilbun v. Goldberg, 823 F.2d 881, 883 (5th Cir.1987); Taylor v. Bunge Corp., 775 F.2d 617, 619 (5th Cir.1985). The mere fact that the statute of limitations has run does not prevent a Rule 4(j) dismissal. Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1307 (5th Cir.1985); Redding v. Essex Crane Rental Corp. of Alabama, 752 F.2d 1077 (5th Cir.1985). Although Rule 4(j) dismissal may be without prejudice, it may effectively be with prejudice because plaintiff's action may be time barred. Norlock v. City of Garland, 768 F.2d 654, 658 (5th Cir.1985). In Norlock the court specifically addressed the issue involved in this case and stated:It is not [the function of the court] to create exceptions to the rule for cases in which dismissal without prejudice may work prejudice in fact or for some causes of action on the basis that these are more favored than others. The time limits in Rule 4j, although they are meant to be strictly enforced, are not unduly harsh, as the time may be enlarged by the court pursuant to Rule 6b, if necessary. | A dismissal without prejudice under rule providing for such dismissal if service is not made upon a defendant within 120 days after filing of complaint is intended to leave plaintiff in the same position as if the action had never been filed. Fed.Rules Civ.Proc.Rule 4(j), 28 U.S.C.A. | Is dismissal without prejudice under for failure to serve process intended to leave the plaintiff in the same position as if the action never had been filed? | Pretrial Procedure - Memo # 6140 - C - SN.docx | LEGALEASE-00034003-LEGALEASE-00034004 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9571 | Alldred v. Alldred, 132 Conn. App. 430 | 307A+560 | Because service of process implicates a court's personal jurisdiction, "an action commenced by ... improper service must be dismissed." (Internal quotation marks omitted.) Jimenez v. DeRosa, 109 Conn.App. 332, 338, 951 A.2d 632 (2008). The dispositive issue in this case is whether, in two postjudgment contempt actions brought against a plaintiff who no longer resides in this country, the defendant properly served the plaintiff by mailing copies of the pleadings to the plaintiff's counsel of record. The defendant appeals from the judgment of the trial court granting the plaintiff's motions to dismiss the defendant's contempt actions. We affirm the judgment of the court. | Because service of process implicates a court's personal jurisdiction, an action commenced by improper service must be dismissed. | Should an action commenced by improper service be dismissed because service of process implicates a court's personal jurisdiction? | 033648.docx | LEGALEASE-00144089-LEGALEASE-00144090 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9572 | Cuccia v. H.M. Weiner & Assocs., 234 A.D.2d 26 | 307A+560 | The failure to serve a summons with the complaint in this matter is a jurisdictional defect requiring dismissal of the action (CPLR 304; cf. CPLR 305[b], Siegel, N.Y. Prac " 60, at 75; " 62 [2d ed] ). Accordingly, the action was properly dismissed. In light of the foregoing, we do not reach plaintiff's remaining contentions. | Failure to serve summons with complaint is jurisdictional defect requiring dismissal of action. McKinney's CPLR 304, 305(b). | Is failure to serve summons with complaint a jurisdictional defect requiring dismissal of action? | 034021.docx | LEGALEASE-00144413-LEGALEASE-00144414 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9573 | U.S. Bank Nat. Ass'n v. Croteau, 183 So. 3d 1089 | 307A+563 | First, Florida Rule of Civil Procedure 1.440 permits a case to be set for trial when it is "at issue." Here, although the Croteaus failed to answer the complaint, the bank never obtained a default. This failure prevented the action from being "at issue." Ocean Bank v. Garcia"Villalta, 141 So.3d 256, 257"58 (Fla. 3d DCA 2014); Bennett v. Cont'lChems., Inc., 492 So.2d 724, 727 n. 1 (Fla. 1st DCA 1986). Second, dismissal is considered the most extreme of sanctions and "should be reserved for cases involving flagrant violations of procedural rules."Goldberg v. Law Office of Sara Lawrence, P.A., 150 So.3d 862, 864 (Fla. 4th DCA 2014). Such an extreme sanction was not warranted under the facts of this case. See also Krock v. Rozinsky, 78 So.3d 38, 41 (Fla. 4th DCA 2012) (recognizing factors to be considered in assessing whether denial of motion for continuance was an abuse of discretion are (1) whether denial creates injustice for moving party; (2) whether cause of request was unforeseeable by moving party and not result of dilatory practices; and (3) whether opposing party would suffer prejudice or inconvenience). | Dismissal is considered the most extreme of sanctions and should be reserved for cases involving flagrant violations of procedural rules. | Is dismissal an extreme sanction and should be reserved for cases involving flagrant violations of procedural rules? | 034192.docx | LEGALEASE-00144716-LEGALEASE-00144717 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 9574 | Lindsey v. King, 894 So. 2d 1058 | 30+784 | "A sanction imposed under rule 9.410 of the Florida Rules of Appellate Procedure must be commensurate with the violation. Dismissal is an extreme sanction and, as such, it is reserved for the most flagrant violations of the appellate rules." Irvin v. Williams, 736 So.2d 705, 705 (Fla. 1st DCA 1999) (citing Swicegood v. Dep't of Transp., 394 So.2d 1111 (Fla. 1st DCA 1981)). Generally, appellate courts are reluctant to impose the harsh sanction of dismissal, as it results in " "the sins of the attorney being visited upon the client." " Hastings, 640 So.2d at 116 (quoting Moose v. State, 519 So.2d 61, 62 (Fla. 2d DCA 1988)); see also Gentry v. Gentry, 463 So.2d 511, 512 (Fla. 1st DCA 1985) (publicly reprimanding an attorney in a consolidated opinion involving three tardy appeals from the same attorney, and holding that, despite previous rule violations, which were brought to counsel's attention and which he persisted in ignoring, counsel's actions did not rise to the level of contempt and did not warrant dismissal of the appeals). In Gentry, this Court observed that "[t]o dismiss the appeals would only serve to penalize the client for shortcomings of counsel," a disfavored course of action. 463 So.2d at 512 (citing Winstead v. Adams, 363 So.2d 807 (Fla. 1st DCA 1978)). | A sanction imposed under rules of appellate procedure must be commensurate with the violation; dismissal is an extreme sanction and, as such, it is reserved for the most flagrant violations of the appellate rules. West's F.S.A. R.App.P.Rule 9.410. | Is dismissal an extreme sanction and should be reserved for cases involving flagrant violations of procedural rules? | Pretrial Procedure - Memo # 6593 - C - PC.docx | LEGALEASE-00034219-LEGALEASE-00034220 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 9575 | M.L. v. Eskenazi Health / Midtown Mental Health CMHC, 80 N.E.3d 219 | 13+6 | In their respective appellate briefs, Eskenazi advocates and M.L. concedes that the case is moot because the Order of Commitment expired on March 5, 2017. Therefore, this court cannot render effective relief to M.L. See In re Commitment of T.K., 993 N.E.2d 245, 248 (Ind. Ct. App. 2013), trans. denied. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." Id. However, although moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." Id. Typically, cases falling in the "great public interest exception" contain issues that are likely to recur. Id. | When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed. | Is the case deemed moot and then dismissed if a court is unable to render effective relief to a party? | Pretrial Procedure - Memo # 6613 - C - NS.docx | ROSS-003301869-ROSS-003301870 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9576 | Brumnett v. Psychiatric Sec. Review Bd., 315 Or. 402 | 13+6 | Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot. See Mid"County Future Alt. v. Metro. Area LGBC, 304 Or. 89, 742 P.2d 47 (1987) (declining to reach the merits of the case after the legislature adopted a law that controlled the issue presented in the case); Kay v. David Douglas Sch. Dist. No. 40, 303 Or. 574, 738 P.2d 1389 (1987) (holding that there was no justiciable controversy because the commencement ceremony, at which the giving of any formal prayer had been enjoined, already had occurred by the time the appeal reached the court), cert. den. 484 U.S. 1032, 108 S.Ct. 740, 98 L.Ed.2d 775 (1988); Oregon Republican Party v. State of Oregon, 301 Or. 437, 722 P.2d 1237 (1986) (dismissing as moot an action to allow the solicitation of absentee ballot requests for an election that had already been held). | Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties will be dismissed as moot. | "Will a case on which a court's decision will no longer have a practical effect, be dismissed as moot?" | 034281.docx | LEGALEASE-00144795-LEGALEASE-00144796 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9577 | Wasilewicz v. Vill. of Monroe Police Dep't, 288 A.D.2d 377 | 307A+746 | The Supreme Court should not have marked the case "off" based upon the plaintiff's failure to attend a status conference, since CPLR 3404 should not be applied to pre-note of issue cases (see, Lopez v. Imperial Delivery Serv., 282 A.D.2d 190, 725 N.Y.S.2d 57). The Supreme Court could have issued an order dismissing the action in its entirety based upon the plaintiff's failure to appear for the pre-note of issue conference, pursuant to 22 NYCRR 202.27(c), in which case the plaintiff would have been required to move to vacate the default within one year, and offer both a reasonable excuse for the default and demonstrate the existence of a meritorious claim (see, Lopez v. Imperial Delivery Serv., supra). However, since the Supreme Court improperly marked the case "off" pursuant to CPLR 3404, the motion to restore the action should have been granted (see, Zanani v. Savad, 286 A.D.2d 386, 728 N.Y.S.2d 714). | Where note of issue had not yet been filed, action could not be marked "off" the calendar for plaintiff's failure to attend status conference. McKinney's CPLR 3404. | "Where note of issue had not yet been filed, can an action be marked ""off"" the calendar for plaintiff's failure to attend status conference?" | Pretrial Procedure - Memo # 6659 - C - KG.docx | ROSS-003303277-ROSS-003303278 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 9578 | Harstad v. City of Woodbury, 902 N.W.2d 64 | 307A+552 | This court reviews de novo whether a cause of action is moot. Isaacs v. Am. Iron & Steel Co., 690 N.W.2d 373, 376 (Minn. App. 2004), review denied (Minn. Apr. 4, 2005). "[M]ootness can be described as the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Kahn v. Griffin, 701 N.W.2d 815, 821 (Minn. 2005) (quotation omitted). A district an event occurs that resolves the issue or renders it impossible to grant effective relief." Isaacs, 690 N.W.2d at 376. | A district court may dismiss a cause of action as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. | Will a matter be dismissed as moot if an event occurs that resolves the issue or renders it impossible for the court to grant effectual relief? | 034316.docx | LEGALEASE-00144269-LEGALEASE-00144270 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9579 | McCormick v. Meyer, 582 N.W.2d 141 | 307A+560 | If there is a delay in service, the court must first determine if the delay was presumptively abusive. Mokhtarian, 578 N.W.2d at 668. If the court finds the delay is presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified. Id. If the delay was not justified, the case must be dismissed. Once the petition is filed, the plaintiff bears the burden of ensuring that the service of the original notice and petition is both proper and timely. Id. | If there is a delay in service, the court must first determine if the delay was presumptively abusive; if the court finds the delay is presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified, and if the delay was not justified, the case must be dismissed. | "If delay in completing service is presumptively abusive, should the court determine if the plaintiff has shown the delay was justified?" | 034362.docx | LEGALEASE-00143987-LEGALEASE-00143988 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 9580 | Savino v. Florida Drive In Theatre Mgmt., 697 So. 2d 1011 | 307A+690 | These repeated fabrications undermined the integrity of his entire action.We believe that the trial court has the right and obligation to deter fraudulent claims from proceeding in court. See id.; Tri Star Invs., Inc. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981); Tramel v. Bass, 672 So.2d 78, 83 (Fla. 1st DCA), rev. denied, 680 So.2d 426 (Fla.1996). Appellant's conduct amounted to a scheme calculated to interfere with the court's ability to impartially adjudicate his claim. Thus, we do not find that the trial court clearly abused its discretion in dismissing the case with prejudice. | Trial court did not abuse its discretion in dismissing, with prejudice, personal injury case in which plaintiff sought recovery for brain damage and lost wages, based on plaintiff's fraud regarding preaccident intelligence and ability to work, despite argument that misconduct pertained to only portion of claim, as plaintiff lied about matters which went to heart of his claim on damages and repeated fabrications undermined integrity of his entire action; plaintiff's conduct amounted to scheme calculated to interfere with trial court's ability to impartially adjudicate his claim. | "Where repeated fabrications undermine the integrity of a party's entire case, is a dismissal for fraud upon the court proper?" | 034457.docx | LEGALEASE-00143774-LEGALEASE-00143775 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 9581 | Hibner v. Bruening, 78 Conn. App. 456 | 307A+560 | A proper officer serving process must comply with the provisions of " 52"57(a), which require that process be served by leaving it "with the defendant, or at his usual place of abode...." If Nardini simply left the papers at a place where the defendants did not live, service would not have been effective and jurisdiction would not have vested in the court. See Bove v. Bove, 77 Conn.App. 355, 363, 823 A.2d 383 (2003). Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed. Collins v. Scholz, 34 Conn.Supp. 501, 506, 373 A.2d 200 (1976). | Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed. C.G.S.A. S 52-57(a). | Is abode service not effective if it is left at an address that is not the usual address of the party to be served? | Pretrial Procedure - Memo # 6769 - C - ES.docx | ROSS-003318403 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 9582 | Duarte v. Snap-on Inc., 216 So. 3d 771 | 307A+563 | To obtain a dismissal for fraud on the court, the movant must prove his case by clear and convincing evidence. See Myrick v. Direct Gen. Ins. Co., 932 So.2d 392, 392 (Fla. 2d DCA 2006). Substantively, he must show that his opponent "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Jacob, 840 So.2d at 1169 (quoting Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998)). This standard requires that a trial court "balance two important public policies of this state: our much preferred policy of adjudicating disputed civil cases on the merits and the policy of maintaining the integrity of this state's judicial system." Pena v. Citizens Prop. Ins. Co., 88 So.3d 965, 967 (Fla. 2d DCA 2012) (citing Gilbert v. Eckerd Corp. of Fla., 34 So.3d 773, 776 (Fla. 4th DCA 2010)). "Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim." Howard, 959 So.2d at 311. | To obtain a dismissal for fraud on the court, the movant must prove his case by clear and convincing evidence; substantively, he must show that his opponent sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense, which standard requires that a trial court balance two important public policies of the state, which consist of the preferred policy of adjudicating disputed civil cases on the merits and the policy of maintaining the integrity of the state's judicial system. | "To obtain a dismissal for fraud on the court, should the movant prove his case by clear and convincing evidence?" | Pretrial Procedure - Memo # 6839 - C - SK.docx | ROSS-003289393-ROSS-003289394 | Order, SA | 0.47 | 1 | 0 | 0 | 1 | |
| 9583 | Scott v. W. S. Badcock Corp., 161 Ga. App. 826 | 307A+746 | "The authority of the trial court to dismiss plaintiff's complaint for failure to appear at a pretrial hearing is clearly established by Code Ann. " 81A-141(b) and Weeks v. Weeks, 243 Ga. 416, 254 S.E.2d 366 [(1979)]." Turner v. T & T Oldsmobile, 154 Ga.App. 228(1), 267 S.E.2d 833 (1980). The opinion of this court in Riden v. Commercial Credit Plan, 136 Ga.App. 191, 220 S.E.2d 746 (1975), is in conflict with the foregoing authority and will no longer be followed. | Trial court has authority to dismiss complaint for failure to appear at pretrial hearing; overruling Riden v. Commercial Credit Plan, 136 Ga.App. 191, 220 S.E.2d 746. Code, S 81A-141(b). | Does a trial court have authority to dismiss a complaint for failure to appear at a pretrial hearing? | Pretrial Procedure - Memo # 6852 - C - ES.docx | ROSS-003315476-ROSS-003315477 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 9584 | Am. Hous. Corp. v. Rhoades, 1 Ohio App. 3d 130 | 307A+746 | There is no question that trial courts have authority to impose sanctions where the actions of a party operate to thwart the judicial process. But justice requires that where a range of sanctions is available, the most drastic sanctions must be reserved for flagrant cases. See Ward v. Hester (1973), 36 Ohio St. 2d 38, 303 N.E.2d 861, 65 O.O.2d 181, certiorari denied sub nom. Continental Casualty Co. v. Ward (1974), 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881. | Trial courts have authority to impose sanctions where actions of party operate to support judicial process; but justice requires that where range of sanctions is available, most drastic sanctions must be reserved for flagrant cases. | Do trial courts have authority to impose sanctions where actions of a party operate to support judicial process? | Pretrial Procedure - Memo # 6854 - C - ES.docx | ROSS-003316378-ROSS-003316379 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 9585 | Donaldson v. Greenwood, 40 Wash. 2d 238 | 106+7 | An action to impress a party with an implied trust is a transitory one. The trust may be enforced and a conveyance ordered wherever the trustee may be found, regardless of the situs of the property. State ex rel. Campbell v. Superior Court, 7 Wash. 306, 34 P. 1103; State ex rel. Scougale v. Superior Court, 55 Wash. 328, 104 P. 607. | An action to impress a party with an implied trust is a transitory one and the trust may be enforced and a conveyance ordered wherever the trustee may be found, regardless of the situs of the property. | Is a proceeding to impose a trust a transitory action even if real estate may be affected? | 047514.docx | LEGALEASE-00144932-LEGALEASE-00144933 | Condensed, SA | 0.4 | 0 | 1 | 0 | 1 | |
| 9586 | Riverside Publ'g Co. v. Mercer Publ'g LLC, 829 F. Supp. 2d 1017 | 25T+182(1) | There are three prerequisites to a conclusion that a party waived its arbitration right: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir.1990). Mercer, as the party arguing for waiver, bears a "heavy burden of proof." Id.; see also Cone Mem. Hosp., 460 U.S. at 24"25, 103 S.Ct. 927 ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Despite the Settlement Agreement's general Washington choice-of-law clause, federal law alone governs the court's waiver inquiry. Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1269"70 (9th Cir.2002). | There are three prerequisites to a conclusion that a party waived its arbitration right under the Federal Arbitration Act (FAA): (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. 9 U.S.C.A. S 1. | What are the three prerequisites required to conclude that a party waived its right to arbitration? | Alternative Dispute Resolution - Memo 731 - RK.docx | ROSS-003290754-ROSS-003290755 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9587 | Falcon Steel Co. v. Weber Eng'g Co., 517 A.2d 281 | 25T+182(1) | Nor does Falcon's position improve because Falcon has chosen to label its contention as one of "waiver" or "estoppel". For a party to be found to have waived its right to arbitrate, it must have actively participated in a lawsuit or taken other action inconsistent with the right to arbitration. N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722, 728 (8th Cir.1976); Cornell & Company v. Barber & Ross Company, 360 F.2d 512, 513 (1966). To the extent that "waiver" is used in the sense of laches or estoppel, it operates to bar arbitration only where the arbitration remedy would be inequitable, such as where relevant evidence has been lost due to delay. Waiver in the "laches" or "estoppel" sense is generally an issue for the arbitrator. N & D Fashions, Inc., 548 F.2d at 728"29; Trafalgar Shipping Co. v. International Milling Company, 401 F.2d 568, 571 (2d Cir.1968). On this limited record, there is no basis for concluding that Weber has taken any action inconsistent with arbitration or that any evidence has been lost as a result of its alleged delay. Accordingly, Falcon's defense of waiver is one that must be determined in the arbitration. | To extent that "waiver" is used in sense of laches or estoppel, by party claiming waiver of right to arbitrate by another, "waiver" operates to bar arbitration only where arbitration remedy would be inequitable, such as where relevant evidence has been lost due to delay. | Can waiver be used to bar arbitration? | 007791.docx | LEGALEASE-00146454-LEGALEASE-00146455 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9588 | United States v. Brewster, 408 U.S. 501 | 63+1(1) | The question is whether it is necessary to inquire into how appellee spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute. The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise. | In bribery prosecution, the Government need not show that defendant fulfilled the illegal bargain, and it does not matter if he defaults, since acceptance of the bribe is the violation of the statute, not performance of the illegal promise. 18 U.S.C.A. SS 2, 201(b), (c) (1), (g). | "In bribery prosecution, does the Government need to show that defendant fulfilled the illegal bargain?" | 012292.docx | LEGALEASE-00145387-LEGALEASE-00145388 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 9589 | United States v. Terry, 707 F.3d 607 | 63+1(1) | One element of bribery is that the public official must agree that "his official conduct will be controlled by the terms of the promise or the undertaking." McCormick v. United States, 500 U.S. 257, 273 [111 S.Ct. 1807, 114 L.Ed.2d 307] (1991); see also United States v. Brewster, 408 U.S. 501, 526 [92 S.Ct. 2531, 33 L.Ed.2d 507] (1972) ("The illegal conduct is taking or agreeing to take money for a promise to act in a certain way."); United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993) (looking to extortion cases to interpret a bribery statute because the two crimes are "different sides of the same coin"). | One element of bribery involving a public official is that the public official must agree that his official conduct will be controlled by the terms of the promise or the undertaking; this agreement must include a quid pro quo, the receipt of something of value in exchange for an official act, but the agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts, rather, it is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose. 18 U.S.C.A. S 201(b)(2). | "To commit bribery, should the public official agree that his official conduct will be controlled by the terms of the promise or the undertaking?" | 012342.docx | LEGALEASE-00145865-LEGALEASE-00145866 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 9590 | United States v. Lex, 300 F. Supp. 2d 951 | 260+29.1 | First, under the Surface Resources and Multiple Use Act of 1955 (Multiple Use Act), appellants could only occupy the land for purposes of mining activity or "uses reasonably incident thereto." United States v. Shumway, 199 F.3d 1093, 1101 (9th Cir.1999) (citing 30 U.S.C. " 612(b)); see also 30 U.S.C. " 612(a) ("a mining claim shall not be used, prior to issuance of a patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto.") In considering whether occupation of the claim is reasonably incident to mining, the Ninth Circuit has foreclosed the notion that "a dwelling is not reasonably incident to a genuine mine or mill site. The need of humans to eat, sleep, and relax in the remote locations where mines have often developed has always necessitated mining camps, bunkhouses, and other dwellings." Shumway, 199 F.3d at 1106. Thus, the Multiple Use Act would provide a basis for the Forest Service to take action to keep the appellants from camping on the land only if their claim was not a good faith claim, see, e.g., United States v. Nogueira, 403 F.2d 816 (9th Cir.1968), but rather, the sort of sham claim which the Multiple Use Act sought to prevent. See Shumway, 199 F.3d at 1101. | Surface Resources and Multiple Use Act of 1955 would provide basis for Forest Service to take action to keep defendants, who asserted authorization to camp on National Forest land by virtue of mining claim, from camping on Forest land only if defendants' claim were not good faith claim, but rather, the sort of sham claim the Multiple Use Act sought to prevent; mining claim locators had exclusive right of possession and enjoyment of all surface included within lines of their locations, and there was no reason to believe occupancy of claim was not "reasonably incident" to mining and therefore unauthorized. 30 U.S.C.A. S 26; Multiple Use Mining Act of 1955, S 4(a, b), as amended, 30 U.S.C.A. S 612(a, b); 36 C.F.R. S 261.10(b). | "Under the Multiple Use Act, could one only occupy land on a mining claim for the purposes of mining activity or uses reasonably incident thereto?" | 021446.docx | LEGALEASE-00146056-LEGALEASE-00146058 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 9591 | Lakota Consol. Indep. Sch. v. Buffalo Ctr./Rake Cmty. Sch., 334 N.W.2d 704 | 302+48 | We have stated that for purposes of passing on a motion to dismiss under Iowa Rule of Civil Procedure 104(b), our notice pleading requires only a short and plain statement of the claim. Van Meter v. Van Meter, 328 N.W.2d 497 (Iowa 1983). In order to sustain a motion under rule 104(b), we must conclude that no state of facts is conceivable under which plaintiff might show a right of recovery. Powell v. Khodari-Intergreen Co., 334 N.W.2d 127, 130 (Iowa 1983); Van Meter, 328 N.W.2d at 497. We must judge the sufficiency of plaintiff's allegations in accordance with these well-established principles. We will separately consider the validity of the motion to dismiss as among the different defendants and as against the respective claims for injunctive relief, declaratory relief, and money damages. | For purposes of passing on motion to dismiss for failure to state claim upon which relief can be granted, notice pleading requires only short and plain statement of claim, and, in order to sustain such a motion, Supreme Court must conclude that no state of facts is conceivable under which plaintiff might show right of recovery. Rules Civ.Proc., Rule 104(b). | Does notice pleading require only a short and plain statement of the claim? | 023535.docx | LEGALEASE-00145266-LEGALEASE-00145267 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 9592 | Union Realty Co. v. Family Dollar Stores of Tennessee, 255 S.W.3d 586 | 307A+552 | We next turn to whether the issues in controversy between Union Realty and FDS were rendered moot by Travelers' settlement of the Parker lawsuit and reimbursement of expenses to Union Realty. It is well settled that in order to invoke the jurisdiction of the courts, there must be a genuine and live controversy between the parties which necessitates adjudication of present rights by the court. Dockery v. Dockery, 559 S.W.2d 952, 954 (Tenn.Ct.App.1977). This controversy must remain live throughout the course of litigation, including the appeal process. Id. A moot case is one in which the court determines it is no longer necessary as a means to provide the relief to which a party is entitled. Ford Consumer Fin. Co. v. Clay, 984 S.W.2d 615, 617 (Tenn.Ct.App.1999). In the absence of exceptional circumstances justifying an exception to the mootness doctrine, if a cause of action loses its character as a live controversy, it will be dismissed as moot. Id. at 955; McIntyre v. Traughber, 884 S.W.2d 134, 137 (Tenn.Ct.App.1994). | In the absence of exceptional circumstances justifying an exception to the mootness doctrine, if a cause of action loses its character as a live controversy, it will be dismissed as moot. | Can a cause of action be dismissed as moot if it loses its character as a live controversy? | 034123.docx | LEGALEASE-00145370-LEGALEASE-00145371 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9593 | In re Bledsoe, 41 S.W.3d 807 | 307A+746 | Death penalty sanctions should not be assessed absent a party's flagrant bad faith conduct or counsel's callous disregard of the rules. TransAmerican, 811 S.W.2d at 918. A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the case on the merits. Chrysler Corp., 841 S.W.2d at 845. Any sanction that is "case determinative" may constitute a death penalty sanction. GTE Comm. Sys. Corp. v. Tanner, 856 S.W.2d 725, 732 (Tex.1993) (orig. proceeding). Death penalty sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless the party's conduct justifies a presumption that its claims or defenses lack merit. TransAmerican, 811 S.W.2d at 918. Only in exceptional situations may case-determinative sanctions be imposed in the first instance"when they are clearly justified and no lesser sanctions will promote compliance. Tanner, 856 S.W.2d at 729. In cases where death penalty sanctions are imposed and the sanctions order is not immediately appealable, the party complaining of the sanctions order has no adequate remedy by appeal and may seek relief by petition for writ of mandamus. TransAmerican, 811 S.W.2d at 919"20. | Only in exceptional situations may case-determinative sanctions be imposed in the first instance-when they are clearly justified and no lesser sanctions will promote compliance. | "Only in exceptional situations, can case-determinative sanctions be imposed in the first instance-when they are clearly justified?" | 034638.docx | LEGALEASE-00145170-LEGALEASE-00145171 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9594 | Priest v. Landon, 135 Idaho 898 | 307A+746 | A trial court has authority to sanction parties for non-compliance with pretrial orders. I.R.C.P. 16(i); Fish Haven Resort, Inc. v. Arnold, 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991). Sanctions may include those enumerated in I.R.C.P. 37(b)(2)(B), (C) and (D) for discovery violations. I.R.C.P. 16(i). One such authorized sanction is the disallowance of specified evidence. I.R.C.P. 37(b)(2)(B). The imposition of such sanctions is committed to the discretion of the trial court, and we will not overturn such a decision absent a manifest abuse of that discretion. S. Idaho Prod. Credit Ass'n v. Astorquia, 113 Idaho 526, 528, 746 P.2d 985, 987 (1987); Quick v. Crane, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986); Devault v. Herndon, 107 Idaho 1, 2, 684 P.2d 978, 979 (1984). When reviewing a trial court's discretionary decision, we apply a three-part test, examining whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion in a manner consistent with applicable legal standards; and (3) reached its decision through an exercise of reason. Lamar Corp. v. City of Twin Falls, 133 Idaho 36, 40, 981 P.2d 1146, 1150 (1999); Lankford v. Nicholson Mfg. Co., 126 Idaho 187, 188-89, 879 P.2d 1120, 1121-22 (1994); Sun Valley Shopping Ctr. v. Idaho Power Co., 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The burden to establish an abuse of discretion falls upon the appellant. Astorquia, supra. | The imposition of sanctions for violations of pretrial orders is committed to the discretion of the trial court, and the Court of Appeals will not overturn such a decision absent a manifest abuse of that discretion. Rules Civ.Proc., Rule 16(i). | Is the imposition of sanctions committed to the discretion of the trial court and it will not be overturned absent a manifest abuse of that discretion? | Pretrial Procedure - Memo # 6970 - C - KG.docx | ROSS-003288564-ROSS-003288565 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 9595 | Fox v. First Bank, 198 Conn. 34 | 307A+563 | It is well settled that the imposition of sanctions to compel the observance of its orders rests within the discretion of the trial court and will not be disturbed on review unless there is an abuse of discretion. In re Mongillo, 190 Conn. 686, 461 A.2d 1387 (1983); Thode v. Thode, 190 Conn. 694, 462 A.2d 4 (1983). Generally, a sanction should not serve as a punishment or penalty. Courts should be reluctant to employ the sanction of dismissal except as a last resort. Such drastic action is not, however, an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority. | Generally, sanction imposed to compel observance of court order should not serve as punishment or penalty, and courts should be reluctant to employ sanction of dismissal except as last resort, but such drastic action is not an abuse of discretion where party shows deliberate, contumacious or unwarranted disregard for court's authority. | "Generally, can a sanction imposed to compel observance of court order not serve as punishment or penalty?" | 034831.docx | LEGALEASE-00146067-LEGALEASE-00146068 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 9596 | Bob Montgomery Real Estate v. Djokic, 858 So. 2d 371 | 307A+563 | Although a dismissal imposed as a sanction is reviewed under an abuse of discretion standard, the trial court's discretion is narrowed where dismissal is imposed for fraudulent conduct such as that alleged here, in which a more stringent abuse of discretion standard is appropriate. Such sanction may be imposed only on a "clear showing of fraud, pretense, collusion, or similar wrongdoing." Tri Star Inv. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981); see also Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998). | Sanction of dismissal may be imposed only on a clear showing of fraud, pretense, collusion, or similar wrongdoing. | "Because of the consequences of a dismissal with prejudice, should this sanction be imposed only on a clear showing of fraud, pretense, collusion, or similar wrongdoing?" | 034838.docx | LEGALEASE-00146176-LEGALEASE-00146177 | Order, SA, Sub | 0.78 | 1 | 0 | 1 | 1 | 1 |
| 9597 | Woodbury Lumber Co. v. McIntosh, 125 Vt. 154 | 307A+552 | It is unquestionably the rule in this jurisdiction that a defendant is entitled to be protected from vexatious litigation. Louden Machinery Co. v. Day, 104 Vt. 520, 524, 162 A. 370. It is usually stated that the rule for determining when the causes of action are the same, so as to be vexatious and oppressive, is to ascertain whether or not the relief sought in the second action may be fully obtained in the first. Stark v. Crowell, 117 Vt. 413, 416, 94 A.2d 585. | Rule for determining whether causes of action are the same so as to be vexatious and oppressive is to determine whether relief sought in second action may be fully obtained in the first. | What is the purpose of the rule for determining whether causes of action are the same so as to be vexatious and oppressive? | Pretrial Procedure - Memo # 7173 - C - KG.docx | ROSS-003331861 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 9598 | Prejean v. Ortego, 262 So. 2d 402 | 307A+563 | The power of the court to enforce its lawful orders is inherent. It may order a litigant to perform some act, procedural in character, and upon his failure or refusal to do so, the court has the right to dismiss the suit. Bogan v. Byrom, 151 So.2d 718 (La.App. 3 Cir. 1963). It has the power to dismiss a suit after an exception of vagueness has been sustained and plaintiff has failed or refused to amend his petition pursuant to orders of the court. LSA-CCP art. 933; Bordelon v. X-L Finance Company, 209 So.2d 752 (La . App. 3 Cir. 1968); Washington v. Flenniken Construction Company, supra. | Court may order a litigant to perform some act, procedural in character, and upon his failure or refusal to do so, the court has the right to dismiss the suit. | "Can a court order a litigant to perform some act, procedural in character?" | 035178.docx | LEGALEASE-00145861-LEGALEASE-00145862 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9599 | Rhea v. Hackney, 117 Fla. 62 | 307A+552 | It has always been held that by virtue of its inherent power, a court has authority by summary means to prevent an abuse of its processes, and to peremptorily dispose of a cause of action that is frivolous or wholly vexatious. This power may be exercised on an application to strike out the pleadings or to stay or dismiss the cause, and may be predicated on matters dehors the pleadings if duly established before the court. 20 Encyclopedia of Pleading & Practice, 44, 45, 51 and 52; 49 Corpus Juris, 701, 702; 21 R. C. L. p. 597. | By virtue of its inherent power, court has authority to peremptorily dispose of cause of action that is frivolous or wholly vexatious. | Does court have authority to peremptorily dispose of cause of action that is frivolous or wholly vexatious? | 035285.docx | LEGALEASE-00145501-LEGALEASE-00145502 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9600 | Johnson v. Horizon Fisheries, 148 Wash. App. 628 | 307A+563 | Under Rivers, the trial court must find that noncompliance with its orders substantially prejudiced the other party. We review findings of fact under the substantial evidence standard. Here, the trial court found that Johnson's noncompliance with the order awarding costs and the case schedule prejudiced Horizon's ability to prepare for trial. At the time of dismissal, Horizon was defending against an action arising from an incident that occurred 3 years and 10 months earlier. Johnson's failure to disclose witnesses prevented Horizon from preparing a defense for the upcoming trial, which had not been stayed, while "witnesses are still available and memories are still clear." Accordingly, we hold that substantial evidence supports the trial court's finding that Johnson's failure to disclose primary witnesses, together with his failure to comply with the order awarding costs, substantially prejudiced Horizon. | Trial court must find that noncompliance with its orders substantially prejudiced the other party in order to justify involuntarily dismissing an action. CR 41(b). | Should a trial court find that noncompliance with its orders substantially prejudiced the other party in order to justify involuntarily dismissing an action? | 035498.docx | LEGALEASE-00146621-LEGALEASE-00146622 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 9601 | Cox v. Burke, 706 So. 2d 43 | 307A+563 | The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117"18. Because "dismissal sounds the "death knell of the lawsuit," courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118. The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id.; Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994). | Trial court has inherent authority, within exercise of sound judicial discretion, to dismiss action when plaintiff has perpetrated fraud on court, or where party refuses to comply with court orders. | "Because dismissal for fraud on the court is the most severe of all possible sanctions, should it be employed only in extreme circumstances?" | 035526.docx | LEGALEASE-00145991-LEGALEASE-00145992 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9602 | Doe v. Univ. of Chicago Med. Ctr., 2015 IL App (1st) 133735 | 307A+681 | The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. Epstein v. Chicago Board of Education, 178 Ill.2d 370, 383, 227 Ill.Dec. 560, 687 N.E.2d 1042 (1997). The defendant has the initial burden of establishing that the affirmative matter defeats the plaintiff's claim. Id. Once the defendant satisfies the burden of putting forward this "affirmative matter," the burden shifts to the plaintiff to demonstrate that the proffered defense is unfounded or requires the resolution of a material fact. Id. If the plaintiff fails to carry the shifted burden of going forward, the complaint will be dismissed. Id. | Under rule providing for dismissal of a complaint when barred by affirmative matter, the affirmative matter must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials, and it must do more than refute a well-pleaded fact in the complaint. S.H.A. 735 ILCS 5/2-619(a)(9). | Should an affirmative matter be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials? | Pretrial Procedure - Memo # 7929 - C - DA.docx | ROSS-003286882-ROSS-003286883 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 9603 | Valleycrest Landscape Maint. v. State, Dep't of Revenue, 213 So. 3d 992 | 371+3682 | First, the Florida Legislature "possesses, as an attribute of sovereignty, the inherent power to impose all taxes not expressly or by clear implication inhibited by State or Federal Constitutions." Amos v. Mathews, 99 Fla. 1, 126 So. 308, 315 (1930). Article XII, Section 9(c) of the Florida Constitution authorizes "[a "Second Gas Tax"] ... of two cents per gallon upon gasoline and other like products of petroleum and an equivalent tax upon other sources of energy used to propel motor vehicles." Art. XII, " 9(c)(1), Fla. Const. (emphasis added). ValleyCrest argues that this constitutional provision restricts the tax to gasoline used in motor vehicles, thereby excluding lawn equipment and other gas-powered products. The phrase "used to propel motor vehicles," however, does not limit the scope of the gasoline tax. The doctrine of the last antecedent states that "relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding." Jacques v. Dep't of Bus. & Prof. Regulation, 15 So.3d 793, 797 (Fla. 1st DCA 2009) (quoting Kasischke v. State, 991 So.2d 803, 811 (Fla.2008)). The phrase "used to propel motor vehicles," as a result, applies to the "equivalent tax upon other sources of energy," not to the tax "upon gasoline and other like products of petroleum." Art. XII, " 9(c)(1), Fla. Const. | Constitutional provision, authorizing second gas tax upon gasoline and other like products of petroleum and equivalent tax upon sources of energy used to propel motor vehicles, did not restrict tax to gasoline used in motor vehicles; the phrase "used to propel motor vehicles," applied to "equivalent tax upon other sources of energy," not to the tax "upon gasoline and other like products of petroleum," and did not limit the scope of gasoline tax. West's F.S.A. Const. Art. 12, S 9(c), (c)(1). | Can state impose taxes that are not expressly inhibited by State or Federal Constitutions? | Taxation - Memo # 821 - C - CK.docx | ROSS-003289844-ROSS-003289845 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 9604 | Se. Mobile Homes v. Transit Homes, 192 So. 2d 53 | 307A+690 | In Rashard v. Cappiali, Fla.App.1965, 171 So.2d 581, 582, in discussing the power of a trial Court, the 3rd District Court said:"There can be no doubt of the authority of a trial court to dismiss a complaint with prejudice where the plaintiff wilfully fails to obey an order of court. Local 415, Miami Joint Council, etc. v. William Weitz, Inc., Fla.App.1962, 141 So.2d 18. The Court in the Weitz case in discussing Rule 1.31(d) affirmed a judgment dismissing a complaint for plaintiff's failure to appear for the taking of a deposition after the trial court had denied a motion to quash the notice of taking the deposition and thus in effect ordered the plaintiff to appear. It was pointed out that our Supreme Court had held that a trial court has the inherent power to impose the sanction of dismissal as a coercive and disciplinary measure. Surrency v. Winn & Lovett Grocery Co., 160 Fla. 294, 34 So.2d 564." | Trial court has authority to dismiss a complaint with prejudice where the plaintiff wilfully fails to obey an order of court. | Does a trial court have authority to dismiss a complaint with prejudice where the plaintiff willfully fails to obey an order of court? | Pretrial Procedure - Memo # 7029 - C - SB.docx | ROSS-003326550-ROSS-003326551 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9605 | Maldonado v. Ford Motor Co., 476 Mich. 372 | 307A+563 | As stated above, trial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action. Banta, supra at 368, 121 N.W.2d 854. "The authority to dismiss a lawsuit for litigant misconduct is a creature of the "clean hands doctrine" and, despite its origins, is applicable to both equitable and legal damages claims." Cummings v. Wayne Co., 210 Mich.App. 249, 252, 533 N.W.2d 13 (1995), citing Buchanan Home & Auto Supply Co. v. Firestone Tire & Rubber Co., 544 F.Supp. 242, 244-245 (D.S.C., 1981). "The authority is rooted in a court's fundamental interest in protecting its own integrity and that of the judicial process." Cummings, supra at 252, 533 N.W.2d 13. "The "clean hands doctrine" applies not only for the protection of the parties but also for the protection of the court." Id., citing Buchanan Home, supra at 244. | The authority to dismiss a lawsuit for litigant misconduct is a creature of the clean hands doctrine and, despite its origins, is applicable to both equitable and legal damages claims. | Does a trial court have inherent authority to dismiss a lawsuit for litigant misconduct? | 034913.docx | LEGALEASE-00146775-LEGALEASE-00146776 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9606 | Klineline v. Klineline, 481 S.W.3d 551 | 241+180(7) | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleadings | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can a petition be dismissed when an affirmative defense is asserted? | 11355.docx | LEGALEASE-00094085-LEGALEASE-00094086 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 9607 | Succession of Sigur v. Henritzy, 126 So. 3d 529 | 307A+581 | The controlling statutory provision is La. C.C.P. art. 561, which provides that "[a]n action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La. C.C.P. art. 561 A(1). The Louisiana Supreme Court has uniformly held that Article 561 must be liberally construed in favor of maintaining a plaintiffs suit. Louisiana Dep't of Transp. and Development v. Oilfield Heavy Haulers, L.L.C., 11"0912, p. 5 (La.12/6/11), 79 So.3d 978, 981"82 (citing Clark v. State Farm Mut. Auto. Ins. Co., 00"3010, p. 8 (La.5/15/01), 785 So.2d 779, 785). "Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment." Oilfield Heavy Haulers, supra (citing Clark, 00"3010 at p. 10, 785 So.2d at 787). | Because dismissal is the harshest of remedies, any reasonable doubt about abandonment of an action should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. LSA-C.C.P. art. 561 (2006). | Should any reasonable doubt about abandonment of an action be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment? | 11046.docx | LEGALEASE-00094826-LEGALEASE-00094827 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9608 | Com. v. Dowe, 315 Mass. 217 | 63+1(1) | At common law, with respect to every kind of public officer, the giving or receiving of a bribe for official favor was a misdemeanor. State v. Ellis, 33 N.J.L. 102, 4 Vroom 102, 97 Am.Dec. 707; People v. Swift, 59 Mich. 529, 26 N.W. 694; Walsh v. People, 65 Ill. 58, 16 Am.Rep. 569; State v. Miles, 89 Me. 142, 36 A. 70; 2 Bishop, Crim.Law (9th Ed.1923) ss. 85-87. 1 Russell, Crimes (7th Ed.1910) 627 et seq. Our statute originally applied only to an "executive, legislative or judicial officer." Rev.Sts. (1836) c. 128, " 9. In Commonwealth v. Lapham, 156 Mass. 480, 31 N.E. 638, where the defendant was a municipal officer, both parties contended that the common-law crime of bribery still existed, and that the indictment charged the common-law offence. The court did not decide the question. In People v. Swift, 59 Mich. 529, 26 N.W. 694, it was held that words similar to those just quoted from our earlier statute included a municipal officer, in that case an alderman. But the intimation in the Lapham case, supra, is to the contrary, and is borne out by the fact that by St.1891, c. 349, " 2, the words "county" and "municipal" were added. In its present form the statute includes nearly all public officers, but perhaps not quite all. See Commonwealth v. Farrell, 5 Allen 130; Doyle v. Kirby, 184 Mass. 409, 68 N.E. 843; Commonwealth v. Hunt, 216 Mass. 126, 128, 103 N.E. 399; Salisbury v. Salisbury Water Supply Co., 279 Mass. 204, 206, 181 N.E. 194. Instead of using a comprehensive expression like "public officer," the statute lists various kinds of officers. Thus questions of classification have arisen, in Commonwealth v. Tsaffaras, 250 Mass. 445, 447, 145 N.E. 922, in Commonwealth v. Connolly, 308 Mass. 481, 490, 491, 33 N.E.2d 303, and in the present case. | At common law, with respect to every kind of public officer, the giving or receiving of a bribe for official favor was a misdemeanor. | Is the giving or receiving of a bribe for official favor considered a misdemeanor under common law? | 10774.docx | LEGALEASE-00094254-LEGALEASE-00094255 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 9609 | Com. v. Clarke, 311 Pa. Super. 446 | 63+1(1) | The crime of bribery is committed once the offer is made to confer a benefit or when the benefit, as here, is conferred, on a public official to cause that official to violate his legal duty. Under the section of the Crimes Code proscribing bribery in official and political matters, once the offer to confer the proscribed benefit, or once an agreement is made, the crime is complete. There need be no waiting for the benefit to actually be conferred. See Commonwealth v. Ohle, 291 Pa.Superior Ct. 110, 435 A.2d 592, 596 (1981). See also, Commonwealth v. Weselyk, 268 Pa.Superior Ct. 569, 408 A.2d 1149 (1979). | Under section of crimes code proscribing bribery in official and political matters, once offer to confer proscribed benefit or agreement is made, the crime is complete, and there need be no waiting for benefit to actually be conferred. 18 Pa.C.S.A. SS 4701, 4701(a)(3). | Is the crime of bribery complete once there has been an offer to confer a proscribed benefit? | Bribery - Memo #899 - C - LB.docx | ROSS-003285985-ROSS-003285986 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 9610 | Lane Bros. Co. v. Barnard's Adm'r, 111 Va. 680 | 200+200 | Though machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability; therefore, the defendant in this case being in lawful occupation of the road with its machinery, and using it for a lawful purpose, was not responsible for the appearance of the machinery, or for the noise or other occurrences usual in its operation. Southern Ry. Co. v. Cooper, 98 Va. 299, 36 S. E. 388. | A defendant engaged in road improvement who has located his machinery in a public road, as he had a lawful right to do, and is operating it according to the methods usually pursued in similar work, is not liable for an injury inflicted on a traveller on the road by reason of his horse taking fright at the machinery, or the noises made by it. Though machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability. | Can a person be held liable for frightening horses as a result of his lawful occupation of the road with machinery? | 018638.docx | LEGALEASE-00147819-LEGALEASE-00147820 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9611 | United States v. Bagwell, 961 F.2d 1450 | 260+38(1) | As Nogueira makes clear, federal courts have jurisdiction to determine whether possession of a mining claim is in good faith when the United States brings an action to recover possession of public lands. Id. at 823"25. "[T]he courts are always open to the United States to vindicate its possessory rights in public land." Id. at 824 (citing Kennedy v. United States, 119 F.2d 564, 565 (9th Cir.1941) and United States v. Schultz, 31 F.2d 764 (N.D.Cal.1929)). Indeed, the primary authority cited by Bagwell recognizes that bringing an action in the district court is "an appropriate way of obtaining immediate possession." Best v. Humboldt Placer Mining Co., 371 U.S. 334, 340, 83 S.Ct. 379, 384, 9 L.Ed.2d 350 (1963). The invalidation of Bagwell's claim was ancillary to the district court's well established authority to end the bad faith possession of public lands. | If United States determines that possession of mining claim is in bad faith, it may choose to bring action in federal court to recover possession of public land without first adjudicating validity of claim in administrative proceedings; determination of validity of claim is not violative of primary jurisdiction but is incident or ancillary to federal court's jurisdiction to vindicate United States' possessory interest in public lands. 28 U.S.C.A. S 1291. | Are federal courts always open to the United States to vindicate or determine possessory rights in public land? | Mines and Minerals - Memo #284 - C - EB_57477.docx | ROSS-003281088-ROSS-003281089 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 9612 | Hines v. Stein, 298 U.S. 94 | 296+6 | The broad purpose of regulations in respect of fees of those concerned with pension matters is to protect the United States and beneficiaries against extortion, imposition, or fraud. Calhoun v. Massie, 253 U.S. 170, 173, 40 S.Ct. 474, 64 L.Ed. 843. Dangers of this character are not to be expected in connection with the orderly exercise of authority by state courts over appointees properly intrusted with pension funds. The purpose in view is for consideration when the true meaning of statute or rule is sought. | Purpose of regulations in respect of fees of those concerned with pension matters is to protect United States and beneficiaries against extortion, imposition, or fraud. 38 U.S.C.A. SS 210, 611, 3404; Act July 4, 1884, SS 4, 6, 23 Stat. 99, 101; Executive Order No. 6098, Veteran's Reg. No. 10. | What is the purpose of regulations in respect of fees of those concerned with pension matters? | 022831.docx | LEGALEASE-00147833-LEGALEASE-00147835 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 9613 | In re Bledsoe, 41 S.W.3d 807 | 307A+746 | Death penalty sanctions should not be assessed absent a party's flagrant bad faith conduct or counsel's callous disregard of the rules. Trans American, 811 S.W.2d at 918. A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the case on the merits. Chrysler Corp., 841 S.W.2d at 845. Any sanction that is "case determinative" may constitute a death penalty sanction. GTE Comm. Sys. Corp. v. Tanner, 856 S.W.2d 725, 732 (Tex.1993) (orig. proceeding). | A "death penalty sanction" is any sanction that adjudicates a claim and precludes the presentation of the case on the merits; any sanction that is "case determinative" may constitute a death penalty sanction. | "Is a ""death penalty sanction"" any sanction that adjudicates a claim and precludes the presentation of the case on the merits?" | 034969.docx | LEGALEASE-00147658-LEGALEASE-00147659 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 9614 | Rashard v. Cappiali, 171 So. 2d 581 | 307A+563 | There can be no doubt of the authority of a trial court to dismiss a complaint with prejudice where the plaintiff wilfully fails to obey an order of court. Local 415, Miami Joint Council, etc. v. William Weitz, Inc., Fla.App.1962, 141 So.2d 18. The Court in the Weitz case in discussing Rule 1.31(d) affirmed a judgment dismissing a complaint for plaintiff's failure to appear for the taking of a deposition after the trial court had denied a motion to quash the notice of taking the deposition and thus in effect ordered the plaintiff to appear. It was pointed out that our Supreme Court had held that a trial court has the inherent power to impose the sanction of dismissal as a coercive and disciplinary measure. Surrency v. Winn & Lovett Grocery Co., 160 Fla. 294, 34 So.2d 564. | Trial court has authority to dismiss complaint with prejudice where plaintiff wilfully fails to obey an order of court. 30 F.S.A. Rules of Civil Procedure, rule 1.35(b). | Does a trial court have authority to dismiss a complaint with prejudice where a plaintiff willfully fails to obey an order of court? | Pretrial Procedure - Memo # 7086 - C - SB_57512.docx | ROSS-003321502-ROSS-003321503 | Order, SA, Sub | 0.78 | 1 | 0 | 1 | 1 | 1 |
| 9615 | Lizama v. Williams, 759 So. 2d 865 | 307A+590.1 | This theory cannot stand, however: the record does not show that any binding settlement was actually confected between appellees and GEICO. To be binding, or enforceable, a settlement must be in writing. To be afforded the protections given contractual obligations, the settlement ".. must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding .." LSA"C.C. art. 3071; DeSoto v. DeSoto, 96"1079, at p. 3 (La.App. 5 Cir. 4/29/97), 694 So.2d 1043, 1045 (emphasis supplied). Further, ongoing negotiations do not necessarily relieve the negotiating parties of their duty to protect the court record once suit has been filed. See Chevron Oil Co. v. Traigle, 436 So.2d 530, 533 (La.1983). And finally, evidence of "settlement" consisting only of correspondence between attorneys is not sufficient to bind the parties. See Mayeaux v. Denny's Inc., 95"453, at p. 4 (La.App. 5 Cir. 10/18/95), 663 So.2d 822, 825. | Ongoing negotiations do not necessarily relieve the negotiating parties of their duty to protect the court record once suit has been filed for purposes of determining whether action had been abandoned. LSA-C.C.P. art. 561. | Do ongoing negotiations relieve the negotiating parties of their duty to protect the court record once suit has been filed? | Pretrial Procedure - Memo # 7472 - C - DHA_57513.docx | ROSS-003293182-ROSS-003293183 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 9616 | London Livery, Ltd. v. Brinks, 2008-0230 (La. App. 4 Cir. 12/10/08) | 307A+590.1 | However, as the Appellants correctly point out, it is well established that motions to withdraw, enroll or substitute counsel are not considered formal steps in the prosecution as contemplated by La. C.C.P. art. 561. Brumfield v. McElwee, 2007"0548, p. 2 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 237. | Motions to withdraw, enroll, or substitute counsel are not considered formal steps in the prosecution as contemplated by the abandonment article. LSA-C.C.P. art. 561. | "Are motions to withdraw, enroll, or substitute counsel not considered formal steps in the prosecution?" | 035622.docx | LEGALEASE-00147624-LEGALEASE-00147625 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 9617 | Philips v. Marshall Berwick Chevrolet, 467 So. 2d 1068 | 307A+590.1 | They are sufficient to preclude dismissal unless they are patently repetitious. As stated in American Salvage and Jobbing Co. v. Salomon, 367 So.2d 716, 717 (Fla. 3d DCA 1979): It is obvious that the effect of the amendment is to preclude a trial court from exercising its supposed inherent, discretionary power to dismiss a case for failure to prosecute, when as in this case, there is activity of record within one year prior to the dismissal. Where activity is facially sufficient, as opposed to merely passive, e.g., a name Development, Inc. v. Ameri-First Federal Savings and Loan Association, 433 So.2d 587 (Fla. 3d DCA 1983); substitution of counsel, Industrial Trucks of Florida, Inc. v. Gonzalez, 351 So.2d 744 (Fla. 3d DCA 1977); a court cannot inquire further as to how well the activity advances the cause.. | Where activity by plaintiff is facially sufficient, as opposed to merely passive, e.g., a name change, or substitution of counsel, court cannot inquire further as to how well the activity advances the cause in determining whether to dismiss action for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | "Where activity by a plaintiff is facially sufficient, can a court inquire further?" | Pretrial Procedure - Memo # 7510 - C - DHA.docx | ROSS-003286201 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9618 | Fair Auto. Repair v. Car-X Serv. Sys., 128 Ill. App. 3d 763 | 307A+563 | A trial court possesses the inherent power to dismiss a cause for failure of a party to take some step as ordered where no sufficient excuse is provided. (Bejda v. SGL Industries, Inc. (1979), 73 Ill.App.3d 484, 29 Ill.Dec. 481, 392 N.E.2d 38, aff'd in part, rev'd in part on other grounds (1980), 82 Ill.2d 322, 45 Ill.Dec. 113, 412 N.E.2d 464.) However, dismissal for noncompliance with orders of the court is a drastic sanction and is proper only as a last resort where a party has shown a deliberate, contumacious and unwarranted disregard for the court's authority. (Bejda.) Here, the trial court had issued no orders prohibiting plaintiffs' from further visits to Car-X shops and those visits did not violate any Supreme Court Rules. Plaintiffs' refusal to agree to cease the visits was conditioned upon defendant's refusal to agree to stop the disparaging comments. The trial court at the hearing where the Aurora visit was disclosed still did not request that plaintiffs stop the conduct that it found improper. In light of these circumstances, the trial court's action could not be justified under its inherent power to control the integrity of the proceedings. | Trial court possesses inherent power to dismiss cause for failure of party to take some step as ordered where no sufficient excuse is provided; however, dismissal for noncompliance with orders of court is drastic sanction and is proper only as last resort where party is shown a deliberate, contumacious and unwarranted disregard for court's authority. | Does a trial court have authority to dismiss an action for noncompliance with a court order or court rules? | 035730.docx | LEGALEASE-00147513-LEGALEASE-00147514 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9619 | Caruthers v. State, 58 N.E.3d 207 | 307A+581 | "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court power to do so." Id. (quoting Benton, 622 N.E.2d at 1006). "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. The adverse party should not be left with a lawsuit hanging over his or her head indefinitely." Id. (quoting Hill v. Duckworth, 679 N.E.2d 938, 939"40 (Ind.Ct.App.1997)). "Although Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances." Am. Family Ins., 929 N.E.2d at 857. | Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered in ruling on motion to dismiss for failure to prosecute. Trial Procedure Rule 41(E). | Can courts be asked to carry cases on their dockets indefinitely and should the courts consider the rights of the adverse party be considered? | Pretrial Procedure - Memo # 7636 - C - NE.docx | LEGALEASE-00037348-LEGALEASE-00037349 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9620 | Delacruz v. Anadarko Petroleum Corp., 2014-0433 (La. App. 4 Cir. 12/3/14) | 307A+581 | The Louisiana Supreme Court has indicated that La. C.C.P. art. 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Clark v. State Farm Mut. Auto.Ins. Co., 00"3010, p. 8 (La.5/15/01), 785 So.2d 779, 785; See also Williams v. Abadie, 03"0605, p. 4 (La.App. 4 Cir. 9/24/03), 857 So.2d 1118, 1121. Indeed, our jurisprudence has uniformly followed this principle, recognizing that "dismissal is the harshest of remedies." Prestenback v. Hearn, 11"1380, p. 4 (La.App. 4 Cir. 2/22/12), 85 So.3d 256, 259, writ denied, 2012"0942 (La.6/15/12), 90 So.3d 1065; Succession of Sigur v. Henritzy, 13"0398, p. 9 (La.App. 4 Cir. 9/18/13), 126 So.3d 529, 536; Brown v. Michaels Stores, Inc., 07"772, p. 5 (La.App. 5 Cir. 2/19/08), 980 So.2d 62, 65. Our jurisprudence also indicates that "any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment." Louisiana Dep't of Transp. & Dev. v. Oilfield Heavy Haulers, L.L.C., 11"0912, p. 5 (La.12/6/11), 79 So.3d 978, 982. See also, Clark, 00"3010, p. 10, 785 So.2d at 787. | Any reasonable doubt about abandonment of a claim based on the parties' failure to take any step in its prosecution or defense for a period of three years should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. LSA-C.C.P. art. 561. | Should any reasonable doubt about abandonment of a claim based on the parties' failure be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment? | Pretrial Procedure - Memo # 7678 - C - SHB.docx | ROSS-003286491-ROSS-003286492 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 9621 | Gravlee v. Gravlee, 79 So. 3d 1169 | 307A+581 | The purpose of La.Code Civ.P. art. 561 is to dismiss those cases in which a plaintiff's inaction "has clearly demonstrated his abandonment of the case." Id. (quoting Kanuk v. Pohlmann, 338 So.2d 757, 758 (La.App. 4th Cir.1976), writ denied, 341 So.2d 420 (La.1977)). A case where a plaintiff plainly demonstrated "that he does not intend to abandon the action" should not be dismissed. Id. at 786. "In sum, abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned." Id. Thus, where there is a question regarding abandonment, courts stress substance over form. Id. | Abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned; thus, where there is a question regarding abandonment, courts stress substance over form. LSA-C.C.P. art. 561. | Is abandonment meant as a ground to dismiss actions on mere technicalities? | 11124.docx | LEGALEASE-00094621-LEGALEASE-00094622 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 9622 | Melton v. Ryander, 727 S.W.2d 299 | 307A+690 | In their third point of error, the Meltons assert that the trial court erred in dismissing their case with prejudice, since a dismissal for want of prosecution is not an adjudication on the merits. We agree. When a case is dismissed for want of prosecution, it is error for the trial court to dismiss the case with prejudice. Maldonado v. Puente, 694 S.W.2d 86, 92 (Tex.App."San Antonio 1985, no writ); Collins v. Flatte, 614 S.W.2d 580, 582 (Tex.Civ.App."Texarkana 1981, no writ); Willis v. Barron, 604 S.W.2d 447, 450 (Tex.Civ.App."Tyler 1980, writ ref'd n.r.e.). The order of dismissal in this case was not an adjudication of the rights of the parties; instead, it simply placed them in the position they were in prior to the filing of the suit. Collins, 614 S.W.2d at 582. Because the rights of the parties have not been adjudicated, the court erred in dismissing the Melton's suit with prejudice. We, therefore, reform the judgment to strike the words "with prejudice" from the judgment entered. Collins, 614 S.W.2d at 582. | Dismissal of action for want of prosecution should not have been "with prejudice"; dismissal for want of prosecution was not an adjudication of the rights of the parties but, instead, simply placed the parties in the position they were in prior to filing of action. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | "Should an order of dismissal for want of prosecution, place the parties in the position they were in prior to filing the suit?" | 11144.docx | LEGALEASE-00094115-LEGALEASE-00094116 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9623 | Tosar v. Sladek, 393 So. 2d 61 | 307A+590.1 | This appeal presents the question of whether non record activity is sufficient to show good cause for the denial of a motion to dismiss for failure to prosecute pursuant to Florida Rule of Civil Procedure 1.420(e). The trial court found that it is not and we must agree. | Nonrecord activity was not sufficient to show good cause for the denial of defendant's motion to dismiss wrongful death action for failure to prosecute. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.420(e). | "Can nonrecord activity constitute ""good cause"" so as to prevent dismissal for failure to prosecute?" | 11177.docx | LEGALEASE-00094461-LEGALEASE-00094462 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9624 | Kopilas v. Peterson, 206 A.D.2d 460 | 307A+699 | At the time this matter was marked off the calendar, the parties' attorneys entered into a stipulation to restore the case to the calendar on consent. Thereafter, however, there ensued a 17"month period, with no activity whatsoever regarding the case, before the plaintiffs' attorney contacted the defendants' attorney to request that he sign a stipulation to restore. The plaintiffs have offered no adequate excuse for this delay. Although the agreement to restore on consent is some indication that the plaintiffs did not intend to abandon the action, the agreement alone is an insufficient ground upon which to predicate restoration, especially since there was no activity in the case during the period it was off the calendar (see, Bergan v. Home for Incurables, 124 A.D.2d 517, 518, 508 N.Y.S.2d 434; Escobar v. Deepdale Gen. Hosp., 172 A.D.2d 486, 567 N.Y.S.2d 842). Accordingly, the plaintiffs have failed to rebut the presumption of abandonment which attaches when a matter has been automatically dismissed pursuant to CPLR 3404 (see, Escobar v. Deepdale Gen. Hosp., supra, at 486, 567 N.Y.S.2d 842). | Plaintiffs did not rebut presumption of abandonment which attached when case was automatically dismissed for failure to prosecute where there was no activity for 17 months and no showing of adequate excuse, although there was an agreement to restoring consent at the time that the matter was marked off the calendar. McKinney's CPLR 3404. | Is an agreement to continue the case insufficient to prevent an automatic dismissal? | 11185.docx | LEGALEASE-00094607-LEGALEASE-00094608 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 9625 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 307A+581 | [A showing of delay or contumacious conduct is sufficient for a Rule 41(b) dismissal when a lesser sanction would not serve the best interests of justice. Am. Tel. & Tel., 720 So.2d at 181 (citing Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)). "Delay alone may suffice" for a dismissal under Rule 41(b). Cox, 976 So.2d at 875 (emphasis added). "Factors other than delay are not required. The standard is whether there is "a clear record of delay or contumacious conduct by the plaintiff." " Id. (citing Am. Tel. & Tel., 720 So.2d at 181 (emphasis added)). | A showing of delay or contumacious conduct is sufficient for a dismissal for want of prosecution when a lesser sanction would not serve the best interests of justice. Rules Civ.Proc., Rule 41(b). | Is a showing of delay or contumacious conduct sufficient for a dismissal for failure to prosecute? | Pretrial Procedure - Memo # 7741 - C - SK.docx | ROSS-003327098-ROSS-003327099 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 9626 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+561.1 | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed. | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Rules Civ.Proc., Rule 12(b)(6). | Will absence of law to support a claim dismiss a complaint? | 036072.docx | LEGALEASE-00147489-LEGALEASE-00147490 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 9627 | Locklear v. Lanuti, 176 N.C. App. 380 | 307A+561.1 | Holloman v. Harrelson, 149 N.C.App. 861, 864, 561 S.E.2d 351, 353 (2002). A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Sutton v. Duke, 277 N.C. 94, 102-103, 176 S.E.2d 161, 166 (1970). "If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed." Id. at 102, 176 S.E.2d at 166. | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Rules Civ.Proc., Rule 12(b)(6), West's N.C.G.S.A. S 1A-1. | Will absence of law to support a claim dismiss a complaint? | Pretrial Procedure - Memo # 7773 - C - KS.docx | LEGALEASE-00037580-LEGALEASE-00037581 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 9628 | London Livery, Ltd. v. Brinks, 2008-0230 (La. App. 4 Cir. 12/10/08) | 307A+590.1 | An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years. La. C.C.P. art. 561. In the present case, the only step that occurred between December 9, 2002, and December 22, 2006, was the May 5, 2005 motion to enroll as counsel of record filed on behalf of London Livery. However, as the Appellants correctly point out, it is well established that motions to withdraw, enroll or substitute counsel are not considered formal steps in the prosecution as contemplated by La. C.C.P. art. 561. Brumfield v. McElwee, 2007"0548, p. 2 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 237. | Motions to withdraw, enroll, or substitute counsel are not considered formal steps in the prosecution as contemplated by the abandonment article. LSA-C.C.P. art. 561. | "Is a motion to withdraw or enroll as counsel or to substitute counsel not considered a formal ""step"" before court in prosecution of suit?" | 036106.docx | LEGALEASE-00148061-LEGALEASE-00148062 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9629 | Williams v. Rock-Tenn Servs., 2016 COA 18, 15, 370 P.3d 638 | 307A+561.1 | However, in narrow circumstances, when the "allegations indicate the existence of an affirmative defense that will bar the award of any remedy," a party may raise an affirmative defense in a motion to dismiss. Id. at 44"45, 312 P.3d at 1164"65 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 1357, at 708 (3d ed.2004)) (tacitly approving this rule); see also Ruth v. Dep't of Highways, 153 Colo. 226, 385 P.2d 410 (1963). | In narrow circumstances, when the allegations indicate the existence of an affirmative defense that will bar the award of any remedy, a party may raise an affirmative defense in a motion to dismiss. | When can a party raise an affirmative defense in a motion to dismiss? | 09971.docx | LEGALEASE-00096427-LEGALEASE-00096428 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 9630 | Wilcox v. Morse, 693 So. 2d 91 | 307A+590.1 | Florida Rule of Civil Procedure 1.420(e) states that, absent a showing of good cause, if no activity on the record, by filing of pleadings, order of court, or otherwise, has occurred for a period of one year, the cause shall be dismissed by the court on its own motion or on the motion of any interested person. Record activity has been held to be "more than a mere passive effort" to keep the case on the docket. Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972). The activity must be designed to advance the case toward conclusion. Id. | To preclude dismissal for lack of prosecution, activity taken within previous year must be designed to advance case toward conclusion. West's F.S.A. RCP Rule 1.420(e). | "To preclude a dismissal for lack of prosecution, should activity taken within previous year be designed to advance a case toward conclusion?" | 036215.docx | LEGALEASE-00147529-LEGALEASE-00147530 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9631 | Landers-Scelfo v. Corp. Office Sys., 356 Ill. App. 3d 1060 | 307A+561.1 | A party moving to dismiss under section 2"619 admits the legal sufficiency of the complaint, but asserts the existence of an external defect or defense that defeats the cause of action. Nelson v. Crystal Lake Park District, 342 Ill.App.3d 917, 920, 277 Ill.Dec. 560, 796 N.E.2d 646 (2003). Under section 2"615, he or she denies the legal sufficiency of the complaint. Bank of Northern Illinois v. Nugent, 223 Ill.App.3d 1, 7, 165 Ill.Dec. 514, 584 N.E.2d 948 (1991). | A party moving to dismiss under Code of Civil Procedure section governing involuntary dismissal based upon certain defects and defenses admits the legal sufficiency of the complaint, but asserts the existence of an external defect or defense that defeats the cause of action. S.H.A. 735 ILCS 5/2-619. | Can a party deny the legal sufficiency of the complaint in a motion to dismiss on the pleadings? | 036218.docx | LEGALEASE-00147533-LEGALEASE-00147534 | Order, SA | 0.36 | 1 | 0 | 0 | 1 | |
| 9632 | Pac. Ins. Co. v. Botelho, 891 So. 2d 587 | 307A+561.1 | The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000). Unlike a motion for summary judgment, when ruling on a motion to dismiss, "[a] court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations." Barbado, 758 So.2d at 1174; see also Patriotcom, Inc. v. Vega, 821 So.2d 1261 (Fla. 4th DCA 2002). Further, a motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. Ramos v. Mast, 789 So.2d 1226 (Fla. 4th DCA 2001); Beach Roundhouse Town Corp. v. Skinner, 356 So.2d 881 (Fla. 3d DCA 1978). | A motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. | Will a motion to dismiss be granted based on an affirmative defense unless the defense appears on the face of a pleading? | 036228.docx | LEGALEASE-00147553-LEGALEASE-00147554 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9633 | Reynolds v. Indus. Claim Appeals Office of State of Colo., 794 P.2d 1080 | 413+2 | The right to disability benefits is not a fundamental right, Claimants in re Death of Kohler, 671 P.2d 1002 (Colo.App.1983), see Olson v. Public Service Co., 190 Colo. 512, 549 P.2d 780 (1976), and the legislative body has broad discretion in implementing social programs designed to promote public health, safety, and welfare. See Anaya v. Industrial Commission, 182 Colo. 244, 512 P.2d 625 (1973). If a legislative classification neither impinges upon a fundamental right nor involves a suspect class, the constitutional guarantee of equal protection requires only that the classification bear a rational relationship to a permissible governmental purpose. Bellendir v. Kezer, 648 P.2d 645 (Colo.1982). | Right to disability benefits is not fundamental, and legislative body has broad discretion in implementing social programs designed to promote public health, safety, and welfare. | Is the right to disability benefits a fundamental right? | 10642.docx | LEGALEASE-00095010-LEGALEASE-00095011 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9634 | U.S. v. Tomoya Kawakita, 96 F. Supp. 824 | 24+117 | He obviously refers to what is recognized in our law as temporary allegiance, i.e., the duty of every person to obey the local laws of the country where he may happen to be. As Mr. Justice Field put it in Carlisle v. United States, 1872, 16 Wall. 147, 83 U.S. 147, 154-155, 21 L.Ed. 426; "By allegiance is meant the obligation of fidelity and obedience which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives. It may be an absolute and permanent obligation, or it may be a qualified and temporary one. The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. The alien, whilst domiciled in the country, owes a local and temporary allegiance, which continues during the period of his residence." (cf. Rex v. Joyce, 173 L.T. 377 (1945), aff'd sub nom. Joyce v. Director of Public Prosecutions, (1946) A.C. 347.) | A citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign, and an alien, while domiciled in country, owes a local and temporary allegiance, which continues during the period of his residence. | Does a citizen or subject owe a permanent allegiance to the country? | Aliens_Immigration and_1zfxH3_8N4xQUTOxmdmMtlT2FaX0FiMRw.docx | ROSS-000000304-ROSS-000000305 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 9635 | Valerio v. Mulle, 148 F. Supp. 546 | 24+136 | A defect in the original arrest of an alien will not necessarily void a deportation proceeding. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221, D'Agostino v. Sahli, 5 Cir., 230 F.2d 668, 671. However, it should be remembered that aliens in the United States are entitled to the protection of its constitution and laws with respect to their rights of person and property and they are entitled to this protection under certain circumstances, in both criminal and civil proceedings against them. Fong Yue Ting v. United States, 149 U.S. 698, 724, 13 S.Ct. 1016, 37 L.Ed. 905, United States ex rel. De Luca v. O'Rourke, 6 Cir., 213 F.2d 759, 763. | Aliens in United States are entitled to the protection of its constitution and laws with respect to their rights of person and property, and they are entitled to this protection, under certain circumstances, in both criminal and civil proceedings against them. | Are aliens entitled to the protection of the Constitution and laws of this country? | Aliens_Immigration and_1gJrcxhRzRjTO2d57yjVXlYQGPTYpKntS.docx | ROSS-000000293 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 9636 | Pawell v. Unemployment Comp. Bd. of Review, 146 Pa. Super. 147 | 157+23(1) | What the policy of the Communist Party is, does not appear from the evidence. But courts have long recognized and have taken judicial notice that Communism, as a political movement, is dedicated to the overthrow of the government of the United States [and, with it, the governments of the States as necessary incidents in our system of divided sovereignty] by force and violence. United States v. Wallis, D. C., 268 F. 413; Skeffington v. Katzeff, 1 Cir., 277 F. 129; Antolish v. Paul, 7 Cir., 283 F. 957. Membership in that party by an alien is ground for deportation. Ungar v. Seaman, 8 Cir., 4 F.2d 80; United States ex rel. Ohm v. Perkins, 2 Cir., 79 F.2d 533. There are cases which take the contrary view. Strecker v. Kessler, 5 Cir., 95 F.2d 976; Strecker v. Kessler, 5 Cir., 96 F.2d 1020; Ex Parte Fierstein, 9 Cir., 41 F.2d 53. The United States Supreme Court has not found it necessary to pass upon the question. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082. | The Superior Court would take judicial notice that Communism, as a political movement, is dedicated to the overthrow of the government of the United States, and with it the governments of the states as necessary incidents in our system of divided sovereignty, by force and violence. | Can aliens who are members of a group or organization which advocates the overthrow of organized government by force be subject to deportation? | Aliens_Immigration and_1ZFDamON_2EL5fwWitM6iBKAyoF5dPkWA.docx | ROSS-000000291-ROSS-000000292 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9637 | In re Y. Akado, 188 Cal. 739 | 24+131(11) | This, in effect, declares that no alien who is not eligible to citizenship under the laws of the United States may acquire real property, except as provided by the treaty existing between the United States and the country of which such alien is a citizen or subject. 37 Stat. 1504.Persons of the Japanese race who are native-born subjects of Japan cannot become citizens of the United States.The result is that the acquisition by such an alien of land situated in this state is unlawful, unless the treaty between his government and the United States allows such acquisition. The treaty between the United States and Japan provides that citizens of Japan residing in the United States may lease land for residential and commercial purposes, but it contains no provision authorizing an alien of the Japanese race to lease or acquire land for agricultural purposes. Consequently the Initiative Alien Law aforesaid prohibits the acquisition by such alien of any agricultural land situated in this state. | Under Initiative Alien Land Act 1920, SS 1, 2, declaring that no alien who is not eligible to citizenship may acquire real property except as provided by the treaty between the United States and the country of which such alien is a citizen, and the treaty between the United States and Japan providing that citizens of Japan residing in the United States may lease land for residential and commercial purposes only, but containing no provisions authorizing an alien to lease or acquire land for agricultural purposes, a native-born subject of Japan cannot acquire agricultural land in the state. | "Can an alien, ineligible for citizenship, acquire real property?" | 007045.docx | LEGALEASE-00148338-LEGALEASE-00148339 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 9638 | Martinez v. Carnival Corp., 744 F.3d 1240 | 25T+143 | In determining whether a dispute arises out of a contract, "the focus is on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir.2011) (internal quotation marks omitted). In Doe, we held that claims arising under the Jones Act "are dependent on [the plaintiff's] status as a seaman employed by the cruise line and the rights that [the plaintiff] derives from that employment status." Id. at 1221. See also O'Boyle v. United States, 993 F.2d 211, 213 (11th Cir.1993) ("[I]n order to recover damages under the Jones Act, [a plaintiff] must have the status of a seaman."). Although the Jones Act dictates Carnival's duty of care, that duty extends to Martinez only because he was employed by Carnival asthe a seaman under contract. In addition, the terms of the Agreement, which specifically reference Carnival's obligation to provide medical treatment aboard the vessel or ashore, contemplated that Carnival would provide shoreside medical care for injuries Martinez sustained while on the job. Accordingly, we conclude that Martinez's dispute with Carnival clearly arose out of or in connection with the Seafarer's Agreement and is subject to arbitration. | In determining whether a dispute arises out of a contract containing an arbitration clause, requiring that disputes arising out of the contract be resolved by arbitration, the focus is on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties. | What do the courts consider as the focus in determining whether a dispute arises out of a contract? | 007870.docx | LEGALEASE-00148921-LEGALEASE-00148922 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9639 | United States v. Gast, 457 F.2d 141 | 34+20.6(6) | We think there was a basis in fact for originally denying Gast the IV-D classification, since he did not present a prima facie case. In order to qualify for a ministerial exemption a registrant must establish that teaching and preaching are regularly performed and comprise the registrant's customary vocation. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Phifer, 440 F.2d 462, 464 (7th Cir. 1971); United States v. Isenring, 419 F.2d 975, 979 (7th Cir. 1969). And these "rigid criteria" cannot be met where the teaching or preaching is performed part-time or half-time, occasionally or irregularly. Isenring at 979. | In order to qualify for IV-D ministerial exemption, registrant must establish that teaching and preaching are regularly performed and comprise registrant's customary vocation, and such rigid criteria cannot be met where teaching or preaching is performed part time or half time, occasionally or irregularly. | Does a registrant have to establish a regularity of religious preaching and teaching to qualify for a ministerial exemption? | Armed Services - Memo 313 - RK_58127.docx | ROSS-003294044-ROSS-003294046 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 9640 | United States v. Johnson, 70 F.2d 399 | 34+73(5) | The principles applicable to a situation of this character are laid down in several decisions from our own circuit, among the more recent of which are Nicolay v. United States, 51 F.(2d) 170; Roberts v. United States, 57 F.(2d) 514; United States v. Perkins, 64 F.(2d) 243; United States v. Hammons, 66 F.(2d) 912; and United States v. Doublehead (C.C.A.) 70 F.(2d) 91, decided March 31, 1934. Under the rule of these decisions, it must affirmatively appear that there was a total and permanent disability determinable as of the time the policy was in force and effect; it is likewise held that a substantially continuous work record at a reasonable wage which is not shown to have caused any injury to the general health of the insured nullifies the theory of total disability. | Substantially continuous work record, at reasonable wage, which is not shown to have caused any injury to general health of insured, nullifies theory of total disability under war risk policy. | Can the plaintiff recover if his total and permanent disability existed while the policy of insurance was in force? | 008776.docx | LEGALEASE-00148836-LEGALEASE-00148837 | Order, SA, Sub | 0.75 | 1 | 0 | 1 | 1 | 1 |
| 9641 | Valentine v. Hayes, 102 Fla. 157 | 8.30E+05 | The Uniform Negotiable Instruments Law which has been adoped in Florida should receive a uniform interpretation and construction in all of the states where it prevails, if the beneficial purpose of having a uniform law on the subject is to be subserved, and it is pertinent to resort to the holdings in other jurisdictions where this act is in force in order to arrive at the interpretation and construction of the act which should be followed in Florida. | Uniform Negotiable Instruments Law should receive uniform interpretation and construction in all states where it prevails; in construing Uniform Negotiable Instruments Law, it is pertinent to resort to holdings in other jurisdictions where act is in force. | "Should Uniform Negotiable Instruments law be uniform in interpretation, construction and application?" | Bills and Notes -Memo 602-DB_57715.docx | ROSS-003281491-ROSS-003281492 | Order, SA | 0.44 | 1 | 0 | 0 | 1 | |
| 9642 | Valentine v. Hayes, 102 Fla. 157 | 8.30E+05 | The Uniform Negotiable Instruments Law which has been adoped in Florida should receive a uniform interpretation and construction in all of the states where it prevails, if the beneficial purpose of having a uniform law on the subject is to be subserved, and it is pertinent to resort to the holdings in other jurisdictions where this act is in force in order to arrive at the interpretation and construction of the act which should be followed in Florida. | Uniform Negotiable Instruments Law should receive uniform interpretation and construction in all states where it prevails; in construing Uniform Negotiable Instruments Law, it is pertinent to resort to holdings in other jurisdictions where act is in force. | Should Uniform Negotiable Instruments Law receive uniform interpretation? | 010549.docx | LEGALEASE-00148516-LEGALEASE-00148517 | Order, SA | 0.44 | 1 | 0 | 0 | 1 | |
| 9643 | Empire Millwork Corp. v. Lapides, 155 F. Supp. 765 | 195+47 | This contention is answered by the section cited, 120(6) of the Uniform Act, which provides that a holder may retain his right of action against a party secondarily liable even without his consent by an express reservation in the extension agreement. The reason for this provision is that such party is in no way prejudiced by the qualified extension thus granted to the principal debtor, since, by entering into such an agreement, the latter impliedly consents that whatever remedies the party secondarily liable has against him shall remain open. | Under the Uniform Negotiable Instruments Act providing that a holder may retain his right of action against a party secondarily liable even without his consent, fact that composition agreement extended time for payment on note by the primary obligor did not also operate to extend time for payment by the indorser-guarantor until the same date. Code Md.1951, art. 13, S 140(6). | Can holder retain right of action against person secondarily liable? | Bills and Notes- Memo 656-IS_57894.docx | ROSS-003294367 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 9644 | State Bank of Halstad v. Bilstad, 162 Iowa 433 | 8.30E+05 | The primary purpose of the several states that have adopted the negotiable instruments act has been to establish a uniform rule of law governing such instruments and to embody in a codified form, as fully as possible, the previous law on the subject, to the end that the negotiable character of commercial paper might not be destroyed by local laws and conflicting decisions, and this object should be kept in mind in construing the various provisions of the act. | Provisions of the negotiable instruments act must be construed with reference to its stated purpose, so that the negotiable character of paper may not be destroyed by local laws and conflicting decisions. | Is the purpose of Negotiable instruments law to make sure that the negotiable character of commercial paper is not destroyed? | 010607.docx | LEGALEASE-00148739-LEGALEASE-00148740 | Order, SA, Sub | 0.56 | 1 | 0 | 1 | 1 | 1 |
| 9645 | Denton v. Erwin, 5 La. Ann. 18 | 156+5 | We accordingly held, that a man should not be permitted to deny what he had solemnly acknowledged in a judicial proceeding, nor to shift his position at will, to a contradictory one, in relation to the subject matter of litigation, in order to frustrate and defeat the action of the law upon it. Gridley and Whitehead v. Conner, 4th Ann. 416. The judges in that case were divided in opinion, but they were united in opinion in the principle of law therein laid down, and their dissent only related to its application of the facts of the case. See the cases there cited, and 4th Kent's Com. 261 (last edition,) note by the author. 11th Wendell's Rep. 117, Pelletreau v. Jackson. 13th Wendell 208, Jackson v. Waldron. | A party cannot deny a judicial admission solemnly made by him, nor shift his position at will to a contradictory one in relation to the subject-matter of litigation, to defeat an action of the law thereon. | Is a man permitted to deny what he solemnly acknowledged in a judicial proceeding or shift his position to a contradictory one in relation to the subject matter of the litigation? | Estoppel - Memo #20 - C - CSS_58252.docx | ROSS-003294587-ROSS-003294588 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 9646 | Pane v. City of Danbury, 267 Conn. 669 | 302+34(1) | Even if we read the substitute complaint to assert that the alleged FOIA violations constituted an invasion of the plaintiff's privacy per se, the plaintiff could not prevail. As Perkins recognized, in order to establish a cause of action for invasion of privacy, a plaintiff must allege that the disclosure of the information " "(a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." " Id., at 172, 635 A.2d 783. The plaintiff's substitute complaint made no such allegations. We are mindful that, "[u]nder modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action ... and that pleadings should be read broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) Sauerwein v. Bell, 17 Conn.App. 697, 709, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989). That does not mean, however, that the trial court is obligated to read into pleadings factual allegations that simply are not there or to substitute a cognizable legal theory that the facts, as pleaded, might conceivably support for the noncognizable theory that was actually pleaded. | Under modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action, and pleadings should be read broadly and realistically, rather than narrowly and technically; however, trial court is not obligated to read into pleadings factual allegations that simply are not there or to substitute a cognizable legal theory that the facts, as pleaded, might conceivably support for the noncognizable theory that was actually pleaded. | Is a slight linguistic ambiguity fatal to a cause of action? | Pleading - Memo 461 - RMM_58009.docx | ROSS-003294542-ROSS-003294543 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9647 | Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153 | 302+18 | We acknowledge that the requirement of specificity is relaxed when the allegations indicate that "the defendant must necessarily possess full information concerning the facts of the controversy" (Bradley v. Hartford Acc. & Indem. Co. (1973) 30 Cal.App.3d 818, 825, 106 Cal.Rptr. 718, disapproved on another ground in Silberg v. Anderson (1990) 50 Cal.3d 205, 212"213, 266 Cal.Rptr. 638, 786 P.2d 365) or "when the facts lie more in the knowledge of the opposite party[.]" (Turner v. Milstein (1951) 103 Cal.App.2d 651, 658, 230 P.2d 25.) However, we consider this exception inapplicable here, for State Farm has no more reason to know who made the allegedly false representations to Tarmann than Tarmann. | Requirement of specificity in complaint for fraud is relaxed when allegations indicate defendant must necessarily possess full information concerning facts of controversy or when facts lie more in knowledge of opposite party. | When is the requirement of specificity relaxed? | Pleading - Memo 468 - RMM_58016.docx | ROSS-003281328-ROSS-003281329 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 9648 | Tri Star Investments v. Miele, 407 So. 2d 292 | 307A+675 | The law is clear that a trial court has the inherent authority to dismiss an action when fraud has been perpetrated on the court. Such power is indispensable to the proper administration of justice, because no litigant has a right to trifle with the courts. It is a power, however, which should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing. Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978). The court, however, should carefully adhere to established due process, adversarial practice, and evidentiary rules in conducting an inquiry into such charges. | Court should carefully adhere to established due process, adversarial practice, and evidentiary rules in conducting an inquiry into charges that fraud has been perpetrated on the court. | "While a court has the inherent authority to dismiss an action where a fraud has been perpetrated, is that the most severe of sanctions and the court must carefully adhere to established due process?" | 035009.docx | LEGALEASE-00148079-LEGALEASE-00148080 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 9649 | Bogan v. Byrom, 151 So. 2d 718 | 307A+563 | The power of the court to enforce its lawful orders is inherent. And, it is settled in this State that the court has the right and power to order a litigant to perform some act, procedural in character, and upon his failure or refusal to do so, to dismiss his suit. LSA-C.C.P. Article 933; St. Charles St. R. Co. v. Fidelity & Deposit Co. of Maryland, 109 La. 491, 33 So. 574; Succession of McMahon, 143 La. 644, 79 So. 175; Succession of Grover, 49 La.Ann. 1050, 22 So. 313; Curtis v. Jordan, 110 La. 429, 34 So. 591; Neal v. Hall, supra; La Fleur v. Dupuis, supra. | The court has the right and power to order a litigant to perform some act, procedural in character, and, upon his failure or refusal to do so, to dismiss his suit. LSA-C.C.P. art. 933. | Does a court have the right and power to order a litigant to perform some act? | 035079.docx | LEGALEASE-00148494-LEGALEASE-00148495 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9650 | Maxon v. Ottawa Pub. Co., 402 Ill. App. 3d 704 | 307A+561.1 | Moreover, trial courts have a readily available mechanism to determine whether the petition sufficiently states a cause of action against the potential defendant in section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2006)). A section 2"615 motion attacks the legal sufficiency of the complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 86, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). A court considering whether to grant or deny a motion to dismiss pursuant to section 2"615 must determine whether the complaint alone has stated sufficient facts to establish a cause of action upon which relief may be granted. Green v. Rogers, 234 Ill.2d 478 491, 334 Ill.Dec. 624, 917 N.E.2d 450 (2009); Bryson, 174 Ill.2d at 91, 220 Ill.Dec. 195, 672 N.E.2d 1207 (in ruling on a section 2"615 motion, a trial court may consider only the allegations of the complaint and may not consider any other material). | A motion to dismiss for failure to state a claim attacks the legal sufficiency of the complaint; it does not raise affirmative factual defenses, but alleges only defects on the face of the complaint. S.H.A. 735 ILCS 5/2-615. | Will a motion to dismiss attack the legal sufficiency of a complaint by alleging defects on the face of the complaint? | 035780.docx | LEGALEASE-00148232-LEGALEASE-00148233 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9651 | Lester v. State Workmen's Comp. Com'r, 161 W. Va. 299 | 413+9 | Therefore, despite our course of decisions in this area of the law, are of the opinion that the rights and duties under our workmen's compensation statute are no longer contractual but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties. The only significance adhering to the contractual relationship is the existence of an employer-employee relationship. Once the employer-employee relationship is established, the statute imposes certain duties and responsibilities on the parties to that relationship. | Rights and duties under workmen's compensation statute are no longer contractual but grow out of employer-employee status to which law attaches certain duties and responsibilities and liability of employers arises from law itself, rather than from any agreement of the parties; thus only significance adhering to contractual relationship is existence of employer-employee relationship and once that relationship is established, the statute imposes certain duties and responsibilities on parties to that relationship. Code, 23-4-15. | Is it the employer-employee status to which the law attaches certain duties and responsibilities? | 048389.docx | LEGALEASE-00148262-LEGALEASE-00148263 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 9652 | Fitzpatrick v. Teleflex, 630 F. Supp. 2d 91 | 184+7 | To establish a fiduciary relationship there must be: "(1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." Innovative Network Solutions, Inc. v. Onestar Commc'ns., LLC, 283 F.Supp.2d 295, 303 (D.Me.2003) (quotation omitted). "To demonstrate the necessary disparity of position and influence ... a party must demonstrate diminished emotional or physical capacity or ... the letting down of all guards and bars." Camden Nat'l Bank v. Crest Constr., Inc., 2008 ME 113,13,952 A.2d 213, 217 (quotation omitted). Teleflex argues that Plaintiff fails to meet this standard, characterizing the Complaint as "conclusory allegations only and lack[ing] any specificity regarding how exactly an ordinary arms-length business relationship was transformed into a fiduciary one." Defs.' Obj. at 4"5.Plaintiff's Complaint alleges, inter alia, (1) that Teleflex is a large and sophisticated organization with substantial experience in the manufacture and sale of industrial products as well as in the formation of distributor contracts; (2) that Plaintiff was solicited to become a ProHeat distributor by Scott Winton, a Teleflex sales manager and a professionally trained, sophisticated, and experienced negotiator; (3) that Plaintiff is an unsophisticated operator of a truck repair facility with no previous experience in the negotiation and acquisition of product distribution franchises; (4) that Teleflex used their superior negotiating position to take advantage of Plaintiff by convincing him to become a distributor of an early model auxiliary power unit in exchange for a promise of future profits; (5) that Plaintiff relied upon these representations, assuming they were in good faith; (6) and, that Mr. Winton used his negotiating superiority to avoid any written commitments to Plaintiff. Compl. 71"79 (Docket # 1"2). | Under Maine law, in order to establish a fiduciary relationship there must be: (1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue. | What is necessary to demonstrate disparity of position and influence in a bank-borrower relationship? | 014099.docx | LEGALEASE-00149853-LEGALEASE-00149854 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9653 | Walker v. Winston Cty. Comm'n, 474 So. 2d 1116 | 200+79.6 | Although a wire fence had been across the road at the Maze-Cagle property line until 1979, when Maze purchased the property, the fence had a gate which allowed cars to pass. A gap or gate across a way to control livestock, as here, will not cause a road to lose its character as a public way, when it is evident that there was no interruption of its use by those travelling it. Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972). Both Maze and Cagle testified the road had been travellable all the way down to the Walker line. Donald Walker confirmed that the northern portion of the road had always been open, as did another neighbor, Alvin N. White. | Gap or gate across public road to control livestock does not cause road to lose character as public way, where there is no interruption of use of road by those traveling it. | Whether placing of a gap or gate can cause the road to lose its public character? | 019061.docx | LEGALEASE-00149131-LEGALEASE-00149132 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9654 | Hutcheson v. Elec. Data Access Techs., 327 S.W.3d 622 | 307A+581 | A dismissal for failure to prosecute is within the trial court's discretion and we review for an abuse of that discretion. Snelling v. Beck, 207 S.W.3d 202, 203 (Mo.App. E.D.2006). A trial court may dismiss for failure to prosecute when the party had a reasonable opportunity to bring the action to trial. Id. An involuntary dismissal may be made with prejudice if there is notice and an opportunity to be heard before the dismissal is made. Id. However, dismissal with prejudice implicates due process concerns, requiring notice and an opportunity to be heard. Id.; see also State ex rel. Willens v. Gray, 757 S.W.2d 656, 658 (Mo.App. W.D.1988). | A trial court may dismiss for failure to prosecute when the party had a reasonable opportunity to bring the action to trial. | Can a court dismiss for failure to prosecute when the party had a reasonable opportunity to bring the action to trial? | 036469.docx | LEGALEASE-00149161-LEGALEASE-00149162 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9655 | Pelletier Mech. Servs. v. G & W Mgmt., 162 Conn. App. 294 | 308+146(2) | The issue of whether an agent has disclosed the identity of a principal so as to avoid liability on a contract is a question of fact. Robert T. Reynolds Associates, Inc. v. Asbeck, 23 Conn.App. 247, 253"54, 580 A.2d 533 (1990); see also Murphy v. Dell Corp., 184 Conn. 581, 582"83, 440 A.2d 223 (1981); Connecticut Limousine Service, Inc. v. Powers, 7 Conn.App. 398, 402, 508 A.2d 836 (1986). The court in the present case did not find that the defendant had disclosed the identity of the principal. On appeal, the defendant has not challenged the factual findings of the trial court. | The issue of whether an agent has disclosed the identity of a principal so as to avoid liability on a contract is a question of fact. Restatement (Third) of Agency S 6.02. | Is the issue of whether an agent disclosed the identity of a principal to avoid liability a question of fact? | Principal and Agent - Memo 138 - RK_58685.docx | ROSS-003282107-ROSS-003282108 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9656 | People v. Borrelli, 77 Cal. App. 4th 703 | 3.77E+06 | In any event, appellant's arguments miss the mark. Section 646.9 does not regulate the content of speech insomuch as the manner in which the communication is made. While the right to free speech guarantees a powerful right to express oneself, it does not include the right to repeatedly invade another person's constitutional rights of privacy and the pursuit of happiness through the use of acts and threats that evidence a pattern of harassment designed to inflict substantial emotional distress. The aim and effect of this statute are not to suppress speech, but to protect individuals in the exercise and enjoyment of their constitutional rights from invasive, oppressive conduct that infringes on those rights. (See In re M.S., supra, 10 Cal.4th at p. 722, 42 Cal.Rptr.2d 355, 896 P.2d 1365 [same but applied to " 422.6]; In re Steven S. (1994) 25 Cal.App.4th 598, 606"609, 31 Cal.Rptr.2d 644 [same but applied to " 11411].) | Aim and effect of stalking statute are not to suppress speech, but to protect individuals in the exercise and enjoyment of their constitutional rights from invasive, oppressive conduct that infringes on those rights. West's Ann.Cal.Penal Code S 646.9(a). | Is the aim and effect of the stalking statute to suppress speech? | "Threats, Stalking, and Harassment - Memo #13 - C - LB.docx" | LEGALEASE-00039719-LEGALEASE-00039720 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9657 | United States v. Greenbaum, 138 F.2d 437 | 178+12 | The basis for the construction thus placed upon the statute in the Baender case is not easy to differentiate. Counterfeiting is a direct and serious affront to the sovereign and usually perpetrated with effort at greatest secrecy, but the particular statutory provision4 had originally contained the qualifying words "with intent to fraudulently or unlawfully use the same", which were eliminated when the subject matter of the original statute was incorporated in the Criminal Code,-a circumstance that might well have been taken to confirm that the deletion was designedly purposeful. None the less, on the authority of United States v. Balint, supra, we conclude that the construction of the statute before us presents no more than a question of legislative intent and we perceive an intent in Sec. 333(a) to punish persons who introduced adulterated foods into interstate commerce regardless of their lack of knowledge or wilfulness. | Federal Food, Drug and Cosmetic Act discloses legislative intent to punish persons who have introduced adulterated foods into interstate commerce, regardless of their lack of knowledge or wilfulness. Federal Food, Drug and Cosmetic Act, SS 201(f), 301(a), 303(a-c), 305, 402(a)(3), 21 U.S.C.A. SS 321(f), 331(a), 333(a-c), 335, 342(a)(3). | "Is introduction of adulterated food into interstate commerce, regardless of intent or lack of knowledge as to adulteration, an offense?" | Adulteration-Memo 10-P_1Yi2UvW-5pKR1szEx3dlqULA1XngQeoTr.docx | ROSS-000000160-ROSS-000000161 | Order, SA, Sub | 0.64 | 1 | 0 | 1 | 1 | 1 |
| 9658 | Woodruff v. Merchants' Bank, 25 Wend. 673 | 83E+675 | A bill of exchange drawn upon the cashier of a bank, and accepted by him in his official character, payable to the order of the payee, at a future day, is a bill of exchange, entitled to days of grace and is not a bank check or draft, falling due at the expiration of the time specified in it. | A bill of exchange, drawn upon a cashier of a bank, and accepted by him in his official character, payable to the order of the payee at a future day, is entitled to days of grace. | Is bill of exchange entitled to days of grace? | 010001.docx | LEGALEASE-00150220-LEGALEASE-00150221 | Order, SA | 0.39 | 1 | 0 | 0 | 1 | |
| 9659 | Andrews v. Marriott Int'l, 2016 IL App (1st) 122731 | 307A+561.1 | "The purpose of a section 2"619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation" (Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003)) and is "similar to a summary judgment motion because [it] "essentially amounts to a summary judgment procedure." " Peterson v. Randhava, 313 Ill.App.3d 1, 9, 246 Ill.Dec. 75, 729 N.E.2d 75 (2000) (quoting Malanowski v. Jabamoni, 293 Ill.App.3d 720, 724, 228 Ill.Dec. 34, 688 N.E.2d 732 (1997)). These types of motions are similar because in order to rule on them we must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." | The purpose of a motion for involuntary dismissal based upon certain defects or defenses is to dispose of issues of law and easily proved issues of fact at the outset of litigation and is similar to a summary judgment motion because it essentially amounts to a summary judgment procedure. S.H.A. 735 ILCS 5/2-619. | What would be the purpose of a motion for involuntary dismissal based on? | 036512.docx | LEGALEASE-00150058-LEGALEASE-00150059 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 9660 | Viesel v. Republic Ins. Co., 665 So. 2d 1221 | 307A+581 | Article 561 is not to be used to dismiss cases where the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action. Kanuk v. Pohlmann, 338 So.2d 757 (La.App. 4th Cir.1976), writ denied, 341 So.2d 420 (La.1977). Article 561 is not designed to dismiss actions on mere technicalities but to dismiss those actions which in fact have been abandoned. Shulver v. Slocum, 566 So.2d 1089 (La.App. 2nd Cir.1990), writ denied, 569 So.2d 984 (La.1990). A notice of intent to take a deposition does constitute a "step" in the prosecution of an action. See, Highlands Insurance Co. v. City of Lafayette, 453 So.2d 608 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 119 (La.1984). | Provision of Code of Civil Procedure governing abandonment of action is not to be used to dismiss cases where plaintiff has clearly demonstrated before court during prescribed period that he does not intend to abandon action. LSA-C.C.P. art. 561. | Is abandonment to be used to dismiss cases where a party has clearly demonstrated that it does not intend to abandon the action? | 036518.docx | LEGALEASE-00150158-LEGALEASE-00150159 | Order, SA | 0.66 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9661 | Scoville v. Shaffer, 9 S.W.3d 201 | 307A+594.1 | In determining whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case, including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. King v. Holland, 884 S.W.2d 231, 237 (Tex.App.-Corpus Christi 1994, writ denied). No single factor is dispositive, and a belated trial setting or stated readiness to proceed to trial does not conclusively establish diligence. Ozuna v. Southwest Bio"Clinical Laboratories, 766 S.W.2d 900, 902 (Tex.App.-San Antonio 1989, writ denied). | In determining whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case, including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay; no single factor is dispositive, and a belated trial setting or stated readiness to proceed to trial does not conclusively establish diligence. | Does a belated trial setting or stated readiness to proceed to trial conclusively establish diligence? | Pretrial Procedure - Memo # 8158 - C - BP_59057.docx | ROSS-003279302-ROSS-003279303 | Order, SA | 0.29 | 1 | 0 | 0 | 1 | |
| 9662 | Cullen v. Phillips, 30 P.3d 828 | 307A+581 | Pursuant to C.R.C.P. 41(b)(2), the trial court has discretion to dismiss an action for failure to prosecute with due diligence after reasonable notice. Schleining v. Estate of Sunday, 163 Colo. 424, 431 P.2d 464 (1967). Although unilateral resumption of prosecution should not necessarily insulate a plaintiff from dismissal for lack of prosecution, it is an important factor in the trial court's consideration. See Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., 698 P.2d 1340 (Colo.1985). Other factors include the length of delay, the reasons for the delay, the prejudice that will result to the defendant by allowing the matter to continue, the difficulties in trying the case as a result of the delay, and the nature and extent of the plaintiff's renewed efforts. See Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra. Dismissal with prejudice is a drastic sanction to be applied only in extreme situations. Nelson v. Blacker, supra. | Although unilateral resumption of prosecution should not necessarily insulate a plaintiff from dismissal for lack of prosecution, it is an important factor in the trial court's consideration, and other factors include the length of delay, the reasons for the delay, the prejudice that will result to the defendant by allowing the matter to continue, the difficulties in trying the case as a result of the delay, and the nature and extent of the plaintiff's renewed efforts. | Should unilateral resumption of prosecution insulate a plaintiff from dismissal for lack of prosecution? | 036697.docx | LEGALEASE-00150444-LEGALEASE-00150445 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 9663 | Horobec v. Mueller, 628 S.W.2d 942 | 307A+581 | Although the decision whether a case should be dismissed for want of prosecution should be determined upon the particular facts and circumstances of the action on a case-by-case basis, Bonney v. Farmer, supra, Laurie v. Ezard, supra at 338(5), prior appellate decisions do provide some guidance. Neither the parties nor research had disclosed a case in which the plaintiff's case was dismissed with prejudice for failure to diligently prosecute, when the plaintiff stood ready to try the case and was not chargeable with any past lack of diligence, solely upon the basis that plaintiff's counsel was tardy in appearing in court because of a conflicting court setting. | Decision whether a case should be dismissed for want of prosecution should be determined upon the particular facts and circumstances of the action on a case-by-case basis. | Should the decision to dismiss a case for want of prosecution be determined on a case by case basis? | 037128.docx | LEGALEASE-00150764-LEGALEASE-00150765 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9664 | Andrews v. United States, 125 A.3d 316 | 3.77E+13 | To prove threats to do bodily harm in violation of D.C.Code " 22"1810, the government must prove, inter alia, that the defendant's "words were of such a nature as to convey fear of bodily harm or injury to the ordinary hearer." The words in question "must be considered in the context in which they were used." The reference to the "ordinary hearer" does not mean the actual hearer's situation and reaction are irrelevant, for "the ordinary hearer we posit is one aware of all the surrounding circumstances, including what the actual hearer knew." While the government does not need to prove that the actual hearer felt threatened, the actual hearer's fear, or lack thereof, "may be probative as to whether the utterance, in the circumstances, was such as to convey fear of bodily injury to the "ordinary hearer." " As this court observed in Gray, "evidence about an actual person's response to a situation is evidence, sometimes the best evidence available, of how a reasonable person would have responded under the circumstances." | To prove threats to do bodily harm, the government must prove, inter alia, that the defendant's words were of such a nature as to convey fear of bodily harm or injury to the ordinary hearer. D.C. Official Code, 2001 Ed. S 22-1810. | "In order to support a threats to do bodily harm conviction, how must the words in question be considered?" | Threats and Stalking - Memo #24 - C - LB_58917.docx | ROSS-003307695-ROSS-003307696 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9665 | Lee v. Skidmore, 49 Ohio App. 2d 347 | 83E+503 | Thus, the statute creates an absolute right to recover in favor of the plaintiff upon proof that the draft was paid on a forged endorsement, as the defendant claims it paid the face amount thereof. Gast v. American Cas. Co. (1968), 99 N.J.Super. 538, 240 A.2d 682. See also, the comment to R.C. 1303.55, which states:"3. Division (A)(3) is new. It adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion. | Statute dealing with conversion of an instrument on the basis of forged endorsement creates an absolute right to recover in favor of payee upon proof that the draft was paid on a forged endorsement where the drawer-drawee claims that it paid the face amount thereof. R.C. S 1303.55. | Is there an absolute right to recover on forged endorsement? | 009707.docx | LEGALEASE-00151210-LEGALEASE-00151211 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 9666 | Monette Rd. Imp. Dist. v. Dudley, 144 Ark. 169 | 200+121 | The functions of the board of assessors in assessing benefits and the board of commissioners in adjusting them on complaint of the property owners is not judicial in the ordinary sense, but it is in the nature of a legislative power. Pine Bluff Water & Light Co. v. City of Pine Bluff, 62 Ark. 196, 35 S. W. 227; Mo. Pac. Ry. Co. v. Izard County Highway Improvement District, 220 S. W. 452. | Under Road Laws 1919, vol. 1, p. 105, creating the Monette Road Improvement District, as amended at January, 1920, special session, the functions of the board of assessors in assessing benefits, and of the board of commissioners in adjusting them, on the complaint of the property owners, is not judicial in the ordinary sense, but is in the nature of a legislative power. | Is the power of assessments by the commissioners legislative in nature? | 019162.docx | LEGALEASE-00151014-LEGALEASE-00151015 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 9667 | Power-Matics v. Ligotti, 79 N.J. Super. 294 | 302+20 | As we have noted, the trial judge refused to accept evidence on the second count and held that an express contract and reasonable value could not be alternatively proved. However, the authorities relied upon by the trial judge in rejecting plaintiff's second count-Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-281, 78 A.2d 393 (1951) and C. B. Snyder Realty Co. v. Nat., Inc., Banking Co., 14 N.J. 146, 162-163, 101 A.2d 544 (1952)-merely state that there must be a rescission of an express contract before the parties will be permitted to proceed with a claim for Quantum meruit. The only conflict between pleading and proving an express contract and Quantum meruit simultaneously occurs in the absence of a rescission. Indeed, our early cases which established the principle of substantial performance of building contracts also affirmed the submission of alternative counts to a jury for its consideration of reasonable value, when the owner had accepted the final product. E.g., Feeney v. Bardsley, 66 N.J.L. 239, 240, 49 A. 443 (E. & A. 1901). As Judge Conford stated in Shapiro v. Solomon, 42 N.J.Super. 377, 385, 126 A.2d 654 (App.Div.1956), express contract and Quantum meruit may be alternatively pleaded if the prerequisite rescission has also been pleaded or is unnecessary because the alleged express contract was actually void or did not exist. | Express contract and quantum meruit may be alternatively pleaded if prerequisite rescission has also been pleaded or is unnecessary because alleged express contract was actually void or did not exist. | Can an express contract and Quantum meruit be alternatively pleaded? | 023690.docx | LEGALEASE-00151373-LEGALEASE-00151374 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9668 | Crowell v. Cox, 525 S.W.3d 578 | 307A+679 | We review the grant of a motion to dismiss de novo and will affirm the dismissal on any meritorious ground stated in the motion. Vogt v. Emmons, 158 S.W.3d 243, 247 (Mo. App. 2005). In reviewing the petition to determine if it states a claim, we accept the allegations in the petition as true and grant the plaintiffs all reasonable inferences from those allegations. Campbell v. Cty. Comm'n of Franklin Cty., 453 S.W.3d 762, 767 (Mo. banc 2015). We do not weigh the factual allegations to determine their credibility or persuasiveness. Bromwell v. Nixon, 361 S.W.3d 393, 398 (Mo. banc 2012). Rather, we review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Id. (citation omitted). | In reviewing the petition on motion to dismiss to determine if it states a claim, courts accept the allegations in the petition as true and grant the plaintiffs all reasonable inferences from those allegations; courts do not weigh the factual allegations to determine their credibility or persuasiveness. | "In reviewing the petition to determine if it states a claim, do courts accept the allegations in the petition as true?" | Pretrial Procedure - Memo # 8481 - C - KI.docx | LEGALEASE-00040912-LEGALEASE-00040913 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 9669 | In re Med. Review Panel of Jones, 801 So. 2d 471 | 13+70 | Revised Statute 40:1299.39.1A(2)(c) is similar in form and effect to Louisiana Code of Civil Procedure article 561, which addresses abandonment of civil actions. In Clark, the supreme court explained that the purpose of abandonment statutes is to balance the desire of every litigant to have his day in court with the legislative purpose of preventing stale claims from lingering. 00-3010 at 10-11. Abandonment statutes are to be liberally construed in favor of maintaining a plaintiff's suit. "[A]bandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned." 00-3010 at 8-9. | Abandonment statutes are to be liberally construed in favor of maintaining a plaintiff's suit, and abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned. | Is the article governing abandonment designed to dismiss actions on mere technicalities or to dismiss only those actions that in fact have been abandoned? | 037250.docx | LEGALEASE-00151024-LEGALEASE-00151025 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 9670 | Culver v. Lang, 935 So. 2d 475 | 307A+561.1 | As previously noted, Lang and Parker asserted in their motion to dismiss that Culver and Senn's claim was barred by the affirmative defenses of the statute of limitations and the Statute of Frauds. A party can obtain a dismissal under Rule 12(b)(6), Ala. R. Civ. P., on the basis of an affirmative defense only when " "the affirmative defense appears clearly on the face of the pleading." " Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1193 (Ala.2003) (quoting Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055, 1058 (Ala.1981)); Williams v. Nash, 428 So.2d 96, 99-100 (Ala.Civ.App.1983). | A party can obtain a dismissal of a complaint for failure to state a claim on the basis of an affirmative defense only when the affirmative defense appears clearly on the face of the pleading. Rules Civ.Proc., Rule 12(b)(6). | Can a party obtain a dismissal of a complaint for failure to state a claim on the basis of an affirmative defense only? | Pretrial Procedure - Memo # 8568 - C - SKG_59364.docx | ROSS-003280098-ROSS-003280099 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 9671 | Breaker v. U.S., 977 F.Supp.2d 921 | 411+7 | An issue is not ripe for review absent a "showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged [action], and that the injury would be redressed by the relief requested." Wersal v. Sexton, 674 F.3d 1010, 1018 (8th Cir.2012). Before a party can challenge an action by the Forest Service in federal court, it must exhaust administrative remedies. Friends of the Norbeck v. United States Forest Serv., 661 F.3d 969, 974 (8th Cir.2011) (citing 7 U.S.C. " 6912(e) as codifying the judicial doctrine of exhaustion). Special use permit determinations by the Forest Service are reviewable by this Court. See KOLA, Inc. v. United States, 882 F.2d 361, 364 (9th Cir.1989) (noting that "the Regional Forester's decision to issue a special use permit is subject to judicial review where review involves an inquiry into whether the proper factors were considered by the Forestry Service"). | Before a party can challenge an action by the United States Forest Service (USFS) in federal court, it must exhaust administrative remedies. Department of Agriculture Reorganization Act of 1994, S 212(e), 7 U.S.C.A. S 6912(e). | Can a party challenge an action by the Forest Service in federal court before exhausting administrative remedies? | Woods and Forest - Memo 20-ANM_59390.docx | ROSS-003322336-ROSS-003322337 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9672 | Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 | 25T+358 | Were we empowered to view the matter de novo, we would find much to persuade in the arguments advanced by the dissenting arbitrator. But as respondent recognizes, the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated. See Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.Rev. 681 (1950). The statutory provisions, 9 U.S.C. "" 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law. It is true that an award may be vacated where the arbitrators have "exceeded their powers." 9 U.S.C. " 10(d). Apparently relying upon this phrase, the Supreme Court in Wilko v. Swan,346 U.S. 427, 436-437, 74 S.Ct. 182, 98 L.Ed. 168, suggested that an award may be vacated if in "manifest disregard" of the law. But cf. Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203 note 4, 76 S.Ct. 273, 276, 100 L.Ed. 199: "Whether the arbitrators misconstrued a contract is not open to judicial review," citing The Hartbridge, 2 Cir., 62 F.2d 72, certiorari denied Munson Steamship Line v. North of England Steamship Co., 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977. See also Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, certiorari denied W. E. Hedger Transp. Corp. v. James Richardson & Sons, 305 U.S. 657, 59 S.Ct. 357, 83 L.Ed. 426. | Court's function in confirming or vacating an arbitration award is severely limited, since, if it were otherwise, ostensible purpose for resort to arbitration, which is avoidance of litigation, would be frustrated. 9 U.S.C.A. SS 10, 11. | Will the ostensible purpose of arbitration be frustrated if a court determines the merits of the parties' arguments in advance of pending arbitration? | Alternative Dispute Resolution - Memo 813 - RK_59498.docx | ROSS-003281741-ROSS-003281742 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9673 | Maxum Foundations v. Salus Corp., 779 F.2d 974 | 25T+182(2) | We decline to create a rule that would require a party seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines and assuming the risk that its motion under the Federal Arbitration Act will be unsuccessful. Once Salus moved for dismissal Maxum was on notice of the claim of arbitrability, but Maxum did not formally object to continued discovery before it answered Salus' interrogatories and document requests on November 20 or produced one of its officers for a deposition on November 29. Maxum did raise the question of default on November 26, in its answer to Salus' motion to dismiss, but did not, as was its privilege under the federal rules, seek a protective order that could have allowed it to avoid the "undue burden or expense" that it would have associated with unnecessary discovery. See Fed.R.Civ.P. 26(c). A party confronted with a claim of arbitrability may pursue an order insulating it from discovery that could not be had if the underlying claim is properly the subject of arbitration. Absent a protective order, however, the party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline. As Salus received no benefit from discovery initiated by it before it sought dismissal in favor of arbitration, and Maxum subsequently failed to forestall discovery until after resolution of the arbitrability question, Salus did not, by its discovery, waive its right to arbitration. | A party confronted with the claim of arbitrability may pursue an order insulating it from discovery that could not be had if the underlying claim is properly the subject of arbitration; however, absent a protective order the party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline. | Can a party confronted with a claim of arbitrability pursue an order insulating it from discovery? | Alternative Dispute Resolution - Memo 834 - RK_59519.docx | ROSS-003294177-ROSS-003294178 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9674 | Belini v. Washington Mut. Bank, FA, 412 F.3d 17 | 172H+1557 | Section 1635, in relevant part, provides that "[w]ithin 20 days after receipt of a notice of rescission [from a debtor], the creditor shall return to the [debtor] any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created upon the transaction." 15 U.S.C. " 1635(b). Thus, section 1635(b) places certain requirements upon a creditor: upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest. Should the creditor not take these steps within twenty days, then the debtor has generally violated a "requirement" of section 1635 and can be held liable for damages under section 1640. See, e.g., Mijo v. Avco Fin. Servs. of Haw., Inc., 1991 WL 126660, at (9th Cir. July 1, 1991) (unpublished); Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 903 (3d Cir.1990); Smith v. Am. Fin. Sys., Inc., 737 F.2d 1549, 1552 (11th Cir.1984); Arnold v. W.D.L. Invs., Inc., 703 F.2d 848, 850 (5th Cir.1983); Gerasta, 575 F.2d at 584; Rowland v. Novus Fin. Corp., 949 F.Supp. 1447, 1455 (D.Haw.1996); see also Ralph C. Clontz, Jr., 2 Truth in Lending Manual " 10.03[4], at 10"4 (2000). | Lender's failure to timely take steps mandated by Truth in Lending Act's (TILA) right-of-rescission provision, in response to borrower's valid notice of rescission, generally constitutes violation of a "requirement" of same provision, for which lender can be held liable for damages. Truth in Lending Act, SS 125(b), 130(a), 15 U.S.C.A. SS 1635(b), 1640(a). | Will the lender's failure to timely respond to borrower's valid notice of rescission result in a violation? | 013886.docx | LEGALEASE-00151574-LEGALEASE-00151575 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 9675 | Powers v. Aberdeen Golf & Country Club, 886 So. 2d 312 | 307A+561.1 | Turning to Powers' issues on appeal, if on remand the trial court again rules that Aberdeen assumed Shea Homes' liability, Aberdeen is barred from asserting a statute of limitations defense. Aberdeen did not assert this affirmative defense in its responsive pleading. Florida Rule of Civil Procedure 1.110(d) specifically requires that the affirmative defense of the statute of limitations shall be asserted in the responsive pleading. "Generally, [affirmative] defenses ... are not properly considered on a motion to dismiss." U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc., 861 So.2d 74, 76 (Fla. 4th DCA 2003) (citations omitted). However, "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." Fla. R. Civ. P. 1.110(d). | Affirmative defenses are not properly considered on a motion to dismiss; however, affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense. West's F.S.A. RCP Rule 1.110(d). | Are affirmative defenses considered on a motion to dismiss? | Pretrial Procedure - Memo # 8607 - C - DA_59679.docx | ROSS-003292764-ROSS-003292765 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 9676 | First Nat. Bank of Blairstown v. Goldberg, 340 Pa. 337 | 8.30E+282 | In the present case, defendants did not part with value for the bonds, but they do not claim any right, title or interest therein as holders; they derived no benefit from the transactions, acting merely as agencies to place the bonds in the hands of brokers for sale and to transmit the proceeds in return. The purpose of the Negotiable Instruments Law is to enhance the marketability of such securities and to allow bankers, brokers, and people generally to trade in them with confidence.That object would be defeated if liability were to be imposed upon one who, mistakenly but in good faith, deals with negotiable instruments on the assumption that they belong to the person who employs him to effect their sale through ordinary market channels. | The purpose of the Negotiable Instruments Law is to enhance marketability of negotiable securities and to allow bankers, brokers, and people generally to trade in them with confidence. 56 P.S. S 1 et seq. | Does the purpose of the Commercial Code and Negotiable Instruments Law entail allowing bankers to trade in confidence? | 010050.docx | LEGALEASE-00152380-LEGALEASE-00152381 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 9677 | Graham v. White-Phillips Co., 296 U.S. 27 | 8.30E+05 | As with other enactments, the Negotiable Instrument Law must be interpreted in view of the intended end"here, the free circulation of negotiable paper"and the meaning attributed by the courts to the language employed. | Negotiable Instrument Law must be interpreted in view of intended end, such as free circulation of negotiable paper, and meaning attributed by courts to language employed. S.H.A. ch. 98, SS 72, 76. | Should the negotiable Instrument law be interpreted in view of the intended end? | 010056.docx | LEGALEASE-00152431-LEGALEASE-00152432 | Order, SA, Sub | 0.09 | 1 | 0 | 1 | 1 | 1 |
| 9678 | Eby v. Reb Realty, 495 F.2d 646 | 172H+1322 | The Truth in Lending Act is a remedial statute designed as much as possible to permit borrowers to make informed judgments about the use of credit. To effectuate this congressional purpose requires that the Act's terms be liberally construed. See N.C.Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir.), cert. denied 414 U.S. 827, 94 S.Ct. 38 L.Ed.2d 61 (1973); Gardner & North Roofing & Siding Corp. v. Board of Governors, 150 U.S. App.D.C. 329, 464 F.2d 838, 841 (1972). Here, realty sales were a significant aspect of appellant's business. And in nearly half its sales, it extended credit to its customers. They were credit transactions involving a large amount of money and not, after all, like granting credit for a bag of groceries. In view of this, we cannot say Reb Realty's extensions of credit were the type of isolated and incidental transactions the definition of creditor was meant to exempt. | Truth in Lending Act is remedial statute designed as much as possible to permit borrowers to make informed judgments about use of credit, and as such should be liberally construed. Truth in Lending Act, SS 1-145, 15 U.S.C.A. SS 1601-1665. | Why should the Truth in Lending Act be liberally constructed? | Consumer Credit - Memo 144- IS_60076.docx | ROSS-003292737-ROSS-003292738 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9679 | Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114 | 172H+1322 | Nonetheless, while Chase may have breached the CMA if it knew of Hauk's late payment before he accepted the BTO, the injury Hauk suffered neither resulted from any lack of TILA disclosures nor gave rise to a claim under TILA. Unlike Hauk's state law claims, TILA is only a "disclosure statute" and "does not substantively regulate consumer credit but rather "requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction."" Rendler v. Corus Bank, 272 F.3d 992, 996 (7th Cir.2001); see also Grimes v. New Century Mortgage Corp., 340 F.3d 1007, 1011 (9th Cir.2003) (McKeown, J., dissenting) ("The [plaintiffs] may indeed have been duped by an unethical loan officer. Whether they have a claim under [TILA] ... is another matter. TILA focuses on disclosure and does not serve as an umbrella statute for consumer protection in real estate transactions. Rather, TILA is designed to foster the informed use of credit by "assur[ing] a meaningful disclosure of credit terms."" (quoting 15 U.S.C. " 1601(a))) (third alteration in original); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1070 (7th Cir.2001) (""A creditor's substantive rights are still governed by state law; [TILA] merely classifies those rights for disclosure purposes."") | TILA is only a disclosure statute and does not substantively regulate consumer credit but rather requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction. Truth in Lending Act, S 102, 15 U.S.C.A. S 1601. | Is TILA only a disclosure statute that does not substantively regulate consumer credit? | Consumer Credit -Memo 96 -SB_60174.docx | ROSS-003278697-ROSS-003278698 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9680 | Norfolk & W. Ry. Co. v. Gee, 104 Va. 806 | 320+305(1) | In Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496, where numerous cases are cited and the question quite fully discussed, the horse of a traveler took fright at a small barrel mounted on wheels, which the owners of the property through which the highway ran were using in whitewashing their fences, and which they moved from time to time as the work progressed. They left it standing covered over with a white cloth, and having a shovel projecting a short distance above the top, all day Sunday on one side of the beaten highway track. In an action for damages thus caused it was held that unless there was something of an unusual or extraordinary character in the structure and appearance of the apparatus, which would naturally tend to frighten horses of ordinary gentleness and training, it was not negligence to use it; and its reasonable use for no longer a time than was naturally required on the highway in whitewashing the fence of defendants would not subject them to liability, although some horses might and did take fright at seeing it. | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | "If one uses apparatus for a reasonable time in a highway, and if it frightens the horse, is it negligence?" | Highways -Memo 344-SB_60195.docx | ROSS-003281762-ROSS-003281764 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 9681 | Gray v. Nat'l Restoration Sys., 354 Ill. App. 3d 345 | 307A+561.1 | A section 2"619 motion to dismiss admits the legal sufficiency of the plaintiff's allegations but asserts affirmative matter that avoids or defeats the claim stated. Peetoom v. Swanson, 334 Ill.App.3d 523, 526, 268 Ill.Dec. 305, 778 N.E.2d 291 (2002). The purpose of a section 2"619 motion to dismiss is to afford litigants a means of disposing of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. Zedella v. Gibson, 165 Ill.2d 181, 185, 209 Ill.Dec. 27, 650 N.E.2d 1000 (1995). | The purpose of a motion to dismiss based on certain defects or defenses is to afford litigants a means of disposing of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. S.H.A. 735 ILCS 5/2-619. | What is the purpose of a motion to dismiss? | Pretrial Procedure - Memo # 8620 - C - DA_59692.docx | ROSS-003281410-ROSS-003281411 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 9682 | Schwarz v. Consol. Edison, 49 Misc. 3d 832 | 307A+622 | Nevertheless, the court may consider evidentiary material in evaluating a motion made under CPLR 3211 (a) (7); when such material is considered, "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate" (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 401 N.Y.S.2d 182, 372 N.E.2d 17 1977). In other words, "dismissal results only if the movant demonstrates conclusively that the plaintiff has no cause of action, or that a material fact as claimed by the pleader to be one is not a fact at all" (Laquila Group, Inc. v. Hunt Const. Group, Inc., 44 Misc.3d 1203 (A), 2014 WL 2919334 Sup.Ct., New York Cty 2014, citing Sokol v. Leader, 74 A.D.3d 1180, 1181"1182, 904 N.Y.S.2d 153 2d Dept 2010). | Dismissal results only if the movant demonstrates conclusively that the plaintiff has no cause of action, or that a material fact as claimed by the pleader to be one is not a fact at all. McKinney's CPLR 3211(a)(7). | Does dismissal result only if the movant demonstrates conclusively that the plaintiff has no cause of action? | 037623.docx | LEGALEASE-00151984-LEGALEASE-00151985 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9683 | Indiana Nat. Bank v. State Dept of Human Servs., 880 P.2d 371 | 307A+622 | Motions to dismiss are generally viewed with disfavor under this liberal standard. (Kentucky Central Life Insurance Company v. LeDuc, 814 F.Supp. 832, 835 N.D.Cal.1992) and to withstand a motion to dismiss it is not necessary for a plaintiff to either identify a specific theory of recovery or set out the correct remedy or relief to which he or she may be entitled.Great Plains, 846 P.2d at 1096 (Opala, J., concurring opinion); Illinois Constructors Corporation v. Morency & Associates, Inc., 802 F.Supp. 185, 187 (N.D.Ill.E.D.1992). Generally, a petition may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Kentucky Central Life Insurance Company v. LeDuc, supra, 814 F.Supp. at 835. When a trial court is considering his ruling on a 2012 (B) (6) motion he should not ask whether the petition points to an appropriate statute or legal theory, but whether relief is possible under any set of facts that could be established consistent with the allegations. Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir.1992). As said in Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), a leading case espousing the purpose of the Federal Rules of Civil Procedure, upon which our Oklahoma Pleading Code was patterned, "the rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The above standards guide our review in this case. | Motions to dismiss are generally viewed with disfavor under liberal standard, and to withstand motion to dismiss, it is not necessary for plaintiff to either identify specific theory of recovery or set out correct remedy or relief to which he/she may be entitled. 12 Okl.St.Ann. S 2012, subd. B, par. 6. | Can a petition be dismissed as a matter of law for two reasons? | 037631.docx | LEGALEASE-00152049-LEGALEASE-00152050 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9684 | Cohen v. United States, 129 F.2d 733 | 170A+1832 | As already observed, this case was presented to the trial court upon a motion to dismiss because of the alleged failure of the complaint to state a claim upon which relief could be granted. Rule 12 (b), Rules of Civil Procedure, 28 U.S.C.A.following section 723c. This motion supplanted the general demurrer in an action at law and admits, for the purpose of the motion, all facts which are well pleaded. There was no answer interposed and no evidence introduced, nor was any opportunity afforded plaintiff to introduce evidence in support of the allegations of his complaint. Although the court made findings of fact and conclusions of law, the only facts which the court could properly have considered were those appearing in the complaint, supplemented by such facts as the court judicially knew. While the court must accept as true all well pleaded facts, the motion does not admit facts which the court will take judicial notice are not true, nor does the rule apply to legally impossible facts, nor to facts inadmissible in evidence, nor to facts which appear by a record or document included in the pleadings to be unfounded. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6; Cooper v. O Connor, 71 App.D.C. 6, 107 F.2d 207, 209. The motion here does not on its face purport to be a speaking motion, yet if such a motion were permissible, we might, in view of the record, assume that the motion had been amended. In Cooper v. O Connor, supra, the United States Court of Appeals for the District of Columbia said: "Upon a defendant motion to dismiss, the court may consider only the allegations of the bill. These alone, under such a motion, are to be taken as true. The trial court also could not consider, and we cannot consider, the new matter set up in the defendants motion to dismiss the bill. To the extent that that motion contained new matter it was a speaking demurrer."" | Where case was presented to District Court upon a motion to dismiss because of alleged failure of complaint to state a claim upon which relief could be granted, and no answer was interposed and no evidence introduced, the only facts which the court could properly consider in passing upon motion were those facts appearing in complaint, supplemented by such facts as the court judicially knew. Federal Rules of Civil Procedure, rule 12(b), 28 U.S.C.A. following section 723c. | "For purposes of deciding a motion to dismiss for failure to state a claim, are only the facts which a court can properly consider, those appearing in the complaint?" | 037689.docx | LEGALEASE-00152215-LEGALEASE-00152216 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9685 | Fitzgerald v. Bixler, 350 Mich. 688 | 307A+561.1 | Honigman has this to say on the subject (Honigman, Michigan Court Rules Annotated, p. 148) under his comment on Court Rule No. 18 (1945): "If an answer has been filed without raising the particular defense sought to be raised by a motion to dismiss subsequently filed, then the answer must be amended to permit such contention to be made on motion to dismiss." To the same effect see Schultz v. Nickel, 251 Mich. 273, 231 N.W. 575. | Where answer does not raise the defense presented by subsequent motion to dismiss, answer must be amended in order to permit such defense to be made on motion to dismiss. Michigan Court Rules, rule No. 18. | Should an answer be amended in order to permit defense to be made on motion to dismiss? | 037813.docx | LEGALEASE-00152016-LEGALEASE-00152017 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 9686 | R & B Kapital Dev. v. N. Shore Cmty. Bank & Tr. Co., 358 Ill. App. 3d 912 | 307A+561.1 | Waiver and equitable estoppel are affirmative defenses and under Illinois law must be affirmatively pled or they are waived. Hubble v. O'Connor, 291 Ill.App.3d 974, 225 Ill.Dec. 825, 684 N.E.2d 816 (1997). In this case, Chicago Title did not raise these defenses in an answer but used them as the basis of its section 2"615 motion to dismiss.An affirmative defense is properly asserted in a section 2"615 motion only if the defense is apparent from the face of the complaint.Advocate Health & Hospitals Corp. v. Bank One, N.A., 348 Ill.App.3d 755, 284 Ill.Dec. 710, 810 N.E.2d 500 (2004); Senese v. Climatemp, Inc., 222 Ill.App.3d 302, 164 Ill.Dec. 236, 582 N.E.2d 1180 (1991) (laches properly raised in section 2"615 motion where an unreasonable delay appeared on the face of the complaint and the plaintiff failed to explain the delay). | An affirmative defense is properly asserted for the first time in a Section 2 615 motion for dismissal with respect to pleadings only if the defense is apparent from the face of the complaint. S.H.A. 735 ILCS 5/2-615. | Can an affirmative defense be asserted for the first time in a motion for dismissal with respect to pleadings only if the defense is apparent from the face of the complaint? | 037869.docx | LEGALEASE-00152148-LEGALEASE-00152149 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 9687 | Morgan v. AT & T Corp., 168 N.C. App. 534 | 307A+561.1 | Here, defendant raised the affirmative defense of the federal filed tariff rate doctrine, arguing it preempted state action as a matter of law. See AT&T v. Central Office Telephone, 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222, 233 (1998). A claim is properly dismissed if the moving party shows that the "opposing party's claim is barred by an affirmative defense which cannot be overcome." Rahim v. Truck Air of the Carolinas, 123 N.C.App. 609, 612, 473 S.E.2d 688, 690 (1996). However, the Federal Telecommunications Act of 1996 and subsequent rulemaking by the Federal Communications Commission substantially ended the tariffed environment under which most telecommunications firms operated. See Ting v. AT&T, 319 F.3d 1126, 1132 (9th Cir.2003). As recent cases in other jurisdictions arising post-detariffication have recognized, the filed tariff doctrine applies only to contracts formed while the tariff was in effect, not to those formed after the tariffs were ended. See Ting, 319 F.3d at 1139. | Claim is properly dismissed if the moving party shows that the opposing party's claim is barred by an affirmative defense which cannot be overcome. | Will a claim be dismissed if the moving party shows that the opposing party's claim is barred by an affirmative defense which cannot be overcome? | 037873.docx | LEGALEASE-00152168-LEGALEASE-00152169 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9688 | Rutherford Realty Assocs. v. Borough of Rutherford, 277 N.J. Super. 347 | 307A+581 | The "drastic step" of dismissal "should not be invoked unless it is clear that the conduct of the offending party is deliberate." Veeder, 109 N.J.Super. at 546, 264 A.2d 91. As Judge Cohen opined in Audubon Volunteer Fire v. Church Construction Co., 206 N.J.Super. 405, 406-07, 502 A.2d 1183 (App.Div.1986),Eagerness to move cases must defer to our paramount duty to administer justice in the individual case.... There are ways short of dismissal or default to deal with slowdowns which cost a party money, waste the lawyers' time, prejudice a plaintiff's ability to collect a judgment or a defendant's ability to defend against one, or unjustifiably consume judicial resources.... Until courts have exhausted means of performing their sheperding function which do not terminate or deeply affect the outcome of a case, they ought not to bar a litigant's way to the courtroom. | Drastic step of dismissal of action for failing to comply with case management order should not be invoked unless it is clear that conduct of offending party is deliberate. | Should the drastic step of dismissal of an action be invoked unless it is clear that conduct of offending party is deliberate? | Pretrial Procedure - Memo # 9146 - C - NS_60092.docx | ROSS-003306377-ROSS-003306378 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9689 | Rossi v. Mathers, 749 P.2d 964 | 307A+581 | The determination of whether to dismiss an action for failure to prosecute with due diligence lies within the sound discretion of the trial court. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., 698 P.2d 1340 (Colo.1985). The burden is on the plaintiff to prosecute a case in due course without unusual or unreasonable delay. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra; BA Leasing Corp. v. Board of Assessment Appeals, 653 P.2d 80 (Colo.App.1982). Thus, in the absence of a showing by the plaintiff of mitigating circumstances or a reasonable excuse for the delay, an unusual delay in prosecuting an action justifies dismissal with prejudice. Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra; Richardson v. McFee, 687 P.2d 517 (Colo.App.1984). | In absence of showing by plaintiff of mitigating circumstances or reasonable excuse for delay, unusual delay in prosecuting action justifies dismissal with prejudice. Rules Civ.Proc., Rule 121(b), Standard S 1-10 (1987). | Does unusual delay in prosecuting action justify dismissal with prejudice? | Pretrial Procedure - Memo # 9166 - C - MS_60110.docx | ROSS-003293839-ROSS-003293840 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 9690 | Sierra Club v. Glickman, 974 F. Supp. 905 | 15A+1838 | In reviewing Forest Service management activities that require a high level of technical experience, a court must defer to the informed discretion of the Forest Service. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) (citing Kleppe v. Sierra Club, 427 U.S. at 412, 96 S.Ct. at 2731). "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." Marsh, 490 U.S. at 378, 109 S.Ct. at 1861. A court, however, must hold the Forest Service to "certain minimal standards of rationality." Louisiana ex rel. Guste v. Verity, 853 F.2d 322, 329 (5th Cir.1988) (internal citations and quotation marks omitted). Forest Service decisions, even within its area of expertise, must be based on a reasoned evaluation of relevant factors. See Marsh, 490 U.S. at 378, 109 S.Ct. at 1861"62. | When specialists express conflicting views, agency must have discretion to rely on reasonable opinions of its own qualified experts even if, as original matter, court might find contrary views more persuasive. | Will the Court hold the Forest Service to certain minimum standards of rationality? | Woods and Forest - Memo 19 - ANM_59657.docx | ROSS-003281017-ROSS-003281018 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9691 | Native Ecosystems Council v. Weldon, 697 F.3d 1043 | 411+8 | After a forest plan is approved, the Forest Service implements the forest plan when approving or denying site-specific projects. Forest Guardians, 329 F.3d at 1092. Site specific actions may include resource plans, permits, contracts, and other instruments for occupancy or use of forest lands. Inland Empire Pub. Lands Council v. U.S. Forest Serv., 88 F.3d 754, 757 (9th Cir.1996). While NFMA requires that the proposed site-specific actions be consistent with the governing Forest Plan, the Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference. Forest Guardians, 329 F.3d at 1097. The Forest Service's failure to comply with the provisions of a Forest Plan is a violation of the NFMA. Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953, 961 (9th Cir.2005). Agency decisions challenged under the NFMA may be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Forest Guardians, 329 F.3d at 1096"97; 5 U.S.C. " 706(2)(A). In determining whether a decision is arbitrary or capricious, we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Morongo Band of Mission Indians v. Fed. Aviation Admin., 161 F.3d 569, 573 (9th Cir.1998) (internal quotation marks and citation omitted). | While NFMA requires that the proposed site-specific actions be consistent with the governing Forest Plan, the Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference. National Forest Management Act of 1976, SS 6, 12(a), 16 U.S.C.A. S 1604. | Is the Forest Service's interpretation of its own rules or plans entitled to deference? | Woods and Forest - Memo 79 - RK_60201.docx | ROSS-003281665-ROSS-003281666 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9692 | Tidwell v. Bank of Tifton, 115 Ga. App. 555 | 8.30E+76 | "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in (Section) 109A-3-603 on payment or satisfaction, discharge it or enforce payment in his own name." s 109A-3-301, Georgia Uniform Commercial Code. None of the provisions of s 109A-3-603 of the Georgia Uniform Commercial Code prevent a recovery by the holder here. The bank's only disability is that it takes the instrument subject to the defenses set forth in Section 109A-3-306 of the Georgia Uniform Commercial Code, none of which are pleaded or proven. While the drawer of a check has the right to stop payment of it at any time before it has been certified or paid by the drawee, the drawer remains liable, unless he has a defense which is good against the holder. Paton's Digest, p. 3447; Bank of Venice v. Clapp, 17 Cal.App. 657, 121 P. 298; Guild v. Eastern Trust & Banking Co., 122 Me. 514, 121 A. 13; Brady, The Law of Bank Checks, pp. 363, 364. Accordingly, the trial court did not err in granting a summary judgment for the plaintiff as to the amount of the check sued upon. | Drawer of check has right to stop payment of it at any time before it has been certified or paid by drawee but drawer remains liable unless he has defense which is good against holder. Code, S 109A-3-306. | Can the drawer of a check be liable without a good defense against the holder? | 010676.docx | LEGALEASE-00153441-LEGALEASE-00153442 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9693 | Brophy v. Chase Manhattan Mortg. Co., 947 F. Supp. 879 | 13+3 | Furthermore, the legislative history reveals that Congress was well aware that it was eliminating a private right of action by repealing Section 6 and amending " 2604. In opposing the above amendments to RESPA, Representative Leonor K. Sullivan of Missouri warned: "[I]t should be noted that in repealing Section 6, the bill eliminates any penalty whatsoever for failing to give information which is, in fact, a "goodfaith" estimate." H.R.Rep. No. 667, 94th Cong., 1st Sess. 18 (1975), reprinted in 1975 U.S.C.C.A.N. 2448, 2459. Notwithstanding Representative Sullivan's concern, Congress repealed Section 6, amended " 2604, and as a result, extinguished the private right of action that had initially existed for failure to comply with the advance disclosure/goodfaith estimate provisions of RESPA. Hence, I conclude that the legislative history indicates that Congress did not intend to create a private right of action under amended " 2604. Therefore, I will grant defendants' Motion for Summary Judgment on the Brophys' claim under RESPA. | Because Real Estate Settlement Procedures Act (RESPA) specifically provides for private right of action under specific sections, but not under section requiring good faith estimate of charges, private right of action should not be implied under good faith estimate provision. Real Estate Settlement Procedures Act of 1974, SS 5, 16, as amended, 12 U.S.C.A. SS 2604, 2614. | Did the Congress intend to create a private right of action for failure to comply with good faith provision of Real Estate Settlement Procedures Act (RESPA)? | 013695.docx | LEGALEASE-00153336-LEGALEASE-00153337 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9694 | Healy v. Vaupel, 133 Ill. 2d 295 | 141E+990 | The plaintiff does not challenge the legislature's denomination of the Regency Universities System as a State instrumentality for purposes of section 8(d) of the Court of Claims Act. Northern Illinois University is part of that system (see Ill.Rev.Stat.1987, ch. 144, pars. 301, 802b) and therefore must also be considered a unit of State government. We note that the Regency Universities Act contains a number of provisions contemplating that actions against the Board of Regents will be brought in the Court of Claims. See Ill.Rev.Stat.1987, ch. 144, pars. 307(b), 308a(3). | Northern Illinois University is to be considered unit of state government, since it is part of Regency Universities System, which is designated state instrumentality for purposes of Court of Claims Act. S.H.A. ch. 37, P 439.8(d); ch. 144, PP 301, 802b. | Is a university an instrumentality of the State? | 017068.docx | LEGALEASE-00152860-LEGALEASE-00152861 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 9695 | Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist., 267 F.3d 877 | 141E+862 | The IDEA provides states with federal funds to help educate children with disabilities if they provide every qualified child with a FAPE that meets the federal statutory requirements.1 Congress enacted the IDEA "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.., 882 (9th Cir. 2001) | To accomplish goal of Individuals with Disabilities Education Act (IDEA) of ensuring that all children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs, those individuals who have first-hand knowledge of the child's needs, and who are most concerned about the child, must be involved in the individualized education program (IEP) creation process; IDEA's procedural safeguards facilitate this objective, and also help to ensure that the rights of children with disabilities and parents of such children are protected. Individuals with Disabilities Education Act, S 601 et seq., as amended, 20 U.S.C.A. S 1400 et seq. | What ensures appropriate education to children with disabilities? | 017337.docx | LEGALEASE-00153002-LEGALEASE-00153003 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 9696 | White Eagle v. City of Fort Pierre, 2002 S.D. 68 | 307A+581 | We have previously determined that the appropriate standard of review for a trial court's dismissal of a claim for failure to prosecute is abuse of discretion. London v. Adams, 1998 SD 41, 12, 578 N.W.2d 145, 148. Under this standard, we uphold the decision if "in view of the law and the circumstances" it was reasonably made. Id. (citation omitted). The decision to dismiss will not stand if it is "not justified by, and clearly against, reason and evidence." Id. Additionally, the following "guiding principles of law" assist our review:First, this Court ordinarily will not interfere with the trial court's ruling in these matters. Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal. Fourth, the plaintiff has the burden to proceed with the action. The defendant need only meet the plaintiff step by step. Finally, the dismissal of the cause of action for failure to prosecute should be granted when, after considering all the facts and circumstances of the case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptitude. | Dismissal of a cause of action for failure to prosecute should be granted when, after considering all the facts and circumstances of the case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptness. SDCL 15-11-11, 15-30-16. | Does plaintiff have the burden to proceed with an action and does defendant need only meet the plaintiff step by step? | Pretrial Procedure - Memo # 9198 - C - SN_60506.docx | ROSS-003279548-ROSS-003279549 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9697 | Cent. Tr. Co., Rochester v. Sheahen, 66 A.D.2d 1015 | 308+92(1) | A prior mortgage lien may be subordinated to a subsequent construction loan mortgage by agreement (Brooklyn Trust Co. v. Fairfield Gardens, Inc., 260 N.Y. 16, 182 N.E. 321). The fundamental rule in the interpretation of contracts is to ascertain the substantial intent of the parties and where the intention of the parties may be gathered from the four corners of the instrument, interpretation is a question of law (West, Weir and Bartel, Inc. v. Mary Carter Paint Company, 25 N.Y.2d 535, 307 N.Y.S.2d 449, 255 N.E.2d 709; Loblaw, Inc. v. Wylie, 50 A.D.2d 4, 8, 375 N.Y.S.2d 706, 709). Moreover, an agent may be appointed to do the same acts and to achieve the same legal consequences as if the principal had himself personally acted, except as to acts which by their nature, by public policy, or by contract, require personal performance, or acts which are illegal (N.Y.Jur. Agency, s 18). Furthermore, the existence of consideration is not essential to the relation of principal and agent (N.Y.Jur., Agency, s 2). | An agent may be appointed to do the same acts and to achieve the same legal consequences as if the principal had himself personally acted, except as to acts which by their nature, by public policy, or by contract, require personal performance or acts which are illegal. | Can an agent be appointed to do the same acts as the principal? | 041568.docx | LEGALEASE-00153151-LEGALEASE-00153152 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 9698 | City of Largo v. AHF-Bay Fund, 215 So. 3d 10 | 371+2001 | What constitutes a "tax" has been well established by Florida courts. A tax is an enforced burden imposed by a sovereign right for the support of the government, the administration of law, and the exercise of various functions the sovereign is called on to perform. State v. City of Port Orange, 650 So.2d 1, 3 (Fla. 1994) (citing Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 907 (1930); City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992)). Thus, there are two factors that exist when taxes are imposed: (1) the government acts unilaterally by sovereign right, and (2) the government acts in order to support routine government functions. | A "tax" is an enforced burden imposed by a sovereign right for the support of the government, the administration of law, and the exercise of various functions the sovereign is called on to perform. | Is a tax enforced to support the exercise of functions of the sovereign? | 046006.docx | LEGALEASE-00153283-LEGALEASE-00153284 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 9699 | Groza-Vance v. Vance, 2005-Ohio-3815 | 21+2 | The amendment was done with the permission of the court and was thus allowable. Rule 55.33(a). The amendment could only act as the required verification clause, however, if the attorney was a proper signatory of the verification. Where a statute specifies who can make an affidavit, only an affidavit by a specified person will suffice. McClard v. Morrison, 281 S.W.2d 592, 593 [1] (Mo.App.1955). Neither " 511.760.3 nor Rule 74.79(c) specify who is to make the verification in an action to register a foreign judgment. | Where a statute prescribes who shall make a certain affidavit, it can be made only by person specified, although there is nothing in language of statute to show that its designation was intended to be exclusive. | Can any other person make an affidavit even if the statute specifically states as to who shall be the affiant? | Affidavits - Memo 41 - _1fSje0W1sD5yuwdjaJS8pfZBNkqzi3-7T.docx | ROSS-000000178-ROSS-000000179 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 9700 | Dougherty v. Shankland, 217 Iowa 951 | 8.30E+05 | It is the settled law that where the language of the act is clear and unambiguous as to its meaning, it must control, whatever may have been the prior statutes or decisions under the common law on that subject. 8 C. J. 49. If there is no inconsistency between the statute and the common law, as followed prior to the enactment of the Negotiable Instruments Act, then the act does not repeal the former rulings under the common law. | Where language of Negotiable Instruments Act is clear and unambiguous, it must control, regardless of prior statutes or decisions under common law on that subject (Code 1931, S 9461 et seq.). | Is the Negotiable Instruments Act applicable when it conflicts with prior decisions under the common law? | 009780.docx | LEGALEASE-00154727-LEGALEASE-00154728 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9701 | Conwell v. Pumphrey, 9 Ind. 135 | 83E+481 | The second defense sets up usury in a transaction to which the Conwells are strangers, and is, therefore, not an available bar to the action. Jackson v. Henry, 10 Johns. 185. The contract of assignment is in no way connected with the consideration of the note; and though such contract may be tainted with usury, still, it only affects the promise of the assignor. So far as the assignment operates as a transfer of the note to the assignee, it is neither void nor voidable. Knights v. Putnam, 3 Pick. 184; Littell v. Hord, Hardin 811. | The contract of assignment of a note is in no way connected with the consideration thereof, and usury in such contract affects only the assignor's promise, and the assignment, so far as it operates as a transfer of the note, is neither void nor voidable. | Is the transfer of a note on usurious consideration void? | 009952.docx | LEGALEASE-00153786-LEGALEASE-00153787 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 9702 | Edwards v. First Am. Corp., 610 F.3d 514 | 172H+1581 | Because the statutory text does not limit liability to instances in which a plaintiff is overcharged, we hold that Plaintiff has established an injury sufficient to satisfy Article III. The legislative history of RESPA supports our holding. As first enacted in 1974, RESPA entitled purchasers to damages "in an amount equal to three times the value or amount of the fee or thing of value" that changed hands. Pub.L. No. 93"533, " 8(D)(2), 88 Stat. 1724 (1974) (amended 1983). This provision failed to account for "controlled business arrangements" like the alleged agreement between Tower City and First American Title, whereby an entity could provide a referral without the direct payment of a referral fee. | Home purchaser had standing to sue title insurer under anti-kickback provisions of Real Estate Settlement Procedures Act (RESPA), regardless of whether she was overcharged for settlement services; statutory text did not limit liability to instances in which a plaintiff was overcharged. U.S.C.A. Const. Art. 3, S 1 et seq.; Real Estate Settlement Procedures Act of 1974, S 8, 12 U.S.C.A. S 2607; Ohio R.C. SS 3935.04, 3935.07. | "Does the statutory text of Real Estate Settlement Procedures Act (RESPA), limit liability to instances in which a plaintiff is overcharged?" | Consumer Credit - Memo 155-IS_61198.docx | ROSS-003282693-ROSS-003282694 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 9703 | Strubel v. Capital One Bank (USA), N.A., 179 F. Supp. 3d 320 | 172H+1341 | Congress passed TILA in 1968 to ensure "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. " 1601(a). To achieve these goals, TILA contains a variety of mandatory disclosures that creditors must make to consumers both prior to the establishment of any legal obligations, and at specified points in the creditor-consumer relationship. Rossman v. Fleet Bank (R.I.) Nat'l Ass'n, 280 F.3d 384, 389 (3d Cir.2002). The Act grants rulemaking authority to the Consumer Financial Protection Bureau ("CFPB"). 15 U.S.C. " 1604(a). Prior to 2011, TILA's rulemaking authority was delegated to the Board of Governors of the Federal Reserve ("the Board"). Strubel v. Comenity Bank, No. 13"cv"4462, 2015 WL 321859, at 3 (S.D.N.Y. Jan. 23, 2015); 12 U.S.C. "" 5581-82. Regulation under TILA "may contain such additional requirements ... as in the judgment of the [CFPB] are necessary or proper to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. " 1604(a). All required disclosures under TILA must be made "clearly and conspicuously, in accordance with regulations of the [CFPB]." Id. " 1632(a). | TILA contains a variety of mandatory disclosures that creditors must make to consumers both prior to the establishment of any legal obligations, and at specified points in the creditor-consumer relationship. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Is a creditor obligated to make disclosures? | 013904.docx | LEGALEASE-00154757-LEGALEASE-00154758 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9704 | Knight v. Thayer, 125 Mass. 25 | 156+44 | Under a deed with covenants of warranty, a title afterwards acquired by the grantor enures by way of estoppel to the grantee, as against the grantor and his subsequent grantees. | Under a deed with covenants of warranty, a title afterwards acquired by the grantor inures by way of estoppel to the grantee, as against the grantor and his subsequent grantees. | "Under a deed with covenants of warranty from one capable of executing it, does a title afterwards acquired by the grantor enure by way of estoppel to the grantee?" | Estoppel - Memo #78 - C - CSS_61022.docx | ROSS-003281884-ROSS-003281885 | Order, SA | 0 | 1 | 0 | 0 | 1 | |
| 9705 | Belcher Ctr. LLC v. Belcher Ctr., 883 So. 2d 338 | 307A+561.1 | When considering an order granting a motion to dismiss, the de novo standard of review applies. Al-Hakim v. Holder, 787 So.2d 939, 941 (Fla. 2d DCA 2001). On a motion to dismiss for failure to state a cause of action, a trial court is confined to the four corners of the complaint, and the material allegations of the complaint must be taken as true. Davidson v. Iona-McGregor Fire Prot. & Rescue Dist., 674 So.2d 858, 859 (Fla. 2d DCA 1996). If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. Value Rent-A-Car, Inc. v. Grace, 794 So.2d 619, 621 (Fla. 2d DCA 2001). | If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. | When is the cause of a complaint subject to dismissal on the basis of an affirmative defense? | 038246.docx | LEGALEASE-00154181-LEGALEASE-00154182 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 9706 | Converge Servs. Grp. v. Curran, 383 Md. 462 | 30+3893 | In our review of the grant of a motion for dismissal under Md. Rule 2-322(b) we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party. Porterfield v. Mascari II, Inc., 374 Md. 402, 414, 823 A.2d 590, 597 (2003). Typically, "[t]he object of the motion is to argue that as a matter of law relief cannot be granted on the facts alleged." See Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary, 206 (3d ed.2003). Thus, consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any. | When reviewing the grant of a motion for permissive dismissal, the appellate court accepts all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party. Md.Rule 2-322(b). | Is the consideration of the universe of facts pertinent to the court's analysis of the motion limited generally to the four corners of the complaint and its incorporated supporting exhibits? | 038478.docx | LEGALEASE-00154553-LEGALEASE-00154554 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9707 | Ko v. Eljer Indus., 287 Ill. App. 3d 35 | 307A+680 | Our review of the trial court's grant of defendants' motions under section 2-619 is de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). When a defendant makes a motion to dismiss under section 2-619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72, 85, 209 Ill.Dec. 684, 691, 651 N.E.2d 1132, 1139 (1995). A reviewing court may affirm a dismissal granted pursuant to section 2-619 on any grounds supported by the record, regardless of the trial court's reasons. See Nagy v. Beckley, 218 Ill.App.3d 875, 878, 161 Ill.Dec. 488, 490, 578 N.E.2d 1134, 1136 (1991). | When defendant moves to dismiss, all well pleaded facts and reasonable inferences are accepted as true for purposes of motion. S.H.A. 735 ILCS 5/2-619. | "When a defendant moves to dismiss, are all well pleaded facts and reasonable inferences accepted as true for purposes of a motion?" | 038526.docx | LEGALEASE-00154487-LEGALEASE-00154488 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9708 | SNPCO v. City of Jefferson City, 363 S.W.3d 467 | 307A+681 | A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 894 (Tenn.2011); cf. Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 406 (Tenn.2002). The motion requires the court to review the complaint alone. Highwoods Props., Inc. v. City of Memphis, 297 S.W.3d 695, 700 (Tenn.2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn.2011), or when the complaint is totally lacking in clarity and specificity, Dobbs v. Guenther, 846 S.W.2d 270, 273 (Tenn.Ct.App.1992) (citing Smith v. Lincoln Brass Works, Inc., 712 S.W.2d 470, 471 (Tenn.1986)). | A motion to dismiss a complaint for failure to state a claim for which relief may be granted requires the court to review the complaint alone. Rules Civ.Proc., Rule 12.02(6). | Can a motion to dismiss a complaint for failure to state a claim for which relief can be granted require the court to review the complaint alone? | Pretrial Procedure - Memo # 9388 - C - PB.docx | LEGALEASE-00044171-LEGALEASE-00044172 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 9709 | Luna v. A.E. Eng'g Servs., 938 A.2d 744 | 307A+681 | We agree with Luna that the court acted prematurely in granting the motion to dismiss. Our review is de novo. In considering the sufficiency of the complaint against Ellison, we"like the trial court"are obliged to "accept its factual allegations and construe them in a light most favorable to" the plaintiffs.If the complaint "adequately states a claim" when thus viewed, "it may not be dismissed based on a ... court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."And (with limited exceptions not applicable here) a motion to dismiss for failure to state a claim "may not rely on any facts that do not appear on the face of the complaint itself." | A motion to dismiss for failure to state a claim may not rely on any facts that do not appear on the face of the complaint itself. | Can a motion to dismiss for failure to state a claim not rely on any facts that do not appear on the face of the complaint itself? | 06636.docx | LEGALEASE-00096583-LEGALEASE-00096584 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 9710 | Westland v. Weinmeister, 259 Mont. 412 | 307A+581 | First, the party moving for dismissal must demonstrate that the plaintiff has unreasonably delayed prosecution of his claim. Becky, 798 P.2d at 1015. An unreasonable delay raises a presumption of prejudice to the defendant and shifts the burden to the plaintiff to show good cause or a reasonable excuse for his inaction. Shackleton, 672 P.2d at 1115. | Party moving for dismissal due to failure to prosecute must demonstrate that plaintiff has unreasonably delayed prosecution of his claims. Rules Civ.Proc., Rule 41(b). | "Should a party moving for dismissal due to failure to prosecute, demonstrate that the plaintiff has unreasonably delayed the prosecution of his claims?" | 06642.docx | LEGALEASE-00096579-LEGALEASE-00096580 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 9711 | Hanlon, In re Marriage of, 83 Ill. App. 3d 629 | 307A+583 | Respondent also contends that the trial court erred in dismissing her counterpetition for want of prosecution. Courts possess the inherent power to dismiss actions for want of prosecution (Crawford v. Crawford (1976), 39 Ill.App.3d 457, 350 N.E.2d 103; Bender v. Schallerer (1973), 9 Ill.App.3d 951, 293 N.E.2d 411), and a determination that there has been a lack of diligent prosecution warranting dismissal rests within the sound discretion of the trial court and should not be disturbed upon appeal unless the reviewing court finds an abuse of that discretion (Bender v. Schallerer; Elward v. Mancuso Chevrolet, Inc. (1970), 122 Ill.App.2d 421, 259 N.E.2d 344). However, a dismissal for want of prosecution is error unless the party has been guilty of inexcusable delay in prosecuting the suit. Crawford v. Crawford; Polowick v. Meredith Construction Co. (1975), 29 Ill.App.3d 1092, 332 N.E.2d 17; Geraty v. Carbona Products Co. (1973), 16 Ill.App.3d 702, 306 N.E.2d 544. | Courts possess inherent power to dismiss actions for want of prosecution and determination that there has been lack of diligent prosecution warranting dismissal rests within sound discretion of trial court and should not be disturbed on appeal unless reviewing court finds abuse of that discretion; however, dismissal for want of prosecution is error unless party has been guilty of inexcusable delay in prosecuting the suit. | Is dismissal for want of prosecution error unless party has been guilty of inexcusable delay in prosecuting the suit? | Pretrial Procedure - Memo # 9444 - C - NS_60939.docx | ROSS-003295493-ROSS-003295494 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9712 | Don Shevey & Spires v. Am. Motors Realty Corp., 279 S.C. 58 | 307A+581 | The plaintiff has the burden of prosecuting his action, and the trial court may properly dismiss an action for plaintiff's unreasonable neglect in proceeding with his cause. Thomas & Howard Company v. Fowler, et al., 238 S.C. 46, 119 S.E.2d 97 (1961); Small v. Mungo, 254 S.C. 438, 175 S.E.2d 802 (1970). This authority is necessary if the courts are to control and efficiently manage an ever-expanding docket. Additionally, we disfavor the use of the Summons (Complaint Not Served), and have held those who use the device to high standards of compliance with procedural requirements. Richardson Construction Company, Inc. v. Meek Engineering & Construction, Inc., et al., 274 S.C. 307, 262 S.E.2d 913 (1980); Williams v. Carpenter, 273 S.C. 339, 256 S.E.2d 316 (1979). | Plaintiff has burden of prosecuting his action, and the trial court may properly dismiss action for plaintiff's unreasonable neglect in proceeding with his cause. | Can the court dismiss action for plaintiff's unreasonable neglect in proceeding with his cause? | 038848.docx | LEGALEASE-00154449-LEGALEASE-00154451 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9713 | Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411 | 170B+2792 | Once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc., v. Smith, 384 F.3d 93, 97 (3d Cir.2004). "[T]he plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Patterson by Patterson v. F.B.I. 893 F.2d 595, 604 (3d Cir.1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d. Cir.1984)). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. | Plaintiff opposing motion to dismiss for lack of personal jurisdiction must sustain its burden of proof by establishing jurisdictional facts through sworn affidavits or other competent evidence. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A. | "In opposing a motion to dismiss for lack of personal jurisdiction, can a plaintiff use sworn statements?" | 038946.docx | LEGALEASE-00154447-LEGALEASE-00154448 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 9714 | Westland v. Weinmeister, 259 Mont. 412 | 307A+581 | First, the party moving for dismissal must demonstrate that the plaintiff has unreasonably delayed prosecution of his claim. Becky, 798 P.2d at 1015. An unreasonable delay raises a presumption of prejudice to the defendant and shifts the burden to the plaintiff to show good cause or a reasonable excuse for his inaction. Shackleton, 672 P.2d at 1115. | Party moving for dismissal due to failure to prosecute must demonstrate that plaintiff has unreasonably delayed prosecution of his claims. Rules Civ.Proc., Rule 41(b). | "Should party moving for dismissal due to failure to prosecute, demonstrate that plaintiff has unreasonably delayed prosecution of his claims?" | Pretrial Procedure - Memo # 9617 - C - TM_61374.docx | ROSS-003281768-ROSS-003281769 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 9715 | Gordon v. Greenview Hosp., 300 S.W.3d 635 | 106+35 | A defendant may take issue with personal jurisdiction by filing a 12.02(2) motion prior to filing its answer or by including this defense in its answer. Tenn. R. Civ. P. 12.08. If a defendant raises the defense by motion, the defendant may, but is not required to, support the motion with affidavits or other evidentiary materials. Humphreys v. Selvey, 154 S.W.3d 544, 550 n. 5 (Tenn.Ct.App.2004). However, if a defendant supports its motion with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence. Chenault v. Walker, 36 S.W.3d at 56; Mfrs. Consolidation Serv., Inc. v. Rodell, 42 S.W.3d 846, 854"55 (Tenn.Ct.App.2000). | If a defendant challenges jurisdiction over the person by motion, the defendant may, but is not required to, support the motion with affidavits or other evidentiary materials; however, if the defendant supports its motion with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence. Rules Civ.Proc., Rule 12.02(2). | "When trial court expresses an intent to rule on motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, should a defendant support a motion with affidavits or other evidentiary materials?" | 039289.docx | LEGALEASE-00154767-LEGALEASE-00154768 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9716 | N.L.R.B. v. Int'l Longshoremen's & Warehousemen's Union, Local 10, 283 F.2d 558 | 308+92(1) | The second factor leading to the conclusion in Mallory that the stewards there were not acting as agents of the local union was that the Local had no policy to prevent non-union employees from holding jobs with the company, that the stewards acted contrary to union policy and to the express directions of the union president. See N.L.R.B. v. Local 135, Int'l Brotherhood of Teamsters, 7 Cir., 1959, 267 F.2d 870, 873; N.L.R.B. v. Chauffeurs, Teamsters & Helpers Local 364, Int'l Brotherhood of Teamsters, 7 Cir., 1960, 274 F.2d 19, 23. Again, a somewhat similar situation prevails in the present case, for the record before us indicates that the actions against Satchell were isolated occurrences and that the Local apparently had no established policy of keeping those who were suing the Union off the job. Nonetheless, it is beyond doubt that an agent may well be acting within the scope of his authority even when he commits an act specifically forbidden by his principal. Hinson v. United States, supra, 257 F.2d at page 183; White Auto Stores, Inc. v. Reyes, 10 Cir., 1955, 223 F.2d 298, 302; Fields v. Sanders, 1947, 29 Cal.2d 834, 180 P.2d 684, 688, 172 A.L.R. 525; Int'l Longshoremen's Union, 79 N.L.R.B. 1487 (1948). Consequently, the absence of a union policy supporting the actions taken by the stewards against Satchell is inconclusive. The stewards acted within the general scope of the authority provided for in the Local's constitution, and the Local remains responsible for their conduct. | An agent may be acting within the scope of his authority even when he commits an act specifically forbidden by his principal. | Does an agent act within the scope of his authority even when he commits an act specifically forbidden by his principal? | Principal and Agent - Memo 245 - KC_62160.docx | ROSS-003296508-ROSS-003296509 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 9717 | Culver v. Bigelow, 43 Vt. 249 | 308+143(2) | Where a party by simple contract deals with an agent who does not disclose the fact of his agency, he may be made liable in a suit in the name of the principal, to the same extent as if the agent had been principal and the suit had been brought in his name. But even if compound interest, when understandingly and voluntarily paid by a debtor, is usury, and subjects the creditor to an action to recover it back, yet upon the theory of the evidence on the part of the defense, it follows from what is already said, that the question of notice that Safford was acting in behalf of Culver, the real debtor, ought to have been submitted to the jury. | Where a party by simple contract deals with an agent, who does not disclose the fact of his agency, he may be made liable in a suit in the name of the principal to the same extent as if the agent had been principal and the suit had been brought in his name. | What is the liability of an agent who did not disclose the agency in a simple contract? | Principal and Agent - Memo 322 - KC_61255.docx | ROSS-003279201 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 9718 | United States v. Elonis, 841 F.3d 589 | 377E+12(1) | We believe Section 875(c) contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute. The Supreme Court focused on the subjective component. It held that to satisfy the subjective component of Section 875(c), the Government must demonstrate beyond a reasonable doubt that the defendant transmitted a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat.4 | Statute criminalizing making threatening communications contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute. 18 U.S.C.A. S 875(c). | Does the government need to satisfy both the objective and the subjective components of the statute criminializing making threatening communications? | 046752.docx | LEGALEASE-00154587-LEGALEASE-00154588 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 9719 | Sierra Club v. Robertson, 784 F. Supp. 593 | 411+7 | In addition, some of plaintiffs' concerns involve statutory or regulatory interpretation. The court must defer to the Forest Service's construction of the statute it administers, unless the plain statutory language is to the contrary. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842"45, 104 S.Ct. 2778, 2781"83, 81 L.Ed.2d 694 (1984). In particular, where the legal issue is the meaning of the Forest Service's own regulations, the agency's interpretation is controlling where it is not plainly erroneous or inconsistent with the regulation. See Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989). Finally, although the court must engage in a " "thorough, probing, in-depth review," " the Forest Service's actions are entitled to a " "presumption of regularity." " See Ringsred v. Dole, 828 F.2d 1300, 1302 (8th Cir.1987), quoting Citizens to Preserve, 401 U.S. at 415, 91 S.Ct. at 823. | Although Court of Appeals must engage in thorough, probing, in-depth review, Forest Service's actions are entitled to presumption of regularity. | Does the Court have to engage in a probing and in-depth review of the Forest Service's actions? | 047653.docx | LEGALEASE-00154671-LEGALEASE-00154672 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 9720 | Nat'l Westminster Bank USA v. Century Healthcare Corp., 885 F. Supp. 601 | 101+1058 | Lender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. See In re Prima Co., 98 F.2d 952, 965 (7th Cir.1938), cert. denied, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426 (1939) ("No doubt the debtor, because of its inability to meet its maturing obligations, acquiesced in Harris' recommendations [to install new management], but this we think is not sufficient to constitute domination of its will."). There is nothing inherently wrong with suggesting what course the debtor ought to follow. Unless the creditor has become, in effect, the alter ego of the debtor, he will not be held to an ethical duty in excess of the morals of the market place. In re Teltronics Services, Inc., 29 B.R. 139, 171 (Bankr.E.D.N.Y.1983). | Lender liability is predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own and was being used to further purposes of dominant corporation. | Is lender liability predicated on being used to further the purposes of the dominant corporation? | 010852.docx | LEGALEASE-00155741-LEGALEASE-00155742 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9721 | Palmer v. Champion Mortg., 465 F.3d 24 | 172H+1342 | This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer"a consumer who is neither particularly sophisticated nor particularly dense. See Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327"28 (7th Cir.1999) (explaining that TILA disclosures should be viewed from the perspective of an ordinary consumer, not a federal judge); see also Edmondson v. Allen"Russell Ford, Inc., 577 F.2d 291, 296 (5th Cir.1978) ("We must assess the adequacy of disclosure ... by the audience for which disclosure was intended."). Thus, we turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing. We conclude that she would not. | Courts must evaluate the adequacy of Truth in Lending Act (TILA)disclosures from the vantage point of a hypothetical average consumer, a consumer who is neither particularly sophisticated nor particularly dense. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Is an average consumer considered to be neither particularly sophisticated nor particularly dense? | 013708.docx | LEGALEASE-00155724-LEGALEASE-00155725 | Order, SA | 0.68 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9722 | Gerasta v. Hibernia Nat. Bank, 411 F. Supp. 176 | 172H+1323 | In determining whether a particular transaction is exempt, "the purpose of the transaction or extension of credit is controlling" and not the property which is the subject of the security interest involved. Sapenter v. Dreyco Incorporated, 326 F.Supp. 871, 874 (E.D.La.), aff'd, 450 F.2d 941 (5 Cir.), cert. denied, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1971). We find that the plaintiffs obtained a loan from Hibernia and entered into a contractual agreement with Building Materials for the purpose of repairing and/or improving their intended residence, prior to occupancy.24 The transaction was not one for "business or commercial purposes' and, therefore, was not exempt from the provisions of the Act. | In determining whether particular transaction is exempt from federal Consumer Credit Protection Act as one for "business or commercial purposes," purpose of transaction or extension of credit is controlling, and not property which is subject of the security interest involved. Truth in Lending Act, SS 102, 103(h), 104(1) as amended 15 U.S.C.A. SS 1601, 1602(h), 1603(1); Truth in Lending Regulations, Regulation Z, S 226.2(k), 15 U.S.C.A. following section 1700. | How is it determined whether a transaction involving a security interest is exempt? | 013718.docx | LEGALEASE-00155722-LEGALEASE-00155723 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 9723 | Beaudry v. TeleCheck Services , 579 F.3d 702 | 172H+1649 | Courts have reached a like conclusion in considering other statutes that contain similar statutory damages provisions. "[A]ny actual damage[s] sustained by [a consumer] as a result of [a] failure" to comply with the Fair Debt Collection Protection Act are available as an alternative to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit. See Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir.2007) (noting that the availability of statutory damages under the Fair Debt Collection Protection Act, see 15 U.S.C. " 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"). In considering a claim that the anti-wiretapping provisions of 18 U.S.C. " 2520 had been violated, the Seventh Circuit reasoned that, because the statute permits the recovery of "actual damages ... or statutory damages of not less than $50 and not more than $500," 18 U.S.C. " 2520(c)(1)(A), "the plaintiff need not prove any actual harm," Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir.1998). We have reached the same conclusion when construing the Truth in Lending Act, 15 U.S.C. " 1640(a), which allows recovery of "any actual damage sustained ... as a result of the failure" or "twice the amount of any finance charge," see Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800 (6th Cir.1996) (holding that a consumer did not need to show that she "suffered actual monetary damages" or that she "was actually misled or deceived" in order to prevail on a TILA claim for statutory damages and attorney's fees); accord Edwards v. Your Credit, Inc., 148 F.3d 427, 441 (5th Cir.1998); see also Martinez v. Shinn, 992 F.2d 997 (9th Cir.1993) (reaching the same conclusion with respect to the Migrant and Seasonal Agricultural Worker Protection Act, which allows the recovery of "actual damages, or statutory damages," 29 U.S.C. " 1854(c)(1)). | Any actual damages sustained by a consumer as a result of a failure to comply with the Fair Debt Collection Practices Act are available as an alternative to the recovery of statutory damages. Fair Debt Collection Practices Act, S 813(a), 15 U.S.C.A. S 1692k(a). | What damages can a consumer recover if a debt collector violates the Fair Debt Collection Protection Act (FDCPA)? | 013734.docx | LEGALEASE-00155735-LEGALEASE-00155737 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9724 | Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 | 172H+1536 | 15 U.S.C. s 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. s 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. See Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979). | Strict technical compliance with the Truth in Lending Act, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does strict technical compliance of credit terms benefit all borrowers? | Consumer Credit - Memo 207 - RK_61869.docx | ROSS-003281860-ROSS-003281861 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9725 | LVNV Funding v. Mavaega, 527 S.W.3d 128 | 172H+1345 | Under TILA, "a creditor is required to send periodic statements to a debtor at the end of each billing cycle where there is an outstanding balance or where a finance charge was imposed." Kirk v. Lvnv Funding LLC, No. 14-00516-CV-W-DW, 2014 WL 12540481, a (W.D. Mo. Oct. 29, 2014) (citing 15 U.S.C. section 1637(b)). The creditor may be relieved of that requirement, however, if one of four circumstances exists: (1) the creditor deems the account uncollectible; (2) delinquency collection proceedings have been instituted; (3) the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; or (4) furnishing the statement would violate federal law. 12 C.F.R. section 226.5(b)(2)(i). | Under the Truth In Lending Act (TILA), a creditor is required to send periodic statements to a debtor at the end of each billing cycle where there is an outstanding balance or where a finance charge was imposed. Truth in Lending Act S 127, 15 U.S.C.A. S 1637(b). | Is a creditor required to send periodic statements to a debtor? | 013912.docx | LEGALEASE-00155180-LEGALEASE-00155181 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 9726 | Bowman v. Benouttas, 519 S.W.3d 586 | 302+34(3) | Notably, the complaint fails to mention the legal theories of loaned servant, vicarious liability of an independent contractor, or negligent hiring. Despite the liberal pleading standard set forth in Tenn. R. Civ. P. 8.01, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." Moses v. Dirghangi, 430 S.W.3d 371, 376 (Tenn. Ct. App. 2013) (quoting Trau"Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 704 (Tenn. 2002)). In fact, "[w]hen the Court is dealing simply with allegations of pleadings, ... the Court is not free to construct additional facts or allegations." Chism v. Mid"South Milling Co., Inc., 762 S.W.2d 552, 555 (Tenn. 1988), superseded by statute on other grounds. Accordingly, because Plaintiff failed to include allegations of loaned servant, negligent hiring, and vicarious liability of an independent contractor in her complaint, we conclude that the trial court did not err by declining to consider these additional legal theories. See Vise v. Swift, No.1, 1989 WL 89752, at *3 (Tenn. Ct. App. Aug. 8, 1989) (concluding that when respondeat superior was the sole theory of liability alleged in the complaint, Plaintiff could not thereafter rely on a theory of negligent entrustment). | When a court is dealing simply with allegations of pleadings, the court is not free to construct additional facts or allegations. Tenn. R. Civ. P. 8.01. | "When the court is dealing simply with allegations of pleadings, is it free to construct additional facts or allegations?" | Pleading - Memo 551 - RMM_61971.docx | ROSS-003281922-ROSS-003281923 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9727 | Covil v. Robert & Co. Assocs., 112 Ga. App. 163 | 302+37 | Plaintiffs' petitions do not allege that the T-joint was installed according to the defendant's plans and specifications. When a case is based upon negligence of an architect or engineer in preparing plans, it is essential that the plaintiff prove that construction of the project designed was accomplished in compliance with the plans and specifications furnished by the defendant, at least with respect to that portion of the work claimed to be defective. Bayne v. Everham, 197 Mich. 181, 163 N.W. 1002, 1007. See Sanders v. Kalamazoo Tank & Silo Co., 205 Mich. 339, 171 N.W. 523, 527; Lake v. McElfatrick, 139 N.Y. 349, 34 N.E. 922, 924. Likewise, it is necessary that a plaintiff allege this element as an ultimate fact in his petition, for without it there would appear in the petition no causational link between the alleged negligence and the injuries complained. of. When considered on general demurrer or oral motion in the nature of a general demurrer, a petition must be construed most strongly against the pleader; in applying this rule the petition will be construed in the light of its omissions as well as its averments. Mackler v. Lahman, 196 Ga. 535, 537, 27 S.E.2d 35; Toler v. Goodin, 200 Ga. 527, 534, 37 S.E.2d 609. The pleader's failure to allege essential facts and his reliance upon allegations that fall short of the essential facts will be construed to import the absence of those facts. Hulsey v. Interstate Life &c. Co., 207 Ga. 167, 170, 60 S.E.2d 353; Sterling Materials Co., Inc. v. McKinley, 218 Ga. 574(1) 129 S.E.2d 770. | On general demurrer or oral motion in nature of general demurrer, petition must be construed most strongly against pleader, and in applying this rule, the petition will be construed in light of its omissions as well as its averments. | "Will a petition be construed most strongly against the pleader, on general demurer?" | 023781.docx | LEGALEASE-00155470-LEGALEASE-00155471 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9728 | Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218 | 307A+690 | Generally, a dismissal that is "on the merits" of a claim is with prejudice, but a dismissal that is "based on a court's procedural inability to consider a case" is without prejudice. Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 415"16, 591 A.2d 592 (1991); Tsibikas v. Morrof, 5 N.J.Super. 306, 310, 68 A.2d 889 (App.Div.1949). The Rules of Court provide guidance on when a dismissal should be with prejudice: "Unless the order of dismissal otherwise specifies, a dismissal under R. 4:37"2(b) or (c) and any dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits." R. 4:37"2(d);3 see Woodward"Clyde, supra, 105 N.J. at 471, 523 A.2d 131 (explaining application of Rule 4:37"2(d)). | Generally, dismissal that is on the merits of claim is with prejudice, but dismissal that is based on court's procedural inability to consider case is without prejudice. | Is a dismissal based on the court's procedural inability to consider a case without prejudice? | Pretrial Procedure - Memo # 10226 - C - TJ_61731.docx | ROSS-003279050-ROSS-003279051 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9729 | Chodorow v. Porto Vita, Ltd., 954 So. 2d 1240 | 307A+680 | Additionally, if the analysis of a claim is factually intensive, it is better addressed on a summary judgment motion, or at trial, but certainly not on a motion to dismiss. Susan Fixel, 842 So.2d at 208. This case is indeed factually intensive. It calls for an in-depth analysis of the limitations defense, and this inquiry and fact-finding process cannot be accomplished on a motion to dismiss. We therefore reverse the orders under review, and remand this cause to the trial court for further proceedings consistent with this opinion. | If the analysis of a claim is factually intensive, it is better addressed on a summary judgment motion, or at trial, but certainly not on a motion to dismiss. | "If the analysis of a claim is factually intensive, is it better addressed on a summary judgment motion?" | Pretrial Procedure - Memo # 9002 - C - UG_61351.docx | ROSS-003282164-ROSS-003282165 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 9730 | Parlen v. Golden State Sanwa Bank, 194 Cal. App. 3d 906 | 307A+581 | Mindless or needless overdiscovery results in overbilling of clients and contributes to the clogging of the courts. It should be discouraged not encouraged. Thus, whether formal discovery has been conducted is but one important factor in the "totality of the circumstances" to be considered in deciding whether to dismiss "for delay in prosecution." It must not be the only determinant nor should it be given undue emphasis in making the determination of excusable delay or good cause. | Whether formal discovery has been conducted is but one important factor in totality of circumstances to be considered in deciding whether to dismiss for delay in prosecution. | Should court consider totality of circumstances in determining whether delay in prosecution of case is ground for dismissal of action? | 039019.docx | LEGALEASE-00154998-LEGALEASE-00154999 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 9731 | McMillan v. Troutman, 740 So. 2d 1227 | 307A+685 | In Venetian Salami, the Florida Supreme Court laid out the procedure by which a Florida plaintiff may seek to obtain personal jurisdiction over a nonresident defendant. Initially, the complaint must plead a sufficient basis for service in the language of section 48.193, Florida Statutes (1997). If the defendant moves to dismiss for lack of personal jurisdiction, without more, the motion raises only the legal sufficiency of the pleadings. If the defendant wishes to contest the jurisdictional allegations of the complaint, he must file an affidavit in support of his position. The burden then shifts to the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. If the factual allegations of the affidavits can be harmonized, the court can make its decision based upon the affidavits. If, however, the facts asserted in the affidavits are in direct conflict, the trial court must hold a limited evidentiary hearing to determine the issue of jurisdiction. Id. at 502"03. | If defendant wishes to contest jurisdictional allegations of complaint, he must file affidavit in support of his position. West's F.S.A. S 48.193. | "If a defendant wishes to contest jurisdictional allegations of complaint, should he file an affidavit in support of his position?" | 039538.docx | LEGALEASE-00155277-LEGALEASE-00155278 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 9732 | Wallace v. Sinclair, 114 Cal. App. 2d 220 | 308+92(1) | Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. The heart of agency is expressed in the ancient maxim: "Qui facit per alium facit per se." See 2 C.J.S., Agency, " 1, p. 1023. The extent of the agency is measured by the authority conferred upon the agent, actually or ostensibly and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal. Civil Code, secs. 2315, 2316, 2317, 2318, 2319, 2320, 2330. The agent has actual authority defined by section 2316 unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency, sec. 2318. In brief, an agent can act in the place of his principal while an employee may act only for his employer. 2 Cal.Jur.2d p. 653; People v. Treadwell, 69 Cal. 226, 236, 10 P. 502; Crossin v. Elysian Springs Water Company, 105 Cal.App. 449, 454, 287 P. 985. In the light of such authorities, respondent was an employee, not an agent of Home Ice | The extent of an agency is measured by the authority conferred upon the agent, actually or ostensibly, and his power is sufficient to do everything that is necessary, proper or usual to accomplish the purpose of the principal, and the agent has actual authority as defined by the Civil Code, unless limited by the principal, and his ostensible authority is unlimited except as to those persons having knowledge of the restrictions imposed upon the agency. Civ.Code, SS 2315-2320, 2330. | How is the extent of agency measured? | 041630.docx | LEGALEASE-00155673-LEGALEASE-00155674 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9733 | Gen. Motors Acceptance Corp. v. Lynch Bldg. Corp., 118 Fla. 2 | 308+92(1) | On the question of agency this court is committed to the rule that the principal is bound by acts committed within the real or apparent authority of its agent and that the public may rely on the apparent authority of the agent unless the circumstances are such as to put them on inquiry. Bush Grocery Co. v. Conely, 61 Fla. 131, 55 So. 867; American Fire Ins. Co. v. King Lumber & Mfg. Co., 74 Fla. 130, 77 So. 168; Beekman v. Sonntag Inv. Co., 67 Fla. 293, 64 So. 948. Bush Grocery Co. v. Conely, supra, further holds that whether or not an act done is within the scope of an agent's authority is a question of fact to be determined by the circumstances of the case. | Principal is bound by acts committed by agent within scope of his real or apparent authority, and public may rely on apparent authority of agent unless put on inquiry by circumstances. | Can the public rely on the apparent authority of the agent? | 041646.docx | LEGALEASE-00155694-LEGALEASE-00155695 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9734 | Newman v. City of Indianola, 232 N.W.2d 568 | 371+2060 | It is our view the method employed by the City for recovering the cost of the extension from Newman was a legal and valid method permitted under that portion of section 397.27 which authorizes a city to assess a reasonable rate fixed by ordinance upon each tenement or other place supplied with light or power. The method employed was not an attempt to levy a tax. There is a distinction between "taxes' and "assessments." A tax is a charge to pay the cost of government without regard to special benefits comferred.' In Re Trust of Shurtz, 242 Iowa 448, 454, 46 N.W.2d 559, 562. | There is a distinction between a "tax" and an "assessment"; a "tax" is a charge to pay the cost of government without regard to special benefits conferred. | Is tax a charge to pay the cost of government without regard to special benefits conferred? | 046079.docx | LEGALEASE-00154964-LEGALEASE-00154965 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9735 | Doe v. Sex Offender Registry Bd., 459 Mass. 603 | 268+256 | First, unlike taxes, fees "are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner "not shared by other members of society." " Emerson College, supra, quoting National Cable Television Ass'n v. United States, 415 U.S. 336, 341, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). In the context of regulatory fees, we stated in Silva, supra at 170, 908 N.E.2d 722, that "the particularized benefit provided in exchange for the [regulatory fee] is the existence of the regulatory scheme whose costs the fee serves to defray." Such fees "serve regulatory purposes either "directly by, for example, deliberately discouraging particular conduct by making it more expensive," or indirectly by defraying an agency's regulation-related expenses." Id. at 171, 908 N.E.2d 722, quoting Nuclear Metals, Inc. v. Low"Level Radioactive Waste Mgt. Bd., supra at 201"202, 656 N.E.2d 563. See P. Nichols, Taxation in Massachusetts, supra at 7"8 (pecuniary exaction designed to prevent persons within jurisdiction from conducting themselves to detriment of general welfare is imposed under police power rather than under power of taxation). | Unlike taxes, fees are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society. | Are fees distinguished from taxes for being charged in exchange for a particular governmental service? | 046112.docx | LEGALEASE-00155807-LEGALEASE-00155808 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9736 | Transp. Ins. Co. v. Jaeger, 534 S.W.2d 389 | 413+2 | Remedies under the Workmen's Compensation Act are purely statutory; each step toward maturity of a compensation claim is a mandatory requirement necessary to invoke the jurisdiction of each statutory agency or court. The filing of suit to set aside the award of the Board within 20 days after notice of appeal is a jurisdictional requirement. Brown v. McMillan Material Co., 108 S.W .2d 914 (Tex.Civ.App.1937, writ ref.); Richards v. Consolidated Underwriters, 411 S.W.2d 436 (Tex.Civ.App.1967, writ ref.) | Remedies under Workmen's Compensation Act are purely statutory; each step toward maturity of compensation claim is mandatory requirement necessary to invoke jurisdiction of each statutory agency or court. Vernon's Ann.Civ.St. art. 8307, S 5. | "In workmens compensation, when can one invoke jurisdiction?" | 048442.docx | LEGALEASE-00155136-LEGALEASE-00155137 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 9737 | ATC Petroleum v. Sanders, 860 F.2d 1104 | 156+52(1) | The doctrine of equitable estoppel is not, in itself, either a claim or a defense. Rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct. See generally 3 J. POMEROY, EQUITY JURISPRUDENCE " 804, at 189 (5th ed. 1941); Note, Equitable Estoppel of the Government, 79 COLUM.L.REV. 551, 552 (1979). Thus, a plaintiff seeking the benefit of equitable estoppel must have some claim, sounding in equity or in law, that otherwise entitles it to prevail against the defendant. | Doctrine of equitable estoppel is not, in itself, either a claim or a defense; rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct. | "Is equitable estoppel not, in itself, a claim or a defense?" | Estoppel - Memo #135 - C - CSS_62034.docx | ROSS-003282578-ROSS-003282579 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 9738 | Hosp. Prod. v. Sterile Design, 734 F. Supp. 896 | 156+52(1) | Estoppel is a doctrine separate from waiver. Midwest Petroleum Co. v. American Petrofina, Inc., 603 F.Supp. 1099, 1114 (E.D.Mo.1985); see generally 31 C.J.S. Estoppel " 61(b) at p. 387. Although no definition of equitable estoppel is completely satisfactory, Miskimen v. Kansas City Star Co., 684 S.W.2d 394, 400 (Mo.App.1984), and it rests largely on the facts and circumstances of the particular case, Southgate Bank and Trust Co. v. May, 696 S.W.2d 515, 521 (Mo.App.1985), estoppel is generally defined as the rule of law "that precludes one from denying his own expressed or implied admission that another person has in good faith and pursuant to its purpose accepted and acted upon." Id. at 520. Unlike waiver, estoppel depends on what the adversary party is induced to do rather than what one himself intends to do. 31 C.J.S. Estoppel " 61(b) at pp. 388"389. | Estoppel is generally defined as rule of law that precludes one from denying his own expressed or implied admission that another person has in good faith and pursuant to its purpose accepted and acted upon. | Can no definition of estoppel be completely satisfactory? | Estoppel - Memo #139 - C - CSS_62037.docx | ROSS-003282381-ROSS-003282382 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 9739 | Hensarling v. Holly, 972 So. 2d 716 | 307A+690 | The power to dismiss for failure to prosecute is an inherent power in any court of law or equity and has been regarded as a means necessary to control the court's docket and promote the orderly expedition of justice. Watson, 493 So.2d at 1278. Unless otherwise specified in its order, a dismissal under Rule 41(b) is an adjudication on the merits of the case and is with prejudice. Taylor v. GMC, 717 So.2d 747, 748( 5) (Miss.1998). However, "past Mississippi practice has tempered this harsh result by allowing dismissed cases to be reinstituted, except in extreme situations." Id. | Unless otherwise specified in its order, a dismissal for failure to prosecute is an adjudication on the merits of the case and is with prejudice. Rules Civ.Proc., Rule 41(b). | "Unless otherwise specified in its order, is a dismissal for failure to prosecute an adjudication on the merits of the case and is with prejudice?" | 024727.docx | LEGALEASE-00156104-LEGALEASE-00156105 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9740 | Thomas v. Long, 207 S.W.3d 334 | 307A+690 | If an administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision. Id. Until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss those claims without prejudice to refiling. Id. | If an administrative body has exclusive jurisdiction of a dispute, a party must exhaust all administrative remedies before seeking judicial review of the decision, and until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss those claims without prejudice to refiling. | Should dismissal for lack of jurisdiction be without prejudice? | 024736.docx | LEGALEASE-00156126-LEGALEASE-00156127 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 9741 | Reinbolt v. Nat'l Fire Ins. Co. of Hartford, 158 Ohio App. 3d 453 | 307A+690 | In a typical civil action, a claim that is dismissed "without prejudice" may be refiled at a later date. Harrison v. Registrar, Bur. of Motor Vehicles, 11th Dist. No. 2002"T"0095, 2003-Ohio-2546, 2003 WL 21142178, 18. Under exceptional circumstances, however, a dismissal without prejudice may be a final, appealable order. Lovins, supra, at 4"6. | In a typical civil action, a claim that is dismissed "without prejudice" may be refiled at a later date; under exceptional circumstances, however, a dismissal without prejudice may be a final, appealable order. | "In a typical civil action, can a claim that is dismissed ""without prejudice"" be refiled at a later date?" | 024747.docx | LEGALEASE-00156170-LEGALEASE-00156171 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9742 | Bianchi v. Savino Del Bene Int'l Freight Forwarders, 329 Ill. App. 3d 908 | 307A+622 | A motion to dismiss under section 2"615 motion attacks defects apparent on the face of the complaint and is based on insufficiency in the pleading rather than on the underlying facts. Barber"Colman, 236 Ill.App.3d at 1068, 177 Ill.Dec. 841, 603 N.E.2d 1215. Thus, it is apparent that in arguing that the citation was "facially invalid," Savino was asserting a section 2"615 argument. | A motion to dismiss based on an affirmative defense assumes a cause of action has been stated, but asserts that the claim is defeated by affirmative matter, while a motion to dismiss based upon defect in pleadings attacks defects apparent on the face of the complaint and is based on the insufficiency in the pleading rather than on the underlying facts. S.H.A. 735 ILCS 5/2-615, 2-619(a)(9). | Is a motion to dismiss based on the insufficiency in the pleading rather than on the underlying facts? | Pretrial Procedure - Memo # 10374 - C-AC_62099.docx | ROSS-003294291 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 9743 | Dickson v. Jefferson Cty. Bd. of Ed., 311 Ky. 781 | 371+2002 | "The distinction between a fee and a tax is one that is not always observed with nicety in judicial decisions, but any payment exacted by the state or its municipal subdivisions as a contribution toward the cost of maintaining governmental functions, where the special benefits derived from their performance is merged in the general benefit, is a tax." | Any payment exacted by the state or its municipal subdivisions as a contribution toward the cost of maintaining governmental functions, where special benefits derived from their performance are merged in general benefit, is a "tax", while a "fee" is generally regarded as a charge for some particular service. | Is the distinction between a fee and a tax always observed with nicety in judicial decisions? | Taxation - Memo # 992 - C - JL_62494.docx | ROSS-003280520 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 9744 | State v. Evans, 196 Wash. App. 1075 (2016) | 67+41(2) | Proof that the offense was committed in the nighttime is essential to a conviction of first degree burglary, but the time of the commission of the offense is not an essential element of the corpus delicti and defendant's confession is sufficient proof that it was during the nighttime. | Proof that offense was committed in nighttime is essential to conviction for first degree burglary, but time of offense is not essential element of corpus delicti, and confession is sufficient proof that crime was committed during nighttime. | Is proof that the breaking and entering occurred in the nighttime an essential element of the crime of burglary? | 013080.docx | LEGALEASE-00156563-LEGALEASE-00156564 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 9745 | State v. Rhodes, 408 S.W.2d 68 | 67+9(1) | Unlocking and opening a locked door, or pushing open a door which is shut but neither locked nor latched, 12 C.J.S. Burglary s 3; or the opening of a closed door, State v. Stewart, 329 Mo. 265, 44 S.W.2d 100, or the opening of an unlocked door, State v. Fritz, Mo.Sup., 379 S.W.2d 589, and cases cited, l.c. 590, is sufficient to render an entry thus effected burglary, if done with intent to commit burglary. | Unlocking and opening a locked door; or pushing open a door which is shut but neither locked nor latched; or the opening of a closed door or the opening of an unlocked door is sufficient to render an entry thus effected burglary, if done with intent to commit burglary. | Can opening a door with a key constitute burglary? | 013112.docx | LEGALEASE-00156528-LEGALEASE-00156529 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 9746 | Jones v. Royal Admin. Servs., 866 F.3d 1100 | 308+1 | We have previously clarified that "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014), aff'd sub nom. Campbell-Ewald Co. v. Gomez, """ U.S. """", 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations."). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 853 F.3d 1020, 1029 (9th Cir. 2017) (quoting Restatement (Third) Of Agency " 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and "[t]he person represented [must have] a right to control the actions of the agent." " (quoting Restatement (Third) Of Agency " 1.01 cmt. c). One theory of agency, actual authority, "arises through "the principal's assent that the agent take action on the principal's behalf." " (quoting Restatement (Third) Of Agency " 3.01). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency " 2.01. | Under California law, "agency" is the fiduciary relationship that arises when one person, a principal, manifests assent to another person, an agent, that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. | Is agency a fiduciary relationship? | Principal and Agent - Memo 561-SB_63577.docx | ROSS-003308202-ROSS-003308203 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9747 | Rezac Livestock Comm'n Co. v. Pinnacle Bank, 255 F. Supp. 3d 1150 | 308+1 | In Golden Rule, the Kansas Supreme Court explained that a principal-agent relationship (also referred to as an agency relationship) is created "when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." 335 P.3d at 1188 (quoting Restatement (Third) of Agency " 1.01 (Am. Law Inst. 2005)). And, a principal-agent relationship cannot exist unless the agent acts for the principal's benefit. See Merchant v. Foreman, 182 Kan. 550, 322 P.2d 740, 745 (1958) (explaining the duties of an agent to a principal, which require an agent "to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal"); 2A C.J.S. Agency " 5, Westlaw (database updated Apr. 11, 2017) ("[T]here are three elements that are integral to an agency relationship: the agent is subject to the principal's right of control; the agent has a duty to act, as a fiduciary, primarily for the benefit of the principal; and the agent holds the power to alter the legal relations of the principal."). So, a principal-agent relationship has three components: assent by both parties, benefit to the principal, and control by the principal. | Under Kansas law, a principal-agent relationship is created when one person, a principal, manifests assent to another person, an agent, that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. | When is a principal-agent relationship created? | Principal and Agent - Memo 563-SB_63579.docx | ROSS-003308188-ROSS-003308189 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9748 | Hadley v. City of Atlanta, 232 Ga. App. 871 | 371+2002 | The distinction between a tax and a fee is that a tax is imposed primarily as a revenue-raising measure, while a regulatory fee, or license, is imposed under the police power and is intended primarily as a means of or an aid in regulating a particular occupation or activity. Richmond County Business Assn. v. Richmond County, 224 Ga. 854, 856(1), 165 S.E.2d 293 (1968); Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206, 212, 56 S.E.2d 254 (1949). | The distinction between a tax and a fee is that a "tax" is imposed primarily as a revenue-raising measure, while a "regulatory fee" or "license" is imposed under the police power and is intended primarily as a means of or an aid in regulating a particular occupation or activity. | What is the distinction between tax and license? | 044489.docx | LEGALEASE-00156461-LEGALEASE-00156462 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9749 | Kaw Valley State Bank & Tr. v. Commercial Bank of Liberty, N.A., 567 S.W.2d 710 | 83E+486 | Defendant's right to setoff the deposit represented by the certificate in dispute arose more than three months before the certificate of deposit was assigned to plaintiff as collateral security. Notice of the assignment was not given to defendant until August of 1974. The assignee of a nonnegotiable instrument takes it subject to all defenses the maker may have against the instrument prior to notice of the assignment. Weinwick v. Bender, 33 Mo. 80 (1862); Sections 431.160 and 509.480 RSMo 1969. The purpose of these statutes is to make available to a defendant in a suit by an assignee of a nonnegotiable instrument: "every defense existing in his favor at the time of his being notified of the assignment which would have been available to him in an action by the assignor, to the end that the assignee be not allowed to take judgment against defendant on the chose when the assignor himself would not have been entitled to judgment thereon." Fricke v. W. E. Fuetterer Battery & Supplies Co., 220 Mo.App. 623, 288 S.W. 1000, 1003 (1926). | Assignee of nonnegotiable instrument takes it subject to all defenses which maker may have against instrument prior to notice of assignment. V.A.M.S. SS 431.160, 509.480. | Does an assignee of a nonnegotiable instrument take it subject to all defenses that the maker has against the instrument prior to notice of the assignment? | Bills and Notes - Memo 1246 - RK_62536.docx | ROSS-003282473-ROSS-003282474 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9750 | Leon v. Martinez, 638 N.E.2d 511 | 38+31 | No particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned (see, 4 Corbin, Contracts " 879, at 528 [1951]; Hinkle Iron Co. v. Kohn, 229 N.Y. 179, 182"183, 128 N.E. 113; Coastal Commercial Corp. v. Kosoff & Sons, 10 A.D.2d 372, 376, 199 N.Y.S.2d 852).Thus, Professor Corbin illustrates, in a contingent fee arrangement between attorney and client, there is a difference in legal effect between the words " "I will pay you a fee equal to one third of the amount collected from the defendant" " and the words " "I now give you a one third interest in the claim as your fee" " or " "You are entitled to one third of any amount that may be collected as your fee" " (4 Corbin, Contracts " 879, at 530 [emphasis supplied] ). In the latter cases, Professor Corbin concludes, "the transaction seems to be an assignment and not a mere promise" (id., at 530). | No particular words are necessary to effect assignment; it is only required that there be perfected transaction between assignor and assignee, intended by those parties to vest in assignee present right in things assigned. | Are particular words necessary to effect an assignment? | 010077.docx | LEGALEASE-00157081-LEGALEASE-00157082 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9751 | Adams v. First Nat. Bank of Bells/Savoy, 154 S.W.3d 859 | 322H+106(2) | Two elements must be established to prove delivery of a deed: (1) the deed must be delivered into the control of the grantee, and (2) the grantor must intend the deed to become operative as a conveyance. Binford v. Snyder, 144 Tex. 134, 143"44, 189 S.W.2d 471, 475 (1945); Hicks, 714 S.W.2d at 32; see also Bellaire Kirkpatrick Joint Venture v. Loots, 826 S.W.2d 205, 213 (Tex.App.-Fort Worth 1992, writ denied); Raymond v. Aquarius Condominium Owners Ass'n, Inc., 662 S.W.2d 82, 91 (Tex.App.-Corpus Christi 1983, no writ); Bennett v. Mings, 535 S.W.2d 408, 409 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.). | Two elements must be established to prove delivery of a deed to real property: (1) the deed must be delivered into the control of the grantee, and (2) the grantor must intend the deed to become operative as a conveyance. | What are the elements to be established to prove delivery of a deed of conveyance? | 018412.docx | LEGALEASE-00157001-LEGALEASE-00157002 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 9752 | Preston v. Kaiser Found. Hosps., 126 Cal. App. 3d 402 | 307A+581 | The policy of our law is to require a plaintiff to expedite the resolution of his or her claim and courts should not enforce claims unless the parties claiming them act in a timely fashion. (Martin v. Cook, 68 Cal.App.3d 799, 137 Cal.Rptr. 434; Lockhart-Mummery v. Kaiser Foundation Hospitals, 103 Cal.App.3d 891, 163 Cal.Rptr. 325.) Code of Civil Procedure section 583 is a codification of that policy and simply declares that two years is generally a reasonable time to bring a case to trial and that a delay of five years raises a strong presumption that a plaintiff has failed to exercise reasonable diligence. | Policy of law is to require a plaintiff to expedite resolution of his or her claim and court should not enforce claims unless plaintiff acts in timely fashion. West's Ann.C.C.P. S 583. | Should court enforce claims unless plaintiff acts in timely fashion? | 024788.docx | LEGALEASE-00157688-LEGALEASE-00157689 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 9753 | Houston Chronicle Pub. Co. v. Flowers, 413 S.W.2d 435 | 307A+581 | Trial courts are authorized to dismiss any cause, whether involving a plea of privilege or not, because of lack of prosecution. We feel that the trial court must be allowed wide latitude in making determination of such questions. We find no abuse of discretion in this case on the part of the trial court in denying such motion. | Trial courts are authorized to dismiss any cause, whether involving plea of privilege or not, because of lack of prosecution. | "Are courts authorized to dismiss any cause, whether involving plea of privilege or not, because of lack of prosecution?" | Pretrial Procedure - Memo # 10400 - C - PB_63350.docx | ROSS-003293604 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 9754 | Hendrix v. Fulton Dekalb Hosp. Auth., 330 Ga. App. 833 | 307A+517.1 | [A dismissal for failure to state a claim is a dismissal on the merits, with prejudice, and renders the suit void and incapable of being renewed pursuant to OCGA " 9"2"61 after expiration of the applicable statute of limitation. Roberson v. Northrup, 302 Ga.App. 405, 691 S.E.2d 547 (2010); Hobbs v. Arthur, 264 Ga. 359, 360, 444 S.E.2d 322 (1994). | A dismissal for failure to state a claim is a dismissal on the merits, with prejudice, and renders the suit void and incapable of being renewed after expiration of the applicable statute of limitation. West's Ga.Code Ann. S 9-2-61. | Is a dismissal for failure to state a claim a dismissal on the merits and is with prejudice? | 025050.docx | LEGALEASE-00156711-LEGALEASE-00156712 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 9755 | Labrie v. Kenney, 95 S.W.3d 722 | 30+4098(1) | A dismissal for want of prosecution is not a decision on the merits and does not prevent a party from refiling the suit. Rizk v. Mayad, 603 S.W.2d 773, 775 (Tex.1980). Thus, a dismissal for want of prosecution with prejudice is improper. Willis v. Barron, 604 S.W.2d 447 (Tex.Civ.App.-Tyler 1980, writ ref'd n.r.e.). However, that error is subject to waiver if the trial court is not given an opportunity to correct it or if the question is not properly raised on appeal. Andrews v. ABJ Adjusters, Inc., 800 S.W.2d 567, 568 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Although the record suggests that the Labrie parties challenged the dismissal by filing a motion to reinstate, no appeal was taken from the dismissal. If no appeal is taken from a dismissal with prejudice, it functions as a final determination. See Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991) (holding dismissal with prejudice can be a final determination on the merits). Thus, the dismissal with prejudice would sustain a plea of res judicata on the cause dismissed. | A dismissal for want of prosecution with prejudice is improper; however, that error is subject to waiver if the trial court is not given an opportunity to correct it, or if the question is not properly raised on appeal. | Is an error subject to waiver if the trial court is not given an opportunity to correct it? | Pretrial Procedure - Memo # 10552 - C - KG_62449.docx | ROSS-003293193-ROSS-003293194 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9756 | Massey v. Columbus State Bank, 35 S.W.3d 697 | 307A+690 | Columbus State Bank filed a suit against Mr. Massey and his daughter in 1993 that was dismissed for want of prosecution. Mr. Massey and his daughter assert that the dismissal of the Bank's prior suit for want of prosecution bars the Bank's causes of action here. A dismissal for want of prosecution is not "with prejudice." Carter v. Charles, 853 S.W.2d 667, 672 (Tex.App."Houston [14th Dist.] 1993, no writ). It is not an adjudication of the rights of the parties, but simply places the parties in the position they were in prior to filing the action. Id. Therefore, the dismissal of the prior suit does not bar any of the Bank's present claims. | Dismissal for want of prosecution is not a dismissal with prejudice, since it is not an adjudication of the rights of the parties, but simply places the parties in the position they were in prior to filing the action. | "Is a dismissal for want of prosecution not a dismissal with prejudice, since it is not an adjudication of the rights of the parties?" | 025108.docx | LEGALEASE-00156889-LEGALEASE-00156890 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9757 | Williams v. Bell, 37 S.W.3d 477 | 102+132(1) | We affirm the lower court's dismissal of the plaintiff's complaint, but we hold that the dismissal is without prejudice. The effect of an order of dismissal for failure to comply with Tenn.Code. Ann. " 41"21"801, et seq. should be the same as resulted from an older form of defensive pleading known as the Plea in Abatement. Such a plea sought to suspend or defeat civil actions because of the manner in which the action was brought. Unlike the Plea in Bar, the Plea in Abatement did not address the merits of the claim itself, but rather some defect or irregularity in the complaint, such as improper venue, lack of jurisdiction, or failure to join an indispensable party, which would make continuation of the suit ineffective. When the Plea in Abatement was granted, the complaint was dismissed without prejudice to the plaintiff's right to receive a hearing on the merits, by filing another complaint with the defect corrected. See generally, Abatement, Survival and Revival, 1 Tennessee Jurisprudence (1982). | Dismissal of an in forma pauperis inmate's complaint for failure to comply with statute requiring documentation of inmate's prior history of litigation should be without prejudice. T.C.A. S 41-21-801. | Should a dismissal of an in forma pauperis inmate's complaint for failure to comply with statute requiring documentation of inmate's prior history of litigation be without prejudice? | 025128.docx | LEGALEASE-00156971-LEGALEASE-00156972 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9758 | Hardin v. Bishop, 2013 Ark. 395 | 308+1 | A party asserting the existence of an agency relationship has the burden of proving that an agency relationship exists. Taylor v. Gill, 326 Ark. 1040, 934 S.W.2d 919 (1996). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. Pledger v. Troll Book Clubs, Inc., 316 Ark. 195, 871 S.W.2d 389 (1994). Ordinarily, agency is a question of fact to be determined by the jury; but where the facts are undisputed, and only one inference can be reasonably drawn from them, it becomes a question of law. Campbell v. Bastian, 236 Ark. 205, 365 S.W.2d 249 (1963). Agency can be proved by circumstantial evidence, if the facts and circumstances introduced into evidence are sufficient to induce in the mind of the finder of fact the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. Mere relationship or family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency, but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency. Schuster's, Inc. v. Whitehead, 291 Ark. 180, 722 S.W.2d 862 (1987); Braley v. Arkhola Sand & Gravel Co., 203 Ark. 894, 159 S.W.2d 449 (1942). | The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. | Is the authority of an agent to act on behalf of the principal an essential element of an agency relationship? | 041758.docx | LEGALEASE-00157812-LEGALEASE-00157813 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9759 | Associated Producers, LTD v. Vanderbilt Univ., 76 F. Supp. 3d 154 | 308+1 | Defendant Vanderbilt also moves the Court to dismiss Plaintiffs' claims against the University for lack of personal jurisdiction. As with Defendant Jensen, Plaintiffs invoke D.C.Code " 13"423(a) to establish personal jurisdiction over Vanderbilt. Personal jurisdiction may exist if a person transacts business in the District of Columbia through an agent. See D.C.Code " 13"423(a). "Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other person consents to do so." Smith v. Jenkins, 452 A.2d 333, 335 (D.C.1982). "Without control over the forum state actor, it cannot be said that the nonresident defendant is purposefully avail[ing] itself of the privilege of conducting activities within the forum State." | Under District of Columbia law, generally, an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other person consents to do so. | Does an agency relationship result when one authorizes another to act on his behalf? | Principal and Agent - Memo 420 - RK_63540.docx | ROSS-003294071-ROSS-003294072 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9760 | Appeal of Scholastic Book Clubs, 260 Kan. 528 | 308+14(2) | The Director pointed out that while an express contract may create an agency relationship, conduct implying an agency relationship serves just as well. Express agency exists when the principal expressly authorizes the agent to do delegable acts, and implied agency may exist if it appears from the parties' words, conduct, or other circumstances that the principal intended to give the agent authority to act. Turner and Boisseau v. Marshall Adjusting, 775 F.Supp. 372, 378 (D.Kan.1991). | Express agency exists when principal expressly authorizes agent to do delegable acts, and implied agency may exist if it appears from parties' words, conduct, or other circumstances that principal intended to give agent authority to act. | When does express agency exist? | Principal and Agent - Memo 446 - RK_63566.docx | ROSS-003281481-ROSS-003281482 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 9761 | Noble Sec. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513 | 308+1 | "In determining whether an agency relationship exists, the critical test is the nature and extent of control exercised by the purported principal over the agent." Butterworth v. Integrated Resources Equity Corp., 680 F.Supp. 784, 789 (E.D.Va.1988). Even if no actual agency exists, one party may be held to be an agent of a second party on the basis that the first party has been held out by the second party in such a way that reasonably induces reliance on the appearance. Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 166 (4th Cir.1988). | Under Virginia law, when determining whether an agency relationship exists, the critical test is the nature and extent of control exercised by the purported principal over the agent. | What is the critical test in determining whether an agency relationship exists? | Principal and Agent - Memo 460- PR_63474.docx | ROSS-003310198-ROSS-003310199 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9762 | Cross v. Cutter Biological, Div. of Miles Inc., 676 So. 2d 131 | 308+14(1) | An agent is one who acts for or in place of another by authority from the latter. Oliver v. Central Bank, 26,932 (La.App. 2 Cir. 5/10/95), 658 So.2d 1316, 1321, writ den. 95-1469 (La. 9/22/95), 660 So.2d 477. An agency relationship is created by express appointment under La.C.C. art. 2985 or by implied appointment arising from apparent authority in order to protect innocent third parties. Id; Anderson Window & Patio Co. v. Dumas, 560 So.2d 971, 975 (La.App. 4th Cir.1990). | Agency relationship is created either by express appointment pursuant to statute or by implied appointment arising from apparent authority in order to protect innocent third parties. LSA-C.C. art. 2985. | Can an agency relationship be created by implied appointment? | Principal and Agent - Memo 493 - KK_63272.docx | ROSS-003308555-ROSS-003308556 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 9763 | Commercial Money Ctr. v. Illinois Union Ins. Co., 508 F.3d 327 | 308+48 | "Indicia of an agency relationship are the agent's power to alter legal relations between the principal and others, a fiduciary relationship, and the principal's right to control the agent's conduct." Valley Inv., LP v. BancAmerica Commercial Corp., 88 Cal.App.4th 816, 106 Cal.Rptr.2d 689, 698 (2001). The district court found that Illinois Union failed to allege the necessary elements of either actual or ostensible authority, and Illinois Union has shown no error in this regard. While Illinois Union alleged that the Endorsement was required by Chase/Citibank as part of the transaction, there is no claim that CMC or Lease Funding was given authority to act for Chase/Citibank, or that Chase/Citibank acted in a manner that could lead Illinois Union to reasonably believe that CMC or Lease Funding was acting as an agent for Chase/Citibank. | Under California law, indicia of an agency relationship are the agent's power to alter legal relations between the principal and others, a fiduciary relationship, and the principal's right to control the agent's conduct. | Does an agent have the power to alter legal relations between the principal and others? | Principal and Agent - Memo 572- SB_63588.docx | ROSS-003295346-ROSS-003295347 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9764 | Cook v. GGNSC Ripley, 786 F. Supp. 2d 1166 | 308+10(1) | Plaintiff contends that Adkins is not bound by the arbitration agreement. Plaintiff's evidence supporting Cook's lack of binding authority is that no power of attorney exists. "The power of attorney must be a writing that (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs...." Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton, 17 So.3d 172, 177 (" 15) (Miss.Ct.App.2009) (quoting Miss.Code Ann. " 87"3"7). There is no writing purporting to give Cook this all-inclusive power. | Under Mississippi law, a power of attorney must be a writing that (1) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (2) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs. West's A.M.C. S 87-3-7. | What is a power of attorney? | Principal and Agent-Memo 5-AM_62766.docx | ROSS-003310054-ROSS-003310055 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 9765 | Rivercity v. Am. Can Co., 600 F. Supp. 908 | 308+25(3) | Plaintiff is likewise unable to show an apparent agency, or, as it is sometimes called, agency by estoppel. "Agency by estoppel", it must be noted, is not based on actual agency but instead is generally found under circumstances where third parties have been led to believe that an agency relationship was in existence and have relied on that belief to their detriment. Those parties then who have held out that there was an agency relationship in existence are estopped from denying same. Busby, supra. | "Agency by estoppel" is not based on actual agency, but is generally found under circumstances where third parties have been led to believe that agency relationship was in existence and relied on that belief to their detriment, with result that parties who held out that agency relationship existed are estopped from denying it. | What is an agency by estoppel? | Principal and Agent-Memo 16-AM_63479.docx | ROSS-003281626-ROSS-003281627 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 9766 | State v. Commercial Loan Co., 251 Ala. 672 | 371+2002 | The foregoing Alabama authorities demonstrate that the word tax, unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes.In other words license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax. | The word "tax", unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes, and thus license fees are commonly called taxes, though strictly speaking they may be a charge or fee rather than a tax. | "Are license fees commonly called taxes, even though they may be a charge or fee rather than a tax?" | 044545.docx | LEGALEASE-00157516-LEGALEASE-00157517 | Condensed, SA | 0.18 | 0 | 1 | 0 | 1 | |
| 9767 | Evanson v. Univ. of Hawaii, 52 Haw. 595 | 413+102 | Workmen's compensation laws were enacted as a humanitarian measure, to create legal liability without relation to fault. Silva v. Kaiwiki Mill. Co., 24 Haw. 324, 330 (1918). They represent a socially enforced bargain: the employee giving up his right to recover common law damages from the employer in exchange for the certainty of a statutory award for all work-connected injuries. Since liability is made dependent on a nexus to the job, the essential prerequisite for coverage under workmen's compensation acts is the existence of an employer-employee relationship. In determining whether the decedent had entered into such an arrangement with the defendant our starting point must be the definitional requirements set forth in HRS s 386-1 of the Hawaii Workmen's Compensation Law. These definitions provide in relevant part: "Employee's means any individual in the employment of another person except where such employment is solely for personal, family, or household purposes. "Employer" means any person having one or more persons in his employment. "Employment" means any service performed by an individual for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into. | Under HRS S 386-1 " "Employment' means any service performed by an individual for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into." | What does employment under Workmen's Compensation Law mean? | 047697.docx | LEGALEASE-00157586-LEGALEASE-00157587 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9768 | Torao Takahashi v. Fish & Game Comm'n, 334 U.S. 410 | 92+3250 | The protection of this section has been held to extend to aliens as well as to citizens. Consequently the section and the Fourteenth Amendment on which it rests in part protect "all persons' against state legislation bearing unequally upon them either because of alienage or color. See Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847. The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide "in any state" on an equality of legal privileges with all citizens under non-discriminatory laws. | Statute providing that all persons within jurisdiction of United States shall have same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws, and the Fourteenth Amendment, protect all persons against state legislation bearing unequally on them either because of alienage or color. 8 U.S.C.A. S 41; U.S.C.A.Const. Amend. 4. | Does the Fourteenth Amendment protect all persons' against state legislation bearing unequally upon them because of alienage or color? | "Aliens, Immigration, and Citizenship - Memo 47 - RK_63916.docx" | ROSS-003292470 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 9769 | Eby v. Reb Realty, 495 F.2d 646 | 172H+1322 | The Truth in Lending Act is a remedial statute designed as much as possible to permit borrowers to make informed judgments about the use of credit. Toeffectuate this congressional purpose requires that the Act's terms be liberally construed. SeeN.C.Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir.), cert. denied 414 U.S. 827, 94 S.Ct. 38 L.Ed.2d 61 (1973); Gardner & North Roofing & Siding Corp. v. Board of Governors, 150 U.S. App.D.C. 329, 464 F.2d 838, 841 (1972). Here, realty sales were a significant aspect of appellant's business. And in nearly half its sales, it extended credit to its customers. They were credit transactions involving a large amount of money and not, after all, like granting credit for a bag of groceries. In view of this, we cannot say Reb Realty's extensions of credit were the type of isolated and incidental transactions the definition of creditor was meant to exempt. | Truth in Lending Act is remedial statute designed as much as possible to permit borrowers to make informed judgments about use of credit, and as such should be liberally construed. Truth in Lending Act, SS 1-145, 15 U.S.C.A. SS 1601-1665. | Does TILA permit borrowers be make informed judgements about the use of credit? | Consumer Credit - Memo 221-IS_64029.docx | ROSS-003319053-ROSS-003319054 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 9770 | Sabbath v. Martin, 2009 WL 3449096 | 343+2254 | A seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520; Berney v. Rountree Olds"Cadillac Co., 33,388 (La.App.2d Cir.6/21/00), 763 So.2d 799. | A defect is redhibitory warranting rescission of sale when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. LSA-C.C. art. 2520. | What are redhibitory defects in a sale and does existence of such defects give the buyer the right to rescission? | 018309.docx | LEGALEASE-00158814-LEGALEASE-00158815 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9771 | Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv., 2016 IL App (1st) 151659 | 217+1712 | The cases described above represent the common understanding of what constitutes "insurance" versus "self-insurance." The term "insurance," or an "insurance contract," generally refers to a policy issued by an authorized and licensed insurance company whose primary business is to assume certain risks of loss of its insureds, in exchange for the payment of a "premium." "Self-insurance," by contrast, is defined as " "the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." " See Fellhauer v. Alhorn, 361 Ill.App.3d 792, 796, 297 Ill.Dec. 646, 838 N.E.2d 133 (2005) (quoting American Nurses Ass'n v. Passaic General Hospital, 192 N.J.Super. 486, 471 A.2d 66, 69 (N.J.Super.Ct.App.Div.1984)). Unlike an insurance policy holder, a self-insuring municipality " "bears all risks itself, and settlements or awards are paid directly from government coffers." " State Farm Mutual Automobile Insurance Co., 2011 IL App (2d) 100580, " 37, 352 Ill.Dec. 891, 955 N.E.2d 67 (quoting Antiporek, 114 Ill.2d at 250, 102 Ill.Dec. 294, 499 N.E.2d 1307). | The terms "insurance" or "insurance contract" generally refer to a policy issued by an authorized and licensed insurance company whose primary business is to assume certain risks of loss of its insureds, in exchange for the payment of a premium. | How is self-insurance different from insurance? | Insurance - Memo 46 - SNJ_63859.docx | ROSS-003294022-ROSS-003294023 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9772 | United States v. Murphy, 84 F. 609 | 221+212 | Providing the means of transportation for a military enterprise to be carried on from the United States against Spanish rule in Cuba is, within the meaning of section 5286 of the Revised Statutes of the United States, under which the defendant has been indicted, preparing the means for such military enterprise to be so carried on, and, if done with knowledge, on the part of the person so providing the means of transportation, of the character and purpose of such enterprise, is denounced by the statute. If you shall be satisfied by the evidence in the case that the men taken on board of the Laurada on the high seas off Barnegat constituted a military enterprise, as hereinafter defined, from the United States against the Spanish authorities in Cuba, and, further, that the defendant, with knowledge of the character and purpose of such enterprise, and with intent to furnish transportation for it, took the Laurada with her crew from Wilmington to the place of transshipment on the high seas off Barnegat, you should render a verdict of guilty. | Providing the means of transportation for a known military enterprise to be carried on from the United States against Spanish rule in Cuba is an offense, under Rev.St. S 5286, 18 U.S.C.A. S 25. | Is providing the means of transportation for a known military enterprise an offense under Rev.St. 5286? | 021740.docx | LEGALEASE-00159144-LEGALEASE-00159145 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9773 | In re Adelphia Communications Corp., 376 B.R. 87 | 289+1309 | Thus, unlike general partnerships, a limited partner in a limited liability partnership is presumed to be a "passive investor" and accordingly enjoys limited liability similar to that of a shareholder in a corporation. To the extent that a limited partner exceeds the role of passive investor and exercises control over the business, protection as a limited partner may be forfeited because the rationale for insulation from liability no longer applies. See, e.g., Holzman v. De Escamilla, 195 P.2d 833, 834 (Cal.Ct.App.1948) (limited partners liable as general partners where, among other things, they had "absolute power to withdraw all the partnership funds in the banks without the knowledge or consent of the general partner" and "could take control of the business from [the general partner] by refusing to sign checks for bills contracted by him and thus limit his activities in the management of the business"). | Unlike general partnerships, under Delaware law, a limited partner in a limited liability partnership is presumed to be a "passive investor" and accordingly enjoys limited liability similar to that of a shareholder in a corporation. | Are limited partners in a limited liability partnership presumed to be a passive investor? | 022613.docx | LEGALEASE-00158618-LEGALEASE-00158619 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9774 | Big A Warehouse Distributors v. Rye Auto Supply, 19 Ark. App. 286 | 302+17 | Big A argues that it was entitled to maintain a third-party action because Joplin and Gipson were liable to it for all or part of Rye's claim against it, citing Ark.R.Civ.P. 14. However, Rule 14 also provides that the third-party defendants may raise defenses against the third-party plaintiff as provided in Ark.R.Civ.P. 12. Joplin and Gipson did just that. They moved for a judgment on the pleadings under Rule 12(c), claiming that, under Rule 12(b)(6), the third-party complaint failed to state facts upon which relief could be granted. It is a settled rule of law that a pleading will be judged by its contents. Martin v. Citizens Bank of Beebe, 283 Ark. 145, 671 S.W.2d 754 (1984). In considering a motion for judgment on the pleadings for failure to state facts upon which relief can be granted, under 12(b)(6), the facts alleged in the complaint are treated as true and are viewed in the light most favorable to the party seeking relief. McAllister v. Forrest City Street Improvement District, 274 Ark. 372, 626 S.W.2d 194 (1981). A complaint or third party claim must contain a "statement ... of facts showing that the pleader is entitled to relief...." Ark.R.Civ.P. 8(a). Failure to do so is grounds for dismissal under Rule 12(b)(6); Harvey v. Eastman Kodak Co., 271 Ark. 783, 610 S.W.2d 582 (1981); Thompson-Holloway Agency v. Gribben, 3 Ark.App. 119, 623 S.W.2d 528 (1981). The facts constituting the cause of action must be pled in direct and positive allegations, not by way of argument, inference, or belief. Kohlenberger v. Tyson's Foods, Inc., 256 Ark. 584, 510 S.W.2d 555 (1974). Furthermore, statements of generalities and conclusions of law are not sufficient to state a cause of action. Files v. Hill, 268 Ark. 106, 594 S.W.2d 836 (1980); Gribben, 3 Ark.App. at 123, 623 S.W.2d 528. | Facts constituting cause of action must be pled in direct and positive allegations, not by way of argument, inference, or beliefs; statements of generalities and conclusions of law are not sufficient to state cause of action. Rules Civ.Proc., Rule 12(b)(6). | Should facts constituting the cause of action be pled in direct and positive allegations? | 023811.docx | LEGALEASE-00158190-LEGALEASE-00158191 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9775 | Sutton v. Duke, 277 N.C. 94 | 307A+561.1 | If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed. Moore s 12.08 summarizes the federal decisions as follows: "A (complaint) may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.' But a complaint should not be dismissed for insufficiency Unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.' | If complaint discloses unconditional affirmative defense, which defeats claim, or pleads facts, which deny right to any relief on claim, complaint will be dismissed. | Will a complaint be dismissed if it discloses an unconditional affirmative defense which defeats the claim asserted? | Pretrial Procedure - Memo # 10770 - C - NC_63412.docx | ROSS-003293389-ROSS-003293390 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9776 | Signature Dev. v. Sandler Commercial at Union, 207 N.C. App. 576 | 307A+561.1 | Moreover, "[w]hen the complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, ... the motion will be granted and the action dismissed."Skinner v. E.F. Hutton & Co., 314 N.C. 267, 270, 333 S.E.2d 236, 238 (1985). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Leonard v. Pugh, 86 N.C.App. 207, 209, 356 S.E.2d 812, 814 (1987). On appeal of a trial court's ruling on a 12(b)(6) motion to dismiss, our Court "conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Page v. Lexington Ins. Co., 177 N.C.App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation and quotation marks omitted). | On a motion to dismiss for failure to state a claim upon which relief may be granted, when a complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, the motion will be granted and the action dismissed. Rules Civ.Proc., Rule 12(b)(6), West's N.C.G.S.A. S 1A-1. | When will a motion to dismiss be granted and action dismissed? | 025439.docx | LEGALEASE-00158176-LEGALEASE-00158177 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 9777 | Sharp v. Two Point Assocs., Ltd., 78 Mich. App. 180 | 307A+561.1 | Neither do we find that the trial court acted improperly by employing accelerated judgment in this case rather than summary judgment. Accelerated judgment is the proper method for disposing of a case where the defendant has raised a defense which will defeat the complaint, even though the complaint has stated a claim. Drouillard v. Roseville, 9 Mich.App. 239, 243-244, 156 N.W.2d 628 (1967). | Accelerated judgment is the proper method for disposing of a case where the defendant has raised a defense which will defeat the complaint, even though the complaint has stated a claim. GCR 1963, 116.1(3, 5). | When is an accelerated judgment the proper method for disposing of a case? | Pretrial Procedure - Memo # 10792 - C - NS_63659.docx | ROSS-003294236 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 9778 | Enriquez v. Livingston, 400 S.W.3d 610 | 307A+697 | We decline to follow these cases. We believe the better-reasoned decisions place the burden on the judge to set an oral hearing on a motion to reinstate.See George v. State, No. 06"11"00071"CV, 2012 WL 112656, at (Tex.App.-Texarkana Jan. 13, 2012, no pet.) (mem. op.) (trial court has no discretion about whether to set motion to reinstate for oral hearing; whether movant requests hearing is irrelevant); Dominguez v. Smith, No. 09"09"00455"CV, 2010 WL 2541914, at (Tex.App.-Beaumont June 24, 2010, no pet.) (mem. op.) (as amended, Rule 165a(3) places burden on clerk to deliver motion to judge and on judge to set oral hearing); Matheson v. American Carbonics, 867 S.W.2d 146, 147"48 (Tex.App.-Texarkana 1993, no writ) (holding that, based on amendment to rule 165a(3), Cabrera v. Cedarapids Inc. | Burden is on the judge to set an oral hearing on a motion to reinstate plaintiff's case which was dismissed for want of prosecution; upon receiving a copy of a motion to reinstate from the court clerk, a trial judge knows, by virtue of the express language of Civil Procedure Rule governing dismissal and reinstatement of cases, that he is required-without discretion-to set the motion for an oral hearing and notify the parties of the date, time, and place of the hearing, and thus, it is unnecessary and illogical to place the burden on the movant to obtain a setting for an oral hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | Is the burden on the judge to set an oral hearing on a motion to reinstate a plaintiff's case which was dismissed for want of prosecution? | 025488.docx | LEGALEASE-00158627-LEGALEASE-00158628 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 9779 | Allen v. Rushing, 129 S.W.3d 226 | 307A+699 | Evidence of attempting to serve the named defendants is one of many factors an appellate court may consider in reviewing a trial court's order dismissing a case for want of prosecution. See Buster, 115 S.W.3d at 143"45 (pro se inmate's repeated efforts at having citation issued and served one of many factors demonstrating plaintiff used diligence in prosecuting case). If a trial court dismisses a case for want of prosecution, the plaintiff may also file a motion to reinstate the case. Such a motion may provide evidence the plaintiff acted diligently in pursuing the case. Tex.R. Civ. P. 165a(3). | If a trial court dismisses a case for want of prosecution, the plaintiff may file a motion to reinstate the case. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subd 3. | "If a trial court dismisses a case for want of prosecution, can the plaintiff file a motion to reinstate the case?" | Pretrial Procedure - Memo # 10828 - C - PC_64091.docx | ROSS-003294237 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9780 | Laird v. Jobes, 580 S.W.2d 413 | 307A+697 | It is often stated that a dismissal for want of prosecution is analogous to a voluntary nonsuit dismissal. It is well established that a plaintiff is entitled to a voluntary dismissal in a case where the defendant has not filed a counterclaim seeking affirmative relief, and such dismissal would not prejudice the defendant's right to be heard on his claim for affirmative relief. It has been held that it is an absolute right of a party, subject only to the Rules of Civil Procedure, to take a nonsuit in a judicial proceeding where no affirmative relief is sought by the defendant. Terry v. Howard, 546 S.W.2d 66 (Tex.Civ.App. Dallas 1976, no writ); Roberts v. Morgan, 502 S.W.2d 31 (Tex.Civ.App. Fort Worth 1973, writ ref'd n.r.e.); Ex parte Helle, 477 S.W.2d 379 (Tex.Civ.App. Corpus Christi 1972, no writ); State v. Roberson, 409 S.W.2d 872 (Tex.Civ.App. Tyler 1966, no writ); Moody & Tips Lumber Co. v. South Dallas Bank & Trust Co., 246 S.W.2d 263 (Tex.Civ.App. Dallas 1952, writ dism'd); Graham v. Seale, 221 S.W.2d 353 (Tex.Civ.App. San Antonio 1949, no writ); Tex.R.Civ.P. 164. In our opinion the law is correctly set forth in George v. George, 564 S.W.2d 172 (Tex.Civ.App. Tyler 1978, no writ), where the court held that Rule 165a does not authorize a party seeking no affirmative relief to have a case reinstated after it has been dismissed for want of prosecution. | Rule of civil procedure governing reinstatement after dismissal for want of prosecution does not authorize party seeking no affirmative relief to have case reinstated after it has been dismissed for want of prosecution. Rules of Civil Procedure, rule 165a. | Can any party seeking affirmative relief cause a dismissed case to be reinstated under rule 165a? | 025582.docx | LEGALEASE-00158306-LEGALEASE-00158307 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 9781 | Gamboa v. Alvarado, 407 Ill. App. 3d 70 | 307A+685 | The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit. Borowiec, 209 Ill.2d at 383, 283 Ill.Dec. 669, 808 N.E.2d 957. | The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit in order for a motion to dismiss to be granted. S.H.A. 735 ILCS 5/2-619(a)(9). | "Should the defect, defense or affirmative matter be apparent on the face of the pleading for a motion to dismiss to be granted?" | 025895.docx | LEGALEASE-00158110-LEGALEASE-00158111 | Condensed, SA | 0.07 | 0 | 1 | 0 | 1 | |
| 9782 | Finch v. Ekstrom, 115 Cal. App. 381 | 307A+693.1 | This appeal must be dismissed. It is provided in section 581, Code of Civil Procedure, that the entry in the minutes of an order granting a nonsuit is the final act in entering a final judgment, and there is no place thereafter for another judgment.Henry v. Lingsweiler (1927) 81 Cal. App. 142, 253 P. 357; Bengel v. Traeger (1929) 100 Cal. App. 526, 280 P. 538; Lewis v. Hammond Lumber Co. (Cal. App. 1931) 300 P. 49. As a reversal of the judgment appealed from, if that should be required, would be of no avail because the judgment of nonsuit (August 31) would still be left undisturbed, this appeal presents only moot questions and should be dismissed. Burks v. Bronson (1922) 58 Cal. App. 143, 207 P. 1018. | Entry in minutes of order granting nonsuit is final act in entering final judgment, and thereafter another judgment is improper. West's Ann.Code Civ.Proc. S 581. | Is entry in minutes of an order granting nonsuit a final act in entering final judgment? | 026012.docx | LEGALEASE-00158402-LEGALEASE-00158403 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 9783 | Jewett v. Town of Alton, 7 N.H. 253 | 308+92(3) | But when individuals or corporations give an authority jointly to three or more persons, in order to bind the principal all the agents must act. Co. Litt. 112, b--113 a; and 181, b; and 113, a, note, 146; 3 Pick. 244--245; 6 do., 202--203; Comyn's Digest, "Attorney", c. 9, 10, 11. | Where an authority is given by law to three or more persons, it may, in general, be executed by a major part of the persons to whom it is so delegated; but where corporations or individuals give an authority jointly to three or more persons, in order to bind the principals, all the agents must act. | Do all agents have to act to bind the principal when authority is given jointly to two or more persons? | Principal and Agent - Memo 372 - RK_63930.docx | ROSS-003294455-ROSS-003294456 | Condensed, Order, SA, Sub | 0.06 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9784 | Hardin v. Bishop, 2013 Ark. 395 | 308+1 | A party asserting the existence of an agency relationship has the burden of proving that an agency relationship exists. Taylor v. Gill, 326 Ark. 1040, 934 S.W.2d 919 (1996). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. Pledger v. Troll Book Clubs, Inc., 316 Ark. 195, 871 S.W.2d 389 (1994). Ordinarily, agency is a question of fact to be determined by the jury; but where the facts are undisputed, and only one inference can be reasonably drawn from them, it becomes a question of law. Campbell v. Bastian, 236 Ark. 205, 365 S.W.2d 249 (1963). Agency can be proved by circumstantial evidence, if the facts and circumstances introduced into evidence are sufficient to induce in the mind of the finder of fact the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. Mere relationship or family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency, but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency. Schuster's, Inc. v. Whitehead, 291 Ark. 180, 722 S.W.2d 862 (1987); Braley v. Arkhola Sand & Gravel Co., 203 Ark. 894, 159 S.W.2d 449 (1942). | The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. | Is the authority of an agent to act on behalf of a principal an essential element of agency relationship? | Principal and Agent - Memo 447 - RK_63833.docx | ROSS-003280288-ROSS-003280289 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9785 | Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen, 525 S.W.3d 671 | 308+1 | Many kinds of business relationships can be formed without a contract and nonetheless give rise to a legal right to interfere with another's contract. One such relationship is that between an agent and principal. See, e.g., Holloway, 898 S.W.2d at 795. An agency relationship, which can be formed by oral agreement between the parties or simply by the parties' conduct, entitles the agent to act on the principal's behalf with the same force and effect as if the principal had performed the act himself. See Orozco v. Sander, 824 S.W.2d 555, 556 (Tex. 1992); see also Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007) ("An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." (citing Hester Int'l Corp. v. Fed. Republic of Nig., 879 F.2d 170, 181 (5th Cir. 1989))). Further, as we have explained, assuming an agent acts within the scope of the authority the principal has bestowed upon him, a third party generally cannot hold the agent liable for tortiously interfering with a contract between the third party and the agent's principal. Holloway, 898 S.W.2d at 795"96 | An agency relationship, which can be formed by oral agreement between the parties or simply by the parties' conduct, entitles the agent to act on the principal's behalf with the same force and effect as if the principal had performed the act himself. | Can an agency relationship be formed by oral agreement? | 042006.docx | LEGALEASE-00159091-LEGALEASE-00159092 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9786 | In re Venture Fin. Grp., 558 B.R. 386 | 308+1 | The language of the 1993 TAA creates a debtor/creditor relationship, rather than a principal/agent relationship or a trust. Under the 1993 TAA, the Bank does not exercise any control over VFG's activities. Rather, Section 5 of the 1993 TAA gives VFG sole discretion to determine whether elections should be made to carry back net operation losses. "An agency relationship generally arises when two parties consent that one shall act under the control of the other." Rho Co., Inc. v. Department of Revenue, 113 Wash.2d 561, 570, 782 P.2d 986 (1989); In re Butler, 512 B.R. 643, 654 (Bankr.W.D.Wash.2014), aff'd, 550 B.R. 860 (W.D.Wash.2015) (citing Restatement (Third) of Agency " 1.01 (2006) ("[a]gency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act")). Here, the 1993 TAA did not give the subsidiary members of the Consolidated Group any control over the parent's filing of the Consolidated Group tax returns or over how tax refunds would be handled. | Under Washington law, an agency relationship generally arises when two parties consent that one shall act under the control of the other. | Does an agency relationship arise when two parties consent that one shall act under the control of the other? | Principal and Agent - Memo 548 - RK_64006.docx | ROSS-003292542-ROSS-003292543 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 9787 | Sperry Assocs. Fed. Credit Union v. Space Coast Credit Union, 877 F. Supp. 2d 1227 | 308+1 | To determine whether Defendant engaged in gross negligence or willful misconduct, the Court first addresses the parties' disagreement over whether CUBC and its employees' actions and/or Klein can be imputed to Eastern Financial, such that they contribute towards the gross negligence or willful misconduct required to prove a breach. To establish an agency relationship, Plaintiff must show: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 n. 10 (Fla.2003); Restatement (Second) of Agency " 1 (1957). Under Florida law, a plaintiff seeking to pierce the corporate veil and hold a corporation responsible for actions of another entity must show that the corporation dominated the entity to such an extent that its separate existence was non-existent, that the corporate form was used fraudulently or for an improper purpose, and that this fraudulent use of the corporate structure caused the plaintiff's injury. Molinos Valle Del Cibao v. Lama, 633 F.3d 1330, 1349 (11th Cir.2011). With respect to CUBC, the Court is not persuaded that at the time Plaintiff entered into the SFP Participation Agreement, CUBC was Eastern Financial's agent, or that the two corporations were alter-egos, such that CUBC's conduct can be imputed to Eastern Financial. Doc. 76, p. 7. | Under Florida law, to establish an agency relationship, plaintiff must show: (1) acknowledgement by principal that agent will act for him; (2) agent's acceptance of the undertaking; and (3) control by principal over agent's actions. Restatement (Second) of Agency S 1. | Does control by the principal over the agent's actions establish the agency relationship? | 042019.docx | LEGALEASE-00159128-LEGALEASE-00159129 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 9788 | Stephens, for Use & Benefit of Stephens v. Catalano, 7 So. 2d 380 | 413+101 | There can be no doubt that the only occupations protected or made applicable by the compensation laws of this state are: (1) Those businesses specially designated in the act. (2) Those persons who, by agreement, have elected to come under the terms of the act; and, (3) Those businesses determined by the courts, prior to the occurrence of the accident, to be of a hazardous nature. | The only occupations protected by the compensation act are those businesses specially designated in the act, those persons who, by agreement, have elected to come under the act, and those businesses determined by the courts, prior to the occurrence of the accident, to be of a hazardous nature. Act No. 20 of 1914, S 1, subd. 2(a), LSA-R.S. 23:1021. | What occupations are protected by compensation laws? | 047680.docx | LEGALEASE-00158062-LEGALEASE-00158063 | Condensed, SA | 0.09 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9789 | Majlinger v. Cassino Contracting Corp., 25 A.D.3d 14 | 24+102 | The defendants in this case contend that the plaintiff, as an undocumented alien, is not entitled to recover lost wages because such a remedy is preempted by federal immigration policy, as expressed in the IRCA and the Hoffman decision. When Congress enacts a statute "touching the rights, privileges, obligations or burdens of aliens as such ... the statute is the supreme law of the land" (Hines v. Davidowitz, 312 U.S. 52, 63, 61 S.Ct. 399, 85 L.Ed. 581; see U.S. Const., art. I, " 8[4]; Nyquist v. Mauclet, 432 U.S. 1, 10, 97 S.Ct. 2120, 53 L.Ed.2d 63 ["Control over immigration and naturalization is entrusted exclusively to the Federal Government, and a State has no power to interfere"] ). Under the Supremacy Clause (U.S. Const., art. VI, " 2), Congress is empowered to preempt state law. "In the absence of explicit statutory language signaling an intent to pre-empt [a court may] infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation ... or where the state law at issue conflicts with federal law" (Northwest Cent. Pipeline Corp. v. State Corp. Commn. of Kansas, 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 [citations omitted] ). | When Congress enacts a statute touching the rights, privileges, obligations or burdens of aliens as such, the statute is the supreme law of the land. | Is a statute enacted by Congress touching the obligations of aliens the supreme law of the land? | "Aliens, Immigration and Citizenship - Memo 100 - RK_64742.docx" | ROSS-003295006-ROSS-003295007 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 9790 | Toll v. Moreno, 458 U.S. 1 | 24+101 | Our cases have long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders. See, e.g., Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); Graham v. Richardson, 403 U.S. 365, 377"380, 91 S.Ct. 1848, 1854"1856, 29 L.Ed.2d 534 (1971); Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 418"420, 68 S.Ct. 1138, 1142"1143, 92 L.Ed. 1478 (1948); Hines v. Davidowitz, 312 U.S. 52, 62"68 (1941); Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 11, 60 L.Ed. 131 (1915).Federal authority to regulate the status of aliens derives from various sources, including the Federal Government's power "[t]o establish [a] uniform Rule of Naturalization," U.S.Const., Art. I, " 8, cl. 4, its power "[t]o regulate Commerce with foreign Nations", id., cl. 3, and its broad authority over foreign affairs, see United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936); Mathews v. Diaz, supra, at 81, n. 17, 96 S.Ct., at 1892, n. 17; Harisiades v. Shaughnessy, 342 U.S. 580, 588"589, 72 S.Ct. 512, 518"519, 96 L.Ed. 586 (1952). | Federal authority to regulate status of aliens derives, inter alia, from federal government's constitutional powers to establish uniform rule of naturalization and to regulate commerce with foreign nations and from its broad authority over foreign affairs. U.S.C.A.Const.Art. 1, S 8, cls. 3, 4. | From what sources does federal authority to regulate immigration derive from? | 006813.docx | LEGALEASE-00160411-LEGALEASE-00160412 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 9791 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+330 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | A deportation proceeding is a purely civil action to determine eligibility to remain in country, not to punish unlawful entry, though entering or remaining unlawfully in country is itself a crime. Immigration and Nationality Act, SS 262, 266, 275, 8 U.S.C.A. SS 1302, 1306, 1325. | Do deportation proceedings determine eligibility to remain in this country? | "Aliens, Immigration and Citizenship - Memo 93 - RK_64826.docx" | ROSS-003281758-ROSS-003281759 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 9792 | Woodruff v. Bryant, 558 S.W.2d 535 | 289+923 | Plaintiffs argue that Bryant's power to dissolve the partnership could only be exercised if she complied with these contractual dissolution procedures. This is not so.The Texas Uniform Partnership Act codifies the common law rule so that every partner has the inherent power to dissolve his partnership even though the partnership agreement might attempt to limit that partner's right to dissolve the partnership. This would be true even though in some circumstances, the exercise of this right to dissolve might constitute a breach of the partnership agreement and render the dissolving partner liable for damages resulting from the breach. See Art. 6132b ss 31, 32, 38, Tex.Rev.Civ.Stat.Ann. (1970); Collins v. Lewis, 283 S.W.2d 258 (Tex.Civ.App. Galveston 1955, writ ref'd n. r. e.); Bluestein v. Davis, 86 Ill.App.2d 61, 230 N.E.2d 61 (1967); Hamilton, Texas Practice, Vol. 19 s 190, pp. 183-85 (1973). | Every partner has inherent power to dissolve partnership even though partnership agreement might attempt to limit such right and even though, in some circumstances, the exercise of such right might constitute a breach of partnership agreement and render dissolving partner liable for damages resulting from the breach. Vernon's Ann.Civ.St. art. 6132b, S 21. | Does every partner have the inherent power to dissolve a partnership even when the dissolution would violate the partnership agreement? | 022594.docx | LEGALEASE-00160138-LEGALEASE-00160139 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 9793 | Tarrant Cty. v. McQuary, 310 S.W.3d 170 | 302+111.36 | The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993); Shilling, 266 S.W.3d at 101. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 allegations as true. Tex. Dep't (Tex.2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, as in this case, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. Id. at 227; Bland, 34 S.W.3d at 555. The pleadings relevant to a review of a plea to the jurisdiction include amended petitions, the plea to the jurisdiction, and responses filed in connection with a defendant's plea to the jurisdiction. City of Austin v. Ender, 30 S.W.3d 590, 593 (Tex.App.-Austin 2000, no pet.) | Pleadings relevant to a review of a plea to the jurisdiction include amended petitions, the plea to the jurisdiction, and responses filed in connection with a defendant's plea to the jurisdiction. | Do pleadings relevant to a review of a plea to the jurisdiction include amended petitions and responses? | 023863.docx | LEGALEASE-00160050-LEGALEASE-00160051 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 9794 | Brown Leasing v. Stone, 284 Ill. App. 3d 1035 | 302+236(1) | Even in cases where an original complaint is arguably deficient and subject to being stricken, error occurs if a trial court abuses its discretion in denying the plaintiff leave to amend. Bowe v. Abbott Laboratories, Inc., 240 Ill.App.3d 382, 181 Ill.Dec. 150, 608 N.E.2d 223 (1992). If a plaintiff can state a cause of action by amending its complaint, a dismissal with prejudice on the pleadings should not be granted. | Even in cases where original complaint is arguably deficient and subject to being stricken, error occurs if trial court abuses its discretion in denying plaintiff leave to amend. | "If a plaintiff can state a cause of action by amending its complaint, should dismissal with prejudice on the pleadings not be granted?" | 039852.docx | LEGALEASE-00159525-LEGALEASE-00159526 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9795 | Epstein v. Chicago Bd. of Educ., 178 Ill. 2d 370 | 307A+561.1 | The "affirmative matter" asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). Once a defendant satisfies this initial burden of going forward on the section 2"619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is "unfounded or requires the resolution of an essential element of material fact before it is proven." Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732. The plaintiff may establish this by presenting "affidavits or other proof." 735 ILCS 5/2"619(c) (West 1992). | "Affirmative matter" asserted by defendant must be apparent on face of complaint or supported by affidavits or certain other evidentiary materials, for purpose of motion for involuntary dismissal on ground that claim asserted against defendant is barred by other "affirmative matter" avoiding legal effect of or defeating the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Will an affirmative matter be apparent on the face of complaint or should the defendant support it with affidavits? | 039897.docx | LEGALEASE-00159821-LEGALEASE-00159822 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 9796 | Piser v. State Farm Mut. Auto. Ins. Co., 405 Ill. App. 3d 341 | 307A+685 | The failure to challenge or contradict supporting affidavits filed with a section 2"619 motion results in an admission of the facts stated therein. Zedella v. Gibson, 165 Ill.2d 181, 185, 209 Ill.Dec. 27, 650 N.E.2d 1000, 1002 (1995). Nor may a plaintiff simply rely on the allegations in his own complaint to refute a section 2"619 affidavit. Hollingshead v. A.G. Edwards & Sons, Inc., 396 Ill.App.3d 1095, 1101"02, 336 Ill.Dec. 664, 920 N.E.2d 1254, 1260 (2009). If the defendant satisfies its initial burden of proof on a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the burden shifts to the plaintiff to show that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. Callaghan v. Village of Clarendon Hills, 401 Ill.App.3d 287, 290"91, 340 Ill.Dec. 757, 929 N.E.2d 61, 67 (2010). In order to refute evidentiary facts contained in the defendant's supporting affidavits, the plaintiff must provide a counteraffidavit. Callaghan, 401 Ill.App.3d at 291, 340 Ill.Dec. 757, 929 N.E.2d at 67, citing Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d at 735. If the plaintiff fails to do so, the facts of the defendant's affidavits are deemed admitted. Callaghan, 401 Ill.App.3d at 291, 340 Ill.Dec. 757, 929 N.E.2d at 67, citing Zedella, 165 Ill.2d at 185, 209 Ill.Dec. 27, 650 N.E.2d at 1002. | If the defendant satisfies its initial burden of proof on a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the burden shifts to the plaintiff to show that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven; to refute evidentiary facts contained in the defendant's supporting affidavits, the plaintiff must provide a counteraffidavit, and the failure to do so results in the facts of the defendant's affidavits being deemed admitted. S.H.A. 735 ILCS 5/2-619(a)(9); Sup.Ct.Rules, Rule 191. | Should the plaintiff provide a counter affidavit to refute evidentiary facts contained in a defendant's supporting affidavits? | Pretrial Procedure - Memo 11385 - C - KG.docx | LEGALEASE-00049930-LEGALEASE-00049931 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 9797 | Reid v. Spazio, 970 A.2d 176 | 307A+561.1 | In ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings. Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate. | Since court is generally limited to facts appearing on the face of the pleadings when deciding a motion to dismiss for failure to state a claim upon which relief can be granted, affirmative defenses, such as laches, are not ordinarily well-suited fortreatment on such a motion. Chancery Court Rule 12(b)(6). | Why are affirmative defenses not well suited for treatment when deciding a motion to dismiss? | Pretrial Procedure - Memo 11392 - C - DA_64446.docx | ROSS-003278415-ROSS-003278416 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 9798 | Castano v. San Felipe Agric., Mfg., & Irr. Co., 147 S.W.3d 444 | 307A+695 | In appeal, Castano argues that the trial court erred in granting summary judgment in favor of Stone and Bolner because the motion "did not prove that [her] claims should be dismissed as a matter of law" or disprove any of the elements of her numerous causes of action against them. Castano goes on to argue that Stone and Bolner should have filed special exceptions, rather than a motion for summary judgment, if they were unclear about the allegations made. It is well settled that the issue of whether pleadings fail to state a cause of action may not be resolved by summary judgment. In the Interest of B.I.V., 870 S.W.2d 12, 13"14 (Tex.1994); Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex.1983); Ryan, 911 S.W.2d at 115"16. Only after a party has been given the opportunity to amend may the case be dismissed for failure to state a cause of action. Massey, 652 S.W.2d at 934. | The issue of whether pleadings fail to state a cause of action may not be resolved by summary judgment; only after a party has been given the opportunity to amend may the case be dismissed for failure to state a cause of action. | Can the issue of whether pleadings fail to state a cause of action not be resolved by summary judgment? | 040234.docx | LEGALEASE-00160232-LEGALEASE-00160233 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9799 | Bridges v. Prod. Operators, 974 So. 2d 54 | 371+3602 | The Louisiana sales and use tax is an excise tax, which is imposed "upon the transaction itself, not the property involved in the transaction." Bruce J. Oreck, Louisiana Sales & Use Taxation, " 2.1 (2d ed.1996). The Louisiana use tax is assessed on the "cost price" of items used in the state, and the sales tax is assessed on the "sales price" of items sold in the state. The sales and use taxes are complementary taxes designed to "make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax." Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232-33 (La.1990). | The sales and use taxes are complementary taxes designed to make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax. | How are use tax and sales tax assessed? | 046207.docx | LEGALEASE-00159787-LEGALEASE-00159788 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 9800 | Bridges v. Prod. Operators, 974 So. 2d 54 | 371+3602 | The Louisiana sales and use tax is an excise tax, which is imposed "upon the transaction itself, not the property involved in the transaction." Bruce J. Oreck, Louisiana Sales & Use Taxation, " 2.1 (2d ed.1996). The Louisiana use tax is assessed on the "cost price" of items used in the state, and the sales tax is assessed on the "sales price" of items sold in the state. The sales and use taxes are complementary taxes designed to "make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax." Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232-33 (La.1990). | The sales and use taxes are complementary taxes designed to make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax. | "Is use tax assessed on the ""cost price"" of items used in the state?" | Taxation - Memo 1087 - C - CK_64495.docx | ROSS-003279224-ROSS-003279225 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 9801 | Columbia Gulf Transmission Co. v. Bridges, 2008-1006 (La. App. 1 Cir. 6/25/09) | 371+3602 | A sales tax is a single-stage tax on consumer spending that applies to final sales in Louisiana for personal use and consumption. The sales tax is a tax imposed on the buyer's use or consumption of the item sold, that is passed on to the buyer or consumer through the addition of the sales tax to the purchase price. Word of Life Christian Center, 936 So.2d at 1233. The state sales tax is levied at a fixed rate based on the sales price of each item or article of tangible personal property when the property is sold at retail in Louisiana. LSA"R.S. 47:302(A) | A "sales tax" is a single-stage tax on consumer spending that applies to final sales in the state for personal use and consumption. LSA-R.S. 47:302(A). | "Is a ""sales tax"" a single-stage tax on consumer spending that applies to final sales in the state for personal use and consumption?" | 046211.docx | LEGALEASE-00159795-LEGALEASE-00159796 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9802 | Paulausky v. Polish Roman Catholic Union of Am., 219 Ind. 441 | 8.30E+239 | It has been held that a mortgage securing a note is not a necessary part of the note, although construed with it as constituting one contract; that since the note is valid and enforceable without the mortgage the material alteration of the mortgage does not destroy the validity of the note. Zieglar v. Vollers, 1916, 59 Okl. 74, 157 P. 1035. | A mortgage securing a note is not a necessary part of the note, although construed with the note as constituting one contract, and since note is valid and enforceable without mortgage, material alteration of mortgage does not destroy validity of note. | Is a mortgage a necessary part of the note? | Bills and Notes -Memo 1416- JK_66292.docx | ROSS-003307333-ROSS-003307334 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 9803 | People v. Farrar, 52 N.Y.2d 302 | 350H+90 | The determination of an appropriate sentence requires the exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i. e., societal protection, rehabilitation and deterrence (see People v. McConnell, 49 N.Y.2d 340, 346, 425 N.Y.S.2d 794; Penal Law, s 1.05, subd. 5). The law and strong public policy of this State mandate that the court, detached from outside pressures often brought to bear on the prosecution and defense, make that determination. Quite simply, the court must perform the delicate balancing necessary to accommodate the public and private interests represented in the criminal process. | Determination of an appropriate sentence requires exercise of discretion after due consideration given to the crime charged, the particular circumstances of the individual before the court, and the purpose of penal sanction. | How is the appropriateness of a sentence determined? | Bribery - Memo 1065 - C - ML_65550.docx | ROSS-003282638-ROSS-003282639 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 9804 | People v. Everard, 225 Mich. App. 455 | 135H+23 | While the Double Jeopardy Clauses prohibit successive or multiple punishments for the same offense, a defendant may still be subject to both criminal and civil sanctions for the same act. Id. at 245, 553 N.W.2d 673. In Michigan, forfeiture proceedings are in rem civil proceedings and the government has the burden of proving its case by a preponderance of the evidence. In re Forfeiture of $15,232, 183 Mich.App. 833, 836, 455 N.W.2d 428 (1990). Generally, civil forfeitures do not constitute punishment for purposes of the Double Jeopardy Clauses. | While double jeopardy clause prohibits successive or multiple punishments for same offense, defendant may still be subject to both criminal and civil sanctions for same act. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 1, S 15. | "Does civil forfeiture not constitute ""punishment"" for purpose of a double jeopardy clause?" | 015327.docx | LEGALEASE-00160620-LEGALEASE-00160621 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 9805 | United States v. Cook, 406 F.3d 485 | 156+52.10(2) | A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law. United States v. Olano, 507 U.S. 725, 732-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); United States v. Redditt, 381 F.3d 597, 602 (7th Cir.2004); United States v. Williams, 258 F.3d 669, 672 (7th Cir.2001); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir.2002). If the plea agreement had made no reference to acceptance of responsibility and the defendant's lawyer had not asked for an acceptance-of-responsibility sentencing discount, that would be forfeiture. And likewise if he had asked, but had not indicated how many levels he wanted. But the plea agreement showed he'd negotiated for a government recommendation of two levels, and at the sentencing hearing he asked for two levels. To ask for two levels is deliberately not to ask for three. Any doubt on this score is dispelled by the provision of the plea agreement that "both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement." The number of levels for acceptance of responsibility was specifically addressed, so the defendant had no right to make a variant recommendation; and he didn't. | A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law. | Is waiver a deliberate decision not to present a ground for relief that might be available in the law? | 018128.docx | LEGALEASE-00161347-LEGALEASE-00161348 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9806 | Allen v. Mussen, 129 Conn. 151 | 268+817(1) | The defendants as abutting owners are presumed under the law of this state, no evidence having been offered to the contrary, to own the fee of the land to the center of the highway. State v. Muolo, 119 Conn. 323, 326, 176 A. 401; Knothe v. Zinzer, 96 Conn. 709, 714, 115 A. 477; Newton v. New York, N. H. & H. R. Co., 72 Conn. 420, 426, 44 A. 813. As to this land within the limits of the highway the defendants retained all rights not incompatible with the public easement. State v. Muolo, supra, 119 Conn. page 326, 176 A. 401; Knothe v. Zinzer, supra, 96 Conn. page 713, 115 A. 477; Newton v. New York, N. H. & H. R. Co., supra, 72 Conn. page 426, 44 A. 813; Peck v. Smith, 1 Conn. 103, 146, 6 Am.Dec. 216. Apparently appreciating the subversive import of these principles with relation to her second contention that a broader rule applies as to the liability of an abutter than as to that of the municipality established by the Corcoran case, the plaintiff claims that an ordinance of the city of Norwalk is effective to distinguish this case and to render the rule of that case inapplicable. This ordinance provides that any person who shall "without a written permit from the Street Commissioner place or cause to be placed any obstruction" upon "any portion of the streets, highways, sidewalks, gutters or public places in said City shall be guilty of a misdemeanor." | Defendants as abutting property owners were presumed, there being no evidence to the contrary, to own the fee in the land to the center of the highway, and hence as to a park strip between the sidewalk and curb upon which defendants had placed wire netting to protect grass seed, defendants retained all rights not incompatible with the public easement, so that defendant was required only to use reasonable care to keep the premises reasonably safe for pedestrians. | Does an abutting owner have all the rights incompatible with a public easement? | 018807.docx | LEGALEASE-00161655-LEGALEASE-00161656 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9807 | Davis v. Girard, 74 R.I. 125 | 59+33 | It is the well-settled policy of this state, which is in accord with the general rule, that the owner of premises bounded on a public highway is presumed, in the absence of evidence to the contrary, to own the fee to the middle line of the highway. Adams v. White & Son, Inc., 41 R.I. 157, 161, 103 A. 230; Anthony v. City of Providence, 18 I.R. 699, 701, 28 A. 766; 39 C.J.S., Highways " 136. By the legal establishment of a highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands unless the contrary appears. Rounds v. Mumford, 2 R.I. 154, 160. It is provided by statute that upon the abandonment, in whole or in part, of a public highway by a municipality, the title of the land upon which such highway or part thereof existed shall revert to its owner. G.L.1923, chap. 95, sec. 30, now G.L.1938, chap. 72, " 30. See State v. Town of Cumberland, 7 R.I. 75, under a prior form of statute. | The owner of premises bounded on a public highway is presumed, in absence of evidence to the contrary, to own the fee to the middle line of the highway. | Is the owner of premises bounded on a public highway presumed to own the fee to the middle line of the highway? | Highways - Memo 401 - RK_66330.docx | ROSS-003280750-ROSS-003280751 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9808 | Nylander v. Potter, 38 Mass. App. Ct. 605 | 200+80 | We start our analysis by noting that Bachellor Road was a public way when it was discontinued by the town. Abutters to a public way "ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travellers to pass and repass." Opinion of the Justices, 297 Mass. 559, 562, 8 N.E.2d 179 (1937). See also Perley v. Chandler, 6 Mass. 454, 456 (1810) ("By the location of a way over the land of any person, the public have acquired an easement....") Once the public road is discontinued, however, the public easement to travel over the road is terminated and the abutter "hold[s] the land free from the [public easement]." Perley v. Chandler, supra. Here, because the Nylanders' predecessors in title owned land on both sides of the disputed stretch, the Nylanders own the entire roadbed. | Abutters to a public way ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travelers to pass and repass. | Do abutters ordinarily hold the title to the fee to the center of the public way? | Highways - Memo 467 - RK_66367.docx | ROSS-003280544-ROSS-003280545 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9809 | Anthony v. Tidwell, 560 S.W.2d 908 | 307A+682.1 | The majority of the Court of Appeals held that an affirmative defense, such as the statute of frauds, may not be raised by a motion to dismiss for failure to state a claim upon which relief can be granted under T.R.Civ.P. 12.02(6), but may only be raised in the defendant's answer, or by subsequent motion supported by affidavits. In this the Court of Appeals was in error. A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint. It is not necessary for the defendant to submit evidence in support of his motion when the facts on which he relies to defeat plaintiff's claim are admitted by the plaintiff in his complaint. Wright and Miller, Federal Practice and Procedure s 1357 at 605 et seq. Compare Hixson v. Stickley, 493 S.W.2d 471 (Tenn.1973) and Carrier v. Knapp, 442 F.2d 422 (3d Cir. 1971), where the basis of the defense did not appear clearly in the complaint. | Complaint is subject to dismissal for failure to state claim if affirmative defense clearly and unequivocally appears on face of complaint; it is not necessary for defendant to submit evidence in support of motion to dismiss when facts on which he relies to defeat plaintiff's claim are admitted by plaintiff in his complaint. Rules of Civil Procedure, rule 12.02(6). | Will a complaint be subject to dismissal when an affirmative defense appears on the face of the complaint? | Pretrial Procedure - Memo 11426 - C - NS_65276.docx | ROSS-003320955-ROSS-003320956 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 9810 | Meadow Fresh Farms v. Utah State Univ. Dep't of Agric. & Applied Sci., 813 P.2d 1216 | 307A+697 | The Utah Supreme Court has indicated that a party failure to communicate with its counsel does not satisfy the "excusable neglect" standard required to set aside a judgment under Utah Rule of Civil Procedure 60 (b). In sum, a plaintiff in attacking a dismissal for failure to prosecute must offer a reasonable excuse for its lack of diligence. | Plaintiff in attacking dismissal for failure to prosecute must offer reasonable excuse for its lack of diligence. Rules Civ.Proc., Rule 60(b). | Should a plaintiff in attacking a dismissal for failure to prosecute offer a reasonable excuse for its lack of diligence? | 040110.docx | LEGALEASE-00161319-LEGALEASE-00161320 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 9811 | Janssen v. Inc. Vill. of Rockville Ctr., 59 A.D.3d 15 | 307A+695 | Second, what standard should now be applied on a motion for leave to replead? With regard to this question, we hold that the standard to be applied on a motion for leave to replead pursuant to CPLR 3211(e) is consistent with the standard governing motions for leave to amend pursuant to CPLR 3025. Namely, motions for leave to amend pleadings should be freely granted absent prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit or palpably insufficient (see Smith"Hoy v. AMC Prop. Evaluations, Inc., 52 A.D.3d 809, 862 N.Y.S.2d 513; Bennett v. Long Is. Jewish Med. Ctr., 51 A.D.3d 959, 859 N.Y.S.2d 470; Trataros Constr., Inc. v. New York Hous. Auth., 34 A.D.3d 451, 452"453, 823 N.Y.S.2d 534; Glaser v. County of Orange, 20 A.D.3d 506, 799 N.Y.S.2d 120). | The standard to be applied for granting a motion for leave to replead on motion to dismiss is consistent with the standard governing motions for leave to amend a complaint. McKinney's CPLR 3025; McKinney's CPLR 3211(e) (2004). | Is the standard to be applied for granting a motion for leave to replead pursuant to a motion to dismiss consistent with the standard governing motions for leave to amend? | Pretrial Procedure - Memo 11568 - C - BP_65345.docx | ROSS-003279326-ROSS-003279327 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9812 | Krilich v. Thomas, 973 So. 2d 1244 | 307A+695 | We affirm the trial court ruling dismissing the Krilichs complaint for specific performance. However, we remand the matter for the trial court to allow the Krilichs to amend their complaint, as the lower court abused its discretion in denying their request to amend. "Refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile." Video Indep. Med. Examination, Inc. v. City of Weston, 792 So.2d 680, 681 (Fla. 4th DCA 2001) (quoting Spradley v. Stick, 622 So.2d 610, 613 (Fla. 1st DCA 1993)). An amendment would not prejudice Thomas. In addition, the privilege to amend has not been abused, as the complaint has been amended on only one occasion and "generally, a trial court is within its discretion to dismiss a complaint with prejudice after three opportunities to amend." Horton v. Freeman, 917 So.2d 1064, 1066 (Fla. 4th DCA 2006) (citation omitted) (emphasis added). Finally, the amendment would not be futile. | Generally, a trial court is within its discretion to dismiss a complaint with prejudice after three opportunities to amend. | Is a trial court within its discretion to dismiss a complaint with prejudice after three opportunities to amend? | 040198.docx | LEGALEASE-00161469-LEGALEASE-00161470 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9813 | Jampole v. Matthews, 857 S.W.2d 57 | 307A+695 | Only after a party has been given an opportunity to amend, after special exceptions have been sustained, may the case be dismissed for failure to state a claim. Massey, 652 S.W.2d at 934 (citing Herring, 513 S.W.2d at 10); James, 742 S.W.2d at 704; Geochem Laboratories v. Brown & Ruth Laboratories, 689 S.W.2d 288, 290 (Tex.App."Houston [1st Dist.] 1985, writ ref'd n.r.e.). | Only after party has been given opportunity to amend, after special exceptions have been sustained, may case be dismissed for failure to state claim. | "After special exceptions have been sustained, can a case be dismissed for failure to state a claim?" | 040317.docx | LEGALEASE-00161058-LEGALEASE-00161059 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 9814 | Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So. 2d 178 | 307A+584 | In reviewing a trial court decision to dismiss under Rule 41(b), this Court may reverse only if it finds that the trial court abused its discretion. Wallace, 572 So.2d at 375 (citing Morris v. Ocean Sys., Inc., 730 F.2d 248, 251 (5th Cir.1984)); Watson, 493 So.2d at 1279. At the same time, the law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly. Id. at 1278 (citing Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984)). There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only "where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct."Watson, 493 So.2d at 1279. This Court is mindful of the fact that "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." Wallace, 572 So.2d at 376 (citing Rogers v. Kroger Co., 669 F.2d 317 (5th Cir.1982)). What constitutes failure to prosecute depends on the facts of the particular case. Id. | There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct. | Is there a time limit for the prosecution of an action once it has been filed? | 040441.docx | LEGALEASE-00161026-LEGALEASE-00161027 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9815 | Am.'s Favorite Chicken Co. v. Galvan, 897 S.W.2d 874 | 228+197 | It is true that orders of nonsuits or dismissals without prejudice are not an adjudication on the rights of the parties because the parties are simply returned to the positions they were in before suit was brought. Thompson, 859 S.W.2d at 484 (citing Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 104 (Tex.1962)). Likewise, orders of nonsuits or dismissals with prejudice do constitute an adjudication on the merits. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991); Thompson, 859 S.W.2d at 484. However, even though a court has no discretion not to grant a plaintiff's timely filed and proper motion for nonsuit, its issuance of a written order granting the motion, which dismisses the entire case, represents a written judgment entered of record regardless of whether an adjudication on the merits has occurred. See Felderhoff, 819 S.W.2d at 111; Harris County, 881 S.W.2d at 194"95. The judgment granting nonsuit becomes final thirty days after it is signed, when no motion for new trial is filed. Harris County, 881 S.W.2d at 194; Tex.R.Civ.P. 329b. At that point the trial court's plenary jurisdiction expires. | Issuance of written order granting motion for nonsuit dismissing entire case represents written judgment entered of record, regardless of whether adjudication on the merits has occurred. | Does the court have the discretion to grant plaintiff's timely filed and proper motion for nonsuit? | 040519.docx | LEGALEASE-00161385-LEGALEASE-00161386 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 9816 | State ex rel. P.A.W. v. P.A.D., 591 So. 2d 98 | 307A+690 | P.A.D. argues that the portion of the Family Court's order which states "[p]etitioner not present" implies that the case might possibly have been dismissed for failure to prosecute, and such a dismissal is generally considered an adjudication upon the merits. Fowler v. Fowler, 455 So.2d 889 (Ala.Civ.App.1984). It is unclear, however, why the family court dismissed the first paternity suit. A dismissal with prejudice for want of prosecution is within the discretion of the trial court, but this is considered a harsh sanction which "should be used only in extreme circumstances." Agio Indus., Inc. v. Delta Oil Co., 485 So.2d 340, 342 (Ala.Civ.App.1986) (citing Selby v. Money, 403 So.2d 218 (Ala.1981)). The policy of the courts is to favor an adjudication of the case on the merits. Cockrell v. World's Finest Chocolate Co., 349 So.2d 1117 (Ala.1977). | Dismissal with prejudice for want of prosecution is within discretion of trial court, but is considered harsh sanction which should be used only in extreme circumstances. | Is the dismissal for want of prosecution within the discretion and the inherent power of trial court? | 040540.docx | LEGALEASE-00161052-LEGALEASE-00161053 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 9817 | United States v. Sykes, 73 F.3d 772 | 135H+1 | The Fifth Amendment provides that "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although the text of the Amendment mentions only harms to "life or limb," it is well settled that the Double Jeopardy Clause applies to imprisonment and monetary penalties. See, e.g., United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); Ex parte Lange, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872 (1873). | Although text of Fifth Amendment's double jeopardy clause mentions only harms to "life or limb," it also applies to imprisonment and monetary penalties. U.S.C.A. Const.Amend. 5. | Does the double jeopardy clause apply to imprisonment and monetary penalties? | Double Jeopardy - Memo 105 - C - SB_65884.docx | ROSS-003309985-ROSS-003309986 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 9818 | CNA Ins. Co. v. Selective Ins. Co., 354 N.J. Super. 369 | 217+1001 | Insurance may be defined as "a contract to pay a sum of money upon the happening of a particular event." 1 Couch on Insurance " 1:6 (3d ed.1999). Primary insurance "attaches immediately upon the happening of the occurrence that gives rise to liability." Empire Fire & Marine Ins. Co. v. Liberty Mutual Ins. Co., 117 Md.App. 72, 699 A.2d 482, 504 (Ct.Spec.App.1996) (citations and internal quotations omitted). Here, both the Selective policy and the CNA policy attached immediately upon the happening of the underlying accident. Quartier was using her personal vehicle to show homes for her employer, Coldwell Banker, at the time of the accident. Selective's policy undisputedly provided primary coverage for Quartier's vehicle. CNA's policy also provided primary coverage for Quartier because Coldwell Banker employees were covered while conducting Coldwell Banker's business when "using a covered auto [Coldwell Banker did not] own." Thus, immediately upon the happening of the accident, Quartier was covered by both Selective and CNA. The same holds true for Coldwell Banker. Under the CNA policy, Coldwell Banker was the named insured. Under the Selective policy, it became an additional insured because it was legally responsible for Quartier's actions at the time of the accident. | "Insurance" may be defined as a contract to pay a sum of money upon the happening of a particular event. | Can insurance be defined as a contract to pay a sum of money upon the happening of a particular event? | 019647.docx | LEGALEASE-00162102-LEGALEASE-00162103 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 9819 | Development Specialists v. Akin Gump Strauss Hauer & Feld LLP, 480 B.R. 145 | 289+588 | "A partnership is an association of two or more persons to carry on as co-owners a business for profit ..." Partnership Law " 10(1). Joint ownership of the business and sharing and the profits and losses of the business are the key indicia of a partnership. Id. " 11. Jointly owned "partnership property" includes "All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise," and, "Unless the contrary intention appears, property acquired with partnership funds." Id. " 12. Partners are presumed to devote all of their efforts to the partnership business, and are entitled to no compensation for doing so beyond their proportional interest in the profits the business generates. Id. " 40(6). Partners owe one another, and the partnership, fiduciary duties, including the duty to account for any benefit a partner derives from his use of partnership property. Id. " 43. | Under New York law, partners owe one another, and the partnership, fiduciary duties, including the duty to account for any benefit a partner derives from his use of partnership property. N.Y.McKinney's Partnership Law S 43. | Does a partner have a duty to account for any benefit he derived from his use of partnership property? | Partnership - Memo 598 - SNP_66407.docx | ROSS-003280814-ROSS-003280815 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 9820 | Alfieri v. Solomon, 263 Or. App. 492 | 307A+695 | With those principles in mind, we reiterate the procedural posture in this case. Plaintiff filed the complaint for legal malpractice. Defendant then filed a motion to strike and motion to dismiss. ORCP 21 A(8), E. After the hearing on the motion, the trial court dismissed plaintiff's complaint with prejudice. This appeal followed. Under ORCP 23 A,5 "plaintiff had to be allowed an opportunity to amend [the] complaint once, as a matter of right, before the trial court dismissed [the] complaint with prejudice." O'Neil v. Martin, 258 Or.App. 819, 838, 312 P.3d 538 (2013), rev. den., 355 Or. 381, 328 P.3d 697 (2014). | Under rule governing amended and supplemental pleadings, a plaintiff has to be allowed an opportunity to amend his complaint once, as a matter of right, before the trial court dismisses the complaint with prejudice. Rules Civ.Proc., Rules 21, 23. | "Will a plaintiff be given an opportunity to amend the complaint once, as a matter of right, before the trial court dismiss the complaint with prejudice?" | Pretrial Procedure - Memo 11549 - C - NC_65982.docx | ROSS-003293452-ROSS-003293453 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9821 | Vera v. Soohoo, 99 A.D.3d 990 | 307A+697 | Under 22 NYCRR 202.27, a court may dismiss an action when a plaintiff is unprepared to proceed to trial at the call of the calendar (see Fink v. Antell, 19 A.D.3d 215, 796 N.Y.S.2d 524; Johnson v. Brooklyn Hosp. Ctr., 295 A.D.2d 567, 569, 744 N.Y.S.2d 215; Farley v. Danaher Corp., 295 A.D.2d 559, 560, 744 N.Y.S.2d 709). In order to be relieved of that default, a plaintiff must demonstrate both a reasonable excuse for the default and a potentially meritorious cause of action (see e.g. Felsen v. Stop & Shop Supermarket Co., LLC, 83 A.D.3d 656, 919 N.Y.S.2d 883). | Court may dismiss an action when a plaintiff is unprepared to proceed to trial at the call of the calendar, and to be relieved of that default, a plaintiff must demonstrate both a reasonable excuse for the default and a potentially meritorious cause of action. N.Y.Ct.Rules, S 202.27. | Under 22 NYCRR 202.27 could a court dismiss an action when a plaintiff is unprepared to proceed to trial at the call of the calendar? | 040561.docx | LEGALEASE-00162152-LEGALEASE-00162153 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 9822 | N. Missouri R. Co. v. Maguire, 87 U.S. 46 | 371+2286 | Power to tax is granted for the benefit of the whole people, and none have any right to complain if the power is fairly exercised and the proceeds are properly applied to discharge the obligations for which the taxes were imposed.Such a power resides in the State government as a part of itself, and need not be reserved when property of any description is granted to individuals or corporate bodies. | The power to tax resides in the state government as part of itself for the benefit of the whole people who cannot complain if the power is fairly exercised and the proceeds are properly applied to discharge obligations for which the taxes were imposed and the power need not be reserved when property of any description is granted to individuals or corporation bodies. | Is the power to tax granted for the benefit of the whole people? | 046347.docx | LEGALEASE-00161972-LEGALEASE-00161973 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 9823 | Placanica v. State, 303 Ga. App. 302 | 3.77E+29 | Further, there was ample evidence that Placanica contacted W.W. for the purpose of harassing and intimidating her. W.W. testified that after Placanica posted signs on her street, showed up at the gym, and left a package on her car at work, she was "scared" and "shaking." Smith, the assistant manager at W.W.'s work, testified that W.W. was crying and verbalized "fear" of Placanica after the incident at work. W.W. told the police that she was "scared" by his actions. Chad, the personal trainer at the gym, testified that W.W. seemed "scared" and "upset" when Placanica showed up. This evidence was sufficient for the trial judge to infer that Placanica caused W.W. emotional distress by placing her in reasonable fear for her safety. A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking. Even behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim. The evidence recounted above is sufficient to support Placanica's conviction of stalking beyond a reasonable doubt. | A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking; even behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim. West's Ga.Code Ann. S 16-5-90(a)(1). | Does a defendant need to engage in unequivocally hostile conduct in order to be convicted of stalking? | "Threats, Stalking and Harassment - Memo 217 - C - LB_66013.docx" | ROSS-003279070-ROSS-003279071 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 9824 | State v. Murphy, 545 N.W.2d 909 | 3.77E+11 | Whether a statute has been properly construed is a question of law to be reviewed de novo by this court. Hibbing Educ. Ass'n v. Public Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985). Minnesota Statutes section 609.713, subd. 1 (1992) provides that "[w]hoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another" is guilty of terroristic threats. The statute on its face places no restriction on the word "threatens" that would limit the statute's scope to the spoken word. However, Murphy urges us to consider State v. Schweppe, in which this court used terms such as "declaration," "words or phrases," "statement," and "utter" in describing the essential elements of the crime of terroristic threats: A threat is a declaration of an intention to injure another or his property by some unlawful act. The test of whether words or phrases are harmless or threatening is the context in which they are used. Thus, the question of whether a given statement is a threat turns on whether the "communication "in its context" would "have a reasonable tendency to create apprehension that its originator will act according to its tenor." " * * Section 609.713, subd. 1, requires that defendant utter the threat with the purpose of terrorizing another. Purpose in this context means aim, objective or intention. Terrorize means to cause extreme fear by use of violence or threats. 306 Minn. 395, 399"400, 237 N.W.2d 609, 613"14 (1975) (citations omitted) (emphasis added). | Statute that proscribes making terroristic threats places no restriction on word "threatens" that would limit statute's scope to the spoken word; physical acts alone may amount to "terroristic threats." M.S.A. S 609.713, subd. 1. | "Does the statute that proscribes the making of terroristic threats place a restriction on the word ""threaten"" so as to limit the statute's scope to the spoken word?" | 046969.docx | LEGALEASE-00162190-LEGALEASE-00162191 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 9825 | Shushunov v. Illinois Dep't of Fin. & Prof'l Regulation, 74 N.E.3d 71 | 135H+25 | With regard to plaintiff's double jeopardy argument, we further find the Regulation did not violate the constitutional protection against double jeopardy. The United States and Illinois Constitutions prohibit multiple criminal punishments for one offense. Consiglio, 2013 IL App (1st) 121142, 23, 370 Ill.Dec. 664, 988 N.E.2d 1020. However, a civil penalty generally is not considered a punishment for purposes of double jeopardy, unless it is so punitive in nature or effect that it is the "functional equivalent" of a criminal penalty. Id. In order to ascertain whether a civil penalty is actually punitive in nature, a court must consider the intent of the legislature. Id. | To ascertain whether a civil penalty is actually punitive in nature, and, thus, considered a punishment for purposes of double jeopardy, a court must consider the intent of the Legislature. U.S. Const. Amend. 5; Ill. Const. art. 1, S 10. | What must a court do to ascertain whether a civil penalty actually punitive in nature? | 015069.docx | LEGALEASE-00162839-LEGALEASE-00162840 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9826 | McGee v. Peake, 511 F.3d 1352 | 34+136 | We must also examine and consider the statutory framework within which the Board makes its decision. Consistent with the dictionary definitions, this framework clarifies that a provision of law applies to the Board's decision if it is relevant to the decision. The Board adjudicates a claim for veterans benefits within a compensation system that is "uniquely pro-claimant." Hensley v. West, 212 F.3d 1255, 1262 (Fed.Cir.2000). This statutory system imposes on the Board an obligation to "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R.Rep. No. 100"963 at 13, reprinted in 1988 U.S.C.C.A.N. 5782, 5795 (discussing Veteran's Judicial Review Act, Pub.L. No. 100"687, "" 103(a), 203(a), 102 Stat. 4105, 4106, 4110"11 (1988)). Moreover, the Veteran's Judicial Review Act imposes a statutory duty to assist a veteran with the development of facts pertinent to the veteran's benefit claim. See " 103(a), 102 Stat. at 4106 (codified as amended at 38 U.S.C. " 5107(a)) ("The Administrator shall assist such a claimant in developing the facts pertinent to his or her claim."); Cook v. Principi, 318 F.3d 1334, 1337"38 n. 4 (Fed.Cir.2002) (en banc). The Veteran's Judicial Review Act also imposes a statutory obligation on the Board to "provide the claimant with a full opportunity to participate in the development of the record so that all relevant issues would be considered by the [Board] prior to any judicial review." S.Rep. No. 100"418, at 38 (1988); see also " 203(a), 102 Stat. at 4110"11 ("Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.") (current version at 38 U.S.C. " 7104(a)). Taken together, the passage of Veteran's Judicial Review Act "" 103(a) and 203(a) create a statutory context in which the VA is required to assist the veteran claimant with fully developing a record before | The Board of Veterans' Appeals adjudicates a claim for veterans benefits within a compensation system that is uniquely pro-claimant by imposing on the Board an obligation to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits. | Does the Board of Veterans' Appeals adjudicate claims for veterans benefits within a compensation system that is uniquely pro-claimant? | 008865.docx | LEGALEASE-00163916-LEGALEASE-00163917 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9827 | Stewart v. Citizens & S. Nat. Bank, 138 Ga. App. 209 | 8.30E+27 | While a check is merely an order upon a bank to pay from the drawer's account, it may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of law upon the death of the drawer. See Aiken Bag Corporation v. McLeod,Bank of Hamilton v. Williams, see also Code Ann. s 109A-4-405; Lambeth v. Lewis, 114 Ga.App. 191, 150 S.E.2d 462. | Check is merely an order on bank to pay from drawer's account, and may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of the law on the death of the drawer. Code, S 109A-4-405. | Is a check a mere order to the bank that can be revoked? | 009332.docx | LEGALEASE-00163015-LEGALEASE-00163016 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 9828 | Stamson v. Lillard, 316 S.W.3d 611 | 316P+26 | This Court has previously addressed the issue of the application of the Shelby County Civil Service Act and Tenn.Code. Ann. " 8"20"101, et seq., to civil service positions in Shelby County. See Patterson v. Rout, W2001"01769"COA"R3"CV, 2002 WL 1592674 (Tenn.Ct.App.2002). In Patterson, we held "that Tenn.Code Ann. " 8"20"101, et seq., is suspended by the [Shelby County Civil Service] *615 Act with respect to those employees governed by the Act." Id. at *2. Section 8"20"112 of the Tennessee Code provides:In any county having a civil service system for the sheriff's department pursuant to Chapter 8, part 4 of this title or other provision of general law or the provisions of a private act, or a civil service system for all county employees pursuant to the provisions of a private act, the employment or termination of employment of any deputy or assistant in any office covered by the chapter shall be pursuant to the provisions of such civil service system, and the provisions of " 8"20"109 shall not apply to such county.Tenn.Code. Ann. " 8"20"112 (1993)(emphasis added). A civil service system for Shelby County was created by the legislature with a private act. Tenn. Priv. Acts. Ch. 110 (1971). As stated by our Supreme Court, "the creation of a civil service system for a local government is a legitimate objective of the General Assembly, and one which it may accomplish within rather broad limits." Shelby County Civil Service Merit Board v. Lively, 692 S.W.2d 15, 19 (Tenn.1985). When a county employee is governed by a civil service system, the civil service system governs all aspects of employment, including terms of employment, promotion, discipline and termination. | When a county employee is governed by a civil service system, the civil service system governs all aspects of employment, including terms of employment, promotion, discipline and termination. | Does a civil service system govern all the aspects of employment of a county employee? | 013560.docx | LEGALEASE-00164116-LEGALEASE-00164117 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9829 | Woods v. Legg, 363 S.W.3d 710 | 135+4(2) | "Volition, intention, and action are all elements to be considered in determining where a person resides, and such elements are equally pertinent in denoting the permanent residence or domicile." Slusher, 896 S.W.2d at 244. Conduct such as where a person sleeps and keeps personal belongings may support factors such as presence and intent. Mills, 377 S.W.2d at 637. One element alone is insufficient to establish residency; the elements must form a nexus to fix and determine a residence. Id. | Volition, intention, and action are all elements to be considered in determining where a person resides, and such elements are equally pertinent in denoting the permanent residence or domicile for voting purposes. V.T.C.A., Election Code S 1.015(a). | "Are volition, intention, and action all elements to be considered in determining where a person resides?" | 014558.docx | LEGALEASE-00164186-LEGALEASE-00164187 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 9830 | Ledford v. Thomas, 144 F. Supp. 2d 709 | 135H+59 | The case law regarding successive prosecutions supports this conclusion. Under both Texas and federal law, jeopardy does not attach at the arrest or indictment stage. Instead, in a jury trial, jeopardy attaches when the jury is empaneled and sworn. See Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); Proctor v. State, 841 S.W.2d 1 (Tex.Crim.App.1992). In a bench trial, jeopardy does not attach under state law until both sides have announced ready and the defendant has pleaded to the charging instrument. See State v. Torres, 805 S.W.2d 418 (Tex.Crim.App.1991). In neither circumstance does jeopardy attach until the trial begins and the judicial process is fully invoked. Neither arrest, pretrial detainment, nor a grand jury inquiry is "punishment" triggering double jeopardy. | Under Texas and federal law, jeopardy does not attach at arrest or indictment stage; instead, in jury trial, jeopardy attaches when jury is empaneled and sworn and, in bench trial, when both sides have announced ready and defendant has pleaded to charging instrument. U.S.C.A. Const.Amend. 5. | Will jeopardy attach when both sides have announced ready and defendant has pleaded to charging instrument? | Double Jeopardy - Memo 1088 - C - CK_67994.docx | ROSS-003292232-ROSS-003292233 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9831 | United States v. Huang, 960 F.2d 1128 | 135H+6 | It is of course well established that the Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from successive prosecutions for the same offense. See, e.g., Oregon v. Kennedy, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). Where the original trial has not been completed and the defendant himself or herself has moved for or consented to a mistrial, however, a retrial is normally not barred. See, e.g., United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); United States v. Rivera, 802 F.2d 593 (2d Cir.1986). | Double jeopardy clause of Fifth Amendment protects criminal defendant from successive prosecutions for same offense; however, where original trial has not been completed and defendant himself or herself has moved for or consented to mistrial, retrial is normally not barred. U.S.C.A. Const.Amend. 5. | "Where an original trial has not been completed and a defendant himself or herself has moved for or consented to mistrial, is retrial normally not barred?" | Double Jeopardy - Memo 325 - C - TJ_66619.docx | ROSS-003280403-ROSS-003280404 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 9832 | State v. Leonard, 234 N.J. Super. 183 | 135H+96 | Where there has been no final resolution of the merits of the charges against the defendant, "a trial court has a discretionary range within which it may properly operate to grant a mistrial whether on its own motion or otherwise." State v. Rechtschaffer, 70 N.J. 395, 406, 360 A.2d 362 (1976). However, the court's discretion is not without limits and, generally, when the trial is terminated without the defendant's consent or without legal justification, see United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); State v. Farmer, 48 N.J. 145, 169, 224 A.2d 481 (1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); see also State v. Rechtschaffer, 70 N.J. at 406-411, 360 A.2d 362, the defendant should not subjected to the harassment of a new trial.Cf. N.J.S.A. 2C:1-9d with respect to crimes, disorderly persons offenses and petty disorderly persons offenses. See N.J.S.A. 2C:1-14k; see also N.J.S.A. 2C:1-5b. | Generally, when trial is terminated without defendant's consent or without legal justification, defendant should not be subjected to harassment of new trial. | "When the trial is terminated without a defendant's consent or without legal justification, should a defendant not be subjected to harassment of a new trial?" | 015379.docx | LEGALEASE-00163113-LEGALEASE-00163114 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9833 | Davidson v. United States, 48 A.3d 194 | 135H+95.1 | The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." United States v. Allen, 755 A.2d 402, 406 (D.C.2000) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). However, "[a]n exception to the protections of the Double Jeopardy Clause may be permitted if the trial court declares a mistrial." Id. Among the circumstances permitting a retrial, "[t]he classic example is a mistrial because the jury is unable to agree." Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (citing, among other cases, Perez, 22 U.S. at 580). | An exception to the protections of the Double Jeopardy Clause may be permitted if the trial court declares a mistrial. U.S.C.A. Const.Amend. 5. | Can an exception to the protections of the Double Jeopardy Clause be permitted if the trial court declares a mistrial? | Double Jeopardy - Memo 364 - C - SN_67264.docx | ROSS-003293248-ROSS-003293249 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 9834 | United States v. Wayman, 510 F.2d 1020 | 135H+95.1 | First, the trial judge in Trans Continental declared a mistrial as to Hutcheson and one other defendant when their trial counsel was injured in an automobile wreck and was unable to continue the trial.It is hornbook law that a defendant may be tried a second time when upon the first trial the court properly declared a mistrial. But Hutcheson says that the mistrial was declared without his consent. A broad reading of certain rather casual language in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) seems to support that argument. Justice Black stated: "This Court, as well as most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again." The cases cited by Justice Black to support this statement do not warrant such a broad rule. Indeed, he went on to say that "unforeseeable circumstances' might arise during the first trial making its completion impossible, such as the failure of a jury to agree. The broad rule in Green was explained just four years later in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), wherein the Court said:Where for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objections, and he may be retried consistently with the Fifth Amendment. | A defendant may be tried a second time when on the first trial the court properly declared a mistrial. | Can a defendant be tried a second time when on the first trial the court properly declared a mistrial? | 015531.docx | LEGALEASE-00163699-LEGALEASE-00163700 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 9835 | Matter of Armstrong, 201 B.R. 526 | 156+52.10(3) | Waiver is a knowing and voluntary surrender or relinquishment of some right, benefit, or advantage. See BLACK'S LAW DICTIONARY (5th ed. 1968). Waiver may be found where a party fails to raise an issue, despite a full and fair opportunity to do so.See e.g., In re Mathiason, 16 F.3d 234 (8th Cir.1994). I find that the Trustee was given a full and fair opportunity to object to the Bank's claim in Armstrong II and he voluntarily chose not to do so. Instead, the Trustee chose to rely on the outcome of debtors' objection in Armstrong II. Therefore, I find that the Trustee's acts constituted a waiver of the right to object to the Bank's claim | Waiver may be found when party fails to raise issue, despite full and fair opportunity to do so. | Can waiver be found where a party fails to raise an issue despite a full and fair opportunity to do so? | 018214.docx | LEGALEASE-00162989-LEGALEASE-00162990 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9836 | Bottero v. Great Atl. & Pac. Tea Co., 316 Pa. Super. 62 | 307A+697 | In determining whether a court has ruled properly on a petition to open judgment, we have said the following: "A petition to open a judgment is an appeal to the court's equitable powers and is a matter for judicial discretion. McCoy v. Public Acceptance Corp., 451 Pa. 495, 305 A.2d 698 (1973); Hamborsky v. Magyar Presbyterian Church [78 Pa.Super. 519], supra. In considering a petition to open a judgment, the court may consider matters dehors the record. See Matlock v. Lipare, 243 Pa.Super. 167, 170-71, 364 A.2d 503, 504 (1976)." Kophazy v. Kophazy, 279 Pa.Super. 373, 375, 421 A.2d 246, 247 (1980). Moreover, we recognize that: "The criteria for opening a judgment of non pros are: (1) the petition must be timely filed; (2) the reason for the default reasonably explained or excused; and, (3) the facts constituting grounds for the cause of action be alleged." | The criteria for opening a judgment of non-pros are: the petition must be timely filed; the reason for default reasonably explained or excused; and facts constituting grounds for the cause of action must be alleged. | Will judgment non pros not be opened unless the petition for reopening is promptly filed? | 040666.docx | LEGALEASE-00163048-LEGALEASE-00163049 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9837 | Williams v. Pucinski, No. 01 C 5588, 2002 WL 1585571 | 307A+517.1 | Under Illinois law, voluntary dismissals and dismissals for want of prosecution are not considered final judgments on the merits until the statute of limitations and a one-year refiling period have expired. See 735 ILCS 5/13"217; see also Ill. S.Ct. R. 273; Harl v. City of LaSalle, 679 F.2d 123 (7th Cir.1982); S.C. Vaughan Oil Co. v. Caldwell, Troutt, & Alexander, 181 Ill.2d 489, 230 Ill.Dec. 209, 693 N.E.2d 338, 344 (1998). | Under Illinois law, voluntary dismissals and dismissals for want of prosecution are not considered final judgments on the merits until the statute of limitations and a one-year refiling period have expired. S.H.A. 735 ILCS 5/13-217. | Is a dismissal for want of prosecution not considered adjudication on merits? | 040756.docx | LEGALEASE-00163376-LEGALEASE-00163377 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 9838 | Kirschner v. Worden Orchard Corp., 48 Wash. App. 506 | 307A+697 | Subdivision (b)(2) of CR 41 is an administrative provision designed to clear the clerk's record of inactive cases. 4 L. Orland, Wash.Prac., Rules Practice " 5502, at 243 (3d ed. 1983). Dismissals on the clerk's motion for want of prosecution as a general rule cannot be vacated because any other view would render the rule provision ineffective.4 L. Orland, " 5502, at 243; Nicholson v. Ballard, 7 Wash.App. 230, 499 P.2d 212 (1972). However, if there is defective notice that the case will be dismissed, the dismissal may be vacated. 4 L. Orland; Eiden v. Snohomish Cy. Civil Serv. Comm'n, 13 Wash.App. 32, 533 P.2d 426 (1975). | Dismissal of an action on clerk of court's motion for want of prosecution may be vacated if there is defective notice that the case will be dismissed. CR 41(b)(2). | Can a dismissal of an action on a clerk of court's motion for want of prosecution be vacated if there is a defective notice that the case will be dismissed? | 040763.docx | LEGALEASE-00163457-LEGALEASE-00163458 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 9839 | Mohiuddin v. Doctors Billing & Mgmt. Sols., 196 Md. App. 439 | 307A+695 | The other problem following the dismissal of a pleading"that of whether the pleading may be amended"is resolved by the trial court either by adding, within the four corners of the order itself, the explicit words "with leave to amend" or by leaving the order silent in that regard. There is no "in-between." Leave to amend is either expressly stated on the face of the order or it does not exist. If the dismissal order expressly grants "leave to amend," there is no final judgment and the case is not closed. At that point, the future of the case is governed by the procedural requirements imposed on the amending process by Rule 2"322. By contrast, unless the case is being kept alive by some other means, such as other parties or other still unresolved claims, a dismissal without the magic words "with leave to amend" closes the case finally and there is, therefore, nothing to amend. | If an order dismissing a pleading expressly grants leave to amend, there is no final judgment and the case is not closed; at that point, the future of the case is governed by the procedural requirements imposed on the amending process. Md.Rule 2-322. | "If an order dismissing a pleading expressly grants leave to amend, is there no final judgment and the case is not closed?" | 040940.docx | LEGALEASE-00163239-LEGALEASE-00163240 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 9840 | Lee v. Friedman, 637 N.E.2d 1318 | 307A+583 | The trial court's authority to dismiss for failure to prosecute arises from its administrative discretion in the conduct of its business. Gibbs v. Douglas M. Grimes, P.C. (1986), Ind.App., 489 N.E.2d 638, on rehearing, 491 N.E.2d 1004. This authority is further grounded in T.R. 41(E), which provides in part: Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty (60) days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. | Trial court's authority to dismiss for failure to prosecute arises from its administrative discretion in the conduct of its business and from civil procedure rule governing dismissal. Trial Procedure Rule 41(E). | Does the court's authority to dismiss for failure to prosecute arise from its administrative discretion in the conduct of its business? | 040946.docx | LEGALEASE-00163249-LEGALEASE-00163250 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 9841 | Wright v. Price, 871 S.W.2d 12 | 307A+583 | They involved mechanics liens, and the courts were construing " 429.170 which requires prosecution of mechanics "without unnecessary delay." We cannot quarrel with the trial court's conclusion that he should dismiss Wright's lawsuit because of the long periods of inactivity in prosecuting it and the case's age. Trial courts may, within sound discretion, dismiss a lawsuit for failure to prosecute a claim. Shirrell v. Missouri Edison Company, 535 S.W.2d 446, 448 (Mo.1976) | Trial courts may, within sound discretion, dismiss lawsuit for failure to prosecute claim. | "Can trial courts within sound discretion, dismiss lawsuit for failure to prosecute claim?" | 040952.docx | LEGALEASE-00163259-LEGALEASE-00163260 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9842 | State v. Bjergum, 771 N.W.2d 53 | 3.77E+11 | For example, the statement, "I am going to kill you" is objectively a threat to commit homicide, but the context may establish something else. Although the context might convey an actual intent to kill, it also may indicate anger, or frustration without an intent to kill, or even humor. Whether a statement is a threat "turns on whether the communication in its context" would reasonably cause "apprehension that its originator will act according to its tenor." Schweppe, 306 Minn. at 399, 237 N.W.2d at 613 (quotation omitted) (internal quotation marks omitted). We hold that declaring the intent to injure by an unlawful act constitutes a terroristic threat when the person who utters the statement recklessly disregards the risk of terrorizing another. We therefore reject Bjergum's argument that unintentional threats do not exist. | Whether a statement is a threat for purposes of the offense of terroristic threats turns on whether the communication in its context would reasonably cause apprehension that its originator will act according to its tenor. M.S.A. S 609.713(1). | What does the determination of whether a statement is a threat for the purposes of the offense of terroristic threats turn on? | 047029.docx | LEGALEASE-00163527-LEGALEASE-00163528 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 9843 | People v. Jackson, 178 Cal. App. 4th 590 | 3.77E+36 | Turning now to the question of prejudice, we conclude that the error is reversible. In finding defendant not guilty of the completed crime but guilty of attempt, the jury must have found that defendant made the blow your-head-off statements and that he intended them to be taken as threats but that one or both of the last two elements of the completed crime was missing, namely that William and Rosemary did not suffer sustained fear or that their fear was unreasonable under the circumstances. The instruction allowed the jury to find defendant guilty of attempted criminal threats under either of these factual scenarios. And the evidence would support either scenario. The jury might not have believed William and Rosemary when they stated they actually feared for their lives. Or, the jury might have concluded, since William and Rosemary were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear. The latter scenario is legally insufficient to support conviction of an attempted criminal threat and the former scenario is sufficient only upon finding that a reasonable person could have suffered fear in those circumstances, something the jury was not asked to decide. Since there is nothing in the record upon which to find that the verdict was actually based on a valid ground, we must reverse. (People v. Guiton (1993) 4 Cal.4th 1116, 1129, 17 Cal.Rptr.2d 365, 847 P.2d 45.) | A threat too outlandish reasonably to cause the victims to suffer sustained fear would be legally insufficient to support conviction of an attempted criminal threat. West's Ann.Cal.Penal Code SS 21a, 422. | "If a threat is too outlandish to reasonably cause the victims to suffer sustained fear, is it legally sufficient to support a conviction of attempted criminal threat?" | 047033.docx | LEGALEASE-00163535-LEGALEASE-00163536 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9844 | Walling v. Hardy Const., 247 Mont. 441 | 413+186 | The traditional test of employer/employee status is the right of the employer to control details of the work, not necessarily the exercise of that control. Carlson v. Cain (1983), 204 Mont. 311, 324, 664 P.2d 913, 919. An employer of an independent contractor controls the "end result" of the contractor's work, while control of the "means" by which the work is accomplished indicates that the worker is an employee. Johnson v. Department of Labor & Industry (1989), 240 Mont. 288, 292-93, 783 P.2d 1355, 1358. Without destroying independent contractor status, the owner or general contractor "is entitled to as much control of the details of the work as is necessary to ensure that he gets the end result from the contractor that he bargained for." 1C A. Larson, Workmen's Compensation Law " 44.20, at 8-57 (1990). | Traditional test of employee status for workers' compensation purposes is right of employer to control details of work, not necessarily actual exercise of that control; employer of independent contractor controls end result of contractor's work, while control of means by which work is accomplished indicates that worker is employee. | Does the employer of an independent contractor control the end result or the means by which the work is accomplished? | Workers' Compensation Memo 734 - C - ANC_67234.docx | ROSS-003281799-ROSS-003281800 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 9845 | Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494 | 25T+182(2) | Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. "The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." Cornell & Co. v. Barber & Ross Co., 360 F.2d 512, 513, 513 (D.C.Cir.1966) (footnotes omitted); accord Burton-Dixie Corp. v. Timothy McCarthy Const. Co., 436 F.2d 405, 407-08 (5th Cir.1971). As this court noted in E.C. Ernst, Inc. v. Manhattan Const. Co., 559 F.2d 268, 269 (5th Cir.1977), "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial.... Substantially invoking the litigation machinery qualifies as the kind of prejudice ... that is the essence of waiver." | Waiver of arbitration will be found when party seeking arbitration substantially invokes judicial process to detriment or prejudice of the other party. | Does waiver of arbitration occur when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party? | 008080.docx | LEGALEASE-00165016-LEGALEASE-00165018 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9846 | Let's Go Aero v. Cequent Performance Prod., 78 F. Supp. 3d 1363 | 25T+184 | Section 4 of the FAA provides the Court with jurisdiction to determine whether parties have agreed to arbitrate a dispute. 9 U.S.C. " 4. The Tenth Circuit, however, has limited the Court's power by holding that "where the parties agree to arbitrate in a particular forum, only a district court in that forum has authority to compel arbitration under [Section] 4 of the FAA. Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1219"20 (10th Cir.2005). In this case, the parties' Settlement Agreement provides that arbitration is to take place in Chicago, Illinois (ECF No. 29"4 at 10, Settlement Agreement) which is located within the United States District Court for the Northern District of Illinois. The Tenth Circuit subsequently clarified that its holding in Ansari applies only to venue. 1mage Software, Inc. v. Reynolds & Reynolds, Co., 459 F.3d 1044, 1054"55 (10th Cir. 2006). Here, Plaintiff objects to Defendant's attempt to compel arbitration. (ECF No. 38 at 13 n.4.) | Where parties to contract have agreed to arbitrate disputes in a particular forum, only federal district court in that forum has authority to compel arbitration under Federal Arbitration Act (FAA). 9 U.S.C.A. S 4. | "When parties to contract have agreed to arbitrate disputes in a particular forum, does only the district court in that forum has authority to compel arbitration?" | Alternative Dispute Resolution - Memo 880 - RK_67485.docx | ROSS-003282688-ROSS-003282690 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9847 | Shak v. JPMorgan Chase & Co., 156 F. Supp. 3d 462 | 29T+641 | Ordinarily, monopoly power is established through proof that the defendant has a "large percentage share of the relevant market." Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 227 (2d Cir.2006). Although plaintiffs do not expressly abandon this means of proof, they argue that such a showing is "unnecessary when a section 2 claim is based on "direct evidence of anticompetitive effects," " Pl. Br. 31 (quoting In re Crude Oil, 913 F.Supp.2d at 51), and their opposition to JP Morgan's motion to dismiss largely relies on this alternative approach. JP Morgan, for its part, disputes that direct evidence of anticompetitive effects"i.e., control of prices or exclusion of competitors"can alone suffice to show monopoly power. In any event, JP Morgan argues, "even if a plaintiff pleads direct evidence of market control"rather than indirect evidence of control in the form of market share"it must still plead a relevant market," and, JP Morgan asserts, plaintiffs have not done so here. Def. Reply Br. 16 (citing Heerwagen, 435 F.3d at 229). | Ordinarily, for purposes of a claim of trade monopolization under the Sherman Act, monopoly power is established through proof that the defendant has a large percentage share of the relevant market. Sherman Act S 2, 15 U.S.C.A. S 2. | Is monopoly power established through proof that the defendant has a large percentage share of the relevant market? | 013628.docx | LEGALEASE-00164248-LEGALEASE-00164249 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9848 | Roesler v. Roesler, 396 S.C. 100 | 135+4(2) | The term "reside" as used in this section is "equivalent in substance to "domicile." " Gasque v. Gasque, 246 S.C. 423, 426, 143 S.E.2d 811, 812 (1965). Domicile "means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning." Id. "The true basis and foundation of domicile is the intention, the quo animo, of residence." Id. | "Domicile" means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning. | Is domicile a place where person has a permanent home and an intention of returning? | 014583.docx | LEGALEASE-00164230-LEGALEASE-00164231 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 9849 | State v. Carpenter, 155 N.C. App. 35 | 350H+1218 | The Vardiman court rejected those arguments and upheld the constitutionality of the habitual impaired driving statute. Id. at 383, 552 S.E.2d at 699. Because we conclude that the logic of Vardiman applies with equal force here, we hold that the habitual misdemeanor assault statute does not violate the United States Constitution or the North Carolina Constitution provisions against double jeopardy. | The habitual misdemeanor assault statute does not violate the United States Constitution or the North Carolina Constitution provisions against double jeopardy; the statute does not impose punishment for previous crimes, but imposes an enhanced punishment for behavior occurring after the enactment of the statute. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, S 19; West's N.C.G.S.A. S 14-33.2. | Does the habitual misdemeanor assault statute violate the Constitution against double jeopardy? | Double Jeopardy - Memo 1220 - C - RF_67358.docx | ROSS-003292736 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 9850 | Litschewski v. Dooley, 71 F. Supp. 3d 977 | 135H+1 | The Fifth Amendment's Double Jeopardy Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994). The guarantee against double jeopardy serves as a restraint on courts from imposing more than one punishment for the same offense. Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The Double Jeopardy Clause further protects the accused from "attempts to secure additional punishment after a prior conviction and sentence." Brown v. Ohio, 432 U.S. at 166, 97 S.Ct. at 2225. | The Fifth Amendment's Double Jeopardy Clause prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does double jeopardy clause prohibit a second prosecution for the same offense after conviction? | Double Jeopardy - Memo 853 - C - NS_67642.docx | ROSS-003292379-ROSS-003292380 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9851 | United States v. Modanlo, 762 F.3d 403 | 135H+59 | For most purposes, including those relevant to the matter at bar, a criminal defendant is put in jeopardy and trial begins " "when a jury is empaneled and sworn" or, in a nonjury trial, "when the court begins to hear evidence." " DeLoach v. Lorillard Tobacco Co., 391 F.3d 551, 562 (4th Cir.2004) (quoting Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). The provisions of Rules 4(b)(2) and 4(b)(3) make clear that once a criminal trial has begun, all stages are to be completed before an appeal can be taken of any final decision incorporated within or accompanying the judgment. | For most purposes, a criminal defendant is put in jeopardy and trial begins when a jury is empaneled and sworn or, in a nonjury trial, when the court begins to hear evidence. U.S.C.A. Const.Amend. 5. | Will a criminal defendant be put in jeopardy when the court begins to hear evidence? | 016677.docx | LEGALEASE-00165157-LEGALEASE-00165158 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 9852 | Com. v. Young, 35 A.3d 54 | 135H+59 | he Double Jeopardy Clause "protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction and multiple punishments for the same offense." Commonwealth v. McCord, 700 A.2d 938, 941 (Pa.Super.1997). However, the constitutional prohibition against double jeopardy does not apply unless jeopardy attaches. See Commonwealth v. Ortega, 995 A.2d 879, 887 (Pa.Super.2010). In Pennsylvania, jeopardy attaches when a defendant stands before a tribunal where guilt or innocence will be determined. Id. In a criminal jury trial, this occurs when the jury is sworn. Id. | For purposes of the constitutional prohibition against double jeopardy, jeopardy attaches when a defendant stands before a tribunal where guilt or innocence will be determined; in a criminal jury trial, this occurs when the jury is sworn. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 10. | Will jeopardy attach when a defendant stands before a tribunal where guilt or innocence will be determined? | 016681.docx | LEGALEASE-00165161-LEGALEASE-00165162 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 9853 | Jesuit Coll. Preparatory Sch. v. Judy, 231 F. Supp. 2d 520 | 141E+963 | Student at private high school had no fundamental due process right to participate in extracurricular activities with public schools, and thus, state public high school interscholastic league's exclusion of private schools did not violate the student's due process rights. U.S.C.A. Const.Amend. 14. | Student at private high school had no fundamental due process right to participate in extracurricular activities with public schools, and thus, state public high school interscholastic league's exclusion of private schools did not violate the student's due process rights. U.S.C.A. Const.Amend. 14. | Can schools classify between public and nonpublic schools in regard to athletic associations without violating the Equal Protection clause? | 017286.docx | LEGALEASE-00164302-LEGALEASE-00164303 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 9854 | Farmland Indus. v. Bittner, 920 S.W.2d 581 | 156+54 | However, one cannot set up another's act or conduct as the ground of an estoppel when he knew or had the same means of knowledge as the other to the truth. Sprouse, 889 S.W.2d at 911. There can also be no estoppel when acquiescence by all concerned is due to a common mistake. Sutorius v. Mayor, 350 Mo. 1235, 170 S.W.2d 387, 396 (1943). | One cannot set up another's act or conduct as ground of estoppel when he knew or had same means of knowledge as the other to truth. | Can one set up another's act or conduct as the ground of an estoppel when he had the same means of knowledge as the other to the truth? | Estoppel - Memo 315 - C - CSS_67197.docx | ROSS-003296604-ROSS-003296605 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 9855 | Noel v. Norris, 336 F.3d 648 | 92+4837 | Because clemency is extended mainly as a matter of grace, and the power to grant it is vested in the executive prerogative, it is a rare case that presents a successful due process challenge to clemency procedures themselves. See Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 280"81, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). On the other hand, if the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated. See Young v. Hayes, 218 F.3d 850, 853 (8th Cir.2000). | Because clemency is extended mainly as a matter of grace, and the power to grant it is vested in the executive prerogative, it is a rare case that presents a successful due process challenge to clemency procedures themselves. U.S.C.A. Const.Amend. 14. | Is clemency vested in the executive? | Pardon and Parole - Memo 2 - RK_67517.docx | ROSS-003294770-ROSS-003294771 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 9856 | Putnam v. State, 245 Ga. App. 95 | 135H+99 | Putnam contends the trial court erred in denying his motion for discharge and acquittal because no manifest necessity existed for declaring a mistrial. One may not be prosecuted for offenses for which one was tried in a former prosecution if the former prosecution was "[t]erminated improperly after the jury was impaneled and sworn." OCGA " 16-1-8(a)(2). "A trial is improperly terminated if there was no manifest necessity for declaring a mistrial. Manifest necessity exists only under urgent circumstances." (Citations and punctuation omitted.) Jefferson v. State, 224 Ga.App. 8, 9, 479 S.E.2d 406 (1996). | A trial is improperly terminated, within meaning of statute barring prosecution for same offenses as in prior prosecution if prior prosecution was "improperly terminated" after jury was impaneled and sworn, if there was no manifest necessity for declaring a mistrial, and manifest necessity exists only under urgent circumstances. O.C.G.A. S 16-1-8(a)(2). | Is a criminal trial improperly terminated if no manifest necessity for declaring a mistrial existed? | Pretrial Procedure - Memo 12173 - C - TM_67210.docx | ROSS-003280980-ROSS-003280981 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 9857 | People v. Edwards, 388 Ill. App. 3d 615 | 135H+99 | Notwithstanding these factors, the determination of whether manifest necessity warrants a mistrial is based on the facts of each case and is left to the sound discretion of the trial court. LaFond, 343 Ill.App.3d at 985"86, 278 Ill.Dec. 800, 799 N.E.2d 518. As the Supreme Court has explained, the manifest necessity standard "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. | The determination of whether manifest necessity warrants a mistrial that does not violate the prohibition against double jeopardy is based on the facts of each case and is left to the sound discretion of the trial court. U.S.C.A. Const.Amend. 5; S.H.A. Const. Art. 1, S 10. | Is the determination of the manifest necessity for a mistrial a matter of discretion for the trial court? | 041010.docx | LEGALEASE-00164289-LEGALEASE-00164290 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 9858 | Steward v. Colonial Cas. Ins. Co., 143 S.W.3d 161 | 307A+583 | A trial court's power to dismiss a suit for want of prosecution originates from two sources: (1) Texas Rule of Civil Procedure 165a and (2) the trial court's inherent authority. Tex.R. Civ. P. 165a; Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999); Binner v. Limestone County, 129 S.W.3d 710, 712 (Tex.App.-Waco 2004, pet. filed). A trial court may dismiss a suit under Rule 165a when (1) a party fails to appear for a trial or hearing or (2) when a suit is not disposed of within the time standards given by the Supreme Court. Tex.R. Civ. P. 165a(1), (2); Binner, 129 S.W.3d at 712. Independent of the rules of civil procedure, a trial court may also dismiss a suit under the inherent authority given to it by common law.Villarreal, 994 S.W.2d at 630; Binner, 129 S.W.3d at 712. Failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal. Villarreal, 994 S.W.2d at 630. | Independent of rules of civil procedure, trial court may dismiss suit under inherent authority given to it by common law. | Can a court dismiss suit under inherent authority given to it by common law? | 041071.docx | LEGALEASE-00164571-LEGALEASE-00164572 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9859 | In re APB Online, 259 B.R. 812 | 349A+10 | Whether the transaction involves a lease or disguised sale under Connecticut law depends on the intention of the parties as determined by the facts of each case. Granite Equip. Leasing Corp. v. Acme Pump Co., 335 A.2d 294, 296 (Conn.1973); see Tishman Equip. Leasing, Inc. v. Levin, 152 Conn. 23, 202 A.2d 504, 507 (1964) (discussing pre-UCC law). The Court must look beyond the form to the substance of the agreement, id.; Tennant Co. v. Martin's Landscaping, Inc., 40 Conn.Supp. 475, 515 A.2d 665, 667 (1986), and may consider the surrounding negotiations. General Elec. Capital Corp. v. Palutsis, No. 94"C"3782, 1995 WL 263459 at (N.D.Ill. May 2, 1995)(applying Connecticut law); Tishman Equip. Leasing, Inc. v. Levin, 202 A.2d at 507; Delta Leasing Servs. Corp. v. Gentile, No. CV"88"0097669, 1994 WL 76851 at (Conn.Super.Ct. Mar. 1, 1994); Oxford Resources Corp. v. Burdo Painting, Inc., No. CV"91"280005, 1992 WL 204691 at (Conn.Super.Ct. Aug. 19, 1992); see In re Leasing Consultants, Inc., 486 F.2d 367, 373 (2d Cir.1973)(in determining whether a transaction involves a "true lease" or a disguised security interest, the court may consider factors outside the lease as well as the contents of the lease). | Under Connecticut law, when deciding whether transaction constitutes true "lease" or disguised sale with security agreement, court must look beyond form to substance of parties' agreement, and may consider parties' surrounding negotiations. | "When should a court look beyond form to substance of parties' agreement, and consider parties' surrounding negotiations?" | Secured Transactions - Memo 61 - C - SHB_67315.docx | ROSS-003281309-ROSS-003281310 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 9860 | Lisle v. Com., 290 S.W.3d 675 | 352H+76 | Following Apprendi, the Kentucky Supreme Court held in Dixon v. Commonwealth, 263 S.W.3d 583, 590 (Ky.2008), that "serious physical injury" is an element which must be proved beyond a reasonable doubt in cases where the Commonwealth seeks to have rape offenses enhanced to Class A felonies. Our Court had previously followed Apprendi in similar cases, for example, holding that "possession of a firearm" was an element of the offense for the firearms enhancement statute. Johnson v. Commonwealth, 105 S.W.3d 430, 435 (Ky.2003). | Serious physical injury is an element which must be proved beyond a reasonable doubt in cases where the Commonwealth seeks to have rape offenses enhanced to Class A felonies. | Is physical injury an element of rape? | 043149.docx | LEGALEASE-00164902-LEGALEASE-00164903 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 9861 | Baez v. State, 486 S.W.3d 592 | 211+1581 | The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by a statute of limitations. See Garcia v. State, 981 S.W.2d 683, 686 (Tex.Crim.App.1998). However, continuous sexual abuse has no period of limitations. Tex.Code Crim. Proc. Ann. art. 12.01(1)(D) (West 2015). The Texas Legislature "created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." Michell v. State, 381 S.W.3d 554, 561 (Tex.App."Eastland 2012, no pet.). "However, although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." Id.; Tex. Penal Code " 21.02(d) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."). Also, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." Id. | Although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was 30 or more days in duration. Tex. Penal Code Ann. S 21.02(d). | What is continuous sexual abuse? | 043155.docx | LEGALEASE-00164904-LEGALEASE-00164905 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 9862 | Orlando Utilities Comm'n v. Milligan, 229 So. 2d 262 | 371+2275 | Since Utility is a municipally owned and operated public utility, its real property is exempt from ad valorem taxation if the property is held and used exclusively for municipal purposes. This is an "exemption" only, not an "immunity" from taxation. Exemption presupposes the existence of a power to tax whereas immunity connotes the absence of that power. The state and its political subdivisions, like a county, are immune from taxation since there is no power to tax them. Park-N-Shop, Inc. v. Sparkman, Fla.1957, 99 So.2d 571. A municipality can be taxed but may be exempt if it meets the statutory criteria for exemption. | State and its political subdivisions, like a county, are immune from taxation since there is no power to tax them, but municipality can be taxed but may be exempt if it meets statutory criteria for exemption. Laws 1923, c. 9861; F.S.A.Const.1885, art. 9, S 1; art. 16, S 16; F.S.A. S 192.06. | Why is a state and its political subdivisions immune from taxation? | Taxation - Memo 1250 - C - SS_67335.docx | ROSS-003293431 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 9863 | City & Cty. of Denver v. Bd. of Assessment Appeals of State of Colo., 782 P.2d 817 | 371+2311 | The constitutional and statutory provisions exempting public property from taxation requires but one condition and that is ownership by the public entity. Gunnison County v. Board of Assessment Appeals, 693 P.2d 400 (Colo.App.1984); Stewart v. City & County of Denver, 70 Colo. 514, 202 P. 1085 (1921). | Constitutional and statutory provisions exempting public property from taxation require but one condition and that is ownership by public entity. C.R.S. 39-3-101; Const. Art. 10, S 4. | What is the condition required for the constitutional and statutory provisions exempting public property from taxation? | Taxation - Memo 1262 - C - SS_67408.docx | ROSS-003278539-ROSS-003278540 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 9864 | People v. Davidson, 159 Cal. App. 4th 205 | 135H+52 | 91011 The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb ..." (See also Cal. Const., art. I, " 15.) Jeopardy attaches so as to invoke the principles of double jeopardy when a defendant is placed on trial on an accusatory pleading in a court of competent jurisdiction and a jury is impaneled or sworn. (Bunnell v. Superior Court (1975) 13 Cal.3d 592, 601, 119 Cal.Rptr. 302, 531 P.2d 1086.) The Double Jeopardy Clause precludes a defendant from being tried a second time on a charge for which the defendant was acquitted. It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. (People v. Izaguirre (2007) 42 Cal.4th 126, 133, 64 Cal.Rptr.3d 148, 164 P.3d 578.) | Jeopardy attaches so as to invoke the principles of double jeopardy when a defendant is placed on trial on an accusatory pleading in a court of competent jurisdiction and a jury is impaneled or sworn. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | Would a jeopardy attach to invoke the principles of double jeopardy? | 014690.docx | LEGALEASE-00165688-LEGALEASE-00165689 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9865 | Gaskin v. State, 856 So. 2d 363 | 135H+59 | Neither side raises any issues concerning the selection manner and method utilized by the trial court. However, as stated above, the State has raised the question of whether the jury was ever administered the official oath at the first proceeding because the court order gives one version of what happened and the transcript gives another. The protection against double jeopardy does not attach in a criminal proceeding until after the jury is selected and sworn to try the case. See Jones v. State, 398 So.2d 1312, 1314 (Miss.1981). Therefore, before we can determine if Gaskin may raise this issue for the first time on appeal and if his constitutional right to be free from multiple prosecutions for the same offense was violated, we must first determine whether the jury had been sworn and whether the protection against double jeopardy had attached. | The protection against double jeopardy does not attach in a criminal proceeding until after the jury is selected and sworn to try the case. U.S.C.A. Const.Amend. 5. | Does the protection against double jeopardy attach in a proceeding after jury is selected and sworn to try the case? | Double Jeopardy - Memo 1076 - C - TM_68213.docx | ROSS-003297969-ROSS-003297970 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 9866 | Severance v. Commonwealth, 799 S.E.2d 329 | 135H+1 | "The Fifth Amendment guarantee against double jeopardy ... consists of three separate constitutional protections." Andrews v. Commonwealth, 280 Va. 231, 279, 699 S.E.2d 237, 264 (2010). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."Id. (emphasis added) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). | The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections: it protects against a second prosecution for the same offense after acquittal, it protects against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense. U.S. Const. Amend. 5. | Does law protect against multiple punishments for the same offense? | 016076.docx | LEGALEASE-00165825-LEGALEASE-00165826 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 9867 | State v. Elkinton, 56 Wis. 2d 497 | 135H+95.1 | The trial court held that "jeopardy has attached," and the defendant, placed in jeopardy at a first trial, cannot be tried again. Constitutional provisions against double jeopardy do not prohibit retrial after mistrial, because of the continuity of the proceeding or jeopardy involved. Discussing this "theory of the continuity of the proceeding," this court has explained: ". . . This theory contemplates one legal trial and there is but one continuing jeopardy until the defendant has had a valid trial free from reversible error for the offense charged. The defendant is entitled to be legally convicted or acquitted and until that stage is reached continuity of the jeopardy exists. The second trial because of error or invalidity of the first trial is but the continuation in legal contemplation of the criminal proceeding and there is no second or double jeopardy. . . . It is immaterial whether the new trial is granted on the motion of the defendant or on the court's motion or whether the reason is merely irregularity or invalidity of the proceedings. . . | Constitutional provisions against double jeopardy do not prohibit retrial after mistrial, since continuity of proceeding or of jeopardy is involved. W.S.A.Const. art. 1, S 8; U.S.C.A.Const. Amend. 5. | "Do constitutional provisions against double jeopardy not prohibit retrial after mistrial, since continuity of proceeding or of jeopardy is involved?" | Double Jeopardy - Memo 720 - C - BP_68675.docx | ROSS-003292605-ROSS-003292607 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9868 | German v. Superior Court, 91 Cal. App. 4th 58 | 135H+100.1 | The double jeopardy clause of the Fifth Amendment, as it applies to the states via the Fourteenth Amendment, precludes the prosecution of a criminal defendant for the same offense following an acquittal. (Montana v. Hall (1987) 481 U.S. 400, 402, 107 S.Ct. 1825, 95 L.Ed.2d 354; People v. Santamaria (1994) 8 Cal.4th 903, 910"911, 35 Cal.Rptr.2d 624, 884 P.2d 81.) Arguing his prior conviction for conspiracy to commit second degree murder was tantamount to an implied acquittal on the charge of conspiracy to commit first degree murder (the only conspiracy to commit murder charge recognized following Cortez) petitioner claims retrial on the conspiracy charge would violate double jeopardy prohibitions. | The double jeopardy clause of the Fifth Amendment, as it applies to the states via the Fourteenth Amendment, precludes the prosecution of a criminal defendant for the same offense following an acquittal. U.S.C.A. Const.Amends. 5, 14. | Is the Fifth Amendment applied to states through the Fourteenth Amendment? | Double Jeopardy - Memo 721 - C - BP_68041.docx | ROSS-003295090-ROSS-003295091 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9869 | McNair v. Hayward, 666 P.2d 321 | 135H+95.1 | The implementation of this simple principle is complicated when it must be applied to a second trial following a conviction that was vacated on appeal or on motion for new trial. Thus, it was established early in Utah law that double jeopardy was no barrier to a second trial when the defendant had moved for a new trial on the basis of errors in the first. State v. Kessler, 15 Utah 142, 49 P. 293 (1897). The best statement of the rationale for that position is State v. Jaramillo, 25 Utah 2d 328, 329, 481 P.2d 394, 395 (1971), where the Court said: Where the defendant has complained of errors that vitiate the prior proceedings and judgment and they are nullified at his request, he cannot then take the inconsistent position that there was a valid proceeding and judgment against him which constitute a former jeopardy. | Double jeopardy is no barrier to a second trial when defendant has moved for a new trial on basis of errors in first, but where evidence has been presented to jury and court aborts trial without consent of defendant and without some special necessity, double jeopardy is a bar to a second trial. U.C.A.1953, 77-1-6(2)(a); Const. Art. 1, S 12; U.S.C.A. Const.Amends. 5, 14. | Is a double jeopardy no barrier to a second trial when a defendant has moved for a new trial on a basis of errors? | Double Jeopardy - Memo 770 - C - NS_67775.docx | ROSS-003309548-ROSS-003309549 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 9870 | State v. Mazur, 101 Wis. 2d 306 | 135H+100.1 | United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). An appeal of a dismissal is barred, then, when a court evaluated the prosecution's evidence and determined that it was legally insufficient to sustain a conviction. United States v. Scott%, supra, at 97, 98 S.Ct. at 2197. Even where an acquittal is based upon legal rulings which are erroneous, a defendant may not be retried on the same offense. Sanabria v. United States, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978). | Even when acquittal is based upon legal rulings which are erroneous, defendant may not be retried on the same offense. U.S.C.A.Const. Amends. 5, 14; W.S.A.Const. Art. 1, S 8. | "Even when acquittal is based upon legal rulings which are erroneous, can a defendant not be retried on the same offense?" | 016316.docx | LEGALEASE-00165641-LEGALEASE-00165642 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 9871 | State v. Sanchez-Castro, 157 Idaho 647 | 135H+1 | "The double jeopardy clauses in the Idaho and federal constitutions prohibit putting one in jeopardy twice for the same crime. This protection applies not only to multiple punishments, but also to multiple prosecutions for the same crimes." State v. Manley, 142 Idaho 338, 343, 127 P.3d 954, 959 (2005). "There are two theories under which a particular offense may be determined to be a lesser included offense of a charged offense." State v. Curtis, 130 Idaho 522, 524, 944 P.2d 119, 121 (1997). | The double jeopardy clauses in the state and federal constitutions prohibit putting one in jeopardy twice for the same crime. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 13. | Does the double jeopardy clause in the state and federal constitutions prohibit putting one in jeopardy twice for the same crime? | 016408.docx | LEGALEASE-00165205-LEGALEASE-00165206 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9872 | State v. Fowler, 197 N.C. App. 1 | 135H+1 | "The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gardner, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense." State v. Crocker, 239 N.C. 446, 449, 80 S.E.2d 243, 245 (1954). This principle of double jeopardy, or former jeopardy, "benefits the individual defendants by providing repose; by eliminating unwarranted embarrassment, expense, and anxiety; and by limiting the potential for government harassment." Brunson, 327 N.C. at 249, 393 S.E.2d at 864."It benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. The objective is to allow the prosecution one complete opportunity to convict a defendant in a fair trial." Id. | The principle of double jeopardy, or former jeopardy, benefits the individual defendants by providing repose, by eliminating unwarranted embarrassment, expense and anxiety, and by limiting the potential for government harassment. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, S 19. | What is the principle of double jeopardy? | 016511.docx | LEGALEASE-00165329-LEGALEASE-00165330 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9873 | People v. Suarez, 40 A.D.3d 143 | 135H+1 | The Double Jeopardy Clause (U.S. Const., 5th Amend.) provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." It protects against three general governmental abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense (North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 1969). The Due Process Clause of the 14th Amendment extends these protections to the states (see Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 1969). The New York Constitution (art. I, 6) affords similar protection. However, "decisions by the U.S. Supreme Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law" (Garrett v. United States, 471 U.S. 773, 796, 105 S.Ct. 2407, 85 L.Ed.2d 764 1985 O Connor, J. concurring). Moreover, "permitting retrial is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to obtain a fair re adjudication of his guilt free from error" (Lockhart v. Nelson, 488 U.S. 33, 42, 109 S.Ct. 285, 102 L.Ed.2d 265 [1988] ). | Finality guaranteed by Double Jeopardy Clause is not absolute, but instead must accommodate societal interest in prosecuting and convicting those who violate law. U.S.C.A. Const.Amends. 5, 14. | Is the finality guaranteed by Double Jeopardy Clause absolute? | 016578.docx | LEGALEASE-00165395-LEGALEASE-00165396 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9874 | State v. Dennis, 153 S.W.3d 910 | 135H+1 | The double jeopardy clause of the United States Constitution protects defendants "from successive prosecutions for the same offense after an acquittal or conviction" and "from multiple punishments for the same offense." McTush, 827 S.W.2d at 186. Protection from multiple punishments " "is designed to ensure that the sentencing discretion of the courts is confined to the limits established by the legislature." " Id. (quoting Ohio v. Johnson, 467 U.S. 493, 498"99, 104 S.Ct. 2536, 2540"41, 81 L.Ed.2d 425 (1984)). "Double jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether cumulative punishments were intended by the legislature." Id. | Double jeopardy clause protects defendants from successive prosecutions for the same offense after an acquittal or conviction and from multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does double jeopardy clause protect against successive prosecution for the same offense after acquittal or conviction? | Double Jeopardy - Memo 950 - C - KS_67824.docx | ROSS-003282613-ROSS-003282614 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 9875 | In re Double G Trucking of the Arklatex, 432 B.R. 789 | 349A+10 | In examining the particular facts and circumstances pursuant to the statute, the key question is whether the economic realities of the transaction lead to the conclusion that the agreement is a disguised sale. Brankle Brokerage & Leasing, Inc. v. Volvo Fin. Servs. (In re Brankle Brokerage & Leasing, Inc.), 394 B.R. 906, 913 (Bankr.N.D.Ind.2008). The Court is required "to consider the overall import of the entire transaction, rather than particular bits and pieces of it." Id. | In deciding whether, under Arkansas's version of Uniform Commercial Code (UCC), transaction is lease or disguised security agreement, court is required to consider the overall import of the entire transaction, rather than particular bits and pieces of it. West's A.C.A. S 4-1-203. | "Should a court consider the overall import of an entire transaction, rather than particular bits and pieces of it?" | Secured Transactions - Memo 41 - C - PC_68070.docx | ROSS-003281264-ROSS-003281265 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 9876 | Lemke v. Ryan, 719 F.3d 1093 | 336H+194 | The Arizona Court of Appeals reasonably concluded that Petitioner could not carry his burden of demonstrating that the jury "necessarily decided" that he had not committed armed robbery. The court noted that "[t]he LeBlanc instruction prevents us from knowing whether the jury unanimously acquitted defendant of armed robbery or simply could not agree." Lemke, 141 P.3d at 416. Although the jury's silence on armed robbery constituted an implied acquittal of that charge for the purposes of the claim preclusion aspect of double jeopardy, it does not have an issue preclusive effect unless the record indicates that the jury necessarily decided the issue in Lemke's favor. See Schiro v. Farley, 510 U.S. 222, 236, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) ("We have in some circumstances considered jury silence as tantamount to an acquittal for double jeopardy purposes. Green v. United States, 355 U.S. 184, 190"191 [78 S.Ct. 221, 225"226, 2 L.Ed.2d 199 (1957)]; Price v. Georgia, 398 U.S., at 329, 90 S.Ct., at 1761. The failure to return a verdict does not have collateral estoppel effect, however, unless the record establishes that the issue was actually and necessarily decided in the defendant's favor."); see also United States v. Carothers, 630 F.3d 959, 964"65 (9th Cir.2011) (holding that the trial court's improper mistrial on simple possession barred retrial for that charge under double jeopardy but carried no issue-preclusive effect with respect to retrial for a greater inclusive charge). Here, the record did not establish that the jury had necessarily decided that Lemke did not commit armed robbery. | The failure to return a verdict does not have collateral estoppel effect unless the record establishes that the issue was actually and necessarily decided in the defendant's favor. | "While in some circumstances jury silence can be taken as an acquittal for double jeopardy purposes, does the failure to return a verdict not have a collateral estoppel effect?" | Double Jeopardy - Memo 512 - C - SN_68291.docx | ROSS-003291923-ROSS-003291925 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9877 | United States v. Wittig, 575 F.3d 1085 | 135H+100.1 | Double jeopardy "protects a man who has been acquitted from having to "run the gantlet" a second time." Ashe, 397 U.S. at 446, 90 S.Ct. 1189 (quoting Green, 355 U.S. at 190, 78 S.Ct. 221). Included among double jeopardy's protections is the doctrine of collateral estoppel. Id. at 445, 68 S.Ct. 1443; see also United States v. Oppenheimer, 242 U.S. 85, 88, 37 S.Ct. 68, 61 L.Ed. 161 (1916) (recognizing criminal collateral estoppel). Collateral estoppel is a principle of finality. It means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443, 90 S.Ct. 1189. To apply the doctrine here, we must ask two questions: First, is the issue the defendants wish to foreclose from trial the actual basis for their prior acquittal? Second, is the same issue necessary to the prosecution's case in this proceeding? See id. at 444"45, 90 S.Ct. 1189. If both questions yield affirmative answers, collateral estoppel bars retrial of the issue. | Fifth Amendment's double jeopardy clause protects a man who has been acquitted from having to "run the gantlet" a second time. U.S.C.A. Const.Amend. 5. | "Does the Fifth Amendment's double jeopardy clause protect a man who has been acquitted from having to ""run the gantlet"" a second time?" | Double Jeopardy - Memo 608 - C - PC_68386.docx | ROSS-003282391-ROSS-003282392 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 9878 | State v. Fowler, 197 N.C. App. 1 | 135H+1 | "The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gardner, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense." State v. Crocker, 239 N.C. 446, 449, 80 S.E.2d 243, 245 (1954). This principle of double jeopardy, or former jeopardy, "benefits the individual defendants by providing repose; by eliminating unwarranted embarrassment, expense, and anxiety; and by limiting the potential for government harassment."Brunson, 327 N.C. at 249, 393 S.E.2d at 864. "It benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. The objective is to allow the prosecution one complete opportunity to convict a defendant in a fair trial." Id. | The principle of double jeopardy, or former jeopardy, benefits the individual defendants by providing repose, by eliminating unwarranted embarrassment, expense and anxiety, and by limiting the potential for government harassment. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, S 19. | What is the principle of former jeopardy? | Double Jeopardy - Memo 660 - C - SHB_68437.docx | ROSS-003280725-ROSS-003280726 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9879 | Maya v. Centex Corp., 658 F.3d 1060 | 170B+3587(1) | We agree with the district court that plaintiffs have not established how defendants' actions necessarily result in foreclosure, nor do plaintiffs' complaints allege that the decreased value is caused by the risk posed by their neighbors (even absent foreclosures). Nevertheless, we conclude that, in the circumstances presented, plaintiffs should be permitted to amend their complaint. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ., 616 F.3d 963, 972 (9th Cir.2010). | Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment. | Is a dismissal without leave to amend proper when it is clear that the complaint could not be saved by any amendment? | 040817.docx | LEGALEASE-00166178-LEGALEASE-00166179 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9880 | Twp. of Holmdel v. New Jersey Highway Auth., 190 N.J. 74 | 371+2311 | Local governments are especially dependent on property taxes for revenue, and significant tax exemptions place added burdens on private property owners who are required to fill the tax-gap created by governmental immunities. See Moonachie, supra, 38 N.J. at 423, 185 A.2d 207 ("[Tax immunities] cast [ ] a proportionately greater share of support of state and local government upon the private property owner"). "Accordingly[,] claims for tax exemptions have to stand scrutiny," Washington Twp., supra, 16 N.J. at 44, 106 A.2d 4, and tax immunity for government agencies should be denied if the property benefiting from the tax exemption is not "within the scope" of the agency's statutory purpose, Moonachie, supra, 38 N.J. at 427, 185 A.2d 207. | Claims for tax exemptions have to stand scrutiny, and property tax immunity for government agencies should be denied if the property benefiting from the tax exemption is not within the scope of the agency's statutory purpose. | Should claims for tax exemption stand scrutiny to show that they serve a public purpose? | 046515.docx | LEGALEASE-00166158-LEGALEASE-00166159 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 9881 | Elkins v. State, 754 N.E.2d 643 | 135H+100.1 | Whether the trial court's action constitutes acquittal for purposes of double jeopardy is not to be ascertained from the form of the judge's action, although the form of the order entered by the trial court should not be ignored, but rather by determining whether the substance of the ruling, whatever its label, actually represents resolution, correct or not, of some or all of the factual elements of the offense charged. Id. at 853. A judgment on the evidence entered pursuant to a defendant's motion on the grounds that the State had failed to prove venue is an acquittal. Id. at 853. A judgment of acquittal, even where it is based upon an egregiously erroneous foundation, stops the retrial of the defendant. Id. at 892. | A judgment of acquittal, even where it is based upon egregiously erroneous evidence, stops a defendant's retrial. | "Does a judgment of acquittal, even where it is based upon egregiously erroneous evidence, stop a defendant's retrial?" | Double Jeopardy - Memo 542 - C - KG_68321.docx | ROSS-003282331-ROSS-003282332 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 9882 | Gov't of Virgin Islands v. Briggs, 155 F. Supp. 2d 455 | 135H+100.1 | Thus, double jeopardy protections bar the government's appeal, under 48 U.S.C. " 1493, because "[a]n acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge." Arizona v. Rumsey, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). The government argues on appeal that the trial judge misinterpreted the law. Even assuming that the judge did incorrectly apply the law, our conclusion remains the same. See Rumsey, 467 U.S. at 211, 104 S.Ct. 2305 ("Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits."). | Reliance on an error of law does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. U.S.C.A. Const.Amend. 5; 48 U.S.C.A. S 1493. | Does reliance on an error of law not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits? | Double Jeopardy - Memo 543 - C - KG_68322.docx | ROSS-003281365-ROSS-003281366 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9883 | State v. DeLuca, 208 N.J. Super. 422 | 135H+1 | Each case, therefore, must be considered in light of its own particular facts and circumstances, in order that a court may determine whether a bar of double jeopardy should be applied. Here, the critical question is whether the motor vehicle infraction of driving while intoxicated, in violation of N.J.S.A. 39:4-50, is the "same offense", for double jeopardy purposes, as the criminal charge of death by auto, a violation of N.J.S.A. 2C:11-5. Initially, it must be noted that, at present, it is clear that principles of double jeopardy are applicable to both motor vehicle and criminal offenses. State v. Dively, supra, 92 N.J. at 586, 458 A.2d 502. See also State v. Calvacca, 199 N.J.Super. 434, 438, 489 A.2d 1199 (App.Div.1985); State v. Tropea, 78 N.J. 309, 314-316, 394 A.2d 355 (1978); State v. Lanish, 103 N.J.Super. 441, 444, 247 A.2d 492 (App.Div.1968), aff'd o.b., 54 N.J. 93, 253 A.2d 545 (1969). Cf. State v. Laird, 25 N.J. 298, 302-303, 135 A.2d 859 (1957). | Each case must be considered in light of its own particular facts and circumstances for court to determine whether bar of double jeopardy should be applied. U.S.C.A. Const.Amend. 5. | Should each double jeopardy claim be considered in light of particular facts of a case? | 015784.docx | LEGALEASE-00166510-LEGALEASE-00166511 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 9884 | State v. Casas, 792 A.2d 737 | 135H+97 | [When a mistrial is at the defendant's behest, double jeopardy ordinarily does not preclude the retrial of a criminal case. The recognized exceptions to this rule are situations in which the defendant was provoked into requesting a mistrial because of prosecutorial misconduct that was intended to goad defendant into moving to pass the case. In those situations, principles of double jeopardy preclude a second trial. State v. McIntyre, 671 A.2d 806, 807 (R.I.1996); State v. Mallett, 604 A.2d 1263, 1264-65 (R.I.1992). This Court has steadfastly rejected requests to expand, on state constitutional grounds, the intentional goading rule to encompass other instances of prosecutorial misconduct and have continued to adhere to the rule announced in Oregon v. Kennedy, 456 U.S. 667, 675-76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416, 424-25 (1982), that unless the misconduct was intended to goad defendant into moving for a mistrial, a second trial is not forbidden. McIntyre, 671 A.2d at 807. | Principles of double jeopardy will preclude a second trial where the defendant was provoked into requesting a mistrial because of prosecutorial misconduct that was intended to goad defendant into moving to pass the case. U.S.C.A. Const.Amend. 5. | Are there circumstances in which a mistrial does not preclude a second trial? | Double Jeopardy - Memo 578 - C - SHB.docx | LEGALEASE-00056360-LEGALEASE-00056361 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9885 | Matter of Armando Gerstel, 65 B.R. 602 | 349A+10 | The intent of the parties governs whether a particular document or transaction creates a security interest or an assignment. Hassett v. Revlon, Inc. (In re OPM Leasing Services, Inc.), 23 B.R. 104, 115"16 (Bkrtcy., S.D.N.Y.1982); See also 4 Anderson, Uniform Commercial Code 31 (1973); 4 Fla.Jur.2d, Assignments Section 13. | Intent of parties governs whether particular document or transaction creates security interest, to which UCC filing requirements apply, or merely an assignment. West's F.S.A. S 679.102(1). | Does intent of parties govern whether a particular transaction creates a security interest or assignment? | 042672.docx | LEGALEASE-00167011-LEGALEASE-00167012 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 9886 | Sharer v. Creative Leasing, 612 So. 2d 1191 | 349A+10 | We hold that in order to be viewed as creating a security interest, the lease agreement must provide the lessee with some ownership of the leased property. In LMV Leasing, Inc. v. Conlin, 805 P.2d 189 (Utah App.1991), in examining a substantially similar lease agreement, the Utah Court of Appeals held:"Despite the presence of several factors [that indicated the lease may have been intended as a security agreement, such as provisions requiring the lessee to provide insurance and to pay taxes as well as repair and maintenance costs, provisions providing for acceleration and resale of the leased vehicles, rental payments roughly equivalent to the cost of the vehicle plus interest, and provisions excluding any warranties of fitness for purpose, merchantability, and quality], other aspects of the agreement demonstrate the clear intention of the parties that the agreement was nevertheless intended to be a true lease agreement. Most notably, there is no provision, either explicit or implicit, for transfer of ownership of the vehicles to [the lessee]. "The prime essential distinction between a lease and a conditional sale is that in a lease the lessee never owns the property." Ford v. Rollins Protective Serv. Co., 171 Ga.App. 882, 322 S.E.2d 62, 64 (1984) (emphasis added). The agreement specifically provides for retention of title in [the lessor], which is the "paramount attribute of a lease." Carlson v. Tandy Computer Leasing, 803 F.2d 391, 395 (8th Cir.1986). Moreover, the agreement includes no alternative provision for transfer of ownership such as an option to purchase at nominal or no additional consideration. Nor is there any indication that the lessee would receive the functional equivalent of ownership. | In order to be viewed as creating security interest to which Article 9 of the Uniform Commercial Code (UCC) would be applicable, lease agreement must provide lessee with some ownership of leased property. Code 1975, SS 7-1-201(37), 7-9-101 to 7-9-507. | Should a purported lease provide a lessee with some ownership of leased property to be viewed as creating a security interest? | 042695.docx | LEGALEASE-00166711-LEGALEASE-00166712 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9887 | Mobil Oil Corp. v. Town of Huntington, 85 Misc. 2d 800 | 371+2016 | Of more genuine substance are plaintiff's contentions that the spillage law constitutes an unlawful revenue producing measure and is in violation of the equal protection clause of the Constitution. The power of taxation is vested exclusively in the statelegislature (United States Steel Corporation v. Gerosa, 7 N.Y.2d 454, 199 N.Y.S.2d 475, 166 N.E.2d 489) and municipalities have no inherent power of taxation (County Securities v. Seacord, 278 N.Y. 34, 15 N.E.2d 179; Society of Plastics Indus. Inc. v. City of New York, 68 Misc.2d 366, 326 N.Y.S.2d 788). The power to assess and collect taxesmay be delegated to localities (Roosevelt Raceway, Inc. v. County of Nassau, 18 N.Y.2d 30, 271 N.Y.S.2d 662, 218 N.E.2d 539, mot. den., 18 N.Y.2d 720, 274 N.Y.S.2d 156, 220 N.E.2d 802, app. dism., 385 U.S. 453, 87 S.Ct. 614, 17 L.Ed.2d 510) but the delegationmust be made in express terms by a proper enabling act (see 16 McQuillin Municipal Corporations s 44.05; County Securities v. Seacord, supra). | Power to assess and collect taxes may be delegated to localities but delegation must be made in express terms by proper enabling act. | Can the power vested in legislature to tax be delegated without express terms of enabling act? | Taxation - Memo 1331 - C - KAD_68525.docx | ROSS-003322540-ROSS-003322541 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9888 | Hanek v. Cities of Clairton, 24 Pa. Cmwlth. 69 | 371+2016 | The time period (which must include more than one Tax period), for which Hanek claims entitlement to said credit, began on January 1, 1973, and continues through the present. To satisfy the second condition precedent, the ordinance(s) or resolution(s) levying the tax for said period had to have been adopted Prior to January 1, 1966, the effective date of the Enabling Act. Referring, once more, to Section 2 of Act No. 1135, but enlarging our point of focus, it is provided that "(t)he Board . . . Shall levy, annually, a tax". 24 P.S. s 588.2. (Emphasis added.) Where the legislature delegates the right to tax to a political subdivision, ""the grant of such right is to be strictly construed, and not extended by implication." | Where legislature delegates right to tax to political subdivision, grant of such right is to be strictly construed, and not extended by implication. | "Where the legislature delegates the right to tax to a political sub division, should grant of such right is to be strictly construed, and not extended by implication?" | Taxation - Memo 1347 - C - SBH_68541.docx | ROSS-003279062-ROSS-003279063 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9889 | People v. Austin, 93 Ill. App. 3d 495 | 181+1 | Forgery constitutes the intentional making, altering, issuing, delivery, or possession of a document, knowing it is fraudulent because it purports to be made by one who did not make it; such actions must occur with the intent to defraud. (Ill.Rev.Stat.1977, ch. 38, par. 17-3; People v. Henderson (1978), 71 Ill.2d 53, 57, 15 Ill.Dec. 654, 373 N.E.2d 1338.) Attempt theft constitutes, in part, any act that is a substantial step toward unlawfully obtaining control over property with intent to deprive the owner permanently of the use or benefit of the property. (Ill.Rev.Stat.1977, ch. 38, pars. 16-1 and 8-4.) We conclude that attempt theft is not a lesser included offense of forgery. There is a difference between forgery and theft. Forgery requires only the intent to defraud and is complete upon the issuance or delivery of a fraudulent document,while theft requires unlawfully obtaining control over the property or money of another. | Forgery constitutes the intentional making, altering, issuing, delivery or possession of a document, knowing it is fraudulent because it purports to be made by one who did not make it; such actions must occur with the intent to defraud. S.H.A. ch. 38, S 17-3. | What constitutes forgery? | 04799.docx | LEGALEASE-00077113-LEGALEASE-00077114 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9890 | Zopfi v. City of Wilmington, 273 N.C. 430 | 414+1006 | Zoning laws, when valid, are an exercise of the police power of the sovereign reasonably to regulate or restrict the use of private property to promote the public health, the public safety, the public morals or the public welfare. Thus,the power to zone is the power of the State and rests in the General Assembly originally. Schloss v. Jamison, 262 N.C. 108, 136 S.E.2d 691. There, it is subject to the limitations imposed by the Constitution upon the legislative power forbidding arbitrary and unduly discriminatory interference with the rights of property owners. | Zoning power of state is subject to limitations imposed by Constitution upon legislative power forbidding arbitrary and unduly discriminatory interference with rights of property owners. | Why are limitations imposed on the zoning power by the enabling statute? | 04115.docx | LEGALEASE-00077233-LEGALEASE-00077234 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 9891 | In re Gibraltar Res., 211 B.R. 216 | 38+31 | It is clear that insurance policy proceeds validly assigned elsewhere by a debtor are not property of the debtor's bankruptcy estate. Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition Inc.), 832 F.2d 1391, 1401 (5th Cir.1987); In re Moskowitz, 14 B.R. 677, 680"81 (Bankr.S.D.N.Y.1981). Further, if a valid assignment of insurance policy proceeds occurs prior to the beginning of the preference period, then such an assignment will not be considered a preference. Ebert, Trustee for Gibraltar Resources, Inc. v. BlackmaxDownhole Tools, Inc., 197 B.R. 246 (Bankr.N.D.Tex.1996), aff'd sub nom. Ebert v. Dailey Directional Services, 202 B.R. 586 (N.D.Tex.1996); Moskowitz, 14 B.R. at 682. A valid assignment requires "a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or a third person." Wolters Village Management Co. v. Merchants and Planters Nat'l Bank of Sherman, 223 F.2d 793, 798 (5th Cir.1955); In re Ashford, 73 B.R. 37, 39 (Bankr.N.D.Tex.1987); Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc., 938 S.W.2d 102, 113 (Tex. App"Houston [14th Dist.] 1996, no writ); Pape Equip. Co. v. I.C.S. Inc., 737 S.W.2d 397, 399 (Tex.App."Houston [14th Dist.] 1987, writ ref'dn.r.e.). A transaction that requires a further act to complete a transfer will not effect an assignment.Ashford, 73 B.R. at 40 (citing Wolters, 223 F.2d at 798). Intent is an essential element. Id. at 39. | Valid "assignment" requires manifestation to another person by owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or a third person. | Does an assignment include manifestation to another person the owners intention to transfer? | 07340.docx | LEGALEASE-00077590-LEGALEASE-00077592 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9892 | In re Pihl, 529 B.R. 414 | 366+1 | Equitable subrogation occurs when "one party by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for the purposes of getting recompense for its payment."A surety "may stand in the shoes of either(1) the contractor whose obligations are discharged, (2) the owners to whom it was bound, or (3) the subcontractors whom it paid." | Equitable subrogation may allow surety to stand in the shoes of (1) the contractor whose obligations are discharged, (2) the owners to whom it was bound, or (3) the subcontractors whom it paid. | In whose shoes does equitable subrogation allow a surety to stand? | 05088.docx | LEGALEASE-00083746-LEGALEASE-00083747 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 9893 | Eastern Sav. Bank, FSB v. Pappas, 829 A.2d 953 | 366+1 | In G.E. Capital Mortgage Servs., Inc. v. Levenson, 338 Md. 227, 657 A.2d 1170 (1995), the Maryland Court of Appeals explained that subrogation is the substitution of one person to the position of another, an obligee, whose claim he has satisfied.... The basic principles underlying subrogation are the same as those in constructive trusts, prevention of merger, and equitable liens, i.e., restitution to prevent forfeiture and unjust enrichment. G.E. Osborne, Handbook on the Law of Mortgages " 277, at 561 (2d ed. 1970) (Osborne). Although the doctrine of equitable subrogation may be applied in many contexts, one context involves the refinancing of a mortgage. Osborne states: Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material. Osborne, " 282, at 570. Id. at 1172. The court stated that "[t]he great majority of case law holds that one who pays the mortgage of another and takes a new mortgage as security will be subrogated to the rights of the first mortgagee as against any intervening lienholder." Id. at 1175. See also, e.g., Caito v. United California Bank, 20 Cal.3d 694, 144 Cal.Rptr. 751, 576 P.2d 466, 471 (1978) (defining equitable subrogation). | The basic principles underlying subrogation are the same as those in constructive trusts, prevention of merger, and equitable liens, i.e., restitution to prevent forfeiture and unjust enrichment. | Is the purpose of equitable subrogation to prevent forfeiture and unjust enrichment? | 06407.docx | LEGALEASE-00083880-LEGALEASE-00083881 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9894 | Warren Achievement Ctr. v. State, 35 Ill. Ct. Cl. 621 | 238+34 | This Court in several instances has passed upon the right to a refund. One of the first cases is found in Wright & Wagner Dairy Go. v. State, 12 Ill. Ct. Cl. 149, where the Court stated: "Where one pays a license fee, without compulsion or duress, which the law would not compel him to pay, such payment is voluntary and made under a mistake of law and cannot be recovered." | Where party pays license fee, without compulsion or duress, which the law would not compel him to pay, such payment is voluntary and made under a mistake of law and cannot be recovered, and in instant case the excess registration fees paid by Claimant, a non-profit organization, for vehicles it owned were not recoverable in the Court of Claims. | Are payments made under mistake of law recoverable? | 05592.docx | LEGALEASE-00084256-LEGALEASE-00084257 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9895 | United States v. Ferro, 681 F.3d 1105 | 174+1.3 | As the Supreme Court has stated, and as CAFRA codifies by statute, "[a] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028; see also 18 U.S.C. " 983(g).In assessing whether a fine is excessive, this court is "not required to consider any rigid set of factors." United States v. $100,348 in Currency, 354 F.3d 1110, 1121 (9th Cir.2004) (internal quotation marks omitted). The district court, however, mechanistically applied four factors stated by this court in $100,348 in Currency: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." D. Ct. Excessiveness Order at 7(citing $100,348 in Currency, 354 F.3d at 1122). In applying these factors, it looked to whether the forfeiture "is grossly disproportional to the gravity of Robert Ferro's offenses." Id. | In assessing whether a fine is excessive, court is not required to consider any rigid set of factors. U.S.C.A. Const.Amend. 8; 18 U.S.C.A. S 983(g). | Is the court required to consider any rigid set of factors in assessing whether a fine is excessive? | 07074.docx | LEGALEASE-00089160-LEGALEASE-00089162 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9896 | Brodbeck v. Gonzalez, 336 So. 2d 475 | 307A+563 | A dismissal as punishment for the plaintiff's failure to comply with a court order is in large measure a discretionary matter with the trial judge. Warriner v. Ferraro, 177 So.2d 723 (Fla.3d DCA 1965). We find no abuse of discretion by the trial judge in this case. See Swindle v. Reid, 242 So.2d 751 (Fla.4th DCA 1971). | Dismissal as punishment for plaintiff's failure to comply with court order is in large measure discretionary matter with trial judge. 30 West's F.S.A. Rules of Civil Procedure, rule 1.380(b)(2). | Does the trial judge have discretion on a sanction of dismissal to be imposed for plaintiff's failure to comply with court order? | 10902.docx | LEGALEASE-00094025-LEGALEASE-00094026 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 9897 | Swarey v. Stephenson, 222 Md. App. 65 | 334+109 | Both Maryland Rule 2"322 and Federal Rule of Civil Procedure 12(b) require that defenses asserting the lack of personal jurisdiction and insufficiency of service of process must be raised through preliminary motion prior to the defendant's answer or, under the federal rule, as part of the answer. The purpose of Rule 2"322(a) is to have the legal question decided before the trial of the action on its merits. Irvine v. Montgomery Cnty., 239 Md. 113, 117, 210 A.2d 359 (1965). In the instant case, Stephenson answered the complaint, including all state law claims, and the federal court could have addressed those claims had it exercised supplemental jurisdiction. Had the court exercised supplemental jurisdiction, the federal court would have applied Maryland law to the state law claims. We find Appellee Stephenson's contention that giving effect to the answer filed in the U.S. District Court would be fundamentally unfair because it was filed in a different court with different rules to be without merit here. Accordingly, Stephenson is deemed to have waived the defense of insufficient service of process by not raising it either prior to or in his answer to the Swareys' complaint filed in federal court. Md. Rule 2"322; Fed.R.Civ.P. 12(b). | Defendant, who filed motion to dismiss for lack of personal jurisdiction and insufficiency of service of process only after removed action raising state law and federal Racketeer Influenced and Corrupt Organizations Act (RICO) claims was remanded to the state court following dismissal of RICO claim, waived defense of insufficient service of process, where both state and federal rule required that defenses which were subject of defendant's motion be raised through preliminary motion prior to the defendant's answer or, under federal rule, as part of the answer, defendant answered the complaint, including all state law claims, in federal court, defendant failed to assert the defense either prior to or in his answer to the complaint in federal court, federal court could have addressed state law claims had it exercised supplemental jurisdiction, and federal court would have applied Maryland law to the state law claims. Fed.Rules Civ.Proc.Rule 12(b), 28 U.S.C.A.; Md.Rule 2-322(a). | "Is the question of whether a suit was abandoned, as the basis for dismissal,a legal question? " | 11126.docx | LEGALEASE-00094079-LEGALEASE-00094080 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 9898 | Caruthers v. State, 58 N.E.3d 207 | 307A+581 | "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court power to do so." Id. (quoting Benton, 622 N.E.2d at 1006). "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. The adverse party should not be left with a lawsuit hanging over his or her head indefinitely." Id. (quoting Hill v. Duckworth, 679 N.E.2d 938, 939"40 (Ind.Ct.App.1997)). "Although Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances." Am. Family Ins., 929 N.E.2d at 857. | Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered in ruling on motion to dismiss for failure to prosecute. Trial Procedure Rule 41(E). | Can courts be asked to carry cases on their dockets indefinitely and should courts consider the rights of the adverse party be considered? | 11030.docx | LEGALEASE-00094101-LEGALEASE-00094102 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9899 | Nationwide Mut. Ins. Co. v. Estate of Harrison, 64 Va. App. 110 | 413+1086 | We held the commission had no jurisdiction to resolve disputes between carriers that do not affect an award of the commission. "The purpose and effect of the [Act] are to control and regulate the relations between the employer and the employee." Id. at 120, 348 S.E.2d at 418. "When the rights of the claimant are not at stake, the Act clearly leaves the litigants to their common law remedies…." Id. at 121, 348 S.E.2d at 419. | When rights of workers' compensation claimant are not at stake, Workers' Compensation Act clearly leaves litigants to their common law remedies, as Workers' Compensation Commission has no jurisdiction to resolve disputes between carriers that do not affect an award of Commission. West's V.C.A. S 65.2-100 et seq. | "When the rights of claimants are not at stake, does the Workers Compensation Act leave litigants to their common law remedies?" | 10668.docx | LEGALEASE-00095124-LEGALEASE-00095125 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 9900 | Aliaga Med. Ctr., S.C. v. Harris Bank N.A., 2014 IL App (1st) 133645 | 307A+561.1 | A motion to dismiss under section 2"619(a) of the Code admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action." Kean v. Wal"Mart Stores, Inc., 235 Ill.2d 351, 361, 336 Ill.Dec. 1, 919 N.E.2d 926 (2009). This court reviews an order of dismissal "accepting as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to that motion." Napleton v. Great Lakes Bank, N.A., 408 Ill.App.3d 448, 450, 348 Ill.Dec. 804, 945 N.E.2d 111 (2011). The question on review of a dismissal under section 2"619 is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) Id. at 450"51, 348 Ill.Dec. 804, 945 N.E.2d 111. "In conducting de novo review, the appellate court will examine the complaint and all evidentiary material before the trial court at the time of entry of the [dismissal] order Vala v. Pacific Insurance Co., 296 Ill.App.3d 968, 970, 231 Ill.Dec. 64, 695 N.E.2d 581 (1998). After a defendant satisfies its burden of going forward on a section 2"619(a) motion to dismiss, "the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is unfounded as a matter of law or requires the resolution of an essential element of material fact before it is proven." Barrett v. Fonorow, 343 Ill.App.3d 1184, 1189, 279 Ill.Dec. 113, 799 N.E.2d 916 (2003). | A motion to dismiss with respect to pleadings admits the legal sufficiency of the complaint but asserts affirmative matter outside the complaint that defeats the cause of action. S.H.A. 735 ILCS 5/2-619(a). | Will a motion to dismiss with respect to pleadings admit the legal sufficiency of the complaint? | 10522.docx | LEGALEASE-00095483-LEGALEASE-00095484 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9901 | Shiffman v. K, 657 P.2d 401 | 307A+590.1 | Keeping the purposes of Rule 41(e) in mind, as well as the evil to be avoided, a "proceeding" as the term is used in the rule is a step, act or measure of record, by the plaintiff, which reflects the serious determination of the plaintiff to bring the suit to a resolution; or a step, act or measure of record, by either party, which reflects that the suit is not stagnant. | Term "proceeding" as used in rule providing for dismissal of suits for want of prosecution when no proceedings have been taken therein for more than one year, means a step, act or measure of record, by the plaintiff, which reflects the serious determination of plaintiff to bring the suit to a resolution, or a step, act or measure of record, by either party, which reflects that the suit is not stagnant. Rules Civ.Proc., Rule 41(e). | "What does the term ""proceeding"" mean? " | 10511.docx | LEGALEASE-00095652-LEGALEASE-00095653 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 9902 | Williams v. Rock-Tenn Servs., 2016 COA 18, 15, 370 P.3d 638 | 307A+561.1 | However, in narrow circumstances, when the "allegations indicate the existence of an affirmative defense that will bar the award of any remedy," a party may raise an affirmative defense in a motion to dismiss. Id. at 44"45, 312 P.3d at 1164"65 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 1357, at 708 (3d ed.2004)) (tacitly approving this rule); see also Ruth v. Dep't of Highways, 153 Colo. 226, 385 P.2d 410 (1963). | In narrow circumstances, when the allegations indicate the existence of an affirmative defense that will bar the award of any remedy, a party may raise an affirmative defense in a motion to dismiss. | Will a party raise an affirmative defense in a motion to dismiss for failure to state a claim? | 09945.docx | LEGALEASE-00096062-LEGALEASE-00096063 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 9903 | Massachusetts Broken Stone Co. v. Planning Bd. of Weston, 45 Mass. App. Ct. 738 | 307A+581 | Massachusetts Rule of Civil Procedure 41(b)(2), 365 Mass. 804 (1974), provides, in pertinent part, "On motion of the defendant, with notice, the court may, in its discretion, dismiss any action for failure of the plaintiff to prosecute or to comply with these rules or any order of court." Trial on the merits of a plaintiff's claim is strongly favored, and the involuntary dismissal of such a claim should be reserved for those situations where a severe sanction is necessary. Monahan v. Washburn, 400 Mass. 126, 128-129, 507 N.E.2d 1045 (1987). "As a minimal requirement, there must be convincing evidence of unreasonable conduct or delay. A judge should also give sufficient consideration to the prejudice that the movant would incur if the motion were denied, and whether there are more suitable, alternative penalties." Ibid. Only in rare instances will a trial judge deciding a rule 41(b)(2) motion have committed an abuse of discretion which amounts to an error of law. Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 641, 488 N.E.2d 1 (1986). Such an abuse of discretion occurs when the judge's decision is arbitrary, capricious, whimsical or idiosyncratic. Ibid. See Hoch v. Gavan, 25 Mass.App.Ct. 550, 552, 520 N.E.2d 1319 (1988); Dewing v. J.B. Driscoll Ins. Agency, 30 Mass.App.Ct. 467, 470-471, 569 N.E.2d 848 (1991). | Trial on merits of a plaintiff's claim is strongly favored, and involuntary dismissal of such a claim based on plaintiff's failure to prosecute or to comply with court's rules should be reserved for those situations where a severe sanction is necessary. Rules Civ.Proc., Rule 41(b)(2), 43A M.G.L.A. | Should involuntary dismissal of a claim be reserved for those situations where a severe sanction is necessary? | 05768.docx | LEGALEASE-00096749-LEGALEASE-00096750 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9904 | Mallett v. Hall, 129 Me. 148 | 315+134 | It has been convincingly pointed out, that the life tenant is a trustee for the remainderman only in a limited sense. The trust is not pure, but only quasi. 2 Perry on Trusts, " 540. The life tenant is a trustee for the benefit of the remainderman only in the sense that the duty rests upon him merely to have due regard for the rights of those in remainder. Hardy v. Mayhew, supra. The relation is in the nature of a trust.Smith v. Daniel, 2 McCord, Eq. (S. C.) 143, 16 Am. Dec. 641. The life tenant holds the corpus of the estate in trust in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and may not injure or dispose of it to his detriment. Gibson v. Brown, 62 Ind. App. 460, 110 N. E. 716, 112 N. E. 894. And it is held that no such fiduciary relations exist between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and cestuisquetrustent, and preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder. Ware v. Frank's Adm'r, 38 S. W. 1061, 18 Ky. Law Rep. 1009. The restricted sense of the term "trust," as applied to this relation, is also recognized in Clark v. Leverett, 159 Ga. 487, 126 S. E. 258, 37 A. L. R. 180; Green v. Green, 50 S. C. 514, 27 S. E. 952, 62 Am. St. Rep. 846; note, 137 Am. St. Rep. 653; 17 R. C. L. 626; 21 C. J. 941 | Life tenant is trustee for remainderman only in sense that duty rests on him to have due regard for remainderman's rights and exercise reasonable precautions to preserve property intact and uninjured for transmission to remainderman. | Does the life tenant have any duties towards the remainderman? | 000231.docx | LEGALEASE-00115452-LEGALEASE-00115453 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 9905 | Lent v. Padelford, 10 Mass. 230 | 277+13 | But, upon further consideration, we are all satisfied that the declaration is in this respect sufficient. The general rule is perfectly well settled. When the matter alleged lies peculiarly in the knowledge of the plaintiff, he must aver that the defendant had notice; but when it lies equally in the knowledge of the defendant, such averment is unnecessary. The case at bar comes within the latter branch of the rule. There was no act to be done exclusively by the plaintiffs. It may even be said that the matter, by which the defendant was to be discharged, was an act to be performed by himself. He promises that Barney shall make his appearance: he undertakes to have him at a day and place certain, and he must know whether he has done so. | The general rule with respect to the necessity of alleging notice is that when the matter alleged lies peculiarly in the knowledge of the plaintiff he must aver that defendant had notice, but when it lies equally in the knowledge of defendant such averment is unnecessary. | "When the matter alleged lies peculiarly in the knowledge of both plaintiff and defendant, is it necessary to allege or aver that the defendant had notice? " | Notice -Memo 19 - MS.docx | ROSS-003301167-ROSS-003301168 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 9906 | Kropp v. Roberts, 246 Ga. App. 497 | 21+18 | Trial courts may consider affidavits which are not filed or served within the time limits contemplated by the statutes, and it is not necessary to note the exercise of discretion on the record. Liberty Nat. Life Ins. Co. v. Houk; see also Washington v. Ga. Baptist Med. Center, rev'd on other grounds, Porquez v. Washington. OCGA " 9-11-9.1(d) expressly allows the trial court, in its discretion, to extend the time for filing amendments to defective affidavits. In its order on defendants' motions to dismiss/motions for summary judgment, the trial court expressly considered Dr. Janho's subsequent affidavit in finding the initial affidavit sufficient for purposes of OCGA " 9-11-9.1. The timeliness of the filing of the subsequent affidavit was not addressed in its order, but the trial court was nevertheless authorized to consider an untimely filed affidavit. We have previously noted that "the intent behind OCGA " 9-11-9.1 [is] to thwart the filing of frivolous lawsuits." Harris, supra at 666-667, 504 S.E.2d 736. The trial court's decision to consider the subsequent affidavit did not run counter to this intent and was within the trial court's traditional and statutorily expressed powers, and there is no basis here to question the exercise of its discretion. The order upholding the sufficiency of the affidavit is affirmed. | Trial courts may consider affidavits which are not filed or served within the time limits contemplated by the statutes, and it is not necessary to note the exercise of discretion on the record. | Does a trial court have the discretion to allow late affidavits? | 004122.docx | LEGALEASE-00116355-LEGALEASE-00116357 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9907 | Boone v. Boone, 345 S.C. 8 | 253+1086(1) | Interspousal immunity is a common law doctrine based on the legal fiction that husband and wife share the same identity in law, namely that of the husband. 92 A.L.R.3d 901 (1979). Accordingly, at common law, it was "both morally and conceptually objectionable to permit a tort suit between two spouses." Id. at 906. | "Interspousal immunity" is a common law doctrine based on the legal fiction that husband and wife share the same identity in law, namely that of the husband; accordingly, at common law, tort suits between two spouses were not permitted. | Can one spouse maintain an action for tort against the other spouse? | 005122.docx | LEGALEASE-00117338-LEGALEASE-00117340 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 9908 | Pennsylvania R. Co. v. Brown, 111 F.2d 983 | 8.30E+66 | These contentions, however, ignore the existence in Section 41 of the Uniform Bills of Lading Act, supra, of the phrase "unless a different intention on the part of the seller appears." Here, as later shown, a different intention does appear. Section 41 does not aid the appellants, because under the facts the buyer and the carriers were not justified in assuming that the seller intended to pass title on acceptance of the drafts. Also this section applies where the seller draws upon the buyer. But here the buyer's agent drew upon the buyer and the seller was payee. In this situation Section 130 of the Uniform Negotiable Instruments Act applies, which provides that where in a bill drawer and drawee are the same person, the holder may treat the instrument at his option either as a bill of exchange or a promissory note. Appellate treated it as a bill of exchange. | Where buyer's agent drew upon buyer and seller was payee, the statute providing that where drawer and drawee are the same person, holder may treat the instrument at his option either as a bill of exchange or as a promissory note, applied. Uniform Negotiable Instruments Acts, S 130. | Can a bill if drawn by person payable to his own order be a bill of exchange? | 018313.docx | LEGALEASE-00122266-LEGALEASE-00122267 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 9909 | First Nat. City Bank v. Banco Nacional de Cuba, 406 U.S. 759 | 221+342 | Thus, both the act of state and sovereign immunity doctrines are judicially created to effectuate general notions of comity among nations and among the respective branches of the Federal Government. The history and the legal basis of the act of state doctrine are treated comprehensively in the Court's opinion in Sabbatino, supra. The Court there cited Chief Justice Fuller's "classic American statement" of the doctrine, found in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897) :"Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." | The act of state doctrine precludes any review whatever of the acts of the government of one sovereign state done within its own territory by the courts of another sovereign State. (Per Mr. Justice Rehnquist with The Chief Justice and another Justice concurring and two Justices concurring in result.) | "Under the act of state doctrine, is every sovereign state bound to respect independence of every other sovereign state, and the courts of one country will not sit in judgment on acts of government of another which are done within its own territory?" | 020126.docx | LEGALEASE-00122867-LEGALEASE-00122868 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9910 | Stone v. BankUnited, 115 So. 3d 411 | 266+1749 | The party seeking foreclosure must present evidence that it owns and holds the note and mortgage to establish standing to proceed with a foreclosure action." Mazine v. M & I Bank, 67 So.3d 1129, 1131 (Fla. 1st DCA 2011) (citing Servedio v. U.S. Bank Nat'l Ass'n, 46 So.3d 1105 (Fla. 4th DCA 2010)). "Because a promissory note is a negotiable instrument and because a mortgage provides the security for the repayment of the note, the person having standing to foreclose a note secured by a mortgage may be either the holder of the note or a nonholder in possession of the note who has the rights of a holder." A plaintiff may prove that it has standing to foreclose "through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer." BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean"Jacques, 28 So.3d 936, 939 (Fla. 2d DCA 2010); McLean v. JP Morgan Chase Nat'l Ass'n, 79 So.3d 170, 173 (Fla. 4th DCA 2012) (holding that plaintiff may demonstrate standing by submitting the note bearing a special endorsement in favor of the plaintiff or a blank endorsement, evidence of an assignment from the payee to the plaintiff, evidence of equitable transfer, or other evidence of ownership proving the plaintiff's status as the holder of the note). | Because a promissory note is a negotiable instrument and because a mortgage provides the security for the repayment of the note, the person having standing to foreclose a note secured by a mortgage may be either the holder of the note or a nonholder in possession of the note who has the rights of a holder. West's F.S.A. S 673.3011. | Is a promissory note a negotiable instrument? | 009292.docx | LEGALEASE-00128986-LEGALEASE-00128987 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 9911 | Inc. Vill. of Valley Stream v. State of New York Pub. Serv. Comm'n, 107 A.D.2d 856 | 317A+114 | In determining whether termination of a service provided by a regulated monopoly is appropriate, the economic loss to the company must be balanced against the public interest (see Matter of Delaware & Hudson R.R. Corp. v. Public Serv. Comm. of State of N.Y., 285 App.Div. 326, 136 N.Y.S.2d 510). Here, the risk of loss to LILCO is great, while the harm to the public interest is minimal. There are viable alternatives for the provision of street lighting to the village, e.g., leasing or purchasing the system from LILCO. Further, the State has determined that lighting is not necessary on Sunrise Highway. Accordingly, village residents could not be said to be unreasonably harmed if street lighting is not reinstituted. It necessarily follows that the PSC's determination has a rational basis. | In determining whether termination of a service provided by a regulated monopoly is appropriate, economic loss to the company must be balanced against public interest. | Should the economic loss to a utility be balanced against the public interest if such utility is terminated or discontinued? | 042505.docx | LEGALEASE-00129143-LEGALEASE-00129144 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 9912 | Ham v. Park, 110 Ohio App. 3d 803 | 307A+501 | Civ.R. 41(A) and 41(B) are two separate rules of dismissal, and are not meant to be construed together. Civ.R. 41(A) pertains to voluntary dismissals, whereas Civ.R. 41(B) applies to involuntary dismissals. | Provision of civil rule pertaining to voluntary dismissal is separate from, and not meant to be construed together with, portion of rule pertaining to involuntary dismissal. Rules Civ.Proc., Rule 41(A, B). | "Is the provision of a civil rule pertaining to a voluntary dismissal separate from, and not meant to be construed together with, a portion of a rule pertaining to involuntary dismissal?" | 026036.docx | LEGALEASE-00129425-LEGALEASE-00129426 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 9913 | E.E.O.C. v. Thorman & Wright Corp., 243 F.R.D. 426 | 170A+1552 | The purpose of Rule 34 is to make relevant and nonprivileged documents and objects in the possession of one party available to the other." The breadth of Rule 34 extends to all relevant documents, tangible things, and entry upon designated land or other property. Rule 34 requires that the party upon whom the request is served must be in possession, custody, or control of the requested item. Here, it appears the employment records are documents or tangible items as defined by Rule 34(a). It also appears that, with the exception of the severance agreement that is discussed below, Plaintiffs do not have actual possession or custody of the employment records at issue. Although there may not be actual possession, the Court must go on to decide whether Plaintiff has "control" of the referenced employment records within the parameters of Fed.R.Civ.P. 34. | The purpose of rule governing requests for production of documents is to make relevant and nonprivileged documents and objects in the possession of one party available to the other. Fed.Rules Civ.Proc.Rule 34, 28 U.S.C.A. | Is the purpose of a statute with respect to production of documents to make relevant and nonprivileged documents in the possession of one party available to the other? | 027528.docx | LEGALEASE-00130814-LEGALEASE-00130815 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9914 | United States v. Shober, 489 F. Supp. 393 | 306+50 | Defendant's first claim, that the money given to Congressman Flood was part of a traditional business practice of tendering political contributions to promote a favorable business climate for federal funds which Hahnemann needed, is essentially a challenge to the truth of the allegation that defendant "corruptly" gave the Congressman money to influence his official action on Hahnemann's application for federal funding. Whether defendant paid this money to the Congressman with "corrupt" intent or merely as a "traditional" political gift is a question for the jury to decide at trial. Similarly, defendant's contention that he is not a briber but a victim of extortion also reaches the merits of the charge made in the indictment. This question will also be one for the jury to decide. In essence, both require a determination of defendant's intent, which is a question of fact. Where a pre-trial motion raises questions of fact which are "interwined with issues involving the merits, a determination of that matter must be deferred until trial". United States v. Greater Syracuse Board of Realtors, Inc., 449 F.Supp. 887, 899 (N.D.N.Y.1978). | In prosecution for mail fraud and bribery, whether defendant paid certain money to congressmen with "corrupt" intent to influence his official action on defendant's application for federal funding or merely as part of a "traditional" business practice of tendering political contributions to promote favorable business climate for federal funds which defendant needed was question for jury to decide at trial; similarly, whether defendant was victim of extortion or bribery was question for jury to decide. | Is a bribery case in which the contention that the defendant only made political contributions sufficient to be submitted to a jury? | 011194.docx | LEGALEASE-00132629-LEGALEASE-00132630 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 9915 | People v. Cavan, 84 Misc. 2d 510 | 63+1(1) | In viewing the law in this area, it is this Court's opinion that the benefit must not be so remote, abstract, or theoretical as to create speculation as to its ultimate value to the receiver. In the case at bar, it is doubtful if a vague offer to turn State's evidence, without anything further, constitutes such a benefit in the statutory sense.Therefore, this Court finds that there was not sufficient testimony before the Grand Jury to establish proof of a "benefit". (People v. Ioppolo, 45 A.D.2d 745, 356 N.Y.S.2d 662.) The Grand Jury minutes having been inspected, the motion to dismiss the indictment is therefore granted to the extent that count two of the indictment, charging bribery in the second degree, is dismissed; as to counts one, three, and four, the motion is denied, there being sufficient legal evidence to sustain these counts. | Benefit offered, within statute proscribing bribery in second degree, must not be so remote, abstract, or theoretical as to create speculation as to its ultimate value to the receiver. Penal Law SS 10.00, subd. 17, 200.00. | " Can a benefit be remote, abstract, or theoretical as to create speculation as to its ultimate value to the receiver?" | 011336.docx | LEGALEASE-00133519-LEGALEASE-00133520 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 9916 | Lynn v. United States, 58 Fed. Cl. 797 | 34+5(3) | The court must determine, in this voluntariness inquiry, whether plaintiff has made a free choice to retire. See McIntyre v. United States, 30 Fed.Cl. 207, 211 (1993) ("The focus of [the voluntariness] inquiry is whether the plaintiff exercised a free choice in making the resignation or retirement decision."). A resignation from the military is presumed to be voluntary. Tippett v. United States, 185 F.3d 1250, 1255 (Fed.Cir.1999); Moyer, 190 F.3d at 1320. However, "[a]n otherwise voluntary resignation ... is rendered involuntary if it ... results from misrepresentation or deception on the part of government officers." Tippett, 185 F.3d at 1255 (citing Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983) and Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 942 (Fed.Cir.1984)). "[T]he misinformation must be such that a "reasonable person would have been misled." " Id. at 1258 (quoting Scharf, 710 F.2d at 1575). " "[I]f the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." " Id. at 1255 (quoting Covington, 750 F.2d at 942). | An otherwise voluntary resignation from the military is rendered involuntary if it results from misrepresentation or deception on the part of government officers. | Is a resignation or retirement of a military official voluntary if it results from misrepresentation or deception on the part of government officers? | 008464.docx | LEGALEASE-00134171-LEGALEASE-00134172 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9917 | Bourg Dry Dock & Serv. Co. v. Lombas Industries, 393 So. 2d 203 | 307A+749.1 | The trial court had issued a pretrial order in this case narrowing the issues. That order controls the subsequent course of action unless modified at the trial to prevent manifest injustice. The trial judge refused to modify his order. Much discretion is left to the trial judge in this matter. As was stated in Brown v. Hawkins, 244 So.2d 896, 899 (La.App. 1st Cir. 1971): An orderly disposition of each case and of the entire docket and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action." | Pretrial order controls subsequent course of action unless modified at trial to prevent manifest injustice; much discretion is left to trial judge in this matter. | Does a pretrial order controlled course of action unless modified to prevent manifest injustice? | 028807.docx | LEGALEASE-00134691-LEGALEASE-00134692 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 9918 | Shaw v. Nat'l Cty. Mut. Fire Ins. Co., 723 S.W.2d 236 | 307A+481 | In reviewing an instructed verdict, the evidence must be considered in the light most favorable to the losing party. White v. Southwestern Bell Telephone Co., 651 S.W.2d 260, 262 (Tex.1983). If there is any conflicting, probative evidence in the record, the jury should decide the issue. Id. An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce controverting testimony in any legal proceeding related to the action. Smith v. Home Indemnity Co., 683 S.W.2d 559, 562 (Tex.App."Fort Worth 1985, no writ). | Admission once admitted, deemed or otherwise, is judicial admission and party may not then introduce controverting testimony in any legal proceeding related to action. | "Are deemed admissions, resulting from a party's failure to answer a request for admissions, judicial admissions and may not be controverted with testimony?" | 029806.docx | LEGALEASE-00135350-LEGALEASE-00135351 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 9919 | Downs v. Hawley, 112 Mass. 237 | 307A+74 | A deposition was returned to court in a sealed envelope, but the answers were not annexed either to the commission or to the interrogatories. Held, that the deposition was not to be rejected simply because the answers were not so annexed. | In the absence of any showing of fraud, the fact that the answers were not annexed to the commission nor to the interrogatories is no ground for the rejection of a deposition returned to court in a sealed envelope. | "In the absence of any showing of fraud, is the fact that the answers were not annexed to the commission nor to the interrogatories no ground for the rejection of a deposition?" | 032275.docx | LEGALEASE-00139449-LEGALEASE-00139450 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 9920 | Iry v. Traders & Gen. Ins. Co., 176 So. 693 | 307A+74 | It is to be noted from the quoted statutory provision that the certificate of the officiating officer, which is required to be returned with the testimony, must recite, among other things, "that the officer before whom the testimony was taken is not of counsel or attorney for any party to the suit or otherwise interested in the outcome of the case." As we view the act, a recital to that effect is mandatory, and its absence makes inadmissible the testimony proposed to be used. The certificate attached to the depositions offered in the instant case states in part: "I, Harry Ponder, Jr., a Notary Public, within and for the Country and State aforesaid, duly commissioned and acting and having no interest in the above styled cause do hereby certify that." | Under statute providing what shall be the proper certification of deposition, provision that certification must recite, among other things, "that the officer before whom the testimony was taken is not of counsel or attorney nor any party to the suit, or otherwise interested in the outcome of the case," is mandatory LSA-R.S. 13:3775. | Need a certificate of an officer taking depositions not set out his qualifications nor show how the deposition was taken? | 032116.docx | LEGALEASE-00141282-LEGALEASE-00141283 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9921 | Crenshaw v. State, 520 So. 2d 131 | 211+1724 | In proving gratification of lust pursuant to Miss. Code Ann. " 97"5"23 (1972) the State bears the burden, as an affirmative fact, of proving that the person so charged was above the age of eighteen (18) years. See Love v. State, 211 Miss. 606, 52 So.2d 470 (1951). In the trial below, Officer Glen Terrell was called by the State to testify that Crenshaw had told him, while making a statement, that he was born on November 17, 1947. Appellant objected to the testimony of Officer Terrell on the basis that the State had failed to provide in discovery his statement concerning age, and as such the use of the statement to prove age should not be allowed. The lower court permitted Terrell to testify concerning the statement, which Crenshaw argues prejudiced him. Judy McCauley had previously been called as a witness for the State. McCauley, a close friend of Crenshaw, when asked about his age, answered, "I think he's thirty-eight (38)." As a consequence, there had, prior to the time of Terrell's testimony concerning Crenshaw's birthdate, been proof of appellant's age. Further, Crenshaw upon taking the stand testified that he was thirty-eight (38). The admission of Terrell's testimony, even if, assuming arguendo, such was incompetent evidence, it was harmless error due to the fact that Crenshaw's age was established by other competent evidence in the form of Judy McCauley's testimony. McClelland v. State, 98 Miss. 735, 54 So. 251 (1911); King v. State, 74 Miss. 576, 21 So. 235 (1897). The point is meritless. | In proving gratification of lust in prosecution for fondling, State bears burden, as affirmative fact, of proving that person so charged was above age of 18 years. Code 1972, S 97-5-23. | Does the State bear the burden of proving the age of the accused in gratification of lust? | 043113.docx | LEGALEASE-00143486-LEGALEASE-00143487 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 9922 | Blanke v. Hendrickson, 944 S.W.2d 943 | 184+13(1) | Fraud is never presumed and when fraud is alleged the burden of proof as to each element falls upon the party asserting the fraud. Harper v. Calvert, 687 S.W.2d 227, 229 (Mo.App.1984). Failure to prove any of the requisite elements is fatal to a claim for fraud. Id. A finding of fraud must rest on something more substantial than suspicion, surmise and speculation. Weaver v. Travers, 631 S.W.2d 81, 83 (Mo.App.1982). Generally, a party fails to make out a case of fraud when the facts and circumstances presented are as consistent with honesty and good faith as they are with fraud. Macon"Atlanta State Bank v. Gall, 666 S.W.2d 934, 941 (Mo.App.1984). The truth or falsity of the representation is determined as of the time it was made and as of the time it was intended to be relied and acted upon. Rigby Corp. v. Boatmen's Bank and Trust Co., 713 S.W.2d 517, 540 (Mo.App.1986). | For purposes of fraud claim, truth or falsity of representation is determined as of time it was made and as of time it was intended to be relied and acted upon. | Is the truth or falsity of the representation determined as of the time it was made and as of the time it was intended to be relied and acted upon? | 034050.docx | LEGALEASE-00145138-LEGALEASE-00145139 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 9923 | Snauffer v. Stimson, 155 F.2d 861 | 34+151 | Whatever may be the fact regarding Snauffer's term of actual service, insofar as the pension claim is concerned it is perfectly clear the District Court was without jurisdiction to issue an order directing its payment. We have often held that, Congress having denied judicial review of the decisions of the Administrator of Veterans' Affairs concerning claims for pensions, the courts have no power to grant relief. | Congress having denied judicial review of decisions of Administrator of Veterans' Affairs concerning claims for pensions, the courts have no power to grant relief. 38 U.S.C.A. S 211, 211(a). | Can the decisions of the Administrator of Veterans' Affairs be reviewed by a judicial body? | Pension - Memo 55 - RK_57641.docx | ROSS-003280727-ROSS-003280728 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 9924 | United States v. Jones, 386 F.2d 427 | 34+20.6(6) | While the record undoubtedly reveals Jones' ever-increasing religious activity, his offices and activities do not establish him as a minister within the meaning of 50 U.S.C.App. " 466(g)(1). His duties and religious works may vary from those of some of his fellow believers in the variety of tasks he performs and in the titled offices he holds, and he may exercise a certain degree of authority over his class and over the twelve men whose activities he directs. But nowhere do we find any evidence that Jones in the religious leader of his congregation; rather it appears that he is simply an active worker within the congregation, engaged primarily in the usual Witness tasks of spreading the beliefs of their faith and of teaching others within the church to be more effective in their proselytizing endeavors. Apparently the congregation servant is the member of the local Witness group who performs the functions normally performed by ordained ministers of other religions and who is regarded by the members of the congregation as their religious leader. Jones admits he has never held this position. As we have observed previously, Congress intended to provide the ministerial exemption for the leaders of religious faiths but not for the members generally, whatever may be their titles within their sects. See United States v. Stewart, 322 F.2d 592, 594 (4 Cir. 1963). | Congress intended to provide ministerial exemption for leaders of religious faiths but not for members generally, whatever may be their title within their sects. Universal Military Training and Service Act, S 16(g)(1), 50 U.S.C.A. App. S 466(g) (1). | Is exemption from the armed service for ministers extended only to leaders of various faiths and not to members generally? | 008750.docx | LEGALEASE-00148753-LEGALEASE-00148754 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9925 | Aldrich v. Collins, 3 S.D. 154 | 200+130 | No power seems to have been, by any provisions of the statute, conferred upon the town supervisors to appropriate or expend any money upon highways other than the money derived from the two sources above specified, unless money for such purposes shall be raised by the vote of the electors,-which will be discussed under our second point. Whether or not the funds in the hands of the town treasurer included any delinquent highway labor and road tax or surplus money paid over by the overseers of highways does not appear from the returns, and hence we must presume no such funds were included. As the statute provides that the ordinary highway labor and road tax shall be expended under the supervision of road overseers, and within their respective road districts, and that the money paid as a commutation for such labor shall be collected and expended by the road overseers within their respective districts, the town supervisors have no power to appropriate and expend such taxes, or any part thereof, on any particular highway, except such part as may be returned as delinquent, and collected by the county treasurer, or as may remain as surplus, and be paid over to the supervisors by the road overseers. And it cannot be seriously contended that the supervisors can divert the funds raised and collected for incidental town expenses to the improvement of highways, as funds raised "by taxation, loan, or assessment for one purpose shall not be diverted to any other." Section 2, art. 10, Const.; Dill. Mun. Corp. (3d Ed.) " 603, and cases there cited. The supervisors are not authorized to contract any debt against the town for the purpose of improving the highways, except in the manner pointed out in article 22, Pol. Code, (sections 829-836, Comp. Laws.) No proceedings seem to have been taken under these sections. Our conclusions are, therefore, that the town supervisors did not possess the power to make the appropriation in | Under Comp. Laws, S 772, town supervisors have charge of such affairs "as are not by law committed to other town officers." Section 1272 provides for the assessment of a road tax, whose collection and expenditure, under section 1266, are under the control of road supervisors. Const. art. 10, S 2, provides that funds raised by "taxation, loan, or assessment for one purpose shall not be diverted to any other." Held, that the supervisors have no authority to appropriate the ordinary town funds to the improvement of highways. | Can the funds raised for improvement of highways by taxation be diverted for another purpose? | 019176.docx | LEGALEASE-00150978-LEGALEASE-00150979 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 9926 | Buice v. State, 92 Ga. App. 260 | 231+20 | A justice of the peace has no authority to perform any of the functions of his office elsewhere than within the limits of his own county, and an affidavit sworn to and subscribed before a justice of the peace outside the limits of his own county is illegal and void. Hutchins v. State, 8 Ga.App. 409, 69 S.E. 309. | A justice of the peace has no authority to perform any functions of his office outside limits of his own county, and an affidavit sworn to and subscribed before him outside limits of his own county is illegal and void. | Can a justice of peace perform his functions of office elsewhere other than the limits of his own county? | Affidavits - Memo 47 - _1R7Px9tD8-IfLRrcnbWvtcirM4FRslyr6.docx | ROSS-000000191-ROSS-000000192 | Condensed, SA | 0.3 | 0 | 1 | 0 | 1 | |
| 9927 | Bd. of Trustees of Town of Minturn v. Foster Lumber Co., 190 Colo. 479 | 371+2001 | It is clear that section 31-15-301(1)(b), C.R.S.1973, authorized municipalities to impose occupation taxes on local businesses. It is also clear that the language used by the legislative body in denominating the nature of the tax assessed is not determinative of its true character. Englewood v. Wright, 147 Colo. 537, 364 P.2d 569; Walker v. Bedford, 93 Colo. 400, 26 P.2d 1051. | Language used by legislative body in denominating nature of tax assessed is not determinative of its true character. | Is the language used by the legislative body in denominating the nature of the tax determinative of its true character? | Taxation - Memo # 909 - C - JL_60614.docx | ROSS-003279298-ROSS-003279299 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 9928 | City of El Dorado v. Union Cty., 122 Ark. 184 | 200+121 | Act 230 has reference to the road funds levied and collected under amendment No. 5 of the Constitution. It has no reference whatever to the optional road tax provided for by section 7280 of Kirby's Digest, supra, which is levied and collected solely as a part of the general revenue under the authority of article 16, " 9, of the Constitution. All taxes levied for general revenue purposes under article 16, " 9, of the Constitution, supra, and the optional road tax as a part of such general revenue funds, levied and appropriated under the provisions of section 7280 of Kirby's Digest, must be expended under the supervision of the county courts. Article 7, " 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. And under these provisions of the Constitution the Legislature would have no power to vest any other tribunal with jurisdiction over the expenditure of the funds raised under (article 16, " 9, supra) the general revenue clause of the Constitution. | Article 7, section 28, of the Constitution vests the county courts with exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. | Can the County Court exercise its original jurisdiction in matters relating to roads? | 019185.docx | LEGALEASE-00154024-LEGALEASE-00154025 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9929 | Del Pilar v. DHL Glob. Customer Sols. (USA), 993 So. 2d 142 | 308+3(2) | A particularly significant factor in the determination of status is "the degree of control exercised by the employer or owner over the agent. More particularly, it is the right of control, and not actual control, which determines the relationship between the parties." Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986) (internal citations omitted); see generally Restatement (Second) of Agency " 220(2)(a) (1958); Harper ex rel. Daley v. Toler, 884 So.2d 1124, 1131 (Fla. 2d DCA 2004) (observing that extent of principal's control is "most important factor"). "If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor," but rather is an agent for whose negligence the principal is vicariously liable. Parker, 629 So.2d at 1027; see also Cawthon v. Phillips Petroleum Co., 124 So.2d 517, 519 (Fla. 2d DCA 1960). | A particularly significant factor in determining whether one laboring on behalf of another is an agent or an independent contractor is the degree of control exercised by the employer or owner over the agent; it is the right of control, and not actual control, which determines the relationship between the parties. Restatement (Second) of Agency S 220(2)(a) (1958). | Is it the actual control by the employer over the agent that determine the relationship between the parties? | Principal and Agent - Memo 495 - KK_63274.docx | ROSS-003294922-ROSS-003294923 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 9930 | Polk v. Sw. Crossing Homeowners Ass'n, 165 S.W.3d 89 | 307A+699 | As long as the trial court had control of the judgment when it held the hearing on Polk's motion to reinstate, this satisfies Polk's due process rights applicable to the dismissal of her case. See id. A verified motion to reinstate extends the trial court's plenary power to the same extent as a motion for new trial. Id. (citing Macarangal v. Andrews, 838 S.W.2d 632, 633 (Tex.App.-Dallas 1992, orig. proceeding)). Polk filed her motion to reinstate on March 2, 2004, which is within the time frame Rule 165a requires. Tex.R. Civ. P. 165a(3) (requiring motion to reinstate to be filed within 30 days from date trial court signs the order of dismissal). The motion to reinstate was deemed overruled by operation of law 75 days later, on May 17, 2004. Tex.R. Civ. P. 165a(3). | Verified motion to reinstate extends the trial court's plenary power over judgment to the same extent as a motion for new trial. | Does a verified motion to reinstate extend the trial court's plenary power over a judgment to the same extent as a motion for new trial? | Pretrial Procedure - Memo # 10826 - C - PC_64089.docx | ROSS-003279250-ROSS-003279251 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9931 | Davis v. Girard, 74 R.I. 125 | 59+33 | It is the well-settled policy of this state, which is in accord with the general rule, that the owner of premises bounded on a public highway is presumed, in the absence of evidence to the contrary, to own the fee to the middle line of the highway. Adams v. White & Son, Inc., 41 R.I. 157, 161, 103 A. 230; Anthony v. City of Providence, 18 I.R. 699, 701, 28 A. 766; 39 C.J.S., Highways " 136. By the legal establishment of a highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands unless the contrary appears. Rounds v. Mumford, 2 R.I. 154, 160. It is provided by statute that upon the abandonment, in whole or in part, of a public highway by a municipality, the title of the land upon which such highway or part thereof existed shall revert to its owner. G.L.1923, chap. 95, sec. 30, now G.L.1938, chap. 72, " 30. See State v. Town of Cumberland, 7 R.I. 75, under a prior form of statute. | The owner of premises bounded on a public highway is presumed, in absence of evidence to the contrary, to own the fee to the middle line of the highway. | Is the owner of the premises bounded on a public highway presumed to own the fee to the middle line of the highway? | Highways - Memo 459 - RK_66359.docx | ROSS-003279749-ROSS-003279750 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 9932 | Bankmark of Florida v. Star Fin. Card Servs., 679 N.E.2d 973 | 21+9 | Under T.R. 56(E), affidavits supporting or opposing a summary judgment motion must be made upon the personal knowledge of the affiant, must affirmatively show that the affiant is competent to testify as to the matters covered in the affidavit and must set forth facts which would be admissible in evidence. L.K.I. Holdings, Inc. v. Tyner, 658 N.E.2d 111, 117 (Ind.Ct.App.1995), trans. denied. As a general rule, a court should disregard any inadmissible information contained in the affidavit. LeMaster v. Methodist Hospital, Inc., 601 N.E.2d 373, 376 (Ind.Ct.App.1992). However, a party complaining that an affidavit is defective has a duty to direct this complaint to the trial court, and the failure to do so constitutes waiver. Id. | Party complaining that affidavit is defective has a duty to direct this complaint to trial court, and failure to do so constitutes waiver. Trial Procedure Rule 56(E). | oes a party complaining a defective affidavit have any duty to direct the complaint to a trial court? | Affidavits - Memo 68 - SNJ_61997.docx | ROSS-003282860-ROSS-003282862 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 9933 | Jota v. Texaco, 157 F.3d 153 | 221+176 | First, although the plaintiffs had submitted to Judge Rakoff various documents showing that Ecuadoran legislative committees"and possibly the Ecuadoran Congress as a whole"supported the litigation, the official position of the Ecuadoran Ambassador to the United States remained opposed to the litigation and especially to Ecuador's role in it. An ambassador generally has the power to "bind the state that he represents," First Fidelity Bank, N.A. v. Government of Antigua & Barbuda, 877 F.2d 189, 192 (2d Cir.1989), unless he purports to enter into an agreement without the power to do so and in collusion with a contracting party that knows he lacks such power, see id. at 192, 193"94. To this point, the Republic responds that under Ecuadoran law, only the Attorney General is authorized to make representations on behalf of the Republic in a judicial proceeding. See Ecuador Const. art 139 ("The Attorney General will be the only judicial representative of the State ...."), quoted in Brief for Republic of Ecuador at 9 n. 5. However, the quoted language seems best understood to make the Attorney General the sole representative of the state before the Ecuadoran judiciary, without disturbing the traditional authority of ambassadors to represent the state's position before foreign courts. In any event, Ambassador Teran enjoyed apparent authority, and Texaco and the District Court were entitled to rely on his representations unless they were actually aware that he lacked such authority. See First Fidelity, 877 F.2d at 193 n. 2, 194. | Ambassador generally has power to bind state that he represents, unless he purports to enter into agreement without power to do so and in collusion with contracting party that knows he lacks such power. | Does an ambassador have the power to bind the state that he represents? | Ambassadors and Consuls - Memo 22 - RK.docx | ROSS-003283361-ROSS-003283363 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 9934 | Allstate Ins. Co. v. Palumbo, 109 Conn. App. 731 | 366+1 | "As our Supreme Court has explained, [t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.. The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.. As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Warning Lights & Scaffold Service, Inc. v. O & G Industries, Inc., 102 Conn.App. 267, 272, 925 A.2d 359 (2007). Equitable subrogation "derives from the equitable principle against unjust enrichment.." (Internal quotation marks omitted.) at 276, 925 A.2d 359. "A claimant who has established an entitlement to restitution by proving the unjust enrichment of the defendant at the claimant's expense is ordinarily entitled to a personal money judgment against the defendant for the amount of the enrichment in money." Restatement (Third), Restitution and Unjust Enrichment, ch. 7, introductory note, p. 117 (Tentative Draft No. 5, March 12, 2007). | The right of equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | Does equitable subrogation take place as a matter of equity? | Subrogation - Memo 320 - RM C.docx | ROSS-003283749-ROSS-003283751 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9935 | Oliver v. Coffman, 112 Ind. App. 507 | 302+8(3) | We do not think that the allegation, considered in its entirety, stated a legal conclusion. While an averment that an action was "unlawful" or "wrongful" is a mere legal conclusion (Coburn v. New Telegraph Co., 1901, 156 Ind. 90, 59 N.E. 324, 52 L.R.A. 671), an allegation that it was carelessly, negligently or intentionally done states an ultimate fact. Pittsburgh, etc., R. Co. v. Nichols, supra. | Averment that an action was unlawful or wrongful is a mere "legal conclusion", but allegation that action was carelessly, negligently or intentionally done states an "ultimate fact." | Is an averment that an act was negligently or carelessly done an ultimate fact? | Pleading - Memo 113 - RMM.docx | ROSS-003285124-ROSS-003285125 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9936 | Mercer v. Andersen, 715 N.W.2d 114 | 30+3208 | The parties or the court may extend the statutory expert-review deadlines for good cause. Minn.Stat. " 145.682, subd. 4(b) (2004). The statutory provision permitting an extension, however, must be read in conjunction with rule 6.02 of the Minnesota Rules of Civil Procedure. Stern v. Dill, 442 N.W.2d 322, 324 (Minn. Rule 6.02 gives the district court discretion to extend deadlines previously set in an order. Minn. R. Civ. P. 6.02. Ifa previously set deadline has already passed, however, the court may only grant an extension when the failure to act resulted from excusable neglect. Id. 6.02(2). Excusable neglect exists when the plaintiff has a reasonable case on the merits, has a reasonable excuse for not complying with the section 145.682 time limits, acted with due diligence after learning of the time limits, and will not prejudice the defendant by extending the time limits. Anderson, 608 N.W.2d at 850. The district court has broad discretion to amend scheduling-order deadlines, and we review its decision for an abuse of discretion. Broehm, 690 N.W.2d at 727. | District court has broad discretion to amend scheduling-order deadlines, and appellate courts review its decision for an abuse of discretion. | "Does a district court have broad discretion to amend scheduling-order deadlines, and appellate courts review its decision for an abuse of discretion?" | Pretrial Procedure - Memo # 1616 - C - KG.docx | ROSS-003286245-ROSS-003286246 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 9937 | Hunt v. Jacobson, 178 Misc. 201 | 34+34.2(3) | Statutes enacted for the benefit of persons engaged in military service are a recognized institution in this country, and, being remedial, are to be construed liberally (Greening v. Sheffield, Minor, Ala., 276), possessing as they do, attributes of privilege and exemption (Land Title & Trust Co. v. Rambo, 174 Pa. 566, 34 A. 207), and it has been held that even in the absence of such a statute public policy demands the recognition of such exemption. Land Title & Trust Co. v. Rambo, supra. | Statutes enacted for the benefit of persons engaged in military service are a recognized institution in the United States, and being remedial are to be construed liberally. Soldiers' and Sailors' Civil Relief Act of 1940, S 100 et seq., 50 U.S.C.A.Appendix S 501 et seq. | Should statutes enacted for the benefit of persons engaged in military service be liberally construed? | Armed Forces - Memo 26 - RK.docx | ROSS-003287086-ROSS-003287087 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 9938 | State Bar of California v. Statile, 168 Cal. App. 4th 650 | 366+1 | "Subrogation, a legal fiction, is broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer. Stated another way, it is a substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities." (73 Am.Jur.2d (2001) Subrogation, " 1, pp. 541"542, fns. omitted.) " "Statutory subrogation," as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction." (Id. at pp. 544"545, 216 Cal.Rptr. 367, 702 P.2d 525, fns. omitted.) " "The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source." " (Board of Administration v. Glover (1983) 34 Cal.3d 906, 915, 196 Cal.Rptr. 330, 671 P.2d 834, quoting Ventura County Employees' Retirement Association v. Pope (1978) 87 Cal.App.3d 938, 952, 151 Cal.Rptr. 695.) "The "true nature of subrogation" is that " "it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." " ' " (Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc. (1997) 52 Cal.App.4th 553, 558, 60 Cal.Rptr.2d 591.) It is abundantly clear here that Statile was primarily answerable for any loss suffered by the applicants and, in equity and good conscience, should | Subrogation is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer. | Is subrogation a legal fiction? | Subrogation - Memo 298 - RM C.docx | ROSS-003289120-ROSS-003289122 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9939 | Commonwealth Land Title Ins. Co. v. Higgins, 975 So. 2d 1169 | 307A+36.1 | Under rule 1.220(d)(1), Florida Rules of Civil Procedure, a court "may order postponement of the determination [of class certification] pending the completion of discovery concerning whether the claim or defense is maintainable on behalf of a class." As a general rule, however, precertification discovery should be limited to matters relevant to class certification, not the merits of the case. Policastro v. Stelk, 780 So.2d 989, 991 (Fla. 5th DCA 2001); see also Baptist Hosp. of Miami v. DeMario, 683 So.2d 641, 643 (Fla. 3d DCA 1996)(granting a petition for certiorari, quashing the trial court's order denying petitioner's motion for protective order, and remanding with directions that the trial court stay merits discovery "pending its determination of [respondent's] standing to serve as the class representative"); and Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997)(affirming denial of full merits discovery pending determination of plaintiffs' standing, citing Baptist Hosp.) | As a general rule, precertification discovery should be limited to matters relevant to class certification, not the merits of the case. West's F.S.A. RCP Rule 1.220(d)(1). | "Should precertification discovery be limited to matters relevant to class certification, not the merits of the case?" | Pretrial Procedure - Memo # 4934 - C - LN.docx | ROSS-003291243-ROSS-003291245 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 9940 | In re APB Online, 259 B.R. 812 | 349A+10 | Whether the transaction involves a lease or disguised sale under Connecticut law depends on the intention of the parties as determined by the facts of each case. Granite Equip. Leasing Corp. v. Acme Pump Co., 335 A.2d 294, 296 (Conn.1973); see Tishman Equip. Leasing, Inc. v. Levin, 152 Conn. 23, 202 A.2d 504, 507 (1964) (discussing pre-UCC law). The Court must look beyond the form to the substance of the agreement, id.; Tennant Co. v. Martin's Landscaping, Inc., 40 Conn.Supp. 475, 515 A.2d 665, 667 (1986), and may consider the surrounding negotiations. General Elec. Capital Corp. v. Palutsis, No. 94"C"3782, 1995 WL 263459 (N.D.Ill. May 2, 1995)(applying Connecticut law); Tishman Equip. Leasing, Inc. v. Levin, 202 A.2d at 507; Delta Leasing Servs. Corp. v. Gentile, No. CV"88"0097669, 1994 WL 7685 (Conn.Super.Ct. Mar. 1, 1994); Oxford Resources Corp. v. Burdo Painting, Inc., No. CV"91"280005, 1992 WL 204691 (Conn.Super.Ct. Aug. 19, 1992); see In re Leasing Consultants, Inc., 486 F.2d 367, 373 (2d Cir.1973)(in determining whether a transaction involves a "true lease" or a disguised security interest, the court may consider factors outside the lease as well as the contents of the lease). | Under Connecticut law, whether transaction qualifies as true "lease," or as disguised sale with security agreement, depends upon intention of parties, as determined by facts of case. | When should a court examine facts and circumstances of a transaction to determine whether a lease is lease or sale with security agreement? | Secured Transactions - Memo 99 - C - SHB_68754.docx | ROSS-003292678-ROSS-003292679 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9941 | Randles v. Moore, 780 So. 2d 158 | 307A+561.1 | The standard to be applied when reviewing an order granting a motion to dismiss is de novo. See W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999). Additionally, we must limit our examination to the four corners of the complaint. See Wilson v. News-Press Publishing Co., 738 So.2d 1000, 1001 (Fla. 2d DCA 1999). An affirmative defense may be a basis for a motion to dismiss only if it appears within the four corners of the complaint. See Lowery v. Lowery, 654 So.2d 1218, 1219 (Fla. 2d DCA 1995). | An affirmative defense may be a basis for a motion to dismiss only if it appears within the four corners of the complaint. | Can an affirmative defense be a basis for a motion to dismiss only if it appears within the four corners of the complaint? | Pretrial Procedure - Memo # 9192 - C - NS_60501.docx | ROSS-003293024-ROSS-003293025 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 9942 | Larson v. Wisconsin Dep't of Indus., Labor & Human Relations, 76 Wis. 2d 595 | 92+2528 | Since the legislature has clearly made the determination that posthumously born children shall be eligible to receive additional benefits but not primary benefits, that result, reflecting, as it does, public policy, can hardly be deemed to be absurd. Workmen's compensation is wholly statutory. Questions on what should properly be the public policy concerning it are determined by the legislature and not the courts. Frisbie, supra, 45 Wis.2d 85, 172 N.W.2d 346; Harry Crow & Son, Inc. v. Industrial Comm., 18 Wis.2d 436, 442, 118 N.W.2d 841 (1963). As this court stated in Frisbie, supra, 45 Wis.2d 89, 172 N.W.2d 350: " . . . Where the pathway to recovery has been narrowed by legislation, it is the legislature which alone can broaden that pathway." See also: Halama v. ILHR Department, 48 Wis.2d 328, 332, 179 N.W.2d 784 (1970). | Workmen's compensation is wholly statutory and questions as to what should properly be the public policy concerning it are determined by the legislature and not by the courts. | Should the questions on what should properly be the public policy concerning workmen's compensation determined by the legislature? | Workers Compensation - Memo #558 - C - ANC_58940.docx | ROSS-003293333-ROSS-003293334 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 9943 | Fin. Freedom Acquisition v. Standard Bank & Tr. Co., 2014 IL App (1st) 120982 | 172H+1555 | Although the counterclaim was timely filed, Standard Bank is not entitled to rescind the loan transaction because it is not an "obligor." Neither TILA nor Regulation Z defines "obligor." Black's Law Dictionary defines "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor." Black's Law Dictionary 1181 (9th ed. 2009). "The right to rescind may be exercised only by the obligor, i.e. the person to whom credit is extended. Thus, an individual who is not named on the Note executed by his or her spouse is not an "obligor" and does not have a right to rescind." (Emphasis added.) Ferreira v. Mortgage Electronic Registration Systems, Inc., 794 F.Supp.2d 297, 302"03 (D.Mass.2011). | The right to rescind a loan transaction under the Truth in Lending Act (TILA) may be exercised only by the obligor, that is, the person to whom credit is extended; thus, an individual who is not named on the promissory note executed by his or her spouse is not an obligor, and does not have a right to rescind. Truth in Lending Act, S 125(a), 15 U.S.C.A. S 1635(a). | individual who is not named on the note executed by his or her spouse have the right to rescind | Consumer Credit -Memo 142 -DB_59673.docx | ROSS-003294506-ROSS-003294507 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 9944 | State Bar of California v. Statile, 168 Cal. App. 4th 650 | 366+1 | "Subrogation, a legal fiction, is broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer. Stated another way, it is a substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities." (73 Am.Jur.2d (2001) Subrogation, " 1, pp. 541"542, fns. omitted.) " "Statutory subrogation," as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction." (Id. at pp. 544"545, 216 Cal.Rptr. 367, 702 P.2d 525, fns. omitted.) " "The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source." " (Board of Administration v. Glover (1983) 34 Cal.3d 906, 915, 196 Cal.Rptr. 330, 671 P.2d 834, quoting Ventura County Employees' Retirement Association v. Pope (1978) 87 Cal.App.3d 938, 952, 151 Cal.Rptr. 695.) "The "true nature of subrogation" is that " "it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." " ' " (Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc. (1997) 52 Cal.App.4th 553, 558, 60 Cal.Rptr.2d 591.) It is abundantly clear here that Statile was primarily answerable for any loss suffered by the applicants and, in equity and good conscience, should | Statutory subrogation arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction. | Is statutory subrogation governed by the terms of the statute under which it is claimed? | Subrogation - Memo 373 - VP C.docx | ROSS-003295071-ROSS-003295072 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9945 | Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., 853 F.3d 173 | 221+342 | As discussed, in addition to the political-question doctrine, the district court concluded subject-matter jurisdiction was foreclosed by the act-of-state doctrine. KPCC, 2016 WL 1259518, at. That doctrine, however, "applies only when the dispute implicates the legitimacy of public acts undertaken by a sovereign nation". Af"Cap Inc. v. Republic of Congo, 383 F.3d 361, 372 n.14 (5th Cir. 2004) (citing Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Callejo v. Bancomer, S.A., 764 F.2d 1101, 1112"24 (5th Cir. 1985)). In deciding whether this doctrine applies, courts must look not only to the acts of the named parties, but to any sovereign acts the validity of which would be called into question by adjudication of the action. Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines, 965 F.2d 1375, 1387"88 (5th Cir. 1992). "The burden lies on the proponent of the doctrine to establish the factual predicate for [its] application." Spectrum Stores, Inc. v. Citgo Petroleum Corp., 632 F.3d 938, 954 (5th Cir. 2011). | The act-of-state doctrine applies only when a dispute implicates the legitimacy of public acts undertaken by a sovereign nation. | Does the act-of-state doctrine apply when a dispute implicates the legitimacy of public acts undertaken by a sovereign nation? | International Law - Memo # 108 - C - LK.docx | ROSS-003297086-ROSS-003297087 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9946 | Pioneer Towing v. Illinois Commerce Comm'n, 99 Ill. App. 3d 403 | 317A+111 | Generally, public utilities are afforded such financial safeguards because of the unique position they occupy in the market place. It is the policy of the State to prevent rather than promote competition among public utilities, since the method of regulation of public utilities is based on the theory of regulated monopoly rather than competition. Gulf Transport Co. v. Commerce Com. (1949), 402 Ill. 11, 83 N.E. 336.) This policy is premised on the belief that competition does not promote efficient public service. (Illinois Power & Light Corp. v. Commerce Com. (1926), 320 Ill. 427, 151 N.E. 236.) For instance, no public utility can commence operations until it has received from the Commission a certificate that public convenience and necessity require the transaction of such business. (Ill.Rev.Stat.1979, ch. 1112/3, par. 56.) This requirement limits the number of public utilities in a given area, since a second utility cannot be authorized to serve unless there is evidence that the existing utility cannot adequately do so. (Illinois Highway Transportation Co. v. Commerce Com. (1950), 404 Ill. 610, 90 N.E. 86.) Furthermore, every public utility has a duty to serve all qualified applicants. Il. Rev.Stat.1979, ch. 1112/3, par. 38.) Since public utilities are compelled to serve customers, the State must allow them to charge rates sufficient to make a reasonable return on their investment. Otherwise, there would be a deprivation of the investor's property without due process of law. See City of Edwardsville v. Illinois Bell Telephone Co. (1924), 310 Ill. 618, 142 N.E. 197. | Generally, public utilities are afforded financial safeguards because of the unique position they occupy in the marketplace, and it is the policy of the state to prevent rather than to promote competition among public utilities, since method of regulation of public utilities is based on theory of regulated monopoly rather than competition. | Is the regulation of public utilities based on the theory of regulated monopolies ? | Public Utilities - Memo 175 - AM.docx | ROSS-003300185-ROSS-003300187 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 9947 | Briosos v. Wells Fargo Bank, 737 F. Supp. 2d 1018 | 172H+1556 | As both parties recognize, there is a split of authority regarding whether " 1635(f) requires a borrower to file a rescission claim within three years after a transaction is consummated, or whether the borrower must only assert his right to rescission within that period. In support of its position, Defendant primarily relies on the Ninth Circuit's decision in Miguel v. Country Funding Corp., 309 F.3d 1161 (9th Cir.2002). In that case, the Ninth Circuit reviewed the Supreme Court's decision in Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), and held that " 1635(f) "is a statute of repose, depriving the courts of subject matter jurisdiction when a " 1635 claim is brought outside the three-year limitation period." Miguel, 309 F.3d at 1164. | Three year period governing Truth in Lending Act (TILA) rescission claims only required that borrower exercise his right to rescind within the three-year period; it did not require that he file a rescission claim within that period. Truth in Lending Act, S 125(f), 15 U.S.C.A. S 1635(f). | Does a borrower need to file a rescission claim within three years after a transaction is consummated or must he only assert his right to rescission within that period under TILA? ? | Consumer Credit - Memo 203 - RK_61865.docx | ROSS-003306418-ROSS-003306419 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 9948 | Threadgill v. Peabody Coal Co., 34 Colo. App. 203 | 113+8 | In order for a trade custom or usage to be binding upon a person who has not expressly agreed to be bound by it, it must be reasonable. Alden Sign Co. v. Roblee, 121 Colo. 432, 217 P.2d 867; 5 S. Williston, Contracts ss 658, 659 (3d ed. W. Jaeger). This requirement in the law of trade usage generally specifies only that the usage not be illegal or in violation of public policy. 5 S. Williston, Contracts s 658 (3d ed. W. Jaeger). | In order for a trade custom or usage to be binding upon a person who has not expressly agreed to be bound by it, it must be reasonable and must not be illegal or in violation of public policy. | "Must a trade custom or usage be reasonable, in order to be binding upon a person?" | Customs & Usage - Memo 15 - JS.docx | ROSS-003309901 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 9949 | Allstate Ins. Co. v. Palumbo, 109 Conn. App. 731 | 366+1 | Although "[s]ubrogation is a highly favored doctrine ... which courts should be inclined to extend rather than restrict"; (internal quotation marks omitted) Wasko v. Manella, supra, 269 Conn. at 543, 849 A.2d 777; "[t]here is no general rule to determine whether a right of subrogation exists. Thus, ordering subrogation depends on the equities and attending facts and circumstances of each case." 73 Am.Jur.2d 552, Subrogation " 10 (2001). "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. Kakalik v. Bernardo, 184 Conn. 386, 395, 439 A.2d 1016 (1981); Robert Lawrence Associates, Inc. v. Del Vecchio, 178 Conn. 1, 18"19, 420 A.2d 1142 (1979); Gager v. Gager & Peterson, LLP, 76 Conn.App. 552, 560, 820 A.2d 1063 (2003).... When the trial court draws conclusions of law from its balancing of the equities, however, our review is plenary. Torres v. Waterbury, 249 Conn. 110, 118, 733 A.2d 817 (1999)." (Citations omitted; internal quotation marks omitted.) Wasko v. Manella, supra, at 542"43, 849 A.2d 777. | In considering equitable subrogation, determination of what equity requires in a particular case, and the balancing of the equities, is a matter for the discretion of the trial court. | Is the determination of what equity requires in a particular case and the balancing of the equities a matter for the discretion of the trial court? | Subrogation - Memo 140 - VP C.docx | ROSS-003311028-ROSS-003311029 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9950 | Dees v. Logan, 281 Ga. App. 837 | 307A+3 | "A trial court's ruling on a motion in limine is reviewed for abuse of discretion. [Cits.]" Forsyth County v. Martin, 279 Ga. 215, 221(3), 610 S.E.2d 512 (2005). Because the grant of a motion in limine forecloses the admission of the evidence at trial, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." (Citation omitted.) Id. | Because the grant of a motion in limine forecloses the admission of the evidence at trial, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care. | Does the grant of a motion in limine foreclose the admission of the evidence at trial? | Pretrial Procedure - Memo # 913 - C - TJ.docx | ROSS-003311519-ROSS-003311520 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 9951 | Lorber Indus. of California v. Los Angeles Printworks Corp., 803 F.2d 523 | 25T+112 | Arbitration, however favored by the courts and Congress, is a contractual right, and may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. Moruzzi v. Dynamics Corp. of America, 443 F.Supp. 332, 334 (S.D.N.Y.1977); see also Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 250, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977). Mark Fabrics has demonstrated no basis for asserting the right to compel Lorber to arbitrate its copyright infringement claims against Mark Fabrics. The district court's denial of Mark Fabrics' motion to stay proceedings and compel arbitration is affirmed. | Arbitration, however favored by courts and Congress, is a contractual right, and may not be invoked by one who is not a party to the agreement and who does not otherwise possess the right to compel arbitration. | Can a person who is not a party to the agreement invoke the contractual right of arbitration? | Alternative Dispute Resolution - Memo 83 - AKA.docx | ROSS-003312233-ROSS-003312234 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9952 | Lifanda v. Elmhurst Dodge, 237 F.3d 803 | 172H+1342 | We view the " "sufficiency of TILA-mandated disclosures ... from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." " Smith v. Cash Store Management, Inc., 195 F.3d 325, 327"28 (7th Cir.1999), quoting Cemail v. Viking Dodge, 982 F.Supp. 1296, 1302 (N.D.Ill.1997). Therefore, our task is to determine whether, taking the facts in the light most favorable to Lifanda, the TILA disclosures were clear and conspicuous to an ordinary consumer as a matter of law. The defendants in fact rely upon three different documents to satisfy the TILA disclosures here, which are reproduced in relevant part in the appendix to this opinion. According to the defendants, the retail installment contract informed Lifanda that he could obtain ATR insurance elsewhere, the purchase order revealed the premium for the ATR protection, and the ATR form set forth the term of the ATR protection.se 2: Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384, | Court views the sufficiency of TILA-mandated disclosures from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Is the sufficiency of TILA-mandated disclosures to be viewed from the standpoint of an ordinary consumer? | Consumer Credit - Memo 239 - RK_66306.docx | ROSS-003321461-ROSS-003321462 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 9953 | State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099 | 366+1 | "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." West Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204, 206 (Fla. 5th DCA 1986). Florida recognizes two types of subrogation: conventional or contractual subrogation and equitable or legal subrogation. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999). Conventional or contractual subrogation arises from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. Equitable or legal subrogation is not created by a contract but by the legal consequences of the acts and relationships of the parties. Id. at 646. The doctrine is based on the policy that no person should benefit by another's loss, and it "may be invoked wherever justice demands its application, irrespective of technical legal rules." West Am. Ins. Co., 495 So.2d at 20 | The doctrine of equitable subrogation is based on the policy that no person should benefit by another's loss, and it may be invoked wherever justice demands its application, irrespective of technical legal rules. | How is equitable subrogation created? | Subrogation - Memo 201 - RM C.docx | ROSS-003322607-ROSS-003322609 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9954 | Velazquez v. Serrano, 43 So. 3d 82 | 366+1 | We review an order granting summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Equitable subrogation is generally defined as follows:Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916). Subrogation "is not allowed if it works any injustice to the rights of others." Fed. Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); see also Brannon v. Hills, 111 Fla. 491, 149 So. 556, 557 (1933); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987). A party's entitlement to subrogation therefore "depends upon the equities and attending facts of each case." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999). | Equitable subrogation is not allowed if it works any injustice to the rights of others; a party's entitlement to subrogation therefore depends upon the equities and attending facts of each case. | Is subrogation allowed if it works any injustice to the rights of others? | Subrogation - Memo 390 - VP C.docx | ROSS-003326251-ROSS-003326252 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9955 | Kickasola v. Jim Wallace Oil Co., 144 Ga. App. 758 | 30+4173 | There appear to have been various hearings in this case prior to trial having to do with motions for summary judgment and like nonjury matters. Several briefs were also filed during the preliminary stages of litigation which are incorporated in this record. It is error to refuse to grant a pre-trial hearing and order pursuant to Code s 81A-116 where a timely motion to this effect has been entered. Malcolm v. Cotton, 128 Ga.App. 699(6), 197 S.E.2d 760. But where, as here, the plaintiff's petition was filed October 10, 1974, and thereafter numerous special hearings were had, a record of 658 pages was built up, mostly due to the efforts of plaintiff's counsel, and no demand for a pre-trial hearing was made until January 17, 1977, the day the case was scheduled for trial, it appears that the motion was not timely. Under these circumstances failure to enter a pre-trial order will not require a reversal of the case. | It is error to refuse to grant a pretrial hearing and order where a timely motion to this effect has been entered; but where, in the instant case, plaintiff's petition was filed October 10, 1974, and thereafter numerous special hearings were had, a record of 658 pages was built up, mostly due to the efforts of plaintiff's counsel, and no demand for a pretrial hearing was made until January 17, 1977, the day the case was scheduled for trial, the motion was untimely and the failure to enter a pretrial order would not require reversal of the case. Code, S 81A-116. | Is it an error to refuse to grant a pretrial hearing and order where a timely motion to this effect has been entered? | Pretrial Procedure - Memo # 1346 - C - TJ.docx | ROSS-003326596-ROSS-003326597 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 9956 | In re Potash Antitrust Litig., 686 F. Supp. 2d 816 | 221+342 | The act-of-state doctrine is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws." Nocula v. UGS Corp., 520 F.3d 719, 727"28 (7th Cir.2008) (citation omitted). The doctrine is applicable where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 404"05, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). Accordingly, the doctrine is only invoked when the court must decide the effect of an official action by a foreign sovereign. Id. (emphasis added). | The act-of-state doctrine, which generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws, is only invoked when the court must decide the effect of an official action by a foreign sovereign. | Is the act-of-state doctrine only invoked when the court must decide the effect of an official action by a foreign sovereign? | International Law - Memo # 207 - C - MLS.docx | ROSS-003327982-ROSS-003327984 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 9957 | Bradford Partners II v. Fahning, 231 S.W.3d 513 | 366+7(1) | The Texas Supreme Court has held: "Because the surety promises to pay the debt of another, equity confers the right of subrogation. If the surety pays the debt of the principal, the surety is subrogated to all of the rights, remedies, equities, and securities of the creditor." Crimmins v. Lowry, 691 S.W.2d 582, 585 (Tex.1985). A surety has the right to foreclose on collateral given as security for the note. Id. The right of a guarantor to pursue his subrogation rights is not dependent upon the contract or an assignment to him from the creditor. Rather the guarantor's subrogation rights result from the payment of the principal's debt. Fulton v. South Oak Cliff State Bank, 439 S.W.2d 730, 733 (Tex.Civ.App.-Dallas 1969, writ ref'd n.r.e.) (citing Fulton v. Edge, 435 S.W.2d 263, 265 (Tex.Civ.App.-Waco 1968, writ ref'd n.r.e.)). | The right of a guarantor to pursue his subrogation rights is not dependent upon the contract or an assignment to him from the creditor; rather, the guarantor's subrogation rights result from the payment of the principal's debt. | Do the guarantor's subrogation rights result from the payment of the principal's debt? | Subrogation - Memo # 738 - C - SU.docx | ROSS-003328889-ROSS-003328890 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9958 | United States v. Sanchez Vazquez, 585 F. Supp. 990 | 111H+8 | The court determines that the correct interpretation of the implementing regulations in defining the term "financial institution" is a bank, including each of its branches. Thus, if the financial institution (i.e., the bank, or in particular, any of its branches) is aware of a cash transaction in excess of $10,000 on a particular day, the bank or its particular branch must file a CTR. Likewise, if there are multiple cash transactions at different branches of the same financial institution (i.e., bank) which exceed $10,000, then that particular bank must file a CTR. This interpretation is supported by the supplemental instructions for completing Form 4789 Currency Transaction Report, issued by the Department of Treasury, which states:If a financial institution is aware that an individual or organization has conducted a series of currency transactions in one day at the financial institution, or at different branch offices of the financial institution, totaling more than ten thousand ($10,000.00) dollars, a report should be filed for all such transactions. | If financial institution, i.e., bank, or in particular, any of its branches, is aware of cash transaction in excess of $10,000 on a particular day, the bank or its particular branch must file a currency transaction report. 31 U.S.C.A. SS 5312, 5312(a)(2), 5313. | When does a financial institution file a currency transaction report? | 000111.docx | LEGALEASE-00115394-LEGALEASE-00115396 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9959 | People v. Lapcheske, 73 Cal. App. 4th 571 | 20+67 | With regard to the crime of trespass, defendant is wrong. As discussed above, the "title" acquired by an adverse possessor is that conferred by occupancy. The title conferred by occupancy is not factually inconsistent with the crime of trespass. An adverse possessor of the type here in question, i.e., one taking possession under color of right established by physical presence on the property as an occupant, is "in possession as a naked trespasser." (Kimball v. Lohmas (1866) 31 Cal. 154, 159.) If that trespass is unchallenged by the true property owner for a period of five years, the possession ripens into actual title. (SeeCode of Civ. Proc., " 321; see alsoNewman v. Cornelius (1970) 3 Cal.App.3d 279, 288, 83 Cal.Rptr. 435, which sets out the five elements necessary to establish title by adverse possession.) In short, an adverse possessor is merely a trespasser, i.e., a person who enters on the land of another with the specific intent of injuring, interfering with or obstructing that other person's property rights.(Pen.Code, " 602 subd. (j).) | An adverse possessor is merely a "trespasser," i.e., a person who enters on the land of another with the specific intent of injuring, interfering with or obstructing that other person's property rights. West's Ann.Cal.Penal Code S 602(j). | Is an adverse possessor a trespasser? | 000055.docx | LEGALEASE-00115508-LEGALEASE-00115509 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 9960 | People v. Wesley, 238 A.D.2d 939 | 181+9 | "[T]he crime of forgery involves the making, altering, or completing of an instrument by someone other than the ostensible maker or drawer or an agent of the ostensible maker or drawer" (People v. Levitan, 49 N.Y.2d 87, 90, 424 N.Y.S.2d 179, 399 N.E.2d 1199). Penal Law " 170.00(4) describes when a person "falsely makes" a written instrument. "To come within the ambit of this section, it is necessary that the actual maker or drawer be someone other than the ostensible maker or drawer and that the actual maker or drawer not have the authority to act for the ostensible maker or drawer. The section has no application where, as here, the ostensible [maker] and the actual [maker] are in fact one and the same person" (People v. Levitan, supra, at 90"91, 424 N.Y.S.2d 179, 399 N.E.2d 1199). Because defendant is the same person as "John E. Zopp" and defendant did not intend to assume the identity of a different person by signing the name of "John E. Zopp", his conduct does not constitute forgery in the second degree (see, People v. Johnson, 96 A.D.2d 1083, 466 N.Y.S.2d 969, affd. 63 N.Y.2d 888, 483 N.Y.S.2d 201, 472 N.E.2d 1029, rearg. denied 64 N.Y.2d 647, 485 N.Y.S.2d 1030, 474 N.E.2d 261; People v. Briggins, 50 N.Y.2d 302, 428 N.Y.S.2d 909, 406 N.E.2d 766; People v. Dunn, 185 A.D.2d 54, 592 N.Y.S.2d 299, lv. denied 81 N.Y.2d 970, 598 N.Y.S.2d 771, 615 N.E.2d 228; People v. Jackson, 139 A.D.2d 837, 527 N.Y.S.2d 317, lv. denied 72 N.Y.2d 919, 532 N.Y.S.2d 853, 529 N.E.2d 184). | To come within ambit of forgery statute describing when person "falsely makes" written instrument, it is necessary that actual maker or drawer be someone other than ostensible maker or drawer and that actual maker or drawer not have authority to act for ostensible maker or drawer. McKinney's Penal Law S 170.00, subd. 4. | "To constitute forgery, is it necessary that the actual maker or drawer be someone other than the ostensible maker or drawer of the instrument?" | Forgery - Memo 11 - RM.docx | LEGALEASE-00000135-LEGALEASE-00000137 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 9961 | Wagner v. Moseley, 104 So. 2d 86 | 315+134 | A life tenant is not without duties owing to a remainderman. Thus the relationship of a life tenant to a remainderman is frequently designated that of a trustee or quasi-trustee in the sense that the life tenant cannot injure or dispose of the property to the detriment of the rights of the remainderman. 31 C.J.S. Estates s 34, pp. 42-43; and 33 Am.Jur., Life Estates, Remainders, section 217, pp. 700-701. And the general rule is that a life tenant cannot acquire an outstanding title, interest, claim, or encumbrance for his own exclusive use against a remainderman, nor can this be done by one claiming under him or through an intermediary, but it will be deemed as having been acquired for the benefit of the life tenant and the remainderman.The disability which fastens onto a life tenant to assert title against his remainderman ordinarily applies also to the spouse of the life tenant. 31 C.J.S. Estates s 35, pp. 44-45. See also Rushton v. McLaughlin, 1925, 213 Ala. 380, 104 So. 824, and Lowry v. Lyle, 1924, 226 Mich. 676, 198 N.W. 245. Such transactions under proper circumstances entitle the life tenant to contribution from a remainderman for his proportionate share of the amount paid by such life tenant. 31 C.J.S. Estates s 35, pp. 44-45, and Snow v. Arnold, 1938, 132 Fla. 435, 181 So. 7. | A life tenant owes certain duties to remainderman, and relationship of life tenant to remainderman is frequently designated as that of a trustee or quasi-trustee in sense that life tenant cannot injure or dispose of property to detriment to rights of remainderman. | Does the life tenant have any duties towards the remainderman? | 04812.docx | LEGALEASE-00077098-LEGALEASE-00077099 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9962 | Dyess v. Bay John Developers II, 13 So. 3d 390 | 414+1000 | The defendants next assert that the county's subdivision regulations are not an improper attempt to apply zoning restrictions to Bay John's property. Our Supreme Court has noted that " "[z]oning" and "planning" are not synonymous." Roberson v. City of Montgomery, 285 Ala. 421, 425, 233 So.2d 69, 72 (1970). In Alabama, the field of zoning "is primarily concerned with the regulation of the use of property, to structural and architectural designs of buildings, and the character [or type] of use to which the property or buildings within classified or designated districts may be put." Id.(emphasis added). In contrast, in Roberson, supra, our Supreme Court noted that " "planning" relates to the systematic and orderly development of a community." Id. | The field of zoning is primarily concerned with the regulation of the use of property, the structural and architectural designs of buildings, and the character or type of use to which the property or buildings within classified or designated districts may be put, that planning relates to the systematic and orderly development of a community. | Does the law of zoning govern the use of the land itself? | 000297.docx | LEGALEASE-00115713-LEGALEASE-00115715 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9963 | Mercury Oil Ref. Co. v. Oil Workers Int'l Union, CIO, 187 F.2d 980 | 25T+321 | Arbitration is designed to settle controversies and disputes between parties by a method other than through the regularly established tribunals of justice. Its purpose is to eliminate future disputes and litigation.To accomplish this, decisions arrived at by arbitrators must be final and complete and leave no doubt as to the manner in which they are to be made effective. The award need not be in technical or exact language but certainly is an essential and indispensable element to its validity. It must be sufficiently definite that only ministerial acts of the parties are needed to carry it into effect.3 Am.Jur., Arbitration and Award, Sec. 125; 6 C.J.S., Arbitration and Award, Sec. 84, p. 231; Baldwin v. Moses, 319 Mass. 401, 66 N.E.2d 24; McInnish v. Lanier, 215 Ala. 87, 107 So. 377; In re E. A. Laboratories, Sup., 50 N.Y.S.2d 222; Albert v. Goor, 70 Ariz. 214, 218 P.2d 736. It is clear that this first award does not meet the requirements necessary to make it effective. It did no more than say that Goodall should be reinstated to such employment which he was competent and capable of doing. The classification and the nature of the employment was left entirely to the judgment of the company. It did anything but eliminate future disputes and litigation. The employment offered by the company was promptly rejected by the union and Goodall who were willing to accept the demotion fixed by the subsequent action of the arbitration board. | Arbitration award need not be in technical or exact language but certainty is an essential and indispensable element to its validity and award must be sufficiently definite that only ministerial acts of parties are needed to carry it into effect. | Will arbitration help in settling disputes and controversies between parties? | Alternative Dispute Resolution - Memo 38 - JS.docx | ROSS-003281940-ROSS-003281942 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 9964 | Midfirst Bank v. Agho, 121 A.D.3d 343 | 21+15 | The "certificate" required by CPLR 2309(c), commonly referred to in case law as a "certificate of conformity," must contain language attesting that the oath administered in the foreign state was taken in accordance with the laws of that jurisdiction or the law of New York (see Real Property Law " 299"a[1] ). A "certificate of conformity" is separate and distinct from a " certificate of authentication," which attests to the oathgiver's authority under the foreign jurisdiction to administer oaths (see Patrick M. Connors, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C2309:3). In other words, a certificate of conformity speaks to the manner in which a foreign oath is taken, whereas a certificate of authentication speaks to the vested power of the individual to administer the oath (see Ford Motor Credit Co. v. Prestige Gown Cleaning Serv., 193 Misc.2d 262, 264, 748 N.Y.S.2d 235; Firstcom Broadcast Servs. v. New York Sound, 184 Misc.2d 524, 709 N.Y.S.2d 329). A certificate of authentication is sometimes colloquially referred to as a "flag" (see Citibank [S.D.], N.A. v. Martin, 11 Misc.3d 219, 224, 807 N.Y.S.2d 284; Siegel, N.Y. Prac. " 388 at 678 [5th ed. 2011] ). | A certificate of conformity is separate and distinct from a certificate of authentication, sometimes colloquially referred to as a "flag," which attests to the oathgiver's authority under the foreign jurisdiction to administer oaths, in that a certificate of conformity speaks to the manner in which a foreign oath is taken. McKinney's CPLR 2309(c). | What distinguishes certificate of conformity from certificate of authentication? | 003773.docx | LEGALEASE-00115791-LEGALEASE-00115792 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 9965 | Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, 982 F.2d 686 | 170A+2536.1 | Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment. See 28 U.S.C. " 1746;8 see also Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir.1985) (holding that an affidavit failing to satisfy the "technical, non-substantive requirements of execution" may be considered as part of a party's opposition to a motion for summary judgment provided the affidavit complies with 28 U.S.C. " 1746), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); Davis v. Frapolly, 756 F.Supp. 1065, 1067 (N.D.Ill.1991) (holding that unsworn statements signed under penalty of perjury may be considered as evidence in support of a motion for summary judgment). Because Axtmayer's unsworn written statement meets the requirements of 28 U.S.C. " 1746, the district court was entitled to give it the same weight as an affidavit when it considered defendant's motion. Therefore, because Axtmayer's unsworn statement established the existence of a genuine, material factual dispute concerning the substance of the parties' oral fee agreement, the district court properly denied Rodriguez's motion to dismiss. | Unsworn statement signed under penalty of perjury could be used, in lieu of sworn statement or affidavit, in support of opposition to motion to dismiss which was treated as motion for summary judgment. Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.A.; 28 U.S.C.A. S 1746. | Are unsworn statements signed under the penalty of perjury permitted in lieu of affidavits? | Affidavits - Memo 2-MS.docx | ROSS-003286217-ROSS-003286218 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 9966 | Ctr. for Biological Diversity v. FPL Grp., 166 Cal. App. 4th 1349 | 1.49E+04 | The concept of a public trust over natural resources unquestionably supports exercise of the police power by public agencies. (E.g., People v. K. Sakai Co. (1976) 56 Cal.App.3d 531, 535"536, 128 Cal.Rptr. 536.) But the public trust doctrine also places a duty upon the government to protect those resources. "The heart of the public trust doctrine, however it may be articulated, is that it imposes limits and obligations on governments." (Wilkinson, The Public Trust Doctrine in Public Land Law (1980) 14 U.C. Davis L.Rev. 269, 284, fn. omitted.) "[T]he public trust is more than an affirmation of state power to use public property for public purposes. It is an affirmation of the duty of the state to protect the people's common heritage of streams, lakes, marshlands and tidelands...." (National Audubon Society, supra, 33 Cal.3d at p. 441, 189 Cal.Rptr. 346, 658 P.2d 709.) "The state has an affirmative duty to take the public trust into account in the planning and allocation of water resources, and to protect public trust uses whenever feasible." (Id. at p. 446, 189 Cal.Rptr. 346, 658 P.2d 709.) In National Audubon Society, the court acknowledged that by statute this duty was placed upon the Division of Water Resources with respect to the allocation of water rights, but explicitly observed that "[t]hese enactments do not render the judicially fashioned public trust doctrine superfluous. Aside from the possibility that statutory protections can be repealed, the noncodified public trust doctrine remains important both to confirm the state's sovereign supervision and to require consideration of public trust uses in cases filed directly in the courts without prior proceedings before [the Division of Water Resources]." (Id. at p. 446, fn. 27, 189 Cal.Rptr. 346, 658 P.2d 709.) | The concept of a public trust over natural resources supports exercise of the police power by public agencies. | Will the concept of public trust over natural resources support exercise of the police power by public agencies? | 07368.docx | LEGALEASE-00077595-LEGALEASE-00077596 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9967 | Buechel v. State Dep't of Ecology, 125 Wash. 2d 196 | 414+1004 | We agree. The proper action on a land use decision cannot be foreclosed because of a possible past error in another case involving different property. No authority is cited for the proposition that the Board can be estopped from enforcing existing regulations by prior decisions not ever even considered by the Board. In Mercer Island v. Steinmann, 9 Wash.App. 479, 483, 513 P.2d 80 (1973), the court stated that a municipality is not precluded from enforcing zoning regulations if its officers have failed to properly enforce zoning regulations. That court explained that the elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance; the public has an interest in zoning that cannot be destroyed. Therefore, the landowner's argument that the action of the Board is arbitrary or capricious is not well taken. First, the Board never reviewed the 1980 neighbor's variance decision and its review would have been de novo. Second, the Department is not estopped from attempting to enforce zoning law because of a prior decision regarding other property.Case 4: Bldg. Com'r of Franklin v. Dispatch Commc'ns of New England, Inc., 48 Mass. App. Ct. 709. | Governmental zoning power may not be forfeited by action of local officers in disregard of statute and ordinance; public has interest in zoning that cannot be destroyed. | Can governmental zoning power be forfeited by actions of local officials? | Zoning and Planning - Memo 12 -LK.docx | ROSS-003298121-ROSS-003298123 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 9968 | Thompson v. Taylor, 192 So. 2d 609 | 25+3 | The decisions interpreting these provisions of the Uniform Negotiable Instrument Law hold that the addition of the name of another maker to a negotiable instrument is a material alteration which absolves the original nonconsenting maker of liability on the note to anyone except a holder in due course.See Stacey v. Fritzler, 160 Or. 231, 84 P.2d 97, 119 A.L.R. 887 (1939) (addition of wife's name as co-maker; discusses authorities); Annotation, Addition of maker * * * as material alteration discharging nonconsenting party, 119 A.L.R. 898 (see pp. 898-899: "It is clearly the general rule * * * that the addition of a maker to commercial paper is such a material alteration of the paper that nonconsenting obligors thereon are relieved from liability thereunder."); Britton, Bills and Notes, Section 278 (2d ed., 1961); 3 C.J.S. Alteration of Instruments s 30(1); 4 Am.Jur.2d Alteration of Instruments, Section 47; 5 U.L.A., Section 125. For Louisiana cases holding that a material alteration precludes recovery on a note against a party who did not assent to the alteration, see American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409, 445; Watts v. Brooks, La.App. 1 Cir., 136 So.2d 403 and cases cited therein; Simmons v. Green, 2 Cir., 18 La.App. 492, 138 So. 679. | Addition of name of another maker to negotiable instrument is material alteration which absolves original nonconsenting maker of liability on the note to anyone except holder in due course. LSA-R.S. 7:124, 7:125 and (4). | What constitutes an alteration of a negotiable instrument? | 003929.docx | LEGALEASE-00115870-LEGALEASE-00115871 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 9969 | Macon-Atlanta State Bank v. Gall, 666 S.W.2d 934 | 277+9 | The evidence shows Raymond Gall had notice of the sale for more than the statutory twenty days before the sales occurred. He had discussed the sales with his attorney on several occasions prior to the day of the sales. There was no substantial evidence produced to show that Raymond was in any way prejudiced by the lack of written notice. As a general rule one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice. First National Bank v. Oklahoma Savings & Loan Board, 569 P.2d 993 (Okl.1977). Statutes that impose certain technical requirements for notice should not be strictly enforced where the party seeking enforcement had actual notice and cannot show prejudice as a result of the failure to follow the technical requirements. Prairie Vista, Inc. v. Central Illinois Light Co., 37 Ill.App.3d 909, 346 N.E.2d 72 (1976). The Bank vice president testified that a notice was mailed to Raymond Gall by regular mail. A party entitled to personal written notice to a foreclosure hearing has been held to have waived that right by being present at the hearing and participating in it. Matter of Norton, supra, 255 S.E.2d at 289. | Statutes that impose certain technical requirements for notice should not be strictly enforced where party seeking enforcement had actual notice and cannot show prejudice as result of failure to follow technical requirements. | Can a party with actual notice be prejudiced by the failure to receive statutory notice? | 07103.docx | LEGALEASE-00089130-LEGALEASE-00089131 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9970 | Girard v. M/V ΓÇÿBlacksheepΓÇÖ, 840 F.3d 1351 | 344+1 | The elements of a salvage award claim were articulated by the Supreme Court over a century ago. See The Sabine, 101 U.S. at 384, 25 L.Ed. at 982. In The Sabine, the Supreme Court held that "[t]hree elements are necessary to a valid salvage claim: 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." Id. See also Legnos v. M/V Olga Jacob, 498 F.2d 666, 669"71 (5th Cir. 1974) (citing and applying the The Sabine standard for a salvage award claim).1 Neither The Sabine nor Legnos requires a plaintiff to show that the vessel could not have been rescued without the salvor's assistance to satisfy the first prong. Rather, all a plaintiff must show to establish the first element is that the ship was under a "marine peril." As the former Fifth Circuit explained in Legnos, it is a "mistaken notion that for salvors to establish peril they must prove that their actions were necessary to eliminate or alleviate such condition. The law of salvage makes no such demand." Id. at 671. Klein's requirement that the ship "could not have been rescued without the salvor's assistance" is in clear conflict with this precedent. | In order to obtain a salvage award for assisting a ship at sea, a salvor must prove three elements: (1) a marine peril; (2) service voluntarily rendered when not required as an existing duty or from a special contract; and (3) success in whole or in part, or that service rendered contributed to such success. | What elements must a plaintiff prove to succeed on a salvage claim pursuant to the general maritime law? | 003704.docx | LEGALEASE-00116025-LEGALEASE-00116026 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 9971 | English v. Carter, 300 Ky. 580 | 315+134 | "A life estate is a freehold interest in land, the term of which continues during the life of the owner or of some other person and extends to and includes all parts of the land included in the interests of the remaindermen. * * * The life tenant has the same interest in the land during the existence of his estate that the remainderman has in it after it comes into the latter's possession, except that the life tenant may not commit waste. He owns the land during the term of the life estate, but has not the right to remove any part of the corpus, to the damage of the inheritance." | Life tenant has the same interest in the land during the existence of his estate that remainderman has in it after it comes into latter's possession, except that life tenant may not commit waste. | Is the nature of interest of the life tenant in the property the same as that of a remainderman after it comes into his possession? | 004246.docx | LEGALEASE-00115987-LEGALEASE-00115988 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9972 | Wagner v. Moseley, 104 So. 2d 86 | 315+134 | A life tenant is not without duties owing to a remainderman. Thus the relationship of a life tenant to a remainderman is frequently designated that of a trustee or quasi-trustee in the sense that the life tenant cannot injure or dispose of the property to the detriment of the rights of the remainderman. 31 C.J.S. Estates s 34, pp. 42-43; and 33 Am.Jur., Life Estates, Remainders, section 217, pp. 700-701. And the general rule is that a life tenant cannot acquire an outstanding title, interest, claim, or encumbrance for his own exclusive use against a remainderman, nor can this be done by one claiming under him or through an intermediary, but it will be deemed as having been acquired for the benefit of the life tenant and the remainderman. The disability which fastens onto a life tenant to assert title against his remainderman ordinarily applies also to the spouse of the life tenant. 31 C.J.S. Estates s 35, pp. 44-45. See also Rushton v. McLaughlin, 1925, 213 Ala. 380, 104 So. 824, and Lowry v. Lyle, 1924, 226 Mich. 676, 198 N.W. 245. Such transactions under proper circumstances entitle the life tenant to contribution from a remainderman for his proportionate share of the amount paid by such life tenant. 31 C.J.S. Estates s 35, pp. 44-45, and Snow v. Arnold, 1938, 132 Fla. 435, 181 So. 7. | A life tenant owes certain duties to remainderman, and relationship of life tenant to remainderman is frequently designated as that of a trustee or quasi-trustee in sense that life tenant cannot injure or dispose of property to detriment to rights of remainderman. | What is the nature of relationship between a life tenant and a remainderman? | Life Estate - Memo 18-JS.docx | ROSS-003309672-ROSS-003309673 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9973 | E.E.O.C. v. Waffle House, 534 U.S. 279 | 25T+112 | he Court of Appeals wisely did not adopt respondent's reading of " 706(g). Instead, it simply sought to balance the policy goals of the FAA against the clear language of Title VII and the agreement. While this may be a more coherent approach, it is inconsistent with our recent arbitration cases. The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). See also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so"). Because the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. Id., at 626, 105 S.Ct. 3346. While ambiguities in the language of the agreement should be resolved in favor of arbitration, Volt, 489 U.S., at 476, 109 S.Ct. 1248, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. "Arbitration under the [FAA] is a matter of consent, not coercion." Id., at 479, 109 S.Ct. 1248. Here there is no ambiguity. No one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims. It goes without saying that a contract cannot bind a nonparty. Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so. | The Federal Arbitration Act (FAA) directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) consider arbitration agreements on equal footing with other contracts? | Alternative Dispute Resolution - Memo 58-JS.docx | ROSS-003284047-ROSS-003284048 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9974 | Linnenbrink v. First Nat. Bank of Lee's Summit, Mo., 839 S.W.2d 618 | 195+9 | In Missouri, a guaranty agreement must contain the express conditions of the guaranty, specifically stating, within the four corners of the document, the liability and obligations of each party. Standard Meat Co. v. Taco Kid of Springfield, Inc., 554 S.W.2d 592, 595 (Mo.App.1977). Furthermore, a guarantor should be bound only by the "precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable." U.S. Suzuki Motor Corp. v. Johnson, 673 S.W.2d 105, 107 (Mo.App.1984). | Guaranty agreement must contain express conditions of guaranty, specifically stating, within four corners of documents, liability and obligations of each party. | Will a guaranty contract contain express conditions on the guarantors liability? | 05017.docx | LEGALEASE-00078103-LEGALEASE-00078104 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 9975 | Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42 | 25T+112 | In determining the arbitrability of a particular dispute, a court must decide "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." David L. Threlkeld & Co. v. Metallgesellschaft, Ltd., 923 F.2d 245, 249 (2d Cir.), cert. dismissed, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). We address these questions in turn. | In determining arbitrability of particular dispute, court must decide whether parties agreed to arbitrate, and, if so, whether scope of that agreement encompasses asserted claims. | What aspects are considered by courts to determine arbitrability of a particular dispute? | 003746.docx | LEGALEASE-00116144-LEGALEASE-00116145 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 9976 | Mitev v. Resort Sports Ltd., 133 F. Supp. 3d 1365 | 106+489(1) | Under 28 U.S.C. " 1333(1), federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The "saving to suitors" clause allows state courts to exercise concurrent jurisdiction over maritime tort claims. See Lewis v. Lewis & Clark Marine, Inc.,531 U.S. 438, 445, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) ("[T]he Court defined the saving to suitors clause as a grant to state courts of in personam jurisdiction, concurrent with admiralty courts."); see J.P. v. Connell, 93 F.Supp.3d 1298, 2015 WL 1346976 (M.D.Fla. Mar. 26, 2015). A district court's admiralty jurisdiction is " "exclusive" only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." Madruga v. Superior Court, 346 U.S. 556, 561, 74 S.Ct. 298, 98 L.Ed. 290 (1954). | The saving to suitors clause in statute providing that federal courts have original jurisdiction over any case of admiralty or maritime jurisdiction allows state courts to exercise concurrent jurisdiction over maritime tort claims. 28 U.S.C.A. S 1333(1). | How is the saving to suitors clause defined? | Admiralty Law - Memo 6 - JS.docx | ROSS-003325043-ROSS-003325044 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9977 | Silverman v. Major League Baseball Player Relations Comm., 880 F. Supp. 246 | 231H+1141 | The Second Circuit has recognized two basic types of arbitration in the labor context: interest arbitration and rights arbitration. New York Typographical Union No. 6 v. Printers League Section of the Assoc. of the Graphic Arts, 919 F.2d 3, 3 n. 2 (2d Cir.1990). Interest arbitration "concerns disputes over terms of new or renewal contracts." Id.; see also Local 58, Int'l Brotherhood of Electrical Workers v. Southeastern Michigan Chapter, Nat'l Electrical Contractors Ass'n, Inc., 43 F.3d 1026, 1030 (6th Cir.1995) (interest arbitrator acts as legislator in fashioning new contractual obligations, rather than as judicial officer who concentrates on construing terms of existing agreement). Rights arbitration, in contrast, is for disputes "over the interpretation or application of a contract." Printers League, 919 F.2d at 3 n. 2. Because interest arbitration clauses involve "a mechanism for resolving disputes which may arise as to the terms of future contracts," as opposed to existing terms and conditions of employment, they are a non-mandatory topic of bargaining. Sheet Metal Workers Local Union No. 20 and George Koch Sons, Inc., 306 NLRB 834, 1992 WL 64220 (March 25, 1992). | Interest arbitration clauses are nonmandatory topic of collective bargaining because they involve mechanism for resolving disputes which may arise as to terms of future contracts, as opposed to existing terms and conditions of employment. | What is interest arbitration? | 004164.docx | LEGALEASE-00116247-LEGALEASE-00116249 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 9978 | United States v. Jicarilla Apache Nation, 564 U.S. 162 | 311H+126 | The objectives of the attorney-client privilege apply to governmental clients. "The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." 1 Restatement (Third) of the Law Governing Lawyers " 74, Comment b, pp. 573"574 (1998). Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys. Id., at 574 ("[G]overnmental agencies and employees enjoy the same privilege as nongovernmental counterparts"). The Tribe argues, however, that the common law also recognizes a fiduciary exception to the attorney-client privilege and that, by virtue of the trust relationship between the Government and the Tribe, documents that would otherwise be privileged must be disclosed. As preliminary matters, we consider the bounds of the fiduciary exception and the nature of the trust relationship between the United States and the Indian tribes. | Unless applicable law provides otherwise, government may invoke attorney-client privilege in civil litigation to protect confidential communications between government officials and government attorneys. | Can a governmental entity claim attorney-client privilege as private litigants? | Privileged Communications and Confidentiality - Memo 10 - VP.docx | LEGALEASE-00001594-LEGALEASE-00001596 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 9979 | Matter of Grand Jury Proceeding, Cherney, 898 F.2d 565 | 311H+146 | The government conceded at oral argument that an attorney-client relationship existed between the fee payer and Cherney prior to Cherney's representation of Hrvatin and the purpose for which the fee payer sought advice was his involvement in the underlying drug conspiracy. The government argues that, regardless of the formation of this relationship, information concerning the payment of fees simply cannot be considered a confidential communication. In the circumstances of this case, we must disagree. A client's motive for seeking legal advice is undeniably a confidential communication. See, e.g., Matter of Walsh, 623 F.2d at 494 n. 6. Accordingly, the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice. Tillotson v. Boughner, 350 F.2d 663, 666 (7th Cir.1965); Matter of Witnesses, 729 F.2d at 493. Moreover, "information of a known client's fees appears far less likely to reveal confidential communications than would the revelation of an unknown client's identity." Matter of Witnesses, 729 F.2d at 493. In the situation at bar, the fee payer sought legal advice concerning his involvement in the drug conspiracy. Disclosure of the fee payer's identity would necessarily reveal the client's involvement in that crime and thus reveal his motive for seeking legal advice in the first place. The district court found that the client paid Hrvatin's legal fees for representation in the very same matter that gave rise to his attorney-client relationship with Cherney. In effect, therefore, disclosure of the client's identity would expose the substance of a confidential communication between the attorney and the client. The government is correct in its argument that disclosure here would incriminate the fee payer in the conspiracy. Incriminating information, however, may be shielded by the privilege where it is an integral part of a confidential communication. The client's identity, in this case, is | Client's motive for seeking legal advice is "confidential communication" and, accordingly, attorney-client privilege protects unknown client's identity where its disclosure would reveal such motive. | Is the identity of a client protected by attorney-client privilege? | 05866.docx | LEGALEASE-00089218-LEGALEASE-00089220 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9980 | Fathom Exploration v. Unidentified Shipwrecked Vessel or Vessels, 857 F. Supp. 2d 1269 | 354+213 | For now, however, the Court finds that Shipwreck #1 may be provisionally identified as the AMSTEL. A critical question becomes whether the AMSTEL is abandoned. The Abandoned Shipwreck Act of 1987, 43 U.S.C. "" 2101 et seq. ("ASA"), provides that the United States asserts title to any abandoned shipwreck that is (i) embedded in a state's submerged lands, (ii) embedded in state-protected coralline formations on the state's submerged lands, or (iii) on the state's submerged lands and included or eligible for inclusion in the National Register. See 43 U.S.C. " 2105(a). By operation of the ASA, "[t]he title of the United States to any abandoned shipwreck asserted under subsection (a) of this section is transferred to the State in or on whose submerged lands the shipwreck is located." " 2105(c). Likewise, "[t]he law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 2105 of this title applies." 43 U.S.C. " 2106(a). Simply put, "a state acquires title to a shipwreck under the ASA, when the wreck is: (1) abandoned and (2) falls under one of the three enumerated categories. ... If title to the [wreck] meets the criteria under the ASA, title vests in the State and no salvage is awarded."Northeast Research, LLC v. One Shipwrecked Vessel, her Tackle, Equipment, Appurtenances, Cargo, 790 F. Supp. 2d 56, 63 (W.D.N.Y. 2011) (citations omitted); see alsoGreat Lakes Exploration Group, LLC v. Unidentified Wrecked and (For Salvage-Right Purposes), Abandoned Sailing Vessel, 522 F.3d 682, 688 (6th Cir. 2008) ("The ASA ... overrides the old maritime laws of salvage and find and provides a method for states to assert claims of title to abandoned shipwrecks."). There appears to be no question that Shipwreck #1 falls within one of the three enumerated categories in " 2105(a) in terms of being embedded in the State of Alabama's submerged lands. As such, Fathom's rights to salvage or title of Shipwreck #1 may turn on whether the AMSTEL was | If title to a shipwrecked vessel meets the criteria of the Abandoned Shipwrecks Act (ASA), title vests in the State and no salvage is awarded. Abandoned Shipwreck Act of 1987, SS 6(c), 7(a), 43 U.S.C.A. SS 2105(c), 2106(a). | Can the United States assert title to an abandoned shipwreck under the Abandoned Shipwreck Act? | Admiralty Law - Memo 25 - JS.docx | ROSS-003285530-ROSS-003285532 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 9981 | Flueras v. Royal Caribbean Cruises, Ltd., 69 So. 3d 1101 | 348+29(3) | The shipowner's warranty of seaworthiness extends to the vessel's crew. Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 726-27, 87 S. Ct. 1410, 18 L. Ed. 2d 482 (1967); Waggon-Dixon, 679 So. 2d at 813 ("[A] shipowner's duty to ensure that its vessel is seaworthy encompasses the obligation to provide a competent crew for the vessel."); Hercules, 768 F.2d at 1565-66. The shipowner breaches this duty by manning the vessel with an unfit, incompetent, inadequate, defective, or improperly trained or supervised crew. Brogan v. United N.Y. Sandy Hook Pilots' Ass'n, 213 F. Supp. 2d 432, 438 (D.N.J. 2002) (recognizing warranty may be breached by provision of inadequate or improperly trained crew); Comeaux v. T.L. James & Co., 666 F.2d 294, 299 (5th Cir. 1982) (crew insufficient in number and inadequate because one crew member was inexperienced and blind in one eye), supplemented, 702 F.2d 1023 (5th Cir. 1983); Hogge v. SS. Yorkmar, 434 F. Supp. 715, 736-37 (D.C. Md. 1977) (pilot that lacked knowledge and misunderstood local custom was incompetent); Pradarits v. Capital Towing Corp., 710 So. 2d 334, 337 (La. Ct. App. 4 Cir. 1998) (crew must be "adequate in number and competent in duties"); Waggon-Dixon, 679 So. 2d at 813 (failure to properly train or supervise crew may result in unseaworthy condition). | The shipowner's warranty of seaworthiness extends to the vessel's crew; the shipowner breaches the duty of seaworthiness by manning the vessel with an unfit, incompetent, inadequate, defective, or improperly trained or supervised crew. | Is a vessel operated by an incompetent crew considered seaworthy? | 004087.docx | LEGALEASE-00116320-LEGALEASE-00116322 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 9982 | Moretti v. Moretti, 766 A.2d 925 | 134+706 | In evaluating goodwill as a company asset, it is important to distinguish between personal and enterprise goodwill. "Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business."Yoon v. Yoon, 711 N.E.2d 1265, 1268-69 (Ind.1999).In the case at bar, it does not appear that either expert attempted to evaluate enterprise goodwill, as opposed to personal goodwill, which depended upon defendant's continued involvement in the business. We are of the opinion that this case should be remanded to the Family Court so that enterprise goodwill, as opposed to personal goodwill, may be evaluated and applied to the overall value of Tangleridge, taking into account the risk factor that would be applicable if defendant left the business. | "Enterprise goodwill" is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. | What distinguishes enterprise goodwill from personal goodwill? | 004745.docx | LEGALEASE-00116398-LEGALEASE-00116400 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 9983 | United States v. ITT Consumer Fin. Corp., 816 F.2d 487 | 253+757 | Characterization of earnings as separate or community property is established by the time and manner of acquisition. Absent agreement (in some states), separation (in some states), or change of domicile to a non-community property state, earnings acquired during marriage are community property, and earnings acquired after dissolution of the community by death or divorce will be the separate property of the acquiring spouse. Because a spouse's future earnings may become separate property rather than community property, the characterization of future earnings cannot be made prospectively. Earnings cannot be characterized as community property until they are earned. A married applicant's equal management power over community property, therefore, does not extend to the applicant's spouse's future earnings, and the applicant cannot commit his or her spouse's future earnings to repay the loan unless the spouse signs a promissory note or some other document to accomplish that result. Accordingly, a lender is justified in requiring the spouse's signature when a married applicant relies on his or her spouse's future earnings to establish creditworthiness. | Absent agreement, separation, or change of domicile to noncommunity property state, earnings acquired during marriage are community property, and earnings acquired after dissolution of the community by death or divorce will be the separate property of the acquiring spouse. | Are the earnings of a spouse during marriage considered community property? | 004788.docx | LEGALEASE-00116394-LEGALEASE-00116395 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9984 | In re City of Shelley, 151 Idaho 289 | 104+58 | Neither IDAPA, LLUPA, nor a city's ordinances, rules and regulations authorize judicial review of category A annexations.IDAPA's judicial review standards only apply to agency actions. Gibson, 139 Idaho at 7, 72 P.3d at 847.Counties and city governments are considered local governing bodies rather than agencies for purposes of the IDAPA." Id. "The language of the IDAPA indicates that it is intended to govern the judicial review of decisions made by state administrative agencies, and not local governing bodies." Idaho Historic Pres. Council, Inc. v. City Council of Boise, 134 Idaho 651, 653, 8 P.3d 646, 648 (2000). This Court has continued to follow this approach in recent cases. See Highlands, 145 Idaho at 960, 188 P.3d at 902; Giltner Dairy, LLC v. Jerome Cnty., 145 Idaho 630, 632, 181 P.3d 1238, 1240 (2008); Black Labrador Investing, LLC v. Kuna City Council, 147 Idaho 92, 95, 205 P.3d 1228, 1231 (2009). | Counties and city governments are considered local governing bodies rather than agencies for purposes of obtaining judicial review under the Idaho Administrative Procedure Act; the Act is intended to govern the judicial review of decisions made by state administrative agencies, and not local governing bodies. West's I.C.A. S 50-222. | Are Counties and city governments considered as agencies for purposes of the Administrative Procedures Act? | 004279.docx | LEGALEASE-00116612-LEGALEASE-00116613 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 9985 | QT Trading v. M/V SAGA MORUS, 641 F.3d 105 | 50+5 | We have previously described bailment as "the delivery of goods or personal property to the bailee in trust, under express or implied contract, which requires the bailee to perform the trust and either to redeliver the goods or to otherwise dispose of the goods in conformity with the purpose of the trust." Thyssen, 50 F.3d at 1354"55 (citing T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 588 (5th Cir.1983)). A claim of bailment does not arise under admiralty law unless (1) "delivery to the bailee is complete" and (2) "he has exclusive possession of the bailed property, even as against the property owner." Id. (citing T.N.T. Marine Serv., 702 F.2d at 588). | A claim of bailment does not arise under admiralty law unless (1) delivery to the bailee is complete and (2) he has exclusive possession of the bailed property, even as against the property owner. | Does a claim of bailment arise under admiralty law? | Bailment - Memo 29 - ANG.docx | ROSS-003327682-ROSS-003327683 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 9986 | People v. Krupnick, 165 Cal. App. 2d 755 | 110+1159.5 | The crime of theft under section 484, Penal Code, includes theft by embezzlement, obtaining money by false pretenses, or larceny by trick and device(People v. Cannon, 77 Cal.App.2d 678, 176 P.2d 409; People v. Reinschreiber, 141 Cal.App.2d 688, 297 P.2d 658; People v. Ashley, 42 Cal.2d 246, 267 P.2d 271), and "(O)n appeal from a judgment of conviction of theft, where the only asserted basis of appeal is insufficiency of the evidence, the judgment must be affirmed if there is sufficient evidence to support the judgment on the theory of theft by trick and device, or by false pretenses, or by embezzlement." People v. Reinschreiber, 141 Cal.App.2d 688, 696, 297 P.2d 658, 663. | Where only asserted basis of appeal from theft conviction is insufficiency of evidence, judgment must be affirmed if there is sufficient evidence to support judgment on theory of theft by trick and device, or by false pretenses, or by embezzlement. West's Ann.Pen.Code, S 484. | What does the crime of theft comprise of? | 004300.docx | LEGALEASE-00116438-LEGALEASE-00116439 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 9987 | In re Thomas' Estate, 1943 OK 115 | 192+1 | The debtors also argue that, even if the income based method is an appropriate appraisal of the value of All American, the bankruptcy judge erroneously applied Pennsylvania law to determine the value of goodwill. Under Pennsylvania law, goodwill is intangible property that is defined as the positive reputation a business may enjoy in the eyes of the public that creates a probability that old customers will continue their patronage. See Butler, 541 Pa. at 378, 663 A.2d 148. As the bankruptcy judge correctly observed, Pennsylvania law divides goodwill into two categories: (1) "professional goodwill," and (2) "economic goodwill." Professional goodwill is "intrinsically tied to the attributes and/or skills of certain individuals." Solomon v. Solomon, 531 Pa. 113, 124"26, 611 A.2d 686 (1992); see also, Gaydos v. Gaydos, 693 A.2d 1368, 1372 (Pa.Super.1997). This type of goodwill arises from an individual professional's reputation, specialized skills and judgment. See, e.g., In re Paolino, 1991 WL 284107 (Bankr.E.D.Pa.); Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1, 6 (1983). Because professional goodwill is inextricably intertwined with an individual's skill and attributes, professional goodwill cannot be valued and cannot survive if that individual is disassociated from the business. See id. By contrast, economic goodwill is wholly attributable to the business itself and can be alienated from the individuals in the business. See id. As a result, economic goodwill can be valued. | Under Pennsylvania law, "goodwill" is positive reputation that business may enjoy in eyes of public, which creates probability that old customers will continue their patronage. | Is goodwill a probability that old customers will resort to the old place? | 004381.docx | LEGALEASE-00116628-LEGALEASE-00116629 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 9988 | Dugan v. Dugan, 92 N.J. 423 | 192+1 | Our limited concern involves the existence of goodwill as property and its evaluation for purposes of equitable distribution under N.J.S.A. 2A:34"23 with respect to attorneys and in particular individual practitioners. Though other elements may contribute to goodwill in the context of a professional service, such as locality and specialization, reputation is at the core. Paulsen, supra, at 10. It does not exist at the time professional qualifications and a license to practice are obtained. A good reputation is earned after accomplishment and performance. Field testing is an essential ingredient before goodwill comes into being. Future earning capacity per se is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution. | Attorney's future earning capacity per se is not goodwill in exclusively owned professional corporation, but when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. | Is future earning capacity per se goodwill? | 004386.docx | LEGALEASE-00116654-LEGALEASE-00116656 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9989 | In re Thomas' Estate, 1943 OK 115 | 192+1 | The debtors also argue that, even if the income based method is an appropriate appraisal of the value of All American, the bankruptcy judge erroneously applied Pennsylvania law to determine the value of goodwill. Under Pennsylvania law, goodwill is intangible property that is defined as the positive reputation a business may enjoy in the eyes of the public that creates a probability that old customers will continue their patronage. See Butler, 541 Pa. at 378, 663 A.2d 148. As the bankruptcy judge correctly observed, Pennsylvania law divides goodwill into two categories: (1) "professional goodwill," and (2) "economic goodwill." Professional goodwill is "intrinsically tied to the attributes and/or skills of certain individuals." Solomon v. Solomon, 531 Pa. 113, 124"26, 611 A.2d 686 (1992); see also, Gaydos v. Gaydos, 693 A.2d 1368, 1372 (Pa.Super.1997). This type of goodwill arises from an individual professional's reputation, specialized skills and judgment. See, e.g., In re Paolino, 1991 WL 284107 (Bankr.E.D.Pa.); Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1, 6 (1983). Because professional goodwill is inextricably intertwined with an individual's skill and attributes, professional goodwill cannot be valued and cannot survive if that individual is disassociated from the business. See id. By contrast, economic goodwill is wholly attributable to the business itself and can be alienated from the individuals in the business. See id. As a result, economic goodwill can be valued. | Under Pennsylvania law, "goodwill" is positive reputation that business may enjoy in eyes of public, which creates probability that old customers will continue their patronage. | Is goodwill the positive reputation of a business? | 004396.docx | LEGALEASE-00116538-LEGALEASE-00116540 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 9990 | Moriarty v. Curran, 18 F.R.D. 461 | 170A+633.1 | It is, of course, true that pleadings in a federal court served the purpose of mere notice giving, and it is not only unnecessary but improper to plead evidentiary matter. Nevertheless, in actions for libel, it appears that notice of defenses must be given with sufficient particularity to inform the plaintiff of what he must be prepared to meet. Folsom v. Dell Publishing Company, D.C.S.D.N.Y., 131 F.Supp. 464; Sweeney v. Buffalo Courier Express, D.C.W.D.N.Y., 35 F.Supp. 446; Verges v. News Syndicate Co., D.C.S.D.N.Y., 11 F.R.D. 587. It is an inadequate pleading that necessitates pretrial discovery procedure for the determination of such trial issues. | Pleadings in federal courts serve purpose of mere notice giving, and it is not only unnecessary but improper to plead evidentiary matter, but, in libel actions, notice of defenses must be given with sufficient particularity to inform plaintiff of what he must be prepared to meet. | Do pleadings in the federal court serve a mere notice giving purpose? | Pleading -Memo 4 - VP.docx | ROSS-003281686-ROSS-003281687 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 9991 | People v. Krupnick, 165 Cal. App. 2d 755 | 110+1159.5 | The crime of theft under section 484, Penal Code, includes theft by embezzlement, obtaining money by false pretenses, or larceny by trick and device (People v. Cannon, 77 Cal.App.2d 678, 176 P.2d 409; People v. Reinschreiber, 141 Cal.App.2d 688, 297 P.2d 658; People v. Ashley, 42 Cal.2d 246, 267 P.2d 271), and "(O)n appeal from a judgment of conviction of theft, where the only asserted basis of appeal is insufficiency of the evidence, the judgment must be affirmed if there is sufficient evidence to support the judgment on the theory of theft by trick and device, or by false pretenses, or by embezzlement." People v. Reinschreiber, 141 Cal.App.2d 688, 696, 297 P.2d 658, 663. | Where only asserted basis of appeal from theft conviction is insufficiency of evidence, judgment must be affirmed if there is sufficient evidence to support judgment on theory of theft by trick and device, or by false pretenses, or by embezzlement. West's Ann.Pen.Code, S 484. | What is the statutory crime of theft comprised of? | 004533.docx | LEGALEASE-00116553-LEGALEASE-00116554 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 9992 | Ray v. Mason Cty. Drain Com'r, 393 Mich. 294 | 149E+577 | To satisfy the requirements for findings of fact under the EPA, the trial judge should consider, and where appropriate make, findings of fact with regard to each of the following:1) How the plaintiff has established a Paima facie case that the defendant's conduct "has or is likely to pollute, impair or destroy the air, water, or other natural resources . . ." or how he has failed to.2) How defendant has rebutted plaintiffs' Prima facie case with evidence to the contrary, or how he has failed to.3) How defendant has established as an affirmative defense that "there is no feasible and prudent alternative . . . and that such conduct is consistent with the promotion of the public health, safety and welfare in light of the State's paramount concern for the protection of its natural resources from pollution, impairment or destruction," or how he has failed to. | Findings of fact under Environmental Protection Act should include a consideration of whether plaintiff has established a prima facie case that defendant's conduct "has or is likely to pollute, impair or destroy the air, water, or other natural resources," whether defendant has rebutted plaintiff's prima facie case with evidence to contrary, and whether defendant has established as an affirmative defense that "there is no feasible and prudent alternative * * * and that such conduct is consistent with the promotion of the public health, safety and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment or destruction." GCR 1963, 517.1 et seq.; M.C.L.A. SS 691.1201 et seq., 691.1203, 691.1203(1), 691.1204(1); M.C.L.A.Const.1963, art. 4, S 52. | What is a plaintiff required to show to make a prima facie case under the EPA? | 004551.docx | LEGALEASE-00116518-LEGALEASE-00116519 | Condensed, SA | 0.05 | 0 | 1 | 0 | 1 | |
| 9993 | Commonwealth v. 1997 Chevrolet & Contents Seized from Young, 160 A.3d 153 | 174+1.3 | Deconstructing the above seminal decisions by the United States Supreme Court and our Court, we observe that certain concrete principles emerge, while other issues remain open. Specifically, it is now accepted that the Eighth Amendment's Excessive Fines Clause applies to civil in rem forfeitures that are punitive and criminal in personam forfeitures. Austin; Bajakajian. With respect to criminal in personam forfeitures, an Excessive Fines Clause inquiry focuses on proportionality, and, specifically, to survive an excessiveness challenge, the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028. Whether a criminal in personam forfeiture is excessive requires consideration of whether the forfeiture is "grossly disproportional" to the gravity of a defendant's offense. Id. With regard to the gross disproportionality standard, the Bajakajian Court warned that judgments regarding the appropriate punishment for an offense belong initially to the legislature, and judicial determinations regarding the gravity of an offense will be "inherently imprecise." Id. at 336, 118 S.Ct. 2028. In applying the gross disproportionality standard, the amount of the forfeiture is compared to the gravity of the offense, and if the amount is grossly disproportionate, it is unconstitutional. In judging the gravity of the offense, we look to the culpability of the defendant rather than the severity of the crime in the abstract. 5444 Spruce Street, 832 A.2d at 401. In Pennsylvania, the gross disproportionality test is applicable to all punitive forfeitures, including civil in rem proceedings. Id. at 403. In this regard, the following three, non-exhaustive, factors have been considered: the penalties that the legislature has authorized compared to those to which the defendant was subjected; whether the violation was isolated or part of a pattern of misbehavior; and the nature of the harm | The Eighth Amendment's Excessive Fines Clause applies to civil in rem forfeitures that are punitive and criminal in personam forfeitures. U.S. Const. Amend. 8. | Does the Eighth Amendment's Excessive Fines Clause apply to civil forfeitures? | 004566.docx | LEGALEASE-00116596-LEGALEASE-00116597 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9994 | Innovative Data Sys. of Louisiana v. Ellender, 316 So. 2d 12 | 302+34(1) | In making this determination, we are governed by certain well established principles of law. An exception of no cause of action addresses itself to the legal sufficiency of the plaintiff's petition and exhibits attached thereto, and it is therefore triable on the face of the papers. Catalanotto v. Associates Discount, 207 So.2d 180 (La.App. 1 Cir. 1968). An exception of no cause of action concedes for the purposes of its trial the correctness of the well-pleaded allegations of fact and tenders issue that on the face of the petition no case is presented entitling the mover, in law, to the redress sought. It is the sufficiency in law of the petition or motion which is put at issue by the exception. For purposes of the exception of no cause of action, all well-pleaded facts in a petition must be taken as true, and if the petition sets forth a cause of action in any respect, the exception must be overruled. Burns v. Genovese, 254 La. 237, 223 So .2d 160 (1969); Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968). It a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Louisiana and Arkansas Railway Company et al. v. Goslin, 258 La. 530, 246 So.2d 852 (1971). Technical objections and harsh rules of pleading are not favored. Pleadings are to be liberally construed to yield as little as possible to technicality in order that the ends of justice may be served. Burns v. Genovese, supra; Lewis Machine and Welding Srvice, Inc. v. Amite Ready Mix Company et al., 148 So.2d 869 (La.App. 1 Cir. 1963). In a case such as this, it is permissible that a petition may set forth two or more causes of action in the alternative, even though the legal or factual bases thereof may be inconsistent or mutually exclusive. Louisiana Code of Civil Procedure Article 892. | Technical objections and harsh rules of pleading are not favored and pleadings are to be liberally construed to yield as little as possible to technicality in order that ends of justice may be served. | Do courts favor harsh rules of pleading? | 004852.docx | LEGALEASE-00116717-LEGALEASE-00116718 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 9995 | Ingersoll-Rand Fin. Corp. v. Nunley, 11 B.R. 528 | 50+1 | In West Virginia, the term "bailment" imports a delivery of personal property by one person to another, in trust for the execution of a special object upon or in relation to the goods delivered, which is beneficial to either the bailor, the bailee, or both; and, upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of them in conformity with the purpose of the trust. Moore v. Oser, 112 W.Va. 208, 164 S.E. 144 (1932); Walker v. Norfolk & W. Ry. Co., 67 W.Va. 273, 67 S.E. 722 (1910). While a bailment is a contractual relationship, an agreement between the parties is not always necessary to create a bailment, and it may come into being by operation of law. Barnette v. Casey, 124 W.Va. 143, 19 S.E.2d 621 (1942). It has also been stated as a rule that no particular ceremony or actual meeting of minds is necessary; it is the element of lawful possession, however created, and duty to account for the thing as a property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense. In the ordinary case, the nature of the bailment requires that there be a delivery by the bailor and acceptance by the bailee. 2B Michie's Jurisprudence of Virginia, West Virginia: Bailments s 3 at 412; see Iron City Sand & Gravel v. West Fork Towing Corp., 298 F.Supp. 1091 (1969), rev'd on other grounds, 440 F.2d 958 (4th Cir. 1971). Further, while acceptance is necessary to create a bailment, the acceptance need not be actual but may be constructive, as in a case where a person comes into possession of chattels by mistake or takes possession of goods which have been left by the owner. See Walker v. Norfolk & W. R. Co., 67 W.Va. 273, 68 S.E. 722 (1910). | While acceptance is necessary to create a bailment, the acceptance need not be actual but may be constructive, as in a case where a person comes into possession of chattels by mistake or takes possession of goods which have been left by the owner. | Is acceptance required to establish a bailment? | Bailment - Memo 31 - ANG.docx | ROSS-003298641-ROSS-003298642 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 9996 | Dayton Gold & Silver Min. Co. v. Seawell, 11 Nev. 394 | 148+14 | In Connecticut the doctrines advanced in the Massachusetts cases are fully supported. Especially is this true of the reasoning of the supreme court in Olmstead v. Camp, sustaining the validity of the flowage act of that state. It was there contended that the act manifestly authorized the taking of property for private use; that in order to sustain the law it must affirmatively appear that the public have an interest in the thing to be taken; that there must be a public right of control of the thing taken as property in which the state has an interest; that the thing taken is to be used by the public, and is taken that it may be so used. In discussing this question, the court say: "One of the most common meanings of the word "use" as defined by Webster, is "usefulness, utility, advantage, productive of benefit." Public use may therefore well mean public usefulness, utility or advantage, or what is productive of general benefit, so that any appropriating of private property by the state under its right of eminent domain for purposes of great advantage to the community, is a taking for public use." (33 Conn. 546.) This decision directly declaring that the "term "public use" is synonymous with public benefit or advantage" was concurred in by all the judges except Hinman, C. J., who dissented.In the subsequent case of Todd v. Austin, 34 Conn. 79, the court, notwithstanding the able arguments of learned counsel, who sought by numerous references to decided cases to show that the reasoning of the courts in sustaining the mill acts of Massachusetts did not apply in support of the flowage act of Connecticut, sustained the decision in Olmstead v. Camp. In New Hampshire the same construction is given to a similar provision of the state constitution in the case of The Great Falls Manufacturing Company v. Fernald. In this case the petitioners were incorporated, under the authority of the legislature, for the purpose of carrying on the manufacture of cotton and woolen goods, they expended | In construing the meaning of the words "public use," as contained in the constitution of this state, held, that any appropriation of private property, under the right of eminent domain, for any purpose of great public benefit, interest, or advantage to the community, is a taking for a public use. The object must not only be of great public benefit, and for the paramount interests of the community, but the necessity must exist for the exercise of the right of eminent domain. | What does the term public use encompass in relation to eminent domain? | Eminent Domain - Memo 22 - AKA.doc | LEGALEASE-00002812-LEGALEASE-00002814 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 9997 | Nat'l Wildlife Fed'n v. Adamkus, 936 F. Supp. 435 | 1.49E+18 | Both parties agree that approval by EPA of a state's program submission is a "rule" under the APA. EPA was therefore bound by the rulemaking procedures under " 553 of the APA. EPA's "responsibility to respond to public comments on proposed rulemaking is required by 5 U.S.C. " 553(c)." Michigan v. Thomas, 805 F.2d 176, 186 (6th Cir.1986). Failure of an agency to comply with the rulemaking requirements of APA is fatal to the validity of agency's actions. Ohio Dept. of Human Services v. United States HHS, 862 F.2d 1228, 1237 (6th Cir.1988). As stated earlier, an administrative agency, however, need only respond in a reasoned manner to comments which raise significant problems. Navistar, 941 F.2d at 1359; see Home Box Office, Inc. v. FCC, 567 F.2d 9, 35 n. 58 (D.C.Cir.1977) (an agency is required to address only "significant comments," comments which "if true, raise points relevant to [its] decision"), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Plaintiffs claim that EPA violated " 553 of the APA when it approved the revised program in the aftermath of the 1991 Order without responding to all of the comments submitted by plaintiffs on the record. | Environmental Protection Agency's (EPA's) responsibility to respond to public comments on proposed rulemaking is required by Administrative Procedure Act (APA). 5 U.S.C.A. S 553(c). | Is the Environmental Protection Agency (EPA) responsible to respond to public comments on proposed rulemaking under 5 U.S.C. 553(c)? | Environmental Law - Memo 54 - AKA.doc | LEGALEASE-00002839-LEGALEASE-00002840 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 9998 | Granite City Div. of Nat. Steel Co. v. Illinois Pollution Control Bd., 155 Ill. 2d 149 | 1.49E+18 | Because the Board is an administrative agency, judicial review of its rulemaking is limited. (People ex rel. Hartigan v. Illinois Commerce Comm'n (1992), 148 Ill.2d 348, 366, 170 Ill.Dec. 386, 592 N.E.2d 1066.) Rules and regulations promulgated by the Board have the force and effect of law, are presumed to be valid, and will be construed by the same standards as statutes. (Celotex Corp. v. Pollution Control Board (1983), 94 Ill.2d 107, 126, 68 Ill.Dec. 108, 445 N.E.2d 752; Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon (1979), 75 Ill.2d 53, 58, 25 Ill.Dec. 664, 387 N.E.2d 320.) When an agency has acted in its rulemaking capacity, a court will not substitute its judgment for that of the agency. (Monsanto, 67 Ill.2d at 290, 10 Ill.Dec. 231, 367 N.E.2d 684.) Regulations adopted by the Board pursuant to its statutory authority will not be set aside unless they are arbitrary and capricious. Celotex Corp., 94 Ill.2d at 125, 68 Ill.Dec. 108, 445 N.E.2d 752; Monsanto, 67 Ill.2d at 288"89, 10 Ill.Dec. 231, 367 N.E.2d 684. | Regulations adopted by Illinois Pollution Control Board pursuant to statutory authority will not be set aside unless they are arbitrary and capricious. | Will the regulations adopted by the Pollution Control Board be set aside if they are arbitrary or capricious? | Environmental Law - Memo 56 - AKA.doc | LEGALEASE-00002843-LEGALEASE-00002844 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 9999 | Sierra Pac. Power Co. v. U.S. E.P.A., 647 F.2d 60 | 1.49E+18 | In Montana Power Co. v. E. P. A., 608 F.2d 334 (9th Cir. 1979), this court upheld the EPA's use of a "substantial loss" test.12 The court, however, was only interpreting the "contractual obligation" test of the "commencement" definition. 40 C.F.R. s 52.21(b)(7); Id. at 345. Montana Power found that the EPA did not abuse its discretion by applying a "new and different rationale" to evaluate the progress of construction, even though similarly situated power plant projects were evaluated under a different test. Id. at 348-49. We made it very clear that substantial deference is given to the EPA in interpreting its own regulations. The EPA is not strictly bound by its earlier interpretations, even though they may be "apparently inconsistent," id. at 346, and the EPA is "free to make reasonable changes" in interpretation.Id. at 348. Therefore, even though Sierra Pacific may have initially been misled by what test the EPA would apply, the EPA did not abuse its discretion in changing its reasoning. | EPA was not strictly bound by its earlier interpretations of is regulations, even though they might have been apparently inconsistent, and EPA was free to make reasonable changes in interpretation of the regulations. | Is the Environmental Protection Agency (EPA) free to make reasonable changes in the interpretations of its regulations? | Environmental Law - Memo 59 - AKA.doc | LEGALEASE-00002849-LEGALEASE-00002850 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10000 | Cohen v. UBS Fin. Servs., 799 F.3d 174 | 25T+200 | Under the FAA, "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2 Courts may compel arbitration of "only those disputes ... that the parties have agreed to submit," Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) [(internal quotation marks omitted), and "as with any other contract, the parties' intentions control," Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (internal quotation marks omitted). If the parties intended to arbitrate a dispute, courts are generally required to "enforce [such] agreements ... according to their terms." CompuCredit Corp. v. Greenwood, """ U.S. """", 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012). However, enforceability can be "overridden by a contrary congressional command." Id. (internal quotation marks omitted). | Under Federal Arbitration Act (FAA), if parties intended to arbitrate a dispute, courts are generally required to enforce such agreements according to their terms; however, enforceability can be overridden by a contrary congressional command. 9 U.S.C.A. S 2. | Do courts consider the intention of parties for settling arbitration disputes? | 005241.docx | LEGALEASE-00116795-LEGALEASE-00116796 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 10001 | Bratcher v. State, 999 N.E.2d 864 | 350H+1963 | " "Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens[,]" " and "probation conditions that intrude upon constitutionally protected rights are not necessarily invalid." Taylor v. State, 820 N.E.2d 756, 761 (Ind.Ct.App.2005) (quoting Johnson v. State, 659 N.E.2d 194, 200 (Ind.Ct.App.1995), reh'g denied ), trans. denied. See also Gaither v. Indiana Dep't of Correction, 971 N.E.2d 690, 695 (Ind.Ct.App.2012) (explaining that "probation conditions may impinge upon a probationer's right to exercise an otherwise constitutionally protected right"). Where, as here, a defendant contends that a probation condition is unduly intrusive upon a constitutional right, the following three factors must be balanced: (1) the purpose sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be afforded to probationers; and (3) the legitimate needs of law enforcement. Smith v. State, 779 N.E.2d 111, 117 (Ind.Ct.App.2002), trans. denied.A. Waiver | Convicted individuals do not enjoy the same constitutional protections as law-abiding citizens, and probation conditions that intrude upon constitutionally protected rights are not necessarily invalid. | Do convicts enjoy the same constitutional protections as that of law-abiding citizens? | Convicts - Memo 9 - RK.docx | ROSS-003298255-ROSS-003298256 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10002 | Brooklyn Bridge Park Legal Def. Fund v. State Urban Dev. Corp., 50 A.D.3d 1029 | 149E+578 | Here, contrary to the petitioners' contentions, the record indicates that the FEIS did take into account the traffic expected to be generated by the Atlantic Yards project. In particular, the FEIS identified Atlantic Yards as one of the projects that was considered, and accounts for traffic associated with Atlantic Yards in developing background conditions against which potential impacts of the Project are assessed. An agency may rely on consultants to conduct the analyses that support their environmental review of proposed projects (see Matter of Jackson v. New York State Urban Dev. Corp., 67 N.Y.2d 400, 427"428, 503 N.Y.S.2d 298, 494 N.E.2d 429; Matter of Halperin v. City of New Rochelle, 24 A.D.3d 768, 774"75, 809 N.Y.S.2d 98). The choice between conflicting expert testimony rests in the discretion of the administrative agency (see Matter of Ball v. New York State Dept. of Envtl. Conservation, 35 A.D.3d 732, 733, 826 N.Y.S.2d 698; Matter of Winston v. Freshwater Wetlands Appeals Bd., 254 A.D.2d 363, 364, 678 N.Y.S.2d 654). | An agency may rely on consultants to conduct the analyses that support their environmental review of proposed projects. McKinney's ECL S 8-0101 et seq. | "When conducting an environmental review of a project, may an agency rely on consultants to conduct analyses, and exercise discretion when considering conflicting expert testimony?" | 01052.docx | LEGALEASE-00079320-LEGALEASE-00079322 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10003 | Lincoln v. Farnkoff, 26 Wash. App. 717 | 233+1110 | At common law under the principle of caveat emptor, the landlord had no duty to repair rental property, the tenant taking it as he found it. Hughes v. Chehalis School Dist. 302, 61 Wash.2d 222, 225, 377 P.2d 642 (1963). With time, however, this legal position gave way to modern realities and residential tenants were afforded the protection of an implied covenant of habitability. Foisy v. Wyman, 83 Wash.2d 22, 25-8, 515 P.2d 160 (1973), and cases cited. Following this lead, the legislature enacted the residential landlord-tenant act in 1973. This act "modified the common law so as to require decent, safe and sanitary housing," and "adds . . . a covenant to repair" to most residential rental agreements. O'Brien v. Detty, 19 Wash.App. 620, 621-22, 576 P.2d 1334, 1335 (1978); see RCW 59.18.060(2). | At common law under principle of caveat emptor, landlord had no duty to repair rental property, tenant taking it as he found it, but, with time, this legal position gave way to modern realities and residential tenants were afforded protection of implied covenant of habitability, and following this lead, legislature enacted in 1973 the Residential Landlord-Tenant Act, which modified common law so as to require decent, safe and sanitary housing, and added covenant to repair to most residential rental agreements. West's RCWA 59.18.060, 59.18.060(2). | Is the landlord under a common law duty to repair rental property? | 005081.docx | LEGALEASE-00117235-LEGALEASE-00117236 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 10004 | Pawlovich v. Linke, 688 N.W.2d 21 | 237+45(1) | SDCL 20-11-5(3) contains the common interest privilege. It states:A privileged communication is one made ... [i]n a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.SDCL 20-11-5(3). "[T]he common interest privilege applies where "persons having a common interest in a particular matter correctly or reasonably believe that there is information that another sharing the common interest is entitled to know." "Setliff, 2000 SD 124, 46, 616 N.W.2d at 891 (citing Tibke v. McDougall, 479 N.W.2d 898, 905 (S.D.1992)). | The common interest defamation privilege applies where persons having a common interest in a particular matter correctly or reasonably believe that there is information that another sharing the common interest is entitled to know. SDCL 20-11-5(3). | When does common interest privilege apply in defamation? | 005103.docx | LEGALEASE-00117279-LEGALEASE-00117280 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10005 | United States v. Scales, 231 F. Supp. 2d 437 | 98+22 | Under Virginia law, there is no automatic restoration of civil rights; rather, a convicted felon is required to petition the Governor or other appropriate authority if he wishes to have his civil rights restored. See Almond v. United States, 854 F.Supp. 439, 443-44 (W.D.Va.1994); Va.Code Ann. " 24.2-101 (stating that "[n]o person who has been convicted of a felony shall be a qualified voter unless his civil rights have been restored by the Governor or other appropriate authority"); 1999 Op. Atty. Gen. (Aug. 3, 1999) (recognizing that a felon's civil rights may be restored by the Governor, or by any other appropriate authority, including the President, other governors, and pardoning boards with such authority). Indeed, the restoration of civil rights within the Commonwealth of Virginia "is linked to clemency power reserved exclusively to [the] Governor." 1999 Op. Atty. Gen. (Nov. 15, 1999). Thus, "a convicted felon in Virginia retains the civil disabilities resulting from his conviction until he himself takes affirmative action to have his civil rights restored" by the Governor or other appropriate authority. Almond, 854 F.Supp. at 444. | Under Virginia law, there is no automatic restoration of civil rights of convicted felons; rather, a convicted felon is required to petition the Governor or other appropriate authority if he wishes to have his civil rights restored. West's V.C.A. S 24.2-101. | When are the rights of a convicted felon restored? | 000390.docx | LEGALEASE-00117291-LEGALEASE-00117292 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10006 | Jacques v. State, 409 So. 2d 876 | 98+20 | This portion of the opinion is largely out of special consideration and respect for that which appears to be a persistent and sincere belief of appellant in the correctness of his construction of the law, as to which he has recently been an avid and resourceful student. We can readily see that in the language and terminology of the present time the noun "convict" is often used and understood as referable to one who has not been convicted of a felony and sentenced to the penitentiary, but, to avoid a misunderstanding, it is well to note that the word has a special signification in addition to its general meaning, which is thus well expressed:"1. A person proved guilty, by a competent tribunal, of a criminal offense; esp., a person convicted of, and under sentence for, a felony or serious crime."2. Hence, in popular use, a person serving a prison sentence, usually for a long term." Webster's New International Dictionary (2d. ed.) | "Convict" is a person proved guilty by competent tribunal of criminal offense, especially person convicted of and under sentence for felony or serious crime; hence, in popular use, a "convict" is a person serving a prison sentence, usually for a long term. | Who is a convict? | 004977.docx | LEGALEASE-00117307-LEGALEASE-00117308 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10007 | Kellis v. Farber, 523 So. 2d 843 | 401+16 | Under the general rules of venue an action against an individual domiciled in the state shall be brought in the parish of his domicile, an action against a domestic corporation shall be brought in the parish where its registered office is located, and an action against a foreign insurer shall be brought in the parish of East Baton Rouge. La.C.C.P. article 42. Consequently, Orleans Parish is not the proper venue for plaintiff's suit against the defendants under the general rule. Foreign insurers can only be sued in East Baton Rouge Parish under the general rule and the other two defendants have neither a domicile nor a registered office in Orleans Parish. | Orleans Parish was proper venue for action arising out of automobile accident that happened in Jefferson Parish against alleged tort-feasor who was Jefferson Parish domiciliary, his employer, which was domestic corporation domiciled in Jefferson Parish, liability carrier for alleged tort-feasor and his employer, that was foreign insurer, and plaintiff's uninsured motorist carrier, that was different foreign insurer, where plaintiff was domiciled in Orleans Parish; Orleans Parish was proper venue for plaintiff's suit against her uninsured motorist carrier, statutory exception to general venue rule authorizes action against joint or solidary obligors to be brought in any parish of proper venue as to any obligor who was made defendant, and plaintiff's suit was action against solidary obligors. LSA-C.C.P. arts. 42, 43, 73, 76. | "Under the general rules of venue, where should an action against an individual, domestic corporation or a foreign insurer be brought?" | Venue - Memo 24 - RKJS.docx | ROSS-003289680-ROSS-003289681 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10008 | Millers Mut. Ins. Ass'n of Illinois v. Graham Oil Co., 282 Ill. App. 3d 129 | 386+10 | A trespass is an invasion in the exclusive possession and physical condition of land. Colwell Systems, Inc. v. Henson, 117 Ill.App.3d 113, 116-17, 72 Ill.Dec. 636, 452 N.E.2d 889 (1983). In Illinois, one may be liable in trespass for causing a thing or a third person to enter the land of another either through a negligent act or an intentional act. Dial v. City of O'Fallon, 81 Ill.2d 548, 556-59, 44 Ill.Dec. 248, 411 N.E.2d 217 (1980). Thus, as the Pipefitters court recognized, one need not intend to take possession of the encroached-upon premises or deprive occupants of their right to possess those premises to have committed a trespass under Illinois law. Pipefitters, 976 F.2d at 1041. | One may be liable in trespass for causing thing or third person to enter land of another either through negligent act or intentional act. | Can trespass be caused by negligent and intentional acts? | Trespass - Memo 33 - RK.docx | ROSS-003282733-ROSS-003282734 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10009 | City of Columbus v. Anderson, 27 Ohio App. 3d 307 | 48A+144.1(1.5) | Absent an express constitutional provision, the general provision vesting only judicial power in the courts created by the Constitution must be observed. Kearns v. Sherrill (1940), 63 Ohio App. 533, 27 N.E.2d 407 [17 O.O. 267], affirmed (1940), 137 Ohio St. 468, 30 N.E.2d 805. R.C. 4509.101(B)(6) violates this fundamental principle by explicitly stating that the court's order under division (B)(1) "is deemed an administrative act of the court on behalf of the registrar." We cannot ignore the clear meaning of these words. The General Assembly attempted to confer powers on the judiciary which clearly belong to the executive branch. We agree with the court's findings in Dayton v. Strausbaugh (1984), 10 Ohio Misc.2d 29, 462 N.E.2d 462, that nothing in the duties imposed on judges by R.C. 4509.101(B)(1) is nonjudicial in itself. We recognize that a statute may give a court discretion, as part of a sentence after a judicial finding of a violation of law, to suspend a driver's license. See R.C. 4507.34; 4507.16. However, R.C. 4509.101 does not require a judicial finding of a violation of law, nor is it a matter of the court's discretion. It requires the court to determine whether a person complied with the Financial Responsibility Act and, if not, imposes a duty on the court to order a license suspension. In effect, it makes the judge the agent of the registrar of an administrative agency. State v. Snyder (Mar. 2, 1984), Hamilton Cty. M.C. No. 84"TRC"003409A, unreported. R.C. 4509.101(B)(6) violates the Constitution further by conferring appellate jurisdiction on an administrative agency. Section 3, Article IV, Ohio Constitution provides that the courts of appeals have jurisdiction to review judgments of municipal courts. By allowing an administrative agency to exercise judicial power which has clearly been reserved to the courts, former R.C. 4509.101 violated the separation of powers doctrine and must be found unconstitutional. State ex rel. Shafer v. Otter (1922), 106 Ohio St. 415, | Statute which required court in traffic case to determine whether defendant had met requirements of Financial Responsibility Act violated separation of powers by making judge agent of registrar of motor vehicles and by conferring appellate jurisdiction on administrative agency, and thus, is unconstitutional. R.C. S 4509.101; Const. Art. 4, S 3. | Does an Act conferring appellate jurisdiction upon an administrative officer or an administrative board violate the doctrine of separation of powers? | 000321.docx | LEGALEASE-00117673-LEGALEASE-00117674 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10010 | Cooper v. Ratley, 916 S.W.2d 868 | 233+517 | Goffstein points out that a purchaser of leased property can recover delinquent rent under chapter 535 if there has been "attornment. " Attornment is the means by which a person holding a leasehold interest in real estate "agrees to become the tenant of a purchaser who has acquired the fee in the land, or the remainder or reversion, or the right to the rent or services by which the tenant holds." Id. at 67. If this occurs, there is a new agreement pursuant to which the purchaser of the property may seek recovery as the original lessor. Section 535.040, RSMo 1994, permits recovery by an original lessor of "possession of the premises so rented or leased, and also his debt for the amount of the rent then due, ...." See also Bess v. Griffin, 234 S.W.2d 978, 980 (Mo.App.1950), and Barclay v. Wyatt, 223 Mo.App. 1022, 14 S.W.2d 44, 45 (1929). | "Attornment" is means by which person holding leasehold interest in real estate agrees to become tenant of purchaser who has acquired fee in the land, or remainder or reversion, or right to rent or services by which tenant holds; if this occurs, there is new agreement pursuant to which purchaser of property may seek recovery as original lessor. V.A.M.S. SS 535.040, 535.070. | What is an atttornment? | Landlord and Tenant - Memo 26 - TH.docx | ROSS-003288615-ROSS-003288617 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 10011 | Gen. Prod. Co. v. Meredith Corp., 526 F. Supp. 546 | 237+120(2) | Plaintiff has also asserted a claim for punitive damages, which are recoverable only if it proves by clear and convincing evidence that the defendant published the article with knowledge of its falsity or with reckless disregard for the truth.Gertz, supra, 418 U.S. at 349-50, 94 S.Ct. at 3011-12; Burke, supra, 224 S.E.2d at 136. This standard is met if the defendant entertained serious doubts as to the truth of his publication, St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), or if the publication was made with a "subjective awareness of probable falsity," Gertz, supra, 418 U.S. at 334 n.6, 94 S.Ct. at 3004 n.6. See Steaks Unlimited, supra (summary judgment for defendants in a case brought by a public figure affirmed; affidavits by defendants as to how they gathered their information and their belief in the veracity of their statements held to provide sufficient factual support for the defense that defendants believed their statements to be true; affidavit submitted by plaintiff which questioned some of defendants' charges made in their broadcast did not raise any triable issue of fact). Mr. Lidster has stated that he believed the subject statements to be accurate when he wrote the article and did not entertain any doubt as to its veracity until after it was published. Plaintiff has offered its deposition of Mr. Lidster, in which he states that he had no interest in or connection to any of the manufacturers of the various types of chimneys discussed in his article, was not directed by the defendant to favor any one type, was not aware of testing or publications disputing his conclusions, did not consider any possible harm to makers of triple-wall chimneys from the article, believed that his assertions were true and had no concern about its accuracy after he completed the piece.8 In short, there is nothing in the record from which the fact-finder could infer that Lidster entertained any doubts about the veracity of his statements or otherwise acted in reckless | Punitive damages in a defamation action are recoverable only if plaintiff proves by clear and convincing evidence that defendant published the article with knowledge of its falsity or with reckless disregard for the truth. | How can a plaintiff recover punitive damages in a defamation suit? | 000578.docx | LEGALEASE-00117920-LEGALEASE-00117921 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10012 | Haller v. State, 217 Ark. 646 | 207+1 | Incest is a statutory offense which has been defined generally by the authorities as consisting of sexual intercourse, either habitual or in a single instance, and either under a form of marriage or without it, between persons too closely related to intermarry. Bishop's Statutory Crimes, " 727; 27 Am.Jur., Incest, " 1; 42 C.J.S., Incest, " 1; Underhill's Criminal Evidence, 4th Ed., " 650. The rule that one offense only can be charged in one count of an indictment or information does not preclude the charge in the same count of several acts relating to the same transaction and together constituting only one connected charge or offense. 27 Am.Jur., Indictments and Informations, " 124. While it is true that each act of sexual intercourse may be made a separate offense, the effect of the information in the instant case is to charge appellant with but one offense of incest committed by a series of acts amounting to habitual sexual intercourse with his daughter over the three-year period stated in the information. We conclude that the trial court did not err in overruling the demurrer to the information. | "Incest" is statutory offense consisting of sexual intercourse, either habitual or in a single instance, either under form of marriage or without it, between persons too closely related to intermarry. | Does the act of incest have to be habitual in order to constitute an offense? | Incest - Memo 24 - ANG.docx | ROSS-003283940-ROSS-003283942 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10013 | Sutter v. Oxford Health Plans LLC, 675 F.3d 215 | 25T+324 | The basis for vacatur asserted in this case, " 10(a)(4) of the Federal Arbitration Act, permits district courts to vacate awards when arbitrators exceed their powers. "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). By contractually restricting the issues they will arbitrate, the individuals with whom they will arbitrate, and the arbitration procedures that will govern, parties to an arbitration agreement may place limits upon the arbitrator's powers that are enforceable by the courts. See Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 181 (3d Cir.2010) (en banc). An arbitrator oversteps these limits, and subjects his award to judicial vacatur under " 10(a)(4), when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether. Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account, 618 F.3d 277, 295"96 (3d Cir.2010) (citing Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co., 868 F.2d 52, 56 (3d Cir.1989)). In other words, the task of an arbitrator is to interpret and enforce a contract. When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur. See Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 243 (3d Cir.2005) (upholding an arbitration award despite the arbitrator's inexplicable reliance on language not found in the relevant agreement). But when the arbitrator "strays from interpretation and application of the agreement and effectively "dispenses his own brand of industrial justice," " he exceeds his powers and his award will be unenforceable. | By contractually restricting the issues they will arbitrate, the individuals with whom they will arbitrate, and the arbitration procedures that will govern, parties to an arbitration agreement may place limits upon the arbitrator's powers that are enforceable by the courts; an arbitrator oversteps those limits, and subjects his award to judicial vacatur, when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether. 9 U.S.C.A. S 10(a)(4). | Can an arbitrator decide an issue if the parties have not authorized him to do so? | 000995.docx | LEGALEASE-00117993-LEGALEASE-00117994 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 10014 | Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361, 726 F.2d 698 | 25T+113 | Public policy favors arbitration as an alternative means of dispute resolution. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Therefore, judicial review of arbitration awards is necessarily quite restricted. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Substantive review of an award is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority. See Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1276 (11th Cir.1982). Here, we must decide whether past events, such as an employee's disciplinary history, may be considered in evaluating whether there is cause for discharge, and, if so, whether future remedial events may be taken into account in mitigation of a present offense | Public policy favors arbitration as alternative means of dispute resolution; therefore, judicial review of arbitration awards is necessarily quite restricted. | Are there any restrictions on the judicial review of arbitration awards? | 001043.docx | LEGALEASE-00118044-LEGALEASE-00118045 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10015 | Com. v. Pestinikas, 421 Pa. Super. 371 | 203+710 | Consistently with this legal thinking we hold that when, in 18 Pa.C.S. " 301(b)(2), the statute provides that an omission to do an act can be the basis for criminal liability if a duty to perform the omitted act has been imposed by law, the legislature intended to distinguish between a legal duty to act and merely a moral duty to act. A duty to act imposed by contract is legally enforceable and, therefore, creates a legal duty. It follows that a failure to perform a duty imposed by contract may be the basis for a charge of criminal homicide if such failure causes the death of another person and all other elements of the offense are present. Because there was evidence in the instant case that Kly's death had been caused by appellants' failure to provide the food and medical care which they had agreed by oral contract to provide for him, their omission to act was sufficient to support a conviction for criminal homicide, and the trial court was correct when it instructed the jury accordingly. | Failure to perform duty imposed by contract may be basis for charge of criminal homicide if such failure causes death of another person and all other elements of offense are present. 18 Pa.C.S.A. S 301(b)(2). | Can a persons failure to act lead to criminal liability? | 001064.docx | LEGALEASE-00118064-LEGALEASE-00118065 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 10016 | People v. Converse, 74 Mich. 478 | 146+17 | If an attorney collects money for his client, he in so doing acts as the agent of his client as well as his attorney; and in either case, after making the collection, he appropriates the money to his own use with the intention of depriving the owner of the same,-he is guilty of the crime of embezzlement. If this were not so, no attorney could be convicted of the embezzlement of his client's money, and this was certainly never the intention of the legislature in passing the statute creating the crime. I think the conviction in this case was warranted by the plea of the respondent, and that the judgment should be affirmed. | An attorney who collects money for a client acts as agent as well as attorney, and may be convicted of embezzlement for appropriating the money to his own use, with intent to deprive the owner thereof. | Can attorney appropriating money collected for his client be guilty of embezzlement? | Embezzlement - Memo 41 - VP.docx | LEGALEASE-00004992-LEGALEASE-00004993 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10017 | Xcel Energy Servs. Inc. v. F.E.R.C., 815 F.3d 947 | 145+11.3(6) | Still, the Commission dug in its heels, disclaiming any power or principle of equity to grant Xcel further relief, stating it could not act in a manner that was inconsistent with the statute where rates were accepted and have taken effect even to achieve what some parties have claimed is a more equitable result. Order III at P 27 (citing Pub. Utils. Comm'n of Cal. v. FERC, 988 F.2d 154, 168 n. 12 (D.C.Cir.1993)). For instance, the Commission cited City of Anaheim v. FERC, 558 F.3d 521, 525 (D.C.Cir.2009), which held that the Commission lacked authority to establish a retroactive effective date and refunds under section 206 because that provision only allowed the date to be "fix[ed]" prospectively. Xcel does not maintain the Commission erred in failing to apply section 206 retroactively but that it erred in failing to correct its legal error under section 205. The Commission has acknowledged that in allowing SPP's rates to take effect immediately without refund protection its action was contrary to section 205, see Order III at P 13. When the Commission acts contrary to the statute its action is ultra vires. Cf. Ind. & Mich. Elec. Co., 502 F.2d 336, 343 (D.C.Cir.1974). Further, neither City of Anaheim nor Public Utilities Commission speaks to the Commission's power under section 309 or its equivalent. | Federal Energy Regulatory Commission (FERC) acted arbitrarily in declining to weigh equities of energy utility's request for retroactive refund of unlawful rates it paid for transmission service as result of regional transmission organization's implementation of formula rate of non-jurisdictional participating transmission owner, which FERC erroneously allowed to take effect in ultra vires order that violated FPA's requirement that FERC first ensure rates were just and reasonable, and thus matter would be remanded to FERC; FERC had misapprehended its broad remedial powers under FPA in area where FERC's consumer protection responsibilities were at their most fundamental. Electric Utility Companies Act, S 205(a, e), 16 U.S.C.A. S 824d(a, e); Federal Power Act, S 309, 16 U.S.C.A. S 825h; 18 C.F.R. S 2.4(a). | Can Federal Energy Regulatory Commission action be ultra vires when it acts contrary to the Federal Power Act? | 000899.docx | LEGALEASE-00118219-LEGALEASE-00118220 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 10018 | In re Stoltz, 197 F.3d 625 | 233+531 | Under Vermont law, a lease is "a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises." Hilder v. St. Peter, 144 Vt. 150, 158"59, 478 A.2d 202, 208 (1984). Pursuant to Vermont statute, a landlord seeking to evict a residential tenant for failing to pay rent must: (1) give notice by certified mail or by having the notice served by a law enforcement officer at least fourteen days prior to the termination date in the notice; (2) wait for the termination date in the notice to pass; (3) obtain a judgment of possession by filing an action of ejectment; (4) obtain a writ of possession; and (5) execute the writ of possession. See Vt. Stat. Ann. tit. ix, " 4467(a); Vt. Stat. Ann. tit. xii, " 4854 | Under Vermont law, a "lease" is a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises. | Is a lease a contract between a landlord and a tenant? | 05371.docx | LEGALEASE-00080844-LEGALEASE-00080845 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 10019 | Estate of Prather v. Sherman Hosp. Sys., 2015 IL App (2d) 140723 | 401+33 | That said, the record contains undisputed evidence indicating that the circuit court of Cook County did not abuse its discretion in transferring the action to Kane County. When Jaclyn filed the original complaint in Cook County, the forum was neither her residence nor the site of the alleged medical negligence. A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355. However, the plaintiff's choice is not entitled to the same weight in all cases. When the plaintiff chooses his home forum or the site of the accident or injury, the choice of forum is most likely convenient. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355. When the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference. Fennell, 2012 IL 113812, " 18, 369 Ill.Dec. 728, 987 N.E.2d 355; see also Langenhorst v. Norfolk Southern Ry. Co., 219 Ill.2d 430, 442"43, 302 Ill.Dec. 363, 848 N.E.2d 927 (2006) ("the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum" (internal quotation marks omitted)). Plaintiff argues that the transfer was an abuse of discretion because plaintiff was denied its choice of venue. However, when she filed the original complaint, Jaclyn resided in Kane County, which was also the site of the incident. Because Jaclyn was foreign to the chosen forum and because the action giving rise to the litigation did not occur there, her choice of forum is accorded less deference. | A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. | Is a plaintiffs right to select forum substantial? | Venue - Memo 30 - TH.docx | ROSS-003284165-ROSS-003284167 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10020 | Appeal of Swidzinski, 134 Pa. Cmwlth. 330 | 148+8 | We must note initially that the questions involved in the present case have troubled the courts of this Commonwealth since the enactment of the Eminent Domain Code, Act of June 22, 1964, Sp.Sess., P.L. 84, as amended, 26 P.S. "" 1-101 to 1-903. Prior to the time of the Code's enactment, courts of equity had played a substantial role in eminent domain proceedings. It is well established that the sovereign's power of eminent domain permitted it to take property for a public use. McMasters v. Commonwealth, 3 Watts 292 (Pa.1834); Commonwealth v. Plymouth Coal Co., 232 Pa. 141, 81 A. 148, affirmed, 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713 (1911). While the right of eminent domain is exclusively in the sovereign, the legislature may delegate this power; "the body to which the power is entrusted has no authority beyond that legislatively granted." Interstate Cemetery Company Appeal, 422 Pa. 594, 598, 222 A.2d 906, 909 (1966). Courts of equity were often called upon to decide whether a proposed taking was for a public purpose. Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834 (1938); McSorley v. Fitzgerald, 359 Pa. 264, 59 A.2d 142 (1948). | While right of eminent domain is exclusively in sovereign, legislature may delegate that power; however, body to which power is entrusted has no authority beyond that legislatively granted. | Can the sovereign delegate its right of eminent domain? | Eminent Domain - Memo 47 - RK.docx | ROSS-003302227-ROSS-003302228 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10021 | In re Yan, 381 B.R. 747 | 289+426(2) | A joint venture is an undertaking by two or more persons jointly to carry out a single enterprise for profit. Weiner v. Fleischman, 54 Cal.3d at 482, 286 Cal.Rptr. 40, 816 P.2d 892. The distinction between a joint venture and a partnership is not "sharply drawn" for from a legal standpoint, both relationships are virtually the same so that "the courts freely apply partnership law to joint ventures when appropriate." Id. The law requires little formality in the creation of a partnership and the agreement is not invalid because it is indefinite as to details. James v. Herbert, 149 Cal.App.2d at 748, 309 P.2d 91. The parties may agree that all members shall participate in the profits and that only some of them shall bear the losses; also, the contributions of the respective parties need not be equal or of the same character. Id. The Uniform Partnership Act of 1994 provides, inter alia, that "[a] transfer, in whole or in part, of a partner's transferable interest in the partnership is permissible." Cal. Corp. Code " 16503. | Under California law, the parties to a partnership agreement may agree that all members shall participate in the profits and that only some of them shall bear the losses; also, the contributions of the respective parties need not be equal or of the same character. | Do the shares of the parties in a partnership need to be of equal contribution? | 022251.docx | LEGALEASE-00118177-LEGALEASE-00118178 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 10022 | Burton v. Comm'r of Envtl. Prot., 291 Conn. 789 | 149E+656 | "Under " 22a"16, standing ... is conferred only to protect the natural resources of the state from pollution or destruction.... Accordingly, all that is required to invoke the jurisdiction of the Superior Court under " 22a"16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state.... Although it is true, of course, that the plaintiff need not prove [his or her] case at this stage of the proceedings ... the plaintiff nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Internal quotation marks omitted.) Fort Trumbull Conservancy, LLC v. New London, 282 Conn. 791, 804, 925 A.2d 292 (2007). "A complaint does not sufficiently allege standing [however] by merely reciting the provisions of " 22a"16...." (Internal quotation marks omitted.) Id. Rather, it "must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id., at 804"805, 925 A.2d 292. | Claim that discharge permit renewal proceeding was inadequate to protect rights recognized by state Environmental Protection Act, alleging that hearing officer and state department of environmental protection did not conduct proceeding fairly and impartially because impact of operations of nuclear electric power plant on marine life in neighboring bodies of water was more harmful than that permitted by applicable regulatory scheme, was cognizable, and thus trial court had subject matter jurisdiction and interested person, as plaintiff, had standing to bring action on basis that unreasonable pollution, impairment, or destruction of natural resource probably would result from such operation. C.G.S.A. S 22a-16. | What is required to set forth a colorable claim to have a standing under 22a16 of the General Statutes? | 000922.docx | LEGALEASE-00118229-LEGALEASE-00118230 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 10023 | Elec. Power Supply Ass'n v. F.E.R.C., 753 F.3d 216 | 145+1 | Under the Federal Power Act ("FPA" or "the Act") the Commission is generally charged with regulating the transmission and sale of electric power in interstate commerce. The FPA "split[s] [jurisdiction over the sale and delivery of electricity] between the federal government and the states on the basis of the type of service being provided and the nature of the energy sale." Niagara Mohawk Power Corp. v. FERC, 452 F.3d 822, 824 (D.C.Cir.2006). Section 201 of the Act empowers FERC to regulate "the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. " 824(b)(1) (emphasis added). Thus, "FERC's jurisdiction over the sale of electricity has been specifically confined to the wholesale market." New York v. FERC, 535 U.S. 1, 19, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002). | Jurisdiction of the Federal Energy Regulatory Commission (FERC) over the sale of electricity has been specifically confined to the wholesale market. Federal Power Act, S 201(b)(1), 16 U.S.C.A. S 824(b)(1). | Is the jurisdiction of the Federal Energy Regulatory Commission (FERC) over the sale of electricity specifically confined to the wholesale market? | Electricity - Memo 6 - RM.docx | ROSS-003310956-ROSS-003310958 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10024 | Toledo City Sch. Dist. Bd. of Edn. v. State Bd. of Edn., 146 Ohio St.3d 356 | 1.41E+18 | Accordingly, we hold that the Retroactivity Clause, Article II, Section 28 of the Ohio Constitution, does not protect political subdivisions, like school districts, that are created by the state to carry out its governmental functions. Therefore, the legislature was able to authorize the department to adjust local school funding calculations and to retroactively immunize the department from liability for any legal claim of reimbursement by a school district for a reduction of school-foundation funding, without violating the Retroactivity Clause. We reverse the judgment of the Tenth District and remand the matter to the trial court for consideration of the issues not addressed in its decision on the department's motion for judgment on the pleadings. | State constitution's retroactivity clause does not protect political subdivisions, including school districts, that are created by the state to carry out its governmental functions. Const. Art. 2, S 28. | Do retroactivity clauses protect political subdivisions like school districts? | Education - Memo 7 - JS.docx | ROSS-003311150-ROSS-003311151 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10025 | State v. Thomes, 126 Me. 230 | 146+28 | 5 In an indictment for larceny, the descriptive allegation so many dollars, or so many dollars in money, is bad. Bishop's New Criminal Procedure, vol. 2, " 73. An indictment for stealing money is not sufficient if it states only the aggregate amount stolen without specification of the number, kind, or denomination of the pieces, unless the insufficient averment is cured by an allegation of lack of knowledge of these details on the part of the grand jury. Commonwealth v. Sawtelle, 11 Cush. (Mass.) 144; People v. Hunt, 251 Ill. 446, 96 N. E. 220, 36 L. R. A. (N. S.) 933; Merwin v. People, 26 Mich. 298, 12 Am. Rep. 314. | Indictment for stealing money, stating only aggregate amount, without specifying number, kind or denomination or alleging lack of knowledge thereof, is insufficient. Rev.St. c. 122, S 10. | "Is it necessary in an indictment for embezzlement the coin, number, denomination or any kind of money be specified?" | 001236.docx | LEGALEASE-00118585-LEGALEASE-00118586 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10026 | State v. Kittitas Cty., 107 Wash. 326 | 148+1 | As we view it, it is unnecessary to determine whether the city owns the land over which it is proposed to construct the public road, in either its proprietary or governmental capacity. The elementary rule is that the power of a quasi public corporation or a public corporation to condemn property owned by a municipality does not exist unless clearly created by statute. This rule was early recognized by this court in the case of Seattle & M. Ry. Co. v. State, 7 Wash. 150, 34 Pac. 551, 22 L. R. A. 217, 38 Am. St. Rep. 866. In that case it was held that a public service corporation could not take tidelands belonging to the state in a condemnation proceeding, for the reason that the act giving the corporation the right to condemn related only to the taking of private property; there being "no express or clearly implied authority to extend" the right further. Property acquired by a municipality which is necessary or may reasonably be considered necessary in the future for the use of the municipality in the performance of either its public or private functions, is not subject to condemnation unless that power has been expressly created. There must be left to the judgment and discretion of the municipal authorities the determination of the public necessity of acquiring and holding lands to be used for and in connection with public activities, and the courts will not interfere with the reasonable exercise of that discretion. The Legislature, having conferred statutory power upon counties to condemn for county road purposes, has not gone to the extent of expressly allowing a condemnation for such purposes of the property of municipalities. In 1911 the Legislature defined and provided for the construction of what are known as permanent highways (Laws 1911, c. 35), and in 1913 gave the counties the power to construct such permanent highways through the corporate limits of cities of the third and fourth classes (Rem. Code, " 5879-18). We held in the case of State ex rel. Floyd v. Superior Court, 86 | The power of a quasi public corporation or a public corporation to condemn property owned by a municipality does not exist unless clearly created by statute. | When may a quasi public corporation or a public corporation condemn property owned by a municipality? | 001278.docx | LEGALEASE-00118690-LEGALEASE-00118691 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 10027 | Hutner v. Greene, 734 F.2d 896 | 13+17 | We agree with the appellees that a New York court would apply California law in determining whether Hutner was required to obtain such a broker's license. This conclusion is in no sense inconsistent with our earlier holding that New York law should be applied to other aspects of the contract dispute between Hutner and David Greene. Under the doctrine of depecage, which is often applied by New York courts, Holzsager v. Valley Hospital, 482 F.Supp. 629, 634 n. 4 (S.D.N.Y.1979), "the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues." Von Mehren, Special Substantive Rules for Multistate Problems: Their Role and Significance in Contemporary Choice of Law Methodology, 88 Harv.L.Rev. 347, 356 n. 24 (1974). At least two distinct issues are present here"the meaning of the contract between Hutner and David Greene and the duties imposed on Hutner, a California resident, by California law. As with choice of law generally, New York courts applying depecage determine what law to apply to a specific issue by resort to the paramount interest test. See, e.g., Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). It is reasonably apparent that California's legislature believes that substantial regulatory interests are served by requiring licensure of brokers who operate within its territory. New York, on the other hand, has no apparent interest in regulating the conduct of a California broker offering his services to clients in California. We therefore believe that a New York court would defer to the regulatory interest expressed in the California statute and apply California law on the issue of whether Hutner was required to obtain a license. | Under doctrine of "depecage" applied by New York courts, rules of one legal system are applied to regulate certain issues arising from given transaction or occurrence, while those of another system regulate other issues. | What is doctrine of depecage in defamation cases? | Libel and Slander - Memo 100 - JS.docx | LEGALEASE-00006008-LEGALEASE-00006010 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10028 | Bautista v. Jones, 25 Cal. 2d 746 | 92+4260 | The right to work, either in employment or independent business, is fundamental and, no doubt, enjoys the protection of the personal liberty guarantee of the Fourteenth Amendment to the federal Constitution, as well as the more specific provisions of our state Constitution. Cal. Const. art. I, ss 1, 13; see Suckow v. Alderson, 182 Cal. 247, 187 P. 965; Angelopulos v. Bottorff, 76 Cal.App. 621, 245 P. 447. But this right, like others equally fundamental, is not absolute. It is safe-guarded from legislative action which discriminates against a person or class of persons in respect of opportunities to obtain work or enter into business (Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Abe v. Fish & Game Commission, 9 Cal.App.2d 300, 49 P.2d 608); and it is also protected in some degree against arbitrary action by private organizations, including employers and labor unions. James v. Marinship Corp., supra. But it is subject to many legislative restrictions familiar to all, such as statutory limitations on working hours, minimum wages, age limits for employment, licensing acts, safety regulations, and a host of others. It is equally subject to peaceful, economic pressure by labor organizations seeking legitimate ends, such as conditions of work, collective rather than individual bargaining, seniority privileges and other methods of advancement, and the union or closed shop. See McKay v. Retail Auto. S. L. Union No. 1067, 16 Cal.2d 311, 106 P.2d 373; C. S. Smith Metropolitan Market Co. v. Lyons, 16 Cal.2d 389, 106 P.2d 414; Shafer v. Registered Pharmacists Union, 16 Cal.2d 379, 106 P.2d 403; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855. | The right to work, either in employment or independent business, is fundamental and enjoys the protection of the personal liberty guarantee of the Fourteenth Amendment and of State Constitution. Const.Cal. art. 1, SS 1, 13; U.S.C.A.Const. Amend. 14. | Is there a fundamental right to work? | Labor and Employment - Memo 24 - VP.docx | ROSS-003283404-ROSS-003283405 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10029 | John R. Sand & Gravel Co. v. United States, 457 F.3d 1345 | 241+95(7) | A takings claim accrues " "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." " Goodrich, 434 F.3d at 1333 (quoting Hopland, 855 F.2d at 1577); see also Bowen v. United States, 292 F.3d 1383, 1385 (Fed.Cir.2002). In addition, the claim only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's liability. Goodrich, 434 F.3d at 1333; Hopland, 855 F.2d at 1577; Kinsey v. United States, 852 F.2d 556, 557 n. * (Fed.Cir.1988). | A takings claim accrues when all the events have occurred which fix the liability of the government and entitle the claimant to institute an action; in addition, the claim only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's liability. 28 U.S.C.A. S 2501. | When does a takings claim accrue? | Eminent Domain -Memo 54- VP.docx | ROSS-003284765-ROSS-003284766 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 10030 | AFT Michigan v. State of Michigan, 497 Mich. 197 | 148+2.1 | To generate a compensable taking, the government must assert its authority to seize title or impair the value of property. This does not occur if the property in question is voluntarily relinquished to the government. As the United States Supreme Court has explained: [A]s long as [the property owner] is aware of the conditions under which the [property is given to the government], and the conditions [governing the transfer of property] are rationally related to a legitimate Government interest, a voluntary submission of [property] by an [owner] in exchange for ... economic advantages ... can hardly be called a taking. [Ruckelshaus, 467 U.S. at 1007, 104 S.Ct. 2862.]Put simply, a property owner cannot give property to the government of his or her own volition, and then proceed to argue that the government must compensate the owner for that contribution. | To generate a compensable taking, the government must assert its authority to seize title or impair the value of property, which does not occur if the property in question is voluntarily relinquished to the government. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 10, S 2. | How will the government generate a compensable taking? | Eminent Domain -Memo 58- VP.docx | ROSS-003297951-ROSS-003297952 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10031 | Hunziker v. State, 519 N.W.2d 367 | 148+2.10(1) | Land-use regulation does not effect a taking requiring compensation if it substantially advances a legitimate state interest. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, ----, 112 S.Ct. 2886, 2897, 120 L.Ed.2d 798, 818 (1992). There are two exceptions. When the regulation (1) involves a permanent physical invasion of the property or (2) denies the owner all economically beneficial or productive use of the land, the State must pay just compensation. Id. at ----, 112 S.Ct. at 2900, 120 L.Ed.2d at 821; Iowa Coal Mining Co. v. Monroe County, 494 N.W.2d 664, 670 (Iowa 1993). | Land-use regulation does not effect taking requiring compensation if it substantially advances legitimate state interest. | Does land-use regulation effect a taking if it substantially advances a legitimate state interest? | 001458.docx | LEGALEASE-00118659-LEGALEASE-00118660 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10032 | Benham v. State, 637 N.E.2d 133 | 110+108(1) | Venue and jurisdiction are not the same. Green v. State (1952), 230 Ind. 400, 402, 103 N.E.2d 429, 430, cert. denied, 343 U.S. 987, 72 S.Ct. 1084, 96 L.Ed. 1374; Anderson v. State (1983), Ind.App., 452 N.E.2d 173, 175. The venue statutes and rules do not confer jurisdiction but rather prescribe the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction. The authority of the State of Indiana to institute criminal prosecutions is determined by the jurisdictional statute, Ind.Code " 35"41"1"1. The venue statute applies only to those cases properly subject to the state's criminal jurisdiction. Thus the venue statute, Ind.Code " 35"32"2"1(g), cannot expand the scope of criminal jurisdiction prescribed in Ind.Code " 35"41"1"1. | Venue statutes and rules do not confer jurisdiction but rather prescribe location at which trial proceedings are to occur from among courts empowered to exercise jurisdiction. | Do venue statutes and rules confer jurisdiction? | Venue - Memo 37 - RM.docx | ROSS-003283783-ROSS-003283784 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10033 | Gotham Holdings, LP v. Health Grades, 580 F.3d 664 | 25T+113 | According to Health Grades, access to the information would undermine the national policy favoring arbitration. There is no such policy. Arbitration agreements are optional and enforced just like other contracts. 9 U.S.C. " 2. The Federal Arbitration Act eliminates hostility to private dispute resolution; it does not create a preference for that process. "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Volt Information Sciences, Inc. v. Stanford University, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). See also, e.g., Arthur Andersen, LLP v. Carlisle, --- U.S. ----, ----, 129 S.Ct. 1896, 1901, 173 L.Ed.2d 832 (2009) (federal policy is "to place {arbitration} agreements upon the same footing as other contracts"). People do not "violate" or "undermine" any federal policy if they litigate rather than arbitrate. Federal policy favors arbitration only in the sense that it favors contracts in general. | People do not violate or undermine any federal policy if they litigate rather than arbitrate; that is, federal policy favors arbitration only in the sense that it favors contracts in general. | "When people litigate rather than arbitrate, do they violate or undermine federal policy?" | Alternative Dispute Resolution - Memo 215 - RK.docx | ROSS-003298541-ROSS-003298542 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10034 | Mazera v. Varsity Ford Mgmt. Servs., 565 F.3d 997 | 25T+113 | "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Mandatory arbitration agreements in the employment context are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). | Mandatory arbitration agreements in the employment context are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act govern mandatory arbitration agreements in employment contracts? | Alternative Dispute Resolution - Memo 221 - RK.docx | ROSS-003286018-ROSS-003286019 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 10035 | Unalachtigo Band of Nanticoke-Lenni Lenape Nation v. State, 375 N.J. Super. 330 | 209+120 | The governmental purposes of the Nonintercourse Act were "to prevent unfair, improvident or improper disposition by Indians of lands owned or possessed by them to other parties," Fed. Power Comm'n v. Tuscarora Indian Nation, 362 U.S. 99, 119, 80 S.Ct. 543, 555, 4 L.Ed.2d 584, 598 (1960), and to prevent Indian unrest over encroachment by white settlers on Indian lands. Mohegan Tribe v. Connecticut, 638 F.2d 612, 621"22 (2d Cir.1980), cert. denied, 452 U.S. 968, 101 S.Ct. 3124, 69 L.Ed.2d 981 (1981). TheNonintercourse Act protects only Indian tribes or nations, and not individual Indians, James v. Watt, 716 F.2d 71, 72 (1st Cir.1983), cert. denied, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984), and creates "a trust relationship between the federal government and American Indian tribes with respect to tribal lands covered by the Act." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 56 (2d Cir.1994) (the claim argued in Golden Hill is virtually identical to the claim pressed by plaintiffs). | The federal Indian Nonintercourse Act protects only Indian tribes or nations, and not individual Indians, and creates a trust relationship between the federal government and American Indian tribes with respect to tribal lands covered by the Act. 25 U.S.C.A. S 177. | Can individual Indians bring an action under the Indian Nonintercourse Act? | Indians - Memo 22 - TH.doc | LEGALEASE-00006245-LEGALEASE-00006246 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10036 | Miracle v. New Yorker Magazine, 190 F. Supp. 2d 1192 | 379+103 | Before considering the merits of the defamation claims, the Court must first decide whether the claims are governed by the law of New York or Hawaii. A federal court sitting in diversity must apply the conflict of law rules of the forum state. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Abogados v. AT & T, Inc., 223 F.3d 932, 934 (9th Cir.2000). Hawaii applies the most significant relationship test propounded in the Restatement (Second) of Conflicts of Laws. Roxas v. Marcos, 89 Hawai"i 91, 117 n. 16, 969 P.2d 1209, 1235 n. 16 (1998); Lewis v. Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988); Peters v. Peters, 63 Haw. 653, 634 P.2d 586 (1981); Restatement (2d) Conflicts of Laws " 145 (1971). Under this test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties...." Restatement (2d) Conflicts of Laws " 145(1). Factors relevant to the application of the most significant relationship test include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Id. " 145(2). In regards to claims involving defamatory statements published in multiple states, these factors normally call for application of the law of the plaintiff's domicil, for it is there that the plaintiff can be said to enjoy a reputation, and there that such reputation would suffer by the accused writing. Hanley v. Tribune Publ'g Co., 527 F.2d 68, 70 (9th Cir.1975); Restatement (2d) Conflict of Laws " 150(2) & cmt. e.4 Here, Hawaii is where Miracle is domiciled. Accordingly, Hawaii's law of defamation applies. | Under Hawaii law, rights and liabilities of parties with respect to issue in tort are determined by local law of state which, with respect to that issue, has most significant relationship to occurrence and parties. Restatement (Second) of Conflict of Laws S 145. | What is the significant relationship test? | 002274.docx | LEGALEASE-00118486-LEGALEASE-00118487 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10037 | Rosas v. IBP, 869 F. Supp. 912 | 231H+40(2) | In Kansas, the employer-employee relationship is governed by the doctrine of employment-at-will. The doctrine holds that in the absence of a contract, express or implied, between an employee and her employer covering the duration of employment, the employment is terminable at the will of either party. Johnson v. National Beef Packing Co., 220 Kan. 52, 54, 551 P.2d 779 (1976). Kansas law recognizes a public policy exception to the employment-at-will doctrine for employees discharged in retaliation for the exercise of their rights under the Workers' Compensation Act. Murphy v. City of Topeka, 6 Kan.App.2d 488, 630 P.2d 186 (1981) | Under Kansas law, employer-employee relationship is governed by doctrine of employment-at-will, which holds that, in absence of contract, express or implied, between employee and her employer covering duration of employment, the employment is terminable at will of either party. | What is an employment at will doctrine? | 001420.docx | LEGALEASE-00118930-LEGALEASE-00118931 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 10038 | Zafer Chiropractic & Sports Injuries, P.A. v. Hermann, 501 S.W.3d 545 | 302+350(6) | Appellants failed to plead with specificity facts that would entitle them to relief. In Appellants' petition, they make vague allegations that Respondents engaged in intentional misconduct that caused Appellants to experience a decrease in both new and returning patients. However, Appellants were required to plead facts that demonstrate they suffered damages to a business relationship or an expectancy with the probability of future economic benefit that was reasonably certain to continue without the tortious interference of Respondents. Meyer, 29 Kan.App.2d at 752, 31 P.3d 970. Appellants make conclusory statements that parrot the elements of a tortious interference claim, but they fail to plead facts to support those conclusions. For example, in the petition, Appellants allege, "Zafer and Chiropractic were reasonably certain to have continued the chiropractor/patient and business relationships...and continue to create chiropractor/patient and business relationships with Farmers's insureds [and] other automobile insurance carrier insureds, in the future." Although the motion court must accept "facts" pled by a plaintiff, "[l]egal conclusions cannot be pleaded as ultimate facts." Jordan v. Peet, 409 S.W.3d 553, 560 (Mo. App. W.D. 2013). Rather, "conclusion[s] must be supported by..."facts that demonstrate how or why" the conclusion is reached." Id. (quoting Westphal v. Lake Lotawana Ass'n, Inc., 95 S.W.3d 144, 152 (Mo. App. W.D. 2003). | Although the motion court on a motion for judgment on the pleadings must accept facts pled by a plaintiff, legal conclusions cannot be pleaded as ultimate facts; rather, conclusions must be supported by facts that demonstrate how or why the conclusion is reached. | Can legal conclusions be pleaded as ultimate facts? | 001594.docx | LEGALEASE-00119066-LEGALEASE-00119067 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10039 | Military Highway Water Supply Corp., 114 S.W.3d 728 | 317A+101 | The privileges enjoyed by public utilities carry with them duties and obligations consistent with the purposes of their creation. See Lone Star Gas Co., 3 S.W.2d at 792. A public utility has a duty to exercise ordinary and reasonable care in performing its functions.See First Assembly of God, Inc. v. Tex. Utils. Elec. Co., 52 S.W.3d 482, 491 (Tex.App.-Dallas 2001, no pet.). The degree of care is commensurate with the danger. Id. The commensurate-with-the-danger standard does not impose a duty higher than that of ordinary care. Id. at 491"92. Rather, it more fully defines what constitutes ordinary care under the facts presented. Id. Thus, in performing its functions, a public utility must use reasonable care and prudence to prevent injury at places where others have the right to go for work, business, or pleasure. See Tex. Utils. Elec. Co. v. Gold Kist, Inc., 817 S.W.2d 749, 752 (Tex.App.-Eastland 1991), rev'd on other grounds, 830 S.W.2d 91 (Tex.1992). We conclude that Military Highway, as a public utility, owed a general duty of care to the public in performing its functions. Id. at 752 | The commensurate-with-the-danger standard of duty for public utilities does not impose a duty higher than that of ordinary care; rather, it more fully defines what constitutes ordinary care under the facts presented. | Should the duty to exercise ordinary and reasonable care of the public utility commensurate with the danger? | 001617.docx | LEGALEASE-00118965-LEGALEASE-00118966 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10040 | Motor Cargo v. Bd. of Twp. Trustees of Richfield Twp., 117 N.E.2d 224 | 414+1219 | The determination of whether a concern is a public utility is a mixed question of law and fact, and bearing in mind the test and the meaning of public utility exclusive of the statutes which are of little assistance this Court is of the opinion that the plaintiff in this case is operating as a public utility, is operating by authority of law upon public highways as a common carrier in Interstate Commerce, devoting its equipment solely for the purpose of carrying freight and as such is operating in the same manner that a railroad operates. | Interstate trucking company operating by authority of law upon public highways as a common carrier in interstate commerce and devoting its equipment solely for the purpose of carrying freight was a "public utility," exempt in rural area from zoning regulations, even though it did not have power of eminent domain. Gen.Code, S 3180-46. | Is the determination of whether a particular entity is a public utility a questions of law and fact? | 001626.docx | LEGALEASE-00118985-LEGALEASE-00118986 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10041 | Carlisle v. U.S., 83 U.S. 147 | 384+10 | Aliens domiciled in the United States owe a local and temporary allegiance to the government of the United States; they are bound to obey all the laws of the country, not immediately relating to citizenship, during their residence in it, and are equally amenable with citizens for any infraction of those laws. Those aliens who, being domiciled in the country prior to the rebellion, gave aid and comfort to the rebellion, were, therefore, subject to be prosecuted for violation of the laws of the United States against treason and for giving aid and comfort to the rebellion. | Aliens domiciled in the United States owe a local and temporary allegiance to the government thereof; they are bound to obey all laws not immediately relating to citizenship during their residence in the country, and are equally amenable with citizens for any infraction of those laws. Those aliens who, being domiciled in the country prior to the Rebellion, gave aid and comfort to the Rebellion, were, therefore, subject to be prosecuted for violation of the laws of the United States against treason and for giving aid and comfort to the Rebellion. | Can an alien be prosecuted for treason? | 001632.docx | LEGALEASE-00119078-LEGALEASE-00119079 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 10042 | John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132 | 25T+114 | Having established our jurisdiction, we now turn to the merits of this appeal. Because this case raises questions about the scope of the duty to honor an arbitration agreement, our analysis must begin with the Federal Arbitration Act. The FAA federalizes arbitration law and "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate...." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The operative language in the Act, as provided in section two, states that: A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. | The Federal Arbitration Act (FAA) federalizes arbitration law and creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) create a body of federal substantive law? | Alternative Dispute Resolution - Memo 263 - RK.docx | ROSS-003298560-ROSS-003298561 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10043 | Dhaliwal v. Dhaliwal, 124 So.3d 470 | 289+421 | The partnership is created by a contract between two or more persons to combine their efforts or resources in determined proportions. LSA"C.C. art. 2801. There are no hard and fast rules in determining whether a partnership exists and each case must be considered, based on its own facts and circumstances. Tedeton, supra; Harris v. Wallette, 538 So.2d 728 (La.App. 2d Cir.1989). Louisiana partnership law provides that each partner participates equally in profits, commercial benefits and losses of the partnership, unless the partners have agreed otherwise. LSA"C.C. art. 2803. | There are no hard and fast rules in determining whether a partnership exists and each case must be considered, based on its own facts and circumstances. | Are there any hard and fast rules used to determine whether a partnership exists? | 002308.docx | LEGALEASE-00119164-LEGALEASE-00119165 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 10044 | Bell v. Moores, 832 S.W.2d 749 | 13+1 | It is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. Develo"Cepts, Inc. v. City of Galveston, 668 S.W.2d 790, 794 (Tex.App."Houston [14th Dist.] 1984, no writ); Berger v. Berger, 578 S.W.2d 547, 549 (Tex.Civ.App."Houston [1st Dist.] 1979, no writ). The right to maintain an action depends upon the existence of a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by the defendant. Berger, 578 S.W.2d at 549. No person may maintain an action in court unless it is shown that he has a justiciable interest in the subject matter of the litigation. Id. Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex.1976). | Right to maintain action depends upon the existence of cause of action, which involves combination of right on part of plaintiff and violation of such right by defendant. | Does the right to maintain an action depend upon the existence of a cause of action? | Action - Memo 22 - MS.docx | ROSS-003297304-ROSS-003297305 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10045 | Auvil v. CBS 60 Minutes, 800 F. Supp. 928 | 237+28 | The rule in Washington remains that "a person who republishes defamatory statements made by another does not escape liability for the defamation even though the republisher is careful to ascribe the statements to the original speaker." Herron v. Tribune Pub.Co., 108 Wash.2d 162, 178, 736 P.2d 249 (1987). The threshold inquiry is whether a local broadcaster who serves as a mere conduit "republishes" by relaying an unedited feed. The concept of republication is broad in this jurisdiction. See LaMon v. City of Westport, 44 Wash.App. 664, 668, 723 P.2d 470 (1986), rev. denied, 112 Wash.2d 1024 (1989), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); see also, Restatement (Second) of Torts " 581 at Comment g. Accordingly, it will be assumed for purposes of disposition that the local affiliates did republish within the meaning of Herron. At the same time, however, there is no liability for any defamation absent fault. LaMon v. Butler, 112 Wash.2d 193, 197, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989) | Under Washington law, person who republishes defamatory statements made by another does not escape liability for defamation even if republisher is careful to ascribe statements to original speaker. | Is a person who republishes a defamatory statement liable for defamation? | 002094.docx | LEGALEASE-00119393-LEGALEASE-00119395 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10046 | People v. Knapp, 15 Ill. 2d 450 | 207+4 | The gravamen of the crime of incest, as of sodomy, is the unlawful carnal knowledge of the body; and where the unlawful carnal knowledge of the body, even though abnormal and perverted, is coupled with the relationship of father and daughter, it is within the incest statute here involved, and it is incest, even though the carnal knowledge is of a sort to invoke the statutory definition of a crime against nature. | Statute defining crime of incest of father with daughter does not limit guilt to actual sexual intercourse between father and daughter and includes unlawful carnal knowledge of the body even though abnormal and perverted and even though the carnal knowledge is of a sort to invoke the statutory definition of a crime against nature. S.H.A. ch. 38, S 374. | Is cardinal knowledge an element of incest? | 002263.docx | LEGALEASE-00119259-LEGALEASE-00119260 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 10047 | Nugent v. Pilgrim's Pride Corp., 30 S.W.3d 562 | 386+2 | A trespass to real property is the unauthorized and intentional entry on the land of another. Ward, 909 S.W.2d at 150. One may be liable in trespass who intentionally acts to cause or permit a thing to cross the boundary of a property. Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642, 645 (1956). Intent can be shown by proof that, while the actor did not know his conduct would result in trespass, his actions were practically certain to have that effect. Gen. Tel. Co. v. Bi"Co Pavers, Inc., 514 S.W.2d 168, 170 (Tex.Civ.App."Dallas 1974, no writ). Where trespass results in damage or injury, the trespasser is liable without reference to negligence or due care. Brown v. Dellinger, 355 S.W.2d 742, 745 (Tex.Civ.App."Texarkana 1962, writ ref'd n.r.e.). | One may be liable in trespass who intentionally acts to cause or permit a thing to cross the boundary of a property. | Can a person be held liable for trespass if they cause or permit a thing to cross the boundary of a property? | Trespass - Memo 63 - JS.docx | ROSS-003283600-ROSS-003283601 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10048 | Minnesota Chapter of Associated Builders & Contractors v. Bd. of Educ. of Minnetonka Indep. Sch. Dist. No. 276, 567 N.W.2d 761 | 73+21 | Certiorari will lie to review quasi-judicial acts and proceedings of administrative bodies. Western Area Business & Civic Club v. Duluth Sch. Bd. Indep. Dist. No. 709, 324 N.W.2d 361, 364 (Minn.1982). But certiorari is not available when the acts sought to be reviewed are of legislative or administrative character. Id. | Certiorari will lie to review quasi-judicial acts and proceedings of administrative bodies; however, certiorari is not available when acts sought to be reviewed are of legislative or administrative character. | Is certiorari available when the acts sought to be reviewed are of legislative or administrative character? | Administrative Law - Memo 173 - RK.docx | LEGALEASE-00007620-LEGALEASE-00007621 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10049 | O'Connor v. Davis, 126 F.3d 112 | 231H+1 | Other courts have agreed with this view. As the Eighth Circuit has explained, courts turn to common-law principles to analyze the character of an economic relationship "only in situations that plausibly approximate an employment relationship." Graves v. Women's Prof'l Rodeo Assoc., 907 F.2d 71, 74 (8th Cir.1990). Where no financial benefit is obtained by the purported employee from the employer, no "plausible" employment relationship of any sort can be said to exist because although "compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, ... it is an essential condition to the existence of an employer-employee relationship." Graves, 907 F.2d at 73. See also Neff v. Civil Air Patrol, 916 F.Supp. 710, 712"13 (S.D.Ohio, 1996); Smith v. Berks Community Television, 657 F.Supp. 794, 796 (E.D.Pa.1987); cf. Haavistola v. Community Fire Co., 6 F.3d 211, 219 (4th Cir.1993). | Courts turn to common-law principles to analyze character of economic relationship only in situations that plausibly approximate employment relationship. | When does the court turn to common-law principles to analyze the character of an economic relationship? | Labor and Employment - Memo 8 - VP.docx | LEGALEASE-00007940-LEGALEASE-00007941 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10050 | Grayson Rural Elec. Corp. v. City of Vanceburg, 4 S.W.3d 526 | 145+8.1(2.1) | Municipally-owned electric utilities are creatures of statute having only such authority as the Legislature grants to them. This principle was recognized in City of Nicholasville, supra, and affirmed in City of Florence, supra. Both opinions denied municipally-owned or municipally-franchised electric utilities an exclusive right to provide retail electric service to all utility customers within the city's boundaries. This Court has held that the Legislature determines the extent of authority which cities have to operate their own or franchised electric systems. That is, a municipally-owned or municipally-franchised electric utility has no exclusive service rights even within municipal boundaries in the absence of statutory authority. City of Cold Spring v. Campbell Co. Water Dist., Ky., 334 S.W.2d 269 (1960) and City of Corbin v. Ky. Utilities Co., Ky., 447 S.W.2d 356 (1969).The VUC operated under KRS 96.520 for 56 years (1939"1995). The statute confers authority to own and operate the system only for purposes of supplying the city and its inhabitants with electric light, heat and power.Any city of the second, third, fourth, fifth or sixth class may purchase, establish, erect, maintain and operate electric light, heat and power plants with extensions and necessary appurtenances thereto, within or without the corporate limits of the city, for the purpose of supplying the city and its inhabitants with electric light, heat and power. KRS 96.520 | A municipally-owned or municipally-franchised electric utility has no exclusive service rights even within municipal boundaries in the absence of statutory authority. | Does a municipally-owned or municipally-franchised electric utility have exclusive service rights within municipal boundaries? | 002382.docx | LEGALEASE-00119483-LEGALEASE-00119485 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10051 | TrinCo Inv. Co. v. United States, 722 F.3d 1375 | 148+2.1 | The Fifth Amendment to the Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. As its language indicates, "this provision does not prohibit the taking of private property, but instead places a condition on the exercise of that power." First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). However, the United States Supreme Court has observed that the "common law ha[s] long recognized that in times of imminent peril"such as when fire threatened a whole community"the sovereign could, with immunity, destroy the property of a few that the property of the many and the lives of many more could be saved." United States v. Caltex, 344 U.S. 149, 154, 73 S.Ct. 200, 97 L.Ed. 157 (1952). This principle, "absolving the State ... of liability for the destruction of "real and personal property, in cases of actual necessity, to prevent" ... or forestall ... grave threats to the lives and property of others," is commonly referred to as the "doctrine of necessity" or the "necessity defense." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1029 n. 16, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). | Under the "doctrine of necessity" or the "necessity defense," the state is absolved of liability under the Fifth Amendment's Takings Clause for the destruction of real and personal property in cases of actual necessity, to prevent or forestall grave threats to the lives and property of others. U.S.C.A. Const.Amend. 5. | What is the doctrine of necessity? | 002395.docx | LEGALEASE-00119496-LEGALEASE-00119497 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10052 | U.S. v. Neel, 235 F.2d 395 | 220+4153(2) | It is well established that a partnership is created by persons joining together their money, goods, labor or skill for the purpose of carrying on a trade, business, or profession, when there is a community of interest in the profits and losses. A husband and wife may become partners for business purposes, even though the partnership relationship results in the decrease of their total tax liability. | A husband and wife may become partners for business purposes even though the partnership results in a decrease of their total tax liability. | Can a husband and wife become business partners? | Partnership - Memo 75 - RK.docx | ROSS-003297207-ROSS-003297208 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 10053 | Arkansas State Highway Comm'n v. Barker, 326 Ark. 403 | 148+138 | A landowner who has his land condemned is entitled to just compensation. City of El Dorado v. Scruggs, 113 Ark. 239, 168 S.W. 846 (1914). However, this does not mean that a landowner is entitled to be unjustly enriched at the expense of the public purse. See United States v. 158.24 Acres of Land, 696 F.2d 559, 564 (8th Cir.1982). There are three recognized formulas for measuring just compensation in partial-taking cases: (1) the value of the part taken; (2) the value of the part taken plus the damages to the remainder; (3) the before- and after-value rule.Young v. Arkansas State Highway Comm'n, 242 Ark. 812, 415 S.W.2d 575 (1967); see also Arkansas State Highway Comm'n v. Jones, 256 Ark. 40, 505 S.W.2d 210 (1974). In Young, we wrote that "the difference between the market value of the whole tract before the taking, and the market value of that part which remains after the taking, less any enhancement peculiar to the lands" has long been the measure of damages in partial-taking cases.242 Ark. at 814, 415 S.W.2d at 576"77. | Three recognized formulas for measuring just compensation in partial-taking cases are value of part taken, value of part taken plus damages to remainder, and before- and after-value rule. | What are the formulas recognized for measuring just compensation in partialtaking cases? | 01260.docx | LEGALEASE-00081617-LEGALEASE-00081618 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10054 | Teller v. McCoy, 162 W. Va. 367 | 233+1444 | In response to the second certified question, we hold that since a lease of a residential dwelling unit is to be treated and construed as any other contract, the covenant to pay rent and the warranty of habitability are mutually dependent. Franklin v. Pence, 128 W.Va. 353, 36 S.E.2d 505 (1945); Jones v. Kessler, 98 W.Va. 1, 126 S.E. 344 (1925) | Since lease of residential dwelling unit is to be treated and construed as any other contract, covenant to pay rent and warranty of habitability are mutually dependent. Code, 37-6-30. | Are leases of urban dwelling units construed like any other contract? | Landlord and Tenant - Memo 62 - ANG.docx | LEGALEASE-00008176-LEGALEASE-00008177 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10055 | City of Fairhope v. Raddcliffe, 48 Ala. App. 224 | 386+3 | We do not agree with a literal construction of this statement. The Supreme Court in the Johns case, supra, made no such pronouncement, but defined clearly the basis of an action of trespass as we have previously indicated herein. We state again that it is not the descriptive words "willful or wanton" which determine an act to be in trespass, but whether the act producing injury was one of application of direct force. We comment that this construction is based upon well defined principles of common law and of the legislative designation of the applicable statute of limitations. We may not approve of it, but we are bound to so interpret and apply it until it is changed by proper authority. | It is not the descriptive words "willful or wanton" which determine an act to be in trespass, but whether act producing injury was one of application of direct force. | Can the descriptive words willful or wanton acts always connote a trespass? | 002953.docx | LEGALEASE-00119821-LEGALEASE-00119822 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10056 | Gottlieb v. Cty. of Orange, 84 F.3d 511 | 211+1835 | It is established that parents have a fundamental, constitutionally protected liberty interest in the custody of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651"52, 92 S.Ct. 1208, 1212"13, 31 L.Ed.2d 551 (1972); Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir.1977). Where, however, there is an objectively reasonable basis for believing that parental custody constitutes a threat to the child's health or safety, government officials may remove a child from his or her parents' custody at least pending investigation. See, e.g., Cecere v. City of New York, 967 F.2d 826, 829 (2d Cir.1992); Robison v. Via, 821 F.2d 913, 921"22 (2d Cir.1987); Duchesne v. Sugarman, 566 F.2d at 826. Plaintiffs claim that there was no such basis in the present case and that all of the defendants are liable for separating Andrew from the rest of the family. We conclude that the district court properly dismissed these claims | If there is objectively reasonable basis for believing that parental custody constitutes threat to child's health or safety, government officials may remove child from his or her parents' custody at least pending investigation. | Do parents have a liberty interest in the custody of their children? | 003064.docx | LEGALEASE-00119569-LEGALEASE-00119571 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10057 | Trevino v. Allstate Ins. Co., 651 S.W.2d 8 | 13+10 | A condition precedent to the right to maintain an action must be performed and "the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery." Southwestern Associated Telephone Co. v. City of Dalhart, 254 S.W.2d 819, 825 (Tex.Civ.App."Amarillo 1952, writ ref'd n.r.e.). When a plaintiff avers generally that all conditions precedent have been performed, he is required to prove the performance of only those conditions precedent specifically denied by the defendant. The effect of this rule is to shift the burden of pleading to the defendant, but not the burden of proof, when the plaintiff has made a general allegation that all conditions precedent have been performed. | A condition precedent to the right to maintain an action must be performed and the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery. | Is it necessary to prove the fact of performance to warrant a recovery? | Action - Memo 50 - MS.docx | LEGALEASE-00008745-LEGALEASE-00008746 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 10058 | Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissosway Towing & Transp. Co., 191 F. 769 | 366+1 | The only other question arising on the record is that of subrogation in behalf of the underwriters on the cargo of the Allen, who paid full insurance thereon. The District Court found that the underwriters were not entitled to subrogation against either the tug or the Powhatan, basing this conclusion upon the proposition that the assured were the owners of the tug, who were also the owners of the Allen; and it evidently yielded to the claim of the tug and the Powhatan that the case is governed by Wager v. Providence Insurance Company, 150 U.S. 99, 14 Sup.Ct. 55, 37 L.Ed. 1013. The view we take is that the case is governed by well settled rules of the law of subrogation, which law rests on broad equities, and is entirely aside from any technicalities. It finds its origin in the Roman law, and, even so far as now recognized by the common law, came through equity, and not from the common law to equity. Judge Story says at section 635 of the first volume of his work on Equity Jurisprudence:"It is not improbable that this doctrine of marshaling securities or funds, which under another form had its existence in the Roman law, and was therein called subrogation or substitution, was derived into the jurisprudence of equity from that source, as it might well be, since it is a doctrine belonging to an age of enlightened policy, and refined although natural justice."It follows, therefore, that, applying the doctrine of subrogation, no attention should be paid to technicalities which are not of an insuperable character, but the broad equities should always be sought out as far as possible. It is also well settled that the same general rules apply to the interpretation and application of policies of marine insurance. | The doctrine of subrogation is one of equity and not of the common law, and, in its application, no attention should be paid to technicalities which are not of an insuperable character, but the broad equities should always be sought out as far as possible. | Should courts pay attention to technicalities which are not of an insuperable character in deciding whether to apply the doctrine of equitable subrogation? | Subrogation - Memo 27 - VP.docx | LEGALEASE-00008809-LEGALEASE-00008810 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10059 | Tucker v. Holder, 359 Mo. 1039 | 366+14.3 | In Valle's Heirs v. Fleming's Heirs, 29 Mo. 152, 77 Am.Dec. 557, purchasers at a void administrator's sale satisfied an existing mortgage and one of them, who was a grantee from his co-purchasers, and his heirs were subrogated to the rights of the mortgagee as against the owners. Likewise in Maupin v. Longacre, 315 Mo. 872, 288 S.W. 54, 58, a subsequent grantee from one who discharged a mortgage under a void sale was subrogated to the rights of the mortgagee. As to the subsequent grantee's acquisition of the right the court said: "The equitable interest accruing to Mrs. Welborn through subrogation thereafter passed by mesne conveyances to the defendant Longacre, and in now owned by him." In Shanklin v. Ward, 291 Mo. 1, 236 S.W. 64, it was held that the grantee of a purchaser at a void guardian's sale acquired the purchaser's equitable interest arising out of his right to subrogation. See also 60 C.J., Secs. 99, 104, pp. 789, 791. Mrs. Tucker argues, however, that in all these cases the sales were void and that the purchasers who discharged the mortgages got no title whatever while Mr. Farmer and the Holders, in this case, did get the title their respective grantors had, a life estate. It is true that their title was not void, they did acquire some interest through their conveyances"the life estate of their original grantor. But not only does subrogation not depend upon the validity of the grantee's title, which in spite of the warranty deeds in this case eventually failed, it is the device of equity to prevent unjust enrichment and to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. 50 Am.Jur., Secs. 2, 7, pp. 679, 685; annotation 99 Am.St.Rep. loc. cit. 476. To summarize"when all the circumstances are considered and the resulting equities favorable to the Holders' claim are weighed and contrasted with the equities favorable to Mrs. Tucker's claim it is justly apparent that subrogation should be enforced, not to the full extent of | Subrogation is a device of equity to prevent unjust enrichment and to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it, and where purchaser assumed and agreed to pay pre-existing note and deed of trust, which were valid, and preexisting charges on land and estate of remaindermen, and such payment was made and the land was thereafter acquired by successor in interest for $2,000, subrogation would be enforced against estate of remaindermen, not to the full extent of the $4,500 note and mortgage but proportionately in the sum of $2,000 which successor in interest paid for the land. | Does subrogation exist to prevent unjust enrichment? | Subrogation - Memo 28 - VP.docx | ROSS-003299832-ROSS-003299834 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10060 | Bank of Am., N.A. v. Diamond Fin., 88 Mass. App. Ct. 564 | 366+1 | In addition, "[t]he court must also examine the actions of the subrogee." Id. at 331, 701 N.E.2d 331. "The subrogee's behavior is an important consideration that the court must balance in its equitable analysis of the interests of both mortgages." Id. at 332, 701 N.E.2d 331. However, the subrogee's negligence or lack of diligence does not bar recovery and is only a material consideration when the intervening lienholder has been prejudiced. See ibid. | In determining whether equitable subrogation applied, the subrogee's behavior is an important consideration that the court must balance in its equitable analysis of the interests. | Is a subrogee's behavior an important consideration that the court must balance in its equitable analysis of interests of both mortgages? | Subrogation - Memo 43 - RM.docx | ROSS-003325824-ROSS-003325825 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 10061 | Braxton v. O'Charley's Rest. Properties, 1 F. Supp. 3d 722 | 25T+116 | Congress enacted the United States Arbitration Act of 1925, more commonly referred to as the Federal Arbitration Act (FAA), 9 U.S.C. "" 1"16, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements. The United States Supreme Court has since interpreted the FAA as codifying "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). The Supreme Court has further stated that the FAA's underlying purpose is to put arbitration agreements "upon the same footing as other contracts." EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. See Allied"Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). | The Federal Arbitration Act (FAA) establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. 9 U.S.C.A. SS 1-9. | Is the Federal Arbitration Act applicable in both state and federal courts? | 002648.docx | LEGALEASE-00120034-LEGALEASE-00120036 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10062 | Walker v. Brigham City, 856 P.2d 347 | 145+11.2(3) | Fixing rates for electric power supplied by a municipally owned utility is a legislative act. In reviewing a municipality's exercise of legislative discretion, this court defers to a city council's judgment unless it has acted outside of its authority or its actions are such that they are arbitrary and capricious. Nothing in the record suggests that Brigham City's rate setting was "so wholly discordant to reason and justice" as to be arbitrary and capricious.9 We therefore hold that the procedure employed by Brigham City in setting electric utility rates is reasonable. | Fixing rates for electric power supplied by municipally owned utility is a legislative act. | Is fixing rates for electric power supplied by municipally owned utility a legislative act? | Electricity - Memo 50 - RK.docx | ROSS-003295568-ROSS-003295569 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10063 | Moche v. Leno, 227 N.C. 159 | 315+116 | In this State this Court in Moring v. Ward, 50 N.C. 272, defines a lease for years as "a contract by which one agrees, for a valuable consideration, called rent, to let another have the occupancy and profits of the land for a definite time." Also, that there is a distinction between a lease and sale of real estate is pointed out in Waddell v. United Cigar Stores, 195 N.C. 434, 142 S.E. 585, 588, where Adams, J., uses this language: "In the case before us it is not proposed to convey the legal title * * * but to execute a lease which, except as modified by statute, is treated as a chattel real, falling within the classification of personal property. It is obvious that between a sale and a lease of real property there is a distinction which often calls for the application of diverse principles.' | A lease, as distinguished from sale, of real estate, is treated as "chattel real", falling within classification of personal property, except as modified by statute. | Is a lease a chattel real falling within the classification of personal property? | 002749.docx | LEGALEASE-00120238-LEGALEASE-00120239 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 10064 | Lanuza v. Love, 134 F. Supp. 3d 1290 | 249+30 | The prosecution of an action "undertaken for improper or wrongful motives or in reckless disregard for the rights of the plaintiff" satisfies the malice element of a malicious prosecution claim. See Peasley v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 502, 125 P.2d 681 (1942). | Under Washington law, prosecution of an action undertaken for improper or wrongful motives or in reckless disregard for the rights of the plaintiff satisfies the malice element of a malicious prosecution claim. | Can an improper motive in initiating legal proceedings show the malice required to prove malicious prosecution? | 002760.docx | LEGALEASE-00120254-LEGALEASE-00120255 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 10065 | Brodsky v. U.S. Nuclear Regulatory Comm'n, 578 F.3d 175 | 145+8.7(2) | Whether the challenged order is an exemption, as the NRC has labeled it and thus beyond our jurisdiction, or is properly regarded as an amendment and within our Hobbs Act jurisdiction, is itself an issue that is within our jurisdiction. See Estate of Pew v. Cardarelli, 527 F.3d 25, 28 (2d Cir.2008) ("As always, we have jurisdiction to determine our jurisdiction."). | Nuclear Regulatory Commission (NRC) order exempting nuclear power plant operator from certain fire safety regulations was exemption outside of Court of Appeals' Hobbs Act jurisdiction, rather than an amendment to operator's license within Court's jurisdiction; although NRC could have alternatively treated the order as an amendment to the operator's license, it applied its regulations reasonably in opting instead to grant an exemption. Atomic Energy Act of 1954, S 189(a), 42 U.S.C.A. S 2239(a); 10 C.F.R. S 50.12. | Is the Nuclear Regulatory Commission order exempting nuclear plant operator from fire safety regulations reviewable under the Hobbs Act? | Electricity - Memo 38 - JS.docx | LEGALEASE-00009023-LEGALEASE-00009025 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10066 | Madison v. Frazier, 539 F.3d 646 | 237+22 | "The so-called "innocent construction rule" in Illinois requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." Solaia Tech., LLC v. Speciality Publ'g Co., 221 Ill.2d 558, 304 Ill.Dec. 369, 852 N.E.2d 825, 839 (2006). A statement that may innocently or reasonably be construed as referring to a person other than the plaintiff cannot be actionable per se. Salamone v. Hollinger Int'l, Inc., 347 Ill.App.3d 837, 283 Ill.Dec. 245, 807 N.E.2d 1086, 1089 (2004). While this rule favors a defendant because a tougher standard is warranted where damages are presumed, it "does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." Tuite v. Corbitt, 224 Ill.2d 490, 310 Ill.Dec. 303, 866 N.E.2d 114, 123 (2007). Our court, as well as Illinois courts, have said that "[w]hether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." Knafel v. Chicago Sun-Times, Inc., 413 F.3d 637, 640 (7th Cir.2005); Kolegas v. Heftel Broad. Corp., 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 207 (1992). | The so-called "innocent construction rule" in Illinois requires a court to consider an allegedly defamatory statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning. | What is the innocent construction rule? | Libel and Slander - Memo 129 - JS.docx | ROSS-003325013-ROSS-003325015 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10067 | Kizer v. Burk, 439 So. 2d 1051 | 233+531 | Therefore, the standing timber on the leased property must be considered as a part of the leased estate. The agreement clearly did not give the lessee the power to alienate any part of the leased premises. To the contrary, the lessee agreed to faithfully and carefully guard and protect the premises. A lease is a synallagmatic contract whereby the owner of the thing leased grants to the lessee the enjoyment of the thing for a certain time. C.C. 2669, 2674. It does not give the lessee the power to alienate all or part of the leased thing. C.C. 2719. | A lease is a synallagmatic contract whereby the owner of the thing leased grants to the lessee the enjoyment of the thing for a certain time; it does not give the lessee the power to alienate all or part of the leased thing. LSA-C.C. arts. 2669, 2674, 2719. | Can a lease be a synallagmatic contract? | 003286.docx | LEGALEASE-00120222-LEGALEASE-00120223 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 10068 | Reading v. Gazzam, 200 Pa. 70 | 253+1102 | The case was most carefully tried. Not an exception by the defendant appears to the admission or rejection of evidence, and neither plaintiff nor defendant complained of the general charge, in which the learned trial judge correctly spoke these words to the jury: "Am action of this kind can be maintained, provided the facts as alleged by the plaintiff are clearly proven. The wife is entitled, as a matter of right, not only to the support and maintenance of her husband, but also to his love and affection. It follows that if any woman, by the exercise of any arts or wiles, alienates the husband's affections from his wife, entices him away from her presence, so that she has not the consolation and advantage of his society, and does not receive adquate support from him, an action may be maintained for such an injury. To entice away or corrupt the mind of one's consort is a civil wrong, for which the offender is liable to the injured wife. The gist of the action is not the loss of assistance, but the loss of "consortium" of the husband, under which term are usually included the person's affection, society, and aid. The plaintiff's allegation is a very serious one, and it is incumbent upon her to prove to you, before any recovery can be had, that the defendant, Mrs. Gazzam, enticed her husband away; that she did something by which his former affections were alienated; by which he afterwards failed to perform those duties which the husband always owes to his wife, for support and the like. I charge you that there can be no recovery by the plaintiff unless you find from the testimony that the defendant intentionally and wickedly alienated the affections of Charlton Reading from his wife, intentionally enticed him away from her presence, and thus induced him to withhold the love and affection which he by law owed to her.' Our duty has, therefore, been simply to review, with care, the evidence produced by the plaintiff to determine whether the court below should have said to her | The gist of the action is not the loss of assistance but the loss of consortium of the spouse. Hence, to entice away or corrupt the mind of one's consort is a civil wrong for which the offender is liable to the injured wife. | Can a person be liable for a civil wrong if he entices or corrupts the mind of one's consort? | 003680.docx | LEGALEASE-00120288-LEGALEASE-00120291 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 10069 | Lyle v. Waddle, 144 Tex. 90 | 386+1 | In our opinion the argument confuses injury caused by the trespass with the trespass itself. The misfeasance or the wrongful act is the trespass. Bouvier's definition of trespass is:"An unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another". 2 Bouv. Law Dict., Rawle's Third Revision, p. 3316. | An unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another, constitutes a "trespass". | Can any unlawful act with violence against the person of another be categorized as a trespass? | 003687.docx | LEGALEASE-00120299-LEGALEASE-00120300 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 10070 | State v. Besson, 110 N.J. Super. 528 | 386+1 | It is the opinion of this court that school property is of such public character that a mere entry thereon cannot, in and of itself, constitute a trespass. Black's Law Dictionary (4th ed.), at 1674, defines trespass as "(A)n unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another." It is a serious charge, and although a trespass does not become lawful because it was done with good intention, Taylor v. Borgfeld, 139 N.J.Eq. 177, 50 A.2d 654 (Ch.1947), where the property involved is at least in some respects public in nature, and the First Amendment rights of an individual are in issue, the court has a duty to look at the total circumstances. | "Trespass" is an unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another. | Can any unlawful act with violence against the person of another be categorized as a trespass? | Trespass - Memo 96 - RK.docx | LEGALEASE-00009149-LEGALEASE-00009150 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10071 | 767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations, 988 F.2d 295 | 221+179 | The Vienna Convention entered into force April 24, 1964. One hundred and thirteen member states have ratified it, including the United States on December 13, 1972. See Office of the Legal Advisor, U.S. Department of State, Treaties in Force: A List of Treaties and Other Agreements of the United States in Force on January 1, 1991; Satow's Guide to Diplomatic Practice 106-09 (Lord Gore-Booth ed., 5th ed. 1988). History establishes beyond question therefore that the Vienna Convention on Diplomatic Relations was intended to and did provide for the inviolability of mission premises, archives documents, and official correspondence. See Parry & Grant, Encyclopedic Dictionary of International Law 193 (Clive Parry et al. eds., 1988). | Vienna Convention on Diplomatic Relations provides for inviolability of United Nations mission premises, archives documents, and official correspondence. | Does the Vienna Convention on Diplomatic Relations provide for the inviolability of mission premises? | Ambassadors and Consuls - Memo 11 - RK.docx | ROSS-003282339-ROSS-003282341 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10072 | Piccone v. Bartels, 40 F. Supp. 3d 198 | 92+2161 | Under the Supreme Court's First Amendment jurisprudence, the degree of "fault" that must be proven in order to support a permissible action for defamation hinges on the plaintiff's status. "Short of imposing liability without fault, states may define appropriate standards regarding defamation of private individuals." Shay, 702 F.3d at 82. On the other hand, since New York Times v. Sullivan, 376 U.S. at 279"80, 84 S.Ct. 710, "public officials and public figures may only recover if they can prove that the publication that harmed them contained a false statement of fact that was made with actual malice." Fiacco v. Sigma Alpha Epsilon Fraternity, 528 F.3d 94, 99 (1st Cir.2008). "Actual malice," in this context, means "knowledge of or reckless disregard for the falsity of the statement." Levinsky's, Inc. v. Wal"Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir.1997). | Under the First Amendment, short of imposing liability without fault, states may define appropriate standards regarding defamation of private individuals, but, on the other hand, public officials and public figures may only recover if they can prove that the publication that harmed them contained a false statement of fact that was made with actual malice; "actual malice," in this context, means knowledge of or reckless disregard for the falsity of the statement. U.S.C.A. Const.Amend. 1. | Can the states impose liability without fault under the law of defamation? | 003307.docx | LEGALEASE-00120592-LEGALEASE-00120593 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 10073 | Schmidt v. Cal-Dive International, 240 F.Supp.3d 532 | 237+32 | Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. Sassone v. Elder, 626 So.2d 345, 350 (La. 1993). To maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Kennedy v. Sheriff of E. Baton Rouge, 935 So.2d 669, 674 (La. 2006); Henry v. Lake Charles American Press, L.L.C., 566 F.3d 164, 181 (5th Cir. 2009). If any of the elements of the tort is lacking, the cause of action fails. Costello, 864 So.2d at 139. "The fault requirement is generally referred to in the jurisprudence as malice, actual or implied." Kennedy at 674. By definition, a statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury. | Under Louisiana law, when the words at issue are not defamatory per se, plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice or fault, and injury. | What does the plaintiff need to prove when the words at issue are not defamatory per se? | Libel and Slander - Memo 150 - RK.docx | ROSS-003310971-ROSS-003310973 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 10074 | Schleicher v. Walker, 28 Fla. 680 | 289+928 | Where one partner transfers his entire interest in the partnership concerns to his copartner, so as to vest in the latter the partnership assets as his sole property, a dissolution of the partnership results. | Where one partner transfers his entire interest in the partnership concerns to his copartner, so as to vest in the latter the partnership assets as his sole property, a dissolution of the partnership results. | Does a transfer of partnership assets from one partner to another dissolve the partnership? | 003443.docx | LEGALEASE-00120652-LEGALEASE-00120653 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 10075 | Hempstead Cty. Hunting Club v. Arkansas Pub. Serv. Comm'n, 2010 Ark. 221 | 317A+102 | Utility regulation does not arise from the common law but rather is a creature of statute. As such, the statutes must be strictly construed, and nothing may be taken that is not clearly expressed. E.g., St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, 348 Ark. 197, 204, 73 S.W.3d 584, 588 (2002). First, we must consider whether, as appellants assert, the Commission was required in one proceeding to resolve all issues relating to both the Turk Plant and the transmission lines that would be needed to convey the power produced by the plant. The Utility Act statutes refer to "any major utility facility," "a major utility facility," and "the major utility facility" in the singular form as opposed to the plural form. See, e.g., Arkansas Code Annotated sections 23"18"508 (Repl.2002), 23"18"510 (Repl.2002), and 23"18"511 (Supp.2007). Further, Arkansas Code Annotated section 23"18"503(5) defines in separate paragraphs "major utility facility" to mean an "electrical generating plant," an "electric transmission line," or a "gas transmission line." If there were a requirement to consider more than one facility together in one proceeding, as in the present case of a power plant and transmission lines, then the singular form of "facility" would not be used. Looking to the plain meaning of the statute, we conclude that, because the Turk Plant is a major utility facility, the Commission was permitted to consider it alone in one proceeding. Electric transmission lines, also a major utility facility, may be considered in a separate proceeding. We now turn to appellants' argument that the Commission erred by making a need determination in a separate docket. | Utility regulation does not arise from the common law but rather is a creature of statute; as such, the statutes must be strictly construed, and nothing may be taken that is not clearly expressed. | Should utility regulations be strictly construed? | 003495.docx | LEGALEASE-00120321-LEGALEASE-00120322 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10076 | Adams v. N. Illinois Gas Co., 211 Ill. 2d 32 | 317A+102 | Also, this court has held that the Public Utilities Act is in derogation of the common law; accordingly, the Act is to be strictly construed in favor of persons sought to be subjected to its operation. Barthel v. Illinois Central Gulf R.R. Co., 74 Ill.2d 213, 220"21, 23 Ill.Dec. 529, 384 N.E.2d 323 (1978). "Thus, the statute is to be strictly construed in favor of the utility company." Tucker v. Illinois Power Co., 232 Ill.App.3d 15, 29, 173 Ill.Dec. 512, 597 N.E.2d 220 (1992). However, because the utility company drafts a tariff, it is generally accepted that language in a tariff, especially exculpatory language, is to be strictly construed against the utility company and in favor of the customer. See, e.g., Pink Dot, 89 Cal.App.4th at 415, 107 Cal.Rptr.2d at 397; Krasner v. New York State Electric & Gas Corp., 90 A.D.2d 921, 921"22, 457 N.Y.S.2d 927, 929 (1982); State Farm Fire & Casualty Co. v. Southern Bell Telephone & Telegraph Co., 245 Ga. 5, 7, 262 S.E.2d 895, 897 (1980). | The Public Utilities Act is in derogation of the common law; accordingly, the Act is to be strictly construed in favor of persons sought to be subjected to its operation, and thus, the statute is to be strictly construed in favor of the utility company. S.H.A. 220 ILCS 5/9-102. | Is the Public Utilities Act in derogation of the common law? | 003499.docx | LEGALEASE-00120330-LEGALEASE-00120331 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10077 | Town of Sterlington v. Greater Ouachita Water Applicant Co., 149 So. 3d 952 | 317A+181 | La. Const. Art. IV, " 21(B) vests jurisdiction over public utilities in general and rates in particular in the PSC. Daily Advertiser v. Trans"La, a Div. of Atmos Energy Corp., 612 So.2d 7 (La.1993). It provides that:The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law. | Fact that a party to an action qualifies as a public utility does not automatically divest a court of original jurisdiction; however, that fact renders state constitutional article, providing that Public Service Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law, arguably applicable. LSA-Const. Art. 4, S 21(B). | Can the Public Service Commission (PSC) regulate all common carriers and public utilities? | 003508.docx | LEGALEASE-00120361-LEGALEASE-00120362 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 10078 | Wilhite v. Schendle, 92 F.3d 372 | 366+1 | As an alternative theory of recovery, Wilhite argues that if the obligation is "joint and divisible," Wilhite should still be able to recover through the theory of subrogation, or the substitution of one person for the rights of another. Under Louisiana law, subrogation may occur either by "conventional" or "legal" means. "Conventional" subrogation occurs when an obligee receives performance from a third person and in express terms subrogates that person to the rights of the obligee, even without the obligor's consent. "Legal" subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others and who has recourse against those others as a result of the payment. | Under Louisiana law, "conventional subrogation" occurs when obligee receives performance from third person and in express terms subrogates that person to rights of obligee, even without obligor's consent; "legal subrogation" takes place by operation of law in favor of obligor who pays debt he owes with others and who has recourse against those others as result of the payment. LSA-C.C. arts. 1825, 1827, 1829. | When does subrogation take place by operation of law? | Subrogation - Memo 70 - VP C.docx | ROSS-003285741-ROSS-003285742 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 10079 | Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765 | 366+1 | There are two types of subrogation. See id. at 551. Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss, while equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. Argonaut Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 542 (Tex.App.-Corpus Christi 1993, writ denied); see also Lee R. Russ & Thomas F. Segalla, 16 Couch on Insurance " 223:1 (3d ed.2005). In either case, the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured. See Interstate Fire Ins. Co. v. First Tape, Inc., 817 S.W.2d 142, 145 (Tex.App.-Houston [1st Dist.] 1991, writ denied); 775 Int'l Ins. Co. v. Med.-Prof'l Bldg. of Corpus Christi, 405 S.W.2d 867, 869 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.); see also 16 Couch on Insurance " 222:5. Privity of contract between the insurers is not necessary. Phipps v. Fuqua, 32 S.W.2d 660, 663 (Tex.Civ.App.-Amarillo 1930, writ ref'd).] | "Equitable subrogation," i.e., "legal subrogation" does not depend on contract, but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | How is a contractual subrogation created? | 14763.docx | LEGALEASE-00082000-LEGALEASE-00082002 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10080 | Se. Arkansas Hospice v. Sebelius, 1 F. Supp. 3d 915 | 148+2.2 | SEARK primarily challenges the Secretary's regulation under the Takings Clause of the Fifth Amendment, which provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Courts have recognized so-called "regulatory takings" under the Takings Clause. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). For example, a regulatory taking occurs where public utilities are legally compelled to provide services to the public while limited to a charging a price "which is so "unjust" as to be confiscatory." Duquesne Light Co. v. Barasch, 488 U.S. 299, 307, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989). However, "[i]t is well established that government price regulation does not constitute a taking of property where the regulated group is not required to participate in the regulated industry." Whitney v. Heckler, 780 F.2d 963, 972 (11th Cir.1986) (see Bowles v. Willingham, 321 U.S. 503, 517"18, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (rent controls do not constitute prohibited taking because statute did not require landlords to offer their apartments for rent)). | Government price regulation does not constitute a taking of property under the Takings Clause where the regulated group is not required to participate in the regulated industry. U.S.C.A. Const.Amend. 5. | Does the government price regulation constitute a taking of property where the regulated group is not required to participate in the regulated industry? | 003103.docx | LEGALEASE-00120691-LEGALEASE-00120692 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10081 | Native Am. Arts v. Mangalick Enterprises, 633 F. Supp. 2d 591 | 92+3704 | The Court concludes that the Act withstands the highly deferential, rational basis standard. Congress enacted the Act to "(1) * * * protect[ ] Indian artists from unfair competition from counterfeiters and (2) protect [ ] consumers from unknowingly purchasing imitation products." Native Am. Arts, Inc. v. Bundy"Howard, Inc., 168 F.Supp.2d 905, 914 (N.D.Ill.2001). When Congress strengthened the Act in 2000, the stated purpose of the new legislation was "to improve the enforcement of the [Act] for the protection of economic and cultural integrity of authentic Indian arts and crafts * * *." S.Rep. No. 106"452, at 1 (2000). Congress had determined that the "growing influx of inauthentic Indian arts and crafts * * * [was] decimating one of the few forms of entrepreneurship and economic development on Indian reservations." Id. at 1"2. The Court concludes that the Act"which imposes penalties for, among other things, selling Indian-style goods in a manner that falsely suggests that the goods were Indian made"is rationally related to a legitimate government interest. See California v. Cabazon Band of Mission Indians, 480 U.S. 202, 216"217, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (encouraging tribal economic development is an "important federal interest[ ]"). Therefore, the Court denies Mangalick's motion to dismiss on the ground that the Act is unconstitutional. | Indian Arts and Crafts Act, which, inter alia, imposed penalties for selling Indian-style goods in a manner that falsely suggested that the goods were Indian made, was rationally related, under equal protection principles, to a legitimate government interest in protecting Indian artists from unfair competition from counterfeiters and to protect consumers from unknowingly purchasing imitation products. U.S.C.A. Const.Amend. 5; Indian Arts and Crafts Enforcement Act of 2000, 25 U.S.C.A. S 305e et seq. | What is the purpose of Indian Arts and Crafts Act (IACA)? | 003224.docx | LEGALEASE-00120719-LEGALEASE-00120720 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 10082 | John P. Harris, M.D. v. Parmley, 480 So.2d 500 | 289+421 | Three elements are necessary for the formation of a partnership. They are (1) mutual consent, (2) participation in profits and/or losses and (3) proprietary interest in a community of property. See Franklin Printing Company v. Scott Fence of New Orleans, Inc., 392 So.2d 170 (La.App. 4th Cir.1981).Without an agreement among the parties, there can be no partnership. | Three elements necessary for formation of partnership under LSA-C.C. art. 2801 are mutual consent, participation in profits and/or losses, and proprietary interest in community of property. | Is proprietary interest in the business a necessary element in partnership? | Partnership - Memo 111 - RK.docx | ROSS-003297270-ROSS-003297271 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10083 | Rawson v. City of Omaha, 212 Neb. 159 | 366+22 | In the case of Cagle, Inc. v. Sammons, 198 Neb. 595, 254 N.W.2d 398, 403 (1977), we recognized the doctrine of equitable subrogation, writing: " "The doctrine of subrogation includes every instance in which one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability." Sheridan v. Dudden Implement, Inc., 174 Neb. 578, 119 N.W.2d 64 (1962). The doctrine applies where a party is compelled to pay the debt of a third person to protect his own rights or interest, or to save his own property. Luikart v. Buck, 131 Neb. 866, 270 N.W. 495 (1936); 73 Am.Jur.2d, Subrogation, " 11, p. 605. The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract and no general rule can be laid down which will afford a test for its application in all cases. The facts and circumstances of each case determine whether the doctrine is applicable. Rapp v. Rapp, 173 Neb. 136, 112 N.W.2d 777 (1962); Jones v. Rhodes, 162 Neb. 169, 75 N.W.2d 616 (1956); Equitable Life Assurance Society of the United States v. Person, 135 Neb. 800, 284 N.W. 260 (1939)." | Doctrine of equitable subrogation applies where a party is compelled to pay the debt of a third person to protect his own rights or interest or to save his own property. | Is equitable subrogation available when one person pays debt for which another is primarily liable? | Subrogation - Memo 113 - VP C.docx | ROSS-003330170-ROSS-003330172 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10084 | Norkin v. U. S. Fire Ins. Co., 237 Cal. App. 2d 435 | 302+8(15) | Initially it is to be noted that "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (Hannon v. Madden, 214 Cal. 251, 267, 5 P.2d 4, 11.)"The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i. e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' (2 Witkin, Summary of California Law, p. 1372.) It is not necessary to consider whether plaintiff has sufficiently pleaded the latter four elements of fraud, for it is clear that he has not sufficiently alleged the first element, namely, a false representation. | Fraud must be pleaded in specific language descriptive of the acts relied upon to constitute fraud, and it is not sufficient to allege fraud in general terms or terms amounting to mere conclusions. | Should fraud be specifically pleaded? | 003468.docx | LEGALEASE-00120929-LEGALEASE-00120930 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10085 | Replay v. Sec'y of Treasury of Puerto Rico, 778 F. Supp. 2d 207 | 92+3936 | The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir.1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Mart"nez"Rivera v. S"nchez Ramos, 498 F.3d 3, 8 (1st Cir.2007) (affirming dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers were state actors and not federal actors). Because Plaintiffs' complaint does not allege that Defendant is a federal actor; instead they aver that he is a state officials acting under color of state law (see, Docket # 12 " 15), their claims pursuant to the Fifth Amendment fail. | Fifth Amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. U.S.C.A. Const.Amend. 5. | "Does the Fifth Amendment apply to private individuals, or of state, local or municipal governments?" | 017354.docx | LEGALEASE-00120905-LEGALEASE-00120906 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10086 | Zarmach Oil Servs. v. U.S. Dep't of the Treasury, 750 F. Supp. 2d 150 | 148+2.2 | But even if this Court had jurisdiction over plaintiff's Takings Clause claim, which it does not, the claim fails as a matter of law. It is well-established that the blocking of assets pursuant to an executive order is not a taking within the meaning of the Fifth Amendment. Islamic American Relief Agency v. Unidentified FBI Agents, 394 F.Supp.2d at 51; Holy Land I, 219 F.Supp.2d at 78 (citing multiple cases for the proposition that the blocking of assets does not "as a matter of law, constitute takings within the meaning of the Fifth Amendment"). Accordingly, plaintiff's Fifth Amendment claim will be dismissed. | The blocking of assets pursuant to an executive order is not a taking within the meaning of the Fifth Amendment. U.S.C.A. Const.Amend. 5. | Is blocking of assets pursuant to an executive order a taking within the meaning of the Fifth Amendment? | 017356.docx | LEGALEASE-00120915-LEGALEASE-00120916 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10087 | In re Honolulu Rapid Transit Co., Ltd., 54 Haw. 402 | 70+16 | In obtaining such approval, the burden is on HRT to show that the leases do not so encumber Parcels 4 and 11 as to interfere, at least in some significant manner, with the performance of its duties to the public. That is so because the purpose of a statute such as HRS s 269-19 is to safeguard the public interest. Otter Tail Power Co. v. Clark, 59 N.D. 320, 330, 229 N.W. 915, 919 (1930); Hanlon v. Eshleman, 169 Cal. 200, 146 P. 656, 657 (1915). | Burden was on transportation company, a public utility, to show that leases of air space above two of its parcels would not so encumber parcels as to interfere, at least in some significant manner, with performance of utility's duties to the public, in order to obtain Public Utilities Commission's approval of the leases. HRS S 269-19. | Is the purpose of transport statutes such as the HRS 269-19 to safeguard the public interest? | 042557.docx | LEGALEASE-00120919-LEGALEASE-00120920 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 10088 | Duran v. Texas Dep't of Protective & Regulatory Servs., 281 S.W.3d 9 | 30+775 | Before addressing Ms. Duran's issues on appeal, we first address the Department's contention that this Court does not have jurisdiction to consider Ms. Duran's appeal. A court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction. Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex.1994); Grand Prairie Indep.Sch. Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499, 500 (Tex.1991). As instructed by the Texas Supreme Court, we liberally construe the rules of appellate procedure to protect a party's right to appeal. See Verburgt v. Dorner, 959 S.W.2d 615, 616"17 (Tex.1997). In this case, Ms. Duran hand delivered a notice of appeal with this Court on December 5, 2003 titled Respondent's Notice of Appeal from Associate Judge's Order of Termination. However, upon closer examination of this notice, the appeal was directly from the trial court's adoption of the associate judge's recommendation to terminate parental rights. We construe Ms. Duran's notice of appeal filed on December 5, 2003 as a bona fide attempt to invoke jurisdiction on this Court. Finding that we do have jurisdiction over this appeal, we now address Appellant's Issue One. | Courts liberally construe the rules of appellate procedure to protect a party's right to appeal. | Do Courts liberally construe the rules of appellate procedure to protect a party's right to appeal? | 008276.docx | LEGALEASE-00121544-LEGALEASE-00121545 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10089 | Monclava v. Arnett, 145 N.Y.S.2d 759 | 358+79 | While it is the general rule that courts will not specifically enforce a contract to enter into a partnership, there are exceptions to such a rule, one of such exceptions being where membership in the partnership will vest a property right in the one seeking the enforcement of the agreement. In Wilcox v. Williams, 92 Hun 250, at page 252, 36 N.Y.S. 944, at page 946, the court stated: "Equity will interfere "only when the partnership is for a definite period, or such decree is necessary to invest one of the parties with legal rights which he could not otherwise possess."' (Italics supplied.) This situation obtains here. The second and third causes of action are also sufficient in law. A pleading of such cause of action in the alternative has been expressly sanctioned in Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209. Submit order. | One exception to general rule that courts will not specifically enforce contract to enter into partnership is where membership in the partnership will vest property right in the one seeking enforcement. | Do courts specifically enforce a contract to form a partnership? | 021846.docx | LEGALEASE-00121088-LEGALEASE-00121089 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 10090 | Huber v. Rohrig, 280 Neb. 868 | 307A+3 | A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury, but the court's ruling on the motion is not a final order. To preserve error regarding a court's order in limine, a party resisting the order must make an appropriate objection or offer of proof at trial. Because Golnick failed to preserve his assigned error, we do not consider the court's order in limine beyond what was necessary to dispose of Golnick's assignments regarding the court's rulings on the parties' motions to amend their pleadings. | A motion in limine is but a procedural step to prevent prejudicial evidence from reaching the jury; it is not the purpose of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. | Is a motion in limine a procedural step to prevent prejudicial evidence from reaching the jury? | Pretrial Procedure - Memo # 27 - C - KI.docx | LEGALEASE-00011058-LEGALEASE-00011059 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 10091 | State ex rel. Klapp v. Dayton Power & Light Co., 10 Ohio St. 2d 14 | 317A+114 | Certainly, an important purpose of the Miller Act was to place such disputes, affecting the public interest generally, before the Public Utilities Commission as the agency best adapted to resolve them initially. | Miller Act which requires public utility or political subdivision, in termination, withdrawal or abandonment of public utility services, to make application to Public Utilities Commission for authority to do so has purpose of placing disputes between municipalities and public utilities before the Public Utilities Commission as agency best adapted to resolve them initially. R.C. SS 4905.20, 4905.21. | Should a dispute concerning public interest be brought initially before a Public Utilities Commission under the Miller Act? | 042583.docx | LEGALEASE-00121055-LEGALEASE-00121056 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 10092 | Kinetic Co. v. Medtronic, 672 F. Supp. 2d 933 | 366+1 | Kinetic's next claim sounds in subrogation. Subrogation allows an insurer to "stand[ ] in the shoes of the insured and acquire[ ] all of the rights the insured may have against a third party." Medica, Inc. v. Atlantic Mutual Ins. Co., 566 N.W.2d 74, 77 (Minn.1997). Minnesota recognizes both equitable and conventional subrogation. Id. Equitable subrogation arises from the common law; it aims "to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it." Id., citing Westendorf v. Stasson, 330 N.W.2d 699, 703 (Minn.1983) (internal quotations omitted). Conventional subrogation arises from an agreement between insurer and insured; unless the agreement provides otherwise, however, equitable principles will apply. Medica, 566 N.W.2d at 78. | Under Minnesota law, equitable subrogation arises from the common law; it aims to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it. | Does equitable subrogation arise from the common law or a common law concept? | 043646.docx | LEGALEASE-00121076-LEGALEASE-00121077 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10093 | Casstevens v. Smith, 269 S.W.3d 222 | 366+1 | The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue claims belonging to a party with standing. Frymire Eng'g Co. v. Jomar Int'l, Ltd., 259 S.W.3d 140 (Tex.2008). As the Texas Supreme Court again recognized in Frymire, Texas courts interpret this doctrine liberally. Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142. Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief. The doctrine exists to prevent the unjust enrichment of the debtor who owed the debt being paid. | The doctrine of equitable subrogation exists to prevent the unjust enrichment of the debtor who owed the debt being paid. | Does the doctrine of equitable subrogation exist to prevent the unjust enrichment of the debtor who owed the debt being paid? | Subrogation - Memo # 448 - C - NO.docx | ROSS-003297099-ROSS-003297100 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10094 | Hill v. Cross Country Settlements, 402 Md. 281 | 366+1 | Subrogation, in its relationship to unjust enrichment, is best thought of as a remedy, not as an independent cause of action. See Pulte Home Corp. v. Parex, Inc., 174 Md.App. 681, 742, 923 A.2d 971, 1005, cert. granted, 401 Md. 172, 931 A.2d 1095 (2007) ("[S]ubrogation is not a cause of action in and of itself. Rather, the doctrine of subrogation allows a party to step into the shoes of another in order to pursue a cause of action."); Riemer v. Columbia Med. Plan, Inc., 358 Md. 222, 231, 747 A.2d 677, 683 (2000), superseded by statute, Chapter 569 of the Acts of 2000 (defining subrogation as " "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities' " (quoting Black's Law Dictionary 1427 (6th ed.1990))); Black's Law Dictionary 1467 (8th ed.2004) (defining subrogation as the "equitable remedy by which .. a substitution takes place"); Restatement (First) of Restitution " 162 (1937) (" [W]here the plaintiff is not officious, and he uses his property or his property is used in discharging the obligation of another or a lien upon another's property, he is entitled to reimbursement and is entitled to the remedy of subrogation to obtain reimbursement.") (emphasis added); Note, supra, at 774 ("In truth .. subrogation is a remedy, to be accorded as a measure of relief from fraud or mistake, or to prevent unjust enrichment."). Although there is substantial overlap between the legal theories of unjust enrichment and subrogation, the remedy of subrogation nonetheless requires an underlying and independent legal basis upon which Cross Country may assert its claims. | Although there is substantial overlap between the legal theories of unjust enrichment and subrogation, the remedy of subrogation requires an underlying and independent legal basis. | Is there substantial overlap between the legal theories of unjust enrichment and subrogation? | Subrogation - Memo # 477 - C - SA.docx | ROSS-003310852-ROSS-003310853 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |